**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:19md2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**PRETRIAL ORDER NO. 10**

**ORDER GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

The following Order governs the production of documents and electronically stored information ("ESI") and shall apply to all discovery of ESI and hard copy documents in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.  The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in an efficient manner and in accordance with the Federal Rules.  By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

I.     **Format for Defendants' Productions**

The following section governs the production of documents and electronically stored information ("ESI") by 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo

Intermediate, LLC, Aearo, LLC, and any of their related or affiliated entities or individuals named as defendants herein (collectively, "Defendants"), and shall apply to all discovery of ESI and hard copy documents by Defendants in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

(a) <u>File Types and Formats.</u> All spreadsheet (*e.g.*, Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images. All word processing (*e.g.*, Microsoft Word), presentation (*e.g.*, Microsoft PowerPoint), image (*e.g.*, .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs. All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc. In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion.

(b) <u>Native Files.</u> Any document produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file

with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production.

(c) <u>TIFF Images.</u> Any document produced as TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

(d) <u>Digital Photos.</u> Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

(e) <u>Databases, Structured, Aggregated or Application Data.</u> The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

(f) <u>Hard Copy Documents.</u> Documents that exist in hardcopy will be scanned to *.tiff image format as set forth in Subsection I(c) above. Defendants' hard copy documents that are not text-searchable shall be made searchable by OCR prior to

production where possible. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[1]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. Defendants will make their best efforts to unitize the documents correctly.

(g)     De-NISTing.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

(h)     Deduplication.  Defendants shall make reasonable efforts to de-duplicate ESI.  ESI produced by Defendants shall be globally de-duplicated across all collected custodial and non-custodial sources.  Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL

---

[1] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the ALL FILE PATHS[2] metadata field.

(i) <u>Embedded Files.</u>  Embedded files, except for images embedded in emails, are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

(j) <u>Dynamic Fields.</u>  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

(k) <u>Parent-Child Relationships.</u>  For email families, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

(l) <u>Time Zone.</u>  All provided metadata pertaining to dates and times will be standardized to UTC.

(m) <u>Bates Numbering.</u>  Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which

---

[2] ALL FILE PATHS metadata field shall include the original file/folder paths, including file name for non-emails, where reasonably available, of all the locations where copies of the item were located at the time of collection, separated by semi-colons, in the order corresponding to the order of names in ALL CUSTODIANS. For emails collected from container files (*e.g.*, .pst's), these include the original file paths of the container files and the location of the emails within the folder structure of the mail container/.pst from which it was collected, where reasonably available.

they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image. The Bates number shall:

    (i)    be consistent across the production;

    (ii)    contain no special characters; and

    (iii)    be numerically sequential within a given document.

(n)    <u>Excluded File Types.</u>  Absent a particularized need and good cause showing, the Parties agree that there is no need to collect ESI from the following sources:

    (i)    Deleted, slack, fragmented, or other data only accessible by forensics;

    (ii)    Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

    (iii)    On-line access data such as temporary internet files, history, cache, cookies, and the like;

    (iv)    Back-up data that is duplicative of data that can be collected elsewhere; and

    (v)    Server, system, or network logs.

(o)    <u>Redactions.</u>  Other than as permitted by this Order or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive document contains both redacted and non-redacted content,

Defendants shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

(i) <u>Spreadsheets.</u>  Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provide herein.

(ii) <u>Other Documents.</u>  All native files that require redaction shall first be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s).  Where reasonably possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed.  Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect Defendants' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  Defendants shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.  Redacted versions of documents that contained color in their un-redacted form shall be produced in color in TIFF format.

(p) <u>Load File Formats.</u>  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

Case No. 3:19md2885/MCR/GRJ

(q) <u>Metadata to Be Produced.</u> The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers, created, at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

(r) <u>Extracted Text and OCR.</u> Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

(i) <u>Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets).</u> All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

(ii) <u>OCR (Redacted Native ESI, Hard Copy Documents).</u> In the event a document other than spreadsheets, *e.g.*, Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for

any un-redacted portions of the documents.  Document-level OCR text files shall also be provided for all hard copy scanned documents.  OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.).  Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters).  Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

(iii)   <u>Format of Extracted Text and OCR.</u> The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder.  The number of TXT files per folder should be limited to 1,000 files.

(s)    <u>Encryption.</u>  To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted by Defendants. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption.  All production volumes uploaded by Defendants via this file sharing document repository shall remain available for download for no less than thirty (30) calendar days. In such cases, the Defendants shall transmit the encryption key or password to a requesting

Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

II.     **Defendants' Identification and Classification of Documents**

(a)     Agreement Regarding Technology-Assisted Review.

(i)     TAR Cooperation. The Parties acknowledge the benefits of using technology-assisted review ("TAR") technology and methodology, such as predictive coding systems, in assisting in the identification of responsive documents. Used properly and transparently between the Parties, subject to negotiation, an appropriate and reasonable TAR protocol can aid in identifying responsive documents, and do so with maximum efficiency.

(ii)    TAR Limitations.  By agreeing to use TAR in this MDL, Defendants do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to use TAR in this MDL, the Defendants do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). Defendants preserve all such Privileges.

(iii)   TAR Protocol.  The Parties agree to use TAR to identify and classify potentially responsive documents in connection with Defendants' production. The Parties will jointly agree to the TAR system that they propose to use to identify and classify documents, and set out their proposed TAR system, workflow and validation processes in a separate formal TAR protocol to be agreed upon between the Parties.

(iv)     <u>Meet and Confer.</u>  The Parties agree to meet and confer concerning the TAR protocol to be used for Defendants' production, and to submit their joint proposed TAR protocol or points of dispute for resolution by the Court within fourteen (14) days of the date of the entry of this order.

III.    **<u>Required Production Format for Plaintiffs' Productions</u>**

(a)     The Parties anticipate that the production of Plaintiffs' case-specific materials will be the subject of a future Court order.  Absent further agreement or order of the Court, Plaintiffs' counsel shall produce case-specific materials in native file format, PDF, or such other reasonably useable format that retains the relevant characteristics of the original document.  Any document that requires redaction shall be produced in image format, *e.g.*, TIFF or PDF.  All of Plaintiffs' production documents shall be uniquely named and sequentially numbered with Bates Stamps.

(b)     For email families in Plaintiffs' productions, the parent-child relationships (the association between emails and attachments) should be preserved, *i.e.*, email attachments should be consecutively produced with the parent email record.

(c)     To the extent Plaintiffs produce a document other than in native format, and Defendants request metadata or other information, the Parties shall reasonably confer about an alternative production format for such document, including the necessity for such alternative production format.  Any such request by a Defendant shall be specific and targeted.

IV.     **<u>Provisions Applicable To Both Plaintiffs' and Defendants' Productions.</u>**

(a)     <u>Known Responsive Material Must Be Produced.</u>  ESI that is known to Plaintiffs' Counsel or Defendants' Counsel to be non-privileged and responsive to a

discovery request shall be produced without regard to whether it was responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique, unless Counsel specifically identifies the documents as being withheld pursuant to a specific objection.

(b) <u>Discrete Document Collections.</u> Those portions of a Plaintiff's or Defendant's documents that represent discrete document collections, such as substantially relevant folders of ESI specifically segregated by Defendants, Defendants' employees, or Plaintiffs, before or after the commencement of this litigation, that are substantially relevant to the claims and defenses in this proceeding, shall be reviewed for responsiveness (subject to appropriate claims of privilege) without regard to whether a given document in the collection is responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique.

(c) <u>Unsearchable Documents.</u> Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

(d) <u>Use of Other Technology or Methodology.</u> Prior to use or further use by any Party other than as specified within this protocol, the Parties must meet and confer to disclose and discuss any proposed use of software or other technologies used to identify or eliminate sources of potentially responsive documents, including keyword or Boolean searching, file type culling, de-duplication, filtering, near de-duplication, e-mail thread suppression, clustering or concept searching. Use of such technologies to reduce the

volume of materials to be collected or reviewed, other than as described within this document, requires the opposing party's consent and will be subject to a separate mutually agreed-upon stipulation or Order of the Court setting forth the protocol for the use of such technologies as negotiated by the Parties.

(e) **Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources.** The Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

(f) **Mobile and Handheld Device Documents and Data.** If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

V.     **Parties' Agreed-Upon Early Production of Documents**

(a)    **Documents Produced by Defendants in Prior Proceedings.** Documents produced by any Defendant herein in *3M Co. v. Moldex-Metric, Inc.,* Cause No. 12-611 (D. Minn.); *Moldex-Metric, Inc. v. 3M Innovative Properties Company,* Cause No. 14-1821 (D .Minn.); and/or *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* 3:16-cv-01533-MBS, (the "Prior Proceedings") shall be produced within ten (10) days of entry of this Order. Wherever possible, all metadata available shall be produced in accordance with

Exhibit A.  Documents produced from Prior Proceedings shall bear the original Bates numbers assigned to them in those proceedings.  To the extent any documents produced in Prior Proceedings are withheld from Defendants' production to Plaintiffs, Defendants shall identify the basis on which the documents are being withheld, including any impacted custodians and document categories, to enable the Parties to confer about the potential later production of such documents.

(b) <u>Production of Documents from Prior FOIA Requests.</u>  The Parties agree to produce documents obtained by Plaintiff Leadership, Defense Counsel, or Defendants pursuant to Freedom of Information Act ("FOIA") requests received as of the date of the entry of this Order, within ten (10) days of entry of this Order in accordance with the production format specifications described in Section I.  By agreeing to produce FOIA material in this MDL, the Parties do not acknowledge or concede that they are obligated to produce FOIA material in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to produce FOIA material in this MDL, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). The fact of the Parties' agreement to produce these FOIA materials in this proceeding shall not be used by any person against any Party or their counsel in any way, in this or any other matter or proceeding, including as a basis to seek production of any other documents.  The Parties preserve all rights.

VI. **Subpoenas, FOIA Requests, and Touhy Requests**

(a) If either Defense Counsel or Plaintiff Leadership (as the "Issuing Party") issue a non-party subpoena, a FOIA request, or a Touhy request after the date of this Order, the Issuing Party shall include a copy of this Order with the subpoena and request that third parties produce data and documents in accordance with the production specifications set forth in Section I, to the extent feasible.

(b) Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

(c) The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena, FOIA request, or Touhy request to the other Party, within fourteen (14) days of receipt of those documents.

(d) If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to the other Party.

VII. **ESI Liaisons**

To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be David Buchanan, or his designee, and the ESI liaison for 3M shall be Michelle Six, or her designee. All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaison and lead counsel, and any identified designees.

VIII.	**Miscellaneous**

(a)	<u>Impact of Order on Other Obligations.</u> Nothing in this agreement shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

(b)	<u>Continuing Obligations.</u>  The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and periods set forth in this Order.  This Protocol does not address or resolve any objections to the scope of the Parties' respective discovery requests.

(c)	<u>Reservation of Rights.</u>  The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced.  The Parties shall meet and confer regarding such request(s) prior to any search or production related thereto.

(d)	<u>Document Storage.</u>  During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the opposing Parties and to preserve the original native format version of any ESI produced in non-native format.

(e) <u>No Waiver.</u> This Order shall not constitute a waiver of any objection to the ultimate discoverability, privilege, admissibility, or relevance of any records addressed herein.

(f) <u>Good Faith Compliance and Conferral Obligation.</u> The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties. The Parties shall reasonably cooperate in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and exchange of ESI in these proceedings and to further the exchange of information commenced at the Parties' Rule 26(f) Conference.

(g) <u>Non-English Documents</u>. To the extent that Documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such Document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the Documents or any portion thereof, but shall provide any translation of the Document or any portion thereof that exists or is created through machine translation prior to production of the Document.

(h) <u>Alternate Formats.</u> Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

Case No. 3:19md2885/MCR/GRJ

(i)     <u>Third-Party Data.</u>  The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

(j)     <u>Effect of Order.</u>  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**DONE** and **ORDERED** on this 17th day of June, 2019.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**