## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS EARPLUG )   Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION, )
                               )   Pensacola, Florida
                               )   June 17, 2019
                               )   9:07 a.m.
                               )
                               )
_____)

### SECOND CASE MANAGEMENT CONFERENCE

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-59)

# A P P E A R A N C E S

FOR THE PLAINTIFFS:        **BRYAN F. AYLSTOCK, ESQUIRE**
                           **JENNIFER HOEKSTRA, ESQUIRE**
                           Aylstock, Witkin, Kreis & Overholtz
                           17 E Main Street, Suite 200
                           Pensacola, Florida  32502

                           **CHRISTOPHER A. SEEGER, ESQUIRE**
                           Seeger Weiss, LLP
                           55 Challenger Road, 6th Floor
                           Ridgefield Park, New Jersey  07660

FOR THE DEFENDANT:         **KIMBERLY BRANSCOME, ESQUIRE**
                           Kirkland & Ellis, LLP
                           333 South Hope Street
                           Los Angeles, California  90071

                           **MIKE BROCK, ESQUIRE**
                           Kirkland & Ellis, LLP
                           1301 Pennsylvania Avenue, N.W.
                           Washington, D.C.  20004

                           **MARK J. NOMELLINI, ESQUIRE**
                           Kirkland & Ellis, LLP
                           300 N Lasalle
                           Chicago, Illinois  60654

                           **LARRY HILL, ESQUIRE**
                           MOORE, HILL & WESTMORELAND, P.A.
                           350 W Cedar Street, Suite 100
                           Pensacola, Florida  32502

PROCEEDINGS

09:07  **JUDGE RODGERS:**  Good morning.  We are here this morning in the In Re: 3M Combat Arms Earplugs Products Liability litigation, it is MDL2880.  We're here for our second case management conference.

Present in the courtroom at counsel table for Plaintiffs I have Mr. Aylstock, Ms. Hutson, Mr. Seeger.  Good morning.

**MR. AYLSTOCK:**  Good morning, Your Honor.

**MS. HUTSON:**  Good morning, Your Honor.

**MR. SEEGER:**  Good morning, Your Honor.

**JUDGE RODGERS:**  For the Defense, Ms. Branscome, Mr. Brock, Mr. Nomellini, and Mr. Hill. Good morning.

**MS. BRANSCOME:**  Good morning, Your Honor.

**MR. BROCK:**  Good morning.

**MR. NOMELLINI:**  Good morning.

**MR. HILL:**  Good morning.

**JUDGE RODGERS:**  And then a whole lot of others both in the courtroom and I know also on the telephone.

Let me start by apologizing to all of you who had to work and travel on Father's Day.  When I scheduled this conference back some time ago, I did not appreciate that yesterday was Father's Day.  So I

09:08   1    apologize to you and your families for interfering

09:08   2    with that special day.

09:08   3         I also would like to start by thanking all of

09:08   4    you who were involved in the multi-day Rule 26

09:08   5    conference.  Judge Jones and I are extremely impressed

09:08   6    with the amount of work that obviously went into that

09:08   7    conference and extremely impressed with the amount of

09:08   8    progress that you all have made.

09:08   9         Since our last case management conference,

09:08   10   which was held actually 60 days ago -- I think it was

09:09   11   April 17th -- you all have accomplished what it takes

09:09   12   other MDLs or attorneys in other MDLs many months to

09:09   13   complete, at least that's been my experience.  So

09:09   14   congratulations for that.  You've definitely set an

09:09   15   example for other MDLs.

09:09   16        So our plan for this morning, I need to hear

09:09   17   from you all on your report to the Court.  I

09:09   18   appreciate the written report that you submitted, but

09:09   19   would like to hear from you this morning in regards to

09:09   20   that report and the work that went into the

09:09   21   conference.

09:09   22        And then I have a few items that I'd like to

09:09   23   discuss with you all that are still, in my mind,

09:09   24   lingering that I think we need to address.  And then

09:09   25   following the case management conference, Judge Jones

09:09   1   and I are going to hear an ESI presentation, joint

09:10   2   presentation.

09:10   3          Mr. Buchanan, I think, is going to assist in

09:10   4   that as well as Michelle Six, who will be appearing by

09:10   5   phone or Webex.  I'm not sure how that logistically is

09:10   6   going to work, but I know there are people who do know

09:10   7   and have worked that out.

09:10   8          Mr. Aylstock, you and Ms. Branscome, I'm not

09:10   9   sure if you've discussed how you would like to present

09:10   10  the oral report.

09:10   11         **MR. AYLSTOCK:**  Not particularly.  But we've

09:10   12  been able to work out so much, I'm sure we'll be able

09:10   13  to work out that as well.

09:10   14         Yes, thank you, Your Honor, first of all, for

09:10   15  ordering us to meet over those two days.  We did meet

09:10   16  in New York City June 3rd and 4th, and it was very

09:10   17  productive and cooperative.

09:10   18         As Your Honor saw, we had a lot of folks on

09:10   19  both sides that helped facilitate the open exchange of

09:10   20  information.  I neglected to mention Adam Wilson in

09:10   21  the Rule 26 report when it was going back and forth,

09:11   22  but he was also instrumental in those meetings on the

09:11   23  Plaintiffs' side.

09:11   24         We took Your Honor's orders and we went

09:11   25  through everything that we needed to discuss as well

09:11   1   as some other things that we thought would be helpful

09:11   2   to the litigation, and those are reflected in the

09:11   3   report that is before Your Honor.  But I guess maybe

09:11   4   the best way to do it would be to go through the items

09:11   5   in the report and we can just comment upon the

09:11   6   progress that we made and maybe what is left to do by

09:11   7   the parties as this case progresses.

09:11   8           And I'll -- for my side you probably saw how

09:11   9   many people we have.  I'll probably call on other

09:11   10  people to help me articulate the Plaintiffs' position

09:11   11  on various items, if that's okay with the Court.

09:11   12          **JUDGE RODGERS:**  That will be fine.

09:11   13          Ms. Branscome?

09:11   14          **MS. BRANSCOME:**  I would simply just echo

09:11   15  Bryan's comments.  I thought it was extremely

09:11   16  productive.  We met, we covered a wide variety of

09:12   17  topics.

09:12   18          Your Honor will note in the report there are

09:12   19  some things we're continuing to work on, but I

09:12   20  actually think we kind of created a good bit of

09:12   21  momentum for trying to reach agreement, so I think

09:12   22  ultimately what will come to Your Honor for

09:12   23  resolution, if anything, will be very minor.

09:12   24          So I agree with Bryan's approach, we can walk

09:12   25  through the report, if that's helpful to Your Honor.

09:12  1    And if you have questions that, obviously, touch on

09:12  2    the item, we can stop there, or if you want to address

09:12  3    your outstanding items, we can do that at any time.

09:12  4             **JUDGE RODGERS:**  All right.  Thank you.

09:12  5             We'll go through the report.  And then to the

09:12  6    extent myself or Judge Jones have questions, we'll ask

09:12  7    those at that time.  And then we'll wrap up with the

09:12  8    issues that I have outstanding that are not addressed

09:12  9    in the report.

09:12  10            But before we start with that, I was remiss

09:12  11   in -- you all know Judge Jones -- asking him if he had

09:12  12   anything he'd like to say.

09:12  13            **JUDGE JONES:**  No, other than to echo your

09:12  14   comments.  It's certainly very thorough.  I had a

09:12  15   couple of questions as we go along, but it looks like

09:13  16   90-something percent of the issues are resolved, and

09:13  17   you should be commended for taking the time in getting

09:13  18   these things ironed out early on.

09:13  19            **MR. AYLSTOCK:**  Thank you, Judge.  Certainly a

09:13  20   team effort.

09:13  21            **JUDGE RODGERS:**  It feels very organized as we

09:13  22   are getting started.

09:13  23            All right.  Mr. Aylstock?

09:13  24            **MR. AYLSTOCK:**  Yeah, I think we'll simply

09:13  25   walk through the report.  The first is initial

09:13    1    disclosures.  The Defendants have agreed to produce

09:13    2    the initial disclosures pursuant to Rule 26(a)(1), and

09:13    3    those will be provided to the Plaintiffs by June 28th.

09:13    4    So that one was fairly simple.

09:13    5         The second one was --

09:13    6         **JUDGE RODGERS:**  Will this include -- this

09:13    7    will be custodians and positions held?

09:13    8         **MS. BRANSCOME:**  So we actually did that when

09:13    9    we met in New York, which I think is referenced in the

09:13   10    report.  We provided information about the key

09:13   11    custodians, their positions.

09:14   12         And we also, as Your Honor had ordered,

09:14   13    provided an organization chart that explains the

09:14   14    relationship between 3M and a variety of Aearo

09:14   15    entities.  The Plaintiffs asked a few questions and we

09:14   16    were able to answer those.

09:14   17         They asked us a few things that we're still

09:14   18    running down about -- and I think this is touched on

09:14   19    later in the report -- about the storage of documents.

09:14   20    But in terms of -- we were able to provide a complete

09:14   21    list of the sort of key custodians and their positions

09:14   22    as well as explaining the corporate structure.

09:14   23         So we will formalize those when we actually

09:14   24    do the initial disclosures under Rule 26(a)(1), but we

09:14   25    were able to provide that information in that setting.

09:14    1          **JUDGE RODGERS:**  The org chart was not a part

09:14    2   of what you all submitted, was it, or did I miss it?

09:14    3          **MR. AYLSTOCK:**  I happen to have a copy for

09:14    4   Your Honor.

09:14    5          **JUDGE RODGERS:**  I would like to have that.

09:14    6          **MR. AYLSTOCK:**  May I approach, Your Honor?

09:14    7          **JUDGE RODGERS:**  Yes, sir.  Thank you.

09:14    8          **MR. AYLSTOCK:**  And I can get additional

09:14    9   copies as well for Madam Clerk.

09:15   10          It's not overly complicated.  As you can see,

09:15   11   it's fairly straightforward, so we were happy with

09:15   12   that.

09:15   13          With regard to the early exchange of

09:15   14   documents that Your Honor had requested us to discuss,

09:15   15   we were able to reach agreement on that.  We

09:15   16   understand from the Defendants there is approximately

09:15   17   250,000 pages that will be produced, and that will

09:15   18   encompass the *qui tam* file; the documents produced to

09:15   19   the government, I think that's about 2,000 documents;

09:15   20   about 5,000 documents each in *Moldex I* and *II*.

09:15   21          **JUDGE RODGERS:**  So is this just documents

09:15   22   that the Defendant produced in those litigations or is

09:15   23   this everything produced in those litigations?

09:15   24          **MR. AYLSTOCK:**  Just the Defendant's documents

09:15   25   that were produced in that litigation, Your Honor.

09:15    1          **JUDGE RODGERS:** So will that include

09:15    2   Dr. Ohlin's deposition?  Is that something that --

09:15    3         **MS. BRANSCOME:** It does, Your Honor.

09:15    4         **MR. AYLSTOCK:** Yeah, the depositions that

09:15    5   were taken in there, I think with one or two limited

09:16    6   exceptions, the Defendants have agreed to produce.

09:16    7   We're going to review that, Your Honor.  We don't

09:16    8   think it will take that much time given the relatively

09:16    9   limited volume compared to some of the other cases

09:16   10   we've been in.  That will involve our discussion with

09:16   11   regard to some other things that will come up.

09:16   12         And if there's a dispute about something that

09:16   13   wasn't produced -- my understanding is that the vast,

09:16   14   vast majority of those productions will be reproduced

09:16   15   for this case.  If there's a dispute, we'll bring it

09:16   16   to Your Honor, but hopefully there won't be.

09:16   17         **JUDGE JONES:** Can I ask a question?  I know

09:16   18   there's some of that information not being produced.

09:16   19   Generically what is it that is sort of off the table

09:16   20   right now in the *qui tam* and the *Moldex I* and *II?*

09:16   21         **MS. BRANSCOME:** Certainly I'm happy to

09:16   22   address that, Your Honor.  We are producing --

09:16   23   everything that was produced by the Defendants in the

09:16   24   *qui tam* litigation, that is all being produced.  There

09:16   25   was a very small minority -- in fact, I was told as a

09:16   1   matter of volume it's 2 to 3 percent of the documents

09:17   2   and I think maybe a handful of deposition transcripts

09:17   3   from the *Moldex* litigation that relate, in our view,

09:17   4   solely to the decision by the company to engage in the

09:17   5   patent infringement lawsuit.

09:17   6        Primarily these are documents created by or

09:17   7   received by lawyers that are discussing the rationale

09:17   8   for filing the infringement suit.  Some of the

09:17   9   deposition transcripts are subject to a protective

09:17   10  order that I have not even been able to see, as they

09:17   11  were "attorneys' eyes only" in the initial litigation.

09:17   12       And so we discussed with the Plaintiffs, to

09:17   13  the extent that any of the documents that are not

09:17   14  being voluntarily produced as part of the initial

09:17   15  production, you know, turn up, whether we use TAR or

09:17   16  search terms later, and we do deem them relevant, we

09:17   17  will produce them.

09:17   18       But as a matter of the initial voluntarily

09:17   19  production of documents, we did identify, with the

09:17   20  company's help, the very small subset that related to

09:17   21  the decision primarily to file the infringement

09:18   22  lawsuit, and so we have a good faith basis for

09:18   23  thinking these are not relevant documents.

09:18   24       **JUDGE JONES:**  Thank you.

09:18   25       **MR. AYLSTOCK:**  And just to be clear, we're

09:18  1    not agreeing that they're not relevant at this point,
09:18  2    but we're thankful that we'll get what we get and then
09:18  3    we'll make those decisions.
09:18  4        **JUDGE JONES:**  Certainly, at first blush, they
09:18  5    might seem like they don't have a lot to do with this
09:18  6    case.
09:18  7        **MR. AYLSTOCK:**  Well, potentially.  I think a
09:18  8    lot will depend on what's produced and how we review
09:18  9    the depositions and so forth.
09:18  10       **JUDGE RODGERS:**  As to the FOIA request and
09:18  11   what the Plaintiffs are intending to produce to the
09:18  12   Defense, how much of that is redacted?
09:18  13       **MR. AYLSTOCK:**  Well, a lot of names are
09:18  14   redacted, and so that may be subject to an additional
09:18  15   *Touhy* request down the road.  But we did agree, as
09:18  16   Your Honor probably saw in the Rule 26 report, that
09:18  17   both sides, to the extent we have FOIA documents that
09:18  18   weren't a part of our position paper or that we get
09:19  19   through the FOIA process going forward, those will be
09:19  20   produced, same with *Touhy*, and that obligation will be
09:19  21   reciprocal.  So we're all on the same sheet of music,
09:19  22   so to speak.
09:19  23       **JUDGE RODGERS:**  Let me go ahead and address
09:19  24   an issue with regard to the military production.  I
09:19  25   have had a number of discussions with the Department

09:19    1    of Defense point of contact.  My understanding -- I

09:19    2    believe I conveyed this to you all, leadership, that

09:19    3    there would be an official delegation to the Army by

09:19    4    the DoD and the Army would respond on behalf of all

09:19    5    the other branches.

09:19    6            That official delegation as of last Thursday

09:19    7    had not been made, but it wasn't because there was any

09:19    8    question about whether it would be made, it was just a

09:19    9    matter of people having other things to do and just

09:20   10    hadn't gotten to it yet.

09:20   11            Friday afternoon, interestingly enough, I was

09:20   12    contacted by our U.S. Attorney, Larry Keefe, and told

09:20   13    that he was in the process of setting up an in-person

09:20   14    meeting between myself, the DoD contact, and someone

09:20   15    from the DOJ.  This was before you all submitted your

09:20   16    Rule 26 report.

09:20   17            So, obviously, at the time I was

09:20   18    communicating with him, I was not aware of how much

09:20   19    progress you all had made in terms of productions from

09:20   20    the *qui tam* litigation.  But regardless, I do think it

09:20   21    would be helpful if I attend that in-person meeting.

09:20   22            I was a little surprised that this was -- I

09:20   23    guess so much progress had been made to get this

09:21   24    meeting actually set up, because when I brought up the

09:21   25    idea of an in-person meeting with the DoD probably

09:21     1   three weeks ago, there was some real hesitation, and
09:21     2   the reason for that is the military is not convinced
09:21     3   that they are not going to be brought into this
09:21     4   litigation, I guess to put it real plain and simple.
09:21     5        And that certainly doesn't mean they're not
09:21     6   going to cooperate.  Even if that threat exists,
09:21     7   certainly they're going to cooperate.  But in terms of
09:21     8   how much cooperation or how open they are in terms of
09:21     9   flexible and collaborative, I suppose, that they are,
09:21    10   there's just -- there's some hesitation there,
09:21    11   because, again, they're not convinced that they're not
09:21    12   going to be brought into the litigation by one side or
09:22    13   the other.
09:22    14        And of course, I couldn't give them any
09:22    15   assurance one way or the other on that, but I just
09:22    16   share that with you for what it's worth at this point.
09:22    17   But like I said, I do think I would attend that
09:22    18   meeting, if it is set up.  And I will probably talk to
09:22    19   leadership more about that, if and when that meeting
09:22    20   is set.
09:22    21        The next item that you all have in the report
09:22    22   for our agenda relates to master pleadings and service
09:22    23   of master pleadings.
09:22    24        I understand you've agreed that there will
09:22    25   not be master pleadings in this litigation.

09:22  1      MR. AYLSTOCK:  That's right, Your Honor.

09:22  2  Mr. Seeger will address that.

09:22  3      MR. SEEGER:  Good morning, Judge Rodgers and

09:22  4  Judge Jones.

09:22  5      JUDGE RODGERS:  Good morning.

09:22  6      MR. SEEGER:  Yeah, so when we met and

09:22  7  conferred, both sides pretty quickly I believe were in

09:22  8  agreement on that point.  The one interesting thing I

09:22  9  think we're continuing to work through is on service

09:22  10  of process.

09:22  11      I think we had learned since the meeting that

09:22  12  one of the vendors, I think it's BrownGreer, has a

09:23  13  platform that we might be able to use to effect the

09:23  14  service of process in a way that both sides might

09:23  15  be --

09:23  16      I hope I'm not saying something you don't

09:23  17  know about, Kim.  I'm assuming you do.  The look on

09:23  18  your face suggests --

09:23  19      Okay, so let me not go too far on that.

09:23  20      JUDGE RODGERS:  We'll hear more about that

09:23  21  tomorrow from BrownGreer.

09:23  22      MR. SEEGER:  Stay tuned.

09:23  23      JUDGE RODGERS:  All right.  Well, that did

09:23  24  raise a question in my mind without master pleadings.

09:23  25  In PTO 2 I had tolled the time for the Defense to

09:23  1    respond to complaints, and that needs to be addressed.
09:23  2    And it appears you'll be responding to each complaint
09:23  3    individually, if there's no master pleadings.
09:23  4         **MS. BRANSCOME:**  Sure.  We have not -- we are
09:23  5    engaging in I think very productive discussions about
09:23  6    the overall structure of how cases become part of the
09:23  7    MDL, including kind of the initial census.  And we
09:24  8    discussed the idea of whether or not there would be
09:24  9    bundling or sort of other structural components to it.
09:24  10        The Plaintiffs have said they did not want
09:24  11   master pleadings.  We were okay with that.  But we
09:24  12   have not reached resolution on the form that the
09:24  13   pleadings would take, whether they would each
09:24  14   individually be filing full complaints.  We have heard
09:24  15   that perhaps they are not interested in short form
09:24  16   pleadings.
09:24  17        So we are still continuing to work through
09:24  18   that, Your Honor.  So, if Your Honor would be willing
09:24  19   to give us a little bit more time, I think we may be
09:24  20   able to come back with a complete plan and perhaps we
09:24  21   can work into that the discussion about the form of
09:24  22   service.
09:24  23        We have identified kind of the issues that we
09:24  24   have with just doing service by email, that perhaps
09:24  25   there is another solution that we could work through

09:24   1   with the Plaintiffs and come back to Your Honor with a

09:24   2   joint plan.

09:24   3       **JUDGE RODGERS:**  All right.  Now is probably

09:24   4   the appropriate time to talk about this issue of

09:25   5   multi-plaintiff actions or bundling.

09:25   6       I'm not in favor of it.  I've discussed this

09:25   7   with other judges who have permitted this in other

09:25   8   MDLs and I have been cautioned against it.  Of course,

09:25   9   our clerk of court is not at all in favor of it.

09:25  10       And frankly, to bundle complaints or to

09:25  11   bundle plaintiffs in complaints, you have to meet the

09:25  12   joinder rules.  So, if you think you can meet the

09:25  13   joinder rules, then so be it, and I'll decide that.

09:25  14   But if it's just a matter of convenience, that's not

09:25  15   something I'm inclined to do.

09:25  16       So I think the last time we discussed this or

09:25  17   touched on it, it was left open, and you were going to

09:25  18   discuss it at the Rule 26 conference.  If you wish to

09:26  19   brief it now, I'm certainly not opposed to that.  I

09:26  20   can have simultaneous briefs or this can be something

09:26  21   that -- I know we have some complaints pending now, so

09:26  22   there could be a motion to sever.

09:26  23       I don't know, Ms. Branscome, if you have --

09:26  24   I'm sure you have given more thought to this, but

09:26  25   whether you have a definitive position on it or not, I

09:26  1    don't know.

09:26  2            Mr. Aylstock?

09:26  3        **MR. AYLSTOCK:**   I'll bite.   We anticipated

09:26  4    Your Honor's comments on that.   We've been discussing

09:26  5    other options.   It does very much dovetail into the

09:26  6    initial census discussion.   Because some of the things

09:26  7    that we've talked about very cooperatively is the fact

09:26  8    that there are going to be a lot of unfiled

09:26  9    yet-to-be-vetted cases out there and how do both sides

09:26  10   both vet those cases and then deal with the filings,

09:26  11   particularly given the varying statutes and the

09:27  12   relative recency of the DOJ report.

09:27  13           So I don't believe that at this point a

09:27  14   briefing is necessary because I am hopeful that we can

09:27  15   work something out, not necessarily with bundling but

09:27  16   with other mechanisms that may achieve the purpose of

09:27  17   the census.

09:27  18           And in our view, what we'd like is an

09:27  19   auto-populated objective type census that doesn't cost

09:27  20   a fortune to maintain or develop and one that would

09:27  21   include unfiled cases, which of course is a little bit

09:27  22   tricky because the Court doesn't have jurisdiction

09:27  23   over those.

09:27  24           So we have discussed some ideas on how to do

09:27  25   that.   I think we've made significant progress on

09:27  1  that.  We've sort of anticipated, as I said, that
09:27  2  bundling may not be part of that, so we're looking at
09:27  3  other options.  And I think the plan is the next week
09:27  4  or two to continue that discussion and be prepared to
09:28  5  address it formally at the next CMC.
09:28  6        **JUDGE RODGERS:**  Address it at the next --
09:28  7       **MR. AYLSTOCK:**  Well, hopefully --
09:28  8        **JUDGE RODGERS:**  Because that will be three
09:28  9  CMCs where we've addressed it.
09:28  10        **MR. AYLSTOCK:**  Have an agreement.
09:28  11        **JUDGE RODGERS:**  All right.  Thank you.
09:28  12       Ms. Branscome?
09:28  13        **MS. BRANSCOME:**  Yes.  And Your Honor, I think
09:28  14  either at the next CMC we would come to you with an
09:28  15  agreement that would cover, as Bryan indicated, a
09:28  16  number of related components or discrete areas where
09:28  17  we may disagree and seek your guidance on it.  I'm
09:28  18  hopeful that we may come up with a plan that works for
09:28  19  all involved, but I did want to assure Your Honor we
09:28  20  have been making good progress on this.  It isn't
09:28  21  simply we sort of meet and disagree and then leave and
09:28  22  come back and disagree again.  We're investigating a
09:28  23  number of options.
09:28  24       Part of the unanswered questions will involve
09:28  25  the vendors and their capabilities in the initial

09:28    1    census and how the data is analyzed and how valuable

09:29    2    it is.

09:29    3           And so that's why we're not coming to you

09:29    4    yet, Your Honor, with a solution, but we hope by the

09:29    5    next CMC we would have an acceptable one or we can

09:29    6    identify the areas of dispute and Your Honor could

09:29    7    settle them and we could be done and moving forward.

09:29    8           **JUDGE RODGERS:**  Because we do need the

09:29    9    Defendants to respond to the complaints.  If there's

09:29   10    not going to be master pleadings, then I don't know

09:29   11    how else you'll respond other than to each individual

09:29   12    complaint, unless you all can get creative in a way

09:29   13    that I can't imagine right now.

09:29   14           **MS. BRANSCOME:**  There have been other MDLs

09:29   15    where our answer deadline is suspended until cases

09:29   16    reach a further stage in the process so that we are

09:29   17    not necessarily responding, you know, to each

09:29   18    individual complaint for all filed cases; it could be

09:29   19    held to cases that end up in the discovery pool.

09:29   20           But I think, Your Honor, if we're permitted,

09:29   21    now that we understand your view on bundling, which

09:29   22    was not unexpected and I think in line with what the

09:30   23    rules require for bundling, but I do think if we could

09:30   24    discuss with the Plaintiffs an overall structure, we

09:30   25    may come to Your Honor with a more efficient solution

09:30    1    overall.

09:30    2         In terms of individually responding to the

09:30    3    volume of cases that we anticipate being filed, I

09:30    4    think that would be a heavy burden on our client, and

09:30    5    so we may take a different view with respect to

09:30    6    handling some kind of consolidated complaint.  But as

09:30    7    of the moment, we were in agreement with the

09:30    8    Plaintiffs to not have master pleadings.

09:30    9         **JUDGE RODGERS:**  What's unusual about this is

09:30   10    you all -- and I'm getting a little bit ahead in terms

09:30   11    of the report, but you all obviously have decided that

09:30   12    it's best to engage in sort of the corporate discovery

09:30   13    as well as the affirmative defense discovery, which I

09:30   14    agree with and I think that's a good approach, before

09:30   15    getting into case specific discovery or bellwether

09:30   16    cases.

09:30   17         It's unusual to do that without the defenses

09:31   18    even having been raised and, I mean, they've not been

09:31   19    raised other than in a position paper.  So just give

09:31   20    that some thought.

09:31   21         **MS. BRANSCOME:**  Mr. Brock was helpfully

09:31   22    adding to the discussion on this, which is, if you'll

09:31   23    give, Your Honor -- if we have some time to think

09:31   24    about procedurally how to formally get those defenses

09:31   25    in front of Your Honor and not involving our client

09:31    1    individually responding to over a thousand complaints,

09:31    2    at this point in time I think -- I think we could

09:31    3    figure out a way to get it in front of Your Honor in a

09:31    4    procedurally proper way and work with the Plaintiffs

09:31    5    to do that.

09:31    6    **JUDGE RODGERS:** All right, very good. By the

09:31    7    next CMC?

09:31    8    **MS. BRANSCOME:** Yes.

09:31    9    **JUDGE RODGERS:** Thank you.

09:31   10    **MR. AYLSTOCK:** Absolutely, Your Honor. And a

09:31   11    little more just color to the census discussion, one

09:31   12    of the things that we're very interested in is the

09:31   13    vendors' approach to gathering the governmental

09:31   14    records, and we're hopeful that we will have a

09:32   15    solution that will expedite that process. And once we

09:32   16    get, hopefully, sort of our arms around what that may

09:32   17    be and what those documents look like and how easily

09:32   18    they can be transferred into a census, I think it will

09:32   19    help both sides' discussions.

09:32   20    So it wasn't that we were just simply kicking

09:32   21    the can down the road, but we're trying to get a

09:32   22    little more information from these vendors and then

09:32   23    look and see what we have --

09:32   24    **JUDGE RODGERS:** That makes sense. Very good.

09:32   25    Government discovery was the next item. We

09:32     1    touched on that some here.  I'm fine with the dates

09:32     2    you proposed as far as a draft *Touhy* request and then

09:32     3    a discussion with the government, and hopefully that

09:32     4    will be Maj. Evans and they'll be amenable to that

09:33     5    discussion.

09:33     6        But I'm sure you can appreciate their

09:33     7    position, at least at DoD, not so much Maj. Evans, but

09:33     8    at DoD, "Why would we review your *Touhy* requests and

09:33     9    help you fashion them so that you can get more

09:33    10    information out of us if you're only going to sue us?"

09:33    11    That's not my language.  That was sort of their take

09:33    12    on it.

09:33    13        **MR. AYLSTOCK:**  Ms. Hutson was going to

09:33    14    address that.

09:33    15        **JUDGE RODGERS:**  Ms. Hutson?

09:33    16        **MS. HUTSON:**  Yes, Your Honor.  We have a

09:33    17    draft *Touhy* request from the Defendants.  It's not a

09:33    18    joint request at this point.  We are talking about the

09:33    19    best way to frame these requests to hopefully

09:33    20    alleviate the concerns that you're hearing.

09:33    21        Again, this is a work in progress, and we are

09:33    22    trying to fine tune as best we can those requests so

09:33    23    that we, a) get the documents that we need, but b)

09:33    24    alleviate those kinds of concerns.  So we are working

09:34    25    on that.

| | | |
|---|---|---|
| 09:34 | 1 | **JUDGE RODGERS:**  So the Plaintiffs are going |
| 09:34 | 2 | to be submitting *Touhy* requests directed or related to |
| 09:34 | 3 | the servicemen and women and their service and their |
| 09:34 | 4 | potential exposure, I guess, the alleged exposure to |
| 09:34 | 5 | these earplugs and how you might best establish that, |
| 09:34 | 6 | right? |
| 09:34 | 7 | **MS. HUTSON:**  Correct. |
| 09:34 | 8 | **JUDGE RODGERS:**  And then you all, Ms. |
| 09:34 | 9 | Branscome, your *Touhy* requests, I'm presuming, are |
| 09:34 | 10 | more focused on your affirmative defenses and research |
| 09:34 | 11 | and development of these earplugs in conjunction |
| 09:34 | 12 | allegedly with the military? |
| 09:34 | 13 | **MS. BRANSCOME:**  They are, Your Honor.  In |
| 09:34 | 14 | terms of the initial draft of *Touhy* requests that we |
| 09:34 | 15 | had sent to the Plaintiffs, we took the comments from |
| 09:34 | 16 | Maj. Evans to heart the last time we met and we went |
| 09:34 | 17 | back and substantially narrowed them.  So we hope that |
| 09:34 | 18 | they are specific enough that they would meet the |
| 09:34 | 19 | standards that the government at least articulated in |
| 09:34 | 20 | our meeting so that we can get responsive documents |
| 09:34 | 21 | related to the design and development of the product. |
| 09:34 | 22 | In terms of discovery related to individual |
| 09:35 | 23 | plaintiffs, one of the issues that we've been |
| 09:35 | 24 | discussing with the Plaintiffs is, if they are |
| 09:35 | 25 | engaging in record collection from the military for |

09:35  1   their clients, either filed or not filed, now, one
09:35  2   thing we are trying to figure out is how do we not end
09:35  3   up in a place where, if any of these cases do proceed
09:35  4   to a more fulsome discovery, where we, the Defendants,
09:35  5   are not placed in a position where the only way we can
09:35  6   get complete records is through a *Touhy* request.

09:35  7          And so we have been discussing this with the
09:35  8   Plaintiffs.  I think they understand our position.  So
09:35  9   that's part of what we are trying to determine is
09:35 10   whether or not it's possible actually for the
09:35 11   Plaintiffs to collect their own records without using
09:35 12   *Touhy* as a vehicle at the outset.

09:35 13          And if they are able to get complete records,
09:35 14   which I believe is still an open question at the
09:35 15   moment, but if they are able to get complete sets of
09:35 16   records, finding some way to get that certified or
09:35 17   give us confidence that when we get to a later point
09:36 18   in discovery we do not then need to serve *Touhy*
09:36 19   requests to make sure that all the records were
09:36 20   collected and turned over.

09:36 21          **JUDGE RODGERS:**  All right.  Very good.  Thank
09:36 22   you.

09:36 23          **MS. BRANSCOME:**  We do have a copy of the
09:36 24   *Touhy* requests that we sent to the Plaintiffs.  I've
09:36 25   been informed by Mr. Aylstock that they do not intend

09:36  1  to add to this list until they've had a chance to

09:36  2  review our initial production of documents.  And so

09:36  3  this would be the set of requests that we would

09:36  4  anticipate providing to the Government representative

09:36  5  by the 19th.

09:36  6        We would need Your Honor's assistance in

09:36  7  facilitating a phone call.  It's our understanding we

09:36  8  can't sort of unilaterally request that.  But if it

09:36  9  would be helpful, Your Honor, I do have a copy.

09:36  10        **JUDGE RODGERS:**  Yes, that would be helpful.

09:36  11  Thank you.

09:36  12        **MR. AYLSTOCK:**  And just so it's clear, at

09:36  13  this point, Your Honor, what we'd like to do on the

09:36  14  Plaintiffs' side is to review the discovery that will

09:36  15  be coming in the next 10 days hopefully after the ESI

09:37  16  order.

09:37  17        **JUDGE RODGERS:**  Are you talking about the

09:37  18  disclosures?

09:37  19        **MR. AYLSTOCK:**  Well, not only disclosures --

09:37  20        **JUDGE RODGERS:**  Oh, in the *qui tam*, okay.

09:37  21        **MR. AYLSTOCK:**  --- but the early -- the

09:37  22  *Moldex I* and *II* and the *qui tam*.

09:37  23        So these initial requests will be the

09:37  24  Defendant's requests.  Once we get through that and

09:37  25  can hopefully narrow our requests or maybe even

09:37   1   alleviate them, it looks like one of the vendors might

09:37   2   be able to do a lot of the case specific stuff.  So if

09:37   3   that's the case, we may not need *Touhy* requests.  But

09:37   4   I just wanted to highlight that we certainly have no

09:37   5   objection and understand that they need to make their

09:37   6   requests as soon as practical.

09:37   7         **JUDGE RODGERS:**  Let me hear from you all

09:37   8   regarding your case management plan and discovery plan

09:37   9   for Phase 1.  It seems specific enough.  I don't know

09:37  10   if there's anything, Mr. Seeger, that you need to add

09:38  11   to this.

09:38  12         **MR. SEEGER:**  Well, you had already noticed

09:38  13   that we had attempted to do here by pushing case

09:38  14   specific discovery back and to create a schedule that

09:38  15   would give 3M time to sort of work through their *Touhy*

09:38  16   requests.

09:38  17         You know, obviously one of the concerns that

09:38  18   came up in the meet and confer that we felt was

09:38  19   completely legitimate is that we had thousands of

09:38  20   individual case specific plaintiff requests going on

09:38  21   at the same time, then the discovery they needed might

09:38  22   have been delayed, could be many months or who knows,

09:38  23   months, maybe years.

09:38  24         So we thought for now let's put a schedule in

09:38  25   place that accomplished a lot of very important

| | |
|---|---|
| 09:38 | 1 |
| 09:38 | 2 |
| 09:38 | 3 |
| 09:38 | 4 |
| 09:38 | 5 |
| 09:38 | 6 |
| 09:38 | 7 |
| 09:38 | 8 |
| 09:39 | 9 |
| 09:39 | 10 |
| 09:39 | 11 |
| 09:39 | 12 |
| 09:39 | 13 |
| 09:39 | 14 |
| 09:39 | 15 |
| 09:39 | 16 |
| 09:39 | 17 |
| 09:39 | 18 |
| 09:39 | 19 |
| 09:39 | 20 |
| 09:39 | 21 |
| 09:39 | 22 |
| 09:39 | 23 |
| 09:39 | 24 |
| 09:39 | 25 |

things; it kicks off the discovery 3M needs to deal with their defenses, and I think Your Honor wants to do that up front, and we think that makes sense; and gives them a deadline, and a really tight one, to complete the discovery to us from their files, which is September 30th.  So there's a lot going on if things were productive.

Now, the rubber will meet the road in working to what we have to get to you by October 31st because that will be the point where we're meeting and conferring and seeing how their discovery is going against the Government, what we're getting from them. And obviously, we don't want this case being delayed indefinitely while they seek out the documents they need to handle defenses, but we thought for now this schedule that we put in place made the most sense.

**JUDGE RODGERS:**  What is the agreement for you, Ms. Branscome, in terms of producing the materials that you receive back from the government in your *Touhy* requests?  You said this is not a joint request to the government, so --

**MS. BRANSCOME:**  I think it's simply not joint in the sense that the Plaintiffs have not kind of added to the list.  Our thinking was, you know, we don't want to have duplicate requests.  I think

09:39    1    they'll review what we've submitted so that they're
09:39    2    not bothering the government for the exact same
09:39    3    things.
09:39    4         I can't remember -- I would actually turn to
09:40    5    Mr. Nomellini, because I don't remember if we have
09:40    6    officially worked it out or we worked it out in
09:40    7    concept what we're doing with the documents we
09:40    8    receive.
09:40    9         **MR. NOMELLINI:**  Your Honor, there's a
09:40   10    provision in the ESI order that says the issuing party
09:40   11    has to turn over what they receive from the FOIA
09:40   12    requests or *Touhy* requests within 14 days of receipt.
09:40   13         **JUDGE RODGERS:**  I did see that.  I apologize
09:40   14    for even bringing that up.  I did see that.  Thank
09:40   15    you.
09:40   16         I would like -- and this will be largely
09:40   17    dictated by the speed at which the military responds
09:40   18    to these *Touhy* requests.  I would like the affirmative
09:40   19    defense issues to be decided by the end of the year.
09:40   20    So that's my internal plan.  But I know, like I said,
09:41   21    a lot of that will be dictated by how quickly the
09:41   22    Government responds to your *Touhy* requests.
09:41   23         **MS. BRANSCOME:**  That was our concern and why
09:41   24    we wanted to be able to come back to Your Honor to
09:41   25    report on the progress that we've made with the

1     government.

2          The meeting that we had at the last time we

3     were here in Pensacola with the government

4     representatives, although we do understand that the

5     AUSAs who are involved in that meeting are not

6     necessarily going to be involved in the process, what

7     they articulated as the appropriate way for the

8     parties to get information through *Touhy*, I'm afraid,

9     although I understand Your Honor's goal to have it

10    resolved by the end of the year, if the government

11    takes a position even close to what was articulated in

12    that meeting, I'm not sure that that's possible.

13         One of the big positions that they took in

14    that meeting that was troublesome, from my perspective

15    in terms of timing, was not permitting informal

16    interviews with government employees, and they would

17    require formal depositions even to speak with members

18    of the government and the military about these issues.

19         The challenge there, of course, is that we

20    may see someone's name on a document or a handful of

21    documents, think they would know something relevant,

22    but instead of being able to simply contact them and

23    find out from that person that, *Yes, in fact, my name*

24    *appeared on a few documents but I don't really know*

25    *anything, you really want to go talk to John Smith*

09:42   1   *down the hall,* instead of being able to do that

09:42   2   informally and then being able to follow-up with John

09:42   3   Smith, we would have to be formally noticing and

09:42   4   taking depositions of perhaps the first individual who

09:42   5   would then sit for a deposition being represented by

09:42   6   the government to only then tell us they really

09:42   7   weren't involved and we need to go see someone else.

09:42   8          And I think if that is the process that we

09:42   9   are facing, this could be lengthy, despite our best

09:42   10  efforts.  I really do think we're working

09:43   11  collaboratively with the Plaintiffs to try to be as

09:43   12  efficient as possible.

09:43   13         The other thing was, it was explained to us

09:43   14  that we should gather information by deposition to

09:43   15  then submit *Touhy* requests, and the level of

09:43   16  specificity that was described to us that would be

09:43   17  necessary in the *Touhy* requests are something that,

09:43   18  quite frankly, I don't know that we could do without

09:43   19  taking depositions or being able to speak with

09:43   20  government employees, which does sort of flip the

09:43   21  sequence on its head for a typical civil litigation.

09:43   22  It's not impossible to do, but it does take a

09:43   23  substantial amount of time even with our best efforts.

09:43   24         So those -- I would say to Your Honor, I

09:43   25  don't know that that's how the government will

09:43   1   ultimately land, and perhaps we will be able to move

09:43   2   forward more expeditiously.  That's what we talked

09:43   3   about with the Plaintiffs in New York was why we

09:43   4   really can't give an estimate right now because there

09:43   5   seems to me to be a wide range in terms of the process

09:43   6   that the government would allow, and one might be more

09:44   7   reasonable than the other.

09:44   8         And so that was why we structured it in the

09:44   9   way that we did, that we would propose coming back to

09:44   10   you after we've gone through a few months and have a

09:44   11   sense -- you know, perhaps our initial set of *Touhy*

09:44   12   requests will go through and the government will

09:44   13   provide documents and we may be moving forward very

09:44   14   efficiently; or perhaps not, and then we can come back

09:44   15   and report to Your Honor on that.

09:44   16         **JUDGE RODGERS:**  All right.  As you know, I

09:44   17   was not in that meeting with Maj. Evans so I was not

09:44   18   aware of the position that the AUSAs took in this

09:44   19   regard.  They are not the decision-makers in terms of

09:44   20   these document requests, but it's good to know this.

09:44   21         And this is a reason why I want to meet with

09:44   22   leadership -- if I do take that meeting with DoD and

09:44   23   DOJ, that I would like to meet with you all ahead of

09:44   24   time to make sure that I know what the issues are for

09:44   25   you all.

09:44   1       **MR. SEEGER:**  Your Honor, I just want to tell

09:44   2   you how happy we are that the Court wants to be

09:45   3   actively involved in this because I think -- and I

09:45   4   don't want to dispute anything what Ms. Branscome

09:45   5   said, but I think where this is going to get tricky is

09:45   6   whether 3M is being held up by the process or is it

09:45   7   everything under the sun and maybe there are things

09:45   8   there that we would think they don't need.

09:45   9       Now, I don't want to -- I'm not trying to

09:45   10   foreshadow a problem at all.  I'm just saying that I

09:45   11   can see where we're back before you and your

09:45   12   involvement -- this would be helpful because you'll

09:45   13   see it actually happening, but we could be back before

09:45   14   you saying, *Why do you need these six items to go*

09:45   15   *forward with that defense?*

09:45   16       So if it's the process holding them up,

09:45   17   that's something we are sensitive to.

09:45   18       **JUDGE JONES:**  I had a question.  I think

09:45   19   that's a great idea you're going to focus discovery on

09:45   20   the affirmative defense and they'll be teed up for the

09:45   21   Court to resolve.  But I see both sides make reference

09:45   22   to pursuing discovery that the parties believe is

09:45   23   relevant to those affirmative defenses.

09:45   24       Is everyone on the same page as to what --

09:46   25   generically what type of information they would seek

09:46  1    to prove up their affirmative defenses and the type of

09:46  2    discovery the Plaintiffs might want to contest those

09:46  3    affirmative defense?

09:46  4         And what I don't want to happen is we go

09:46  5    through this whole process and we're eight months down

09:46  6    the road and -- you know, when you segregate discovery

09:46  7    like this, they sort of bleed into other issues.  And

09:46  8    I just want to make sure this is the kind of thing

09:46  9    where both sides have a good perspective on what's

09:46  10   going to be the universe of information you're going

09:46  11   to need to discover.

09:46  12        MR. SEEGER:  I would say at this early point

09:46  13   we have some sense of what it is that they're looking

09:46  14   for.  Whether we agree it's all necessary or not,

09:46  15   we've put those issues aside for now so this process

09:46  16   can get started.  And I think it's a work in progress.

09:46  17   I don't think I'm going to have a satisfactory answer

09:47  18   for you, Your Honor, on that right now.

09:47  19        My guess is, right now if we had to go

09:47  20   through everything, we wouldn't see eye to eye on

09:47  21   every request or why it's needed, and they probably

09:47  22   wouldn't either for what we need to challenge those

09:47  23   defenses.  But I think that, as we continue to work

09:47  24   through them, we'll get better at it.

09:47  25        MS. BRANSCOME:  It's certainly something that

09:47  1    we discussed in New York, and the Plaintiffs expressed

09:47  2    a concern, *Would, for example, 3M engage in defensive*

09:47  3    *discovery that's narrowly tailored to the defenses,*

09:47  4    *and then, if the case proceeds beyond that, say, well,*

09:47  5    *now we've got to start our company discovery all over*

09:47  6    *again because we didn't give you these things around*

09:47  7    *the edges.*

09:47  8         And we assured them that that was not the

09:47  9    intent in having phase discovery.  We're as interested

09:47  10   in efficiency as they are.

09:47  11        I think there are a few potential affirmative

09:47  12   defenses that are relevant in this matter, and across

09:47  13   them they cover actually a broad range of what I would

09:47  14   refer to as non-plaintiff specific issues.

09:48  15        We also engaged in a discussion about how the

09:48  16   experts would fit into this.  I don't know that we've

09:48  17   reached complete resolution, but we are as mindful as

09:48  18   you are, Your Honor, of not sort of artificially

09:48  19   segmenting the case but rather sequencing it in a way

09:48  20   that makes sense.

09:48  21        **MR. AYLSTOCK:**  I'd just make clear that from

09:48  22   our discussion there's not going to be limitations

09:48  23   placed on this phasing process on our ability to go

09:48  24   ahead and discover the general liability on this case.

09:48  25   Because we do, on the Plaintiffs' side, see them as

09:48   1    inextricably intertwined, they're different sides of

09:48   2    the same coin.

09:48   3        **JUDGE RODGERS:**  And that's what is commencing

09:48   4    now, you starting that discovery now?

09:48   5        **MR. AYLSTOCK:**  Yes, Your Honor.

09:48   6        **MS. BRANSCOME:**  It is, Your Honor.  We don't

09:48   7    necessarily -- as you might imagine, we don't

09:48   8    necessarily agree with the Plaintiffs' position that

09:48   9    they overlap with general liability.  But for purposes

09:48   10   of discovery I believe that the requests will be

09:48   11   sufficiently related such that we would not be sort of

09:49   12   withholding documents saying, well, it's not relevant

09:49   13   to this specific subfactor of an affirmative defense

09:49   14   and so we'll deal with it later.  We do view it as

09:49   15   sort of general company discovery first.

09:49   16        And like we've put in the order, that's not

09:49   17   to say that Plaintiffs' specific discovery is

09:49   18   completely stayed.  It's moving forward, and we're

09:49   19   working out the details of exactly how so that both

09:49   20   sides are using their resources wisely.

09:49   21        **MR. SEEGER:**  I'm sorry, Your Honor, could I

09:49   22   add one thing?

09:49   23        Judge Jones, not to skirt the issue that you

09:49   24   raised, but also once -- and I think Mr. Brock has

09:49   25   some ideas on how with his -- but once we really see a

09:49  1    schedule of what those defenses exactly are and once

09:49  2    we know what they are, I think we can begin to drill

09:49  3    down more productively.

09:49  4         **JUDGE RODGERS:**  Right.  And that relates to

09:49  5    my question just a little while ago about responding

09:49  6    to the complaints.

09:49  7         **MS. BRANSCOME:**  Yes, Your Honor.  And we will

09:49  8    figure out the right procedural vehicle and do that.

09:49  9         One thing that I would note, Your Honor, is

09:50  10   that some of these defenses can be mixed questions of

09:50  11   law and fact.  Not all of them.  But I just wanted to

09:50  12   put that on Your Honor's radar.  I don't know that

09:50  13   we're ready yet to stake out a position on precisely

09:50  14   how we would seek to have those issues resolved, but I

09:50  15   just wanted to flag that for Your Honor that some of

09:50  16   them are complicated, and it will be helpful for you

09:50  17   to see them in writing.

09:50  18        **JUDGE RODGERS:**  Right.  And I'm aware of the

09:50  19   two that are identified in your position papers.  The

09:50  20   other that I've discussed, at least I know I discussed

09:50  21   with Mr. Aylstock and you, Ms. Branscome, early on was

09:50  22   the political question doctrine and whether that is

09:50  23   going to be an issue in this case.

09:50  24        And so I want to flag that again for you all

09:50  25   and make sure you have that on your radar screen

09:50    1    because it is a subject matter of jurisdiction issue.
09:50    2    And I would prefer to address it as early as possible,
09:50    3    to the extent it is an issue.  And I'm not suggesting
09:51    4    it is or it isn't, but just keep it on your radar,
09:51    5    please, and raise it if and when it's appropriate.
09:51    6         We just had reference to the Plaintiffs'
09:51    7    individualized discovery and that now we're segueing
09:51    8    into fact sheets and profile forms which are different
09:51    9    than the initial census or different from that.
09:51   10         You all are still in, I know, discussions
09:51   11    about what form this discovery is going to take, so
09:51   12    I'm assuming then you're not in a position to speak
09:51   13    any more specifically to this than you have in your
09:51   14    report, I mean, whether we're doing a profile form,
09:51   15    profile form plus fact sheets, all of the above --
09:52   16         **MS. HUTSON:**  And that goes back to, Your
09:52   17    Honor, what Mr. Aylstock brought up earlier, which is,
09:52   18    when we have the vendor selected and we know what
09:52   19    they're able to populate automatically, that will help
09:52   20    us tremendously fine tune these forms so that they're
09:52   21    as efficient as possible.
09:52   22         **JUDGE RODGERS:**  Right.  There's such an
09:52   23    opportunity or a risk for duplication with these forms
09:52   24    and duplicated effort.  I know you all are going to
09:52   25    work hard to avoid that, and we have a subcommittee

09:52    1    that should be focused on this as well.

09:52    2        **MS. BRANSCOME:**  Yes.  And I think the idea of

09:52    3    avoiding duplication is something that is on both

09:52    4    sides.

09:52    5        **MS. HUTSON:**  That's true.

09:52    6        **MS. BRANSCOME:**  So the idea would be that, to

09:52    7    the extent we ultimately land with what I would view

09:52    8    as an integrative process, so whether that is, you

09:52    9    know, an initial census plus the plaintiff fact sheet

09:52   10    or an initial census plus a profile form plus a

09:53   11    plaintiff fact sheet where the initial census is

09:53   12    automated but the profile form is not, the idea would

09:53   13    be that the information would build and not simply --

09:53   14        **JUDGE RODGERS:**  Repeat.

09:53   15        **MS. BRANSCOME:**  -- be sort of repeat

09:53   16    questions.  But we are engaged with the Plaintiffs.

09:53   17    You know, they have concerns about what information

09:53   18    they can obtain quickly from their clients, but we

09:53   19    also have concerns in making sure that the information

09:53   20    that we get is actually valuable.  So that's part of

09:53   21    the ongoing discussion.  But the idea of avoiding

09:53   22    duplication is on both of our minds.

09:53   23        **MS. HUTSON:**  And our committee that you

09:53   24    appointed on this has been working actively on these

09:53   25    forms as well and are engaged in this conversation

09:53    1    with us.

09:53    2         **JUDGE RODGERS:**  Very good.  Thank you.

09:53    3         Well, speaking of the vendors, that's the

09:53    4    next item in your report.  We have vendors appearing

09:53    5    here tomorrow morning to make presentations in

09:53    6    different categories or buckets of services, military

09:54    7    records collection, then the litigation management

09:54    8    platform firms, and then ESI firms.

09:54    9         Let me ask about the ESI specific vendors.

09:54   10    I'm aware of three but I wasn't sure about the fourth.

09:54   11    Are there going to be three or four that are going to

09:54   12    present tomorrow?

09:54   13         **MS. BRANSCOME:**  I believe there are four, but

09:54   14    I just wanted to ask Your Honor -- one of our vendor

09:54   15    representatives is in the courtroom so I just didn't

09:54   16    know if you would like us to make sure he's excused or

09:54   17    if you want to proceed -- I just wanted to flag that

09:54   18    for Your Honor.

09:54   19         **JUDGE RODGERS:**  Thank you, and I appreciate

09:54   20    that, and it's appropriate for you to let me know

09:54   21    that.  I'm not going to get into anything any more

09:54   22    specific outside of just logistics and really how many

09:54   23    -- I need to know how many ESI vendors for planning

09:54   24    purposes that will be presenting.

09:54   25         **MS. BRANSCOME:**  So today we have -- and I

09:54  1   believe the Plaintiffs do as well but I haven't had a

09:54  2   chance to meet them yet.  We have our respective ESI

09:55  3   vendors who are handling our individual document

09:55  4   discovery who are here to assist with the ESI

09:55  5   presentation.  And Your Honor I believe indicated you

09:55  6   might want to see Relatively or something.

09:55  7              **JUDGE RODGERS:**  Yes.

09:55  8              **MS. BRANSCOME:**  And they can speak to the

09:55  9   details of TAR or CAL -- I'm learning all of my

09:55  10  acronyms.  That's who is here today.

09:55  11             For tomorrow we would have the four vendors

09:55  12  who presented in New York, who three of them are

09:55  13  platform, the fourth is Cerner who can do the document

09:55  14  collection.  I have to admit I may need to defer to

09:55  15  Jenn to know the status of the ESI vendors for

09:55  16  tomorrow.

09:55  17             **JUDGE RODGERS:**  That's what I'm referring to.

09:55  18             **MR. AYLSTOCK:**  So this company called Meta-e

09:55  19  that has Relativity that Plaintiffs suggested present,

09:55  20  and they're going to present tomorrow.  I think BDO is

09:55  21  associated with BrownGreer.  And Ankura also has the

09:55  22  Relatively capability.  And then I think there was a

09:56  23  couple of other Relatively vendors that --

09:56  24             **MS. HOEKSTRA:**  I have the names.

09:56  25             **MR. AYLSTOCK:**  Ms. Hoekstra has the names.

|   |   |   |
|---|---|---|
| 09:56 | 1 | **JUDGE RODGERS:**  Okay.  Thank you. |
| 09:56 | 2 | **MR. AYLSTOCK:**  She's been working with Ms. |
| 09:56 | 3 | Six on this. |
| 09:56 | 4 | **MS. HOEKSTRA:**  Yes, Michelle Six confirmed |
| 09:56 | 5 | that it was Sandline Discovery and KLD who are the |
| 09:56 | 6 | other two vendors. |
| 09:56 | 7 | **JUDGE RODGERS:**  So Sandline, KLD -- |
| 09:56 | 8 | **MR. AYLSTOCK:**  Meta-e and BDO. |
| 09:56 | 9 | **JUDGE RODGERS:**  -- Meta-e and BDO.  All |
| 09:56 | 10 | right.  Thank you. |
| 09:56 | 11 | You have submitted proposed orders in the |
| 09:56 | 12 | area of confidentiality and privilege as well as |
| 09:56 | 13 | preservation and then the ESI protocol order. |
| 09:56 | 14 | I've reviewed those.  I'm prepared to enter |
| 09:57 | 15 | them unless you wish to be heard more specifically on |
| 09:57 | 16 | them. |
| 09:57 | 17 | **MR. AYLSTOCK:**  No.  I think we're ready for |
| 09:57 | 18 | them to be entered, Your Honor. |
| 09:57 | 19 | **JUDGE RODGERS:**  And you're working on |
| 09:57 | 20 | deposition protocol.  When do you expect the |
| 09:57 | 21 | depositions to kick off? |
| 09:57 | 22 | **MR. AYLSTOCK:**  Not for a little while, Your |
| 09:57 | 23 | Honor.  I think we're months out from at least the |
| 09:57 | 24 | first plaintiff type deposition.  We may have some |
| 09:57 | 25 | *Touhy* depositions a little earlier depending on what |

09:57  1   the government says.

09:57  2        **JUDGE RODGERS:**  I was going to say, I hope

09:57  3   you're going to have some depositions prior to months

09:57  4   away.

09:57  5        **MR. AYLSTOCK:**  Well, the *Touhy* ones primarily

09:57  6   would be that.  And Mr. Pennock can speak to the

09:57  7   particulars of where we are on the depo protocol

09:57  8   discussion, if you'd like to hear.

09:57  9        **JUDGE RODGERS:**  Okay.  Mr. Pennock?

09:57  10       **MR. PENNOCK:**  Good morning, Your Honors.

09:57  11       **JUDGE RODGERS:**  Good morning.

09:58  12       **MR. PENNOCK:**  Just to give the Court an

09:58  13  outline, we did exchange deposition protocols, and

09:58  14  they were considerably different.

09:58  15       At the meet and confer on June 3rd, we spent

09:58  16  a considerable amount of time going through point by

09:58  17  point in each of the protocols where the disagreements

09:58  18  were.  It was a little difficult for us to redline the

09:58  19  two different protocols, so we did it in sort of an

09:58  20  in-person redline.

09:58  21       And we made some progress on some of the

09:58  22  minor issues where I think were at least in principle

09:58  23  resolved.  I think we got down to about four major

09:58  24  issues that we have to work through yet.  There was

09:58  25  some discussion whether we even needed a protocol at

09:58    1    this juncture, but we were taking a cue from the

09:58    2    Court's nine points that you wanted covered that you

09:58    3    would prefer to have one.  We weren't certain.  In

09:59    4    Abilify we know one was not needed.

09:59    5        But in any event, we have definitely

09:59    6    crystallized all of the major and minor issues and

09:59    7    resolved some of them, but we need a little more time

09:59    8    to bang out where we're going to end up on it.

09:59    9        **JUDGE RODGERS:**  So the areas of inquiry or

09:59   10    deposition that it sounds like you all might be

09:59   11    engaging in would be the *Touhy* type depos with the

09:59   12    military.  And then what about the corporate depos?

09:59   13        **MR. PENNOCK:**  And that was one of the issues,

09:59   14    Your Honor, is that we envisioned that with respect to

09:59   15    the *Touhy* depos that there was going to have to be

09:59   16    involvement by the government in dictating what was

09:59   17    going to happen and how they were going to happen.  So

09:59   18    that was put aside, if you will.  We didn't envision

09:59   19    that we would be able to sort of weigh out how exactly

09:59   20    each of those would occur because of all the

09:59   21    negotiations that have to happen with respect to the

10:00   22    depos *ab initio*.

10:00   23        With respect to the 3M depos --

10:00   24        **JUDGE RODGERS:**  But that doesn't necessarily

10:00   25    mean you can't have protocol apply to those

10:00    1    depositions in terms of counsel protocol.  I mean, the
10:00    2    government doesn't dictate that.
10:00    3           **MR. PENNOCK:**  That's true, Your Honor.
10:00    4           **JUDGE RODGERS:**  They'll dictate the type of
10:00    5    questions that you'll ask.
10:00    6           **MR. PENNOCK:**  That's true.  We had -- but in
10:00    7    terms of -- well, we did not discuss, as to the *Touhy*
10:00    8    depos, issues concerning, for example, length of the
10:00    9    depos.  Of course, venue of the depos will be quite
10:00   10    variable.
10:00   11           With respect to the 3M depos, we did discuss
10:00   12    all of these issues.  The four major issues I think
10:00   13    are how many depos there will be of 3M or will we do
10:00   14    it by deposition days, in other words, we get, let's
10:00   15    say, 40 days of depos -- just throwing out a number --
10:00   16    of 3M witnesses and then we can use them however we
10:01   17    want.  There may be some witnesses that require two
10:01   18    days of depo.
10:01   19           So the other issues that we talked about were
10:01   20    the length of the deposition day.  Whether this
10:01   21    protocol should apply to case specific depos, such as
10:01   22    experts and the case specifics, we thought that at
10:01   23    this point that was premature.  I think the Defendants
10:01   24    wanted one unitary deposition protocol.
10:01   25           The other issue that we had were timing of

10:01    1    the Defendant's direct trial examinations of their
10:01    2    witnesses, when that would occur, and we had some
10:01    3    disagreement on that.
10:01    4         The bottom line is there's definitely work to
10:01    5    be done to achieve a final protocol here.  But as I
10:02    6    said, we did go through each of the disagreements --
10:02    7    or actually each of the paragraphs in each of the
10:02    8    orders at the meet and confer and discuss them.  So we
10:02    9    have moved it along quite a bit.
10:02   10         **JUDGE RODGERS:**  All right.  Thank you,
10:02   11    Mr. Pennock.
10:02   12         Ms. Branscome, do you wish to add to that?
10:02   13         **MS. BRANSCOME:**  I do a little bit, Your
10:02   14    Honor.  I think the deposition protocol that we had
10:02   15    sent to the Plaintiffs was comprehensive, as
10:02   16    Mr. Pennock alluded to, in the sense that we had set
10:02   17    forth categories in sort of company witness
10:02   18    depositions, third-party witness depositions that
10:02   19    would include the government or potentially
10:02   20    distributor witnesses and things of that nature,
10:02   21    experts, so then when we get to bellwether -- we were
10:02   22    able to discuss with the Plaintiffs the idea of the
10:02   23    phased process for this case, and in light of that, we
10:02   24    do think that perhaps a more narrow deposition
10:02   25    protocol could be put in place that would cover the

10:02   1    third-party witnesses, the company witnesses, and
10:03   2    government witnesses.
10:03   3            And so that's what we are working through.
10:03   4    From our position, we do think a protocol is helpful.
10:03   5    There are a number of issues, including even simple
10:03   6    ones like the sequencing of the questioner, which can
10:03   7    be important and we do think are things that should be
10:03   8    worked out in advance, even for the government
10:03   9    depositions.
10:03   10           From our understanding, the government may
10:03   11   have a strong view about the scope of the deposition.
10:03   12   But the process, as long as it's in line with the
10:03   13   federal rules, is something that I would suspect they
10:03   14   would defer to us.  They're not going to dictate who
10:03   15   asks the first question and how many questioners.
10:03   16           So, from our standpoint, we think it's an
10:03   17   important protocol to get worked out and get worked
10:03   18   out quickly, but we are in communication with the
10:03   19   Plaintiffs, and I think we can get there, as with the
10:03   20   other orders.
10:03   21           The areas that Mr. Pennock identified are
10:03   22   some of the key areas.  We also were concerned about
10:03   23   the order of questioning and then making sure that we
10:04   24   have sufficient time that the custodial files, or
10:04   25   however we end up producing those, get produced in

10:04   1    time for the Plaintiffs to review them and also for us

10:04   2    to review them before our witnesses are being deposed.

10:04   3        So I think this one is still in progress,

10:04   4    Your Honor.  I think we made very good progress on all

10:04   5    of the others, and this one is just sort of the next

10:04   6    one in line to hopefully reach resolution on.

10:04   7        I believe, Your Honor, we promised you a date

10:04   8    to come back to you --

10:04   9        **JUDGE RODGERS:**  The 15th.

10:04  10        **MS. BRANSCOME:**  -- on that, and we will come

10:04  11    back to you by that date, if that is acceptable to

10:04  12    you.

10:04  13        **JUDGE RODGERS:**  All right.  I would encourage

10:04  14    you to focus on the categories of discovery that are

10:04  15    going to be at issue here in the beginning as opposed

10:04  16    to trying to come up with a protocol for experts and

10:04  17    case specific plaintiff -- just focus on what's at

10:04  18    issue now, see if you can come up with a protocol for

10:04  19    those depositions, and then, who knows, maybe that

10:04  20    will work for the others.

10:04  21        **MR. AYLSTOCK:**  I did want to correct one

10:05  22    thing with regard to the company depositions.  I do

10:05  23    think we're in a position where we could be taking

10:05  24    30(b)(6) depositions in a matter of weeks, so I agree

10:05  25    that we should focus on those categories of

| | |
|---|---|
| 10:05 | 1 |
| 10:05 | 2 |
| 10:05 | 3 |
| 10:05 | 4 |
| 10:05 | 5 |

depositions.

We've also reached an agreement as to the location of the company depositions, at least the default location. So a lot of this I think, particularly given how cooperatively we've worked so far, I don't think things like when a deposition starts on the day and when it has to end, that that level of detail is necessary particularly, but happy to discuss those types of things as well.

So I think the federal rules provide a lot of guidance, but as far as the order of questioners, number of questioners, those things we'll be prepared to work out or present for Your Honor's rulings by the deadline we imposed on ourselves.

**JUDGE RODGERS:** I also think it makes sense and would encourage you as far as, at least for the corporate depositions, to consider set-aside dates, blocks of time for those, and perhaps the government witnesses as well.

You're also continuing to work on the interrogatories directed to the Defendants and whether or not there is going to be a presumptive cap to the number of those interrogatories.

Ms. Hutson?

**MS. HUTSON:** Yes, that's correct. We're

10:06   1   working on that as we speak and should have reached

10:06   2   resolution I would think by the next hearing even.

10:06   3        **JUDGE RODGERS:**  Very good.  Thank you.

10:06   4        So item 15 in the report addresses class

10:07   5   issues and more specifically Plaintiff Sean Lynch's

10:07   6   Motion to Establish a Separate Class Action Track and

10:07   7   also request for interim class counsel, that's

10:07   8   Document No. 213.

10:07   9        I understand you all did discuss this, Mr.

10:07  10   Seeger and Ms. Branscome, at your conference, and

10:07  11   there's been an agreement in which you are going to

10:07  12   jointly oppose the motion.  I think I'm going to ask

10:07  13   that you do so formally because I have a motion on the

10:07  14   docket and that you submit an opposition brief to the

10:07  15   motion, of course jointly seems to make sense.

10:07  16        How much time do you think y'all would need

10:07  17   to respond to that motion?

10:07  18        **MR. SEEGER:**  Two weeks, Your Honor?

10:07  19        **JUDGE RODGERS:**  All right.

10:08  20        **MR. SEEGER:**  May I point out one thing?

10:08  21        **JUDGE RODGERS:**  Yes.

10:08  22        **MR. SEEGER:**  To the extent that this becomes

10:08  23   our running sort of form of report that we use, I

10:08  24   don't want to -- I mean, so right now the only issues

10:08  25   to be discussed on the class side is the issue of the

10:08   1   motion that is before the Court.  This section may
10:08   2   grow.  I didn't want -- you know, we haven't even
10:08   3   discussed this with 3M, but we may be putting class
10:08   4   issues on the table down the road, perhaps a 23(c)(4)
10:08   5   issue may come up.  So we --
10:08   6           **JUDGE RODGERS:**  Right, I understand, and I
10:08   7   appreciate you making that clear.  This is just to
10:08   8   respond to the specific motion that's pending on the
10:08   9   docket now so that I may dispose of that motion.
10:08  10           I believe that covers the report.  In the
10:09  11   context of discussing the report, I've addressed a
10:09  12   couple of the issues that I had that were still
10:09  13   outstanding.
10:09  14           There is, though, still the omnibus remand
10:09  15   motions that we have that are out there.  We discussed
10:09  16   this before, whether you all, Mr. Aylstock, intend to
10:09  17   move for remand of certain cases.
10:09  18           **MR. AYLSTOCK:**  Yeah, those are not my
10:09  19   motions, Your Honor.  There are others in the
10:09  20   courtroom that have them that might be able to address
10:09  21   theirs.
10:09  22           From our perspective, this case is getting
10:09  23   off the ground.  I don't know of a great urgency for
10:09  24   it, but I'm happy to defer to those with those pending
10:10  25   motions to address it.

10:10      1          **JUDGE RODGERS:**  All right.  Well, you were

10:10      2   asked to discuss this at the CMC and discuss perhaps a

10:10      3   briefing schedule for the refiling of any remand

10:10      4   motions.  Did you discuss that?  Have you discussed

10:10      5   that with counsel?

10:10      6          **MR. AYLSTOCK:**  We discussed it briefly at the

10:10      7   CMC, and we're in agreement that there didn't seem to

10:10      8   be any great urgency in that.

10:10      9          Your Honor, we can talk to the lawyers who

10:10     10   filed those motions as well and see if they're in

10:10     11   agreement with that and be prepared to address it at

10:10     12   the next CMC as well.

10:10     13          **JUDGE RODGERS:**  All right.  Well, the motions

10:10     14   have been terminated pursuant to my pretrial order 2

10:10     15   but it was with the understanding -- I knew that the

10:11     16   issues were still out there.  But unless and until

10:11     17   there's a motion refiled, then I'm not going to bring

10:11     18   it up again.  I'd just ask that you all be aware of

10:11     19   it.

10:11     20          I have some dates for you all for upcoming

10:11     21   case management conferences going forward.  In each

10:11     22   conference, the formal conference will begin at 9:30

10:11     23   Central Time, and there will be a preconference

10:11     24   meeting with leadership at 8:30.

10:11     25          The next conference is Monday, July 22nd;

10:11   1   Friday, August 30th will be the following in August;
10:11   2   Friday, September 27th -- and I will put this in my
10:12   3   order -- Friday, October 25th; Friday, November 22nd;
10:12   4   and Monday, December 16th.  And, of course, as has
10:12   5   already been scheduled, science day is set for August
10:12   6   26th.
10:12   7            If these dates do not work for individuals
10:12   8   who need to be at these conferences, there may be some
10:12   9   ability to adjust -- not a whole lot, particularly not
10:12   10  the July, August, and September dates.  But again, if
10:12   11  it's inconvenient for you all or there's a conflict
10:12   12  that's unavoidable -- because it needs to be more than
10:13   13  inconvenient, it needs to be unavoidable -- then I'll
10:13   14  try to work with you and find another date.  But right
10:13   15  now these were the dates that were good on the Court's
10:13   16  calendar and I felt it important to get these
10:13   17  scheduled going forward for several months.
10:13   18            Also, I would like -- I see a benefit to it.
10:13   19  If you all do not, then I'll certainly hear from you
10:13   20  and most likely change my mind about this.  But I
10:13   21  would like to hold biweekly telephone calls with
10:13   22  leadership counsel at least for the next few months.
10:13   23            But what I'd like to hear from you on and I'm
10:13   24  not sure about is whether the time for these calls
10:13   25  should be devoted to dealing with discovery issues or

10:14  1  whether we need separate discovery calls.

10:14  2          In my mind, the leadership calls are really

10:14  3  more at the 30,000 foot level.  And it may be that we

10:14  4  set these calls and we all exchange pleasantries and

10:14  5  see how everyone is doing and then decide that there's

10:14  6  not really anything to discuss.

10:14  7          I don't need agendas for these calls unless

10:14  8  there is something specific that you all are aware of

10:14  9  that you feel I need a heads-up on.  If there's a big

10:14  10  dispute about something, then I would want a heads-up.

10:14  11          So, Mr. Aylstock and Ms. Hutson and Mr.

10:14  12  Seeger, I'll start with you all and see if you think

10:14  13  this would be helpful to have this time set aside.  I

10:14  14  don't envision these being very lengthy calls but --

10:14  15          **MR. AYLSTOCK:**  I certainly think it's

10:14  16  helpful, Your Honor, just to keep things moving along.

10:15  17          **JUDGE RODGERS:**  And I'll hear from Ms.

10:15  18  Branscome in one moment.  What about discovery?  In

10:15  19  Abilify we had regular routine discovery calls.  I

10:15  20  know discovery hasn't -- you're not in the throws of

10:15  21  it yet, and I'm sure there will be issues that will

10:15  22  come up.  I don't know if we need regular calls there.

10:15  23          I feel certain Judge Jones would be willing

10:15  24  to help out with those as well if I'm not available.

10:15  25          **MR. AYLSTOCK:**  I think it would be helpful,

10:15   1   Your Honor.  We had provided some draft requests for

10:15   2   production prior to the Rule 26 just so we can all see

10:15   3   what we were going to be asking for.  As soon as the

10:15   4   discovery stay is lifted, we'll be prepared to serve

10:15   5   those.  So it will take a little time to crystallize

10:15   6   any discovery issues, so we could notify the Court on

10:15   7   one of our biweekly calls if that became necessary.

10:15   8   But I think the idea of it is a very good one just

10:16   9   because it keeps things moving along.

10:16   10          **JUDGE RODGERS:**  Ms. Branscome?

10:16   11          **MS. BRANSCOME:**  I agree with Mr. Aylstock.  I

10:16   12   think in the very beginning it might be a little

10:16   13   premature to start them right off the bat.  But I

10:16   14   think we'll get a sense pretty quickly once we foresee

10:16   15   issues crystallizing, then we could give Your Honor a

10:16   16   heads-up on one of the biweekly calls, which I do

10:16   17   think will be very valuable when it's time to start

10:16   18   discovery calls.  But right in the beginning I think

10:16   19   we're still getting organized and also I suspect in

10:16   20   the beginning a fair amount of it would be the

10:16   21   government discovery which Your Honor will be involved

10:16   22   with.

10:16   23          **JUDGE RODGERS:**  That was my thinking as well.

10:16   24   So Ms. Jacobs will reach out to leadership to start a

10:16   25   schedule of those biweekly calls.

10:16  1      **JUDGE JONES:**  I just had one question.  This

10:16  2  is sort of a left-hand turn, we didn't really touch on

10:17  3  this.

10:17  4      The ESI protocol, which I assume you're going

10:17  5  to enter, the parties are negotiating a separate TAR

10:17  6  protocol within 14 days.  And I don't really need to

10:17  7  hear about that in detail, but I was interested in

10:17  8  knowing where those discussions are.

10:17  9      Are you 90 percent of the way there or is

10:17  10  that something after you leave here today you're going

10:17  11  to say, *Well, I guess we need to talk about a TAR*

10:17  12  *protocol?*

10:17  13      **JUDGE RODGERS:**  I was hoping to hear about it

10:17  14  in your presentation.

10:17  15      **MR. BUCHANAN:**  Yes, there's been a proposal

10:17  16  by the Defense, and actually the tech consultants for

10:17  17  the Defense and the tech consultants for the

10:17  18  Plaintiffs happen to be in Pensacola today.  So our

10:17  19  hope is to have some time this afternoon after this to

10:17  20  really meet face to face and start to work through

10:17  21  some of those things.  As Your Honor knows, there's

10:17  22  lot of nuance to a TAR protocol.

10:18  23      **JUDGE RODGERS:**  He knows.  I don't know.

10:18  24      **MR. BUCHANAN:**  We'll talk about that in the

10:18  25  presentation, Your Honor, but, yes, there's a lot of

10:18  1   nuance to it.  And I think having the vendors face to

10:18  2   face with their counsel can help us get to that.

10:18  3          **JUDGE RODGERS:**  Very good.

10:18  4          Anything else that you can think of from the

10:18  5   Plaintiffs' side?

10:18  6          **MR. AYLSTOCK:**  Not from the Plaintiffs.

10:18  7          **JUDGE RODGERS:**  Ms. Branscome, Mr. Brock?

10:18  8          **MS. BRANSCOME:**  Not from us, Your Honor.

10:18  9          **JUDGE RODGERS:**  Then, Mr. Buchanan, back to

10:18  10  you.  Are you and Ms. Six and Ms. Hoekstra ready to

10:18  11  start with the presentation or do you need a little

10:18  12  bit of time?

10:18  13         **MR. BUCHANAN:**  I'm ready on my side.  I don't

10:18  14  know what it takes technically to get Ms. Six into the

10:18  15  hearing and to get the video feed up, Your Honor.  But

10:18  16  we're happy to take five or ten minutes and get

10:18  17  rolling at your convenience.  But I say five or ten

10:18  18  not knowing --

10:18  19         **MS. HOEKSTRA:**  Maybe 15, 20.

10:19  20         **MR. BUCHANAN:**  Maybe 15, 20.

10:19  21         **JUDGE RODGERS:**  Have you all meet with our IT

10:19  22  personnel?

10:19  23         **MS. HOEKSTRA:**  I spoke with them on Friday,

10:19  24  Your Honor.

10:19  25         **JUDGE RODGERS:**  Okay.  Well, we'll ask them

10:19  1   to come up and meet with you all, and you can just let

10:19  2   Ms. Simms know and she'll let me know when you're

10:19  3   ready.

10:19  4          **MR. BUCHANAN:**  Thank you.

10:19  5          **JUDGE RODGERS:**  Next CMC is July 22nd.  Does

10:19  6   anyone have an issue with that date?

10:19  7          Ms. Branscome?

10:19  8          **MS. BRANSCOME:**  Unfortunately, Your Honor, I

10:19  9   have a hearing in Los Angeles that day.  I can check

10:19  10  with that judge to see if that hearing could move, but

10:19  11  I have been told in the past that it could not for

10:19  12  other reasons.  So I apologize right out the gate for

10:19  13  having a conflict.

10:19  14         I don't know with flight schedules, but I

10:19  15  might be able to get here for the 23rd.  But certainly

10:19  16  any other day that week does work for me.  It's just

10:19  17  that Monday.  Or even the Friday before, Your Honor.

10:19  18  I'm not trying to postpone it.  I understand why you

10:19  19  want to meet with us soon.

10:19  20         **JUDGE RODGERS:**  Okay.  I'll check my dates

10:20  21  and let you know, and then hopefully that's not going

10:20  22  to present a problem for others.  We'll work with that

10:20  23  week or the Friday before.  I'll check with my boss

10:20  24  and see if I can be available.

10:20  25         If nothing else, then this concludes our case

10:20   1   management conference.   Thank you all for being here

10:20   2   and again for the excellent work that was put into the

10:20   3   joint report.

10:20   4           And then if you all will just let me know

10:20   5   when you're ready, we'll come back in for the ESI

10:20   6   presentations.

10:22   7

        8           *(Proceedings concluded at 10:22 a.m.)*

        9               --------------------

       10   *I certify that the foregoing is a correct transcript*
           *from the record of proceedings in the above-entitled*
       11   *matter.   Any redaction of personal data identifiers*
           *pursuant to the Judicial Conference Policy on Privacy*
       12   *are noted within the transcript.*

       13

       14   *s/Donna L. Boland*                    *6-27-2019*
           *Donna L. Boland, RPR, FCRR*                *Date*
       15   *Official Court Reporter*

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25