UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS ) <br> EARPLUG PRODUCTS LIABILITY ) <br> LITIGATION ) <br> ) <br> ) <br> This Document Relates To All Actions ) <br> ) | Case No. 3:19-md-2885 <br><br> Hon. Judge M. Casey Rodgers <br> Magistrate Judge Gary R. Jones |

**MEMORANDUM IN OPPOSITION TO**
**MOTION TO ESTABLISH A SEPARATE CLASS ACTION TRACK**

Plaintiff Leadership (Lead Counsel Bryan F. Aylstock; Co-Lead Counsel Shelley V. Huston; and Co-Lead Counsel Christopher A. Seeger) submits this memorandum in opposition to the motion of Plaintiff Sean Lynch ("Lynch") to establish a separate class action track and a procedure for selecting interim class counsel, filed May 3, 2019, Dkt. No. 213 (the "Motion"). Plaintiff Leadership asks that the Motion be denied without prejudice, and that any like motions for class certification or for the appointment of interim class counsel by counsel other than Plaintiff Leadership be similarly denied.

**I.    Class Issues Are Within The Scope of Plaintiff Leadership's Charge**

This Court has already appointed a leadership structure for plaintiffs in this MDL pursuant to an extensive and thorough vetting process.[1]  Plaintiff Leadership

---

[1]    *See* PTO 7, Dkt. No. 376 (May 22, 2019) at 1 ("The final selections were difficult, to say the least.  The Panel received over 190 applications, from highly

1

has been active and successful in the first month of its appointment, working to develop an efficient and structured framework for the proceedings herein, the results of which are evident in what has already been accomplished (*e.g.*, a Confidentiality and Privilege Order, Dkt. No. 434-1; an ESI Protocol, Dkt. No. 434-2; a Preservation Order, Dkt. No. 434-3; mutual early productions of documents; and service of Rule 34 discovery requests) and what is substantially in progress (*e.g.*, preparing and submitting to the Court a proposed TAR Protocol; continuing negotiations regarding a Deposition Protocol; vetting potential vendors to assist in the discovery process; facilitation and coordination of discovery from the military and government; and engaging in legal research, including with regard to class issues).

Issues relating to the potential certification of a class are clearly within the contemplated scope of Plaintiff Leadership's authority. *See* PTO 4, Dkt. No. 76, at 3 (Lead Counsel responsible for "proposing joint action and discussing and resolving matters of common concern"); *id.* at 6 (Executive Committee responsible for "management of any common issue"). Plaintiff Leadership has extensive experience with class issues in the context of MDLs, and has successfully employed Rule 23 mechanisms to achieve global resolutions in several other similarly large and complex MDLs. *See, e.g., In re National Football League Players' Concussion*

---

qualified and committed candidates, all of whom could undoubtedly perform ably in a leadership role.").

*Injury Litig.*, MDL No. 2323 (E.D. Pa.); *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591 (D. Kan.); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2672 (N.D. Ca.). Plaintiff Leadership also has extensive class action experience generally, including litigating and resolving class actions before this very Court. *See, e.g. Begley v. Ocwen Loan Servicing, LLC*, No. 3:16-cv-00149-MRC (N.D. Fla.). To that end, Plaintiff Leadership is mindful of the utility of Fed. R. Civ. P. 23 classes and subclasses to facilitate the litigation and disposition of cases and claims in particular settings, and as one component of its role, will continue to explore that option for impacted service members.

Lynch seeks to draw distinctions between plaintiffs who have filed personal injury suits in this MDL ("PI Plaintiffs") on the one hand, and earplug users who have not been diagnosed with an auditory injury ("Undiagnosed Plaintiffs")[2] on the

---

[2] Plaintiff Leadership notes that the Motion proposes a leadership structure for a class of service members who used the 3M Earplugs and *have not been diagnosed with an auditory injury*, and that the Motion does not purport to seek a leadership structure specifically for service members who *have not suffered an injury*. For the purposes of this memorandum, Plaintiff Leadership assumes that all members of the proposed class allege a present injury traceable to the 3M Earplugs, as Lynch does. *See* Complaint, *Sean Lynch v. 3M Company*, 1:19-cv-00273, Dkt. No. 1 (Feb. 1, 2019) ("Lynch Complaint"), at ¶ 20 ("Despite wearing combat Earplugs, the noise from the discharge perforated [Lynch's] right eardrum"). Plaintiff Leadership notes that to the extent Lynch proposes a class of only Undiagnosed Plaintiffs, Lynch himself would be excluded from that class. *Id.* at ¶ 23 ("Lt. Lynch was diagnosed with tinnitus and given 10% disability.").

other hand. Mot. at 2. On the basis of these distinctions, Lynch argues that Plaintiff Leadership cannot adequately represent Undiagnosed Plaintiffs, and seeks to establish a separate class action leadership track. *Id.*

Review of the Lynch Complaint, however, reveals that the claims Lynch asserts, and the discovery and relief sought therefor, are substantially similar to those sought by PI Plaintiffs. *See* Section II, *infra*. As noted above, Lynch attempts to distinguish between PI Plaintiffs and plaintiffs "who used the Earplugs but *have not been diagnosed* with hearing loss or tinnitus and have not filed personal injury lawsuits." Mot. at 2-3. The extent to which any given plaintiff has been diagnosed with hearing loss does not determine whether that plaintiff is within the group Plaintiff Leadership currently oversees.[3] To the extent that Lynch argues that Plaintiff Leadership's charge excludes overseeing the claims of Undiagnosed Plaintiffs, that argument is incorrect.

As preliminary matters are investigated and resolved, and discovery proceeds, Plaintiff Leadership will continue to analyze the propriety of class treatment of

---

[3] *See* PTO 4, April 19, 2019, at 3 (Lead Counsel shall "[s]erve as spokesperson for *all plaintiffs*") (emphasis added); *id.* at 5 (Liaison Counsel shall maintain a "comprehensive service list of *all plaintiffs' attorneys* involved in this MDL" and shall ensure papers are "distributed to *all plaintiffs' attorneys* in the MDL") (emphasis added); *id.* at 7; (Plaintiff Steering Committee shall "conduct all pretrial discovery on behalf of and for the benefit of *all plaintiffs*") (emphasis added).

various issues and claims for impacted service members, and will welcome an orderly process for appointment of interim class counsel if and when the case develops such that a motion to certify a particular class is appropriate.

At this time, Plaintiff Leadership believes that any application for appointment of interim Class Counsel, let alone a motion for class certification, is premature. To discharge its responsibilities towards all Plaintiffs and impacted service members with regard to joint action and common issues, Plaintiff Leadership needs access to the full range of tools that may be necessary to bring Plaintiffs' claims to a common resolution. Plaintiff Leadership cannot effectively manage matters of common concern without, at least, the ability to resort to Rule 23 mechanisms. Lynch argues that appointment of separate interim class counsel is necessary to clarify responsibility for "'conducting any necessary discovery, moving for class certification, and negotiating settlement.'" Mot. at 5 (*quoting* Manual for Complex Litigation (Fourth) § 21.11.). Here, Plaintiff Leadership is already responsible for those efforts, and appointing separate class leadership would muddy, rather than clarify, who bears those responsibilities.

The task of proposing and defining Rule 23 classes to litigate, streamline, or resolve the claims of affected service members in this litigation was appropriately entrusted to selected Plaintiff Leadership, who will be able to devote the resources,

attention, and care necessary to ensure that those classes are logically consistent and serve their intended purposes.

## II. Lynch and PI Plaintiffs Seek Common Discovery and Relief

Lynch seeks "a medical monitoring program" to detect the progression of conditions such as hearing loss, tinnitus, or other auditory damage. Mot. at 3. Lynch claims a "conflict of interest" with regard to the relief sought by PI Plaintiffs and by Undiagnosed Plaintiffs, arguing that PI Plaintiffs "are primarily interested in immediate financial compensation," whereas Undiagnosed Plaintiffs "have an interest in ensuring long term funding for future class needs." Mot. at 3. Lynch provides no basis for this claim regarding the relative priorities of Plaintiff Leadership. With regard to discovery, Lynch correctly notes that his claim would require "discovery into medical monitoring program characteristics, including diagnostic tools and criteria," but incorrectly argues that none of these issues are relevant to the claims of PI Plaintiffs. *Id*.

In fact, these issues are relevant to PI Plaintiffs' claims, because the medical monitoring program described by Lynch parallels similar relief sought by certain of PI Plaintiffs. *Compare* PI Complaint, *Al-Farad Inzar v. 3M Company*, 2:19-cv-09444, Dkt. No. 1 (April 9, 2019), at 49-50 ("Plaintiff demands judgment against Defendant. . . Awarding compensatory damages to Plaintiff for past and future damages including. . . health care costs, [and] medical monitoring.") *with* Mot. at 3

("Mr. Lynch seeks relief in the form of a medical monitoring program. . . . For those individuals in whom such injuries are detected, the class requests mitigation services that will provide appropriate medical care").[4] Discovery into "diagnostic tools and criteria" would be as relevant and necessary to the medical monitoring relief sought by PI Plaintiffs as it would be to the medical monitoring program that Lynch seeks. Lynch also argues that his claim "does not require discovery into, or expert testimony regarding… individual plaintiffs' medical histories." Mot at 3. Although Lynch correctly notes that his complaint does not seek damages for lost wages or emotional distress, in light of Lynch's allegation of a tangible bodily injury attributable to the 3M Earplugs and request for compensatory damages, it is unclear how resolution of Lynch's claims would not require discovery into Lynch's medical history.[5]

---

[4] *See also Jason Robbins v. 3M Company*, 5:19-cv-1902, Dkt. No. 1 (May 2, 2019), at 44 ("Plaintiff demands judgment against Defendant. . . Awarding compensatory damages to Plaintiff for past and future damages including. . . health care costs, [and] medical monitoring."); *James Lehman v. 3M Company*, 2:19-cv-00564, Dkt. No. 1 (Feb. 19, 2019), at 51 (same).

[5] *Compare* Mot. at 2 ("Unlike the PI Cases, Lynch does not seek damages for items like lost wages or emotional distress and does not require discovery into, or expert testimony regarding, those damages or individual plaintiffs' medical histories") *with* Lynch Complaint at ¶¶ 20-23 (Lynch suffers from a perforated right eardrum, hearing degradation, and tinnitus); Lynch Complaint at 23 (seeking "an Order granting compensatory and all other damages allowed by law").

Lynch's arguments regarding differences between discovery on his claim and discovery on the claims of PI Plaintiffs have no basis: Plaintiff Leadership has the same interests in discovery on these issues in connection with the claims of PI Plaintiffs as Lynch does. To the extent that Lynch argues that a separate leadership track is necessary due to purported differences between the relief Lynch seeks and the relief PI Plaintiffs seek, that argument fails, as PI Plaintiffs seek relief parallel to that sought by Lynch.

### III. Conclusion

In order to ensure meaningful consideration of the scope and purpose of any proposed classes, Plaintiff Leadership should retain responsibility for proposing and defining those classes. To the extent that Lynch argues that a separate leadership track is necessary due to differences between the relief and discovery Lynch seeks and the relief and discovery PI Plaintiffs seek, that argument fails, as Lynch and PI Plaintiffs all seek relief for prospective monitoring costs, and discovery into the diagnostic tools and criteria attendant to such relief. Accordingly, this Court should deny the Motion, without prejudice to a later motion by Plaintiff Leadership seeking class certification or the appointment of interim class counsel.

Dated:       July 1, 2019

/s/ *Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Brian H. Barr, Co-Liaison Counsel
Florida State Bar No. 0493041
Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Florida State Bar No. 0973130
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, I caused the foregoing Memorandum in Opposition to Motion to Establish a Separate Class Action Track to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                      */s/ Christopher A. Seeger*
                                      Christopher A. Seeger