**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG ) <br> PRODUCTS LIABILITY LITIGATION, ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> _____) | Case No. 3:19md2885 <br><br> Pensacola, Florida <br> July 25, 2019 <br> 1:42 p.m. |

**THIRD CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-45)

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*100 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

## A P P E A R A N C E S

FOR THE PLAINTIFFS:          **BRYAN F. AYLSTOCK, ESQUIRE**
                             **JENNIFER HOEKSTRA, ESQUIRE**
                             Aylstock, Witkin, Kreis & Overholtz
                             17 E Main Street, Suite 200
                             Pensacola, Florida  32502

                             **CHRISTOPHER A. SEEGER, ESQUIRE**
                             Seeger Weiss, LLP
                             55 Challenger Road, 6th Floor
                             Ridgefield Park, New Jersey  07660

FOR THE DEFENDANT:           **KIMBERLY BRANSCOME, ESQUIRE**
                             Kirkland & Ellis, LLP
                             333 South Hope Street
                             Los Angeles, California  90071

                             **MIKE BROCK, ESQUIRE**
                             Kirkland & Ellis, LLP
                             1301 Pennsylvania Avenue, N.W.
                             Washington, D.C.  20004

                             **MARK J. NOMELLINI, ESQUIRE**
                             Kirkland & Ellis, LLP
                             300 N Lasalle
                             Chicago, Illinois  60654

                             **LARRY HILL, ESQUIRE**
                             MOORE, HILL & WESTMORELAND, P.A.
                             350 W Cedar Street, Suite 100
                             Pensacola, Florida  32502

1            P R O C E E D I N G S

**JUDGE RODGERS:**  Good afternoon, everyone.

**MR. AYLSTOCK:**  Good afternoon, Your Honor.

**JUDGE RODGERS:**  We're here for the third case management conference in the 3M Combat Arms Earplug Products Liability Litigation, which is MDL 2885.

I want to welcome Judge Jones and appreciate him traveling over for our CMC today.

For the Plaintiffs, at counsel table I have Mr. Aylstock, Ms. Hutson, Mr. Seeger; and for Defendant, I have Ms. Branscome, Mr. Brock, Mr. Nomellini, and Mr. Hill, and a number of others in the courtroom and I know a number on the phone as well.  I hope you all on the phone can hear me well.

The parties presented a joint agenda for the case management conference today.  I will walk through the items on the agenda, which is customary how we proceed as to case management conferences.

However, I do want to note that, as to three of the agenda items, I was advised during the preconference meeting that the parties have been actively discussing a tolling arrangement that would impact those three items, and those three items are Item Nos. 3, 4, and 5.  And so, really, I'm not going to spend any time on those items.  The parties are

01:44  1   still actively engaged in those discussions, and they

01:44  2   will be advising the Court in early August about the

01:44  3   results of those discussions.

01:44  4       So Item 1 on the agenda pertains to Science

01:44  5   Day.  The parties are preparing for Science Day.  As

01:44  6   you know from my order scheduling Science Day, this is

01:44  7   a nonadversarial type of proceeding.  It's an

01:44  8   opportunity for the parties to educate myself and

01:44  9   Judge Jones about the science of sound and the science

01:44  10  of hearing loss, and that's what it will be limited

01:45  11  to.  It is not going to be any kind of presentation or

01:45  12  certainly not any kind of advocacy on the merits of

01:45  13  the case for either side.

01:45  14      I do expect there to be brief presentation by

01:45  15  a lawyer for each side, just an opening, and then

01:45  16  there will be presentation by each side on sort of

01:45  17  expert presentation on those issues of science.

01:45  18      There will be no sworn testimony taken.

01:45  19  There will be a court reporter present, but the

01:45  20  purpose of that court reporter's presence is for a

01:45  21  real time transcript for the Court's use only.  There

01:45  22  will be no official transcript on the docket from that

01:45  23  proceeding.

01:45  24      The parties are still in some discussion

01:45  25  about the agenda.  They have until August 5th to file

01:46  1 the agenda for Science Day, and I expect them to have
01:46  2 that agenda ready by that time.
01:46  3   Deposition protocol.  The parties have
01:46  4 presented a deposition protocol or proposed order for
01:46  5 deposition protocol.  They've agreed to a great deal
01:46  6 of items in the protocol.  However, there were some
01:46  7 matters that there was a difference of opinion about,
01:46  8 and there were letters submitted to the Court from
01:46  9 each side in regards to those items.  And I'm going to
01:46  10 go ahead and hear from each side now regarding those
01:46  11 areas that there's some contention.
01:46  12   Mr. Aylstock, I'll ask you to proceed,
01:46  13 please.
01:46  14   **MR. AYLSTOCK:**  Thank you, Your Honor.  I
01:46  15 think we did make a lot of progress and found a lot of
01:46  16 common ground, but I think there's five or six
01:47  17 discrete areas that we need Your Honor's assistance on
01:47  18 helping the parties to resolve with regard to the
01:47  19 deposition protocol.
01:47  20   And I think probably the best way to handle
01:47  21 it is to take them one by one, unless Your Honor would
01:47  22 like me to go through the whole thing.  But we did
01:47  23 provide the Court with a Redline version with the
01:47  24 Plaintiffs' position and the Defendant's position that
01:47  25 hopefully will assist the Court.

01:47  1        The first real dispute is with regard to the

01:47  2   number of depositions and the lifting of the

01:47  3   ten-deposition limit.  And we handled this

01:47  4   conceptually a little differently in this MDL than in

01:47  5   some others, and that is by going by deposition days.

01:47  6        So what the Plaintiffs have proposed is 50

01:47  7   total deposition days, absent some good cause or some

01:47  8   reason to come back to Your Honor and ask for more,

01:47  9   and the Defendants have proposed 30.

01:47  10       We think 50 is a reasonable number to start.

01:48  11   Obviously, we don't know if we're going to need all of

01:48  12   them, and we may not.  And we're not interested in

01:48  13   wasting our time or 3M's time or the Court's time

01:48  14   certainly on unnecessary depositions.

01:48  15       But during the Rule 26 disclosure, 12

01:48  16   witnesses were identified by the Defendants, one who

01:48  17   is deceased, so 11 living.  And we looked at those

01:48  18   witnesses, and we noticed that some of them had only

01:48  19   been there a relatively short time, some of them only

01:48  20   captured windows of time.  And this a product that's

01:48  21   been -- was on the market 20-some-odd years, and it's

01:48  22   a product that was developed by one company, purchased

01:48  23   by another company.

01:48  24       And just looking at that list and looking at

01:48  25   the internal documents that we've been able to look at

01:48   1   so far, we anticipate that there's probably going to

01:48   2   be on the order of more like 30, 35 witnesses total

01:48   3   that we're talking about.

01:48   4        In *Abilify*, when it resolved, there was 31

01:48   5   depositions taken of 38 witnesses and, as Judge Jones

01:49   6   may recall, there was maybe some more, depending on

01:49   7   some custodial file production.  So that's in the

01:49   8   wheelhouse of what *Abilify* was.  And *Abilify*, of

01:49   9   course, was a much smaller MDL, a much different

01:49   10  product.

01:49   11       We also looked at sort of what we wanted to

01:49   12  accomplish with these depositions, and we're talking

01:49   13  about the design and the development of the CAE, its

01:49   14  predecessors and successor products.  We're talking

01:49   15  about the testing, of course.  And 3M had it's own

01:49   16  lab, E-A-RCAL, so the folks at the lab that were at 3M

01:49   17  during those time periods.  The individuals involved

01:49   18  in the sales and the marketing, the labeling and

01:49   19  knowledge of the purchasing, and dealing with the

01:49   20  Government, of course, is a big issue.

01:49   21       So we see this over a 20-year time period,

01:49   22  and we're asking this Court for 50 deposition days.

01:49   23  It may end up -- we can take up to two days per

01:50   24  deposition, so it may end up being 25.  We think it

01:50   25  will be somewhere between 25 and 30, 35.  And that

01:50   1   would be really much less than other major MDLs.

01:50   2   In the *Avandia* MDL, there were 78 deposition

01:50   3   days taken of corporate witnesses -- 48 individual

01:50   4   witnesses, 78 days.  In the *Ethicon* MDL, there were

01:50   5   140 days of deposition.  In *Bard* there were 69.  And,

01:50   6   as I mentioned, in *Abilify* we're talking about 39

01:50   7   days.

01:50   8   In *PPI*, before Judge Cecchi, it's multiple

01:50   9   defendants, but one defendant so far has had 55 days

01:50   10   of depositions and 140 custodians produced.  We're not

01:50   11   asking for that, but we think 50 is a good place to

01:50   12   start.

01:50   13   And with regard to the issue of 30(b)(6)

01:50   14   witnesses, those, as the Court is aware, are company

01:50   15   witnesses; they speak for the company.  And

01:50   16   sequentially what we're talking about is taking those

01:50   17   first before we get custodial file productions, in

01:51   18   most cases.

01:51   19   And we don't have any control over who they

01:51   20   designate as a 30(b)(6) witness.  So I'm very

01:51   21   concerned about some strategic decisions that could be

01:51   22   made on their side to put up a very key witness like

01:51   23   Elliott Berger, for example, who was there for the

01:51   24   duration, that we already know we're going to need two

01:51   25   days with, and make him a 30(b)(6) witness and really

01:51   1   cut down on our ability to get to the meat of the

01:51   2   matter with regard to some of these witnesses.

01:51   3       So that's the first issue is the deposition

01:51   4   days, and we think 50 is more than reasonable given

01:51   5   the history in other MDLs, Your Honor.

01:51   6       **JUDGE RODGERS:**  Thank you.

01:51   7       Any questions for Mr. Aylstock?

01:51   8       **JUDGE JONES:**  No.

01:51   9       **JUDGE RODGERS:**  Thank you, Mr. Aylstock.

01:51   10       I'll hear from the Defense, Mr. Nomellini.

01:51   11       And just to clarify, this deposition protocol

01:52   12   in the order you've proposed applies only to the

01:52   13   Plaintiffs' depositions or discovery from Defense

01:52   14   witnesses; this does not apply to Plaintiffs' fact

01:52   15   witnesses or experts, correct?

01:52   16       **MR. AYLSTOCK:**  That's correct, Your Honor.

01:52   17       **MR. NOMELLINI:**  Yes, Your Honor.  And that's

01:52   18   an excellent segue into the key point I wanted to make

01:52   19   here, is that those statistics, to the best of my

01:52   20   understanding, were all depositions in the case,

01:52   21   whereas here we're just talking about a limit on the

01:52   22   number of 3M witnesses.

01:52   23       So there definitely is going to be a lot of

01:52   24   third-party discovery in the case, discovery of

01:52   25   government witnesses, et cetera.  But with respect to

01:52  1   3M witnesses, the number of witnesses in the initial

01:52  2   disclosures is much less.  The number of deponents in

01:52  3   the *Moldex* depositions is much less.

01:52  4        I haven't seen this list of 30 to 35

01:53  5   witnesses total, but from our side we have no reason

01:53  6   to believe that 30 to 35 relevant depositions exist

01:53  7   which could take up three hours.

01:53  8        And finally, Your Honor, that would take up

01:53  9   350 hours of examination time, whereas from our side

01:53  10  30 deposition days we proposed, 7 hours, that's 200

01:53  11  hours of examination time just for the 3M witnesses in

01:53  12  this case, which we think is more than reasonable.

01:53  13       **JUDGE RODGERS:**  You don't expect your list to

01:53  14  expand?

01:53  15       **MR. NOMELLINI:**  I think it may expand, Your

01:53  16  Honor, but I don't see it getting up to 30 to 35

01:53  17  witnesses total.  Right now it's more in the low tens

01:53  18  range.

01:53  19       **JUDGE JONES:**  I had one question.

01:53  20  Mr. Aylstock raised the point about the marketing of

01:53  21  the product covering about 20 years and that the -- I

01:54  22  think you have, what, 12, 13 on your initial

01:54  23  disclosures, that a lot of these people are current,

01:54  24  may not have institutional knowledge, did not work at

01:54  25  the company over that entire period of time.

01:54  1    Is there some concern here that Plaintiff is

01:54  2  going to take a deposition of Witness A, and Witness A

01:54  3  will have relevant information, but Witness A will

01:54  4  say, *Well, you know, Harry Smith had my job, and he*

01:54  5  *retired, and he's really the guy that knows about*

01:54  6  *that,* and it's going to morph into a more robust group

01:54  7  of witnesses?

01:54  8    **MR. NOMELLINI:**  I understand, Your Honor, and

01:54  9  I think that's a valid concern.  Our initial

01:54  10  disclosures were our best faith effort to incorporate

01:54  11  both the present people and the past people, and

01:54  12  again, it was in the low tens.  Could it grow

01:55  13  somewhat?  Yes.  But I don't see 30 to 35.

01:55  14    **JUDGE RODGERS:**  All right.  Thank you.

01:55  15    The next item, Mr. Aylstock, I believe,

01:55  16  pertains to the hours, so I guess the length of the

01:55  17  depositions.

01:55  18    **MR. AYLSTOCK:**  Yes, Your Honor.  And one

01:55  19  point with regard to the total number of hours.  What

01:55  20  we did agree to is, if we're talking about a

01:55  21  deposition day and we end up only taking four hours,

01:55  22  then that's a deposition day.  We're not going to be

01:55  23  saving three hours for somebody else.  So you can't

01:55  24  just add up the number of hours when you're looking at

01:55  25  this.

01:55  1           But there is a dispute with regard to

01:55  2     allocation of time between questioners -- MDL

01:55  3     questioners and non-MDL questioners.  And right now

01:56  4     it's at least not ripe because we don't have any other

01:56  5     state court proceedings.  And so we would propose that

01:56  6     the deposition protocol be entered as we have proposed

01:56  7     without any such provision.

01:56  8           If and when there is a state court

01:56  9     proceeding, Your Honor is perfectly capable and within

01:56  10    your right to reach out to whoever that judge is and

01:56  11    help and encourage coordination.  We are for

01:56  12    coordination.

01:56  13          What we're concerned about is having a state

01:56  14    court with a case down the road that this Court has no

01:56  15    jurisdiction over and that judge orders a seven-hour

01:56  16    deposition, and now Your Honor has already entered a

01:56  17    protocol dictating the structure of a deposition in

01:56  18    another proceeding where the Court may not even have

01:56  19    jurisdiction.

01:56  20          So we think it's grossly premature to even

01:56  21    consider that.  But even if there is such a

01:56  22    proceeding, we think that this is the center of

01:57  23    gravity.  We know that there are going to be many,

01:57  24    many more cases filed here.  We have a lot of capable

01:57  25    attorneys to take deposition.

01:57   1        And we feel that, especially given what

01:57   2    happened in some of these other MDLs where we're

01:57   3    talking about multiples of what we're even asking for,

01:57   4    that it's proper that we would get our seven hours,

01:57   5    and then we can accommodate, particularly on two-day

01:57   6    depositions, but even on one-day depositions.

01:57   7        A lot of times what happens is there might be

01:57   8    another 15, 20-minute follow-up.  But in some

01:57   9    jurisdictions -- New Jersey, for example -- there's no

01:57   10   time limit on depositions in the rules themselves, and

01:57   11   so those lawyers may decide, *Look, I get my day,* and

01:57   12   then we've created a conflict where there really isn't

01:57   13   one and doesn't need to be one.  Because we fully

01:57   14   intend to coordinate, to the extent possible, but we

01:57   15   don't think we need it in this order at this point in

01:57   16   time.

01:57   17       **JUDGE RODGERS:**  You don't think the order can

01:58   18   envision cross-noticing and encouraging coordination?

01:58   19   I mean, the reality of it is, is the Court doesn't

01:58   20   have any jurisdiction over any state court, certainly

01:58   21   litigant or attorney in the state court.

01:58   22       **MR. AYLSTOCK:**  And I'm happy to have that in

01:58   23   the order.  You wouldn't need to order me to do that,

01:58   24   though.  I would do it as a matter of course, but I'm

01:58   25   happy to have that in the order.

01:58   1       What I don't want in the order is that our

01:58   2  seven hours or what we've negotiated or what you order

01:58   3  all of a sudden becomes a huge issue with comity in

01:58   4  federal-state jurisdiction where, frankly, even

01:58   5  putting us in there is going to lead to conflict.

01:58   6  Whereas, if you'd just put in there to please

01:58   7  coordinate, encourages cross-noticing, as the manual

01:58   8  on multidistrict complex litigation sort of

01:58   9  contemplates, as opposed to they get this period of

01:59  10  time, I think that will foster more coordination than

01:59  11  the other.

01:59  12        **JUDGE RODGERS:**  All right.  Thank you.

01:59  13        Mr. Nomellini?

01:59  14      **MR. NOMELLINI:**  So, Your Honor, just getting

01:59  15  to the heart of what I understood Mr. Aylstock's

01:59  16  concern to be about, which is the non-MDL plaintiffs

01:59  17  eating into the MDL plaintiffs' time.

01:59  18        So with respect to that, the default under

01:59  19  the rule is seven hours, and under this protocol we

01:59  20  would give the MDL Plaintiffs up to 14 hours.  And

01:59  21  what we would propose is that the non-MDL plaintiffs

01:59  22  have, for each day, one hour, so that would give them

01:59  23  up to two hours.  So then the 14 minus 2, the MDL

01:59  24  plaintiffs would still have up to 12 hours over the

01:59  25  two days.

01:59   1        So, given that the concern is the non-MDL

01:59   2   plaintiffs eating into their time, they still would

02:00   3   have five hours more than the default that they would

02:00   4   have under the Federal Rules of Civil Procedure in 12

02:00   5   hours, and we think that that's plenty.

02:00   6        As a good model for that, Your Honor, on how

02:00   7   this would work, we attached the GM deposition

02:00   8   protocol which lays out a similar procedure for

02:00   9   accommodating the state court plaintiff.

02:00  10        **JUDGE RODGERS:**  All right, Mr. Nomellini.

02:00  11   Thank you.

02:00  12        One moment.

02:01  13        Do the letters address what you just

02:01  14   described, Mr. Nomellini, in terms of the 14-hour --

02:01  15        **MR. NOMELLINI:**  Yes, Your Honor.  If you look

02:01  16   at page 2 of our letter, allocation of time between

02:01  17   MDL plaintiffs and any future non-MDL plaintiffs, it

02:01  18   says at the bottom, "MDL plaintiffs will still be

02:01  19   allocated up to 12 hours per company witness."

02:01  20        **JUDGE RODGERS:**  But that's based on your

02:01  21   wanting a set management of the days that you propose,

02:02  22   the 30 days, whether it's 30 seven-hour depositions or

02:02  23   15, 14-hour depositions, or some combination of the

02:02  24   two, that falls in that framework?

02:02  25        **MR. NOMELLINI:**  That's correct, Your Honor.

02:02  1   So if it was seven hours, they'd get one and the state

02:02  2   court plaintiffs would get one; and if it was 14

02:02  3   hours, they'd get two.

02:02  4       And then the other thing that I wanted to

02:02  5   add, Your Honor -- or I think Mr. Aylstock may be

02:02  6   bringing it up, but I wanted to make sure that we

02:02  7   covered it because it overlaps with this -- is the

02:02  8   Plaintiffs would require us to have a separate notice

02:02  9   for direct examinations.

02:02  10      **JUDGE RODGERS:**  I don't think we've gotten to

02:02  11  that yet.

02:02  12      **MR. NOMELLINI:**  Okay.  I just wanted to make

02:02  13  sure we're getting to that.

02:02  14      **JUDGE RODGERS:**  Yes, I believe that's next.

02:02  15      **MR. NOMELLINI:**  Okay.

02:02  16      **JUDGE RODGERS:**  Well, it's coming up.

02:02  17      **MR. AYLSTOCK:**  That is what I was going to

02:03  18  address next.  My only final point with regard to this

02:03  19  allocation of two hours for non-MDL lawyers, we don't

02:03  20  even know what jurisdiction that is.  Those lawyers

02:03  21  aren't here.  I don't know what their needs may be or

02:03  22  their claims might be.  I just think it's completely

02:03  23  premature.

02:03  24      **JUDGE JONES:**  Couldn't a non-MDL lawyer, if

02:03  25  they were limited by an order of this Court of an hour

02:03   1   or two hours, take their hour or two hours and then

02:03   2   just say, *Well, I'm going to depose the witness on my*

02:03   3   *own, I have my own case in state court,* and notice

02:03   4   that witness and, if it's New Jersey, take the

02:03   5   witness's deposition for however long was appropriate?

02:03   6         **MR. AYLSTOCK:**  I think that's right.  I just

02:03   7   think it's a disruptive process that's really not

02:03   8   needed at this point.

02:03   9         **JUDGE RODGERS:**  Well, the hope would be that

02:03  10   this Court and the state court judge would come to

02:03  11   some agreement about what would work for the totality,

02:04  12   but you'd need the cooperation of the state court for

02:04  13   that.  But you're right, we don't have any control or

02:04  14   jurisdiction over that state court litigation.

02:04  15         **JUDGE JONES:**  And is there a possibility

02:04  16   there could be multiple state courts involved?

02:04  17   Hopefully not, but that's --

02:04  18         **MR. AYLSTOCK:**  It's certainly happened in

02:04  19   other MDLs where there's multiple opportunities.  And

02:04  20   in my experience, the best way to deal with it is to

02:04  21   deal with it when it happens and foster coordination

02:04  22   through the communication with the courts and

02:04  23   communication with plaintiff's counsel.  And I haven't

02:04  24   ever had an issue where it's boiled over.  It gets

02:04  25   worked out.  Even when sometimes we all don't get

02:04   1   along normally, we're able to figure that out.

02:04   2            **JUDGE RODGERS:**  All right.

02:04   3        **MR. AYLSTOCK:**  So with regard to the next

02:04   4   issue, that is the notice of intended direct

02:05   5   examination by Defendants, this is both a practical

02:05   6   concern, logistical scheduling concern, but it's also

02:05   7   a strategic concern.

02:05   8            Because what we don't want to have happen, we

02:05   9   have seven-hour deposition days, and that includes

02:05   10  breaks and calls to Your Honors if we have a dispute,

02:05   11  and other things that inevitably come up in a

02:05   12  deposition, and sometimes -- and we don't know yet how

02:05   13  this is going to play out here -- we get at the end of

02:05   14  a cross-examination that is focused on some issues

02:05   15  that are important to the plaintiffs, there becomes a

02:05   16  very long direct -- trial direct that can last hours

02:05   17  or even 75 minutes, and in that case the opponent, of

02:05   18  course, is bringing out things that are probably not

02:05   19  even at all related to what was discussed in the

02:05   20  cross-examination.

02:05   21           So it becomes a logistical concern because,

02:05   22  if we're ending at five or six normally, now we're in

02:06   23  eight, nine, ten, and then there's a cross-examination

02:06   24  of that, so -- and we all have planes and so we're

02:06   25  trying to avoid that.  But we're also really trying to

02:06 1    ensure fairness.

02:06 2           These are corporate depositions we're talking
02:06 3    about, and 3M has the right to bring them in this
02:06 4    courtroom and bring them to trial.  So really they're
02:06 5    getting two bites at the apple.  They get to see how
02:06 6    the witness does here in a situation where we're not
02:06 7    prepared for what may be coming because it's a direct
02:06 8    examination.  This isn't cleanup for clarification;
02:06 9    this is a direct.

02:06 10          And this is really all we're asking for.  If
02:06 11   we're just doing some cleanup, that's a different
02:06 12   issue.  But if it's a trial direct where they're
02:06 13   asking things like, you know, *Why did you get into*
02:06 14   *this?* and *Tell me about, you know, your football team*,
02:06 15   and things like that -- I've had that happen -- we
02:06 16   should have the opportunity to have an advanced notice
02:06 17   and that go on the second day.

02:06 18          And that's important for two reasons:  One is
02:07 19   preparation; and secondly, we need to be able to use
02:07 20   the transcript of maybe something that they said
02:07 21   differently and be able to be prepared to have an
02:07 22   effective cross-examination on their direct
02:07 23   examination at that time.

02:07 24          And that's important because, as far as I
02:07 25   know, all of these witnesses are outside the subpoena

02:07  1  power of the Court, and so this may be -- and in many

02:07  2  cases this is -- the only shot we have to do an

02:07  3  effective cross-examination of the defendant's direct

02:07  4  examination.

02:07  5        We -- I guess there's a new rule that may

02:07  6  allow this Court to put them on video or something,

02:07  7  and that's a discretionary rule so we don't know

02:07  8  whether that can happen or not.  But we just see it as

02:07  9  an important issue to ensure that the discovery

02:07  10 proceeds orderly and that we're not surprised by a

02:07  11 very long direct.

02:07  12       And then, if we have such a direct, we feel

02:07  13 entitled to have a reasonable amount of time to

02:07  14 cross-examine based upon that direct examination, and

02:08  15 that shouldn't count against our seven hours or

02:08  16 whatever hours that we have, if we have a two-day

02:08  17 deposition, for that witness.

02:08  18       **JUDGE RODGERS:**  I'm sitting here -- it's been

02:08  19 a long time since I took a deposition, but why is

02:08  20 there a direct?

02:08  21       **MR. AYLSTOCK:**  That's an excellent question,

02:08  22 but it's happened repeatedly --

02:08  23       **JUDGE RODGERS:**  The process is the scope --

02:08  24 there shouldn't be a direct.

02:08  25       **MR. AYLSTOCK:**  It happens.  And in the

02:08  1  *Ethicon* MDL, for example, there would be hours long
02:08  2  direct.  And part of the issue is many defendants
02:08  3  simply do not want to bring their client to court.
02:08  4  We've tried cases and there's no live person ever in
02:08  5  the court on behalf of the defendant other than their
02:08  6  lawyers.  That's a strategic decision.  I don't
02:08  7  presume to know what's going to happen here.  But they
02:08  8  do that so that they can present all of the testimony
02:08  9  on video.  And that has some strategic advantages I
02:08  10  think to them because it's boring in some cases.  But
02:09  11  I digress a little bit.  It is unusual but it's
02:09  12  happening more and more.  And so if it does happen,
02:09  13  we'd just like to have notice of it.
02:09  14          **JUDGE RODGERS:**  Okay.  Thank you.
02:09  15          Mr. Nomellini?
02:09  16          **MR. NOMELLINI:**  Your Honor, Mark Nomellini.
02:09  17          With respect to separately noticing
02:09  18  Defendant's examination, Plaintiffs don't cite any
02:09  19  precedent for this, and there is a reason for this.
02:09  20  To our knowledge, this hasn't been something that's
02:09  21  been required in any other MDL.  If you look at the --
02:09  22          **JUDGE RODGERS:**  But isn't that because you're
02:09  23  not supposed to be conducting a direct examination?
02:09  24          **MR. NOMELLINI:**  Well, Your Honor, that's a
02:09  25  strategic question that we make during the deposition.

02:09  1   There are all kinds of reasons why a witness might not

02:09  2   be present at the trial.  The witness might not be

02:10  3   alive at the time of --

02:10  4        **JUDGE RODGERS:**  But if you're conducting a

02:10  5   direct examination in a deposition that the plaintiffs

02:10  6   have noticed, then you should cross-notice it.

02:10  7        **MR. NOMELLINI:**  Your Honor, we can -- again,

02:10  8   we won't know until the deposition what --

02:10  9        **JUDGE RODGERS:**  Well, I think you're making

02:10  10  Mr. Aylstock's point, then.

02:10  11       **MR. NOMELLINI:**  Well, Your Honor, it's a

02:10  12  strategic question we make at the time of a

02:10  13  deposition, as in all of these cases.  We don't know

02:10  14  if this person is going to show up for trial.  There

02:10  15  might be all kinds of -- there might be all kinds of

02:10  16  reasons we might need -- their deposition, under the

02:10  17  rules, can be used for any purpose permitted under the

02:10  18  rules at trial, and the same is true with our

02:10  19  questioning of the witness.

02:10  20       There's no precedent for making us issue a

02:10  21  separate notice with respect to our own witness.  And

02:10  22  we limited the time to 75 minutes under the order.  So

02:11  23  we'd be limited to 75 minutes, and then they would be

02:11  24  entitled to conduct a recross so long as they don't go

02:11  25  beyond their seven hours or their 14 hours.

02:11  1        **JUDGE JONES:**  Can I ask a question?  Because

02:11  2   I understand that you might make an on-the-scene

02:11  3   decision at a deposition as to what if anything to ask

02:11  4   after the plaintiffs have examined the witness.  But

02:11  5   for any witness that is going to be subject to this

02:11  6   protocol, they're going to be your witness.  I'm sure

02:11  7   your firm will have spent, not just hours, days with

02:11  8   each witness preparing them for their testimony.

02:11  9   You'll probably know more about the witness before

02:11  10  they go in the deposition than the witness even knows

02:11  11  about themselves.

02:11  12       So wouldn't you, by necessity, know before

02:11  13  the deposition began whether strategically this is the

02:12  14  kind of witness that you would not want to set foot in

02:12  15  a courtroom or, because of their circumstances, would

02:12  16  be unable to?  I mean, isn't that --

02:12  17       **MR. NOMELLINI:**  We may know, we may know,

02:12  18  Your Honor.  But I can't say that we'd know for every

02:12  19  witness at the time.

02:12  20       And the other thing, Your Honor, this could

02:12  21  lead to multiple depositions for the same witness,

02:12  22  which is one overriding goal we're trying to achieve

02:12  23  here with this deposition protocol order is one

02:12  24  deposition per witness.  That is, we don't want to

02:12  25  have a situation where it's one deposition that's a

02:12  1    fact deposition, then the next deposition is the

02:12  2    30(b)(6) deposition so the person has to show up

02:12  3    again, and then various state court depositions, and

02:12  4    then another cross-noticed deposition.

02:12  5         And this is the way that, you know, it works

02:12  6    is there's one notice for the MDL and everything that

02:13  7    needs to happen happens within the context of that one

02:13  8    deposition.

02:13  9         **JUDGE RODGERS:**  All right.  Thank you.

02:13  10        Mr. Aylstock or Mr. Nomellini, was there any

02:13  11   other areas?

02:13  12        **MR. BROCK:**  Your Honor, could I speak very

02:13  13   briefly just to one issue on the company witness

02:13  14   depositions?

02:13  15        **JUDGE RODGERS:**  All right, Mr. Brock.

02:13  16        Mr. Aylstock, I'll hear from you afterwards.

02:13  17        **MR. BROCK:**  Thank you so much.  So I guess

02:13  18   what I wanted to convey to the Court is our

02:13  19   expectation would be that, with regard to company

02:13  20   witnesses, for most of them we will conduct a direct

02:13  21   exam of some kind.  And that's what we have been doing

02:13  22   for the last few years.

02:13  23        I know at one time early in my practice sort

02:14  24   of the way to do a deposition was, as soon as the

02:14  25   plaintiff asked the last question, you grabbed your

02:14  1    bag and out the door you went as fast as you could.

02:14  2    And the approach to company depositions I think has

02:14  3    changed pretty significantly, I don't know, over the

02:14  4    past five to seven years.

02:14  5        From the defense side, when a company witness

02:14  6    is deposed, the assumption that we make -- and it may

02:14  7    or may not turn out to be the case, but the assumption

02:14  8    that we make is that the questions that are being

02:14  9    asked and the answers that are being given can be used

02:14  10   against the company as admissions.

02:14  11       If we decide not to bring the witness to

02:14  12   trial as a live witness, we would expect in many of

02:14  13   those depositions to see the designation process and

02:14  14   that witness would be testifying by videotape during

02:14  15   the trial whether we thought that was a witness that

02:14  16   needed to be called or not.

02:14  17       And so the approach that's been taken on the

02:14  18   defense side is to do a couple of things, first of

02:14  19   all, to make sure that the background of the witness

02:14  20   is in the record.  So sometimes when the plaintiffs

02:15  21   take the deposition, you know, the first question is,

02:15  22   *"Well, isn't your product defective?"*  It's not -- you

02:15  23   know, you don't get a warm up to the deposition so

02:15  24   that the jury knows who the person is, so we usually

02:15  25   ask some background questions.

02:15   1        It's often the case that the questions in

02:15   2   depositions are taken in cross-examination format

02:15   3   where the answers are given "yes or no, does this

02:15   4   document say X, Y, or Z."

02:15   5        Our general practice is to try to clean those

02:15   6   up, to the extent that explanations are required, to

02:15   7   put the document in context.  If there are other

02:15   8   documents that relate to what we might see as a

02:15   9   potential admission, we would try to bring that in and

02:15  10   try to put in one place in the record with that

02:15  11   witness the context of that document.

02:15  12        And I would say it would be an unusual

02:15  13   situation for us to be asking questions that are

02:15  14   outside the scope of the cross-examination or the

02:15  15   examination that's been conducted by the plaintiff.

02:16  16   Sometimes that may occur.  But the plaintiffs know

02:16  17   what the issues are when they have the file, they know

02:16  18   what that witness knows, and so they ask their

02:16  19   questions based on that witness's knowledge, and we

02:16  20   would expect to do the same.

02:16  21        And I think all we're saying -- I don't think

02:16  22   it's a huge issue if we were to cross-notice the

02:16  23   depositions because I would expect that in most

02:16  24   depositions that we will have some questions.  There

02:16  25   might be a witness or two where we know we're going to

02:16   1   bring that witness to trial, we think the witness is

02:16   2   central to the case, where we would decide not to ask

02:16   3   a few questions.  But I would expect for most that

02:16   4   we'll do some questioning.

02:16   5       We also have the issue in an MDL of the

02:16   6   prospect of multiple trials and, you know, you have

02:16   7   the issue of witness fatigue.  So you might get to a

02:16   8   place where you're to the fifth trial and Witness A

02:16   9   has been fine testifying the first four times, but he

02:17   10  says, *I'm retired now, I'm done.*  Well, we need to

02:17   11  have his testimony in one place when that occurs.

02:17   12      So I think really all we're asking for is we

02:17   13  want to be able to have some time to conduct a direct

02:17   14  examination.  We're willing to do it in the context of

02:17   15  the two days.  If it means that one day runs late,

02:17   16  we're willing to do that.  If it means it spills over

02:17   17  a little bit into the third day, that's okay.

02:17   18      And we think, of the Plaintiffs' time that

02:17   19  they're allocated, which is more than sufficient to

02:17   20  conduct the exam, they should save some time for their

02:17   21  cross-examination.  I think they should expect that we

02:17   22  will conduct direct examinations of the witnesses who

02:17   23  are called for deposition.

02:17   24      **JUDGE RODGERS:**  All right.  Thank you, Mr.

02:17   25  Brock.

02:17    1        Mr. Aylstock?

02:17    2       **MR. AYLSTOCK:** I think Mr. Brock just made my

02:17    3   point. It's not one deposition that's being

02:17    4   conducted. It's really two separate depositions.

02:17    5   They're ships passing in the night.

02:17    6        And what we've seen of late is a witness --

02:18    7   perhaps he or she is media trained and it's very

02:18    8   difficult -- and I think there was a comment "it's a

02:18    9   yes or no answer." It's very -- there might be "yes

02:18   10   or no" questions, but it's very rare you actually get

02:18   11   a "yes or no" answer out of these folks these days.

02:18   12   So it becomes an art of cross-examination to get a

02:18   13   straight answer in a way that can be played at trial,

02:18   14   and then what happens is, 75 minutes or however long

02:18   15   it is, the witness suddenly can answer very direct

02:18   16   questions.

02:18   17        So it's not at all fair to, when a witness

02:18   18   has been prepped for days or weeks on exactly what to

02:18   19   say on a direct examination and can whip through a

02:18   20   whole bunch of material in an hour, hour-and-a-half,

02:18   21   and now all of a sudden our time -- we have to reserve

02:18   22   time wondering how much time they're going to take,

02:18   23   wondering what they're going to ask, not knowing, and

02:18   24   then maybe they don't ask a question and then we've

02:19   25   reserved time for nothing.

02:19   1          So it really is two separate depositions and
02:19   2   it should be treated as such.  I think it is treated
02:19   3   as such under the rules.  It's their choice if they
02:19   4   want to preserve testimony, you know, the rules
02:19   5   provide for that.  But it shouldn't impede on our
02:19   6   ability to represent our clients and discover the
02:19   7   information in a way that can be presented in a
02:19   8   coherent fashion to the jury.
02:19   9          And then finally, it's just a logistical
02:19  10   issue.  If we don't know -- maybe it's nothing, but we
02:19  11   have planes to catch, we have other obligations.  And
02:19  12   if we've scheduled something and it ends up going deep
02:19  13   into the night -- I've had recently situations where a
02:19  14   court reporter physically can't even do what she had
02:19  15   to do.  And it's not fair to anybody not to give us
02:19  16   some notice that, hey, this is going to be a direct
02:19  17   examination that you're going to need to prepare for.
02:19  18          And then it's also important, if it's going
02:20  19   to be such, that we have the ability to use the
02:20  20   transcript to cross-examine that person.  We've had
02:20  21   objections, *Well, you can't cross-examine because
02:20  22   that's a rough transcript.*  Well, we need to be able
02:20  23   to deal with that because they may not ever show up
02:20  24   and this may very well be our only shot to present the
02:20  25   testimony.

02:20    1      **JUDGE JONES:** I've got two questions. So you

02:20    2    don't want their questioning, whether you call it

02:20    3    cross or direct, to count against your time, and

02:20    4    importantly, you're asking for notice before the

02:20    5    deposition begins if they intend to do that?

02:20    6      **MR. AYLSTOCK:** That's exactly right. And

02:20    7    I've never had a situation where I had to reserve

02:20    8    re-cross time. Obviously there are rules on -- I

02:20    9    can't go way out of bounds. But if I'm reserving that

02:20   10    time and now they know I've reserved five minutes,

02:20   11    it's a filibuster. I mean, it's a filibuster anyway,

02:21   12    but now it's just the North Carolina Four Corners, and

02:21   13    I can't get a straight answer, and all of a sudden

02:21   14    they walk out the door.

02:21   15      We've been able to deal with this in

02:21   16    practical terms just by being professional and

02:21   17    courteous to each other, and it's worked out. So I

02:21   18    don't understand why this is a big issue, unless it is

02:21   19    a big issue.

02:21   20      **JUDGE JONES:** If there was a notice

02:21   21    requirement, wouldn't the Defendant cross-notice or

02:21   22    separately notice every deposition just to cover

02:21   23    themselves? I mean, I'm not sure how that's going to

02:21   24    help you if they're -- you know, in my view, they

02:21   25    should know before going in what they're going to do,

02:21  1  but let's just say during the deposition it becomes

02:21  2  apparent to them that they need to make a record for a

02:21  3  variety of reasons.

02:21  4        As a prophylactic measure, aren't they going

02:21  5  to cross-notice every deposition?  So you notice

02:21  6  Witness A and they say, *Well, we might end up direct*

02:22  7  *examination; we'll cross-notice*?

02:22  8        So I'm not sure how that's going to help you.

02:22  9        **JUDGE RODGERS:**  It can help if the time is

02:22  10  not charged --

02:22  11        **JUDGE JONES:**  Yeah, if the time -- but on the

02:22  12  notice it's not going to really help you if they

02:22  13  notice every deposition.

02:22  14        **MR. AYLSTOCK:**  Well, if it's cleanup, it's

02:22  15  cleanup, and they're not going to have -- you won't be

02:22  16  on any phone calls; it's cleanup.  I understand

02:22  17  they're going to want to put documents in whatever

02:22  18  context they think is appropriate and clean up bad

02:22  19  testimony.

02:22  20        But what we're addressing is a direct

02:22  21  examination which is pre-scripted and lasts a very --

02:22  22  75 minutes, which, of course, would really be a lot

02:22  23  more than that because we're talking about a break in

02:22  24  between perhaps and then a break -- so we're talking

02:22  25  about hours added on to the end of a six o'clock in

02:22     1    the evening type situation, and that's all we're

02:22     2    trying to avoid.

02:22     3         **JUDGE JONES:**  Well, I'll tell you, Mr. Brock

02:22     4    candidly raises an issue that I hadn't -- I did not

02:23     5    think this was an issue and maybe because I haven't

02:23     6    taken a deposition in a while.

02:23     7         When it's your witness, you know, other than

02:23     8    cleanup and clarification, it's very rare, unless

02:23     9    there's some compelling circumstance, but I now see

02:23    10    Mr. Brock offered some reasons why a defendant might

02:23    11    do that, so I do see this as a potential issue for

02:23    12    Plaintiffs.

02:23    13         **MR. AYLSTOCK:**  And there's nothing stopping

02:23    14    them, after this deposition if they decide, well, now

02:23    15    I want to notice a trial direct later on where the

02:23    16    witness fatigue issue -- we've certainly had

02:23    17    preservation depositions taken for witness fatigue

02:23    18    down the road.  So I just think that it's out of

02:23    19    fundamental fairness and practicality we should get

02:23    20    some notice of it, and it certainly shouldn't count

02:23    21    out of our time, Your Honor.

02:23    22         **JUDGE RODGERS:**  All right.

02:23    23         **MR. NOMELLINI:**  Your Honor, if I could

02:24    24    address Judge Jones's suggestion.  With respect to the

02:24    25    cross-notice issue, that's really what it would come

02:24    1    down to, just cross-noticing the depositions, and then

02:24    2    it's really a time allocation issue is what it would

02:24    3    come down to, and we're only asking for 75 minutes.

02:24    4    And the Plaintiffs would get up to 14 hours, which is

02:24    5    twice as much as they would get under the rules, so

02:24    6    ample time on both sides of our questioning to conduct

02:24    7    questioning.  They could conduct questioning before,

02:24    8    they could conduct questioning after, as long as they

02:24    9    budgeted their time, and we would just need the 75

02:24   10    minutes.  And we could cross-notice it, that would be

02:24   11    fine.

02:24   12         **JUDGE RODGERS:**  It seems like we could

02:24   13    resolve this by adding on deposition days.

02:24   14         All right.  The --

02:24   15         **MR. NOMELLINI:**  Your Honor, the only issue

02:24   16    with -- I don't know if we're getting to that -- the

02:25   17    two-day deposition issue, our position is that, once

02:25   18    you take into account these various things, the fact

02:25   19    deposition, the 30(b)(6), et cetera, the state court

02:25   20    plaintiffs, our direct, the overall limit should be

02:25   21    two days, and that's more than enough for any witness,

02:25   22    which is more than the default one day under the

02:25   23    rules.

02:25   24         So we're fine accommodating the extra hours,

02:25   25    but our position is that two days should be a hard

02:25  1   stop and that we shouldn't be going into three days or

02:25  2   four days.

02:25  3         With respect to the 30(b)(6) depositions, we

02:25  4   think that can be accommodated by them issuing their

02:25  5   notices of 30(b)(6) before the deposition and that way

02:25  6   we can figure out for fact witnesses which of them are

02:25  7   going to have 30(b)(6) topics so that they don't have

02:25  8   to come back again after the deposition.  So our goal

02:25  9   is two days and trying to prevent deponents from

02:25  10  having to come back later on for either direct

02:26  11  examination or state court examination or other issue.

02:26  12        **JUDGE RODGERS:**  All right.  Thank you.

02:26  13        **MR. AYLSTOCK:**  May I address that briefly?  I

02:26  14  think maybe I already did and --

02:26  15        **JUDGE RODGERS:**  No, go ahead.

02:26  16        **MR. AYLSTOCK:**  -- if I did, I can sit back

02:26  17  down.

02:26  18        But the problem, of course, with that is,

02:26  19  one, we've already issued one notice, we intend to

02:26  20  issue some more, and we're not waiting on custodial

02:26  21  files to take 30(b)(6) depositions.  We don't have any

02:26  22  control over who they put up for a 30(b)(6)

02:26  23  deposition, and some of these are naturally going to

02:26  24  be two days for that, so then we don't even get a fact

02:26  25  witness deposition, and we have no control over it.

02:26  1   They are separate depositions under the rules.  I'm

02:26  2   deposing 3M or Aearo.  I'm not deposing Elliott Berger

02:26  3   or whoever they strategically choose to put up.

02:26  4        And then with regard to the lengthy direct

02:26  5   examination, it just needs to be on a separate day.  I

02:26  6   think that's my only point on that.

02:27  7        **JUDGE RODGERS:**  All right.  Thank you.

02:27  8        **MR. NOMELLINI:**  Your Honor, briefly, with

02:27  9   respect to --

02:27  10       **JUDGE RODGERS:**  We're going to have to shut

02:27  11  this down.

02:27  12       **MR. NOMELLINI:**  Okay.  Thank you, Your Honor.

02:27  13       **JUDGE RODGERS:**  Thank you, Mr. Nomellini.

02:27  14       I believe that was everything on the

02:27  15  deposition protocol.

02:27  16       **MR. AYLSTOCK:**  I hope so.  Oh, just an update

02:27  17  on the Moldex production which will come later.  We

02:27  18  did want it to be in an order.  We had suggested that

02:27  19  the prior depositions may be in the ESI order or

02:27  20  something and we agreed to kick it off.

02:27  21       We just want it clear that -- and it doesn't

02:27  22  have to be in this order but I think it probably

02:27  23  should -- we would like those depositions.  And we

02:27  24  understand Moldex has agreed orally and will consent

02:27  25  in writing.  But we also want the transcripts in the

02:27  1   ascii format so we can use them and the videos.  And

02:27  2   we do think it should be in the order just so there's

02:27  3   no confusion as to what we got.

02:28  4        JUDGE RODGERS:  An order directed at whom?

02:28  5        MR. AYLSTOCK:  At the Defendants to produce

02:28  6   those prior depositions.

02:28  7        JUDGE JONES:  In the alternate formats?

02:28  8        MR. AYLSTOCK:  Exactly, Your Honor.

02:28  9        JUDGE JONES:  The video and the ascii --

02:28  10       MR. AYLSTOCK:  And the video record of it.

02:28  11       JUDGE RODGERS:  What does Moldex produce?

02:28  12       MR. AYLSTOCK:  Moldex doesn't need to produce

02:28  13  anything.  The depositions, as I understand it, are in

02:28  14  the possession of 3M and they were just awaiting --

02:28  15       JUDGE RODGERS:  They just need the consent to

02:28  16  it?

02:28  17       MR. AYLSTOCK:  They're awaiting the consent,

02:28  18  which we expect to have in a matter of a day or two.

02:28  19       JUDGE RODGERS:  Ms. Branscome?

02:28  20       MS. BRANSCOME:  I'm not entirely sure that we

02:28  21  have all of them in ascii format or that we have all

02:28  22  of the videos.  I can certainly check on that but I'm

02:28  23  not sure.

02:28  24       We don't have an obligation to order a video

02:28  25  after every deposition, and so I am not entirely

02:28    1   certain that we even have those files for all of the

02:28    2   depositions.  If Your Honor were to order us, we would

02:28    3   obviously comply with whatever we have in our

02:28    4   possession.  But I cannot state right at this moment

02:29    5   that I know for certain we even have those formats for

02:29    6   every one.

02:29    7       **MR. AYLSTOCK:**  And we'd just ask, if that's

02:29    8   the case, that we have their consent for us to go to

02:29    9   the court reporter or videographer and get them,

02:29   10   that's all.

02:29   11       **JUDGE RODGERS:**  So Moldex was never going to

02:29   12   produce anything, you were just seeking from Moldex

02:29   13   the consent for 3M to produce, right, okay.

02:29   14       Mr. Aylstock, when again are you expecting to

02:29   15   have what you believe will be the agreement or consent

02:29   16   from Moldex?

02:29   17       *[Conference between Mr. Aylstock and Mr.*

02:29   18   *Wolfson.]*

02:29   19       **MR. AYLSTOCK:**  Mr. Wolfson is reporting to me

02:29   20   the next couple of days.

02:29   21       **JUDGE RODGERS:**  Okay.

02:29   22       Mr. Wolfson, I would appreciate it if that

02:29   23   consent could be given by Monday.  Is that --

02:30   24       **MR. WOLFSON:**  Your Honor, I'll reach out.  I

02:30   25   expect that that's not going to be a problem.

02:30    1    **JUDGE RODGERS:** If it is a problem, if you

02:30    2    would notify Mr. Aylstock and indicate why it's a

02:30    3    problem, what's the reason why we can't get the

02:30    4    consent.

02:30    5    **MR. WOLFSON:** I think it's just a question of

02:30    6    getting signatures on a letter, Your Honor, just

02:30    7    getting the proper person to write the authorization.

02:30    8    **JUDGE RODGERS:** All right. Well, my

02:30    9    understanding is 3M made the request July 12th.

02:30   10    **MR. WOLFSON:** Yes. We will get that.

02:30   11    **JUDGE RODGERS:** So Monday I would appreciate

02:30   12    that. Thank you.

02:30   13    So the Item No. 8 I don't believe we've

02:31   14    discussed.

02:31   15    Are you anticipating objections to the

02:31   16    30(b)(6) notices?

02:31   17    **MS. BRANSCOME:** We do, Your Honor. We have

02:31   18    received the 30(b)(6) notice from the Plaintiffs. It

02:31   19    is very extensive. It covers a wide variety of

02:31   20    topics. We will be serving our objections by August

02:31   21    9th, which is the deadline based on the time by which

02:31   22    we were served with the 30(b)(6) notice. We intend to

02:31   23    meet and confer with the Plaintiffs.

02:31   24    We anticipate it would be multiple witnesses

02:31   25    addressing the various 30(b)(6) topics, and we -- the

02:31  1   Plaintiffs indicated that in their 30(b)(6) notice to

02:31  2   us the time frame was simply a placeholder and we

02:31  3   would meet and confer about a schedule that makes

02:31  4   sense by which we can make sure that we have witnesses

02:32  5   that are fully and appropriately prepared on the

02:32  6   topics.

02:32  7        Some of the topics are more narrow than

02:32  8   others, and there may be efficient ways to do this on

02:32  9   a rolling basis where we address more narrow topics as

02:32  10  soon as we have witnesses who are prepared.  We have

02:32  11  not yet engaged in a meaningful meet and confer with

02:32  12  the Plaintiffs on that yet.

02:32  13       Once we serve our objections -- and it will

02:32  14  be objections to certain of the topics; it's not just

02:32  15  a wholesale objection, obviously -- we will engage in

02:32  16  the meet and confer process and move that forward.

02:32  17       **JUDGE RODGERS:**  Thank you.  The meet and

02:32  18  confer process should be completed by August 23rd.

02:32  19  That's two weeks.  And otherwise, if there's not an

02:32  20  agreement, then Judge Jones will need to intervene and

02:32  21  assist you all getting those depositions scheduled and

02:32  22  taken.  Because my understanding was Plaintiffs were

02:32  23  going to take those depositions prior to the

02:32  24  substantial completion date for the custodial

02:32  25  production, and that's September 30th.

02:33   1        **MR. AYLSTOCK:**  That's correct, Your Honor.
02:33   2   We would like to get moving on that.
02:33   3        A question -- you said August 23rd and that's
02:33   4   a couple of weeks, so --
02:33   5        **JUDGE RODGERS:**  It's a couple of weeks from
02:33   6   August 9th.
02:33   7        **MR. AYLSTOCK:**  Got it, yes, Your Honor.
02:33   8        **JUDGE RODGERS:**  It's two weeks from August
02:33   9   9th.
02:33   10        **MR. AYLSTOCK:**  Thank you.
02:33   11        **MS. BRANSCOME:**  May I ask a question for
02:33   12   clarification, Your Honor?
02:33   13        **JUDGE RODGERS:**  Yes.
02:33   14        **MS. BRANSCOME:**  And perhaps this is for Judge
02:33   15   Jones.  Maybe we'll be able to resolve everything
02:33   16   through meet and confer.  But if we were to bring a
02:33   17   dispute to you, Your Honor, what is your preference --
02:33   18   our meet and confer will complete by August 23rd.
02:33   19   What is your preference in terms of teeing issues up
02:33   20   for dispute?  We can also further that and talk about
02:33   21   that on one of our biweekly conferences.  But to the
02:33   22   extent you have a preferred procedure, I thought I
02:33   23   would ask for clarification.
02:33   24        **JUDGE JONES:**  Well, it's probably something
02:33   25   you would need to brief that probably could not be

02:33  1   done just by a letter to the Court.  But we'll know by

02:33  2   the 9th whether there are objections, and we have a

02:34  3   conference scheduled on the 9th so we'll talk about it

02:34  4   then.  I think we'll know really what some of the

02:34  5   issues are with regard to objections, how extensive

02:34  6   they are.

02:34  7       **JUDGE RODGERS:**  It would be helpful, as far

02:34  8   as the 9th -- I'm glad Judge Jones brought that up --

02:34  9   it would be helpful to have those objections known for

02:34  10  our purposes prior to that call on the 9th.  I was

02:34  11  going to schedule a call for 1:00 p.m. Central.  If

02:34  12  that's possible, if you could have -- I mean, that's

02:34  13  the due date, right?

02:34  14      **MS. BRANSCOME:**  It is, Your Honor.  I see no

02:34  15  reason why we couldn't get that on file in the morning

02:34  16  and serve a courtesy copy, of course.

02:34  17      **JUDGE RODGERS:**  All right.  That would be

02:34  18  good.  Thank you.

02:34  19      **MR. AYLSTOCK:**  Your Honor, just for your

02:34  20  information, we do intend to serve some additional

02:34  21  30(b)(6)'s in very short order in the coming week, so

02:35  22  just to --

02:35  23      **JUDGE RODGERS:**  In the coming weeks?

02:35  24      **MR. AYLSTOCK:**  In the coming week, yes.

02:35  25      **JUDGE RODGERS:**  Oh, okay.

02:35   1          It's also my understanding that obviously the

02:35   2   Plaintiffs have submitted requests to produce,

02:35   3   provided those to the Defendants.  Those objections

02:35   4   are due, I believe -- is it August 6th?

02:35   5          MR. AYLSTOCK:  They're actually due tomorrow,

02:35   6   I think, Your Honor.

02:35   7          JUDGE RODGERS:  Oh, tomorrow.

02:35   8          MR. AYLSTOCK:  But Mr. Buchanan can speak to

02:35   9   that.

02:35   10         JUDGE RODGERS:  Oh, the meet and confer, I'm

02:35   11  sorry, the objections are due tomorrow.  And then

02:35   12  there was going to be a period of meet and confer, and

02:35   13  I was going to cut that off at August 6th and then ask

02:36   14  that you all be prepared to discuss with Judge Jones

02:36   15  any issue of the requests for production and the

02:36   16  objections following the August 9th biweekly

02:36   17  leadership conference call.

02:36   18         And so we'll need to know what objections are

02:36   19  still remaining that you have not been able to work

02:36   20  out amongst yourselves by August 7th.  I think that's

02:36   21  what we talked about.

02:36   22         Is that correct?

02:36   23         MR. BUCHANAN:  I believe so.  That was

02:36   24  related to me, Your Honor.  That dovetails with the

02:36   25  parties' progress and process on TAR.

02:36   1          **JUDGE RODGERS:**  That was my next topic --

02:36   2          **JUDGE JONES:**  On the seed sets, yeah.

02:36   3          **JUDGE RODGERS:**  -- yeah, on the seed sets,

02:36   4   that's the same time frame.

02:36   5          **MR. BUCHANAN:**  Yes, so I just want to make

02:36   6   sure that we're talking about both at the same time.

02:36   7   Yes, we get the Defendant's response to our first

02:36   8   document requests, and we're preparing supplemental

02:36   9   requests now, but our first requests are coming

02:36   10  tomorrow.

02:36   11         The failure to have that kind of closed while

02:36   12  we're reviewing the seed set created some

02:37   13  complications in determining what would be responsive

02:37   14  and not responsive in the seed set review.  So we're

02:37   15  not in a position to kind of close out our resolution

02:37   16  process with the Defense tomorrow.

02:37   17         So what we'd propose is that we receive their

02:37   18  responses tomorrow, continue the resolution process on

02:37   19  the 1750 documents that were sampled, and then kind of

02:37   20  close that out together with the meet and confer and

02:37   21  the document requests in the same timeline, and then

02:37   22  we could make the same submission to the Court with

02:37   23  exemplar documents in dispute in the timeline you

02:37   24  propose, Your Honor.

02:37   25         **JUDGE RODGERS:**  I believe the 7th so that

02:37   1   Judge Jones, and maybe myself, but certainly Judge

02:37   2   Jones has time to review those before the 9th.

02:37   3        **MR. BUCHANAN:**  We have a gap to close right

02:37   4   now and, you know, we've kind of had -- we're working

02:37   5   through that in various tiers of levels to try and

02:37   6   close the gap as narrow as can be for Your Honors.

02:37   7        **JUDGE RODGERS:**  Thank you.

02:38   8        All right.  Do you have anything?

02:38   9        **JUDGE JONES:**  No.

02:38  10       **JUDGE RODGERS:**  Mr. Aylstock, anything else

02:38  11  that you can think of that we need to address?

02:38  12       **MR. AYLSTOCK:**  No, Your Honor.  I just wanted

02:38  13  to update the Court, we are preparing some amended

02:38  14  *Touhy* responses to narrow the requests for the -- both

02:38  15  generally as well as the individual servicemembers, so

02:38  16  we expect that to be conveyed to the government

02:38  17  shortly.

02:38  18       **JUDGE RODGERS:**  Very good.  Thank you.  I did

02:38  19  mean to mention that.  And I understand the Defendants

02:38  20  are narrowing a request that they had previously

02:38  21  submitted and will be submitting a revised request

02:38  22  very shortly, I believe tomorrow, in fact.

02:38  23       **MR. NOMELLINI:**  That's correct, Your Honor.

02:38  24       **JUDGE RODGERS:**  Ms. Branscome, is there

02:38  25  anything else from the Defense?

02:38   1          **MS. BRANSCOME:**  Not from us, Your Honor.

02:38   2   Thank you.

02:38   3          **JUDGE RODGERS:**  Thank you very much.

02:38   4          I appreciate everyone being here.  And this

02:38   5   will conclude the conference.

02:38   6          Oh, one -- let me confirm, our next

02:38   7   conference will be the 26th of August.  And we will

02:38   8   conduct the Science Day proceeding in the morning and

02:39   9   then follow that with the case management conference.

02:39   10          Thank you all.  Have a nice rest of the day.

   11

   12          *(Proceedings concluded at 2:39 p.m.)*

   13          ---------------------

   14   *I certify that the foregoing is a correct transcript*
        *from the record of proceedings in the above-entitled*
   15   *matter.  Any redaction of personal data identifiers*
        *pursuant to the Judicial Conference Policy on Privacy*
   16   *are noted within the transcript.*

   17

   18   *s/Donna L. Boland                      7-29-2019*
        *Donna L. Boland, RPR, FCRR                Date*
   19   *Official Court Reporter*

   20

   21

   22

   23

   24

   25