# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ABOOD, et al., v. 3M COMPANY, et al. Case No. 3:19-cv-3373 | MDL Case No. 3:19-md-2885<br><br>Judge M. Casey Rogers<br>Magistrate Gary R. Jones |

## __MOTION TO REMAND__

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF FACTS .................................................................... 1

ARGUMENT .................................................................................. 2

I.   BURDEN OF PROOF ................................................................ 2

II.  REMAND IS PROPER BECAUSE AEARO TECHNOLOGIES
     HAS NOT EFFECTIVELY CONSENTED TO REMOVAL ...................... 2

III. DEFENDANTS' NOTICE OF REMOVAL LACKS THE
     REQUIRED EVIDENTIARY SUPPORT ...................................... 3

IV.  THIS COURT DOES NOT HAVE FEDERAL OFFICER
     JURISDICTION ..................................................................... 4

     A.   Defendants Were Not "Acting Under" the Direction of a
          Federal Officer When They Negligently Designed CAEv2,
          Falsified Test Data, and Failed to Warn Plaintiffs ................. 5

     B.   There Is No Causal Connection Between 3M's Actions and
          Official Authority .......................................................... 14

     C.   Defendants' Anticipated Defenses Fail For Lack Of "Acting
          Under" A Federal Officer; Furthermore, Their Purported
          Defenses Are Plainly Untenable ....................................... 14

          1.   Defendants Have No Colorable Government Contractor
               Defense ................................................................. 16

          2.   Defendants Have No Colorable Combatant Activities
               Defense ................................................................. 17

          3.   Defendants Have No Colorable Political Question
               Defense ................................................................. 20

VI.  DEFENDANTS HAVE NO BASIS FOR INVOKING FEDERAL
     ENCLAVE JURISDICTION ....................................................... 22

A.   Defendants Have The Affirmative Burden Of Showing That Plaintiffs' Injuries Arose On Federal Enclaves ................................... 23

B.   Foreign Soil, Airspace, and U.S. Bases on Foreign Soil are Not Federal Enclaves ........................................................................... 23

C.   Defendants Do Not, And Cannot, Meet Their Burden Of Showing That Plaintiffs' Injuries Arose On Federal Enclaves ............ 24

CONCLUSION ..................................................................................................... 31

WORD COUNT CERTIFICATION ...................................................................... 32

ATTORNEY-CONFERENCE CERTIFICATION ................................................. 32

CERTIFICATE OF SERVICE .............................................................................. 33

# TABLE OF AUTHORITIES

## Federal Cases

*Abikar v. Bristol Bay Native Corp.*, 300 F.Supp.3d 1092 (S.D. Cal. 2018) ........... 30

*Akin v. Big Three Indus.*, 851 F.Supp. 819 (E.D. Tex. 1994) .......................... 27, 29

*Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d 838 (S.D. Ill. 2006) .................. 6, 7, 12

*Anderson v. Crown Cork & Seal*, 93 F.Supp.2d 697 (E.D. Va 2000) ........ 28, 29, 30

*Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. 2018) ........................................... 16

*Badilla v. Nat'l Air Cargo, Inc.*, 2013 U.S. Dist. LEXIS 151747
  (W.D.N.Y. 2013) ..................................................................................... 24

*Ballard v. Ameron Int'l Corp*, 2016 U.S. Dist. LEXIS 147810 (N.D. CA
  2016) ...................................................................................................... 24

*Bentzlin v. Hughes Aircraft, Co.*, 833 F.Supp. 1486 (C.D. Cal. 1993)............. 19, 20

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) ............................................... 16

*Branch v. Coca Cola Bottling Co.*, 83 F.Supp.2d 631, 632 (D. S.C. 2000) ........... 30

*Brokaw v. Boeing Co.*, 137 F.Supp.3d 1082 (N.D. Ill. 2015)........................ 6, 7, 21

*Cabalic v. Owens-Corning Fiberglas Corp.*, 1994 U.S. Dist. LEXIS
  14380 (N.D. Cal. 1994)........................................................................... 17

*Caldwell v. Morpho Detection, Inc.*, 2013 U.S. Dist. LEXIS 17930 (E.D.
  Mo. 2013)............................................................................................... 16

*Camargo v. Gino Morena*, 2010 U.S. Dist. LEXIS 91753 (W.D. Tex.
  2010) ...................................................................................................... 31

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th
  Cir. 2009) ............................................................................................... 22

*Central Iowa  Power Co-op v. Midwest Independent Transmission Sys.
  Operator, Inc.*, 516 F.3d 904 (8th Cir. 2009)............................................ 2

*Clayton v. Cerro Flow Prod., Inc*, 2010 U.S. Dist. LEXIS 226 (S.D. Ill. 2010) ............................................................................................ 9, 14

*Coleman v. Trans Bay Cable, LLC*, 2019 U.S. Dist. LEXIS 137659 (N.D. Cal. 2019) ...................................................................................... 30

*Couzens v. Donohue*, 854 F.3d 508 (8th Cir. 2017) ............................................. 2, 3

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) .................... 23

*Faulk v. Owens- Corning Fiberglass Corp.,* 48 F.Supp2d 653 (E.D. Tex. 1999) ............................................................................................................ 9

*Foster v. Day & Zimmermann, Inc.,* 502 F.2d 867 (8th Cir.1974)........................ 18

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.Supp.2d 1144 (D. Col. 2002) .................................................................................. 4

*Gauthe v. Asbestos Corp.*, 1997 U.S. Dist. LEXIS 112 (E.D. La. 1997) ................ 9

*Gavrilovic v. Worldwide Language Resources, Inc.*, 441 F.Supp.2d 163 (D. Me. 2006)...................................................................................... 24

*Gordon v. Air & Liquid Sys. Corp.*, 990 F.Supp.2d 311 (E.D.N.Y. 2014)............. 13

*Hall v. Coca-Cola Co.*, 2018 U.S. Dist. LEXIS 175384 (E.D. Va. 2018) ... 3, 23, 24

*Harris v. KBR,* 724 F.3d 458 (3d. Cir. 2013) ........................................................ 7

*Harris v. KBR*, 796 F.Supp.2d 642 (W.D. Pa. 2011)............................................. 24

*Hartley v. CSX Transp., Inc.*, 187 F.3d 422 (4th Cir. 1999).................................. 30

*In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76 (2d Cir. 2008) ...................... 16

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 428 F.Supp.2d 1014 (D. Minn. 2006) ............................................................ 5

*In re High—Tech Employee Antitrust Litig.*, 856 F.Supp.2d 1103 (N.D. Cal. 2012)............................................................................................ 26, 27, 28

*In re: Welding Rod Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 1265

(N.D. OH 2005) ................................................................... 28

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) ............................... 10, 12

*Jacks v. Meridian Res. Co., LLC,* 701 F.3d 1224 (8th Cir. 2012) ............... 5, 11, 12

*Jamil v. Workforce Res., LLC*, 2018 WL 2298119 [2018 U.S. Dist. LEXIS 85066 ] (S.D. Cal. 2018) ............................................. 25, 26, 28

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ................................... 15

*Kaye v. SW. Airlines Co.,* 2005 U.S. Dist. LEXIS 18389 (N.D. Tex. 2005) ................................................................................ 5

*Kerr v. Del. N. Cos., Inc.*, 2017 U.S. Dist. LEXIS 31576 (E.D. Cal. 2017)........... 26

*Lawler v. Miratek, Corp.*, 2010 U.S. Dist. LEXIS 18478 (W.D. Tex. 2010) .............................................................................. 31

*Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952) ..................................... 23

*McCormick v. C.E. Thurston & Sons*, 977 F.Supp. 400 (E.D. Va. 1997). ............. 29

*McGillick v. World Trade Ctr. Props., LLC*, 2004 U.S. Dist. LEXIS 18361 (S.D.N.Y. 2004) ..................................................... 6

*McMahon v. General Dynamics Corp.*, 933 F.Supp.2d 682 (D. N.J. 2013) .......... 19

*McMahon v. Presidential Airways, Inc.,* 460 F.Supp.2d 1315 (M.D. Fla. 2006) .............................................................................. 18

*McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007) ....... 21, 22

*Mesa v. California*, 489 U.S. 121 (1989) ..................................... 7, 14, 15

*Moldex Metrics, Inc. v. 3M Company*, 2015 U.S. Dist. LEXIS 15008 (D. Minn. 2015).......................................................................... 11

*Osburn v. Morrison Knudsen Corp.*, 962 F.Supp. 1206 (E.D. Mo. 1997) ............. 22

*Paul v. United States*, 371 U.S. 245, 264 (1963)................................... 23

*Polar Ice Cream & Cremery Co. v. Andrews*, 375 U.S. 361 (1964)................... 31

*Reed v. Fina Oil & Chem. Co.*, 995 F.Supp. 705 (E.D. Tex. 1998) ...................... 29

*Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) ............................................ 18, 19

*Schnabel v. BorgWarner Morse TEC*, 2008 U.S. Dist. LEXIS 129832
   (C.D. Cal. 2008) ..................................................................................... 3

*Snell v. Bell Helicopter Textron*, 107 F.3d 744 (9th Cir. 1997) ............................ 16

*Stiefel v. Bechtel Corp.*, 497 F.Supp.2d 1138 (S.D. Cal. 2007)............................ 26

*Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991).................................... 21, 22

*Totah v. Bies*, 2011 U.S. Dist. LEXIS 39940, 2011 U.S. Dist. LEXIS
   39940 (N.D. Cal. 2011)........................................................................... 26

*Transitional Hosps. Corp. of La., Inc. v. La. Health Serv.*, 2002 U.S. Dist.
   LEXIS 10852 (D. La. 2002)..................................................................... 4

*United States v. Davis*, 726 F.3d 357 (2d Cir. 2013)............................................ 23

*Vucinovich v. Chalmette Med. Ctr., Inc.*, 2007 U.S. Dist. LEXIS 67465
   (E.D. La. 2007)........................................................................................ 8

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007)........................................... 5, 6

*Whitaker v. Kellogg Brown & Root, Inc.*, 444 F.Supp.2d 1277 (M.D. Ga.
   2006) ..................................................................................................... 22

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) ......... 6, 13

*Wood v. Am. Crescent Elevator Corp.*, 2011 U.S. Dist. LEXIS 52239
   (E.D. La. 2011)...................................................................................... 23

**State Cases**

*Lockhart v. MVM, Inc.*, 175 Cal.App.4th 1452 (2009)........................................ 30

**Federal Statutes**

15 U.S.C. § 1 ................................................................................................. 27

28 U.S.C. § 1441 ...................................................................................... 2, 15

28 U.S.C. § 1442 ............................................................................... 4, 5, 6, 15

28 U.S.C. § 1447 ........................................................................................... 2

28 U.S.C. §§ 1446 .......................................................................................... 2

40 U.S.C. 3112 ............................................................................................. 23

U.S. Const., Art. I, § 8, cl. 17 ....................................................................... 22

## SUMMARY OF FACTS

Plaintiffs are military servicemembers who suffered hearing loss, impairment, and/or tinnitus from the use of combat earplugs ("CAEv2" earplugs") defectively designed, manufactured, and sold by defendants both commercially, and to the military.  (Exhibit 1, Complaint, ¶¶ 1, 5, 10-11, 14.)

Defendants knew the CAEv2 earplugs had a dangerous design defect that caused them to imperceptibly loosen in the wearer's ear, allowing damaging sounds to enter the ear canal around the outside of the earplug.  Defendants' own testing revealed that the CAEv2 earplugs were defectively designed and prone to cause injury.  Rather than redesign the earplugs, or notify the military or the public of the dangers associated with using them, defendants' covered up the defect and falsely certified the earplugs' safety and compliance to the military.  (Complaint, ¶¶ 15-18, 21-30, 33-44.)

Because the defect was imperceptible to the wearer, defendants' design defect went undetected for more than a decade.  Unsurprisingly, the Veterans Administration now spends more than $1 billion per year to treat hearing damage suffered by more than 800,000 servicemembers.  (Complaint, ¶¶ 31-32.)

Plaintiffs sued defendants, alleging three products liability related claims sounding exclusively in Minnesota state law: strict products liability – use defectiveness and/or failure to warn; negligence; and violation of Minnesota's

Deceptive Trade Practices Act.  (Complaint, pgs. 14-18.)

Defendants removed plaintiffs' action to the United States District Court for the District of Minnesota.  Thereafter, plaintiffs' action was consolidated with the 3M Combat Arms Earplug Products Liability litigation in this Court.  Plaintiffs hereby timely move to remand the action to Second Judicial District of the Minnesota State Court for the County of Ramsey.

## ARGUMENT

## I.     BURDEN OF PROOF

Defendants have the burden of demonstrating that removal is proper.  28 U.S.C. § 1441(a).  All doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand.  *Central Iowa  Power Co-op v. Midwest Independent Transmission Sys. Operator, Inc*., 516 F.3d 904, 912 (8th Cir. 2009).  The Court "shall" remand cases in which it lacks jurisdiction.  28 U.S.C. § 1447(c).

## II.    REMAND IS PROPER BECAUSE AEARO TECHNOLOGIES
##        HAS NOT EFFECTIVELY CONSENTED TO REMOVAL

Removal under 28 U.S.C. §§ 1441 and 1446 requires the express consent of all defendants. 28 U.S.C. § 1446(b)(2)(A).  Although there is no specific time limit under § 1446(b)(2)(C), "non-removing defendants who wish to evince consent to removal should either sign the notice of removal or file a timely and unequivocal consent."  *Couzens v. Donohue*, 854 F.3d 508, 515 (8th Cir. 2017).  3M's

statement, in footnote 1, that Aearo consents to removal, is insufficient to establish

Aearo's consent.  Notably, 3M acknowledges that "[t]he named co-defendants are

all separate entities."  (Notice of Removal ("NoR") at 2, n. 1.)  Nor could Aearo

provide "timely" consent at this late date.  *Couzens*, 854 F.3d at 515.

## III.   DEFENDANTS' NOTICE OF REMOVAL LACKS THE REQUIRED EVIDENTIARY SUPPORT

"A notice of removal must allege all of the necessary jurisdictional facts

such that a district judge can determine whether jurisdiction exists."  *Hall v. Coca-*

*Cola Co.*, 2018 U.S. Dist. LEXIS 175384, *19 (E.D. Va. 2018), citing *Covert v.*

*Auto. Credit Corp.*, 968 F.Supp.2d 746, 749-50 (D. Md. 2013).  Defendants cannot

satisfy their burden on removal based on self-interested, unsworn representations

from counsel.  *See Schnabel v. BorgWarner Morse TEC*, 2008 U.S. Dist. LEXIS

129832, *11 (C.D. Cal. 2008) ("[Defendant] has not presented any affidavits,

declarations, or documents, including any relevant government contracts or

specifications, demonstrating that it was prohibited from warning about the

dangers of asbestos in its products.").

Here, defendants' Notice of Removal is wholly without evidentiary support,

and fails to attach any documents or affidavits in support of its conclusory factual

assertions. 3M asserts that "[CAEv2] was designed at the request of and in

consultation with military audiologists, including Dr. Doug Ohlin."  (NoR at 5 and

3

n. 2.)  However, not only does 3M fail to back up this assertion, simple internet research contradicts it, and also shows that Dr. Ohlin was a consultant to 3M itself. (See discussion below).

## IV.   THIS COURT DOES NOT HAVE FEDERAL OFFICER JURISDICTION

"The federal officer removal statute [28 U.S.C. § 1442(a)(1)] is designed to protect officers of the federal government, who[,] when acting pursuant to authority granted them under federal law, run afoul of the laws of a state." *Transitional Hosps. Corp. of La., Inc. v. La. Health Serv.*, 2002 U.S. Dist. LEXIS 10852, \*10 (D. La. 2002).

Because 3M is a private company, it bears a "special burden" of establishing the official nature of its activities.  *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.Supp.2d 1144, 1150 (D. Col. 2002) ("Because it is premised on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from [§ 1442(a)(1)] bear a special burden of establishing the official nature of their activities."); *see also*, *Dunevant v. Healthcare USA of Missouri, L.L.C.*, 2008 U.S. Dist. LEXIS 66100, \*5 (E.D. Mo. 2008).

"[T]he help or assistance necessary to bring a private person within the scope of [§ 1442(a)(1)] does not include simply complying with the law ... that is so even if the regulation is highly detailed and even if the private firm's activities

4

are highly supervised and monitored." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007). Merely participating "in a regulated industry is insufficient to support removal unless the challenged conduct is closely linked to detailed and specific regulations." *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 428 F.Supp.2d 1014, 1017 (D. Minn. 2006). To hold otherwise "would allow for federal jurisdiction over virtually any participant in a regulated industry." *Id.* at 1018; *see Watson,* 551 U.S. at 153.

To establish federal officer jurisdiction, defendants must show that they "(1) … acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person," within the meaning of the statute." *Jacks v. Meridian Res. Co., LLC,* 701 F.3d 1224, 1230 (8th Cir. 2012). Defendants fail to satisfy the first three of these elements.

**A. Defendants Were Not "Acting Under" the Direction of a Federal Officer When They Negligently Designed CAEv2, Falsified Test Data, and Failed to Warn Plaintiffs**

When a private entity invokes 28 U.S.C. § 1442(a)(1) as a basis for removal, it must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. SW. Airlines Co.,* 2005 U.S. Dist. LEXIS 18389, *11 (N.D. Tex. 2005), citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399-400 (5th Cir.

5

1998).  "[T]he fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail" does not bring a company within the scope of § 1442(a)(1)'s "acting under" language.  *Watson,* 551 U.S. at 145.  "Federal officer removal is not supported by the bare fact of government approval of a defendant's action."  *Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d 838, 847–48 (S.D. Ill. 2006).  Rather, defendants must show that they were so "intimately involved with government functions as to occupy essentially the position of an employee."  *Id.* at 846.  "Courts generally have not found jurisdiction where the government officer did not directly require a purported agent to take specific actions*." McGillick v. World Trade Ctr. Props., LLC*, 2004 U.S. Dist. LEXIS 18361, *8 (S.D.N.Y. 2004).

As the extensive discussion in *Brokaw v. Boeing Co.*, 137 F.Supp.3d 1082, 1102 (N.D. Ill. 2015) outlines:  "Numerous other courts have found federal officer jurisdiction lacking where, as here, there was some tangential involvement by the federal government, but the private defendant made the actual decisions that formed the basis of the plaintiff's claims."  *Id*. at 1098.  Thus, courts have rejected federal officer jurisdiction where a government contractor contracted for disposal of fireworks and was operating without day to day control; where a private company controlled actual operation of a plant where claims related to improper disposal of certain chemicals; and where an employee was injured while a federal

contractor was building a nuclear power plant for the federal government.  *Id.*
(summarizing cases; citations omitted).  *See also*, *Harris v. KBR,* 724 F.3d 458,
467 (3d. Cir. 2013) ("[W]here the military does not exercise control but merely
provides the contractor with general guidelines that can be satisfied at the
contractor's discretion, contractor actions taken within that discretion do not
necessarily implicate unreviewable military decisions.").

Defendants fail to show even considerable and detailed monitoring, much
less that they were the equivalent of federal employees, such that their ability to
fulfill their state obligations were impaired.  *Alsup*, 435 F.Supp.2d. at 846.

First, defendants' unsworn, unsubstantiated factual assertions should be
disregarded.  "[A] removing defendant must 'by direct averment exclude the
possibility that a state-court action against the defendant was based on acts or
conduct of his not justified by his federal duty.'"  *Id*. at 847, quoting *Mesa v.
California*, 489 U.S. 121, 132 (1989).

Second, defendants rely exclusively on the purported involvement of a now
deceased military audiologist, Dr. Doug Ohlin.  But 3M has not established that
Dr. Ohlin was a federal officer.  On the contrary, according to his online biography
and obituary, he was not an officer or even an employee of the government, but a

"consultant" to the government *who was also a consultant to 3M itself*.[1]  By 2009, Dr. Ohlin was publishing articles for Aearo Technologies and using a 3M email address.  (Exhibit 5 ("Doug Ohlin, Ph.D., is…presently…a contract consultant to 3M [who] can be contacted at doug.ohlin@mmm.com."))

Defendants have not provided any evidence that Dr. Ohlin's "direction," such as ensuring that defendants' earplugs "would fit into a military-issued carrying case" (NoR at 5) amounted to the level of control necessary to relegate 3M to a position tantamount to a mere employee of the government, stripped of decision-making discretion.  On the contrary, federal courts have readily ordered remand when the federal government provided only broad guidelines that still allowed private vendors discretion, especially where, as here, plaintiffs alleged the private vendor performed the procured service negligently or fraudulently.

For example, courts have rejected private companies' contentions that they acted under the direction of a federal officer when the companies provided purportedly FEMA-directed evacuation services in a negligent manner (*Vucinovich v. Chalmette Med. Ctr., Inc.*, 2007 U.S. Dist. LEXIS 67465, *4 (E.D. La. 2007)); when governmental waste-cleanup vendors negligently disposed of hazardous waste (*Clayton v. Cerro Flow Prod., Inc*, 2010 U.S. Dist. LEXIS 226, *25 (S.D.

---

[1] Dr. Ohlin's obituary states that he served as a "consultant and program manager for hearing conservation.…He was also a contract consultant to 3M" (Exhibit 3).   His online biography stated he was a "contract consultant to 3M Company [who could] be reach at doug.ohlin@mmm.com."  (Exhibit 4.)

Ill. 2010) (discussing analogous waste cleanup cases)); and when asbestos manufacturers could not show the government affirmatively instructed the manufacturer not to warn. *Faulk v. Owens- Corning Fiberglass Corp.,* 48 F.Supp2d 653, 663 (E.D. Tex. 1999) ("the federal government provided no direction or control on warnings when using asbestos [and] did not prevent Defendants from taking their own safety precautions heeding state-law standards."). *See also*, *Gauthe v. Asbestos Corp.*, 1997 U.S. Dist. LEXIS 112, *11 (E.D. La. 1997) (rejecting federal officer jurisdiction because there was "no evidence that the Government restricted or prohibited [defendant's] ability to notify individuals of the presence of asbestos in the work environment.").

In this case, defendants had to decide how to design the earplugs; what materials to use; where to source such materials; what manufacturing processes it would utilize; what quality control procedures it would utilize; which employees would be involved at every step of the design and manufacturing process; what warnings or instructions they would include, if any; etc.

Although defendants seek to differentiate their manufacturing and selling of the CAEv2 earplugs as wholly distinct from a typical supplier-buyer relationship (NoR at 8), they adduce no evidence in support of this assertion, and plaintiffs have pleaded the opposite, alleging, rather, that the military merely put out a request for proposals (bids) requiring that they comply with some basic standards.

(Complaint, ¶¶ 33-35.)  Plaintiffs further allege:

> The U.S. military did not provide design or testing requirements
> or set forth reasonably precise specifications, but rather
> deferred to bidders such as Aearo to determine how to provide a
> design that complied with the NRR ratings requirements.
> Further, the U.S. military never approved the design of the
> Combat Arms™ Earplugs and did not engage in negotiations or
> dialogue regarding the design. Instead, it relied on Aearo's false
> certifications.

(Complaint, ¶ 41.)  In addition, as plaintiffs allege, Aearo performed its testing in-house.  (Complaint, ¶ 22.)

Third, plaintiffs allege that in 2003, Aearo knowingly falsified its testing data to win the bid to supply its earplugs to the military.  (Complaint at ¶¶ 36-40).  Defendants cite no authority for the proposition that a private vendor who submits phony data to win a government contract "acts under" the direction of a federal officer, since such conduct is irreconcilable with a private entity "acting under" the direction of a federal officer.

Fourth, defendants argue that it was "acting under" a federal officer because its CAEv2 earplugs were "vital products 'that, in the absence of Defendants, the Government would have had to produce itself.'"  (NoR at 8, quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)).  However, defendants present no evidentiary support for this statement, which in fact is demonstrably false.  As documented in *Moldex Metrics, Inc. v. 3M Company*, Case No. 14-cv-01821 (D. Minn), the company Moldex Metric, Inc. competed with Aearo/3M to supply the

military with earplugs called the Moldex Battleplug.  Significant litigation ensued when 3M filed a sham patent infringement action against Moldex, followed by an antitrust action in which Moldex alleged that 3M had filed a baseless patent lawsuit against it in order to drive Moldex from the market for non-linear, or selective attenuation, earplugs approved for use by the U.S. Military, designed to attenuate the loud impulse sounds of battlefield explosions while still allowing the wearer to hear commands spoken by fellow soldiers or combatants in the field.  *Moldex Metrics, Inc. v. 3M Company*, 2015 U.S. Dist. LEXIS 15008, *13, 24-25 (D. Minn. 2015).  There is no basis for this Court to buy defendants' bald assertion that the government would have had to manufacture its own earplugs were it not for defendants supplying them.

The cases relied on by defendants are inapposite.  In *Jacks*, 701 F.3d at 1227, the Office of Personnel Management (OPM) contracted with a private insurer to provide health insurance to federal employees.  The private insurer's plan included a subrogation provision. The insured federal employee challenged the insurer's prosecution of a subrogation claim under Missouri law.  The Eighth Circuit noted a split of authority regarding whether the federal officer removal statute applied under such facts.  *Id.* at 1232.  Reviewing the legislative history of FEHBA, however, the Court concluded the federal government sufficiently delegated authority to [private carriers] to undertake the task of insuring federal

employees.  *Id.* at 1233.  In reaching this conclusion, the Court noted that the subrogation process was regulated by OPM under the auspices of a comprehensive statutory and regulatory scheme under FEHBA.  The Court further noted that the relevant regulations provided that OPM would resolve disputes about an enrolled employee's coverage." *Id.* at 1233–34.  In other words, the private insurer had been "delegated" the contractual subrogation rights under the direct and detailed control of the OPM, which (at least colorably) displaced state law to the contrary. *Id.*  In this case, in contrast, 3M points to no such delegation (contractual or otherwise). This is because there simply was no such delegation: nothing in the record, or any party's pleadings, suggests the government directed or authorized defendants to violate the law.  *See Alsup,* 435 F.Supp.2d at 848 ("[T]he defendant must prove, 'The government made me do it.'").  Conversely, nothing in defendants' contracts with the government prevented defendants from complying with their legal duties to plaintiffs, the end users, either.  Similarly, in *Isaacson v. Dow Chem. Co.*, cited by 3M, the defendants in that case "received delegated authority; they were not simply regulated by federal law." *Isaacson*, 517 F.3d at 137.

Notably, the products liability cases defendants rely on involved *conformance* with government specifications, where such conformance resulted in the manufacturers' violation of  state, not departures from government specifications, as in this case.  In *Winters v. Diamond Shamrock Chem. Co.*, 149

12

F.3d at 398, the district court found that "the Defense Department had contracted with the chemical companies for a specific mixture of herbicides, which eventually became known as Agent Orange.  The [district] court further found that the defendants were compelled to deliver Agent Orange to the government under threat of criminal sanctions."  No such facts exist here.  Plaintiffs do not allege, and defendants do not contend, that defendants designed and provided their CAEv2s earplugs under any threat of criminal sanction by the government.  In *Winters*, the government also prohibited the manufacturer from warning of the dangers posed by Agent Orange.  "The Government also inspected the labeling of the drums in which 'Agent Orange' was shipped.  Nothing but what the Government specified was allowed to be placed on the drums. ... No warning was placed on the containers, and none was permitted by the contract specifications."  *Winters*, 149 F.3d at 399.  In this case, in contrast, the government not only did not prohibit defendants from warning of the risks of using the earplugs, but the government could not have known to do so, because defendants falsified their reports of compliance to the government.  *Cf. Gordon v. Air & Liquid Sys. Corp.*, 990 F.Supp.2d 311, 315 (E.D.N.Y. 2014) ("Defendants were not permitted to include asbestos warnings, even though the Navy possessed extensive knowledge about the health risks and effects of exposure to asbestos.  Two of the physicians' affidavits conclude that the Navy knew more about asbestos than defendants.")

13

### B.    There Is No Causal Connection Between 3M's Actions and Official Authority

Defendants do not and cannot show any causal nexus between any federal officer's instructions and defendants' defective (and deceptive) design of CAEv2, or failure to warn. *Mesa*, 489 U.S. at 131–32. 3M asserts (without support) that Dr. Ohlin generally supervised the CAEv2 program. Even if true, 3M cannot overcome plaintiffs' allegations that 3M acted not under or in compliance with government directives, but in deliberate circumvention of them.

In *Clayton v. Cerro Flow Prod., Inc.*, 2010 U.S. Dist. LEXIS 226 (S.D. Ill. 2010), the court considered the federal officer defense in connection with the *improper* disposal of hazardous waste. Although the court found that "Defendants acted under the general auspices of a federal officer," this was insufficient to demonstrate the requisite causal nexus, where the record showed not "that federal officers dictated the manner in which the removing Defendants disposed of chemical wastes or compelled them to dispose of those wastes improperly [but] only that the removing Defendants acted under the general auspices of a federal officer." *Id.* at *27-28.

### C.    Defendants' Anticipated Defenses Fail For Lack Of "Acting Under" A Federal Officer; Furthermore, Their Purported Defenses Are Plainly Untenable

There is no express statutory basis for removal of state court actions to federal court based on anticipated defenses. Rather, defendants argue that

"[r]emoval rights under [28 U.S.C. § 1442] are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers 'may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.'"  (NoR at 6, quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).)  However, as defendants implicitly concede, their anticipated defenses do not furnish a basis for removal unless they can first show they were "acting on behalf of federal officers."  For the reasons discussed above, defendants cannot show this, so their anticipated defenses cannot provide any basis for removal.  Moreover, the record shows that defendants' purported defenses are completely untenable.

"[F]ederal officer removal must be predicated on the allegation of a colorable federal defense."  *Mesa*, 489 U.S. at 129.  As the Supreme Court explained in *Mesa*, § 1442(a) "is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant.  § 1442(a), therefore, cannot independently support Art. III 'arising under' jurisdiction.  Rather, it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes."  *Id.* at 136-37.  Here, 3M woefully fails to show any colorable federal defense.

1.    **Defendants Have No Colorable Government
        Contractor Defense**

The government contractor defense is an affirmative defense which

defendants bear the burden of establishing.  *Snell v. Bell Helicopter Textron*, 107

F.3d 744, 746 (9th Cir. 1997).  To meet this burden, defendants must show that

(1) the United States approved reasonably precise specifications; (2)  the

equipment conformed to those specifications; and (3) the supplier warned the

United States about the dangers in the use of the equipment that were known to the

supplier but not to the United States.  *Boyle v. United Techs. Corp.*, 487 U.S. 500,

512 (1988).

Defendants argue that the "military generally made a 'discretionary

determination' regarding the requirements and design of the CAEv2's benefits

against the alleged risks."  (NoR at 15, citing *In re Agent Orange Prod. Liab.*

*Litig.*, 517 F.3d 76, 90 (2d Cir. 2008) and *Ayo v. 3M Co.*, 2018 WL 4781145, *14

(E.D.N.Y. 2018).)  But federal courts have recognized that "[t]he government

contractor defense in *Boyle*, '[s]tripped to its essentials,' is fundamentally a claim

that '[t]he Government made me do it."  *Caldwell v. Morpho Detection, Inc.*, 2013

U.S. Dist. LEXIS 17930, *8 (E.D. Mo. 2013) (citations omitted).

Without conceding that defendants can satisfy the first element of the

government contractor defense (above), it is evident that defendants fall way short

of being able to satisfy the second and third elements.  Far from conforming to the

military's specifications, defendants knowingly deviated from those specifications and concealed their product's design flaws.

In addition, the government contractor defense should not be available to companies who, like defendants, market the same product to both civilians and the military, as plaintiffs have alleged here.  (Complaint, ¶¶ 14, 44.)  *See Cabalic v. Owens-Corning Fiberglas Corp.*, 1994 U.S. Dist. LEXIS 14380, *8 (N.D. Cal. 1994) ("Most notably, no defendant produces any evidence whatsoever that the products it designed pursuant to government orders were different from those designed for civilian use in any manner pertinent to state law liability.").

### 2.  Defendants Have No Colorable Combatant Activities Defense

Defendants' claimed combatant activities defense fails on its face. Defendants were not combatants or engaged in combatant activities.  Courts have roundly rejected the availability of the combatant activities defense for private contractors, ruling that application of a combatant activities defense to private contractors improperly extends sovereign immunity to private actors, and conflates the judicially-created government contractor defense and the legislatively-mandated combatant activities exception:

> [T]his Court declines to endorse such a defense for private contractors based solely on the fact that Defendants were operating in a combat zone. <u>This Court can find no persuasive authority for the conclusion that the combatant activities exception preempts state tort law claims.</u> … Private

> contractors are not entitled to sovereign immunity unless
> they are characterized as government employees, which
> Defendants are not. *Foster v. Day & Zimmermann, Inc.,* 502
> F.2d 867, 874 (8th Cir.1974) ("The doctrine of sovereign
> immunity may not be extended to cover the fault of a private
> corporation, no matter how intimate its connection with the
> government."). There is no express authority for judicially
> intermixing the government contractor defense and the
> combatant activities exception; nor is there authority for
> bestowing a private actor with the shield of sovereign immunity.
> … Unless they qualify as employees or agents of the
> Government, private contractors may not bootstrap the
> Government's sovereign immunity.

*McMahon v. Presidential Airways, Inc.,* 460 F.Supp.2d 1315, 1330 (M.D. Fla.

2006), *aff'd*, 502 F.3d 1331 (11th Cir. 2007) (emphasis added).

As noted by *McMahon*, the Eighth Circuit has long held that sovereign

immunity does not extend to private contractors like defendants.  *Foster,* 502

F.2d at 874. In *Foster*, the plaintiff alleged that a faulty grenade exploded in

his hand during a training exercise at Ft. Benning, Georgia.  Defendants asserted

that as suppliers of government munitions, they were entitled to the protections of

government immunity.  *Id.*  The Court rejected defendants' sovereign immunity

defense.  *Id.*

The foregoing limitations make sense because the combatant activities

exception is narrowly construed to shield military combat decisions from state law

regulation.  *Saleh v. Titan Corp.*, 580 F.3d 1, 8-9 (D.C. Cir. 2009).  Where contract

employees act under the direct command and exclusive operational control of the

military chain of command, such that they are functionally serving as soldiers,

preemption ensures that they need not weigh the consequences of obeying military

orders against the possibility of exposure to state law liability.  *Id.*  It is the military

chain of command that the FTCA's combatant activities exception serves to

safeguard.

Defendants' reliance on *Bentzlin v. Hughes Aircraft, Co.*, 833 F.Supp. 1486

(C.D. Cal. 1993) is unavailing.  Subsequent decisions have questioned the analysis

and validity of *Bentzlin*—on both policy and statutory construction grounds.  As

explained in *McMahon v. General Dynamics Corp.*, 933 F.Supp.2d 682 (D. N.J.

2013), tort law does not

> lose[] its salutary capacity to encourage care, punish negligence
> and spread the cost of accidents, simply because the customer
> happens to be the government.  Indeed, where the purchaser and
> the person likely to be injured are not the same, it may be more
> important to give the latter a voice and a means of recourse.
> The tort system, here as elsewhere, can help enforce the highest
> standard of care in the production of the equipment upon which
> our servicemen and servicewomen rely. ...

*McMahon*, 933 F.Supp. at 692, citing *Bentzlin,* 833 F.Supp. at 1493–94).

*Bentzlin* is also distinguishable on the facts.  In *Bentzlin*, the court reasoned

that "[t]he exigencies of war often require high-tech equipment to be delivered to

the 'front' as quickly as possible. In war, the benefit of producing weapons and

transporting them as quickly as possible to arm American soldiers far outweighs

the risks of defective workmanship; soldiers' lives may be lost as a result of delays

in the delivery of weapons." *Bentzlin*, 833 F.Supp. at 1493. Here, in contrast, defendants developed their CAEv2 earplugs over several years, without any pressure to deliver them to the front line on an emergent basis. In addition, in *Bentzlin*, unlike in the present case, the government intervened in the case to protect military secrets regarding strategy and classified information regarding a missile's capabilities. *Id.* at 1487. Here, in contrast, defendants marketed their CAEv2 earplugs commercially to the civilian public, not just to the military, so no issue of military secrets obtains. As the court in *Bentzlin* itself acknowledged, "not all military equipment is based on design which cannot be disclosed without impinging on federal interests, and therefore this preemption doctrine is limited to combat equipment with no civilian counterpart." *Id.* at 1491.

### 3. Defendants Have No Colorable Political Question Defense

Defendants' political question defense likewise fails on its face. A political question defense, if one existed, would *deprive* this Court of subject matter jurisdiction, not confer jurisdiction.

Even assuming *arguendo* that 3M could somehow use a jurisdiction-depriving defense to support jurisdiction, defendants' defective design, manufacture, and sale of earplugs simply is not a non-justiciable political question.

In assessing whether a nonjusticiable political question defense lies, "the primary question is whether a particular suit will require the Court to reexamine a

20

military judgment." *Brokaw*, 137 F.Supp. at 1102.  A "military judgment" means wartime "strategy and tactics" such as whether to mine Vietnamese harbors, order airstrikes, or the military's decision to free a captured vessel. *Tiffany v. United States*, 931 F.2d 271, 277 (4th Cir. 1991) (plaintiff's state-law claim based on collision with F-4C fighter jet after plaintiff failed to properly activate flight plan and entered air defense zone presented non-justiciable political question).

Accordingly, courts scrutinize attempts by private defendants to invoke the political question doctrine:  "Given that the [political question] doctrine is largely driven by separation of powers principles, the Court must give more scrutiny to the defense when it is raised by a private contractor rather than a coordinate branch of the United States government." *Id.* (collecting cases).  In this case, defendants' defective manufacture of, and fraudulent misrepresentations concerning, its CAEv2s earplugs plainly are not "strategy and tactics employed on the battlefield...." *Id.*  Simply put, this is not a case about reexamining a military judgment; it is a case about a private vendor selling defective and injurious equipment to the military for mass use by vulnerable troops under false pretenses.

Defendants' observation that "military activities often give rise to political questions" (NoR at 17, quoting *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007)) proves no support for their position.  Defendants are not military contractors who operated a helicopter in a war zone, claiming

sovereign immunity. *McMahon*, 502 F.3d at 1336. Defendants are not fighter pilots who accidentally collided with an unregistered civilian aircraft entering U.S. airspace. *Tiffany*, 931 F.2d at 277. They are not contractors transporting soldiers in military convoys in Iraq. *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F.Supp.2d 1277, 1278 (M.D. Ga. 2006); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1277 (11th Cir. 2009). Defendants, rather, are purely private parts-manufacturers who knowingly sold a defective and unsafe product commercially, and also supplied it to the military under false pretenses, causing extensive injury to these plaintiff servicemembers, who should be entitled to their choice of forum. *Carmichael,* 572 F.3d at 1275.

## VI.   DEFENDANTS HAVE NO BASIS FOR INVOKING FEDERAL ENCLAVE JURISDICTION

Federal enclave jurisdiction is rooted in the Federal Enclave Clause of the Constitution, Art. I, § 8, cl. 17, which authorizes the exercise of federal jurisdiction over federal enclaves. "A federal enclave is territory which has been transferred by a state through cession or consent to the United States and over which the federal government has acquired exclusive jurisdiction." *Osburn v. Morrison Knudsen Corp.*, 962 F.Supp. 1206, 1208 (E.D. Mo. 1997).

### A.     Defendants Have The Affirmative Burden Of Showing That Plaintiffs' Injuries Arose On Federal Enclaves

To establish federal enclave jurisdiction, defendants must show that plaintiffs' injuries arose on federal enclaves.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1952).  To show that an area is a federal enclave, defendants must come forward with evidence that "(1) the United States [] purchase[d] land from a state for the purpose of erecting forts, magazines, arsenals, dock-yards, or other needful buildings, (2) the state legislature [] consent[ed] to the jurisdiction of the federal government, and (3) if the property was acquired after 1940, the federal government [] accept[ed] jurisdiction `by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.'"  *Wood v. Am. Crescent Elevator Corp.*, 2011 U.S. Dist. LEXIS 52239, *6-7 (E.D. La. 2011), quoting 40 U.S.C. 3112(b).  *See also*, *Hall v. Coca-Cola Co.*, 2018 U.S. Dist. LEXIS 175384, at *5, citing *Paul v. United States*, 371 U.S. 245, 264, 267 (1963) and *United States v. Davis*, 726 F.3d 357, 363-64 (2d Cir. 2013).

### B.     Foreign Soil, Airspace, and U.S. Bases on Foreign Soil are Not Federal Enclaves

As a preliminary matter, plaintiffs are a disparate group of servicemembers who allege they suffered hearing loss using CAEv2 earplugs, between 2002 and

2015, "while in training and/or while deployed on active military duty."

(Complaint, ¶¶ 1, 5.)  However, "the enclave clause does not apply to a military

installation on foreign soil."  In *Badilla v. Nat'l Air Cargo, Inc.*, 2013 U.S. Dist.

LEXIS 151747 (W.D.N.Y. 2013), involving a plane crash in Afghanistan, the court

declined to exercise federal enclave jurisdiction, because "even if the United States

exercised exclusive jurisdiction over the Kabul International Airport, the accident

scene, or airspace, … 'the enclave clause does not apply to a military installation

on foreign soil.'"  *Badilla*, 2013 U.S. Dist. LEXIS 151747, at *14-15, quoting

*Harris v. KBR*, 796 F.Supp.2d 642, 656 n. 7 (W.D. Pa. 2011) (citations omitted).

*See also*, *Gavrilovic v. Worldwide Language Resources, Inc.*, 441 F.Supp.2d 163,

176-77 (D. Me. 2006) (Bagram Air Force base not a federal enclave).

### C.    Defendants Do Not, And Cannot, Meet Their Burden Of Showing That Plaintiffs' Injuries Arose On Federal Enclaves

"Mere conclusory statements that a piece of land is a federal enclave are not

enough to meet defendant's burden in a notice of removal."  *Hall*, 2018 U.S. Dist.

LEXIS 175384, at *19, citing *Ballard v. Ameron Int'l Corp*, 2016 U.S. Dist.

LEXIS 147810, *7-9 (N.D. CA 2016).  Here, defendants only state vaguely, and

unavailingly, that "While Plaintiffs' Complaint does not specifically identify the

U.S. military facilities where they were issued and used CAEv2 and allegedly

suffered hearing damage, one or more of these facilities undoubtedly qualifies as a

federal enclave." (NoR at 21.) Such rank speculation by defendants is insufficient to satisfy their burden.[2]

The case relied on by defendants, *Jamil v. Workforce Res., LLC*, 2018 WL 2298119, at *2 [2018 U.S. Dist. LEXIS 85066 ] (S.D. Cal. 2018), is helpful to plaintiffs not defendants. In *Jamil*, plaintiffs were cultural advisors and role players specifically alleged that they worked at Camp Pendleton, which the court found is established to be a federal enclave. Plaintiffs claimed, *inter alia*, that they were denied meals and rest breaks, which the court had no trouble inferring occurred at Camp Pendleton, where "the majority of the[ir] work day logically occurred." *Jamil*, 2018 U.S. Dist. LEXIS 85066, at *7-8. Ultimately, the court in *Jamil* concluded:

> Although some events took place on Camp Pendleton and others took place at Defendants' office, it is clear that the majority of the pertinent events took place on a federal enclave. The allegations stem from Plaintiffs' employment and work performed at Camp Pendleton. This is sufficient for federal jurisdiction.

*Jamil*, 2018 U.S. Dist. LEXIS 85066, at *10. In contrast, in the present case, the disparate group of plaintiffs do not allege that their service centered on a specific domestic base, or in any one place, or domestically at all, but that they suffered injuries "while in training and/or while deployed on active military duty."

---

[2] Defendants' unsubstantiated assertion is also disingenuous, since plaintiffs do not allege they suffered hearing loss on U.S. military facilities, and because any U.S. military facilities on foreign soil are not federal enclaves as a matter of law.

(Complaint, ¶ 1.)  Inferentially, the "majority of the pertinent events" (*Jamil*) occurred on foreign soil.

The cases catalogued by the court in *Jamil* provide further support for plaintiffs' remand motion, not defendants' removal, in the present case.  *Jamil*, 2018 U.S. Dist. LEXIS 85066, at *10.  Specifically:  In *Kerr v. Del. N. Cos., Inc.*, 2017 U.S. Dist. LEXIS 31576, *11 (E.D. Cal. 2017), the court found that federal jurisdiction was proper because the complaint "alleged that the events pertinent to her claim" took place in a federal enclave.  In *In re High—Tech Employee Antitrust Litig.*, 856 F.Supp.2d 1103, 1125 (N.D. Cal. 2012), the court ruled that the "federal enclave doctrine only applies when the locus in which the claim arose is the federal enclave itself."  In *Totah v. Bies*, 2011 U.S. Dist. LEXIS 39940, 2011 U.S. Dist. LEXIS 39940, *5 (N.D. Cal. 2011), the court opined that whether a tort arose on a federal enclave depends on where the "substance and consummation of the tort" occurred.  And in *Stiefel v. Bechtel Corp.*, 497 F.Supp.2d 1138, 1148 (S.D. Cal. 2007), the court applied the federal enclave doctrine where "all pertinent events occurred" on the enclave.

In contrast, in the present case, the "events pertinent to" and the "locus" of plaintiffs' claims—and the "substance and consummation of the tort[s] alleged— occurred upstream, in defendants' defective design, manufacture, and marketing of CAEv2, and in their concealment to both the military and the civilian public of the

26

dangers therefrom.  And to the extent it can be said plaintiffs' injuries arose in the locus where they used the earplugs, this occurred at least substantially (and certainly for some number of plaintiffs, entirely) on foreign soil, not on federal enclaves.  "When exposures allegedly occur partially inside and partially outside the boundaries of an enclave an argument would surface that the state's interest increases proportionally, while the federal interest decreases."  *Akin v. Big Three Indus.*, 851 F.Supp. 819, 826 (E.D. Tex. 1994) (emphasis added).

In *In re High—Tech Employee Antitrust Litig.*, former employees of high-tech employers alleged an antitrust conspiracy under 15 U.S.C. § 1 against employers for agreeing among them not to solicit one another's employees in order to suppress compensation and mobility.  One employer was LucasFilm, Inc., based on the federally owned Presidio, in San Francisco.  The court ruled that the "federal enclave doctrine only applies when the locus in which the claim arose is the federal enclave itself," as opposed to elsewhere upstream where the conspiracy was formed.  *In re High—Tech*, 856 F.Supp.2d at 1125.

> The Court agrees with Plaintiffs. The Ninth Circuit has held that in federal enclave cases, "the jurisdiction of the federal court depends upon . . . the locus in which the claim arose." *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975). That Lucasfilm is now located on the Presidio, therefore, does not automatically bar all state law claims brought against it. Rather, the federal enclave doctrine bars only those claims which arose "on a federal enclave." *Totah v. Bies*, No. 10-CV-05956-CW, 2011 U.S. Dist. LEXIS 39940, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011).

*Id.* at 1125-26.  Similarly, in *Jamil v. Workforce Res.*, LLC, 2018 U.S. Dist. LEXIS 85066, at *10, the Court found that "[a]lthough some events took place on Camp Pendleton and others took place at Defendants' office, it is clear that the majority of the pertinent events took place on a federal enclave.  The allegations stem from Plaintiffs' employment and work performed at Camp Pendleton."

In *In re: Welding Rod Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 1265 (N.D. OH 2005), the Court focused explicitly on the lack of nexus between injury and enclave, stating:

> The Court agrees with [Plaintiff A] that there is no factual support for a nexus between his welding-fume claims and a federal enclave.  Unlike the case with [Plaintiff B], who worked inside an enclosed ship where welding occurred, it is not even arguable that [Plaintiff A] was close enough to suffer exposure to welding rod fumes during his time at the two Army Bases. … [Plaintiff A's] claims simply did not arise out of exposure that occurred on a federal enclave, this Court will not exercise jurisdiction over [his] claims.

*In re: Welding Rod Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 1265, at *20-21.

In *Anderson v. Crown Cork & Seal*, 93 F.Supp.2d 697, 701 n. 3 (E.D. Va 2000), the Court focused on lack of nexus between the plaintiff's injury and the supposed federal enclave.  The court observed:  "In *McCormick*, at least part of the basis for the court's decision was the defendant's failure to establish a connection with a federal enclave, i.e., the possibility that the exposure to asbestos had occurred as a result of the federal enclave, as opposed to the ship."  *Anderson*, 93

F.Supp.2d at 701 n. 3, citing *McCormick v. C.E. Thurston & Sons*, 977 F.Supp. 400, 402 (E.D. Va. 1997).

The Anderson Court's reasoning in distinguishing two Eastern District of Texas cases in which federal enclave jurisdiction was found, is instructive. In *Reed v. Fina Oil & Chem. Co.*, 995 F.Supp. 705 (E.D. Tex. 1998), involving toxic exposure at synthetics plant and on a military base owned, during part of plaintiff's employment, by the United States, "the court [in Texas] found that because the plaintiffs asserted a single, indivisible injury resulting from exposure to leukemia inducing agents between 1944 and 1979, and the injury could not be divided between the times of federal and private control of the facility, the entire claim was subject to federal enclave jurisdiction." *Anderson*, 93 F.Supp. 2d at 702, citing *Reed*, 995 F.Supp. at 713. Distinguishing *Reed*, the *Anderson* Court stated: "the vessel in this case never was a federal enclave, but simply moved in and out of federal enclaves." *Anderson*, 93 F.Supp.2d at 702. In distinguishing *Akin*, the *Anderson* court stated:

> The court in *Akin* specifically noted that "had some of the exposure occurred off-base, the defendants' burden of establishing enclave jurisdiction would have been heavier." *Akin*, 851 F.Supp. at 825. The court further expounded in a footnote, "when exposures allegedly occur partially inside and partially outside the boundaries of an enclave an argument would surface that the state's interest increases proportionally, while the federal interest decreases."

*Anderson*, 93 F.Supp.2d at 702, quoting *Akin*, 851 F.Supp. at 825, n. 4. The

*Anderson* court called this distinction "essential to [its own] consideration of the issues." *Id.* at 702.  The court added:  "[T]o the extent the Court considers these legal determinations 'close calls,' … the court should resolve the matter in favor of the plaintiff and for remand.  *Id*. at 703, citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (questions as to removal must be resolved in favor of plaintiff and state court jurisdiction); and *Branch v. Coca Cola Bottling Co.*, 83 F.Supp.2d 631, 632 n.3, 635 (D. S.C. 2000) (same).

Recently, in *Coleman v. Trans Bay Cable, LLC*, 2019 U.S. Dist. LEXIS 137659 (N.D. Cal. 2019), the court determined that, "'the plaintiff's place of employment'"—rather than where employment decisions were made—'[i]s the significant factor in determining whether the plaintiff's employment claims arose under the federal enclave doctrine.'"  *Coleman*, *id*. at *8, quoting *Abikar v. Bristol Bay Native Corp.*, 300 F.Supp.3d 1092, 1102 (S.D. Cal. 2018) (quoting *Lockhart v. MVM, Inc*., 175 Cal.App.4th 1452 (2009)).  "An employer cannot manufacture federal jurisdiction simply by calling on executives to make decisions on a federal enclave, even if the facts giving rise to the claim occurred outside of the enclave." *Coleman*, *id*.

Finally, federal courts have rejected federal enclave jurisdiction where the upstream actionable decision-making happened off the federal enclave, as in this case.  In *Polar Ice Cream & Cremery Co. v. Andrews*, 375 U.S. 361, 388–389

(1964), the Supreme Court held that Florida's upstream pricing regulation was not "vulnerable as an attempt to legislate with regard to transactions occurring within federal enclaves subject to the exclusive jurisdiction of the United States."  In *Camargo v. Gino Morena*, 2010 U.S. Dist. LEXIS 91753, *6 (W.D. Tex. 2010), the court ruled that "For federal enclave jurisdiction to apply, in employment discrimination cases, the adverse employment decision must have been made on federal territory, because the locus of decision-making is where such a tort arises."), citing *Lawler v. Miratek, Corp.*, 2010 U.S. Dist. LEXIS 18478 (W.D. Tex. 2010).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Honorable Court remand this matter to the Second Judicial District Court of Ramsey County for the State of Minnesota.

Dated:  September 9, 2019                    Respectfully Submitted,

                                            *s/ Gerald Singleton*
                                            Gerald Singleton
                                            Attorney for Plaintiffs
                                            SINGLETON LAW FIRM
                                            gerald@slffirm.com
                                            450 A Street, 5th Floor
                                            San Diego, CA 92101
                                            Tel: (619) 771-3473
                                            Fax: (619) 255-1515
                                            California Bar No.: 208783

## WORD COUNT CERTIFICATION

This memorandum in support of plaintiffs' motion for remand contains 7,223 words exclusive of the case caption, certifications, and signature block.

Dated:  September 9, 2019                    Respectfully Submitted,

                                             *s/ Gerald Singleton*
                                             Gerald Singleton
                                             Attorney for Plaintiffs


## ATTORNEY-CONFERENCE CERTIFICATION

Pursuant to Local Rule 7.1(B) and (C), plaintiffs' counsel called Defendant 3M's counsel regarding this motion to remand on Friday, September 6, 2019.  As of the time of this filing, plaintiffs' counsel has received no response from 3M's counsel and therefore assumes that Defendant 3M opposes this motion.

Dated:  September 9, 2019                    Respectfully Submitted,

                                             *s/ Gerald Singleton*
                                             Gerald Singleton
                                             Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing MOTION TO REMAND was filed electronically with the Clerk of the Court using the CM/ECF system on September 9, 2019, and served electronically on all counsel of record.

Dated:  September 9, 2019                         Respectfully Submitted,

_s/ Gerald Singleton_
Gerald Singleton
Attorney for Plaintiffs