UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, <br><br> This Document Relates to All Cases | ) Case No. 3:19-md-02885 <br> ) <br> ) <br> ) <br> ) Judge M. Casey Rodgers <br> ) <br> ) Magistrate Judge Gary R. Jones <br> ) |

**DEFENDANTS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION SEEKING CERTAIN MOLDEX DEPOSITIONS**

Defendants have produced substantially all of the documents and deposition transcripts from the prior *Moldex* litigations. In particular, productions to date include *all* of the documents requested, and 24 of the 28 requested deposition transcripts. The four remaining transcripts—two of which were produced by Defendants in part—contain irrelevant testimony relating to Defendant 3M Company's ("3M") investigation and prosecution of certain patents. Defendants object to producing those materials on relevance and proportionality grounds.

Defendants are submitting the four transcripts at issue, in addition to the twenty-four already produced transcripts for *in camera* review. As the Court will see, the transcripts relate to the following witnesses and topics:

- **Karl Hanson**, an IP attorney at 3M, testified about patent review, investigation and prosecution processes related to two Moldex products.

1

- **Eric Levinson**, an IP attorney at 3M, testified about patent processes at 3M. Levinson also gave some testimony regarding CAEv2 marketing or distribution, but Defendants produced those excerpts.

- **Julie Bushman**, then the Vice President of Business Information and Information Technology, testified about patent prosecution, including the strategy and processes behind the patent litigation with Moldex. Bushman gave some testimony about CAEv2 testing and distribution, and Defendants produced those excerpts.

- **Frank Little**, then the Vice President of the Safety and Graphics group, also testified about his role in the Moldex patent investigation.

It is black letter law that parties cannot obtain discovery on irrelevant topics. *See e.g.*, Fed. Rule Civ. P. 26(b)(1). That principle is dispositive here because this case has nothing to do with patent infringement. Rather, this is a products liability case. Plaintiffs allege Defendants were negligent in their design, testing and labeling of the Combat Arms Earplugs version 2 ("CAEv2"). Whether and how *other* products designed by *other* manufacturers infringed one or more of 3M's patent is irrelevant to resolution of those issues. Accordingly, this Court should deny Plaintiffs' request to compel production of this material. *Cf. In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2017 WL 4399198, at *8 (N.D. Fla. Sept. 29, 2017) (denying motion to compel "information pertaining to other dopamine agonist drugs" because it "would not be relevant to any liability issues regarding Abilify" and is thus "not proportional to the needs of this case").

## BACKGROUND

3M is a global science company that produces more than 60,000 products. Included in those products are certain hearing protection devices, including the Combat Arms Earplugs version 2 ("CAEv2"). One of 3M's competitors in this space is a company called Moldex. Prior to the commencement of this litigation, 3M was adverse to Moldex in two lawsuits related to CAEv2: (1) a patent infringement lawsuit filed by 3M, in which 3M asserted that certain of Moldex's products infringed 3M's patents (*3M Co., et al. v. Moldex-Metric, Inc. et al.*, No. 0:12-cv-00611 (D. Minn. 2012); and (2) an antitrust lawsuit filed by Moldex, in which Moldex alleged that 3M improperly sued Moldex in order to increase its market share to Moldex's detriment (*Moldex-Metric, Inc. v. 3M Co., et al.*, No. 0:14-cv-01821 (D. Minn. 2015).

Plaintiffs in this MDL requested that Defendants produce many of the documents and deposition transcripts from the prior *Moldex* cases. Defendants have worked cooperatively with Plaintiffs to do so. To date, Defendants have produced *all* of the requested documents, and the overwhelming majority—24 of the 28—of the requested transcripts.

The present dispute relates to the four remaining transcripts— Bushman, Hanson, Little, and Levinson.[1] Each of these depositions principally relates to 3M's review and investigation of certain Moldex products—including the Moldex BattlePlug earplug and M Series earmuffs—and 3M's decision to bring a patent enforcement action regarding those products. Defendants are submitting the transcripts with this filing so that the Court can review them *in camera*.[2]

As the Court will see, the testimony in these transcripts is almost entirely irrelevant to the issues in this litigation. To be sure, the Levinson and Bushman

---

[1] In their first Request for Production, Plaintiffs requested "all recordings of depositions taken of witnesses in any Related Proceedings, in written, audiovisual, and any other format, and all exhibits to all such depositions, including the depositions of: … Julie Bushman, Executive Vice President - International Operations of 3M Company; … Karl Hanson, 3M Patent Attorney; Eric Levinson, Assistant Chief IP Counsel at 3M Company; … [and] Frank Little, Executive Vice President, 3M Safety & Graphics Business Group." Ex. 1 (3M's Answer to Plaintiffs' First Set of Requests for Production) at 29-30. Defendants objected to this request "as overly broad, unduly burdensome and not proportional to the needs of this case," and on the grounds that it sought materials subject to a protective order in the *Moldex* litigation. Defendants additionally specifically "object[ed] to the production of the deposition transcripts of Julie Bushman, Karl Hanson, Eric Levinson, and Frank Little as neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.*

[2] The Bushman, Hanson, Little, and Levinson depositions are all subject to a protective order. As the Court will see, production of these materials would reveal highly confidential and sensitive business information, including intellectual property preservation efforts and patent prosecution strategies and how the deponents prepared and assessed patents and potential infringement claims. Ex. 2 (Second Amended Protective Order).

transcripts contain *some* testimony regarding the design, marketing and distribution of CAEv2.  (*See* produced versions of Bushman and Levinson).  But those portions of the transcripts have *already* been produced.  (*Id.*)  Plaintiffs' request that the remaining portions of the depositions related to patent investigation and prosecution issues should be denied.

## ARGUMENT

**I.   THE WITHHELD TESTIMONY IS NOT RELEVANT TO PLAINTIFFS' CLAIMS OR PROPORTIONAL TO THE NEEDS OF THIS CASE.**

Rule 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Luxottica Grp. S.P.A. v. EZ Pawn Fla., Inc.*, No. 6:16-cv-729-Orl-18TBS, 2016 WL 6166435, at *1 (M.D. Fla. Oct. 24, 2016) (quoting Fed. R. Civ. P. 26(b)(1)). "[R]equiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" *Builders Flooring Connection, LLC v. Brown Chambless Architects*, No. 2:11cv373-MHT, 2014 WL 1765102, at *1 (M.D. Ala. May 1, 2014) (quoting GAP Report of Advisory Committee to 2000 amendments to Rule 26). "As the Advisory Committee Notes say, '[t]he Committee intends that the parties and the court focus on the actual claims

and defenses involved in the action.'" *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (quoting the GAP Report).

Courts apply those principles to limit requests for irrelevant and disproportional discovery. For example, in *Abilify*, "Plaintiffs requested Defendants to produce information pertaining to *other* dopamine agonist drugs, contending that the other drugs are relevant in light of what Defendants knew about other drugs with similar mechanisms of action." *Abilify*, 2017 WL 4399198, at *8 (emphasis added). This Court rejected that request because "information regarding *other* drugs is irrelevant and not proportional to the needs of this case." *Id.* (emphasis added). As this Court explained:

> Information regarding second-generation drugs (while of interest) would not be relevant to any liability issues regarding Abilify. While other dopamine agonist drugs, such as Rexulti, might have some of the same general mechanisms of action, the drug was developed ten years after Abilify, has different chemical structures and different indications. Thus, on balance because other dopamine agonist drugs would have marginal relevance at best, production of this information is not proportional to the needs of this case. Plaintiffs' request to produce information regarding other drugs is therefore denied.

*Id.*

Plaintiffs' request here fails for the same reasons. Testimony regarding 3M's patent infringement investigations, and processes and motivations for bringing patent infringement actions, have nothing to do with this litigation. This is a *products liability* case. Plaintiffs allege Defendants were negligent in their design,

6

testing and labeling of CAEv2.  Ex. 3 (Compl.) ¶¶ 22, 23, 25.  The issues raised by these allegations do not turn on whether Moldex infringed a CAEv2 patent, 3M's internal processes for investigating and prosecuting potential patent infringements, or 3M's motivation for suing Moldex for patent infringement in March 2012.  Plaintiff's request for testimony discussing those issues must be denied.

During the parties' meet and confer, Plaintiffs argues that the information was relevant because *Defendants patent prosecution caused their alleged injuries*.  That is, Plaintiffs argued that 3M's patent litigation was designed to push Moldex out of the market and deny Plaintiffs access to non-defective Moldex products.  This argument fails for three reasons.

*First*, it is nothing more than speculation.  Plaintiffs have no basis for ascribing sinister motives to the patent litigation, and no basis to assert that it resulted in the military purchasing CAEv2, instead of some hypothetical Moldex alternative.  The discovery rules make clear that Plaintiffs are not entitled to go on a fishing expedition to investigate their conjecture.  *See Kennedy v. McKnight*, No. 17-14041, 2017 WL 4654446, at *2 (S.D. Fla. Oct. 17, 2017) ("[D]iscovery is not an unlimited license for a fishing expedition.").

*Second*, Plaintiffs' argument is demonstrably false.  The Moldex patent litigation was filed in March 2012, over a decade *after* Defendants began supplying

7

CAEv2 to the military. Plaintiffs cannot possibly show that the 2012 Moldex litigation caused the military's decision to purchase CAEv2 over ten years earlier.

*Third*, taken to its conclusion, Plaintiffs' argument would open the door to re-litigating the entire patent case in this forum. For example, to determine whether or not the patent litigation was intended to push Moldex out of the market, this Court would have to examine, among many other things, evidence regarding the merits of the infringement claims. This MDL—which is already facing significant challenges collecting records on tens of thousands of service members, and the governments' participation in the design and develop of the product—does not need such a "trial within a trial."

Unlike Plaintiffs, whose broad relevance arguments are unbounded by any limiting principle, Defendants position is clear and capable of principled application by the Court—information regarding 3M's patent investigation and prosecution practices are not relevant to this litigation, and thus materials relating to those issues are outside the scope of discovery. This position comports with both Rule 26, and this Court's prior precedents. *Abilify*, 2017 WL 4399198, at *8.

## II. INCIDENTAL REFERENCES TO CAEV2 IN THE TRANSCRIPTS ARE CUMULATIVE OF OTHER EVIDENCE.

In addition to the relevance and proportionality limitations in Rules 26, "a court must limit the scope of discovery if the information sought is unreasonably cumulative or duplicative." *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-CV-557-

8

T-27EAJ, 2013 WL 6170610, at *1 (M.D. Fla. Nov. 22, 2013) (quoting Fed.R.Civ.P. 26(b)(2)(C)); *Brannan v. GEICO Indem. Co.*, No. 1:12-CV-238-GRJ, 8:10-cv-01688-T-17AEP, 2013 WL 5460581, at *1 (N.D. Fla. Sept. 27, 2013) ("Discovery should be limited if it is unreasonably cumulative or duplicative; [or] the party seeking discovery has had ample opportunity to obtain the information."); *Geller v. von Hagens*, No. 8:10-CV-01688-T-17AEP, 2011 WL 13305172, at *2 (M.D. Fla. Dec. 23, 2011) (discovery should be denied if the information "should already be in the Plaintiffs' possession"); *cf Eisai Inc. v. Sanofi-Aventis U.S. LLC*, No. 08-4168 (MLC), 2012 WL 299379, at *7-10 (D.N.J. Apr. 16, 2012) (applying proportionality standards to curtail discovery requests that sought marginally responsive information that was duplicative of ESI already produced in discovery).

Here, as the Court will see, the testimony related to 3M's patent review and investigation occasionally references the design or development of CAEv2, particularly in response to questions regarding the witness' basis for the patent prosecution. This testimony falls far short of making the transcripts relevant. In any event, Plaintiffs already have abundant testimony regarding the design, development and testing of CAEv2, including from numerous witnesses who have first-hand

9

knowledge of those processes.³ Thus, even if these incidental questions regarding CAEv2 had marginal relevance (and they do not), Plaintiffs' request should nevertheless be denied because the information is cumulative, duplicative, and already in their possession.

## CONCLUSION

For each of these reasons, Defendants respectfully request that the Court deny Plaintiffs' request for production of un-redacted copies of the Bushman, Hanson, Little, and Levinson depositions.

DATED:  September 12, 2019           By: *Kimberly Branscome*
                                     Kimberly Branscome
                                     KIRKLAND & ELLIS LLP
                                     333 South Hope Street
                                     Los Angeles, CA 90071
                                     Tel.:  (213) 680-8400
                                     Email: kimberly.branscome@kirkland.com

                                     *Attorney for Defendants 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC*

---

³ For example, among the 24 deposition transcripts produced to date, are those of Elliot Berger and Ronald Kupier, the individuals who ran the laboratory that, in conjunction with the military, designed, developed and testing CAEv2.

## **WORD COUNT CERTIFICATION**

Pursuant to L.R. 7.1(F), the foregoing memorandum contains 2,122 words exclusive of the case caption, certifications, and signature block.


Dated:  September 12, 2019                    Respectfully submitted,

*/s/ Kimberly Branscome*

KIRKLAND & ELLIS, LLP
Kimberly Branscome
kimberly.branscome@kirkland.com
333 South Hope Street
Los Angeles, California 90031
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Counsel for Defendant 3M Company
and Aearo Technologies LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 12th day of September, 2019, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

DATED: September 12, 2019         */s/ Kimberly Branscome*
                                  Kimberly Branscome