**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| This Document Relates to All Actions | ) | Magistrate Judge Gary R. Jones |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND**
**MEMORANDUM OF LAW**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ......................................................................1

II.   SUMMARY OF ISSUES ..........................................................2

III.  ARGUMENT .............................................................................6

     A.    Legal Standard ................................................................6

     B.    Plaintiffs' Requested Discovery Is Highly Relevant and Is Proportionate to the Needs of the Case .................................7

          1.    Predecessor and Successor Documents .................7

               (a)    User and Purchaser Complaints.....................13

               (b)    Instructions and Packaging............................14

               (c)    Marketing Materials, Sales Materials, and Government Procurement Documents ..........16

          2.    Deposition Transcripts ..........................................18

          3.    Plaintiffs' Requests for Predecessor and Successor Documents and the Requested Transcripts are Proportionate to the Needs of the Case....................20

IV.  CONCLUSION..........................................................................23

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.H. ex rel. Hadjih v. Evenflo Co.*,
   2011 WL 3684807 (D. Colo. Aug. 23, 2011) ......................................................9

*Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*,
   2017 WL 876266 (E.D.N.C. Mar. 3, 2017) ......................................................21

*BPP Retail Properties, LLC v. N. Am. Roofing Servs., Inc.*,
   300 F.R.D. 59 (D.P.R. 2014) ...............................................................................9

*Bryte v. Am. Household, Inc.*,
   429 F.3d 469 (4th Cir.2005) ..............................................................................10

*BuzzFeed, Inc. v. U.S. Dep't of Justice*,
   318 F. Supp. 3d 347 (D.D.C. 2018) ...................................................................21

*Centennial Bank v. Servisfirst Bank Inc.*,
   2016 WL 3574587 (M.D. Fla. July 1, 2016) ........................................................6

*Cerrato v. Nutribullet, LLC*,
   2017 WL 3608266 (M.D. Fla. Aug. 22, 2017) .....................................................9

*Cohalan v. Genie Indus., Inc.*,
   276 F.R.D. 161 (S.D.N.Y. 2011) .......................................................................15

*Critchlow v. Sterling Jewelers Inc*,
   2018 WL 7291070 (M.D. Fla. Nov. 13, 2018) ...................................................22

*Desrosiers v. MAG Indus. Automation Sys., LLC*,
   675 F. Supp. 2d 598 (D. Md. 2009) ...................................................................10

*Drossos v. Metro Design USA, LLC*,
   2014 WL 12618200 (M.D. Fla. Oct. 3, 2014) ......................................................9

*Fine v. Facet Aerospace Products Co.*,
   133 F.R.D. 439 (S.D.N.Y.1990) .................................................................. 10, 15

*Henderson v. Holiday CVS, L.L.C.*,
   269 F.R.D. 682 (S.D. Fla. 2010) .........................................................................7

*Holcombe v. Advanced Integration Tech.*,
   2018 WL 3819974 (E.D. Tex. Aug. 10, 2018) ...................................................21

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
   662 F.3d 1292 (11th Cir. 2011) ...........................................................................7

*Lohr v. Stanley-Bostitch, Inc.*,
  135 F.R.D. 162 (W.D. Mich. 1991) ....................................................13

*McCoy v. Whirlpool Corp.*,
  214 F.R.D. 642 (D. Kan. 2003)..........................................................14

*Miravalle v. One World Techs., Inc.*,
  2019 WL 3890803 (E.D. Mo. Aug. 19, 2019)...................................13

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...........................................................................6

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)..........................................................................20

*Rye v. Black & Decker Mfr. Co.*,
  889 F.2d 100 (6th Cir.1989) .............................................................10

*Sharbaugh v. Beaudry*,
  2017 WL 5988221 (N.D. Fla. May 5, 2017) .......................................7

*Swain v. General Motors Corp.*,
  81 F.R.D. 698 (W.D. Pa. 1979) ........................................................15

*United Oil Co., Inc. v. Parts Assoc., Inc.*,
  227 F.R.D. 404 (D.Md. 2005)...................................................... 9, 17

*Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*,
  2017 WL 10084359 (N.D. Fla. June 28, 2017) ...................................7

## Rules and Regulations

Fed. R. Civ. P. 26 ...................................................................................6
Fed. R. Civ. P. 26(b)(1)...................................................................... 7, 21
Fed. R. Civ. P. 37(a)(3)(B) .....................................................................7
Loc. Rule 26.1(C)....................................................................................7

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiffs respectfully submit this memorandum in support of their Motion to Compel ("Motion") Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC (collectively, "Defendants") to produce all documents responsive to Plaintiffs' First and Second Sets of Requests for Production ("Requests").[1]

The Court held the Fourth Case Management Conference on August 26, 2019 and subsequently entered Case Management Order No. 4. This Order allowed the parties to attempt to resolve their discovery disputes regarding the above two issues until August 30, 2019 and, in the event that the parties were unable to reach an agreement, the Court required the parties to file simultaneous briefing on any outstanding issues by September 6, 2019, which the Court later extended to September 12, 2019.  While the parties have made substantial progress on their discovery disputes, no agreement has been reached on the below issues.

---

[1]  Plaintiffs' First and Second sets of Requests are attached hereto as Exhibits 1 and 2, respectively.  Defendants' responses to Plaintiffs' First and Second sets of Requests are attached hereto as Exhibits 3 and 4, respectively.

## II.    SUMMARY OF ISSUES

Defendants refuse to produce several categories of documents concerning the predecessor and successor designs of the dual-ended Combat Arms Earplug Version 2 ("CAEv2").  Defendants also refuse to produce certain material from depositions taken in the *Moldex* actions.  This refusal violates Defendants' discovery obligations because such documents are highly relevant to the claims and defenses in this action.

After Plaintiffs served their initial Requests for Production, Defendants responded with blunderbuss, boilerplate objections, which provided no clarity as to what categories of documents Defendants intended to produce or to withhold. Plaintiffs promptly met and conferred with Defendants, and determined over the course of several discussions that Defendants refused to produce and disputed the relevance of six categories of admittedly responsive documents relating to predecessor and successor designs, including documents relating to: (i) product complaints; (ii) packaging and instructions; (iii) marketing studies and analyses; (iv) sales and government procurement (collectively, "Predecessor and Successor Documents").[2]  Defendants also refused to produce documents relating to (v) the

---

[2]    The Combat Arms Earplug was distributed in a variety of versions, including the CAEv1, CAEv3, CAEv4, and CAEv4.1.  Hereinafter, the term "predecessor and successor" in the context of Combat Arms Earplug designs or products refers to those designs together with the E-A-R UltraFit earplug, a linear earplug otherwise similar in design to the Combat Arms Earplug.

2

manufacture and (vi) the distribution of the predecessor and successor products. Plaintiffs have elected to defer pursuit of manufacturing and distribution materials at this time, while reserving their right to revisit these topics in the future if developments in the case heighten the relevance of such material.

The Predecessor and Successor Documents in dispute are relevant to, *inter alia*, whether there were safer, feasible designs that could meet the needs of the military during the time period that the CAEv2 was on the market. Indeed, each version of the Combat Arms Earplug included the same key design features, such as flanges and a non-linear filter that Defendants purchased from the French-German Research Institute of Saint-Louis ("ISL"). This commonality of design features shows that the documents are relevant to the issue of safer design alternatives. Similarly, these documents are also relevant to the issue of Defendants' notice and awareness of risks and design flaws in the CAEv2 drawn from user complaints regarding the fit or performance of a predecessor or successor product. Finally, Defendants themselves seek these categories of documents from the U.S. Government, in their *Touhy* requests, which should put their relevance beyond dispute.[3]

---

[3] *See, e.g.*, 3M Touhy Requests at §III(A)(10)(seeking design specifications and features for "any hearing protective earplug"); §III(C)(3)(seeking instructions and training materials for "any flange-style hearing protective earplug from January, 1998 to December, 2015); §III(H)(seeking policies and procedures related to the

Defendants also refuse to produce full, unredacted transcripts from the depositions of four 3M employees (Julie Bushman, Karl Hanson, Eric Levinson, and Frank Little) taken in *Moldex-Metric, Inc. v. 3M Co. and 3M Innovative Properties Co.*, Case No. 14-1821 (D. Minn.) ("*Moldex II*").  These employees testified as to their involvement in 3M's internal evaluations, discussions, and deliberations concerning 3M's decision to bring an objectively baseless patent infringement claim against Moldex, its much-smaller competitor, in *3M Co. and 3M Innovative Properties Co. v. Moldex-Metric, Inc.*, Case No. 12-611 (D. Minn.) ("*Moldex I*").[4] 3M's evaluation of Moldex's competing nonlinear earplug designs (in contemplation of 3M's frivolous patent infringement claim) compellingly demonstrates, in the eyes of 3M, the availability of a reasonable alternative design to the CAEv2 (*i.e.*, Moldex's BattlePlugs earplugs) and is thus highly relevant herein. Such evidence further demonstrates 3M's efforts to keep that safer alternative out of service members' ears, and this sharply rebukes 3M's anticipated trial contention (already previewed to Plaintiffs) that it has always prioritized the safety of service

---

fitting of "preformed earplugs" and "triple-flanged earplugs.") (attached hereto as Exhibit 5).

[4]     The *Moldex II* court ruled on summary judgment that 3M's patent infringement claim against Moldex was so baseless that no reasonable litigant could have expected to succeed on the merits of the claim.  *See* Order Granting in Part Plaintiff's Motion for Summary Judgment at 41, Dkt. No. 242, *Moldex II* (Dec. 9, 2016).

members over sales.   The testimony at issue will likely reveal 3M's internal assessments of purported similarities in design, technology, features, function, characteristics, performance, and/or use cases between Moldex's BattlePlugs and the CAEv2.   Accordingly, such evidence is relevant.

Defendants argue that it would be too burdensome to produce the Predecessor and Successor Documents before the September 30, 2019 production deadline set in this case.   The Court should reject this argument for at least three reasons.   First, Defendants have been aware of Plaintiffs' requests for these Documents since the service of Plaintiffs' first set of Requests on July 26, 2019.   That Defendants cannot produce every single Predecessor and Successor Document by September 30 is not a valid excuse for refusing to produce such Documents.   Second, 3M provided no details in its responses to Plaintiffs' Requests – or in the parties' further exchanges on the issue – as to why production of such materials would be burdensome, as required by the Federal Rules of Civil Procedure.   Finally, even if 3M were to belatedly attempt to detail its purported burden in producing the requested documents, the proportionality factors set forth in Rule 26, discussed below, far outweigh any such burden suffered by Defendants in producing them.   The Court should therefore grant Plaintiffs' Motion.

## III.   ARGUMENT

### A.   Legal Standard

Under the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26.[5]  In the phrase "matter that is relevant to any party's claim or defense," the term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 3574587, at *3 (M.D. Fla. July 1, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

---

[5] *See also* Fed. R. Civ. P. 26, advisory committee note to 2000 amendment ("A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.").

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection," and the Court has "broad discretion" to compel such discovery.  Fed. R. Civ. P. 37(a)(3)(B); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

As the party resisting discovery, Defendants must establish that the requested discovery "(1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017);  *see also Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted").  Further, Florida courts strongly disfavor general, boilerplate objections to requests for document productions, such as those served by Defendants herein.  *See Sharbaugh v. Beaudry*, 2017 WL 5988221, at *3 (N.D. Fla. May 5, 2017) (defendants did not address any of Rule 26's proportionality factors in their objections); *see also* Local Rule 26.1(C).

## B.    Plaintiffs' Requested Discovery Is Highly Relevant and Is Proportionate to the Needs of the Case

### 1.    *Predecessor and Successor Documents*

Plaintiffs seek several categories of documents related to predecessor and successor versions of the CAEv2, namely: (i) user or purchaser complaints regarding

7

those products' design, performance, or use; (ii) instructions and packaging for those products; (iii) marketing materials for those products; (iv) and sales and government procurement documents relating to those products.  These categories of documents are responsive to Plaintiffs' Requests Nos. 8, 18, 19, 21, 42, 43, 47, 48 and 63.

For each of these Requests, Defendants initially agreed only to produce documents related to the CAEv2, and *not* predecessor or successor products.  *See* Exhibits 3 and 4.  Subsequent to serving their responses, Defendants agreed to produce only design, development, and testing documents relating to predecessor and successor products, but continue to refuse to produce the other relevant categories of Predecessor and Successor Documents addressed herein. [6]   All Predecessor and Successor Documents are responsive to Request No. 42, and several categories of Documents fall within multiple Requests.

---

[6]   Requests Nos. 8, 18, 19, 21, and 42 are contained in Plaintiffs' First Document Requests, served on June 17, 2019.  *See* Exhibit 1.  Request Nos. 43, 47, 48 and 63 are contained in Plaintiffs' Second Document Requests, served on August 8, 2019.  *See* Exhibit 2.  Subsequent to serving their Responses, Defendants confirmed that they would not be producing the categories of Predecessor and Successor Documents at issue under Request No. 42.  *See* Letter from David Buchanan to Mark Nomellini  (Sept. 3, 2019) (attached hereto as Exhibit 6).  Indeed, Defendants have confirmed that, apart from design, testing, and development documents related to the predecessor and successor products, Defendants will not produce Predecessor and Successor Documents in response to any issued Request.  *See id*.  Defendants declined Plaintiffs' offer to issue additional requests to specifically target Predecessor and Successor Documents in order to sharpen the issues for the instant motion.  *See id.*

Although relevance is always a highly fact-intensive determination, it is the "widely-accepted view" among federal courts that discovery regarding products or incidents other than those that are the subject of the litigation is permissible when the material sought "'involves (1) the same or similar claims arising from (2) the same or similar products at issue.'" *BPP Retail Properties, LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 62 (D.P.R. 2014) (*citing United Oil Co., Inc. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 410 (D.Md. 2005)).  In determining the admissibility – a higher threshold than discoverability – of other incidents, courts are guided by the substantial similarity rule, which "does not require identical products," but instead, "only require[s] substantial similarity among those variables which are relevant to the plaintiff's theory of defect." *A.H. ex rel. Hadjih v. Evenflo Co.*, 2011 WL 3684807, at *4-5 (D. Colo. Aug. 23, 2011) (noting that to establish discoverability, a "plaintiff need not lay the same foundation of substantial similarity as would be necessary to support admission into evidence.").

Federal Courts in Florida have consistently held that "discovery of other incidents involving the same or similar claims and the same or similar products is permissible in a products liability action." *Cerrato v. Nutribullet, LLC*, 2017 WL 3608266, at *2 (M.D. Fla. Aug. 22, 2017);  *see also Drossos v. Metro Design USA, LLC*, 2014 WL 12618200, at *2 (M.D. Fla. Oct. 3, 2014) (same).

As discussed in more detail below, predecessor and successor designs of the CAEv2 share many common features with the CAEv2, including the features central to Plaintiffs' theories of defect.[7]  Therefore, documents relating to those predecessor and successor designs are relevant to the Parties' claims and defenses, and are discoverable.

Defendants do not dispute that the predecessor and successor products contain the same key design features as the CAEv2.

---

[7] In determining relevance with regard to other product versions or models, or other incidents, "courts look to see whether the 'salient characteristics' of the subject incident and prior incident are the same, *Bryte v. Am. Household, Inc.,* 429 F.3d 469, 479 (4th Cir.2005), or whether 'the accidents have occurred under similar circumstances or share the same cause,' *Rye v. Black & Decker Mfr. Co.,* 889 F.2d 100, 102 (6th Cir.1989), or whether 'different models of a product share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation.' *Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.1990)." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 602 (D. Md. 2009) (internal alterations omitted).

(attached hereto as Exhibit 7).



---

For clarity, images of each version of the Combat Arms Earplug are shown below:

| UltraFit Plug | CAEv1 | CAEv2 |
|---|---|---|
|  |  |  |

| CAEv3 | CAEv4 | CAEv4.1 |
|---|---|---|
|  |  |  |

(attached hereto as Exhibit 8).  Notably, Plaintiffs here allege that, among other failings, the very design of the CAEv2 facilitated loosening of the plugs and the creation of slit leaks that exposed service members to risk – a defect in design that the changes to the CAEv4.1 implicitly acknowledged.

12

As the foregoing discussion demonstrates, the CAEv2 is a member of a family of nonlinear, level-dependent earplugs sharing closely related features and technologies.

(a)    User and Purchaser Complaints

Due to the design similarities between the CAEv2 and predecessor and successor designs, user and purchaser complaints regarding the predecessor and successor products, such as complaints regarding product design, performance, or use, are all potentially relevant to Defendants' notice or awareness regarding design defects, risks, hazards, and the necessity of greater warnings and/or instructions on the CAEv2.  These issues relate directly to 3M's liability for several claims asserted in this case.  For instance, user complaints about the CAEv1 or UltraFit plug slipping out of the ear canal during use would be relevant to Defendants' awareness of that fit issue with the CAEv2, ███████████████████████████████████████

███████████████████████████████████████████████████████[12] *See*

Exhibit 7 at 44.  These similarities render all discussions with respect to the adequacy

---

[12]   *See Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 164 (W.D. Mich. 1991) ("plaintiff is entitled to discovery concerning accidents involving not only the stapler used by plaintiff but also other products that exhibit the features that plaintiff claims caused or contributed to his injury."); *see also Miravalle v. One World Techs., Inc.*, 2019 WL 3890803, at *3 (E.D. Mo. Aug. 19, 2019) (in a product liability action, allowable scope of discovery not limited to model of table saw that caused plaintiff's injury).

of protection and/or comfort of the CAEv1 or UltraFit clearly relevant to the claims and defenses in this case – and so too with the successor CAEv3, CAEv4, and CAEv4.1.[13]

(b)   Instructions and Packaging

The instructions and packaging that potentially or actually accompanied predecessor and successor products are relevant to Defendants' awareness of fitting defects and risks associated with the CAEv2.  For instance, ██████████████████

███████████████████████████████████████████████████

████████████████[14]  Defendants' touting of the benefits of a variety of sizes of flanged tips on these successor versions of the Combat Arms Earplugs would provide further evidence that Defendants were on notice that the CAEv2, ████████████████████

---

[13]  More generally with regard to successor designs, it is not only these similarities, but also the differences between versions that render the documents sought herein relevant.  The reasons given for design changes are relevant to 3M's knowledge of design defects in the CAEv2, and 3M's decision to return to a single-ended design for the CAEv3, as opposed to continuing with the CAEv2's dual-ended design, is relevant to some of the key design defect allegations in this case.  *See McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 644 (D. Kan. 2003) (granting discovery on different model where Plaintiffs sought not to establish similarity, but instead to compare the two models, to support their expert's opinion that the difference between the two versions was a factor leading to the injuries Plaintiffs suffered).

[14]  *See* Exhibit 7 at 20.

███████████████████████████ was not suited to achieve a proper seal with many

ear canals.[15]

Defendants' changes to the fitting instructions issued with successor versions

of the Combat Arms Earplug—and their internal discussions regarding the reasons

for those changes[16]—are also relevant to the failure of the CAEv2 to achieve a proper

fit in the ears of many users.  For example, ██████████████████████[17]████

███████████████████████████████████████████████████

████████████████████████ Exhibit 7 at 24. ██████████████

███████████████████████████████████████████████████

████████████████████████ *Id.* at 40.  As an initial matter, instructions

such as these on later versions of the Combat Arms Earplug constitute further

evidence that the ██████████████ CAEv2 was not designed to seal with many ear

canals.  Further, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████(attached hereto as Exhibit 9).

---

[16] *See Fine v. Facet Aerospace Prod. Co.*, 133 F.R.D. 439, 441 (S.D.N.Y. 1990) (an injured party who contended that a later redesign of a defective product had not "eliminated the defects of earlier models was granted discovery concerning the predecessor versions.") (citing *Swain v. General Motors Corp.,* 81 F.R.D. 698, 699–700 (W.D. Pa. 1979)); *see also Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 166 (S.D.N.Y. 2011) (discovery into "'subsequent design changes' made to develop [ ] later models" was appropriate where Plaintiff was injured by earlier model).

[17] NRR stands for Noise Reduction Rating.  This describes the noise attenuation provided by a hearing protection device, and is measured in decibels.

15

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████   Last, the packaging and instructions used

for predecessor and successor products, and Defendants' internal discussions

regarding those topics, are relevant to any contention that the U.S. Government

directed that certain information be selectively provided in the packaging or

instructions.

        (c)     <u>Marketing Materials, Sales Materials, and Government Procurement Documents</u>

The "marketing" materials Plaintiffs seek consist primarily of (i) documents

related to sales strategies, market analyses and studies, focus groups, assessments of

customer demand and desirability, noise attenuation threshold performance

requirements, SWOT analyses, and product or franchise roadmaps; (ii) documents

relating to marketing claims made by Defendants regarding the importance of actual

or perceived benefits of level-dependent plugs, variable size to ensure fit in all ear

canals, anti-slip features, and the "low profile" of a hearing protection device or its

compatibility with any other military equipment or gear; (iii) sales collateral

materials, including product sheets, sales training materials, advertising materials,

and demonstration videos; and (iv) communications between Defendants and the

U.S. concerning procurement of predecessor and successor products. *See* Exhibit 6.

The sales collateral materials sought by Plaintiffs are probative of which features and characteristics 3M believed were important to military purchasers. Any claims 3M made in these marketing materials concerning the efficacy of predecessor and successor designs will be relevant to arguments 3M may make in this case regarding the practical or scientific limitations of hearing protection devices, and inform 3M's awareness of safety concerns and usage limitations,[18] and whether predecessor and successor designs were feasible alternatives.

The "marketing materials" Plaintiffs seek also include communications between Defendants and the U.S. Government regarding the procurement and purchase of predecessor and successor products, including documents sufficient to show the sales, units sold, gross revenue, and net profits from the sale of such products, as well as documents relating to any sales or purchase agreements. Communications concerning the requirements, specifications, needs, or product descriptions for the predecessor and successor products are probative of Defendants' contention that they worked in close consultation with U.S. Government audiologists

---

[18] *See United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005) (allowing discovery on "claims, complaints, and lawsuits regarding *other* products containing" a component or element present in the subject product, because they are probative as to Defendant's knowledge of the dangers of the component or element in the subject product) (emphasis in original).

to develop the CAEv2, as the technology present in the CAEv2 was also present in the predecessor and successor products.

*     *     *     *     *

For the reasons stated above, the Predecessor and Successor Documents likely contain information highly relevant to the claims and defenses in this action.  The fact that Defendants seek many of the foregoing categories of documents to aid their defenses through their *Touhy* requests to the Government should eliminate any debate as to the relevance or burden of producing the subject materials.[19]  The Court should grant Plaintiffs' Motion and order Defendants to produce such documents.

### 2.     *Deposition Transcripts*

Defendants also refuse to produce certain documents responsive to Request No. 34, *i.e.*, full, unredacted transcripts, along with exhibits and audiovisual recordings, of the following depositions taken in *Moldex II*: Julie Bushman, Frank Little, Karl Hanson, and Eric Levinson (collectively, the "Requested Transcripts").[20]  Defendants justify their withholding of these materials (or portions thereof) on the

---

[19]     *See, e.g.*, Exhibit 5 at §III(A)(10)(seeking design specifications and features for "any hearing protective earplug"); §III(C)(3)(seeking instructions and training materials for "any flange-style hearing protective earplug from January, 1998 to December, 2015); §III(H)(seeking policies and procedures related to the fitting of "preformed earplugs" and "triple-flanged earplugs.").

[20]     *See* Letter from Mark Nomellini to Bryan Aylstock at 2 (August 20, 2019) (attached hereto as Exhibit 10).

grounds that such materials relate to 3M's investigation into asserting patent infringement claims against Moldex in *Moldex I* and are not relevant because they will force the parties to re-litigate that case.[21]   Defendants have not agreed to produce any portion of the Little or Hanson transcripts, and have agreed to produce only limited portions of the Bushman and Levinson transcripts that Defendants unilaterally deem "relevant."[22]   Defendants have made clear that they would exclude from production testimony related to "patent investigation issues" in connection with 3M's assertion of frivolous patent infringement claims against Moldex in *Moldex I*.[23]

The Requested Transcripts are clearly relevant to the claims and defenses in this action, as any efforts by 3M to block the sale of a competing design (in this case, Moldex's BattlePlugs earplugs) that 3M contended was substantially similar or equivalent to the CAEv2 would demonstrate quite pointedly that, in the eyes of 3M, such design was a reasonable alternative design.  To the extent there is evidence in the withheld materials that Defendants ascribed the design and technology of the CAEv2 to their own ingenuity and efforts, and not to the Government, this would also be highly relevant, as it would tend to disprove 3M's anticipated effort in these

---

[21]   *Id.*

[22]   *Id.*

[23]   *Id.*

proceedings to project responsibility for the CAEv2 design on the Government. Finally, evidence of efforts to block a safer alternative design further tends to refute 3M's anticipated trial contention that it always put service member safety and protection before financial considerations.

Defendants' argument that this Court would need to "re-litigate" the *Moldex* cases is without merit, as the District Court for the District of Minnesota concluded that 3M's assertion of the '693 patent infringement against Moldex was meritless.[24] Far from trying to re-litigate *Moldex*, the subject information has separate relevance to the claims and issues herein.  The Court should therefore order Defendants to produce complete, unredacted transcripts, exhibits and audiovisual recordings of the depositions of Julie Bushman, Eric Levinson, Karl Hanson and Frank Little in *Moldex II*.

      3.     *Plaintiffs' Requests for Predecessor and Successor Documents and the Requested Transcripts are Proportionate to the Needs of the Case*

All of the factors listed in Rule 26(b)(1) weigh in favor of granting Plaintiffs' Motion and compelling Defendants' compliance with the Requests.  In analyzing the

---

[24]   *See* Exhibit 10 at 2.  Trial courts have "broad discretion" to determine whether non-mutual collateral estoppel should be applied where (i) the issue for which preclusion is sought is identical to one that was actually and necessarily decided in the prior proceeding; and (2) the non-movant had a full and fair opportunity to litigate that issue in the prior proceeding.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

proportionality of the Requests, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

The issues at stake in this action are of extreme importance, as Defendants are alleged to have sold dangerously defective earplugs to the U.S. military for over a decade, causing serious hearing damage to tens of thousands of U.S. service members.  As a result of Plaintiffs' devastating injuries, the amount in controversy is huge, ranging in what is likely tens of billions of dollars.  To Plaintiffs' knowledge, Defendants alone have access to the materials responsive to the Requests, and 3M is a massive, multi-national corporation that generates billions of dollars a year in net profit.[25]  As explained above, the material sought by the Requests relate directly to

---

[25]  *See*, *e.g.*, *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) (proportionality factors weighed in favor of compelling disclosure where plaintiffs' sought punitive damages, and compensatory damages were "substantial."); *Holcombe v. Advanced Integration Tech.* 2018 WL 3819974, at *5 (E.D. Tex. Aug. 10, 2018) (granting discovery as claimed damages of $1,952,835 is "large" amount in controversy, defendant had access to the documents requested, and the burden of producing such documents was "small, if not negligible" for large defendant); *Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, 2017 WL 876266, at *6 (E.D.N.C. Mar. 3, 2017) (granting in part defendant's motion to compel, as even though requested discovery was "not necessarily essential" to the claims and

central disputes in this case, as they are probative of (i) Defendants' awareness of the defects associated with the CAEv2, (ii) the existence of feasible, alternative designs to the CAEv2, (iii) the U.S. Government's input into the design of the CAEv2, and (iv) the wantonness and maliciousness of Defendants' conduct.[26]  In discussions with Plaintiffs, 3M has not come forward with any evidence or details concerning any purported burden associated with producing the subject materials.[27]  Indeed, in view of the TAR Protocol agreed to by the Parties and entered by the Court, Plaintiffs have consented to processes that massively streamline and minimize Defendants' review burden in this case.  It is therefore not surprising that Defendants have not shown that the expense and burden of producing the Predecessor and Successor Documents or the Requested Transcripts would outweigh their likely benefit.  Plaintiffs' Requests are proportional to the needs of the case, and the Court should grant Plaintiffs' Motion.

---

defenses, $1.5 million was a "large" amount in controversy and the cost of discovery was "limited" for plaintiff "with sufficient resources.").

[26]   *See Critchlow v. Sterling Jewelers Inc*, 2018 WL 7291070, at *3 (M.D. Fla. Nov. 13, 2018) (granting discovery directed towards establishing malicious intent).

[27]   Although Plaintiffs inquired during the Parties' meet and confers about whether any of the objected to categories captured a significant volume of documents, Defendants provided no such information.

## IV.   CONCLUSION

Plaintiffs request that this Court enter an order compelling Defendants to produce the Predecessor and Successor Documents and the Requested Transcripts. Such materials are highly relevant to the claims and defenses in these proceedings, and the Requests seeking them are proportionate to the needs of the case.

Dated: September 12, 2019               Respectfully submitted,

*/s/ Bryan F. Aylstock*

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz,
PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

23

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Plaintiffs hereby certify that they complied with the attorney conference requirements set forth in N.D. Loc. R. 7.1(B) prior to the filing of this Motion. Plaintiffs' Motion complies with the limitations of N.D. Loc. R. 7.1(F) and contains 5,226 words and is typed in 14-point font.

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on September 12, 2019, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*
Bryan F. Aylstock
