# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS ) <br> EARPLUG PRODUCTS ) <br> LIABILITY LITIGATION ) <br> ) | CASE NO. 3:19-MD-2885 |

**PLAINTIFFS' FIRST REQUEST**
**FOR THE PRODUCTION OF DOCUMENTS**

PLEASE TAKE NOTICE THAT pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendants produce for inspection and copying the documents designated in these Requests for the Production of Documents (the "Requests" and each a "Request") to Plaintiffs' ESI Liaison, in accordance with the Order for Production of Documents and Electronically Stored Information by 3M, within 30 days from the date of service hereof.

**DEFINITIONS AND INSTRUCTIONS**

1.     As used herein, the terms "you," "your," or "yourself," refers to 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC, and any of their related or affiliated entities or individuals named as defendants in this proceeding (the "Defendants" and each a "Defendant"), their present and former officers, directors, executives, agents, representatives, employees, and/or attorneys.

2.     As used herein, the term "representative" means any and all agents, employees, servants, officers, directors, attorneys or other persons acting or purporting to act on behalf of any Defendant.

3.     As used herein, the term "person" shall mean any natural person or any business, legal

1

or governmental entity, or association.

4.      As used herein, the term "document" or "writing" is synonymous in meaning and equal in scope of the usage of this term in Fed. R. Civ. P. 34. A draft or non-identical copy is a separate document within the meaning of this term. The definition of Document shall include Communication as defined below.

5.      As used herein, the term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communications, includes any document evidencing such oral communications. It includes the transmittal of information by any means, including email, SMS, MMS, or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, and Twitter), shared applications from cell phones, or by any other means. "Communication" shall also include, without limitation, all originals and copies that are provided by you or to you by others.

6.      As used herein, the word "or" appearing in a Request should not be read so as to eliminate any part of a Request but, whenever applicable, it should have the same meaning as the word "and." For example, a Request stating "support or refer" should be read as "support and refer" if any answer that does both can be made.

7.      As used herein, the word "including" means "including but not limited to."

8.      As used herein, the term "3M Earplugs" refers to the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured and sold by Defendants to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by you for civilian use or non-military use.

9.      As used herein, the terms "CAEv1," "CAEv3," "CAEv4," and "CAEv4.1," refer to Combat Arms earplugs Versions 1, 3, 4, and 4.1, respectively.

10.	As used herein, the term "TCAPS" refers to Tactical Communication and Protective System smart earbuds.

11.	As used herein, the term "UltraFit Earplugs" refers to all versions of 3M's E-A-R- UltraFit Earplugs.

12.	As used herein, the term "U.S. Army Criminal Investigation Command Report" refers to the materials produced by the Department of the Army, U.S. Army Criminal Investigation Command, U.S. Army Crime Records Center on March 20, 2019, in response to a Freedom of Information Act request by Lawrence Tracey, Esq. of the Tracey Law Firm.

13.	As used herein, the term "Moldex I" refers to the patent infringement case filed by 3M against a small family-owned manufacturer of ear protection devices, Moldex-Metric, Inc., bearing the style *3M Co. v. Moldex-Metric, Inc.,* Cause No. 12-611 (D. Minn.).

14.	As used herein, the term "Moldex II" refers to the malicious prosecution case filed by Moldex against 3M in the District Court of Minnesota alleging that 3M's earlier patent infringement case (Moldex I) was baseless. The term "Moldex II" encompasses all factual and procedural events related to, or the subject of, litigation proceedings in the case styled *Moldex-Metric, Inc. v. 3M Innovative Properties Company,* Cause No. 14-1821 (D .Minn.).

15.	As used herein, the term "Qui Tam Action" refers to the lawsuit, filed pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), in the United States District Court for the District of South Carolina on May 12, 2016, and bearing the style *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* 3:16-cv-01533-MBS.

16.	As used herein, the term "Related Proceedings" refers to the above-defined Moldex I, Moldex II, Qui Tam Action, U.S. Army Criminal Investigation Command Report, and any other civil or criminal inquiry litigation or investigation relating to the 3M Earplugs.

17. As used herein, the term "The Flange Report" refers to a report which outlines testing procedures for your hearing protection products, including the 3M Earplugs. The report was produced by you in litigation with Moldex Metric, Inc. in approximately 2015.

18. As used herein, the phrase "The Medical Procurement Item Description" shall mean the Medical Procurement Item Description, referenced on page 4 of Defendants' Preliminary Statement Pursuant to Pretrial Order No. 2, that was circulated by the U.S. Military's purchasing authority in the course of soliciting bids for military unique double-ended earplugs

19. As to any document or information that would fall under the scope of any document request herein, but over which you claim a privilege or protection, including but not limited to attorney-client privilege, attorney work-product privilege, or joint defense privilege, such document shall be logged on a privilege log that accompanies the production of documents from which it was withheld. Defendants' privilege log shall (a) conform to Federal Rule of Civil Procedure 26 and the agreement of the Parties with regard to the information reflected thereon, (b) be cumulative (*i.e.,* to the extent documents are produced in waves, the privilege log shall be updated to incorporate documents withheld from production in subsequent waves); and (c) be delivered in Excel and PDF formats.

20. The Requests shall be continuing, and you are required to supplement your responses thereto by immediately producing for inspection and copying any requested document that comes into your possession or subject to your custody or control subsequent to the date of this Request.

21. All documents and electronically stored information produced in response to these requests must be produced in accordance with the stipulated protocol for the production of electronically stored information.

22. In responding to the Requests, you shall designate the specific Request or Requests to

which each document produced is responsive.

———————————————

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Please produce true and correct copies of the following:

**DESIGN, TESTING, AND CORRECTIVE ACTION**

1. All documents relating to the design, testing, and performance of the 3M Earplugs.

2. All documents regarding any risks, elevated hazards, failures or deficiencies in fit, or dangers to hearing from the use of the 3M Earplugs.

3. All documents in the design history files for the 3M Earplugs, including any contemplated or implemented changes to the design of the 3M Earplugs or fitting instructions or other instructions for their use.

4. All studies, analyses, memoranda, databases, complaints, and other documents relating to alleged defects in or failures of the 3M Earplugs or similar military grade or dual-purpose earplugs, whether or not such earplugs were manufactured or marketed by you, including any product defect analyses, internal investigations, or hazard assessments arising out of, or related to, alleged defects in or failures of the 3M Earplugs.

5. All documents relating to the technical specifications for the design and manufacture of the 3M Earplugs, including but not limited to technical specifications, validations, and alternative design options.

6. All documents relating to your response to technical specifications or other requests from the U.S. government or any of the U.S. Armed Forces for hearing protection devices for armed force service members.

7. All documents reflecting or relating to objects, materials, conditions, or anything else encountered during testing that indicated or triggered potential failures of fit, performance, or auditory complications for users of the 3M Earplugs.

8. All documents that reflect or relate to any and all third-party studies or testing any Defendant commissioned, funded, requested, or about which any Defendant was notified, of any version of Combat Arms earplugs, including studies conducted by independent labs not controlled by any Defendant and studies conducted by any government entity, that analyze or compare such earplugs to the 3M Earplugs or any predecessor or successor designs of any Combat Arms earplugs.

9. All documents that constitute, reference, relate, or pertain to The Flange Report, including but not limited to documents regarding the creation of The Flange Report; communications transmitting The Flange Report to or from any person, including your present or former employees, your present or former consultants, and/or any U.S. government employee or agent; and documents discussing The Flange Report.

10. All documents relating to actual or contemplated training, instructions, or draft instructions for the use of the 3M Earplugs, including all training and instructions provided to users of the 3M Earplugs, all training and instructions used or created in the course of testing the 3M Earplugs, and all correspondence regarding proposed or executed edits, additions, deletions, or other modifications to any such training or instructions.

11. Documents sufficient to show each version of fitting instructions or other instructions for use that you provided for 3M Earplugs.

12. All documents regarding the drafting and revision of any instructions you produce in response to Requests Nos. 9 and 10.

13. All documents relating to or constituting complaints regarding the 3M Earplugs from any person including any purchaser or user of the 3M Earplugs, any communications with third parties regarding such complaints, and all documents relating to your responses to any such complaints,

including any actual or contemplated repair, fix, mitigation, remedial measure, warning, redesign, or other means of redressing, in whole or in part, any actual or suspected defect in the 3M Earplugs.

14. All documents relating to Dr. Douglas Ohlin Ph.D., including (a) all personnel records of Dr. Douglas Ohlin Ph.D.; (b) all communications between Dr. Douglas Ohlin and any other person, or between Dr. Douglas Ohlin and any Defendant, that reference, relate, or pertain to hearing protection devices, including the 3M Earplugs; (c) documents sufficient to establish the nature and timeline of all contractual, employment, agency, or other relationships between Dr. Douglas Ohlin and any Defendant; (d) all documents relating to payments or grants, direct or indirect, from you to Dr. Douglas Ohlin, including payments to Dr. Douglas Ohlin relating to work as a consultant, prior to the formal start of his employment with 3M; (e) all documents relating to Dr. Douglas Ohlin's presenting or speaking at any 3M-sponsored seminars; (f) all communications between Dr. Douglas Ohlin and any person acting on behalf of or purporting to act on behalf of the U.S.

15. All documents relating to or constituting correspondence between you and either of (a) Pascal Hamery; and/or (b) Institut Franco-Allemand de Recherches de Saint-Louis, including any person acting on behalf of or purporting to act on behalf of Institut Franco-Allemand de Recherches de Saint-Louis.

16. All documents relating to 3M's employment of any former U.S. Armed Forces officers whose duties in their earlier employment with the U.S. Armed Forces related to the purchasing of earplugs or other hearing protection systems from private contractors on behalf of the U.S. Armed Forces.

17. Any personnel profile, analysis, or other document generated, obtained, or maintained by you concerning any employee, representative, or member of the U.S. Military, Government, or contracting party with whom you dealt, or who had any responsibility concerning, 3M Earplugs.

18. All raw data, test results, hazard assessments, Noise Reduction Ratings, testing protocols, and other documents pertaining to or constituting the work product of the EarCAL Laboratory regarding the 3M Earplugs or any of its predecessor(s).

19. All documents that reference, relate or pertain to the design, development and testing of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS.

20. All documents that concern any research, study, or investigation conducted by you, supported by or sponsored by you, or provided to or obtained by you regarding: (a) the role or involvement of acoustic levels or exposures in the development or worsening of hearing loss or tinnitus; (b) the sequelae from and progression of hearing loss or tinnitus; (c) safe levels and durations of acoustic exposure; (d) hearing conservation; or (e) the prevention of noise-related hearing loss.

21. All documents that concern any historical, current, or prospective research, study, or investigation conducted by you, supported by or sponsored by you, or provided to or obtained by you regarding the 3M Earplugs or any predecessor or successor design, including funding amounts, test data, communications with persons associated with such research, actual or potential study protocols, and all versions of interim, draft, or final reports.

**COMMUNICATIONS WITH U.S. PURCHASING ENTITIES**

22. The Medical Procurement Item Description.

23. All documents that you claim represent or reflect any change, modifications, revision,

addition, or clarification by the U.S. government of the design specifications, performance criteria, testing protocols or other instructions set forth in the Medical Procurement Item Description.

24. All communications with any government entity or other purchaser concerning the 3M Earplugs, including any testing a government entity performed on 3M Earplugs, any assessments a government entity provided to you of 3M Earplugs test results that you provided to the entity, and any regulatory communications file for any purchaser including the U.S. and any U.S. government entity.

25. All documents submitted by Defendants in response to the U.S. Military's Request for Proposal to supply earplugs that reflect or contain a certification that the 3M Earplugs complied with the specifications and salient characteristics of the Medical Procurement Item Description.

26. All documents that constitute, reference, relate, or pertain to the testing of any and all versions of the 3M Earplugs by a military audiologist or other U.S. government employee or agent, including documents relating to testing that may have been abandoned or stopped for any reason, including fit issues.

**MARKETING, SALES, AND DISTRIBUTION**

27. All documents concerning the marketing of the 3M Earplugs, including any demonstration videos, product sheets, sales training materials, sales and advertising materials, and marketing plans or sales strategies.

28. All documents relating to conferences, seminars, conventions, panels, working groups, or other events or projects relating to hearing conservation or hearing protection that you or any of your representatives, employees, or agents attended or presented at, including copies of any presentations, materials distributed or collected, schedules, agendas, minutes, written transcripts

or audiovisual recordings, or notes, and each Defendant's annual budget relating to sponsoring such conferences, seminars, conventions, panels, working groups, or other events or projects..

29.     For each year from 2003 to 2019, documents sufficient to show the sales, units sold, gross revenue, and net profits from the sale of 3M Earplugs and the identity of purchasers of 3M Earplugs, including master purchase agreements and any subsidiary purchase requests.

30.     Documents sufficient to show the sales of 3M Earplugs for each year from 2003 to 2019, including quantities of each unit sold, the sale price, aggregate product sold, the purchasing unit of the government or military, and shipment location

31.     All documents relating to the distribution of 3M Earplugs, including the amount or quantity of 3M Earplugs ordered by purchasers and any order or shipment records or other documents showing intermediate and ultimate shipping destinations of purchased 3M Earplugs.

**RELATED PROCEEDINGS AND INVESTIGATIONS**

32.     All documents that you produced in any Related Proceedings.

33.     All sworn statements, affidavits, responses to requests for admission or other discovery requests, pleadings, interrogatory responses, and expert statements of any employee or agent of any defendant, or of any defendant itself, relating to the 3M Earplugs or any Related Proceedings.

34.     All recordings of depositions taken of witnesses in any Related Proceedings, in written, audiovisual, and any other format, and all exhibits to all such depositions, including the depositions of:

- Elliot Berger, 3M Division Scientist/Audiologist;
- Julie Bushman, Executive Vice President - International Operations of 3M Company;
- Jeff Hamer, 3M Lab Manager;
- Karl Hanson, 3M Patent Attorney;
- Ronald Kieper, Aearo Sr. Acoustic Technician;
- Eric Levinson, Assistant Chief IP Counsel at 3M Company;
- Frank Little, Executive Vice President, 3M Safety & Graphics Business Group;

- Brian McGinley, Global Business Director for 3M;
- Kevin L. Michael, PH.D., President of Michael & Associates, Inc. (Acoustic Lab);
- Doug Moses, 3M Marketing – U.S. Active Communication's / Military Manager;
- Brian Myers, 3M Business Director – Personal Safety Division;
- Dr. Douglas W. Ohlin, 3M Audiologist/Scientist; and
- Walter Pawlowski, President of New Business Dynamics LLC.

35. All documents referenced in the U.S. Army Criminal Investigation Command Report—together with all other correspondence, communications, or documents produced in, generated in, in connection with, or relating to such investigation or proceeding—including the documents bearing the bates numbers listed in Exhibit A hereto.

**CORPORATE STRUCTURE, BOARD, FINANCIAL MATTERS, & PROCEDURES**

36. Documents sufficient to show for each Defendant the hierarchy, organizational structure, corporate structure, lines of authority, relationships, functions, operations, or personnel reporting requirements between or among persons, officers, directors, independent contractors, outside suppliers departments, divisions, parents, subsidiaries, joint ventures, affiliates, or other sub-units or related entities or persons responsible for the topics enumerated in Requests 1-9.

37. All minutes, presentation materials, handouts, background materials, board books, and other documents relating to any meeting of the managers, members, shareholders and/or Board of Directors of any Defendant addressing or concerning the 3M Earplugs or the Related Proceedings.

38. Documents sufficient to show the value of each Defendant for each year from 2003 to 2019, including statements of income, balance sheets, statements of cash flows, and financial statements of each Defendant.

39. All purchase agreements, sale agreements, contracts, or other documents relating to 3M's 2008 acquisition of Aearo Technologies, LLC and any of its affiliates, including any due diligence information exchanged in the course of that acquisition.

40. All documents, including insurance agreements or policies, under which any person or entity may be required to satisfy, indemnify, or reimburse all or part of a judgment that may be rendered in this action, including any person carrying on an insurance business.

41. Documents sufficient to show any of your guidelines, standard operating procedures, or policies concerning: (a) design process, risk mitigation, manufacture, testing, complaint or hazard investigation or response, including documentation of the foregoing, for your products, including 3M Earplugs; (b) the creation and implementation of corrective action plans and/or recalls in the context of dangerous products; (c) communications with the government, including any division, department, agency, member, employee, or representative thereof, concerning contracting, specifications, procurement, product compliance or complaints, together with the procedures and processes for documenting, memorializing, and retaining such communications; (d) the use of technology, communication devices, computers, systems that may contain potentially relevant information—whether provided by defendants or owned by your employees/representatives/agents—including guidelines, procedures, and policies concerning telecommuting, communications, email, voicemail, messaging, backups and archives of such information, or retention of electronically stored information in the ordinary course or in response to a litigation hold; and (e) internal reporting and investigation of actual or suspected misconduct.

**OTHER DOCUMENTS RELATED TO CLAIMS AND DEFENSES HEREIN**

42. All documents in your possession, custody, or control related to Plaintiffs' claims in these MDL proceedings or your defenses herein, or that you may use to support your defenses herein.

## EXHIBIT A: SPECIFIC DOCUMENTS LISTED IN U.S. ARMY CRIMINAL INVESTIGATION COMMAND REPORT

| | |
|---|---|
| 3M00000001 | 3M00004342-4343 |
| 3M00000424 | 3M00004465-4469 |
| 3M00001698 | 3M00004468 |
| 3M00001703 | 3M00004550-4551 |
| 3M00001705 | 3M00004558 |
| 3M00002006 | 3M00004559 |
| 3M00002052-2055 | 3M00004577 |
| 3M00002113-2142 | 3M00004880-4882 |
| 3M00002148 | 3M00004885 |
| 3M00002150 | 3M00005285-5290 |
| 3M00002153 | 3M00005361-5368 |
| 3M00002568 | 3M00005437-5439 |
| 3M00002990 | 3M00005531 |
| 3M00003002 | 3M00006947-6960 |
| 3M00003006 | 3M00005005 |
| 3M00003388 | 3M00006960-6965 |
| 3M00003995-4041 | 3M00006966-7281 |
| 3M00004325-4340 | |