# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS | ) | CASE NO. 3:19-MD-2885 |
| LIABILITY LITIGATION | ) | |
| | ) | |

**PLAINTIFFS' SECOND REQUEST
FOR THE PRODUCTION OF DOCUMENTS**

PLEASE TAKE NOTICE THAT pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendants produce for inspection and copying the documents designated in these Requests for the Production of Documents (the "Requests" and each a "Request") to Plaintiffs' ESI Liaison, in accordance with the Order for Production of Documents and Electronically Stored Information by 3M, within 30 days from the date of service hereof.

**DEFINITIONS AND INSTRUCTIONS**

1. As used herein, the terms "you," "your," or "yourself," refer to 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC, and any of their related or affiliated entities or individuals named as defendants in this proceeding (the "Defendants" and each a "Defendant"), their present and former officers, directors, executives, agents, representatives, employees, and/or attorneys.

2. As used herein, the term "representative" means any and all agents, employees, servants, officers, directors, attorneys or other persons acting or purporting to act on behalf of any Defendant.

3. As used herein, the term "person" shall mean any natural person or any business, legal or governmental entity, or association.

4. As used herein, the term "document" is synonymous in meaning and equal in scope of

1

the usage of this term in Fed. R. Civ. P. 34. A draft or non-identical copy is a separate document within the meaning of this term. The definition of Document shall include Communication as defined below.

5.   As used herein, the term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communications, includes any document evidencing such oral communications. It includes the transmittal of information by any means, including email, SMS, MMS, or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, and Twitter), shared applications from cell phones, or by any other means. "Communication" shall also include, without limitation, all originals and copies that are provided by you or to you by others.

6.   As used herein, the word "or" appearing in a Request should not be read so as to eliminate any part of a Request but, whenever applicable, it should have the same meaning as the word "and." For example, a Request stating "support or refer" should be read as "support and refer" if any answer that does both can be made.

7.   As used herein, the word "including" means "including but not limited to."

8.   As used herein, the word "competing product" means a product targeting the same market segment, customers, users, non-user purchasers, or uses or types of uses, as the 3M Earplugs.

9.   As used herein, the term "3M Earplugs" refers to the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured and sold by Defendants to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by you for civilian use or non-military use, including the 3M E-A-R ARC Plug.

10.   As used herein, the term "Department of Defense" includes the Defense Department, the United States Department of Defense, Defense, or any federal department responsible for safeguarding national security of the United States, including all branches of the military and

subsidiary branches and agencies, including, inter alia, the Department of the Army, Department of the Navy, Department of the Air Force, and Defense Logistics Agency.

11. As used herein, the term "U.S. Army Criminal Investigation Command Report" refers to the materials produced by the Department of the Army, U.S. Army Criminal Investigation Command, U.S. Army Crime Records Center on March 20, 2019, in response to a Freedom of Information Act request by Lawrence Tracey, Esq. of the Tracey Law Firm.

12. As used herein, the term "Moldex I" refers to the patent infringement case filed by 3M against a small family-owned manufacturer of ear protection devices, Moldex-Metric, Inc., bearing the style *3M Co. v. Moldex-Metric, Inc.,* Cause No. 12-611 (D. Minn.).

13. As used herein, the term "Moldex II" refers to the malicious prosecution case filed by Moldex against 3M in the District Court of Minnesota alleging that 3M's earlier patent infringement case (Moldex I) was baseless. The term "Moldex II" encompasses all factual and procedural events related to, or the subject of, litigation proceedings in the case styled *Moldex-Metric, Inc. v. 3M Innovative Properties Company,* Cause No. 14-1821 (D .Minn.).

14. As used herein, the term "Qui Tam Action" refers to the lawsuit, filed pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), in the United States District Court for the District of South Carolina on May 12, 2016, and bearing the style *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* 3:16-cv-01533-MBS.

15. As used herein, the term "Related Proceedings" refers to the above-defined Moldex I, Moldex II, Qui Tam Action, U.S. Army Criminal Investigation Command Report, and any other civil or criminal inquiry litigation or investigation relating to the 3M Earplugs.

16. As to any document or information that would fall under the scope of any document request herein, but over which you claim a privilege or protection, including but not limited to attorney-client privilege, attorney work-product privilege, or joint defense privilege, such document shall be

3

logged on a privilege log that accompanies the production of documents from which it was withheld. Defendants' privilege log shall (a) conform to Federal Rule of Civil Procedure 26 and the agreement of the Parties with regard to the information reflected thereon, (b) be cumulative (*i.e.,* to the extent documents are produced in waves, the privilege log shall be updated to incorporate documents withheld from production in subsequent waves); and (c) be delivered in Excel and PDF formats.

17. The Requests shall be continuing, and you are required to supplement your responses thereto by immediately producing for inspection and copying any requested document that comes into your possession or subject to your custody or control subsequent to the date of this Request.

18. All documents and electronically stored information produced in response to these requests must be produced in accordance with the stipulated protocol for the production of electronically stored information.

19. In responding to the Requests, you shall designate the specific Request or Requests to which each document produced is responsive.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce true and correct copies of the following:

43. All documents relating to Your practices, best practices, standards, and regulations concerning testing failures or difficulties, aberrational test results, facially inaccurate or erroneous test results, failures of testing methods, retention of testing results, and processes for review or challenge of reported testing results, together with any actual data concerning the foregoing with regard to the testing of the 3M Earplugs and any actual or potential predecessor or successor design.

44. All documents relating to Your policies and procedures used for determining and evaluating proper earplug fit in the course of design and testing of earplugs, and any analyses of those policies and procedures, including accounting for variation in ear canal size, formal or informal training of test subjects on creating and maintaining proper fit, formal or informal training of test

4

administrators and/or experimenters concerning creating and maintaining proper fit for test subjects, the scope of fit instructions provided to test subjects as compared to fit instructions provided to end-users, and any methods for determining the extent to which successful fit in the course of design and testing may be replicated by end-users.

45. All documents relating to Your actual or potential policies and procedures for determining and evaluating the degree of attenuation provided by hearing protection devices, including Noise Reduction Rating ("NRR"), Single Number Rating ("SNR"), and Sound Level Conservation ("SLC80"), and any analyses of those policies and procedures, including best practices for determining the degree of attenuation provided by hearing protection devices, the efficacy and limits of methods of determining the degree of attenuation provided by hearing protection devices, and any alternative methods for determining the degree of attenuation provided by hearing protection devices.

46. All documents concerning the methods used by You for selecting test subjects for testing the fit of and degree of attenuation provided by hearing protection devices, including NRR, SNR, and SLC80, and labelling of hearing protection devices relating to such standards, including the criteria you use for placing test subjects on "test panels" for NRR labeling tests and any other testing or evaluation of the degree of attenuation provided by hearing protection devices, criteria for exclusion from those test panels, and any documents showing any connection between an individual test subject's results and that test subject's inclusion in future test panels.

47. All documents relating to any research, investigation, or testing concerning (1) the 3M Earplugs; (2) any actual or potential predecessor or successor product to the 3M Earplugs; or (3) noise attenuation, hearing loss, hearing conservation, and acoustical science in the context of (a) combat, military, or battlefield environments; or (b) impulse noise such as gunfire or explosives; including direct or indirect financial support, and/or writing, drafting, editing, or commenting upon

5

work contemplated for publication concerning the foregoing.

48. All documents relating to any analysis of the methods used or contemplated for use in evaluating and testing the 3M Earplugs, including any research, evaluation, challenge, complaint, study, or known deficiency of any evaluative or testing procedure applied to the 3M Earplugs or any actual or potential predecessor or successor version thereof, including analysis of methods for the testing of fit, attenuation, and seal of hearing protection devices.

49. All documents concerning the relationship between the degree of attenuation provided by hearing protection devices, and the extent of attenuation in reasonably anticipated use, including Your policies concerning any quality assurance or other procedures for ensuring the accuracy of attenuation claims in the use applications for which the product was designed.

50. All documents reflecting or constituting any analysis or study of the nature and extent of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons or other equipment, or other conditions attendant to those circumstances that may affect the ability of the 3M Earplugs to protect their wearer.

51. All documents concerning Your review of any claims regarding performance, testing, test results, fit, comfort, or use in the marketing materials sought by Request No. 27, including any discussions of the language used in marketing material.

52. All documents relating to Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedele, Dr. Georges Garinther, Dr. Thomas R. Letowski, Richard McKinley, Dr. Lorraine Babeu, Dr. William Ahroon, Dr. Douglas Brungart, Dr. Eric Fallon, Mary S. Binsell, Brian Hobbs, Robert Williams, James Lovejoy, Daniel L Johnson, Armand Dancer, Karl Buck, Bettye H. Simmons, and/or Raymond Fatz, and the 3M Earplugs, earplug design, and/or testing, fit issues, and/or evaluation of hearing protection devices, including any communications between You or any employee or agent of Yours and any of those individuals relating to those topics.

53.     All documents reflecting or constituting the results of testing You performed on any competing products.

54.     All documents concerning any competitive analysis by you of competing products actually or potentially marketed by entities other than Defendants, including any documents reflecting any efforts to prevent entry of competing products into the 3M Earplugs market.

55.     All documents relating to Your actions or communications concerning any criticism or critique of features, functionality, specifications, testing results, or marketing claims or representations of any competing product or manufacturer, marketer, or distributor of a competing product, whether such actions or communications were taken with regard to the public generally, to customers, or to regulatory or other legal authorities, and any other actions taken to control the flow of information to the public regarding competing products.

56.     All documents relating to any actual, contemplated, or threatened use of cease and desist letters or orders, intellectual property litigation, or other action against critics either of the 3M Earplugs or of the manner of development or testing of the 3M Earplugs, or other actions to and any other efforts to control the flow of information to the public regarding the 3M Earplugs and to prevent criticism of the 3M Earplugs from reducing the value of the 3M Earplugs business.

57.     All documents and communications between You and any government entity, agency and/or service branch, including foreign governments and regulatory bodies, concerning performance, testing, test results, or fit, or any complaints or representations concerning the foregoing, with regard to the 3M Earplugs and/or any competing products.

58.     All documents and communications relating to Your interactions with or lobbying of any government or regulatory entity concerning rulemaking, voluntary industry standards, testing, labeling, the setting of product specifications or requirements, hearing conservation programs, purchaser solicitations, and procurement processing of hearing protection devices,

7

including without limitation OSHA, EPA, and Department of Defense.

59. All documents related to any claims, contentions, investigations, or proceedings brought by any standards body, customer, or state or federal agency, regulator, or other entity, relating to alleged testing improprieties or false claims on behalf of Defendants or any of their predecessors, including Cabot, concerning NRR or the extent of sound attenuation with regard to any hearing protection device, including documents relating to any actions taken by the EPA in or around 1990 relating to the NRR rating of Cabot's E-A-R foam plugs.

60. Any test request by any regulator, standards body, or agency, and the results of and protocols for any such test.

61. All documents relating to Your interaction with non-government industry associations and standards-setting entities, including documents relating to your involvement in the development of testing requirements, standards, and procedures, and your interaction with, lobbying of, influence of, or funding of any entity involved in setting any testing requirements, procedures or voluntary industry standards.

62. All documents relating to Your interactions with any media source or any third-party public relations, media relations, or public affairs entities concerning the 3M Earplugs, including all actual or potential public relations actions, standby statements, talking points, FAQs, press releases, Q&As, and messaging documents, including any public relations actions relating to the launch of the 3M Earplugs and any litigation concerning the 3M Earplugs.

63. All documents relating to Your business strategy, regulatory strategy, product development strategy, market study and analysis, and life cycle planning, for the 3M Earplugs and any actual or potential predecessor or successor designs thereof.

64. All investigations, evaluations, due diligence, and studies of the non-linear filter incorporated in the 3M Earplugs and any actual or potential alternative designs, whether conducted

8

by you or by any other entity, including any analysis of the effect the incorporation of the filter may have had upon the fit of the 3M Earplugs.

65. All documents relating to the testing, investigation, development, or study of non-linear earplugs and/or non-linear earplug component filters.

66. Any documents reviewed by or otherwise used to prepare any witness designated to give testimony responsive to any Rule 30(b)(6) Deposition Notice.

67. All material called for in Exhibit A to the Rule 30(b)(6) Deposition Notice served August 2, 2019, attached hereto as Attachment A, and all documents called for in Exhibit A to the Rule 30(b)(6) Deposition Notice filed July 17, 2019, attached hereto as Attachment B, or in any Rule 30(b)(6) Deposition Notice or attachment or exhibit thereto served hereafter.