# EXHIBIT 6

# SEEGERWEISS LLP
NEW YORK • NEW JERSEY • PHILADELPHIA

September 3, 2019

**VIA EMAIL**
Mark Nomellini, Esq.
mnomellini@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle Dr.
Chicago, IL 60654

> Re: *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, **3:19-md-2885**
> *3M's Answers and Objections to Plaintiffs' First Requests for Production*

Dear Mark:

    I write to follow up on our discussions regarding certain of Plaintiffs' Requests for Production (the "Requests") that seek information regarding predecessor and successor designs of the 3M Earplugs.[1] In our calls over the last week, we have discussed categories of documents that Plaintiffs believe are responsive to the existing requests and relevant to the claims and defenses herein. We understand that 3M preliminarily opposes the production of the following categories of documents with regard to predecessor and successor designs: (i) documents relating to distribution; (ii) documents relating to manufacturing; (iii) documents relating to marketing; (iv) documents relating to sales; (v) documents relating to packaging and instructions; (vi) documents relating to product complaints.[2]

    In the interest of compromise, with regard to the first two items above, Plaintiffs are willing to defer requests for documents relating solely to distribution and manufacturing. However, Plaintiffs reserve the right to revisit these topics in the future following further elucidation of Defendants' defenses and/or other developments in the case, which heighten the relevance of such materials. For example, to the extent that there were issues with regard to the manufacture or distribution of predecessor or successor products that resulted in defects or hazards that are similarly relevant herein—or which are otherwise relevant to the 3M Earplugs or the claims or defenses in these proceedings—such information would obviously be of interest to Plaintiffs. We are not aware of any such information at this time. By seeking a carve-out on these issues, we assume that neither are you. To the extent this is not correct, please promptly advise Plaintiffs so that we can further discuss these items.

---

[1] *See* Requests Nos. 8, 18, 19, 21, 42, 43, 47, 48, and 63. As in Plaintiffs' Requests, the term "3M Earplugs" refers to the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured and sold by Defendants to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by you for civilian use or non-military use. Predecessor and successor designs include without limitation the E-A-R UltraFit, CAEv1, CAEv3, CAEv4, and CAEv4.1 (collectively, "CAE").

[2] We understand from our discussion that Defendants do not generally oppose documents relating to the design, development, and testing of successor and predecessor designs. *See, e.g.,* Request No. 19.

Plaintiffs believe the other categories enumerated above (product complaints, instructions, packaging, marketing, and sales) are highly likely to include information relevant to their claims and 3M's purported defenses. The below provides examples, without limitation, explaining why each category is relevant and should be produced.

**Product Complaints**

Documents concerning complaints about predecessor and successor designs include, *inter alia*:

- Documents relating to any complaints regarding product design, performance, or use, from users or purchasers of any passive non-linear or level-dependent products, including predecessor and successor CAE.
- Documents discussing actual or perceived risks, elevated hazards, defects, failures or deficiencies in fit in any passive non-linear or level-dependent products, including predecessor and successor CAE.

Such documents are relevant to Defendants' notice or awareness regarding design defects, risks, hazards, and the necessity of greater warnings and/or instructions, and relate directly to 3M's liability for a variety of claims asserted in this case.

**Instructions & Packaging**

Documents constituting instructions and packaging for predecessor and successor designs include, *inter alia*:

- Documents relating to the labeling or packaging of any passive non-linear or level-dependent products, including predecessor and successor CAE.
- Instructions for use, warnings, end-user packaging, shipment packaging, and training materials accompanying products.
- Requirements for labelling, requirements for packaging or storage, and requirements governing the inclusion of instructions.

Performance claims, instructions, or warnings on the packaging or instructions of successor or predecessor products informs 3M's notice and awareness of risks and safety concerns, together with usage requirements and limitations. Further, such documents are relevant to any contention that the U.S. Government directed that certain information be selectively provided in packaging or instructions, and likewise are probative of feasibility.

**Marketing**

Given who purchased the CAEv2 (*e.g.*, military procurement personnel), the term "marketing," as Defendants have used it in our discussions, may take a unique form in the context of this case, and may not be the most precise term to describe the materials Plaintiffs seek. To

ensure the parties are thinking of the same types of materials, "marketing" documents, as Plaintiffs apply the term in the context of predecessor and successor designs, include, *inter alia*:

- With regard to any passive non-linear or level-dependent products, including predecessor and successor CAE:
  - Product plans or sales strategies, market analyses, market opportunity evaluations, needs analyses, market studies, focus groups, assessments of customer demand and desirability, threshold performance requirements, SWOT analyses, and product or franchise roadmaps.[3]
  - Claims made by you regarding the importance or actual or perceived benefits of level-dependency and non-linearity, variable size to ensure fit in all ear canals, claims regarding any anti-slip features, claims regarding the "low profile" of an HPD or its compatibility with any other military equipment or gear.

Plaintiffs believe that documents relating to the development of predecessor and successor designs with regard to their anticipated market, including Defendants' communications with the U.S. Government regarding passive non-linear or level-dependent products, and Defendants' internal documents relating to those communications, are relevant to the claims and defenses herein. As in the context of instructions and packaging material above, any claims 3M made regarding the efficacy of predecessor and successor designs will be relevant to arguments 3M may make regarding the practical or scientific limitations on the feasible extent of hearing protection.

**Sales / U.S. Government Procurement**

As you know, Plaintiffs have requested certain high-level information regarding total sales of predecessor and successor products. *See* Plaintiffs' First Set of Interrogatories, Interrogatory No. 3. In addition to that information, Plaintiffs also seek communications between 3M and the U.S. Government regarding the procurement and purchase of these products. Responsive documents reflecting these requests include, *inter alia*:

- Documents sufficient to show the sales, units sold, gross revenue, and net profits from the sale of passive non-linear, or level-dependent products, including predecessor and successor CAE.
  - Any contracts or agreements, including master purchase agreements and subsidiary purchase requests.
- Any interactions between you and the government regarding procurement or regulatory matters attendant to procurement.
  - Communications concerning requirements, specifications, needs, or product descriptions.

---

[3] Other evaluations and analyses relating to product safety or hazards of predecessor and successor products—*e.g.,* failure effect mode analyses, hazard assessments and evaluations, mode of failure analyses, etc.—are encompassed within Plaintiffs' Requests for documents relating to the design, development, and testing of predecessor and successor products.

- o   Communications regarding the contents or terms of any agreements or contracts under which such products were sold.
- Sales collateral, including product sheets, sales training materials, advertising materials, and demonstration videos.

The relevance of sales collateral materials is quite direct: Those documents are probative of which features and characteristics 3M believed were important to purchasers, and, as with instructions and packaging above, such claims inform 3M's awareness of safety concerns and usage limitations, and whether predecessor and successor designs were feasible alternatives. With regard to procurement information, as you know, Defendants have claimed that the 3M Earplugs were developed at the request of and in close consultation with U.S. Government audiologists. Communications between 3M and the U.S. Government regarding the development of 3M Earplugs—to the extent any exist—are probative of such contentions and 3M's anticipated defenses. The same types of communications regarding successor and predecessor products similarly informs the extent of the U.S. Government's involvement in the development of level-dependent hearing protection devices, if any, and may address 3M's related claims that the U.S. Government was aware of the defects alleged in this case. For example, to the extent the U.S. Government requested a switch from predecessor products *to* the 3M Earplugs, or a switch *from* the 3M Earplugs to successor products, it is likely that any such communications would reflect the reasons why. Thus, regardless of whether the facts are as 3M claims, Plaintiffs expect that such communications are likely to include statements highly relevant to the parties' respective positions on 3M's intended defense.

*       *       *       *       *

For the above reasons, the foregoing categories of documents and information are relevant to Plaintiffs' claims and/or 3M's alleged defenses, and responsive to Plaintiffs' Requests. To the extent that 3M contends that Plaintiffs' prior Requests do not encompass these materials, please so advise, and Plaintiffs will promptly supplement to eliminate any debate in that regard. The key for present purposes, however, is determining whether 3M will search for and provide these materials, given that it understands Plaintiffs do believe they must be produced. We look forward to further discussing with you promptly, given the schedule the Court has set.

Very truly yours,

/s/ David R. Buchanan
David R. Buchanan, Co-Chair PSC
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042741993
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700

dbuchanan@seegerweiss.com
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

*Counsel for Plaintiffs*