**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-02885-MCR-GRJ |
| | ) | |
| | ) | Judge M. Casey Rodgers |
| | ) | |
| This Document Relates to All Cases | ) | Magistrate Judge Gary R. Jones |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION THAT SEEK INFORMATION REGARDING PREDECESSOR AND SUCCESSOR DESIGNS OF THE 3M EARPLUGS

The parties agree that this litigation involves one product: the Combat Arms™ Earplug, Version 2 ("CAEv2"), designed and manufactured by Aearo Technologies LLC ("Aearo"). Nevertheless, Plaintiffs claim that they are entitled to all of Defendants' documents relating to design, development, testing, marketing, sales, packaging, instructions, and product complaints, for six other non-CAEv2 products. Plaintiffs have not adequately articulated why the broad categories they request are relevant. Moreover, it would be unduly burdensome and expensive for Defendants

to comply with Plaintiffs' broad request; and, it would delay the progress of this case.

Seeking a compromise, Defendants have offered to produce documents relating to the design, development, and testing of these six non-CAEv2 products. But Plaintiffs continue to seek documents relating to marketing, sales, packaging, instructions, and product complaints. Plaintiffs' requests would impose a substantial burden, delay Defendants' document production (currently scheduled for substantial completion by September 30th), and generally delay the progress of this case, for marginal (if any) benefit. For these reasons, Defendants respectfully request that the Court deny Plaintiffs' requests for documents relating to marketing, sales, packaging, instructions, and product complaints for non-CAEv2-related earplugs.[1]

## I.    RELEVANT BACKGROUND

3M is a global science company that produces over 60,000 products. Included in those products are certain hearing protection devices, including the CAEv2 —the only product at issue in this litigation.

---

[1] Plaintiffs define predecessor and successor 3M earplugs as CAEv1, CAEv3, CAEv4, CAEv4.1, and UltraFit Earplugs. Ex. 8 (9/3/2019 Letter) at n.1. Defendants' memorandum is focused on the categories of documents that Plaintiffs set forth in their September 3, 2019 Letter regarding the predecessor and successor products: marketing, sales, packaging, instruction, and product complaints as described below.

On June 19, 2019, and August 8, 2019, Plaintiffs served their First and Second RFPs ("the Requests") for a total of sixty-seven requests. Ex. 1, First RFPs; Ex. 2 Second RFPs. Defendants served their objections and responses to the Requests on July 26, 2019 and September 9, 2019. Ex. 3, First Responses; Ex. 4, Second Responses.

Plaintiffs now seek all documents relating to the design, development, testing, distribution, manufacturing, marketing, sales, packaging/instructions, and product complaints related to CAEv2 as well as an unlimited amount of other hearing products, including but not limited to the E-A-R UltraFit, CAEv1, CAEv3, CAEv4, CAEv4.1, TCAPS and "any like-design earplugs marketed or sold by your for civilian use or non-military use." Ex. 1, First RFPs at pg. 2.

The parties met and conferred over the last several weeks in an attempt to narrow the issues on non-CAEv2 related products.[2]  In their document requests, Plaintiffs only mentioned "CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS" by name in the text of one request —Request No. 19.  That request sought:

> 19. All documents that reference, relate or pertain to the design, development and testing of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS.

---

[2]  *See* Ex. 5, 8/6/2019 Letter; Ex. 6, 8/20/2019 Letter; Ex. 7, 8/23/2019 Letter; Ex. 8, 9/3/2019 Letter.

Defendants responded:

Defendants object to this Request as neither relevant nor reasonably calculated tolead to the discovery of admissible evidence. Defendants further object to this Request as overly broad to the extent that it seeks documents without limitations as to time and/or scope and is not proportional to the scope of this litigation or the needs of this case.

Subject to, and without waiving their specific and General Objections, Defendants offer to meet and confer with Plaintiffs to narrow and clarify the scope of this Request.

On August 16, 2019, the parties held a meet and confer.  Plaintiffs offered to consider whether to narrow the scope of their requests relating to non-CAEv2 documents.  Ex. 6, 8/20/2019 Letter.  On August 24, 2019, Defendants offered a compromise, agreeing to produce documents relating to the "design" and "testing" of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS.   On August 26, 2019, Plaintiffs declined that offer.  On August 29, Defendants expanded their offer to include all previously collected[3] documents related to RFP No. 19, which seeks "[a]ll documents that reference, relate or pertain to the **design, development and testing** of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS." Ex. 1, First RFPs, RFP No. 19 (emphasis added).

---

[3]   Defendants made clear that they would not collect "design, development and testing documents" from additional custodial or non-custodial sources that were not collected previously.  To the best of Defendants' understanding, Plaintiffs are not seeking relief from the Court on that issue.

Plaintiffs declined to agree to Defendants' proposed "design, development and testing" compromise.  Plaintiffs instead sought "the production of the following categories of documents with regard to predecessor and successor designs: (i) documents relating to distribution; (ii) documents relating to manufacturing; (iii) documents relating to marketing; (iv) documents relating to sales; (v) documents relating to packaging and instructions; (vi) documents relating to product complaints." (Ex. 8, 9/3/2019 Letter).[4]

In support of these requests, Plaintiffs pointed to requests other than Request No. 19 —specifically Requests Nos. 8, 18, 19, 21, 42, 43, 47, 48, and 63.   Unlike Request No. 19, these requests did not call out "CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS" by name, but instead defined the requests to include "predecessor" products, or both "predecessor and successor" products.   In response to these requests, Defendants agreed — subject to privilege objections — to produce documents relating to the "CAEv2."     For example, Defendants' response to Plaintiffs' Request No. 63 states:  "Notwithstanding the above objections, 3M will produce non-privileged documents *relating to the CAEv2* and responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the

---

[4]   Plaintiffs have indicated that they would "defer requests for documents related solely to distribution and manufacturing" reserving the right to "revisit these topics in the future." (Ex. 8, 9/3/2019 Letter)

extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10."  (Ex. 4, Second Responses).  Defendants' responses thus made clear that Defendants offered to produce responsive document relating to the CAEv2, but would withhold documents unrelated to the CAEv2.

In sum, in the spirit of compromise, Defendants have offered to produce "design, development, and testing" documents relating to the "CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS" — to the extent those documents exist in custodial or non-custodial sources that have already been collected and do not require additional collection.  The remaining dispute relates to "marketing," "sales," "packaging and instructions" and "product complaints," with respect to "CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS."  Defendants object to Plaintiffs' overreaching requests as irrelevant, unduly burdensome, and duplicative in nature.

## II.    ARGUMENT

### A.    The Court has Broad Authority to Control the Scope of Discovery.

Discovery is limited to non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. Rule 26(b)(1). A district court has "broad authority to control the scope of discovery" — including "broad […] discretion to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306-1307 (11th Cir. 2011) (citing

Fed. R. Civ. P. 26(b)). A "court may, for good cause, grant a motion for a protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' by, *inter alia*, 'forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.'" *Scott v. Eglin Federal Credit Union*, 2017 WL 1364600, at *2 (N.D. Fla. Apr. 13, 2017) (internal citations omitted). This includes "requiring a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Tyndall Fed. Credit Union v. Ravin*, 2018 WL 7501291, at *1 (N.D. Fla. Apr. 19, 2018) (citing, Fed. R. Civ. P. 26(c)(1)(G),(H)). This also includes "grant[ing] a motion for a protective order if the subpoena requests irrelevant information.'" *Scott*, 2018 WL 1364600, at * 2 (citing, e.g., *Auto–Owners Ins. Co. v. Southeast Floating Dock, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) (emphasis added). Here, the Court must balance (i) Plaintiffs' interest in obtaining additional discovery (beyond the discovery they are already receiving on the CAEv2 earplug together with testing, design, and development documents on additional products), with (ii) the interest in keeping the litigation on schedule, as well as the interests of Defendants, who face a September 30, 2019 deadline for substantial completion of document production together with voluminous discovery propounded by Plaintiffs unrelated to the claims and defenses in this litigation.

**B.    Defendants have already offered to produce documents in this litigation related to the design, development and testing of non-CAEv2 products, pursuant to RFP No. 19.**

As an initial matter, Defendants have already offered to produce documents related to the design, development and testing of products other than the CAEv2. Plaintiffs' Request No. 19 seeks "[a]ll documents that reference, relate or pertain to the design, development and testing of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS."  Defendants initially objected to producing these documents.  (Ex. 3, First Responses)  In response, Plaintiffs "st[ood] on the relevance of Request No. 19, which seeks material relating to predecessor and successor designs of the CAEv2."  (Ex. 7, 8/23/2019 Letter)  In discussing predecessor and successor product, Plaintiffs' response did not discuss requests other than Request No. 19.  *Id.*  As a compromise, Defendants agreed to produce design, development and testing documents relating to these products.  *Hendrix Perryman v. Evenflo Co., Inc.*, 2008 WL 11344669, at *5 (N.D. Fla. Mar. 20, 2008) (Case involving certain allegedly defective child safety seats, in which court denied discovery into *other* models *not at issue* —relying in part on the fact that defendants "provided over 14,000 pages of documents" responsive to plaintiff's requests.)

**C.    Documents concerning product complaints, instructions and packaging, marketing, and sales/U.S. government procurement of predecessor and successor products are not relevant to this case.**

The scope of permissible, relevant discovery is determined by the parties' claims and defenses. *Sliwa v. Bright House Networks, LLC*, 2018 WL 1183350, at *2 (M.D. Fla. Feb. 14, 2018) (citing, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997)). "[C]ounsel (and ultimately the court) first must consider whether the desired information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case or unduly burdensome or expensive based upon an assessment of various factors" not limited to those listed in Rule 26. *Graham & Company, LLC v. Liberty Mutual Fire Insurance Company*, 2016 WL 1319697, at *2–3 (N.D. Ala. Apr. 5, 2016) (citing, *Witt v. GC Servs. Ltd. Partnership*, 307 F.R.D. 554, 569 (D. Colo. 2014)). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.*

Documents concerning product complaints, instructions and packaging, marketing, and sales/U.S. government procurement of predecessor and successor products are not relevant to the claims and defenses in this case and should not be discoverable. Indeed in *In re Abilify*, this court addressed a similar issue when, "[p]laintiffs requested Defendants [] produce information pertaining to ***other*** dopamine agonist drugs, contending that the other drugs are relevant in light of what Defendants knew about other drugs with ***similar mechanisms of action***." *In re*

9

*Abilify*, *(Aripiprazole) Prod. Liab. Litig.*, 2017 WL 4399198, at \*8 (N.D. Fla. Sept. 29, 2017) (emphasis added). This Court rejected that request because "information regarding *other* drugs is irrelevant and not proportional to the needs of this case." *Id.* (emphasis added).  As this Court explained:

> Information regarding second-generation drugs (while of interest) would not be relevant to any liability issues regarding <u>Abilify</u>. While other dopamine agonist drugs, such as Rexulti, might have some of the same general mechanisms of action, the drug was developed ten years after <u>Abilify</u>, has different chemical structures and different indications. Thus, on balance because other <u>dopamine</u> agonist drugs would have marginal relevance at best, ***production of this information is not proportional to the needs of this case***. Plaintiffs' request to produce information regarding other drugs is therefore denied.

> *Id.* (emphasis added)

Similarly, district courts within the Eleventh Circuit have denied discovery into products not at issue in various products liability cases on the grounds that they are not relevant and/or unduly burdensome and not proportional to the needs of the case.  *See e.g.*, *Cerrato v. Nutribullet, LLC*, 2017 WL 3608266, at \*2 (M.D. Fla. Aug. 22, 2017) (limiting discovery in products liability matter to instances in which *specific blender model* was malfunctioning for *specific reason* that plaintiff alleged; providing, "[f]or discovery purposes, the circumstances surrounding the other accidents or products must be 'similar enough' that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences")(internal citation omitted); *Stone v. Zimmer, Inc.*, 2010 WL 11602738,

at *2 (S.D. Fla. Jan. 7, 2010) (denying plaintiff's request for "[d]efendant's entire line of [hip-replacement] products" where only a specific hip replacement device was implanted in plaintiff and at issue); and *Guerrero v. Apple Computer, Inc.*, 2019 WL 1333735, at *2 (S.D. Fla. Feb. 12, 2019)(denying plaintiff's request for discovery of information relating to "every instance of any product manufactured by [d]efendant using the battery found in the [product at issue]" on the grounds that such a request is overbroad, exceeds the scope of relevance, and is of "minimal relevance to [p]laintiff's claims").

### 1.   Product complaints relating to predecessor and successor products are not relevant.

Plaintiffs contend that Defendants should produce: (a) "Documents relating to any complaints regarding product design, performance, or use, from users or purchasers of any passive non-linear or level-dependent products, including predecessor and successor CAE; and (b) Documents discussing actual or perceived risks, elevated hazards, defects, failures or deficiencies in fit in any passive non-linear or level-dependent products, including predecessor and successor CAE." (Ex. 8, 9/3/2019 Letter at pg. 2).

Plaintiffs' only argument with respect to the relevance of predecessor and successor product complaints is that "these documents are relevant to Defendants' notice or awareness regarding design defects, risks, hazards, and the necessity of greater warnings and/or instructions, and relate directly to 3M's liability for a variety

of claims asserted in this case."  (Ex. 8, 9/3/2019 Letter at pg. 2).[5]  But Plaintiffs fail to cite any authority or make any argument that the information they request is not already accounted for in Plaintiffs' Requests regarding product complaints[6] and other document requests related to the product at issue—CAEv2. Indeed, it is more likely that communications related to CAEv2 will be responsive to Plaintiffs' Requests related to risk and design changes than non-CAEv2 products not at issue. For example, Plaintiffs requested and Defendants have agreed to produce documents regarding risks, elevated hazards, failures or deficiencies in fit, or dangers to hearing" from CAEv2 and "all correspondence regarding proposed or executed edits, additions, deletions, or other modifications to any [] training or instructions for the use of CAEv2. Ex. 1, First RFPs, Nos. 2 and 10. Both of these categories

---

[5]   Indeed, Courts have denied discovery into "similar" complaints or incidents where they were not sufficiently similar to the litigation at bar. *See e.g.*, *Ree v. Royal Caribbean Cruises, Ltd.*, 315 F.R.D. 682, 685-687 (S.D. Fla. 2016) (citing *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 n.12 (11th Cir. 1997)) (denying motion to compel where the plaintiff's request for "similar incident" reports — in connection with a boating accident — was not "adequately linked to a particular hazard, location, or condition").

[6]   *See e.g.*, Ex. 1, First RFPs, No. 13 "All documents relating to or constituting complaints regarding the 3M Earplugs from any person including any purchaser or user of the 3M Earplugs, any communications with third parties regarding such complaints, and all documents relating to your responses to any such complaints, including any actual or contemplated repair, fix, mitigation, remedial measure, warning, redesign, or other means of redressing, in whole or in part, any actual or suspected defect in the 3M Earplugs."

target the exact documents Plaintiffs claim they need from predecessor and successor products.

Second, as explained *supra*, even if the type of information that Plaintiffs seek could only be found by collecting documents related to predecessor and successor products, Defendants have *already* agreed to produce design, development, and testing documents related to non-CAEv2 products that Plaintiffs ask for. Accordingly, Plaintiffs' request for additional, duplicative discovery should be denied.[7]

### 2. Instructions & packaging regarding predecessor and successor products are not relevant.

Plaintiffs next contend that Defendants should produce: (a) "Documents relating to the labeling or packaging of any passive non-linear or level-dependent products, including predecessor and successor CAE; Instructions for use, warnings, end-user packaging, shipment packaging, and training materials accompanying

---

[7] *Wiand v. Wells Fargo Bank, N.A.*, 2013 WL 6170610, at *1 (M.D. Fla. Nov. 22, 2013) (quoting Fed.R.Civ.P. 26(b)(2)(C)); *Brannan v. GEICO Indem. Co.*, 2013 WL 5460581, at *1 (N.D. Fla. Sept. 27, 2013) ("Discovery should be limited if it is unreasonably cumulative or duplicative; [or] the party seeking discovery has had ample opportunity to obtain the information."); *Geller v. von Hagens*, 2011 WL 13305172, at *2 (M.D. Fla. Dec. 23, 2011) (discovery should be denied if the information "should already be in the Plaintiffs' possession"); *cf Eisai Inc. v. Sanofi-Aventis U.S. LLC*, 2012 WL 299379, at *7-10 (D.N.J. Apr. 16, 2012) (applying proportionality standards to curtail discovery requests that sought marginally responsive information that was duplicative of ESI already produced in discovery).

products; and (b) Requirements for labelling, requirements for packaging or storage, and requirements governing the inclusion of instructions." (9/3/2019 Letter at pg. 2). Plaintiffs claim that these "instructions, or warnings on the packaging or instructions of successor or predecessor products informs 3M's notice and awareness of risks and safety concerns, together with usage requirements and limitations." *Id.*. Plaintiffs further claim that they "are relevant to any contention that the U.S. Government directed that certain information be selectively provided in packaging or instructions, and likewise are probative of feasibility."

As discussed above, however, there is no reason to believe that the information that Plaintiffs request cannot be derived from Plaintiffs' Requests regarding instructions[8] and other document requests related to the product at issue––CAEv2. For example, Plaintiffs request and Defendants have agreed to produce "design history files [for CAEv2], including any contemplated or implemented changes to the design . . . or fitting instructions or other instructions for use." Ex. 1, First RFPs, No. 3.

---

[8]   *See e.g.*, Ex. 1, First RFPs No. 10 "All documents relating to actual or contemplated training, instructions, or draft instructions for the use of the 3M Earplugs, including all training and instructions provided to users of the 3M Earplugs, all training and instructions used or created in the course of testing the 3M Earplugs, and all correspondence regarding proposed or executed edits, additions, deletions, or other modifications to any such training or instructions."

Moreover, any argument that packaging information from *other* products would somehow show that the U.S. Government made certain directives regarding the CAEv2 packaging is conjecture. Plaintiffs are not entitled to discovery based on pure speculation. *See*, *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006)("[…]the discovery rules do permit the [parties] to go on a fishing expedition").  As set forth in Defendants' Responses, Defendants will produce non-privileged communications with the military regarding CAEv2, including the development of CAEv2 instructions and packaging.  Ex. 3, First Responses.  Defendants have asked the U.S. to do the same.  Thus, Plaintiffs will have ample discovery to address the claims and defenses relevant to this litigation, without burdensome additional discovery related to predecessor and successor products that brings little (if any) marginal benefit.

### 3.     The marketing of predecessor and successor products is not relevant.

Only one of Plaintiffs' current requests specifically seek documents related to the marketing of predecessor and successor products and therefore Plaintiffs' additional requests are premature. *See* Ex. 2, Second RFPs, No. 63. Nevertheless, Plaintiffs contend that Defendants should be compelled to produce: (a) "Product plans or sales strategies, market analyses, market opportunity evaluations, needs analyses, market studies, focus groups, assessments of customer demand and desirability, threshold performance requirements, SWOT analyses, and product or franchise roadmaps; and (b) Claims made by you regarding the importance or actual

15

or perceived benefits of level-dependency and non-linearity, variable size to ensure fit in all ear canals, claims regarding any anti-slip features, claims regarding the 'low profile' of an HPD or its compatibility with any other military equipment or gear." (9/3/2019 Letter at pg. 3).

To be sure, Defendants have agreed to produce marketing materials in this litigation related to CAEv2 that would include materials that also relate to other hearing products. These include market and needs analyses, claims regarding level dependency, and sizing.[9]  If a marketing document relates to both CAEv2 as well as a predecessor or successor product, it would be relevant. But, as explained *infra* at pgs. 6-7, to specifically search, collect, and review marketing materials related only to other non-CAEv2 products would be unduly burdensome, and not proportional to the needs of this case.

> **4.    Sales/U.S. government procurement documents related to predecessor and successor products are not relevant.**

---

[9]    *See e.g.*, Ex. 2, Second RFPs, Request No. 44 "All documents relating to Your policies and procedures used for determining and evaluating proper earplug fit in the course of design and testing of earplugs, and any analyses of those policies and procedures, including accounting for variation in ear canal size, formal or informal training of test subjects on creating and maintaining proper fit, formal or informal training of test administrators and/or experimenters concerning creating and maintaining proper fit for test subjects, the scope of fit instructions provided to test subjects as compared to fit instructions provided to end users, and any methods for determining the extent to which successful fit in the course of design and testing may be replicated by end-users."

Plaintiffs contend that Defendants should also produce: (a) "Documents sufficient to show the sales, units sold, gross revenue, and net profits from the sale of passive non-linear, or level-dependent products, including predecessor and successor CAE; and (b) Any interactions between you and the government regarding procurement or regulatory matters attendant to procurement; and (c) Sales collateral, including product sheets, sales training materials, advertising materials, and demonstration videos." (Ex. 8, 9/3/2019 Letter at pg. 4). Plaintiffs argue that these documents "are probative of which features and characteristics 3M believed were important to purchasers, and, as with instructions and packaging above, such claims inform 3M's awareness of safety concerns and usage limitations, and whether predecessor and successor designs were feasible alternatives. With regard to procurement information . . . [c]ommunications between 3M and the U.S. Government . . . regarding successor and predecessor products [] informs the extent of the U.S. Government's involvement in the development of level-dependent hearing protection devices, if any, and may address 3M's related claims that the U.S. Government was aware of the defects alleged in this case." *Id.*

Again, the marginal benefits (if any) of this discovery do not justify the costs. Where and how much non-CAEv2 product Defendants sold has no bearing on the claims and defenses in this case relating to the CAEv2. Indeed, even if these documents could somehow inform the parties about the feasibility of an alternative

design (and they cannot), Plaintiffs will have ample access to that same evidence in the agreed upon production related to CAEv2[10] *and* the production regarding non-CAEv2 products responsive to Request No. 19.[11]

In sum, Plaintiffs' Requests related to predecessor and successor designs are not relevant to the claims and defenses in this case, would add little if anything to the documents already being produced, are are unduly burdensome, and should be denied.

### D.   Plaintiffs' requests are not proportional to the needs of the case and unduly burdensome.

Even if Plaintiffs requests related to predecessor and successor products were somehow relevant—and they are not—Plaintiffs' requests should still be denied because any minimal relevance is overwhelming outweighed by the fact that they are unduly burdensome, would cause great and unnecessary expense, and will derail the current case schedule.

For example, as detailed in the attached declaration from Michelle Six, to comply with Plaintiffs' requests, Defendants would be required to: (1) determine

---

[10]   *See e.g.*, Ex. 1, First RPFs "All documents concerning the marketing of the 3M Earplugs, including any demonstration videos, product sheets, sales training materials, sales and advertising materials, and marketing plans or sales strategies."

[11]   Ex. 1, First RFPs No. 19 "All documents that reference, relate or pertain to the design, development and testing of the CAEv1, CAEv3, CAEv4, CAEv4.1, UltraFit Earplugs, and TCAPS."

what other hearing products Plaintiffs consider to be of "like-design" to CAEv2 in Defendants' hearing portfolio; (2) identify additional custodians that may have information or knowledge regarding at least six different products and others if deemed to be of "like-design;" (3) conduct custodial interviews with additional custodians in order to adequately locate information relating to predecessor and successor products in their possession; (4) collect and review e-mail files belonging to these additional custodians, (5) collect, process, review, and produce documents and data relating to predecessor and successor products residing outside of these additional custodians' custodial e-mails; (6) re-interview existing custodians about their knowledge regarding at least six different products and others if deemed to be of "like-design;" and (7) collect, process, review, and produce documents and data relating to predecessor and successor products from existing custodians.

Defendants are already proceeding at break-neck pace to meet the September 30, 2019 deadline for substantial completion of discovery.  It will not be feasible to meet that deadline if defendants are required to produce the predecessor and successor documents requested by Plaintiffs, beyond the non-CAEv2 documents that defendants have already agreed to produce. At the very least, expending this type of effort and time without Plaintiffs having even reviewed the documents related to CAEv2 on the same topics, is a waste of party and judicial resources.

###   E.     Plaintiffs' waiver argument is incorrect.

During the parties' meet-and-confers, Plaintiffs incorrectly suggest that Defendants may have "waived" their objections to certain requests. Plaintiffs pointed to cases such as *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017), and *Sharebaugh v. Beaudry*, 2017 WL 5988221 (N.D. Fla. May 5, 2017). But in those cases, after stating their objections, the objecting party *failed to specify what documents would be produced and what documents would be withheld.  See Sharebaugh v. Beaudry*, 2017 WL 5988221 (N.D. Fla. May 5, 2017) ("Without waiving said objections, all responsive documents in Defendants [sic] possession will be provided upon receipt of the Confidentiality Agreement previously provided to Plaintiff.") This objection left the plaintiff uncertain as to what documents would and would not be produced.  *Id.*  Similarly in *Fischer*, the objecting party did not "clearly indicate whether responsive material is being withheld on the basis of objection." *Fischer*, 2017 WL 773694, at *3.  Again, the opposing party was left uncertain as to what documents would and would not be produced.

Here, by contrast, Defendants' objections and responses left unmistakably clear what documents would be produced (*i.e.*, documents relating to the CAEv2) and what documetns would not be produced (*i.e.*, documents relating to non-CAEv2 products).   For example, in response to Request No. 8, Defendants stated: "Defendants further object to this Request as overly broad and unduly burdensome in that it requests documents related to versions of the Combat Arms Earplug not at

issue in this litigation." (Ex. 3, First Responses)  Defendants further stated:  "Subject to, and without waiving their specific and General Objections, Defendants will produce non-privileged documents responsive to this Request ***related to CAEv2*** deemed relevant and responsive pursuant to Pretrial Order No. 12 and the TAR Process to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10."   *Id.* (emphasis added)  Thus, defendants' responses make clear that:  (1) defendants are producing responsive documents "related to CAEv2"; and (2) defendants did not agree produce non-CAEv2-related documents (with the exception of Request for Production No. 19, discussed above). *See* Federal Rule of Civil Procedure 34(b)(2)(C), Objections. ("An objection must state whether any responsive materials are being withheld on the basis of that objection.")  Defendants' other responses similarly make clear that defendants will produce documents "related to CAEv2" - and not documents relating to other products. *See, e.g..* Defendants' Responses to Request Nos. 8, 18, 21, 42, 43, 47, 48, and 63 (defining what defendants produce as documents "related to CAEv2").

None of the cases cited by Plaintiffs (including *Sharebaugh* and *Fischer*) involved circumstances where, following their objections, the objecting parties were clear about what documents they would and would not produce.[12]  Rather, in those

---

[12] Nor did any of those cases involve a TAR protocol such as that implemented in case.

cases, the objecting party did not "state whether any responsive materials are being withheld." *Sharbaugh*, 2017 WL 5988221, at *3 (quoting Federal Rule of Civil Procedure 34(b)(2)(C)).[13]

## CONCLUSION

Defendants have already agreed to a significant compromise, offering to produce design, development and testing documents for the predecessor and successor products not at issue in this case. Plaintiffs' far-broader requests would unnecessarily delay the litigation for marginal (if any) gain. Plaintiffs' request for such overly broad, unduly burdensome, case-delaying discovery should be denied.

---

[13] The "without waiv[er]" language in certain responses by Defendants (*e.g*., Requests 8, 18, and 21) relates to Defendants' claim of privilege for CAEv2-related documents. Defendants are producing non-privileged responsive documents relating to the CAEv2, but are withholding certain CAEv2-related documents on the basis of privilege. The timing of Defendants' privilege log is governed by Pretrial Order No. 9 -Stipulated Order Governing Confidentiality and Privilege.

DATED:  September 12, 2019          KIRKLAND & ELLIS LLP


By: */s/ Kimberly Branscome*
         Kimberly Branscome

Kimberly Branscome
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8370
Email:  kimberly.branscome@kirkland.com


*Attorneys for Defendants 3M Company,*
*Aearo Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and Aearo,*
*LLC*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to L.R. 7.1(F), the foregoing memorandum contains 4,035 words exclusive of the case caption, certifications, and signature block.


Dated:  September 12, 2019                    Respectfully submitted,

                                              */s/ Kimberly Branscome*

                                              KIRKLAND & ELLIS, LLP
                                              Kimberly Branscome
                                              kimberly.branscome@kirkland.com
                                              333 South Hope Street
                                              Los Angeles, California 90031
                                              Telephone: (213) 680-8400
                                              Facsimile: (213) 680-8500

                                              *Attorneys for Defendants 3M
                                              Company,
                                              Aearo Technologies LLC, Aearo
                                              Holding, LLC, Aearo Intermediate,
                                              LLC and Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 12th day of September, 2019, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

DATED:  September 12, 2019          */s/ Kimberly Branscome*
                                                        Kimberly Branscome