# EXHIBIT 7

# SeegerWeiss LLP
NEW YORK • NEW JERSEY • PHILADELPHIA

August 23, 2019

**VIA EMAIL**
Mark Nomellini, Esq.
mnomellini@kirkland.com
Kirkland & Ellis LLP
300 North LaSalle Dr.
Chicago, IL 60654

        Re:    *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, 3:19-md-2885
              *3M's Answers and Objections to Plaintiffs' First Requests for Production*

Dear Mark:

    I write in response to your August 20, 2019 letter regarding 3M's Answers and Objections to Plaintiffs' First Set of Requests for Production (the "Requests").

    As noted in your letter, the Parties' August 16, 2019 call primarily pertained to three topics: (1) the relevance of certain *Moldex* material responsive to Requests Nos. 32 and 34; (2) Plaintiffs' basis for the scope of Requests that seek information regarding predecessor, successor, and alternative designs with regard to the Combat Arms Earplugs Version 2 ("CAEv2"); and (3) the failure of 3M's non-particularized responses and objections to meet the requirements of the Federal Rules.

## *Moldex* Product Investigation and Other Materials

    In Defendants' August 20th letter and subsequent emails, you expressed some confusion as to which depositions from the *Moldex* actions Plaintiffs seek. Further to our discussion Tuesday night, Plaintiffs seek all material from the *Moldex* actions that 3M was authorized to produce in Joseph M. Paunovich's August 1, 2019 letter to you, including transcripts, exhibits, and any audiovisual recordings of all depositions limited only by the restrictions laid out in that same letter. Based on our discussion, Plaintiffs understand that 3M will redact and/or withhold certain material based on that letter. Plaintiffs reserve their rights to seek production of deposition transcripts and exhibits for the individuals identified in your letter: Kevin Murphy, Felicia Boyd, and Ken Cunafare.

    Plaintiffs stand on their position regarding the discoverability of material from the *Moldex* actions relating to 3M's internal evaluations, discussions, and deliberations concerning competitors' plug and non-linear hearing protection devices, which were seemingly targeted at the same market segment and use-case as 3M's Combat Arms product. Such information includes internal assessments of the purported identicality in design, technology, features, function, characteristics, performance, and/or use case of a competitors' product to the corresponding characteristics of the Combat Arms.

Although Plaintiffs do not have access to this testimony and the associated documents, Defendants' descriptions of the testimony highlight its relevance. First, as discussed with regard to other CAE designs below, 3M's comparison of the CAEv2 (or the technology and features that it contended were incorporated therein) with alternative products is evidence probative of, *inter alia,* potential alternative designs, including 3M's notice and feasibility thereof, together with shortcomings and limitations of the 3M Earplugs. Of course, any efforts by 3M to block from sale a competing design that it contended was substantially similar or equivalent to the technology in the CAEv2 would tend to demonstrate—quite pointedly and relevantly—that, *in the eyes of 3M,* such design was a reasonable alternative design. Further, evidence in the withheld materials that 3M ascribed the design and technology of the CAEv2 to its own ingenuity and efforts—and not to the Government—would tend to disprove 3M's seeming litigation effort in these proceedings to project responsibility for the CAEv2 design on the Government.

In your letter, you assert that Plaintiffs' requests for such assessment-related information are not "reasonably calculated to lead to the discovery of admissible evidence in this matter." Nomellini Ltr., Aug. 20, 2019, at 2. That, of course, is not the touchstone of discoverability.[1] As demonstrated above, the requested information is relevant. Nor is there any question that the deposition transcripts and exhibits that embody 3M's objection are readily accessible to 3M, and thus easily produced herein (with the full protections afforded to Confidential Information by the protective order in these proceedings). The subject depositions and exhibits are thus discoverable. Accordingly, in lieu of broader litigation today about 3M's objection, Plaintiffs propose that Defendants' produce the withheld transcripts and exhibits, while the Parties mutually reserve all rights with regard to the remaining documents from the *Moldex* litigation that have been withheld on this basis.

**Predecessor & Successor Designs**

Plaintiffs stand on the relevance of Request No. 19, which seeks material relating to predecessor and successor designs of the CAEv2.[2]

3M's documents relating to predecessor designs will provide, *inter alia,* evidence of 3M's notice and awareness of technical and scientific product issues relevant to this case, including fit, attenuation, performance characteristics and technical limitations of the underlying technology, testing standards/protocols, and design and performance objectives. As you know, the predecessor and successor designs of the 3M Earplugs contain many of the same design elements present in the CAEv2, including flanges and nonlinear filters. Notably, in marketing claims for the CAEv2, 3M has cited to the results of testing done with predecessor designs as indicative of the performance that the CAEv2 delivers. The successor designs to the CAEv2 are similarly relevant. Such designs, which were available while the CAEv2 was on the market, are probative of, *inter alia,* (a) feasible

---

[1] Fed. R. Civ. P. 26(b)(1) expressly states that information "need not be admissible in evidence to be discoverable." Plaintiffs note that the quoted language from Defendants' letter does not govern the discoverability of documents, and has not even been a consideration in the context of discovery under the Federal Rules for *four years*. Indeed, the Advisory Committee's notes to the 2015 amendments explained that the "reasonably calculated" language was deleted in that year because it "has been used by some, incorrectly, to define the scope of discovery," as Defendants sought to do here.

[2] Defendants' August 20, 2019 letter improperly suggests that Plaintiffs bear the burden of demonstrating the Request's relevance, despite the absence of any explanation in the vague boilerplate in Defendants' R&Os or subsequent writings as to how the scope of this request exceeds the bounds of Federal discovery.

alternative designs to the CAEv2; and (b) to the extent such designs seek to ameliorate or address shortcomings and dangers with the CAEv2, the existence of such dangers/shortcomings and 3M's knowledge thereof.

**Narrowed Objections**

Defendants' August 20, 2019 letter incorrectly states that "[b]oth 3M and plaintiffs have reserved their rights regarding the relevance of certain documents while the parties negotiate what documents will be produced subject to proportionality considerations." Nomellini Ltr., Aug. 20, 2019, at 1 n.1. This is not the case. Defendants' effort to recast Plaintiffs' clear position on the insufficiency of Defendants' responses and objections is without basis.

Plaintiffs explained the inadequacy of 3M's objections in their August 6, 2019 letter, citing several cases holding that, like Defendants' responses here, (1) boilerplate "General Objections" have been held improper for decades; (2) the failure by a responding party to state whether it intends to withhold responsive materials on the basis of objections renders those objections ineffective; (3) generic boilerplate "specific objections," untethered to the facts of the case and the Request at issue, do not meet the requirements of the Federal Rules; (4) responses "subject to and without waiving their specific and general objections" are improper, and contrary to the 2015 amendments to Rule 34 (which were designed to prevent such responses); and (5) blanket objections based upon purportedly ambiguous definition and timeframes do not meet the requirements of the Federal Rules. Plaintiffs have re-urged these deficiencies—and, given the impending substantial completion date for production, the urgent need for details on any specific objection Defendants maintain—in the Parties' calls.

At this point, Defendants have had two months to articulate with detail and specificity their objections to Plaintiffs' First Requests. With the exception of the clarifications below, and the matters highlighted in Defendants' August 20, 2019 letter—which are addressed herein—Defendants have not done so. As to Defendants' concern about the scope of requests regarding predecessor and successor designs, and requests concerning certain documents and transcript material from the *Moldex* matters, Plaintiffs' positions on such items, and their proposed resolutions, are expressed herein. As to any other objections, Defendants' vague, indefinite boilerplate attempts at reservations are legally unfounded and reserve nothing. They have no place in any case, let alone one of this magnitude with a fast-approaching substantial completion date for production.

**Other Items Resolved**

Plaintiffs also memorialize the following miscellaneous items the Parties discussed in the August 16, 2019 call:

- On the call, as in its letter dated August 13, 2019, 3M sought guidance concerning the time frame for documents responsive to Request No. 41, which sought certain 3M policies and procedures. In light of the informational asymmetry between the Parties concerning 3M's internal conduct, and absent a 30(b)(6) deposition on such matters, Plaintiffs clarified that the relevant time frame for each category of policies and procedures is the time period during which 3M engaged in conduct relevant to

    this litigation and governed by that procedure: *E.g.,* for a procedure regarding the manner in which test subjects are selected and test results are recorded, the relevant time frame would be the period when 3M was performing such tests on the CAEv2 and any predecessor or successor designs; for a procedure governing communications with government purchasers, the relevant time frame would be the period when 3M was communicating with government purchasers on issues relevant to this litigation. With this clarification, 3M agreed to determine in good faith the time frames appropriate for the policies sought in this request.

- Defendants clarified that, with respect to documents responsive to Request No. 38, Defendants were retrieving potentially responsive materials and would notify Plaintiffs about the extent to which the scope of the information contained in the proffered "annual financial statements" is coextensive with the material sought by this Request.

- Defendants confirmed that they intend to produce documents on a rolling basis, and would endeavor to inform Plaintiffs of the date of their first such production during the week of August 19, 2019.

    With regard to Defendants' two outstanding objections, please contact me at your convenience so that we may bring those items to a resolution.

    Very truly yours,

    /s/ David R. Buchanan
    David R. Buchanan, Co-Chair PSC
    (Admitted Pro Hac Vice)
    New Jersey State Bar No. 042741993
    Christopher A. Seeger, Co-Lead Counsel
    (Admitted Pro Hac Vice)
    New Jersey State Bar No. 042631990
    Seeger Weiss LLP
    55 Challenger Road, 6th Floor
    Ridgefield Park, NJ 07660
    Tel.: (212) 587-0700
    dbuchanan@seegerweiss.com
    cseeger@seegerweiss.com

    Bryan F. Aylstock, Lead Counsel
    Florida State Bar No. 078263
    Aylstock, Witkin, Kreis & Overholtz, PLLC
    17 East Main Street, Suite 200
    Pensacola, FL 32502
    Tel.: (850) 202-1010
    baylstock@awkolaw.com

    Shelley V. Hutson, Co-Lead Counsel
    (Admitted Pro Hac Vice)

Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

*Counsel for Plaintiffs*