**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG     ) | Case No. 3:19md2885 |
| PRODUCTS LIABILITY LITIGATION,    ) | |
|                                   ) | Pensacola, Florida |
|                                   ) | October 25, 2019 |
|                                   ) | 9:38 a.m. |
|                                   ) | |
|                                   ) | |
| _____   ) | |

**SIXTH CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-23)

# A P P E A R A N C E S

FOR THE PLAINTIFFS:      **BRYAN F. AYLSTOCK, ESQUIRE**
                         Aylstock, Witkin, Kreis & Overholtz
                         17 E Main Street, Suite 200
                         Pensacola, Florida  32502

                         **SHELLEY HUTSON, ESQUIRE**
                         Clark Love & Hutson, GP
                         440 Louisiana Street, Suite 1600
                         Houston, Texas  77002

                         **CHRISTOPHER A. SEEGER, ESQUIRE**
                         Seeger Weiss, LLP
                         55 Challenger Road, 6th Floor
                         Ridgefield Park, New Jersey  07660

FOR THE DEFENDANT:       **MIKE BROCK, ESQUIRE**
                         Kirkland & Ellis, LLP
                         1301 Pennsylvania Avenue, N.W.
                         Washington, D.C.  20004

                         **MARK J. NOMELLINI, ESQUIRE**
                         Kirkland & Ellis, LLP
                         300 N Lasalle
                         Chicago, Illinois  60654

                         **LARRY HILL, ESQUIRE**
                         MOORE, HILL & WESTMORELAND, P.A.
                         350 W Cedar Street, Suite 100
                         Pensacola, Florida  32502

                         **SIERRA ELIZABETH, ESQUIRE**
                         Kirkland & Ellis, LLP
                         333 South Hope Street
                         Los Angeles, California  90071

1    P R O C E E D I N G S

2        **JUDGE RODGERS:**  Good morning.  Welcome to our sixth

3    case management conference in the 3M Combat Arms Earplug

4    Products Liability Litigation, MDL 2885.

5        Welcome, Judge Jones.  Thank you for being here by

6    videoconference.

7        **JUDGE JONES:**  Good morning.

8        **JUDGE RODGERS:**  I'd like to introduce you all, to the

9    extent you don't know him, to retired District Judge David

10   Herndon over here in the jury box.  I'm not sure you all can

11   see him.

12       Many of you know Judge Herndon.  In the MDL world, he

13   is a legend, makes me look like a babe in the woods when it

14   comes to MDLs.  I have long, long looked to Judge Herndon for

15   guidance and advice.  And I'm thrilled to have him as a special

16   master helping us all wade through the military DoD document

17   production issues that we have and also helping us facilitate

18   the ultimate resolution of the affirmative defenses of 3M.

19       And so, again, welcome, Judge Herndon, and thank you

20   so much for being with us in this litigation and being here

21   today.

22       Following the Case Management Conference, Leadership

23   and Defense counsel will be meeting with Judge Herndon to

24   discuss some of those issues within the scope of his

25   appointment.

1          So as you all know, as is traditional, I met with

2     Leadership earlier this morning.  There's an agenda.  And as

3     always, we followed that agenda in that preconference meeting.

4          The first item on the agenda that I was updated on has

5     to do with the census order and protocol.  There is a need for

6     a change to the order in regards to document review by the

7     Defendants in terms of the deficiency process.  And so I've

8     asked the parties to present proposed language to me for

9     changing that order.

10          And the way it will be modified is that, in terms of

11     the 60-day period that the Defendants have to begin review and

12     identification of deficiencies on document production, that

13     period will begin to run at the time of the final deadline for

14     document production.  What I failed to appreciate was the

15     document production is on a rolling basis, and so they'll have

16     30 days from the final document deadline to complete that

17     process.

18          Mr. Nomellini, did I misstate that?

19          **MR. NOMELLINI:**  Your Honor, it was perfectly correct,

20     except for the deadline is 60 days after.

21          **JUDGE RODGERS:**  It's 30 days.  No, I'm kidding.

22          *[Laughter]*.

23          It's Friday.  Just having a little fun.  It's 60 days.

24          So an issue related to the whole deficiency process

25     concerns work that's being done right now by the Early Vetting

1   Subcommittee.  Rachel Lanier chairs that subcommittee.  And I

2   met with Ms. Lanier and with Ms. Hutson late yesterday

3   afternoon to discuss some work that they've been doing.

4        I asked -- and the Defendants were aware of this -- I

5   asked the Early Vetting Subcommittee to get involved with the

6   whole deficiency process but more on the front end in a way so

7   that hopefully deficiencies could be minimized or reduced.  And

8   they have been hard at work identifying ways that they could do

9   that on the front end through that committee's involvement.

10       And I couldn't be more impressed with the work they've

11  been doing to educate the entire plaintiff pool of law firms

12  and lawyers on ways to reduce deficiency problems later on, and

13  I commend them and encourage them to continue in that regard.

14       And I'm actually going to be assigning a couple of

15  lawyers -- and their names are yet to be determined, I'm going

16  to have the Defense disclose them to me who they would like me

17  to appoint -- to sort of a joint subcommittee along with the

18  Early Vetting Committee -- or maybe just assign them to that

19  committee for this purpose -- but basically to work together on

20  the back end.

21       So after the -- and now I'm going to be talking about

22  the census questionnaire form.  When that is uploaded and it

23  would then be available to the Defendants, rather than the

24  Defendants at that point starting their formal deficiency

25  process which I put into place, that formal process, that

1   hopefully -- and I haven't set a time frame for this -- but

2   that this committee, which will have defense lawyers on it, can

3   work together to identify any issues early on just right after

4   the uploading is done and the form is available, again, to

5   identify any problems and hopefully those can be resolved.

6          And I'm hoping with the Early Vetting Subcommittee's

7   work on the front end and experience with the forms and with

8   the law firms, maybe they'll see trends, and those can be

9   addressed hopefully on the front end.  But there's not going to

10  be a lot of time, I guess is point, so it may be that this

11  joint committee will have to do some of that work on the back

12  end.

13         Mr. Brock?

14         **MR. BROCK:**  I was just going to ask, would it be okay

15  if maybe we just inform you by letter of the folks from the

16  Defense side that will be participating with that group and

17  maybe just copying Plaintiffs' counsel on that, and then those

18  folks can be in touch with the Plaintiffs?

19         **JUDGE RODGERS:**  Yes, sir.  How soon do you think

20  you'll be able to identify those people?

21         **MR. BROCK:**  Will Wednesday be okay?

22         **JUDGE RODGERS:**  That's fine.  Thank you.

23         Again, I anticipate it will be another example of the

24  great collaborative work that's already been taking place in

25  this MDL.

1        We discussed status of pending motions to remand.  At
2  the last CMC, we discussed this issue on the motions to remand
3  and what was going to be done from the Court's standpoint with
4  the motions to remand.

5        And at this point, I've given it some thought, I'm
6  comfortable allowing the motions to remand to remain pending.
7  And I'm going to address the issues in the motions to remand,
8  to the extent I'll need to at that point, along with the issues
9  that are raised through the affirmative defenses that 3M has.

10        There's considerable overlap, and so I'm comfortable
11  and think it's most efficient to put the issue of the motions
12  to remand, to put that on hold until I'm able to resolve the
13  affirmative defenses at the same time.  So those will remain
14  pending.

15        That segues into another issue that I discussed with
16  counsel this morning, and that is where we go with the
17  affirmative defenses once the documents are produced from the
18  DoD.  And of course, as I said, Judge Herndon, is going to be
19  assisting with that, and hopefully we'll get those documents in
20  fairly short order.

21        I've asked the Leadership and Defense to meet with
22  Judge Herndon, and they are going to be meeting with him, but
23  I've asked them to include in their discussion working out a
24  plan for where we go once those documents are produced.  My
25  thought is it's most likely a summary judgment type proceeding.

1    But, then, if the motion is denied on the grounds that there's

2    an issue of fact relative to an affirmative defense or the

3    political question doctrine, then where do we go from there and

4    how is that addressed.  And so they'll be putting together a

5    plan.

6            And then I've also asked for briefing on that issue.

7    And I'd like the plan to be in place by the next CMC, but I am

8    also interested in hearing from the subcommittee on law and

9    briefing about that at the next CMC.

10           **MR. BROCK:**  Your Honor, would that be, just to get

11   clarification, a topic for discussion at the next CMC, or would

12   you like letters a week ahead of the next CMC outlining

13   positions on that issue?

14           **JUDGE RODGERS:**  I don't want full briefing at that

15   point, but you could do something abbreviated, and it could be

16   in your letter as an attachment to the agenda.

17           **MR. BROCK:**  Okay.  Thank you.

18           **JUDGE RODGERS:**  Ms. Hutson, did you have something?

19           **MS. HUTSON:**  No.  I was just going to suggest that --

20   we will definitely ask Mr. Sacchet to be here, but in the

21   interim, we could work with the Defendants in terms of possibly

22   hopefully even agreeing to a briefing schedule, and if not,

23   submit two different schedules for your consideration, not

24   briefing but just the schedule itself, what the dates would

25   look like as to a briefing schedule.

1          **JUDGE RODGERS:**  That's fine.  I'm always in favor of

2     meet and confer.  If you can agree, that will be fine.  And if

3     not, then separate schedules, and I'll hear from you at the CMC

4     on that.

5          The first depositions in the case were conducted

6     October 17th and 18th.  Mr. Moses and Mr. Myers, I believe,

7     were deposed.  Of course, Dr. Berger's deposition is scheduled

8     for three days during the week of November 11th, and then there

9     are three weeks carved out for depositions, the first three

10    weeks in December.  I've asked the Defendants to present a

11    schedule for those December depositions by next Friday.

12         Judge Jones, there were some issues during the update

13    that I received this morning on some of the document production

14    issues as well as an issue of personnel files, I believe,

15    related to the depositions.  The Plaintiffs would like the

16    personnel files of the deponents, and apparently there is a

17    dispute about that.

18         There's also apparently still not resolved, and so a

19    dispute -- and I'm not sure exactly what it is but I'm going to

20    ask the parties to address it in just a moment -- regarding the

21    request to inspect the testing facility in Indianapolis, I

22    believe it was an Aero testing facility.

23         Mr. Buchanan, if you would come forward, please.

24         Judge Jones, I've asked the attorneys to address this

25    here with you to give you a heads-up because I think this all

1    may be coming your way shortly.

2         **MR. BUCHANAN:**  Good morning, Your Honors.  Judge

3    Jones, thank you.

4         Your Honor, Judge Jones in particular, with your

5    guidance during the call on Monday, we've done some further

6    digging and pressing on various document issues.

7         As you know, you directed the Defendants to, with

8    regard to those particular custodians that you identified as

9    relevant and subject to production, to do further

10   investigation.

11        I think fairly simultaneous with your call, an email I

12   hadn't seen, Defendants found some 53 back-up tapes from a

13   period of time in 2008 that obviously correlates with the

14   witnesses that were a topic of our discussion and, frankly,

15   would aid, I think, the parties with regard to earlier periods

16   of time where there are significant production gaps.

17        So we're getting information, I'd say, fairly

18   cooperatively from the Defense in terms of their efforts to

19   restore.  We don't have a dispute with regard to those tapes.

20   We understand they're restoring them to identify what's on

21   them, and we were advised that they will become part of the

22   discoverable information once restored and they get more

23   information in that regard.

24        There has also been a lab sweep that was attendant to

25   our request to inspect.  One of our requests was to go and

1    visit the facility in Aero to see both the testing facility and

2    areas and certain information, at least how it was stored.

3            Some of the issue that we had was with regard to, I'd

4    say, remote testing from the late '90s, early 2000s, and wanted

5    to get an understanding of how that information was stored and

6    segregated.

7            I understand that Defense counsel have swept that

8    facility and are going to make a supplemental production.  So

9    that aspect of our request to inspect we may be able to work

10   out.

11           The issue that's arising and is with regard to the TAR

12   point that we talked about a week ago in some of the

13   supplemental productions that are now pending is ensuring that

14   this information is getting, if you will, over the transom from

15   the Defense to the Plaintiffs as efficiency and expediently as

16   possible so that we can maintain the aggressive schedule that

17   we have in December with many of these witnesses.  So I'm

18   pleased that the Defendants are cooperating in that regard, and

19   we're going to start having more periodic calls.

20           The issue that I think might be coming to Your Honor

21   relates to TAR.  We've continued to discuss that.  We have

22   exchanged proposals.  I understand from the Defense that they

23   are satisfied with our proposed resolution of the issue, but

24   the story is not closed on that.  We're waiting for, you know,

25   definitive resolution.

1        I'm only getting concerned -- if we had a longer

2   discovery calendar, I'd have more time, frankly, to be patient

3   with the process.  But if that breaks down, we may need to get

4   with Your Honor on a fairly short timetable so that we can

5   resolve that in time to keep the depositions on track.

6        The personnel file issue, Your Honor, which is I think

7   ripe, is Plaintiffs have requested personnel files, certainly

8   the relevant components of personnel files, as it relates to

9   deponents.  We certainly believe that's an important aspect of

10  identifying these people, their role and function at various

11  points in time.

12        We have that in a document request.  They've objected.

13  I'd submit simultaneous briefing on a short fuse.  We have Mr.

14  Berger's deposition on the 11th.  I would like certainly for

15  the Defendants to be aware that we anticipate production of

16  that personnel file in advance of his deposition so that we

17  don't have to come back to the table on it.

18        So I'd like to allow Your Honor whatever time you need

19  to consider it and whatever time the Defense needs to produce

20  that, assuming we prevail in that regard.

21        **JUDGE JONES:**  Could I interrupt for a second?  On the

22  personnel files, yes, simultaneous briefing would be

23  appropriate.  But just a little guidance:  I'm assuming, on the

24  personnel files, there is very specific information in the

25  files the Plaintiffs are looking for; you're trying to really

1    find where they fit within the organization.  Because, as we

2    all know, personnel files have a bunch of stuff in it that

3    probably has little to do with the case.

4            Is that the situation?

5            **MR. BUCHANAN:**  Generally, Your Honor, yes.  So, what I

6    envision is a performance assessment that the person did on

7    themselves at the end of the year -- *This is what I did last*

8    *year* -- to their boss, you know -- *I worked on the CAE project,*

9    *I brought it to market, I evaluated alternatives, I was*

10   *involved in the licensing negotiating* -- whatever their

11   discussion about their role and involvement and their

12   characterization of their successes maybe in contracting and

13   development and testing, *et cetera*, with regard to the product

14   at issue; or something more generally relating to hearing

15   protection devices that talks about, *Well, this person really*

16   *isn't a scientist, this person is more of a businessperson.*

17   You know, people have titles, but they may have a role and

18   function that actually crosses into a different area.

19            So I think self-assessments by a witness of themselves

20   over time.  And their boss's assessment -- *Hey, great job*

21   *landing that contract; Great job bringing that to market with*

22   *all the challenges we faced in development.*  You know, these

23   are -- we've seen these documents in other litigation, and I've

24   used them at trial, frankly, fairly frequently.

25            And this is far from a kind of fishing for an HR

1    dispute.  I would focus it very specifically on people's role

2    and involvement on their business functions as opposed to

3    collateral matters.

4         **JUDGE JONES:**  Why don't we do this, rather than

5    delving into the issue further:  Why don't we set a deadline

6    right now for simultaneous briefing.

7         And if my notes are correct, Dr. Berger's deposition

8    is the 11th.  Today is the 25th.  I'm wondering if this is an

9    issue -- I mean, this is not rocket science -- where the

10   parties would be able to file simultaneous briefs by next

11   Friday, the 1st.

12        Is that doable?

13        **MR. BUCHANAN:**  For Plaintiffs, yes, Your Honor.

14        **MR. NOMELLINI:**  Your Honor, it's Mark Nomellini.  The

15   only tweak I would suggest to that, just so we know the scope

16   of what Plaintiffs are talking about, is that Plaintiffs

17   accelerate their brief by 24 hours and then we be given

18   24 hours to respond so we know the specific categories that

19   we're talking about that are at dispute.

20        **JUDGE JONES:**  Actually, that may be a good suggestion

21   because it will depend upon what Mr. Buchanan is particularly

22   asking for what your objection, if any, might be.

23        So how about, Mr. Buchanan, you file your brief by

24   Friday, the 1st, so I'll know what the issue is.

25        And then, Mr. Nomellini, on Monday you all file your

1    response to that.

2            And, Mr. Buchanan, if it turns out that there are

3    issues raised in their brief that you think it's unfair you

4    haven't had a chance to chime in on, you can make that request.

5    I'll take a look at it and see if it's really necessary.

6            That way I should have the full picture, and I can

7    address that pretty promptly during the week of -- hopefully

8    early on the week of the 4th, and that would be in time for

9    Dr. Berger's deposition.

10           **MR. BUCHANAN:**  No problem, Your Honor, in terms of

11   accelerating.  I'd say I'd be happy to tender it on the 31st so

12   that the Defendants could respond on the 1st, if that helps

13   things.

14           **JUDGE JONES:**  Well, that may be helpful for me.  Why

15   don't we do that, then.

16           Why don't you file your brief on the 31st and,

17   Mr. Nomellini, file your response on the 1st.  That will

18   obviously give you a little less time, but that should tee up

19   the issues for me, hopefully.

20           **MR. NOMELLINI:**  Your Honor, could we get Plaintiffs'

21   brief on the morning of the 31st and then we respond on the

22   1st?

23           **MR. BUCHANAN:**  Sure, before we go trick-or-treating on

24   the 31st, Your Honor, we'll get it out by noon.

25           *[Laughter]*

1    **JUDGE JONES:**  Okay.

2    **MR. BUCHANAN:**  Your Honor, I would ask, just because

3    of the time frame with Dr. Berger's deposition, that the

4    Defendants at least anticipatorily sweep so they have the

5    personnel file material available to them so that when Your

6    Honor rules -- and not to prejudge the conclusion on that --

7    but that when Your Honor rules, a production could be timely

8    made.

9    **JUDGE JONES:**  Yeah.  I'm assuming that won't be a

10   problem.

11   **MR. NOMELLINI:**  Yes, Your Honor, we can do that.

12   **MR. BUCHANAN:**  Finally, Your Honor, with regard to the

13   request to inspect, I think we're fairly close on a few of

14   those points.  I received some additional information this

15   morning that may help at least resolve one of the disputes, and

16   that is that there's a very significant production that's going

17   to be made near term following a resweep of that space.

18        So I have told the Defense that we're going to frame

19   out for them in more detail the precise testing and inspection

20   that we'd like to do on the lab itself.  And I owe them that

21   response, but that will be crystalized next week.  So if we're

22   able to get that ripe, that would probably be a matter that we

23   could handle at the same time as the personnel files.

24   **JUDGE JONES:**  Okay.  Thank you.

25   **MR. BUCHANAN:**  Thank you.

1          **JUDGE RODGERS:**  Thank you.

2          And Judge Jones, some of the depositions -- and I'll

3  hear -- Mr. Nomellini, you can speak -- but some of the

4  depositions the first three weeks of December are going to be

5  taken in Indianapolis.  Some of those deponents are retired

6  Aero employees.  And I suggested they just do the inspection

7  then.  That didn't go over very well.  They thought that might

8  be a little too soon.  It seemed convenient to me.

9          Mr. Nomellini, do you want to respond?  Even though I

10  know you all are going to be submitting briefing, but --

11          **MR. NOMELLINI:**  Yes.  Thank you, Your Honor.  Just

12  briefly.

13          So a couple of things:  118,000 documents have been

14  produced to date.  I can't take much credit for that.  I think

15  that's a combination of Michelle Six and Dave Buchanan working

16  on that.

17          There have been documents that have been excluded from

18  the TAR process by agreement because of their file type, for

19  example, images and other types of files.  And I understand

20  that Karl Gunderson, who has taken Michelle's place, and Dave

21  Buchanan are working through those on a file-type by file-type

22  basis.

23          At this point, we don't have any disputes we expect to

24  bring to the Court.  If we do have any, we will let Your Honor

25  know.

1      On the testing, we look forward to seeing Plaintiffs'

2  proposal on that.  Depending on the details, we may have

3  objections with respect to the testing.  I don't know how

4  complicated that that issue is going to be.  We're just going

5  to need to see the exact testing and protocols, *et cetera*.

6  Obviously the lab has changed over the course of the last

7  20 years or so.

8      And I think we covered the personnel files.  So, thank

9  you, Your Honor.

10      **JUDGE RODGERS:**  Thank you, Mr. Nomellini.

11      **JUDGE JONES:**  Okay.  Thank you.

12      **JUDGE RODGERS:**  Those areas that are carved out of the

13  TAR protocol, those are outlined in the order, correct?

14      Mr. Buchanan?

15      **MR. BUCHANAN:**  Yes, Your Honor, they are.  So there

16  are categories of documents that the parties knew from the

17  outset would not be capable of being reviewed through a text

18  engine like TAR, so images are one such category.  Under the

19  protocol they were supposed to be segregated for linear review,

20  and for many of those categories the parties have agreed that

21  they should continue to be linearly reviewed.

22      There are others that -- you know, there could be like

23  an operating system file or something which nobody believes is

24  going to have discoverable information.  So we're trying to

25  cooperate to carve out things that we don't think are going to

1  have discoverable information to expedite the broader review.

2          **JUDGE RODGERS:**  But is that what Mr. Gunderson is

3  doing now?

4          **MR. BUCHANAN:**  Yes.  So that's one -- so this issue

5  arose about a week-and-a-half ago before that call we had with

6  Your Honors.  And there was some concern, I think, on the

7  Defense's part as to whether they were going to do a linear

8  review of some very large volume of material.

9          We've worked through that in a way where they've

10  agreed, I think, to do a linear review in many of the

11  categories that were of most concern to the Plaintiffs, and we

12  are working with them to carve out ones where we don't think

13  there's going to be discoverable information.  So I think we've

14  gotten beyond maybe some threshold concerns on their part back

15  in a place I consider to be in the spirit of the ESI protocol.

16          The concern, just for Judge Jones's benefit, is that

17  -- and Your Honor's -- there's five-and-a-half million

18  documents in the TAR corpus, so those are the ones that are

19  text searchable, and there's about a million-and-a-half that

20  are in this other bucket that the Defendants are looking at.

21          The real question is just the unknown and, as the

22  Defendants move through this, what is the volume of information

23  that's going to come over the transom and when.  And that's

24  hence my urge for earlier than typical rolling productions so

25  that we can maintain the December calendar.

1    As Mr. Nomellini reported, 120,000 documents have been

2  produced to date, 20,000 last week.  I understand another

3  20,000 are coming today.

4    We have an amazing team on this Plaintiffs'

5  leadership, better than any litigation I've ever been involved

6  with.  But it takes at least five days from when you get a

7  production until a person can lay eyes on it.  And we need the

8  commitment of everybody, really, the tech people, the

9  Defendants, and really our side to hold that calendar.  So

10  that's why we're coming to you more often than you might see in

11  most cases, Your Honor.  Thank you.

12    **JUDGE RODGERS:**  Thank you, Mr. Buchanan.

13    Mr. Nomellini, anything you want to add?

14    **MR. NOMELLINI:**  I would just say, Your Honor, that

15  everybody has been working cooperatively on this.  We're all

16  moving at a rapid pace.  I think Mr. Buchanan even put in an

17  affidavit in another case about how rapidly and efficiently

18  things were moving.  And so we'd like to get to a place where a

19  few months from now they can put in another affidavit talking

20  about how great things are going on this case, and we're

21  confident that will be true.

22    *[Laughter]*

23    **JUDGE RODGERS:**  Well, I'll say it again from the

24  bench, I'm very impressed with how cooperatively you all have

25  worked and how much has been accomplished in such a short

1    period of time.  Keep it up.

2            **MR. BROCK:**  We have had calls from other defense

3    counsel, *Why are y'all moving so fast?*  And so they're citing

4    the speed of this litigation in other places.

5            *[Laughter]*

6            **JUDGE RODGERS:**  I see now -- I didn't when I first

7    walked in the courtroom -- that I believe all of the members of

8    the Early Vetting Subcommittee are here, the official and maybe

9    *ad hoc* as well.  All of them have been working very hard.  And

10   so the comments that I made earlier in regards to your chair,

11   Ms. Lanier, I echo again for all of you.

12           And just so you know, from my standpoint, your work is

13   critical, it is right now and will be for some time to come.

14   It's critical to the ability to manage this litigation going

15   forward.  We need to be able to, as our friend, Judge Eldon

16   Fallon, says, *get our arms around the litigation*.  And we do

17   need to know that plaintiff corpus, the body of plaintiffs.

18   And I've certainly heard numbers thrown around and they are

19   very large numbers.

20           So your ability to educate the law firms and lawyers

21   and staff as you're doing I think will benefit everyone and the

22   litigation as a whole in the long run.

23           Also, the subcommittee has been titled the Early

24   Vetting Subcommittee, and so your role does have a vetting

25   component to it.  And we talked a little bit about this just

1    briefly in the preconference meeting.  And you've noted, I'm

2    sure, from the census order that this census process and the

3    deficiency process is not an opportunity or a time for the

4    Defendants to test the veracity of the information provided on

5    the forms.

6            With that said, this process should include some

7    vetting.  We don't need cases in the MDL with plaintiffs who

8    have never worn these earplugs.  And so, for instance, if you,

9    in your review -- in education and then review of forms, you

10   identify individuals who maybe wore a different version of the

11   earplug, I'm going to ask you to speak to leadership about that

12   and address that with leadership and with those individual

13   attorneys, because those cases don't have any place in the

14   litigation, to the extent we have any of those.

15           And I'm not prejudging anybody's case.  But I just

16   know from other MDLs that, again, that corpus, the body of

17   plaintiffs can sometimes get bogged down with some of those

18   meritless claims.  And it serves no one's interest as the

19   litigation goes forward to have those types of cases, what I'll

20   call frivolous, meritless cases, in the litigation.

21           So you have that function as well.  But thank you,

22   again, for all you're doing.  I look forward to another update

23   from you.

24           That's all I have.  Have I missed anything from

25   anyone's perspective?

1          **MR. AYLSTOCK:**  I don't think so, Your Honor.

2          **JUDGE RODGERS:**  All right.  Mr. Brock?

3          **MR. BROCK:**  No.  We're good.  Just thank you.

4          **JUDGE RODGERS:**  As always, it's wonderful to see

5     everyone.  Thank you for your hard work and for the updates

6     this morning.  I'll look forward to seeing you all again at the

7     next CMC on November 22nd, and I'll see you on that date.

8          Happy Halloween.

9              *(Proceedings concluded at 10:09 a.m.)*

10                  --------------------

11     *I certify that the foregoing is a correct transcript from the*
       *record of proceedings in the above-entitled matter.  Any*
12     *redaction of personal data identifiers pursuant to the Judicial*
       *Conference Policy on Privacy are noted within the transcript.*

13

14     *Donna L. Boland*                          **10-30-2019**
       _____                   **Date**
15     **Donna L. Boland, RPR, FCRR**
       **Official Court Reporter**

16

17

18

19

20

21

22

23

24

25