# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS ) | |
| EARPLUG PRODUCTS LIABILITY ) | |
| LITIGATION ) | Case No. 3:19-md-2885 |
| ) | |
| ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* ) | Magistrate Judge Gary R. Jones |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.   SUMMARY OF ISSUES ................................................................................ 1

III.  ARGUMENT .................................................................................................. 3

  A.  Legal Standard ........................................................................................ 3

  B.  Personnel Files of 3M Employees Are Cleary Relevant and Not Otherwise Readily Obtainable ................................................................. 5

  C.  Personnel Files Are Readily Producible ............................................... 11

IV.  CONCLUSION ............................................................................................ 13

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.   SUMMARY OF ISSUES ................................................................................ 1

III.  ARGUMENT .................................................................................................. 3

  A.  Legal Standard ........................................................................................ 3

  B.  Personnel Files of 3M Employees Are Cleary Relevant and Not Otherwise Readily Obtainable ................................................................. 5

  C.  Personnel Files Are Readily Producible ............................................... 11

IV.  CONCLUSION ............................................................................................ 13

...

# TABLE OF AUTHORITIES

*Cases*

*Auto-Owners Ins. Co. v. Am. Yachts, Ltd.*,
  2006 WL 8435483 (S.D. Fla. Aug. 3, 2006) ...................................................4, 10

*B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*,
  2011 WL 13227990 (N.D. Fla. Nov. 8, 2011).....................................................4, 5

*Ford v. Gov't Employees Ins. Co.*,
  2015 WL 11109373 (N.D. Fla. Apr. 3, 2015) ........................................................4

*Holcombe v. Advanced Integration*,
  Tech. 2018 WL 3819974 (E.D. Tex. Aug. 10, 2018)............................................12

*In re Abilify (Aripiprazole) Prod. Liab. Litig.*,
  2017 WL 4399198 (N.D. Fla. Sept. 29, 2017) .......................................................7

*In re Control Data Corp. Sec. Litig.*,
  1988 WL 92085 (D. Minn. Feb. 22, 1988).............................................................9

*In re Trasylol Prod. Liab. Litig.*,
  2009 WL 936597 (S.D. Fla. Apr. 7, 2009).................................................... 10, 11

*In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
  2016 WL 3923873 (E.D. La. July 21, 2016) .........................................................8

*Jasmin v. TB 22 Mario's Inc.*,
  2007 WL 9701877 (S.D. Fla. Jan. 4, 2007).........................................................5

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
  662 F.3d 1292 (11th Cir. 2011) ............................................................................4

*Matter of Hawaii Corp.*,
  88 F.R.D. 518 (D. Haw. 1980) ......................................................................5, 10

*Nat'l Credit Union Admin. Bd. For G.I.C. Fed. Credit Union v. Basconi*,
  2017 WL 749187 (N.D. Ohio Feb. 27, 2017)..................................................5, 11

*Nelson v. Corr. Corp. of Am.*,
  2006 WL 8445235 (N.D. Fla. Jan. 6, 2006) ....................................................................... 12

*Nowak v. Lexington Ins. Co.*,
  2006 WL 3613766 (S.D. Fla. June 12, 2006) .................................................................. 5, 10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................................................................ 4

*Southern Ry. Co. v. Lanham*,
  403 F.2d 119 (5th Cir. 1968) ............................................................................................. 11

*Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*,
  2017 WL 10084359 (N.D. Fla. June 28, 2017) ................................................................... 4

***Rules***

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 3

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................................................ 4

## I.   INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, Plaintiffs submit this memorandum in support of their Motion to Compel Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC (collectively, "3M" or "Defendants") to produce the Personnel Files of any current or former 3M employee or agent who is noticed for deposition in these proceedings pursuant to Plaintiffs' Third Requests for Production.[1]

## II.  SUMMARY OF ISSUES

In anticipation of the depositions of Defendants' current or former employees, Plaintiffs requested that 3M produce particular portions of such witnesses' personnel files, specifically the documents generally maintained by the employee's supervisor or human resource department relating to that employee's work on 3M Earplugs,[2] including job performance evaluations, self-evaluations, salary and compensation information, and bonus and incentive information. Ex. 1 at 3, 6. Defendants refused

---

[1] Plaintiffs' Third Requests are attached as Exhibit 1. Defendants' responses to Plaintiffs' Third Requests are attached as Exhibit 2. "Personnel Files" are defined as "job performance evaluations, self-evaluations, salary and compensation information, and bonus and/or incentive information, relating to that individual's work on 3M Earplugs." Ex. 1 at ¶ 12.

[2] As used herein, the term "3M Earplugs" carries the same meaning as in Plaintiffs Third Requests, "the dual-ended Combat Arms earplugs (Version 2 CAEv2) that were designed, manufactured and sold by Defendants to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by [3M] for civilian use or non-military use." *See* Ex. 1 at ¶ 9.

1

to produce these documents, objecting on grounds of relevance, burden, and proportionality. *See* Ex. 2 at 20-21. Defendants' refusal lacks any legal basis. Plaintiffs' tailored requests seek information that is clearly relevant to core issues herein, including (i) 3M employees' internal roles, involvement, and responsibilities with the 3M Earplugs, as described by them or their superior contemporaneous with their activities, (ii) the attribution, credit, and accomplishments claimed or given to particular 3M employees for various relevant aspects in the development, sale, and monitoring of the 3M Earplugs (including, *inter alia,* their discovery/testing/creation, managing/deflecting safety or performance problems, or overcoming sales challenges/obstacles), and (iii) the goals, objectives, and financial incentives—personal and corporate—that drove relevant actions, inactions, and decisions with regard to the 3M Earplugs. Nor does production of such information raised any unreasonable burden; indeed, the information is easily producible from segregated internal files.

First, the assessments and compensation information sought are directly relevant to Plaintiffs' claims that the CAEv2 was defectively designed, improperly tested, and deceptively marketed and sold. Plaintiffs expect that the selected employees' Personnel Files will reveal the extent to which those witnesses had a role in the defective design, improper testing and deceptive marketing and sales of the CAEv2, and 3M's approval of such conduct. As demonstrated below, Personnel

2

Files like the ones sought here are routinely used at trial and at depositions to help establish (or impeach contrary testimony) on these points.

Second, the production is proportionate to the needs of the case. 3M alone has access to the Personnel Files, which are typically maintained for routine business purposes as segregated files and are small in volume. To be clear, Plaintiffs do not seek health-related or otherwise sensitive personal information contained in the witnesses' Personnel Files. And 3M, a massive, multi-national corporation that generates billions of dollars a year in net profit, is alleged to have promoted and sold defective earplugs to the military and others for well over a decade, causing tens of thousands of service members to suffer serious hearing damage. The relative burden of producing a few internal personnel files is minuscule in comparison to the broader needs of the case.

## III. ARGUMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable," *id.*, and "[c]ourts construe relevancy 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear

3

on, any issue that is or may be in the case.'" *Ford v. Gov't Employees Ins. Co.*, 2015 WL 11109373, at *1 (N.D. Fla. Apr. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection," Fed. R. Civ. P. 37(a)(3)(B), and the Court has "broad discretion" to compel such discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). The party resisting discovery has the burden of proving that the requested discovery is either irrelevant, or of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *See Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017).

Personnel file information as defined in Plaintiffs' Third Requests is generally discoverable pursuant to the ordinary relevance analysis, because they often help establish general business practices (and rewards or reprimands for such activities). *See B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, 2011 WL 13227990, at *5 (N.D. Fla. Nov. 8, 2011) (ordering the production of personnel files because they were relevant to whether employees engaged in complained-of behavior); *Auto-Owners Ins. Co. v. Am. Yachts, Ltd.*, 2006 WL 8435483, at *3 (S.D. Fla. Aug. 3, 2006) (same, because the files "may contain general statements about habitual recklessness, misrepresentations, diligence, or truthfulness of the employees" and

4

would show employees' qualifications and competence); *Jasmin v. TB 22 Mario's Inc.*, 2007 WL 9701877, at *3 (S.D. Fla. Jan. 4, 2007) (same, because the files "will likely bear on the credibility of the parties and witnesses, and will impeach sworn statements of Defendants"). Even where there is a public policy against the disclosure of sensitive information contained within more broadly defined personnel files, discovery of that sensitive information "is nonetheless allowed if (1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Matter of Hawaii Corp.*, 88 F.R.D. 518, 524 (D. Haw. 1980); *see B-K Cypress Log Homes Inc.*, 2011 WL 13227990, at *5 (noting that, in Florida, "an issue with the disclosure [of personnel file information] arises only when the information contained in the files is irrelevant to the case or overly sensitive").

      **B.    Personnel Files of 3M Employees Are Cleary Relevant and Not Otherwise Readily Obtainable**

Where the production of Personnel Files may lead to relevant and admissible evidence, they are "routinely disclosed in litigation," and their production should be compelled. *Nat'l Credit Union Admin. Bd. For G.I.C. Fed. Credit Union v. Basconi*, 2017 WL 749187, at *6 (N.D. Ohio Feb. 27, 2017); *see Nowak v. Lexington Ins. Co.*,

2006 WL 3613766, at *3 (S.D. Fla. June 12, 2006) (observing disclosure of personnel files is standard).

3M objects that Personnel Files are supposedly irrelevant. But material in these files, such as employee self-appraisals and performance reviews, for individuals involved in the alleged misconduct and 3M's compensation structure for such individuals, is highly probative of Plaintiffs' claims. The identified witnesses supervised the design, testing, marketing, and sales of 3M Earplugs. Employee self-appraisals and performance evaluations will reveal the attribution, credit, and accomplishments, claimed by or given to these employees, for their various roles in the development, sale, and monitoring of 3M Earplugs. Notably, such reviews and evaluations are created near in time to the subject activities and thus provide context for each employee's primary responsibilities and functions in ways that a resume or LinkedIn description never can. Based on experience with personnel files produced in other actions, Plaintiffs anticipate that the requested Personnel Files here will further expose, among other critical facts, the employee's role(s) in managing or overcoming testing, development, safety, performance, or sales obstacles with regard to 3M Earplugs. And the Personnel Files will also reveal the financial goals, incentives, and pressures—of both 3M and the employee—that drove the design, testing, and sales decisions responsible for the defective 3M Earplugs ending up in service members' ears.

Far from tangential, performance reviews and self-appraisals are commonly used in depositions and at trail as part of Plaintiffs' substantive case. As noted above, they reveal employees' roles and responsibilities and how they are credited and promoted for advancing corporate objectives. For example, in the Vioxx litigation, a witness claimed that her responsibilities were science-related, but a performance review in her personnel file exposed that her "major efforts . . . were focused on defending the VIOXX franchise." *See* Transcript, *Humeston v. Merck & Co.*, (N.J. Sup. Ct. Jan. 31, 2007) [Ex. 3], at 1649:18-1656:22; Ex. 4 (excerpt from personnel file). And at trial in the Testosterone Replacement Therapy litigation, annual reviews connected promotions and positive performance evaluations to employees' ability resist the FDA's efforts to impose certain warnings on the product. *See, e.g.*, Transcript, *Mitchell v. Abbvie*, (N.D. Ill. Mar. 7, 2018) [Ex. 5], at 394:11-397:17; Transcript, *Konrad v. Abbvie*, (N.D. Ill.) [Ex. 6], at 666:25-668:14.

Further, courts frequently conclude that compensation incentives and performance evaluations are relevant, and order their production. *See, e.g., In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 4399198, at *11 (N.D. Fla. Sept. 29, 2017) (ordering production of part of personnel files because "information concerning financial incentives sales representatives received and communications between sales representatives and providers, is relevant and discoverable, whether it is located in a personnel file or not"); Notification of Docket Entry, *In re*

7

*Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-cv-01748 (N.D. Ill. Oct. 15, 2015) [Ex. 7] (granting motion to compel production of personnel files with regard to salary and other compensation information for employees with bonus-related information); Transcript of 10/1/2015 Hearing, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-cv-01748 (N.D. Ill. Oct. 1, 2015) [Ex. 8], at 12:13-23 (court stating from bench that incentive compensation arrangements regarding the volume of sales are relevant), 25:12-13; *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, MDL No. 2385 (S.D. Ill. April 26, 2013), [Ex. 9], at p. 5 (finding that performance reviews, compensation, and bonuses contained in employee personnel files were relevant because "[t]his information speaks to the plaintiffs' contention that Pradaxa was prematurely rushed or otherwise improperly placed on the market."). Compensation and bonus information "is necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias." *Pradaxa*, at 5. And personnel files can reveal a compensation scheme that incentivizes increased product sales at all costs that "would certainly be relevant" to claims such as those Plaintiffs assert here. *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig*., 2016 WL 3923873, at *18 (E.D. La. July 21, 2016)

    Indeed, 3M cannot now claim to have a principled basis for their blanket relevance and privacy objections: 3M has already produced performance reviews

8

and evaluations when the information was included in a custodial file. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendants further object to producing Personnel Files on the grounds that the request is supposedly overbroad and seeks private and highly sensitive information. But Plaintiffs targeted their request by limiting "Personnel Files" to "job performance evaluations, self-evaluations, salary and compensation information, and bonus and/or incentive information, relating to that individual's work on 3M Earplugs." Ex. 1 at ¶ 12. Plaintiffs have not sought (and have no interest in) human resource documents relating to any employee's health status, insurance arrangement, or family. Such information can be redacted with no issue.

Furthermore, to the extent Defendants claim that the performance assessments and compensation information are themselves private, the proper remedy is a protective order, which has already been entered in this case. *See In re Control Data*

*Corp. Sec. Litig.*, 1988 WL 92085, at *5 (D. Minn. Feb. 22, 1988) ("The invasion of privacy argument against such production is without merit. No cognizable privilege is claimed. While the courts have recognized a privacy interest in an individual's personnel files, the proper remedy for protection of that interest in civil discovery is the entry of a Rule 26(c) protective order.") (collecting cases); *Nowak*, 2006 WL 3613766, at *3. Therefore, any privacy concerns about that information are overstated and not a reason to withhold production.

Importantly, there is no substitute for the requested Personnel Files. *See In re Trasylol Prod. Liab. Litig.*, 2009 WL 936597, at *2 (S.D. Fla. Apr. 7, 2009). Personnel files are inherently reliable in a way that testimony from witnesses who have reason to shade the truth is not. *See, e.g.*, *Hawaii Corp.*, 88 F.R.D. at 525 (personnel files have "an inherent reliability which cannot now be duplicated by any other source of evidence"; private accounting firms' personnel files were discoverable and clearly relevant); *Auto-Owners Ins.*, 2006 WL 8435483, at *4 (S.D. Fla. Aug. 3, 2006) (same). And documents may reveal information that testimony may not, which is why plaintiffs are entitled to testimonial *and* document discovery. *In re Traysol Prod. Liab. Litig.*, 2009 WL 936597, at *2 (S.D. Fla. Apr. 7, 2009) (explaining that deposition questions are a poor substitute for document production because, "simply making a deponent available will not necessarily reveal information that might be established by producing written documentation") (citing

*Southern Ry. Co. v. Lanham*, 403 F.2d 119 (5th Cir. 1968)); *In re Benicar (Olmesartan) Prod. Liab. Litig.,* No. 15-2606 (D. N.J.) [Ex. 11], at p. 2-3 (rejecting the argument that deposition testimony could substitute for production of this category of documents, and ruling that "performance evaluations contain relevant information not previously available," which could "lead to more efficient and focused questioning" in depositions).

These additional rationales for producing the Personnel Files apply with equal force to the upcoming deposition witnesses. Indeed, Plaintiffs' requests for files was already tailored to the Personnel Files of such witnesses, recognizing that, with the requested documents in hand, Plaintiffs will be able to offer a complete picture for the jury—through testimony and exhibits—of those witnesses' roles, involvement, accomplishments, and incentives on the relevant subject matter.

**C. Personnel Files Are Readily Producible**

Because the Personnel Files are relevant, they should be produced unless Defendants can show that doing so is disproportional to the needs of the case. Defendants argue undue burden, but cannot substantiate such a claim. The Personnel Files are segregated, small volume documents maintained by 3M for business purposes; and the Court's protective order protects any privacy interest implicated in performance reviews or compensation arrangements. *See, e.g., Basconi*, 2017 WL 749187, at *6 ("production of the requested personnel files is not against public

11

policy as there is a protective order in place in this case, and personnel files are already routinely disclosed in litigation"); *Benicar,* [Ex. 11], at p. 4 (performance evaluations are easily identifiable and any burden is likely to be minimal as the performance evaluations are likely to be contained in personnel files which already have to be checked); *Pradaxa,* [Ex. 9], at pp. 5-6 ("[T]he subject request is not overly broad or unduly burdensome. . . . [A]ny privacy concerns can be adequately addressed via the protective order currently in place. Production under these conditions is appropriate and sufficiently protects any sensitive information contained within the requested personnel files.").

3M has failed to offer any details substantiating their claimed burden in producing Personnel Files. Nor can they now. The multiple tens of thousands of claims, if not more than a hundred thousand, and the potentially billions of dollars in damages at issue justify the effort it would take to identify these discrete collections of documents for the former 3M employee's identified for deposition. *See, e.g.*, *Nelson v. Corr. Corp. of Am.*, 2006 WL 8445235, at *2 (N.D. Fla. Jan. 6, 2006) ("Production of twelve personnel files is no burden."); *Holcombe v. Advanced Integration Tech.* 2018 WL 3819974, at *5 (E.D. Tex. Aug. 10, 2018) (granting discovery as claimed damages of $1,952,835 is "large," and burden of producing documents was "small, if not negligible" for large defendant).

12

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that this Court enter an order compelling Defendants to produce the Personnel Files in accordance with Plaintiffs' Third Requests for Production.

Dated: October 31, 2019

                Respectfully submitted,

                */s/ Christopher A. Seeger*
                Christopher A. Seeger, Co-Lead Counsel
                (Admitted Pro Hac Vice)
                New Jersey State Bar No. 042631990
                Seeger Weiss LLP
                55 Challenger Road
                6th Floor
                Ridgefield Park, NJ 07660
                Tel.: (212) 587-0700
                cseeger@seegerweiss.com

                Bryan F. Aylstock, Lead Counsel
                Florida State Bar No. 078263
                Aylstock, Witkin, Kreis & Overholtz, PLLC
                17 East Main Street
                Suite 200
                Pensacola, FL 32502
                Tel.: (850) 202-1010
                baylstock@awkolaw.com

                Shelley V. Hutson, Co-Lead Counsel
                (Admitted Pro Hac Vice)
                Texas State Bar No. 00788878
                Clark, Love & Hutson, GP
                440 Louisiana Street
                Suite 1600
                Houston, TX 77002
                Tel.: (713) 757-1400

shutson@triallawfirm.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2019, I caused the foregoing Motion to Compel Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Christopher A. Seeger*
Christopher A. Seeger

15