**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG | ) | |
| PRODUCTS LIABILITY LITIGATION, | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions*, | ) | Magistrate Judge Gary R. Jones |
| | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
AND MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A.  Legal Standard. ................................................................................................... 2

    B.  The Plaintiffs Cannot Meet the Relevant Legal Standard ..................................... 3

        1.  The Requested "Personnel Files" Are Not Clearly Relevant to This Litigation. ................................................................................................. 3

        2.  Nor Are the "Personnel Files" Otherwise Unobtainable. ........................... 6

        3.  Well-Established Public Policy Militates Against Plaintiffs' Request. .................................................................................................... 7

    C.  In The Alternative, 3M Will Provide the Court with an *In Camera* Review of the At-Issue Documents ...................................................................... 7

III. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abilify (Aripiprazole) Products Liability Litigation*,
   2017 WL 4399198 (N.D. Fla. 2017)..........................................................................4

*Alabama & Gulf Coast Ry., LLC v. U.S.*,
   2011 WL 1838882 (S.D. Ala. 2011)......................................................................6, 7

*Coker v. Duke & Co.*,
   177 F.R.D. 682 (M.D. Ala. 1998)..............................................................1, 2, 3, 6, 7

*In re Del-Val Fin. Corp. Sec. Litig.*,
   158 F.R.D. 275 (S.D.N.Y. 1994) ...............................................................................7

*Great Am. Ins. Co. v. Conart Inc.*,
   2007 WL 9751567 (M.D. Ga. 2007)........................................................................2

*In re One Bancorp Securities Litigation*,
   134 F.R.D. 4 (D. Me. 1991).............................................................................1, 2, 3

*Rollins v. Cone Distrib., Inc.*,
   2016 WL 10650414 (N.D. Fla. 2016)....................................................................2, 5

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................................................2

**I.      INTRODUCTION**

Counsel for Defendants submit this memorandum in response to Plaintiffs' Motion to Compel Discovery and Memorandum of Law (the "Motion") [Docket No. 798]. Plaintiffs seek discovery of private and highly sensitive personnel files for at least the following 12 witnesses:

1. Brian Myers:      Business Director, Hearing/Head Eye & Face/Body Division, involved in product development and marketing;

2. Douglas Moses:   Marketing Manager, involved in sales and marketing;

3. Elliott Berger:    Division Scientist, involved in product development and testing;

4. Ronald Kieper:    Senior Acoustic Technician, involved in product testing;

5. Brian McGinley:  Manager, Aearo office in Indianapolis;

6. Ted Madison:     Technical Service Specialist, involved in product development;

7. Jeffry Hamer:     Global Laboratory Manager; involved in product development and testing;

8. Richard Knauer:  Senior Technical Director, involved in product development;

9. Michele Cimino:  Business Development Leader, involved in military marketing and sales;

10. Marc Santoro:    Manager - Six Sigma Black Belt, involved in marketing and advertising;

11. Julie Tremblay:   Technical Assistant, Legacy Aearo portfolio; and

12. Robert Falco:    Technician; involved in product development.

Plaintiffs fall short of meeting the heightened burdened that applies to such discovery.

Plaintiffs do not dispute that "there is a strong public policy against the discovery of personnel files." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citing *In re One Bancorp Securities Litigation*, 134 F.R.D. 4 (D. Me. 1991)). Plaintiffs further concede that, "[c]onsequently, the discovery of such files is permissible only if (1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not

otherwise readily obtainable." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citing *In re One Bancorp Securities Litigation*, 134 F.R.D. 4 (D. Me. 1991)). Plaintiffs have made neither showing for the broad set of materials they seek. Rather, Plaintiffs insist that 3M produce a broad array of "Personnel Files" for all witnesses, including numerous categories of documents that are not "clearly relevant" to this litigation and do not contain information that is otherwise inaccessible to Plaintiffs. Because Plaintiffs have not carried their burden of justifying the production of this highly sensitive materials, this Court should deny Plaintiffs' Motion.

To the extent the Court is inclined to grant a limited production of personnel file materials, 3M requests that the Court limit such production to only those portions of the requested personnel files, if any, that specifically relate to the dual-ended Combat Arms Earplugs version 2. In the alternative, 3M is willing to provide this Court *in camera* with the files responsive to Plaintiffs' request, and will designate any portions that specifically relate to the dual-ended Combat Arms Earplugs version 2.

## II.   ARGUMENT

### A.   Legal Standard.

Personnel files contain private and highly sensitive information. Accordingly, strong public policy considerations weigh against disclosure of this information. *See, e.g.*, *Great Am. Ins. Co. v. Conart Inc.*, 2007 WL 9751567 (M.D. Ga. 2007) ("While parties are generally allowed to obtain discovery on 'any matter, not privileged, that is relevant to the claim or defense of any party' . . . courts impose a heightened standard of relevance which a party seeking discovery must demonstrate before production of personnel files may be compelled.") (citing Fed. R. Civ. P. 26(b)(1)); *Rollins v. Cone Distrib., Inc.*, 2016 WL 10650414, at *1 (N.D. Fla. 2016) (where this Court held that a "searching review of the defendant's entire personnel operation" was impermissible and accordingly denied in part the motion to compel).

Courts in this Circuit have held that "there is a strong public policy against the discovery of personnel files," and that, "[c]onsequently, the discovery of such files is permissible only if (1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citing *In re One Bancorp Securities Litigation*, 134 F.R.D. 4 (D. Me. 1991)). Although Plaintiffs do not dispute this standard governs their request, *see* Motion at 5, they have failed to meet either prong of their burden.

### B. The Plaintiffs Cannot Meet the Relevant Legal Standard

#### 1. The Requested "Personnel Files" Are Not Clearly Relevant to This Litigation.

Here, Plaintiffs' personnel-files request seeks information that is neither "clearly relevant" to this litigation nor otherwise inaccessible to Plaintiffs, and therefore Plaintiffs' request must fail. First, Plaintiffs cannot show that each component of their broad "Personnel Files" definition is "clearly relevant" to this litigation—particularly when applied indiscriminately to *all* witnesses. According to Plaintiffs' Third Requests for Production, "Personnel Files" are defined as "job performance evaluations, self-evaluations, salary and compensation information, and bonus and/or incentive information, relating to that individual's work on 3M Earplugs." In their Motion to Compel, Plaintiffs state that they "seek information that is clearly relevant to core issues herein, *including* (i) 3M employees' internal roles, involvement, and responsibilities with the 3M Earplugs, as described by them or their superior contemporaneous with their activities, (ii) the attribution, credit, and accomplishments claimed or given to particular 3M employees for various relevant aspects in the development, sale, and monitoring of the 3M Earplugs (including, inter alia, their discovery/testing/creation, managing/deflecting safety or performance problems, or overcoming sales challenges/obstacles), and (iii) the goals, objectives, and financial incentives—

3

personal and corporate—that drove relevant actions, inactions, and decisions with regard to the 3M Earplugs." Motion at 2.

Plaintiffs' definitions are vague and raise many more questions than they answer. It would be one thing if Plaintiffs' definitions and requests were limited to portions of personnel files that specifically mention "dual-ended Combat Arms Earplugs," or even portions of personnel files that do not specifically use the words "dual-ended Combat Arms Earplugs" but are referring to specific work that is primarily targeted toward "dual-ended Combat Arms Earplugs." But Plaintiffs' requests and definitions contain no such limits. For example, Plaintiffs seek information "including . . . the goals, objectives, and financial incentives—personal and corporate—that drove relevant actions, inactions, and decisions with regard to the 3M Earplugs." But what precisely are "goals, objectives, and financial incentives" that "drove relevant actions" relating to 3M Earplugs? 3M produces thousands of products. For scientists, is the goal of improving all of 3M's thousands of products one that "drives relevant actions" relating to Combat Arms Earplugs? For salesmen, is the goal of increasing market share for 3M's products one that "drives relevant actions" relating to Combat Arms Earplugs? Plaintiffs also include requests for "objectives" and "financial incentives" that "drove relevant actions." But, of the scores of "objectives" and "financial incentives" in personnel files, which are the ones that "drove relevant actions" with respect to the single product at issue here? Other than their very-high-level definitions, Plaintiffs have made no effort to explain why their broad categories apply to *all* witnesses.

This Court's previous decision in *In re Abilify (Aripiprazole) Products Liability Litigation*, 2017 WL 4399198 (N.D. Fla. 2017)—which Plaintiffs cite for support—illustrates the inadequacy of Plaintiffs' request. In *Abilify*, this Court tailored discovery of personnel files to "information concerning financial incentives . . . and communications between sales representatives and

4

providers" because such information was relevant for specific sales representatives. *Id.* at *11. Beyond this narrow constriction, the Court sustained defendants' objection to "the production of the entire personnel file for a sales representative." *Id.* Here, Plaintiffs attempt to retrieve similar sorts of compensation information (among other sorts of information) from a broad swath of witnesses in materially distinct roles and careers, without adequately explaining why or how such files might be relevant to such a diverse witness pool. In *Abilify*, this Court showed that the "clearly relevant" prong is context-specific, and applies in appropriately tailored circumstances. *Accord, e.g.*, *Rollins*, 2016 WL 10650414 at *1. Plaintiffs request that this Court do just the opposite, and instead compel a broad array of material for many differently situated witnesses.

Plaintiffs have repeatedly failed to tailor their personnel-files request to only "clearly relevant" information. But rather than carrying their burden of showing that the requested materials are relevant, Plaintiffs attempt to establish relevance through negative inference, insisting that, because they "do not seek health-related or otherwise sensitive personal information contained in the witnesses' Personnel Files," the files they request are "clearly relevant" and discoverable. *See* Motion at 3. But the fact that Plaintiffs do not seek a specific type of irrelevant information does not show that the materials they seek *are* relevant. In fact, Plaintiffs offer no reason to think that *every* witness' personnel files is relevant, other than the fact that they are personnel files. Were that argument sufficient to carry Plaintiffs' burden, the "clear relevance" standard would have no meaning. Like *Abilify*, Plaintiffs request for "[w]holesale production of personnel files [is] not proportional to the needs of the case," particularly where, as here, Plaintiffs have failed to disaggregate the numerous "Personnel Files" subgroups between numerous distinct witnesses. 2017 WL 4399198 at *10-11.

5

## 2. Nor Are the "Personnel Files" Otherwise Unobtainable.

Plaintiffs are also unable to show that any of the information they seek from witnesses' personnel files is "not otherwise readily obtainable," *Coker*, 177 F.R.D. at 685, thus providing a second, independent ground on which to deny Plaintiffs' request. The very design of Plaintiffs' requests makes this so: Plaintiffs ask only for personnel files of witnesses who will, in short order, be deposed; Plaintiffs will have full and fair opportunity then to ask questions regarding, among other things, the witnesses' roles and responsibilities at 3M, and how they were compensated in connection with their work on the Combat Arms Earplugs. The exact information that Plaintiffs seek—that is, further detail regarding employees' roles, contributions to earplug development, and incentives, *see* Motion at 2—is precisely the sort of information that Plaintiffs can determine in a less intrusive way during the witnesses' depositions.

Moreover, Plaintiffs have not even attempted to show that discovery of whatever additional information they seek from employees' personnel files is "not available from other sources." *Alabama & Gulf Coast Ry., LLC v. U.S.*, 2011 WL 1838882, at *4 (S.D. Ala. 2011). Plaintiffs' deficiency is particularly noteworthy where, as here, 3M has already produced over 150,000 documents, much of which contains the very information that Plaintiffs now claim to need.[1] Instead, Plaintiffs argue that *Defendants* cannot show undue burden; but this argument ignores that *Plaintiffs* have not carried *their* burden of showing that production of private, highly sensitive personnel files is necessary because the information is otherwise inaccessible. Contrary to Plaintiffs' assertions, the second, necessary prong of the personnel-files test does not evaluate whether 3M is "a massive, multi-national corporation that generates billions of dollars a year in

---

[1] Plaintiffs' omission of any argument that the information they now seek has *not* already been produced is conspicuous; such unobtainability is precisely what Plaintiffs must show in order to compel discovery of these private, highly sensitive documents.

6

net profit," *see* Motion at 3—this rhetoric only muddles the point. Instead of highlighting 3M's capacity to produce private, highly sensitive information, Plaintiffs must show that such information is "not otherwise readily obtainable," *Coker*, 177 F.R.D. at 685, and "not available from other sources," *Alabama & Gulf Coast Ry., LLC*, 2011 WL 1838882 at *4. They have not done so and thus their request should be denied.

### 3. Well-Established Public Policy Militates Against Plaintiffs' Request.

Finally, the potential harm of releasing the requested personnel files outweighs its possible relevance. "Disclosure of internal [] evaluations would invade the privacy of the employees and provide a disincentive for firms to 'frankly criticize and rate their own performance, for fear that any written evaluations they make might be used against them or their employees in a lawsuit.'" *In re Del-Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 275, 277 (S.D.N.Y. 1994) (citing cases). Here, Plaintiffs have made no showing that their broad request for "Personnel Files" is likely to reveal relevant—let alone "clearly relevant"—information for each witness; rather, it appears that Plaintiffs are merely speculating that the files contain additional, relevant information. But such unfounded speculation outweighs neither the intrusiveness of the request into the privacy of the individual witnesses or 3M, nor the public policy interests in maintaining the confidentiality of personnel files. *Id.*; *accord Coker v. Duke & Co.*, 177 F.R.D. at 685. If speculating that a personnel file may contain relevant information was sufficient, then the heightened burden of *showing* "clear relevance" would have no meaning.

### C. In The Alternative, 3M Will Provide the Court with an *In Camera* Review of the At-Issue Documents.

In Plaintiffs' Third Requests for Production, Plaintiffs defined the "Personnel Files" sought as "documents generally maintained by an individual's supervisor or an individual's employers' human resource department, [] includ[ing] job performance evaluations, self-evaluations, salary

7

and compensation information, and bonus and/or incentive information, relating to that individual's work on 3M Earplugs." Through their Motion, Plaintiffs broadly seek files "***including*** (i) 3M employees' internal roles, involvement, and responsibilities with the 3M Earplugs, as described by them or their superior contemporaneous with their activities, (ii) the attribution, credit, and accomplishments claimed or given to particular 3M employees for various relevant aspects in the development, sale, and monitoring of the 3M Earplugs (including, inter alia, their discovery/testing/creation, managing/deflecting safety or performance problems, or overcoming sales challenges/obstacles), and (iii) the goals, objectives, and financial incentives—personal and corporate—that drove relevant actions, inactions, and decisions with regard to the 3M Earplugs." Motion at 2 (emphasis supplied). Plaintiffs thus broadly personnel file material, even if it does not mention the dual-ended Combat Arms Earplug version 2, provided that those personnel files relate in any way to "financial incentives" that "drove relevant actions, inactions, and decisions with regard to the 3M Earplugs." Motion at 2. But if a given personnel file does not actually mention the dual-ended Combat Arms Earplug version 2, how does one determine whether a given "financial incentive" is one that "drove relevant actions, inactions, and decisions with regard to the 3M Earplugs"? Plaintiffs *assume* that *every* "financial incentive" influences *every* 3M employee's "actions and inactions" with respect to *every* one of 3M's thousands of products. But beyond raw speculation, there is no basis to apply that assumption to *any* witness, let alone *every* witness Plaintiffs seek to depose.

Nonetheless, to the extent the Court is inclined to grant a limited production of personnel file materials, 3M is willing to provide targeted personnel file materials for *in camera* review. 3M proposes that it would leave unredacted: (i) portions of the personnel files that specifically mention the dual-ended Combat Arms Earplugs version 2 (or other terms for the same product); and (ii)

8

portions of the personnel files that do not specifically mention the term dual-ended Combat Arms Earplugs version 2 (or other terms for the product) but nonetheless specifically relate to work on the dual-ended Combat Arms Earplugs version 2.

### III.   CONCLUSION

Plaintiffs have failed to specifically demonstrate *either* clear relevance or unobtainability—both of which are necessary to the survival of Plaintiffs' Motion—or to address why their request should override well-established privacy considerations.  3M therefore respectfully requests that this Court deny Plaintiffs' Motion.

Dated:  November 1, 2019

Respectfully submitted,

*/s/ Kimberly Branscome*

Kimberly Branscome
Kimberly.branscome@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Email:  kimberly.branscome@kirkland.com

*Attorneys for Defendants 3M Company, 3 M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC and Aearo, LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 1, 2019 I caused the foregoing titled document to be filed with the Clerk of the court using the CM/ECF system, which will send notification to all counsel of record.

*/s/Kimberly Branscome*
Kimberly Branscome