# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* | ) | Magistrate Judge Gary R. Jones |

# PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND
# MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF ISSUES ........................................................................1

III.  ARGUMENT.........................................................................................4

   A.  Legal Standard...................................................................................4

   B.  Factual & Procedural Background ....................................................5

   C.  Exemplar CAEv2 Products are Relevant to this Litigation............8

IV.   CONCLUSION ...................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Ford v. Gov't Employees Ins. Co.*,
2015 WL 11109373, at *1 (N.D. Fla. Apr. 3, 2015) ...............................................4

*Holcombe v. Advanced Integration Tech.,*
2018 WL 3819974, at *5 (E.D. Tex. Aug. 10, 2018) ............................................9

*In re Traysol Prod. Liab. Litig.*,
2009 WL 936597, at *2 (S.D. Fla. Apr. 7, 2009) ..................................................8

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
662 F.3d 1292, 1306 (11th Cir. 2011) ..................................................................4

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 351 (1978)) ...................................................................................4

*Southern Ry. Co. v. Lanham*,
403 F.2d 119 (5th Cir. 1968)) ..............................................................................8

*Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*,
2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017). ..........................................5

*Ward v. Estaleiro Itajai S/A*,
541 F. Supp. 2d 1344, 1355 (S.D. Fla. 2008) .......................................................8

*Wrangen v. Penn. Lumbermans Mut. Ins. Co*.,
593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) .......................................................8

## Other Authorities

Case Management Order No. 6, Dkt. 836...................................................................6

Transcript of Sixth Case Management Conference, Dkt. No 840. ...........................6

**Rules**

Federal Rule of Civil Procedure 26 ...................................................................4

Fed. R. Civ. P. 26(b)(1)............................................................................4, 8

Federal Rule of Civil Procedure 34(a) ............................................................4

Fed. R. Civ. P. 37(a)(3)(B) ............................................................................4

## I.   INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Case Management Order No. 6, Plaintiffs submit this memorandum in support of their Motion to Compel Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC (collectively, "3M" or "Defendants") to produce nonlinear dual-ended Combat Arms Earplug version 2 ("CAEv2") products and/or nonlinear dual-ended ARC Earplug products, or other substantial equivalent of the CAEv2 Earplug product(s) along with the original product packaging and instructions, pursuant to Plaintiffs' Third Requests for Production.[1] *See* Ex. 1 at ¶ 12.

## II.   SUMMARY OF ISSUES

The efficacy, characteristics, labeling, and instructions for use of 3M's Combat Arms Earplug Version 2 (and its substantial equivalents) (collectively referred to as "CAEv2"), are of the most central importance in this case.  On October 14, 2019, in response to Plaintiffs' Third Requests, Defendants **agreed** to "provide, to the extent available, an exemplar of each version of the Combat Arms Earplugs, and the sealed packaging and instructions that accompanied each exemplar…" Ex. 2

---

[1] Plaintiffs' Third Requests are attached as Exhibit 1; Defendants' Responses to Plaintiffs' Third Requests are attached as Exhibit 2; Ex. 1 at ¶ 12.

at 6 - 8. Defendants represented that they were "investigating whether and how many sealed exemplars of each version of the 3M Earplugs exist[ed]." *Id*.

Since then, Defendants have made no meaningful efforts towards production of these exemplar products despite their repeated representations that they are "investigating" the number of exemplars products in their possession, custody, or control.

Defendants manufactured and sold millions of pairs of CAEv2 earplugs over the course of approximately two decades – indeed, as of January 13, 2016, 3M possessed over 10,000 pairs of the CAEv2. REDACTED - FILED UNDER SEAL

As the CAEv2 had been discontinued in October 2015, it stands to reason that those exemplars, and potentially tens of thousands of others, still exist somewhere within 3M.

Defendants are obligated under the Federal Rules to produce the exemplars they possess for the following reasons. First, the exemplars sought are directly relevant not only to 3M's affirmative defenses, but also to Plaintiffs' claims that the CAEv2 was defectively designed and manufactured, improperly tested, and deceptively marketed and sold.

As demonstrated below, exemplar tangible products, like the ones sought here are routinely used at trial and through depositions to help establish or refute these points in products liability actions.

Second, the production is proportionate to the needs of the case. 3M, a massive, multi-national corporation that generates billions of dollars a year in net profit, is alleged to have promoted and sold these defective earplugs to the military and others for well over a decade, causing tens of thousands of service members to suffer serious hearing damage. Production of such exemplar products will not raise any unreasonable burden, as documents from its own files indicate that 3M maintained over 10,000 units of these products as of January 2016, and should have the requested exemplars readily available. Further, Plaintiffs' Counsel has offered to compensate 3M for the exemplars, and to return any unused products to 3M upon resolution of the matters at issue. Despite objecting in their response to Plaintiffs' requests based upon purported burden, Defendants have not presented any evidence supporting that claim. Conversely, Plaintiffs will be significantly prejudiced if not given exemplars to analyze and test the CAEv2 to further investigate its properties and alleged defects – access that would put Plaintiffs on more equal footing with 3M, which has had the opportunity to test this product at will for decades.

The exemplar products are highly relevant to all matters at issue in this case, and the burden on Defendants of producing them is minuscule in comparison to the

broader needs of the case.

Plaintiffs respectfully request this Court grant Plaintiffs' Motion to Compel, and Order Defendants to produce the exemplar products.

## III.   ARGUMENT

### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable," *id.*, and "[c]ourts construe relevancy 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Ford v. Gov't Employees Ins. Co.*, 2015 WL 11109373, at *1 (N.D. Fla. Apr. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 34(a) authorizes the inspection, sampling, or testing of any tangible thing within the scope of relevance.

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection," Fed. R. Civ. P. 37(a)(3)(B), and the Court has "broad discretion" to compel such discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).  The party resisting discovery

has the burden of proving that the requested discovery is either irrelevant, or of such marginal relevance that the potential harm occasioned by discovery outweighs the ordinary presumption in favor of broad disclosure. *See Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017).

Production of tangible exemplar products, such as those requested by Plaintiffs, is a common practice in personal injury and products liability litigation, and Plaintiffs now move to compel their production. Over the

## B.    Factual & Procedural Background

Plaintiffs' Third Requests for Production, served on September 12, 2019, included several requests sought production of exemplar versions of the CAEv2, including the sealed packaging and instructions that accompanied each commercial unit. Ex. 1 at ¶ 69-71. On October 14, 2019, Defendants **agreed** to "provide, to the extent available, an exemplar of each version of the Combat Arms Earplugs, and the sealed packaging and instructions that accompanied each exemplar," and claimed to be "investigating whether and how many sealed exemplars of each version of the 3M Earplugs exist." *Id.*

The Parties met and conferred on this issue on November 15, 2019, and on November 20, 2019, Plaintiffs reiterated the need for exemplars and modified their request (1) increasing to the volume sought to four boxes of fifty earplugs, for a total

of 200 individual pairs, and (2) offering to compensate Defendants for the cost of the earplugs.

At the Case Management Conference before this Court on November 22, 2019, Defense counsel represented that they had "located 15 pairs of the Version 2 earplugs," but that Defendants were "not willing to hand those over." *See* Transcript of Sixth Case Management Conference, Dkt. No 840. On November 25, 2019, this Court issued Case Management Order No. 6, which ordered Plaintiffs to file a Motion to Compel if the issue of exemplar products was not resolved. *See* Case Management Order No. 6, Dkt. 836.  In the Parties' December 4, 2019 meet-and-confer, Defense Counsel represented that they had done no further investigation and had no additional updates concerning the status of exemplar products.

Most troublingly, at the Case Management Conference and in conversations since, 3M has inappropriately attempted to shift the burden of producing exemplars to individual Plaintiff servicemembers – which is plainly not an adequate solution. Most fundamentally, Defendants' have objected to Plaintiffs' use of Plaintiff-provided exemplars on chain-of-custody grounds.  Indeed, 3M's own counsel and employees have challenged the providence of CAEv2s found outside of 3M's custody and control – highlighting the need for 3M to produce its own exemplars.

At the fact witness deposition of Douglas Moses, taken on the date this Motion was filed, Mr. Moses expressed concern that what appeared to be a CAEv2 earplug

brought to his deposition could have been one of many counterfeit plugs "made in China" and assembled using different plastics. [2]  This testimony was preceded by a statement on the deposition record by 3M's counsel expressing similar doubts about the exemplar's sourcing.

Chain of custody issues aside, it is baffling that 3M is now attempting to deflect the preservation of exemplar CAEv2 products—a product that 3M itself manufactured, tested, and sold in mass quantities—onto Plaintiffs. Requiring Plaintiffs to produce individual CAEv2 presents an extraordinary burden on individual servicemembers and their counsel, while the burden on 3M of producing exemplars – to the extent it properly preserved those exemplars – is minimal.  3M's attempted deflection of this issue does not absolve 3M of its duty to preserve evidence that it knew or reasonably should have known was relevant to matters in litigation or where litigation was reasonably foreseeable.

Plaintiff leadership has also attempted to obtain these exemplars through third party discovery. Plaintiffs' counsel has made contact with New Dynamics, the company that manufactured the earplugs during the later years of the CAEv2's sales, and counsel for New Dynamics has represented that that entity has a *single pair* of the CAEv2 in unopened condition. Attempts have also been made to request

---

[2] As of the time of filing this Motion, the deposition of Doug Moses is ongoing, and accordingly, Plaintiffs do not have a final deposition transcript at this time. Plaintiffs will supplement this filing with the relevant excepts as soon as the transcript is produced.

exemplars from the Department of Defense, and the parties are awaiting information from the Department of Defense concerning the existence of any exemplar products. Plaintiffs are hopeful that additional investigation by the Defendants will lead to a resolution of this issue.

## C.     Exemplar CAEv2 Products are Relevant to this Litigation

The production of exemplar products is integral to the claims and defenses at issue in this case, and there is no substitute for them.   The exemplars may reveal information that testimony may not, which is why plaintiffs are entitled to testimonial, document, and tangible discovery.  *In re Traysol Prod. Liab. Litig.*, 2009 WL 936597, at *2 (S.D. Fla. Apr. 7, 2009) (citing *Southern Ry. Co. v. Lanham*, 403 F.2d 119 (5th Cir. 1968)).

 "[T]he procedure for discovery in federal court, as evidenced by Rule 26(b)(1), is aimed at the broad and liberal discovery of all relevant facts to bring everything to light before the trier of fact." *Ward v. Estaleiro Itajai S/A*, 541 F. Supp. 2d 1344, 1355 (S.D. Fla. 2008); *see also Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) (all potentially relevant materials are discoverable "unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action.").

The exemplars are highly relevant, and therefore should be produced unless

Defendants can show that doing so is disproportional to the needs of the case – which they cannot.

Production of exemplar products is routine in products liability litigation, including in the multi-district litigation context, as evidenced by the fact that the issue is rarely litigated, because such production is rarely challenged. Nonetheless, Plaintiffs have provided examples of Orders from various MDL and other courts requiring production of exemplar products. *See* Ex. 4.

3M has not offered, and cannot offer, any details substantiating their purported burden in producing exemplar products. The number of claimants and the scope of potential damages at issue in this case justify the minimal effort it should take to produce these exemplars, if properly preserved. *Holcombe v. Advanced Integration Tech.* 2018 WL 3819974, at *5 (E.D. Tex. Aug. 10, 2018) (granting discovery as claimed damages of $1,952,835 is "large," and burden of producing documents was "small, if not negligible" for large defendant). Additionally, Plaintiffs have offered to compensate Defendants for the exemplar products, to further ameliorate whatever financial burden Defendants perceive.

Production of the tangible exemplar products sought by Plaintiffs will be directly probative of the injuries cause by the expressly identified product, the 3M Earplugs. This production presents a minimal burden on Defendants, and Plaintiffs respectfully request that it be compelled by this Court.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that this Court enter an order compelling Defendants to produce four boxes of fifty exemplar products, complete with original sealed packaging and instructions, in accordance with Plaintiffs' Third Requests for Production.

Dated: December 5, 2019

**{SIGNATURES ON FOLLOWING PAGE}**

Respectfully submitted,

*/s/ Shelley V. Hutson*
Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2019, I caused the foregoing Motion to Compel Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Shelley V. Hutson*

**CERTIFICATE OF CONFERENCE**

I certify that I have complied with the conference requirement pursuant to the Court's Local Rule 7.1(B). Through the course of the past several months, the parties have met and conferred on this matter on numerous occasions, including but not limited to: November 15, 2019; November 20, 2019; November 22, 2019; November 26, 2019; and December 4, 2019. Through the course of said meet and confers on this issue, Defense Counsel has confirmed their willingness to provide exemplars, and has continued to represent their need to investigate further as to the amount of exemplar products in 3M's possession, custody, or control. To date, as far as Plaintiffs are aware, said investigation has yet to commence.

**CERTIFICATE OF WORD COUNT**

I certify that this Plaintiffs' Memorandum to Plaintiffs' Motion to Compel contains 2,425 words per my word-processing system, and including all words exhibited within Plaintiffs' Certificates of Service, Conference, and Word Amount.