



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ETHICON PHYSIOMESH FLEXIBLE COMPOSITE HERNIA MESH PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2728<br><br>CIVIL ACTION NO.<br>1:17-md-02782-RWS |
| THIS DOCUMENT RELATES TO ALL CASES | |

## ORDER REGARDING PRODUCTION OF ETHICON PHYSIOMESH™ FLEXIBLE COMPOSITE MESH EXEMPLARS

WHEREAS, plaintiffs in the above-captioned MDL have made personal injury claims regarding Defendant Ethicon's PHYSIOMESH™ Flexible Composite Mesh ("PHYSIOMESH™") and have requested that Ethicon produce exemplars of PHYSIOMESH™ solely for use in this MDL;

WHEREAS, there are as of the date of this Agreed Order more than 1,500 plaintiffs who have filed lawsuits in this MDL involving PHYSIOMESH™;

WHEREAS, there is a limited number of exemplar PHYSIOMESH™ devices as PHYSIOMESH™ is no longer manufactured;

WHEREFORE, the parties hereby agree, and the Court ORDERS as follows:

1

IT IS AGREED AND ORDERED THAT Ethicon shall produce within thirty days of the entry of this Order to the MDL Plaintiffs' Steering Committee the following number of exemplar devices for the benefit of all plaintiffs in the MDL:

| PHYSIOMESH™ Product Code | Number of Exemplars |
|---|---|
| PHY0715R | 8 |
| PHY1015V | 8 |
| PHY1515Q | 8 |
| PHY1520R | 8 |
| PHY1520V | 8 |
| PHY2025V | 8 |
| PHY2030R | 8 |
| PHY2535V | 8 |
| PHY3035R | 8 |
| PHY3050R | 8 |

IT IS FURTHER AGREED AND ORDERED THAT Plaintiffs are permitted to conduct destructive testing of the PHYSIOMESH™ exemplars provided pursuant to this Order; however, because there are limited exemplars available to the litigants, Plaintiffs are expected to preserve some of these

exemplars so they can be used for other purposes, including at depositions, hearings, and trial.

IT IS FURTHER AGREED AND ORDERED THAT the exemplars provided pursuant to this order shall, at the sole discretion of the Plaintiffs' Steering Committee (or its designee(s)), be made available to individual plaintiff's counsel with cases in the MDL or in cases remanded from the MDL for use at depositions, hearings, trials or other purposes.

IT IS FURTHER AGREED AND ORDERED THAT the individual plaintiffs in the MDL shall not request exemplars from the Defendants and requests for additional exemplars in this MDL proceeding, if any, may be submitted only by the Plaintiffs' Steering Committee (or its designee(s)), except upon motion granted by the Court for good cause shown.

IT IS FURTHER AGREED AND ORDERED THAT the exemplars (and any remaining portions of exemplars that were subject to testing) will be returned to counsel for Ethicon at the conclusion of proceedings this MDL No. 2728.

IT IS FURTHER AGREED AND ORDERED THAT nothing in this order waives or impacts any parties' right to later seek a ruling from the Court concerning (1) production of additional exemplars, or (2) the use of any exemplar, including limits on the use of exemplars at trial.

SO ORDERED, this 18th day of Dec., 2018

_____
RICHARD W. STORY
United States District Judge



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: STRYKER REJUVENATE AND
ABG II HIP IMPLANT PRODUCTS
LIABILITY LITIGATION

MDL No. 13-2441 (DWF/FLN)

This Document Relates to ALL ACTIONS

## JOINT REPORT AND AGENDA FOR JUNE 12, 2014 STATUS CONFERENCE

Pursuant to Pretrial Order No. 3, in advance of the June 12, 2014 Status Conference, the parties submit this Joint Status Conference Report, with a proposed Agenda attached hereto as **Exhibit A**.

**1.      Report on Filings, Judicial Contacts, and State Court Litigation**

There are approximately 1,040 cases filed in or on their way to the MDL, 1,178 cases filed in the New Jersey coordinated proceedings, 61 cases filed in Florida, and approximately 23 additional cases filed in California, Indiana, Michigan, Oregon. Attached hereto as **Exhibit B** are summaries of the cases filed by law firm and venue.

**2.      Report on Discovery**

   **a.      PPDs and PFSs**

HOC has brought a motion to compel compliance with PTO No. 8 with regard to deficient PFS in 242 of the 490 cases originally eligible for inclusion in the bellwether case pool. More broadly, approximately 699 cases were filed in or transferred to the MDL on or before April 4, 2014. PPDs are overdue without a requested extension in 29

1

of these cases. PFSs are overdue without a requested extension in 81 of these cases. Defense Counsel is reviewing served PPDs and PFSs to determine whether they are properly completed, and provide medical records and authorizations. The PLCC and Plaintiffs' Liaison Counsel are reviewing their records, comparing with information provided by Defendants, and also working with plaintiffs' counsel to promote compliance.

b.  **Custodian Files**

The parties' agreed upon plan to complete production of custodian files for 26 people identified in HOC's organizational charts that were meaningfully involved with the products at issue in on pace to be completed by July 15, 2014.

c.  **Exemplars**

The parties reached an agreement on the production of exemplars devices and HOC has completed the production of requested exemplars devices to both the PLCC and attorneys from the New Jersey MCL. PLCC requested voluntary production of an impaction instrument. At HOC's request, PLCC will serve a formal discovery request seeking the impacting instrument and any other additional surgical instruments it seeks.

d.  **Depositions**

PLCC has noticed the following depositions:

1. Deposition of a certain HOC Senior Research Engineer
2. Deposition of a certain HOC Senior Project Engineer
3. 30(b)(6) Deposition Regarding Document Retention
4. 30(b)(6) Deposition Regarding FDA/510(k)

    5. 30(b)(6) Deposition Regarding Marketing

    6. 30(b)(6) Deposition Regarding Device Failure Reports

    7. 30(b)(6) Deposition Regarding Post-Recall Investigation/Analysis

PLCC has filed these discovery requests in the MDL docket. The depositions are noticed for dates in June and July. The parties are conferring on a deposition protocol, along with scheduling and related issues.

    **e.**     **Suspension of Certain PFS Deadlines**

The Court entered stipulated Amended PTO No. 8, which suspends the fact sheet obligations in cases in which plaintiff has not undergone a revision surgery.

**3.**     **Report on ADR**

The parties continue to have success resolving cases through mediation. In the MDL, the parties have mediated 11 cases, and have had near 100 percent success in resolving them. In the New Jersey MCL, the parties have achieved similar success.

**4.**     **Selected Disputed Issues**

The parties have filed and briefed two motions to compel discovery. HOC has moved to compel compliance with PTO No. 8 regarding PFS, and PLCC has moved to compel reproduction of certain documents without redactions. The parties will be prepared to argue the motions at the June 12, 2014 Status Conference.

Defendants seek clarification of certain terms, obligations, and prohibitions in the Court's Order Establishing a Common Benefit Fee and Expense Fund (CBO). (*See* Doc. No. 327.) PLCC asserts the CBO does not need clarification, and the conferral process is

not complete. Defendants disagree and will submit a letter to the Court identifying the issues.

Dated: June 9, 2014

| *Lead Counsel Committee Chairperson* | *Defendants' Lead Counsel* |
|---|---|
| /s/ Peter J. Flowers<br>Peter J. Flowers<br>MEYERS & FLOWERS<br>225 W. Wacker Drive, Suite 1515<br>Chicago, IL 60606<br>Phone: (312) 214-1017<br>Email: pjf@meyers-flowers.com | /s/ Ralph Campillo<br>Ralph Campillo<br>Karen Woodward<br>SEDGWICK, LLP<br>801 S. Figueroa St., 19th Floor<br>Los Angeles, CA 90017<br>Tel: (213) 426-6900<br>Fax: (213) 426-6921<br>E-mail:<br>ralph.campillo@sedgwicklaw.com<br>Karen.woodward@sedgwicklaw.com |

*Plaintiffs' Lead Counsel Committee*

/s/ Annesley DeGaris
Annesley H. DeGaris
CORY WATSON CROWDER &
DEGARIS, PC
2131 Magnolia Avenue
Birmingham, AL 35205
Phone: (205) 328-2200
Email: adegaris@cwcd.com

/s/Wendy R. Fleishman
Wendy R. Fleishman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Phone: (212) 355-9500
Email: wfleishman@lchb.com

/s/ Ben W. Gordon, Jr.
Ben W. Gordon
LEVIN PAPANTONIO, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: (850) 435-7090
Email: bgordon@levinlaw.com

/s/ Eric Kennedy
R. Eric Kennedy
WEISMAN, KENNEDY & BERRIS
CO., L.P.A.
1600 Midland Building
101 Prospect Avenue West
Cleveland, OH 44115
Phone: (216) 781-1111
Email: ekennedy@weismanlaw.com

/s/ Genevieve M. Zimmerman
Genevieve M. Zimmerman (MN#330292)
ZIMMERMAN REED P.L.L.P.
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 341-0400
Fax: (612) 341-0844
Email: Genevieve.Zimmerman@zimmreed.com

5

**EXHIBIT 4C**

FILED

JUN 26 2017

RACHELLE L. HARZ
J.S.C.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY

CASE NO.   624
MASTER DOCKET
NO.: BER-L-_____-____

IN RE STRYKER LFIT CoCr V40
FEMORAL HEADS HIP IMPLANT
LITIGATION

CIVIL ACTION
CASE MANAGEMENT ORDER #1

All prior orders remain in full force
and effect except as modified by this
Order

**This Matter** having been assigned to the Honorable Rachelle L. Harz, J.S.C., pursuant to the Supreme Court's Order of May 16, 2017, designating this matter for Multicounty Litigation Status ("MCL") as Stryker LFIT CoCR V40 Femoral Heads Implant Litigation (hereinafter referred to as "Stryker LFIT") [*of note is the fact that the Federal Joint Panel on Multidistrict Litigation has assigned the MDL involving the same type of implants as this matter to Judge Indira Talwani in the District of Massachusetts*], and the Court having prepared the proposed agenda, and conducted an initial case management conference on June 21, 2017, counsel having appeared, and for good cause shown and the reasons set forth on the record,

IT IS on this 26th day of June 2017,

**ORDERED,**

### I. ORGANIZATION OF COUNSEL

1. The Court having reviewed the Applications for Lead/liaison Counsel Appointments submitted to date pursuant to the prior June 2, 2017 Amended Initial Order

for Case Management, and a consensus having been noted, the following appointments are hereby made:

Plaintiffs' Liaison/Lead Counsel: Ellen Relkin, Weitz & Luxenberg, P.C. (NJ).

Plaintiffs' Executive Committee: Ellen Relkin, Weitz & Luxenberg, P.C. (NJ); Thomas Anapol, Anapol Weiss (PA); C. Calvin Warriner, Searcy Denney, et al. (FL); and Michael McGlamry of Pope McGlamry (GA).

Defense Liaison/Lead Counsel: Kim Catullo, Gibbons, P.C. (NJ)

Defense Executive Committee: Kim Catullo, Gibbons, P.C. (NJ); Gene Williams, Shook Hardy & Bacon, LLP (TX); and Heidi Hubbard, Williams & Connolly, LLP (DC).

2. The Court notes that should other Plaintiffs' counsel wish to seek a leadership position of some type in this litigation then they may contact Plaintiffs' Leadership as referenced above, or the Court. Also should the Court or counsel deem it appropriate to consider additional leadership committees then either counsel or the Court *sua sponte* may raise same.

## II. COORDINATION WITH THE MULTIDISTRICT LITIGATION

1. The Court expects that counsel for the parties shall coordinate the MCL and MDL litigation activities. Additionally, the Court intends to coordinate the NJ-MCL litigation with Judge Talwani in the MDL.

### III. CASE QUESTIONNAIRES

1. The Case Questionnaire referenced in the Court's prior June 2, 2017 Amended Initial Order for Case Management is hereby amended to update the case

caption to reflect the MCL Caption *(see attached, which shall be posted on the Court's official website also)*.

2. The deadline for submission of updated or new Case Questionnaires remains in effect as set forth in the June 2, 2017 Order – sixty (60) days from June 2, 2017 (*August 1, 2017*), or sixty (60) days from the filing of a responsive pleading for complaints filed subsequent to the June 2, 2017, whichever is later. Counsel are expected to comply with same.

3. The completed Case Questionnaire and attached documentation shall be sent to Lead/Liaison Counsel for the Parties as follows:

Plaintiffs' Liaison/Lead Counsel:	Ellen Relkin
Weitz & Luxenberg, P.C.
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
Ph: 856-755-1115
Fax: 856-755-1995
Email: erelkin@weitzlux.com

Defense Liaison/Lead Counsel:	Kim Catullo
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
Ph: 973-596-4815
Fax: 973-639-6280
Email: kcatullo@gibbonslaw.com

4. For those matters in which Case Questionnaires have previously been served on defense counsel pursuant to Judge Martinotti's January 7, 2016 Order, defense counsel shall provide copies to Plaintiffs' Liaison counsel prior to the next case management conference.

## IV. CASE MANAGEMENT

1. The Court shall conduct a case management conference on July 31, 2017 at 2PM and thereafter monthly beginning in September 2017, unless otherwise ordered. Liaison/lead counsel and the Executive Committee members shall be present for each conference one hour before the scheduled time.

2. With the exception of Liaison/lead counsel for the parties, counsel is permitted to appear telephonically for purposes of the case management conference. Lead/liaison counsel will circulate a call in number to all counsel the day prior to the conference. In order to have an appearance noted on the record, it is counsel's responsibility to email the respective Liaison/lead counsel and the court reporter at least one hour before the proceeding with your name, firm, and the represented party(ies) and case docket number(s), indicating that you intend to appear by telephone. In addition, counsel must confirm your appearance with the respective Liaison/lead counsel immediately following the proceeding to confirm that you, in fact, did participate telephonically. Absent your compliance with all of the above, your appearance will not be noted in the record.

3. For purposes of the June 21, 2017 case management conference, the Court set the proposed agenda. However, for future case management conferences, the parties shall confer and provide a proposed agenda seven (7) days in advance of the scheduled conference so as to allow the Court ample time to prepare a draft Case Management Order, which will be finalized at the completion of the scheduled conference.

## V.     PROTECTIVE ORDER

1.     Defendant liaison counsel shall provide a draft Protective Order to Plaintiffs' liaison counsel for use in the Stryker LFIT CoCR V40 Femoral Heads Implant Litigation by June 29, 2017. Counsel shall thereafter confer regarding same, and advise the Court of the status of the proposed Order in advance of the next scheduled case management conference.

2.     For purposes of coordination, the Court expects that the parties will confer in good faith in an attempt to agree upon a Protective Order that is common to both the MCL and the MDL.

## VI.    DISCOVERY

1.     Plaintiffs have indicated an intention to serve general written discovery requests on Defendant. Plaintiffs' Liaison/lead counsel shall send a copy of such requests to the Court with a copy to Defendants' Liaison/lead counsel and refrain from formal service of same until further direction from the Court.

2.     The parties shall confer in good faith regarding the development of long/short form pleadings and Plaintiff and Defense Fact Sheets.

3.     The preservation obligations previously set forth in the Court's prior June 2, 2017 Amended Initial Order for Case Management remain in effect and shall continue to remain in effect hereafter unless otherwise ordered. The parties were reminded of their continuing preservation obligations, including the obligation to secure and retain explanted LFIT V40 CoCr devices (and accompanying explanted components) in either parties' possession or control. ==Plaintiffs have also specifically raised a request for exemplars of the recalled product lots, and Defendant has stated their acknowledgement==

of the preservation obligation to the extent recalled products exist. Plaintiffs also raised a request for representative exemplars of non-recalled products in the litigation. The Court has asked Defendant to provide an update regarding same at the next case management conference. Also, the parties are to continue to meet and confer regarding preservation of evidence, including but not limited to the preservation of exemplars, explanted devices, pathology, medical records and other discovery materials.

### VII.   **MISCELLANEOUS**

1.   Defendant has proposed the concept of the parties conducting a "Product Day" for the Court's benefit early in the litigation. Plaintiffs have opposed it at this juncture. The Court will take this proposal under advisement and confer with the MDL Court in this regard.

2.   The Court will provide Liaison/lead counsel with a list of the current cases included in this MCL at this time, and counsel shall review same and confer regarding the accuracy and completeness of the list in advance of the next case management conference.

3.   A copy of this Order and any subsequent Orders of the Court will be posted on the official Judiciary Web Site.

*/s/ Rachelle L. Harz*
Hon. Rachelle L. Harz, J.S.C.



2019 WL 1763237
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida, Ocala Division.

Winston RAMKELAWAN et al., Plaintiffs,
v.
GLOBUS MEDICAL INC., et al., Defendants.

Case No: 5:18-cv-100-Oc-JSM-PRL
|
Signed 04/22/2019

**Attorneys and Law Firms**

[Andrew Parker Felix](), Steven E. Nauman, Morgan & Morgan, PA, Orlando, FL, for Plaintiffs.

[Denise Brinker Bense](), Pro Hac Vice, [Cozen O'Connor](), West Conshohocken, PA, [James Anthony Gale](), [Cozen O'Connor](), David Martin Stahl, Feldman Gale, PA, Miami, FL, for Defendants.

**ORDER**

[PHILIP R. LAMMENS](), United States Magistrate Judge

 *1  In this products liability action, Plaintiffs bring suit for personal injuries that Plaintiff Winston Ramkelawan allegedly sustained after Defendants' artificial disc (the "SECURE-C") was implanted into his spine, as well as related claims on behalf of Plaintiff's wife. (Doc. 36). This case is currently before the Court for consideration of two discovery motions: (1) Defendants' motion to compel pre-suit communications and discovery with third parties relating to two prior lawsuits (Doc. 76); and (2) Plaintiffs' motion to compel production of exemplars and motion for sanctions (Doc. 78). Both motions are ripe for decision and, for the reasons explained below, both motions are due to be denied.

**I. Defendants' Motion to Compel Pre-suit Communications and Discovery**

The first motion before the Court is Defendants' motion to compel pre-suit communications and discovery. This discovery dispute arises from Defendants' requests for certain pre-suit documents created in two lawsuits filed by Plaintiffs prior to filing the instant product liability action. The two suits included Plaintiff's allegations of medical malpractice against Dr. Barry Kaplan and his practice relating to the implantation of the SECURE-C, as well as Plaintiff's allegations of nursing home negligence against Life Care Center of Ocala. Plaintiffs represent that both lawsuits were ultimately resolved.

During discovery in this case, Plaintiffs contend that, among other voluminous documents, they inadvertently disclosed the pre-suit deposition of Dr. Barry Kaplan, which is protected as privileged as pre-suit investigation materials under Florida law. Defendants, however, contend that they are entitled to Dr. Kaplan's deposition, as well as other pre-suit investigation documents in the two suits against Dr. Kaplan and Life Care Center of Ocala, and that the privilege asserted by Plaintiffs does not apply or was waived.

Plaintiffs have the initial burden of establishing that a privilege applies, after which Defendants have the burden of proving that the privilege was waived. *[MapleWood Partners, L.P. v. Indian Harbor Ins. Co.]()*, 295 F.R.D. 550, 584 (S.D. Fla. 2013); *[Hershey Co. v. Cadiz]()*, Case No. 05-60999-civ, 2006 WL 8431510, at *2 (S.D. Fla. Aug. 24, 2006).

1. Privilege

Plaintiffs submit that the documents that Defendants seek are protected as pre-suit investigation material under [Florida statute sections 400.0233(5)](), [766.106(5)](), and [766.205(4)](). Defendants argue that they are not an "opposing party" under the statutes, and that therefore the pre-suit investigation material is discoverable to them. However, both the plain language of the statutes and their application by Florida courts indicate that Defendants are an opposing party under those statutes.

From the language of the statute, it seems clear that the legislature contemplated that an opposing party blocked from discovering pre-suit materials need not have been an opposing party at the time the pre-suit materials were generated. The statutes state that such pre-suit materials are not "discoverable or admissible in *any civil action* for any purpose by the opposing party." [Fla. Stat. § 400.0233](), [766.106](), [766.205](). The word *any* broadens the scope of the civil action in which the opposing party is not able to discover pre-suit materials. To reach Defendants' construction of the statutes would require the language to somehow limit the civil action to only those resulting from the pre-suit investigation, which the language in these statutes does not do.

**\*2** This reading of the statute is bolstered by Florida and Middle District of Florida case law applying the statutes. In *Variety Children's Hosp. v. Boice*, a hospital was served with a notice of intent to initiate litigation by the plaintiff in a different litigation against a doctor. 27 So. 3d 788, 789 (Fla. 3d DCA 2010). On the same day, the same plaintiff requested pre-suit investigation materials from the hospital. *Id.* The plaintiff argued, and the court agreed, that the hospital was a non-party to the plaintiff's litigation. *Id.* at 789–90. However, because the hospital was going to be made a party in the plaintiff's lawsuit, the court applied section 766.205(4) to bar the plaintiff from discovering the hospital's pre-suit materials. *Id.* In the instant case, Defendants' argument is even weaker than the plaintiff's argument in *Boice* because in this case, Defendants are currently an opposing party to Plaintiffs—whereas in *Boice*, the hospital was only a future opposing party to the plaintiff.

Defendants rely on *Adventist Health* for the argument that Plaintiffs' presuit material is discoverable because it was prepared in a different case. *Adventist Health Sys./Sunbelt, Inc. v. Watkins*, 675 So. 2d 1051 (Fla. 5th DCA 1996). However, *Adventist Health* is distinguishable from the instant case and suggests that the material Defendants seek is not discoverable. *Id.* In that case, the court determined the relationship of the parties based on the patient referred to in the pre-suit material. *Id.* at 1052. Because the patient in the pre-suit material was not the plaintiff—and was not otherwise a party in the case—the hospital was not an opposing party to the holder of the privilege. *Id.* Simply put, section 766.106(5) "only protects the respective parties' work product generated in their pre-suit screening process." *Id.* In the instant case, Plaintiffs are a party in the litigation and they are also the subject of the pre-suit investigation materials. That Plaintiffs settled with another party does not mean that their pre-suit material was generated in "an unrelated, separate medical malpractice case" under *Adventist Health*. *Id.*

This Court has also acknowledged that the statutes at issue protect pre-suit materials from discovery even where the pre-suit investigation resulted in a settlement with a party other than the current opposing party. *Bonilla v. United States*, Case No. 6:08-cv-1443, 2009 WL 10670016, at \*2 (M.D. Fla. May 4, 2009) (reasoning that the settlement agreement itself would be discoverable, but not the "actual pre-suit 'statements, discussions, written documents, reports, or other work product' "). Thus, courts look at the ultimate relationship of the parties to determine whether they are "opposing" under the statutes, not the relationship of the parties at the time the pre-suit materials were created. With this understanding, the Court concludes that Defendants are an opposing party to Plaintiffs, and thus any material that Plaintiffs generated in its pre-suit investigation is privileged.

Defendants' remaining arguments on this point are unpersuasive. In arguing the significance of seeking the discovery of documents concerning completed settlements rather than documents concerning ongoing negotiations, Defendants rely upon a case which explicitly does not consider privilege. *U.S. v. Am. Soc. Of Composers, Authors, & Publishers*, Case No. civ. 13-95, 1996 WL 157523, at \*1 (S.D.N.Y. Apr. 3, 1996). Also, Defendants cannot compel production under section 766.203(4) where the qualifications of the expert are not at issue. *See Morris v. Muniz*, 252 So. 3d 1143, 1158–59 (Fla. 2018).

### 2. Waiver

Defendants argue that even if the pre-suit investigation privilege applies to the documents they seek, Plaintiffs waived their privilege by producing the pre-suit deposition of Dr. Kaplan. First, Defendants suggest that Plaintiffs waived their privilege by failing to raise a timely and specific objection to Defendants' first request to produce. However, it is not clear that Defendants even asked for privileged material in their first request to produce. Furthermore, when Defendants did ask for privileged material in their October 26, 2018 email and in their November 5, 2018 third request to produce, it appears that Plaintiffs' December 11, 2018 response raised specific objections and was not untimely. [1]

**\*3** Further, Plaintiffs assert that their disclosure of Dr. Kaplan's pre-suit deposition was inadvertent, while Defendants argue that the disclosure was voluntary and waived any privilege. Florida courts consider five factors in determining whether a disclosure was inadvertent: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error. *Lightbourne v. McCollum*, 969 So. 2d 326, 333 n.6 (Fla. 2007); *Gen. Motors Corp. v. McGee*, 837 So. 2d 1010, 1040 (Fla. 4th DCA 2002).

Although Plaintiffs concede that they could have taken more precautions to prevent inadvertent disclosure, the remaining factors weigh in Plaintiffs' favor. Indeed, the number of inadvertent disclosures weighs strongly in favor of Plaintiffs, as they made only one inadvertent disclosure. The extent of the disclosure again weighs strongly in favor of Plaintiffs, as the disclosure consisted of a single 35-page document out of over 20,000 pages of documents that Plaintiffs produced. The delay and rectification factor overall weighs in Plaintiffs' favor, as their attorney swore in an affidavit that he emailed Defendants immediately upon learning the privileged nature of the document which had been disclosed.[2] *See Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 669 (Fla. 2d DCA 2003) ("Because the objections were made as soon as the confidential nature of the communication became apparent, Jenney did not waive the privilege."). And finally, the overriding interests of justice would be served by relieving Plaintiffs of their error because Defendants are not barred from discovering Plaintiffs' post-suit documents, which are generally considered to be more reliable than pre-suit documents. *See Cohen v. Dauphinee*, 739 So. 2d 68, 70–72 (Fla. 1999). Consideration of these factors weighs in favor of the conclusion that the disclosure was inadvertent and the privilege was not waived.

Furthermore, Defendants have not shown that the "sword and shield" doctrine applies here, as there is no indication that Plaintiffs raised a claim that will necessarily require proof by way of privileged documents. *See Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010). And even if Plaintiffs had waived their privilege, the waiver would not have extended to the remainder of Plaintiffs' pre-suit investigation material, as "an inadvertent disclosure 'no longer carries with it the cruel cost of subject-matter waiver.' " *Poertner v. Gillette Co.*, Doc. No. 6:12-cv-803, 2013 WL 12149369, at *2 (M.D. Fla. Mar. 12, 2013). The remainder of Defendants' arguments assume that the documents are not privileged, and thus are not applicable. Thus, Defendants have failed to meet its burden of proving that Plaintiffs waived any privilege over the sought discovery. Consequently, Defendant's motion to compel pre-suit communications and discovery (Doc. 76) is due to be denied.

### II. Plaintiff's Motion To Compel Exemplars

**\*4** Turning to the second pending discovery motion, Plaintiffs have moved to compel the production of exemplars of the subject "SECURE-C" cervical disk device. (Doc. 78). Specifically, Plaintiffs have moved to compel a SECURE-C Demo Kit, an exemplar SECURE-C of the same size as the subject SECURE-C, and an exemplar assembly block for the same size as the subject SECURE-C. (Doc. 78). Further, Plaintiffs concede that, during a meet and confer, Defendants recently offered that Plaintiffs could inspect an assembly block at Defendants' expert's offices, and the core and endplate assembly could be purchased for the list price of $10,000. Plaintiffs describe the price as "astronomical," and request that the Court compel Defendants to produce the exemplars for what it costs to actually manufacture the SECURE-C.

Fed. R. Civ. P. 34 governs discovery regarding tangible things. Under Rule 34(a)(1), the Rule contemplates requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample ... any designated tangible things." Rule 34 does not address the cost which should be charged for the production of a tangible thing or exemplar.

Here, although Defendants contend that Plaintiffs have failed to demonstrate good cause for the discovery of the requested exemplars, there is apparently no dispute that Defendants have offered to make exemplars available for purchase and inspection pursuant to Rule 34. Indeed, Defendants state that Plaintiffs' experts have already inspected, measured, photographed and CT scanned the subject Core, Inferior Endplate and Superior Endplate on three separate occasions, as well as performed a non-destructive test on the surface of the subject Core with a Fourier Transform Infrared spectrometer. (Doc. 79, p. 7). And, via email dated March 18, 2019, counsel for Defendants agreed "in the spirit of compromise," to provide exemplars "of the core (either a core from the same lot as the subject core which is expired or a core of the same size from another lot) and an endplate assembly of the same size as the subject endplate assembly," subject to several conditions. (Doc. 79-1). The conditions included that Plaintiffs compensate Defendants for the cost, that the components be marked "NOT FOR HUMAN USE," that the parties agreed to make arrangements for the physical transfer and Plaintiffs would bear the cost of transfer, that Plaintiffs would produce documentation and any results of testing in a timely fashion and prior to their expert reports, and that the core and endplate assembly be returned to Defendants at the end of the litigation or be destroyed. (Doc. 79-1). Defendants further offered that, "[t]o the extent plaintiffs' experts want an opportunity to inspect an assembly block, Globus will agree to provide an assembly block for inspection at Exponent's offices in Philadelphia." (Doc. 79-1). Notably, Defendant does not constrain its offer to an inspection at the time of trial.

There appears to be no dispute that Defendants are willing to produce exemplars for inspection as contemplated by Rule 34.

What Plaintiffs are specifically requesting in the instant motion, however, is not an inspection, but that Defendants be compelled to produce the exemplars "at cost" and with "reasonable transport costs." (Doc. 78). Plaintiffs offer no persuasive authority in support of this request. The cases cited by Plaintiffs in support of their motion, *Cannioto v. Louisville Ladder, Inc*. Case. No. 8:09-cv-1892-JSM-YBM (Doc. 36), and *Whynot v. Publix Supermarket, Inc.*, Case No. 2013-CA-007898-0, are easily distinguishable from this case, as they involve fairly ordinary products (ladders and shopping carts), as opposed to highly specialized medical devices. (Doc. 79-3). Further, in the cases cited by Plaintiffs, the plaintiffs agreed to pay the retail price of the exemplar product. While the undersigned acknowledges (as Defendants apparently also do) that Rule 34 contemplates that Defendants make the subject device or exemplars available for inspection, there is simply no basis or authority for the Court to require Defendants to provide the exemplars for purchase at Plaintiffs' preferred price, or "at cost." Plaintiffs' motion to compel production of exemplars and motion for sanctions (Doc. 78) is due to be denied.

### III. Conclusion

***5** Accordingly, upon due consideration, and for the reasons explained above, it is ordered that:

**(1)** Defendant's motion to compel pre-suit communications and discovery (Doc. 76) is **DENIED** in all respects;

**(2)** Plaintiff's motion to compel production of exemplars and motion for sanctions (Doc. 78) is **DENIED** in all respects; and

**(3)** If an inspection of the exemplars is requested by Plaintiffs, the parties are directed to work together in good faith to reach mutually agreeable terms and to complete such an inspection as contemplated by Rule 34.

**DONE** and **ORDERED** in Ocala, Florida on April 22, 2019.

**All Citations**

Slip Copy, 2019 WL 1763237

---

Footnotes

1   The instant case is easily distinguishable from Defendants' case law on untimeliness, as in both of Defendants' cited cases, the untimely objections were essentially raised for the first time when the matter was before the court. *U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1135, 1340 (M.D. Fla. 2007); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988).

2   Although Defendants argue that their Exhibit H demonstrates that Plaintiffs may have gotten earlier notice of the disclosure, Defendant's email does not substantiate Plaintiffs' knowledge of the disclosure without a response from Plaintiffs. Ultimately, the sworn statement by Plaintiffs' attorney that he "immediately emailed Globus' counsel advising of the inadvertent disclosure and requesting the return of the privileged material" is uncontroverted. (Doc. 77-5, ¶ 10).

---

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.