# EXHIBIT B

## COMBAT ARMS RETAIL PAK
## INTERIM AGREEMENT

This Interim Agreement ("Interim Agreement") is entered into as of June 17, 2011, and is made by and between 3M Company, a Delaware corporation, through it Occupational Health and Environmental Safety Division ("3M"), whose principal place of business is 3M Center, Saint Paul, Minnesota 55144-1000, and New Dynamics Corporation, a New York not-for-profit corporation ("New Dynamics") whose principal place of business is 15 Fortune Road West, Middletown, NY 10941 (each a "Party" and collectively the "Parties").

### 1. Purpose of Interim Agreement

1.1    New Dynamics is a not-for-profit corporation whose mission is to provide employment opportunities to people who are blind or have visual impairments or disabilities.

1.2    New Dynamics assembles, packages, distributes and ships certain hearing protection devices (including "earplugs" and other devices).

1.3    3M has the know-how and experience to manufacture hearing protection devices, specifically Combat Arms Retail Pack (currently sold by 3M as SKU 370-1011) ("3M Earplugs") which are the subject of this Interim Agreement. These Earplugs are a "first generation" product, double-ended so that each end may be inserted into the ear. 3M intends to phase out manufacture and sale of these 3M Earplugs in favor of Combat Arms Pillow Packs (currently sold by 3M as SKUs 370-1030, 370-1031 and 370-1032, and also under NSN 6515-01-576-8837, 6515-01-576-8861 and 6515-01-576-8869; and the subject of a separate interim agreement between the Parties), which are "fourth generation" products that are single-ended insertion with a "flip-cap" on the outside end.

1.4    3M will sell unassembled parts of the 3M Earplugs to New Dynamics.

1.5    3M and New Dynamics are committed to working cooperatively to market the Earplug Products (as defined below) to customers.

1.6    New Dynamics and 3M have initiated the AbilityOne set-aside application process for the Earplug Products, and the process to have the Earplug Products added to the New York State and Federal Procurement Lists. In connection therewith, the parties have agreed to enter into a Co-Branding Agreement between 3M and New Dynamics dated ___TBD_____ (the "Co-Branding Agreement"), which will become effective on the date that the Earplug Products are added to the Federal Procurement List, on which date this Interim Agreement shall terminate.

### 2. New Dynamics' Obligations to 3M

2.1    New Dynamics will purchase, in bulk, 3M Earplugs (earplug with stem and filter attached) (the "3M Components"). New Dynamics will package the 3M Components, each package to include the 3M Components, a cord (unattached), instructions, and carrying case (the

1.

3M Highly Confidential Financial

Confidential - Subject To Protective Order

"Earplug Products"). New Dynamics will resell the complete Earplug Products to customers in the United States, including the United States federal government, through various direct and indirect channels of distribution.

2.2    New Dynamics will source the 3M Components from 3M, and will then package the Earplug Products in accordance with 3M specifications.

2.3    New Dynamics will source and purchase the cords necessary to complete the packaging of the Earplug Products, in accordance with 3M specifications.

2.4    New Dynamics will source and purchase the packaging materials for the Earplug Products in accordance with 3M specifications.

2.5    New Dynamics will have the primary responsibility to market and sell the Earplugs within the United States.

2.6    New Dynamics will provide the appropriate manufacturing supervision and quality control resources for the Earplug Products to assure that all quality requirements of 3M are met.

2.7    New Dynamics will initiate the AbilityOne set-aside application process for the Earplug Products (with 3M support).

2.8    New Dynamics will initiate the application process to have the Earplug Products added to the New York State set-aside procurement list, and other states' set-aside programs if desired by the parties.

2.9    New Dynamics will promote the Earplug Products at various trade shows and conventions, etc.

2.10    New Dynamics will prepare production facility quality control programs satisfactory to 3M, and will follow and comply with all quality control processes for those programs.

2.11    During the term of this Interim Agreement, New Dynamics will sell, manufacture, and market (with the assistance of 3M as set forth herein) in the United States only 3M hearing protection devices. Notwithstanding the foregoing, New Dynamics may continue to source PVC foam sheets pursuant to the Parties existing supply agreement (which agreement shall remain unaffected). Any sale to the United States government or any United States government entity wherever located is deemed a sale in the United States for purposes of this Interim Agreement.

2.12    New Dynamics shall promptly notify 3M of any negative material change in its economic status.

3.    **3M's Obligations to New Dynamics**

3.1    3M will sell to New Dynamics, in bulk, the 3M Components.

2.

3M Highly Confidential Financial

3M00141019

Confidential - Subject To Protective Order

3M_MDL000080714

3.2    Upon New Dynamics' ability to distribute fully assembled and packaged Earplug Products according to the terms and conditions of this Interim Agreement, distribution of the 3M Earplugs within the United States shall be exclusively by New Dynamics, and 3M will discontinue sales of the 3M Earplugs within the United States, except for the sale of 3M Components to New Dynamics under this Interim Agreement. Any sale to the United States government or any United States government entity wherever located is deemed a sale in the United States for purposes of this Interim Agreement.

3.3    3M will, at the outset and from time to time as may be necessary, provide New Dynamics with technical assistance including, but not limited to, instruction regarding proper assembly techniques to complete the manufacturing and subsequent packaging of the Earplug Products, and quality control procedures to test and confirm that the Earplug Products meet or exceed the purchasers' requirements.

3.4    3M will assist New Dynamics with sourcing the cords necessary to complete the packaging of the Earplug Products.

3.5    3M will assist New Dynamics with sourcing the packaging materials for the assembled Earplug Products.

3.6    Performance by 3M shall be timely.

4.    **Prices and Terms and Conditions of Sale**

4.1    3M will invoice New Dynamics as the 3M Components are shipped. All 3M Components shall be shipped by 3M to New Dynamics F.O.B. origination (3M factory) to New Dynamics' Scotchtown, NY manufacturing facility.

4.2    The following payment terms shall apply to all shipments: All payments are due net 30 days after receipt by New Dynamics of the shipments. In the event of a disputed invoice item, New Dynamics agrees to pay 3M for all non-disputed items on the invoice, but may withhold payment for the disputed item(s) after providing 3M with written notice identifying the disputed item(s), the problem with the items, and the intent to withhold payment. The Parties will use reasonable efforts to resolve disputed items within forty-five (45) days of such notice according to the procedure set forth in Section 17 below.

4.3    The price of at which 3M will sell the 3M Components to New Dynamics shall be set forth in Exhibit A to this Interim Agreement. New Dynamics may sell the fully assembled and packaged Earplug Products to its customers at any price.

4.4    3M shall have the right to modify the price of the 3M Components it sells to New Dynamics at its sole discretion if 3M is subject to a price increase of at least 15% sustained for at least ninety (90) days on any input necessary for the production of the 3M Components. 3M shall provide to New Dynamics new 3M Components pricing in writing. Any price change will be effective ninety (90) days after notification of the price change.

3.

3M00141020

Confidential - Subject To Protective Order

3M_MDL000080715

5.  <u>Forecasts</u>

5.1     New Dynamics will provide 3M with its projected 3M Components requirements at the beginning of each calendar quarter and will update such projections as soon as it is aware of any material change in its projected requirements.  As long as New Dynamics' orders each quarter are less than or equal to the projected requirements, 3M agrees to use commercially reasonable efforts to supply bulk 3M Components to New Dynamics within thirty (30) days of receipt of orders, in order to help ensure on-time deliveries to New Dynamics' customers.

5.2     If New Dynamics' orders in any quarter exceed the quarterly forecast, the Parties will negotiate modified delivery terms.  If a delivery delay will cause New Dynamics to be in breach of a third party contract or otherwise lose business, 3M will use commercially reasonable efforts in order to help ensure that New Dynamics does not breach the third party contract or otherwise lose business.

6.  <u>Term and Termination</u>

6.1     This Interim Agreement will commence on the date first set forth above, and, unless earlier terminated as provided in Paragraph 6.2 below, will remain in effect until the date on which the Co-Branding Agreement is deemed to go into effect, which shall be the date that the Earplug Products are added to the Federal Procurement List (the "Termination Date"), at which time this Interim Agreement shall terminate without the requirement of notice or other action from either party.

6.2     Either Party may terminate this Interim Agreement:

(a)     without cause by providing the other party written notice of its intent to terminate this Interim Agreement before June 30 of each year, with such termination to be effective on December 31 of the year in which the termination notice was given. However, neither Party shall have the right to terminate this Interim Agreement under this paragraph without cause with an effective date of termination prior to December 31, 2012;

(b)     without notice upon the institution by or against either Party of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of a Party's debts; upon either Party making an assignment for the benefit of creditors; or upon either Party's dissolution or ceasing to function as an ongoing business concern.

(c)     upon ten (10) days prior written notice if the other Party fails to make any payment when due and such payment is not made within such ten (10) day time period.

(d)     upon ten (10) days prior written notice if the other Party is in breach of any of the product quality terms or conditions of this Interim Agreement or if a Party receives product quality complaints, and such product quality breach is not cured or such product quality complaint is not resolved within such ten (10) day time period, or such longer period as the Parties shall reasonably agree upon if the breach or complaint cannot be cured or resolved within ten (10) days.

4.

Confidential - Subject To Protective Order                                                          3M_MDL000080716

the sale and marketing of the Earplug Products. New Dynamics may use and affix the 3M Marks only on the Earplug Products packaging, product literature, marketing materials and the like, with no right to sublicense, and only with the written consent of 3M.

7.4     The color yellow for ear plugs is a 3M trademark and part of the 3M Marks. All packaging of the Earplug Products for yellow earplugs must carry the 3M trademark and shall be included in the packaging and design development set forth in Paragraph 7.2 above.

7.5     Appropriate trademark attribution will be included on all packaging, product literature, marketing material and the like, and must be approved by 3M in writing.

### 8.     Inspection and On-Site Auditing

8.1     3M may, at all reasonable times, with prior notification of at least five (5) business days, visit and inspect New Dynamics' manufacturing facility or facilities, and audit New Dynamics' production facility quality control program as it relates to the Earplug Products.

8.2     New Dynamics shall perform the work under this Interim Agreement only at its Scotchtown, NY manufacturing facility, and no such work may be performed at any other facility or location without the express written consent of 3M in each instance.

### 9.     Plant Safety

9.1     New Dynamics represents to 3M that it has the ability and resources necessary to perform its obligations under this Interim Agreement safely, reasonably on time, and in conformance with applicable specifications. New Dynamics understands that 3M has relied on that representation in choosing to do business with New Dynamics and in making this Interim Agreement.

9.2     New Dynamics is solely responsible for the safe performance of the work it performs under this Interim Agreement, and for the safety of: (a) all New Dynamics employees, agents and delegates; and (b) all people who may be present at or in the vicinity of New Dynamics' facility (including 3M employees). 3M shall not be responsible for the safety of employees, agents and delegates of New Dynamics or its subcontractors.

### 10.     Warranty and Limited Remedies

10.1     3M agrees to replace any 3M Components found to be defective in their manufacture by 3M or its suppliers. New Dynamics will offer its customers this same warranty, and will replace any Earplug Products found to be defective in their manufacture by New Dynamics or its suppliers. New Dynamics, and not 3M, shall be responsible to third parties for any defects caused by defective assembly by New Dynamics.

6.

3M Highly Confidential Financial

3M00141022

Confidential - Subject To Protective Order

3M_MDL000080717

## 11.    Limitation of Liability

11.1    In no event, whether as a result of breach of contract, warranty, alleged negligence, termination of this Interim Agreement for any reason, or otherwise shall either Party be liable to the other for any special, incidental or consequential damages including, but not limited to, loss of sales, profits or revenue, loss of use of the Earplug Products furnished or any associated equipment, cost of capital, cost of substitute equipment, downtime costs, or claims of customers for such damages.  **NEITHER PARTY SHALL BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, CONTINGENT OR PUNITIVE DAMAGES OF ANY KIND IN CONNECTION WITH THE SALE OF PRODUCTS, INCLUDING WITHOUT LIMITATION LOST PROFITS, LOST REVENUES OR BUSINESS INTERRUPTION, BASED ON ANY BREACH OR DEFAULT OF THE OTHER PARTY.**

## 12.    Indemnification

12.1    3M agrees to defend, hold harmless and indemnify New Dynamics against losses, costs, damages, liabilities, penalties and expenses (including costs and attorney's fees) relating or allegedly arising out of (a) any defect in the 3M Components; and (b) any infringement of patent, trademark, or other intellectual property right arising out of the sale of the Earplug Products in the United States.  New Dynamics shall promptly notify 3M in writing of such claims and shall give 3M authority, information and assistance for the appropriate defense of such claims.  If New Dynamics chooses to retain its own counsel in connection with the defense of any such claim, the fees and expenses of such counsel shall be at New Dynamics' expense.  Notwithstanding the foregoing, 3M shall not be liable for any costs or damages incurred as a result of any suit or proceeding so far as it is based on a defect arising from New Dynamics' assembly of the Earplug Products, including, but not limited to the cost of reasonable attorneys' fees incurred by New Dynamics.

12.2    New Dynamics agrees to defend, hold harmless and indemnify 3M against losses, costs, damages, liabilities, penalties and expenses (including costs and attorney's fees) relating or allegedly arising out (a) any defect in the Earplug Products due solely to New Dynamics assembly of the Earplug Products; and (b) any infringement of patent, trademark, or other intellectual property right incurred as a result of any suit or proceeding so far as it is based on a defect in New Dynamics' assembly of the Earplug Products.

## 13.    Relationship of Parties

13.1    Neither party has power or authority to bind the other.  Nothing in this Interim Agreement will be construed as creating any relationship such as employer-employee, principal-agent or franchisor-franchisee between New Dynamics and 3M.

7.

3M Highly Confidential Financial

3M00141023

Confidential - Subject To Protective Order

3M_MDL000080718

**14.   Force Majeure**

14.1   While 3M will endeavor to meet agreed upon delivery schedules, it shall not be liable for delays or failures to manufacture or deliver due to causes beyond its reasonable control, including acts of God, acts of civil or military authority, fires, strikes or other labor difficulties, flood, epidemics, war, riot or other civil disturbance, or delays in its usual source of supply, delays in transportation or product shortages, or any other commercial impracticability caused by these stated events. In the event of any delay, the date of delivery for the Earplug Components shall be extended for a period equal to the time lost as a consequence of the delay.

**15.   Notices**

15.1   All notices that are required or permitted in this Interim Agreement will be sufficient if given in writing and delivered personally or by registered or certified mail or other traceable overnight delivery method (such as FedEx or UPS), postage prepaid, addressed to the following:

If to New Dynamics:

New Dynamics Corporation
15 Fortune Road West
Middletown, NY 10941
Attn: Walter Pawlowski

Rider, Weiner & Frankel, P.C.
P.O. Box 2280
Newburgh, NY 12550
Attn: Shay Humphrey, Esq.

If to 3M to:

3M Company
3M Center, Mail Stop 235-2W-75
P.O. Box 33428
St. Paul, MN 55133
Attn: Vice President, Occupational Health & Environmental Safety Division

3M Company
3M Center, Mail Stop 220-9E-02
P.O. Box 33428
St. Paul, MN 55133
Attn: Legal Counsel, Occupational Health & Environmental Safety Division

**16.   Confidentiality**

16.1   As part of this Interim Agreement, 3M may disclose confidential information ("Confidential Information") to New Dynamics. The Confidential Information disclosed under this Interim Agreement relates to the Earplug Products, how they are made, and how they are converted. New Dynamics shall use the Confidential Information only for the purpose of

8.

3M Highly Confidential Financial

3M00141024

Confidential - Subject To Protective Order

3M_MDL000080719

performing the work contemplated under this Interim Agreement. New Dynamics' obligation under this Section expires three (3) years after the expiration of this Interim Agreement.

16.2    New Dynamics shall not disclose or make available Confidential Information to any third party, including its agents and consultants, without prior express written permission from 3M. New Dynamics shall disclose or make available Confidential Information to only those of its employees who have a need to know such Confidential Information in connection with this Interim Agreement. If New Dynamics discloses any Confidential Information to its employees, it will notify them that such Confidential Information is the property of 3M and the employee will agree to maintain the confidentiality obligations of this Interim Agreement. New Dynamics shall protect the disclosed Confidential Information by using the same degree of care, but no less than reasonable care, New Dynamics uses to protect its own confidential information of a like nature, to prevent the unauthorized disclosure of the Confidential Information. If New Dynamics is required by judicial or administrative process to disclose Confidential Information, New Dynamics shall promptly notify 3M and allow 3M a reasonable time to oppose such process.

16.3    New Dynamics' duties under this Interim Agreement shall apply to Confidential Information that is (a) disclosed in writing and labeled as confidential at the time of disclosure; or (b) disclosed in any other manner (including tangible products and materials) and is indicated to be confidential at the time of disclosure.

16.4    New Dynamics agrees not to analyze or have a third party analyze tangible products or materials constituting Confidential Information without prior written consent of 3M.

16.5    This Interim Agreement imposes no obligation upon New Dynamics with respect to Confidential Information that New Dynamics can establish (a) is public knowledge at the time of its disclosure to New Dynamics; or (b) becomes public knowledge through no fault of New Dynamics; or (c) is previously known to New Dynamics; or (d) is received in good faith by New Dynamics from a third party who is under no obligation of confidentiality with respect to Confidential Information; or (e) is independently developed by New Dynamics without reference to Confidential Information received under this Interim Agreement; or (f) is subsequently designated in writing by 3M as no longer confidential. Confidential Information shall not be deemed in New Dynamics' possession or publicly known merely because it is embraced by more general information in New Dynamics' possession or because it is embraced in general terms in publications or patents.

16.6    New Dynamics agrees to return all extant Confidential Information (including tangible products or materials (such as, tools and dies provided by 3M at no cost to aid New Dynamics with production of the Earplug Products)) received from 3M upon request of 3M except that New Dynamics may retain in the office of its legal counsel one copy of written Confidential Information for record purposes only. 3M Components paid for by New Dynamics under this Interim Agreement are not Confidential Information.

16.7    Confidential information of New Dynamics, regarding its business operations, systems or products, shall be subject to the same protections as are provided herein to the 3M

9.

Confidential - Subject To Protective Order                                          3M_MDL000080720

Confidential Information and 3M shall have the same obligations as are imposed on New Dynamics in this Section 16 regarding the Confidential Information of 3M.

17.   **Dispute Resolution, Choice of Forum, and Time for Filing Action**

17.1.   New Dynamics and 3M agree to resolve any questions, claims, or disputes arising from or relating to this Interim Agreement, or its negotiation or termination, or the Earplug Products by the following sequence of dispute resolution methods. Except as otherwise provided in Section 17.1(c) below, these methods are exclusive and shall be fully exhausted before the commencement of any litigation.

(a)   Negotiation and Mediation. The parties shall first attempt in good faith to resolve any such questions, claims, or disputes promptly by negotiations between representatives who have authority to fully and finally settle the matter and then, if necessary, by non-binding mediation at a time and location agreeable to both parties using a mutually acceptable neutral mediator in accordance with rules and procedures as the parties shall reasonably agree upon. All negotiations and mediation pursuant to this subsection are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. Each party shall bear its own costs incurred in all such negotiations and mediation, and shall share equally the costs of the mediator.

(b)   Litigation. If the parties cannot resolve the question, claim, or dispute as provided in Section 17.1(a) above, then, as a last resort, either party may commence litigation or seek equitable relief; provided, however, that any lawsuit or action filed by either party shall be commenced in a federal or state court of competent jurisdiction in St. Paul, Ramsey County, Minnesota.

(c)   Equitable Relief. Nothing in this Section 17 shall preclude either party from taking any action necessary to prevent immediate and irreparable harm to that party; provided, however, that (i) any such action must be sought in a federal or state court of competent jurisdiction in the place provided in Section 17.1(b) above; and (ii) any such party remains obligated to resolve the underlying dispute or claim giving rise to such action by means of the dispute resolution methods of this Section 17.

17.2.   Any action or litigation (including unaided negotiations or mediation), for breach of warranty or any other breach of an obligation arising from this Interim Agreement must be commenced within one (1) year after the non-breaching party learns of the breach, but in all instances within two (2) years after the breach occurs except for third party claims against New Dynamics for which 3M is required to indemnify New Dynamics hereunder.

18.   **General**

18.1   The color yellow for ear plugs is a 3M trademark. New Dynamics acknowledges that the production or sale of yellow earplugs by any entity other than 3M, without the express written consent of 3M, infringes upon 3M's trademark and is prohibited.

10.

3M Highly Confidential Financial

3M00141026

Confidential - Subject To Protective Order

3M_MDL000080721

18.2    Any specification required or permitted by this Interim Agreement shall be contained in Exhibit B, and thereby made a part of this Interim Agreement.

18.3    Each party acknowledges that nothing herein gives it any right, title or interest in the others trademarks apart from the rights granted herein, and all use of the trademarks shall inure to the benefit of the respective owner.  Neither party shall have any right to, and agrees not to register any URL/domain name or trademark incorporating, the others trademarks or variations thereof without consent of the trademark's owner.

18.4    This Interim Agreement shall be deemed to have been made, entered into and finally executed and delivered in the State of Minnesota and all rights, duties and obligations of the Parties hereto shall be governed, controlled, interpreted and defined by and under the laws of the State of Minnesota without giving effect to any choice of law or conflict of law provisions.

18.5    This Interim Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

18.6    This Interim Agreement, which includes any Exhibits that may be appended hereto from time to time, sets forth the entire agreement and understanding between the parties as to the subject matter of this Interim Agreement, and supersedes all prior agreements and understandings between them regarding the subject matter of this Interim Agreement.  Neither party shall be bound by any conditions, definitions, warranties or representations with respect to the Earplug Products except as duly set forth in a written document which is dated on, as of, or subsequent to the date of this Interim Agreement, and signed by both Parties.  This Interim Agreement cannot be amended or modified in any way except in a writing signed by both Parties.  Any amendments, approvals or waivers under this Interim Agreement made orally shall be null and void and shall not be binding on the Parties.

18.7    Neither Party may assign this Interim Agreement without the others prior written approval and any attempted assignment without such approval would be null and void.

18.8    If at any time New Dynamics fails to pay an invoice when due (and subject to cure as above in 6.2(c)), 3M may in its sole and absolute discretion, without incurring any liability to New Dynamics, and in addition to any other remedies available at law or in equity, elect any or all of the following remedies: (a) refuse to accept any orders of product; (b) suspend further shipments of any outstanding orders for product; or (c) only accept orders upon revised credit terms acceptable to 3M.

18.9    The Parties' obligations with respect to indemnifications, limitations of liability, and limitations of remedies under this Interim Agreement shall survive any expiration or termination of this Interim Agreement.

18.10  Sections 7, 16, 17 and 18 shall survive any expiration or termination of this Interim Agreement.

18.11  The Parties' obligations with respect to warranties related to the sale of the Earplug Products under this Interim Agreement shall survive any expiration or termination of this Interim Agreement for a period of eighteen (18) months.

11.

Confidential - Subject To Protective Order                                          3M_MDL000080722

18.12   Failure by either party to require strict performance of this Interim Agreement shall not be a waiver of a party's right subsequently to require such strict performance.

IN WITNESS WHEREOF, the parties have caused this Interim Agreement to be executed by their respective officers duly authorized as of the date of execution.

**3M COMPANY**

By: _____
    Richard Morris

Its: US Business Director 3HVES Division

Date: 6/30/11

**NEW DYNAMICS CORPORATION**

By: _____

Its:  Walter C. Pawlowski,
     Vice President Business Development and Operations

Date:  June 17, 2011

12.

3M00141028

3M_MDL000080723

**EXHIBIT A**

Pricing

**CAE Retail Pack**          **Unit**

| | | |
|---|---|---|
| CAE Blister | ea | $0.1087 |
| CA Carrying Case | ea | $0.7851 |
| Blister Card | ea | $0.0249 |
| Blister Pack Insert | ea | $0.0131 |
| Flame Retardant Cord | ea | $0.1059 |
| Shipper | ea | $0.8997 |
| Military Mini Brochure | ea | $0.0788 |
| 3M CAE two-sided | ea | $6.2500 |

3M Highly Confidential Financial

3M00141029

Confidential - Subject To Protective Order

3M_MDL000080724

**EXHIBIT B**

<u>Specifications</u>

14.

Confidential - Subject To Protective Order
3M_MDL000080725