# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* | ) | Magistrate Judge Gary R. Jones |

# PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................1

II.  SUMMARY OF ISSUES ............................................................1

III.   ARGUMENT............................................................................3

   A.  ISL Possesses Information Relevant to the Affirmative Defenses .................3

   B.  ISL Was Validly Served by Mail .....................................6

   C.  ISL's Other Objections are Without Merit.......................................9

      a.  The ISL Formation Treaty..........................................9

      b.  The French Blocking Statute......................................11

IV.  CONCLUSION .........................................................14

# TABLE OF AUTHORITIES

## *Cases*

*Ackermann v. Levine*,
788 F.2d 830 (2d. Cir. 1986) ................................................................8

*Anheuser-Busch, Inc.*,
1999 WL 1043861 (M.D. Fla. Oct. 15, 1999) ......................................9

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
262 F.R.D. 293 (S.D.N.Y. 2009) ..........................................................7

*Atlantic Specialty Ins. Co. v. M2 Motor Yachts*,
2017 WL 11220345 (S.D. Fla. Feb. 3, 2017) .......................................8

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ................................................................8

*Chattem Chems. v. Akso Nobel Chems. B.V.*,
229 F.Supp.2d 555 (M.D. La. 2002).....................................................8

*Conax Florida Corp. v. Astrium Ltd.*,
499 F. Supp. 2d 1287 (M.D. Fla. 2007)................................................8

*Crystal Cruises, Inc. v. Rolls-Royce PLC*,
2011 WL 11555506 (S.D. Fla. Nov. 8, 2011) .....................................13

*In re Falcon Air Exp., Inc.*,
2008 WL 2038799 (Bkrtcy. S.D. Fla. May 8, 2008)............................9

*In re Photochromic Lens Antitrust Litig.*,
2012 WL 12904331 (M.D. Fla. May 2, 2012) ....................................13

*Julien v. Williams*,
2010 WL 5174535 (M.D. Fla. Dec. 15, 2010) ......................................7

*Lestrade v. United States*,
945 F. Supp. 1557 (S.D. Fla. 1996) ......................................................8

*MedImmune, LLC v. PDL Biopharma, Inc.*,
   2010 WL 2179154 (N.D. Ca. May 27, 2010)...........................................................7

*Merial Inc. v. Ceva Santé Animale, S.A.*,
   2016 WL 320141 (M.D. Ga. Jan. 26, 2016)...........................................................8

*Research Sys. Corp. v. IPSOS Publicite*,
   276 F.3d 914 (7th Cir. 2002) .................................................................................8

*SNP Boat Serv. S.A. v. Hotel Le St. James*,
   483 B.R. 776 (S.D. Fla. 2012) .............................................................................13

*Societe Nationale Industrielle Aerospatiale v. United States District Court*,
   482 U.S. 522 (1987).......................................................................................... 7, 12

*TracFone Wireless, Inc. v. Does*,
   2011 WL 4711458 (S.D. Fla. Oct. 4, 2011) .......................................................7, 9

*Vitality Sys., Inc. v. Sogeval Labs., Inc.*,
   2010 WL 11507286 (M.D. Fla. Feb. 3, 2010)......................................................13

### Rules

Fed. R. Civ. P. 4(f)(1) .................................................................................................6

### Other Authorities

T.I.A.S. No. 6638 (Feb. 10, 1969) ..........................................................................7, 8

## I.     INTRODUCTION

Pursuant to the Federal Rules of Civil Procedure and Article 10(a) of the Hague Service Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter the "Hague Service Convention"), Plaintiffs respectfully submit this memorandum in support of their Motion to Compel the French-German Research Institute of Saint-Louis (hereinafter "ISL") to produce all documents responsive to Plaintiffs' Subpoena to Produce Documents, Information, or Objects.

## II.     SUMMARY OF ISSUES

ISL, a French-German scientific research institute, developed the non-linear acoustical filter technology that 3M[1] used in all retail and industrial versions of the Combat Arms Earplug, as well as the dual-ended earplug design used in the CAEv2. ISL granted 3M a license to use its non-linear acoustical filter technology in exchange for 3M's payment of a royalty to ISL based on the success of the Combat Arms Earplug product line—two percent of net sales of all products containing the filter.  Because it invented the technology incorporated in all versions of the Combat

---

[1] References to "3M," "Aearo Company," or "Defendants" include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC.

1

Arms Earplug, ISL is an author and recipient of key documents concerning the invention, testing, and development of the Combat Arms Earplug.

On September 9, 2019, Plaintiffs served ISL with a Subpoena to Produce Documents, Information, or Objects, (the "Subpoena," attached as Exhibit A) which required ISL to produce several categories of documents related to the non-linear acoustical filter within the consumer and military versions of the Combat Arms Earplug Version 2 (hereinafter "CAEv2").  On September 11, 2019, ISL received Plaintiffs' Subpoena and Requests for Production via Federal Express mail. To date, ISL has refused to comply with Plaintiffs' requests.  On October 8, 2019, ISL served untimely responses and objections to Plaintiffs' subpoena (attached as Exhibit B).

Plaintiffs and ISL have met and conferred several times regarding the validity of service of Plaintiffs' subpoena, the applicability of the French Blocking Statute and the impact of the French-German Treaty that created ISL.  Plaintiffs explained their positions on these issues to ISL in an attempt to resolve ISL's concerns without judicial assistance.  Plaintiffs' Subpoena was validly served under Federal Rule of Civil Procedure 4 and the Hague Service Convention because ISL is subject to service of subpoena by mail, as federal courts in Florida have repeatedly recognized.

### III.   ARGUMENT

#### A.   ISL Possesses Information Relevant to the Affirmative Defenses

The CAEv2 is a dual-ended earplug, in which one end is designed to function as a traditional earplug, providing linear (or constant) sound attenuation.  The other end of the CAEv2 contains the ISL filter, and is designed to function as a "nonlinear" or "level-dependent" earplug, providing increasing sound attenuation with increasing noise levels.  Both the dual-ended earplug design, as well as the nonlinear filter technology used in the CAEv2 were designed, developed, and patented by ISL. *See* Exhibit C, U.S. Patent No. 5,936,208, Hearing Protector Against Loud Noises filed Dec. 18, 1997 by Inventor Pascal Hamery for Assignee Institut Franco-Allemand De Recherches De Saint-Louis (A 'double-ended' hearing protective device that contains an acoustic filter in at least one end).  The nonlinear end, containing the ISL filter, was the CAEv2's primary selling point: Defendants marketed the earplug using claims (disputed in this case) that the nonlinear end simultaneously provided protection against impulse noises up to 190dB, while also allowing a user to hear quiet sounds, including spoken voices.

In the mid-1990s, ISL researchers Pascal Hamery and Armand Dancer began conducting studies on nonlinear perforated earplugs to develop an acoustic filter with nonlinear performance superior to other nonlinear earplugs on the market at that time.  In the late 1990s, ISL invented a filter composed of two plates connected

3

by a cylinder, with small orifices intended to create nonlinear acoustic impedance, and created an injection mold so the filter could be mass produced at a reduced cost. ISL tested this filter in combination with Aearo's UltraFit earplug, inserting the filter into the stem of Aearo's preexisting plug. ISL analyzed several options for nonlinear hearing protection device configurations, including their proposal for a reversible, or dual-ended earplug, with a non-linear ear plug at one end and a normal steady state earplug at the other end, which they ultimately designed and patented.

The CAEv2 and its consumer equivalents were the only dual-ended earplug designs in the Combat Arms product line: In every prior and subsequent version of the Combat Arms Earplug, Defendants incorporated ISL's nonlinear filter technology into single-ended earplugs instead.

On March 3, 1999, Defendants and ISL entered into a Licensing Agreement which granted Defendants exclusive license to manufacture, use, and sell products pursuant to ISL's patent related to non-linear sound filtering and acoustic filtering. In exchange, ISL received "███████████████████████████████

████████████████████████████████████████████████████████

████████████." *See generally* 3M_MDL000020535-68 attached as Exhibit D. Pursuant to the Licensing Agreement:

████████████████████████████████████████████████

[REDACTED]

*Id.* at 3M_MDL000020540.

Defendants exploited ISL's patent in their design, manufacture, and sale of the CAEv2. *See* 3M_MDL000016506-57 attached as Exhibit E; 3M_MDL000182552-58 attached as Exhibit F. The exclusive license from ISL allowed Defendants to prevent meaningful competition with the Combat Arms and related product lines claiming to provide nonlinear hearing protection.

Defendants' own documents and statements have revealed that ISL possesses critical information directly relevant to Defendants' affirmative defenses. In their first substantive submission in this case, Defendants pointed almost immediately to ISL's involvement in the development of the CAEv2, stating that "Aearo worked with the U.S. Military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2." *See* Defendants' Preliminary Position Statement Pursuant to Pretrial Order No. 2 (Apr. 12, 2019). And troublingly, as late as 2005, despite having sold countless of these CAEv2 earplugs to the United States military and to the public at large, Berger admitted that Aearo had "[REDACTED][REDACTED]."

Berger Tr. 12/12/19, 592:13-17. The purported interactions between ISL, the United

5

States, and Aearo regarding the testing and design of the non-linear filter go to the core of Defendants' affirmative defenses.

Based on information produced by 3M, Plaintiffs subpoenaed ISL to request, *inter alia*, other contracts and financial license agreements entered into between ISL and Defendants; documents related to the creation, development, or design of the CAEv2 non-linear filter; and other communications between ISL and Defendants related to the patent of the CAEv2 non-linear filter.  ISL has taken the position that it cannot be served by mail.  ISL was a pivotal player in the events underlying this litigation, and likely possesses documents relevant to Defendants' affirmative defenses.  As demonstrated below, Plaintiffs' subpoena was properly served by mail. Plaintiffs respectfully request this Court compel ISL to produce documents in accordance with Plaintiffs' Request for Production.

**B.     ISL Was Validly Served by Mail**

The Federal Rules provide that service may be effectuated outside of the United States "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1). Article 10(a) of the Hague Service Convention provides that, if "the State of destination does not object", the Hague Service Convention will not interfere with

"the freedom to send judicial documents, by postal channels, directly to persons abroad." T.I.A.S. No. 6638 (Feb. 10, 1969).

The term "judicial documents" as used in Article 10(a) of the Hague Service Convention covers not only service of process, but also service of subpoenas. *See Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 541 (1987) ("[T]he optional Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention."); *TracFone Wireless, Inc. v. Does*, 2011 WL 4711458, at *4 (S.D. Fla. Oct. 4, 2011) ("[S]ervice of a subpoena on a foreign non-party in a foreign country is permissive under the Hague Service Convention."); *MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2179154, at *2 (N.D. Ca. May 27, 2010) (granting request that service of subpoena be effected via Federal Express pursuant to Federal Rule of Civil Procedure 4(f) and Article 10(a) of the Hague Service Convention); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 307- 308 (S.D.N.Y. 2009) (finding service of trial subpoena on foreign corporation via international mail permissible under the Hague Service Convention where entity effecting service submits sufficient proof of service); *see also* T.I.A.S. No. 6638 (Feb. 10, 1969).

Therefore, as several courts have found, the Hague Service Convention allows service of subpoenas "by mail unless the country has objected to this method."

*TracFone Wireless*, 2011 WL 4711458, at \*2 (authorizing service of a subpoena by mail on foreign non-party under the Hague Service Convention); *Julien v. Williams,* 2010 WL 5174535, at \*2 (M.D. Fla. Dec. 15, 2010) (permitting service of process by mail under Hague Service Convention); *Conax Florida Corp. v. Astrium Ltd.*, 499 F. Supp. 2d 1287, 1293 (M.D. Fla. 2007) (permitting service of process by mail Under Hague Service Convention); *Lestrade v. United States*, 945 F. Supp. 1557 (S.D. Fla. 1996) (service of IRS petition by mail satisfied Hague Service Convention).  The Second, Seventh, and Ninth Circuit Courts have also found that service of process by mail is permissible under the Hague Service Convention where the recipient country has not objected to such service.  *See Ackermann v. Levine*, 788 F.2d 830, 839-40 (2d. Cir. 1986); *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 926 (7th Cir. 2002); *Brockmeyer v. May,* 383 F.3d 798, 802 (9th Cir. 2004).  Thus, service abroad by mail is authorized by the Hague Service Convention where the receiving country has not objected to such service.

ISL is located in a country that does not object to Article 10(a) of the Hague convention.  ISL is headquartered in in the Haut-Rhin department in Alsace in north-eastern France,[2] and "France does not object to service through mail under the Hague Convention."  *Atlantic Specialty Ins. Co. v. M2 Motor Yachts*, 2017 WL 11220345,

---

[2] *Contact & Access*, French-German Research Institute of Saint-Louis, https://www.isl.eu/en/contact-en/contact-en, last visited Dec. 30, 2019.

at *2 (S.D. Fla. Feb. 3, 2017) (citing *Chattem Chems. v. Akso Nobel Chems. B.V.*, 229 F.Supp.2d 555, 557 (M.D. La. 2002)); *see also Merial Inc. v. Ceva Santé Animale, S.A.*, 2016 WL 320141, at *2 (M.D. Ga. Jan. 26, 2016) ("It is undisputed that France does not object to Article 10(a).").  Accordingly, service of Plaintiffs' subpoena to ISL by international mail is permitted under the Hague Service Convention and the Federal Rules of Civil Procedure, and ISL is subject to service of Plaintiffs' subpoena in France.[3]

## C.    ISL's Other Objections are Without Merit

Plaintiffs understand that ISL argues not only that it cannot be served by mail, but also that it is immune to service of the Subpoena on two other grounds: (1) the French-German treaty that established ISL, and (2) a "French blocking statute."[4] Neither legislative document justifies non-compliance.

### a.  The ISL Formation Treaty

ISL argues that it is "protected and immune from such foreign discovery

---

[3] To date, ISL's objections to service have focused on the adequacy of service by mail.  To the extent ISL changes course and argues that personal service of a subpoena is necessary, that argument is also incorrect.  *TracFone*, 2011 WL 4711458, at *4 (citing *Cordington v. Anheuser-Busch, Inc.*, 1999 WL 1043861, at *1 (M.D. Fla. Oct. 15, 1999) (finding that there is "no need for personal service of Rule 45 subpoena so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness").

[4] ISL also asserts several non-dispositive objections – such as proportionality, the scope of the definitions of terms, and privilege – on which the Parties have not yet met and conferred, in light of the weight ISL has assigned to the three objections

proceedings" under Articles 2 and 9 of the "Convention between The Republic of France and the Republic of Germany regarding ISL dated March 31, 1958." *See* Exhibit B, ISL Objections, at 2. But neither article provides for immunity from U.S. civil discovery.

Article 2 describes the property relationships and duties with regard to the criminal law between the French government and ISL. It states that the "property and assets" of ISL are "exempt from seizure," and bars ISL from harboring criminal fugitives. *See* Exhibit D, French-German Treaty, Article 2. Article 2 does not provide any basis for immunity from discovery.

Article 9 of the treaty describes the ownership of intellectual property created at ISL, and the measures ISL must take to protect inventions "of significance for national defence," but also acknowledges that some of ISL's work will not be kept secret, and envisions ISL work product becoming listed in public patent registries. *See* Exhibit D, French-German Treaty, Article 9. The ISL filter was not a state secret—it was publicly patented, and beyond its widespread military distribution, it was also incorporated in a variety of commercial products broadly marketed and sold to the general public, such as the Browning Duo, the AO Safety Indoor/Outdoor

---

discussed herein, regarding efficacy of service and immunity. Plaintiffs believe these other objections can be resolved through the meet-and-confer process after this Court establishes that ISL has been served and is not immune to discovery.

Range Plug, and the ARC Plug.  Although it is possible that some of ISL's other projects could trigger the portion of Article 9 relating to "official secrets and classified documents," its work on the ISL Filter does not raise any special national security considerations.

ISL has not identified—nor have Plaintiffs found—any judicial opinions or regulatory guidance recognizing immunity from discovery premised on this Treaty. ISL's argument that the Treaty creates immunity from discovery is meritless.

### b. The French Blocking Statute

ISL also argues that French Law No. 68-678 of July 1968 (subsequently amended by Law No. 80-538 of July 16, 1980), commonly referred to as the "French Blocking Statute," *see* Exhibit B at 2, would subject ISL and its officers to financial penalties for complying with the Subpoena.  This misstates the nature of the French statute, and ignores binding U.S. precedent on the issue.

First, the French Blocking Statute provides that cross-border discovery must comply with international treaties—in this case, the Hague Service Convention.  As described above, Plaintiffs' service of the Subpoena complies with the Hague Service Convention.  *See supra* Section III.B.

Even if the Subpoena ran afoul of the Hague Service Convention (it does not), that would not deprive U.S. Courts of the power to compel discovery from ISL.  The Supreme Court has established a five-factor "particularized comity analysis" to

11

determine whether a court may compel discovery that is alleged to violate a foreign statute, and did so specifically in the context of the French Blocking Statute. *See Societe Nationale*, 482 U.S. at 544. Courts weigh (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id.* These factors reflect the significant interests of the United States in open discovery, and in maintaining its own sovereignty.[5]

Under that framework, ISL must comply with the Subpoena. ISL possesses documents at the core of the creation, development, testing of the CAEv2, which cannot be obtained by any alternative means, and ISL's noncompliance would undermine the truth-seeking function of this MDL. Indeed, District Courts

---

[5] *See id.* at n.29 ("It is clear that American courts are not required to adhere blindly to the directives of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the basis of personal knowledge. It would be particularly incongruous to recognize such a preference for corporations that are wholly owned by the enacting nation.")

throughout Florida have repeatedly overruled discovery objections based on the French Blocking Statute, and compelled discovery from French entities. *See Vitality Sys., Inc. v. Sogeval Labs., Inc.*, 2010 WL 11507286, at *3 (M.D. Fla. Feb. 3, 2010) (applying five-factor test, overruling objections based on French Blocking Statute, and compelling production of documents held by French company); *Crystal Cruises, Inc. v. Rolls-Royce PLC* 2011 WL 11555506, at *1 (S.D. Fla. Nov. 8, 2011) (overruling objections based on French Blocking Statute, holding that Plaintiffs did not need to resort to international treaty to seek discovery, and compelling discovery from French corporation); *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012) (compelling discovery from witness located in France, holding compliance with Hague process unnecessary, and finding danger of prosecution under French Blocking Statute speculative); *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 788 (S.D. Fla. 2012) (affirming bankruptcy court decision to disregard the French Blocking Statute and order representatives of French company to be deposed).

ISL should be compelled to produce documents responsive to Plaintiffs' subpoena. The French Blocking Statute is inapplicable to the discovery sought in accordance with the Hague Service Convention, and even if did apply, the balance of the equities favor of compelling that discovery.

13

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter

an order compelling the French-German Research Institute of Saint-Louis to produce

all documents responsive to Plaintiffs' September 9, 2019 Subpoena.

Dated: December 30, 2019

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I caused the foregoing Motion to Compel Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Christopher A. Seeger*

## CERTIFICATE OF CONFERENCE

I certify that I have complied with the conference requirement pursuant to the Court's Local Rule 7.1(B). Through the course of the past several months, Plaintiffs and the French-German Research Institute of Saint-Louis have met and conferred on this matter on numerous occasions, including but not limited to: October 29, 2019, October 30, 2019, November 5, 2019, November 8, 2019, and November 20, 2019. Through the course of said meet and confers on this issue, counsel for the French-German Research Institute of Saint-Louis have refused to comply with Plaintiffs' Subpoena to Produce Documents, Information, or Objects. To date, as far as Plaintiffs are aware, the French-German Research Institute of Saint-Louis has yet to comply with Plaintiffs' Subpoena.

16

## **CERTIFICATE OF WORD COUNT**

I certify that this Plaintiffs' Memorandum to Plaintiffs' Motion to Compel contains 3,811 words per my word-processing system, and including all words exhibited within Plaintiffs' Certificates of Service, Conference, and Word Count.