# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | ) | | |
|---|---|---|---|
| IN RE: 3M COMBAT | ) | | |
| ARMS EARPLUG | ) | Civil Action No. | 3:19-md-02885-MCR-GRJ |
| PRODUCTS LIABILITY | ) | | |
| LITIGATION | ) | | |
| | ) | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     French-German Research Institute of Saint-Louis 5 rue du Général Cassagnou 68300 Saint-Louis France

*(Name of person to whom this subpoena is directed)*

☑*Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Schedule A

| Place: French-German Research Institute of Saint-Louis 5 rue due Général Cassagnou 68300 Saint-Louis France | Date and Time: October 9, 2019 9:00 AM |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    9/9/2019

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | s/ David R. Buchanan |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
, who issues or requests this subpoena, are:
David Buchanan, 55 Challenger Rd, 6th Fl., Ridgefield Park, NJ 07660, dbuchanan@seegerweiss.com, 973-693-9100

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*

                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:



September 11,2019

Dear Customer:

The following is the proof-of-delivery for tracking number **776193537597**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | M.RIERA | Delivery location: | ST LOUIS, 68 |
| Service type: | FedEx International Priority | Delivery date: | Sep 11, 2019 10:04 |
| Special Handling: | Deliver Weekday | | |

NO SIGNATURE REQUIRED
Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 776193537597 | Ship date: | Sep 9, 2019 |
| | | Weight: | 1.0 lbs/0.5 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| ST LOUIS, 68 FR | RIDGEFIELD PARK, NJ US |

| | |
|---|---|
| **Reference** | 20040-999 |

Thank you for choosing FedEx.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### DEFINITIONS

1. "Document" as used in these requests is coextensive with the meaning of the terms "documents," "electronically stored information," and "tangible things" as used in Federal Rule of Civil Procedure 34, and shall have the broadest possible meaning and interpretation ascribed to those terms under Federal Rule of Civil Procedure 34.

2. "Relating to," "referring to," "regarding," and "concerning," mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents. The terms relating to, referring to, regarding, and concerning are intended broadly, but not in a way designed to seek information that is irrelevant or beyond the scope authorized by Rule 26(b). Accordingly, the terms should be understood and read in their commonsense meaning: "to have to do with, to be of importance to, to involve, or to in some manner, direct or indirect, to evidence, define, describe, or explain." Therefore, any objection that a request is overbroad based on the use of  one these terms is not appropriate.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communications, includes any document evidencing such oral communications. It includes the transmittal of information by any means, including email, SMS, MMS, or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, and Twitter), shared

applications from cell phones, or by any other means. "Communication" shall also include, without limitation, all originals and copies that are provided by you or to you by others.

4. The word "or" appearing in a Request should not be read so as to eliminate any part of a Request but, whenever applicable, it should have the same meaning as the word "and." For example, a Request stating "support or refer" should be read as "support and refer" if any answer that does both can be made.

5. "YOU" means the French-German Research Institute of Saint-Louis, including any predecessors and successors, and any of its related or affiliated entities.

6. "3M" includes 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC and any of their related or affiliated entities.

7. "3M Earplugs" refers to the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured and sold by 3M to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by 3M for civilian use or non-military use, including but not limited to the 3M E-A-R ARC Plug, CAEv.1, CAEv.3, CAEv.4 and CAEv. 4.1. This definition includes, but is not limited to, single ended and double ended nonlinear earplugs.

8. "CAE filter" refers to the Combat Arms Earplug filter contained within the 3M Earplugs.

9. "The U.S. Government" means the United States Federal Government together with any entity, agency, person, bureau, commissioner, division, branch, or other subpart controlled or owned thereby, and any employees or agents acting on or purporting to act on its behalf including the United States Department of Defense, Defense Logistics Agency or any federal department responsible for safeguarding national security of the United States, including all branches of the military and subsidiary branches and agencies, including, inter

2

alia, the Department of the Army, Department of the Navy, Department of the Air Force, and Defense Logistics Agency.

## REQUESTS FOR PRODUCTION

1. Any and all contracts entered into between YOU and 3M related to 3M Earplugs or hearing protection, including any and all drafts thereof and reviews and responses relating thereto. This request includes, but is not limited to, any financial license agreements or similar contracts entered into between YOU and 3M.

2. Any and all contracts entered into between YOU and 3M related to the CAE filter, including any and all drafts thereof and reviews and responses relating thereto. This request includes, but is not limited to, any financial license agreements or similar contracts entered into between YOU and 3M.

3. Any and all contracts entered into between YOU and The U.S. Government, including without limitation the U.S. Department of Defense, related to 3M Earplugs or hearing protection, including any and all drafts thereof and reviews and responses relating thereto. This request includes, but is not limited to, any financial license agreements or similar contracts entered into between YOU and The U.S. Government.

4. Any and all contracts entered into between YOU and The U.S. Government, including without limitation the U.S. Department of Defense, related to the CAE filter, including any and all drafts thereof and reviews and responses relating thereto. This request includes, but is not limited to, any financial license agreements or similar contracts entered into between YOU and The U.S. Government.

5. Any and all documents related to the creation, development, or design of the CAE filter.

6. Any and all documents related to the creation, development, or design of the 3M Earplugs.

7.  Any and all documents that relate to or reflect any and all minutes, agendas, brochures, memoranda, correspondence, or other documents relating to meetings between YOU, 3M, the U.S. Government or any other person or entity relating to the CAE filter.

8.  Any and all documents that relate to or reflect any and all minutes, agendas, brochures, memoranda, correspondence, or other documents relating to meetings between YOU, 3M, the U.S. Government or any other person or entity relating to 3M Earplugs or hearing protection.

9.  Any and all documents that relate to or reflect any and all financial arrangements or agreements between YOU and 3M relating to the CAE filter.

10. Any and all documents that relate to or reflect any and all financial arrangements or agreements between YOU and The U.S. Government relating to the CAE filter.

11. Any and all documents that relate to or reflect any and all financial arrangements or agreements between YOU and 3M relating to the 3M Earplugs.

12. Any and all documents that relate to or reflect any and all financial arrangements or agreements between YOU and The U.S. Government relating to the 3M Earplugs.

13. Any and all communications between YOU and 3M relating to patents for the CAE filter or 3M Earplugs, including communications relating to patent disputes or litigation, whether actual or anticipated.

14. Any and all communications between YOU and The U.S. Government relating to patents for the CAE filter or 3M Earplugs, including communications relating to patent disputes or litigation, whether actual or anticipated.

15. Any and all testing data for all versions of 3M Earplugs, including but not limited to testing that would verify the fit of the single-ended and double-ended Combat Arms Earplugs.

16. Any and all diagrams and photographs relating to the testing of all versions of 3M Earplugs, including but not limited to testing that would verify the fit of the single-ended and double-ended Combat Arms Earplugs.

17. All Documents relating to alleged defects, risks, elevated hazards, failures or deficiencies in fit or dangers to hearing from the use of the 3M Earplugs.

18. All Documents relating to alleged defects, risks, elevated hazards, or dangers to hearing from the use of the CAE filter.

19. All Documents relating to any contemplated changes to the design of the 3M Earplugs.

20. All Documents and Communications relating to or constituting complaints or criticisms of 3M Earplugs from any person or entity.

21. Documents identifying the point(s) of contact between YOU and 3M.

22. Documents identifying the point(s) of contact between YOU and The U.S. Government.

23. Any and all documents of Pascal Hamery related to CAE filters, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

24. Any and all documents of Pascal Hamery related to 3M Earplugs, or hearing protection, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

25. Any and all documents of Dr. Armand Dancer related to CAE filters, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

26. Any and all documents of Dr. Armand Dancer related to 3M Earplugs, or hearing protection, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

27. Any and all documents of Karl Buck related to CAE filters, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

28. Any and all documents of Karl Buck related to 3M Earplugs, or hearing protection, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

29. Any and all documents of Claudia Rech related to CAE filters, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

30. Any and all documents of Claudia Rech related to 3M Earplugs, or hearing protection, including, but not limited to, patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PRETRIAL ORDER No. 9
## STIPULATED ORDER GOVERNING
## CONFIDENTIALITY AND PRIVILEGE

Plaintiffs and Defendants 3M Company, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC (collectively "Defendants") anticipate that documents, testimony, or information that are protected by the attorney-client privilege or work product doctrine or that contain or reflect confidential, proprietary, trade secret and/or commercially sensitive information could be requested, disclosed or produced during the course of discovery, initial disclosures, and/or supplemental disclosures in this litigation and therefore request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Federal Rule of Civil Procedure 26(c) and its inherent authority, the Court hereby orders the entry of the following Order Governing Confidentiality and Privilege ("Order" or "Protective Order") in this matter:

# I.    PURPOSES AND LIMITATIONS

A.    Disclosure and discovery activity in this action could involve requests for and production of certain privileged, confidential, proprietary, or private information, provided from this or related litigation(s), for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties hereby stipulate to and petition the Court to enter this Order. The Parties acknowledge that this Order governs discovery in *In re: 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885. This Order shall apply to all cases currently pending in MDL No. 2885 and to all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned hereto.

B.    This Order is binding on all Parties and their counsel in all cases currently pending or subsequently made part of these MDL proceedings and shall govern each case in the proceedings. The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, and protect material to be kept confidential or privileged, pursuant to the Court's inherent authority, its authority under Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502(d), and the judicial opinions interpreting such Rules.

C.     The Parties also acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the information or items that are entitled to confidential treatment under the applicable legal principles.  The Parties further acknowledge that this Order creates no entitlement to file Confidential Information under seal.

D.     This Order shall not abrogate or diminish any contractual, statutory, or other legal obligation or right of any party or person with respect to any Confidential Information.

E.     The recipient of any Confidential Information hereby agrees to subject himself/herself to the jurisdiction of this Court for the purpose of any proceedings related to the performance under, compliance with, or violations of this Order.

## II.     PROCEEDINGS AND FORM OF INFORMATION GOVERNED

A.     This Order shall govern any document, information, or other thing which is designated as containing "Confidential Information," as defined herein, and is furnished by any party in this MDL in which various plaintiffs allege that 3M Combat Earplugs (Combat Arms Earplugs Version 2, "CAEv2") caused total or partial hearing loss in one or both ears, tinnitus, and other related effects.

B.     The form of information protected includes, but is not limited to, documents and things, responses to requests to produce documents or other things,

3

interrogatories, responses to interrogatories, requests for admissions, responses to requests for admissions, and responses to subpoenas, deposition testimony, and exhibits, and all copies, extracts, summaries, compilations, designations, and portions of the foregoing.

C.      For purposes of this Order, "document" shall be accorded its broadest possible meaning, and shall include, without limitation, the whole page or file or any portion thereof of any written, printed or graphic matter, and any computer file, record or tape produced by or obtained from any party or non-party, any electronically stored information, or any copy, extract, or complete or partial summary prepared therefrom, and any document or thing covered by Fed. R. Civ. P. 34.

## III.      DEFINITIONS

A.      <u>Action</u>:  *In re: 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885, presently pending in the Northern District of Florida.

B.      <u>Party</u>:  Any party to this Action, including Plaintiffs, 3M Company, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, including all of their officers, directors, employees, and Counsel (and their support staff).

C.      <u>Discovery Material</u>:  All items or information, regardless of the medium or the manner in which it is generated, stored or maintained (including, but not

limited to, those set forth in Section 2.2), that is produced or generated in disclosures or responses to discovery in this matter.

D.     <u>Confidential Information or Items</u>:   Any disclosure or Discovery Material that the Producing Party designates as "CONFIDENTIAL."  The Producing Party may designate as "CONFIDENTIAL" Discovery Material that the Producing Party reasonably believes constitutes, reflects, discloses, or contains (i) trade secret or other confidential research, development, or commercial information subject to protection under Federal Rule of Civil Procedure 26(c); (ii) material protected by federal, state, or foreign data protection laws or other privacy obligations subject to protection under Federal Rule of Civil Procedure 26(c); or (iii) other information subject to protection under Federal Rule of Civil Procedure 26(c).

E.     <u>Outside Counsel of Record</u>:   Attorneys who are not employees of a Party but retained to represent or advise a party to the Action and have appeared on the pleading as counsel for a Party in this Action or who are affiliated with or contracted by law firms who have appeared on the pleading as counsel for a Party in this Action.

F.     <u>In-House Counsel</u>:  Attorneys who are employees of a Party.

G.     <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and In-House Counsel (as well as their support staff).

H. <u>Designating Party</u>: A Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

I. <u>Expert</u>: A person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or consultant in this MDL.

J. <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this MDL.

K. <u>Professional Vendors</u>: Persons or entities that provide litigation support services (e.g., document and ESI processing, hosting, review, and production, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

L. <u>Receiving Party</u>: A Party that receives Disclosure or Discovery Material from a Producing Party.

M. <u>Producing Party</u>: A Party or non-Party that provides, produces, or makes available for inspection Disclosure or Discovery Material in the course of this Action.

## IV. TYPES OF MATERIALS THAT MAY BE DESIGNATED "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"

A.     A Party may designate any portion of Discovery Material (as defined in Section 3.3 above) as "Confidential – Subject to Protective Order" as permitted herein (see Section 3.4 and Section 3.5 above).

B.     Confidential Information shall include any Discovery Material that the designating party reasonably and in good faith believes not to be in the public domain and to contain materials defined as Confidential (see Section 3.4 above).

## V. ACCESS TO AND USE OF INFORMATION DESIGNATED AS "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"

A.     If a Party reasonably and in good faith believes that information produced in these actions contains Confidential Information, that Party shall designate the information as "Confidential – Subject to Protective Order" as appropriate.

B.     Access to information marked "Confidential – Subject to Protective Order" shall be limited to, and only to, the following "qualified persons":

    a.     The Parties listed in Paragraph III.B, including the employees and staff of such Parties;

    b.     the Receiving Party's Outside Counsel of Record in this MDL and, if the attorney of record is a member of a law firm, the employees and staff of the law firm (collectively "Outside Counsel");

    c.     Special Masters, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for purposes of the Action;

Case 3:19-md-02885-MCR-GRJ   Document 942   Filed 01/31/19   Page 8 of 23

    d.    Experts and consultants (including both testifying and non-testifying experts), who shall be informed of the existence and contents of this Protective Order;

    e.    The Court, its personnel, and any court reporters, stenographers, and videographers involved in taking or transcribing testimony in these actions;

    f.    Mediators and their staff enlisted by the parties to assist in the resolution of this matter;

    g.    A person identified in the document marked "Confidential – Subject to Protective Order" as an author, source, addressee, or recipient of the communication or document, or who already has a copy of the document marked "Confidential – Subject to Protective Order";

    h.    A deponent or witness at a deposition or pre-trial hearing; and

    i.    Such other persons as hereafter may be designated by written agreement in these actions or by order of the Court.

C.    Nothing in this Order shall preclude a Party from introducing into evidence at an evidentiary hearing, motion hearing, or trial any Confidential Material that is admissible under applicable law, subject to the provisions of this Order.

D.    The designation of information as "Confidential – Subject to Protective Order" shall be made at the following times:

    a.    For documents and things, at the time of the production of the documents or things.

    b.    For written responses to interrogatories or requests for admissions, at the time of the written response;

    c.    For deposition testimony and exhibits, at the time of the testimony or within 30 days after receipt by the designating Party of the final transcript of the deposition.

E.   The designation of Confidential Information shall be made as follows:

    a.    For documents, by placing a conspicuous legend on each page or portion of such document entitled to such protection, reading "Confidential – Subject to Protective Order" as appropriate;

    b.    For tangible objects, by placing a label or tag on the object or the container therefore, or if not practicable, as otherwise agreed;

    c.    For written responses to any individual interrogatory or individual request for admission, in writing in the text of the individual response thereto;

    d.    Deposition testimony and the transcripts and video recordings thereof obtained during pretrial discovery shall be treated as "Confidential Subject to Protective Order" for a period of 30 days, or as many days as the parties shall agree, after receipt of the final deposition transcript to allow time for the deponent or counsel for the deponent, or any party or counsel to any party, to notify all Parties of any Confidential Information contained therein. Such Confidential Information contained in deposition testimony may be designated by any party, within 30 days of receipt of the final deposition transcript, by page and line number, and video cassettes, DVDs, or other storage media shall be labeled in accordance with the provisions of this Order. The court reporter shall include on the cover page of each deposition a clear indication that the deposition contains Confidential Information. Any document designated as "Confidential – Subject to Protective Order" that is marked as an exhibit in any deposition shall be treated according to the designation of that document prior to the deposition. The foregoing notwithstanding—except pursuant to a separate written agreement between the Parties, or order of the Court, or in an official judicial proceeding—no Party shall, under any circumstances, release, make public, or cause to be made public any portion of any deposition video recording or audio recording of any video deposition related to MDL 2885, whether designated for confidentiality or undesignated. Prohibited publication extends to distribution of such deposition recordings via the Internet and/or on any social media sites, including but not limited to, YouTube, Facebook, Twitter, or Instagram.

## VI.    FILING CONFIDENTIAL INFORMATION OR ITEMS /FILING UNDER SEAL

A.    Without written permission from the Designating Party or a court order, a Party may not file any Confidential Information into the public record as part of these Actions.  All Parties shall make reasonable efforts to avoid requesting the filing of Confidential Information under seal by, for example, redacting or otherwise excluding from a submission to the Court any such Information not directly pertinent to the submission.  Where not reasonably possible, any Party wishing to file a document or paper containing Confidential may provisionally file such Information under seal, provided that the Designating Party then moves to seal within seven (7) days of the filing, explaining the bases for sealing the Information in question. Failure to file a motion to seal will result in the Information being filed publicly. While any motion to seal is pending, the document or paper containing Confidential Information shall remain under seal provisionally.

B.    The provisions of this Protective Order do not apply to any hearings or trial proceedings in this Action.  The Parties will separately request the Court to enter an Order governing the handling of such materials at hearing or at trial.

## VII.    INADVERTENT PRODUCTION OF SUBSEQUENTLY CLAIMED PRIVILEGED INFORMATION

A.    The production of privileged or work-product protected Discovery Material ("Disclosed Protected Information") in this MDL, whether inadvertent or

otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.  This Protective Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to, or shall serve to limit a Party's right to conduct a review of any Discovery Material for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Additionally, the inadvertent production of Discovery Material without an appropriate designation of confidentiality shall not be deemed a waiver or acknowledgment as to the confidentiality of any inadvertently produced document and any related material.

B.     Upon discovery that a document has been produced, which it believes to contain privileged and/or work product material, the Producing Party must notify the Receiving Party within 30 days, in writing, asserting either the attorney-client privilege or work product protection with respect to Disclosed Protected Information. The written notice of the recall of privileged material shall be accompanied by a log articulating the privilege basis for each privileged document.

C.     The Receiving Party must—unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph VII.D— within five business days of receipt of that writing and, to the extent applicable, any replacement media containing a reproduction of the documents that formerly

11

included (and now omits) the purportedly privileged or protected document: (i) return or destroy all copies of the Disclosed Protected Information and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed. Within five business days of receipt of the notification that the Disclosed Protected Information has been returned or destroyed, the Producing Party must produce a privilege log with respect to the Disclosed Protected Information, articulating the privilege basis for each privileged document.

D.     If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must—within ten business days of receipt of the claim of privilege or protection—move the Court for an Order compelling disclosure of the Disclosed Protected Information (a "Disclosure Motion"). The Receiving Party must seek to file the Disclosure Motion under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure, and may not disclose, rely on, or refer to any of the Disclosed Protected Information. Pending resolution of the Disclosure Motion, the Receiving Party must sequester the Disclosed Protected Information and not use the Disclosed Protected Information or disclose it to any person other than as required by law.

E.     Disclosed Protected Information that is sought to be reclaimed by the Parties to this case pursuant to this Order shall not be used as grounds by any third

party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

F.      Should any motion compelling production of the Disclosed Protected Information be filed, the Producing Party shall retain the burden of establishing its privilege or work product claims.  Nothing in this paragraph shall limit the right of any Party to petition the Court for an in camera review of the Disclosed Protected Information.  Nothing in this Order shall relieve counsel for any Receiving Party of any existing duty or obligation, whether established by case law, rule of court, regulation or other source, to return, and not to review, any privileged or work product materials without being requested by the Producing Party to do so.

## VIII.      RESOLUTION OF DISPUTES REGARDING DESIGNATION OF "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" INFORMATION

A.      If any Party disagrees with the designation of any Discovery Material as "Confidential – Subject to Protective Order," that Party will provide written notice to all other Parties to these actions, and the Parties will attempt first to resolve the dispute on an informal basis before presenting the dispute to the Court.  All items objected to shall continue to be treated as initially designated by the designating Party pending resolution of the parties' dispute.  If the dispute can be resolved, all Parties shall promptly be informed of the resolution.

B.      If the dispute cannot be resolved informally, the designating Party shall file a motion with the Court seeking an order that the Confidential Information subject to the dispute remain confidential.  The designating Party bears the burden of persuading the Court that the information is in fact "Confidential – Subject to Protective Order" within the definition of that term set forth above.  Failure of the designating Party to file such a motion within 30 days from receipt of the written notice waives the designating Party's designation on the subject Discovery Material.

C.      Entering into, agreeing, and/or complying with the terms of this Order shall not:  (a) operate as an admission by any Party that any particular documents, material, or information contain(s) or reflect(s) currently valuable trade secrets or proprietary or commercial information; or (b) prejudice in any way the right of a Party at any time:  (i) to seek a determination by the Court of whether any particular document, item of material or piece of information should be subject to the terms of this Order; (ii) to seek relief on appropriate notice from any provision(s) of this Order, either generally or as to any particular document, item or piece of information; (iii) to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information; or (iv) to seek documents or other information from any source.

14

## IX.     REDACTIONS

A.     To comply with all applicable state, federal, and extraterritorial laws and regulations, the Producing Party may redact from produced documents, materials, and other things information that it is not permitted by such laws and regulations to disclose in litigation even with Court-imposed confidentiality restrictions.

B.     Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63(f), the names of any person or persons reporting adverse experiences of patients and the names of any patients that are not redacted shall be treated as Confidential, regardless of whether the document containing such names is designated as Confidential Information.

C.     Notwithstanding any of the foregoing provisions, nothing contained herein shall be construed as a waiver of a Party's ability to challenge such redactions. The burden as to the propriety of any redaction remains on the Producing Party at all times.

## X.     PRIVILEGE LOG PRODUCTION

A.     Unless otherwise provided in this Protective Order or as otherwise agreed by the parties, any document falling within the scope of any request for production or subpoena that is responsive to the search criteria required by the Order for Preservation and Production of Documents and Electronically Stored

15

Information (including custodians, search terms, and date ranges) and that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party on a cumulative privilege log,[1] which the Producing Party shall produce in an  Excel format with separate categories of information sufficient to describe the nature of the documents, communications or tangible things withheld as to enable the receiving party to access the claims of privilege, including Custodial Source, To, From, Carbon Copy, Date, reason for privilege or immunity and a description sufficient to meet the requirement of Rule 26.  The privilege log shall also identify the production date of the document, or the production wave associated with the document.  Individuals who are In-House Counsel or Outside Counsel of Record shall be noted, and the name of the law firm or entity employing such Counsel shall be identified.  Privilege log production shall be phased such that substantially all documents withheld from a production pursuant to an attorney-client, work product, or other applicable privilege or immunity, shall be identified on a privilege log, which shall be provided by the Producing Party no later than thirty (30) days after the date of service of a custodial production from which the document

---

[1]   The most current privilege log tendered by a party shall include the information noted in this subsection regarding documents withheld from that party's most recent production together with such information regarding documents withheld from all prior productions.

was withheld.  No privilege log need be provided in connection with any production of documents and depositions from the *qui tam* action.

B.    Privilege log identification is not required for post-December 24, 2018 communications specific to the proceedings herein exchanged between the Producing Party and their Counsel or among counsel for the Producing Party.  In addition, neither communications between or among Counsel for Plaintiffs nor communications between or among Counsel for Defendants are required to be identified on the Producing Party's privilege log.

## XI.    REQUEST FOR DOCUMENTS OR INFORMATION SUBJECT TO THIS ORDER IN ACTIONS OTHER THAN THIS MDL

A.    If any Party has obtained Confidential Information under the terms of this Protective Order and receives a subpoena or other compulsory process commanding the production of such Confidential Information, such party shall promptly notify the designating Party, including in such notice the date set for the production of such subpoenaed information along with copies of the requests, subpoena, or order.  The subpoenaed party shall not produce any Confidential Information so received in response to the subpoena prior to the date specified for production in the subpoena unless in response to an order of a court of competent jurisdiction (other than the subpoena or other compulsory process) compelling the subpoenaed party to produce the Confidential Information.  The party subject to subpoena or compulsory process, however, shall have no duty to appear or resist any

application or motion seeking to compel production of such Confidential Information.

## XII.     PARTY'S OWN INFORMATION

A.     The restrictions on the use of Confidential Information established by this Protective Order are applicable only to the use of Confidential Information received by a Party from another Party or from a non-party.  A Party is free to do whatever it desires with its own Confidential Information, provided that any dissemination of Confidential Information by the Party that owns the Confidential Information may lead to the loss of that information's confidential status.

B.     Nothing herein shall impose any restrictions on the use or disclosure by a Party or witness of documents, material or information obtained by such Party or witness independently of the discovery proceedings in these actions, whether or not such documents, material or information are also obtained through discovery proceedings in these actions.

C.     Nothing in this Order shall preclude outside counsel of record in prior related proceedings (*3M Company v. Moldex-Metric, Inc.*, No. 12-611 (D. Minn.); *Moldex-Metric, Inc. v. 3M Innovative Properties Company*, No. 14-1821 (D .Minn.); and *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, No. 3:16-cv-01533-MBS (D.S.C.)) from sharing with Outside Counsel of Record in this Action work

product they created in connection with Confidential Information produced both in this action and in one or more of the prior related proceedings enumerated above.

## XIII.     APPLICABILITY OF ORDER TO THIRD PARTIES

A.     In the course of these actions, the Parties may attempt to discover documents and information from Third Parties.  Any Third Party from whom discovery is sought by the Parties may avail itself upon the protections and limitations of disclosure provided for in this Order by signing this order prior to production.  The Third Party shall identify any Confidential Information produced in accordance with this Order.  By so availing itself of the protections and limitations provided for in this Order, any such Third Party shall submit to the jurisdiction of the Court for all matters relating to or arising out of this Order.

B.     The Parties hereby agree to treat any material properly designated Confidential produced by a Third Party in accordance with the terms of this Order. The Parties shall reference this Order in any subpoena or discovery request they serve or otherwise provide to any Third Party.

## XIV.     VIOLATIONS

A.     In the event that any person or party violates the terms of this Protective Order, the aggrieved Producing Party should apply to the Court to obtain relief against any such person or party violating or threatening to violate any of the terms of this Protective Order.  In the event that the aggrieved Producing Party seeks

injunctive relief, it must direct the petition for such relief to this Court. To the extent the same document or categories of documents are at issue in both the above-captioned MDL 2885 and in any Related Litigation, the Parties will attempt first to resolve the issue in the MDL and before this Court. The Parties and any other person subject to the terms of this Protective Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Protective Order.

## XV.  MODIFICATION OF THIS PROTECTIVE ORDER

A.  This Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court made upon reasonable written notice. Unless otherwise ordered, or agreed upon by the Parties, this Protective Order shall survive the termination of this action. The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions, and additions to this Protective Order as the Court may from time to time deem appropriate.


**SO ORDERED**:



*M. Casey Rodgers*          Dated:  June 17, 2019
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

## EXHIBIT A

| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
|---|---|
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

I, _____, declare that:

1.    My address is _____, and the name and address of my present employer is _____.

2.    My title is _____.

3.    I have received a copy of the Stipulated Protective Order (the "Protective Order") in these actions.

4.    I have carefully read and understand the provisions of the Protective Order, agree to be bound by them, and specifically agree I will not use or disclose to anyone any of the contents of any Confidential Information received under the protection of the Protective Order in violation thereof.

5.    I understand that I am to retain all copies of any of the materials that I receive which have been so designated as Confidential Information in a container, cabinet, drawer, room, or other safe place in a manner consistent with the Protective Order and that all copies are to remain in my custody until I have completed my assigned or legal duties.  I will return all Confidential Information which comes into my possession or which I have prepared relating thereto to counsel for the party by

whom I am retained.  I acknowledge that such return or the subsequent destruction of such materials shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order.

6.     I consent to the exercise of personal jurisdiction by this Court in connection with this Declaration and my obligations under the Protective Order.

7.     I declare under penalty of perjury that the foregoing is true and correct.


Executed this _____ day of _____ 20___ at _____ in the State of _____.


By:  _____
(SIGNATURE)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PRETRIAL ORDER NO. 10

### ORDER GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

The following Order governs the production of documents and electronically stored information ("ESI") and shall apply to all discovery of ESI and hard copy documents in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules. The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in an efficient manner and in accordance with the Federal Rules. By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

## I.     Format for Defendants' Productions

The following section governs the production of documents and electronically stored information ("ESI") by 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo

Intermediate, LLC, Aearo, LLC, and any of their related or affiliated entities or individuals named as defendants herein (collectively, "Defendants"), and shall apply to all discovery of ESI and hard copy documents by Defendants in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

(a) <u>File Types and Formats.</u>  All spreadsheet (*e.g.*, Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images.  All word processing (*e.g.,* Microsoft Word), presentation (*e.g.,* Microsoft PowerPoint), image (*e.g.,* .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs.  All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc.  In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion.

(b) <u>Native Files.</u>  Any document produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively."  To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file

Case 3:19-md-02885-MCR-GRJ   Document 894-1   Filed 12/30/19   Page 36 of 53
Case 3:19-md-02885-MCR-GRJ   Document 843   Filed 06/17/19   Page 3 of 18

Page 3 of 18

with the text path provided in the *.dat file.  Native files will be produced in a separate folder on the production media.  Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production.

(c)   <u>TIFF Images.</u>  Any document produced as TIFF images shall be named according to the Bates number of the corresponding TIFF image.  Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image.  These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

(d)   <u>Digital Photos.</u>  Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

(e)   <u>Databases, Structured, Aggregated or Application Data.</u>  The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.  The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format.  If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

(f)   <u>Hard Copy Documents.</u>  Documents that exist in hardcopy will be scanned to *.tiff image format as set forth in Subsection I(c) above. Defendants' hard copy documents that are not text-searchable shall be made searchable by OCR prior to

production where possible. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[1]).  In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. Defendants will make their best efforts to unitize the documents correctly.

      (g)    De-NISTing.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

      (h)    Deduplication.  Defendants shall make reasonable efforts to de-duplicate ESI.  ESI produced by Defendants shall be globally de-duplicated across all collected custodial and non-custodial sources.  Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL

---

[1]   Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the ALL FILE PATHS[2] metadata field.

(i)    Embedded Files.  Embedded files, except for images embedded in emails, are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

(j)    Dynamic Fields.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

(k)    Parent-Child Relationships.    For email families, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

(l)    Time Zone.  All provided metadata pertaining to dates and times will be standardized to UTC.

(m)    Bates Numbering.   Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which

---

[2]    ALL FILE PATHS metadata field shall include the original file/folder paths, including file name for non-emails, where reasonably available, of all the locations where copies of the item were located at the time of collection, separated by semi-colons, in the order corresponding to the order of names in ALL CUSTODIANS. For emails collected from container files (e.g., .pst's), these include the original file paths of the container files and the location of the emails within the folder structure of the mail container/.pst from which it was collected, where reasonably available.

Case 3:19-md-02885-MCR-GRJ Document 891-1 Filed 12/30/19 Page 39 of 53
Case 3:19-md-02885-MCR-GRJ Document 843 Filed 06/37/19 Page 6 of 53

Page 6 of 18

they were attached.  In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.  The Bates number shall:

      (i)      be consistent across the production;

      (ii)     contain no special characters; and

      (iii)    be numerically sequential within a given document.

    (n)     <u>Excluded File Types.</u>  Absent a particularized need and good cause showing, the Parties agree that there is no need to collect ESI from the following sources:

      (i)    Deleted, slack, fragmented, or other data only accessible by forensics;

      (ii)   Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

      (iii)  On-line access data such as temporary internet files, history, cache, cookies, and the like;

      (iv)  Back-up data that is duplicative of data that can be collected elsewhere; and

      (v)   Server, system, or network logs.

    (o)     <u>Redactions.</u>  Other than as permitted by this Order or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance may be made within a produced document or ESI item.  Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege").  Where a responsive document contains both redacted and non-redacted content,

Defendants shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

(i) <u>Spreadsheets.</u> Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provide herein.

(ii) <u>Other Documents.</u> All native files that require redaction shall first be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s). Where reasonably possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect Defendants' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Defendants shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable. Redacted versions of documents that contained color in their un-redacted form shall be produced in color in TIFF format.

(p) <u>Load File Formats.</u> ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

(q)    Metadata to Be Produced.  The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers, created, at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

(r)    Extracted Text and OCR.  Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

(i)    Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets). All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

(ii)    OCR (Redacted Native ESI, Hard Copy Documents).  In the event a document other than spreadsheets, *e.g.*, Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for

any un-redacted portions of the documents.  Document-level OCR text files shall also be provided for all hard copy scanned documents.  OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters).  Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

       (iii)    <u>Format of Extracted Text and OCR.</u> The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder.  The number of TXT files per folder should be limited to 1,000 files.

    (s)    <u>Encryption.</u>  To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted by Defendants. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption.  All production volumes uploaded by Defendants via this file sharing document repository shall remain available for download for no less than thirty (30) calendar days. In such cases, the Defendants shall transmit the encryption key or password to a requesting

Case 3:19-md-02885-MCR-GRJ   Document 841   Filed 12/30/19   Page 43 of 53
Case 3:19-md-02885-MCR-GRJ   Document 443-1   Filed 06/17/19   Page 10 of 18

Page 10 of 18

Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

II.      **Defendants' Identification and Classification of Documents**

     (a)     Agreement Regarding Technology-Assisted Review**.**

          (i)     TAR Cooperation. The Parties acknowledge the benefits of using technology-assisted review ("TAR") technology and methodology, such as predictive coding systems, in assisting in the identification of responsive documents. Used properly and transparently between the Parties, subject to negotiation, an appropriate and reasonable TAR protocol can aid in identifying responsive documents, and do so with maximum efficiency.

          (ii)     TAR Limitations. By agreeing to use TAR in this MDL, Defendants do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to use TAR in this MDL, the Defendants do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). Defendants preserve all such Privileges.

          (iii)     TAR Protocol. The Parties agree to use TAR to identify and classify potentially responsive documents in connection with Defendants' production. The Parties will jointly agree to the TAR system that they propose to use to identify and classify documents, and set out their proposed TAR system, workflow and validation processes in a separate formal TAR protocol to be agreed upon between the Parties.

Case 3:19-md-02885-MCR-HTC Document 891-1 Filed 12/30/19 Page 44 of 53
Case 3:19-md-02885-MCR-GRJ Document 443 Filed 06/17/19 Page 11 of 18

Page 11 of 18

       (iv)    <u>Meet and Confer.</u>  The Parties agree to meet and confer concerning the TAR protocol to be used for Defendants' production, and to submit their joint proposed TAR protocol or points of dispute for resolution by the Court within fourteen (14) days of the date of the entry of this order.

### III.    <u>Required Production Format for Plaintiffs' Productions</u>

       (a)    The Parties anticipate that the production of Plaintiffs' case-specific materials will be the subject of a future Court order.  Absent further agreement or order of the Court, Plaintiffs' counsel shall produce case-specific materials in native file format, PDF, or such other reasonably useable format that retains the relevant characteristics of the original document.  Any document that requires redaction shall be produced in image format, *e.g.*, TIFF or PDF.  All of Plaintiffs' production documents shall be uniquely named and sequentially numbered with Bates Stamps.

       (b)    For email families in Plaintiffs' productions, the parent-child relationships (the association between emails and attachments) should be preserved, *i.e.*, email attachments should be consecutively produced with the parent email record.

       (c)    To the extent Plaintiffs produce a document other than in native format, and Defendants request metadata or other information, the Parties shall reasonably confer about an alternative production format for such document, including the necessity for such alternative production format.  Any such request by a Defendant shall be specific and targeted.

### IV.    <u>Provisions Applicable To Both Plaintiffs' and Defendants' Productions.</u>

       (a)    <u>Known Responsive Material Must Be Produced.</u>  ESI that is known to Plaintiffs' Counsel or Defendants' Counsel to be non-privileged and responsive to a

Case 3:19-md-02885-MCR-HTC Document 843-1 Filed 12/30/19 Page 45 of 53
Case 3:19-md-02885-MCR-GRJ Document 443 Filed 06/17/19 Page 12 of 18

Page 12 of 18

discovery request shall be produced without regard to whether it was responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique, unless Counsel specifically identifies the documents as being withheld pursuant to a specific objection.

(b) <u>Discrete Document Collections.</u>  Those portions of a Plaintiff's or Defendant's documents that represent discrete document collections, such as substantially relevant folders of ESI specifically segregated by Defendants, Defendants' employees, or Plaintiffs, before or after the commencement of this litigation, that are substantially relevant to the claims and defenses in this proceeding, shall be reviewed for responsiveness (subject to appropriate claims of privilege) without regard to whether a given document in the collection is responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique.

(c) <u>Unsearchable Documents.</u>  Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

(d) <u>Use of Other Technology or Methodology.</u>  Prior to use or further use by any Party other than as specified within this protocol, the Parties must meet and confer to disclose and discuss any proposed use of software or other technologies used to identify or eliminate sources of potentially responsive documents, including keyword or Boolean searching, file type culling, de-duplication, filtering, near de-duplication, e-mail thread suppression, clustering or concept searching.  Use of such technologies to reduce the

Case 3:19-md-02885-MCR-GRJ   Document 841-1   Filed 12/30/19   Page 46 of 53
Case 3:19-md-02885-MCR-GRJ   Document 443   Filed 06/17/19   Page 13 of 18

Page 13 of 18

volume of materials to be collected or reviewed, other than as described within this document, requires the opposing party's consent and will be subject to a separate mutually agreed-upon stipulation or Order of the Court setting forth the protocol for the use of such technologies as negotiated by the Parties.

(e)     Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources.  The Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

(f)     Mobile and Handheld Device Documents and Data.  If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol.  To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

V.      **Parties' Agreed-Upon Early Production of Documents**

(a)     Documents Produced by Defendants in Prior Proceedings.  Documents produced by any Defendant herein in *3M Co. v. Moldex-Metric, Inc.,* Cause No. 12-611 (D. Minn.); *Moldex-Metric, Inc. v. 3M Innovative Properties Company,* Cause No. 14-1821 (D .Minn.); and/or *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* 3:16-cv-01533-MBS, (the "Prior Proceedings") shall be produced within ten (10) days of entry of this Order.  Wherever possible, all metadata available shall be produced in accordance with

Case 3:19-md-02885-MCR-GRJ Document 8431 Filed 12/30/19 Page 47 of 53
Case 3:19-md-02885-MCR-GRJ Document 844-1 Filed 06/17/19 Page 14 of 18

Page 14 of 18

Exhibit A.  Documents produced from Prior Proceedings shall bear the original Bates numbers assigned to them in those proceedings.  To the extent any documents produced in Prior Proceedings are withheld from Defendants' production to Plaintiffs, Defendants shall identify the basis on which the documents are being withheld, including any impacted custodians and document categories, to enable the Parties to confer about the potential later production of such documents.

      (b)      <u>Production of Documents from Prior FOIA Requests.</u>  The Parties agree to produce documents obtained by Plaintiff Leadership, Defense Counsel, or Defendants pursuant to Freedom of Information Act ("FOIA") requests received as of the date of the entry of this Order, within ten (10) days of entry of this Order in accordance with the production format specifications described in Section I.  By agreeing to produce FOIA material in this MDL, the Parties do not acknowledge or concede that they are obligated to produce FOIA material in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to produce FOIA material in this MDL, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). The fact of the Parties' agreement to produce these FOIA materials in this proceeding shall not be used by any person against any Party or their counsel in any way, in this or any other matter or proceeding, including as a basis to seek production of any other documents.  The Parties preserve all rights.

Case 3:19-md-02885-MCR-GRJ Document 4431 Filed 06/17/19 Page 15 of 53
Case 3:19-md-02885-MCR-GRJ Document 891-1 Filed 12/30/19 Page 48 of 53

Page 15 of 18

## VI.     **Subpoenas, FOIA Requests, and Touhy Requests**

(a)     If either Defense Counsel or Plaintiff Leadership (as the "Issuing Party") issue a non-party subpoena, a FOIA request, or a Touhy request after the date of this Order, the Issuing Party shall include a copy of this Order with the subpoena and request that third parties produce data and documents in accordance with the production specifications set forth in Section I, to the extent feasible.

(b)     Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

(c)     The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena, FOIA request, or Touhy request to the other Party, within fourteen (14) days of receipt of those documents.

(d)     If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to the other Party.

## VII.     **ESI Liaisons**

To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be David Buchanan, or his designee, and the ESI liaison for 3M shall be Michelle Six, or her designee.  All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaison and lead counsel, and any identified designees.

Case 3:19md02885-MCR-GRJ   Document 3041   Filed 12/30/19   Page 49 of 53
Case 3:19md02885-MCR-GRJ   Document 3441   Filed 06/17/19   Page 16 of 18

Page 16 of 18

VIII.       **Miscellaneous**

(a)       <u>Impact of Order on Other Obligations.</u> Nothing in this agreement shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

(b)       <u>Continuing Obligations.</u>  The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and periods set forth in this Order.  This Protocol does not address or resolve any objections to the scope of the Parties' respective discovery requests.

(c)       <u>Reservation of Rights.</u>  The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced.  The Parties shall meet and confer regarding such request(s) prior to any search or production related thereto.

(d)       <u>Document Storage.</u>  During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the opposing Parties and to preserve the original native format version of any ESI produced in non-native format.

Case 3:19-md-02885-MCR-GRJ   Document 841-1   Filed 12/30/19   Page 50 of 53
Case 3:19-md-02885-MCR-GRJ   Document 443   Filed 06/17/19   Page 17 of 18

Page 17 of 18

(e)　　<u>No Waiver.</u>  This Order shall not constitute a waiver of any objection to the ultimate discoverability, privilege, admissibility, or relevance of any records addressed herein.

(f)　　<u>Good Faith Compliance and Conferral Obligation.</u>  The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order.  No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.  The Parties shall reasonably cooperate in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and exchange of ESI in these proceedings and to further the exchange of information commenced at the Parties' Rule 26(f) Conference.

(g)　　<u>Non-English Documents.</u>  To the extent that Documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such Document in the original language or languages in which it was written when collected.  The Producing Party has no obligation to create a translation of the Documents or any portion thereof, but shall provide any translation of the Document or any portion thereof that exists or is created through machine translation prior to production of the Document.

(h)　　<u>Alternate Formats.</u>  Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

Case 3:19-md-02885-MCR-HTC   Document 891-1   Filed 12/30/19   Page 51 of 53
Case 3:19-md-02885-MCR-GRJ   Document 443   Filed 06/17/19   Page 18 of 18

Page 18 of 18

(i)      <u>Third-Party Data.</u>  The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

(j)      <u>Effect of Order.</u>  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**DONE** and **ORDERED** on this 17th day of June, 2019.

_M. Casey Rodgers_

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT A**

1.  BEGPROD or BEGBATES (Beginning Production Number)
2.  ENDPROD or ENDBATES (Ending Production Number)
3.  BEGATTACH
4.  ENDATTACH
5.  PARENTID
6.  NUMATTACH or ATTACHMENT COUNT
7.  MD5HASH
8.  CUSTODIAN
9.  ALL CUSTODIANS (where applicable)
10. FROM
11. TO
12. CC
13. BCC
14. SUBJECT
15. SENT DATE
16. SENT TIME
17. RECEIVED DATE
18. RECEIVED TIME
19. CONVERSATION INDEX
20. FILE PATH
21. ALL FILE PATHS
22. FILE EXTENSION
23. FILE NAME
24. DOCUMENT TYPE (or FILE DESCRIPTION)
25. FILESIZE
26. AUTHOR
27. ORGANIZATION (or COMPANY)
28. TITLE
29. PAGECOUNT (or IMAGE COUNT)
30. CREATED DATE
31. CREATED TIME
32. LAST MODIFIED DATE
33. LAST MODIFIED TIME
34. NATIVEFILE_LINK
35. TEXTFILE_LINK
36. EMBEDDED OBJECTS (where applicable)
37. ATTACHMENT NAMES
38. LAST MODIFIED BY
39. REDACTED
40. IMPORTANCE (emails only)
41. REDACTIONREASON

Case 3:19-md-02885-MCR-GRJ Document 841-1 Filed 10/30/19 Page 53 of 53

42.   HASREVISIONS
43.   HASCOMMENTS
44.   HASHIDDENTEXT
45.   HASHIDDENSLIDES
46.   HASSPEAKERNOTES
47.   HASHIDDENROWS
48.   HASHIDDENCOLUMS
49.   HASHIDDENWORKSHEETS
50.   HASVERYHIDDENWORKSHEETS
51.   CONFIDENTIALITY
52.   FAMILYDATE
53.   MSGID