**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Minnesota Cases with Pending Motions to Remand | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**AMENDED ORDER[1]**

This matter is before the Court on 341 motions to remand filed on behalf of more than 5,700 Plaintiffs in this multidistrict product liability litigation against 3M Company and its predecessor, Aearo Technologies, LLC, for damages related to the Plaintiffs' use of the Combat Arms Earplug ("CAEv2").[2] Plaintiffs' cases were originally filed in Minnesota state courts. Defendants removed the cases under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[3] Plaintiffs argue removal was improper and the Court lacks subject matter jurisdiction over the Minnesota

---

[1] Portions of the briefing and record in this matter were filed under seal, in light of an applicable protective order entered in a prior related litigation. This Amended Order omits references to information included in those sealed materials.

[2] Plaintiffs' complaints variously name the following defendants, who will be referred to collectively in this Order as "Defendants": 3M Company; 3M Occupational Safety, LLC; Aearo Holdings, LLC; Aearo Intermediate, LLC; Aearo, LLC; and Aearo Technologies, LLC. The complaints allege state law claims for strict product liability (design defect and failure to warn), negligence, and violations of the Minnesota Uniform Deceptive Trade Practices Act.

[3] Because the Court concludes that federal officer jurisdiction exists, this Order does not address the merits of Defendants' alternative basis for removal, federal enclave jurisdiction.

cases because there is no federal officer jurisdiction and the forum defendant rule precludes removal on the basis of diversity.[4] After thorough consideration and for the following reasons, the motions to remand are denied.[5]

I.     **Background**

The CAEv2 was a "dual-ended, non-linear (selective attenuation)" earplug developed to serve the unique hearing protection needs of the United States military. *See Hunt*, 3:19cv3215, Complaint, ECF No. 1-1 at 10-11.[6] It had two tips, one green and one yellow, that provided different options for hearing attenuation depending on which tip was inserted. The green end of the CAEv2 was designed to work like a traditional earplug, providing protection from all ambient noise. In contrast, the yellow end of the CAEv2 was designed to reduce "loud impulse sounds," such as gunfire, while still allowing lower-level sounds, such as normal speech, to pass through. *See id.* at 11. This end was meant to improve servicemembers' situational awareness "on the battlefield" while still providing protection from high-level

---

[4] Defendant 3M Company is a citizen of Minnesota, the state in which Plaintiffs filed their complaints. *See* 28 U.S.C. § 1441(b)(2). Plaintiffs also objected to removal on procedural grounds, based on an argument that the Aearo defendants did not consent to removal. The Court has reviewed numerous individual dockets for Minnesota cases. From this review, it is clear that the Aearo defendants *did* consent to removal. Accordingly, this objection is overruled.

[5] The Court enters this omnibus Order (as opposed to hundreds of individual Orders) because its findings as to federal officer jurisdiction resolve an issue common to all Minnesota cases in this litigation.

[6] For purposes of efficiency and judicial economy, all references to the record in this Order refer to the filings in *Hunt*, 3:19cv3215.

impulse noises. *See* Medical Procurement Item Description ("MPID"), ECF No. 15-2 at 52.

Plaintiffs are current or former military personnel who allegedly were issued and used the CAEv2 during their service. Plaintiffs maintain that while wearing the CAEv2, they were "exposed to loud and impulse noise associated with combat [and] combat training." *See* Complaint, ECF No. 1-1 at 10. Since that time, Plaintiffs have been diagnosed with hearing loss and/or tinnitus, which they claim resulted from their use of the CAEv2. More specifically, Plaintiffs allege that the CAEv2 "had a dangerous design defect" in that "the stem of the earplug was too short to fit correctly in many people's ears," which "caused [it] to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug." *See id*. at 12, 20. They further allege that Defendants knew about this design defect but nonetheless manufactured and sold the CAEv2 to the military without adequate warnings of its potential health risks and without instructions on "how to correctly and safely use" it. *See id*. at 23.

Defendants deny these allegations and assert, *inter alia*, that Plaintiffs' claims are barred by the federal government contractor defense set forth in *Boyle v. United Techs. Corp*., 487 U.S. 500 (1998), because Aearo sold the CAEv2 to the United States military under government contracts and in accordance with the military's specifications.

## II. Legal Standard

As a general matter, a civil case filed in state court is removable to federal court only if the case could have been brought in federal court originally. 28 U.S.C. § 1441(a). If it is later determined that the federal court lacks jurisdiction, the case must be remanded. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005).

Removal jurisdiction in non-diversity cases, such as this one, generally exists only where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is an exception to the well-pleaded complaint rule, allowing removal of a civil action commenced in state court "against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office," regardless of whether a federal question appears on the face of the complaint. *See also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). Importantly, unlike the general removal statute, 28 U.S.C. § 1441, which must be strictly construed in favor

of remand, *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999), the federal officer removal statute is "liberally construed" in favor of granting federal officers and agencies (and those acting under federal officers and agencies) access to a federal forum in which to litigate the merits of defenses arising from their official duties, *see Watson v. Philip Morris, Co., Inc.*, 551 U.S. 142, 147 (2007); *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).").[7]

---

[7] The cases cited by Plaintiffs to the contrary, *see* ECF No. 19 at 2-3, are either outdated, non-binding, or involve removal statutes *other than* § 1442(a)(1).

## III. Discussion[8]

A private party seeking to remove under 28 U.S.C. § 1442(a)(1) must demonstrate that: (1) it is a "person" within the meaning of the federal officer removal statute; (2) it was "acting under" the United States, its officers, or its agencies; (3) the actions for which it is being sued were performed under color of federal authority; and (4) it has a colorable federal defense to the plaintiff's claims. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017). Here, it is

---

[8] As an initial matter, Plaintiffs challenge all of the substantive evidence Defendants submitted in support of their responses to the motions to remand. They do not, however, dispute the rather uncontroversial proposition that a court may consider a wide range of evidence in determining whether the jurisdictional requirements of removal are met. *See Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990) (stating that on a motion to remand, "[d]efendants have the opportunity to submit affidavits, depositions, or other evidence to support removal"). Rather, Plaintiffs argue that Defendants' evidence is inadmissible under the Federal Rules of Evidence because it is not properly authenticated and constitutes hearsay. This argument fails. It is true, of course, that authentication is a condition precedent to admissibility and that hearsay is generally not admissible. *See* Fed. R. Evid. 802, 901. But this is not an evidentiary hearing. The Court is not deciding whether or not to admit Defendants' exhibits into evidence at a hearing or trial but is simply evaluating them for purposes of a pretrial ruling. Plaintiffs have cited no authority—nor has the Court found any—to support their argument that strict compliance with all prerequisites to admissibility is necessary before an exhibit may be considered on a motion to remand. Courts in analogous circumstances have concluded otherwise. *See, e.g., Butler v. Charter Commc'ns, Inc.*, 755 F. Supp. 2d 1192, 1196 (M.D. Ala. 2010) ("[D]istrict courts within [the Eleventh Circuit] have concluded the failure to authenticate a document is not sufficient ground to exclude it from consideration in a motion to remand."); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008) ("The general rule in [the Eleventh] Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial."). Given the nature of Defendants' exhibits, the Court finds that they could be readily authenticated and reduced to admissible, non-hearsay form at trial, whether, for example, through certified transcripts of the prior deposition testimony (self-authenticating under Fed. R. Evid. 902(8)) or through testimony from a participant in the email exchanges, *see United States v. White*, 660 F. App'x 779, 783 (11th Cir. 2016) (testimony of a witness with personal knowledge sufficient to authenticate emails). Accordingly, Plaintiffs' evidentiary objections are overruled.

undisputed that Defendants, as corporations, are "persons" for purposes of § 1442(a)(1). *See Assoc. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (citing 1 U.S.C. § 1). The Court addresses the remaining requirements in turn.

### A. The "Acting Under" Requirement

The Court first considers whether Defendants have shown they were "acting under" an "officer" or "agency" of the United States when they took the actions that gave rise to Plaintiffs' claims. In this context, the "acting under" requirement contemplates a relationship in which a private party acts under the "subjection, guidance, or control" of a federal officer or agency in "an effort to assist, or to help carry out, the duties or tasks of th[at] federal superior." *Watson*, 551 U.S. at 151-152. This requirement is "broad" and must be "liberally construed" in a manner that effectuates the policy objectives of § 1442(a)(1)—principally, to allow federal officers (and those acting under federal officers) to litigate federal defenses in federal courts. *See id*. at 147, 150-51; *see also Caver*, 845 F.3d at 1142. Applying this standard, numerous courts have "unhesitatingly" concluded that the "acting under" requirement is satisfied where a plaintiff's allegations are directed at a private entity's actions while carrying out a contractual duty to produce an item for the federal government which, in the absence of a contract with a private firm, the government would have been forced to produce on its own. *See Sawyer v. Foster*

*Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *see also Watson*, 551 U.S. at 153-54; *Caver*, 845 F.3d at 1145; *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017); *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812-13 (3d Cir. 2016); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012); *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

Defendants have shown that Plaintiffs' allegations are directed at their actions, or their failure to act, in connection with federal contracts to "produce an item that [the government] needed"—the CAEv2, an earplug considered integral to the health and safety of members of the United States military—which, "in the absence of a contract with a private firm, the [g]overnment would have had" to produce itself. *See Watson*, 551 U.S. at 153-54; *Caver*, 845 F.3d at 1144. It is undisputed that Defendants supplied the CAEv2 to the military pursuant to "a series of Indefinite-Quantity Contracts" with the federal government. *See* Complaint, ECF No. 1-1 at 11, 18.[9] Additionally, the current evidentiary record supports a conclusion that the military exercised a considerable degree of guidance and control over the design of the CAEv2. For example, the evidence reflects that Dr. Douglas Ohlin, a then-federal officer, "proposed the inclusion of the filter that was a key updated feature of the CAEv2" and "specifically directed" Aearo to shorten the earplug, which

---

[9] *See also* MPID, ECF No. 15-2 at 52-55.

resulted in one of the alleged design defects described in Plaintiffs' complaints.[10] *See* Notice of Removal, ECF No. 4 at 4-5. There is also evidence that the military was involved in testing the CAEv2.[11] Plaintiffs have submitted no *evidence* to the contrary.[12] Thus, in accordance with the Supreme Court's admonition to avoid "a narrow, grudging interpretation of § 1442(a)(1)," *see Willingham*, 395 U.S. at 407, the Court finds the current record sufficient to establish that Defendants were "acting under" an "officer" or "agency" of the United States when carrying out the actions challenged by Plaintiffs.

---

[10] Memorandum for Staff Director, Joint Readiness Clinical Advisory Board by Dr. Douglas Ohlin ("Ohlin Memo"), ECF No. 15-2 at 5 (describing "the American military's contribution[s] in the development" and testing of the CAEv2); **[\*\*\* REDACTED \*\*\*]**; Aearo Company Report, *How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug* (July 10, 2000) ("Aearo Report"), ECF No. 15-2 at 30 ("The Combat Arms earplug was shortened, at the request of the Army, so that it would fit into a carrying case. Because of this, . . . the current length of the UltraFit Earplug end of the Combat Arms Plug is too short for proper insertion."); **[\*\*\* REDACTED \*\*\*]**.

[11] Ohlin Email to Brian Myers dated March 23, 2005, ECF No. 15-2 at 24 (stating that the CAEv2 was "evaluated and specified by the U.S. Armed Forces" in that it had been "evaluated during blast overpressure studies at White Sands Missile Range and at the Army Research Lab at the Aberdeen Proving Ground[,] . . . approved by the DoD Hearing Conservation Working Group[,]" and deemed an "approved hearing protector" in the "Defense Occupational and Environmental Health Readiness System – Hearing Conservation"); Ohlin Email to Bryan Myers dated September 20, 2001, ECF No. 15-2 at 46 (forwarding summary of a "combat earplug study" on 26 servicemembers)

[12] In their motions to remand, Plaintiffs offer as "evidence" links to several websites—including a link to Dr. Ohlin's "own" obituary in The Baltimore Sun—characterizing Dr. Ohlin as "merely a 'consultant' to the government," as opposed to an officer or employee. *See* ECF No. 13-1 at 15-16. These informal, online characterizations do not overcome Defendants' threshold evidentiary showing that Dr. Ohlin was employed by the military during the relevant time period, which includes sworn deposition testimony and evidence of an Army email address.

Plaintiffs' arguments to the contrary are unavailing. To begin with, Plaintiffs insist that the "acting under" requirement is not met because the military would not have been forced to produce its own earplugs absent a contract with Defendants; and that instead, another private firm—Defendants' competitor, Moldex Metric, Inc.— would have supplied the earplugs. The problem with this argument is that the applicability of the federal officer removal statute has never been limited to circumstances in which the defendant was the *only* private firm capable of fulfilling the federal government's procurement needs. *See, e.g.*, Watson, 551 U.S. at 154 (agreeing that the "acting under" requirement was met where "at least arguably, [the defendant] performed a job that, in the absence of a contract with *a private firm*, the [g]overnment itself would have had to perform") (emphasis added) (discussing *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387 (5th Cir. 1998)); *Bennett v. MIS Corp*., 607 F.3d 1076, 1088 (6th Cir. 2010) ("acting under" requirement was met where private party defendant performed "a job that, in the absence of a contract with [the defendant] or another private mold remediation firm the [government] itself would have had to perform."). If Plaintiffs were correct, federal officer removal would be effectively unavailable to private firms because, in the modern global economy, virtually every product and service can be supplied by any number of private firms. Such a result would be wholly inconsistent with the text, history, and purposes of § 1442(a)(1), as well as decades of Supreme Court precedent. *See*

*Watson*, 551 U.S. at 147-153 (examining the "language, context, history, and purposes" of § 1442(a)(1) to determine how broadly the statute should be applied).

Plaintiffs also argue that Defendants have failed to show they were "acting under" a federal agency because there is no evidence they were explicitly directed, by the military, not to provide warnings about the dangers associated with the CAEv2. This argument is quickly rejected. Defendants are not required to show "that the complained-of conduct *itself* was done at the behest of a federal agency" in order to satisfy the "acting under" requirement. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015) ("*Defender Ass'n*"); *see also Zeringue*, 846 F.3d at 792 ("Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy [the "acting under" requirement]."). Rather, this requirement is met where a plaintiff's "allegations are directed at the relationship between" the defendant and the government. *See Defender Ass'n*, 790 F.3d at 470. Here, Plaintiffs' allegations are clearly directed at Defendants' actions in connection with its contractual relationship with the military involving the CAEv2.

### B. "Under Color of" Federal Office

The second criterion of federal officer removal requires Defendants to show that the acts challenged in Plaintiffs' lawsuits were taken "under color of [federal] office." *See* 28 U.S.C. § 1442(a)(1). In other words, there must be "a causal

connection between [Plaintiffs'] claims and an act of [Defendants] that forms the basis of those claims." *See Caver*, 845 F.3d at 1144. Importantly, "the hurdle erected by this requirement is quite low," as § 1442(a)(1) encompasses claims both "for *or* relating to any act" performed under official authority.[13] *See id.* (emphasis added). "The phrase 'relating to' is broad and requires only 'a connection or association' between the act in question and the federal office." *Id.* Moreover, courts credit the defendant's theory of a case when determining whether a causal connection exists. *See Acker*, 527 U.S. at 432; *see also Leite*, 749 F.3d at 1124; *Isaacson*, 517 F.3d at 137.

Defendants have shown the requisite "connection or association." Under Defendants' theory of the case, "Aearo developed and designed the CAEv2, including establishing its purportedly defective length, at the direction of federal officers"—in particular, Dr. Ohlin—and in compliance with detailed specifications prescribed by the United States military.[14] *See* Def. Response, ECF No. 15-4 at 22-23. Thereafter, Defendants manufactured and sold the CAEv2 to the military under various contracts with the federal government. Because the actions challenged by

---

[13] This was not always the case. Under the prior version of the statute, a defendant had to establish that the plaintiff's suit was "*for* any act under color of federal office," *see* 28 U.S.C. § 1442(a)(1) (2010), which required a showing that "the acts for which they were being sued . . . occurred at least in part *because of* what they were asked to do by the government," *Isaacson*, 517 F.3d at 137. In 2011, Congress amended § 1442(a)(1) to "broaden the scope of acts" that enable federal officer removal. *Caver*, 845 F.3d at 1144 n.8.

[14] *See supra* notes 10-11.

Plaintiffs—that is, Defendants' alleged design, production and sale of a defective product, and failure to provide adequate warnings—involve actions that Defendants maintain were performed either at the direction of the government or in connection with their contractual relationship with the government, the necessary causal link has been shown for purposes of the federal officer removal statute. Disputes about whether certain acts were specifically directed by the government, or outside the scope of Defendants' official authority, are properly resolved by federal, not state, courts. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996) ("If the question raised by the plaintiff is whether the defendant was engaged in some kind of frolic, or acting in contravention of his official duties, the parties will have the opportunity to present their versions of the facts to a federal court.") (internal quotations omitted); *see also Leite*, 749 F.3d at 1124; *Bennett*, 607 F.3d at 1088; *Isaacson*, 517 F.3d at 138. "This is exactly what [§ 1442(a)(1)] was designed to accomplish." *Willingham*, 395 U.S. at 407.

   C.   **Colorable Federal Defense**

The only remaining question is whether Defendants have raised a colorable federal defense. A "colorable" defense is one that is "plausible," *Caver*, 845 F.3d at 1145, which is to say that the defense is not "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous," *see Zeringue*, 846 F.3d at 790. Thus, a defendant's burden on this issue is relatively

Plaintiffs—that is, Defendants' alleged design, production and sale of a defective product, and failure to provide adequate warnings—involve actions that Defendants maintain were performed either at the direction of the government or in connection with their contractual relationship with the government, the necessary causal link has been shown for purposes of the federal officer removal statute. Disputes about whether certain acts were specifically directed by the government, or outside the scope of Defendants' official authority, are properly resolved by federal, not state, courts. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996) ("If the question raised by the plaintiff is whether the defendant was engaged in some kind of frolic, or acting in contravention of his official duties, the parties will have the opportunity to present their versions of the facts to a federal court.") (internal quotations omitted); *see also Leite*, 749 F.3d at 1124; *Bennett*, 607 F.3d at 1088; *Isaacson*, 517 F.3d at 138. "This is exactly what [§ 1442(a)(1)] was designed to accomplish." *Willingham*, 395 U.S. at 407.

   C.   **Colorable Federal Defense**

The only remaining question is whether Defendants have raised a colorable federal defense. A "colorable" defense is one that is "plausible," *Caver*, 845 F.3d at 1145, which is to say that the defense is not "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous," *see Zeringue*, 846 F.3d at 790. Thus, a defendant's burden on this issue is relatively

low. The defendant need not "virtually . . . win his case before he can have it removed," and removal can be proper even if the defendant's federal defense is "ultimately reject[ed]." *Acker*, 527 U.S. at 431 (internal quotes omitted); *see also Mesa v. California*, 489 U.S. 121, 129 (1989) ("[T]he validity of the defence authorized to be made is a distinct subject . . . [and] has no connection whatever with the question of jurisdiction.").

In this litigation, Defendants have raised the federal government contractor defense articulated in *Boyle*, 487 U.S. 500, which, based on principles of preemption, shields federal contractors from state tort liability for certain design defects in products supplied to the federal government; this is also the basis for their removal.[15] The government contractor defense applies where: "(1) the United States approved reasonably precise specifications [for the product at issue]; (2) the [product] conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the [product] that were known to [it] but not to the United States." *See id*. at 512.

With respect to the first and second elements, Defendants have made a *plausible* showing that the CAEv2 was designed and manufactured in accordance

---

[15] In their removal materials, Defendants also assert the combatant activities defense and argue that Plaintiffs' cases present nonjusticiable political questions. *See, e.g.*, ECF No. 4 at 3. The Court finds it unnecessary to address or express an opinion on either of these issues, given its finding that Defendants have raised a colorable government contractor defense.

with the military's specifications, which included a reasonably precise instruction to shorten the earplug to its allegedly defective length.[16] Indeed, Defendants have presented evidence of a continuous back and forth between Aearo and the Army during the design, review, and testing phases of the CAEv2.[17] Moreover, the record is clear that the military accepted and used the CAEv2 following its production. These facts constitute *plausible* evidence that the military considered and approved the design feature in question, and that the CAEv2 conformed to the military's specifications. *See Brinson v. Raytheon Co.*, 571 F.3d 1348, 1357 (11th Cir. 2009) ("[W]here the procurement process involves [a] continuous exchange between the contractor and the government, the process itself becomes persuasive evidence of the product conformity to precise specifications."); *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1320-21 (11th Cir. 1989) (explaining that a contractor may demonstrate approval of reasonably precise specifications where the design of the product resulted from a "continuous back and forth" between the military and the contractor). Finally, as to the third element, **[*** REDACTED ***]**. This evidence

---

[16] *See supra* notes 10-11.

[17] *See, e.g.*, Ohlin Memo, ECF No. 15-2 at 3-7; **[*** REDACTED ***]**; Ohlin Email to Brian Myers dated March 23, 2005, ECF No. 15-2 at 24 (stating that the CAEv2 was "evaluated and specified by the U.S. Armed Forces" in that it had been "evaluated during blast overpressure studies at White Sands Missile Range and at the Army Research Lab at the Aberdeen Proving Ground[,] . . . approved by the DoD Hearing Conservation Working Group[,]" and deemed an "approved hearing protector" in the "Defense Occupational and Environmental Health Readiness System – Hearing Conservation"); Ohlin Email to Bryan Myers dated September 20, 2001, ECF No. 15-2 at 46 (forwarding summary of a "combat earplug study" on 26 servicemembers); *see also supra* note 10.

easily provides a *plausible* factual foundation for Defendants' assertion that the military was warned about the known "dangers" of using the CAEv2. Having put forth facts sufficient to plausibly satisfy all three elements of *Boyle*, Defendants have presented a colorable government contractor defense for purposes of § 1442(a)(1).

To be clear, nothing above should be interpreted as an indication of how the Court would rule on the merits of Defendants' government contractor defense. Defendants' evidentiary submissions are not definitive proof that the allegedly defective design of the CAEv2 resulted from the military's—and not Aearo's—discretionary decision, nor are they definitive proof that Aearo adequately warned the military of the risks associated with shortening the stem of the CAEv2. But definitive proof is not required for federal officer removal, and the scope of the Court's inquiry at this stage is limited to determining whether a colorable federal defense has been advanced, not whether that defense will be successful. *See Magnin*, 91 F.3d at 1429; *see also Acker*, 527 U.S. at 432 ("[R]equiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the [federal officer] removal statute") (quoting *Willingham*, 395 U.S. at 407). Defendants' assertion of the government contractor defense is at least plausible, and thus colorable, given the low threshold for removability and the current evidentiary record. To the extent that Plaintiffs challenge "the accuracy or reliability of [Defendants'] evidence, it does not undercut [Defendants'] right to removal, but

rather raises the very type of factual dispute about the validity of the defense that should be submitted to the judgment of a federal court." *See Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).

## IV. Conclusion

For the foregoing reasons, the Court finds that Defendants have satisfied the requirements for removal under § 1442(a)(1) and that it has subject matter jurisdiction over Plaintiffs' claims. Accordingly:

1. Plaintiffs' motions to remand are **DENIED**. The Clerk is directed to enter a copy of this amended order on the master docket for the MDL, and also on the individual dockets for Minnesota cases in which motions to remand were pending on January 13, 2020.

2. The Clerk is further directed to sever the Minnesota multi-plaintiff actions as follows: all plaintiffs, except for the first-named plaintiff, are hereby **DISMISSED WITHOUT PREJUDICE**, with the right to refile an individual short complaint in the approved form for the MDL at ECF NO. 705. The filing fee will be waived for any Minnesota plaintiff who is severed pursuant to this order and who timely files a short form complaint within 30 days of the dismissal without prejudice. The provisions of Pretrial Order No. 16, ECF No. 761, govern the severance process.

3. All other deadlines applicable to 3M MDL plaintiffs—including census obligations—are now reinstated as to the Minnesota plaintiffs.

**SO ORDERED**, on this 22nd day of January, 2020.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**