```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF FLORIDA
                         PENSACOLA DIVISION


IN RE:  3M COMBAT ARMS EARPLUG  )  Case No: 3:19md2885
PRODUCTS LIABILITY LITIGATION   )
                                )
                                )  Pensacola, Florida
                                )  December 18, 2019
                                )  12:59 p.m. CST
_____)


                       TELEPHONE CONFERENCE

                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE GARY R. JONES
                   UNITED STATES MAGISTRATE JUDGE
                       (Pages 1 through 14)


APPEARANCES:

For the Plaintiffs:      Aylstock Witkin Kreis & Overholtz, PLLC
                         by:  BRYAN F. AYLSTOCK
                         17 East Main Street
                         Suite 200
                         Pensacola, Florida 32502
                         (850) 202-1010
                         baylstock@awkolaw.com


                         Clark Love & Hutson, PLLC
                         by:  SHELLEY HUTSON
                         400 Louisiana Street
                         Suite 1600
                         Houston, Texas 77002
                         (713) 757-1400
                         shutson@triallawfirm.com




                    Julie A. Wycoff, RMR, CRR
               Official United States Court Reporter
             (850) 470-8196 * julieawycoff@gmail.com
```

```
 1  APPEARANCES CON'T:

 2
    For the Plaintiff:      Seeger Weiss, LLP
 3  (con't)                 by:  MAX KELLY
                            55 Challenger Road
 4                          Sixth Floor
                            Ridgefield Park, New Jersey 07660
 5                          (973) 639-9100
                            mkelly@seigerweiss.com
 6

 7                          Mosyn Law
                            by:  MICHAEL A. BURNS
 8                          3810 West Alabama Street
                            Houston, Texas 77027
 9                          (713) 714-0000
                            epefile@mostynlaw.com
10

11  For the Defendants:     Kirkland & Ellis, LLP
                            by:  NICHOLAS F. WASDIN and
12                               TABITHA DE PAULO
                            300 North LaSalle
13                          Chicago, Illinois 60654
                            (312) 862-3254
14                          nick.wasdin@kirkland.com
                            tabitha.depaulo@kirkland.com
15

16

17

18

19

20

21

22

23

24

25
```


```
                    1                P R O C E E D I N G S
                    2         (Call to Order of the Court.)
12:59:30            3         THE COURT:  This is the teleconference call with 3M.
01:01:27            4         Good afternoon, everyone.  This is Judge Jones.  This
01:01:32            5  is the 3M Combat Arms litigation.  And my courtroom deputy tells
01:01:39            6  me we've got Shelley Hutson, Bryan Aylstock, and Mike Burns on
01:01:42            7  for the plaintiffs; and Nick Wasdin and Paulo Tabitha [sic] for
01:01:51            8  the defendant.  And this is sort of Round 2 of the discussion
01:01:59            9  about the subpoena on Virginia Tech and Dr. Casali.
01:02:04           10         Before I get started, let me ask you, Mr. Aylstock, is
01:02:08           11  Dave Buchanan going to join us?
01:02:10           12         MR. AYLSTOCK:  He is not, Your Honor.  I think he's
01:02:11           13  en route for one of the many depositions going on right now.
01:02:16           14         THE COURT:  Okay.  Well --
01:02:16           15         MR. AYLSTOCK:  I think Max may be on as well.  I'm not
01:02:22           16  sure.
01:02:23           17         MR. KELLY:  Yeah, I'm on.  This is Max Kelly from
01:02:23           18  Seeger Weiss.
01:02:26           19         THE COURT:  Okay.  Well, let me first turn to you
01:02:29           20  then, Mr. Aylstock.  And what is the status of the subpoena?
01:02:39           21  When we had the last discussion, Mr. Buchanan had not yet had an
01:02:43           22  opportunity to talk to counsel for the lab; and Dr. Casali, and
01:02:50           23  Mr. Wasdin didn't know all of the contours of what prior work,
01:02:55           24  if any, Dr. Casali had performed.  So we suspended the hearing
01:03:03           25  and noticed it for today.  So where are we at this point?
```

```
01:03:07   1              MR. AYLSTOCK:  Yes, Judge.  Let me catch you up on --
01:03:10   2   we were able to make contact.  Stephen Capaldo is the attorney
01:03:14   3   for Virginia Tech.  And on December 10th, there was a -- had an
01:03:18   4   extensive call to kind of go over what is outstanding.
01:03:22   5              Following that call, there was an exchange of e-mails,
01:03:26   6   and Max Kelly and Dave had set forth with some specificity
01:03:33   7   different e-mail addresses, search terms, and so forth, pursuant
01:03:38   8   to the conversation on that call.
01:03:39   9              And then yesterday afternoon we received another
01:03:44  10   communication, e-mail, from Mr. Capaldo basically suggesting
01:03:49  11   that, yes, they're willing to comply with the subpoena.  They're
01:03:54  12   going to review e-mails to determine responsiveness and
01:03:59  13   privilege.  He anticipated the initial production being made by
01:04:02  14   week's end of some responsive e-mails that are not privileged;
01:04:06  15   and to the extent that needs to be rolling, they'll do that.
01:04:11  16              With regard to hard-copy documents, electronic scans,
01:04:15  17   they, in light of the holidays and the institution closing, and
01:04:19  18   so forth, and Dr. Casali had some travel until January 13th,
01:04:24  19   they agreed -- or they offered, anyway, that by the end of
01:04:29  20   January, they'd be able to produce the remaining hard-copy
01:04:34  21   documents.
01:04:35  22              They did indicate that they may need to make contact
01:04:38  23   with some military sponsors of certain research to at least give
01:04:41  24   them a heads up with regard to the subpoena.  And essentially,
01:04:45  25   the way we read that, that they're asking until the end of
```

| | | |
|---|---|---|
| 01:04:50 | 1 | January, which is not ideal in our world for the plaintiffs, but |
| 01:04:56 | 2 | I don't think it's an unreasonable request given Dr. Casali's |
| 01:05:00 | 3 | travel and the Virginia Tech closing. |
| 01:05:03 | 4 | So we're okay with it as long as, you know, Your |
| 01:05:05 | 5 | Honor's okay with it.  And I hope -- hopefully that will resolve |
| 01:05:11 | 6 | the issue. |
| 01:05:12 | 7 | THE COURT:  Okay.  Well, before I hear from the |
| 01:05:14 | 8 | defendants, so it looks like Virginia Tech will not be filing a |
| 01:05:21 | 9 | motion to quash or anything like that in Western Virginia; is |
| 01:05:26 | 10 | that your understanding? |
| 01:05:28 | 11 | MR. AYLSTOCK:  Based upon this, that's right.  And, |
| 01:05:31 | 12 | Max, you might have been on the call as well.  Do you agree with |
| 01:05:35 | 13 | that? |
| 01:05:39 | 14 | We may have lost Max, but I think that's right, Judge. |
| 01:05:43 | 15 | MR. KELLY:  I'm sorry.  This is Max Kelly.  I'm here. |
| 01:05:45 | 16 | I was on mute. |
| 01:05:46 | 17 | Yes, we're not expecting a motion to quash on this. |
| 01:05:49 | 18 | We've managed to resolve it and meet in the process. |
| 01:05:53 | 19 | THE COURT:  Okay, great.  Let me turn to you now, |
| 01:05:55 | 20 | Mr. Wasdin.  What is the defendant's current position on the |
| 01:06:02 | 21 | subpoena? |
| 01:06:06 | 22 | MR. WASDIN:  Everything Mr. Aylstock said sounds |
| 01:06:07 | 23 | correct to me.  I believe -- I was not on the meet and confer. |
| 01:06:11 | 24 | My colleague, Tabitha, who's on the line, was.  Kirkland |
| 01:06:16 | 25 | participated in the call between plaintiffs and Virginia Tech as |

```
01:06:20   1   well.  And I understand that the output of that was, you know,
01:06:24   2   some ESI criteria that I believe Mr. Kelly sent over to Virginia
01:06:29   3   Tech and some negotiation regarding the scope of the subpoena to
01:06:34   4   get it narrower than it was originally drafted.
01:06:37   5              We've spoken to Dr. Casali in the meantime to address
01:06:41   6   the privilege concerns we raised on the last call.  Your Honor
01:06:47   7   directed us to sort of identify the time periods of litigation
01:06:52   8   consulting that Dr. Casali has done for the company.  We've done
01:06:55   9   that.
01:06:58  10              With respect to what I understand the -- you know, the
01:07:04  11   more narrowed scope of what Virginia Tech is now doing, which,
01:07:08  12   as I understand it, is more limited to, you know, the Combat
01:07:12  13   Arms Version 2 and the technology, which I guess means the
01:07:16  14   filter that's in that product, so other versions of the Combat
01:07:20  15   Arms, I assume.  Within that narrowed scope, I believe the only
01:07:24  16   litigation consulting time period at issue from our perspective
01:07:29  17   are the first Moldex case -- or I should say -- I think it was
01:07:33  18   actually the second Moldex case, but the earlier Moldex
01:07:37  19   litigation.
01:07:37  20              So from later in 2015 through about 2017, Dr. Casali
01:07:41  21   was consulting for 3M in that litigation on issues that
01:07:48  22   substantially overlap with the issues in this case.  So he
01:07:53  23   opined in that case on the testing that the company did on this
01:07:58  24   product, the hearing protector in this case, the instructions
01:08:02  25   given to the military, et cetera.
```

```
01:08:05   1         So that time period, I don't believe any, you know, of
01:08:10   2    Dr. Casali's academic research -- it would be nonprivileged in
01:08:15   3    responsive to the subpoena -- falls into that time period.  So
01:08:18   4    if that's the -- if I understand the current scope of the
01:08:24   5    subpoena correctly, it may be that, you know, we're easily able
01:08:27   6    to break out that litigation consulting work from whatever the,
01:08:30   7    you know, responsive materials would be for Dr. Casali to the
01:08:34   8    subpoena.  So it may not be a big lift in that regard.  And, of
01:08:39   9    course, there's this case which starts up in -- from
01:08:43  10    Dr. Casali's perspective, on our end, from approximately
01:08:46  11    February of this year to present.
01:08:49  12         So those are the two litigation consulting time
01:08:52  13    periods related to the -- what I currently understand the scope
01:08:56  14    of the subpoena to be.  There are more -- many more, actually --
01:09:00  15    related to prior pattern (inaudible) Dr. Casali has worked for
01:09:06  16    the company or Aearo, going all the way back to 1997, and I've
01:09:11  17    got a long list of time periods where he was doing litigation
01:09:15  18    consulting work from 1997 to 2005 related to, from our
01:09:21  19    perspective, patent litigation.  But I don't believe, at least
01:09:27  20    I'm hopeful, that all of those time periods are not currently
01:09:30  21    being picked up by the scope of the subpoena as it currently
01:09:33  22    exists after the meet and confer.
01:09:36  23         THE COURT:  Okay.  So let me just see if I can get the
01:09:39  24    contours on this.  So it is defendant's position that any
01:09:48  25    documentation generated while Dr. Casali was providing
```

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
| 01:09:56 | 1  | litigation consulting, obviously in this case we all agree |
| 01:10:01 | 2  | there's no dispute that the subpoena would not cover that, even |
| 01:10:06 | 3  | though it was fairly broad.  The last hearing Mr. Buchanan said, |
| 01:10:13 | 4  | no, of course, we're not asking for that. |
| 01:10:15 | 5  | But as to the second Moldex litigation, Mr. Wasdin, |
| 01:10:17 | 6  | what had you said was 2015, 2017, Dr. Casali did perform |
| 01:10:22 | 7  | consulting, and it is your position, and I guess your |
| 01:10:29 | 8  | understanding, that the subpoena will not cover materials |
| 01:10:34 | 9  | generated as a result of that consulting.  Am I correct on at |
| 01:10:39 | 10 | that? |
| 01:10:40 | 11 | MR. WASDIN:  Yes, Your Honor.  I understood |
| 01:10:42 | 12 | Mr. Buchanan to say they weren't seeking that.  So I guess, you |
| 01:10:45 | 13 | know, if that's correct, then perhaps the subpoena wasn't |
| 01:10:48 | 14 | requesting it in the first place.  But to the extent it would |
| 01:10:51 | 15 | have been picked up by the subpoena, it's our position that, you |
| 01:10:54 | 16 | know, that work product be withheld on privilege grounds. |
| 01:11:00 | 17 | THE COURT:  Okay.  Let me just stop you there before |
| 01:11:02 | 18 | we talk about the others. |
| 01:11:03 | 19 | So, Mr. Aylstock, is that correct then from the |
| 01:11:06 | 20 | plaintiff's perspective?  In addition to documents generated as |
| 01:11:13 | 21 | a result of consulting in this case, the subpoena also would |
| 01:11:23 | 22 | exclude documents generated with regards to consulting in the |
| 01:11:26 | 23 | second Moldex litigation; am I accurate on that? |
| 01:11:32 | 24 | MR. AYLSTOCK:  Yes, Judge.  The wrinkle is, it sounds |
| 01:11:35 | 25 | like -- and correct me, Mr. Wasdin.  What we don't want is just |

| | | |
|---|---|---|
| 01:11:40 | 1 | some blanket exclusion based upon dates.  I don't know what |
| 01:11:45 | 2 | Dr. Casali was doing outside of his consulting work, you know |
| 01:11:49 | 3 | acting as an expert in this case, or what have you.  So to the |
| 01:11:55 | 4 | extent that there are wholesale years that are being asked to |
| 01:12:01 | 5 | exclude, I guess that could be explored if that's all he was |
| 01:12:05 | 6 | doing, that's one thing, but I'm not sure that that's true. |
| 01:12:11 | 7 | THE COURT:  Okay.  I don't -- I'm not sure Mr. Wasdin |
| 01:12:14 | 8 | was saying that.  I think he was just giving the Court some time |
| 01:12:18 | 9 | frame for consulting.  But I guess what I'm trying to nail down |
| 01:12:21 | 10 | to make sure it is not a disputed legal issue, and that is with |
| 01:12:30 | 11 | regard to litigation consulting previously performed by |
| 01:12:38 | 12 | Dr. Casali, it is the defendant's position that it is work |
| 01:12:45 | 13 | product and continues to be privileged, is what Mr. Wasdin is |
| 01:12:52 | 14 | saying. |
| 01:12:52 | 15 | And I guess the question to the plaintiffs is are the |
| 01:12:55 | 16 | plaintiffs challenging that position at this point, or are you |
| 01:13:01 | 17 | content at this point to have the subpoena limited to work |
| 01:13:06 | 18 | performed by Dr. Casali and/or the Virginia Tech lab that does |
| 01:13:13 | 19 | not relate to litigation consulting? |
| 01:13:19 | 20 | MR. AYLSTOCK:  Judge, I think you said it exactly |
| 01:13:20 | 21 | right.  At this point we're content, but we're not saying never. |
| 01:13:26 | 22 | Obviously, there are exceptions to the work product and -- |
| 01:13:29 | 23 | THE COURT:  Right. |
| 01:13:30 | 24 | MR. AYLSTOCK:  -- we'd want to reserve our right to |
| 01:13:32 | 25 | that. |

```
01:13:32   1            THE COURT:  Okay.  So from my perspective, I'm not
01:13:36   2   being called upon to make a determination at this point as to
01:13:44   3   whether there is work product with regard to documents generated
01:13:51   4   during consulting and whether that work product does or does not
01:13:54   5   continue, because the subpoena at this point is being limited to
01:14:02   6   nonlitigation -- or excluding litigation consulting by
01:14:15   7   Dr. Casali.
01:14:17   8            And then if -- as the parties get into this further,
01:14:20   9   there's a determination made that documents were generated as
01:14:29  10   far as litigation consulting, and the plaintiff decides to take
01:14:34  11   the position that either those communications should not be
01:14:40  12   subject to the work product privilege; or if they were, the
01:14:44  13   privilege no longer applies.  If that turns out to be the case
01:14:49  14   and the parties don't agree on that, then the plaintiffs would
01:14:53  15   have to file a formal written motion to compel, and the
01:14:58  16   defendants could respond and then the Court would be able to
01:15:01  17   address it.  But at this point, I don't need to do that because
01:15:06  18   it appears that you have agreement among the counsel for the
01:15:12  19   third party, counsel for the defendants, and counsel for the
01:15:17  20   plaintiffs that at this point the scope of the subpoena will be
01:15:23  21   limited to documents that were not generated as a result of
01:15:31  22   litigation consulting by Dr. Casali for the 3M or Aearo.
01:15:39  23            Is that a fair statement, Mr. Wasdin?
01:15:44  24            MR. WASDIN:  That's correct.  That's our
01:15:45  25   understanding, Your Honor.
```

```
01:15:46   1              THE COURT:  Okay.  Then I don't think I really need to
01:15:51   2   issue any type of written ruling because I have not resolved any
01:15:58   3   disputed issues.  You're going to get some production soon,
01:16:06   4   possibly, some ESI.  But it looks like, Mr. Aylstock, you're not
01:16:10   5   going to get hard-copy documents until the later part of
01:16:18   6   January; is that correct?
01:16:20   7              MR. AYLSTOCK:  That's right, according to Virginia
01:16:22   8   Tech counsel, Judge.
01:16:23   9              THE COURT:  Okay.  And one last question, Mr. Wasdin,
01:16:25  10   for you, because Mr. Aylstock mentioned that there's a review of
01:16:30  11   the documents ongoing and they're looking at responsiveness and
01:16:38  12   privilege.  Are you-all -- when I say "you-all," I mean, the
01:16:43  13   defendants and Kirkland & Ellis -- are you going to be involved
01:16:47  14   in looking at the documents for privilege before they're
01:16:50  15   produced, or how is that operating?
01:16:53  16              MR. WASDIN:  Yes, Your Honor.  We've been in contact
01:16:54  17   with Mr. Capaldo.  He's been good at keeping us in the loop as
01:17:00  18   that process moves forward on his end so that we do get that
01:17:03  19   opportunity.  It's my understanding that the documents Virginia
01:17:09  20   Tech will be in the position to produce this week have been
01:17:13  21   uploaded to a database that we either now have access to or soon
01:17:18  22   will, and we will flip through them for privilege review over
01:17:23  23   the next few days and maybe there won't be anything privileged,
01:17:29  24   but identify anything we have a concern with.
01:17:32  25              THE COURT:  Okay.  And if there is, will then that
```

01:17:36  1   batch of documents, if there is privilege, what is your plan on
01:17:43  2   how that privilege will be raised and communicated to the
01:17:48  3   plaintiff?  Are you contemplating a formal privilege log or
01:17:54  4   something else?
01:17:56  5         MR. AYLSTOCK:  We haven't had that discussion with
01:17:57  6   them yet.  I understand that the scope of documents that are
01:18:03  7   sort of in the cue in -- you know, manageable and small.  So
01:18:09  8   that's probably something we could do if they needed that.  We
01:18:13  9   just haven't had that earlier.
01:18:14  10        THE COURT:  Okay.  Well, I will leave that up to you
01:18:17  11  as to how that is worked out, whether it can simply be done
01:18:23  12  through written letter or -- assuming there aren't any
01:18:30  13  hot-button privilege issues -- or whether will the plaintiffs
01:18:34  14  would actually want you to produce a privilege log so they have
01:18:40  15  a chance to look at it and see if they would want to make a
01:18:44  16  challenge to anything on there.  But as you point out, you don't
01:18:47  17  even know if anything's going to be privileged in there, and
01:18:51  18  there might be some privileged documents that everyone in the
01:18:55  19  western hemisphere will agree are privileged and that may be the
01:19:02  20  end of it or there could be something else and, you know, I
01:19:05  21  don't know and you don't know until you've seen the documents,
01:19:08  22  but in any event, based on what you've been told, you're not
01:19:11  23  looking at a super high volume of documents; is that correct?
01:19:16  24        MR. WASDIN:  That's correct for...
01:19:21  25        THE COURT:  The ESI?

```
01:19:22   1              MR. WASDIN:  Yeah, the ESI that's in the hopper here
01:19:24   2    for production in the near future.  I think that would
01:19:27   3    potentially be incorrect for the hard-copy materials that
01:19:33   4    Mr. Aylstock mentioned could be going out in January.
01:19:37   5              THE COURT:  Okay.
01:19:40   6              MR. WASDIN:  That's just a potentially much larger
01:19:45   7    universe of stuff in hard copy there that we will probably end
01:19:49   8    up having to send someone to Blacksburg to review, I'm guessing.
01:19:53   9              THE COURT:  Okay.  Then, well, Mr. Aylstock, let me
01:19:57  10    turn back to you before we conclude.  Is there anything else or
01:20:02  11    anything that you are requesting the Court do at this point,
01:20:06  12    other than hold this hearing to find out -- looks like you've
01:20:11  13    got resolution?
01:20:12  14              MR. AYLSTOCK:  No, Your Honor.  That's it for the
01:20:12  15    Casali issue.
01:20:16  16              THE COURT:  Okay. And, Mr. Wasdin, anything else from
01:20:18  17    the defendant's perspective that you are asking or you would
01:20:23  18    like the Court to do, other than just holding this hearing?
01:20:26  19              MR. WASDIN:  No, Your Honor.
01:20:27  20              THE COURT:  Okay. Well, great.  You know, if issues
01:20:31  21    come up on this, you know, you can alert me.  And as I said, if
01:20:35  22    it for some reason -- it doesn't sound like it will -- it morphs
01:20:43  23    into a true dispute, then after meet and confers, if not
01:20:45  24    resolved, you can always file a motion with the Court.
01:20:49  25              Okay.  Thank you all very much, and hope everyone has
```

```
01:20:53   1   a happy holiday.
01:20:55   2               MR. WASDIN:  Thank you.
01:20:56   3               MR. AYLSTOCK:  Thank you, Judge.  Happy holiday.
01:20:58   4               THE COURT:  Take care.
01:20:59   5        (Proceedings adjourned at 1:21 p.m.)
           6                      * * * * * * * *
           7        I hereby certify that the foregoing is a true and correct
               transcript of the stenographically reported proceedings held in
           8   the above-entitled matter, pursuant to the provisions of Section
               753, Title 28, United States Code.
           9
                  [signature: Julie A. Wycoff]
          10                                           2/3/2020
               _____       _____
          11   Julie A. Wycoff, RMR, CRR               Date
               Official U.S. Court Reporter
          12
```