# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTIONS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19-md-02885 |
| This Document Relates to All Actions | ) ) ) ) | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 4

SUMMARY OF LOCAL RULE 7.1(B) COMMUNICATIONS .......................... 12

ARGUMENT ......................................................................................................... 14

    I.    Plaintiffs Failed to Properly Serve the Subpoena. ............................... 14

    II.   The 1970 Hague Convention Expressly Governs Any
        Attempt by Plaintiffs to Obtain Discovery from ISL in
        This Action. .......................................................................................... 18

    III.  Alternatively, Under the Multi-Factor *Aérospatiale*
        Analysis, the Court Should Require Compliance with the
        1970 Hague Evidence Convention. ...................................................... 24

CONCLUSION ...................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Autodesk, Inc. v. ZWCAD Software Co.*, Case No. 5:14-cv-01409-
    EJD, 2015 WL 1928184
    (N.D. Cal. Mar. 27, 2015)....................................................................25

*In re Baycol Prods. Litig.*,
    348 F. Supp. 2d 1058 (D. Minn. 2004)...............................................21

*Crystal Cruises, Inc. v. Rolls-Royce PLC*,
    No. 10-24607, 2011 WL 11555506 (S.D. Fla. Nov. 8, 2011)............19

*In re Grand Jury Investigation of Possible Violations of 18 U.S.C. §
    1956 and 50 U.S.C. § 1705*,
    381 F. Supp. 3d 37 (D.D.C. 2019)......................................................25

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
    No. 17-12948, 2020 WL 113430 (11th Cir. Jan. 10, 2020) ...............27

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
    841 F. Supp. 2d 769 (S.D.N.Y. 2012) ...........................................21, 26

*Linde v. Arab Bank*,
    706 F.3d 92 (2d Cir. 2013) .................................................................25

*Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. CV 06-
    1446(ADS)(ETB), 2007 WL 1875560
    (E.D.N.Y. June 25, 2007) ...................................................................20

*In re Photochromic Lens Antitrust Litig.*, MDL Case No.: 8:10-MD-
    2173-T-27EAJ, 2012 WL 12904331
    (M.D. Fla. May 2, 2012)....................................................................18

*SNP Boat Serv. S.A. v. Hotel Le St. James*,
    483 B.R. 776 (S.D. Fla. 2012) ...........................................................18

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the
    S. Dist. of Iowa*,
    482 U.S. 522 (1987)......................................................................*passim*

*TracFone Wireless, Inc. v. John Does*,
  No. 11-cv-21871-MGC, 2011 WL 4711458 (S.D. Fla., Oct. 4,
  2011) .................................................................................................19, 20

*Vitality Sys., Inc. v. Sogeval Labs., Inc.*,
  Case No.: 8:09–CV–0200–T–24EAJ, 2010 WL 11507286
  (M.D. Fla. Feb. 3, 2010) ..................................................................19

**Statutes**

28 U.S.C. § 1783 .................................................................................17

**Other Authorities**

Convention Concerning the Franco-German Research Institute of
  Saint-Louis, Fr.-Ger., March 31, 1958, 1323 U.N.T.S. 22049..................*passim*

France's Law No. 68-678 of July 26, 1968, relating to the
  Communication of Economic, Commercial, Industrial, Financial or
  Technical Documents and Information to Foreign Individuals or
  Legal Entities, as modified by French Law No. 80-538 of July 16,
  1980.................................................................................................*passim*

The Hague Convention on the Service Abroad of Judicial and
  Extrajudicial Documents in Civil or Commercial Matters, opened
  for signature on November 15, 1965, 20 U.S.T. 361, T.I.A.S. No.
  6638................................................................................14, 15, 16, 19

The Hague Convention on the Taking of Evidence Abroad in Civil or
  Commercial Matters, opened for signature March 18, 1970, 23
  U.S.T. 2555, T.I.A.S. No. 7444 ..................................................*passim*

Restatement (Third) of Foreign Relations § 442 (1987) ...............................*passim*

Restatement (Third) of Foreign Relations § 471 (1987) ........................................16

iii

Pursuant to Pretrial Order No. 3, ECF No. 4, and Rule 7.1(E) of the Local Rules of the United States District Court for the Northern District of Florida, non-party French-German Research Institute of Saint-Louis ("ISL"), appearing specially by counsel, hereby submits this Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents ("Motion to Compel") pursuant to a Subpoena issued by Plaintiffs to ISL on September 9, 2019 in the above-captioned action ("Subpoena") and states as follows:

## **INTRODUCTION**

ISL is a research institute located in Saint-Louis, France that was created in 1958 through a bi-lateral convention between the Republic of France and the Federal Republic of Germany. *See* Convention Concerning the Franco-German Research Institute of Saint-Louis, Fr.-Ger., March 31, 1958, 1323 U.N.T.S. 22049 ("1958 Convention").[1]  In their Motion to Compel, Plaintiffs attempt to enforce a subpoena they issued to ISL, pursuant to Rule 45 of the Federal Rules of Civil Procedure, notwithstanding the fact that Plaintiffs have not alleged, nor may this Court properly entertain, jurisdiction over ISL in this litigation.  Plaintiffs issued the Subpoena without any apparent attempt to seek pre-issuance approval from this Court, let alone request this Court's determination regarding the applicability of

---

[1] A copy of an English translation of the 1958 Convention was attached as Exhibit G to Plaintiffs' Motion to Compel.

The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("1970 Hague Evidence Convention"), to which both the United States and France are signatories.  Indeed, it is quite telling that, even after extensive meet and confer communications between Plaintiffs and ISL regarding the Subpoena and the applicability of the 1970 Hague Evidence Convention, Plaintiffs make no reference whatsoever to that Convention in their Motion to Compel.

Compounding that apparently deliberate omission, Plaintiffs give cursory treatment in their Motion to Compel to clear expressions of French sovereignty, as reflected in the 1958 Convention and in France's Law No. 68-678 of July 26, 1968, relating to the Communication of Economic, Commercial, Industrial, Financial or Technical Documents and Information to Foreign Individuals or Legal Entities, as modified by French Law No. 80-538 of July 16, 1980 (commonly known as the "French Blocking Statute"), the latter of which essentially embodies France's protective implementation of its rights and obligations under the 1970 Hague Evidence Convention.  Both legal expressions of French sovereignty impose significant rights and obligations on ISL regarding foreign discovery requests, which Plaintiffs casually ignored by their unilateral issuance of the Subpoena.

In that regard, and consistent with the position the Republic of France took before the U.S. Supreme Court in the landmark U.S. Supreme Court case, *Société*

2

*Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 543–44 & n.29 (1987),[2] two Ministries of the Republic of France—one acting pursuant to its authority under the 1970 Hague Evidence Convention and the other pursuant to its authority under the 1958 Convention, have issued letters strongly asserting French sovereignty in response to Plaintiffs' circumvention of internationally accepted civil discovery procedures and Plaintiffs' disregard for French sovereign interests embodied in the 1958 Convention.

In the end, Plaintiffs have failed to cite a single decision from this Court authorizing the issuance of a Rule 45 subpoena to a foreign person or entity as to which there is not even an allegation, let alone a basis, for asserting jurisdiction in this Court and in the face of express sovereign rights and obligations, including those arising from the 1958 Convention.  In fact, as demonstrated below, Plaintiffs have ignored explicit authority from other jurisdictions that have rejected such blatant disregard of foreign sovereign rights, jurisdictional limitations and principles of international comity.

---

[2] *See* Brief of *Amicus Curiae* the Republic of France in Support of Petitioners, *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522 (1987) (No. 85-1695), 1986 WL 727501, a copy of which is attached hereto as Exhibit 1.

For the reasons set forth below, Plaintiffs' misguided effort to circumvent the processes to which the United States and the Republic of France agreed for obtaining civil discovery from persons in foreign countries, as embodied in the 1970 Hague Evidence Convention, should be rejected.  Whether pursuant to an express application of the 1970 Hague Evidence Convention or, alternatively, under the multi-factor analysis adopted in the *Aérospatiale* case, the Court should deem the Subpoena unenforceable and deny the Motion to Compel accordingly.[3]

## STATEMENT OF FACTS

ISL is a bi-national research institute operated jointly by the Federal Republic of Germany and the Republic of France pursuant to a Convention signed by the two countries in 1958.  *See* 1958 Convention; Decl. of Christian de Villemagne and Dr.-Ing Thomas Czirwitzky ¶ 5 (Feb. 3, 2020) attached hereto as Exhibit 2 ("ISL Decl.").  An English translation of the 1958 Convention was attached as Exhibit G to Plaintiffs' Motion to Compel.

---

[3] Plaintiffs expressly limited their Motion to Compel to the threshold question of whether the Subpoena is enforceable under applicable procedures, including the multi-factor *Aérospatiale* analysis, and excluded as premature any adjudication of ISL's objections to the Subpoena on other grounds, including the scope, particularity and burden of the Subpoena, pending further meet and confer communications between the parties on those issues and any resulting motions practice before this Court.  *See* Mot. to Compel at 9 n.4.  Accordingly, ISL has confined its Opposition to that limited, threshold question and reserves any rights it may have to enforce its objections and seek appropriate protective relief in light of and consistent with any final resolution of Plaintiffs' Motion to Compel.

Pursuant to Article 4(b) of the 1958 Convention, ISL has two directors, one French and the other German. *Id.* ¶ 7. Christian de Villemagne and Dr.-Ing Thomas Czirwitzky are the two current directors of ISL. Pursuant to Chapter 2, Article 5, Section 2 of the Index to the 1958 Convention, they are jointly responsible for carrying out the general policies of ISL and ensuring that ISL operates in accordance with the 1958 Convention and the decisions of ISL's Board of Trustees. *Id.* Pursuant to Chapter 2, Article 5, Section 4 of the Index to the 1958 Convention, they are authorized to represent ISL in courts of law. *Id.*

The general mission of ISL is to develop technical innovations in the fields of defense and security. *Id.* ¶ 8. ISL carries out research in various specialist fields and at differing technology readiness levels ("TRL"), from basic research to the development of preindustrial prototypes that can be integrated in operative equipment (TRL from 1 to 6). *Id.* ISL is not, and has never been, a certification or standard-setting laboratory or organization. *Id.*

ISL is the licensor of certain U.S. and foreign patents related to non-linear sound filtering and acoustic filtering technology, including a patent issued by the U.S. Patent & Trademark Office on August 10, 1999 ("U.S. Patent No. 5,936,208"), a copy of which was attached as Exhibit C to Plaintiffs' Motion to Compel. ISL Decl. ¶ 16.

Included in Exhibit D to Plaintiffs' Motion to Compel is a copy of a License Agreement into which ISL entered with Aearo Company on March 3, 1999 relating to, among other things, U.S. Patent No. 5,936,208 ("License Agreement"). *Id.* ¶ 17.  On information and belief, the 3M Company subsequently acquired Aearo Company, including Aearo Company's rights under the License Agreement. *Id.*

At no time, including prior to or under the License Agreement, has ISL (a) designed or manufactured any of the products that, on information and belief, are at issue in the above-captioned litigation, (b) owned any of the products that, on information and belief, are at issue in the above-captioned litigation, (c) sold, or offered for sale, to the U.S. Government any of the products that, on information and belief, are at issue in the above-captioned litigation or (d) made any certifications, representations or warranties to the U.S. Government or any other person or entity regarding any of the products that, on information and belief, are at issue in the above-captioned litigation. *Id.* ¶ 18.

At no time, including prior to or under the License Agreement, has ISL ever tested or evaluated on human beings any of the products that, on information and belief, are at issue in the above-captioned litigation for performance in use by human beings, including whether such use satisfied or complied with any standards, specifications or legal requirements. *Id.* ¶ 19.  For example, the Noise Reduction Rating referenced in the ANSI standard S3.19-1974 has never been

measured at ISL, including with respect to any of the products that, on information and belief, are at issue in the above-captioned litigation. *Id.*

In September 2019, ISL received, by mail, a subpoena issued by an attorney for Plaintiffs in the above-referenced matter, Mr. David Buchanan, dated September 9, 2019. *Id.* ¶ 9. The Subpoena "commanded" ISL to produce at its offices in Saint-Louis, France documents responsive to thirty categories of requests, falling into approximately nine groups relating to: (1) any contractual and financial arrangements relating to the 3M Earplugs and/or CAE filters (Request Nos. 1–4); (2) the creation, development or design of the 3M Earplugs and/or CAE filters, including changes to the design of the 3M Earplugs and/or CAE filters (Request Nos. 5–6, 19); (3) any meetings with the 3M Company or the United States Government concerning the 3M Earplugs and/or CAE filters (Request Nos. 7–8); (4) any financial arrangements or agreements with the 3M Company or the United States Government concerning the 3M Earplugs and/or CAE filters (Request Nos. 9–12); (5) communications with the 3M Company or the United States Government concerning patents for the 3M Earplugs and/or CAE filters (Request Nos. 13–14); (6) testing and testing data concerning the Combat Arms Earplugs (Request Nos. 15–16); (7) any defects, risks, hazards and complaints concerning the 3M Earplugs and/or CAE filters (Request Nos. 17–18, 20); (8) any points of contact with the 3M Company or the United States Government (Request

Nos. 21–22); and (9) documents of certain current or former ISL employees (Pascal Hamery, Armand Dancer, Karl Buck and Claudia Rech) concerning the 3M Earplugs, CAE filters and/or hearing protection, including documents relating to patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes (Request Nos. 23–30).  *Id.*

On information and belief, Plaintiffs did not issue the Subpoena to, or serve the Subpoena on, the Ministry of Justice of the Republic of France, which is the designated Central Authority in the Republic of France for service of civil discovery requests pursuant to Article 2 of the 1970 Hague Evidence Convention. *Id.* ¶ 10.

After receiving the Subpoena, and in compliance with the 1970 Hague Evidence Convention and French Blocking Statute, ISL provided the French Ministry of Justice with notification (and a copy) of the Subpoena.  *Id.* ¶ 11.

Under the 1958 Convention, the Ministry of the Army of the Republic of France is one of the supervising governmental entities over the activities and operations of ISL.  *Id.* ¶ 12.  After receiving the Subpoena, and in compliance with the 1958 Convention, ISL provided the French Ministry of the Army with notification (and a copy) of the Subpoena.  *Id.* ¶ 13.

On January 30, 2020, the French Ministry of Justice issued a letter to ISL with respect to the Subpoena.  *Id.* ¶ 13 & Ex. A.  In the letter, the French Ministry

of Justice notes the applicability and restrictions of the French Blocking Statute as to the Subpoena and emphasizes ISL's obligations thereunder.  *Id.*  The Ministry of Justice notes, however, that "the prohibitions instated by the blockage law are only applicable '*subject to international treaties and conventions*'" such as the 1970 Hague Evidence Convention.  *Id.*  Should an international rogatory commission be issued, it would need to be addressed to the Ministry of Justice "as central authority for the application of the [1970 Hague Evidence Convention]", after which the Ministry of Justice would "transfer the commission at [sic] soon as received to the competent judicial French authorities to be implemented without delay." *Id.*

The same day, the French Ministry of the Army issued a letter to ISL with respect to the Subpoena.  *Id.* ¶ 14 & Ex. B.  The French Ministry of the Army also objects to the Subpoena and to ISL's compliance with the Subpoena because of the sovereign interests of the Republic of France under the 1958 Convention and ISL's obligations pursuant thereto.  The Ministry of the Army asserts that proceeding in the form of a Subpoena rather than through the 1970 Hague Evidence Convention process would violate the sovereignty, security and "essential economic interests" of France, including by giving "access to a whole entity of confidential scientific, technical, financial information which are attached to the intellectual property

rights detained by an establishment which is majority-owned by the French and German State and in charge of a Defence mission." *Id.*

Even were Plaintiffs to comply with the 1970 Hague Evidence Convention, and even were the Subpoena determined to be proper under the French Blocking Statute and the 1958 Convention, the likelihood of ISL possessing responsive and relevant documents is highly questionable for several reasons. *Id.* ¶ 20.

First, the Subpoena does not contain a date restriction and by its terms would cover a period in excess of twenty years. *Id.* ¶ 20(a). As noted above, the License Agreement was formed in 1999, and the research and development of the underlying technology that is the subject of the License Agreement occurred over many years prior to the License Agreement. *Id.*

Second, many documents that might have existed and been responsive to the Subpoena are no longer in ISL's possession, whether pursuant to regular elimination in accordance with French law governing the retention or destruction of records or as a result of the conversion of ISL's information technology systems in 2013. *Id.* ¶ 20(b).

Third, three of the ISL employees referenced in the Subpoena (Armand Dancer, Karl Buck and Claudia Rech in Request Nos. 25–30) are no longer employed by or affiliated with ISL. *Id.* ¶ 20(c). Mr. Dancer left ISL in June 2006; Ms. Rech left ISL in June 2011; and Mr. Buck left ISL in November 2014. *Id.*

10

Pursuant to ISL's policies applicable at the time, there was no archiving of electronic data on the computers of individual employees and, upon an employee's departure, only certain specific data were retained in consultation between the employee and his/her supervisor and in accordance with French law. *Id.*

Even were Plaintiffs to comply with the 1970 Hague Evidence Convention, and even were the Subpoena determined to be proper under the French Blocking Statute or the 1958 Convention, the time, burden and expense that ISL would incur in responding to the Subpoena would be undue, unreasonable and substantial. *Id.* ¶ 21. The period covered by the Subpoena (in excess of twenty years) and the broad nature of the requests (for example, "all" communications, emails, notes, tests, testing data, etc.) would require ISL to conduct an extensive, detailed and costly examination of its existing records, files and electronically stored information. *Id.*

For the reasons set forth above, it appears that a substantial portion of the documents requested by Plaintiffs in the Subpoena could be obtained more directly, efficiently and cost-effectively from other persons or entities, including the Defendants in the above-captioned action and the United States Government. *Id.* ¶ 22.

## **SUMMARY OF LOCAL RULE 7.1(B) COMMUNICATIONS**

As demonstrated in the following summary, ISL has respected the processes of this Court, including any meet and confer obligations ISL may have pursuant to Local Rule 7.1(B).

Prior to the deadline specified in the Subpoena for compliance, ISL, appearing specially through counsel, served Plaintiffs with objections to the Subpoena. *See* Letter from Charles F. B. McAleer, Jr. to David Buchanan (Oct. 8, 2019), a copy of which was attached as Exhibit B to Plaintiffs' Motion to Compel. Among other grounds, ISL objected to the Subpoena:

> to the extent that Plaintiffs failed to utilize internationally-approved legal processes, including international treaties and conventions, that provide certain specified, exclusive mechanisms for litigants in one country to obtain permissible discovery from persons or entities in another country through approved methods for service of process, notice and pre-production legal review by appropriate governmental, diplomatic and judicial authorities.

*Id.*, Obj. No. 2.  In addition, ISL objected to the Subpoena given its rights and obligations under the French Blocking Statute and the 1958 Convention. *Id.*, Obj. Nos. 3–4.

Plaintiffs first contacted ISL's counsel by phone and email fourteen days later, on October 22, 2019, and ISL's counsel made themselves available for a meet and confer teleconference that same day. *See* Emails between Parvin K. Aminolroaya and Charles F. B. McAleer, Jr. (Oct. 22, 2019), copies of which are

12

attached as Exhibit 3.  During that meet and confer teleconference, ISL's counsel further explained the basis for ISL's Objections, including Objection Nos. 2–4. Six days later, on October 28, 2019, Plaintiffs again emailed ISL's counsel, who made themselves available for another meet and confer teleconference the next day.  *See* Emails between Parvin K. Aminolroaya and Charles F. B. McAleer, Jr. (Oct. 28–29, 2019), copies of which are attached as Exhibit 4.

Following the October 28 teleconference, Plaintiffs sent ISL's counsel certain caselaw purporting to justify Plaintiffs' issuance of the Subpoena to ISL. *See* Email from Virginia Anello to Charles F. B. McAleer, Jr. (Oct. 30, 2019), a copy of which is attached as Exhibit 5.  After an email exchange regarding the status of the meet and confer discussions,[4] ISL's counsel substantively responded to Plaintiffs' caselaw by letter on November 8, 2019.  *See* Email and Letter from Charles F. B. McAleer, Jr. to Virginia Anello (Nov. 8, 2019), a copy of which is attached hereto as Exhibit 7.  On November 20, 2019, Plaintiffs rejected ISL's analysis, declared that further meet and confer discussions would not be "useful," stated their intent to file a motion to compel "in the near future" and promised to serve ISL's counsel with the motion "when it is filed."  *See* Email between

---

[4] *See* Emails between Virginia Anello and Charles F.B. McAleer, Jr. (Nov. 5, 2019), copies of which are attached as Exhibit 6.

Virginia Anello to Charles F. B. McAleer, Jr. (Nov. 20, 2019), a copy of which is attached as Exhibit 8.

Thirty-one days later, on December 30, 2019, Plaintiffs filed their Motion to Compel but did not serve ISL's counsel with a copy of the Motion to Compel. Mot. to Compel, ECF No. 891.  On January 3, 2020, the Court, *sua sponte*, directed Plaintiffs to serve ISL's counsel with the Motion to Compel.  Order, ECF No. 892.  The Court subsequently granted ISL leave to file its Opposition on February 4, 2020.  Order, ECF No. 915.

## ARGUMENT

For the following reasons, the Subpoena is unenforceable, and Plaintiffs' Motion to Compel should be denied.

### I.    Plaintiffs Failed to Properly Serve the Subpoena.

Plaintiffs sent ISL a copy of the Subpoena by mail to ISL's office in Saint-Louis, France.  Plaintiffs have not asserted, let alone demonstrated, that they served a copy of the Subpoena on the French Ministry of Justice, which is the authorized French government authority under the 1970 Hague Evidence Convention.

During the parties' meet and confer teleconference, and now in the Motion to Compel, Plaintiffs have focused almost entirely on The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters, opened for signature on November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("1965 Hague Service Convention") as the basis for arguing that the Subpoena is enforceable.  Plaintiffs' argument regarding the alleged effectiveness of its purported service is incorrect for several reasons.

First, the 1970 Hague Evidence Convention succeeded the 1965 Hague Service Convention, and established the specific, agreed upon process that would govern the issuance of civil discovery requests in the signatory countries, including the United States and France.  Whatever the 1965 Hague Service Convention may permit or require regarding an acceptable mode of serving judicial documents and whether the 1965 Hague Service Convention extends beyond service of process, it did not and does not obviate the requirements of the 1970 Hague Evidence Convention, particularly to the extent the purported service at issue relates to a non-party to the foreign proceeding as to whom the issuing tribunal (here, this Court) lacks jurisdiction.  Plaintiffs have cited no authority authorizing service upon such a non-party where jurisdiction in the issuing tribunal is entirely lacking.

Second, the 1970 Hague Convention was precisely the vehicle by which the Republic of France designated its Ministry of Justice as the "Central Authority" through whom civil discovery requests must be received and processed, as that term is used in the 1965 Hague Service Convention.  Plaintiffs are not entitled to choose a method of service of a discovery request on a non-party that excludes

service on and notice to France's "Central Authority," as they did here.  *See*

Restatement (Third) of Foreign Relations § 471 (1987) (derived from the Hague

Service Convention, this Section provides that a foreign state may require service

of process or legal documents through a designated Central Authority).  Plaintiffs

have presented no competent authority by which a method of service under the

1965 Hague Service Convention can supplant and override the very procedures to

which the United States, the Republic of France and other countries agreed in the

1970 Hague Evidence Convention.

Third, the 1965 Hague Service Convention expressly contemplates that

service may be prohibited where the Contracting State indicates that such service

would infringe its sovereignty or security.  *See* 1965 Hague Service Convention,

art. 13.  Both generally, in the form of the French Blocking Statute, and

specifically, in the context of this specific attempt to serve ISL with discovery in a

foreign proceeding without complying with the 1970 Hague Evidence Convention

and in violation of the 1958 Convention between France and Germany, the

Republic of France, through its competent authorities, has made a determination

that service in this manner would be adverse to its sovereignty and security.  *See*

ISL Decl., Exs. A, B.

Fourth, Plaintiffs could have and should have sought the Court's

authorization in the first instance and enabled the Court to make a reasoned

16

determination regarding the proper means for securing document discovery from a

non-party in a foreign country over whom the Court lacks jurisdiction.  *See*

Restatement (Third) of Foreign Relations § 442(1)(a), Reporters' Note 2 at 356

(1987) (citing 28 U.S.C. § 1783 and noting that "[a] request for documents located

in another state may itself be a cause of international friction, and lead to

invocation of a blocking statute; accordingly, it is reasonable to require a party to

address its request to the court, as is required under the Federal Rules of Civil

Procedure to issue a subpoena to a witness in a foreign country who is a national or

resident of the United States"); *Id.* § 442(c)(1), cmt. a ("except as specifically

authorized by statute or rule of court . . . , requests to produce documents or

information located abroad should, as a matter of good practice, be issued as an

order by the court, not merely in the form of a demand by a private party" and the

court "should scrutinize [such a discovery request] more closely than it would

scrutinize comparable requests for information located in the United States").

Finally, it would be entirely anomalous for Plaintiffs' attempted self-help

service on a foreign non-party such as ISL over whom this Court lacks jurisdiction

when, as to a national or resident of the United States, a litigant in U.S. federal

courts must seek authorization from the court to serve a subpoena on such U.S.

national or resident in a foreign country and then such authorization may only be

granted on the basis of specific findings by the court.  *See* 28 U.S.C. § 1783

("A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him" if the court makes certain specific findings); *see* Restatement (Third) of Foreign Relations § 442(1)(a), Reporter's Note 2 at 356 (citing 28 U.S.C. § 1783).

Thus, Plaintiffs' attempt to effect service of civil discovery request directly on ISL in France, without compliance with the 1970 Hague Evidence Convention and without providing service on the French Ministry of Justice, was invalid.

## II. The 1970 Hague Convention Expressly Governs Any Attempt by Plaintiffs to Obtain Discovery from ISL in This Action.

By its express terms, the 1970 Hague Evidence Convention applies to Plaintiffs' attempt to impose civil discovery obligations on a non-party such as ISL as to which Plaintiffs have not alleged, and this Court lacks, jurisdiction.  Plaintiffs have cited no authority to the contrary from this Court or any other court.  Instead, Plaintiffs offer several inapposite cases from this jurisdiction involving foreign *parties*.  *See In re Photochromic Lens Antitrust Litig.*, MDL Case No.: 8:10-MD-2173-T-27EAJ, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012) (seeking discovery of documents located in France from executive of defendant-corporation); *SNP Boat Serv. S.A. v. Hotel Le St. James,* 483 B.R. 776, 788 (S.D. Fla. 2012) (requiring foreign debtor in U.S. bankruptcy action to be deposed);

18

*Crystal Cruises, Inc. v. Rolls-Royce PLC*, No. 10-24607, 2011 WL 11555506, at

*1 (S.D. Fla. Nov. 8, 2011) (seeking discovery from French defendant-

corporation); *Vitality Sys., Inc. v. Sogeval Labs., Inc.*, Case No.: 8:09–CV–0200–

T–24EAJ, 2010 WL 11507286, at *3 (M.D. Fla. Feb. 3, 2010) (compelling

discovery from French parent of defendant-corporation).  These of course do not

apply to non-parties like ISL.

Similarly, Plaintiffs' reliance on the Southern District of Florida's 2011

decision in *TracFone Wireless, Inc. v. John Does*, No. 11-cv-21871-MGC, 2011

WL 4711458 (S.D. Fla., Oct. 4, 2011) is misplaced.  *See* Mot. to Compel at 7, 9.

The issue in that case originated with plaintiff TracFone's service of a subpoena on

non-party TD Financial Group Bank ("TD Bank") in Florida and progressed, at the

express invitation of TD Bank's in-house counsel, to the issue of service of a

subpoena on TD Bank's affiliate in Canada.  *Id.* at *1.  TracFone sought,

apparently by an uncontested and *ex parte* motion, leave to issue and serve a

subpoena on TD Bank's Canadian affiliate by mail, pursuant to Article 10(a) of the

1965 Hague Service Convention.  In the absence of any objection by Canada to

that convention, the Court granted Plaintiff's *ex parte* request for authorization to

issue and serve a subpoena on TD Bank's Canadian affiliate.  The only litigant on

that issue, TracFone, apparently did not raise the issue of compliance with the 1970

Hague Evidence Convention, and so the Court's consideration of TracFone's

19

request was entirely silent on that issue or the question of whether the existence of jurisdiction *vel non* over the intended recipient of the subpoena could and would affect the enforceability of the subpoena.  Here, Plaintiffs have not claimed, and there is no apparent indication, that Plaintiffs sought leave or authorization from the Court prior to issuing and purporting to serve the Subpoena on ISL in Saint-Louis, France.  Moreover, Plaintiffs have not alleged, nor would the Court have a basis for exercising jurisdiction over ISL, whether directly or through any purported affiliate.  Additionally, unlike the situation in *TracFone*, the Republic of France objects, generally and as to the Subpoena, to Plaintiffs' refusal to follow the procedures of the 1970 Hague Evidence Convention when seeking civil discovery from a French resident, including service of the discovery request on the French Ministry of Justice.  The Republic of France has also objected to the issuance and service of the Subpoena on the basis of the 1958 Convention and the French Blocking Statute.  Finally, and most importantly, unlike in *TracFone*, Plaintiffs' Motion to Compel is contested, and ISL, appearing specially through counsel, has specifically asserted the applicability of the 1970 Hague Evidence Convention to any attempt by Plaintiffs to obtain civil discovery from ISL in France.

Indeed, contrary to Plaintiffs' arguments, courts have specifically held that the 1970 Hague Evidence Convention is the exclusive means for seeking discovery from foreign non-parties over whom the court lacks jurisdiction.  *See, e.g.*, *Metso*

20

*Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. CV 06-1446(ADS)(ETB), 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007) (in patent infringement action noting that "[i]t also appears that the procedures of the Hague Evidence Convention may be the only means by which the requested discovery may be obtained given [that the foreign target of the discovery] is a citizen of Northern Ireland, who is not a party to this action and is similarly not subject to the jurisdiction of this court."); *In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058, 1059–60 (D. Minn. 2004) ("It also appears that resort to the Convention is the only means available to obtain the requested discovery from Dr. Guariniello, as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court."); *see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.,* 841 F. Supp. 2d 769, 782 (S.D.N.Y. 2012) (("[T]he reason . . . U.S. courts will usually issue[] letters rogatory where the court otherwise lacks jurisdiction to compel discovery . . . [is] that issuance of letters rogatory by its very nature does not require a U.S. court to have jurisdiction, meaning coercive authority, over the non-party from whom discovery is sought.  As noted, this is in contrast to the requirements of a Rule 45 subpoena, for which a court must have jurisdiction over the non-party from whom discovery is sought.").

The supremacy of the 1970 Hague Evidence Convention in this instance is particularly acute given the specific objections and assertions of both sovereignty

21

and security interests by the Republic of France through two of its Ministries.  *See* ISL Decl. Exs. A, B.  The 1970 Hague Evidence Convention was designed as the exclusive means by which such interests can be evaluated and determined when an attempt is made to impose civil discovery obligations on French persons or entities. By engaging in self-help discovery attempts, Plaintiffs have sought to do an end run around French sovereignty and security, as embodied in the French Blocking Statute and the 1958 Convention and as specifically articulated and asserted by the French Ministry of Justice and the French Ministry of the Army regarding the Subpoena issued to ISL.  As a government-created entity over whom this Court lacks jurisdiction in this action, ISL is entitled to the full measure of protection afforded by the 1970 Hague Evidence Convention so that its rights and obligations under all applicable laws, including French law, can be fairly determined.

In that regard, given the sensitivity of the security and defense-related nature of ISL's work pursuant to the 1958 Convention, Article 2 of that convention "exempts from seizure" ISL's property and assets, including its documents and records, and otherwise restricts access to its archives.  *See* Mot. to Compel Ex. G, art. 2.  Article 9 of the Convention similarly extends protection to "all studies, research, discoveries and inventions of or known to" ISL the protections of the "legislative and administrative provisions regarding breaches of State security, and the protection of official secrets and classified documents."  *Id.*, art. 9.  This is

precisely the type of sovereign and security interests that the French Ministry of the Army has asserted as to the Subpoena in this case, particularly since the Subpoena ignored the process for adjudicating such interests as set forth in the 1970 Hague Evidence Convention.  Plaintiffs do not have the right, particularly while ignoring the requirements of the 1970 Hague Evidence Convention, to preemptively dismiss any exemptions or protections that pertain to ISL's documents pursuant to the 1958 Convention, particularly given the overly broad, temporally unlimited scope of the thirty requests in the Subpoena.[5]

For the foregoing reasons, the Court should determine that, in this case, as to the specific discovery at issue and given the lack of jurisdiction over ISL in this action, the Subpoena is invalid and the only means for seeking discovery from ISL is through the procedures of the 1970 Hague Evidence Convention.

---

[5] Plaintiffs' argument concerning the absence of "any judicial opinions or regulatory guidance recognizing immunity from discovery premised on" the 1958 Convention (Mot. to Compel at 11) does not serve their cause and, if anything, demonstrates the unusual and extreme nature of Plaintiffs' attempt to circumvent French judicial and administrative processes and to force ISL to produce documents and information in France that are subject to the restrictions imposed by the 1958 Convention.  The fact that no other person or entity has previously sought to propound such discovery to ISL and thereby elicit a judicial determination regarding the scope, meaning and enforceability of Articles 2 and 9 of the 1958 Convention which applies solely and uniquely to ISL does not impair the force or effect of the 1958 Convention on ISL's right and obligations.  Indeed, it reinforces the requirement and appropriateness of proceeding under the 1970 Hague Evidence Convention, through which French sovereign and security interests can be properly assessed and fully adjudicated.

III.   **Alternatively, Under the Multi-Factor *Aérospatiale* Analysis, the Court Should Require Compliance with the 1970 Hague Evidence Convention.**

Even were the Court to determine that the 1970 Hague Evidence Convention is not the exclusive means for obtaining discovery from ISL for the reasons set forth in Section II above, the Court alternatively would have to undertake the multi-factor test required under *Aérospatiale* and do so in a far more thorough manner than Plaintiffs did in their Motion to Compel.

The Court in *Aérospatiale* determined that each individual trial court must make a specific determination as the level of reasonableness of requiring the "Convention procedures" as part of certain discovery requests. *See Aérospatiale*, 482 U.S. at 545–46. According to the Court, "the concept of international comity requires in this context a more particularized analysis of the respective interests of the foreign nation and the requesting nation than [a] . . . general rule would generate." *Id.* at 543–44. Thus, to determine whether the 1970 Hague Evidence Convention was the required method for obtaining civil discovery of a foreign person or entity, the Court required, for each individual case, the trial court to scrutinize "the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Id.* The Court provided a non-exhaustive list of factors, drawn from Section 442(1)(c) of the Restatement (Third) of Foreign Relations Law of the United States—that were relevant to an analysis as to whether

24

to afford comity to a specific country that has signed onto the 1970 Hague

Evidence Convention procedures. *See id.* at 544 n.28:

> (1) the importance to the . . . litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Accord* Restatement (Third) of Foreign Relations § 442(c)(1) (advocating

application of the same multi-factor test for determining whether the Hague

Evidence Convention is the required procedure to follow).

To that non-exhaustive list,[6] other courts have added hardship and good

faith as considerations. *See In re Grand Jury Investigation of Possible Violations*

*of 18 U.S.C. § 1956 and 50 U.S.C. § 1705*, 381 F. Supp. 3d 37, 66 (D.D.C. 2019);

*Linde v. Arab Bank*, 706 F.3d 92, 109–110 (2d Cir. 2013) ("a district court should

also examine the hardship of the party facing conflicting legal obligations and

---

[6] These are non-exhaustive factors to consider, rather than a specific rule. *See Autodesk, Inc. v. ZWCAD Software Co.*, Case No. 5:14-cv-01409-EJD, 2015 WL 1928184, at *2 (N.D. Cal. Mar. 27, 2015).

whether that party has demonstrated good faith in addressing its discovery obligations."); *Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 796, ("[T]he 'hardship' that courts seek to avoid is the hardship posed by ordering the production of information or documents located abroad where such production would violate the law of the state in which the documents are located.").

Requests such as those propounded by Plaintiffs to ISL should receive additional scrutiny by this Court.  Restatement (Third) of Foreign Relations § 442(c)(1), cmt. a ("except as specifically authorized by statute or rule of court . . . , requests to produce documents or information located abroad should, as a matter of good practice, be issued as an order by the court, not merely in the form of a demand by a private party" and the court "should scrutinize [such a discovery request] more closely than it would scrutinize comparable requests for information located in the United States").

Applying an *Aérospatiale* multi-factor analysis to the facts and circumstances in this case should lead to only two conclusions: that the Subpoena issued by Plaintiffs was invalid and that the 1970 Hague Evidence Convention would be the only fair and appropriate mechanism for determining ISL's rights and obligations regarding civil discovery requests issued in this case.

First, as demonstrated in the Declaration submitted by ISL's directors, it is highly doubtful that the documents that might still exist would even be relevant, let

26

alone "important" to this litigation.  While, as a non-party, ISL is hindered in its ability to make detailed determinations regarding what evidence would or would not be relevant in this case, the facts set forth in the Declaration from ISL's directors suggest that requested documents would not be relevant or indeed admissible in this action.[7]

Second, the requests propounded by Plaintiffs cover a period in excess of twenty years, and the categories themselves are overly broad and lack any real particularity.  The document requests in the Subpoena are a classic fishing expedition in which Plaintiffs should not be entitled to engage without the scrutiny and discernment of sovereign interests that the 1970 Hague Evidence Convention process was designed to provide.

Third, the information being sought did not originate in the United States, and Plaintiffs have not even alleged, let alone established, a jurisdictional basis for

---

[7] *Cf. Jordan v. Comm'r, Miss. Dep't of Corr.*, No. 17-12948, 2020 WL 113430, at *1 & 17 (11th Cir. Jan. 10, 2020) (affirming the district court's decision to quash a [domestic] non-party subpoena served on the Georgia Department of Corrections by Mississippi death row inmates).  The Eleventh Circuit noted in *Jordan* that "Federal Rule of Civil Procedure 45 protects the subpoena recipient by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena' and by setting out several mandatory and discretionary grounds for quashing a subpoena." *Id.* at *5 (quoting Fed. R. Civ. P. 45(d)(1), (3)).  "While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Id.* (citing Fed. R. Civ. P. 26(b)(1)).

asserting such broad discovery requests for information and documents that originated and exist solely in a foreign country.

Fourth, the document requests themselves demonstrate that there are alternative sources for the same information and documents, including obviously the Defendants, the United States Government and other persons or entities who may be within this Court's jurisdiction and whose discovery and evidence may show possess relevant and discoverable information and documents. Plaintiffs have not even attempted to demonstrate that those alternative sources are somehow inadequate or unavailable, thus justifying a right to impose the burdens of discovery on a foreign entity which is not subject to the jurisdiction of this Court.

Fifth, permitting Plaintiffs to circumvent the procedures of the 1970 Hague Evidence Convention would adversely affect and prejudice the sovereign and security interests of the Republic of France, as clearly and specifically set forth in the letters from two of its Ministries. *See* ISL Decl. Exs. A, B. It is particularly critical that the sovereign and security interests asserted by the French Ministry of the Army be considered and evaluated through the procedures of the 1970 Hague Evidence Convention, especially if and when Plaintiffs are required to present specific and focused discovery requests, rather than the broad and non-particularized ones in the Subpoena.

Sixth, the burden on and expense to ISL from having to respond to the Subpoena has already been significant and would be only more so if it were somehow required to respond substantively to the Subpoena. Plaintiffs are effectively and inappropriately treating ISL as a party litigant that has broad discovery obligations in this case, despite the fact that there is no jurisdictional or proper legal basis for doing so.

Finally, ISL is subject to very real and legitimate legal rights and obligations implicated by the Subpoena, including under the French Blocking Statute and the 1958 Convention. While attempting to be as respectful of this Court's processes as possible, ISL has a legitimate and good faith expectation that its legal obligations should be evaluated and determined through an effective and appropriate means. The only available procedure for doing so is the one to which the United States and the Republic of France agreed years ago, namely the 1970 Hague Evidence Convention.

Thus, even were the Court to apply the *Aérospatiale* multi-factor analysis to a non-party such as ISL over which the Plaintiffs do not even allege or assert jurisdiction in this Court, the only fair and just conclusion should be a determination that the Subpoena is invalid and any attempt by Plaintiffs or any other party in this case to seek discovery from ISL must proceed through the 1970 Hague Evidence Convention.

## **CONCLUSION**

For the reasons set forth above, the Court should deem the Subpoena unenforceable, deny the Motion to Compel accordingly and award ISL such other and further relief as the Court deems just and proper, including, without limitation, an award of the fees and costs ISL has had to incur as a result of Plaintiffs' issuance of the Subpoena and filing of this Motion to Compel.  ISL would seek leave to file a motion pursuant to Local Rule 54.1 if the Court were to determine that ISL is entitled to recovery of its fees and costs upon final adjudication of Plaintiffs' Motion to Compel.

Respectfully submitted,

Dated: February 4, 2020

   */s/ Charles F. B. McAleer, Jr.*
Charles F. B. McAleer, Jr.
DC Bar No. 388681
MILLER & CHEVALIER CHARTERED
900 Sixteenth Street NW
Washington, D.C.  20006
(202) 626-5800
Email: cmcaleer@milchev.com

*Attorneys for French-German Research Institute of Saint-Louis, Appearing Specially*

## CERTIFICATE OF COMPLIAN WITH LOCAL RULE 7.1(F)

I hereby certify that this memorandum complies with the word limit of Local Rule 7.1(F) and contain 7122 words, excluding the parts exempted by that Rule.

## CERTIFICATE OF SERVICE

I hereby certify a true and correct of the foregoing was electronically filed via the Court's CM/ECF system on the 4th day of February, 2020, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

*/s/ Charles F.B. McAleer Jr.*
Charles F.B. McAleer Jr.