# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

|  |  |  |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTIONS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19-md-02885 |
| This Document Relates to All Actions | ) ) ) ) | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**DECLARATION OF MR. CHRISTIAN de VILLEMAGNE**
**AND DR.-ING. THOMAS CZIRWITZKY IN SUPPORT OF**
**NON-PARTY ISL'S  OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

We, Christian de Villemagne and Dr.-Ing Thomas Czirwitzky, pursuant to

28 U.S.C. § 1746(2), declare under penalty of perjury, as follows:

1.     We are residents of the Republic of France, and we are directors of the

French-German Research Institute of Saint Louis, which is located in Saint-Louis,

France ("ISL").

2.     We are over 18 years of old, and we are competent to testify to the

facts contained in this declaration.

3.     We speak and read English, and we fully understand and intend to

submit to the Court the contents of this Declaration, in English.

4.     Unless otherwise stated herein, the factual information contained in

this declaration is based on our personal knowledge.

5.      We are submitting this declaration in support of ISL's Opposition to

Plaintiffs' Motion to Compel in the above-captioned action.

6.      ISL is a bi-national research institute operated jointly by the Federal

Republic of Germany and the Republic of France pursuant to a Convention signed

by the two countries in 1958.  *See* Convention Concerning the Franco-German

Research Institute of Saint-Louis, Fr.-Ger., March 31, 1958, 1323 U.N.T.S. 22049

("1958 Convention").  A translation of the 1958 Convention was attached as

Exhibit G to Plaintiffs' Motion to Compel.

7.      Pursuant to Article 4(b) of the 1958 Convention, ISL has two

directors, one French and the other German.  We are the two current directors of

ISL.  Pursuant to Chapter 2, Article 5, Section 2 of the Index to the 1958

Convention, we are jointly responsible for carrying out the general policies of ISL

and ensuring that ISL operates in accordance with the 1958 Convention and the

decisions of ISL's Board of Trustees.  Pursuant to Chapter 2, Article 5, Section 4

of the Index to the 1958 Convention, we are authorized to represent ISL in courts

of law.

8.      The general mission of ISL is to develop technical innovations in the

fields of defense and security.  ISL carries out research in various specialist fields

and at differing technology readiness levels (TRL), from basic research to the

development of preindustrial prototypes that can be integrated in operative

equipment (TRL from 1 to 6).  ISL is not, and has never been, a certification or standard-setting laboratory or organization.

      9.     In September 2019, ISL received, by mail, a subpoena issued by an attorney for Plaintiffs in the above-referenced matter, Mr. David Buchanan, dated September 9, 2019 ("Subpoena").  The Subpoena "commanded" ISL to produce at its offices in Saint-Louis, France documents responsive to thirty categories of requests, falling into approximately nine groups relating to: (1) any contractual and financial arrangements relating to the 3M Earplugs and/or CAE filters (Request Nos. 1–4); (2) the creation, development or design of the 3M Earplugs and/or CAE filters, including changes to the design of the 3M Earplugs and/or CAE filters (Request Nos. 5–6, 19); (3) any meetings with the 3M Company or the United States Government concerning the 3M Earplugs and/or CAE filters (Request Nos. 7–8); (4) any financial arrangements or agreements with the 3M Company or the United States Government concerning the 3M Earplugs and/or CAE filters (Request Nos. 9–12); (5) communications with the 3M Company or the United States Government concerning patents for the 3M Earplugs and/or CAE filters (Request Nos. 13–14); (6) testing and testing data concerning the Combat Arms Earplugs (Request Nos. 15–16); (7) any defects, risks, hazards and complaints concerning the 3M Earplugs and/or CAE filters (Request Nos. 17–18, 20); (8) any points of contact with the 3M Company or the United States Government (Request

Nos. 21–22); and (9) documents of certain current or former ISL employees (Pascal Hamery, Armand Dancer, Karl Buck and Claudia Rech) concerning the 3M Earplugs, CAE filters and/or hearing protection, including documents relating to patents, financial arrangements, communications, emails, meeting minutes, electronic notes and handwritten notes (Request Nos. 23–30).

10.    On information and belief, Plaintiffs did not issue the Subpoena to, or serve the Subpoena on, the Ministry of Justice of the Republic of France, which is the designated Central Authority in the Republic of France for service of foreign civil discovery requests pursuant to Article 2 of The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("1970 Hague Evidence Convention").

11.    After receiving the Subpoena, and in compliance with the 1970 Hague Evidence Convention and French law, including Law No. 68-678 of July 26, 1968, relating to the Communication of Economic, Commercial, Industrial, Financial or Technical Documents and Information to Foreign Individuals or Legal Entities, as modified by French Law No. 80-538 of July 16, 1980 (commonly known as the "French Blocking Statute"), ISL provided the French Ministry of Justice with notification (and a copy) of the Subpoena.

12.     Under the 1958 Convention, the Ministry of the Army of the Republic of France is one of the supervising governmental entities over the activities and operations of ISL.

13.     After receiving the Subpoena, and in compliance with the 1958 Convention, ISL provided the French Ministry of the Army with notification (and a copy) of the Subpoena.

14.     Attached as Exhibit A is a true and genuine copy of a letter dated January 30, 2020, that the French Ministry of Justice issued to ISL with respect to the Subpoena, along with a certified translation of the letter from French to English.

15.     Attached as Exhibit B is a true and genuine copy of a letter dated January 30, 2020, that the French Ministry of the Army issued to ISL with respect to the Subpoena, along with a certified translation of the letter from French to English.

16.     ISL is the licensor of certain U.S. and foreign patents related to non-linear sound filtering and acoustic filtering technology, including a patent issued by the U.S. Patent & Trademark Office on August 10, 1999 ("U.S. Patent No. 5,936,208"), a copy of which was attached as Exhibit C to Plaintiffs' Motion to Compel.

17.     Included in Exhibit D to Plaintiffs' Motion to Compel is a copy of a License Agreement into which ISL entered with Aearo Company on March 3, 1999 relating to, among other things, U. S. Patent No. 5,936,208 ("License Agreement").  On information and belief, the 3M Company subsequently acquired Aearo Company, including Aearo Company's rights under the License Agreement.

18.     At no time, including prior to or under the License Agreement, has ISL (a) designed or manufactured any of the products that, on information and belief, are at issue in the above-captioned litigation, (b) owned any of the products that, on information and belief, are at issue in the above-captioned litigation, (c) sold, or offered for sale, to the U.S. Government any of the products that, on information and belief, are at issue in the above-captioned litigation or (d) made any certifications, representations or warranties to the U.S. Government or any other person or entity regarding any of the products that, on information and belief, are at issue in the above-captioned litigation.

19.     At no time, including prior to or under the License Agreement, has ISL ever tested or evaluated on human beings any of the products that, on information and belief, are at issue in the above-captioned litigation for performance in use by human beings, including whether such use satisfied or complied with any standards, specifications or legal requirements.  For example, the Noise Reduction Rating referenced in the ANSI standard S3.19-1974 has never

been measured at ISL, including with respect to any of the products that, on information and belief, are at issue in the above-captioned litigation.

20.     Even were Plaintiffs to comply with the 1970 Hague Evidence Convention, and even were the Subpoena determined to be proper under the French Blocking Statute or the 1958 Convention, the likelihood of ISL possessing responsive and relevant documents is highly questionable for several reasons, including:

a.      The Subpoena does not contain a date restriction and by its terms would cover a period in excess of twenty years.  As noted above, the License Agreement was formed in 1999, and the research and develop of the underlying technology that is the subject of the License Agreement occurred over many years prior to the License Agreement.

b.      Many documents that might have existed and been responsive to the Subpoena are no longer in ISL's possession, whether pursuant to regular elimination in accordance with French law governing the retention or destruction of records or as a result of the conversion of ISL's information technology systems in 2013.

c.      Three of the ISL employees referenced in the Subpoena (Armand Dancer, Karl Buck and Claudia Rech in Request Nos. 25–30) are no longer employed by or affiliated with ISL.  Mr. Dancer left ISL in June 2006; Ms.

Rech left ISL in June 2011; and Mr. Buck left ISL in November 2014.  Pursuant to ISL's policies applicable at the time, there was no archiving of electronic data on the computers of individual employees and, upon an employee's departure, only certain specific data were retained in consultation between the employee and his/her supervisor and in accordance with French law.

21.    Even were Plaintiffs to comply with the 1970 Hague Evidence Convention, and even were the Subpoena determined to be proper under the French Blocking Statute or the 1958 Convention, the time, burden and expense that ISL would incur in responding to the Subpoena would be undue, unreasonable and substantial.  The period covered by the Subpoena (in excess of twenty years) and the broad nature of the requests (for example, "all" communications, emails, notes, tests, testing data, etc.) would require ISL to conduct an extensive, detailed and costly examination of its existing records, files and electronically stored information.

22.    For the reasons set forth above, it appears that a substantial portion of the documents requested by Plaintiffs in the Subpoena could be obtained more directly, efficiently and cost-effectively from other persons or entities, including the Defendants in the above-captioned action and the United States Government.

WE HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING FACTUAL INFORMATION IS TRUE AND CORRECT.

EXECUTED this 3RD day of February, 2020.

Christian de Villemagne,
As A Director of ISL

Dr.-Ing Thomas Czirwitzky,
As a Director of ISL

- 9 -