**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG    )    Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,    )
                                  )    Pensacola, Florida
                                  )    January 16, 2020
                                  )    11:02 a.m.
                                  )
                                  )
_____)


**TELEPHONE CONFERENCE**

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-53)


*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*100 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

## A P P E A R A N C E S

FOR THE PLAINTIFFS:          **BRYAN F. AYLSTOCK, ESQUIRE**
                             Aylstock, Witkin, Kreis & Overholtz
                             17 E Main Street, Suite 200
                             Pensacola, Florida  32502

                             **BRIAN H. BARR, ESQUIRE**
                             Levin Papantonio
                             316 S Baylen Street, Suite 600
                             Pensacola, Florida  32502

FOR THE DEFENDANT:           **KARL B. GUNDERSON, ESQUIRE**
                             Kirkland & Ellis, LLP
                             300 N Lasalle
                             Chicago, Illinois, 60654

                             **MARK J. NOMELLINI, ESQUIRE**
                             Kirkland & Ellis, LLP
                             300 N Lasalle
                             Chicago, Illinois  60654

                             **LARRY HILL, ESQUIRE**
                             Moore, Hill & Westmoreland, P.A.
                             350 W Cedar Street, Suite 100
                             Pensacola, Florida  32502

1              P R O C E E D I N G S

2           **THE COURT:**  Good morning, everyone.  This is Judge

3    Jones.  I am told by my courtroom deputy, on behalf of the

4    Plaintiffs, Mr. Aylstock, Mr. Barr, and Mr. Buchanan on are on

5    the line, and on behalf of 3M, Mr. Hill, Mr. Nomellini, and

6    Mr. Benderson -- or is it Gunderson?

7           **MR. GUNDERSON:**  Gunderson.

8           **THE COURT:**  It was spelled Benderson, so I thought,

9    oh, we have a new lawyer in the case.

10          Good morning to all of you.  As you know, I scheduled

11   this hearing -- this issue was briefly addressed with the case

12   management conference that came up that the parties are

13   attempting to resolve or issues of privilege are coming to a

14   head.  And rather than bogged down in the details at the case

15   management conference, the parties requested that I schedule a

16   telephone conference so we can discuss procedures for how

17   privilege issues will be resolved.

18          So I'm sure you've talked about it and probably have

19   some similar thoughts and maybe some dissimilar thoughts.  Let

20   me start with -- I'll turn to the Plaintiff.

21          What is the Plaintiffs' view on what would be the most

22   efficient and the best procedure the Court ought to institute

23   in order to get privilege issues resolve?

24          **MR. BARR:**  Your Honor, it's Mr. Barr, and I think I'll

25   be speaking mostly, but Dave and Bryan may chime in as well.

1          I think the best way to go forward is to take what

2   we've learned -- you know, what I talked about Tuesday is we

3   provided to the Defendants kind of a sample set of 110 that we

4   thought gave a good cross blend of the issues we were seeing in

5   the privilege log.

6          We now have the Defendant's response back to that.

7   And, you know, what we saw is, on around half, a change was

8   made to the privilege log.  On 18 of those 110, the privilege

9   claim was withdrawn, and then on 45 an amendment was made to

10  the privilege log describing, you know, the claim of privilege.

11         I think, based on that, we should go down kind of two

12  tracks.  The first track would be to take a fresh look at the

13  privilege log that's been produced at this point.  The primary

14  issue I saw in the 18 where the privilege claim was withdrawn

15  were either there was no sender or recipient on the email or

16  the communication -- that was 5 of the 18 I believe -- and then

17  on 9 of the 18 there was no lawyer anywhere in the "to" line,

18  "from" line, "c" line, anything like that.

19         And so I think we can take that learning, apply it to

20  the 9500 on the current log, give a fresh look, whatever review

21  process the Defendants followed for looking at the 110, and

22  let's get this down to the real issues and see if we can clean

23  that up.

24         I would suggest that that could be done over the next

25  30 days.  I believe that's consistent with PTO No. 9 where the

1   Defendants are required, upon producing documents, to provide a
2   privilege log 30 days later.  So it fits within that time
3   frame.
4          I think the other thing we could do is, let's work on
5   the 110.  We now have a set of documents that the Defendants
6   have taken a second look at.  It's been reduced down to 92, if
7   my math is right.
8          Let's take that 92, in the next ten days the
9   Defendants will issue -- I'm sorry, the Plaintiffs will provide
10  a challenge notice, so to speak, to the Defendants, *These are*
11  *the particular documents that we believe there is an issue with*
12  *the privilege log and they may not be privileged based upon the*
13  *description provided,* provide a short detail on why that is.
14         The Defendants get ten days to go back and look at the
15  documents we've put on the challenge notice and provide to the
16  Court either a letter brief or a motion providing in detail the
17  basis for the privilege and the document for the Court's in
18  camera review.
19         And at that point, the Court could rule, the parties
20  would have the guidance we have for the 110.  Shortly
21  thereafter, we would get the fresh review of the 9500 and, you
22  know, maybe we could -- after the 110, we could see how that
23  works, see if we expand that, make it bigger/smaller going
24  forward.  But I think that would be a good start.
25         **THE COURT:**  Okay.  Let me hear from the Defendants

1    what their view is on a procedure.

2            **MR. GUNDERSON:**  Hello, Your Honor.  So I think one

3    thing to apply just at the outset here is just a little bit of

4    a context to make sure the Court appreciates where we are and

5    how we got to this point.

6            So, the Defendant, provided Plaintiffs with the first

7    log on October 30th.  Our understanding after that, when

8    Plaintiffs began raising the possibility of challenges, the

9    Court provided some instructions to identify categorical

10   issues.

11           Some six weeks after that first log was provided,

12   Plaintiffs sent us a list of their 110 documents, which were

13   not a sort of random sample across the log, as Mr. Barr just

14   identified, but really was a sort of cherry-picked set that's

15   not representative of the entire log but representative of a

16   small subset of the overall log and just specific issues that

17   the Plaintiffs may have.

18           Defendants were surprised by the sort of format of

19   Plaintiffs' original challenges.  We were expecting more

20   categories, you know, types of privilege claims that -- you

21   know, types of documents in general that Plaintiffs thought may

22   not be privileged.

23           And so we got a spreadsheet where I think

24   three-quarters of the entries were challenged because of, you

25   know, overbreadth or vague entries, and that included entries

1    that were described as email attachments sent by outside

2    counsel related to litigation where we provided the counsel

3    involved and everything else.

4            So further, when we did meet and confer with

5    Plaintiffs and tried to steer the direction of the conversation

6    towards categorical disputes, the parties both agreed on the

7    contours of the privilege generally.  Plaintiffs acknowledged

8    that the items they've challenged so far are not categorical

9    challenges.

10            They acknowledged that privilege could be claimed in

11   each of the situations described on the log, and sort of the

12   subject matter described in each of the entries was also of the

13   type that legal advice really could be provided.

14            So, overall, Defendants have only asserted privilege

15   over some 3 percent of the documents in the case that were sort

16   of deemed responsive.  And so, this is not the -- this is not a

17   situation where we were overly conservative with our privilege

18   calls or anything like that.

19            With respect to the 18 documents where we did identify

20   the documents might not be privileged, I think roughly a third

21   of those were from a particularly difficult custodian.  The due

22   diligence materials that were produced and -- you know, for

23   those documents the difficulty was with whether the document

24   was a sort of final agreement or was a draft agreement with

25   privileged information still in it.  And after further analysis

1    and review, we decided those documents just weren't privileged.

2          So, I mean, overall, we don't see a huge problem with

3    our log, and we don't sort of see Plaintiffs' challenges as

4    identifying systemic issues *per se*.  It's much more so -- it

5    seems to be these ad hoc issues Plaintiffs have identified.

6          In terms of process, I think we can work with

7    Plaintiffs to identify potentially some additional entries that

8    would need re-review.

9          In terms of the two categories they identify, we're

10    certainly happy to look at, as Mr. Barr acknowledged, the

11    project -- it's called "Project Titan" that sort of --

12    *(inaudible)* -- reference material -- and re-review those log

13    entries to make sure there aren't similar documents like that

14    that need to be produced.

15          And then I think in terms of documents where there are

16    no sender or recipients that are -- where the sort of metadata

17    doesn't identify where it is in the metadata itself.  I think

18    we can look at that category more broadly.  And I think we may

19    need some meeting and conferring around what that list actually

20    looks like on the log, but assuming we can sort of reach an

21    agreement on which of those entries are subject to sort of --

22    or need to be reviewed on our end.

23          **THE COURT:**  Let me just ask you a couple of questions

24    so I can get my hands around this.  Are the majority of -- or

25    not the majority.  Are almost all the privilege claims work

1    product and/or attorney/client?  Are there any other privileges

2    that have been raised?

3            **MR. BARR:**  Common interest -- (inaudible) --

4            **MR. GUNDERSON:**  Apologies.  Sorry.  What was that?

5            **MR. BARR:**  Common interest is the only other one I

6    know off the top of my head.

7            **MR. GUNDERSON:**  Correct.  And we've asserted that in

8    conjunction with attorney/client and work product claims.

9            **THE COURT:**  Okay.  So there's no other sort of

10   different or unusual privilege being raised.

11           Now, you know, one other thing.  And I get how you

12   prepare a privilege log.  You know, this is not done by hand.

13   Someone sits there and looks at the document and then fills in

14   all the blanks and that you have to do it by categories.

15           And what can become problematic is, so you have a

16   privilege log.  On the to, from, bcc, there is no attorney

17   identified.  And Plaintiffs, understandably are going to say,

18   *Well, there's no lawyers involved.  Where is the privilege?*

19   And, you know, that may win the day for some.

20           But you're going to have situations where a lawyer,

21   you know, potentially in-house counsel but even outside

22   counsel, tells the client X, Y, and Z, *and I need you to review*

23   *and prepare information for me because I will need that*

24   *information for me as a lawyer to make a legal assessment.*  And

25   then it gets passed down the line, and employee A and employee

1   B are talking about in an email what information needs to be

2   collected, and there's no lawyer to, from, or bcc, you know,

3   that document could be potentially work product.

4          So in those situations where you have on the privilege

5   log there's no lawyer mentioned, how are you all, Mr.

6   Gunderson, attempting to resolve those?  I mean, you take a

7   look at it, and then what do you tell the Plaintiffs to try to

8   convince them otherwise?

9          **MR. GUNDERSON:**  And I think that's one of the issues

10  we ran into during our meet and confer where Defendants

11  specifically asked Plaintiffs what additional information do

12  you think should be included on the log to resolve Plaintiffs'

13  concerns.

14         And in that process Plaintiffs weren't able to

15  articulate anything.  I believe Mr. Barr suggested that

16  Plaintiffs were going to circle up and talk about it on their

17  end.  But we still haven't gotten a response on that.

18         Just for Your Honor's reference here, to the extent we

19  can discern the attorneys involved in these communications and,

20  you know, just in terms of situations, Defendants' position is

21  that a document without counsel copied on it can still be

22  privileged if the nonlawyers are disseminating or discussing

23  the legal advice from the attorneys, right?

24         Employee A emails employee B and says, you know, the

25  lawyer has just told us we have to do X, you know, our position

1    is that would still be privileged.

2         And so, in all those situations, to the extent our

3    team has been able to identify the lawyers involved, our

4    privileged descriptions include references to the specific

5    attorneys at issue.  In some cases, the documents may say our

6    lawyers have said to do X but there's not a specific attorney

7    described, and so in those cases our log entries just

8    described, you know, in-house counsel generally.  But where

9    possible, we have been as concrete to identify the specific

10   attorney involvement and the specific subject matter involved

11   as well.

12        Counsel has -- Plaintiffs have challenged a number of

13   entries, again, where the subject matter is litigation and we

14   described the type of litigation at issue.  And Mr. Barr said

15   Plaintiffs are going to look back at the challenged entries

16   again, and we appreciate that.

17        You know, we were a bit surprised by Plaintiffs' sort

18   of fishing expedition on their initial challenge sets, you

19   know, challenging documents where there doesn't appear to be a

20   real legal basis for the challenge at all, Plaintiffs are just

21   fishing to see if, well, maybe this document isn't privileged

22   or not.

23        **MR. BARR:**  Your Honor, just to put some of this in

24   context, when we had this meet and confer Mr. Gunderson keeps

25   talking about, we did not have their responses to our 110, and

1    so we didn't know how they were going to be, you know -- I

2    mean, our whole purpose in providing them the 110 was, *Go look*

3    *at these and tell us if they're privileged or not.*

4         And what we got in response to that was 18 that aren't

5    privileged; and of those 18, 17 of them in the privilege

6    description say that it pertains to legal advice or is

7    rendering legal advice or is related to legal advice, and

8    they've now said -- and even some of them mention litigation.

9         And now they're saying these documents are privileged.

10   I mean -- and on a lot of those, on the ones where -- I don't

11   know what he's talking about on a fishing expedition.  I mean,

12   we look at the log and we have concerns about the entries, and

13   that has resulted in half of the entries on these 110 being

14   changed.  So it sounds a little bit more than a fishing

15   expedition.

16        But, you know, it shouldn't be -- we shouldn't have

17   logs where people are claiming privilege on documents where you

18   can't even tell us who sent it or who received it.  I mean,

19   those -- that's blank.  And those are things to go back and

20   fix.

21        **MR. GUNDERSON:**  Just to make a point on that, our log

22   is clear when there are electronic documents.  Not all of the

23   documents that the Defendants produced are emails.  And there

24   are documents that are standalone PDFs, standalone Word

25   documents, they're not, you know, senders or receivers to

1   identify, right?  It is just a document where there's an author

2   and we've identified the author of the document.

3          As I think we noted before, this is -- you know,

4   Plaintiffs' original list here is a cherry-picked list of the

5   entries they think are weakest or that they think are, you

6   know, whatever they think about them.  But this is not, you

7   know, a representative sample of all nine thousand --

8   *(inaudible)* -- log entries.

9          **MR. BARR:**  And Your Honor, I take a little exception

10   to that.  I mean, in all due respect to Mr. Gunderson, he has

11   no idea how we came up with these 110 and what our purposes

12   were and what we were trying to sample.  I mean, so let's just

13   talk about what the list is, which is a sample of 110.

14          **THE COURT:**  Right, right.  Well, you know, on these,

15   quote, "standalone documents," you don't have email with a

16   to/from, and you identify with a description without disclosing

17   the confidential information the nature of the privilege, you

18   identify the author.  And if the author is not a lawyer, it is

19   an executive, the particular document might be privileged,

20   might not be privileged.

21          It all depends upon who directed their preparation, to

22   whom it was disseminated, or to whom -- or for whom it was

23   prepared.  And this sort of circles back to, as we all know

24   what privilege the burden is on the Defendant.  And when we

25   start drawing down on privilege issues on particular documents

1    for the Court to make a determination whether something like

2    that is privileged, there's probably going to have to be more

3    information.

4            Maybe the privilege is proved up by a declaration, you

5    know, and the declaration says, you know, Joe Smith was the

6    executive VP, he was tasked with such and such in the

7    litigation, and he was requested to prepare a position

8    statement that the lawyers could use or rely on or something

9    like that.  You know, maybe there's a privilege there.

10           Without the declaration, you know, you have a document

11   prepared by an executive and there's not enough in the document

12   to show it's attorney/client because there isn't reference to

13   requesting or receiving legal advice, and the Court can't make

14   a determination of whether work product would or would not

15   apply.

16           Let me just, before we nail this down on how we're

17   going to resolve this, I have one other question that -- I

18   don't want to say I'm concerned about but I'm wondering if

19   that's going to be an issue in the case.

20           Are there documents to which privilege is claimed -- a

21   work product privilege, not attorney/client, but work product

22   that was prepared during the course of other prior litigation

23   which litigation is now done, finished, completed?

24           Are there any documents -- and in particular the

25   *Moldex* litigation or other litigation, are there any documents

1    that are going to fall into that category?

2            **MR. GUNDERSON:**  There are, Your Honor.  And our

3    understanding, looking at the case law on that point, is, you

4    know, and as I believe Judge Rodgers has addressed the exact

5    issue of whether that privilege survives after the close of

6    that litigation, and Judge Rodgers has, in a very thorough

7    opinion, identified that, yes, it does.  Just because the

8    litigation is over, the work product claims are not -- you

9    know, do not go away.

10           And so, our position is that, you know, those

11   documents continue to be privileged, and we have been

12   identifying them on the privilege log.

13           **THE COURT:**  Okay.  Let me ask the Plaintiffs, is that

14   going to be an issue you're going to challenge, whether the

15   privilege ends after the litigation is complete, or is that a

16   nonissue?

17           **MR. BARR:**  We have not made a decision on that.  But,

18   I mean, I believe that -- *(inaudible)* --

19           **THE COURT:**  Okay.  Because, I mean, there is an issue

20   that, if there was sharp disagreement on that, one side said

21   the privilege survives and the other side says the privilege

22   doesn't survive and there's law supporting both positions, that

23   would be something that is going to have to be briefed in some

24   way and teed up for the Court.

25           And the reason I'm raising that, I'm trying to

1   identify some potentially common issues which don't have a

2   whole bunch to do necessarily with the subject matter but they

3   have to do with the legal issue of whether the work product

4   privilege does or does not survive prior litigation.  And I

5   think there's law supporting both positions, but I think it

6   also depends upon what litigation and what the documents were.

7   So that -- I guess that's a common theme.

8          The other, I'm sure, common theme upon which there

9   will probably be disagreement is whether documents to which 3M

10  is claiming work product is not work product because it has to

11  do with business issues, although lawyers may be cc'd on

12  something.

13         So, you know, you have two company executives talking

14  about business, *How can we increase sales and sell more of*

15  *these things* and, you know, it's a pure marketing issue, and

16  then, as a knee jerk reaction, they cc one of the in-house

17  lawyers for the company and privilege is claimed.  You know,

18  it's probably not a strong argument on privilege, but that

19  would be something the Court might have to resolve.

20         Without getting into the details, am I correct we

21  probably have a bunch of documents that fall into that

22  category?

23         **MR. BARR:**  That is certainly the Plaintiffs' suspicion

24  based upon the log.  But without seeing the document, we

25  wouldn't know that answer -- *(inaudible)* --

1          **THE COURT:**   Okay.   So Mr. Gunderson, are documents --

2     I'm not asking you to admit they're business documents and not

3     work product.   But there are those kinds of situations where

4     there is discussion between and among executives, employees,

5     and a lawyer is cc'd on it and 3M is claiming privilege?   There

6     are documents that fall -- a lot of documents that fall into

7     that category?

8          **MR. GUNDERSON:**   I mean, our position has been, in

9     drafting the log, that, you know, in-house counsel generally is

10    included on documents where there is a risk -- a legal risk

11    that may be related to the situation.

12          And, you know, from what we've seen as for, you know,

13    other either highly regulated companies or companies involving

14    consumer products, we've seen very active in-house counsel

15    involvement in, you know, evaluating those risks and providing

16    guidance to avoid those risks.

17          And so, we are -- we have not and are not taking the

18    position that every document that copies a lawyer is privileged

19    at all.   That's not our approach.   At the same time, you know,

20    some of these calls get tricky, as you can imagine on, you

21    know, where that line is between, you know, where the lawyers

22    are really providing legal advice and not.

23          So I can't stand here today and say there are no

24    documents like that on their log.   But, you know, as I

25    described earlier, we are not making conservative privilege

1      claims here and asserting, you know, every document with

2      in-house counsel is privileged by any means.

3              **THE COURT:**  Right, okay.  But that is going to be an

4      issue.  And I'll be candid with you, where this gets really

5      tricky is where you have -- I'll give you an example.

6              Years ago when -- before I was a judge, one of my

7      clients was Dow Chemical, and they had a really interesting

8      corporate structure, that their in-house legal department, you

9      know, didn't sit as a sort of separate law firm within the

10     company, and that the lawyers actually were physically

11     positioned and assigned to business units.

12             So, the such and such business unit that sold a

13     certain kind of chemical, you had the marketing guys, the sales

14     guys, and a lawyer whose office was right there with them.  And

15     the lawyers were very involved.

16             Now, some of the involvement clearly was to provide

17     legal advice.  But some of was essentially like having a

18     businessperson helping them to make the correct decisions and

19     that businessperson happened to have the benefit of a law

20     degree.

21             And so the lines can get, you know, very gray.  And in

22     order to draw brighter lines on those to determine privilege,

23     the proponent of the privilege is going to have to give the

24     Court something in terms of a declaration or some information

25     so the Court can understand why a lawyer is involved in a

 1    certain discussion, for example, in an email.

 2            Now, when you are having meet and confers with the

 3    Plaintiffs, are you talking about those things?  Are you -- I

 4    know the Plaintiffs don't have a document in front of them.

 5    But is the discussion along the lines of, this is an email

 6    talking about these marketing issues, and the lawyer is copied

 7    on it, and that lawyer, his or her position with the company is

 8    such and such, and it is their job and responsibility, when

 9    these kinds of things are brought to their attention, to review

10    them to give their legal input?  That may be something

11    sufficient to support attorney/client.

12            In the absence of that, you know, even if I had the

13    document in front of me for in camera review, unless I've seen

14    a whole group of documents and I can sort of figure out what's

15    going on by looking at them chronologically, it's very

16    difficult to figure out if something is privileged or not

17    privileged.

18            But I guess the question to you, Mr. Gunderson:  When

19    you were meeting and conferring and you're talking about a

20    document and they're saying, *Well, we think this is probably a*

21    *business document based on the description* -- we see a lawyer

22    involved.  What did the lawyer do?  Who is he?  Who is she?

23    Why were they copied on it?

24            Is that information being given to the Plaintiffs so

25    they can make an assessment on it?  Or is it simply, you know,

1    on those documents is the Defendant saying it's our position

2    that the lawyer was copied because it related to risk

3    assessment?

4         **MR. GUNDERSON:**  So this particular issue, framed in

5    the way Your Honor has, hasn't come up specifically.  We have

6    talked about whether the types of subject matter on which the

7    lawyers are being copied is the type of issue that one would

8    normally expect to get legal advice.

9         So Plaintiffs, in their challenges, identified a

10   number of litigation-related entries as not privileged matters.

11   We discussed that with Plaintiffs.  And we also sort of

12   confirmed with Plaintiffs that lawyers certainly can't provide

13   legal advice regarding issues in connection with product

14   testing or patents or license agreements or, you know, drafting

15   company policies or -- and I think this is probably one of the

16   more significant categories of documents on our log within the

17   3M process.  There was, you know, for -- whether it's --

18   *(inaudible)* -- there was a step in the process where legal was

19   required to approve -- you know, review and approve documents.

20        And our position is that, as described in our log, is

21   that that process was essentially a legal process.  It was

22   different and apart from the business function.  And I think,

23   you know, that's just short of shown in both the productions

24   and the privilege log itself.

25        You know, there are a ton of draft documents that, you

1    know, are being produced to the Plaintiffs.  There are a ton of

2    -- *(inaudible)*.  In fact, the vast majority, as I said, only 3

3    percent of the docs are on our log, right?  The vast majority

4    of documents, whether it's related to marketing or whatever,

5    don't copy lawyers and aren't privileged, you know, have been

6    produced.

7            And so there are -- you know, our understanding of the

8    way that 3M's teams worked and the Aearo teams worked, you

9    know, they were copying lawyers when they wanted the legal

10   advice, they wanted the risk assessment.  And so that's sort of

11   the basis of our privilege claim there.

12           I think one issue -- *(inaudible)* -- with the Court and

13   I think I raised this when this came up in early December, a

14   number of the in-house lawyers -- in fact, most of the in-house

15   lawyers identified on our privilege log are no longer with the

16   company.

17           As you can imagine, our documents span more than 20

18   years of time.  And so, you know, in terms of getting specific

19   declarations, we will certainly do our best to identify how to

20   substantiate the sort of role of people.  But it will be a

21   challenge for us to do that, especially for the people who are

22   no longer with the company.

23           **THE COURT:**  Well, just so you don't think this is an

24   insurmountable burden, when I'm talking about having a

25   declaration to meet the burden, it wouldn't necessarily require

1    the lawyer who is cc'd on it to submit a declaration.  You

2    know, a current senior lawyer or even general counsel of 3M

3    could submit a declaration and say, you know, lawyer X was

4    employed at 3M during these dates, and his or her title and

5    function was such and such and, as part of my understanding is

6    and as part of their duties, they were required to do X, Y, and

7    Z before marketing documents were disseminated to customers, or

8    something like that, you know, and then there's something for

9    the Court to grab on to.  Because, you know, in the absence of

10   that, it's very difficult to resolve some of these privilege

11   issues.

12          Well, it seems to me there's sort of two general ways

13   we can do this.  Obviously it makes sense directing the

14   parties, giving you some period of time to continue to meet and

15   confer about documents.  But as we all know, whether ten days

16   or three weeks or whatever, you're not going to call me up and

17   say, oh, we worked out every privilege.  So there are going to

18   be challenges, there's going to be differences on privilege,

19   and the Court is going to have to resolve it.

20          So -- well, I guess there's actually three ways.  The

21   Court can review the challenged documents, you know, on this in

22   camera.  I'm very, very reluctant to do that.  Certainly in

23   camera review should not be a surrogate for a party's burden of

24   showing privilege.

25          The other way, and this is sort of along the lines as

1    what Mr. Barr is suggesting, having a sample of documents, and

2    the Court looks at those in camera.  The parties provide briefs

3    on legal issues, what their positions are.  And the Court looks

4    at those documents and makes the determination of whether some

5    or all of them are privileged.  And then, based on the Court's

6    reasoning, that may provide further guidance to the parties

7    with regard to other documents.

8         A third way to do it, which is a little bit unusual

9    but it's certainly efficient, after you've met and conferred

10   and you've whittled it down to a sample or a small universe of

11   documents that are clearly contested, possibly by phone or in

12   person we can have a hearing, and you bring in the privileged

13   documents, and I have them in front of me.

14        And, Mr. Gunderson, you make the argument you're an

15   officer of the Court and you say, *We think this document is*

16   *privileged because it is cc'd to Mr. Smith, he was senior*

17   *counsel for such and such, and the reason it was sent to him*

18   *was for his advice.*  I have the document in front of me.  The

19   Plaintiffs can make argument and say, *Well, we don't think*

20   *that's enough because that hasn't met your burden or the law is*

21   *different from what you're representing.*

22        And I have the document in front of me, and I make a

23   call, and I say, *I agree with the Defendant it's privileged* or

24   *I disagree, it's not privileged, and it needs to be produced.*

25   And we can go through and -- not thousands, but a couple of

1   hundred documents like that and we get privilege resolved

2   pretty quickly.

3          I don't know.  What are your thoughts, Mr. Barr, on a

4   process like that as opposed to, you know, submitting a sample

5   in camera and the parties briefing and the Court simply writing

6   an order based on each of the documents in the sample?

7          **MR. BARR:**  I think a process like that would work.  I

8   mean, I guess it depends on how much we're able to get it

9   whittled down.  Because we're sitting at, you know, like I

10  said, around 9500 right now, and you certainly don't want to --

11  not that we would challenge 9500 but, you know, that could end

12  up being a very extensive hearing.  Maybe we don't have to

13  resolve all of them.  But if we do a few hundred like that, I

14  think everybody would know where the Court is.  We would have

15  certainly hit, you would think, all of the various different

16  types of categories.

17         The only thing I would like to see is, you know, I'll

18  just try to whittle down the 9500, let's take what we've

19  learned so far and apply that to what's been done and let's see

20  if we can get that whittled down and start from a smaller list.

21  Because if the numbers hold up, we're talking, you know, in the

22  area of maybe a thousand documents would come off the log that

23  aren't privileged, and I think that could help us.

24         **THE COURT:**  Mr. Gunderson, what's your view?

25         **MR. GUNDERSON:**  So I think, you know, I think two big

1     thoughts here.  The first -- and in terms of us running down

2     all the issues with a couple of hundred documents and providing

3     the types of information that the Court has wanted, especially

4     if it's more detailed type information, you know, that's going

5     to take us some time to sort through.

6           To the extent the Court is only interested in sort of

7     us identifying the players and what their role was and

8     articulating that in general terms, I think that's easier.  But

9     if the Court is sort of expecting more detail, you know, taking

10    a random sample of 100 or 200 docs in the log and looking at

11    those fresh is helpful and not a bad way to go.

12          I think the one concern Defendants have had -- and

13    this is what sort of led to us taking time to get back to

14    Plaintiffs -- was struggling to understand what Plaintiffs'

15    actual concern was.

16          Defendants' understanding of, you know, the sort of

17    privilege laws is that, you know, in camera review is not a

18    default.  You know, Plaintiffs aren't entitled to in camera

19    review.  There has to be some sort of showing to suggest an in

20    camera review is necessary.  And we don't -- we're not

21    disputing that, you know, some in camera review may be helpful.

22    But at the same time, it wasn't clear to us that Plaintiffs

23    really will dispute all -- you know, if we take a random sample

24    of 100 or 200 docs, it's not clear to us that Plaintiffs would

25    actually challenge all of those such that an in camera review

1    of all of those documents would really be necessary.

2              **MR. BARR:**  And, Your Honor, if I could follow up.  I

3    guess what makes some sense to me based upon what we've done is

4    maybe not -- if Your Honor believes a fresh look at the 9500 is

5    a step too far, maybe what we can do is a fresh look at the

6    documents where there is no recipient or sender listed and

7    there is no lawyer on it, and let's take a fresh look at those

8    and see if those can be taken off the log, given the

9    conversation we've had.  Maybe that frees up the burden some.

10             But what I don't think I would want to do is a random

11   sample.  Because there's going to be a number of documents on

12   here that, even if we think the claim of privilege isn't

13   correct, we don't care about the document based upon how it's

14   described either because of time frame or subject matter.  And

15   so putting a bunch of those on trying to resolve those, I don't

16   know that that helps anything.

17             And so what I would suggest is let's come up with a

18   number to put before the Court and it should be documents that

19   the Plaintiffs say let's look at this group of 200, and we can

20   meet and confer on it.  And if we can't resolve it, we go to

21   the Court and we do the hearing you're talking about.

22             **THE COURT:**  Okay.

23             **MR. NOMELLINI:**  Your Honor?

24             **THE COURT:**  Yeah, go ahead.

25             **MR. NOMELLINI:**  Mark Nomellini.  I think Mr. Barr has

1     touched on an important point, and I think it carries

2     implication for the process.  That is, if the sample is random,

3     and the Court does the work and the parties does do the work,

4     then it has certain simply indications for the balance that

5     aren't part of the sample.  But if the sample is not random and

6     it's the ones that are selected by Plaintiffs, then the

7     implications for the balance of the sample are very different.

8     And so, I think that's one thing that we need to think about in

9     terms of how we go forward.

10           **MR. BARR:**  And Your Honor, the only thing I would add

11    is I think it's more for not the quality of the log but

12    actually learning about issues the parties care about --

13    *(inaudible)* --

14           **THE COURT:**  Yeah, I think that's an important point.

15    Certainly I have had that come up in cases where I made an in

16    camera review and I look at the document and, yeah, I guess the

17    document passes the smell test, it's privileged.  But you read

18    the document and the knee jerk reaction is, *Well, who cares*?

19    This is not going to change the course of history in the case,

20    you know.  We've had a lot of effort, the parties have briefed

21    issues about the document, and it really turns out to be not a

22    really important document.

23           So maybe what we could do is direct the parties to

24    meet and confer to see if, at least on these no lawyer on the

25    to/from/cc/bc, you know, there's no lawyer or reference to a

1    lawyer mentioned, have the parties meet and confer to see if

2    they can work that out and give the parties maybe a couple of

3    weeks to see if you can whittle down truly what there is

4    legitimate claim or privilege on.

5            And then, when you've reached the point -- and I think

6    there's going to be disagreement on how broad privilege will be

7    to certain types of, you know, quote, "business documents," and

8    the Court might need to resolve it.

9            What we could do is come up with a sample.  The

10   Plaintiffs select a certain number of documents based upon

11   chronology and your discussions and what you can tell from the

12   privilege log you think these are important documents, you want

13   resolution of privilege because you think you want to see the

14   documents, they will be important to the case.

15           And you select a certain number, the Plaintiffs will

16   select a certain number, and then the Court could select -- if

17   I had a privilege log in front of me, by looking through it, I

18   could maybe pick some documents that I might be interested in

19   in terms of learning more about the documents as to whether,

20   you know, they're privileged or not.

21           And then we could either have the parties file briefs

22   or maybe a combination and have some very directed briefing and

23   then I could hold a hearing, I could do it possibly

24   telephonically, maybe we do it in person, where I actually have

25   in camera -- I've got the documents in front of me, and I have

1    lawyers on both sides.  And I can ask some questions and say,

2    *Counsel, is it your position that privilege would apply in*

3    *certain situation?  Yes, it does.*  The other side could tell

4    me, *No, it doesn't, here is why it doesn't.*  And I could make

5    an informed judgment and make a call really on the spot.

6             And then, from that, the parties will have a good idea

7    of at least how I view privilege in terms of the set of

8    documents in this case, and that can be applied to the other

9    documents, and hopefully that resolves most of the other issues

10   on privilege.

11            What about that, Mr. Barr, some procedure where we do

12   that?

13            **MR. BARR:**  That makes sense to me, Your Honor.  I

14   think that would work.

15            **THE COURT:**  Okay.  Mr. Gunderson and Mr. Nomellini,

16   what do you think about that approach?

17            **MR. GUNDERSON:**  That approach sounds okay to us.  I

18   think the one thing, you know -- and we're happy to continue

19   meeting and conferring with Mr. Barr about this.  I think one

20   of the things that will be important to advance the ball on,

21   you know, these issues will be some sort of a substantive

22   statement by Plaintiffs in advance what they think the issue on

23   the document is so that we have something to respond to.

24            Our position in general is that our privilege

25   description are very thorough.  And we understand the Court

1   hasn't seen our privilege log yet.  We're happy to send a copy

2   to the Court.  But our privilege log entries are thorough.  And

3   so it's important and I think helpful for everyone to know what

4   Plaintiffs' actual concern is.

5           I think on the original list of challenges, it was

6   something like 70 percent of the entries were just challenged

7   as overbroad, sort of regardless of how detailed the entry was.

8   And that, I don't think, really advances the ball very much.

9   Some of the other issues the Court has identified and

10  acknowledged, that certainly does.

11          But I think we all are aided and will get more out of

12  this process the more there is an actual sort of articulation

13  of what the legal concern is and then, you know, we have

14  something to respond to on that front as well.

15          **THE COURT:**  And by that, you mean the Plaintiffs will

16  say, *We think the document should not be privileged because,*

17  *based upon the description, it is -- the topic is marketing*

18  *issues, and we believe that is a business document, and*

19  *privilege would not apply;* and then you could respond to that

20  and you could say, *Yes, the document is a business document,*

21  *but it is privileged because it was sent to Bill Smith, who is*

22  *head of or in such and such department whose job it was to*

23  *review those types of documents before they were disseminated.*

24  Are you talking about that kind of discussion?

25          **MR. GUNDERSON:**  Correct.  And I think there's some

1    tension there with the number of documents we're able to cover

2    versus how detailed those descriptions are.  But from our sort

3    of standpoint, you know, the Plaintiffs' original set of

4    challenges didn't really give us enough to understand what it

5    is they thought we should be doing instead on our privilege log

6    or, you know, how we should be making our privilege calls

7    different.

8              And I think the more detail we have on that the more

9    we can -- you know, everybody can look at some of the case law

10   in advance and, you know, really be prepared to make arguments

11   about those concerns as opposed to just saying, you know, *Hey,*

12   *Judge, can you take a look at these documents*, and, you know,

13   *Do you agree with Defendants that they're privileged or not.*

14             **THE COURT:**  Right.

15             **MR. BARR:**  Your Honor, just so it's -- I mean, I would

16   think all of this gets flushed out during the meet and confers.

17             **THE COURT:**  Yeah.

18             **MR. BARR:**  I mean, Plaintiffs wouldn't just be

19   submitting something to you and saying we think these aren't

20   privileged.  We would obviously lay out what our position is.

21   But that would be based on meet and confers where we've

22   identified documents, we've had a discussion, Defendants have

23   looked at them and are now educated about the document and can

24   walk us through.

25             That's how that stuff gets flushed out, not by us

1    looking at a log and saying -- laying out detailed legal

2    arguments based upon a privilege log.

3            **THE COURT:**  How much time, Mr. Barr, do you think you

4    all will need to engage in meaningful meet and confers and get

5    to the point where you've identified that indeed you've got a

6    dispute and the Court is going to need to intervene and make

7    some judgment calls?

8            **MR. BARR:**  Well, I mean, the first meet and confer, as

9    I understood you were asking for, was a meet and confer on the

10   Defendants going back and looking at the to/from/cc/bcc lines

11   and having a discussion as to those.  I wouldn't think that

12   would take very long.  The Defendants are going to have to look

13   at those documents.  I think you can just identify those

14   quickly on the list, if that's something the Defendants are

15   going to engage in.

16           As far as coming up with, let's say, 200 outside of --

17   you know, let's take the blank to/from/cc/bcc/no lawyer out of

18   discussion, coming up with 200 that aren't that issue.  We

19   could probably do that in, I would say, three weeks, if not

20   less, and have the meet and confers on it.

21           **THE COURT:**  Okay.

22           **MR. NOMELLINI:**  Your Honor, it's Mark Nomellini.  One

23   concern I have, which I guess is not so much a concern if

24   people know it going in -- is that, if we're doing it based on

25   what Plaintiffs select and let's say that the Court

1    hypothetically rules that 10 percent of the items are not

2    privileged, you know, we might hear an argument afterwards,

3    *Well, you know, Defendants should now go on the balance and*

4    *take at least 10 percent off the log because those items aren't*

5    *privileged*.  But it wouldn't necessarily be that way because I

6    suspect Plaintiffs will select the ones that they think are the

7    strongest.

8            I think as long as people know that going in, I think

9    that that's okay.  I think where the process can be really

10   useful is where it hits on a particular issue, say the work

11   product issue Your Honor identified before, for example, if

12   Your Honor were to rule that work product of prior litigation

13   is not privileged, then, you know, whatever the numbers are, we

14   can go back and figure out those items on the log and then

15   produce them because they are not privileged.

16           And the other thing I think is helpful to the process

17   is, if Your Honor selects some items, then that has the

18   potential to be more representative.  But I think as long as

19   these things are appreciated going in, it will be helpful to

20   the process.

21           **MR. BARR:**  And that's certainly my expectation.  I

22   mean, I'm not expecting we'll come back and say, *The results of*

23   *this mean you have to take X number of documents off your log.*

24   But the expectation is what we learn from this is applied to

25   the log and the Defendants do go back and look at documents

1    based upon the rulings of the Court.

2        **THE COURT:**  Yeah, that's exactly my thinking.  And you

3    know, Mr. Nomellini raised an issue and there's some law that

4    supports that.  That's one of the problems with sampling to

5    simply say a sample -- you can get into all kinds of

6    statistics, *What does that mean, a sample, a sample of what?*

7        And, you know, if the Plaintiffs prevail on the

8    privilege issues, yeah, they would want that sample applied to

9    the whole thing; and vice versa, if the Defendant happens to

10   prevail on a majority of them, they would want that applied.

11       And that's really not the way it's supposed to work.

12   It's the way you both described is, when the Court rules and

13   there are some discrete issues involved in that, that gives the

14   parties guidance as to, you know, what their position is going

15   to be on similar type documents, and hopefully that gets the

16   remainder of the privilege issues resolved.

17       Now, Mr. Barr, you talked about 200 documents.

18   There's no magic in this.  What if, after your period of time

19   to meet and confer and whittle this down, if the Plaintiffs

20   picked 100 documents that they thought you had a good argument

21   on and you think are important, you know, you want those

22   documents, and the Defendants picked 100 documents which they

23   think are representative of some of their arguments, and then

24   the Court -- after both sides have picked their selections, I

25   could take a look at the privilege log, see what you have

1    selected, and that might give me a little guidance on some

2    types of documents on the privilege log that I would also be

3    interested in seeing.

4            And then that sample set would be provided to the

5    Court.  And these, of course, both sides would have agreed that

6    you disagree on these documents.  And then they would be

7    submitted for in camera, and I could have a little briefing and

8    a hearing and resolve the privilege issues on those documents.

9    I mean, it's a healthy set of documents, 200-plus documents,

10   but, you know, not unworkable.

11           What's your view on that, Mr. Barr?  Does that seem

12   like a --

13           **MR. BARR:**  I'm hopeful.  I mean, certainly we could do

14   selections to try and hit some cross issues to make sure

15   they're not all on the same issue so, you know, we have some

16   control over that.

17           I guess the only concern I have is where the meet and

18   confer process works in.  Because if I'm selecting 100, you

19   know, at some point I'm assuming we were going to meet and

20   confer with the Defendants and try and -- maybe they tell me

21   something about that document and I agree and I -- you know,

22   some of the point of the meet and confer was to flush out what

23   the real issue was.

24           **THE COURT:**  Sure.  My thought was in the next ten days

25   you would meet and confer at least on the documents where

1    there's, as you described, no lawyer/to/from/cc, have a

2    discussion about that.  Then each side would identify 100

3    representative documents, and you would have, you know, a

4    finite period of time to meet and confer on those documents.

5              And then the ones to which you still disagree, you or

6    the Defendant would submit for in camera inspection, and there

7    would be a very brief period for the parties to provide some

8    briefing that would give a little legal guidance to the Court.

9    And then I'd set a hearing, and we could resolve the issues.

10             I mean, you know, it's 200 documents, 100 each side.

11   Maybe, after meet and confer, you know, it turns out there's 78

12   of the Plaintiffs' documents that are still in dispute and, I

13   don't know, you know, 90 of the Defendant's documents, and then

14   they would all be submitted.

15             I don't want to be pessimistic, but I don't think

16   you're going to have a meet and confer on 200 documents and

17   then say, *Oh, we've resolved all 200*.

18        **MR. GUNDERSON:**  I'm hoping that at least Defendant's

19   picks Plaintiffs are quick to agree that our, you know,

20   privileged claims are valid.  But, you know, I think that

21   process will just need to play out.

22        **MR. BARR:**  The only question I have, Your Honor, is

23   when your picks -- if you're going to do selections.  So, do

24   you want us to give you our 100, the Defendants give you their

25   100, which will allow you to educate yourself on kind of what

1    we're looking at, and then we'd meet and confer?  You know,

2    there's no reason for us to hold up while you're looking at

3    that.

4         **THE COURT:**  Yeah, I think that makes the most sense.

5    You know, I'll have to have a copy of the privilege log, but

6    that will give me some guidance.  And then I may see, based on

7    the privilege log, you know, another 10 or 20 documents that I

8    have some interest in.

9         What I like about the idea of the parties picking the

10   documents and, as Mr. Nomellini says, not having just some

11   random sample, is -- you know, the Plaintiffs, you don't want

12   to make a lifelong process out of this.  There are documents on

13   this privilege log that I am sure you are very interested in

14   because of chronology, players, and subject matter that you

15   think may be important to your case, and you want to meet and

16   confer.  And if you don't resolve it and you think you have an

17   argument, you want to press on the issue and you want the Court

18   to resolve it.

19        And then, you know, there are other documents on the

20   privilege log that, I don't know, maybe they're privileged,

21   maybe they're not, but they're just not going to be that

22   important because of either chronology, who the players are, or

23   even potentially the subject matter.

24        And hopefully this avoids us wasting time on documents

25   that really aren't that important, even though maybe

1    ultimately, you know, they are privileged.

2         Okay.  So maybe this -- we'll see how efficient this

3    whole process turns out to be.  So why don't I do this:  Let's

4    give you -- today is the 16th.  I was thinking ten days --

5    let's take that to the 26th of January.  And by the 26th of

6    January you will have met and conferred regarding the documents

7    where there's no lawyer, because some of those may get resolved

8    pretty quickly.

9         And then, by the 31st you will advise the Court -- the

10   Defendant will provide the Court with a full privilege log.

11        I assume there's one privilege log both sides are

12   operating off of; is that right?

13        **MR. BARR:**  Yes, Your Honor.

14        **MR. GUNDERSON:**  Correct.  It's a cumulative privilege

15   log that we're actually in the process of updating for some

16   more recent productions.

17        **THE COURT:**  Okay.  So the Court in camera -- send that

18   to me, and I'll be provided the -- when I say in camera, I

19   don't want it on the docket.  Obviously the Plaintiffs have

20   seen it.

21        By the 31st I will get a copy of the privilege log and

22   both sides will advise me of their 100 selections of documents.

23   And then I would give the parties a short period of time to

24   meet and confer on those 100 documents.  And then during that

25   period of time I would determine if I was going to self-select

1   some.

2           And then those to which you have not resolved would be

3   submitted to the Court for in camera inspection with a short

4   briefing period.  And then I'd set a hearing, you know, the

5   thought being that I can get privilege claims resolved maybe by

6   mid February.  I mean, does that sound workable or am I kicking

7   the can down the road too much?

8           **MR. BARR:**  I think it's fast, but I think we have to

9   be fast with where the litigation is going.  So the Plaintiffs

10  agree with that.

11          **MR. GUNDERSON:**  The only suggestion I would have would

12  be to move up the date for exchanging the lists of 100 so that

13  the parties have more time to review it and make sure we're

14  letting the meet and confer process play out.  We fully agree

15  with the Court that, you know, we're probably not going to

16  resolve everything.  But I would hate for the parties to end up

17  in a dispute just because we're sort of rushing too long in the

18  meet and confer process.  But I think we can resolve that by

19  moving up the exchange.

20          **THE COURT:**  Well, how about in the ten-day period to

21  talk about the documents where there's no to/from.  I mean,

22  that's not rocket science.  Essentially the Defendant is going

23  to explain to the Plaintiffs why that document is privileged

24  even though there's not a lawyer on it, and there's probably

25  going to be some explanations, and the Plaintiffs is going to

1    say, *Oh, okay, well, we didn't realize that because there was*

2    *no "to" or "from,"* or it might even be as simple as, *Oh, we*

3    *didn't realize the author of that document was the assistant*

4    *general counsel of 3M.*

5              So, you know, in that ten-day period --

6              Would ten days be enough to identify your respective

7    100 documents?

8              **MR. BARR:**  The Plaintiffs can do that, Your Honor.

9              **MR. GUNDERSON:**  Yes, Defendants can too.  And I think

10   the Court mentioned January 26th.  I think that's a Sunday.  So

11   could we move that to the 27th?

12             **THE COURT:**  Oh, you're right.  Yeah, make that the

13   27th.  So by the 27th you'll have engaged in meet and confers

14   and will have identified the 100 documents for each side.

15             How much time after that do you need to meet and

16   confer on the -- call it 200 documents?

17             **MR. BARR:**  If we're aiming for a mid February hearing,

18   it's going to have to be about a week.

19             **THE COURT:**  Okay.  How about --

20             **MR. GUNDERSON:**  Could we push it out to -- I mean, I

21   guess one thing in terms of the scheduling, I'm going to be out

22   of the country between the 12th and the 17th, which is right

23   around the time the Court was considering holding the hearing.

24             I mean, if we extend the meet and confers out to the

25   7th and then get briefing to the Court by the 19th, does that

1    work?

2         **THE COURT:**  Well, extending the meet and confer up to

3    the 7th, I think that's not a problem.  And then on the 27th of

4    January when you designate your 100 documents, Mr. Gunderson,

5    you'll provide the Court in camera with your privilege log.

6    Both sides will tell me the 100 they've identified, and I can

7    see those, you know, on the privilege log.

8         And then, if I am going to designate some additional

9    documents, I'll let the parties know probably -- unfortunately,

10   because I'm not here, I'm going to be in -- not on this case

11   but I'm going to be in Washington at the end of that week.

12   I'll let the parties know the week of the 3rd if I've

13   designated any documents.  And then the 7th will end your meet

14   and confer period on the sample set of documents.

15        And then I was thinking of then a briefing on the

16   issues during the week of the 17th.  And let's talk about the

17   form of how that would take place.

18        Do you contemplate, Mr. Barr, you would then file a

19   Motion to Compel and then there would be a response or that

20   there would be simultaneous briefing?  Or what are your

21   thoughts on that, Mr. Barr?

22        **MR. BARR:**  I'm asking, just with the time frame we're

23   working under, I think it should be simultaneous briefing.  I

24   don't know that there's going to be time to do a Motion to

25   Compel and then they're going to want so much time to respond.

1    We'll know what the issues are by that point in time because

2    we've met and conferred on it.

3          **MR. GUNDERSON:**   I think our only concern on that point

4    would be if -- and, you know, I don't necessarily expect

5    Mr. Barr to do this, but if along the way they come up with,

6    you know, a novel legal argument or cases or the like, it is

7    helpful for Defendants to be able to have some time to respond

8    to particular arguments as opposed to, you know, sort of

9    shooting in the dark in terms of the legal arguments

10   themselves.

11         I don't think we need a ton of time.  But if -- I

12   mean, two days or three days or, you know, potentially even one

13   day for us just to review their brief and be able to like

14   provide some responses, I think that advances the ball a lot

15   more.

16         **MR. BARR:**   Your Honor, the problem I have with that is

17   it's not my burden.

18         **THE COURT:**   Right, right.

19         **MR. BARR:**   It's his burden to prove that these

20   documents are privileged, not mine.

21         **THE COURT:**   Right.  So my thought was -- I agree, you

22   know, a formal Motion to Compel might be a little time

23   consuming -- is I would simply have the parties file briefs --

24   and we'll talk about a date during that week of the February

25   17th -- and that the brief would simply be in support of their

1    position.

2            So the Plaintiffs' brief would be legal arguments in

3    support of their position as to why privilege would not be

4    applicable.  And at the same time -- because you're going to

5    have a meet and confer and you'll have an idea of what the

6    respective positions are.  And then the Defendant, that same

7    day, will file a brief in support of their position as to why

8    certain categories of documents in the sample set are

9    privileged.

10           And then I can give, if necessary, each side a couple

11   of days, if you wanted to respond to an argument that you've

12   not addressed in your simultaneous briefing.  For example, if

13   Plaintiffs' position in their brief was, *These documents from*

14   *the Moldex litigation are not privileged because the work*

15   *product privilege does not survive the conclusion of the case*,

16   and the Defendants did not know that was going to be the

17   position the Plaintiffs took, and Defendant's brief simply

18   talked about work product privilege, you know, we could give

19   the parties an opportunity to file a very brief reply.

20           But I am intending to set a hearing after that.  And

21   so I want the parties to know that -- and I'll give you a

22   chance to do a little reply briefing, but you're going to get a

23   chance to argue before the Court so no one is caught off guard.

24           I'm not sure when we'd have this hearing.  The case

25   management conference is the 21st.  It would be great if we

1    could have it before that, but I don't know if that's going to

2    be enough time.  And we could even have argument in Pensacola

3    the day before or maybe even after the case management

4    conference, but I think that's going to be a fairly aggressive

5    schedule.

6            Mr. Gunderson, when do you get back from wherever

7    you're going?

8            **MR. GUNDERSON:**  I will be out from the 13th until late

9    in the day on the 17th.

10           **THE COURT:**  Oh, okay.  Obviously you're not the only

11   lawyer at Kirkland & Ellis and I'm sure not the only lawyer

12   that's going to work on it.  But is -- well, I'll just ask you,

13   what are you suggesting would be an appropriate date for

14   submission of simultaneous briefs?

15           **MR. GUNDERSON:**  If we do the 20th -- I mean, I think

16   it's -- as the Court recognized, there's -- it's tough to fit

17   the hearing in on the 21st.

18           **THE COURT:**  Yeah, that's not going to -- yeah --

19           **MR. GUNDERSON:**  Yeah.  But if we're not sort of aiming

20   for that, if we exchange the briefs on the 20th, and if anybody

21   wants to file a reply then, you know, by the 24th, and then try

22   to schedule a hearing for that week.

23           **THE COURT:**  Yeah, okay.  That probably makes sense.  I

24   don't have my calendar in front of me, but I'm sure I'm

25   available that week of the 24th.

1           **MR. BARR:**  And, Your Honor, Plaintiffs will make

2    ourselves available on however you want to put it together.

3           **THE COURT:**  Okay.  I had some things going on that

4    week, but I can probably squeeze something in then.  Okay, I

5    think that's the best we're going to do.

6           So, to review the bidding, the parties will engage and

7    complete their meet and confers by the 27th.  The parties will

8    identify their sample of 100 documents each by the 27th.

9           On the -- well, let's make it the 28th, on the 28th

10   the Defendant will provide to the Court the privilege log, and

11   the parties will identify each of their 100 documents that they

12   would like to focus on and have the Court potentially make an

13   in camera inspection of.

14          And then the parties will meet and confer with regard

15   to those documents and, if the Court selects any documents, on

16   or before February 7th.  And any of the documents of the sample

17   to which there has not been resolution, the parties will

18   provide briefing by the end of the day on the 20th of February.

19   And then we'll see what happens.

20          If there's a necessity for a brief reply, I will see

21   if I can set some type of hearing during the week of February

22   24th.  And hopefully that will get the privilege issues

23   resolved, and then that will give the parties some time to go

24   back to the privilege logs and look at the other documents and

25   hopefully that turns out -- *(inaudible)* --

1        **MR. AYLSTOCK:**  Judge, this is Bryan Aylstock.  I was

2    listening and my partner, Neil Overholtz, came in and reminded

3    me that it might be helpful if the Defendants could provide us

4    the relevancy scores pursuant to TAR.  That may get to the

5    point you had made earlier that, you know, we could all waste

6    some effort on some documents that may not be very relevant on

7    this.  And I don't know if that's something anybody had thought

8    about, but I think it's a relevant consideration.

9        Because I think the Court -- certainly we all want to

10   get these issues resolved once and for all.  And if we don't

11   necessarily have the guidance of the Court until, you know,

12   late February at the earliest, we have some more depositions

13   coming up and we're meeting with Judge Herndon at some point

14   for a discovery plan.

15       And so I wanted to raise that and I guess just ask if

16   that's something that could be provided.  Because it's

17   something that is done on all documents, so that wouldn't be

18   part of TAR, and I think that some of them that may be helpful

19   to the parties and the Court in knowing how much time to spend

20   on what documents.

21       **THE COURT:**  So what you're saying is the actual TAR

22   score on a document?

23       **MR. AYLSTOCK:**  Correct.

24       **THE COURT:**  Is that something, Mr. Gunderson, that's

25   easily available?

1          **MR. GUNDERSON:**  It is easily available, though I need

2     to sort of check with the team on it just to make sure that I'm

3     not missing something in terms of my understanding of the TAR

4     scores and how they're used and everything else.  But I think

5     this is something we certainly can meet and confer with

6     Plaintiffs on.

7          To the extent it helps us narrow down the scope of

8     documents at issue, that's certainly something that Defendants

9     support doing.  But I certainly am not in the position, you

10    know, from the technical side of things, to commit saying, --

11    *(inaudible )*-- I'm not quite at this point -- *(inaudible)* --

12         **THE COURT:**  So on the technical side it's not a big

13    deal to do it, you just want to think through whether this is

14    something the Defendant wants to do?  I haven't thought why you

15    wouldn't, but maybe there are strategic reasons you wouldn't do

16    that that we haven't thought through.

17         But in terms of, if you were to do it, that's

18    something that's available, and on the documents on the

19    privilege log you'd be able to add a column putting the TAR

20    score, if necessary?

21         **MR. GUNDERSON:**  Correct.  And just to explain for the

22    Court and the Plaintiffs, there may be documents that don't

23    have TAR scores because of the number of categories that were

24    excluded from TAR and that are being sort of reviewed

25    separately under the non-TAR protocol.  But that's just, you

1     know, one of the issues.  I just want to make sure we are

2     thinking it through on our end first before we --

3               **THE COURT:**  Well, let's do this.  I mean, it's a

4     creative suggestion.  I'm not going to -- without allowing you

5     to think through it and talk to the other people on the team,

6     I'm not going to direct that you do it.  But I will direct that

7     the parties talk about that.  You know, from a very general

8     perspective, it doesn't sound like a bad idea.  It might be

9     helpful.

10              And after you talk to your team, you may say, *Well,*

11    *maybe that will make sense and that will make sure that we're*

12    *not picking documents that have TAR scores that show they're in*

13    *the outer boundaries of relevancy.*

14              But why don't you go ahead and, both sides, talk about

15    that and talk about the pros and cons.  But it sounds like, if

16    both sides believe there could be some efficiencies and benefit

17    to it, it's not an insurmountable task to figure out the TAR

18    score on the document somewhere that's cataloged and can be

19    extracted, I'm assuming, fairly easily.

20              It makes no sense if you have to go back to the

21    drawing board and this is going to involve, you know, 50 hours

22    in the Defendants figuring out the TAR score on these

23    documents.  Even if it helps somewhat, that doesn't make sense.

24    But, you know, if it's not real complicated, maybe it's

25    something that makes sense.

```
1              MR. AYLSTOCK:  And Your Honor, if we could get this
2    issue -- kind of bring it to a head maybe before we pick our
3    100, that would be helpful.  Obviously the Defendants have the
4    information so we're at -- not only do we not have the
5    documents, but they're at an advantage of also having the TAR
6    scores and we don't.
7              I mean, I think it just makes for a much more
8    efficient process, and hopefully we'll all not be wasting time
9    on documents that none of us really care about.
10             MR. GUNDERSON:  Yeah, I think we can commit to
11   resolving the TAR score question by, you know, the end of the
12   day tomorrow for sure.
13             THE COURT:  Okay.
14             MR. GUNDERSON:  I don't think this is something we're
15   going to have to waver over.  I just want to make sure we are
16   thinking through the issue on our end.
17             THE COURT:  Okay.  Talk about that and agree to agree
18   or agree to disagree by the close of business tomorrow.
19   Because obviously if you're going to agree to do it and it
20   sounds like a decent idea, that is information that would
21   assist the Plaintiffs in identifying more important documents
22   than other documents.
23             You know, you always have to keep in mind when you're
24   dealing with privilege -- you know, obviously the Defendant has
25   the benefit of you've got the document in front of you and can
```

1    make qualitative decisions by looking at the document, and the

2    Plaintiffs are a bit hamstrung that essentially what they have

3    is what is physically written on a privilege log which

4    includes, you know, a description of the document as

5    supplemented by additional information that is provided in your

6    meet and confers.  And that's really all the Plaintiffs have to

7    go by.

8            And the Plaintiffs at this point know a lot of the

9    players in this, but they might not know who a certain person

10   is back in 2008.  So exchange of that kind of information when

11   you talk about documents on a privilege log can be helpful.

12           Sometimes if you tell a plaintiff, you say, *Well, you*

13   *know, Joe Smith, here is who Joe Smith was, he's no longer with*

14   *the company, but he was blankety-blank*, that may give a

15   plaintiff information they may need to know in terms of saying,

16   *Well, you know, we don't really care about that at this point*,

17   or, *Oh, my God this is -- we really care about this*.

18           So always keep that in mind as you're having your meet

19   and confers.

20           And one of the things I would want the Defendant to do

21   when you submit the privilege log, either separately tell me or

22   you could have a key highlighting -- you know, I want to know

23   in terms of the names who are the lawyers.

24           Because if I look at a privilege log and it says "To

25   Joe Smith" and I don't know Joe Smith is a lawyer, that's not

1    real helpful to me.  So you can either highlight in orange or

2    blue or purple, whatever, lawyers or simply provide a separate

3    key and say, you know, the following individuals were lawyers

4    at 3M during relevant periods of time, so we'll know who the

5    lawyers are.

6         **MR. GUNDERSON:**  That makes sense, Your Honor.  And

7    just so you're aware, our privilege log itself identifies sort

8    of in the metadata or makes a good faith effort to identify in

9    the metadata displayed on the privilege log whether someone is

10   an in-house counsel or outside counsel.  And then, again, our

11   privilege descriptions incorporate that same information.  So

12   for example --

13        **THE COURT:**  Oh, okay, that's very helpful.

14        **MR. GUNDERSON:**  You know, an email sent to 3M in-house

15   counsel C.W. Raines, you know, relating to legal advice or

16   reflecting legal advice.  So we've made an effort to make sure

17   Plaintiffs have all of that information, but we are also happy

18   to provide the Court with just a summary table of, you know,

19   the key players.

20        **THE COURT:**  Yeah, that might be helpful -- or not

21   might be, that would be helpful.

22        Okay.  Well, hopefully this is going to be an

23   efficient way to resolve privilege.  You know, there may be

24   some other ways.  Maybe we'll get creative as things go along.

25        But I suspect, from the Court's perspective, as we

1    drill down into really what are the disputed issues concerning

2    privilege, there are going to be maybe a handful of things --

3    of types of documents, you know, certain communications

4    potentially to third-parties and, you know, there's an issue

5    that the Defendants say, *Even though this document we've*

6    *disseminated to a third-party, they're within the zone of*

7    *confidence in some way*, and the Plaintiffs take a different

8    position; maybe issues regarding survival of work product

9    privilege in prior litigation; issues obviously regarding

10   whether a document is just purely, you know, a business

11   document.

12              And there will be some themes like that that the Court

13   will be able to resolve, and I think that will ultimately

14   provide the parties with guidance on the vast remainder of the

15   documents that I'm not going to make an in camera inspection

16   of.

17              **MR. BARR:**  I agree, Your Honor.

18              **THE COURT:**  Mr. Barr, anything else, any other

19   thoughts on behalf of the Plaintiffs before we end?

20              **MR. BARR:**  No, Your Honor.  I just appreciate you

21   holding this hearing and helping us get this resolved.

22              **THE COURT:**  Okay.  And Mr. Gunderson, anything else on

23   behalf of your client?

24              **MR. GUNDERSON:**  Nothing from our end.  But again, we

25   want to express our appreciation to your helping us move this

1    along.

2                    **THE COURT:**  Okay.  Thank you.  Have a good day.

3                    *(Proceedings concluded at 12:33 p.m.)*

4                        --------------------

5    *I certify that the foregoing is a correct transcript from the*
     *record of proceedings in the above-entitled matter.   Any*
6    *redaction of personal data identifiers pursuant to the Judicial*
     *Conference Policy on Privacy are noted within the transcript.*

7

8

      *s/Donna L. Boland*                        *2-10-2020*
9     *Donna L. Boland, RPR, FCRR*                *Date*
      *Official Court Reporter*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25