**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

Pending before the Court is Plaintiffs' motion to compel the French-German Research Institute of Saint-Louis ("ISL"), a foreign nonparty, to comply with a subpoena for the production of documents issued pursuant to Federal Rule of Civil Procedure 45.  ECF No. 891.  ISL has filed a response in opposition to Plaintiffs' motion.  ECF No. 969.  The motion is therefore ripe for the Court's consideration.  For the reasons discussed below, Plaintiffs' motion to compel is due to be **DENIED**.

### I.  BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the Combat Arms Earplug Version 2 (the "CAEv2").  ECF No. 704.  The CAEv2 is a dual-ended earplug, "in which one end is designed to function as a traditional earplug, providing linear (or constant) sound attenuation,"

while the other end contains a filter "designed to function as a 'nonlinear' or 'level-dependent' earplug, providing increasing sound attenuation with increasing noise levels."  ECF No. 891 at 3.  The designs for the nonlinear end of the CAEv2 (occasionally referred to as the "ISL filter" or the "CAE filter") and for a generic double-ended earplug originated as ISL's intellectual property.  *Id.*

### A.  ISL's Formation, Research, and Dealings with Defendants

ISL is an "institute for research, scientific studies[,] and basic technologies in the field of armaments" (military weaponry and equipment) created in the 1958 Convention Between the French Republic and the Federal Republic of Germany Concerning the Franco-German Research Institute of Saint-Louis (the "1958 Convention").  ECF No. 891-7 at 3; *see also* ECF No. 969-2 ¶ 6.  ISL operates as a "non-profit scientific research establishment" at equal expense to the French and German governments and is administered by a board of trustees and two directors (one from each country).  ECF No. 891-7 at 3–4.  ISL's current directors are Christian de Villemagne and Dr.-Ing Thomas Czirwitzky.  ECF No. 969-2 ¶ 7.

ISL also enjoys the "broadest legal capacity conferred upon legal entities" in the contracting nations, including the authority to acquire and dispose of property and to appear in court.  ECF No. 891-7 at 3.  However,

2

its "property and assets … may be exempt from seizure." *Id.*  Because

ISL's "general mission … is to develop technical innovations in the fields of

defense and security," ECF No. 969-2 ¶ 8, the 1958 Convention provides

that ISL must protect "official secrets and classified documents" in

maintaining its intellectual property, ECF No. 891-7 at 6.

Plaintiffs assert that in the mid-1990s, ISL researchers Pascal

Hamery and Armand Dancer sought "to develop an acoustic filter with

nonlinear performance superior to other nonlinear earplugs on the market

at that time."  ECF No. 891 at 7.  Consequently, ISL invented the design for

the dual-ended (or "double-ended") earplug that was tested in combination

with Defendant Aearo's then-existing UltraFit earplug.  *Id.* at 8.  On

December 18, 1997, Inventor Hamery, on behalf of Assignee ISL, applied

for a patent ISL's "double-ended" earplug design with the United States

Patent and Trademark Office.  ECF No. 891-3 at 2.[1]

On March 3, 1999, ISL entered into a licensing agreement granting

Defendants the exclusive rights to manufacture, use, and sell products

using ISL's double-ended earplug design.  ECF No. 891-4; ECF No. 969-2

¶ 17.  ISL avers, however, that it "is not, and has never been, a certification

or standard-setting laboratory or organization."  ECF No. 969-2 ¶ 8.   That

---

[1] Patent No. 5,936,208 was issued on August 10, 1999.  ECF No. 897-3 at 2

is, ISL claims not to have tested the CAEv2 on humans for performance, "including whether such use satisfied or complied with any standards, specifications, or legal requirements." *Id.* ¶ 19.  And ISL represents that it did not design, manufacture, own, or sell the CAEv2, nor did it make "any certifications, representations[,] or warranties to the U.S. Government or any other person or entity regarding" the CAEv2. *Id.* ¶ 18.

### B.   Plaintiffs' Rule 45 Subpoena and ISL's Objections

On September 9, 2019, Plaintiffs sent ISL a comprehensive discovery subpoena for the production of documents.  ECF No. 891-1 at 1.  Plaintiffs sought the production of thirty categories of documents pertaining to: (1) contractual and financial arrangements between ISL, Defendants, and the United States Government for the CAE filter[2]  or 3M Earplugs[3]; (2) the "creation, development, or design" of the CAE filter or 3M Earplugs; (3) meetings between ISL, Defendants, and the United States Government at which they discussed the CAE filter or 3M Earplugs; (4) communications

---

[2] The term "CAE filter" is defined in Plaintiffs' discovery subpoena as "the Combat Arms Earplug filter contained within the 3M Earplugs."  ECF No. 891-1 at 7.

[3] The term "3M Earplugs" is defined in Plaintiffs' discovery subpoena as "the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured and sold by 3M to the U.S. military from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by 3M for civilian use or non-military use, including but not limited to the 3M E-A-R ARC Plug, CAEv.1, CAEv.3, CAEv.4 and CAEv. 4.1."  ECF No. 891-1 at 7.  The term "includes, but is not limited to, single[-]ended and double[-]ended nonlinear earplugs."  *Id.*

between ISL, Defendants, and the United States Government regarding the CAE filter or 3M Earplugs; (5) testing data for 3M Earplugs; (6) the alleged defects, risks, elevated hazards, failures, deficiencies, or dangers to hearing relating to the CAE filter or 3M Earplugs; (7) points of contact between ISL, Defendants, and the United States Government; and (8) records of ISL employees or former employees, namely Hamery, Dancer, Karl Buck, and Claudia Rech, related to the CAE filter or 3M Earplugs.  *Id.* at 8–11.  Plaintiffs set October 9, 2019, as the return date for production. *Id.* at 1.

ISL received the subpoena via "FedEx International Priority" delivery on September 11, 2019.  ECF No. 891-1 at 4.   On October 8, 2019, counsel for ISL sent Plaintiffs a letter raising myriad objections to the discovery subpoena, including lack of personal jurisdiction, improper service, immunity from foreign discovery under Articles 2 and 9 of the 1958 Convention, violations of French Law No. 68-678 of July 1968 (the "French Blocking Statute"), relevance, proportionality, lack of possession, custody, or control, and undue burden.  ECF No. 891-2.

Following ISL's October 8, 2019, letter, counsel for Plaintiffs and ISL engaged in a lengthy conferral process aimed at addressing and potentially resolving ISL's objections.  ECF No. 969 at 16–18; *see also* ECF Nos. 969-

5

5, 969-6, 969-7, 969-8, 969-9, 969-10.  Plaintiffs and ISL did not reach an

agreement on the production of discovery or withdrawal of the subpoena.

The instant motion followed.

### C.    Plaintiffs' Motion to Compel and ISL's Response

Plaintiffs move for an order compelling ISL's compliance with the

discovery subpoena under Rule 45(d)(2)(B)(i).  Plaintiffs ask the Court to

compel production over ISL's objections because the requested documents

are relevant under Federal Rule of Civil Procedure 26 and service of the

subpoena on ISL by mail was authorized under Federal Rule of Civil of

Procedure 4(f)(1) in conjunction with Article 10(a) of the Hague Convention

on the Service Abroad of Judicial and Extrajudicial Documents in Civil and

Commercial Maters, Nov. 15, 1965, 20 U.S.T. 361, (the "Hague Service

Convention").  Plaintiffs further contend that its subpoena does not run

afoul of the 1958 Convention creating ISL, and the principles of

international comity set forth in *Société Nationale Industrielle Aérospatiale

v. U.S. Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522 (1987)

("*Aérospatiale*") favors an order compelling production.

ISL resists Plaintiffs' discovery efforts, arguing that Plaintiffs' reliance

on the Hague Service Convention is misguided because the Hague

Convention on the Taking of Evidence Abroad in Civil or Commercial

6

Matters, Mar. 18, 1970, 23 U.S.T. 2555, (the "Hague Evidence

Convention") requires service of discovery requests on France's "Central

Authority," the Ministry of Justice.  ISL also insists the Court does not have

jurisdiction over ISL to compel the production of discovery, and therefore

the Hague Evidence Convention is the "exclusive means" for Plaintiffs to

seek discovery from ISL.

Lastly, ISL maintains that even if the Hague Evidence Convention

were not Plaintiffs' only discovery vehicle, the application of *Aérospatiale*'s

international comity analysis (particularly in view of the French Blocking

Statute) endorses using the Hague Evidence Convention's procedures for

international discovery over the Federal Rules of Civil Procedure.  In

support of this argument, ISL submits letters from the French Ministry of

Justice and French Ministry of the Army concerning Plaintiffs' discovery

subpoena.

## II.  THE HAGUE SERVICE AND EVIDENCE CONVENTIONS

### A.    The Hague Service Convention

The Hague Service Convention, dated November 15, 1965, and

ratified by the United States Senate on April 14, 1967, revised sections of

the Hague Conventions of Civil Procedure of 1905 and 1954 "to provide a

simpler way to serve process abroad, to assure that defendants sued in

foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988) ("*Schlunk*"); 20 U.S.T. 362.  As the Supreme Court has recognized, "[t]he purpose of the multilateral treaty is to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017).

The "primary innovation" of the Hague Service Convention is the requirement that each signatory nation establish a "[C]entral [A]uthority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698; *see also* 20 U.S.T. 362, Art. 2–7.  The Hague Service Convention also provides for service through "diplomatic and consular agents" (Article 8), on designated individuals using "consular" or "diplomatic" channels (Article 9), and, upon agreement of two or more signatories, on methods of service "other than those provided for in the preceding articles" (Article 11).  20 U.S.T. 362, Art. 8, 9, 11; *see also Water Splash*, 137 S. Ct. at 1508.

Of relevance to the dispute in this case Article 10(a) of the Hague Service Convention provides that so long as a signatory does not object, the treaty does not "interfere with … the freedom to send judicial

8

documents, by postal channels, directly to persons abroad." 20 U.S.T. 362, Art. 10(a). Following ratification, this provision created considerable debate in federal courts. *Water Splash*, 137 S. Ct. at 1508. Litigants wrangled over whether the term "send" meant "service of process" and whether the term "judicial documents" referred to pleadings, discovery requests, or court orders. In 2017, the Supreme Court looked to the text and structure of the Hague Service Conventions, as well as extratextual sources, and determined that Article 10(a) permits service of court documents by mail so long as "the receiving state has not objected to service by mail" and "service by mail is authorized under otherwise-applicable law." *Id.* at 1513.

### B. The Hague Evidence Convention

The Hague Evidence Convention, opened for signature on March 18, 1970, and ratified by the United States Senate on June 13, 1972, "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Aérospatiale*, 482 U.S. at 524; 23 U.S.T. 2555. The United States took the initiative in proposing the Hague Evidence Convention following the favorable response to the Hague Service Convention and aspired to "establish a system for obtaining evidence located abroad that would be

9

'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state."  *Aérospatiale*, 482 U.S. at 530.

The Hague Evidence Convention provides for the transmission and execution of "Letters of Request," commonly known in the United States as letters rogatory. *See* 23 U.S.T. 2555, Art. 1 ("In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.").  Letters of Request must provide specific information about the proceeding in the sending state and the discovery sought.  23 U.S.T. 2555, Art. 3.  The Letters are sent to the designated "Central Authority" of a signatory for the Central Authority to then "transmit them to the authority competent to execute them."  23 U.S.T. 2555, Art. 2.  The requested authority must "apply the appropriate measures of compulsion" to the same extent it would for the "execution of orders issued by authorities of its own country or of requests made by parties in internal proceedings."  23 U.S.T. 2555, Art. 10.  The recipient of Letters of Request may refuse to give evidence based on a privilege recognized under the laws of the sending or receiving nation.  23 U.S.T. 2555, Art. 11.

This procedure is not mandatory.  The preamble of the Hague Evidence Convention "does not speak in mandatory terms … to describe the procedures for all permissible transnational discovery and exclude all other existing practices."  *Aérospatiale*, 482 U.S. at 534.  The Hague Evidence Convention "itself does not modify the law of any contracting state, require any contracting state to use the Convention procedures, either in requesting evidence or in responding to such requests, or compel any contracting state to change its own evidence-gathering procedures."  *Id.*  In short, "the Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."  *Id.* at 536.

On the other hand, the Hague Evidence Convention is "one method of seeking of evidence that a court may elect to employ."  *Aérospatiale*, 482 U.S. at 541.  "[I]n determining whether to employ Hague Convention means or allow other procedures, a court must look to such factors as considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficacy of alternative formats for discovery."  *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001).

Since *Aérospatiale*, federal courts weighing the considerations of international comity have routinely looked to five factors: (1) "[t]he importance to the litigation of the documents or other information requested"; (2) "[t]he degree of specificity in the request"; (3) "[w]hether the information originated in the United States"; (4) "[t]he availability of alternative means of securing the information"; and (5) "[t]he extent to which noncompliance with the request would undermine the important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."  482 U.S. at 544 n.28 (citing Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (1986)).

The party seeking application of the Hague Evidence Convention bears the burden of persuasion.  *In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 365 n.17 (D. Kan. 2010).  Ultimately, the decision to permit discovery under the Hague Evidence Convention is within the Court's discretion. *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019); *see also Aérospatiale*, 482 U.S. at 546 ("The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies

they invoke.").  The Supreme Court has instructed federal courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Aérospatiale*, 482 U.S. at 546; *see also id.* ("American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.").

## III.  DISCUSSION

In the instant motion, Plaintiffs present two issues for the Court's resolution.  First, the parties agree that Plaintiffs were required to serve their discovery subpoena on ISL but disagree as to which international treaty governed the method of service.  Second, assuming service was proper, the parties offer competing considerations of international comity under *Aérospatiale* for the Court to decide whether it should follow the Hague Evidence Convention's procedures for international discovery rather than the Federal Rules of Civil Procedure.

These issues are not wholly divorced because subsumed in both is the consideration of this Court's personal jurisdiction.  A court must have personal jurisdiction over a nonparty to compel compliance with a discovery

request.  ISL is a foreign nonparty, and as it points out, "Plaintiffs have not alleged … jurisdiction over ISL, whether directly or through any purported affiliate."  ECF No. 969 at 24.  At bottom, if the Court does not have personal jurisdiction over ISL to compel production under Rule 45, the Hague Service Convention would be inconsequential and Plaintiffs must attempt to obtain discovery under the Hague Evidence Convention or in proceedings abroad.

After careful consideration, the undersigned concludes that although service by mail of the discovery subpoena was proper under the Hague Service Convention, the Court does not have personal jurisdiction over ISL to compel compliance under Rule 45.  Accordingly, as explained below, Plaintiffs were required to follow the procedures for discovery in the Hague Evidence Convention.  Alternatively, even if the Court had jurisdiction over ISL such that the Federal Rules of Civil Procedure applied to this discovery dispute, the Court concludes that the considerations of international comity discussed in *Aérospatiale* weigh in favor of Plaintiff utilizing the Hague Evidence Convention to obtain the production requested in its subpoena.

### A.   Service of the Subpoena on ISL by Mail

Because the Supreme Court thoroughly examined Article 10(a) of the Hague Service Convention in *Water Splash*, the Court can easily dispose

of the threshold issue in Plaintiffs' motion—whether Plaintiffs properly served their discovery subpoena by mail.  The applicable legal principle is that the Hague Service Convention authorizes service of judicial documents by mail among signatory countries so long as the receiving state has not generally objected to service by mail and service by mail is authorized under otherwise-applicable law.  *Water Splash*, 137 S. Ct. at 1513.

Federal Rule of Civil Procedure 4(f)(1) authorizes service outside of the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]"  Fed. R. Civ. P. 4(f)(1).  In addition to the United States, France is a signatory to the Hague Service Convention and has not objected to the service methods in Article 10(a).  *See Shoham v. Islamic Republic of Iran*, 922 F. Supp. 2d 44, 50 (D.D.C. 2013) (listing France among a group of signatories to the Hague Service Convention that have not objected to service by mail under Article 10(a)); *Portalp Int'l SAS v. Zuloaga*, 198 So. 3d 669, 672 n.3 (Fla. 2d DCA 2015) ("Article 21 of the Hague Convention requires each contracting state to indicate whether they

object to [A]rticle 10, and France has not objected to [A]rticle 10."). Therefore, Plaintiffs' method of service on ISL was permitted.

ISL's numerous challenges do not compel a different conclusion. First, ISL argues the method of discovery in the Hague Evidence Convention supplanted Article 10(a) of the Hague Service Convention. ECF No. 969 at 19.  There is no legal authority supporting this proposition, and it is clear from *Water Splash* that domestic litigants continue to effectuate service by mail under Article 10(a) notwithstanding the existence of the Hague Evidence Convention.  Moreover, Article 10(a) applies to the service of discovery subpoenas on foreign nonparties.  *TracFone Wireless, Inc. v. Does 1-5*, No. 11-cv-21871-MGC, 2011 WL 4711458, at \*\*4–5 (S.D. Fla. Oct. 4, 2011); *Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 307 (S.D.N.Y. 2009).

Second, ISL claims that service on ISL was improper because the Hague Evidence Convention was the "vehicle by which the Republic of France designated its Ministry of Justice as the 'Central Authority' through whom civil discovery requests must be received and processed, as that term is used in the 1965 Hague Service Convention."  *Id.* at 19–20.  This argument rests on an incorrect reading of the Hague Service Convention. Article 10 of the Hague Service Convention is distinct from preceding

articles requiring service on a Central Authority.  *See Water Splash*, 137 S. Ct. at 1508 ("Submitting a request to a central authority is not, however, the only method of service approved by the Convention."); *Ackermann v. Levine*, 788 F.2d 830, 838–39 (2d Cir. 1986) ("Plaintiffs declined to follow the service route allowed under Article 5 of the Convention, which permits service via a 'Central Authority' of the country in which service is to be made.  Instead, plaintiffs chose to follow the equally acceptable route allowed under Articles 8 and 10.").

In the same vein, ISL's third argument—relying on Article 13 to aver that a signatory to the Hague Service Convention may refuse to comply with service that would "infringe its sovereignty or security," ECF No. 969 at 20—must fail because Article 13 only applies to attempted service through a country's designated Central Authority.  *See Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013) ("A refusal to effect service under Article 13 of the Convention … indicates only that service through the Central Authority is not an option."); *United States ex rel Bunk v. Bikart Globistics GmbH & Co.*, No. 1:02-cv-1168(AJT/TRJ), 2010 WL 423247, at *1 (E.D. Va. Feb. 4, 2010) ("Under Article 13 of the Hague Convention, the Central Authority is not required to comply with a request for service that

infringes upon 'the sovereignty or security' of the Central Authority's state, even if the Hague Convention does apply.").

Lastly, ISL's suggestion that Plaintiffs' service of the discovery subpoena was improper because it was not approved by this Court is not supported by any binding law.  ECF No. 969 at 20–22.  Indeed, ISL admits that court approval was only an option Plaintiffs "could have and should have" taken prior to issuing its subpoena on ISL.  *Id.* at 20.  The Court is not persuaded that Plaintiffs' failure to apply for court approval of its subpoena somehow negates their compliance with the Hague Service Convention.

Plaintiffs' Rule 45 subpoena, therefore, was served validly under Article 10(a) of the Hague Service Convention.

## B.    Personal Jurisdiction over ISL

The Court will now turn to the gravamen of ISL's opposition to Plaintiffs' motion to compel—that this Court lacks jurisdiction over ISL to order it to comply with the Rule 45 subpoena.  ECF No. 969 at 18–23.  It is well-established that this Court must have personal jurisdiction over a nonparty to compel compliance with a discovery request under Rule 45. *See Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017) ("So to be entitled to use the federal district court in Chicago to

obtain from the parent banks the worldwide information that the plaintiffs seek, they had to be able to prove that the court has personal jurisdiction over the banks, that is, jurisdiction over the "persons" (the two banks) against which relief is sought—hence jurisdiction to subpoena them."); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45.").

The Court typically employs a two-part analysis to determine whether it has personal jurisdiction over a civil defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996). The Court must first determine if jurisdiction can be obtained under Florida's long-arm statute (Fla. Stat. § 48.193). *Id.* at 627. If so, the Court then looks to whether the defendant has "sufficient minimum contacts" with Florida to satisfy the constitutional requirements under the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 630–31.

At least two circuit courts have applied "this test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue." *Gucci*, 768 F.3d at 141–

19

42 (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996)).[4]  The undersigned finds these cases instructive.  Here, however, the Court need not delve into this analysis because Plaintiffs do not allege the Court has personal jurisdiction over ISL.  ECF No. 969 at 24.  In view of some of the seminal cases addressing personal jurisdiction—*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) —this studied silence speaks volumes.[5]  The Court lacks personal jurisdiction over ISL.  Accordingly, the Court cannot order ISL to comply with Plaintiffs' Rule 45 subpoena.

---

[4] *See also Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) ("Federal courts must satisfy three primary requirements to lawfully exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process.").

[5] Although at the motion-to-compel stage, the objecting party typically bears the burden to substantiate its objections, *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005), it is consistent with the standard for determining whether personal jurisdiction exists over a civil defendant for the Court to place the initial burden of proving personal jurisdiction over a foreign nonparty in a discovery dispute on the movant.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) ("A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.").

## C.   Discovery under the Hague Evidence Convention

Alternatively, even if the Court were to conclude that it had personal

jurisdiction over ISL and thus the Federal Rules of Civil Procedure were

applicable, the *Aérospatiale* international comity factors support utilizing the

Hague Evidence Convention's discovery procedure.[6]  In considering

whether a party should pursue discovery under the Hague Evidence

Convention or the Federal Rules of Civil Procedure, the Court must

---

[6] There is no question that a party attempting to obtain discovery from a foreign nonparty must resort to the Hague Evidence Convention's discovery procedures (where available) if the Court does not have personal jurisdiction over the nonparty.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-07189 (SMB), 2019 WL 1055958, at *5 (S.D.N.Y. Mar. 5, 2019) ("Letters rogatory … may be the only means to request documents or testimony from foreign non-parties over whom the court has no personal jurisdiction and who are beyond the subpoena power of the court." (internal citations omitted)); *In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058, 1060 (D. Minn. 2004) ("It also appears that resort to the Convention is the only means available to obtain the requested discovery from Dr. Guariniello, as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court."); *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("Resort to the Hague Evidence Convention in this instance is appropriate since both Mr. Duynisveld and Mr. Dietz are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of the Netherlands, and are not otherwise subject to the jurisdiction of the Court."); *see also* 3 Ved P. Nanda, et al., *Litig. of Int'l Disputes in U.S. Courts* § 17:42 (2d ed. 2008, updated 2019) ("A person seeking documents must assume that discovery may be had from a non-party in federal court only from a location that has personal jurisdiction over the burdened person.  Regardless of theoretical issues, a court will have serious difficulty issuing a contempt order for noncompliance if it should lack personal jurisdiction.  Personal jurisdiction may be in the district of litigation, permitting discovery from the court adjudicating the case.  Personal jurisdiction may be in other districts in the U.S., permitting discovery in one or more of those districts consistent with other rules imposed by [Rule] 45.  Absent the above, discovery must be made through the aid of foreign legal processes (including the Hague Evidence Convention) in the nation with jurisdiction over the burdened party.  At best, a foreign nation will take time to honor a discovery request under the Hague Convention, and at worst, the foreign nation is not a signatory to the Hague Convention. Consequently, U.S. litigants will want to invoke the jurisdiction of the U.S. court if at all possible.").

scrutinize: (1) the importance of the requested discovery to the litigation; (2) the breadth of the discovery requests; (3) whether the discovery originated in the United States; (4) any alternative means for the requesting party to secure the discovery; (5) whether noncompliance with the request would undermine important interests of the United States or, conversely, compliance with the request would undermine the important interests of the nation where the discovery is located. *Aérospatiale*, 482 U.S. at 544 n.28. ISL, as the proponent of using the Hague Evidence Convention procedures, bears the burden on this issue. ECF No. 969 at 28.

Turning to the first factor, the discovery Plaintiffs sought from ISL is significant to their claims against Defendants. ISL played a central role in the creation, development, and testing of a key component of the CAEv2 and the generic design for a dual-ended earplug. Any contractual arrangements and communications between ISL, Defendants, and the United States Government regarding the CAEv2 or CAE filter, as well as testing data for this technology, are relevant to this litigation. Moreover, ISL was in a unique position to know about any defects or risks relating to the CAE filter or CAEv2, and any documents reflecting these concerns, if any, would be germane here.

The remaining factors, however, favor employing the Hague

Evidence Convention.  Plaintiffs' discovery requests to ISL pertain to any

document ISL may possess mentioning the CAE filter or CAEv2 without

consideration of whether those documents still exist.  These thirty

categories of document requests span a period "in excess of twenty years."

ECF No. 969 at 31.  There is also no suggestion that the requested

documents originated in the United States or they are not otherwise

obtainable from domestic sources over which the Court would have

jurisdiction (such as Defendants or the United States Government).

As to the fifth, and final, factor, Plaintiffs' discovery requests notably

implicate the sovereignty and security of France, which the Court must

"take care to demonstrate due respect."  *Aérospatiale*, 482 U.S. at 546.

Although the French Blocking Statute is not a meaningful barrier to

production, *see In re Air Cargo Shipping Antitrust Litig.*, 278 F.R.D. 51, 53–

54 (E.D.N.Y. 2010), ISL's charter demonstrates it is an exceptional

organization inextricably intertwined with the French government such that

ISL's objectives may be indistinguishable from those of the French

military.[7]  Indeed, France's Ministry of the Army objected to Plaintiffs' initial

---

[7] *See United States v. Ackerman*, 831 F.3d 1292, 1295 (10th Cir. 2016) ("The problem of drawing a line between public and private entities is an old and difficult one.  Perhaps the Supreme Court's first great tangle with the task came in *Trustees of Dartmouth College*

subpoena on the basis that ISL is charged with assisting France with its national defense and the documents requested would give access to a host of confidential scientific, technical, and financial information.  ECF No. 969-4.  This factor, therefore, advises against subjecting ISL to the Federal Rules of Civil Procedure.

Therefore, in applying the *Aérospatiale* comity principles, the Court concludes that international comity demands Plaintiffs attempt to obtain discovery from ISL (a non-party over whom the Court does not jurisdiction) through the Hague Evidence Convention and not through the Federal Rules of Civil Procedure.

### IV.  ISL'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Finally, ISL requests "an award of the fees and costs" it incurred "as a result of" Plaintiffs' issuance of the discovery subpoena and filing the instant motion.  ECF No. 969 at 34.  Rule 45 governs Plaintiffs' motion to compel.  Unlike Federal Rule of Civil Procedure 37, Rule 45 does not provide for an award of attorneys' fees or expenses arising from the

---

*v. Woodward*, 17 U.S. 518, 668–69 (1819).  There the Court suggested that the calling card of a governmental entity is whether it is 'invested with any portion of political power, partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority.'  That an entity might be incorporated … doesn't prevent it from also qualifying as a governmental entity: the dispositive question isn't one of form but function, turning on what the entity does, not how it is organized.  So, for example, a municipality may undoubtedly qualify both as a corporation and as a governmental entity.").

litigation of a motion to compel the production of documents.  *Castleberry v. Camden Cty.*, 331 F.R.D. 559, 566 (S.D. Ga. 2019); *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672–73 (N.D. Fla. 2010).

Rule 45(d)(1) authorizes the Court to levy an "appropriate sanction," including attorney's fees, on a party that does not take reasonable steps to avoid imposing an undue burden or expenses on the recipient of a subpoena.  Fed. R. Civ. P. 45(d)(1).  Although federal courts are duty-bound to enforce the discovery principles of Rule 45(d)(1), a sanctions award is discretionary.  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see also Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 627–28 (11th Cir. 2019) (applying an abuse of discretion standard "in assessing the propriety of the sanction imposed under Rule 45(d)(1)").

Plaintiffs' issuance of the discovery subpoena and this resulting motion to compel are far from warranting sanctions under Rule 45(d)(1).  First, "[m]erely losing a motion to compel does not expose a party to Rule 45 sanctions."  *Legal Voice*, 738 F.3d at 1185.  Second, ISL has failed to demonstrate—and there is nothing in the record suggesting—that Plaintiffs proceeded unreasonably, in bad faith, or with an improper purpose.  *Id.*; *Goldberg v. Amgen*, 123 F. Supp. 3d 9, 22–23 (D.D.C. 2015).

ISL's request for an award of attorney's fees and costs, therefore, is

**DENIED**.

## V.  CONCLUSION

Accordingly, it is **ORDERED**:

1.     Plaintiffs' motion to compel, ECF No. 891, is **DENIED**.

2.     ISL's request for an award of attorney's fees and costs, ECF
       No. 969 at 34, is **DENIED**.

**DONE AND ORDERED** this 18th day of February 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge