UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**PLAINTIFFS' UNOPPOSED MOTION TO APPOINT LIEN RESOLUTION ADMINISTRATOR AND MEMORANDUM OF LAW**

Plaintiffs, by and through Plaintiffs' Co-Lead Counsel, respectfully move the Court for an order appointing ARCHER Systems, LLC ("ARCHER") as the Lien Resolution Administrator ("LRA") for the above-captioned action.

I.   **SUMMARY OF THE ISSUES**

Third-party liens play an ever increasing and complex role in the resolution of mass actions. The issue is magnified here, where there are over one hundred thousand potential plaintiffs who may have liens from any number of government agencies or healthcare providers. The intersection of Medicare, Medicaid, the U.S. Department of Veterans Affairs (the "VA"), the Department of Defense ("DOD"), TRICARE, the individual branches of the military, and private healthcare providers, among others, makes the lien-resolution issues in this case significantly more

1

complicated. As such, Plaintiffs request that the Court appoint ARCHER as LRA to act on behalf of Plaintiffs to identify reimbursement obligations and create and implement a global resolution program to identify and resolve Plaintiffs' potential reimbursement obligations arising from this litigation.

## II. ARGUMENT

### A. Background

A lien allows a medical provider to recoup money it paid for treatment of the alleged injury by asserting a right to recovery from a plaintiff's ultimate recovery in a tort action. The lienholder may be the federal or a state government, a government agency, or a private insurance carrier.

In the past decade, Congress has strengthened the lien rights of government-provided insurance, most notably the rights of the Centers for Medicare & Medicaid Services ("CMS") pursuant to the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b), for Medicare Part A and Part B benefits received by a claimant. Amendments to the MSP Act make clear that CMS is not required to notify anyone of its right to reimbursement or to make a request before it can enforce its right to recover. Instead, providers of insurance, including self-insurance, must determine whether a claimant, "including an individual whose claim is unresolved," received Medicare benefits and, if so, report certain information about resolved claims to CMS to ensure Medicare's interest is protected. § 1395y(8); Medicare, Medicaid and

SCHIP Extension Act of 2007 ("MMSEA") § 111. And the provision is punitive: the Act allows double damages plus interest if Medicare's payments are not reimbursed properly.

Although they do not have a "super lien" like the federal government, states have lien-recovery rights via the provision of Medicaid to qualifying low-income individuals. *See* 42 U.S.C. § 1396(a), (k). Each state administers its own Medicaid program and likewise has its own lien recovery program. Other governmental providers, including the VA and TRICARE, have recovery rights that stem from the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653, the Federal Employee Compensation Act, 5 U.S.C. §§ 8101, 8131, or other statutory provisions. And, private health insurers' subrogation and lien rights are determined by contract.

### B. APPOINTMENT OF LIEN RESOLUTION ADMINISTRATOR

The traditional process for lien resolution is tedious and time consuming and would unnecessarily delay any potential future resolution of this litigation. An alternative method to resolve the lien issue is to reach global resolutions with the various agencies. Parties commonly engage an LRA well before settlement negotiations or other case resolution to help them understand the scope, extent, and anticipated amount of any obligations the claimants may have to reimburse third-party healthcare payers or providers for the cost of the claimants' injury-related care. Because of the complexities involved in this litigation, Plaintiffs believe all parties

would benefit from early appointment of an LRA to help establish a global lien resolution program. Any such program would be uniformly applied to all claimants who settle with any defendant in this litigation.

Furthermore, the agencies involved have expressed a desire to reach global resolutions of the potential lien issues here. CMS has informed Plaintiffs that it would prefer to create a single "global" lien resolution program to identify and resolve the claimants' federal Medicare Parts A and B reimbursement obligations arising from this litigation. Likewise, the VA, U.S. Army, U.S. Navy, U.S. Air Force, U.S. Marines, U.S. National Guard, and TRICARE have all informed Plaintiffs that they prefer a single global lien resolution program.

The large number of potential claimants here requires a universal resolution of repayment rights for each of the involved government entities, and ARCHER is well situated to work with each of those government entities to identify and secure the global procedures and associated values that will create the most favorable results and efficiencies for the parties (the "Lien Resolution Program").

ARCHER has deep subject matter experience in the development of global models for lien resolution and is ideally suited to serve as LRA for this litigation. In other contexts, ARCHER has successfully secured CMS's approval on global resolution models in a broad variety of national mass tort, multi-district litigation, and class action matters, including *Medtronic Infuse Bone Graft Litigations*, *Janssen*

*Risperdal Confidential Exposure Litigations*, *In re: Avandia Marketing, Sales Practices and Products Liability Litigation*, Case No. 07-md-1871, MDL 1871 (E.D. Pa.), *Pradaxa, Wright Hip, Granuflo, In re: Testosterone Replacement Therapy Products Liability Litigation*, Case No. 14-cv-1748, MDL 2545 (N.D. Ill.), *In re: Benicar (Olmesartan) Products Liability Litigation*, Case No. 15-md-2606, MDL 2606 (D.N.J.), and *In re: Stryker LFIT V40 Femoral Head Products Liability Litigation*, Case No. 17-md-2768, MDL 2768 (D. Ma.). A more detailed list of ARCHER's experience and credentials is attached hereto as Exhibit A.

ARCHER's global resolution programs provide significant benefits to claimants and defendants alike. For claimants, ARCHER can create a global resolution program that avoids the time delays associated with individual, claimant-by-claimant reimbursement. It also ensures that similarly situated claimants achieve parallel outcomes and a fair reimbursement amount for each compensable injury category. For defendants, ARCHER's global programs address the defendants' mandatory insurer reporting requirements under Section 111 of MMSEA. In most global resolution programs, ARCHER has obtained "exemptions" from MMSEA reporting for every defendant who settles claims. Here, ARCHER will coordinate such exemptions for all involved defendants.

To effectuate the creation and implementation of a global resolution program, Plaintiffs request that the Court enter an order

a. appointing ARCHER as the Lien Resolution Administrator on behalf of Plaintiffs in the above-captioned action;

b. granting ARCHER, as the Lien Resolution Administrator, the exclusive authority to develop a uniform process with CMS for the global identification and resolution of Medicare Part A and/or Part B fee-for-service reimbursement claims on behalf of all Plaintiffs who are or were Medicare beneficiaries;

c. granting ARCHER, as the Lien Resolution Administrator, the exclusive authority to develop a uniform process with other government entities (to include the VA, U.S. Army, the U.S. Navy, U.S. Air Force, U.S. Marines, U.S. National Guard, TRICARE, or any other government health insurance agency) for the global identification and resolution of reimbursement claims on behalf of all Plaintiffs who are or were beneficiaries of those particular government healthcare plans;

d. authorizes ARCHER to meet and confer with Defendants, at Defendants' request, to discuss the coordination of mandatory insurer reporting requirements under Section 111 of the MMSEA and any other government regulation or law;

e. granting ARCHER, as the Lien Resolution Administrator, the authority to establish such other processes, programs, procedures, and protocols as are

necessary or convenient, in ARCHER's reasonable discretion, to ensure that the Lien Resolution Program is utilized by all settling claimants in the above referenced actions, with which all attorneys who are representing such claimants must comply;

f. granting ARCHER, as the Lien Resolution Administrator, the authority to provide to and receive from such government entities lists of claimants and related information for the purpose of identifying whether that entity has or may have a reimbursement claim against each claimant for injury-related medical items and services paid on his or her behalf, in lieu of providing copies of individual HIPAA authorizations and information on a claimant-by-claimant basis;

g. granting ARCHER, as the Lien Resolution Administrator, the authority to receive and release protected health information and individually identifiable health information, to act as agent for the claimants for purposes of resolution of potential healthcare obligations in accordance with its duties and authority above, and to perform the other functions in accordance with its duties and authority above; and

h. granting ARCHER, as the Lien Resolution Administrator, authority to use all information related to claimants that the LRA creates, provides to, or receives from CMS, VA, U.S. Army, U.S. Navy, U.S. Air Force, U.S.

7

Marines, U.S. National Guard, TRICARE or any other governmental agency that is or may be protected under HIPAA and its amendments, or other applicable federal or state law, including all Protected Health Information, as defined in 45 C.F.R. §160.103.

If no settlements occur, the engagement and appointment of ARCHER will not create any binding obligations for any party. Nothing in this arrangement will expand or trigger any obligations where none otherwise exist. Furthermore, in the course of ARCHER's engagement, ARCHER will not contact any government-healthcare providers in any manner that could result in creating or expanding obligations.

LRA's appointment will enable it to work with CMS and the other government agencies to (1) develop the global repayment process and input values; (2) establish a conduit for submitting information from claimants' authorized representatives as may be required for purposes of verifying with CMS entitlement to Medicare Part A and Part B for the limited purpose of participating in the Lien Resolution Program; (3) establish a conduit for submitting information from claimants' authorized representatives as may be required for purposes of verifying entitlement to other government-healthcare insurance for the limited purpose of participating in the Lien Resolution Program; (4) provide reporting to the Court, the PEC, and any participating settling parties as may be required under the terms of any

settlement agreement; (5) create processes to account, and ensure payment, to the government entities consistent with the global repayment values associated with claimants who are or were entitled beneficiaries (for Medicare Part A or Part B or any other government benefit); and (6) such other duties as further described herein.

Plaintiffs further recognize that the scope of the litigation requires that all persons be assured that the processes and procedures creating the Lien Resolution Program is conducted in a uniform fashion, ensuring that terms are as efficient and as favorable to the parties as possible pursuant to the terms of any applicable settlement agreements. Thus, Plaintiffs further request that the Court enter an order

a. appointing Bryan Aylstock, one of the coordinating Co-Lead Counsel and member of the Executive Committee, and Karen Beyea-Schroeder, member of the Joint Armed Services Committee and Steering Committee, as representatives to participate with the LRA in any discussions with each of the government agencies (the "Representatives");

b. authorizing the Representatives to review and approve any decisions, including final global reimbursement values and operational procedures, being contemplated by the LRA and each of the government entities;

c. requiring the Representatives to report all material developments, and other information as the Representatives determine appropriate from time to time, to Plaintiffs' Lead Counsel and Executive Committee.

Given ARCHER's success in establishing global resolution programs for numerous other aggregate and class action settlements and the benefits those programs provide, Plaintiffs respectfully request that the Court issue an Order appointing ARCHER as the LRA.

Dated:  February 24, 2020

                                Respectfully submitted,

By:   /s/ *Shelley V. Huston*
       Shelley V. Hutson
       (Admitted Pro Hac Vice)
       Texas State Bar No. 00788878
       CLARK, LOVE & HUTSON, PLLC
       440 Louisiana St., Ste. 1700
       Houston, TX 77002
       Phone: (713) 757-1400
       Facsimile: (713) 759-1217
       Email: shutson@triallawfirm.com
       *Co-Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system on February 24, 2020, and served electronically on all counsel of record.

*/s/ Shelley V. Huston*
Shelley V. Huston
