# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, | Case No. 3:19md2885<br><br>Pensacola, Florida<br>February 21, 2020<br>9:45 a.m. |

## NINTH CASE MANAGEMENT CONFERENCE

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-11)

# **A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**    **BRYAN F. AYLSTOCK, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida   32502

**SHELLEY HUTSON, ESQUIRE**
Clark Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, Texas   77002

**CHRISTOPHER A. SEEGER, ESQUIRE**
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey   07660

**FOR THE DEFENDANT:**    **KIMBERLY BRANSCOME, ESQUIRE**
Kirkland & Ellis, LLP
333 South Hope Street, 29th Floor
Los Angeles, California   90071

**NICHOLAS F. WASDIN, ESQUIRE**
Kirkland & Ellis, LLP
300 N Lasalle
Chicago, Illinois   60654

**LARRY HILL, ESQUIRE**
Moore, Hill & Westmoreland, P.A.
350 W Cedar Street, Suite 100
Pensacola, Florida   32502

```
 1                        P R O C E E D I N G S
 2            JUDGE RODGERS:  Welcome.  Good morning.  And I
 3   apologize for the delay in getting started this morning.  We've
 4   been working with the parties on the agenda and actually got
 5   through everything, and I'm just going to touch on the
 6   highlights here.
 7            This is, of course, the 3M Combat Arms Earplug
 8   Products Liability Litigation, MDL 2885.  And this is our Ninth
 9   Case Management Conference.
10            I have Leadership from both sides here present in the
11   courtroom, and as noted, we met earlier and walked through the
12   agenda and ironed out a number of things.
13            Also, Judge Gary Jones is here on the bench with me,
14   and Judge Dave Herndon, special master, is seated in the jury
15   box, eminently qualified.
16            JUDGE HERNDON:  I'll have a verdict soon.
17            JUDGE RODGERS:  All right.  So the agenda, we, again,
18   just walked through that, and I heard from the parties on the
19   items that were raised in the agenda.
20            The first item related to a proposed schedule that the
21   parties have presented to the Court for consideration on the
22   first bellwether pool of cases.
23            And I've told the parties I appreciated their efforts,
24   with Judge Herndon's assistance, in developing this proposed
25   schedule, and it meets with my approval.  I plan to enter an
```

1  order adopting the schedule.

2  　　　　As you know, this schedule will kick off essentially
3  on Tuesday, the 25th, with the selection of the cases for the
4  first bellwether pool, and then it will end April 2021 as the
5  first of the bellwether trial pools begin.

6  　　　　And those 25 cases will -- or some number of those
7  cases will be placed into four different trial groups.  There
8  will be trial group A, B, C, and D, and those will be randomly
9  selected for trial.

10  　　　　I'm not going to go through the entire schedule.  I
11  don't see any need to, unless either side -- if there's
12  something you want to highlight.  I'm seeing both sides shaking
13  their head no that we don't need to go through that.  But that
14  order will be forthcoming, if not today, then on Monday
15  adopting that proposed schedule.

16  　　　　The schedule and the discussion of the schedule did
17  raise an issue or cause us to discuss an issue relative to the
18  Veterans Administration.  The Veterans Administration has
19  agreed to proceed on a priority basis with the Privacy Act
20  request for records for the 25 bellwether cases.  Beyond that,
21  we were very hopeful of a coordinated sort of organized and
22  priority process for our remaining cases in this litigation.

23  　　　　We actually visited with the VA and the DOJ in D.C. a
24  few weeks ago in an effort to, again, try to encourage the
25  agency to develop a process that would work for us and would

1    work for them.
2            I mean, obviously with the volume of plaintiffs that
3    we have in this litigation, it is a considerable effort on
4    their part to respond in the traditional manner to those
5    requests.  And obviously for us, if they respond in the
6    traditional manner, that is going to be a significant amount of
7    time for us here in this litigation.
8            Our efforts were not entirely successful, and those
9    discussions continue.  We just actually received word this
10   morning that what we were hoping was going to be put into place
11   as far as an efficient process doesn't appear like that's going
12   to happen, although Judge Herndon is going to give it another
13   try and maybe he'll be able to convince them of handling in a
14   fashion we have hoped for.
15           Otherwise, what we've discussed is proceeding with the
16   VA in request of smaller numbers, batches of requests, and to
17   do it on an incremental basis with the remaining cases.
18           And what I propose to the parties and where we are now
19   is to start with the 1397, which was the one percent that we've
20   been working from, the representative sample of the one
21   percent.  And as of now, that's how we're going to proceed.
22           Judge Herndon has a meeting with the parties and with
23   our DOJ representative who is actually the liaison for us with
24   the VA this afternoon and they are going to discuss this
25   further.

1        Otherwise, if we can't come up with an agreeable
2   method with the VA and convince them that it makes sense for
3   all concerned to do that given the magnitude of this litigation
4   in that all of the plaintiffs are -- or most of them are
5   veterans, then we are in the traditional, you know, the typical
6   response line at the VA for records to be produced in response
7   to requests.  And from what we were told this morning, there
8   are a million people ahead of this litigation pending requests.
9        So we're hoping that proceeding with something more
10  manageable than just submitting 100,000 requests to the VA, for
11  instance, something more manageable, hopefully they'll be able
12  to respond to those in a more timely manner, but there are no
13  promises.  And it's all on Judge Herndon.
14            **JUDGE HERNDON:**  Thank you very much, Your Honor.
15            **JUDGE RODGERS:**  We're rooting for you.
16        We're doing the best we can.  I mean, we're really at
17  the mercy of the agency.  Believe me, we've tried everything we
18  can that I can think of from a diplomatic standpoint to get
19  this done.  But as I said, there are a lot of people that have
20  requests that are pending and ahead of this litigation.  So,
21  more to come, more on that issue.
22        But I guess related to that, if the VA is agreeable to
23  that process where we submit batches of requests from the 1397
24  claimants, then it is my intent to pull from that group for a
25  second and third bellwether pool, so I'll just put that out

1  there as well.

2  On Tuesday, as noted, the 25 bellwether cases will be
3  selected and identified.  The parties will submit the -- when
4  the clock strikes 5:00 p.m. Central Time, they will
5  electronically submit their submissions to Judge Herndon, who
6  will then forward the list -- because they'll be submitting
7  them individually, obviously, and then that list will go out to
8  the parties and to the Court, and the Court will enter an order
9  identify those cases.

10  I want to thank all those who have been involved in
11  that process of preparing the bellwether selection forms for
12  the entire 174 cases, most notably Ms. Lanier and the early
13  vetting subcommittee.

14  Also, I believe Mr. Garrard -- I don't know if he's
15  here today, but I believe Mr. Garrard was involved in that as
16  well.

17  And Mr. Wasdin, you -- where is Mr. Wasdin -- you may
18  have been involved to maybe a little lesser extent but --

19  **MR. WASDIN:**  Only in drafting it, Your Honor.

20  **JUDGE RODGERS:**  Well, I thank you as well.  And it's
21  no small feat that these were 100 percent complete in advance
22  of the deadline, so thank you for that and congratulations for
23  getting that done.

24  All right.  We had an issue in dispute -- or a
25  disagreement, I guess, as far as the resolution of the

1    affirmative defenses.  A schedule has been put out by the Court
2    for the resolution of that defense, the government contractor
3    defense.
4             The Pretrial Order 26 which speaks to that indicated
5    that the parties would not be able to raise the issue in an
6    individual case, that the Court was going to be deciding this
7    issue on a global basis.
8             The Defendants had some concern about that.  In the
9    event, during the bellwether process, that issues of fact came
10   to light that they were not aware of that bear on the
11   government contractor defense, they wanted to be able to have
12   an opportunity to reraise that or to raise it a second time in
13   an individual case.
14            Again, obviously, this would be based on the Court
15   finding an issue of fact in the global context in the motions
16   to be filed the beginning of April.
17            What I've clarified as far as my order and the intent
18   of the order was that, as far as the factual record that exists
19   today, that there will be no opportunity for another bite at
20   the apple based on this record.  But to the extent something
21   does come to light that the Defendants or the Plaintiffs were
22   not aware of that bears on that question, that I would
23   entertain a motion for leave to raise it again in a subsequent
24   summary judgment motion in an individual case.
25            It may be that I allow it after I consider the

1   context.  It may also be that I decide that it's just an issue
2   that can be resolved at trial on a Motion for Judgment as a
3   Matter of Law, if it's a defendant issue, or it may just be
4   left to the resolution of the jury.  But as a matter of law, it
5   would either be a summary judgment or at the close of the
6   Plaintiffs' case if it's a Defendant issue.
7           And I'm going to wait and see if something does come
8   to light, and then I will entertain a motion for leave and
9   consider that and decide if the issue can be raised again.
10          And I did stress to the Defense that there should be
11  no targeted discovery or focused effort on discovering
12  additional information on the affirmative defense in the
13  individual bellwether cases.
14          Now, that doesn't mean that, to the extent the DoD
15  wasn't able to produce a particular witness by the deadline --
16  if that witness is produced after April 1st and that witness
17  subsequently has information relative to the affirmative
18  defense, then that's something the Defendants can raise with me
19  in an individual case.
20          I hope that makes sense.  But my intent at the time of
21  issuing Pretrial Order 26 was that there would be no second
22  bite at the apple on the record that exists at the close of
23  March.
24          There are a number of outstanding, percolating
25  discovery issues, and we briefly and rather loosely discussed a

1  couple of them, documents as well as a witness issue.

2           Judge Jones is going to meet with the parties next
3  week and discuss these issues and hopefully get them resolved
4  as soon as possible.  The parties will present something to him
5  in writing identifying those issues in an agenda form and he
6  will, again, meet with them.

7           I have scheduled March 16th for a biweekly leadership
8  call, if necessary.  And I told the parties that we would be in
9  touch with them setting the time for that.  I can't do that
10 right at this moment.

11          Our case management conferences are scheduled through
12 May, as you know.  The next conference is March 27th, April is
13 April 24th, and then in May it's May 29th.  And Ms. Jacobs will
14 be reaching out and scheduling the conferences for the
15 remainder of the year.  Sometime probably the first of the week
16 she'll reach out to you all on that issue.

17          Mr. Aylstock, is there anything that I have overlooked
18 or left out from what you recall of our discussions this
19 morning or that you otherwise feel needs to be addressed here
20 this morning?

21          **MR. AYLSTOCK:**  No, Your Honor.  You've covered it.
22          **JUDGE RODGERS:**  Ms. Branscome, from you all?
23          **MS. BRANSCOME:**  No, nothing from us, Your Honor.
24          **JUDGE RODGERS:**  All right.  Short and suite, I like
25 it.

1          Well, thank you all very much.  And I apologize that
2    it was a little crowded in here with all of the interested
3    individuals.  All of you are always welcome, I'm just sorry
4    it's a little crowded.
5          But I will tell you we do continue to expect to be in
6    our courthouse across the street May 1st.  So for the May 29th
7    conference, hopefully there will be a lot more elbow room for
8    everyone on the fifth floor.  I am looking forward to that very
9    much.
10         If nothing else, you all have a very nice weekend,
11   safe travels if you're traveling.
12              *(Proceedings concluded at 10:00 a.m.)*
13                       --------------------

14   *I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.  Any*
15   *redaction of personal data identifiers pursuant to the Judicial
     Conference Policy on Privacy are noted within the transcript.*

17
     *s/Donna L. Boland*                                    *2-25-2020*
18   *Donna L. Boland, RPR, FCRR*                           *Date*
     *Official Court Reporter*