**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

This Document Relates to All Cases
_____/

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

**ORDER**

On March 4, 2020, the Court conducted a telephone hearing at the request of the parties to address a panoply of unresolved discovery disputes concerning the production of documents, supplementation of interrogatories, and an impending deposition. For the reasons discussed on the record at the telephonic hearing and as summarized below the parties' discovery disputes are resolved as follows.

### I. PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

On June 19, 2019, Plaintiffs served Defendants with their First Request for the Production of Documents under Federal Rule of Civil Procedure 34. This Order concerns four of Plaintiffs' requests.

**Request No. 33**

Plaintiffs demanded in Request No. 33, "All sworn statements, affidavits, responses to requests for admission or other discovery requests,

pleadings, interrogatory responses, and expert statements of any employee or agent of any defendant, or of any defendant itself, relating to the 3M Earplugs or any Related Proceedings." Plaintiffs' objective was to obtain the sworn statements of Defendants' employees or agents in two prior cases—*3M Co. v. Moldex-Metric, Inc.,* No. 12-611 (D. Minn.) ("*Moldex I*"), and *Moldex-Metric, Inc. v. 3M Innovative Properties Co.,* No. 14-1821 (D. Minn.) ("*Moldex II*"). Defendants advised the Court that they have obtained and have started to review Defendants' written discovery responses in those cases to identify any statements that would be responsive to Request No. 33. Moreover, due to the expansive nature of the litigation in *Moldex I* and *Moldex II*, Defendants directed Plaintiffs to the publicly available CM/ECF dockets for *Moldex I* and *Moldex II* and asked them to identify any court filings Plaintiffs wanted Defendants to produce. Plaintiffs claim they were hindered in their efforts to identify relevant court filings because anything "substantive" is redacted or under seal.

As directed by the Court, Defendants must complete their review of the written discovery responses in *Moldex I* and *Moldex II* and produce any responsive documents to Plaintiffs **on or before March 11, 2020**. Plaintiffs are directed to review the publicly available CM/ECF dockets for *Moldex I* and *Moldex II*, to the extent practicable, and identify for Defendants those

court filings they believe are relevant to the claims and defenses in this case. Upon receipt of Plaintiffs' identified filings, Defendants must obtain those documents and produce them to Plaintiffs as soon as practicable. The parties should attempt to resolve any concerns as to confidentiality that may arise from this production and in doing so, for the reasons explained at the hearing, should consult with attorney Adam Wolfson at Quinn Emanuel, who represents several Plaintiffs in this MDL and who represented Moldex in the prior litigation.

**Request No. 37**

In Request No. 37, Plaintiffs asked Defendants to produce "[a]ll minutes, presentation materials, handouts, background materials, board books, and other documents relating to any meeting of the managers, members, shareholders and/or Board of Directors of any Defendant addressing or concerning the 3M Earplugs or the Related Proceedings." Defendants replied that they did not have any responsive documents that were not privileged.  Plaintiffs now challenge the diligence of Defendants' inquiry in response to Request No. 37 because Plaintiffs obtained a presentation made to Defendant Aearo's Board of Directors in December 2007 regarding the CAEv2 from the personal files of Defendants' former employee.

Defendants represented that any responsive documents from Defendant 3M's board of directors, which they have obtained are privileged and despite reasonable diligence they have been unable to locate a discrete collection of materials from Defendant Aearo's Board of Directors. However, upon learning about the existence of the December 2007 presentation, Defendants agreed to conduct an additional review for any available materials.

Defendants must complete their additional review for documents responsive to Request No. 37 and produce any relevant documents to Plaintiffs **on or before March 11, 2020**. Defendants must notify Plaintiffs if they do not locate any responsive documents.

**Request No. 18**

In Request No. 18, Plaintiffs sought, "All raw data, test results, hazard assessments, Noise Reduction Ratings, testing protocols, and other documents pertaining to or constituting the work product of the EarCAL Laboratory regarding the 3M Earplugs or any of its predecessor(s)." Defendants produced relevant laboratory notebooks from their employees or former employees, which they obtained by (1) asking the employees and former employees directly, and (2) reviewing depositories Defendants believed included this material. Defendants state they are in the process of

reviewing one additional notebook, authored by Robert Falco, for production but otherwise are not aware of any additional materials responsive to Request No. 18.  Defendants must complete their review of Mr. Falco's laboratory notebook for information relevant to the CAEv2 and produce any responsive material to Plaintiffs **on or before March 11, 2020**.

**Request Nos. 10 and 27**

Lastly, in Request Nos. 10 and 27, respectively, Plaintiffs demanded: (1) "[a]ll documents relating to actual or contemplated training, instructions, or draft instructions for the use of the 3M Earplugs, including all training and instructions provided to users of the 3M Earplugs, all training and instructions used or created in the course of testing the 3M Earplugs, and all correspondence regarding proposed or executed edits, additions, deletions, or other modifications to any such training or instructions"; and (2) "[a]ll documents concerning the marketing of the 3M Earplugs, including any demonstration videos, product sheets, sales training materials, sales and advertising materials, and marketing plans or sales strategies."

Plaintiffs represent they learned through discovery about training and marketing materials that Defendants have failed to produce in response to Request Nos. 10 and 27.  For example, Plaintiffs referred to a promotions program known as "COBRA" and a direct-to-soldier marketing initiative by

5

Defendants. Defendants state they relied upon the TAR process to locate responsive materials but they would investigate further whether additional relevant materials exist. Accordingly, Defendants must complete their review and produce any relevant documents to Plaintiffs before the parties' leadership call **on March 16, 2020**, or be prepared to report on the status of their investigation during the **March 16, 2020**, leadership call.

## II. PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION

In Plaintiffs' Second Request for the Production of Documents, they requested, *inter alia*, that Defendants produce "[a]ll documents concerning the relationship between the degree of attenuation provided by hearing protection devices, and the extent of attenuation in reasonably anticipated use, including Your policies concerning any quality assurance or other procedures for ensuring the accuracy of attenuation claims in the use applications for which the product was designed." Plaintiffs represent that, through discovery, they learned about an issue pertaining to quality assurance at Defendant Aearo's manufacturing facility in Mexico.

Defendants agreed to investigate the matter and have obtained 800 documents from the facility that they are now reviewing. Defendants also advised that they are looking into the existence and accessibility of additional caches of potentially pertinent documents. Defendants must

complete their document review and investigation or advise Plaintiffs as to the status of the review and investigation, **on or before March 13, 2020**. If Defendants believe in good faith that any additional inquiry is necessary, they must advise Plaintiffs in writing.

### III.  ADDITIONAL CUSTODIAN FILE

Plaintiffs request the Court to direct Defendants to collect, review and produce the custodial file of April Noblitt, an ex-employee of Aearo.  Ms. Noblitt was employed by Aearo as a Safety Product Line Director and Marketing Manager from 1998 through May 2004.  Plaintiffs say that Ms. Noblitt was responsible for creating the wording for the US consumer packaging of the Combat Arms earplugs and marketed the consumer version of the CAEv2, known as the Range E-A-R- Plugs.

Defendants resist production of Ms. Noblitt's custodial file because, they contend, she is duplicative of custodians with "overlapping expertise," namely Peter Murphy, who managed aspects of the AO Safety consumer products.  Defendants, thus far, have produced 5,400 emails and attachments sent to or received by Ms. Noblitt.

Mr. Murphy, however, could not confirm whether he was involved in drafting the instructions for the consumer version of the CAEv2.  The record demonstrates that Ms. Noblitt provided necessary corrections and

7

comments on the labeling and packaging of Defendants' consumer earplugs. In view of Ms. Noblitt's distinct position and her work relating to the consumer version of the CAEv2, Plaintiffs' request is **GRANTED**. Defendants must collect, review and produce responsive documents in Ms. Noblitt's custodial file and produce the documents to Plaintiffs **on or before March 27, 2020**.

## IV.  PLAINTIFFS' INTERROGATORIES

On October 11, 2019, Defendants served their response and objections to Plaintiffs' First Set of Interrogatories. Amongst Defendants' answers, they identified "to date": (1) who may have relevant information concerning the CAEv2 (and any like-design dual-ended earplugs sold by Defendants); or (2) who was employed by the U.S. Government and purchased, distributed, received, tested, recommended, or approved 3M Earplugs. On January 21, 2020, Plaintiffs requested that Defendants supplement the above-mentioned answers "[t]o the extent Defendants have identified any other individuals responsive to either Interrogatory since October 11, 2019." Defendants resisted, and Plaintiffs now request the Court to compel supplementation under Federal Rule of Civil Procedure 26(e).

Rule 26(e)(1)(A) requires a party who has responded to an interrogatory to "supplement or correct its disclosure or response[] … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process in writing[.]" Fed. R. Civ. P. 26(e)(1)(A).  Defendants contend that supplementation in accordance with Rule 26(e) is unnecessary because any additional individuals responsive to Interrogatories No. 1 and 2 have "otherwise been made known to [Plaintiffs] during the discovery process[.]"

The undersigned agrees.  Rule 26(e) requires a responding party to supplement interrogatory answers only when the responding party has learned information outside of the discovery process or the respondent's position has changed.  Plaintiffs fail to present either situation here. Instead, Plaintiffs point to information they learned through discovery as the reason for supplementation. Therefore, Plaintiffs' request to compel supplementation of Interrogatories No. 1 and 2, is **DENIED**.  To the extent Plaintiffs wish to challenge the sufficiency of Defendants' other responses to their interrogatories, and request the Court to enter an order requiring

Defendants to supplement their other interrogatory responses they must file a motion to compel under Federal Rule of Civil Procedure 37.

### V.  BELLWETHER PLAINTIFFS' FILES

On February 26, 2020, Defendants requested Plaintiffs produce the medical records and personnel files "in the care, custody[,] or control of [P]laintiffs, [P]laintiffs' leadership counsel, or other [P]laintiffs' counsel" for the 25 bellwether Plaintiffs.  Two days later, Defendants raised the concern with Plaintiffs that Plaintiffs' leadership counsel had access to pertinent medical records regarding the 25 bellwether Plaintiffs during the selection process that were not disclosed to Defendants until after the selection process was completed.

Because the medical records and personnel files of the 25 bellwether Plaintiffs were not obtained using a non-party subpoena, FOIA request, or *Touhy*[1] request, Plaintiffs did not violate Pretrial Order No. 10, Section VI. ECF No. 443 at 15.  Plaintiffs, nevertheless, have agreed to contact the individual counsel for the bellwether Plaintiffs and produce the requested documents.  Accordingly, Plaintiffs must obtain the medical records and personnel files for the 25 bellwether Plaintiffs and produce them to Defendants **on or before March 18, 2020**.

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

As to Defendants' concern whether the documents were made available to Plaintiffs' leadership counsel during the bellwether selection and before Defendants had access to the documents, Bryan Aylstock, on behalf of Plaintiffs' leadership counsel, represented to the Court that Plaintiffs' leadership counsel only relied upon documents and information equally available to the parties in MDL Centrality.  Mr. Aylstock further stated that leadership counsel complied with the Court's earlier directive that they not confer with individual counsel for any plaintiff regarding the selection process.  Nonetheless, to confirm this representation, Mr. Aylstock is directed to confirm in writing to Defendants' counsel on or before March 11, 2020 that Plaintiffs' leadership counsel did not consult with Plaintiffs or their individual counsel to obtain information for the bellwether selection process other than information that was available in MDL Centrality.

## VI.  DEPOSITION OF PLAINTIFF APRIL HANSBERRY

Lastly, Defendants intend to depose Plaintiff April Hansberry regarding the military training for the use of the CAEv2.  Plaintiffs do not object to this deposition.  Ms. Hansberry, however, is still a servicemember for the United States Military, and Plaintiffs say that as a result she may be subject to relevant *Touhy* regulations.  Defendants have not submitted a

*Touhy* request to depose Ms. Hansberry. Accordingly, Defendants must contact Major Evans as soon as possible to resolve any potential *Touhy* or administrative issues. After resolution of whether Defendants must proceed through a *Touhy* request, the parties are directed to work together to schedule Ms. Hansberry's deposition on the earliest available date.

**DONE AND ORDERED** this 5th day of March 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge