**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                          Case No. 3:19-md-2885

                                                     Judge M. Casey Rodgers
                                                     Magistrate Judge Gary R. Jones
This Document Relates to All Cases
_____/

# ORDER

Pending before the Court is a discovery dispute between the parties

pertaining to Defendants' claims of attorney-client privilege and work

product protection in response to Plaintiffs' discovery efforts.  Fed. R. Civ.

P. 26(b).  The Court construes the parties' dispute and request for court

intervention as Plaintiffs' motion to compel production.  In accordance with

the undersigned's January 16, 2020, scheduling order, ECF No. 918, the

parties have submitted letter briefs and 200 sample documents identified

on Defendants' privilege logs for *in camera* review.[1]  The Court has

conducted an *in camera* inspection of 84 exemplar documents that still

present a live controversy over Defendants' privilege claims.

_____
[1] To be clear, the Court uses the term "document" here to refer to any paper or electronic file that, if not privileged, is subject to production under Federal Rules of Civil Procedure 26 and 34.  The term "document" also refers to a single entry in Defendants' privilege log.

This matter, therefore, is ripe for consideration.  For the reasons explained below, Plaintiffs' motion to compel is due to be **GRANTED IN PART and DENIED IN PART**.

## I.  BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2"). ECF No. 704.  Discovery is ongoing.

On October 30 and November 27, 2019, Defendants provided Plaintiffs with their first and second cumulative privilege logs pursuant to Pretrial Order No. 9 (ECF No. 442).  Plaintiffs, thereafter, objected to the identification and inclusion of documents on Defendants' privilege logs. Following the parties' meet and confers, they raised the instant discovery matter with the Court at the January 14, 2020, case management conference.  ECF No. 906.  The undersigned conducted a telephone conference on January 16, 2020, at which—in an effort to resolve any remaining privilege disputes—the undersigned directed Plaintiffs and Defendants to each select 100 exemplar documents from Defendants' privilege logs (200 documents total) as a sample to address Defendants' privilege claims and to meet and confer regarding Plaintiffs' objections

applicable to those documents.  ECF No. 918.  The undersigned held that if the parties continued to disagree as to whether any of the exemplar documents were privileged, they must file briefs in support of their respective positions for the Court to resolve Plaintiffs' objection(s).  *Id.*

Consistent with the Court's scheduling order and protocol, the parties exchanged lists of 100 exemplar entries from Defendants' privilege logs. The parties held weekly meet and confers regarding Plaintiffs' exemplar documents because Plaintiffs did not challenge the privilege claims as to Defendants' 100 exemplar documents.  Defendants withdrew their privilege claims for 15 of Plaintiffs' 100 exemplar documents, and Plaintiffs' withdrew their objection to one document (Entry No. 329).  Eighty-four (84) exemplar documents, therefore, remain in contention.

The parties submitted letter briefs to the Court on February 21, 2020, along with copies of the 200 exemplar documents for *in camera* inspection. The parties principally address Defendants' privilege claims as to the remaining 84 exemplar documents and Plaintiffs' objections thereto. Defendants, in support of their filings, offer sworn declarations from 3M Senior Counsel Eric Rucker, 3M Litigation Specialist Cheryl Robischon, 3M Assistant General Counsel Carol Peterson, and Defendants' counsel in this litigation, Mark Nomellini.  Plaintiffs also challenge the adequacy of

Defendants' privilege logs, namely (1) inaccuracies in the identification of certain documents; (2) Defendants' failure to state the number of pages for each entry; and (3) the grouping of multiple email communications in a single thread or "string" as one entry. On February 24, 2020, Defendants responded to Plaintiffs' February 21, 2020, letter brief.

## II. DISCUSSION

As the undersigned has recognized, "claims of attorney-client privilege and work-product protection should be fairly straightforward in application." *In re Abilify (Aripipazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2017 WL 6757558, at *2 (N.D. Fla. Dec. 29, 2017) ("*Abilify*"). Nevertheless, this case is no different from other complex matters in federal court, where "disputes arise frequently concerning whether documents are privileged" and "require the parties to incur great expense and expend extensive time reviewing, identifying and litigating claims of privilege." *Id.*

Here, Plaintiffs raise a threshold challenge to the adequacy of Defendants' privilege logs. The Court will address this matter first. Plaintiffs then object to categories of exemplar documents that Defendants claim are privileged. These objections raise legal questions—which the

Court will resolve—regarding the standards for attorney-client privilege and work product protection, as well as the scope of these privileges.

Finally, although the party invoking the privilege bears the burden of proving its existence, *In re Grandy Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987), "[t]he inquiry into whether documents are subject to a privilege is a highly fact-specific one," *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). In view of the parties' extensive briefing and the significant evidence put forward, the Court concludes that *in camera* inspection of Plaintiffs' 84 exemplar documents is an appropriate method of resolving Plaintiffs' objections to Defendants' privilege claims. The Court has completed its *in camera* review, which it will discuss below.

## A.    Adequacy of Defendants' Privilege Logs

Plaintiffs ask this Court to compel Defendants to revise their privilege logs to provide more complete and accurate information. Federal Rule of Civil Procedure 26 governs this dispute:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  Pretrial Order No. 9 also requires the parties to include in their privilege logs: (1) "Custodial Source, To, From, Carbon Copy, Date, reason for privilege or immunity and a description sufficient to meet the requirement of Rule 26"; (2) "the production date of the document, or the production wave associated with the document"; and (3) identification of "[i]ndividuals who are In-House Counsel or Outside Counsel of Record," including "the name of the law firm or entity employing such Counsel."  ECF No. 442 at 16.

Plaintiffs claim that Defendants' failure to state the length of each document in a privilege entry and separate email threads or "strings" into discrete privilege entries "make[s] it extraordinarily difficult … to adequately assess Defendants' privilege claims based solely on the log."[2]  The Court appreciates the principle underlying the argument that additional information about withheld documents would allow the parties to resolve their privilege disputes without court intervention.  Defendants, however, have complied with the mandate of Rule 26(b)(5) and the terms of the

---

[2] Plaintiffs also challenge supposed inaccuracies in Defendants' privilege logs, but Defendants represent in their February 24, 2020, reply letter brief that some of these inaccuracies were corrected in an updated privilege log and others are irrelevant to determining whether a document is, in fact, privileged.  Defendants should ensure their privilege logs provide accurate information for the categories required under Rule 26 and Pretrial Order No. 9.

stipulated privilege order set forth in Pretrial Order No. 9 (ECF No. 442). Indeed, in the Court's view, Defendants' privilege logs are more comprehensive than those typically produced in civil litigation and ratified by federal courts. *Abilify*, 2017 WL 6757558, at *3.

Plaintiffs do not provide any legal authority or compelling basis for the Court to compel Defendants to amend their privilege logs to include the number of pages for each entry, particularly where the required details of the parties' privilege logs were set forth early in this litigation. The Court further will not require Defendants to itemize each email in a thread for the additional reason that it poses a risk of revealing privileged information. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 642 (D. Nev. 2013); *Muro v. Target Corp.*, 250 F.R.D. 350, 362–63 (N.D. Ill. 2007).

Finally, Defendants were not required to identify in their privilege logs the anticipated litigation to substantiate a work product protection claim. *Abilify*, 2017 WL 6757558, at **4–5. Plaintiffs should be able to surmise the subject of anticipated litigation from the date of the entry and the limited litigation concerning Defendants relevant to this action. To the extent Plaintiffs need this information for particular privilege log entries, Defendants have stated they will provide it upon request.

The Court, therefore, concludes that Defendants' privilege logs are adequate under Rule 26 and Pretrial Order No. 5 to the extent challenged in Plaintiffs' letter brief.

## B.  Attorney-Client Privilege

The purpose of the attorney-client privilege is to encourage the client to communicate freely with the attorney.  *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990).  The parties agree that the vital inquiry for determining whether the attorney-client privilege applies to the communications at issue in this litigation "'is whether counsel was participating in the communication primarily for the purpose of rendering legal advice or assistance.'"  *Abilify*, 2017 WL 6757558, at *9 (quoting *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 798 (E.D. La. Aug. 14, 2007)); *see also Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977) ("Only if the attorney is "acting as a lawyer" giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked.").

### i)  State law governs the scope of the attorney-client privilege, but a "heightened level of scrutiny" to corporate communications is inapplicable.

Where the parties first diverge is on the issue of whether the Court must apply a "heightened level of scrutiny" to Defendants' privilege claims

for communications with their in-house counsel, which is a principle of Florida, rather than federal, law. *See S. Bell. Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994) ("[T]o minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context will be subjected to a heightened level of scrutiny."). Subsumed in this dispute is the question of whether the attorney-client privilege available under Florida Statutes § 90.502, federal common law, or another state's law governs here.[3]

---

[3] There is typically no material distinction between the attorney-client privilege available under state law and federal common law. *Compare, e.g., Noriega*, 917 F.2d at 1550 (holding that for a claimant to establish the attorney-client privilege under federal common law, the claimant must demonstrate: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."); *with Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1318 (M.D. Fla. 2017) ("In Florida, the attorney-client privilege is codified in Fla. Stat. § 90.502. Under the statute, a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client. The statute defines a 'lawyer' as 'a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.' A 'client' is defined as 'any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer.' Finally, a 'communication between lawyer and client is confidential if it is not intended to be disclosed to third persons other than: 1. Those to whom disclosure is in furtherance of the rendition of legal

In federal court, common law governs the application of the attorney-client privilege.  Fed. R. Evid. 501.  "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  *Id.*  In other words, the federal common law of attorney-client privilege applies to claims (or defenses) arising under federal law, *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005), while a state's evidentiary privilege applies only in diversity cases, *Dunn v. Wash. Cty. Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005).  *See also Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 811 (S.D. Cal. 1995) ("It is clear that State law governs a claim of privilege in a pure diversity case, and that in pure federal question cases the federal common law of privilege governs.").  Rule 501 "reflect[s] an important Congressional judgment about where to strike the balance between competing state and federal interests in this sensitive arena."  *Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1122 (N.D. Cal. 1999).

This case presents a unique fact pattern for the application of Rule 501.  This is principally a products liability action consolidated in federal court as a multidistrict litigation proceeding based on diversity subject-

---

services to the client. 2. Those reasonably necessary for the transmission of the communication.'" (alterations adopted and internal citations omitted)).

matter jurisdiction (save for those cases filed by Minnesota plaintiffs)[4]. For numerous reasons, Defendants' federal government contractor defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1998), has been at the forefront of the litigation thus far. This defense is a product of federal common law. *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989). The disputes over Defendants' privilege claims, however, will bear on the merits of Plaintiffs' state-law claims as well as the federal government contractor defense.

The Court is not persuaded that a "heightened level of scrutiny" should be applied, as Plaintiffs suggest. Although state law "supplies the rule of decision" for Plaintiffs' claims, Plaintiffs fail to demonstrate that *Florida's* attorney-client privilege governs Defendants' communications. As Judge Herndon concluded when presented with a similar choice-of-law dispute in a multidistrict litigation proceeding:

> Courts that have analyzed conflicting privilege laws … tend to favor application of the most significant relationship test found in section 139 of the Second Restatement or of a similar test favoring application of the law of the state with the most significant relationship with the privileged communication—such as the law of the state where the communication is centered.

---

[4] *See* ECF No. 927 (denying the 341 motions to remand in cases originally filed in Minnesota state courts because the Court has subject-matter jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1)).

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, No. 3:09-md-2100-DRH-PMF, 2011 WL 1375011, at *8 (S.D. Ill. Apr. 12, 2011). That is, "where the communications at issue are between individuals foreign to the forum, whose relationship is centered outside of the forum, and whose communications regard subject matter not centered in the forum, the forum's privilege law is not controlling," and, instead, the Court must apply "the law of the state with the most significant relationship to the communication." *Id.* at *15. Plaintiffs do not contest Defendants' assertion that Florida has no significant relationship to the privileged communications.

Moreover, the "heightened level of scrutiny" discussed by the Florida Supreme Court is part and parcel of any proper attorney-client privilege analysis, where, as here, corporate communications are involvled. For example, the Florida Supreme Court directed lower courts to consider whether "the superior made the request of the employee as part of the corporation's effort to secure legal advice or services" and whether the "content of the communication relates to the legal services being rendered[.]" *Deason*, 632 So. 2d at 1383. At bottom, these factors are part of determining "whether counsel was participating in the communication primarily for the purpose of rendering legal advice or assistance,'" *Abilify*,

2017 WL 6757558, at *9, and (whether or not Florida law controlled here) ultimately bear some weight in the Court's application of the primary purpose standard.

### ii) Corporate communications with multiple recipients, whether or not they include in-house counsel, may be subject to the attorney-client privilege.

In the same vein, Plaintiffs' other challenges to the scope of attorney-client privilege in the corporate setting are without merit.  Plaintiff argues that communications "where neither the sender/author nor recipient is an attorney" are not privileged—or are highly suspect—because they "are more likely to be business communications than communications that were made for the primary purpose of giving or receiving legal advice." Corporate employees within complex organizations, such as Defendants, may discuss legal advice sought and given without losing the privilege, even when an attorney is not an author or recipient of the communication. *Abilify*, 2017 WL 6757558, at *5.  "The same protections afforded to communications between counsel and client extend to communications between corporate employees who are working together to compile facts for in-house counsel to use in rendering legal advice to the company."  *Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 34 (D.D.C. 2016).

What's more, the fact that a corporate communication is addressed to numerous employees and only "carbon copies" in-house counsel is not dispositive of whether the attorney-client privilege applies. The number of lawyers or non-lawyers to whom a communication is addressed is, in most circumstances, immaterial. "The key question as to whether emails distributed among a business team are subject to the attorney-client privilege is dependent upon whether the attorney is providing legal advice even though the attorney may be a copyee of an email that also contains business advice." *Abilify*, 2017 WL 6757558, at *7. This question mirrors the primary purpose standard for attorney-client privilege.

      **iii)**     **The common interest doctrine, an exception to the waiver of attorney-client privilege, requires a party to show a common legal interest.**

It is beyond dispute that the attorney-client privilege can be waived through voluntary divulgement of privileged materials. *See, e.g.*, *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013) ("The client, who is the holder of the privilege, also may waive the privilege voluntarily. For example, waiver can be found by voluntary disclosure, as disclosure is inconsistent with the confidentiality requirement of purportedly privileged communications." (internal citations omitted)).

A party, however, has not waived attorney-client privilege when disclosure was in furtherance of a common interest. *See Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 855 (D. Minn. 2012) ("The 'common interest' doctrine, by contrast, is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party, and it applies if the privilege-holder discloses privileged documents to a third party with which it shared a common interest." (internal citations omitted)); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009) ("The common interest privilege protects communications between individuals and entities and counsel for another person or company when the communications are part of an on-going and joint effort to set up a common defense strategy."). This exception is well-established but narrowly tailored because the party attempting to rely on the common interest exception must demonstrate a common *legal*, rather than *commercial*, interest. *Shukh*, 872 F. Supp. 2d at 855.

## C. Work Product Protection

Similar to the attorney-client privilege, the purpose of the work product protection "is to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Drummond*

*Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)); *see also In Re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977) ("The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party."). The work product doctrine, nevertheless, "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).

Federal Rule of Civil Procedure 26(b)(3)(A) prohibits a party from discovering, with some exception, "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). In determining whether a document was created "in anticipation for litigation," Plaintiffs advance the argument that the Court should employ a "primary motivating purpose" test. "This test asks whether the primary consideration in the creation of the document was anticipated litigation." *U.S. el rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1325 (N.D. Ga. 2015). Defendants assert a potentially broader "because of" test, which asks, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of*

the prospect of litigation." *United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original).

This is an open question in the Eleventh Circuit. *See Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1234 (S.D. Fla. 2018) (collecting cases). This Court has utilized the "because of" test in other litigation (along with other federal courts in this circuit), and Plaintiffs have not demonstrated a compelling reason to depart from this standard. *See, e.g.*, *Hancock Bank v. Toole*, No. 5:13-cv-44-RS-GRJ, 2013 WL 12106939, at *2 (N.D. Fla. Dec. 3, 2013); *Regions Fin. Corp. v. United States*, No. 2:06-cv-895-RDP, 2008 WL 2139008, at *5 (N.D. Ala. May 8, 2008) ("The court concludes that the Eleventh Circuit would align itself with the majority of the other courts of appeal and adopt the 'because of litigation' test."). Accordingly, the key determinations in assessing the applicability of the work product privilege are when and why the document or thing was created. *See In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998) ("The testing question for the work-product privilege ... is whether, in light of the nature of document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." (emphasis added)).

Plaintiffs further argue that the work product protection should be limited to litigation "closely related" to this action. This Court has previously rejected such a test because it is not in keeping with the language of the rule. *Abilify*, 2017 WL 6757558, at *4. By its express terms, work product protection applies to any litigation. *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 26 (1983) ("[T]he literal language of [Rule 26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." (emphasis in original)).

For the same reason, most federal courts have held work product protection survives the termination of litigation. *See, e.g.*, *Fled v. Fireman's Fun Ins. Co.*, 991 F. Supp. 2d 242, 251 n.5 (D.D.C. 2013) ("FFIC appears to argue in a footnote that because the underlying litigation has concluded, the work-product privilege no longer applies to documents generated by that litigation. FFIC cites no authority for this argument. In fact, attorney work-product immunity survives beyond the particular litigation giving rise to it."); *Lopes v. Viera*, 719 F. Supp. 2d 1199, 1201 (E.D. Cal. 2010) ("The work-product protection continues even after the litigation is completed."); *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 692 (M.D. Fla. 2005) ("[T]he Court finds that the above language from *Grolier* provides a strong basis to conclude that Rule 26(b)(3) applies to

subsequent litigation.").  The Court finds these cases instructive and will not read a temporal limitation into Rule 26(b)(3).

### D.  *In Camera* Review

The Court has examined *in camera* Plaintiffs' 84 exemplar documents from Defendants' privilege logs.  In view of the principles discussed above, the Court concludes as follows.

Defendants' claims of attorney-client privilege are **SUSTAINED** as to Entry Nos. 15, 174, 616, 671, 796, 797, 809, 825, 826, 947, 999, 1017, 1232, 1449, 1571, 1995, 2632, 2865, 2894, 2920, 2941, 2965, 3009, 3011, 3012, 3015, 3131, 3226, 3257, 3915, 3918, 4124, 4496, 4553, 4743, 4952, 7734, 8105, 8106, 8107, 8111, 8191, 8194, 8195, 8256, and 9938 because the primary purpose of these communications was to obtain or render legal advice or assistance to Defendants.  This standard includes those communications where Defendants' legal staff are attempting to obtain documents for use by Defendants' counsel.  *See Abilify*, 2017 WL 6757558, at *7 (holding the attorney-client privilege "applies … to information gathered by non-attorneys for transmission to an attorney for the attorney to provide legal advice on an issue or to provide legal advice regarding the document or information gathered by the non-attorney employee of the client").

Defendants' claims of attorney-client privilege are **SUSTAINED** as to Entry Nos. 2079, 2713, and 2849.  Although "[d]rafts, standing alone, are not 'communications' and hence normally are not within the attorney-client privilege … a draft is protected under the attorney-client privilege if the draft itself contains protected confidential communications from the client or the attorney."  *Loftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009).  So too here, where these documents include proposed edits by Defendants' counsel—in their role as attorneys—for Defendants' review.

Defendants' claims of work product protection are **SUSTAINED** as to Entry Nos. 2632, 3257, 3680, 3707, 3708, 3709, 3915, 3918, 4571, 4573, 4681, 4684, 7746, 9936, and 9937.  Defendants have demonstrated these documents were created *because of* the prospect of litigation.  Although the anticipation of litigation is apparent from the Court's *in camera* review of these documents, Defendants have also offered sworn declarations from attorneys Mark Nomellini and Carol Peterson as to non-attorney communications created because of impending or pending litigation and at the direction of counsel (Entry Nos. 3680, 3707, 3708, 3709, 9936, and 9937).

Defendants' claims of work product protection are **SUSTAINED** as to Entry Nos. 717, 4452, 4967, 4977, 8111, 8112, 8113, 8114, 8121, 8134,

8187, 8188, 8189, and 8190.  These documents are litigation hold notices created in anticipation for specific litigation.  The parties disagree as to whether litigation hold notices are categorically protected as work product in the absence of a spoliation allegation, which is the case here.  Plaintiffs cite one district court case, concluding that a litigation hold notice is not work product because the circulation of such a notice is "an ordinary business activity, much like keeping records, accounting for income, and paying taxes."  *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP, 2015 WL 13540728, at *3 (N.D. Ala. Sept. 2, 2015) ("*Blue Cross*").  On the other hand, numerous federal courts have held litigation hold notices are not discoverable because they are work product or otherwise privileged.  *See, e.g.*, *Mcdevitt v. Verizon Servs. Corp.*, No. 14-4125, 2016 WL 1072903, at *1 (E.D. Pa. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 1056702, at *1 (Mar. 17, 2016); *Major Tours, Inc. v. Colorel*, No. 05-3091 (JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007).

The prevailing view is that litigation hold notices are discoverable only if there is a preliminary showing of spoliation.  *Major Tours*, 2009 WL 2413631, at *2; *see also EPAC Techs, Inc. v. HarperCollins Christian*

*Publishing, Inc.*, No. 3:12-cv-463, 2018 WL 3342931, at * (M.D. Tenn. Mar. 29, 2018) ("Through discovery, the parties may investigate the adequacy of one another's preservation efforts.").  Indeed, the issue of spoliation was at the forefront of the discovery dispute in *Blue Cross*, the case cited by Plaintiffs.  *See* 2015 WL 13540728, at *1 ("In their instant motion to compel, the plaintiffs seek 'an Order compelling BCBS-SC to produce 30(b)(6) witnesses to testify and documents regarding: (1) its preservation plan for potentially relevant evidence in this litigation; (2) custodian interviews regarding preservation of evidence; and (3) its investigation into the spoliation of evidence.'").[5]

The undersigned finds the latter view compelling.  That is, where litigation hold notices are sent in anticipation for litigation, they are subject to the work product protection of Rule 26(b)(3)(A) unless there is a credible allegation of spoliation.  Unlike normal business activities such as paying taxes, record keeping, and calculating accounts receivable, litigation hold notices are prepared because of the prospect of litigation.  They are, therefore, textbook work product.  And because there is not an allegation of

---

[5] *See also id.* at *1 ("Plaintiffs reply that, once spoliation is established, these privileges and protections are loosened or even unavailable, so that the court and parties can inquire into the circumstances of the loss of evidence and how it should be sanctioned or remedied."); *id.* at 2 ("The court agrees with the plaintiffs that the destruction of the backup tapes, however they are denominated, appears to be spoliation.").

spoliation, the work product protection applies to Defendants' litigation hold notices.

Defendants' claims of attorney-client privilege are **OVERRULED** as to Entry Nos. 580, 581, 1539, 1540, 1541, 1618, and 1967 because Defendants fail to demonstrate the primary purpose of these communications or documents was to obtain or render legal advice or assistance. Entry No. 580 is an email thread with correspondence to and from Defendants' in-house counsel, C.W. Raines, but the primary purpose of the conversation pertains to Defendants' business, as opposed to obtaining or providing legal advice. Entry No. 581 is an invoice that appears to be an attachment to Entry No. 580 and, therefore, is not privileged for the same reason.

Entry No. 1539 is an electronic calendar invitation for a telephone conference directed to some of Defendants' employees, including Mr. Raines. Although this is technically a communication directed to an attorney and the meeting may have been for the purpose of obtaining legal advice, the invitation itself is not privileged. *See Burgos-Stefanelli v. Napolitano*, No. 09-60118-CIV-Hurley/Hopkins, 2009 WL 10667764, at *3 (S.D. Fla. Dec. 17, 2009) ("Defendant must also disclose emails that simply involve scheduling matters or the transmission of attachments and

facsimile cover sheets that do not contain privileged information."); *United States v. Freese*, No. 8:05CR131, 2006 WL 1041820, at *2 (D. Neb. Apr. 19, 2006) ("[M]erely scheduling a meeting is not privileged conversation[.]").

The Court assumes that Entry Nos. 1540 and 1541 are attachments to Entry No. 1539. Neither document includes legal advice or communications with counsel that are otherwise privileged. Although the documents were sent to counsel, along with other employees of Defendants, Defendants have not shown the documents were sent for the primary purpose of obtaining legal advice as opposed to a business meeting regarding Defendants' products.

Entry No. 1618 is a draft communication sent between two of Defendants' employees. This document is not the same communication Defendants alleged was sent to counsel for review, and the document does not include edits, comments, or advice from counsel.

Entry No. 1967 is an email thread with correspondence to and from Defendants' employees, carbon copying Mr. Raines. The primary purpose of the communications, however, is not to secure legal advice. The communications address business strategy pertaining to a competitor. Defendants' work product protection claim as to this document is also

**OVERRULED** because Defendants have not demonstrated this communication was sent in anticipation of impending litigation.

Lastly, Defendants' claims of attorney-client privilege are **OVERRULED** as to Entry Nos. 2071, 2072, 2073, and 2238. These documents were once disclosed by Defendants to a third-party for the purpose of establishing a joint venture with that third party. Defendants contend that any disclosure did not pierce the attorney-client privilege because the common interest doctrine applies. As explained above, there must be a common legal (rather than commercial) interest for the privilege to survive disclosure. Defendants have not demonstrated they had an "ongoing common legal enterprise" with the relevant third party rather than merely a "joint business strategy." *Spencer v. Taco Bell, Corp.*, No. 8:12-cv-387-T-23TBM, 2013 WL 12156093, at *2 (M.D. Fla. Apr. 23, 2013). The court's explanation in *Spencer* is instructive here:

> As for the common-interest privilege, I find the documents to be better read as draft proposals of a commercial agreement that recognized, as one element of the putative contract, the potential for future litigation and the parties' efforts at allocating the risks of such potential litigation. While both parties surely may claim to have had a shared interest in avoiding litigation, that alone does not demonstrate the requisite shared legal endeavor or enterprise. Stated otherwise, these proposed provisions and revisions are not shown to have been communicated as part of a shared litigation strategy or as an effort to arrive at a common defense to such possible litigation. Rather, they appear to be

nothing more that [sic] an attempt to allocate the risk between parties to a commercial endeavor should such litigation occur. In sum, the common-interest privilege is not demonstrated, and any claim of attorney-client privilege is denied.

*Id.* at *3; *see also In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP, 2017 WL 9807442, at *3 (N.D. Ala. Aug. 31, 2017) (collecting cases in support of the proposition that "[t]he proponent of the common interest doctrine must establish that the act of sharing was part of an ongoing common legal enterprise instead of a part of a joint business strategy which happens to include as one of its elements a concern about litigation").  Defendants, therefore, have waived any privilege as to these documents.

### III.  CONCLUSION

Accordingly, it is **ORDERED**:

1.    Plaintiffs' motion to compel is **GRANTED IN PART and DENIED IN PART**.

2.    Defendants' privilege claims as to Entry Nos. 15, 174, 616, 671, 717, 796, 797, 809, 825, 826, 947, 999, 1017, 1232, 1449, 1571, 1995, 2079, 2632, 2713, 2849, 2865, 2894, 2920, 2941, 2965, 3009, 3011, 3012, 3015, 3131, 3226, 3257, 3680, 3707, 3708, 3709, 3915, 3918, 4124, 4452, 4496, 4553, 4571, 4573, 4681, 4684, 4743, 4952, 4967, 4977, 7734, 7746, 8105, 8106, 8107, 8111, 8112, 8113, 8114, 8121, 8134, 8187, 8188, 8189, 8190, 8191, 8194, 8195, 8256, 9936, 9937, and 9938 are **SUSTAINED**.

3. Defendants' privilege claims as to Entry Nos. 580, 581, 1539, 1540, 1541, 1618, 1967, 2071, 2072, 2073, and 2238 are **OVERRULED**.  Defendants must produce these documents to Plaintiffs **on or before March 26, 2020**.

**DONE AND ORDERED** this 20th day of March 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge