# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* | ) | Magistrate Judge Gary R. Jones |

# PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.   Introduction ................................................................................................1

II.  Summary of Issues ......................................................................................1

III.   Argument ..................................................................................................3

   A.  Legal Standard ........................................................................................3

   B.  Factual & Procedural Background ..........................................................5

   C.  Defendants Should Be Compelled to Provide Sales and Distribution
   Information ....................................................................................................9

   D.  Defendants Should Be Compelled to Provide Marketing and Promotional
   Information ..................................................................................................15

   E.  Defendants Should Be Compelled to Provide Information on Their
   Knowledge of Potential Alternative Designs ............................................18

IV.  Conclusion ................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Centennial Bank v. Servisfirst Bank Inc.*,

    2016 WL 3574587 (M.D. Fla. July 1, 2016) ..........................................................4

*Convertino v. U.S. Dep't of Justice*,

    565 F. Supp. 2d 10 (D.D.C. 2008)....................................................................3, 4

*Covad Commc'ns Co. v. Revonet, Inc.*,

    258 F.R.D. 17 (D.D.C. 2009)................................................................................14

*Deiparine v. Siemens Med. Sols. USA Inc.*,

    2011 WL 13298893 (M.D. Fla. Nov. 21, 2011)...................................... 3, 6, 8, 10

*Edic ex rel. Edic v. Century Prod. Co.*,

    364 F.3d 1276 (11th Cir. 2004) ...........................................................................22

*Ford v. Gov't Employees Ins. Co.*,

    2015 WL 11109373 (N.D. Fla. Apr. 3, 2015) ......................................................4

*Heller v. City of Dallas*,

    303 F.R.D. 466 (N.D. Tex. 2014).........................................................................2

*In re Sulfuric Acid Antitrust Litig.*,

    231 F.R.D. 320, (N.D. Ill. 2005)............................................................... 5, 13, 20

*Int'l Aerospace Grp. Corp. v. Evans Meridians Ltd.*,

    No. 16-24997-CIV, 2017 WL 1927957 (S.D. Fla. May 10, 2017) .......................5

*Milinazzo v. State Farm Ins. Co.*,

   2007 WL 4350865 (S.D. Fla. 2007) ........................................................................3

*Mulero-Abreu v. Puerto Rico Police Dep't*,

   675 F.3d 88 (1st Cir. 2012)....................................................................................15

*Oppenheimer Fund, Inc. v. Sanders*,

   437 U.S. 340 (1978)................................................................................................4

*Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*,

   2011 WL 4382104 (M.D. Fla. Sept. 20, 2011)........................................ 13, 20, 22

*Scheman–Gonzalez v. Saber Mfg. Co.*,

   816 So.2d 1133 (Fla. Dist. Ct. App. 2002)...........................................................23

*Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*,

   2014 WL 545544 (D. Kan. Feb. 11, 2014)............................................................2

*Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*,

   2017 WL 10084359 (N.D. Fla. June 28, 2017) ....................................................4

## Rules

Fed. R. Civ. P. 26 ............................................................................... passim

Fed. R. Civ. P. 33 ............................................................................... passim

Fed. R. Civ. P. 37 ............................................................................... 1, 3, 4

## Other Authorities

Advisory Comm. Note, 48 F.R.D. 487, 524-525 (1970).........................................13

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 33, and 37, Plaintiffs submit this memorandum in support of their Motion to Compel Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC (collectively, "3M" or "Defendants") to respond to Plaintiffs' Interrogatories Nos. 3, 8, 13, 14, 15, and 16.[1]

## II.   SUMMARY OF ISSUES

For months, Defendants have refused to answer Plaintiffs' Interrogatories concerning information on sales and distribution, promotional work and compensation therefor, and Defendants' knowledge regarding potentially safer alternative designs.  Despite numerous meet and confers, Defendants continue to improperly shield relevant and discoverable material information from Plaintiffs.  Accordingly, Plaintiffs move to compel Defendants to respond to the following Interrogatories:

1. Interrogatories seeking **sales and distribution information for the 3M Earplugs**.  *See* Section III.C; Interrogatories Nos. 3 & 8.

---

[1] Plaintiffs' First Set of Interrogatories is attached hereto as Exhibit A; Defendants' Responses to Plaintiffs' First Set of Interrogatories are attached as Exhibit B.

2. Interrogatories seeking information regarding the **compensation and nature of the work performed by promoters and marketers of the 3M Earplugs**. *See* Section III.D; Interrogatories Nos 13 & 14.

3. Interrogatories seeking information regarding potential **safer alternative designs**. *See* Section III.E; Interrogatories Nos. 15 & 16.

As demonstrated in more detail below, each of the categories above is plainly relevant to Plaintiffs' claims and Defendants' asserted affirmative defenses. Yet Defendants assert unsubstantiated and inadequate objections—which in some instances have already been rejected by this Court, and in other instances are completely illogical—to unilaterally limit the scope of their response to these Interrogatories.

The narrowness of Defendants' responses to the subject Interrogatories (each improperly "[s]ubject to and without waiving their objections"[2]) arbitrarily excludes significant relevant information those Interrogatories sought, on grounds Defendants have refused to clarify in further correspondence. Defendants should not be permitted to lay in wait for months, rejecting Plaintiffs' request to substantiate or

---

[2] *See Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014) ("the practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure.'") (*quoting Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014)).

2

clarify their objections, only to attempt to cure those objections in an opposition to this Motion. Defendants' failure to provide requisite specificity in their objections[3]—either in the first instance, or at some point over the past months of correspondence—renders those boilerplate objections and vague claims of burden waived.[4] To the extent they are newly clarified in Defendants' opposition to this motion, they are untimely. [5]

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion, and compel Defendants to respond to the Interrogatories at issue.

## III. ARGUMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

---

[3] *Compare Deiparine v. Siemens Med. Sols. USA Inc.*, 2011 WL 13298893, at *4 (M.D. Fla. Nov. 21, 2011) ("Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit by this Court.") (quoting *Milinazzo v. State Farm Ins. Co.*, 2007 WL 4350865 at *2 (S.D. Fla. 2007)); *with* Exhibit B (providing unspecific and unsubstantiated allegations of breadth, vagueness, and burden).

[4] *See Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (rejecting all "objections on the grounds of undue burden" because responding party did not submit affidavits or offer evidence revealing the nature of the alleged burden.).

[5] Fed. R. Civ. P. 33 ("[T]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable," *id.*, and "[c]ourts construe relevancy 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Ford v. Gov't Employees Ins. Co.*, 2015 WL 11109373, at *1 (N.D. Fla. Apr. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 3574587, at *3 (M.D. Fla. July 1, 2016).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The party resisting discovery has the burden of proving that the requested discovery is either irrelevant, or of such marginal relevance that the potential harm occasioned by discovery outweighs the ordinary presumption in favor of broad disclosure. *See Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017).

Federal Rule of Civil Procedure 33 provides that a party may serve interrogatories that "relate to any matter that may be inquired into under Rule 26(b)," that if a responding party objects, it must state its objection "with specificity," and that each interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(a)(2), (b)(3)-(4).

Federal Rule of Civil Procedure 33(d) allows a responding party to identify business records that contain the answer to an interrogatory, in lieu of expressly answering that question, but to properly do so, the responding party must bear the burden[6] of demonstrating that (a) the answer is ascertainable within the records denoted, (b) a traditional response would be burdensome for the responding party, and (c) the requesting party's burden in discerning the answer from the records would be substantially equivalent to the responding party's burden in discerning the answer from the records.[7]

## B.    Factual & Procedural Background

Plaintiffs served their First Set of Interrogatories to Defendants on August 28, 2019.  Defendants served their Responses and Objections thereto on October 11, 2019.

Several of Defendants' Interrogatory Responses—including those that are the subject of this motion—fail to respond at all with regard to certain requested

---

[6] *Int'l Aerospace Grp. Corp. v. Evans Meridians Ltd.*, No. 16-24997-CIV, 2017 WL 1927957, at *4 (S.D. Fla. May 10, 2017) (burden on producing party to justify application of Rule 33(d)).

[7] *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, (N.D. Ill. 2005) (rejecting application of Rule 33(d) and granting motion to compel where "there is nothing to support a conclusion that there is an equivalency of burdens or that the specification was in sufficient detail to permit [the questioning party's] location and identification with the same degree of effort and efficiency that [the responding party] could bring to the task.").

information, as discussed in more detail in Sections C, D, and E below.  And Defendants' objections are, in significant portion, unsubstantiated boilerplate, or completely inapposite.   Defendants object to almost every Interrogatory as "overbroad, unduly burdensome and disproportional to the needs of this case," without describing any purported burden, or describing the irrelevance of any portion of the requested information.[8]  *See passim* Exhibit B.  Defendants' objections untenably state, for example, that an Interrogatory is unduly burdensome for seeking information not already provided in produced documents,[9] or disproportional for seeking information on Defendants' testing of alternative designs,[10] or that Defendants' knowledge of alternative designs is publicly available information.[11] Defendants have failed to clarify these objections in any subsequent correspondence,

---

[8] *See supra Siemens Med. Sols. USA Inc.*, 2011 WL 13298893, at *4 (M.D. Fla. Nov. 21, 2011) ("Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit by this Court.").

[9] *See* Ex. B at No. 15 (Interrogatory claimed to be disproportional and unduly burdensome "to the extent it seeks information beyond the scope of the documents produced in response to the agreed TAR protocol.").

[10] *See*, *e.g.*, Ex. B at No. 16 (Interrogatory claimed to be disproportional and unduly burdensome because it seeks information "regarding hearing protection devices developed by entities other than Defendants," and because it "seeks information regarding hearing protection devices other than the Combat Arms Earplug version 2," not because of any burden or relevance argument).

[11] *See*, *e.g.*, Exhibit B at No. 16 (Defendants objecting to Interrogatory seeking information on when 3M/Aearo learned of alternative non-linear HPDs because it seeks "publicly available information equally accessible to both parties.").

and have declined to identify any purported burdens, or to articulate why they believe the requested information is irrelevant.[12]

Plaintiffs raised some of these deficiencies in an October 30, 2019 letter to Defendants[13] and in a November 4, 2019 meet and confer, during which Defendants stated they would look into amending certain of their deficient responses.   On January 21, 2020, Plaintiffs contacted Defendants to gather more information about Defendants' intentions to amend their Responses, and to raise additional deficiencies in other Interrogatory responses.[14]

On February 28, 2020, Defendants responded to Plaintiffs on these issues in writing for the first time. [15]  With regard to the Interrogatories at issue herein (those relating to sales and distribution, Nos. 3 & 8; to marketing and promotional work and compensation, Nos. 13 & 14; and to safer alternative designs, Nos. 15 & 16), Defendants stated only that they are "either (a) objectionable for the reasons stated in defendants' interrogatory responses, or (b) included in the significant discovery

---

[12] *See* Exhibit E, Feb. 28, 2020, N. Wasdin email to D. Buchanan (with regard to each of the deficiencies raised in this motion, Defendants claim that the Interrogatories are "either (a) objectionable for the reasons stated in defendants' interrogatory responses, or (b) included in the significant discovery taken in the case to date, and thus not subject to the supplementation obligation in Rule 26(e)," without further explanation).

[13] *See* Exhibit C, Oct. 30, 2019 D. Buchanan Ltr. to M. Nomellini.

[14] *See* Exhibit D, Jan. 1, 2020, D. Buchanan Ltr. to M. Nomellini.

[15] *See* Exhibit E, Feb. 28, 2020, N. Wasdin email to D. Buchanan.

taken in the case to date, and thus not subject to the supplementation obligation in Rule 26(e)."[16]  Defendants shared no information clarifying the substance of any of the boilerplate, improper, and irrelevant objections that Plaintiffs had questioned in several writings and calls.  Defendants provided no further information regarding the nature of the undue burdens they allege, or any basis for any challenge to the relevance of any of the requested information.  Defendants also expressed no willingness to provide any response at all to the portions of those Interrogatories that Defendants had refused to answer previously.

Since the day they were served, Defendants' Responses to the Interrogatories at issue in this motion have been deficient and nonresponsive.[17]  Despite repeated efforts to meet and confer, Defendants have refused to either clarify or withdraw their improper objections.  Accordingly, Plaintiffs bring this motion pursuant to this

---

[16] *See id.*

[17] During the March 4, 2020 discovery teleconference with the Court, Plaintiffs raised Defendants' obligation to supplement their Responses to Interrogatories Nos. 1 and 2 (which sought identification of individuals with relevant information, and of former government employees later employed by Defendants) to the extent that information was not already otherwise revealed to Plaintiffs.  Defendants stated that their responses to Interrogatories Nos. 1 and 2 were accurate when made, and that any subsequent additional information had otherwise been made known to Plaintiffs during the discovery process, therefore abrogating the need for supplementation under 26(e).  The instant motion, by contrast, is directed to Interrogatory Responses that were deficient and nonresponsive on the day they were served.  It is not directed to Interrogatory Responses that became inaccurate or incomplete due to due to later-gathered information, to which Rule 26(e) would apply.

Court's March 5, 2020 Order, seeking an order striking Defendants' objections and compelling Defendants to provide substantive responses to Interrogatories Nos. 3, 8, 13, 14, 15, and 16.

### C.   Defendants Should Be Compelled to Provide Sales and Distribution Information

On August 28, 2019, Plaintiffs issued two Interrogatories seeking information on Defendants' sales and distribution of the 3M Earplugs, to which Defendants provided incomplete responses on the bases of deficient objections.  Interrogatory No. 3 requested:

> "3. **Please identify each version of the 3M Earplugs (and any predecessor or successor design**), together with its (i) brand name(s); (ii) internal name(s), product code(s), or product identifier(s); (iii) external product identifier(s), including product or part number(s), SKU(s), National Stock Number(s), or P/N(s)**; (iv) date(s) of first and last sale; (v) number of units sold to domestic purchasers; (vi) number of units sold to the U.S. Government, broken down by number of units sold to each entity, agency, bureau, division, branch, or other subpart thereof; (vii) number of units sold to foreign purchasers, by country of purchase**." *See* Exhibit A at No. 3 (emphasis added).[18]

---

[18] The Parties are in agreement that the portions of these requests relating to sales information for predecessor and successor designs are limited by the relevance and proportionality considerations discussed in this Court's Oct. 10, 2019 Order (Dkt. 748).  Plaintiffs have advised Defendants that they do not seek information this Court deemed beyond the scope of discovery in that order, and that therefore Defendants' objections with regard to this Interrogatory regarding information on predecessor and successor designs are moot.

Defendants' primary objection to this Interrogatory (and to Interrogatory No. 8, discussed below) was that it is "unduly burdensome to the extent it seeks voluminous sales information that is equally available to both parties from the documents produced in this litigation subject to the agreed TAR protocol." *See* Exhibit B at No. 3.  Instead of answering, Defendants pointed Plaintiffs to documents that Defendants claimed were "sufficient to identify relevant sales histories for those products." *See id*.  Plaintiffs attach as Exhibits F-J excerpts from each of the documents Defendants cited in their Response to Interrogatory No. 3.[19]  As discussed later with regard to Interrogatory No. 8, these documents are not sufficient to glean the requested information.

Apart from identifying those documents, Defendants limited their response to only "identify the brand name(s), internal name(s), product, and the SKU or national stock number(s) for the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use." *See* Exhibit B at No. 3. Defendants thus refused, and have continued to refuse, to provide Plaintiffs with relevant information responsive to the majority of the Interrogatory, including information on: (i) the dates of first and last sales of the 3M Earplugs; (ii) the number

---

[19] For purposes of this submission, Plaintiffs formatted Defendants' cited Microsoft Excel spreadsheets into PDFs, several of which were more than one thousand pages long.  Exhibits F-J include pages representing the first and final sets of rows in those spreadsheets.  Plaintiffs are able to produce the spreadsheets in full if the Court so requests.

of units sold to domestic purchasers; (iii) the number of units sold to each entity, agency, bureau, division, branch, or other subpart of the U.S. Government; and (iv) the number of units sold to foreign purchasers.

This information is relevant for a variety of reasons.  First, information regarding volume of sales and identity and location of purchasers is necessary to identify the military bases at which the CAEv2 were distributed or used.  Such identification is plainly relevant to any contention (or dispute) regarding whether a given service member actually used the CAEv2.  Second, the volume of 3M Earplugs sold across various U.S. Government subparts and divisions, and to private consumer or industrial entities, is also relevant to determining Defendants' motives, methods, and goals in developing the 3M Earplugs, whether for consumers or for military purchasers.

Interrogatory No. 8, like Interrogatory No. 3, sought sales and distribution information for the 3M Earplugs.  Unlike Interrogatory No. 3, Interrogatory No. 8 was focused exclusively on sales to the U.S. Government; it sought transaction-by-transaction data rather than totals and start and end dates; and it sought identification of the agents of 3M and of the U.S. who were directly involved in any such sales:

> "8. For all of your sales of 3M Earplugs to the U.S. Government, please **identify the purchasing entity of the U.S. Government, to whom the order was placed, the date of the order, who fulfilled the order, the quantity sold, the price, the sales representative for 3M associated with the sale,**

**and the location where the U.S. Government took delivery**.”  *See* Exhibit A at No. 8 (emphasis added).

Defendants provided no substantive response to any portion of Interrogatory No. 8, instead objecting that Interrogatory No. 8 was “unduly burdensome to the extent it seeks voluminous sales information that is equally available to both parties from the documents produced in this litigation subject to the agreed TAR protocol.” *See* Exhibit B at No. 8.[20]  Defendants referred Plaintiffs to the same spreadsheets cited in their Response to Interrogatory No. 3.  *See* Exhibits F, G, H, I, and J.  But the cited documents neither consistently nor comprehensively provide the information sought by Interrogatory No. 8, including (i) the Government individuals who placed the subject orders; (ii) the Government subparts that took delivery of the Earplugs; (iii) Defendants’ sales representatives involved in the sales; and (iv) Defendant agents who fulfilled orders.  The identity of the individuals—sales representatives, sellers, and purchasers—involved in the transactions between Defendants and the U.S. Government is crucial to Defendants’ invocation of the Government Contractor Defense and to broader liability discovery.  The interactions among 3M, its representatives, and the Government, including what the purchaser was told about the product and its use (whether in marketing or training) or the channels through which the various sales of the product were made, go to the heart

---

[20] Defendants’ Response to Interrogatory No. 8 fails to even assert that the cited documents contain information sufficient to answer Plaintiffs’ Interrogatory.

of liability in this case.  Defendants cannot refuse to answer Interrogatories about the particulars of its sales to the Government while simultaneously contending that the circumstances of those sales immunize them from tort liability.

Defendants appear to rely on Fed. R. Civ. P. 33(d) in identifying documents instead of answering Interrogatories Nos. 3 and 8, but that provision does not apply here, where that information is not equally accessible to both sides, and where the documents at issue are unresponsive to the request.  Access to information is not equal if the burden of deriving information from a document is substantially more difficult for one side—in this case, Plaintiffs.[21]  Defendants have the burden of showing an equivalency of access to the information sought, particularly where their familiarity with the records at issue is clear.[22]  A response that an Interrogatory's answer is ascertainable from a document must also state where (or how) the answer may be found.[23]  Defendants' responses provided no such guidance.  In fact, despite

---

[21] Fed. R. Civ. P. 33, advisory committee note to 1970 amendments, 48 F.R.D. 487, 524-25 ("the burden of ascertaining the answer [must] be substantially the same for both sides. A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one famili3ar with the records.").

[22] *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 366 ("the effort involved is not as great for the producing parties as it is for the plaintiffs, since the former are more familiar with the documents than the plaintiffs. Added to that familiarity is the familiarity of defense counsel, who have already undertaken at least one review of the documents. Consequently, the defense will be more easily able to locate the answers in the documents than would plaintiffs.").

[23] *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 4382104, at *6 (M.D. Fla. Sept. 20, 2011) ("Nationwide simply said that the

Plaintiffs best efforts to decipher the documents, it seems that the documents fail to identify any of the individuals whose information Plaintiffs sought.[24]

Defendants' failure to satisfy Rule 33(d) is demonstrated by the fact that Plaintiffs in fact lack the information and ability to discern the answers to the disputed Interrogatories from the records identified in Defendants' Responses.  In an effort to decipher the documents and discern an answer to their Interrogatory, Plaintiffs questioned Defendants' corporate witnesses as to the interpretation of the identified documents.  *See* Oct. 17, 2019 Moses 30(b)(6) Tr., at 89-95.  But when Plaintiffs attempted to use in a deposition figures and demonstratives based on that testimony and Defendants' documents, Defense counsel attacked the reliability of Plaintiffs' numbers.  *See* Dec. 13, 2019 Myers Tr., at 866:20-867:6.  Defendants' witnesses have also questioned the reliability of the identified spreadsheets themselves, stating that the materials contained data from at least two overlapping computer systems, and were unable to explain how Plaintiffs could de-duplicate that data or otherwise discern the correct figures.  *See* Oct 17, 2019 Moses 30(b)(6) Tr.

---

names of the individuals involved or documents supporting the response can be found in the claims files produced, but they do not point to specifically where in the claims files these names can be found. This does not comply with Rule 33(d)").

[24] *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009) (granting motion to compel where responding party "generally directs [requesting party] to its own records on the interrogatory's subject matter; it is not as though [responding party] is identifying specific documents or even categories of documents where the answer may be found.")

451:9-454:8; Dec. 12, 2019 Myers Tr. 396:8-17.  One of Defendants' witnesses even suggested that it is possible, but uncertain, that some of the currency values represent foreign currencies, which would also undermine the accuracy of the data.  *See* Dec. 12, 2019 Myers Tr. 401:12-24.

Answers to these basic Interrogatories—sales transaction details contained within Defendants' systems and managed by employees with knowledge of how it is organized and what it represents—should not be left to Plaintiffs' best guess as to what the true answer might be.[25]  Plaintiffs request that the Court order Defendants to provide answers to the outstanding portions of Interrogatories Nos. 3 and 8.

## D.      Defendants Should Be Compelled to Provide Marketing and Promotional Information

Plaintiffs issued two Interrogatories seeking information on Defendants' promotion and marketing of the 3M Earplugs, in response to which Defendants provided only a single list of names, without any other requested information. Interrogatories Nos. 13 & 14 requested:

> "13. Please identify any scientists, audiologists, physicians, medical professionals, professional associations, or other organizations **or persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD, together with the amount of such compensation, the person's role, and the identity of any**

---

[25] *See Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) ("answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33.").

**specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.**" *See* Exhibit A at No. 13.

"14. Please **identify any external experts**, consultants, scientists, physicians, medical professionals, thought leaders, academics, or key opinion leaders, **who you have compensated for work promoting or otherwise distributing information regarding the risk of auditory injury, and/or the importance of hearing conservation programs and hearing protection devices**, whether to the government, the public, or otherwise, **together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.**" *See* Exhibit A at No. 14.

Defendants' Response to Interrogatory No. 13 provided only a list of "individuals identified to date that may have spoken about or promoted the Combat Arms Earplug version 2 or any like-design dual-ended earplugs sold by Defendants for civilian use at industry trade shows or in a marketing capacity." *See* Exhibit B at No. 13. Defendants' Response to Interrogatory No. 14 provided no substantive answer, and merely referred Plaintiffs to their Response to Interrogatory No. 13. *See* Exhibit B at No. 14.[26]

---

[26] Defendants objected to Interrogatories Nos. 13 and 14 in part on the basis that those Interrogatories sought information on the promotion of "any HPD" or with regard to hearing conservation programs and hearing protection devices in general, and were not targeted at the 3M Earplugs. *See* Exhibit B at Nos. 13 and 14. As with Interrogatories Nos. 3 & 8 above, the Court has determined that marketing information is relevant with regard to the CAEv2, but not with regard to its predecessor and successor designs. *See* Dkt. No. 748. Plaintiffs seek an order compelling Defendants to respond with regard to the CAEv2 and like-design consumer earplugs, information the Court's prior ruling found proportional and relevant.

Defendants have refused to answer with regard to: <u>(i) which of the individuals listed in Defendants' Response to Interrogatory No. 13, if any, Defendants compensated for speaking about the 3M Earplugs; (ii) the amounts of such compensation, if any; (iii) the role each individual played in promotion or marketing of the 3M Earplugs; (iv) the identity of specific programs, speaking engagements, or presentations, relating to the 3M Earplugs, for which Defendants compensated those individuals.</u>

Presumably in connection with their omission of this information, Defendants provided a boilerplate objection to "this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks 'the amount of such compensation. . . . and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation." *See* Exhibit B at No. 13. But these categories are squarely relevant, and are the kind of information that the Court noted Defendants were obligated to produce in its October 10, 2019 Order. *See* Dkt. 748 at 12-13 ("Defendants have agreed to produce, and Plaintiffs will be provided with, marketing materials related to CAEv2."). Defendants' discovery obligations must extend to identification of its marketing presentations for the product at issue in this case, and the amounts for which speakers were compensated for such promotional activity.

17

Through review of Defendants' productions and deposition of Defendants' witnesses, Plaintiffs have been able to identify some events where speakers promoting the Combat Arms Earplugs may have been compensated by Defendants. But Defendants' assertion of the Government Contractor Defense requires a more comprehensive review of the promotional events, "informational" presentations, and other representations from 3M to the government, as well as of the incentives of the individuals involved in promotion and marketing. Defendants cannot claim that they received official specifications from the U.S. Government in a series of informal emails,[27] while refusing to provide information on the presentations, speaking engagements, and programs through which it made representations to the U.S. Government about the product at issue.

### E. Defendants Should Be Compelled to Provide Information on Their Knowledge of Potential Alternative Designs

Plaintiffs issued two Interrogatories seeking information on Defendants' knowledge of potential alternative designs to the 3M Earplugs, and Defendants' communications with the U.S. Government thereon. Interrogatories Nos. 15 and 16 requested:

> "15**. Please identify all studies, including NRR, REAT, physical measurement, acoustic test fixture, walk-up, and impulse noise studies, regarding** 3M Earplugs and **any predecessor, successor, and/or alternative designs** that use any aspect of the technologies used in the 3M Earplugs,

---

[27] *See* Defendants' Responses to Interrogatories Nos. 5, 9, and 10.

18

including flanges, level dependence, or nonlinearity technologies, mechanisms or filters, or that involved a comparison between an HPD's design and the design of the 3M Earplugs. **For each study identified, please provide, if applicable, (i) the study's name and study number; (ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of Defendants in the study, including any direct or indirect financial support or compensation of any kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results, including final and draft reports, amendments to protocols, and any study data not included in the final study report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S. Government and the Bates number of those documents constituting such transmittal.**" *See* Exhibit A at No. 15 (emphasis added).

Defendants' response identified only "non-publicly available attenuation testing [Defendants] are presently aware of related to the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use." *See* Exhibit B at No. 15. The Response thus omits the requested <u>identification of testing or studies relating to predecessor, successor, and/or alternative designs that use aspects of the technologies included in the 3M Earplugs</u>.

Defendants' refusal to identify any testing of predecessor and successor versions appears to be based upon their objections, which are generally boilerplate, insufficiently detailed, and often inapposite. Defendants improperly object to responding to this Interrogatory "to the extent it seeks information beyond the scope

19

of the documents produced in response to the agreed TAR protocol."[28]  Defendants

also object that the Interrogatory is "disproportional to the needs of the case to the

extent it seeks information regarding hearing protection devices other than the

Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by

Defendants for civilian use."   *See* Exhibit B at No. 15.   The relevance and

proportionality of Defendants' provision of information regarding the testing of

predecessor and successor products is not only plain in this product defect case, but

it was also the subject of a prior order in this case.  *See* Oct. 10, 2019 Order at 16

(Dkt. No. 748) ("Defendants must produce documents related to the predecessor and

successor versions of the CAEv2 concerning: the design, development and testing

of non-CAEv2 products").   Defendants claim the information would be "unduly

burdensome to compile,"[29] but have refused to describe or substantiate that burden

---

[28] Ex. B at No. 15.  *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 326 ("even if a partial answer [to the Interrogatory] could be obtained from such a review, the plaintiffs are entitled to complete disclosure, which cannot be obtained by pouring through a mountain of material").

[29] *Id.* Defendants also claim in their Response to Interrogatory No. 15 that the information Plaintiffs seek is "equally available to both parties in the produced documents," *id.*, but Defendants have declined to identify the documents from which the information may be gleaned.  *See Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 4382104, at *6 (M.D. Fla. Sept. 20, 2011) ("Nationwide simply said that the names of the individuals involved or documents supporting the response can be found in the claims files produced, but they do not point to specifically where in the claims files these names can be found. This does not comply with Rule 33(d)").

in their Responses or in subsequent correspondence.  Plaintiffs have repeatedly asked Defendants to clarify the relationship between their objection and the Court's Oct. 10, 2019 Order, and Defendants have stood on their objections and refused to provide more clarity.[30]  Plaintiffs now seek an order compelling Defendants to respond to those portions of this Interrogatory regarding the testing of predecessor and successor designs.

Plaintiffs' Interrogatory No. 16 also sought information regarding Defendants' knowledge of (and communications with the Government regarding) potentially safer alternative designs:

> "16. Please identify **all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity**, including (i) the person that developed or marketed such HPD; (ii) **the date you became aware** of such HPD; (iii) **any study or testing performed by you** or any other person on such HPD; and (iv) **any communications between you and the U.S. Government** concerning such HPDs."  *See* Exhibit A at No. 16.

Defendants identified only two products: "The Combat Arms Family of products," and "The Ultra9000 earmuff."  *See* Exhibit B at No. 16.  Although Defendants' Response to Interrogatory No. 16 refers in turn to Defendants' Responses to Interrogatories Nos. 1, 5, 9, 13, and 15, those Responses contain only

---

[30] *See* Exhibit E, Feb. 28, 2020, N. Wasdin email to D. Buchanan (with regard to each of the deficiencies raised in this motion, the Interrogatories are "either (a) objectionable for the reasons stated in defendants' interrogatory responses, or (b) included in the significant discovery taken in the case to date, and thus not subject to the supplementation obligation in Rule 26(e).").

information regarding the CAEv2 and like-design civilian plugs created by 3M, not the alternative designs to which this Interrogatory is directed. *See* Exhibit B at No. 16 (repeated citation to other Interrogatory Responses "[t]o the extent this interrogatory seeks information regarding . . . the Combat Arms Earplug version 2" and no responses as to alternative designs). Defendants apparently limited their response to identification of HPDs that Defendants themselves manufactured, on the basis that the Interrogatory was "disproportional to the needs of this case to the extent it seeks information, including publicly available information equally accessible to both parties, regarding hearing protection devices developed by entities other than Defendants."[31]

But the relevance of alternative designs is not limited to alternative designs that 3M manufactured. The existence of an alternative design that could reduce the risk of harm presented by the 3M Earplugs is a relevant factor to determining liability for a defective product under Florida law.[32] Defendants' evaluation of the safety or

---

[31] *See id.* Defendants' other objections to this Interrogatory are similarly inapposite. For example, Defendants' awareness of potential alternative designs is not "publicly available information equally accessible to both parties." *See* Exhibit B at No. 16. Defendants' knowledge is nonpublic information, and Defendants' awareness of alternative designs is plainly more accessible to Defendants than to Plaintiffs.

[32] "A product is defective in design, under Florida law, 'when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design and its omission renders the product not reasonably safe.'" *Edic ex rel. Edic v. Century Prod. Co.*, 364 F.3d 1276, 1280 (11th

feasibility of such designs is therefore of paramount relevance in this case, as are communications between Defendants and the Government about any alternative designs (including, *e.g.*, comparisons of alternatives to the CAEv2, and representations about the relative safety or feasibility of alternative designs).

Defendants' knowledge of alternative designs and Defendants' communications with the U.S. Government regarding those designs are clearly relevant. Plaintiffs request an order compelling Defendants to respond to Interrogatory No. 16, and provide the requested information regarding alternative designs and communications with the U.S. Government thereon.

## IV.  CONCLUSION

Plaintiffs seek an order compelling Defendants to provide the following information responsive to Plaintiffs' Interrogatories:

<u>Interrogatory No. 3</u>: (i) the dates of first and last sales of the 3M Earplugs, (ii) the number of units of 3M Earplugs sold to domestic purchasers, (iii) the number of units of 3M Earplugs sold to each entity, agency, bureau, division, branch, or other subpart of the U.S. Government, and (iv) the number of units of 3M Earplugs sold to foreign purchasers;

---

Cir. 2004) (quoting *Scheman–Gonzalez v. Saber Mfg.* Co., 816 So.2d 1133, 1139 (Fla. Dist. Ct. App. 2002)).

Interrogatory No. 8: (i) Government subparts that took delivery of each shipment of 3M Earplugs, (ii) Government individuals who placed each order for 3M Earplugs, (iii) 3M agents who fulfilled each Government order of 3M Earplugs, and (iv) sales representatives involved in each sale of 3M Earplugs to the Government;

Interrogatories Nos. 13 & 14: (i) which of the individuals identified in Defendants' Response to Interrogatory No. 13 were compensated by Defendants for speaking about the 3M Earplugs; (ii) the amounts of such compensation, if any; (iii) the role each individual played in promotion or marketing of the 3M Earplugs; (iv) the identity of specific programs, speaking engagements, or presentations regarding the 3M Earplugs for which Defendants compensated those individuals;

Interrogatory No. 15: Identification of testing or studies relating to predecessor and successor designs that use aspects of the technologies included in the 3M Earplugs, as called for by this Court's Oct. 10, 2019 Order (Dkt. 748), or relating to other alternative designs other than successors and predecessors.

Interrogatory No. 16: Requested information regarding Defendants' knowledge of and communications with the U.S. Government regarding potential alternative designs.

For the aforementioned reasons, Plaintiffs respectfully request that this Court order Defendants to respond to Plaintiffs' Interrogatories Nos. 3, 8, 13, 14, 15, and 16.

Dated: March 23, 2019

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Brian H. Barr, Co-Liaison Counsel

Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2019, I caused the foregoing Motion to Compel Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/* Christopher A. Seeger

## CERTIFICATE OF CONFERENCE

I certify that I have complied with the conference requirement pursuant to the Court's Local Rule 7.1(B).  Through the course of the past several months, the parties have met and conferred on this matter on numerous occasions, including but not limited to teleconferences on November 4, 2019 and March 3, 2020, and written correspondence on October 30, 2019, January 21, 2020, and February 28, 2020. Through the course of said meet and confers and correspondence on this issue, Defense Counsel has refused to respond to the Interrogatories at issue herein.

## CERTIFICATE OF WORD COUNT

I certify that this Plaintiffs' Memorandum to Plaintiffs' Motion to Compel contains 6,407 words per my word-processing system, and including all words exhibited within Plaintiffs' Certificates of Service, Conference, and Word Amount.