# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE:<br><br>3M COMBAT ARMS EARPLUG<br>PRODUCTS LIABILITY LITIGATION,<br>—————————————————————<br>This Document Relates to All Cases | Case No. 3:19-md-02885<br><br>Judge M. Casey Rodgers<br><br>Magistrate Judge Gary R. Jones |

**DEFENDANTS' RESPONSES AND OBJECTIONS**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants serve these Responses and Objections to Plaintiffs' First Interrogatories dated August 28, 2019. Defendants' responses are based upon Defendants' current knowledge, understanding, belief, and searches for information and documents, including the information identified under the agreed TAR protocol negotiated by the parties. Defendants' investigation of facts and information relating to these interrogatories is continuing, and Defendants reserve the right to modify, amend, or supplement their responses as discovery continues, including discovery from the U.S. Government and other third parties.

**GENERAL OBJECTIONS**

1.      Defendants assert the following objections to each and every one of Plaintiffs' interrogatories, including any definitions or instructions associated

therewith. These general objections are incorporated by reference into each specific response set forth by Defendants and are neither waived nor limited by any specific responses.

2.    Defendants object to these Interrogatories to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court, including the agreed TAR Protocol negotiated by the parties and entered by the Court.

3.    Defendants object to the Interrogatories to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

## ANSWERS TO INTERROGATORIES

## INTERROGATORY NO. 1:

Please identify any person with relevant information concerning the claims or defenses herein, including any persons responsible for design, development, testing, distribution, procurement, government relations, public affairs, marketing, sales, customer/user feedback or complaints, lobbying, and business strategy relating to the 3M Earplugs and any other HPD provided by you to the military, including their title, role, and dates of responsibility and/or involvement.

## RESPONSE TO REQUEST NO. 1:

Defendants object to this interrogatory as duplicative and cumulative to the extent this information has already been provided in Defendants' Rule 26 disclosure,

and Defendants incorporate their Rule 26 disclosure herein by reference.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any persons" responsible for, among other things, "distribution, procurement, government relations, public affairs, marketing, sales, customer/user feedback or complaints, lobbying, and business strategy relating to the 3M Earplugs," which, read literally, would require Defendants to provide significant information outside of their possession, custody or control.   Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding hearing protection devices other than the dual-ended Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.  Defendants further object to this interrogatory to the extent it calls for information subject to the attorney-client privilege, the work-product doctrine, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify the title, role, and dates of employment for individuals identified to date that may have relevant information concerning the dual-ended Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

1.  Lindsay Adams, Supply Chain Manager; product marketing; approximately 2000 to Present.

2.  Lorraine Babeu, U.S. Army Research Laboratory, Human Research and Engineering Directorate, Aberdeen Proving Ground, Maryland; product testing; dates of employment presently unknown.

3.  Elliott Berger, Division Scientist; product development and testing; approximately 1976 to 2018.  Berger re-joined 3M in 2018 and is currently a Contract Worker specializing in technology and engineering.

4.  Kristen Casto, U.S. Army audiologist; military hearing conservation; dates of employment presently unknown.

5.  Annette Childress, Quality Supervisor; quality assurance; approximately 1999 to Present.

6.  Mike Cimino, Business Development Leader, military marketing and sales; approximately 1999 to Present.

7.  Armand Dancer, French German Research Institute of Saint-Louis; product development and testing; dates of employment presently unknown.

8.  Christine Dunn, Graphics Analyst; graphic design and packaging; approximately 1997 to Present.

9.    Michael   Edwards,   District   Sales   Manager;   military   sales; approximately 2005 to 2007.

10.   Robert Falco, Technician; product development; approximately 1971 to 2010.

11.   Eric   Fallon,   Technical   Service   Specialist;   application   engineer; approximately 2012 to Present.

12.   George Garinther, US Army Research Lab Aberdeen Proving Ground; military  participation  in  product  design  and  development;  dates  of employment presently unknown.

13.   Frank Gavin, Emergency Preparedness Specialist; military marketing and sales; approximately 2004 to 2014.

14.   Jeff  Hamer,  Global  Laboratory  Manager;  product  development  and testing; approximately 1993 to Present.

15.   Pascal  Hamery,  French  German  Research  Institute  of  Saint-Louis; product  development  and  testing;  dates  of  employment  presently unknown.

16.   Michael   Harrison,   Sales   Account   Representative;   military   sales; approximately 1996 to 2011.

17.   Jason  Jones,  Marketing  Operations  Manager;  manager  of  hearing product portfolio; approximately 2004 to Present.

18. Ron Kieper, Senior Acoustic Technician; product testing; approximately 1981 to 2017.

19. Cynthia Kladden, Administrative Assistant; assistant to Elliott Berger and Brian Myers; approximately 1996 to 2016.

20. Richard Knauer, Senior Technical Director; product development; approximately 1979 to 2017.

21. Scott Larson, Manager - Application Engineering; engineer; approximately 1997 to Present.

22. Tom Lavalle, Business Development Manager; military marketing and sales; approximately 2006 to Present.

23. Ted Madison, Technical Service Specialist; product development; approximately 2004 to 2019.

24. Tim McNamara; Sales Account Representative; sales and marketing; approximately 1980 to 2009.

25. John Andrew Merkley, U.S. Army audiologist; military hearing conservation; dates of employment presently unknown.

26. Doug Moses, Marketing Manager; sales and marketing; approximately 2005 to Present.

27. William J. Murphy, Center for Disease Control, National Institute for Occupational Safety and Health; product testing; dates of employment presently unknown.

28. Brian Myers, Business Director - Hearing/Head Eye & Face/Body Division; product development and marketing; approximately 1989 to Present.

29. Ronda Notter, Sales National Account Manager; military marketing and sales, approximately 2005 to Present.

30. Doug Ohlin (deceased), Consultant; military products consultant; approximately 2007 to 2013. Prior to 2007, Ohlin served as the Program Manager for the U.S. Army Hearing Conservation Program Office, in which role he participated in the design and development of the earplug that would become the Combat Arms Earplug version 2.

31. G. Richard Price, Scientist, US Army Research Lab; military participation in product design and development; dates of employment presently unknown.

32. Marc Santoro, Manager - Six Sigma Black Belt; marketing and advertising; approximately 2004 to 2014.

33. Nelson Schmidt, Assistant General Counsel; product labeling; approximately 1976 to 2010.

34. Theresa Schulz, Army and Air Force Audiologist; military participation in product design and development; dates of employment presently unknown.

35. Megan Selby, VP and GM of Consumer Health Care; sales and marketing; approximately 1998 to Present.

36. Marc Stevens, hearing conservation for the armed forces; military participation in product design and development; dates of employment presently unknown.

37. Nancy Vause, U.S. Army audiologist; military hearing conservation; dates of employment presently unknown.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 2:**

Please identify any of your current or former employees who previously worked for any U.S. Government branch, department, agency, entity, or other subpart that purchased, distributed, received, tested, recommended or approved 3M Earplugs, and the dates of their employment with Defendants.

**RESPONSE TO REQUEST NO. 2:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any … current or former employees" who worked for "any U.S. Government

8

branch, department, agency, entity, or other subpart that purchased, distributed, received, tested, recommended or approved 3M Earplugs," which, read literally, could include many current or former employees who previously worked for the U.S. Government but who have no substantive knowledge of or involvement in the issues in this litigation.  Subject to and without waiving their objections, Defendants will provide the requested information for those individuals identified to date who may have knowledge relevant to the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

1.    Eric Fallon; approximately 2012 to present.

2.    Doug Ohlin; approximately 2007 to 2013.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**<u>INTERROGATORY NO. 3</u>:**

Please identify each version of the 3M Earplugs (and any predecessor or successor design), together with its (i) brand name(s); (ii) internal name(s), product code(s), or product identifier(s); (iii) external product identifier(s), including product or part number(s), SKU(s), National Stock Number(s), or P/N(s); (iv) date(s) of first and last sale; (v) number of units sold to domestic purchasers; (vi) number of units sold to the U.S. Government, broken down by number of units sold to each entity, agency, bureau, division, branch, or other subpart thereof; (vii) number of units sold to foreign purchasers, by country of purchase.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants object to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any predecessor or successor design." Defendants further object to this interrogatory as unduly burdensome to the extent it seeks voluminous sales information that is equally available to both parties from the documents produced in this litigation subject to the agreed TAR protocol. Subject to and without waiving their objections, Defendants will: (i) identify the brand name(s), internal name(s), product, and the SKU and/or national stock number(s) for the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use; and (ii) produce documents sufficient to identify relevant sales histories for those products.

*Combat Arms Earplug version 2*:

Brand/Internal Name: Combat Arms Earplug version 2; CAEv2; Bumblebee

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| 370-1000<br>ND-370-1000 | 70071521218<br><br>70071613031<br><br>JH200153569 | 6515-01-466-2710 |
| 370-1002 | 70071529468 | |

| 370-1011 | 70071521226 XH000712139 | 6515-01-466-2710 |
| 370-ALPHA | 70071557162 | |
| 370-1012 | | |
| 370-1200 | 7000052748 | |

*ARC Plug:*

Brand/Internal Name:  E-A-R™ ARC Plug™

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| 370-2000 | 70071521275 70000052749 | |
| 370-2001 | 70071538329 | |

*Indoor/Outdoor Range Plug:*

Brand/Internal Name:   Indoor/Outdoor Range; Peltor Combat Arms; Hear-Through

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| 97079-10C | 70006945201 | |
| 97079-00000 | 70005064715 | |

Relevant sales histories for these products can be found in documents bearing Bates numbers: 3M_MDL000393649; 3M_MDL000393648; 3M_MDL000393647; 3M_MDL000393646; 3M_MDL000393651.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 4:

Please identify all persons who evaluated, considered, or discussed the potential recall, withdrawal from market, or cessation of sales of the 3M Earplugs, together with the dates of such discussions, evaluations, and communications.

## RESPONSE TO INTERROGATORY NO. 4:

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "all persons who evaluated, considered, or discussed the potential recall, withdrawal from market, or cessation of sales of the 3M Earplugs," which, read literally, could include numerous current or former employees who may have thought about or discussed those topics but who have no substantive knowledge of or involvement in the issues in this litigation. Defendants further object to this interrogatory as unduly burdensome to the extent it seeks the dates any person "evaluated, considered, or discussed" the identified topics. Defendants further object to the term "potential recall" as vague and ambiguous. Defendants further object to this interrogatory to

the extent it seeks information that is protected by the applicable attorney-client and attorney work product privileges.

Subject to and without waiving their objections, Defendants will identify current or former employees that may have relevant information regarding the decision to withdraw the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use from the market:

1.    Paul Acito.

2.    Eileen Hunter.

3.    Jason Jones.

4.    Marisa Kowalsky.

5.    Tom Lavalle.

6.    Shawn Lowry.

7.    Matthew Michael.

8.    Doug Moses.

9.    Brian Myers.

10.    Kevin Rhodes.

Additionally, a notice of the discontinuation of CAEv2 sales was sent to various recipients.  An example of such notice can be found at 3M_MDL000281263.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 5:

Please identify any warnings, guidance, recommendations, instructions for use, or testing data that you provided to the U.S. Government regarding the 3M Earplugs, including risks or defects associated therewith.

## RESPONSE TO INTERROGATORY NO. 5:

Defendants object to the terms "guidance" and "recommendations" as vague and ambiguous. Defendants further object to this interrogatory as duplicative and cumulative of previous document requests. Defendants further object to this interrogatory to the extent "any warnings, guidance, recommendations, instructions for use, or testing data that you provided to the U.S. Government regarding the 3M Earplugs" seeks all information regarding the military's participation in product development prior to completing discovery from the government. Subject to and without waiving their objections, Defendants respond as follows based on investigation and information identified to date.

At least as of 1997, the U.S. Government began working with ISL and Aearo on developing what would become the Combat Arms Earplug version 2. Defendants have had numerous oral and written communications with the U.S. Government regarding the Combat Arms Earplug version 2. Among other things,

14

Defendants met with U.S. Government employees, including Doug Ohlin, to discuss the military's desire for a dual-ended non-linear earplug, which would become the Combat Arms Earplug version 2.

Defendants discussed potential designs of that earplug with U.S. Government employees, including Doug Ohlin, and the government's desire to shorten the proposed length of the earplug to, among other things, fit into a military carrying case. (*E.g.*, U.S. Government Production, Request to change carry case due to CAE not fitting A2.pdf at 1); (U.S. Government Production, Email re CAE and shortened design - E1_A1.pdf at 1-2); (3M_MDL000192859 - 3M_MDL000192860); (3M_MDL000005285 - 3M_MDL000005290); (Oct. 8, 2015 Berger Dep. Tr. at 109:6-110:1)

Defendants discussed with employees of the U.S. Government the attenuation performance of the earplug, and that certain individuals may need to roll back the flanges on the unused end of the earplug to achieve a proper fit. For example, Elliott Berger testified as follows during his October 2015 deposition:

> Q: Now, what was the justification for doing a retest? Was it the change in fitting procedures?
>
> A: As I said, we looked at the original results. We found that multiple subjects were highly variable. For a sealed plug, it is important that -- for a premolded plug that's

sealed, it's important that you have a deep and consistent seal to get proper protection, we were not achieving that. We decided to look at alternative instructions, which were then the instructions that we delivered with the product. We also discussed this at the time with the military because we were doing this to meet the customer requirements. The Army was unhappy with the original design, not for any reason having to do with the plug, but because it wouldn't fit in a carrying case that they were using. And so they had asked us to shorten the earplug to fit in this carrying case and we discussed the ramifications with them, the need for changing the fitting instructions and the problems that that created.

Q: I'm sorry. You discussed this with the Army?

A: Yes.

Q: You discussed with them the fact that you were folding back the flange to test the plug?

A: Yes.

Q: With whom In the Army did you discuss this?

A: Doug Ohlin.

Q: Anybody else?

A: He was the principal contact at this point on this project.

Q: When did you talk to Mr. Ohlin about this?

A: At the time it was occurring.

Q: In 2000?

A: Yes.

In addition to directing key product design decisions, and conducting its own product testing, the U.S. Government also made decisions regarding how to package the Combat Arms Earplug version 2, and what instructions would be included with the earplugs. (3M_MDL000018577); (3M_MDL000017330). The U.S. Government drafted the instructions issued to service members with the Combat Arms Earplug version 2, and included information regarding whether to fold back flanges on the non-used end prior to insertion. (U.S. Government Production, VID Request for wallet size card C1 and C3.pdf); (3M_MDL000084664-

3M_MDL000084665);           (3M_MDL000013298);           (3M_MDL000189012);

(3M_MDL000018430)

Additionally, the documents produced pursuant to the agreed TAR protocol

contain numerous communications between Defendants and the U.S. Government

regarding the Combat Arms Earplug version 2, including, for example:

3M_MDL000013301;                    3M_MDL000011927-3M_MDL000011943;

3M_MDL000001703;                    3M_MDL000013298-3M_MDL000013300;

3M_MDL000258039;                    3M_MDL000257843-3M_MDL000257844;

3M_MDL000236201;      3M_MDL000013973;      3M_MDL000007732-

3M_MDL000007766; 3M_MDL000362770.

Additionally, Defendants refer Plaintiffs to Defendants' response to

Interrogatory Nos. 9 and 15, which also contain information regarding the

government's participation in the design, development and testing of the Combat

Arms Earplug version 2.  Discovery in this case is ongoing, including discovery from

the military and other third parties.  Defendants reserve the right to supplement this

response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 6:**

Please describe and identify all complaints you received regarding the 3M
Earplugs.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object to the term "complaints" as vague and ambiguous. Defendants further object to this interrogatory as unduly burdensome to the extent it seeks information in documents beyond those produced according to the agreed TAR protocol.  Subject to and without waiving their objections, Defendants will identify documents identified to date pursuant to the agreed TAR protocol that may be responsive to this interrogatory, and refer plaintiffs to the following documents:
3M_MDL000096146;                           3M_MDL00007497-3M_MDL000007511;
3M_MDL000017328;                           3M_MDL000017336-3M_MDL000017337;
3M_MDL000044908-3M_MDL000044909;                           3M_MDL000264760-
3M_MDL000264763;           3M_MDL000011948;           3M_MDL000257846;
3M_MDL000528229;           3M_MDL000264257;           3M_MDL000285047;
3M_MDL000380137.

Additionally, 3M maintains a Customer Feedback Resolution database ("CFR") that tracks incoming customer complaints as well as the resolution of those complaints.   An export of the CFR database is available at Bates numbers: 3M_MDL000294555; 3M_MDL000374873.

Discovery in this case is ongoing, including discovery from the military and other third parties.   Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 7:

Please identify any person or entity not a party to this litigation that received a percentage of sales, profits, income, or other royalty on the sale of 3M Earplugs, together with the amounts and dates of any such payments, and any contract or agreement setting forth the rights and obligations of you or any other entity relating to such payments.

## RESPONSE TO INTERROGATORY NO. 7:

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any person or entity" that may have "received a percentage of sales, profits, income, or other royalty on the sale of 3M Earplugs," which, read literally, would include, among other things, every downstream seller of the earplugs at issue.  For similar reasons, Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks "the amounts and dates of any such payments."

Subject to, and without waiving their objections, Defendants identify the French-German Research Institute Saint Louis ("ISL") as an entity that received royalty payments from sales of Combat Arms Earplugs version 2.  The licensing agreement with ISL is available at 3M_MDL000184939.  Pursuant to the terms of that licensing agreement, Aearo paid a royalty of two percent of the Net Selling Price for certain product sales.

In addition, Defendants have distribution relationships with various entities who sold Combat Arms Earplug version 2. Those entities are identified in documents available at: 3M_MDL000393649; 3M_MDL000393648; 3M_MDL000393647; 3M_MDL000393646; 3M_MDL000393651.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 8:**

For all of your sales of 3M Earplugs to the U.S. Government, please identify the purchasing entity of the U.S. Government, to whom the order was placed, the date of the order, who fulfilled the order, the quantity sold, the price, the sales representative for 3M associated with the sale, and the location where the U.S. Government took delivery.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendants object to this interrogatory as unduly burdensome to the extent it seeks voluminous sales information that is equally available to both parties from the documents produced in this litigation. Subject to, and without waiving their objections, Defendants will identify relevant sales data bearing Bates numbers: 3M_MDL000393649; 3M_MDL000393648; 3M_MDL000393647; 3M_MDL000393646; 3M_MDL000393651.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 9:

Please describe any involvement of the U.S. Government in the development or testing of the 3M Earplugs prior to the U.S. Government's first purchase of 3M Earplugs.

## RESPONSE TO INTERROGATORY NO. 9:

Defendants object to the phrase "any involvement" as vague, ambiguous and unduly burdensome. Defendants further object to this interrogatory as duplicative and cumulative of previous document requests. Defendants further object to this interrogatory to the extent "any involvement of the U.S. Government in the development or testing of the 3M Earplugs prior to the U.S. Government's first purchase of 3M Earplugs" seeks all information related to the government's participation in product design and development prior to completing discovery from the government. Defendants reserve the right to supplement their answer to this interrogatory in the normal course of discovery and in line with the Case Management and Scheduling Orders agreed to by the parties given that discovery is still ongoing, including discovery from the government. Subject to and without waiving their objections, Defendants state as follows.

The United States military, via its purchasing entity, the Defense Logistics Agency ("DLA") issued a Medical Procurement Item Description ("MPID") in soliciting bids from contractors. The MPID specified military unique, double-ended earplugs suitable for use as hearing protectors for military personnel in chronically noisy environments, that should be designed to provide protection from the impulse noises created by firearms, while allowing the wearer to hear normal speech such as voice commands on the battlefield, and should be camouflage green or another suitable dark color.

Beginning at least as early as the mid-1990's, the U.S. Government performed, commissioned, and/or reviewed studies and testing on the development of non-linear earplugs. For example, a report issues by USACHPPM titled "Just the Facts … The Combat Arms Earplugs" references "[t]esting at a U.S. military facility" performed in 1995 that "found th[e] non-linear earplug protective up to 190dBP." (*See* 3M_MDL000055849-50) (citing Johnson, D., "Nonlinear Earplug Study," Research Project Conducted by EG&G Management Systems, Inc., under Contract DAMD-17-93-C-3101 to the U.S. Army Medical Research and Material Command, June 1995)) That testing was performed by the U.S. Army Aeromedical Research Laboratory in Albuquerque, New Mexico, and cited in a May 1998 report, written by Daniel L. Johnson entitled Blast Overpressure Studies. (3M_MDL000325266) The report described a two-and-a-half year study on military

noise exposure, including exposures while wearing "a modification of the triple-flange E.A.R. ultrafit with a 2-mm diameter hole through its longitudinal axis," which modification "consisted of shortening the stem by 8mm and putting the filter designed at ISL St. Louis, France, in the front end of the plug." (3M_MDL000325266 at II-23).

In December 1996, George R. Garinther visited the French-German Institute at St. Louis (ISL).  A memo authored in March 1997 describing that visit details ISL's research into non-linear filters, and Garinther's participation in a series of impulse noise tests using hearing protection devices containing the ISL filter, including the Ultra-fit.  (U.S. Government Production, Garinther Trip Report To ISL France- E1.pdf)  The testing showed that the "non-linear earplug protected hearing as effectively as the Max-Lyte earplug that is normally worn by French soldiers." (*Id.*)  Garinther reported to the U.S. Army that "I have discussed these results with Felix Sachs and Doug Ohlin, of CHPPM, who also believe that non-linear earplugs should be included as a standard (or specialized) earplug in the military."

At least as of 1997, the U.S. Government began working with ISL and Aearo on developing what would become the Combat Arms Earplug version 2.  Defendants met with U.S. Government employees, including Doug Ohlin, to discuss the military's desire for a dual-ended non-linear earplug, which would become the Combat Arms Earplug version 2.  Defendants had numerous oral and written

24

communications with the U.S. Government regarding the development and testing of the Combat Arms Earplug version 2.

By April 1999, Ohlin had written a memorandum requesting to modify the military's earplug carrying case to accommodate the Combat Arms Earplug, stating: "the proposed Combat Arms Earplugs clearly <u>do</u> <u>not</u> fit in the current case and can be distorted and damaged in the storage process." (U.S. Government Production, Request to change carry case due to CAE not fitting A2.pdf at 1) Defendants discussed with U.S. Government employees, including Ohlin, the government's desire to shorten the proposed length of the earplug to, among other things, fit into the military carrying case. For example, on April 8, 1999, Brian Myers wrote an email to Ohlin stating:

> I spoke with Dick Knauer who believes that we can probably shorten the plug by the 1/4" required to fit your current container. The designer will look at this when he gets back from vacation on the 19th. It may help to expedite the redesign if we could get a storage container from you. (U.S. Government Production, Email re CAE and shortened design - E1_A1.pdf at 1)

On April 13, 1999, Ohlin wrote an email to other members of the military re "Letter for Combat Arms Earplug" stating:

> The production samples Aearo sent me were at least a
> quarter of an inch too long.  I took the liberty in cutting
> down the sample I'm sending you under a separate cover.
> The production samples didn't fit in the standard earplug
> carrying case, and didn't take advantage of a design that
> could minimize wind noise, and, most importantly, were
> hit by the Kevlar helmet chin strap when it was fasten.
> (U.S. Government Production, Email re CAE and
> shortened design - E1_A1.pdf at 2)

Other documents and testimony regarding the government's desire to shorten the
proposed length of the earplug include: (3M_MDL000192859 -
3M_MDL000192860); (3M_MDL000005285 - 3M_MDL000005290);
(3M_MDL000044587); (Oct. 8, 2015 Berger Dep. Tr. at 109:6-110:1).

In a memo titled "The Combat Arms Earplug" sent to the Army Chief of Staff,
Ohlin stated that:

> In partnership with the French-German Institute in Saint
> Louis, France and the Army Research Laboratory (ARL),
> USACHPPM has coordinated the introduction of a new
> earplug specifically designed for the dismounted Soldier
> or Marine.  …   The American military's contribution in

26

> this development effort has been to recommend an
> American-made earplug, the Ultrafit, to house the French
> filter, the color scheme and blast overpressure testing.
> (U.S. Government Production, Memo for CSA re CAE
> E1_A1.pdf)

A presentation attached to Ohlin's memorandum highlights that the shortened dual-ended plug "eliminates wind noise" and is "compatible with most headgear." (*Id.*)

In March 2000, Doug Ohlin authored a military "Information Paper" regarding "The Combat Arms Earplugs" that described the development history and advantages of the Combat Arms Earplug version 2. That paper includes the following information:

> Development History. In partnership with the French-
> German Institute in Saint Louis, France and the Army
> Research Laboratory (ARL), the U.S. Center for Health
> Promotion and Preventive Medicine (USACHPPM) has
> introduced a new earplug from an American manufacturer
> specifically designed for the dismounted solider or marine.
>
> Advantages. … [T]he earplug color scheme (yellow and
> olive drab) promotes stealth in the dismounted mode and
> monitoring of proper use in steady-state noise. … These

27

passive devices work without batteries, are easy to maintain, are compatible with military headgear and are relatively low cost when compared to electronic communication devices designed to protect against hazardous noise.

Defendants discussed with employees of the U.S. Government the attenuation performance of the earplug, and that certain individuals may need to roll back the flanges on the unused end of the earplug to achieve a proper fit. For example, Elliott Berger testified as follows during his October 2015 deposition:

Q: Now, what was the justification for doing a retest? Was it the change in fitting procedures?

A: As I said, we looked at the original results. We found that multiple subjects were highly variable. For a sealed plug, it is important that -- for a premolded plug that's sealed, it's important that you have a deep and consistent seal to get proper protection, we were not achieving that. We decided to look at alternative instructions, which were then the instructions that we delivered with the product. We also discussed this at the time with the military because we were doing this to meet the customer

requirements. The Army was unhappy with the original design, not for any reason having to do with the plug, but because it wouldn't fit in a carrying case that they were using. And so they had asked us to shorten the earplug to fit in this carrying case and we discussed the ramifications with them, the need for changing the fitting instructions and the problems that that created.

Q:  I'm sorry. You discussed this with the Army?

A:  Yes.

Q:  You discussed with them the fact that you were folding back the flange to test the plug?

A: Yes.

Q: With whom In the Army did you discuss this?

A: Doug Ohlin.

Q: Anybody else?

A: He was the principal contact at this point on this project.

Q: When did you talk to Mr. Ohlin about this?

29

A: At the time it was occurring.

Q: In 2000?

A: Yes.

Following Defendants' product testing in 2000, the U.S. Government continued to perform its own testing on the product. For example, in October 2001, Center for Disease Control employee William J. Murphy performed impulse peak testing on the Combat Arms Earplug version 2 using a 9mm handgun and M16 rifle, and reported the results of that testing to Doug Ohlin and others in the U.S. military. (3M_MDL000024875)  Additional product testing by the U.S. Government is described in Defendants' response to Interrogatory No. 15.

In addition to directing key product design decisions, and conducting its own product testing, the U.S. Government also made decisions regarding how to package the Combat Arms Earplug version 2, and what instructions would be included in the packaging. (3M_MDL000018577); (3M_MDL000017330). The U.S. Government drafted the instructions issued to service members with the Combat Arms Earplug version 2, and included information regarding whether to fold back the flanges on the non-used end of the earplug. (U.S. Government Production, VID Request for wallet size card C1 and C3.pdf); (3M_MDL000084664-3M_MDL000084665);

(3M_MDL000013298); (3M_MDL000189012); (3M_MDL000018430)  Ohlin also

provided Aearo with feedback from military personnel.  (3M_MDL000017328).

In a March 22, 2005 email to an Aearo employee, Ohlin listed the numerous

ways in which the CAEv2 had been "evaluated," "used extensively," "approved," and

"specified" by "the U.S. Armed Forces":

> The combat arms earplug has been evaluated during blast
> overpressure studies at White Sands Missile Range and at
> the Army Research Lab at the Aberdeen Proving
> Ground.  It is used extensively by the US Army and the
> Marines.  It has been approved by the DoD Hearing
> Conservation Working Group.  It appears in our Defense
> Occupational and Environmental Health Readiness
> System - Hearing Conservation application's lookup table
> of approved hearing protectors and in the Department of
> the Army Pamphlet 40-501, Hearing Conservation, 10
> December 1998.  Yes, I think you can say the combat arms
> earplug has been "evaluated and specified by the U.S.
> Armed Forces." (3M_MDL000257955)

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 10:**

Please identify the regulatory pathway by which the dual-ended Combat Arms earplugs (Version 2 CAEv.2) were approved onto any U.S. Government Approved Product List, specifying whether such approval was granted under "Other Transaction Authority," "Commercial-off-the-Shelf" or any other regulatory pathway through Defense Federal Acquisition Regulation or otherwise.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendants object to the phrase "regulatory pathway" as vague and ambiguous. Defendants further object to this interrogatory to the extent it seeks information regarding the military's purchasing decisions prior to completion of discovery from the government. Subject to, and without waiving their objections, Defendants refer Plaintiffs to the government procurement contracts that have been produced: 3M_MDL000000013; 3M_MDL000109405. Defendants also refer Plaintiffs to the procurement documents produced by the U.S. Government, which also relate to the government's authority to purchase the Combat Arms Earplugs version 2.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 11:**

Please identify any U.S. Government specifications, product descriptions, requirements, requests, directives, or communications for the design, testing, use, size, length, stem length, color, fit, or performance of any level-dependent or non-linear earplugs, including the 3M Earplugs.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks: (i) information regarding "any level-dependent or non-linear earplugs" other than Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use; or (ii) "any U.S. government specifications, product descriptions, requirements, requests, directives, or communications for the design, testing, use, size, length, stem length, color, fit, or performance of any level-dependent or non-linear earplugs," which, read literally, seeks voluminous information about an unknown number of products not at issue in this litigation. Defendants further object to this interrogatory to the extent is seeks "any U.S. government specifications, product descriptions, requirements, requests, directives, or communications for the design, testing, use, size, length, stem length, color, fit, or performance" prior to the completing discovery from the government.

Subject to and without waiving their objections, Defendants refer Plaintiffs to Defendants' responses to Interrogatory Nos. 5, 9 and 10. Defendants also refer Plaintiffs to the documents produced to date by the U.S. Government.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 12:

For any professional or industry organizations related to HPDs of which you are a member, please state the nature of such membership, the dates of such membership, and any funding you have provided to such organizations.

## RESPONSE TO INTERROGATORY NO. 12:

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding: (i) any organizations of which "you" are a member, which term is defined to include numerous entities and their present and former "officers, directors, executives, agents, representatives, employees, and/or attorneys," and thus, read literally in the context of this interrogatory, calls for the organizational ties of thousands of current and former employees not at issue in this litigation; and (ii) "the nature of such membership, the dates of such membership, and any funding you have provided to such organizations," which information would be burdensome to determine but is not relevant to any of the claims at issue in this litigation. Subject to and without waiving their objections, Defendants will identify the industry organizations related to hearing protection devices of which 3M Company is a member.

1.      Industrial Safety and Equipment Association.

2.      National Hearing Conservation Association.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 13:**

Please identify any scientists, audiologists, physicians, medical professionals, professional associations, or other organizations or persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any … persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD," which, read literally, would cover not only (i) any current or former employee who has ever discussed a hearing protection device, but also, among other things, (ii) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, and (iii) every attorney who has ever represented Defendants in litigation regarding a hearing protection device. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding

"any HPD" other than Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks "the amount of such compensation, … and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation."  Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify individuals identified to date that may have spoken about or promoted the Combat Arms Earplug version 2 or any like-design dual-ended earplugs sold by Defendants for civilian use at industry trade shows or in a marketing capacity.

1.   Elliott Berger.

2.   Mike Cimino.

3.   Mike Edwards

4.   Dawn Gasaway.

5.   Frank Gavin.

6.   Mike Harrison.

7.   Tim McNamara.

8.   Doug Ohlin.

9.   Laurie Wells.

10.   Brian Myers.

11.   Doug Moses.

12.   Marc Santoro.

13.   Ron Throndsen.

14.   Eric Miller.

15.   Ronda Notter.

16.   Pete Murphy.

17.   Marty Salon.

18.   Dave Savage.

19.   Theresa Schultz.

20.   Tom Thompson.

21.   Bill Venazza.

22.   Larry Mitsch.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 14:

Please identify any external experts, consultants, scientists, physicians, medical professionals, thought leaders, academics, or key opinion leaders, who you have compensated for work promoting or otherwise distributing information regarding the risk of auditory injury, and/or the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

## RESPONSE TO INTERROGATORY NO. 14:

Defendants object to the terms "thought leaders" and "key opinion leaders" as vague and ambiguous. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case, including because, read literally, it would cover not only (i) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, but also (ii) every consulting or testifying expert who has ever researched or opined on hearing loss or hearing protection devices in the context of litigation. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise," without any particular connection to the Combat Arms Earplug version 2, any like-design dual-ended earplugs sold by Defendants for civilian use, or the specific issues at issue in this litigation. Defendants further object to this interrogatory to the extent it seeks

information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity. Subject to and without waiving their objections, Defendants are not presently aware of any individuals responsive to this interrogatory beyond those identified in response to Interrogatory No. 13.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 15:**

Please identify all studies, including NRR, REAT, physical measurement, acoustic test fixture, walk-up, and impulse noise studies, regarding 3M Earplugs and any predecessor, successor, and/or alternative designs that use any aspect of the technologies used in the 3M Earplugs, including flanges, level dependence, or non-linearity technologies, mechanisms or filters, or that involved a comparison between an HPD's design and the design of the 3M Earplugs. For each study identified, please provide, if applicable, (i) the study's name and study number; (ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of Defendants in the study, including any direct or indirect financial support or compensation of any kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results, including final and draft reports, amendments to protocols, and any study data not included in the final study report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S. Government and the Bates number of those documents constituting such transmittal.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding

hearing protection devices other than the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use. Defendants also object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks voluminous information regarding each study—including "(i) the study's name and study number; (ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of Defendants in the study, including any direct or indirect financial support or compensation of any kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results, including final and draft reports, amendments to protocols, and any study data not included in the final study report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S. Government and the Bates number of those documents constituting such transmittal"—which would be unduly burdensome to compile but is equally available to both parties in the produced documents. Defendants further object to this interrogatory as overbroad and unduly burdensome to the extent it seeks information beyond the scope of the documents produced in response to the agreed TAR protocol, or seeks information regarding testing or other studies that are available in the publicly available literature, including the academic literature. Defendants further object to this interrogatory as premature to the extent it seeks

information regarding studies done by the military or other third parties because such discovery is ongoing. Further, to the extent this interrogatory seeks information regarding the transmission of testing data between Defendants and the U.S. Government, Defendants further object to this interrogatory as duplicative of Interrogatories No. 5 and 9 and refer Plaintiffs to Defendants' answers to Interrogatories No. 5 and 9. Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify non-publicly available attenuation testing they are presently aware of related to the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

1.  July 1995, insertion loss test on predecessor Combat Arms Earplug version 2. (3M_MDL000325266) (May, 1998, Blast Overpressure Studies, Daniel L. Johnson, U.S. Army Aearomedical Research Laboratory).

2.  December 1996, ISL Impulse Noise Testing on predecessor Combat Arms Earplug, G. Garinther (U.S. Government Production, Garinther Trip Report to ISL France - E1.pdf).

3.      1997, ISL Impulse Noise Testing on predecessor Combat Arms Earplug version 2. (3M_MDL000016506).

4.      December 8, 1999, ISL Impulse Noise Testing, Institute Saint Louis Laboratory, Pascal Hamery.

5.      January 25, 2000 REAT test (Test ID: 213015), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  8 test subjects. (3M_MDL000107680).

6.      January 25, 2000 REAT test (Test ID: 213016), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 test subjects. (3M_MDL000188143).

7.      May 9, 2000 REAT test (Test ID: 213017), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 Test subjects. (3M_MDL000195517).

8.      October 2001, impulse peak testing on the Combat Arms Earplug version 2 using a 9mm handgun and M16 rifle. William J. Murphy. (3M_MDL000024875).

9.      June 15, 2004 REAT test (Test ID:  215009), EARCAL Laboratory, Indianapolis, Indiana.  10 test subjects.  (3M_MDL000319275).

10.     March 2005, Level Dependent Hearing Protection and Distortion Otoacoustic Emissions (DPOAE) After Small Arms Fire.   LTC

Lorraine Babeu, Ph.D, U.S. Army Research Laboratory, Human Research and Engineering Directorate, Aberdeen Proving Ground, Maryland.  (3M_MDL000393650).

11. March 2005, CAE Aearo Prototypes, ISL measurements March 2005, Pascal Hamery and Armand Dancer.  (3M_MDL000232247).

12. June 15, 2005 REAT test (Test ID: 215511), EARCAL Laboratory, Indianapolis, Indiana.  5 Test subjects.  (3M_MDL000009701).

13. June 30, 2005 REAT test (Test ID: 215512), EARCAL Laboratory, Indianapolis, Indiana.  5 Test subjects.  (3M_MDL000016445).

14. October 28, 2005 REAT test (Test ID: 215515), EARCAL Laboratory, Indianapolis, Indiana.  3 Test subjects.  (3M_MDL000009728).

15. April 20, 2006 REAT test (Test ID: 215012), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 Test subjects.  (3M_MDL000006960).

16. March 2007, impulse test, Idaho National Laboratory, Idaho Falls, Idaho, James Lovejoy.  Prepared for the U.S. Department of Energy, Office of Nuclear Energy Under DOE Idaho Operations Office.  (3M_MDL000357176).

17. April 26, 2007 REAT test (Test ID:  215516), EARCAL Laboratory, Indianapolis, Indiana.  3 Test Subjects.  (3M_MDL000195585).

18.     June 12, 2007, Experimental Evaluation of Different Kinds of Level-Dependent Earplugs (with Slits and Defaults) and Level-Independent Earplugs.  Hamery, P., De Mezzo, S.  (3M_MDL000193696).

19.     June 29 - July 4, 2008 - "Empirical Evaluation using Impulse Noise of the Level-Dependency of Various Passive Earplug Designs."  Meeting of the Acoustical Society of America, Elliott Berger (EARCAL Laboratory) and Pascal Hamery (ISL).  (3M_MDL000066439).

20.     January, 2009, Air Force Research Laboratory, Wright-Patterson Air Force Base, Dayton, Ohio, Capt. Brian Hobbs, Maj. Dean Hudson, Richard McKinley, Dr. Douglas Brungart, Julie Parisi, and James Hamil.  (3M_MDL00005379).

21.     June 16, 2009 REAT test (Test ID:  Q1930A), Michael & Associates, State College, Pennsylvania, Kevin Michael.   10 Test subjects. (3M_MDL000005607).

22.     June 16, 2009 REAT test (Test ID:  Q1929A), Michel & Associates, State College, Pennsylvania, Kevin Michael.   10 Test subjects. (3M_MDL000005607).

23.     March 28, 2012 REAT test (Test ID:  Q2558A), Michael & Associates, State College, Pennsylvania, Kevin Michael.   10 Test subjects. Sponsored by Moldex.  (3M_MDL000005607).

24. March 28, 2012 REAT test (Test ID:  Q2559A), Michael & Associates, State College, Pennsylvania, Kevin Michael.   10 Test subjects. Sponsored by Moldex.  (3M_MDL000005607).

25. December, 2012, Army Research Laboratory, Aberdeen Proving Ground, Maryland, Mary Binseel, Kara Cave, Joel Kalb, Tomasz Letowski.                       (available                       at https://apps.dtic.mil/dtic/tr/fulltext/u2/a609344.pdf).

26. January, 2014, U.S. Marine Corps Level-Dependent Hearing Protector Assessment:  Objective Measures of Hearing Protection Devices, Angelique   a.   Scharine   and   Rachel   A.   Weatherless. (3M_MDL000012099).

27. December 23, 2014, Measurement of Impulse Peak Insertion Loss from two Acoustic Test Fixtures and Four Hearing Protector Conditions, William   J.   Murphy   et   al.   (available   at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4617327/?report=printable).

28. July 22, 2015 REAT test (Test ID:  I15103), EARCAL Laboratory, Indianapolis, Indiana, Michael E. Stergar and Elliott Berger.  5 Test subjects.  (3M_MDL000009469).

Defendants also refer Plaintiffs to the documents produced by the U.S. Government, which contain reports and correspondence regarding testing. Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 16:

Please identify all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity, including (i) the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs.

## RESPONSE TO INTERROGATORY NO. 16:

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information, including publicly available information equally accessible to both parties, regarding hearing protection devices developed by entities other than Defendants.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding hearing protection devices other than the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

To the extent this interrogatory seeks information regarding "the person that developed or marketed" the Combat Arms Earplug version 2 and any like-design

dual-ended earplugs sold by Defendants for civilian use, or "the date you became aware of such HPD," Defendants refer Plaintiffs to Defendants' answer to Interrogatories No. 1, 5, 9 and 13.  To the extent this interrogatory seeks information regarding "any study or testing performed by you or any other person" on the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use, Defendants refer Plaintiffs to Defendants' answer to Interrogatory Nos. 9 and 15.  To the extent this interrogatory seeks information regarding "communications between you and the U.S. Government" regarding the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use, Defendants refer Plaintiffs to Defendants' answer to Interrogatory Nos. 5 and 9.

Subject to and without waiving their objections, Defendants will identify the passive level-dependent or non-linear hearing protection devices developed or marketed by Defendants.

1. The Combat Arms family of products, including versions 1-4.1, and the like-design dual-ended earplugs sold by Defendants for civilian use.

2. The Ultra9000 earmuff.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 17:**

Please identify all persons involved in your decision to partner with Access: Supports for Living (formerly known as New Dynamics) in or around 2009, including persons involved in negotiating or approving any agreement between you and New Dynamics, together with their role therein.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendants object to the phrase "involved in your decision" as vague and ambiguous.   Subject to and without waiving their objections, Defendants will identify the individuals identified to date with primary responsibility for entering into distribution agreement with Access: Supports for Living (formerly known as New Dynamics) in or around 2009 related to the distribution of the Combat Arms Earplug version 2.

1. Doug Moses; sales and marketing; lead on New Dynamics agreement.

2. George Foley; disability programs.

3. Brian Myers; product development and marketing.

4. Jeff Hamer; product development and testing.

5. Marc Santoro; marketing and advertising.

6. Jason Jones; manager of hearing product portfolio.

7. Elliott Berger; product development and testing.

Discovery in this case is ongoing, including discovery from the military and other third parties.   Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 18:**

Please identify any persons involved in any activities or efforts on your behalf regarding the manufacture or assembly of the 3M Earplugs by Source America and New Dynamics.

**RESPONSE TO INTERROGATORY NO. 18:**

Defendants object to the phrase "involved in any activities or efforts on your behalf regarding the manufacture or assembly of the 3M Earplugs by Source America and New Dynamics" as vague, ambiguous and unduly burdensome. Subject to and without waiving their objections, Defendants refer Plaintiffs to the individuals identified in response to Interrogatory No. 17.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 19:**

Please identify all persons involved in any effort by you to have the 3M Earplugs added to the Ability One program, including any related assessments of potential competing HPDs.

**RESPONSE TO INTERROGATORY NO. 19:**

Defendants object to the phrases "involved in any effort by you to have the 3M Earplugs added to the Ability One program," and "related assessments of potential competing HPDs," as vague and ambiguous. Subject to and without

waiving their objections, Defendants refer Plaintiffs to the individuals identified in response to Interrogatory No. 17

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 20:**

Please describe all potential commercial and/or civilian uses of the 3M Earplugs.

**RESPONSE TO INTERROGATORY NO. 20:**

3M objects to the phrase "all potential commercial and/or civilian uses of the 3M Earplugs" as vague and ambiguous.  Subject to and without waiving their objections, Defendants identify the following commercial and/or civilian uses for the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use: such earplugs are principally used as hearing protection devices, and include a dual-mode feature enabling users to choose the required level of protection based on the type of activity that requires hearing protection.

**INTERROGATORY NO. 21:**

Please describe the similarities and differences with regard to design, performance, and use between the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured, and/or sold by Defendants to the U.S.

Government and any like-design earplugs marketed or sold by you for civilian use or non-military use, including the ARC Earplugs.

**RESPONSE TO INTERROGATORY NO. 21:**

Subject to and without waiving their objections, Defendants state that the only difference between the Combat Arms Earplug version 2 and the ARC Earplugs is the color of the flanges and, for certain models, the flash fire rating.

**INTERROGATORY NO. 22:**

Please describe any oversight, control, or authority the U.S. Government had over you during the design, development, study, and testing of the 3M Earplugs.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendants object to terms "oversight, control, or authority" as vague and ambiguous.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case, including because, read literally, it would cover not only the U.S. Government's participation in the design and development of the Combat Arms Earplug version 2, but also any other "oversight, control, or authority" the U.S. Government incidentally had over Defendants during the relevant time period, including, for example, the U.S. Government's various authorities as described in the U.S. Constitution and federal statutes.  Subject to and without waiving their objections, Defendants refer Plaintiffs to Defendants' responses to Interrogatory Nos. 5, 9 and 11, which describe the U.S.

Government's participation in the design and development of the Combat Arms Earplug version 2.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 23:

Please (i) identify all versions of the July 10, 2000 memorandum entitled "How Folding the Flanges Back Affects REAT Results of the Ultrafit Earplug End of the Combat Arms Plug" (Bates 3M_MDL000005285) (the "Flange Report"), (ii) identify all authors and reviewers of the Flange Report, (iii) describe the circumstances underlying the creation of the Report, and (iv) the identity of any third party, including the U.S. Government, with whom you shared any version of the Flange Report, including the date and identity of any such communication or transmittal.

## RESPONSE TO INTERROGATORY NO. 23:

Defendants object to this interrogatory as overbroad and unduly burdensome to the extent it purports to impose upon Defendants document production obligations beyond those contained in the agreed TAR protocol. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportionate to the needs of this case to the extent it seeks the identity of all "reviewers of the Flange Report," which, read literally, would cover not only every current or former employee who read the report but also Defendants' attorneys and other external vendors who have reviewed that document in connection with litigation. Defendants further object to this interrogatory as overbroad, unduly burdensome and

disproportionate to the needs of this case to the extent it seeks "the identity of any third party… with whom you shared any version of the Flange Report," which, read literally, would cover not only attorneys and other external vendors, but also thousands of plaintiffs in lawsuits that have received the document in connection with this and other litigation.  Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify all presently identified versions of the flange memo, the authors of that document, and the circumstances under which it was created.  Defendants are presently aware of a single version of the flange memo, version 1.2.  It was authored by R. W. Kieper and E. H. Berger.  The document was authored after Kieper and Berger completed three REAT tests on the Combat Arms Earplug version 2 between January and May 2000 to document the effect of folding back the flanges on the non-used side of the earplug.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 24:

Please identify where and when the 3M Earplugs were designed, developed, tested, and studied.

## RESPONSE TO INTERROGATORY NO. 24:

Defendants object to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks information regarding all places and times in which the Combat Arms Earplug version 2 and the like-design dual-ended earplugs sold by Defendants for civilian use have been "designed, developed, tested, and studied," which, read literally, would include numerous instances of testing and/or studying by third parties outside of Defendants' control, and also instances in which the earplugs were reviewed by attorneys in connection with litigation. Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity. Subject to and without waiving their objections, Defendants refer Plaintiffs to Defendants' responses to Interrogatory Nos. 5, 9, 11 and 15.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 25:**

Please describe any known defects of the 3M Earplugs.

**RESPONSE TO INTERROGATORY NO. 25:**

There are no known defects with the Combat Arms Earplug version 2 and the like-design dual-ended earplugs sold by Defendants for civilian use.  The Combat Arms Earplug version 2 conforms with the specifications and design decisions made by and with the U.S. Government.

**INTERROGATORY NO. 26:**

For the 3M Earplugs, please identify and describe all (i) failure mode and effect analyses; (ii) hazard analyses, assessments, or evaluations; (iii) risk analyses, assessments, or evaluations; and (iv) quality assurance analyses, assessments, or evaluations, whether formal or informal, conducted under such name or another, and conducted by you or any other person, together with all persons involved in such analyses, assessments, and evaluations.

**RESPONSE TO INTERROGATORY NO. 26:**

Defendants object to this interrogatory as overbroad, unduly burdensome, disproportionate to the needs of this case, vague and ambiguous to the extent is seeks "all" analyses, assessments, or evaluations, "whether formal or informal, conducted under such name or another, and conducted by you or any other person."  Defendants further object to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks information beyond that related to the Combat Arms Earplug version 2 and the like-design dual-ended earplugs sold by Defendants for civilian use.

Subject to and without waiving their objections, Defendants respond to this interrogatory as follows. Defendants employed a quality assurance program to test such earplugs during the production process. Defendants' quality assurance testing involved, among other things, puff testing for conformity with specifications. The supervisor of the quality assurance process is Annette Childress. Additional information regarding quality assurance evaluations can be found at: 3M_MDL000272553.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

DATED:  October 11, 2019

By: *Kimberly Branscome*

Kimberly Branscome
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tel.:  (213) 680-8400
Email: kimberly.branscome@kirkland.com

*Attorney for Defendants 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC*

## VERIFICATION

**STATE OF MINNESOTA**

**COUNTY OF RAMSEY**

_Sarah Grauze_ , being duly sworn upon oath, deposes and says she is authorized pursuant to applicable law and rules to verify, on behalf of 3M Company, the foregoing:

### DEFENDANT 3M COMPANY'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

and that the same are hereby verified on behalf of 3M Company.

By: _[signature]_

Printed Name: _Sarah Grauze_

Its: _Treasurer and Vice President Finance_

SWORN TO AND SUBSCRIBED before me this _11_ day of _October_, _2019_, by _Sarah Grauze_ , as _Treasurer and Vice President_ of _3M_ who is personally known to me or who produced _Drivers License_ as identification and who did/did not take an oath.

KATIE L SCINOCCA
Notary Public
Minnesota
My Commission Expires
Jan 31, 2023

_[signature]_

Notary Public, State of _Minnesota_

Printed Name: _Katie L. Scinocca_

My Commission Expires: _January 31, 2023_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 11, 2019, a true and correct copy of the foregoing:

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

was served as follows:

☒ **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

Bryan F. Aylstock, Lead Counsel
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

Virginia E. Anello, Discovery & ESI Subcommittee
Douglas & London, PC
59 Maiden Ln, 6th Floor
New York, NY 10038
Tel.: (212) 566-7500
vanello@douglasandlondon.com

Kathering E. Charonko, Discovery & ESI Subcommittee
Bailey Glasser, LLP
209 Capitol Street

Taylor C. Bartlett, Discovery & ESI Subcommittee
Henninger Garrison Davis LLC
2224 1st Avenue North
Birmingham, AL 35203

Charleston, WV 25301
Tel.: (304) 345-6555
kcharonko@baileyglasser.com

J. Nixon Daniel, Discovery & ESI
Subcommittee
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, FL 35202
Tel.: (850) 469-3306
jnd@beggslane.com

Tel.: (205) 301-6115
taylor@hgdlawfirm.com

David R. Buchanan, Discovery & ESI
Subcommittee
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (973) 639-9100
dbuchanan@seegerweiss.com

DATED:  October 11, 2019

*/s/ Kimberly Branscome*
Kimberly Branscome