# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

This matter came before the Court on March 24, 2020, to address a dispute between the parties pertaining to six authorizations Defendants have requested the Bellwether Plaintiffs[1] execute for Defendants to obtain discovery from third parties.  ECF No. 1042.  Plaintiffs have objected to the authorizations as drafted. The Court construes Defendants' request for court intervention as a motion to compel, which is ripe for consideration. For the reasons discussed below, Defendants' motion to compel is due to be **GRANTED IN PART and DENIED IN PART**.

_____

[1] On February 27, 2019, in accordance with the Bellwether Selection Process outlined in Pretrial Order No. 23 (ECF No. 922), as amended on January 25, 2020 in Pretrial Order No. 24 (ECF No. 934), 25 individual plaintiffs (including 5 alternates) were selected as the first Bellwether Plaintiffs for this litigation.  ECF No. 1015.

# I. BACKGROUND

On February 25, 2020, the Court entered Pretrial Order No. 28, which governs the discovery and trial schedule for the Bellwether Plaintiffs' cases. ECF No. 1009. Included in Pretrial Order No. 28 was the parties' agreement that the Bellwether Plaintiffs provide authorizations for Defendants to obtain records through discovery. *Id.* at 1. The parties exchanged draft and redlined versions of authorizations for six discovery categories: (1) medical records; (2) tax returns; (3) employment records; (4) education records; (5) health insurance records; and (6) disability benefits records. Plaintiffs challenged the relevance and proportionality of the discovery sought by Defendants using the proposed authorizations.

On March 16, 2020, during the parties' biweekly leadership call, Defendants raised the instant discovery matter with the Court. ECF No. 1042. The undersigned scheduled a telephonic hearing for March 24, 2020, to address the matter and ordered the parties to submit letter briefs in support of their respective positions. *Id.* The parties submitted letter briefs, and a telephonic hearing was held at which counsel for the parties presented argument.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery limited to nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Determining whether discovery is proportional requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

This Court has "broad discretion … to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 26(b)).  The Court may compel a party to execute an authorization necessary for the requesting party to obtain discovery within the opposing party's "control."  *See, e.g.*, *Scott v. City of Bismarck*, 328 F.R.D. 242, 250 (D.N.D. 2018) ("[T]he court's authority to compel execution of releases is no different from its authority to

compel compliance with [Federal Rule of Civil Procedure 34] generally.");

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 229 (N.D. Tex. 2016) ("The Court is persuaded … that Rule 34, along with [Federal Rule of Civil Procedure 37], empowers courts to compel parties to sign written releases or authorization forms consenting to the production of various documents."); *Nuskey v. Lambright*, 251 F.R.D. 3, 8 (D.D.C. 2008) ("Courts regularly order plaintiffs to sign authorizations for the release of medical information from health care providers where, as here, those records are relevant to the plaintiff's claims; this procedure has been viewed as the most expeditious and efficient way for the opposing party to obtain pertinent medical records.").

## III. DISCUSSION

For the reasons stated at the March 24, 2020, hearing on the instant motion, which are fully incorporated herein, the Court concludes that Defendants are entitled to an order compelling the Bellwether Plaintiffs to execute some, but not all, of the proposed authorizations and that modifications are warranted. The Court will address each authorization in turn.

## A. Medical Records

Defendants seek an authorization that would permit the production of the entirety of the Bellwether Plaintiffs' medical records. Plaintiffs object to the authorization's breadth, which would give Defendants access to the Bellwether Plaintiffs' confidential mental health records. Defendants argue the Bellwether Plaintiffs have put their mental health in issue by seeking damages for mental anguish, distress, and loss of enjoyment of life. ECF No. 704 at 89.

Mental health records are generally subject to the psychotherapist-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (recognizing the psychotherapist-patient privilege in federal common law); *id.* at 12 ("That it is appropriate for the federal courts to recognize a psychotherapist privilege under Rule 501 is confirmed by the fact that all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege."). State privilege law applies in this case, however, because state law provides the rule of decision regarding the product liability claims advanced by Plaintiffs. *See* Rule 501 Fed. R. Evid. While state privilege law applies in this case application of state law makes no difference because the law in every state, including Florida, recognizes that "[a] patient has a privilege to refuse to disclose, and to prevent any

other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition … " *Alexander v. Smith,* 2015 WL 12942496 (N.D. Fla. Dec. 18, 2015)(*quoting* Fla. Stat. § 90.503(2)).

The issue here is not whether Plaintiffs' mental health records are privileged but whether Defendants have shown that the plaintiffs have placed their mental condition in controversy. The issue of waiver, of course, is an issue of federal law. The majority of federal courts that have addressed this issue have held that a party does not place his or her mental condition in controversy merely by requesting damages for mental anguish or "garden variety" emotional distress. *See Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553 (N.D. Ga. 2001) (collecting cases); *see also Barnello v. Bayview Loan Serv., LLC*, No. 6:14-cv-1383-Orl-41TBS, 2016 WL 11565523, at *3 (M.D. Fla. Mar. 11, 2016); *Ortiz-Carballo v. Ellspermann*, No. 5:08-cv-165-.Oc-10GRJ, 2009 WL 961131, at *2 (M.D. Fla. Apr. 7, 2009); *Turner v Imperial Stores,* 161 F.R.D. 89 (S.D. Cal. 1995); *In re Jolly Roger Cruises & Tours, S.A.,* No. 10-23257-CIV, 2011 WL 1467172, at *4 (S.D. Fla. April 18, 2011)("[c]ourts considering the issue have repeatedly held that where a plaintiff makes a 'garden variety' claim of emotional distress, without more, that plaintiff has not placed her mental

condition at issue"); *Diehl v. Bank of Am. Corp.,* No. 3:09-CV-1220-J-25MCR, 2010 WL 4829970, at *2, (M.D. Fla. Nov. 19, 2010)("[i]n order to place a party's mental condition in controversy the party must allege a specific mental or psychiatric disorder or intend to offer expert testimony to support their claim of emotional distress.")

So too here. Plaintiffs' request for damages to compensate mental anguish, distress, and loss of enjoyment of life are "garden variety" claims that do not place in controversy Plaintiffs' mental health records and thus open the door to discovery on this sensitive area. The Court therefore concludes that Defendants must explicitly limit the medial authorization to exclude the production of mental health records.[2]

After the hearing in a supplemental letter brief Defendants pointed out that in Pretrial Order No. 25, the Court stated that plaintiffs' medical records the VA was producing would include mental health records. Defendants

---

[2] At the telephonic hearing, Plaintiff stated that at this juncture they were not aware of any relevant mental diagnoses and did not intend to offer expert testimony on an award of damages for mental anguish, distress, and loss of enjoyment of life. Defendants, however, may: (1) propound discovery on the individual Bellwether Plaintiffs to determine if any has a diagnosed mental health condition; and (2) ask counsel for the Bellwether Plaintiffs whether they intend on offering expert testimony relevant to the above-mentioned damages or a mental health condition. If there is such a diagnosis or an intent to offer expert testimony, Defendants would be entitled *at that time* to discovery on this issue (and consequently the execution of an authorization).

say the medical records Defendants will be obtaining by subpoena through the authorizations should be consistent.

The issue of whether mental health records should be included with the other medical records is different in context and procedurally. First, before PTO 25 was issued the parties never briefed the Court on the law concerning the issue of whether plaintiffs' mental health condition had been placed in controversy in this case, entitling Defendants to obtain these records. But more importantly, the context in which PTO 25 was entered explains the Court's rational at that point. The issue of redacting mental health records was raised in the context of the parties' joint VA *Touhy* requests. The VA had expressed concerns that due to the volume of requests if the VA was required to redact or remove certain information from a plaintiff's medical records (such as mental health records)—as opposed to producing the records as a whole—the VA would not be able to process any volume of requests in a timetable that would meet the schedule this Court established because extracting selected documents from the file would require the VA to hand review every document. It was in this context that the Court authorized the production of the whole medical file, even if the file contained mental health records.  The same considerations are not present here in obtaining records from non-

governmental medical providers via subpoena through use of medial

authorizations. The bottom line is that PTO 25 does not change the Court's

determination that Plaintiffs' have not waived the privilege applicable to

their mental health records simply because they have alleged claims for

mental anguish, distress and loss of enjoyment of life.

Plaintiffs also object to the unlimited temporal scope of the

authorization because it would entitle Defendants to medical records "from

the cradle to" present.  In view of Defendants' access to the Bellwether

Plaintiffs' military records, Plaintiffs propose limiting the production of any

medical records to those created after the Bellwether Plaintiffs' military

service.  The undersigned disagrees.  The central question in this case is

what caused each plaintiff's hearing loss, and the trials on Bellwether

Plaintiffs' claims is no exception.  The Bellwether Plaintiffs' adolescent

medical records, as well as those created more recently, will likely include a

host of information as to the cause of each Bellwether Plaintiff's medical

conditions.  These records also likely will be essential to the ability of

Defendants' medical experts to analyze the cause and nature of the

hearing losses alleged in this case and thus will be important to their ability

to render fully informed opinions.

Accordingly, Defendants' motion to compel the Bellwether Plaintiffs to execute a medical records authorization is **GRANTED IN PART**. Bellwether Plaintiffs must execute an authorization that would allow for the production of medical records from before, during, and after their military service to the extent they are not government records, but the authorization must explicitly prohibit the disclosure of their mental health records.

## B.    Tax Returns

Defendants seek an authorization that would permit the production of the entirety of the Bellwether Plaintiffs' tax returns.  Defendants argue this is relevant to the Bellwether Plaintiffs' claims for lost wages and loss of earning capacity.   Plaintiffs assert this should be addressed on a case-by-case basis, where each plaintiff raises these types of damages and the production of less-intrusive income verification documents (such as annual W-2's) is inadequate.

"[T]ax returns and private financial data enjoy some protection, and most courts require a clear and compelling showing to justify disclosure." *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1307 (S.D. Ga. 2012).   Although tax returns may be tangentially relevant to any lost wages or earning capacity claims by the Bellwether Plaintiffs, the Court concludes Defendants fail to demonstrate this requested production is proportional to

the needs of the case.  All of the information Defendants need to defend against these claims can be obtained through documents otherwise available to Defendants, including employment records (discussed below) and the income verification documents suggested by Plaintiffs. Accordingly, Defendants' motion to compel the Bellwether Plaintiffs to execute an authorization permitting the release of their tax returns is **DENIED**.

### C.    Employment Records

Defendants propose an authorization that would permit the production of the entirety of the Bellwether Plaintiffs' employment records. Defendants say these records are relevant to the cause of Bellwether Plaintiffs' alleged injuries and their ability to work now.  Plaintiffs object to the authorization as drafted because it is not limited in time, thus including records from all of the Bellwether Plaintiffs' prior employers.

The Court concludes that the Bellwether Plaintiffs' employment records will likely include information relevant to numerous issues in this case.  First and foremost, as explained above, some or all of the Bellwether Plaintiffs raise claims for lost wages and earning capacity, and these records should include information reflecting compensation history. Moreover, the records will allow Defendants to explore whether the

Bellwether Plaintiffs' type of employment and job responsibilities prior to or after their military service support an alternative cause of the alleged injuries in this litigation.

Defendants' motion to compel the Bellwether Plaintiffs to execute an authorization permitting the release of their employment records is **GRANTED**.

### D.    Education Records

Defendants propose an authorization that would permit the production of Bellwether Plaintiffs' educational records.  Defendants claim the Bellwether Plaintiffs' educational aptitude and achievements (or potentially the absence thereof) is relevant to Bellwether Plaintiffs' claims for lost wages and earning capacity.  Plaintiffs object to the authorization as drafted because it is not limited in scope or time and, therefore, would allow for discovery of the Bellwether Plaintiffs' attendance records, report cards, and disciplinary history from decades ago.  Plaintiffs, notably, do not object to the production of the Bellwether Plaintiffs' education records from the last 10 years or since the termination of their military service, whichever is sooner.

Defendants' motion to compel the Bellwether Plaintiffs to execute an authorization permitting the release of their educational records is due to be

**GRANTED IN PART**.  The Bellwether Plaintiffs' educational records from prior to their military service are not relevant to their damages claims or any theory of alternative causation, and their production is not proportional to the needs of this case.  In the event an individual Bellwether Plaintiff's educational records reflected a pertinent medical diagnosis or concern, it is likely Defendants would have access to this information in that person's medical records.  Bellwether Plaintiffs, however, must execute an authorization that would allow for the production of their educational records from the time their military service concluded until the initiation of this litigation on April 3, 2019.

### E.    Health Insurance Records

Defendants seek an authorization that would permit the disclosure of the Bellwether Plaintiffs' health insurance records.  Defendants assert these records may include medical claims not reflected in Defendants' medical records or statements inconsistent with the allegations in this case.

The Court concludes these records are neither relevant nor proportional.  Contrary to Defendants' assertion, the Bellwether Plaintiffs' medical records would reflect any medical diagnosis or treatment Defendants may discover from their insurance records.  Defendants' arguments are based on mere conjecture and, therefore, unavailing in this

dispute.  *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("Requested information is not relevant to … the pending action if the inquiry is based on the party's mere suspicion or speculation.").  Defendants' motion to compel the Bellwether Plaintiffs to execute an authorization permitting the release of their insurance records is **DENIED**.

### F.    Disability Benefits Records

Finally, Defendants request an authorization that would permit the disclosure of the Bellwether Plaintiffs' federal disability benefits records. Plaintiffs object to this authorization because all of the Bellwether Plaintiffs are younger than the age for Medicare eligibility and it is unclear whether any have applied for and successfully received federal Social Security/disability benefits because they are disabled.

Defendants' motion to compel the Bellwether Plaintiffs to execute an authorization permitting the release of their federal disability benefits records is **DENIED** because the Court cannot determine whether any of the Bellwether Plaintiffs have applied for or received disability benefits. However, to determine that none of the Bellwether Plaintiffs have Social Security disability claims, Plaintiffs' counsel must determine whether any individual Bellwether Plaintiff has applied for or applied for *and* received

federal Social Security/disability benefits. Plaintiffs' counsel must notify Defendants by **April 17, 2020**, whether any Plaintiff has applied for or applied for and received Social Security disability benefits. If so, the identified Bellwether Plaintiff(s) must execute the proposed authorization.

## IV. CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendants' motion to compel the Bellwether Plaintiffs to execute authorizations is **GRANTED IN PART and DENIED IN PART**.

2. Defendants' motion to compel is **GRANTED** to the extent that the Bellwether Plaintiffs must execute authorizations for the disclosure of their medical records (excluding mental health records) and employment records. Bellwether Plaintiffs must also execute authorizations for educational records limited to the time frame from the end of the their military service until the initiation of this action.

3. Defendants' motion to compel is **DENIED** to the extent that the Bellwether Plaintiffs are not required to execute authorizations for the disclosure of their mental health records, tax returns, educational records created prior to their military service, and health insurance records.

4. Defendants' motion to compel is further **DENIED** to the extent that the Bellwether Plaintiffs are not required to execute authorizations for the disclosure of their federal disability benefits records at this time. **On or before April 17, 2020**, Plaintiffs' counsel must determine whether any individual Bellwether Plaintiff has applied for or applied for *and* received

federal Social Security/disability benefits.  Any identified
Bellwether Plaintiff(s) must execute the proposed authorization.

**DONE AND ORDERED** this 26th day of March 2020.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge