# EXHIBIT 64

Confidential - Pursuant to Protective Order

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
 2                   PENSACOLA DIVISION
 3
      IN RE: 3M COMBAT ARMS  )   Case No.
 4    EARPLUG PRODUCTS       )   3:19md2885
      LIABILITY LITIGATION   )
 5    _____  )   Judge M. Casey
                             )   Rodgers
 6    THIS DOCUMENT RELATES  )   Magistrate Judge
      TO ALL CASES           )   Gary R. Jones
 7
 8              THURSDAY, OCTOBER 17, 2019
 9     CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                      - - -
11           Videotaped deposition of Douglas
12    Moses, held at the offices of Kirkland &
13    Ellis LLP, 300 North LaSalle Drive, Chicago,
14    Illinois, commencing at 9:02 a.m., on the
15    above date, before Carrie A. Campbell,
16    Registered Diplomate Reporter, Certified
17    Realtime Reporter, Illinois, California &
18    Texas Certified Shorthand Reporter, Missouri
19    & Kansas Certified Court Reporter.
20                      - - -
21
               GOLKOW LITIGATION SERVICES
22        877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com
23
24
25
```

```
             Confidential - Pursuant to Protective Order

  1                  A P P E A R A N C E S :
  2
           SEEGER WEISS, LLP
  3        BY:   DAVID R. BUCHANAN
                 dbuchanan@seegerweiss.com
  4              MAX KELLY
                 mkelly@seegerweiss.com
  5        77 Water Street
           New York, New York  10005
  6        (212) 584-0700
  7
           WAGSTAFF & CARTMELL, LLP
  8        BY:   THOMAS P. CARTMELL
                 tcartmell@wcllp.com
  9        4740 Grand Avenue, Suite 300
           Kansas City, Missouri  64112
 10        (816) 701-1100
 11
           ABRAHAM, WATKINS, NICHOLS, SORRELS,
 12        AGOSTO & AZIZ
           BY:   MUHAMMAD S. AZIZ
 13              maziz@awtxlaw.com
           800 Commerce Street
 14        Houston, Texas  77002-1776
           (713) 222-7211
 15
 16        CLARK, LOVE & HUTSON, PLLC
           BY:   EMILY MARLOWE
 17              emarlowe@triallawfirm.com
           440 Louisiana Street, Suite 1600
 18        Houston, Texas  77002
           (713) 757-1400
 19
 20        AYLSTOCK, WITKIN, KREIS &
           OVERHOLTZ, PLLC
 21        BY:   BRYAN F. AYLSTOCK
                 baylstock@awkolaw.com
 22              (VIA TELECONFERENCE)
           17 East Main Street
 23        Pensacola, Florida  32502
           (850) 202-1010
 24
           and
 25
```

                Confidential - Pursuant to Protective Order

```
 1        TRACEY & FOX
          BY:  SEAN TRACEY
 2            stracey@traceylawfirm.com
              (VIA TELECONFERENCE)
 3        440 Louisiana Street, Suite 1901
          Houston, Texas  77002
 4        (713) 495-2333
          Counsel for Plaintiffs
 5
 6

          KIRKLAND & ELLIS LLP
 7        BY:  F. CHADWICK MORRISS
               chad.morriss@kirkland.com
 8        1301 Pennsylvania Avenue, NW
          Washington, DC  20004
 9        (202) 389-5996
10        and
11        KIRKLAND & ELLIS LLP
          BY:  WHITNEY N. KNOWLTON
12             whitney.knowlton@kirkland.com
          333 South Hope Street
13        Los Angeles, California  90071
          (213) 680-8122
14        Counsel for Defendants
15
16   ALSO PRESENT:
          CHARLES BACHMANN AND COREY TAM,
17        Seeger Weiss
18        ZACH HONE, trial technician, Golkow
          Litigation Services
19
     V I D E O G R A P H E R :
20        DAVID LANE,
          Golkow Litigation Services
21
                        - - -
22
23
24
25
```

Confidential - Pursuant to Protective Order

 1    law enforcement, was going to be a focus on
 2    these various product lines, right?
 3            A.    It includes those, yes.
 4            Q.    Okay.  Encompassed within would
 5    be E-A-R Combat Arms Earplugs, right?
 6            A.    Yes.
 7            Q.    Okay.  And just so we're clear
 8    and have a sense of structure and how this
 9    plays out, there was a consumer channel that
10    had different organization and oversight,
11    right?
12            A.    Yes.
13            Q.    Okay.  So if we're talking
14    about sales of blister packs -- let's call
15    them indoor/outdoor range just so we can be
16    clear about them -- of the version 2, that
17    would have been overseen by the consumer side
18    of the business?
19                  MR. MORRISS:  What time frame?
20                  MR. BUCHANAN:  I guess if it
21       changes, I need to know that.
22    QUESTIONS BY MR. BUCHANAN:
23            Q.    But would it have been overseen
24    by the consumer side of the business?
25            A.    In the Aearo time frame, yes.

```
 1         Q.    Okay.
 2         A.    Be consumer.
 3         Q.    So in the pre-merger time
 4   frame, it would have been overseen by the
 5   consumer arm of Aearo, fair?
 6         A.    Fair.
 7         Q.    Okay.  Who was in charge of
 8   that consumer arm?
 9               Is that Peter Murphy?
10         A.    Yes, Pete Murphy was, I
11   believe, the person still over that.
12         Q.    When you "still over that," you
13   mean as of that time frame?
14         A.    As of that time frame, yes.
15         Q.    Okay.
16               MR. MORRISS:  When you say
17         "that time frame," are we talking
18         about 2006?  I'm just trying --
19               MR. BUCHANAN:  I thought I was
20         following along with the witness, but
21         I thought you were trying to identify
22         pre-merger time frame.
23               THE WITNESS:  So if we're
24         looking at this date right here,
25         pre-merger, Pete Murphy, to my
```

Confidential - Pursuant to Protective Order

1              understanding, was the director, the
2         leader, of the consumer group.
3    QUESTIONS BY MR. BUCHANAN:
4         Q.    Got it.  Okay.
5               And so to be clear, within Pete
6    Murphy's responsibilities and, frankly, focus
7    would have included whatever consumer
8    versions of the Combat Arms version 2 were
9    marketed in the consumer channel, right?
10              MR. MORRISS:  Object to the
11        form.
12              THE WITNESS:  Yes, he would
13        have been directing at store chains
14        and others in the consumer market.
15   QUESTIONS BY MR. BUCHANAN:
16        Q.    Okay.  When you say "store
17   chains," we talked about sporting goods, gun
18   shops, Cabela's, Bass Pro, things like that?
19        A.    Those are some examples, yes.
20        Q.    Okay.  In fact, you looked
21   through transactions and you saw that
22   consumer blister pack versions of the Combat
23   Arms were sold into that channel, right?
24        A.    Yes, to the sporting goods.
25        Q.    Those types of companies,

Confidential - Pursuant to Protective Order

1      right?
2           A.      Yes.
3           Q.      What about health care?
4           A.      There were some transactions
5      that I saw for health care.  I don't know how
6      they were labeled in the database, whether
7      they were seen as North American industrial
8      or specifically health care.  There were
9      companies like -- yeah, those are the ones.
10          Q.      Okay.  So when we think of
11     channels, there's consumers.  You think of,
12     like, retail transactions, whatever those
13     locations would be.
14                  There would be industrial.  You
15     talked about Grainger, for example, as
16     someone selling, you know, industrial
17     versions of the Combat Arms version 2.
18          A.      Uh-huh.
19          Q.      I should say industrial kind of
20     marketed or promoted versions.
21                  That's right, right?
22          A.      Yes, by and large.
23          Q.      And then there was health care.
24                  Was there a health care sales
25     group within Aearo?

Confidential - Pursuant to Protective Order

```
 1         A.    I don't recall a health care
 2   sales group within Aearo.
 3         Q.    So you're puzzled maybe by the
 4   same things I am, and that's the --
 5               MR. MORRISS:  Object to the
 6         form.
 7               MR. BUCHANAN:  Withdrawn.
 8   QUESTIONS BY MR. BUCHANAN:
 9         Q.    You saw sales to health care
10   entities when you were looking at sales?
11         A.    I saw sales to organizations
12   that had medical names in their titles.
13         Q.    Cardinal Health?
14         A.    Yes.
15         Q.    Okay.  And so what business
16   segment would have been targeting Cardinal
17   Health from a marketing and promotional
18   perspective?
19         A.    I don't know the answer to
20   that.
21         Q.    Okay.  And what version would
22   Cardinal Health be buying?
23         A.    I would have to look at the
24   data to see what their PO was for and what we
25   shipped to them.
```

Confidential - Pursuant to Protective Order

```
 1         Q.    So you would look by a SKU or
 2    product number?
 3         A.    I would sort it by the customer
 4    first and then to see what item they
 5    purchased.
 6         Q.    Okay.  And to your knowledge,
 7    sir, does a given product number always refer
 8    to a specific, if you will, product
 9    deliverable?
10               And by that I mean, you know,
11    it was in a blister pack and it had whatever
12    information was in for that code?
13               MR. MORRISS:  Object to the
14          form.
15    QUESTIONS BY MR. BUCHANAN:
16         Q.    Or did that change over time?
17               MR. MORRISS:  Object to the
18          form, compound, and outside the scope
19          of his 30(b)(6) topics.
20               MR. BUCHANAN:  Withdrawn.
21          Withdrawn.  It was a confusing
22          question.  Not because I think your
23          objection was well-founded, but it was
24          confusing.
25               MR. MORRISS:  No doubt.
```

```
 1                    CERTIFICATE
 2
 3            I, CARRIE A. CAMPBELL, Registered
    Diplomate Reporter, Certified Realtime
 4  Reporter and Certified Shorthand Reporter, do
    hereby certify that prior to the commencement
 5  of the examination, Douglas Moses, was duly
    sworn by me to testify to the truth, the
 6  whole truth and nothing but the truth.
 7            I DO FURTHER CERTIFY that the
    foregoing is a verbatim transcript of the
 8  testimony as taken stenographically by and
    before me at the time, place and on the date
 9  hereinbefore set forth, to the best of my
    ability.
10
              I DO FURTHER CERTIFY that I am
11  neither a relative nor employee nor attorney
    nor counsel of any of the parties to this
12  action, and that I am neither a relative nor
    employee of such attorney or counsel, and
13  that I am not financially interested in the
    action.
14
15
16
            _____
17          CARRIE A. CAMPBELL,
            NCRA Registered Diplomate Reporter
18          Certified Realtime Reporter
            California Certified Shorthand
19          Reporter #13921
            Missouri Certified Court Reporter #859
20          Illinois Certified Shorthand Reporter
            #084-004229
21          Texas Certified Shorthand Reporter #9328
            Kansas Certified Court Reporter #1715
22          Notary Public
23          Dated:  October 30, 2019
24
25
```