# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-02885 |
| | ) | Judge M. Casey Rodgers |
| | ) | |
| This Document Relates to All Cases | ) ) | Magistrate Judge Gary R. Jones |
| | ) ) | REDACTED - PUBLIC VERSION |
| | ) | |
| | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 1

III.    ARGUMENT ............................................................................................................ 2

        A.      Legal Standard .......................................................................................... 2

        B.      Defendants Reference and Identification of Documents in
                Response to Interrogatory Nos. 3 and 8 is Sufficient under Fed. R.
                Civ. P. 33(d). ............................................................................................. 3

        C.      Defendants Should Not Be Compelled to Provide Further Answers
                Regarding Marketing and Promotional Information................................ 16

        D.      Defendants Should Not Be Compelled to Provide Further Answers
                Regarding Knowledge of Potential Alternative Designs ......................... 18

IV.     CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Covad Commc'ns Co. v. Revonet, Inc.*,
   258 F.R.D. 17 (D.D.C. 2009) ................................................................................................ 16

*Pediatric Servs. of Am., Inc. v. Kendrick*,
   No. 3:18-cv-1372-RV-CJK, 2019 WL 580786 (N.D. Fla. Jan. 17, 2019) .............................. 18

*Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*,
   No. 2:10-cv-753-FtM-36SPC, 2011 WL 4382104 (M.D. Fla. Sept. 20, 2011) ...................... 15

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
   No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337813 (M.D. Fla. Apr. 17, 2008) ............. 3, 4, 15

*United States v. Peter R. Brown Constr., Inc.*,
   2012 WL 12903894 (M.D. Fla. Dec. 27, 2012) ..................................................................... 16

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................... 2, 21

Fed. R. Civ. P. 33(d) ........................................................................................................... *passim*

## I.     INTRODUCTION

Plaintiffs seek an order from this Court compelling Defendants to supplement their answers to Plaintiffs' interrogatories.  Plaintiffs' request should be denied because Defendants have satisfied their obligations under the Federal Rules of Civil Procedure.

## II.    STATEMENT OF FACTS

Plaintiffs served their First Set of Interrogatories to Defendants on August 28, 2019.  (Dkt. 1059-1.)  Defendants performed a diligent search for responsive information, and thereafter served their responses on October 11, 2019.  (Dkt. 1059-2.)  Defendants' responses contain significant information.  Merely by way of example, Defendants: (1) identified 37 individuals that may have relevant information regarding the CAEv2 (*See id* at 1); (2) provided a nearly fifteen-page narrative describing then-known information regarding the government's involvement in the design process (*id.* at 5, 9); (3) identified a significant number of documents produced that contained the information plaintiffs were requesting (*e.g.*, *id.* at 5-7); and (4) catalogued 28 tests and studies on the CAEv2 that had been identified to date (*id.* at 15).

On October 30, 2019, Plaintiffs sent Defendants a letter regarding purported deficiencies in Defendants' responses.  (*See* Dkt. 1059-3.) That letter does not mention any deficiencies with respect to the sales and distribution data identified in

response to Interrogatory No. 3, or any of the information provided in responses to Interrogatory Nos. 8 and 13. (*Id.*) Now, over five months later, Plaintiffs ask this Court to compel additional information in response to those and other interrogatories. (*See* Dkt. 1059 at 1.) Plaintiffs' motion should be denied because Defendants' responses and objections are proper under the Federal Rules of Civil Procedure.

## III.   ARGUMENT

### A.   **Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." (Fed. R. Civ. P. 26(b)(1).) Among other things, Federal Rule of Civil Procedure 26 requires that discovery requests not be "unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." (Fed. R. Civ. P. 26(g)(1)(B)(iii).) Indeed, the discovery handbook adopted by another Florida district court notes that interrogatories in particular "should be reasonably particularized," and thus "[i]nterrogatories designed to force an exhaustive or oppressive catalogue of information are generally improper." (Florida Middle District Discovery Handbook at IV.C.4.)

Rule 33(d) permits a responding party to provide business records in lieu of expressly responding to an interrogatory if:  (1) the burden of deriving the answer is substantially the same for both parties; (2) the responding party specifies records in sufficient detail to enable the requesting party to locate and identify the records; and (3) the responding party provides the requesting party a reasonable opportunity to examine and audit the records.  (Fed. R. Civ. P. 33(d); *see State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337813, at *2 (M.D. Fla. Apr. 17, 2008) ("Reliance on Rule 33(d) is appropriate when the interrogatory requests objective facts that are obvious from the specified documents…").)

B. **Defendants Reference and Identification of Documents in Response to Interrogatory Nos. 3 and 8 is Sufficient under Fed. R. Civ. P. 33(d).**

Interrogatory Nos. 3 and 8 seek, among other things, information regarding (i) the names and product numbers for different versions of the CAEv2, and (ii) information regarding the sale and distribution of those products to the government. (*See* Dkt. 1059-2 at 3 and 8.)  Defendants objected to certain overly broad aspects of the interrogatories (for example, the request for voluminous sales data on earplugs other than the dual-ended models at issue in this case), but (i) provided charts "identify[ing] the brand name(s), internal name(s), product, and the SKU or national stock number(s)" for the relevant products, and (ii) "produce[d] documents

3

sufficient to identify relevant sales histories for those products." (Dkt. 1059-2 at 3; *see also id.* at 8.) According to Plaintiffs, Defendants' production of sales data in response to these interrogatories does not satisfy Rule 33(d). (Dkt. 1059 at 13-15.)

> i. **Defendants Produced Detailed Spreadsheets Answering Plaintiffs' Interrogatory Nos. 3 and 8.**

Plaintiffs are wrong. The sales and distribution documents Defendants produced in response to Interrogatory Nos. 3 and 8 satisfy their obligations under Rule 33(d). Indeed, Defendants provided ***detailed data on every sale of the CAEv2*** over the past twenty years. Defendants compiled that information into spreadsheets, and identified those spreadsheets in response to Interrogatory Nos. 3 and 8. (*See* Dkt. 1059-2 at 3 and 8 (citing 3M_MDL000393649; 3M_MDL000393648; 3M_MDL000393647; 3M_MDL000393646; and 3M_MDL000393651).)[1]

Gathering this information was a ***significant*** undertaking. 3M purchased Aearo in 2008, years after Aearo first sold the CAEv2 to the government. Thus, to gather sales and distribution information in response to Plaintiffs' requests, Defendants needed to harvest data from numerous different databases: (i) SAP for the legacy Aearo data, and (ii) WDSR (Worldwide Daily Sales Reporting) and

---

[1] Defendants have formatted the 3M_MDL000393647 and 3M_MDL000393651 Excel spreadsheets into PDFs for purposes of this submission, and excerpted pages representing the first and final rows of these spreadsheets reflected in Exhibits A and B. Defendants have provided Native versions of these spreadsheets to the Court and are able to produce the full spreadsheets in PDF form if the Court requests.

GSDW (Global Sales Data Warehouse) databases for the 3M data. Data from the Aearo/SAP database is reflected in the Excel spreadsheet bates labelled 3M_MDL 000393647.[2] (*See* Ex. A.) Data from the 3M databases is reflected in the Excel spreadsheet bates labelled 3M_MDL000393651[3]. (*See* Ex. B.) Defendants also produced a glossary that breaks down and describes each column in the spreadsheets, including the following information responsive to Plaintiffs' requests in Interrogatory Nos. 3 and 8 (where available) such as: (i) dates of sales and orders; (ii) price; (iii) quantity of units sold; (iv) entities who received shipments; (v) purchaser identity; (vi) shipping destination; and (vii) 3M/Aearo representative involved, where available. (See Ex. C at 2-3.)

---

[2] 3M_MDL000393646, 3M_MDL000393647, 3M_MDL000393648, and 3M_MDL000393651 contain the same categories of information, but each has unique, product-specific data. First, 3M_MDL000393646 contains data related to sales in the United Kingdom. Second, 3M_MDL000393647 contains sales data specific to the CAEv2, the ARC Plug, and the Indoor/Outdoor Range Plug. Finally, 3M_MDL000393648 includes unique data from two additional SKUs, and was mined to ensure the 3M legacy data was complete.

[3] 3M_MDL000393651 captures categorical sales data for the CAEv2, the ARC Plug, and the Indoor/Outdoor Range Plug. The GSDW data includes all sales that go through 3M's main U.S. sales system and WDSR contains data from all other worldwide 3M reporting centers. Likewise, 3M_MDL000425745, which was included in Exhibit 6 to Brian Myers' 30(b)(6) deposition, supplements this same data and provides the same categorical information for an additional SKU -- the Browning Duo Earplug. Furthermore, Defendants produced the Bill of Materials for all dual ended earplug SKUs that describes the materials that comprise each finished product. 3M_MDL000393649 is the Bill of Materials for the CAEv2, the ARC Plug, and the Indoor/Outdoor Range Plug. Exhibit 8 to Brian Myers' 30(b)(6) deposition, 3M_MDL000425746, contains the Bill of Materials for the Browning Duo Earplug.

As the Court will observe, the spreadsheets contain detailed information about every sale of the CAEv2, where available, including, for example, in the Aearo/3M spreadsheet:







To harvest and compile this data, Defendants spent hundreds of hours working with several 3M employees, various 3M databases, and the Aearo SAP system. Defendants did not withhold responsive information from the spreadsheets, whether based on objections or otherwise. Rather, based upon reasonable investigation, Defendants produced what they believe is available in the relevant systems. But there is no perfect, singular source of data, or singular set of documents, that contain all of the information that Plaintiffs request. Instead, this data resides across multiple 3M and Aearo legacy SAP systems, as kept in the ordinary course of business spanning nearly twenty years.

Contrary to Plaintiffs' assertions, the data produced provides information responsive to the at-issue portions of Interrogatory Nos. 3 and 8, to the extent available, including:

- **No. 3**: the "(iv) date(s) of first and last sale; (v) number of units sold to domestic purchasers; (vi) number of units sold to the U.S. Government,

broken down by number of units sold to each entity, agency, bureau, division, branch, or other subpart thereof; (vii) number of units sold to foreign purchasers, by country of purchase." 4

- **No. 8**: For all of your sales of 3M Earplugs to the U.S. Government, please identify the purchasing entity of the U.S. Government, to whom the order was placed, the date of the order, who fulfilled the order, the quantity sold, the price, the sales representative for 3M associated with the sale, and the location where the U.S. Government took delivery.

(Dkt. 1059-1 at 5-6.)

The standard is not whether the data is precisely in the format plaintiffs would prefer. What matters is that the Excel spreadsheets, together with the Defendants' other interrogatory answers, satisfy Defendants' obligations under the Federal Rules. By way of example, with respect to the interrogatory regarding ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████ In other instances, the spreadsheets reflect that Aearo or 3M made sales to distributors, who in turn made sales to the United States military. For example, the spreadsheets reflect that

---

4       Plaintiffs' motion does not relate to subparts (i)-(iii) of Interrogatory No. 3.

Defendants made sales to Brock Sales Company ("Brock") in Florida.  Plaintiffs have also subpoenaed documents from Brock (and other distributors) relating to Brock's and other distributors' transactions with both Aearo/3M and the United States military.

ii. **Defendants' Two Corporate Witnesses' Testimony Answered Plaintiffs' Questions With Respect To The Spreadsheets**

In addition to providing detailed spreadsheets, Defendants designated Rule 30(b)(6) representatives who were made available to respond to questions about the spreadsheets.  Their testimony relating to the spreadsheets is attached as Exhibits D and F.  This testimony further bolsters the sufficiency of Defendants' interrogatory responses.  For example, with respect to Plaintiffs' interrogatory regarding the "number of units sold to foreign purchasers, by country of purchase," in addition to Defendants providing foreign sales information in the spreadsheets[5], Defendants' 30(b)(6) witness provided testimony.  The totality of the questions on foreign sales to the 30(b)(6) witness designated for that topic were as follows:



---

[5]     *See e.g.*, Ex. A (3M_MDL000393647) at 3M SKUs, Row 6.



(Ex. D (10/18/19 Myers Tr.) at 368:7 - 370:12 (emphasis added).)

Plaintiffs' assertion that Defendants' counsel or corporate representatives "attacked the reliability" of the provided data is without merit.   (Dkt. 1059 at 14.) The deposition cited by Plaintiffs is to a witness in his *personal* capacity, not a corporate representative. (*Id.* citing 12/13/19 Myers Tr., at 866:20-867:6.) Plaintiffs used Defendants' sales spreadsheets to create a document called "Sales of the Combat Arms Version 2, 1999 through 2010," which contained annual sales data. Plaintiffs then attempted to use the *personal* deposition of a 3M witness to confirm that their sales totals were correct.  But no witness can be expected to verify on the spot in a deposition, based on their *personal* knowledge, that Plaintiffs have correctly summed thousands of rows of Excel data.  As Mr. Myers testified in his personal deposition (taken two months after his Rule 30(b)(6) deposition):



(Ex. E (12/13/19 Myers Tr.) at 866:24 - 867:6.)

Plaintiffs' reliance on 3M corporate witness, Doug Moses' 30(b)(6) transcript is similarly misplaced. Plaintiffs did not ask Mr. Moses to explain or interpret 3M_MDL000393647 with respect to the information sought by their Interrogatories. Instead, Plaintiffs questioned Mr. Moses on how to use the spreadsheet to calculate

gross margin percentages and other profit metrics -- topics absent from Interrogatory Nos. 3 and 8. (*See* Ex. F (10/17/19 Moses Tr.) at 91-93.) Moreover, Plaintiffs' contention that Mr. Moses "questioned the reliability of the identified spreadsheets" is incorrect. Mr. Moses clarified that he was not "exactly sure" what specific profit-metric information went into the 3M legacy sales system, but was familiar with the formulas that populated the information. (*See id.* at 92-93.) Mr. Moses further clarified that data in 3M_MDL000393647 "should have complete information because it's coming out of the Indianapolis office, and Combat Arms flowed through there." (*See id.* at 448:8-16.) But, in any event, Mr. Moses' knowledge of the specific data and Plaintiffs' attempts to undermine the data have no bearing on Plaintiffs' ability to ascertain information from the spreadsheets.

At bottom, Plaintiffs erroneously apply Fed. R. Civ. P. 33(d). The spreadsheets that Plaintiffs now criticize were not simply produced by Defendants leaving Plaintiffs to "guess" what the true answer might be. (Dkt. 1059 at 15.) To the contrary, and as noted above, Defendants devoted considerable amounts of time and resources to scour the 3M and Aearo systems and distill that information into a coherent and readable format, organized by column headings, so Plaintiffs could understand and analyze the data. Plaintiffs cannot now second guess the format and manner in which Defendants provided this information and ask the Court to compel Defendants to manipulate the information for Plaintiffs.

Plaintiffs' citations to case law are inapposite because Plaintiffs fail to appreciate that the spreadsheets identified by Defendants in Interrogatory Nos. 3 and 8 distilled voluminous data sets into a readable and accessible formats containing responsive information.  For example, the court in *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*,[6] held an Interrogatory response insufficient because the responding party ***did not point to specific documents where the requesting party could identify the information sought***.  That is not the case here.  Defendants did not direct Plaintiffs to scour the legacy 3M and Aearo sales information systems to uncover the answers themselves.  Instead, Defendants synthesized responsive information contained in those legacy systems -- to the extent that data existed -- into Excel spreadsheets organized by headers and columns that explain what the information represents.[7]

Plaintiffs' citation to *Covad Commc'ns Co. v. Revonet, Inc.*,[8] further highlights Plaintiffs' misunderstanding of Defendants' response.  In *Covad*, the responding party directed the requesting party to search the *requesting* party's own internal files to ascertain the answer.  (*Id.*)  Defendants did no such thing here.  In

---

[6]    No. 2:10-cv-753-FtM-36SPC, 2011 WL 4382104, at *6 (M.D. Fla. Sept. 20, 2011).

[7]    *See State Farm,* 2008 WL 11337813, at *2 ("Reliance on Rule 33(d) is appropriate when the interrogatory requests objective facts that are obvious from the specified documents…").

[8]    258 F.R.D. 17, 20 (D.D.C. 2009).

fact, Defendants did exactly what the court in *Covad* implied was proper, by identifying several spreadsheets, by specific Bates number, where information responsive to Plaintiffs' Interrogatories may be found, to the extent that data exists.[9]

Accordingly, this Court should deny Plaintiffs' motion to compel given Defendants' sufficient responses and the extraordinary lengths Defendants undertook in reviewing, summarizing, compiling, and ultimately producing, immense amounts of data into five spreadsheets organized topically.  In sum, with respect to Interrogatory Nos. 3 and 8, Defendants not only provided Plaintiffs with detailed sales and distribution spreadsheets which took hundreds of hours of attorney and 3M employees to compile, but also provided two Rule 30(b)(6) witnesses to answer questions about those spreadsheets.  Nothing more is required under the Federal Rules. [10]

---

[9]     *See id.* at 20 ("even if it were appropriate for Covad to answer the interrogatories by identifying Revonent's files, it would be required to specifically identify the documents that contain the answers."); *see also United States v. Peter R. Brown Constr., Inc.*, 2012 WL 12903894, at *2 (M.D. Fla. Dec. 27, 2012) (finding that identifying responsive documents by specific bates range is sufficient to satisfy Rule 33(d)).

[10]     In response to Interrogatory Nos. 3 and 8, Defendants specifically reserved the right to supplement both responses with respect to ongoing discovery from the military and third parties.  To date, the military has not produced discovery responsive to these Interrogatories.

C.      **Defendants Should Not Be Compelled to Provide Further Answers Regarding Marketing and Promotional Information**

Plaintiffs issued two interrogatories seeking the following information on Defendants' promotion and marketing of 3M hearing protection devices.

- **No. 13:** "***any* … *organizations or persons*** that you paid or compensated in any way for … promoting ***any HPD***, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect presentations."

- **No. 14**: "***any*** external experts, consultants, scientists, physicians, medical professionals, thought leaders, academics, or key opinion leaders***, who you have compensated for work promoting or otherwise distributing information regarding the risk of auditory injury, and/or the importance of hearing conservation programs and hearing protection devices***, whether to the government, the public, or otherwise, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation."

(Dkt. 1059-1 at 7) (emphasis added.)

Defendants objected to these interrogatories as being overbroad, unduly burdensome, and disproportional to the needs of the case.  (Dkt. 1059-2 at 36-38.) As explained in Defendants' response, Plaintiffs' interrogatories would cover enormous swaths of irrelevant information, including all of the numerous subparts with respect to: (i) any current or former employee who has ever discussed a hearing protection device, but also, among many other things, (ii) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, (iii) every consulting or testifying expert who has ever

researched or opined on hearing loss or hearing protection devices, and (iv) every attorney who has ever represented Defendants in litigation regarding a hearing protection device. Plaintiffs' request would improperly require Defendants to interview an untold number of individuals ranging from Defendants' employees (including those with little, temporary, or intermittent involvement in hearing protection devices) to Defendants' lawyers (who may have made arguments in court or in writing to third parties regarding Defendants' hearing protection products). The identities of these types of individuals, and gratuitous information regarding their compensation and specific activities, have no bearing on Plaintiffs' claims in this matter and will not reasonably lead to admissible evidence. Defendants' objections were therefore appropriate. (*See Pediatric Servs. of Am., Inc. v. Kendrick*, No. 3:18-cv-1372-RV-CJK, 2019 WL 580786, at *2 (N.D. Fla. Jan. 17, 2019) (finding interrogatory overbroad and not reasonably calculated to lead to the discovery of admissible evidence where interrogatory requested identity of each employee who performed work related to health contract at issue).)

Contrary to Plaintiffs' assertions, Defendants did not simply refuse to answer Plaintiffs Interrogatory Nos. 13 and 14. Defendants conducted a reasonable investigation and provided Plaintiffs with a list of 21 individuals known to Defendants "that may have spoken about or promoted the Combat Arms Earplug version 2 or any like-design dual-ended earplugs sold by Defendants for civilian use

at industry trade shows or in a marketing capacity spoke about or promoted the Combat Arms Earplug Version 2 or any like-design dual-ended earplugs sold by Defendants." (Dkt. 1059-2 at 36-38.)[11]

D.   **Defendants Should Not Be Compelled to Provide Further Answers Regarding Knowledge of Potential Alternative Designs**

Finally, Plaintiffs issued two interrogatories seeking the following information purportedly regarding Defendants' knowledge of "potentially safer alternative designs." (Dkt. 1059 at 25.)

- No. 15: "***all*** studies, including NRR, REAT, physical measurement, acoustic test fixture, walk-up, and impulse noise studies, ***regarding 3M Earplugs and any predecessor, successor, and/or alternative designs*** that use any aspect of the technologies used in the 3M Earplugs, including flanges, level dependence, ***or nonlinearity technologies***, mechanisms or filters, or that involved a comparison between an HPD's design and the design of the 3M Earplugs." For each such study, Plaintiffs requested an additional eight subcategories of information.

- **No. 16**: "***all passive level-dependent or non-linear HPDs you are aware of***, including  the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs."

(Dkt. 1059-1 at 7-8.)

---

[11]   Plaintiffs in their motion incorrectly assert that Defendants did not provide a substantive answer to Plaintiffs' Interrogatory No. 14. (Dkt. 1059 at 20.)  But as Defendants stated in their response, Defendants are not presently aware of any individuals responsive to Interrogatory No. 14 beyond those individuals identified in response to Interrogatory No. 13.  (Dkt. 1059-2 at 39-40.)

Defendants objected to these interrogatories as overbroad, unduly burdensome, and disproportional to the needs of this case. Both interrogatories improperly seek voluminous irrelevant information, and seek to force Defendants to create a list of information that has either been made available to Plaintiffs or that cannot be derived from Defendants' files.

For example, Plaintiffs' Interrogatory No. 15 seeks extensive information regarding all studies on nonlinear earplug technology. (*Id.*) In response, Defendants specifically identified over two dozen studies they were then aware of related to the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use. (Dkt. 1059-2 at 42-47.) To the extent Plaintiffs seek the information requested in Interrogatory No. 15's subparts, that information, where available, is available in the documents Defendants have already identified as responsive to Plaintiffs' Interrogatory No. 15. To the extent Plaintiffs seek information on testing Defendants have done on *other* non-linear products, Defendants have already produced in native format their entire testing database (the HPDA database). (*See* 3M_MDL000426649.) Plaintiffs are free to query that database for information on whatever testing they are interested in. It is unduly burdensome to ask Defendants to type up a summary of the testing database in an interrogatory response.

Interrogatory No. 16, meanwhile, asks Defendants to identify "**all passive level-dependent or non-linear HPDs**" they are aware of, "whether developed by [Defendants] or any other entity," the person who developed or marketed the HPD and the date Defendants became aware of the HPD.  (Dkt. 1059-1 at 8.)  This information is facially irrelevant, unduly burdensome and not proportional to the needs of the case.  Defendants have no obligation under Rule 26 to poll each of their employees to determine whether they are aware of "passive level-dependent or non-linear HPDs" made by other manufacturers, and when they became aware of those products.  To the extent Interrogatory 16 seeks information regarding comparative testing, Plaintiffs, are free to query the HPDA database for information regarding specific tests or reports.  However, requiring Defendants to individually identify each of these tests would force Defendants to incur an undue burden that is not proportional to the needs of the case.

## IV.   CONCLUSION

Plaintiffs' motion should be denied in its entirety because Defendants have satisfied their obligations under the Federal Rules of Civil Procedure with respect to each interrogatory at issue in Plaintiffs' motion.

DATED:  April 3, 2020                    By:  *Kimberly Branscome*

                                                            Kimberly Branscome
                                                            KIRKLAND & ELLIS LLP

2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Tel.:   (213) 680-8400
Email: kimberly.branscome@kirkland.com

*Attorney for Defendants 3M Company,*
*Aearo Technologies LLC, Aearo Holdings,*
*LLC, Aearo Intermediate, LLC, and Aearo,*
*LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I HEREBY CERTIFY that this brief complies with the word limit of Local

Rule 7.1(F), and contained 4,123 words, excluding the parts exempted by the Rule.

DATED:  April 3, 2020                    By: *Kimberly Branscome*
                                               Kimberly Branscome

## <u>CERTIFICATE OF SERVICE</u>

I, Kimberly Branscome, hereby certify that on April 3, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

DATED:  April 3, 2020                    By: *Kimberly Branscome*
                                                        Kimberly Branscome