# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

Pending before the Court is Plaintiffs' Motion to Compel Discovery.

ECF No. 1059.  Defendants have filed a response in opposition to Plaintiffs'

motion.  ECF No. 1077.  The motion is therefore ripe for the Court's

consideration.  For the reasons discussed below, Plaintiffs' motion to

compel is due to be **GRANTED IN PART and DENIED IN PART**.

## I.  BACKGROUND

This multidistrict litigation is a products liability action concerned with

whether Defendants were negligent in their design, testing, and labeling of

the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").

ECF No. 704.  Discovery is ongoing.

In Plaintiffs' First Set of Interrogatories, served on August 28, 2019,

they sought information from Defendants pertaining to, *inter alia*, their (1)

sales and distribution of the CAEv2; (2) marketing and promotional efforts

for the CAEv2; and (3) knowledge of alternative feasible designs to the CAEv2, manufactured by Defendants or other entities, including testing of the CAEv2 and any predecessor, successor, or alternative designs that used the same technology implemented in the CAEv2. ECF No. 1059-1 at 5–8. Relevant to the instant motion, Plaintiffs' First Set of Interrogatories included the following requests:

> 3. Please identify each version of the 3M Earplugs[1] (and any predecessor or successor design), together with its (i) brand name(s); (ii) internal name(s), product code(s), or product identifier(s); (iii) external product identifier(s), including product or part number(s), SKU(s), National Stock Number(s), or P/N(s); (iv) date(s) of first and last sale; (v) number of units sold to domestic purchasers; (vi) number of units sold to the U.S. Government, broken down by number of units sold to each entity, agency, bureau, division, branch, or other subpart thereof; (vii) number of units sold to foreign purchasers, by country of purchase.

> \* \* \* \* \*

> 8. For all of your sales of 3M Earplugs to the U.S. Government, please identify the purchasing entity of the U.S. Government, to whom the order was placed, the date of the order, who fulfilled the order, the quantity sold, the price, the sales representative for 3M associated with the sale, and the location where the U.S. Government took delivery.

> \* \* \* \* \*

[1] "The term '3M Earplugs' refers to the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured, and/or sold by Defendants to the U.S. Government from the early 2000s through approximately 2015, together with any like-design earplugs marketed or sold by you for civilian use or non-military use." ECF No. 1059-1 at 4.

13. Please identify any scientists, audiologists, physicians, medical professionals, professional associations, or other organizations or persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD,[2] together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

14. Please identify any external experts, consultants, scientists, physicians, medical professionals, thought leaders, academics, or key opinion leaders, who you have compensated for work promoting or otherwise distributing information regarding the risk of auditory injury, and/or the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

15. Please identify all studies, including NRR, REAT, physical measurement, acoustic test fixture, walk-up, and impulse noise studies, regarding 3M Earplugs and any predecessor, successor, and/or alternative designs that use any aspect of the technologies used in the 3M Earplugs, including flanges, level dependence, or non-linearity technologies, mechanisms or filters, or that involved a comparison between an HPD's design and the design of the 3M Earplugs. For each study identified, please provide, if applicable, (i) the study's name and study number; (ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of Defendants in the study, including any direct or indirect financial support or compensation of any kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results, including final and draft reports, amendments to protocols, and any study data not included in the final study

---

[2] "The term 'HPD' refers to any passive or active hearing protection device, including earmuffs and earplugs."  ECF No. 1059-1 at 4.

report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S. Government and the Bates number of those documents constituting such transmittal.

16. Please identify all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity, including (i) the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs.

*Id.*

On October 11, 2019, Defendants served their responses and objections to Plaintiffs' First Set of Interrogatories. ECF No. 1059-2. In response to Interrogatory No. 3, Defendants objected to producing any information regarding predecessor or successor designs as vague, ambiguous, overbroad, unduly burdensome, and disproportional, and to the interrogatory as unduly burdensome to the extent it sought information equally available to the parties from documents produced subject to the agreed-upon TAR protocol. *Id.* at 11. Defendants, nevertheless, provided the brand name, internal name, product number, stock-keeping unit ("SKU"), and national stock number ("NSN") for the CAEv2, E-A-R ARC Plug, and Indoor/Outdoor Range Plug, as well as identifiable documents

(by Bates number) from which Plaintiffs could ascertain the relevant sales histories for the aforementioned products. *Id.* at 13.[3]

As to Interrogatory No. 8, Defendants raised the same "unduly burdensome" objection to providing information equally available to the parties from documents produced during this litigation and identified the same documents (by Bates number) containing relevant sales data. *Id.* at 22–23.

In response to Interrogatory No. 13, Defendants raised numerous objections:

> Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any ... persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD," which, read literally, would cover not only (i) any current or former employee who has ever discussed a hearing protection device, but also, among other things, (ii) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, and (iii) every attorney who has ever represented Defendants in litigation regarding a hearing protection device. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any HPD" other than Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold

---

[3] The documents produced by Defendants are spreadsheets they say detail "every sale of the CAEv2 over the past twenty years." ECF No. 1077 at 7. Defendants harvested data from numerous databases, compiled this data (where available) into Excel spreadsheets, and produced a glossary describing each column in the spreadsheets. *Id.* at 7–8.

by Defendants for civilian use. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks "the amount of such compensation, ... and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation." Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

ECF No. 1059-2 at 36–37. "Subject to and without waiving" these objections, Defendants identified 21 individuals who "may have spoken about or promoted the [CAEv2] or any like-design dual-ended earplugs sold by Defendants for civilian use at industry trade shows or in a marketing capacity." *Id.* at 37–38.

In the same vein, Defendants' answer to Interrogatory No. 14 refers only to the individuals responsive to Interrogatory No. 13 "[s]ubject to and without waiving" the following objections:

Defendants object to the terms "thought leaders" and "key opinion leaders" as vague and ambiguous. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case, including because, read literally, it would cover not only (i) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, but also (ii) every consulting or testifying expert who has ever researched or opined on hearing loss or hearing protection devices in the context of litigation. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks

6

information regarding "the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise," without any particular connection to the Combat Arms Earplug version 2, any like-design dual-ended earplugs sold by Defendants for civilian use, or the specific issues at issue in this litigation. Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

*Id.* at 39–40.

Defendants objected to the breadth, burden, and proportionality of Interrogatory No. 15 to the extent the request sought: (1) discovery on hearing devices other than the CAEv2 and "any like-design dual-ended earplugs sold by Defendants for civilian use"; (2) voluminous information for each study (pertaining to the subparts of the interrogatory); (3) information obtainable in publicly available literature or beyond the scope of the documents produced subject to the TAR protocol; (4) discovery available from the military or other third parties, which was ongoing; (5) the transmission of testing data between Defendants and the United States Government, which was the subject of Interrogatories Nos. 5 & 9; and (6) material protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity. ECF No. 1059-2 at 40–42.

"Subject to and without waiving their objections," Defendants identified "non-publicly available attenuation testing they [were] aware of related to the [CAEv2] and any like-design dual-ended earplugs sold by Defendants for civilian use," and referred Plaintiffs to documents produced by the U.S. Government. *Id.* at 42–47.

Lastly, as to Interrogatory No. 16, Defendants objected to the breadth, burden, and proportionality of the request to the extent it sought information regarding devices manufactured by Defendants for civilian use other than the CAEv2 and any "like-design" or devices developed by other entities. ECF No. 1059-2 at 47. Defendants further objected to Interrogatory No. 16 to the extent it requested discovery duplicative of that provided in response to other interrogatories. *Id.* at 47–48. Again, subject to their objections, Defendants identified the "Combat Arms family of products" and the "Ultra9000 earmuff" as HPDs responsive to Interrogatory No. 16. *Id.* at 47.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery limited to nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is construed "broadly to encompass any matter that bears on, or that

reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Ford v. Gov't Emps. Ins. Co.*, No. 1:14-cv-180-MW-GRJ, 2015 WL 11109373, at *1 (N.D. Fla. Apr. 3, 2015). Determining whether discovery is proportional requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Where a party objects to an interrogatory or gives an answer that is improper or incomplete, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iii). This Court has "broad discretion … to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 26(b)).

The Court will consider only those objections to discovery that were timely raised and are relied upon in response to the motion to compel. *Moses v. Halstead*, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006); *see also Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 n.1 (M.D. Fla. 1990). The objecting party typically bears the burden to substantiate its

objections.  *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005).

If a party objects to the relevance of propounded discovery requests, the objecting party must establish that the requested discovery (1) is not relevant under Rule 26(b)(1), or (2) is marginally relevant, such that production would cause potential harm outweighing the presumption in favor of broad disclosure.  *Am. Fed'n of State, Cty. and Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011); *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000); *see also Pediatric Servs. of Am., Inc. v. Kendrick*, No. 3:18-cv-1372-RV-CJK, 2019 WL 580786, at *2 (N.D. Fla. Jan. 17, 2019).  If the requested discovery's relevance is not apparent, however, the party seeking the production must demonstrate relevancy.  *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 666 (S.D. Fla. 2012).

### III.  DISCUSSION

Plaintiffs' motion addresses three categories of discovery divided among six interrogatories: (1) sales and distribution data for the CAEv2 (Interrogatories Nos. 3 & 8); (2) marketing and promotional efforts for the CAEv2 (Interrogatories Nos. 13 & 14); and (3) knowledge of alternative feasible designs to the CAEv2 manufactured by Defendants or other

entities (Interrogatories Nos. 15 & 16).[4]  The Court will address each category in turn.

## A.    Sales and Distribution Data

Plaintiffs argue that the spreadsheets Defendants produced in response to Interrogatories Nos. 3 & 8 are insufficient because they do not include relevant information requested in the interrogatories, namely (i) the dates of first and last sales of the 3M Earplugs; (ii) the number of units sold to domestic purchasers; (iii) the number of units sold to each entity, agency, bureau, division, branch, or other subpart of the U.S. Government; (iv) the number of units sold to foreign purchasers; (v) the Government individuals who placed the subject orders; (vi) the Government subparts that took delivery of the Earplugs; (vii) Defendants' sales representatives involved in the sales; and (viii) Defendants' agents who fulfilled orders. ECF No. 1059 at 14–16.  Plaintiffs contend that Defendants improperly rely on Federal Rule of Civil Procedure 33(d) in producing these documents as a response to Plaintiffs' interrogatories because Plaintiffs "lack the

---

[4] Plaintiffs have advised Defendants and the Court that their discovery requests and the relief sought in the instant motion to compel are limited in accordance with the Court's October 9, 2019, discovery order, ECF No. 748.  That is, Plaintiffs are no longer seeking sales or marketing information for predecessor and successor designs of the CAEv2. ECF No. 1059 at 13 n. 18; *id.* at 20 n.26.

information and ability to discern the answers to the disputed [i]nterrogatories from the" identified records.  *Id.* at 18.[5]

Defendants explain how they compiled the spreadsheets—which detail the available data for every CAEv2 sale over the past 20 years—without having a singular source for this information.  ECF No. 1077 at 7.  Defendants say they spent hundreds of hours working with numerous employees to harvest multiple databases and to compile the data into spreadsheets that include information such as "(i) dates of sales and orders; (ii) price; (iii) quantity of units sold; (iv) entities who received shipments; (v) purchaser identity; (vi) shipping destination; and (vii) 3M/Aearo representative involved, where available."  *Id.* at 8–11.  What's more, Defendants produced a glossary, *id.* at 8, and offered two corporate representatives (Brian Myers and Douglas Moses) to answer questions about the spreadsheets, *id.* at 10.  Defendants argue that they should not be compelled to provide information derived from their spreadsheets in Plaintiffs' preferred format.  *Id.* at 12.

_____

[5] Rule 33(d) states: "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."

The Court concludes that Defendants have satisfied their discovery obligations under Federal Rule of Civil Procedure 33 as to the requested sales and distribution data.[6] In lieu of providing summary responses to Interrogatories Nos. 3 & 8, Defendants produced their relevant CAEv2 sales data in a nearly whole-cloth fashion. Although it is questionable whether Defendants' spreadsheets are the type of business records subject to Rule 33(d) because they were created to respond to Plaintiffs' interrogatories rather than in the normal course of business, Defendants otherwise satisfy Rule 33(d).

Defendants do not leave Plaintiffs to guess where, or in what specific documents, they may find the information requested in Interrogatories Nos. 3 & 8. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 282 (N.D. Tex. 2017) (stating Rule 33(d) "generally requires an answering party to point to specific documents, by name or bates number"); *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016) ("When employing Rule 33(d), a responding party must 'specifically identify the documents that contain the answers.'" (quoting *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009))).

---

[6] Defendants do not rely on their discovery objections in response to Plaintiffs' motion to compel, so the Court will not resolve them here. In any event, the parties' discovery dispute is procedural rather than substantive.

Instead, Defendants use a discrete set of Bates numbers to refer Plaintiffs to identifiable spreadsheets that include the requested information. This is not the type of document dump that offends the letter and spirit of Rule 33(d). *See Landis*, 317 F.R.D. at 594 ("Making only a general reference to a mass of documents or records is an abuse of Rule 33(d)."); *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278–79 (D. Md. 2012) ("In order to satisfy [Rule] 33(d), a party must therefore identify the particular document or documents within a production that will answer the interrogatory. A document dump of thousands of documents will not suffice." (internal citations omitted)). Indeed, Defendants acted in accordance with Rule 33(d) when it provided Plaintiffs with a glossary and two corporate representatives for deposition to explain the compilation and scope of the spreadsheets. *See Minter*, 286 F.R.D. at 279 ("If the records produced are voluminous, the responding party may need to produce an index to guide their opponent to responsive documents."); *United States ex rel. Englund v. Los Angeles Cty.*, 235 F.R.D. 675, 681 (E.D. Cal. 2006) (same).

At bottom, Plaintiffs should be able to obtain from Defendants' spreadsheets the sales and distribution information sought in Interrogatories Nos. 3 & 8 to the extent that information exists and was

available to Defendants. The fact that the information responsive to Plaintiffs' interrogatories is voluminous is a natural consequence of the wide-ranging litigation in this case. The Court has no doubt that it will take Plaintiffs considerable time and effort to obtain the information it requested in their interrogatories from the spreadsheets, but that information does not appear to be any more easily available to Defendants than in the format already produced. That is to say, there is no suggestion or evidence that Defendants are attempting to "hide the ball" or sandbag Plaintiffs.

Accordingly, Plaintiffs' motion to compel better responses to Interrogatories Nos. 3 & 8 is **DENIED**.

### B. Marketing and Promotional Efforts

Turning to Interrogatories Nos. 13 & 14, Plaintiffs sought to identify individuals such as scientists, audiologists, physicians, medical professionals, professional associations, thought leaders, academics, and key opinion leaders—collectively referred to by the Court as "specialists" for the purpose of resolving this motion—who Defendants compensated to research, publish about, or otherwise promote the CAEv2. ECF No. 1059 at 19–20. Defendants objected to any overbroad or unduly burdensome production that would require them to interview a myriad of employees or counsel about what they may have said about the CAEv2, but they

provided Plaintiffs with a list of 21 specialists who may have spoken about or promoted the CAEv2 and any like-design dual-ended earplugs sold by Defendants for civilian use at industry trade shows or in a marketing capacity.  ECF No. 1059-2 at 36–40.

Plaintiffs argue that Defendants' list of 21 specialists is an incomplete response because it fails to provide information requested in their interrogatories pertaining to:

> (i) which of the individuals listed in Defendants' Response to Interrogatory No. 13, if any, Defendants compensated for speaking about the 3M Earplugs; (ii) the amounts of such compensation, if any; (iii) the role each individual played in promotion or marketing of the 3M Earplugs; (iv) the identity of specific programs, speaking engagements, or presentations, relating to the 3M Earplugs, for which Defendants compensated those individuals.

ECF No. 1059 at 21.  Defendants contend in their response that this information is irrelevant for numerous categories of individuals, including *any* current or former employees, *every* external marketing professional, *every* consulting or testifying expert, and Defendants' counsel.  ECF No. 1077 at 19–20.  Notably, however, Defendants are silent as to whether this discovery is relevant to the identified 21 specialists and, if so, why it was not produced in the first instance.  *Id.* at 19–21.

The Court concludes that the information sought by Plaintiffs is relevant to the 21 specialists identified by Defendants in response to

Interrogatories Nos. 13 & 14.  ECF No. 1059 at 22.  Plaintiffs' motion to compel better responses to Interrogatories Nos. 13 & 14, therefore, is due to be **GRANTED**.  Defendants must disclose to Plaintiffs (i) which of the 21 specialists listed in response to Interrogatory Nos. 13 & 14, if any, Defendants compensated for speaking about the CAEv2 and any like-design dual-ended earplugs sold by Defendants; (ii) the amounts of such compensation, if any; (iii) the role each individual played in promotion or marketing of the CAEv2 and any like-design dual-ended earplugs sold by Defendants; and (iv) the identity of specific programs, speaking engagements, or presentations, relating to the CAEv2 and any like-design dual-ended earplugs sold by Defendants, for which Defendants compensated those individuals.  If Defendants do not have this information, Defendants must explain why it is unavailable.

### C.    Alternative Designs

Lastly, Plaintiffs issued two interrogatories seeking information regarding whether Defendants knew about the feasibility of alternative designs to the CAEv2 and any communications with the U.S. Government about alternative designs.  ECF No. 1059 at 22.  In response to Interrogatory No. 15, Defendants identified non-publicly available attenuation testing of which they were aware relating to the CAEv2 and any

like-design dual-ended earplugs sold by Defendants for civilian use. ECF No. 1059-2 at 42. This amounted to 28 studies created over the course of 20 years. *Id.* at 42–46.

Plaintiffs argue this response was insufficient because it failed to identify any testing of predecessor and successor versions of the CAEv2. ECF No. 1059 at 23. Defendants contend that "information on testing Defendants have done on other non-linear products" can be obtained by Plaintiffs from Defendants' testing database (the "HPDA database"), which was produced to Plaintiffs in its native format. ECF No. 1077 at 22.

Plaintiffs' motion to compel a better response to Interrogatory No. 15 is due to be **DENIED** because Defendants have turned over their entire HPDA database to Plaintiffs, which *should* include all of the discovery sought in Interrogatory No. 15 to the extent it exists and is currently available. It is unclear from Defendants' response, however, whether the HPDA database includes, specifically, all available studies in Defendants' possession on the predecessor, successor, and alternative designs of the CAEv2. Defendants merely refer to "other non-linear products" generally. ECF No. 1077 at 22. Defendants, therefore, must certify to Plaintiffs whether the HPDA database includes studies on predecessor, successor, and alternative designs of the CAEv2.

As to Interrogatory No. 16, Plaintiffs argue that Defendants' response was incomplete because it was limited to HPDs manufactured by Defendants rather than *any* passive level-dependent or non-linear HPDs of which Defendants were aware. ECF No. 1059 at 25–27. Defendants assert that Federal Rule of Civil Procedure 26 does not require them to poll their current or former employees to determine whether they were aware of HPDs similar to the CAEv2 manufactured by other companies and, if so, when they became aware of those products. ECF No. 1077 at 23.

The Court agrees this discovery, with some limitation, is relevant to Plaintiffs' claims. Plaintiffs' motion to compel a better response to Interrogatory No. 16 is due to be **GRANTED IN PART**. The Court cannot compel Defendants in some abstract manner to determine and report on their corporate knowledge of all passive level-dependent or non-linear HPDs, as requested in Interrogatory No. 16. Indeed, Plaintiffs have not offered a feasible manner for Defendants to answer this interrogatory as drafted, likely because it raises issues of undue burden and proportionality. However, to the extent Defendants employed an identifiable and discrete group of individuals, or a single individual, who would examine alternative HPDs to their own products (including the CAEv2) and communicated with the United States Government about these designs, Defendants must

identify those individuals and disclose information responsive to Interrogatory No. 16.  Moreover, Defendants must respond as to whether they had conversations with the Government about alternative passive level-dependent or non-linear HPDs, and, if so, identify those conversations.

## IV.  CONCLUSION

Accordingly, it is **ORDERED**:

1.      Plaintiffs' Motion to Compel Discovery, ECF No. 1059, is **GRANTED IN PART and DENIED IN PART**.

2.      Plaintiffs' motion to compel better responses to Interrogatories Nos. 3 & 8 is **DENIED**.

3.      Plaintiffs' motion to compel better responses to Interrogatories Nos. 13 & 14 is **GRANTED**.  Defendants must disclose to Plaintiffs (i) which of the 21 specialists listed in response to Interrogatory Nos. 13 & 14, if any, Defendants compensated for speaking about the CAEv2 and any like-design dual-ended earplugs sold by Defendants; (ii) the amounts of such compensation, if any; (iii) the role each individual played in promotion or marketing of the CAEv2 and any like-design dual-ended earplugs sold by Defendants; and (iv) the identity of specific programs, speaking engagements, or presentations, relating to the CAEv2 and any like-design dual-ended earplugs sold by Defendants, for which Defendants compensated those individuals.  If Defendants do not have this information, Defendants must explain why it is unavailable.

4.      Plaintiffs' motion to compel a better response to Interrogatory No. 15 is **DENIED**.  Defendants, however, must respond as to whether the HPDA database includes studies on predecessor, successor, and alternative designs of the CAEv2.

5.   Plaintiffs' motion to compel a better response to Interrogatory No. 16 is **GRANTED IN PART**.  To the extent Defendants employed an identifiable and discrete group of individuals, or a single individual, who would examine alternative HPDs to their own products (including the CAEv2) and communicated with the United States Government about these designs, Defendants must identify those individuals and disclose information responsive to Interrogatory No. 16.  Defendants must also respond as to whether they had conversations with the Government about alternative passive level-dependent or non-linear HPDs, and, if so, identify those conversations.

**DONE AND ORDERED** this 10th day of April 2020.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge