DX4

Confidential - Pursuant to Protective Order

1           UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF FLORIDA
2               PENSACOLA DIVISION
3

    IN RE: 3M COMBAT ARMS   )  Case No.
4   EARPLUG PRODUCTS         )  3:19md2885
    LIABILITY LITIGATION     )
5   _____  )  Judge M. Casey
                             )  Rodgers
6   THIS DOCUMENT RELATES    )  Magistrate Judge
    TO ALL CASES             )  Gary R. Jones
7
8           FRIDAY, OCTOBER 18, 2019
9   CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                  - - -
11          Videotaped deposition of Brian
12   Myers, held at the offices of KIRKLAND &
13   ELLIS LLP, 300 North LaSalle, Chicago,
14   Illinois, commencing at 9:00 a.m., on the
15   above date, before Carrie A. Campbell,
16   Registered Diplomate Reporter, Certified
17   Realtime Reporter, Illinois, California &
18   Texas Certified Shorthand Reporter, Missouri
19   & Kansas Certified Court Reporter.
20                  - - -
21
             GOLKOW LITIGATION SERVICES
22      877.370.3377 ph | 917.591.5672 fax
                deps@golkow.com
23
24
25

Confidential - Pursuant to Protective Order

```
 1              A P P E A R A N C E S :
 2
        SEEGER WEISS, LLP
 3      BY:  DAVID R. BUCHANAN
                dbuchanan@seegerweiss.com
 4              MAX KELLY
                mkelly@seegerweiss.com
 5      77 Water Street
        New York, New York  10005
 6      (212) 584-0700
 7
        WAGSTAFF & CARTMELL, LLP
 8      BY:  THOMAS P. CARTMELL
                tcartmell@wcllp.com
 9              KATHLEEN E. HUDNALL
                khudnall@wcllp.com
10      4740 Grand Avenue, Suite 300
        Kansas City, Missouri  64112
11      (816) 701-1100
12
        ABRAHAM, WATKINS, NICHOLS, SORRELS,
13      AGOSTO & AZIZ
        BY:  MUHAMMAD S. AZIZ
14              maziz@awtxlaw.com
        800 Commerce Street
15      Houston, Texas  77002-1776
        (713) 222-7211
16
17      CLARK, LOVE & HUTSON, PLLC
        BY:  EMILY MARLOWE
18              emarlowe@triallawfirm.com
        440 Louisiana Street, Suite 1600
19      Houston, Texas  77002
        (713) 757-1400
20
21      AYLSTOCK, WITKIN, KREIS &
        OVERHOLTZ, PLLC
22      BY:  BRYAN F. AYLSTOCK
                baylstock@awkolaw.com
23             (VIA TELECONFERENCE)
        17 East Main Street
24      Pensacola, Florida  32502
        (850) 202-1010
25      Counsel for Plaintiffs
```

Confidential - Pursuant to Protective Order

```
 1        KIRKLAND & ELLIS LLP
          BY:  MARK J. NOMELLINI
 2            mark.nomellini@kirkland.com
          300 North LaSalle
 3        Chicago, Illinois  60654
          (312) 862-2000

 4

 5        KIRKLAND & ELLIS LLP
          BY:  WHITNEY N. KNOWLTON
 6            whitney.knowlton@kirkland.com
          333 South Hope Street
 7        Los Angeles, California  90071
          (213) 680-8122

 8

 9        KIRKLAND & ELLIS LLP
          BY:  NOLAN STANTON
10            nolan.stanton@kirkland.com
          601 Lexington Avenue
11        New York, New York  10022
          (212) 446-4800

12        Counsel for Defendants

13

14    ALSO PRESENT:
          CHARLES BACHMANN AND COREY TAM,
15        Seeger Weiss

16        ZACH HONE, trial technician, Golkow
          Litigation Services

17

18    V I D E O G R A P H E R :
          DAVID LANE,
19        Golkow Litigation Services

20                     - - -

21

22

23

24

25
```

Confidential - Pursuant to Protective Order

1    Q.    At least the BOM doesn't show

2  that there were any labels prior to July

3  of 2000, correct?

4    A.    The BOM doesn't show that there

5  was anything in this product prior to July

6  of 2000.

7    Q.    And --

8    A.    I only just scanned it, but it

9  seems that that's the earliest date on any of

10  these items.

11    Q.    Did you ask to find the

12  earliest BOMs for the purchases of the Combat

13  Arms Earplug by the military?

14    A.    I asked Dave to produce the

15  BOMs and the history of the BOMs.  This is

16  what he could find.

17        MR. CARTMELL:  Okay.  Could you

18      look for BOMs that may be missing that

19      were in 1999 and provide those to us,

20      Mark?

21        MR. NOMELLINI:  I don't know

22      that any are -- I don't know that any

23      are missing.  If you want to put a

24      request in a follow-up letter, we'll

25      take a look at it.

Confidential - Pursuant to Protective Order

```
1    QUESTIONS BY MR. CARTMELL:

2         Q.     Sir, if you turn to page 15,

3    there's, I believe, a BOM related to blister

4    cards on page 15.

5                Do you see that?

6         A.     That's one of the items on the

7    BOM.

8         Q.     And the first blister card

9    that's indicated on the BOM, which -- let me

10   ask you:  What SKU is this, though, what

11   product?

12        A.     This -- behind the

13   Tab 97079-00000.

14        Q.     Which is what product?

15        A.     It would have been the blister

16   card version that -- we discussed the blister

17   card earlier.

18        Q.     For which product is this?

19        A.     It's the 97079-00000.

20        Q.     Okay.  I'm asking you for the

21   brand name.

22                Is it the Combat Arms?

23        A.     The blister card that we looked

24   at said "indoor/outdoor earplug."  I --

25        Q.     Okay.  So on page 15 of the
```

Confidential - Pursuant to Protective Order

1    BOM, is this --

2                MR. NOMELLINI:  I think he was

3          still talking.

4                THE WITNESS:  I was going to

5          say, I think ultimately that SKU

6          transitioned to be called the Combat

7          Arms Earplug, but it looked like in

8          the beginning it was called the

9          indoor/outdoor earplug.

10   QUESTIONS BY MR. CARTMELL:

11        Q.    Okay.  So to make it clear -- I

12   didn't realize that, sir.

13                To make it clear, Mr. Myers, on

14   page 15, there is a SKU for a product in 1999

15   and 2000.

16                Do you think that the BOM

17   listed here on page 15 is for the AOS,

18   indoor/outdoor, dual-ended commercial

19   product?

20        A.    What you had labeled in the

21   drawing as AOS, I think that's the same

22   product.

23        Q.    The commercial product,

24   correct?

25        A.    When you say "commercial," we

Confidential - Pursuant to Protective Order

1    commercialized all of our products, so...

2         Q.    Oh, I used that word, I

3    thought, because you were using it earlier,

4    but let me use a better word that we can

5    agree on.

6              Are you talking about the AOS

7    product that was sold at retail commercially

8    to consumers?

9         A.    Yes.

10        Q.    Okay.  And so the BOM for the

11   consumer product, AOS indoor/outdoor

12   dual-ended plug, states that the blister

13   cards came into being in the summer of 2000.

14             Do you see that?

15        A.    Yes, I do.

16        Q.    That's the same time that the

17   BOM for the Combat Arms Earplugs, dual-ended

18   earplugs, the label came into play according

19   to the BOM, correct?

20             MR. NOMELLINI:  Which BOM are

21        you referring to in the last part of

22        the question?  Which number?  Just so

23        we're on the same page.

24   QUESTIONS BY MR. CARTMELL:

25        Q.    And, Mr. Myers, the label part

Confidential - Pursuant to Protective Order

1    for the SKU -- for the Combat Arms Earplug on

2    page 1, which is 370-1000, states that the

3    label for the Combat Arms was in the

4    summer -- was first identified in the summer

5    of 2000 as well, correct?

6         A.     As I said, it's clear that

7    there must have been a BOM before this

8    because no -- there were no materials,

9    according to this BOM, in existence before

10   July 2000.

11             MR. CARTMELL:  Object to the

12        response and move to strike it.  I'll

13        ask it again.

14   QUESTIONS BY MR. CARTMELL:

15        Q.     And, Mr. Myers, the BOM for the

16   SKU 370-1000, the Combat Arms Earplug, states

17   that the first time the label appeared in

18   this BOM was the summer of 2000, just like

19   with the consumer product, correct?

20        A.     According to this BOM, all of

21   the materials, including the label, were not

22   valid before July of 2000; yet we know the

23   SKU existed before then because of the

24   costing.  So there must have been something

25   in that SKU before then.

Confidential - Pursuant to Protective Order

1    a label with an NRR rating on it before the

2    NRR rating was even established, wouldn't it?

3         A.     Based on your -- that

4    assumption, yeah.

5               MR. CARTMELL:  Okay.  Do you

6         want to do a quick lunch?

7               MR. NOMELLINI:  Let's keep

8         going.

9    QUESTIONS BY MR. CARTMELL:

10        Q.     Did Aearo at this time, back in

11   2000, have standard operating procedures

12   related to labeling; do you know?

13        A.     There were -- and we can see on

14   some of the documents there was an approval

15   chain where packages and things of that

16   nature were reviewed and signed off.

17        Q.     But have you ever seen any

18   standard operating procedures that the

19   company had related to labeling?

20        A.     I don't recall.  It's been a

21   while, but I don't actually recall having

22   seen that.

23               I think as a part of being ISO

24   certified we would have had a documented

25   process, but I don't recall seeing it.

Confidential - Pursuant to Protective Order

```
 1              (Myers 30(b)(6) Exhibit 18

 2        marked for identification.)

 3   QUESTIONS BY MR. CARTMELL:

 4        Q.     I hand you what's been marked

 5   as Exhibit 18 and represent to you that this

 6   information and the photograph, the blister

 7   pack, I believe, came from the files of 3M

 8   produced in this litigation.

 9              As we discussed, I think,

10   previously, this looks like a blister pack

11   for the AO Safety product, correct?

12        A.     Yes.  It's the blister card,

13   yeah.

14        Q.     The blister card.

15              And next to it or on the back

16   of your exhibit is the actual label that was

17   on the product at this time.

18              Do you see that?

19        A.     I do see that.

20              MR. CARTMELL:  And I think if

21        we can pull up that copyright, Zach,

22        at the bottom there and blow that

23        up -- it's hard to see -- then there's

24        a copyright.  Sorry about that.

25              On the left, yeah, that's it.
```

Confidential - Pursuant to Protective Order

```
 1   QUESTIONS BY MR. CARTMELL:

 2        Q.     You see that?  It looks like

 3   the copyright date is 2000.  Do you see it?

 4               You can see it blown up, sir,

 5   if you want.

 6        A.     Yeah, that looks like a 2000.

 7        Q.     Okay.  And what would that

 8   reflect?

 9               Would that reflect that this

10   was a label that was on the commercial -- or

11   excuse me, the consumer version of the

12   dual-ended plug called the AO Safety plug as

13   of 2000?

14        A.     I'm sorry, one more time,

15   please.

16        Q.     Would this reflect that this

17   was in play, this actual label was on the

18   product that was being shipped, the AO Safety

19   product, the dual-ended plug, as of 2000?

20        A.     I think it would indicate that

21   this card was made and the contents of this

22   card were created in 2000.

23        Q.     Okay.  And I'm not sure I asked

24   you, but do you know when the first label was

25   created for either the Combat Arms version 2
```

Confidential - Pursuant to Protective Order

1   or the consumer version AO Safety dual-ended

2   plug?

3              Do you know when the label was

4   first created?

5      A.    The first label that -- there

6   were a lot of labels.

7      Q.    I'm talking about the label

8   that has -- that's EPA compliant and has the

9   NRR rating like this on the right here.

10     A.    So obviously it was at least by

11  2000 -- sometime in 2000.  I'm trying to

12  recall if I saw documents that preceded that.

13  I don't recall any.

14     Q.    You've testified earlier that

15  the products, the AO Safety dual-ended

16  product, is technically identical to the

17  Combat Arms Earplug version 2, correct?

18     A.    That's my understanding.

19     Q.    And so I take it the REAT

20  testing that would have been done on the

21  Combat Arms Earplug version 2, would that NRR

22  testing also apply to the consumer AO Safety

23  plug?

24             MR. NOMELLINI:  Outside the

25        scope.

1          You can answer in your personal

2     capacity.

3          THE WITNESS:  I think that that

4     same data was carried through.

5  QUESTIONS BY MR. CARTMELL:

6     Q.    Okay.  In other words, the NRR

7  data would be the same on the consumer

8  products that were dual-ended as they would

9  be on the Combat Arms version 2 label as far

10 as the NRR rating, correct?

11    A.    So to the best of my

12 recollection, that's true.

13    Q.    Okay.  And therefore, because

14 we just saw that, if we assume that the REAT

15 study that was in May of 2000 was the one

16 that established the NRR of 22, then likely

17 that -- this label that has the NRR rating

18 would have been after that time, correct?

19          MR. NOMELLINI:  Form.

20     Foundation.

21          THE WITNESS:  So are you asking

22     if this card would have been created

23     after that test?

24 QUESTIONS BY MR. CARTMELL:

25    Q.    Yes.

Confidential - Pursuant to Protective Order

```
 1                    CERTIFICATE
 2
 3            I, CARRIE A. CAMPBELL, Registered
      Diplomate Reporter, Certified Realtime
 4    Reporter and Certified Shorthand Reporter, do
      hereby certify that prior to the commencement
 5    of the examination, Brian Myers, was duly
      sworn by me to testify to the truth, the
 6    whole truth and nothing but the truth.
 7            I DO FURTHER CERTIFY that the
      foregoing is a verbatim transcript of the
 8    testimony as taken stenographically by and
      before me at the time, place and on the date
 9    hereinbefore set forth, to the best of my
      ability.
10
              I DO FURTHER CERTIFY that I am
11    neither a relative nor employee nor attorney
      nor counsel of any of the parties to this
12    action, and that I am neither a relative nor
      employee of such attorney or counsel, and
13    that I am not financially interested in the
      action.
14
15
16
              Carrie A. Campbell
17    CARRIE A. CAMPBELL,
      NCRA Registered Diplomate Reporter
18    Certified Realtime Reporter
      California Certified Shorthand
19    Reporter #13921
      Missouri Certified Court Reporter #859
20    Illinois Certified Shorthand Reporter
      #084-004229
21    Texas Certified Shorthand Reporter #9328
      Kansas Certified Court Reporter #1715
22    Notary Public
23    Dated:  November 1, 2019
24
25
```

Confidential - Pursuant to Protective Order

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF FLORIDA

 3                    PENSACOLA DIVISION

 4

 5   IN RE:  3M COMBAT ARMS      )  Case No. 3:19md2885

 6   EARPLUG PRODUCTS LIABILITY  )

 7   LITIGATION                  )  Judge M. Casey

 8   ------------------------    )  Rodgers

 9                               )  Magistrate Judge

10   THIS DOCUMENT RELATES TO    )  Gary R. Jones

11   ALL CASES                   )

12     CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13        The continued videotaped deposition of BRIAN

14   MYERS, called by the Plaintiffs for examination, taken

15   pursuant to the Federal Rules of Civil Procedure of

16   the United States District Courts pertaining to the

17   taking of depositions, taken before JULIANA F.

18   ZAJICEK, a Registered Professional Reporter and

19   Certified Shorthand Reporter, at the offices of

20   Kirkland & Ellis, LLP, Suite 600, 300 North LaSalle

21   Street, Chicago, Illinois, on the 13th day of

22   December, 2019, commencing at 9:08 a.m.

23

24

25
```

Confidential - Pursuant to Protective Order

```
 1   PRESENT:
 2   ON BEHALF OF THE PLAINTIFFS:
 3        CLARK, LOVE & HUTSON, PLLC
          440 Louisiana Street, Suite 1600
 4        Houston, Texas 77002
          713-757-1400
 5        BY:  EMILY MARLOWE, ESQ.
               emarlowe@triallawfirm.com
 6
                   -and-
 7
          SEEGER WEISS, LLP
 8        77 Water Street
          New York, New York 10005
 9        212-584-0700
          BY:  DAVID R. BUCHANAN, ESQ.
10             dbuchanan@seegerweiss.com
               MAX KELLY, ESQ.
11             mkelly@seegerweiss.com
12                 -and-
13        TRACEY & FOX
          440 Louisiana Street, Suite 1901
14        Houston, Texas 77002
          713-495-2333
15        BY:  LAWRENCE TRACEY, ESQ.
               ltracey@traceylawfirm.com
16             SEAN TRACEY, ESQ.
               stracey@traceylawfirm.com
17             CARTER SNEAD, ESQ.
               csnead@traceylawfirm.com
18
19   ON BEHALF OF THE DEFENDANTS:
20        KIRKLAND & ELLIS LLP
          300 North LaSalle
21        Chicago, Illinois 60654
          312-862-2000
22        BY:  MARK J. NOMELLINI, ESQ.
               mark.nomellini@kirkland.com;
23             TABITHA DE PAULO, ESQ.
               tabitha.depaulo@kirkland.com;
24             NOLAN LEUTHAUSER, ESQ.
               nolan.leuthauser@kirkland.com
25
```

Confidential - Pursuant to Protective Order

```
 1   ALSO PRESENT:

 2        CHARLES BACHMANN, Legal Analyst,

 3            Seeger Weiss, LLP

 4        DANIEL OLIVIO, Paralegal,

 5            Tracey & Fox

 6        CHRIS GRIMM, Trial Technician,

 7            Golkow Litigation Services

 8

 9   THE VIDEOGRAPHER:

10        DEVYN MULHOLLAND,

11            Golkow Litigation Services

12

13

14

15   REPORTED BY:  JULIANA F. ZAJICEK, CSR No. 84-2604.

16

17

18

19

20

21

22

23

24

25
```

Confidential - Pursuant to Protective Order

```
 1    Version 2, 1999 through 2010."

 2         Q.    Do you have personal knowledge that each

 3    of the amounts on this chart is accurate?

 4         A.    I do not.  In fact, I think Plaintiffs'

 5    counsel said that they had created this chart based on

 6    data or records provided.

 7         Q.    Okay.  Let's go to -- okay.  Let's go to

 8    Exhibit 95.  Provide copies to counsel.

 9                    (WHEREUPON, a certain document was

10                     marked Brian Myers Deposition Exhibit

11                     No. 95, for identification, as of

12                     12/13/2019.)

13         MR. BUCHANAN:  Thank you.

14    BY MR. NOMELLINI:

15         Q.    Can you identify this document?

16         A.    It's a -- it's a forward from Elliott to

17    Dick Knauer, Bob Falco and Brian Myers of an e-mail

18    from a Lorraine.

19         Q.    And could you read the e-mail -- the

20    portion of the e-mail that you received that begins

21    with "Elliott, Below is a story"?

22         A.    Sure.

23               "Elliott, below is a story that captures

24    an experience with the CAE in Iraq.  This is part of a

25    larger information gathering process.  This
```

Confidential - Pursuant to Protective Order

```
 1   information is not to be shared or used for marketing

 2   or anything remotely like that.  This is an oppor" --

 3   "it is an opportunity to hear from the troops what

 4   they would like to see in the earplug.  Lorraine."

 5        Q.    Okay.  And can you read the portion of the

 6   e-mail that begins with "A few months ago"?

 7        A.    "A few months ago I met with Fort Drum's

 8   range/RID Safety Officer (Bob Boschok).  Prior to our

 9   meeting he sent one Fort Drum, 2BCTs safety officer

10   (William Delsolar) an e-mail asking if he has feedback

11   on the CAE.  I have a hard copy of the e-mails.

12   Mr. Boschok's question on 14 December 2004: '... Do

13   you have some specific experience with" --

14   "experiences with these CAEs that you want me to

15   share?...'

16           "Mr. Delsolar's response (verbatim) on 14

17   December 2004:  'They work period.'

18           "Mandatory wear per Pegasus 6.  Unless the

19   IED is very close and very big, there are no

20   detrimental effects of the blast to the ears.

21   Occasionally, a soldier will suffer some recoverable

22   damage.  But without them the damage tends to be

23   almost complete and permanent."

24           Do you want me to go on?

25        Q.    Yes.
```

Confidential - Pursuant to Protective Order

```
 1        A.     "Getting enough of them in the system and

 2   getting soldiers to wear them always in the field is

 3   key.  Hearing is reduced somewhat, but in this

 4   threat" -- "high threat environment it doesn't matter

 5   much.  I had no trouble hearing the one shot over my

 6   head in Abu Gharib today.  The earplugs also have the

 7   added benefit of protecting wearers from the sound

 8   pressure shock effects.  Instead of being knocked

 9   unconscious or stunned they quickly recover in time to

10   react."

11        MR. NOMELLINI:  Okay.  Let's mark as Exhibit 96

12   3M's objections to Plaintiffs' 30(b)(6) notice.

13                    (WHEREUPON, a certain document was

14                     marked Brian Myers Deposition Exhibit

15                     No. 96, for identification, as of

16                     12/13/2019.)

17   BY MR. NOMELLINI:

18        Q.     And the subject -- the subject that you

19   were designated for is subject three, correct?

20        A.     Yes, subject No. 3.

21        Q.     Okay.

22        A.     On Page 7.

23        Q.     Could you read 3M's response to subject

24   No. 3 beginning with "3M offers to produce," in the

25   second paragraph?
```

Confidential - Pursuant to Protective Order

1       A.    "3M offers to produce a witness or

2   witnesses to generally describe the manner in which

3   CAE v2 was purchased by the DOD from 3M to the best of

4   3M's knowledge based upon a reasonable investigation

5   of information within 3M's possession, custody or

6   control."

7       Q.    Okay.  It says:  "Generally describe the

8   manner."

9             As a 30(b)(6) witness, did you undertake

10  to identify every contract related to the Combat Arms

11  Version 2?

12      MR. BUCHANAN:  Objection to form, misstates the

13  agreement and leading.

14  BY THE WITNESS:

15      A.    I did not.

16      MR. NOMELLINI:  Let's go off the record.

17      THE VIDEOGRAPHER:  Off the record at 7:42 p.m.

18                  (WHEREUPON, a recess was had

19                   from 7:42 to 8:19 p.m.)

20      THE VIDEOGRAPHER:  We are back on the record at

21  8:19 p.m.

22                  FURTHER EXAMINATION

23  BY MR. SEAN TRACEY:

24      Q.    Mr. Myers, I have a couple of questions

25  about some of the documents you used in your direct

Confidential - Pursuant to Protective Order

```
 1    examination.  The first one is Exhibit No. 89, which

 2    I'm going to put here.  This is -- this is an e-mail

 3    from Doug Ohlin to you in 2002.

 4              And do you see, I can't write on it, but

 5    right here in the middle of it, do you see where Doug

 6    Ohlin is talking to you about how they recommend

 7    folding back -- the opposing plug be folded back in

 8    excessively large ear canals?

 9              Do you see that?

10    A.    I do see those words on that -- on that

11    memo.

12    Q.    That's another time he sent you something

13    about excessively large ear canals and you didn't

14    respond correcting him, isn't it?

15    A.    I don't know that I had a response to that

16    or provided a response to that, so.

17    Q.    There should have been a response that

18    said, Doug, that's not right, that's not what our data

19    shows?

20    A.    Again, I -- I don't know what -- what I

21    would have responded to him.

22    Q.    Well, wouldn't it be nice to respond with

23    the truth, that is, that's not what our data shows?

24    A.    Again, I -- I don't recall the response,

25    so I'm not sure what I responded to him.  I may have.
```

Confidential - Pursuant to Protective Order

```
1       Q.    No, but I'm asking you what the response

2   should have been.

3            The response should have been, Doug Ohlin,

4   that's not true, that's not what our data shows, and

5   we are the only company in the free world that's done

6   any testing on this?

7       MR. NOMELLINI:  Object to the form of the

8   question.

9   BY THE WITNESS:

10      A.    Again, I -- I don't know that I responded

11  or what I responded with.

12  BY MR. SEAN TRACEY:

13      Q.    Right.  But I'm asking you you should have

14  responded and you should have corrected his -- his

15  mistake.  If we are all working together, we are all

16  technical people trying to get along and do the right

17  thing, isn't that what should have been done?

18      MR. NOMELLINI:  Objection to the form of the

19  question.

20  BY THE WITNESS:

21      A.    I don't know.

22  BY MR. SEAN TRACEY:

23      Q.    All right.  Well, down below in the last

24  paragraph, he is talking about, "like any" -- "like

25  any earplug, it is absolutely essential that the
```

Confidential - Pursuant to Protective Order

```
 1                  REPORTER'S CERTIFICATE

 2

 3              I, JULIANA F. ZAJICEK, a Registered

 4    Professional Reporter and Certified Shorthand

 5    Reporter, do hereby certify:

 6              That previous to the commencement of the

 7    examination of the witness herein, the witness was

 8    duly sworn to testify the whole truth concerning the

 9    matters herein;

10              That the foregoing deposition transcript

11    was reported stenographically by me, was thereafter

12    reduced to typewriting under my personal direction and

13    constitutes a true record of the testimony given and

14    the proceedings had;

15              That the said deposition was taken before

16    me at the time and place specified;

17              That I am not a relative or employee or

18    attorney or counsel, nor a relative or employee of

19    such attorney or counsel for any of the parties

20    hereto, nor interested directly or indirectly in the

21    outcome of this action.

22              IN WITNESS WHEREOF, I do hereunto set my

23    hand on this 15th day of December, 2019.

24

25    JULIANA F. ZAJICEK, Certified Reporter
```