# DX6

Confidential - Pursuant to Protective Order

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
 2                   PENSACOLA DIVISION

 3

     IN RE: 3M COMBAT ARMS  )   Case No.
 4   EARPLUG PRODUCTS       )   3:19md2885
     LIABILITY LITIGATION   )
 5   _____ )   Judge M. Casey
                            )   Rodgers
 6   THIS DOCUMENT RELATES  )   Magistrate Judge
     TO ALL CASES           )   Gary R. Jones
 7

 8           THURSDAY, OCTOBER 17, 2019
 9      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                       - - -
11          Videotaped deposition of Douglas
12   Moses, held at the offices of Kirkland &
13   Ellis LLP, 300 North LaSalle Drive, Chicago,
14   Illinois, commencing at 9:02 a.m., on the
15   above date, before Carrie A. Campbell,
16   Registered Diplomate Reporter, Certified
17   Realtime Reporter, Illinois, California &
18   Texas Certified Shorthand Reporter, Missouri
19   & Kansas Certified Court Reporter.
20                       - - -
21
             GOLKOW LITIGATION SERVICES
22       877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com
23

24

25
```

```
              Confidential - Pursuant to Protective Order

  1                 A P P E A R A N C E S :
  2
           SEEGER WEISS, LLP
  3        BY:  DAVID R. BUCHANAN
                dbuchanan@seegerweiss.com
  4             MAX KELLY
                mkelly@seegerweiss.com
  5        77 Water Street
           New York, New York  10005
  6        (212) 584-0700
  7
           WAGSTAFF & CARTMELL, LLP
  8        BY:  THOMAS P. CARTMELL
                tcartmell@wcllp.com
  9        4740 Grand Avenue, Suite 300
           Kansas City, Missouri  64112
 10        (816) 701-1100
 11
           ABRAHAM, WATKINS, NICHOLS, SORRELS,
 12        AGOSTO & AZIZ
           BY:  MUHAMMAD S. AZIZ
 13             maziz@awtxlaw.com
           800 Commerce Street
 14        Houston, Texas  77002-1776
           (713) 222-7211
 15
 16        CLARK, LOVE & HUTSON, PLLC
           BY:  EMILY MARLOWE
 17             emarlowe@triallawfirm.com
           440 Louisiana Street, Suite 1600
 18        Houston, Texas  77002
           (713) 757-1400
 19
 20        AYLSTOCK, WITKIN, KREIS &
           OVERHOLTZ, PLLC
 21        BY:  BRYAN F. AYLSTOCK
                baylstock@awkolaw.com
 22             (VIA TELECONFERENCE)
           17 East Main Street
 23        Pensacola, Florida  32502
           (850) 202-1010
 24
           and
 25
```

Confidential - Pursuant to Protective Order

```
 1      TRACEY & FOX
        BY:  SEAN TRACEY
 2           stracey@traceylawfirm.com
             (VIA TELECONFERENCE)
 3      440 Louisiana Street, Suite 1901
        Houston, Texas  77002
 4      (713) 495-2333
        Counsel for Plaintiffs
 5
 6

        KIRKLAND & ELLIS LLP
 7      BY:  F. CHADWICK MORRISS
             chad.morriss@kirkland.com
 8      1301 Pennsylvania Avenue, NW
        Washington, DC  20004
 9      (202) 389-5996
10      and
11      KIRKLAND & ELLIS LLP
        BY:  WHITNEY N. KNOWLTON
12           whitney.knowlton@kirkland.com
        333 South Hope Street
13      Los Angeles, California  90071
        (213) 680-8122
14      Counsel for Defendants
15
16  ALSO PRESENT:
        CHARLES BACHMANN AND COREY TAM,
17      Seeger Weiss
18      ZACH HONE, trial technician, Golkow
        Litigation Services
19
    V I D E O G R A P H E R :
20      DAVID LANE,
        Golkow Litigation Services
21
                        - - -
22
23
24
25
```

Confidential - Pursuant to Protective Order

1    QUESTIONS BY MR. BUCHANAN:

2        Q.    Okay.  And you said you're not

3    aware of any other, if you will, contract or

4    private-labeling relationship similar to the

5    Browning one?

6        A.    No, I am not aware of any, and

7    I didn't see evidence of it in what I looked

8    at.

9        Q.    Okay.  Was the product that was

10    private-labeled for Browning functionally the

11    same in terms of its product characteristics

12    as the Combat Arms version 2?

13        A.    I don't know that.  I think

14    it's reasonable that it was.

15        Q.    You don't have any information,

16    sitting here today to say it was, you know,

17    from the feature perspective different in

18    design or characteristics?

19        MR. MORRISS:  Objection.

20        THE WITNESS:  I don't have

21    any -- I'm sorry.

22        MR. MORRISS:  Go ahead.  I

23    object to the form.

24        THE WITNESS:  I don't have any

25    information like that.

```
 1                   MR. BUCHANAN:  Okay.  I want to
 2         take a quick break and see if I can
 3         find that.
 4                   MR. MORRISS:  Yeah.
 5                   VIDEOGRAPHER:  Going off the
 6         record at 10:19 a.m.
 7            (Off the record at 10:19 a.m.)
 8                   VIDEOGRAPHER:  Back on the
 9         record at 10:32 a.m.
10    QUESTIONS BY MR. BUCHANAN:
11         Q.    Sir, you know, before the break
12    we were struggling to try to figure out this
13    relationship with Browning.  I understand we
14    had some late-breaking information on your
15    side and ours in that regard.
16                   Have you had a chance to look
17    at that information now?
18         A.    I looked at some of the sales
19    data and some of the dates involved.
20         Q.    You're pointing to Exhibit 4,
21    but that spreadsheet is not in Exhibit 4,
22    right?
23         A.    Correct.
24         Q.    Okay.  That's information for
25    that particular contract or relationship
```

1  that's been identified and put into a
2  different spreadsheet; is that fair?
3      A.   That's fair.
4      Q.   Okay.  I'm told we have a copy
5  of that spreadsheet, but you've looked at it?
6      A.   Just briefly, yes.
7      Q.   Okay.  When did that
8  relationship commence?
9      A.   It looks like the first sale
10 was in November of 2002.
11     Q.   Okay.  And how long did that go
12 on for?
13     A.   Looks like the last PO was
14 issued to us in July of 2009.
15     Q.   Okay.  A PO, that's a contract,
16 purchase order?
17     A.   Purchase order.
18     Q.   Got it.
19          And when you looked at the
20 spreadsheet, sir, did it give you any greater
21 indication of the nature of that relationship
22 or the actual product shipped?
23     A.   The only thing that I saw on
24 that spreadsheet that would be indicative of
25 that would be that it was -- fell into the

```
 1    sporting goods category.
 2         Q.    Okay.  And Browning, as you've
 3    indicated, is a gun manufacturer?
 4         A.    I think so.  I should know
 5    that, but, yeah.
 6         Q.    And is it your understanding,
 7    sir, that Browning was having product private
 8    labeled for them pursuant to these purchase
 9    orders, and the product was Combat Arms
10    version 2?
11         A.    So I know they have a
12    separate -- there must have been a separate
13    part there because it's organized separately.
14    I don't know what -- the packaging or what it
15    looked like.
16         Q.    Is the part number for that
17    particular part on your Exhibit 2?
18         A.    It is not.
19         Q.    Okay.  What is that part
20    number?
21         A.    I actually didn't look at that
22    part number.  I didn't memorize that part
23    number.
24              (Moses 30(b)(6) Exhibit 17
25         marked for identification.)
```

Confidential - Pursuant to Protective Order

1  QUESTIONS BY MR. BUCHANAN:
2      Q.   Okay.  I'm going to pass to you
3  a thumb drive, which won't be helpful to you,
4  sir, without a laptop, but I'm going to ask
5  my colleague to pull up the last three Bates
6  numbers 745, a copy of which is on the thumb
7  drive, for the record.
8           Sir, is this a version --
9  perhaps the columns are in a different scale
10 than you were looking at, but a version of
11 the spreadsheet you reviewed to determine
12 when the first transaction began?
13           MR. MORRISS:  So let me object.
14      To really answer it, he'd probably
15      have to have the old one and compare
16      it.
17           I'm not trying to obstruct you
18      being able to get the answer about the
19      part number, if he can figure out that
20      this is the Browning Excel
21      spreadsheet.
22           MR. BUCHANAN:  I didn't want to
23      resize columns, you know, before we
24      had this conversation.  There's
25      certain information that's concealed,

Confidential - Pursuant to Protective Order

```
 1                        CERTIFICATE
 2
 3            I, CARRIE A. CAMPBELL, Registered
     Diplomate Reporter, Certified Realtime
 4   Reporter and Certified Shorthand Reporter, do
     hereby certify that prior to the commencement
 5   of the examination, Douglas Moses, was duly
     sworn by me to testify to the truth, the
 6   whole truth and nothing but the truth.
 7            I DO FURTHER CERTIFY that the
     foregoing is a verbatim transcript of the
 8   testimony as taken stenographically by and
     before me at the time, place and on the date
 9   hereinbefore set forth, to the best of my
     ability.
10
              I DO FURTHER CERTIFY that I am
11   neither a relative nor employee nor attorney
     nor counsel of any of the parties to this
12   action, and that I am neither a relative nor
     employee of such attorney or counsel, and
13   that I am not financially interested in the
     action.
14
15
16
              _____
17            CARRIE A. CAMPBELL,
              NCRA Registered Diplomate Reporter
18            Certified Realtime Reporter
              California Certified Shorthand
19            Reporter #13921
              Missouri Certified Court Reporter #859
20            Illinois Certified Shorthand Reporter
              #084-004229
21            Texas Certified Shorthand Reporter #9328
              Kansas Certified Court Reporter #1715
22            Notary Public
23            Dated:  October 30, 2019
24
25
```