DX8

Confidential - Pursuant to Protective Order

```
 1                  UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF FLORIDA

 3                      PENSACOLA DIVISION

 4

 5   IN RE:  3M COMBAT ARMS        )  Case No. 3:19md2885

 6   EARPLUG PRODUCTS LIABILITY    )

 7   LITIGATION                    )  Judge M. Casey

 8   -------------------------     )  Rodgers

 9                                 )  Magistrate Judge

10   THIS DOCUMENT RELATES TO      )  Gary R. Jones

11   ALL CASES                     )

12      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13         The videotaped deposition of RONALD WILLIAM

14   KIEPER, called by the Plaintiffs for examination,

15   taken pursuant to the Federal Rules of Civil Procedure

16   of the United States District Courts pertaining to the

17   taking of depositions, taken before JULIANA F.

18   ZAJICEK, a Registered Professional Reporter and

19   Certified Shorthand Reporter, at the Indianapolis

20   Marriott Downtown, The Lincoln Room, 350 West Maryland

21   Street, Indianapolis, Indiana, on the 19th day of

22   December, 2019, commencing at 9:06 a.m.

23

24

25
```

Confidential - Pursuant to Protective Order

```
 1    PRESENT:
 2    ON BEHALF OF THE PLAINTIFFS:
 3          AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
            17 East Main Street, Suite 200
 4          Pensacola, Florida 32502
            850-202-1010
 5          BY:  NEIL D. OVERHOLTZ, ESQ.
                 noverholtz@awkolaw.com
 6

                       -and-
 7

            SEEGER WEISS, LLP
 8          77 Water Street
            New York, New York 10005
 9          212-584-0700
            BY:  DAVID R. BUCHANAN, ESQ.
10               dbuchanan@seegerweiss.com;
                 CALEB SEELEY, ESQ.
11               cseeley@seegerweiss.com
12
      ON BEHALF OF THE DEFENDANTS:
13
            KIRKLAND & ELLIS LLP
14          300 North LaSalle
            Chicago, Illinois 60654
15          312-862-2000
            BY:  SIMON GOTTLIEB, ESQ.
16               simon.gottlieb@kirkland.com
17                   -and-
18          KIRKLAND & ELLIS LLP
            333 South Hope Street
19          Los Angeles, California  90071
            213-680-8122
20          BY:  SIERRA ELIZABETH, ESQ.
                 sierra.elizabeth@kirkland.com
21
22
23
24
25
```

Confidential - Pursuant to Protective Order

```
 1   ALSO PRESENT:

 2        CHARLES BACHMANN, Legal Analyst,

 3            Seeger Weiss, LLP

 4        ZACH HONE, Trial Technician,

 5            Golkow Litigation Services

 6

 7

 8

 9

10   THE VIDEOGRAPHER:

11        DEVYN MULHOLLAND,

12            Golkow Litigation Services

13

14

15

16

17

18

19

20   REPORTED BY:   JULIANA F. ZAJICEK, CSR No. 84-2604.

21

22

23

24

25
```

Confidential - Pursuant to Protective Order

```
 1        Q.     So there were three names I think you

 2   didn't identify as a family member or employee.  Is

 3   that EAS, RSS and MV?

 4        A.     Yes.

 5        Q.     Who are they?

 6        A.     That's correct.

 7               They were just other people that came to

 8   the lab and applied to be test subjects.

 9        Q.     Okay.  So looking at this chart, it's

10   talking about US noise reduction rating, attenuation

11   measurements, and this is describing the process.

12               Ten subjects with normal hearing, right?

13        A.     Yes, that's what it says.

14        Q.     Experimenter fits the hearing protector to

15   subject, right?

16        A.     Yes.

17        Q.     And then it talks about the process that

18   you described and you find the hearing threshold at

19   nine frequencies, right?

20        A.     Yes, that's what it says here.

21        Q.     And off to the right, if we were walking

22   across there, we would see 125, 250, 500, 1000, 2000,

23   3150, 4000, what is that, 6300 and 8000?

24        A.     That's correct.

25        Q.     And those would be the frequencies that
```

Confidential - Pursuant to Protective Order

1   someone was tested at using this NRR type test?

2        MS. ELIZABETH:   Objection; form.

3   BY THE WITNESS:

4        A.    These are the test frequencies we used for

5   many of our tests, yes.

6   BY MR. BUCHANAN:

7        Q.    Okay.  And you understand, really, the

8   concept of this NRR is based on a normal population

9   distribution, right?

10       A.    I -- I am not familiar with, you know,

11   that distribution.  I don't know.

12       Q.    Can you go to .19.

13             It describes attenuation and what it calls

14   a theoretical bell curve.

15             Do you see that?

16       A.    I see the theoretical bell curve, yes.

17       Q.    And then in the middle you have the mean

18   attenuation, right?

19       A.    Well, it says attenuation and dB.  I

20   don't -- there is no scale, so I don't know if that's

21   what the mean equals 40 signifies.  I'm not sure.

22       Q.    Well, do you understand the mean to be the

23   average?

24       A.    The mean is an average, yes.

25       Q.    Okay.  Do you understand in a -- in a

Confidential - Pursuant to Protective Order

1    distribution curve the mean is the middle point?

2         A.    That sounds right, yes.

3         Q.    Okay.  And we see at the heading here

4    "Normal Distribution," right?

5         A.    Yes, it says "Normal Distribution."

6         Q.    It is plotting the measured data, right?

7         A.    Measured data, yes.

8         Q.    Okay.  And so let's go to the next page,

9    .20.  It actually talks about how this NRR thing is

10   supposed to work.

11            Do you understand, sir, that in computing

12   the NRR what happens is the mean attenuation is

13   adjusted with the standard deviation to provide an NRR

14   number?

15       MS. ELIZABETH:  Objection; foundation.

16   BY THE WITNESS:

17       A.    Well, the calculation of the NRR uses the

18   means and the standard deviations, and depending on

19   whether you are calculating a zero standard deviation,

20   one standard deviation or two standard deviation NRR,

21   you use multiples of the standard deviation in the

22   calculation, yes.

23   BY MR. BUCHANAN:

24       Q.    So in an EPA labeling test or an ANSI '74

25   labeling test, you would be using the mean attenuation

Confidential - Pursuant to Protective Order

 1   plus two standard deviations, correct?

 2        A.    To get the two standard deviation NRR,

 3   correct.

 4        Q.    That is the NRR that shows up on packaging

 5   for hearing protection devices in the United States,

 6   correct?

 7        A.    The -- yes.

 8        Q.    All right.  Let's actually go to the next

 9   page.  It will probably make it easier for us because

10   we are all probably having some flashbacks to high

11   school math class on that stuff.

12              "Key Points re NRR computation."

13              Do you see that heading?

14        A.    Yes, I do.

15        Q.    It says standard deviation and mean

16   attenuation of these key points, right?

17        A.    Yes.

18        Q.    You calculate the variability at each

19   frequency.

20              Do you see that?

21        A.    Yes.

22        Q.    And that's, in parentheses, described as

23   standard deviation, right?

24        A.    Yes.

25        Q.    And then you apply a two times standard

Confidential - Pursuant to Protective Order

1    deviation to the mean, right?

2        A.    Yes.

3        Q.    You calculate the mean at each frequency,

4    right?

5        A.    Yes.

6        Q.    And with the applied two times standard

7    deviation, that's supposed to account for 98 percent

8    of the population's hearing protection from the

9    device, right?

10       MS. ELIZABETH:  Objection; form, foundation.

11   BY THE WITNESS:

12       A.    I don't know.  That's what it appears to

13   say, yes.

14   BY MR. BUCHANAN:

15       Q.    Okay.  And you didn't have that

16   understanding, sir, that's what the NRR was supposed

17   to represent?

18       A.    I wasn't aware that it was supposed to

19   account for 98 percent of the population.

20       Q.    Well, when you see -- if you go to the

21   prior page and you see that normal distribution and it

22   shows that red line, 98 percent protection?

23       A.    Yes, I see that.

24       Q.    And the arrow is going off to the right.

25             Do you see that?

Confidential - Pursuant to Protective Order

```
 1        A.    Yes.

 2        Q.    Okay.  So 98 percect -- 98 percent

 3   protection to the right of that point that is two

 4   standard deviations below the average, right?

 5        MS. ELIZABETH:  Objection; form.

 6   BY THE WITNESS:

 7        A.    Two standard deviations...  I don't know

 8   if it is two standard deviations below the average.  I

 9   don't -- I don't know if that's the case.

10   BY MR. BUCHANAN:

11        Q.    Okay.

12        A.    I don't understand that.

13        Q.    We can agree that when this is put into

14   text on the next page:  "Apply the two times standard

15   deviation," and in parens it says:  "Accounts for

16   98 percent of the population," right?

17        A.    Yes, that's what it says.

18        Q.    And, sir, we see the EPA label off to the

19   right, don't we, sir?

20        A.    Yes.

21        Q.    And this is not an EPA label for the

22   Combat Arms Version 2 or any version, right?

23        MS. ELIZABETH:  Objection; form.

24   BY THE WITNESS:

25        A.    According to the label, it's for the
```

Confidential - Pursuant to Protective Order

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, JULIANA F. ZAJICEK, a Registered

 4    Professional Reporter and Certified Shorthand

 5    Reporter, do hereby certify:

 6            That previous to the commencement of the

 7    examination of the witness herein, the witness was

 8    duly sworn to testify the whole truth concerning the

 9    matters herein;

10            That the foregoing deposition transcript

11    was reported stenographically by me, was thereafter

12    reduced to typewriting under my personal direction and

13    constitutes a true record of the testimony given and

14    the proceedings had;

15            That the said deposition was taken before

16    me at the time and place specified;

17            That I am not a relative or employee or

18    attorney or counsel, nor a relative or employee of

19    such attorney or counsel for any of the parties

20    hereto, nor interested directly or indirectly in the

21    outcome of this action.

22            IN WITNESS WHEREOF, I do hereunto set my

23    hand on this 22nd day of December, 2019.

24

25            JULIANA F. ZAJICEK, Certified Reporter
```