# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE GOVERNMENT CONTRACTOR DEFENSE

# TABLE OF CONTENTS

ARGUMENT ....................................................................................................1

I.   The Defense Does Not Preempt Plaintiffs' Failure-to-Warn Claims Because Defendants Cannot Satisfy *Dorse* ......................................................1

II.  The Defense Does Not Preempt Plaintiffs' Design-Defect Claims Because Defendants Cannot Satisfy Any of *Boyle*'s Conditions ....................................3

   A.   The military did not approve reasonably precise specifications ...............4

   B.   The CAEv2 failed to conform to the purported specifications .................6

   C.   Defendants knew more than the military about the CAEv2's dangers and consequences but did not share that information ...............................7

      1.   Defendants withheld information about the specific dangers and consequences ..............................................................................8

      2.   The military did not have independent knowledge of the specific dangers and consequences ...............................................9

      3.   Defendants do not deserve *Boyle* immunity ......................................11

III. This Case Lacks All of the Hallmarks of a Government Contractor Case ......12

   A.   The defense does not apply to products with commercial counterparts ..12

   B.   The defense does not apply to stock products .........................................14

   C.   The defense does not apply without a federal procurement contract.......15

CONCLUSION .............................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. McDonnell Douglas Corp.*,
  989 F.2d 794 (5th Cir. 1993) .......................................................................4

*Beech Aircraft v. Rainey*,
  488 U.S. 153 (1988) .....................................................................................11

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ............................................................................ *passim*

*Brinson v. Raytheon Co.*,
  571 F.3d 1348 (11th Cir. 2009) .............................................................. 13, 15

*Burgess v. Colorado Serum Co., Inc.*,
  772 F.2d 844 (11th Cir. 1985) ....................................................................13

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ........................................................................................5

*Crace v. Northrop Grumman Ship Sys.*,
  2015 WL 4129216 (E.D. La. July 8, 2015) ..................................................3

*Dorse v. Armstrong World Indus., Inc.*,
  513 So.2d 1265 (Fla. 1987) .........................................................................15

*Dorse v. Eagle-Picher Indus., Inc.*,
  898 F.2d 1487 (11th Cir. 1990) ............................................................ *passim*

*Dugas v. 3M Co.*,
  2016 WL 3965953 (M.D. Fla. June 22, 2016) ..................................... *passim*

*Ferguson v. Bombardier Servs. Corp.*,
  2005 WL 8160215 (M.D. Fla. Mar. 25, 2005) ............................................4

*Gadsden Indus. Park, LLC v. United States*,
  111 F. Supp. 3d 1218 (N.D. Ala. 2015) .......................................................8

*Glassco v. Miller Equip. Co., Inc.*,
  966 F.2d 641 (11th Cir. 1992) ..........................................................................1, 14

*Good v. Armstrong World Indus., Inc.*,
  914 F. Supp. 1125 (E.D. Pa. 1996)..........................................................................14

*Graves v. 3M Co.*,
  2020 WL 1333135 (D. Minn. Mar. 23, 2020) ..........................................................1

*Gray v. Lockheed Aeronautical Sys. Co.*,
  125 F.3d 1371 (11th Cir. 1997) ..........................................................................6, 7

*Harduvel v. Gen. Dynamics Corp.*,
  878 F.2d 1311 (11th Cir. 1989) ................................................................. *passim*

*In re Agent Orange Prod. Liab. Litig.*,
  304 F. Supp. 2d 404 (E.D.N.Y. 2004)......................................................................10

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008) ........................................................................ 15, 16

*In re Joint E. & S. Dist. N.Y. Asbestos Litig.*,
  897 F.2d 626 (2d Cir. 1990) ..........................................................................11

*In re Hawaii Fed. Asbestos Cases*,
  960 F.2d 806 (9th Cir. 1992) ..........................................................................13

*In re Katrina Canal Breaches Litig.*,
  620 F.3d 455 (5th Cir. 2010) ..........................................................................3, 7

*Jowers v. Lincoln Elec. Co.*,
  617 F.3d 346 (5th Cir. 2010) ..........................................................................8

*Killam v. Air & Liquid Sys., Inc.*,
  2016 WL 7438434 (M.D. Fla. Dec. 27, 2016) ..........................................................1

*Livingston v. 3M Co.*,
  2013 WL 12129394 (C.D. Cal. July 11, 2013) ..........................................................3

*Martinez v. Sci. Applications Int'l Corp.*,
  2015 WL 11109381 (S.D. Tex. June 29, 2015) ............................................ 12, 15

*McIntyre v. Warren Pumps LLC*,
  2007 WL 1279638 (N.D. Cal. Apr. 30, 2007) ......................................................... 8

*O'Melveny & Myers v. F.D.I.C.*,
  512 U.S. 79 (1994) .............................................................................................. 13

*Rodriguez v. F.D.I.C.*,
  140 S. Ct. 713 (2020) ......................................................................................... 13

*Trevino v. Gen. Dynamics Corp.*,
  865 F.2d 1474 (5th Cir. 1989) ............................................................................ 11

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
  164 F.3d 123 (2d Cir. 1999) ............................................................................... 13

## ARGUMENT

### I.   The Defense Does Not Preempt Plaintiffs' Failure-to-Warn Claims Because Defendants Cannot Satisfy *Dorse*.

Plaintiffs are entitled to summary judgment on the government contractor defense as to their failure-to-warn claims for a simple reason: Defendants do not address binding precedent and undisputed evidence.

This "Court is bound by the *Dorse* case." *Killam v. Air & Liquid*, 2016 WL 7438434, *5 (M.D. Fla. 2016). *Dorse* applied "*Boyle*'s two-pronged analysis," not its "three-part test," to failure-to-warn claims. *Dorse v. Eagle-Picher*, 898 F.2d 1487, 1489 (11th Cir. 1990). Accordingly, the defense preempts warning claims only if the government prohibited a warning. *Id.* at 1489-90.

Defendants rely on one sentence from one out-of-circuit case in a futile effort to evade this binding precedent. Def-Opp-32-33. Every other case assessing *Dorse*— including recent precedent from 3M's backyard—has acknowledged its strict prohibition test. *E.g.*, *Graves v. 3M*, 2020 WL 1333135, *4 & n.5 (D. Minn. 2020). Defendants thus invite this Court to commit reversible error. *Glassco v. Miller*, 966 F.2d 641, 644 (11th Cir. 1992) (reversing order that was "inconsistent with *Dorse*").

*Dugas*, which Defendants ignore, is on point. The court held the defense did not preempt plaintiff's warning claims because there was "no evidence [the contractor] was prevented from including a warning." *Dugas v. 3M*, 2016 WL

3965953, *5 (M.D. Fla. 2016). The court thus granted plaintiff summary judgment on the defense. *Id*. at *6.

The same is required here. Defendants' only evidence is hearsay that Ohlin supposedly told one employee not to include instructions *inside* bulk-shipment boxes. Def-Opp-33. Regardless, Defendants conceded they could have included warnings on the *outside* of those boxes. PX81(30(b)(6)-410:9-412:23). The MPID required it. PX51(30(b)(6)-278:10-283:4); PX37(3M_MDL000000056). The military *never* prohibited Defendants from warning:

> Q: [A]re you saying that the Army actually denied you the right to give an instruction or a warning to the military and to the soldiers about the product?
>
> A: I don't clearly recall that.
>
> Q: You don't recall anything like that as you sit here today?
>
> A: No. . . . I don't *ever* recall them telling us that we couldn't include something.

PX51(30(b)(6)-287:3-288:10) (emphasis added); PX51(30(b)(6)-281:22-284:13) (finding no documents "somehow restricting or preventing [the] company from providing warnings or cautions or clear, concise instructions"); *see Dorse*, 898 F.2d at 1490 n.2 (witness agreeing he found no documents prohibiting a warning).[1]

---

[1] Failing to address this dispositive evidence, Defendants claim Plaintiffs rely on two witnesses who did not recall a prohibition. Def-Br-33 n.16. Defendants cite a nonexistent page of Plaintiffs' brief and inexplicably fail to identify either witness.

Defendants also fail to dispute they were free to include "complete instructions" and warnings in "pillow packs," PX51(30(b)(6)-277:1-278:9); PX108(3M_MDL000340215); PX107(3M_MDL000013976), and during military trainings, Pl-Opp-39. Defendants' only evidence proves as much. DX10(Santoro-329:19-24). As in *Dorse* and *Dugas*, Plaintiffs are entitled to summary judgment.

## II.   The Defense Does Not Preempt Plaintiffs' Design-Defect Claims Because Defendants Cannot Satisfy Any of *Boyle*'s Conditions.

Plaintiffs' motion addresses two "product feature[s] upon which [their] claim[s] [are] based"—stem length and flange positioning. Pl-Br-18; *In re Katrina*, 620 F.3d 455, 460 (5th Cir. 2010). Defendants agree *Boyle*'s tripartite test depends on "the design feature in question," Def-Opp-19, but fail to address either feature. That failure *ipso facto* entitles Plaintiffs to summary judgment on both features. *Livingston v. 3M*, 2013 WL 12129394, *4 (C.D. Cal. 2013) (granting plaintiff summary judgment because defendant offered no evidence regarding feature at issue); *Crace v. Northrop*, 2015 WL 4129216, *5 (E.D. La. 2015) (similar).

Defendants' unavailing attempt to reduce the two features at issue to one— plug length—belies the record. PX76(3M_MDL000627115) (stem length, not plug length); PX33(3M_MDL000728812) (stem length and "[a]dditional[]" flange-positioning problem). Defendants allege "the military's decision to shorten the plug *is* what moved the opposing flanges closer to the ear," Def-Opp-8, but they forget that given different ear geometries, the CAEv2's opposing flanges could press

3

against some ears even without the 1/4" change, *see* PX33(3M_MDL000728812); PX25(Kieper-914:19-915:20).

### A.    The military did not approve reasonably precise specifications.

Besides ignoring the features "challenged by [Plaintiffs]," Defendants build their opposition on quicksand. *Ferguson v. Bombardier*, 2005 WL 8160215, *4 (M.D. Fla. 2005). They misleadingly truncate *Harduvel*, claiming it is sufficient for *Boyle*'s first condition that "the contractor 'incorporates' the *government's input* 'into a design that the government subsequently reviews and approves.'" Def-Opp-19. *Harduvel* says nothing of the sort. Instead of government input, the Eleventh Circuit referred to "incorporat[ing] government performance *specifications*." *Harduvel v. Gen. Dynamics*, 878 F.2d 1311, 1320 (11th Cir. 1989). And there's the rub: there are no *specifications* for stem length or flange positioning. *E.g.*, *Bailey v. McDonnell*, 989 F.2d 794, 799 (5th Cir. 1993) ("silent" specifications).

Defendants cite no specifications, whether created by them or the government. In an astonishing about-face, Defendants now disclaim the MPID.[2] Def-Opp-10. Ignoring flange positioning, they claim Ohlin "directed that Aearo shorten the earplug." Def-Opp-19. This is not a specification because (1) DLA creates

---

[2] When opposing remand, Defendants declared the MPID "reflect[ed]" and "memorialized" the military's specifications. *Dixon v. 3M*, 3:19-cv-03069-MCR-GRJ, Dkt. 14 at 6, 23. The MPID is silent as to plug length, stem length, and flange positioning. PX37(3M_MDL000000055-58).

specifications, Pl-Br-19; (2) specifications are identified in contracts, not orally, PX43(Merkley-294:12-295:3); PX50(MDL000689903); PX54(MDL000188595); and (3) Ohlin did not "direct" Aearo to shorten the stem—Aearo volunteered, Pl-Opp-19-20. Ohlin's testimony is dispositive:

> Q: Has anyone at 3M or Aearo ever said that your specifications have been responsible for the Combat Arms Business? . . .
>
> A: I don't know of any specification for the Combat Arms Earplug.

PX9(Ohlin-168:17-23, 130:6-23, 133:16-134:10).

Ohlin's testimony aligns with his representations to military officials, PX53(3M_MDL000527305), and the testimony of Defendants' employees and *Touhy* witnesses, Pl-Br-19. His comment that a "combat arms earplug [was] 'evaluated and specified,'" DX54, did not refer to the "current production product," PX26(Berger-267:20-268:11); PX4(3M_MDL000014015); Pl-Opp-18-19.

Assuming *arguendo* there were specifications, Defendants identify no precise ones. Relying on one non-binding case that no court has ever cited, Defendants try to upend the precision requirement. Def-Opp-20. *Boyle* is clear: specifications must dictate "the precise manner of construction." *Boyle v. United Techs.*, 487 U.S. 500, 509 (1988); *Dugas*, 2016 WL 3965953, *4. Defendants' contrary reading would render the "precise" requirement superfluous. *Corr. Servs. v. Malesko*, 534 U.S. 61, 74 n.6 (2001) (government must "direct[] a contractor to do the very thing that is the subject of the claim"). Absent any evidence the military directed *how* to shorten the

plug, there are no precise stem-length specifications. Defendants' arguments about overall length and carrying-case dimensions are red herrings.[3] Def-Opp-21.

Defendants also fail to show a "'continuous back and forth' regarding the allegedly defective feature[s]." Def-Opp-19. Neither the NSN nor Ohlin's acceptance of "production samples" demonstrates "meaningful" approval. Pl-Opp-21-23; PX18(McNamara-349:21-350:3). Defendants claim Ohlin "knew exactly how the product was shortened," Def-Opp-21, but their evidence shows no such thing, DX3(DOD00000136-37). The cited Army testing (DX16) did not involve the final product, Pl-Opp-23, nor did Ohlin consider it, DX9(3M_MDL000039904) (not referencing 1999 Army study). There is no evidence of a continuous back and forth as to the features in question. *E.g.*, *Dugas*, 2016 WL 3965953, *4.

**B.   The CAEv2 failed to conform to the purported specifications.**

Under *Boyle*'s second condition, Defendants argue the CAEv2 complied with the purported "length specification Ohlin approved." Def-Opp-21. Setting aside that no such specification existed, Defendants never dispute that several "shortcomings" render the CAEv2 nonconforming with the alleged dual-mode specification. *Gray v. Lockheed*, 125 F.3d 1371, 1378-79 (11th Cir. 1997); PX9(Ohlin-130:6-23);

---

[3] The military later "enlarged" the carrying case. PX107(3M_MDL000013975); PX113(30(b)(6)-506:12-507:21).

PX37(3M_MDL000000055);   PX33(3M_MDL000728812);   PX94(Kieper-205:4-208:20, 215:17-216:5).

Their reliance on *Katrina* is self-defeating. The Fifth Circuit never reached conformance, holding specifications imprecise because the government's "general directive" left the contractor with design discretion. 620 F.3d at 462-65. If length is the only relevant specification, as Defendants say, their discretion to modify the stem and flanges was unconstrained. *Id.* at 464-65. Defendants therefore cannot show "the government made [them] do it." *Gray*, 125 F.3d at 1377.

### C. Defendants knew more than the military about the CAEv2's dangers and consequences but did not share that information.

Defendants omit Plaintiffs' most critical arguments under *Boyle*'s third condition. They claim "Plaintiffs allege that the military was not on notice of two issues," namely that "the CAEv2's short stem prevented deep insertion" and its "opposing flanges caused imperceptible loosening." Def-Opp-22. But they ignore their nondisclosure of the consequences of these defects, as *Boyle* and its progeny require. 487 U.S. at 512-13; *Harduvel*, 878 F.2d at 1321-22.

Defendants' failure to address that precedent is dispositive. They have not shown—as they must—that they told the military the defects caused "low" and "variable" protection. PX33(3M_MDL000728812). Nor have they shown—as they must—that the military knew the CAEv2 provided one-tenth the promised protection or that its 11 NRR did not protect servicemembers from "gunfire." *Id.*;

7

PX79(McNamara-69:19-70:4). This dooms the defense, just like in *Jowers*, which Defendants fail to distinguish. *Jowers v. Lincoln*, 617 F.3d 346, 354-55 (5th Cir. 2010) (rejecting defense because contractor withheld "internal information" revealing "deeper knowledge of potential harms"); *Gadsden v. United States*, 111 F. Supp. 3d 1218, 1231 (N.D. Ala. 2015); *McIntyre v. Warren*, 2007 WL 1279638, *4 (N.D. Cal. 2007).[4]

> 1.  *Defendants withheld information about the specific dangers and consequences.*

Defendants have cobbled together pieces of testimony that Berger told Ohlin about some nebulous "problem" and that Ohlin told audiologists they "could" fold the CAEv2's flanges "as needed." Def-Opp-8, 23 (citing DX58-59; DX61); Pl-Opp-30-32. Their remaining evidence is either inadmissible hearsay (DX27; DX44), contrary to *Touhy* (DX66), and/or incomplete (DX44).[5] Pl-Opp-33. None of this evidence shows Defendants disclosed their internal information about the specific dangers and consequences. It is undisputed that:

- Defendants *never* shared the Flange Report with the military. PX26(Berger-206:7-13);   PX27(30(b)(6)-286:5-287:9,   352:15-25); PX10(Myers-898:6-25).

---

[4] Failing to distinguish any case Plaintiffs cited, Defendants claim "there was no 'danger' to warn of." Def-Opp-22. They are wrong. Pl-Opp-25-26.

[5] For example, Defendants disregard Robinette's conclusion that Defendants "should have informed the military [about the Flange Report], so that the military could have advised the soldiers of the slippage problem." DX13(CID0237).

- Defendants pulled the CAEv2 *hours* after the Flange Report was disclosed in their sham patent litigation. PX31(Hamer-149:18-157:8); PX38(3M_MDL000332111); PX15(Myers-352:16-353:24).

- Defendants never shared Test 213015 or other REAT tests (Method B *or* ANSI S3.19) with dangerously low NRRs. PX26(Berger-206:7-207:3); PX15(Myers-302:5-24); PX78(Myers-516:24-517:23); PX95(MDL000473611); PX96(MDL000011826); PX97(MDL000018619); PX102(MDL000016456).

- Defendants never disclosed the *specific dangers*. PX55(Berger-151:8-21) (no communications to "Ohlin or anyone else in the military that there was loosening"); PX27(30(b)(6)-295:14-25) (no disclosure that the CAEv2 "was too short for proper insertion"); PX26(Berger-82:9-22) (A: We provided them [Test 213017], and . . . a [fitting] tip . . . . Q: Or what? . . . A: *Period*. That's what we told them.) (emphasis added).

- Defendants never disclosed the *specific consequences*, including the CAEv2's "low" and "variable" protection, its 11 NRR, or that it did not protect users from gunfire. PX33(MDL000728812); PX18(McNamara-152:20-153:9); PX79(McNamara-69:19-70:4); PX114(McNamara-291:1-305:21); PX15(Myers-352:16-353:24).[6]

    2.   *The military did not have independent knowledge of the specific dangers and consequences.*

Blithely ignoring that evidence, Defendants claim the military was "on notice" of the dangers, despite the undisputed fact that the military stopped using the CAEv2 once it discovered the dangers. PX42(3M_TOUHY00002040); PX40(CID0002).

Defendants nonetheless argue that government testing notified the military about the dangers, Def-Opp-25-27, even though the testing revealed no such thing,

---

[6] Ohlin's testimony shows he did not know about the 11 NRR. PX9(Ohlin-191:18-192:23). When Ohlin averred he was not aware of "other earplugs," including the

Pl-Opp-34-35. Only if government testing links a defect to a consequence may a contractor walk away scot-free. *E.g.*, *Agent Orange*, 304 F. Supp. 2d 404, 426-29, 441-42 (E.D.N.Y. 2004).

Defendants also argue the military knew "all preformed earplugs are susceptible to loosening," so the military knew about the CAEv2's *imperceptible* loosening. Def-Opp-25-26. To the contrary, Berger testified that the Flange Report identified an "extra problem" beyond the general problem of one-sided plugs "work[ing] loose." PX115(Berger-538:13-540:6). Merkley, moreover, conceded the "average soldier" could not discern when the CAEv2 broke seal. PX116(Merkley-494:5-495:12).

Defendants further argue the military need not be aware of imperceptible loosening because it occurs only in "soundproof" booths. Def-Opp-5, 27. All contemporaneous records disprove this litigation-driven theory. *E.g.*, PX33(MDL000728812); PX76(MDL000627115); PX117(MDL000434769). And lest Defendants forget, the CAEv2's "hear-through" technology was designed to provide "situation awareness." PX115(Berger-465:8-466:12); Def-Br-4. In fact, soldiers were instructed that the CAEv2 made gunfire sound "louder than with conventional hearing protection." DX42(MDL000055850). Soldiers thus lacked

---

CAEv2, "where the fit protocol was changed after receiving one NRR to get another NRR," he did not limit "fit protocol" to exclude "an instructional change like the flange fold," as Defendants speciously argue. *Id.*; Def-Opp-29-30.

"auditory clue[s] that [they] had lost the seal." Def-Opp-27. Even Myers—the CAEv2's brand manager—"never fe[lt] like [the CAEv2 was] working." PX118(3M_MDL000398074); PX119(Kieper-928:4-929:25).

Nothing Defendants cite changes the fact that not one *Touhy* witness knew about the CAEv2's dangers or consequences. PX23(Babeu-171:4-175:14, 389:20-391:18); PX44(Coleman-202:15-203:12); PX43(Merkley-327:8-12, 331:21-332:16, 349:4-350:4). The Army conducted a two-year investigation and found the military itself was unaware. PX40(CID0001-02); PX120(Coleman-26:22-28:23, 180:8-12, 243:15-244:2, 464:9-22) (six-page report contains "unbiased investigative findings"); *see Beech Aircraft v. Rainey*, 488 U.S. 153, 161-70 (1988).

Defendants' argument also defies common sense. Given the military's swift discontinuance of the CAEv2 upon discovering its dangers in the *qui tam* case, was it previously "on notice" of those dangers, as Defendants contend? Of course not.

3.    *Defendants do not deserve* Boyle *immunity.*

*Boyle*'s third condition ensures the defense does not "perversely impede [discretionary functions] by cutting off information highly relevant to the discretionary decision." 487 U.S. at 512-13. When the defense functions as intended, the government can make a "fully informed" decision based on "all readily available information." *In re Joint*, 897 F.2d 626, 629 (2d Cir. 1990); *Trevino v. Gen. Dynamics*, 865 F.2d 1474, 1481-82 (5th Cir. 1989); *Harduvel*, 878 F.2d at 1318

11

(government purchased product with "full knowledge" of consequences); *Martinez v. Sci. Applications*, 2015 WL 11109381, *20 (S.D. Tex. 2015) (contractor shared report "warning about the specific risk," enabling "discretionary decisions").

Defendants prevented an informed government decision. *See* Def-Opp-11-12. They put profits over people, knowing that disclosing the dangers and consequences of the CAEv2's defects would "disrupt" military sales. *Boyle*, 487 U.S. at 512.

> Q: So for people that are as heroic as our soldiers . . . should they be given the full truth about the products that they use? . . .
>
> A: Not necessarily.

PX121(Salon-54:22-55:4). The consequence is clear: the defense does not apply here.

## III. This Case Lacks All of the Hallmarks of a Government Contractor Case.

Finally, the defense does not fit this case because Defendants designed the CAEv2 for commercial use, vitiating a uniquely federal interest and triggering *Boyle*'s stock-product exception. And there was no federal procurement contract, precluding a conflict with state law.

### A. The defense does not apply to products with commercial counterparts.

Defendants insist a "uniquely" federal interest exists *anytime* the government buys *any* equipment. Def-Opp-12-13. They misconstrue *Boyle*, which invoked federal common law to protect *uniquely* federal interests in *exclusively* federal equipment. 487 U.S. at 502, 504-05, 507-11. "Nothing like that exists here."

*Rodriguez v. F.D.I.C.*, 140 S. Ct. 713, 717 (2020). "The federal government may have an interest" in the procurement of commercially-available equipment, "[b]ut what unique interest could the federal government have" for goods available in "substantially similar form to commercial users"? *Id.* at 717-18; *In re Hawaii*, 960 F.2d 806, 811-12, 814 n.2 (9th Cir. 1992). None. *Id.*; Pl-Br-13 (collecting cases).

Defendants disregard Plaintiffs' authority, instead claiming there is a bright-line rule applying *Boyle* to any procurement—period. Quite the opposite. Courts reject "a bright-line rule applying federal common law to *all* government procurement contracts . . . because so facile a rule would conflict with *Boyle*." *Woodward v. Curtiss*, 164 F.3d 123, 128 (2d Cir. 1999). And rightly so—if every procurement implicated a uniquely federal interest, "we would be awash in federal common-law rules." *O'Melveny v. F.D.I.C.*, 512 U.S. 79, 88 (1994).

No Eleventh Circuit case suggests *Boyle* applies to a product like CAEv2. This Circuit has only applied *Boyle* to exclusively military products. *E.g.*, *Brinson v. Raytheon*, 571 F.3d 1348, 1349 (11th Cir. 2009) (T-6A jet); *Harduvel*, 878 F.2d at 1313 (F-16 Fighting Falcon). *Dorse* is not to the contrary because the military procured asbestos as a component for "naval ships." 898 F.2d at 1489.[7]

---

[7] *Burgess* does not help Defendants, either. Def-Opp-16 n.12. That case, decided before *Boyle*, did not address the uniquely-federal-interest requirement. *Burgess v. Colorado*, 772 F.2d 844, 846 (11th Cir. 1985).

Defendants also fail to come to grips with the facts. It matters not that the military received product samples first. Def-Opp-4. Early sales were commercial, PX47(3M_MDL000393647), and Defendants intended to sell the CAEv2 to both the government and consumers from the very start, PX12(3M_MDL000591210_5). Regardless, there can be no federal interest—let alone a unique one—in a discontinued product. *Good v. Armstrong*, 914 F. Supp. 1125, 1131 (E.D. Pa. 1996).

Nor is there conflict. The sole case Defendants cite, Def-Opp-13, sidesteps binding precedent requiring a "significant conflict." 487 U.S. at 511-12; *Dorse*, 898 F.2d at 1488; *Glassco*, 966 F.2d at 642. No conflict exists here because, among other things, Defendants charged the military *more* for the identical product, PX49(McGinley-60:2-62:20), nullifying *Boyle*'s purpose, 487 U.S. at 511-12.

## B. The defense does not apply to stock products.

Attempting to avoid *Boyle*'s stock-product exception, Defendants claim "the military was the driving force behind the CAEv2's creation." Def-Opp-14. That is irrelevant. Defendants do not dispute they always intended to sell the CAEv2 simultaneously to civilian consumers and the government, even if they technically made the first sale to the military.[8] PX12(3M_MDL000591210_5). Nor do they

---

[8] Defendants ignore commercial sales in February 2000. DX3(MDL000393647); PX122(Myers-540:6-13).

dispute the military purchased the CAEv2 off-the-shelf through the MPID. PX37(3M_MDL00000055).

Defendants suggest "no court" has applied *Boyle*'s stock-product exception, Def-Br-14, even though Plaintiffs cited cases that have done so, Pl-Br-18. Ignoring them, Defendants cite *Jackson*, *Kase*, and *Brooklyn*, where commercial sales were incidental or the stock product was only a component part. Because the CAEv2 was itself a stock product with significant commercial sales for more than a decade, it would be "absurd" to preempt the claims of thousands of veterans who used "the same product." *Dorse v. Armstrong*, 513 So. 2d 1265, 1269-70 (Fla. 1987); Def-Opp-14.

## C.   The defense does not apply without a federal procurement contract.

Lacking a design contract, Defendants argue the defense does not require one. Def-Opp-16-18. Whether styled as a design-and-development contract or a procurement contract for the manufacture of a specified design, all the cases Defendants cite—including *Brinson*—involved such a contract. 571 F.3d at 1354 ("[c]ontractual requirements"); *e.g.*, *Harduvel*, 878 F.2d at 1318 ("under contract"); *Agent Orange*, 517 F.3d 76, 92-93 (2d Cir. 2008) ("contractual duties").

No matter who creates specifications, they must be incorporated into a *contract* for the government *contractor* defense to apply. Indeed, it would "prove[] impossible" to apply *Boyle* without one. *Martinez*, 2015 WL 11109381, *21.

15

Sales orders—sans specifications—add nothing. *Agent Orange*, 517 F.3d at 89 n.12 ("[A] defendant who had no way to demonstrate what specifications were within the contract . . . would likely have difficulty successfully asserting the contractor defense."). Unlike every other government contractor case, Defendants cannot identify any "procurement means through which [they] entered into a contract with the government." PX10(30(b)(6)-820:17-822:5).

## CONCLUSION

On these undisputed facts, the government contractor defense is as ill-fitting as the CAEv2. The Court should grant Plaintiffs' motion.


DATED: April 21, 2020

*s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Michael A. Sacchet, Chair of Law & Briefing
(Admitted Pro Hac Vice)
Minnesota State Bar No. 0395817
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Tel.: (612) 361-8220
mas@ciresiconlin.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULES 7.1(F) AND 56.1(D)–(E)</u>

I hereby certify that this reply memorandum complies with the word limit of

Local Rule 56.1(D)–(E) and contains 3,200 words.

<u>*s/ Bryan F. Aylstock*</u>

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*