# PX120

Confidential - Pursuant to Protective Order

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. |
| EARPLUG PRODUCTS | ) | 3:19md2885 |
| LIABILITY LITIGATION | ) | |
| _____ | ) | Judge M. Casey |
| | ) | Rodgers |
| THIS DOCUMENT RELATES | ) | Magistrate Judge |
| TO ALL CASES | ) | Gary R. Jones |

TUESDAY, MARCH 3, 2020
CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
- - -

Videotaped deposition of Special Agent Jennifer Coleman, held at the offices of Atlanta Airport Marriott Gateway, 2020 Convention Center Concourse, Executive Boardroom, Atlanta, Georgia, commencing at 9:22 a.m., on the above date, before Carrie A. Campbell, Registered Diplomate Reporter and Certified Realtime Reporter.

- - -

GOLKOW LITIGATION SERVICES
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Confidential - Pursuant to Protective Order

Page 2

```
 1           A P P E A R A N C E S :
 2
 3
        AYLSTOCK, WITKIN, KREIS &
 4      OVERHOLTZ, PLLC
        BY:   NEIL D. OVERHOLTZ
 5            noverholtz@awkolaw.com
              CAITLYN P. MILLER
 6            cmiller@awkolaw.com
        17 East Main Street
 7      Pensacola, Florida  32502
        (850) 202-1010
 8
        and
 9
        TRACEY & FOX
10      BY:   SEAN TRACEY
              stracey@traceylawfirm.com
11            LAWRENCE TRACEY
              ltracey@traceylawfirm.com
12      440 Louisiana Street, Suite 1901
        Houston, Texas   77002
13      (713) 495-2333
14      and
15      MONSOUR LAW FIRM
        BY:   DOUGLAS C. MONSOUR
16            doug@monsourlawfirm.com
        404 North Green Street
17      Longview, Texas   75601
        (903) 999-9999
18
        and
19
        QUINN EMANUEL URQUHART & SULLIVAN, LLP
20      BY:   MATTHEW HOSEN
              matthosen@quinnemanuel.com
21      600 University Street Suite 2800
        Seattle, Washington 98101
22      (206) 905-7100
23      and
24
25
```

Golkow Litigation Services - 877.370.DEPS

Confidential - Pursuant to Protective Order

Page 3

```
 1      THE BUXNER LAW FIRM
        BY:   EVAN BUXNER
 2            ebuxner@buxnerlaw.com
        230 South Bemiston Avenue, Suite 1400
 3      St. Louis, Missouri   63105
        (314) 863-6300
 4
        and
 5
        GOZA & HONNOLD, L.L.C.
 6      BY:   BRADLEY D. HONNOLD
              bhonnold@gohonlaw.com
 7      9500 Nall Avenue, Suite 400
        Overland Park, Kansas   66207
 8      (913) 451-3433
 9      and
10      COLSON HICKS EIDSON
        BY:   FRANCISCO R. MADERAL
11            frank@colson.com
        255 Alhambra Circle Penthouse
12      Coral Gables, Florida   33134
        (305) 476-7400
13      Counsel for Plaintiffs
14
15      KIRKLAND & ELLIS LLP
        BY:   NICHOLAS WASDIN
16            nick.wasdin@kirkland.com
              NOLAN M. LEUTHAUSER
17            nolan.leuthauser@kirkland.com
        300 North LaSalle
18      Chicago, Illinois   60654
        (312) 862-2000
19      Counsel for Defendants
20
21      FIELD INVESTIGATIVE UNIT/MAJOR
        PROCUREMENT FRAUD UNIT
22      BY:   KATHLEEN K. THOMPSON
        701st MP Group, CID
23      27130 Telegraph Road
        Quantico, Virginia   22134
24      (571) 305-4412
        Counsel for the Witness
25
```

Confidential - Pursuant to Protective Order

Page 4

```
 1   ALSO PRESENT:
 2       JAMES BATTLE, Aylstock, Witkin,
         Kreis & Overholtz
 3
         SAVANNAH GREEN, Aylstock, Witkin,
 4       Kreis & Overholtz
 5       DANNY OLIVO, Tracey & Fox
 6       MICHAEL KAUFMANN, trial technician,
         Golkow Litigation Services
 7
 8
     V I D E O G R A P H E R :
 9       DEVYN MULHOLLAND,
         Golkow Litigation Services
10
                      - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Confidential - Pursuant to Protective Order

Page 26

1  a couple of things.
2         So you said something that
3  struck me, and that's why I pulled this one
4  out. I wasn't planning on using it, but --
5  which is that you try to develop the facts.
6      A.   Correct.
7      Q.   If we turn to the second page,
8  it says that "DCIO investigative reports."
9         Do you see that on the screen?
10     A.   Yes, I do.
11     Q.   Okay. DCIO, what is that
12  referring to?
13     A.   Defense Criminal Investigative
14  Organization.
15     Q.   Yeah. Would that govern CID,
16  Army CID?
17     A.   Yes.
18     Q.   Okay. So you're working -- you
19  would be considered a DCIO within this
20  Department of Defense instruction?
21     A.   Normally we're MCIOs with DCIO.
22     Q.   Okay. "DCIO investigative
23  reports will provide commanders fact-based,
24  unbiased investigative findings that reflect
25  impartiality."

Confidential - Pursuant to Protective Order

Page 27

```
 1        A.      Correct.
 2        Q.      Is that what you're trying to
 3   do when you conduct one of these
 4   investigations?
 5        A.      Yes.
 6        Q.      And when you write a report,
 7   you're writing the report to give it to the
 8   US Attorney's Office; is that your intended
 9   audience for the report?
10        A.      That, and if it comes to a jury
11   or whoever.
12        Q.      Okay.
13        A.      Is basically what that person
14   said.
15        Q.      Right.  And so --
16        A.      In summary.
17        Q.      -- this statement that it's
18   fact based, that's the focus of your
19   investigation, is developing the facts?
20        A.      Correct.
21        Q.      Okay.  And whether or not that
22   results in civil or criminal prosecution,
23   that's up to the US Attorney's Office?
24        A.      Correct.
25        Q.      Okay.  And it says, "Unbiased
```

Confidential - Pursuant to Protective Order

Page 28

```
 1   investigative findings."
 2              Tell me, what does that mean as
 3   far as -- from a CID special agent --
 4   unbiased investigative findings, what does
 5   that mean for you?
 6        A.   It means without a slant,
 7   without what we perceive as being said; just
 8   what was said during the course of an
 9   interview, the course of a case.  Just the
10   facts, not slanted in any certain way.
11        Q.   So when you investigate and you
12   either interview witnesses or review
13   documents, you report your findings without
14   trying to slant it one way or the other?
15        A.   Correct.
16        Q.   Okay.  And if there's two sides
17   of it, you try to present both sides?
18        A.   Correct.
19        Q.   And is the reason that you do
20   that because you want the US Attorney's
21   Office to understand both sides before they
22   decide whether to pursue this case?
23        A.   Correct.
24        Q.   Okay.  Now, we're going to
25   spend a lot of time, and I know you're here
```

Confidential - Pursuant to Protective Order

Page 180

1  Q. Okay. And again, you would
2  have reported this, based on the date at the
3  bottom of the page and -- indicating that it
4  had been approved, you reported this, the
5  results and what you learned from this
6  interview, on a timely basis; is that right?
7  A. Yes.
8  Q. Now, the people from the United
9  States military that you were interviewing,
10  they were under a duty to be truthful with
11  you when you were investigating them?
12  A. Yes.
13      MR. WASDIN: Objection to form.
14  QUESTIONS BY MR. OVERHOLTZ:
15  Q. I mean, they're -- under the
16  United States code, they had to be truthful
17  when you interviewed them, right?
18      MR. WASDIN: Objection to form
19    and foundation.
20      THE WITNESS: Yes.
21  QUESTIONS BY MR. OVERHOLTZ:
22  Q. That was their obligation under
23  the code?
24      MS. THOMPSON: May I just ask
25    her something?

Confidential - Pursuant to Protective Order

Page 243

```
 1   witnesses, indicated that she believed that
 2   if Dr. Ohlin would have been aware of these
 3   problems, he would have taken action?
 4        A.    Correct.
 5              MR. WASDIN:  Objection to form
 6        and foundation.
 7   QUESTIONS BY MR. OVERHOLTZ:
 8        Q.    And Ms. Resta, who you
 9   interviewed on November 2017 on CID 243, she
10   also told you that she believed that if
11   Dr. Ohlin would have been aware of any
12   issues, he would investigated them.
13              Is that right?
14        A.    That's correct.
15        Q.    Okay.  Now, in -- you included
16   all of these interviews and the documents
17   that you reviewed in your final CID report
18   that we have here in front of us as the full
19   exhibit; is that right?
20        A.    Correct.  I included them as
21   exhibits to the report.
22        Q.    Okay.  And did all of these --
23   did all of these interviews and review of
24   documents play a part in what you wrote in
25   your final report dated December 13, 2018, on
```

Confidential - Pursuant to Protective Order

Page 244

1  page 1 and 2, 3 through 5 of the full report?
2       A.    Yes.
3       Q.    Okay.  And if we can look on
4  page 2 at the top of that -- on the top of
5  page 2, you wrote that "during the course of
6  the investigation, numerous interviews and
7  record reviews were conducted reference the
8  testing results and contracting process."
9             Right?
10      A.    Correct.
11      Q.    And you wrote this after all
12 the interviews had been conducted and all the
13 documents had been reviewed?
14      A.    Correct.
15      Q.    And you wrote that "Interviews
16 of US government personnel confirmed that had
17 they known about the February 2000 test
18 results, i.e., that the CAE was too short for
19 proper insertion in the users' ears and
20 therefore did not perform well in certain
21 individuals on the Combat Arms Earplug, they
22 may not have purchased the items."
23            Right?
24      A.    Correct.
25      Q.    Now, in 2017, did you receive

Confidential - Pursuant to Protective Order

Page 464

1  other than documents produced by 3M,
2  interview memos and the settlement agreement?
3       A.    I'd have to verify with -- I
4  didn't provide those documents to you, so I'd
5  have to verify in each AIR what I put as "see
6  attached" for.
7       Q.    Let me just try a different
8  question.
9             Once we get past your final
10 report, the first six pages, then we have the
11 exhibits, right?
12      A.    Correct.
13      Q.    And the exhibits are the stuff
14 that you gathered during the investigation?
15      A.    Correct.
16      Q.    And then any findings that you
17 made are contained in the final report, the
18 first six pages, right?
19      A.    Findings or facts.
20      Q.    Factual findings you made are
21 in the final report, right?
22      A.    Correct.
23      Q.    Some of those -- some of those
24 findings are just based on what people told
25 you, right?