**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

This Document Relates to All Cases
_____/

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

## ORDER

The parties have brought before the Court a discovery dispute that concerns two discrete issues pertaining to Defendants' interrogatories to the Bellwether Plaintiffs. Plaintiffs challenge the number of interrogatories propounded by Defendants as excessive and object to interrogatories directed to the Bellwether Plaintiffs' mental health.[1] The Court construes the parties' dispute and request for court intervention as Defendants' motion to compel responses to their interrogatories pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), which is ripe for consideration. For the reasons discussed below, Defendants' motion to compel is due to be **GRANTED IN PART and DENIED IN PART**.

---

[1] On February 27, 2019, in accordance with the Bellwether Selection Process outlined in Pretrial Order No. 23 (ECF No. 922), as amended on January 25, 2020 in Pretrial Order No. 24 (ECF No. 934), 25 individual plaintiffs (including 5 alternates) were selected as the first Bellwether Plaintiffs for this litigation. ECF No. 1015.

## I. BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2"). ECF No. 704. Relevant here, Defendants sought discovery in 2019 from all individual Plaintiffs using an initial census that included nine enumerated questions. Plaintiffs were required to answer the initial census questions under penalty of perjury, and therefore the questions were treated as interrogatories under Federal Rule of Civil Procedure 33. ECF No. 775 at 2.[2]

At present, discovery is ongoing related to the Bellwether Plaintiffs' claims against Defendants. Pretrial Order No. 28 governs the discovery and trial schedule for the Bellwether Plaintiffs' cases. ECF No. 1009. In addition to the procedure set forth in Pretrial Order No. 28, the parties agreed to limit the number of interrogatories propounded in discovery to 100. On March 12, 2020, Defendants served their First Set of Interrogatories on the Bellwether Plaintiffs. On March 30, 2020—shortly following the resolution of another discovery dispute discussed below—

---

[2] The parties continue to assert in their letter briefs that the initial census questions qualify as discovery interrogatories.

2

Defendants served the Bellwether Plaintiffs with their Second Set of Interrogatories. In total, Defendants have served 83 enumerated interrogatories.

As reflected in Pretrial Order No. 28, Plaintiffs agreed to provide authorizations for Defendants to obtain certain relevant, non-privileged records through discovery. ECF No. 1009 at 1. The parties exchanged draft and redlined versions of authorizations for six discovery categories: (1) medical records; (2) tax returns; (3) employment records; (4) education records; (5) health insurance records; and (6) disability benefits records. Plaintiffs challenged the relevance and proportionality of the discovery sought by Defendants using the proposed authorizations. The parties submitted letter briefs to the Court and convened for a telephonic hearing on March 24, 2020. ECF No. 1042.

At the hearing, the parties argued at length over whether Defendants were entitled to the Bellwether Plaintiffs' mental health records. The parties did not contest that the psychotherapist-patient privilege applied, but Defendants contended that the records were relevant and any privilege was waived because Plaintiffs put their mental health at issue by seeking damages for mental anguish, distress, and loss of enjoyment of life. The Court held that the Bellwether Plaintiffs' "garden variety" emotional distress

3

claims were insufficient to place in controversy Plaintiffs' mental health and thus waive any claim that the records were privileged under the psychotherapist-patient privilege. In denying Defendants' motion to compel the Court observed:

> [G]enerally, if a plaintiff alleges damages or mental anguish, loss of enjoyment of life, those kinds of things, in my view, that is not putting the [plaintiffs] mental health in controversy. Because that's really the trigger, if mental health is in controversy, it goes without saying that a defending party is going to be entitled to mental health records.
>
> So, generally, in my view, in a tort case, a plaintiff can get on the stand and, putting aside the nature of the tort, as to damages and injuries, the plaintiff can say this injury caused me mental anguish, my life is not the same, I cry all the time, I don't feel right, I've never been so upset in my life, and that is not placing the individual's mental health at issue.

ECF No. 1064 at 4–5.

The only caveat to the Court's ruling was the potential scenario where a Bellwether Plaintiff would allege or testify to a specific psychological diagnosis or offer testimony from a psychological expert. In that event, Defendants would be entitled to mental health records. *Id.* at 5. As to discovery on this issue, the Court suggested that Defendants were "free to ask any individual [B]ellwether [P]laintiff whether [he or she] suffered from any diagnosed mental health issue that [he or she is] going to assert, and … may of course ask the Plaintiffs whether they are going to offer any

4

expert testimony in support of any mental health testimony." *Id.* at 8. The Court further stated:

> What I thought you would do is would include in an interrogatory each of the [B]ellwether [P]laintiffs an interrogatory that would say, *Do you suffer from an identifiable mental health condition which you contend in this case is a causally related damage?* Or, second interrogatory, *Do you intended to offer any expert testimony in support of any mental health psychological, mental health conditions*—I'm sure you could draft something—*that you intend to assert in this case?*

*Id.* at 10–11 (emphasis in original).

On March 26, 2020, the Court entered an order memorializing its rulings at the March 24 telephonic hearing. ECF No. 1065. First, the Court explained that the issue of whether Defendants demonstrated that the Bellwether Plaintiffs placed their mental health condition in controversy was an issue of wavier pertaining to the psychotherapist-privilege. *Id.* at 6. Second, the Court recognized that "[t]he majority of federal courts that have addressed this issue have held that a party does not place his or her mental condition in controversy merely by requesting damages for mental anguish or 'garden variety' emotional distress." *Id.* at 6; *see also id.* (collecting cases). Third, the Court suggested permissible discovery consistent with that discussed at the hearing:

> At the telephonic hearing, Plaintiffs stated that at this juncture they were not aware of any relevant mental diagnoses and did

5

>not intend to offer expert testimony on an award of damages for mental anguish, distress, and loss of enjoyment of life. Defendants, however, may: (1) propound discovery on the individual Bellwether Plaintiffs to determine if any has a diagnosed mental health condition; and (2) ask counsel for the Bellwether Plaintiffs whether they intend on offering expert testimony relevant to the above-mentioned damages or a mental health condition. If there is such a diagnosis or an intent to offer expert testimony, Defendants would be entitled *at that time* to discovery on this issue (and consequently the execution of an authorization).

*Id.* at 7 n.2.

Defendants have since attempted to proceed with discovery on the Bellwether Plaintiffs' mental health. In their Second Set of Interrogatories, at issue here, Defendants included three interrogatories they claim were derived from the Court's March 26, 2020, order:

>**INTERROGATORY NO. 71:**
>Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who diagnosed you with the condition(s) and the date of the diagnosis.
>
>**INTERROGATORY NO. 72:**
>State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the expert testimony You intend to offer.
>
>**INTERROGATORY NO. 73:**
>State whether You intend to offer any evidence at trial related to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the evidence you intend to offer.

6

Plaintiffs objected to this discovery on numerous bases, including that the information sought is privileged and premature.  On April 17, 2020, the parties raised the instant discovery dispute with the Court.  The undersigned ordered the parties to submit letter briefs in support of their respective positions, which they have done.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery limited to nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Determining whether discovery is proportional requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Where a party objects to an interrogatory or gives an answer that is improper or incomplete, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iii). This Court has "broad discretion ... to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 26(b)

The Court will consider only those objections to discovery that were timely raised and are relied upon in response to the motion to compel. *Moses v. Halstead*, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006); *see also Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 n.1 (M.D. Fla. 1990). The objecting party typically bears the burden to substantiate its objections. *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005).

### III.  DISCUSSION

#### A.  Number of Interrogatories

Plaintiffs resist answering the bulk of Defendants' First and Second Set of Interrogatories (Interrogatory Nos. 26 through 74) based on the assertion that Defendants "have served approximately 200 discrete questions—two times more than the agreed amount—between [their] Interrogatories and Census." By Plaintiffs' count, Defendants have served 74 enumerated Interrogatories, which include 160 discrete questions, and

8

14 initial census questions.  Defendants argue this objection is unfounded because Defendants have propounded fewer than 100 interrogatories, counting all discrete subparts.  In support, Defendants provide the Court a chart explaining how each interrogatory and any subparts should be counted based on relevant case law.

Identifying the discrete subparts of an interrogatory is a difficult task. *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004).  Generally, "[l]egitimate discovery efforts should not have to depend upon linguistic acrobatics, nor should they sap the court's limited resources in order to resolve hypertechnical disputes."  *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 322 (D. Nev. 1991).  In the Eleventh Circuit, courts utilize the "related question" test to determine whether any subparts of an enumerated interrogatory are discrete, asking whether "the subparts are subsumed and necessarily related to the primary question."  *Oliver v. City of Orlando*, No. 6:06-cv-167-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).[3]

Applying this test to Defendants' interrogatories, the Court concludes that Defendants have not exceeded 100 interrogatories.  Indeed, for the

---

[3] *See also, e.g.*, *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 679 (N.D. Ga. 2009); *Forum Architects, LLC v. Candela*, No. 1:07-cv-190-SPM-AK, 2008 WL 217119, at *1 (N.D. Fla. Jan. 23, 2008).

9

purpose of resolving the present dispute, the Court agrees with the accounting and application of relevant case law provided in the chart attached to Defendants' letter brief.

Plaintiffs' overly technical reading of Defendants' interrogatories does not win the day. Plaintiffs point to four interrogatories as instances where, they claim, Defendants used discrete subparts to circumvent the parties' agreed-upon limit for interrogatories. As one example, Interrogatory No. 17 asks:

> If You have Any noises, sounds, buzzing, whooshing, or ringing in Your ear(s), Describe the noises, sounds, buzzing, whooshing, or ringing, including the date on which the sound began, the frequency with which You hear the sound, whether the sound fluctuates or stays constant, whether the sound bothers You, whether the sound keeps You awake when trying to sleep, the date on which you last experienced such sound, and whether the sound is getting worse or remaining approximately the same.

Plaintiffs contend that Interrogatory No. 17 includes "at least 5 discrete subparts: (1) description of any noises, sounds, buzzing, ringing in ears including date of commencement and last noticed; (2) whether the sound fluctuates or stays constant; (3) whether the sound bothers Plaintiff; (4) whether the sound keeps Plaintiff awake; (5) if the sound is getting worse or remaining the same." The Court is not persuaded by Plaintiffs' characterization of Defendants' interrogatory. The thrust of Interrogatory

No. 17 is the presence of a noise, ringing, or other sound.  The subparts of the interrogatory are related to the initial question—and therefore not discrete—because they seek more specific information about the same subject (the presence of a noise, ringing, or other sound).

Plaintiffs' objections to Interrogatory Nos. 26 through 74 on the grounds that the Interrogatories exceed the parties agreed-upon interrogatory limit are, therefore, overruled. Defendants' motion to compel is **GRANTED** to this extent.

**B. Defendants' Mental Health Interrogatories**

Defendants request the Court to overrule Plaintiffs' objections to the scope of Interrogatory Nos. 71 through 73 "because the Court previously directed Plaintiffs to respond to interrogatories about (1) the Bellwether Plaintiffs' diagnosed mental health conditions and (2) the Bellwether Plaintiffs' intent to offer expert testimony relevant to a diagnosed mental health condition or a claim for mental anguish, distress, and loss of enjoyment of life."  Plaintiffs say that at least as to Interrogatory No. 71— which asks the Bellwether Plaintiffs to identify any diagnosed mental health condition, the diagnosing person, and the date of diagnosis—Defendants have "parse[d] the Court's Order by relying exclusively on footnote 2 of [the March 26, 2020, discovery order], in isolation, as grounds to broaden the

11

scope of allowable mental health discovery that the Court otherwise admonished."

As to Interrogatory No. 71, Defendants have misinterpreted the March 26, 2020, discovery order.  The Court previously ruled that discovery of a plaintiff's mental health condition was permissible only if a plaintiff alleged or asserted that he or she suffered from an identified and diagnosed mental health condition caused by the torts alleged in this case or the plaintiff intended to support his or her claim for mental anguish, distress or loss of enjoyment of life with expert testimony. The Court previously stated that a plaintiff placed his or her mental health in controversy where any of the Bellwether Plaintiffs suffered or suffers "from an identifiable mental health condition which [he or she] conted[s] in this case is a causally related damage?"  ECF No. 1064 at 10–11.  This was stated in the first sentence of footnote 2—referred to there as "relevant mental diagnoses"—and was addressed at the March 24, 2020, telephonic hearing.  *Id.* at 8, 10–11; ECF No. 1065 at 7 n.2.  Defendants' broad interrogatory requesting privileged mental health information regarding *any* of the Bellwether Plaintiffs' mental health diagnoses—even if the mental

12

health diagnoses have nothing whatsoever to do with Plaintiffs' claims in this case—contravenes the Court's prior ruling.[4]

Defendants contend that they cannot know whether the Bellwether Plaintiffs' claims for damages for mental anguish, distress, and loss of enjoyment of life in this case are "garden variety" without their mental health records. That concern was the impetus for the Court's suggestion that Defendants propound a limited interrogatory concerning psychological diagnoses relevant to the Bellwether Plaintiffs' claims here. As explained above, Interrogatory No. 71 goes well beyond that suggestion and does not limit the request to mental health conditions Plaintiffs contend resulted from the causes of action alleged in this case.

Defendants further argue that the information sought in Interrogatory No. 71 is necessary to establish any pre-existing condition negating the claim that mental anguish or other emotional damages were the result of Defendants' conduct. The dispute here, however, pertains to privilege and waiver, not relevancy. ECF No. 1065 at 6. And as the Court previously held, *id.*, a party does not place his or her mental health condition in controversy merely by requesting damages for "garden variety" mental

---

[4] Defendants' interpretation of the Court's order results from a myopic reading of the last two sentences of footnote 2, as demonstrated on the first page of their Second Set of Interrogatories and repeatedly in their letter brief.

13

anguish or emotional distress.  The Court's determination on this issue is consistent with the majority approach taken by federal courts.[5]

Defendants assert that privilege and waiver are governed by state law in this case. While that may be so as to the substantive law of privilege and substantive waiver of a privilege, the issue here of whether a plaintiff has placed his or her mental condition "in controversy" is a matter of procedural waiver (and pleading) rather than a matter of waiver under state substantive law, such as whether a party has waived a privilege by disclosing the privileged information to a third-party.[6]

Defendants also point to Judge Walker's decision in *Cameron v. Supermedia, LLC*, No. 4:15-c-315-MW-CAS, 2016 WL 1572952, at *1 (N.D. Fla. Apr. 19, 2016) as further support for their position. A close reading of

---

[5] *See Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012) ("There is a final approach, the so-called "middle ground" approach—which has become the majority view—which holds that "[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the psychotherapist-patient privilege." (citing *Koch v. Cox*, 48 F.3d 384, 390 (D.C. Cir. 2007)).

[6] *See Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012) ("This Court agrees with the majority that the middle position is the proper approach to deciding whether a party has waived the psychotherapist-patient privilege."); *Dominguez-Silva v. Harvey*, No. 3:04-cv-135-JTC, 2006 WL 826091, at *1 (N.D. Ga. Mar. 23, 2006) (holding the "garden variety" approach "gives the plaintiff, as master of his Complaint, clear guidance on what claims or allegations will operate to waive the privilege").

*Cameron*, however, does not support Defendants' argument that a plaintiff places his or her mental health in controversy where the plaintiff asserts that he or she has suffered emotional distress. Notably, in *Cameron* the Court did not address the issue of privilege or waiver and instead only focused upon relevancy because there was no argument or claim about privilege.[7] Here, the Bellwether Plaintiffs assert the psychotherapist-patient privilege, and none of the circumstances constituting waiver, as discussed in *Cameron*, *id.* at 4 n.8 (citing *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551 (N.D. Ga. 2001)), are present.  A close reading of *Cameron*, therefore, does not support Defendants' position.

At bottom, the Bellwether Plaintiffs have not placed their prior mental health diagnoses in controversy simply because they allege as damages mental anguish, distress and loss of enjoyment of life.  Therefore, Plaintiffs' objection to Interrogatory No. 71 is sustained and Defendants' motion to compel Plaintiffs to provide information responsive to Interrogatory No. 71 is **DENIED**. Plaintiffs, nevertheless, have agreed to answer Interrogatory No. 71 to the best of their abilities and subject to other objections if an

---

[7] *See Cameron* at *4. ("['Garden variety'], which this Court admittedly used in its previous order, is often used to distinguish claims for emotional distress which result in a waiver of the psychotherapist-patient privilege from those that don't result in a waiver.  So far as this Court can tell, there is no claim of privilege in this case." (internal citation omitted)); *id.* at *4 n.8 ("As noted, there is no claim of privilege in this case.").

15

individual Bellwether Plaintiff contends they have a specific diagnosed mental health condition that is causally connected to their use of the CAEv2. This squares with the Court's prior rulings.

Lastly, Defendants ask the Court to compel the Bellwether Plaintiffs to respond to Interrogatory Nos. 72 and 73, which ask the Bellwether Plaintiffs to provide information concerning any experts Plaintiffs intend to offer to support their claims that they have suffered mental anguish, distress or loss of enjoyment of life or have suffered a diagnosed mental health condition as a result of using the CAEv2. Although Plaintiffs do not address these specific interrogatories in their letter brief they affirm that they will answer the questions regarding experts for any Bellwether Plaintiff who intends to offer expert testimony to support his or her claim of mental anguish, distress or loss of enjoyment of life. These questions are narrowly tailored to the issues in controversy. Accordingly, any outstanding objections by Plaintiffs that Interrogatory Nos. 72 and 73 do not comport with the March 26, 2020, discovery order are overruled.[8]

---

[8] To be clear, the parties should not interpret this order as a ruling on Plaintiffs' other objections to Interrogatory Nos. 71 through 73 or any other pending discovery disputes. As requested by the parties, this order addresses the discrete issues of: (1) whether Defendants exceeded the parties' agreed-upon limit of 100 interrogatories; and (2) whether Interrogatory Nos. 71 through 73 exceeded the scope of mental health discovery suggested at the March 24, 2020, telephonic hearing, and in the March 26, 2020, discovery order.

## IV.  CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendants' April 22, 2020, motion to compel responses to their interrogatories is **GRANTED IN PART and DENIED IN PART**.

2. Plaintiffs' objections to Interrogatory Nos. 26 through 74 on the grounds that the interrogatories are in excess of the parties' agreed-upon interrogatory limit are **OVERRULED**.

3. Plaintiffs' objection to Interrogatory No. 71 on the grounds that the interrogatory is beyond the scope of the Court's March 26, 2020, discovery order is **SUSTAINED**.

4. Plaintiffs' objections to Interrogatory Nos. 72 and 73 are **OVERRULED** to the extent Plaintiffs claim the interrogatories are beyond the scope of the Court's March 26, 2020, discovery order.

**DONE AND ORDERED** this 28th day of April 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge