**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG   )    Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,  )
                                    )    Pensacola, Florida
                                      )    April 24, 2020
                                      )    9:30 a.m.
                                      )
                                      )
_____)


**ELEVENTH CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF TELECONFERENCE PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE

and

THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE


(Pages 1-53)

### A P P E A R A N C E S

**FOR THE PLAINTIFFS:**      **BRYAN F. AYLSTOCK, ESQUIRE**
                             **NEIL OVERHOLTZ, ESQUIRE**
                             **JENNIFER HOEKSTRA, ESQUIRE**
                             **CAITLYN MILLER, ESQUIRE**
                             Aylstock, Witkin, Kreis & Overholtz
                             17 E Main Street, Suite 200
                             Pensacola, Florida  32502

                             **CHRISTOPHER A. SEEGER, ESQUIRE**
                             **DAVID R. BUCHANAN, ESQUIRE**
                             Seeger Weiss, LLP
                             55 Challenger Road, 6th Floor
                             Ridgefield Park, New Jersey  07660

                             **MICHAEL A. BURNS, ESQUIRE**
                             Mostyn Law
                             3810 W Alabama Street
                             Houston, Texas  77027


**FOR THE DEFENDANT:**       **SIERRA ELIZABETH, ESQUIRE**
                             Kirkland & Ellis, LLP
                             2049 Century Park East
                             Los Angeles, California  90067

**ROBERT C. BROCK, ESQUIRE**              **MARK J. NOMELLINI, ESQUIRE**
Kirkland & Ellis, LLP                     **NICHOLAS F. WASDIN, ESQUIRE**
655 15th Street NW                        **KARL GUNDERSON, ESQUIRE**
Washington, D.C.  20005                   **BARRY E. FIELDS, ESQUIRE**
                                          Kirkland & Ellis, LLP
                                          300 N Lasalle
                                          Chicago, Illinois  60654


**LARRY HILL, ESQUIRE**
MOORE, HILL & WESTMORELAND, P.A.
350 W Cedar Street, Suite 100
Pensacola, Florida  32502

```
 1                        P R O C E E D I N G S
 2              JUDGE RODGERS:  Good morning.  This is Casey
 3     Rodgers.  I am showing 9:30.  Can I ask from the Court
 4     who is on besides myself?  Tevenia, are you on?
 5              MS. JACOBS:  Yes.
 6              JUDGE RODGERS:  And is Donna Boland on?
 7              COURT REPORTER:  Yes, Judge.
 8              JUDGE RODGERS:  Good.  Good morning.
 9              I'm not sure if Sue Simms is on.  Is Sue on?
10              MADAM CLERK SIMMS:  Yes, Judge, I'm on.
11              JUDGE RODGERS:  Okay, very good.
12              Judge Herndon?
13              JUDGE HERNDON:  I'm here.
14              JUDGE RODGERS:  And Judge Jones?
15              JUDGE JONES:  I'm here as well.
16              JUDGE RODGERS:  Great.  For the Plaintiffs?
17              MR. AYLSTOCK:  Good morning, Judge.  Chris
18     and Bryan are here.
19              MS. HUTSON:  Shelley is here.
20              JUDGE RODGERS:  Okay, Shelley.
21              MR. SEEGER:  Dave Buchanan and Max Kelly are
22     on for Seeger Weiss also, Your Honor.
23              JUDGE RODGERS:  Okay, thank you.
24              MR. BURNS:  Mike Burns, Your Honor.
25              JUDGE RODGERS:  Good morning.
```

1            **MR. OVERHOLTZ:**  Neil Overholtz.

2            **JUDGE RODGERS:**  I heard Neil and then someone

3 else.

4            **MR. SACCHET:**  Michael Sacchet.

5            **JUDGE RODGERS:**  Good morning.  Anyone else

6 for the Plaintiffs?

7            **MS. HOEKSTRA:**  Jennifer Hoekstra, Your Honor.

8            **JUDGE RODGERS:**  Good morning.

9            **MS. MILLER:**  Caitlyn Miller.

10            **JUDGE RODGERS:**  Okay, Caitlyn, I've got you

11 down.

12            Okay, let me turn to the Defendants.  I don't

13 believe Ms. Branscome is going to be on the call this

14 morning.

15            **MR. BROCK:**  That's correct, Judge.  Mike

16 Brock is here.  Good morning.

17            **JUDGE RODGERS:**  Good morning.

18            **MR. FIELDS:**  Good morning, Your Honor, Barry

19 Fields.

20            **MR. NOMELLINI:**  Good morning, Your Honor.

21 Mark --

22            **JUDGE RODGERS:**  I heard Barry Fields and Mr.

23 Nomellini as well.

24            -- *(inaudible)* --

25            Oh, the joys of telework.  Let's try again.

1          **MR. BROCK:**  We'll bumble through this and
2     then we'll give you a list.
3          **JUDGE RODGERS:**  That's probably the better
4     approach.  But since I've started this mess, let me
5     try to finish it.
6          **MR. BROCK:**  Yes, Your Honor.
7          **MR. WASDIN:**  Nick Wasdin is on, let me just
8     sneak that in there.
9          **JUDGE RODGERS:**  Okay, thanks.
10         **MR. GUNDERSON:**  Good morning, Your Honor.
11    Karl Gunderson.
12         **MS. ELIZABETH:**  Good morning, Your Honor.
13    Sierra Elizabeth.
14         **JUDGE RODGERS:**  Okay, great.
15         **MR. HILL:**  And this is Larry Hill.
16         **JUDGE RODGERS:**  Okay, great.  Good morning.
17         Is there anyone else?
18         *[No response.]*
19         And did I miss anyone or leave anybody out?
20         **UNIDENTIFIED PERSON:**  Judge Rodgers, this is
21    -- *(inaudible)* -- for the Plaintiffs.
22         **JUDGE RODGERS:**  Okay, thank you.
23         Do I have everybody then?
24         *[No response.]*
25         Okay.  I have the joint agenda, and I guess

1    we can start with that.  Thank you for submitting it.
2    The first item that was listed on the joint agenda is
3    in regards to remote depositions.
4           And I've reviewed the letter brief on both
5    sides.  I've reviewed both links that the Plaintiffs
6    sent demonstrating the technology.  And what I am
7    going to do is I'm going to ask you all to go ahead
8    and schedule and hopefully you'll be able to schedule
9    and conduct two depositions remotely in May, or the
10   earlier the better.
11          Maj. Evans indicated, as you saw in the notes
12   from our call, that they would be amenable to remote
13   depositions.  And the technology that I've seen
14   suggests that it's more than adequate.
15          The question is, I suppose, reading the
16   Defendant's brief -- and I am not unsympathetic to
17   this in terms of if these are trial depositions -- the
18   question is, if these are trial depos, whether the
19   impact is equal in terms of, you know, the cameras
20   used, whether they are high resolution, if the impact
21   is the same as suggested that the Plaintiffs have had
22   in the depositions that they have taken that they've
23   videoed.
24          Again, I'm not unsympathetic to that, but I
25   don't know the answer to that question, and I won't

1    know until you all go through this exercise and take a
2    couple of depositions.  So that's what I'd like you to
3    do.
4            I don't know if you want to start with the
5    two that were scheduled in March.  One was a joint, I
6    think that was Col. Gates, Kathy Gates, maybe; is that
7    right?  Wasn't that a jointly noticed deposition?  Is
8    that right?
9            **UNIDENTIFIED PERSON:**  Yes, Your Honor.
10           **JUDGE RODGERS:**  And then there was another --
11   I'm trying to pull up the name of the other deponent
12   or witness.  I have it right here.  Lt. Col. Stephens,
13   Mark Stephens, that was a Defense witness.  Those were
14   both scheduled in March.  They were scheduled right
15   after everything kind of shut down.  If you want to
16   start with those two.  I'm not saying you have to.
17   You can pick another two, if you like, but it seems
18   like they would make sense.  I'll let you all confer
19   about that, but I would like you to endeavor to take
20   two in hopefully early to mid March, and then let's
21   see.
22           I'm not going to put this off.  I know the
23   Defendants prefer that, but I'm not going to put off
24   the government and remaining, if there's corporate
25   witnesses remaining, until -- well, it would be into

1    July, it would be after June because of the stay

2    that's in place by the Secretary of the Defense for

3    *Touhy* witness depositions.

4         So I'm not willing to wait until July.  I

5    want to see how the technology works and, again, how

6    these videos look in terms of presentation.

7         Any questions from anyone about what I'm

8    asking you to do on the remote depositions?

9         **MR. FIELDS:**  Judge, this is Barry Fields from

10   Kirkland.

11        **JUDGE RODGERS:**  Hi, Barry.

12        **MR. FIELDS:**  Good morning.  Just a couple of

13   observations.  One is I think obviously the Plaintiffs

14   did submit a remote deposition protocol.  I think one

15   of the things that the parties do need to do is to

16   have some discussions about some general points that

17   need to be clear.

18        We obviously have talked about the different

19   vendors that are available.  We have not seen the

20   Plaintiffs' court reporting in action other than the

21   demo we saw last night.  So there may be a need to

22   conduct some additional vetting.

23        I think the other issue that's out there,

24   Your Honor, is making sure the parties work together

25   to come up with some basic ground rules making an

understanding of how documents can be accessed and used and making sure that basic things that we're used to for video depositions are clear, such as making sure the person is in front of a, you know, sort of somewhat plain background as opposed to -- some backgrounds can be somewhat distracting.  So I think the parties do need to engage, you know, in some discussions to come up with some basic ground rules.

Obviously, we understand what Your Honor wants.  Our point on the letter was not to simply try to delay this forever.  We believe that things are going to be changing and can see that in today's news.  And we believe that, by evaluating this in the next few weeks, we would have a better idea.  But we understand Your Honor's position regarding the two depositions.

**JUDGE RODGERS:**  Yeah, okay.  So just -- I mean, you can start -- and it sounds like you already have -- discussing a protocol now, and I can't imagine that you can't get that in place within the next week or so.

So, if you need our help, if you need my help or Judge Jones's help, we can assist you with that, if you have a breakdown.  But those are details that can certainly be worked out.

        1          In the meantime, I would like you to go ahead
        2   and get with Maj. Evans and Maj. Kim -- but I think
        3   this might still be Maj. Evans in terms of these
        4   dates, but I could be wrong, so it may be both of
        5   them -- to get the dates scheduled and get them on the
        6   books.  And then, in the meantime, you can iron out
        7   these details.
        8          **MR. OVERHOLTZ:**  Your Honor, this is Neil
        9   Overholtz.  We're fine with working out those details.
       10   We would love to sit down -- we had a productive meet
       11   and confer last week with them.  I think we can get
       12   this worked out within a matter of days.  So I would
       13   like to maybe have us be able to get something back to
       14   you some part of early/mid next week hopefully.  I'll
       15   make myself available.
       16          And certainly we've worked -- I've worked
       17   almost nonstopped with Golkow over the last month in
       18   this litigation and a couple of other litigations to
       19   work on how these remote depositions can be best run.
       20   And certainly one of the things that we've talked to
       21   Golkow about and they've put in place is the ability
       22   to conduct checks to make sure that we have the right
       23   camera, the right Wi-Fi speed, the right background,
       24   all the things that Mr. Fields has concerns about.
       25          And then finally, Your Honor, Plaintiffs

1    would like for at least one of the two depositions we

2    take in May to be one of the corporate depositions.

3    We had a couple of depositions scheduled in March that

4    got put off because of COVID-19, and we'd like at

5    least one of those depositions to be a corporate

6    deposition.  And we're happy to talk to Mr. Fields and

7    his team about that.  But we had the Zielinski

8    deposition scheduled in March, and we'd like to get

9    that rescheduled to May, if possible.

10           **JUDGE RODGERS:**  Let me see, I'm looking at

11   the -- oh, I do see that was -- actually, I overlooked

12   that, that was March 24th.

13           **MR. FIELDS:**  Your Honor, may I --

14           **MR. AYLSTOCK:**  What we could do, Judge --

15           **JUDGE RODGERS:**  Hold on.  I think Barry

16   Fields was trying to say something first.

17           **MR. FIELDS:**  Your Honor, this is Barry

18   Fields.  From our standpoint, while we understand Your

19   Honor's order regarding the government witnesses, we

20   think it is -- given the difficulties of meeting with

21   witnesses, preparing witnesses, we think the better

22   course of action is to focus on the two government

23   witnesses, see how that technology works, and then see

24   where we are after that.

25           With respect to one witness, I will tell you,

 1   Your Honor, on the list from the Plaintiffs, they have

 2   Bob Klun down for 3/17, and they suggest in this

 3   letter that it was postponed because of the COVID-19

 4   pandemic.  That's actually I think -- it is a mistake.

 5          I mean, we have a letter from Plaintiffs on

 6   February 28th, so before any of these stay-at-home

 7   orders were in place, and the letter does not refer to

 8   COVID-19, and we had a number of depositions after

 9   that.  It was simply taking the deposition off the

10   calendar, and they wanted to reschedule it at a later

11   date pending the availability of the witness.

12          So from our standpoint --

13          **JUDGE RODGERS:**  I show that -- just so you

14   know, my chart shows that, that Mr. Klun was postponed

15   per the Plaintiffs' request.

16          **MR. NOMELLINI:**  That's right.

17          **JUDGE RODGERS:**  Yeah, I'm not showing that it

18   was a COVID-19 postponement, but like Zielinski would

19   be.  But let me tell you what I'm going to do about

20   this.  I want the first two to be these two government

21   witnesses, if we can get them, Mark Stephens and Kathy

22   Gates.

23          And then I want you to go ahead and agree on

24   a date in June -- not just one date, I mean, we need

25   -- but for Zielinski sometime in June.  And that may

1   be an in-person deposition.  We'll just see how things

2   reopen and go, but that may be in person.

3        I want you to get these two done in May so we

4   can see about the technology and how this works

5   logistically.  And then I want you to go ahead and

6   start scheduling dates for the others.  Regardless of

7   whether they're going to be in-person or by video, I

8   want you getting these back on your calendars and the

9   witnesses' calendar.

10       **MR. AYLSTOCK:**  Yes, Judge.  This is Bryan.

11  We'll be happy to do that.  And Zielinski had been put

12  off a couple of times because of document issues, so

13  we are anxious to get that done.  And since that would

14  be our deposition, we'd be using Golkow, and that

15  could be a good test of the Golkow system.

16       Certainly, if the Defendants want to use

17  another system for their depositions, that's up to

18  them.  But I guess, if there were technical issues on

19  Zielinski, that would be to our judgment since that's

20  a corporate deposition we'd be playing at trial.

21       **JUDGE RODGERS:**  Right.  Well, I would like in

22  June for you to go ahead and get the remaining

23  corporate defendants scheduled, and then we will see

24  whether they're going to be done by video remotely or

25  they're going to be done in person.  I assume you're

1   taking these as videos, right, haven't you been?  Did

2   I read that?

3          **MR. AYLSTOCK:**  Yes, Judge.

4          **JUDGE RODGERS:**  So it will be an open

5   question about whether these will be remote or in

6   person.  But right now, again, it's more important

7   from my standpoint that you go ahead and get these

8   witnesses calendared for depo again.

9          **MR. BROCK:**  Your Honor, this is Mike Brock.

10   I was just going to make one request on the company

11   witnesses.  We might have one or two where it would

12   really be important for us to be able to do our

13   preparation in person.  We'll be covering a span of

14   years in terms of, you know, of activity.  We'd like

15   to be present for his deposition, especially in the

16   event that we conduct a direct exam like we've done in

17   a few of the cases.

18          So I hear you about putting some dates on

19   calendars, and we're certainly willing -- of course,

20   we'll do that.  But I wonder if we could at least put

21   a marker down for making a motion for maybe one of the

22   two witnesses that we'd like to do it live where we

23   could be present.  Because I'm thinking that, even if

24   we did it remotely, somebody might have to get in a

25   car and drive to wherever the witness is located.

1    It's -- I think our preparation process would really

2    be impaired by trying to do it remotely.

3         **JUDGE RODGERS:**  Mr. Brock, I understand what

4    the preference is, but I want these depositions to be

5    taken.  I mean, I have a colleague that is trying a

6    bench trial to determine whether ex-offender felons

7    have the right to vote in the State of Florida, and

8    he's doing that by Zoom on Monday.  So this is doable.

9    It's not ideal, but this is doable.

10        And if someone needs to get in -- if you need

11   face-to-face prep time, then you don't need to send a

12   team of lawyers to meet with Mr. Zielinski or to meet

13   with Mr. Klun.  You can send one or two, you know,

14   three people in a room, you know, and prep them, if

15   that's what you need to do.  But right now these are

16   going to be scheduled in June.  And I'm not telling

17   you what day in June, but get them scheduled in June,

18   and we'll go from there, but I do want you to get them

19   on the books.

20        **MR. BROCK:**  Will do.

21        **MR. AYLSTOCK:**  We'll do that, Judge.  Mark

22   and I had exchanged some proposed dates where he had

23   proposed May 21st or 20th for Stephens, which would

24   work for us.  But before this call, the proposal was

25   June 2nd or 3rd or 4th for Gates.  Happy to move that

 1  into May.  But maybe we could use those June 2, 3 or 4

 2  dates for Zielinski and go ahead and get that done.

 3          **JUDGE RODGERS:**  Let me also just add, in June

 4  if these are done in person, then I would certainly

 5  expect -- and I probably don't even need to say this,

 6  but just to be cautious and safe let me go ahead and

 7  say that you should all practice social distancing

 8  with proper measures in place if you are taking these

 9  in-person depositions.  That's doable.  Maybe select a

10  larger conference room.  Okay?

11          **MR. AYLSTOCK:**  Yes, Judge.

12          **JUDGE RODGERS:**  All right.  Anything else on

13  the remote depositions?

14          **MR. FIELDS:**  No, Your Honor.

15          **MR. AYLSTOCK:**  Not from the Plaintiffs.

16          **JUDGE RODGERS:**  Well, wait, I guess let me

17  back up.  So May you're going to get those two

18  hopefully scheduled, Mark Stephens and Kathy Gates.

19  In June you'll start with the corporate depos.

20          And then, to the extent there are more

21  government employee depositions -- I think there are

22  -- go ahead and schedule those in June as well, if the

23  technology works well with Mark Stephens and Kathy

24  gates.  And again, that's an "if" and we'll see if

25  everything works well.  And if there are complaints

1    that can't be resolved, then maybe I reconsider.  But

2    if it goes well, then go ahead and get those other

3    government witnesses scheduled in June as well

4    remotely.

5         **MR. AYLSTOCK:**  Yes, Judge.

6         **MR. BROCK:**  Judge, this is Mike Brock again.

7    And I'll let Mark Nomellini step in on this if I get

8    it wrong.  I think right now that, in the category of

9    government witnesses, other than the ones we're

10   talking about deposing, that the remainder we're still

11   waiting to hear from the government about their point

12   of view on whether or not the deposition should go

13   forward.  Maybe there are a couple of others, but I

14   think most of them we've not heard back from the

15   government yet.

16        **JUDGE RODGERS:**  Well, I thought there were

17   several in one location, and I can't remember the

18   location --

19        **MR. AYLSTOCK:**  There was one in Idaho, Judge,

20   from the Department of Energy that was set, and we're

21   happy to reset that one.  And then there were some ELA

22   witnesses that the request was granted only to the

23   extent of serving some interrogatories, which of

24   course the parties can do without any COVID issues at

25   all.

```
 1          JUDGE RODGERS:  Okay.  Well, all right, then
 2     go ahead and -- so those were served or they were
 3     approved to be served?
 4          MR. AYLSTOCK:  They were approved to be
 5     served, Judge.
 6          JUDGE RODGERS:  Well, I would move forward
 7     with those.
 8          MR. AYLSTOCK:  Yes, Judge.
 9          JUDGE RODGERS:  Okay.  Mr. Nomellini, do you
10     know anything else about these government witnesses?
11          MR. NOMELLINI:  Your Honor, I think that Mike
12     and Bryan had it right.  There's the one Department of
13     Energy deposition that's been approved, so we could go
14     ahead with that.  And then Bryan is correct, the only
15     other approved ones thus far are approved for
16     interrogatories, so there's certainly no reason that
17     those can't go forward, the interrogatories.
18          JUDGE RODGERS:  Okay.  So that's Mr. Lovejoy
19     is the Department of Energy witness?
20          MR. NOMELLINI:  That's correct.
21          JUDGE RODGERS:  Well, I would ask that you
22     submit those three names, then, to Maj. Evans and Maj.
23     Kim and just get dates for those.  I mean, obviously
24     Col. Stephens and Col. Gates, hopefully those can be
25     done first.  But if not -- it would be terrific if
```

1  they could all be done in May.

2       But, again, we are going to use that

3  technology -- the first one or two depos are going to

4  be a bit of a test.  And if they don't go well -- I'll

5  commit to both sides, but particularly to the

6  Defendants, if they don't go well for whatever reason,

7  then I will work with Maj. Evans in getting hopefully

8  his agreement to have the witnesses appear in person

9  in, I guess, July, if the video doesn't go well.  But

10 I'm thinking it's going to go well, from what I've

11 seen.

12       **MR. AYLSTOCK:**  I think it will, too, Judge.

13       **JUDGE RODGERS:**  I meant to say remote, not

14 just video, obviously, remote.  Go ahead, Bryan.

15       **MR. AYLSTOCK:**  I was going to say, Judge,

16 there is a currently pending deposition that is still

17 on the schedule as far as we know.  That's the Jason

18 Jones corporate deposition on May 19th.  We're happy

19 to do that remotely, and we would use Golkow for that,

20 so that would be a good test as well.

21       **MR. FIELDS:**  Your Honor, it seems to me that

22 we would, for Jason Jones just like for the other --

23 for Mr. Klun and Mr. Zielinski, that we get dates in

24 June and then make a determination regarding whether

25 or not those will be in-person depositions or remote

1    depositions, depending on the circumstances that exist
2    at that time in light of the concerns that we've
3    previously raised.
4         **JUDGE RODGERS:**  All right.  I agree with
5    that.  Just focus on the government witnesses in May
6    and then the corporate witnesses in June, get dates
7    for those corporate witnesses, and then we'll decide
8    whether they'll be in person or remote.
9         **MR. AYLSTOCK:**  Yes, Your Honor.
10        **MR. BROCK:**  Will do.
11        **JUDGE RODGERS:**  Anything else on that issue?
12        *[No response.]*
13        Okay.  Well, thank you.  I feel much better
14   educated about this technology.
15        **MR. FIELDS:**  Your Honor, did you also have a
16   chance to review -- I know you looked at the Golkow.
17   We also sent the link to Veritext, and so I'm not sure
18   if you had a chance to look at the webinar we sent
19   over for that as well to give you a better feel.
20        **JUDGE RODGERS:**  I did not.  I don't know
21   where that is.
22        **MR. FIELDS:**  Oh, yeah, that link is actually
23   in our letter and it's in a footnote, I believe.
24        **JUDGE RODGERS:**  Oh, no, I did not.
25        **MR. FIELDS:**  It's on the last page of our

1    letter.  There's actually about a 30-minute webinar.

2    There's a link in the letter on footnote 1 on page 7,

3    and it's about a 30-minute webinar on remote

4    depositions.  So that might be something that you want

5    to, when you have a chance at your convenience, to

6    look at.

7         **JUDGE RODGERS:**  I will do that.  I missed it.

8    If it said it was 30 minutes, that's probably why I

9    missed it.

10        *[Laughter]*

11        **MR. BROCK:**  We'll send it to -- *(inaudible)*

12   -- just so they'll have a -- *(inaudible)* --

13        **JUDGE RODGERS:**  No, I'll look at it.  And I'm

14   not telling you what vendor you have to use.  I'm

15   hoping you all can reach an agreement on that because

16   everybody wants the best technology out there to be

17   utilized for these depositions.  So I'm not going to

18   dictate to you, and I hope it doesn't come to that,

19   that you all can agree on the vendor to use.

20        And if the Plaintiffs want to use one for

21   their witnesses and the Defendants another vendor for

22   their witnesses, that's fine, too, as long as the

23   technology is good.

24        **MR. FIELDS:**  Thank you, Your Honor.  One of

25   the things that we did in the meet and confer, we did

1   talk about certain metrics and certain technology

2   issues.  So I think both parties sort of understand

3   what the issues are, and we'll work together to make

4   sure any vendor that we use will provide the

5   technological foundation for these depositions.

6            **JUDGE RODGERS:**  Very good.

7            **JUDGE JONES:**  Mr. Fields, this is Judge

8   Jones.  I just wanted to chime in.  I did watch the

9   webinar of the vendor that you all proposed that you

10  were going to use and that was very helpful.  But the

11  one issue I wanted to raise -- *(inaudible)* -- it seems

12  to me one of the important things in these remote

13  depositions is the ability to use documents and

14  introduce documents to the deponent.  And I know that

15  Veritext has a very robust system for that.  I'm

16  assuming Plaintiffs' does as well.

17           But to me, other than, you know, the

18  background and camera angle and things that I'm sure

19  you will all be able to work out, because some of

20  these depositions will be very document intensive, the

21  ability to feel easily and securely with exhibits to

22  me is very important to make these remote depositions

23  really worthwhile.

24           So I would encourage the parties to compare

25  both systems, the system for the vendor that the

1    Plaintiffs is proposing to use and how that technology

2    uses exhibits with the Veritext and decide on which

3    one works the best.

4         **JUDGE RODGERS:**  Well, that's interesting.

5    Let me just interrupt.  Judge Jones watched the

6    Veritext.  I watched the Golkow.  I thought that the

7    technology that I saw on both links in terms of

8    exhibits and documents worked very well.  It sounds

9    like Veritext works well also.

10        So you guys, you know these are going to be

11   document intensive depositions, so just make sure you

12   have the technology that allows you to conduct those

13   depositions appropriately.  I think the technology, it

14   sounds like it's out there, so you all know --

15        **MR. OVERHOLTZ:**  This is Neil.  I was going to

16   say that, you know, a lot has changed in the last

17   three weeks, and different vendors have been working

18   on solutions.  Just this week Zoom reinstituted all

19   their new security policies which also allowed the

20   reinstitution of the transfer of secure links during

21   the deposition.

22        And while I've used the system for

23   transferring exhibits that we saw on Veritext in past

24   depositions that I've taken, the ability to transfer a

25   link during the middle of the deposition eliminates a

1    lot of the problem technology with the transfer of

2    documents because you eliminate the upload feed so the

3    only thing the person on the other end has to do is

4    click the link and then they just download the

5    document, which is usually a lot faster in speed.

6            And so that really made the example that

7    Bryan sent over last night work so much smoothly

8    during the deposition because it changed the speed of

9    having to upload a document during the middle of the

10   deposition.  And that just happened this week.  So the

11   technology is changing and getting better.

12           **JUDGE RODGERS:**  You're talking about the link

13   that I saw that Bryan sent last night and I watched it

14   this morning with the Golkow deposition?  Is that what

15   you're talking about?

16           **MR. OVERHOLTZ:**  Yes, Your Honor.

17           **JUDGE RODGERS:**  Okay.  Well, Judge Jones is

18   right, you all just make sure to focus on that issue

19   when you're looking at the technology that's out

20   there.

21           Anything else, Judge Jones, on this issue?

22           **JUDGE JONES:**  No.

23           **JUDGE RODGERS:**  Judge Herndon, anything on

24   the remote depositions you want to add?

25           **JUDGE HERNDON:**  No.

1    **JUDGE RODGERS:**  So moving on to the second

2    item in the agenda, the state court coordination

3    order.  I wanted to let you know I had a very nice

4    and, I thought, productive opening call with our state

5    court judge, Judge Frazer, and his law clerk, and he

6    is on board.  To the extent it becomes necessary, he's

7    ready to cooperate and collaborate.

8         And I shared with him several of the orders

9    that we've entered in this case, and I'll tell you I

10   also shared with him just the real-time transcript,

11   which is not an official transcript, of our Science

12   Day, so he does have that as well.

13        And, you know, as you all know, at the

14   present time he has, at least when I talked with him,

15   the *Graves* case, he was not aware that the case was on

16   appeal to the Eighth Circuit, and so he was going to

17   be looking into that.

18        He knows who our liaison counsel are, he's

19   aware of that as well.  And I don't know -- maybe you

20   all have an update for me about other -- the motions

21   to remand, as far as I know, those are still pending.

22   And I don't remember off the top of my head what the

23   deadline for 3M to respond to those motions to remand

24   in those cases was.  We talked about that on our last

25   call.

1          Can somebody -- it may be May, the first part

2     of May?

3          **MR. NOMELLINI:**  Yes, that's correct.

4          **MS. JACOBS:**  Judge, I have May 8th.

5          **MR. NOMELLINI:**  Yes, that's correct.

6          **JUDGE RODGERS:**  Tevenia, what is it?

7          **MS. JACOBS:**  May 8th.

8          **JUDGE RODGERS:**  May 8th, okay.

9          Does anybody have an update as far as those

10    cases?  I think Mike Burns was going to talk with that

11    lawyer and make sure he had seen a copy of the order

12    that I had entered denying the motions to remand in

13    the Minnesota cases.

14         **MR. BURNS:**  Yes, Your Honor, I spoke to Mr.

15    Eckland last Monday, and he has seen the order.  And

16    his position is -- *(inaudible)* -- and so he's aware of

17    the order.  I sent him a copy of it.  And I believe

18    there's also a motion by Mr. Collins in Missouri,

19    Justin Collins, on the Cody Evans case to vacate --

20    *(inaudible)* -- No. 62 on that particular case --

21    *(inaudible)* -- state court as well.

22         **JUDGE RODGERS:**  I'm sorry, Mike, can you

23    repeat that?  I didn't hear you.  There's a Missouri

24    case?

25         **MR. BURNS:**  Yes, Your Honor, there's a

1    Missouri case with the -- Cody Evans is the plaintiff

2    in that particular case and Justin Collins is the

3    lawyer representing in that particular case, and he's

4    filed a motion to vacate the CTA No. 62 in that

5    particular case.

6              **JUDGE RODGERS:**  A motion to vacate?

7              **MS. JACOBS:**  Judge, he's talking about the

8    JPML.

9              **MR. BURNS:**  That's correct.

10             **JUDGE RODGERS:**  Oh, okay.

11             **MR. BURNS:**  I'm sorry, Your Honor.

12             **JUDGE RODGERS:**  I think, Tevenia, you made me

13   aware of this, I think, or someone did.  I think it

14   was Tevenia.

15             **MS. JACOBS:**  Yes.

16             **JUDGE RODGERS:**  Well, thank you for that.

17             **MR. SEEGER:**  Judge --

18             **JUDGE RODGERS:**  Yes?

19             **MR. SEEGER:**  I'm sorry to jump in like that.

20   It's Chris Seeger.  I just thought just to give you

21   the -- in connection with your discussion with Judge

22   Frazer, I just wanted to, if I can in one minute,

23   quickly bring you up to speed in our discussions with

24   the state court lawyers.

25             **JUDGE RODGERS:**  Sure.

1          **MR. SEEGER:**  So Mike and Bryan and I have

2    spent a lot of time, so has Mark Nomellini and his

3    team, you know, talking with the state court guys.

4          The plaintiffs lawyers -- we didn't know that

5    you had the discussion with Judge Frazer about your

6    orders, but they are prepared, the plaintiffs there.

7    We've sent them the operative discovery orders, and

8    they just intend to enter those orders or ask Judge

9    Frazer to enter those orders in their case.  They are

10   completely willing to coordinate in every respect,

11   including on scheduling.

12         And the one thing that we thought -- and

13   Judge, we throw this out to see if you like this idea

14   or not.  But there is one particular lawyer we've been

15   dealing with who seems to have the trust and

16   confidence of the others.  And we thought, to the

17   extent it may be important to really -- it's not that

18   much going on in Minnesota right now, but it could

19   change over time.

20         So the one lawyer we've been speaking with is

21   Rick Paul.  And we thought, if Your Honor was

22   inclined, that maybe what might make some sense is to

23   have him appointed -- we've spoken to Mike about this,

24   too, and he's fine with it -- have him appointed as

25   like a co-liaison where you would literally have

1    somebody from the Minnesota state court -- and he has

2    cases in federal court, by the way, Judge -- but he

3    would be also in a position to, in addition to Mike,

4    report to you about anything going on there.

5              **MR. NOMELLINI:**  Your Honor --

6              **JUDGE RODGERS:**  I think that would be smart.

7              Go ahead, Mark.

8              **MR. NOMELLINI:**  I agree with everything what

9    Chris just said.  Chris and I and Bryan had a

10   productive call with Rick Paul, and we talked about

11   putting together a coordination order that would

12   appoint Rick Paul as the federal-state liaison counsel

13   and say that the MDL proceeding would be the lead case

14   for discovery and say that the parties in the

15   Minnesota action would not take additional discovery

16   except on a noticed motion for good cause shown.

17             The Minnesota state lawyers all seemed

18   amenable to that, and we sent them a draft.  So I

19   think hopefully we can get something to Your Honor on

20   that shortly.

21             **JUDGE RODGERS:**  That sounds great.  Could I

22   make a suggestion that, before you submit that order,

23   it might be a good idea -- and I'm just thinking out

24   loud, I hadn't thought about this until we just

25   started this discussion, but it might be a good idea

1   to have a -- I don't know what we'll call it -- case

2   management conference jointly with Judge Frazer and

3   myself and Judge Jones and Judge Herndon and all of

4   you and have the lawyers -- whether it's Mr. Paul and

5   Mike Burns and then, Mark, you and someone from the

6   state court team from 3M to just present to us the

7   particulars of the coordination order.  And, you know,

8   to the extent we have questions, you'll be there to

9   answer them, and then we can enter that order

10  afterwards.

11          **MR. SEEGER:**  I think that's a great idea,

12  Your Honor.

13          **JUDGE RODGERS:**  What about you, Mark?

14          **MR. NOMELLINI:**  I agree, Judge.

15          **JUDGE RODGERS:**  Okay.  I'll reach out to

16  Judge Frazer either -- I may try today or certainly

17  Monday at the latest and just let him know what we've

18  discussed, and we'll then get Tevenia and his law

19  clerk -- her name is Ashlyn -- I don't remember her

20  last name.

21          Do you remember, Tevenia?

22          **MS. JACOBS:**  Hendricks, maybe?

23          **JUDGE RODGERS:**  We'll get with Tevenia and

24  Ashlyn and we'll get some dates and get them out to

25  you, and hopefully we can get this done in the next

```
 1   couple of weeks, before the next CMC I'd like to.
 2          Is that what you all were thinking, the next
 3   couple of weeks, or do you want to wait until the next
 4   CMC?  I could just have him attend the next CMC.
 5          MR. SEEGER:  Either way is fine.  We'll make
 6   it work.
 7          JUDGE RODGERS:  Okay.  Well, I'll talk to
 8   him.  I'd like to go ahead and get it done, but we'll
 9   leave the date for the conference open right now, but
10   I'll work to put that together.
11          Anything else?
12          Judge Jones, do you have anything on the
13   state court coordination?
14          JUDGE JONES:  No.
15          JUDGE RODGERS:  Judge Herndon?
16          JUDGE HERNDON:  No, I don't, thanks.
17          JUDGE RODGERS:  Okay.  I asked Tevenia to
18   send you, as you know, the notes of our call with the
19   DOJ and DoD.  It was, I felt, a very productive call,
20   certainly on the DoD side.  There's been a lot of
21   movement there, and I hope we see fruit soon.
22          The VA side, as we all know, it's a tad bit
23   more difficult.  And the one thing I have pressed
24   Jackie Snead for -- and let me tell you, I love Jackie
25   Snead, she's my best friend, she's been great, I mean,
```

1  she has really been working hard.  But I think she --

2  she wouldn't say this and so I'm not quoting her, but

3  I think she's frustrated on the VA side of things.

4  It's been difficult for her to get them moving as --

5  she would like them to move a lot quicker.

6        But this issue of the wet signature

7  authorization as opposed to the motion *Touhy* requests

8  and the Privacy Act order, I've pressed her on the

9  legal authority for the VA's requirement for that, and

10  she hasn't provided that authority.

11        Judge Herndon, I think, may have an update on

12  that as recently as this morning.

13        Is that right, Judge Herndon, did you

14  communicate with Jackie this morning?

15        **JUDGE HERNDON:**  I did.  And she said she's

16  still trying to hear back from them on that.  She

17  wanted an example of the Privacy Act order, and then

18  we also sent her the motion requesting the order.  So

19  she's going to be discussing it with them.  But sort

20  of the regular theme that I hear from her is that

21  she's waiting to hear back from them or she hasn't

22  heard back or I think she's just getting -- having a

23  lot of problems communicating with them sort of

24  effectively.

25        For example, even the VBA stuff, she raised

1    some time ago she was concerned that there might be a

2    coronavirus issue there.  And so I asked her again

3    about it, and she says she's still working to find out

4    from them if that's having an impact.

5         So I think you're exactly right, and I think

6    she's -- although she hasn't said, I think she's very

7    frustrated, and she's just having a lot of trouble

8    getting any information out of them.

9         **JUDGE RODGERS:**  Well, you know, it's delicate

10   because, on the one hand, I could get a lot pushier

11   with the VA, but I don't want to make them mad, and I

12   don't want them to put us at the back of the line.  I

13   keep hearing from Jackie Snead that we're at the front

14   of the line, but yet it doesn't feel like we're at the

15   front of the line.

16        So I'm going to let a little more time pass,

17   confer again with Jackie and myself on this.  But at

18   some point I may have to get more formal in terms of

19   getting these documents and getting the cooperation

20   from the VA.  But I don't want to go there just yet,

21   and I certainly don't want to go there if we don't

22   have to.  But this --

23             **JUDGE HERNDON:**  Can I offer --

24             **JUDGE RODGERS:**  Yes.

25             **JUDGE HERNDON:**  To sort of verify what you're

1    talking about, everybody continues to really take the

2    delicate path with them.  And I was writing back and

3    forth with Jackie this morning about that and just

4    said how much we appreciated, and she actually wrote

5    back and said that to her this is all refreshing how

6    she's dealing with us because of the approach we're

7    taking because it's -- she's appreciative of the way

8    this is being handled.

9         So I think that, you know, I think she's

10   trying to do everything she can, but I sort of -- at

11   some point I agree that we have to sort of push a

12   little more, and I'm delicately trying to do that as I

13   keep writing for updates and things like that.

14        **JUDGE RODGERS:**  Okay.  Well, we'll let it

15   ride for a little bit longer, and hopefully Jackie can

16   impress upon them the need to respond more timely and

17   certainly in a more productive manner.

18        But, again, back to this wet signature

19   requirement.  When I was told the VA was going to make

20   that a requirement for the 25 bellwether plaintiffs --

21   I'm not saying it wasn't a big deal or a chore to have

22   to get those signatures, but I went along with it

23   because I thought, look, let's just get them the

24   signatures, because I was told at that time two weeks

25   on the turnaround, that's what we were told, two weeks

1    they would have the records.  Well, obviously, that
2    has long since come and gone.
3          So I am going to push on the wet signature
4    because I don't think there's authority for it.  If
5    there was -- if it was a legal requirement for these
6    records, then I don't think the DoD would be willing
7    to act pursuant to the Privacy Act order, and they
8    are.  Plus, the statute that we've looked at these
9    records 732, 782 -- I'm sorry, I'm not quoting it
10   probably correctly -- but it suggests that a Privacy
11   Act order is sufficient, you know, either consent or a
12   Privacy Act order.
13         So I don't know.  You know, Tevenia has
14   jokingly suggested that the VA is requiring it because
15   they believe they'll get less requests if they require
16   the wet signature.  That may be true.  But I'm going
17   to continue to push back on that and see where we end
18   up.
19         I apologize.  We're trying, Judge Herndon and
20   I, as best we can.  And it is delicate.  It's kind of
21   like the velvet hammer approach, but we're not getting
22   very far.  We're a year into this litigation, and I
23   don't think we have a complete file yet on one
24   plaintiff.
25         **MR. NOMELLINI:**  We appreciate the efforts

1    from all of Your Honors.  And I can say that, you

2    know, the Plaintiffs and us, you know, we're familiar

3    with this from our own interactions and a lot of back

4    and forth.

5          **JUDGE RODGERS:**  Yeah.  Well, you all have

6    been -- I know it's not just us that has been working

7    at this, and you all have definitely been on the front

8    line with it, and we appreciate your efforts as well.

9          Let me jump kind of that segue up to No. 5 on

10   your agenda.  I had a question in the notes for you

11   all from the call about the 1 percent in terms of the

12   personnel file for the DoD.  And this was a question

13   that Maj. Kim had about the personnel file.  Because

14   apparently there's the complete personnel file minus

15   -- you read the notes, I mean, they're hoping that

16   we'll carve out some records that the Army just

17   doesn't think are relevant and are time consuming to

18   pull.  But we'll call that the complete personnel file

19   versus the more narrow category of records that is the

20   subject of the pending supplemental *Touhy* requests

21   that was submitted after that first meeting we had

22   with Maj. Evans and Michael Fucci at the Pentagon.

23         You all indicated you'd be prepared to

24   discuss that here today.  Does someone want to start?

25         **MR. SEEGER:**  Judge, I could start off for

1    Plaintiffs.  So we are looking at this.  We're not
2    putting up any objections to going in one direction or
3    another.  I think our big issue was which would be the
4    better and most efficient way to go that would
5    actually get us the records faster.
6           So my understanding is we were waiting on an
7    exemplar file that was supposed to be sent by Majs.
8    Kim and Evans regarding the personnel file and a copy
9    of the active duty forms.  And I think they were going
10   to go to Judge Herndon, is my recollection, and I
11   don't know if we've received them.
12          But our thing at this point was that we
13   wanted to consult both with Mark and his team and with
14   the Majors a little bit more and get a little more
15   guidance from them.
16          Obviously we all want this -- we want this
17   information.  It's going to be useful for a lot of
18   reasons.  But we didn't want to inject anything that
19   would cause undue delay for records that might not be
20   necessary for anybody's purposes like, you know,
21   something regarding a GI bill or something like that.
22          So we just wanted to -- I think we're still
23   in a little bit of a state of limbo on this.  Mark may
24   disagree as to what he wants on that, but that was our
25   issue.

1          **JUDGE RODGERS:**   Thank you.

2          Mark?

3          **MR. NOMELLINI:**   Your Honor, I think Mike is

4   going to address this in the first instance.

5          **MR. BROCK:**   Yes.   Thanks, Mark.

6          So we're in a similar place.   I think the --

7   I think I can say that we know that there are records

8   that we would like to see in addition to the four or

9   five categories that had been suggested.   It's kind of

10  one of these issues of we don't know what we don't

11  know.

12         We can look at, you know, generally available

13  information about what forms exist and what

14  information they contain.   We do have some information

15  that's been produced in the litigation that's outside

16  the narrow band of documents that we're talking about

17  that have information in them that is relevant to the

18  case.

19         We're in the process of compiling a list of

20  those things that -- when I say "those things," those

21  forms and other documents that we think will have

22  relevant information.   I think, at the end of the day,

23  if it's easier to put the entire file together and

24  produce it, that would be our preference.   But I think

25  we can continue to look at it, and the exemplar file

 1   might help us also to understand what is present in a

 2   full file, but I'm not sure that we have one at this

 3   point.

 4          **JUDGE RODGERS:**  Well, I don't think that -- I

 5   didn't get the impression that Maj. Kim -- or Maj.

 6   Evans actually I think was the one that brought this

 7   up -- was asking for relief from producing the

 8   complete personnel file minus a few of these

 9   categories that are carved out in terms of, you know,

10   whether you go with the full file or the more narrow

11   file.  Because the more narrow file is substantially

12   more narrow than the complete file minus a few of

13   these -- I'll call them "irrelevant," in quotes,

14   categories of records.

15          So my feeling is -- and yeah, that's great.

16   I hadn't heard about the exemplar.  But my feeling is

17   they should produce the complete personnel file.  But

18   we do need to carve out -- and if you need me to help

19   you with this, I'm happy to.  Because I can tell you

20   what I think is irrelevant, if you can't come to an

21   agreement yourselves on it.

22          But there are some of these records that are

23   just not going to be relevant, and it is time

24   consuming for them to pull those records.  But I do

25   think you're going to want more and need more than

1    just the narrow category that is the subject of the

2    supplemental request that's there right now.

3         I mean, that was done as a way, we thought,

4    you know, for expediency and speed to get some records

5    back.  That was my understanding.  I don't remember

6    how many months ago it was that we met at the

7    Pentagon.

8         Do you all have even those records for the 25

9    bellwethers?  I don't think so.

10        **MR. AYLSTOCK:**  Not complete.  We have some

11   for some.  And so, just a little more color on this,

12   Judge, if I may.  We did negotiate sort of as part of

13   the tolling some of the things that would be required

14   for the census and they were relative and narrow.  The

15   officer evaluation reports, the record brief, the

16   NCOER and the ERBs and the --

17        **JUDGE RODGERS:**  Well, those are separate,

18   though.  The ERBs and the ORBs, those are separate.

19   That's a separate category that they say they're

20   pulling.

21        **MR. AYLSTOCK:**  Okay.  And then Maj. Kim had

22   identified housing certification, life insurance, high

23   school diploma, et cetera, that certainly we would

24   suggest would be irrelevant and certainly time

25   consuming.  We don't want -- nobody wants to slow

1    those down.

2         My review of the notes from your call

3    indicated that Maj. Kim was going to send some

4    proposed categories of information to eliminate from

5    the production of personnel files.

6         **JUDGE RODGERS:**  Yes.

7         **MR. AYLSTOCK:**  I think we look at that, look

8    at what she's already sent, and if it's something like

9    a housing certification that, at best, may be in one

10   out of a thousand cases is tangentially relevant but

11   it's going to hold everything up, I think both sides

12   would say let's just kind of get to the meat here and

13   get it done.

14        So that's where we're at.  I don't think

15   we're at odds necessarily.  It's just as matter of

16   learning more from them about those categories that

17   are slowing them down.

18        **JUDGE RODGERS:**  Well, I think then Judge

19   Herndon or I need to follow up with Maj. Kim today.

20   And she did indicate she would send the categories --

21   and they weren't many -- that they feel could be

22   carved out, and get those from her and get those to

23   you and hopefully get a decision.  Hopefully it's

24   jointly agreed.  If not, then we can help you so that

25   we can get these requests submitted.  Because their HR

1    command has said get us the names, get us the 1500

2    now, we're ready to go.

3              **MR. AYLSTOCK:**  That would be great, Judge.

4              **JUDGE RODGERS:**  So, with that invitation, I

5    don't want to sit on that.  But you're right, Bryan,

6    we are waiting for information from her about those

7    categories that they believe are not relevant, and

8    then we'll see if you all and the Court agrees with

9    that.

10             **MR. NOMELLINI:**  Your Honor --

11             **MR. AYLSTOCK:**  Judge, the other thing --

12             I'm sorry, Mark, go ahead.

13             **MR. NOMELLINI:**  Your Honor, in connection

14   with that, if it would be possible and not too much

15   burden, when Maj. Kim comes up with that list, if they

16   could also provide an exemplar -- not revealing

17   anybody's personal information but an exemplar of the

18   form, you know, in its current version, that would be

19   really helpful I think to the parties.  Again, if it's

20   too burdensome, I don't want to make the perfect the

21   enemy of the good, but that's a suggestion.

22             **JUDGE RODGERS:**  Okay.  Did you all -- it

23   sounds like you had a discussion with her or Maj.

24   Evans about an exemplar.  Did that happen?

25             **MR. NOMELLINI:**  I did hear Chris mention

 1   that, Your Honor.

 2           **MR. SEEGER:**  Judge, hi, it's Chris again.  I

 3   got updated on that from Jen Hoekstra, who I believe

 4   is on the line and can address it in more detail.

 5           **JUDGE RODGERS:**  Okay.

 6           **MS. HOEKSTRA:**  Your Honor, this is Jennifer.

 7   We haven't had any specific discussions with Ms. Snead

 8   ourselves or with Maj. Kim.  It was just part of the

 9   explanation of the notes and the different categories

10   that they would be providing what they thought was

11   relevant and not relevant related to the personnel

12   files for the bellwethers and that we could

13   extrapolate that to 1 percent.

14           **JUDGE RODGERS:**  Well, what I think we need to

15   do --

16           **JUDGE HERNDON:**  Why don't I follow up on this

17   today so we can get this resolved.

18           **JUDGE RODGERS:**  Yes, that's exactly what I

19   was thinking.

20           **MR. BROCK:**  I have a list of the things they

21   were talking about excluding, and it's actually in a

22   notes, so I don't know if this came in a conversation

23   with them or maybe they had already sent us something.

24   But I think we know the categories of things they

25   wanted to exclude, unless they're looking at others.

1          And there are a couple of those that we did

2     want to talk about at some point.  But if they're

3     sending -- I apologize I didn't know this.  If they're

4     sending another list, perhaps we can look at that and

5     then talk about it.

6          **JUDGE RODGERS:**  Well, what I think you're

7     looking at, Mike, is probably from our call, and it

8     was what I jotted down and Tevenia jotted down from

9     the call about just examples of things that they

10    thought were not relevant.  But we did ask Maj. Kim,

11    and she agreed, to submit the categories, the specific

12    categories to us.

13         But I also agree, and it sounds like Judge

14    Herndon is already ahead of me on this, it would be

15    very helpful to know what are all of the categories of

16    records that are contained --

17         Now, I guess I should stop and say, she did

18    tell us that different servicemembers have different

19    categories of records in their files, so some

20    obviously have more things than others.  So I guess we

21    should just ask her to tell us, looking at the

22    servicemember record that would have the most

23    information, what are those categories of records, and

24    then we can go from there, understanding that not

25    every servicemember is going to have every one of

1    those categories in his or her personnel file.

2              **JUDGE HERNDON:**  Sure.

3              **JUDGE RODGERS:**  Thank you, Judge Herndon.

4    That would be helpful if we could get back with her on

5    that.

6              **MR. AYLSTOCK:**  Judge, I think the other thing

7    that she was -- I was just going to say, while you're

8    on or Judge Herndon is on, they were going to send

9    sort of a pre-filled-out authorization form from the

10   DoD side so that we could know exactly how they wanted

11   it done, and I'm not sure we've seen that yet.

12             **JUDGE RODGERS:**  Right.  And that is just for

13   the active duty personnel.  You know that, right?

14             **MR. AYLSTOCK:**  Yes, Judge.

15             **JUDGE RODGERS:**  Okay.  So that is something

16   else we were waiting on from her.  So --

17             **JUDGE HERNDON:**  Correct me, Judge, if I'm

18   wrong, but I thought that part of the discussion dealt

19   with your push back about Privacy Act orders and Maj.

20   Kim was going to come up with authority for that.  In

21   fact, I've asked her to update me on that.

22             **JUDGE RODGERS:**  Well, here is what happened:

23   After that call, Tevenia and I were reconciling our

24   notes, and there was some confusion on the DoD's side

25   about wet signature authorization versus Privacy Act

1    order.

2           So that's when I, over the weekend,

3    communicated back with Maj. Kim and got clarification.

4    And at the end of the day, you know, where we ended up

5    was that the wet signature authorization is for the

6    active duty servicemembers only.  So all of the

7    veterans, the DoD -- or the Army, she thinks the same

8    will be true for the Marines, but the Army has agreed

9    to proceed based on the Privacy Act order for the

10   1500, for the medical record, personnel files,

11   everything.

12          But in terms of the medical record for the

13   active duty, that authorization she was going to

14   provide to us.

15          Bryan, that needs to go to those four active

16   duty personnel, at least in the sort of 25, and then

17   I'm not sure how many active duties we have in the

18   1500.  But those people need to take that

19   authorization form, signed, original signature, to

20   their medical office at their current duty station.

21   That's what the direction was.

22          But Maj. Kim is not going to be providing us

23   with any authority for that.  I'll accept that for

24   those active duty folks that that's what they have to

25   do.  But we're still waiting on Jackie Snead to give

1    us the authority from the VA for everyone else.

2            **MR. AYLSTOCK:**  We'll make it happen, Judge.

3            **JUDGE RODGERS:**  Okay, terrific.  Because I'm

4    looking at the marching orders from the notes of that

5    call, and Maj. Kim was going to upload the DOEHRS data

6    for the bellwether plaintiffs into the BrownGreer

7    portal.  I'm not sure if that's happened.  Does

8    anybody know?

9            **MR. AYLSTOCK:**  No, Your Honor not at this

10   point.

11           **JUDGE RODGERS:**  She was going to send the DoD

12   authorization form for the active duty people, she was

13   going to send the proposed categories to eliminate

14   some production of the complete personnel files, and

15   then she was going to let us know how many ORBs and

16   ERBs had been uploaded to MDL Centrality as well as

17   how many plaintiffs HR command records have been

18   produced.

19           So, Judge Herndon, maybe just -- that's from

20   the call notes -- just touch base with her on all four

21   of those items.

22           **JUDGE HERNDON:**  Right.  I just emailed her

23   and asked her for a time today when I can talk with

24   her.

25           **JUDGE RODGERS:**  Great, terrific.  Thank you.

1              Okay.  I've seen there's a dispute --
2    although I did not see your letter briefs actually
3    until this morning, but I don't need to see them.
4    This is an issue that's before Judge Jones, correct,
5    as far as the interrogatory and document requests?
6              **MR. AYLSTOCK:**  Yes, Your Honor.
7              **MR. NOMELLINI:**  Yes, Judge.
8              **JUDGE JONES:**  And thank you, both sides, for
9    your briefs.  I got those yesterday reviewed them.
10   And I'm actually working on an order now, and probably
11   next week Monday I'll have an order on the two issues
12   that you raised.  I don't think we need to have any
13   further discussion about it at this point.  But thank
14   you for the briefings, very helpful.
15             **JUDGE RODGERS:**  Terrific.
16             **MR. AYLSTOCK:**  Thank you, Judge.
17             **MR. NOMELLINI:**  Thank you, Judge.
18             **JUDGE RODGERS:**  Okay.  So the earplug and
19   wallet card samples, I actually have them here with me
20   at my home.  We're in the processing this week of
21   moving from the chambers in Arnow back to my old/new
22   chambers across the street, and Tevenia and I both
23   felt that it would be best not to leave the movement
24   and transfer of those precious items to our moving
25   team.  So I have them on the top shelf of my closet,

1    safe and sound.

2         Not as many earplugs, I guess, as we thought.

3    Maj. Evans said he thought that was everything, but he

4    was going to confirm that with Lt. Col. Murphy, I

5    think, and then also as far as the wallet card

6    samples.

7         But there's probably a limit to how many of

8    those we need, right, for the wallet card samples?

9         **MS. HUTSON:**  I think so, Your Honor.  They're

10   all the same.

11        **JUDGE RODGERS:**  Let me see if I had anything

12   else.  I did want to add I did see the updated *Lexecon*

13   waiver for Mr. Garcia, so I thank Ms. Anello for

14   getting that done.  Those are now all complete.

15        And I think that's a wrap for everything I

16   have other than just to confirm that the next CMC is

17   May 29th.  And it will be -- if we hold it in person,

18   and I'm not saying whether we will or won't, but it

19   would be at 1 North Palafox across the street.  And

20   then in June the conference is on the 26th, and of

21   course we moved the July to the 29th.

22        **MR. NOMELLINI:**  Thank you, Judge.  Just

23   briefly on the earplugs and wallet card samples, we

24   don't have to resolve this today, but one thing we

25   were thinking -- and we can meet and confer with the

1    Plaintiffs -- is we may work on some kind of

2    proposal -- obviously the Court gets first dibs in

3    terms of whatever the Court wants to hold on to -- but

4    the possibility of dividing some number in equal share

5    between Plaintiffs and Defendants.  And that's

6    something we can talk further with the Plaintiffs

7    counsel about.

8              **JUDGE RODGERS:**  Okay.  That sounds good.

9    Talk about that then let me know, and I'll be happy to

10   proceed if you can reach a joint agreement, but again

11   let me know.

12             **MR. NOMELLINI:**  Will do, Judge.

13             **JUDGE RODGERS:**  Judge Jones, do you have

14   anything else?

15             **JUDGE JONES:**  No, not from this end.

16             **JUDGE RODGERS:**  Okay.  And Judge Herndon?

17             **JUDGE HERNDON:**  No.  I'm good.  I'll be

18   following up and I'll let you know.

19             **JUDGE RODGERS:**  Okay.  Let me ask, have you

20   all seen, or has it just been from my eyes only at

21   this point, the list of the 1500?  Have we shared that

22   with you all yet?

23             **MR. AYLSTOCK:**  I think you sent it to us.

24             **JUDGE RODGERS:**  I couldn't remember.  I know

25   we sent you an email about how we arrived at it, but I

1    couldn't remember if we had actually sent out the

2    spreadsheet.  So we did, from the BrownGreer list?

3         **MR. AYLSTOCK:**  You did, Judge.

4         **MS. JACOBS:**  It was -- *(inaudible)* --

5         **JUDGE RODGERS:**  Oh, it was?  All right, very

6    good.  At this point that feels about ten years ago.

7         Let me just touch on one final matter, and it

8    kind of relates somewhat to the 1500.

9         So right now we have three buckets of cases.

10   We have the 25 bellwether cases, we have the 1509 what

11   we call the 1 percent, and then we have the 148,000

12   other cases in a bucket.

13        So what I am going to be doing -- and I'm

14   just letting you know this, giving you a heads up.

15   I'll probably be entering the order today.  But I am

16   interested in appointing a court expert under Rule 706

17   of the Federal Rules of Evidence to assist me in

18   getting a better handle on the universe of cases in

19   the MDL.  This may be a biostatistician.

20        And I'm going to enter an order that directs

21   both sides to show cause why I shouldn't do that.

22   This is for litigation purposes, though, just so

23   everybody knows.  I want this person to assist me in

24   coming up with an inventory of the servicemember

25   records that can be informative with respect to

1    litigation relevant characteristics of the entire

2    plaintiff population so that I can best manage the

3    third bucket of 148,000 plaintiffs.

4            So that's what I'm going to do.  I just

5    wanted to make you aware.  I don't want to hear

6    argument right now for or against.  You'll have an

7    opportunity, as the rule provides, to speak to it

8    formally in writing.  Okay?

9            **MR. BROCK:**  Okay.  Thank you.

10            **MR. AYLSTOCK:**  Yes, Judge.

11            **JUDGE RODGERS:**  Anything else from anyone on

12    any matter?

13            **MR. AYLSTOCK:**  Not from the Plaintiffs,

14    Judge.

15            **JUDGE RODGERS:**  Mr. Brock, you all?

16            **MR. BROCK:**  I think that covers it for us.

17    Thank you, Judge.

18            **JUDGE RODGERS:**  Okay.  Well, you all have a

19    very nice weekend.  I hope everyone is staying healthy

20    and safe and sane.  I don't think I have any more yard

21    projects to do.

22            **MR. BROCK:**  The grass will be growing faster

23    soon.

24            **JUDGE RODGERS:**  That's true.  Thanks so much.

25            **JUDGE HERNDON:**  I'm physically healthy, but

 1    there's a lot of conversation about my mental health

 2    at this point.

 3              **JUDGE RODGERS:**  That's true.  Well, you all

 4    take care, and we'll talk again soon.  I'm sure Judge

 5    Herndon will have an update for us from Ms. Snead and

 6    Maj. Kim, and then also Judge Jones will -- it sounds

 7    like he'll have a ruling out on the discovery dispute

 8    shortly as well.

 9              Thank you, everyone.

10              *(Proceedings concluded at 10:42 a.m.)*

11                   --------------------

12    *I certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled*
13    *matter.  Any redaction of personal data identifiers*
      *pursuant to the Judicial Conference Policy on Privacy*
14    *are noted within the transcript.*

15

16    *s/Donna L. Boland*                    *4-29-2020*
      *Donna L. Boland, RPR, FCRR*               *Date*
17    *Official Court Reporter*

18

19

20

21

22

23

24

25