**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19-md-02885 |
| | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |
| | ) | |
| This Document Relates to All Cases | ) | |
| | ) | |

## DEFENDANTS' MOTION TO COMPEL INTERROGATORY RESPONSES

## I.    INTRODUCTION

A common thread running through this multidistrict litigation proceeding is the allegation that Plaintiffs sustained hearing damage while wearing the Combat Arms Earplugs v2 ("CAEv2") during military service. After lodging serious and unfounded complaints that various 3M-related companies ignored the health and safety of men and women serving this country in various capacities, lawyers for the Plaintiffs now want to withhold vital information by relying on a misguided interpretation of a Department of Defense ("DoD") directive. Specifically, the Bellwether Plaintiffs have objected to 44 of Defendants' interrogatories, claiming that DoD Directive 5405.2 (the "Directive") prohibits current and former members of the military from disclosing certain information in litigation.[1] The Bellwether

---

[1] This motion to compel is limited to the issue of the application of the Department of Defense Directive 5405.2 and the Bellwether Plaintiffs' related failure to provide initial disclosures, as required by Federal Rule of Civil Procedure 26(a)(1)(A). The

Plaintiffs have also refused to make Rule 26 initial disclosures or adequately respond to interrogatories that request similar information, including but not limited to on the basis of DoD Directive 5405.2.

Defendants respectfully ask this Court to reject this interpretation of the Directive and order the Bellwether Plaintiffs to respond to various interrogatories seeking fundamental information about their claims.[2] As an initial matter, the Directive has long existed and one wonders why Plaintiffs have waited until now to invoke the Directive as a shield against the disclosure of information clearly discoverable under the Federal Rules of Civil Procedure. Putting that point to the side, the Directive cannot extend to former members of the military. Indeed, every court that has considered this issue in a reasoned opinion has found that the Directive must be limited to current—not former—employees. Even if it could apply, the Bellwether Plaintiffs can respond to Defendants' interrogatories, and the Bellwether

---

parties are continuing to meet and confer on other global issues regarding the Bellwether Plaintiffs' interrogatories and other discovery responses. Defendants will also meet confer with individual counsel on non-global issues relating to Bellwether Plaintiffs' discovery responses.

[2] *See* Exhibit A (Defendants' Interrogatories and the Bellwether Plaintiffs' Objections); Local Rule 26.1(D) ("A discovery motion must frame the dispute clearly and, if feasible, must, for each discovery request at issue: (1) quote the discovery request verbatim; (2) quote each objection specifically directed to the discovery request; and (3) set out the reasons why the discovery should be compelled.").

Plaintiffs have no valid basis to disregard the obligation to provide initial disclosures. It is important to resolve these issues now, as the Bellwether Plaintiffs must provide appropriate interrogatory responses before discovery continues. If the Bellwether Plaintiffs are, as they assert, prevented from providing the information required under the Federal Rules, then they cannot meet their burden of proof and cannot participate in this litigation.

## II.    FACTUAL BACKGROUND

On March 13, 2020, Defendants propounded their first set of interrogatories to the Bellwether Plaintiffs. Defendants propounded their second set of interrogatories on March 30, 2020. During a meet and confer session on April 8, 2020, Defendants noted that no Bellwether Plaintiff has made initial disclosures, as required by Rule 26(a)(1)(A). Plaintiffs claimed that Rule 26 initial disclosures were unnecessary because the information sought (*e.g.*, the identity of Plaintiffs' witnesses and computation of damages sought) was encompassed in Defendants' interrogatories. *See* Exhibit E at 2 (April 14 Letter re Plaintiffs' Objections). The Bellwether Plaintiffs provided initial objections to both sets of interrogatories on April 9, 2020, but did not respond substantively. The Bellwether Plaintiffs' initial objections to the interrogatories did not raise the Directive or suggest that the Bellwether Plaintiffs would not provide the information called for as part of Rule 26 initial disclosures.

On May 15, 2020, the Bellwether Plaintiffs propounded their supplemental responses to Defendants' interrogatories and, for the first time, raised the Directive when objecting to Defendants' interrogatories. The Bellwether Plaintiffs invoked the Directive broadly as an objection to the interrogatories—taken as a whole, the Bellwether Plaintiffs cited the Directive in objections to 44 of Defendants' interrogatories. Even though only three Bellwether Plaintiffs are current military employees, every Bellwether Plaintiff objected to answering twelve interrogatories on the grounds that the Directive allegedly prohibits them from answering.  For each interrogatory, the Bellwether Plaintiffs state:

> Plaintiff objects to this Interrogatory to the extent that it seeks disclosure of official Government information, which disclosure may be subject to limitations governed by Department of Defense Directive 5405.2. Subject to and without waiver of the foregoing general and specific objections, Plaintiff will answer as permitted and guided by the Government, whether at deposition or prior thereto.

*See, e.g.*, Exhibit B at 16 (Plaintiff William Wayman's Answers and Objections to Defendant 3M's First Set of Interrogatories to Plaintiff).

Section 6.1.1. of the Directive states:

> **In response to a litigation request or demand for official DoD information or the testimony of DoD personnel as witnesses**, the General Counsels of DoD, Navy, and the Defense Agencies; the Judge Advocates General of the Military Departments; and the Chief Legal Advisors to the JCS and the Unified and Specified Commands, with regard to their respective Components, are authorized—after consulting and coordinating with the appropriate Department of Justice litigation attorneys, as required—to determine whether official information originated by the Component may be released in litigation; **whether**

4

> **DoD personnel** assigned to or affiliated with the Component **may be
> interviewed, contacted, or used as witnesses concerning official
> DoD information** or as expert witnesses; and **what, if any, conditions
> will be imposed upon such release, interview, contact, or testimony.**
> Delegation of this authority, to include the authority to invoke
> appropriate claims of privilege before any tribunal, is permitted.

Exhibit C at 4 (emphasis added). "DoD Personnel" is defined to include "[p]resent

and former U.S. military personnel." *Id.* at 3. "Official Information," is defined

follows:

> **All information of any kind**, however stored, that is in the custody and
> control of the Department of Defense, relates to information in the
> custody and control of the Department, or was **acquired by DoD
> personnel as part of their official duties or because of their official
> status within the Department while such personnel were employed
> by or on behalf of the Department or on active duty with the United
> States Armed Forces.**

*Id.* (emphasis added). The twelve interrogatories to which every Bellwether Plaintiff

objected based on the Directive are:

> **Interrogatory No. 5**
> Identify All Persons who served with You in the military that were
> present when You fired weapons in training Or combat.
>
> **Interrogatory No. 6**
> Identify All Persons who have knowledge of whether Or not You
> wore a Hearing Protection Device when exposed to loud noises in the
> military, including loud noises from weapons fire And transport
> vehicles.
>
> **Interrogatory No. 26**
> If You were ever deployed in combat, please Identify the location,
> dates of deployment, Your primary duties while deployed, And
> whether you experienced live fire at or from the enemy in combat.

**Interrogatory No. 28**
If you were fitted with the CAEv2 by another person, describe the process by which you were fitted, including the person(s) who fitted you with the CAEv2, the date(s) And location(s) you were fitted, how you were fitted, And whether Or not the person fitting you with the CAEv2 rolled back any of the flanges on the opposite end of the CAEv2 during the fitting process.

**Interrogatory No. 30**
Describe Each instance in which You wore the CAEv2, including the dates in which You wore the CAEv2, the circumstances in which You wore the CAEv2, And the types of noises that You were exposed to while using the CAEv2.

**Interrogatory No. 34**
Describe in detail any complaints you made regarding the CAEv2 while in the Military, including the date of the complaint(s), the person(s) to whom you made the complaint, And the substance of the complaint.

**Interrogatory No. 36**
Describe All of the weapons You operated while in the military, And for each, describe the Hearing Protection Device You wore while operating the weapon, if any.

**Interrogatory No. 37**
Describe Any basic Or advanced weapons training You received in connection with Your military service, including the date of training, the weapons fired during training, And the Hearing Protection Devices worn while firing weapons during training.

**Interrogatory No. 38**
If You were exposed to Any weapon, machinery, And/Or Any other loud noises while in the Military, please Describe in detail All circumstances in which You did so, including the weapon(s), machinery, And/Or loud noises you were exposed to without a Hearing Protection Device, And the frequency And duration of use without using a Hearing Protection Device.

**Interrogatory No. 44**
Describe in detail Any instruction(s) Or training that You were

6

provided on how to use the CAEv2, including but not limited to Any
written Or oral instructions And in-Person training, the positions And
names of the Person(s) who provided the training, And the dates of
the training.

**Interrogatory No. 45**
If You were instructed to roll Or fold back Any of the flanges on the
CAEv2, Describe in detail the circumstances in which You were
instructed to do so, including but not limited to Any written Or oral
instructions And in-Person training, the positions And names of the
Person(s) who provided the training, And the dates of the training.

**Interrogatory No. 48**
Describe in detail All circumstances Or events in which You allege
You were exposed to noise while wearing the CAEv2 that You allege
caused Or contributed to Your injury.

*See* Exhibit A. In addition to these twelve interrogatories, at least one Bellwether

Plaintiff objected to 32 other interrogatories on the basis of the Directive, including:

**Interrogatory No. 23**
Describe All injuries, including head injuries, that You sustained
during Your Military service, including the date that You sustained
the injuries and the circumstances surrounding those injuries.

**Interrogatory No. 31**
Describe the specific circumstances or situations in which You wore
the green end of the CAEv2, and your understanding of the specific
circumstances in which You were supposed to wear the green end of
the CAEv2.

**Interrogatory No. 32**
Describe the specific circumstances or situations in which You wore
the yellow end of the CAEv2 and your understanding of the specific
circumstances in which You were supposed to wear the yellow end of
the CAEv2.

*See id.*

The Bellwether Plaintiffs also objected to an interrogatory seeking information that should have been disclosed without request pursuant to Rule 26(a)(1)(A)(iii).

> **Interrogatory No. 52**
> Identify All damages, losses, or expenses of Any nature whatsoever by category and the amount that You are claiming as a result of Your use of the CAEv2, including All events Described in the Master Long Form Complaint and Your Master Short Form Complaint.

*See id.* In a similar vein, the Bellwether Plaintiffs responses and objections to various interrogatories seeking the identification of potential witnesses, including Interrogatories 5 and 6, do not comply with Rule 26(a)(1)(A)(i).

Defendants raised the issues of the Directive and initial disclosures during meet and confer sessions with Plaintiffs on May 21 and 22. Defendants explained their position that the Directive cannot apply to former members of the military and that the scope of the Directive is sufficiently narrow to allow current members of the military to respond to Defendants' interrogatories. Plaintiffs indicated that they remain unmoved in their position, and the parties have reached an impasse. Defendants further explained that the Bellwether Plaintiffs' interrogatory responses have not fulfilled Plaintiffs' initial disclosure obligation under Rule 26, including but not limited because of the Bellwether Plaintiffs' objections citing the Directive.

## III.   LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer . . . if . . . a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B). The objecting party has the burden of substantiating its objections. *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005).

## IV.   DEPARTMENT OF DEFENSE DIRECTIVE 5405.2 CANNOT APPLY TO FORMER EMPLOYEES

The Court should overrule the Bellwether Plaintiffs' objections to Defendants' interrogatories, insofar as the objections are based on the Directive, because the Directive cannot apply to former DoD employees. If the Directive purports to bar former employees from responding to interrogatories like those propounded by Defendants, the DoD has exceeded its statutory authority under 5 U.S.C. § 301. When analyzing an agency's interpretation of a statute under *Chevron*'s "two-step framework," a court first "ask[s] whether, after applying the 'traditional tools of statutory construction,' [it] can determine whether Congress has spoken clearly on the issue." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1190 (11th Cir. 2019) (internal citations omitted); *see also Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349, 1355 (N.D. Fla. 2013) (applying *Chevron* when analyzing the validity of a regulation promulgated pursuant to 5 U.S.C. § 301). "If the statute is unambiguous, [courts] apply it according to its terms and give no deference to the administrative interpretation." *Regions Bank*, 936 F.3d at 1190. "Second, if the

9

statute is silent or ambiguous with respect to the specific issue presented, [the court] must then determine whether the agency's interpretation is reasonable or based on a permissible construction of the statute." *Id.* (quotation marks omitted). "An interpretation is reasonable if it is rational and consistent with the statute." *Id.* (quotation marks omitted).

### A.   The enabling statute does not permit the DoD to limit former employees

The Directive was enabled by the federal housekeeping statute—5 U.S.C. § 301.  Section 301 does not empower the DoD to prevent former employees from responding to otherwise-proper interrogatories. Rather, Section 301 states:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301.  Every court that has considered, in a reasoned opinion, the meaning of "employees" in section 301 has found that the federal housekeeping statute only applies to current—not former—employees. *Sherwood v. BNSF Ry. Co.*, No. 2:16-CV-00008-BLW, 2019 WL 943548, at *2 (D. Idaho Feb. 25, 2019) (finding a regulation promulgated pursuant to section 301 to be "invalid to the extent [that the regulation] purport[ed] to apply to former employees"); *Koopmann v. U.S. Dep't of Transp.*, 335 F. Supp. 3d 556, 558 (S.D.N.Y. 2018) ("*Touhy* regulations are unlawful

to the extent that they apply to former employees."); *La. Dep't of Transp. & Dev. v. U.S. Dep't of Transp.*, No. CV 15-2638, 2015 WL 7313876, at *8 (W.D. La. Nov. 20, 2015) (same); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 917 (E.D. Pa. 1979) (same).

Notwithstanding the plain language of Section 301, and the numerous cases interpreting Section 301 as limited to current employees, the Directive defines "DoD Personnel" to include "present and former U.S. military personnel" and broadly limits current *and* former employees' ability to participate in litigation. Exhibit C at 3. The Directive states that "DoD personnel [including *former* employees] shall not in response to a litigation request or demand, produce, disclose, release, comment upon, or testify concerning any official DoD information without the prior written approval of the appropriate DoD official." *Id.* at 5. This Court should follow the numerous other courts that have rejected such a broad interpretation of Section 301, and order Plaintiffs to respond to Defendants' interrogatories and provide initial disclosures.

> **1.      The Housekeeping Statute (Section 301) unambiguously limits the scope of promulgated regulations to current employees only**

"In applying the traditional tools of statutory construction, we begin with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."

*Regions Bank*, 936 F.3d at 1190 (quotation marks omitted). As another judge of this Court previously determined, "[t]he term 'employee,' utilized in [section 301], is one of common understanding, and is not ambiguous."[3] *Forgione*, 954 F. Supp. 2d at 1358; *see also Sherwood*, 2019 WL 943548, at *3 (same); *La. Dep't of Transp.*, 2015 WL 7313876, at *7 (same). The definition of the term "employee" makes clear that an employee is a person ***currently working*** for an employer. *Employee*, Black's Law Dictionary (11th ed. 2019) ("Someone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance.").

Accordingly, those courts that have confronted the issue raised by the Bellwether Plaintiffs' objections have found that "the statutory term 'employee' unambiguously covers only current employees—not current and former employees." *Sherwood*, 2019 WL 943548, at *3 (citing *Koopmann*, 335 F. Supp. at 560–65); *see also La. Dep't of Transp.*, 2015 WL 7313876, at *7 ("The term 'employees' is not ambiguous, and, thus, USDOT has no authority to extend that definition to the conduct of former employees."); *Gulf Oil Corp.*, 465 F. Supp. at 917 (finding that section 301 "on its face applies only to employees and not former employees of

---

[3] The *Forgione* court did not need to "reach the question of whether section 301 is applicable to former employees." 954 F. Supp. 2d at 1354 n.5. But the *Forgione* court did explain that "nothing in [section 301] suggests that an agency may redefine a word of common understanding, such as 'employee.'" *Id.* at 1358.

12

government agencies and departments"). Because "employee" unambiguously means a person currently employed, the Court should join the other courts that have examined this issue and find that the Directive is invalid as to former employees.

> **2.   Interpreting section 301 to reach former employees would be inconsistent with the structure and purpose of the federal housekeeping statute**

The DoD may only use an interpretation that is "rational and consistent with the statute." *Regions Bank*, 936 F.3d at 1190. As the *Koopmann* court explained, "[t]he more natural reading of 'employees' to mean current employees alone is reinforced by the Housekeeping Statute as a whole." 335 F. Supp. 3d at 561.

First, section 301 states that an agency may regulate its employees' "conduct," but "[n]othing in the statute as a whole suggests that Congress intended for its grant of authority to extend to regulation of the conduct of anyone who was ever employed by the agency without any temporal limitation." *Id.*; *see also Sherwood*, 2019 WL 943548, at *3 (noting that "construing the housekeeping statute to cover former employees would likely raise First Amendment issues"). Therefore, to maintain consistency with the rest of the statute and to avoid "practical—if not constitutional—questions," the Court should limit the application of the Directive to current DoD employees. *Koopmann*, 335 F. Supp. 3d at 565.

Second, "'[t]he antecedents' of today's Housekeeping Statute '[trace] back to the beginning of the Republic, when statutes were enacted to give heads of early

Government departments authority to govern internal departmental affairs.'" *Id.* at 558 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979)). The Supreme Court has explained that section 301 "seems to be simply a grant of authority to the agency to regulate its own affairs." *Id.* at 562 (quoting *Chrysler Corp.*, 441 U.S. at 309). Moreover, Congress has revised section 301 to prevent the housekeeping statute from being used "to withhold information" and instead limiting its application "to provide for the day-to-day office housekeeping in the Government departments." *Id.* (quoting *Chrysler Corp.*, 441 U.S. at 310). Because section 301 was not enacted to impose a far-reaching barrier to former DoD employees' participation in civil litigation, interpreting "employees" to include former employees would be inappropriate under *Chevron*.

## V.   IN LIGHT OF THE ENABLING STATUTE, THE DEPARTMENT OF DEFENSE DIRECTIVE 5405.2 DOES NOT BAR THE BELLWETHER PLAINTIFFS FROM RESPONDING TO DEFENDANTS' INTERROGATORIES

Even if the Directive could apply to former employees (and it cannot), it would apply to "**[a]ll information of any kind**, however stored, that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was **acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the United States Armed Forces.**" *Id.* at 3 (emphasis added). The

Directive's enabling statute, 5 U.S.C. § 301, states that "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public." Here, the Bellwether Plaintiffs seek to use the Directive as a shield to selectively withhold critical discovery in this litigation.

> **1.    The Bellwether Plaintiffs can respond to Defendants' interrogatories because the interrogatories seek information about the Bellwether Plaintiffs' personal experiences and opinions**

In light of the enabling statute, the Directive cannot preclude the Bellwether Plaintiffs from answering interrogatories that seek information based on the Bellwether Plaintiffs' personal experiences and opinions. As the *Sherwood* court pointed out, "construing the housekeeping statute to cover former employees would likely raise First Amendment issues . . . .  A former employee . . . should logically be permitted to testify regarding his personal opinions, so long as he does not purport to announce official [government] policy, reveal privileged information, or otherwise undermine the governmental interests the *Touhy* regulations serve to protect." *Sherwood*, 2019 WL 943548, at *3.

The Bellwether Plaintiffs filed lawsuits based on their claimed experiences with the CAEv2, and many of the interrogatories at issue here seek information about those personal experiences and alleged injuries. *See* Interrogatories 13, 14, 30, 31, 32. In light of the housekeeping statute, the type of weapon a Bellwether Plaintiff operated and noise exposures during military service are not the type of "official

DoD information" that needs permission for disclosure. *See* Interrogatories 35, 36. Indeed, the Bellwether Plaintiffs have already provided similar information in the Initial Census Form without raising the Directive as a barrier to an answer. *See* Dkt. 775, Exhibit A. For example, Interrogatory Number 26 (excerpted above) asks about locations of and duties during any deployments. Such information overlaps with the second question in the Initial Census Form, which inquired into the claimant's duty stations and military occupational specialties between 2000 and the present. *See* Dkt. Dkt. 775, Exhibit A at 1–2. The same is true for Interrogatory Number 30 (also listed above), which asks about CAEv2 use and noise exposures, and Initial Census question 4, in which claimants identified "the year(s), duty station(s), and military occupational specialties in which the claimant used the CAEv2 earplugs." *See id.* at 3.  Plaintiffs have no principled reason for providing the information purportedly covered by Department of Defense Directive 5405.2 in one place, but withholding it in another, and their decision to do so only highlights the ad hoc and strategic nature of their recent interrogatory objections.

## 2. The Bellwether Plaintiffs' invocation of the Directive is inconsistent.

Defendants' understanding from the parties' May 21, 2020, meet and confer is that the Plaintiffs sought guidance from the DoD in responding to the interrogatories, and the DoD pointed them to the Directive without a formal authorization or prohibition on answering certain interrogatories. As such, the

Bellwether Plaintiffs' objections are a result of their own interpretation of the Directive. In addition to the twelve interrogatories detailed above that consistently encountered the Directive objection, the fact that some Bellwether Plaintiffs also objected to additional interrogatories based on the Directive, seemingly at random, illustrates a discrepancy even among Plaintiffs in their understanding of what information the Directive is designed to protect, and whether any particular information was "acquired by DoD personnel as part of their official duties." *See, e.g.*, Exhibit D (Plaintiff Sigifredo Garcia Supplemental Objections & Answers to Defendant 3M's First Set of Interrogatories to Plaintiff, invoking the Directive for Int. Nos. 23, 25, 27, 29, 31, 32, 33, 39, and 54 in addition to those listed above).

A closer look at a few of the additional thirty-two interrogatories highlights just how far removed the Bellwether Plaintiffs are from the Directive and housekeeping statute's permissible reach. Interrogatory Number 23 states: "Describe All injuries, including head injuries, that You sustained during Your Military service, including the date that You sustained the injuries And the circumstances surrounding those injuries." One Bellwether Plaintiff objected and stated that he would only "answer as permitted and guided by the Government, whether at deposition or prior thereto." Exhibit A at 45. Twenty-one other Bellwether Plaintiffs declined to raise the Directive in response to Interrogatory 23. Considering the limitations imposed by the federal housekeeping statute, injuries sustained during

military service cannot be information that requires DoD consent before disclosure; it is difficult to imagine the DoD's legitimate interest in a Bellwether Plaintiffs' discussion of his or her medical history. The same absurdity would result if the Directive blocked an answer to Interrogatory Number 25, which asks the Bellwether Plaintiffs to "Identify Any awards, medals, honors, Or commendations that You have received in connection with Your military service, including the dates You received those awards." These objections are unwarranted and contradict 5 U.S.C. § 301.

> ### 3.      Adopting the Bellwether Plaintiffs' proposed interpretation of the Directive will severely impede the progress of this litigation.

As a practical matter, if (notwithstanding the plain language of the federal housekeeping statute) the Directive (1) could apply to both current and former military members and (2) protected all the information the Bellwether Plaintiffs suggest, the implications on this litigation would be vast. If the government needs to attend every deposition going forward and be intimately involved in every discovery response, the current timeline for the bellwether cases will be impractical. Because the Directive's definition of "litigation" encompasses "responses to discovery requests, depositions, and *other pretrial proceedings*, as well as responses to formal *or informal requests by attorneys* or others in situations involving litigation," and because the Directive, if it applied, covers not only testimony of DoD personnel, but

also "*interview[s]*" of and "*contact*" with DoD personnel, a Bellwether Plaintiff's counsel's communication with his or her own clients would run afoul of the Directive.

For that reason, it is impossible to credit Plaintiffs' position that the Directive prevents them from disclosing basic information such as whether and how they used the CAEv2, and the nature of their alleged damages. *Indeed, they have undoubtedly disclosed that exact information to their own lawyers, in violation of the Directive as they now interpret it*. Defendants would be severely prejudiced by an interpretation of Section 301 and the Directive that allowed Plaintiffs to share critical information regarding their claims with their own lawyers, but withhold that information from Defendants during discovery. Such a result is neither contemplated nor warranted under the housekeeping statute.

## VI.   THE BELLWETHER PLAINTIFFS CANNOT RELY ON THE DIRECTIVE OR THEIR OTHER OBJECTIONS TO AVOID MAKING INITIAL DISCLOSURES

Plaintiffs have asserted that they need not provide initial disclosures because their interrogatory responses will provide the information required by Rule 26(a)(1)(A). *See* Exhibit E at 2 (April 14 Letter re Plaintiffs' Objections). Contrary to their assertions, the Bellwether Plaintiffs' interrogatory responses do not fully satisfy their initial disclosure obligations under Federal Rule of Civil Procedure 26.

For example, Rule 26(a)(1)(a)(iii) requires the Bellwether Plaintiffs to provide "a computation of each category of damages claimed . . . —[and] . . . also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). The Master Complaint, which the Bellwether Plaintiffs have adopted, alleges various categories of damages. *See* Dkt. 704 at 89. But the Bellwether Plaintiffs have neither indicated which categories of damages each Bellwether Plaintiff seeks nor provided a computation of the amount sought in each category.

Defendants' Interrogatory No. 52 asked the Bellwether Plaintiffs to "Identify All damages, losses, or expenses of Any nature whatsoever by category and the amount that You are claiming as a result of Your use of the CAEv2, including All events Described in the Master Long Form Complaint and Your Master Short Form Complaint." No Bellwether Plaintiff identifies the categories of damages sought, let alone a computation of each such category of damages and the documents or evidentiary material on which those computations are based. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *McKenney's, Inc. v. Shumate Mech., LLC*, No. 1:07-CV-1727-BBM, 2008 WL 11336219, at *2 (N.D. Ga. June 6, 2008) ("The computation requirement of Rule 26 contemplates not just a list of various theories of recovery,

but an actual dollar amount associated with each specific claim."). Instead, the Bellwether Plaintiffs raise a series of objections.

Every Bellwether Plaintiff objects that Interrogatory No. 52 "prematurely seeks full calculation of damages, which may be the subject of forthcoming proofs." "A party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). Nor is it an "answer for [the Bellwether Plaintiffs] to assert that they will need discovery or to consult with an expert to determine their losses." *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (quoting *King v. E.F. Hutton & Co. Inc.*, 117 F.R.D. 2, 5, (D.D.C. 1987)); *see also Arrowpac Inc. v. Sea Star Line, LLC*, No. 3:12-CV-1180-J-32JBT, 2014 WL 12618688, at *1 (M.D. Fla. Aug. 22, 2014) (same). "The fact that [the Bellwether Plaintiffs] may later supplement [their] interrogatory answers with an expert report does not permit it to refuse to respond with whatever discoverable information it now holds." *Essex Builders*, 230 F.R.D. at 685; *see also Bortolotti v. Gracepoint*, No. 8:19-CV-1072-T-24AAS, 2019 WL 6173173, at *9 (M.D. Fla. Nov. 20, 2019) ("Plaintiffs should be able to make a good faith estimate of damages and methods of calculations based on the information available at this stage of the litigation, while reserving the right to amend their calculations.").

"If the [Bellwether Plaintiffs currently] lack[] necessary information to make a full, fair and specific answer to [the] interrogatory, [they] should so state under

oath and should set forth in detail the efforts made to obtain the information." *Essex Builders*, 230 F.R.D. at 685. At the very least, each Bellwether Plaintiff should be able to identify which of the various categories of damages alleged in the Master Complaint he or she claims.

Various Bellwether Plaintiffs also object that Interrogatory No. 52 seeks "irrelevant" and "immaterial" information, lacks "reasonable limitations as to time or scope," and uses undefined terms like "damages" and "category." These objections are not valid. The categories and amounts of damages sought by each Bellwether Plaintiff are plainly relevant and material to these cases; the Bellwether Plaintiffs bear the burden of proving each at trial. Interrogatory No. 52 is substantively and temporally limited by each Bellwether Plaintiff's own allegations and the damages he or she seeks. The Bellwether Plaintiffs should have no trouble understanding Defendants' use of terms like "damages" and "category," as those terms appear in Rule 26 and are used in a commonly understood manner. *Polycarpe v. Seterus, Inc.*, No. 6: 16-CV-1606-ORL-37TBS, 2017 WL 2257571, at *3 (M.D. Fla. May 23, 2017). Various Bellwether Plaintiffs also object that Interrogatory No. 52 is "cumulative" and "duplicative" of their Census Forms, Bellwether Selection Sheets, Master Long Form Complaint, and Short Form Complaints. None of those documents contain information compliant with Rule 26(a)(1)(A)(iii).

Some, but not all of the Bellwether Plaintiffs, object to providing a computation of "intangible damages" in response to Interrogatory No. 52. Courts regularly require plaintiffs to disclose and calculate non-economic damages. *See, e.g., Dixon v. Bankhead*, No. 4:00CV344-WS, 2000 WL 33175440, at *1 (N.D. Fla. Dec. 20, 2000) (requiring a plaintiff to disclose a computation of the damages he sought for "intangible emotional harm"); *Johnson v. R.J. Reynolds Tobacco Co.*, No. 2:12-CV-618-FTM-29, 2013 WL 1899737, at *1 (M.D. Fla. May 7, 2013) (noting that the court "generally required disclosure of Rule 26 information for non-economic compensatory and punitive damages"); *McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 11399624, at *8 (S.D. Fla. Jan. 8, 2008) ("[N]on-economic compensatory and punitive damages are not exempt from [Rule 26's] disclosure requirement and should be estimated in good faith.").

Those courts that allow plaintiffs to disclose, but not compute, emotional distress damages, do so "based on [the p]laintiff's stipulation to leave the non-economic damages determination to the jury in toto." *De Varona v. Disc. Auto Parts, LLC*, No. 12-20714-CIV, 2012 WL 2334703, at *2 (S.D. Fla. June 19, 2012). Absent computation of non-economic damages, a "[p]laintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial." *Id., see also Nagele v. Delta Air Lines, Inc.*, No. 17-22559-CIV, 2017 WL 6398337, at *2 (S.D. Fla. Dec. 13, 2017) (same); *Avrett v. Festival Fun Parks*, LLC,

No. 15-80526-CIV, 2016 WL 193805, at *3 (S.D. Fla. Jan. 15, 2016) (finding that, "because [the plaintiff] ha[d] not disclosed a computation for intangible damages, [the plaintiff was] precluded from suggesting any specific amount of intangible damages to the jury"). The Bellwether Plaintiffs must compute the non-economic damages they seek because no Bellwether Plaintiffs' answer to Interrogatory No. 52 stipulates that he or she will not "suggest[] any amount of non-economic damages to the jury at any point or manner during the trial." *De Varona*, 2012 WL 2334703, at *2.

Finally, as discussed previously, every Bellwether Plaintiff raised the Directive when objecting to Interrogatories 5 and 6. These Interrogatories ask the Bellwether Plaintiffs to "Identify All Persons who served with You in the military that were present when You fired weapons in training or combat" and "Identify All Persons who have knowledge of whether or not You wore a Hearing Protection Device when exposed to loud noises in the military, including loud noises from weapons fire and transport vehicles." *See* Exhibit A. Aside from the fact that the Directive does not prevent the Bellwether Plaintiffs from answering, the Bellwether Plaintiffs are obligated to disclose this very information to fulfill their initial disclosure obligations. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that

information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment").

## VII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (1) overrule the Bellwether Plaintiffs' objections to Defendants' interrogatories to the extent that those objections are based on Department of Defense Directive 5405.2 and (2) order the Bellwether Plaintiffs to supplement their interrogatory responses by Friday, June 5, 2020 to comply with their Rule 26 initial disclosure obligations.

Dated:  May 28, 2020                    Respectfully submitted,

                                        */s/Robert C. Brock*
                                        Robert C. "Mike" Brock
                                        KIRKLAND & ELLIS LLP
                                        1301 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 389-5991
                                        Email: mike.brock@kirkland.com

                                        Mark J. Nomellini
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle
                                        Chicago, Illinois 60654
                                        Telephone: (312) 862-3254
                                        Email: mark.nomellini@kirkland.com

                                        *Counsel for Defendants 3M Company,*
                                        *3M Occupational Safety LLC, Aearo*
                                        *Technologies LLC, Aearo Holding, LLC,*
                                        *Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that on May 21, 2020 and May 22, 2020, counsel for Defendants met and conferred with Plaintiffs' counsel to address the Bellwether Plaintiffs' objections to Defendants' interrogatories.  The Parties did not resolve Plaintiffs' objections to Defendants' interrogatories.

*/s/Robert C. Brock*
Robert C. "Mike" Brock

26

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 5,809 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

*/s/Robert C. Brock*
Robert C. "Mike" Brock

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.


*/s/Robert C. Brock*
Robert C. "Mike" Brock