**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

On June 10, 2020, the Court conducted a telephone hearing at the

request of the parties to address three unresolved discovery disputes in

this multidistrict litigation.  For the reasons discussed on the record at the

telephonic hearing and as summarized below, the parties' discovery

disputes are resolved as follows.

### I. ADDITIONAL CUSTODIANS

By way of background, since this litigation began last year

Defendants have collected, reviewed, and produced more than 50 custodial

files to the TAR corpus and, notably, produced 330,000 documents in

discovery.   Plaintiffs now request to add six additional custodians: (1)

Steve Todor; (2) John Clingman; (3) John Jurney; (4) Selina Ramirez; (5)

Rafael Martinez; (6) Mike Edwards.  Defendants resist designating

additional custodians on the bases that Plaintiffs' requests are untimely

and, alternatively, that production of these custodial files will not yield relevant discovery.

The Court construes this dispute as a motion to compel the production of discovery.  Plaintiffs, as the requesting party, must demonstrate each custodian would provide "unique relevant information not already obtained."[1]  The Court weighs this showing against the obvious burden on Defendants to collect, review, and produce a new custodial file to the TAR corpus, which Defendants describe as an onerous process taking several weeks to complete.[2]  Upon careful consideration, Plaintiffs' motion is due to be **GRANTED IN PART and DENIED IN PART**.

## A.  Aearo Operations Division

Plaintiffs' first request pertains to Mr. Todor, Mr. Clingman, and Mr. Jurney, all of whom were employed in Defendant Aearo's Operations Division.  The Court will address each individual in turn.

---

[1] *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013); *see also Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 198 (D.D.C. 2019) (applying the "unique relevant information" standard for designating additional custodians); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practice and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) (describing the "general principles" pertinent to a party's request to compel designation of disputed individuals as ESI custodians).

[2] *Willcox v. Lloyds TSB Bank, PLC*, No. 13-508-ACK-RLP, 2015 WL 13811490, at *6 (D. Haw. June 15, 2015) (weighing "the benefit of the information and documents" from a custodian against "the burden on [the responding party] for collecting, reviewing, and producing the documents").

Mr. Todor was the Quality Assurance Manager of Aearo Operations between 1996 and 2008, during which time Defendants developed the CAEv2, the dual-ended Combat Arms earplugs that are the subject of this litigation.  Plaintiffs say that other discovery shows Mr. Todor was involved with testing of and quality assurance for the CAEv2 and, in 2000, signed off on a standard operating procedure for the CAEv2.  Moreover, Mr. Todor approved specification sheets for the component parts of the filter in the CAEv2.  Defendants argue that Mr. Todor's custodial file would be duplicative of three previously designated custodians, and Defendants have already collected and added to the TAR corpus more than 9,000 emails and attachments sent from or to Mr. Todor.

Mr. Clingman was the Production Manager of Aearo Operations during the development of the CAEv2.  He originated the standard operating procedure for auditory assembly of the CAEv2.  Defendants, again, argue that Mr. Clingman's custodial file would be duplicative of five previously designated custodians, and Defendants have collected and added to the TAR corpus more than 24,000 emails and attachments sent from or to Mr. Clingman.

Mr. Jurney was a manufacturing engineer for Aearo Operations between 1995 and 2000.  Mr. Jurney developed one of two standard

operating procedures regarding assembly of the CAEv2, and Plaintiffs claim that his role was distinct from other previously designated custodians (Brian Myers, Dick Knauer, and Bob Klun) because those individuals did not work in the Operations Division.  Defendants state that Mr. Jurney did not hold a unique role with Defendants during his employment and cite, as an example, a document referring to Mr. Jurney as a "Team Member" under the management of another custodian, Mr. Myers.

The Court concludes, on balance, that the custodial files for Mr. Todor and Mr. Clingman should be produced.  Plaintiffs have demonstrated that these files will likely yield unique and relevant information not already obtained.  Mr. Todor was a quality assurance manager with Defendants for a significant period of time, which includes development of the CAEv2. Similarly, Mr. Clingman was a production manager, and it is undisputed that he originated standard operating procedures for the assembly of the CAEv2.  Plaintiffs' showing significantly outweighs the burden on Defendants to collect and produce these custodial files, particularly as to Mr. Clingman because the prior production of more than 20,000 emails with his name "mentioned" will likely not change the TAR corpus because these emails will be deduplicated before the TAR tool is run with any other additional documents obtained from his custodial file.

4

Plaintiffs, however, have failed to show that the production of Mr. Jurney's custodial file will result in any unique discovery.  Mr. Jurney was only a team member along with other designated custodians.  The likelihood that his custodial file will include any relevant discovery not already obtained is slight in comparison to the burden on Defendants of collecting the data, adding it to the TAR corpus, and completing any necessary linear review.

Therefore, Plaintiffs' motion to compel is due to be granted to the extent Defendants must collect, review, and produce responsive documents in the custodial files for Mr. Todor and Mr. Clingman.  Plaintiffs' motion is denied as to Mr. Jurney.

### B.  Aearo Technologies de Mexico

Plaintiffs next request that Defendants collect data from the files of two employees of Defendant Aearo's subsidiary in Mexico (Aearo Technologies de Mexico or "ATM)—Ms. Ramirez and Mr. Martinez.  Ms. Ramirez was a customer service manager at ATM from 2004 to 2013, and she was responsible for transmitting CAEv2 testing information from ATM to Defendants.  Unlike any previously designated custodian, Ms. Ramirez worked in Mexico and was able to observe the assembly, testing, and packaging of the CAEv2 during her employment.  Plaintiffs say this is

relevant to their design defect claims, namely the issue of whether there were post-production design and manufacturing issues, which impacted compliance with specifications and in turn testing.  Mr. Martinez was employed in ATM's Quality Department.  Plaintiffs assert that prior discovery in this litigation demonstrates Mr. Martinez was "knowledgeable" about the earplug production process and that he may have possessed information relevant to post-production design and manufacturing issues with the CAEv2.

Defendants argue that Ms. Ramirez is duplicative of two designated custodians and that more than 2,800 emails and attachments sent to or from Ms. Ramirez have been added to the TAR corpus.  Further, Defendants challenge Plaintiffs' assertion that Mr. Martinez held a role relevant to their claims as to the CAEv2.  Defendants explain that the burden of production here is more arduous than obtaining custodial files in the United States because they will need to investigate whether ATM, as a separate subsidiary, possesses the relevant custodial files and, if so, how to obtain the data for production.

As an initial matter, the Court concludes that the production of custodial files from ATM is appropriate and necessary in view of Plaintiffs' design defect claims, ECF No. 704 at 47, and the fact that at least part of

the assembly of the CAEv2 took place at ATM.  Turning to Plaintiffs'

requested custodians, the Court finds that Plaintiffs have demonstrated Ms.

Ramirez's custodial file will yield unique and relevant information.  Ms.

Ramirez had some involvement with the assembly of the CAEv2 at ATM,

she had contact with Defendants regarding this product, and she was

employed during the relevant time period.  Plaintiffs have failed to show

that Mr. Martinez had a unique role at ATM or was involved in the assembly

of the CAEv2. Lastly, there have been no other custodial files of ATM

employees collected and produced so far in this case.

The Court appreciates the burden on Defendants to produce Ms.

Ramirez's custodial file from a subsidiary in Mexico, but Plaintiffs' showing

as to Ms. Ramirez—and as to the relevance of ATM generally—outweighs

this burden.  Therefore, Plaintiffs' motion to compel is due to be granted to

the extent Defendants must collect, review, and produce responsive

documents in Ms. Ramirez's custodial file.  Plaintiffs' motion is denied as to

Mr. Martinez.

### C.  Mike Edwards

Finally, Plaintiffs request the Court direct Defendants to collect,

review, and produce the custodial file of Defendants' former employee Mike

Edwards.  Mr. Edwards was a District Sales Manager in the Military Sales

Group from 2005 to 2007.  Of interest to Plaintiffs, Mr. Edwards was a "key player" in Defendants' "Operation Cobra," which Plaintiffs describe as a marketing strategy to "carpet bomb" the military with key products including the CAEv2.

Defendants argue that Mr. Edwards' custodial file would be duplicative of four previously identified custodians (Frank Gavin, Michael Harrison, Tom Thomson, and Ronda Notter).  Plaintiffs, however, point out that no custodial files for Mr. Gavin, Mr. Harrison, and Mr. Thomson were ultimately produced because Defendants could not locate the files. And as to Ms. Notter Plaintiffs highlight that she was not involved in Operation Cobra.

In view of Mr. Edwards' involvement in the marketing of the CAEv2 through Operation Cobra and the fact that other custodians have not produced relevant documents on this marketing strategy, the Court concludes that Plaintiffs have made a sufficient showing that production of Mr. Edwards' custodial file will yield unique and relevant information not otherwise obtained. This showing outweighs any burden on Defendants to collect, review, and produce this custodial file.  Therefore, Plaintiffs' motion to compel is due to be granted to the extent Defendants must collect, review, and produce responsive documents in Mr. Edwards' custodial file.

## II.  PLAINTIFFS' PRIVILEGE LOGS

The parties also addressed with the Court a dispute as to the extent of the information in the Bellwether Plaintiffs' forthcoming privilege logs.  In short, Defendants' concern stems from the Court's prior rulings that the Bellwether Plaintiffs have not placed their mental health "in controversy" so as to require the production of mental health records in discovery.  *See* ECF Nos. 1108, 1154.  Defendants request the Court to direct Plaintiffs to include in their privilege logs sufficient information for them to evaluate the Bellwether Plaintiffs' claims of doctor-patient or psychotherapist-patient privilege as to the mental health records, including the type of provider and the location of treatment.

Because the Bellwether Plaintiffs have not placed their mental health in controversy *at this juncture*, the Court will not require them to provide the information requested by Defendants.  That is, the mental health records are not otherwise discoverable so as to require the Bellwether Plaintiffs to include specific information pertaining to the assertion of a doctor-patient or psychotherapist-patient privilege.[3]

---

[3] *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information *otherwise discoverable* by claiming that the information is privilege or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—

That being said, the Bellwether Plaintiffs' privilege logs need to detail the nature of the documents being withheld (or the information being redacted) in the event those documents eventually become relevant.  The Court, therefore, directs the Bellwether Plaintiffs to include the following information in their privilege logs as to each withheld document or redaction: (1) the date; (2) the identifying Bates number(s); (3) the author or creator; (4) whether the document or information was copied or distributed to a third party (if that information is readily available on the face of the document); (5) a brief description of the document or redaction (such as, "progress notes"); and (6) the reason for withholding or redaction.  This information will be sufficient for the parties to confer on the legitimacy of the Bellwether Plaintiffs' privilege claims or, in appropriate circumstances, the relevance of the documents or information being withheld.

## III.  BELLWETHER PLAINTIFFS' ESI PROTOCOL

Lastly, the Court addressed a dispute between the parties over whether the Bellwether Plaintiffs must utilize particular search terms when reviewing potentially relevant electronically stored information ("ESI") for production to Defendants.  The Court's rulings regarding the search terms

---

and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." (emphasis added)).

are included in a separate order, Pretrial Order No. 42 (the "Order

Governing Bellwether Plaintiffs' Obligation to Review and Produce

Electronically Stored Information").

**DONE AND ORDERED** this 11th day of June 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge