# Exhibit C

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Mark Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

December 2, 2019

**Via Email**

Michael Fucci
Major Collin Evans
Collin.p.evans2.mil@mail.mil
703-693-0352

Re:     Supplemental Touhy Request For Interviews and Depositions Relating to
*In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-
02885-MCR-GRJ (N.D. Fla.).

Dear Major Evans and Mr. Fucci:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a multidistrict litigation pending before the Northern District of Florida, this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy*[1] request to the United States Department of Defense ("DoD"), Defense Logistics Agency ("DLA"), Army, Navy, Marine Corps, Air Force, and Coast Guard to interview and depose certain individuals who are current or former representatives and/or employees of the DoD, DLA, Army, Navy, Marine Corps, Air Force, and/or Coast Guard who were involved in the design, conception, development, testing, distribution, and the provision of Combat Arms Earplugs Version 2 ("CAEv2") from Defendants to the U.S. Military and service members and/or certain relevant aspects of the military's hearing conservation programs.  Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97; 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy Instruction 5820.8A; Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

## I.     Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people and produces more than

---

[1]     *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Beijing  Boston  Dallas  Hong Kong  Houston  London  Los Angeles  Munich  New York  Palo Alto  San Francisco  Shanghai  Washington, D.C.

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 2

60,000 products world-wide.  Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few.  In addition to its consumer-side business, 3M also had a long-standing relationship with federal and state governments for well over fifty years and provides thousands of products designed to protect American troops and support their missions.  In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana.  The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation. Combat Arms Earplugs represented a significant advance in hearing protection in that they were one of the first hearing protection devices to offer protection from high-level impulse noises, like gun-fire, while still allowing the user to hear lower level sounds, like speech, with limited interruption.  Hearing loss is a common injury among military veterans.  The U.S. military has provided hearing protection and preservation services to soldiers for decades.  In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure to plaintiffs while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine.  Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.  CAEv2 consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center.  The green end works like a conventional passive earplug, providing steady and continuous protection from ambient noise.  In contrast, the yellow end allows sound to travel into the opening at the center of the earplug and through a sound channel and the patented filter before entering the ear.  The filter allows lower-level sounds, such as speech, to pass through while reducing higher-level impulse noises, like gun-fire.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel.  These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2.  To date, thousands of actions have been filed on behalf of current or former military personnel.  These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment.  Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 3

settings, and assert claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud.  On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order transferring the consolidated cases and any tag-along actions to the Northern District of Florida.

## II.      Summary of the Interviews And Depositions Requested[2]

Defendants request interviews and depositions with the individuals listed below. Defendants request the interviews to occur prior to the depositions, and believe that such interviews will make the deposition process more efficient, including by (i) identifying the location of relevant documents and data in advance of the deposition, which will help avoid the need for additional depositions after a witnesses identifies relevant materials for the first time during a deposition; and (ii) minimizing unnecessary depositions through pre-deposition identification of any witnesses with minor roles or immaterial knowledge, which may reduce the time and expense of organizing a formal depositions for those witnesses.

Case Management Order No. 6 in MDL No. 2885 (Dkt. 6) states:  "With the assistance of Judge Herndon, the parties must review Defendants' supplemental DOD *Touhy* request dated July 26, 2019, as well as each side's DOD *Touhy* requests for interviews and/or depositions, and segregate the requests that are relevant to Defendants' affirmative defenses from those which are not relevant to the defenses. By December 13, 2019, the parties must submit the two lists to Major Evans and Major Kim, along with a request that the Government defer action on the *Touhy* requests that are not relevant to the affirmative defenses until after it responds to the *Touhy* requests for documents, interviews, and depositions that are relevant to the defenses."  Pursuant to the Court's Order, this supplemental *Touhy* requests contains two categories of interview and deposition requests: (i) requests which should be prioritized in connection with defendants' affirmative defenses; and (ii) requests which should be de-prioritized.[3]

---

[2]     Per recent guidance provided to Defendants by Major Evans, this *Touhy* request omits government witnesses who are or were employed by non-military government agencies.  Such witnesses include, for example, William Murphy (NIOSH) and James Lovejoy (Department of Energy), both of whom conducted testing on the Combat Arms Earplugs for the government.  Per Major Evans' guidance, Defendants are submitting separate *Touhy* requests to the relevant government agency for these witnesses.

[3]     Certain of the requests which should be de-prioritized may have some relevance to Defendants' affirmative defenses.  Nonetheless, Defendants understand that the Court wishes to move expeditiously with respect to government discovery and, accordingly, deprioritizes certain of their requests.

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 4

A. **Priority Witnesses[4]**

The following witnesses should be prioritized over the witnesses in Section B, *infra*.

1. **Theresa Schultz, U.S. Army/Air Force, 1213 Black Oak Ct. Vacaville, CA, 95687**

Theresa Schultz was a military audiologist who participated in the military's solicitation of the Combat Arms Earplug. Among other things, documents produced to date detail Schultz's: (i) attendance at meetings with representatives from the U.S. military, Aearo and ISL to discuss the design and development of the dual-ended Combat Arms Earplug; and (ii) participation in sessions of the DoD Hearing Conservation Working Group at which the Combat Arms Earplugs were proposed and discussed. Defendants wish to interview and depose Ms. Schultz regarding: (i) the military's desire for a non-linear hearing protection device; (ii) the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms Earplug; (iii) analyses or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplug; and (iv) the location of any documents or data regarding those topics.

2. **G. Richard Price, U.S. Army, <u>ahanalysis@comcast.net</u>**

G. Richard Price was an Army scientist who participated in the military's solicitation of the Combat Arms earplugs. Documents produced to date detail Price's attendance at a December 1997 meeting with representatives from the U.S. military, Aearo and ISL to discuss the design and development of the dual-ended Combat Arms Earplug. Defendants wish to interview and depose Mr. Price regarding: (i) the military's desire for a non-linear hearing protection device; (iii) the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms Earplug; (iv) analyses or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplug; and (v) the location of any documents or data regarding those topics. Additionally, Defendants wish to interview and depose Mr. Price regarding: (i) Price's development of the Auditory Hazard Assessment Algorithm for Humans ("AHAAH Model") model, (ii) how the military's analysis of impulse noise led to the solicitation of non-linear hearing protection devices, like the dual-ended Combat Arms Earplug, (iii) analyses of the Combat Arms Earplug performed using the AHAAH model; and (iv) whether and how military personnel utilize(d) that AHAAH model in determining the efficacy and sufficiency of non-linear hearing protection devices in military settings.

---

[4]   Defendants believe that the following witnesses are deceased: Georges Garinther, Don Ciliax, Robert Bosanko, and Daniel L. Johnson. These witnesses have relevant information and would have been included on this interview and deposition request, and Defendants reserve the right to supplement this request to add one or more of these witnesses should it later be determined that they are not deceased.

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 5

3.      **Marc Stevens, U.S. Army, 541-967-0331**

Marc Stevens was an Army audiologist stationed at Fort Campbell in the early 2000's and was involved with the military's solicitation of the dual-ended Combat Arms Earplugs. Defendants wish to interview and depose Mr. Stevens regarding: (i) the military's design and development of the Combat Arms Earplug; (ii) the military's policies regarding training service members to use the Combat Arms Earplug; (iii) service member usage rates of the Combat Arms Earplug; and (iv) the location of documents or other data related to those topics.

4.      **Col. John Andrew ("Andy") Merkley, U.S. Army, 719-526-6976**

Col. Merkley is an Army audiologist and is the Army Liasion to the Defense Hearing Center of Excellence and Regional Health Command.  Col. Merkley also held Dr. Ohlin's position as Program Manager of the Army Hearing Conservation Group after Dr. Ohlin.  Defendants wish to interview and depose Col. Merkley regarding: (i) the military's desire for and solicitation of non-linear hearing protection devices like the Combat Arms Earplug; (ii) any knowledge Col. Merkley has of the military's design and development of the Combat Arms Earplug; (iii) military testing of the Combat Arms Earplug; (iv) the Combat Arms Earplug's compliance with military specifications; (v) the effectiveness of the Combat Arms Earplug in preventing and mitigating hearing loss in the military; (vi) instructions and training provided to service members for use of the Combat Arms Earplug; and (vii) the location of documents and other data regarding those topics.

5.      **Kathy Gates, U.S. Army, 518-223-0677**

Kathy Gates is a military audiologist.  Documents produced to date detail Gates' involvement: (i) as a member of the DOD Hearing Conservation Working Group, including at meeting(s) discussing the development of the Combat Arms Earplug; and (ii) compiling survey information regarding service member satisfaction with the Combat Arms Earplug.  Defendants wish to interview and depose Ms. Gates regarding: (i) the DoD working group and the discussions that took place within that group regarding the development of the Combat Arms Earplug; (ii) military testing or evaluation of the Combat Arms Earplug; (iii) the role of military audiologists as it pertains to providing fitting instructions and tutorials to service members on the use of Combat Arms Earplugs; (iv) her personal experience as it relates to service member training for and use of Combat Arms Earplug; (v) service member misuse or non-use of Combat Arms Earplugs; (vi) survey information regarding service member satisfaction with Combat Arms Earplugs; and (vii) the location of documents or other data regarding those topics.

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 6

6. **LTC. Lorraine Babeu, U.S. Army, 443-528-0857**

Documents produced to date detail testing on the Combat Arms Earplug performed by LTC. Babeau on behalf of the Army Research Lab at Aberdeen Proving Grounds.  Defendants seek to interview and depose LTC. Babeau regarding: (i) military testing of the Combat Arms Earplugs; (ii) the test protocols employed during LTC. Babeu's testing; (iii) the context surrounding LTC Babeu's testing, including why it was commissioned and what the information was used for; (iv) the Combat Arms Earplug's compliance with military specifications; and (v) the location of documents and data regarding those topics.

7. **Brian Hobbs, U.S. Navy, brian.hobbs@med.navy.mil**

Documents produced to date show Brian Hobbs conducted January 2009 testing on the Combat Arms Earplug on behalf of the Air Force.  Defendants seek to interview and depose Mr. Hobbs regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, what the information was used for, and (iii) the location of documents and other data regarding those topics.

8. **Mary Binseel, Army Research Laboratory, 301-742-6478**

Documents produced to date show that Mary Binseel conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory, and that Ms. Binseel or her colleagues communicated with Aearo regarding this while it was ongoing.  Defendants seek to interview and depose Ms. Binseel regarding: (i) the test protocols employed in the testing, (ii) the results of the study; (iii) Combat Arms Earplug's compliance with military specification; (iv) the context surrounding the study, including why the study was commissioned, who requested it, what the information was used for, (v) communications with Aearo or other entities regarding the study, and (vi) the location of documents and other data regarding those topics.

9. **Nancy Vause, U.S. Army, 240-344-2957**

Nancy Vause is a military audiologist.  Defendants wish to interview and depose Ms. Vause regarding: (i) training and instructions provided to service members for use of the Combat Arms Earplug; (ii) usage rates of Combat Arms Earplugs among service members; (iii) military noise exposures and rates of hearing loss; (iv) misuse of Combat Arms Earplugs by service members; (v) military and service member satisfaction with Combat Arms Earplugs; (vi) any testing or analyses performed on the Combat Arms Earplugs; (vii) labeling requirements for Combat Arms Earplugs shipped to the military; and (viii) the location of any documents or data regarding those topics.

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 7

### 10.     David Chandler, U.S. Army, 703-681-4239

Documents produced to date indicate LTC Chandler was involved in the military's decision to shorten the stem of the Combat Arms Earplugs to fit into the military's preferred carrying case. Defendants seek to interview and depose LTC Chandler regarding: (i) the military's design and development of the Combat Arms Earplug, including the decision to shorten the desired length of the Combat Arms Earplug; and (ii) the location of any documents or data regarding those topics.

### 11.     Dr. Mark Little, U.S. Army

Documents produced to date show that Dr. Little communicated in 2001 with Aearo regarding Combat Arms Earplugs, including product testing and instructions.  Defendants seek to interview and depose Dr. Little regarding: (i) communications with Aearo and other military personnel regarding Combat Arms Earplugs testing and instructions; (ii) testing and analyses of the Combat Arms Earplugs performed by Dr. Little on behalf of the military or other government agencies; and (iii) the location of documents and other data related to those topics.

## B.     De-Prioritized Witnesses

Pursuant to the Court's Case Management Order No. 6, the following witnesses should be de-prioritized as compared to the witnesses in Section A, *supra*.

### 1.     Wayne Loyborg, U.S. Navy, 801-485-0630

Documents produced to date indicate Mr. Loyborg was involved in the military's decision to shorten the stem of the Combat Arms Earplugs to fit into the military's preferred carrying case. Defendants seek to interview and depose Mr. Loyborg regarding: (i) the military's design and development of the Combat Arms Earplug, including the decision to shorten the desired length of the Combat Arms Earplug; and (ii) the location of any documents or data regarding those topics.

### 2.     LTC. Martin Robinette, U.S. Army, 540-639-5497

Documents produced to date detail LTC Robinette's: (i) 1999 correspondence with Dr. Ohlin regarding the military's desire to shorten the stem of the dual-ended Combat Arms Earplug so that it fit into the military's preferred carrying case; and (ii) a 2015 analysis showing how the Combat Arms Earplug has prevented and mitigated negative health effects in Army populations. Defendants wish to interview and depose LTC. Robinette regarding: (i) the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem; (ii) military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs; (iii) instructions and/or training that military audiologists provided to service members

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 8

for the use or fit of the Combat Arms Earplugs; and (iv) the location of documents or other data regarding those topics.

3.     **Belva Hoffman**

Documents produced to date show that Belva Hoffman communicated with Dr. Ohlin regarding obtaining a National Stock Number for Combat Arms Earplugs.  Defendants seek to interview and depose Ms. Hoffman regarding: (i) military requirements prior to obtaining a National Stock Number; (ii) product analysis prior to requesting and obtaining a National Stock Number, including the review of production samples of the Combat Arms Earplug; (iii) requests for product modifications prior to and after obtaining a National Stock Number; (iv) information submitted to obtain a National Stock Number on the Combat Arms Earplug; and (v) the location of documents and data regarding those topics.

4.     **Thomas Sidor, Defense Logistics Agency, thomas.a.sidor@dla.mil**

Thomas Sidor is the Contracting Officer listed on the 2006 military specification for the Combat Arms Earplug.  Defendants wish to interview and depose Mr. Sidor regarding: (i) the origin of the specifications for the Combat Arms Earplug; (ii) the military's collaboration, if any, with Aearo or other contractors in creating the product specifications; (iii) the reason(s) the military sought a product that conformed to the requested specifications; (iv) analyses the military performed to determine if the product conformed to the requested specifications; (v) labeling requirements for Combat Arms Earplugs shipped to the military; and (vi) the location of documents or other data regarding those topics.

5.     **Albert Gatica, Defense Logistics Agency, albert.gatica@dla.mil**

Albert Gatica is listed as the Approving Officer on the 2006 military specification for the Combat Arms Earplug.  Defendants wish to interview and depose Mr. Gatica regarding: (i) the origin of the specifications for the Combat Arms Earplug; (ii) the military's collaboration, if any, with Aearo or other contractors in creating the product specifications; (iii) the reason(s) the military sought a product that conformed to the requested specifications; (iv) analyses the military performed to determine if the product conformed to the requested specifications; (v) labeling requirements for Combat Arms Earplugs shipped to the military; and (vi) the location of documents or other data regarding those topics.

6.     **John King, U.S. Army**

John King is the former scientific advisor to the Army Southern Europe Command. Documents produced to date indicate he requested and received 1,000 Combat Arms Earplugs. Defendants wish to interview and depose Mr. King regarding: (i) military analyses of Combat

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 9

Arms Earplugs, including any testing King performed on the units he received; (ii) military contributions to the design and development of the Combat Arms Earplugs; (iii) military and service member satisfaction with the Combat Arms Earplug; (iv) instructions or training provided to service members for use of Combat Arms Earplugs; and (v) the locations of any documents or data regarding those topics.

7.     **Kristi Casto, U.S. Army, Kristen.casto@us.army.mil**

Kristi Casto is an Army audiologist.  Defendants wish to interview and depose Ms. Casto regarding: (i) training and instructions provided to service members for use of the Combat Arms Earplug; (ii) usage rates of Combat Arms Earplugs among service members; (iii) military noise exposures and rates of hearing loss; (iv) misuse of Combat Arms Earplugs by service members; (v) military and service member satisfaction with Combat Arms Earplugs; (vi) any testing or analyses performed on the Combat Arms Earplugs; (vii) labeling requirements for Combat Arms Earplugs shipped to the military; and (viii) the location of any documents or data regarding those topics.

8.     **Bettye Simmons, U.S. Army, 757-989-3029**

Bettye Simmons was a Brigadier General in the Army.  Documents produced to date indicate that Simmons sent a memorandum justifying the acquisition of Combat Arms Earplug to the Army Chief of Staff.  Defendants wish to interview and depose Ms. Simmons regarding: (i) analyses performed in connection with the memorandum to the Army Chief of Staff; (ii) conversations with Dr. Ohlin regarding the Combat Arms Earplugs, including in connection with drafting and submitting the memorandum; (iii) the decision to send the memorandum to the Army Chief of Staff, and the basis for that decision; and (iv) the location of any documents or data regarding those topics.

9.     **Kara Cave, Army Research Laboratory, 240-620-8069**

Documents produced to date show that Ms. Cave conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory, and that Ms. Cave communicated with Aearo regarding this while it was ongoing.  Defendants seek to interview and depose Ms. Cave regarding: (i) the test protocols employed in the testing, (ii) the results of the study; (iii) the Combat Arms Earplug's compliance with military specification; (iv) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (v) communications with Aearo or other entities regarding the study, and (vi) the location of documents and other data regarding those topics.

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 10

> 10.     **Tomasz Letowksi, Army Research Laboratory,
> tomasz.r.letowski.civ@mail.mil**

Documents produced to date show that Mr. Letowski conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory.  Defendants seek to interview and depose Mr. Letowski regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (iii) communications with Aearo or other entities regarding the study, and (iv) the location of documents and other data regarding those topics.

> 11.     **Maj. Dean Hudson, U.S. Army, hdhudson@gmail.com**

Documents produced to date show that Maj. Dean Hudson conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Maj. Hudson regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

> 12.     **Richard McKinley, Air Force Research Laboratory**

Documents produced to date show that Mr. McKinley conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Mr. McKinley regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

> 13.     **Dr. Douglas Brungart, Walter Reed National Military Medical
> Center, douglas.s.brungart@civ.mail.mil**

Documents produced to date show that Dr. Brungart conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Dr. Brungart regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

> 14.     **Julie Parisi, U.S. Air Force**

Documents produced to date show that Ms. Parisi conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Ms. Parisi regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the

KIRKLAND & ELLIS LLP

December 2, 2019
Page 11

study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

    15.  **James Hamil, Air Force Research Laboratory**

   Documents produced to date show that Mr. Hamil conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Mr. Hamil regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

    16.  **Joel Kalb, U.S. Army, joel.kalb@us.army.mil**

   Documents produced to date show that Mr. Kalb conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory.  Defendants seek to interview and depose Mr. Kalb regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (iii) communications with Aearo or other entities regarding the study, and (iv) the location of documents and other data regarding those topics.  Additionally, Defendants wish to interview Mr. Kalb regarding AHAAH Model's application to CAEv2, and how Army personnel utilize(d) that AHAAH model in determining the efficacy and sufficiency of CAEv2 in military settings.

    17.  **Angelique A. Scharine, Army Research Laboratory, angelique.a.scharine.civ@mail.mil**

   Documents produced to date show that Ms. Scharine conducted January 2014 testing on Combat Arms Earplugs on behalf of the Marine Corps.  Defendants seek to interview and depose Ms. Scharine regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

    18.  **Rachel A. Weatherless , Army Research Laboratory, rachel.a.weatherless.civ.mail.mil**

   Documents produced to date show that Ms. Weatherless conducted January 2014 testing on Combat Arms Earplugs on behalf of the Marine Corps. Defendants seek to interview and depose Ms. Weatherless regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 12

### 19.    **Leanne Cleveland**

Leanne Cleveland is an Army audiologist.  Documents produced to date show that Ms. Cleveland attended a Post Deployment Health Reassessment Survey Session in 2005 and asked soldiers questions regarding CAEv2.  Defendants seek to interview and depose Ms. Cleveland regarding:  (i) questions and answers conduced at the post Deployment Health Reassessment Survey; (ii) Ms. Cleveland's personal experience regarding CAEv2 usage and application within the Army; (iii) Cleveland's personal knowledge and experience regarding service member satisfaction with CAEv2 while worn in training and in combat.

## III.    **Additional Considerations**

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, Coast Guard, and the Department of Homeland Security regarding the provision of information by its employees in connection with litigation in federal court:

1.    Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2.    Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3.    Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4.    Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5.    Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6.    Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 13

> or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

    7.     Disclosure would not violate any person's expectation of confidentiality or privacy.

    8.     The United States is not, and is not reasonably anticipated to be a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## IV.    Administrative Matters

Defendants will bear the costs of producing the witnesses for interviews and depositions sought by this *Touhy* request.  Costs will be paid by check or money order payable to the Treasury of the United States.  To the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the requested interviews and depositions.  Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

Sincerely,

*/s/ Mark J. Nomellini*

Mark J. Nomellini