**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG          )          Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,         )
                                       )          Pensacola, Florida
                                       )          June 12, 2020
                                       )          1:00 p.m.
                                       )
                                       )
_____)


**LEADERSHIP TELECONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE

and

THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE


(Pages 1-30)

## A P P E A R A N C E S

FOR THE PLAINTIFFS:      **BRYAN F. AYLSTOCK, ESQUIRE**
                         **NEIL OVERHOLTZ, ESQUIRE**
                         Aylstock, Witkin, Kreis & Overholtz
                         17 E Main Street, Suite 200
                         Pensacola, Florida  32502

                         **DAVID R. BUCHANAN, ESQUIRE**
                         Seeger Weiss, LLP
                         55 Challenger Road, 6th Floor
                         Ridgefield Park, New Jersey  07660


FOR THE DEFENDANTS:      **ROBERT C. BROCK, ESQUIRE**
                         Kirkland & Ellis, LLP
                         655 15th Street NW
                         Washington, D.C.  20005

                         **MARK J. NOMELLINI, ESQUIRE**
                         **NICHOLAS F. WASDIN, ESQUIRE**
                         **BARRY E. FIELDS, ESQUIRE**
                         Kirkland & Ellis, LLP
                         300 N Lasalle
                         Chicago, Illinois  60654

```
 1                      P R O C E E D I N G S
 2           JUDGE RODGERS:  I think we have everyone.  I
 3   appreciate your agenda, and I'll just start with that.  The
 4   first item on the agenda that was presented relates to the
 5   agreed upon presentation for Monday at the oral argument.  And
 6   I'm fine with that.
 7           Is there anything else I need to hear about?
 8           I'm not sure if it was done, but if not, I'll
 9   communicate to you all now that, in response to Mr. Brock,
10   something you brought up at the CMC regarding questions in
11   advance, we're going to just do it the old-fashioned way.
12           MR. BROCK:  That's fine.  I just -- perfectly
13   acceptable, sure.
14           JUDGE RODGERS:  All right, terrific.
15           Anything else in terms of Monday that you all feel I
16   need to address?
17           MR. AYLSTOCK:  Judge, this is Bryan.  I had had some
18   inquiries about folks maybe wanting to see some of the
19   presentation.  I know cameras in the court are not probably the
20   Court's preference, but there is a way fairly easily without
21   hooking up to the court system at all for people to potentially
22   -- not only listen in but see the slides being presented.  We
23   understand there's going to be some presentations on both
24   sides, and that would just mean opening a Zoom and having
25   through the Wi-Fi just the shared screen there.  So we're
```

1   willing to do that.

2          **JUDGE RODGERS:**  Mr. Aylstock, it's not that -- I don't

3   mean to be difficult, but that would require me to call a

4   judges meeting, and I don't have time to do that before Monday.

5          **MR. AYLSTOCK:**  No problem, Judge.

6          **JUDGE RODGERS:**  I'm afraid we're not there yet, so

7   that request will have to be denied.  Folks can certainly call

8   in, whoever wishes to call in, but they won't be able to

9   observe unless they're in the courtroom.

10          **MR. AYLSTOCK:**  Thank you, Judge.

11          **MS. HUTSON:**  Judge, this is Shelley.  I have gotten a

12   couple of inquiries from people who do intend to be there in

13   person, very few, but there will be a few, and were wondering

14   if there was a requirement for a safety mask to sit in the

15   audience.

16          **JUDGE RODGERS:**  Just a minute, Shelley, one moment and

17   I'll hear you on that.

18          Mr. Aylstock, I don't know, I'm thinking about your

19   question now.  And Judge Jones and Judge Herndon, you're going

20   to be appearing by video, correct, through the Bridge?

21          **JUDGE HERNDON:**  Yes.

22          **JUDGE JONES:**  Probably, yes.

23          **JUDGE RODGERS:**  So, Bryan, let me talk to our IT

24   people and see if there's not a solution to your question.  I

25   don't want to promise anything, but let me check on that.

1         **MR. AYLSTOCK:** Thank you, Judge. I'm sorry for

2    bringing up it up on Friday afternoon. It just occurred to us.

3         **JUDGE RODGERS:** That's fine. We ought to be able, at

4    this day and age, to accommodate that. But I need to check

5    into it and I'll let you know something this afternoon.

6         **MR. BROCK:** May I ask, will Judge Herndon and Judge

7    Jones be able to see the slides that are displayed through the

8    method of access that they will have?

9         **JUDGE RODGERS:** I don't know the answer to that, but I

10    believe so. My belief is yes, but I'll be checking on that as

11    well.

12         **MADAM CLERK SIMMS:** Judge, this is Sue. I'm on the

13    line also.

14         **JUDGE RODGERS:** Oh, good. Everyone, this is my

15    courtroom deputy, Sue Sims.

16         **MADAM CLERK SIMMS:** Shane Shao from our IT staff did

17    say that, if there are any slides shown during that hearing,

18    that they might want to send them in advance to Judge Herndon

19    and Judge Jones.

20         **JUDGE RODGERS:** Okay.

21         **MADAM CLERK SIMMS:** And I just sent Shane a text

22    message, and I haven't heard back. But I know a couple of

23    weeks we ago we did not have Wi-Fi in the courthouse. I'm not

24    sure if we do now or not.

25         **JUDGE RODGERS:** Well, we can use my Mi-Fi, if we have

1   to do that, but I appreciate that.  It's not a bad idea, though

2   --  I'm glad Sue brought this up.  It's not a bad idea if you

3   all have time to get those slides out today.  I didn't know

4   anything about this, but at least email them to Judge Herndon

5   and Judge Jones, just in case.  But in the meantime, I'll be

6   checking on this with our IT people.

7           **MR. FIELDS:**  Judge, I'm sorry.  This is Barry Fields.

8   I've been on for a few minutes.  I apologize for being late.  I

9   was having some telephone problems logging in.

10          **JUDGE RODGERS:**  No problem.  Welcome.

11          Anything else on the question about slides and the

12  courtroom?

13          *[No response.]*

14          Okay.  Shelley, what were you asking?  I'm sorry, I

15  didn't mean to cut you off.

16          **MS. HUTSON:**  I was asked today -- there's a couple of

17  individuals that planned to attend in person and they were

18  wondering if it was required to we're a face mask.  I told them

19  to have them with them, but I didn't know if there was a firm

20  policy at the courthouse right now about it.

21          **JUDGE RODGERS:**  We prefer, when you come through the

22  front doors, that you do wear a face mask.  In the courtroom I

23  have not required it because of the size of my courtroom, but I

24  would ask the people who are present to maintain appropriate

25  distancing.  Again, you haven't seen it, it's a large

1   courtroom.  I don't anticipate we're going to have that many

2   people where we can't distance in terms of seating.

3          **MS. HUTSON:**  Understood.  Thank you, Judge.

4          **JUDGE RODGERS:**  Someone will be checking on that.  But

5   I don't require it in the courtroom, or I haven't.  But I would

6   ask that they have them with them and that they wear them on

7   entering the courthouse and coming up to the courtroom on the

8   fifth floor.

9          **MS. HUTSON:**  Very well.  Thank you.

10          **JUDGE RODGERS:**  And actually, the courthouse front

11   doors have remained locked because we're not allowing just foot

12   traffic into the courthouse right now.  But, of course I've

13   been holding proceedings, my colleagues have in the courtroom,

14   and the courtrooms are open to the public.

15          So the CSOs, the court security officers, will let you

16   in.  But if you come to the front door and it's locked, you

17   should expect that, but they'll open it as soon as they see

18   you.

19          Anything else about Monday?

20          **MR. AYLSTOCK:**  I don't think so, Judge.

21          **MR. BROCK:**  I think it's okay, Judge.  I don't see any

22   complication with this but let me just check to make sure.  We

23   are still fine tuning our presentation materials a little bit.

24   So if we could get to Judge Herndon and Judge Jones the

25   materials that we would anticipate potentially using Monday

1    morning, that would be great.

2              **JUDGE RODGERS:**  I think that's fine.

3              Judge Jones and Judge Herndon, any problem with that?

4              **JUDGE JONES:**  No, I think as long as I have them

5    before lunch.

6              **JUDGE HERNDON:**  Yeah, that's fine.

7              **MR. BROCK:**  Thank you.

8              **JUDGE RODGERS:**  The second item on the agenda is a

9    matter the Plaintiffs' Leadership wishes to discuss related to

10   Lonnie Burgus, a plaintiff who --

11             **MR. AYLSTOCK:**  Yes, Your Honor.  This is Bryan

12   Aylstock.  We put on their eligible for trial group B.  But

13   since then, the random selections have been done, or maybe it

14   was right before that and it didn't get corrected.  In any

15   event, he won't be in trial group B no matter what, because at

16   this point we will be making our Plaintiff selections and

17   Defense selections, and that will round out trial group B, I

18   think.

19             **JUDGE RODGERS:**  Oh, okay, all right.

20             **MR. AYLSTOCK:**  But, in any event, I did want to bring

21   to the Court's attention an issue that arose recently as a

22   result of the DoD production of some DOHRS audiogram data with

23   regard to Mr. Burgus.  And there was a production made on -- I

24   think it was the evening of June 29th.  This audiogram was

25   produced to the Defendants just three days later on the 2nd.

1    So the parties all see it and have it.  It's a 1992 audiogram

2    that does show some rather significant hearing loss.  And so,

3    without revealing attorney/client conversations, we're

4    discussing the issue with Mr. Burgus.  And it's a major issue

5    in the case, Judge, so I wanted to bring it to the court as

6    soon as we kind of ferreted out what the issue may be.

7            So I can -- I don't have anything specific to report

8    other than I wanted to let the Court know this opportunity that

9    there is an issue with the case, and it's obviously a court

10   alternate.  We wouldn't oppose picking another one or whatever

11   if this one didn't continue, but that's a possibility.

12           **JUDGE RODGERS:**  Okay.  Anybody have anything else?

13           **MR. NOMELLINI:**  Your Honor, it's Mark Nomellini.  So

14   I'm happy to be corrected, but my understanding is that the

15   trial group B alternate has not yet been selected, per Roma's

16   email on June 10th at 8:59.

17           My understanding was that there were three potential

18   candidates for the trial group B alternate pick, and Burgus was

19   one of them.  We can sort that out, but I just wanted to say

20   that that's my understanding, that he's still in the mix as a

21   potential trial group B.

22           **JUDGE RODGERS:**  Okay.  Well, let me look.  I'm looking

23   at Roma's email.  One second.

24           So this is an email from Roma to you all.  Did you

25   say, Mark, Friday -- this is June 5th, that's the one you're

1  looking at?

2  **MR. NOMELLINI:**  No.  This is Wednesday June 10th at

3  8:59 a.m.

4  **JUDGE RODGERS:**  Hold on, let me --

5  **MR. NOMELLINI:**  And I'm happy to forward that if that

6  would be most helpful.

7  **MS. BRANSCOME:**  Your Honor, this is Kim.  You are not

8  copied on that email, Judge Herndon was.

9  **JUDGE RODGERS:**  Okay.  I don't have it.  The last

10  email I had on this from Roma was the one on the 5th.

11  **JUDGE HERNDON:**  The one on the 10th from Roma she does

12  list Burgus as one of the three in the pool of alternates.

13  **JUDGE RODGERS:**  Yeah, so --

14  **MR. AYLSTOCK:**  Oh, yes, you're right.  I stand

15  corrected, Judge.  I apologize.

16  **JUDGE RODGERS:**  Yeah, because I'm seeing, you know, on

17  the email I have it's the one, two, and three, and then so the

18  next email to you all must have been the one that added Mr.

19  Burgus.

20  Is that -- Mark, could you forward me the email,

21  please?

22  **MR. NOMELLINI:**  Will do, Judge.

23  **JUDGE RODGERS:**  Thank you.

24  **MR. NOMELLINI:**  Sending it right now.

25  **JUDGE RODGERS:**  Okay.  Thank you.

```
 1              So he was the random pick from the alternate group in
 2   trial B, is that my understanding?
 3              MR. AYLSTOCK:  He hasn't been picked yet, Your Honor.
 4   I apologize for misspeaking earlier.  The parties have to pick
 5   two, their each selection, pursuant to your order.  That will
 6   make five.  And Roma then will pick randomly one of the
 7   remaining alternates.  And Mr. Burgus is one of the alternates,
 8   the Court alternate.
 9              JUDGE RODGERS:  I'm just going to have to wait until I
10   can see the email that Roma sent you all.  Well, if he's not a
11   definite yet, do we need to have this discussion yet or you
12   just wanted to alert me to it?
13              MR. AYLSTOCK:  I wanted to flag it because it is an
14   issue that may require the case not to proceed in some form or
15   fashion.  Again, I, at this point, am awaiting on some
16   direction from the client in that regard.  But I didn't want it
17   to be picked and me to have known about this and not have
18   alerted to the Court that there's a significant issue in the
19   case.
20              JUDGE RODGERS:  Well, when do you think you're going
21   to make that decision?
22              MR. AYLSTOCK:  We've reached back out to the client as
23   recently as this morning to try to get a firm decision one way
24   or the other on which way the client wants to proceed, and
25   haven't had clear direction from him yet.  He's considering the
```

1    options.

2            **JUDGE RODGERS:**  So your picks are due today, correct?

3            **MR. AYLSTOCK:**  Yes, Your Honor.

4            **JUDGE RODGERS:**  Well, I guess there's really not much

5    for me to do about this until I know what you all are going to

6    do.

7            **MR. BROCK:**  I think the only thing would be to give

8    instruction to Roma not to pick the alternate from the three

9    because we would want to be heard on that.

10           **JUDGE RODGERS:**  Well, I mean, I think having her hold

11   off is the right thing to do for the time being.

12           I don't know, Mike, that you all -- if the Plaintiffs

13   want to dismiss a case, I'm not sure that -- if they're going

14   to dismiss it, then you may want to argue about whether it's

15   with or without prejudice.  But I can't imagine that you'll be

16   able to argue successfully that he has to stay in the case.

17           **MR. BROCK:**  Oh, I think we'd argue for the former,

18   with prejudice, and then we'd want to be heard about what to do

19   about his place in that group of three and potential

20   replacement for that selection.

21           **JUDGE RODGERS:**  Okay.  Well, that makes sense.  So I

22   will communicate to Roma to hold off.

23           Bryan, you'll know something next week, I presume?

24           **MR. AYLSTOCK:**  I certainly hope so.  I had hoped to

25   know by now definitively.  But yes, Your Honor, we'll let Mr.

1    Burgus know we need to know something one way or the other next

2    week.

3            **JUDGE RODGERS:**  All right.  The next item on the

4    agenda is related to what we're discussing now that regards

5    your respective picks that are due today.  Do we need to have

6    any more discussion about that other than the discussion we

7    just had?

8            **MR. AYLSTOCK:**  No, Your Honor, I don't think so.

9            **MR. BROCK:**  Same for us, nothing from us.

10           **JUDGE RODGERS:**  Okay.  Next item relates to the

11   schedule.  Where are you on a schedule for group A?

12           **MR. BUCHANAN:**  Your Honor, this is Dave Buchanan for

13   Plaintiffs.  We had a meet and confer with the Defense.  And as

14   Your Honor knows, there's a CMO that already sets the framework

15   -- excuse me, PTO No. 28, discovery and trial schedule for

16   initial bellwether cases which we've been operating under.  And

17   obviously, with the modification breaking these cases out

18   earlier, Plaintiffs have at least kind of kept this group A on

19   track.

20           We've had a meet and confer with the Defense on

21   filling in, if you will, the back end of the schedule,

22   additional details that the parties will want and that the

23   Court will probably have interest in, certainly internal-type

24   things in terms of the exchanges of deposition designations and

25   trial exhibit lists among the parties but separately any

1    additional or supplemental motion practice in limine, et

2    cetera.

3              So, we spoke.  We're expecting a proposal from the

4    Defense with further details on that.  And if it's I think a

5    matter of just filling in the back end of the schedule, I

6    wouldn't anticipate too much difficulty in the parties reaching

7    agreement.

8              The Defendants have expressed some other

9    considerations, and we'll take a look at what they've proposed

10   in their propose schedule.

11             **JUDGE RODGERS:**  All right.  You've said you'll have

12   something to the Court by the 17th?

13             **MR. BUCHANAN:**  Yeah.  We're awaiting a proposal from

14   the Defense, and I got the impression from yesterday that would

15   be forthcoming shortly.

16             **MS. BRANSCOME:**  Dave, I think it was sent right before

17   we got on the leadership call, but Mark actually sent you all

18   our proposal maybe about half-hour ago.  I suspect you just

19   haven't seen it come through.  And we propose touching base

20   early next week for a follow-up call where we can hopefully

21   work through any differences.

22             **MR. BUCHANAN:**  Fair enough.  And in terms of keeping

23   those group A cases on schedule, Your Honor, we're working with

24   the bellwether counsel in those cases.  And we've offered --

25   our understanding those firms have offered dates for three of

1    the plaintiffs' depositions, and we're working with counsel in

2    those cases to promptly offer dates consistent with your

3    guidance for July in the other three.

4        **JUDGE RODGERS:**  Very good, that's good.  Let me jump

5    ahead to another agenda item that relates to this discussion,

6    and that's the loss of consortium claim.  There's only one, as

7    far as I can tell.  Is that right?

8        **MR. AYLSTOCK:**  Yes, Your Honor.  There's -- the Baker

9    case I think has it, and then there has been some discussion

10   with regard to some of the interrogatory responses about

11   whether some of those plaintiffs may want to add that,

12   understanding that depositions for the plaintiffs need to be in

13   July.

14        What we were thinking, Your Honor, is that, if

15   everybody can declare if they're going to add and amend their

16   complaint to add that, that it happen by next Friday, if that

17   would be acceptable to the Court.  I don't know if there will

18   be anymore, but it certainly raised an issue about whether the

19   short form complaints need to be amended to add it.

20        **JUDGE RODGERS:**  Okay.  Next Friday sounds good to me.

21   It's certainly something that needs to be finalized.

22        **MR. AYLSTOCK:**  Yes, Your Honor.

23        **JUDGE RODGERS:**  All right.  Another related agenda

24   item is Item No. 9, the Defendants' answer.  Where do you all

25   stand?

1    It says you're meeting and conferring, and the

2 Defendants believe PTO 17 addresses this issue.

3    Well, I mean, certainly the Defendants have preserved

4 their ability to move to dismiss, to raise affirmative

5 defenses.  But I need to know what your plans are for these

6 bellwether cases with regards to whether the master answer is

7 going to control, whether you're going to file a more specific

8 answer in the individual cases; and if there are going to be

9 motions to dismiss, I probably need to give you deadlines and a

10 briefing schedule for that.

11    **MR. NOMELLINI:**  Yes, Your Honor.  And that's part of

12 the schedule that we just sent over to Plaintiffs to meet and

13 confer about.  And if there's any other detail that needs to be

14 added, we can do that.

15    **JUDGE RODGERS:**  Very good.

16    **MR. BUCHANAN:**  Your Honor, from the Plaintiffs'

17 perspective on that, obviously we'd like the pleadings closed

18 certainly prior to the time that the plaintiffs are being

19 deposed.

20    From our perspective, obviously a master answer has a

21 lot of affirmative defenses that may apply in the aggregate to

22 a litigation with 160,000 claimants or plaintiffs.  There may

23 be a vehicle to just identify which of those they're asserting

24 in the context of the individual cases independent of formal

25 amendments or their kind of opening up separate motion

1    practice.

2              I think they've taken the position that it's deemed

3    filed in each of the cases consistent with the PTO.  We just

4    want to make sure we've got clarity on the operative

5    affirmative defenses.

6         **JUDGE RODGERS:**  Well, I will ask you all to do your

7    best to find that clarity; and then, if you can't, then I will

8    help you.

9         **MR. BUCHANAN:**  Fair enough, Your Honor.  Thank you.

10        **MR. NOMELLINI:**  Thank you, Judge.

11        **JUDGE RODGERS:**  All right.  Thank you.

12             So let me ask about Item No. 5 on your agenda, the

13   substance abuse issue.  Where are you all on this issue?

14        **MR. AYLSTOCK:**  Yes, Your Honor.  Mr. Brock and I have

15   had a preliminary discussion consistent with the Court's

16   directive at the CMC to meet and confer and see what agreements

17   can be made.  We have another call scheduled on Tuesday to see

18   how far we can get to resolve what issues may be out there as

19   it relates to the substance abuse.

20        **JUDGE RODGERS:**  And what about mental health, are you

21   all -- what are you doing to attempt to identify any plaintiffs

22   that have placed that at issue?

23        **MR. AYLSTOCK:**  Yes, Your Honor, we -- that does a

24   little bit relate to the hearing we had before Judge Jones

25   earlier in the week, and he provided in his order yesterday

1    some clarity about what should be contained in the privilege

2    log itself.

3            We just received last evening some specific issues

4    related to specific bellwethers, some of which touch upon those

5    mental health issues.  And we've begun the process of reaching

6    out -- Leadership has -- to the individual firms to try to

7    resolve any of those issues.

8            But I think we have clarity on what needs to be on the

9    log.  I think we're all clear on Judge Jones's ruling and your

10   rulings as it relates to that.  And now we're just -- for the

11   next week I'm sure we'll be meeting and conferring with the

12   Defense on the specifics of a specific plaintiff and whether

13   that plaintiff has put that at issue or not.

14           But, again, we just received the deficiency letter

15   last evening.  We've already had some preliminary conversations

16   with some of the firms this morning, as a matter of fact, on

17   that, but we'll continue that next week.

18           **JUDGE RODGERS:**  Okay, very good.  I noted in reviewing

19   Ms. Cooper, her letter to Mr. Nomellini and Mr. Aylstock of

20   June 5th.  On the second page she states that, "VHA is not

21   producing veterans mental health records unless those records

22   include substance abuse information."

23           I didn't think that was consistent with the

24   authorization.  My understanding was mental health and

25   substance abuse were both carved out.

1          Do you know how --

2          **JUDGE HERNDON:**  Substance abuse wasn't carved out of

3    the first group, the bellwether group.  They asked that it be

4    carved out of the one percent.

5          **JUDGE RODGERS:**  Right.  Well, mental health -- I

6    didn't think either were carved out for the bellwethers.

7          **MR. AYLSTOCK:**  That's correct, Your Honor.

8          **MR. NOMELLINI:**  You're correct, Judge.

9          **JUDGE RODGERS:**  Why are they not producing mental

10   health records?  I assume -- I mean, I don't know if this is

11   just bellwether or is this the bellwether plus the one percent.

12         **MR. AYLSTOCK:**  I believe she's referring to the

13   broader group, Your Honor.  We certainly have received mental

14   health records for the bellwether plaintiffs from the VA.  So

15   I'm not sure what -- she must be referring to the one percent

16   on that.

17         **JUDGE RODGERS:**  So they're going to provide substance

18   abuse but not mental health for the one percent, which I don't

19   think that's consistent with the authorization, but --

20         **JUDGE HERNDON:**  No, it's not.

21         **JUDGE RODGERS:**  Okay.

22         **MR. AYLSTOCK:**  Your Honor, we did -- I don't know if

23   Your Honor had seen this.  We did respond to this letter on

24   Sunday after we got the letter kind of following up to get more

25   clarity on these issues because it wasn't entirely clear to us.

1                   I'm happy to -- and as well as what was bellwether

2      versus what was the one percent.  I'm happy to forward Your

3      Honor that letter if you haven't seen it.

4                   **JUDGE RODGERS:**  I think I have that.  Is that from Ms.

5      Hoekstra --

6                   **MR. AYLSTOCK:**  It is.

7                   **JUDGE RODGERS:**  -- to Ms. Snead?  Or was there a

8      specific to --

9                   **MR. AYLSTOCK:**  Yes.

10                  **JUDGE RODGERS:**  Okay, yeah, I do have that then.

11     Well, just please continue to keep us posted on her response.

12                  **MR. AYLSTOCK:**  Yes, Judge.

13                  **JUDGE RODGERS:**  Okay, thank you.

14                  And to the extent you all are receiving substance

15     abuse treatment records on the one percent, you'll need to

16     treat those the same way as the mental health.

17                  **MR. AYLSTOCK:**  Yes, Your Honor.

18                  **MR. NOMELLINI:**  Your Honor, my recollection is that

19     for the one percent -- and Bryan, you can correct me if I'm

20     wrong -- there was a transition point for the authorizations

21     where some of them -- initially they had certain language for

22     the one percent and then the language for the one percent

23     changed.

24                  Is that right, Bryan?

25                  **MR. AYLSTOCK:**  Yes.  As I recall, there was about 300

1    that went in with the broader language before kind of the rules

2    of the game were changed, and then the remainder I believe are

3    with the May language.

4            **JUDGE RODGERS:**  And I recall that.  I guess the reason

5    I brought this up is we never had an authorization that

6    included one and not the other.  So they were either both

7    included, mental health and substance abuse, or both not

8    authorized.  So I don't remember an authorization where mental

9    health was not authorized but substance abuse was.

10           **MR. AYLSTOCK:**  I think that's right, Judge.

11           **MR. NOMELLINI:**  Correct.

12           **JUDGE RODGERS:**  All right.  Well, hopefully she'll

13   provide some clarity on that.

14           And you had your hearing before Judge Jones and he --

15   as the pro he is, he resolved a number of issues for you all.

16   I haven't had a chance to review the order yet.  I have it and

17   I will.

18           Judge Jones, thank you so much for taking care of all

19   of those thorny items.

20           **MR. AYLSTOCK:**  I'll reiterate that, Judge, thank you

21   for all the time you took to both sides for hearing us out.

22           **MR. NOMELLINI:**  From us also, Judge.

23           **JUDGE RODGERS:**  Judge Jones, is there anything you

24   want to address?

25           **JUDGE JONES:**  No.  But there was one issue -- I think

1    Hillary brought it to my attention -- relating to the

2    medications that the Defendants had raised, I think it was at

3    the last CMC.  And you and I had said, well, just provide them

4    with a list of the medications, and they can see if a plaintiff

5    took them.  But apparently Mr. Brock pointed out it's a little

6    more complicated than that, and there's a long list of

7    medications, and we sort of punted on it.

8         And I think you had mentioned that the parties should

9    meet and confer on it and then, you know, work with me to come

10   up with some protocol for how we deal with the medications.

11   And I'm not sure where that's at, and we really haven't touched

12   on that issue, so I did want to mention that.

13        **JUDGE RODGERS:**  Okay, good.  Yeah, I had that as well

14   to bring up.  We had this discussion at the CMC, and it was

15   incorporated into Pretrial Order No. 39.  We've got to come up

16   with a protocol for this.  I understand it may be more complex

17   or complicated than I understand, but it's got to be addressed.

18        **MR. BROCK:**  Judge, this is part of the discussion that

19   we're having about V, substance abuse issues.  In the context

20   that I think the way this is developing, the dispute will be

21   sort of in that area, that is medicines that could be abused,

22   things like the various opioid medicines, illegal drugs that

23   could be implicated with regard to this issue.

24        I think that for -- I think those are the issues that

25   the Plaintiffs are sensitive about.  As we get regular medical

1   records, I mean, we largely have visibility to the medicines

2   that individuals are taking.  I don't think there's been an

3   effort to redact things like antibiotics or NSAIDs or pain

4   medicine of different kinds.  I don't think there's been like a

5   routine effort to exclude those from production.  So I think

6   we're focused on the issue about which we may end up having a

7   dispute.  Hopefully we'll get it worked out.

8        **MR. AYLSTOCK:**  Yes, Judge, Mr. Brock and I did have

9   that preliminary discussion.  I had indicated -- and we're set

10  to speak it on Tuesday, I believe, but I understand the need to

11  move this along.  I think it would be helpful kind of to get

12  some visibility into other than what was stated at the hearing

13  if there are specific drugs so that we can see which ones we

14  agree to and which ones we may not agree to.  That would be

15  helpful.

16       **JUDGE RODGERS:**  Well, as Mr. Brock points out, you're

17  not redacting anything from the medical records, are you?

18       **MR. AYLSTOCK:**  With regard to drugs, there may be an

19  example or two where it's a mental health drug that would have

20  been redacted.  Obviously, if that happened, it would need to

21  be logged.

22       **JUDGE RODGERS:**  Right.

23       **MR. AYLSTOCK:**  There may be some substance abuse that

24  postdated, for example, hearing loss or may have nothing to do

25  with hearing loss but may also have been, but again that would

1   have needed to have been logged and I believe it would have

2   been logged pursuant to the Court's order.

3           **JUDGE RODGERS:**  But other than those sort of

4   exceptions, you're not otherwise redacting prescription

5   information, right?

6           **MR. AYLSTOCK:**  No.  As a general rule, if a drug is on

7   there, it's going to be in there.  It would be related to a

8   mental health or a substance abuse issue only, yes, Judge.

9           **JUDGE RODGERS:**  Well, Mr. Brock and Mr. Aylstock,

10  you're going to meet about this on Tuesday.  I'd like to have

11  an update myself, Judge Jones, please, and Judge Herndon, by

12  email no later than Friday.

13          **MR. BROCK:**  That sounds good.  Thank you.

14          **JUDGE RODGERS:**  Thank you.

15          And then, Judge Jones, anything else, or Judge

16  Herndon, on that topic?

17          **JUDGE JONES:**  No.  That was the only thing.

18          **JUDGE HERNDON:**  No, not on that topic.

19          **JUDGE RODGERS:**  Okay.  Let me touch base one more time

20  on the privilege log.  Judge Jones gave you great direction on

21  that issue.  Is there anything that we need to discuss further

22  about privilege log issues today?

23          **MR. AYLSTOCK:**  Not from the Plaintiffs' perspective,

24  Your Honor.  I think the clarity is there, and I appreciate

25  Judge Jones providing that to everyone.

1          **JUDGE RODGERS:**   From the Defense?

2          **MR. NOMELLINI:**   Your Honor, the only thing relates to

3    something we've already covered, which is that we got to take

4    into account Judge Jones's orders in sending out the deficiency

5    letters that Mr. Aylstock mentioned, which I think is one of

6    the Roman numerals on our agenda, and so we're starting the

7    meet and confer process that Mr. Aylstock mentioned.

8          And then, if there are -- hopefully we can resolve any

9    issues after meeting and conferring; and if not, the parties

10   will bring any remaining issues to Judge Jones, which covered

11   Roman VI on our agenda.

12         **JUDGE RODGERS:**   Okay.   I don't see anything in Roman

13   numeral VI about deficiency, but that's just part of that

14   process that --

15         **MR. NOMELLINI:**   Yes, that's correct, Your Honor.

16         **JUDGE RODGERS:**   Let me ask the Defense, and

17   specifically Mark.   I'm assuming you haven't heard back from

18   Ms. Snead in regards to your June 9th letter via email?

19         **MR. NOMELLINI:**   I have not, Your Honor, other than to

20   receive an email from her which basically said, you know,

21   address things to Maj. Evans and Maj. Kim.   I noted that it was

22   also copied to Maj. Evans and Maj. Kim.   But other than that, I

23   have not heard any substantive response.

24         **JUDGE RODGERS:**   Have you all -- I'm sure you've

25   thought about it, but have you decided on how much time you're

1   going to give for a response from the DoD to these issues, the

2   outstanding discovery issues before taking the next step?

3         **MR. NOMELLINI:**  Yes, we have, Your Honor.  Our plan is

4   to file a Motion to Compel before Your Honor today.  That is

5   our current plan.

6         **JUDGE RODGERS:**  Okay.  And are you briefing -- and I

7   know you did this in your last Motion to Compel, but I don't

8   know if you're going to cut and paste or if it's the subject of

9   further briefing this issue of former government employee?

10        **MR. NOMELLINI:**  Yes, Your Honor.

11        **JUDGE RODGERS:**  I suspect they are -- if they don't

12   have an issue with regards to the plaintiff, I suspect they're

13   certainly going to have an issue with regard to you retaining

14   former government employees as experts.

15        I'm glad to hear you're going to get your motion

16   before the Court so we can deal with this.

17        Let me ask, Judge Herndon, do you have anything you'd

18   like to add in regards to this or anything else?

19        **JUDGE HERNDON:**  Yes.  I was able to confirm with Maj.

20   Kim that Maj. Evans's reassignment came in, and he's gone.  So

21   she now is the lead officer on it, and she said she was hoping

22   he'd be replaced soon.

23        So I emailed her back and asked if she had any idea

24   when he might be replaced.  And I also asked could she have a

25   telephone conversation with me to talk about process and

1      procedure.  I'm just trying to clarify sort of why they do what

2      they do and how they go about doing it.  But I suspect that

3      being short one person is going to make things even more

4      difficult.

5            **JUDGE RODGERS:**  Well, I can communicate with Michael

6      Fucci about that.  The last time he and I talked, which wasn't

7      that long ago, we did discuss Maj. Evans's departure, but we

8      didn't get specific about whether he'd be replaced.  Because,

9      you know, at the very beginning it was just Maj. Evans, and

10     Maj. Kim was brought in just for I think continuity purposes

11     because they knew Maj. Evans was going to be leaving and going

12     to another duty station, reassigned at some point.

13           So I don't know that they ever intended to put two

14     people on it permanently.  But they now know a lot more about

15     it than they did in the beginning and the amount of work that

16     it requires.  So you and I --

17           **JUDGE HERNDON:**  That's just what she put in the email,

18     but they -- it struck me they had a pretty good division of

19     labor between the two of them and, even with that, you know, I

20     think Maj. Evans was having difficulty with the depositions.

21     Hopefully they'll replace him.  But, as you say, it remains to

22     be seen.

23           **JUDGE RODGERS:**  All right.  Well, if you don't hear

24     anything back from her, Judge Herndon, say, by Tuesday of next

25     week, would you let me know, and I'll reach out to Michael

1    Fucci about that?

2              **JUDGE HERNDON:**   Absolutely.

3              **JUDGE RODGERS:**   All right.   Thank you.

4              Mark, back to your Motion to Compel just briefly.   Are

5    you including or have you included a section in that motion on

6    sort of the process for the Court to deal with this in terms of

7    my authority to compel a nonparty, and in this case more

8    specifically the Department of Defense, the Veterans

9    Administration?

10             **MR. BROCK:**   Your Honor, this is Mike.   There is

11   precedent for a District Court to take up a dispute such as

12   this, and we have cited that precedent.   There are other

13   administrative avenues for these matters that are sometimes

14   utilized for resolution.   But we have suggested that Your Honor

15   resolve this dispute and have cited authority that would

16   support that.

17             **JUDGE RODGERS:**   Yeah, I mean, I'm aware of the APA

18   avenue.   I mean, obviously for reasons we all understand and

19   appreciate, that's not the preferred route.   Everything would

20   slow to a snail's pace, if not a halt.   All right.   Well, I'll

21   be interested to see what you provide.

22             I've tried to think back in whether I have ever issued

23   a former order compelling the government in a situation like

24   this to respond.   I've threatened contempt and it worked.   But

25   I don't recall ever issuing a formal order.   So I'll be

1    interested to research and look at the precedent you provide

2    and research on my own and hopefully be able to be of

3    assistance.

4              **MR. BROCK:**   Thank you, Judge.

5              **JUDGE RODGERS:**   Judge Jones, do you know, or Judge

6    Herndon?

7              **JUDGE HERNDON:**   I do not know.  I've tried research,

8    or done as much as I could, but cases are kind of all over the

9    place.

10             **JUDGE JONES:**   Yeah.  I don't know about the military

11   or the government, but certainly there's probably some

12   precedent out there for the Court exercising jurisdiction over

13   a nonparty in a discovery dispute and compelling them to take

14   action and participate.  I don't know if that applies to the

15   government but -- I'm not sure you can hold the government in

16   contempt.

17             **JUDGE RODGERS:**   Well, like I said, it worked with the

18   Navy, but that's probably just because I'm in Pensacola.

19             Okay, I think that covers your agenda, and I don't

20   have anything else.

21             Let me open it up to everyone on the phone if there's

22   something that needs to be brought up, including Judge Jones,

23   Judge Herndon, both sides.

24             **JUDGE HERNDON:**   I don't have anything else.  Thank

25   you.

1            **JUDGE RODGERS:**  Well, I'm looking forward to Monday.

2            **MR. AYLSTOCK:**  We are, too, Judge.

3            **JUDGE RODGERS:**  So, Bryan, from you all, anything

4 else?

5            **MR. AYLSTOCK:**  No, Your Honor.

6            **JUDGE RODGERS:**  Mr. Brock, Ms. Branscome, you all have

7 anything else?

8            **MR. BROCK:**  I think we're good.  Hope everyone has a

9 good weekend.

10            **MS. BRANSCOME:**  Same here.

11            **JUDGE RODGERS:**  Same to you all.  Thank you so much.

12 Take care.  I'll get back with you all on the IT question for

13 Monday.

14            **MR. AYLSTOCK:**  Thank you, Judge.

15            *(Proceedings concluded at 1:47 p.m.)*

16            --------------------

17 *I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  Any*

18 *redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy are noted within the transcript.*

19

20      *s/Donna L. Boland*            *6-22-2020*

21      *Donna L. Boland, RPR, FCRR*       *Date*
     *Official Court Reporter*

22

23

24

25