# EXHIBIT I

**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

Mark J. Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

March 17, 2020

**Via Email**

Major Collin Evans
Litigation Attorney, General Litigation Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
collin.p.evans2.mil@mail.mil
703-693-0352

Re: Supplemental *Touhy* Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation, 3:19-md-02885-MCR-GRJ (N.D. Fla.)*

Dear Major Evans:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*—a multidistrict litigation pending before Judge Rodgers in the Northern District of Florida—this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy* request to the United States Department of Defense ("DoD"), Army, Navy, Marine Corps, Air Force, and Coast Guard for certain documents related to Military Audiology Short Course meetings held while the Combat Arms Earplugs Version 2 were in use.

**I.      SUMMARY OF THE LITIGATION**

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a long-standing relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs—the subject of this litigation.

Case 3:19-md-02885-MCR-HTC   Document 1211-9   Filed 07/01/20   Page 3 of 5

**KIRKLAND & ELLIS LLP**

Maj. Collin Evans
March 17, 2020
Page 2

      Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

      The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.

      CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady attenuation of ambient noise. In contrast, the yellow end is nonlinear and attenuates different sounds differently. In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire. This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

      Servicemember plaintiffs in this litigation allege that the CAEv2 was defective and caused them to sustain serious injuries during their military service, including hearing damage. In particular, Plaintiffs allege they were not aware of the need to roll back the flanges of the opposing end of the CAEv2 to obtain an adequate fit because Defendants concealed this issue from the military. Defendants argue that plaintiffs' claims are barred by the government contractor defense, which preempts state tort claims "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). The military's knowledge of the alleged need to roll back the flanges is therefore critical to Defendants' government contractor defense.

**II.      SUMMARY AND RELEVANCE OF THE DOCUMENTS REQUESTED**

## KIRKLAND & ELLIS LLP

Maj. Collin Evans
March 17, 2020
Page 3

**Documents Related To Annual Military Audiology Association Short Course Meetings From 2001 to 2005.** Defendants request documents, communications, and presentations related to the annual meetings of the Military Audiology Association from 1999 to 2005. Such documents are highly relevant to Defendants' government contractor defense because such documents speak to, among other things, military knowledge with respect to whether and when to roll back the flanges of CAEv2 to improve fit. For example, LTC John Merkley testified during his February 27, 2020 deposition that Dr. Doug Ohlin had discussions regarding the CAEv2 with "most of the Army audiologists" at the "military audiology short course" conferences Merkley attended between 2001 and 2005. Merkley Dep. Tr. at 105:14-107:2. Merkley testified that, during these meetings, Dr. Ohlin informed Army audiologists that some users might find it beneficial to roll back the opposing flanges of the CAEv2 in order to obtain a better fit. *Id*. at 98:4-99:2. Materials related to the annual Short Course meetings may include Dr. Ohlin's advice regarding rolling back the flanges, or other information conveyed to audiologists regarding the CAEv2, which would demonstrate the military's knowledge of the product's capabilities and limitations. Although LTC Merkley discussed the conferences he attended between 2001-2005 in particular, Defendants request materials related to the broader 1999-2005 time period because Dr. Ohlin likely would have given similar talks in the years prior to Merkley becoming an Army audiologist.

**Documents Identified In Army Pamphlet 40-501 Regarding Service Member Noise Exposure.** Defendants request documents related to the noise surveys, identification of noise-hazardous areas, and identification of noise-exposed and ototoxin-exposed personnel, which are performed and maintained by the Industrial Hygiene Program Managers for each Army installation per Army Pamphlet 40-501. In particular, Army Pamphlet 40-501 requires the Industrial Hygiene Program Manager at every Army installation to, among other things, (i) survey all known and suspected noise-hazardous areas and equipment and ototoxic exposures, (ii) maintain a current inventory of all noise-hazardous areas, (iii) compile the names and social security numbers of noise-exposed and ototoxic-exposed personnel and the magnitude of their noise exposure, and (iv) track noise exposure violations for inclusion on a violation inventory log. (DA PAM 40-501 at 1-4.) Similarly, Army Pamphlet 40-501 requires the Hearing Conservation Officers to, among other things, (i) notify noise-exposed and ototoxic-exposed personnel under their supervision of their exposures, and (ii) ensure that noise-exposed and ototoxic-exposed personnel wear noise and ototoxic chemical dosimeters when requested. (*Id.*) Documents regarding each of these activities are relevant to determining the cause of any hearing loss or tinnitus alleged by the Plaintiffs, and will be necessary for Defendant's to adequately prepare these cases for trial.

**Documents Identified In Army Pamphlet 40-501 Regarding Service Member Complaints Regarding Combat Arms Version 2.** Defendants request documents related to any service member complaints regarding Combat Arms Earplugs version 2. Army Pamphlet 40-501 requires the Hearing Conservation Officers to, among other things, refer any personnel under their

KIRKLAND & ELLIS LLP

Maj. Collin Evans
March 17, 2020
Page 4

supervision to the military treatment facility for any complaints associated with wearing hearing protectors.  (DA PAM 40-501 at 1-4)  Documents memorializing any service member complaints regarding the CAEv2 are relevant to Plaintiffs' assertions that the CAEv2 is defective and does not provide adequate attenuation.

### III.   ADMINISTRATIVE MATTERS

Defendants will bear the costs of duplicating and producing the documents sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States.  Any requests for assistance with the transmittal of electronically stored documents, or coordination of the inspection of documents should be made to Mark Nomellini, counsel for Defendants, at (312) 862-2410 or mnomellini@kirkland.com.  Defendants are willing to work with any Federal agencies implicated in this request in order to properly narrow or tailor the scope of this and any future request.  If you should require additional information as to the relevancy of any document listed in this request, we would be happy to provide it at your convenience.

Should you have any questions or require any additional information concerning this request, please do not hesitate to contact me.  Thank you for your assistance.

Sincerely,

*/s/ Mark J. Nomellini*

Mark J. Nomellini

cc:   Major Nicole Kim
Judge Advocate, U.S. Army
Litigation Attorney
nicole.m.kim2.mil@mail.mil

Jacqueline Snead
Federal Programs Branch
Department of Justice
jacqueline.snead@usdoj.gov