**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG      )      Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,     )
                                   )      Pensacola, Florida
                                   )      June 26, 2020
                                   )      9:47 a.m.
                                   )
                                   )
_____)



**THIRTEENTH CASE MANAGEMENT CONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-62)

# A P P E A R A N C E S

**JUDGE DAVID R. HERNDON** (ret.)

**FOR THE PLAINTIFFS:**      **BRYAN F. AYLSTOCK, ESQUIRE**
                             **JENNIFER HOEKSTRA, ESQUIRE**
                             Aylstock, Witkin, Kreis & Overholtz
                             17 E Main Street, Suite 200
                             Pensacola, Florida  32502

                             **BRIAN H. BARR, ESQUIRE**
                             Levin Papantonio
                             316 S Baylen Street, Suite 600
                             Pensacola, Florida  32502

                             **SHELLEY HUTSON, ESQUIRE**
                             Clark Love & Hutson, GP
                             440 Louisiana Street, Suite 1600
                             Houston, Texas  77002

                             **CHRISTOPHER A. SEEGER, ESQUIRE**
                             **DAVID R. BUCHANAN, ESQUIRE**
                             Seeger Weiss, LLP
                             55 Challenger Road, 6th Floor
                             Ridgefield Park, New Jersey  07660

**FOR THE DEFENDANTS:**      **ROBERT C. BROCK, ESQUIRE**
                             Kirkland & Ellis, LLP
                             1301 Pennsylvania Avenue NW
                             Washington, D.C.  20004

**MICHELLE SIX, ESQUIRE**              **KIMBERLY BRANSCOME, ESQUIRE**
Kirkland & Ellis, LLP                  Dechert, LLP
601 Lexington Avenue                   633 W 5th Street, Suite 4900
New York, New York 10022               Los Angeles, California  90071

**MARK J. NOMELLINI, ESQUIRE**         **LARRY HILL, ESQUIRE**
**NICHOLAS F. WASDIN, ESQUIRE**        **HALEY J. VANFLETEREN, ESQUIRE**
**BARRY E. FIELDS, ESQUIRE**           Moore, Hill & Westmoreland, PA
**KARL B. GUNDERSON, ESQUIRE**         350 W Cedar Street, Suite 100
Kirkland & Ellis, LLP                  Pensacola, Florida  32502
300 N Lasalle
Chicago, Illinois  60654

1    P R O C E E D I N G S

2    *(Court called to order at 9:47 a.m.)*

3    **JUDGE RODGERS:**   Thank you.   Good morning.   Welcome to

4    the 13th Case Management Conference in the In Re: 3M Combat

5    Arms Earplug Products Liability Litigation, MDL 2885.

6    I apologize, as always -- I seem to do this every time

7    we start in the courtroom for the case management conference,

8    each month I apologize for the delay in getting started because

9    our preconference leadership meeting tends to run over.   The

10   agendas are getting more and more full.

11   And so, what I'm going to do, in an effort to correct

12   that and to not waste people's time, I'm going to set the case

13   management conferences in the future, the courtroom conference,

14   the main conference where we are now for 10:00 a.m. as opposed

15   to 9:30, to give us just a little more flexibility and wiggle

16   room in the earlier conference.

17   I have here in the courtroom, for the Plaintiffs, Mr.

18   Aylstock, Ms. Hutson, and Mr. Barr at counsel table.   I have

19   Mr. Brock and Ms. VanFleteren -- did I say that right?

20   **MS. VANFLETEREN:**   Yes, Your Honor.

21   **JUDGE RODGERS:**   -- here for 3M.

22   I have Judge Jones on videoconference.   Judge Herndon

23   is here in the courtroom in the jury box.   And then also on the

24   video for 3M I have Ms. Branscome, I have Ms. Six, Mr. Wasdin,

25   Mr. Fields; and then for the Plaintiffs I have Mr. Buchanan and

```
 1    Mr. Seeger.  Good morning to you.
 2              Before I begin with the agenda, I'd like to start off
 3    by just again commenting and commending those who were
 4    involved, most notably Mr. Sacchet and Mr. Wasdin, in the oral
 5    presentations on the cross motions for summary judgment on the
 6    government contractor defense that we had here in the courtroom
 7    on the 15th.
 8              I want to just again say how impressed I was with
 9    those presentations, the amount of work that went into the
10    motions, all the responses and replies.  But the oral
11    presentations were outstanding.
12              I've been a judge for 18 years.  I've heard countless
13    oral arguments in this courtroom as a district judge, I've sat
14    on the Eleventh Circuit several times.  And those arguments
15    were as good as any that I've seen in the past, so I wanted to
16    say that.
17              Mr. Wasdin, you're here by video, Mr. Sacchet is not,
18    but I hope you'll pass my comments along to him.
19              MR. WASDIN:  I will, Your Honor.  Thank you.
20              JUDGE RODGERS:  Okay.  Thank you.
21              All right.  I'm going to follow, as I traditionally
22    do, the agenda.  We covered a few of the items -- some of the
23    meatier ones in the preconference meeting.  There were some
24    items we did not get to due to time, so we'll address those
25    here in the courtroom.
```

1          The first item on the parties' agenda submitted to the

2     Court related to Mr. Lonnie Burgus as an alternate selection in

3     trial group B.  I'm going to give Mr. Aylstock -- this is an

4     Aylstock, Witkin client.  I'm going to give you all until

5     Wednesday to notify the Court of your position with regards to

6     Mr. Burgus in continuing as a bellwether.

7          Once I hear from Mr. Aylstock with regard to

8     Mr. Burgus, I will make my decision if Mr. Burgus is to be

9     removed, or even if his case is to be dismissed, then I'll make

10    a decision -- I've heard from both sides -- I'll make a

11    decision on how to replace him in that trial group.

12          Anything else with regard to Mr. Burgus here?

13          **MR. AYLSTOCK:**  No, Your Honor.

14          **JUDGE RODGERS:**  Thank you.

15          The next item we spent some time discussing this

16    morning relates to the schedule for the trial groups, of course

17    beginning with trial group A.  I had letter briefs from the

18    parties regarding their respective positions on a schedule

19    going forward.

20          The Defense was hoping for an extension of the

21    discovery deadline or discovery completion date of

22    approximately a month.  The Plaintiffs were asking that I stick

23    with the deadline that was entered in PTO 28, which was

24    September 25th.

25          I've decided to make both sides happy or unhappy, and

```
 1    I'm going to move it a little bit.  I'm going to move the date
 2    not 30 days; I'm going to extend it by a couple of weeks to
 3    October 9th.  This will all be reduced to writing following the
 4    conference.
 5              There was also an issue in dispute regarding number of
 6    witnesses that would be allowed in terms of depositions.  The
 7    Defendants wanted that number increased from four per side to
 8    eight per side.  Again, in an effort to keep everyone happy or
 9    unhappy, I'm going to increase that to six per side.
10              There would need to be leave of Court for good cause
11    shown to increase that number.  And it may be that the parties
12    have said to me, both sides, that maybe that they don't need
13    that number in each and every case.
14              I have left in place the deadline for motions to
15    dismiss or individual answers or responses in the bellwether
16    group A cases for July 13th.  Again, that will remain in place.
17              I've also -- I've set a deadline within the discovery
18    period for the completion of corporate discovery as well as
19    military -- I'll call it military discovery.  That date is
20    September 1st.
21              I've asked both sides to confer about the sequencing
22    of the remaining three discovery and trial groups.  There is a
23    schedule, broadly speaking, in -- at least the commencement of
24    discovery is referenced for those groups in PTO 28, but I'm
25    going to allow the parties to decide what works best for them
```

1    in light of the schedule for group A, and then you'll let me

2    know.

3            I don't believe I gave you a deadline for that.  Could

4    I ask that you have something in mind by our next CMC on the

5    29th of July --

6            **MR. AYLSTOCK:**  Yes, Your Honor.

7            **JUDGE RODGERS:**  -- for us to at least discuss?

8            **MR. BROCK:**  Yes, Your Honor.

9            **JUDGE RODGERS:**  Thank you.

10           We also discussed some of the productions to date and

11   the status of records production to date.  And I'm pleased to

12   report that, for the DoD, with the exception of two individuals

13   -- and these are for the bellwethers, and when I say the

14   bellwethers, I'm talking about 24 plaintiffs -- with the

15   exception of two, and I'm waiting to hear back from Maj. Kim

16   about this.

17           All of the DoD productions for those 24 bellwether

18   plaintiffs are complete in terms of the DOEHRS data, the

19   medical records, as well as -- and there's one caveat -- as

20   well as the personnel files.  The caveat is the three active

21   duty servicemember plaintiffs who were among the 24, their

22   medical records.  I don't know the status yet of that

23   production because they were in a different category.

24           The DoD was not able to produce their records through

25   the centralized process that we've been going through with Maj.

1    Kim.  These active duty servicemen -- I think they're all men

2    -- have to submit their authorizations through their base

3    medical office, and so I don't know the status of that.

4            I would ask that Ms. Hoekstra or someone get -- thank

5    you, I see you indicating affirmatively that you will do that,

6    thank you -- let us know the status of those three individuals.

7            And then also, likewise, really very good news for the

8    bellwether plaintiffs, all of the productions from the VHA as

9    well as the VBA -- Veterans Health Administration, Veterans

10   Benefits Administration -- are complete, with the exception of

11   just three plaintiffs whose files were corrupt.  And those

12   files will be produced in a searchable, readable, whatever

13   fashion on Tuesday.  That's what I've been told by the DOJ.  So

14   that really was good news.  I'm happy to hear that.  And the

15   parties are ready to proceed with depositions.

16           The other area of production relates to the

17   third-party production as authorized by the plaintiffs and

18   those authorizations given to the Defense and the Defense

19   submitting those records requests to third-party providers,

20   nonmilitary, nongovernment.

21           I didn't get an update in the conference room about

22   where we stand.  I have a report -- we kind of got off track, I

23   believe, in the leadership meeting with Mr. Garcia and his

24   authorizations.  And I'll just speak to Mr. Garcia.  He is one

25   of our group A plaintiffs.  There is a question about his

```
 1    willingness to participate and cooperate as a bellwether
 2    plaintiff.  That should be resolved this week.  If he is not
 3    going to go forward as a bellwether plaintiff, his case will
 4    likely be dismissed without prejudice, and the Defendants will
 5    be able to pull from one of the other trial groups one of their
 6    picks to move into his stead or his place.
 7              But could I get an update -- and, Ms. Hoekstra, if you
 8    need to present that, that's fine, since I know you have a lot
 9    of firsthand information about the productions, and then,
10    either Mr. Wasdin or Mr. Nomellini, I'll hear from you all.
11         MS. HOEKSTRA:  Thank you, Your Honor.  I have it
12    pulled up on my computer because we were updating it last
13    night.
14         JUDGE RODGERS:  That's fine.  I do have your report.
15    There was a chart filed.
16         MS. HOEKSTRA:  Yes.
17         JUDGE RODGERS:  Is your chart that you sent or
18    emailed, is that the same information that I got this morning
19    from the Defendants?
20         MS. HOEKSTRA:  I do not include the information on
21    what has been requested and produced based on those
22    authorizations, just in terms of what has been requested and
23    the authorizations provided.  Defendants then provide you the
24    information with what they've requested and received from those
25    authorizations.
```

1          **JUDGE RODGERS:**  Okay.  Theirs is more comprehensive,

2    then?

3          **MS. HOEKSTRA:**  Correct, yes.  Ours is just in terms of

4    the delay in terms of getting authorizations back, if

5    necessary.

6          At this point, I believe, other than an authorization

7    that needs to be notarized from Mr. Vilsmeyer, which was a

8    site-specific authorization, not the general authorization,

9    that we're having difficulty with the notary on.

10          Other than Mr. Garcia, the authorizations that have

11    been requested to date have been provided.  There were several

12    follow-up questions for facilities where we provided

13    authorizations where they're not getting a response where we've

14    gone back to the plaintiffs to get additional information on.

15    Some of that is still being provided to Defendants as we get

16    the responses.  But the majority, to this point, of the

17    authorizations that have been requested have been provided to

18    Defendants for these nonVA and nonDoD facilities.

19          **JUDGE RODGERS:**  And this is for all the four groups?

20          **MS. HOEKSTRA:**  For all four groups, correct.

21          **JUDGE RODGERS:**  Thank you very much.

22          Is this Mr. Wasdin or Mr. Nomellini or Mr. Gunderson?

23    I'm not sure who has --

24          **MR. GUNDERSON:**  Good morning, Judge Rodgers.  This is

25    Karl Gunderson by phone.

1          We concur with Ms. Hoekstra's explanation.  We have

2     received from Plaintiffs the vast majority of the

3     authorizations we've requested.  Our vendor has been --

4     *(inaudible)* -- custodians sort of upon receipt, and we are

5     getting records back.

6          We continue to be pushing for additional records, but

7     we still haven't quite gotten responses from custodians.  But

8     that information is all reflected in the charts I sent the

9     Court this morning.

10         **JUDGE RODGERS:**  Thank you, Mr. Gunderson.  I didn't

11    have an opportunity to do a deep dive with the chart.  I will

12    later today.

13         Because the depositions are getting ready to kick off

14    with regards to the plaintiffs, I would like to know if there

15    are any third-party custodians of records that you haven't

16    received or there seems to be a delay and is unexplained.

17    Because I would enter an order -- as opposed to the manner

18    you've been proceeding in, in terms of seeking to get those

19    records, I can issue an order, and maybe that would speed up

20    the process.

21         **MR. GUNDERSON:**  Yeah, I think at this point the vast

22    majority of the issues we are seeing tend to be with providers

23    from quite a long time ago.  And, you know, we are working to

24    make sure that, you know, if they have any records, those are

25    getting produced.

1          But we understand and appreciate the Court's

2    willingness to become more actively involved.  And we'll take

3    another look at what is still outstanding, especially for the

4    trial group A plaintiffs, and we will reach out to the Court if

5    we think there is any assistance needed there.

6          **JUDGE RODGERS:**  Okay, yes, please do focus or

7    prioritize with regards to the trial group A.  I really don't

8    want to see a request to move a deposition or delay a

9    deposition because you haven't received a third-party

10   production when I'm offering to help you with that.

11         **MR. GUNDERSON:**  We understand.  Thank you, Your Honor.

12         **JUDGE RODGERS:**  All right, thank you.

13         Could those, please, on the video bridge, would you

14   mute your audio if you're not addressing the Court.  Thank you.

15         Anything else we need to discuss with regard to

16   production?

17         **MS. BRANSCOME:**  Your Honor, I just wanted to mention

18   that we do -- the government records have been produced to

19   Plaintiffs.  Defendants have not yet received all of them.

20   They're still with the Plaintiffs for review.  So, we are

21   working cooperatively with the Plaintiffs, but I just wanted to

22   let you know.

23         You had referenced that we're ready to go forward with

24   depositions, but we are still in that 14-day window where the

25   Plaintiffs are able to review the records that have come in

1   from the government.  I don't foresee having any problems, and

2   we've been working quite cooperatively, but I just wanted to

3   give you that time frame of reference.

4        **JUDGE RODGERS:**  Okay, I appreciate that.  I wasn't

5   thinking along those lines.  So, again, I'm going to ask

6   everyone to prioritize the group A plaintiffs.

7        And let me just go ahead and ask the Plaintiffs, where

8   are you with those six people, Ms. Hutson, in terms of your

9   review?

10       **MS. HUTSON:**  It is going smoothly, Your Honor.  One of

11  the challenges is that there was a very large, voluminous

12  production by the government one week ago, which was 5,000

13  pages.  And so the firms are going through those pages as fast

14  as they can to look for any potential need for redaction.

15       **JUDGE RODGERS:**  5,000 for the six?

16       **MS. HUTSON:**  No.  All bellwethers.  I apologize.  I

17  didn't cut that out in the six.

18       **JUDGE RODGERS:**  Right.  I thought you all would have

19  carved out the six and focused on those six because those are

20  the six that need to be set for deposition.

21       **MS. HUTSON:**  By prioritizing the group A, that's

22  definite.  But we have the deadline coming up in a week, so all

23  the firms are working collectively.  I can certainly get that

24  information in terms of the six.  But we don't see any delay or

25  any reason why that deadline is going to be met at this point.

1        **JUDGE RODGERS:**  What I'd like to know sometime today
2   is, for those six firms, where they are in their review.
3        **MR. AYLSTOCK:**  So here -- I have that answer for you,
4   Judge.
5        **JUDGE RODGERS:**  Oh, good.
6        **MR. AYLSTOCK:**  Thanks to Ms. Hoekstra.
7        **MS. HUTSON:**  Oh, I do have it right here.
8        **MR. AYLSTOCK:**  Plaintiffs Estes, Garcia, and Baker
9   have submitted their VBA records and produced to the
10  Defendants.
11       Mr. Keefer is Mr. Barr's client.
12       Mr. McCombs should be done; processing the records for
13  production today.
14       Mr. Rowe has over 4,000 pages of records; should be
15  produced over the weekend -- sometime on Monday.
16       So we do have the 14 days.  As we committed, we're
17  doing everything we can to get them done sooner than that, and
18  it looks like we're going to do that.
19       **JUDGE RODGERS:**  But you have the 14 days for all
20  groups.
21       **MR. AYLSTOCK:**  Well, we have 14 days from the
22  production of the VA records to review them, make the necessary
23  redactions, and produce them.
24       **JUDGE RODGERS:**  I don't really want to go through
25  Roma's report and see when the separate categories of records

1  were produced for each plaintiff and whether you're still in

2  your 14-day period.  But we need to get the records for the six

3  produced.

4           **MR. AYLSTOCK:**  It looks like they'll all be done by

5  Monday, Judge.

6           **JUDGE RODGERS:**  Perfect.

7           **MR. AYLSTOCK:**  Three are already done, and two more

8  today.

9           **MS. HUTSON:**  And they have been producing them as they

10  were able to get through them, not holding on to them.  But I

11  agree, it should be done as soon as possible.

12           **JUDGE RODGERS:**  So, Ms. Branscome, you all then have

13  some records?

14           **MS. BRANSCOME:**  We do, we do, Your Honor.  We have --

15  I did not have in my notes that we had Estes, but we did have

16  Baker -- and I'm drawing a blank on the other one we had, but

17  yes, we did have some.  That's why I indicated we're working

18  cooperatively.  I think we won't have any problems, but I just

19  wanted to make Your Honor aware that the Defendants do not have

20  them yet for four of the plaintiffs.

21           Our records indicated we also don't yet have the DoD

22  records for Estes and Keefer.  So, if Plaintiffs wouldn't mind

23  checking on those as well, then, you know, we should be able to

24  be moving forward expeditiously.

25           **JUDGE RODGERS:**  Okay.  My question of Maj. Kim of the

1    two -- I mentioned this earlier where it didn't appear to me

2    from BrownGreer's report that the medical records had been

3    provided, that was for Mr. McCombs and Mr. Rowe.  So we've

4    asked Maj. Kim to look into that and to follow up and let us

5    know when you all can expect those medical records.  But that's

6    all I'm aware that's outstanding from the DoD.

7             So --

8             **MR. AYLSTOCK:**  And, Your Honor, dates have been

9    provided to the Defendants for depositions in July.

10            **JUDGE RODGERS:**  I was just about to ask if we have

11   those set.

12            **MR. AYLSTOCK:**  And we anticipate that all of these

13   records will be produced in plenty of time before any of those.

14   So I think two of them -- maybe only one of them has been

15   accepted, but we're ready to roll, and multiple dates have been

16   provided.

17            **JUDGE RODGERS:**  Okay.  I'd like you all to submit to

18   Judge Herndon, and then he can share with me, but submit to him

19   the schedule that's in place right now for those depositions as

20   far as what's been set.  I'd also like for you to provide to

21   him the dates that you offered, when you offered those dates,

22   and then what the Defendants' response has been.  And then

23   Judge Herndon can help you all get those plaintiffs --

24            **MR. AYLSTOCK:**  Yes, Your Honor.

25            **MS. HUTSON:**  We have that chart.

1          **JUDGE RODGERS:**  Very good, thank you.  And Monday

2    would be terrific, but actually I'll give the Plaintiffs until

3    Tuesday to have those records produced for the six.

4          **MR. AYLSTOCK:**  Thank you, Judge.

5          **JUDGE RODGERS:**  And that will also depend on, for the

6    two, Mr. McCombs and Mr. Rowe, what we hear back from Maj. Kim.

7          **MR. BROCK:**  Your Honor, I was going to mention just --

8          **JUDGE RODGERS:**  Mr. Brock.

9          **MR. BROCK:**  -- one thing that is just putting a marker

10   down and letting the Court know about a motion that I think

11   will be a process point leading to these depositions.

12          We are actively meeting and conferring with the

13   Plaintiffs with regard to answers to interrogatories, to the

14   extent that we have medical records redacted, those types of

15   things.

16          What we are working toward is seeing what is left at

17   the end of that process, and then we are going to try to put

18   together an omnibus motion to compel that will address the

19   first cases, get that on file as quickly as we can.  But

20   hopefully, with your help and Judge Jones's, we can get some

21   rulings on some of those in advance of the depositions in late

22   July.

23          **JUDGE RODGERS:**  Okay.

24          **MR. BROCK:**  I just wanted to give you a heads-up that

25   that's kind of what our thinking is in terms of strategy for

1    that.

2          **JUDGE RODGERS:**  Well, just because of timing, there

3    may be a short response time.  And it may be that you file a

4    brief written response and, instead, you all just get in front

5    of either Judge Jones or myself, and we can hear you in open

6    court and get this resolved.

7          Hopefully we can just give you our rulings from the

8    bench so you can, again, get started with these depositions and

9    they don't get delayed.

10         **MR. BROCK:**  And I think, as we accumulate rulings on

11   issues, that will help us in terms of applying Your Honors'

12   thinking about some of the issues that we can use for other

13   potential disputes.

14         **JUDGE RODGERS:**  Okay.  Very good.  Thank you for the

15   heads-up.

16         Where -- and this may be a question for Judge Jones

17   but also the parties.  I'm curious about the privilege log.

18   I'm turning now to more of the Defendants' record production.

19         Judge Jones, could you provide an update, if you have

20   one, on the privilege issues?

21         **JUDGE JONES:**  Well, currently there's no privilege

22   issue pending before me.  There was a motion filed several

23   months ago, I think, and I issued a ruling on privilege issues

24   with regard to a sample of documents.

25         And I was operating under the assumption based on the

1    Court's ruling that informed the parties as to their position

2    with regard to other documents in that -- I don't want to say

3    there are zero issues on privilege, but they were narrowed, and

4    no further privilege issues have been brought before me.  I'm

5    putting aside the medical records, but I'm talking about

6    attorney/client and work product.

7            **JUDGE RODGERS:**  Anyone have anything else to add?  Mr.

8    Barr?

9            **MR. BARR:**  Your Honor, I think where we are with it

10   right now is we have gone back through the list, and we've

11   identified a few documents to send over to the Defendants based

12   upon Judge Jones's order.

13           I have sent over to Karl and I believe he has a

14   complete -- it's like 20, 25 documents.  It's not a big list.

15   But we're still in the process of identifying, and we're trying

16   to get that done as quickly as we can.  But Karl has a small

17   set he's looking at right now.

18           **JUDGE RODGERS:**  All right.

19           **MR. GUNDERSON:**  Yes, Your Honor, that's correct.

20   We -- following Judge Jones's ruling, we did an initial pass

21   through the privilege log to sort of identify related

22   documents.  And as part of our production -- *(inaudible)* --

23   shortly after that ruling, produced a number of documents

24   where, based on Judge Jones's order, we removed our privilege

25   claims with respect to those documents.

1    But we did receive from Mr. Barr a small subset of

2    additional documents more recently, and we are working through

3    those.  And hopefully we'll get a response back to Mr. Barr

4    sometime next week.

5         **JUDGE RODGERS:**  Okay, excellent, that's good.

6         Thank you, Judge Jones, for handling it as you have

7    with the sampling.  It sounds like that has worked, and the

8    parties are moving along without delay due to those issues, so

9    thank you.

10        As indicated -- I'm getting a little bit off script

11   here, but as we've discussed, I've set a deadline for

12   government discovery and corporate discovery of September 1st.

13        I have directed the Defendants, because most of these

14   witnesses are Defense-requested witnesses, with the military --

15   let me start with that, with the military witnesses.  To the

16   extent they're former employees, I have directed the Defendants

17   to move forward with those depositions without any further

18   delay.

19        And I will communicate that to the appropriate

20   governmental officials that that's my position on the former

21   employees, with one exception that I discussed with counsel

22   regarding any former employee that counsel believes may be

23   asked to give testimony under oath and offer an expert opinion

24   that I be made aware of any such witness before such time as

25   counsel reaches out and contacts that person and tries to

1    schedule that deposition.

2            But straight former employee fact witnesses I've asked

3    the parties to move forward with and provide courtesy notice

4    through the notice of deposition to Ms. Snead and Maj. Kim.

5    They're free to be there, attend the deposition, but we can't

6    afford the take the time -- we haven't even heard back on 29 --

7    the parties haven't heard back on 29 of those witnesses who are

8    the subject of *Touhy* requests, so we're going to move forward

9    with those.  Now, current employees, different story.

10           Mr. Aylstock?  I apologize.

11   **MR. AYLSTOCK:**  No problem, Judge.  Just a point of

12   clarification.  Back in chambers we discussed this deadline

13   being for group A as opposed to being an overall --

14           **JUDGE RODGERS:**  Right, we did.  But I will talk with

15   you all further about additional corporate discovery,

16   additional military discovery once you come up with your plan

17   for sequencing of the other groups.  We'll need to have more

18   discussion about that.

19           **MR. AYLSTOCK:**  Yes, Your Honor.

20           **JUDGE RODGERS:**  But my focus today in this case

21   management conference is to get that group A, those six cases

22   in a posture to move forward to an April trial date.

23           **MR. AYLSTOCK:**  Thank you, Judge.

24           **JUDGE RODGERS:**  Now, as to -- I did want to bring up

25   the corporate discovery, though.  So, between now and September

1     1st -- you mentioned this morning that there had been a trip to

2     -- was it Mexico?

3               **MR. AYLSTOCK:**  Not a trip, Judge.  There were some

4     depositions related to the Mexico TJR that assembled these

5     plugs and the testing --

6               **JUDGE RODGERS:**  Glad to hear it wasn't a trip.

7               **MR. AYLSTOCK:**  Yes, Judge, it was a Zoom deposition,

8     two of them.

9               **JUDGE RODGERS:**  So you mentioned potential additional

10    discovery.  Have you all met with Judge Herndon about what the

11    scope of what you're contemplating between now and, now that

12    you know, September 1st?

13              **MR. AYLSTOCK:**  Your Honor, the issue of the Mexico

14    unit did come up before Judge Jones, actually.

15              **JUDGE RODGERS:**  Right, I remember that.

16              **MR. AYLSTOCK:**  We have not specifically discussed it

17    with Judge Herndon what remains to be done.  But Judge Jones

18    did give us guidance on that and indicated that, because at the

19    time we were all kind of in the dark about what custodians were

20    down there, he ordered one and said to revisit the issue.

21              So we intend, now that these depositions are done, now

22    that we have some clarity, get some additional custodian

23    requests.  We're still waiting on production of documents from

24    custodians.  And Mr. Buchanan can speak about where we are with

25    the TAR and additional productions there and what remains to be

1    done.

2           We're anxious to be done as well.  Obviously, our

3    focus has been on the military -- military plugs as opposed to

4    consumer, and we're certainly focused on getting --

5           **JUDGE RODGERS:**  Do we have any consumer use in the

6    first trial -- A group?

7           **MR. AYLSTOCK:**  No.  In none of the bellwethers were

8    there consumer plugs.

9           **JUDGE RODGERS:**  Oh, that's right.

10          **MR. AYLSTOCK:**  So all of our focus really has been on

11   the military except as it related to the government contractor

12   defense and how consumer use obviously affects that.

13          **JUDGE RODGERS:**  That's a good example of your need to

14   continue with some corporate discovery after we at least get

15   into group A and maybe even other groups, if they're all

16   military.  So that would be outstanding, but I would prefer

17   that we not take the time to do that right now.

18          And we can have more discussion about this and I can

19   hear from 3M.  But that would be the kind of thing I would say

20   let's not get distracted with right now because all we're

21   dealing with is 24 -- six and then six, six, six -- but 24

22   military plaintiffs, and it's all we can do to find the time

23   and the energy to get those cases tried.

24          **MR. AYLSTOCK:**  I can assure you we're very focused,

25   Judge.

1        **JUDGE RODGERS:**   Thank you.   I know you are.

2        **MR. GUNDERSON:**   Your Honor, just on that point

3   quickly, you know, Defendants would like to be heard on the

4   scope of discovery completed to date at some point in the

5   future, again, with the focus being on trial group A and

6   perhaps -- *(inaudible)* --

7        **JUDGE RODGERS:**   Mr. Gunderson, I don't believe you

8   were -- or maybe you were on the phone on the leadership

9   preconference meeting.   I've set a deadline.   And so the

10  Plaintiffs are going to have to be completed with their

11  corporate discovery by that September 1st deadline for these

12  first group of cases.

13        To the extent the Plaintiffs want to expand or reopen

14  -- we'll call it global discovery, same with you all in the

15  military for group B, C, or D cases, I'm going to hear from

16  both sides about that.   So just -- we're not there yet.

17        Is that what you want to address now or are you just

18  addressing the -- you want to address group A?

19        **MR. GUNDERSON:**   No.   Apologies, Your Honor.   I just

20  wanted to point out that, you know, one of the custodians Judge

21  Jones ordered us to add in March was added to fill a gap on the

22  consumer side.   So this isn't -- I just wanted everyone to be

23  on the same page that it's not as if the consumer side has been

24  ignored in discovery to date -- *(inaudible)* --

25        **JUDGE RODGERS:**   I see.   And that's fine.   I just don't

1    think this will be the time to begin an exhaustive or extensive

2    discovery into the sort of consumer side of the litigation

3    right now.

4           But, Bryan, if you all disagree and think there's an

5    urgency or a timing issue and you want to be heard on that, and

6    I'll hear from 3M in response -- or Judge Jones can, since he's

7    the one that heard this issue with regard to the custodian

8    we're talking about, then we can get that in front of him, if

9    need be.  I'm speaking more generally.

10          The next item -- we did not discuss this in the

11   preconference meeting, Item No. 4 on the agenda.

12          Mr. Fields, you're identified by 3M as the attorney to

13   discuss this.  It is in regards to a proposed choice of law

14   committee, subcommittee.

15          **MR. FIELDS:**  Yes, Your Honor.  Can you hear me?

16          **JUDGE RODGERS:**  Yes.

17          **MR. FIELDS:**  Okay.  Your Honor, we did put this on the

18   agenda.  Originally the genesis of this was, when we were

19   discussing with the Plaintiffs the schedule for the bellwether

20   discovery and the pretrial schedule, we had suggested that we

21   have dates by which the Plaintiffs would identify which state's

22   rule of law or which jurisdiction's law they believed applied

23   to a given case or to claims within a case.  I was not able to

24   reach agreement on that.  But what we are really focused on is

25   what could be some pretty thorny choice of law issues.

1          As the Court knows, in any MDL proceeding choice of

2     law issues can be quite challenging.  But here I think it's

3     even more challenging.  You know, we have a statute that

4     arguably could apply -- if you had an individual who was

5     injured at one military base, and only one military base, in a

6     state, then there's a federal statute that arguably could be

7     used to say that only that state's law would apply.

8          But that statute likely would not apply in most, if

9     any, of the cases here, because you likely have individuals who

10     were stationed at different military bases over different time

11     periods, in different states, and also overseas.  And so, at

12     some point, we are going to have to figure out what state's law

13     or what laws apply to a given case or a given claim.

14          And so, it's -- as the Court knows, generally for

15     cases that were transferred to the Northern District of

16     Florida, you would apply the choice of law principles from the

17     transferor case.  In those cases that were permitted to be

18     direct-filed in the Northern District of Florida, I think the

19     argument would be that you would apply the choice of law

20     principles of the state where the case could have been filed.

21          We know that, in general -- and there are some nuances

22     that the states, when they're trying to figure out the choice

23     of law to be applied to either the claim or the case, they fall

24     in two general buckets.  Some use sort of place of injury.

25     Some use what state's law or state has the greatest interest in

1   the dispute.

2          But, again, we have a complicated situation here,

3   because we have people over a variety of years who were moving

4   over, you know, multiple jurisdictions, and I assume many of

5   them will say that they were wearing the earplugs in multiple

6   locations.  And so, it does become a complicated issue, and we

7   believe that that issue should be dealt with sooner rather than

8   later.

9          And one of the reasons for that is, obviously, the

10  different states have -- may have different affirmative

11  defenses that may be relevant.  And so one of the things that

12  we would like to do is not to wait until the end of the

13  discovery period, not to wait until the dispositive motion

14  period to sort of tee up the issue and understand what state's

15  law might apply to a given case.

16         Now, it may be that the Plaintiffs would suggest that

17  the law of a given state applies, we look at it and we say we

18  agree.  But, on the other hand, there could be some really

19  significant issues and need to get resolution of that, and we

20  think that that should be something that is resolved sooner

21  rather than later.

22         Since we couldn't get agreement for a time -- a

23  deadline for Plaintiffs to at least identify what they believe

24  to be the law that would govern a given claim or case, what we

25  suggest is to create a committee that could at least begin the

1    process of moving very expeditiously to discuss these choice of

2    law issues and then tee up any disputes that might arise.   And

3    that's going to be especially true, for example, for the trial

4    group A cases.

5              **JUDGE RODGERS:**   Okay.   Thank you.

6              Ms. Hutson, are you going to respond?

7              **MS. HUTSON:**   Yes, Your Honor.   In terms of forming

8    another committee on the choice of law issue, as you well know,

9    we're about to take plaintiffs' depositions, and the

10   information that we gain in those depositions will guide us and

11   help us to determine what the options are in terms of choice of

12   law.

13             In addition to that, we have ongoing discovery in

14   terms of distribution points and manufacturing points which

15   could also widen the options of choice of law.   I do believe

16   now is premature because we just don't have that discovery

17   completed yet.

18             In terms of an extra committee, you appointed a very

19   robust leadership for the Plaintiffs' side, and we do have a

20   law and briefing committee -- they're doing an excellent job --

21   and we have a discovery subcommittee.

22             What I would propose, as opposed to adding yet another

23   committee, would be that, when it's ripe, which it's not now,

24   but when it is, the Defense tell us who their point person is

25   on this, and we will have our law committee and discovery

```
 1    subcommittee working together, and then we can discuss these
 2    things.
 3            I do agree that there will be cases -- this is a
 4    simple issue that we can agree on the state.  And I also agree
 5    that we should focus on the first six.  But setting a deadline
 6    now when we're in the throes of discovery, it's just not ripe
 7    yet.
 8            Perhaps the better way to approach this is for us to
 9    still meet and confer and, as we get this discovery done, if
10    there's a plaintiff or two, or whatever the number is that we
11    agree to, then we wind down and figure out which ones can we
12    not agree to, and then we ask for court intervention at that
13    time.
14            But setting a deadline when we don't even have the
15    discovery, and this is usually part of dispositive motion
16    discovery or practice.  And so we would, again, not think that
17    a committee is necessary.  And I don't believe a deadline can
18    be made right now because we're in the throes of the very
19    discovery that's going to speak on that issue.
20            JUDGE RODGERS:  Thank you.
21            Mr. Fields?
22            MR. FIELDS:  Yes, Your Honor, a couple of -- I may
23    have misheard counsel suggesting that some of this might be
24    simple.  I, you know -- we'll see.  I mean, I think if it were
25    that simple, we would know the applicable law that a given
```

1    plaintiff would want to use.  I think it is much more

2    complicated.

3            I also agree that there may be some information that

4    comes out.  But at the end of the day, this kind of information

5    is not only relevant to the Plaintiffs, it's also relevant to

6    the Defendants.  We need to understand what are the potential

7    affirmative defenses that might apply.  And that's why we

8    suggested that we get some -- at least a preliminary view from

9    the Plaintiffs as to what state law they believe applies in

10   these cases.

11           It may be that they find additional information and

12   they can suggest that, well, based on this additional

13   information, it's possible another state's law applies.  But we

14   really should, sooner rather than later, get a better

15   understanding of what jurisdiction's law applies in these

16   cases.

17           **JUDGE RODGERS:**  All right.  Well, I think Mr. Fields's

18   idea is an excellent idea.  So I'm going to ask that -- we

19   don't need a new committee.  We have plenty of committees.  We

20   have a law and briefing committee.  We have a joint statute of

21   limitations committee.

22           And so, Mr. Fields, I want you all and Plaintiffs'

23   leadership to, from within the committee structure that already

24   exists -- and it may be that because the Defendants don't have

25   the same committee structures as exists on the Plaintiffs'

1    side, you may need to add a person or two to the committee.  I

2    would do this within the law and briefing committee.

3            And I can't recall if -- I don't know that there is a

4    defendant lawyer on that law and briefing committee.  There is

5    on the statute of limitations; that's a joint committee.  I

6    don't think law and briefing is.

7            So I'm going to ask that you all dedicate some

8    resources to this in terms of your lawyers.  It doesn't really

9    matter to me who it is.  From the Plaintiffs' standpoint, it

10   might be an opportunity to give some lawyers who haven't had as

11   much opportunity in leadership for time, might be a good

12   opportunity to give them time.  But it's not too early to start

13   talking about this.

14           Mr. Fields is right, you all can add, supplement,

15   change.  I'm not going to hear motions on it.  But, frankly, I

16   would like -- at least starting with the first six, I would

17   like to have a chart -- you all can put together a chart for us

18   in regards to each of these plaintiffs and the choice of law

19   issues as you see them right now.

20           They may change, I understand that.  No one is going

21   to be tied to anything.  There's no risk of any prejudice here.

22   But I agree with Mr. Fields, it's a good time to start talking

23   about these issues.

24           I hope that they're simple.

25           **MS. HUTSON:**  I do, too, Your Honor.  We will

1    definitely meet and confer further with the Defense on this.

2              **JUDGE RODGERS:**  Thank you.

3         **MR. FIELDS:**  Thank you, Your Honor.

4         **JUDGE RODGERS:**  I'll look forward to hearing back from

5    you all on some proposal for this.

6         **MS. HUTSON:**  Okay.

7         **MR. FIELDS:**  Understood, Your Honor.

8         **JUDGE RODGERS:**  There was a Motion to Compel that was

9    filed and then withdrawn.  That withdrawal was at my request,

10   and I appreciate Mr. Nomellini doing that.  It was based on

11   some discussions that I was having with the government.

12             And this was without prejudice to 3M refiling the

13   motion to compel after the DoD gives their formal letter

14   responses to some of the pending *Touhy* requests.  Hopefully

15   that will narrow the issues.  I think I've already narrowed one

16   of the major issues in the motion to compel, or eliminated

17   maybe, which had to do with the former employees and getting

18   those depositions taken.

19             So, again, Mr. Nomellini, thank you for your

20   cooperation.

21             **MR. NOMELLINI:**  Yes, Your Honor.

22             **JUDGE RODGERS:**  The next item relates to what I was

23   just referring to as far as government discovery, but it was an

24   expansion of Judge Herndon's role.  It was a proposed order.

25   And I'm all for expanding Judge Herndon's role.  I think he's

 1    been extremely helpful to me.  From my vantage point, he's been
 2    extremely helpful to you all, both sides.
 3              I just don't know, though -- or I have my doubts that
 4    the DOJ and the DoD -- and they, respectfully, I'm sure, but
 5    that they are going to accept Judge Herndon's help in terms of
 6    getting that discovery moving further, particularly the
 7    depositions.
 8              So, what I have done is I've tabled that order.  It's
 9    never far.  I'm ready to enter it.  But I would like to wait
10    and see how the DoD responds to some of these issues.
11              Now, that doesn't mean -- I mean, I think it's a good
12    idea, and I'll speak to Judge Herndon about this later today,
13    but it is a very good idea to work with him -- as I've already
14    indicated, I want you to work with him to get these depositions
15    calendared and scheduled.
16              And whether you all -- I always think it's a good
17    idea, with this many lawyers and this many depositions to take,
18    that you set blocks of time.  But I'll let you work with Judge
19    Herndon to get the depositions that you all want to take, both
20    sides, scheduled so that they can be taken in advance of that
21    October 9th completion date.  But we'll, again, just defer
22    entering that order until we hear further from the government.
23              Judge Herndon, anything you'd like to add?
24              **JUDGE HERNDON:**  No.  I share your skepticism about the
25    government accepting my help.

1          **JUDGE RODGERS:**  Is that on?  Try it again.

2          **JUDGE HERNDON:**  Does it work now?

3          **JUDGE RODGERS:**  Now, yes, okay.

4          **JUDGE HERNDON:**  I share your skepticism about the

5     government willing to accept my help.  But I'm happy to work

6     with the parties on coordinating the depositions, and we should

7     be able to do that.

8          **JUDGE RODGERS:**  Very good.  Thank you.

9          Judge Jones, anything from you at this point?

10         **JUDGE JONES:**  Not on this issue.

11         **JUDGE RODGERS:**  But maybe the next issue, which I'm

12    going to jump to Item No. 8, which is substance abuse and

13    medication issues.

14         Mr. Brock, you've been identified on the Defense side

15    as someone to address this issue.  I'm not sure who will

16    address it on the Plaintiffs' side, but I'll hear from you

17    first and then I'll hear from the Plaintiffs.

18         **MR. BROCK:**  Thank you, Your Honor.

19         **JUDGE RODGERS:**  And I'm very interested in where this

20    stands.

21         **MR. BROCK:**  The Plaintiffs have provided to 3M a list

22    of medications that they are redacting from the medical

23    records.  It's a list of about 135 or so medicines.

24         For most of those -- and they're objecting on the

25    basis, I think, that the medicines that they are identifying

1    could not be causal to hearing loss or tinnitus.  I think

2    that's the basis for the objection.

3            We have responded to the Plaintiffs identifying the

4    medicines that we think do contribute to hearing loss and

5    tinnitus.  For some medicines the evidence would show that it

6    contributes to both.  For some medicines it's limited to

7    tinnitus only.

8            And the basis for the list that we have identified

9    that they should produce to us that they tell us they are

10   withholding comes from our consultants who have helped us with

11   some literature, it comes from review of some of the

12   associations who track these things, like the American Tinnitus

13   Association.

14           So, for everything we're asking for in terms of the

15   production we have a good faith basis for saying that the

16   information should be produced.

17           I don't think they're necessarily being consistent

18   across all cases about what they're redacting, but it includes

19   things even like NSAIDs, nonsteroidal antiinflammatory drugs.

20   But there are articles all over the place about how those

21   medicines can contribute to tinnitus and to hearing loss, so

22   I'm not optimistic that we're going to come to agreement.  We

23   may.  But I think we should have a process in place by which we

24   get this resolved.

25           Many of the medicines that are identified are relevant

 1    not only to the issue of hearing loss and tinnitus, but they're

 2    also related to other issues like loss of enjoyment of life,

 3    consortium claims, lost wages.  So we need to get resolution to

 4    the issues.

 5         **JUDGE RODGERS:**  Can I ask, do the -- and I'll hear

 6    from the Plaintiffs, but is there any consensus on any

 7    medications being ototoxic?

 8         **MR. BROCK:**  Because I don't know every medicine that

 9    is identified in every medical record, I don't know the answer

10    to that.  There are some medicines they --

11         **JUDGE RODGERS:**  No, I mean based on your --

12         **MR. BROCK:**  -- may have decided could be --

13         **JUDGE RODGERS:**  I'm just asking, based on your

14    communications with the Plaintiffs, has there been any

15    agreement that, yes, this medication is ototoxic, we agree --

16         **MR. BROCK:**  I think everyone agrees that IV

17    antibiotics in certain categories like gentamicin are ototoxic.

18    I think there are some universal statements that could be made

19    that would be like that.

20         But I think for things like, you know, acetaminophen,

21    Aleve, other medicines like that, I don't know the basis for

22    Plaintiffs objecting to those, whether they -- you know, I

23    don't know what that basis is at this point.

24         But as we talked about, I think if we get into a

25    process now of trying to litigate these medicines one by one in

1    terms of making a determination as to whether there would be

2    admissible evidence or whether we would even offer evidence of

3    some of these things, this is not the time for that.  That

4    would take forever.

5            What we'd like to do is get the medicines.  For many

6    of these we don't even know which plaintiffs they apply to.  So

7    a plaintiff's condition is going to be relevant, other

8    medicines the plaintiff is taking is going to be relevant.  And

9    these are things that our consultants are saying that we should

10   be looking at, they are medicines for which there should be an

11   analysis that excludes them as being causal.  If the

12   Plaintiffs' experts are looking at the case, it's information

13   that they want to look at in order to understand the full

14   history of the plaintiff.

15           **JUDGE RODGERS:**  Okay.  Thank you.

16           Mr. Aylstock?

17           **MR. AYLSTOCK:**  Well, I don't think Mr. Brock was in

18   the meet and confer, so I think he's got a misapprehension of

19   what happened.

20           About a week ago, consistent with the Court's order,

21   we provided a list of all the medications -- and not all of

22   them are being withheld but we wanted to know --

23           **JUDGE RODGERS:**  What do you mean by "all the

24   medications"?

25           **MR. AYLSTOCK:**  The medications that were identified

1    for the bellwether clients.  Because they asked, look, why

2    don't you give us the list of medications and we'll tell you

3    what's ototoxic so we don't have to come up with our own list.

4    We said, okay, we'll do that.  So that's what we did.

5           And then last night at I think almost nine o'clock

6    last night, for the first time we got, okay, here is their

7    list.  And their list, frankly, we're going to our experts to

8    figure out which ones we can agree to or not.

9           I don't disagree with Mr. Brock that some IV

10   antibiotics, if given in the right dosage, can be ototoxic.

11   And NSAIDs, as I understand it -- and I'll certainly talk to my

12   experts and maybe we'll have an agreement.  But taking an

13   aspirin is not ototoxic.  It has to be in doses that are way

14   over and above what anybody typically takes.

15          So, the meet and confers have not been -- well, we

16   haven't really had a chance to meet and confer over this

17   because we didn't get it until 8:30 last night.

18          **JUDGE RODGERS:**  Right.  Well, we were here 30 days ago

19   and had this -- and I don't feel like we've moved very far from

20   where we were 30 days ago.

21          **MR. AYLSTOCK:**  And that was because in the meet and

22   confers what was asked of us and what we did is, why don't you

23   provide the list of medications for all of them.  And it's not

24   even that we're withholding all of them.  We just produced --

25   we went through and took the hard task of going through for

1   both the redacted and unredacted, here is all the medications

2   that we're aware of for all 25, why don't you look at those so

3   you don't have the universe of every drug or everything that's

4   ototoxic and tell us what's ototoxic.

5       And then, I guess, six days later, last night we get

6   the list.

7       **JUDGE RODGERS:**  I appreciate the efforts that y'all

8   are making.  This is definitely a very important issue, no

9   question about it.  That's why I said I was very interested, I

10  was 30 days ago, I still am.  I can see -- if it's not

11  resolved, I can see this as something that would certainly slow

12  down the litigation.

13      So I'm going to do what I was considering doing and

14  spoke about doing at the last CMC, I'm going to have a science

15  day.  I'll call it a science day, medication day.  You're going

16  to come here with your -- and we could do it by Zoom.  I'd

17  rather do it in person but -- or not Zoom but our video

18  bridging.  We can talk about the logistics later.  But I'm

19  going to ask you to bring your leading consultant on this.

20      Now, if you don't want to share with the other side

21  what your expert or your consultant is telling you, I can hear

22  from each side separately.  And Judge Jones and I can do this

23  together and make a decision about what is discoverable.

24      Because I know this is not about admissibility, Mr.

25  Brock, but it's also not about a fishing expedition either.

1    There's a middle ground, and I'm going to find it and give you

2    the direction you need to go forward.  Because I don't see that

3    you all are going to come together on this, and I do see it as

4    a very important issue in the litigation.

5            **MR. BROCK:**  Right.  And if I've misstated the status

6    of things, I apologize.  My understanding is that the list that

7    we received from Plaintiffs -- and this is what we said in our

8    letter to them last night -- are the substances that were

9    redacted.  My understanding was that the list we received from

10   Plaintiffs were a list of medicines that had been redacted.  So

11   that's where I am on that.

12           I think, if Your Honor would consider it, our

13   preference would be to make -- I'd like to talk to our team,

14   but I think our preference would be to make an in camera

15   submission to Your Honor that we could do pretty efficiently in

16   terms of identifying access to articles of lists that have been

17   generated by the American Tinnitus Association.

18           **JUDGE RODGERS:**  I don't mind doing that, Mr. Brock,

19   but I want to be able to ask questions of your consultant.  So,

20   again, we don't have to do this together.  I can do this with

21   your side separately and then with the Plaintiffs' side

22   separately.  But I don't want to just read a bunch of articles

23   on ototoxic medications.

24           **MR. BROCK:**  Okay, that's fine.

25           **JUDGE RODGERS:**  I'm thinking about doing this either

1    in connection with or before -- and I'll let you all meet and

2    confer and let me know what you want to do, but at the latest

3    at the time of the next CMC, which is July 29th.  You all have

4    been talking to your consultants or experts about this, I'm

5    sure, for some time.

6          **MR. AYLSTOCK:**  We'll be ready, Your Honor.  And there

7    may be some we can take off the table, and we're happy to meet

8    and confer.

9          **JUDGE RODGERS:**  Okay.  Well, you all, again, meet and

10   confer and present to me -- I'd like to know by next Friday how

11   you would like to go forward with this.  Separately?  Do you

12   want to have your consultant here in person?  Do you want to do

13   it by video?  Do you want to do it before the CMC?  Do you want

14   to do it at the CMC but yet separately?  We can do it following

15   the CMC next time.  But I want to take care of it.

16         **MR. AYLSTOCK:**  Yes, Judge.

17         **MR. BROCK:**  That's fine.  And there would be some

18   medicines for which we would say they are potentially relevant

19   and discoverable for some of these other issues.  They may not

20   be ototoxic to the extent that they cause tinnitus or hearing

21   loss, but they might be relevant to other issues in the

22   litigation, so we would look to identify those also, though it

23   would be more of a generic sort of presentation to the Court

24   about this is why we think this could be relevant.  It's going

25   to depend on the case.

1          I mean, I agree that taking aspirin on Tuesday -- one

2     aspirin is not likely to cause toxicity.  There is a dose and

3     duration component.  But there are with many of the medicines

4     reports in the literature of the use of certain both legal and

5     illegal substances where hearing loss has occurred immediately.

6     There are reports in the literature of that.

7          So it doesn't mean that it happened in every case, but

8     it does mean that it's in that category of material that we

9     believe would be discoverable.

10          **JUDGE RODGERS:**  This would be my preference is -- and

11     we can do it one of a couple of different ways.  We can handle

12     it like science day where you each make a presentation with

13     your expert or your consultant, it is nonadversarial, or we can

14     do it in a more formal way where there's cross-examination, you

15     can question the consultant or the expert.

16          My interest, first and foremost, is being able to ask

17     the expert questions based on whatever presentation you make.

18     Certainly, if you're not going to ask questions or

19     cross-examine them, I want to be able to at least ask questions

20     that I have.

21          And then I'd like to hear argument on this issue also,

22     the nonototoxic basis for you wanting to discover information

23     about certain medications in certain cases.

24          And I would also -- before that time I would like to

25     have -- I don't know if this is possible, but I would like to

1    have some information about the six plaintiffs and why this is

2    relevant as to those plaintiffs, or you can tell me at the

3    presentation as well.

4         **MR. BROCK:**  Well, from our side, because I think

5    medicines have been redacted, I don't know that we know which

6    medicines are connected to the respective plaintiffs, if my

7    understanding is correct.  In other words, I couldn't make an

8    argument about a medicine I don't know if a plaintiff has taken

9    or not.

10        **JUDGE RODGERS:**  That's fair.

11        **MR. BROCK:**  And I do think, Your Honor, we're now

12   talking about really moving into the area of taking testimony

13   about like admissibility, which we're not at that point.

14        **JUDGE RODGERS:**  I didn't say we were going to take

15   testimony.  I said if you all met and conferred and that's how

16   you wanted to handle it, we would take testimony.  Otherwise,

17   it's an educational opportunity for the Court.

18        **MR. BROCK:**  Okay, we'll talk about it.  Thank you.

19        **MR. AYLSTOCK:**  For the Court's information, only two

20   of the six have redacted medications issues out of the first

21   six.

22        **JUDGE JONES:**  Could I ask one question?

23        **JUDGE RODGERS:**  Yes, Judge Jones.

24        **JUDGE JONES:**  I'm wondering how all of this, depending

25   on how the Court views the issue, is going to impact the

1    plaintiffs' depositions.  Because what we don't want to happen

2    is some or all of the medications become relevant and you've

3    already deposed the plaintiff or it's so close to the

4    plaintiff's deposition it impacts the ability of Defendants to

5    do that.

6         Because what I'm hearing the parties saying is,

7    certainly with some of these medications it's all going to come

8    down to how much -- you know, what was the dosage and what was

9    the usage, whether you're talking about nonototoxic drugs or

10   drugs that, as Mr. Brock says, might impact other issues.

11        You know, if someone -- let's just hypothetically say

12   the use of cocaine the Defendants are going to say impacts

13   hearing loss and someone used cocaine 11 years ago one time,

14   we're really wasting our time getting into the issue.

15        If the drug is used, significant dosage over an

16   extended period of time, maybe then it does become more

17   relevant.  And that's going to impact, I assume, questioning of

18   particular plaintiffs during their deposition.

19        So what I'm suggesting is maybe we need to address

20   this issue sooner than at the next CMC, if that's going to

21   impact the taking of plaintiffs' depositions.

22        **JUDGE RODGERS:**  Good question.  And I had the similar

23   thought, but I guess I was thinking it was more of an expert

24   issue, these records are going to -- I mean, the use of the

25   meds and the dosage is going to be reflected in the records.

1     But Judge Jones has a good point, you may want to ask the

2     plaintiffs about illicit drugs.

3            **MR. AYLSTOCK:**  It is an excellent point.  It also

4     relates to some temporal issues.  If whatever allegedly

5     ototoxic drug didn't happen until well after the hearing loss,

6     that's a very different issue.

7            So, perhaps -- just throwing something out there --

8     for the two we could address it with Judge Jones or Your Honor

9     in a particular context.

10           In the meantime, if it's going to affect their

11    deposition, perfectly willing to do the expert presentation as

12    well.  However Your Honor would like to do that.  But it is

13    only two of the six.

14           **JUDGE RODGERS:**  That you have redactions for?

15           **MR. AYLSTOCK:**  Yes, Your Honor.

16           **MR. BROCK:**  If that's the case, it may be that we

17    don't have a full 140 some-odd medications that are at issue.

18    It may be fewer than the list that we have investigated, it may

19    well be, and we will meet and confer about that.

20           My suggestion about science day would be, at this

21    point, not to delve into the issue of usage or dose or time

22    frame, but rather to focus on the issue of whether or not the

23    medication at issue has a tendency, propensity to cause or

24    contribute to hearing loss, is it one of the things an expert

25    would be interested in knowing about in terms of understanding

1    the history of the plaintiff.

2            **JUDGE RODGERS:**  But if they only did that at a certain

3    dosage over a certain period of time and your expert agrees

4    with that --

5            **MR. BROCK:**  But I think that's one of those things

6    that it's almost impossible in the context of, you know,

7    experts who have not formed their opinions about specific cases

8    yet.  I mean, I don't have experts who are ready to testify in

9    case-specifics about what their opinion is on the cause of

10   hearing loss.  We are collecting these records in order to get

11   them to the experts so they can tell us the answers to those

12   things.  Are there some broad parameters around dose and

13   duration for some things?  Yes.

14           **JUDGE RODGERS:**  Well, and they can tell us that when

15   they come.  I'm not going to restrict the scope of my inquiry

16   on this.  We don't need to -- I'm fine not to have an

17   evidentiary hearing, and they don't need to be placed under

18   oath, and there's not going to be any motion pending, and

19   admissibility is not the issue.

20           **MR. BROCK:**  Okay.  Well, I'm hopeful --

21           **JUDGE RODGERS:**  But relevance is always --

22           **MR. BROCK:**  -- that, from what I've heard today, that

23   the list is not 140 medicines.

24           And I do think the other thing that's not clear to me,

25   if we could get the Plaintiff to clarify, is that, if there are

1    any illegal substances that are referenced in the records that

2    have been redacted, we would like to know that, too.  As far as

3    I can tell from the list that I have, these all appear to be

4    prescription medicines.

5            **JUDGE RODGERS:**  Okay.  You said you had redacted

6    records for two of the six plaintiffs?

7            **MR. AYLSTOCK:**  Yes, Your Honor.

8            **JUDGE RODGERS:**  And as far as illicit drug use,

9    illegal drug use, if you've done that, that would be for those

10   two as well, or have you redacted from the others for illegal

11   drug use?

12           **MR. AYLSTOCK:**  Your Honor, 12 of 24 have redactions in

13   total.  Some of them may have some reference of illegal drug

14   use in their past at some level.  Some may have, again, where

15   the temporal relationship has nothing to do with this case.

16   But 12 of the 24 in total have redactions.

17           **JUDGE RODGERS:**  All right.  I'm going to talk to Judge

18   Jones about this offline, and we'll get back with you on how we

19   want to proceed with a presentation and with the redactions.

20   It sounds like that needs to get in front of somebody, so one

21   of us.  Let us talk about it.  You all confer again on the

22   medications.

23           And then, with regard to the excellent point Judge

24   Jones just raised about the timing of this science day

25   presentation in relation to the plaintiffs' depositions, do you

1   all agree -- Mr. Brock, do you agree this needs to be done in

2   advance of that, or is that not important to you?

3          **MR. BROCK:**  Well, it is important, and I do think we

4   need to move as quickly as we can.  If you could just give us

5   leave until Monday to talk a little bit about timing because I

6   don't actually have a witness selected or availability for

7   that.  I'd like to talk to the Plaintiffs a little bit, too,

8   about the structure of the process, whether that's something

9   where everybody is present or each side comes in and makes a

10  presentation to Your Honor.  So I'd like to talk to my team a

11  little bit about that, too.

12         If we could have maybe until the end of the day Monday

13  to get organized and we can do some checking on the weekend,

14  maybe Tuesday morning, if that's even okay, just to give us a

15  day and we could get back to you.

16         **JUDGE RODGERS:**  Okay.

17         **MR. AYLSTOCK:**  I think the first deposition, Your

18  Honor, is July 22nd or 23rd.  I think it might be Mr. Rowe that

19  may have an issue of redaction.  And then I think he's going to

20  be out for the remainder of that week.

21         **JUDGE RODGERS:**  So he is one of the redactions?

22         **MR. AYLSTOCK:**  Yes, Your Honor.

23         **JUDGE RODGERS:**  Tuesday noon you all get back with us

24  on this after you've talked further about it, and Judge Jones

25  and I will talk as well.

1             Judge Jones, anything else?

2             **JUDGE JONES:**  No, thank you.

3             **JUDGE RODGERS:**  Okay.  Let's move to TAR.  I believe

4    Mr. Buchanan and Ms. Six are going to address TAR.  Let me

5    start with Mr. Buchanan.

6             Give us an update from your perspective, and then I'll

7    hear from Ms. Six.

8             **MR. BUCHANAN:**  Your Honor, I think we reported at the

9    last CMC or the leadership conference that the parties had done

10   their elusion test, had reviewed those documents to determine

11   the extent to which the documents that had not been reviewed in

12   the TAR corpus contained responsive or nonresponsive materials.

13            The parties didn't entirely see eye to eye on those

14   responsiveness and nonresponsiveness calls.  But the indication

15   to both sides was that there are additional materials in the

16   unreviewed TAR corpus, about 8.3 million documents in the

17   unreviewed corpus that would be responsive to requests.

18            We have spoken, and Plaintiffs made a proposal to the

19   Defense how to address that unreviewed portion and supplemental

20   TAR review that's now with Ms. Six and the defense counsel.  We

21   understand they're with their consultants and expect to get

22   back to us on Monday.

23            **JUDGE RODGERS:**  Mr. Buchanan, when was that submitted

24   to the Defendants?

25            **MR. BUCHANAN:**  I think it was the mid to last -- we

1    had been discussing it in our oral discussions throughout the

2    month of June.  The elusion review and meet and confers went on

3    throughout that process.  And the Defense has it.  I think they

4    got back to us with a markup on Tuesday, we flipped back a

5    markup on Wednesday or Thursday morning, and we await their

6    further comments on that proposal.

7              **JUDGE RODGERS:**  Okay, thank you.

8              Ms. Six?

9              **MS. SIX:**  Good morning, Your Honor.  I would just --

10   correct, I think that Defendants actually took the pen and

11   drafted that supplemental TAR proposal and sent it over to

12   Plaintiffs at the beginning of the week.  So we are both

13   working diligently to try to figure out what, if anything,

14   needs to be done to supplement the existing model.

15             As Your Honor knows, Defendants used TAR -- they used

16   the TAR algorithm to identify potentially responsive documents

17   at Plaintiffs' request, and that model was jointly trained by

18   both parties.

19             So, at the end of the elusion test, as Mr. Buchanan

20   stated, the parties did not totally see eye to eye on the

21   number of relevant documents that had been gathered by that

22   sample.

23             And so, I think what we want to do, because TAR works

24   best when it's a collaborative process, and as Your Honor also

25   knows, the parties worked collaboratively and together to

1    create that TAR model.  So, I think what we want to do is

2    figure out if there's any way to supplement or adjust the model

3    as needed to identify any relevant documents that may have been

4    missed.  Because both parties want to find those documents,

5    Your Honor.

6              **JUDGE RODGERS:**  So, in whose court does the ball rest?

7              **MS. SIX:**  We have Plaintiffs' markup of the draft

8    proposal, and we are running it by our technical advisor,

9    because I think both sides have engaged their technical folks

10   to help with the more tech savvy parts of the protocol.  And we

11   will be hopefully meeting and conferring with Plaintiffs on

12   Monday.

13             **JUDGE RODGERS:**  All right.  Thank you.

14             Judge Jones, anything you want to add, understanding

15   the corporate discovery cutoff now is September 1st?

16             **JUDGE JONES:**  No, other than the comment I'm not

17   surprised that there might be a little bit of a different

18   viewpoint in what's relevant that was missed that the parties

19   didn't see eye to eye on that.

20             But the fact that, as Ms. Six points out, it is a

21   collaborative process, hopefully the parties, if you need to

22   tweak the learning on the TAR model, you'll be able to do it.

23   But if you get to the point where you just don't agree on that,

24   that is an issue I think that needs to be teed up and presented

25   to the Court very quickly.  Because we don't want to be dealing

```
 1    with this issue in late August or mid August.  It's something
 2    we want to nip in the bud right now.
 3              JUDGE RODGERS:  Very good.
 4              MR. BUCHANAN:  Yes, Your Honor.  And frankly, Judge
 5    Rodgers, I've taken your comment to heart in terms of setting
 6    the schedule and completing the discovery for group A.  I'm
 7    sure Ms. Six and I are both trying to process that together
 8    with how the supplemental TAR process could work timely to
 9    satisfy that.  So I think we have some conferring to do on that
10    and, to the extent we have some concern, I'm sure we'll be back
11    to Judge Jones quickly.
12              JUDGE RODGERS:  Okay, very good.  Thank you, thank you
13    both.
14              The next item relates to Defendant interrogatory
15    responses.  Is Plaintiff -- are you expecting a motion to
16    compel in regards to these responses?
17              MR. AYLSTOCK:  We are, Your Honor.  I think Mr.
18    Buchanan was slated to address this.
19              JUDGE RODGERS:  I'm sorry.  Mr. Buchanan, I apologize,
20    you're up again.
21              MR. BUCHANAN:  Yes, Your Honor.  Yes, we do anticipate
22    that there may be a motion forthcoming probably in the next
23    week or so.  We've had a series of meet and confers with the
24    Defense.  We'll seek -- to the extent to which we can further
25    narrow issues, obviously, we'll try to do so.  But we've had
```

1    several rounds of conferral with the Defense.  And to formally

2    close out the Defendants' rog responses, I think motion

3    practice may be required.

4              **JUDGE RODGERS:**  Okay.  I will -- today is the 26th.

5    I'm going to ask that any such motion be filed by July 7th.

6              **MR. BUCHANAN:**  That's acceptable, Your Honor.  Thank

7    you.

8              **JUDGE RODGERS:**  Thank you.

9              The next item on the agenda relates to the general

10   update on discovery and depositions, *Touhy* and 3M witness

11   depositions.  We've talked about this in connection with other

12   agenda items.

13             Mr. Fields, did you have anything more to add to -- I

14   think Mr. Lovejoy was the most recent, the DOE employee, was

15   taken on the 24th.  Anything else to add, Mr. Fields?

16             **MR. FIELDS:**  Just a quick update, Your Honor.

17   Obviously, back in the April or May status conferences, the

18   Court directed us to make three 3M witnesses available in June.

19   We have completed that.  We offered and Mr. Jones was deposed,

20   Mr. Zielinski was deposed, and Dr. Klun deposed.

21             The Plaintiffs have requested another 3M employee Marc

22   Doty.  And we have reached out and we have advised the

23   Plaintiffs that Mr. Doty is available for deposition on July

24   28th or July 30th.

25             As you indicated, Dr. Lovejoy -- I think it's

1    Dr. Lovejoy -- from the DOE was deposed on the 24th.

2              One additional item is the government approved the

3    deposition of a witness, Brian Hobbs.  Last week the parties

4    provided the DoD with three potential dates for his deposition,

5    July 14th, 15th, and 16th, and we're awaiting a response from

6    the DoD.

7              **JUDGE RODGERS:**  Is Mr. Hobbs a current or former

8    employee?

9              **MR. FIELDS:**  I believe he is a current employee, but

10   I'm not certain, Your Honor.  I know Mr. Stevens was a former

11   employee, and at that point the Government said that we would

12   need to reach out to him, or at least said they were not going

13   to make him available via *Touhy*, and so we'll have to obviously

14   deal with that on a separate track.

15             **JUDGE RODGERS:**  Okay.  Plaintiffs, is the 28th or the

16   30th, one of those dates going to work for you for Mr. Doty?

17             **MR. AYLSTOCK:**  We believe so, Your Honor.  We received

18   the date late yesterday, so we're trying to figure out

19   scheduling, but we anticipate accepting one of those two dates.

20             **JUDGE RODGERS:**  Okay.  Sounds good.

21             You all -- I've asked for a calendar of depositions,

22   and I think when I brought that up earlier we were focusing on

23   case-specific depositions on the Defendants of the plaintiffs,

24   but really I'd like to see just a broad comprehensive calendar

25   for all the depositions.

1          **MS. HUTSON:**  We can get that to you, Judge.  We keep

2     it in-house.

3          **JUDGE RODGERS:**  Thank you.

4          Mr. Fields, back to you again.  What were the dates --

5     the 14th and then there were two others as far as Mr. Hobbs?

6          **MR. FIELDS:**  July 15th and 16th, Your Honor, so three

7     consecutive days that we offered to the government for his

8     deposition.

9          **JUDGE RODGERS:**  And when were those dates offered, if

10    you know?

11         **MR. FIELDS:**  I don't have the exact date, but it was

12    sometime -- I believe it was the middle of last week.

13         **JUDGE RODGERS:**  All right.  Thank you.

14         Now, the last item on the agenda references the need

15    for a deficiency process in place for particularly trial group

16    A, which is the main focus, but then obviously we have the

17    other groups.

18         What are you all talking about in terms of that sort

19    of a process for deficiencies in discovery responses?  I just

20    don't want this to jump up and bite us later.

21         **MR. AYLSTOCK:**  Yes, Your Honor.  There have been now a

22    series of meet and confers with individual plaintiff's counsel

23    along with leadership and the Defendants.  It happened earlier

24    this week, and we've now received letters from the Defendants

25    on those, and we're preparing responses to those.  So hopefully

1    we'll be able to narrow the issues.  If not, Defendants have

2    indicated they'll be filing a motion to compel.

3          **JUDGE RODGERS:**  I guess what I'm asking is, do I need

4    to put something formal in place in terms of timing for

5    resolving deficiencies or filing motions?

6          **MR. AYLSTOCK:**  I think that would probably be

7    advisable, Judge.  Some of it relates to some ESI production,

8    which the parties agreed to a July 8th deadline for the ESI

9    production to happen for these.  So that's being worked through

10   as well as continuing with the meet and confers.  So maybe that

11   would be a good deadline.  That would give the Court a couple

12   of weeks before any of the depositions, if there are issues for

13   Your Honor or Judge Jones to resolve.

14         **JUDGE RODGERS:**  So July 8th being the date for a

15   motion to compel by either side for any issue with the

16   discovery response?

17         **MR. AYLSTOCK:**  Yes, Your Honor.

18         **JUDGE RODGERS:**  Okay.

19         Ms. Branscome, I think you were identified as the 3M

20   lawyer to address this item.

21         **MS. BRANSCOME:**  Yes, Your Honor.  This is actually

22   consistent with what Mr. Brock raised earlier, just to give

23   Your Honor a heads-up, that we have been meeting and

24   conferring.  So Mr. Aylstock is correct, we've met and

25   conferred on all six cases.

1              We have asked for definitive responses no later than

2    Monday because we have the same concern about getting these to

3    a place where Your Honor or Judge Jones could adjudicate the

4    deficiencies.

5              And then the concern that we have is that, not only do

6    the disputes need to be resolved, but then the responsive

7    materials, if, you know, for instance, we were successful,

8    would need to be produced in enough time in advance of the

9    plaintiff depositions.  And so, we are fine with having a

10   motion to compel deadline put into place.

11             A couple of concerns.  One, I think Your Honor had

12   indicated perhaps you would have oral responses, and so the

13   issues could be resolved during a hearing.  That might be

14   productive to expedite things.

15             And the other would be to request that the Plaintiffs

16   be prepared, that they have actually gathered the information

17   in the responses such that, if we were to succeed on our motion

18   to compel, those could be produced expeditiously.  Otherwise,

19   we are going to end up with pushed-back plaintiff depositions.

20             I would note that this is another area where we have

21   run into some challenges with Mr. Garcia.  I know we had

22   discussed that separately, and there's a plan in place.  But I

23   just wanted to flag for Your Honor that this is an area where

24   we have met and conferred productively with Mr. Garcia's

25   counsel, but they are not able really to get much information

1    to even provide us a status or in many ways the ability to file

2    a motion to compel other than just it being simply

3    nonresponsive.

4           **JUDGE RODGERS:**  Well, Mr. Garcia will -- that will be

5    brought to a head next week.

6           **MS. BRANSCOME:**  Understood, Your Honor.

7           **JUDGE RODGERS:**  So Item No. 10 and Item No. 12 I guess

8    are both addressed motions to compel on either side for what

9    we'll call deficiencies.  Is that --

10          **MS. BRANSCOME:**  They are, Your Honor.  Item No. 10 is

11   not specific to the bellwether plaintiffs so much.  The urgency

12   behind No. 12 is that we would need to get the issues resolved

13   and the information produced in advance of the plaintiffs

14   depositions.

15          **JUDGE RODGERS:**  All right.  So I'm going to set a date

16   of July 8th.  July 7th I think is what I had said before, did I

17   not?

18          **MR. AYLSTOCK:**  You did for Item 10.  And we would

19   disagree with Ms. Branscome.  The information we are seeking in

20   Item 10 is absolutely information we want prior to the

21   plaintiffs depositions.

22          **JUDGE RODGERS:**  So let me just change the 7th to the

23   8th for both Item 10 and 12, let me see your motions, and then

24   I'll decide how we'll proceed with responses.

25          **MR. AYLSTOCK:**  Thank you, Your Honor.

1          **JUDGE RODGERS:**   And I'll let you know as soon as I see

2     the motions and what's involved and talk to Judge Jones.

3          **MS. BRANSCOME:**   Thank you, Your Honor.

4          **JUDGE RODGERS:**   Our next CMC is scheduled for July

5     29th.  And as I said, we will start at 8:30, as always, with

6     the preconference leadership meeting, but we will start the

7     courtroom case management conference at ten.

8          Anything else from anyone?

9          Mr. Brock, you're standing.

10         **MR. BROCK:**   I was going to raise one more question

11    about the science day, and that is just how we should

12    communicate to you on Tuesday at noon in terms of what our

13    suggestions are.

14         Hopefully we'll have agreement.  But if we have

15    disagreement about some things, should we tell you what we

16    agree about and submit separate letters or -- I'm just trying

17    to think about the process of how to get to you what you --

18         **JUDGE RODGERS:**   That would be my preference, if there

19    is an agreement as to some aspects of this, then tell me what

20    that agreement is.  And then, to the extent there's a dispute,

21    I would prefer separate letters.  And you can submit those to

22    Ms. Dang, and she'll get them to me, and I'll talk to Judge

23    Jones, as you know, but we'll get with you quickly on that.

24         **MR. BROCK:**   Okay.  And I did want to just note for the

25    record, just to have it on the record, that we do object to a

1   process that would have the impact of being like a *Daubert*

2   ruling that a medicine cannot cause an outcome at this stage of

3   the proceeding where we don't know what the doses are, we

4   haven't taken plaintiffs' depositions, we don't even know which

5   medicine goes with which plaintiff.

6            **JUDGE RODGERS:**  Right.

7            **MR. BROCK:**  And so, if we can't get access to the list

8   of the medicines they were taking, it's shooting in the dark a

9   little bit.

10           I understand what you've asked for, and we're going to

11  try to do this in a way that's helpful.  But denial of access

12  to the record about the medicine could cause effectively a

13  decision that the medicine cannot cause.  And I don't think

14  that's what we want to be doing right now, so I wanted to

15  register that.

16           **JUDGE RODGERS:**  Well, I need to hear -- that's not my

17  intent, and I apologize if it's not very clear at this point.

18  I don't intend to hold a *Daubert* hearing.  I can understand

19  your objection to that.  I just threw it out if you all wanted

20  to have it more formalized.  I don't anticipate a *Daubert*

21  hearing.  I don't anticipate making a *Daubert* finding.

22           But, again, this can't be just a fishing expedition

23  because you all want access to every record about every

24  medication that the plaintiffs have taken because you think

25  there may be some association.

```
 1                 I want to hear from your expert or your consultant,
 2    I'm not sure what to call them.
 3              MR. BROCK:  Well, they're all consultants right now.
 4    No one is testifying yet.  But I think we have a couple of
 5    options that we can -- folks that we can talk to about, you
 6    know, if they could be suitable to do this and to do it
 7    quickly, so we'll work on that.
 8              JUDGE RODGERS:  Right.  And, you know, I feel I was
 9    flexible the last case management conference.  I came up with
10    this idea and you all, I don't think, were very comfortable
11    with it, for science day.  I suggested I might do that, or have
12    you submit something in camera, and you all convinced me, hey,
13    give us time to try to work this out.  And it just doesn't
14    sound to me like that's going to happen, so this is the only
15    way that I know to bring it to a head so that it can be
16    addressed.  The devil is in the details, and we still need to
17    work those out.  But it won't be a *Daubert* hearing.
18              MR. BROCK:  Thank you, Your Honor.
19              JUDGE RODGERS:  I'm sure there will be plenty of those
20    to come.
21              Anything else from anyone?  Plaintiffs' side?
22    MR. AYLSTOCK:  No, Your Honor.
23    JUDGE RODGERS:  Judge Jones?
24    JUDGE JONES:  Nothing else.
25    JUDGE RODGERS:  Judge Herndon?
```

1          **JUDGE HERNDON:**  No ma'am.  Thank you.

2          **JUDGE RODGERS:**  Well, thank you, everyone.  It was a

3     good conference, I think very productive.  And I look forward

4     to the submissions that you'll be making, and I'll be seeing

5     you either at the next case management conference if not before

6     for this science day on the medication issue.

7          **MR. BROCK:**  Thank you, Your Honor.

8          **JUDGE RODGERS:**  The Court is in recess.

9              ***(Proceedings concluded at 11:20 a.m.)***

10                  --------------------

11    *I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.  Any*

12    *redaction of personal data identifiers pursuant to the Judicial
      Conference Policy on Privacy are noted within the transcript.*

13

14

      *s/Donna L. Boland*                          *7-2-2020*
15    *Donna L. Boland, RPR, FCRR*                  *Date*
      *Official Court Reporter*
16

17

18

19

20

21

22

23

24

25