**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 3:19-md-2885 |
| | ) | |
| | ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* | ) | Magistrate Judge Gary R. Jones |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND**
**MEMORANDUM OF LAW**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ISSUES.........................................1

BACKGROUND .................................................................................................2

ARGUMENT .....................................................................................................4

   I.   3M's Rule 33(d) Responses to Bellwether Plaintiffs' Interrogatories Nos. 2-5 and General Interrogatories Nos. 16, 27, 28, and 29 Are Deficient......................5

     A.  3M's Response to Interrogatory No. 27 Is Deficient. ...................................8

     B.  3M's Response to Interrogatory No. 28 Is Deficient. .................................10

     C.  3M's Response to Interrogatory No. 29 is Deficient. .................................12

     D.  3M's Response to Interrogatory No. 16 Is Deficient. .................................13

     E.  3M's Responses to Bellwether Interrogatories Nos. 2 and 3 Are Deficient. 16

     F.  3M's Responses to Bellwether Interrogatories Nos. 4 and 5 Are Deficient. 18

     G.  Curing the Deficiencies Would Impose No Burden. ...................................20

   II.  Defendants Must Answer Bellwether Interrogatory No. 7. ...........................21

Conclusion ....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelucci v. Government Employees Insurance Co.*,

   2011 WL 4953009 (M.D. Fla. Oct. 17, 2011) ......................................................23

*Bolitho v. Home Depot USA, Inc.*,

   2010 WL 2639639 (S.D. Fla. June 3, 2010) ........................................................23

*Chiasson v. Zapata Gulf Marine Corp.*,

   988 F.2d 513 (5th Cir. 1993) ..............................................................................23

*Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips*

   *Petroleum Co.*,

   105 F.R.D. 16 (S.D.N.Y. 1984) .......................................................................6, 8

*Dodson v. Persell*,

   390 So. 2d 704 (Fla. 1980) ...................................................................... 4, 22, 23

*Federal Trade Commission v. Lexium International LLC*,

   2017 WL 2664360 (M.D. Fla. June 1, 2017) ....................................................7, 9

*Hands on Chiropractic PL v. Progressive Select Insurance Co.*,

   2018 WL 6983622 (M.D. Fla. Nov. 20, 2018) ..................................................6, 7

*Hunt v. Lightfoot*,

   239 So. 3d 175 (Fla. Dist. Ct. App. 2018) ...........................................................23

*In re Sulfuric Acid Antitrust Litigation*,

   231 F.R.D. 320, (N.D. Ill. 2005) ...........................................................................6

*International Aerospace Group Corp. v. Evans Meridians Ltd.*,

   No. 16-24997-CIV, 2017 WL 1927957 (S.D. Fla. May 10, 2017) ............. passim

*Nielsen Audio, Inc. v. Clem*,

    2016 WL 3976467 ........................................................................ passim

*Pascale v. G. D. Searle & Co.*,

    90 F.R.D. 55 (D.R.I. 1981) ...................................................................6

*Petroleum Insurance Agency, Inc. v. Hartford Accident. & Indemnity Co.*,

    111 F.R.D. 318 (D. Mass. 1983)...........................................................6

*Smith v. Diamond Offshore Drilling, Inc.*,

    168 F.R.D. 582 (S.D. Tex. 1996)........................................................23

*Tawreed Companies Representation v. ISO Group, Inc.*,

    2011 WL 13298825 (M.D. Fla. Dec. 21, 2011) .................................6, 9

*United States ex rel. Landis v. Tailwind Sports Corp.*,

    317 F.R.D. 592 (D.D.C. 2016) .............................................................6

*Vision Construction. Enterprise, Inc. v. Argos Ready Mix, LLC*,

    2017 WL 10084359 (N.D. Fla. June 28, 2017) .....................................4

## Rules

Fed. R. Civ. P. 26(b)(1).............................................................................4

Fed. R. Civ. P. 33 ......................................................................... 6, 8, 17

Fed. R. Civ. P. 33(b)(1)............................................................................7

Fed. R. Civ. P. 37(a)(3)(B), (a)(4) ...........................................................4

Federal Rule of Civil Procedure 33(d).............................................. passim

## Other Authorities

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2178 (3d ed.) ..................6

48 F.R.D. 487 ..........................................................................................6

## INTRODUCTION AND SUMMARY OF THE ISSUES

Plaintiffs respectfully submit this memorandum in support of their Motion to Compel Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, Aearo, LLC (collectively, "3M" or "Defendants") to respond to Bellwether Plaintiffs' Interrogatories Nos. 2-6, and to supplement their insufficient responses to Plaintiffs' General Interrogatories Nos. 16, 27, 28, and 29.[1]

*First*, 3M improperly attempts to rely on Rule 33(d) in its answers to Bellwether Plaintiff's Interrogatories Nos. 2-5 and General Interrogatories Nos. 16, 27, 28, and 29.  Each of these attempts to use Rule 33(d)'s option to answer by producing business records is deficient because 3M's responses fail to disclose responsive information available to 3M beyond those documents, or to state that the cited documents reflect all of 3M's responsive knowledge.  Rule 33 and this Court's April 10, 2020 Order (Dkt. No. 1085) require more: An answer pursuant to Rule 33(d) must indicate whether the referenced documents reflect all of the Responding Party's knowledge.

---

[1] Defendants 5/11/2020 Supplemental Response to Plaitiffs' First Set of Interrogatories are attached as Ex. A; Defendants' 6/17/2020 Supplemental Responses to Plaintiffs' First Set of Interrogatories are attached as Ex. B; Defendants' 3/26/2020 Initial Responses to Plaintiffs' Second Set of Interrogatories are attached hereto as Ex. C; Defendants' 5/11/2020 Supplemental Responses to Plaintiffs' Second Set of Interrogatories are attached hereto as Ex D. Defendants' 5/15/2020 Responses to Bellwether Plaintiff William Wayman's Interrogatories are attached hereto as Ex E.

*Second*, without basis, 3M refuses to provide any response to Bellwether Interrogatory No. 7, which asks about surveillance 3M has conducted on Bellwether Plaintiffs.  This information is relevant and discoverable, and no valid ground exists to refuse to answer this Interrogatory.

Accordingly, Plaintiffs move to compel Defendants to:

1.    Supplement their Responses to Bellwether Interrogatories Nos. 2, 3, 4, and 5, and to General Interrogatories Nos. 16, 27, 28, and 29, to comply with Rule 33 by providing testimony relating to Defendants' responsive knowledge, where Defendants rely on Rule 33(d), a statement as to whether Defendants possess information beyond that contained in the cited documents; whether Defendants' knowledge is limited to the cited documents; and whether Defendants possess the information contained in the cited documents in a more easily accessible form.

2.    Answer Bellwether Interrogatory No. 7, regarding Defendants' surveillance, if any, of Bellwether Plaintiffs.

## BACKGROUND

Plaintiffs first served general interrogatories in August 2019 and 3M first responded in October 2019.  The Court has already resolved some disputes about the

sufficiency of 3M's responses.[2]   Following the Court's April 10, 2020 Order, Defendants supplemented their Responses to Plaintiffs' First and Second Interrogatories on May 11, 2020 and again June 17, 2020.  *See* Exs. A, B & D. Defendants responded to Bellwether Plaintiffs' Interrogatories on May 15, 2020. *See* Exhibit F.  Notwithstanding the multiple amendments, Defendants' answers to several Interrogatories remained deficient and failed to comply with Rule 33.

In subsequent meet-and-confers Plaintiffs advised Defendants that their Responses[3] to General Interrogatories Nos. 16, 27, 28, 29 and to Bellwether Interrogatories Nos. 2, 3, 4, and 5, do not satisfy the requirements of Rule 33(d), in that they fail to state whether additional responsive information, beyond that reflected in the referenced documents, is available to Defendants.  Defendants disagreed, arguing that their Responses are sufficient pursuant to Rule 33(d). Defendants have refused to amend or supplement their response.  Accordingly, Plaintiffs now move to compel complete responses to Bellwether Plaintiffs' Interrogatories Nos. 2-5, and Plaintiffs' General Interrogatories Nos. 16, 27, 28, and 29.

---

[2] The history of Defendants' Interrogatory Responses and the Parties' correspondence thereon is more fully discussed in the Court's April 10, 2020 Order, Dkt. No. 1085.

[3] The full text of the Interrogatories and Responses at issue is available in the exhibits attached hereto, as described above in Footnote 1.  The Interrogatories are set out in full in Section II herein, and the Responses are excerpted in relevant part in the same section.

Plaintiffs also move to compel a response to Bellwether Plaintiffs' Interrogatory No. 7. It is settled law that the existence of surveillance is discoverable, *see Dodson v. Persell*, 390 So. 2d 704, 707 (Fla. 1980), but Defendants have—without any basis or valid objection—refused to answer interrogatory.

## ARGUMENT

If a party fails to answer an interrogatory submitted under Rule 33—including by providing only an "evasive or incomplete disclosure, answer, or response," the "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B), (a)(4). The party resisting discovery has the burden of proving that the requested discovery is either irrelevant, or of such marginal relevance that the potential harm occasioned by discovery outweighs the ordinary presumption in favor of broad disclosure. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017).

The responding party must justify its use of Rule 33(d) in response. *See Int'l Aerospace Grp. Corp. v. Evans Meridians Ltd.*, No. 16-24997-CIV, 2017 WL 1927957, at *4 (S.D. Fla. May 10, 2017). Defendants fail to carry their burden. Defendants' Responses are deficient in that they neither fulfill the requirements of

Rule 33(d) nor provide answers based on Defendants' knowledge. The Court therefore should compel 3M to supplement the responses in accordance with the Rules.

**I.    3M's Rule 33(d) Responses to Bellwether Plaintiffs' Interrogatories Nos. 2-5 and General Interrogatories Nos. 16, 27, 28, and 29 Are Deficient.**

Federal Rule of Civil Procedure 33(d) provides:

> *If the answer to an interrogatory may be determined* by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and *if the burden of deriving or ascertaining the answer will be substantially the same for either party*, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail *to enable the interrogating party to locate and identify them as readily as the responding party could*; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d) (emphasis added).

Thus, to properly rely on its business records under Rule 33(d), a Responding Party must: (1) state that the information sought is contained in the records

identified;[4] (2) show a burden associated with providing a traditional response;[5] and

an equivalency of burden between the requesting and responding parties in

determining the information sought;[6] and (3) furnish all responsive information,

known or available to the Responding Party, including any beyond that reflected in

---

[4] *See Int'l Aerospace Grp. Corp. v. Evans Meridians Ltd.*, 2017 WL 1927957, at *4 (S.D. Fla. May 10, 2017) ("[T]he producing party must explain that the named documents contain all of the information requested."). *See also* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2178 (3d ed.) (the use of the term "may" "does not introduce some contingency into the representation required" of the Responding Party, who must represent "that the information *is* in the designated records.") (emphasis added). "It is not enough to claim that '[t]o the extent [Responding Party] has information responsive' to the [Requesting Party's] interrogatories, it will be found in certain locations." *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 595 (D.D.C. 2016); *See also Hands on Chiropractic PL v. Progressive Select Ins. Co.*, 2018 WL 6983622, at *8 (M.D. Fla. Nov. 20, 2018) (Responding Party's "use of Rule 33(d) was inadequate" where the "document relied on. . . does not contain all of the information requested by [the] Interrogatory.")

[5] *Pascale v. G. D. Searle & Co.*, 90 F.R.D. 55, 60 (D.R.I. 1981) (Responding Party may only rely on a reference to records "only if there is some burden involved in compiling or extracting the requested information, above and beyond the simple task of referring to the records in order to answer the interrogatories."); *Tawreed Companies Representation v. ISO Grp., Inc.*, 2011 WL 13298825, at *3 (M.D. Fla. Dec. 21, 2011) (Rule 33(d) is unavailable "when an 'interrogatory can be responded to more readily and conveniently by written answer.'") (quoting *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44 (S.D.N.Y. 1984)).

[6] *See also* Fed. R. Civ. P. 33, advisory committee note to 1970 amendments, 48 F.R.D. 487, 524-25 ("the burden of ascertaining the answer [must] be substantially the same for both sides."); *See also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, (N.D. Ill. 2005) (rejecting application of Rule 33(d) and granting motion to compel where "there is nothing to support a conclusion that there is an equivalency of burdens or that the specification was in sufficient detail to permit [the questioning party's] location and identification with the same degree of effort and efficiency that [the responding party] could bring to the task."); *see also Tawreed*, 2011 WL 13298825, at *3 ("Rule 33(d) is unavailable when the responding party has already gathered information that is responsive to the interrogatory because the burden of searching the records and discovering the answer is no longer substantially equally."); *Petroleum Ins. Agency, Inc. v. Hartford Acc. & Indem. Co.*, 111 F.R.D. 318, 322 (D. Mass. 1983) (compelling an amended answer, that may not contain reference to documents, where the Responding Party had done "considerable work to gather the information requested . . . and, it therefore follows that it is not equally burdensome for the parties to search the records to come up with answers, since the [Responding Parties] have already done so.").

the document.[7]  Moreover, where Responding Party is a corporate entity, Rule 33(d) does not relieve the party of the obligation that Responses "furnish the information available to the party."  *See* Fed. R. Civ. P. 33(b)(1).  The scope of discoverable information is not limited by the scope of any document production, and the Responding Party is under a duty "to obtain the information necessary to answer the interrogatories" to the extent that information is available to it, which may require the Responding Party to "examine its books, records, other officers or employees, or other sources."  *Fed. Trade Comm'n v. Lexium Int'l LLC*, 2017 WL 2664360, at *9 (M.D. Fla. June 1, 2017), *report and recommendation adopted*, 2017 WL 2655107 (M.D. Fla. June 20, 2017).

The Court has already embraced and applied these well-established principles. In its April 10, 2020 order, the Court concluded that 3M's Rule 33(d) responses were sufficient only if Defendants represented that (1) the responsive information was not "more easily available to Defendants than in the format already produced," and (2) the Rule 33(d) documents Defendants identified contained all responsive information "to the extent that information exists and was available to Defendants."

---

[7] *See Nielsen Audio, Inc. v. Clem*, 2016 WL 3976467, at *3 (Responding Party may not rely solely on produced document reflecting written complaints, but must also identify any "oral complaints that are not memorialized in [Responding Party]'s business records."); *Hands on Chiropractic*, 2018 WL 6983622, at *9 (M.D. Fla. Nov. 20, 2018) (compelling Responding Party to supplement a Response to state whether "other additional responsive communications occurred" where it was "unlikely" that referenced documents describing written communications would also include "all oral communications[.]");

Dkt. 1085, Apr. 10, 2020 Order at 14-15 (ruling on General Interrogatories Nos. 3 & 8).   Where 3M failed to make any representation about the availability of additional or more easily accessible information, the Court required Defendants to supplement their answers to certify whether the referenced documents "include all of the discovery sought in [the Interrogatory] to the extent it exists and is currently available." *Id*. at 18 (ruling on General Interrogatory No. 15).

Pursuant to Rule 33 and the Court's April 10 order, 3M should be required to supplement its deficient responses or state that no additional information is known to 3M.

### A.   3M's Response to Interrogatory No. 27 Is Deficient.

Interrogatory No. 27[8] seeks information on the subject of the identity and distribution of advertisements for the CAEv2.[9]   Defendants' Response No. 27

---

[8] "Interrogatory No. 27: Please identify all Documents and Communications relating to or constituting any marketing, advertising, promotional, sales, or instructional material regarding the 3M Earplugs, including posters, brochures, print, broadcast, internet, and social media material, whether directed to end-users, distributors, or to purchasers, including the manner of dissemination of such material, any contracts relating to such material, the details of the medium, manner, and timing of its distribution, and the identities and contact information of any entities apart from Defendants involved in the preparation, dissemination and placement of such material, and the Bates identifiers for any drafts of such material." Ex. B at No. 27.

[9] These materials and the representations they contain are of clear relevance to, *inter alia,* Plaintiffs' fraud and warning claims, and of more general relevance to the claimed characteristics, protections, and use cases for the plugs.   Their distribution will also be relevant to the extent Defendants challenge any Plaintiff's claim of exposure to Defendants' misrepresentations.   This Court has already determined that advertising documents are relevant material Defendants are obligated to produce.   *See* October 10, 2019 Order, Dkt. 748 at 12-13 ("Defendants have agreed to produce, and Plaintiffs will be provided with, marketing materials related to CAEv2.").   Defendants' production of various marketing materials, however, does ***not*** place information

consists of two pages of objections relating to the adequacy of Defendants'
document production, followed by a three-and-a-half page string cite to documents
that Defendants produced from a database called "CELLUM," which are identified
as "various approved marketing, advertising, and promotional materials." *See* Ex.
D No. 27.  Defendants claim that the listed documents include metadata reflecting
"when a document was in use, and the anticipated audience for a document." *Id.*

3M's answer to Interrogatory No. 27 does not satisfy Rule 33(d).  *First*, the
response fails to state whether the referenced documents contain all requested
information.  *See Int'l Aerospace Grp. Corp.*, 2017 WL 1927957, at *4.  Although
the "CELLUM" documents Defendants cite in their Response are accompanied by
data fields that purport to contain responsive information, in most cases the relevant
fields are blank,[10] and Defendants' Response, therefore, does not actually reflect
"when a document was in use, and the anticipated audience for a document" as
Defendants claim it does.  *Second*, 3M makes no claim that the responsive
information is not more easily accessible in some other format.  *See Tawreed*, 2011

---

regarding the finality of the materials and the distribution of the materials beyond the scope of
discovery, or create any other basis for withholding such information.

[10] For example, Defendants reference the CAEv2 "Sell Sheet," 3M_MDL000822977, which is
accompanied by a cover sheet that, contrary to Defendants' testimony, does not state when the
document was in use, or the anticipated audience for the document. *See* 3M_MDL000822976-77,
attached hereto as Exs. F & G (blank fields for, *e.g.*, "Release ID, "Validation date" "Product
Family" "Campaign" "Market Segmentation" "Product" "Engagement Channel" "Next Review
Date" "Last Review Date").

WL 13298825, at *3.  *Third*, the response fails to indicate whether Defendants have responsive information beyond that reflected in the CELLUM documents.  *See Nielsen Audio*, 2016 WL 3976467, at *3 ([I]f plaintiff "determines that no other additional responsive communications occurred, then Plaintiff should respond to the interrogatory accordingly.").  Defendants' objections and subsequent discussions suggest that Defendants believe that they have no obligation to produce responsive information beyond that reflected in TAR productions.[11]  If Defendants have additional responsive information, they must disclose it; if they do not, then Defendants must provide a written answer to that effect in order to satisfy Rule 33(d).

## B.    3M's Response to Interrogatory No. 28 Is Deficient.

Interrogatory No. 28 seeks information on the distribution of "final versions of any packaging, instruction, insert, and/or user guide for the 3M Earplugs."[12]  3M's

---

[11] Defendants' objections raise questions about whether Defendants' responses are generally based on corporate knowledge, or based on defense counsel's review of documents.  Defendants describe their process for responding to this Interrogatory as "manually reviewing and reclassifying [produced] documents into various subject-matter buckets," and deny that they have an obligation "to re-review those same materials and sort them."  *See* Ex. D at No. 28.  But Plaintiffs' Interrogatories (and the Rules) do not impose a document review obligation on counsel – they instead require the Party-Defendants to provide the information available to them (including, *e.g.*, through interviewing employee-witnesses), which may not be reflected in produced documents.

[12] Plaintiffs bring claims based on the adequacy of Defendants' warnings and instructions, and Plaintiffs are entitled to know what instructions or user guides Defendants claim were distributed or published, and where.  *See* Ex. D ("Interrogatory No. 28: Please identify all final versions of any packaging, instruction, insert, and/or user guide for the 3M Earplugs, the methods by which these items were distributed (whether were distributed in conjunction with all 3M Earplugs, with some specific subset of the 3M Earplug, or otherwise), and the times periods during which each item was distributed.")

response claims, in effect, that their production of documents under the TAR process relieves Defendants of the obligation to provide any other responsive information available to them.[13]

Apart from their argument regarding their document production, Defendants provide only the following nonresponsive answer:  "Defendants are willing to meet and confer with Plaintiffs to discuss whether there are efficient and less burdensome means of assisting Plaintiffs with identifying discrete categories of information contained in the TAR productions to date."  *See* Ex. D at No. 28.  Defendants have proposed no such process in the intervening months, and have repeatedly declined to provide a response based upon Defendants' corporate knowledge, rather than Defendants' document production.

To the extent 3M has even provided an answer, it is incomplete and must be supplemented.  3M makes no representation as to the substance of its corporate knowledge; nor does it state that the requested information is unknown.  3M's response is hardly substantive, and lacks any statement that the requested information is contained in the referenced documents, or that Defendants lack

---

[13] *See* Ex. D at No. 28 ("Defendants produced the materials responsive to this interrogatory pursuant to the agreed TAR Protocol. Having required Defendants to do so, Plaintiffs cannot now go back and request that Defendants undertake the significant burden of manually reviewing hundreds of thousands of documents to 'identify all final versions of any packaging, instruction, insert, and/or user guide' contained therein.").  Plaintiffs clarify that they do not seek to require Defense Counsel to review the production, but instead seek Defendant's knowledge on this issue.

information beyond (or more easily accessible than) the information available in the referenced documents.

## C.   3M's Response to Interrogatory No. 29 is Deficient.

Interrogatory 29 seeks information on the advertising, instructions, or other documents (if any) "contained in shipments of 3M Earplugs delivered to the U.S. Government."[14] 3M again improperly relies upon Rule 33(d).

3M explicitly fails to provide any answer supported by its own corporate knowledge.  *See* Ex. D at No. 29.  Defendants: (1) "refer Plaintiffs to the bill of materials;" (2) state that "Marc Santoro gave the following testimony;" (3) state that "John Merkley gave the following testimony;" (4) state that non-party documents produced in response to a subpoena "include a document titled;" (5) cite to 30(b)(6) testimony in which the company testified "It says that here, yes;" (6) note that "documents produced in this litigation to date contain pictures of packaging and labeling for certain shipments;" and (7) "refer Plaintiffs to the sales data produced in this litigation."  *See* Ex. D at No. 29.  Thus, 3M's answer is entirely drawn from sources *other than Defendants' knowledge*.  And no part of 3M's convoluted answer

---

[14] Plaintiffs' claims implicate Defendants' distribution of promotional material and instructions, and Defendants' knowledge on the distribution of that material is relevant and discoverable. *See* Ex. B at No. 29 ("Interrogatory No. 29: Please identify each Document, including any instruction, packaging, guide, insert, or promotional material, contained in shipments of 3M Earplugs delivered to the U.S. Government, and the shipment(s) or time period(s) in which each such Document was distributed.").

describes how the information provided relates to Defendants' knowledge (*i.e.*, it is not clear from the Response whether Defendants dispute or adopt the pieces of evidence they list, or whether Defendants have withheld additional responsive information).

Moreover, 3M fails to provide responsive information.   Plaintiffs asked "which documents does 3M believe were contained in shipments?"  3M's response effectively reduces to: "other people have said and written various things on that subject."  Bare reference to a non-party document or non-party testimony does not satisfy 3M's obligation to answer the interrogatory in full.   To fulfill the requirements of Rule 33(d), 3M must either provide either responsive information currently omitted, or it must state that it possesses no additional responsive information.

### D. 3M's Response to Interrogatory No. 16 Is Deficient.

Interrogatory No. 16 seeks information on "passive level-dependent or non-linear HPDs *you* are aware of."[15]   Defendants' initial response was one of the subjects of this Court's April 10, 2020 Order, and Defendants subsequently served

---

[15] As this Court has already determined in its April 10, 2020 Order, Defendants' knowledge regarding potential safer alternative products is relevant to Plaintiffs' design defect claims. *See* Ex. B at No. 16 ("Interrogatory No. 16: Please identify all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity, including (i) the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs.").

a supplemental response providing limited additional responsive information.[16]
After Plaintiffs sought confirmation that the supplemental response was
comprehensive with regard to Defendants' knowledge of safer alternatives,
Defendants served a second supplemental response. *See* Ex. B. But Defendants'
current Supplemental Response is still deficient, in that it limits the scope of
Defendants' corporate knowledge to "information on the passive, non-linear
earplugs produced by other manufacturers that ***Elliott Berger*** was aware of."[17]
Plaintiffs did not request (in their Interrogatory, or in the Parties' discussions) further
information on Elliott Berger's knowledge, they requested further information on
*Defendants'* knowledge, which has not been provided.

Plaintiffs understand that, in disclosing only Mr. Berger's knowledge,
Defendants claim to rely upon a portion of the Court's April 10 order that required
Defendants to identify any "discrete group of individuals, or a single individual, who
would examine alternative HPDs to [Defendants'] own products (including the

---

[16] "Defendants further state that there was no individual, or group of individuals, whose dedicated job function was to examine alternative hearing protection devices and compare those products to hearing protection devices manufactured by Aearo. On occasion, Elliott Berger evaluated and tested hearing protection devices produced by other manufacturers, and worked with Aearo technical staff in those efforts as needed, including Mark Doty." Ex. B at No. 16.

[17] Defendants' Response claims that "Plaintiffs requested further information on the passive, non-linear earplugs produced by other manufacturers that Elliott Berger was aware of, and the approximate date on which he became aware of those products." Ex. B at No. 16. Plaintiffs understand that the remainder of Defendants' Response is derived from unsworn statements from Mr. Berger to Defense Counsel.

CAEv2) and communicated with the United States Government about those designs." Dkt. No. 1085 at 19-20. Plaintiffs do not believe that Defendants' identification of Mr. Berger relieves Defendants of their obligation to "disclose information responsive to Interrogatory No. 16," including "whether [Defendants] had conversations with the Government" about alternative products. *Id*. at 20. And Defendants' own production makes it clear that several individuals ***in addition to Mr. Berger*** were involved in examining and evaluating competing products. For example, in a March 2011 email chain, Michele Cimino, Doug Moses, and Doug Ohlin corresponded about ways of "defending our dominant position in the combat hearing protection market," and the importance of knowing "what headwinds we are up against" with regard to the Moldex Battleplug, among other HPDs. *See* Ex. H, 3M_MDL000364204 at 04-05. Information on these communications and on other relevant activities of this group is available and known to Defendants, and is responsive to Interrogatory No. 16, and required under the Court's April 10, 2020 Order. The Court should compel Defendants to fully respond.

Further, as with Responses Nos. 27-29 above, 3M's response to Interrogatory No. 16 is insufficient in that it simply fails to state whether Defendants have additional, undisclosed information concerning their knowledge of and conversations with the U.S. Government regarding on competing products. *See Nielsen Audio*, 2016 WL 3976467, at *3. Plaintiffs request that this Response be

amended to meet the requirements of Rule 33(d), by containing testimony from Defendants about the information available to Defendants – not just the information available to a single former employee, Elliott Berger – on the subject.

### E. 3M's Responses to Bellwether Interrogatories Nos. 2 and 3 Are Deficient.

Bellwether Plaintiff Interrogatories Nos. 2 and 3 seek information on "each order of CAEv2s placed by or for the benefit of, or delivered to," each of that Plaintiff's Duty Stations, including the individuals involved in the order, the documents included in the shipment, and the dollar value of the order. [18]   This information is of clear relevance in the context of any dispute Defendants may raise with regard to a Plaintiff's use of the CAEv2.  Responses to both Interrogatories contain no substantive answer.  Each Response first states that these Interrogatories are duplicative of "discovery previously taken of or provided by Defendants, including Defendants Response to Interrogatories 3 and 8, which the Court held

---

[18] *See* Ex. E at No. 2 ("For each of Plaintiff's Duty Stations, for each year in the period from 1999 through and including Plaintiff's Departure Year from that Duty Station, please identify each order of CAEv2s placed by or for the benefit of, or delivered to, such Duty Station"); ; *id.* at No. 3 ("For each order identified in your Response to Interrogatory No. 2, please identify: any persons acting on your behalf who solicited and/or received the order; any persons who placed the order on behalf of the U.S. Government; the date of the order; any identifying number(s) for the order; the quantity of CAEv2 ordered; the SKU(s) and part number(s) for the relevant unit of CAEv2 ordered; any documents, instructions, training, warnings, and/or packaging that accompanied the order as shipped or delivered; the quantity of CAEv2 delivered to the Plaintiff Duty Station, expressed as the number of pairs of earplugs; the dollar value of the order; and the distributor who supplied the CAEv2 to the Duty Station to fulfill the order")

'satisfied their discovery obligations under Federal Rule of Civil Procedure 33 as to the requested sales and distribution data.'"  *See* Ex. E at Nos. 2 & 3 (quoting Dkt. No. 1085 at 13).  Each Response then concludes by referring to five documents that were also cited in Defendants' Responses to General Interrogatories Nos. 3 and 8, without stating what portion of the Interrogatory they are responsive to.[19]  Neither Response contains a statement regarding whether Defendants possess additional knowledge beyond that in the referenced documents.  Defendants have maintained in the Parties' meet-and-confers that these Responses comport with the Court's April 10, 2020 Order applying Rule 33(d) to other Defendant Interrogatory Responses.

Neither Response meets the requirements of Rule 33(d).  *First*, neither Response clearly states that the information sought is contained in the sources referenced.[20]  *Second*, neither Response states that Defendants lack additional or more easily accessible responsive information:  Instead, the Response merely states that "Defendants refer Plaintiff" to various materials, without stating whether those material reflect the full scope of Defendants' knowledge.[21]

---

[19] *See* Ex. E at No. 2 ("Subject to, and without waiving their specific and General Objections, Defendants refer Plaintiff to Defendants' Responses to Plaintiffs' Prior Interrogatories, including, but not limited to, Interrogatory Nos. 3 and 8, including 3M_MDL000393649, 3M_MDL000393648, 3M_MDL000393647, 3M_MDL000393646, and 3M_MDL000393651 produced therewith").

[20] *See Int'l Aerospace Grp. Corp.*, 2017 WL 1927957, at *4.

[21] *See Nielsen Audio*, 2016 WL 3976467, at *3.

If Defendants have no information responsive to Bellwether Interrogatories Nos. 2 and 3 beyond that in their Responses to General Interrogatories Nos. 3 and 8, then Defendants must testify to that effect.   If Defendants have additional information, they must disclose it.

**F.     3M's Responses to Bellwether Interrogatories Nos. 4 and 5 Are Deficient.**

Bellwether Plaintiff Interrogatories Nos. 4 and 5 seek information on "each communication, interaction, or on-site visit relating to the CAEv2" between Defendants and Plaintiff's Duty Stations.[22]   Information relating to these communications and visits is essential to enable Plaintiffs to identify witnesses and documents relevant to Defendants' interactions with their Duty Stations.

Defendants' Responses to both Interrogatories contain no substantive answer. Each merely states, after objections, that "Defendants refer Plaintiff to Defendants'

---

[22] *See* Ex. E at No. 4 ("For each of Plaintiff's Duty Stations, for each year in the period from 1999 through and including Plaintiff's Departure Year from that Duty Station, please identify each communication, interaction, or on-site visit relating to the CAEv2 (whether for purposes of marketing, sales, instructions, training, or for any other purpose) between any person acting on your behalf and any representative, employee, or agent of the U.S. Government from, or on behalf of, such Duty Station."); *id.* at No. 5 ("For each communication identified in your Response to Interrogatory No. 4, please identify: the communication; any instructions, training materials, sales or marketing collateral, or other documents reflecting or relating to the communication; all persons involved in the communication on your behalf; all persons or representatives of the U.S. Government involved in the communication; and the name(s) of any training program(s), marketing event(s) or other programming associated with the communication.").

Responses to Plaintiffs' Prior Interrogatories, including, but not limited to, Interrogatory Nos. 5 and 27."[23]  *See* Ex. E at No. 4; *id.* at No. 5 (same).

Defendants' Response is substantively deficient, in that it withholds responsive information.  For example, the Response does not provide any responsive information relating to Defendants' "Project COBRA."  As part of the COBRA campaign, Defendants divided the U.S. into "Areas of Geographical Responsibility," 3M_MDL000825297 (Ex. I), and engaged in a direct mail campaign to over "7,000 purchasing and procurement people." 3M_MDL000570158 (Ex. J; *see also* 3M_MDL000619859 (Ex. K).  Defendants' failure to disclose any information relating to this campaign in their Response is troubling – but more importantly, Defendants' Response does not indicate what other withheld information may be responsive to Interrogatory No. 28 (*e.g.*, what marketing collateral was used; when was it used; what Government representatives did Defendants communicate with), and critical to, *inter alia,* Plaintiffs' fraud, negligence, and warning claims.

As with the other Interrogatories at issue, Defendants must provide responsive information available to them regarding their contacts or communications with a

---

[23] To the extent Defendants' Responses to Bellwether Interrogatories Nos. 4 and 5 suggest that their prior Responses to General Interrogatories Nos. 5 and 27 contain the information Plaintiffs seek, that suggestion is false.  Defendants' Response to Interrogatory No. 5 describes no contacts between Defendants and any individual Duty Station, and does not state whether Defendants are aware of any such contacts. *See* Ex. E at No. 5.  Defendants' Response to Interrogatory No. 27 is addressed herein, and also describes no contacts between Defendants and any individual Duty Station, and does not state whether Defendants are aware of any such contacts.

Bellwether Plaintiff's Duty Stations; or to the extent that Defendants claim that *all* available responsive information is reflected in other sources referred to under Rule 33(d), then Defendants must state as much in their Responses.

In summary, the relevant information Plaintiffs seek is not contained within Defendants' Responses, or in the other sources referenced in those Responses;[24] and Defendants have not testified that the information is not available to them.[25] Defendants should be compelled either to provide the requested information, or to testify that it is unknown to Defendants.

### G.  Curing the Deficiencies Would Impose No Burden.

It may be the case that responsive information omitted from a Response is already available or known to Defendants.  In that circumstance, Plaintiffs request that Defendants furnish that information in a supplemental response.   Sharing information that Defendants already know, or have already collected, imposes a *de minimis* burden, if any.  If there are Interrogatories for which Defendants actually lack additional responsive information, Plaintiffs request that Defendants amend their Responses to reflect that fact (*e.g.*, "Defendants' knowledge responsive to this Interrogatory is limited to the information most easily accessible in documents

---

[24] *See Int'l Aerospace Grp. Corp.*, 2017 WL 1927957, at *4.

[25] *See Nielsen Audio*, 2016 WL 3976467, at *3.

bearing the following Bates Stamps…"), which amendment is similarly unburdensome.

Plaintiffs request that the Court compel Defendants to supplement their Responses to General Interrogatories Nos. 27-29 and 16, and to Bellwether Interrogatories Nos. 2-5, either with written testimony that no additional or more easily accessible information is available to Defendants, or with a substantive answer reflecting all responsive information available to Defendants.

## II.    Defendants Must Answer Bellwether Interrogatory No. 7.

Bellwether Plaintiffs' Interrogatory No. 7 requests information related to surveillance of Bellwether Plaintiffs conducted by Defendants.

### <u>INTERROGATORY NO. 7:</u>

Have you conducted any surveillance, including but not limited to any internet or computer surveillance, on any Plaintiffs or any of Plaintiffs' family members? If so, please state the following:
a. Who or what is the subject of such surveillance;

b. The date and time such surveillance began;

c. Whether such surveillance is still ongoing and if not, the time and date on which such surveillance ended; and

d. The identity of every individual who conducted or participated in any way in such surveillance, whether as an active participant, as a planner, or in post-surveillance analysis or production, and the identity of each such individual's employer.

Defendants have made no substantive Response to this Interrogatory whatsoever.[26]

---

[26] *See* Ex. E at No. 7 ("Subject to, and without waiving their specific and General Objections, Defendants reserve the right to offer evidence that is publicly available. In addition, Defendants

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object to this Interrogatory to the extent that it seeks information
protected by the work-product privilege. Defendants further object to the
phrase "internet or computer surveillance" as vague and ambiguous.
Defendants further object to this Interrogatory to the extent that Plaintiff
seeks information that is publicly available, and/or not in the possession,
custody, or control of Defendants.

In subsequent correspondence, Defendants have stated that they believe that
any surveillance conducted by a non-lawyer at the direction of an attorney is
protected work product – and that it is not only the substance of that surveillance
that is protected, but also the *fact* of whether the surveillance was conducted.

Contrary to Defendants' refusal, the *existence* of any surveillance conducted
on a Bellwether Plaintiff is plainly discoverable.  The seminal case on this issue in
Florida provides that upon request, "a party must reveal the existence of any
surveillance information he possesses whether or not it is intended to be presented
at trial." *Dodson v. Persell*, 390 So. 2d 704, 707 (Fla. 1980) ("[k]nowledge of
[surveillance] existence is necessary before a judicial determination can be made as
to whether the contents are privileged.").  Federal Courts in Florida have applied
*Dodson* in determining the discoverability of information relating to surveillance of

_____

refer Plaintiff to information that Plaintiff has, or will, provide in response to Defendants'
Interrogatories 1, 2, 3, 4, and 65.").

a Party. *See Angelucci v. Gov't Employees Ins. Co.*, 2011 WL 4953009, at *1 (M.D. Fla. Oct. 17, 2011) (relying on *Dodson*); *Bolitho v. Home Depot USA, Inc.*, 2010 WL 2639639, at *1 (S.D. Fla. June 3, 2010) (relying on *Dodson*). Under *Dodson*, the existence of surveillance is discoverable, even where the content of the surveillance may not be.[27] Courts have also held that certain circumstances relating to the surveillance may also be discoverable,[28] and Plaintiffs cannot determine whether information on those circumstances is being withheld in light of Defendants' refusal to disclose whether surveillance occurred in the first place.

Accordingly, Plaintiffs respectfully request the Court order Defendants to disclose whether any surveillance of Bellwether Plaintiffs exists and, to the extent it does, identify the person who took the surveillance, when it was taken, and where it was taken.

## CONCLUSION

Plaintiffs seek an order compelling Defendants to answer:

---

[27] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 518 (5th Cir. 1993) (citing *Dodson* for the proposition that "the existence of such evidence is discoverable, the substance need be disclosed only if it will be used at trial"); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 587 (S.D. Tex. 1996).

[28] *See Hunt v. Lightfoot*, 239 So. 3d 175, 177 (Fla. Dist. Ct. App. 2018) (Responding Party, upon request, must state "the person who took the film, when it was taken, and where it was taken"); *see also Smith*, 168 F.R.D. at 587 (ordering disclosure of "the existence of any surveillance evidence of the Plaintiff and the date on which the surveillance was obtained, and to indicate whether the surveillance is in the form of film, videotape, or still photographs").

<u>Bellwether Interrogatories Nos. 2-5</u>, regarding Defendants' interactions with and/or detailing of specific Bellwether Plaintiff Duty Stations;

<u>Bellwether Interrogatory No. 7</u>, regarding Defendants' surveillance of specific Bellwether Plaintiffs; and

<u>General Interrogatories Nos. 27-29</u>, regarding Defendants' distribution of advertisements, instructions, and packaging.

Plaintiffs also seek an order compelling Defendants to supplement their Responses to reflect the relationship between the Responding Party's knowledge and the documents or other sources cited in the Responses – *i.e.*, to state that Defendants lack information beyond that in the document, or to describe the information Defendants have beyond or in a more easily useable form than what is contained in the cited documents.   Such an order would apply to Responses to <u>Bellwether Interrogatories Nos. 2-5, and to General Interrogatories Nos. 16 and 27-29</u>. [29]

For the aforementioned reasons, Plaintiffs respectfully request that this Court order Defendants to respond to Bellwether Plaintiffs' Interrogatories Nos. 2-6, and

---

[29] Plaintiffs do not believe a similar amendment or supplementation is necessary with regard to Defendants' Responses to Interrogatories Nos. 3, 8, 13, 14, and 15, despite the similar deficiencies on the face of those Responses. Plaintiffs arrive at this position in light of Defendants' representations in prior briefing and discovery responses (and the Court's reliance on those representations in its prior Order) about Defendants' lack of any additional responsive information to those Interrogatories.  *See* Apr. 10, 2020 Order (Dkt. No. 1085)

to supplement their Responses to Plaintiffs' General Interrogatories Nos. 16 and 27-29.

Dated: July 8, 2020

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.

316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2020, I caused the foregoing Motion to Compel Discovery to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/* Christopher A. Seeger

## CERTIFICATE OF CONFERENCE

I certify that I have complied with the conference requirement pursuant to the Court's Local Rule 7.1(B). Through the course of the past several months, the parties have met and conferred on this matter on numerous occasions, including but not limited to teleconferences on April 24, June 9, and June 23, 2020. Through the course of said meet and confers and correspondence on this issue, Defense Counsel has refused to answer the Interrogatories at issue herein.

## CERTIFICATE OF WORD COUNT

I certify that this Plaintiffs' Memorandum to Plaintiffs' Motion to Compel contains 6,580 words per my word-processing system, and including all words exhibited within Plaintiffs' Certificates of Service, Conference, and Word Amount.