# EXHIBIT C

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, ) ) ) ) This Document Relates to All Cases ) ) ) | Case No. 3:19-md-02885 Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Defendants serve these Responses and Objections to Plaintiffs' Second Interrogatories dated February 11, 2020. Defendants' responses are based upon Defendants' current knowledge, understanding, belief, and searches for information and documents, including the information identified under the agreed TAR Protocol negotiated by the parties. Defendants' investigation of facts and information relating to these interrogatories is continuing, and Defendants reserve the right to modify, amend, or supplement their responses as discovery continues, including discovery from the U.S. Government and/or other third parties.

**GENERAL OBJECTIONS**

1. Defendants assert the following objections to each and every one of Plaintiffs' Interrogatories, including any definitions or instructions associated therewith. These general objections are incorporated by reference into each specific response set forth by Defendants and are neither waived nor limited by any specific responses.

2. Defendants object to these Interrogatories to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the

Federal Rules of Civil Procedure or the Rules and Orders of this Court, including Pretrial Order No. 12 (hereinafter, the "TAR Protocol") negotiated by the parties and entered by the Court on July 1, 2019. (*See* Dkt. No. 472.)

3. Defendants object to the Interrogatories to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

## ANSWERS TO INTERROGATORIES

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants serve these Responses and Objections to Plaintiffs' Second Interrogatories dated February 11, 2020.

## INTERROGATORIES

**INTERROGATORY NO. 27:**

Please identify all Documents and Communications relating to or constituting any marketing, advertising, promotional, sales, or instructional material regarding the 3M Earplugs, including posters, brochures, print, broadcast, internet, and social media material, whether directed to end-users, distributors, or to purchasers, including the manner of dissemination of such material, any contracts relating to such material, the details of the medium, manner, and timing of its distribution, and the identities and contact information of any entities apart from Defendants involved in the preparation, dissemination and placement of such material, and the Bates identifiers for any drafts of such material.

**RESPONSE TO REQUEST NO. 27:**

Defendants object to this interrogatory as overbroad, unduly burdensome, and disproportional to the needs of this case because it asks Defendants to review, categorize, and index the documents produced to date pursuant to the agreed TAR Protocol. In Pretrial Order No.

10, "[t]he parties agree[d] to use TAR to identify and classify potentially responsive documents in connection with Defendants' production." (Dkt. No. 443 at 10.) Having required that Defendants use TAR to identify, classify and produce documents in this litigation, Plaintiffs cannot now go back and request that Defendants undertake the significant burden of manually reviewing and reclassifying those documents into various subject-matter buckets.

Courts have squarely rejected similar interrogatories, even in cases not involving an agreement between the parties to rely on TAR. *See, e.g.*, *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 255 (D. Colo. 2014) (sustaining a defendant's objection to a plaintiff's interrogatory because "[a] party may properly object to overly broad or unduly burdensome discovery requests that seek to impose the duty of organizing documents according to another party's document requests") (citing *MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 WL 3010343, at \*4 (D. Kan. Oct. 15, 2007))*; Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*, No. 08-cv-12486, 2009 WL 1803216, at \*3 (E.D. Mich. June 17, 2009) (Party that produced documents per the parties' agreement at the Rule 26(f) conference satisfied its Rule 34 burden and "has no duty to further organize or label the documents" because "Rule 34 and the relevant case law are quite clear: once a party demonstrates that it has produced documents as they are kept in the usual course of business, it has no further duty under Rule 34 or otherwise, absent some exceptional circumstances not present in this case, to organize and label the documents."); *3M Co. v. Kanbar*, No. C06-01225 JW (HRL), 2007 WL 1725448, at \*3 (N.D. Cal. June 14, 2007) (refusing to find exceptional circumstances where moving party complained about sorting through "a mass of documents" because outcome was a "predicament essentially of [moving party's] own making" as a result of the "broad document requests"); *Steel v. NCC Recovery, Inc.*, No. 8:13-CV-559-T-33EAJ, 2013 WL 12170585, at \*2 n.3 (M.D. Fla. Aug. 22, 2013) (finding interrogatories

3

to be overbroad because they sought "any and all documents that describe[d], record[ed], or establish[ed] [the d]efendant's methods and techniques used to collect debts" and "any and all training, personnel, or other instruction manuals" (brackets omitted)).

The undue burden imposed by Plaintiff's interrogatory is underscored by the fact that Plaintiffs have taken numerous depositions of the relevant marketing personnel, including numerous 30(b)(6) depositions, during which Plaintiffs inquired into the detail of Defendants' marketing practices and repeatedly demonstrated their familiarity with the marketing records produced pursuant to the agreed TAR Protocol. Plaintiffs thereby sought the requested information through those less burdensome means, and in the process demonstrated their ability to navigate and isolate the documents produced in this case, including the marketing, sales, and advertising materials requested by this interrogatory. Plaintiffs' efforts in that regard emphasize that an ex-post interrogatory asking defendants to re-review those same materials and sort them into subject-matter buckets is unduly burdensome and disproportional to the needs of the case. *See* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2174 (3d ed. 2019) (explaining that the "proportionality approach [employed by courts] balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory").

The TAR Protocol is a "cooperative process" that is meant "to obtain relevant documents as efficiently as can be achieved." (Dkt. No. 472. at 14.) In light of that directive, Defendants are willing to meet and confer with Plaintiffs to discuss whether there are efficient and less burdensome means of assisting Plaintiffs with identifying discrete categories of information contained in the TAR productions to date.

**INTERROGATORY NO. 28:**

Please identify all final versions of any packaging, instruction, insert, and/or user guide for the 3M Earplugs, the methods by which these items were distributed (whether were distributed in conjunction with all 3M Earplugs, with some specific subset of the 3M Earplug, or otherwise), and the times periods during which each item was distributed.

**RESPONSE TO REQUEST NO. 28:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of this case for the reasons stated in response to Interrogatory No. 27, and incorporate their response to Interrogatory No. 27 here.  Defendants produced the materials responsive to this interrogatory pursuant to the agreed TAR Protocol.  Having required Defendants to do so, Plaintiffs cannot now go back and request that Defendants undertake the significant burden of manually reviewing hundreds of thousands of documents to "identify all final versions of any packaging, instruction, insert, and/or user guide" contained therein.  The undue burden imposed by Plaintiff's interrogatory is underscored by the fact that Plaintiffs have taken numerous depositions of the personnel responsible for instructions and packaging inserts, during which Plaintiffs inquired into the details of those subjects and demonstrated their familiarity with the relevant materials produced pursuant to the agreed TAR Protocol by using them as deposition exhibits.  However, because the TAR Protocol is a "cooperative process" that is meant "to obtain relevant documents as efficiently as can be achieved" Dkt. No. 472 at 14, Defendants are willing to meet and confer with Plaintiffs to discuss whether there are efficient and less burdensome means of assisting Plaintiffs with identifying discrete categories of information contained in the TAR productions to date.

**INTERROGATORY NO. 29:**

Please identify each Document, including any instruction, packaging, guide, insert, or promotional material, contained in shipments of 3M Earplugs delivered to the U.S. Government, and the shipment(s) or time period(s) in which each such Document was distributed.

**RESPONSE TO INTERROGATORY NO. 29:**

Discovery into information responsive to this interrogatory is ongoing, including discovery from the U.S. Government. Based on discovery taken to date, Defendants respond as follows.

First, Defendants refer Plaintiffs to the bill of materials related to bulk shipments of Combat Arms Earplugs version 2 to the military. (*See* 3M_MDL000393649.) The bill of materials lists the various materials that went into each shipment, and does not indicate instructions were included in the shipments.

Second, Marc Santoro gave the following testimony during his deposition:

> Q. Was there any particular package or size that you recall discussing with Mr. Ohlin?
>
> A. Yes. Doug requested the generation 2 to be put in a bulk pack.
>
> Q. And did he indicate how he wanted that packaged?
>
> A. Yes. He requested that specifically 50 pair in a box -- sorry, 50 pair in a plastic bag, with nothing else in there, inside a box.
>
> Q. Did he tell you not to include instructions in that box?
>
> A. He did.
>
> Q. Did he indicate why he didn't want instructions in that box?
>
> A. He felt that personal training was the most effective way to train the soldiers, and that the military audiologists were going to take on that responsibility of individually training every solider.
>
> Q. Did you follow Mr. Ohlin's requests?
>
> A. Yes.

6

>Q. Any why is that?
>
>A. Doug is the one that pretty much dictated how we were to provide hearing protection to the military.

(12/3/2019 Santoro Dep. Tr. at 326:8–327:10.)

Third, Lieutenant Colonel John Merkley gave the following testimony during his deposition:

>Q. Okay. Other than the wallet card and the one-page fact sheet we marked as Exhibit 11, are you aware of any other training materials that would have been physically distributed to individual service members?
>
>A. Not -- not that I can recall.
>
>Q. Have you ever seen instructions for the Combat Arms Version 2 that were authored by Aearo or 3M?
>
>A. I have not.
>
>Q. When you were responsible for training technicians and hearing conservation officers on how to fit the Combat Arms Version 2, you weren't relying on any Aearo or 3M instructions; is that fair?
>
>A. Yes.

(2/27/2020 Merkley Dep. Tr. at 128:2–129:2 (objections omitted).)

Fourth, certain shipments of the CAEv2 were provided to the military by intermediate distributors, including Brock Sales Company. Plaintiffs subpoenaed Brock Sales Company for relevant documents. Documents produced in response to that subpoena include a document titled "Brock Sales Company … Instructions for Inserting the Combat Arms Earplug (CAE) … Packaged 50 pair / bag." (*See* BROCK_00000083.)

Fifth, during his 30(b)(6) deposition, Doug Moses gave the following testimony:

>Q. Okay. So at least as of 2009, in slides that you were asking your boss to approve or whether he liked them, it states specifically that when there was bulk sales of the Combat Arms version 2 earplugs, there was no individual instructions sent; is that correct?

7

> A. It says that here, yes.

(12/5/2019 Moses Dep. at 162:21–163:3.)

Sixth, documents produced in this litigation to date contain pictures of packaging and labeling for certain shipments of Combat Arms Earplugs version 2. (*See, e.g.*, 3M_MDL000570015–16.)

Finally, to the extent this interrogatory seeks information regarding specific shipments made to the U.S. Government, Defendants refer Plaintiffs to the sales data produced in this litigation: 3M_MDL000393649; 3M_MDL000393648; 3M_MDL000393647; 3M_MDL000393646; 3M_MDL000393651. To the extent this interrogatory seeks more, Defendants object on the grounds that it is overbroad, unduly burdensome and disproportionate to the needs of the case.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 30:**

Please identify all Documents and Communications relating to your decisions regarding the potential recall, withdrawal from market, or cessation of sales of the 3M Earplugs.

**RESPONSE TO INTERROGATORY NO. 30:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of this case for the reasons stated in response to Interrogatory No. 27, and incorporate their response to Interrogatory No. 27 here. Defendants produced the materials responsive to this interrogatory pursuant to the agreed TAR Protocol. Having required Defendants to do so, Plaintiffs cannot now go back and request that Defendants undertake the significant burden of manually reviewing hundreds of thousands of documents to "identify all documents and

communications" related to that decision. The undue burden imposed by Plaintiff's interrogatory is underscored by the fact that Plaintiffs inquired into this topic at numerous depositions, during which Plaintiffs used documents called for by this interrogatory as deposition exhibits. However, because the TAR Protocol is a "cooperative process" that is meant "to obtain relevant documents as efficiently as can be achieved" (Dkt. No. 472. at 14), Defendants are willing to meet and confer with Plaintiffs to discuss whether there are efficient and less burdensome means of assisting Plaintiffs with identifying discrete categories of information contained in the TAR productions to date.

DATED: March 26, 2020        By: *Kimberly Branscome*
                             Kimberly Branscome
                             KIRKLAND & ELLIS LLP
                             2049 Century Park East
                             Los Angeles, CA 90067
                             Tel.: (213) 680-8400
                             Email: kimberly.branscome@kirkland.com

                             *Attorney for Defendants 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 26, 2020, a true and correct copy of the foregoing:

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

was served as follows:

☒ **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below. I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

☒ **[MDL Centrality]** By electronically serving the above document via the MDL Centrality website pursuant to Pretrial Order No. 15 (ECF No. 630).

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>baylstock@awkolaw.com | Shelley V. Hutson, Co-Lead Counsel<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>shutson@triallawfirm.com |
| Christopher A. Seeger, Co-Lead Counsel<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>cseeger@seegerweiss.com | Brian H. Barr, Co-Liaison Counsel<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 South Baylen Street<br>Pensacola, FL 32502<br>Tel.: (850) 435-7044<br>bbarr@levinlaw.com |
| Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>epefile@mostynlaw.com | Virginia E. Anello, Discovery & ESI Subcommittee<br>Douglas & London, PC<br>59 Maiden Ln, 6th Floor<br>New York, NY 10038<br>Tel.: (212) 566-7500<br>vanello@douglasandlondon.com |
| Kathering E. Charonko, Discovery & ESI Subcommittee<br>Bailey Glasser, LLP<br>209 Capitol Street<br>Charleston, WV 25301 | Taylor C. Bartlett, Discovery & ESI Subcommittee<br>Henninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203 |

Tel.: (304) 345-6555  
kcharonko@baileyglasser.com

J. Nixon Daniel, Discovery & ESI Subcommittee  
Beggs & Lane, RLLP  
501 Commendencia Street  
Pensacola, FL 35202  
Tel.: (850) 469-3306  
jnd@beggslane.com

Tel.: (205) 301-6115  
taylor@hgdlawfirm.com

David R. Buchanan, Discovery & ESI Subcommittee  
Seeger Weiss LLP  
77 Water Street, 8th Floor  
New York, NY 10005  
Tel.: (973) 639-9100  
dbuchanan@seegerweiss.com

DATED: March 26, 2020

*/s/ Kimberly Branscome*  
Kimberly Branscome