## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19-md-2885-MCR-GRJ |
| | | Judge M. Casey Rodgers |
| This Document Relates to: Lloyd Baker Civil Case No. 7:20-cv-00039 | ) ) ) ) | Magistrate Judge Gary R. Jones |
| | | PUBLIC VERSION |
| Luke Estes Civil Case No. 7:20-cv-00137 | ) ) ) | |
| Stephen Hacker Civil Case No. 7:20-cv-00131 | ) ) ) | |
| Vernon Rowe Civil Case No. 7:20-cv-00026 | ) ) | |

**Defendants' Motion to Compel Production of Unredacted Records or, in the Alternative, for *In Camera* Review**

Pursuant to Federal Rule of Civil Procedure 37(a), Defendants respectfully move the Court to compel Plaintiffs Lloyd Baker, Luke Estes, Vernon Rowe, and Stephen Hacker to produce unredacted versions of the disability and medical records that they have listed on their privilege logs.

## BACKGROUND

Plaintiffs Baker, Estes, Rowe, and Hacker have improperly redacted information from their productions of medical records from the Department of

Veterans Affairs and Department of Defense, and disability records from the Veterans Benefits Administration. Mr. Rowe included 2,158 redactions on his privilege log, describing each as a "Mental Health Record Per PTO 39." Ex. 1. Likewise, Mr. Baker included 198 redactions and Mr. Estes included 105 redactions on their privilege logs, describing them all as "Highly Protected Information – Mental Health per PTO 39" and "Mental Health Records pursuant to PTO 39," respectively. Ex. 2; Ex. 3. Mr. Hacker has included 160 entries on his privilege logs to date; each redaction is based on the psychotherapist-patient privilege and relevance.[1] Ex. 4. Plaintiffs have redacted a variety of records not subject to the psychotherapist-patient privilege, including VA disability records, sleep apnea records, primary care records, pain management records, and physical therapy records.

One July 2, Defendants met and conferred with counsel for Plaintiffs Baker, Estes, and Rowe about their redaction of documents produced in this case. Defendants explained their position that the psychotherapist-patient privilege only attaches to confidential communications between a patient and a psychotherapist for the purpose of diagnosis and treatment; that applying for VA disability benefits waives the psychotherapist-patient privilege, including with respect to documents

---

[1] Mr. Hacker's productions are also not yet complete and his counsel has indicated that future productions will also include redactions.

submitted in support of the disability application; and that Plaintiffs' medical and disability records are relevant to their damages claims and Defendants' causation defense. Thereafter, Defendants had a similar meet-and-confer with Mr. Hacker's counsel. Following the meet-and-confer sessions, the Parties remain at an impasse.

Defendants now move to compel Plaintiffs Baker, Estes, Hacker, and Rowe to produce unredacted versions of the documents listed on their privilege logs. In the alternative, Defendants seek *in camera* review of the documents. Given the Court's order that depositions of Group A plaintiffs occur by July 31, 2020, it is critical that Defendants promptly receive these records.

To provide context, Defendants summarize the Court's prior orders on the psychotherapist-patient privilege and related issues.

### *Pretrial Order No. 25*

At the hearing held on January 30, 2020, the Court rejected Plaintiffs' argument that mental health records are not relevant. Accordingly, in Pretrial Order No. 25, the Court ruled that "information concerning the identity, diagnosis, prognosis, testing, or treatment of a plaintiff in connection with drug abuse, alcoholism or alcohol abuse, or mental health issues" was "discoverable." Dkt. 977 at 4. The Court reached this conclusion, in part, based on its rejection of Plaintiffs' relevance argument. *See* Ex. 5. Pretrial Order No. 25 did not address privilege or waiver issues.

*Judge Jones' March 26 Order*

The Court first addressed the psychotherapist-patient privilege in response to Defendants' request that Plaintiffs provide authorizations for the release of all of their nonmilitary medical records, including all of their nonmilitary mental health records. The Parties did not, and could not, litigate whether the psychotherapist-patient privilege attached to any specific record. Therefore, the issue for the Court was narrow—whether Plaintiffs waived the psychotherapist-patient privilege with respect to all of their nonmilitary mental health records by "plac[ing] their mental condition in controversy." Dkt. 1065 at 6. In answering that narrow question, the Court found that "Plaintiffs[] ha[d] not waived the [psychotherapist-patient] privilege applicable to their mental health records simply because they have alleged claims for mental anguish, distress and loss of enjoyment of life." *Id.* at 9.

*April 17 Communication Regarding Amendment of Pretrial Order No. 25*

On April 17, 2020, the Court indicated that it would amend Pretrial Order No. 25, consistent with Judge Jones' ruling on the issue of waiver of the psychotherapist-patient privilege with respect to Plaintiffs' private healthcare providers. *See* Ex. 5. The Court separately explained that Defendants may raise the issue of waiver if they believe a Plaintiff has placed her mental health at issue, other than by alleging garden variety emotional distress. *See* Ex. 6.

*Judge Jones' April 28 Order*

The Court next addressed the psychotherapist-patient privilege in response to Defendants' motion to compel responses to three interrogatories concerning mental health. The Court stated that "[t]he dispute . . . pertain[ed] to privilege and waiver, *not relevancy*." Dkt. 1108 at 13 (emphasis added). The Court further explained that "the issue . . . of whether [the] [P]laintiff[s] ha[d] placed [their] . . . mental condition 'in controversy' is a matter of procedural waiver (and pleading)." *Id.* at 14. The Court then reiterated its prior finding that "Plaintiffs have not placed their prior mental health diagnoses in controversy simply because they allege as damages mental anguish, distress and loss of enjoyment of life." *Id.* at 15. But the Court noted that there are other "substantive" ways to waive the psychotherapist-patient privilege, "such as . . . by disclosing the privileged information to a third party." *Id.* at 14.

*Pretrial Order No. 39*

The Court next addressed the psychotherapist-patient privilege on June 1, 2020, when it entered Pretrial Order No. 39 and amended "[t]he procedures for [reviewing] VA records concerning the identity, diagnosis, prognosis, testing, or treatment of a plaintiff in connection with substance abuse or mental health issues." Dkt. 1154 at 1. The Court's amendment to Pretrial Order No. 25 was "consistent with the Magistrate Judge's ruling as to the discoverability of such records in the possession or control of private healthcare providers." *Id.* at 1–2 (citing Dkt. 1065).

Therefore, Pretrial Order No. 39 does not alter the Court's prior orders concerning the psychotherapist-patient privilege.

Under Pretrial Order No. 39, "[a] redaction or removal of . . . information [related to substance abuse or mental health issues] means that plaintiff's counsel reasonably and in good faith believes that the information qualifies for redaction or removal." Dkt. 1154 at 2. Defendants can challenge the propriety of any redaction or removal; the information redacted or removed is no longer "protected from disclosure" once "the Court rules that the documents were not properly redacted or withheld." *Id.* at 2–3.

*Judge Jones' June 11 Order*

The Court most recently addressed the psychotherapist-patient privilege when discussing the requirements for Plaintiffs' privilege logs. The Court reiterated its prior finding on waiver—that "Plaintiffs have not placed their mental health 'in controversy' so as to require the production of mental health records in discovery." Dkt. 1172 at 9 (citing Dkts. 1108, 1154). But the Court ordered Plaintiffs to include in their privilege logs "information [that] will be sufficient for the parties to confer on the legitimacy of the Bellwether Plaintiffs' privilege claims or, in appropriate circumstances, the relevance of the documents or information being withheld." *Id.* at 10. As anticipated by the Court's June 11 Order, Defendants now challenge "the legitimacy of" Plaintiffs' claims regarding privilege and relevance.

## LEGAL STANDARD

Plaintiffs bear the burden of showing that they have properly redacted the documents included on their privilege logs. "To invoke the benefit of the [psychotherapist-patient] privilege, [a plaintiff] bears the burden of showing that [the physicians] . . . are licensed psychotherapists, that his communications to the therapists were confidential, and that the communications were made during the course of diagnosis or treatment." *United States v. Martinez*, 2009 WL 10675091, at *5 (M.D. Fla. 2009) (Jones, J.). Moreover, "[w]hen the discovery requested appears relevant on its face, then the party objecting to the discovery based upon relevance has the burden to show the requested discovery is not relevant." *Lesti v. Wells Fargo*, 297 F.R.D. 665, 667 (M.D. Fla. 2014).

## DISCUSSION

The Court should grant Defendants' motion and order Plaintiffs to produce unredacted versions of the documents listed on their privilege logs. The information redacted from those documents is nonprivileged and relevant. In the alternative, the Court should review the documents *in camera*.

## I.   THE INFORMATION REDACTED FROM MR. ROWE'S RECORDS IS NONPRIVILEGED AND RELEVANT

Mr. Rowe has waived any privilege that may have attached to documents considered by the VBA in connection with his disability application. Those records are also nonprivileged and highly relevant, including to Mr. Rowe's loss of earnings

and loss of enjoyment of life claims. And even with the limited information available to Defendants, it is apparent that over 100 of the more than 2,100 entries on Mr. Rowe's privilege log are nonprivileged and relevant. *See* Ex. 1.

### A. Mr. Rowe explicitly waived "any privilege" that attached to the information submitted in support of his disability application.

Mr. Rowe explicitly waived any privilege that attached to documents sent to the VBA in support of his disability application when he twice "authorize[d] any person or entity, including but not limited to any organization, service provider, employer, or government agency to give the Department of Veterans Affairs any information about [him], and . . . *waive*[*d*] *any privilege which makes the information confidential*." Ex. 7 at -003896 (emphasis added)); *see also id.* at -005469 (same).

Having signed a waiver for "any privilege" that might attach to the information submitted in support of his disability application, Mr. Rowe cannot now try to reassert the psychotherapist-patient privilege over his disability records. This is particularly true given that "no Eleventh Circuit or Florida authority supports" the theory that a party can "selective[ly] waive" privilege. *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 643 (S.D. Fla. 2007); *see also Pensacola Firefighters' Relief Pension Fund v. Merrill Lynch Pierce Fenner & Smith*, 265 F.R.D. 589, 596–97 (N.D. Fla. 2010) (same); *Saa v. Bank of Am.*, 2010 WL 11506054, at *1 (S.D. Fla. 2010) (same).

**B.      Mr. Rowe waived the psychotherapist-patient privilege when he applied for disability benefits.**

Even assuming the disability records were once privileged, and that Mr. Rowe had not explicitly waived "any privilege" that might have attached to those records, Mr. Rowe also waived the psychotherapist-patient privilege when he voluntarily shared those documents with third parties—the VBA, the Florida Department of Veterans' Affairs, and the American Legion.

"Like other testimonial privileges, the patient may of course waive the protection" of the psychotherapist-patient privilege.[2] *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). "[T]he psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Id.* at 10. Accordingly, when a patient broaches that confidence, the privilege ceases to exist. *See* Dkt. 1108 at 6 (noting waiver "by disclos[ure of] the privileged information to a third-party"); *Harley v. Health Ctr. of Coconut Creek, Inc.*, 469 F. Supp. 2d 1212, 1213 (S.D. Fla. 2006) ("As with attorney/client privilege, doctor/patient privilege, clergy person/parishioner

---

[2] Waiver by voluntarily sharing formerly privileged information is an independent form of waiver. Even if Mr. Rowe had not placed his mental condition at issue in this case, information that he has voluntarily shared with third parties is not protected by the psychotherapist-patient privilege. *See E.E.O.C. v. Cheesecake Factory, Inc.*, 2017 WL 3887460, at *5–6 (W.D. Wash. Sept. 6, 2017) (explaining that a plaintiff who has not put his mental condition "at issue" can still waive the psychotherapist-patient privilege when he "discloses [confidential communications] to third-party providers for purposes of obtaining benefits").

privilege, spousal privilege, to name a few, privileges can be waived if the parties affirmatively do something to destroy the privilege or remove themselves from the 'umbrella' protection of the privilege."); *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, 2011 WL 2682958, at *4 (S.D. Fla. 2011) (same).

Mr. Rowe shared the information in his disability records with a third party when he submitted the information to the VBA to obtain disability benefits. Mr. Rowe further shared "any and all" of his disability records with third parties when he "authorize[d] the VA to release any and all of [his] records . . . to [his] appointed service organization"—an individual from the Florida Department of Veterans' Affairs.[3] Ex. 8 at -003345. Mr. Rowe signed the same authorization for the American Legion. *Id.* at -005471 (authorizing release to the American Legion); *see also, e.g.*, *id.* at -003363 (American Legion carbon copied on VBA correspondence); -003369 (same); -003920 (same), -003978 (same), -003997 (same), -004102 (same), -004114 (same); -004621 (same).

When courts have examined these types of applications, including an application for VA disability benefits, they have found that the information shared by the applicant is nonprivileged because it has been voluntarily shared with a third

---

[3] Despite the fact that Mr. Rowe authorized the release of *all of his records* to the Florida Department of Veterans' Affairs *and* the American Legion, Mr. Rowe's privilege log states that *none* of the over 2,100 entries on the privilege log were shared with a third party. *See* Ex. 1.

party to obtain disability benefits. *In re Grand Jury Investigation*, 114 F. Supp. 2d 1054, 1056 (D. Or. 2000) (explaining that "submitting . . . records [to the VA] in support of [a] claim for monetary benefits . . . . is no different than submitting medical records to a tortfeasor's insurance carrier in connection with a demand for damages associated with bodily injuries caused by an automobile accident"); *Cheesecake Factory*, 2017 WL 3887460, at *6 ("A patient waives the [psychotherapist-patient] privilege as to confidential communications he discloses to third-party providers for purposes of obtaining benefits."); *see also Bosworth v. Dayton Heidelberg Distrib. Co.*, 394 F. Supp. 3d 794, 795 (S.D. Ohio 2019) (ordering plaintiff to execute an authorization for the release of records because "the patient-physician privilege [did not] . . . attach to [the plaintiff's] application for VA benefits or to the records considered in determining his disability benefits claim"). Therefore, Mr. Rowe's disability records, including the information he submitted in support of his disability application, are not subject to the psychotherapist-patient privilege and must be produced to Defendants without redactions.

   **C.   Mr. Rowe has not shown that he redacted confidential communications between himself and a psychotherapist for the purpose of diagnosis and treatment.**

   Mr. Rowe has redacted over one hundred records that are not confidential communications between himself and a psychotherapist for the purpose of diagnosis

or treatment.[4] For example, Mr. Rowe has redacted communications with the VA about his disability application, records from his compensation and pension exams (which are part of his disability application), notes from his primary care doctors, notes from ████████████████, notes from a ██████████ and records from ████████████████████████████████. *See* Ex. 8 (excerpts of V. Rowe records).

"[T]he [psychotherapist-patient] privilege protects only psychotherapy records, not general medical records."[5] *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 558 (N.D. Ga. 2001) (*cited in Ortiz-Carballo v. Ellspermann*, 2009 WL 961131, at *3 (M.D. Fla. 2009) (Jones, J.) (finding that the psychotherapist-patient privilege did not apply to records maintained by a plaintiff's "internal medicine doctor" and "family physician," even though the family physician "prescribed [the] [p]laintiff medication for depression")); *Liles v. Stuart Weitzman, LLC*, 2010 WL 11505129, at *5 (S.D. Fla. 2010) (ordering the production of medical records

---

[4] These records are an illustrative example of redacted records that do not involve a confidential communication with a psychotherapist for the purpose of diagnosis or treatment. Defendants reserve the right to contest other redactions that do not concern communications with psychotherapists.

[5] Mr. Rowe's privilege log does not identify which privilege Plaintiff seeks to invoke. During the meet-and-confer session, Mr. Rowe did not identify which privilege he seeks to invoke. Defendants therefore analyze the issue under federal law and reserve the right to respond if Mr. Rowe ever invokes a specific privilege.

concerning "treatment (but not counseling) for any mental condition rendered by a physician (other than a psychiatrist, psychologist, or other licensed mental health professional)" even though the plaintiff only sought damages for garden variety emotional distress); *United States v. Bolander,* 722 F.3d 199, 223 (4th Cir. 2013) ("As the Supreme Court in *Jaffee* made clear, the privilege only extends to those psychotherapists who are being consulted for diagnosis and treatment, not under other circumstances.").

Therefore, the mere presence of so-called mental health information in a medical record does not mean that the psychotherapist-patient privilege applies. To properly invoke the psychotherapist-patient privilege, Mr. Rowe must demonstrate that the redacted information is a confidential communication with a psychotherapist for the purpose of diagnosis or treatment. Mr. Rowe has not carried his burden and the Court should order him to produce unredacted versions of the documents that do not involve a psychotherapist.

In the alternative, the Court should conduct *in camera* review of the documents that Mr. Rowe has placed on his privilege log. To warrant *in camera* review, "a lesser evidentiary showing is needed . . . than is required to ultimately overcome the privilege." *Tindall v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1352 (M.D. Ga. 2011). "[W]here there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, the court must utilize its discretion as

to whether *in camera* review is appropriate under the circumstances presented." *U.S. v. Davita*, 301 F.R.D. 676, 681 (N.D. Ga. 2014). Mr. Rowe has various waivers of privilege with respect to his disability records, including documents reviewed by the VBA when deciding his disability claims, and Mr. Rowe has attempted to redact medical records with non-psychotherapists. These are red flags that warrant *in camera* review by the Court.

### D. The information that Mr. Rowe has redacted from his disability and medical records is relevant.

The information redacted from Mr. Rowe's medical records is relevant to the Parties' claims and defenses because it bears on Mr. Rowe's damages claims and Defendants' causation defense. *See* Fed. R. Civ. P. 26(b)(1). "Rule 26(b)(1) indicates that the Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) (internal quotation marks and brackets omitted). "Federal Rule of Evidence 401 defines 'relevant evidence' as evidence 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Royal Bahamian Ass'n v. QBE Ins.*, 268 F.R.D. 692, 693 (S.D. Fla. 2010) (quoting Fed. R. Evid. 401).

Mr. Rowe has suggested that the redacted information is not relevant because he has not put his mental condition at issue in this case. But, as this Court explained in *Ortiz-Carballo*, the test for relevance is distinct from the test for whether a

plaintiff has waived the psychotherapist-patient privilege by putting her mental condition at issue. 2009 WL 961131, at *3 (Jones, J.). Where, as here, "no privilege . . . applies . . . , the Court need not determine whether Plaintiff has placed his mental . . . condition at issue" and instead "need only determine" whether the "records are relevant." *Id.*; *see also Liles*, 2010 WL 11505129, at *4 (same); *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009) (same). For example, in *Ortiz-Carballo*, this Court analyzed three doctors, one of whom qualified as a psychotherapist:

- For Dr. Poetter, the court "conclude[d] that she qualifies as a psychotherapist such that the privilege would cover her confidential communications with [the p]laintiff." *Ortiz-Carballo*, 2009 WL 961131, at *1. The Court found that "any psychological and medical records created by Dr. Poetter are presumably the result of confidential communications between a patient, Plaintiff, and his psychotherapist," and therefore "Dr. Poetter's records are covered by the psychotherapist-patient privilege, unless it has been waived." *Id.* The Court further found that because the plaintiff had not asserted more than "garden variety" emotional distress, he had not placed his mental state at issue and there was no waiver. *Id.* at *2.

- However, for Dr. Warman, the plaintiff's "internal medicine doctor," the Court held that "because there is no privilege that applies to Dr. Warman's records, the Court need not determine whether Plaintiff has placed his mental and physical condition at issue. Instead, the Court need only determine whether Dr. Warman's records are relevant to the claims in this case." *Id.* at *3.

- Similarly, for Dr. Gomez, a "family physician" who "prescribed Plaintiff medication for depression following a break up of a long-term relationship" but "did not provide counseling," the Court applied a "relevance" analysis, not an "at issue" or "garden variety" analysis. The Court held that although "the requested records are subject to discovery

15

under the Federal Rules of Civil Procedure if the records are 'relevant to a claim or defense of any party,'" the records at issue were not relevant because the treatment was "more than 10 years ago for a six-month bout of depression." *Id.*

The above analysis from *Ortiz-Carballo* underscores that the test for relevance is not the same as the "at issue" test used to analyze whether a plaintiff has waived the psychotherapist-patient privilege through her pleadings. "Instead, the Court need only determine whether [the] records are relevant to the claims in [the] case." *Id.* (granting motion to compel the production of medical records because they were "relevant" and declining to "determine whether [the] [p]laintiff ha[d] placed his mental . . . condition at issue"); *Nichols Gas & Oil, Inc.*, 256 F.R.D. at 120–23 (using "relevance" analysis to the extent plaintiff consulted "medical, non-mental health providers," "even if the treatment sought from the medical provider was a referral to a mental health professional or a prescription for medication to treat depression or anxiety").

As Defendants have explained, the documents listed on Mr. Rowe's privilege log are nonprivileged.[6] Therefore, when deciding whether the redacted information is relevant, the applicable question is simply "whether [the] records are relevant to the claims in [the] case." *Ortiz-Carballo*, 2009 WL 961131, at *3. "The Courts have

---

[6] In response to questioning by Judge Jones, Plaintiffs' leadership counsel has stated that Plaintiffs are not asserting a doctor-patient privilege. June 10, 2020 Tr. at 59.

long held that relevance for discovery purposes is much broader than relevance for trial purposes, and as such discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Companhia Energetica Potiguar v. Caterpillar Inc.*, 307 F.R.D. 620, 627 (S.D. Fla. 2015) (internal quotation marks and brackets omitted); *see also Sheets v. Sorrento Villas, Section 5, Ass'n*, 2016 WL 11493318, at *1 (M.D. Fla. May 9, 2016) ("The term 'relevant' is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))).

1.  The Court previously found that medical records, mental health records, and disability records are relevant.

The Court has previously found that medical records, mental health records, and disability records are relevant. With respect to medical records, the Court explained that "[t]he central question in this case is what caused each plaintiff's hearing loss." Dkt. 1065 at 9. The Court further noted that "[t]he Bellwether Plaintiffs' adolescent medical records, as well as those created more recently, will likely include a host of information as to the cause of each Bellwether Plaintiff's medical conditions." *Id.* Further, "[t]hese records also likely will be essential to the ability of Defendants' medical experts to analyze the cause and nature of the hearing loss alleged in this case and thus will be important to their ability to render fully

17

informed opinions." *Id.* In a similar vein, at a hearing on January 30, 2020, Judge Rodgers rejected Plaintiffs' argument that mental health records are not relevant. Ex. 5.

At the March 24 hearing concerning Defendants' requests for authorizations, the Court stated: "I can see where Social Security disability records would be relevant if someone has applied for and/or applied for and successfully received Social Security benefits, because there would be submission of medical records, there would be testimony by the Plaintiff, and that could be relevant." Mar. 24, 2020 Tr. at 36:7–12; *see also id.* at 36:24 ("[T]hose records obviously could be of some benefit."). Accordingly, in its March 26 Order, the Court stated that "any Plaintiff [who] has applied for or applied for and received Social Security disability benefits" "must execute the proposed authorization" for the release of those disability records. Dkt. 1065 at 15.

Therefore, the documents at issue "appear[] relevant on [their] face," and so Mr. Rowe—"the party objecting to the discovery based upon relevance[—]has the burden to show the requested discovery is not relevant." *Lesti*, 297 F.R.D. at 667. Mr. Rowe cannot satisfy this burden.

      2.    Mr. Rowe's disability records bear directly on Mr. Rowe's damages claims, and Defendants' defenses thereto.

Mr. Rowe seeks damages for "present diminished earning capacity[ and] future diminished earning capacity." Ex. 9 at 45–46. In his supplemental responses

to Defendants' first set of interrogatories, Mr. Rowe further states that "[t]he amount of [his] lost earnings attributable to [his] injury will be the subject of forthcoming expert proofs." *Id.* at 49. Therefore, resolution of Mr. Rowe's claims in this lawsuit will involve adjudication of whether any injury caused by his use of the CAEv2 had an impact on his earnings and earning capacity.

The information redacted from Plaintiff's disability records is relevant to his claim for lost earnings and lost earning capacity because the VA disability system compensates veterans for "reductions in earning capacity from specific injuries or combinations of injuries." 38 U.S.C. § 1155; *see also Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 927 F.3d 1263, 1264 (Fed. Cir. 2019) ("Once the VA has determined the existence of a disability, the VA must rate the disability, that is, determine the degree to which the veteran's earning capacity has been diminished."). Further, the VA disability system compensates veterans "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110; *see also* 38 C.F.R. § 3.303 ("service connection" regulation). Therefore, the information redacted from Mr. Rowe's disability records specifically concerns (1) injuries or diseases allegedly suffered or aggravated during Mr. Rowe's military service—the same time period when Mr. Rowe alleges that he was injured from his use of the CAEv2—and (2) injuries or diseases that allegedly

reduced Mr. Rowe's earning capacity—a category of damages that Mr. Rowe seeks in this case. The overlap is plain. Therefore, the information redacted from Mr. Rowe's disability records is relevant to Mr. Rowe's claims in this case.

The information redacted from Mr. Rowe's disability records is also relevant for Defendants' defenses to Mr. Rowe's claim for lost earnings and lost earning capacity. As Defendants pleaded in their Answer to the Master Long Form Complaint, "[t]he damages allegedly sustained by [Plaintiff] may have been caused by the negligent acts or omissions, in whole or in part, of individuals or entities other than Defendants, including but not limited to the United States and Plaintiff[]." Dkt. 959 at 100. Defendants will show that any lost earnings or lost earning capacity was caused by other injuries or diseases, not Plaintiff's use of the CAEv2. *See Williams v. Carnival Corp.*, 2020 WL 854809, at *1 (S.D. Fla. 2020) ("A defendant has the right to the production of medical records that have a logical connection to the plaintiff's claim of injuries." (internal quotation marks and brackets omitted)); *Cameron v. Supermedia*, 2016 WL 1572952, at *4 (N.D. Fla. 2016); *Santana v. Carnival Corp.*, 2011 WL 13220283, at *6 (S.D. Fla. 2011). Therefore, the redacted information is relevant to the Parties' claims and defenses.

Moreover, if Defendants' damages experts are provided incomplete information about Mr. Rowe's disability claims, they cannot adequately analyze the extent, if any, to which Mr. Rowe's lost earnings or lost earning capacity are due to

his use of the CAEv2. *See* Dkt. 1065 at 9. It would be inequitable for the Court to permit Mr. Rowe to only disclose those aspects of his disability records that he deems relevant when, at the same time, he intends to offer expert testimony about the alleged causes of his lost earnings and lost earning capacity.

In addition to damages for lost earnings and lost earning capacity, Mr. Rowe seeks various other categories of damages related to injuries or diseases caused by his service in the military. Those other categories of damages include "diminished quality of life, past and future medical costs, and emotional damages." Ex. 9 at 46. This information is not trivial. Mr. Rowe has an overall disability rating of ▮▮▮ and has sought disability benefits for 18 conditions. *See* Ex. 8 at -001866 to -001869. The fact that Mr. Rowe suffered injuries during his military service—other than the alleged hearing loss and tinnitus—is relevant to Mr. Rowe's pursuit of damages for "diminished quality of life" and "emotional damages."

The same is true of the medications that Mr. Rowe has been prescribed to, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See., e.g.*, Ex. 8 at V C Rowe-VA-002703 to -002708 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. Defendants' experts need to understand the full scope of Mr. Rowe's treatment for conditions—like ▮▮▮▮▮—that might affect his quality of life. That includes any medications prescribed, which themselves may affect enjoyment of life or, if they are ototoxic, the ability to hear. Defendants of course

cannot know exactly how the redacted information is relevant. *See Bonnell v. Carnival Corp.*, 2014 WL 10979823, at *4 (S.D. Fla. Jan. 31, 2014) ("[T]he unilateral editing of documents frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured, and that it also tends to make documents confusing or difficult to use." (internal quotation marks omitted)). But Mr. Rowe has not met his burden of showing that the redacted information "has no possible bearing on the subject matter of the action." *Companhia Energetica Potiguar*, 307 F.R.D. at 627.

<blockquote>
3.    Even assuming *arguendo* that the "at issue" test applied, it is met here.
</blockquote>

As discussed above, if "there is no privilege that applies," then "the Court need not determine whether Plaintiff has placed his mental and physical condition at issue," and instead the "Court need only determine whether [the] records are relevant." *Ortiz-Carballo*, 2009 WL 961131, at *3; *see also Nichols*, 256 F.R.D. at 121 (same). And, as discussed throughout this section, the information redacted from Mr. Rowe's disability and medical records is nonprivileged. Therefore, the "at issue" test is not applicable to the question of whether Plaintiff properly redacted his disability records.

But even assuming *arguendo* that the "at issue" test applied here, it is met. The Court has stated that "mental health records can become in controversy if indeed, in addition to a plaintiff pointing to a specific mental health condition or

relying upon expert testimony, if there is something that happened in one of these plaintiffs' lives of very significant import that reasonably would impact under any measure someone's enjoyment of life, then that may allow a Defendant to get into that." June 10, 2020 Tr. at 61:1–7. In such a situation, "certainly the Defendant is going to be able to, on a case-by-case basis, come back to the Court" and argue that the Defendant "should be allowed to tell the jury [the plaintiff's] enjoyment of life has been damaged because he was suffering from chronic depression, that his loss of enjoyment of life has nothing to do with the fact that he had hearing loss." *Id.* at 61:15–22.

The redactions prevent Defendants from knowing the full extent of Mr. Rowe's disability. But it is apparent that Mr. Rowe has a ████████ disability rating from the VA and that Plaintiffs consider one of his disabilities to be related to ████████ *See* Ex. 8 at -001866 to -001869. ███████████████ ████████████ Therefore, Mr. Rowe's disability rating is "something . . . of very significant import that reasonably would impact under any measure someone's enjoyment of life." June 10, 2020 Tr. at 61:4–7. Accordingly, even if the Court were to apply the "at issue" test, the documents on Mr. Rowe's privilege log would still be relevant and should be produced to Defendants. In any event, the test that must actually be applied is relevance, *Ortiz-Carballo*, 2009 WL 961131, at *3, and the documents on Plaintiffs' privilege log are relevant.

### E. Mr. Rowe may not make relevance-based redactions from the records that he has produced.

Even if the Court does not agree that each piece of redacted information is relevant, Mr. Rowe may not make relevance-based redactions from his records. As Judge Jones already explained in this case when denying Defendants' request to "redact documents . . . to ensure the proper disclosure of relevant information," "relevance-based redactions are heavily disfavored at any juncture." Dkt. 818 at 8 (citing *Wellin v. Wellin*, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015)). The Court should similarly reject Plaintiff's attempt to "redact information from otherwise responsive documents in the absence of privilege, merely because [Plaintiff] . . . concludes on [his] own that some words, phrases, or paragraphs are somehow not relevant." *Bonnell*, 2014 WL 10979823, at *4. As Judge Jones found, and as explained above, medical and disability records are relevant to the Parties' claims and defenses. Dkt. 1065 at 9. Therefore, to the extent Mr. Rowe has redacted nonprivileged information, any relevance-based redactions must be removed.

## II. THE INFORMATION REDACTED FROM MR. ESTES' MEDICAL RECORDS IS NONPRIVILEGED AND RELEVANT

Mr. Estes has redacted nonprivileged and relevant information from the medical records that he produced to Defendants.[7] In this and the following Sections,

---

[7] Mr. Estes served a separate privilege log for Plaintiff-produced VA records on July 7. Defendants reserve the right to later challenge those redactions after having an opportunity to review. Mr. Estes also redacted certain information from a DoD

to avoid repetition, Defendants incorporate by reference the arguments and authorities cited in the above section regarding Plaintiff Rowe, as applicable.

A.   **Mr. Estes has not carried his burden of showing that he has redacted confidential communications between himself and a psychotherapist for the purpose of diagnosis and treatment.**

The psychotherapist-patient privilege does not apply to any of the 105 entries on Mr. Estes' June 29 privilege log. *See* Ex. 3. Neither Mr. Estes' privilege log nor the documents referenced therein demonstrate that Mr. Estes has redacted confidential communications between himself and a psychotherapist for the purpose of diagnosis or treatment. Rather, Mr. Estes has redacted information from records of his visits with other types of medical providers—a licensed vocational nurse, a physician, a nursing assistant, ████████████████, an otolaryngology staff physician, a staff nurse. ██████████████ *See, e.g.*, Ex. 10 at L E ESTES-VA-T8-000016, -000022, -000025, -000048, -000077.

For the same reasons that Mr. Rowe's disability, compensation and pension, primary care, ████████████████████████ records are not subject to the psychotherapist-patient privilege, Mr. Estes' general medical records are not subject to psychotherapist-patient privilege.[8] *See Bolander,* 722 F.3d at 223;

---

production, but those redactions do not appear on Mr. Estes' June 29 cumulative privilege log. Defendants reserve the right to later challenge those redactions.

[8] Mr. Estes' privilege log does not identify which privilege Plaintiff seeks to invoke. During the meet-and-confer session, Mr. Estes did not identify which privilege he

*Stevenson*, 201 F.R.D. at 558; *Ortiz-Carballo*, 2009 WL 961131, at *3 (Jones, J.); *Liles*, 2010 WL 11505129, at *5; *Nichols*, 256 F.R.D. at 121–23. Mr. Estes has not carried his burden of showing that the documents listed on this privilege log have been properly redacted as subject to the psychotherapist-patient privilege.

In the alternative, Defendants have "show[n] that an issue exists regarding the application of [the psychotherapist-patient] privilege," and so the Court should conduct an *in camera* review of the documents. *Davita*, 301 F.R.D. at 681. Defendants have shown that *all* of Mr. Estes' records concern visits with medical providers who are *not* psychotherapists.

### B.     The information that Mr. Estes redacted from his medical records is relevant to the Parties' claims and defenses.

"Because there is no privilege that applies" to Plaintiff Estes' records, the Court "need only determine whether [the] records are relevant to the claims in this case." *Ortiz-Carballo*, 2009 WL 961131, at *3 (Jones, J.). The information redacted from Mr. Estes' medical records is relevant to the Parties' claims and defenses because it bears on Mr. Estes' damages claims and Defendants' causation defense. *See* Fed. R. Civ. P. 26(b)(1).

> 1.     Records of Mr. Estes' treatment for ▮▮▮▮▮▮▮ conditions are relevant because Mr. Estes claims that his use of the CAEv2 makes it hard for him to sleep.

---

seeks to invoke. Defendants therefore analyze the issue under federal law and reserve the right to respond if Mr. Estes ever invokes a specific privilege.

Records concerning Mr. Estes' treatment for ████████ conditions are relevant to the Parties' claims and defenses because Mr. Estes asserts in his interrogatory responses that his tinnitus "make[s] it difficult to sleep."[9] Ex. 11 at 23 (7/2/20 Plaintiffs' Supplemental Response to Defendants First Set of Interrogatories). Despite claiming a causal connection between his tinnitus and his ability to sleep, Mr. Estes has redacted various pieces on information from his ████ ████ medical records. For example, Mr. Estes redacted one of three ████████ ████████████████████████████████████████████████████████████████ Ex. 10 at L E ESTES-VA-T8-000313.

As another example, Mr. Estes redacted certain questions on a ████ ████████. ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. 12 at L E ESTES-VA-T36-000001. ████████████████████████████████████████ ████████████████████ Id. Despite the importance of each question, Mr. Estes redacted various questions. Id. at -000003, -000006, -000018. ██████████████████ ████████████████████████████████████████████████████

---

[9] Defendants understand at least entries 10–13, 16–20, 35–38, 45, 46, 48, 82, and 98–105 on Mr. Estes' privilege log to concern ████████ medical care.

███████████████████████████████████████████████

Ex. 13 at L E ESTES-VA-T3-0003.

The information redacted from Mr. Estes' █████████ medical records therefore bears on Mr. Estes' claim that his tinnitus impairs his ability to sleep and Defendants' defense that any inability to sleep has been caused by the acts of others. *See* Dkt. 959 at 100. Therefore, Mr. Estes has redacted relevant information from his medical records. *See Williams*, 2020 WL 854809, at *1; *Cameron*, 2016 WL 1572952, at *4; *Santana*, 2011 WL 13220283, at *6.

Because Mr. Estes has redacted nonprivileged and relevant information, the Court should order Mr. Estes to produce unredacted versions of the documents included on his privilege log at entries 10–13, 16–20, 35–38, 45, 46, 48, 82, and 98–105, as well as any other entries relating to Mr. Estes' sleep issues or treatment.

> 2. Mr. Estes' medical records are relevant because Mr. Estes seeks damages for reduced earning capacity, diminished quality of life, and garden variety emotional damages.

Mr. Estes' other medical records are relevant to the Parties claims and defenses because Mr. Estes' medical conditions bear on his ability to earn an income, his enjoyment of life, and any emotional distress that he experiences.[10] Mr. Estes

---

[10] Defendants understand entries 1–9, 14, 15, 21–34, 39–44, 47, 49–81, and 83–97 on Mr. Estes' privilege log to be medical records that bear on Mr. Estes' ability to earn an income, his enjoyment of life, and any emotional distress that he experiences.

states that he "suffer[s] from hearing loss and tinnitus and the severe consequences thereof, the categories of damages attendant to which include (i) present diminished earning capacity, (ii) future diminished earning capacity, (iii) diminished quality of life, (iv) past and future medical costs, (v) garden variety emotional damages." Ex. 11 at 46 (7/2/20 Plaintiffs' Supplemental Response to Defendants First Set of Interrogatories). Mr. Estes intends to offer an expert witness to support his claim for lost earning capacity. *Id.* at 48. And Mr. Estes "intend[s] to offer evidence at trial related to mental anguish, distress, and loss of enjoyment of life caused by the CAEve," including "testimony from Plaintiff, and testimony from other individuals with percipient knowledge, including those individuals identified in Responses to Interrogatories Nos. 1–9." Ex. 20 at 5. Mr. Estes' response to Interrogatory No. 9 lists nine doctors. Ex. 11 at 18.

The information redacted from Mr. Estes' medical records is relevant to these claims and Defendants' defenses thereto.[11] ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Ex. 10 at L E ESTES-VA-T8-000194, -000197. Mr. Estes then redacted information concerning two of the

---

[11] ███████████████████████████████████████████████████████
██████████████████████████████████████████ Ex. 12 at L E ESTES-VA-T36-00005.

three items listed in the "Assessment and Plan" section. *Id.* at -000197. The cause of Mr. Estes' ████████████████████ could impact his ability to work, could prevent him from taking part in life activities that he enjoys, or could result from anxiety. Because these are the very kinds of damages that Mr. Estes seeks in this case, this type of medical record is relevant. *See Williams*, 2020 WL 854809, at *1; *Cameron*, 2016 WL 1572952, at *4; *Santana*, 2011 WL 13220283, at *6.

Defendants of course cannot know exactly the details of the redacted information, because they are redacted. *See Bonnell*, 2014 WL 10979823, at *4. But Mr. Estes has not met his burden of showing that the redacted information "has no possible bearing on the subject matter of the action." *Companhia Energetica Potiguar*, 307 F.R.D. at 627.

### C. Mr. Estes may not make relevance-based redactions from the medical records that he has produced.

For the same reasons discussed above with respect to Mr. Rowe, Mr. Estes may not make relevance-based redactions from the records that he has produced in this case. Dkt. 818 at 8; *Bonnell*, 2014 WL 10979823, at *4.

## III. MR. BAKER'S REDACTIONS ALSO ENCOMPASS RELEVANT AND NONPRIVILEGED INFORMATION

Mr. Baker has also redacted relevant information from his medical records. Mr. Baker, for example, "intend[s] to offer evidence at trial related to the mental anguish, distress, and loss of enjoyment of life caused by the CAEv2[.]" Ex. 14 at 7.

Mr. Baker has also purported to reserve his right to make a claim "for impairment to earning capacity in the future." Ex. 15 at 56. Thus, Mr. Baker's records are relevant for the same reasons that Mr. Rowe's and Mr. Estes's records were relevant to their "garden variety" emotional damages and earning capacity claims. For example, Mr. Baker states that "[h]e finished his degree in political science last May and has been applying for jobs and has had 'nothing. . . .'" Ex. 16 at L_E_Baker-VA-000900. Information related to Mr. Baker's inability to obtain employment is probative of numerous issues, including an impaired earning capacity claim or as an explanation for garden variety emotional damages.

It is also apparent that Mr. Baker has redacted nonprivileged information or, at the very least, there are sufficient red flags to warrant an *in camera* review. For example, although Mr. Baker has generally claimed psychotherapist-patient privilege, in one instance he has redacted a "treatment plan" that was "interdisciplinary" and apparently developed by a team of his treating physicians. *Id.* at -000463 to -000467. An interdisciplinary plan would presumably entail treatment options from across disciplines, and therefore would not only be limited to information provided or advice given at the direction of a psychotherapist. Similarly, in another record, Mr. Baker's treaters developed an "OEF/OIF Care Management Assessment Plan." *Id.* at -000538 to -000541. Nothing from the unredacted portion of this assessment suggests that this plan includes information

from a psychotherapist, yet Mr. Baker nevertheless redacts certain portions of this plan. *Id.* at -000539. While it is unknown what, exactly, has been redacted, the foregoing circumstances at a minimum support an *in camera* review.

For the same reasons discussed above with respect to Plaintiffs Estes and Rowe, Mr. Baker may not make relevance-based redactions from the records that he has produced in this case. Dkt. 818 at 8; *Bonnell*, 2014 WL 10979823, at *4.

## IV.   MR. HACKER HAS ALSO REDACTED RELEVANT AND NONPRIVILEGED INFORMATION FROM HIS RECORDS

Mr. Hacker should be compelled to produce unredacted copies of the documents that appear on his privilege logs or the Court should conduct *in camera* review.[12] Although Mr. Hacker's counsel has confirmed in the meet and confer process that Mr. Hacker makes no claim for lost wages or impairment to earning capacity, Mr. Hacker still seeks damages related "to the mental anguish, distress, and loss of enjoyment of life caused by the CAEv2." Ex. 17 at 6. The redacted records are relevant to that claim. For example, Mr. Hacker redacts portions of a record relating to what is described as ███████████████████ Ex. 18 at

---

[12] On July 2 and 3, Mr. Hacker produced a total of 11 logs containing 160 entries. On July 7, Mr. Hacker was identified as a replacement for Mr. Garcia in Trial Group A. Defendants have since worked expeditiously to review Mr. Hacker's logs. Mr. Hacker's counsel has indicated that additional documents remain to be produced, and will contain redactions. Defendants reserve their right to raise additional issues relating to the logs that Mr. Hacker has served to date and those that will be produced in the future.

S_A_Hacker-DOD Touhy 681. To the extent Mr. Hacker suffers from substance abuse or alcoholism, it is likely to bear on whether the cause of mental anguish, distress, and loss of enjoyment of life he claims in this case. Likewise, Defendants' experts are entitled to have a complete picture of Mr. Hacker's medical background. Indeed, as Defendants' experts will explain, there is an association between hazardous drinking habits and hearing loss.

Mr. Hacker also redacts nonprivileged information. For example, Mr. Hacker redacts notes made by a Medical Support Assistant relating to Mr. Hacker's "Chief complaint" during a November 1, 2014 emergency room visit. *Id.* at 560–61. There is nothing in the document to suggest it is privileged. As another example, Mr. Hacker redacts nearly all of an "Emergency Department Nursing Flow Sheet," even though there is no indication that the emergency department visit entailed a psychotherapist visit. Ex. 19 at S_A_Hacker-VA Touhy 3064.

Finally, Mr. Hacker has redacted materials that were submitted to the VBA to obtain disability benefits. For example, Mr. Hacker redacts portions of a ████ ███████████████████████████████████████████████████████ Ex. 19 at S_A_Hacker-VA Touhy 190–97. As discussed above, materials submitted in connection with benefits claims are not privileged and, to the extent a privilege ever applied, it was waived when the claim was submitted. *See* Ex. 19 at S_A_Hacker-VA Touhy 1465.

For the same reasons discussed above with respect to Plaintiffs Estes, Rowe, and Baker, Mr. Hacker may not make relevance-based redactions from the records that he has produced in this case. Dkt. 818 at 8; *Bonnell*, 2014 WL 10979823, at *4.

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that the Court grant Defendants' motion and order Plaintiffs Baker, Estes, and Rowe to produce unredacted versions of their disability and medical records.

Dated:  August 3, 2020                              Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (2020) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mark.nomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that they met and conferred about Plaintiffs' privilege claims with Plaintiff Lloyd Baker's counsel on July 2, 2020; with Plaintiff Luke Estes' counsel on July 2, 2020; with Plaintiff Vernon Rowe's counsel on July 2, 2020; and with Plaintiff Stephen Hacker's counsel on July 8, 2020. Defendants were unable to resolve their disagreements with Plaintiffs about whether they had properly redacted the documents produced in this case.

Dated:  August 3, 2020                                    Respectfully submitted,

*/s/ Mark J. Nomellini*
Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mark.nomellini@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 7,995 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  August 3, 2020                    Respectfully submitted,

                                          */s/ Mark J. Nomellini*
                                          Mark J. Nomellini
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, Illinois 60654
                                          Telephone: (312) 862-3254
                                          mark.nomellini@kirkland.com

                                          *Counsel for Defendants 3M Company,*
                                          *3M Occupational Safety LLC, Aearo*
                                          *Technologies LLC, Aearo Holding,*
                                          *LLC, Aearo Intermediate, LLC and*
                                          *Aearo, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2020, a true and correct copy of the foregoing:

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF UNREDACTED RECORDS OR, IN THE ALTERNATIVE, FOR *IN CAMERA* REVIEW

was served as follows:

☒    **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, *Lead Counsel*<br>Jennifer M. Hoekstra<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>baylstock@awkolaw.com<br>jhoekstra@awkolaw.com | Shelley V. Hutson, *Co-Lead Counsel*<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>shutson@triallawfirm.com |
| Christopher A. Seeger, *Co-Lead Counsel*<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>cseeger@seegerweiss.com | Brian H. Barr, *Co-Liaison Counsel*<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 South Baylen Street<br>Pensacola, FL 32502<br>Tel.: (850) 435-7044<br>bbarr@levinlaw.com |
| Michael A. Burns, *Co-Liaison Counsel*<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>epefile@mostynlaw.com | Shawn Fox<br>Tracey & Fox Law Firm<br>440 Louisiana Street<br>Suite 1901<br>Houston, TX 77002<br>Tel.: (713) 495-2333<br>sfox@traceylawfirm.com |

| | stracey@traceylawfirm.com |
| | |
| | *Counsel for Plaintiff Lloyd Baker* |
| Katherine L. Cornell<br>Pulaski Law Firm PLLC<br>925 RICHMOND AVENUE<br>SUITE 1725<br>HOUSTON, TX 77098<br>Tel.: (713) 664-4555<br>kcornell@pulaskilawfirm.com<br><br>*Counsel for Plaintiff Luke Estes* | Quinn R. Wilson<br>Onder Law LLC<br>110 E. Lockwood Avenue<br>Second Floor<br>St. Louis, MO 63119<br>Tel.: (314) 963-9000<br>wilson@onderlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker* |
| Evan D. Buxner<br>Gori Julian & Associates<br>156 N. main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>evan@gorijulianlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker* | Francisco R. Maderal<br>Roberto Martinez<br>Colson Hicks Eidson<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Tel.: (305) 476-7400<br>bob@colson.com<br>frank@colson.com<br><br>*Counsel for Plaintiff Vernon Rowe* |

DATED:  August 3, 2020

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*