# Exhibit 3

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

2049 Century Park East, Ste 3700
Los Angeles, CA 90067
United States

Kimberly Branscome
To Call Writer Directly:
+1 213 680 8370
kimberly.branscome@kirkland.com

+1 310 552 4200

Facsimile:
+1 310 552 5900

www.kirkland.com

April 22, 2020

Judge Gary R. Jones
United States Magistrate Judge
United States District Court for the
Northern District of Florida
401 SE First Avenue
Gainesville, Florida 32601

>  Re:   *In re: 3M Combat Arms Earplug Products Liability Litigation*,
>          **3:19-md-2885**

Dear Judge Jones:

The Court granted the Parties' request to present two disputed issues concerning the Bellwether Plaintiffs' objections to Defendants' interrogatories—(1) the number of interrogatories that Defendants have propounded and (2) Plaintiffs' objections to three interrogatories about the Bellwether Plaintiffs' mental health (the "Mental Health Interrogatories"). The Court should overrule both objections and order the Bellwether Plaintiffs to answer the Mental Health Interrogatories.

Defendants submit this letter brief in the interest of timely resolving the Bellwether Plaintiffs' objections to Defendants' interrogatories, consistent with the Court's direction at the Tenth Case Management Conference on March 27, 2020 (the "CMC"). At the CMC, the Court confirmed that the Bellwether Plaintiffs' deadline to respond to written discovery is May 15, 2020. Dkt. 1066 at 54:21–22. But Plaintiffs stated that they were "willing to go ahead and get some of [their] objections teed up early and address them." *Id.* at 53:9–10. The Court noted that it "would appreciate [the parties] getting [any objections] before [it] as soon as possible." *Id.* at 54:17–18.

Following the CMC, the Bellwether Plaintiffs served objections to almost every interrogatory propounded by Defendants. To date, Defendants have propounded three sets of interrogatories: the Initial Census Questions, Defendant 3M's First Set of Interrogatories (Nos. 1–70), and Defendant 3M's Second Set of Interrogatories (Nos. 71–74).[1] Plaintiffs have objected to

---

[1] *See* Dkt. 775 at 2 (Pretrial Order No. 18) ("Plaintiff's answers to the Initial Census Questions . . . will be treated as interrogatories pursuant to Federal Rule of Civil Procedure 33 . . . ."); Exhibit B

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 2

interrogatories 1 through 74. *See, e.g.*, Exhibit C (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's First Set of Interrogatories to Plaintiff); Exhibit D (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's Second Set of Interrogatories to Plaintiff). Other than stating that the Bellwether Plaintiffs have knowledge about their own statements in their Short Form Complaints, Initial Census Questions, and Bellwether Selection Sheets, the Bellwether Plaintiffs have not indicated whether they intend to stand on these objections or whether they intend to answer any of Defendants' interrogatories. It would be a waste of the Court's and the Parties' time and resources to litigate every objection to every interrogatory if the Bellwether Plaintiffs actually intend to answer some of the interrogatories. Therefore, despite the Court's request that the Bellwether Plaintiffs raise their objections prior to the May 15 discovery response deadline, the Parties cannot meaningfully litigate and resolve the Bellwether Plaintiffs' boilerplate objections to Defendants' interrogatories.

Nevertheless, two sets of objections are ripe for the Court's consideration—the objection to the number of interrogatories and the objections to the Mental Health Interrogatories. Both sets of objections lack merit. With respect to the first set of objections, Defendants have propounded 90 interrogatories, including all discrete subparts. *See Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 6:16-CV-1033-ORL-TBS, 2016 WL 7188894, at *1 (M.D. Fla. Dec. 12, 2016) (Under the "'related question' test," "courts assess '*whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question*. . . . If the subparts are subsumed and necessarily related to the primary question, then the subpart is not 'discrete' within the meaning of Rule 33(a).'" (emphasis added)). With respect to the second set of objections, the Court has previously approved the substance of the Mental Health Interrogatories and explained that the Bellwether Plaintiffs' responses are critical to determining whether Defendants are entitled to discovery of the Bellwether Plaintiffs' mental health records. *See* Dkt. 1065 at 7 n.2 ("If there is such a [mental health] diagnosis or an intent to offer expert testimony, Defendants would be entitled *at that time* to discovery on this issue (and consequently the execution of an authorization).")). Therefore, the Court should overrule the Bellwether Plaintiffs' objections and order the Bellwether Plaintiffs to answer the Mental Health Interrogatories (Nos. 71–73).

**Plaintiffs' objection to the number of interrogatories is unfounded because Defendants have propounded fewer than 100 interrogatories.**

The Court should overrule Plaintiffs' objection to the number of interrogatories because Defendants have propounded fewer than 100 interrogatories. The Parties agreed to a 100 interrogatory limit. Exhibit E (email memorializing agreement); *see also* Fed. R. Civ. P. 33(a)(1).

___

at 4 (Tolling Agreement) ("Each Claimant's answers to the Initial Census Questions . . . will be treated as interrogatories pursuant to Federal Rule[] of Civil Procedure 33 . . . .").

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 3

Plaintiffs have objected to interrogatories 26 through 74 "on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories." *See, e.g.*, Exhibit C (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's First Set of Interrogatories to Plaintiff); Exhibit D (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's Second Set of Interrogatories to Plaintiff). Plaintiffs' objection is meritless and should be overruled.

Even counting "all discrete subparts," Defendants have propounded fewer than 100 interrogatories. Fed. R. Civ. P. 33(a)(1). "District courts in the Eleventh Circuit, like most district courts in other circuits, have adopted and applied the 'related question' test to determine whether the subparts are discrete, asking whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question." *Perez v. Aircom Mgmt. Corp.*, No. 12-60322-CIV, 2012 WL 6811079, at *1 (S.D. Fla. Sept. 24, 2012) (quotation marks omitted); *see also Forum Architects, LLC v. Candela*, No. 1:07CV190-SPM/AK, 2008 WL 217119, at *1 (N.D. Fla. Jan. 23, 2008) (same); *Am. Auto. Ins. Co.*, 2016 WL 7188894, at *1 (same); *In re Netbank, Inc. Secs. Litig.*, 259 F.R.D. 656, 679 (N.D. Ga. 2009) (same); *The Mitchell Co. v. Campus*, No. CIV.A. 07-0177-KD-C, 2008 WL 2468564, at *14–15 (S.D. Ala. June 16, 2008) (same). "*If the subparts are subsumed and necessarily related to the primary question, then the subpart is not 'discrete'* within the meaning of Rule 33(a)." *Perez*, 2012 WL 6811079, at *1 (emphasis added) (quoting *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007)); *see also* Fed. R. Civ. P. 33. advisory committee's note to 1993 amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). "An interrogatory containing subparts directed at eliciting details concerning a *'common theme' should generally be considered a single question*." *Am. Auto. Ins. Co.*, 2016 WL 7188894, at *1 (quotation marks and brackets omitted) (emphasis added).

By way of example, the following types of interrogatories have been deemed to be not discrete and, hence, constitute one interrogatory: (1) questions about persons with knowledge and the subject area of their knowledge; (2) questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates filed; (3) questions about witness statements, by and to whom made, when made, and the substance and context of the statements; (4) questions about persons with documentary evidence in their possession, custody, and control, what documents they have, the location of the documents, and when the documents were prepared; (5) questions about expert witnesses, their addresses, qualifications, subject matter of their testimony, and grounds for their opinions; (6) questions about damages, when the damages occurred,

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 4

> to whom expenses were paid; and ([7]) questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed.

*Perez*, 2012 WL 6811079, at *1.

Ignoring this precedent, Plaintiffs claim that Defendants actually served 192 interrogatories. Exhibit F at 5 (Plaintiffs' Letter Brief re Authorizations). During the Parties' meet and confer on this issue, Plaintiffs even accused Defendants of "reneging" on the Parties' agreement regarding the 100 interrogatory limit. In fact, prior to serving their interrogatories, Defendants carefully consulted applicable precedent and each interrogatory to confirm that the total number complied with the limit.

As explained in detail in Exhibit A, which contains citations to case law dictating how each interrogatory should be counted, Defendants have propounded fewer than 100 interrogatories, including discrete subparts.[2] Therefore, the Court should overrule Plaintiffs' objection that interrogatories 26 through 74 exceed the Parties' agreed-upon 100 interrogatory limit.

---

[2] Although Defendants remain under the 100 interrogatory limit, even if the Mental Health Interrogatories are counted toward the total, the Mental Health Interrogatories do not count against Defendants' limit because they were propounded at the direction of the Court. *See* Fed. R. Civ. P. 33(a)(1) (stating that a court can order that a party propound additional interrogatories); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 586 (D. Minn. 1999) (explaining that a court can allow additional interrogatories when a party makes a "particularized showing of why the discovery is necessary"). At the March 24 hearing on authorizations, Defendants raised the need for a "process [] where the [Bellwether] Plaintiffs tell [Defendants] that they are not bringing [mental health] claims in the first instance" to maintain "efficiencies" and prevent a situation in which Defendants "learn about [mental health claims for] . . . first time [] later in discovery, perhaps in the plaintiff's deposition, perhaps later with expert disclosures." Dkt. 1064 at 10:14–21. The Court responded to Defendants' request by raising the notion that Defendants propound the Mental Health Interrogatories. *Id.* at 10:23–11:10; Dkt. 1065 at 7 n.2 (describing the interrogatories). Because the Court ordered that Defendants should propound the mental health interrogatories, they should not count against Defendants' interrogatory limit. Again, however, even if the Mental Health Interrogatories are counted, Defendants remain under the 100 interrogatory limit.

The questions on the Bellwether Selection sheet are not interrogatories. At the Eighth Case Management Conference, Judge Rodgers explained that there is no "declaration part of the [Bellwether Selection Sheet], so the plaintiffs will not have to declare under penalty of perjury that

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 5

**Plaintiffs' objections to the Mental Health Interrogatories have no merit because this Court has ordered that the Bellwether Plaintiffs disclose diagnosed mental health conditions and any intent to offer expert testimony relevant to a diagnosed mental health condition or a claim for mental anguish, distress, or loss of enjoyment of life.**

The Court should overrule Plaintiffs' boilerplate objections to the Mental Health Interrogatories—Nos. 71 through 73— because the Court previously directed Plaintiffs to respond to interrogatories about (1) the Bellwether Plaintiffs' diagnosed mental health conditions and (2) the Bellwether Plaintiffs' intent to offer expert testimony relevant to a diagnosed mental health condition or a claim for mental anguish, distress, and loss of enjoyment of life. Dkt. 1065 at 7 n.2. The Mental Health Interrogatories arose out of the Court's March 26 Order concerning the Bellwether Plaintiffs' obligation to provide certain authorizations for the release of documents. Defendants sought mental health authorizations from the Bellwether Plaintiffs because the Bellwether Plaintiffs seek damages for "[p]ain and suffering (past and future)," "[l]oss of enjoyment of life (past and future)," and "[m]ental anguish and distress (past and future)." Dkt. 704 at 89.

Despite seeking damages for pain and suffering, loss of enjoyment of life, mental anguish, and distress, Plaintiffs argued that they were not required to provide authorizations for the release of mental health records because the Bellwether Plaintiffs had not put their "mental or emotional condition(s) as described within any mental health records . . . at issue in this litigation." Exhibit F at 7 (Plaintiffs' Letter Brief re Authorizations). Reasoning that the Bellwether Plaintiffs' allegations did not fully resolve the question of whether the Bellwether Plaintiffs had put their mental health at issue, the Court explained that Defendants should propound interrogatories to the Bellwether Plaintiffs about their mental health diagnoses and any intention to offer related expert testimony.[3] Dkt. 1064 at 10:23–11:10.

---

the information is true and correct to the best of their knowledge." Dkt. 917 at 11:17–12:22; *see also* Fed. R. Civ. P. 33(b)(3) (noting that interrogatories are answered under oath). Indeed, Plaintiffs objected to Defendants even citing a Bellwether Selection Sheet in connection with their summary judgment filings. Dkt. 1089 at 9 n.5.

[3] The Mental Health Interrogatories are, in part, necessary because the Bellwether Plaintiffs have neither provided "a computation of each category of damages claimed by" each Bellwether Plaintiff nor "ma[d]e available for inspection and copying as under [Federal] Rule [of Civil Procedure] 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). The Bellwether Plaintiffs have also objected to Interrogatories 13 and 52, which seek similar categories of information. *See*

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 6

At the March 24 hearing on authorizations, Defendants raised their concern that Plaintiffs would delay answering the Mental Health Interrogatories, frustrating the very purpose of tethering the mental health authorizations to Plaintiffs' responses to the Mental Health Interrogatories. Specifically, the following exchange occurred:

> MR. WASDIN: Certainly sending the interrogatories is not burdensome. My experience has been that, if you ask somebody what type of expert discovery they're planning on putting on, they may object to that and tell us we can't find out about it for another five months.
>
> THE COURT: Well, that probably won't happen here. But let me ask you, Bryan, what is your view if you were to receive interrogatories along what I described?
>
> MR. AYLSTOCK: Judge, I think that's the way it should happen. That's the way it would happen in most cases, and that should answer the question.

Dkt. 1064 at 11:11–21.

The Court specifically addressed the Mental Health Interrogatories in its March 26 Order.

> At the telephonic hearing, Plaintiff[s] stated that at this juncture they were not aware of any relevant mental diagnoses and did not intend to offer expert testimony on an award of damages for mental anguish, distress, and loss of enjoyment of life. Defendants, however, may: (1) propound discovery on the individual Bellwether Plaintiffs to determine if any has a diagnosed mental health condition; and (2) ask counsel for the Bellwether Plaintiffs whether they intend on offering expert testimony relevant to the above-mentioned damages or a mental health condition. If there is such a diagnosis or an intent to offer expert testimony, Defendants would be entitled *at that time* to discovery on this issue (and consequently the execution of an authorization).

Dkt. 1065 at 7 n.2.

Consistent with the March 26 Order, Defendants propounded the Mental Health Interrogatories. Despite their statements to the contrary during the March 24 hearing, the vast

---

Exhibit C at 10–11, 30–31 (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's First Set of Interrogatories to Plaintiff).

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 7

majority of the Bellwether Plaintiffs objected to all three interrogatories and refused to commit to answering them on *any* date. The Mental Health Interrogatories and Plaintiffs' objections are below.

### INTERROGATORY NO. 71:

Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who diagnosed you with the condition(s) and the date of the diagnosis.

### ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that the information sought, on its face, will contain sensitive, confidential, and privileged medical, mental health, and/or other personal information that Defendants seek solely for the purpose of harassment, and which is not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitation as to time or scope, and that it fails to define "mental health" or "condition" or "diagnos[ed]." See Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information sought in the Census Form, Bellwether Information Sheet, within Defendants' Interrogatories, and otherwise of the mental health authorizations that Defendants sought but the Court has denied access to. Fed. R. Civ. P. 26(b)(2)(C).

### INTERROGATORY NO. 72:

State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the expert testimony You intend to offer.

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 8

### ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitations as to time or scope, and fails to define "expert" or "mental anguish" or "distress" or "loss of enjoyment of life" or "mental health condition" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of the information sought in the Census Form, Bellwether Information Sheet, within Defendants' Interrogatories, and otherwise of the mental health authorizations that Defendants sought but the Court has denied access to. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this request to the extent it improperly and prematurely seeks information regarding expert witnesses, because the discovery of such expert materials is limited to responses to request for disclosure, expert reports and expert depositions, which at this juncture are premature. Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to quantify or qualify damages for intangible damages such as pain and suffering, impairment, mental anguish, and/or loss of enjoyment of life. Plaintiff is not required to have personal knowledge of or a personal opinion on or offer any testimony on a specific amount of damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, and/or other information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 9

### **INTERROGATORY NO. 73**:

State whether You intend to offer any evidence at trial related to (i) mental
anguish, distress, or loss of enjoyment of life, or (ii) Any mental health
condition with which You have been diagnosed. If so, please Describe the
evidence you intend to offer.

### **ANSWER**:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil
Procedure 33(a) and any agreements between the parties, Defendant has
exceeded the allowable number of interrogatories. Plaintiff objects on the
ground that this interrogatory is premature as discovery is ongoing, and on
the basis that interrogatories may not be used to require Plaintiff to marshal
all of its available proof or the proof Plaintiff intends to offer at trial.
Plaintiff objects to this interrogatory on the ground that it is overbroad,
vague, ambiguous and unclear in part as it fails to contain any reasonable
limitations as to time or scope, and fails to define "mental anguish" or
"distress" or "loss of enjoyment of life" or "mental health condition" or
"diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this
interrogatory to the extent it is unreasonably cumulative or duplicative of
the information sought in the Census Form, Bellwether Information Sheet,
within Defendants' Interrogatories, and otherwise of the mental health
authorizations that Defendants sought but the Court has denied access to.
Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this request to the extent it
improperly and prematurely seeks information regarding expert witnesses,
because the discovery of such expert materials is limited to responses to
request for disclosure, expert reports and expert depositions, which at this
juncture are premature. Plaintiff objects to this interrogatory on the ground
that Plaintiff does not possess the skills, knowledge, education, experience,
or training to provide the expert or legal conclusions and opinions sought
through this interrogatory—particularly in that it requires Plaintiff to
quantify or qualify damages for intangible damages such as impairment,
mental anguish, and/or loss of enjoyment of life. Plaintiff is not required to
have personal knowledge of or a personal opinion on or offer any testimony
on damages for intangibles as the subject(s) of damages and amounts
thereof are uniquely within the purview of the jury. Plaintiff objects on the
ground that the information sought may contain sensitive, confidential,
and/or privileged medical, mental health, and/or other information sought
solely for the purpose of harassment and not relevant to the matters at issue

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 10

> or of consequence in this litigation pursuant to Judge Jones' March 26, 2020
> Order at Dkt. No. 1065.

Exhibit D at 4–6 (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant 3M's
Second Set of Interrogatories to Plaintiff).

Unlike the rest of the Bellwether Plaintiffs, Bellwether Plaintiff William Wayman at least
states that he "intends to respond to [the Mental Health Interrogatories] as directed by the Court,
on May 15, 2020," "[u]pon and subject to the resolution of Plaintiffs' General Objections above
and Specific Objections herein." Exhibit G at 4–5 (Plaintiff William Wayman's Objections to
Defendant 3M's Second Set of Interrogatories to Plaintiff"). While Mr. Wayman agreed to provide
provide responses on May 15 in accordance with Pretrial Order No. 28, all other Bellwether
Plaintiffs provided boilerplate objections that refused to answer the interrogatories by any date.
*See, e.g.,* Exhibit D at 4–6 (Plaintiff Lonnie Eugene Burgus Objections & Answers to Defendant
3M's Second Set of Interrogatories to Plaintiff). In any event, as discussed below, to ensure
progress in discovery, the most important date is not the date by which the Bellwether Plaintiffs
provide interrogatory answers, but the date by which the Bellwether Plaintiffs must provide any
required mental health authorizations.

During the Parties' meet and confer session about the Mental Health Interrogatories, the
Bellwether Plaintiffs indicated that they consider the Mental Health Interrogatories were
objectionable and overbroad, because answering them would require the Bellwether Plaintiffs to
disclose information about mental health diagnoses and their claims for mental anguish, distress,
or loss of enjoyment of life even if the Bellwether Plaintiffs believe they have not put their mental
health at issue. Defendants explained that this objection is misplaced because the Court designed
the Mental Health Interrogatories to answer that very question—has a Bellwether Plaintiff put his
or her mental health at issue? The Bellwether Plaintiffs cannot object to answering the Mental
Health Interrogatories by merely asserting that they have not put their mental health at issue.

**The March 26 Order dictates the scope and substance of the Mental Health
Interrogatories.**

The interrogatory framework suggested by the Court, and memorialized in its March 26
Order, properly recognized two categories of interrogatories that are independently sufficient to
determine whether a Bellwether Plaintiff is placing his or her mental health at issue. These two
categories are: "(1) propound[ing] discovery on the individual Bellwether Plaintiffs to determine
if any has a diagnosed mental health condition; and (2) ask[ing] counsel for the Bellwether
Plaintiffs whether they intend on offering expert testimony relevant to the above-mentioned
damages *or* a mental health condition." Dkt. 1065 at 7 n.2 (emphasis added). As noted by the
Court, if an answer to *either* category of interrogatory is affirmative, then the Bellwether Plaintiff

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 11

places his or her mental health at issue. *Id.* The Court further noted that Defendants would be entitled to discovery on a Bellwether Plaintiff's mental health if a Bellwether Plaintiff answered in the affirmative to either category of interrogatory.[4] *Id.*

Judge Rodgers has reviewed Judge Jones' March 26 Order and concluded that his analysis of this issue is correct. *See* Exhibit H (Email from Tevenia Jacobs to Counsel) ("In Judge Rodgers' view, PTO 25 and Judge Jones' order on this issue cannot be reconciled in light of the law on waiver, which Judge Rodgers believes Judge Jones analyzed correctly.").

Accordingly, Plaintiffs' objections to the Mental Health Interrogatories should be overruled. The March 26 Order is straightforward. The Order set out, in detail, two categories of interrogatories for Defendants to propound to determine whether the Bellwether Plaintiffs have put their mental health at issue. Consistent with the March 26 Order, Defendants propounded the Mental Health Interrogatories. The Bellwether Plaintiffs cannot now, after the fact, seek to narrow the scope of the interrogatories suggested by the Court. As the Court recognized in its March 26 Order, the answers to the Mental Health Interrogatories, not the Bellwether Plaintiffs' assertions that they are not waiving privilege, will determine whether the Bellwether Plaintiffs have put their mental health at issue.

---

[4] Defendants reiterate that the Bellwether Plaintiffs' mental health records likely contain relevant information that is proportional to the needs of this case. Specifically, mental health records likely contain at least three types of relevant information: (1) information about whether the damages sought by the Bellwether Plaintiffs are causally-related to a diagnosed mental health condition, *e.g.*, a Bellwether Plaintiffs' pre-existing diagnosis with an anxiety disorder could explain a Bellwether Plaintiff's mental anguish, distress, and loss of enjoyment of life; (2) information about events that are potentially causally-related to both a diagnosed mental health condition and a Bellwether Plaintiffs' alleged hearing injuries, *e.g.*, a ██████████████████████████████████████████████████████████████████████████████████████████████████████████ and (3) information about medications that are prescribed for mental health conditions, but can also cause hearing injuries, *see, e.g.*, Maria Antonietta Barbieri et al., *Ototoxic Adverse Drug Reactions: A Disproportionality Analysis Using the Italian Spontaneous Reporting Database*, 10 Frontiers in Pharmacology 1161:5 (2019) (noting that "[a]ntidepressants were frequently associated with tinnitus [], hypoacusis, and positional vertigo" in a study of adverse drug reactions).

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 12

**The Bellwether Plaintiffs have put their mental health at issue if they have been diagnosed with a mental health condition.**

The first category of mental health inquiry provided by the Court—regarding mental health diagnoses—will help answer the question of whether the Bellwether Plaintiffs have put their mental health at issue in this case.[5] To prove their claim of damages for pain and suffering, loss of enjoyment of life, mental anguish, and distress, the Bellwether Plaintiffs will need to provide evidence of those injuries. *See* Dkt. 704 at 89. If a Bellwether Plaintiff has been diagnosed with a mental health condition, Defendants cannot properly defend against the mental and emotional damages claim without records documenting the Bellwether Plaintiffs' diagnosis and treatment. *See, e.g.*, *Cameron v. Supermedia, LLC*, No. 4:15cv315-MW/CAS, 2016 WL 1572952, at *4 (N.D. Fla. Apr. 19, 2016) ("[A] plaintiff should not be permitted to put before the factfinder only those aspects of claimed emotional harm and similar intangible harms that favor his or her position, *without revealing that plaintiff already had some preexisting problems* that could cast a cloud on the issue of causation." (emphasis added) (quoting *Puglisi v. Centerpoint Props.*, No. 05C6592, 2008 WL 410636, at *5 (N.D. Ill. Feb. 13, 2008)); *Green v. St. Vincent's Med. Ctr.*, 252 F.R.D. 125, 129 (D. Conn. 2008) ("Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related." (quotation marks omitted)).

Therefore, the Bellwether Plaintiffs' answers to the Mental Health Interrogatories will indicate whether Defendants need access to mental health records to rebut the Bellwether Plaintiffs' claim of mental and emotional damages, which could be attributable to a pre-existing mental health condition. *See, e.g.*, *Dudley v. Stevens*, 338 S.W.3d 774, 776 (Ky. 2011) ("A party claiming damages in the form of mental anguish stemming exclusively from the alleged negligent act must anticipate that the opposing party will be allowed to fairly present mitigating evidence of his mental state before the incident."); *Carpenter v. Res-Care Health Servs., Inc.*, 3:12-CV-08047, 2013 WL 1750464, at *2 (S.D. W. Va. Apr. 23, 2013) (agreeing "that Plaintiff's medical records are relevant to show whether Plaintiff ha[d] pre-existing conditions that relate to or affect her claims of emotional distress and to determine the cause of her alleged injuries" and noting "that courts addressing this issue have routinely required plaintiffs to produce medical and

---

[5] Under some state privilege laws, a mental health *diagnosis* is not protected—because it does not constitute a confidential "communication" between a psychotherapist and patient. *See, e.g.*, *In re Adoption of Saul*, 804 N.E. 2d 359, 365 (Mass. App. Ct. 2004) ("The challenged notations, indicating that the mother was diagnosed as suffering from 'schizophrenia' and 'schizoaffective disorder,' do not reveal the mother's privileged communications to a psychotherapist" and the statute does not "permit[] the interpretation that diagnostic terms, without more, are also privileged.").).

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 13

psychological records"); *Prine v. Bailey*, 964 So. 2d 435, 443 (La. Ct. App. 2007) ("By claiming mental anguish damages resulting from the loss of the decedent, the plaintiffs rely upon their mental conditions as part of their claims. Records of mental health treatment . . . . are discoverable for defense against an element of the plaintiffs' claims."); *see also Monroe v. Cessna Aircraft Co.,* No. 2:05-cv-250, 2007 WL 838932, at *1 (E.D. Tex. Mar. 15, 2007) ("Because this is a diversity case, state law governs the issues of privilege and waiver.").

**The Bellwether Plaintiffs put their mental health at issue if they intend to offer expert testimony about a diagnosed mental health condition or damages for pain and suffering, loss of enjoyment of life, mental anguish, or distress.**

The second category of mental health inquiry provided by the Court—regarding the Bellwether Plaintiffs' intent to offer expert testimony about mental health—is another way to answer the question of whether the Bellwether Plaintiffs have put their mental health at issue in this case. A plaintiff can place his mental condition at issue when he intends to offer expert testimony on the same. *See, e.g.*, *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012) ("intending to offer expert testimony to support a claim for emotional distress damages" is a factor that places a plaintiff's mental condition at issue); *McBride v. Houston Cty. Health Care Auth.*, No. 1:12CV1047-MHT-TFM, 2014 WL 707166, at *3 (M.D. Ala. Feb. 24, 2014) (same); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 558 n.9 (N.D. Ga. 2001) (holding that if the plaintiff changed her position on "rely[ing] on any expert testimony as to her mental condition," then "the Court w[ould] entertain a renewed motion by Defendant to obtain the records"); *Thompson v. TCI Prods. Co.*, 13-CV-824-CVE-PJC, 2014 WL 5089938, at *3 (N.D. Okla. Oct. 9, 2014) ("[I]f it later becomes evident that Plaintiff intends to call a treating counselor or expert to testify about his mental distress[,] . . . the Court may revisit whether or not the privilege is then waived."). As a result, even when a plaintiff has no diagnosed mental health condition, or is only asserting garden variety mental health damages, he still places his mental health at issue—and therefore waives the psychotherapist-patient privilege—when he intends to offer expert testimony about mental and emotional damages. Accordingly, the Mental Health Interrogatories—which were drafted directly from the March 26 Order—recognize and comport with case law examining when a plaintiff places his or her mental health at issue in litigation.

**The Mental Health Interrogatories are necessary to determine whether the Bellwether Plaintiffs have put their mental health at issue under state-law governing the psychotherapist-patient privilege.**

Given Plaintiffs' professed concern that the Mental Health Interrogatories are overbroad, Defendants further analyze the significance of the Mental Health Interrogatories with respect to the question of whether the Bellwether Plaintiffs have put their mental health at issue in this case.

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 14

Using the Mental Health Interrogatories to answer this question is consistent with the case-by-case analysis of the psychotherapist-patient privilege required under state law. As the Court noted in its March 26 Order, one way that courts analyze privilege in the context of claims for mental and emotional damages is by assessing whether the damages alleged are "garden variety." Therefore, determining whether a Bellwether Plaintiff has alleged "garden variety" damages is an important step in the privilege analysis. "The most straightforward definition of garden variety claims is the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized." *Waiver of Privilege*, 25 Fed. Prac. & Proc. Evid. § 5552 (1st ed.).

The Bellwether Plaintiffs' answers to the Mental Health Interrogatories are crucial to answering this question because, as Judge Walker observed in *Cameron v. Supermedia, LLC*, No. 4:15cv315-MW/CAS, 2016 WL 1572952, (N.D. Fla. Apr. 19, 2016), "there is often a dispute about what could grow in the garden," *i.e.*, whether a plaintiffs' alleged mental or emotional damages are truly garden variety. 2016 WL 1572952, at *4 (quotation marks omitted). "The problem . . . is definitional and stems from the imprecision and elasticity of the phrase 'garden variety.'" *Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011); *see also Green*, 252 F.R.D. at 129 ("[T]here remains broad disagreements between courts . . . as to what constitutes a mere 'garden variety' emotional distress claim."). Thus, under Judge Walker's decision in *Cameron*, a key question is whether a plaintiff claims (1) "negative emotions that she experienced essentially as the intrinsic result of the defendant's alleged conduct"; or (2) "physical or mental manifestations of emotional distress . . . as a result of the defendant's conduct," including "claims of emotional distress resulting from a defendant's conduct, say, depression, anxiety, or high blood pressure." 2016 WL 1572952, at *4; *see also Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 553 (S.D. Ohio 2014) ("Plaintiff testified in her deposition that Defendant's conduct caused her to suffer stress and sleep deprivation that is still ongoing. Such a claim is less analogous to allegations of short-term embarrassment/humiliation, which would fall within the 'garden variety' exception to waiver, and more analogous to a traditional claim for emotional injury that would permit the jury to award damages for some type of ongoing consequences from the humiliation or embarrassment or distress, which would not fall within the 'garden variety' exception as the term typically is used.").

The question of privilege as it relates to mental health records is fact-intensive, individualized, and specific to the law of each state. Because the Bellwether Plaintiffs pursue state law claims, state law determines the scope of the psychotherapist-patient privilege afforded to mental health records. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). The Bellwether Plaintiffs' interrogatory responses will aid in determining *which* state psychotherapist-privilege statute applies by identifying where the mental health treatment occurred. It would be difficult to delve into this abstract choice of law inquiry without such information. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 3:09-MD-02100-DRH, 2011 WL

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 15

1375011, at *5, *15 (S.D. Ill. Apr. 12, 2011) (Herndon, J.) (explaining that, "[i]n the event that state law governs privilege matters in [an] MDL, the governing choice of law rules will depend on each case's source of origin" and perhaps, under the Restatement Second, the state with the "most significant relationship" to the privileged communication).

Accurately identifying the applicable state law is important because the psychotherapist-patient privilege differs from state to state. The March 26 Order noted that the psychotherapist privilege applies in all states, but the Court did not analyze the differences between the states in terms of whether and to what extent the privilege attaches in the first instance. Dkt. 1065 at 6 ("While state privilege law applies in this case application of state law makes no difference because the law in every state, including Florida, recognizes [a psychotherapist-patient privilege]. The issue here is not whether Plaintiffs' mental health records are privileged but whether Defendants have shown that the plaintiffs have placed their mental condition in controversy."). While it is true that all states recognize some form of psychotherapist-patient privilege, state privilege laws vary in important ways. For example, the scope of the privilege is limited by various statutes in states that define (1) which "confidential communications" are protected from disclosure, (2) the extent of professionals included under the "psychotherapist" umbrella, and (3) statutory exceptions to which the privilege does not apply. Massachusetts' privilege law provides one illustration of this: if a "nonpsychotherapist" doctor or nurse made a "notation concerning psychiatric data" about a plaintiff, that notation would not be privileged. *Dep't of Soc. Servs. to Dispense with Consent to Adoption, Petition of*, 503 N.E. 2d 1275, 1281 (Mass. 1987) (A "notation concerning psychiatric data by nonpsychotherapist doctors and nurses does not require a conclusion that the entire hospital record is within the scope of [Massachusetts' privilege statute]."); *accord Stark v. Hartt Transp. Sys., Inc.*, 937 F. Supp. 2d 88, 92 (D. Me. 2013) (finding it improper under the federal common law privilege for the plaintiff to redact "information gleaned and recorded by non-psychotherapists that happen[ed] to implicate his mental health" as that "type of information is not subject to the privilege and should not have been redacted"). Likewise, in Florida, a psychological evaluation done for purposes other than "diagnosis or treatment" is unprotected. *Delaurentos v. Peguero*, 47 So. 3d 879, 881 (Fla. 3d DCA 2010) (Florida's psychotherapist-patient privilege did not apply to a police officer's psychological evaluation because the "consultation with the psychologist in this case was not for diagnosis or treatment. It was for purposes of a pre-employment examination."). In other words, each state-specific privilege is not necessarily a blanket protection of all mental health-related information.

What it means to put one's mental state "at issue" in a legal proceeding also differs from state to state. *See, e.g.*, § 90.503(4)(c), Fla. Stat.; La. Code Evid. art. 510(2)(a); Wyo. Stat. § 33-27-123(a)(vi). A number of states—including, but not limited to, Florida, Kentucky, Louisiana, Mississippi, Missouri, West Virginia, Washington, and Wyoming—have concluded under their

# KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 16

respective privilege laws that "garden variety" claims of mental anguish are sufficient to put one's mental condition "at issue" and waive the privilege.[6]

Given the nature of the psychotherapist-patient privilege, the interrogatories outlined in the March 26 Order are an appropriate and necessary method for deciding the difficult question of "what could grow in the garden." *Cameron v. Supermedia, LLC*, No. 4:15cv315-MW/CAS, 2016 WL 1572952, at *4 (N.D. Fla. Apr. 19, 2016). The Bellwether Plaintiffs' answers to the Mental Health Interrogatories will help reveal any connections between the Bellwether Plaintiffs' mental health records and the damages claimed in this case. By compelling the Bellwether Plaintiffs to provide this critical information, the Mental Health Interrogatories will help the Court and the Parties determine whether each Bellwether Plaintiff is asserting more than "garden variety" mental anguish—which would result in waiver, no matter what state law applies. Therefore, as explained throughout Defendants' letter brief, the Bellwether Plaintiffs' answers to the Mental Health

---

[6] *See, e.g.*, *Maysey v. Henkel Corp.*, 1:17CV-00108-GNS, 2018 WL 314859, at *3 (W.D. Ky. Jan. 5, 2018) (Under Kentucky's privilege law, "even 'garden variety' claims of emotional suffering serve to waive the privilege."); *Bandorf v. Volusia Cty. Dept. of Corrs.*, 939 So. 2d 249, 251 (Fla. 1st DCA 2006) ("[T]he exception to the privilege applies when a plaintiff or claimant asserts that mental anguish or emotional distress has resulted from the defendant's negligence."); *Payton v. S. Fid. Ins. Co.*, CV 18-2365, 2018 WL 5786047, at *2 (E.D. La. Nov. 5, 2018) ("[C]ase law demonstrates that the [mental health] documents requested are not only relevant but that plaintiffs have waived any privilege by asserting a claim for mental anguish damages."); *McCon v. Perez*, No. 1:17CV77-LG-RHW, 2018 WL 8808145, at *1 (S.D. Miss. Jan. 11, 2018) (Applying Mississippi privilege law and finding that, where the plaintiff sought damages for alleged "mental anguish, distress, and worry," he "placed his mental state at issue, [and] Defendants [were] entitled to discovery relating to mental health treatment records."); *Cline v. William H. Friedman & Assocs., Inc.*, 882 S.W. 2d 754, 761 (Mo. Ct. App. 1994) ("It is beyond question that plaintiff initially waived her physician-patient privilege by placing her mental condition in issue in an attempt to recover for 'mental anguish.'"); *Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 791 (Wash. Ct. App. 2013) (Plaintiff "put his mental health at issue" and "waived his psychologist-patient privilege by claiming emotional harm damages" including "damages for his medical expenses, loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation. . . . Simply because he did not intend to introduce medical records, billings, or testimony, [did] not mean those records [were] irrelevant and undiscoverable."); *Vahai v. Gertsch*, 455 P.3d 1218, 1237 (Wyo. 2020) (Seeking damages for loss of enjoyment of life is sufficient to put mental state at issue under Wyoming privilege laws, which protect a patient's mental health information unless "the patient alleges 'mental or emotional damages' in litigation."); *see also Monroe*, 2007 WL 838932, at *1 ("Because this is a diversity case, state law governs the issues of privilege and waiver.").

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
April 22, 2020
Page 17

Interrogatories, as set out in the March 26 Order, will help answer the question of whether the Bellwether Plaintiffs have put their mental health at issue in this case.

**The Court should set a deadline for any Bellwether Plaintiffs who affirmatively answer a Mental Health Interrogatory to provide signed mental health authorizations.**

Defendants respectfully request that the Court order a date certain for those Bellwether Plaintiffs who affirmatively answer a Mental Health Interrogatory to provide mental health authorizations, in order to assure that documents are obtained in advance of the relevant depositions. It could take 60 days or longer from the date the Bellwether Plaintiffs provide the mental health authorizations for the documents to be made available. Therefore, Defendants request that the Court order any such Bellwether Plaintiffs to return a signed authorization with their responses to the Mental Health Interrogatories.

\*     \*     \*

For the foregoing reasons, the Court should (1) overrule Plaintiffs' objection that interrogatories 26 through 74 exceed the Parties' agreed-upon 100 interrogatory limit, (2) overrule Plaintiffs' objections to the Mental Health Interrogatories, (3) order Plaintiffs to respond to the Mental Health Interrogatories by May 15, 2020, and (4) order those Bellwether Plaintiffs who answer a Mental Health Interrogatory in a manner consistent with waiver of privilege to produce signed mental health authorization(s) by May 15, 2020.

Respectfully submitted,

/s/ *Kimberly Branscome*
Kimberly Branscome

*Counsel for Defendants*

cc:     MDL Counsel of Record

# EXHIBIT A

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| Initial Census Questions | 1 | Information[:] a. Claimant Name; b. Law Firm; c. Male/Female; d. Date of Birth; e. Current state of residence; f. Number of years in current state of residence. | 1 | 1 | This is a single interrogatory because it seeks basic biographical and identification information about the Bellwether Plaintiffs. *Barkovic v. Shelby* , No. 2:10-CV-10962, 2010 WL 11541857, at *1 (E.D. Mich. Aug. 16, 2010) (finding that a question "ask[ing] for [the] plaintiff's name, age, date of birth, address, Social Security number, driver's license number and other names by which he has been known" "constitute[d] but a single inquiry under Rule 33(a)" because all of the questions were "directed to the primary question of the plaintiff's identity"). The pieces of information sought are "details concerning a common theme." *Powell v. The Home Depot USA, Inc.* , No. 07-80435-Civ., 2008 WL 2473748, at *2 (S.D. Fla. June 16, 2008) (finding that an interrogatory that "call[ed] for a list of names, addresses and telephone numbers of all persons who participated in the design development, testing, production, manufacturing, marketing, licensing, leasing, or sale [] of the [] unit, as well as the date, nature, and extent of the participation of all such persons" was a single interrogatory). |
| Initial Census Questions | 2 | Did the claimant serve in the military and/or armed forces? If yes, a. Identify each branch the claimant served in, and the dates or service in each branch; b. Identify each of the claimant's duty stations between 2000 and present; [and] c. Identify each of the claimant's military occupational specialties between 2000 and present[.] | 1 | 2 | This is a single interrogatory that inquires about the nature of the Bellwether Plaintiffs' military service. *Perez v. Aircom Mgmt. Corp.* , No. 12-60322-CIV, 2012 WL 6811079, at *2 (S.D. Fla. Sept. 24, 2012) (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *The Mitchell Co. v. Campus* , No. CA 07-0177-KD-C, 2008 WL 2468564, at *16 (S.D. Ala. June 16, 2008) (finding that a question "about [the] dates [of] each [] identified employee's employment with [the] plaintiff, the position(s) held by such individual, and job descriptions for each identified individual [were] all logically and factually subsumed within the primary inquiry about identifying each employee"). |
| Initial Census Questions | 3 | Is the claimant currently on active military duty? | 1 | 3 | This is a single interrogatory. There are no arguable subparts. |
| Initial Census Questions | 4 | Did the claimant use the Combat Arms Earplug version 2 ("CAEv2") when he or she served in the military and/or armed forces? If yes, a. State whether the claimant used CAEv2 in training, combat, or both; [and] b. Identify the year(s), duty station(s), and military occupational specialties in which the claimant used the CAEv2 earplugs. | 1 | 4 | This is a single interrogatory that inquires about the nature of the Bellwether Plaintiffs' use of the CAEv2 in the military. *Perez* , 2012 WL 6811079, at *2 (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *The Mitchell Co.* , 2008 WL 2468564, at *16 (finding that a question "about [the] dates [of] each [] identified employee's employment with [the] plaintiff, the position(s) held by such individual, and job descriptions for each identified individual [were] all logically and factually subsumed within the primary inquiry about identifying each employee"). |
| Initial Census Questions | 5 | Did the claimant use CAEv2 earplugs as a civilian any time? | 1 | 5 | This is a single interrogatory. There are no arguable subparts. |
| Initial Census Questions | 6 | Identify the physical injuries claimant sustained as a result of using CAEv2 earplugs. | 1 | 6 | This is a single interrogatory. There are no arguable subparts. |
| Initial Census Questions | 7 | Identify the approximate year on which the claimant first noticed: a. that the CAEv2 was not providing adequate protection from loud noises; [and] b. the injury described in Question No. 6 above. | 2 | 8 | This is two interrogatories. Each subpart asks about a discrete piece of knowledge learned by the Bellwether Plaintiffs. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| Initial Census Questions | 8 | Has the hearing loss identified in response to Question No. 6 above been identified during an audiogram or other hearing test? If yes, what was the approximate date of the first audiogram or other hearing tests that identified the injuries described in response to Question No. 6 above? | 1 | 9 | This is a single interrogatory that inquires about whether any alleged hearing loss has been identified in a hearing test. *See Warfield v. Stewart*, No. 2:07-cv-332-FtM-27DNF, 2008 WL 11334900, at *2 (M.D. Fla. 2008) (finding that an interrogatory seeking the identification of "all representations" made by a defendant and "the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates [they were] filed; [] questions about witness statements, by and to whom made, when made, and the substance and context of the statements[; and] . . . questions about persons with documentary evidence in their possession, . . . what documents they have, the location of the documents, and when the documents were prepared" each "constitute one interrogatory); *The Mitchell Co.*, 2008 WL 2468564, at *16 (finding that an interrogatory seeking "a list of all legal matters plaintiff claim[ed] [] established an attorney-client relationship" and the "dates each relationship began and ended" was one interrogatory). |
| Initial Census Questions | 9 | Has the claimant received disability benefits as a result of hearing loss, tinnitus or other hearing injury? If yes, identify the agency or entity that provided the claimant with disability benefits. | 1 | 10 | This is a single interrogatory that inquires about whether any of the Bellwether Plaintiffs have received disability benefits for a hearing injury. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant and "the date and time" of the representations was one interrogatory); Perez, 2012 WL at 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates [they were] filed; [] questions about witness statements, by and to whom made, when made, and the substance and context of the statements[; and] . . . questions about persons with documentary evidence in their possession, . . . what documents they have, the location of the documents, and when the documents were prepared" each "constitute one interrogatory"); The Mitchell Co., 2008 WL 2468564, at *16 (finding that an interrogatory seeking "a list of all legal matters plaintiff claim[ed] [] established an attorney-client relationship" and the "dates each relationship began and ended" was one interrogatory). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 1 | Identify All Persons who have knowledge of Or information concerning the Allegations in the Master Long Form Complaint, And State All facts about which they have knowledge Or information. | 1 | 11 | This is a single interrogatory that inquires about persons who have knowledge about the Bellwether Plaintiffs' allegations in this case. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Mayfair House Ass'n, Inc. v. QBE Ins. Corp.*, No. 09-80359-Civ-Hurley/Hopkins, 2010 WL 11505162, at *2 (S.D. Fla. 2010) (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); *Forum Architects, LLC v. Candela*, No. 1:07CV190-SPM/AK, 2008 WL 217119, at *1 (N.D. Fla. 2008) (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); *Powell*, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |
| ROG Set 1 3/12/20 | 2 | Identify All Persons who have knowledge of Or information concerning the Allegations in Your Master Short Form Complaint, including Any amendments thereto, And State All facts about which they have knowledge Or information. | 1 | 12 | This is a single interrogatory that inquires about persons who have knowledge about the Bellwether Plaintiffs' allegations in this case. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Mayfair House Ass'n, Inc.*, 2010 WL 11505162, at *2 (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); *Forum Architects, LLC*, 2008 WL 217119, at *1 (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); *Powell*, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 3 | Identify All Persons who have knowledge of Or information concerning the statements that You made in the Initial Census Questions, including Any amendments thereto, And State All facts about which they have knowledge Or information. | 1 | 13 | This is a single interrogatory that inquires about persons who have knowledge about the Bellwether Plaintiffs' responses to the Initial Census Questions. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Mayfair House Ass'n, Inc.*, 2010 WL 11505162, at *2 (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); *Forum Architects*, 2008 WL 217119, at *1 (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); *Powell*, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |
| ROG Set 1 3/12/20 | 4 | Identify All Persons who have knowledge of Or information concerning the statements that You made in the Bellwether Selection Sheet, including Any amendments thereto, And State All facts about which they have knowledge Or information. | 1 | 14 | This is a single interrogatory that inquires about persons who have knowledge about the Bellwether Plaintiffs' responses to the Bellwether Selection Sheet. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Mayfair House Ass'n, Inc.*, 2010 WL 11505162, at *2 (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); *Forum Architects*, 2008 WL 217119, at *1 (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); *Powell*, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |
| ROG Set 1 3/12/20 | 5 | Identify All Persons who served with You in the military that were present when You fired weapons in training Or combat. | 1 | 15 | This is a single interrogatory. There are no arguable subparts. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 6 | Identify All Persons who have knowledge of whether Or not You wore a Hearing Protection Device when exposed to loud noises in the military, including loud noises from weapons fire And transport vehicles. | 1 | 16 | This is a single interrogatory that inquires about persons who have knowledge about the Bellwether Plaintiffs' use of the CAEv2 while in the military. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Mayfair House Ass'n, Inc.*, 2010 WL 11505162, at *2 (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); *Forum Architects*, 2008 WL 217119, at *1 (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); *Powell*, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |
| ROG Set 1 3/12/20 | 7 | Identify All Persons who were present when You fired any weapon recreationally, including hunting Or target shooting. | 1 | 17 | This is a single interrogatory that inquires about persons who are potential witnesses because they have seen the Bellwether Plaintiffs use a firearm recreationally. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" and "questions about witness statements, by and to whom made, when made, and the substance and context of the statements" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same). |
| ROG Set 1 3/12/20 | 8 | Identify All Persons with whom You have discussed your hearing loss Or tinnitus, And, for Each, State whether the discussion was verbal Or written And the date(s) the discussion took place. | 1 | 18 | This is a single interrogatory that inquires about persons who are potential witnesses because they have spoken with the Bellwether Plaintiffs about their alleged hearing injury. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about witness statements, by and to whom made, when made, and the substance and context of the statements" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same). |
| ROG Set 1 3/12/20 | 9 | Identify All health care professionals, physicians, audiologists, military Or occupational nurse Or other hygienist, treating facilities, clinics, therapists, And/Or other medical facilities Or providers that have examined Your ears and/or hearing, including  the date of the examination, Any diagnoses made regarding Your hearing Or ears, And Any recommendations made regarding Your hearing Or ears. | 1 | 19 | This is a single interrogatory that inquires about persons who are potential witnesses because they have examined the Bellwether Plaintiffs' ability to hear. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about witness statements, by and to whom made, when made, and the substance and context of the statements" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same); *Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 2772210, at *5 (D. Kan. May 13, 2016) (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 10 | Identify All health care professionals, physicians, audiologists, military Or occupational nurses Or other hygienists, treating facilities, clinics, therapists, And/Or other medical facilities Or providers that have diagnosed You with the injury Or condition that You Allege was caused by Your use of the CAEv2, the injury Or condition that Each Person diagnosed You with And the date of the diagnosis. | 1 | 20 | This is a single interrogatory that inquires about persons who are potential witnesses because they have diagnosed the Bellwether Plaintiffs with the injury for which the Bellwether Plaintiffs seek damages. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about witness statements, by and to whom made, when made, and the substance and context of the statements" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same); *Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |
| ROG Set 1 3/12/20 | 11 | Identify All audiograms, tympanograms, speech reception tests Or Any other hearing-related test results, medical records, hearing aid referrals Or prescriptions, Or other Documents that identify the injuries that You Allege were caused by the CAEv2, including the date(s) of those audiograms, tympanograms, speech reception tests Or Any other hearing-related test results, medical records, hearing aid referrals Or prescriptions, And/Or other Documents, the entity that generated those records, And the injury Identified in those records. | 1 | 21 | This is a single interrogatory because it inquires about Documents identifying the Bellwether Plaintiffs' hearing injuries. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory sought "information regarding [a] common theme" and was therefore "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto"); *Powell*, 2008 WL 2473748, at *3 (finding that a question "call[ing] for an identification of documents which are believed to render obvious any of the claims of [a] patent, and for all such documents, a detailing of the respective portions of every prior art document which is thought to render obvious the individual elements of any of the claims of the [] patent," was single interrogatory); Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 12 | If You received hearing tests, including but not limited to audiograms, tympanograms, speech reception tests Or Any other hearing test, while You served in the military, State the date(s) of the hearing test(s) And whether Or not Any hearing loss Or other hearing disorder was identified. | 1 | 22 | This is a single interrogatory because it seeks information hearing tests conducted while the Bellwether Plaintiffs were in the military. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory sought "information regarding [a] common theme" and was therefore "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto"); *Powell*, 2008 WL 2473748, at *3 (finding that a question "call[ing] for an identification of documents which are believed to render obvious any of the claims of [a] patent, and for all such documents, a detailing of the respective portions of every prior art document which is thought to render obvious the individual elements of any of the claims of the [] patent," was single interrogatory); Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). |
| ROG Set 1 3/12/20 | 13 | Describe in detail the injuries Or conditions that You Allege were caused by Your use of the CAEv2, including but not limited to how the injuries Or conditions affect Your ability to communicate And understand conversations Or to detect, identify, localize And/Or otherwise hear And attend to auditory signals, acoustic alarms And/Or other relevant sounds in your environment. | 1 | 23 | This is a single interrogatory that seeks information about the nature of the Bellwether Plaintiffs' alleged hearing injuries, specifically the effect on the Bellwether Plaintiffs' ability to hear. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 14 | Identify All hearing assistive devices, ear drops, Or any other devices, medications Or therapies that have been prescribed by Or recommended to You by a medical provider, including the date that You were prescribed, the name of the medical provider who prescribed such devices, And Any diagnoses made regarding Your hearing Or ears in prescribing such devices. | 1 | 24 | This is a single interrogatory that seeks information about treatments that the Bellwether Plaintiffs have received for their alleged hearing injuries. *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |
| ROG Set 1 3/12/20 | 15 | If You have Any pain in Your ears, Describe in detail the pain that You experience, the frequency with which You experience the pain, the date on which the pain began, And the date on which You last experienced the pain. | 1 | 25 | This is a single interrogatory that seeks information about the nature of the Bellwether Plaintiffs' alleged hearing injuries, specifically ear pain. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory). |
| ROG Set 1 3/12/20 | 16 | If You have a sensation of fullness Or pressure in one Or both of Your ears, Identify the ear(s) in which You have a sensation of fullness Or pressure, the date on which the sensation began, the frequency with which You experience such sensation, And the date on which You last experienced such sensation. | 1 | 26 | This is a single interrogatory that seeks information about the nature of the Bellwether Plaintiffs' alleged hearing injuries, specifically any sensation of fullness. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects*, LLC, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 17 | If You have Any noises, sounds, buzzing, whooshing, Or ringing in Your ear(s), Describe the noises, sounds, buzzing, whooshing, Or ringing, including the date on which the sound began, the frequency with which You hear the sound, whether the sound fluctuates Or stays constant, whether the sound bothers You, whether the sound keeps You awake when trying to sleep, the date on which you last experienced such sound, And whether the sound is getting worse Or remaining approximately the same. | 1 | 27 | This is a single interrogatory that seeks information about the nature of the Bellwether Plaintiffs' alleged hearing injuries, specifically tinnitus. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory). |
| ROG Set 1 3/12/20 | 18 | If fluid drains from Your ears, Identify the ear(s) from which the fluid drains, the date on which You first noticed fluid draining, the frequency of such drainage, the date on which you last experienced such drainage, the color of the fluid, And whether the fluid has an odor. | 1 | 28 | This is a single interrogatory that seeks information about the nature of the Bellwether Plaintiffs' alleged hearing injuries, specifically drainage of fluid from the ears. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory); *Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory). |
| ROG Set 1 3/12/20 | 19 | If You have had ear surgery, Describe the surgery, including the date of the surgery And the doctor who performed the surgery. | 1 | 29 | This is a single interrogatory that seeks information about whether the Bellwether Plaintiffs have undergone any ear surgeries.  *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 20 | Describe Any prescription medications You take Or have taken to date, including the name of the medication, frequency And duration of taking each medication. | 1 | 30 | This is a single interrogatory that seeks information about the Bellwether Plaintiffs' use of prescription medications.  *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |
| ROG Set 1 3/12/20 | 21 | Identify Any pharmacies at which you have filled prescription medications. | 1 | 31 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 22 | If You have ever been diagnosed with Any medical condition Or disease, Identify the condition Or disease, the date of diagnosis, the diagnosing doctor, Any treatment prescribed, whether You were hospitalized, the date of hospitalization, if any, and whether You received IV antibiotics. | 1 | 32 | This is a single interrogatory that seeks information about whether the Bellwether Plaintiffs' treatment history.  *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |
| ROG Set 1 3/12/20 | 23 | Describe All injuries, including head injuries, that You sustained during Your Military service, including the date that You sustained the injuries And the circumstances surrounding those injuries. | 1 | 33 | This is a single interrogatory that seeks information about the Bellwether Plaintiffs' medical history.  *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); *Barkovic*, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |
| ROG Set 1 3/12/20 | 24 | State the size of Your ear canal And All factual bases for such Statement, including but not limited to any ear canal sizing Or earplug sizing performed And communicated to you by a provider such as an audiologist. | 1 | 34 | This is a single interrogatory that seeks information about a common topic -- the size of the Bellwether Plaintiffs' ear canals. *See Mayfair House Ass'n, Inc.*, 2010 WL 11505162, at *2 (finding that a question was a single interrogatory because it "s[ought] to have [the p]laintiff . . . describe how certain factual allegations relate[d] to [the p]laintiff"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 25 | Identify Any awards, medals, honors, Or commendations that You have received in connection with Your military service, including the dates You received those awards. | 1 | 35 | This is a single interrogatory that inquires about the nature of the Bellwether Plaintiffs' military service. *Perez*, 2012 WL 6811079, at *2 (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *The Mitchell Co.*, 2008 WL 2468564, at *16 (finding that a question "about [the] dates [of] each [] identified employee's employment with [the] plaintiff, the position(s) held by such individual, and job descriptions for each identified individual [were] all logically and factually subsumed within the primary inquiry about identifying each employee"). |
| ROG Set 1 3/12/20 | 26 | If You were ever deployed in combat, please Identify the location, dates of deployment, Your primary duties while deployed, And whether you experienced live fire at or from the enemy in combat. | 1 | 36 | This is a single interrogatory that inquires about the nature of the Bellwether Plaintiffs' military service. *Perez*, 2012 WL 6811079, at *2 (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *The Mitchell Co.*, 2008 WL 2468564, at *16 (finding that a question "about [the] dates [of] each [] identified employee's employment with [the] plaintiff, the position(s) held by such individual, and job descriptions for each identified individual [were] all logically and factually subsumed within the primary inquiry about identifying each employee"). |
| ROG Set 1 3/12/20 | 27 | Describe how You first acquired the CAEv2, including who first issued You the CAEv2 And the date on which they issued You the CAEv2. | 1 | 37 | This is a single interrogatory that inquires about the Bellwether Plaintiffs' acquisition of the CAEv2. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 28 | If you were fitted with the CAEv2 by another person, describe the process by which you were fitted, including the person(s) who fitted you with the CAEv2, the date(s) And location(s) you were fitted, how you were fitted, And whether Or not the person fitting you with the CAEv2 rolled back any of the flanges on the opposite end of the CAEv2 during the fitting process | 1 | 38 | This is a single interrogatory that seeks a description of the process by which the Bellwether Plaintiffs were fitted with the CAEv2. As defined in Defendants' interrogatories, "[t]he term "Describe" means to set out every fact, circumstance, calculations, act, omission OR course of conduct known to [the Bellwether Plaintiff] relating in Any way to the matter inquired back, including (without limitation) the identity of All writings relative thereto." Therefore, all of the information sought is related to a single inquiry. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory sought "information regarding [a] common theme" and was therefore "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 29 | If You acquired more than one pair of the CAEv2, Describe how You acquired subsequent CAEv2s, including who issued You the subsequent CAEv2s And the date on which they issued You the CAEv2. | 1 | 39 | This is a single interrogatory that inquires about the Bellwether Plaintiffs' acquisition of the CAEv2. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 30 | Describe Each instance in which You wore the CAEv2, including the dates in which You wore the CAEv2, the circumstances in which You wore the CAEv2, And the types of noises that You were exposed to while using the CAEv2. | 1 | 40 | This is a single interrogatory because it inquires about the details of the Bellwether Plaintiffs' use of the CAEv2. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory was "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify by name, general description, function performed, serial number, part number, and physical dimensions all products, parts, features, and components that [the defendant] manufactures, distributed, supplied, sold, or placed into the stream of commerce that [the plaintiff] contend[ed] were defectively manufactured, or assembled, or were otherwise unreasonably dangerous, including the identity of each person with knowledge of the alleged defect and a description of each document relating or referring to the alleged defect."); *Warfield,* 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 31 | Describe the specific circumstances Or situations in which You wore the green end of the CAEv2, And your understanding of the specific circumstances in which You were supposed to wear the green end of the CAEv2. | 2 | 42 | This is two interrogatories. The first subpart asks about the Bellwether Plaintiffs' use of the green end of the CAEv2. The second subpart asks about the Bellwether Plaintiffs' subjective understanding of when he or she was supposed to use the green end. |
| ROG Set 1 3/12/20 | 32 | Describe the specific circumstances Or situations in which You wore the yellow end of the CAEv2 And your understanding of the specific circumstances in which You were supposed to wear the yellow end of the CAEv2. | 2 | 44 | This is two interrogatories. The first subpart asks about the Bellwether Plaintiffs' use of the yellow end of the CAEv2. The second subpart asks about the Bellwether Plaintiffs' subjective understanding of when he or she was supposed to use the yellow end. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 33 | Describe Each instance in which You have worn a Hearing Protection Device other than the CAEv2, including the name of the Hearing Protection Device, the years in which You wore the Hearing Protection, the circumstances in which You wore the Hearing Protection Device, And the types of noises that You were exposed to while using the Hearing Protection Device. | 1 | 45 | This is a single interrogatory because it inquires about the details of the Bellwether Plaintiffs' use of other hearing protection devices. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory was  "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify by name, general description, function performed, serial number, part number, and physical dimensions all products, parts, features, and components that [the defendant] manufactures, distributed, supplied, sold, or placed into the stream of commerce that [the plaintiff] contend[ed] were defectively manufactured, or assembled, or were otherwise unreasonably dangerous, including the identity of each person with knowledge of the alleged defect and a description of each document relating or referring to the alleged defect."); *Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 34 | Describe in detail any complaints you made regarding the CAEv2 while in the Military, including the date of the complaint(s), the person(s) to whom you made the complaint, And the substance of the complaint. | 1 | 46 | This is a single interrogatory because it inquires about prior statements made by the Bellwether Plaintiffs about the CAEv2. *See Perez*, 2012 WL at 6811079, at *1 (noting that "questions about prior lawsuits . . . and the dates [they were] filed; [] questions about witness statements . . . [and] when made[; and] . . . questions about persons with documentary evidence in their possession . . . and when they were prepared" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory that "ask[ed] about prior lawsuits, when, what was the nature of the cause of action, which party, what court[,] and when" was a single interrogatory because the questions "are related and connected"). |
| ROG Set 1 3/12/20 | 35 | Describe All of the loud noises that You were exposed to while in the Military, including but not limited to Any loud noise created by weapons, generators, vehicles, planes, helicopters, heavy machinery, air compressors, And/Or explosions. | 1 | 47 | This is a single interrogatory that asks the Bellwether Plaintiffs to describe their exposure to loud noise while in the military. There are no subparts, just an illustrative list of the types of noise that the Bellwether Plaintiffs might describe. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 36 | Describe All of the weapons You operated while in the military, And for each, describe the Hearing Protection Device You wore while operating the weapon, if any. | 2 | 49 | This is two interrogatories. The first subpart asks about the weapons that the Bellwether Plaintiffs' used in the military. The second subpart asks about whether the Bellwether Plaintiffs wore hearing protection when using those weapons. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 37 | Describe Any basic Or advanced weapons training You received in connection with Your military service, including the date of training, the weapons fired during training, And the Hearing Protection Devices worn while firing weapons during training. | 1 | 50 | This is a single interrogatory that asks the Bellwether Plaintiffs to describe their weapons training in the military. As defined in Defendants' interrogatories, "[t]he term "Describe" means to set out every fact, circumstance, calculations, act, omission OR course of conduct known to [the Bellwether Plaintiff] relating in Any way to the matter inquired about, including (without limitation) the identity of All writings relative thereto." Therefore, all of the information sought is related to a single inquiry. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory was "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify by name, general description, function performed, serial number, part number, and physical dimensions all products, parts, features, and components that [the defendant] manufactures, distributed, supplied, sold, or placed into the stream of commerce that [the plaintiff] contend[ed] were defectively manufactured, or assembled, or were otherwise unreasonably dangerous, including the identity of each person with knowledge of the alleged defect and a description of each document relating or referring to the alleged defect."). |
| ROG Set 1 3/12/20 | 38 | If You were exposed to Any weapon, machinery, And/Or Any other loud noises while in the Military, please Describe in detail All circumstances in which You did so, including the weapon(s), machinery, And/Or loud noises you were exposed to without a Hearing Protection Device, And the frequency And duration of use without using a Hearing Protection Device. | 1 | 51 | This is a single interrogatory that asks the Bellwether Plaintiffs to describe their exposure to loud noise while in the military. As defined in Defendants' interrogatories, "[t]he term "Describe" means to set out every fact, circumstance, calculations, act, omission OR course of conduct known to [the Bellwether Plaintiff] relating in Any way to the matter inquired about, including (without limitation) the identity of All writings relative thereto." Therefore, all of the information sought is related to a single inquiry. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory was "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify by name, general description, function performed, serial number, part number, and physical dimensions all products, parts, features, and components that [the defendant] manufactures, distributed, supplied, sold, or placed into the stream of commerce that [the plaintiff] contend[ed] were defectively manufactured, or assembled, or were otherwise unreasonably dangerous, including the identity of each person with knowledge of the alleged defect and a description of each document relating or referring to the alleged defect."). |
| ROG Set 1 3/12/20 | 39 | If You were exposed to Any explosions while in the Military, including Improvised Explosive Device (IED) explosions, State the date of such exposure, the circumstances of the exposure, And which Hearing Protection Device You were wearing, if any. | 2 | 53 | This is two interrogatories. The first subpart asks about the Bellwether Plaintiffs' exposure to IEDs while in the military. The second subpart asks about whether the Bellwether Plaintiffs were wearing hearing protection when exposed to said IEDs. |
| ROG Set 1 3/12/20 | 40 | Describe in detail All circumstances in which the CAEv2 fell completely out of Your ears after You had inserted it. | 1 | 54 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 41 | Describe in detail All circumstances in which you perceived that the CAEv2 loosened in Your ear(s) after You had inserted it. | 1 | 55 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 42 | State whether, upon insertion of one end of the CAEv2, the flanges from the opposite end contacted Your ear. | 1 | 56 | This is a single interrogatory. There are no arguable subparts. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 43 | If You folded back Any of the flanges of the opposite end of the CAEv2 while using the CAEv2, Describe in detail the circumstances in which You folded back the flanges. | 1 | 57 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 44 | Describe in detail Any instruction(s) Or training that You were provided on how to use the CAEv2, including but not limited to Any written Or oral instructions And in-Person training, the positions And names of the Person(s) who provided the training, And the dates of the training. | 1 | 58 | This is a single interrogatory because it inquires about how the Bellwether Plaintiffs learned to wear the CAEv2. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory sought "information regarding [a] common theme" and was therefore "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto"). |
| ROG Set 1 3/12/20 | 45 | If You were instructed to roll Or fold back Any of the flanges on the CAEv2, Describe in detail the circumstances in which You were instructed to do so, including but not limited to Any written Or oral instructions And in-Person training, the positions And names of the Person(s) who provided the training, And the dates of the training. | 1 | 59 | This is a single interrogatory because it inquires about whether the Bellwether Plaintiffs were instructed to roll back the flanges when wearing the CAEv2. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2 (finding that an interrogatory sought "information regarding [a] common theme" and was therefore "properly counted as a single interrogatory" when it asked a plaintiff to "[i]dentify the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto"). |
| ROG Set 1 3/12/20 | 46 | Describe in detail Any hearing loss Or tinnitus You had prior to joining the military. | 1 | 60 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 47 | Describe in detail whether And how Your hearing loss And tinnitus has changed since You were discharged from the military. | 1 | 61 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 48 | Describe in detail All circumstances Or events in which You allege You were exposed to noise while wearing the CAEv2 that You allege caused Or contributed to Your injury. | 1 | 62 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 49 | Describe in detail All alleged defects with the CAEv2 that You believe caused Or contributed to Your injuries And that form the basis of the allegations in the Master Long Form Complaint And Your Master Short Form Complaint. | 1 | 63 | This is a single interrogatory because it inquires about the defects that the Bellwether Plaintiffs allege caused them injury. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *3 (finding that questions were "properly counted as a single interrogatory" because they "sought information regarding a single topic -- the product or products that [were] alleged to have caused the fire at issue" in the case). |
| ROG Set 1 3/12/20 | 50 | Identify Each Statement regarding the CAEv2 that You relied upon in using the CAEv2 And that You claim is false. | 1 | 64 | This is a single interrogatory. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 51 | Identify all warranties, either express Or implied, that You allege applied to Your use of the CAEv2. | 1 | 65 | This is a single interrogatory. There are no arguable subparts. |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 52 | Identify All damages, losses, Or expenses of Any nature whatsoever by category And the amount that You are claiming as a result of Your use of the CAEv2, including All events Described in the Master Long Form Complaint And Your Master Short Form Complaint. | 1 | 66 | This is a single interrogatory that inquires about the damages, losses, and expenses that Plaintiffs seek to recover in this lawsuit. *See Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory); *Mitchell*, 2008 WL 2468564, at *18 (finding that an interrogatory "ask[ing] for each item of damage or injury for which [the] plaintiff [sought] compensation," "the specific dollar amount for each item of damage or injury[,] and the methods for computation of same" was one interrogatory). |
| ROG Set 1 3/12/20 | 53 | Other than the injuries that You Allege were caused by Your use of the CAEv2, Describe Any other physical injuries, illnesses, Or disabilities that have resulted in loss of income Or medical expenses, including the symptoms of the injuries, the date(s) of onset, the date(s) of diagnoses, And by whom it was first diagnosed. | 1 | 67 | This is a single interrogatory that seeks information about physical conditions that have caused the Bellwether Plaintiffs to lose income or incur expenses. *See Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory); Mitchell, 2008 WL 2468564, at *18 (finding that an interrogatory "ask[ing] for each item of damage or injury for which [the] plaintiff [sought] compensation," "the specific dollar amount for each item of damage or injury[,] and the methods for computation of same" was one interrogatory). |
| ROG Set 1 3/12/20 | 54 | If You are claiming Or expect to claim hearing injury of any type and/or level of impairment as a result of Your use of the CAEv2, State the type And classification of that injury and/or level of impairment as it specifically relates to the Standards of Medical Fitness (or similar Standards) for your military branch of service, And State what medical Or audiometric provider communicated that type And classification to you And on what date. | 1 | 68 | This is a single interrogatory because it inquires about whether the Bellwether Plaintiffs' alleged hearing injuries have been classified on any standard scale. *See Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.") |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 55 | If You are claiming Or expect to claim that You lost earnings Or suffered an impairment of Your earning capacity as a result of Your use of the CAEv2, State the total number of days You missed from work because of Your injuries, whether You received Any disability, medical leave, Or other income for those days You missed Allegedly due to Your injuries and, if so, the type And amount of such income. | 1 | 69 | This is a single interrogatory that inquires about monetary payments the Bellwether Plaintiffs have received for days of work missed due to their alleged injuries. *See Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Forum Architects, LLC* , 2008 WL 217119, at *2 (finding that an interrogatory "ask[ing] for a list of damages, and includ[ing] the related and connected questions of when the damage occurred, to whom damages or expenses were paid, and for what" was one interrogatory); *Mitchell* , 2008 WL 2468564, at *18 (finding that an interrogatory "ask[ing] for each item of damage or injury for which [the] plaintiff [sought] compensation," "the specific dollar amount for each item of damage or injury[,] and the methods for computation of same" was one interrogatory). |
| ROG Set 1 3/12/20 | 56 | If You are claiming Or expect to claim that You lost earnings Or suffered an impairment of Your earning capacity as a result of Your use of the CAEv2, State whether You expect to return to employment following recovery from Your injuries. If You do expect to return to work, State when Your return is expected, whether You are expected to return to the same Or similar job, And the number of hours per week You expect to be working. If You do not expect to return to work, State why You are no longer able to work, if the same was confirmed by Any medical professional, And the name of the medical professional who confirmed the same, if any. | 2 | 71 | This is a two interrogatories -- one seeking information about the Bellwether Plaintiffs' alleged lost earnings and a second seeking information about any injuries that will prevent the Bellwether Plaintiffs from returning to work. *See Perez*, 2012 WL at 6811079, at *1 (noting that "questions about damages, when the damages occurred, to whom expenses were paid; and [] questions about lost income, benefits, or earning capacity, the nature of each loss, and how the loss was computed" each "constitute one interrogatory"); *Rowan* , 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"). |
| ROG Set 1 3/12/20 | 57 | If You are claiming an impairment of Your earning capacity, State the impairment And the health care provider who diagnosed Your impairment. | 1 | 72 | This is a single interrogatory because it seeks information about any diagnosed impairments that have reduced the Bellwether Plaintiffs' earning capacity. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); *Rowan* , 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"). |
| ROG Set 1 3/12/20 | 58 | If You have submitted a workers' compensation claim, Veterans Affairs disability application, veterans benefits administration disability application, social security claim, Or Any other form of disability application Or claim for hearing-related injuries, Identify the application Or claims submitted, the entity with which the claim was filed, the date the claim was filed, the claim number, the nature of the disability, the period of disability, And the status of the claim. | 1 | 73 | This is a single interrogatory that inquires about any disability applications that the Bellwether Plaintiffs have submitted. *See Perez*, 2012 WL 6811079, at *1 ("questions about persons with documentary evidence in their possession, custody, and control, what documents they have, the location of the documents, and when the documents were prepared" is "one interrogatory"); *Warfield,* 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[tiy of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 59 | If You have applied for disability benefits to the Veterans Affairs And were denied Your request for benefits for hearing-related injuries, Describe the bases that the Veteran Affairs gave You in denying Your application for benefits. | 1 | 74 | This is a single interrogatory because it inquires about the reasons for any denial of Veterans Affairs disability applications for hearing-related injuries. There are no arguable subparts. |
| ROG Set 1 3/12/20 | 60 | If You have, Or someone on Your behalf has, made a claim Or filed a lawsuit concerning the injuries that You claim to have sustained as a result of Your use of the CAEv2, Identify the other Persons Or entities against whom the claim was made Or lawsuit was filed, the date of the claim Or lawsuit, where the claim Or lawsuit was filed, And the status of the claim Or lawsuit. | 1 | 75 | This is a single interrogatory because it inquires about any prior lawsuits filed by or on behalf of the Bellwether Plaintiffs. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates filed" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory that "ask[ed] about prior lawsuits, when, what was the nature of the cause of action, which party, what court[,] and when" was a single interrogatory because the questions "are related and connected"). |
| ROG Set 1 3/12/20 | 61 | Describe Each occupation that You have had outside of Your service in the Military, including the employer's name And address, the dates in which You were employed there, Your job title, the nature of Your responsibilities, And Any Hearing Protection Devices that You wore on the job. | 1 | 76 | This is a single interrogatory that inquires about the nature of the Bellwether Plaintiffs' non-military employment. As defined in Defendants' interrogatories, "[t]he term "Describe" means to set out every fact, circumstance, calculations, act, omission OR course of conduct known to [the Bellwether Plaintiff] relating in Any way to the matter inquired about, including (without limitation) the identity of All writings relative thereto." Therefore, all of the information sought is related to a single inquiry. *Perez*, 2012 WL 6811079, at *2 (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *The Mitchell Co.*, 2008 WL 2468564, at *16 (finding that a question "about [the] dates [of] each [] identified employee's employment with [the] plaintiff, the position(s) held by such individual, and job descriptions for each identified individual [were] all logically and factually subsumed within the primary inquiry about identifying each employee"). |
| ROG Set 1 3/12/20 | 62 | For Each occupation that You had outside of Your service in the Military, Describe Any hearing conservation programs that You were assigned to And/Or Hearing Protection Devices You were required to wear in Your occupation, including Any audiograms Or other hearing tests that You received for Your occupation, the employer(s) for which You were tested, the date(s) of the hearing test(s), the Hearing Protection Devices You wore, if any, And whether Or not Any hearing impairment Or other hearing disorder was identified in Any hearing-related test. | 1 | 77 | This is a single interrogatory about the hearing conservation programs at the Bellwether Plaintiffs' non-military employment. As defined in Defendants' interrogatories, "[t]he term "Describe" means to set out every fact, circumstance, calculations, act, omission OR course of conduct known to [the Bellwether Plaintiff] relating in Any way to the matter inquired about, including (without limitation) the identity of All writings relative thereto." Therefore, all of the information sought is related to a single inquiry. *See Perez*, 2012 WL 6811079, at *2 (finding that a question about "the nature of [a p]laintiff's employment, such as where and when her employment began, her title, and the tasks she performed" was a single interrogatory); *Rowan*, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 63 | Describe in detail Any non-occupational activities, such as sporting events, music concerts, personal headphones, all-terrain vehicles, motorcycles, car racing, band practices, monster truck events, power tool usage, animal kennels, farm equipment, lawn mowers, chainsaws, leaf blowers, weed cutters, engine repair, train noise, etc., in which You were exposed to loud noise, including the nature of the activity, the frequency with which You engaged in such activity, And the dates in which You engaged in such activity. | 1 | 78 | This is a single interrogatory because it asks for information about the Bellwether Plaintiffs' exposure to noise in non-occupational settings. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 64 | For Each instance in which You have shot a firearm recreationally, Describe in detail circumstances surrounding your use, including the activity in which You shot the firearm, the type of firearm You used during the activity, the dates in which You performed that activity, the frequency with which You performed that activity, the Hearing Protection Device worn during the activity, if any, And the date You last performed the activity. | 1 | 79 | This is a single interrogatory because it asks for information about the Bellwether Plaintiffs' recreational use of firearms. *See Am. Auto. Ins. Co.*, 2016 WL 7188894, at *2-3 (finding that a question seeking "[i]dentif[ication of] the date when any products, and components thereof, that [the defendant] designed, manufactured, distributed, supplied, sold, or placed into the stream of commerce were installed at the subject property, including the identity of any person or entity that installed and/or serviced these products, parts, features, or components and a description of any documents relating thereto" "is properly counted as a single interrogatory" because is asks "for information regarding the common theme; namely [the d]efendant's product's installed at the property"). |
| ROG Set 1 3/12/20 | 65 | If Any of Your family member(s) have had hearing loss, Identify the family member(s) And Your relationship to them. | 1 | 80 | This is a single interrogatory because it seeks the identification of the Bellwether Plaintiffs' family members who have had hearing loss. *See Warfield*, 2008 WL 11334900, at *2 (finding that an interrogatory seeking the identification of "all representations" made by a defendant, a "descri[ption of] the substance of the representation, [the] identi[ty of] the person who made the representation, [the] identi[ty of] the person to whom the representation was made, and [] the date and time" of the representations was one interrogatory). |
| ROG Set 1 3/12/20 | 66 | If You have ever received a hunting And/Or gun license, State the year of the license, the status of the license, And the weapon which You were licensed to operate. | 1 | 81 | This is a single interrogatory because it inquires about documents that show the Bellwether Plaintiffs' use of firearms. *See Powell*, 2008 WL 2473748, at *3 (finding that a question "call[ing] for an identification of documents which are believed to render obvious any of the claims of [a] patent, and for all such documents, a detailing of the respective portions of every prior art document which is thought to render obvious the individual elements of any of the claims of the [] patent," was single interrogatory); Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.") |
| ROG Set 1 3/12/20 | 67 | If You have filed a lawsuit Or made a claim involving Personal injuries other than this case, Identify the Court, the case name, the names of adverse parties, the civil action number if filed, And for how much the matter was resolved. | 1 | 82 | This is a single interrogatory because it inquires about any prior lawsuits filed by the Bellwether Plaintiffs. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates filed" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (finding that an interrogatory that "ask[ed] about prior lawsuits, when, what was the nature of the cause of action, which party, what court[,] and when" was a single interrogatory because the questions "are related and connected"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 1 3/12/20 | 68 | If within the past ten (10) years You have ever been convicted of, Or pled guilty to, a felony Or completed serving a sentence for a felony conviction, Identify the charge for which You were convicted (or pled guilty to), the court in which You were convicted Or entered the plea, the criminal action number assigned to the matter, And the sentence imposed. | 1 | 83 | This is a single interrogatory because it inquires about the Bellwether Plaintiffs' prior felony convictions. See Perez, 2012 WL 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates filed" "constitute one interrogatory"); Forum Architects, LLC, 2008 WL 217119, at *2 (finding that an interrogatory that "ask[ed] about prior lawsuits, when, what was the nature of the cause of action, which party, what court[,] and when" was a single interrogatory because the questions "are related and connected"). |
| ROG Set 1 3/12/20 | 69 | If within the past ten (10) years You have been convicted of, Or pled guilty to, a misdemeanor involving lying, false Statements, cheating, fraud, Or dishonesty, Identify the charge for which You were convicted (or pled guilty to), the court in which You were convicted Or entered the plea, the criminal action number assigned to the matter, And the sentence imposed. | 1 | 84 | This is a single interrogatory because it inquires about the Bellwether Plaintiffs' prior misdemeanor convictions for crimes involving dishonesty. See Perez, 2012 WL 6811079, at *1 (noting that "questions about prior lawsuits, the nature of the cause of action, the parties, the court in which the lawsuit was filed, and the dates filed" "constitute one interrogatory"); Forum Architects, LLC, 2008 WL 217119, at *2 (finding that an interrogatory that "ask[ed] about prior lawsuits, when, what was the nature of the cause of action, which party, what court[,] and when" was a single interrogatory because the questions were "related and connected"). |
| ROG Set 1 3/12/20 | 70 | Identify Any individuals who are depicted in Any photographs, films, movies, And video recordings that You produce in response to Requests for Production 17, 21, 27, And 29. | 1 | 85 | This is one interrogatory because it asks the Bellwether Plaintiffs to identify individuals who might be witnesses in this case because they are depicted in photographs produced in response to Defendants' requests for production. See Perez, 2012 WL 6811079, at *1 (noting that "questions about persons with knowledge and the subject area of their knowledge" "constitute one interrogatory"); Mayfair House Ass'n, Inc., 2010 WL 11505162, at *2 (finding that an interrogatory asking for the "names and addresses of persons with knowledge of [] allegations" in a complaint was a single interrogatory); Forum Architects, 2008 WL 217119, at *1 (finding that a "question about persons with knowledge and the subject area of their knowledge" is "standard" and noting that such a question "is considered one item of the initial disclosure requirements set forth in Rule 26(a)(1)(A)"); Powell, 2008 WL 2473748, at *2 (finding that an interrogatory "call[ing] for the names, addresses, and telephone numbers of all persons known or believed to have knowledge concerning the facts or claims raised in the pleadings, as well as the subject matter and substance of each person's knowledge" "should be treated as [a] single interrogator[y]"). |
| ROG Set 2 3/30/20 | 71 | Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who diagnosed you with the condition(s) and the date of the diagnosis. | 1 | 86 | This is a single interrogatory because it inquires about any diagnoses of mental health conditions. See Rowan, 2016 WL 2772210, at *5 (finding that a question seeking the "the date of each of [the plaintiff's] medical examinations or treatments for injuries he sustained in the accident" "including the name and address of the provider, the nature and extent of the examination or treatment, the diagnosis and prognosis, and the amount charged" was "a single request"); Barkovic, 2010 WL 11541857, at *1 (finding that an interrogatory "ask[ing the] plaintiff to identify each medical provider he ha[d] seen as a result of the events at issue in the suit, and for each provider so identified to provide the date of the examination or treatment, the purpose of the visit, the treatment provided, and the cost of the visit or treatment" was "a single inquiry"). |

| Request Set | Request No. | Request | Number of Interrogatories | Cumulative Count | Analysis |
|---|---|---|---|---|---|
| ROG Set 2 3/30/20 | 72 | State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed.  If so, please Describe the expert testimony You intend to offer. | 1 | 87 | This is a single interrogatory because it inquires about a subset of expert testimony that the Bellwether Plaintiffs might offer at trial. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about expert witnesses, their addresses, qualifications, subject matter of their opinions, and grounds for their opinions" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same); *The Mitchell Co.*, 2008 WL 2468564, at 17 (finding that a "primary question ask[ing] for [a] plaintiff's identification of its expert witnesses" "logically and factually subsumed" "the remaining inquiries about each expert's address, occupation, place of employment, qualifications, list of publications, opinions to be expressed and the reasons therefor, all data and information considered in forming opinions, exhibits to be used as support for the opinions, compensation paid for study and testimony, and a list of other cases the individual ha[d] appeared as an expert in the last four years"). |
| ROG Set 2 3/30/20 | 73 | State whether You intend to offer any evidence at trial related to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed.  If so, please Describe the evidence you intend to offer. | 2 | 89 | This is two interrogatories that inquire about two categories of evidence that the Bellwether Plaintiffs will elicit at trial. *See Perez*, 2012 WL 6811079, at *1 (noting that "questions about witness statements, by and to whom made, when made, and the substance and context of the statements" "constitute one interrogatory"); *Forum Architects, LLC*, 2008 WL 217119, at *2 (same). |
| ROG Set 2 3/30/20 | 74 | Please Identify all education institutions at which you are or have been enrolled. | 1 | 90 | This is a single interrogatory. There are no arguable subparts. |

# EXHIBIT B

## TOLLING AGREEMENT

THIS AGREEMENT is by and between 3M Company, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo, LLC ("Defendants"), and the individual(s) identified on **Exhibit A[1]** ("Claimant(s)"), and _____ ("Plaintiffs' Counsel"), and _____ ("Plaintiffs' Law Firm") (each a "Party" and collectively the "Parties").

WHEREAS, Claimant(s) assert claims against Defendants alleging personal injury(ies) caused by using the dual-ended Combat Arms Earplugs Version 2 ("Combat Arms Earplugs"), or that they are, or are in the process of becoming, the legal representative of a person, or of the estate of a person, who was allegedly injured as a result of using Combat Arms Earplugs;

WHEREAS, Plaintiffs' Counsel and Plaintiffs' Law Firm represent Claimant(s);

WHEREAS, numerous cases involving Combat Arms Earplugs have been consolidated in MDL 2885, *In re: 3M Combat Arms Earplug Products Liability Litigation*, currently pending in the Northern District of Florida (the "Court");

WHEREAS, the Parties agree that it would be appropriate at this time to defer litigation of certain Claims (defined below), subject to the conditions contained in this Tolling Agreement;

WHEREAS, the Parties recognize the benefits of deferring litigation at this time, including cost savings, early vetting of cases without unnecessary expense, early exchange of significant information on unfiled cases that normally could not occur but for such agreement, and other benefits recognized by the Parties;

THEREFORE, the Parties have agreed as follows:

---

[1]     Each Plaintiffs' Counsel shall complete and serve Exhibit A within 10 days of execution of this Tolling Agreement by that individual Plaintiffs' Counsel.

### Definitions

1.      The term "Effective Date" shall mean: (i) with respect to Claimants who enter into this Tolling Agreement on or before October 4, 2019, **June 20, 2019**; (ii) with respect to Claimants who enter into this Tolling Agreement after October 4, 2019, **the date this Tolling Agreement is executed**; or (iii) with respect to Future Claimants, **the Disclosure Date on which the Future Claimant is disclosed to Defendants** (as such terms are defined in Paragraph 32 below).

2.      The term "Tolling Period" shall mean the time period beginning on the Effective Date and ending on the earlier of: (i) 90 days after any Party provides written notice that the Party is withdrawing from this Tolling Agreement; (ii) the date on which the Claimant files or otherwise commences a tolled Claim against Defendants; or (iii) December 20, 2021.[2]  The Tolling Period can be extended upon written agreement by all of the Parties.

3.      The term "Claim" shall refer to any claim(s) or cause(s) of action alleging personal injury and associated harms caused by using Combat Arms Earplugs.  The term "Claim" as defined herein specifically includes any loss of consortium claims and punitive damages claims that may exist, if any.

4.      The term "Limitations" shall mean any and all time limitations for filing or pursuing Claims, including statutes of limitation, statues of repose, prescription, laches, and any other time bars, including, but not limited to, those based in equity.

5.      The term "Initial Census Questions" shall refer to the questions in the questionnaire attached hereto as **Exhibit B**.

6.      The term "Census Question Deadline" shall mean December 2, 2019.

---

[2] Provided, however, that solely for cases in which Louisiana law applies, the term "Tolling Period" shall mean the time period beginning on the Effective Date and ending on the earlier of: (i) 90 days after any Party provides written notice that the Party is withdrawing from this Tolling Agreement; (ii) the date on which the Claimant files or otherwise commences a tolled Claim against Defendants; or (iii) June 20, 2020, with an automatic extension thereafter through June 20, 2021, and a second automatic extension thereafter thru December 20, 2021.

7.     The term "Initial Census Documents" shall refer to the documents responsive to the document requests attached hereto as **Exhibit C**.

8.     The term "First Document Deadline" shall mean October 7, 2019.

9.     The term "Final Document Deadline" shall mean December 23, 2019.

10.    The term "Unfiled Client(s)" shall refer to all individuals represented by Plaintiffs' Counsel or Plaintiffs' Law Firm as of June 20, 2019 who had or have unfiled claims or causes of action against Defendants related to Combat Arms Earplugs.

11.    The term "Future Unfiled Client(s)" shall refer to all individuals who enter into an attorney-client relationship with Plaintiffs' Counsel or Plaintiffs' Law Firm after June 20, 2019 who have unfiled claims or causes of action against Defendants related to Combat Arms Earplugs.

### Tolling

12.    The Defendants agree to the tolling of Limitations during the Tolling Period with respect to the Claim(s) held by Claimant(s), provided, however, that this Tolling Agreement shall not revive existing Claims, if any, that have expired under applicable Limitations prior to commencement of the Tolling Period. As an example, if any applicable Limitations were to have expired prior to the Effective Date of this Tolling Agreement, then the Defendants' right and ability to assert Limitations in defense of the Claims is fully preserved.

13.    In determining the effect of any tolling under this Tolling Agreement, only any applicable Tolling Period will be excluded when calculating Limitations; otherwise, Limitations will be treated as running continuously before and after any applicable Tolling Period, unless tolled by operation of law for reasons other than those set forth in this Tolling Agreement.

14.    Any dispute between the Parties arising out of, or as to the meaning or effect of, this Tolling Agreement shall be resolved exclusively by the *In re: 3M Combat Arms Earplug*

- 3 -

*Products Liability Litigation* MDL 2885 Court, which shall have personal jurisdiction over the Claimant.

### Initial Census Questions

15.     Each Claimant will complete and serve on Defendants through MDL Centrality answers to the Initial Census Questions by the Census Question Deadline.  Each Claimant's answers to the Initial Census Questions will be made under penalty of perjury, will be binding on the Claimant in any litigation against Defendants, will be treated as interrogatories pursuant to Federal Rules of Civil Procedure 33, and will be subject to Federal Rules of Civil Procedure 26 and 37.  The Census Question Deadline may be extended by: (i) the Court upon good cause shown; or (ii) agreement of the Parties.  To the extent a Claimant or Plaintiffs' Law Firm requests an extension of the Census Question Deadline for extenuating circumstances, Defendants will not unreasonably withhold their consent.  If a Claimant fails to complete and serve answers to the Initial Census Questions by the Census Question Deadline no tolling under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

16.     If a Claimant serves deficient answers to the Initial Census Questions, Defendants shall notify Plaintiffs' Counsel that Claimant's answers are deficient.[3]  Claimant will then have a sixty (60) day time period to serve non-deficient answers to Defendants (the "Cure Period").  If Claimant's answers to the Initial Census Questions contain any material deficiencies at the expiration of the Cure Period, no tolling under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

---

[3]     Whether an answer is deficient shall be determined under the standards and law that apply to interrogatories under Federal Rule of Civil Procedure 33.

17.     To the extent Defendants take the position that no tolling under this Tolling Agreement applies because of a material deficiency with Claimant's answers to the Initial Census Questions, the Parties will submit the issue to the Court to decide whether Claimant's answers to the Initial Census Questions were materially deficient.

### Initial Census Documents

18.     Each Plaintiff's Counsel shall provide Defendants through MDL Centrality with the Initial Census Documents for each Claimant that are in his or her possession, custody or control by the First Document Deadline.  If Claimant or Plaintiff's Counsel thereafter gains possession, custody or control of additional Initial Census Documents, Plaintiffs' Counsel will timely provide those documents to Defendants through MDL Centrality.

19.     To the extent any Initial Census Documents are in the possession of a third party, including the military or other government agency, Claimant agrees to request those documents from the third party within the following time periods: (i) for *Touhy* requests, within twenty one (21) days of the execution of this Tolling Agreement; and (ii) for all other requests, within sixty (60) days of the execution of this Tolling Agreement.

20.     Each Claimant will complete his or her production of the Initial Census Documents to Defendants through MDL Centrality by the Final Document Deadline.  The Final Document Deadline may be extended by: (i) the Court upon good cause shown; or (ii) agreement of the Parties.  To the extent the Claimant or Plaintiffs' Law Firm requests an extension of the Final Document Deadline for extenuating circumstances, Defendants will not unreasonably withhold their consent.

21.     If a Claimant fails to materially complete production of the Initial Census Documents by the Final Document Deadline, including any applicable extension(s), no tolling

under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

22.     To the extent Defendants take the position that no tolling under this Tolling Agreement applies because of a Claimant's failure to materially complete production of the Initial Census Documents by the Final Document Deadline, the Parties will submit the issue to the Court to decide whether Claimant's production of Initial Census Documents was materially deficient.

## Claims Filed Prior To Completion Of The Initial Census

23.     If any Claimant files any Claims prior to providing answers to the Initial Census Questions and production of Initial Census Documents, Claimant shall remain obligated to complete the Initial Census Questions and complete production of the Initial Census Documents within the time periods contained in this Tolling Agreement, or within forty-five (45) days of filing, whichever is later.  Failure to do so absent good cause shown shall be grounds for dismissal with prejudice.

## Venue For Filing Claims

24.     If any Claimant who is not a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction files a lawsuit concerning a Claim tolled under this Tolling Agreement, the Claimant shall file such lawsuit only in (i) the federal District where he or she is domiciled or was provided and/or used Combat Arms Earplugs, and will consent to the transfer of the lawsuit to MDL 2885, or (ii) directly in the Northern District of Florida.  Claimant agrees that when filing a lawsuit in federal court, he or she will not name any non-diverse person as a defendant.  If a Claimant resists transfer to MDL 2885 of a case filed in federal court, no tolling under this Tolling Agreement shall apply, and Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

25.     If any Claimant who is a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction files a lawsuit concerning a Claim tolled under this Tolling Agreement, the Claimant shall file such lawsuit only in (i) state court in Minnesota or Delaware; (ii) the federal District where he or she is domiciled or was provided and/or used Combat Arms Earplugs, and will consent to the transfer of the lawsuit to MDL 2885, or (iii) directly in the Northern District of Florida.  To the extent the Claimant files a lawsuit concerning a Claim tolled under this Tolling Agreement in state court, he or she (i) will not oppose removal of the lawsuit to federal court, (ii) will consent to transfer of the lawsuit to MDL 2885, and (iii) will not seek to remand the lawsuit to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to the Claims.  If a Claimant resists transfer to MDL 2885 of a case filed in or removed to federal court, or seeks to remand a case to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to the Claims, no tolling under this Tolling Agreement shall apply, and Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

26.     If Plaintiffs' Counsel or Plaintiffs' Law Firm files any lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs on behalf of a plaintiff who is not a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction, Plaintiffs' Counsel or Plaintiffs' Law Firm shall file such lawsuit only in: (i) a federal district where venue is appropriate, and will consent to the transfer of the lawsuit to MDL 2885, or (ii) directly in the Northern District of Florida.  Plaintiffs' Counsel and Plaintiffs' Law Firm agree that when filing such a lawsuit in federal court, he or she will not name any non-diverse person as a defendant.

27.     If Plaintiffs' Counsel or Plaintiffs' Law Firm files any lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs on behalf of a plaintiff who is a citizen

of either Minnesota or Delaware for purposes of federal diversity jurisdiction, Plaintiffs' Counsel or Plaintiffs' Law Firm shall file such lawsuit only in: (i) state court in Minnesota or Delaware; (ii) a federal district where venue is appropriate, and will consent to the transfer of the lawsuit to MDL 2885, or (iii) directly in the Northern District of Florida.  To the extent Plaintiffs' Counsel or Plaintiffs' Law Firm files a lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs in state court, he or she (i) will not oppose removal of the lawsuit to federal court, (ii) will consent to transfer of the lawsuit to MDL 2885, and (iii) will not seek to remand the lawsuit to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to such claims or causes of action.

### Filing Schedule After Notice Of Withdrawal

28.     In the event Defendants provide written notice of their withdrawal from this Tolling Agreement, in order to maintain any benefit of this Tolling Agreement, Plaintiffs' Counsel shall file Claims under the following schedule: one hundred (100) Complaints per day for the first thirty (30) days from Defendants' written notice of withdrawal, and the remainder of all filings within ninety (90) days from Defendants' written notice of withdrawal.  If a Court objects to this filing schedule, the parties shall meet and confer and coordinate with the clerk's office to establish a schedule for filing the complaints.

### Master Pleadings

29.     The Parties consent to the use of a "Master Complaint" and "Master Responsive Pleading" in MDL 2885.

30.     If any Claimant files a lawsuit concerning a Claim tolled under this Tolling Agreement, and such lawsuit is consolidated in MDL 2885, Claimant will adopt any "Master Complaint" in MDL 2885 through use of a separate "Short Form Complaint."

**Participation In Tolling Agreement**

31.     Plaintiffs' Counsel and Plaintiffs' Law Firm warrant and represent that the Claimants identified on Exhibit A include all or substantially all of their Unfiled Clients.

32.     Plaintiffs' Counsel and Plaintiffs' Law Firm agree to disclose Future Unfiled Clients to Defendants on each of the following dates: September 30, 2019; November 29, 2019; January 31, 2020; March 31, 2020; May 29, 2020; July 31, 2020; September 30, 2020; November 30, 2020; January 29, 2021; March 31, 2021; and May 31, 2021 (each, a "Disclosure Date"). Each Future Unfiled Client included in such disclosures shall be referred to herein as a "Future Claimant."

33.     Plaintiffs' Counsel and Plaintiffs' Law Firm warrant and represent that each Future Claimant shall enter into and be bound by the terms of this Tolling Agreement as of the Disclosure Date on which they are disclosed to Defendants, provided, however, that (i) the "Census Question Deadline" for a Future Claimant will be ninety (90) days from the Disclosure Date on which they are disclosed to Defendants, (ii) the "First Document Deadline" for a Future Claimant will be forty-five (45) days from the Disclosure Date on which they are disclosed to Defendants, and (iii) the "Final Document Deadline" for a Future Claimant will be one hundred and twenty (120) days from the Disclosure Date on which they are disclosed to Defendants.

34.     Plaintiffs' Counsel's and Plaintiffs' Law Firm's participation and submission of Claimants under this Tolling Agreement constitutes participation in and reliance on valuable work product in the litigation of court proceedings involving claims of 3M Combat Arms Earplug-related injuries (the "Common Benefit Work Product") and establishes an amicable, working relationship with the PEC for the mutual benefit of their clients, as well as an intention to be legally bound by a Participation Agreement to contribute and share in Common Benefit Work Product pursuant to the Common Benefit Order(s) entered by the Court in MDL 2885.

**Other Provisions**

35.     In the event Defendants identify a duplicate Claimant pursuant to the information provided under this Tolling Agreement, Defendants shall reasonably notify Plaintiffs' Counsel.

36.     This Tolling Agreement shall not be construed as an admission or indication that the Defendants agree that any Claimant has meritorious claims against the Defendants.

37.     This Tolling Agreement shall not be construed as an admission or indication that Claimants claims are subject to any Statute of Limitations arguments.

38.     This Tolling Agreement cannot be modified except by a writing signed by the Parties or their attorneys.

39.     The Parties hereto agree that the existence and terms of this Tolling Agreement shall be deemed confidential and shall not be disclosed to anyone except as otherwise provided or required by law. This paragraph shall not be construed to prevent Claimants from disclosing this Tolling Agreement to overcome a defense based upon Limitations, or to co-counsel and their clients.

40.     If any term, provision, condition or covenant of this Tolling Agreement or the application thereof to any party or circumstance is held to be illegal, invalid or unenforceable under any present or future law: (i) such provision will be fully severable; (ii) this Tolling Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; and (iii) the remaining provisions of this Tolling Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

41.     Claimants are represented by counsel of their choice.  By executing this Tolling Agreement, Plaintiffs' Counsel represents that he or she has entered into a written retention

agreement with the Claimant(s).  Plaintiffs' Counsel warrants and represents that he or she has the authority of the Claimant(s) to enter into this Tolling Agreement.

42.    This Agreement may be signed in counterpart.


Plaintiffs' Counsel:                             For Defendants: Mark Nomellini

_____         _____

Dated: _____         Dated: _August 26, 2019_


For Plaintiffs' Law Firm:

_____

Dated: _____

## EXHIBIT A

**Claimant Information**

| Claimant full name: | Claimant SSN: | Claimant DOB: |
|---|---|---|
| Claimant home address: | Claimant mailing address: | |

## EXHIBIT B

### Initial Census Questions

1.  Information

    a.   Claimant Name: _____

    b.   Law Firm: _____

    c.   Male ☐   Female ☐

    d.   Date of birth: _____

    e.   Current state of residence: _____

    f.   Number of years in current state of residence: _____

2.  Did the claimant serve in the military and/or armed forces?

    Yes ☐       No ☐

    If yes:

    a.   Identify each branch the claimant served in, and the dates of service in each branch:

| Branch | Start Date | End Date |
|---|---|---|
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |

    b.   Identify each of the claimant's duty stations between 2000 and present:

| Duty Station | Start Date | End Date |
|---|---|---|
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |

| Duty Station | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

c.   Identify each of the claimant's military occupational specialties between 2000 and present:

| Military Occupation Specialty | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

| Military Occupation Specialty | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

3.   Is the claimant currently on active military duty?

         Yes ☐      No ☐

4.   Did the claimant use the Combat Arms Earplugs version 2 ("CAEv2") when he or she served in the military and/or armed forces?

         Yes ☐      No ☐

If yes,

    a.   State whether the claimant used CAEv2 in training, combat, or both:

         Training ☐   Combat ☐   Both ☐

- 15 -

b.    Identify the year(s), duty station(s), and military occupational specialties in which the claimant used the CAEv2 earplugs:

| Year(s) | Duty Station | Military Occupational Specialty |
|---------|--------------|--------------------------------|
|         |              |                                |
|         |              |                                |
|         |              |                                |
|         |              |                                |
|         |              |                                |
|         |              |                                |
|         |              |                                |
|         |              |                                |

5.    Did the claimant use CAEv2 earplugs as a civilian any time?

        Yes ☐        No ☐

6.    Identify the physical injuries claimant sustained as a result of using CAEv2 earplugs:

☐ Total Hearing Loss, Left Ear

☐ Total Hearing Loss, Right Ear

☐ Partial Hearing Loss, Left Ear          Percentage/grade of hearing loss, if known:

☐ Partial Hearing Loss, Right Ear         _____

☐ Tinnitus, Left Ear                      Percentage/grade of hearing loss, if known:

☐ Tinnitus, Right Ear                     _____

☐ Tinnitus - Extent Unknown

☐ Other—Specify: _____

- 16 -

7.  Identify the approximate year on which the claimant first noticed:

    a.  that the CAEv2 was not providing adequate protection from loud noises;

    b.  the injury described in response to Question No. 6 above.

| Injury described in response to Question No. 6 | Approx. year first noticed injury |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

8.  Has the hearing loss identified in response to Question No. 6 above been identified during an audiogram or other hearing test?

    If yes, what was the approximate date of the first audiograms or other hearing tests that identified the injuries described in response to Question No. 6 above?

| Injury identified | Approx. Date of the first hearing tests |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

9.   Has the claimant received disability benefits as a result of hearing loss, tinnitus or other hearing injury?

    Yes ☐      No ☐

    If yes, identify the agency or entity that provided the claimant with disability benefits:

### Declaration

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that all the information provided in response to these Initial Census Questions is true and correct to the best of my knowledge, information and belief formed after a reasonable inquiry. I understand that I am under an obligation to supplement these responses.

Date:            _____

Signature:       _____

Name:            _____

## EXHIBIT C

### Initial Census Document Requests

1.  Form DD214 and the ORB, ERB and/or NORB relating to the claimant's service in the military.

2.  DD2215 and DD2216s audiological exams relating to the claimant's service in the military.

3.  Any audiograms or other hearing tests performed on claimant outside of the military.

4.  Records relating to any disability benefits claimant applied for and/or received as a result of hearing loss, tinnitus or other hearing injury.  Such records would include, where available:

    a.  VBA Worksheet 1305 (Audio)

    b.  VA Form 21-4138 – Statement in Support of Claim

    c.  VA 21-8940 (Application for Increased Compensation Based on Unemployability)

    d.  21-4192 (Request for Employment Information in Connection with Claim for DB)

    e.  VA Form 21-256 EZ – Application for disability benefits

    f.  VA form 10-2364 and 10-2354a – VA audiological examinations (audiograms)

    g.  Rating Decision

- 19 -

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |
| *Lonnie Eugene Burgus*,<br>Case No. 7:20-CV-7-MCR-GRJ | |

**PLAINTIFF LONNIE EUGENE BURGUS OBJECTIONS & ANSWERS
TO DEFENDANT 3M'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

TO:  Defendant 3M Company ("3M"), and through its Attorneys of Record: Kimberly O. Branscome, Kirkland & Ellis LLP, 2049 Century Park East, Los Angeles, CA 90067; Mark Nomellini, Kirkland & Ellis LLP, 300 North LaSalle Chicago, IL 60654; and Mike Brock, Kirkland & Ellis LLP, 300 North LaSalle Chicago, IL 60654.

COMES NOW, Plaintiff, Lonnie Eugene Burgus, through the undersigned attorney, and in accordance with the Federal Rules of Civil Procedure, submits the following Plaintiff's Objections & Answers to Defendant 3M's First Set of Interrogatories to Plaintiff. As discovery in this matter is ongoing, Plaintiff reserves the right to amend, supplement, modify, or change his responses.

Dated:  April 10, 2020

**Respectfully Submitted,**

BY:   */s/ Bryan F. Aylstock*
Bryan F. Aylstock, FL Bar No. 78263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
baylstock@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

1

## GENERAL OBJECTIONS

Plaintiff objects to Defendants' First Set of Interrogatories insofar as they exceed the permissible number of Interrogatories in this case per Federal Rule of Civil Procedure 33, and any agreements between the parties.

Plaintiff objects generally to Defendant's First Set of Interrogatories insofar as they may be construed as calling for information subject to a claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine, or the investigative privilege. The inadvertent disclosure of any privileged information shall not constitute or be deemed to be a waiver of any applicable, cognizable legal privilege with respect to such document, materials, or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. In the event Defendants receive documents or information that they believe to have been inadvertently produced and/or is otherwise privileged, such documentation should be immediately snapped back to the producing party within 14 days. Plaintiff reserves the right not to disclose any information that is or may be considered privileged and protected from discovery.

Plaintiff objects to Defendant's First Set of Interrogatories insofar as they purport to require Plaintiff to furnish information regarding privileged documents and communications beyond such information as may be required by the Court in determining the privileged status of the documents.

Plaintiff objects to Defendant's First Set of Interrogatories to the extent that they imply that Plaintiff concedes the relevance and materiality of the information sought by Defendants. The answers set forth below are subject to and are not intended to waive any of the following, which Plaintiff reserve:

      a.    All questions or objections as to competency, relevancy, materiality, privilege, or admissibility as evidence, or for any other purpose, of any of the information referred to or responses given herein, in any subsequent proceeding or trial in this action or any other action;

      b.    Plaintiff's right to object to other discovery proceedings involving or related to the subject matter of the requests; and

      c.    Plaintiff's right at any time to revise, correct, add to, or clarify any of their responses, all of which are given subject to correction of any such omissions or errors.

Plaintiff objects to each Interrogatory to the extent that such Interrogatory requests or calls for information: (1) not in Plaintiff's personal knowledge and/or possession, custody, and/or control; (2) already in Defendant's possession or previously made available and/or submitted to Defendants; (3) already contained in and/or previously submitted to Defendants via other means, including information contained in and submitted via the Plaintiff's Census Questionnaire or Bellwether Selection Sheet; or (4) which are not relevant to the subject matter of this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects to each interrogatory that seeks disclosure of information that is confidential, privileged, proprietary, or subject to a confidentiality agreement with third parties.

Plaintiff objects to Defendant's First Set of Interrogatories to the extent that any interrogatory presupposes that information within Plaintiff's personal knowledge is or was contained or commemorated in a written document or record, many of the matters inquired into may not normally be contained in documents or records, and as such, as far as Plaintiff is aware no documents exist, and Plaintiff objects to the extent any interrogatory requires Plaintiff to identify any document not presently known to Plaintiff or in existence, outside of Plaintiff's personal knowledge, and/or not within Plaintiff's possession, custody, or control.

Plaintiff objects to Defendant's definition of "identify" to the extent that the same is burdensome and overly broad.

Plaintiff objects to all definitions and instructions within Defendant's First Set of Interrogatories to the extent the same are overbroad, unduly burdensome, vague, ambiguous and unclear, and further that they lack specificity and/or require application of definitions or terminology not reasonably utilized or understood by Plaintiff; and to the extent that the same are onerous, unreasonable, and seek information outside the permissible scope of discovery or not otherwise within Plaintiff's personal knowledge or otherwise within Plaintiff's possession, custody, or control.

Plaintiff submits these answers and objections without conceding the relevancy or materiality of the subject matter of any interrogatory, information given, and/or document, or that any responsive documents, materials, or information exist. Plaintiff reserves the right to contest any such characterization as inaccurate.

Plaintiff also objects to Defendant's First Set of Interrogatories to the extent they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation. These answers and objections are made on the basis of information now known to Plaintiff and are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. Plaintiff's investigation, discovery, and preparation for proceedings are continuing and all answers are given without prejudice to Plaintiff's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Plaintiff likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of the information contained in these answers and objections; and (2) discovery requests relating to these objections and answers/responses.

All of Plaintiff's answers below are subject to each of these general objections. Plaintiff reserves the right to amend and/or supplement any answers given herein. Specifically, Plaintiff reserves the right to amend and/or supplement these answers upon receipt of any records requested and/or released from the Department of Veterans' Affairs and/or the Department of Defense and/or otherwise received by counsel and reviewed by Plaintiff.

## PLAINTIFF'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

## INTERROGATORY NO. 1:

Identify All Persons who have knowledge of or information concerning the Allegations in the Master Long Form Complaint, and State All facts about which they have knowledge or information.

## ANSWER:

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, and disproportional to the needs of the case. As written, this Interrogatory seeks information regarding "All Persons" who have "knowledge of or information concerning the Allegation in the Master Long Form Complaint," which would unnecessarily burden Plaintiff by requiring Plaintiff to provide the identities of, for example, all Defendant ESI custodians, all deponents, all third-party subpoena recipients, and other information equally available to both Parties. As written, this Interrogatory also seeks "All facts" about each individual's undefined knowledge, which, would require Plaintiff to provide significant information outside of his personal knowledge. Plaintiff objects to this interrogatory to the extent that it seeks to invade the protections afforded under the attorney-client privilege, consulting expert privilege and/or the attorney work product doctrine, pursuant to Fed. R. Civ. P. 26(b)(5).

## INTERROGATORY NO. 2:

Identify All Persons who have knowledge of or information concerning the Allegations in Your Master Short Form Complaint, including Any amendments thereto, and State All facts about which they have knowledge or information.

## ANSWER:

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, and disproportional to the needs of the case. As written, this Interrogatory seeks information regarding "All Persons" who have "knowledge of or information concerning the Allegation in the Master Short Form Complaint," which would unnecessarily burden Plaintiff by requiring Plaintiff to provide the identities of, for example, all Defendant ESI custodians, all deponents, all third-party subpoena recipients, and other information equally available to both Parties. As written, this Interrogatory also seeks "All facts" about each individual's undefined knowledge, which, would require Plaintiff to provide significant information outside of his personal knowledge. Plaintiff objects to this interrogatory to the extent that it seeks to invade the protections afforded under the attorney-client privilege, consulting expert privilege and/or the attorney work product doctrine, pursuant to Fed. R. Civ. P. 26(b)(5). Plaintiff answers as follows:

Plaintiff's Name:        Lonnie Eugene Burgus

c/o Bryan Aylstock
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
baylstock@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

## INTERROGATORY NO. 3:

Identify All Persons who have knowledge of or information concerning the statements that You made in the Initial Census Questions, including Any amendments thereto, and State All facts about which they have knowledge or information.

## ANSWER:

Plaintiff objects to this interrogatory on the ground that its overbroad, irrelevant, unduly burdensome, vague, ambiguous, and disproportional to the needs of the case. As written, this Interrogatory seeks information regarding "All Persons" who have "knowledge of or information concerning the statements that You made in the Initial Census Questions," which is vague would unnecessarily burden Plaintiff by requiring Plaintiff to provide the identities of, for example, all Defendant ESI custodians, all deponents, all third-party subpoena recipients, and other information equally available to both Parties or outside of Plaintiff's personal knowledge. As written, this Interrogatory also seeks "All facts" about each individual's undefined knowledge, which, would require Plaintiff to provide significant information outside of his personal knowledge. Plaintiff objects to this interrogatory to the extent that it seeks to invade the protections afforded under the attorney-client privilege, consulting expert privilege and/or the attorney work product doctrine, pursuant to Fed. R. Civ. P. 26(b)(5). Plaintiff answers as follows:

Plaintiff's Name:     Lonnie Eugene Burgus
c/o Bryan Aylstock
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
baylstock@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

**INTERROGATORY NO. 4:**

Identify All Persons who have knowledge of or information concerning the statements that You made in the Bellwether Selection Sheet, including Any amendments thereto, and State All facts about which they have knowledge or information.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, irrelevant, unduly burdensome, vague, ambiguous, and disproportional to the needs of the case. As written, this Interrogatory seeks information regarding "All Persons" who have "knowledge of or information concerning the statements that You made in the Bellwether Selection Sheet," which would unnecessarily burden Plaintiff by requiring Plaintiff to provide the identities of, for example, all Defendant ESI custodians, all deponents, all third-party subpoena recipients, and other information equally available to both Parties. As written, this Interrogatory also seeks identification of every individual with whom Plaintiff served in the Armed Forces at any time, which is not only unreasonably burdensome but also seeks information beyond Plaintiff's personal knowledge. As written, this Interrogatory also seeks "All facts" about each individual's undefined knowledge, which, would require Plaintiff to provide significant information outside of his personal knowledge. Plaintiff objects to this interrogatory to the extent that it seeks to invade the protections afforded under the attorney-client privilege, consulting expert privilege and/or the attorney work product doctrine, pursuant to Fed. R. Civ. P. 26(b)(5). Subject to and without waiving the foregoing objections, Plaintiff answers as follows:

Plaintiff's Name:    Lonnie Eugene Burgus
c/o Bryan Aylstock
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
baylstock@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

**INTERROGATORY NO. 5:**

Identify All Persons who served with You in the military that were present when You fired weapons in training or combat.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, irrelevant, unduly burdensome, vague, ambiguous, unclear, and disproportionate to the needs of the case. As written,

this Interrogatory seeks information regarding "All Persons who served with You in the military that were present when You fired weapons in training or combat," which would require Plaintiff to identify dozens (if not hundreds) of persons who have no substantive knowledge of or involvement in the issues in this litigation. Plaintiff objects on the ground that this interrogatory lacks specificity, and fails to contain any limits as to time or scope.

### INTERROGATORY NO. 6:

Identify All Persons who have knowledge of whether or not You wore a Hearing Protection Device when exposed to loud noises in the military, including loud noises from weapons fire and transport vehicles.

### ANSWER:

Plaintiff objects to this interrogatory on the ground that its overbroad, irrelevant, unduly burdensome, vague, ambiguous, unclear, and disproportionate to the needs of the case. As written, it seeks information regarding "All Persons who have knowledge of whether or not Your wore a Hearing Protection Device when exposed to loud noises in the military," which would require Plaintiff to identify dozens (if not hundreds) of persons who have no substantive knowledge of or involvement in the issues in this litigation. As written, this Interrogatory also seeks significant information beyond his personal knowledge: specifically, Plaintiff has no personal knowledge as to what knowledge or information any person other than himself/herself, possesses. Plaintiff objects on the ground that this interrogatory lacks specificity, fails to contain any limits as to time or scope, and to the extent that "loud noises" is vague, ambiguous, and unclear, and as Plaintiff is not a doctor or an audiologist, and does not otherwise possess the skills, knowledge, education, experience, or training to make determinations regarding the volume or pressure of sound or otherwise. *See* Fed. R. Civ. P. 26(b)(1). Additionally, Plaintiff objects to the extent this interrogatory presupposes that all "weapons fire" and "transport vehicles" create or cause "loud noise."

### INTERROGATORY NO. 7:

Identify All Persons who were present when You fired any weapon recreationally, including hunting or target shooting.

### ANSWER:

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, and disproportionate. As written, it asks Plaintiff to "Identify All Persons who were present when You fired any weapon recreationally," which would require Plaintiff to identify dozens (if not hundreds) of persons who have no substantive knowledge of or involvement in the issues in this litigation, and would require Plaintiff to provide information beyond his personal

7

knowledge. Plaintiff further objects on the ground that this interrogatory lacks specificity, and fails to contain any limits as to time or scope. Plaintiff further objects to this request on the ground that it improperly presumes that Plaintiff fired any weapon recreationally. Plaintiff objects to this interrogatory because it seeks information that is not relevant, including seeking information unrelated to the product at issue and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition.

**INTERROGATORY NO. 8:**

Identify All Persons with whom You have discussed your hearing loss or tinnitus, and, for Each, State whether the discussion was verbal or written and the date(s) the discussion took place.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, and disproportionate to the needs of the case. As written, this Interrogatory would require Plaintiff to "Identify All Persons with whom You have discussed your hearing loss or tinnitus" which would require Plaintiff to potentially identify dozens of persons who have no substantive knowledge of or involvement in the issues in this litigation. Plaintiff objects on the ground that this interrogatory lacks specificity, and fails to contain any limits as to time or scope. Plaintiff objects to this interrogatory to the extent it seeks information irrelevant to the claims and defenses in this matter, including the medium in which Plaintiff communicated about Plaintiff's injury. Plaintiff objects to this interrogatory to the extent that it seeks information by the applicable attorney-client and attorney work product privileges. Fed. R. Civ. P. 26(b)(5).

**INTERROGATORY NO. 9:**

Identify All health care professionals, physicians, audiologists, military or occupational nurse or other hygienist, treating facilities, clinics, therapists, and/or other medical facilities or providers that have examined Your ears and/or hearing, including the date of the examination, Any diagnoses made regarding Your hearing or ears, and Any recommendations made regarding Your hearing or ears.

**ANSWER:**

Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome and vague in that it fails to define "examine," "examination," "diagnoses made," and "recommendations made" and that it fails to contain limitations as to time or scope. Plaintiff objects to this discovery request as unreasonably cumulative or duplicative to information sought within the Census Form and/or Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is

8

equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff. Plaintiff objects to this interrogatory on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 10:**

Identify All health care professionals, physicians, audiologists, military or occupational nurses or other hygienists, treating facilities, clinics, therapists, and/or other medical facilities or providers that have diagnosed You with the injury or condition that You Allege was caused by Your use of the CAEv2, the injury or condition that Each Person diagnosed You with and the date of the diagnosis.

**ANSWER:**

Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks. Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome and vague in that it fails to define "injury" and "condition." Plaintiff objects to this discovery request as unreasonably cumulative or duplicative to the information sought in the Census Form, Bellwether Information Sheet, and as otherwise determinable through the medical records that have been or will be produced where the information is equally accessible to both parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 11:**

Identify All audiograms, tympanograms, speech reception tests or Any other hearing- related test results, medical records, hearing aid referrals or prescriptions, or other Documents that identify the injuries that You Allege were caused by the CAEv2, including the date(s) of those audiograms, tympanograms, speech reception tests or Any other hearing-related test results, medical records, hearing aid referrals or prescriptions, and/or other Documents, the entity that generated those records, and the injury Identified in those records.

**ANSWER:**

Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks. Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome and vague in that it seeks information regarding "any other hearing-related test results, medical records…prescriptions [and] other documents." Plaintiff objects to this discovery request as unreasonably cumulative or duplicative to the information sought through the Census Sheet and/or Bellwether Information Sheet and/or e.g. Interrogatory No. 9. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff.

**INTERROGATORY NO. 12:**

If You received hearing tests, including but not limited to audiograms, tympanograms, speech reception tests or Any other hearing test, while You served in the military, State the date(s) of the hearing test(s) and whether or not Any hearing loss or other hearing disorder was identified.

**ANSWER:**

Plaintiff objects to this discovery request as unreasonably cumulative or duplicative of the information sought by Defendants in the Census Form, Bellwether Information Sheet, and Interrogatory No. 11., in that the information can be obtained from another source that is more convenient and less burdensome, namely from medical and/or service records which are or will be equally accessible to the Defendants through the authorization(s) provided by Plaintiff. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks.

**INTERROGATORY NO. 13:**

Describe in detail the injuries or conditions that You Allege were caused by Your use of the CAEv2, including but not limited to how the injuries or conditions affect Your ability to communicate and understand conversations or to detect, identify, localize and/or otherwise hear and attend to auditory signals, acoustic alarms and/or other relevant sounds in your environment.

**ANSWER:**

10

Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks. Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome and vague in that it fails to define "injury," or "condition," and further fails define or explain "detect, identify, localize" and "attend to auditory signals, acoustic alarms and/or other relevant sounds in your environment." Plaintiff objects to this discovery request as unreasonably cumulative or duplicative to the information sought through the Census Sheet and/or Bellwether Information Sheet and/or e.g. Interrogatory No. 9. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties  have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff.

**INTERROGATORY NO. 14:**

Identify All hearing assistive devices, ear drops, or any other devices, medications or therapies that have been prescribed by or recommended to You by a medical provider, including the date that You were prescribed, the name of the medical provider who prescribed such devices, and Any diagnoses made regarding Your hearing or ears in prescribing such devices.

**ANSWER:**

Plaintiff objects to this interrogatory in that it is overbroad, unduly burdensome, and vague, in part as it fails to define or explain "ear drops, or any other devices, medications or therapies," and further in that it fails to contain reasonable limitations as to time or scope. Plaintiff objects to this interrogatory because it seeks information that is not relevant and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 15:**

If You have Any pain in Your ears, Describe in detail the pain that You experience, the frequency with which You experience the pain, the date on which the pain began, and the date on which You last experienced the pain.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, misleading, and disproportionate to the needs of the case to the extent it fails to define "pain," and seeks information regarding "Any pain in Your ears," with no limitations as to time, scope, cause, types, or otherwise. As written, this Interrogatory would require Plaintiff to describe anything he subjectively views as pain in his ears for the entirety of his life exceeding a 30 year time span. Plaintiff objects to this interrogatory because it seeks information that is not relevant and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition.

**INTERROGATORY NO. 16:**

If You have a sensation of fullness or pressure in one or both of Your ears, Identify the ear(s) in which You have a sensation of fullness or pressure, the date on which the sensation began, the frequency with which You experience such sensation, and the date on which You last experienced such sensation.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, misleading, and disproportionate to the needs of the case to the extent it fails to define "a sensation of fullness or pressure in…Your ears," and otherwise seeks information with no limitations as to time, scope, cause, types, or otherwise. Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 17:**

If You have Any noises, sounds, buzzing, whooshing, or ringing in Your ear(s), Describe the noises, sounds, buzzing, whooshing, or ringing, including the date on which the sound began, the frequency with which You hear the sound, whether the sound fluctuates or stays constant, whether the sound bothers You, whether the sound keeps You awake when trying to sleep, the date on which you last experienced such sound, and whether the sound is getting worse or remaining approximately the same.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, misleading, and disproportionate to the needs of the case. Plaintiff object to this Interrogatory to the extent it contains no limitations as to time, scope, or otherwise. As written, this Interrogatory asks Plaintiff to describe "any noises, sounds, buzzing, whooshing, or ringing in your ears…," which would include every sound or noise that Plaintiff hears, and therefore is overbroad, vague, and unclear. Plaintiff objects to this interrogatory because it seeks information that is not relevant and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff.

**INTERROGATORY NO. 18:**

If fluid drains from Your ears, Identify the ear(s) from which the fluid drains, the date on which You first noticed fluid draining, the frequency of such drainage, the date on which you last experienced such drainage, the color of the fluid, and whether the fluid has an odor.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "fluid" that "drains from Your ears," with no limitations as to time, scope, cause, types, or otherwise. Plaintiff objects to this Interrogatory as vague, ambiguous, unclear, and misleading to the extent it fails to define "fluid" and "drains." Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks. Plaintiff objects to this interrogatory because it seeks information that is not relevant and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff.

**INTERROGATORY NO. 19:**

If You have had ear surgery, Describe the surgery, including the date of the surgery and the doctor who performed the surgery.

13

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, and unclear to the extent that it fails to define "surgery" or contain any limitations as to time or scope. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert or legal conclusions that this interrogatory seeks.

**INTERROGATORY NO. 20:**

Describe Any prescription medications You take or have taken to date, including the name of the medication, frequency and duration of taking each medication.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, unclear, and sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation. As written, this request seeks "Any prescription medications You take or have taken to date," which would encompass all medications, not dependent on the type or reasoning prescribed, spanning the duration of Plaintiff's life. Plaintiff objects as this interrogatory fails to contain any limitations as to time or scope. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical authorization provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 21:**

Identify Any pharmacies at which you have filled prescription medications.

**ANSWER:**

14

Plaintiff objects to this interrogatory on the ground that its irrelevant, overbroad, unduly burdensome, and sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation. Specifically, Plaintiff objects as this request fails to contain any limitations as to time or scope. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 22:**

If You have ever been diagnosed with Any medical condition or disease, Identify the condition or disease, the date of diagnosis, the diagnosing doctor, Any treatment prescribed, whether You were hospitalized, the date of hospitalization, if any, and whether You received IV antibiotics.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, irrelevant, unduly burdensome, vague, ambiguous, unclear, misleading, and disproportionate to the needs of the case to the extent it fails to define "medical condition or disease," and further to the extent it seeks information regarding "Any medical condition or disease" that Plaintiff was ever diagnosed with, and contains no limitations as to time, scope, cause, types, or otherwise. Plaintiff objects to this interrogatory to the extent that Plaintiff is not an expert and is not qualified with the requisite skill, knowledge, education, experience, or training to render the expert conclusions that this interrogatory seeks. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 23:**

Describe All injuries, including head injuries, that You sustained during Your Military service, including the date that You sustained the injuries and the circumstances surrounding those injuries.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome,

irrelevant, and disproportionate to the needs of the case, to the extent it seeks information about conditions unrelated to Plaintiff's injuries herein and events unrelated to Plaintiff's use of the CAEv2. Plaintiff objects that this interrogatory is vague, ambiguous, unclear, and misleading, to the extent it fails to define "injuries" and "circumstances surrounding those injuries," and further, it contains no limitations as to time, scope, causes or types of injuries, or otherwise. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 24:**

State the size of Your ear canal and All factual bases for such Statement, including but not limited to any ear canal sizing or earplug sizing performed and communicated to you by a provider such as an audiologist.

**ANSWER:**

Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, vague, ambiguous, unclear, and misleading, in that it does not define "size" or "ear canal," or provide a scale for the requested ear canal size (*e.g.*, small-large; a numerical scale; or some alternative). Plaintiff objects on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to render the expert and/or legal conclusions sought by this interrogatory needed to provide an opinion or conclusion on the "size of [Plaintiff's] ear canal." Plaintiff objects to this interrogatory because it seeks information that is not relevant and/or is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff.

**INTERROGATORY NO. 25:**

Identify Any awards, medals, honors, or commendations that You have received in connection with Your military service, including the dates You received those awards.

**ANSWER:**

16

Plaintiff objects to this interrogatory to the extent that the information sought is most easily acquired by a review of the service records which are equally accessible to the Defendant.

**INTERROGATORY NO. 26:**

If You were ever deployed in combat, please Identify the location, dates of deployment, Your primary duties while deployed, and whether you experienced live fire at or from the enemy in combat.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in that it fails to define the facially overbroad and ambiguous terms "primary duties" and "combat" and "live fire." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to the extent this Interrogatory seeks information beyond his personal knowledge to the extent it requires Plaintiff to determine whether any given encounter constituted "live fire at or from the enemy in combat" and the identity of any other combatants or sources of fire. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects that the information sought is cumulative or duplicative of information sought in the Census Form and/or Bellwether Selection Form, and/or that may otherwise be contained within the service records produced. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff.

**INTERROGATORY NO. 27:**

Describe how You first acquired the CAEv2, including who first issued You the CAEv2 and the date on which they issued You the CAEv2.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear regarding "*how* [Plaintiff] first acquired the CAEv2." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant and immaterial. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff

to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorizations provided by Plaintiff.

**INTERROGATORY NO. 28:**

If you were fitted with the CAEv2 by another person, describe the process by which you were fitted, including the person(s) who fitted you with the CAEv2, the date(s) and location(s) you were fitted, how you were fitted, and whether or not the person fitting you with the CAEv2 rolled back any of the flanges on the opposite end of the CAEv2 during the fitting process.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in that it does not define the terms "fitted" or "fitting process" or "rolled back" or "location(s) you were fitted" or "flange" or "opposite end." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects on the ground that this interrogatory, as phrased, "If you were fitted….by another person, describe the process by which you were fitted" inherently seeks information outside of Plaintiff's personal knowledge. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information sought in the Census Form and/or Bellwether Form and/or otherwise within these Interrogatories. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 29:**

If You acquired more than one pair of the CAEv2, Describe how You acquired subsequent CAEv2s, including who issued You the subsequent CAEv2s and the date on which they issued You the CAEv2.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant or immaterial. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 30:**

Describe Each instance in which You wore the CAEv2, including the dates in which You wore the CAEv2, the circumstances in which You wore the CAEv2, and the types of noises that You were exposed to while using the CAEv2.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative in that it seeks information otherwise sought within Plaintiff's Census Form and/or Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous, burdensome, and unclear in that it fails to define "circumstances" or "types of noises" or "exposed to," and in that it fails to contain any reasonable limitations as to time and scope. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects on the ground that the information sought within this interrogatory may be better obtained through other means or manners of discovery such as a deposition. Fed. R. Civ. P. 26(b)(2)(C)(i).

**INTERROGATORY NO. 31:**

Describe the specific circumstances or situations in which You wore the green end of the CAEv2, and your understanding of the specific circumstances in which You were supposed to wear the green end of the CAEv2.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in that, because the CAEv2 is both yellow and green, a user always wears both ends if they are wearing these plugs. Assuming that Defendants seek to distinguish between the scenarios in which Plaintiff inserted the green end into his ear with the yellow end out, and scenarios in which Plaintiff inserted the yellow end into his ear with the green end out, Defendants' question remains incomprehensibly vague. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of information similarly sought through the Census Form and/or Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought within this interrogatory may be better obtained through other means or manners of discovery such as a deposition. Fed. R. Civ. P. 26(b)(2)(C)(i).

**INTERROGATORY NO. 32:**

Describe the specific circumstances or situations in which You wore the yellow end of the CAEv2 and your understanding of the specific circumstances in which You were supposed to wear the yellow end of the CAEv2.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in that, because the CAEv2 is both yellow and green, a user wears both ends.  Assuming that Defendants seek to distinguish between the scenarios in which Plaintiff inserted the green end into his ear with the yellow end out, and scenarios in which Plaintiff inserted the yellow end into his ear with the green end out, Defendants' question remains incomprehensibly vague. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of information similarly sought through the Census Form and/or Bellwether Information Sheet and/or Interrogatories otherwise including Interrogatory No. 32. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought within this interrogatory may be better obtained through other means or manners of discovery such as a deposition. Fed. R. Civ. P. 26(b)(2)(C)(i).

**INTERROGATORY NO. 33:**

Describe Each instance in which You have worn a Hearing Protection Device other than the CAEv2, including the name of the Hearing Protection Device, the years in which You wore the Hearing Protection, the circumstances in which You wore the Hearing Protection Device, and the types of noises that You were exposed to while using the Hearing Protection Device.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, including in that it seeks information on "types of noises" without defining or describing any such types. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this Interrogatory to the extent it seeks information beyond his personal knowledge, including "the types of noises that You were exposed to while using the Hearing Protection Device,"  which would require the identification of sounds that Plaintiff could not hear because of his use of a Hearing Protection Device. Plaintiff objects on the ground that Plaintiff is not a doctor or an audiologist, and does not otherwise possess

the skills, knowledge, education, experience, or training to make determinations regarding "types of noises," sound or otherwise. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information sought within the Census Form, Bellwether Information Sheet, and Interrogatories including Nos. 3, 6, and 14. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought within this interrogatory may be better obtained through other means or manners of discovery. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 34:**

Describe in detail any complaints you made regarding the CAEv2 while in the Military, including the date of the complaint(s), the person(s) to whom you made the complaint, and the substance of the complaint.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in part due to its failure to define the term "complaint." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 35:**

Describe All of the loud noises that You were exposed to while in the Military, including but not limited to Any loud noise created by weapons, generators, vehicles, planes, helicopters, heavy machinery, air compressors, and/or explosions.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous, burdensome, and unclear in that it fails to contain reasonable limitations as to scope, and fails to define "loud noises," or "exposed to" or "weapons" or "heavy machinery," which are vague and subjective. Plaintiff objects that Plaintiff is not a doctor or an audiologist, and does not otherwise possess the skills, knowledge, education, experience, or training to make determinations regarding the volume or pressure of sound or otherwise. *See* Fed. R. Civ. P. 26(b)(1). Additionally, Plaintiff objects to the extent this interrogatory pre-supposes that any or all "weapons, generators, vehicles, planes, helicopters, heavy machinery, air compressors, and/or explosions" create or cause "loud noises," which is not accurate – for example, a knife is a "weapon" and it does not cause or create

"loud noises." Plaintiff objects on the ground that this interrogatory improperly attempts to conflate exposure to "loud noises" with potential hearing loss. Plaintiff objects to this Interrogatory to the extent it seeks information beyond his personal knowledge, including "loud noises that You were exposed to," which would require the identification of sounds that Plaintiff could not fully or clearly hear because of his use of a Hearing Protection Device. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative to the information sought within the Census Form, Bellwether Information Sheet, and otherwise within these Interrogatories including Nos. 6, 36, 37, 38, and 63. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 36:**

Describe All of the weapons You operated while in the military, and for each, describe the Hearing Protection Device You wore while operating the weapon, if any.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is irrelevant, overbroad, vague, ambiguous and unclear, in part as it fails to contain any reasonable limitations as to time or scope, and further fails to define "weapons" or "operated." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to the extent this interrogatory pre-supposes that any or all "weapons" create or cause loud noises or otherwise necessitate use of a "Hearing Protective Device," which is not accurate – for example, a knife is a "weapon" and it does not necessitate use of a "Hearing Protective Device" or necessarily subject the user to damaging noise. Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of the information sought in the Census Form, Bellwether Information Sheet, and otherwise within these Interrogatories including Nos. 6, 35, 37, 38, and 63. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 37:**

Describe Any basic or advanced weapons training You received in connection with Your military service, including the date of training, the weapons fired during training, and the Hearing Protection Devices worn while firing weapons during training.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any

agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in part that it fails to define "weapons training" or "basic or advanced weapons training." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to the extent this interrogatory pre-supposes that any or all "weapons" create or cause loud noises or otherwise necessitate use of a "Hearing Protective Device," which is not accurate – for example, a knife is a "weapon" and it does not necessitate use of a "Hearing Protective Device" or necessarily subject the user to damaging noise. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information otherwise sought in these of the information sought in the Census Form, Bellwether Information Sheet, and otherwise within these Interrogatories. Further, the information sought by this interrogatory may be better obtained through other discovery means. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

### INTERROGATORY NO. 38:

If You were exposed to Any weapon, machinery, and/or Any other loud noises while in the Military, please Describe in detail All circumstances in which You did so, including the weapon(s), machinery, and/or loud noises you were exposed to without a Hearing Protection Device, and the frequency and duration of use without using a Hearing Protection Device.

### ANSWER:

Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous, burdensome, and unclear in that it fails contain reasonable limitations as to time or scope, and fails to define "weapon," or "machinery," or "loud noises," or "exposed to." Plaintiff objects that Plaintiff is not a doctor or an audiologist, and does not otherwise possess the skills, knowledge, education, experience, or training to make determinations regarding the volume or pressure of sound or "loud noises" otherwise. *See* Fed. R. Civ. P. 26(b)(1). Additionally, Plaintiff objects to the extent this interrogatory pre-supposes that all "weapons, generators, vehicles, planes, helicopters, heavy machinery, air compressors, and/or explosions" create or cause "loud noises," which is not accurate – for example, a knife is a "weapon" and it does not cause or create "loud noises." Plaintiff objects on the ground that this interrogatory improperly attempts to conflate exposure to "loud noises" with potential hearing loss. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, confusing, misleading and/or unreasonably cumulative or duplicative of information sought in the Census Form, Bellwether Information Sheet, and otherwise within these Interrogatories including Nos. 6, 35, 37, 38, and 63   Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories.

**INTERROGATORY NO. 39:**

If You were exposed to Any explosions while in the Military, including Improvised Explosive Device (IED) explosions, State the date of such exposure, the circumstances of the exposure, and which Hearing Protection Device You were wearing, if any.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in part as it fails to define "exposure" or "circumstances," and otherwise as it fails to contain reasonable limitations as to time and scope. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects on the ground that the information sought by this interrogatory is cumulative, duplicative, and may be better ascertained through other less burdensome and more efficient discovery means. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 40:**

Describe in detail All circumstances in which the CAEv2 fell completely out of Your ears after You had inserted it.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, vague, confusing, misleading, ambiguous and unclear in that it fails to define "fell" and fails to contain reasonable limitations as to time or scope. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial and/or unreasonably cumulative. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that this interrogatory pre-supposes the "CAEv2 fell completely out of" Plaintiff's ears, and further, improperly attempts to conflate Plaintiff's potential awareness that the "CAEv2 fell completely out of" Plaintiff's ears (if applicable) with Plaintiff's knowledge of a potential defect and/or lack of fit and/or lack of protection.

**INTERROGATORY NO. 41:**

Describe in detail All circumstances in which you perceived that the CAEv2 loosened in Your ear(s) after You had inserted it.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, misleading, confusing, vague, ambiguous and unclear in that it fails to define "perceived" or "loosened" or "inserted." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, unreasonably cumulative or duplicative of the information sought in the Census Form, Bellwether Information Sheet, and/or otherwise within these Interrogatories including Nos. 28, 42, 43, and 45. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to render the expert and/or legal conclusions sought by this interrogatory regarding understanding or perception of whether or not an earplug loosened in his ear and otherwise.

**INTERROGATORY NO. 42:**

State whether, upon insertion of one end of the CAEv2, the flanges from the opposite end contacted Your ear.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, misleading, confusing, vague, ambiguous and unclear, in part in that it fails to contain reasonable limitations as to scope, and fails to define "upon insertion" or "flanges" or "opposite end" or "ear" or "contacted." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of the information previously sought in the Census Form, Bellwether Information Sheet, or these Interrogatories otherwise including Nos. 28, 43, and 45. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to render the expert and/or legal opinions or conclusions sought by this interrogatory.

**INTERROGATORY NO. 43:**

If You folded back Any of the flanges of the opposite end of the CAEv2 while using the CAEv2, Describe in detail the circumstances in which You folded back the flanges.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, misleading, confusing, vague, ambiguous and unclear, in part as it fails to define "flanges" or "opposite end" or "folded" or "while using" or "circumstances." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of information sought in the Census Form, Bellwether Selection Sheet, and otherwise in these Interrogatories including Nos. 28, 42, and 45. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to render the expert and/or legal opinions and conclusions sought by this interrogatory. Plaintiff objects on the ground that the information sought by this interrogatory may be better obtained through other discovery means. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 44:**

Describe in detail Any instruction(s) or training that You were provided on how to use the CAEv2, including but not limited to Any written or oral instructions and in-Person training, the positions and names of the Person(s) who provided the training, and the dates of the training.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, burdensome, ambiguous and unclear in that it fails to contain any reasonable limitations as to time or scope, and fails to define "instruction(s)" or "training." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects on the ground that the information sought by this interrogatory may be better obtained through other discovery means. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought is equally available to the requesting party.

**INTERROGATORY NO. 45:**

If You were instructed to roll or fold back Any of the flanges on the CAEv2, Describe in detail the circumstances in which You were instructed to do so, including but not limited to Any written or oral instructions and in-Person training, the positions and names of the Person(s) who provided the training, and the dates of the training. Plaintiff objects on the ground that the information sought by this interrogatory may be better obtained through other discovery means.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, confusing, vague, burdensome, ambiguous and unclear, in part as it fails to define "roll" or "fold" or "flanges" or "circumstances" or "instructed" or "instructions" or "training," and fails to otherwise contain reasonable limitations as to time or scope. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of information sought in the Census Form, Bellwether Selection Sheet, and otherwise in these Interrogatories including Nos. 28, 42, and 43. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to the extent that all or part of the information sought is equally available to the requesting party, or may be better obtained through other discovery means. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 46:**

Describe in detail Any hearing loss or tinnitus You had prior to joining the military.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in the if fails to contain reasonable limitations as to time or scope, and further fails to define "hearing" loss" or "tinnitus." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested within Plaintiff's Census Questionnaire, Census Documents and/or Bellwether Selection Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the medical, expert, or legal conclusions and opinions sought through this request. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 47:**

Describe in detail whether and how Your hearing loss and tinnitus has changed since You were discharged from the military.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in the if fails to contain reasonable limitations as to time or scope, and further fails to define "hearing" loss" or "tinnitus" or "has changed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested within Plaintiff's Census Questionnaire, Census Documents and/or Bellwether Selection Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the medical, expert, or legal conclusions and opinions sought through this interrogatory. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 48:**

Describe in detail All circumstances or events in which You allege You were exposed to noise while wearing the CAEv2 that You allege caused or contributed to Your injury.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in the if fails to contain reasonable limitations as to time or scope, and further fails to define "circumstances or events" or "exposed to noise" or "while wearing." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to

provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff objects on the ground that the information sought in this interrogatory may be more readily ascertained through other means of discovery, including deposition. Fed. R. Civ. P. 26(b)(2)(C).

## INTERROGATORY NO. 49:

Describe in detail All alleged defects with the CAEv2 that You believe caused or contributed to Your injuries and that form the basis of the allegations in the Master Long Form Complaint and Your Master Short Form Complaint.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in the if fails to contain reasonable limitations as to time or scope, and further fails to define "defects" or "caused or contributed" or "injuries." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested thru Plaintiff's Census Questionnaire, Census Documents, the Bellwether Selection Sheet, and/or the Master Long Form Complaint or the Master Short Form Complaint. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory, especially in that it requires Plaintiff to itemize damages for intangible damages such as pain and suffering, impairment, and mental anguish. Plaintiff are not required to have personal knowledge or a personal opinion on the specific amount or offer any testimony on a specific amount of damages for these intangibles. These subjects of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff objects on the ground that the information sought in this interrogatory may be more readily ascertained through other means of discovery, including deposition. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 50:

Identify Each Statement regarding the CAEv2 that You relied upon in using the CAEv2 and that You claim is false.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in part that it fails to define "statement" or "relied upon" or "in using." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff objects to this interrogatory to the extent it is cumulative or duplicative of information contained within the Master Long Form Complaint or the Master Short Form Complaint. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought is equally in the possession, custody, or control of the requesting party. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 51:

Identify all warranties, either express or implied, that You allege applied to Your use of the CAEv2.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear, in part that it fails to define "warranties" or "applied to Your use." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff objects to this interrogatory to the extent it is cumulative or duplicative of information contained within the Master Long Form Complaint or the Master Short Form Complaint. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that the information sought is equally in the possession, custody, or control of the requesting party. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 52:

Identify All damages, losses, or expenses of Any nature whatsoever by category and the amount that You are claiming as a result of Your use of the CAEv2, including All events Described in the Master Long Form Complaint and Your Master Short Form Complaint.

30

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and fails to define "damages" or "losses" or "category" or "events." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative information sought within the Census Form, Bellwether Information Sheet, and otherwise within the Master Long Form Complaint and/or Short Form Complaint. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to itemize damages for intangible damages such as pain and suffering, impairment, and mental anguish. Plaintiff is not required to have personal knowledge of or a personal opinion on any specific amount or offer any testimony on a specific amount of damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff objects on the ground that the information sought is equally in the possession, custody, or control of the requesting party. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

**INTERROGATORY NO. 53:**

Other than the injuries that You Allege were caused by Your use of the CAEv2, Describe Any other physical injuries, illnesses, or disabilities that have resulted in loss of income or medical expenses, including the symptoms of the injuries, the date(s) of onset, the date(s) of diagnoses, and by whom it was first diagnosed.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and fails to define "injuries" or "illnesses" or "disabilities" or "diagnoses." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant or immaterial to the extent that is seeks information that has

31

no tangential relationship to the matters at issue in this litigation, and/or is otherwise unreasonably cumulative or duplicative of information sought within the Census Form, Bellwether Information Sheet, and otherwise within these Interrogatories or the authorizations that Defendants seek. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to itemize damages for intangible damages such as pain and suffering, impairment, and mental anguish. Plaintiff is not required to have personal knowledge of or a personal opinion on any specific amount or offer any testimony on a specific amount of damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 54:

If You are claiming or expect to claim hearing injury of any type and/or level of impairment as a result of Your use of the CAEv2, State the type and classification of that injury and/or level of impairment as it specifically relates to the Standards of Medical Fitness (or similar standards) for your military branch of service, and State what medical or audiometric provider communicated that type and classification to you and on what date.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, vague, ambiguous, misleading, and unclear, in part as it fails to contain reasonable limitations as to time or scope, and fails to define "hearing injury" or "type or level" or "impairment" or "classification" or "level" or "Standards of Medical Fitness" or "similar standard" or audiometric" or "provider." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to the extent this interrogatory purports to tie the damages in this claim to "the Standards of Medical Fitness (or similar standards) for your military branch of service," which mischaracterizes the applicable legal standards at issue. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or is sought solely for the purposes of

harassment, embarrassment, or as part of Defendants fishing expedition. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to itemize damages for intangible damages such as pain and suffering, impairment, and mental anguish. Plaintiff is not required to have personal knowledge of or a personal opinion on any specific amount or offer any testimony on a specific amount of damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

**INTERROGATORY NO. 55:**

If You are claiming or expect to claim that You lost earnings or suffered an impairment of Your earning capacity as a result of Your use of the CAEv2, State the total number of days You missed from work because of Your injuries, whether You received Any disability, medical leave, or other income for those days You missed Allegedly due to Your injuries and, if so, the type and amount of such income.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, vague, ambiguous and unclear, in part as it fails to contain reasonable limitations as to time or scope, and fails to define "impairment" or "earning capacity" or "disability" or "medical leave" or "other income" or "income" or "injuries." *See* Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiff objects to this interrogatory on the ground that it improperly conditions Plaintiff's potential "lost earnings" and/or "impairment of earning capacity" upon "days [Plaintiff] missed from work," and further, improperly conditions Plaintiff's potential receipt of "disability, medical leave, or other income" upon the "total number of days" Plaintiff "missed from work because of [Plaintiff's] injuries." Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested and provided thru Plaintiff's Census Questionnaire, Census

Documents and/or Bellwether Selection Sheet, and/or otherwise within these Interrogatories; and/or may be better ascertained through other less burdensome or more efficient discovery means. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

**INTERROGATORY NO. 56:**

If You are claiming or expect to claim that You lost earnings or suffered an impairment of Your earning capacity as a result of Your use of the CAEv2, State whether You expect to return to employment following recovery from Your injuries. If You do expect to return to work, State when Your return is expected, whether You are expected to return to the same or similar job, and the number of hours per week You expect to be working. If You do not expect to return to work, State why You are no longer able to work, if the same was confirmed by Any medical professional, and the name of the medical professional who confirmed the same, if any.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, vague, ambiguous and unclear, in part as it fails to contain reasonable limitations as to time or scope, and fails to define "impairment" or "earning capacity" or "injuries" or "recovery." *See* Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiff objects to this interrogatory on the ground that it improperly conditions or conflates Plaintiff's potential "lost earnings" and/or "impairment of [] earning capacity" upon Plaintiff's ability "to return to employment following recovery of [Plaintiff's] injuries," and further improperly conditions Plaintiff's potential inability to "return to employment" upon confirmation by a "medical professional," which presupposes that "medical professionals" can render determinations about Plaintiff's ability to work. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested and provided thru Plaintiff's Census Questionnaire, Census Documents and/or Bellwether

Selection Sheet, or otherwise within these Interrogatories; and/or may be better ascertained through other less burdensome or more efficient discovery means. Fed. R. Civ. P. 26(b)(2)(C).  Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 57:

If You are claiming an impairment of Your earning capacity, State the impairment and the health care provider who diagnosed Your impairment.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, vague, ambiguous and unclear, in part as it fails to define "impairment" or "earning capacity" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Specifically, Plaintiff objects to this interrogatory on the ground that it presupposes that a "healthcare provider" has the ability to diagnose an "impairment to [Plaintiff's potential] earning capacity," which may not be accurate, and to the extent it improperly conflates questions of fact with questions of law. Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information requested and provided thru Plaintiff's Census Questionnaire, Census Documents and/or Bellwether Selection Sheet, or otherwise within these Interrogatories; and/or may be better ascertained through other less burdensome or more efficient discovery means. Fed. R. Civ. P. 26(b)(2)(C).  Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the

ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and further, on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial.

## INTERROGATORY NO. 58:

If You have submitted a workers' compensation claim, Veterans Affairs disability application, veterans benefits administration disability application, social security claim, or Any other form of disability application or claim for hearing-related injuries, Identify the application or claims submitted, the entity with which the claim was filed, the date the claim was filed, the claim number, the nature of the disability, the period of disability, and the status of the claim.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and fails to define "claim" or "hearing-related injuries." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it seeks information that is irrelevant, immaterial to the matters at issue in this litigation, and/or unreasonably cumulative or duplicative with information sought within Plaintiff's Census Form or Bellwether Selection Sheet or otherwise subject of the authorizations that Defendants seek. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

## INTERROGATORY NO. 59:

If You have applied for disability benefits to the Veterans Affairs and were denied Your request for benefits for hearing-related injuries, Describe the bases that the Veteran Affairs gave You in denying Your application for benefits.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and fails to define "benefits" or "hearing-related injuries" or "bases." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it seeks information that is not within his personal knowledge, is irrelevant or immaterial to the matters at issue in this litigation, and/or unreasonably cumulative or duplicative with information sought within Plaintiff's Census Form or Bellwether Information Sheet or otherwise subject to the authorizations that Defendants seek. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 60:**

If You have, or someone on Your behalf has, made a claim or filed a lawsuit concerning the injuries that You claim to have sustained as a result of Your use of the CAEv2, Identify the other Persons or entities against whom the claim was made or lawsuit was filed, the date of the claim or lawsuit, where the claim or lawsuit was filed, and the status of the claim or lawsuit.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and otherwise fails to define "claim" or "concerning the injuries that You claim to have sustained…." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant and immaterial to the matters at issue

in this litigation, and/or unreasonably cumulative or duplicative to the information Defendants sought with the Census Form and Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

## INTERROGATORY NO. 61:

Describe Each occupation that You have had outside of Your service in the Military, including the employer's name and address, the dates in which You were employed there, Your job title, the nature of Your responsibilities, and Any Hearing Protection Devices that You wore on the job.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, burdensome, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and further, fails to define "occupation" or "responsibilities" or "wore" or "on the job." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant and immaterial to the matters at issue in this litigation, and/or unreasonably cumulative or duplicative to the information Defendants sought with the Census Form and Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 62:**

For Each occupation that You had outside of Your service in the Military, Describe Any hearing conservation programs that You were assigned to and/or Hearing Protection Devices You were required to wear in Your occupation, including Any audiograms or other hearing tests that You received for Your occupation, the employer(s) for which You were tested, the date(s) of the hearing test(s), the Hearing Protection Devices You wore, if any, and whether or not Any hearing impairment or other hearing disorder was identified in Any hearing-related test.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, burdensome, ambiguous and unclear in that it fails to contain reasonable limitations as to time or scope, and further, fails to define "occupation" or "hearing conservation program" or "assigned to" or "hearing impairment" or "hearing disorder" or "hearing-related test." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant and immaterial to the matters at issue in this litigation, and/or unreasonably cumulative or duplicative to the information Defendants sought with the Census Form and Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiff to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, financial, and/or other personal information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 63:**

Describe in detail Any non-occupational activities, such as sporting events, music concerts, personal headphones, all-terrain vehicles, motorcycles, car racing, band practices, monster truck events, power tool usage, animal kennels, farm equipment, lawn mowers, chainsaws, leaf blowers, weed cutters, engine repair, train noise, etc., in which You were exposed to loud noise, including the nature of the activity, the frequency with which You engaged in such activity, and the dates in which You engaged in such activity.

**ANSWER:**

39

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous, burdensome, and unclear in that it fails to contain limitations as to time and scope, and fails to define "non-occupational activities" or "sporting events" or "all-terrain vehicle" or "band practices" or "power tool[s]" or "animal kennels" or "farm equipment" or "engine repair" or train noise" or "etc." or "exposed to" or "loud noise." Further, Plaintiff objects to the extent that this interrogatory is requiring Plaintiff to "describe in detail any non-occupational activities" in which Plaintiff was "exposed to loud noises," which are subjective, potentially prejudicial, patently overbroad, vague, and unclear, and Plaintiff is not a doctor or an audiologist, and does not otherwise possess the skills, knowledge, education, experience, or training to make determinations regarding the volume or pressure of sound, and/or any other expert or legal opinions or conclusions sought otherwise. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects on the ground that the information sought through this Interrogatory may be better obtained through less burdensome and more efficient means, including through depositions. Additionally, Plaintiff objects to the extent this interrogatory pre-supposes that activities such as "sporting events, music concerts, personal headphones," "band practices," "animal kennels," "engine repair," "etc." create or cause "loud noises," and further, that it presupposes that such activities always (if ever) create or cause "loud noises." Plaintiff objects on the ground that this interrogatory improperly attempts to conflate any exposure to various noises which may include "loud noises" with potential hearing loss. Plaintiff objects to this interrogatory to the extent it is irrelevant and immaterial to the matters at issue in this litigation, and/or unreasonably cumulative or duplicative cumulative or duplicative to the information Defendants sought with the Census Form and Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 64:**

For Each instance in which You have shot a firearm recreationally, Describe in detail circumstances surrounding your use, including the activity in which You shot the firearm, the type of firearm You used during the activity, the dates in which You performed that activity, the frequency with which You performed that activity, the Hearing Protection Device worn during the activity, if any, and the date You last performed the activity.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous, burdensome, and unclear in that it fails to contain limitations as to time and scope, and fails to define "recreationally" or "circumstances" or "activity" or "type of firearm". *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative to the information Defendants sought with the Census Form and

40

Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 65:**

If Any of Your family member(s) have had hearing loss, Identify the family member(s) and Your relationship to them.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, burdensome, misleading, vague, ambiguous and unclear, in part as it fails to reasonable contain limitations as to time and scope, and fails to define "hearing loss" and "relationship". *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative to the information Defendants sought with the Census Form and Bellwether Information Sheet. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects on the ground that this interrogatory improperly presumes or attempts to imply that if "any of [Plaintiff's] family member(s) have had hearing loss" for any reason that therefore, Plaintiff's hearing loss was caused by or related to a supposed medical or genetic issue, which is not accurate and/or not within Plaintiff's personal knowledge. Further, Plaintiff objects on the ground that "hearing loss" is a medical term and Plaintiff is not a doctor or an audiologist and does not otherwise possess the skills, knowledge, education, experience, or training to render the expert or legal conclusions or opinions sought through this interrogatory as to Plaintiff's family member's medically diagnosed hearing loss.

**INTERROGATORY NO. 66:**

If You have ever received a hunting and/or gun license, State the year of the license, the status of the license, and the weapon which You were licensed to operate.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, unclear, and sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation. Specifically, Plaintiff objects that this Interrogatory fails to contain reasonable limitations as to time or scope, and fails to define "hunting and/or license" or "gun" or "weapon." Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the

information and materials is protected from discovery by any cognizable legal privilege. Plaintiff further objects to this interrogatory as unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i).

## INTERROGATORY NO. 67:

If You have filed a lawsuit or made a claim involving Personal injuries other than this case, Identify the Court, the case name, the names of adverse parties, the civil action number if filed, and for how much the matter was resolved.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, unclear, and not relevant to the matters at issue or of consequence in this litigation, and that the information sought through this interrogatory is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Specifically, Plaintiff objects that this Interrogatory fails to contain reasonable limitations as to time or scope, and fails to define "claim" or "personal injuries" or "adverse parties." Plaintiff objects to this interrogatory as unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege.

## INTERROGATORY NO. 68:

If within the past ten (10) years You have ever been convicted of, or pled guilty to, a felony or completed serving a sentence for a felony conviction, Identify the charge for which You were convicted (or pled guilty to), the court in which You were convicted or entered the plea, the criminal action number assigned to the matter, and the sentence imposed.

## ANSWER:

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, unclear, and not relevant to the matters at issue or of consequence in this litigation,

and further, that the information sought through this interrogatory is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff objects to this interrogatory as unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege.

**INTERROGATORY NO. 69:**

If within the past ten (10) years You have been convicted of, or pled guilty to, a misdemeanor involving lying, false Statements, cheating, fraud, or dishonesty, Identify the charge for which You were convicted (or pled guilty to), the court in which You were convicted or entered the plea, the criminal action number assigned to the matter, and the sentence imposed.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that its overbroad, unduly burdensome, irrelevant, vague, ambiguous, unclear, and not relevant to the matters at issue or of consequence in this litigation, and further, that the information sought through this interrogatory is sought solely for the purposes of harassment, embarrassment, or as part of Defendants fishing expedition. Plaintiff objects to this interrogatory as unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient and less burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege.

**INTERROGATORY NO. 70:**

Identify Any individuals who are depicted in Any photographs, films, movies, and video recordings that You produce in response to Requests for Production 17, 21, 27, and 29.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear

in part as it fails to contain any reasonable limitations as to time or scope. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C).  Plaintiff further objects to this interrogatory to the extent the information sought constitutes an unnecessary invasion of Plaintiff's privacy and/or to the extent the information and materials is protected from discovery by any cognizable legal privilege. Plaintiff objects on the ground that the information sought within this interrogatory may be better obtained through other less burdensome and more efficient means or manners of discovery such as a deposition.

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| *Lonnie Eugene Burgus*, Case No. 7:20-CV-7-MCR-GRJ | |

### PLAINTIFF LONNIE EUGENE BURGUS OBJECTIONS & ANSWERS TO DEFENDANT 3M'S SECOND SET OF INTERROGATORIES TO PLAINTIFF

TO:    Defendant 3M Company ("3M"), and through its Attorneys of Record: Kimberly O. Branscome, Kirkland & Ellis LLP, 2049 Century Park East, Los Angeles, CA 90067; Mark Nomellini, Kirkland & Ellis LLP, 300 North LaSalle  Chicago, IL 60654; and Mike Brock, Kirkland & Ellis LLP, 300 North LaSalle  Chicago, IL 60654.


COMES NOW, Plaintiff, Lonnie Eugene Burgus, through the undersigned attorney, and in accordance with the Federal Rules of Civil Procedure, submits the following Plaintiff's Objections & Answers to Defendant 3M's Second Set of Interrogatories to Plaintiff. As discovery in this matter is ongoing, Plaintiff reserves the right to amend, supplement, modify, or change his/her responses.

 Dated:  April 10, 2020

                          **Respectfully Submitted,**

                          BY:    */s/ Bryan F. Aylstock*
                          Bryan F. Aylstock, FL Bar No. 78263
                          AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
                          baylstock@awkolaw.com
                          17 East Main Street, Suite 200
                          Pensacola, FL 32502
                          Phone: (850) 202-1010
                          Facsimile: (850) 916-7449

1

# GENERAL OBJECTIONS

Plaintiff objects to Defendants' Second Set of Interrogatories insofar as they exceed the permissible number of Interrogatories in this case per Federal Rule of Civil Procedure 33, and any agreements between the parties.

Plaintiff objects generally to Defendant's Second Set of Interrogatories insofar as they may be construed as calling for information subject to a claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine, or the investigative privilege. The inadvertent disclosure of any privileged information shall not constitute or be deemed to be a waiver of any applicable, cognizable legal privilege with respect to such document, materials, or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. In the event Defendants receive documents or information that they believe to have been inadvertently produced and/or is otherwise privileged, such documentation should be immediately snapped back to the producing party within 14 days. Plaintiff reserves the right not to disclose any information that is or may be considered privileged and protected from discovery.

Plaintiff objects generally to Defendant's Second Set of Interrogatories insofar as they purport to require Plaintiff to furnish information regarding privileged documents and communications beyond such information as may be required by the Court in determining the privileged status of the documents.

Plaintiff objects generally to Defendant's Second Set of Interrogatories to the extent that they imply that Plaintiff concedes the relevance and materiality of the information sought by Defendants. The answers set forth below are subject to and are not intended to waive any of the following, which Plaintiffs reserve:

    a.    All questions or objections as to competency, relevancy, materiality, privilege, or admissibility as evidence, or for any other purpose, of any of the information referred to or responses given herein, in any subsequent proceeding or trial in this action or any other action;

    b.    Plaintiff's right to object to other discovery proceedings involving or related to the subject matter of the requests; and

    c.    Plaintiff's right at any time to revise, correct, add to, or clarify any of his/her responses, all of which are given subject to correction of any such omissions or errors.

Plaintiff objects to each Interrogatory to the extent that such Interrogatory requests or calls for information: (1) not in Plaintiff's personal knowledge and/or possession, custody, and/or control; (2) already in Defendant's possession or previously made available and/or submitted to Defendants; (3) already contained in and/or previously submitted to Defendants via other means, including information contained in and submitted via the Plaintiff's Census Questionnaire or Bellwether Selection Sheet; or (4) which are not relevant to the subject matter of this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects to each interrogatory that seeks disclosure of information that is confidential,

privileged, proprietary, or subject to a confidentiality agreement with third parties.

Plaintiff objects to Defendant's Second Set of Interrogatories to the extent that any interrogatory presupposes that information within Plaintiff's personal knowledge is or was contained or commemorated in a written document or record, many of the matters inquired into may not normally be contained in documents or records, and as such, as far as Plaintiff is aware no documents exist, and Plaintiff objects to the extent any interrogatory requires Plaintiff to identify any document not presently known to Plaintiff or in existence, outside of Plaintiff's personal knowledge, and/or not within Plaintiff's possession, custody, or control.

Plaintiff objects to Defendant's definition of "identify" to the extent that the same is burdensome and overly broad.

Plaintiff generally objects to all definitions and instructions within Defendant's Second Set of Interrogatories to the extent the same are overbroad, unduly burdensome, vague, ambiguous and unclear, and further that they lack specificity and/or require application of definitions or terminology not reasonably utilized or understood by Plaintiff; and to the extent that the same are onerous, unreasonable, and seek information outside the permissible scope of discovery or not otherwise within Plaintiff's personal knowledge or otherwise within Plaintiff's possession, custody, or control.

Plaintiff submits these answers and objections without conceding the relevancy or materiality of the subject matter of any interrogatory, information given, and/or document, or that any responsive documents, materials, or information exist. Plaintiffs reserve the right to contest any such characterization as inaccurate.

Plaintiff also objects to Defendant's Second Set of Interrogatories to the extent they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation. These answers and objections are made on the basis of information now known to Plaintiff and are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. Plaintiff's investigation, discovery, and preparation for proceedings are continuing and all answers are given without prejudice to Plaintiff's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Plaintiff likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of the information contained in these answers and objections; and (2) discovery requests relating to these objections and answers/responses.

All of Plaintiff's answers below are subject to each of these general objections. Plaintiff reserves the right to amend and/or supplement any answers given herein. Specifically, Plaintiff reserves the right to amend and/or supplement these answers upon receipt of any records requested and/or released from the Department of Veterans' Affairs and/or the Department of Defense and/or otherwise are received by counsel and reviewed by Plaintiff.

**PLAINTIFF'S ANSWERS TO**
**DEFENDANTS' SECOND SET OF INTERROGATORIES**

**INTERROGATORY NO. 71:**

Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who diagnosed you with the condition(s) and the date of the diagnosis.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that the information sought, on its face, will contain sensitive, confidential, and privileged medical, mental health, and/or other personal information that Defendants seek solely for the purpose of harassment, and which is not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitation as to time or scope, and that it fails to define "mental health" or "condition" or "diagnos[ed]." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is irrelevant, immaterial, and/or unreasonably cumulative or duplicative of information sought in the Census Form, Bellwether Information Sheet, within Defendants' Interrogatories, and otherwise of the mental health authorizations that Defendants sought but the Court has denied access to. Fed. R. Civ. P. 26(b)(2)(C).

**INTERROGATORY NO. 72:**

State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the expert testimony You intend to offer.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitations as to time or scope, and fails to define "expert" or "mental anguish" or "distress" or "loss of enjoyment of life" or "mental health condition" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of the information sought in the Census Form, Bellwether Information Sheet, within

Defendants' Interrogatories, and otherwise of the mental health authorizations that Defendants sought but the Court has denied access to. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this request to the extent it improperly and prematurely seeks information regarding expert witnesses, because the discovery of such expert materials is limited to responses to request for disclosure, expert reports and expert depositions, which at this juncture are premature. Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to quantify or qualify damages for intangible damages such as pain and suffering, impairment, mental anguish, and/or loss of enjoyment of life. Plaintiff is not required to have personal knowledge of or a personal opinion on or offer any testimony on a specific amount of damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, and/or other information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 73:**

State whether You intend to offer any evidence at trial related to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the evidence you intend to offer.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that this interrogatory is premature as discovery is ongoing, and on the basis that interrogatories may not be used to require Plaintiff to marshal all of its available proof or the proof Plaintiff intends to offer at trial. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitations as to time or scope, and fails to define "mental anguish" or "distress" or "loss of enjoyment of life" or "mental health condition" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this interrogatory to the extent it is unreasonably cumulative or duplicative of the information sought in the Census Form, Bellwether Information Sheet, within Defendants' Interrogatories, and otherwise of the mental health authorizations that Defendants sought but the Court has denied access to. Fed. R. Civ. P. 26(b)(2)(C). Plaintiff objects to this request to the extent it improperly and prematurely seeks information regarding expert witnesses, because the discovery of such expert materials is limited to responses to request for disclosure, expert reports and expert depositions, which at this juncture are premature. Plaintiff objects to this interrogatory on the ground that Plaintiff does not possess the skills, knowledge, education, experience, or training to provide

the expert or legal conclusions and opinions sought through this interrogatory—particularly in that it requires Plaintiff to quantify or qualify damages for intangible damages such as impairment, mental anguish, and/or loss of enjoyment of life. Plaintiff is not required to have personal knowledge of or a personal opinion on or offer any testimony on damages for intangibles as the subject(s) of damages and amounts thereof are uniquely within the purview of the jury. Plaintiff objects on the ground that the information sought may contain sensitive, confidential, and/or privileged medical, mental health, and/or other information sought solely for the purpose of harassment and not relevant to the matters at issue or of consequence in this litigation pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

**INTERROGATORY NO. 74:**

Please Identify all education institutions at which you are or have been enrolled.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects on the ground that pursuant to Judge Jones' March 26, 2020 Order at Dkt. No. 1065, this interrogatory is overbroad, burdensome, vague, not narrowly tailored, and seeks irrelevant information sought solely for the purposes of harassment and otherwise constitutes an impermissible fishing expedition, in part as it fails to contain reasonable limitations as to time or scope and fails to define "education institutions" or "enrolled." The identity of any educational institutions Plaintiff attended is irrelevant to the facts at issue in this matter. Plaintiff also objects to this interrogatory to the extent that the information sought is burdensome for Plaintiffs to provide and is equally accessible to both Parties in records both Parties have received and/or will receive pursuant to the medical or other authorization(s) provided by Plaintiff. *See also* Judge Jones' March 26, 2020 Order at Dkt. No. 1065.

# EXHIBIT E

**From:** Nomellini, Mark J.
**Sent:** Friday, April 17, 2020 1:10 PM
**To:** FLNDdb_efile jones <​█████████████████████​> 'Gary Jones' ██████████████
**Cc:** Tevenia Jacobs ██████████████    Shelley Hutson <SHutson@triallawfirm.com>;
*cseeger@seegerweiss.com <cseeger@seegerweiss.com>; David Buchanan <DBuchanan@seegerweiss.com>; Jennifer
Hoekstra <JHoekstra@awkolaw.com>; Betsy Williams <BWilliams@awkolaw.com>; Jennifer Hoekstra
<JHoekstra@awkolaw.com>; Hill, T. Larry <lhill@mhw-law.com>; Branscome, Kimberly Olvey
<kimberly.branscome@kirkland.com>; Brock, Mike <mike.brock@kirkland.com>; Wasdin, Nick
<nick.wasdin@kirkland.com>; Max Kelly <MKelly@seegerweiss.com>; 'Bryan Aylstock' <BAylstock@awkolaw.com>;
'barry.fields@kirkland.com' <bfields@kirkland.com>
**Subject:** 3M MDL

Dear Judge Jones,

The parties have met and conferred and write to propose briefing on two issues relating to plaintiffs' objections to the
defendants' first and second sets of interrogatories.

First, the parties agreed to change the limitations on the number of interrogatories from the limits imposed by the
Federal Rules of Civil Procedure to a limit of 100 interrogatories.  The parties disagree on whether the number of
interrogatories served by defendants exceeds that limit.  The parties seek the Court's guidance on this issue.

Second, the parties disagree as to the interpretation of this Court's March 26, 2020 Order, with respect to mental health
interrogatories.

The parties propose that the parties submit simultaneous letter briefs to Your Honor on these two issues on April 22,
and would be prepared to address these issues at the upcoming CMC, should the Court wish to hear from us.

By briefing these issues, plaintiffs do not intend to waive other objections to defendants' interrogatories and defendants
do not intend to waive their opposition to plaintiffs' objections or any argument that plaintiffs' objections and answers
should provide more information or greater specificity.

Regards,
Mark and Bryan

# EXHIBIT F



A General Partnership of Attorneys and Counselors at Law

March 23, 2020

Judge Gary R. Jones
United States Magistrate Judge
United States District Court for the Northern District of Florida
401 SE First Avenue
Gainesville, Florida 32601

Re:    In re: 3M Combat Arms Earplug Products Liability Litigation, 3:19-md2885

Dear Judge Jones:

Plaintiffs agree to provide authorizations reasonably tailored in time and scope for the disclosure of otherwise highly confidential records and documents to the extent such records are relevant. *See* Exhibit A, Plaintiffs' Proposed Authorizations. Defendants, however, seek discovery from Plaintiffs unfettered in time, scope, and unbound by actual—rather than presumed—relevance. Accordingly, Defendants' proposed authorizations are overbroad, harassing, burdensome, and seek documents that are not relevant to any matter of consequence at issue in this case.

While the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (emphasis added). Defendants' proposed authorizations, "which have no time limitation, are exceedingly broad and burdensome on their face." *Am. Fed. of State, County and Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011) (emphasis added).

Under the Federal Rules, parties are entitled to discovery regarding any non-privileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable then it would be without the evidence. Fed. R. Evid. 401. The party seeking the discovery has the threshold burden of demonstrating that the discovery requested is relevant. *Flogrown, LLC v. Dixie Heritage, LLC*, No. CV 6:17-cv-983-Orl-18GJK, 2018 WL 3822002 (M.D. Fl. May 01, 2018) (citing *Zorn v. Principal Life Ins. Co.*, No. CV 609–081, 2010 WL 3282982, at *2 (S.D. Ga. Aug. 18, 2010)). Defendants have failed to meet their threshold burden.

Defendants have not justified their unlimited requests for the following authorizations:

- Tax/IRS information;
- Employment records from "both before and after the Bellwether Plaintiffs' military service";[1]

---

[1] *See* Defendants' March 20, 2020 Letter Brief to Judge Jones at 2.

Judge Gary R. Jones
March 23, 2020

- "Medical records from Bellwether Plaintiffs' youth";[2]
- Educational records from Plaintiffs' "youth to present day";[3] or
- Insurance records.

Defendants' take the radical position that all records, including medical, educational, and employment records, from "both before and after the Bellwether Plaintiffs' military service" are relevant without *any* limitation as to scope or time. If allowed, this would result in the production of records spanning back anywhere from 12 to more than 30 years ago, but Defendants have neither established any relevance nor need for records from before Plaintiffs' military service.

Accordingly, Bellwether Plaintiffs respectfully request that the Court rejects Defendants' authorizations for (i) Tax/IRS records, (ii) Insurance records, and (iii) Educational records. Further, Plaintiffs ask the Court to allow Bellwether Plaintiffs to utilize Plaintiffs' Proposed Authorizations for Medical records and/or Employment records, which are narrowly tailored in both time and scope. Lastly, to the extent the Court finds any authorizations to be necessary, Plaintiffs respectfully request that the Court limit such authorizations for records to the shorter time frame of either (a) the past 10 years or (b) since the termination of Plaintiffs' military service.

*Bellwether Plaintiffs' Service History and Records*

Prior to entry into the Military, each Bellwether Plaintiff was evaluated and deemed *medically acceptable* under the rigorous medical fitness standards required by the Department of Defense ("DoD") and the United States Army.

The DoD and the United States Army have specific detailed Standards of Medical Fitness that all candidates for military service must be evaluated for and pass as a condition for enlistment or appointment. Specifically, DoD Directive 1603.3 and Army Regulation 40-501 govern medical fitness standards for enlistment, induction, and officer appointment into the Army. This Department of Defense Policy ensures that individuals under consideration for appointment, enlistment, or induction into the United States Armed Forces are:

- Free of medical conditions or physical defects that would require excessive time lost from duty or would likely result in separation from the Service for medical unfitness.
- Medically capable of satisfactorily completing required training;
- Medically adaptable to the military environment;
- Medically capable of performing duties without aggravation of existing physical defects or medical conditions.

*See* Department of Defense Directive 6130.3; *see also* Army Regulation 40-501. Army Regulation 40-501 lists several ear and hearing conditions, among other types, that would disqualify someone from Army enlistment, appointment, or service, including but not limited to mastoiditis, chronic drainage or conditions requiring frequent cleaning of the mastoid bone, Meniere's Disease or other

---

[2] *Id.*
[3] *Id.* at 8.

2

Judge Gary R. Jones
March 23, 2020

chronic diseases of the vestibular system, current or history of chronic otitis media (chronic infection of middle ear), current or history of inner or middle ear surgery, and/or current or history of hearing aid use, among others. Army Regulation 40-501. If any Bellwether Plaintiff failed to meet those specific DoD and Army medical standards they would have been disqualified for service, and unable to join the Military. Because no Bellwether Plaintiff was medically or otherwise disqualified and each served time in the military, records that predate military service—other than hearing evaluations—are irrelevant.

Plaintiffs do not dispute that some, although certainly not all, of the requested information may be relevant *with appropriate limitations*. By way of example, much of the relevant information sought is already the subject of other discovery and/or is more easily available from the *Touhy* process than third party subpoenas. Defendants' arguments regarding their purported need for such sweeping discovery is largely bereft of any legal authority, instead making vague assertions of relevance. As Defendants are not entitled to discover everything about the Bellwether Plaintiffs for all time and in all things, the scope of the authorizations must be narrowly tailored and limited to facts of consequence. *Am. Fed. of State, County and Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 478 (S.D. Fla. 2011); see also Fed. R. Civ. P. 26(b)(1) & 34.

This approach is not controversial, and in fact mirrors precedent from the majority of other multidistrict product liability litigations. Moreover, Defendants' proposal that Plaintiffs address the scope of each subpoena individually and after its service defeats an essential purpose of this MDL: to provide for the efficient and orderly work-up of these cases.[not sure if there's some sort of general cite for this, may not need it] All of these facts support the imposition of reasonable limitations on the scope and time of the requested information and doing so prophylactically now will better serve the interests of efficiency in terms of time and resources for the Court and the parties.

Further, in this case, much of the information sought by Defendants has been and/or will be produced via the *Touhy* servicemember specific document retrieval process. This process, which has been the subject of wide-ranging negotiations between both parties, the Court, and several federal agencies, will yield extensive medical records from the time Bellwether Plaintiffs joined the military through separation, extensive disability records, personnel/employment records, and a host of other information about each individual Bellwether Plaintiff. This is particularly significant because according to Census Data, the Bellwether Plaintiffs were on average, twenty (20) years old at the time they entered military service. Prior to entry into the military service and throughout their military service, they underwent medical and audiological examination. Each of these Bellwether Plaintiffs was deemed *medically acceptable* in order to serve their country.  Defendants fishing expedition into the Bellwether Plaintiffs' childhood and/or pre-military records, when Defendants will have the *Touhy* and VA records as evidence showing those Plaintiffs were healthy at the time of military service will only cause unnecessary delay in this case, confusion of the issues, and undue burden imposed upon extensive non-parties. Without any authorizations, Defendants already have access to a broad swath of records concerning the Bellwether Plaintiffs.

3

Judge Gary R. Jones
March 23, 2020

*Factual and Procedural History*

Plaintiffs first objected to the scope of Defendants authorizations more than two months ago, on January 8, 2020, during negotiations over what eventually became the Bellwether Selection Sheet. Plaintiffs specifically objected to the section concerning authorizations, stating that:

> This release request is overly broad and invasive of the privacy of the individuals. It is improper to ask for general releases for tax records, all educational records, all personnel records, all employment records. The individuals will agree to relevant authorizations limited in time.[4]

Subsequently the Court entered PTO 28, which adopted a discovery and trial schedule for bellwether cases which had been the subject of lengthy negotiations. Included in PTO 28 was the parties' agreement that Bellwether Plaintiffs provide "Authorizations . . . to obtain records." It was not until almost ten days later—and approximately 72 hours before the March 9 deadline for submission to the Court—that Defendants provided their proposed authorizations to Plaintiffs.[5] Defendants made no attempts to meet and confer about the objection lodged by Plaintiffs in early January regarding the inappropriate scope of the authorizations. Upon receipt of the proposed authorizations, Plaintiffs immediately began to review and comment upon the draft authorizations and requested an extension to conduct a meaningful review given the late nature of their production. Despite being put on notice in writing of Plaintiffs' objections more than two months prior, Defendants incorrectly asserted that "[t]he first time Plaintiffs raised any issues about non-tax authorizations was [March 15]."[6] During the biweekly leadership call held on March 16, 2020, Defendants complained that the Bellwether Plaintiffs had not yet provided signed authorizations, and sought Court intervention. This letter brief is respectfully submitted in accordance with the Court's directive, and for the reasons set out *infra* Plaintiffs request the Court require reasonable limitations to the scope and time of the discovery sought by Defendants.

*Argument*

The scope of the authorizations in this case are vastly overbroad and seek information not relevant to the claim or defenses of any party, and Plaintiffs ask that this court appropriately limit in the manner more particularly described below. A party is entitled to conduct discovery on any matter that is "relevant to the claim or defenses of any party." Federal Rule of Civil Procedure 26(b)(1). Under the Federal rules, relevancy in discovery includes information that may not be admissible if such discovery "appears reasonably calculated to lead to discovery of admissible evidence." Rule 26(b)(1). However, as stated above, although the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). Defendants' authorizations seek information vastly exceeding the scope of Rule 26.  Rule 26(C)(1) explicitly dictates that a Court must limit the frequency or extent

---

[4] *See* Exhibit E, 1/8/2020 email exchange, Exhibit F Plaintiff redline to draft PFS.
[5] *See* Exhibit H, 3/6/2020 email exchange.
[6] *See* Exhibit G, 3/15/2020 email exchange; *cf Ex.* E "LETTER" (1/8/2020 email exchange, Exhibit F Plaintiff redline to draft PFS).

Judge Gary R. Jones
March 23, 2020

of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Rule 26(C)(i).

In addition to the in-depth servicemember-specific *Touhy* document request process, the sworn census form, bellwether selection sheets, written interrogatories in this case (which, as served, include over 192 individual questions), and eventual core depositions of Bellwether Plaintiffs, Defendants also seek the following authorizations from the Bellwether Plaintiffs:

1. Exhibit A (Healthcare Authorization)
2. Exhibit B (IRS Forms)
3. Exhibit C (Employment Authorization)
4. Exhibit D (Disability Authorization)
5. Exhibit E (Education Authorization)
6. Exhibit F (Insurance Authorization)

Simply stated, Plaintiffs' life-long tax/IRS information, education records, full employment records, and insurance records are not relevant to any of the claims or defenses at issue in this case. Plaintiffs object to the entirety of those requests. The authorizations that Defendants seek to that extent are overbroad, duplicative, and burdensome in that any tangentially relevant information may be otherwise obtained through less intrusive means—for example, if relevant, Plaintiffs will provide their W-2 forms in support of any lost wage or earning capacity claims.

While Bellwether Plaintiffs generally object to the overbreadth and relevance of Defendants current limitless authorizations, Plaintiffs agree to a narrowly tailored medical authorization allowing Defendants to seek relevant medical records from the time Bellwether Plaintiffs joined the armed services to present. The authorizations in this case should be tailored to obtain relevant information that the parties will be able to obtain and review within the time frame contemplated by in PTO 28. *See* Exhibit A, Plaintiffs' Proposed Authorizations. Defendants authorizations—without any limitations—would yield a mass of records with largely irrelevant and duplicative information that will only serve to delay the trial schedule for Bellwether Plaintiffs, and impose significant undue burden upon non-parties. [consider…"As well as the Plaintiffs" if you don't like that don't use it]

While Defendants argue that "the authorizations that Defendants proposed are based on, and in fact are nearly identical to, those used in another multi-district litigation," a review of authorizations in other multi-district litigation reveals this approach to be an outlier. Limitations in scope *based on both time and subject matter* are common throughout major product liability MDLs. Several recent examples of limited authorizations include those used in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, MDL No. 2592, *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740, and *In re: Proton-Pump Inhibitor Products Liability*

Judge Gary R. Jones
March 23, 2020

*Litigation*, MDL No. 2789.[7] This supports Plaintiffs' argument that in fact, parties in other litigations take care in crafting and negotiating authorizations which meet the needs of parties in that particular litigation, rather than taking a *carte blanche* approach.

Defendants, rather than making any concession with regard to the scope and scale of their authorizations, argue that each Bellwether Plaintiff must challenge each and every individual subpoena.[8] While there may be reason to challenge the scope of particular subpoenas of third parties, to the extent the authorizations seek information for all time without any limitation this objection is common to every request 3M will make. Accordingly, judicial economy is best served by avoiding time consuming motion practice in each and every subpoena of issues that can be addressed and resolved by a single prophylactic, reasonable limitation now. To do otherwise injects unnecessary delay and duplicative motion practice into the litigation, eroding time and resources of the Court and the parties. To the extent that through the course of discovery on a particular case specific Bellwether Plaintiff, the relevance of (a) records pre-dating a specific Bellwether Plaintiff's enlistment; and/or (b) records related to tax/IRS information, insurance information, educational information, or employment records, become apparent and are not duplicative, Bellwether Plaintiffs agree to readdress Defendants' perceived need for such authorizations at that time on a case-by-case basis.

For all these reasons and those more specifically set out *infra*, Plaintiffs request that the scope of the authorizations in this case be appropriately limited and reduced from all records for all times.

*Medical Record Authorizations*

As stated otherwise herein, Bellwether Plaintiffs generally object to the scope of Defendants proposed medical authorizations to the extent that they are overbroad, burdensome, fail to contain any limitations as to time, and seek irrelevant highly confidential and privileged medical and mental health records that pre-date Plaintiffs' military service. Defendants' proposed authorizations far exceed the permissible scope of discovery by seeking, among other things, *carte blanche* access to all medical and mental health records from Plaintiffs' birth onward.

Such broad and unfettered discovery into matters clearly beyond the relevance of the claims and defenses at issue in this case should be restricted.

---

[7] *See* Exhibit B, Dkt. No. 895, *In Re: Xarelto (Rivaroxaban) Products Liability Litigation,* MDL No. 2592*;* Exhibit C, Dkt. No. 236-1, *In re: Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740, and Exhibit D, *In re: Proton-Pump Inhibitor Products Liability Litigation*, MDL No. 2789.

[8] While Defendants seek records and documents from Plaintiffs without limitation in scope or time, they have insisted on such limitations in their own discovery responses: "Defendants object to Plaintiffs' Requests to the extent that they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, ***including without limitation, as to subject matter and/or time period***, and where compliance with specific requests would be unreasonably difficult, as well as prohibitively expensive or time-consuming. Defendants further object to Plaintiffs' Requests to the extent that they seek documents and materials that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Exhibit I, 3M'S Answers and Objections to Plaintiffs' Second Set of Requests for Production (emphasis added).

6

Judge Gary R. Jones
March 23, 2020

As stated above, Defendants' proposed authorizations "which have no time limitation, are exceedingly broad and burdensome on their face." *Scott*, 277 F.R.D. at 478. Defendants seek authorizations from Plaintiffs to obtain highly sensitive information that is unlimited in time or scope, rendering the requests overbroad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Further, as each Plaintiff was deemed medically acceptable per DoD and Army medical requirements, any record or document—other than hearing tests—from prior to each Plaintiffs' enlistment or appointment has no relevance to the noise induced hearing loss suffered by the Plaintiff while in service. Defendants' attempts to obtain medical and mental health records from prior to Plaintiffs' time in the service is nothing more than an impermissible fishing expedition solely intended to harass or embarrass the Plaintiffs. *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

Florida law protects sensitive highly confidential and privileged medical and mental health records from disclosure. Under Florida law,

> A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship. *See Alexander v. Smith*, 2015 WL 12942496 (N.D. Fla. Dec. 18, 2015) (quoting Fla. Stat. § 90.503(2)).

Accordingly, as Bellwether Plaintiffs' mental health is not in dispute in this litigation, there is a presumption that the mental health records are privileged and not subject to disclosure. *See Quinney v. Quinney*, 890 So.2d 407, 409 (Fla. 5th DCA 2004) ("[F]or matters to come within the protection of section 90.503, they must be confidential and made for the purpose of diagnosing or treating a mental or emotional condition."). The party seeking the privileged materials—Defendants here—has the burden of proving the applicability of an exception to the rule. *See Brown v. Montanez*, 90 So.3d 982, 986 (Fla. 4th DCA 2012). Here, no such exception applies and the mental health records should be protected as they are privileged because Bellwether Plaintiffs' mental or emotional condition(s) as described within any mental health records are not at issue in this litigation. *See Alexander v. Smith*, 2015 WL 12942496 (N.D. Fla. Dec. 18, 2015); *Viveiros v. Cooper*, 832 So.2d 868, 869 (Fla. 4th DCA 2002) (A party "cannot pierce the privilege by filing a claim that makes an issue of the [claimant's] mental health."); *see also Bandorf v. Volusia Cty. Dep't of Corr.*, 939 So.2d 249, 251 (Fla. 1st DCA 2006) (emphasis in original) ("[T]he section 90.503(4)(c) exception applies only when the patient-rather than some party who opposes the patient in litigation-places his mental or emotional condition in issue.")). Thus, the exception to the psychotherapist-patient privilege is not applicable in this case, and Bellwether Plaintiffs mental health should remain privileged and protected, and similarly, Plaintiffs' medical records pre-dating their military service should remain protected and not be subject to discovery.

Judge Gary R. Jones
March 23, 2020

Defendants attempts to require a Bellwether Plaintiff to sign carte blanche authorizations for disclosure of all mental health and medical records through the entirety of Plaintiffs lives is patently improper and impedes upon various state and federal laws. This Court's requirement of the same would have serious implications over the 4th and 14th Amendments to the U.S. Constitution regarding right to privacy. Further, under Florida law "[a] patient's medical records enjoy a confidential status by the right to privacy in Article I, section 23 of the Florida Constitution." *Alexander* at 5; *Poston v. Wiggins*, 112 So.3d 783, 785 (Fla. 1st DCA 2013) (citing State v. Johnson, 814 So.2d 390, 393 (Fla. 2002)). "The trial court is charged with balancing the right to broad discovery against an individual's competing privacy interests to prevent an undue invasion of privacy." *Id.* (citing *Barker v. Barker*, 909 So.3d 333, 338 (Fla. 2d DCA 2005)). At this point in the litigation, Defendants request for carte blanche medical and mental health authorizations should be denied as Defendants have failed to show any relevance or reason to believe that Bellwether Plaintiffs' mental health records or mental records from Plaintiffs' youth are relevant to Bellwether Plaintiffs' noise induced hearing loss associated with version 2 of 3M's Combat Arms Earplugs. *Alexander* at 5; *See Micro Motion, Inc. v. Kane Steel Co., Inc*., 894 F.2d 1318, 1326 (Fed. Cir.1990) ("requested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation"); *id*. at 1327 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.").

Plaintiffs agree to provide medical authorizations that contain a narrowly tailored time and scope. *See* Exhibit A. Specifically, Plaintiffs agree to sign authorizations allowing Defendants to obtain Plaintiffs' medical records from the time of Plaintiffs' joining the armed services through current. Defendants' proposed authorizations far exceed the permissible scope of discovery by seeking, among other things, *carte blanche* access to all medical and mental health records from Plaintiffs' birth onward. Such broad and unfettered discovery into matters clearly beyond the relevance of the claims and defenses at issue in this case should be restricted.

*Insurance and Tax Authorizations*

Plaintiffs' tax and/or insurance records have only tangential relevance to any fact of consequence in this case, and they are not the only or the best source of such information. *In re Air Crash near Clarence Center, New York, on February 12, 2009*, 2013 WL 5936975, \*6 (W.D.N.Y.,2013). The information that Defendants seek and purportedly expect to ascertain from such records including information on wage loss and loss of earning capacity, can be determined through other less burdensome means— for example, the Bellwether Plaintiffs providing their W-2s for an agreed upon limited time period. Further, this requested authorization is premature and/or wholly irrelevant as many plaintiffs may not make a claim for lost earnings or wages. However, to the extent that plaintiffs do make any such claim, plaintiffs will produce evidence within their possession, custody, or control in support of such claim in order to meet their burden of proof.

Most courts acknowledge that public policy concerns are raised when a party asks for tax returns. *Camp v. Correctional Medical Services*, No. 2:08cv227–WKW(WO), 2009 WL 424723 \* 2 (M.D.Ala. Feb. 17, 2009); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc*., No. 06–20976–CIV, 2008 WL 728540 \* 3 (S.D.Fla. Mar.17, 2008). Additionally, many courts have taken steps

Judge Gary R. Jones
March 23, 2020

to protect the confidentiality of tax returns. *See EEOC v. Dimare Ruskin, Inc*., No. 2:11–cv–158–FtM–36SPC, 2011 WL 3715067 at 4 (M.D.Fla. Aug.24, 2011); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 728540 at 3.

As Plaintiffs' tax records are irrelevant and the information sought by Defendants can be obtained from other less burdensome and intrusive means, the Court should deny Defendants request for tax authorizations.

Similarly, Defendants attempts to procure carte blanche unlimited authorizations as to Plaintiffs insurance records should be denied. Defendants seek Plaintiffs insurance information seemingly on the ground that they anticipate such records to contain evidence, or lack thereof, of Plaintiffs' injuries. However, information related to Plaintiffs' injuries can be found within Plaintiffs' medical records. As such, insurance records are duplicative, and the information sought can be obtained from less burdensome and through less intrusive means.

There exists no arguable reason that Plaintiffs' tax and/or insurance records are otherwise relevant.

*Educational Authorizations*

The educational authorizations requested by Defendants are wildly overbroad in scope, both in terms of time frame and subject matter. The current draft of Defendants' educational authorizations seek any and all school records including, but not limited to, test results, test scores, report cards, or other school grading material, attendance records, physicals and other health-related records, including but not limited to any physicians, nursing or allied health professional reports, records or notes, that may be in the custodian's possession. This authorization would cover for example, highly sensitive information about a Bellwether Plaintiffs' family that might have been disclosed to a guidance counselor, irrelevant information such as a Bellwether Plaintiff's grades from an elementary school science class and information about the number of sick days a Bellwether Plaintiff may have taken as a middle school student. Plaintiffs object to this authorization in its entirety and request that it be limited in scope and applicable to the past 10 years or up until the Plaintiff left the military, whichever is shorter. This is consistent with the limitations in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, MDL No. 2592, *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740, and *In re: Proton-Pump Inhibitor Products Liability Litigation*, MDL No. 2789.

Defendants have refused to place any limitation on these educational authorizations, and claim that this broad request will likely contain information about whether the Bellwether Plaintiffs "have any training, medical or otherwise, that would inform their use of hearing protection devices, including the CAEv2." Notably, Defendants cite no evidence in support of this argument. Defendants' suggestion that any of the Bellwether Plaintiffs would have been instructed at any point in their educational career to insert the CAEv2 is meritless.

Defendants further argue that educational records may inform the Bellwether Plaintiffs' claims for lost wages. First, Defendants argue that educational aptitude might somehow be linked

9

Judge Gary R. Jones
March 23, 2020

to a claim for hearing loss, because "if a Bellwether Plaintiff performed well in classes where it was necessary to listen carefully to the teacher and interact with other students, that information is certainly relevant." Purportedly this leads to the converse conclusion: that because a Bellwether Plaintiff struggled as a student, it somehow bears on whether they were experiencing hearing loss as a child. This speculative and conclusory link between a Bellwether Plaintiff's elementary school grades and the hearing loss they experienced as an adult strains credulity. Even assuming for the sake of argument that any Bellwether Plaintiff experienced hearing loss as a child, any such hearing loss that affected their ability to hear as an adult would have been recorded on an entrance audiogram upon entering the military. In addition, Defendants will have the opportunity to ask each Bellwether Plaintiff whether they had difficulty hearing their elementary school teachers during their individual core depositions. To request the entirely of a Bellwether Plaintiff's educational history dating to their elementary school is wildly overbroad and unnecessary.

Defendants arguments in this regard also include the claim that educational achievement is "an indication of one's ability or desire to succeed in the future, including success in the workplace." Plaintiffs submit that their ability or desire to succeed should be measured by their achievements as adults, including their desire to serve their country in the armed services, not by their academic achievements in grade school. . To argue that a Bellwether Plaintiff's lost wage claim should be determined by that person's educational pursuits dating back to elementary school is inappropriate. Again, Defendants will have ample opportunity to question Bellwether Plaintiffs as to their educational history during their depositions. To require signed releases authorizing disclosure of educational records including report cards and attendance records dating back to childhood is inappropriate.

*Employment Authorizations*

The employment authorizations requested by Defendants in this matter authorize an employer to produce, with no temporal limit:

> [C]opies of all applications for employment; resumes; records of all positions held; job descriptions of positions held; wage and income statements and for compensation records; wage increases and decreases; performance evaluations, reviews and reports; transfers, statements and comments of fellow employees; all documents relating to discipline including warnings, **reprimands**, suspensions, terminations, and all other **forms of discipline**; **attendance records**; IRS Form W-2s, worker's compensation files; all medical records, x-rays and test results; any physical examination records; all documents relating to my absences, illnesses and injuries; any records pertaining to claims made relating to health, disability or accidents in which I was involved including correspondence, reports, claim forms, questionnaires, records of payments made to me or on my behalf; and any other records relating to my employment and for in my personnel file.[9]

Plaintiffs objected to this authorization's scope, and requested that it be limited in scope and applicable for no more than work background for only the past 10 years or up until the Plaintiff

---

[9] *See* Exhibit E, attached (emphasis added).

Judge Gary R. Jones
March 23, 2020

left the military, whichever is shorter. Defendants have not agreed to place any limitation on these authorizations. Plaintiffs submit that a time limit on the authorizations required of Bellwether Plaintiffs is the most appropriate method for ensuring that the records produced are relevant. Plaintiffs again point out that, because of the *Touhy* process, Defendants in this case will have access to years' worth of personnel records for Bellwether Plaintiffs: which are essentially employment records produced while these Plaintiffs were in military service. In addition, the categories of information sought by Defendants are clearly a fishing expedition designed to obtain information which has no relationship to the parties claims or defenses. Defendants have made no showing of the manner in which, *inter alia*, disciplinary records from a high school part time job might be meaningful in adjudicating a Bellwether Plaintiff's hearing loss claim. Bellwether Plaintiffs

To the extent that Defendants allege that a plaintiff may have sustained hearing damage in a professional setting prior to military service, Defendants already have access to extensive records regarding any pre-existing hearing damage in the form of the Bellwether Plaintiffs' military entrance audiological examinations - obtained through the *Touhy* process. Again, Defendants will have ample opportunity to explore the issue of medical causation with a myriad of other discovery tools, including but not limited to medical records, written interrogatories, depositions, Touhy records, census information, and bellwether selection sheets. Plaintiffs are willing to agree to limited employment authorizations limited in scope to the past ten years.

*Conclusion*

For the reasons outlined above, Plaintiffs contend that Defendants' requested *carte blanche* authorizations as to Plaintiffs' highly confidential and privileged: (i) medical records, (ii) disability records, (iii) tax/IRS records, (iv) employment records, (v) insurance records, and (vi) educational records, are overbroad, burdensome, and seek information that is not relevant. Specifically, Bellwether Plaintiffs wholly oppose authorizations allowing Defendants to obtain privileged and confidential tax/IRS records, employment records, insurance records, and educational records. However, in the event that this Court finds, either in whole or in part, such authorization topics relevant and the information sought discoverable on a case-by-case basis, Bellwether Plaintiffs respectfully request that the Court implement the narrowly tailored authorizations that Plaintiffs have prepared and attached as Exhibit A.

Respectfully submitted,

/s/ Shelley V. Hutson
Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Judge Gary R. Jones
March 23, 2020

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
dbuchanan@seegerweiss.com
cseeger@seegerweiss.com

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | MDL No. 3:19-md-2885 |
| *This document relates to:* *WILLIAM WAYMAN v. 3M Company, et al.,* | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| | Case No. 7:20-cv-00149-MCR-GRJ |

**PLAINTIFF WILLIAM WAYMAN'S OBJECTIONS**
**TO DEFENDANT 3M'S SECOND INTERROGATORIES TO PLAINTIFF**

TO:   Defendant 3M Company ("3M"), and through its Attorneys of Record: Kimberly O. Branscome, Kirkland & Ellis LLP, 2049 Century Park East, Los Angeles, CA 90067; Mark Nomellini, Kirkland & Ellis LLP, 300 North LaSalle  Chicago, IL 60654; and Mike Brock, Kirkland & Ellis LLP, 300 North LaSalle  Chicago, IL 60654.

COMES NOW, Plaintiff, William Wayman, through the undersigned attorney, and

in accordance with the Federal Rules of Civil Procedure, submits the following Plaintiff's

Objections & Answers to Defendant 3M's Second Set of Interrogatories to Plaintiff. As

discovery in this matter is ongoing, Plaintiff reserves the right to amend, supplement,

modify, or change his/her responses.

Dated:  April 13, 2020

Respectfully Submitted,

**SEEGER WEISS**
BY:
/s/ Christopher A. Seeger
Christopher A. Seeger
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
cseeger@seegerweiss.com

1

## GENERAL OBJECTIONS

1.   Plaintiff objects to Defendants' Second Set of Interrogatories insofar as they exceed the permissible number of Interrogatories in this case per Federal Rule of Civil Procedure 33, and/or any agreements between the parties.

2.   Plaintiff objects to Defendant's Second Set of Interrogatories insofar as they call for information or documents subject to a claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine, or the investigative privilege. Plaintiff objects to each Interrogatory that seeks to compel disclosure of information or documentation that is confidential, proprietary, or subject to a confidentiality agreement with third parties.  The inadvertent disclosure of any privileged information shall not constitute or be deemed to be a waiver of any applicable legal privilege with respect to such document, materials, or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Plaintiff objects to Defendant's Interrogatories to the extent they seeks the production of written or electronic communications made by the attorneys representing the Plaintiff in this lawsuit relating to matters of common interest between the Plaintiffs, which are protected from disclosure. The privilege extends to communications between parties who are about to be in the same lawsuit when those communications are made in anticipation of litigation. In the event Defendants receive information that they believe to have been inadvertently produced and/or is otherwise privileged, Defendants shall immediately notify Plaintiff of such and shall destroy all copies of such information within 14 days. Plaintiff reserves the right not to disclose any information that is or may be considered privileged and protected from discovery.  Plaintiff objects to the Interrogatories insofar as they purport to require Plaintiff to furnish information or documentation regarding privileged documents and communications beyond such information as may be required by the Court in determining the privileged status of the documents.

3.   Plaintiff submits these responses and objections without conceding the relevancy or materiality of the subject matter of any Interrogatory. Plaintiff reserves the right to contest any such characterization as inaccurate.   Plaintiff also objects to Defendants' Interrogatories to the extent they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation. These responses and objections are made on the basis of information now known to Plaintiff and pursuant to the documents within his current possession, and are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. Plaintiff's investigation, discovery, and preparation for proceedings are continuing and all answers are given without prejudice to Plaintiff's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof. Plaintiff likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of the information contained in these responses and objections; and (2) discovery requests relating to these objections and responses.

4.   Plaintiff objects to each Interrogatory to the extent that such Interrogatory requests or calls for information: (1) not in Plaintiff's personal knowledge and/or

possession, custody, and/or control; (2) already in Defendant's possession or previously made available and/or submitted to Defendants; (3) already contained in and/or previously submitted to Defendants via other means, including information contained in and submitted via the Plaintiff's Census Questionnaire or Bellwether Selection Sheet; or (4) which are not relevant to the subject matter of this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence.

5.   Plaintiff objects to Defendant's Second Set of Interrogatories to the extent that any interrogatory presupposes that information within Plaintiff's personal knowledge is or was contained or commemorated in a written document or record, many of the matters inquired into may not normally be contained in documents or records, and as such, as far as Plaintiff is aware no documents exist, and Plaintiff objects to the extent any interrogatory requires Plaintiff to identify any document not presently known to Plaintiff or in existence, outside of Plaintiff's personal knowledge, and/or not within Plaintiff's possession, custody, or control.

6.   Plaintiff generally objects to all definitions and instructions within Defendant's Second Set of Interrogatories to the extent the same are overbroad, unduly burdensome, vague, ambiguous and unclear, and further that they lack specificity and/or require application of definitions or terminology not reasonably utilized or understood by Plaintiff; and to the extent that the same are onerous, unreasonable, and seek information outside the permissible scope of discovery or not otherwise within Plaintiff's personal knowledge or otherwise within Plaintiff's possession, custody, or control. Plaintiff objects to Defendant's definition of "identify" to the extent that the same is burdensome and overly broad.

7.   Plaintiff objects to the Interrogatories to the extent they seek a substantive response prior to the May 15, 2020 deadline articulated in PTO 28, Dkt. 1009 (Feb. 25, 2020), or seek information beyond the scope of any order limiting discovery, including but not limited to Judge Jones's Order at Dkt. 1065 (March 26, 2020).

8.   All of Plaintiff's answers below are subject to each of these general objections, and are designated Confidential. Plaintiff reserves the right to amend and/or supplement any answers given herein. Specifically, Plaintiff reserves the right to amend and/or supplement these answers upon receipt of any records requested and/or released from the Department of Veterans' Affairs and/or the Department of Defense and/or otherwise are received by counsel and reviewed by Plaintiff.

**PLAINTIFF'S OBJECTIONS TO**
**DEFENDANTS' SECOND SET OF INTERROGATORIES**

**INTERROGATORY NO. 71:**

Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who diagnosed you with the condition(s) and the date of the diagnosis.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitation as to time or scope, and that it fails to define "mental health" or "condition" or "diagnos[ed]." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this Interrogatory to the extent it seeks a response or information beyond that required by Judge Jones during the Parties' March 24, 2020 hearing, or in the Court's corresponding order, Dkt. 1065 (March 26, 2020), or beyond the scope of any other order, past or future, limiting discovery. Plaintiff objects to this Interrogatory to the extent it seeks a substantive response prior to the May 15, 2020 deadline articulated in PTO 28, Dkt. 1009 (Feb. 25, 2020).  Upon and subject to the resolution of Plaintiffs' General Objections above and Specific Objections herein, Plaintiff intends to respond to this Interrogatory as directed by the Court, on May 15, 2020.  *See* PTO 28.

**INTERROGATORY NO. 72:**

State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the expert testimony You intend to offer.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitations as to time or scope, and fails to define "expert" or "mental anguish" or "distress" or "loss of enjoyment of life" or "mental health condition" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this Interrogatory to the extent it seeks a response or information beyond that required by Judge Jones during the Parties' March 24, 2020

hearing, or in the Court's corresponding order, Dkt. 1065 (March 26, 2020), or beyond the scope of any other order, past or future, limiting discovery. Plaintiff objects to this Interrogatory to the extent it seeks a substantive response prior to the May 15, 2020 deadline articulated in PTO 28, Dkt. 1009 (Feb. 25, 2020). Upon and subject to the resolution of Plaintiffs' General Objections above and Specific Objections herein, Plaintiff intends to respond to this Interrogatory as directed by the Court, on May 15, 2020. *See* PTO 28.

**INTERROGATORY NO. 73:**

State whether You intend to offer any evidence at trial related to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed. If so, please Describe the evidence you intend to offer.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this interrogatory on the ground that it is overbroad, vague, ambiguous and unclear in part as it fails to contain any reasonable limitations as to time or scope, and fails to define "mental anguish" or "distress" or "loss of enjoyment of life" or "mental health condition" or "diagnosed." *See* Fed. R. Civ. P. 26(b)(1). Plaintiff objects to this Interrogatory to the extent it seeks a response or information beyond that required by Judge Jones during the Parties' March 24, 2020 hearing, or in the Court's corresponding order, Dkt. 1065 (March 26, 2020), or beyond the scope of any other order, past or future, limiting discovery. Plaintiff objects to this Interrogatory to the extent it seeks a substantive response prior to the May 15, 2020 deadline articulated in PTO 28, Dkt. 1009 (Feb. 25, 2020). Upon and subject to the resolution of Plaintiffs' General Objections above and Specific Objections herein, Plaintiff intends to respond to this Interrogatory as directed by the Court, on May 15, 2020. *See* PTO 28.

**INTERROGATORY NO. 74:**

Please Identify all education institutions at which you are or have been enrolled.

**ANSWER:**

Plaintiff objects on the ground that pursuant to Federal Rule of Civil Procedure 33(a) and any agreements between the parties, Defendant has exceeded the allowable number of interrogatories. Plaintiff objects to this Interrogatory to the extent it seeks a response or information beyond that required by Judge Jones during the Parties' March 24,

2020 hearing, or in the Court's corresponding order, Dkt. 1065 (March 26, 2020), or beyond the scope of any other order, past or future, limiting discovery, including by seeking information on educational institutions Plaintiff did not attend within the last ten years or since his discharge from the military. Plaintiff objects to this Interrogatory to the extent it seeks a substantive response prior to the May 15, 2020 deadline articulated in PTO 28, Dkt. 1009 (Feb. 25, 2020).  Upon and subject to the resolution of Plaintiffs' General Objections above and Specific Objections herein, Plaintiff intends to respond to this Interrogatory as directed by the Court, on May 15, 2020.  *See* PTO 28.

EXHIBIT H

**From:** Tevenia Jacobs ███████████████████████
**Date:** April 17, 2020 at 10:33:02 AM PDT
**To:** "Nomellini, Mark J." <mnomellini@kirkland.com>, "Judge David R. Herndon"
███████████████████ "*cseeger@seegerweiss.com" <cseeger@seegerweiss.com>, Shelley Hutson
<SHutson@triallawfirm.com>, "Branscome, Kimberly Olvey" <kimberly.branscome@kirkland.com>, "Brock,
Mike" <mike.brock@kirkland.com>, Bryan Aylstock <BAylstock@awkolaw.com>
**Cc:** Casey Rodgers ███████████████████ Gary Jones ███████████████████
**Subject: [EXT] RE: VA Records Requests for the 1500+ plaintiffs**


Good afternoon, all:

Judge Rodgers has considered Defendants' request to submit letter briefing on the issue of PTO 25's
requirement that initial bellwether plaintiffs produce mental health and substance abuse information
contained in their VA records, and has declined to accept briefing on the issue.  As you may recall, this
requirement was included in PTO 25 based on Judge Rodgers' rejection of plaintiffs' relevance argument
during a telephone conference and also the fact that Mr. Tierney, the VA lawyer we met in DC,
expressed that the VA preferred a broader request for efficiency reasons.   There was no discussion of
privilege and waiver with Judge Rodgers before entry of PTO 25.  Also, as you know, after PTO 25 was
entered, Judge Jones conducted a hearing on plaintiffs' third-party (private) healthcare authorizations,
during which the issues of privilege and waiver were discussed.  The parties then had the opportunity to
and did submit their written positions to Judge Jones on the issue, following which Judge Jones entered
an order rejecting defendant's request, albeit consistent with PTO 25, to require plaintiffs to produce
their mental health and substance abuse treatment records as a part of their healthcare provider
authorizations.

In Judge Rodgers' view, PTO 25 and Judge Jones' order on this issue cannot be reconciled in light of the
law on waiver, which Judge Rodgers believes Judge Jones analyzed correctly.  There is no appreciable
distinction between authorizations to the VA for plaintiffs' healthcare records and authorizations to
private third-party healthcare providers on the issue of waiver of the confidentiality privilege.  Judge
Rodgers intended to revisit the issue had there been a timely objection to Judge Jones' order but, given
that no timely objection has been filed, she plans to amend PTO 25 consistent with Judge Jones'
ruling on the issue but will permit an objection to the amendment to be made on the record for appellate
purposes, without briefing.  As noted, the parties had the opportunity to brief the issue to Judge Jones
and also had the opportunity to object to his ruling.

Although not the impetus for the change, Judge Rodgers notes that the change will satisfy the VA
programmers who are the ones actually having to pull the plaintiffs' records and, in the end, will result
in a more efficient VA process.


Best,
Tevenia


**From:** Nomellini, Mark J. <mnomellini@kirkland.com>
**Sent:** Thursday, April 16, 2020 6:14 PM

**To:** Judge David R. Herndon ████████████████      *cseeger@seegerweiss.com
<cseeger@seegerweiss.com>; Shelley Hutson <SHutson@triallawfirm.com>; Branscome, Kimberly Olvey
<kimberly.branscome@kirkland.com>; Brock, Mike <mike.brock@kirkland.com>; Bryan Aylstock
<BAylstock@awkolaw.com>
**Cc:** Casey Rodgers ██████████  ██████████████████  Tevenia Jacobs
████████████████████
**Subject:** RE: VA Records Requests for the 1500+ plaintiffs

Judge Herndon,

Thank you.  If you are available, could we schedule a call with you and plaintiffs' leadership tomorrow to
discuss?

Also, defendants respectfully request leave to submit a letter to Judge Rodgers on this topic on Monday,
April 20.

Regards,
Mark

**From:** Judge David R. Herndon <████████████████████████>
**Sent:** Thursday, April 16, 2020 1:03 PM
**To:** *cseeger@seegerweiss.com <cseeger@seegerweiss.com>; Shelley Hutson
<SHutson@triallawfirm.com>; Branscome, Kimberly Olvey <kimberly.branscome@kirkland.com>; Brock,
Mike <mike.brock@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Bryan Aylstock
<BAylstock@awkolaw.com>
**Cc:** Hon. Casey Rodgers <█████████████████████  ██████████  Tevenia Jacobs
██████████████████████
**Subject:** [EXT] VA Records Requests for the 1500+ plaintiffs

You will recall previous conversations about these record requests and some language which
specifies what records are requested.  In that discussion, the parties preferred broader language
consistent with the meeting with the govt personnel.

Now, having been contacted by the programmers who do the records searches, Jacqui Snead
requests the following language, meant by the programmers to facilitate their records search and
improving efficiency.

The language, which would go in the "Other" section at the bottom of page 1 of the form, which
has been requested is:
All medical records excluding mental health and substance abuse treatment records and entire
compensation and pension claims file (not education or mortgage records.

Judge Rodgers is aware that this would require a change in PTO 25.

Please let me know as soon as possible if there is any disagreement with this language.

Thank you
Be well
Dave Herndon

Hon. David R. Herndon (ret.)
Herndon Resolution LLC

P.O. Box 897
Edwardsville, IL 62025
618-973-0778

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT I





## My Health*e*Vet

# *Personal Information Report*

---

**\*\*\*\*\*\*\*\*\*\*\*\*\*CONFIDENTIAL\*\*\*\*\*\*\*\*\*\*\*\*\***
Produced by the VA Blue Button (v18.3)
30 Oct 2019 @ 1415

This summary is a copy of information from your My Health*e*Vet Personal Health Record. Your summary may include:

- information that you entered (self reported)
- information from your VA health record
- your military service information from the department of defense (DoD)

\*\*\*Note: Your health care team may not have all of the information from your Personal Health Record unless you share it with them. Contact your health care team if you have questions about your health information.\*\*\*

Key:  Double dashes (--) mean there is no information to display.

---

**Name:** ▇▇▇▇▇▇▇                         **Date of Birth:** ▇▇▇▇▇

PHONE: ▮▮▮▮▮▮

History/Assessment  patient is having increasingly severe bilateral shoulder pain. He had previous surgery. He's had physical therapy without much benefit.
He's been on naproxen 500 mg twice a day without much benefit. X-rays of been
obtained and bilateral MRIs are complete.

Diagnosis:  Bilateral MRIs shows tendon inflammation in the bilateral supraspinatus tendons and arthritis in the before meals joint.

Plan: I discussed this finding with the patient on the phone and he isn't in

agreement with orthopedic consultation and prefers to use local fee services. An

orthopedic consult has been submitted.

Time spent with patient:  5-10

/es/ ▮▮▮▮▮▮
PHYSICIAN
Signed: 06/17/2019 16:49

| | |
|---|---|
| **Date/Time:** | 07 Jun 2019 @ 1502 |
| **Note Title:** | CO-BH BIOPSYCHOSOCIAL ASSESSMENT (D) |
| **Location:** | VA Heartland-West VISN 15 |
| **Signed By:** | ▮▮▮▮▮▮ |
| **Co-signed By:** | ▮▮▮▮▮▮ |
| **Date/Time Signed:** | 10 Jun 2019 @ 1234 |

**Note**

 LOCAL TITLE: CO-BH BIOPSYCHOSOCIAL ASSESSMENT (D)
STANDARD TITLE: MENTAL HEALTH RISK ASSESSMENT SCREENING NOTE
DATE OF NOTE: JUN 07, 2019@15:02    ENTRY DATE: JUN 07, 2019@15:02:43
   AUTHOR: ▮▮▮▮▮▮    EXP COSIGNER:
   URGENCY:              STATUS: COMPLETED

Initial Evaluation
DATE: JUN 07, 2019

PATIENT: ▮▮▮▮▮▮
GENDER: MALE
AGE: 36

RACE: WHITE
DATE OF BIRTH: █████████
SERVICE CONNECTION: ████

NATURE OF ENCOUNTER: Scheduled Intake
CPT CODE: 90791 Psychiatric Diagnostic Evaluation
LENGTH OF SESSION: 60 minutes

REASON FOR REFERRAL: Mr. ████ presents for BH treatment as a transfer from
██████████ his former VA therapist. He carries a SC diagnosis of PTSD that
was recently reduced in severity (from 100% to 50%). This unexpected
modification is what ultimately prompted pt to re-engage in BH care at this
time.

Reviewed limits of confidentiality with veteran and he verbalized understanding.

MENTAL STATUS/BEHAVIORAL OBSERVATIONS:
Veteran was casually dressed in setting/weather appropriate attire and he
demonstrated good hygiene. He was alert, pleasant and cooperative, in NAD, and
maintained steady eye contact. No problems with concentration or attention were
noted. His mood was euthymic and he demonstrated full-range of mood
congruent affect. His speech was WNL for rate, volume, and fluency. His thoughts

were logical, goal-directed, and without evidence of thought disorder. There was

no evidence of perceptual disturbances, nor signs consistent with mania. His
insight and judgment were grossly intact and he was oriented in all spheres.

RISK ASSESSMENT:
Veteran denied current SI/HI, although his hx is positive for a self-aborted
suicide attempt with a gun (see initial CONSULT dated Jan 31, 2019). When asked
about that incident, he indicated that it occurred "several years ago"
and that
he has not struggled with such thoughts since that time. He now readily cites
his wife, children, and his faith as significantly protective.

Risk factors include the chronicity of his sx, a h/o violence, and a h/o alcohol

misuse.

Pt did not appear to be at imminent risk to harm self or others at this time,
and remains sustainable as an outpatient.

EXPLOITATION: This veteran denied any current exploitation.

PRESENTING CONCERN/RELEVANT HISTORY: Pt presents to establish BH care services
with this provider following his former therapist's resignation. When asked
to

summarize his primary concerns, he noted that he continues to struggle with "anger" and "anxiety." This is consistent with the report he gave Ms. Thomas in January 2019.

He was previously diagnosed with PTSD "several years ago" after which he engaged in BH treatment with both medication management and psychotherapy. He received such treatment from a variety of sources, including a private (non-VA) practitioner in Springfield, MO for which pt was eventually required to pay a nominal ($15.00) co-pay. Not wanting to do so, he transferred his care to Truman

VA, but the travel time presented a significant barrier to his f/u care and he eventually stopped going. He also reported that trials of various medications were not beneficial to him in that he experienced unwanted SE, including persistent nausea. He stated, "I just didn't like how they made me feel, so I stopped taking them."

He then proceeded to explain that during a recent re-evaluation for his VA disability, a private (non-VA) practitioner from Ozark, MO recommended a reduction in his SC disability rating "even though the first thing he said to me was that he knew nothing about military PTSD." Mr. Beal unsuccessfully appealed that decision after which a legal advocate suggested that the discontinuation of BH care may have influenced the VA's decision to uphold the ruling. As such, he reiterated that his primary motivation for re-establishing BH care at this time is to reinstate his 100% disability rating.

With regard to pt's diagnosis of PTSD, he explained that he was deployed to Iraq for 1 year during which time he performed road clearance duties and "saw a lot of things that bothered me." For the purposes of today's interview, I did not ask him to expand on those "things." He also reported that "I got blown up a couple of times," though he clarified that he was not diagnosed with a TBI.

Currently, he primarily endorses sx of arousal, including irritability, hypervigilance in crowded venues, and an exaggerated startle response. He manages those sx primarily via avoidance, noting that "I have learned to just walk away before I make a bad decision." He clarified that he formerly engaged in significant alcohol abuse as a means of self-medicating. Doing so frequently led to physical altercations, which occurred both in and out of a military setting.

With regard to his anxiety sx, he reported a previous h/o "panic attacks," but
observed that "those haven't happened for quite a while now."

With regard to his reported anger, he indicated that he primarily gets annoyed with "people being stupid." He shared several examples of this "stupidity,"
which ultimately prompted him to walk off a variety of jobs. As such, he reported his average length of employment stability as approximately 6 months. He also endorsed "getting irritated with the kids," which sometimes generates
marital conflict within his home.

MENTAL HEALTH Hx: Summarized above in HPI. Pt has not actively engaged in BH treatment for "several years."

SUBSTANCE USE/ADDICTIVE BEHAVIOR Hx:

    Alcohol: Pt endorsed a prior h/o alcohol misuse dating back to his military service and beyond. He stated, "I was basically a full-blown alcoholic
the whole time I was in the service," but eventually modified his habits when
his current wife effectively gave him an ultimatum in/around 2011/2012. He reported that while away on drill, he engaged in excessive alcohol consumption with his fellow soldiers. He and his wife exchanged a series of text messages during which "I got stupid and belligerent . . . she told me it was either her
and the kids or the alcohol." Choosing the former, he significantly cut back on
his alcohol use at that time, and reported complete abstinence since "September
or October of 2018." He cited his faith as another reason for d/c that practice.
Note that pt's family hx is positive for alcoholism, as well as other substance
use.
        Illicit Drugs: Denied
        Tobacco: Needs further assessment
        Caffeine: Unremarkable

NUTRITION ASSESSMENT: Pt denied any clinical concerns about this aspect of his functioning. He currently has adequate resources to meet his/his family's needs.

RELEVANT MEDICAL Hx: Pt's medical hx is positive for plantar fasciitis, moderate
asthma (currently controlled), bilateral hearing loss, h/o abnormal liver function, GERD, IBS, LBP and chronic shoulder pain (s/p surgical reconstruction of the right shoulder.

PAIN ASSESSMENT: Pt endorsed chronic shoulder and LB pain for which he occasionally takes naproxen. He denied this as a primary area of clinical concern at this time.

MILITARY Hx: Pt enlisted in the US Army in 2005 and was stationed in HI from 2006-2009. He concurrently served a year-long deployment to Iraq in 2009 during which time he was exposed to combat within the context of his route clearance duties. As noted, he sustained 2 IED explosions, one of which rendered him unconscious for an unknown period of time. He received an honorable discharge after
completing his first term of enlistment in 2009. MST denied.

After returning to MO, he engaged in a USAR unit in Springfield. Disliking his leadership, however, he disengaged from that organization after approximately 2 years of additional/reserve service.

LEGAL Hx: Generally unremarkable.

SOCIAL Hx: ███████████████████████ alongside his brother and 2 sisters. His biological father signed over his parental rights when pt was just 5-years-old and they remained estranged "until I enlisted in the Army" at which
time his father expressed interest in establishing a relationship. They were able to do so to some extent, although pt alluded to some ongoing conflict until

his father's death in June 2012.

He was raised primarily by his mother and SF, who ultimately adopted him and raised him as his own child. In fact, pt considers his SF to be "my dad," and
maintains contact with his parents who continue to reside in Mt Grove. Note that

both his mother and SF abused alcohol and other substances throughout pt's childhood and adolescence. Within that context, he denied a h/o trauma/abuse though, when challenged, acknowledged some "verbal abuse."

He has been married to his current (only) wife, ████████ for the past 7 years and helps raise ████████████████████ from a previous marriage.
Pt characterized their marriage as generally stable and supportive though, as noted, he frequently finds himself "irritated with the kids," which can generate
marital conflict within their home.

Pt explained that he has a ███████████████ from a previous relationship. ███

███████████████████████████████████████
███████████████████████████████████████

███████████████

Both he and his wife are active in a small church within their community. Pt

cited this as an important aspect of his life from both a social and spiritual
perspective. He and his BIL assist the pastor with maintenance and security, as
well as other areas of service.

WORK/EDUCATION Hx: In addition to pt's military experience and training, he
has
held a wide range of other professional positions, including work as "a
handyman" and truck driver. He recently transitioned from an OTR truck
driver to
a local job that allows him to be home most evenings and weekends.

Pt explained that he has held no fewer than 8 jobs since 2013, citing his PTSD
diagnosis ("anger" and avoidance) as the primary contributing variable.
As
outlined above, he tends to "walk away" from potentially conflictual
circumstances to avoid more serious consequences. This behavioral pattern holds
true within his professional roles, as well.

He supplements his current income with his VA disability compensation, which was

recently lowered.


INTERVENTION / TREATMENT PROVIDED:
-Worked on building trust and rapport with this pt
-Provided empathy and support for current concerns
-Conducted evaluation
-Discussed treatment options and initial treatment goals


SUMMARY/DIAGNOSIS:
Pt is a 36-year-old married Army veteran who presents to re-establish BH care
secondary to concerns about PTSD. More specifically, he cited "anger"
and
"anxiety" as his most problematic sx at this time. As outlined above,
pt's
primary rationale for re-engaging BH care is to reinstate his former disability
rating of 100%. From a functional standpoint, it is not clear to me that his
current sx warrant such a significant rating, although that decision is
certainly outside of my purview. I will retain his current diagnosis of PTSD and

collaborate with pt to establish a relevant treatment plan during our initial
f/u session.


Dx:

309.81  Posttraumatic Stress Disorder, by hx--currently SC


RECOMMENDATIONS/PLAN:

- Pt agreed to begin individual therapy with this provider

- Pt scheduled for follow-up in 8 weeks or sooner PRN

- Pt declined psychiatry/medication management services at this time

/es/ ▮▮▮▮▮▮▮▮▮▮
PSYCHOLOGIST
Signed: 06/10/2019 12:34

| | |
|---|---|
| **Date/Time:** | 06 Jun 2019 @ 1200 |
| **Note Title:** | COMMUNITY CARE-CONSULT RESULT NOTE CO |
| **Location:** | VA Heartland-West VISN 15 |
| **Signed By:** | ▮▮▮▮▮▮▮▮ |
| **Co-signed By:** | ▮▮▮▮▮▮▮▮ |
| **Date/Time Signed:** | 14 Jun 2019 @ 1052 |

**Note**

LOCAL TITLE: COMMUNITY CARE-CONSULT RESULT NOTE CO
STANDARD TITLE: NONVA CONSULT
DATE OF NOTE: JUN 06, 2019        ENTRY DATE: JUN 14, 2019@10:52:04
   AUTHOR: ▮▮▮▮▮▮▮▮        EXP COSIGNER:
   URGENCY:                STATUS: COMPLETED

 VistA Imaging - Scanned Document
*** SEE SCANNED DOCUMENT IN VISTA IMAGING ****

 MRI RIGHT SHOULDER  -  6/6/19

 MIDWEST IMAGING OF SPRINGFIELD

/es/ ▮▮▮▮▮▮▮▮
Student Scanning Tech
Signed: 06/14/2019 10:52

| | |
|---|---|
| **Date/Time:** | 06 Jun 2019 @ 1200 |
| **Note Title:** | COMMUNITY CARE-CONSULT RESULT NOTE CO |
| **Location:** | VA Heartland-West VISN 15 |
| **Signed By:** | ▮▮▮▮▮▮▮▮ |
| **Co-signed By:** | ▮▮▮▮▮▮▮▮ |
| **Date/Time Signed:** | 14 Jun 2019 @ 1049 |