**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS EARPLUG     )     Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,    )
                                  )     Pensacola, Florida
                                  )     July 10, 2020
                                  )     2:00 p.m.
                                  )
                                  )
_____)

**LEADERSHIP PHONE CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-68)

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*100 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

# A P P E A R A N C E S

**JUDGE DAVID R. HERNDON** (ret.)

FOR THE PLAINTIFFS:      **BRYAN F. AYLSTOCK, ESQUIRE**
**JENNIFER HOEKSTRA, ESQUIRE**
**NEIL OVERHOLTZ, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida  32502

**CHRISTOPHER A. SEEGER, ESQUIRE**
**DAVID R. BUCHANAN, ESQUIRE**
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660

FOR THE DEFENDANTS:      **ROBERT C. BROCK, ESQUIRE**
Kirkland & Ellis, LLP
1301 Pennsylvania Avenue NW
Washington, D.C.  20004

**MICHELLE SIX, ESQUIRE**      **KIMBERLY BRANSCOME, ESQUIRE**
Kirkland & Ellis, LLP      Dechert, LLP
601 Lexington Avenue      633 W 5th Street, Suite 4900
New York, New York 10022      Los Angeles, California  90071

**MARK J. NOMELLINI, ESQUIRE**
**NICHOLAS F. WASDIN, ESQUIRE**
**BARRY E. FIELDS, ESQUIRE**
**KARL B. GUNDERSON, ESQUIRE**
Kirkland & Ellis, LLP
300 N Lasalle
Chicago, Illinois  60654

1        P R O C E E D I N G S

2            **JUDGE RODGERS:**  Hi, good afternoon.  This is Casey

3    Rodgers.  I want to confirm if there are certain people on the

4    phone.  I was just told by AT&T that we have 27 participating

5    on the call, so I am not going to take a rollcall of everyone

6    on this call.  I do want to confirm that there are some folks

7    on, and then I'm going to ask for one spokesperson from the

8    Plaintiffs and one from the Defense to at least start us off.

9    And then, if you need to contribute, then I'd just please ask

10   that you identify yourself before you speak.

11           Judge Jones, are you on?

12           **JUDGE JONES:**  I am.

13           **JUDGE RODGERS:**  Okay, good.

14           Judge Herndon?

15           **JUDGE HERNDON:**  I am.

16           **JUDGE RODGERS:**  Very good.

17           Ms. Boland?

18           *(Off-the-record discussion.)*

19           **MADAM CLERK SIMMS:**  Judge, I just texted Donna, and

20   she says she is connected, she hears everything, and she

21   doesn't understand why you can't hear her.

22           **JUDGE RODGERS:**  Well, it's only important that she

23   hear us.  So, if she's confirmed that she can hear us, we'll

24   get started and proceed.  Thank you.  But do ask her, Sue, if

25   there's any other technical problem where she loses us or

1    something to please let you know immediately.

2         **MADAM CLERK SIMMS:**  Okay, I will.

3         **JUDGE RODGERS:**  So I have your agenda for the call

4    this afternoon, and I will walk through it.  Let me bring up

5    one logistics item before we get started with your agenda

6    items, and that relates to the date for science day.  And I

7    think Item No. 2 is science day, but let me speak to you all

8    about science day as well as the CMC at the end of the month.

9         I currently have -- and if you're not speaking, if you

10   wouldn't mind, please, muting your volume so we don't get any

11   background noise.  Thank you.

12        So I currently have a multi-defendant criminal trial

13   set for the 27th of the July.  And that trial, if it goes, will

14   last four days.

15        The trial got set I think because there was a thought

16   that it wouldn't actually go because it is a multi-defendant

17   case and many of the defendants have pled guilty.  And when

18   that happens in a multi-defendant conspiracy case, usually they

19   all end up pleading guilty.  But nonetheless, it got set, so it

20   will conflict with the CMC scheduled for the 29th.

21        However, I'm not sure the case is going to go due to

22   my concerns about the COVID numbers in our county jail

23   facilities, which is where our federal inmates are actually

24   housed in Pensacola.  We don't have an FDC here.

25        I have a pretrial conference on Monday in this case.

```
 1    So if you all can be patient with me -- I believe it's Monday
 2    morning.  If you can be patient with me until I can hold that
 3    conference and make a determination of whether that case is
 4    actually going to go to trial, I would appreciate that.
 5            It would be my preference to give you a firm date.  I
 6    mean, I could do that.  I could move the CMC and the second
 7    science day to Friday, but I don't know if that's convenient
 8    for all of you.  And you've been focused and planning for the
 9    29th, so I hate to make that move if it's not absolutely
10    necessary.  But I won't know until Monday.
11            Bryan, any --
12            MR. SEEGER:  Judge, the science day issue is mine.
13    It's Chris Seeger.
14            JUDGE RODGERS:  Okay, Chris.
15            MR. SEEGER:  We've already cleared dates, so we can do
16    it on the 29th or we can do it that Friday.  Whatever is good
17    for the Court, we're set either day.
18            JUDGE RODGERS:  The 29th or the 31st?
19            MR. SEEGER:  Yes, Your Honor.
20            JUDGE RODGERS:  All right.  Thank you.
21            Mr. Brock or whoever is handling that on your end?
22            MS. BRANSCOME:  I can weigh in, Your Honor.  This is
23    Kim Branscome.  I was wondering if Your Honor would consider
24    instead the first week of August.  And I only raise that
25    because we have the plaintiff depositions -- a number of them
```

1    are set the week of the 27th.  I think we all worked hard to

2    keep the 29th open, so I'm not sure that we have an issue

3    there.  But we do now have depositions set on the 31st, which

4    is that Friday.

5            **JUDGE RODGERS:**  Unfortunately -- I'm sorry, Kim, I

6    don't mean to cut you off, but unfortunately I have ten trials

7    set for August 3rd, so that's not going to happen.

8            **MS. BRANSCOME:**  Oh, my goodness.  Okay.

9            **JUDGE RODGERS:**  I don't know how many are going, but I

10   suspect some of them will go.  They're not all in-custody

11   defendants.  So I can't promise you that I'll be available that

12   week.  It doesn't look like it.

13           **MS. BRANSCOME:**  Okay.  Then we may need to just work

14   with the Plaintiffs, if we move the CMC to Friday, on some

15   deposition dates, but that would be the only issue.

16           **JUDGE RODGERS:**  Okay.  Well, I'm going to hope for

17   this trial on the 27th being continued.  But again, I can't

18   commit to that until I talk with the lawyers and the

19   defendants.  So I will let you know on Monday just as soon as I

20   do.

21           Sue, you're on the call.  What time is that conference

22   on Monday?

23           **MADAM CLERK SIMMS:**  It's at 10:00 a.m. on Monday.  Let

24   me make sure.  Yeah.

25           **JUDGE RODGERS:**  That sounds right.

1          **MADAM CLERK SIMMS:**  Yes, 10:00 a.m.

2          **JUDGE RODGERS:**  Okay, very good.  Well, I will send

3     out word as soon as that conference is complete.

4          **MR. BROCK:**  And this is Mike.  The 29th is good for

5     us, obviously, on the science day presentation as well as the

6     CMC.  And if we need to move for the 31st for those events,

7     we'll try to work with the Plaintiffs to accommodate schedules

8     and that type of thing.

9          **MR. AYLSTOCK:**  At this point, Your Honor, Mr. Hacker,

10    who is the late add to group A, is the only one on the 31st.

11    So, happy to work with the other side to reschedule that at a

12    time, if that's a problem for them.  We could potentially maybe

13    do the CMC and science day the preceding week as well.

14         **JUDGE RODGERS:**  I do have availability the week of the

15    20th because I did have a criminal trial -- or actually, it's

16    going to be continued.  So we could shift to the week prior.

17    But why don't we wait until Monday to see where I end up with

18    that trial for the 27th.  Because if that gets continued, then

19    we'll just leave the CMC where it is and I'm going to add the

20    science day to that day.

21         **MR. AYLSTOCK:**  Yes, Judge.

22         **MR. SEEGER:**  Yeah, that's fine.  Judge, just to let

23    the Defendants know, to save a little time, we could also do

24    the 22nd or the 24th.  But we understand we're going to wait to

25    hear from you on Monday, but I'm just putting those dates out

1    in case it does get moved up just to let them know.

2              **JUDGE RODGERS:**  Okay, thank you.

3              **MR. BROCK:**  Our preference on science day would be the

4    week of the 27th as opposed to the week of the 20th.  But if we

5    needed to look at some dates the week of the 20th, we could do

6    that.

7              **JUDGE RODGERS:**  Okay.  Well, I hope not.  But if we

8    do, then I would not be inclined to have you all move

9    Mr. Hacker.  I would be more inclined to move science day to

10   the week before, which we all knew was a possibility.  And then

11   we could move the CMC as well to the week before or we could

12   have another leadership conference and perhaps skip the CMC for

13   July and just catch up in August.  Let's wait and see what

14   happens Monday, but thank you for that input.

15             The first item that you all have listed on your agenda

16   is the proposed schedule for trial groups B, C, and D.  So, who

17   wants to handle that for the Plaintiffs?

18             **MR. AYLSTOCK:**  Dave Buchanan is --

19             **MR. BUCHANAN:**  Your Honor, this is Dave Buchanan.  I'm

20   sorry, I was on mute.

21             Yes, we had some communications with the Defense.  I

22   think this is as simple as trying to jockey around the holiday

23   schedule with groups C and D.  Defendants have requested some

24   slight adjustment to the C and D dates to accommodate the

25   holidays and maybe some dates that overlap with group A and B.

1              So we're taking a look at that, expect a proposal

2    shortly from the Defense, and we'll be on schedule to get Your

3    Honor a proposal at or in advance of the next CMC.

4          **JUDGE RODGERS:**  Okay.  I think that was what I had

5    asked was by the next CMC.

6              Defendants, any comments about that?

7          **MR. NOMELLINI:**  Your Honor, I agree with Mr.

8    Buchanan's summary.

9          **JUDGE RODGERS:**  Okay, very good.  Thank you.

10             No. 2 is science day, which we've touched on already.

11   Anything further with that, Chris?

12         **MR. SEEGER:**  No, Your Honor.  I think that's -- it's

13   all been worked out in your order, and we're just waiting on

14   the date, that's it.

15         **JUDGE RODGERS:**  Okay.  Mike?

16         **MR. BROCK:**  No, Your Honor.  It's good.  I apologize.

17   I've been very diligent about getting on mute but not so good

18   at getting off of it.

19         **JUDGE RODGERS:**  All right.  Thank you.

20             Item No. 3 relates to the status of custodial files

21   that were ordered produced pursuant to Judge Jones's order of

22   June 11th.

23         **MR. GUNDERSON:**  Good afternoon, Your Honor.  This is

24   Karl Gunderson.  On Wednesday we produced custodial files for

25   Steven Todor and John Clingman, two of the four subject to that

1    June 11th order.  We are still investigating whether there is

2    custodial data for the two other custodians, and we expect to

3    close out that investigation by next week.

4             **JUDGE RODGERS:**  Okay.

5             **MR. OVERHOLTZ:**  Your Honor, this is Neil Overholtz.

6    Just on that point, I would note that, during the -- leading up

7    to that order, the Defendants had indicated that they had

8    already added custodial documents to the TAR corpus for

9    Ms. Ramirez that Judge Jones ordered.  So I do believe they

10   know that they have custodial files for Ms. Ramirez from ATM

11   Mexico to add, so I would expect that they've had them for a

12   while before the June 11th hearing.

13            **MR. GUNDERSON:**  Your Honor, I think there's a

14   disconnect here because we haven't ever intentionally

15   represented that.  We do have communications with Ms. Ramirez

16   and a whole host of other individuals who are copied on emails

17   collected from other custodians.

18            And so, through the course of our briefing prior to

19   that June 11th order, we indicated that we have previously

20   added and reviewed and produced subject to the TAR protocol

21   communications with Ms. Ramirez and with other custodians.

22            Neil, if there's something in particular that you

23   think we're missing, though, I'm happy to discuss with you sort

24   of offline.

25            **JUDGE RODGERS:**  Did Judge Jones give you a date for --

1    I'm looking at his order to see if there was -- was there a

2    time frame for you all to --

3         **MR. AYLSTOCK:**   Your Honor, I don't think there was a

4    specific date imposed by the order.  I think it was as quickly

5    as possible.  And we have had a couple of depositions related

6    to TJR Mexico since then -- Mr. Zielinski, which was originally

7    set in March.  And so Mr. Overholtz can speak to that a little

8    bit, but we are certainly anxious to get the Mexico issue fully

9    discovered and behind us.

10         **JUDGE RODGERS:**   Well, my question is -- Judge Jones's

11   order was a month ago.

12         So, Mr. Gunderson, when are you going to finalize the

13   production?

14         **MR. GUNDERSON:**   Your Honor, frankly, we think we have

15   produced everything that will be produced.  That said, we

16   are -- subject to the dated declarations we worked through in

17   the fall and early winter with Judge Jones and the Plaintiffs,

18   we are checking a bunch of other additional buckets that we

19   have identified previously for Plaintiffs just to confirm that

20   there is no data for these additional custodians in those

21   locations.  At this point, we don't expect there to be.  But

22   it's a list of more than ten different nontraditional data

23   sources that we are still working to confirm and check.

24         **MR. OVERHOLTZ:**   Your Honor, just so Your Honor knows,

25   we did take the depositions of Mr. Zielinski and Mr. Klun,

1     largely explored discovery related to the TJR Mexico issues and

2     custodians following up on the hearing that we had with Judge

3     Jones.

4          We do believe, as we approach the September 1st

5     discovery cutoff deadline, the topics that were discovered

6     during those depositions are important.  And so it's very

7     important that we find out whether they have the custodial

8     files for Ms. Ramirez.  We'd certainly want to go back and

9     evaluate the Judge's order if they say that there is no more

10    custodial file for her.

11         Secondly, the other thing that presents an issue for

12    us is, while documents were produced this week for Mr. Clingman

13    and Mr. Todor, there hasn't been a certification that those

14    productions are complete yet, as well as some of the other

15    documents that were produced from TJR Mexico on, I believe,

16    March 25th, we haven't got a certificate of completion on that.

17         And so, as we approach this deadline of September 1st,

18    we have an issue with respect to making sure we can fully

19    discover this issue in time.

20         **JUDGE RODGERS:**  All right.  Thank you.

21         Judge Jones, this was your order.  In terms of a

22    deadline for production, given that now we have the September

23    1st deadline, which I don't think was in place at the time of

24    your order, any thoughts?

25         **JUDGE JONES:**  Well, you're correct, there was not a

| | |
|---|---|
| 1 | deadline put in the order.  One of the things that was raised |
| 2 | was the burden on the Defendants in locating and collecting -- |
| 3 | probably more on the locating side -- custodial files from a |
| 4 | subsidiary in Mexico. |
| 5 | And I'll be candid with you, what I contemplated is |
| 6 | quickly they would identify whether indeed there were custodial |
| 7 | files, and then one of two things would happen:  Despite their |
| 8 | best efforts to look for a custodial file, they would be unable |
| 9 | to locate one and would advise the Plaintiffs that, *Despite our* |
| 10 | *best efforts, we have been unable to locate custodial files,* |
| 11 | because this goes back in time I think more than a decade.  And |
| 12 | then, you know, if you don't have the documents, you don't have |
| 13 | the documents. |
| 14 | If, indeed, they did locate them, it contemplated they |
| 15 | would be added to the TAR corpus, and that process would happen |
| 16 | pretty quickly.  And I'm a little unclear on the discussion. |
| 17 | Have the Defendants concluded that there are not |
| 18 | custodial files, or are the Defendants still attempting to |
| 19 | locate custodial files?  I don't know if there was a clear |
| 20 | answer to that. |
| 21 | **MR. GUNDERSON:**  Yes.  So, with respect to, you know, |
| 22 | Ms. Ramirez and Mr. Edwards, we are still continuing our |
| 23 | investigation.  As you can imagine, there's sort of this |
| 24 | sliding scale of the easy-to-check sources and the |
| 25 | harder-to-check sources.  So we are now at the harder-to-check |

1   sources end of that spectrum.

2           You know, in terms of the certifications Mr. Overholtz

3   just mentioned, I would expect by next Friday we should be able

4   to provide those certifications.  Like I said, we're mostly in

5   the stage of dotting i's and crossing t's with respect to our

6   investigation.  We do expect that to be wrapped up shortly.  At

7   this point, though, we haven't identified a custodial file for

8   Ms. Ramirez.

9           **JUDGE JONES:**  Okay.  You've been working

10  unsuccessfully, and you will know by the following Friday one

11  way or the other whether you indeed have successfully located

12  the Ramirez files; is that right?

13          **MR. GUNDERSON:**  That's correct, Your Honor.

14          **JUDGE JONES:**  Okay.  Well, that sounds workable.

15          **MR. GUNDERSON:**  And just so the Court is aware, late

16  last night Plaintiffs sent us a request for seven additional

17  custodians to be added to the TAR process, five of whom are --

18  *(inaudible)* -- the ATM process.

19          We've spent the last 12 hours, or however long it's

20  been since we got the request, investigating those.  We will

21  get back to Plaintiffs and begin the meeting and conferring

22  with -- you know, meet and confer process with Plaintiffs

23  regarding those additional custodians early next week.

24          **JUDGE JONES:**  These are all custodians relating to the

25  Mexico subsidiary; is that right?

1          **MR. GUNDERSON:**  Five of the seven appear to be, yes.

2     The two others -- and Plaintiffs perhaps could be better to

3     answer this because they are more familiar with them than we

4     are at this point.  The other two I think are more related to

5     the operations type issues that we have discussed at the last

6     hearing.

7          **MR. OVERHOLTZ:**  Yes, Judge Jones, the five additional

8     custodians, these were -- we did, obviously -- based on our

9     hearing with you, we did follow-up discovery during the

10    depositions of Mr. Zielinski and Mr. Klun, questioned about

11    various witnesses and, based on that information, have

12    requested these additional Aearo Mexico custodians.

13          And certainly, with learning this information that it

14    may be unlikely we're going to get any additional custodial

15    production related to Ms. Ramirez, I think these custodians

16    become even more important for us.

17          And then the other two custodians, which would be

18    Gordon Grogan and Larry Power, these were quality assurance

19    management at Aearo for which Mr. Zielinski reported to and

20    dealt with regarding the quality on the assembly and

21    manufacture of the earplug.  And we learned, of course, more

22    about that relationship during those depos as well.  And so

23    those were the other two custodians.

24          It might make sense, in light of our September 1st

25    deadline and in light of what Mr. Gunderson was able to tell us

1     today, if perhaps we could think about some dates that we might

2     need to at least set aside to discuss with you after we meet

3     and confer with Defendants about what to do related to these

4     additional custodians and, of course, the production issues

5     related to Ms. Ramirez's file.

6          **JUDGE JONES:**   Right.   Here is what I was going to

7     suggest, because these issues aren't too complicated.   If you

8     all could -- well, Mr. Gunderson will determine no later than

9     next Friday whether he's located the Ramirez custodial file.

10    The five other Mexico subsidiary custodians, you'll meet and

11    confer on that.

12          Certainly there are two issues there:   Are there in

13    existence other custodial files; and if so, and there is no

14    file for Ramirez, that may be a compelling reason to substitute

15    a custodial file from someone else from the Mexico subsidiary.

16          But work all that out.   And if by Friday on the

17    custodians -- and this would include the two that do not relate

18    to Aearo Mexico -- if you have not reached resolution on either

19    withdrawing those or you still want to add them and the

20    Defendants do not want to add them, bring that to my attention

21    on the following Monday.

22          So that would be Monday the 20th; is that right?

23    Yeah, on Monday the 20th.   And what you can do is file

24    something -- you can do this in the form of a letter brief and

25    file something by the end of the day on Monday.   And then

1   within two days the Defendants can file a response.

2          And what I'll try to do then is have a very quick

3   telephone hearing and try to resolve the issues on those

4   custodians, because we don't want those to drag out too much

5   longer.

6          **MR. OVERHOLTZ:**  Thank you, Your Honor.

7          **MR. GUNDERSON:**  That timeline works, Your Honor.

8   Thank you.

9          **JUDGE RODGERS:**  All right, very good.  Thank you.

10          Moving to No. 4.  So let me reference, I guess, 4 and

11   5.  There were a number of motions to compel filed recently.  I

12   spoke to Judge Jones about these because we emailed about them

13   yesterday, I believe.

14          So the Defendants have three motions to compel and the

15   Plaintiffs one.  And actually, Defendants, you may have four,

16   if I consider the motion to compel involving the military, the

17   DoD.

18          But the first one involved Ms. Kelley, and that's

19   ripe, and it's been referred to Judge Jones.  The others are

20   not yet ripe.  And the Plaintiffs have one as well.  And so, I

21   think you all wanted to speak about a briefing schedule.

22          I guess I don't understand.  I mean, we have a local

23   rule that governs your response time.  What's so unique about

24   these that you need a special schedule?  Is it the depos, you

25   need a rocket docket response deadline?

1          **MR. AYLSTOCK:**   No, Your Honor, I don't think so, the

2     Plaintiffs don't think so.   Ms. Kelley's motion is ripe, and

3     we're ready for hearing on that as soon as Judge Jones, if he

4     wants a hearing, would like to hear us or so forth.   And I

5     think that will actually guide us a lot on the other Defendant

6     motions to compel against the individual plaintiffs.

7          From our perspective, our motion to compel relates to

8     the distribution of advertisements and where and when and so

9     forth.   It relates to final versions of packaging and inserts

10    and instructions that were in the boxes and some shipments and

11    distribution information.

12         We would like that before the depositions of the

13    plaintiffs.   To the extent that they remember ads and things

14    like that, it can be important.   I think that if we had the

15    ten-day response time, we're talking about the 18th.   And I

16    know Judge Jones is usually pretty quick on all of those, so I

17    think that timing still works if we could get a relatively

18    quick hearing date after the response from the Defendants on

19    that.

20         **JUDGE RODGERS:**   Ten days would be a little bit

21    shorter, but I think it's probably -- maybe that is a good idea

22    given the fact that you're saying you want those before the

23    depos.

24         A couple of the motions by the Defendants relate to --

25    I think two of them relate -- or one was Ms. Kelley and then

```
 1    there's a second one that relates to the same issues involving

 2    Ms. Kelley in terms of redactions and PTO 39 and privilege

 3    issues.  And so Judge Jones is certainly equipped to handle

 4    those.  I think a ten-day response time is probably good.

 5    Ms. Kelley is not as pressing, frankly.  We talked about that.

 6              MR. AYLSTOCK:  Right.

 7              JUDGE RODGERS:  She's in group D.  So, although her

 8    motion is ripe as to her, I feel like these other ones are more

 9    pressing because they pertain to earlier bellwethers.

10              And there's also one of the Defendants' motions that

11    pertains to Rule 26(a) disclosures, and I think that needs to

12    be resolved once and for all.

13              Judge Jones and I did communicate, and I think he's

14    ready to hear from you all as soon as the motions are ripe.

15              Can everybody live with a ten-day response time frame?

16              MS. BRANSCOME:  If I may, Your Honor, so a few just

17    points on that.  I think really we would defer to Judge Jones

18    and what's helpful to him to get these issues adjudicated.

19              Our concern is, like Your Honor pointed out, that the

20    motion on Ms. Kelley is ripe but less urgent.  The other two

21    motions, broadly speaking, relate to sufficiencies of discovery

22    responses including the Rule 26 disclosures, and then the

23    second one relates to the redactions that have been made

24    claiming both privilege and relevance for the bellwether

25    plaintiffs' files.
```

1          We have prioritized, obviously, the trial group A

2     plaintiffs.  We do need resolution on those issues but not just

3     resolution.  We would need to have sufficient time that, if

4     Judge Jones were to order any of this discovery to be produced,

5     it would need to be produced with at least a decent amount of

6     time to review in advance of a plaintiff's deposition.

7          And so, as Your Honor may recall, this was discussed

8     at the last CMC, and there was even a discussion of perhaps,

9     you know, there would be oral opposition so that we could get

10    these issues adjudicated as quickly as possible with a ruling

11    during the hearing.

12         Because the natural consequences that, if we were to

13    prevail on anything in our motions -- and the same would be

14    true for Plaintiffs -- we need sufficient time to produce the

15    materials if we're going to meet the Court's end of July

16    plaintiff depositions deadline.

17         And we've been working to schedule those plaintiffs.

18    Unfortunately, for example, Mr. Baker is going out of the

19    country after July 21st, and so his deposition is set for July

20    1st *[sic]*, and he has issues that are -- both motions apply to

21    him with respect to discovery responses and redaction.

22         And so, my concern about ten days is that I just don't

23    know that that would give sufficient time -- I don't even know

24    that that would be physically possible for Judge Jones to

25    review the responses, we have a hearing, get a ruling, and then

1   documents produced.

2          So that's our concern about any delay on that.  And we

3   had talked about this at the last CMC, doing this on a more

4   expedited basis.

5          **JUDGE RODGERS:**  Yes, we did.  You said July 1st.  That

6   can't be right.  When is his depo set?

7          **MR. AYLSTOCK:**  It's July 21st, Your Honor.

8          **MS. BRANSCOME:**  21st.  I apologize if I -- yes, the

9   21st.

10          **JUDGE RODGERS:**  One of the issues here is I don't have

11   any idea -- I don't know when these plaintiffs' depos are set.

12   I don't think Judge Jones does either.

13          **JUDGE JONES:**  No, I don't.

14          **JUDGE RODGERS:**  But I do recall, Ms. Branscome, you're

15   right, we did talk about even oral responses and arguments

16   before Judge Jones in that manner.

17          Judge Jones, I should let you speak to this.

18   Obviously time is of the essence.

19          **JUDGE JONES:**  Yeah.  Well, Kim just raised an issue

20   that I was going to mention because, you're correct, I did not

21   know when the plaintiffs' depositions were scheduled.

22          So Baker is scheduled for the 21st.  Are Estes and

23   Rowe and Hacker also that week as well?

24          **MS. BRANSCOME:**  I believe --

25          **MR. AYLSTOCK:**  No, Your Honor.  Only Rowe.  So, Baker

1   is the 21st.  Rowe was provided -- July 22nd and 23rd are the

2   only dates available for him before July 31st, so that was

3   communicated to the Defendants.  So, Rowe would be the other

4   one.  The others are the following week.  Mr. Estes is on the

5   28th, Hacker on the 31st, Keefer on the 30th, and McCombs on

6   the 27th.

7            **JUDGE JONES:**  Well, I think Ms. Branscome does raise a

8   point that I was somewhat concerned about.  So, if we did the

9   ten days, that actually rolls over to the 20th.  And I'm pretty

10  fast, but not that fast.  And for me to rule on these motions

11  in a comprehensive written order and then, to the extent

12  documents would be produced, for them to be produced and

13  reviewed before depositions, particularly Mr. Baker's

14  deposition, is very problematic.

15           So what we could do -- you know, I know the Kelley

16  issue is fully briefed, and I am looking at that right now.

17  And without getting into the details of the motion, Kelley

18  really may be different from these other motions.  I haven't

19  looked at all the sealed filings and what was redacted yet on

20  those, but they really may be different.

21           But the long and short of it is, maybe we could have a

22  comprehensive telephonic hearing on either the 16th or 17th.  I

23  don't know what your availability is.  And then the Defendants

24  could file, if they want, a response before then to these

25  motions.

 1              It's certainly helpful to always have something in

 2    writing.  But if for some reason the Defendants don't want to

 3    file a response and we sort of know what their arguments will

 4    be -- I don't think there would be a surprise -- if the

 5    response is just orally, we could discuss this on the 16th, I

 6    could rule orally, and then I could follow up with a written

 7    order.

 8              And if my oral ruling involved a directive to produce

 9    additional documents, documents that have been redacted, there

10    would be time to do that and review them, even though it still

11    would be close, for Baker's deposition on the 21st.

12              As to the Plaintiffs' motion, though, the Motion to

13    Compel on interrogatory responses, on that one I don't think I

14    need to have argument, and I think we should stick to the

15    ten-day schedule.  So the Defendants would file a response to

16    that motion by the 20th, because I don't see that that's going

17    to -- whatever is going to happen with that motion, there's not

18    going to be as much of an impact on the plaintiffs'

19    depositions.

20              **JUDGE RODGERS:**  Judge Jones, I think Bryan indicated

21    that they did want those advertising, marketing materials in

22    advance of the plaintiffs' depos.

23              Bryan, did I hear --

24              **MR. AYLSTOCK:**  Yes, Your Honor, we certainly do.

25    That's why we filed the motion and served the discovery.  So I

1   think I'd be prepared to argue both the 16th or the 17th.  And

2   if they wanted to do an oral presentation as opposed to a

3   response, I'd be good with that.  Same as with us for ours.

4        I do think the Kelley case may be factually different.

5   I think the legal sort of framework is going to be very

6   instructive as well.  And that one is fully briefed, so we

7   could even do that earlier, and that may help us along with

8   some of the other ones.  But either the 16th or the 17th.  And

9   I would certainly like fulsome responses, assuming the Court

10   agrees with us, before the Baker deposition.

11       **MS. BRANSCOME:**  We could do the 16th, Judge Jones.

12   And I think even just giving us that one extra day to try to

13   get things -- that would give us the Friday, Saturday, Sunday,

14   and Monday to get documents produced if they needed to ahead of

15   the Baker deposition.  So we could certainly make the 16th

16   work.

17       **JUDGE JONES:**  What about -- Kim, let me ask you --

18   filing a written response to Plaintiffs' Motion to Compel, is

19   that something you would like to do?  If so, would you be able

20   to do it by the 15th?  Or would you want to just have an oral

21   response and we can discuss it at the hearing on the 16th?

22       **MS. BRANSCOME:**  I think, to the extent that it's

23   helpful to you, Your Honor, we could get a written response on

24   file ahead of time.  It may be, you know, sort of maybe not as

25   lengthy, but that probably makes it better anyway.  So, if it's

1  helpful to you, I think we could get something on file before

2  then.

3          I will defer -- Nick was going to actually speak on

4  that topic, so I'll defer to him.  But I think we could do that

5  if it's helpful to you.

6          **MR. AYLSTOCK:**  Your Honor, in the category of late

7  breaking news, I just received a text.  Apparently Baker's

8  issue should now be moot.  The unredacted records were produced

9  today after discussion with Defense counsel and I think

10  Mr. Tracy's firm.  So the 21st may not be the bewitching date;

11  it might be the 23rd or 24th with the Rowe date.

12          **MR. BROCK:**  We'd like to confirm that the unredacted

13  records that are being produced includes both redactions of

14  medications and any redactions related to mental health issues

15  and that type of thing.  I at least had a note that you guys

16  were looking at producing unredacted as to medications, but my

17  note didn't reflect that you were also producing on mental

18  health, if there are any.

19          **MR. AYLSTOCK:**  Yes, all redactions have been removed.

20  I'm told all of them have been removed.

21          **MR. BROCK:**  Great.

22          **JUDGE RODGERS:**  So, Mike, just confirm that, and then

23  please, to the extent the issues are narrowed for Judge Jones,

24  someone needs to tell him that pronto.

25          **MR. BROCK:**  Absolutely, as soon as possible, yes.

| | |
|---|---|
| 1 | **MS. BRANSCOME:**  Your Honor, I have been told that that |
| 2 | is in process on the privilege issues, although there are still |
| 3 | some devils in the details.  I'm getting real-time confirmation |
| 4 | as well.  This relates to Mr. Baker leaving the country and |
| 5 | wanting to make sure everything is done.  But Mr. Baker is |
| 6 | still part of the other motion to compel. |
| 7 | And so, what we will do is -- we are in contact with |
| 8 | Mr. Baker's counsel.  They are as interested as anyone in |
| 9 | getting that deposition ready by the 21st.  To the extent that |
| 10 | any issues for Mr. Baker become moot, we will obviously let the |
| 11 | Court know as soon as we can. |
| 12 | I still think moving forward with this for all of the |
| 13 | plaintiffs is helpful on this schedule because we still have |
| 14 | Mr. Rowe, who is potentially the 22nd or 23rd, and then they're |
| 15 | all scheduled to the last week of July.  But certainly, if we |
| 16 | become aware of any issues becoming moot, we will certainly not |
| 17 | waste anyone's time, especially the Court's. |
| 18 | **JUDGE JONES:**  Okay. |
| 19 | **JUDGE RODGERS:**  Judge Jones, to the extent it helps, I |
| 20 | am fine without a written order.  If you rule from the bench |
| 21 | and it's on the record, Donna takes down the hearing, if either |
| 22 | party wishes to pursue it with me, we can get a transcript and |
| 23 | they can brief it.  But if it saves you time, then I'm okay |
| 24 | without it. |
| 25 | **JUDGE JONES:**  Okay.  Why don't we do this, then. |

1    Because even if Baker doesn't become an issue, as Kim points

2    out, there is a deposition the 22nd or 23rd.  And to the extent

3    there would be any redacted documents produced, there needs to

4    be some time to get those to the Defendants and to prepare for

5    the deposition.

6         So let's set a hearing by telephone -- I'll do an

7    order on this on Monday memorializing it -- Thursday the 16th.

8    Let's say ten o'clock Eastern Time.  I'm trying to think

9    geographically where everyone is located.

10        Mr. Wasdin, are you in Chicago or LA or New York?

11        **MR. WASDIN:**  I'm in Chicago, Your Honor.

12        **JUDGE JONES:**  Chicago.  So you're an hour behind, so

13   nine o'clock is not too early for you.  And would you and Mr.

14   Nomellini, would you be the main counsel participating in that

15   hearing?

16        **MR. WASDIN:**  Your Honor, we would be two of them.  Kim

17   may join, I'm not sure.

18        **MS. BRANSCOME:**  And I'm in LA, Your Honor, but I do

19   not mind starting that early.  I'm an early bird so that's no

20   problem.

21        **JUDGE JONES:**  Okay.  That's what I was concerned

22   about.  So let's schedule it for ten o'clock Thursday the 16th.

23   To the extent that the Defendants wish to respond to the

24   Plaintiffs' Motion to Compel, if you would do so by the close

25   of business on the 15th, that would certainly be helpful to the

1    Court.

2            And then I will extend the same option to the

3    Plaintiffs.  To the extent that the Plaintiffs wish to file a

4    response to Defendants' motions to compel, you may do so.

5    You're not required to do so, but you may do so by the close of

6    business on Wednesday the 15th.

7            And then we'll discuss all these issues, I will rule

8    from the bench.  And as you know, a lot of these issues -- each

9    plaintiff is a little bit different, but some of the issues are

10   certainly common among those.  And I'll have an oral ruling,

11   we'll have a transcript, and I'll probably follow up with a

12   written order summarizing the basis for my ruling.  But that

13   way, if documents are to be produced, there should be enough

14   time to get them produced and available so they can be used at

15   the depositions.

16           **JUDGE RODGERS:**  Okay.

17           **MS. BRANSCOME:**  And, Judge, just -- I'm sorry, Your

18   Honor.

19           **JUDGE RODGERS:**  Go ahead, Kim, go ahead.

20           **MS. BRANSCOME:**  I just wanted to flag one issue

21   without getting into the substance.  In our Motion to Compel,

22   we did -- as we understand it, the Plaintiffs are asserting

23   both privilege and relevance objections.

24           **JUDGE JONES:**  Right.

25           **MS. BRANSCOME:**  We have requested either, obviously, a

1    ruling in our favor, but we recognize that the Court may

2    benefit from an in camera review.  We obviously cannot see

3    behind the redactions.  It's difficult to make a relevance

4    argument not knowing, obviously, the substance.  And so we had

5    suggested that an in camera review may be of benefit.

6              So I just wanted to flag that for Your Honor in case

7    you had not looked at the motion yet just to factor that in.  I

8    don't know that that changes the timing, but I just wanted to

9    give you a heads-up.

10             **JUDGE JONES:**  Well, that is a good point.  So, for

11   example, there has been an in camera filing on Ms. Kelley,

12   which I looked at.

13             Bryan, with regard to the other redactions of the

14   other plaintiffs -- Baker maybe, maybe not, Estes, Rowe,

15   Hacker, and I don't know if there are others -- how extensive

16   are the redactions?  Because it would benefit if I had in

17   camera to look at some of these documents.  But if there's, you

18   know, 2,000 documents, my God, I don't want you to send me

19   that.  But are there discrete documents that I could look at

20   that would inform the Court really what we're arguing about?

21             **MR. AYLSTOCK:**  Yes, Your Honor.  Each case is

22   certainly different or different scenarios, so we're talking

23   about four cases here.  Some have very extensive redactions, a

24   couple of them, and a couple of them are less so.

25             We'd be happy to take out, you know, some examples and

1   provide them in camera like we did for Ms. Kelley so you can

2   get a flavor of what's going on when it comes to the relevance

3   issue.  Hacker is also pretty extensive as well.  Of course,

4   he's not until the 31st, I believe, right.

5        So maybe we could -- I do think the Court's guidance

6   sort of on the general issues will help a lot to narrow things.

7   So I don't know that you need thousands of pages, but we could

8   give you some examples, if that would be helpful.

9        **JUDGE JONES:**  Well, that would be helpful, yes.  I

10  don't want thousands of pages but, for lack of a better word,

11  I'd like to have the flavor of what the parties are arguing

12  about.  Because I know it goes to relevancy, but that's

13  important in the calculus of whether additional documents will

14  be or will not be produced.

15       So could you file -- not file -- well, actually maybe

16  it's better to file them so we have a record of them.  Rather

17  than just sending them to me, file them under seal on the

18  docket representative samples of the redactions for each of the

19  plaintiffs, and do that by the close of business on the 14th.

20       **MR. AYLSTOCK:**  I believe so, Your Honor.  Since I'm

21  not counsel of record on these folks, I'll need to consult with

22  them right after this call, but that timeline sounds

23  reasonable.

24       **MS. BRANSCOME:**  Your Honor, would it be possible -- we

25  could either -- we could meet and confer with the Plaintiffs to

1    see if we could come up with a procedure.  But, from our

2    perspective, obviously, there are certain documents that have

3    drawn our attention in making the Motion to Compel based on

4    their context and what's in the privilege log.  Would it be

5    permissible for us to identify a sampling as well?

6            We wouldn't overload you with documents, but that way

7    you're kind of getting where our concerns are coming from as

8    well.  We can't see what's underneath the redactions, but

9    they've at least raised some questions as to relevance and

10   privilege in our mind.

11           **JUDGE JONES:**  That's a great idea.  You let the

12   Plaintiffs know the sample of documents that are of interest to

13   you, and then the Plaintiffs will file those under seal by the

14   close of business on the 14th.  I can look at them on the 15th

15   so, when we have the hearing on the 16th, I will know the real

16   flavor of what are the nature of the documents or the

17   redactions that are in dispute.  And I think that would be very

18   helpful.  Because I can tell you right now I don't need to look

19   at every piece of paper where there's a redaction, just the

20   things that are important.

21           **MS. BRANSCOME:**  Absolutely.  Thank you, Your Honor.

22           **JUDGE RODGERS:**  Okay.  That sounds like a plan.

23           Let's move on to 6, which I guess will dovetail

24   probably into 7, bellwether plaintiff document productions and

25   then plaintiff depositions.

The document productions, let me just ask about three

individuals, Stephen Hacker, Marcus Hensley, and then

Mr. Burgus.

Have you all heard anything from Ms. Snead or the VA

about those files that were corrupt?  I think there was a

production but there was still a problem with the production.

**MR. AYLSTOCK:**  Yes, Your Honor.  Shelley was going to

handle this.  She may have been caught up in a deposition.  But

my understanding with regard to Mr. Hacker in particular is

that was -- the corrupted data was produced on a new disc and

there was no issue with regard to his file after all.

**JUDGE RODGERS:**  Good.

**MR. AYLSTOCK:**  There was a problem with opening up a

couple of things I think from BrownGreer's end, but I think

that's been resolved, and I'm confident that it has with regard

to Plaintiff Hacker.

**JUDGE RODGERS:**  Okay.

**MS. BRANSCOME:**  And that's my understanding as well,

Your Honor.  We're still waiting -- Mr. Hacker's counsel has

been working with us because, obviously, he became a trial pool

A case kind of after we passed some deadlines.  But we've

actually been having productive meet and confers with them, and

they are going to expedite the review of the documents that

were on the corrupted disc so that we can get that and not have

to wait the 14 days.  So we have actually been working

1  cooperatively with them to try to sort out getting all the

2  documents produced.

3          **JUDGE RODGERS:**  Okay, very good.

4          Is there still an outstanding issue with Mr. Hensley?

5      **MR. AYLSTOCK:**  I don't believe so, Your Honor.  I

6  think that one has also been resolved, but I can confirm that

7  if that's not the case.

8          **JUDGE RODGERS:**  Okay.  And then I have the pending

9  motion with regard to Mr. Burgus that I'll be ruling on

10 shortly, and it's a motion to dismiss.  So I don't know that we

11 need to be as concerned there about Mr. Burgus's production.

12         **MR. AYLSTOCK:**  That's correct, Your Honor.

13         **JUDGE RODGERS:**  What else in regards to Plaintiff

14 document productions do you need or want to address?

15         **MR. AYLSTOCK:**  Your Honor, with regard to the group A

16 plaintiffs, Ms. Hoekstra and Ms. Charonko have done a great job

17 of getting the ESI over the transom with regard to those group

18 A plaintiffs.  And it was a huge effort, so I want to thank

19 them with assisting all those firms with getting it to the

20 Defendants, which is done or will be done finally today.

21         There's been over -- almost 52,000 pages of VA *Touhy*

22 records to date, about eight to 10,000 pages of DoD records on

23 those.  Overall, there's been I think 13 million pages produced

24 through Centrality for all of the plaintiffs to the Defendants

25 thus far.

1          So, BrownGreer as well is doing a tremendous job

2     getting things organized and out the door, and the Plaintiffs

3     have been doing their part to get things on schedule or early

4     whenever possible.  And Mr. Hacker's counsel as well have been

5     very helpful.  Obviously, he was just added, and he's already

6     got a deposition date out there and agreed to.

7          My understanding is that the Defendants have agreed to

8     the dates that have been presented and they're all before the

9     end of July.  So, if that's not correct -- because I think

10    there was some confusion about whether there was some

11    indication that they wanted things heard and addressed, and it

12    sounds like the Court is certainly doing that.  So I'd like to

13    confirm all of those dates that were provided on the plaintiff

14    depositions.

15         **JUDGE RODGERS:**  I think that's a good idea.  And I am

16    -- we all are, from the Court's standpoint, very impressed with

17    the progress that's been made recently.  It feels like we were

18    just tugging along for so long, and then all of a sudden it

19    seems like the fog lifted and we're moving.  So I appreciate

20    everyone's effort.

21         The dates I heard were Baker 7/21, and then Rowe was

22    either 23 or 24.  We need to confirm that.  And then Hacker --

23         **MR. BROCK:**  On Vernon Rowe, Your Honor -- and, you

24    know, this is subject to working out his production issues, but

25    I think his number of redacted pages is something in the range

1    of about 2,000 pages.  And I don't think we have an agreed upon

2    date for his deposition at this point.  So we are looking at

3    some dates --

4         **JUDGE RODGERS:**  Well, if your Motion to Compel is not

5    granted, then I think it's better to go ahead and have a date.

6    And if it turns out that the motion is granted and that date is

7    not realistic, then you can talk with Judge Jones about that or

8    me about that.  But right now your motion is only pending, it

9    hasn't been granted.  So I think you need to select one of

10   those two dates.  And then, like I said, if it's not realistic

11   based on Judge Jones's ruling, then we can move it.

12        **MR. BROCK:**  We will confirm that.  My understanding is

13   we did offer a date, which was I think June 24th, which was --

14   my notes show that it was rejected.  But we will check on that

15   and figure out a time to do it.

16        **MR. AYLSTOCK:**  Your Honor, he has a prepaid trip at

17   the very end of July, so we offered two dates, I think a month

18   ago back in early June, of the 22nd and 23rd.  So it really

19   needs to be on one of those two dates or it's going to have to

20   be pushed to August, which I know the Court doesn't want and we

21   don't want.

22        **JUDGE RODGERS:**  No.  I heard the 23rd and 24th, so

23   that's my error.

24        Who wants to speak?  I heard a voice.

25        **MR. FIELDS:**  This is Barry Fields, Your Honor.

1        **JUDGE RODGERS:**  Hi, Barry.

2            **MR. FIELDS:**  Hi.  How are you doing?

3        **JUDGE RODGERS:**  Good.

4            **MR. FIELDS:**  Yeah, just some clarity.  I mean, I think

5    what the issue is, just to be clear, is that, the reason

6    there's a dispute about the date for Mr. Rowe is not really

7    connected to the production.  It really is just an availability

8    issue.

9            The Plaintiffs are correct, I have, according to my

10   notes, that they offered July 23rd, but perhaps they offered

11   the 24th -- it was 23rd and 24th, sorry.  And then we said we

12   actually were not available and we offered four additional

13   dates which were the 27th, 28th, 30th, and 31st.

14           At one point I know we were working with Judge Herndon

15   to see if we could bridge that gap.  But it's really not about

16   the document issues that are affecting the date for Vernon

17   Rowe.  And so perhaps what we can do is, after this call, try

18   to see if we can't bridge the gap and come up with a date for

19   Mr. Rowe.

20           **JUDGE RODGERS:**  Well, it sounds like he's got prepaid

21   tickets for some sort of a trip at the end of the month, and I

22   really wanted these depositions taken during the month of July.

23   And so, if it's not about the production, I guess I'm

24   struggling to understand why there's not one of Kirkland &

25   Ellis's finest attorneys -- I mean, you have so many -- that

1    could not take this deposition on the 23rd.

2          **MR. FIELDS:**  I understand, Your Honor.  And so what we

3    will do is we will, after this call, obviously, speak among the

4    team and see if we can't bridge the gap and get Mr. Rowe on the

5    calendar, obviously subject to the Court's rulings.

6          **JUDGE RODGERS:**  All right.  Well, thank you, Barry,

7    for doing that.  And I'll just trust that you all will find a

8    date that works before he leaves town.

9          What about the other -- so I had Hacker for the 31st,

10   Estes for the 28th, Keefer for the 30th, and McCombs for the

11   27th.  Are these not --

12         **MR. FIELDS:**  Those are the dates, Your Honor.  So,

13   just a few things.  So, actually, for five of the six, those

14   have been agreed to, and you just listed those five.  We have

15   also agreed to the logistics associated with Baker and Estes

16   and the locations of those depositions.

17         For the remaining depositions, we'll obviously work

18   with the Plaintiffs to finalize the logistics and locations for

19   those depositions as soon as possible so that we can get those

20   locked down.  So that's where we stand with respect to the

21   plaintiff depositions.

22         The one thing we did want to flag for Your Honor, as

23   you may recall, there were several plaintiffs -- according to

24   my notes, there were three of the bellwether plaintiffs who had

25   filed loss of consortium claims.

1          We have been trying to work with the Plaintiffs to

2     make sure that the spouses of those individuals actually filed

3     an amended complaint.  And what we had proposed is, file your

4     amended complaint, we want to make sure that we -- and we can

5     use a very simple process for making sure that gets done.

6          But what we wanted to do was to make sure that the

7     spouses would respond to written discovery, produce responsive

8     documents as soon as possible.  And that there was a

9     possibility, even though they would become plaintiffs, because

10    the timing of these issues, we might have to actually postpone

11    those depositions.  They're plaintiffs technically but they're

12    not the original plaintiffs.  Those depositions may not be able

13    to be scheduled before July 31st.

14          So we just wanted to flag that issue for Your Honor.

15    We recognize you really wanted to get all the plaintiff

16    depositions done, but these are sort of new plaintiffs, the

17    spouses that are getting added.  And we're trying to work

18    through that process, but we wanted to flag that for Your

19    Honor.

20          **MR. AYLSTOCK:**  Can I address that, Your Honor?

21          **JUDGE RODGERS:**  Yes, just a minute.  It looks like for

22    group A there's only one -- oh, I'm sorry, there's two,

23    Mrs. Baker, and then there's a motion to add a loss of

24    consortium claim for Mrs. Estes.

25          **MR. FIELDS:**  Estes, yes.

1           **JUDGE RODGERS:**  So that's two.

2           **MR. FIELDS:**  I had McCombs down as well, but maybe

3    that is incorrect.

4           **JUDGE RODGERS:**  Well, Mr. McCombs amended his short

5    form complaint to remove the checkmark next to the LOC claim,

6    so I interpret that as no longer the case.

7           **MR. AYLSTOCK:**  That's right, Your Honor, Baker and

8    Estes are the only ones in group A who have a loss of

9    consortium.  The complaints in both list the loss of consortium

10   plaintiffs.  That was true -- and maybe Jen can correct me.

11          Certainly for Baker it's always been Mrs. Baker was a

12   part of the loss of consortium.  There may have been a

13   technical glitch when they were moved from the administrative

14   docket to the active docket.  But if you look at the

15   complaints -- and it's been known to the Defendants since they

16   were filed that there was a loss of consortium claim for Mr.

17   Baker and really all of the other ones.

18          Mr. Estes might have been added -- Mrs. Estes might

19   have been added to that one.  But I believe all the other ones

20   from the very beginning, these were loss of consortium

21   plaintiffs.  Mr. McCombs removed, as you noted, the loss of

22   consortium claim.

23          So, it's our position -- well, a couple of things.

24   I've never been in an MDL where written discovery was

25   propounded on consortium plaintiffs.  Certainly their

1   depositions are taken, and we'd like them taken along with --

2   say, if we're going out to Monterey, California, or a small

3   town in Ohio for Mr. McCombs, we'd like to go ahead and get

4   those done.

5           Moreover, PTO 28 gave us the deadline for written

6   discovery for the plaintiffs.  And frankly, this kind of seems

7   like an afterthought to us again where now they want to do a

8   whole bunch of written discovery.  I don't know what that's

9   going to entail.  I don't know if they want mental health

10  records on consortium plaintiffs now or something.

11          And really, in my experience with this in many, many

12  other mass torts certainly the consortium plaintiffs are

13  deposed, maybe it's a couple of hours, it's nothing new or

14  novel, and we move on down the road.  We don't get off the

15  rails.

16          And I'm afraid that, if we're going to be postponing

17  spouse depositions, it's going to require yet another trip all

18  over the country.

19          And more importantly, the deadline for written

20  discovery is -- has come and gone pursuant to our agreed order

21  in PTO 28.  And it's not even something that's ever really done

22  in these MDLs.

23              **JUDGE RODGERS:**  Well, here's --

24          **MR. FIELDS:**  Can I respond?  Oh, sorry.

25          **JUDGE RODGERS:**  Yes, go ahead, Barry, you can respond.

1          **MR. FIELDS:**  Well, a couple of things.  One, with

2     respect to Mr. Aylstock's suggestion, *Well, they're listed in*

3     *the complaint.*  Well, there's a difference between someone's

4     name being listed in the complaint and them actually being a

5     plaintiff.  So I don't think it's fair to sort of suggest,

6     well, we knew they were a plaintiff because they were listed in

7     the complaint.

8          Again, the other thing that we've been trying to do is

9     we have actually proposed to the Plaintiffs, look, we would

10     like to take these depositions as well, but what they also need

11     to do is agree that they'll take a look at our discovery, they

12     will respond to that discovery as quickly as possible so we can

13     make this an efficient process.

14          I also don't think it's fair for them to say, well,

15     the deadline for written discovery has passed.  Well, you know,

16     when you add new plaintiffs, even loss of consortium

17     plaintiffs, to a complaint, then you should expect there might

18     be some discovery.

19          And so I think we're not trying to get things off the

20     rail.  We're actually just trying to make sure that we conduct

21     discovery in the most efficient and effective process possible.

22          **JUDGE RODGERS:**  All right.  Well, I'm going to look at

23     Mr. Baker's complaint.  And if I believe that it should have

24     been apparent to the Defense that Mrs. Baker had a loss of

25     consortium claim, you won't be able to submit any written

1    discovery to her.  And you'll need to take her deposition on

2    the 21st when you take Mr. Baker's deposition.

3            And then, for Mrs. Estes, there's a motion to add a

4    loss of consortium claim for Jennifer Estes.  And so you can

5    submit -- it sounds like you've already submitted for -- have

6    you submitted the discovery request yet, Barry, or no?

7            **MR. FIELDS:**  I don't think so, Your Honor.

8            **JUDGE RODGERS:**  All right.  Well, then, go ahead and

9    submit what you have to submit for Mrs. Estes.

10           And then, Mr. Aylstock, you all work with Ms. Cornell

11   and get those responses back to the Defense, but her depo needs

12   to be taken on the 28th.

13           **MR. AYLSTOCK:**  Yes, Your Honor.

14           **JUDGE RODGERS:**  And those are the only two.

15           Now, if the motion by Mr. Hacker is still pending, I

16   need to rule on that to remove it from the docket.  But there

17   is a motion apparently by him to exclude or -- I'll say exclude

18   instead of dismiss, but to get rid of that claim.  So those are

19   the only two I'm aware of.

20           **MR. AYLSTOCK:**  I think it was McCombs, Your Honor, as

21   opposed to Hacker.

22           **JUDGE RODGERS:**  No.  There's two.

23           **MR. AYLSTOCK:**  There's a Hacker one as well?

24           **JUDGE RODGERS:**  I'm showing -- and I'm relying on

25   people who know a lot more about the actual -- have been in the

1    docket more than I have.  Mr. Hacker, who was just moved up

2    into group A, but there is a motion to exclude a loss of

3    consortium claim that was filed on June 19th.

4         Mr. McCombs amended his short form complaint, again,

5    to remove the checkmark next to LOC, loss of consortium.  So I

6    interpret that as he is relinquishing that claim, there is no

7    loss of consortium claim by Mr. McCombs's spouse.

8         **MR. AYLSTOCK:**  Yes, Your Honor, we agree.

9         **JUDGE RODGERS:**  So let me -- back to the production

10   issue.

11        Ms. Hoekstra, I reviewed your chart and appreciate

12   very much the work that has gone into that.  I know it's been

13   helpful to Judge Herndon, and I appreciated seeing it today.

14        I do, though, want to see -- and I don't know whether

15   that needs to come from the Plaintiffs or whether what I want

16   to see needs to come from the Defendants.  Because a while

17   back -- I think it might have been two case management

18   conferences ago, but I was provided with a chart that outlined

19   the status of the third-party production.

20        So I'm not sure.  Your chart seems to contain a

21   compilation of the dates your plaintiffs provided

22   authorizations to the Defendants and who those authorizations

23   were for as far as third parties.  But I don't think it tells

24   me anything about the actual production related to those

25   authorizations.  Am I right or no?

1          **MS. HOEKSTRA:**  Our chart tracks the dates the

2     Defendants requested authorization, the date we provided the

3     authorization to them electronically and a physical copy, and

4     the date that we're aware the production has been provided by

5     their third-party vendor for that authorization.

6          It doesn't track the volume of pages or what was

7     specifically requested in relation to it.  I know Defendants

8     had been tracking in slightly more detail what they were

9     receiving from MRC in regards to those authorizations.

10          **JUDGE RODGERS:**  How do you get that information from

11     their vendor as far as the production date?

12          **MS. HOEKSTRA:**  We have put MRC in touch with

13     BrownGreer.  And when the production is made from MRC, it is

14     transmitted to the Plaintiffs counsel through MDL Centrality,

15     and we receive alerts when it's produced through MDL

16     Centrality.

17          So MRC may receive the document a day or two before

18     the Plaintiff does, but we receive alerts when it's pushed

19     through to the Plaintiffs counsel with a notification that

20     there's a third-party production in relation to one of those

21     authorizations.

22          **JUDGE RODGERS:**  But doesn't the production go to the

23     Defendants first, or no?

24          **MS. HOEKSTRA:**  Yes, ma'am, it does.  And it goes

25     through their vendor to MDL Centrality for the Plaintiffs'

1    access.

2              **JUDGE RODGERS:**  And when do the -- I understand the

3    Defendants' vendor gets the production, but when does the

4    Defendant get the production?

5              **MS. HOEKSTRA:**  My understanding is the Defendants get

6    the production from MRC at the same time the Plaintiffs do, if

7    not the day before.

8              **JUDGE RODGERS:**  That, I didn't understand.

9              **MR. GUNDERSON:**  Yeah, we --

10             **MS. HOEKSTRA:**  We have not -- I'm sorry, go ahead.  I

11    think Mr. Gunderson might be able to clarify that.

12             **MR. GUNDERSON:**  Your Honor, just to provide -- you

13    know, we obviously have more insight into our process.

14             So, the way it works is MRC will get the records from

15    the provider, they get posted to a database we have.  And then,

16    you know, I think it's twice a week on Tuesdays and Thursdays

17    MRC does a bulk sort of export to MDL Centrality with all of

18    the records that are received since the last export.

19             So, as Ms. Hoekstra noted, there may be a 24-hour

20    period or something where we get a record slightly before

21    Plaintiffs but, you know, it's essentially real time otherwise.

22             **JUDGE RODGERS:**  Okay.  So everything MRC receives,

23    within 24 hours of being produced to you all or transmitted to

24    you all, it goes into MDL Centrality?

25             **MR. GUNDERSON:**  Yeah, just -- it may not be 24 hours.

1    It depends on the cadence of like --

2              **JUDGE RODGERS:**  I'll just say promptly.

3              **MR. GUNDERSON:**  Yeah, it's -- and we worked with

4    Plaintiffs on that cadence and how often they wanted the

5    exports and all of that.  So I think we're on the same page

6    with Plaintiffs in terms of that process.

7              **JUDGE RODGERS:**  Okay, very good.  I guess my next

8    question, though, is, is -- I appreciate Ms. Hoekstra's chart

9    and I want her to continue with it, to the extent there's more

10   out there.  But what I guess I would like to know is where you

11   all are in terms of the third-party's productions.  Because I

12   believe I entered an order the last week or two directed to

13   those third parties regarding the need to produce those

14   records.

15             **MR. GUNDERSON:**  Yes, Your Honor.  We appreciate that

16   order and have been using it since the day you entered it to

17   push the providers to give us more records.

18             I believe the Defendants provided our last update on

19   the authorizations on or around -- I think it was June 26th.

20   By Monday we can send you a sort of updated, you know, status

21   of a similar chart which had that kind of information about

22   when we received records and certain notes about the status and

23   that.  And we can organize it by the group A plaintiffs, group

24   B plaintiffs, et cetera, if that would be helpful.

25             **JUDGE RODGERS:**  Yes, that would be very helpful,

1    certainly by the groups.

2              Where did that update go on the 26th?  Was that to

3    Judge Herndon or to the Plaintiffs or just internally for our

4    own tracking?

5              **MR. GUNDERSON:**  Let me just check my email.  I believe

6    we sent it to you, Your Honor, and Judge Jones and Judge

7    Herndon and the whole --

8              **JUDGE RODGERS:**  And that may be the one I'm

9    remembering.  I remember seeing one, right, I remember seeing

10   one chart from you all.  And so, it would be helpful in the

11   next -- it doesn't have to be Monday, but in the next, I don't

12   know, couple of days or two or three days, if you could do an

13   update.

14             And I'm curious about how you know or accept that a

15   production is complete.  Does a provider tell you that when you

16   get those records?  Does the provider say, *This is a complete*

17   *production, this is everything we have*?

18             **MR. GUNDERSON:**  In general, yes, Your Honor, we get

19   sort of everything all at once.  And then there are occasions

20   where we will follow up and say, well, it looks like we got

21   this but not that, or they'll have follow-up questions.

22             Or, as Ms. Hoekstra notes, sometimes they have

23   additional requests for whatever it is to sort of, you know,

24   get the records produced.

25             And so we -- our vendor MRC, they're sort of experts

1       in the field at getting these records, and so they are very

2       good at sort of pushing that process along and getting those

3       records straightened out.

4               **JUDGE RODGERS:**  Okay.

5               **MR. GUNDERSON:**  There's one issue I did want to flag,

6       however, which is that, you know, in the last week or so

7       Mr. Keefer and Mr. McCombs, you know, provided supplemental

8       interrogatory responses where really for the first time they,

9       you know, now allege a connection between their mental health

10      issues and their use of the Combat Arms Earplugs.

11              So this is an issue we sort of raised in March in

12      connection with the, you know, third-party authorization form,

13      and we had a whole process for getting these rog responses to

14      know whether the form with the mental health carveout should be

15      used or a form without the mental health carveout should be

16      used.

17              But with the sort of late disclosure of this

18      connection between their mental health issues and the Combat

19      Arms, we've had to request new authorizations for plaintiffs --

20      for those two plaintiffs for their providers to make sure that

21      the providers didn't include any mental health records that

22      weren't authorized to be released under the prior form.

23              And Ms. Hoekstra, you know, this week, you know, very

24      quickly got us those forms, you know, between yesterday and

25      today, I believe.  But we started out just, you know, sending

1    those to the providers, and so we're sort of restarting the

2    process, you know, with respect to those.  And we're using your

3    order and everything else, and we're pushing that along as fast

4    as we can, but I did want to flag that issue for the Court

5    because it has just come up.

6          **JUDGE RODGERS:**  Well, were these the subject of your

7    Motion to Compel on the interrogatories?

8          **MR. GUNDERSON:**  No.  So, they're previous responses to

9    these questions that we are not going to allege a connection

10   between our mental health issues and the Combat Arms, and now

11   their supplemental responses now say they are going to make

12   that connection.  So it wasn't that they weren't responding

13   before, it's that they changed their response now.

14         **JUDGE RODGERS:**  Well, I understand.  But I guess my

15   question is -- and maybe it's more for the Plaintiffs -- were

16   these mental health records redacted?  I'm talking about from

17   the VA, from the DoD.  Anything was redacted?

18         **MS. HOEKSTRA:**  Your Honor, I can speak in relation to

19   Mr. McCombs, who was one of the individuals, and there were no

20   redactions in his VA production or DoD production.

21         **MR. GUNDERSON:**  And that's true of Mr. Keefer as well,

22   he didn't redact VA or VBA records.  But we sent -- you know, a

23   couple of months ago when we sent the authorization for his

24   third-party medical records, those authorizations have a

25   carveout and said, you know, don't send Defendants any mental

1    health records.

2            And so now we have an alternative version of the form

3    that doesn't have that carveout in it that we now just received

4    from Ms. Hoekstra and the Plaintiffs and now we're sending on

5    to the providers to confirm that, you know, we did get all of

6    the records the first time around and that, you know, nothing

7    was excluded based on that carveout.

8            **JUDGE RODGERS:**  Okay.  Well, fortunately, Mr. Keefer

9    and Mr. McCombs's depositions are scheduled for a little bit

10   later in the month.  But you'll just have to, Mr. Gunderson,

11   alert us, myself or Judge Jones, if there's some issue we need

12   to intervene on, then let us know.

13           Hopefully you'll either get a response back from those

14   providers that you already have everything; or if not,

15   hopefully there will be a short turnaround in the production.

16           **MR. GUNDERSON:**  Will do, Your Honor.

17           **MR. AYLSTOCK:**  Your Honor, just a quick point of

18   clarification.  In the interim, I heard back from Roma.  We had

19   all thought that Hacker was all complete.  It looks like part 5

20   wasn't able to be opened, so his corrupt file may still have an

21   issue with regard to some medical records.  I'm really not sure

22   what that is.  But I said he was good, and I am correcting

23   myself because I didn't want to misrepresent anything to the

24   Court.

25           **JUDGE RODGERS:**  Judge Herndon mentioned that today.  I

1   was hoping that it had been resolved, but it sounds like it's

2   still an issue.

3           I understand that Roma is trying to work through

4   Jacqui Snead to get that part 5 resubmitted.  Is that --

5           **MR. AYLSTOCK:**  Yes, Your Honor.

6           **JUDGE RODGERS:**  All right.  Well, I have nominated

7   Judge Herndon to talk to Jacqui Snead.  No, I'm kidding.

8           **JUDGE HERNDON:**  I appreciate that very much.

9           **JUDGE RODGERS:**  You've got to earn your pay, Dave.

10          **MR. AYLSTOCK:**  Combat pay, I'd say, Judge.

11          **JUDGE HERNDON:**  I get ya.  That's the prerogative with

12   that Article III, you know.

13          **JUDGE RODGERS:**  Right.  I guess we'll sit tight and

14   see what kind of response Roma gets.

15          Judge Herndon, if you could reach out -- you probably

16   already have.  Do you know when the last time Roma tried to

17   communicate with Jacqui about this part 5?

18          **JUDGE HERNDON:**  I think it was either yesterday or

19   today, because this is just an ongoing issue, so she's in

20   communication with her regularly.

21          **JUDGE RODGERS:**  Do you know whether Jacqui Snead knows

22   that Mr. Hacker's deposition is scheduled at the end of the

23   month?

24          **JUDGE HERNDON:**  I believe she does, but I -- yeah, I

25   think she does.  I mean, I told her at one point, so --

1    **JUDGE RODGERS:**  I know she knows generally that all
2    the group A plaintiffs were to be deposed in July.  Well, let's
3    give it a couple of days and, if need be, we can reach out to
4    Jacqui and try to give Roma some help.

5    **JUDGE HERNDON:**  I've been emailing Roma during this
6    meeting, so I'll send her another one right now to let me know
7    when she's had that next contact with Ms. Snead.

8    **JUDGE RODGERS:**  Okay, sounds good.  Thank you.

9    Do we need to discuss anything further with regard to
10   the bellwether plaintiff depos or have we covered all of that?

11   **MR. AYLSTOCK:**  I think we've covered that, Your Honor.

12   **MR. FIELDS:**  Your Honor, a couple of things.  One, I
13   know Your Honor -- for Baker and Estes, they are going to be --
14   the spouses are going to be added as plaintiffs.  I don't think
15   I've seen either a *Lexecon* waiver or a designated form from
16   those individuals, so I think we'd need to get those documents
17   on file.

18   The other thing, I know Your Honor has said that we
19   can serve the discovery on Mrs. Estes.  I assume that she has
20   been formally added as a plaintiff in the case.  As the Court
21   is going through and looking at the Baker situation, the only
22   thing I would ask the Court to keep in mind is that, obviously,
23   even if the individual, Mrs. Baker, is referred to in the
24   complaint, that still wouldn't have given us the ability to
25   serve discovery on her because she would not have been a party.

1   So I would just ask Your Honor to take that into consideration

2   as you're reviewing the complaint.

3        **JUDGE RODGERS:**  All right, I will look at that.

4        Go ahead, Bryan.

5        **MR. AYLSTOCK:**  I guess I don't understand that

6   because, if she's named in the complaint, you serve discovery.

7        **JUDGE RODGERS:**  Yeah, I'm not sure what the -- and

8   again, I haven't looked at this, so let me do that.  I'm not

9   sure.  If the complaint identifies a loss of consortium claim

10  and it's clear that that's a part of the complaint -- and I'm

11  not talking about just some, you know, casual allegation buried

12  amongst dozens of others.  But if it's clear that Mrs. Baker is

13  making a loss of consortium claim, the fact that her name is

14  not in the caption is not going to be that important to me.

15       I'll have to look at it, Barry, and I will.  I do know

16  that I had a question from the clerk's office about loss of

17  consortium plaintiffs or the claims, and I did tell the clerk's

18  office to add, to the extent someone -- I think this came up in

19  relation to a request to add, and it might have been Mr. Estes.

20  But I did tell the clerk's office to add them to the case

21  caption.

22       **MS. BRANSCOME:**  Your Honor, with respect to Baker, I

23  know you had mentioned earlier that we should do her deposition

24  on the 21st.  Would it be all right, Your Honor, if we meet and

25  confer with Plaintiffs' counsel?  They have not offered us any

1   dates for Mrs. Baker, and I just would want to make sure that

2   we're not kind of going late into the night.  They may actually

3   want to move her to an adjacent day, and so I just was curious

4   if that was okay for us to do.

5          **JUDGE RODGERS:**  If you work it out.  What I was trying

6   to avoid are multiple trips to -- I'm not sure where -- I don't

7   know where the Bakers even reside.

8          **MS. BRANSCOME:**  Laramie, Wyoming.  And so, Your Honor,

9   that was one of the things Mr. Fields had said earlier, we also

10  have an interest in making these trips efficient, particularly

11  all the way to Laramie.  So really I think our concern is just

12  making sure that we could get discovery, but we agree that

13  there's efficiency in doing them on the same trip.

14         **JUDGE RODGERS:**  But I bet it's beautiful out there.

15  But, you know, the travel we certainly want to minimize that,

16  to the extent possible and reasonable.  So, yes, certainly

17  confer about that.

18         All right.  Let's see, Mr. Hacker.  What do we need to

19  talk about with Mr. Hacker?

20         **MR. AYLSTOCK:**  I think we've covered that, Judge.

21  Other than that issue with the computer glitch, his counsel has

22  been super cooperative and we're on schedule.

23         **JUDGE RODGERS:**  Very good.

24         **MS. BRANSCOME:**  Well, I do have one issue.

25         **JUDGE RODGERS:**  I'm sorry.

1      **MS. BRANSCOME:**  That's all right.  Like I mentioned

2   earlier, Your Honor, we have been working very well actually

3   with Mr. Hacker's counsel.  One issue is, obviously, as I had

4   mentioned, he was not a trial group A plaintiff until recently.

5      **JUDGE RODGERS:**  Right.

6      **MS. BRANSCOME:**  And so, his document productions are

7   behind the rest of the trial group A.  And I believe his

8   counsel is working diligently -- this is through no one's

9   fault.  He just simply was in trial group B, and now he's moved

10   up to A.

11      So I think we will be okay with a July 31st deadline.

12   But one of the things that we wanted to flag is his discovery

13   issues are not yet ripe.  We did include him, to the extent

14   that we could, in the motions to compel that were filed on July

15   8th.

16      So, to the extent we had already reached an impasse

17   with the Plaintiffs, we included those where they had, you

18   know, taken their position -- and they knew we were doing that.

19   But he still has issues that are still subject to meet and

20   confer.

21      I'm hopeful that we can work it all out, but there may

22   need to be additional motion practice on Mr. Hacker simply

23   because we just haven't gotten as far in the process.  So

24   there's nothing really to be done right now, but I just wanted

25   to flag for the Court, and particularly Judge Jones, that there

1    could be a separate dispute.

2         Obviously, we will take learnings from what comes out

3    of the hearing on the 16th, and we won't be knocking our heads

4    against the wall on issues that we did not prevail.  But there

5    could be some unique things with respect to Mr. Hacker.  So

6    he's just kind of on a slightly different schedule, but we're

7    trying to catch him up as fast as we can to the others.

8         **JUDGE RODGERS:**  Okay, very good.

9         Ms. Hoekstra, let me ask you, are you working with

10   Mr. Hacker's counsel?  Did I hear that earlier?

11        **MS. HOEKSTRA:**  Yes.  It's -- Evan Buxner is also

12   working with Mr. Hacker as Mr. Hacker's counsel, but yes, we're

13   coordinating with them.  I was involved in the earlier meet and

14   confer this week as well.

15        **JUDGE RODGERS:**  I don't have the chart with me -- I'm

16   in a different conference room from my office.  I don't have

17   the chart from Maj. Kim with me, so I don't know when his --

18   and the VA.  So I don't know when his productions were

19   complete.  But I do know that, in making the decision to move

20   Mr. Hacker from group B to group A, I was confident that those

21   productions had been complete.

22        Now, I understand what Ms. Branscome is talking about

23   is the production to the Defendants.  But --

24        **MS. HOEKSTRA:**  My understanding is -- I'm sorry, Your

25   Honor, go ahead.

1          **JUDGE RODGERS:**  No.  I'm done with what I had.

2          **MS. HOEKSTRA:**  My understanding is that the DoD and

3     the VA productions have been produced to Defendants with the

4     exception of the VBA CD that was received this week that

5     they're still looking through on his behalf, and they expect to

6     produce that hopefully by Monday as they have informed Defense

7     counsel.

8          **JUDGE RODGERS:**  So that's all gone to the Defense?

9          **MS. HOEKSTRA:**  Yes.

10         **JUDGE RODGERS:**  Were there any redactions for

11    Mr. Hacker?

12         **MS. HOEKSTRA:**  There are redactions for Mr. Hacker,

13    yes.

14         **MS. BRANSCOME:**  Yes.  We're just a little bit further

15    behind on the meet and confer process, Your Honor.  So there's

16    the corrupted disc issue, and then it's just, you know,

17    everyone prioritized the original trial group A.

18         So there have been actually good meet and confers

19    where there have been statements about the Plaintiffs' intent

20    to supplement some of their responses, and we just need to see

21    them.  It's just not ripe to file a motion to compel, we think,

22    when the Plaintiffs are still offering to supplement.

23         So he's not far behind the rest of trial group A.  We

24    just couldn't quite, you know, get everything in the July 8th

25    motion fairly, in our view.  We didn't think it was fair, where

1    the Plaintiffs had offered to keep cooperating, to file a

2    motion on this.

3            **JUDGE RODGERS:**   Well, fortunately, he's the last day

4    of the month.

5            **MS. BRANSCOME:**   Exactly.

6            **JUDGE RODGERS:**   So hopefully we can nudge Ms. Snead

7    and hopefully get the computer files in an uncorrupted form

8    produced.   And then you all can -- if you need to get a motion

9    filed, then certainly you'll do that and we'll address it.

10           But yes, hopefully the hearing with Judge Jones on the

11   16th will be informative and perhaps narrow some issues with

12   regard to Mr. Hacker.

13           Depositions of other case-specific bellwether

14   witnesses?

15           **MR. AYLSTOCK:**   Yes, Your Honor.   This is Bryan again.

16   None of those have been set yet.   We have been focused on the

17   plaintiffs.   But certainly we're willing to meet and confer

18   with the Defendants on a deposition protocol, or whatever needs

19   to happen.

20           We do, I guess, want a preview of some of these maybe

21   DoD or VA treater depositions, and so -- we are unaware of any

22   requests that have been made as of yet by the Defendants on

23   those, but we're certainly also willing to accommodate the

24   government, to the extent possible, and keep depositions short

25   and sweet.

1       Same with active duty military folks that might be
2   fact witnesses and so forth, especially given their duties and
3   the current situation.  So, happy to do all that, but we're
4   ready to go, and certainly understand the Court's deadline.
5       **JUDGE RODGERS:**  Well, let me ask, have you all
6   identified the depositions that you intend to take, the
7   Defendants, I guess, mainly?
8       **MS. BRANSCOME:**  So, Your Honor, we have been,
9   obviously, working on each of these files as we have been.
10  Part of what we have to narrow down is whether individuals are
11  current or former military.  Just because they served with a
12  plaintiff at a specific point in time does not necessarily mean
13  that they are still in the military.  So we are tracking that
14  down.
15      We're working diligently, and we are very much aware
16  of the discovery deadline.  So, if we don't get our act in
17  gear, we are the ones who will run into problems.  But we are
18  trying to do that as quickly as possible because we certainly
19  don't want to go through the *Touhy* process if it turns out that
20  someone is no longer a member of the military.  So we are very
21  much moving forward on that front.
22      **JUDGE RODGERS:**  Okay.  And that's the maximum of six,
23  right?
24      **MR. AYLSTOCK:**  Yes, Your Honor.
25      **JUDGE RODGERS:**  All right.  The Defendants' Motion to

1    Compel DoD discovery from 3M, is that you, Mr. Nomellini, or

2    someone else handling that?

3            **MR. NOMELLINI:**  Yes, Your Honor.  Judge Jones gave a

4    July 15th date for the government's response to that.  I have

5    not heard any further updates from the DoD other than from the

6    DOJ lawyer saying that they're going to file their response.

7            **JUDGE RODGERS:**  Okay.  Well, all I've seen is their

8    reply.  But that doesn't really require any response from the

9    Court, so I guess we're just waiting for their response.

10           **MR. NOMELLINI:**  Correct.

11           **JUDGE RODGERS:**  Judge Jones, is that how you see it?

12           **JUDGE JONES:**  Yeah, definitely.  But the 15th I'm

13    anticipating there will be a response.

14            Mr. Nomellini, have you had any contact with the

15    lawyer representing them about wanting more time or anything,

16    or has it just been no contact?

17           **MR. NOMELLINI:**  I have not heard any request from him

18    to add more time.  He did file something in regard to service

19    in the meet and confer.  We followed up on that in a response,

20    and we asked him if he had any updates in terms of documents or

21    depositions, and he would not answer that question.  He just

22    said, "I'm going to be filing a response."

23           **JUDGE JONES:**  Okay.  We'll see what they have to say

24    on the 15th.

25           **JUDGE RODGERS:**  Okay.  Thank you.

1            Depositions of government and 3M corporate witnesses?

2            **MR. FIELDS:**  Yes, Your Honor.  This is Barry.  There

3    are just a couple.  Right now we have a government witness

4    deposition, Hobbs.  He is scheduled for 7/16, July 16.  And

5    then the Plaintiffs have scheduled and we've agreed to the

6    deposition of Marc Doty on July 28th.  So those depositions are

7    the only two depositions that are currently on the calendar.

8            **MR. BUCHANAN:**  Yes, Your Honor, those dates are indeed

9    correct.  With regard to corporate witnesses, obviously we're

10   mindful of the deadline the Court has imposed for complete

11   corporate discovery for group A.  And there will probably be a

12   handful of additional witnesses that we seek dates for to

13   maximize the opportunity for full documents from those

14   witnesses.

15           We'd like to be targeting those last two weeks

16   consistent with the guidance Your Honor provided for the

17   earlier corporate depositions having effectively a clear

18   calendar so that we can ensure and everybody can plan for

19   completion of those witnesses.  We should have those witness

20   requests to the Defense, I would say, by mid next week.

21           **JUDGE RODGERS:**  Okay.  Very good.  Thank you for that

22   update.

23           Let me ask, Mr. Hobbs, Brian Hobbs, is he a former or

24   current government employee?

25           **MR. FIELDS:**  I believe he is current and he is being

1    represented by the DOJ.

2         **JUDGE RODGERS:**  Okay.  So have you all noticed -- I'm

3    assuming not from what you're telling me, but just to confirm

4    -- noticed any depositions of former government witnesses or

5    subpoenaed any since my decision to allow you to do that

6    without following the *Touhy* directive?

7         **MR. FIELDS:**  Your Honor, 3M has not noticed or

8    subpoenaed any pursuant to the Court's order.

9         **MR. BUCHANAN:**  Nor have the Plaintiffs, Your Honor.

10   We have proceeded as you've guided, and there may indeed be a

11   few, but we have not yet noticed any.

12        **MR. FIELDS:**  Same here.

13        **JUDGE RODGERS:**  Okay.  Could I ask to -- I don't know,

14   you all may provide this to Judge Herndon, but I would like to

15   regularly receive an electronic deposition chart, and not so I

16   can keep track of your every movement, I promise you.  But I

17   would like to see which category of witnesses are being

18   scheduled, particularly the government witnesses, but it

19   wouldn't hurt to go ahead and just include everyone.

20        That shouldn't be very hard to do.  I have one.  You

21   all have done this in the past.  I think it's a little

22   outdated, the one I have.

23        Could I put someone in charge of doing that?

24        **MR. NOMELLINI:**  We're happy to do that, Your Honor,

25   and we'll work with Plaintiffs on that.

1      **MR. FIELDS:**  Would you like that as a chart or a

2   calendar format?  Does it matter?

3      **JUDGE RODGERS:**  I do like to see it in a calendar

4   format, so that would be good.  I think what I have right now

5   is a chart, and I'm not critical of the chart.  But if you're

6   willing to put it in a calendar format, that would be better.

7      **MR. FIELDS:**  Yes, that would be workable.

8      **JUDGE RODGERS:**  Thank you.  And if you'll identify the

9   category, whether it's government, 3M, corporate, third-party

10   plaintiff, that would be helpful.

11      **MR. FIELDS:**  Yes, we will.

12      **JUDGE RODGERS:**  Thank you.

13      **MR. BUCHANAN:**  I'm assuming, Your Honor, you'd like us

14   to indicate if the government is a former employee or a current

15   employee?

16      **JUDGE RODGERS:**  Yes, yes, more specifically, yes.

17   Thank you.

18      **MR. BUCHANAN:**  And do you only want that for the --

19   you don't want the bellwether depositions included, or do you?

20      **JUDGE RODGERS:**  I do, I do.

21      **MR. BUCHANAN:**  Okay, fair enough.

22      **JUDGE RODGERS:**  Thanks.  Yeah, I do.  And then, as you

23   schedule additional bellwether case-specific witnesses, I would

24   like those added.

25      **MR. BROCK:**  Would it make sense maybe to update weekly

1    as opposed to dropping in new ones and sending every time we

2    change, or would you like it --

3              **JUDGE RODGERS:**  Weekly is fine, weekly is fine.

4              Then supplemental TAR training review update.  Is

5    Michelle Six --

6              **MS. SIX:**  Sorry, I was on mute.  I can update for the

7    Court.  The parties have agreed to a supplemental TAR protocol

8    that we think will serve to adjust the existing TAR model and

9    hopefully address any concerns that Plaintiffs had about

10   certain documents -- *(inaudible)* -- that the supplemental

11   protocol provides for additional collaborative training by both

12   parties of the Defendants' TAR system.

13             And we submitted the terms of the protocol to Judge

14   Jones last Friday along with a joint letter from the parties

15   explaining our agreed upon path forward.  And we did note for

16   the judge the parties may need to seek his guidance if there

17   are instances where we don't agree on the relevance of any one

18   particular document.

19             But I think we have some good news here to report.

20   We're already well underway on the steps outlined in that

21   protocol.  3M has already sampled data in connection with the

22   terms of our agreement which included sampling documents

23   hitting on search terms that were drafted by Plaintiffs.

24             And while the protocol allocated five business days

25   for Defendants to review those documents, 3M actually completed

1    our review in just two business days.  So we have already

2    turned those documents over to the Plaintiffs for their own

3    review, and the process is moving forward quickly.  And I think

4    both parties intend to be as efficient as possible.

5         The plan is for the parties to complete this joint

6    document training shortly with the goal that 3M can commence

7    further document review and complete additional productions to

8    Plaintiffs in compliance with Your Honor's discovery deadlines.

9         So this is a positive update I think.  I defer to Mr.

10   Buchanan if he believes I've missed anything, but we're moving

11   forward.

12        **MR. BUCHANAN:**  Yes, Your Honor.  And I appreciate the

13   cooperation on the Defense side to get to the agreement that we

14   ultimately arrived at.

15        Mid week next week we'll be conferring with the

16   Defendants regarding the supplemental training, and at that

17   point, to the extent there are any needs for, if you will, a

18   Court to call balls and strikes, we'll reach out to Judge Jones

19   on any disputed documents.  But we've been able to

20   collaboratively resolve this in prior training, and I would

21   hope that we would be able to do so as well next week.

22        **JUDGE RODGERS:**  That's very good news.  Happy to hear

23   that.  Do you all think you could send me a copy of the letter

24   briefs that you submitted to Judge Jones?  Were those separate

25   letters or was it one joint letter?  And then, did it outline

1    your protocol or was there a proposed order for the protocol or

2    just an agreement?

3              **MR. BUCHANAN:**   It's a joint letter that supplements

4    the TAR protocol.   We could formalize it as a -- I think it's

5    PTO 10 maybe, the TAR protocol.   We could make it PTO 10A if

6    you'd like it to be an order incorporated into the record.

7              **JUDGE RODGERS:**   I don't think the protocol is 10, but

8    I could be wrong.

9              **MR. BUCHANAN:**   It's one I reference a lot.   I don't

10   know why.   Okay.

11             **JUDGE RODGERS:**   You know better, so maybe it is.   I

12   don't know.   But regardless, whatever number it is, I do think

13   it should be incorporated into an amendment to that order.   But

14   I would like to see it.

15             And I stand corrected, it is 10.   I apologize, Mr.

16   Buchanan.   I was looking at something else today that I thought

17   was 10 and I knew it wasn't the TAR protocol.   But I would like

18   to see that.   And if it's in a letter form, it would be better

19   if you could convert it into something that could be entered on

20   the docket.

21             **MR. BUCHANAN:**   We'll work together to do so, Your

22   Honor.   Thank you.

23             **JUDGE RODGERS:**   All right.   Thank you.

24             Judge Jones, anything?

25             **JUDGE JONES:**   No, nothing from me.

1    **JUDGE RODGERS:** Judge Herndon?

2    **JUDGE HERNDON:** No. All good. Thank you.

3    **JUDGE RODGERS:** Okay. Bryan?

4    **MR. AYLSTOCK:** No, Your Honor. Thank you for your

5    time.

6    **JUDGE RODGERS:** Mike and Kim?

7    **MR. BROCK:** I think we're good, Your Honor. Thank

8    you.

9    **MR. NOMELLINI:** Your Honor, it's Mark. May I be heard

10   just briefly? We just received, while we were on the call,

11   Plaintiffs' response to the order to show cause for Mr. Garcia.

12   I don't know that Your Honor set a date for us to respond to

13   that. May we have ten days to respond?

14   **JUDGE RODGERS:** So he has responded, is that what

15   you're saying? I'm sorry, I don't have it -- so he has

16   responded to my order?

17   **MR. NOMELLINI:** Yes, he has.

18   **MR. AYLSTOCK:** Yes, Your Honor.

19   **JUDGE RODGERS:** You need ten days?

20   **MR. NOMELLINI:** Your Honor, from the tone of your

21   question, how about if we do it within -- how about if we do it

22   by next Friday, Your Honor?

23   **JUDGE RODGERS:** All right. I would like to get that

24   resolved. But that's fine, next Friday will work.

25   **MR. NOMELLINI:** And if we can do it sooner, we will.

1          **JUDGE RODGERS:**  Thank you.

2          Speaking of, I guess, Mr. Garcia and the trial pool, I

3   believe the Defendants, your time to respond with your

4   selections out of the six, that's due today, I believe, is it

5   not, before --

6          **MR. BROCK:**  That's correct.

7          **JUDGE RODGERS:**  I don't remember if we set it close of

8   business or just anytime today, I don't remember.

9          **MR. NOMELLINI:**  Close of business, Your Honor.

10          **JUDGE RODGERS:**  All right.  Well, we'll be looking for

11   that.

12          Anything else from anyone?

13          **MR. AYLSTOCK:**  No, Your Honor.  Thank you.

14          **JUDGE RODGERS:**  All right.  Thank you all very much.

15   This was very productive.

16          And Judge Jones, in particular, thank you for getting

17   the parties on your calendar so quickly to resolve these

18   pending motions so these depos can move forward as scheduled.

19   Everyone have a nice weekend.

20          ***(Proceedings concluded at 3:47 p.m.)***

21          --------------------

22   *I certify that the foregoing is a correct transcript from the*
     *record of proceedings in the above-entitled matter.  Any*
23   *redaction of personal data identifiers pursuant to the Judicial*
     *Conference Policy on Privacy are noted within the transcript.*
24
     *s/Donna L. Boland                          7-15-2020*
25   *Donna L. Boland, RPR, FCRR                 Date*
     *Official Court Reporter*