# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) Case No. 3:19-md-02885 ) ) Judge M. Casey Rodgers ) ) Magistrate Judge Gary R. Jones |
| This Document Relates to All Cases | ) ) ) ) ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 1

    A.    Plaintiffs Challenge Defendants' Reliance on Rule 33(d) ........................ 1

    B.    Plaintiffs Seek Information Regarding Defendants' Case Investigation That Is Protected By The Attorney Work Product Doctrine. ................................................................................. 3

III.  ARGUMENT ..................................................................................... 6

    A.    Defendants' Invocation Of Rule 33(d) Is Proper ........................ 6

          1.    Defendants' Responses to General Interrogatory Nos. 27, 28, and 29 are Sufficient. .................................................. 10

                a.    Interrogatory No. 27 ............................................... 13

                b.    Interrogatory No. 28 ............................................... 15

                c.    Interrogatory No. 29 ............................................... 18

          2.    Defendants' Response to Interrogatory No. 16 is Sufficient. ........ 20

          3.    Defendants' Responses to Bellwether Plaintiffs' Interrogatory Nos. 2, 3, 4, and 5 Satisfy Rule 33(d). .................... 23

    B.    Defendants Have Sufficiently Answered Bellwether Interrogatory No. 7. ................................................................................. 27

IV.  CONCLUSION .................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                               **Page(s)**

*3M Co. v. Kanbar*,
  2007 WL 1725448 (N.D. Cal. June 14, 2007) ...............................................11, 15, 18

*Betterman v. MSC Cruises (USA) Inc.*,
  2014 WL 12579756 (S.D. Fla. Apr. 9, 2014) ....................................................29, 30

*C.A. v. AMLI at Riverbend, L.P.*,
  2009 WL 1605807 (S.D. Ind. June 3, 2009) ...........................................................8, 9

*DiGiacobbe v. Nat'l R.R. Passenger Corp.*,
  1987 WL 11227 (E.D. Pa. May 21, 1987),
  *aff'd*, 849 F.2d 600 (3d Cir. 1988) .............................................................................28

*Dodson v. Persell*,
  390 So. 2d 704 (Fla. 1980) ........................................................................................30

*Hunt v. Lightfoot*,
  239 So. 3d 175 (Fla. Dist. Ct. App. 2018) .........................................................30, 31

*In re Engle Cases*,
  2013 WL 12156250 (M.D. Fla. June 25, 2013)..................................................28, 29

*MGP Ingredients, Inc. v. Mars, Inc.*,
  2007 WL 3010343 (D. Kan. Oct. 15, 2007) ...........................................................11

*Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*,
  305 F.R.D. 247 (D. Colo. 2014)...................................................................11, 15, 18

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir. 1993).............................................................................23, 27

*Smith v. Diamond Offshore Drilling, Inc.*,
  168 F.R.D. 582 (S.D. Tex. 1996) ............................................................................31

*Snead v. Am. Exp.-Isbrandtsen Lines, Inc.*,
  59 F.R.D. 148 (E.D. Pa. 1973) ................................................................................28

*Steel v. NCC Recovery, Inc.*,
  2013 WL 12170585 (M.D. Fla. Aug. 22, 2013) ................................................15, 18

*Turner v. Atl. Se. Airlines, Inc.*,
    2008 WL 11320105 (N.D. Ga. Jan. 25, 2008) ........................................................30

*United States Sec. & Exch. Comm'n v. Herrera*,
    324 F.R.D. 258 (S.D. Fla. 2017) ..............................................................................28

*Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*,
    2009 WL 1803216 (E.D. Mich. June 17, 2009)...........................................11, 15, 18

**Rules**

Fed. R. Civ. P. 33(d) .................................................................................................*passim*

**Other Authorities**

8B Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 2174 (3d ed. 2019) ..............................................................................12

## I.     INTRODUCTION

Plaintiffs seek an order from this Court compelling Defendants to supplement their answers to Plaintiffs' interrogatories.   Plaintiffs' motion raises two issues with Defendants' interrogatories.   *First*, Plaintiffs argue that Defendants have improperly invoked Federal Rule of Civil Procedure 33(d) in response to numerous interrogatories.   This argument fails because Defendants' responses comply with Rule 33(d), including by pointing Plaintiffs to specific documents in the production that contain the information requested.   Indeed, the purportedly deficient responses Plaintiff challenges here are materially similar to Defendants' other invocations of Rule 33(d), which this Court previously held were appropriate.   (Dkt. No. 1085 at 11-15.)   *Second*, Plaintiffs argue that Defendants must respond to Bellwether Interrogatory No. 7 and disclose information regarding whether and how defense counsel, or investigators working at the direction of defense counsel, are conducting "surveillance," including "any internet or computer surveillance," on the bellwether plaintiffs and their family members.   This request should be denied because the information sought is plainly protected by the attorney work product doctrine.

## II.     STATEMENT OF FACTS

### A.     Plaintiffs Challenge Defendants' Reliance on Rule 33(d)

Plaintiffs served their First Set of Interrogatories to Defendants on August 28, 2019. (Dkt. 1059-1.) Defendants performed a diligent search for responsive

information, and thereafter served their responses on October 11, 2019. (Dkt. No. 1059-2.)   Certain of Defendants' interrogatory responses contained references to documents in accordance with Federal Rule of Civil Procedure 33(d).   (*E.g.*, *id.* at Interrogatory Nos. 3, 5-8, 10, 26.)   On March 23, 2020, Plaintiffs filed a motion to compel challenging, among other things, Defendants' invocation of Rule 33(d) in response to Interrogatories No. 3 and 8.   (*See* Dkt. No. 1059.)   This Court found that Defendants' invocation of Rule 33(d) was proper, including because "Defendants use a discrete set of Bates numbers to refer Plaintiffs to identifiable [documents] that include the requested information," and thus denied "Plaintiffs' motion to compel better responses to Interrogatories Nos. 3 & 8."   (*See* Dkt. No. 1085 at 15.)

Since then, Defendants have supplemented their responses to Plaintiffs' First and Second Sets of Interrogatories on several occasions.   (*See* Dkt. No. 1226-1 Dkt. No. 1226-4; Dkt. No. 1226-2.)   Defendants' supplemental responses contain various references to documents in accordance with Rule 33(d).   The manner in which Defendants' supplemental responses invoke Rule 33(d) is materially similar to Defendants' initial responses to Interrogatories No. 3 and 8, which this Court held were proper.   Plaintiffs nevertheless filed this motion to compel asserting that Defendants' invocation of Rule 33(d) is deficient.   (Dkt. No. 1226 at 5-21.)

**B.     Plaintiffs Seek Information Regarding Defendants' Case Investigation That Is Protected By The Attorney Work Product Doctrine.**

Additionally, Plaintiffs' motion seeks to compel detailed information regarding Defendants' "surveillance," including "internet or computer surveillance," on "any Plaintiffs or any Plaintiffs' family members." (Dkt. 1226 at 21-23.) Defendants objected to producing this information on the grounds that it is protected by the attorney work product doctrine, and also on the grounds that the phrase "internet or computer surveillance" is vague and ambiguous (for example, does it include a lawyer performing a Google search of plaintiffs' social media in advance of a deposition?). The parties met and conferred regarding this interrogatory on numerous occasions. During those discussions, Defendants noted that Plaintiffs' responses to Defendants' discovery requests also object to producing "investigative" materials, and thus that Plaintiffs appeared to be withholding their own "surveillance" materials from production. (*E.g.*, Ex. 1 at 7/2/20 email from N. Wasdin to M. Kelly; *id.* at 7/6/20 email from N. Wasdin to M. Kelly) Indeed, Plaintiffs' counsel has repeatedly used exhibits at defense-witness depositions that were not previously produced to Defendants and appear to be the product of Plaintiffs' "online surveillance," such as Doug Ohlin's online voter registration. (*See* Ex. 13, Exhibit 24 to Elliot Berger's 12/10/19 Deposition.) Thus, it appeared that Plaintiffs were withholding their own "surveillance"

materials from production, and, during the parties' meet and confer, Defendants asked for Plaintiffs' position on whether factual information collected by lawyers was discoverable.  (*Id.*)  Plaintiffs' position was that (i) their own case research was protected work product, but (ii) their treatment of that material was irrelevant to whether Defendants must produce similar materials to Plaintiffs.  (*See* Ex. 1)

Additionally, during the parties' correspondence on this issue, there was some confusion over what type of "surveillance" Plaintiffs were seeking information about, including whether it would include (i) information collected by lawyers, (i) information collected by investigators working at the direction of counsel, and/or (iii) information that is publicly available and thus equally accessible to both parties (*e.g.*, a plaintiffs' social media posts).  (*See id.*)  The parties met and conferred telephonically on that issue on July 7, 2020.  On that call, Plaintiffs stated that Bellwether Plaintiffs' Interrogatory Nos. 6 and 7 are seeking (i) "surveillance" materials created by non-lawyers (*e.g.,* investigators working at the direction of counsel) that are not equally available to both parties, such as photographs or video taken by a private investigator, but *not* (ii) information collected by lawyers, or information that is equally accessible to both parties (*e.g.*, information a plaintiff posted on social media).  (*Id.* at 7/7/20 email from N. Wasdin to B. Aysltock)  In subsequent email correspondence, Plaintiffs further clarified that they are seeking information about *any* photographs of

plaintiffs, including those taken by lawyers.  (*Id.* at 7/7/20 email from B. Aylstock to N. Wasdin.)

In response, Defendants reasserted their position that information collected by lawyers (or investigators working at the direction of counsel) in anticipation of litigation is protected by the attorney work product doctrine.  (*Id.* at 7/7/20 emails from N. Wasdin to B. Aysltock.)  However, in order to avoid unnecessary motion practice, Defendants offered to tell Plaintiffs whether they presently have any "surveillance" materials of the kind identified by Plaintiffs during the meet and confer, so long as Plaintiffs agreed that such a disclosure would not operate as a waiver of any work product protection that would otherwise attach, and that such a disclosure did not create an obligation to make a further similar disclosure in the future.  (*Id.*)  Plaintiffs did not accept that offer and instead filed the instant motion.

Notably, Plaintiffs' motion is narrower than the parties' meet and confer insofar as it does not seek information responsive to Bellwether Plaintiffs' Interrogatory No. 6, which would include a detailed description of *the information* collected by lawyers and investigators working at their direction.  (*See* Dkt. No. 1226-5 at Interrogatory No. 6.)  Rather, Plaintiffs move only on Bellwether Plaintiffs' Interrogatory No. 7, which seeks the following information:

> Have you conducted any surveillance, including but not
> limited to any internet or computer surveillance, on any

Plaintiffs or any of Plaintiffs' family members? If so, please state the following:

a. Who or what is the subject of such surveillance;

b. The date and time such surveillance began;

c. Whether such surveillance is still ongoing and if not, the time and date on which such surveillance ended; and

d. The identity of every individual who conducted or participated in any way in such surveillance, whether as an active participant, as a planner, or in post-surveillance analysis or production, and the identity of each such individual's employer.

(*See, e.g.*, Ex. 2, 3M's Answers and Objections to Plaintiff Lewis Keefer's First Interrogatories to Defendants.)   Plaintiffs' motion thus seeks information regarding, among other things, whether lawyers representing Defendants in this litigation (or investigators working on their behalf) have conducted research on plaintiffs, and, if so, which lawyers did the research, when it was done, whether it is ongoing, and the identify of various support staff that assisted with those efforts. This information is plainly protected by the attorney work product doctrine.

## III.   ARGUMENT

### A.   Defendants' Invocation Of Rule 33(d) Is Proper.

Rule 33(d) permits a responding party to provide business records in lieu of expressly responding to an interrogatory if: (1) the burden of deriving the answer is substantially the same for both parties; (2) the responding party specifies records in sufficient detail to enable the requesting party to locate and identify the records;

and (3) the responding party provides the requesting party a reasonable opportunity to examine and audit the records. Fed. R. Civ. P. 33(d).  The interrogatory answers Plaintiff challenges here contain references to various documents pursuant to Rule 33(d).  Like the interrogatory answers this Court previously found proper, "Defendants do not leave Plaintiffs to guess where, or in what specific documents, they may find the information requested."  (Dkt. No. 1085 at 13.)  "Instead, Defendants use a discrete set of Bates numbers to refer Plaintiffs to identifiable [documents] that include the requested information."  (*Id*. at 14.)  Plaintiffs nevertheless move to compel additional information here.

Plaintiffs' motion essentially boils down to the assertion that, to properly invoke Rule 33(d), the responding party must include in the interrogatory response two express representations: (1) that "the responsive information was not 'more easily available to Defendants than in the format already produced,' and (2) [that] the Rule 33(d) documents Defendants identified contained all responsive information 'to the extent that information exists and was available to Defendants.'"  (Dkt. No. 1226 at 7-8.)  That "express representation" requirement is found nowhere in the Rule.  Rather, as support for their assertion, Plaintiffs cite the Court's April 10, 2020 order, in which, according to Plaintiffs, "the Court concluded that 3M's Rule 33(d) responses were sufficient only if Defendants [made those] represent[ations]."  (*Id.*)  Plaintiffs' argument is without merit.

As an initial matter, Plaintiffs mischaracterize the Court's April 10, 2020 order.  True, in it the Court noted that (1) "Plaintiffs should be able to obtain from Defendants' spreadsheets the sales and distribution information sought in Interrogatories Nos. 3 & 8 to the extent that information exists and was available to Defendants," and (2) that the sales and distribution information at issue "does not appear to be any more easily available to Defendants than in the format already produced."  (Dkt. No. 1085 at 14-15.)  But the Court did not, as Plaintiffs assert, "conclude[] that 3M's Rule 33(d) responses were sufficient *only* if Defendants [made those] represent[ations]."  (Dkt. No. 1226 at 7.)  To the contrary, the Court's April 10, 2020 order *denied* "Plaintiffs' motion to compel better responses to Interrogatories Nos. 3 & 8" notwithstanding that they did *not* contain those express representations.  (*See* Dkt. No. 1085 at 15; Dkt. No. 1059-2 at Interrogatories Nos. 3 and 8.)

Contrary to Plaintiffs' assertions, federal courts analyzing Rule 33(d) responses to not require an express representation that "the Rule 33(d) documents Defendants identified contained *all* responsive information."  Rather, courts require that parties perform a reasonable and proportionate search for responsive information, and produce the information identified during that search.  For example, in *C.A. v. AMLI at Riverbend, L.P.*, the plaintiff served an interrogatory requesting the "complete names, job functions, social security numbers, and

addresses of all of your employees that worked at the apartment complex which is the subject matter of this lawsuit from the date you first began managing and or (sic) owning the apartment complex until the date of the incident." 2009 WL 1605807, at *2 (S.D. Ind. June 3, 2009). Defendants produced employment records in response pursuant to Rule 33(d). *Id.* Far from requiring the certification Plaintiffs demand here, the court found that the response was adequate, even though it contained an express statement that certain responsive information and documents were *not* identified on burden grounds. *Id.* According to the court in that case:

> Fed.R.Civ.P. 33(d), does not require the responding party to an interrogatory or other discovery request to do more, or give over more, that it is able to do based on the data base in maintains. Defendants' efforts to provide the requested material were reasonable and adequate. We conclude that their response suffices under the applicable rules of procedure.

*Id.* Plaintiffs' motion here fails for the same reason.

Plaintiffs' motion is particularly without merit given that they repeatedly rely on Rule 33(d) in their own discovery responses and do not make the certifications they now claim are required. (*See* Ex. 3 at Interrogatory Nos. 11, 12, 20, 22, and 23; Ex. 4 at Interrogatory Nos. 8 and 54; Ex. 5 at Interrogatory No. 54; Dkt. No. 1226-5 at Interrogatory Nos. 8, 9, 10, 11, and 12; Ex. 6.) Given that Plaintiffs themselves do not make the express representations they demand from

Defendants, their argument that those representations are *required* under Rule 33(d) is impossible to credit.  In any event, an analysis of the challenged responses shows that they are both consistent with the applicable rules and orders.

### 1. Defendants' Responses to General Interrogatory Nos. 27, 28, and 29 are Sufficient.

Interrogatory Nos. 27, 28 and 29 are essentially requests that Defendants review and catalogue the prior document productions for certain types of information.  (Dkt. No. 1059-2; Dkt. No 1059-3.)  Defendants objected to these interrogatories on numerous grounds, including that it was improper to use an interrogatory to shift the burden of document review to the producing party.  (*See* Dkt. No. 1226-4.)  Plaintiffs now seek to compel Defendants to respond.

As an initial matter, Plaintiffs have never addressed Defendants' objection to the scope, burden, and proportionality of Interrogatory Nos. 27, 28, and 29. At the outset, Defendants objected to Interrogatory Nos. 27, 28, and 29 as overbroad, unduly burdensome, and disproportional to the needs of this case because they ask Defendants to review, categorize, and index the documents produced pursuant to the agreed TAR Protocol. Defendants noted that, in Pretrial Order No. 10, "[t]he parties agree[d] to use TAR to identify and classify potentially responsive documents in connection with Defendants' production."  (Dkt. No. 443 at 10.) Defendants' position remains that, having required that Defendants use TAR to identify, classify and produce documents in this litigation, Plaintiffs cannot now go

back and request that Defendants undertake the significant burden of manually reviewing and reclassifying those documents into various subject-matter buckets. Despite the fact that Defendants have reiterated this objection during every meet-and-confer session on these interrogatories, Plaintiffs have made no effort to address Defendants' objection in their motion to compel.

Courts have squarely rejected similar interrogatories, even in cases not involving an agreement between the parties to rely on TAR. *See, e.g.*, *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 255 (D. Colo. 2014) (sustaining a defendant's objection to a plaintiff's interrogatory because "[a] party may properly object to overly broad or unduly burdensome discovery requests that seek to impose the duty of organizing documents according to another party's document requests") (citing *MGP Ingredients, Inc. v. Mars, Inc.*, 2007 WL 3010343, at *4 (D. Kan. Oct. 15, 2007)); *Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*, 2009 WL 1803216, at *3 (E.D. Mich. June 17, 2009) ( "Rule 34 and the relevant case law are quite clear: once a party demonstrates that it has produced documents as they are kept in the usual course of business, it has no further duty under Rule 34 or otherwise, absent some exceptional circumstances not present in this case, to organize and label the documents."); *3M Co. v. Kanbar*, 2007 WL 1725448, at *3 (N.D. Cal. June 14, 2007) (refusing to find exceptional circumstances where moving party complained about sorting through "a mass of

documents" because outcome was a "predicament essentially of [moving party's] own making" as a result of the "broad document requests").

The undue burden imposed by Plaintiffs' interrogatory is underscored by the fact that Plaintiffs have taken numerous depositions of the relevant marketing, sales, and distribution personnel, including numerous 30(b)(6) depositions, during which Plaintiffs inquired into the detail of Defendants' marketing, sales, and distribution practices and repeatedly demonstrated their familiarity with the records produced pursuant to the agreed TAR Protocol. Plaintiffs thereby sought the requested information through those less burdensome means, and in the process demonstrated their ability to navigate and isolate the documents produced in this case, including the marketing, sales, and advertising materials requested by these interrogatories. Accordingly, an ex-post interrogatory asking Defendants to re-review those same materials and sort them into subject-matter buckets is unduly burdensome and disproportional to the needs of the case. *See* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2174 (3d ed. 2019) (explaining that the "proportionality approach [employed by courts] balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory").

For the foregoing reasons, and especially because Plaintiffs have offered no argument against Defendants' objection, the Court should deny Plaintiffs' motion

to compel. Notwithstanding the fact that the Court should deny Plaintiffs' motion to compel for failure to rebut Defendants' objection, Defendants also address Plaintiffs' arguments about Interrogatory Nos. 27, 28, and 29.

### a.      Interrogatory No. 27

Interrogatory No. 27 is a capacious document request masquerading as an interrogatory, which, for the reasons set forth above, the Federal Rules do not permit. Despite Plaintiffs' assertion that their "Interrogatories . . . do not impose a document review obligation on counsel," (Dkt. No. 1226 at 10 n.11.), Interrogatory No. 27 asks:

> *Please identify all Documents and Communications relating to or constituting any marketing, advertising, promotional, sales, or instructional material regarding the 3M Earplugs*, including posters, brochures, print, broadcast, internet, and social media material, whether directed to end-users, distributors, or to purchasers, including the manner of dissemination of such material, any contracts relating to such material, the details of the medium, manner, and timing of its distribution, and the identities and contact information of any entities apart from Defendants involved in the preparation, dissemination and placement of such material, and the Bates identifiers for any drafts of such material.

(Ex. 7 at 3-4 (emphasis added).) As defined in Plaintiffs' Second Set of Interrogatories, "[w]here used with respect to a communication or document, the word 'identify' means to provide the date and Bates number for that communication or document." (*Id.* at 2.)  Therefore, as written, Interrogatory No. 27 plainly asks Defendants to list the Bates numbers and dates for "all Documents

and Communications relating to or constituting any marketing, advertising, promotional, sales, or instructional material regarding the 3M Earplugs." (*Id*. at 3.)

As Defendants explained to Plaintiffs during the Parties' meet-and-confer sessions, responding to Interrogatory No. 27 would impose a great burden on Defendants given the breadth of the Interrogatory and the number of documents that have been produced in this case. That the burden imposed by Interrogatory No. 27 is undue is all the more clear because Plaintiffs have already had the opportunity to question Defendants' 30(b)(6) witness on marketing. Therefore, Plaintiffs have already had a less burdensome opportunity to elicit testimony from Defendants about marketing.

In the interest of cooperation, during the Parties' meet-and-confer session, Defendants asked whether Plaintiffs were willing to narrow Interrogatory No. 27 in a way that might appropriately reduce the burden on Defendants. Plaintiffs asked whether Defendants have a single database that contains all marketing materials, which Defendants understood to be possible way to narrow the scope of Interrogatory No. 27. Following the meet-and-confer session, Defendants identified the CELLUM database as a potential candidate because it contains various approved marketing, advertising, and promotional materials related to 3M's hearing protection devices. Where available, the CELLUM database also includes metadata for each document that is maintained in the database, including

14

information regarding the production of a document, when a document was in use, and the anticipated audience for a document. Defendants then reviewed documents produced from the CELLUM database for responsiveness to Interrogatory No. 27 and supplemented their response with a list of *hundreds* of Bates numbers. (*See* Dkt. No. 1226-4)

Defendants have reasonably and in good faith responded to Interrogatory No. 27 by providing a list of responsive Bates numbers from the CELLUM database, as called for by the Interrogatory. Plaintiffs offer no legal support for the proposition that Defendants have a further obligation to re-review the remainder of their production in response to Interrogatory No. 27. That is because such a request is not proper. *See Nat'l Jewish Health*, 305 F.R.D. at 255; *Valeo Elec. Sys.*, 2009 WL 1803216, at *3; *Kanbar*, 2007 WL 1725448, at *3; *Steel v. NCC Recovery, Inc.*, 2013 WL 12170585, at *2 n.3 (M.D. Fla. Aug. 22, 2013). Because Defendants have satisfied their burden under the Federal Rules with respect to Interrogatory No. 27, the Court should deny Plaintiffs' motion to compel.

### b.    Interrogatory No. 28

Defendants informed Plaintiffs as early as April that they were standing on their burden objection to Interrogatory No. 28 and reiterated that point during the Parties' meet-and-confer session on June 23, 2020. Plaintiffs seem to acknowledge that Defendants have stood on their objection—in a footnote, Plaintiffs cite

Defendants' objection.  (*See* Dkt. No. 1226 at 11 n.3.)  But, again, Plaintiffs have

not offered an argument in response to Defendants' objection. Instead, Plaintiffs

attempt to recharacterize Interrogatory No. 28, and to "clarify that they do not seek

to require Defense Counsel to review the production, but instead seek Defendants'

knowledge on this issue." (*Id.*) But, contrary to Plaintiffs' assertion, Interrogatory

No. 28 quite plainly seeks a list of Bates numbers and Plaintiffs cannot now

attempt to serve a new interrogatory by way of a motion to compel. Interrogatory

No. 28 states:

> *Please identify all final versions of any packaging, instruction, insert,*
> *and/or user guide for the 3M Earplugs*, the methods by which these
> items were distributed (whether were distributed in conjunction with
> all 3M Earplugs, with some specific subset of the 3M Earplugs, or
> otherwise), and the time periods during which each item was
> distributed.

(Ex. 7 at 4.)  As defined in Plaintiffs' Second Set of Interrogatories, "[w]here used

with respect to a communication or document, the word 'identify' means *to*

*provide the date and Bates number for that communication or document*." (*Id.* at

2.) Therefore, Interrogatory No. 28 asks Defendants to list the Bates numbers and

dates of final packaging, instructions, inserts, and user guides. To provide this

information, Defendants would have to manually review and categorize the TAR

production.

The Federal Rules of Civil Procedure do not permit Plaintiffs to impose such

a burden on Defendants, especially not where, as here, the parties agreed to use

TAR (and not a manual review) and there are less burdensome ways for plaintiffs to identify the requested information, such as by asking that question at one or more of the numerous depositions of the personnel responsible for instructions and packaging inserts that Plaintiffs have taken to date, during which Plaintiffs inquired into the details of those subjects and demonstrated their familiarity with the relevant materials produced pursuant to the agreed TAR Protocol by using those materials as deposition exhibits. (*See, e.g.*, Ex. 8, B. Myers Oct. 18, 2019 30(b)(6) Dep. at 178:20–21 (Plaintiffs represented that they "ha[d] looked through all the documents that have been produced."); *id.* at 20:8–46:9 (Plaintiffs questioned Mr. Myers about how he prepared to testify, about instructions, packaging, and labeling and Plaintiffs learned that Mr. Myers reviewed documents, collected data, and spoke with his colleagues.); *id.* at 313:9–19 (Plaintiffs questioned Mr. Myers about a "document produced in this litigation from 3M's files" about a "CAE dual-ended earplug paper insert.").)

In fact, Mr. Myers testified during his 30(b)(6) deposition that he "provided to the best of [his] ability" the "labels, instructions, and packaging materials" that he could find during his preparation. (*Id.* at 44:19–45:5, 45:23–46:9.)  Mr. Myers further provided Plaintiffs with two binders of "the packaging and labeling and instruction information that [he] pulled" together through his extensive research. (*See id.* at 44:19–45:5.) Interrogatory No. 28 is therefore objectionable for the

reasons previously stated and the Court should deny Plaintiffs' motion to compel a response to Interrogatory No. 28. *See Nat'l Jewish Health*, 305 F.R.D. at 255; *Valeo Elec. Sys.*, 2009 WL 1803216, at *3; *Kanbar*, 2007 WL 1725448, at *3; *NCC Recovery*, 2013 WL 12170585, at *2 n.3.

### c.      Interrogatory No. 29

Defendants have properly responded to Interrogatory No. 29. Plaintiffs' motion to compel attempts to rewrite the Interrogatory while ignoring the Parties' discussions during their April meet-and-confer sessions. As with Interrogatory No. 28, Interrogatory No. 29 seeks a list of Bates numbers and dates. The Interrogatory states:

> *Please identify each Document*, including any instruction, packaging, guide, insert, or promotional material, contained in shipments of 3M Earplugs delivered to the U.S. Government, and the shipment(s) or time period(s) in which each such Document was distributed.

(Ex. 7 at 4.)  As defined in Plaintiffs' Second Set of Interrogatories, "[w]here used with respect to a communication or document, the word 'identify' means *to provide the date and Bates number for that communication or document*." (*Id.* at 2.) Therefore, contrary to Plaintiffs' motion, Interrogatory No. 29 does not merely seek general "information on the advertising, instructions, or other documents (if any)" that were in shipments to the U.S. Government.

In response to Plaintiffs' Interrogatory No. 29, and consistent with their obligations under the Federal Rules, Defendants provided information about the

materials included with the CAEv2 when it was shipped to the U.S. Government. Among other things, Defendants (i) cited 30(b)(6) deposition testimony about whether instructions were included in bulk shipments of the CAEv2, and (ii) identified, by specific Bates number, the bill of materials for shipments of the CAEv2 to the military. Defendants explained that "[t]he bill of materials lists the various materials that went into each shipment." (Dkt. No. 1226-3.) Defendants also directed Plaintiffs, by reference to specific Bates numbers, to sales information that Defendants have complied concerning shipments to the U.S. Government. This information—what went in each shipment and when—is the information sought by Interrogatory No. 29.

Moreover, Plaintiffs have previously demonstrated their ability to use the bill of materials to analyze what was shipped with the CAEv2. During his 30(b)(6) deposition, Mr. Myers referred to the bill of materials when answering questions about what was in shipments of the CAEv2 to the U.S. Government. (*See* Ex. 8, B. Myers Oct. 18, 2019 30(b)(6) Dep. at 80:4–88:1.) Plaintiffs themselves referred to the bill of materials when asking Mr. Myers questions about what was shipped to the U.S. Government. (*See id.* at 128:10–15 ("If you look at the bill of materials for the purchases in 1999 related to the Combat Arms SKU that we were talking about earlier and the purchase by the military, what were the product parts lists for the 1999 purchases by the military?").)

Finally, in response to a question from Plaintiffs during the Parties' April 10 meet-and-confer session, Defendants provided further description of how to use the bill of materials. During that call, after Defendants again explained that the bill of materials documents the contents of CAEv2 shipments, Plaintiffs stated that they had some questions about how to link the information in a bill of materials to individual documents that might have been included in a shipment. In response to Plaintiffs' question, Defendants supplemented their response to Interrogatory No. 29, adding: "The component numbers listed in the bills of materials correspond to component numbers assigned to, and in certain cases printed on, labels and inserts. (*See, e.g.*, 3M_MDL000425610 (318-00138), 3M_MDL000425619 (318-00139), 3M_MDL000425625 (318-00140A), 3M_MDL000425605 (318-00138A), 3M_MDL000425612 (318-00138B).)." Dkt. No. 1226-4.) Defendants believe this addition to their answer addresses Plaintiffs' question. Plaintiffs' motion does not acknowledge or address that Defendants supplemented their answer in response to a specific question raised by Plaintiffs about the bill of materials. This further underscores that Defendants have properly answered Interrogatory No. 29 and that Plaintiffs' motion to compel should be denied.

### 2. Defendants' Response to Interrogatory No. 16 is Sufficient.

Plaintiffs argue that Defendants' response to Interrogatory No. 16 (which was previously supplemented twice in response to the Court's April 10, 2020 order

and the parties' subsequent discussions) remains deficient because Defendants only responded with *Elliot Berger's knowledge* of information on passive, non-linear earplugs produced by other manufactures, rather than *Defendants' corporate knowledge*. (*See* Dkt. No. 1226 at 14.)  Although styled in Plaintiffs' motion as a deficiency under Rule 33(d), the parties' dispute is actually one of interpretation of the Court's April 10, 2020 order.  Interrogatory No. 16 seeks the following broad information:

> Please identify all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity, including (i) the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs.  (Dkt. No. 1226-2.)

The Court first addressed this interrogatory in connection with its April 10, 2020 order.  At that time, the Court held that:

> ***The Court cannot compel Defendants in some abstract manner to determine and report on their corporate knowledge of all passive level-dependent or non-linear HPDs, as requested in Interrogatory No. 16.*** Indeed, Plaintiffs have not offered a feasible manner for Defendants to answer this interrogatory as drafted, likely because it raises issues of undue burden and proportionality. However, to the extent Defendants employed an identifiable and discrete group of individuals, or a single individual, who would examine alternative HPDs to their own products (including the CAEv2) and communicated with the United States Government about these designs, Defendants must identify those individuals and disclose information responsive to Interrogatory No. 16. (Dkt. 1085 at 19-20.)

Thus, as Defendants read the order, the Court rejected Plaintiffs' request for abstract "corporate knowledge of all passive level-dependent or non-linear HPDs, as requested in Interrogatory No. 16," and instead ordered Defendants to identify the individual(s) "who would examine alternative HPDs to their own products" and disclose information responsive to Interrogatory No. 16 *for that person or persons*. That is precisely what Defendants did in their supplemental responses to Interrogatory No 16.  (*See* Dkt. No. 1226-2 at Interrogatory No. 16.)   Plaintiffs' present request for additional information on "*Defendants'* knowledge" (*i.e.* abstract corporate knowledge) is inconsistent with the Court's April 10, 2020 order, and should be denied for the reasons stated therein.

Moreover, contrary to Plaintiffs' arguments, Defendants did not limit their interrogatory answer with respect to "'whether Defendants had conversations with the Government' about alternative products" to only Mr. Berger.  (Dkt. No. 1226 at 15.)   Rather, Defendants stated that: "[b]ased upon a reasonable investigation, Defendants are not presently aware of any conversations between *Aearo or 3M employees* and the United States Government regarding the design of passive level-dependent nonlinear hearing protection devices that were alternatives to Defendants' products." (Dkt. No. 1226-2.)  And Defendants specifically identified for Plaintiffs an instance from August 2011 in which "Doug Ohlin contacted military personnel to inquire whether the military was using the Moldex

Battleplug." *Id.* Thus, Defendants' responses to Interrogatory No. 16 (which collectively include nearly four pages of narrative information), are consistent with this Court's prior orders, and Plaintiffs' effort to re-litigate the same issues here again should be denied.[1]

### 3. Defendants' Responses to Bellwether Plaintiffs' Interrogatory Nos. 2, 3, 4, and 5 Satisfy Rule 33(d).

In Bellwether Plaintiffs' Interrogatory Nos. 2-5, Plaintiffs seek information that has been addressed by Defendants' previous responses to interrogatories, significant briefing by the parties, and an April 10, 2020 Order. Plaintiffs' present motion just rehashes issues that the Court has previously resolved.

In particular, Bellwether Plaintiffs' Interrogatory Nos. 2 and 3 seek information regarding sales and distribution of CAEv2 *to particular duty stations*. (Dkt. No. 1226-5)  As the Court is aware, the parties have already extensively litigated the issue of the sales and distribution data that is reasonably available to

---

[1] Plaintiffs also cite a March 14, 2011 email exchange between Doug Ohlin, Michele Cimino, and Doug Moses, Ex. 9, 3M_MDL000364204, to suggest that Mr. Cimino and Mr. Moses were also involved in examining and evaluating competing products. (*See* Dkt. No. 1226 at 15.)  The email, however, discusses Defendants' *market position* vis-a-vis the Moldex Battleplug, not, as contemplated by Interrogatory No. 16 and the Court's April 10, 2020 order, a comparative analysis or testing of the CAEv2 to that product.  And even putting that aside, the email exchange was produced on September 30, 2019, before both Mr. Cimino and Mr. Moses were deposed.  Plaintiffs had ample opportunity to question Mr. Cimino and Mr. Moses' knowledge as it pertains to Interrogatory No. 16 at their depositions.  Indeed, given the overbreadth of the information sought by Interrogatory No. 16, it is better suited for questioning during a deposition.  *See Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Written interrogatories are rarely, if ever, an adequate substitute for a deposition when the goal is discovery of a witness' recollection of conversations.").

Defendants in connection with Plaintiffs' prior motion to compel "better" responses to General Interrogatory Nos. 3 and 8, which broadly sought information about all sales and distribution of the CAEv2.  (*See* Dkt. No. 1085 at 11-15.)  As explained in Defendants' prior briefing on that issue, Defendants went to great lengths to assemble the spreadsheets containing sales and distribution data in response to Plaintiffs' interrogatories.

Importantly, the spreadsheets produced by defendants identify both (i) the location where the product was shipped (*e.g.*, "Fort Bragg"); and (ii) various 3M/Aearo representatives associated with the sale.  (*See* Ex. 10 (Sales Spreadsheet); Ex. 14 (Key to Sales Spreadsheet).) For example, the spreadsheets produced by Defendants list Aearo/3M employees "Tim McNamara" in connection with a shipment to "Aberdeen Proving Ground" (Row 2) and "Frank Gavin" in connection with a shipment to "Major Marc Stevens" (Row 17).  Not surprisingly, after defendants produced the sales spreadsheet, plaintiffs deposed both Mr. McNamara and Mr. Gavin, and had the opportunity to ask them further questions about the spreadsheet.  As Defendants have previously explained, although no spreadsheet is perfect, it is the best available information.

Thus, in response to Bellwether Plaintiffs' Interrogatory Nos. 2 and 3 regarding CAEv2 shipped to individual Plaintiff's duty stations, Defendants referred Plaintiffs to their prior responses to General Interrogatory Nos. 3 and 8

and documents compiled by Defendants, which contain the sales and distribution data to the extent available. (*See, e.g.*, Ex. 2, 3M's Answers and Objections to Plaintiff Lewis Keefer's First Interrogatories to Defendants.)   The referenced documents provide detail on every sale of the CAEv2 over the past twenty years to the extent available. (*See* Dkt. No. 1077 at 4–5, 8.)  Defendants are not presently aware of any information beyond what was previously complied and produced for each individual duty station.

As Defendants have previously explained, gathering sales and distribution information was a significant undertaking amassing hundreds of hours work because it required harvesting data from numerous different databases. (*See id.*) Defendants also explained that there is no perfect, singular source of data, or singular set of documents that tracks every sale of the CAEv2. (*See id.* at 8.) Furthermore, the spreadsheets identified in Defendants' response reflect information about sales to the U.S. Government. (*See* Ex. 10 at 3M SKUs Row 16, 3M_MDL000393647.)   The Court previously held that Defendants' responses regarding sales and distribution information satisfied Rule 33(d), and should do so here. (*See* Dkt. No. 1085 at 15.)

Similarly, the information sought by Bellwether Plaintiffs' Interrogatory Nos. 4 and 5 regrading on site visits at individual Plaintiff's duty stations is captured by responses to General Interrogatory Nos. 5 and 27, which broadly

sought identification of all marketing, advertising, promotional, sales, and instructional materials for the CAEv2.   (*See* Dkt. 1226-3; Dkt. No. 1266-4.) Defendants referred Plaintiffs to their response in General Interrogatory Nos. 5 and 27, which cited to a production from the CELLUM database and listed specific bates numbers.   (*See* Dkt. No. 1226-4 at 2–8.)   Like the sales and distribution data discussed above, Defendants are not presently aware of any information on what marketing was done for each individual duty station beyond what was previously complied and produced.

That the burden of conducting such an investigation is undue is highlighted by the fact that Plaintiffs have taken significant 30(b)(6) testimony on Defendants' marketing efforts.   Among other things, Defendants produced 30(b)(6) witnesses to "describe generally Defendants' marketing efforts for the CAEV2," "identify training documents, training videos, and instructions," "identify marketing videos created by Defendants that primarily relate to the CAEV2," "identify organizations and entities that, to the best of 3M's knowledge based upon reasonable investigation, were involved in marketing of CAEV2 earplugs," and "identify the individuals employed by Defendants who had primary responsibility for promotional and marketing materials with respect to the CAEV2," among others. (*See* Ex. 11 at 16-19, 21-23, Defendants' General Objections to 30(b)(6) Notice.) These 30(b)(6) depositions, and the numerous subsequent fact depositions

Plaintiffs have taken of individuals involved in sales and marketing to the military, are far better vehicles for seeking the type of "witness recollection" testimony Plaintiffs are apparently seeking. *See Shoen*, 5 F.3d at 1297.  The Court should deny Plaintiffs' motion for those reasons.

> **B.      Defendants Have Sufficiently Answered Bellwether Interrogatory No. 7.**

Plaintiffs assert that Defendants must answer individual Bellwether Interrogatory No. 7, which seeks detailed information related to "surveillance" of bellwether plaintiffs, including internet research, conducted by lawyers or investigators working at the direction of counsel. (*See, e.g.*, Ex. 12.)  In response, Defendants raised a number of objections, including that the information was protected by the attorney work product, and that the "surveillance" requested was vague and ambiguous.  (*See, e.g.*, Ex. 2.)  As detailed above, Plaintiffs rejected Defendants' offer to disclose whether Defendants presently had any "surveillance" of the kind identified during the parties' meet and confer, so long as Plaintiffs would agree it would not waive any work product protection that would otherwise attach or create any similar future obligations.  Plaintiffs opted instead to file this motion.

In their motion, Plaintiffs contend that "the *existence* of any surveillance conducted on a Bellwether Plaintiff is plainly discoverable."  Plaintiffs' principal authority in support of that assertion is a 1980 decision by the Florida state court.

(Dkt. No. 1226 at 22.)  But the scope of attorney work product protection in this case is a question of *federal*, not state, law.  *See United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 262 (S.D. Fla. 2017) ("Federal law governs work-product assertions, regardless of whether they arise in diversity actions or federal question jurisdiction lawsuits.").  Although Plaintiffs are correct that some federal cases have cited the Florida state court decision, the more reasoned federal cases hold that whether and how a party has conducted "surveillance" or "investigation" of a case is protected by the attorney work product protection and need not be disclosed, if at all, until after the plaintiff is deposed and the "surveillance" materials at issue will be used as evidence in the case.  *See DiGiacobbe v. Nat'l R.R. Passenger Corp.*, 1987 WL 11227, at *2 (E.D. Pa. May 21, 1987), *aff'd*, 849 F.2d 600 (3d Cir. 1988) (noting that interrogatories about whether surveillance evidence exists need not be answered until a plaintiff had been deposed); *Snead v. Am. Exp.-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973) (same); *In re Engle Cases*, 2013 WL 12156250, at *4 (M.D. Fla. June 25, 2013); *Betterman v. MSC Cruises (USA) Inc.*, 2014 WL 12579756, at *2 (S.D. Fla. Apr. 9, 2014).[2]

---

[2]   Indeed, if Plaintiffs were correct that a party could ask about *the existence* of work product, then litigation adversaries could serve interrogatories like the following: (i) Have you researched the statute of limitations applicable to Plaintiffs' claims?; or (ii) Have you interviewed any fact witnesses?

In any event, Plaintiffs' argument that *the existence* of surveillance is discoverable ignores the fact that Interrogatory No. 7 seeks information far beyond the mere *existence* of surveillance. (*See, e.g.*, Ex. 12.) For example, it also seeks the subject of the surveillance, the starting date and time, the ending date and time or whether surveillance is ongoing, and the identity of every individual who conducted or participated in any such surveillance. (*See, e.g.*, *id.*) Disclosure of the scope of the surveillance Defendants have conducted would reveal strategic decisions made by attorneys, and is therefore protected by the attorney work product privilege. *See In re Engle Cases*, 2013 WL 12156250, at *4.

For example, in *In re Engle Cases*, the court denied a motion to compel a response to a similar interrogatory, holding that it impermissibility sought "information regarding the scope of Defendants' investigation" that was "protected by the work product doctrine." *Id.* The court noted that the information "arguably reflect[ed] defense counsels' impressions and strategic decision-making and thus [was] entitled to absolute protection." *Id.*

Similarly, in *Turner v. Atl. Se. Airlines, Inc.*, the plaintiff sought to compel, "the disclosure of the identity of the person or persons who observed and memorialized Plaintiff's activities." 2008 WL 11320105, at *2 (N.D. Ga. Jan. 25, 2008). The court rejected that request for two reasons. First, "the court [found] that the slim risk that disclosure of an investigator's name might reveal

[defendants'] attorney's litigation strategy outweighs Plaintiff's lack of any use or need for the identity of the person or persons who conducted the surveillance," and thus that "the identity of the investigator or investigators is protected work product." *Id.* at *3. Second, the court held that "even if the identity of an investigator were not considered protected work product, it is not a proper subject for discovery in this case because it is not relevant." *Id.*

Indeed, the cases cited by Plaintiffs make clear that the *content* of surveillance is only discoverable when a party intends to introduce such evidence at trial. *See Dodson v. Persell*, 390 So. 2d 704, 707 (Fla. 1980) (holding that surveillance films and materials are only subject to discovery if they are intended to be presented at trial); *Hunt v. Lightfoot*, 239 So. 3d 175, 177 (Fla. Dist. Ct. App. 2018) ("the *content* of the surveillance is discoverable only if it will be used at trial."). Furthermore, if a party intends to present surveillance evidence at trial, it need only disclose such evidence until after a plaintiff is deposed. *See Betterman v. MSC Cruises (USA) Inc.*, 2014 WL 12579756, at *1 ("[C]ourts considering the issue generally delay production until after the Plaintiff is deposed in order to preserve the impeachment value and reduce the risk that she will conform her testimony to what is depicted in the surveillance footage.").

None of the cases cited by Plaintiffs stands for the proposition that a party must disclose the scope or specific circumstances surrounding its surveillance.

Plaintiffs selectively quote *Hunt v. Lightfoot*, 239 So. 3d 175, 177 (Fla. Dist. Ct. App. 2018), for the proposition that a responding party must state "the person who took the film, when it was taken, and where it was taken." (*See* Dkt. No. 1226 at 23). But the court in *Hunt* never addressed the issue. *See* 239 So. 3d at 177. Similarly, Plaintiffs improperly rely on *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 587 (S.D. Tex. 1996), for the proposition that the responding party had to disclose "the existence of any surveillance evidence . . . and the date on which the surveillance was obtained, and to indicate whether the surveillance is in the form of film, videotape, or still photos." (*See* Dkt. No. 1226 at 23 n.28.) In *Smith*, the court recognized that surveillance evidence gathered in anticipation of litigation is "protected as work product" but concluded that the "undue hardship requirements of Rule 26 for the discovery of work product materials [was] satisfied." 168 F.R.D at 586. Here, Plaintiffs have made no argument that such undue hardship exists.

Even if the information sought by Bellwether Interrogatory No. 7 was not protected by the attorney work product rule, the Court should nevertheless deny Plaintiffs' motion because, after all of the meet and confers and briefing, it remains unclear what Plaintiffs are asking for. By its terms, Bellwether Interrogatory No. 7 seeks information regarding "surveillance, including by not limited to any internet computer surveillance." (Dkt. No. 1226-5.) During the parties' meet and confer,

31

Plaintiffs suggested that they were not seeking information regarding online investigation conducted by lawyers (such as Googling a Plaintiffs social media), and were instead seeking information regarding photographs or videos not equally accessible to both parties (such as materials created by a private investigator). (*E.g.*, Ex. 1.)  The case law cited in Plaintiffs motion suggests that Plaintiffs are indeed seeking information about materials created by private investigators "surveilling" the bellwether plaintiffs, but their requested relief is not so limited, and more closely tracks the "internet research" language contained in Bellwether Interrogatory No. 7.  To the extent Plaintiffs are asking for, for example, a log of every time a lawyer Googles a plaintiff or their family members, the Court should reject that request on the additional grounds of irrelevancy, undue burden and disproportionality.

Plaintiffs' argument regarding disclosure of "surveillance" is particularly meritless given their own refusal to do so.  For example, Plaintiffs object to Defendants' discovery responses to the extent they seek information protected by what Plaintiffs refer to as the "investigative privilege."  (*See* Ex. 3 at 2.)  Plaintiffs stated during the parties' meet and confer that they are withholding such materials on work product grounds, and Plaintiffs have never disclosed to Defendants whether or not they have collected such material in the first place, let alone who collected them, when, and all of the additional information requested by

Bellwether Interrogatory No. 7.  (Ex. 1.)  To the contrary, Defendants have repeatedly used previously undisclosed documents at defense witness depositions that were apparently collected by lawyers as part of their investigation of the case, including, for example, information about Doug Ohlin's voter registration that the examining attorney apparently found online.  There is simply no basis to allow Plaintiffs to investigate this case as they see fit, and keep that work product hidden from Defendants until it best suits Plaintiffs' strategy, while separately compelling Defendants to disclose similar information to Plaintiffs.  Accordingly, the Court should deny Plaintiffs' motion to compel a response to Bellwether Plaintiffs' Interrogatory No. 7.

## IV.   CONCLUSION

Plaintiffs' motion should be denied in its entirety because Defendants have satisfied their obligations under the Federal Rules of Civil Procedure with respect to each interrogatory at issue in Plaintiffs' motion.

Dated:  July 15, 2020

Respectfully submitted,

*/s/ Nicholas F. Wasdin*
Nicholas F. Wasdin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Nick.wasdin@kirkland.com

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (2020) 389-5991
mike.brock@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I HEREBY CERTIFY that this brief complies with the word limit of Local

Rule 7.1(F), and contained 7,662 words, excluding the parts exempted by the Rule.


DATED:  July 15, 2020                    By: */s/ Nicholas F. Wasdin*
                                                    Nicholas F. Wasdin
                                                    KIRKLAND & ELLIS, LLP
                                                    300 North LaSalle
                                                    Chicago, Illinois 60654
                                                    Telephone: (312) 862-2000
                                                    nick.wasdin@kirkland.com

                                                    *Counsel for Defendants 3M*
                                                    *Company, 3M Occupational Safety*
                                                    *LLC, Aearo Technologies LLC,*
                                                    *Aearo Holding LLC, Aearo*
                                                    *Intermediate LLC, and Aearo LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas F. Wasdin, hereby certify that on July 15, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

DATED:  July 15, 2020                    By: _/s/ Nicholas F. Wasdin_____
                                         Nicholas F. Wasdin
                                         KIRKLAND & ELLIS, LLP
                                         300 North LaSalle
                                         Chicago, Illinois 60654
                                         Telephone: (312) 862-2000
                                         nick.wasdin@kirkland.com

                                         *Counsel for Defendants 3M
                                         Company, 3M Occupational Safety
                                         LLC, Aearo Technologies LLC,
                                         Aearo Holding LLC, Aearo
                                         Intermediate LLC, and Aearo LLC*