# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | | |
|---|---|---|
| | ) | |
| IN RE: 3M COMBAT ARMS | ) | |
| EARPLUG PROUCTS LIABILITY | ) | |
| LITIGATION | ) | No. 3:19-md-02885-MCR-GRJ |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | |
| ALL ACTIONS | ) | |
| | ) | |

## OPPOSITION OF THE DEPARTMENT OF DEFENSE TO DEFENDANTS' RENEWED MOTION TO COMPEL

# TABLE OF CONTENTS

Page

PRELINARY STATEMENT ...................................................................1

FACTUAL BACKGROUND...................................................................2

ARGUMENT: DEFENDANTS' RENEWED MOTION TO COMPEL SHOULD
BE DENIED...........................................................................................7

I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER
      DoD BECAUSE DEFENDANTS HAVE FAILED TO BRING IT BEFORE
      THE COURT THROUGH THE ISSUANCE OF A SUMMONS OR
      SUBPOENA ..................................................................................7

II.   DEFENDANTS' RENEWED MOTION TO COMPEL WOULD REQUIRE
      DENIAL EVEN IF THIS COURT HAD PERSONAL JURISDICTION
      OVER DoD...................................................................................10

      A.    THE FAILURE OF DEFENDANTS TO ISSUE A SUBPOENA TO DoD MEANS
            THAT THEIR TOUHY REQUESTS ARE NON-ENFORCEABLE BY MOTION TO
            COMPEL....................................................................................10

      B.    THE ALLEGED "CONSTRUCTIVE DENIALS" OF DEFENDANTS' TOUHY
            REQUESTS ARE NON-FINAL AND NON-REVIEWABLE ..........................12

      C.    NO DELAY HAS TAKEN PLACE IN THE HANDLING OF DEFENDANTS'
            TOUHY REQUESTS THAT ENTITLES DEFENDANTS TO ANY RELIEF ........14

      D.    THE TOUHY DECISIONS OF DoD HAVE NOT BEEN ARBITRARY AND
            CAPRICIOUS ...............................................................................20

      E.    INFORMATION, WHICH DEFENDANTS SEEK FROM DoD, IS NOT
            DISCOVERABLE FROM A NON-PARTY ...................................................24

      F.    THE GRANTING OF DEFENDANTS' RENEWED MOTION TO COMPEL
            WOULD SUBJECT DoD TO UNDUE BURDEN .........................................25

CONCLUSION ....................................................................................26

i

# TABLE OF CASES

Page

*Am. Rivers v. FERC*, 170 F.3d 896 (9th Cir. 1999) ..................................................13

*Barnett v. Ill. State Bd.*, 2002 WL 1560013 (N.D. Ill. July 2, 2002).........................9

*Bennett v. Spear*, 520 U.S. 152 (1997) .............................................................12, 13

*BioConvergence LLC v. Attariwalla*, 2020 WL 1333201 (S.D. Ind. Mar. 23, 2020) ....................................................................................................................10

*City of Pembroke Pines v. Immigration & Customs Enforcement*, 141 F. Supp. 3d 1330, (S.D. Fla. 2015) ............................................................................................11

*Dash v. Chasen*, 503 F. App'x 791 (11th Cir. 2013) ..................................................8

*FCC v. Fox Tel. Stations, Inc.*, 566 U.S. 502 (2009)...................................14, 20, 23

*Forgione v. HCA, Inc.*, 954 F. Supp. 2d 1349 (N.D. Fla. 2013) ..............................9

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 1821924 (N.D. Fla. Apr. 10, 2020) ..............................................................................................16, 23, 24

*In re Barr Labs.*, 930 F.2d 72 (D.C. Cir. 1991) ................................................14, 17

*In re Int'l Chem. Workers*, 958 F.2d 1144 (D.C. Cir. 1992) ......................14, 15, 16

*Kalawa v. United States*, 2020 WL 3603205 (D.N.J. July 2, 2020)..........................7

*Malloy v. Peters*, 617 F. App'x 948 (11th Cir. 2015)...............................................24

*Moore v. Armour Pharm. Co.*, 927 F.2d 1194 (11th Cir. 1991).........................11, 20

*Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229 (11th Cir. 2003)....12, 13

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018)............................................8

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).................................7

*Orion Reserves L.P. v. Kempthorne*, 516 F. Supp. 2d 8 (D.D.C. 2007)................19

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) .............................................8

*Pediatric Servs. of Am. v. Kendrick*, 2019 WL 580786 (N.D. Fla. Jan. 17, 2019) ...............................................................................................................24

*Porter v. Ray*, 461 F.3d 1315 (11th Cir. 2006).........................................................23

*Rosenthal v. Shiraz, Inc.*, 2009 WL 1941272 (S.D. Fla. July 7, 2009) .............11, 12

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ...........................................7

*Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998) ........................................................11

*Tel. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ................14, 15

*United States ex rel. Lewis v. Walker*, 2009 WL 2611522 (M.D. Ga. Aug. 21, 2009) ...................................................................................................................9

*Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007)................................................8, 11, 25

*Young v. Hartford Ins. Co.*, 2020 WL 2950332 (M.D. Fla. May 7, 2020)..............25

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)...........................................8, 11

## PRELIMINARY STATEMENT

Defendants, 3M Company and certain of its subsidiaries, have renewed the motion to compel that they filed against non-party Department of Defense (DoD) on June 12, 2020, but subsequently withdrew.  Defendants' renewed motion "seeks relief from [DoD's] treatment" of certain *Touhy* requests issued by defendants to DoD.  Def. Mot. Compel against DoD (July 1, 2020) (Def. Mot.), ECF No. 1211, at 2.

Defendants' renewed motion to compel should be denied.  This Court does not have personal jurisdiction over DoD because defendants have failed to bring it before the Court through the issuance of a summons or subpoena.  The motion would also require denial even assuming, *arguendo*, that this Court had personal jurisdiction over DoD.  The reasons are legion.  The failure of defendants to issue a subpoena to DoD means that their *Touhy* requests are non-enforceable by motion to compel.  The alleged "constructive denials" of defendants' *Touhy* requests are non-final and non-reviewable.  No delay has taken place in DoD's handling of defendants' *Touhy* requests that entitles defendants to any relief.  The *Touhy* decisions of DoD have not been arbitrary and capricious.  Information, which defendants seek from DoD, is not discoverable from a non-party.  The granting of defendants' renewed motion to compel would subject DoD to undue burden.  The Court should therefore deny defendants' motion.

## FACTUAL BACKGROUND

Plaintiffs in this multidistrict litigation are former service members, hunters, and others who have used a certain brand of earplug (Combat Arms™ Earplug version 2 or CAEv2) "created, designed, assembled, manufactured, constructed, produced, tested, packaged, labeled, marketed, advertised, promoted, made, distributed, supplied, and/or sold" by defendants.  Master Long Form Compl. & Jury Trial Demand (Sept. 20, 2019), ECF No. 704, Preamble & ¶¶ 3-4.  Alleging that their use of the CAEv2 has caused them hearing-related injuries and injuries caused by those injuries ("sequelae"), plaintiffs have sued defendants for compensatory and punitive damages.  *Id.* ¶ 14 & Prayer ¶ ii.

The United States is not a party to this litigation, *see* Master Long Form Compl. & Jury Trial Demand ¶¶ 16-20, but defendants have embroiled the United States in third-party discovery by asking it to produce a total of 33 witnesses for interviews, depositions, or both.  Letter from Nomellini to Evans *et al.* (Oct. 25, 2019), ECF No. 1211-2, at 1, 3-4; Letter from Nomellini to Fucci *et al*. (Dec. 2, 2019), ECF No. 1211-3, at 1, 4-12.  Defendants have also embroiled the United States in discovery by asking it to produce large numbers of documents.  *E.g.* Letter from Nomellini to Evans (June 21, 2019), ECF No. 1211-7, at 7-10 (seeking 45 categories of documents regarding "Design Specifications And Requests For Proposals"; "Purchasing And Distribution Of CAEv2"; "Instructions For CAEv2

And Other Earplugs"; "Complaints Or Recalls Related To CAEv2";
"Communications With Dr. Douglas Ohlin Regarding CAEv2"; "Communications
With Moldex-Metric, Inc. Regarding CAEv2"; "CAEv2 Testing"; "Policies And
Procedures Regarding Earplug Fit For Service Members"; "Noise And Ototoxin
Exposure In The Military"; and "Hearing Protection Usage In The Military");
Letter from Nomellini to Evans (Mar. 17, 2020), ECF No. 1211-9, at 3 (seeking
"Documents Related To Annual Military Audiology Association Short Course
Meetings From 2001 [T]o 2005"; "Documents Identified In Army Pamphlet 40-
501 Regarding Service Member Noise Exposure"; and "Documents Identified in
Army Pamphlet 40-501 Regarding Service Member Complaints Regarding
Combat Arms Version 2").  Defendants have asked the United States to make these
productions even though the parties were admonished by the Court more than a
year ago "to please recognize that this case is not the military's only priority."
*Touhy* Presentation (May 20, 2019), ECF No. 399, at 4:7-8 (remarks of the Court).

Defendants have not issued subpoenas to the United States.  They instead
have presented their discovery requests to the United States by issuing "numerous
*Touhy* requests" to DoD.  Def. Mot. at 2; *see* DoD Dir. 5405.2 § 6.1 (July 23,
1985) (authorizing certain officials to respond to a "litigation request" by
determining, "with regard to their respective Components . . . whether official
information originated by the Component may be released in litigation" or

3

"whether DoD personnel assigned to or affiliated with the Component may be interviewed, contacted, or used as witnesses concerning official DoD information or as expert witnesses").  Defendants began issuing their *Touhy* requests to DoD in June 2019.  Def. Mot. at 2.  Plaintiffs have also issued *Touhy* requests to DoD.  *Id.* at 12.

DoD has granted certain of defendants' *Touhy* requests.  *E.g.*, Def. Mot. at 3 n.1 (stating that "[DoD] has approved the depositions of . . . LTC Jeff Merkley, Dr. Lorraine Babeu, LTC Kathy Gates, LTC Marc Stevens, and Brian Hobbs").  DoD has denied certain of defendants' *Touhy* requests.  *E.g., id.* at 3 (stating that "[DoD] orally . . . denied all of the [d]efendants' requests for pre-deposition interviews" at "an in-person meeting on January 28, 2020").  And DoD has yet to take final action on certain of defendants' *Touhy* requests.  *E.g.*, Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 3 (stating that "[t]he agency has started processing [one of defendants' requests for information]; however no final determination has been made").

Dissatisfied with the alleged lack of progress, defendants moved on June 12, 2020, to compel DoD to comply with certain of their *Touhy* requests.  Def. Mot. Compel against DoD (June 12, 2020), ECF No. 1178, at 3-4, 17.  Hon. David R. Herndon, the Court's Special Master, "advised the parties [on June 16, 2020] of the

burden on [DoD] in responding to [their] *Touhy* requests."[1]  Def. Mot. at 12.

Defendants withdrew their motion to compel without prejudice on June 24, 2020,

upon the advice of Special Master Herndon "to hold this motion in abeyance in

order to refine the contested issues, if any."  Withdrawal of Def. Mot. Compel

against DoD, Without Prej. (June 24, 2020), ECF No. 1197, at 1.  Defendants did

not make any effort following the withdrawal of their motion to "refine the

contested issues, if any."

The Court issued an order on June 29, 2020, establishing September 1, 2020,

as the date by which "Government discovery closes for Group A cases."  Pretrial

Order No. 43, ECF No. 1204, at 2.  Concerned that certain of their *Touhy* requests

remained "'open'" and that they had received "no assurance that [DoD would]

produce the requested materials in time to meet the September 1, 2020 discovery

deadline," defendants filed their renewed motion to compel against DoD on July 1,

2020.  Def. Mot. at 2.  Defendants did not comply with the meet-and-confer

requirement of N.D. Fla. Loc. Rule 7.1(B) before filing their motion and have not

complied with that requirement since.  *See* Not. DoD concerning Def. Renewed

---

[1] Special Master Herndon was appointed by the Court to "help facilitate discovery
from [DOD] and [the] Department of Justice."  Order of Appointment (Oct. 15,
2019), ECF No. 760, at 1.  Special Master Herndon is a retired U.S. district judge
for the Southern District of Illinois.

Mot. Compel, ECF No. 1211 (July 6, 2020), ECF No. 1217, at 1; Reply DoD to Def. Resp. to [DOD Not.] (July 8, 2020), ECF No. 1223, at 1, 4.

Defendants' renewed motion to compel seeks two forms of relief.  The first form of relief is an order directing DoD to "present six current employees – Mary Binseel, Dr. Mark Little, [COL] Martin Robinette, Dr. Leanne Cleveland, LTC Theresa Schulz, and Dr. John King – for deposition."  Def. Mot. at 1.  The second form of relief is an order directing DoD to produce the following six categories of "information and documents," *id.* at 26:

> 1.  "[A]verage noise and ototoxin exposure per military occupational specialty.  This data may be kept as average daily, weekly, monthly or yearly exposures."  *Id.* at 24.

> 2.  "[D]ata regarding noise and ototoxin exposures at the bellwether-relevant Army installations.  A list of the relevant installations and time periods is contained in Defendants' June 3, 2020 *Touhy* request."  *Id.*  The referenced *Touhy* request lists 33 Army installations, ranging from Fort Benning, Georgia, to Camp Taji, Iraq, and assigns time periods ranging from a year to 21 years to each installation.  Letter from Nomellini to Kim (June 3, 2020), ECF No. 1211-18, at 3-5.

> 3.  "[H]ealth hazard assessments for the weapons operated by the bellwether plaintiffs.  A list of the bellwether relevant weapons identified to date is contained in Defendants' May 20, 2020 email to Major Evans."  Def. Mot. at 24.  The referenced email lists 44 weapons, ranging from shotguns to howitzers.  Email from Wasdin to Evans *et al.* (May 20, 2020), ECF No. 1211-14 at 3-4.

> 4.  "[T]he 'comprehensive operational and work task potential exposures-based medical surveillance recommendations,' and 'DoD lifetime personnel exposure data,' that are referred to in the promotional materials related to the [Defense Occupational and

6

Environmental Health Readiness System Industrial Hygiene
(DOEHRS-IH)] database."  Def. Mot. at 24.

     5.  "[T]he safety release documentation for the CAEv2."  *Id.* at
26.

     6.  "[T]he identities of the Hearing Conservation Program
Managers and Industrial Hygiene Program Managers at the
bellwether-relevant installations."  *Id.*

## ARGUMENT

**DEFENDANTS' RENEWED MOTION TO COMPEL SHOULD BE
DENIED.**

**I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION
OVER DoD BECAUSE DEFENDANTS HAVE FAILED TO BRING IT
BEFORE THE COURT THROUGH THE ISSUANCE OF A
SUMMONS OR SUBPOENA.**

"Personal jurisdiction . . . is 'an essential element of the jurisdiction of a

district . . . court' without which the court is 'powerless to proceed to an

adjudication.'"  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)

(quoting *Emp'rs Reins. Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).  "Before a

federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied."  *Omni Capital Int'l v.

Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "Because the United States has

sufficient minimum contacts in every forum state, a court establishes the authority

to adjudicate a case against the government through the service of process itself."

*Kalawa v. United States*, 2020 WL 3603205, at *2 (D.N.J. July 2, 2020).

"Today, service of process in a federal action is covered generally by Rule 4 of Federal Rules of Civil Procedure." *Id.* "[T]o serve the United States, a party must deliver a copy of the summons and complaint to (1) the U.S. Attorney for the district where the action is brought, and (2) the U.S. Attorney General of the United States at Washington, D.C." *Dash v. Chasen*, 503 F. App'x 791, 792 (11th Cir. 2013) (citing Fed. R. Civ. P. 4(i)(1)). "To serve a federal agency, a plaintiff must serve the United States, as described above, and also send a copy of the summons and complaint to the agency itself." *Id.* (quoting Fed. R. Civ. P. 4(i)(2)).

Subpoenas, like summonses, "'are process of the issuing court.'" *Watts v. SEC*, 482 F.3d 501, 506 (D.C. Cir. 2007) (Kavanaugh, J.) (quoting *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998)). "'A district court must have personal jurisdiction over a nonparty to compel it to comply with a Rule 45 subpoena.'" *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 354 (S.D.N.Y. 2018) (quoting *Gucci Am., Incl v. Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015)). "Exercise of personal jurisdiction" in the context of a subpoena "requires proper service . . . statutory authorization and comportment with the Due Process Clause." *Id.* "'Serving a subpoena requires delivering a copy to the named person.'" *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (quoting Fed. R. Civ. P. 45(b)(1)). "[T]he United States is a 'person' within the meaning of Rule 45." *Yousuf v.*

*Samantar*, 451 F.3d 248, 250 (D.C. Cir. 2006).  Service of a subpoena on DoD requires service on the DoD General Counsel.  32 C.F.R. § 257.5(a).

Defendants have not served a summons or a subpoena on DoD.  This Court, accordingly, does not have jurisdiction over DoD.  Defendants' renewed motion to compel should therefore be denied.

As if to suggest otherwise, defendants cite a number of cases in which the issuance of a subpoena rather than the commencement of an action under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, has permitted a litigant to challenge the denial of a *Touhy* request. Def. Mot. at 16 (citing *Forgione v. HCA, Inc.*, 954 F. Supp. 2d 1349 (N.D. Fla. 2013) (subpoenas issued in state-court action to individuals treated as federal employees); *United States ex rel. Lewis v. Walker*, 2009 WL 2611522, at *1 (M.D. Ga. Aug. 21, 2009) (subpoena issued to federal employee but withdrawn at the request of her agency); *Barnett v. Illinois State Board*, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002) (subpoena issued to federal agency).  These cases make it all the clearer that this Court does not have jurisdiction over DoD because of the failure of defendants to bring DoD before the Court through the issuance either of a summons or a subpoena.

## II.   DEFENDANTS' RENEWED MOTION TO COMPEL WOULD REQUIRE DENIAL EVEN ASSUMING, *ARGUENDO*, THAT THIS COURT HAD PERSONAL JURISDICTION OVER DoD.

This Court's lack of personal jurisdiction over DoD requires denial without more of defendants' renewed motion to compel.  *See BioConvergence LLC v. Attariawal*, 2020 WL 1333201, at *3 (S.D. Ind. Mar. 23, 2020) (holding that "Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking").  Defendants' motion would also require denial, however, even assuming, *arguendo*, that this Court had personal jurisdiction over DoD.  The failure of defendants to issue a subpoena to DOD means as a threshold matter that their *Touhy* requests are non-enforceable by motion to compel.  The alleged "constructive denials" of defendants' *Touhy* requests are non-final and non-reviewable.  No delay has taken place in the handling of defendants' *Touhy* requests that entitles defendants to any relief.  The *Touhy* decisions of DoD have not been arbitrary and capricious.  Information, which defendants seek from DoD, is not discoverable from a non-party.  And the granting of defendants' renewed motion to compel would subject DoD to undue burden.

### A.   THE FAILURE OF DEFENDANTS TO ISSUE A SUBPOENA TO DoD MEANS THAT THEIR *TOUHY* REQUESTS ARE NON-ENFORCEABLE BY MOTION TO COMPEL.

"The authority of department heads to promulgate regulations restricting employee testimony in private litigation was upheld by the Supreme Court in

10

[*United States*] *ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)." *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1195 (11th Cir. 1991).  Those regulations "are commonplace among . . . federal agencies, and have been upheld by the federal courts." *Id.*  "[The] regulations are commonly known as *Touhy* regulations, and requests implicating the regulations are known as *Touhy* requests." *City of Pembroke Pines v. Immigration & Customs Enforcement*, 141 F. Supp. 3d 1330, 1333 (S.D. Fla. 2015).

*Touhy* authorized "the adoption . . . of methods by which . . . an agency would respond to a subpoena." *Yousuf*, 451 F.3d at 257.  "An agency's *Touhy* regulations" thus "are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Watts*, 482 F.3d at 508-09.  Compliance with an agency's *Touhy* regulations does not "confer some entitlement on parties seeking the disclosure of agency records." *Smith v. Cromer*, 159 F.3d 875, 880 (4th Cir. 1998).  "Issuing a subpoena," to the contrary, "merely sets [the] process in motion." *Id.* at 881.  Defendants acknowledge this point by stating that "'*Touhy*' regulations . . . govern [an agency's] responses to third-party subpoenas in civil litigation." Def. Mot. at 2.

"[A]n attorney may make [an] informal discovery request." *Rosenthal v. Shiraz, Inc.*, 2009 WL 1941272, at *4 (S.D. Fla. July 7, 2009). "[S]uch a request," however, "does not necessarily form a proper basis for a motion to compel." *Id.*

11

"'[I]nformal requests for production [lie] outside the boundaries of the discovery rules.'" *Id.* (quoting *Sithon Maritime Co. v. Mansion*, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998)). "'Formal requests clearly implicate the duties of opposing parties to respond, pursuant to Fed. R. Civ. P. 34.'" *Id.* "'Formal requests may occasion sanctions, letters usually do not.'" *Id.* "'To treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery.'" *Id.*

Defendants have not issued a subpoena for any of the witnesses, information, and documents that are the subject of their renewed motion to compel. The *Touhy* requests that they seek to enforce by means of that motion thus are "'[i]nformal requests for production [that lie] outside the boundaries of the discovery rules.'" *See Rosenthal*, 2009 WL 1941272, at *4 (quoting *Sithon*, 1998 WL 182785, at *2). Defendants' renewed motion to compel should therefore be denied.

## B.   THE ALLEGED "CONSTRUCTIVE DENIALS" OF DEFENDANTS' *TOUHY* REQUESTS ARE NON-FINAL AND NON-REVIEWABLE.

"The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 152, 175 (1997) (quoting 5 U.S.C. § 704). "'[T]he requirement of a final agency action has been considered jurisdictional.'" *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003) (quoting

*Indep. Petrol. Ass'n v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001)).  "'If the agency action is not final, the court therefore cannot reach the merits of the dispute.'" *Id.*

"As a general matter, two conditions must be satisfied for agency action to be final." *Bennett*, 520 U.S. at 177.  "First, the action must mark the 'consummation' of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature." *Id.* at 177-78 (quoting *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)) (internal citation omitted).  "And second, the action must be one by which 'rights or obligations have been determined,' or from which legal consequences will flow.'" *Id.* at 178 (quoting *Port of Boston Marine Term. Ass'n v. Rederi AB Transatlantic*, 400 U.S. 62, 71 (1970)).

Defendants contend that DoD has "constructively denied" those *Touhy* requests as to which it has not yet taken final action, Def. Mot. at 5; that they are entitled to judicial review under the APA of the constructive denials, *id.* at 24-26; and that the constructive denials should be vacated.  *Id.*  "Mere inaction," however, "cannot be transmuted . . . into an order rejecting [a] petition," *Am. Rivers v. FERC*, 170 F.3d 896, 897 (9th Cir. 1999), unless the agency has "engaged in a pattern of inaction that can be said to 'mark the consummation of the agency's decisionmaking process.'" *Nat'l Parks Conservation*, 324 F.3d at 1238 (quoting

*Bennett*, 520 U.S. at 178).  No such pattern exists here.  DoD has never disclaimed its intention of responding to defendants' *Touhy* requests and has described as recently as June 26, 2020, its continuing efforts to do so.  *See, e.g.,* Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 3 (stating that "[t]he agency has not started processing [one of defendants' requests for documents] as we are trying to complete processing on your earlier requests").  The "constructive denials" that defendants allege thus provide no justification for the granting of defendants' renewed motion to compel because the denials are non-final and non-reviewable.

### C.    NO DELAY HAS TAKEN PLACE IN THE HANDLING OF DEFENDANTS' *TOUHY* REQUESTS THAT ENTITLES DEFENDANTS TO ANY RELIEF.

The APA "instructs a reviewing court to 'compel agency action . . . unreasonably delayed.'"  *FCC v. Fox Tel. Stations, Inc.*, 566 U.S. 502, 515 (2009) (quoting 5 U.S.C. § 706(1)).  "[N]o *per se* rule [exists] as to how long is too long."  *In re Int'l Chem. Workers*, 958 F.2d 1144, 1149 (D.C. Cir. 1992).  "[T]he agency's delay" must be "so egregious," however, "as to warrant mandamus."  *Tel. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984).  Cases in which courts have "actually issued an order compelling an agency to press forward with a specific project" thus are "exceptionally rare."  *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

Defendants complain that they have spent over a year waiting for a decision from DoD on certain of their *Touhy* requests.  Def. Mot. at 11, 13.  They therefore ask that DoD be compelled to comply with those requests.  *Id.* at 6.  Defendants are entitled to no such relief because any delay that has occurred in this litigation has not been unreasonable.

No "single test" governs whether a particular delay is unreasonable.  *Tel. Rsrch. & Action*, 750 F.2d at 80.  Certain factors have been identified, however, that "nevertheless provide[] useful guidance in assessing claims of agency delay." *Id.*  One of those factors is "the consequences of the agency's delay."  *Chem. Workers*, 958 F.2d at 1149.  "'Delays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake.'" *Id.* (quoting *Pub. Citizen Health Rsrch. Grp. v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983)).  Another factor is the presence of "'any plea of . . . administrative convenience, practical difficulty . . . or need to prioritize in the face of limited resources.'"  *Id.* (quoting *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987)).

Both of the above factors, for the following reasons, militate against the conclusion that defendants are entitled to any relief against DoD because of any delay in DoD's handling of defendants' *Touhy* requests:

15

*First*, no "'human lives are at stake'" in this litigation.  *See Chem. Workers*, 958 F.2d at 1149.  "This multidistrict litigation," to the contrary, "is a products liability action."  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 1821924, at *1 (N.D. Fla. Apr. 10, 2020).

*Second*, the *Touhy* requests that defendants have submitted to DoD are so numerous and so broad that the personnel given the task of responding to them have been required to choose among the requests to determine how best to allocate their limited time.  *See* Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 2 (stating that "the agency . . . has not expended many resources trying to locate [certain] witnesses so that the agency could work on your other *Touhy* requests") (formatting modified).

DoD cannot be criticized for the choices its personnel have made in choosing among defendants' requests because defendants have not given DOD any trustworthy guidance in making those choices.  Both DoD and the Court asked defendants to prioritize the list of government witnesses whom they proposed to interview and depose.  Def. Mot. at 2.  Defendants responded by modifying the list, identifying 11 witnesses as "Priority Witnesses," and identifying 19 witnesses as "De-Prioritized Witnesses."  Letter from Nomeillini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 4-12.  Defendants now criticize DoD for not having done more to authorize the depositions of 15 of the "De-Prioritized Witnesses," Def. Mot. at

5; *see* Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 2, but their doing so makes it clear that they never intended the distinction between "Priority Witnesses" and "De-Prioritized Witnesses" to have any real meaning.

Defendants likewise advised DoD two weeks prior to the filing of their renewed motion to compel that 12 of the 33 Army installations for which they previously had requested data were installations that DoD should "prioritize" in producing the data. Email from Wasdin to Kim *et al.* (June 17, 2020), ECF No. 1211-19, at 1. Defendants nonetheless ask in their renewed motion that DoD be required to produce the data for all 33 installations. Def. Mot. at 24. Defendants' earlier guidance thus was not guidance upon which DoD was entitled to rely.

*Third*, DoD has limited personnel resources with which to respond to the demands of civil litigation. It cannot be criticized for the resource allocations it has made in this litigation. Not only do the courts have "no basis for reordering agency priorities" but "[t]he agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Barr*, 930 F.2d at 76.

*Fourth*, certain of defendants' *Touhy* requests have proven impossible to bring to closure despite the best efforts of DoD to do so. These requests include certain of defendants' deposition requests. Making a final decision as to a deposition request requires DoD to "reach[] out to [the] witness . . . to determine if

[the witness] possesses the relevant knowledge related to [the applicable] *Touhy* request."  *See* Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 2.  Three of defendants' deposition requests remain unresolved because DoD has been unable to reach the witnesses who are the subject of the requests.  *Id.*  One of those witnesses is Mary Binseel, one of the witnesses whose deposition defendants seek to compel.  *Id.*

*Fifth*, certain of defendants' *Touhy* requests do not lend themselves to prompt resolution.  Many, if not most, of defendants' requests for documents fall into this category.  *See, e.g.*, Letter from Nomellini to Evans (June 21, 2019), ECF No. 1211-7, at 7-10; Letter from Nomellini to Evans (Mar. 17, 2020), ECF No. 1211-9, at 3.  Making a final decision as to a document request requires DoD to determine whether the requested documents are "available" and whether it would be "unduly burdensome for the agency to obtain [them]."  *See* Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 3.  Determining whether requested documents are "available" requires the custodian or custodians of the documents to be identified.  Identifying custodians can be difficult where, as here, the requested documents include such things as "data regarding noise and ototoxin exposures at [33] Army installations" for periods of up to 21 years, Def. Mot. at 24; *see* Letter from Nomellini to Kim (June 3, 2020), ECF No. 1211-18, at 3-5; and "documents related to the noise surveys, identification of noise hazardous areas, and

identification of noise-exposed and ototoxin-exposed personnel, which are performed and maintained by the Industrial Hygiene Program Managers for each Army installation per Army Pamphlet 40-401."  Letter from Nomellini to Evans (Mar. 17, 2020), ECF No. 1211-9, at 3.

Determining whether it would be "unduly burdensome for the agency to obtain [the requested documents]" poses a different set of challenges.  Making that determination requires DoD to obtain an assessment from each custodian as to the volume of responsive documents and the amount of effort that the retrieval and review of the documents will require.  Obtaining the assessments can be a time-consuming and arduous task where, as here, the custodians asked to provide the assessments are unlikely to know the personnel who are requesting them.  *See Touhy* Presentation (May 20, 2019), ECF No. 399, at 21:17-22:2 (remarks of Maj. Evans).

*Sixth*, the COVID-19 pandemic has caused DoD to issue mandatory telework instructions to its personnel.  Those instructions have impacted access to DoD facilities and record systems, thereby making compliance with defendants' *Touhy* requests all the more difficult.

A claim of unreasonable delay is unwarranted in cases where "[the] delay results from practical difficulties due to the large size of [the claimant's] claims and the need to prioritize a competing workload with limited resources."  *Orion*

19

*Reserves L.P. v. Kempthorne*, 516 F. Supp. 2d 8, 16-17 (D.D.C. 2007).  This case is such a case.  Any delay that has taken place in this litigation thus does not warrant the granting of defendants' renewed motion to compel.

### D.   THE *TOUHY* DECISIONS OF DOD HAVE NOT BEEN ARBITRARY AND CAPRICIOUS.

The APA "instructs a reviewing court . . . to 'hold unlawful and set aside agency findings and conclusions found to be [among other things] . . . arbitrary [or] capricious.'"  *Fox Tel. Stations*, 566 U.S. at 515 (quoting 5 U.S.C. § 706(2)(A)).  An agency's denial of a *Touhy* request thus may be overturned "only . . . if such action was 'arbitrary, capricious, an abuse of discretion, or otherwise . . . contrary to law.'"  *Moore*, 927 F.2d at 1197 (quoting § 706(2)(A)).

Agency action is neither arbitrary nor capricious if "[the] agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'"  *Fox Tel. Stations*, 566 U.S. at 513 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The court "'is not to substitute its judgment for that of the agency,'" *id.*, "and should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  *Id.* at 513-14 (quoting *Bowman Transp. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).  The "standard of review" thus is "'narrow.'"  *Id.* at 513 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

20

The sole final decision of DoD that defendants challenge is DoD's denial of their request to take the deposition of Colonel Martin Robinette, one of their "De-Prioritized Witnesses."  Def. Mot. at 21; *see* Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 7.  Plaintiffs likewise submitted a *Touhy* request to DoD to take the deposition of Colonel Robinette.[2]  *See* Letter from Kim to Aylstock *et al.* (June 23, 2020), ECF No. 1211-5, at 1.

DoD denied the requests of both sides to take Colonel Robinette's deposition by letter dated June 23, 2020.  Letter from Kim to Aylstock *et al.* (June 23, 2020), ECF No. 1211-5, at 1.  Explaining the denial, DoD said:

> After speaking with COL Robinette, is it apparent that he lacks relevant knowledge of the information you listed in your requests. COL Robinette had a minimal role, if any, in acquiring or approving the CAEv2 and his direct communications about CAEv2 were limited. Additionally, he served as a [Department of Justice (DOJ)] subject matter expert in a separate investigation related to the underlying facts of this case.  Because of this, it our position that allowing this employee to sit for a deposition would not be productive and would create an undue burden on the DoD due to the amount of time the DoD would spend preparing for and participating in the requested deposition.

*Id*.  DoD also said, however, that it was "willing to authorize COL Robinette to provide responses to interrogatories based on the submitted *Touhy* requests and his

---

[2] Two of the other five witnesses who are the subject of defendants' renewed motion to compel, Dr. John King and Dr. Leanne Cleveland, are also witnesses whom defendants have labeled as "De-Prioritized."  Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 8, 12.

limited knowledge of the CAEv2 should your office(s) submit them to us." *Id.* at 2 (formatting modified).

Defendants challenge DoD's denial of their request, Def. Mot. at 21, but do not do so persuasively. Defendants do not dispute the assertion of DoD, which resulted from its having spoken with Colonel Robinette, that he "had a minimal role, if any, in acquiring the CAEv2." They speculate instead that his testimony might be relevant to demonstrating the military's understanding of "the flange-fold instruction." *See id.* Obtaining that testimony, however, was not the reason defendants gave previously for seeking authorization to take Colonel Robinette's deposition. They contended instead that they

> wish[ed] to interview and depose [COL] Robinette regarding: (i) the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem; (ii) military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs; (iii) instructions and/or training that military audiologists provided to service members for the use or fit of the Comb Arms Earplugs; and (iv) the location of documents or other data regarding those topics.

Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 7-8.

Defendants also speculate that the service of Colonel Robinette "as a subject matter expert in related litigation" would reduce the amount of time DoD otherwise would need to prepare him to testify. *See* Def. Mot. at 21. Defendants do not say, however, that no preparation time would be necessary. Defendants also have no response to the assertion of DoD that "allowing this employee to sit for a

deposition . . . would create an undue burden on the DoD due to the amount of time the DoD would expend . . . participating in the requested deposition."  Letter from Kim to Aylstock *et al.* (June 23, 2020), ECF No. 1211-5, at 1.

Defendants dismiss as a further matter the willingness of DoD to permit Colonel Robinette to be examined by interrogatories.  *See* Def. Mot. at 4.  They fail to mention, however, that they submitted interrogatories to DoD on May 7, 2020, for the purpose of examining one of their other proposed witnesses, Albert Gatica. Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 1.

"[T]he discovery rules do not permit [a litigant] to go on a fishing expedition," *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006), and one of the factors that determines whether discovery is appropriate is "'whether [its] burden or expense . . . outweighs its likely benefit.'"  *3M Combat Arms*, 2020 WL 1821924, at *4 (quoting Fed. R. Civ. P. 26(b)(1)).  DoD did not fail, accordingly, to "'examine the relevant data [or] articulate a satisfactory explanation,'" *see Fox Tel. Stations*, 566 U.S. at 513 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43), when it denied the requests of both plaintiffs and defendants to take the deposition of Colonel Robinette because "allowing this employee to sit for a deposition would not be productive and would create an undue burden on the DoD due to the amount of time the DoD would spend preparing for and participating in the requested deposition."  Letter from Kim to Aylstock, *et al.* (June 23, 2020), ECF No. 1211-5,

23

at 1.  Defendants' renewed motion to compel should therefore be denied insofar as

the motion seeks to compel the production of Colonel Robinette for deposition.

### E.   INFORMATION, WHICH DEFENDANTS SEEK FROM DoD, IS NOT DISCOVERABLE FROM A NON-PARTY.

Defendants' renewed motion to compel seeks to require DoD to produce

both "information and documents."  Def. Mot. at 26.  The requested information

includes "average noise and ototoxin exposure per military occupational

specialty"; "data regarding noise and ototoxin exposures at the bellwether-relevant

Army installations"; and "the identities of the Hearing Conservation Program

Managers and Industrial Hygiene Program Managers at the bellwether-relevant

installations."  *Id.* at 24, 26.

Fed. R. Civ. P. 33 permits "'a party . . . . [to] serve on any other party no

more than 25 written interrogatories.'"  *Malloy v. Peters*, 617 F. App'x 948, 949

(11th Cir. 2015) (quoting Fed. R. Civ. P. 33(a)(1)).  "[A]n interrogatory 'may

relate to any matter that may be inquired into under Rule 26(b).'"  *Pediatric Servs.*

*of Am. v. Kendrick*, 2019 WL 580786, at *1 (N.D. Fla. Jan. 17, 2019) (quoting

Rule 33(a)(2)).  An interrogatory is therefore a device by which a party may obtain

"information" from another party.  *See 3M Combat Arms*, 2020 WL 1821924, at

*5.

Interrogatories are not available, however, in third-party discovery.  Parties

are authorized by Fed. R. Civ. P. 45 to "command non-parties to produce

24

'documents, electronically stored information, or tangible things in [their]

possession, custody, or control,'" *Young v. Hartford Ins. Co.*, 2020 WL 2950332,

at *3 (M.D. Fla. May 7, 2020) (quoting Rule 45(a)(1)(A)(iii)), but Fed. R. Civ. P.

45 contains no analogue to Fed. R. Civ. P. 33.  Defendants' renewed motion to

compel should therefore be denied insofar as the motion seeks to compel DoD to

produce information.

### F.   THE GRANTING OF DEFENDANTS' RENEWED MOTION TO COMPEL WOULD SUBJECT DoD TO UNDUE BURDEN.

"'[C]oncern for the unwanted burden thrust upon non-parties is a factor

entitled to special weight in evaluating the balance of competing needs'" in any

case in which third-party discovery is sought.  *See Watts*, 482 F.3d at 509 (quoting

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).  That factor is

entitled to particular weight where, as here, the third-party discovery is sought

from the United States.  Any such discovery "must properly accommodate 'the

government's serious and legitimate concern that its employee resources not be

commandeered into service by private litigants to the detriment of the smooth

functioning of government operations.'"  *Id.* (quoting *Exxon Shipping Co. v. Dep't*

*of the Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

The granting of defendants' renewed motion to compel would require DoD

to do the following in a scant six weeks: prepare six witnesses for deposition

assuming, *arguendo*, that all six witnesses can be found; attend all six of the

depositions to ensure against unauthorized testimony and to ensure against the unwarranted disclosure of privileged or classified information; produce huge numbers of documents and voluminous amounts of information, including "data regarding noise and ototoxin exposures at the [33] bellwether-relevant Army installations" and "health hazard assessments for [44] weapons," *see* Def. Mot. at 24; and do all of these things while continuing to work on defendants' other outstanding *Touhy* requests.  Accomplishing these tasks within the six-week time frame of defendants' motion would be impossible for the available personnel even if the restrictions imposed in response to COVID-19 did not limit their access to DoD facilities and databases.  Defendants' motion should therefore be denied to avoid the imposition of an undue burden on DoD.

## <u>CONCLUSION</u>

Defendants' renewed motion to compel should be denied for the reasons set forth above.

<div style="margin-left: 40%;">

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

LAWRENCE KEEFE
United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

</div>

26

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C.  20530
Tel: (202) 514-4469/Fax: (202) 616-8460
E-mail: david.glass@usdoj.gov

Dated: July 15, 2020                    Attorneys for the Department of Defense

## CERTIFICATE OF SERVICE

I certify that I served the within memorandum on all counsel of record by filing it with the Court by means of its ECF system on July 15, 2020.

s/ *David M. Glass*

## CERTIFICATE UNDER N.D. FLA. LOC. R. 7.1(F)

I certify that the within memorandum contains 6,105 words, not counting the table of contents or table of cases, based on the word-processing software used to prepare it.

s/ *David M. Glass*