IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

Pending before the Court are the parties' motions requesting the Court issue letters of request to the French-German Research Institute of Saint-Louis ("ISL") pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, (the "Hague Evidence Convention"). ECF Nos. 1235, 1262. For the reasons discussed below, the parties' motions are due to be **GRANTED**.

## I. BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the Combat Arms Earplug Version 2 (the "CAEv2"). ECF No. 704. The CAEv2 is a dual-ended earplug, "in which one side provides linear hearing protection, intended to block out as much noise as possible, while the opposing side contains a non-linear filter which offers level-dependent

hearing protection." ECF No. 1235 at 2. The designs for the nonlinear end of the CAEv2 (occasionally referred to as the "ISL filter" or the "CAE filter") and for a generic double-ended earplug originated as ISL's intellectual property. *Id.* at 2–3.

ISL is an "institute for research, scientific studies[,] and basic technologies in the field of armaments" (military weaponry and equipment) created in the 1958 Convention Between the French Republic and the Federal Republic of Germany Concerning the Franco-German Research Institute of Saint-Louis (the "1958 Convention"). ECF No. 891-7 at 3; *see also* ECF No. 969-2 ¶ 6. ISL operates as a "non-profit scientific research establishment" at equal expense to the French and German governments and is administered by a board of trustees and two directors (one from each country). ECF No. 891-7 at 3–4. Because ISL's "general mission … is to develop technical innovations in the fields of defense and security," ECF No. 969-2 ¶ 8, the 1958 Convention provides that ISL must protect "official secrets and classified documents" in maintaining its intellectual property, ECF No. 891-7 at 6.

The parties assert that ISL researchers Pascal Hamery and Armand Dancer patented the non-linear filter and the "double-ended" design of the CAEv2. ECF No. 1235 at 2–3; ECF No. 1262 at 2. Specifically, on

December 18, 1997, Inventor Hamery, on behalf of Assignee ISL, applied for a patent on ISL's "double-ended" earplug design with the United States Patent and Trademark Office.  ECF No. 891-3 at 2.[1]  On March 3, 1999, ISL entered into a licensing agreement granting Defendants the exclusive rights to manufacture, use, and sell products using ISL's double-ended earplug design.  ECF No. 891-4; ECF No. 969-2 ¶ 17.

Plaintiffs previously served ISL with a subpoena pursuant to the Federal Rules of Civil Procedure and sought to compel compliance in this Court.  ECF No. 891.  The Court held that it did not have personal jurisdiction to order ISL, a nonparty, to comply with the Rule 45 subpoena.  ECF No. 1000 at 18–20 (citing *Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014)).  The undersigned, however, did not foreclose *every* avenue for the parties to attempt to obtain discovery from ISL: "There is no question that a party attempting to obtain discovery from a foreign nonparty must resort to the Hague Evidence Convention's discovery procedures (where available) if the Court does not have personal jurisdiction over the nonparty."  *Id.* at 21 n.6 (collecting cases).

---

[1] Patent No. 5,936,208 was issued on August 10, 1999.  ECF No. 897-3 at 2

3

## II.  THE HAGUE EVIDENCE CONVENTION

The Hague Evidence Convention, opened for signature on March 18, 1970, and ratified by the United States Senate on June 13, 1972, "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522, 524 (1987) ("*Aérospatiale*"); 23 U.S.T. 2555.  The United States took the initiative in proposing the Hague Evidence Convention following the favorable response to the Hague Service Convention and aspired to "establish a system for obtaining evidence located abroad that would be 'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state."  *Aérospatiale*, 482 U.S. at 530.

The Hague Evidence Convention provides for the transmission and execution of letters of request, commonly known in the United States as letters rogatory. *See* 23 U.S.T. 2555, Art. 1 ("In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.").  Letters of request must

4

provide specific information about the proceeding in the sending state and the discovery sought.  23 U.S.T. 2555, Art. 3.  The letters are sent to the designated "Central Authority" of a signatory for the Central Authority to then "transmit them to the authority competent to execute them."  23 U.S.T. 2555, Art. 2.  The requested authority must "apply the appropriate measures of compulsion" to the same extent it would for the "execution of orders issued by authorities of its own country or of requests made by parties in internal proceedings."  23 U.S.T. 2555, Art. 10.  The recipient of letters of request may refuse to give evidence based on a privilege recognized under the laws of the sending or receiving nation.  23 U.S.T. 2555, Art. 11.

This procedure is not mandatory.  The preamble of the Hague Evidence Convention "does not speak in mandatory terms … to describe the procedures for all permissible transnational discovery and exclude all other existing practices."  *Aérospatiale*, 482 U.S. at 534.  The Hague Evidence Convention "itself does not modify the law of any contracting state, require any contracting state to use the Convention procedures, either in requesting evidence or in responding to such requests, or compel any contracting state to change its own evidence-gathering procedures."  *Id.*  In short, "the Convention was intended as a permissive supplement, not

a pre-emptive replacement, for other means of obtaining evidence located abroad." *Id.* at 536.

"[I]n determining whether to employ Hague Convention means or allow other procedures, a court must look to such factors as considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficacy of alternative formats for discovery." *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001). The party seeking application of the Hague Evidence Convention bears the burden of persuasion. *In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 365 n.17 (D. Kan. 2010). Ultimately, the decision to permit discovery under the Hague Evidence Convention is within the Court's discretion. *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019); *see also Aérospatiale*, 482 U.S. at 546 ("The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke.").

## III.  DISCUSSION

The parties have submitted proposed letters of request for submission to French Central Authority on behalf of ISL, in accordance with

Article 2 of the Hague Evidence Convention.  These letters of request pertain to relevant matters in this litigation, do not appear harassing, oppressive, or otherwise burdensome, and are formatted properly.  It is apparent that ISL played a critical role in the design, testing, and conception of components of the CAEv2, and letters of request under the Hague Evidence Convention are the only means for the parties to obtain discovery from ISL.  Upon careful consideration of the proposed letters of request, the undersigned concludes the instant motions are due to be granted.

The undersigned will execute the proposed letters of request and attach them as exhibits to this order.  It bears mentioning, however, that France has reserved its right under Articles 4 and 33 of the Hague Evidence Convention to execute only letters of request submitted in French or accompanied by a French translation.  Defendants' letter of request is accompanied by a French translation.  Plaintiffs will need to do the same before they effect service of its letter of request on the French Central Authority.  Any translation must be certified as correct, either by a diplomatic officer or consular agent or by a sworn translator or by any other person so authorized in the United States or France.

Additionally, the Court notes that Defendants' letter of request includes a place for a Court seal. The Court leaves it to the parties to obtain from the Clerk of Court certified copies of the approved letters of request for service.

## IV.  CONCLUSION

Accordingly, it is **ORDERED**:

1. Plaintiffs' Motion for Issuance of a Letter of Request Pursuant to the Hague Evidence Convention, ECF No. 1235, is **GRANTED**.  The undersigned has executed the letter of request submitted by Plaintiffs, and it is attached to this order.

2. Defendants' Motion to Issue Letter of Request for International Judicial Assistance Pursuant to the Hague Evidence Convention, ECF No. 1262, is **GRANTED**.  The undersigned has executed the letter of request submitted by Defendants, and it is attached to this order.

**DONE AND ORDERED** this 29th day of July 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge