## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Compel Against the Department of Defense."  ECF No. 1211.  The Department has filed a response in opposition, ECF No. 1253, and Defendants (with leave of court) filed a reply memorandum, ECF No. 1275.  The motion is ripe for consideration and has been referred to the undersigned.  ECF No. 1212. For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendants' motion should be **GRANTED IN PART and DENIED IN PART**.

## I.  BACKGROUND

The undersigned has frequently described this multidistrict litigation as "a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the 'CAEv2')."  *See, e.g.*, ECF No. 879 at

1; ECF No. 1000 at 1; ECF No. 1048 at 2; ECF No. 1085 at 1; ECF No.

1108 at 2.  More specifically:

> Plaintiffs assert state law claims for negligence and strict product liability based on design defect and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence per se, and consumer-protection claims.  Plaintiffs' design defect claims target two features of the CAEv2, alleging that: (1) its stem was too short for certain users—primarily those with medium to large ear canals—to insert the device deeply enough into their ears to obtain the airtight seal necessary to provide hearing protection; and (2) when the earplug was inserted according to standard fitting instructions, the positioning of the opposing flanges relative to the outer ear caused the basal edge of the third flange of the non-inserted side of the earplug to press against some users' ear canal openings and fold up, causing imperceptible loosening of the seal, which, they claim, results in little to no hearing protection for the user.  Plaintiffs' failure-to-warn claims are based on allegations that Defendants failed to provide warnings regarding the alleged dangers inherent in the use of the CAEv2.

ECF No. 1280 at 16–17.  Plaintiffs are servicemembers, veterans, and

civilians seeking damages in this action for hearing loss, tinnitus, and

related injuries caused by their use of the CAEv2.  ECF No. 704.

Defendants dispute these allegations.  ECF No. 959.

The Government is not a party to this litigation, ECF No. 704 at ¶¶

16-20, but its relationship to this matter is undeniable.  The docket reflects

litigation between the parties over the discoverability of government

records, *see, e.g.*, ECF Nos. 977, 1154, and, until recently, Defendants

attempted to invoke the government contractor defense as a shield from state tort liability for those plaintiffs claiming injury from using the CAEv2 during their military service, *see* ECF No. 1280 (denying Defendants' motion for summary judgment based on the government contractor defense and granting Plaintiffs' motion for summary judgment on the same as a matter of law).  Moreover, the Court has recognized that "this litigation is nothing if not about the government's procurement of equipment," ECF No. 1280 at 26, namely the CAEv2.

Consequently, the parties have identified the United States as a critical source for third-party discovery.  On May 20, 2019, Assistant United States Attorney Leah Butler, Assistant United States Attorneys Kathryn Drey, and United States Army Major Collin Evans—on behalf of the Government—presented to the parties and the Court on how the parties should proceed with discovery requests for documents from the United States and for the testimony of its employees subject to federal regulations promulgated under the Housekeeping Statute, 5 U.S.C. § 301, and applied in accordance with the Supreme Court's decision in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  ECF No. 399.  The Government advised, in pertinent part: (1) on its interpretation of the application of *Touhy* (which the undersigned discusses in more detail below); (2) that a requesting party

3

should avoid broad discovery requests directed to the United States, such
as for "any and all documents" referring to a particular person or subject;
(3) that a requesting party will have an opportunity to know why the
Government objects to the production of discovery, should it raise an
objection; (4) that any request for discovery must be in writing and may be
supplemented; and (5) that a requesting party should not send a subpoena
because, from the Department of Justice's "perspective," a "subpoena
signed by an attorney is not from a court of competent jurisdiction." *Id.*

Since this presentation, Defendants have sent discovery requests to
the Department of Defense requesting the production of: (1) numerous
categories of government/military records; (2) more than 30 potential
witnesses for interviews, depositions, or both; and (3) information that does
not fit neatly in either of the former categories.  Defendants now seek to
compel the depositions of six current government employees (Mary
Binseel, Dr. Mark Little, LTC Martin Robinette, Dr. Leanne Cleveland, LTC
Theresa Schulz, and Dr. John King) and the production of noise and
ototoxin data, "safety release" documentation for the CAEv2, and the
identities of the Hearing Conservation Program Manager and Industrial
Hygiene Program Manager at particular military installations.  ECF No.

1211.  The Court will address only the procedural history of the discovery requests in issue.

On October 25, 2019, Defendants sent Major Evans a nine-page letter requesting interviews with 30 witnesses (including Ms. Binseel, LTC Robinette, LTC Schulz, and Dr. John King) and providing the bases for their request in narrative form.  ECF No. 1211-2.  Defendants revised their request on December 2, 2019, when they sent Major Evans a second letter seeking depositions and pre-deposition interviews for two categories of witnesses—those prioritized "in connection with Defendants' affirmative defenses" and those who could be "de-prioritized."  ECF No. 1211-3 at 4.  Unlike their first request, Defendants described the supposed relevance of each witness in turn and provided contact information where available.  *Id.*  Defendants identified Ms. Binseel, Dr. Little, and LTC Schultz as priority witnesses and LTC Robinette, Dr. Cleveland, and Dr. John King as de-prioritized witnesses.  *Id.* at 5, 7–10, 13.

The Department has since approved five of the 30 requested witnesses for deposition and only three depositions have occurred.  ECF No. 1211 at 3 n.1.  Meanwhile, at an in-person meeting on January 28, 2020, the Department denied Defendants' request for pre-deposition interviews as to all witnesses and denied Defendants' request to depose

5

Dr. Little. *Id.* at 3.  The next day, Defendants asked the Department to

reconsider its decision denying the request to depose Dr. Little and

produced documents in support thereof. *Id.* at 3.

Defendants say they have contacted the Department on multiple

occasions asking for an update on the Department's positions as to the

outstanding deposition requests. *Id.* at 3–4.  On June 9, 2020, Defendants

sent a letter to Jacqui Snead (with the Civil Division of the Department of

Justice) requesting the same.  ECF No. 1211-4.  Two weeks later, on June

23, 2020, United States Army Major Nicole Kim sent the parties a letter

informing them that the Department denied Defendants' request to depose

LTC Robinette.  ECF No. 1211-5.  Major Kim provided this reasoning:

> After speaking with COL Robinette, it is apparent that he lacks
> relevant knowledge of the information you listed in your requests.
> COL Robinette had a minimal role, if any, in acquiring or
> approving the CAEv2 and his direct communications about
> CAEv2 were limited. Additionally, he served as a DOJ subject
> matter expert in a separate investigation related to the underlying
> facts of this case. Because of this, it is our position that allowing
> this employee to sit for a deposition would not be productive and
> would create an undue burden on the DoD due to the amount of
> time the DoD would expend preparing for and participating in the
> requested deposition. See DoDD 5405.2 and Fed. R. Civ. P. 26.
> Therefore, your request to depose this individual is denied.

*Id.* at 1.  The Department nevertheless authorized LTC Robinette "to

provide responses to interrogatories based on the submitted Touhy

requests and his limited knowledge of the CAEv2," but it imposed limitations on the scope of these interrogatories and reserved the right to object on grounds of relevance, undue burden, proportionality, and privilege. *Id.* at 2.

On June 26, 2020, Major Kim informed Defendants that the Department was "not in a position to provide a final determination" on their outstanding deposition requests. ECF No. 1211-6 at 1. As to Ms. Binseel, the Department "reached out" to her but was "unable to speak with her regarding this matter." *Id.* at 2. As to Dr. Little, the Department acknowledged receipt of Defendants' supplemental documentation but "had not determined whether the supplemental information you provided warrants revisiting [the] earlier denial of his deposition." *Id.* As to LTC Schulz, the Department said it had spoken with her and she had "limited knowledge related to the subjects identified" in the December 2, 2019, discovery request. *Id.* And, as to the de-prioritized witnesses (including Dr. Cleveland and Dr. King), the Department stated it had not reached a final agency decision on whether to permit depositions because it had "not expended many resources trying to locate these witnesses so that the agency could work on [Defendants'] other *Touhy* requests," including those Defendants deemed a priority. *Id.* at 3.

7

Defendants first breached the subject of discovery pertaining to noise and ototoxin data in their June 21, 2019, discovery request.  ECF No. 1211-7 at 7, 11–12.  Defendants requested eight categories of "[d]ocuments [r]egarding [n]oise [a]nd [o]toxin [e]xposure [i]n [t]he [m]ilitary," *id.* at 11–12, and provided the basis for this request, *id.* at 7. Defendants clarified this request in their July 26, 2019, letter.  ECF No. 1211-8.  When Major Evans stated "he had been unable to locate the information and believed it did not exist," ECF No. 1211 at 6, Defendants submitted a supplemental discovery request on March 17, 2020, that identified potential sources for this information and noted government regulations requiring the collection of this data.  ECF No. 1211-9. Defendants' June 9, 2020, letter to Ms. Snead asked for an update on the Department's position as to this outstanding discovery request.  ECF No. 1211-4.  On June 26, 2020, Major Kim informed Defendants that the Department had not started processing this discovery request because it was prioritizing Defendants' earlier requests and, therefore, did not have a final determination on the production of this data.  ECF No. 1211-6 at 4.

In Defendants' July 26, 2019, discovery request, they also sought the production of several categories of documents pertaining to the CAEv2, including design specifications, requests for proposal, usage instructions,

training materials, testing, and complaints.  ECF No. 1211-8 at 8–12.
Defendants have focused these requests on the production of a "safety
release" for the CAEv2, which Defendants assert is "a formal document
issued before any hands-on training, use, or maintenance by troops and
describes the specific hazards of the system or item based on test results,
inspections, and system safety analyses[.]"  ECF No. 1211 at 25 (citing
ECF No. 1211-15 at 148).  On June 18, 2020, Defendants asked the
Department to prioritize production of the safety release as responsive to
the above-mentioned requests.  ECF No.  1211-16 at 3–4.  Major Kim
responded on June 23, 2020, that the Department was "looking into
whether there is anything that would be responsive to the request."  ECF
No. 1211-17 at 2.

Lastly, and more recently, Defendants have attempted to identify the
Hearing Conversation Program Manager and Industrial Hygiene Program
Manager at the Army installations identified as service locations for the
Bellwether Plaintiffs.  ECF No. 1211-18.  This was the subject of a June 3,
2020, discovery request to Major Kim, *id.*, which, according to Defendants,
was prompted by direction from Ms. Snead, ECF No. 1211 at 14.  On June
17, 2020, Defendants asked the Department to prioritize its response to
this discovery request based on a subcategory of military installations and

time periods relevant to the claims of the Bellwether Plaintiffs in Trial Group

A.  ECF No. 1211-19.  Major Kim informed Defendants on June 26, 2020,

that the Department started processing this request but had not made a

final determination as to production.  ECF No. 1211-6 at 4.

## II.  THE HOUSEKEEPING STATUTE, *TOUHY*, AND THE ADMINISTRATIVE PROCEDURE ACT

Typically, the Federal Rules of Civil Procedure—specifically Rule

45—govern the production of third-party discovery and objections thereto.

Fed. R. Civ. P. 45; *Citizens Union of City of New York v. Attorney Gen. of

N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).  Not so here because the

subject third-party is, for all intents and purposes, the United States.

Instead, the Court must look to numerous federal statutes and regulations,

beginning with the Housekeeping Statute, 5 U.S.C. § 301.

The Housekeeping Statute authorizes "the head of an Executive

department or military department" to "prescribe regulations for the

government of his department, the conduct of its employees, the

distribution and performance of its business, and the custody, use, and

preservation of its records, papers, and property."  5 U.S.C. § 301.  The

antecedents of § 301, however, "go back to the beginning of the Republic,

when statutes were enacted to give heads of early Government

10

departments authority to govern internal department affairs."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).  Congress first enacted housekeeping statutes in 1789 "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file government documents."  H.R. Rep. No. 85-1461 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352.  "Those laws were consolidated into one statute in 1874[,] and the current version of the statute was enacted in 1958."  *Chrysler Corp.*, 441 U.S. at 309.

In 1951, the Supreme Court looked to the Housekeeping Statute to determine whether the Attorney General properly issued a regulation prohibiting a subordinate official of the Department of Justice from obeying a subpoena duces tecum ordering the production of records in his possession.  *Touhy*, 340 U.S. at 463.  The Court held the regulation was valid because the Housekeeping Statute authorized the Attorney General "to prescribe regulations not inconsistent with the law for the custody, use, and preservation of the records, papers, and property appertaining to the Department of Justice[.]"  *Id.* at 468.

The Supreme Court's holding prompted federal agencies to adopt so-called "*Touhy* regulations" concerning testimony by agency employees and the production of government documents.  *Moore v. Armour Pharm. Co.*,

11

927 F.2d 1194, 1197 (11th Cir. 1991); *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011).  Relevant here, Department of Defense Directive 5405.2 § 6.1.1 provides:

> In response to a litigation request or demand for official DoD information or the testimony of DoD personnel as witnesses, the General Counsels of DoD, Navy, and the Defense Agencies; the Judge Advocates General of the Military Departments; and the Chief Legal Advisors to the JCS and the Unified and Specified Commands, with regard to their respective Components, are authorized—after consulting and coordinating with the appropriate Department of Justice litigation attorneys, as required—to determine whether *official information originated by the Component* may be released in litigation; whether DoD personnel assigned to or affiliated with the Component may be interviewed, contacted, or used as witnesses concerning official DoD information or as expert witnesses; and what, if any, conditions will be imposed upon such release, interview, contact, or testimony.  Delegation of this authority, to include the authority to invoke appropriate claims of privilege before any tribunal, is permitted.

ECF No. 1211-1 at 5 (emphasis added).  This regulation applies to all Department "Components"; that is, "the Office of the Secretary of Defense, the Military Departments, the Organization of the Joint Chiefs of Staff, the Unified and Specified Commands, and the Defense Agencies."  *Id.* at 3 (§ 2.1).  And the Department defines "official information" as:

> All information of any kind, however stored, that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was acquired by

> DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the United States Armed Force

*Id.* at 4 (§ 3.4).

Nevertheless, the *Touhy* decision did not create or endorse an executive privilege for federal agencies to resist entirely discovery efforts. *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).[1]  Only two years after *Touhy*, the Supreme Court emphasized that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953).  What's more, Congress amended the Housekeeping Statute in 1958 to state: "This section does not authorize withholding information from the public or limiting the availability of records to the public."  5 U.S.C. § 301; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777–78 (9th Cir. 1994) (discussing the 1958 amendment to the Housekeeping Statute).

Because the Government does not have unfettered discretion to withhold discovery from federal litigants (either in the form of records or testimony), the Government's application of *Touhy* regulations does not

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

escape judicial review.  As Defendants and the Department acknowledge,

the Eleventh Circuit cabins such review to the Administrative Procedure Act

("APA") rather than Federal Rule of Civil Procedure 45.  *Moore*, 927 F.2d at

1197.[2]  Generally speaking, the APA provides two types of challenges for a

dissatisfied party to seek redress in federal court.  5 U.S.C. § 706.  First,

when presented with a complaint of agency inaction, a reviewing court may

"compel agency action unlawfully withheld or unreasonably delayed."  §

706(1).  Second, a reviewing court may set aside a final agency action that

it concludes is "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with the law[,]" in addition to other reasons.  § 706(2).

## III.  DISCUSSION

### A.    Preliminary Matters

The Court must begin its analysis by addressing two preliminary

matters.  First, there is no dispute here that the Court may hear

---

[2] This standard of review is the subject of a circuit split.  *See* Charles Alan Wright & Arthur
R. Miller, *Federal Practice and Procedure* § 2463.2 (3d ed.) ("The courts of appeals are
further divided on the question of what standard of review to apply to an agency's decision
not to comply with a subpoena.  The Fourth and Eleventh Circuits review the agency's
decision under the arbitrary and capricious standard of Section 706(2)(A) of the APA
under the theory that the waiver of sovereign immunity in Section 702 is the only reason
the agency's decision is even judicially reviewable.  In contraposition, the D.C., Sixth, and
Ninth Circuits subject the agency's refusal to comply to the more stringent standard of
review found in Rules 26(c) and 45(c), under which the party refusing to comply bears the
burden of showing good cause.  The Second Circuit initially adopted the arbitrary and
capricious standard of review in Section 706(2)(A) but later, on reconsideration, vacated
their decision and reserved the question for the future." (footnotes omitted)).

Defendants' APA challenge as part of this pending federal civil action.  ECF No. 1211 at 16; ECF No. 1253 at 13.  The Court agrees with the greater weight of authority holding that requiring Defendants to initiate a new APA action against the Department would not only be inefficient and inconvenient, but it is simply not required.[3]  Indeed, in *Moore*, the Eleventh Circuit resolved an APA challenge that arose from a motion to quash in the underlying litigation and did not require the commencement of a separate APA action. 927 F.2d at 1197.  Therefore, Defendants' motion is properly before the Court.

The second matter is where Defendants and the Department diverge. The Department argues it is not subject to the Court's personal jurisdiction because Defendants have failed to effect service of process.  ECF No. 1253 at 11–13.  A century of hornbook law lends some support to this argument.  As a starting point, "Personal jurisdiction … is 'an essential element of the jurisdiction of a district court,' without which the court 'is powerless to proceed to an adjudication.'"  *Ruhrgas AG v. Marathon Oil*

---

[3] *See Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349, 1353 (N.D. Fla. 2013) ("Significant delay and inconvenience will be avoided simply by construing the instant action as arising under the APA."); *Ceroni v. 4Front Engineered Sols., Inc.*, 793 F. Supp. 2d 1268, 1275 (D. Colo. 2011) ("[T]he proper procedure is for the federal court, on the filing of a motion to compel or for protective order, to review the discovery dispute in the pending action."); *Johnson v. Folino*, 528 F. Supp. 2d 548, 550 (E.D. Pa. 2007) ("The Court has jurisdiction to determine this discovery dispute; petitioner need not file an ancillary proceeding under the APA.").

*Co.*, 526 U.S. 574, 584 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).   And "service of a summons … is prerequisite to the exercise of personal jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1556 (2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)); *see also Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946) ("It is true that the service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.").  As explained above, however, this discovery dispute is not a new civil action requiring service of a summons.  A summons accompanies a complaint or initial pleading, which does not exist here. Fed. R. Civ. P. 4(b), (c).  Accordingly, the Department's argument that Defendants were required to serve a summons is untenable.

The Department, alternatively, asserts that Defendants should have satisfied service of process by issuing a Rule 45 third-party subpoena. ECF No. 1253 at 12.  The problem for the Department is that this discovery dispute does not arise under Rule 45, at least in the Eleventh Circuit. *Moore*, 927 F.2d at 1197.  If it did, the Government could not avail itself of the APA's more deferential standards of review.  *See, e.g.*, *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("A challenge to an agency's refusal to

comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel (or an agency's Rule 45 motion to quash).") (Kavanaugh, J.).

In any event, Defendants argue that the Government has waived this specific objection to personal jurisdiction.  ECF No. 1275 at 7–9.  A lack of personal jurisdiction is a waivable defect, *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004), as is the requirement of service of process, *Petrowski v. Hawkeye-Sec. Ins. Co.*, 350 U.S. 495, 496 (1956).  Where a party raises personal jurisdiction in a responsive pleading, the Court may turn to the "critical question" of whether the party's conduct nonetheless gives rise to an implicit waiver.  *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006).  Courts will look "to the extent of the objecting [party's] involvement in the action," *see id.* at 1225 (collecting cases), with the understanding that this type of waiver is "not readily found," *In re Trasylol Prods. Liab. Litig.-MDL-1928*, No. 08-CV-81212, 2011 WL 5529934, at *2 (S.D. Fla. July 21, 2011).

The undersigned agrees that the Department's conduct evinces a waiver of its objection to personal jurisdiction.  Last year, Major Evans, on behalf of the Department, instructed the parties to *not* send subpoenas for their discovery requests because, in its opinion, they would have no legal

effect.  *See* ECF No. 399 at 33–34 ("First, you don't need to send a subpoena.  That subpoena signed by an attorney is not from a court of competent jurisdiction from DOJ's perspective.  So you need to send me a written request for a witness, and then we make a determination if they can be approved.").[4]  In the same breath, Major Evans assured the Court that if "information [was] not coming quickly enough" it would abide by this Court's order directing production.  *Id.* at 37–38 ("If you issued a court order, obviously, Your Honor, we would abide by the court order.").  What's more, the record before the Court demonstrates Defendants and the Department have operated in accordance with these instructions for more than one year, and the Department has appeared on behalf of its current employees at depositions in this matter.  ECF No. 1211 at 1–15; ECF No. 1275 at 7–8.  In sum, the Department's instructions, assurances, and appearances throughout this litigation amount to waiver by conduct.[5]

Finally, the fact that Defendants have not served the Government with a summons or discovery subpoena does not violate due process.

---

[4] This instruction comports with Department of Defense Directive 5405.2 § 6.1.1, which speaks in terms of litigation requests *or* demands.

[5] Because the Court concludes the Department has waived its objection based on personal jurisdiction, it will not address Defendants' argument that the doctrine of judicial estoppel bars the Department's objection.  ECF No. 1275 at 1–3.

Personal jurisdiction is a fundamental tenet of the Due Process Clauses of
the Fifth and Fourteenth Amendments, establishing that maintenance of a
suit must not offend the traditional notions of fair play and substantial
justice.  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp.
and Placement*, 326 U.S. 310, 319–20 (1945); *Prewitt Enters., Inc. v. Org.
of Petroleum Exp. Countries*, 353 F.3d 916, 921 (11th Cir. 2003).  At
bottom, procedural due process requires only that service provide "notice
reasonably calculated, under all the circumstances, to apprise interested
parties of the pendency of the action and afford them an opportunity to
present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339
U.S. 306, 314 (1950).  There is no question here the Government had
notice of the discovery disputes in issue (including service of Defendants'
instant motion to compel) and is now afforded the opportunity to be heard
on its objections.

### B.   Unreasonable Delay

Turning to the merits, Defendants advance a two-pronged argument
for the Court to compel production of the bulk of discovery sought in the
instant motion (except for the deposition of LTC Robinette).  First, the Court
should consider Defendants' *Touhy* requests constructively denied
because the Department has not decided whether to produce this

19

discovery notwithstanding ample time to do so.[6]  Second, the Court should

hold these constructive denials are arbitrary or capricious under the APA.

ECF No. 1211 at 17–26.  The Court declines to navigate this path because

it does not comport with the APA's scope of review.

> APA review under § 706(2) is limited to final agency actions:
>
> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted).

Stated another way, "The core question is whether the agency has

completed its decisionmaking process, and whether the result of that

process is one that will directly affect the parties."  *Franklin v.*

*Massachusetts*, 505 U.S. 788, 797 (1992).

---

[6] *See, e.g.*, ECF No. 1211 at 5 ("After months of waiting for a decision from the government, Defendants consider their requests [for depositions] to have been constructively denied. Defendants cannot wait any longer for the Department to make up its mind."); *id.* at 7 ("Given the discovery schedule in this litigation and the need for any government discovery to be taken promptly, the government's "update" amounts to a constructive denial of Defendants' request."); *id.* at 11 ("The government's failure to identify and produce this material over a twelve-month time period amounts to a constructive denial of Defendants' request."); *id.* at 15 ("Given the discovery schedule in this litigation and the need for any government discovery to be taken promptly, and the Department's failure to produce other relevant material for over a year, the government's "update" amounts to a constructive denial of Defendants' request.").

For the Court to review the Government's failure to act under §

706(2) as a final agency action, the requesting party must demonstrate the

Government has "engaged in a pattern of inaction that can be said to mark

the consummation of the agency's decisionmaking process or to be one by

which rights or obligations have been determined." *Nat'l Parks*

*Conservation Ass'n v. Norton,* 324 F.3d 1229, 1238 (11th Cir. 2003).

Defendants have not made this showing.  Indeed, the Department has

engaged with Defendants during the discovery process since last year, and

it has not "disclaimed its intention of responding to [D]efendants' *Touhy*

requests[.]"  ECF No. 1253 at 18.  The undersigned, therefore, will not

consider the Department's failure to resolve Defendants' *Touhy* requests as

constructive denials or final agency action.

Defendants' challenge, instead, must proceed under § 706(1) as a

claim of unreasonable delay.[7]  "A claim under § 706(1) can proceed only

where a plaintiff asserts that an agency failed to take a *discrete* agency

action it is *required to take.*"  *Norton v. S. Utah Wilderness Alliance*, 542

U.S. 55, 64 (2004) (emphasis added).  Because Defendants' motion

addresses the Government's failure to respond to individual *Touhy*

---

[7] The Department anticipated this interpretation and argues accordingly.  ECF No. 1253 at 18–24.

requests and the Government does not enjoy absolute immunity from third-party discovery in federal court, the Department's alleged inaction is subject to § 706(1).  *See Donatoni v. Dep't of Homeland Sec.*, 184 F. Supp. 3d 285, 288 (E.D. Va. 2016) ("[B]efore plaintiff's requests for information from DHS were denied, plaintiff was free to file a lawsuit seeking relief under the APA directing DHS to issue a final decision, which would in turn be reviewable under APA § 706(2).").

"When an agency is required to act … within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable."  *Forest Guardians v. Babitt*, 174 F.3d 1179, 1190 (10th Cir. 1999); *see also W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1279 (D. Utah 2017) ("Because neither Section Three nor Section Four impose explicit statutory deadlines that would warrant the application of the 'unlawfully withheld' standard, the court will treat BLM's alleged failures to act under those sections as action 'unreasonably delayed' and apply the corresponding standard.").  In determining whether an agency has unreasonably delayed reaching final agency action, federal courts frequently apply a six-factor test developed by the District of Columbia Circuit Court of Appeals looking at:

(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research and Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted).

The Department avers that six reasons militate against a finding of unreasonable delay: (1) no human lives are at stake in this litigation; (2) the *Touhy* requests are numerous and unduly broad; (3) the Department has limited personnel resources to respond to the demands of civil litigation; (4) the Department has been unable to close some of Defendants' *Touhy* requests despite its best efforts; (5) the Department cannot promptly resolve some of Defendants' *Touhy* requests for document productions; and (6) the Department has issued mandatory telework instructions in light of the COVID-19 pandemic.  ECF No. 1253 at 20–23.

The Court has considered carefully the Department's arguments. The Court recognizes that the Department "is in a unique—and

authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). This consideration bears more weight for the federal agency tasked with the security of our nation, military, and citizens. Moreover, the Court is sensitive to the fact that the COVID-19 pandemic has impacted all levels of government and strained personnel resources. The Department is no exception, and the Court appreciates its efforts in this matter thus far. These factors weigh against judicial intervention.

On the other hand, the Court must apply a rule of reason to the delay presented. The Department was first aware of Defendants' requests to depose Ms. Binseel, LTC Schulz, and Dr. John King in October 2019. And Defendants requested to depose Dr. Cleveland and Dr. Little late last year. The Department also learned of Defendants' request for the production of noise and ototoxin data and any safety release documentation in June 2019 and July 2019, respectively. Even in view of the Department's limited resources, the Department fails to explain why it has not reached final decisions that can be judged against the APA's arbitrary-and-capricious standard.

The Department has offered examples—namely, one witness it has been unable to reach (Ms. Binseel) and the difficulty locating custodians for 21 years of noise and ototoxin data.  ECF No. 1253 at 22.  The Department neglects to mention what efforts are being made or to explain why it has not attempted to responded to these requests piecemeal.  For instance, LTC Schulz has been interviewed, the Department is aware of what knowledge she has regarding the events underlying this action, but it has not decided whether it will allow her deposition.  ECF No. 1211-6 at 2. There is no justification for this inaction.

Accordingly, the undersigned concludes that Defendants' motion to compel is due to be granted to the extent the Department has unreasonably delayed resolving Defendants' *Touhy* requests for: (1) the depositions of Ms. Binseel, Dr. Little, Dr. Cleveland, LTC Schulz, and Dr. King; (2) the production of four categories of noise and ototoxin data described in Defendants' motion to compel (ECF No. 1211 at 24); and (3) the production of safety release documentation for the CAEv2.  The Department must provide a final decision on these *Touhy* requests by a date certain (discussed below).

Defendants' motion to compel is due to be denied to the extent the Department has not delayed resolving Defendants' request for the identities

of the Hearing Conservation Program Manager and Industrial Hygiene Program Manager at particular military installations.  Defendants only sent this request to the Department on June 3, 2020, and the Department has since assured Defendants that it is being processed.  ECF No. 1211-6 at 4. The undersigned is not persuaded that the Department has unreasonably delayed reaching final agency action on this request.

### C.    Final Agency Action as to LTC Robinette

The Court will now turn to the single final agency action presented in Defendants' motion to compel—the Department's refusal to authorize a deposition of LTC Robinette.  The Court may set aside this decision if it is arbitrary or capricious.  § 706(2).  The scope of review is narrow and requires only reasoned decisionmaking by the Department.  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020).  The Court must "determine only whether [the Department] examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts found and the choice made."  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

Major Kim provided the following reasoning for denying Defendants' *Touhy* request:

> After speaking with COL Robinette, it is apparent that he lacks relevant knowledge of the information you listed in your requests. COL Robinette had a minimal role, if any, in acquiring or approving the CAEv2 and his direct communications about CAEv2 were limited. Additionally, he served as a DOJ subject matter expert in a separate investigation related to the underlying facts of this case. Because of this, it is our position that allowing this employee to sit for a deposition would not be productive and would create an undue burden on the DoD due to the amount of time the DoD would expend preparing for and participating in the requested deposition. See DoDD 5405.2 and Fed. R. Civ. P. 26. Therefore, your request to depose this individual is denied.

ECF No. 1211-5 at 1.  Defendants argue this decision was arbitrary and capricious because: (1) LTC Robinette's testimony is highly relevant to the military's knowledge of issues pertaining to the fitting of the CAEv2 ("the flange-fold instruction"); and (2) the fact that he recently served as a subject matter expert in a *qui tam* concerning the CAEv2 runs counter to the Department's assertion that preparing him for testimony in this case would be unduly burdensome.  ECF No. 1211 at 20–21.  The Department asserts that its decision should not be overturned because: (1) Defendants are offering a different basis for LTC Robinette's deposition than initially disclosed; (2) the Government would need to expend time in preparing for and attending LTC Robinette's deposition notwithstanding his prior role as a subject matter expert in a related action; and (3) the Department has

provided Defendants with the opportunity to submit interrogatories in lieu of a deposition.  ECF No. 1253 at 25–28.

The Department's reasoning for denying LTC Robinette's deposition is arbitrary and capricious.  The Department has failed to explain on what relative scale it concluded LTC Robinette had "a minimal role" pertaining to the military's acquisition or approval of the CAEv2.  Moreover, this assertion appears to be contradicted by the Department's statement that LTC Robinette served as a subject matter expert in an investigation related to the underlying facts of this case.  The Department's argument that Defendants have changed the basis for their *Touhy* request is also contradicted by the record.  On December 2, 2019, Defendants requested authorization to depose LTC Robinette regarding "instructions and/or training that military audiologists provided to service member for the use or fit of the Combat Arms Earplugs," which would include a flange-fold instruction.  ECF No. 1211-3 at 7–8.  Lastly, the Department's offer for the parties to submit interrogatories (which are typically unavailable in third-party discovery) to LTC Robinette tacitly recognizes that his testimony is relevant.

The Department's argument as to burden is also unavailing.  The Department asks this court to deny Defendants' motion as to LTC

Robinette because Defendants "do not say … that no preparation time would be necessary" for a deposition.  ECF No. 1253 at 26.  Yet, Directive 5405.2 § 6.2.1 requires the Department to look to whether "the request or demand is *unduly* burdensome[.]"  ECF No. 1211 at 5 (emphasis added).  The fact that any time may be required to prepare an employee for deposition is not a cognizable burden on the Department and would amount to absolute immunity from discovery that the Department does not enjoy.  *See Exxon*, 34 F.3d at 778 ("Neither the statute's text, its legislative history, nor Supreme Court case law supports the government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts.").

In sum, the undersigned concludes the Department's denial of Defendants' *Touhy* request to depose LTC Robinette is arbitrary and capricious because there is no rational connection between the facts before the Court and the Department's decision.  Accordingly, Defendants' motion to compel is due to be granted to the extent the Department's decision is set aside under § 706(2).

### D.    Compliance Deadline

In view of the procedural posture of this case, the Court recommends that the Department authorize LTC Robinette for deposition and enter final

29

agency action on Defendants *Touhy* requests for the depositions and

productions addressed in the motion to compel (except for the identities of

the Hearing Conservation Program Managers and Industrial Hygiene

Program Managers) within 14 days of the district court's order adopting this

report and recommendation.  This is because the parties have not had the

opportunity to address this issue.  Should the parties object to any portion

of this report and recommendation, they should include proposals for the

Court's consideration of a compliance deadline.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that:

1.       Defendants' "Motion to Compel Against the Department of Defense," ECF No. 1211, should be **GRANTED IN PART and DENIED IN PART**.

2.       The Department of Defense should be **ORDERED** to respond to Defendants' outstanding *Touhy* requests for: (1) the depositions of Ms. Binseel, Dr. Little, Dr. Cleveland, LTC Schulz, and Dr. King; (2) the production of four categories of noise and ototoxin data described in Defendants' motion to compel (ECF No. 1211 at 24); and (3) the production of safety release documentation for the CAEv2, no later than **14 days from the district court's order on the instant motion.**

3.     The Department of Defense's denial of Defendants' *Touhy* request to depose LTC Robinette should be **SET ASIDE**, and the Department should be **ORDERED** to authorize LTC Robinette for deposition no later than **14 days from the district court's order on the instant motion.**

**IN CHAMBERS** this 30th day of July 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**