# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-2885-MCR-GRJ |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | |
| This Document Relates to: | ) | Magistrate Judge Gary R. Jones |
| All Cases | ) | |

## Motion for Clarification or, in the Alternative, Reconsideration of the Court's July 17 Order

Pursuant to the Court's inherent power to clarify and reconsider its own interlocutory orders, Defendants respectfully move the Court to clarify or, in the alternative, reconsider its July 17 Order. *See* Dkt. 1258.

## BACKGROUND

Defendants' motion for clarification or reconsideration should be granted, in part because Plaintiff Vernon Rowe has abruptly changed his position about calling a vocational expert and about the scope of his lost earning capacity claim. During the July 16 hearing on Defendants' Motion to Compel Production of Unredacted Records, two Plaintiffs' attorneys stated that Plaintiff Rowe had no "present intent to have a vocational expert at all":

> THE COURT: . . . On the issue of claimed damages for diminished earning capacity, were the Plaintiffs intending to present a vocational expert or some other testimony on that?
>
> . . . .

> [Plaintiffs' counsel #1]: I don't think there's any present intent to have a vocational expert at all, Judge. Am I right on that, Marcus?
>
> [Plaintiffs' counsel #2]: That's correct, Judge.

July 16 Hr'g Tr. at 112:2–19.

But less than a week after counsel indicated that Plaintiff Rowe had no "present intent to have a vocational expert at all," Plaintiff Rowe provided the following supplemental answers to Defendants' interrogatories, which stated that "[t]he amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs":

> **[Interrogatory No. 55:]** Subject to and without waiving Plaintiff's foregoing objections, to the extent that Plaintiff has missed work and income attendant thereto as a result of the injuries Plaintiff suffers from his use of the CAEv2, *the amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs*, and Plaintiff objects to this interrogatory as premature to the extent it would require expert discovery at this stage.
>
> . . . .
>
> **[Interrogatory No. 56:]** Plaintiff's earning capacity is diminished not only by Plaintiff's present hearing loss and tinnitus, but also in that Plaintiff has been placed in a position of heightened vulnerability to accelerated hearing loss in the future, and consequent further diminishment of earning capacity. Plaintiff refers Defendants to his response to Interrogatory No. 55. *The amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs*, and Plaintiff objects to this interrogatory as premature to the extent it would require expert discovery at this stage.

Ex. 1 at 49–51 (Plaintiff's 7/22/20 Supplemental Objections and Answers to 3M First Set of Interrogatories) (emphasis added).

In his deposition the next day, Plaintiff Rowe confirmed the accuracy of his

interrogatory answers:

> Q. Are you claiming that you lost earnings based on your hearing
> issues?
>
> A. I can't really say if I did or not.
>
> Q. And are you claiming that you suffered a decrease in your earnings
> capacity as a result of hearing issues?
>
> A. Honestly, can't say. I don't know -- I don't know if I have or not.
>
> . . . .
>
> Q. And in your [interrogatory] answer, you have some objections, but
> then you scroll down. It says, "Subject to and without waiving plain- -
> - foregoing objections, to the extent the plaintiff has missed work and
> income attendant thereto as a result of the injuries plaintiff suffers from
> the use of the CAEv2, the amount of plaintiff's lost earnings attributable
> to plaintiff's injury will be subject of forthcoming expert proofs." Is that
> an accurate statement?
>
> A. Yes. It's saying that an expert would have to prove that, correct?
>
> Q. (Nods.)
>
> A. Yes.

Ex. 2 at 296:2–297:13 (V. Rowe 7/23/20 Dep. Tr.).

Also on July 22, Plaintiff Rowe served initial disclosures stating that he seeks

"[a]pproximately $750,000 to approximately $1,000,000" in "Future Loss from

Diminished Earning Capacity." *See* Ex. 3 at 19 (V. Rowe Initial Disclosures)

(emphasis omitted).

These developments, all of which have occurred since the Court issued its July 17 Order on Defendants Motion to Compel, warrant clarification or reconsideration of the July 17 Order. *See* Dkt. 1258. The Plaintiffs' claims for lost earning capacity were a focus of the July 16 hearing on Defendants' Motion to Compel. During the hearing, Defendants argued that various types of information— including information about substance abuse, disability applications, and mental health conditions—are relevant to the Plaintiffs' claims for lost earning capacity because they all affect the Plaintiffs' ability to work and advance in their careers. *See, e.g.*, July 16 Hr'g Tr. at 71:6–72:12; 82:23–84:12. Defendants emphasized that their experts will need a full picture of each plaintiff's vocational strengths and weaknesses to formulate well-informed opinions about whether a plaintiff has suffered a reduction in earning capacity. *See id.* at 82:23–84:12.

Plaintiffs argued that "these are personal injury cases at their core, and they're hearing loss and tinnitus cases. That's what they are." *Id.* at 74:16–18. Plaintiffs further argued that their lost earning capacity claims are narrow. They explained that Plaintiffs are "not claiming anything other than if [a plaintiff] wanted to really go find a job where he needed some hearing -- good hearing or damages related to here, he wouldn't be able to do it." *Id.* at 114:11–14. As a result, Plaintiffs maintained that "the facts [in *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467 (11th Cir. 1984),] are completely different, and . . . [have] nothing to do with the case at hand." July 16

4

Hr'g Tr. at 114:9–11. Plaintiffs' counsel also stated that they had no "present intent to have a vocational expert at all," *id.* at 112:15–17, and had not yet disclosed Plaintiff Rowe's current claim for "approximately $750,000 to approximately $1,000,000" for future loss of diminished earning capacity, Ex. 3 at 19 (emphasis omitted).

In its July 17 Order, the Court found that some information contained in Plaintiffs' disability records is relevant to the Plaintiffs' lost earning capacity claims. Dkt. 1258 at 11–13. But the Court also found that "records pertaining to substance abuse—which are covered under Pretrial Order No. 39 and are a species of mental health records—are not relevant at the discovery stage because, as a general matter, the plaintiffs' lost earning capacity claims are limited to damages of hearing loss caused by their use of the CAEv2." *Id.* 11. Defendants now move for clarification or, in the alternative, reconsideration.[1]

## LEGAL STANDARD

A Court "has plenary power over [an interlocutory order] and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315

---

[1] Defendants have simultaneously filed an objection to the July 17 Order pursuant to Federal Rule of Civil Procedure 72(a). Defendants' Rule 72 Objection may be moot if the Court grants Defendants' motion for clarification or, in the alternative, reconsideration.

(11th Cir. 2000); *see also Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010) ("It is permissible for a district court to rescind its own interlocutory order."). "[T]he Eleventh Circuit has expressly recognized that a court has 'ample discretion' or 'plenary power' to reconsider an interlocutory decision prior to final judgment." *Pensacola Firefighters' Relief & Pension Fund Bd. of Dirs. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:09CV53/MCR/MD, 2010 WL 11519376, at *2 (N.D. Fla. June 28, 2010) (Rodgers, J.) (quoting *Harper*, 592 F.3d at 1231–32). While "there remains value in recognizing the general principle that the interests of finality and conservation of scarce resources favor deeming reconsideration of an order as an extraordinary remedy which is to be employed sparingly," "a judge has broad discretion to reconsider his own interlocutory orders." *Id.* (internal quotation marks and brackets omitted).

## DISCUSSION

The Court should exercise its inherent and plenary power to clarify its July 17 Order to fully memorialize additional Court rulings from the July 16 hearing. Moreover, the Court should clarify and/or reconsider that ruling because Plaintiff Vernon Rowe has changed his position about his lost earnings capacity claim, including by providing updated interrogatory answers and initial disclosures stating that he now will call a vocational expert in support of his claim for "approximately $750,000 to approximately $1,000,000" in lost earning capacity.

I.    **THE COURT SHOULD CLARIFY ITS JULY 17 ORDER TO FULLY MEMORIALIZE THE COURT'S RULINGS DURING THE JULY 16 HEARING.**

Two of the Court's rulings from the July 16 hearing provided important guidance to the Parties, but are not fully memorialized in the July 17 Order. The Court should clarify the July 17 Order to incorporate these rulings from the July 16 hearing.

A.    **The Court found that Defendants could revisit the relevance of ototoxic medications after Science Day.**

During the July 16 hearing, the Court found that Defendants could further explore the ototoxic effects of medications after Science Day. *See* July 16 Hr'g Tr. at 103:5–23 ("[I]f it turns out that there is a medication that is established at science day is a significant cause of hearing loss and part of the Rowe records that were redacted redacted those drugs because they fall within the definition of, you know, substance abuse records and you were unable to make inquiry on that because these have been redacted, you could then request the right to continue the deposition or extend the deposition to inquire into those areas."). This ruling is not memorialized in the July 17 Order. Defendants respectfully request that the Court clarify the July 17 Order to make clear that Defendants can seek disclosure of ototoxic medications that Plaintiffs have redacted from their medical records.

**B.**    **The Court found that the relevance of evidence of substance abuse is a plaintiff-specific as-applied challenge.**

During the July 16 hearing, the Court found that the question of whether evidence of substance abuse is relevant to a Plaintiff's claims is "an as-applied challenge" and "a plaintiff-specific inquiry." July 16 Hr'g Tr. at 119:3–5. The Court also found that Defendants could further argue that evidence of substance abuse is relevant in any individual case if subsequent deposition testimony supports such an argument. *Id.* at 118:11–119:2.

> Your Honor, may we come back to the Court if, you know, depending on discovery or the witness's testimony, the issue -- you know, there are arguments that we can make as to relevance of this information?
>
> THE COURT: You know, it really depends. The answer is yes, and it depends upon what the testimony is from the particular plaintiff.
>
> So, for example -- or to use my example, if a plaintiff testified that he believes his earning capacity has been diminished because he wants to work in a music store because he's been playing guitar his whole life, and you want to come back and make the argument about substance abuse, that's probably going to fall on, you know, deaf ears. But if other information was developed at his deposition, then, you know, there may be an argument.
>
> *And you are correct that, as you say, an as-applied challenge, this really is a plaintiff-specific inquiry.* Because we can all agree if someone in a personal injury case said, I can't get a job as a result of the car accident, and that person was a heroin addict and using heroin on a daily basis, that might be an area you could get into and argue that the person nonetheless is not employable.
>
> So it is fact-specific, you can make an as-applied challenge. But at this point, based on what's been presented, the redactions will stand other than as to the disability rating.

*Id.* at 118:11–119:14 (emphasis added).

This ruling is not memorialized in the July 17 Order. Defendants respectfully request that the Court clarify the July 17 Order to make clear that Defendants can seek discovery of evidence of substance abuse, on a plaintiff-by-plaintiff basis, if discovery or deposition testimony shows its relevance.

## II.   THE COURT SHOULD RECONSIDER THE JULY 17 ORDER BECAUSE OF THE AVAILABILITY OF NEW EVIDENCE.

The Court should reconsider the July 17 Order because Plaintiff Rowe's counsel's position about the nature of his lost earning capacity claim has changed. Since that hearing, Plaintiff Rowe has served interrogatory responses stating that he intends to call a vocational expert in support of his lost earning capacity claim, that served initial disclosures stating that he seeks between $750,000 and $1,000,000 in damages for lost earning capacity, and testified that his lost earning capacity claim is not limited to a particular job or career that he could not pursue because of his alleged hearing injuries. Given the true nature of Plaintiff Rowe's lost earning capacity claim, evidence of Plaintiff Rowe's history of substance abuse is relevant and Defendants are entitled to discover information about Plaintiff Rowe's substance abuse so their experts can form fully informed opinions about the causes of any lost earning capacity.

During the July 16 hearing, Judge Jones asked Plaintiffs whether they were "intending to present a vocational expert or some other testimony" "[o]n the issue of

claimed damages for diminished earning capacity[.]" *Id.* at 112:5–8. Plaintiff Rowe's counsel agreed with Plaintiffs' leadership counsel (who later that day also appeared on behalf of Plaintiff Rowe) that there was no "present intent to have a vocational expert at all[.]"[2] *Id.* at 112:15–19. Plaintiffs further stated that they are "not claiming anything other than if [Plaintiff Rowe] wanted to really go find a job where he needed some hearing -- good hearing or damages related to here, he wouldn't be able to do it." *Id.* at 114:11–14. Plaintiffs' counsel's position has since changed.

On July 22, six days after the July 16 hearing, Plaintiff Rowe served initial disclosures stating that he seeks between $750,000 and $1,000,000 in damages for lost earning capacity. Ex. 3 at 19. Plaintiff Rowe also served supplemental interrogatory responses stating that "the amount of [his] lost earnings attributable to [his] injury will be the subject of forthcoming expert proofs[.]"[3] Ex. 1 at 50. Plaintiff Rowe further stated that his "earning capacity is diminished not only by [his] present

---

[2] This marked a shift from Plaintiff Rowe's then-current interrogatory responses, which stated that he would call an expert in support of his claim for lost earning capacity.

[3] Particularly in light of his testimony, an expert is necessary for Plaintiff Rowe to prove his entitlement to, and amount of, damages for lost earning capacity. *See* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

hearing loss and tinnitus, but also in that [he] has been placed in a position of heightened vulnerability to accelerated hearing loss in the future, and consequent further diminishment of earning capacity[,]" such that "[t]he amount of [his] lost earnings attributable to [his] injury will be the subject of forthcoming expert proofs[.]" *Id.* at 51. Plaintiff Rowe confirmed at his July 23 deposition that he intends to call an expert in support of his lost earning capacity claim. Ex. 2 at 296:2–297:13.

Also at his July 23 deposition, Plaintiff Rowe testified that he does not "recall applying for a job and them telling [him] [he] couldn't have it because of hearing." *Id.* at 240:12–16. Plaintiff Rowe further testified that he is not aware of any particular careers that he would have pursued but for his hearing issues. *See Id.* at 240:17–20 ("Q. And you're not aware of any particular careers that you would have pursued but you decided not to pursue because of hearing issues, correct? A. I'm not aware of any, no, not aware of any.").[4]

---

[4] Plaintiff Rowe testified that two relatives who are police officers—his brother-in-law and his cousin's husband—told him that his hearing would be an issue if he applied for a job as a police officer. *See* Ex. 2 at 283:10–16. But Plaintiff Rowe conceded that his brother in law and his cousin's husband, neither of whom are doctors or audiologists, were "not qualified to determine whether [his] hearing issues would prevent [him] from getting a job as a police officer." *Id.* at 283:22–284:3. And Plaintiff Rowe admitted that he never applied for a job as a police officer or an armed guard. *See id.* at 283:3–9 ("Q. You did not apply for a position as a police officer, correct? A. No, I never did. Q. And you did not apply for a position as an armed guard, correct? A. I can't remember if I did or not. I don't think I did."). Nor did Plaintiff Rowe *forego* pursuit of a police job (or any other job) because hearing issues. *Id.* at 240:17–20 ("Q. And you're *not aware of any particular careers*

Especially because Plaintiff Rowe intends to call a vocational expert in support of his lost earning capacity claim, Defendants should be permitted to discover information about Plaintiff Rowe's substance abuse and other pre-existing professional impediments.[5] *See Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1475–76 (11th Cir. 1984). As Defendants argued at the July 16 hearing, Defendants' vocational expert will need these facts to arrive at a fully informed opinion. July 16

---

that you would have pursued but you *decided not to pursue because of hearing issues*, correct? A. I'm not aware of any, no, not aware of any." (emphasis added)).

[5] Defendants raised this argument in connection with the amendment of Pretrial Order No. 25 (which resulted in Pretrial Order No. 39) at the Twelfth Case Management Conference. May 29 Hr'g Tr. at 19:10–19 (Mr. Brock: "[S]ubstance abuse records . . . are highly relevant in the damages analysis. . . . There are lots of folks who . . . unfortunately have struggled along the way with substance abuse issues. It might be that for a particular plaintiff that that substance abuse issue is not causal. But it would be very important to the analysis of a claim for future lost wages, loss of earning capacity. We would have occupational experts who would want to understand what is the person's life history so that [they] can understand the person so [they] can formulate the opinion about the person's employability."). Judge Jones' Orders prior to Pretrial Order No. 39 "pertain[ed] to privilege and waiver, not relevancy." Dkt. 1108 at 13. And as the Court noted in the July 17 Order, the only issue now raised by Plaintiffs is relevance, not privilege or waiver. Dkt. 1258 at 10 ("In short, Plaintiffs say these records are not discoverable because they are not relevant."). Moreover, for evidence of substance abuse contained in VBA disability records, the Court has ruled that "[a]ny privilege as to these records has been waived." *Id.* at 12. And because privilege is not an issue as to VBA records, only "relevance"—and not the "at issue" doctrine or "garden variety" analysis—comes into play. *See Ortiz-Carballo v. Ellspermann*, 2009 WL 961131, at *3 (M.D. Fla. 2009) (Jones, J.) ("[B]ecause there is no privilege that applies to Dr. Warman's records, the Court need not determine whether Plaintiff has placed his mental and physical condition at issue. Instead, the Court need only determine whether Dr. Warman's records are relevant to the claims in this case.").

Hr'g Tr. at 110:20–112:1. Because Plaintiff Rowe has shifted his position from the July 16 hearing, and now intends to call a vocational expert in support of his lost earning capacity claim, Defendants submit further evidence about the information their expert will need in this case. *See Toole*, 235 F.3d at 1315 (A Court "has plenary power over [an interlocutory order] and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59.").

As a leading treatise on the topic explains, "life circumstances that can affect [a person's] ability to pursue work-related activities" "affect individuals uniquely and should be evaluated in each earning capacity assessment." Michael Shahnasarian, Ph.D., *Assessment of Earning Capacity* 120 (4th ed. 2015). This includes "[p]reexisting vocational handicaps." *Id.* at 124. "A person with a disability who acquires additional disabling problems can experience compounding effects from vocational handicaps caused by the interaction of new and old disabilities and associated problems." *Id.* "A thorough understanding of a subject's preincident medical and psychological history, level of functioning, and presence of vocational handicaps is essential to evaluate how new disabilities affect present and future earning capacity." *Id.* As part of that analysis, vocational experts must "[e]stablish[] a benchmark of an individual's premorbid earning capacity . . . to analyz[e] potential comparative postincident earning capacity changes." *Id.* at 142. The information necessary to establish this benchmark includes: "[m]edical issues related to career

development"; "[p]sychological issues related to career development"; "[e]ducation (including prior scholastic performance), training, credentialing, and specialty skills"; and "[w]ork history, experience, and earnings record[.]" *Id.* at 6.

As set out in Dr. Michael Shahnasarian's attached affidavit, a vocational expert evaluating the extent to which hearing injuries are a cause of lost earning capacity would consider evidence of substance abuse—both past and present. *See* Ex. 4. Before examining a plaintiff, Dr. Shahnasarian "review[s] available records that address claimed damages . . . , includ[ing]: medical records (both before and after the onset of an alleged condition), academic records, employment records, earnings records, testimony, and other damages-related documents." *Id.* at 2. That is because "[i]t is imperative to divest pre-existing and/or unrelated factors (including medical conditions) from issues in dispute when evaluating vocationally-relevant data and performing a claim of loss of earning capacity assessment." *Id.* "As an example, a history of substance abuse unrelated to issues in dispute can have profound implications on a plaintiff's vocational capacities"—"problems with work attendance, job performance, and job stability; limitations on work participation (e.g., during periods of symptom exacerbation, relapse, and treatment); and accessibility to work opportunities (e.g., potential need to submit to drug testing, work contraindications associated with potential exertional and non-exertional substance use problems, employer bias)." *Id.* at 2.

This remains true even when a plaintiff's substance abuse or other medical conditions are "unrelated to [the] dispute" because they can still "affect one's earning capacity in a myriad of ways." *Id.* at 3. "[M]any medical conditions, which may pre-date and/or be unrelated to an issue in dispute, can manifest in ways that include periods of symptom exacerbation, progression and worsening over time, and patterns of relapse and remission—all of which can affect a plaintiff's vocational capacities." *Id.* Therefore, even though Plaintiffs only allege lost earning capacity from hearing loss, Defendants' experts need information about other factors— including substance abuse—that affect earning capacity. *Id.* ("For example, if an aspiring dancer sought damages for lost dancing-related earning capacity after her foot was injured due to alleged defective shoes, a vocational evaluator would still acquire about a history of substance abuse when assessing her baseline vocational functioning."). Evidence of substance abuse is therefore relevant to Plaintiffs' claims for lost earning capacity and Defendants' defense thereto.

## III.   PLAINTIFF ROWE IS JUDICIALLY ESTOPPED FROM CALLING A VOCATIONAL EXPERT.

Plaintiff Rowe should also be estopped from calling a vocational expert in support of his lost earning capacity claim. "The doctrine of judicial estoppel applies when 'a party assumes a certain position in a legal proceeding, and then succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party

who has acquiesced in the position formerly taken by him.'" *In re Brizo, LLC*, 437 F. Supp. 3d 1212, 1220 (S.D. Fla. 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "The purpose of judicial estoppel is to prevent a party from using an argument in one phase of a case and then relying upon a contradictory argument to prevail in another phase." *Id.* (citing *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Plaintiff Rowe's counsel represented that he did not intend to call a vocational expert in a successful bid to shield information about substance abuse from discovery.

But now, in order to recover $750,000 to $1,000,000 in damages for lost earning capacity, Plaintiff Rowe intends to call a vocational expert. If Plaintiff Rowe is permitted to shift his position with respect to his lost earning capacity claim, Defendants will be prejudiced by the exposure to a large potential damages award without adequate discovery about potential alternative causes of any lost earning capacity. Therefore, the Court should prohibit Plaintiff Rowe from calling a vocational expert at trial.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court clarify its July 17 Order or, in the alternative, reconsider the Order. Defendants also respectfully request that the Court prohibit Plaintiff Rowe from calling a vocational expert at trial.

Dated:  July 31, 2020                    Respectfully submitted,


                                         */s/ Robert C. Brock*
                                         Robert C. "Mike" Brock
                                         KIRKLAND & ELLIS LLP
                                         1301 Pennsylvania Avenue, N.W.
                                         Washington, DC 20004
                                         Telephone: (202) 389-5991
                                         mike.brock@kirkland.com

                                         Kimberly Branscome
                                         DECHERT LLP
                                         633 W. 5th St., Suite 4900
                                         Los Angeles, CA 90071
                                         Telephone: (213) 808-5762
                                         kimberly.branscome@dechert.com

                                         *Counsel for Defendants 3M Company,*
                                         *3M Occupational Safety LLC, Aearo*
                                         *Technologies LLC, Aearo Holding,*
                                         *LLC, Aearo Intermediate, LLC and*
                                         *Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that, on July 31, 2020, counsel for Defendants spoke with Plaintiffs' counsel about their intention to move for clarification or, in the alternative, reconsideration of the July 17 Order. Plaintiffs' counsel stated that they do not agree with Defendants' position regarding the July 17 Order.

Dated:  July 31, 2020                    Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this motion contains 4,144 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.


Dated:  July 31, 2020                                Respectfully submitted,


                                                     */s/ Robert C. Brock*
                                                     Robert C. "Mike" Brock
                                                     KIRKLAND & ELLIS LLP
                                                     1301 Pennsylvania Avenue, N.W.
                                                     Washington, DC 20004
                                                     Telephone: (202) 389-5991
                                                     mike.brock@kirkland.com

                                                     *Counsel for Defendants 3M Company,*
                                                     *3M Occupational Safety LLC, Aearo*
                                                     *Technologies LLC, Aearo Holding,*
                                                     *LLC, Aearo Intermediate, LLC and*
                                                     *Aearo, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 31, 2020, a true and correct copy of the foregoing document entitled Motion for Clarification or, in the Alternative, Reconsideration of the Court's July 17 Order was submitted via email to the Honorable Magistrate Judge Gary R. Jones (flnd_jones@flnd.uscourts.gov) and his law clerk Brandon Breslow (brandon_breslow@flnd.uscourts.gov). A copy of the foregoing was also sent via e-mail to counsel of record for Plaintiffs' Leadership and counsel for alternate Bellwether Plaintiff Vernon C. Rowe at the following addresses:

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Douglass A. Kreis<br>Aylstock, Witkin, Kreis & Overholtz,<br>PLLC<br>17 East Main Street, Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>Email: baylstock@awkolaw.com<br>Email: dkreis@awkolaw.com | Shelley V. Hutson, Co-Lead Counsel<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>Email: shutson@triallawfirm.com |
| Christopher A. Seeger, Co-Lead<br>Counsel Seeger Weiss LLP<br>77 Water Street, 8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>Email: cseeger@seegerweiss.com | Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com |

| | |
|---|---|
| Evan D. Buxner<br>The Gori Law Firm, P.C.<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorilaw.com | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk<br>Levin, Papantonio, Thomas, Mitchell,<br>Rafferty, & Proctor, P.A.<br>316 S Baylen St., Ste 600<br>Pensacola, FL 32502<br>Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com |
| Roberto Martinez<br>Francisco R. Maderal<br>Colson Hicks Edison<br>255 Alhambra Cir, Penthouse<br>Coral Gables, FL 33134<br>Tel.: (305) 476-7400<br>Email: bob@colson.com<br>Email: frank@colson.com<br><br>*Counsel for Alternate Bellwether<br>Plaintiff Vernon C. Rowe (65984),*<br>N.D. Fla., 7:20-cv-00026-MCR-GRJ | |

Dated:  July 31, 2020

*/s/ Robert C. Brock*

Robert C. "Mike" Brock