## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-2885-MCR-GRJ |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | |
| This Document Relates to: | ) | Magistrate Judge Gary R. Jones |
| All Cases | ) | |

### Objection to the July 17 Order (Dkt. 1258)

Pursuant to Federal Rule of Civil Procedure 72(a), Defendants object to Magistrate Judge Jones' July 17 Order relating to redactions from Plaintiffs' disability and medical records. *See* Dkt. 1258. Simultaneously with this objection, Defendants have filed with Magistrate Judge Jones a Motion for Clarification or, in the Alternative, Reconsideration of the Court's July 17 Order. If Defendants' Motion for Clarification or Reconsideration is granted, this Rule 72 Objection may be moot.

### BACKGROUND

Defendants' objection should be sustained because Plaintiff Vernon Rowe has abruptly changed his position about calling a vocational expert and about the scope of his lost earning capacity claim and because, particularly in light of that change, Eleventh Circuit law requires a different result. During the July 16 hearing on Defendants' Motion to Compel Production of Unredacted Records, two Plaintiffs'

attorneys stated that Plaintiff Vernon Rowe had no "present intent to have a vocational expert at all":

> THE COURT: . . . On the issue of claimed damages for diminished earning capacity, were the Plaintiffs intending to present a vocational expert or some other testimony on that?
>
> . . . .
>
> [Plaintiffs' counsel #1]: I don't think there's any present intent to have a vocational expert at all, Judge. Am I right on that, Marcus?
>
> [Plaintiffs' counsel #2]: That's correct, Judge.

July 16 Hr'g Tr. at 112:2–19.

But less than a week after counsel indicated that Plaintiff Rowe had no "present intent to have a vocational expert at all," Plaintiff Rowe provided the following supplemental answers to Defendants' interrogatories, which stated that "[t]he amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs":

> **[Interrogatory No. 55:]** Subject to and without waiving Plaintiff's foregoing objections, to the extent that Plaintiff has missed work and income attendant thereto as a result of the injuries Plaintiff suffers from his use of the CAEv2, *the amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs*, and Plaintiff objects to this interrogatory as premature to the extent it would require expert discovery at this stage.
>
> . . . .
>
> **[Interrogatory No. 56:]** Plaintiff's earning capacity is diminished not only by Plaintiff's present hearing loss and tinnitus, but also in that Plaintiff has been placed in a position of heightened vulnerability to accelerated hearing loss in the future, and consequent further

diminishment of earning capacity. Plaintiff refers Defendants to his response to Interrogatory No. 55. *The amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs*, and Plaintiff objects to this interrogatory as premature to the extent it would require expert discovery at this stage.

Ex. 1 at 49–51 (Plaintiff's 7/22/20 Supplemental Objections and Answers to 3M

First Set of Interrogatories) (emphasis added).



Also on July 22, Plaintiff Rowe served initial disclosures stating that he seeks "[a]pproximately $750,000 to approximately $1,000,000" in "Future Loss from Diminished Earning Capacity." *See* Ex. 3 at 19 (V. Rowe Initial Disclosures) (emphasis omitted).

These developments, all of which have occurred since the Court issued its July 17 Order on Defendants Motion to Compel, warrant setting aside or modifying the July 17 Order. *See* Dkt. 1258. The Plaintiffs' claims for lost earning capacity were a focus of the July 16 hearing on Defendants' Motion to Compel. During the hearing, Defendants argued that various types of information—including information about substance abuse, disability applications, and mental health conditions—are relevant to the Plaintiffs' claims for lost earning capacity because they all affect the Plaintiffs' ability to work and advance in their careers. *See, e.g.*, July 16 Hr'g Tr. at 71:6–72:12; 82:23–84:12. Defendants emphasized that their experts will need a full picture of each plaintiff's vocational strengths and weaknesses to formulate well-informed opinions about whether a plaintiff has suffered a reduction in earning capacity. *See id.* at 82:23–84:12.

Plaintiffs argued that "these are personal injury cases at their core, and they're hearing loss and tinnitus cases. That's what they are." *Id.* at 74:16–18. Plaintiffs further argued that their lost earning capacity claims are narrow. They explained that Plaintiffs are "not claiming anything other than if [a plaintiff] wanted to really go

find a job where he needed some hearing -- good hearing or damages related to here, he wouldn't be able to do it." *Id.* at 114:11–14. As a result, Plaintiffs maintained that "the facts [in *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467 (11th Cir. 1984)] are completely different, and . . . [have] nothing to do with the case at hand." July 16 Hr'g Tr. at 114:9–11. Plaintiffs' counsel also stated that they had no "present intent to have a vocational expert at all," *id.* at 112:15–17, and had not yet disclosed Plaintiff Rowe's current claim for "approximately $750,000 to approximately $1,000,000" for future loss of diminished earning capacity, Ex. 3 at 19 (emphasis omitted).

In its July 17 Order, the Court found that some information contained in Plaintiffs' disability records is relevant to the Plaintiffs' lost earning capacity claims. Dkt. 1258 at 11–13. But the Court also found, without applying *Haney*, that "records pertaining to substance abuse—which are covered under Pretrial Order No. 39 and are a species of mental health records—are not relevant at the discovery stage because, as a general matter, the plaintiffs' lost earning capacity claims are limited to damages of hearing loss caused by their use of the CAEv2." *Id.* 11. Defendants now object to the July 17 Order pursuant to Rule 72(a).

## LEGAL STANDARD

"A party may serve and file objections to [a magistrate judge's non-dispositive pretrial] order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a).

"The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "A 'factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Pons*, No. 19-23236-MC-LENARD, 2020 WL 1860908, at \*4 (S.D. Fla. Apr. 13, 2020) (quoting *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir. 1985)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *In re O'Keeffe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla. 2016)).

## DISCUSSION

The Court should modify or set aside the July 17 Order because the Order fails to apply relevant case law and rests on a clearly erroneous factual finding about Plaintiff Rowe's loss of earning capacity claim.

**I.    PARTICULARLY IN LIGHT OF PLAINTIFF'S CHANGED POSITION ON HIS LOST EARNINGS CAPACITY CLAIM, THE JULY 17 ORDER SHOULD BE AMENDED TO REFLECT THE ELEVENTH CIRCUIT'S DECISION IN *HANEY V. MIZELL MEMORIAL HOSPITAL*.**

Judge Jones ruled that "records pertaining to substance abuse—which are covered under Pretrial Order No. 39 and are a species of mental health records—are not relevant at the discovery stage because, as a general matter, the plaintiffs' lost earning capacity claims are limited to damages of hearing loss caused by their use

of the CAEv2." Dkt. 1258 at 11. Particularly in light of Plaintiff's changed position on experts and the nature of his lost earning capacity claim, the July 17 Order should be amended to reflect the Eleventh Circuit's decision in *Haney*, 744 F.2d 1467. In *Haney*, the Eleventh Circuit held that evidence of the plaintiff's "history of alcohol and drug use" was relevant to his claim "for damages to cover future mental anguish, rehabilitation care, and loss of earnings." *Id.* at 1475. As an expert in the case explained, the plaintiff's "ability to face his alcohol and drug problem would play a crucial role in his ability to adjust emotionally to his infirmity and become more fully rehabilitated." *Id.* The expert further testified that the plaintiff's "vocational outlook would be much brighter if he did not indulge in alcohol and drugs." *Id.* The Court also affirmed the district court's finding that evidence of the plaintiff's history of alcohol and drug use was relevant "to rebut testimony offered by [the plaintiff] pertaining to his lifestyle and quality of life before" he was injured. *Id.*

In *Haney*, evidence of the plaintiff's "history of alcohol and drug use" was relevant even though the Plaintiff only sought damages caused by the allegedly negligent medical care that rendered him a permanent quadriplegic. *Id.* at 1470–71, 1475–76. Despite the plaintiff's allegation that he was due damages for "mental anguish, rehabilitation care, and loss of earnings" because he was a permanent quadriplegic, the district court found (and the Eleventh Circuit affirmed) that evidence of substance abuse was relevant because substance abuse could affect the

plaintiff's future emotional health, extent of rehabilitation, and ability to earn income. *Id.* at 1475. That is the same situation here. It may be true that "plaintiffs' lost earning capacity claims are limited to damages of hearing loss caused by their use of the CAEv2," Dkt. 1258 at 11, but that does not foreclose Defendants from discovering information about substance abuse to prove alternative causation or show that a plaintiff had reduced earning capacity prior to suffering any hearing loss.

During the June 16 hearing, Plaintiffs discounted the precedential value of *Haney* because the opinion was issued in 1984. July 16 Hr'g Tr. at 114:16–20. But district courts in the Eleventh Circuit continue to recognize that *Haney* is binding precedent. *See Martinez v. Rycars Const., LLC*, No. CV410-049, 2010 WL 4117668, at *1 (S.D. Ga. Oct. 18, 2010) (citing *Haney* and finding that a claim of "damages for lost future employment income, along with pain and suffering[,]" "expose[d] [a plaintiff] to discovery inquires about past, present, and possible future drug abuse, . . . includ[ing] when he ingested such drugs, to whom he admitted doing so if he denies usage, and whether he is willing to break the law to accommodate his consumption (a factor future employers undoubtedly would find significant)"); *Chaney v. City of Orlando*, Fla., No. 6:04-CV-515-ORL-22-KRS, 2006 WL 8439517, at *5 (M.D. Fla. Feb. 17, 2006) (citing *Haney* for the proposition that evidence of a plaintiff's history of drug use was relevant to the issue of damages; "During Plaintiff's hospital visit with Dr. Ismat Irfan in 2004, Plaintiff stated that he

had smoked marijuana and cocaine. Such evidence is relevant to the issue of damages."); *see also Butler v. French*, 83 F.3d 942, 945 (8th Cir. 1996) (citing *Haney* for the proposition that "admission of evidence on plaintiff's past history of alcohol problems [is] relevant to [the] issue of future loss of earnings").

The test for whether evidence of substance abuse is relevant is not whether Plaintiffs have alleged that their lost earning capacity is due to substance abuse. Such a narrow focus, especially during discovery, is not supported in the law and would improperly prevent Defendants from discovering evidence relevant to the Parties' claims and defenses. *See* Fed. R. Civ. P. 26(b)(1); *see also Santana v. Carnival Corp.*, No. 09-23113-CV-GOLD, 2011 WL 13220283, at *6 (S.D. Fla. Sept. 7, 2011) ("[A]ny preexisting injuries that Plaintiff had before her accident from this case are certainly relevant in terms of the Parties' arguments concerning damages and preexisting conditions."). Thus, in light of the Eleventh Circuit's decision in *Haney* and its progeny, as well as Plaintiff's changed position on the nature of his lost earnings claim, Plaintiff Rowe's ███████████████ is relevant to his lost earning capacity claim.[1]

---

[1] Should the Court wish to review documents relating to Plaintiff Rowe's ████████ ████████—some of which have produced by Plaintiff Rowe in unredacted form as part of his medical records, even though Plaintiff Rowe redacted thousands of other documents—Defendants will submit such documents in camera. Plaintiffs and Defendants previously submitted various documents to Magistrate Judge Jones for in camera review in connection with Defendants' Motion to Compel.

## II.   THE JULY 17 ORDER RESTS ON CLEARLY ERRONEOUS FACTUAL FINDINGS THAT PLAINTIFF ROWE DOES NOT INTEND TO RELY ON A VOCATIONAL EXPERT AND ONLY INTENDS TO OFFER EVIDENCE OF JOBS HE CANNOT OBTAIN BECAUSE OF HEARING LOSS.

The Court should modify or set aside the July 17 Order because Plaintiff Rowe's counsel's position about the nature of his lost earning capacity claim has changed. Since the July 16 hearing, Plaintiff Rowe has served interrogatory responses stating that he intends to call a vocational expert in support of his lost earning capacity claim, served initial disclosures stating that he seeks between $750,000 and $1,000,000 in damages for lost earning capacity, and testified that his lost earning capacity claim is not limited to a particular job or career that he could not pursue because of his alleged hearing injuries. Given the true nature of Plaintiff Rowe's lost earning capacity claim, evidence of Plaintiff Rowe's ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ is relevant and Defendants are entitled to discover information about Plaintiff Rowe's ▇▇▇▇▇▇▇ so their experts can form fully informed opinions about the causes of any lost earning capacity.

During the July 16 hearing, Judge Jones asked Plaintiffs whether they were "intending to present a vocational expert or some other testimony" "[o]n the issue of claimed damages for diminished earning capacity[.]" July 16 Hr'g Tr. at 112:5–8. Plaintiff Rowe's counsel agreed with Plaintiffs' leadership counsel (who later that day also appeared on behalf of Mr. Rowe) that there was no "present intent to have

a vocational expert at all[.]"[2] *Id.* at 112:15–19. Plaintiffs further stated that they are "not claiming anything other than if [Plaintiff Rowe] wanted to really go find a job where he needed some hearing -- good hearing or damages related to here, he wouldn't be able to do it." *Id.* at 114:11–14. Plaintiffs' counsel's position has since changed.

On July 22, six days after the July 16 hearing, Plaintiff Rowe served initial disclosures stating that he seeks between $750,000 and $1,000,000 in damages for lost earning capacity. Ex. 3 at 19. Plaintiff Rowe also served supplemental interrogatory responses stating that "the amount of [his] lost earnings attributable to [his] injury will be the subject of forthcoming expert proofs[.]"[3] Ex. 1 at 50. Plaintiff Rowe further stated that his "earning capacity is diminished not only by [his] present hearing loss and tinnitus, but also in that [he] has been placed in a position of heightened vulnerability to accelerated hearing loss in the future, and consequent further diminishment of earning capacity[,]" such that "[t]he amount of [his] lost

---

[2] This marked a shift from Plaintiff Rowe's then-current interrogatory responses, which stated that he would call an expert in support of his claim for lost earning capacity.

[3] Particularly in light of his testimony, an expert is necessary for Plaintiff Rowe to prove his entitlement to, and amount of, damages for lost earning capacity. *See* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

earnings attributable to [his] injury will be the subject of forthcoming expert proofs[.]" *Id.* at 51.



Especially because Plaintiff Rowe now intends to call a vocational expert in support of his lost earning capacity claim, Defendants should be permitted to



discover information about Plaintiff Rowe's ██████████ and other pre-existing professional impediments.[5] *See Haney*, 744 F.2d at 1475–76. As Defendants argued at the July 16 hearing, Defendants' vocational expert will need these facts to arrive at a fully informed opinion. July 16 Hr'g Tr. at 110:20–112:1. Because Plaintiff Rowe has shifted his position from the July 16 hearing, and now intends to call a vocational expert in support of his lost earning capacity claim, Defendants submit further evidence about the information their expert will need in this case.

---

[5] Defendants raised this argument in connection with the amendment of Pretrial Order No. 25 (which resulted in Pretrial Order No. 39) at the Twelfth Case Management Conference. May 29 Hr'g Tr. at 19:10–19 (Mr. Brock: "[S]ubstance abuse records . . . are highly relevant in the damages analysis. . . . There are lots of folks who . . . unfortunately have struggled along the way with substance abuse issues. It might be that for a particular plaintiff that that substance abuse issue is not causal. But it would be very important to the analysis of a claim for future lost wages, loss of earning capacity. We would have occupational experts who would want to understand what is the person's life history so that [they] can understand the person so [they] can formulate the opinion about the person's employability."). Judge Jones' Orders prior to Pretrial Order No. 39 "pertain[ed] to privilege and waiver, not relevancy." Dkt. 1108 at 13. And as the Court noted in the July 17 Order, the only issue now raised by Plaintiffs is relevance, not privilege or waiver. Dkt. 1258 at 10 ("In short, Plaintiffs say these records are not discoverable because they are not relevant."). Moreover, for evidence of substance abuse contained in VBA disability records, the Court has ruled that "[a]ny privilege as to these records has been waived." *Id*. at 12. And because privilege is not an issue as to VBA records, only "relevance"—and not the "at issue" doctrine or "garden variety" analysis—comes into play. *See Ortiz-Carballo v. Ellspermann*, 2009 WL 961131, at *3 (M.D. Fla. 2009) (Jones, J.) ("[B]ecause there is no privilege that applies to Dr. Warman's records, the Court need not determine whether Plaintiff has placed his mental and physical condition at issue. Instead, the Court need only determine whether Dr. Warman's records are relevant to the claims in this case.").

As a leading treatise on the topic explains, "life circumstances that can affect [a person's] ability to pursue work-related activities" "affect individuals uniquely and should be evaluated in each earning capacity assessment." Michael Shahnasarian, Ph.D., *Assessment of Earning Capacity* 120 (4th ed. 2015). This includes "[p]reexisting vocational handicaps." *Id.* at 124. "A person with a disability who acquires additional disabling problems can experience compounding effects from vocational handicaps caused by the interaction of new and old disabilities and associated problems." *Id.* "A thorough understanding of a subject's preincident medical and psychological history, level of functioning, and presence of vocational handicaps is essential to evaluate how new disabilities affect present and future earning capacity." *Id.* As part of that analysis, vocational experts must "[e]stablish[] a benchmark of an individual's premorbid earning capacity . . . to analyz[e] potential comparative postincident earning capacity changes." *Id.* at 142. The information necessary to establish this benchmark includes: "[m]edical issues related to career development"; "[p]sychological issues related to career development"; "[e]ducation (including prior scholastic performance), training, credentialing, and specialty skills"; and "[w]ork history, experience, and earnings record[.]" *Id.* at 6.

As set out in Dr. Michael Shahnasarian's attached affidavit, a vocational expert evaluating the extent to which hearing injuries are a cause of lost earning capacity would consider evidence of substance abuse—both past and present.

*See* Ex. 4. Before examining a plaintiff, Dr. Shahnasarian "review[s] available records that address claimed damages . . . , includ[ing]: medical records (both before and after the onset of an alleged condition), academic records, employment records, earnings records, testimony, and other damages-related documents." *Id.* at 2. That is because "[i]t is imperative to divest pre-existing and/or unrelated factors (including medical conditions) from issues in dispute when evaluating vocationally-relevant data and performing a claim of loss of earning capacity assessment." *Id.* "As an example, a history of substance abuse unrelated to issues in dispute can have profound implications on a plaintiff's vocational capacities"—"problems with work attendance, job performance, and job stability; limitations on work participation (e.g., during periods of symptom exacerbation, relapse, and treatment); and accessibility to work opportunities (e.g., potential need to submit to drug testing, work contraindications associated with potential exertional and non-exertional substance use problems, employer bias)." *Id.* at 2.

This remains true even when a plaintiff's substance abuse or other medical conditions are "unrelated to [the] dispute" because they can still "affect one's earning capacity in a myriad of ways." *Id.* at 3. "[M]any medical conditions, which may pre-date and/or be unrelated to an issue in dispute, can manifest in ways that include periods of symptom exacerbation, progression and worsening over time, and patterns of relapse and remission—all of which can affect a plaintiff's vocational

capacities." *Id.* Therefore, even though Plaintiffs only allege lost earning capacity from hearing loss, Defendants' experts need information about other factors—including substance abuse—that affect earning capacity. *Id.* ("For example, if an aspiring dancer sought damages for lost dancing-related earning capacity after her foot was injured due to alleged defective shoes, a vocational evaluator would still acquire about a history of substance abuse when assessing her baseline vocational functioning."). Evidence of substance abuse is therefore relevant to Plaintiffs' claims for lost earning capacity and Defendants' defense thereto.

## III. PLAINTIFF ROWE IS JUDICIALLY ESTOPPED FROM CALLING A VOCATIONAL EXPERT.

Plaintiff Rowe should also be estopped from calling a vocational expert in support of his lost earning capacity claim. "The doctrine of judicial estoppel applies when 'a party assumes a certain position in a legal proceeding, and then succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *In re Brizo, LLC*, 437 F. Supp. 3d 1212, 1220 (S.D. Fla. 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "The purpose of judicial estoppel is to prevent a party from using an argument in one phase of a case and then relying upon a contradictory argument to prevail in another phase." *Id.* (citing *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Plaintiff Rowe's counsel represented that he did not intend to call a

vocational expert in a successful bid to shield information about substance abuse from discovery.

But now, in order to recover $750,000 to $1,000,000 in damages for lost earning capacity, Plaintiff Rowe intends to call a vocational expert. If Plaintiff Rowe is permitted to shift his position with respect to his lost earning capacity claim, Defendants will be prejudiced by the exposure to a large potential damages award without adequate discovery about potential alternative causes of any lost earning capacity. Therefore, the Court should prohibit Plaintiff Rowe from calling a vocational expert at trial.

## <u>CONCLUSION</u>

For the reasons discussed above, Defendants respectfully request that the Court modify or set aside those portions of the July 17 Order that are contrary to law or clearly erroneous. Defendants also respectfully request that the Court prohibit Plaintiff Rowe from calling a vocational expert at trial.

Dated:  July 31, 2020                                   Respectfully submitted,

_/s/ Robert C. Brock_____
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that on July 31, 2020, counsel for Defendants spoke with Plaintiffs' counsel about their intention to object to the July 17 Order. Plaintiffs' counsel stated that they do not agree with Defendants' position regarding the July 17 Order.

Dated: July 31, 2020                                Respectfully submitted,

                                                    */s/ Robert C. Brock*
                                                    Robert C. "Mike" Brock
                                                    KIRKLAND & ELLIS LLP
                                                    1301 Pennsylvania Avenue, N.W.
                                                    Washington, DC 20004
                                                    Telephone: (202) 389-5991
                                                    mike.brock@kirkland.com

                                                    *Counsel for Defendants 3M Company,*
                                                    *3M Occupational Safety LLC, Aearo*
                                                    *Technologies LLC, Aearo Holding,*
                                                    *LLC, Aearo Intermediate, LLC and*
                                                    *Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this objection contains 4,351 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  July 31, 2020                                  Respectfully submitted,

*/s/ Robert C. Brock*

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 31, 2020, a true and correct

copy of the foregoing document entitled Objection to the July 17th Order (Dkt.

1258) was submitted via email to the Honorable Casey Rodgers

(flnd_rodgers@flnd.uscourts.gov) and her law clerk Tevenia Jacobs

(Tevenia_Jacobs@flnd.uscourts.gov).  A copy of the foregoing was also sent via e-

mail to counsel of record for Plaintiffs' Leadership and counsel for alternate

Bellwether Plaintiff Vernon C. Rowe at the following addresses:

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Douglass A. Kreis<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street, Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>Email: baylstock@awkolaw.com<br>Email: dkreis@awkolaw.com | Shelley V. Hutson, Co-Lead Counsel<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>Email: shutson@triallawfirm.com |
| Christopher A. Seeger, Co-Lead<br>Counsel Seeger Weiss LLP<br>77 Water Street, 8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>Email: cseeger@seegerweiss.com | Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com |
| Evan D. Buxner<br>The Gori Law Firm, P.C.<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorilaw.com | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 S Baylen St., Ste 600<br>Pensacola, FL 32502 |

| | Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com |
|---|---|
| Roberto Martinez<br>Francisco R. Maderal<br>Colson Hicks Edison<br>255 Alhambra Cir, Penthouse<br>Coral Gables, FL 33134<br>Tel.: (305) 476-7400<br>Email: bob@colson.com<br>Email: frank@colson.com<br><br>*Counsel for Alternate Bellwether*<br>*Plaintiff Vernon C. Rowe (65984),*<br>N.D. Fla., 7:20-cv-00026-MCR-GRJ | |

Dated:  July 31, 2020                              */s/ Robert C. Brock*

                                                                  Robert C. "Mike" Brock

22