## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-2885 |
| | ) | Judge M. Casey Rodgers |
| This Document Relates to All Cases | ) | Magistrate Judge Gary R. Jones |

## DEFENDANTS' MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION OF THE COURT'S ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON THE GOVERNMENT CONTRACTOR DEFENSE

Defendants respectfully move the Court to certify that its July 24, 2020 Memorandum Order resolving the parties' cross-motions for summary judgment on the government contractor defense is suitable for interlocutory appeal under 28 U.S.C. § 1292(b). Certification is appropriate because the Court's opinion involves "controlling question[s] of law as to which there [are] substantial ground[s] for difference of opinion" and an immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). By issuing the certification, the Court will permit Defendants to petition the Eleventh Circuit for interlocutory review. The court of appeals will then determine, in its discretion, whether to hear the appeal. *See id.*

Interlocutory review need not slow down the bellwether process. Instead, it will enhance the bellwether trials' reliability by permitting the Eleventh Circuit to

give a definitive ruling on the government contractor defense before most (or all) of those trials take place, eliminating any risk that this Court will have to retry a whole series of bellwether cases because Defendants were not allowed to assert the defense.

## I.     The Court's Opinion Rests On Controlling Questions Of Law As To Which There Are Substantial Grounds For Difference Of Opinion.

Section 1292(b) appeals are intended "for situations in which courts of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004). The Court's summary judgment opinion contains at least two such questions. First, whether the United States can have a uniquely federal interest in a design feature in the absence of a contract requiring the manufacturer to adopt the feature. Second, whether the government must review design drawings or detailed descriptions, as opposed to the product itself, in order to approve reasonably precise specifications under the first element of *Boyle*. These questions control "a substantial part of the case." *Id*. at 1264. If the answer to either question is no, then Defendants cannot raise the government contractor defense as a matter of law. If, on the other hand, the answer to both questions is yes, then Defendants are entitled to summary judgment on the first element of the defense (or at the very least entitled to present their case to a jury).

Interlocutory review of these controlling legal issues is particularly appropriate in the context of a grant of summary judgment to Plaintiffs on the

government contractor defense.  The principal rationale for the defense is to protect the military's ability to acquire the equipment it needs by ensuring that private contractors do not face liability and litigation expenses when they comply with the government's orders, especially for injuries incurred in active military zones where recovery against the government itself would be foreclosed.  *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) ("The imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.").  There can be no dispute that this case implicates that policy. Defendants produced an innovative product for the military to help solve a longstanding problem: that most soldiers chose not to wear hearing protection in the field because they did not want to lose awareness of their surroundings.  The government contractor defense was designed to encourage companies to participate in projects exactly like this one, by eliminating any worry that the military's decisions would subject them to liability.  It is thus particularly important to ensure that the Court has appropriately removed the government contractor defense from

this case, lest Defendants are forced to litigate multiple bellwether cases without the benefit of this critically important defense.

### A.     The Need For A Design Contract

The Court "wrestled" with the question of whether the United States can have a "uniquely federal interest" in a design in the absence of a "government contract with a design component" and concluded, "[a]fter considerable deliberation," that it cannot.  Dkt. 1280 at 27.  As the length of the Court's opinion and deliberation illustrate, the question is not a straightforward one.

Defendants respectfully submit that there is substantial ground for disagreement with the Court's resolution of this issue.  According to a reasonable reading of *Boyle* and its progeny, "the procurement of equipment by the United States is an area of uniquely federal interest," period.  *Boyle*, 487 U.S. at 507.  The military has a unique interest in getting the equipment it needs, and that interest is the same whether the military is dictating design choices by contract or deciding, for example, that an off-the-shelf item has the precise design the military needs.  *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001) ("[N]o court has held that the supplier of an off-the-shelf item is ineligible for protection under the military contractor defense.").  Indeed, the Eleventh Circuit held in *Dorse v. Eagle-Picher Industries* that "the procurement of asbestos in World War II for naval ships is undeniably an area of uniquely federal interest" even though the

4

manufacturer had not designed its asbestos under a contract with the military.  898 F.2d 1487, 1489 (1990) (per curiam).

Moreover, at least one federal appellate decision is incompatible, or at the very least provides ground for disagreement, with the Court's ruling.  In *Lewis v. Babcock Industries*, 985 F.2d 83 (2d Cir. 1993), the court affirmed a grant of summary judgment to the defendants in a case involving a steel cable that connected a fighter plane's escape capsule to a parachute.  The cable had corroded and then severed when the pilot ejected himself from the plane.  *Id.* at 84.  The plaintiffs alleged the cable was defective because the type of steel used was susceptible to corrosion and the chemical coating insufficiently protective.  *Id.* at 85.

At no point was there a contract between the Air Force and the manufacturer requiring the use of the materials that plaintiffs alleged were defective.  When participating in the design of the airplane, the Air Force had designated the cable a "non-critical item" and "did not dictate the materials from which to make the cable, but only its required dimensions and strength."  *Id.*  The Air Force later noticed that some of the cables had corroded, investigated the problem, changed its maintenance procedures, and reordered the same cables before the accident occurred.  *Id.*  By all indications, those replacement orders were simple purchase orders that lacked a "design component."  Dkt. 1280 at 27.  Nonetheless, the court applied the contractor defense because the Air Force had "exercised its discretion in deciding that changes

in the maintenance manual along with replacement of the existing cables were a sufficient response to the corrosion problem."  985 F.2d at 89.

Defendants recognize that the Court considered most of the authorities discussed above, as well as many others, and rejected Defendants' position.  But that will always be the case when 1292(b) certification is sought.  Here, Defendants maintain that their position is reasonable, has support in the case law, and satisfies the criteria for interlocutory consideration by the Eleventh Circuit.

### B.    The Need For Drawings Or Detailed Descriptions

Although the legal analysis required nearly 17 pages, the Court's holding that Defendants could not show the military had approved reasonably precise specifications for the CAEv2 rested on one undisputed fact:  "[T]here is no evidence that the Army ever created or received detailed, quantitative descriptions or design drawings showing the component parts of the CAEv2, or describing how those parts should or would be integrated together into a finished product."  Dkt. 1280 at 48-49. After reviewing the cases holding that a "continuous back and forth" between the government and manufacturer can demonstrate meaningful review and approval of a design, the Court determined that the exchange of design drawings or detailed descriptions was the "common thread woven through" the case law and rejected Defendants' argument that the exchange of production samples was sufficient.  *Id*. at 47.

The Court's decision thus presents a pure, controlling question of law ripe for review by the Eleventh Circuit:  Does a "continuous back and forth" demonstrating meaningful review and approval require the exchange of drawings and quantitative descriptions, or can the exchange of production samples also qualify?

Defendants respectfully submit that there is substantial ground for disagreement with the Court's holding that, in order to approve reasonably precise specifications for a design, the government must review drawings or detailed descriptions of the product.  Although most cases applying the contractor defense do involve drawings or quantitative descriptions, that is a function of the types of products involved (*e.g.*, airplanes and helicopters), not a doctrinal requirement.  The first element of *Boyle* "is designed to ensure that 'the design feature in question was *considered* by a Government officer.'"  *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1355 (11th Cir. 2009) (quoting *Boyle*, 487 U.S. at 512) (emphasis in original).  It is surely possible, in principle, for a government officer to meaningfully consider a design feature by looking at a sample of the product itself.  Indeed, some design features (such as those at issue here, in Defendants' view) are easier to consider when embodied in an actual product, rather than as words or lines on a page.

Several decisions are either inconsistent or in tension with this Court's ruling. In *Lewis*, for example, the Air Force never examined drawings, descriptions, or any sort of technical information about the materials used in the steel cable at issue.  It

was sufficient that the Air Force examined the cable, noticed that it was susceptible to corrosion, and reordered the product.  *See* 985 F.2d at 85.

Similarly, the Fourth Circuit has held that a defendant satisfied the first element of *Boyle* "even though the military had not developed or approved the specifications for the [design feature] at issue."  *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989) (citing *Dowd v. Textron, Inc.*, 792 F.2d 409, 412 (4th Cir. 1986) (per curiam)).  The court held that the government's experience with the product itself (an airplane), and the government's decision to continue buying the plane despite its knowledge of the problems alleged by plaintiffs, demonstrated that the government had approved the allegedly defective design.  *Dowd*, 792 F.2d at 412.

These decisions establish that the government can approve reasonably precise specifications for a design by examining the product itself.  It should follow, then, that the exchange of production samples between the government and manufacturer—and their alteration at the government's request—can constitute a "continuous back and forth" culminating in meaningful government approval of the product's design.

Again, Defendants recognize that the Court considered this issue at length and came to a different conclusion.  But there is nonetheless a substantial basis in the case law for Defendants' position.  The Court should issue the requested certification

and give the Eleventh Circuit the opportunity to decide for itself whether the legal questions addressed in the Court's opinion warrant interlocutory review in light of their great importance to this massive litigation.

### C.      The Failure-To-Warn Claim

The Court agreed with Plaintiffs' view that *Dorse* definitively rejected the use of the three *Boyle* elements for failure-to-warn claims and adopted a stricter standard, but the Court ultimately held that Defendants could not be entitled to the contractor defense under either rule.  If the Court were to certify the two questions discussed above and the Eleventh Circuit granted the appeal, it would have jurisdiction over the entire order and could provide additional clarity on the failure-to-warn ruling in its discretion.

Interlocutory review of the Court's failure-to-warn ruling would also aid the resolution of this litigation.  The Eleventh Circuit could settle the question, on which district courts have divided, of whether the three-part *Boyle* test applies to failure-to-warn claims.  *See Hill v. Raytheon Aircraft Co.*, 470 F. Supp. 2d 1214, 1223 (D. Kan. 2006) ("*Dorse* does not create some *additional* test to be applied *prior* to the use of the *Boyle* standard.") (emphasis in original).  Whichever standard the Eleventh Circuit held to govern, it could also provide guidance on the application of the standard, which is much needed given the lack of Eleventh Circuit precedent on the issue.

**II.      Interlocutory Review Will Materially Advance The Termination Of The Litigation.**

Interlocutory review of the Court's summary judgment order can only hasten the resolution of this litigation.  The bellwether trials need not be delayed.  The principal purpose of those trials is to give the parties "an early understanding of the strengths and weaknesses of each party's position and a sense of the value of individual cases."  Melissa J. Whitney, *Bellwether Trials in MDL Proceedings* at 4-5 (Fed. Jud. Ctr. 2019).  A prompt interlocutory decision from the Eleventh Circuit would greatly enhance the value of the bellwether trials in that respect, regardless of which way the Eleventh Circuit rules.  If the Eleventh Circuit affirms, then the parties can have full confidence that the defense has been properly excluded from the bellwether trials.  If the Eleventh Circuit reverses, then the parties and Court can correct course early on and avoid wasting their time and effort trying multiple bellwether cases without a key affirmative defense.

Courts and expert commentators have recognized that interlocutory review can be particularly critical to the just and efficient administration of large MDLs like this one.  *See In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393-94 (S.D.N.Y. 2019) (noting that "in the context of simpler, more conventional litigation, the Court would not have found the need for immediate appeal as pressing" and "find[ing] it appropriate to resolve doubt in favor of certification").  That is especially true here, where interlocutory review need not delay the bellwether

trial plan and will increase confidence in the results of those trials.  Deferring review saves no one any work, and introduces the risk that the parties will try a whole series of bellwether cases only to have them invalidated by the Eleventh Circuit.  In short, there is no downside to obtaining review of the Court's ruling on the contractor defense now, and no upside to delaying that review.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its July 24, 2020 Memorandum Order for interlocutory appeal under 28 U.S.C. § 1292(b).  In accordance with the Eleventh Circuit's instruction that the district court "specify the controlling question of law it has in mind," *McFarlin*, 381 F.3d at 1264, Defendants ask that the Court's certification state the questions substantially as follows:

> In denying summary judgment to Defendants and granting summary judgment to Plaintiffs on the government contractor defense, did the Court correctly resolve the following two questions:
>
> (1) Can the United States have a uniquely federal interest in a design feature in the absence of a contract requiring the manufacturer to adopt the feature?
>
> (2) Must the government review design drawings or detailed descriptions, as opposed to the product itself, in order to "approve reasonably precise specifications" under the first element of the federal government contractor defense?

Dated:  August 3, 2020                    Respectfully submitted,


                                          */s/Robert C. Brock*
                                          Robert C. "Mike" Brock
                                          KIRKLAND & ELLIS LLP
                                          1301 Pennsylvania Avenue, N.W.
                                          Washington, D.C. 20004
                                          Telephone: (202) 389-5991
                                          mike.brock@kirkland.com

                                          Mark J. Nomellini
                                          Cole Carter
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, Illinois 60654
                                          Telephone: (312) 862-3254
                                          mark.nomellini@kirkland.com

                                          Kimberly Branscome
                                          DECHERT LLP
                                          633 W. 5th St., Suite 4900
                                          Los Angeles, CA 90071
                                          Telephone: (213) 808-5762
                                          kimberly.branscome@dechert.com

                                          *Counsel for Defendants 3M Company,*
                                          *3M Occupational Safety LLC, Aearo*
                                          *Technologies LLC, Aearo Holding, LLC,*
                                          *Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert C. Brock, hereby certify that on August 3, 2020, I caused a copy of the foregoing memorandum to be filed with the Court's CM/ECF system, which will serve all counsel of record.

Dated: August 3, 2020

*/s/Robert C. Brock*
Robert C. "Mike" Brock

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this brief complies with the word limit of Local

Rule 7.1(F), and contained 2,520 words, excluding the parts exempted by the Rule.

Dated: August 3, 2020

*/s/Robert C. Brock*
Robert C. "Mike" Brock

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)**

Mark Nomellini, counsel for Defendants, spoke to Shelley Hutson, counsel for Plaintiffs, by telephone on August 3, 2020.  Ms. Hutson stated that Plaintiffs would oppose Defendants' motion to certify the summary judgment order for interlocutory appeal.

Dated: August 3, 2020

*/s/Robert C. Brock*
Robert C. "Mike" Brock