IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

# ORDER

On August 4, 2020, the Court conducted a telephone hearing at the request of the parties to address a discovery dispute over the production of custodial files by Defendants. The Court construes this dispute as Plaintiffs' motion to compel the production of discovery.

By way of background, since this litigation began last year Defendants have reviewed more than 2.7 million documents and produced more than 340,000 documents for the more than 55 custodians added to the TAR process, as well as from non-custodial sources. The designation of custodial files has been a frequent subject of litigation. *See, e.g.*, ECF Nos. 777, 854, 1172. Plaintiffs now request an order compelling Defendants to designate five additional custodians: (1) Javier Rodriguez; (2) Olga Mendoza; (3) Juan Rodriguez; (4) Gordon Grogan; and (5) Larry Power. Defendants resist designating additional custodians on the bases

that Plaintiffs requests are untimely[1] and, alternatively, that production of these custodial files will not yield relevant discovery.

Plaintiffs, as the requesting party, must demonstrate each custodian would provide "unique relevant information not already obtained."[2]  The Court weighs this showing against the obvious burden on Defendants to collect, review, and produce a new custodial file to the TAR corpus, which Defendants have described as an onerous process taking several weeks to complete.[3]

For the reasons discussed on the record, which are fully incorporated herein, and as summarized below, Plaintiffs' motion is due to be **GRANTED IN PART and DENIED IN PART**.  This order is a non-

---

[1] The Court summarily rejects Defendants' timeliness argument as to this motion. Although Plaintiffs filed their motion nine days after the July 20, 2020, deadline, it is apparent Plaintiffs were seeking resolution without court intervention during this time in an ongoing meet and confer with Defendants.  This delay does not warrant avoiding a ruling on the merits, particularly in view of the expeditious resolution of this dispute.

[2] *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013); *see also Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 198 (D.D.C. 2019) (applying the "unique relevant information" standard for designating additional custodians); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practice and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) (describing the "general principles" pertinent to a party's request to compel designation of disputed individuals as ESI custodians).

[3] *See Willcox v. Lloyds TSB Bank, PLC*, No. 13-508-ACK-RLP, 2015 WL 13811490, at *6 (D. Haw. June 15, 2015) ("the benefit of the information and documents" from a custodian must be weighed against "the burden on [the responding party] for collecting, reviewing, and producing the documents").

exhaustive recitation of the arguments made by the parties as well as the Court's reasoning.

## I. DISCUSSION

### A. Aearo Technologies de Mexico

Plaintiffs request first that the Court designate three employees of Defendants' subsidiary in Mexico (Aearo Technologies de Mexico or "ATM")—Javier Rodriguez, Olga Mendoza, and Juan Rodriguez—as custodians and, accordingly, direct their custodial files be produced. Javier Rodriguez was the founder and General Manager of TJR Manufacturing and Services, which eventually became ATM through, first, a joint venture and then acquisition by 3M. Javier Rodriguez reported to Robert Zielinski, Defendants' Outside Manufacturing Manager in Indianapolis, and available metadata appears to show that Rodriguez was the author of protocol documents for the assembly and testing of the CAEv2 at ATM. Moreover, Plaintiffs assert he was aware of quality concerns pertaining to the CAEv2.

Defendants argue that the production of Javier Rodriguez's custodial file, if it still exists, is unlikely to result in the discovery of unique relevant information because Plaintiffs have not demonstrated Rodriguez had any direct involvement in the assembly or testing of the CAEv2. Defendants aver that Plaintiffs misunderstand the documents and data available to

3

them because, in all likelihood, Rodriguez created templates and spreadsheets for assembly and testing at ATM that were then modified for the CAEv2 after his departure.  Defendants also point to the fact that communications by Mr. Zielinski between or pertaining to Defendants and ATM are copied to other ATM custodians (Roberto Ramirez and Selina Ramirez), but not Javier Rodriguez.

     As the Court previously stated, the production of custodial files from ATM is appropriate and necessary in view of Plaintiffs' design defect claims and, as represented by Plaintiffs at the hearing, their negligence and failure-to-warn claims.  ECF No. 1172 at 6–7.  Although the Court previously designated a custodian for ATM (Selina Ramirez), *id.* at 7, and Defendants have agreed to one more (Roberto Ramirez), the production of discovery pertaining to ATM has been relatively slight.  Indeed, the Court learned ATM did not retain a custodial file for Ms. Ramirez, and thus one is not available for production here.  The Court appreciates the burden on Defendants to produce custodial files, particularly at this juncture, but Plaintiffs' showing as to the unique relevant information available from ATM, specifically Javier Rodriguez as General Manager, outweighs this burden.

The same is not true for ATM employees Olga Mendoza and Juan Rodriguez. Ms. Mendoza was a Quality Superintendent who reported to Javier Rodriguez. Plaintiffs say that she inspected components of the CAEv2 during assembly and, on one occasion, identified potential defects. Juan Rodriguez was the ISO-9000 Quality Engineer. ISO-9000 refers to a voluntary industry standard for quality and design adopted by Defendants. Plaintiffs do not point to any available evidence that Juan Rodriguez supervised, or even had a role in, the assembly of the CAEv2 at ATM.

The Court is not persuaded that producing the custodial files for Ms. Mendoza and Juan Rodriguez will yield relevant discovery. Their roles appear far afield from quality control issues pertaining to the CAEv2, and there is no direct evidence that they had any meaningful involvement with the product during their work at ATM.

### B.     Gordon Grogan

Plaintiffs next request is for the custodial file of Mr. Grogan, a Quality Analyst at 3M between 1999 and 2014 who reported to Quality Assurance Manager Steve Todor. Plaintiffs say that Mr. Grogan was responsible for addressing "problems" with the CAEv2 in Mexico and was "directly involved" in calibration issues as well as the approval of Quality Waivers for deliveries of the CAEv2 from ATM that tested "out of specification."

Defendants argue that Mr. Grogan's custodial file would be duplicative of other custodians, particularly Mr. Todor.

The Court concludes that Mr. Grogan's custodial file should be produced. Plaintiffs have demonstrated that his file will likely contain relevant information regarding quality assurance of the CAEv2. Additionally, there is a strong probability this information will be unique because the production of documents from Mr. Todor's custodial file, through the TAR process, was sparse.

### C. Larry Power

Finally, Plaintiffs request the custodial file for Mr. Power, the Manufacturing Operations and Global Outsource Manufacturing Manager at 3M between 2004 and 2011. Plaintiffs assert that Mr. Power, who supervised Mr. Zielinski, was involved in the evaluation of quality issues arising from assembly of the CAEv2 in ATM and was part of a small group of employees who received an action plan memorandum on these issues. Plaintiffs also claim that Mr. Power was involved in management-level discussions regarding demands for the sale and delivery of the CAEv2 to the United States Military when the latter deployed to Afghanistan and Iraq. Defendants argue that Mr. Power's custodial file would be duplicative because Defendants have already added to the TAR process more than

24,000 emails and attachments sent from or to Mr. Power, all of which were collected from existing custodians.

The Court is persuaded that Mr. Power's custodial file will yield unique relevant information and that the burden of production on Defendants, at this juncture, is not unduly high.  Mr. Power was only a limited number of people directly involved in quality issues for the CAEv2 and he held a significant managerial role with Defendants.  This designation is not duplicative of other custodians, particularly Mr. Zielinski, because the production of documents from Mr. Zielinski's custodial file was also thin.

## II.  CONCLUSION

Accordingly, it is **ORDERED**:

Plaintiffs' motion to compel the production of custodial files is due to be **GRANTED IN PART and DENIED IN PART**.  Defendants must collect, review, and produce responsive documents in the custodial files for Javier Rodriguez, Gordon Grogan, and Larry Power.[4]

**DONE AND ORDERED** this 5th day of August 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[4] The parties are encouraged to work diligently, in accordance with the September 1, 2020, deadline for corporate discovery.  Defendants must keep Plaintiffs apprised of their investigation, including whether they have any custodial files from ATM.