# **EXHIBIT A**

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Mark Nomellini<br>To Call Writer Directly:<br>+1 312 862 2410<br>mnomellini@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br>United States<br><br>+1 312 862 2000<br><br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

January 9, 2020

**Via Email**

Robert R. Redfield, MD
Director, Centers for Disease Control and
Prevention
1600 Clifton Road, N.E., MS D-14
Atlanta, Georgia 30333

          Re:    Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Dr. Redfield:

      In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a multidistrict litigation pending before the Northern District of Florida, this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") *Touhy*[1] requests to the United States Department of Health and Human Services ("DHHS") for certain documents, and to interview and depose one individual who is a current or former employee of the National Institute for Occupational Safety and Health ("NIOSH"), a federal agency within the Center for Disease Control ("CDC"), who was involved in testing of the Combat Arms Earplugs Version 2 ("CAEv2"). Pursuant to 45 C.F.R. §§ 2.1 - 2.4, Defendants set forth the basis for their *Touhy* requests as follows:

## I.    Summary of the Litigation

      3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people and produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also had a long-standing relationship with federal and state governments for well over fifty years and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M

---

[1]    *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Beijing  Boston  Dallas  Hong Kong  Houston  London  Los Angeles  Munich  New York  Palo Alto  San Francisco  Shanghai  Washington, D.C.

## KIRKLAND & ELLIS LLP

January 9, 2020
Page 2

purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation. Combat Arms Earplugs represented a significant advance in hearing protection in that they were one of the first hearing protection devices to offer protection from high-level impulse noises, like gun-fire, while still allowing the user to hear lower level sounds, like speech, with limited interruption. Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure to plaintiffs while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2. CAEv2 consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady and continuous protection from ambient noise. In contrast, the yellow end allows sound to travel into the opening at the center of the earplug and through a sound channel and the patented filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through while reducing higher-level impulse noises, like gun-fire.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel. These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2. To date, thousands of actions have been filed on behalf of current or former military personnel. These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment. Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat settings, and assert claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud. On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order transferring the consolidated cases and any tag-along actions to the Northern District of Florida.

## KIRKLAND & ELLIS LLP

January 9, 2020
Page 3

### II. Summary and Relevance of the Interviews Requested

Defendants request an interview and deposition with NIOSH employee William J. Murphy (wmurphy@cdc.gov). Mr. Murphy is or was a program coordinator for the NIOSH Hearing Loss Prevention Program. Documents produced to date show that Mr. Murphy conducted testing on CAEv2 on various occasions between 2001 and 2015, and communicated the results of his testing to both others in the government or military, including Army audiologist Doug Ohlin, and also individuals at Aearo. Defendants seek to interview and depose Mr. Murphy regarding: (i) test procedures, test protocols, and test results related to testing on the CAEv2; and (iii) correspondence and or communications pertaining to CAEv2 transmitted to others in the United States government, including the military.

Defendants request an interview occur prior to the deposition, and believe that such interview will make the deposition process more efficient, including by (i) identifying the location of relevant documents and data in advance of the deposition, which will help avoid the need for additional depositions if a witness identifies relevant materials for the first time during a deposition; and (ii) minimizing unnecessary depositions through pre-deposition identification of any witness with minor roles or immaterial knowledge, which may reduce the time and expense of organizing a formal depositions for those witnesses.

Defendants state that the information sought in the interview and deposition requests is unavailable by other means. Defendants' *Touhy* requests to the Department of Defense- including to each branch of the Armed Forces - have not resulted in discovery from the government related to the tests conducted by Mr. Murphy. Further, searches in the public domain have not revealed the details necessary for Defendants to further their federal defenses as it relates to these tests. Finally, several key government witnesses, including those with whom Mr. Murphy corresponded with, are since deceased.

Furnishing Mr. Murphy for an interview and deposition is in the interests of the federal government to expedite the discovery process between the federal government and Defendants. Information provided by Mr. Murphy will also likely reveal facts necessary for Defendants to support its federal defenses, including the federal government contractor defense, leading to a more expeditious and efficient resolution of claims involving hundreds of thousands of former service members against a government contractor.

### III. Summary and Relevance of the Documents Requested

Government action and knowledge are critical issues in this litigation. NIOSH, through the DHHS, exclusively possesses necessary information related to product testing, procedures, and results concerning testing done on CAEv2 by or at NIOSH. The materials speak to, among other things, Plaintiffs' allegations that there was a product defect or failure to warn - including

## KIRKLAND & ELLIS LLP

January 9, 2020
Page 4

government knowledge of CAEv2's performance capabilities, Defendants' affirmative defenses, and various bases for the Court's subject matter jurisdiction over certain claims. Accordingly, NIOSH, through the DHHS, possesses information that is necessary for the Court to evaluate the parties' claims and defenses.

Defendants are presently aware of at least two buckets of CAEv2 testing performed by or at NIOSH. *First*, as noted above, documents produced to date indicate William J. Murphy tested the CAEv2 on numerous occasions between 2001 and 2015. *Second*, documents produced to date indicate that an Army audiologist named Mark Little tested the CAEv2 while doing a fellowship with NIOSH in approximately late 2001. Documents produced to date show that Maj. Little communicated with Defendants in August and September of 2001 regarding his intention to perform testing on the CAEv2 while at NIOSH, including so called "Method B" testing pursuant to certain ANSI standards.

Defendants' specific requests are contained in Section V, below. In short, Defendants request documents regarding: testing procedures, testing protocols, test results, test analyses, and communications with Defendants and or the military related to CAEv2 testing conducted by NIOSH from 2000 to 2015. These materials are relevance for several reasons. *First*, CAEv2 test results will undermine Plaintiffs' allegation that the product was defective. *Second*, testing documents and results in the government's possession will show that the government was on notice of CAEv2 performance capabilities, which is relevant to, among other things, Plaintiffs' failure to warn claims, Defendants' "government contractor" defense, and the Court's jurisdiction under the federal officer removal statute.

### IV.     Specific Document Requests

Defendants request the following documents from NIOSH:

1.  Test reports, protocols, results, and analyses pertaining to any testing conducted on CAEv2 by William J. Murphy.[2]

2.  Communications between Mr. Murphy and others in the United States government, including Doug Ohlin and others in the military, pertaining to testing on, or the performance of, the CAEv2.

---

[2] For reference, Defendants are aware that Mr. Murphy conducted, among other tests on the CAEv2: (1) an October 2001 where Mr. Murphy performed impulse peak testing on the CAEv2 using a 9mm handgun and M16 rifle; and (2) a December 23, 2014 test entitled "Measurement of Impulse Peak Insertion Loss from two Acoustic Test Fixtures and Four Hearing Protector Conditions."

# KIRKLAND & ELLIS LLP

January 9, 2020
Page 5

3. Communications between Mr. Murphy and Defendants (@aearo.com domain name) pertaining to testing on, or the performance of, the CAEv2.

4. Test reports, protocols, procedures, results, and analyses pertaining to any testing conducted on CAEv2 by Maj. Mark Little.

5. Communications between Maj. Little and Defendants (@aearo.com domain name) related to CAEv2, including instructions to be used during testing, test results, test procedures, test protocols, and analyses related to continuous and impulse noise testing on CAEv2.

6. Communications between Maj. Little and others in the United States government, including Doug Ohlin and others in the military, related to CAEv2, including product instructions, test results, test procedures, test protocols, and analyses related to continuous and impulse noise testing on CAEv2.

7. Test reports, protocols, procedures, results, and analyses pertaining to any other testing conducted on CAEv2 by current or former employees of NIOSH.

## V.  Additional Considerations

These requests comply with the policy of the DHHS regarding the provision of documents, and of information by its employees in connection with litigation in federal court:

1. Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2. Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3. Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4. Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5. Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD

## KIRKLAND & ELLIS LLP

January 9, 2020
Page 6

>    Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6. Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7. Disclosure would not violate any person's expectation of confidentiality or privacy.

8. The United States is not, and is not reasonably anticipated to be a party in this litigation.

## VI. Administrative Matters

Defendants will bear the costs of producing the documents and witnesses sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States. To the extent the DHHS believes any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DHHS to narrow the scope of the requested interviews and depositions. Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

>    Sincerely,
>
>    */s/ Mark Nomellini*
>
>    One of the Attorneys
>    Representing 3M