# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PROUCTS LIABILITY LITIGATION | ) ) ) ) | No. 3:19-md-02885-MCR-GRJ |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |

## THE DEPARTMENT OF DEFENSE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, ECF No. 1292

# TABLE OF CONTENTS

Page

PRELINARY STATEMENT ....................................................................1

FACTUAL BACKGROUND.....................................................................2

ARGUMENT ........................................................................................12

I.    THE R&R FAILS TO HOLD DEFENDANTS ACCOUNTABLE FOR THEIR FAILURE TO COMPLY WITH THE ATTORNEY CONFERENCE REQUIREMENT OF THIS COURT'S LOCAL RULES...............................................................................................13

II.   THE R&R HOLDS ERRONEOUSLY THAT DEFENDANTS ARE ELIGIBLE FOR RELIEF NOTWITHSTANDING THEIR FAILURE TO ISSUE A SUMMONS OR SUBPOENA TO DOD ......................................16

      A.    THE FAILURE OF DEFENDANTS TO ISSUE A SUMMONS OR SUBPOENA TO DOD MEANS THAT THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DOD AND CANNOT COMPEL IT TO TAKE ANY FORM OF ACTION...........................................................................16

      B.    THE FAILURE OF DEFENDANTS TO ISSUE A SUBPOENA TO DOD MEANS THAT THEIR *TOUHY* REQUESTS ARE INFORMAL REQUESTS FOR DISCOVERY THAT WOULD NOT BE ENFORCEABLE BY MOTION TO COMPEL EVEN IF THIS COURT HAD PERSONAL JURISDICTION OVER DOD...........................................................................23

III.  THE R&R RECOMMENDS AN INAPPROPRIATE REMEDY FOR AGENCY ACTION HELD TO BE ARBITRARY AND CAPRICIOUS ...26

IV.  THE R&R FAILS TO CONSIDER THE IMPACT OF THE DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE RELEVANCE OF THE DISCOVERY SOUGHT FROM DOD .................27

V.   CERTAIN OF THE RECOMMENDATIONS OF THE R&R HAVE BECOME MOOT ......................................................................................30

CONCLUSION .....................................................................................31

i

# TABLE OF CASES

Page

*Baragona v. Kuwait Link Transp. Co.*, 594 F.3d 852 (11th Cir. 2010)............17, 18

*Barnett v. Ill. State Bd.*, 2002 WL 1560013 (N.D. Ill. July 2, 2002).......................24

*Bolloré S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006)...........17

*Bonfiglio v. Nugent*, 986 F.2d 1391 (11th Cir. 1993) ..............................................22

*Bujanowski v. Koconones*, 359 F. App'x 112 (11th Cir. 2009)........................12, 22

*Camp v. Pitts*, 411 U.S. 138 (1973) ........................................................................26

*Ceroni v. 4Front Eng'red Sols.*, 793 F. Supp. 2d 1268 (D. Colo. 2011)................24

*Dewey v. Stone*, 2011 WL 2784595 (N.D. Fla. July 14, 2011) ...............................13

*Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349 (N.D. Fla. 2013) ..............................24

*H2Ocean, Inc. v. Schmitt*, 2006 WL 3837411 (N.D. Fla. Dec. 22, 2006)...............13

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351 (11th Cir. 2008) ................................................................................................................17

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 4043311 (N.D. Fla. July 17, 2020).................................................................................................27, 28, 29

*In re Mann*, 728 F. Supp. 60 (D. Me. 1990) ...........................................................22

*In re Trasylol Prods. Liab. Litig.*, 2011 WL 5529934 (S.D. Fla. July 21, 2011)....19

*Johnson v. Folino*, 528 F. Supp. 2d 548 (E.D. Pa. 2007) .......................................24

*Jordan v. N.Y. State Dep't of Taxation & Fin.*, 2019 WL 4933569 (S.D.N.Y. Oct. 4, 2019) ......................................................................................................................5

*Julian Depot Miami, LLC v. Home Depot, U.S.A.*, 2020 WL 4436265 (11th Cir. Aug. 3, 2020) ........................................................................................7

*Kalawa v. United States*, 2020 WL 3603205 (D.N.J. July 2, 2020)........................17

*Moore v. Armour Pharm. Co.*, 927 F.2d 1194 (11th Cir. 1991)........................24, 25

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........................................23

*Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990).........................22

*Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009) ..............17

*Rosenthal v. Shiraz, Inc.*, 2009 WL 1941272 (S.D. Fla. July 7, 2009) ..................23

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ...................................16, 18

*SEBO Am., LLC v. Buyparts Ltd.*, 2020 WL 1930398 (D. Colo. Apr. 21, 2020)....20

*Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998) ........................................24

*Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-cv-02308, ECF No. 1208 (M.D. Fla. Aug. 7, 2020) ...............................................................13

*Thomas v. Arn*, 474 U.S. 140 (1985) ...................................................12

*United States v. Kubini*, 304 F.R.D. 208 (W.D. Pa. 2015) ....................................20

*United States v. Mitchell*, 463 U.S. 206 (1983) .......................................19

*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654 (1947) .........................19

*United States ex rel. Lewis v. Walker*, 2009 WL 2611522 (M.D. Ga. Aug. 21, 2009) ..................................................................................24, 25

*Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007)........................................25

## PRELIMINARY STATEMENT

Defendants, 3M Company and certain of its subsidiaries, have filed a renewed motion to compel against non-party Department of Defense (DoD). Defendants' motion "seeks relief from [DoD's] treatment" of certain *Touhy* requests that defendants have issued to DoD.  Def. Mot. Compel [etc.] (July 1, 2020) (Def. Mot.), ECF No. 1211, at 2.  The Magistrate Judge has recommended by report and recommendation (R&R) dated July 13, 2020, ECF No. 1292, that defendants' renewed motion to compel be granted in part and denied in part.  R&R at 30-31.

DoD objects to the R&R because it fails to hold defendants accountable for their failure to comply with the attorney conference requirement of this Court's local rules and because it holds erroneously that defendants are eligible for relief notwithstanding their failure to issue a summons or subpoena to DoD.  DoD also objects to the R&R because it recommends an inappropriate remedy for agency action held to be arbitrary and capricious; because it fails to consider the impact of this Court's denial of defendants' motion for summary judgment on the relevance of the discovery sought from DoD; and because certain of its recommendations have become moot.  The R&R should be rejected in view of these objections.

# FACTUAL BACKGROUND

## A.   INTRODUCTION

"[D]amages related to [p]laintiffs' use of the Combat Arms Earplug

('CAEv2')" are sought in this "multidistrict products liability action."  Order (July

24, 2020) (Summ. J. Order), ECF No. 1280, at 1.  The CAEv2 was developed and

produced by defendants and sold by defendants to the U.S. Army.  *See id.* at 8-9,

11, 14.  Certain of the plaintiffs allegedly "used the [CAEv2] during their military

service" and allegedly "suffered hearing-related injuries and sequelae thereto as a

result of [their doing so]."  Master Long Form Complaint [etc.] (Sept. 20, 2019),

ECF No. 704, ¶¶ 4, 13.  More than 139,000 potential plaintiffs had come forward

as of December 16, 2019.  Pretrial Order No. 23 (Jan. 21, 2020), ECF No. 922, at

1.

Defendants theorized at the beginning of this litigation that the government

contractor defense might protect them from "liability for those plaintiffs claiming

injury from using the CAEv2 during their military service."  *See* R&R at 3.  "The

government contractor defense is an affirmative defense that shields federal

contractors from third-party state tort liability for certain defects in products

designed and developed for the federal government."  Summ. J. Order at 19.  The

possibility that the government contractor defense might be available to defendants

meant at one time that this litigation was "nothing if not about the government's

procurement of equipment," *id.* at 26, and that the United States was "a critical

source for third-party discovery."  R&R at 3.

   B.   THE *TOUHY* PRESENTATION

   Assistant U.S. Attorney (AUSA) Leah Butler, AUSA Kathryn Drey, and

Maj. Collin Evans of the Army made a presentation to the parties at the request of

the Court on May 20, 2019.  *See Touhy* Tr. (May 29, 2019), ECF No. 399, at 1-2,

3:8-11, 5:12-13.  Described by the Court as a "*Touhy* presentation," this

presentation dealt with "the procedures for obtaining documents and testimony

from federal agencies and personnel."  Case Mgt. Order No. 1 (Apr. 23, 2019),

ECF No. 86, at 6.

   The Court "remind[ed] everyone" at the beginning of the *Touhy* presentation

   that neither the United States Attorney's Office nor the Unites States
   Army is obligated to be here today to meet with us about *Touhy*
   requests.  They're not a party to this litigation.  They're not required
   in any way to even engage with us at all.

      Their presence here and the work that they've done to prepare
   for today has been completely voluntary, and I appreciate very much
   their willingness to be here to work with us as we navigate through
   what appears to be a complex discovery journey for us.

*Touhy* Tr. at 3:19-4:5.  The Court also "ask[ed] everyone to please recognize that

this case is not the military's only priority."  *Id.* at 4:6-8.

   Remarks of AUSA Butler and Maj. Evans ensued.  *Touhy* Tr. at 5:7-19:11

(AUSA Butler); *id.* at 20:8-37:17 (Maj. Evans).  One topic about which Maj. Evans

spoke involved *Touhy* requests for deposition witnesses.  *Id.* at 33:18.  Addressing

those requests, Maj. Evans said:

> [Y]ou don't need to send a subpoena.  That subpoena signed by an
> attorney is not from a court of competent jurisdiction from [the
> Department of Justice's (DOJ's)] perspective.  So you need to send
> me a written request for a witness, and then we make a determination
> if they can be approved.  If they're approved, we send you a response
> letter that lays out what area they can talk about.

*Id.* at 33:23-34:5.

The Court asked Maj. Evans the following question when he finished his

remarks: "What does the Court do, in your experience, when the Court decides that

the information is not coming quickly enough?"  *Touhy* Tr. 37:18-21.  Answering

the Court, Maj. Evans said:

> I would say in that situation the Court would want to talk with DOJ,
> because DOJ represents the executive branch in litigation or in any
> matters related to the Court, and then DOJ can help us do that.  If you
> issued a court order, obviously, Your Honor, we would abide by the
> court order.

*Id.* at 37:22-38:3.  Neither of the representatives of DOJ attending the *Touhy*

presentation, AUSAs Butler and Drey, responded to the Court's question.  *See id.*

## C.     THE *TOUHY* REQUESTS

"Defendants have served numerous *Touhy* requests on [DoD]" since June

2019.  Def. Mot. at 2.  These requests have sought "documents, depositions, and

other information related to [the CAEv2], service member noise exposures, and

[DoD's] hearing conservation program."  *Id.*  Plaintiffs have served *Touhy* requests

4

on DoD as well.  *Id*. at 12.  At no time, however, have plaintiffs or defendants

served a summons on DoD.  Decl. Maj. Nicole M. Kim (Aug. 13, 2020) (Kim.

Decl.), Ex. A hereto, ¶ 2.  Neither have plaintiffs or defendants served a subpoena

on DoD for any of the documents, depositions, or other information covered by

their *Touhy* requests.  *Id.*

Certain of defendants' *Touhy* requests have been extraordinarily broad.  The

following examples are illustrative:

- Defendants have asked DoD to produce a total of 33 witnesses for
  interviews, depositions, or both.  Letter from Nomellini to Evans *et al.* (Oct.
  25, 2019), ECF No. 1211-2, at 1, 3-4; Letter from Nomellini to Fucci *et al*.
  (Dec. 2, 2019), ECF No. 1211-3, at 1, 4-12.[1]

- Defendants have asked DoD to produce 45 categories of documents under
  the headings "Design Specifications And Requests For Proposals";
  "Purchasing And Distribution Of CAEv2"; "Instructions For CAEv2 And
  Other Earplugs"; "Complaints Or Recalls Related To CAEv2";
  "Communications With Dr. Douglas Ohlin Regarding CAEv2";
  "Communications With Moldex-Metric, Inc. Regarding CAEv2"; "CAEv2
  Testing"; "Policies And Procedures Regarding Earplug Fit For Service
  Members"; "Noise And Ototoxin Exposure In The Military"; and "Hearing
  Protection Usage In The Military."  Letter from Nomellini to Evans (June
  21, 2019), ECF No. 1211-7, at 7-10.

- Defendants have asked DoD to produce (1) "documents, communications,
  and presentations related to the annual meeting of the Military Audiology
  Association for 1999 to 2005"; (2) "documents related to the noise surveys,
  identification of noise hazardous areas, and identification of noise-exposed

---

[1] This letter as filed by defendants on the public record discloses the complete Social Security numbers of 10 individuals.  ECF No. 1211-3 at 5-7, 9.  "Under Rule 5.2(a)(1) of the Federal rules of Civil Procedure," however, "a litigant's reference to a Social Security number in a Court submission must be limited to the last four digits of the Social Security number."  *Jordan v. N.Y. State Dep't of Taxation & Fin.*, 2019 WL 4933569, at 1 n.2 (S.D.N.Y. Oct. 4, 2019).

and ototoxin-exposed personnel, which are performed and maintained by the Industrial Hygiene Program Managers for each Army installation per Army Pamphlet 40-501"; and (3) "documents related to any service member complaints regarding [the CAEv2]."  Letter from Nomellini to Evans (Mar. 17, 2020), ECF No. 1211-9, at 3

DoD has sought conscientiously to respond to all of defendants' *Touhy* requests, despite their number and breadth.  *See, e.g.*, Letter from Kim to Nomellini (June 26, 2020), ECF No. 1211-6, at 1 (stating that "[t]his letter is a follow up to my email dated June 4, 2020 and is in further response to your *Touhy* letters submitted on December 2, 2019, March 17, 2020, and June 3, 2020  . . . . This letter serves as an update to [DoD's] progress") (italics added).  DoD has not been able to date, however, to take final action on all of defendants' requests.  *See, e.g., id.* at 3 (stating that DoD has not started processing the request for documents that defendants had submitted by letter dated March 27, 2020, "as we are trying to complete processing on your earlier requests").

## D.   THE CROSS MOTIONS FOR SUMMARY JUDGMENT

The Court directed the parties by order dated February 11, 2020, to "file [any] dispositive motion on the merits of a particular affirmative defense . . . by April 1, 2020."  Pretrial Order No. 26, ECF No. 987, at 1 (bolding deleted).  The Court stated in its order that "[t]his will be the parties' only opportunity to move for summary judgment on the federal government contractor defense – neither side will be permitted to so move in an individual case."  *Id.*

6

The parties filed cross motions for summary judgment on the government contractor defense on April 1, 2020.  ECF No. 1072 (plaintiffs' motion); ECF No. 1071 (defendants' motion).  Oral argument on the motions was heard on June 15, 2020.  Civ. Minutes - General (June 15, 2020), ECF No. 1186.  Both motions were based on the premise, as are all motions for summary judgment, that "'there [was] no genuine dispute as to any material fact.'"  *See Julian Depot Miami, LLC v. Home Depot, U.S.A.*, 2020 WL 4436265, at *2 (11th Cir. Aug. 3, 2020) (quoting Fed. R. Civ. P. 56(a)).  Both motions thus implied that no further discovery on the government contractor defense was necessary or appropriate.

The Court held by order dated July 24, 2020, ECF No. 1280, that "the record evidence [was] insufficient, as a matter of law, to establish the elements of the government contractor defense to any of [p]laintiffs' claims."  Summ. J. Order at 1.  One finding that underlay the Court's holding was that the Army had played no role in the design or development of the CAEv2.  *See, e.g.*, Summ. J. Order at 5 ("There is no evidence that the U.S. Army was a part of the discussions between ISL and Aearo"); *id.* at 7-8 ("Significantly, none of the detailed design descriptions or drawings for the CAE were discussed with or sent to the Army"); *id.* at 11 ("Once again, no design descriptions or drawings for the earplug were discussed with or sent to Dr. Ohlin"); *id.* at 32 ("Defendants had no contractual relationship with the Army regarding the design of the CAEv2").  Another finding that

7

underlay the Court's holding was that defendants knew as early as May 2000 that the CAEv2 was defective and concealed that fact from the Army and from others until 2014. *See id.* at 14 ("[I]t is undisputed that the tests led Dr. Berger to report to his colleague, Brian Myers, [by email dated May 12, 2000] that 'the [CAEv2] ha[d] problems unless the user instructions [were] revised'"); *id.* at 15 ("The record reflects that the Flange Report was never shared with the Army and, in fact, was mot made available to *anyone* outside of Aearo until it was produced by 3M in a lawsuit brought against 3M by a competitor, Moldex-Metric, Inc. . . in 2014"). These findings and others caused the Court to grant plaintiffs' motion for summary judgment and to deny defendants' motion cross motion for summary judgment. *Id.* at 1.

Defendants asked the Court by motion dated August 3, 2020, ECF No. 1298, to certify the suitability of its denial of their motion for summary judgment for interlocutory appeal. Defendants' motion is pending.

### E.   THE MOTIONS TO COMPEL

Defendants moved on June 12, 2020, to compel DoD to comply with certain of their outstanding *Touhy* requests. Def. Mot. Compel [etc.], ECF No. 1178, at 3-4, 17. Defendants sought that relief despite the pendency on that date of their cross motion for summary judgment.

DoD denied the requests of both sides to take the deposition of Col. Martin Robinette by letter dated June 23, 2020, for reasons that included his "apparent . . . lack[] [of] relevant knowledge of the information . . . listed in  [both sides'] requests."  Letter Kim to Aylstock *et. al.*, ECF No. 1211-5, at 1.  DoD expressed its willingness, however, "to authorize [Col.] Robinette to provide responses to interrogatories based on [those] requests."  *Id.* at 2.

Hon. David R. Herndon was appointed by order dated October 15, 2019, ECF No. 760, "as a Special Master . . . [to] help facilitate and manage discovery from [DoD] and [DOJ]."  Order of App't at 1.  "Special Master Herndon advised the parties [on June 26, 2020] of the burden on [DoD] in responding to the parties' *Touhy* requests."  Def. Mot. at 12.

Defendants withdrew their motion to compel without prejudice by notice dated June 24, 2020 (Withdrawal Not.), ECF No. 1197.  Defendants did so because Special Master Herndon "[had] advised [them] to hold [the] motion in abeyance in order to refine the contested issues, if any."  Withdrawal Not. at 1.

The Court established procedures by order dated June 2, 2020, ECF No. 1158, for the selection of "four groups of six [bellwether] cases apiece – Trial Group A, Trial Group B, Trial Group C, and Trial Group D."  Pretrial Order No. 40 at 1.  The Court designated September 1, 2020, by order dated June 29, 2020,

ECF No. 1203, as the final date for "Government discovery . . . for Group A cases."  Pretrial Order No. 43 at 2.

Concerned that certain of their *Touhy* requests remained "'open'" and that they had received "no assurance that [DoD would] produce the requested materials in time to meet the September 1, 2020 discovery deadline," defendants filed their renewed motion to compel against DoD on July 1, 2020.  Def. Mot. at 2.  The motion seeks an order requiring DoD to "present six current employees – Mary Binseel, Dr. Mark Little, [Col.] Robinette, Dr. Leanne Cleveland, [Lt. Col.] Theresa Schulz, and Dr. John King – for deposition."[2]  Def. Mot. at 1.  The motion also seeks an order requiring DoD to produce "the following information and documents":

> (1) "average noise and ototoxin exposure per military occupational specialty"; (2) "data regarding noise and ototoxin exposures at the bellwether-relevant Army installations" for the "time periods" that defendants have specified; (3) "health hazard assessments for the weapons operated by the bellwether plaintiffs"; (4) "the 'comprehensive operational and work task potential exposures-based medical surveillance recommendations,' and 'DoD lifetime personnel exposure data,' that are referred to in the promotional materials related to the [Defense Occupational and Environmental Health Readiness System Industrial Hygiene database"; (5) "the safety release documentation for the CAEv2"; and (6) "the identities of the Hearing Conservation Program Managers and Industrial Hygiene Program Managers at the bellwether-relevant installations."

---

[2] Defendants previously had listed Col. Robinette, Dr. Cleveland, and Dr. King as "De-Prioritized Witnesses."  Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 7.

Def. Mot. at 24, 26.

The Court referred defendants' motion to the Magistrate Judge by order dated July 2, 2020, ECF No. 1212. DoD filed an opposition to the motion, ECF No. 1253, on July 15, 2020. Defendants filed a reply in support of the motion, ECF 1275, on July 22, 2020.

### F.   THE R&R

The R&R finds that defendants are eligible for relief despite their failure to issue a summons or subpoena to DoD, R&R at 10-19; that any so-called constructive denials of defendants' *Touhy* requests are non-final and non-reviewable, *id.* at 21; that DoD has acted arbitrarily and capriciously by denying defendants' request to take the deposition of Col. Robinette; *id.* at 29; and that DoD has "unreasonably delayed" taking final action on defendants' requests to take the depositions of Ms. Binseel, Dr. Little, Dr. Cleveland, Lt. Col. Schulz, and Dr. King and on defendants' requests for production of all of the documents and information that are the subject of their renewed motion to compel except "the identities of the Hearing Conservation Program Managers and Industrial Hygiene Program Managers at the bellwether-relevant installations." *Id.* 25. Subject to the parties' proposal of alternative compliance deadlines, the R&R recommends the issuance of an order requiring DoD to authorize the deposition of Col. Robinette within 14 days and requiring DoD to take final action within 14 days on all of

11

defendants' requests as to which the R&R finds DoD to have unreasonably delayed.  *Id.* at 30-31.

## ARGUMENT

"[A]ny party that disagrees with [a] magistrate's recommendations 'may serve and file written objections' to the magistrate's report."  *Thomas v. Arn*, 474 U.S. 140, 142 (1985) (quoting 28 U.S.C. § 636(b)(1)(C)).  "A district judge 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate,' after conducting a *de novo* determination of the portions to which the parties objected."  *Bujanowski v. Koconones*, 359 F. App'x 112, 114 (11th Cir. 2009) (same).  DoD objects to the R&R because it fails to hold defendants accountable for their failure to comply with the attorney conference requirement of this Court's local rules; because it holds erroneously that defendants are eligible for relief notwithstanding their failure to issue a summons or subpoena to DoD; because it recommends an inappropriate remedy for agency action held to be arbitrary and capricious; because it fails to consider the impact of this Court's denial of defendants' motion for summary judgment on the relevance of the discovery sought from DoD; and because certain of its recommendations have become moot.  The R&R should therefore be rejected.

## I.   THE R&R FAILS TO HOLD DEFENDANTS ACCOUNTABLE FOR THEIR FAILURE TO COMPLY WITH THE ATTORNEY CONFERENCE REQUIREMENT OF THIS COURT'S LOCAL RULES.

N.D. Fla. Local Rule 7.1(B) provides: "Before filing a motion raising an issue, an attorney for the moving party must attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party." "The purpose behind requiring a Rule 7.1(B) conference is to promote judicial economy by allowing the parties an opportunity to resolve motion disputes before involving the court." *Dewey v. Stone*, 2011 WL 2784595, at *5 (N.D. Fla. July 14, 2011). A litigant involves the court "needlessly" by filing a motion without "demonstrat[ing] any good cause for failing to confer with [opposing] counsel" as required by Rule 7.1(B). *H2Ocean, Inc. v. Schmitt*, 2006 WL 3837411, at *5 (N.D. Fla. Dec. 22, 2006). Denial of the litigant's motion is an appropriate sanction. *E.g., id.* (denying motion to compel that "[did] not meet the requirements of Federal Rule of Civil Procedure 37(a)(2)(B) and Local Rule 7.1(B)"); Order (Oct. 28, 2019), ECF No. 791 (denying, without prejudice, motion for extension of time "for failure to comply with the Local Rules of the Court, as [the motion] lacks a certificate 'confirming that the moving party complied with the attorney-conference requirement of Local Rule 7.1(B) and setting out the results' of that conference") (quoting N.D. Fla. Loc. R. 7.1(C)); *see Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-cv-02308, ECF No. 1208 (M.D. Fla. Aug. 7,

13

2020), Ex. B hereto (denying, without prejudice, motion for leave to file reply brief for failure to comply with M.D. Fla. Loc. R. 3.01(g), an analogue to Rule 7.1(B)).[3]

DoD advised the Court by notice dated July 6, 2020, that defendants' renewed motion to compel "[did] not bear a certificate under N.D. Fla. Loc. R. 7.1(C) and could not bear any such certificate because no conference under Loc. R. 7.1(B) took place prior to the filing of the motion." Not. DoD [etc.], ECF No. 1217, at 1. DoD further advised the Court that "[t]he same was true of defendants' initial motion to compel." *Id.*

Lead counsel for defendants responded to the filing of the notice by telephoning DoD's undersigned counsel on the evening of July 6, 2020, to ask "whether [DoD] would [be] provid[ing] the requested discovery." *See* Def. Resp. DoD Not. [etc.] (July 6, 2020) (Def. Resp.), ECF No. 1220, at 2. DoD's undersigned counsel responded by saying that DoD would be "responding to [d]efendants' motion." *Id.*

Defendants contend that the above colloquy satisfied the requirements of Loc. Rule 7.1(B) because of the previous efforts of defendants to work with other DoD and DOJ attorneys "to obtain the requested discovery." Def. Resp. at 1-2. Defendants are mistaken. Defendants withdrew their initial motion to compel on

---

[3] Rule 3.01(g) provides: "Before filing any motion in a civil case, except [certain types of motions], the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion."

14

June 24, 2020, because Special Master Herndon "[had] advised [them] to hold [the] motion in abeyance in order to refine the contested issues, if any." Withdrawal Not. at 1.  Defendants made no effort to "refine the contested issues" following their withdrawal of that motion, *see* Def. Mot. at 4-5, 14-15, even though DoD "sent [them] a 'comprehensive' update letter on June 26, 2020."  *Id.* at 4. Defendants did not initiate any dialogue with DoD following their receipt of that letter.  *See id.* at 4-5.  Worried about "the schedule in this litigation," *id.* at 4, they instead filed their renewed motion to compel on July 1, 2020.

The telephone call that defendants' lead counsel made to DoD's undersigned counsel on July 6, 2020, was not an "attempt in good faith" under these circumstances "to resolve [the issues raised by defendants' motion renewed motion to compel] through a meaningful conference with an adverse party."  *See* Loc. Rule 7.1(B).  The sole thing that happened during that call, to the contrary, was that defendants' lead counsel asked DoD's undersigned counsel whether DoD was going to accede to a motion that defendants already had filed.  *See* Def. Resp. at 2.

The R&R does not address the above events.  It thus fails to hold defendants accountable for their failure to comply with Rule 7.1(B) and accordingly should be rejected.

## II.   THE R&R HOLDS ERRONEOUSLY THAT DEFENDANTS ARE ELIGIBLE FOR RELIEF DESPITE THEIR FAILURE TO ISSUE A SUMMONS OR SUBPOENA TO DOD.

The failure of defendants to issue a summons or subpoena to DoD means that defendants are ineligible for two separate reasons for any of the relief that they seek by means of their renewed motion to compel.  First, the failure of defendants to issue a summons or subpoena to DoD means that this Court does not have personal jurisdiction over DoD and cannot compel it to take any form of action. Second, the failure of defendants to issue a subpoena to DoD means that their *Touhy* requests are informal requests for discovery that would not be enforceable by motion to compel even if this Court had personal jurisdiction over DoD. Defendants' renewed motion to compel should be denied and the R&R rejected for either of these reasons.

### A.   THE FAILURE OF DEFENDANTS TO ISSUE A SUMMONS OR SUBPOENA TO DOD MEANS THAT THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DOD AND CANNOT COMPEL IT TO TAKE ANY FORM OF ACTION.

"Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).  "[T]he issue of whether personal jurisdiction is present is a question of law and subject to *de novo* review . . . because '[a]n *in personam* judgment entered without personal

16

jurisdiction over a defendant is void as to that defendant.'" *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) (quoting *Sloss Indus. Corp. v. Eurisol*, 488 F.2d 922, 924 (11th Cir. 2007)).  "[T]he plaintiff bears the ultimate burden of establishing that personal jurisdiction is present" where, as here, "the defendant challenges the court's exercise jurisdiction over [the] person [of the defendant]." *Id.*

"Service of process is . . . the physical means by which [personal] jurisdiction is asserted." *Baragona v. Kuwait Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010).  "'Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)).  "Because the United States has sufficient minimum contacts in every forum state, a court establishes the authority to adjudicate a case against the government through the service of process itself." *Kalawa v. United States*, 2020 WL 3603205, at *2 (D.N.J. July 2, 2020).

Two forms of process exist.  "'A summons is process because its service subjects the person served to the court's jurisdiction, which is necessary to validate a judgment that the court might render against that person.'" *Bolloré S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 n.5 (5th Cir. 2006) (quoting David D.

Siegel, *Supplemental Practice Commentaries*, 28 U.S.C.A, Rule 4, Federal Rules of Civil Procedure, at C–4 (West 2006)). "'A subpoena is also process, again in the sense of obtaining jurisdiction over the person served with it, but the subpoena acts only to exact testimony or obtain some document or other physical object from that person.'" *Id.*

Defendants have not served DoD with a summons or subpoena in this litigation, *see* Kim Decl. ¶ 2, and thus have not brought DoD within the personal jurisdiction of the Court. *See Baragona*, 594 F.3d at 855. The Court therefore is "'powerless to proceed to an adjudication'" of defendants' renewed motion to compel. *See Ruhrgas*, 526 U.S. at 584 (quoting *Emp'rs. Reinsurance*, 299 U.S. at 382).

The R&R responds to this point by holding that "[DoD's] conduct evinces a waiver of its objection to personal jurisdiction." R&R at 17. The conduct that allegedly evinces the waiver consists of (1) Maj. Evans' having "instructed the parties [at the *Touhy* presentation] to *not* send subpoenas for their discovery requests because, in [DoD's] opinion, they would have no legal effect"; (2) Maj. Evans' having stated at the *Touhy* presentation that DoD would "abide by [the] Court's order directing production" if one were issued; and (3) the appearances of government counsel "on behalf of [DoD's] current employees at depositions in this matter." R&R at 17-18; *see, e.g.*, Depo. Tr. (Mar. 10, 2020), ECF No. 1275-2, at 3

18

(noting the appearance of Maj. Evans and an attorney from the Department of Veterans Affairs at the deposition of Dr. Lorraine Babeu).

As a matter of law, however, none of this conduct constitutes a waiver of DoD's objection to personal jurisdiction.  "[O]fficers of the United States possess no power through their actions to waive an immunity of the United States."  *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947).  "[N]o contracting officer or other official is empowered," therefore, "to consent to suit against the United States."  *United States v. Mitchell*, 463 U.S. 206, 216 (1983).

In addition, "[a] defendant normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process."  *Baragona*, 594 F.3d at 854.  "[W]aiver of a personal jurisdiction defense by conduct" thus "is not readily found."  *In re Trasylol Prods. Liab. Litig.*, 2011 WL 5529934, at *2 (S.D. Fla. July 21, 2011).

Nothing to which the R&R refers substantiates its holding that DoD has waived its personal jurisdictional defense by conduct.  No waiver of that defense may be inferred from the fact that government attorneys have appeared "on behalf of [DoD's] current employees at depositions in this matter."  *See* R&R at 18. Government attorneys typically appear at third-party depositions of government personnel that seek official information.  The purpose of their appearances is to

19

"instruct the witness not to answer a question if it's outside of the scope" of the testimony that the government has authorized, *Touhy* Tr. at 34:20-21 (Maj. Evans), and otherwise to protect the interests of the United States.  *See United States v. Kubini*, 304 F.R.D. 208, 221 n.13 (W.D. Pa. 2015) (holding "the United States" is the "client" of AUSAs).  No aspect of the appearance of government attorneys at the depositions of government personnel thus constitutes an implicit or explicit waiver of any objection to personal jurisdiction that the United States may have.

The same is true of the statement of Maj. Evans at the *Touhy* presentation that DoD "would abide by this Court's order directing production" if one were issued.  *See* R&R at 18.  "'It is axiomatic that attorneys must comply with court orders and have a responsibility to oversee their clients' compliance.'"  *SEBO Am., LLC v. Buyparts Ltd.*, 2020 WL 1930398, at *2 (D. Colo. Apr. 21, 2020) (quoting *Hart v. Blanchette*, 2019 WL 1416632, at *22 (W.D.N.Y. Mar. 29, 2019)).  Maj. Evans' axiomatic statement thus did not submit DoD by implication to the Court's personal jurisdiction.

Maj. Evans likewise did not submit DoD to the Court's jurisdiction when he "instructed the parties" at the *Touhy* presentation "not [to] send subpoenas for their discovery requests."  *See* R&R at 17 (emphasis deleted).  Maj. Evans was not making any reference to personal jurisdiction when he gave the parties that instruction.  He was telling the parties, instead, that DoD did not need to be served

20

with a subpoena in order to "make a determination if [a request] can be approved." *Touhy* Tr. at 34:2-3.  That advice was consistent with DoD regulations.  Those regulations give designated officials of DoD the authority to determine "[i]n response to *a litigation request or demand* . . . whether official information may be released in litigation . . . [or] whether DoD personnel assigned to or affiliated with [their] Component[s] may be interviewed, contacted, or used as witnesses concerning official DoD information."  32 C.F.R. § 97.6(a)(1) (emphasis added).

Maj. Evans likewise did not submit DoD to the Court's jurisdiction when he said at the *Touhy* presentation that "[a] subpoena signed by an attorney is not from a court of component jurisdiction from DOJ's perspective."  *Touhy* Tr. at 33:24-34:1 (quoted in R&R at 18).  Maj. Evans was not speaking on behalf of DOJ when he made that statement.  Instead, he was responding to the earlier remarks of AUSA Butler at the *Touhy* presentation about *Touhy* requests in criminal proceedings.  *See id.* at 6:4-7:19.  Criminal subpoenas are different from civil subpoenas.  "An attorney . . . may issue and sign a [civil] subpoena if the attorney is authorized to practice in the issuing court."  Fed. R. Civ. P. 45(a)(3).  Attorneys in criminal proceedings do not have the same authority.  A criminal subpoena must be obtained in blank from the clerk of the court and must bear the seal of the court, Fed. R. Crim. P. 17(a), to "indicate, as a matter of law, that the subpoena is a

document issued under the *aegis* of the Court." *In re Mann*, 728 F. Supp. 60, 61 (D. Me. 1990).

The Court emphasized at the beginning of the *Touhy* presentation that "neither the United States Attorney's Office nor the United States Army is obligated to be here today to meet with us about *Touhy* requests." *Touhy* Tr. at 3:19-22. Inferring a waiver of DoD's objection to personal jurisdiction from anything that Maj. Evans said at the *Touhy* presentation thus would "[p]rov[e] the adage that no good deed goes unpunished." *Bonfiglio v. Nugent*, 986 F.2d 1391, 1392 (11th Cir. 1993). No such inference therefore is warranted.

Defendants contend in the reply in support of their renewed motion to compel that "judicial estoppel bars [DoD] from asserting that this Court lacks personal jurisdiction in the absence of a subpoena." Def. Reply at 1 (capitalization altered). The R&R abstains from ruling on that contention, *id.* at 18 n.5, but a response to the contention is warranted because this Court's review here is *de novo*. *See Bujanowski*, 359 F. App'x at 114. Defendants' contention lacks merit for two reasons. First, the Supreme Court has recognized "[f]rom [its] earliest cases . . . that equitable estoppel will not lie against the Government as it lies against private litigants." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990) (citing, as the earliest such case, *Lee v. Munroe & Thornton*, 7 Cranch 366 (1813)). Extraordinary caution therefore must be exercised in holding the United

States estopped by any action it takes or does not take.  *See id.* at 423, 427 (holding that "claims for estoppel [against the United States] cannot be entertained where public money is at stake" but "leav[ing] for another day whether an estoppel claim could *ever* succeed against the Government") (emphasis added).

Second, "judicial estoppel . . . 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  Judicial estoppel thus would not bar DoD "from asserting that this Court lack[ed] personal jurisdiction [over it]," *see* Def. Reply at 1, unless DoD had asserted earlier in this litigation that the Court *did* have personal jurisdiction over it and "prevail[ed]" on that assertion.  *See New Hampshire*, 532 U.S. at 749.  No such thing has happened. Defendants' contention concerning judicial estoppel should therefore be rejected.

### B.   THE FAILURE OF DEFENDANTS TO ISSUE A SUBPOENA TO DoD MEANS THAT THEIR *TOUHY* REQUESTS ARE INFORMAL REQUESTS FOR DISCOVERY THAT WOULD NOT BE ENFORCEABLE BY MOTION TO COMPEL EVEN IF THIS COURT HAD PERSONAL JURISDICTION OVER DoD.

"[A]n attorney may make [an] informal discovery request." *Rosenthal v. Shiraz, Inc.*, 2009 WL 1941272, at *4 (S.D. Fla. July 7, 2009). "[S]uch a request," however, "does not necessarily form a proper basis for a motion to compel." *Id.* Formal requests for production "'clearly implicate the duties of opposing parties to

respond, pursuant to Fed. R. Civ. P. 34.'" *Id.* (quoting *Sithon Maritime Co. v. Mansion*, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998)). "'[I]nformal requests," by contrast, "[lie] outside the boundaries of the discovery rules.'" *Id.* "'Formal requests may occasion sanctions, letters usually do not.'" *Id.* "'To treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery.'" *Id.*

Compliance with *Touhy* regulations does not "confer some entitlement on parties seeking the disclosure of agency records." *Smith v. Cromer*, 159 F.3d 875, 880 (4th Cir. 1998). What provides that entitlement is the issuance of a subpoena. This point is made clear by the following cases, all of which are cited by defendants, Def. Mot. at 16-17, by the R&R, *id.* at 15 & n.3, or both: *Moore v. Armour Pharm. Co.*, 927 F.2d 1194 (11th Cir. 1991); *Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349 (N.D. Fla. 2013); *Ceroni v. 4Front Eng'red Sols.*, 793 F. Supp. 2d 1268 (D. Colo. 2011); *United States ex rel. Lewis v. Walker*, 2009 WL 2611522 (M.D. Ga. Aug. 21, 2009); *Johnson v. Folino*, 528 F. Supp. 2d 548 (E.D. Pa. 2007); and *Barnett v. Ill. State Bd.*, 2002 WL 1560013 (N.D. Ill. July 2, 2002). Four of these cases (*Ceroni*, *Lewis*, *Johnson*, *Barnett*) involve motions to compel compliance with subpoenas seeking discovery covered by agencies' *Touhy*

regulations.[4]  The other two cases (*Moore*, *Forgione*) involve motions to quash subpoenas seeking discovery covered by agencies' Touhy regulations.  All of these cases thus involve *Touhy* requests supported by subpoenas.

The R&R notes that a "circuit split" exists as to "'what standard of review to apply to an agency's decision not to comply with a subpoena.'"  R&R at 14 n.2 (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.2 (3d ed.)).  The circuit split is real.  *Compare, e.g., Moore,* 927 F.2d at 1197 (holding that the standard of review of the Administrative Procedure Act (APA) is the standard applicable to cases in which subpoenas have been issued for discovery covered by *Touhy* regulations) *with Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (holding that the standards of review of Fed. R. Civ. P. 45 are the standards applicable to such cases).  The circuit split has no bearing, however, on a case, like this one, in which no subpoena ever issued.  The fact that no subpoena ever issued in this case means that defendants' *Touhy* requests are no more than "informal discovery request[s]," *see Rosenthal*, 2009 WL 1941272, at *4, and that any relief to which they might be entitled would be limited to relief under the APA.  That relief is restricted, as discussed in the next section, to a remand of the

---

[4] The subpoena in *Lewis* was withdrawn at the agency's request.  2009 WL 2611522, at *1.  The court "[saw] no reason," however, "why [the plaintiffs] must, prior to seeking review, go through the additional step of issuing a second subpoena that will be challenged on the exact same grounds."  *Id.*

denial of their requests to DoD.  The R&R does not address this point and thus should be rejected.

## III.   THE R&R RECOMMENDS AN INAPPROPRIATE REMEDY FOR AGENCY ACTION HELD TO BE ARBITRARY AND CAPRICIOUS.

"The appropriate standard of review" prescribed by the APA for a final administrative decision is whether the decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not is accordance with law,' as specified in 5 U.S.C. § 706(2)(A)."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  "In applying that standard, the focal point should be the administrative record already in existence."  *Id.*  If the decision "is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded to [the decision maker] for further consideration."  *Id.* at 143.

The R&R holds that that DoD acted arbitrarily and capriciously by denying the request of defendants to take Col. Robinette's deposition, R&R at 29, but recommends as a remedy the issuance of an order directing DoD to authorize that deposition.  *Id.* at 31.  The appropriate remedy, however, is a remand of the denial of defendants' request to DoD "for further consideration."  *See Camp*, 411 U.S. at 142.  The R&R accordingly should be rejected.

26

## IV.   THE R&R FAILS TO CONSIDER THE IMPACT OF THE DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE RELEVANCE OF THE DISCOVERY SOUGHT FROM DOD.

"The Federal Rules of Civil Procedure permit discovery of nonprivileged matter that is 'relevant to any party's claim or defense and proportional to the needs of the case.'" *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 4043311, at *1 (N.D. Fla. July 17, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). Determining whether discovery is proportional

> requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Id.* "[T]he party seeking the production must demonstrate relevancy" if "the requested discovery's relevance is not apparent." *Id.* at *2

The Court's denial of defendants' motion for summary judgment raises a number of issues about the continuing relevance of the discovery that defendants seek. Certain of that discovery seeks information about the role played by the Army in the design and development of the CAEv2. *E.g.*, Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 7 (stating that defendants wish to depose Col. Robinette about "the military's design and development of the [CAEv2], including the desired length of the CAEv2 stem"); *id.* at 4 (stating that defendants wish to depose Lt. Col. Schulz about "the military's participation in the

27

design and development of non-linear hearing protection devices, including the [CAEv2]"); *id.* at 8 (stating that defendants wish to depose Dr. King about "military contributions to the design and development of the [CAEv2]").  The Court found in denying defendants' motion to compel that the Army played no role in the design or development of the CAEv2.  *See, e.g.,* Summ. J. Order at 5, 7-8, 11, 32.  No discovery on that issue thus remains "'relevant to any party's claim or defense'" or "'proportional to the needs of [this litigation].'"  *See 3M Combat Arms*, 2020 WL 4043311, at *1 (quoting Rule 26(b)(1)).

Other discovery that defendants seek to compel deals with any testing of the CAEv2 that the Army may have performed.  *E.g.*, Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 7 (stating that defendants wish to depose Col. Robinette about "military testing, research or other analysis of the effectiveness of the [CAEv2]"); *id.* (stating that defendants wish to depose Dr. Little about "testing and analyses of the [CAEv2] performed by Dr. Little on behalf of the military or other government agencies "); *id.* at 4 (stating that defendants wish to depose Lt. Col. Schulz about "analyses or testing of non-linear earplugs containing the ISL filter, including the [CAEv2]"); *id.* at 8 (stating that defendants wish to depose Dr. King about "military analyses of [the CAEv2], including any testing King performed on the units he received").  The Court found in denying defendants' motion to compel that defendants knew as early as May

2000 that the CAEv2 was defective and concealed that fact from the Army and others until 2014. *See* Summ. J. Mem. at 14-15. Any testing of the CAEv2 that the Army may have performed thus is neither "'relevant to any party's claim or defense [nor] proportional to the needs of [this litigation].'" *See 3M Combat Arms*, 2020 WL 4043311, at *1 (quoting Rule 26(b)(1)).

Other discovery that defendants seek to compel deals with plaintiffs other than the 24 whose cases have been selected for inclusion in Trial Groups A, B, C, and D. *E.g.*, Letter from Nomellini to Fucci *et al.* (Dec. 2, 2019), ECF No. 1211-3, at 8 (stating that defendants wish to depose Dr. King about "instructions or training provided to service members for use of [the CAEv2]"; Def. Mot. at 24 (seeking production of "average noise and ototoxin exposure per military occupational specialty"). The denial of defendants' motion for summary judgment means that discovery does not remain "'relevant to any party's claim or defense [or] proportional to the needs of the case,'" *see 3M Combat Arms*, WL 4043311, at *1 (quoting Rule 26(b)(1)), unless the discovery pertains to one of the 24 plaintiffs whose case has been selected for inclusion in one of the four trial groups. Certain of defendants' discovery does not do so.

The R&R mentions in passing the denial of defendants' motion for summary judgment, R&R at 3, but gives no consideration to the impact of that denial on the

relevance of the discovery that defendants seek by means of their renewed motion to compel.  The R&R should therefore be rejected.

## V.   CERTAIN OF THE RECOMMENDATIONS OF THE R&R HAVE BECOME MOOT.

"*Touhy* approval or denial letters responding to [defendant's] *Touhy* requests associated with safety release documentation for the CAEv2 and the deposition request(s) for: [Dr. Cleveland], [Dr.] Little, and [Lt. Col.] Schulz" have been provided since the issuance of the R&R.  *See* Kim Decl. ¶ 3.  Those letters moot the R&R insofar as it recommends that DoD be required to take any further action with respect to those requests.  *See* R&R at 30.

## CONCLUSION

The R&R should be rejected for the reasons set forth above.

> Respectfully submitted,
>
> ETHAN P. DAVIS
> Acting Assistant Attorney General
>
> LAWRENCE KEEFE
> United States Attorney
>
> JACQUELINE COLEMAN SNEAD
> Assistant Branch Director

s/ *David M. Glass*
DAVID M. GLASS, DC Bar 544549
Senior Trial Counsel
Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12020
Washington, D.C.  20530
Tel: (202) 514-4469/Fax: (202) 616-8460
E-mail: david.glass@usdoj.gov

Dated: August 13, 2020          Attorneys for the Department of Defense

## CERTIFICATE OF SERVICE

I certify that I served the within memorandum on all counsel of record by filing it with the Court by means of its ECF system on August 13, 2020.

s/ *David M. Glass*

## CERTIFICATE UNDER N.D. FLA. LOC. R. 7.1(F)

I certify that the within memorandum contains 7,084 words, not counting the table of contents or table of cases, based on the word-processing software used to prepare it.

s/ *David M. Glass*