**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:19-md-2885<br><br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR 28 U.S.C.**</u>
<u>**§ 1292(B) CERTIFICATION OF THE COURT'S SUMMARY JUDGMENT**</u>
<u>**ORDER ON THE GOVERNMENT CONTRACTOR DEFENSE**</u>

After extensive briefing, robust argument, and careful consideration, the Court correctly held the government contractor defense has no place in this case. It concluded 3M could not identify a qualifying design contract with the military, much less satisfy the very first element of the defense. Because 3M can no longer blame the military for its own misconduct, it now moves the Court—albeit anemically—to certify the July 24 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Specifically, 3M asks the Court to certify two questions for immediate appellate review. First, can the government have a uniquely federal interest in a design feature in the absence of a contract requiring the manufacturer to adopt the feature? Second, must the government review design drawings or detailed descriptions, as opposed to the product itself, in order to approve reasonably precise specifications under the first element of the defense? Dkt. 1298 at 11.

3M's motion is a head-scratcher. Interlocutory appeals are granted sparingly and only in exceptional circumstances—but never to provide early review of orders that fail to resolve a question of law that is dispositive of the litigation. On summary judgment, 3M "concede[d] that the defense applies only to design defect and failure-to-warn claims." Dkt. 1280 at 55 (citing Dkt. 1088-12 at 39). Because it is undisputed that Plaintiffs' other claims remain untouched, interlocutory review would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Most claims of military Plaintiffs and all claims of consumer Plaintiffs would proceed to trial regardless of the outcome of an appeal. Certification of the July 24 Order would therefore only delay, not expedite, the termination of this MDL.

3M's motion also fails because neither appellate question is "controlling." *Id.* That is, the government contractor defense is not viable for numerous reasons beyond those set forth in the Court's summary judgment decision. Nor has 3M cited a single controlling case—*none*—inconsistent with the Court's detailed ruling. To the contrary, *Boyle* and its Eleventh Circuit progeny confirm the Court's decision, dooming 3M's attempt to establish "substantial ground[s] for difference of opinion." *Id.* The Court should deny 3M's motion for any one of these independent reasons.

## LEGAL STANDARD

Only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers &*

*Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). Section 1292(b) thus permits a district court to certify an order for immediate interlocutory appeal only in the extraordinary event that it involves (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "This standard is conjunctive, meaning that if any elements are not satisfied, the Court must deny interlocutory review." *In re Yormak*, 2017 WL 2645601, at *2 (M.D. Fla. June 19, 2017). Even if all three elements are met, the district court has "unfettered discretion" to decline to certify an interlocutory appeal. *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007).

A controlling question of law means there is an "abstract legal issue" that can be decided "quickly and cleanly without having to study the record." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). A "substantial ground for difference of opinion" exists when there is no binding circuit precedent and "at least two courts interpret the relevant legal principle differently." *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 824 (S.D. Fla. 2007). Finally, appellate resolution of a controlling question materially advances the termination of the litigation only when it would "serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Courts place "particular weight" on this final element. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524,

531 (S.D.N.Y. 2014); *Traveler's Prop. Cas. Co. of Am. v. Moore*, 2012 WL 13006059, at *1 (N.D. Ga. July 27, 2012) (citing *McFarlin*, 381 F.3d at 1259).

Interlocutory review is the exception, not the rule. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996); *see also U.S. ex rel. Armfield v. Gills*, 2011 WL 2084072, at *1 n.1 (M.D. Fla. May 24, 2011) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare."). Liberal use of piecemeal interlocutory appeals is "bad policy," *McFarlin*, 381 F.3d at 1259, because "[a]ppeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, [and] burden appellate courts, . . . tending to weaken the precedential value of judicial opinions," *In re World Trade Ctr.*, 469 F. Supp. 2d at 144. Section 1292(b) certification is thus subject to a "high threshold" and rarely granted. *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008). As this Court recently made clear, "[c]ertification is only appropriate in the *rare case* where there is both a question of law that is *dispositive of the litigation* and there is *serious doubt* about how it should be decided." *Austin v. FL Hud Rosewood, LLC*, 2018 WL 10509900, at *1 (N.D. Fla. Mar. 23, 2018) (Rodgers, J.) (emphasis added).

## ARGUMENT

**I.** **Interlocutory Review Will Not Materially Advance the Termination of This MDL Because the Government Contractor Defense Does Not Apply to Most Claims.**

3M's request for interlocutory review is a nonstarter because resolving either appellate question will not "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), much less "dispos[e]" of it, *Austin*, 2018 10509900, at *1. *See Waggoner v. R.J. Reynolds Tobacco Co.*, 2012 WL 12903279, at *2 (M.D. Fla. Feb. 7, 2012) ("Because an immediate appeal . . . will not 'materially advance the ultimate termination of the litigation,' the Court need not address the first two elements."); *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 2010 WL 11504834, at *3 (S.D. Fla. Mar. 10, 2010) (finding other § 1292(b) factors irrelevant where an appeal would not materially advance the litigation); *In re Facebook*, 986 F. Supp. 2d at 531 ("[c]ourts place particular weight on" the final § 1292(b) factor).

Plaintiffs' Master Complaint alleges 16 causes of action against 3M. Dkt. 704. These claims include but are not limited to negligence, breach of implied and express warranties, negligent and fraudulent misrepresentation, gross negligence, negligence per se, fraud, and violations of the consumer-protection statutes of all 50 states. *Id.* at 47–87. Only *three* of the 16 claims—*to wit*, strict liability for design defect (Count II), negligence for failure to warn (Count III), and strict liability for failure to warn (Count IV)—depend solely on the CAEv2's design defects and/or 3M's decade-long

5

failure to warn about the CAEv2's defects and dangers. *Id.* at 52–61. The vast majority of Plaintiffs' claims have absolutely nothing to do with those issues, let alone military actions germane to the government contractor defense. *Id.* at 61–87.

Plaintiffs' negligent testing claim, for example, alleges that 3M—and 3M alone—failed to test the CAEv2 before it hoodwinked the military into purchasing this dangerous product. *Id.* at 49, 77. Plaintiffs' misrepresentation and warranty claims further allege that 3M, not the military, made false representations about the CAEv2 and warranted its safety. *Id.* at 61–71. Because those claims have no nexus to the government contractor defense, 3M readily conceded the "defense applies only to design-defect and failure-to-warn claims." Dkt. 1088 at 39. The Court thus granted Plaintiffs summary judgment on the defense as to all those claims without addressing either question 3M seeks to certify for interlocutory appeal. Dkt. 1280 at 55; *see, e.g.*, *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1329 (M.D. Fla. 2006); *McKay v. Tracor, Inc.*, 2005 WL 8158362, at *7 (N.D. Ala. 2005).

What's more, *none* of the claims alleged by consumer Plaintiffs are subject to the defense. *See, e.g.*, *Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, 1455 (9th Cir. 1990); *Graves v. 3M*, 2020 WL 1333135, at *5–6 (D. Minn. Mar. 23, 2020). That is why 3M moved for summary judgment on the defense only as to "claims brought by plaintiffs who used CAEv2 purchased by the military." Dkt. 1071 at 40. Just like most of military Plaintiffs' claims, then, *all* consumer Plaintiffs'

6

claims will proceed to trial *regardless* of the outcome of an interlocutory appeal. *See, e.g.*, *Reyes v. BCA Fin. Servs., Inc.*, 2018 WL 2849768, at *4 (S.D. Fla. June 8, 2018) (denying motion for certification because the party had not moved for summary judgment on all claims and "the case would then still need to go to trial").

Because "a substantial amount of litigation remains in [this MDL] regardless of the correctness of the Court's ruling, . . . arguments that interlocutory appeal would advance the resolution of [this] litigation are unpersuasive." *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at *7 (C.D. Cal. May 15, 2014). 3M's appeal would address only a few claims but leave "others standing." *McFarlin*, 381 F.3d at 1262. The sole Eleventh Circuit case 3M cites proves the point. *See id.* ("Resolution of one claim out of seven would do too little, if anything, to 'materially advance the ultimate termination of the litigation.'"). And because this Court could again conclude on remand that the defense fails as to this limited set of claims, certification is particularly inadvisable since it could lead to multiple interlocutory appeals. *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991). In short, the July 24 Order does not conclusively determine "a question of law that is dispositive of the litigation," so certification is inappropriate. *Austin*, 2018 WL 10509900, at *1; *see Pincus v. Speedway, Inc.*, 161 F. Supp. 3d 1150, 1160–61 (S.D. Fla. 2015) ("[G]iven that other claims survived the motion to dismiss, resolution of the common law claims would not materially advance the ultimate termination of

the litigation."); *Smiley v. Costco Wholesale Corp.*, 2019 WL 4345783, at *3 (M.D. Fla. Sept. 12, 2019) (same); *Moody v. Ascenda USA Inc.*, 2017 WL 1337617, at *4 (S.D. Fla. Jan. 20, 2017) (same); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp. 2d 1322, 1324–25 (S.D. Fla. 2009) (same).

Ignoring these issues, 3M argues "there is no downside to obtaining review" and "bellwether trials need not be delayed" by interlocutory review. Dkt. 1298 at 10–11; *see id.* at 1–2. Nonsense. Assuming, against all odds, the Eleventh Circuit somehow accepted the interlocutory appeal before the end of next month, it would not be resolved until approximately June 2021, months *after* the initial bellwether trials. *See* Dkt. 1204 at 4; *In re Checking Account Overdraft Litig.*, 2010 WL 3377592, at *3 (S.D. Fla. July 1, 2010) (denying certification because "[t]he median time from filing a notice of appeal in this district to final disposition in the Eleventh Circuit is 8.9 months").[1] That hardly seems worth the candle anyway, for nothing suggests either appellate question would affect the nature of discovery or the length of trial. *See Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*, 804 F.2d 24, 26 (2d Cir. 1986).

---

[1] *In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374 (S.D.N.Y. 2019), does not help 3M. There, the court held that reversal of its order "might well require a new trial." *Id.* at 393. That is not so here. Assuming, *arguendo*, reversal of the July 24 Order, 3M still cannot satisfy *Boyle*'s second or third element, precluding the need for a new trial. *See infra* Section II; *see also* Dkt. 1072 at 33–44. Further, to the extent 3M hints that interlocutory review is particularly appropriate in MDLs, courts disagree. *See In re Facebook*, 986 F. Supp. 2d at 533–35; *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 4009023, at *5 (E.D. Mich. Aug. 5, 2013).

In all, interlocutory review will not advance this MDL; it will delay it. 3M's motion fails for this reason alone. *Farley v. Magnum Marine Corp., N.V.*, 1995 WL 795711, at *3 (S.D. Fla. June 9, 1995) (denying certification because final § 1292(b) factor was not met); *Gills*, 2011 WL 2084072, at *3 (same); *Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810, at *3 (M.D. Fla. May 5, 2015) (same).

## II.   3M's Appellate Questions Are Not Controlling Because the Government Contractor Defense Fails for Numerous Additional Reasons.

3M's motion also fails because neither question is "controlling." 28 U.S.C. § 1292(b). A question is "'controlling' if its incorrect disposition would require reversal" and leave no alternative theories to support the judgment. *Ellis v. Ethicon, Inc.*, 2010 WL 11601705, at *1–2 (M.D. La. Aug. 18, 2010). In contrast, rejection of one theory supporting a judgment is not "controlling when another theory remains available that may support the same result." Wright & Miller, 16 *Fed. Prac. & Proc. Juris.* § 3930 (3d ed. 2020); *see also Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L. Rev. 607, 618 (1975) (controlling questions must "at a minimum" require that "reversal result in an immediate effect on the course of litigation and in some savings of resources either to the court system or to the litigants"). Questions must be "outcome determinative" to be "controlling." *E.A. Renfroe & Co., Inc. v. Rigsby*, 2008 WL 11375424, at *2 (N.D. Ala. Jan. 17, 2008).

In *WorldCom*, the district court found that "related to" jurisdiction under the 1933 Securities Act supported jurisdiction. *California Pub. Emps.' Ret. Sys. v.*

*WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004). The parties opposing jurisdiction moved to certify the issue. *Id.* The district court denied the motion, and the Second Circuit affirmed. *Id.* "[A]t least one alternative basis" existed to support jurisdiction, the Second Circuit ruled, so there was no "controlling question" under § 1292(b). *Id.* at 95–96; *see, e.g.*, *Lee v. Active Power, Inc.*, 2014 WL 4337860, at *3–4 (W.D. Tex. Sept. 2, 2014) (finding that a "controlling question" did not exist because "[r]esolution of the imputation issue alone would be insufficient to reverse this Court's order and dismiss the case"); *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 852 (W.D. Tenn. 2010) (finding no "controlling question" because there were "additional grounds for recovery" even if the defense applied).

3M blows by its burden to identify a controlling question. It assumes that "[i]f the Eleventh Circuit reverses, then the parties and Court can correct course early on and avoid wasting their time and effort trying multiple bellwether cases without a key affirmative defense." Dkt. 1298 at 10; *see also id.* at 11 (further assuming that "[d]eferring review . . . introduces the risk that the parties will try a whole series of bellwether cases only to have them invalidated by the Eleventh Circuit").

"[I]f only it were that simple." Dkt. 1280 at 26. Reversal of either question is not only highly unlikely, but it would not breathe life back into the defense. Even if the government contractor defense did not require a design contract, and even if review of product samples satisfied *Boyle*'s first element, the defense would remain

10

rolling in its grave: the Court has already found "there is *no evidence* that [the government] evaluated the second production sample in any meaningful way." Dkt. 1280 at 40 (emphasis added). 3M cannot satisfy its heavy burden under *Boyle*'s first element under any standard because it lacks evidence of substantive review and approval. The defense thus fails even if a panel reversed on one or both questions.

In addition to the foregoing issues, the defense makes no sense because the CAEv2 is "standard" and/or "stock" equipment used by soldiers and consumers alike. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509–10 (1988); *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992) ("Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply."). The Court footnoted this issue without adjudicating it, Dkt. 1280 at 27 n.23, leaving the door open to dismiss the defense on this "alternative basis," *WorldCom*, 368 F.3d at 95.

Likewise, the Court did "not address [*Boyle*'s] remaining two elements," Dkt. 1280 at 34 n.28, but its findings preclude 3M from satisfying its burden under either element. On the second element, 3M maintained "it was the military that directed the 1/4" reduction" and the CAEv2 "conformed" to that specification. Dkt. 1101 at 6, 8. However, the Court found that, "[i]n point of fact," 3M "did not even shorten the stem by one-quarter of an inch." Dkt. 1280 at 43 n.39. "By the Court's calculation," the CAEv2's stem "was only shortened by 0.184 inches." Dkt. 1280 at

43 n.39. 3M thus cannot satisfy the second element. *See* Dkt. 1072 at 33–35; Dkt. 1089 at 29–31; *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1371, 1378–79 (11th Cir. 1997) (finding product did not conform to "basic design" requirements).

Under *Boyle*'s third element, 3M claimed it warned the military of all the CAEv2's defects and dangers. Dkt. 1071 at 34–35. The Court did not need to reach that argument on summary judgment; however, it did determine "the Flange Report was never shared with the Army and, in fact, was not made available to *anyone* outside of [3M] until it was produced by 3M in a lawsuit brought against 3M by a competitor." Dkt. 1280 at 15. The Court also found that "[i]mmediately following the release of the Flange Report in that litigation, the CAEv2 was discontinued." *Id.* These findings are fatal to the third element. *See Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 354–55 (5th Cir. 2010) (rejecting defense despite military's "state-of-the-art knowledge" because defendants had "not presented testimony that they shared any of their internal information regarding welding fume hazards with the government"); *cf. Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 72–73 (3d Cir. 1990) (finding third element met because contractor disclosed internal "engineering memorandum"); *Martinez v. Sci. Applications Int'l Corp.*, 2015 WL 11109381, at *20 (S.D. Tex. June 29, 2015) (same). And even if they were not, 3M has not and cannot show the military understood *all* the "consequences" of the CAEv2's defects,

as binding precedent requires. *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1322 (11th Cir. 1989); Dkt. 1072 at 35–44; Dkt. 1089 at 33–42; Dkt. 1102 at 12–17.

Accordingly, imagining the extraordinary—reversal on *both* appellate questions—at least three theories "remain[] available that may support the same result." 16 Fed. Prac. & Proc. Juris. § 3930. Interlocutory appeal would thus do nothing more than require our circuit court to expend substantial time and resources answering two questions that would not necessarily resurrect the defense. Without a "controlling question" under § 1292(b), 3M's motion fails. *See, e.g.*, *WorldCom*, 368 F.3d at 95–96 (affirming denial of motion for § 1292(b) certification because an "alternative basis" supported the judgment); *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d at 852 (similar); *Lee*, 2014 WL 4337860, at *4 (similar).

## III.   There Are No Substantial Grounds for Difference of Opinion for Either Question Because Binding Authority Supports the Court's Decision.

Because there is no controlling question of law, "there can be no substantial ground for difference of opinion." *Amador v. Calderin*, 2017 WL 5749580, at *2 (S.D. Fla. Nov. 28, 2017). This factor nonetheless presents yet another independent reason to reject 3M's motion. *See, e.g.*, *Soto v. Genentech, Inc.*, 2008 WL 11331905, at *1 (S.D. Fla. Oct. 7, 2008). 3M "must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion." *C.F.P.B. v. Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015).

Where the district court's order is in "complete and unequivocal agreement" with binding precedent, this element cannot be met. *McFarlin*, 381 F.3d at 1258; *see Barkley v. Pizza Hut of Am., Inc.*, 2015 WL 12826455, at *2 (M.D. Fla. Oct. 15, 2015) (finding no room for substantial difference of opinion because the "Eleventh Circuit has already decided the Question"); *In re Managed Care Litig.*, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002) (declining to certify question under § 1292(b) "because there is controlling authority in this Circuit"). Disagreement outside this Circuit is "of no moment." *Barkley*, 2015 WL 12826455, at *2.

### A. The Court correctly held the defense does not apply to the design-defect claims because 3M failed to identify a design contract.

3M's first question asks whether the government can "have a uniquely federal interest in a design feature in the absence of a contract requiring the manufacturer to adopt the feature." Dkt. 1298 at 11. Although the Court unequivocally answered "no," 3M says there is "substantial ground for disagreement." *Id.* at 4. There is not.

*Boyle* and binding circuit precedent confirm the obvious: the government *contractor* defense requires a *contract* with a design component. *Boyle*, 487 U.S. at 500, 508–09 (repeatedly emphasizing "the duty imposed by the Government contract"); *Hudgens v. Bell Helicopter/Textron*, 328 F.3d 1329, 1334 (11th Cir. 2003) (requiring defendant to establish "the defense's general applicability to its contract with the Army"). That is because, as this Court put it, "the uniquely federal interests underlying the creation of a federal common law defense in the context of

14

federal procurement contracts . . . simply do not exist in the absence of a government contract." Dkt. 1280 at 29 (citing *Boyle*, 487 U.S. at 505). Absent such a contract, "the government has not 'validly conferred' any 'authority' on a private company to 'carry out [a] project' on its behalf or otherwise 'get[] [its] work done.'" *Id.* Nor would *Boyle*'s one and only policy rationale make any sense sans contract. "The costs of potential liability to third-parties cannot be passed along to the government where," as in this case, "it has no contractual relationship with a private company in connection with the design of a product." *Id.* (citing *Boyle*, 487 U.S. at 512).

It is no surprise, then, that nearly every circuit has recognized the same bedrock requirement. *Id.* at 30–31 (collecting cases from Second, Third, Fifth, Ninth, and Eleventh Circuits); *see also Tate v. Boeing Helicopters*, 55 F.3d 1150, 1155 (6th Cir. 1995) (noting the "prototype's development was pursued under a contract" with the Army). Even 3M's lead case emphasizes the importance of "a federally imposed contract requirement" and recognizes that a "contract for [only] the purchase" of a product is insufficient. *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 86 & n.1 (2d Cir. 1993). Indeed, *Lewis* involved more than "simple purchase orders that lacked a 'design component,'" as 3M wrongly argues. Dkt. 1298 at 5 (quoting Dkt. 1280 at 27). It also involved an underlying design contract for the fighter jet that "[d]ictated . . . [the] dimensions and strength" of the cable. *Lewis*, 985 F.2d at 84–85; *see In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 89 n.12 (2d Cir. 2008)

("[A] defendant who had no way to demonstrate what specifications were within the contract . . . would likely have difficulty successfully asserting the contractor defense."). The fact that the contract did not specify the material of the cable related to the precision of the contractual specifications under *Boyle*'s first element, not the threshold contract requirement. *See* Dkt. 1298 at 7–8 (citing *Lewis*, 985 F.2d at 85).[2]

To this day, 3M has "identified no authority—none—in which a defendant having no design obligation to the federal government nevertheless enjoyed the benefit of the government's sovereign immunity pursuant to *Boyle*." Dkt. 1280 at 31–32; *cf. Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008) ("[A] dearth of cases does not constitute substantial ground for difference of opinion."). Instead, 3M again "stretch[es] *Boyle* well beyond its reasonably conceivable scope" in speculating that the defense applies regardless of a design

---

[2] *Miller* and *Dorse* are not to the contrary. Dkt. 1298 at 4. True, *Miller* stated that "[n]o court has held that the supplier of an off-the-shelf item is ineligible for protection." *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001). But that was two decades ago; not to mention that *Miller* involved only off-the-shelf component parts, not an off-the-shelf product as a whole. *See id.* Since *Miller*, numerous courts have relied on *Boyle*'s stock-product exception. *See, e.g.*, *Ferguson v. Bombardier Servs. Corp.*, 2005 WL 8160215, at *4 (M.D. Fla. Mar. 25, 2005). Worse, 3M ignores that *Dorse* involved a contractual "duty [to] manufacture and deliver cement containing asbestos." *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990). In other words, there *was* a contract specifying the use of off-the-shelf asbestos as a component part. *Id.* It is therefore irrelevant that the "manufacturer had not designed its asbestos under a contract." Dkt. 1298 at 4–5.

contract. Dkt. 1280 at 30; *see, e.g.*, *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1352 (11th Cir. 2009) (summarizing Eleventh Circuit cases involving design contracts).

In sum, 3M does "nothing more in [its] motion than cite the same authorities and make the same arguments presented in previous briefs and at the hearing, none of which convinced the Court then and [should] not do so now." *In re Denture Cream Prods. Liab. Litig.*, 2012 WL 13008161, at *3 (S.D. Fla. Feb. 7, 2012). Because it "cannot be seriously argued" that the government *contractor* defense applies in the absence of a design *contract*, Dkt. 1280 at 29, there is no room—let alone substantial room—for difference of opinion. *See Burrell v. Bd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992) (vacating district court's order granting motion for certification and dismissing appeal because circuit court precedent answered the question); *Barkley*, 2015 WL 12826455, at *2 (denying motion for certification because "[t]here is no difference of opinion in this circuit"); *Lane v. Medtronic, Inc.*, 2005 WL 8155524, at *4 (S.D. Fla. Dec. 15, 2005) (same).

**B.    The Court correctly held the defense does not apply to the design-defect claims because the military did not review design drawings.**

3M's second question asks whether the government must "review design drawings or detailed descriptions, as opposed to the product itself, in order to 'approve reasonably precise specifications' under the first element of the federal government contractor defense." Dkt. 1298 at 11. Despite the Court's holding that

such evidence is required to establish substantive approval of a product, 3M contends there is "substantial ground for disagreement." *Id.* at 7. Again, there is not.

This question "involves the simple application of settled circuit law." *Lane*, 2005 WL 8155524, at *4. As the Court correctly noted, the "common thread" throughout Eleventh Circuit precedent "is receipt and substantive review of detailed design descriptions, drawings and/or blueprints." Dkt. 1280 at 47–48. This rule is supported by *Brinson* and *Harduvel*, both of which involved review of specifications, drawings, and blueprints. *Brinson*, 571 F.3d at 1354–55; *Harduvel*, 878 F.2d at 1320. In *Gray*, moreover, the Eleventh Circuit affirmed the requirement that the contractor "produce evidence that the Navy reviewed and approved specific engineering drawings of the servo." *Gray*, 125 F.3d at 1375, 1378 (rejecting the defendant's "general narrative description" as a substitute for design drawings).

3M has not cited any Eleventh Circuit cases to the contrary.[3] *See Morrison v. City of Bainbridge, Ga.*, 2009 WL 10674438, at *3 (M.D. Ga. Dec. 1, 2009). The three cases it does cite—*Lewis*, *Ramey*, and *Dowd*—are all out-of-circuit. *See* Dkt. 1298 at 7–8; *Reyes*, 2018 WL 2849768, at *3 ("[T]he mere fact that courts (whose opinions are not binding here) may not be universally aligned on an issue does [not] necessarily mean that there exists a substantial ground for difference of opinion.").

---

[3] Even 3M acknowledges that "most cases applying the contractor defense *do* involve drawings or quantitative descriptions." Dkt. 1298 at 7 (emphasis added).

Those cases are, "at best, persuasive authorities, but are not binding opinions on the question presented." *Plante v. USF&G Specialty Ins. Co.*, 2004 WL 1429932, at *3 (S.D. Fla. June 2, 2004). Because 3M has "not point[ed] to a difference of opinion within this circuit," there cannot be a "*substantial* difference of opinion." *Dekalb Cnty. v. Hsbc N. Am. Holdings Inc.*, 2016 WL 3958730, at *3 (N.D. Ga. Feb. 25, 2016); *see, e.g.*, *Barkley*, 2015 WL 12826455, at *2 (denying certification because movant's reliance on contrary foreign authority is "of no moment" under § 1292(b)).

Moreover, *Lewis*, *Ramey*, and *Dowd* do not even support 3M's newfangled rule because they all involved post-production, not pre-production, evidence. *See, e.g.*, *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989) (referencing "two routes by which [a contractor] may satisfy the first prong of the *Boyle* test"). Post-production evidence is inherently post-design and development of the product; it involves discovering "a potentially failing or defective part" and making discretionary design decisions *after multiple years of continued use*. *Brinson*, 571 F.3d at 1353–54 & n.4 (citing *Lewis*, *Ramey*, and *Dowd*); *see also* Dkt. 1280 at 35 n.29 (citing *Brinson* and *Agent Orange* for the same proposition).

In *Lewis*, for instance, the Second Circuit considered "post-design phase" evidence that the government knew a fighter jet's cable was susceptible to corrosion and then reordered the cable anyway after years of use. 985 F.2d at 88–89. So too in *Ramey* and *Dowd*. *See Ramey*, 874 F.2d at 950–51 (emphasizing "the Navy had

19

become aware of the possible hazards" but continued to use the product); *Dowd v. Textron, Inc.*, 792 F.2d 409, 412 (4th Cir. 1986) (finding *Boyle*'s first element met based on Army's "decision to continue using" product despite knowledge of risk).

But review of "production samples" is not *post-production* evidence. *Cf.* Dkt. 1298 at 6. Thus, even if *Lewis*, *Ramey*, and *Dowd* found *Boyle*'s first element met based on post-production evidence of continued use plus knowledge of the defect, they do not "establish" the same rule for *pre-production* review of product samples—and certainly not in this Circuit. *Id.* at 8. 3M admits as much, surmising that "*[i]t should follow*" that "the exchange of production samples . . . can constitute a 'continuous back and forth.'" *Id.* (emphasis added). Such inferential leaps are not the stuff of § 1292(b). *See, e.g.*, *In re Androgel Antitrust Litig.*, 2014 WL 12774973, at *1 (N.D. Ga. May 20, 2014) ("The fact that the law . . . is sparse in this area is insufficient to automatically create a substantial ground for difference of opinion."). Regardless, the Court has already found that "[t]here is no such evidence in this litigation" that the government "knew of and investigated an alleged design defect" and "continued reordering the same product." Dkt. 1280 at 35 n.29.

Finally, an even "deeper problem" defeats certification here. *Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 4565775, at *4 n.6 (S.D. Ala. Aug. 31, 2016). 3M never invoked the post-production evidence rule on summary judgment, let alone argued that it applied to pre-production review of "product samples." *Compare* Dkt. 1298

at 6–9, *with* Dkt. 1071 at 29–31; Dkt. 1088 at 24–26; Dkt. 1101 at 5–8. Nor did it cite *Lewis*, *Ramey*, or *Dowd* in support of such a paradoxical rule. *See id.* Because 3M's "entire line of reasoning . . . is a brand-new argument," 3M cannot blindside the Court with that argument now in a desperate attempt to save its primary defense on appeal. *Shedd*, 2016 WL 4565775, at *4 n.6 (collecting cases denying certification due to waiver); *see Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[T]oo often our colleagues on the district courts complain that the appellate case about which they read were not the cases before them. We cannot allow [appellant] to argue a different case from the case [it] presented.").[4]

For all these reasons, there are no grounds—much less "substantial" grounds—for difference of opinion as to 3M's second question. *See Burrell*, 970 F.2d at 788 (vacating district court's certification order because "we cannot make out the 'substantial ground for difference of opinion' required by section 1292(b)").

### C.   The Court correctly held the defense does not apply to the warning claims because the military did not prohibit 3M from warning.

Finally, 3M attacks the Court's summary judgment decision on the warning claims without even attempting to articulate a certifiable question. Dkt. 1298 at 9, 11. Instead, 3M brazenly recycles the same inapposite cases and the same baseless

---

[4] Even pretending 3M did not waive this argument, the Court already found "there is no evidence that [Ohlin] evaluated the second production sample in any meaningful way." Dkt. 1280 at 40. 3M thus cannot satisfy *Boyle*'s first element under either one of its pathways.

arguments it made on summary judgment. *Id.* at 9; *e.g.*, Dkt. 1088 at 37. This is improper. *E.g.*, *In re Denture Cream Prods. Liab. Litig.*, 2012 WL 13008161, at *3.

3M suggests the Eleventh Circuit could "settle the question" as to whether *Dorse*'s two-part test or *Boyle*'s three-part test governs failure-to-warn claims. Dkt. 1298 at 9. But the Eleventh Circuit has already settled it, as this Court expressly recognized in its July 24 Order. *See* Dkt. 1280 at 50 ("The Eleventh Circuit has not retreated from [*Dorse*'s] standard, and in fact has reaffirmed it.") (citing *Glassco v. Miller Equip. Co., Inc.*, 966 F.2d 641, 644 (11th Cir. 1992)). Indeed, it is hard to fathom how the Eleventh Circuit could "provide additional clarity," Dkt. 1298 at 9, when *Glassco* put the issue to rest, 966 F.2d at 644 (reversing summary judgment order as "inconsistent with *Dorse*"); *see also* Dkt. 1280 at 50 n.43 (citing *Glassco v. Miller Equip. Co., Inc.*, No. 5:90-cv-294-ELN, Dkt. 32–33 (N.D. Ala. Jan. 7, 1991)).

Because "[t]his Court is bound by *Dorse*, period," *Hill* is irrelevant. Dkt. 1280 at 52; *see, e.g.*, *Barkley*, 2015 WL 12826455, at *2 (denying motion for certification under § 1292(b) because "[t]here is no difference of opinion in this circuit"). Nor does *Hill* even support 3M's argument. *See Hill v. Raytheon Aircraft Co.*, 470 F. Supp. 2d 1214, 1223 (D. Kan. 2006) (analyzing whether *Dorse*'s "additional test" for failure-to-warn claims applies to design-defect claims). Every case, including a recent decision from 3M's own backyard, agrees with this Court that *Dorse* is binding in the Eleventh Circuit. *See, e.g.*, *Graves*, 2020 WL 1333135, at *4 & n.5.

All told, 3M has not and cannot show substantial grounds for difference of opinion as to whether *Dorse* applies here. *See McFarlin*, 381 F.3d at 1259 ("[A] question of law as to which we are in 'complete and unequivocal' agreement with the district court is not a proper one for § 1292(b) review."). Not to mention the Court has already concluded the defense fails under "any" standard. Dkt. 1280 at 54; *see WorldCom*, 368 F.3d at 95. 3M's chagrin is simply not enough to certify the July 24 Order under § 1292(b). *See, e.g.*, *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1328 (N.D. Ga. 2018) (denying motion for certification because "the claim that the district court's ruling is incorrect" is insufficient to satisfy § 1292(b)).

## CONCLUSION

For the foregoing reasons, the Court should deny 3M's motion for § 1292(b) certification of the July 24 Order granting Plaintiffs summary judgment on the government contractor defense and denying 3M summary judgment on the defense.


DATED: August 17, 2020

*s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Michael A. Sacchet, Chair of Law & Briefing
(Admitted Pro Hac Vice)
Minnesota State Bar No. 0395817
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, MN 55402
Tel.: (612) 361-8220
mas@ciresiconlin.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULE 7.1(F)</u>

I hereby certify that this motion complies with the word limit of Local Rule

7.1(F) and contains 5,974 words.

*s/ Bryan F. Aylstock*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*