# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## ORDER[1]

This matter is before the Court on Defendants' Motion for 28 U.S.C. § 1292(B) Certification of the Court's Order on the Parties' Cross-Motions for Summary Judgment on the Government Contractor Defense. *See* ECF No. 1298. On consideration, the motion is denied.

On July 24, 2020, the Court entered an Order denying Defendants' motion for summary judgment on the government contractor defense and granting Plaintiffs' motion (the "Summary Judgment Order"). *See* ECF No. 1280. As relevant to the instant motion, the Court found the record insufficient as a matter of law to establish the elements of the government contractor defense with respect to the design defect claims in this litigation for two reasons. First, the claims do not implicate a "uniquely federal interest" because no aspect of the design for the CAEv2 was ever the subject of a procurement contract with the Army. *See id*. at 55. Second, the

---

[1] This Order assumes familiarity with the underlying facts and substantive law, which are set forth comprehensively in the Summary Judgment Order.

claims do not present a "significant conflict" with federal policies or interests because there was no record evidence that the Army approved reasonably precise specifications for the CAEv2.  *See id*. at 55-56.  For these reasons, the government contractor defense failed on the merits.

Certification of an interlocutory appeal under § 1292(b) is a "rare exception" to the fundamental principles underlying the final judgment rule.  *See McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1360 (11th Cir. 2008) ("Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy."); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ("[I]nterlocutory appeals are inherently disruptive, time-consuming, and expensive, and consequently are generally disfavored.") (internal citations omitted).  Section 1292(b) thus "sets a high threshold for certification," *see OFS Fitel*, 549 F.3d at 1359, which is met only in "exceptional cases" where early appellate review "may avoid protracted and expensive litigation" because "a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided," *see McFarlin*, 381 F.3d at 1256.  The moving party bears the burden of demonstrating that rare or exceptional circumstances warrant certification under § 1292(b).  *See CSX Transp., Inc. v. Kissimmee Util.*

*Auth.*, 153 F.3d 1283, 1286 (11th Cir. 1998). "Most interlocutory orders do not meet th[e] test." *See OFS Fitel*, 549 F.3d at 1359.

To certify an order for interlocutory appeal under § 1292(b), a district court must find that the moving party has satisfied five conditions: (1) the order presents a pure question of law; (2) the question is controlling of at least a substantial part of the case; (3) the question was specified in the order; (4) there are substantial grounds for difference of opinion on the question; and (5) resolution of the question may reduce the amount of litigation necessary on remand. *See Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (citing *McFarlin*, 381 F.3d at 1264). The certification decision is wholly discretionary, and the court may decline to certify an order even where the statutory criteria are met. *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018); *OFS Fitel*, 549 F.3d at 1358.

Defendants believe that the Summary Judgment Order "contains at least two . . . questions" that satisfy the conditions for § 1292(b) certification. *See* ECF No. 1298 at 2. As framed by Defendants, those questions are:

1. Can the United States have a uniquely federal interest in a design feature in the absence of a contract requiring the manufacturer to adopt the feature?

2. Must the government review design drawings or detailed descriptions, as opposed to the product itself, in order to "approve reasonably precise specifications" under the first element of the federal government contractor defense?

*See* Def. Motion, ECF No. 1298 at 11.  Neither of these proposed questions justifies an interlocutory appeal of the Summary Judgment Order.

For starters, Defendants' first proposed question mischaracterizes the Court's ruling on *Boyle's* "uniquely federal interest" requirement and, thus, is not a question that "was specified in" the Summary Judgment Order.  The Court's decision was not premised on the absence of a contract requiring Aearo to "adopt" the allegedly defective design features, although the Court did observe that one case cited by Defendants involved essentially that scenario.  *See* ECF No. 1280 at 32 (discussing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76 (2d Cir. 2008)).  Instead, the Court found that the design defect claims in this litigation do not implicate a "uniquely federal interest" under *Boyle* because "*no aspect* of the design for the CAEv2 was ever the subject of a procurement contract with the Army."  *See* ECF No. 1280 at 55 (emphasis added).  Accordingly, framed accurately and in context, the Court's ruling would present the following question for purposes of § 1292(b):

> Does a products liability dispute between private parties arising from an allegedly defective design implicate a "uniquely federal interest" under *Boyle* where no aspect of the product's design was ever the subject of a procurement contract with the United States?

This reformulation of the issue accurately identifies a "pure question of law" regarding a key element of the common law government contractor defense that the Eleventh Circuit could "decide quickly and cleanly" without any need to delve into the summary judgment record.  *See Mamani*, 825 F.3d at 1312.

If the propriety of an interlocutory appeal depended solely on that abstract legal issue, the Court might consider certifying the Summary Judgment Order. It does not, however, because the Court also found the evidence insufficient as a matter of law to satisfy the first element of the *Boyle* test for significant conflicts, which, as discussed more fully below, is a finding unsuitable for interlocutory review. Consequently, a favorable appellate ruling for Defendants on the reformulated first question would not "materially advance the ultimate termination of the litigation," *see* 28 U.S.C. § 1292(b), or "substantially reduce the amount of litigation" necessary on remand. *See McFarlin*, 381 F.3d at 1259.

Defendants' second proposed question fails the § 1292(b) standard for several reasons. As an initial matter, Defendants yet again seek to certify a question that does not accurately reflect the Court's decision and, this time, they mischaracterize the underlying record too. The Court did not find, as a "pure, controlling" matter of law, that the government's meaningful review of production samples—as opposed to detailed descriptions or design drawings—could *never* demonstrate government approval of reasonably precise specifications in a "continuous back and forth" case. Indeed, if, for example, sufficiently "extensive negotiations" and "exchange[s] of views" between the government and a contractor about the allegedly defective design features of a production sample were reflected in a record, the *Boyle* test might well be satisfied. *See* Summary Judgment Order, ECF No. 1280 at 35-36

(quoting *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 701 (4th Cir. 1989)).  The same might conceivably be true where the evidentiary record demonstrated that the government "tested or otherwise quantitatively analyzed" the allegedly defective design features of a production sample.  *See id*. (citing *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1352 (11th Cir. 2009); *Getz v. Boeing Co.*, 654 F.3d 852, 863 (9th Cir. 2011)).  However, as was plainly articulated in the Summary Judgment Order, nothing remotely close to either of these theoretical scenarios was present in the summary judgment record for this litigation.[2]  Thus, the Court was not called upon to—and did not—make a "pure, controlling" legal determination regarding the viability of the government contractor defense where the government was shown to have substantively reviewed and evaluated the allegedly defective design features of a production sample.  There simply was no evidence to support that finding.[3]  Consequently, consistent with well-settled government contractor

---

[2] *See, e.g.*, Summary Judgment Order, ECF No. 1280 at 38 ("[N]one of the[] design details were ever shared with Army officials.  And rather than engaging with the Army on the specifics of how the CAEv2 would be configured, Aearo simply 'put together the parts in a way [it] thought could work for the military.'"); *see id*. at 40 ("It is undisputed that Dr. Ohlin never received the existing detailed design drawings or descriptions, and there is no evidence that [Dr. Ohlin] evaluated the second production sample in any meaningful way.  The Court may not speculate about what he may or may not have done to evaluate that sample."); *see id*. ("At most, the evidentiary record establishes that Dr. Ohlin 'rubber stamped' the second production sample and, thereafter, the Army began purchasing and using it.").

[3] To the extent Defendants are now arguing there was *some* evidence to support such a finding, that argument fails to justify interlocutory review under § 1292(b).  Even if true, it would create (at most) a question of fact, which is not a basis for certification.  *See McFarlin*, 381 F.3d at 1258 ("[The term question of law] does not mean . . . any question the decision of which requires rooting through the record in search of the facts or genuine issues of fact.").  In any event, the

defense jurisprudence in the Eleventh Circuit and elsewhere, the Court was left to comb the record for evidence that the Army received and substantively reviewed Aearo's detailed descriptions or design drawings for the CAEv2. There was none. Accordingly, the Court found the evidentiary record insufficient to satisfy the first element of the *Boyle* test for significant conflicts. Appellate review of that finding would require the Eleventh Circuit to decide whether this Court "properly applied settled [government contractor defense] principles to the facts or evidence of this particular case." *See Nice v. L-3 Commc'n Vertex Aerospace LLC*, 885 F.3d 1308, 1313 (11th Cir. 2018). "That case-specific inquiry does not present a pure question of law but a mixed one of law and fact," *see id.*, which is "[t]he antithesis of a proper § 1292(b) appeal," *see McFarlin*, 381 F.3d at 1259.

Defendants have also failed to demonstrate substantial grounds for difference of opinion regarding the issue they seek to certify. The "substantial grounds for difference of opinion" condition is met where "the issue is difficult and of first impression, a difference of opinion as to the issue exists within the controlling circuit, or the circuits are split on the issue." *United States ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1378-79 (N.D. Ga. 2010). However, the lack of authority on an issue or an argument that the district court's

---

summary judgment record here does not support even an inference that "substantive review and approval" of the allegedly defective design feature of the production sample occurred.

ruling is incorrect, without more, is insufficient to satisfy this standard. *See id.* at 1279. Instead, a court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *See Georgia State Conference of NAACP v. Fayette Cty. Bd. Of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013).

Defendants' arguments in opposition to the Court's ruling on the first element of the *Boyle* test for significant conflicts fall far short of this standard. The two cases they offer as "inconsistent or in tension with" the Summary Judgment Order, *see* Def. Mot., ECF No. 1298 at 7-8— *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83 (2d Cir. 1993) and *Dowd v. Textron, Inc.*, 792 F.2d 409 (4th Cir. 1986)—have no place with respect to this record. Neither is a "continuous back and forth" case, which is how Defendants framed this litigation in their summary judgment briefing.[4] And, more obviously, both cases hinged on post-design, post-production evidence showing that the government knew about and *studied the precise design defect at issue*, exercised discretion in choosing a specific remedial action, and continued to

---

[4] Defendants maintained that the Army's participation in the CAEv2's design process went "far beyond" the government involvement found sufficient to satisfy *Boyle* in "continuous back and forth" cases in the Eleventh Circuit. *See* Def. MSJ, ECF No. 1071-68 at 29-31 (relying on *Harduvel v. Gen. Dynamic Corp.*, 878 F.2d 1311, 1319-20 (11th Cir. 1989) and *Brinson*, 571 F.3d at 1350); *see also* Def. Reply, ECF No. 1101-6 at 5 ("In light of th[e] record, there is no question that the U.S. military, through Ohlin, 'approved' the length of the CAEv2 after a substantive back-and-forth with Aearo.")

reorder and use the same product without any change to its design. As was noted in the Summary Judgment Order, "[t]here is no such evidence in this litigation." *See* ECF No. 1280 at 35 n.29 (citing *Brinson*, 571 F.3d at 1353-56; *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 94 (2d Cir. 2008)). Nor was there any argument to that effect, as Plaintiffs correctly note. Defendants cannot now, after reviewing the Court's decision, refashion the record, their theory of the defense and the legal landscape in an attempt to create a legal question for certification where none exists.

Lawyers should expect that if they cite to a case for a particular proposition, the court will read that case. Likewise, the court should be able to expect that lawyers who cite those cases will have read them. It is difficult to imagine the latter happened here, given the extent to which the outcome-determinative facts in *Lewis* and *Dowd* are wholly absent from the record in this litigation. In *Lewis*, the Air Force observed that certain steel cables in its F-111 aircrafts were susceptible to corrosion, investigated that precise problem, determined the source was an alleged design defect in the composition of the cables' outer coating, and decided that changing its maintenance manuals and replacing existing cables with new (but otherwise identical) steel cables was an adequate corrective response. *See* 985 F.2d at 89. In *Dowd*, an alleged defect in the design of an Army helicopter's rotor system allowed the rotor blades to strike and sever the rotor mast (a problem known as mast bumping), causing a fatal crash. *See* 792 F.2d at 410. The evidence established that

the Army had previously investigated the mast bumping problem, prepared a report on forty-six instances of mast bumping over a five-year period, published a "technical risk assessment report" recommending corrective action in the form of educating pilots about the risk and studying the problem further, exchanged information about the rotor system's design with the manufacturer, rejected the manufacturer's three proposed design modifications aimed at preventing mast bumping, and—interestingly enough—nevertheless contractually required the manufacturer to continue installing the same rotor system with the same alleged design defect in subsequent helicopters manufactured for the Army. *See id.* at 411-12.

There is not even a hint of support in *Lewis* or *Dowd* for Defendants' position that merely "looking at a sample of [a] product" can constitute meaningful review and approval of an allegedly defective design feature. And no reading of those cases is "inconsistent or in tension with" this Court's summary judgment findings that the Army did not issue or receive and substantively review detailed descriptions or drawings of the individual component parts of the CAEv2, or of how those parts should or would be integrated together into a finished product, and that the Army did not otherwise meaningfully evaluate the design features at issue in this litigation. Defendants obviously disagree with the Court's conclusion, but they have not come

close to identifying a truly substantial ground for difference of opinion among courts on the issue.

Based on the foregoing, Defendants have failed to carry their burden of establishing that exceptional circumstances justifying interlocutory appeal exist under the standard set forth in § 1292(b).  The dispositive question—whether, as this Court found, the evidence was insufficient as a matter of law to establish the Army meaningfully reviewed and approved reasonably precise specifications for the design defects at issue here—is not a purely legal one that can be "lift[ed] . . . out of the details of the evidence" and quickly resolved in the abstract, resulting in substantially less litigation on remand.  *See McFarlin*, 381 F.3d at 1259.  To resolve it will require a deep dive into the voluminous record, as this Court has done, and an application of well-settled law to those highly specific facts.[5]  Such inquiries are wholly unsuitable for interlocutory appeal, *see id*., even where, as here, the dispositive question involves a determination of whether "sensitive [military] decisions" are implicated, *see Nice*, 885 F.3d at 1313.

Finally, no matter when or how these reformulated questions are resolved on appeal, the result will have no impact on the vast majority of claims in this litigation.[6]

---

[5] An even deeper dive into even murkier factual waters would be required to resolve *Boyle's* second and third elements in the context of this litigation.

[6] "Only three of [Plaintiffs'] 16 claims . . . depend solely on the CAEv2's design defects and/or 3M's [alleged] failure to warn about the CAEv2's defects and dangers."  *See* Pl. Response, ECF No. 1326 at 5-6.

An immediate appeal would unjustifiably extend, rather than substantially shorten, the time, effort and expense required to adjudicate those claims. *See McFarlin*, 381 F.3d at 1259; *Prado-Steiman*, 221 F.3d at 1276 ("[I]nterlocutory appeals are inherently 'disruptive, time-consuming, and expensive.'"). On the whole, interlocutory review is unwarranted. Defendants will have an opportunity to appeal the summary judgment decision after entry of final judgment in an individual case—which could be as early as April 2021—but not now. The motion for 28 U.S.C. § 1292(b) certification of the Summary Judgment Order is denied.

**SO ORDERED**, on this 17th day of August, 2020.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**