## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19-md-02885-MCR-GRJ **PUBLIC VERSION - REDACTED** |
| This Document Relates to All Cases | ) ) ) ) | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION AND <u>SUPPORTING MEMORANDUM OF LAW</u>**

Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate, LLC, and Aearo, LLC (collectively, "Defendants") move this Court for entry of a protective order pursuant to Federal Rule of Civil Procedure 23(c) narrowing the scope of Plaintiffs' July 27, 2020 Rule 30(b)(6) Notice of Deposition ("Notice").

Plaintiffs have already conducted three Rule 30(b)(6) depositions in October, November, and December of 2019, spanning over twenty hours of testimony on over forty topics. As detailed below, Defendants and their counsel prepared diligently for those depositions. Each of Defendants' three Rule 30(b)(6) witnesses conducted numerous interviews of other employees and engaged company employees to spend hundreds of hours preparing tabbed, organized binders and spreadsheets to support their testimony.

On July 17, 2020, Plaintiffs' leadership counsel sent Defendants' counsel an email requesting a Rule 30(b)(6) deposition on new topics not addressed in the prior three Rule 30(b)(6) depositions—specifically, a "30(b)(6) on issues related to TJR Aearo Mexico as well as 3M's corporate net worth." Defendants have begun preparing a 30(b)(6) witness on various TJR Aearo Mexico topics, and the corporate net worth issues have been part of a separate track in accordance with direction from the Court.

However, two weeks later, Plaintiffs reversed course and served a Rule 30(b)(6) deposition notice (the "Notice") covering topics that go well beyond those referenced in Plaintiffs counsel's July 17, 2020 email, including topics that are duplicative of the October, November and December 2020 Rule 30(b)(6) depositions into which Defendants devoted enormous resources.

Nonetheless, Defendants have agreed to produce a Rule 30(b)(6) witness (Annette Childress) in response to the four topics in Plaintiffs' Notice that relate to TJR Aearo Mexico—*i.e.*, a topic not already covered. But Ms. Childress cannot reasonably cover a deposition re-opening the October-December topics, which span the breadth of the case and required three witnesses (Mr. Moses, Mr. Myers, and Mr. Berger) when they were covered the first time. Moreover, it would be unreasonable to require a fourth Rule 30(b)(6) deposition on topics Plaintiffs had the opportunity to inquire about during the prior three Rule 30(b)(6) depositions.

Accordingly, there is good cause to limit Plaintiffs' Notice, as the additional topics contained therein are redundant and improper for the reasons stated below. Federal Rule of Civil Procedure 30(b)(6) is subject to the ***reasonableness*** limits of Rule 26(c). To be sure, Plaintiffs will be able to point to instances where Defendants' Rule 30(b)(6) deponents did not achieve ***perfection*** in their testimony, notwithstanding their extensive efforts.  But reasonableness—not perfection—is the standard under the Federal Rules.  To the extent Plaintiffs' response quotes portions of those depositions, Defendants respectfully request that the Court review the entirety of those depositions (if not line-by-line, then in general), to obtain a sense of the enormous effort that 3M and its employees expended in connection with Rule 30(b)(6) depositions.  *See* Ex. 3, 8, 9, and 16. Additionally, Defendants have prepared a chart highlighting the overlap of the current topics with the previous topics on which Defendants offered witnesses to testify. *See* Ex. 27.

In the alternative, if the Court determines that any additional Rule 30(b)(6) testimony is appropriate on any of the contested topics, Defendants request the opportunity to designate as 30(b)(6) testimony prior testimony from the numerous fact depositions that Plaintiffs have already taken.  A list of the twenty-two fact depositions that Plaintiffs have already taken is attached hereto as Exhibit 1.

In support of this motion, Defendants state as follows:

## BACKGROUND

On July 17, 2019, Plaintiffs served their first 30(b)(6) deposition notice, seeking testimony on thirty-four topics.  Dkt. No. 504.  Subsequently, on August 2, 2019, Plaintiffs served a second 30(b)(6) notice, seeking testimony on an additional seventeen topics.  Ex. 2, 8/2/2019 Plaintiffs' Notice of 30(b)(6) Deposition.  After meeting and conferring on the scope of the topics, Defendants agreed to produce three witnesses to testify.  The Rule 30(b)(6) depositions included topics related to the general contractor defense but also many other topics beyond that defense.  This was consistent with the Parties' Rule 26(f) report to the Court, which memorialized that the parties would pursue not only "general contractor" discovery but also "generic" discovery in this phase; only "case-specific" discovery was excluded.  Dkt. No. 434 Rule at 6 ("The Parties agree that generic discovery from Defendants and non-parties can fully proceed during this period, despite the deferral of case-specific discovery.").  Indeed, as the annotated transcripts provided with this memorandum reflect, the topics contained in Plaintiffs' prior notices, and the

testimony provided in connection with such notices, went well beyond the government contractor defense. *See* Ex. 3, 8, 9, and 16.

A. **Defendants Undertook an Extraordinary Burden To Produce Witnesses In Response To Three Separate 30(b)(6) Notices Propounded By Plaintiffs Containing Over 40 Topics.**

Defendants proffered three witnesses—Elliott Berger, Brian Myers, and Doug Moses—to address the topics in Plaintiffs' prior Rule 30(b)(6) notices. Significant time and effort was expended preparing and educating these witnesses. Among other things, to fully address the topics in Plaintiffs' prior notices, Defendants prepared multiple spreadsheets and binders with responsive information, as described below.

Indeed, Defendants' witnesses and employees—not to mention its attorneys— spent weeks preparing for these depositions, in order to provide Plaintiffs with the information they sought.

For example, Mr. Myers testified that he spent "seven full days, eight or nine hours a day"—not including numerous tasks that he asked other 3M employees to perform—preparing for a 30(b)(6) deposition on packaging and labeling, topics which Plaintiffs now seek to repeat. *See* Ex. 3 at 20:8-25; 22:4-25:14, 10/18/2019 Myers 30(b)(6) Deposition Transcript. Mr. Myers spent approximately 20 hours interviewing approximately 20 people for his deposition, "in some cases multiple times, just to try to be able to answer the questions that you've put to me." *Id.* at

26:4-19.  Those interview notes are attached as Exhibit 4.  *See* Ex. 4, Myers 30(b)(6)

Deposition Ex. 5.

Mr. Myers also brought numerous, organized binders to his deposition—

comprising thousands of pages of responsive information—to address Plaintiffs'

Rule 30(b)(6) topics, including:

- One binder including: (i) the notes of the approximately 20 interviews Mr. Myers conducted, (ii) a section containing documents relating to packaging and labeling, (iii) a section containing organizational charts, (iv) a section relating to the creation of a National Stock Number, (v) a section relating to labeling instructions from the government, (vi) a section relating to government procurement contracts, (vii) a licensing agreement, (viii) distributor documents, and (ix) documents relating to the acquisition of Aearo.

- Two massive binders Mr. Myers and Mr. Moses brought to their depositions containing the results of Mr. Myers and Mr. Moses asking two employees (David Viele and Jennifer Letch) to gather approximately fifty categories of data on *every sale of the CAEv2 over the past twenty years*. Ex. 3 at 22:4-23:9, 31:8-32:9.  Defendants compiled that information into spreadsheets, which were provided at the deposition.   Gathering this information was a significant undertaking.  3M purchased Aearo in 2008, years after Aearo first sold the CAEv2 to the government.  Thus, to gather sales and distribution information in response to Plaintiffs' Rule 30(b)(6) requests, Defendants needed to harvest data from numerous different databases: (i) SAP for the legacy Aearo data, and (ii) WDSR (Worldwide Daily Sales Reporting) and GSDW (Global Sales Data Warehouse).  Data from the Aearo/SAP database is reflected in the Excel spreadsheet bates labelled 3M_MDL000393647.  *See* Ex. 5.  Data from the 3M databases is reflected in the Excel spreadsheet bates labelled 3M_MDL000393651. *See* Ex. 6.  Mr. Myers also produced a glossary that breaks down and describes each column in the spreadsheets, including where available the following information responsive to Plaintiffs' Rule 30(b)(6) deposition topics (where available) such as: (i) dates of sales and orders; (ii) price; (iii) quantity of units sold; (iv) entities who received shipments; (v)

purchaser identity; (vi) shipping destination; and (vii) 3M/Aearo representative involved, where available. *See* Ex. 5 at 2-3.

- Another binder Mr. Myers prepared for his deposition including "bills of materials" for each Combat Arms related product "that we asked David Viele to pull. And you can see they're indexed by product code, and later we'll probably want to look at those so I can maybe help you understand what fits with packaging materials." Ex. 3 at 32:19-25.

- Another binder Mr. Myers prepared containing "actual artwork, or examples of inserts, those kinds of things, which were materials used in packaging. And we tried to arrange things in a way that was progressive, so where did we start, where did we end, and where did we go through along the way." *Id.* at 33:1-7.

- Another binder containing a "more extensive version" of the packaging and labelling materials Mr. Myers asked 3M employees to pull, including "things that we pulled from that storage facility and provided." *Id.* at 34:2-3.

These materials were compiled not only by Mr. Myers but also by many other 3M employees at his request. For example:

- Mr. Myers asked David Viele and Jennifer Letch to prepare data on every Combat Arms sales transaction—Mr. Viele for data before the 3M acquisition and Ms. Letch for data after the acquisition. *Id.* 22:-24:20. Mr. Viele and Ms. Letch, and the employees they directed spent hundreds of hours working with several 3M employees, various 3M databases, and the Aearo SAP system.

- Mr. Myers asked Christine Dunn to gather packaging materials and artwork. *Id.* at 23:9-14. Because there had been a server crash, Mr. Myers and Ms. Dunn went so far as to gather materials from an Iron Mountain storage facility. *Id.* at 23:9-24:5. "As a result of that, what we did was we actually asked for her to provide an index of where likely documents, actual physical specimens, might be that we have in a place called Iron Mountain, someplace outside of Indianapolis, so where hard -- hard, physical, tangible things were stored. And those were pulled, and we've also produced those as a -- as a part of the materials." *Id.* 23:21-24:20.

7

- Mr. Myers also asked David Viele to "pull not just some of the sales information data, but also he was very helpful in being able to pull bills of material. And so bills of material can help us track what items went into a finished good that was sold and when revisions of those documents may have occurred. And I thought that was appropriate relative to trying to understand the packaging and the labelling and the inserts that you has asked about here." *Id.* at 24:8-20.

- Mr. Myers also asked "about PO documents and those kinds of things and talked with several people about those. Dawn Smith was one of them." *Id.* at 24:24-25:25:14.

- Mr. Myers "talked with a guy named Brian Czarnota about shipping documents, and you'll see examples of that later on." *Id.* at 25:4-7.

- Moreover, because "some of these products were sold through a different division within 3M," Mr. Myers also spoke to "the lady who was really managing that part . . .a lady named Lindsay Adams." *Id.* at 25:8-14.

Similarly, Mr. Moses spent countless hours preparing for his 30(b)(6) deposition. Mr. Moses kept forty-seven pages of detailed notes on multiple interviews he conducted to prepare for the 30(b)(6) deposition, which were provided to Plaintiffs. *See* Ex. 7, 10/17/2019 Moses 30(b)(6) Deposition Ex. 3. Additionally, Defendants prepared eight binders for Mr. Moses. *See* Ex. 8 at 36:25-37:7, 10/17/2019 Moses 30(b)(6) Deposition Transcript. These binders included information on:

- Sales and Distribution Spreadsheet of the CAEv2;

- Bills of Materials Provided by Dave Viele;

- 3M SKU Data;

- Shipping Agreements;

- Organizational Charts;

- Distributor Agreements;

- Sales & Business Plans; and

- Marketing Materials.

Like Mr. Myers and Mr. Moses, Mr. Berger spent numerous hours preparing for his 30(b)(6) deposition.  Mr. Berger testified that he met with his attorneys to prepare by reviewing documents and conducting interviews of current and former employees to understand their recollection. *See* Ex. 9 at 40:9-41:8, 11/13/2019 Berger 30(b)(6) Deposition Transcript.  Indeed, Mr. Berger began preparing for his November 13, 2019 deposition in September 2019. *Id.* at 41:11-16.

### B.   Plaintiffs Elected To Proceed With 30(b)(6) Depositions Despite Knowing That Defendants' Document Productions Were Ongoing.

Plaintiffs took the prior Rule 30(b)(6) depositions knowing that not all documents had been produced.  Indeed, Plaintiffs knew this better than anybody, because Plaintiffs have continued to add custodians just prior to and after the September 30 substantial completion deadline.  Some of these custodians have been allowed by the Court; other have been denied by the Court.  Importantly, as the Court has explained, "every time you add new documents to the TAR corpus, it goes back and re-rates all of the other documents, and you can end up having additional, quote, 'relevant' documents produced that relate to custodians who their documents have

already been produced and, in some cases, individuals have already been deposed." Ex. 10 at 18-19, 6/10/2020 Hr'g Transcript.

At a telephonic conference held on October 10, 2019, before any Rule 30(b)(6) depositions had occurred, Plaintiffs voiced complaints about Defendants' document productions. The Court asked Plaintiffs' counsel if they wished to defer the Rule 30(b)(6) depositions in light of the concerns they voiced about ongoing document productions. Plaintiffs' counsel elected to move forward with the October-November Rule 30(b)(6) depositions. Similarly, during a call with the Court on November 5, 2019, the parties discussed whether to move forward with Mr. Berger's Rule 30(b)(6) deposition, notwithstanding ongoing document productions, including those resulting from Plaintiffs' addition of numerous custodians. Plaintiffs chose to begin Mr. Berger's Rule 30(b)(6) deposition in November, while deferring his personal deposition until December.[1]

**C.      The Court Directs Plaintiffs At The January 2020 CMC To Address Any Application To Re-Open Rule 30(b)(6) Depositions "Now," But Plaintiffs Make No Such Application.**

After the Rule 30(b)(6) depositions occurred, the interaction between ongoing document productions and Rule 30(b)(6) depositions came up at the January 14, 2020 CMC. Plaintiffs took issue with certain documents produced after the Rule

---

[1] The second day of Mr. Berger's Rule 30(b)(6) deposition was also completed in December.

30(b)(6) depositions.  The Court indicated that, if Plaintiffs were to seek to re-open any Rule 30(b)(6) deposition because of document production issues, "we need to deal with that now" (*i.e.*, in January of 2020):

> PLAINTIFFS' COUNSEL: The one issue that I alluded to in chambers, as Your Honor is aware, ***there's been significant document production both before 9/30/2019 and after the substantial completion date which is 9/30/19***.  We had significant productions for the witnesses when we took their testimony in November, December, but there have been documents produced for those witnesses after that point in time. Candidly, we're assessing this, and there are significant ones.

> JUDGE RODGERS: Well, what I'm going to be asking you to do, and if I need to I'll impose a deadline, but I need you all to assess whether you feel there's a need for this to be brought to the Court's attention. ***I don't want to wait until March*** and you all decide, oh, wait a minute, we need to redepose Elliot Berger, for instance. . . .

> JUDGE RODGERS: One thought I'm having is, ***if these are 30(b)(6) witnesses*** -- I know some of the 30(b)(6) were hybrid, they were 30(b)(6) plus an individual fact witness with personal knowledge of the facts. ***But while I could see perhaps a continuation of a deposition for that person if the documents were not produced, if it's 30(b)(6), we need to deal with that now***.

> PLAINTIFFS' COUNSEL: Fair enough, Your Honor, we'll focus on that. Those are broad buckets of testimony and we'll try and prioritize that.

> JUDGE RODGERS: Okay. ***I don't want the 30(b)(6) -- I don't want that lingering.***

> PLAINTIFFS'       COUNSEL:       Okay,       thank       you.

Ex. 11 at 25-27, 1/14/2020 CMC Hr'g Transcript (emphasis added).

Seven months later, on July 17, 2020, Plaintiffs alerted Defendants that they intended to seek an additional 30(b)(6) deposition on "issues related to TJR Mexico/Aearo Mexico as well as 3M's corporate net worth." Ex. 12, 7/17/2020 B. Aylstock Email.

Notwithstanding Judge Rodgers' clear direction at the January 2020 CMC, Plaintiffs subsequently served Defendants with the current Rule 30(b)(6) Notice on July 27, 2020, seeking testimony on twenty-two broad topics with twenty-seven sub-topics. Ex. 13, 7/27/2020 Plaintiffs' Notice of 30(b)(6) Deposition. Only six of the topics are related to TJR Mexico/Aearo Mexico or 3M's corporate net worth.

Defendants plan to offer a Rule 30(b)(6) witness—Annette Childress—on the topics in the Notice relating to TJR Mexico/Aearo Mexico. But neither Ms. Childress nor the other fact witnesses whose depositions remain will be able to cover the numerous other topics remaining in the Notice.

The remaining sixteen topics broadly seek corporate testimony on the blister pack containers of the CAEv2, all contacts between any 3M agent and any individual Duty Station to which any Bellwether Plaintiff was assigned, 3M's use of its patents, several topics related to 3M's marketing, and safer alternative designs, among others. As described below, these reamining topics are overbroad and duplicative of prior 30(b)(6) topics and testimony. On August 11, 2020, the Parties held a telephonic met and confer on the scope of the Notice. On August 12, 2020, Plaintiffs

agreed to withdraw or narrow some of the topics.  *See* Ex. 14, 8/12/2020 Letter from

Amanda Hunt.  Defendants responded to the letter on August 13, 2020 seeking

clarification on a number of the issues raised by Plaintiffs.  *See* Ex. 15, 8/13/2020

Email from J. Bhimani.  The parties continued to meet and confer on the scope of

the notice but were unable to resolve all of their disputes.[2]

## POINTS AND AUTHORITIES

Under Federal Rule of Civil Procedure 26(c)(l), the Court "may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense."  Furthermore, Rule 26(b)(2)(C) requires a

court to limit the frequency or extent of discovery if "the discovery sought is

unreasonably cumulative or duplicative," or "the party seeking discovery has had

ample opportunity to obtain the information by discovery in the action."

A protective order is also proper where, as here, the topics in a Rule 30(b)(6)

notice are not particular and do not "identify the outer limits of the areas of inquiry

noticed. . . ." *Beaulieu v. Bd. of Tr. of Univ. of W. Fla.*, 2007 WL 9734886, at \*4

(N.D. Fla. Oct. 4, 2007) ("Plaintiff's 'notice' was also overbroad because it did not

specify with reasonable particularity the matters on which examination was

---

[2]   During the meet and confer process, Plaintiffs withdrew Topic Nos. 1, 4, 6, and
8 in Plaintiffs' Notice. The parties also agreed to set aside Topic Nos. 21 and 22
pending further discussions between the parties. Finally, the parties agreed to a
resolution of Topic Nos. 7 and 9.

requested."); *See Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.").

Good cause exists here to limit the scope of Plaintiffs' Rule 30(b)(6) Notice.

### A. Plaintiffs' Serial Rule 30(b)(6) Deposition Requests Are Improper, Particularly Where Plaintiffs Did Not Move to Compel After the Initial Depositions or the January 2020 CMC.

Plaintiffs cannot seek 30(b)(6) depositions on duplicative topics when they have been given ample opportunity to obtain the discovery now sought. *See Blackwell v. City & Cty. of San Francisco*, 2010 WL 2608330, at *2 (N.D. Cal. June 25, 2010); *Bondhus v. Provident Life & Accident Ins. Co.*, 2008 WL 11331762, at *5 (S.D. Fla. Sept. 17, 2008) (granting motion for protective order based on cumulativeness and redundancy).

In *Blackwell*, the court denied the plaintiff's request for leave to take a second 30(b)(6) deposition. *Blackwell*, 2010 WL 2608330, at *2. The court concluded that the plaintiff "had an opportunity to obtain the information" in the prior 30(b)(6) deposition and that the plaintiff "should have been able to cover the subject matters identified in the notice for the second deposition at the time of the first deposition." *Id.* Similarly here, the duplicative topics in Plaintiffs' Notice includes topics that should have been covered in Plaintiffs' previous 30(b)(6) depositions.

The topics on which Plaintiffs now seek a fourth 30(b)(6) deposition have been extensively covered in prior 30(b)(6) depositions.  To assist the Court, Defendants are providing with this brief annotated copies of the transcripts from those prior depositions showing examples of the testimony previously provided on Plaintiffs' requested topics.  *See* Ex. 8, 10/17/2019 Moses 30(b)(6) Deposition; Ex. 3, 10/17/2019 Myers 30(b)(6) Deposition; Ex. 9, 11/13/2019 Berger 30(b)(6) Deposition; Ex. 16, 12/12/2019 Berger 30(b)(6) Deposition.  These examples are illustrative though by no means exhaustive. Additional arguments relating to each topic are also addressed further below.

To the extent Plaintiffs contend that the previous Rule 30(b)(6) testimony was insufficient or non-compliant with the scope of the deposition notice, Plaintiffs' proper course of action was to move to compel better answers, *not* to serve a duplicative Rule 30(b)(6) notice.  *Bondhus v. Provident Life & Accident Ins. Co., No*. 08-20538-CIV, 2008 WL 11331762, at *1 (S.D. Fla. Sept. 17, 2008).  As the Court explained in *Bondhus*:

> Defendant's Motion for Protective Order of Provident's 30(b)(6) Witness was GRANTED strictly based on cumulativeness and redundancy. *See* Fed. R. Civ. P. 26(c). Plaintiff already had an opportunity to depose Provident's corporate representative on May 28, 2008. This Court sees no compelling reason to allow an 30(b)(6) deposition from Provident that seeks to probe many of the issues already addressed at the earlier deposition. Plaintiff's argument that the earlier 30(b)(6) witness's answers were insufficient and non-compliant with the scope of the deposition notice was ***waived when Plaintiff did not timely move to compel better answers***.

15

*Id.* (emphasis added.); *see also Sevi v. Nationstar Mortg., LLC*, 2015 WL 12911709, at *1 (M.D. Fla. Feb. 4, 2015), *aff'd*, 2015 WL 1242795 (M.D. Fla. Mar. 18, 2015) ("Plaintiff did not promptly move to compel Nationstar to produce a corporate representative able to answer the questions at issue pursuant to Federal Rule of Civil Procedure 37.").  At the very latest, Plaintiffs should have moved to compel after the Court raised the issue at the January 2020 CMC.

Furthermore, Mr. Berger, Mr. Myers and Mr. Moses have already been deposed in both in this action and in the *Moldex* action.  Under Pre-trial Order 13, absent a showing of good cause, "an individual designated to testify as both a corporate representative and in his or her individual capacity may not be deposed for more than a total of two (2) days of 7.5 hours of testimony per day."  Dkt. No. 554 at ¶ 8.  Indeed, the Parties have already briefed the number of days for which Mr. Berger, Mr. Myers, and Mr. Moses should be subject to depositions.  *See* Ex. 17, 18, Parties' 10/15/2019 Plaintiffs' Letter Briefs on Deposition Timing.  Following that briefing, the Court ruled:

> The Court's rulings on the time limits for the depositions of certain witnesses are as follows:
>
> 1. <u>Doug Moses</u>:  On October 17, Plaintiffs may depose Mr. Moses as corporate representative for one 7.5-hour deposition day.  Plaintiffs may depose Mr. Moses in his individual capacity for one 7.5-hour deposition day during the first three weeks of December 2019.

2. <u>Brian Myers</u>:  On October 18, Plaintiffs may depose Mr. Myers as corporate representative for one 7.5-hour deposition day.  For good cause shown, Plaintiffs may depose Mr. Myers in his individual capacity for two consecutive 7.5-hour deposition days during the first three weeks of December 2019.

3. <u>Dr. Elliott Berger</u>:  On November 11, Plaintiffs may depose Dr. Berger as corporate representative for one 7.5-hour deposition day.  For good cause shown, Plaintiffs may depose Dr. Berger in his individual capacity for two consecutive 7.5-hour deposition days on November 13 and 14.

Ex. 19, 10/16/2019 Email re Rulings on Deposition Times for Moses, Myers, and Berger.

At the January 13, 2020 CMC, Plaintiffs raised concerns about Defendants' document production.  The Court addressed these concerns noting, "I don't want to wait until March and you all decide, oh, wait a minute, we need to redepose Elliot Berger, for instance." Ex. 11 at 26, 1/14/2020 CMC Hr'g Transcript.  The Court further stated:  "But while I could see perhaps a continuation of a deposition for that person if the documents were not produced, if it's 30(b)(6), we need to deal with that now."  *Id.* at 27.  But it was not until July 27, 2020 that Plaintiffs sought additional Rule 30(b)(6) testimony on the topics covered by Mr. Berger's, Mr. Myers', and Mr. Moses' previous Rule 30(b)(6) depositions.

**B.   The Court Should Find Good Cause To Prevent Further 30(b)(6) Testimony on Topic Nos. 2, 3, 5, 10, 11, 12, 17, and 18.**

**1.   Topic No. 2**

Topic No. 2 broadly seeks testimony with respect to the "'blister packs' containers of the CAEv2." *See* Ex. 13, 7/27/2020 Plaintiffs' Notice of 30(b)(6) Deposition. This topic was the subject of testimony by Mr. Myers. *See* Ex. 3, 10/18/2019 Myers 30(b)(6) Deposition.

Despite this, Plaintiffs contend that three "gaps" exist in the prior testimony. *See* Ex. 14 at 1-2, 8/12/2020 Letter from Amanda Hunt. First, Plaintiffs seek further testimony on "[t]he specific locations and settings where the Blister Packs were distributed and sold." *Id.* at 2. But Plaintiffs asked Mr. Myers "were the blister packs of the Combat Arms version 2 always sold in a retail sort of situation and they may end up with soldiers, or would they sometimes go directly to the military?" *See* Ex. 3 at 191:13-17, 10/18/2019 Myers 30(b)(6) Deposition. Defendants did not prevent Mr. Myers from answering the question. In fact, Mr. Myers testified that he would "have to check records" in binders he brought to the deposition. *Id.* at 191:22-23. And indeed, the answer to the question was provided in the records that Mr. Myers prepared as a Rule 30(b)(6) witness and brought to his deposition. *See* Ex. 5, 3M_MDL000393647 at entries corresponding to 370-1011 (showing sales); *See* Ex. 3 at 31:21-25, 10/18/2019 Myers 30(b)(6) Deposition ("Binder 6 contains

records of transactions associated with all of the second version products that we could find in that system as sales or in many cases samples.").

Second, Plaintiffs seeks further testimony related to "[t]he chronology and reasoning behind the edits to the Blister Pack labeling with respect to the 'fitting tip.'" *See* Ex. 14 at 2, 8/12/2020 Letter from Amanda Hunt.  Prior to his deposition, Mr. Myers and his team spent hours preparing a binder with packaging and labelling in chronological order, which Mr. Myers brought to his deposition.  *See* Ex. 20, 10/18/2019 Myers 30(b)(6) Deposition Ex. 9; Ex. 3 at 33:1-11, 10/18/2019 Myers 30(b)(6) Deposition. The packaging and labelling binder prepared by Mr. Myers comprised 111 pages.  Plaintiffs questioned Mr. Myers in detail about edits made to the blister pack labeling. *See, e.g., id.* at 173:1-174:13, 184:18-185:7, 194:1-196:22. To the extent Plaintiffs had additional questions on these issues, they could have asked Mr. Myers or moved to compel at the time.  Plaintiffs have pointed to no questions on the chronology of the hundred-plus page packaging and labeling binder prepared by Mr. Myers that Defendants did not allow Mr. Myers to answer.

Third, Plaintiffs seek further testimony related to "[p]atent coverage" with respect to blister packs.  Plaintiffs' request for information relating to "[p]atent coverage" is, among other things, not reasonably particular.  It is unclear what information Plaintiffs seek.  And Plaintiffs have pointed to no questions on this topic that Defendants did not allow Mr. Myers to answer.  Furthermore, Mr. Moses

testified about a number of issues with respect to patents at his 30(b)(6) deposition. *See, e.g.*, Ex. 8 at 223:3-225:4, 414:9-419:11, 10/17/2019 Moses 30(b)(6) Deposition. Regardless, there is no need for a 30(b)(6) deposition to address such issues. Depending on the factual information Plaintiffs seek, and the relevance thereof, a response can be provided with far less burden in the form of an interrogatory response.

**Plaintiffs' Argument About Mr. Myers' Communications With the Technical Group Is A Red Herring**

During his deposition, Mr. Myers—who has held marketing positions—testified that certain issues (*e.g.*, the interpretation of the "Flange Report") were within the realm of the "technical group." And Mr. Myers clearly identified Mr. Berger as a member of the technical group. *See* Ex. 3, at 403:5-15, 10/18/2019 Myers 30(b)(6) Deposition ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

After Mr. Myers' Rule 30(b)(6) deposition in which he identified Mr. Berger as a member of that group, Plaintiffs deposed Mr. Berger for four days, both as a Rule 30(b)(6) witness and in his individual capacity. Plaintiffs had more than ample opportunity to ask Mr. Berger any questions relating to the "technical group."

## 2.   Topic Nos. 3

Topic No. 3 seeks testimony on "[a]ll visits, communications, or other contacts between any 3M agent and any individual Duty Station to which any Bellwether Plaintiff was assigned . . . ."  Ex. 13 at 7, Plaintiffs' 7/27/2020 Notice of 30(b)(6) Deposition.  Plaintiffs' request fails to specify what communications they seek; nor is the request limited by date. Plaintiffs have already had a fulsome opportunity to explore this topic in the context of the Doug Moses' Rule 30(b)(6) deposition.  Defendants made Mr. Moses available to address:

- Topic 1, which included "The national distribution of Defendants' dual-end Combat Arms Earplugs, including any civilian version or non-military version (the "CAE"), through military, civilian, and any other distribution channels, including but not limited to the identity and role of any and all organizations that distribute the CAE nationwide and the manner and method of distribution, from the time they were first distributed to present."  *See* Ex. 21 at Topic 1, 8/8/2019 Defendants' Responses and Objections to Notice of 30(b)(6) Deposition.

- Topic 30, which included "The identity and role of any all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the sales of the Combat Arms Earplug, including but not limited to sales representatives, detailers, regional and district sales managers, and their agents, from the time they were first conceived to present."  *Id.* at Topic 30.

- Topic 5, which included "The manner in which the CAE were/are shipped nationwide, from the time they were first shipped to present."  *Id.* at Topic 5.

- Topic 7, which included "The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the distribution process and/or shipment of the CAE, both national and/or worldwide, from the time they were first distributed to present."  *Id.* at Topic  7.

- Topic 8, which asked "(i) to identify the individuals employed by Defendants who had primary responsibility for communicating with the United States regarding distribution and/or shipment of the CAEV2, to the best of 3M's knowledge based upon their reasonable investigation; and (ii) to describe generally the government communication-related role of those individuals, to the best of 3M's knowledge based upon their reasonable investigation." *Id.* at Topic 8.

- Topic 13, which encompassed "Any and all marketing strategy and campaigns for the CAE, including but not limited to strategies and/or campaigns aimed at the military, civilians or any other potential purchasers and users, from the time they were first conceived to present." *Id.* at Topic 13.

To the extent Plaintiffs had questions with respect to this request, they should had asked them at the prior 30(b)(6) depositions.

In addition to the opportunity afforded at Mr. Moses's deposition, Plaintiffs already have extensive information from the interrogatory responses and spreadsheets Defendants have provided. The Court has previously addressed a similar request in the context of Bellwether Interrogatory Responses. Bellwether Plaintiffs' Interrogatory Nos. 4 and 5 sought identification of each communication relating to the CAEv2 between Defendants and the U.S. Government for each of the Bellwether Plaintiffs' Duty Stations. *See, e.g.*, Ex. 22 at 5-6, 3M's Responses to William Wayman's First Set of Interrogatories. The Court denied Plaintiffs' motion to compel a better response to Interrogatory Nos. 4 and 5. *See* Dkt. No. 1258 at 5. The Court concluded that Defendants' response, and prior responses, were "sufficient" with respect to this topic. *Id.* That ruling is instructive here as well.

22

### 3.    Topic Nos. 5 and 10

Topic Nos. 5 and 10 seek testimony on issues relating to labeling and packaging.  Topic No. 5 seeks testimony on Defendants' "process for determining the language and other information within all published labels and packaging of the 3M Earplugs."  *See* Ex. 13 at 7, 7/27/2020 Plaintiffs' Notice of 30(b)(6) Deposition. Topic No. 10 seeks testimony on "[a]ll communications described in Defendants' October 18, 2019 Rule 30(b)(6) depositions as having taken place between Mr. Myers and the entity or persons referred to as 3M's 'technical group' or 'somebody from technical' or 'technical' . . . ." *Id.* at 8.

Defendants previously produced Mr. Myers as a Rule 30(b)(6) witness to "(i) identify 3M employees who, to the best of 3M's knowledge based upon a reasonable investigation, were involved in the packaging and labelling of CAEV2 earplugs and (ii) describe generally the role of those individuals with respect to packaging and labeling, to the best of 3M's knowledge and based upon a reasonable investigation." *See* Ex. 21 at 20, Defendants' 8/8/2019 Responses and Objections to Notice of 30(b)(6) Deposition. Similarly, Defendants produced Mr. Myers "to describe generally the labelling provided by 3M, to the best of 3M's knowledge and based upon a reasonable investigation." *Id.* at 16. Mr. Myers previously testified extensively on issues related to labeling and packaging.  *See* Ex. 3, 10/18/2019 Myers 30(b)(6) Deposition.  Mr. Myers was also offered "to describe generally 3M's

departments and divisions with responsibility for the marketing, packaging and labeling of the CAEV2." *See* Ex. 21 at Topic 22, 8/8/2019 Defendants' Responses and Objections to Notice of 30(b)(6) Deposition.   Plaintiffs should have addressed these issues during Mr. Myers deposition in October.

With respect to Topic No. 5, Mr. Myers also testified about procedures for labelling and packaging:

- Ex. 3 at 107:23-108:12, 10/18/2020 Myers 30(b)(6) Deposition .

- *Id.* at 109:6-20.

- *Id.* at 171: 10-16

With respect to Topic No. 10 (communications with the "technical group"), Plaintiffs seek to ask follow up questions on testimony given by Mr. Myers on October 18, 2019.  Mr. Myers' communications with the "technical group" (which

includes Mr. Berger) are discussed at page 20, *supra*.   As described therein, after Mr. Myers identified Mr. Berger as being from "the technical group" in his October 2019 deposition, Plaintiffs had three days to question Mr. Berger about the "technical group" or the communications about which Mr. Myers testified. Additionally, Mr. Myers was subsequently deposed in his personal capacity on December 12 and 13, 2019.  Plaintiffs' attempt to seek yet another opportunity for testimony on this topic is improper.  *See State Farm Mut. v. New Horizont*, 254 F.R.D. 227, 235–36 (E.D. Pa. 2008) ("Therefore, the Court cannot grant Defendants leave to conduct additional Rule 30(b)(6) depositions of State Farm, as 'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action,' and has not provided a good reason for failing to do so.").

### 4.   Topic No. 11

Topic No. 11 requests corporate testimony on Defendants' "actual or contemplated use of patents or any other intellectual property protections in order to maintain your monopoly on the 3M Earplugs. . . ."  Ex. 13 at 8, Plaintiffs' 7/27/2020 Notice of 30(b)(6) Deposition.  This topic is irrelevant to any of the claims or defenses at issue in this litigation and would require the Defendants to disclose mental impressions, conclusions, opinions, and legal theory.

Rule 26(b)(1) allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case. . ."  It is unclear how Defendants' use of patents or other intellectual property protections to purportedly "maintain [their] monopoly on the 3M Earplugs" bears any relevance to this litigation.  None of the claims or defenses assert a cause of action on the basis of antitrust violations or anti-competitive conduct.

Furthermore, 30(b)(6) topics aimed at seeking a corporate defendant's legal contentions or legal theories are improper.  *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. Sept. 16, 2002) ("In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories . . . ."); *see also U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.* 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012).  Although Plaintiffs couch Topic Nos. 8 and 11 as seeking 3M's "knowledge," Plaintiffs are "really requesting defendants' mental impressions, conclusions, opinions, and legal theory." *JP Morgan Chase Bank*, 209 F.R.D. at 362.  Topic No. 11 plainly seeks mental impressions, conclusions, and legal opinions as it requests Defendants to disclose strategy related to the use of their patents and intellectual property.  Each of these topics are improper, and the Court should find that good cause exists to prohibit inquiry into these topics. Regardless, Plaintiffs questioned Mr. Moses on this topic. *See, e.g.*, Ex. 8 at 223:3-225:4, 414:9-419:11, 10/17/2019 Moses 30(b)(6) Deposition ███████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████.

### 5.    Topic No. 12

Topic No. 12 broadly seeks identification of "all third-party entities or persons involved in the marketing, advertising, or sale of the 3M Earplugs, and the substance scope, and purpose of any marketing, advertising, or sales campaign relating to the 3M Earplugs . . . ."  Ex. 13 at 9, Plaintiffs' 7/27/2020 Notice of 30(b)(6) Deposition. Defendants previously provided a witness to "describe generally the responsibilities of third parties with respect to the marketing, packaging, and labeling of the CAEV2, to the best of 3M's knowledge and based upon a reasonable investigation."  Ex. 21, Defendants' 8/8/2019 Responses and Objections to Notice of 30(b)(6) Deposition. Mr. Moses provided extensive testimony on these topics.  *See* Ex. 8, 10/17/2019 Moses 30(b)(6) Deposition.  Defendants are unable to decipher what testimony is sought beyond the testimony already provided by Mr. Moses as it pertains to marketing.

### 6.    Topic No. 13

Topic No. 13 seeks testimony related to "Operation COBRA."  Ex. 13 at 9, Plaintiffs' 7/27/2020 Notice of 30(b)(6) Deposition. Plaintiffs fail to specify a relevant time period for the scope of the topic.  In any event, it overlaps with Topic 13 from the October-November depositions, which encompassed "Any and all

marketing strategy and campaigns for the CAE, ***including but not limited to strategies and/or campaigns aimed at the military***, civilians or any other potential purchasers and users, from the time they were first conceived to present." *See* Ex. 21 at Topic 13, 8/8/2019 Defendants' Responses and Objections to Notice of 30(b)(6) Deposition.   According to Plaintiffs, Operation Cobra was a "strategy and/or campaign aimed at the military."   The topic of campaigns directed at the military was extensively covered in Mr. Moses' deposition. *See, e.g.*, Ex. 8 at 56:8-57:1, 110:18-113:24, 115:14-117:4, 121:20-25, 145:7-146:6, 150:21-151:12, 301:7-302:13, 10/17/2019 Moses 30(b)(6) Deposition. But Plaintiffs chose not to ask Mr. Moses the open-ended question:  "What marketing strategies or campaigns are you aware of that were aimed at the military?"  In any event, Plaintiffs have been aware of Operation COBRA through documents produced by Defendants beginning in September 2019 *before* Mr. Moses' 30(b)(6) deposition.   *See, e.g.*, Ex. 23, 3M_MDL000362130_3M_MDL008 (produced on 9/30/2019) (October 2005 email discussing "the possible Combat Arms mailing in conjunction with Operation Cobra.").   Yet Plaintiffs raised no issue related to Operation COBRA with respect to a 30(b)(6) deposition until July 27, 2020.

Plaintiffs contend that they could not have covered topics related to Operation COBRA because additional Operation COBRA "documents were produced long after Mr. Moses' deposition in October 2019."  Ex. 14, 8/12/2020 Letter from

Amanda Hunt.  But at the January 2020 CMC Hearing, the Court asked Plaintiffs to raise any request to re-take Rule 30(b)(6) depositions "now."  *See* Ex. 11 at 25-27, 1/14/2020 CMC Hr'g Transcript.  At the time (in January), Plaintiffs indisputably had sufficient Operation COBRA documents to conduct a Rule 30(b)(6) deposition. Indeed, in Mr. Salon's January 2020 deposition, Plaintiffs used several documents relating to Operation COBRA, and Mr. Salon addressed issues relating to Operation COBRA in some detail.  *See, e.g.*, Ex. 24, 3M_MDL000570157 (produced 11/19/2019; 1/31/2020 Salon Deposition, Ex. 2) (July 2005 email subject line "Operation Cobra" attaching an "Operation Cobra Marketing Support" summary discussing samples (50 pair) for "dual ended plugs" and Peltor ComTac and Eyeware plans too); Ex. 25, 3M_MDL000570155 (produced 11/19/2019; 1/31/2020 Salon Deposition Ex. 5) (July 2005 email with subject line "Combat Arms" and discussing the marketing efforts/plans during the Operation Cobra "re-launch of the Combat Arms plugs offensive approach").

### 7.   Topic Nos. 17 and 18

Topic Nos. 17 and 18 both seek testimony on alternative designs that were considered by the Defendants.  *See* Ex. 13, Plaintiffs' 7/27/2020 Notice of 30(b)(6) Deposition.  Topic No. 17 seeks Defendants' "knowledge with regard to the potential of safer alternative designs of the 3M Earplugs . . . ."  *Id.* at 10-11. Topic 18 seeks Defendants' "discussions and considerations of any Competing Product or

alternative designs for the Combat Arms earplugs (all versions) . . . ." *Id.* at 10. With respect to Topic No. 18, Plaintiffs fail to specify the communications is sought or a relevant time period of the communications on which testimony.

In connection with Plaintiffs' prior Rule 30(b)(6) notices, Defendants have already produced a 30(b)(6) witness (Elliot Berger) to (a) "to testify regarding the design of the CAEv2 as described in the report titled 'How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug'" and (b) "to describe generally the design decisions regarding the CAEv2." *See* Ex. 26, 9/3/2019 Defendants' Responses and Objections to Notice of 30(b)(6) Deposition. Indeed, Plaintiffs' counsel has recognized that design choices were encompassed by their prior notices. *See* Ex. 9 at 175:14-20, 11/13/2019 Berger 30(b)(6) Deposition ("MR. OVERHOLTZ: This has to do with the design choices and who made those design choices in Topic Number 12 and topic number -- and Topic Number 11."). Furthermore, Mr. Berger addressed this exact topic at his November 12, 2019 30(b)(6) deposition. *See, e.g., id.* at 133:11, 120:19-123:25, 139:4-142:5, 156:22-160, 342:13-344:14.

## C. Alternatively, Defendants Should Be Afforded the Opportunity to Designate Fact Witness Testimony as 30(b)(6) Testimony.

To the extent that the Court believes that the topics sought by Plaintiffs' Notice are proper, then Defendants respectfully request an opportunity to designate testimony from prior fact witness depositions instead of taking on the burden of

additional 30(b)(6) depositions.  Courts routinely allow corporate parties to adopt testimony from fact witnesses to satisfy 30(b)(6) obligations.  *See Fraser Yachts Florida, Inc. v. Milne*, 2007 WL 1113251, *2 (S.D. Fla. April 13, 2007) ("[T]here is nothing in the Rule that prohibits a corporation from adopting the testimony or position taken by other witnesses in a case."); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, 2008 WL 11335169, at *2 (M.D. Fla. Jan. 15, 2008).  This is particularly the case here, in light of the number of depositions that have already been taken.

## CONCLUSION

Defendants will offer Ms. Childress to testify on Rule 30(b)(6) Topic Nos. 14, 15, 16, and 19.

However, Federal Rule of Civil Procedure 30(b)(6), like all discovery, is subject to the reasonableness limits of Rule 26(c). In this instance, there is good cause to limit Plaintiffs' Notice since the topics would be redundant, duplicative, unduly burdensome, and improper for the reasons stated above.

DATED:  August 17, 2020                Respectfully submitted,

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

32

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that they met and conferred about the scope of Plaintiffs' Rule 30(b)(6) Notice of Deposition on August 11, 2020. Defendants were unable to resolve their disagreements with Plaintiffs about the scope of the 30(b)(6) topics.

Dated:  August 17, 2020

Respectfully submitted,

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 7,551 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  August 17, 2020

Respectfully submitted,

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert C. "Mike" Brock, hereby certify that on August 17, 2020, I caused a copy of the foregoing to filed through the Court's CM/ECF system, which will serve all counsel of record.


DATED:  August 17, 2020                    */s/ Robert C. "Mike Brock*
                                           Robert C. "Mike" Brock