# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 3:19md2885 |
| This Document Relates to All Cases | ) ) | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## NOTICE TO TAKE DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 9:30 a.m. (Local) on August 28, 2019, Plaintiffs will take the deposition of Defendant 3M Company pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6). The deposition will be taken at Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654.

The deposition will be taken upon oral examination, pursuant to the provisions of Federal Rule of Civil Procedure 30, before a Notary Public or other official authorized to administer oaths, who is not a party to the above-captioned action. Such deposition shall continue from day to day, excluding weekends and holidays, until completed.

**PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by videotape in addition to recording testimony by stenographic method

pursuant to Federal Rule of Civil Procedure 30.

**NOTE:** If the deponent requires the services of an interpreter, you must advise this office in writing no later than ten (10) business days before the date set for the deposition of both the need for the interpreter and the language required.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant 3M Company is requested to produce the documents responsive to the attached Request to Produce Documents and Tangible Things at Deposition (Exhibit A) ("Request to Produce Documents") within 30 days or five business days prior to the deposition of the designated deponent(s), whichever is earlier.

Plaintiffs request that 3M produce a copy of the designated representative's current curriculum vitae or resume at each deposition.

Defendant 3M Company is hereby requested and required, pursuant to Federal Rule of Civil Procedure 30(b)(6), to designate and produce a person or persons to testify on behalf of 3M Company the following matters:

(1)   When and where and to whom the dual-ended Combat Arms Earplugs ("CAEv2"), including any civilian or non-military version of the CAEv2, were

sold by Defendants[1] prior to the time the CAEv2 was first purchased by the Department of Defense[2];

  (2) The method and manner by which Defendants acquired a national stock number (NSN) for the CAEv2;

  (3) The method and manner by which the Department of Defense purchased the CAEv2 from Defendants, including but not limited to whether the CAEv2 was a commercial off the shelf ("COTS") product purchase at any time, and/or whether the Department of Defense used its Other Transaction Authority ("OTA") pursuant to 10 U.S.C. 2371 (a) and (b) to purchase the CAEv2 at any time, and/or whether the Army's Rapid Fielding Initiative ("RFI") program was used to purchase the CAEv2 or supply the CAEv2 to Army personnel;

  (4) Defendant 3M's acquisition of Aearo Technologies LLC, including all terms of the acquisition and the identity and location of all documents that reflect the terms of the acquisition;

  (5) Any due diligence documents provided at the time of 3M's acquisition

---

[1] "Defendants" is defined herein and is intended to include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, and each of their directors, officers, employees, former employees, agents or other representatives.

[2] "Department of Defense" is defined herein and is intended to include the Defense Department, the United States Department of Defense, Defense, or DoD as the federal department responsible for safeguarding national security of the United States.

of Aearo Technologies LLC, including sales, testing, contracts and any predecessor or successor products included in the acquisition;

(6)     The decision to perform NRR labeling tests on open and closed ends of the CAEv2 (Test ID's 213015, 213016 and 213017) starting in December 1999 and continuing into 2000, including but not limited to all discussions, meetings and communications concerning the Aearo companies' decision to perform such NRR tests.

(7)     All REAT testing performed on the open and closed ends of the CAEv2 prior to Tests 213015 and 213016, including but not limited to the laboratory protocol for the tests, insertion methods used in such tests, the selection of test subjects used for such testing, and the test IDs and results of such testing.

(8)     The selection of test subjects used in Tests 213015 (closed-end), 213016 (open-end), and 213017 (closed-end re-test), including but not limited to the prior testing history of such subjects, the inclusion of such test subjects in tests related to specific types of hearing protection devices, EARCAL lab protocols, policies and procedures concerning the selection of test subjects for NRR tests, the Flange Report's (as hereafter defined) reference to the "EARCAL Laboratory test panel," and the identity of all and whereabouts of all documents and data, including notebooks and questionnaires, related to the selection of test subjects for these tests.

(9)     The NRR testing of the open and closed-ends of the CAEv2 starting in

December 1999 and continuing into 2000 (Tests 213015, 213016 and 213017), including but not limited to the decision to stop Test 213015 after testing eight (8) test subjects, EARCAL lab protocols, policies and procedures concerning the premature termination of NRR labeling tests and the identification of outlier test results, regulations (including ANSI standards and EPA regulations) governing the fitting, testing, labeling and sale of the CAEv2, the conducting of such tests by EARCAL lab personnel, discussions and communications between such lab personnel during such testing, and the decision to roll back the yellow, non-inserted flanges of the CAEv2 prior to insertion of the olive (closed) end during Test 213017 (closed-end retest).

(10)   The drafting of the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," bates number 3M_MDL000019514 (referred to herein as the "Flange Report"), including but not limited to the decision to create the Flange Report, and discussions, communications and meetings related to drafting the Flange Report.

(11)   The design of the CAEv2 as described in the Flange Report, including but not limited to the statement in the Report that "the current length of the UltraFit Earplug end of the Combat Arms Plug is too short for proper insertion, and how changing the fitting technique affected the results of real-ear tests of this plug."

(12)   Any design decisions beyond those discussed in the Flange Report,

including where and when 3M designed the CAEv2 (for example, whether the design was generated in a laboratory setting), whether the design was based on preexisting technology.

(13)   Any representations made by Defendants relating to the NRR testing and CAEv2 results to the military and/or public.

(14)   Any approval of the CAEv2 design by the military/Department of Defense and any documentation of discussions with military on same.

(15)   Any internal or external communications or decisions about communication made with regard to instructions for use or fit of the CAEv2.

(16)   Defendants' understanding of the terms and scope of the procurement contract.

(17)   The retention and storage of the Flange Report, including but not limited to the disclosure of the Flange Report or the information contained in the Report to Defendants and third-parties, and the document collection and production process for the Flange Report in *Moldex-Metric, Inc. v. 3M Innovative Properties Company*, No. 14-1821 (D. Minn.) (*"Moldex II"*).

DATED:  August 2, 2019

Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263

Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, PLLC
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.
316 South Baylen Street

Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

***Counsel for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I, Bryan F. Aylstock, hereby certify that on August 2, 2019, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

>*/s/ Bryan F. Aylstock*
>Bryan F. Aylstock

# EXHIBIT A

# EXHIBIT A - SUBPOENA DUCES TECUM

## INSTRUCTIONS

1. Pursuant to Fed. R. Civ. P. 30(b)(2), this notice of deposition requires that Defendant 3M Company produce all requested DOCUMENTS that are in its actual or constructive possession, custody or control, including, without limitation, those DOCUMENTS in the possession, custody, or control of 3M Company's employees, attorneys, investigators, agents or other persons acting on 3M Company's behalf.

2. If Defendant 3M Company represents that it is unable to comply with a particular request, Defendant 3M Company must affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that request. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or is no longer in the possession, custody, or control of the responding party. This statement shall set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item. Plaintiffs will move to exclude any documents in Defendant 3M Company's possession, custody, and/or control that are responsive to these requests that Defendant 3M Company does not produce.

3. These requests do not call for documents that are protected by the attorney client privilege or the attorney work product doctrine. If in response to these requests Defendant 3M Company refuses to produce any documents based on a claim of privilege, a privilege log shall be produced within 30 days or five (5) business days before the deposition of the designated deponent(s), whichever is earlier, containing all information identified in Pretrial Order 9, Section X.

## DEFINITIONS

As used in this Request to Produce Documents, the following terms shall have the following meanings:

1. COMMUNICATION(S) means and refers to any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, email, text message, tape-recorded message or other occurrences in which thoughts, opinions, or information are transmitted between or among one or more persons and any electronic, photographic, or mechanical device or devices for receiving, transmitting, or storing data or other information.

2. DEFENDANTS as defined herein is intended to include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, and each of their directors, officers, employees, former employees, agents or other representatives.

3. DOCUMENT(S) is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and expressly includes all iterations of handwritings, typings, printings, Photostats, photographs, and any other method of recording upon any tangible thing, any form of COMMUNICATION, representation, such as letters, words, pictures, sounds, symbols or combinations thereof, and any data compilation from which information can be obtained through a detection device into usable form. The term "DOCUMENT" shall include, without limitation, all written graphic material such as letters, memoranda, reports, studies, notes, minutes, diary entries, including calendar entries indicating date of and participants to any meetings, notes or records of telephone conversations, conferences, or other oral COMMUNICATIONS and appointment records, time records, ledgers, journals, financial or accounting records, personnel records, payroll records, annual reports, work papers, schedules, photographs, recordings, charts, graphs, transcriptions, tapes, discs, emails, printouts and other electronic data processing materials. The term "DOCUMENT" shall also include each copy of a DOCUMENT that is not identical in all respects with or that contains any notation not appearing on said DOCUMENT.

**REQUESTED DOCUMENTS**

Plaintiffs request that Defendant 3M Company produce the following documents within 30 days or ten (10) days before the deposition of the designated deponent(s), whichever is earlier:

1. Documents which identify Defendants' commercial sales of the CAEv2, including any civilian version or non-military version of the CAEv2, prior to Defendants' contract and/or agreement with the Department of Defense for the sale of the CAEv2.

2. Documents which reflect and relate to the method and manner by which the Department of Defense purchased the CAEv2, including but not limited to documents related to a commercial off the shelf ("COTS") product purchase of the CAEv2 at any time, or documents related to a purchase of the CAEv2 in which the Department of Defense used its Other Transaction Authority ("OTA") pursuant to 10 U.S.C. 2371 (a) and (b), and/or documents related to or reflecting a purchase or supply of the CAEv2 through the Rapid Fielding Initiative ("RFI") program.

3. Documents which reflect or relate to the national stock number acquired by Defendants for the purchase of the CAEv2.

4. The acquisition documents related to 3M's acquisition of Aearo Technologies LLC, including but not limited to the signed purchase agreement and

all documents related to the purchase of Aearo Technologies LLC's liabilities by 3M.

5. All documents regarding the Flange Report, including but not limited to: any drafts of the Flange Report, any communications related to drafts of the final version of the Flange Report, and any documents regarding the information contained in the Flange Report.

6. All documents identifying the individual subjects (i.e., "test subjects") that participated in any way in the testing identified in the Flange Report.

7. All documents regarding regulatory or industry standards Defendants utilized, referenced, or otherwise attempted to address in the testing or fitting identified in the Flange Report.

8. All documents reflecting the testing protocol(s) Defendants utilized for the tests identified in the Flange Report.

9. All documents containing data created for, during or as a result of the testing identified in the Flange Report.

10. All documents containing test subject's test results or other individual data for the testing identified in the Flange Report.

11. All documents provided to any test subject before, during, or after the testing identified in the Flange Report regarding the tests to which the test subject was or potentially would be subjected.

12. All communications between Defendants (including any employee or former employee) and the United States Government/Military (or anyone purportedly acting on its behalf) relating to the Flange Report.

13. All communications between Defendants (including any employee or former employee) and Doug Ohlin relating to the Flange Report.