# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS EARPLUG          )          Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,         )
                                       )          Pensacola, Florida
                                       )          June 10, 2020
                                       )          12:00 p.m.
                                       )
                                       )
_____)


**TELEPHONE CONFERENCE**

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-92)

<u>**A P P E A R A N C E S**</u>

FOR THE PLAINTIFFS:  **BRYAN F. AYLSTOCK, ESQUIRE**
          **NEIL OVERHOLTZ, ESQUIRE**
          Aylstock, Witkin, Kreis & Overholtz
          17 E Main Street, Suite 200
          Pensacola, Florida  32502

          **DAVID BUCHANAN, ESQUIRE**
          **PARVIN AMINOLROAYA, ESQUIRE**
          Seeger Weiss, LLP
          55 Challenger Road, 6th Floor
          Ridgefield Park, New Jersey  07660


FOR THE DEFENDANT:  **KARL B. GUNDERSON, ESQUIRE**
          Kirkland & Ellis, LLP
          300 N Lasalle
          Chicago, Illinois, 60654

          **MARK J. NOMELLINI, ESQUIRE**
          Kirkland & Ellis, LLP
          300 N Lasalle
          Chicago, Illinois  60654

1   quote, "relevant" documents produced that relate to custodians

2   who their documents have already been produced and, in some

3   cases, individuals have already been deposed.

4          And I say that just so the parties understand from the

5   Court's perspective, you know, the Court really takes a very

6   studied approach to whether it's necessary to add a custodian.

7   And I understand one case had 200, this case only has 51.  Each

8   case is different on its specific facts.  I will say, however,

9   that 51 custodians in a case like this certainly doesn't shock

10   the conscience.

11          So, before I make a decision to add a custodian, I

12   want the Plaintiff to have met some burden to show there is

13   something unique or important in support of why an additional

14   custodian should be added.

15          As to the argument here that Plaintiffs have been a

16   day late and a dollar short, certainly in hindsight in Monday

17   morning quarterbacking we all can look back and see, oh, here

18   was a document referenced or produced in September, they could

19   have asked for documents later.

20          But, just like TAR is a learning process, the review

21   of documents by a requesting party is also a learning process.

22   You may look at a document early on in the case and it may not

23   have as much significance until later in the case and you have

24   learned more about the historical background and more about,

25   you know, the players in the case.

1          So, I'm largely discounting the argument that

2     Plaintiffs should not be requesting these custodians at this

3     late date because they were or should have been aware of this

4     information earlier.  Yes, they probably, in some cases, knew

5     about it earlier.  But when you go through the timeline -- and

6     I hate to always sort of do the overlay of the pandemic on

7     this, but things got a little bit off kilter for a month or

8     two.

9          So, on that I can say, well, Plaintiffs might be a

10    little bit late, certainly not late enough that the Court would

11    deny a request to add a custodian simply because they were

12    tardy in making the request.

13         Now, having said all of that as background, it seems

14    to me that, as an initial matter of the three custodians that

15    we've talked about, at least Mr. Todor, in my view, should be

16    added as an additional custodian.

17         I understand there have been emails produced,

18    thousands of emails produced with his name on it.  But he was a

19    quality assurance manager at Aearo in Indianapolis for a pretty

20    significant period of time, '96 to 2008.  That would cover

21    development.

22         And I recognize that his documents show up in the

23    custodial files of other individuals, but none of those

24    individuals were in the Indianapolis Aearo Operations Division.

25         So, as to Mr. Todor, even though there is some burden

1    on the Defendant by adding a custodian, I will grant the

2    request to add Mr. Todor.

3         As to Mr. Jurney, I'm not convinced that adding him is

4    going to make much difference at all.  For starters, it appears

5    he was just an engineer.  I mean, he was a team member, but a

6    team member along with custodians who have been identified and

7    whose custodial files have been produced.

8         And while I'm sure reviewing his custodial files and

9    adding him to TAR might find a random document here or there,

10   on balance and recognizing that there is some effort by the

11   Court to focus on proportionality, I do not believe that the

12   Plaintiffs should be entitled to have Mr. Jurney added as an

13   additional custodian.  So that request is denied.

14        Now, as to Mr. Clingman, you know, that's a closer

15   question.  He was a production manager and, according to what

16   the parties have submitted, appeared to have originated a

17   standard operating procedure relating to CAEv2.

18        But I do not know -- and I'm going to ask this

19   question, I'll ask the Defendant.  They may know this, they may

20   not.

21        Mr. Clingman was the production manager during the

22   development of CAEv2, but during approximately what period of

23   time, if you know?

24        **MR. GUNDERSON:**  Unfortunately, Your Honor, I don't

25   know that.  *(Inaudible).*  I know he retired from 3M in 2016, so

1    he was with the Aearo 3M Company for a considerable period of

2    time, but I don't know the exact timing of his particular role.

3              **MS. AMINOLROAYA:**  Your Honor, if I could identify a

4    fact that might be helpful?

5              **THE COURT:**  Yes.

6              **MS. AMINOLROAYA:**  So, Defendants' submission indicates

7    that he was in attendance at certain of the 1999 design and

8    development meetings.  So we know he would have been with Aearo

9    during that key time period and possibly before that.

10             **THE COURT:**  So, Clingman would know -- I don't know if

11   you know -- he was around and conceivably might have had

12   involvement in development.  But also would he have been

13   involved as a production manager in post-production issues?

14             **MS. AMINOLROAYA:**  That's certainly reasonable to me.

15   Given that he originated a standard operating procedure for

16   assembly of the product, that would mean that he requested the

17   SOP so that he would have some oversight over that part of the

18   product.

19             **MR. NOMELLINI:**  Your Honor, with respect to

20   Mr. Clingman, on the production meeting minutes that Parvin was

21   referring to earlier for the Combat Arms project, these come

22   from Annette Shaver.  The people who are on those minutes, it's

23   the same people.  It includes Knauer, Myers, Klun, and Todor.

24   I did not see Mr. Clingman's name on those minutes.

25             **THE COURT:**  Oh, okay.  What was Ms. Shaver's role or

1    title, if you know?

2            **MS. AMINOLROAYA:**  Ms. Shaver was an analyst.

3            **MR. GUNDERSON:**  In quality assurance, Your Honor.

4            **THE COURT:**  Okay, an analyst in quality assurance.

5    She was not -- well, I guess quality assurance has to do with

6    production.  But production is, in my view, making the product.

7    Quality assurance is assuring that when it's produced it meets

8    quality, and they would seem to be different roles.

9            **MS. AMINOLROAYA:**  Yes, that's what we've seen in her

10   documents, Your Honor.

11           **MR. NOMELLINI:**  Your Honor, just -- the first line of

12   the minutes is, "A meeting was held on May 20th, 1999, to

13   discuss the progress toward the manufacture and delivery of the

14   Combat Arms plugs," and then it discusses various items, Lisa

15   Dinemeyer's *[phonetic]* name, as well as Mr. Todor and Mr.

16   Knauer.  It does not list Mr. Clingman.

17           **THE COURT:**  Right.  Well, he was production manager --

18           **MS. AMINOLROAYA:**  Your Honor --

19           **THE COURT:**  Yes, go ahead.

20           **MS. AMINOLROAYA:**  Just to note -- I'm looking for the

21   document right now, but Defendants' submission on page 5 states

22   that Mr. Clingman was listed on the August 16th, 1999, memo

23   regarding Combat Arms Plugs design review meeting as having

24   received those minutes.

25           **THE COURT:**  Okay.  And he also was allegedly one of

 1   the originators of the standard operating procedures; is that

 2   correct?

 3          **MS. AMINOLROAYA:**  Yes.  His signature -- or is name is

 4   listed on the standard operating procedure.

 5          **THE COURT:**  Right.  So, as I said, Mr. Clingman, this

 6   is a closer question in my mind.  But, on balance, I will grant

 7   the Plaintiffs' request, and Mr. Clingman will be added as an

 8   additional custodian.

 9          You know, one of the things I was a little bit

10   concerned about is there have been over 20,000 emails on which

11   Clingman's name was mentioned that he was sent to or received

12   emails.  As to the importance of those emails, you know, I

13   don't know.  But if indeed what would happen is what would come

14   out of the custodial files of Clingman included a significant

15   portion of those, that really wouldn't change the TAR corpus

16   significantly.

17          And I recognize that every time you add a custodian,

18   as I mentioned, there is additional burden on the Defendant.

19   Although a close call, I will grant the Plaintiffs' request.

20          So, Clingman and Todor will be added as additional

21   custodians, but I am not persuaded that Mr. Jurney should be

22   added as an additional custodian.

23          **MR. BUCHANAN:**  Your Honor, this is Dave Buchanan.

24   Just before you continue with the additional custodians, I did

25   want to clarify one point.  Because Your Honor is considering

1    colleague, Mr. Buchanan, on the other side.

2         I would just agree with everything that Mr. Buchanan

3    said.  The Defendants want to make sure that the TAR process

4    has been reasonable and effective, and so we've been having, I

5    think, thoughtful and collaborative discussions with Plaintiffs

6    to see if there is anything we can do to maybe just adjust or

7    supplement that model.  I think the results of that will help

8    us arrive at the right score.  That score would be the sort of

9    the cutoff that will address any newly added documents that

10   come into the corpus.

11        So I think everything Dave said is right, and I think

12   we're just working together to help make sure we've met that

13   reasonable obligation.

14        **THE COURT:**  Okay.  Well, thank you for that input.

15   That -- I'll use the word reasonable -- seems reasonable, and

16   we're all moving in the right direction.

17        Thank you all very much and have a good afternoon.

18            *(Proceedings concluded at 2:48 p.m.)*

19            --------------------

20   *I certify that the foregoing is a correct transcript from the*
     *record of proceedings in the above-entitled matter.  Any*
21   *redaction of personal data identifiers pursuant to the Judicial*
     *Conference Policy on Privacy are noted within the transcript.*
22

23
     *s/Donna L. Boland*                          *6-11-2020*
24   *Donna L. Boland, RPR, FCRR*                  *Date*
     *Official Court Reporter*
25