# **EXHIBIT 17**

# SEEGERWEISS LLP

### NEW YORK • NEW JERSEY • PHILADELPHIA

October 15, 2019

*VIA EMAIL*
Judge M.C. Rodgers
United States District Court
Northern District of Florida
100 North Palafox Street
Pensacola, Florida 32502

> Re:   *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, **3:19-md-2885**
> **3M's 30(b)(6) Deposition and Corporate Designees' Individual Depositions**

Dear Judge Rodgers:

Pursuant to Case Management Order No. 5, dated October 3, 2019, Dkt. No. 722, Plaintiff Leadership submits this letter regarding the time limits for the deposition of 3M pursuant to Plaintiffs' 30(b)(6) Deposition Notices,[1] and for the individual depositions of Elliott Berger, Brian Myers, and Doug Moses, each a key individual witness in this matter.

Under the Deposition Protocol entered in this case, Plaintiffs' depositions of individual witnesses associated with Defendants are subject to a default limit of two 7.5-hour days.  *See* Dkt. No. 554, Pre Trial Order No. 13, dated July 30, 2019 ("Dep. Protocol") at 4 (absent good cause, "no deposition may occur over more than two deposition days of seven 7.5 hours of testimony per day").[2]  But Defendants now seek to halve Plaintiffs' examination time with three of the most central individual witnesses in this case, by designating those witnesses as 30(b)(6) representatives, and counting their corporate deposition time against that default two-day limit.  The centrality of Mr. Berger's, Mr. Myers's, and Mr. Moses's individual testimony, together with the apparently strategic nature of Defendants' 30(b)(6) designations, demonstrate good cause[3] for this Court to order full, two-day depositions of each individual, as fact witnesses, despite Defendants' decision to also designate them as corporate representatives under Rule 30(b)(6).

## Corporate Testimony Is Not Individual Testimony

It is corporate testimony, not individual witness testimony, that is provided pursuant to a Rule 30(b)(6) notice, and therefore individuals designated to testify pursuant to a Rule 30(b)(6)

---

[1]   *See* Plaintiffs' 30(b)(6) Deposition Notice, dated July 17, 2019 (the "First Notice"), attached hereto as Exhibit A; Plaintiffs' 30(b)(6) Deposition Notice, dated August 2, 2019 (the "Second Notice"), attached hereto as Exhibit B (collectively, the "30(b)(6) Notices").

[2]   *See* 8A Wright & Miller, Fed. Prac. & Proc. Civ. § 2104.1 (3d ed.) ("there certainly are depositions for which a longer period [than one day] is appropriate," and "there is no limit to the reasons that might justify a longer deposition in a particular case.").

[3]   *See* Dep. Protocol at 7 ("Absent agreement of the Parties or order of this Court for good cause shown, an individual designated to testify as both a corporate representative and in his or her individual capacity may not be deposed for more than a total of two (2) days of 7.5 hours of testimony per day.").

notice are not themselves 'deponents' in a substantive way. *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588, at *2 (S.D. Fla. Feb. 8, 2008) (in Rule 30(b)(6) deposition, "the person being deposed is required to testify about the knowledge of the corporation as an entity and not his or her own knowledge"). This practical and conceptual distinction is acknowledged not only by the law and by commentators, but by the Deposition Protocol in this matter itself. *See* Dep. Protocol at 4 (distinguishing between a deposition taken in a witness's "individual capacity (as a fact witness) and a *separate* deposition [to] be taken in his or her capacity as a corporate representative.") (emphasis added). Although a 30(b)(6) witness must be prepared to testify on his or her designated topics on behalf of the corporation, there is no requirement that the designee be personally involved in or responsible for the subject matter of the topic – or, indeed, that the designee have any personal knowledge regarding the topic.[4]

Consistent with this framework, courts and commentators distinguish between corporate and individual testimony in the specific context of counting deposition time. *See* 8A Wright & Miller, Fed. Prac. & Proc. Civ. § 2104.1 (3d ed.) ("The depositions of an individual who is noticed as an individual witness pursuant to Rule 30(b)(1) and who is also produced as a corporate representative pursuant to Rule 30(b)(6) are each subject to an independent seven–hour time limit."); *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("As a separate deposition that probes the knowledge of the entity and not the personal knowledge of the individual testifying, a 30(b)(6) deposition should be subject to its own independent seven-hour limit.").

## Gamesmanship and the Deposition Protocol

Cognizant of the complexity of this matter, and of the need for Plaintiffs' counsel to investigate decades of Defendants' conduct on behalf of tens of thousands of claimants, the Parties negotiated and the Court entered a Deposition Protocol that sets a higher default limit on deposition time than that provided by the Federal Rules.[5] The Parties mutually agreed to this higher limit (two deposition days per individual witness), and it was not among the disputes submitted to the Court with regard to the Deposition Protocol.

Plaintiffs did dispute, however, Defendants' proposal that "an individual designated to testify as both a corporate representative and in his or her individual capacity may not be deposed for more than a total of two (2) days of 7.5 hours of testimony per day."[6] In the Parties' papers regarding the disputed provision, Plaintiffs noted that because they have "*no* control over which witnesses Defendants designate as corporate representatives," this provision could create unfairness and encourage gamesmanship.[7] A provision that counts 30(b)(6) deposition time against an individual's deposition time would allow Defendants to strategically choose corporate designees in

---

[4]     *See* 8A Wright & Miller, Fed. Prac. & Proc. Civ. § 2103 (3d ed.) ("There is no obligation to select a person with personal knowledge of the events in question.")

[5]     *Compare* Dep. Protocol at 4 (absent good cause, "no deposition may occur over more than two deposition days of seven 7.5 hours of testimony per day") *with* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.").

[6]     *See* Dep. Protocol at 4.

[7]     *See* Plaintiffs' Deposition Protocol Position Letter, July 19, 2019, at 2-3.

order to "cannibalize the time permitted MDL Plaintiffs to examine Defendants' employees as fact witnesses."[8]

Defendants in this case are not the first corporate parties to pursue this type of gamesmanship, and Federal Courts in Florida and elsewhere have recognized that counting corporate deposition time against individual deposition time creates opportunity for "substantial overreaching" by corporate deponents, and leads to "absurd results." *See Sabre*, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("any entity that wanted to limit the testimony of an individual could accomplish that goal by designating the individual as a 30(b)(6) witness . . . every minute spent conducting the 30(b)(6) deposition would be deducted from the time available to probe the witness's individual knowledge."); *DHL Express (USA), Inc. v. Express Save Indus. Inc.*, 2009 WL 3418148, at *1 (S.D. Fla. Oct. 19, 2009) (allowing 30(b)(6) and individual depositions of same witness that together exceeded durational limit for a single deponent); *AllianceOne, Inc. v. Monti*, 2005 WL 8153191, at *1 (M.D. Fla. Mar. 25, 2005) ("Plaintiff is entitled to conduct the deposition of an unnamed corporate representative [under Rule 30(b)(6)] even though that individual had previously been deposed.").

Plaintiffs' concern that Defendants would exploit the Deposition Protocol to unfairly truncate the individual testimony of percipient witnesses was well-founded, and has now unfortunately proved prescient. By designating Mr. Myers, Mr. Moses, and Mr. Berger for the first 30(b)(6) depositions in this matter, Defendants have attempted to truncate the deposition time – to one day, from two days – for 25% of the individual fact witnesses Defendants identified as possessing information relevant to their claims and defenses in this litigation.[9] Plaintiffs therefore respectfully request additional time to fairly examine each of these witnesses in order to develop and prepare the plaintiffs' case. The bases for this request are set forth below.

## Fed. R. Civ. P. 30 Instructs the Court to Allow Additional Time in These Circumstances

Federal Rule of Civil Procedure 30 instructs courts to allow additional deposition time when fairness dictates, and when doing so is proportional to the needs of the case. Fed. R. Civ. P. 30(d)(1) (directing courts to "allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent"). Allowing time beyond that allotted by the Rules is appropriate where additional deposition questioning will not be "unreasonably cumulative or duplicative," and the burden imposed on the deponent does not outweigh the benefits of the testimony. *See Byrd v. District of Columbia*, 259 F.R.D. 1, 5 (D.D.C. 2009) (granting additional depositions where none were "cumulative or duplicative or impose[] a burden that outweighs their likely benefit").

---

[8]     *See id.* Plaintiffs note that Defendants' Deposition Protocol Position Letter conspicuously omitted discussion of the factual circumstances Defendants have now put into place – under which a 30(b)(6) designee's later individual deposition is limited by the time spent in a 30(b)(6) deposition. *See* Defs.' Dep. Protocol Position Letter, July 19, 2019, at 3 (discussing how to "prevent witnesses from being called back for a 30(b)(6) deposition after their fact deposition is completed," but failing to acknowledge the possibility of a situation where an individual is defensively designated for 30(b)(6) testimony before their fact deposition).

[9]     *See* Defs.' Initial Disclosures, dated June 18, 2019, at 2-3, attached hereto as Exhibit C (identifying only twelve individuals, only eleven of whom are living).

Additional testimony is also appropriate in cases in which events over a long period of time are relevant to liability, and in cases involving multiple questioning parties.[10]

As demonstrated below, these factors all weigh in favor of granting additional deposition time with regard to Messrs. Berger, Moses, and Myers.

### Brian Myers and Doug Moses: First Rule 30(b)(6) Notice Designees

Plaintiffs' First Rule 30(b)(6) notice (Ex. A, the "First Notice") seeks background information, uniquely within 3M's possession, that would enable Plaintiffs to conduct targeted discovery. The topics for examination in the First Notice make this intent clear: It primarily seeks testimony identifying witnesses and custodians (*e.g.*, Topics 7, 8, 18, 20, 30-33), relevant documents (*e.g.*, Topics 3, 4, 11, 12, 15, 16, 17, 23, 26-28), data sources and repositories (*e.g.*, Topics 10, 25, 34), potential third-party discovery sources (*e.g.*, Topics 1, 2, 19, 21, 24, 29), and corporate departments (*e.g.*, Topics 9, 22).   Although Defense counsel has made representations to Plaintiffs regarding these topics, Plaintiffs need sworn statements on these topics that are binding upon Defendants themselves – such as those provided pursuant to a 30(b)(6) notice.   Despite the nature of the First Notice, Defendants elected not to designate, for example, an information technology specialist to testify regarding data sources, or a human resources officer to testify regarding corporate structure and the identity of employees involved in relevant conduct.   Instead, in an apparently strategic move, Defendants selected as designees for the First Notice two of the only twelve witnesses they identified in their Initial Disclosures.

Mr. Moses and Mr. Myers are crucially relevant fact witnesses by any measure.  Mr. Moses joined Aearo in 2005, as a Senior Brand Manager, and his involvement with CAE marketing continued after 3M's acquisition of Aearo.  Today, Mr. Moses represents his job title as "Marketing - US Active Communications / Military Manager."  Based upon Plaintiffs' review of Defendants' productions, Mr. Moses was a custodian for many key communications in this matter.  Mr. Moses was involved in handling potential competition to the CAEv2 and in generally monitoring the CAE's market share – indeed, Mr. Moses has called himself the "horse's mouth" with regard to information on the CAE business line.  Additionally, Mr. Moses was the primary point of contact at 3M for Doug Ohlin – a deceased individual who is extremely central to this case[11] – which makes Mr. Moses's personal knowledge uniquely important.  Finally, Defendants identified Mr. Moses in response to many of Plaintiffs' interrogatories seeking the identification of various categories of relevant individuals.[12]

---

[10]     *See Fleming v. Coverstone*, 2009 WL 4040066, at *1 (S.D. Cal. Nov. 19, 2009) (allowing depositions beyond Rule 30(d)'s limit where the additional deponent "appears to be the best source for this information"); Fed. R. Civ. P (30) advisory committee's note to 2000 amendment ("if the examination will cover events occurring over a long period of time, that may justify allowing additional time"); *id.* ("In multi-party cases, the need for each party to examine the witness may warrant additional time.").

[11]     Doug Ohlin was Program Manager for the U.S. Army Hearing Conservation Program until 2007, when he became a "military products consultant" for 3M, where his role primarily involved marketing the CAE and similar products to government purchasers.  Dr. Ohlin is the only individual identified by name (and identified as the "primary contact" for the U.S.) as having received "warnings, guidance, recommendations, instructions for use, or testing data" from 3M on behalf of the U.S. Government about the CAEv2.  *See* Defs.' Response to Interrog. No. 5.

[12]     *See* Defs.' Responses to Interrogatories Nos. 1, 4, 13, and 17.

Likewise, Brian Myers has worked for 3M and its predecessors for three decades. Mr. Myers joined Cabot (which was later acquired by Aearo, 3M's predecessor) in 1989 and has served as a production manager for hearing protection under the E-A-R division of Cabot and as a business director in the Personal Safety Division of 3M. Mr. Myers has extensive experience in marketing and product placement, and is intimately familiar with 3M's policies, procedures, and history. He was the key contact within Aearo between the creator of the Combat Arms filter technology (the Institute of Saint-Louis) and Doug Ohlin. Mr. Myers also contributed to procurement efforts, seeking a National Stock Number for the CAEv2, providing product samples to military consumers and purchasers, and drafting the U.S. Government's 2006 solicitation contract. Because of Mr. Myers' long history with 3M and his varied roles within the company make him uniquely well-positioned to testify on a range of topics in his individual capacity.[13]

To date, Defendants have produced over 11,600 documents that mention Mr. Myers. They have produced over 24,300 that mention Mr. Moses. The importance of these two witnesses to the claims in this case cannot be overstated, and Plaintiffs' ability to examine them should not be unfairly limited.

**Berger: Second Rule 30(b)(6) Notice Designee**

All Parties agree that Mr. Berger, despite his designation as a witness in response to Plaintiffs' Second 30(b)(6) Notice (Ex. B, the "Second Notice") is a key individual witness in this case. As a forty-two-year employee of Cabot, Aearo, and 3M, Mr. Berger played a central role in the development and testing of the Combat Arms Earplug, as well as numerous other hearing protection devices, and likely has more personal knowledge about the development of the Combat Arms Earplug than any other witness. Mr. Berger's personal knowledge cuts across numerous areas of dispute, including the testing, development, and marketing of the Combat Arms Earplugs.

Mr. Berger is an indispensable witness on the subject of testing. Mr. Berger authored the internal "Flange Report," which described an alternative fit method Aearo used in testing, but did not disclose in user instructions, to obtain more favorable NRR ratings for the CAEv2. The creation and dissemination of the "Flange Report" is a major element in Plaintiff's claims and Defendants' anticipated defenses. In support of their contention that the CAEv2 has "no defects," Defendants cite at least five rounds of testing supervised by Mr. Berger.[14] And in addition to his supervisory role in gathering test data for Defendants, Mr. Berger also maintained Defendants' testing protocols, putting Mr. Berger in the strange position of being responsible both for dictating and for complying with his laboratory's rules. Plaintiffs will need significant time to probe Mr. Berger's *personal* knowledge – as distinct from 3M's knowledge – not only about the development and testing of the subject product, but also the laboratory protocols over that produced the questionable testing results at the heart of this litigation.

Outside of the laboratory, Mr. Berger also thrust himself into a central role in the marketing of the CAEv2 to the United States Military. Defendants' Responses to Plaintiffs' Interrogatories describe Mr. Berger's contacts with the U.S. Government at length, putting them at issue and

---

[13]    *See* Defs.' Responses to Interrogatories Nos. 1, 4, 9, 13, and 17.

[14]    *See* Defs.' Responses to Interrogatories No. 15.

making him a witness on not just the subject product's testing and development, but also its initial marketing to and procurement by the U.S. Government.[15]

Indeed, 3M has recognized Mr. Berger's testimony as "one of, if not, the most important testimony that's given under oath" in this case. *See* Fifth Case Management Conf. Transcript, Sept. 27, 2019 ("Fifth CMC Tr.") at 15:5-7. Counsel for 3M further noted that "Dr. Berger's history with this product goes back to the 1990s and comes forward all the way to the period of time when 3M stopped selling the product" and that it was "essential" that 3M have many weeks of time in which to prepare Mr. Berger and review documents he may be asked to consider during his deposition. *See* Fifth CMC Tr.15:7-9, 14-17. The breadth of documentary evidence for which Plaintiffs may require Mr. Berger's individual testimony is even more significant than that of Mr. Myers and Mr. Moses: Defendants have produced at least 19,700 documents referring to Mr. Berger.[16]

The breadth, depth, and importance of Mr. Berger's unique personal knowledge across multiple subject areas vital to this litigation dramatically outweighs any minimal additional burden – imposed solely by Defendants' designation decision – of requiring Mr. Berger to sit for a full, two-day individual deposition, beyond any 30(b)(6) testimony 3M chooses to relay through him.

**Conclusion**

The significant number of involved parties, the small number of identified witnesses, the long period of relevant conduct, and the personal knowledge that Messrs. Moses, Myers, and Berger each uniquely possess, together establish good cause for an order preventing Defendants from unilaterally shortening the total amount of time Plaintiffs may depose these three witnesses in their individual capacities. Dramatically impairing Plaintiffs' access to testimony from *25%* of the only witnesses Defendants believe possess relevant information—including the individuals they admit are *most* important to this case—could prevent Plaintiffs from having a fair and adequate opportunity to fully discovery key information regarding 3M's wrongdoing in this case, which is an outcome that Defendants certainly anticipated and could easily have avoided, and which this Court should prevent.

For the foregoing reasons, Plaintiffs respectfully submit that the Court enter an order requiring that corporate testimony provided subject to a 30(b)(6) notice may not be counted against the individual deposition time limits; or, in the interests of compromise, that at least corporate testimony may not be counted against individual deposition time limits with regard to the only twelve witnesses Defendants identified in their Initial Disclosures.

---

[15]     *See* Defs.' Responses to Interrogatories No. 9 (quoting extensively from Berger's testimony regarding his interactions with the U.S. Government).

[16]     Like Mr. Myers, Mr. Moses, and Dr. Ohlin, Mr. Berger is a star player in Defendants' Interrogatory Responses. *See* Defs.' Responses to Interrogatories Nos. 1, 5, 9, 13, 15, 17, and 23.

Respectfully submitted,

/s/ David R. Buchanan
David R. Buchanan, Co-Chair PSC
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042741993
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 587-0700
dbuchanan@seegerweiss.com
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19md2885 |
| | ) | Judge M. Casey Rodgers |
| This Document Relates to All Cases | ) | Magistrate Judge Gary R. Jones |

**NOTICE TO TAKE DEPOSITION**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 9:30 a.m. on August 12, 2019, Plaintiffs will take the deposition of Defendant 3M Company pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6). The deposition will be taken at: Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654.

The deposition will be taken upon oral examination, pursuant to the provisions of Federal Rule of Civil Procedure 30, before a Notary Public or other official authorized to administer oaths, who is not a party to the above-captioned action. Such deposition shall continue from day to day, excluding weekends and holidays, until completed.

**PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by videotape in addition to recording testimony by stenographic method pursuant to Federal Rules of Civil Procedure, Rule 30.

**NOTE:** If the deponent requires the services of an interpreter, you must advise this office in writing no later than five (5) business days before the date set for the deposition of both the need for the interpreter and the language required.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant 3M Company is requested to produce the documents responsive to the annexed Subpoena Duces Tecum within 30 days or five business days prior to the deposition of the designated deponent(s), whichever is earlier.

Defendant 3M Company, is hereby requested and required, pursuant to Federal Rules of Civil Procedure 30(b)(6) to designate and produce a person or persons to testify on behalf of 3M Company, on the following matters:

**A.    Distribution and Shipment**

(1)    The national distribution of Defendants'[1] dual-end Combat Arms Earplugs, including any civilian version or non-military version (the "CAE"), through military, civilian, and any other distribution channels, including but not limited to the identity and role of any and all organizations that distribute the CAE nationwide and the manner and method of distribution, from the time they were first distributed to present.

---

[1] "Defendants" is defined herein and is intended to include 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC.

(2)     The worldwide distribution of the CAE, through military, civilian, and any other distribution channels, including but not limited to the identity and role of any and all organizations that distribute the CAE worldwide, the manner and method of distribution and the channels of distribution through the North Atlantic Treaty Organization, from the time they were first distributed to present.

(3)     Any and all contracts between Defendants and third parties relating to the distribution of the CAE, from the time they were first distributed to present.

(4)     Any and all shipping contracts relating to the shipment of the CAE, and receipts for shipping, from the time they were first shipped to present.

(5)     The manner in which the CAE were/are shipped nationwide, from the time they were first shipped to present.

(6)     The manner in which the CAE were/are shipped worldwide, from the time they were first shipped to present.

(7)     The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the distribution process and/or shipment of the CAE, both national and/or worldwide, from the time they were first distributed to present.

(8)     The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants responsible for communicating with the U.S. Government relating to the distribution

and/or shipment of Combat Arms Earplug, from the time they were first conceived to present.

(9)    The structure of Defendants' internal departments and divisions as it applies to distribution and shipment of the CAE, from the time they were first distributed or shipped to present.

(10)    The sources and location of all documents and data created and/or maintained by the individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants identified in Paragraphs 7-8, including but not limited to: custodial files; departmental files; committee files; project team files; databases; and shared work environments, such as SharePoint.

**B.    Packaging, Marketing and Labeling**

(11)    Any and all packaging for the CAE, from the time they were first distributed to present.

(12)    Any and all labeling for the CAE, from the time they were first distributed to present.

(13)    Any and all marketing strategy and campaigns for the CAE, including but not limited to strategies and/or campaigns aimed at the military, civilians or any other potential purchasers and users, from the time they were first conceived to present;

(14)   The production and distribution of training documents, training videos, and for instructions for use of the CAE.

(15) Any marketing videos concerning the CAE.

(16)   Any correspondence, documents, or data relating to the design or marketing of the carrying case for the CAE.

(17)   The marketing budget for the CAE, from the time they were first conceived to present.

(18)   The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the packaging and labeling of the CAE, both national and worldwide, from the time they were first distributed to present.

(19)   The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in developing and/or approving marketing strategies and campaigns for the Combat Arms Earplug, from the time they were first conceived to present.

(20)   The identity and role of any and all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants with responsibilities for promotional and marketing materials for the_Combat Arms Earplug, from the time they were first conceived to present.

(21)   The identity and role of all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants with responsibilities for promotional events relating to the CAE, including but not limited to: speaking events and lectures, conferences, meetings, and focus groups, from the time they were first conceived to present.

(22)   The structure of Defendants' internal departments and divisions as it applies to the marketing, packaging and labeling of the CAE, from the time they were first conceived to present.

(23)   Any and all contracts between Defendants and third parties relating to the marketing, packaging and labeling of the CAE, from the time they were first conceived to present.

(24)   The responsibilities of third parties with respect to the marketing, packaging and labeling of the CAE, from the time they were first conceived to present.

(25)   The sources and location of all documents and data created and/or maintained by the individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants identified in Paragraphs 18-21, including but not limited to: custodial files; departmental files; committee files; project team files; databases; and shared work environments, such as SharePoint.

C.   **Sales**

(26)   Any and all analyses run by Defendants' sales employees, sales departments and/or anyone working on their behalf to determine revenue and profit generated by the Combat Arms Earplug, from the time they were first sold to present.

(27)   Any and all sales projections run by Defendants' sales employees, sales departments and/or anyone working on their behalf relating to the Combat Arms Earplug, from the time they were first conceived to present.

(28)   Any and all contracts between Defendants and third parties relating to the sales of the CAE, from the time they were first conceived to present.

(29)   The responsibilities of third parties with respect to the sales of the CAE, from the time they were first conceived to present.

(30)   The identity and role of any all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the sales of the Combat Arms Earplug, including but not limited to sales representatives, detailers, regional and district sales managers, and their agents, from the time they were first conceived to present.

(31)   The identity and role of all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants with responsibilities for sales projections for the Combat Arms Earplug, from the time they were first conceived to present.

(32)    The identity and role of all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants with responsibilities for training Combat Arms Earplug sales representatives or detailers.

(33)    The identity and role of all individuals, entities, agents, consultants, third parties and/or current or former employees of Defendants involved in the pricing of the Combat Arms Earplug, from the time they were first conceived to present.

(34)    The sources and location of all documents and data created and/or maintained by the individuals or entities identified in Paragraphs 30-33, including but not limited to: custodial files; laptops, departmental files; committee files; project team files; databases; slide decks, electronic media, websites, payment information, and shared work environments, such as SharePoint.

DATED:  July 17, 2019

Respectfully submitted,

*/s/ Shelley V. Hutson*
Shelley V. Hutson, Co-Lead
Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, PLLC
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger,
Co-Lead Counsel
(Admitted Pro Hac Vice)
New  Jersey  State  Bar  No.
042631990
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

- 8 -

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Brian H. Barr, Co-Liaison
Counsel
Levin, Papantonio, Thomas,
Mitchell, Rafferty & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison
Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Shelley V. Hutson, hereby certify that on July 17, 2019, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

/s/ *Shelley V. Hutson*
Shelley V. Hutson

Exhibit **A**

## EXHIBIT A - SUBPOENA DUCES TECUM

### INSTRUCTIONS

1. Pursuant to Fed. R. Civ. P. 30(b)(2), this notice of deposition requires that Defendant 3M Company produce all requested DOCUMENTS that are in its actual or constructive possession, custody or control, including, without limitation, those DOCUMENTS in the possession, custody or control of 3M Company's attorneys, investigators, agents or other persons acting on 3M Company's behalf.

2. If Defendant 3M Company represents that it is unable to comply with a particular request, Defendant 3M Company must affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that request. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or is no longer in the possession, custody, or control of the responding party. This statement shall set forth the name and address of any natural person or organization known or believed by that party to have possession, custody or control of that item or category of item. Plaintiffs will move to exclude any documents in Defendant 3M Company's possession, custody, and/or control that are responsive to these requests that Defendant 3M Company does not produce.

3. These requests do not call for documents that are protected by the attorney-client privilege or the attorney work product doctrine. If in response to these requests Defendant 3M Company refuses to produce any documents based on a claim of privilege, a privilege log shall be produced within 30 days or five (5) business days before the

- 11 -

deposition of the designated deponent(s), whichever is earlier, containing all information identified in Pretrial Order 9, Section X.

## DEFINITIONS

As used in this subpoena duces tecum, the following terms shall have the following meanings:

1.     COMMUNICATION(S) means and refers to any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, email, text message, tape-recorded message or other occurrences in which thoughts, opinions, or information are transmitted between or among two or more persons between or among one or more persons and any electronic, photographic, or mechanical device or devices for receiving, transmitting, or storing data or other information.

2.     DOCUMENT(S) is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and expressly includes all iterations of handwritings, typings, printings, Photostats, photographs and any other method of recording upon any tangible thing, any form of COMMUNICATION, representation, such as letters, words, pictures, sounds, symbols or combinations thereof, and any data compilation from which information can be obtained through a detection device into usable form. The term "DOCUMENT" shall include, without limitation, all written graphic material such as letters, memoranda, reports, studies, notes, minutes, diary entries, including calendar entries indicating date of and participants to any meetings, notes or records of telephone conversations, conferences or other oral COMMUNICATIONS and appointment records, time records, ledgers, journals,

financial or accounting records, personnel records, payroll records, annual reports, work papers, schedules, photographs, recordings, charts, graphs, transcriptions, tapes, discs, e-mails, printouts and other electronic data processing materials. The term "DOCUMENT" shall also include each copy of a DOCUMENT that is not identical in all respects with or that contains any notation not appearing on said DOCUMENT.

## REQUESTED DOCUMENTS

Plaintiffs request that Defendant 3M Company produce the following documents within 30 days or five (5) days before the deposition of the designated deponent(s), whichever is earlier:

1. Curriculum vitae of proposed deponent(s).

2. All DOCUMENTS reviewed, considered, or relied upon in preparation for this deposition.

3. All DOCUMENTS referring to or relating to agreements between 3M Company and any third party concerning the national and/or worldwide distribution of the CAE, including but not limited to the agreements themselves, from the time they were first distributed to present.

4. All DOCUMENTS referring to or relating to agreements between 3M Company and any third party concerning the national and/or worldwide shipment of the CAE, including but not limited to the agreements themselves, from the time they were first shipped to present.

5. All DOCUMENTS referring to or relating to the national and/or worldwide distribution and shipment of the CAE through both military and civilian distribution

- 13 -

channels, including but not limited to, illustrative charts, PowerPoint presentations, diagrams, posters, brochures, leave-behind pamphlets, and any other DOCUMENTS that accompanied the CAE.

6.     All DOCUMENTS referring to or relating to agreements between 3M Company and any third party concerning the marketing, packaging and labeling of the CAE, including but not limited to the agreements themselves, from the time they were first conceived to present.

7.     All DOCUMENTS referring to or relating to agreements between 3M Company and any third party concerning the sales of the CAE, including but not limited to the agreements themselves, from the time they were first conceived to present.

8.     Any and all labeling for the CAE, from the time they were first distributed to present.

9.     Any organizational charts or similar DOCUMENTS identifying the structure of Defendants' internal departments and divisions as it applies to the distribution and shipment of the CAE, from the time they were first distributed or shipped to present.

10.     Any organizational charts or similar DOCUMENTS identifying the structure of Defendants' internal departments and divisions as it applies to the marketing, packaging and labeling of the CAE, from the time they were first conceived to present.

11.     Any organizational charts or similar DOCUMENTS identifying the structure of Defendants' internal departments and divisions as it applies to the sales of the CAE, from the time they were first conceived to present.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19md2885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | |
| | ) | Judge M. Casey Rodgers |
| This Document Relates to All Cases | ) | Magistrate Judge Gary R. Jones |

## NOTICE TO TAKE DEPOSITION PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 9:30 a.m. (Local) on August 28, 2019, Plaintiffs will take the deposition of Defendant 3M Company pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6). The deposition will be taken at Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654.

The deposition will be taken upon oral examination, pursuant to the provisions of Federal Rule of Civil Procedure 30, before a Notary Public or other official authorized to administer oaths, who is not a party to the above-captioned action. Such deposition shall continue from day to day, excluding weekends and holidays, until completed.

**PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded by videotape in addition to recording testimony by stenographic method

pursuant to Federal Rule of Civil Procedure 30.

**NOTE:** If the deponent requires the services of an interpreter, you must advise this office in writing no later than ten (10) business days before the date set for the deposition of both the need for the interpreter and the language required.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant 3M Company is requested to produce the documents responsive to the attached Request to Produce Documents and Tangible Things at Deposition (Exhibit A) ("Request to Produce Documents") within 30 days or five business days prior to the deposition of the designated deponent(s), whichever is earlier.

Plaintiffs request that 3M produce a copy of the designated representative's current curriculum vitae or resume at each deposition.

Defendant 3M Company is hereby requested and required, pursuant to Federal Rule of Civil Procedure 30(b)(6), to designate and produce a person or persons to testify on behalf of 3M Company the following matters:

(1)    When and where and to whom the dual-ended Combat Arms Earplugs ("CAEv2"), including any civilian or non-military version of the CAEv2, were

sold by Defendants[1] prior to the time the CAEv2 was first purchased by the Department of Defense[2];

(2)     The method and manner by which Defendants acquired a national stock number (NSN) for the CAEv2;

(3)     The method and manner by which the Department of Defense purchased the CAEv2 from Defendants, including but not limited to whether the CAEv2 was a commercial off the shelf ("COTS") product purchase at any time, and/or whether the Department of Defense used its Other Transaction Authority ("OTA") pursuant to 10 U.S.C. 2371 (a) and (b) to purchase the CAEv2 at any time, and/or whether the Army's Rapid Fielding Initiative ("RFI") program was used to purchase the CAEv2 or supply the CAEv2 to Army personnel;

(4)     Defendant 3M's acquisition of Aearo Technologies LLC, including all terms of the acquisition and the identity and location of all documents that reflect the terms of the acquisition;

(5)     Any due diligence documents provided at the time of 3M's acquisition

---

[1] "Defendants" is defined herein and is intended to include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, and each of their directors, officers, employees, former employees, agents or other representatives.

[2] "Department of Defense" is defined herein and is intended to include the Defense Department, the United States Department of Defense, Defense, or DoD as the federal department responsible for safeguarding national security of the United States.

3

of Aearo Technologies LLC, including sales, testing, contracts and any predecessor or successor products included in the acquisition;

(6)     The decision to perform NRR labeling tests on open and closed ends of the CAEv2 (Test ID's 213015, 213016 and 213017) starting in December 1999 and continuing into 2000, including but not limited to all discussions, meetings and communications concerning the Aearo companies' decision to perform such NRR tests.

(7)     All REAT testing performed on the open and closed ends of the CAEv2 prior to Tests 213015 and 213016, including but not limited to the laboratory protocol for the tests, insertion methods used in such tests, the selection of test subjects used for such testing, and the test IDs and results of such testing.

(8)     The selection of test subjects used in Tests 213015 (closed-end), 213016 (open-end), and 213017 (closed-end re-test), including but not limited to the prior testing history of such subjects, the inclusion of such test subjects in tests related to specific types of hearing protection devices, EARCAL lab protocols, policies and procedures concerning the selection of test subjects for NRR tests, the Flange Report's (as hereafter defined) reference to the "EARCAL Laboratory test panel," and the identity of all and whereabouts of all documents and data, including notebooks and questionnaires, related to the selection of test subjects for these tests.

(9)     The NRR testing of the open and closed-ends of the CAEv2 starting in

4

December 1999 and continuing into 2000 (Tests 213015, 213016 and 213017), including but not limited to the decision to stop Test 213015 after testing eight (8) test subjects, EARCAL lab protocols, policies and procedures concerning the premature termination of NRR labeling tests and the identification of outlier test results, regulations (including ANSI standards and EPA regulations) governing the fitting, testing, labeling and sale of the CAEv2, the conducting of such tests by EARCAL lab personnel, discussions and communications between such lab personnel during such testing, and the decision to roll back the yellow, non-inserted flanges of the CAEv2 prior to insertion of the olive (closed) end during Test 213017 (closed-end retest).

(10)   The drafting of the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," bates number 3M_MDL000019514 (referred to herein as the "Flange Report"), including but not limited to the decision to create the Flange Report, and discussions, communications and meetings related to drafting the Flange Report.

(11)   The design of the CAEv2 as described in the Flange Report, including but not limited to the statement in the Report that "the current length of the UltraFit Earplug end of the Combat Arms Plug is too short for proper insertion, and how changing the fitting technique affected the results of real-ear tests of this plug."

(12)   Any design decisions beyond those discussed in the Flange Report,

including where and when 3M designed the CAEv2 (for example, whether the design was generated in a laboratory setting), whether the design was based on preexisting technology.

(13)   Any representations made by Defendants relating to the NRR testing and CAEv2 results to the military and/or public.

(14)   Any approval of the CAEv2 design by the military/Department of Defense and any documentation of discussions with military on same.

(15)   Any internal or external communications or decisions about communication made with regard to instructions for use or fit of the CAEv2.

(16)   Defendants' understanding of the terms and scope of the procurement contract.

(17)   The retention and storage of the Flange Report, including but not limited to the disclosure of the Flange Report or the information contained in the Report to Defendants and third-parties, and the document collection and production process for the Flange Report in *Moldex-Metric, Inc. v. 3M Innovative Properties Company*, No. 14-1821 (D. Minn.) (*"Moldex II"*).

DATED:  August 2, 2019

Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263

6

Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street Suite
200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com


Shelley V. Hutson, Co-Lead
Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, PLLC
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead
Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com


Brian H. Barr, Co-
Liaison Counsel
Levin, Papantonio,
Thomas, Mitchell,
Rafferty & Proctor,
P.A.
316 South Baylen
Street

Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-
Liaison Counsel
Mostyn Law Firm
3810 W. Alabama
Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

**Counsel for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan F. Aylstock, hereby certify that on August 2, 2019, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock

# EXHIBIT A

## EXHIBIT A - SUBPOENA DUCES TECUM

## INSTRUCTIONS

1.      Pursuant to Fed. R. Civ. P. 30(b)(2), this notice of deposition requires that Defendant 3M Company produce all requested DOCUMENTS that are in its actual or constructive possession, custody or control, including, without limitation, those DOCUMENTS in the possession, custody, or control of 3M Company's employees, attorneys, investigators, agents or other persons acting on 3M Company's behalf.

2.      If Defendant 3M Company represents that it is unable to comply with a particular request, Defendant 3M Company must affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that request. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or is no longer in the possession, custody, or control of the responding party. This statement shall set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item. Plaintiffs will move to exclude any documents in Defendant 3M Company's possession, custody, and/or control that are responsive to these requests that Defendant 3M Company does not produce.

3.     These requests do not call for documents that are protected by the attorney client privilege or the attorney work product doctrine. If in response to these requests Defendant 3M Company refuses to produce any documents based on a claim of privilege, a privilege log shall be produced within 30 days or five (5) business days before the deposition of the designated deponent(s), whichever is earlier, containing all information identified in Pretrial Order 9, Section X.

## DEFINITIONS

As used in this Request to Produce Documents, the following terms shall have the following meanings:

1.     COMMUNICATION(S) means and refers to any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, email, text message, tape-recorded message or other occurrences in which thoughts, opinions, or information are transmitted between or among one or more persons and any electronic, photographic, or mechanical device or devices for receiving, transmitting, or storing data or other information.

2.     DEFENDANTS as defined herein is intended to include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, and each of their directors, officers, employees, former employees, agents or other representatives.

3.      DOCUMENT(S) is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and expressly includes all iterations of handwritings, typings, printings, Photostats, photographs, and any other method of recording upon any tangible thing, any form of COMMUNICATION, representation, such as letters, words, pictures, sounds, symbols or combinations thereof, and any data compilation from which information can be obtained through a detection device into usable form. The term "DOCUMENT" shall include, without limitation, all written graphic material such as letters, memoranda, reports, studies, notes, minutes, diary entries, including calendar entries indicating date of and participants to any meetings, notes or records of telephone conversations, conferences, or other oral COMMUNICATIONS and appointment records, time records, ledgers, journals, financial or accounting records, personnel records, payroll records, annual reports, work papers, schedules, photographs, recordings, charts, graphs, transcriptions, tapes, discs, emails, printouts and other electronic data processing materials. The term "DOCUMENT" shall also include each copy of a DOCUMENT that is not identical in all respects with or that contains any notation not appearing on said DOCUMENT.

## REQUESTED DOCUMENTS

Plaintiffs request that Defendant 3M Company produce the following documents within 30 days or ten (10) days before the deposition of the designated deponent(s), whichever is earlier:

1.      Documents which identify Defendants' commercial sales of the CAEv2, including any civilian version or non-military version of the CAEv2, prior to Defendants' contract and/or agreement with the Department of Defense for the sale of the CAEv2.

2.       Documents which reflect and relate to the method and manner by which the Department of Defense purchased the CAEv2, including but not limited to documents related to a commercial off the shelf ("COTS") product purchase of the CAEv2 at any time, or documents related to a purchase of the CAEv2 in which the Department of Defense used its Other Transaction Authority ("OTA") pursuant to 10 U.S.C. 2371 (a) and (b), and/or documents related to or reflecting a purchase or supply of the CAEv2 through the  Rapid Fielding Initiative ("RFI") program.

3.      Documents which reflect or relate to the national stock number acquired by Defendants for the purchase of the CAEv2.

4.      The acquisition documents related to 3M's acquisition of Aearo Technologies LLC, including but not limited to the signed purchase agreement and

all documents related to the purchase of Aearo Technologies LLC's liabilities by 3M.

5.      All documents regarding the Flange Report, including but not limited to: any drafts of the Flange Report, any communications related to drafts of the final version of the Flange Report, and any documents regarding the information contained in the Flange Report.

6.      All documents identifying the individual subjects (i.e., "test subjects") that participated in any way in the testing identified in the Flange Report.

7.      All documents regarding regulatory or industry standards Defendants utilized, referenced, or otherwise attempted to address in the testing or fitting identified in the Flange Report.

8.      All documents reflecting the testing protocol(s) Defendants utilized for the tests identified in the Flange Report.

9.      All documents containing data created for, during or as a result of the testing identified in the Flange Report.

10.     All documents containing test subject's test results or other individual data for the testing identified in the Flange Report.

11.     All documents provided to any test subject before, during, or after the testing identified in the Flange Report regarding the tests to which the test subject was or potentially would be subjected.

12.     All communications between Defendants (including any employee or former employee) and the United States Government/Military (or anyone purportedly acting on its behalf) relating to the Flange Report.

13.     All communications between Defendants (including any employee or former employee) and Doug Ohlin relating to the Flange Report.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No.  3:19md2885<br>Judge M. Casey Rodgers |
| This Document Applies to:<br>All Cases | Magistrate Judge Gary R. Jones |

## DEFENDANTS' INITIAL DISCLOSURE

Pursuant to Fed. R. Civ. P. 26(a)(l), Defendants 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC and Aearo, LLC (collectively "3M") hereby serve the following initial disclosure upon Plaintiffs in the *In re 3M Combat Arms Earplug Products Liability Litigation* (the "MDL").

## PRELIMINARY  STATEMENT

3M has made a reasonable and good faith effort to respond to the Rule 26(a)(l) initial disclosure requirements. The following responses are based generally on the common allegations in the various Plaintiffs' complaints in the MDL, and the information and documents presently known and available to 3M, and after the exercise of reasonable diligence. The information contained herein is provided in a good faith effort to supply such factual information as is presently known to 3M, but is without prejudice to 3M's right to supplement, amend or otherwise modify this disclosure as discovery, and 3M's review, research and analysis continues. 3M reserves the right to object to the use -- in discovery proceedings, at trial or for any other purposes -- of the information contained herein based upon relevance, materiality, confidentiality, privilege or immunity, or any other objection that may be available to 3M under applicable rules of law or evidence.

1

This preliminary statement applies to all of the information provided in this initial disclosure and is incorporated in each section as though fully set forth therein. Without limiting the foregoing, in providing this initial disclosure, 3M does not intend to waive, but to the contrary intends to preserve, all applicable privileges, including, but not limited to, the attorney-client and work product privileges. 3M expressly reserves the right under Rule 26(e) of the Federal Rules of Civil Procedure to amend or supplement this disclosure as discovery progresses.

## DISCLOSURES

I. **PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION**

The following is a list of fact witnesses likely to have discoverable information which 3M may use to support its defenses, other than solely for impeachment.

| Name | Contact Information | Subject Matter |
|---|---|---|
| Elliott Berger | c/o Counsel of Record | Former 3M employee with knowledge of 3M business operations, Combat Arms testing, and Combat Arms design, development, and characteristics. |
| Robert Falco | c/o Counsel of Record | Former 3M employee with knowledge of Combat Arms design, development, and characteristics. |
| Eric Fallon | c/o Counsel of Record | 3M employee with knowledge of 3M business operations and Combat Arms marketing, including to U.S. government customers. |
| Jeff Hamer | c/o Counsel of Record | 3M employee with knowledge of 3M business operations and Combat Arms design, development, and characteristics. |

2

| Name | Contact Information | Subject Matter |
|---|---|---|
| Jason Jones | c/o Counsel of Record | 3M employee with knowledge of Combat Arms marketing and sales, including to U.S. government customers. |
| Ron Kieper | c/o Counsel of Record | Former 3M employee with knowledge of 3M Combat Arms testing and Combat Arms design, development and characteristics. |
| Cynthia Kladden | c/o Counsel of Record | Former 3M employee with knowledge of 3M business operations. |
| Ted Madison | c/o Counsel of Record | Former 3M employee with knowledge of 3M business operations, Combat Arms testing, marketing and sales, including to U.S. government customers. |
| Doug Moses | c/o Counsel of  Record | 3M employee with knowledge of 3M business operations, Combat Arms testing, marketing and sales, including to U.S. government customers, and Combat Arms design, development, and characteristics. |
| Brian Myers | c/o Counsel of Record | 3M employee with knowledge of 3M business operations and Combat Arms marketing. |
| Doug Ohlin (deceased) | c/o Counsel of  Record | Former 3M employee with knowledge of 3M business operations, Combat Arms testing, marketing  and sales, including  to U.S. government customers, and Combat Arms design, development, and characteristics. |
| Marc Santoro | c/o Counsel of  Record | Former 3M employee with knowledge of 3M business operations and Combat Arms marketing. |

In addition, the following are other categories of persons who may have discoverable information that 3M may use to support its claims or defenses:

1.      Any person necessary to lay the foundation for any document;

2.      Any person listed in Plaintiffs' future disclosures; and

3.      Any supervisor or employee of any person listed by any party.

## II.     DOCUMENTS 3M MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES

3M has documents and tangible things in its possession, custody or control that it may use to support its defenses in the MDL, other than solely for impeachment, in the following categories:

1.  Documents and tangible things  produced in the Moldex patent litigations;

2.  Documents and tangible things produced in the 3M CAE *qui tam* litigation;

3.  Documents relating to the design, development, testing, sale and marketing of the 3M products at issue in this MDL; and

4.  Documents relating to the United States Government's involvement in the development, testing, purchase and distribution to Plaintiffs of the products at issue in this MDL.

Such documents are located in the files maintained by 3M and/or by the United States Government.

3M expressly reserves the right to amend or supplement this disclosure as permitted by Rule 26(e) of the Federal Rules of Civil  Procedure.

4

### III.  COMPUTATION OF DAMAGES

3M is not claiming any damages from Plaintiffs.

### IV.  INSURANCE OR INDEMNIFICATION AGREEMENTS

3M purchases commercially available insurance coverage, the terms of which are set

forth in many insurance policies.  To the extent an individual plaintiff's case is designated as

a bellwether, 3M will disclose information on the insurance policy or policies applicable to

that plaintiff's claims.


DATED:  June 28, 2019                    Respectfully  submitted,


KIRKLAND & ELLIS LLP


By: /s/ Kimberly Branscome
Kimberly Branscome (SBN 255480)
kimberly.branscome@kirkland.com
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500

*Attorneys for Defendants 3M Company, Aearo*
*Technologies LLC, Aearo Holdings, LLC, Aearo*
*Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 28, 2019, a true and correct copy of the

foregoing:

### DEFENDANTS' INITIAL DISCLOSURES

was served as follows:

⊠      **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

Bryan F. Aylstock, Lead Counsel
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

DATED: June 28, 2019

/s/ Kimberly Branscome
Kimberly Branscome