# **EXHIBIT 18**

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Kimberly Branscome
To Call Writer Directly:
+1 213 680-8370
kimberly.branscome@kirkland.com

333 South Hope Street
Los Angeles, CA 90071
United States

+1 213 680-8400

www.kirkland.com

Facsimile:
+1 213 680-8500

October 15, 2019

**Via E-mail**
Judge M.C. Rodgers
United States District Court
Northern District of Florida
100 North Palafox Street
Pensacola, Florida 32502

Re:   In re: 3M Combat Arms Earplug Prods. Liab. Litig., 3:19-md-2885

Dear Judge Rodgers:

Defendants submit this letter brief in opposition to Plaintiffs' unreasonable request to depose Dr. Elliott Berger for four days and depose Mr. Doug Moses and Mr. Brian Myers for three days without good cause.

The Court's Deposition Protocol, Pretrial Order No. 13, states:

Absent agreement of the Parties or order of this Court for good cause shown, an individual designated to testify as **both a corporate representative and in his or her individual capacity may not be deposed for more than a total of two (2) days of 7.5 hours of testimony per day**.  (Pretrial Order No. 13, Paragraph 7) (emphasis added).

Despite the Court's order—which was subject to extensive negotiation by the parties, argued at a hearing, and ultimately ruled on by the Court—plaintiffs now seek more than two days of deposition time for *each* of the three Rule 30(b)(6) deponents designated in this case: Dr. Elliott Berger, Mr. Brian Myers, and Mr. Doug Moses.  Plaintiffs seek to depose Dr. Berger for thirty hours and Mr. Myers and Mr. Moses for twenty-two and a half hours each.  But if Plaintiffs were correct that they met the *"good cause" requirement for every witness*, then the Court's good-cause requirement and presumptive two-day limit, as set forth in Pretrial Order No. 13, would have no meaning.

Plaintiffs' request to depose every Rule 30(b)(6) witness for more than two days should be denied.

Judge M.C. Rodgers
October 15, 2019
Page 2

**I.      The Court's Deposition Protocol Order Requires Plaintiffs to Show Good Cause to Obtain More Than 15 Hours of Deposition Time for Any Witness Who Sits for Both an Individual Deposition and a Rule 30(b)(6) Deposition.**

Fed.R.Civ.P. 30(d)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours." The 2000 Advisory Committee Notes to this amendment provide that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Even then, "the deposing party does not have carte blanche to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness." *Forte Capital Partners, LLC v. Harris Cramer, LLP*, No. C 07-1237 SBA, 2008 WL 4924724, at *3 (N.D. Cal. Nov. 14, 2008) (*Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, *1 (S.D.N.Y. 2001)). Yet, here, plaintiffs seek "carte blanche" not just to depose witnesses for fourteen hours, but to markedly extend the depositions of Dr. Berger, Mr. Myers, and Mr. Moses beyond fourteen hours.

A party cannot circumvent the Federal Rules simply by breaking up topics into separate Rule 30(b)(6) notices. *See Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *4 (N.D. Ill. July 19, 2001) ("ComEd has not provided the Court with any case authority for its argument that it can simply serve six separate notices of deposition under Rule 30(b)(6) and be automatically entitled to six full days of depositions regardless of the number of corporate representatives designated by Canal Barge.")

Consistent with the Federal Rules, the Court's Deposition Protocol treats individual and Rule 30(b)(6) depositions as separate. (Deposition Protocol, Paragraph 7) ("One deposition will be taken in his or her individual capacity (as a fact witness) and a separate deposition will be taken in his or her capacity as a corporate representative.") Also consistent with the Federal Rules, the Court's Deposition Protocol presumptively limits both the individual deposition and the Rule 30(b)(6) deposition to 7.5 hours each - *i.e.*, 15 hours total for the two depositions. To obtain more than 15 hours of total deposition time for a witness, plaintiffs must show "good cause." Pretrial Order No.13 states: "Absent agreement of the Parties or order of this Court for good cause shown, an individual designated to testify as both a corporate representative and in his or her individual capacity may not be deposed for more than a total of two (2) days of 7.5 hours of testimony per day." (Pretrial Order No. 13, Paragraph 7)

**II.     Plaintiffs Have Not Shown Good Cause to Use Three Deposition Days For Dr. Berger, Much Less Four Days.**

A deposition is not an endurance contest. A party must show good cause to extend a deposition beyond the limits imposed by the Court. To show "good cause," Plaintiffs must demonstrate that additional time is needed to fairly examine the deponent. *See Home Design*

Judge M.C. Rodgers
October 15, 2019
Page 3

*Servs, Inc. v. W. Gargas Const., Inc.*, No. 308CV244 MCR EMT, 2009 WL 3190462, at *3 n.2 (N.D. Fla. Oct. 1, 2009) (identifying three factors in analyzing whether to extend additional time for depositions: (i) whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from a less burdensome source; (ii) whether the party seeking discovery has had ample opportunity to obtain the information by discovery; and (iii) whether the burden or expense of the proposed discovery outweighs its likely benefit); *see also* Fed. R. Civ. P. 30(d) Advisory Committee's Note (2000 Amendment).  Plaintiffs cannot show that any of these three factors demonstrate good cause to justify two additional days to depose Dr. Berger.

Out of the fifty-one topics on which Plaintiffs seek corporate representative testimony, Dr. Berger has been designated as a witness for just twelve.  These topics, which overlap almost entirely with Dr. Berger's individual knowledge, are set forth in Exhibit A.

Dr. Berger's personal knowledge is closely intertwined with his testimony as a corporate representative.  For example, Dr. Berger is the author of the Flange Report in Subject Nos. 10, 11, 12, and 17.  Dr. Berger also supervised the tests and has knowledge of the EARCAL lab protocols discussed in Subject Nos. 6, 7, 8 and 9.  Dr. Berger's personal and corporate testimony will significantly overlap in terms of events, his involvement in the development of the product, and his interaction with the government.  Plaintiffs will obtain the same information regardless of whether he testifies on behalf of himself or 3M.  This can easily be accomplished in two days or less.

Indeed, much of the testimony that Plaintiffs now seek over a 4 day period is already contained within Dr. Berger's two previous depositions in the *Moldex* matters, which should significantly streamline Plaintiffs' questioning. Moreover, Dr. Berger's previous depositions were approximately 7.5 and 6 hours long respectively, indicating that one day for his individual deposition is more than sufficient. The two prior depositions are attached for the Court's reference as Exhibits B-C hereto.[1] 3M has also produced twenty-five depositions from the *Moldex* cases[2] and over one-hundred thousand documents responsive to Plaintiffs' various discovery requests.  These productions include documents responsive to the topics to which Dr. Berger is designated as a witness.  As plaintiffs conceded, Dr. Berger had more documents in his production set than any other custodian in Defendants first set of productions.  (Dkt. 715 at 18) ("Dr. Berger, at least in the first production set, had more documents than anybody else.").

---

[1] The deposition transcripts are being submitted separately in camera.

[2] *See* 3M Production Vols. II (7/29/2019), III (8/2/2019), IV (8/13/2019), Vol. V (8/26/2019).

Judge M.C. Rodgers
October 15, 2019
Page 4

**III.      Plaintiffs Have Not Demonstrated Good Cause to Use Three Days of Deposition Time for Mr. Moses and Mr. Myers, Particularly Given That They Have Already Been Deposed In the *Moldex* Cases.**

Plaintiffs likewise cite various documents to suggest that Mr. Moses and Myers are "important" witnesses. But Plaintiffs thus far have argued that *every* witness is an "important" witness. If *every* witness meets the good cause standard, then that standard is meaningless.

Importantly, **Mr. Moses has already been deposed for two days** in the *Moldex* cases. (Exs. D and E). And **Mr. Myers has already been deposed for one day** in *Moldex*. Both depositions have been produced to Plaintiffs, and like Dr. Berger's previous depositions, both overlap significantly with the subject matters in this case. The three prior depositions are attached for the Court's reference. Exhibits D-F hereto. Plaintiffs have not demonstrated why they need five total days of deposition testimony from Mr. Moses (counting both the *Moldex* case and this case), or four total days of deposition testimony from Mr. Myers.

Judge M.C. Rodgers
October 15, 2019
Page 5

## **CONCLUSION**

      For each of these reasons, 3M respectfully requests that the Court deny Plaintiffs' request for four days of deposition time for Dr. Berger, and three days of deposition time for Mr. Moses and Mr. Myers.  In the alternative, if the Court finds that good cause exists to exceed the presumptive limit in the Court's order with respect to Dr. Berger, 3M proposes that Dr. Berger's depositions be limited to three non-consecutive days during the week of November 11, 2019; no more than 7.5 hours per day.

                                             Sincerely,

                                             */s/ Kimberly Branscome*

                                             Kimberly Branscome

**EXHIBIT A**

### 30(b)(6) Topics Assigned to Dr. Elliott Berger

1. **SUBJECT NO. 16 (First Notice):** Any correspondence, documents, or data relating to the design or marketing of the carrying case for the CAE.

2. **SUBJECT NO. 6 (Second Notice):** The decision to perform NRR labeling tests on open and closed ends of the CAEv2 (Test ID's 213015, 213016 and 213017) starting in December 1999 and continuing into 2000, including but not limited to all discussions, meetings and communications concerning the Aearo companies' decision to perform such NRR tests.

3. **SUBJECT NO. 7 (Second Notice):** All REAT testing performed on the open and closed ends of the CAEv2 prior to Tests 213015 and 213016, including but not limited to the laboratory protocol for the tests, insertion methods used in such tests, the selection of test subjects used for such testing, and the test IDs and results of such testing.

4. **SUBJECT NO. 8 (Second Notice):** The selection of test subjects used in Tests 213015 (closed-end), 213016 (open-end), and 213017 (closed-end re-test), including but not limited to the prior testing history of such subjects, the inclusion of such test subjects in tests related to specific types of hearing protection devices, EARCAL lab protocols, policies and procedures concerning the selection of test subjects for NRR tests, the Flange Report's (as hereafter defined) reference to the "EARCAL Laboratory test panel," and the identity of all and whereabouts of all documents and data, including notebooks and questionnaires, related to the selection of test subjects for these tests.

5. **SUBJECT NO. 9 (Second Notice):** The NRR testing of the open and closed-ends of the CAEv2 starting in December 1999 and continuing into 2000 (Tests 213015, 213016 and 213017), including but not limited to the decision to stop Test 213015 after testing eight (8) test subjects, EARCAL lab protocols, policies and procedures concerning the premature termination of NRR labeling tests and the identification of outlier test results, regulations (including ANSI standards and EPA regulations) governing the fitting, testing, labeling and sale of the CAEv2, the conducting of such tests by EARCAL lab personnel, discussions and communications between such lab personnel during such testing, and the decision to roll back the yellow, non-inserted flanges of the CAEv2 prior to insertion of the olive (closed) end during Test 213017 (closed-end retest).

6. **SUBJECT NO. 10 (Second Notice):** The drafting of the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," bates number 3M_MDL000019514 (referred to herein as the "Flange Report"), including but not limited to the decision to create the Flange Report, and discussions, communications and meetings related to drafting the Flange Report.

7. **SUBJECT NO. 11 (Second Notice):** The design of the CAEv2 as described in the Flange Report, including but not limited to the statement in the Report that "the current length of the UltraFit Earplug end of the Combat Arms Plug is too short for proper insertion, and how changing the fitting technique affected the results of real-ear tests of this plug."

8. **SUBJECT NO. 12 (Second Notice):** Any design decisions beyond those discussed in the Flange Report, including where and when 3M designed the CAEv2 (for example, whether the design was generated in a laboratory setting), whether the design was based on preexisting technology.

9. **SUBJECT NO. 13 (Second Notice):** Any representations made by Defendants relating to the NRR testing and CAEv2 results to the military and/or public.

10. **SUBJECT NO. 14 (Second Notice):** Any approval of the CAEv2 design by the military/Department of Defense and any documentation of discussions with military on same.

11. **SUBJECT NO. 15 (Second Notice):** Any internal or external communications or decisions about communication made with regard to instructions for use or fit of the CAEv2.

12. **SUBJECT NO. 17 (Second Notice):** The retention and storage of the Flange Report, including but not limited to the disclosure of the Flange Report or the information contained in the Report to Defendants and third-parties, and the document collection and production process for the Flange Report in Moldex-Metric, Inc. v. 3M Innovative Properties Company, No. 14-1821 (D. Minn.) ("Moldex II").