# **EXHIBIT 26**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19md2885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | |
| | ) | |
| This Document Relates to All Cases | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |

Defendant 3M Company ("3M") serves its Responses and Objections to Plaintiffs' August 2, 2019 Notice to Take Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6).

## GENERAL OBJECTIONS TO 30(b)(6) NOTICE AND SUBPOENA DUCES TECUM

3M hereby makes the following General Objections to Plaintiffs' July 17, 2019 Notice to Take Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) and Exhibit A - Subpoena Duces Tecum served concurrently therewith and incorporates each of these General Objections by reference into its responses to each individual Subject of Examination (a "Subject") and/or Document Request ("Request") as though fully set forth therein.

(1)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it calls for information, seeks discovery, or attempts to impose any obligations

beyond those permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

(2)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it seeks information that is not relevant to the subject matter of this proceeding.  3M's objections and responses are not intended and should not be construed as an acknowledgment of relevance.

(3)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.

(4)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it calls for any legal conclusions.

(5)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it is redundant, duplicative, and/or cumulative of discovery previously taken of or provided by 3M.

(6)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it seeks information that is not known or reasonably available to 3M, or that is not within 3M's possession, custody, or control.

(7)     3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent it seeks information already in the possession of Plaintiffs or equally available to Plaintiffs from sources other than 3M, including publicly available sources.

(8)     3M objects to any and all definitions or instructions that would require ascribing any meaning(s) other than the plain meaning(s) to the language of Plaintiffs' Rule 30(b)(6) Notice of Deposition.

(9)     3M reserves the right to modify, amend, or supplement its responses, which are based upon 3M's current knowledge, understanding, belief, and searches for information and documents.

(10)    No objection, limitation, or response, or lack thereof, made herein shall be deemed an admission by 3M as to the existence or non-existence of any information, and shall not be construed in any way as an admission that any definition provided by Plaintiffs is either factually correct or legally binding upon 3M, or as a waiver of any of 3M's objections.   3M's enumeration of specific objections in response to the Subjects and/or Requests is not, and should not be construed to be, a waiver of any objection not so specified or a waiver or forfeiture of any claim of applicable privilege or work product protection.

(11)    3M objects to Plaintiffs' Plaintiffs' Rule 30(b)(6) Notice of Deposition to the extent that they call for information or seek discovery that Defendants have

already produced, agreed to produce, or been ordered to produce in this federal MDL Proceeding, including but not limited to the following:  (i) 3M's prior or ongoing productions resulting from the *Qui Tam* Action; and (ii) 3M's prior or ongoing productions from Moldex I and Moldex II consistent with the Parties' agreed-upon early production of documents as described in the Court's Pretrial Order No. 10 regarding Production of Documents and Electronically Stored Information (Dkt. 443).

(12)   3M objects to Plaintiffs' definition of "document" and/or "documents" in Paragraph No. 4 of Plaintiffs' Definitions/Instructions, to the extent that it improperly seeks documents that may not have been kept in the ordinary course of business, may not be in a reasonably accessible and recoverable format, and/or may not be obtained after a good-faith and reasonable search.

(13)   3M objects to Plaintiffs' Requests to the extent that they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, including without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult, as well as prohibitively expensive or time-consuming.

(14)   3M objects to each of Plaintiffs' Requests asking for "each," "every," "any," or "all" document(s), communication(s), person(s), or event(s) on the ground that such Requests are vague, ambiguous, overly broad, unduly burdensome,

oppressive, and/or seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections, 3M will diligently search for and produce, if located, responsive, non-privileged documents. To the extent 3M specifically identifies documents in response to individual Requests, 3M cannot and does not, however, represent that these documents represent "each," "every," "any," or "all" documents that may be responsive to Plaintiffs' Requests.

(15)   3M's production of any information or documents in response to Plaintiffs' Requests should not be construed as:  (a) a stipulation that the material is relevant or admissible; (b) a waiver of 3M's General Objections or any objections asserted in response to specific requests; (c) an agreement that requests for similar information will be treated in a similar manner; or (d) a waiver or forfeiture of any claim of applicable privilege or work product protection.  3M expressly reserves the right to object to further discovery, to the subject matter of these Requests, and to the introduction into evidence of any documents that 3M may produce in response to these Requests.

(16)   3M objects to these requests on the ground that it is inefficient and unduly burdensome to require 3M to address them through witness testimony rather than the production of documents.  3M offers to meet and confer with plaintiffs

regarding the production of documents in lieu of deposition testimony.  *See also* Pretrial Order Nos. 10 and 12.

3M objects to Plaintiffs' Rule 30(b)(6) Notice of Deposition as overly broad and unduly burdensome in that it requests testimony on 15 overly-broad topics, in addition to the 34 topics included in the Plaintiffs' first 30(b)(6) notice.

## SPECIFIC OBJECTIONS TO 30(b)(6) NOTICE

## SUBJECT NO. 1:

When and where and to whom the dual-ended Combat Arms Earplugs ("CAEv2"), including any civilian or non-military version of the CAEv2, were sold by Defendants[1] prior to the time the CAEv2 was first purchased by the Department of Defense[2];

## RESPONSE TO SUBJECT NO. 1:

3M objects to this request to the extent it seeks information about the distribution of CAEv2 earplugs by entities other than Defendants.  3M further objects to this request to the extent it seeks information about military distribution

---

[1]   "Defendants" is defined herein and is intended to include 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC, and each of their directors, officers, employees, former employees, agents or other representatives.

[2]   "Department of Defense" is defined herein and is intended to include the Defense Department, the United States Department of Defense, Defense, or DoD as the federal department responsible for safeguarding national security of the United States.

channels outside of defendants' control.  3M further objects to this request as vague, overbroad and unduly burdensome.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to generally describe where and to whom the CAEv2 earplugs were sold, to the best of 3M's knowledge and based upon a reasonable investigation.

**SUBJECT NO. 2:**

The method and manner by which Defendants acquired a national stock number (NSN) for the CAEv2;

**RESPONSE TO SUBJECT NO. 2:**

3M objects to the term "method and manner" as vague and ambiguous.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to generally describe the method in which CAEv2 received an NSN, to the best of 3M's knowledge and based upon a reasonable investigation.

**SUBJECT NO. 3:**

The method and manner by which the Department of Defense purchased the CAEv2 from Defendants, including but not limited to whether the CAEv2 was a commercial off the shelf ("COTS") product purchase at any time, and/or whether the Department of Defense used its Other Transaction Authority ("OTA") pursuant to 10 U.S.C. 2371 (a) and (b) to purchase the CAEv2 at any time, and/or whether the

Army's Rapid Fielding Initiative ("RFI") program was used to purchase the CAEv2 or supply the CAEv2 to Army personnel;

**RESPONSE TO SUBJECT NO. 3:**

3M objects to this request to the extent it seeks information about the purchase of CAEv2 that is outside of 3M's possession, custody or control. 3M further objects to this request to the extent it seeks information known to the Department of Defense.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to generally describe the manner in which CAEv2 was purchased by the DoD from 3M, to the best of 3M's knowledge based upon a reasonable investigation of information within 3M's possession, custody, or control.

**SUBJECT NO. 4:**

Defendant 3M's acquisition of Aearo Technologies LLC, including all terms of the acquisition and the identity and location of all documents that reflect the terms of the acquisition;

**RESPONSE TO SUBJECT NO. 4:**

3M objects to this request to the extent it calls for any witness to provide legal interpretation with respect to any contracts. 3M further objects to the request to identify and provide the location of all documents that reflect the term of the acquisition as overly broad and unduly burdensome. The sources and locations of

documents produced by Defendants are identified in metadata produced by Defendants in accordance with Pretrial Order Nos. 10 and 12

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to identify contracts relating to the acquisition of Aearo Technologies LLC to the best of 3M's knowledge based upon a reasonable investigation of documents within 3M's possession, custody or control.

## SUBJECT NO. 5:

Any due diligence documents provided at the time of 3M's acquisition of Aearo Technologies LLC, including sales, testing, contracts and any predecessor or successor products included in the acquisition;

## RESPONSE TO SUBJECT NO. 5:

3M objects to this request to the extent that it seeks documents and information subject to the attorney-client privilege or the work product doctrine. 3M further objects to this request to the extent it calls for any witness to provide a legal opinion with respect to any documents 3M received during the due diligence process.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to describe generally the documents provided to 3M during due diligence period leading to the acquisition of Aearo Technologies LLC to the best of 3M's

knowledge based upon a reasonable investigation of documents within 3M's possession, custody or control.

**SUBJECT NO. 6:**

The decision to perform NRR labeling tests on open and closed ends of the CAEv2 (Test ID's 213015, 213016 and 213017) starting in December 1999 and continuing into 2000, including but not limited to all discussions, meetings and communications concerning the Aearo companies' decision to perform such NRR tests.

**RESPONSE TO SUBJECT NO. 6:**

3M objects to this request to the extent it calls for any witness to provide a legal opinion regarding compliance with federal guidelines for NRR labeling.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to testify regarding the decision to perform NRR labeling tests on the open and closed ends of the CAEv2 to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

**SUBJECT NO. 7:**

All REAT testing performed on the open and closed ends of the CAEv2 prior to Tests 213015 and 213016, including but not limited to the laboratory protocol for

the tests, insertion methods used in such tests, the selection of test subjects used for such testing, and the test IDs and results of such testing.

**RESPONSE TO SUBJECT NO. 7:**

3M objects to this request to the extent it seeks information about testing conducted by third parties outside of 3M's possession, custody, or control.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to testify regarding REAT testing of the CAEv2 prior to Tests 213015 and 213016 to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

**SUBJECT NO. 8:**

The selection of test subjects used in Tests 213015 (closed-end), 213016 (open-end), and 213017 (closed-end re-test), including but not limited to the prior testing history of such subjects, the inclusion of such test subjects in tests related to specific types of hearing protection devices, EARCAL lab protocols, policies and procedures concerning the selection of test subjects for NRR tests, the Flange Report's (as hereafter defined) reference to the "EARCAL Laboratory test panel," and the identity of all and whereabouts of all documents and data, including notebooks and questionnaires, related to the selection of test subjects for these tests.

## RESPONSE TO SUBJECT NO. 8:

3M objects to this request to the extent it calls for any witness to provide a legal opinion regarding compliance with federal guidelines for subject selection and training.  3M further objects to the phrase "selection of test subjects" as vague and ambiguous.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to to testify regarding the selection of test subjects for the CAEv2 for tests 213015, 213016, and 213017 to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 9:

The NRR testing of the open and closed-ends of the CAEv2 starting in December 1999 and continuing into 2000 (Tests 213015, 213016 and 213017), including but not limited to the decision to stop Test 213015 after testing eight (8) test subjects, EARCAL lab protocols, policies and procedures concerning the premature termination of NRR labeling tests and the identification of outlier test results, regulations (including ANSI standards and EPA regulations) governing the fitting, testing, labeling and sale of the CAEv2, the conducting of such tests by EARCAL lab personnel, discussions and communications between such lab personnel during such testing, and the decision to roll back the yellow, non-inserted

flanges of the CAEv2 prior to insertion of the olive (closed) end during Test 213017 (closed-end retest).

**RESPONSE TO SUBJECT NO. 9:**

3M objects to this request to the extent it calls for any witness to provide a legal opinion regarding compliance with federal guidelines including ANSI standards and EPA regulations.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to testify regarding the NRR testing of the open and closed-ends of the CAEv2 on tests 213015, 213016, to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

**SUBJECT NO. 10:**

The drafting of the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," bates number 3M_MDL000019514 (referred to herein as the "Flange Report"), including but not limited to the decision to create the Flange Report, and discussions, communications and meetings related to drafting the Flange Report.

**RESPONSE TO SUBJECT NO. 10:**

3M objects to this request to the extent it seeks information in the possession of third parties.

Notwithstanding its General objections, 3M offers to produce a witness or witnessesto testify regarding the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 11:

The design of the CAEv2 as described in the Flange Report, including but not limited to the statement in the Report that "the current length of the UltraFit Earplug end of the Combat Arms Plug is too short for proper insertion, and how changing the fitting technique affected the results of real-ear tests of this plug."

## RESPONSE TO SUBJECT NO. 11:

Notwithstanding its General objections, 3M offers to produce a witness or witnesses to testify regarding the design of the CAEv2 as described in the report titled "How Folding the Flanges Back Affects REAT Results of the UltraFit Earplug End of the Combat Arms Plug," to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 12:

Any design decisions beyond those discussed in the Flange Report, including where and when 3M designed the CAEv2 (for example, whether the design was

generated in a laboratory setting), whether the design was based on preexisting technology.

## RESPONSE TO SUBJECT NO. 12:

3M objects to this request, including the phrase "any design decisions," as vague, overbroad and unduly burdensome.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to describe generally the design decisions regarding the CAEv2 to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 13:

Any representations made by Defendants relating to the NRR testing and CAEv2 results to the military and/or public.

## RESPONSE TO SUBJECT NO. 13:

3M objects to the term "representations" and vague, overbroad, and unduly burdensome.  3M further objects to this request to the extent it seeks a list of all statements made relating to "NRR testing" or "CAEv2 results" as vague, overbroad, and unduly burdensome.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to describe generally the statements made to the military and/or the public regarding the CAEv2's NRR testing to the best of 3M's knowledge based

upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 14:

Any approval of the CAEv2 design by the military/Department of Defense and any documentation of discussions with military on same.

## RESPONSE TO SUBJECT NO. 14:

3M objects to this request to the extent that it seeks information outside of 3M's possession, custody or control.

Notwithstanding the above objections, 3M offers to produce a witness or witnesses to testify regarding the military's and/or DoD's approval of the CAEv2 design to the best of 3M's knowledge based upon a reasonable investigation of documents and information within 3M's possession, custody or control.

## SUBJECT NO. 15:

Any internal or external communications or decisions about communication made with regard to instructions for use or fit of the CAEv2.

## RESPONSE TO SUBJECT NO. 15:

3M objects to this request to the extent that it seeks information outside of 3M's possession, custody or control.  3M further objects to this request for all "communication[s]" as vague, overbroad, and unduly burdensome.

Notwithstanding the above objections, 3M offers to meet and confer with Plaintiffs regarding this request.

**SUBJECT NO. 16:**

Defendants' understanding of the terms and scope of the procurement contract.

**RESPONSE TO SUBJECT NO. 16:**

3M objects to this request to the extent it calls for any witness to provide legal interpretation with respect to any contracts.

Notwithstanding the above objections, 3M offers to meet and confer with Plaintiffs regarding this Request.

**SUBJECT NO. 17:**

The retention and storage of the Flange Report, including but not limited to the disclosure of the Flange Report or the information contained in the Report to Defendants and third-parties, and the document collection and production process for the Flange Report in *Moldex-Metric, Inc. v. 3M Innovative Properties Company*, No. 14-1821 (D. Minn.) (*"Moldex II"*).

**RESPONSE TO SUBJECT NO. 17:**

3M objects to this request to the extent it requests testimony regarding information that is subject to the attorney-client privilege or the attorney work product doctrine.

Notwithstanding the above objections, 3M offers to meet and confer with Plaintiffs regarding this Request.

## SPECIFIC OBJECTIONS TO EXHIBIT A SUBPOENA DUCES TECUM

## REQUEST NO. 1:

Documents which identify Defendants' commercial sales of the CAEv2, including any civilian version or non-military version of the CAEv2, prior to Defendants' contract and/or agreement with the Department of Defense for the sale of the CAEv2.

## RESPONSE TO REQUEST NO. 1:

3M objects to this request to the extent that it seeks documents outside of 3M's possession, custody and control.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

## REQUEST NO. 2:

Documents which reflect and relate to the method and manner by which the Department of Defense purchased the CAEv2, including but not limited to documents related to a commercial off the shelf ("COTS") product purchase of the CAEv2 at any time, or documents related to a purchase of the CAEv2 in which the Department of Defense used its Other Transaction Authority ("OTA") pursuant to

10 U.S.C. 2371 (a) and (b), and/or documents related to or reflecting a purchase or supply of the CAEv2 through the Rapid Fielding Initiative ("RFI") program.

**RESPONSE TO REQUEST NO. 2:**

3M objects to this request to the extent that it seeks documents outside of 3M's possession, custody and control.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 3:**

Documents which reflect or relate to the national stock number acquired by Defendants for the purchase of the CAEv2.

**RESPONSE TO REQUEST NO. 3:**

3M objects to this request as vague, overbroad and unduly burdensome. Countless documents contain the CAEv2 NSN.  Notwithstanding the above objections, 3M offers to meet and confer with Plaintiffs regarding this Request.

**REQUEST NO. 4:**

The acquisition documents related to 3M's acquisition of Aearo Technologies LLC, including but not limited to the signed purchase agreement and all documents related to the purchase of Aearo Technologies LLC's liabilities by 3M.

**RESPONSE TO REQUEST NO. 4:**

3M objects to this request to the extent that it seeks documents subject to the attorney-client privilege or the attorney work product doctrine.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 5:**

All documents regarding the Flange Report, including but not limited to: any drafts of the Flange Report, any communications related to drafts of the final version of the Flange Report, and any documents regarding the information contained in the Flange Report.

**RESPONSE TO REQUEST NO. 5:**

3M objects to the request for "any documents regarding the information contained in the Flange Report" as overbroad, vague, and ambiguous. 3M objects to this request to the extent that it seeks documents subject to the attorney-client privilege or the attorney work product doctrine.

Notwithstanding its General objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to

Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 6:**

All documents identifying the individual subjects (i.e., "test subjects") that participated in any way in the testing identified in the Flange Report.

**RESPONSE TO REQUEST NO. 6:**

3M objects to the request for "documents identifying the individual subjects (i.e., 'test subjects')" as vague and ambiguous.

Notwithstanding its General objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 7:**

All documents regarding regulatory or industry standards Defendants utilized, referenced, or otherwise attempted to address in the testing or fitting identified in the Flange Report.

**RESPONSE TO REQUEST NO. 7:**

3M objects to this request as vague and ambiguous.  3M further objects to this request as overbroad and unduly burdensome to the extent that it seeks documents which are publicly available and equally accessible by Plaintiffs.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 8:**

All documents reflecting the testing protocol(s) Defendants utilized for the tests identified in the Flange Report.

**RESPONSE TO REQUEST NO. 8:**

Notwithstanding its General objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 9:**

All documents containing data created for, during or as a result of the testing identified in the Flange Report.

**RESPONSE TO REQUEST NO. 9:**

3M objects to this request as vague, overbroad and unduly burdensome.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to

Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 10:**

All documents containing test subject's [sic] test results or other individual data for the testing identified in the Flange Report.

**RESPONSE TO REQUEST NO. 10:**

Notwithstanding its General objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 11:**

All documents provided to any test subject before, during, or after the testing identified in the Flange Report regarding the tests to which the test subject was or potentially would be subjected.

**RESPONSE TO REQUEST NO. 11:**

3M objects to this request as vague, overbroad and unduly burdensome. 3M objects to this request to the extent it seeks documents outside of 3M's possession, custody, or control.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to

Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 12:**

All communications between Defendants (including any employee or former employee) and the United States Government/Military (or anyone purportedly acting on its behalf) relating to the Flange Report.

**RESPONSE TO REQUEST NO. 12:**

3M objects to this request to the extent it seeks documents outside of 3M's possession, custody, or control.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

**REQUEST NO. 13:**

All communications between Defendants (including any employee or former employee) and Doug Ohlin relating to the Flange Report.

**RESPONSE TO REQUEST NO. 13:**

3M objects to this request to the extent it seeks documents outside of 3M's possession, custody, or control.

Notwithstanding the above objections, 3M will produce non-privileged documents responsive to this Request deemed relevant and responsive pursuant to Pretrial Order No. 12, to the extent that Defendants have not previously produced such documents pursuant to Pretrial Order No. 10.

DATED:  September 3, 2019                    Respectfully submitted,


                                             /s/ Kimberly Branscome
                                             Kimberly Branscome (SBN 255480)
                                             kimberly.branscome@kirkland.com
                                             KIRKLAND & ELLIS LLP
                                             333 South Hope Street
                                             Los Angeles, California 90071
                                             Telephone:  (213) 680-8370
                                             Facsimile:  (213) 680-8500

                                             *Attorneys for Defendants 3M
                                             Company, Aearo Technologies LLC,
                                             Aearo Holdings, LLC, Aearo
                                             Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 3, 2019, a true and correct copy of the

foregoing:

### 3M's Answers and Objections to August 2, 2019 Notice to Take Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6)

was served as follows:

☒ **[E-Mail]** By causing the above document to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.


Bryan F. Aylstock, Lead Counsel
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com


DATED: September 3, 2019

*/s/ Kimberly Branscome*
Kimberly Branscome

9