**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

Pending before the Court is Defendants' Motion for Clarification or, in the Alternative, Reconsideration of the Court's July 17 Order.  ECF No. 1296.  Plaintiffs have filed a response in opposition, ECF No. 1328, and this motion is ripe for the Court's consideration.  For the reasons discussed below, Defendants' motion is due to be **DENIED**.

## I. BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  Defendants' instant motion concerns a frequent subject of discovery litigation—the production of Plaintiffs' mental health records.

Therefore, a comprehensive summary of this discovery dispute is necessary.

## A.    Defendants' Motion to Compel Authorizations

Earlier this year, Defendants asked the Court to compel the Bellwether Plaintiffs to execute authorizations permitting the production of their entire mental health records from third-party (non-government) providers.  Defendants argued in their March 20, 2020, letter brief that they were "entitled to probe the validity of" the Bellwether Plaintiffs' claims for mental anguish, mental distress, and loss of enjoyment of life "by examining relevant mental health records."  The undersigned disagreed and denied Defendants' motion as to the Bellwether Plaintiffs' mental health records.[1]  The Court recognized, as a general matter, that mental health records are subject to a psychotherapist-patient privilege that may be waived when a plaintiff places his or her mental condition in controversy but applied the majority rule that "a party does not place his or her mental condition in controversy merely by requesting damages for mental anguish

---

[1] Defendants sought to compel the Bellwether Plaintiffs to execute authorizations for the release of six categories of records from third parties: (1) medical records; (2) tax returns; (3) employment records; (4) education records; (5) health insurance records; and (6) disability benefits records.  The Court granted Defendants' motion insofar as it required authorizations for the production of third-party medical records (excluding mental health records), employment records, and educational records from the end of their military service until initiation of this action.  ECF No. 1065 at 15.

or 'garden variety' emotional distress."  ECF No. 1065 at 5–6 (citing *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553 (N.D. Ga. 2001)).  The Court held that the Bellwether Plaintiffs' "request for damages to compensate mental anguish, distress, and loss of enjoyment of life [were] 'garden variety' claims that d[id] not place in controversy Plaintiffs' mental health records and thus open the door to discovery on this sensitive area."  *Id.* at 7.

The only caveat to the Court's ruling was the potential scenario where a Bellwether Plaintiff would testify to a specific psychological diagnosis or offer testimony from a psychological expert.  In that event, the Court anticipated Defendants would be entitled to the production of mental health records.  ECF No. 1064 at 5.  As to discovery on this issue, the Court suggested that Defendants were "free to ask any individual [B]ellwether [P]laintiff whether [he or she] suffered from any diagnosed mental health issue that [he or she is] going to assert, and … may of course ask the Plaintiffs whether they are going to offer any expert testimony in support of any mental health testimony."  *Id.* at 8.  The Court stated:

> What I thought you would do is would include in an interrogatory each of the [B]ellwether [P]laintiffs an interrogatory that would say, *Do you suffer from an identifiable mental health condition which you contend in this case is a causally related damage?*  Or, second interrogatory, *Do you intended to offer any expert*

3

> *testimony in support of any mental health psychological, mental heal conditions*—I'm sure you could draft something—*that you intend to assert in this case?*

*Id.* at 10–11 (emphasis in original).  And in its March 26, 2020, order, the

Court suggested permissible discovery consistent with that discussed at

the hearing:

> At the telephonic hearing, Plaintiffs stated that at this juncture they were not aware of any relevant mental diagnoses and did not intend to offer expert testimony on an award of damages for mental anguish, distress, and loss of enjoyment of life. Defendants, however, may: (1) propound discovery on the individual Bellwether Plaintiffs to determine if any has a diagnosed mental health condition; and (2) ask counsel for the Bellwether Plaintiffs whether they intend on offering expert testimony relevant to the above-mentioned damages or a mental health condition. If there is such a diagnosis or an intent to offer expert testimony, Defendants would be entitled *at that time* to discovery on this issue (and consequently the execution of an authorization).

ECF No. 1065 at 7 n.2.

## B.   Defendants' Mental Health Interrogatories

Defendants then attempted to proceed with discovery on the

Bellwether Plaintiffs' mental health conditions and claims.  In their Second

Set of Interrogatories, Defendants included three discovery requests they

claim were derived from the Court's March 26, 2020, order:

**<u>INTERROGATORY NO. 71</u>:**
Describe any mental health condition(s) with which You have been diagnosed, and, for each, Identify the Person who

4

diagnosed you with the condition(s) and the date of the diagnosis.

**INTERROGATORY NO. 72:**
State whether You intend to offer expert testimony relevant to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed.  If so, please Describe the expert testimony You intend to offer.

**INTERROGATORY NO. 73:**
State whether You intend to offer any evidence at trial related to (i) mental anguish, distress, or loss of enjoyment of life, or (ii) Any mental health condition with which You have been diagnosed.  If so, please Describe the evidence you intend to offer.

Plaintiffs objected to these interrogatories on numerous bases, including that the information sought was privileged and premature.  On April 28, 2020, the Court denied Defendants' motion to compel responses to Interrogatory No. 71 because it was clear they misinterpreted the Court's prior discovery order.  ECF No. 1108 at 12.  Defendants' Interrogatory No. 71 went "well beyond" the Court's suggestions because they did "not limit the request to mental health conditions Plaintiffs contend resulted from the causes of action alleged in this case."  *Id.* at 13.  The Court also rejected Defendants' argument that waiver of the psychotherapist-privilege was governed only by state law:

> While that may be so as to the substantive law of privilege and substantive waiver of a privilege, the issue here of whether a plaintiff has placed his or her mental condition "in controversy" is a matter of procedural waiver (and pleading) rather than a matter

> of waiver under state substantive law, such as whether a party
> has waived a privilege by disclosing the privileged information to
> a third-party.

*Id.* at 14 (citing *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012); *Dominguez-Silva v. Harvey*, No. 3:04-cv-135-JTC, 2006 WL 826091, at *1 (N.D. Ga. Mar. 23, 2006)).  On the other hand, the Court overruled Plaintiffs' objections that Interrogatory Nos. 72 and 73 did not comport with the March 26, 2020, discovery order. *Id.* at 16.

### C.   Pretrial Order No. 39 and Plaintiffs' Privilege Logs

On June 1, 2020, the district court, in accordance with the undersigned's discovery orders, entered Pretrial Order No. 39.  ECF No. 1154.  This order amended Pretrial Order No. 25, ECF No. 977, "setting forth the manner in which the parties in the litigation may obtain, review, share, and use certain confidential records produced by the Department of Veteran Affairs ("VA").  ECF No. 1154 at 1.  For records relating to substance abuse and mental health, Pretrial Order No. 39 provides, in pertinent part:

> The procedures for VA records concerning the identity,
> diagnosis, prognosis, testing, or treatment of a plaintiff in
> connection with substance abuse or mental health issues are
> amended as follows, consistent with the Magistrate Judge's
> ruling as to the discoverability of such records in the possession

6

or control of private healthcare providers, ECF No. 1065.  Within 14 days after receiving a plaintiff's records from the VA, plaintiff's counsel must review them for information relating to substance abuse or mental health issues.  If plaintiff's counsel needs additional time to complete this review, he or she must seek leave of Court and demonstrate good cause for an extension of the deadline.  Absent such a motion from plaintiff's counsel, a plaintiff's VA records must be released to Defendants no later than the first day following the 14-day review period.

During the 14-day review period, a plaintiff's counsel may: (1) redact isolated references to substance abuse or mental health issues; and (2) remove and withhold from the production any records relating predominantly to such information.  A redaction or removal of this information means that the plaintiff's counsel reasonably and in good faith believes that the information qualifies for redaction or removal.  If documents are redacted or removed from a plaintiff's VA records on this basis before the records are produced to Defendants, the plaintiff must clearly state that the redaction or removal is based on this Order and submit with the production of the remaining records a log identifying each of the withheld documents with specificity (or portions of documents).  Plaintiff's counsel also must retain unredacted copies of the documents (or portions of documents), such that they may be readily provided to the Court should the need arise for an *in camera* review.  All information and/or documents withheld on the basis of this Order will remain protected from disclosure until either: (1) plaintiff's counsel agrees, in writing, to unredact or otherwise produce the documents; or (2) the Court rules that the documents were not properly redacted or withheld.  To the extent such information and/or documents are later disclosed by the plaintiff, they remain designated "Highly Confidential" and must be treated in accordance with the parties' Joint Stipulation Regarding Production of Plaintiff Records, ECF No. 965, which the Court adopted and incorporated by reference in PTO 25.  Pursuant to the Stipulation, information designated as "Highly Confidential" may not be disclosed to the persons listed in Section V.B.a of

Pretrial Order No. 9 (i.e., Defendants' employees, officers, directors, and in-house counsel (and their support staff)).

*Id.* at 1–3.

On June 10, 2020, during a telephonic discovery hearing, Defendants addressed with the Court a dispute as to the extent of the information in the Bellwether Plaintiffs' privilege logs.  ECF No. 1172 at 9–10.  Defendants requested the Court direct Plaintiffs to include in their privilege logs sufficient information for them to evaluate the Bellwether Plaintiffs' claims of doctor-patient or psychotherapist-patient privilege as to the mental health records, including the type of provider and the location of treatment.  *Id.* at 9.  The Court denied Defendants' request because "the mental health records [were] not otherwise discoverable so as to require the Bellwether Plaintiffs to include specific information pertaining to the assertion of a doctor-patient or psychotherapist-patient privilege."  *Id.*  The Court, however, suggested the Bellwether Plaintiffs detail in their privilege log "the nature of the documents being withheld (or the information being redacted) in the event those documents eventually become relevant."  *Id.* at 10.

**D.    Defendants' Motion to Compel Unredacted Records**

More recently, on July 8, 2020, Defendants filed a motion to compel challenging redactions by three Bellwether Plaintiffs, including Plaintiff

Vernon Rowe, to medical records from the Department of Veteran Affairs and Department of Defense and to disability records from the Veterans Benefits Administration.  ECF No. 1231.  The Court expedited resolution of these motions in light of the schedule for the Bellwether Plaintiffs' depositions.  Defendants argued that information pertaining to mental health or substance abuse redacted from Plaintiff Rowe's medical records was relevant to his damages claims and Defendants' causation defense. *Id.* at 14.  As to any claims for lost earnings and lost earning capacity, Defendants argued:

> The information redacted from Mr. Rowe's disability records is also relevant for Defendants' defenses to Mr. Rowe's claim for lost earnings and lost earning capacity.  As Defendants pleaded in their Answer to the Master Long Form Complaint, "[t]he damages allegedly sustained by [Plaintiff] may have been caused by the negligent acts or omissions, in whole or in part, of individuals or entities other than Defendants, including but not limited to the United States and Plaintiff[]."  [ECF No.] 959 at 100. Defendants will show that any lost earnings or lost earning capacity was caused by other injuries or diseases, not Plaintiff's use of the CAEv2.  *See Williams v. Carnival Corp.*, 2020 WL 854809, at *1 (S.D. Fla. 2020) ("A defendant has the right to the production of medical records that have a logical connection to the plaintiff's claim of injuries." (internal quotation marks and brackets omitted)); *Cameron v. Supermedia*, 2016 WL 1572952, at *4 (N.D. Fla. 2016); *Santana v. Carnival Corp.*, 2011 WL 13220283, at *6 (S.D. Fla. 2011). Therefore, the redacted information is relevant to the Parties' claims and defenses. Therefore, the redacted information is relevant to the Parties' claims and defenses.

Moreover, if Defendants' damages experts are provided incomplete information about Mr. Rowe's disability claims, they cannot adequately analyze the extent, if any, to which Mr. Rowe's lost earnings or lost earning capacity are due to his use of the CAEv2. *See* [ECF No.] 1065 at 9. It would be inequitable for the Court to permit Mr. Rowe to only disclose those aspects of his disability records that he deems relevant when, at the same time, he intends to offer expert testimony about the alleged causes of his lost earnings and lost earning capacity.

*Id.* at 20–21.[2] Defendants also claimed, yet again, that these records were relevant to Plaintiff Rowe's damages for "diminished quality of life, past and future medical costs, and emotional damages." *Id.* at 21.

Plaintiff Rowe resisted production of the redacted records, arguing they were not discoverable under Federal Rule of Civil Procedure 26 because they were not relevant. ECF No. 1248 at 18–21. He reiterated that his claims for emotional damages were garden-variety and that he did not intend to offer expert testimony to support these damages. *Id.* at 18–19. Plaintiff Rowe also asserted that his claim for diminished earning capacity did not afford Defendants "back-door access" to his mental health records. *Id.* at 19–20 (citing *Adele v. Dunn*, No. 2:12-cv-597-LDG, 2013

[2] Defendants also represented that Plaintiff Rowe stated in his interrogatory responses that "the amount of his lost earnings attributable to his injury will be the subject of forthcoming expert proofs." ECF No. 1231 at 19 (citing ECF No. 1231-9 at 7) (alterations adopted).

WL 593291, at *4 (D. Nev. Feb. 14, 2013); *Thornton v. BNFS Ry. Co.*, No. CV-08-450-CL, 2008 WL 4360651, at *2 (D. Or. Sept. 24, 2008)).

The Court conducted an *in camera* review of the pertinent records and held a telephonic hearing on Defendants' motion to compel on July 16, 2020.  ECF No. 1263 at 61–119.  Defendants advanced their argument that any substance abuse records for Plaintiff Rowe were relevant to his lost earnings claims and, for the first time, cited the Eleventh Circuit's opinion in *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467 (11th Cir. 1984).  *Id.* at 95–96, 108–12.  In response to some of Defendants' arguments, the Court asked Plaintiffs' counsel whether they intended to present a vocational expert for Plaintiff Rowe on the issue of diminished earning capacity.  *Id.* at 112.  Plaintiffs said no.  *See id.* ("I don't think there's any present intent to have a vocational expert, at all.").  The Court held on the record that most of Plaintiff Rowe's redactions to the government records would stand because any records reflecting substance abuse are not relevant or proportional to Plaintiff Rowe's damages claims.  *id.* at 108, 116–18, but the undersigned explained that this issue would need to be evaluated on a case-by-case basis, *id.* at 119.

The following day, July 17, 2020, the Court entered an order summarizing the discovery rulings from the July 16 telephonic hearing.

ECF No. 1258.  This order was "written for the benefit of the parties in view of their representations that the discovery sought in these motions [was] pertinent to the forthcoming depositions of the Bellwether Plaintiffs."  *Id.* at 2 n.2.  The Court wrote that records from the Department of Defense and VA concerning the identity, diagnosis, prognosis, testing, or treatment in connection with mental health or substance abuse issues were not relevant to Plaintiff Rowe's garden-variety emotional damages claims or his lost earning capacity claims.  *Id.* at 11.[3]  Integral to the Court's ruling was Plaintiffs' representation that the latter claims were "limited to damages of hearing loss caused by their use of the CAEv2."  *Id.*

### E.    Defendants' Motion for Clarification and Reconsideration

Defendants have since filed the instant motion for clarification *and* reconsideration.  ECF No. 1296.  Although Defendants state their motion seeks clarification *or* reconsideration as alternative forms of relief, they pursue both independently.  The Court will, therefore, address each in turn. First, Defendants ask the Court to "clarify" its July 17 discovery order to the

---

[3] The only exception to the Court's ruling as to the production of Plaintiff Rowe's government records was his VBA disability records.  ECF No. 1258 at 11–12.  This ruling is not in dispute here.  The Court held that any privilege as to those records was waived and that the records were relevant to claims of diminished earnings or earning capacity. *Id.*  Consequently, the Court directed Plaintiff Rowe to "disclose the VBA disability rating for an underlying mental health diagnosis, the diagnosis (if rated), and the general description of the diagnosis by the VBA (not including the specific circumstances giving rise to the diagnosis or treatment)."  *Id.* at 12.

extent they suggest the Court should further memorialize two rulings made on the record at the July 16 telephonic hearing: (1) that "Defendants could revisit the relevance of ototoxic medications after Science Day"; and (2) that "the relevance of substance abuse is a plaintiff-specific as-applied challenge." *Id.* at 7–9.  Second, Defendants request the Court reconsider its ruling in the July 17 order—prohibiting discovery of any of Plaintiff Rowe's government records pertaining to substance abuse—based on the availability of new evidence. *Id.* at 9.

Defendants say that Plaintiff Rowe has "abruptly changed his position about calling a vocational expert and about the scope of his lost earning capacity." *Id.* at 1.  Five days after the Court's discovery order, on July 22, 2020, Plaintiff Rowe served Defendants with supplemental interrogatory responses that stated "the amount of Plaintiff's lost earnings attributable to Plaintiff's injury will be the subject of forthcoming expert proofs." *Id.* at 2. On the same day, Plaintiff Rowe served initial disclosures stating he would seek approximately $750,000 to $1 million in damages for diminished earning capacity. *Id.* at 3.  And in his deposition the following day, Plaintiff Rowe confirmed the accuracy of his interrogatory answers referring to the need for future expert proofs. *Id.*  Defendants argue, in view of this "new"

evidence, that the Eleventh Circuit's opinion in *Haney* compels reconsideration.  *Id.* at 12.

Moreover, Defendants quote, at length, from a treatise and affidavit by Michael Shahnasarian, Ph.D., a president of Career Consultants of America, Inc., and a certified rehabilitation counsel, life care planner, and vocational evaluator.  *Id.* at 14; ECF No. 1296-4.  The affidavit, dated July 31, 2020, details Dr. Shahnasarian's process for performing vocational rehabilitation evaluations, which includes reviewing medical records, academic records, employment records, earnings records, and other "damages-related documents."  ECF No. 1296-4.  Dr. Shahnasarian opines that a "history of substance abuse unrelated to issues in dispute can have profound implications on a plaintiff's vocational capacities," such as "problems with work attendance, job performance, and job stability, limitations on work participation …, and accessibility to work opportunities[.]"  *Id.* at 3.  He avers further that it is "imperative" for a vocational evaluator to consider pre-existing or seemingly unrelated medical conditions because they can "manifest in ways that include periods of symptom exacerbation, progression, and worsening over time, and patterns of relapse or remission[.]"  *Id.* at 4.

Defendants argue, alternatively, that Plaintiff Rowe should be judicially estopped from calling a vocational expert because his counsel previously "represented that he did not intend to call a vocational expert in a successful bid to shield information about substance abuse from discovery" and has since shifted his position "in order to recover $750,000 to [$1 million] in damages for lost earning capacity."  ECF No. 1296 at 15– 16.  Defendants sole claim for estoppel is that they will "be prejudiced by the exposure to a large potential damages award without adequate discovery about potential alternative causes of any lost earning capacity."  *Id.* at 16.

## II.  LEGAL STANDARD

Federal courts disfavor the adage encouraging the unsuccessful to "try, try again."[4]  This is because motions for reconsideration consume "scarce judicial resources" and demand an "extraordinary remedy to be employed sparingly."  *Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999).  Nevertheless, the Federal Rules of Civil Procedure pave avenues (or roundabouts) for district courts

---

[4] *See, e.g.*, *In re Moncier*, 488 F. App'x 57, 60 (6th Cir. 2012) ("In federal courts, the maxim, 'if at first you don't succeed, try, try again' does not apply.  If at first you don't succeed, quit, or appeal.  Don't persist in asking the same court for permission to do what has already been prohibited.").

to revisit a litigant's earlier, unavailing arguments in limited circumstances (and usually within strict timeframes).[5]  Moreover, and relevant here, the Eleventh Circuit has recognized a district court's "plenary power" to "reconsider, revise, alter[,] or amend" an interlocutory order.  *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000).[6]

A motion for reconsideration of an interlocutory order will be granted only if there is a change in controlling law, newly available evidence, or the need to correct clear error or manifest injustice.  *Madura v. BAC Home Loans Servicing L.P.*, 851 F. Supp. 2d 1291, 1296 (M.D. Fla. 2012).  A motion for reconsideration is not an opportunity for a party to "relitigate[] what has already been found lacking," *Lamar*, 189 F.R.D. at 489 (M.D. Fla. 1999), or to "raise arguments which could, and should, have been

---

[5] *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60 ("Relief from a Judgment or Order").

[6] Plaintiffs' argument that Defendants and the Court must proceed under Rule 59(e) is mistaken because Rule 59(e) applies strictly to final judgments.  *See Barney v. Biegalski*, No. 3:18-cv-620-MCR-CJK, 2018 WL 9517271, at * (N.D. Fla. Sept. 9, 2018) ("Rule 59(e) does not apply here because Barney is asking the Court to reconsider an interlocutory order, not a final judgment." (citing *Pensacola Firefighters' Relief and Pension Fund Bd. of Dirs. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:09-cv-53-MCR-MD, 2010 WL 11519376, at *2 (N.D. Fla. June 28, 2010))); *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1380 (S.D. Ala. 2009) ("Because the Court has entered no judgment, Rule 59(e) does not apply.").

previously made," *Scelta v. Delicatessen Support Servs., Inc.*, 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000) (alterations adopted).

## III.  DISCUSSION

### A.    Motion for Clarification

Captioned as a motion for clarification, Defendants ask the Court to "fully memorialize" in the July 17 discovery order two "rulings" made during the July 16 hearing.  ECF No. 1296 at 7–9.  Defendants' motion is puzzling because it is obvious that they are not seeking clarification of anything. Defendants had numerous attorneys present for the July 16 hearing, the hearing was transcribed, and Defendants can articulate the exact rulings they would like the Court to, as they put it, "make clear."  *Id.*  The Court surmises what Defendants really want is to have the Court highlight these rulings in writing because they left (or continue to leave) doors open for further litigation on this matter.

There is no authority, however, requiring the Court to reduce to writing its discovery orders.  Indeed, it was contemplated before the hearing, at the July 10, 2020, leadership conference, that the undersigned would not draft and file a written order following the hearing due to the time constraints of this litigation.  ECF No. 1244 at 26.  This is because the Court's oral discovery orders have the same effect as those in writing.  The

17

Court chose to issue a written order (expeditiously) to summarize in a non-exhaustive manner the major rulings rendered at the hearing, which lasted longer than four hours, *and* to provide necessary guidance on any future, similar discovery disputes.[7]  In view of these principles and the procedural posture of Defendants' motion to compel, Defendants' instant motion challenging the completeness of the July 17 discovery order is not well-taken.

Defendants' motion for clarification is **DENIED**.

### B.    Motion for Reconsideration as to Plaintiff Rowe

This leaves Defendants' motion for reconsideration.  Defendants let lie any contention that links Plaintiff Rowe's claims for garden-variety emotional damages to the discovery of records pertaining to mental health or substance abuse.  Instead, they attempt to resurrect their new (but recently defeated) argument that records reflecting substance abuse are relevant to Plaintiff Rowe's claims for diminished earnings or earning capacity because the records provide essential information for consideration by their vocational experts.  Defendants do not cite to a

---

[7] Oddly enough, Defendants ask the Court to memorialize the ruling that Defendants can seek discovery of similar records on a plaintiff-by-plaintiff basis.  The Court, however, stated in its written order that "it is clear from the parties' protracted arguments that disputes as to the relevance of the [redacted mental health] records must be resolved on a case-by-case basis."  ECF No. 1258 at 10.  This is one in the same.

change in controlling law or the need to correct a manifest injustice but attempt to stand solely on the allegation of newly available evidence. Defendants' argument fails to withstand the weight of the record.

Defendants do not present newly available evidence that undermines the Court's prior ruling.  Defendants knew in advance of the Court's July 16 telephonic and July 17 order that Plaintiff Rowe intended to call an expert on his damages claims for lost earnings or earning capacity.  ECF No. 1328 at 18–19.  Indeed, they acknowledged Plaintiff Rowe's interrogatory responses in their motion to compel.  ECF No. 1231 at 19.  It is equally unclear how Plaintiff Rowe's proposed calculation for lost earnings capacity damages (in the amount of $750,000 to $1 million) warrants reconsideration.  If claims for lost earnings or lost earning capacity do not open the door to the discovery of mental health or substance abuse records—which this Court has held—the quantification of those damages does not fashion a key.  Notably, "Defendants did not once ask Plaintiff Rowe about the amount of the lost earnings capacity damages that he is claiming nor did they ask Plaintiff Rowe to otherwise quantify any damages claimed."  ECF No. 1328 at 19; *see also* ECF No. 1328-6.

Defendants say this evidence is "new" in light of counsel's representation at the July 16 telephonic hearing that Plaintiff Rowe did not

intend to call an expert to support these damages. *See* ECF No. 1263 at 112 ("I don't think there's any present intent to have a vocational expert, at all."). Although the Court does not condone counsel's misrepresentation at the July 16 hearing, it fails to support reconsideration. The Court's ruling denying Defendants' motion to compel as to Plaintiff Rowe did not hinge on whether he intended to call a vocational expert. ECF No. 1258 at 11. Such a consideration would be untenable because it was *Defendants* who argued *their* vocational experts needed the unredacted records to perform a complete evaluation.

Defendants, in turn, offer new evidence in support of their motion for reconsideration, which is not welcome on a motion for reconsideration. It bears repeating that a motion for reconsideration is not a vehicle to present new arguments or evidence that should have been raised in the first instance. Yet, Defendants offer Dr. Shahnasarian's affidavit and citations to his treatise without any explanation as to why this evidence and authority were not available earlier. This alone warrants denial of Defendants' instant motion, because "the Court's orders are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."

*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).[8]

In any event, this new evidence and authority is unavailing. The Court appreciates Dr. Shahnasarian's opinion that "a history of substance abuse unrelated to issues in dispute can have profound implications on a plaintiff's vocational capacities" because allegedly substance abuse is associated with "problems with work attendance, job performance, and job stability," "limitations on work participation," and "accessibility to work opportunities." ECF No. 1296-4 at 3. This opinion, however, does not demonstrate the relevancy of any government medical records noting a party's history of or treatment for substance abuse. Defendants already have access to the Bellwether Plaintiffs' employment and medical records, which should reflect problems with work performance and physical manifestation of ailments that limit work participation or opportunities. As such, production of the records in dispute for any conceivable marginal

---

[8] *See also Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("A district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation."); *Prudential Sec., Inc. v. Emerson*, 919 F. Supp. 415, 417–18 (M.D. Fla. 1996) ("The Court's reluctance to hear new arguments is based on the notion that district courts are too busy to have parties present arguments one by one.").

relevance is not proportional to the needs of this litigation.  Fed. R. Civ. P. 26(b)(1).

Lastly, Defendants argue the Court failed to consider or abide by the Eleventh Circuit's opinion in *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467 (11th Cir. 1984).  This argument blinks reality.  Defendants did not cite this case in their extensive motion to compel, ECF No. 1231, and raised it for the first time at the July 16 hearing, ECF No. 1263 at 95–96, 109.  Nevertheless, the Court considered the parties' arguments and concluded *Haney* was distinguishable.  *Id.* at 114, 117–18.  Defendants' motion for reconsideration thus improperly rehashes an argument rejected at the July 16 hearing and in the July 17 order.

To be clear, *Haney* is not the "red cow" or "spotted dog"[9] that Defendants claim it is.  By way of background, *Haney* was an appeal from a medical malpractice case that began with a car crash where the plaintiff (Haney) was drinking alcohol immediately before driving.  744 F.2d at 1470.  An emergency medical technician transported Haney from the crash

---

[9] *See Corn v. City of Lauderdale Lakes*, 997 F.3d 1369, 1390 n.2 (11th Cir. 1993) ("The term 'red cow' is used in some legal circles, particularly in Florida, to describe a case that is directly on point, a commanding precedent.  In other states, the same notion of a closely fitting authoritative decision is conveyed by any of the following terms: 'spotted dog,' 'spotted horse,' 'white horse,' 'white pony,' or 'goose' case." (internal citations omitted)).

scene to a hospital emergency room, where Haney continued to be belligerent, defied orders to remain still, and impeded the completion of a neurological examination.  *Id.* at 1470–71.  An emergency room doctor admitted Haney to the hospital for overnight examination, and around 10:00 p.m. he exhibited signs of paralysis.  *Id.* at 1471.  A specialist determined that Haney fractured two cervical vertebrae, and the damage to his spinal cord left him a permanent quadriplegic.  *Id.*

Haney sued the emergency room doctor and hospital for a negligent diagnosis.  *Id.*  The defendants presented evidence that Haney's "intoxication, combativeness, and unwillingness to cooperate with medical personnel" made it "nearly impossibly to properly diagnose him."  *Id.*  At trial, the jury returned a verdict for the defendants.  *Id.*  Haney appealed the district court's evidentiary ruling admitting evidence of his use of alcohol and drugs.  *Id.* at 1475.  The Eleventh Circuit rejected Haney's relevancy argument:

> Initially, there is no doubt that Haney's level of intoxication when treated was relevant to his ability to communicate with medical personnel and their ability to restrain and obtain cooperation from him.  Additionally, an examination of Haney's complaint reveals the relevance of his history of alcohol and drug use.  Haney prayed therein for damages to cover future mental anguish, rehabilitation care, and loss of earnings.  As the deposition testimony of Dr. Lawrence J. Gilgun, the clinical psychologist who treated Haney after the accident, reveals, Haney's ability to face

his alcohol and drug problem would play a crucial role in his ability to adjust emotionally to his infirmity and become more fully rehabilitated. Dr. Gilgun also opined that Haney's vocational outlook would be much brighter if he did not indulge in alcohol and drugs. Moreover, the district court found that the challenged testimony was admissible, and, perforce, relevant, to rebut testimony offered by Haney pertaining to his lifestyle and quality of life before the accident. We will not disturb that finding.

*Id.* (internal citations omitted).

*Haney* is not on all fours with the record before the Court. In *Haney*, the plaintiff's substance abuse was inextricably intertwined with his medical malpractice claim, which is not the case here. And, more clearly, the Eleventh Circuit did not establish a rule of discovery requiring production of a plaintiff's mental health records for evaluation by a defendant's vocational expert based on the mere assertion that the plaintiff's "vocational outlook would be much brighter if he did not indulge in alcohol and drugs." 744 F.2d at 1475. For the reasons stated at the July 16 hearing and in the July 17 order, the Court determined the records in issue were not relevant after reviewing Plaintiff Rowe's specific causes of action and damages claims (including diminished earning capacity). At bottom, *Haney* does not say this Court's ruling was an abuse of discretion.

In sum, Defendants have failed to satisfy the onerous burden for reconsideration. The record belies their claims of newly available

evidence, their reliance on Dr. Shahnasarian's affidavit comes too late, and

the Eleventh Circuit's decision in *Haney* is inapt.  For these reasons,

Defendants' motion for reconsideration is due to be **DENIED**.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Clarification

or, in the Alternative, Reconsideration of the Court's July 17 Order, ECF

No. 1296, is **DENIED**.

**DONE AND ORDERED** this 19th day of August 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge