**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION This Document Relates to All Cases | Case No. 3:19-md-2885 Judge M. Casey Rodgers Magistrate Judge Gary R. Jones **[PUBLIC VERSION]** |

**DEFENDANTS' RESPONSE TO THE DEPARTMENT OF DEFENSE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, ECF No. 1292**

The Department of Defense offers no reason to reject the recommendations at which Judge Jones arrived after 30 pages of careful legal analysis. The Department's two newly raised objections to Judge Jones's order are both meritless, and this Court should reject the other arguments made by the Department for the same reasons that Judge Jones did.

**I.    Defendants Have Complied With Local Rule 7.1(B).**

The Department contends now, as it did before Judge Jones, that Defendants' motion to compel should be dismissed for failure to comply with the attorney-conference requirement of Local Rule 7.1(B). Judge Jones gave this argument exactly the attention it deserves when he declined to address it.

Local Rule 7.1(B) provides: "Before filing a motion raising an issue, an attorney for the moving party must attempt in good faith to resolve the issue through

a meaningful conference with an attorney for the adverse party." Defendants' motion to compel included many pages detailing the months their counsel spent attempting to obtain the discovery sought in this motion through correspondence with attorneys from the Department of Defense and Department of Justice. (*See* Dkt. 1211 at 2-13.) Those months of patient efforts clearly qualify as an "attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party."

Nevertheless, after the Department objected that Defendants had not complied with Local Rule 7.1(B), Defendants held a telephone conference with the Department's counsel and asked whether the Department planned to provide the discovery at issue. The Department claims this cannot qualify as a good-faith conference because Defendants asked the Department to "accede to a motion that defendants had already filed." (Dkt. 1320 at 15.) But what else were Defendants supposed to ask? The reason for the motion to compel is to obtain the discovery sought therein. If the Department would not commit to providing the discovery in a timely manner, then a motion to compel would remain necessary. The refusal of the Department's counsel to give an answer to Defendants' good-faith inquiry confirmed that this Court's intervention was needed.

This case is nothing like those in which courts have denied motions, without prejudice, for failure to comply with Local Rule 7.1 (B). In those cases, the litigants

filed motions without *ever* discussing the issue at hand with the adverse party. Moreover, in all cases the issue was a minor administrative matter that could plausibly have been resolved without court intervention. *See H2Ocean, Inc. v. Schmitt*, 2006 WL 3837411, at *5 (N.D. Fla. Dec. 22, 2006) (motion to compel responses to requests for production, filed the evening of the due date); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-cv-02308, ECF No. 1208 (M.D. Fla. Aug. 7, 2020) (motion for leave to file reply brief); Dkt. 791 (motion for extension of time).

The Department cannot seriously maintain that Defendants have "needlessly" involved the Court in this dispute given that the Department is vigorously contesting the motion. *H2Ocean*, 2006 WL 3837411, at *5. It has been seven weeks since Defendants filed the motion to compel. The Department has not reversed its prior decision and approved the deposition of LTC Martin Robinette. The Department still has not given answers to Defendants' requests to depose Dr. John King and Mary Binseel, or to Defendants' requests for noise and ototoxin data, or to Defendants' request for the health hazard assessments for weapons used by the bellwether plaintiffs.[1]  As has now been clear for some time, the Department will

---

[1] On August 13, 2020, the Department acted on Defendants' requests to depose Dr. Leanne Cleveland, Dr. Mark Little, LTC Theresa Schulz, and for safety release documentation for the CAEv2. Defendants agree with the Department that Judge Jones's recommendations are now moot with respect to those requests.

not timely respond to Defendants' requests or provide the discovery to which Defendants are entitled without this Court's intervention.

## II. The Absence Of A Subpoena Does Not Prevent This Court From Reviewing The Department's *Touhy* Denials.

### A. The Department Has Consented To This Court's Jurisdiction And Waived Any Objection To Inadequate Service Of Process.

At the very beginning of this litigation, on May 20, 2019, Major Collin Evans of the Department of Defense gave a presentation on the *Touhy* process to the Court and parties. During the presentation, Major Evans instructed the parties *not* to serve subpoenas on the Department because, in the government's view, subpoenas had no legal effect. Major Evans stated: "[Y]ou don't need to send a subpoena. That subpoena signed by an attorney is not from a court of competent jurisdiction in DOJ's perspective. So you need to send me a written request for a witness, and then we make a determination if they can be approved." (Ex. A at 33:23-34:3.)

Later on in the presentation, the Court asked Major Evans, "What does the Court do, in your experience, when the Court decides that the information is not coming quickly enough?" (*Id.* at 37:18-21.) Major Evans assured the Court, "If you issued a court order, obviously, Your Honor, *we would abide by the court order*." (*Id.* at 38:1-3 (emphasis added).)

With these representations to the Court and parties, the Department expressly consented to this Court's jurisdiction over discovery disputes arising from the

4

parties' non-subpoena discovery requests. Major Evans told the parties to submit letter requests, not subpoenas, and he told the Court that the Department would abide by orders to produce discovery sought by the parties. The waiver of any objection to personal jurisdiction based on the absence of a subpoena could not have been clearer.

The Department now tries to distance itself from Major Evans's statements, but its efforts fall short. First, the Department makes the remarkable claim that the statements and conduct of federal attorneys can *never* constitute consent to personal jurisdiction because "officers of the United States possess no power through their actions to waive an immunity of the United States." (Dkt. 1320 at 19 (quoting *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947)).) But as the quote itself indicates, the cases on which the Department relies involve sovereign immunity, not personal jurisdiction. *See N.Y. Rayon*, 329 U.S. at 658 (referring to "the traditional rule regarding the immunity of the United States from liability for interest on unpaid accounts and claims"); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (holding that "the Tucker Act constitutes a waiver of sovereign immunity with respect to" certain claims). The APA waives the Department's sovereign immunity in connection with this dispute. *See* 5 U.S.C. § 702. The Department cites no authority for its apparent position that federal attorneys can expressly submit to

5

a court's authority, litigate a case as long as they wish, and then challenge the jurisdiction of the court as soon as they perceive a risk it will issue an adverse ruling.

Second, the Department attempts to minimize the significance of Major Evans's representations, claiming he made only a trivial, "axiomatic" statement when he said the Department would comply with a court order to produce discovery. (*See* Dkt. 1320 at 20 (citing *SEBO Am., LLC v. Buyparts Ltd.*, 2020 WL 1930398, at *2 (D. Colo. Apr. 21, 2020)).) But jurisdiction was not in dispute in the cases on which the Department relies for the claim that compliance was a foregone conclusion. It is not "axiomatic" that a party will comply with a court order if it objects to the Court's jurisdiction—that is why Major Evans' representation that the Department *would* comply was significant. Indeed, the Department is presently arguing that the Court *cannot* order the production of anything because it lacks personal jurisdiction over the Department. Major Evans was not just stating an uncontroversial axiom when he made exactly the opposite representation to this Court.

Third, the Department suggests that Major Evans merely advised the parties that they had the option of submitting written discovery requests instead of subpoenas, not that they had to do so. (*See* Dkt. 1320 at 20-21.) But Major Evans's statements are too direct to explain away. He told the parties that a "subpoena signed by an attorney is not from a court of competent jurisdiction" and that "you *need* to

6

send me a written request." (Ex. A at 33:24-34:1 (emphasis added).) The Department attempts to distract from this straightforward directive with an irrelevant disquisition on the differences between criminal and civil subpoenas, but it cannot escape the plain meaning of Major Evans's remarks: The Department would ignore subpoenas, which had no legal effect in its eyes, and would respond only to written *Touhy* requests.

Major Evans's instruction to the parties to submit letter requests rather than subpoenas, and his representation to the Court that the Department would abide by orders directing it to produce evidence requested by the parties, together constitute express consent to this Court's jurisdiction. If that were not enough, the Department has independently waived any objection to this Court's jurisdiction through its conduct over the subsequent 15 months. In reliance on Major Evans's representations, the parties have submitted *Touhy* requests via letter, rather than subpoena, for over a year. The Department has never once indicated that these requests were invalid, or mere "informal" requests to which it had no obligation to respond.

On the contrary, the Department has granted several of the parties' *Touhy* requests for documents and depositions. By producing documents and agreeing to depositions without noting any jurisdictional objection, the Department waived the argument that it has not received adequate service of process. *See Moyle v. INS*,

7

1991 WL 184839, at *2 (9th Cir. Sept. 19, 1991) (per curiam) ("[T]he records were voluntarily produced and … any right to object to the subpoena was waived.")

The Department again submitted to this Court's jurisdiction by participating in the *Touhy* depositions. The Department's counsel appeared on the record at those depositions, ensured that the witnesses did not offer unauthorized testimony, asserted privilege, and even shut down lines of questioning from both parties. *See, e.g.*, Ex. B (Babeu 3/10/20 Tr.) at 17:9-10 (appearance of Major Evans); 137:10-138:16 (objecting to line of questioning based on deliberative process privilege); Ex. C (Merkley 2/26/20 Tr.) at 21:3-22:4 (instructing witness not to answer question calling for a "ballpark" estimate).

The Department makes the conclusory assertion that none of this conduct by its attorneys at the *Touhy* depositions constitutes implicit consent to litigate discovery disputes in this Court. That claim cannot be taken seriously. If a party had disagreed with the Department attorney's determination that a particular question was privileged or outside the scope of an approved *Touhy* request, and sought an order from the Court compelling the witness to answer, could the Department have simply defied the order?[2] Of course not. By attending the

---

[2] This exact scenario nearly played out during the deposition of Dr. Brian Hobbs. After Major Kim instructed Dr. Hobbs not to answer a question because it was outside the scope of the *Touhy* request, counsel for the Defendants said "we need to get Judge Rodgers on the phone" to resolve the dispute. (Ex. D (Hobbs 7/16/20 Tr.) at 220:11-12).) Major Kim responded, "I'm perfectly comfortable with getting

deposition and arguing on the record that certain testimony was impermissible, the Department consented to this Court's jurisdiction to review its decisions to withhold certain evidence.

In sum, the Department instructed the parties how to submit their *Touhy* requests, raised no jurisdictional objection when the parties complied with those instructions, granted several of the parties' requests, and policed the scope of the *Touhy* depositions. The Department's action gave Defendants a "reasonable expectation" that they had issued enforceable *Touhy* requests to the Department, and that the Department would defend its extensive discovery conduct in this Court. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011). The Department cannot, after involving itself so closely in these proceedings to protect its perceived interests, claim that this Court lacks jurisdiction over the Department until Defendants serve it with a subpoena—contrary to the Department's express instructions when this process began over a year ago.

### B. A Motion To Compel Is An Appropriate Vehicle For Challenging The Department's *Touhy* Denials.

The Department also insists that, even if the Court has jurisdiction over this dispute, Defendants cannot bring a motion to compel in the absence of a subpoena

---

Judge Rodgers on the phone to further discuss this." (*Id*. at 220:19-21.) Ultimately, Major Kim decided to permit the questioning, and it was unnecessary for the Court to settle the issue.

9

issued under Rule 45 of the Federal Rules of Civil Procedure. But "[t]he problem for the Department" as Judge Jones concluded, "is that this discovery dispute does not arise under Rule 45, at least in the Eleventh Circuit." (Dkt. 1292 at 16 (citing *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).) Defendants are not trying to compel the Department's compliance with a subpoena under Rule 45. Instead, as required by the Eleventh Circuit's decision in *Moore*, Defendants are bringing an APA challenge to the Department's arbitrary and capricious application of its *Touhy* regulations to deny some of Defendants' discovery requests and unreasonable delay in responding to others.

The only relevant question in assessing the Department's application of its *Touhy* regulations is whether Defendants submitted valid *Touhy* requests. Although the Department characterizes these requests as "informal" because they were not subpoenas, the requests were valid under the Department's own regulations. Those requests, moreover, included far more information and explanation than a standard Rule 45 subpoena. *See* Department of Defense Directive 5405.2 § 6.3.2 (requiring the requester to "set forth, in writing and with as much specificity as possible, the nature and relevance of the official information sought").

The "weight of authority" holds that a motion to compel is an appropriate vehicle for an APA *Touhy* challenge. (Dkt. 1292 at 15.) A party need not file a separate APA action naming the government as the defendant in order to litigate a

simple discovery dispute. *Forgione v. HCA Inc.*, 954 F. Supp. 2d 1349, 1353 (N.D. Fla. 2013) ("Significant delay and inconvenience will be avoided simply by construing the instant action as arising under the APA."); *Johnson v. Folino*, 528 F. Supp. 2d 548, 550 (E.D. Pa. 2007) ("The Court has jurisdiction to determine this discovery dispute; petitioner need not file an ancillary proceeding under the APA.").

Because this motion to compel should be "constru[ed]" as an action "arising under the APA," and not a typical motion to enforce compliance with a subpoena under Rule 45, the absence of a subpoena is immaterial. *Forgione*, 954 F. Supp. 2d at 1353. It comes as no surprise then that a court in this circuit has granted a motion to compel a deposition, in the absence of a subpoena, after concluding that the government's *Touhy* denial was arbitrary and capricious. *See U.S. ex rel. Lewis v. Walker*, 2009 WL 2611522, at *1 (M.D. Ga. Aug. 21, 2009) ("[T]he lack of a pending federal subpoena is not fatal to the present motion to compel."). The Department does not cite a single case holding, to the contrary, that a party cannot bring an APA *Touhy* challenge via motion to compel unless there is a pending subpoena.

The Department cites *Lewis* in support of its position that a subpoena is required for a motion to compel, but the decision held the very opposite. As the Department notes, the relators in *Lewis* had originally submitted a subpoena, but "withdrew the subpoena at the EPA's request and asked the EPA for permission to

11

take the deposition." 2009 WL 2611522, at *1. The EPA denied the request, and the relators challenged the EPA's *Touhy* denial through a motion to compel. The EPA then made the very same objection that the Department makes here—that the "motion to compel is improper because … there is no presently pending federal subpoena." *Id*. The Court rejected that argument, seeing "no reason why Relators must, prior to seeking review, go through the additional step of issuing a second subpoena that will be challenged on the exact same grounds set forth in the [*Touhy* denial]." *Id*. The same reasoning applies here. There is no reason for Defendants, prior to seeking APA review of Defendants' *Touhy* denials and delays, to serve subpoenas that the Department will treat in the exact same manner as the *Touhy* requests.

### III. The Department's Argument For Remand Is Forfeited And Meritless.

The Department argues that, even if Judge Jones correctly determined that its denial of Defendants' request to depose LTC Robinette was arbitrary and capricious, the proper remedy under the APA is to remand to the agency for further consideration rather than granting Defendants' motion to compel. The Department did not raise this argument in its initial opposition to Defendants' motion. (*See* Dkt. 1253.) The Department had no reason to omit this argument from its brief, as Defendants' motion expressly sought an order compelling the Department to make LTC Robinette available for deposition. (Dkt. 1211 at 26.) The Department has

thus forfeited any argument that remand is the appropriate remedy for its arbitrary and capricious denial of Defendants' *Touhy* request. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (affirming district court's decision to decline to consider an argument not presented to the magistrate judge).

In any event, the Department's argument for remand is meritless. District courts routinely order the government to produce discovery after concluding that the government's *Touhy* denial was arbitrary and capricious. *See, e.g.*, *Ceroni v. 4Front Engineered Solutions., Inc.*, 793 F. Supp. 2d 1268, 1270 (D. Colo. 2011); *Lewis*, 2009 WL 2611522, at *1; *Cavanaugh v. Wainstein*, 2007 WL 1601723, at *10 (D.D.C. June 4, 2007). Permitting the government to repeatedly reassess its *Touhy* denials would delay the underlying litigation to an intolerable degree, and would contravene the Supreme Court's command that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953).

**IV.   The Discovery Sought Is Relevant To Issues Other Than The Government Contractor Defense.**

The Department argues that this Court's summary judgment ruling on the contractor defense, which issued after the completion of the briefing on the motion to compel, rendered irrelevant much of the discovery Defendants seek. But the Department lacks a comprehensive understanding of this litigation, which involves far more than the government contractor defense. The government's involvement

13

in the design of the CAEv2, its testing of the CAEv2, and its knowledge of the proper use of the product remain highly relevant to a number of issues that will be raised in the bellwether cases.

The military's awareness of the flange-fold instruction, for one, is essential to Defendants' assertion of the sophisticated intermediary defense in the bellwether cases. A manufacturer is entitled to the defense upon a showing that it "warned or sold to a knowledgeable intermediary" and "actually and reasonably relied on the intermediary to convey warnings to end users." *Webb v. Special Elec. Co.*, 370 P.3d 1022, 1036 (Cal. 2016). If the military knew about the flange-fold instruction, and Aearo reasonably relied on the military to convey the instruction to soldiers, then Defendants are entitled to judgment in their favor. ▌

▌

▌

▌

▌

▌

▌

The military's involvement in the decision to shorten the CAEv2 also remains relevant, because it undermines Plaintiffs' claim that Aearo negligently designed the

14

CAEv2.  As this Court recognized in its summary judgment order, Dr. Ohlin: (1) stated in December 1997 that a dual-ended earplug would be far more effective than a single-sided product; and (2) concluded in April 1999 that longer dual-ended earplugs would not protect soldiers from hearing damage because they would not fit under the soldiers' helmet straps.[3]  (Dkt. 1280 at 8, 10.)  Obtaining more evidence supporting Dr. Ohlin's conclusions would strengthen Defendants' argument that Aearo was not negligent when it shortened the CAEv2, but was in fact creating the most effective dual-ended earplug it could.

Finally, the military's testing of the CAEv2 is obviously still relevant because it shows how the product performs.  As discussed in Defendants' summary judgment briefs, numerous military tests found that the CAEv2 attenuates sound well, even without the flanges folded back.  (*See* Dkt. 1071 at 20-21, 30-31.)  Those tests support Defendants' contentions that the CAEv2 was not defective and could not have injured the bellwether plaintiffs because it worked perfectly well.[4]  Defendants

---

[3] The Department's assertion that "[t]he Court found in denying defendants' motion to compel [*sic*] that the Army played no role in the design or development of the CAEv2" does not evidence a careful reading of the summary judgment order.  (Dkt. 1320 at 28.)  There is no dispute that the Army played *some* role in the design of the CAEv2.  The Court simply found that the military had not approved reasonably precise specifications within the meaning of *Boyle*.

[4] The Department badly distorts this Court's summary judgment ruling when it claims the Court found "defendants knew as early as May 2000 that the CAEv2 was defective and concealed the fact from the Army."  (Dkt. 1320 at 7-8.)  The Court found only that Aearo never shared the Flange Memo with the military.  It did not

are therefore entitled to additional discovery regarding the military's findings about the performance of the CAEv2.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt the report and recommendation of Magistrate Judge Jones to grant in part and deny in part Defendants' motion to compel against the Department of Defense.

Dated:  August 19, 2020

Respectfully submitted,

*/s/Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mark.nomellini@kirkland.com

---

decide whether Aearo informed the Army of the fitting issues documented in the Flange Memo, much less that those issues rendered the CAEv2 defective.

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## CERTIFICATE OF SERVICE

I, Robert C. Brock, hereby certify that on August 19, 2020, I caused a copy of the foregoing memorandum to be filed with the Court's CM/ECF system, which will serve all counsel of record.

Also on August 19, 2020, I caused the foregoing memorandum to be sent via certified mail to the following addresses:

Major Nicole Kim
Litigation Attorney
U.S. Army Legal Services Agency
9275 Gunston Road
Fort Belvoir, VA 22060

Jacqui Coleman Snead
Assistant Branch Director, Federal Programs Branch
U.S. Dep't of Justice, Civil Division
1100 L Street, N.W., Room 12402
Washington, D.C. 20005

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Civil Process Clerk
U.S. Attorney for the Northern District of Florida
21 East Garden Street
Suite 400
Pensacola, FL 32502

Office of General Counsel
Department of Defense
1600 Defense Pentagon, Room 3C962
Washington, DC 20301

Dated: August 19, 2020

                                        */s/Robert C. Brock*
                                        Robert C. "Mike" Brock

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this brief complies with the word limit of Local Rule 7.1(F), and contained 3,705 words, excluding the parts exempted by the Rule.

Dated: August 19, 2020

*/s/Robert C. Brock*
Robert C. "Mike" Brock