## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-2885-MCR-GRJ |
| | ) | Judge M. Casey Rodgers |
| | ) | |
| This Document Relates to: | ) | Magistrate Judge Gary R. Jones |
| Brandon Adkins | ) | |
| Civil Case No. 7:20-cv-00012 | ) | **CONFIDENTIAL - FILED** |
| | ) | **UNDER SEAL** |
| Marcus Hensley | ) | |
| Civil Case No. 7:20-cv-00093 | ) | |
| | ) | |
| Ronald Sloan | ) | |
| Civil Case No. 7:20-cv-00001 | ) | |

## DEFENDANTS' MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37(a), Defendants respectfully move the Court to compel Plaintiffs Brandon Adkins, Marcus Hensley, and Ronald Sloan to adequately respond to Defendants' Requests for Production and provide privilege logs that comply with the Court's Order on the topic, *see* Dkt. 1172 at 10.

## BACKGROUND

Defendants served their first set of requests for production on the Group B Plaintiffs on March 12, 2020. The Group B Plaintiffs served objections and responses to Defendants' written discovery requests in early April. On May 15, 2020, the Group B Plaintiffs filed supplemental objections and responses to Defendants' written discovery requests. The Parties then met and conferred about

deficiencies in the Group B Plaintiffs' responses to Defendants Requests for Production and the Group B Plaintiffs' privilege logs. The Parties were not able to fully resolve their disputes with Plaintiffs Brandon Adkins, Marcus Hensley, and Ronald Sloan.

Accordingly, in compliance with Pretrial Order No. 48, Defendants move to compel production of unredacted documents responsive to Defendants' Requests to Production or, in the alternative, Defendants seek *in camera* review of the redacted documents. Defendants also seek privilege logs that comply with the Court's Order on the topic. *See* Dkt. 1172 at 10.

## LEGAL STANDARD

"[A] party may move for an order compelling disclosure or discovery" when another "party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2); Fed R. Civ. P. 34(a). "The scope of discovery under Rule 26(b)(1) is to be broadly and liberally construed." *In re O'Keeffe*, 184 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016).

## DISCUSSION

The Court should grant Defendants' motion because Mr. Hensley has refused to produce nonprivileged and responsive documents, Mr. Sloan has failed to provide an adequate privilege log, and Mr. Adkins has improperly redacted and withheld disability and medical documents.

## I.      MR. HENSLEY REFUSES TO PRODUCE NONPRIVILEGED AND RELEVANT MATERIALS ABOUT PRIOR LITIGATION CONCERNING HIS SOCIAL SECURITY DISABILITY BENEFITS

Mr. Hensley has refused to produce nonprivileged and relevant documents about litigation related to his application for Social Security Disability benefits. Mr. Hensley "has applied for, but did not receive, Social Security disability benefits." Ex. 1. Following his denial of benefits, Mr. Hensley sought relief in federal court multiple times. *See Hensley v. Astrue* (*Hensley I*), No. 4:09-cv-00665-JJV (E.D. Ark.); *Hensley v. Colvin* (*Hensley II*), No. 4:12-cv-00352-JJV (E.D. Ark.); *Hensley v. Colvin* (*Hensley III*), No. 4:14-cv-00030-BSM (E.D. Ark.); *see also Hensley v. Colvin* (*Hensley IV*), 829 F.3d 926 (8th Cir. 2016).

A summary of this litigation is provided in *Hensley IV*:

> Marcus Hensley suffered a serious knee injury while deployed by the United States Army in Iraq combat in 2005. In September 2007, he underwent right knee surgery, and the Department of Veterans Affairs ("VA") awarded him benefits for service-connected disability. He then applied for Social Security disability insurance benefits, claiming as severe impairments: posttraumatic stress disorder

3

("PTSD"), back pain, right knee pain, and facial twitching. The Commissioner denied the application, ruling that Hensley was not disabled as of May 19, 2011. Hensley sought judicial review; the denial was affirmed.

Hensley filed this second application for disability insurance benefits in August 2012, while his appeal from the first denial was pending. . . . After an August 2013 hearing at which Hensley and a vocational expert ("VE") testified, the ALJ denied the application, concluding that Hensley's impairments were severe but he retained the residual functional capacity ("RFC") to perform certain sedentary work during the relevant period, May 20 to September 30, 2011. The Appeals Council denied further review, the district court upheld the denial of benefits, and Hensley appealed. It was established in the prior proceeding that Hensley was not disabled prior to the alleged . . . onset date. Thus, the question is whether he met his burden to show that he became disabled [thereafter] . . . . Concluding that substantial evidence on the administrative record as a whole supports the ALJ's contrary determination, we affirm.

*Hensley IV*, 829 F.3d at 929 (internal citation and footnote omitted).

Defendants' Request for Production 42 seeks "[a]ll [d]ocuments relating to [Mr. Hensley's] Social Security and/or Social Security Disability applications and/or earnings." Ex. 2 at 30. Mr. Hensley raised various objections, but then responded:

Subject to and without waiving the foregoing general and specific objections, Plaintiff has conducted a proportional and reasonably diligent search for documents responsive to this Request and will produce such documents to the extent they exist, are in Plaintiff's possession, are non-privileged, and are relevant. Plaintiff reserves all rights to supplement this request in accordance with the Rules.

4

*Id.* at 31. Mr. Hensley has provided an authorization for the release of records maintained by the Social Security Administration.[1] *See* Ex. 3; Dkt 1065 at 15 (finding that "any Plaintiff [who] has applied for or applied for and received Social Security disability benefits" "must execute the proposed authorization" for the release of Social Security Disability records); Mar. 24, 2020 Tr. at 36:7–12 ("I can see where Social Security disability records would be relevant if someone had applied for and/or applied for and successfully received Social Security benefits, because there would be submission of medical records, there would be testimony by the Plaintiff, and that could be relevant.").

But that authorization does not encompass all of the material responsive to Request for Production No. 42—which includes not just the pleadings, briefing, and records from the court proceedings, but also the nonprivileged documents in Mr. Hensley's attorneys' files. The documents, pleadings, and briefings from Mr. Hensley's Social Security Disability cases will contain Mr. Hensley's characterization of his claimed injuries, any disabling effects of those injuries, and the medical evidence as to both. As the Eighth Circuit explained, Mr. Hensley unsuccessfully "applied for Social Security disability insurance benefits, claiming

---

[1] Defendants have submitted Mr. Hensley's authorization to the Social Security Administration, but production of the records has been slowed by the COVID-19 pandemic.

as severe impairments: posttraumatic stress disorder ('PTSD'), back pain, right knee pain, and facial twitching." *Hensley IV*, 829 F.3d at 929. In *Hensley IV*, the Eighth Circuit affirmed findings that Mr. Hensley's "mental impairments were controlled, or at least controllable, during the relevant period;" that Mr. Hensley "reported greatly reduced, sometimes nonexistent, back and knee pain" with physical therapy; and that Mr. Hensley's "symptoms [were] not . . . as limiting as Hensley claimed because, among other reasons, no treating physician had opined that he was disabled; he did not follow the recommended course of treatment for PTSD; his impairments were controlled by medication and treatment; and he performed a wide range of daily activities." *Id.* at 933–34 (internal quotation marks omitted).

The discovery, pleadings, and briefing from Mr. Hensley's Social Security Disability cases will contain Mr. Hensley's prior positions on the question of what physical conditions he suffers from and how they affect his ability to engage in everyday life activities. *See id.* at 930–31 (noting evidence about Mr. Hensley's ability to participate in typical life activities). The nonprivileged documents in Mr. Hensley's attorneys' files could contain discovery from the Social Security Disability cases that would shed more light on the extent of Mr. Hensley's previously-claimed disabilities. The discovery, pleadings, and briefing from Mr. Hensley's Social Security Disability cases are therefore highly relevant.

Despite their relevance, Mr. Hensley has not produced the discovery, pleadings, and briefing from when he challenged the Social Security Administration's denial of his disability application. These documents are not readily accessible to Defendants on PACER.[2] *See* E.D. Ark. Admin. Pol'y & Proc. Manual § IV(D) (establishing limits on electronic access to case files in Social Security cases and noting that some records are only available in paper format); *see also, e.g.*, *Hensley I*, No. 4:09-cv-00665-JJV, Dkts. 2, 6, 14, 15 (E.D. Ark.); *Hensley II*, No. 4:12-cv-00352-JJV, Dkts. 2, 7, 13, 14 (E.D. Ark.); *Hensley III*, No. 4:14-cv-00030-BSM, Dkts. 1, 11, 16, 17, 18, 19, 20 (E.D. Ark.); *Hensley IV*, No. 15-2829, Appellant's Brief, Appellee's Brief, Appellant's Reply Brief (8th Cir.). Under Rule 34, Mr. Hensley is required to produce nonprivileged and relevant documents in his possession, custody, or control.[3] Fed. R. Civ. P. 34(a)(1). If

---

[2] *See, e.g.*, *Colvin II*, No. 4:14-cv-00030-BSM, Dkt. 16 (E.D. Ark. Sept. 23, 2014).



[3] Defendants are also pursuing other avenues to obtain the discovery, pleadings, and briefing from Mr. Hensley's Social Security Disability cases, including by physically copying them at the courthouse. But at least two of the case files no longer appear to be held at the courthouse and have been archived at the Federal Records Center. *See Hensley I*, No. 4:09-cv-00665-JJV (E.D. Ark.); *Hensley II*, No. 4:12-cv-00352-JJV (E.D. Ark.). Therefore, even if Defendants are ultimately able to recover some of the case files, it would be far less costly and burdensome for Mr.

Mr. Hensley has any of the discovery, pleadings, or briefing from his Social Security Disability cases in his possession, he must produce them. And, even if he does not physically possess the relevant discovery, pleadings, and briefing, Mr. Hensley's current or former lawyer may have the materials. If so Mr. Hensley must produce them because they are in his control.

As the Eleventh Circuit has put it, "control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). A person can demand that a former attorney provide files from a prior representation. *See* Restatement (Third) of the Law Governing Lawyers § 46 (Am. Law Inst. 2000) ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse."); *see also In re Ginn-LA St. Lucie Ltd., LLLP*, 439 B.R. 801, 809 (Bankr. S.D. Fla. 2010) (noting "the majority view that upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding, the client is presumptively accorded full access to the entire attorney's file with narrow exceptions"); Model Rules of Pro. Conduct r. 1.16(d) (Am. Bar Ass'n 2020) ("Upon termination of representation, a

---

Hensley to produce those case files that he already has in his possession, as well as those that are readily under his control through his former attorneys.

lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled[.]"). Therefore, nonprivileged materials in his attorneys' files—including the discovery, pleadings, and briefing from his Social Security Disability cases—are in Mr. Hensley's control and must be produced in response to Request for Production No. 42.

## II.   MR. SLOAN'S PRIVILEGE LOG IS DEFICIENT AND PREVENTS DEFENDANTS FROM TESTING THE LEGITIMACY OF HIS REDACTIONS

Mr. Sloan's privilege log is deficient and has prejudiced Defendants' ability to effectively challenge Mr. Sloan's redactions.[4]

> [In its June 11 Order regarding Plaintiffs' privilege logs, the Court] direct[ed] the Bellwether Plaintiffs to include the following information in their privilege logs as to each withheld document or redaction: (1) the date; (2) the identifying Bates number(s); (3) the author or creator; (4) whether the document or information was copied or distributed to a third party (if that information is readily available on the face of the document); (5) a brief description of the document or redaction (such as, "progress notes"); and (6) the reason for withholding or redaction.

Dkt. 1172 at 10. The Court explained that "[t]his information [would] be sufficient for the parties to confer on the legitimacy of the Bellwether Plaintiffs' privilege claims or, in appropriate circumstances, the relevance of the documents or

---

[4] Mr. Sloan is working to provide a revised privilege log that complies with the Court's June 11 Order. Defendants include this argument to preserve their right to compel a compliant privilege log.

information being withheld." *Id.* Mr. Sloan has not complied with the Court's June 11 Order and this failure has made it exceptionally difficult for Defendants to examine the legitimacy of Mr. Sloan's redactions.

Mr. Sloan has not complied with the Court's June 11 Order because he has not provided "information in [his] privilege log[] as to each withheld document or redaction[.]" *Id.* Instead, Mr. Sloan has logged redactions across over 4,000 pages of medical records in just six entries on his privilege log. *See* Ex. 4. An excerpt of Mr. Sloan's privilege log is below; some columns have been omitted for space.

| | BegBates | EndBates | Description | Privilege/ Redaction Description |
|---|---|---|---|---|
| 1 | R_E_Sloan -000271 | R_E_Sloan -000319 | Prescriptions and Progress Notes | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |
| 2 | R_E_Sloan -000409 | R_E_Sloan -000442 | Consult Requests and Progress Notes | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |
| 3 | R_E_Sloan -000320 | R_E_Sloan -000408 | Consult Requests, Progress Notes, Health Summaries | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |
| 4 | R_E_Sloan -000447 | R_E_Sloan -000617 | Personal Information Report, Consult Reports | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |

|   | BegBates | EndBates | Description | Privilege/ Redaction Description |
|---|---|---|---|---|
| 5 | R_E_Sloan -000833 | R_E_Sloan -001869 | Medical Records, Consult Reports, Lab Results | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |
| 7* | R_E_Sloan -001870 | R_E_Sloan -004661 | VA Rating decision, medical records | Highly Confidential Information – Mental Health<br><br>Highly Protected Information – HIV |

\* Mr. Sloan's privilege log has no row 6.

*See* Ex. 4.

Each entry on Mr. Sloan's privilege log is too capacious for Mr. Sloan's privilege log to effectively explain the basis for each redaction in Mr. Sloan's production. For example, entry three on Mr. Sloan's privilege log addresses at least 15 different doctor's visits that occurred over a two year period. This includes at least one visit to the dentist. *See* Ex. 5 (R_E_Sloan-000379 to -000382). In a similar vein, entry seven on Mr. Sloan's privilege log purports to explain all of the redactions across over 2,000 pages of disability and medical records. The only information provided by Mr. Sloan's privilege log is that these thousands of pages of records have been redacted because they contain "Highly Confidential Information – Mental Health" and "Highly Protected Information – HIV." *Id.*

Mr. Sloan has not provided the requisite information for each of the thousands of redactions in his production. Instead, Mr. Sloan has attempted to force Defendants

to comb through the thousands of pages of redacted records to identify each redacted document and attempt to discern the basis for the redaction. Mr. Sloan's refusal to comply with the Court's June 11 Order has therefore prejudiced Defendants and prevented them from effectively testing the legitimacy of Mr. Sloan's redactions. The Court should order Mr. Sloan to comply with its June 11 Order and provide the requisite information about each redacted document.

**III.  MR. ADKINS HAS PUT HIS MENTAL HEALTH CONDITIONS AT ISSUE AND IMPROPERLY REDACTED NONPRIVILEGED AND RELEVANT RECORDS ABOUT THE EFFECT THAT HIS SUBSTANCE ABUSE AND MENTAL ILLNESS HAVE HAD ON HIS EARNING CAPACITY**

Mr. Adkins has had difficulty maintaining employment for more than a decade. In 2009, Mr. Adkins was separated from the U.S. Army for a "drug rehabilitation failure." Ex. 6 (B_L_Adkins-DOD-000034 (DD Form 214)). Based on the incomplete records that Defendants have been provided, it appears that Mr. Adkins has continued to have severe and ongoing problems related to both substance abuse and various mental health conditions since separating from the Army. *See, e.g.*, Ex. 7 (B_L_Adkins-VA-000434 (discussing the continuing impact of Mr. Adkins' disabilities on Mr. Adkins' earning capacity where the list of actual disabilities has been redacted by Mr. Adkins' counsel)). Mr. Adkins has submitted multiple claims of disability and unemployability to the VA in connection with these conditions.

In this litigation, Mr. Adkins claims that his use of the Combat Arms Version 2 ("CAEv2") has caused "depression, mood disorder and lethargy induced by sleep deprivation." Ex. 8 at 43 (Answer to Interrogatory 52). Likewise, Mr. Adkins asserts that his use of the CAEv2 has caused damages including "present diminished earning capacity" and "future diminished earning capacity," for which he intends to submit "expert proofs." *Id.* at 43, 45 (Answers to Interrogatory Nos. 52 & 55).

Nonetheless, Mr. Adkins has withheld more than 2,500 pages and redacted up to 1,000 additional pages of records provided in the VA's *Touhy* response.[5] Defendants cannot know exactly how many of these records are VA disability records because of gaps caused by Mr. Adkins' withholding of documents and the lack of information on Mr. Adkins' privilege log. But Defendants' current understanding is that a large proportion of these documents relate directly to Mr. Adkins' VA disability claims and his employability (both current and future).

As the Court has recognized, Mr. Adkins bears the burden of showing that he has properly redacted the thousands of documents included on his privilege log. "It

---

[5] Defendants understand that Mr. Adkins is revising his redactions and privilege log in response to Defendants' concerns. Defendants plan to continue to meet and confer with Mr. Adkins' counsel regarding these revisions. At the time of this filing, Defendants do not believe Plaintiffs' proposed changes will address all of Defendants' concerns.

is well understood that the burden is on the party withholding discovery to show that the documents or information at issue are privileged from disclosure under Rule 26 . . . ." *Consejo De Defensa Del Estado De La Republica De Chile v. Espirito Santo Bank*, No. 09-20613-CIV, 2010 WL 2162868, at *2 (S.D. Fla. May 26, 2010). Moreover, as this Court has ruled, this is an inquiry that "must be resolved on a case-by-case basis." Dkt. 1258 at 10. Mr. Adkins cannot meet his burden here.

### A.   Mr. Adkins has directly put the causes of his "depression, mood disorder and lethargy" and "sleep deprivation" at issue in this case.

The Court has recognized that Defendants are entitled to the production of mental health records when a plaintiff has put an identifiable mental health condition at issue by contending the conditions are a "causally related damage." Dkt. 1335 at 3–4; *see also* Dkt. 1064 at 10–11. Defendants' Interrogatory No. 52 asked Mr. Adkins specifically to "[i]dentify All damages, losses, or expenses of Any nature whatsoever by category and the amount *that You are claiming as a result of Your use of the CAEv2*[.]" Ex. 8 at 43 (emphasis added). In response to this Interrogatory, Mr. Adkins explicitly asserted a "causally related" connection between his alleged "hearing loss and tinnitus" and his "depression, mood disorder and lethargy." *Id.* ("*As a result of my use of the CAEv2*, I now suffer hearing loss and tinnitus and the [sic] all the severe consequences attendant thereto, the categories of damages attendant to which include . . . (v) . . . *depression, mood disorder and*

*lethargy* induced by sleep deprivation." (emphasis added)). These mental health conditions are exactly the same mental health conditions for which Mr. Adkins has claimed and received VA disability benefits. Ex. 9 (February 9, 2010 VA Disability Rating Decision (discussing Mr. Adkins' sleeping problems in connection with his "psychiatric disorders" and symptoms including "depressive disorder," "feeling tired after sleeping and having problem sleeping as well as increased irritability," and "impulsive behavior and aggressive acts toward others")).

Plaintiffs do not agree, apparently because Mr. Adkins asserts that the CAEv2 has caused his alleged sleeping problems, which then in turn have caused his "depression, mood disorder and lethargy." The insertion of "sleep deprivation" as an intermediary in the purported causal chain between Mr. Adkins' use of the CAEv2 and his mental health conditions is a distinction without a difference. By alleging that his mental health conditions are "causally related" to his use of the CAEv2, Mr. Adkins has squarely put those conditions at issue, and Defendants are entitled to full copies of Mr. Adkins' records.

### B.   Mr. Adkins has improperly redacted disability records that bear directly on the question of Mr. Adkins' earning capacity.

The Court has found that disability records are nonprivileged and relevant when a plaintiff pursues a claim for lost earning capacity. Dkt. 1258 at 11–12 (finding that "[a]ny privilege as to [VBA disability records] has been waived"); *id.* at 12 (finding that VBA disability records "are relevant, and therefore discoverable,

only to the extent [a plaintiff] makes a claim for diminished earnings or earning capacity"). The Court should reach the same finding here because Mr. Adkins seeks damages for lost earning capacity and intends to call an expert in support of his claim.[6] *See* Ex. 8 at 46 ("My earning capacity is diminished not only by my present hearing loss and tinnitus but also in that I have been placed in a position of heightened vulnerability to accelerated hearing loss in the future, and consequent further diminishment of earning capacity. . . . The amount of my lost earnings attributable to my injury will be the subject of forthcoming expert proofs[.]").

---

[6] VBA disability records are nonprivileged because they contain information voluntarily shared by an application with a third party to obtain disability benefits. *Bosworth v. Dayton Heidelberg Distrib. Co.*, 394 F. Supp. 3d 794, 795 (S.D. Ohio 2019) ordering plaintiff to execute an authorization for the release of records because "the patient-physician privilege [did not] . . . attach to [the plaintiff's] application for VA benefits or to the records considered in determining his disability benefits claim"); *In re Grand Jury Investigation*, 114 F. Supp. 2d 1054, 1056 (D. Or. 2000) (explaining that "submitting . . . records [to the VA] in support of [a] claim for monetary benefits . . . . is no different than submitting medical records to a tortfeasor's insurance carrier in connection with a demand for damages associated with bodily injuries caused by an automobile accident"). VBA disability records are relevant when a plaintiff seeks damages for lost earning capacity because the VA disability system compensates veterans for "reductions in earning capacity from specific injuries or combinations of injuries." 38 U.S.C. § 1155; *see also Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 927 F.3d 1263, 1264 (Fed. Cir. 2019) ("Once the VA has determined the existence of a disability, the VA must rate the disability, that is, determine the degree to which the veteran's earning capacity has been diminished.").

1.    *Mr. Adkins has attempted to redact his own prior statements about his ability to work.*

Plaintiff Adkins has repeatedly pursued disability and unemployability claims with the VA. *See, e.g.*, Ex 10 (B_L_Adkins-VA-001587). When assessing these claims, the VA has offered its opinion about (1) whether Mr. Adkins has a vocational impairment and, if so, (2) why. These records are relevant to Mr. Adkins' lost earning capacity claim because the claimed injury is the same; Mr. Adkins claims lost earning capacity in both his disability applications and in this lawsuit. *See Santana v. Carnival Corp.*, No. 09-23113-CV-GOLD, 2011 WL 13220283, at *6 (S.D. Fla. Sept. 7, 2011) ("[A]ny preexisting injuries that Plaintiff had before her accident from this case are certainly relevant in terms of the Parties' arguments concerning damages and preexisting conditions."); *Williams v. Carnival Corp.*, 2020 WL 854809, at *1 (S.D. Fla. 2020) ("A defendant has the right to the production of medical records that have a logical connection to the plaintiff's claim of injuries." (internal quotation marks and brackets omitted)). Despite their relevance, Mr. Adkins has redacted critically important information.

In the course of his various disability claims, Mr. Adkins has made statements about the reasons he thinks he has a reduced earning capacity. Such party opponent statements are admissible and highly probative because they shed light on Mr. Adkins' prior opinions about his ability to work. *See* Fed. R. Evid. 801(d)(2) (establishing that a party opponent statement is not hearsay). Despite the fact that

they contain Mr. Adkins' own prior statements about his earning capacity, Mr. Adkins has redacted these records.

For example, numerous applications and letters submitted by Plaintiff Adkins to the VA relating to his disability claims and unemployability are redacted. *See, e.g.*, Ex. 10 (B_L_Adkins-VA-001587); Ex. 11 (B_L_Adkins-VA-001121 to -001125). In one from 2018, Mr. Adkins redacted something in a list of "issues [that] in combination prevent [him] from performing even sedentary work." Ex. 10 (B_L_Adkins-VA-001587):

*Id.* Also in 2018, Mr. Adkins completed a form titled "Rehabilitation Needs Inventory," but redacted the answer to a question about his treatment for substance abuse. Ex. 11 (B_L_Adkins-VA-001121-1125).



*Id.* at -001125. The VA states that is "need[s] this information for educational and vocational planning to help [Mr. Adkins] make the best use of [his] vocational rehabilitation benefits." *Id.* at -001121. Therefore, the VA considers information about substance abuse treatment to be relevant to vocational rehabilitation. Additionally, another VA record states that Mr. Adkins "believed" in 2017 that "legal issues for [a] DUI from February 2014" and "chronic marijuana addiction . . . [were] preventing him from getting a job."[7] *See* Ex. 13 at -002132

---

[7] Mr. Adkins' belief that substance abuse could prevent him from getting a job is supported by Dr. Shahnasarian's affidavit and case law. Ex. 12 ¶ 8 ("[A] history of substance abuse unrelated to issues in dispute can have profound implications on a plaintiff's vocational capacities"—"problems with work attendance, job performance, and job stability; limitations on work participation (e.g., during periods of symptom exacerbation, relapse, and treatment); and accessibility to work opportunities (e.g., potential need to submit to drug testing, work contraindications associated with potential exertional and non-exertional substance use problems, employer bias)."); *see also* July 16, 2020 Hr'g Tr. at 119:7–10 (reasoning that, if a "person was a heroin addict and using heroin on a daily basis, that might be an area you could get into and argue that the person nonetheless is not employable"); *Martinez v. Rycars Const., LLC*, No. CV410-049, 2010 WL 4117668, at *1

(B_L_Adkins-VA-002130 to -002138). Because Mr. Adkins alleges in this lawsuit that his use of CAEv2 has reduced his earning capacity, Mr. Adkins should not be permitted to redact his own prior statements about conditions that impact his ability to find employment.

Likewise, Mr. Adkins redacted most of the VA's explanation of its February 10, 2020 decision that he has a "vocational impairment".

| SECTION III - EMPLOYMENT HANDICAP (EH) DETERMINATION | | |
|---|---|---|
| (References: 38 U.S.C. 3102; 38 CFR 21.40 and 21.51) | | |

6. AN EH EXISTS ONLY IF A CLAIMANT HAS A VOCATIONAL IMPAIRMENT, THE CLAIMANT'S SERVICE-CONNECTED DISABILITY (SCD) CONDITIONS CONTRIBUTE IN SUBSTANTIAL PART TO THE VOCATIONAL IMPAIRMENT, AND THE CLAIMANT <u>HAS NOT</u> OVERCOME THE VOCATIONAL IMPAIRMENT.

6A. DOES THE CLAIMANT HAVE A VOCATIONAL IMPAIRMENT?
&#9746; YES   &#9744; NO

EXPLAIN THE DECISION IF THE CLAIMANT HAS OR DOES NOT HAVE A VOCATIONAL IMPAIRMENT:
The veteran has a current rating of 90% for ▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, juvenile myoclonic epilepsy (60%), tinnitus (10%).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The veteran states his tinnitus is exacerbated by loud work environments.

Ex. 7 (B_L_Adkins-VA-000434). With the redactions, it is not possible to understand why the VA thought that Mr. Adkins had a vocational impairment. Similarly, VA documents detailing Mr. Adkins's disability claims and whether he is

---

(S.D. Ga. Oct. 18, 2010); *Chaney v. City of Orlando*, No. 6:04-CV-515-ORL-22-KRS, 2006 WL 8439517, at *5 (M.D. Fla. Feb. 17, 2006); *Butler v. French*, 83 F.3d 942, 945 (8th Cir. 1996).

unemployable are redacted. *See, e.g.*, Ex. 14 (B_L_Adkins-VA-000356; Ex. 7 (B_L_Adkins-VA-000433 to -000439); Ex. 13 (B_L_Adkins-VA-002130 to -002138); Ex. 15 (B_L_Adkins-VA-004905 to -004909).

A leading treatise on the topic of earning capacity explains the importance of disability records when assessing a person's vocational capacity. "A person with a disability who acquires additional disabling problems can experience compounding effects from vocational handicaps caused by the interaction of new and old disabilities and associated problems." Michael Shahnasarian, Ph.D., *Assessment of Earning Capacity* 124 (4th ed. 2015). Therefore, "[a] thorough understanding of a subject's preincident medical and psychological history, level of functioning, and presence of vocational handicaps is essential to evaluate how new disabilities affect present and future earning capacity." *Id.* Accordingly, Mr. Adkins' disability records—especially those that discuss potential reasons for lost earning capacity— are relevant to Mr. Adkins' lost earning capacity claim in this case and should be unredacted. Ex. 12 ¶ 5 ("[R]ecords reflecting a plaintiff's prior claims of disability or unemployability, the information and statements he or she makes in connection with those claims, and any information and documents used to evaluate those claims are highly relevant to my analysis of a plaintiff's vocational functioning and the causes of any impairments.").

2.   *Mr. Adkins improperly redacted information, employing redactions as both a sword and a shield.*

In light of Mr. Adkins' assertions that his use of the CAEv2 has diminished his earning capacity, Mr. Adkins' selective redaction of information that undermines his claimed damages—while at the same time producing information to support his claims—is both misleading and highly prejudicial. For example, Mr. Adkins has produced a redacted February 2020 evaluation from the VA that Mr. Adkins has a "vocational impairment" but redacted almost the entire explanation, except for the portion that discusses Mr. Adkins' alleged tinnitus:



Ex. 7 (B_L_Adkins-VA-000434). Through his selective redactions, Mr. Adkins furthers his argument that tinnitus is a driving cause of his alleged lost earning capacity. But Defendants should be able to test whether Mr. Adkins' characterization

of the VA's analysis is accurate, a task made demonstrably more difficult by Mr. Adkins' selective redactions.

Similarly, Defendants understand that Mr. Adkins suffered severe substance abuse and addiction issues at least since the time he was separated from the military for a "drug rehabilitation failure." Ex. 6 (B_L_Adkins-DOD-000034 (DD Form 214)). Yet, Mr. Adkins' VA records are replete with examples of Mr. Adkins claiming he has never "had any drug or alcohol addiction or been evaluated, Treated (or had treatment recommended) for addiction or abuse":

Ex. 21 (B_L_Adkins-VA-005608) (highlighting added).



Ex. 22 (B_L_Adkins-VA-005622) (highlighting added). Mr. Adkins' selective redactions are undeniably misleading and prejudicial to Defendants. Moreover, because of the presumably damaging information Mr. Adkins' has redacted or withheld, Mr. Adkins has denied Defendants access to the records and information needed to fully correct these misrepresentations.

### C.   Mr. Adkins has improperly redacted medical records that bear directly on the question of Mr. Adkins' earning capacity.

Aside from records detailing Plaintiff Adkins' disability and unemployability claims, there are redactions on numerous medical records that also appear to bear on Mr. Adkins' employability. For example, Mr. Adkins has redacted an occupational therapy record that details how he "has some disciplinary actions pending and . . . is going to try to take courses while incarcerated." *See* Ex. 16 (May 11, 2009 Occupational Therapy Clinic Note (B_L_Adkins-VA-006653 to -006654)).



*Id.* at -006653. Similarly, a medical record detailing the circumstances surrounding Mr. Adkins' discharge from the Army is redacted. *See* Ex. 17 (B_L_Adkins-VA-006682). These records should not be redacted because information about any job training or education that Mr. Adkins has completed is relevant to the question of what Mr. Adkins' skillset is, and therefore relevant to the question of what jobs Mr. Adkins is qualified for. The reasons for Mr. Adkins'

premature discharge from the Army are relevant because future employers are likely to consider the reasons why Mr. Adkins left his prior employment when deciding whether to hire him for a new job. Therefore, the Court should order Mr. Adkins to unredact these records.

### D.   Mr. Adkins' privilege log is deficient and prevents Defendants from testing the legitimacy of his redactions.

As with Mr. Sloan, Mr. Adkins' privilege log does not comply with the Court's June 11 Order.

> [In its June 11 Order regarding Plaintiffs' privilege logs, the Court] direct[ed] the Bellwether Plaintiffs to include the following information in their privilege logs as to each withheld document or redaction: (1) the date; (2) the identifying Bates number(s); (3) the author or creator; (4) whether the document or information was copied or distributed to a third party (if that information is readily available on the face of the document); (5) a brief description of the document or redaction (such as, "progress notes"); and (6) the reason for withholding or redaction.

Dkt. 1172 at 10.

Vast sections of Mr. Adkins's VA records have been withheld without providing a sufficient description of the document on Mr. Adkins' privilege log, *i.e.* without information such as "progress notes" or some other description of the type of record as opposed to the reason he is withholding, whether multiple records are being withheld under the Bates range, or the dates covered by those records. *See* Ex. 18 (Adkins 6/1/2020 Privilege Log); Ex. 19 (Adkins 7/2/2020 Privilege Log). Mr. Adkins likewise does not indicate whether the withheld records relate to claims for

VA disability or not, which is highly relevant given the Court's rulings that any privilege as to those records was waived and that such records are relevant to claims of diminished earnings or earning capacity.[8] This includes more than 2,500 pages of materials that appear to be withheld just in privilege log entry numbers 8, 9, 12, 15, 17, 22, 25, 26, 28, 30, 67, 73, 78, 84, 92, 150, 187, 230, 233, 236, 238, 242, 246, 247, 250, 255, 264, 265, 266, 270, 271, 285, 291, 294, 295, 303, 304, 305, 306, 307, 308, 310, 311, 318, 326, 364, 378, 385, 388, 395, 397, 398, 407, and 431. Ex. 19 (Adkins 7/2/2020 Privilege Log). The only explanation provided for withholding these records is that they contain "medical information relating to Plaintiff's mental health issues."

As just one example, entry number 17 on Mr. Adkins' privilege log is concerning because Mr. Adkins claims to have issues sleeping as a result of his use of the CAEv2. *See* Ex. 8 at (Adkins Response to Interrogatory 13). But Mr. Adkins began withholding records pursuant to privilege log entry number 17 in the middle of a discussion of a 2015 sleep study that had been conducted on Mr. Adkins. *Compare* Ex. 20 (B_L_Adkins-VA-000996), *with* Ex. 19 (Adkins 7/2/2020

---

[8] During the Parties' meet and confer regarding Mr. Adkins' privilege log, Plaintiffs committed to providing additional information regarding (a) the facility generating the records; (b) the physician or treating provider who generated the record; and (c) the dates of withheld records. Plaintiffs indicated that they would look into but did not commit to providing information regarding whether each record was a part of the VA Disability file or not.

Privilege Log, Entry 17 re withholding pages B_L_Adkins-VA-000997 through

B_L_Adkins-VA-001098).

```
   LOCAL TITLE: EEG CONSULT REPORT
   STANDARD TITLE: NEUROLOGY DIAGNOSTIC STUDY REPORT
   DATE OF NOTE: DEC 16, 2015@15:35    ENTRY DATE: DEC 16, 2015@15:35:34
       AUTHOR: HAKIMIAN,SHAHIN      EXP COSIGNER:
    INSTITUTION: SEATTLE VA MEDICAL CENTER
       DIVISION: SEATTLE
        URGENCY:                       STATUS: COMPLETED

   NAME:              ADKINS,BRANDON LYDELL
   STUDY:             EEG-awake/sleep
   STUDY DATE:        12/15/15
   STUDY NUMBER:      16-r-073
   LOCATION:          Puget Sound VA


   CLINICAL HISTORY:
   The patient is a 30-year-old male with epilepsy.  EEG was requested to find
   evidence the etiology of the patient's condition.

   DESCRIPTION OF EEG:
   EEG recording was performed using 10:20 electrode distance with additional
   anterior temporal electrodes with video from 10:46 to 11:39.

   There were sporadic generalized 3-4 Hz spike-wave complexes lasting 1-2 seconds
   not associated with any clinical signs.  Otherwise, during wakefulness a well
   formed posterior dominant rhythm of frequency 10 Hz was apparent. This was
   symmetric and reactive to eye closure.  In addition, the background included low
   amplitude frontal maximum beta activities and slight 9 Hz paracentral mu
   rhythms.  Drowsiness was identified based on:  increased background theta,
   attenuation of posterior dominant rhythm, and ocular signs.  Stage II sleep was
   identified based on appearance of sleep spindles and K-complexes.

   Strobe light elicited slight symmetric driving responses.  Rarely, generalized
   spike-wave complexes were seen during strobe light but this was likely a
   coincidence.  Hyperventilation produced transient buildup of background slow
   _____
   CLIN DOC: Multi-Document                                             Page: 287
   ADKINS,BRANDON LYDELL  SSN█████1632           Printed on: Aug 02, 2019 5:52:18 am
   System: VISTA.PUGET-SOUND.MED.VA.GOV                              Division: 663

              COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

                                                          B_L_Adkins-VA-000996
```

Ex. 20 (B_L_Adkins-VA-000996).

    Likewise, privilege log entry 26 is concerning because Plaintiff appears to be

withholding the substance of an Administrative Correspondence Letter that

Defendants have no reason to believe would be permissibly redacted under PTO 39.

*Compare* Ex. 23 (B_L_Adkins-VA-001332), *with* Ex. 19 (Adkins 7/2/2020

Privilege Log, Entry 26 re withholding pages B_L_Adkins-VA-001333 through

B_L_Adkins-VA-001342).

```
 ------------------------------------------------------------------
  LOCAL TITLE: ADMINISTRATIVE CORRESPONDENCE-LETTER
 STANDARD TITLE: LETTERS
 DATE OF NOTE: DEC 04, 2015@09:40    ENTRY DATE: DEC 04, 2015@09:40:58
      AUTHOR: WILSON,SARAH A     EXP COSIGNER:
  INSTITUTION: AMERICAN LAKE (VAMC)
    DIVISION: AMERICAN LAKE
     URGENCY:                         STATUS: COMPLETED

                          DEPARTMENT OF VETERANS AFFAIRS
                          VA Puget Sound Health Care System

                       Seattle Division           American Lake D
 ivision
                       1660 South Columbian Way    9600 Veterans D
 rive, SW
                       Seattle, WA  98108-1597       Tacoma, WA 984
 93-5000

                                            MAR 27, 2018


 ------------------------------------------------------------------
 CLIN DOC: Multi-Document                                Page: 167
 ADKINS,BRANDON LYDELL SSN█████1632    Printed on: Mar 27, 2018 6:20:55 pm
 System: VISTA.PUGET-SOUND.MED.VA.GOV                  Division: 663

        COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

                                          B_L_Adkins-VA-001332
```

Ex. 23 (B_L_Adkins-VA-001332).

Plaintiffs have agreed to look into these specific issues.  But given the clearly

inappropriate withholding of these records, Defendants have significant concerns

regarding Mr. Adkins' assertion that there is nothing in the other 2,500 pages of

withheld records that needs to be produced too. To be clear, Defendants position is

that all of Mr. Adkins records should be produced because he has asserted a causal

connection between his mental health issues and his use of the CAEv2. To the extent

the Court disagrees, however, the Court should compel Mr. Adkins to produce

versions of all of the records on his privilege log redacting only the limited amount of information the Court deems protected but producing any and all administrative information related to the records, including for each record the dates, facilities, treating providers, and the purpose of the visit.

Alternatively, Defendants request that the Court review the identified documents *in camera* to assist in its determination. To warrant *in camera* review, "a lesser evidentiary showing is needed . . . than is required to ultimately overcome the privilege." *Tindall v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1352 (M.D. Ga. 2011) (emphasis omitted). "[W]here there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, the court must utilize its discretion as to whether *in camera* review is appropriate under the circumstances presented." *U.S. v. Davita*, 301 F.R.D. 676, 681 (N.D. Ga. 2014). Defendants have satisfied the burden for *in camera* review because Defendants have identified various documents that discuss Mr. Adkins' ability to work, but have been redacted by Mr. Adkins. These redactions raise issues about the remainder of Mr. Adkins' production and they therefore warrant *in camera* review of the documents that have been redacted.

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully request that the Court grant Defendants' motion and order Plaintiffs to properly respond to Defendants' Requests for Production.

Dated:  August 21, 2020                          Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (2020) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mark.nomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that they met

and conferred with Plaintiff Brandon Adkins' counsel on August 18 & 21, 2020;

with Plaintiff Marcus Hensley's counsel by telephone on July 3, 2020 and

subsequently in writing; and with Plaintiff Ronald Sloan's counsel on July 6, 2020

and August 18, 2020. Defendants were unable to resolve their disagreements with

Plaintiffs about whether they had properly responded to Defendants' Requests for

Production.

Dated:  August 21, 2020                             Respectfully submitted,

                                                    */s/ Robert C. "Mike" Brock*
                                                    Robert C. "Mike" Brock
                                                    KIRKLAND & ELLIS LLP
                                                    1301 Pennsylvania Avenue, N.W.
                                                    Washington, D.C. 20004
                                                    Telephone: (2020) 389-5991
                                                    mike.brock@kirkland.com

                                                    *Counsel for Defendants 3M Company,*
                                                    *3M Occupational Safety LLC, Aearo*
                                                    *Technologies LLC, Aearo Holding,*
                                                    *LLC, Aearo Intermediate, LLC and*
                                                    *Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 6,010 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  August 21, 2020                    Respectfully submitted,

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (2020) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 21, 2020, a true and correct

copy of the foregoing:

### DEFENDANTS' MOTION TO COMPEL

was served as follows:

☒   **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, *Lead Counsel*<br>Jennifer M. Hoekstra<br>Aylstock, Witkin, Kreis & Overholtz,<br>PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>baylstock@awkolaw.com<br>jhoekstra@awkolaw.com | Shelley V. Hutson, *Co-Lead Counsel*<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>shutson@triallawfirm.com |
| Christopher A. Seeger, *Co-Lead<br>Counsel*<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>cseeger@seegerweiss.com | Brian H. Barr, *Co-Liaison Counsel*<br>Levin, Papantonio, Thomas, Mitchell,<br>Rafferty, & Proctor, P.A.<br>316 South Baylen Street<br>Pensacola, FL 32502<br>Tel.: (850) 435-7044<br>bbarr@levinlaw.com |
| Michael A. Burns, *Co-Liaison Counsel*<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>epefile@mostynlaw.com | Kenneth C. Bailey<br>Robert C. Cowan<br>Bailey Cowan Heckaman PLLC<br>5555 San Felipe Street, Suite 900<br>Houston, TX 77056<br>Tel.: (713) 425-7100<br>cbailey@bchlaw.com<br>rcowan@bchlaw.com<br><br>*Counsel for Plaintiff Brandon Adkins* |

| | |
|---|---|
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Heninger Garrison Davic LLC<br>2224 1st Avenute North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>taylor@hgdlawfirm.com<br>lewis@hgdlawfirm.com<br><br>*Counsel for Plaintiff Marcus Hensley* | Muhammad S. Aziz<br>Abraham Watkins Nichols<br>800 Commerce Street<br>Houston, TX 77055<br>Tel.: (713) 222-7211<br>jdean@abrahamwatkins.com<br><br>*Counsel for Plaintiff Ronald Sloan* |

DATED:  August 21, 2020

/s/ Robert C. Brock

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*