**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

```
IN RE: 3M COMBAT ARMS EARPLUG      )     Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,     )
                                   )     Pensacola, Florida
                                   )     August 28, 2020
                                   )     10:08 a.m.
                                   )
                                   )
_____)
```

**FIFTEENTH CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-52)

**A P P E A R A N C E S**

**JUDGE DAVID R. HERNDON** (ret.)

FOR THE PLAINTIFFS:    **BRYAN F. AYLSTOCK, ESQUIRE**
**JENNIFER HOEKSTRA, ESQUIRE**
**NEIL OVERHOLTZ, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida  32502

**BRIAN H. BARR, ESQUIRE**
Levin Papantonio
316 S Baylen Street, Suite 600
Pensacola, Florida  32502

**SHELLEY HUTSON, ESQUIRE**
Clark Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, Texas  77002

**DAVID R. BUCHANAN, ESQUIRE**
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660

FOR THE DEFENDANTS:    **KIMBERLY BRANSCOME, ESQUIRE**
**JAY BHIMANI, ESQUIRE**
Dechert, LLP
633 W 5th Street, Suite 4900
Los Angeles, California  90071

**MICHELLE SIX, ESQUIRE**
Kirkland & Ellis, LLP
601 Lexington Avenue
New York, New York 10022

**MARK J. NOMELLINI, ESQUIRE**    **LARRY HILL, ESQUIRE**
Kirkland & Ellis, LLP    Moore, Hill & Westmoreland, PA
300 N Lasalle    350 W Cedar Street, Suite 100
Chicago, Illinois  60654    Pensacola, Florida  32502

1           P R O C E E D I N G S

2           **JUDGE RODGERS:**  Good morning.

3           *(Alarm sounding.)*

4           Maybe not.  Oh, I don't think that's our technology,

5    actually.  Security system.  We need that.  Good to know it's

6    working.

7           Thank you, Leonard.

8           Good morning.  Welcome.  Whether you're here in the

9    courtroom -- we do have a number of people here in the

10   courtroom -- or appearing by video or by telephone, I welcome

11   you to the Fifteenth Case Management Conference in the In Re:

12   3M Combat Arms Earplug Multidistrict Litigation.  Of course,

13   this is MDL 2885.  We are in a courtroom and on the record.

14          So, the attorneys that are -- there's, again, a number

15   of people here in the courtroom, but at counsel table, I'm just

16   going to identify those at counsel table.

17          I have Mr. Hill for 3M.  Other counsel are appearing

18   remotely.

19          For the Plaintiffs, I have Mr. Aylstock, Ms. Hutson,

20   Mr. Barr, Mr. Overholtz, and Ms. Hoekstra all here in the

21   courtroom.  And Mr. Burns is also present.  He's not at counsel

22   table, but he was in the case management conference earlier

23   along with Ms. Cornell, who is one of the individual bellwether

24   lawyers.

25          And let me just address that for just a moment.  I did

1    ask the individual counsel of record in the bellwether cases to

2    appear today both at the preconference meeting by telephone,

3    and then I believe you were all in a small little box on the

4    monitors that were appearing by video.

5            I appreciate very much you all being here.  The point

6    of asking you to appear today at the CMC and the preconference

7    meeting was to make sure you understood that, going forward in

8    your individual bellwether cases, regardless of what group

9    you're in, once your case kicks off with discovery, and then

10   later if selected for trial, that you are counsel of record;

11   you are responsible for the handling and prosecution of your

12   case on behalf of your individual client, and that I will be

13   looking to you as counsel of record -- and I know in some cases

14   there's more than one counsel of record, it's not all of

15   them -- but I'll be looking to you should any issues arise

16   during discovery and certainly at trial.

17           Because you are the attorney that your client has

18   hired to represent him or her in this litigation, and you will

19   also appear as an officer of the Court in those cases.  And

20   that is regardless of the involvement of Leadership in your

21   case.

22           In other words, I will consider you primarily

23   responsible, if not exclusively responsible, for the handling

24   of your individual case.  That's not to say Leadership can't be

25   involved and can't assist you, but the buck stops with you.

1    And if there are any issues, you won't be able to pass that

2    buck off to Leadership.  I will be asking you for answers to

3    any of the questions.

4         Now, with that said, there have been some of the

5    bellwether cases in which a member of Leadership has appeared

6    formally as counsel of record in those cases.  And so, to the

7    extent that's occurred, that Leadership lawyer sort of has dual

8    roles.

9         But in terms of specific issues coming up in the

10   bellwether cases, if that Leadership lawyer is counsel of

11   record, then I'm fine to confer with that Leadership lawyer as

12   counsel of record for that bellwether case, not as Leadership

13   counsel for the common benefit of the litigation on the

14   Plaintiffs' side.  Hopefully that's clear.

15        Going forward, I will not ask or require that

16   bellwether counsel all be present as I have today for the

17   conference and the preconference meeting.  Only if your case

18   has an issue on the agenda will I ask that one of the counsel

19   of record from your specific bellwether case be present at the

20   preconference meeting and then here in the courtroom for the

21   case management conference.

22        I've asked the lawyers this morning -- and if you all

23   were on the phone, I'm only saying this for those who were not

24   in the conference room or on the telephone -- but I've asked

25   counsel on both sides, Defense and then with the individual

1    bellwether cases, to meet and confer on a regular basis in

2    regards to the specific bellwether case and try to identify any

3    issues before they erupt into something requiring Court

4    intervention.

5            If you do need Court intervention, then that's

6    something we can schedule a discussion and a time to address at

7    a leadership call which we have every couple of weeks, or it

8    can be placed on the agenda at a case management conference

9    such as this.

10           Any questions from anyone, whether it be Leadership or

11   bellwether counsel, about my expectations or your role?

12           Mr. Aylstock, you're standing.

13           **MR. AYLSTOCK:**  I think your guidance is crystal clear,

14   to me anyway.  I did want to introduce the Court to Mr. Thomas

15   Henry, who came in.  He represents Mr. Finley, a bellwether

16   case, not a Group A.

17           **JUDGE RODGERS:**  Good morning.

18           **MR. HENRY:**  Good morning.

19           **JUDGE RODGERS:**  Thank you for being here in person as

20   well.

21           **MR. AYLSTOCK:**  Oh, I'm sorry.  You know Riley

22   Burnette.  Mr. Burnette is also here.

23           **JUDGE RODGERS:**  I do know Mr. Burnette.  I didn't see

24   him because --

25           **MR. BURNETTE:**  Hello.

1        **JUDGE RODGERS:**  Good morning.  Thank you all for being

2   here.

3        And I'll go ahead and say this now -- it doesn't

4   pertain to the Defense, but just since I have so many of you

5   here and present.

6        As far as attorney time and keeping track of that for

7   the bellwether cases, our CPA, Mr. Sansom and Ms. Hogan, are

8   aware of how I want that done; and it will be kept separate.

9   Whether it's Leadership time in a bellwether case or it's a

10  specific bellwether lawyer in an individual case, your time,

11  it's all going to be compiled and kept separate.

12       Don't read anything into that in terms of whether it's

13  going to be credited as common benefit time, if and when that

14  time comes to make that type of a decision.  I'm keeping it

15  separate now because I don't need to make that decision right

16  now.  There are other decisions I need to make, and so this, in

17  my opinion, is premature.  But we'll keep it separate and very

18  closely tracked.

19       I do see a number of faces.  Again, we play Romper

20  Room at every case management conference because there's so

21  many boxes on my screen.  But I do see Judge Herndon, and I see

22  Judge -- I know Judge Jones is here because I saw him a minute

23  ago.  That's what's so odd about this setup is some of you

24  appear and then you disappear and I lose you.

25       So, I actually have all of you here closer, but I

```
 1   still don't -- even though I can see better, I still don't see
 2   Judge Jones.
 3              Judge Jones, are you on?  I believe I saw you earlier.
 4              [No response.]
 5         MADAM CLERK SIMMS:  He was connected.
 6         JUDGE RODGERS:  He was connected, Ms. Simms is telling
 7   me.
 8              Judge Jones, Judge Jones, where are you?
 9              [No response.]
10              Okay.  Well, hopefully we haven't lost him and he's
11   just behind everybody.  We're working on our technology.
12              Well, let me ask, Ms. Simms, if you could try to
13   communicate with him via computer and see if we've lost him.
14              As we do every month, I'm going to follow along the
15   agenda that was submitted by the parties.  We've discussed a
16   good bit of this in the preconference meeting, but not all of
17   the agenda.  We weren't able to get through it all.  So I'll
18   get us to a point, and then I'm going to ask counsel to pick up
19   where we left off to address remaining items.
20              The first -- oh, and one other thing.  It just
21   occurred to me, I don't believe we post the agenda on our
22   website for the case management conferences.  And so, you all
23   who are here in the courtroom who may not be in Leadership and
24   are not counsel in an individual bellwether case -- maybe even
25   the counsel in the individual bellwether cases don't get the
```

1     agenda; I don't think they did this time until I asked that

2     they be provided the agenda.

3          The point of this is I'm going to ask that the agenda

4     be posted on the website so that you all, when you come here

5     for a case management conference or you appear remotely, you're

6     looking at what I'm looking at.  So we'll take care of that.

7          Well, the first item on the agenda, for those who

8     haven't seen the agenda, dealt with choice of law, that product

9     that the parties are working on, the chart, and identifying

10     choice of law issues for the Court.

11          I heard from Mr. Fields and Mr. Sacchet this morning.

12     They are hard at work putting that chart together.  The due

13     date for the chart is now September 11, which is a week before

14     the next -- I believe before the next CMC.  But anyway, it's

15     September 11th.

16          Let me check something.  Right.  Our next CMC is

17     September 18th, and I'll reiterate at the end of this

18     conference, so it's a week before that.

19          There was a good bit of discussion this morning about

20     depositions in discovery with regard to government personnel,

21     former and current government personnel.  This seems to be a

22     recurring theme.  And it's been a bit difficult and, I can

23     understand, frustrating for the parties because they don't have

24     control over these witnesses, and it's been difficult to get

25     these witnesses confirmed, even former, but certainly current.

1          And so, as to these witnesses, I asked the parties

2     some time ago to go ahead and agree on dates.  Because we have

3     a pretty tight discovery window in the case, as you all know,

4     and so I wanted them to go ahead and have dates agreed upon

5     between them for these witnesses -- unbeknownst to the

6     witnesses, but nonetheless, to have these placeholder dates;

7     and then to make effort to determine whether the witness is

8     former or current employee, which is significant; and then, to

9     the extent the person is a former employee, then to go ahead

10    and subpoena that individual, get that individual hopefully

11    confirmed for the date that had been set aside on the schedule

12    for that witness.

13          As to current employees of the government, it's been a

14    little bit more difficult.  You all may be aware that the

15    government declined to produce certain current employees, and

16    3M filed a Motion to Compel.  And one of the objections that

17    the government had in their response to the Motion to Compel

18    was that the Court lacked personal jurisdiction over the

19    government to compel their compliance because there was no

20    subpoena issued for those witnesses.

21          And I know why 3M did not -- it's mainly 3M but

22    Plaintiffs have witnesses, too -- did not issue subpoenas, and

23    that's because we were working in a very, what we thought, in a

24    very cooperative process with the government.  And so it was a

25    bit surprising to see the position taken by the government that

1    you could not compel them to produce these witnesses.

2           And so, my instructions to the parties have been

3    subpoena all of these witnesses.  And that has rendered the

4    Motion to Compel moot, in my opinion, for the time being.

5           Judge Jones recently ruled, I think as recently as

6    yesterday, the same to be true for a Motion to Compel involving

7    an employee of the CDC.

8           These subpoenas have been issued.  They are still

9    pending *Touhy* requests for these same individuals.  The

10   government has responded as to a couple of them and has

11   indicated that they will be filing Motions to Quash.

12          As it so happens, two of those depositions are set for

13   next week, so they presumably will be filing their Motion to

14   Quash very soon.  Don't know whether that will be in this Court

15   or in the court where the subpoena was issued.  That remains to

16   be seen and how that will be dealt with remains to be seen.

17          We talked a little bit about that in the conference

18   room this morning.  But hopefully you can tell by listening to

19   me that this has been complicated for the parties because they

20   have a deadline that I've given them, and again, it's a tight

21   deadline.  They have selected dates amongst themselves for

22   these depositions, and they can't confirm one way or the other

23   whether many of these people are going to appear for these

24   depositions.

25          And some of them are a great distance in terms of

1    travel.  There's one scheduled next week in Anchorage, Alaska,

2    and Sarasota, Florida.

3            There's not much we can do about these current

4    employees at this point until we see what the government does

5    in regards to the subpoena.  So we're just waiting to see.

6    I've asked the parties not to withdraw any subpoenas, in spite

7    of the government's request that they withdraw subpoenas.  So

8    those subpoenas are there and will remain in place and, again,

9    we will see.

10           For the former employees that I have asked the parties

11   to go ahead and proceed in a more traditional fashion without

12   coordinating with the government, we've given them courtesy

13   notice of these depositions.  I have asked them to try to

14   coordinate better in terms of notifying the other side when

15   contact with one of those witnesses is made and confirming

16   whether the witness is a former or current employee.  That's

17   not always easy to do absent talking to that witness.

18           But once that determination is made, that is going to

19   be placed on a chart that's going to be, I guess, kept in the

20   cloud somewhere and real-time updated by both sides so that we

21   don't have an issue that has come up with the deposition

22   scheduled for Monday of a former government employee -- I don't

23   know if it's an audiologist or a physician -- but a former

24   government employee that the Plaintiffs didn't learn about

25   until yesterday or day before --

1          **MS. HUTSON:**  Wednesday of this week, Your Honor.

2          **JUDGE RODGERS:**  -- Wednesday, through the court

3     reporter service, actually.  So I have asked that the parties

4     do a better job of making sure the other side is aware of the

5     contact that's being made with these former employees.

6          And actually, the Plaintiffs have requested, given the

7     late notice of the deposition of Dr. Lee for Monday, that that

8     be postponed, and I've agreed to that.  So that will need to be

9     rescheduled.

10         Anything that I'm overlooking with regards to these

11    discussions?

12         Mr. Hill, is there anything else in terms of getting

13    these depos hopefully scheduled and taken?

14         **MR. HILL:**  No, Your Honor.

15         **JUDGE RODGERS:**  Mr. Aylstock?

16         **MR. AYLSTOCK:**  No, Your Honor.  Thank you.

17         **JUDGE RODGERS:**  And absent a motion to quash and a

18    ruling on that motion, those dates on the subpoena are firm

19    dates, as we discussed.

20         Related -- and the Defendants know this.  But because

21    we are on the record, I will just reiterate.  The Defendants

22    have provided a chart to the Court of current government

23    employees who have been subpoenaed, and the government is

24    either not responding or, I believe, with regard to two has

25    said they won't produce these witnesses, mainly I think VA

1    witnesses.  And I've asked the Defendants to provide an

2    additional column to that chart that identifies whether a *Touhy*

3    request was submitted for that witness and when that was

4    submitted.

5         Also, another issue -- and I believe everybody heard

6    this, but again, we're on the record now.  The subpoenas that

7    have been issued for the former witnesses and, actually, for

8    the current as well, were -- and maybe it's just the current.

9         Ms. Branscome, you can correct me.  But certainly the

10   subpoenas for the current government employees, they were

11   subpoenaed in the alternative to appear remotely.

12        And so, what I've told the parties this morning is

13   that, for instance, we have one of those depositions set for

14   the 2nd and then the 4th next week.  And I've told the parties

15   that, if we don't hear anything from the government, Judge

16   Herndon is going to assist and provide communication to the

17   government on Tuesday indicating that the attorneys are going

18   to appear remotely.  The date is still firm, the subpoena is

19   still standing, but they will appear remotely since 3M did

20   issue those subpoenas in the alternative.  So you're free to

21   appear remotely.  You don't need to travel to Anchorage on

22   Tuesday, unless, of course, the witness is going to appear in

23   person and you are told that, then you should be there.

24        Also, Judge Jones raised an excellent point, and that

25   is the parties should keep very clear record of any

1    communications that you have with regards to these subpoenaed

2    witnesses.  It may be that we see a number of Motions to Quash

3    at the last minute.

4         Agenda Item No. 3 relates to the document stipulations

5    in the case-specific bellwether cases.  And the parties have

6    been meeting and conferring and a lot of work has gone into

7    this to try to reach stipulations on authenticity, business

8    records exception to the hearsay rule.  They're not quite there

9    yet, but again, a lot of good work and hard work has gone into

10   this.

11        My statements to them this morning were that it's not

12   my place to force anybody to stipulate in any case to anything,

13   although certainly it is more efficient when we get to trial to

14   have these stipulations, and it's always my preference, if it

15   can be reached.

16        They're going to attempt to continue to work on this.

17   The Defendants are hoping that, to the extent a deposition is

18   required of a custodial witness to lay a predicate or a

19   foundation for the business records exception to deal with

20   authenticity or business records exception, that they can then

21   also address other foundational issues or hearsay issues that

22   the Plaintiffs are objecting to.

23        I don't know what those objections may be at this

24   point.  And so, what I have asked them to do is to continue to

25   try to work this out.  If they're not able to, then we'll

1    probably need another process to look at what the specific

2    objections are that the Plaintiffs have and determine whether

3    or not a deposition would actually be helpful to the Court

4    resolving that issue at the time -- or prior to trial.

5            So this is a little bit premature, but the parties are

6    working on it.

7            Anything else, Mr. Aylstock, and then Ms. Branscome

8    after?

9            **MR. AYLSTOCK:**  No.  I think we are close, Your Honor.

10   And from the Plaintiffs' perspective, we're doing this with the

11   understanding that whatever we agree to here there will be a

12   reciprocal one as it relates to 3M's business records.

13           **JUDGE RODGERS:**  Well, I would assume that, yes.

14           Ms. Branscome, did you hear Mr. Aylstock?

15           *[No response.]*

16           I think you're muted.

17           **MS. BRANSCOME:**  Yes, I did hear that.

18           **MR. NOMELLINI:**  Your Honor -- *(inaudible)* -- Ms.

19   Branscome so far.  3M business records, we have talked about

20   doing the same process.  And in that case, in some cases we may

21   be able to agree that they're business records and in some we

22   may be able to agree that they're admissions, and so we can

23   work through that same process with Plaintiff.

24           **JUDGE RODGERS:**  All right.  A work in progress.

25           Speaking of depositions, you all probably saw Pretrial

1   Order No. 52, which is a deposition protocol for the bellwether

2   cases.  And that is an excellent -- and I can't take credit for

3   it.  It's an order, but adopted what hard work went into it

4   from the parties' standpoint, and I believe that was

5   Mr. Pennock and -- was it Mr. Fields?

6           **MR. AYLSTOCK:**  Mr. Pennock and Mr. Fields took the

7   lead and did a great job.

8           **JUDGE RODGERS:**  Thank you both.  I told the attorneys

9   this morning that I think it's a model to be used certainly for

10  other trial groups in this MDL but in other cases.  But I won't

11  say that for sure yet.  We need to test it.  Let's hope it

12  works.  But it looks good on paper.

13          I believe, counsel, this really brings us up to the

14  point at which we broke, unless there's something I've missed

15  from my notes.

16          Mr. Aylstock first, is there anything that I need to

17  share with everyone here that I haven't already?

18          **MR. AYLSTOCK:**  I don't think so, Your Honor.

19  Obviously, some of the subpoenas to government play into Topic

20  No. 4 as it relates to bellwether issues, but that's where we

21  broke.  So we're happy to address any of the remaining issues

22  on the agenda in turn.

23          **JUDGE RODGERS:**  Well, we didn't discuss 4b at all.

24          **MR. AYLSTOCK:**  Yes.

25          **JUDGE RODGERS:**  But if you want to address that in

1    just a minute, that's fine.

2            Mr. Hill, anything else from your standpoint?

3            **MR. HILL:**  No, Your Honor, other than what you

4    mentioned back in the preconference that we would handle the

5    others here.

6            **JUDGE RODGERS:**  Right.  So, Mr. Aylstock, you or who

7    wants to pick up with anything I've overlooked, if you feel it

8    needs to be addressed, from Item No. 4, and then moving on to

9    what we did not address.  And it doesn't matter to me who does

10   it.

11           **MR. AYLSTOCK:**  Mr. Barr is prepared to address 4b,

12   Your Honor.

13           **JUDGE RODGERS:**  All right, Mr. Barr.  That would be

14   the disciplinary records of the Trial Group A Plaintiffs;

15   that's the way it's referenced in the agenda.

16           **MR. BARR:**  Good morning, Your Honor.  Yeah, this has

17   to do with the Keefer case.  And it's not really a live issue,

18   I would say, at this moment for you to decide, but we just want

19   to keep you informed as to what's going on.

20           We have a concern.  This is all part of the *Touhy*

21   process.  Mr. Keefer was subject to an Article 15 hearing and

22   investigation.  As you know, that's a nonjudicial proceeding

23   for minor issues, as it's termed under the regulations.

24           The Defendants have, after his deposition, now gone

25   back to Maj. Kim and asked her to supplement what she said was

1    already complete, and they have asked for a production of the

2    Article 15 investigation, I guess transcripts, if there are any

3    records having to do with that proceeding.

4           We have a concern that, obviously, we're getting into

5    a fishing expedition here.  That's, more likely than not, very

6    irrelevant character evidence that I'm not sure how anybody

7    would ever get it into a trial.  But, under the Army

8    regulations, that was supposed to be destroyed within two years

9    of either the imposition of punishment or the separation from

10   the military, which has happened.

11          What we don't know at this point is whether or not

12   Maj. Kim has the information; we don't know if it was

13   destroyed.  But we are concerned that, if the Army regulations

14   weren't followed and the information and documents weren't

15   destroyed, that now we're going to produce them as part of

16   this.

17          But, from our position, I just think we need to see

18   what the response from the DoD is before we know how to go

19   forward.

20          **JUDGE RODGERS:**  All right.  I recall a discussion with

21   Maj. Kim specifically about Article -- and, actually, I think

22   Maj. Evans might have still been involved at the time of these

23   discussions.  But, in any event, I understood they were not

24   going to be producing these records; that was their position.

25          So we just need to see how she responds.  If 3M has

1    submitted a specific request for this, we need to wait and just

2    see what the response is.  If they produce the information,

3    which would surprise me given their position in the initial

4    *Touhy* requests, broadly speaking, for the personnel records,

5    then we'll deal with it at that time.

6              **MR. BARR:**  Thank you, Your Honor.

7              **JUDGE RODGERS:**  Thank you.

8              Anybody for the Defense want to be heard on this issue

9    with Mr. Keefer?

10             **MR. NOMELLINI:**  I agree with Your Honor that we need

11   to wait for Maj. Kim's response.

12             **JUDGE RODGERS:**  All right.  Thank you.

13             Next item up, Mr. Aylstock?

14             **MR. AYLSTOCK:**  Yes, Your Honor.  4c is the Status of

15   Government Identification of Hearing Conservation Program

16   Managers and Industrial Hygiene Program Managers.

17             We did touch on this briefly in the context of the

18   Rowe case in chambers.  The government has produced that

19   list -- I think it was last Friday -- and it was shared with

20   the Plaintiffs.  So I don't know that that's a live issue

21   anymore, but Mr. Nomellini may have something to add.

22             **JUDGE RODGERS:**  I believe, Mr. Nomellini, you

23   indicated in the preconference meeting that it was no longer a

24   live issue, but I'll ask you now if you could confirm that or

25   correct me.

1          **MR. NOMELLINI:**  Your Honor, we did receive the list

2     from Maj. Kim.  We may have some follow-up questions for her on

3     that with respect to some of the names.  But other than those

4     follow-ups, we have received the list, so that was a good

5     development.

6          **JUDGE RODGERS:**  Okay.  Very good.  Thank you.

7          Mr. Aylstock, have we covered d or is there still

8     something outstanding on d?

9          **MS. HUTSON:**  Your Honor, I do believe that you gave a

10    recap earlier about the status of the medical personnel that

11    have been subpoenaed.  And as you mentioned, we are going to

12    keep a live calendar that is pretty expansive in terms of the

13    date that the deponent was requested to be deposed as well as

14    meet-and-confers regarding what that date would be, subpoenas,

15    and a tracking of communications with various doctors, and an

16    immediate live response to when a witness or a medical

17    professional from the government agrees to a certain date.

18          So we're in the process of creating that broader

19    calendar that will be live and accessible to the Defendants,

20    the Plaintiffs, the Court, and also the government.

21          **JUDGE RODGERS:**  Editable by who?

22          **MS. HUTSON:**  That's a great question.  That's one

23    reason why initially when we talked about this -- I believe Mr.

24    Aylstock brought this up in chambers.  I would like to hold the

25    calendar, so to speak, so that there is only one entity that

 1   can edit it.

 2           Another option would be to have one person from the

 3   Defense and one person from the Plaintiffs' side have access

 4   and edit credits.  But that's actually been discussed.  I think

 5   Ms. Branscome and I brought that up on a meet-and-confer.

 6   We're still talking about the best and most efficient way to do

 7   it, and so we will continue to confer on that.  But I agree

 8   with you there does not need to be any more than two, at most,

 9   that are able to edit that calendar.

10           **JUDGE RODGERS:**  Very good.  All right.  Thank you.

11           **MR. AYLSTOCK:**  4e and f, I believe, are Ms. Hoekstra's

12   topics, Your Honor.

13           **MS. HOEKSTRA:**  I believe Mr. Sefton for Defendants

14   sent you an updated chart in terms of the authorizations and

15   requests.  There's a slight issue with one of the Group C

16   plaintiffs, so he modified it again and sent it again last

17   night.

18           The current status for the VA and the DoD productions

19   is:  We are complete for the initial 22; we've received records

20   for two of the three of the new bellwethers for Groups C and D;

21   we have not received complete records from the DoD or the VA

22   for any of those three new individuals.

23           The VA and the DoD have both confirmed that they are

24   aware of the addition and are working through the request.  We

25   just have not received confirmation that we've gotten complete

1    production yet for those.  And we are, hopefully this week,

2    going to set up an additional follow-up with Maj. Kim and/or

3    Ms. Snead to see what timeline the VA and DoD are working on

4    for those three individuals since discovery responses are due

5    in the near future for those, and it would be nice to have the

6    documents before we finish the discovery responses.

7            **JUDGE RODGERS:**  I guess that raises a question in my

8    mind just sitting here -- I hadn't been so focused on the

9    depositions -- whether -- we haven't been doing this, but

10   whether you all need to issue subpoenas for these records.

11           **MS. HOEKSTRA:**  For the nonVA and DoD records?

12           **JUDGE RODGERS:**  No.  I'm talking about for the

13   government.

14           **MS. HOEKSTRA:**  Understood.

15           **JUDGE RODGERS:**  Well, again, my question is -- or

16   stems from the government's position that the Court has no

17   authority to compel it to produce a witness, I presume also

18   produce a record, absent a subpoena.

19           **MS. HOEKSTRA:**  I will say --

20           **JUDGE RODGERS:**  We haven't had that problem yet but --

21           **MS. HOEKSTRA:**  And I will say, in relation to the one

22   percent, we are still receiving records on almost a daily

23   basis.

24           **JUDGE RODGERS:**  Okay.

25           **MS. HOEKSTRA:**  So there has not been a stop in the

1    production.  Although, for a separate discussion in terms of

2    the one percent, we've only received DoD records for 14 of the

3    1500 people, so we need to have an additional follow-up on

4    that.  And we're happy to speak with Judge Herndon further to

5    see what we can do to facilitate that.

6         **JUDGE RODGERS:**  Okay.  Well, for now we will let the

7    process proceed according to the protocol that's been in place,

8    and someone will let me know if we think we're at a standstill.

9    It sounds like not.

10        **MS. HOEKSTRA:**  I'm not sure if anyone from Defendants

11   has anything to add to that overview.  I did want to touch on

12   item f briefly as well.

13        In June --

14        *(Interruption from video feedback.)*

15        **JUDGE RODGERS:**  If you're on the videoconference, may

16   I please ask you to mute your audio unless you're speaking.

17   We're getting some feedback.

18        **MS. HOEKSTRA:**  In June with Mr. Camarillorazo's

19   production of his DoD DOEHRS data, we realized that there was a

20   problem with the production.  It had -- the DOEHRS database is

21   kept digitally.  The PDFs were not flat when they were

22   produced.  Multiple PDFs of the audiograms were merged

23   together, and we received nine copies of the same audiogram.

24        We discussed and resolved the issue with the DoD at

25   the time.  The DoD then started producing the DOEHRS audiograms

1    for all the bellwether plaintiffs as individual one-page PDFs.

2    Several of the bellwether plaintiffs, we discovered when we

3    were working on the document stipulation and reviewing the

4    production, merged the PDFs together to Bates stamp and produce

5    them to Defendants and, in doing so, overwrote the data on the

6    audiograms.

7         We have fixed this.  We have had several -- Mr.

8    Gunderson and myself have had several discussions about this

9    and, as part of this process, he and I are going to work

10   together to do a full audit of the VA and DoD productions,

11   because they came to Plaintiffs first and then were produced to

12   Defendants, to ensure that there were no other technical

13   glitches or that no other production items had been missed from

14   the DoD and the VA productions.

15        Due to the nature of the government productions, as

16   Your Honor knows, they go to BrownGreer, are produced to

17   Plaintiffs' counsel, we have 14 days to review and produce them

18   to Defendants' counsel.  That all occurred.  But this issue

19   with the audiograms has led to some questions, so we want to

20   make sure once and for all that we are on the exact same page

21   as to what has been produced.

22        **JUDGE RODGERS:**  For all plaintiffs?

23        **MS. HOEKSTRA:**  All 24 bellwether plaintiffs.

24        **JUDGE RODGERS:**  There must be audiograms for some of

25   the one percent.

1          **MS. HOEKSTRA:**  There are only 14 individuals who

2     received DoD productions so far.  We will audit those.  But the

3     audiograms come from the DoD, so it is less of an issue for the

4     one percent.

5          As part of this issue, we've also sent a blast-out to

6     all bellwether counsel and are planning on sending a similar

7     blast-out to all counsel, once we start receiving DoD records,

8     telling them what the technical issue is with the DOEHRS data

9     and how to handle it properly so that it doesn't do this in the

10    future.

11         **JUDGE RODGERS:**  Right.  Because the government -- Maj.

12    Kim has corrected the issue on her end.  So, as you said, it's

13    when it's being converted or produced, I guess?

14         **MS. HOEKSTRA:**  Correct.  The DoD resolved the issue

15    by, instead of merging it on their end, producing everything as

16    individual files.  Those files are not flat PDFs; they're still

17    active.  So when people on our end start interacting with them,

18    the data can be modified.  And that is what we are going to

19    make sure everyone is aware of so it doesn't happen any

20    further.

21         **JUDGE RODGERS:**  Okay.  You are going to be busy, you

22    and Mr. Gunderson.

23         Is Mr. Gunderson on the either the phone or the Video

24    Bridge?

25         **MR. NOMELLINI:**  No, he's not, Your Honor.  He had a

1    family medical issue.

2            **JUDGE RODGERS:**  Okay.

3            **MR. NOMELLINI:**  So my understanding with respect to

4    the audiograms is they are produced by the DoD and then,

5    because of the technical issue that Jennifer Hoekstra is

6    describing, they did not all then get produced to us.  Some of

7    them we did not have for a deposition.  We are working through

8    it with Jennifer Hoekstra, who has been cooperative throughout

9    the process, and she and Karl have been working hard on that

10   issue.

11           With respect to e, which I think Jennifer also

12   covered, the status of document productions, I understand that

13   motions to compel have been filed with respect to Baker and

14   Hacker.

15           With respect to Rowe, there is an issue with respect

16   to documents, text messages, and Facebook messages that he

17   indicated were produced but that we later learned may have been

18   deleted.  We had a meet-and-confer with Mr. Rowe's counsel

19   yesterday regarding the forensic examination that we understand

20   that they conducted of Mr. Rowe's phone.  And if issues arise

21   that need to be addressed by this Court or Judge Jones, we will

22   let Your Honor know promptly.

23           **JUDGE RODGERS:**  All right.  So, Mr. Rowe is Mr.

24   Martinez and Mr. Aylstock?

25           **MR. AYLSTOCK:**  Yes, Your Honor.

1          **JUDGE RODGERS:**  Do either of you wish to be heard in

2   regards to the issue that Mr. Nomellini just raised with the

3   forensic examination of an email account --

4          **MS. HOEKSTRA:**  So --

5          **JUDGE RODGERS:**  -- or Ms. Hoekstra?

6          **MS. HOEKSTRA:**  Sorry.

7          **JUDGE RODGERS:**  Again, you don't represent Mr. Rowe?

8          **MS. HOEKSTRA:**  Understood.

9          **JUDGE RODGERS:**  Okay.  But Mr. Rowe's lawyer is here.

10         **MR. AYLSTOCK:**  Yes, Your Honor.  And as it relates to

11  the forensic issue, Ms. Hoekstra is much more expert on the

12  ESI.

13         **JUDGE RODGERS:**  Well, if you defer to her, that's

14  fine, but I need to hear you say that.

15         **MR. AYLSTOCK:**  Yes, Your Honor.

16         **JUDGE RODGERS:**  Go ahead, Ms. Hoekstra.

17         **MS. HOEKSTRA:**  No problem.  And first of all, the

18  Baker ESI is also a forensic analysis issue which has been --

19  their motion practice has been issued, and Mr. Baker's counsel,

20  in coordination with leadership, will be responding

21  individually in that case.

22         **JUDGE RODGERS:**  Is that Mr. Fox?

23         **MS. HOEKSTRA:**  Yes.  And I think Sean Tracy is on

24  today, if they need to address that issue.

25         **JUDGE RODGERS:**  Okay.

1          **MS. HOEKSTRA:**   And the same issue with Mr. Hacker's

2     documents, which are not an ESI-specific issue; it relates to

3     the census, I believe.  And his counsel is on was well.  Those

4     motions were filed Tuesday of this week.

5               In relation to Mr. Rowe's meet-and-confer, counsel did

6     discuss with him yesterday -- as part of the discussion with

7     Mr. Nomellini, we asked him if he could send us in writing his

8     very specific questions.  They were technical in nature, and we

9     wanted to make sure that the ESI vendor who was involved in our

10    forensic collection could assist with the response.

11              We received those questions while we've been sitting

12    here in court this morning, and we will be getting a response

13    back to him, as we indicated, no later than early next week.

14    And that discussion is ongoing.

15         **JUDGE RODGERS:**   All right, very good.

16              Do any of the individual bellwether counsel who are

17    present in either of these cases wish to respond or be heard?

18              *[No response.]*

19              All right.  Well, very good, then.  Thank you, Ms.

20    Hoekstra, for that update.

21              Defendants, do you have anything you'd like to or want

22    to add?

23         **MS. BRANSCOME:**   No, Your Honor.  I think, for both

24    Baker and Hacker, the motions are on file.  And it sounds like

25    Rowe is not yet ripe for motion practice, so I think it's just

1    waiting on the Plaintiffs' opposition in Baker and Hacker to

2    get those in front of Judge Jones and resolved.

3            **JUDGE RODGERS:**  Right.  The motions have been referred

4    to Judge Jones; it's just they're not ripe yet.

5            **MS. BRANSCOME:**  Exactly.

6            **JUDGE RODGERS:**  All right.

7            **MR. AYLSTOCK:**  Understood, Your Honor.

8            Before we move on to the general discovery update, one

9    of the other things we discussed in chambers was simply the

10   fact that, if there are additional witnesses that might be in

11   support of individual claims or defenses, that the Defendants

12   have an obligation under Rule 26 to supplement their initial

13   disclosures or provide those.  So we wanted to highlight that

14   need for the Plaintiffs so that we don't have witnesses showing

15   up at trial that we weren't aware of.

16           **JUDGE RODGERS:**  Well, we had that issue come up -- I'm

17   sorry, I can't recall the witness's name; I believe the last

18   name maybe started with an L.

19           **MR. AYLSTOCK:**  Yeah, Kyle Lindholm *[phonetic]*.

20           **JUDGE RODGERS:**  Lindholm.  And Mr. Nomellini said that

21   there wasn't a subpoena that's actually been issued for that

22   individual.

23           We didn't really finish the discussion about the

24   disclosure of the Rule 26 witnesses.  I did make the statement

25   to everyone that there would be no trial surprises, and that's

1   a given.

2           So I'm presuming that the Defendants are going to make

3   the Plaintiffs aware of the witnesses.  Even if those are

4   witnesses that you decide not to depose, these are your own

5   witnesses; they need to be, obviously, identified and the

6   Plaintiffs notified of who they are.

7           I thought that you all had reciprocal Rule 26

8   obligations in the bellwether cases, but it sounds like that

9   may not be the case.

10          Ms. Branscome, are you undoing your mute button?

11          **MS. BRANSCOME:**  You caught me, Your Honor.  Yes.  I'm

12   happy to address this.

13          So we -- in terms of the reciprocal Rule 26

14   disclosures, as Your Honor may recall, Defendants actually did

15   a Rule 26 disclosure in the beginning and the Plaintiffs did

16   not.  And so they have done their disclosures -- *(inaudible)* --

17   bellwether cases.

18          We can meet and confer with Plaintiffs to see if we

19   need to provide additional information.  We would also suggest

20   that -- you know, witnesses are clearly being identified in the

21   documents; depositions are ongoing.  But, to the extent that we

22   know of a witness that we intend to support our defense, we can

23   meet and confer with Plaintiffs.

24          We also do not want these to be trials by surprise,

25   which was the issue we discussed the last time about

1    understanding who is a potential trial witness on both sides.

2          So we agree.  This is the first we're hearing of this,

3    and we're happy to meet and confer on it.

4          **JUDGE RODGERS:**  That sounds good, you meet and confer.

5    And just everyone understand that there will not be a witness

6    appearing at trial that the other side did not have notice of

7    and an opportunity to depose.

8          **MR. AYLSTOCK:**  Thank you, Your Honor.

9          **MS. BRANSCOME:**  Understood.

10         **JUDGE RODGERS:**  Next?

11         **MR. AYLSTOCK:**  So the general discovery update Mr.

12   Overholtz was going to handle.

13         **JUDGE RODGERS:**  Okay.  Mr. Overholtz?

14         **MR. OVERHOLTZ:**  Yes, Your Honor.  It's probably good

15   to start with the 30(b)(6).  But I will tell Your Honor, for

16   the last seven to ten days, as we head towards Tuesday,

17   September 1st discovery deadline, there's been a flurry of

18   activity and a lot of work put in by both sides, really, to get

19   there.

20         On the 30(b)(6) issue, I think Your Honor is aware

21   last Friday we had a hearing on the Defendants' Motion to

22   Compel on Plaintiffs' 30(b)(6) notice across various topics.

23   As part of that process, Plaintiffs waived some of the topics

24   they had requested, the Defendants agreed to produce a witness

25   on certain topics, and then Judge Jones heard the others and

 1    denied the Defendants' motion as to a set of about eight

 2    different topics.

 3           The parties informed the Court, I think on Monday or

 4    maybe Wednesday of this week, that the parties had agreed, so

 5    that the Defendants can properly prepare a witness for that

 6    30(b)(6) deposition, that that deposition will occur on or

 7    before September 25th.

 8           And we've conferred with Mr. Bhimani regarding that

 9    process, and we're going to continue to find the right date and

10    preparation of which witnesses they're going to be putting up

11    for those various topics.  And we may need them to hold

12    back-to-back dates for two days because it is a long series of

13    topics there.  So that's the issue with the 30(b)(6) witness.

14           It does sort of weave into the corporate discovery and

15    where we are.  And so Your Honor knows, we completed the

16    deposition of Mr. Todor earlier this week that I took.

17           We also took -- the Defendants and the Plaintiffs took

18    the deposition of Dr. Dick Price, who was a former government

19    employee that originally had been part of a *Touhy* request.  We

20    took his deposition on Wednesday, Mr. Monsour and Mr. Fields.

21           **JUDGE RODGERS:**  Was the government present for that

22    remotely?

23           **MR. OVERHOLTZ:**  They were; Maj. Kim was on the line

24    for the deposition.

25           The other depositions that are scheduled coming up

```
1    include Mr. Fallon.  And as Your Honor is aware, there have
2    been some document issues in discovery of those documents.  I
3    understand that they are now ready to go forward on September
4    3rd for Mr. Fallon's deposition.
5              Mr. Mohammed Saleem's deposition is scheduled for
6    Monday at 6:00 a.m. Central Time because Mr. Saleem is in
7    London.  So they'll be doing that deposition remotely, and
8    Mr. Pirtle will be taking that deposition on Monday, I believe.
9              And we -- Annette Shaver Childress is the other
10   deposition that we had scheduled for this Wednesday, the 26th.
11   When the 30(b)(6) notice agreement through the meet-and-confer
12   was made, they designated Ms. Childress as the 30(b)(6) witness
13   on a series of topics.
14             The parties met and conferred -- we met with
15   Mr. Bhimani and agreed it made sense that that deposition
16   should probably happen on the same day because her role in the
17   company overlaps a good bit with the topics which deal with
18   quality and the outsourced assembly of the earplug.
19             JUDGE RODGERS:  Her deposition should take place on
20   the same day as what?
21             MR. OVERHOLTZ:  As her individual deposition as a
22   corporate witness.
23             JUDGE RODGERS:  Oh, I see.  And what are those dates?
24             MR. OVERHOLTZ:  Well, Mr. Bhimani made her available
25   for August 31st, which is Monday.  Mr. Aylstock and I talked to
```

1   Mr. Bhimani; we agreed to hold that date.  But we needed to

2   confer with Ms. Six and Mr. Gunderson about the status of

3   supplemental TAR as well as a backup tape issue that's arisen

4   that I think Ms. Six is going to address and bring Your Honor

5   up to speed.

6           A lot of work has been done on that in the last

7   several days regarding these new backup tapes that were found

8   and new documents that they're going through and deduping and

9   producing.  And I'll let Ms. Six carry the whole weight on

10  that.

11          **JUDGE RODGERS:**  Do those relate to her 30(b)(6)

12  status?

13          **MR. OVERHOLTZ:**  We don't necessarily know, Your Honor,

14  but we believe that the witnesses that have been identified

15  could have documents that are relevant to the 30(b)(6) topics.

16  And based on that, as well as the status of the supplemental

17  TAR, which I think Mr. Buchanan and Ms. Six were going to

18  address, we were able to reach an agreement to conclude the

19  supplemental TAR process last night, which is good news.  But

20  there's going to be some more productions from that in the next

21  few days.

22          We spoke to Mr. Bhimani last night about moving

23  Ms. Childress's deposition to that same on or before September

24  25th date, and we'd be willing to go ahead and take the

25  individual deposition at the same time as her 30(b)(6), if that

1    is okay with Your Honor.

2         **JUDGE RODGERS:**   Okay.   Anything else before I hear

3    from Mr. Bhimani?

4         **MR. OVERHOLTZ:**   No, Your Honor.   I just think you'll

5    definitely want to hear the story regarding the supplemental

6    TAR and the backup tapes from Ms. Six.

7         **JUDGE RODGERS:**   Oh, I do want to hear from Mr.

8    Buchanan and Ms. Six as well.

9         And I guess there will be overlap here, but,

10   Mr. Bhimani, is there anything you want to add to the

11   recitation that Mr. Overholtz just provided?

12        **MR. BHIMANI:**   No, Your Honor.   I agree with Mr.

13   Overholtz.   We have no opposition to them having leave, to the

14   extent Your Honor permits it, to take the deposition of

15   Ms. Childress.   We do think it makes sense to have her

16   individual deposition and her 30(b)(6) deposition happen at the

17   same time.

18        As Mr. Overholtz noted, we did offer her before the

19   September 1st deadline, but again, we have no opposition to it

20   being after.

21        **JUDGE RODGERS:**   The only caveat would be if there's

22   something about her individual deposition -- let's just for a

23   minute set aside -- let's say the backup tapes apply to

24   30(b)(6) and not the individual deposition.   If you thought her

25   individual deposition might lead to other discovery, you're

1    cutting it pretty close if you're moving her towards the end of

2    September.

3          **MR. OVERHOLTZ:**  We've addressed that, Your Honor, and

4    certainly thought about that issue and considered it.  And we

5    think, because of her role in the company as a quality person

6    the whole time and it overlapping with the 30(b)(6) topics, we

7    think that we'll be okay there because we're going to get the

8    30(b)(6) on those issues.

9          **JUDGE RODGERS:**  Can you all on the video and

10    telephone, can you hear Mr. Overholtz?

11          **MS. SIX:**  Yes, Your Honor.

12          **JUDGE RODGERS:**  Okay, very good.

13          So, Ms. Six and/or Mr. Buchanan, let me -- I'll ask

14    Mr. Buchanan first if he has anything he wants to add to what

15    Mr. Overholtz said about this issue with the backup tapes and

16    the completion of the TAR process, and then, Ms. Six, you can

17    respond certainly.

18          Mr. Buchanan?

19          *[No response.]*

20          Mr. Buchanan, we are not able to hear you, and it may

21    be on our end.  I see you've picked up your telephone line.

22          They still can't speak through -- they have to be on

23    their phone to speak?

24          **MADAM CLERK SIMMS:**  No.

25          **JUDGE RODGERS:**  Mr. Buchanan, I don't think you have

1      to be on your phone.  Is your audio unmuted?

2              We're not hearing him.  He's trying.  I can see that

3      he's trying in earnest.

4              **MR. OVERHOLTZ:**  Your Honor, while he's getting the

5      technical issues worked out, Your Honor, we had the

6      supplemental TAR protocol that was entered.  The parties

7      reviewed a lot of documents.  That process was implemented by

8      the Defendants.  There have been several productions made that

9      Ms. Six can bring you up to speed on, but this last process

10     involved the review of the final set of documents that the

11     parties reviewed from the supplemental TAR.

12             Based on that review, we met and conferred for a good

13     while yesterday regarding the continued need for continued

14     review of the supplemental TAR documents.  There were some

15     disagreements regarding some.  But we were able to work out an

16     arrangement whereby the Defendants are going to review an

17     additional 3500 documents as part of the TAR process and then

18     produce, obviously, what's relevant and responsive from that,

19     and that will conclude the supplemental TAR.

20             **JUDGE RODGERS:**  All right.  I'm sure Mr. Buchanan

21     would like to be heard, and I am terribly sorry that we're not

22     able to hear him.

23             Ms. Six, while we're trying to work on Mr. Buchanan --

24     and I see he has some assistance in his office also -- Ms. Six,

25     could I ask you to respond?

1     **MS. SIX:**  Sure.  Can you all hear me in the courtroom,

2   Your Honor?

3     **JUDGE RODGERS:**  Yes, ma'am.

4     **MS. SIX:**  Okay, great.  First of all, I would just

5   like to say thank you to Mr. Buchanan and Mr. Overholtz for

6   what were really productive conversations to close out the TAR

7   process.

8         I think the supplemental TAR process wound up being

9   very important, Your Honor.  We wound up making productions --

10   finding additional documents that needed to be produced, and

11   they have been produced.  So I think it was a very

12   collaborative, successful project, and I think it was a good

13   idea that we did it.

14     **JUDGE RODGERS:**  Okay.  Thank you.  Do you agree with

15   Mr. Overholtz's recitation of where you're going from here in

16   terms of your review of the additional documents?

17     **MS. SIX:**  I do, Your Honor.

18     **JUDGE RODGERS:**  I'm sorry, I think it's 3500

19   documents?

20     **MS. SIX:**  That's correct.

21     **UNIDENTIFIED PHONE ATTENDEE:**  3500 documents?!

22     *[Laughter.]*

23     **JUDGE RODGERS:**  My thought exactly.

24         So, all those documents, you all are going to do a

25   review, and then we're all going to hope that that's going to

1    bring the process to a conclusion.

2            And I would like to ask you all, when you get to that

3    point, that happy day, that you all file something jointly on

4    the record that both sides agree that the TAR process is

5    complete.

6            **MR. OVERHOLTZ:**  Yes, Your Honor.

7            **MS. SIX:**  Yes, Your Honor, I think we both agree that

8    that will be something that we'll be happy to do.

9            **JUDGE RODGERS:**  Okay.  Well, thank you very much.

10           **MR. BUCHANAN:**  Your Honor --

11           **JUDGE RODGERS:**  Oh, there is Mr. Buchanan.

12           **MR. BUCHANAN:**  Yes, Your Honor.  I think it was 35,000

13   documents that's in the supplemental backup tape review and

14   3500 documents -- *(inaudible)* --

15           **JUDGE RODGERS:**  I'm sorry, Mr. Buchanan, you sound a

16   little bit like you're in a vacuum.

17           **MR. BUCHANAN:**  In a coffee can?

18           **JUDGE RODGERS:**  Yeah.  So is it 35,000 or 3500

19   documents?

20           **MR. BUCHANAN:**  There are 3500 documents in the

21   supplemental TAR review and 35,000 documents being reviewed

22   from the backup tapes.

23           **MR. OVERHOLTZ:**  That's the backup tape issue, Your

24   Honor, that Ms. Six is going to address next.

25           **JUDGE RODGERS:**  Oh, okay.  We were talking about the

1    supplemental TAR review.  Now we'll turn to the backup tapes.

2          Mr. Buchanan, you can start, and then I'll hear from

3    Ms. Six about that, since Mr. Gunderson --

4          **MR. BUCHANAN:**  I apologize for the connection issue.

5          A few weeks ago, Defense counsel advised us that they

6    found between 170 and 200 additional backup tapes.  They have

7    been in the process of restoring, deduplicating, and assessing

8    the extent to which they contain information relevant to this

9    case and the witnesses in these cases.

10         They have identified a number of custodians who had

11   files on those tapes.  I think, after review and assessment,

12   it's 12 to 14, maybe a few more at this point, additional

13   custodians.

14         After deduplication, there are 35,000 unique documents

15   on those tapes that are being fed into the supplemental TAR

16   process for review.

17         So, I understand from Ms. Six -- and we have worked

18   cooperatively to get this information, and I do appreciate,

19   obviously, the exchange of information.  But that's now going

20   into the supplemental TAR -- or into the TAR process for review

21   for ultimate production to the Plaintiffs.

22         So that's certainly fed into the considerations that

23   Mr. Overholtz expressed with regard to pushing the 30(b)(6) out

24   a few weeks.

25         **JUDGE RODGERS:**  All right.  Thank you for that.

1            Ms. Six, do you have anything to add?

2            **MS. SIX:**  No.  I will just say, Your Honor, I think

3    we're up to 16 custodians, and the 35,000 unique documents are

4    3M emails that date from 1999 to mid 2008.  So we have every

5    reason to believe right now that there will be very little that

6    is responsive and that that review will be able to be completed

7    by September 1st and all productions from that made by

8    September 1st, so I'm cautiously optimistic about that.

9            But we have been disclosing this information in real

10   time as we get it to Plaintiffs, and they have been good enough

11   to make themselves available daily to get these updates and as

12   we review documents on relevant things that will be produced.

13           **JUDGE RODGERS:**  Very good.  And you said by

14   September --

15           **MR. OVERHOLTZ:**  1st.

16           **JUDGE RODGERS:**  -- 1st?

17           **MS. SIX:**  That is my hope.  And, you know, it may be

18   an extra day or two, if we need to.  But we're going to do

19   everything we can to make the deadline.  It's very important to

20   us that we review all of these to make sure that there is

21   nothing that was missed.

22           **JUDGE RODGERS:**  All right.  Thank you very much.

23           Mr. Overholtz and Mr. Bhimani, the 30(b)(6)

24   depositions that you have scheduled now, there's Ms. Childress.

25   Who is the other?

1          **MR. OVERHOLTZ:**  Ms. Childress will be covering topics

2     14 and 16 through 19, which are all related to the outsourced

3     assembly and quality issues.  The other topics, they haven't

4     identified the witnesses yet.  And I believe that's the reason

5     why they wanted to identify the right witnesses --

6          **JUDGE RODGERS:**  Oh, I see.

7          **MR. OVERHOLTZ:**  -- and prepare those witnesses and get

8     those depositions done on or before September 25th.

9          **JUDGE RODGERS:**  Do you have a date for Ms. Childress?

10          **MR. OVERHOLTZ:**  Last night Mr. Bhimani indicated they

11     were going to check her schedule to best match with the other

12     30(b)(6) deponents.  And so we haven't heard back yet, but we

13     understand Mr. Bhimani is going to provide that information to

14     us very soon.

15          **JUDGE RODGERS:**  All right.  And then, Mr. Fallon and

16     the Sabien *[sic]* deposition, those are both going forward on

17     the 3rd?

18          **MR. OVERHOLTZ:**  Mr. Fallon will be on -- the 3rd and

19     4th are held for that, Your Honor, and then Mr. Saleem will be

20     on Monday the 31st.

21          **JUDGE RODGERS:**  Saleem.  I'm sorry.  I don't know all

22     these names like you all do.  I'm sure I will at some point.

23          **MR. OVERHOLTZ:**  And then, Your Honor, there's also a

24     Rule 45 third-party deposition of Brock Sales and Distribution.

25     They were one of the distribution companies for the earplugs.

1    That deposition is going to go forward, I think, September

2    10th.  Mr. Bartlett has been involved in --

3              **MR. AYLSTOCK:**  September 10th.

4              **JUDGE RODGERS:**  Are these on the current depo

5    schedule?

6              **MR. OVERHOLTZ:**  The Brock deposition is not on your

7    calendar, Your Honor; it needs to be added.

8              **MR. AYLSTOCK:**  That's a third-party witness.

9              **JUDGE RODGERS:**  And that's the 10th?

10             **MR. OVERHOLTZ:**  The 10th of September, Your Honor.

11             **MR. NOMELLINI:**  Your Honor, the calendar we provided,

12   Mr. Brock is on the calendar for September 10th, Dan Brock, for

13   remote deposition.

14             **JUDGE RODGERS:**  All right.  I have it in my notebook

15   and I just haven't turned to it.  I looked at it before I went

16   into the preconference meeting but did not remember all the

17   names on it.  So I do see -- yes, the most recent schedule

18   calendar does have Mr. Brock on the 10th along with a DoD

19   witness Leanne Cleveland, for now anyway.

20             **MR. NOMELLINI:**  That's correct, Your Honor.

21             **JUDGE RODGERS:**  By the way, is Leanne Cleveland former

22   or current?

23             **MR. NOMELLINI:**  I believe, Your Honor.  I'd have to

24   double check with -- *(inaudible)* -- is that Leanne Cleveland is

25   current.

1          **JUDGE RODGERS:**  You have a footnote that it was

2    confirmed with the government, so the government must not be

3    objecting to this deposition.

4          Plaintiffs, you all have knowledge of this one?

5          **MR. AYLSTOCK:**  Yes, Your Honor.

6          **MR. OVERHOLTZ:**  We do, Your Honor.

7          **JUDGE RODGERS:**  Thank you, Mr. Nomellini.

8          **MR. AYLSTOCK:**  The only thing I would add, Your

9    Honor -- and we appreciate the Court's accommodation with

10   allowing the 30(b)(6) on or before September 25th.  I did

11   discuss this with Mr. Bhimani and, obviously, we presented that

12   and the fact that he needed time to prepare a witness and so

13   forth.

14         We did discuss and, obviously, we bring it to the

15   Court for approval, that -- although Mr. Overholtz is correct

16   that I don't know that any of this is going to lead to more

17   corporate fact discovery, as Your Honor is aware, the

18   Plaintiffs' experts are due on the 2nd, which is actually a

19   week before the close of fact discovery.

20         I'm just letting the Court know, depending on what

21   happens with the backup tapes, the supplemental TAR, all of

22   that, we may be coming to the Court looking for a little

23   accommodation on that date as well.

24         **JUDGE RODGERS:**  Well, I don't think you need an

25   accommodation on the date.  You might need an accommodation in

```
 1    terms of being able to supplement.  But the date is firm.  You
 2    can comply with the date based on what you have; and if there's
 3    a need to supplement based on what's produced after that time,
 4    then I'm sure I'll be accommodating.
 5           MR. AYLSTOCK:  Yes, we certainly understand the
 6    Court's schedule, and it wouldn't have affected any of the
 7    other deadlines or certainly the trial deadlines.
 8    Supplementation can lead to just more work that may not
 9    necessarily need to be --
10           JUDGE RODGERS:  Well, I'm sorry, Mr. Aylstock.  That
11    date is firm.
12           MR. AYLSTOCK:  Thank you, Judge.
13           JUDGE RODGERS:  I think this would move us to Item No.
14    6, which is the Arizona subpoena.
15           MS. BRANSCOME:  Yes, Your Honor.  I don't know if
16    Tabitha De Paulo is on.  She may be on by phone, which may be
17    muted at the moment.
18           So this relates to a Motion to Compel that's actually
19    pending in Arizona with respect to a third-party called Top
20    Class Actions.  And they are a company that gathers -- they're
21    not lawyers or a law firm.  They gather information from
22    potential plaintiffs, as we understand it, at the request,
23    potentially, of plaintiff law firms, or they gather it and then
24    provide information for a fee.
25           We had moved to compel information that they have.
```

 1    It's our understanding that they gathered information for

 2    plaintiffs that are in this litigation.  This is an issue that

 3    has arisen before in another MDL also with Top Class Actions.

 4    That Motion to Compel is pending in Arizona.

 5         There was a question raised by the Court -- it was

 6    actually set for hearing; it's been fully briefed.  A question

 7    was raised by the Court about whether or not actually Top Class

 8    Actions actually had standing -- actually, issues related to

 9    privilege and claims that they're making.

10         And as I understand it, although Ms. De Paulo is

11    definitely the one who understands all the details, there has

12    been an attempt to have that action transferred into the MDL.

13         It is our position that that action is not appropriate

14    to combine into the MDL.  The MDL has some very specific

15    criteria.  And so the transfer order is being held up at the

16    JPML.  The JPML has not yet made a decision whether to grant or

17    deny the transfer into MDL 2885.

18         And so where it currently stands is that it is fully

19    briefed in front of the court in Arizona.  There is a hearing

20    set; I do not actually know the specific date of the hearing.

21    But there is a potential transfer into the MDL, but it's with

22    the JPML right now.  So I believe that is the current status.

23         I see Ms. Hutson is standing, so she may have more

24    information.  And if Tabitha is able to connect, she may be

25    able to answer more specific questions.

1    **JUDGE RODGERS:**  Okay.  Well, let me hear from Ms.

2    Hutson.  I was aware of this but not the fact that the transfer

3    issue was with the JPML.

4         When was that submitted to the JPML?

5         **MS. HUTSON:**  So we filed -- Leadership filed a Notice

6    of Potential Tag-Along on August 21st.  And this came because

7    of the attorney for TCA alerted -- actually called me and

8    expressed to me that the judge in the Northern District of

9    Arizona had concerns about standing since she represents TCA,

10   not the individual claimant.  So, rightfully so, she contacted

11   us.

12        Mr. Sacchet has been working diligently on this with

13   someone in my office named James Milne.

14        So, Mr. Sacchet, please chime in at any point in time

15   that's necessary.

16        But I --

17        **JUDGE RODGERS:**  Let me just stop for one minute.

18        **MS. HUTSON:**  Sure.

19        **JUDGE RODGERS:**  Don't argue any of the merits or even

20   discuss the merits of the issue; just the status of -- the

21   chronology of where the issue is.  But I don't want to discuss

22   any of the merits or what, even, the arguments are.

23        **MS. HUTSON:**  Certainly.  Fair enough, Your Honor.

24   He's just been doing the procedural side of it and where it is,

25   so I wanted to make sure I was accurately representing the

1    history and where it stands now.  But --

2           **JUDGE RODGERS:**  Is that an issue that the JPML has the

3    authority to decide?  It's not a decision made by this Court or

4    the Northern District of Arizona; it is an issue that is left

5    solely to the JPML to decide?

6           **MS. HUTSON:**  Yes, Your Honor, that's our position.

7    And they will make that decision and then it -- at some point

8    in the future this will be ripe to determine what the next step

9    is procedurally.  That's why I deferred to Mr. Sacchet on it

10   because they are looking into these different and various

11   options, if you will, procedurally on how to, in our opinion,

12   get it to this Court.

13          But, again, we are waiting on the JPML.  Ms. Branscome

14   is correct that it's sort of hold up there for now.  It's not

15   an issue we're asking for any relief on whatsoever.  We just

16   wanted to keep the Court informed that it was an ongoing issue.

17          **JUDGE RODGERS:**  Is it briefed before the JPML?

18          **MR. AYLSTOCK:**  Can I clarify that, Your Honor?  I'm

19   sorry to interrupt.

20          **JUDGE RODGERS:**  No, go ahead.

21          **MR. AYLSTOCK:**  The idea is that JPML may transfer to

22   this Court.  I don't think either party would assume the JPML

23   would decide the merits.

24          **JUDGE RODGERS:**  Oh, no, I didn't think so.

25          **MR. AYLSTOCK:**  Oh, okay.  I'm sorry.

1      **JUDGE RODGERS:**   I meant the decision of transferring

2   is -- because you've characterized it as a tag-along and that's

3   how you've -- okay.

4      So is that briefed?   Is there, you know, formal

5   opposition before the JPML?

6      **MR. SACCHET:**   Your Honor, I'm happy to chime in, if

7   necessary.   This is Michael Sacchet.

8      **JUDGE RODGERS:**   Okay.

9      **MR. SACCHET:**   The action has been tagged as Leadership

10  has represented.   There has not been an order on the CTO by the

11  JPML yet.   Presumably they -- based on Ms. Branscome's

12  representations a moment ago, 3M will oppose the CTO if it is

13  granted, and that, of course, will spark briefing on the issue.

14      **JUDGE RODGERS:**   Okay, so it's not there yet.

15      **MR. SACCHET:**   So I believe -- we're not there yet.   I

16  believe there's a JPML hearing set for September, and then the

17  next one is not set until December.   I think, given the

18  timeline that we're looking at, it's very unlikely that this

19  will be ruled on at the September JPML, so it will be pushed to

20  the December JPML.

21      In terms of the timing of the oral argument in the

22  Arizona District Court, that argument is set for September

23  21st, approximately three to four weeks from now.   And I assume

24  the judge would be mindful of the ongoing JPML action as to

25  whether to continue that hearing, but of course, that remains

1   *-- (inaudible) --*

2               **JUDGE RODGERS:**  All right.  Anything 3M wishes to add?

3           **MS. BRANSCOME:**  No, Your Honor.  I think that's an

4   accurate description.  As of the moment, there's really nothing

5   ripe in front of Your Honor, and we will keep you updated as we

6   learn more.

7               **JUDGE RODGERS:**  Okay.  Thank you.

8           **MS. HUTSON:**  Thank you, Your Honor.

9           **JUDGE RODGERS:**  Thank you, Ms. Hutson.

10          I believe that completes the formal agenda submitted.

11          Is there anything from either side or that the

12  individual bellwether attorneys wishes to discuss with the

13  Court?

14          **MR. AYLSTOCK:**  Nothing from the Plaintiffs, Your

15  Honor.

16          **MR. HILL:**  No, Your Honor.

17          **JUDGE RODGERS:**  All right.  Judge Jones?

18          **JUDGE JONES:**  I have nothing to add at this point.

19          **JUDGE RODGERS:**  Judge Herndon?

20          **JUDGE HERNDON:**  Nothing further.  Thank you very much.

21          **JUDGE RODGERS:**  Okay.  The date of the next CMC is

22  September 18th, as indicated.  October is October 18th; that

23  was a change.  And then November 20th.

24          The only caveat with the 20th of November is I have

25  right now a criminal trial set that week.  It's a specially set

```
 1    trial, multi-defendant.  In the times we're living in, it's
 2    certainly subject to change, but for now that CMC is at risk of
 3    being continued.  And if that be the case, then likely we'd
 4    just skip that CMC altogether.  Hopefully we have Leadership
 5    conferences in the interim.  And then the December CMC I
 6    believe is the 14th of December.  I believe that's right,
 7    although I don't have that in my notes, but that's my memory.
 8    So check your own calendars, but I think it's the 14th.
 9               If there's nothing else, then I enjoyed seeing you
10    all.  I apologize for the technology, to the extent it was
11    difficult.  I hope everyone on the phone could hear and the
12    Video Bridge could hear and see.  And it's nice to see everyone
13    in the courtroom.  You all stay safe.
14               Court is in recess.
15               *(Proceedings concluded at 11:19 a.m.)*
16               --------------------
17    *I certify that the foregoing is a correct transcript from the*
      *record of proceedings in the above-entitled matter.  Any*
18    *redaction of personal data identifiers pursuant to the Judicial*
      *Conference Policy on Privacy are noted within the transcript.*
19
20       *s/Donna L. Boland                        8-28-2020*
21       *Donna L. Boland, RPR, FCRR               Date*
         *Official Court Reporter*
22
23
24
25
```