**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS EARPLUG      )      Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,     )
                                   )      Pensacola, Florida
                                   )      September 9, 2020
                                   )      12:26 p.m.
                                   )
                                   )
_____)

**LEADERSHIP PHONE CONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-47)

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*1 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

**A P P E A R A N C E S**

JUDGE DAVID R. HERNDON (ret.)

FOR THE PLAINTIFFS:      **BRYAN F. AYLSTOCK, ESQUIRE**
                         **JENNIFER HOEKSTRA, ESQUIRE**
                         Aylstock, Witkin, Kreis & Overholtz
                         17 E Main Street, Suite 200
                         Pensacola, Florida  32502

                         **DAVID R. BUCHANAN, ESQUIRE**
                         Seeger Weiss, LLP
                         55 Challenger Road, 6th Floor
                         Ridgefield Park, New Jersey  07660

                         **SHELLEY HUTSON, ESQUIRE**
                         Clark Love & Hutson, GP
                         440 Louisiana Street, Suite 1600
                         Houston, Texas  77002


FOR THE DEFENDANTS:      **ROBERT C. BROCK, ESQUIRE**
                         Kirkland & Ellis, LLP
                         1301 Pennsylvania Avenue NW
                         Washington, D.C.  20004

**MICHELLE SIX, ESQUIRE**              **KIMBERLY BRANSCOME, ESQUIRE**
Kirkland & Ellis, LLP                  Dechert, LLP
601 Lexington Avenue                   633 W 5th Street, Suite 4900
New York, New York 10022               Los Angeles, California  90071

**MARK J. NOMELLINI, ESQUIRE**         **JAY L. BHIMANI, ESQUIRE**
Kirkland & Ellis, LLP                  Dechert, LLP
300 N Lasalle                          633 W 5th Street, Suite 4900
Chicago, Illinois  60654               Los Angeles, California  90071

```
 1                    P R O C E E D I N G S

 2          JUDGE RODGERS:  Who do I have on the call

 3   that's going to be addressing the Court from the

 4   Plaintiffs' side?

 5          MR. AYLSTOCK:  Good afternoon, Judge.  This

 6   is Bryan Aylstock.  I'll be on, also Ms. Hutson and

 7   Mr. Buchanan and Ms. Hoekstra.

 8          JUDGE RODGERS:  Okay.  Thank you.

 9          MR. SEEGER:  Seeger is on, too.  Sorry, Your

10   Honor.

11          MR. AYLSTOCK:  Sorry, Chris.

12          MR. SEEGER:  No problem, no problem.

13          JUDGE RODGERS:  Thank you.

14          For 3M?

15          MS. BRANSCOME:  Good afternoon, Your Honor.

16   This is Kimberly Branscome.  I'm not sure who else has

17   joined at this point, but I would expect we should

18   have Mike Brock, Mark Nomellini, potentially Jay

19   Bhimani speaking, Michelle Six.  And I think that may

20   cover -- maybe Barry Fields.  I'm mentally going

21   through the agenda in my mind.  Sorry about that.

22          JUDGE RODGERS:  Okay.  Well, thank you.  I'm

23   not going to do a rollcall any further than we've

24   already done.  But if you do address the Court, if

25   you'd just identify yourself when you speak.
```

1    **MS. BRANSCOME:**  Of course.

2       **JUDGE RODGERS:**  I'm going to go ahead and get

3    started with those I have on the call.  I appreciate

4    your joint agenda, and we'll just work off of that.  I

5    know there have been a number of Motions to Quash

6    filed by the Government.  I think I'm aware of, I

7    believe, three or four, I guess.  And then there's a

8    couple of Motions to Transfer that have been filed.

9       I'm happy to hear from -- and let me stop.

10   One other thing to add to that is, none of those

11   motions are yet before this Court.

12      **MS. BRANSCOME:**  That is correct, Your Honor.

13      **JUDGE RODGERS:**  Okay.  Thank you.

14      Anything that anyone else wants to add to

15   that agenda item?

16      **MR. AYLSTOCK:**  I don't think so from the --

17      **MS. BRANSCOME:**  Your Honor, I'm happy to give

18   you sort of an overview -- oh, is that you, Bryan?

19   You can go ahead.

20      **MR. AYLSTOCK:**  No, I really didn't have

21   anything to add.  It's really more your agenda item,

22   so go ahead, Kim.

23      **MS. BRANSCOME:**  Sure.  And I think we may

24   have others on the call who can get into details, Your

25   Honor, if you would like to.

1          So, at the moment, there are a number of

2     Motions to Quash that have been filed by the

3     Government in the jurisdictions in which the

4     depositions were noticed to go forward and subpoenas

5     were issued.

6          We have asked the individual Government

7     lawyers who were on the -- you know, who filed the

8     motions if they would consent to a Motion to Transfer

9     the Motions to Quash into this jurisdiction.  Our

10    reading of the case law is that that is an appropriate

11    path to follow given that the issues are central to

12    discovery in the MDL.

13         The response that we have received back from

14    the Government, both in conversation with Jacqui Snead

15    but then also in email correspondence with the various

16    government representatives, is that they simply have

17    not reached a decision whether or not they would agree

18    to the transfer, and so they have essentially

19    encouraged us to go ahead and file.

20         We are all mindful of the timing and the

21    schedule, and so we are trying to move quickly.  We

22    have been filing Motions to Transfer.  None of those

23    are yet ripe, meaning, you know, they have not been

24    opposed or the Government has not consented to them.

25         So, right now nothing procedurally has gotten

1   to the Northern District of Florida, although we are

2   hopeful that we can get them there.

3           One of the concerns we have, obviously, with

4   the filing of these Motions to Quash all over the

5   country is that it may be that the Motions to Transfer

6   are heard on different timelines, depending on how

7   quickly those individual courts are moving, and also

8   there can be different outcomes.

9           So we were hopeful that perhaps we could get

10  the Government's consent to the Motions to Transfer,

11  but they have not been willing to do that thus far.

12          We have been proceeding with the depositions.

13  And perhaps, if Ashley Neglia has joined, she can give

14  you the details, if that's helpful.  We have had a few

15  depositions go forward.

16          The Government witnesses have not appeared.

17  We have followed the instructions of conducting the

18  remote deposition.  We have put a statement on the

19  record in each of those depositions that the

20  Government witness was under subpoena, there has not

21  been an entered quashing of the deposition, and that

22  the witness did not appear, so that we do have the

23  record of each of those.

24          We are getting the objections to the

25  depositions and document subpoenas on essentially a

1   rolling basis.  Ms. Snead has previewed to some degree

2   that objections are still coming, but she essentially

3   has said we need to wait for the formal decision.

4         The Government had asked for an extension to

5   object to a most recent deposition which they would

6   have owed over the weekend.  We gave them until

7   Tuesday, kind of respectful of the holiday weekend,

8   but we have not yet received their formal objection;

9   we anticipate it is coming.

10        There was one witness that the Government did

11  authorize for deposition.  That deposition was

12  scheduled for this week, but they asked that we agree

13  to a mutually agreeable date.  We responded and said

14  that we would be willing to work with them on

15  scheduling but that the deposition -- there is an

16  active subpoena and the deposition -- we would need an

17  answer on that date in order to stop the deposition.

18        And then, I believe it was late yesterday

19  afternoon, or perhaps it was the day before, the

20  Government said that they would be filing a Motion to

21  Quash, and they didn't give us a date.  We have asked

22  them for clarification, if that means they are now

23  withdrawing their approval for that one individual's

24  deposition or if they're still agreeable to trying to

25  schedule it, and my understanding is we have not yet

1   heard back.

2          So the long and short of it, Your Honor,

3   unfortunately, is that, across the board, the

4   Government has objected to each of the case-specific

5   government witness depositions, and they are moving to

6   quash on a rolling basis.

7          **JUDGE RODGERS:**  Thank you for that overview.

8   Let me ask a question.  The last deposition you were

9   referring to where there was a subpoena issued, the

10  Government asked for an alternate date -- or suggested

11  that they would approve the depo but needed a

12  different date, is that Sgt. Mosby?

13         **MS. BRANSCOME:**  Is it.

14         **MR. AYLSTOCK:**  It is, yes, Your Honor.

15         **JUDGE RODGERS:**  It seems to me -- in reading

16  the Motion to Quash, I don't think the Government

17  included in their motion that you all were willing to

18  withdraw the subpoena if you had an alternate date.

19  But it seems to me that that one ought to be worked

20  out.  It doesn't make sense to have to go forward with

21  a Motion to Quash on that one if everybody -- I mean,

22  they have approved the depo, so we just need to find a

23  date.

24         **MS. BRANSCOME:**  I think that's right, Your

25  Honor.  We were somewhat surprised by the position

1    that they took in their Motion to Quash, given that we

2    had been quite clear that we would work with them on a

3    mutually -- "mutually convenient date" was the phrase,

4    which is -- we were surprised by it.

5         So Mr. Gunderson wrote back yesterday evening

6    -- it was yesterday -- he wrote back to Mr. Mueller

7    and asked if Maj. Wald's prior offer -- because one of

8    the issues is that we got the offer from Maj. Wald to

9    find a mutually convenient date for Mr. Mosby's

10   deposition and conveyed that the Government would

11   approve that to go forward, but then the Motion to

12   Quash actually came from DOJ in the Western District

13   of Texas.  And so we weren't sure if perhaps maybe

14   wires had gotten crossed on their end.

15        Plaintiffs, to their credit, were very

16   flexible, said they could make any date work.  And so

17   we reached back out to DOJ, Mr. Mueller, yesterday

18   evening to ask for clarification.  Because we were

19   sort of of the same view, Your Honor, that, if the

20   Government has authorized the deposition and it's

21   simply a matter of scheduling, and we said that we

22   would work with them on scheduling but we couldn't

23   just withdraw the active subpoena without, you know,

24   some kind of commitment.  Because if they said the

25   mutually convenient date is in January of 2021,

```
 1   obviously we would have a different view.  So we just
 2   simply haven't heard back yet.
 3             JUDGE RODGERS:   Okay.  I don't know if that's
 4   something Judge Herndon can help you with.
 5             Are you on the call, Judge Herndon?
 6             JUDGE HERNDON:   I am.
 7             JUDGE RODGERS:   Okay, very good.
 8             JUDGE HERNDON:   And I've been involved in
 9   that.  And Kim did a great job of explaining how that
10   has all gone.  It really is kind of baffling.  But I'm
11   happy to try to touch base directly with the
12   Government folks and find out.  But Jacqui is kind of
13   back to stonewalling us, so I'm not sure how
14   successful I'll be, but I'll give it a try.
15             JUDGE JONES:   This is Judge Jones --
16             JUDGE RODGERS:   Because I was -- go ahead,
17   Gary.
18             JUDGE JONES:   I just had a question for Kim.
19             You said there were a number of Motions to
20   Quash.  Offhand, do you know which courts those
21   motions were filed in and how many there are, offhand?
22             MS. KIM:   I believe --
23             MR. NOMELLINI:   I can --
24             MS. KIM:   Go ahead.
25             MS. NEGLIA:   This is Ashley Neglia.  I can
```

1    tell you that information.  We have one -- there are

2    four in total.  There's one in the Middle District of

3    Florida, one in the District of Alaska, one in the

4    Western District of Texas, and one I believe in

5    Alabama.

6              Is that correct, Mark?

7              **MR. NOMELLINI:**  That's correct.

8              **JUDGE RODGERS:**  Yeah, Middle District, I

9    think, of Alabama.

10             **MS. NEGLIA:**  That's correct.

11             **MR. NOMELLINI:**  And then we have filed two

12   Motions to Transfer -- one in the Middle District of

13   Florida, one in the Western District of Texas.  We'll

14   be filing today a motion to transfer in Alabama and in

15   Alaska.

16             **MR. BROCK:**  I've just signed the one in

17   Alabama, so it will be filed just in the next --

18             **JUDGE JONES:**  Do you know who the judge is in

19   Tampa and the judge in Alaska, offhand?

20             **JUDGE RODGERS:**  In Tampa it's Virginia

21   Covington, and in Alaska --

22             **JUDGE JONES:**  Is it Deborah Smith?

23             **JUDGE RODGERS:**  It's Timothy Burgess in

24   Alaska.

25             I thought it was interesting and a little

1    odd, in Alaska there was a docket text order that went

2    out asking if there was any need to expedite the

3    motion, and the Government's response was no.  I guess

4    it's all a matter of perspective.

5              **MS. BRANSCOME:**  Yes.

6              **JUDGE RODGERS:**  So, Judge Herndon, that's

7    where these motions stand right now; four Motions to

8    Quash and then two Motions to Transfer.  But it sounds

9    like the other two motions will be met with a Motion

10   to Transfer in those districts very shortly.

11             **MS. BRANSCOME:**  Yes, Your Honor, we are

12   filing the Motions to Transfer as soon as possible.

13   We have actually predrafted them because the case law

14   is fairly universal and there's not a lot of

15   case-specific facts, so that is our plan going

16   forward.

17             I would note that the Motions to Quash that

18   have been filed, they have come in sequence as the

19   depositions have come up.  And so we would anticipate

20   -- there are a number of depositions set for next week

21   that we would anticipate the same will keep following,

22   and so we will keep filing motions to transfer.

23             We did have one slightly encouraging break in

24   our last conversation with Ms. Snead, although I don't

25   know -- we have sort of our first test case to try it

out, and that is that she asked that when they issue
their objection letter that, you know, would we be
willing to engage in a conversation about why we need
a specific deposition.  We have put our reasoning in
writing, but there seems to be some suggestion that a
telephone conference might be more productive and is
how they typically handle things.

In the past, Ms. Snead has actually asked us
not to do things by telephone conference, so this was
a change in position.  But we're happy to do anything
to help move this along.  And so we have offered --
there are two providers, Ms. Parker and Ms. Pomering,
and I'm not sure if one or both is a doctor.  But they
have sent their objection letter now for Cheryl Parker
and have indicated that Susan Pomering is forthcoming.

We will offer to get on a telephone call and
speak with whoever Ms. Snead would like us to speak
with.  We have to be careful to not get into trial
strategy and work product, but I think we can, you
know, speak with them if they think that would be
productive.

We will circle back and see if that gets us
anywhere -- those two individuals are providers for
one of the bellwether plaintiffs -- and see if that
gets us anywhere.

1        I think our overarching concern is with the
2   timeline that this is following.  Whether or not the
3   Government cooperates or they continue to maintain
4   their position where they are filing motions, is that
5   either path we head down, either a potentially
6   cooperative one or one where we are litigating it,
7   both of those are going to take a substantial amount
8   of time to get resolved.  And so we are concerned
9   about the overall timeline for these treater
10  depositions and for the hearing conservation program
11  managers for the case-specific bases, and same for the
12  industrial hygienist.

13       So we will continue along the path that we
14  have described.  And Judge Herndon has been as helpful
15  as anyone can be, so I think we have all of the
16  resources that you all can offer.  But we are
17  concerned about the overall timeline and how this will
18  factor into expert discovery.

19       **JUDGE RODGERS:**  The chart that I have looks
20  like there are about 20 witnesses.  These are all
21  witnesses subpoenaed by 3M; is that correct?

22       **MS. BRANSCOME:**  That is correct.  It's our
23  understanding that the Plaintiffs have not requested a
24  government deposition yet, case-specific.

25       **JUDGE RODGERS:**  Okay.  Well, I am certainly

1    willing to adjust -- we already have -- I mean, you're

2    past the deadline for government discovery, so

3    obviously -- we talked about this at the last

4    conference, that that deadline will be flexible.  But

5    I don't see this impacting your expert disclosure

6    deadlines at all.  So that's really not open for

7    discussion.

8         **MS. BRANSCOME:**  If I may, Your Honor --

9         **MR. AYLSTOCK:**  We understand that, Your

10   Honor.

11        **MS. BRANSCOME:**  Can I explain how we

12   anticipate that it might?

13        **JUDGE RODGERS:**  Well, I mean, I'm not going

14   to move the deadline.  I may move a deadline for a

15   deposition.  But in terms of the disclosure of your

16   experts and their reports, it's just like I told Bryan

17   at the case management conference when he suggested

18   the same based on some outstanding corporate discovery

19   in 30(b)(6) witness depositions.  I told him your

20   disclosure is due; and if you need to supplement,

21   that's a different issue.  So the same will apply for

22   3M and your disclosures.

23        Okay.  So I would hope that these -- and I

24   would expect that these Motions to Transfer will be

25   granted.  I can't speak for these courts.  But I read

1    one of the Motions to Transfer.  I thought it was well

2    done and well taken.  And I don't even know if the

3    Government yet is going to object to the transfer.

4    But if and when the Motions to Quash are transferred,

5    then I would expect to have those heard by and

6    reviewed by Judge Jones.

7             Judge Jones, are you in agreement with that?

8             **JUDGE JONES:**  Oh, yeah, absolutely.  I've got

9    the time.

10            **JUDGE RODGERS:**  Okay.  And I know you'll do

11   that as expeditiously as you possibly can.

12            **JUDGE JONES:**  Yes.

13            **JUDGE RODGERS:**  And then you all will

14   continue to work with Judge Herndon, and hopefully

15   with Ms. Snead's cooperation, to obviate the need for

16   any ruling on the motions.  But you may not be

17   successful, so Judge Jones certainly will move forward

18   with that.

19            For the others, just hopefully you can get

20   dates and get these folks scheduled.

21            I did note in your chart that there are a

22   couple of individuals that were on the chart -- and it

23   may be as few as only two, maybe three -- that

24   actually are not government employees.  So I presume

25   you'll be moving forward with those.

**MS. BRANSCOME:** We are, Your Honor. There have been a few that we thought they were current government employees, so some subpoenas went out, and then we have been able to confirm that they are in fact formers, in which case we are moving forward as we would with any other former employee.

We are waiting -- Ms. Snead had agreed to check in. There are a few individuals where we have not been able to find them. They were actually names that were provided to us by the Government as hearing conservation program managers that we have not been able to find them.

We had I think some confusion on Ms. Snead's part where she thought we were asking for home addresses. We were not. We are simply trying to find what bases these individuals are located at and, if they are not, confirm that they are former government.

So I'm hoping maybe we hear back from her. I will check in again to see if we can get some information. But that's why there are a few individuals -- I think it's King, Leccese, and Haygood where we have not been able -- I think we tried maybe to serve a subpoena on DoD; they would not accept it. But those are individuals that we are still working on.

|     |     |
| --- | --- |
| 1   | **JUDGE RODGERS:**  The only one I am seeing is |
| 2   | King. |
| 3   | So what I'd like to ask is for another |
| 4   | modification of this chart.  It would be helpful to me |
| 5   | if you could -- I don't know if it's another column or |
| 6   | if you just want to do it in a parenthetical under the |
| 7   | deponent's name -- are they part of the hearing |
| 8   | conservation program, are they a treater, are they an |
| 9   | audiologist, are they a servicemember who served with |
| 10  | the plaintiff, just some context for who they are, |
| 11  | because I don't know these names.  They really mean |
| 12  | very little to me. |
| 13  | **MS. BRANSCOME:**  Sure. |
| 14  | **JUDGE RODGERS:**  I now know a few of them |
| 15  | because I read the motions, but otherwise I wouldn't |
| 16  | have known who they are. |
| 17  | **MS. BRANSCOME:**  That is not a problem at all. |
| 18  | That's an easy addition. |
| 19  | **JUDGE RODGERS:**  Terrific.  That would be |
| 20  | helpful. |
| 21  | **MR. NOMELLINI:**  Your Honor, one follow-up on |
| 22  | Kim's statement regarding address information.  Jacqui |
| 23  | Snead referred to some kind of administrative process |
| 24  | for them to provide us with address information, which |
| 25  | gives me pause because that suggests delay to me. |

```
1              And she said at one point it may be helpful
2     to have a court order, although she kind of
3     backtracked on that.  But what we might do in the very
4     near future is to file a motion with Your Honor with
5     respect to the Government providing address
6     information for a few specified individuals.  So just
7     wanted to give you a heads-up that that may be coming.
8              JUDGE RODGERS:  Okay.  I saw something along
9     those lines, Mark.  I'm not sure where I read that.
10    It might have been in a Motion to Quash.  But, in any
11    event, that may have been something different.  I'm
12    happy to entertain such an order, so just -- thanks
13    for the heads-up, and I'll sign it as soon as you send
14    it in.  And of course, I'll check the law to make sure
15    I have the authority to do what you're asking me to
16    do, but I suspect I'll enter it.
17             MR. NOMELLINI:  Thank you, Judge.
18             JUDGE RODGERS:  Anything else on these
19    Motions to Quash the subpoenas for government
20    witnesses and the Motions to Transfer?
21             MR. AYLSTOCK:  I don't think so, Your Honor.
22    I would agree with you -- and Mr. Barr is on the phone
23    as well.  I would -- Dr. Mosby, I don't really see
24    that as one that can be overcome, just a matter of
25    scheduling, the way it seemed to me from the
```

correspondence, but hopefully that's the case.  I'm

sure Judge Herndon can figure that out.

**JUDGE RODGERS:**  Right.  Now, I believe that

is -- is that in the Western District of Texas?

**MS. BRANSCOME:**  It is, Your Honor.

**JUDGE RODGERS:**  And there is a Motion to

Transfer or that's where you will be filing a Motion

to Transfer?

**MR. NOMELLINI:**  We have filed one.

**JUDGE RODGERS:**  Okay.  Very good, then.

Hopefully the judge there won't be working on that

motion needlessly.

The next item that's an update on your

bellwether discovery document issues for Trial Group

A, and then B for Adkins.  And I believe some of these

-- well, I'll ask, but go ahead and give me the

update.  Some of this may have been worked out, and

some is, I believe, still pending before Judge Jones.

**MR. AYLSTOCK:**  Yes, Your Honor, this is --

**MS. BRANSCOME:**  Your Honor, I think these are

all -- oh, go ahead, Bryan.

**MR. AYLSTOCK:**  Yes, I was just going to say

Mr. -- the briefing is complete, I believe, for

Mr. Hacker, Mr. Baker, and Mr. Adkins.  The meet and

confer is continuing with Mr. Rowe, so that one is not

1    teed up, or not sure if there is an issue tee up yet,

2    but we're working on that with the Defendants.

3    Mr. Martinez is on the call as well, if there's any

4    specific questions.  But three of the four are

5    awaiting decision from Judge Jones.  And if there is a

6    need for a hearing, certainly those lawyers will be

7    available to address it.

8             **JUDGE RODGERS:**  Okay.

9             **MR. NOMELLINI:**  Your Honor, I would note on

10   the Adkins Motion to Compel, Adkins is one of the

11   Trial Group B plaintiffs, and that deposition will go

12   forward next Wednesday, September 9th *[sic]*, so just

13   to give the Court a sense of the schedule.

14            **JUDGE JONES:**  Let me just chime in what Bryan

15   pointed out.  The other motions are under advisement.

16   And Adkins, I permitted the Defendants to file a

17   reply, and I am, as soon as this hearing is over,

18   entering an order.  Because some issues were raised

19   there that, in my view, the Plaintiffs haven't had a

20   chance to address in more detail, I'm setting a

21   telephone hearing on Adkins for Friday afternoon at

22   two o'clock, and that will give the Plaintiffs an

23   opportunity to -- rather than them filing a sur-reply

24   and having a ping-pong match on that, I thought the

25   best way was to have a hearing on it, and then I can

1   rule on Adkins Friday afternoon, recognizing the

2   deposition is scheduled for Wednesday.

3            **JUDGE RODGERS:**  Perfect.  That sounds good.

4   Thank you.

5            I just want to confirm that the motion with

6   Adkins initially included issues related to Marcus

7   Hensley, but that's been resolved through your --

8            **MR. AYLSTOCK:**  Yes, Your Honor.  Mr.

9   Hensley's counsel isn't on the phone, but it has been

10  resolved.

11           **JUDGE RODGERS:**  Okay, very good.

12           **MS. BRANSCOME:**  And we are available -- Judge

13  Jones, if it is helpful to you, we are available for a

14  hearing on Baker and Hacker at your convenience.

15           **JUDGE JONES:**  Okay.

16           **JUDGE RODGERS:**  All right.  Any other updates

17  on the bellwether discovery?

18           **MR. NOMELLINI:**  Your Honor, with respect to

19  Mr. Rowe, we may be filing a Motion to Compel forensic

20  examination.  We understand that Plaintiffs may have

21  conducted such an examination.  We have inquired about

22  that.  Plaintiffs indicated that some of the

23  information may be work product.  We've inquired to

24  follow-up to see if there's any other information.

25  And Bryan indicated we're meeting and conferring about

1    that.  If we are unable to resolve that, we expect to

2    be filing a motion to compel forensic examination on

3    that as well.

4          **JUDGE RODGERS:**  And when do you expect to

5    file that, Mark?

6          **MR. NOMELLINI:**  As soon as we hear back from

7    Plaintiffs regarding the results of their own

8    examination.

9          **JUDGE RODGERS:**  Okay.  Bryan -- and I know

10   Mr. Martinez is on the call, too, it sounds like.

11   When are you anticipating having that report back?

12         **MR. AYLSTOCK:**  Ms. Hoekstra and I think

13   Mr. Kamberger *[phonetic]* may be on the phone with the

14   nitty-gritty details, to the extent that that's

15   relevant.  I don't -- we have complied with the ESI

16   order and are happy to address that with Mr.

17   Nomellini, so I would think we would either reach

18   resolution or not by the end of the week.

19         **JUDGE RODGERS:**  Okay.  Well, that's all I

20   need to know.  You either reach resolution by the end

21   of the week, if not, then, Mark, please have your

22   motion filed the first of next week.

23         **MR. NOMELLINI:**  Will do, Your Honor.

24         **JUDGE RODGERS:**  Thank you.

25         Deposition chart?

1      **MS. HUTSON:**  Yes, Your Honor.  I've got some

2   good news.  We now have a bellwether deposition chart

3   that both sides have been working very collaboratively

4   on, and we have the template for it as well as

5   information uploaded in the categories where we do

6   have that information.  It's been given to BrownGreer.

7           I put a call into BrownGreer right before

8   this call, and I was told the functionality is live,

9   but they are still working on some notifications,

10   meaning, for example, when a firm -- an individual

11   bellwether firm will be notified when there is updated

12   information in a given category as to their

13   bellwether, and they're still working on that.

14           So it's very close to being done and I think

15   will be very helpful and will be available obviously

16   to the Court as well as the Government and the

17   individual bellwether firms and leadership.

18      **JUDGE RODGERS:**  That's good news.  Will that

19   be available through a link or -- like, for instance,

20   how would my law clerks and I access it?

21      **MS. HUTSON:**  It's going to be through MDL

22   Centrality, and I assume that Roma and her group will

23   give us some training on that.  I'll have to be honest

24   with you, I don't know the intricate details of it,

25   but I know that it does go through the MDL Centrality

1   system.  And once that is completely finalized, I

2   suspect she'll be doing some reach-out to the various

3   entities to explain how best to access that

4   information.

5          **JUDGE RODGERS:**  All right, that sounds good.

6   It is good news, and we will look forward to that

7   being up and live.  Thank you, Shelley.

8          Anyone have anything else to add to that

9   update on the depo chart?

10         **MS. HUTSON:**  One other thing, Your Honor,

11  talking about depositions -- it's not specific to the

12  bellwether chart, but there are some depositions

13  scheduled two weeks from now.  They're 30(b)(6)

14  depositions that are scheduled for August 24th and

15  25th.

16         On the 24th, it's been designated to cover

17  30(b)(6) topics 2, 3, 12, and 13, which are marketing

18  related topics.  And then on the 25th, there are

19  topics No. 2, 5, 10, 17, and 18, which are specific to

20  design and instruction and labeling issues.

21         We have asked a few times to get the names of

22  the individuals who will be testifying as to each of

23  those topics.  Again, these are two weeks away.  And

24  the response that we got was that that would kind of

25  come along at about the same time as logistics we

worked out with the court reporting companies.  But
again, these are two weeks away, and we need the names
of the people that are going to be plugged into those
topics.

We have no idea, for example, whether these
are individuals for 3M that have previously been
deposed that we have never heard of.  So there's a lot
of preparation for important depos like these that are
two weeks away.  And without us knowing the names of
individuals, we're kind of put between a rock and a
hard place.  So I was hoping for some guidance from
you, Your Honor, as to when we might be able to expect
getting the names of those individuals.

**JUDGE RODGERS:**  I thought one was Annette
Childress.

**MS. HUTSON:**  Her deposition is a week -- I'm
sorry -- two weeks from yesterday, and she has very
specific topics, but these are different topics that
we all have agreed need to be -- we need a deponent
for, and those are scheduled for the 24th and the
25th, so this is different.

Now, again, could they present Ms. Childress
for those?  They could.  I don't think that they will.
We just don't know who those individuals are covering
those significant numbers of topics both on the 24th

1    and 25th.

2         **JUDGE RODGERS:**  Okay.  3M, what's the

3    response?

4         **MR. BHIMANI:**  I think our response would be,

5    at some point in advance of the deposition -- these

6    are going to be remote depositions, so at some point

7    the Plaintiffs will learn the identities of the

8    witnesses as we sort of figure out the technology.

9         With respect to an earlier disclosure, Your

10   Honor, we're not aware of any rule that would require

11   the disclosure.  We are certainly working to prepare

12   witnesses to address the topics in the notice in

13   accordance with the Court's order and those witnesses

14   will be examined about those topics by the Plaintiffs

15   and we have worked out dates for that.

16        With respect to the identity of the

17   designees, we're just not aware of any requirement

18   that that disclosure be made at this juncture,

19   although it will be made in advance of the deposition

20   necessarily as a result of the logistics.

21        **JUDGE RODGERS:**  Okay.  Well, I don't think

22   it's too much to ask that you all identify the

23   30(b)(6) deponent, and I'm going to require that you

24   do that 10 days in advance of the deposition.

25        Next issue?  Anything else on these

1   depositions?

2        **MR. AYLSTOCK:**  No, Your Honor.  That kind of

3   brings us to the corporate depositions which we have

4   touched on.  We have got Ms. Childress and the

5   30(b)(6)'s, so that will sort of round out the

6   corporate depositions as it relates to the general

7   discovery at this point.

8        And then Mr. Buchanan was going to give the

9   good news on TAR.

10        **JUDGE RODGERS:**  Okay.

11        **MR. BUCHANAN:**  Yes, Your Honor.  As reported

12   at the last CMC, we have effectively closed out the

13   training.  We're advised the Defendants have completed

14   their review.  Subsequent to that training, I think we

15   got significant production on the day of the close of

16   corporate discovery about 5,000 documents composing

17   about roughly 100,000 pages.  So we have loaded those

18   up and we're going through those and obviously

19   assessing what impact, if any --

20        **JUDGE RODGERS:**  Dave, can interrupt you just

21   a moment?

22        **MR. BUCHANAN:**  Sure.

23        **JUDGE RODGERS:**  Is Ms. Six on the --

24        **MS. SIX:**  Yes, I'm here.

25        **JUDGE RODGERS:**  All right.  I just wanted to

1    check to see if you were on.

2              **MS. SIX:**  Yes, I'm on, Your Honor.

3              **JUDGE RODGERS:**  All right.  I'll hear Mr.

4    Buchanan and then you, Ms. Six.

5              All right, go ahead, Mr. Buchanan.

6              **MR. BUCHANAN:**  Yes, Your Honor.  We received

7    a series of productions throughout August,

8    collectively, you know, some 17-, 18,000 documents and

9    about 150,000 pages, the most significant of which was

10   received on the 1st.  We have loaded those up and are

11   in the process of conducting our review.

12             In terms of a TAR update itself, the training

13   has been completed.  And we're advised the Defendants

14   completed their review and production of responsive

15   materials suggested by the TAR algorithm as of the

16   1st.

17             **JUDGE RODGERS:**  All right.  Thank you very

18   much.

19             Ms. Six, would you like to add anything?

20             **MS. SIX:**  Yes.  Good afternoon, Your Honor.

21   As I think I mentioned on the CMC, the supplemental

22   TAR process did identify additional documents, which,

23   as Dave notes, have now been produced.  So it was a

24   successful process overall, it was a collaborative

25   process, and I think it was an important one to

finalize the identification of relevant documents from
the initial TAR protocol.

The parties are working on a joint statement
for Your Honor -- I believe that was requested on the
CMC -- that should formalize the completion of the
process, and we will put that in writing and hopefully
get that on file this week for you.

**JUDGE RODGERS:**  Okay.  Terrific.  Thank you
both and to your teams for what truly has been a
collaborative effort and a successful effort.

Okay.  So close of non-case-specific
government discovery, update on that?

**MR. AYLSTOCK:**  Yes, Your Honor, that date has
come and gone.  That was September 1.  Obviously,
there's some straggler depositions that are on that
chart.

It's our understanding that, to the extent
that anything is not on that chart, that's sort of --
we're done with the non-case-specific government
discovery.  Obviously, there's a lot to do on the
case-specific government discovery, but just wanted to
highlight that one item.

**MR. NOMELLINI:**  Your Honor, so, just to give
an overview on that which Your Honor is familiar with.
We filed a Motion to Compel relating to various

government discovery back in June and then refiled it
in July and then issued subpoenas that are tied to
that Motion to Compel relating to both depositions and
documents.

And so, I don't know that I would call it
stragglers.  Some of the documents are important as
well as the deponents.  For example, on the documents
there's noise exposure data.  And to the extent that
the Government does not comply, we will be bringing
those matters to Your Honor's attention as
expeditiously as we can.

**JUDGE RODGERS:**  Okay.  Mark, could you please
provide another chart to me that is specific to that
Motion to Compel and those document requests as well
as the deponent requests, who they are, who you have
requested documents from, and when you issued the
subpoena, similar to this other chart that you've
done?

**MR. NOMELLINI:**  Yes, Your Honor.

**JUDGE RODGERS:**  Okay.  Thank you.  And if I
could just get that in the next week, that would be
helpful.

**MR. NOMELLINI:**  We will do that at least by
then, hopefully sooner, Your Honor.

**JUDGE RODGERS:**  Okay.  Thank you.

1                   If there's nothing else, I have a question.

2            Is Ms. Hoekstra on the line?

3            **MS. HOEKSTRA:**  Yes, Your Honor.

4            **JUDGE RODGERS:**  So I'm curious about the one

5    percent, the 1500 or so Plaintiffs and the one percent

6    and the document production for those individuals.

7                   I know that this gets updated through

8    BrownGreer and Roma daily -- I believe it's daily.

9    And I get some updates, not daily, but certainly

10   regularly.  And I requested some information today,

11   and one of the things I saw from Roma in response is

12   that there are still outstanding authorizations that

13   have not been signed by 371 plaintiffs.

14           **MS. HOEKSTRA:**  Actually, I can clarify some

15   of that information.  I believe it's actually 312.

16   The difference between the 371 and 312 were duplicate

17   cases and/or cases that have been withdrawn and pulled

18   out of the system since the one percent were selected.

19                  There are, as of this morning, 312

20   authorizations that are still outstanding.  We have

21   approximately 61 of them at our office to send.  It's

22   been in flux because the mail -- *(inaudible)* -- the

23   holiday weekend.

24                  We had sent the last batch with a round

25   number of 80.  We try not to give Ms. Snead and

1    Ms. Cooper numbers that are not quite exact, to try to

2    send them in batches of 100 or 150, or whatever.  We

3    had 80 available when we sent them two weeks ago.

4         We have been doing an outreach again, a

5    renewed outreach in the last ten days, all to

6    individual firms requesting status on outstanding

7    forms, and we have been getting additional updates

8    about closed cases or additional forms since then.

9         We normally send a batch each month.  We're

10   going to send another round of probably 100 forms

11   hopefully next week.  We've sent to date I think 1142

12   total forms.  I know that we've needed the forms

13   before then.  We're running into a lot of situations

14   with firms where they thought they had closed the case

15   with BrownGreer but the proper paperwork was not

16   submitted to get the case off of the administrative

17   docket, so we have been coordinating with various

18   firms on that as well.

19        I can give you more information on the status

20   of that, but there are forms that have not yet been

21   returned to leadership to be submitted to the VA.

22        **JUDGE RODGERS:**  Yeah, well, this is troubling

23   to me.  So I understand the reasons that you have

24   given, and I'm not saying they are not valid reasons.

25   But I'm not very sympathetic to people who are just

1    not responding to your request for these

2    authorizations.

3          It's important.  And, I mean, that's why we

4    identified this one percent pool, this pool is

5    important.  They're all representative plaintiffs and,

6    like I said -- I'm just going to leave it at they're

7    important.

8          So what do we need to do to figure out

9    whether these 312 outstanding authorizations --

10   whether those are cases that need to be taken off the

11   administrative docket, you know, or whether they need

12   an order from the Court to say either get your signed

13   authorization in in the next ten days or your case is

14   going to be dismissed.

15         **MS. HOEKSTRA:**  I believe, given the outreach

16   that we have been doing, we have made it clear that

17   there's a very short turnaround for this that's been

18   going for several months, and that, if the Court were

19   to issue an order along those lines with a 10- or

20   14-day turnaround, we would either have a significant

21   volume of forms back very quickly -- whether the VA

22   would then want them redone because there were

23   problems with them is different question -- or we

24   would have a significant volume of cases that we'd

25   submit the paperwork to BrownGreer to close out their

1    case.

2            I do know that there is a slight lag between

3    the time that the forms, who are like dual-rep'd, for

4    one case to be closed and another to be kept open, or

5    whatever it might be, to be submitted.  So we have

6    been working closely with Roma and Jake at BrownGreer

7    to ensure that, with this one percent, that, if there

8    is a question as to whether it's a dual-rep or whether

9    it's open, that we're reaching out to the correct

10   firms as quickly as possible.

11          **MR. AYLSTOCK:**  Judge, I think an order is

12   probably timely at this point, maybe 14 days.  But I

13   agree with you that these are important, and I'm happy

14   to move it along, but an order might help.

15          **JUDGE RODGERS:**  Well, please send me a list

16   of the 312 -- I'm going to need the list of those

17   cases -- or Roma can -- somebody send me those cases

18   of who they are.

19          **MS. HOEKSTRA:**  Yes, Your Honor.

20          **JUDGE RODGERS:**  And I'll need their counsel.

21   And then -- I guess I'm pausing because, Jen,

22   something you just said about the VA may not accept

23   the form.  What are you hinting at there?

24          **MS. HOEKSTRA:**  I'm sorry.  Every time we

25   submit a batch of forms, whether it's 100, 200, 300,

1   we receive a communication back from the VA within

2   like a 10- to 14-day period from Ms. Snead about what

3   she views as potential flaws, whether she doesn't

4   think the signature actually looks like a signature or

5   looks like a scribble, whether she thinks there might

6   be a problem with one of the fields that was filled

7   out, and then we go back to the firms and do

8   additional outreach.

9        And I'd also like to make it clear that we

10  check those forms ourselves before we submit them.

11  It's not like we don't do that, you know, quality

12  control.  It's just the VA is very specific in terms

13  of what they have been accepting and what they haven't

14  for these authorizations.

15       **JUDGE RODGERS:**  So we have or have not done

16  Privacy Act orders with these -- I know we did with

17  the DoD.  What have we done with the VA on this?

18       **MS. HOEKSTRA:**  There are Privacy Act orders

19  for these, for the 1509, and there's also Privacy Act

20  orders that these were authored under previously.  In

21  addition to the Privacy Act orders, the VA had

22  requested the form be filled out specifically with

23  information because of the mental health, sickle cell,

24  and HIV indications.  And we have been getting the

25  actual authorizations for these one percent beyond the

1  Privacy Act order and the spreadsheet of information
2  we had already provided.
3      **JUDGE RODGERS:**  Right, that's what I thought,
4  which is just -- I believe it's more than is required,
5  but we have done that in a cooperative manner and --
6  but I guess I'm a little distressed to hear that
7  you're being met with resistance with a signed
8  authorization.
9          These are wet signatures, right?  These
10  aren't copies or electronic -- these are actual
11  signatures, right?
12      **MS. HOEKSTRA:**  Actually, we have the wet
13  signatures.  We have been sending the wet signatures.
14  The VA did come back to us and tell us that, due to
15  COVID, they were willing to accept electronic versions
16  of them.  So the last couple of months' transmittals
17  have been electronic, although we are keeping the hard
18  copy in case the VA comes back to us with questions
19  about any of them.  But it's not a significant volume,
20  but I'd say it's probably one to two percent of the
21  releases they do have questions or concerns about and
22  come back and have us get it re-executed because they
23  also have concerns that, if information is changed
24  without initials, it may not be by the actual
25  servicemember but it may be by their attorney or

1    whoever.  So we have been cooperating with them on

2    that in terms of getting the authorizations where

3    there are questions re-executed.  In fact, I think we

4    did two this week for the last batch that we sent

5    over.

6         **JUDGE RODGERS:**  How long is that taking you

7    when you are notified of the deficiency?

8         **MS. HOEKSTRA:**  That process is probably

9    somewhere between, you know, a week to 10 days,

10   depending on if the law firm that we're communicating

11   with needs to get a re-executed VA authorization or if

12   they had their client do more than one at a time and

13   have one in their office, however the case may be, to

14   ensure that we have the correct one back.

15        **JUDGE RODGERS:**  Okay.  So I would like in the

16   future -- when you're met with resistance or questions

17   from Jacqui Snead or Ms. Cooper, whoever is saying

18   this authorization doesn't meet their requirements, I

19   would like you to notify Judge Herndon of that and he

20   can notify me, and I'm going to get with Ms. Snead or

21   Ms. Cooper, whatever the case may be.

22        Because we have got signed authorizations and

23   you have a Privacy Act order.  That is plenty

24   sufficient.  So we just shouldn't have to be redoing

25   work.  This is enough work on the front end, and we

1    don't need to have to do additional work.

2          So, depending on what their objection is, but

3    most likely I will have a conversation with Jacqui

4    myself about it.  But first and foremost, we need to

5    get the authorizations.  If I can get the 312

6    plaintiffs -- and I guess Roma can send those out; I

7    think logistically that's probably how it would work

8    is I'll do an order -- well, she has the names.  I

9    guess I can just do one order that's entered through

10   BrownGreer for all of those cases.

11         I'll need to talk to our clerk's office about

12   that.  So sit tight.  I'll let you know if I need that

13   information from you or not.  But one way or the

14   other, I'm going to enter an order, and I'll give them

15   14 days or I'm going to dismiss the case, and they're

16   not going to be able to file on the administrative

17   docket.

18         **MS. HOEKSTRA:**  Understood.  And then, most of

19   these cases are filed on the administrative docket,

20   Your Honor, because they have been in MDL Centrality

21   for more than 14 days, but yes, I do understand what

22   you're indicating there.

23         **JUDGE RODGERS:**  Okay.  Well, then, they will

24   be dismissed from the administrative docket and they

25   will be removed from BrownGreer.

**MS. HOEKSTRA:**   Yep.   And then I provided some
of this information to Judge Herndon, I believe,
probably in response to your request earlier today.

One of the other points that I wanted to make
clear is that there was a Privacy Act order and the
DoD had the information they indicated they would
need.   However, for the one percent, we have received
very, very few DoD productions, and that's going to be
a topic on the next joint call that we have with the
VA and the DoD.

**JUDGE RODGERS:**   So, let me see, I think I may
be looking at that.   So you're not getting the DOEHRS
data?

**MS. HOEKSTRA:**   For the one percent, no, Your
Honor.

**JUDGE RODGERS:**   Okay.   That's helpful to
know.

And, Judge Herndon, if you'd keep me posted
after you have that next call.   Is that with Maj. Kim?

**MR. AYLSTOCK:**   That's with Jacqui and Maj.
Kim.

**JUDGE RODGERS:**   Okay.   Because the last time
I spoke with Maj. Kim, which has been -- you know,
it's been some time -- probably two months ago, the
information I heard from her on that call was very

1  encouraging, and I felt like DoD was really moving and

2  making progress, and I was hopeful about, I mean, even

3  about the one percent or the 1500.

4       So I'm curious why there's been this stalling

5  or delay.  Okay.  Well, I'm sure you'll hear about it

6  and let me know.

7            **MR. AYLSTOCK:**  Yes, Your Honor.

8            **JUDGE RODGERS:**  Anything else from anyone

9  that we need to discuss?  Judge Jones?

10           **JUDGE JONES:**  Nothing further from me.

11           **JUDGE RODGERS:**  Judge Herndon?

12           **JUDGE HERNDON:**  No, nothing further.  Thanks.

13           **JUDGE RODGERS:**  Plaintiffs?

14           **MR. AYLSTOCK:**  Nothing further, Judge.  Thank

15  you.

16           **JUDGE RODGERS:**  Kim or Mike?

17           **MR. BROCK:**  I was just going to mention one

18  thing, just as a -- I guess I'll put it in the

19  category of a marker.  And it relates to one of Kim's

20  comments and then Your Honor's request for an

21  organized way of looking at the information that we

22  have requested by subpoena from the Government.

23           We do have a number of requests outstanding

24  to the Government related to the noise exposure

25  experienced by servicemembers.  And our understanding

1    from the regulations and even from some of the public
2    literature that cites to some of the data is that the
3    Army does, on a base-specific basis, calculate what an
4    individual's exposure to different kinds of noise
5    would be on the base, like, if they were working in
6    the area of a generator or if they were on the firing
7    range, that type of thing.

8            So we understand that that information should
9    exist, it should exist on a base-specific kind of way,
10   and it's information we have been going back and forth
11   trying to get our hands on in order to formulate our
12   defense, which is, you know, the sort of -- one of the
13   defenses is the alternative exposure issue.

14           So that -- Your Honor's request for that is
15   timely and it's -- you know, we are very, very
16   interested in that.

17           Likewise, we understand -- and I don't think
18   this is in dispute -- the Army also has studied the
19   impact of different weapon systems with regard to the
20   exposure that those weapon systems create for the
21   soldiers.  You know, it was a rocket-fired -- a
22   shoulder-fired rocket, you know, what decibel level
23   would one expect if you were doing that.

24           And the Army has studied that and has that
25   data.  We have been trying to get that for ages.  We

1  have tried to reduce it down to the weapon systems.

2  This goes back a while; it probably needs some

3  updating.  But the Plaintiffs identified in their

4  census forms here are the weapon systems that I

5  utilized.

6         I tried not to ask for every single weapon

7  under the sun.  But if we could get the weapon systems

8  that relate to the first bellwether cases, that's very

9  important to us.

10        And the point -- and we understand about

11 meeting the Court's deadline with regard to the expert

12 reports, but the place where that ties in is to the

13 causation issue with regard to a servicemember's

14 exposure -- what was the overall exposure, what was

15 the protected exposure, what was the nonprotected

16 exposure.

17        And so I just wanted to bring to your

18 attention, we hear you loud and clear on meeting the

19 expert dates, but this is a category of information

20 that is very, very important to our defense.  And we

21 have now subpoenaed -- we have got an outstanding

22 subpoena for the information; I think was served maybe

23 September 2nd or 3rd by mail.  I think we originally

24 served it on Jacqui and she refused service, so we did

25 it again by certified mail.  Time for objecting to

1    that has not come yet.  I don't know where that

2    objection will be filed.

3            But I just wanted to mention it is a very,

4    very important issue to us and kind of ties into a

5    couple of topics we have discussed today.

6            **JUDGE RODGERS:**  Well, I appreciate that

7    overview.  I suspect, based on comments I have heard

8    previously in the case from Maj. Evans, that there

9    will be a fight about this.  I think the Army

10   perceives you as wanting information about their

11   weapons systems design.

12           And so I'm pleased that you have issued the

13   subpoena, and that's why I asked Mark to give me

14   another chart for this separate category of

15   information, whether it be a deponent or record.  It

16   needs to be framed so that some court somewhere can

17   resolve it.  Because I recognize that this is

18   important to 3M, this information.

19           I don't see you as wanting information about

20   the stinger missile design.

21           **MR. BROCK:**  Correct.

22           **JUDGE RODGERS:**  But on the other hand, I also

23   don't know if -- and you say you have researched this

24   and you do know, and I'm not questioning that.  But I

25   don't know whether the military keeps that kind of

information.  You say they do.  I know I have heard

Maj. Evans suggest to me that they don't keep it as

you have just described.  But it sounds like you've

done research and believe that there is that

information maintained somewhere by the military,

maybe at the base level.

**MR. BROCK:**  Yeah.  To be clear, my knowledge

of that is from individuals we have talked to about

it, but also within the literature at different points

in time that data is referenced.  What they house

today and where that would be, I didn't mean to

represent that I know what it is.  But I do know that

it has been referenced publicly in papers and that

type of thing.

**JUDGE RODGERS:**  Well, and I believe that

might have been one of the responses that the DoD gave

to at least one of these types of requests was that

it's publicly available information.  Is it not?

**MR. BROCK:**  Well, I don't -- actually, I

don't recall that.  They may have said that.  There is

some information that is reported with regard to

weapons systems.  And different people assigned

different values to those, but we're interested in

what the military says about what those exposures are

when it comes to the weapons systems.

1          As it relates to noise on bases and the Army

2    meeting the regulatory requirements under the Army

3    hearing conservation program, there are very specific

4    things that they are supposed to be doing.  And we are

5    interested in seeing those records, to the extent that

6    they exist.  They have not said to us they don't

7    exist.  That statement, to my knowledge, has not been

8    made.

9          **JUDGE RODGERS:**  Okay.  Well, so, it sounds

10   like, though, it's close to a posture where it's going

11   to be addressed by a court somewhere.

12         **MR. BROCK:**  Correct.

13         **JUDGE RODGERS:**  So as far as your expert

14   disclosure, you're going to need to go forward with

15   that.  And if you have to carve out this category,

16   then you can say that.  But it may be, Mike, that you

17   never get this information.  I mean, I don't know.

18   Don't read anything into that.  But I'm just saying

19   you may not.  It may not exist or -- I don't know.

20   But I'm not going to put off those expert disclosures

21   because of this issue.  You can supplement, just like

22   I said to the Plaintiffs.

23         **MR. BROCK:**  Understood.

24         **JUDGE RODGERS:**  Okay.  Anything else from

25   anyone?

1            *[No response.]*

2            Well, this was a good call.  Thank you all.

3    I appreciate everything.  And I will get prepared for

4    the 18th.  Have a good day.

5            **(Proceedings concluded at 1:28 p.m.)**

6            --------------------

7    *I certify that the foregoing is a correct transcript*
     *from the record of proceedings in the above-entitled*
8    *matter.  Any redaction of personal data identifiers*
     *pursuant to the Judicial Conference Policy on Privacy*
9    *are noted within the transcript.*

10

11   **_s/Donna L. Boland_                          _9-9-2020_**
     **Donna L. Boland, RPR, FCRR                   Date**
12   **Official Court Reporter**

13

14

15

16

17

18

19

20

21

22

23

24

25