**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

This Document Relates to All Cases
_____/

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

# ORDER

Pending before the Court is Defendants' Motion to Compel, filed August 21, 2020. ECF No. 1343. The instant motion raises discovery disputes between Defendants and three Bellwether Plaintiffs in Trial Group B (Brandon Adkins, Marcus Hensley, and Ronald Sloan). After Defendants filed their motion but prior to the Bellwether Plaintiffs filing their responses in opposition, the matters concerning Mr. Hensley and Mr. Sloan were resolved and are now moot. *See* ECF No. 1375 (as to Mr. Hensley); ECF No. 1377 (as to Mr. Sloan). The only remaining issue is one with which the parties in this multidistrict litigation are all too familiar—the production of a Bellwether Plaintiff's mental health and disability records. *See, e.g.*, ECF No. 1335 at 1–15 (providing a comprehensive summary of this "frequent subject of discovery litigation"); ECF No. 1258 at 11–12 (compelling the limited production of unredacted VA disability records).

Mr. Adkins has filed a response in opposition, ECF No. 1378, and Defendants, with leave of court, filed a reply memorandum, ECF No. 1384. Because, in the Court's view, Defendants' reply memorandum raised legal arguments and factual issues that Mr. Adkins had not previously addressed, the Court held a telephonic hearing on September 11, 2020, for the parties to present argument. ECF No. 1388.

For the reasons discussed on the record (which are fully incorporated herein) and those explained below, Defendants' motion to compel is due to be **GRANTED IN PART and DENIED IN PART**. The discovery disputes as to Plaintiffs Hensley and Sloan are moot, and Plaintiff Adkins must produce his unredacted mental health and substance abuse records. This order is a non-exhaustive recitation of the arguments made by the parties, as well as the Court's reasoning.

## I.     BACKGROUND

The undersigned recently explained the protracted procedural history related to the issue at hand—including Defendants' prior motions to compel and the Court's orders on the production and redaction of mental health records—in its order denying Defendants' most-recent motion for reconsideration. ECF No. 1335 at 1–15. Relevant here, this Court has held that Defendants are not entitled to discovery of a Bellwether Plaintiff's

mental health records (from government or private health care providers) when that Plaintiff claims damages for garden-variety emotional distress (such as mental anguish, distress, and loss of enjoyment of life) because that Plaintiff has not placed his or her mental health in controversy.  ECF No. 1065 at 5–9; ECF No. 1108 at 14–15; ECF No. 1258 at 8–9.  This is a matter of procedural waiver and pleading.  ECF No. 1108 at 14.  The Court recognized that a Bellwether Plaintiff places his or her mental health in controversy when he or she intends to testify to a specific psychological diagnosis caused by using the CAEv2 or to offer testimony from a psychological expert on the same.  ECF No. 1065 at 7 n.2; ECF No. 1108 at 12–13; *see also* ECF No. 1154 (Pretrial Order No. 39 governing the procedure for withholding or redacting VA records concerning substance abuse or mental health issues).

Moreover, the Court has held that a Bellwether Plaintiff's Department of Defense and VA records concerning the identity, diagnosis, prognosis, testing, or treatment in connection with mental health or substance abuse issues were not relevant or proportional to that Plaintiff's diminished earning capacity claims and, therefore, not discoverable under Federal Rule of Civil Procedure 26(b)(1).  ECF No. 1258 at 11; ECF No. 1335 at 11, 21–22.  Integral to the Court's ruling was the Bellwether Plaintiff's

3

representation that his diminished earning capacity claims were "limited to damages of hearing loss caused by their use of the CAEv2." ECF No. 1258 at 11.  When Defendants moved for reconsideration, the Court rejected Defendants' attempt to advance new evidence and authority from a vocational expert, Michael Shahnasarian, Ph.D., because his opinions did not establish the relevancy of government medical records notating a party's history of or treatment for past substance abuse.  ECF No. 1335 at 21.  Additionally, the Court reminded Defendants they had access to Bellwether Plaintiffs' employment and medical (non-mental health) records, which should reflect problems with work performance and any physical manifestation of ailments that limit work participation or opportunities.  *Id.*

      Finally, the Court has addressed the discovery of a Bellwether Plaintiff's disability records from the Veterans Benefits Administration in three parts.  ECF No. 1258 at 11–12.  The Court held that any psychotherapist-patient privilege as to these records has been waived.  ECF No. 1258 at 12 (citing *Bosworth v. Dayton Heidelberg Distributing Co.*, 394 F. Supp. 3d 794, 795–96 (S.D. Ohio. 2019); *In re Grand Jury Investigation*, 114 F. Supp. 2d 1054, 1055–56 (D. Or. 2000)).  And a Bellwether Plaintiff's VBA disability records are relevant when that Plaintiff raises a claim for diminished earnings or earning capacity.  *Id*.  The Court

4

held as to Bellwether Plaintiffs Vernon Rowe and Denise Kelly, however, that they must produce only their VBA disability rating for an underlying mental health diagnosis, the diagnosis (if rated), and the general description of the diagnosis by the VBA (not including the specific circumstances giving rise to the diagnosis or treatment). *Id.* at 12–13. The Court concluded that this information would allow Defendants to make a reasoned inquiry into the Bellwether Plaintiff's disability rating for the purpose of assessing calculations of vocational damages without disclosing matters that are "far afield" from this litigation. *Id.*

## II. DEFENDANTS' MOTION, PLAINTIFF ADKINS' RESPONSE, AND DEFENDANTS' REPLY MEMORANDUM

Defendants seek to compel the production of Mr. Adkins' redacted mental health and substance abuse records from the Department of Veteran Affairs and Department of Defense, as well as his VBA disability records. ECF No. 1343 at 12–30. They offer several bases for their motion. Mr. Adkins stated, in his initial response to Defendants' Special Interrogatory No. 52,[1] that his use of the CAEv2 has caused "depression, mood disorder, and lethargy induced by sleep deprivation," and that he is

---

[1] Special Interrogatory No 52 asks Mr. Adkins to "[i]dentify All damages, losses, or expenses of Any nature whatsoever by category and the amount that You are claiming as a result of Your use of the CAEv2, including All events Described in the Master Long Form Complaint and Your Master Short Form Complaint." ECF No. 1348-8 at 4.

5

seeking damages for present and future diminished earning capacity (subject to expert proofs). *Id.* at 13. Defendants assert first that Mr. Adkins has placed his mental health in controversy by suggesting a causal connection between his use of the CAEv2 and his depression, mood disorder, and lethargy. *Id.* at 14–15. Defendants also contend that Mr. Adkins' mental health and VBA disability records—which include the VA's opinion as to his vocational impairment and his own prior statements as to the same—are relevant to his claims for diminished earning capacity. *Id.* at 15–26. Alternatively, Defendants challenge the sufficiency of Mr. Adkins' privilege log as deficient because he fails to describe adequately the records being withheld. *Id.* at 26–30.

Mr. Adkins argues that any redactions to his mental health and disability records are in accordance with this Court's prior orders on this issue, as described above. ECF No. 1378 at 1–2. Mr. Adkins says, in his response to Defendants' motion, that he has not placed his mental health in controversy because he specifically stated, in response to Defendants' Special Interrogatory No. 72, that he is not asserting a causal connection between his use of the CAEv2 and any specific, diagnosed mental health condition. *Id.* at 8–9. Notably, Mr. Adkins amended his response to Special Interrogatory No. 52, to state that he "now suffer[s] hearing loss

and tinnitus and the all the severe consequences attendant thereto including but not limited to frustration, sleep issues, focus issues, irritability, social isolation, and more; the categories of damages attendant to which include … (iii) diminished quality of life." ECF No. 1378-2 at 4.  As to his VBA disability records, Mr. Adkins avers that Defendants are not entitled to their wholesale production, only the VBA's disability rating for an underlying mental health diagnosis, the diagnosis (if rated), and the general description of the diagnosis.  ECF No. 1378 at 10–15.  Finally, Mr. Adkins says that Defendants' request for a revised privilege log is moot because he produced an updated privilege log and is no longer withholding any documents.  *Id.* at 17.

Defendants' reply memorandum addresses some of the arguments raised in Mr. Adkins' response, as well as supplemental disclosures made after the filing of the motion to compel.  ECF No. 1384.  Defendants contend that Mr. Adkins' claims for "frustration, sleep issues, focus issues, irritability, social isolation, and more" put his mental health in issue because they are symptoms of his substance abuse and mental health conditions, not his use of the CAEv2.  *Id.* at 3–4.  Additionally, Defendants assert that Mr. Adkins' mental health and substance abuse records are relevant to a "new theory of economic damages for reduced family services

7

contribution," valued between $1.5 million and $2.5 million for past and future damages. *Id.* at 4–5. Defendants say these unredacted records would show Mr. Adkins' substance abuse and mental health issues are the "real cause" of reduction in parenting and spousal support. *Id.* at 5. Finally, Defendants argue that a revised privilege log or *in camera* review remains necessary (and is not moot) because Mr. Adkins' supplemental production included additional redactions of relevant information. *Id.*

After Defendants filed their reply memorandum on September 8, 2020, and prior to the Court's September 11, 2020, hearing, Mr. Adkins amended his response to Special Interrogatory No. 52 to state, in pertinent part:

> I suffer from frustration as result of my hearing loss and the constant humming and buzzing in my ears (the tinnitus), sleep issues as a result of the tinnitus, focus issues as a result of hearing loss and tinnitus, irritability caused by my hearing loss and the migraine headaches I get due to the tinnitus, and social isolation as a result of my not being able to hear others well, all of which I attribute to my use of the CAEv2. I am not claiming that the CAEv2 caused any of my diagnosed mental health conditions; instead, my hearing loss and tinnitus present me with additional health-related burdens that I must overcome distinct from my mental health diagnoses.

### III.   LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery limited to nonprivileged matter that is "relevant to any party's claim or defense and

8

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Determining whether discovery is proportional requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Where, as here, a party objects to the production of documents or an interrogatory, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B). This Court has "broad discretion … to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 26(b)). The Court will consider only those objections to discovery that were timely raised and are relied upon in response to the motion to compel. *Moses v. Halstead*, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 n.1 (M.D. Fla. 1990). The objecting party

typically bears the burden to substantiate its objections. *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005).

If a party objects to the relevance of propounded discovery requests, the objecting party must establish that the requested discovery (1) is not relevant under Rule 26(b)(1), or (2) is marginally relevant, such that production would cause potential harm outweighing the presumption in favor of broad disclosure. *Am. Fed'n of State, Cty. and Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011); *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000). If the requested discovery's relevance is not apparent, however, the party seeking the production must demonstrate relevancy. *S.E.C. v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 666 (S.D. Fla. 2012).

## IV.   DISCUSSION

Mr. Adkins' case presents a closer question on the discovery of mental health and substance abuse records than those previously addressed in this litigation. The Court concludes that Mr. Adkins has placed his mental health in controversy and, therefore, waived any psychotherapist-patient privilege applicable to his records. The Court's reasoning is straightforward.

10

Because mental health records are generally subject to the psychotherapist-patient privilege, *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), the majority rule is that the discovery of these records hinges on whether the plaintiff has waived that privilege by placing his mental health in controversy, *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553 (N.D. Ga. 2001). A claim for garden-variety emotional damages (mental anguish, distress, and loss of enjoyment of life) will not suffice. *Id.* Instead, the plaintiff places his mental health in controversy by alleging a separate tort for distress, claiming a specific psychiatric injury or disorder, or offering expert testimony on the same. *Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012); *see also* ECF No. 1065 at 7 n.2; ECF No. 1108 at 12–13.

Here, the Court is left to decide on which side of the garden gate Mr. Adkins' damages claims fall. For starters, words matter. Mr. Adkins says he is seeking damages for "frustration," "sleep issues," "focus issues," "irritability," and "social isolation." These are more than the typical garden-variety complaint of mental anguish or distress. *See Jakes v. Boudreau*, No. 19-C-2204, 2020 WL 5297007, at *2 (N.D. Ill. Sept. 4, 2020) ("Garden variety damages arise from the negative emotions that a plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct, as opposed to the resulting symptoms or conditions the plaintiff

11

may have suffered (*e.g.*, sleeplessness, nervousness, depression)." (alterations adopted)).; *Trans v. Wells Fargo Bank, N.A.*, No. 3:15-cv-979-BR, 2017 WL 1234131, at *3 (D. Or. Jan. 20, 2017) (allegations of "frustration, hopelessness, and other negative emotions" put the plaintiff's mental health in issue).

Indeed, as Defendants point out, these are symptoms of identifiable mental conditions without the diagnoses. That is also enough to place Mr. Adkins' mental health in controversy. As another federal court has recognized:

> The rule distinguishing between "garden variety" claims for emotional damages and claims in which the plaintiff puts [his] psychological well-being into issue is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, condition, *or symptoms* into a case and expect to be able to prevent discovery of information relevant to those issues.

*Awalt*, 287 F.R.D. at 418–19 (emphasis added). This Court agrees that it would be unfair for Mr. Adkins to claim emotional damages based on these precise symptoms without allowing Defendants the opportunity to discover his mental health records.

What's more, the Court has considered Mr. Adkins' allegations in context because assigning the weight of wavier to any single word would be a mistake. *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D.

12

612, 615 (N.D. Fla. 2016).  Although Mr. Adkins states unequivocally in response to Special Interrogatory No. 72 that he has not identified a specific diagnosed mental health condition caused by his use of the CAEv2 and does not intend to offer expert testimony to support his emotional damages claims, ECF No. 1378-2 at 7, he says in his most-recent response to Special Interrogatory No. 52 that his hearing loss and tinnitus present him with these symptoms as "additional health-related burdens."  Defendants tell a different story based on Mr. Adkins' records already available to them.  ECF No. 1384 at 1–2.  That is, they argue these symptoms are manifestations of his diagnosed mental health conditions and past substance abuse.  *Id.* at 2.[2]  This is reasonable dispute over the causal connection for these symptoms (and the accompanying claim for damages).  Put simply, the Court is not persuaded that Defendants are seeking Mr. Adkins' mental health records as a means of attempting to dig up the roots of garden-variety emotional damages.

The Court concludes further that Mr. Adkins' substance abuse records (a species of mental health records) are relevant to his damages claims and, consequently, should be produced without redactions.  The

---

[2] It bears some weight that Mr. Adkins' initial response to Special Interrogatory No. 52 requested damages for "depression, mood disorder, and lethargy induced by sleep deprivation[.]"

13

Court agrees with Defendants' argument, ECF No. 1348 at 4–5, that the substance abuse history and treatment presented in this case may provide Defendants with an alternative cause for the symptoms described above or a reasonable basis to challenge Mr. Adkins' accounting of present and future diminished earning capacity.

This leaves Defendants' request to compel production of Mr. Adkins' unredacted VBA disability records. These records are not privileged and are relevant because Mr. Adkins raises a claim for present and future diminished earning capacity. ECF No. 1258 at 12. Unlike in other cases addressed by the Court, *Id.* at 12–13, Mr. Adkins has placed his mental health in controversy and his substance abuse history and treatment are relevant. Mr. Adkins, therefore, must produce these records in accordance with the Court's rulings as to the discovery of his mental health and substance abuse records. In short, the Court will not limit the production of Mr. Adkins' VBA disability records to the VBA disability rating for an underlying mental health diagnosis, the diagnosis (if rated), and the general description of the diagnosis by the VBA.

Finally, the Court denies Mr. Adkins' request for an *in camera* review of his redacted records. "*In camera* review is not to be used as a substitute for a party's obligation to justify its withholding of documents. Such a

procedure is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1288 n.4 (S.D. Fla. 2012). Not only has Mr. Adkins not put forth evidence to justify his request, the Court has concluded already that any psychotherapist-patient privilege has been waived and the records are relevant to his damages claims. If there are matters in Mr. Adkins' mental health or substance abuse records "far afield" from the issues in this litigation, the appropriate procedure is to file a motion for protective order. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]").

## V.     CONCLUSION

In sum, Mr. Adkins has placed his mental health in controversy by claiming damages for symptoms of identifiable mental health conditions. This waives any psychotherapist-patient privilege applicable to his mental health records, and his unredacted records must be produced. Mr. Adkins' substance abuse records are also relevant (and thus discoverable without redaction) because they may provide an alternative cause for the

symptoms described above or a reasonable basis to challenge Mr. Adkins' accounting of present and future diminished earning capacity.

Accordingly, it is **ORDERED** that Defendants' Motion to Compel, ECF No. 1343, is **GRANTED IN PART and DENIED IN PART**.  The discovery disputes as to Plaintiffs Hensley and Sloan are moot.  Plaintiff Adkins must produce the unredacted mental health and substance abuse records to Defendants **no later than Monday, September 14, 2020, at Noon (Eastern Time)**.  The unredacted records are subject to the parties' confidentiality agreement and protective order.

**DONE AND ORDERED** this 14th day of September 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge