**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG     )     Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,    )
                                  )     Pensacola, Florida
                                  )     September 22, 2020
                                  )     10:15 a.m.
                                  )
                                  )
_____  )



**SIXTEENTH CASE MANAGEMENT CONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-23)

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*1 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

## A P P E A R A N C E S

**JUDGE DAVID R. HERNDON** (ret.)

**FOR THE PLAINTIFFS:**        **BRYAN F. AYLSTOCK, ESQUIRE**
                              **JENNIFER HOEKSTRA, ESQUIRE**
                              Aylstock, Witkin, Kreis & Overholtz
                              17 E Main Street, Suite 200
                              Pensacola, Florida  32502

                              **MICHAEL A. BURNS, ESQUIRE**
                              Mostyn Law
                              3810 W Alabama Street
                              Houston, Texas  77027

                              **SHELLEY HUTSON, ESQUIRE**
                              Clark Love & Hutson, GP
                              440 Louisiana Street, Suite 1600
                              Houston, Texas  77002

                              **CHRISTOPHER A. SEEGER, ESQUIRE**
                              **DAVID R. BUCHANAN, ESQUIRE**
                              Seeger Weiss, LLP
                              55 Challenger Road, 6th Floor
                              Ridgefield Park, New Jersey  07660

**FOR THE DEFENDANTS:**        **ROBERT C. BROCK, ESQUIRE**
                              Kirkland & Ellis, LLP
                              1301 Pennsylvania Avenue NW
                              Washington, D.C.  20004

**MICHELLE SIX, ESQUIRE**                    **KIMBERLY BRANSCOME, ESQUIRE**
Kirkland & Ellis, LLP                        Dechert, LLP
601 Lexington Avenue                         633 W 5th Street, Suite 4900
New York, New York 10022                     Los Angeles, California  90071

**MARK J. NOMELLINI, ESQUIRE**               **LARRY HILL, ESQUIRE**
Kirkland & Ellis, LLP                        **CHARLES F. BEALL, JR., ESQUIRE**
300 N Lasalle                                **HALEY J. VANFLETEREN, ESQUIRE**
Chicago, Illinois  60654                     Moore, Hill & Westmoreland, PA
                                             350 W Cedar Street, Suite 100
                                             Pensacola, Florida  32502

1              P R O C E E D I N G S

2              **THE COURT:**  Good morning.  I believe we have worked

3    out some of our technical issues this morning.

4              Let me welcome you all to the Sixteenth Case

5    Management Conference in the 3M Combat Arms Earplug Products

6    Liability Litigation.  This is MDL 2885.

7              I have a number of attorneys present here in the

8    courtroom; there are a number on the video.  I believe there's

9    probably also those who are present by telephone.  Let me start

10   with those in the courtroom.

11             For 3M, because smaller numbers over here, I have Mr.

12   Hill, Ms. VanFleteren, and Mr. Beall.  Good morning.

13             For the Plaintiffs, I have Mr. Aylstock, Mr. Seeger,

14   Mr. Buchanan, Ms. Hoekstra.  I know others are present and I

15   met with others this morning as part of the preconference

16   meeting.  There are a number, as I said, on the video and by

17   telephone, of lawyers.

18             Let me just ask, if you speak this morning and address

19   the Court, just identify yourself when you do.  I'm not going

20   to go through and recognize everyone.

21             However, I will recognize our prominent judges, Judge

22   Jones and Judge Herndon.  I see Judge Herndon.

23             Judge Jones, if you speak, I'll see you, too.  Are you

24   there?

25             **JUDGE JONES:**  I am present.

1    **THE COURT:**  See how that works?  That's amazing.
2    Good, good.

3    I think that what I've heard is, if you speak and then
4    when you stop speaking, you're going to stay prominent until
5    someone else speaks.  Okay, great.

6    So a lot discussed this morning, had a productive
7    preconference meeting.  Let me, as I do customarily in the
8    CMCs, is just walk through the agenda.  We did post the agenda
9    this time.  Hopefully you all saw that in advance of today.  It
10   was posted on the MDL website.

11   I'll go through my notes from the preconference
12   meeting that stem from the agenda, and then I'll ask each side
13   to address anything that I've overlooked.

14   We started off this morning discussing an item on the
15   agenda dealing with government discovery, which is always a
16   prominent issue in this litigation.

17   As you know, we discussed this at our last conference.
18   There have been subpoenas issued by 3M for government witness
19   depositions for current -- primarily we're talking here about
20   current government employees whose depositions the parties need
21   to take.

22   In turn, the Government has filed a number of Motions
23   to Quash in various jurisdictions around the country.  Those
24   Motions to Quash number -- I believe there are ten in number.
25   One was resolved cooperatively through the efforts of the

1    parties and the Government.  That one has been resolved.  That

2    was in the Western District of Texas.  So that takes the number

3    to nine pending.

4            One of those has been actually formally transferred

5    here based on -- 3M has filed a number of Motions to Transfer

6    in those courts and intends to file Motions to Transfer in all

7    of the courts in which a Motion to Quash by the Government is

8    pending.

9            Once those cases have -- typically they're given a

10   miscellaneous case number in those districts and then they'll

11   file Motions to Transfer.  But the Middle District of Florida

12   did in fact transfer a Motion to Quash filed in that district.

13   I'm not sure yet whether it's actually reflected on our docket.

14           And I'm just remembering that I promised to make

15   copies of that order and I forgot to do so.  So, those of you

16   who want copies of that order who don't have it, if you'll sit

17   tight after the CMC, I will go make those copies and make sure

18   you have them, although I think Mark Nomellini was going to

19   email that around, I think, to the Plaintiffs.

20           **MR. AYLSTOCK:**  He did already, Your Honor.

21           **THE COURT:**  So you're good?

22           **MR. AYLSTOCK:**  Yes, Your Honor.

23           **THE COURT:**  Okay.  So that matter has been transferred

24   to this Court.  Once it appears on our docket, it will be given

25   a miscellaneous case number.  I don't know if it will be filed

1    in this litigation or if -- that will be up to the clerk's

2    office.  But it will be referred by me to Judge Jones.  Judge

3    Jones will handle that motion on order.

4            Judge Jones was going to give the Defendants an

5    opportunity, obviously, to respond to the Motion to Quash.  3M

6    hasn't had that chance yet to respond.

7            I did just learn, Mr. Nomellini, you have asked until

8    September 29th, which is Tuesday, as opposed to the 25th to

9    respond.

10           Judge Jones, is that acceptable to you?

11           **JUDGE JONES:**  That's fine.

12           **THE COURT:**  Okay.  Then that will be the response

13   time.

14           Now, one thing, Bryan Aylstock, you raised this

15   morning that I didn't follow up with you all on.  You indicated

16   that you may want to be heard on some of these Motions to Quash

17   that get transferred here.

18           Did I hear you correctly?

19           **MR. AYLSTOCK:**  I think that would be the rare

20   occasion.  But there may be one or two from what we've seen of

21   the Government response that the PSC may want to weigh in on.

22   I don't know that that's the case.  I'd like to see what the

23   response is.

24           **THE COURT:**  Okay.  Well, if you do, just act quickly

25   in letting Judge Jones know that, because he won't know whether

1    you want to respond or not.

2              **MR. AYLSTOCK:**  Absolutely.

3              **THE COURT:**  All right.  I did also ask 3M if they

4    would modify their deposition chart to include reference to the

5    district in which the Motion to Quash is pending for a

6    particular deponent.

7              And Mr. Nomellini, I believe, said they would take

8    care of that.

9              **MR. NOMELLINI:**  Yes, we'll do that, Judge.

10             **THE COURT:**  All right.  Thank you.

11             There was some discussion -- actually, I raised this

12   issue this morning with the parties, I raised it both in terms

13   of the Government discovery as well as corporate discovery,

14   both of which had deadlines, as you all know, of September 1st

15   for completion.  Obviously, discovery has continued beyond

16   September 1st.

17             It was my intent, as far as the Government discovery,

18   that 3M not be prejudiced in any way by the Government's delay

19   in responding --

20             *(Electronic echoing difficulties.)*

21             Oh, I really don't like hearing myself when I talk.

22             Is everybody muted?  Unless you're speaking, if you'd

23   please hit your mute button.  Thank you.  I'm not sure if that

24   was the problem, but I think it's been corrected.

25             So I did not ever want 3M to be prejudiced in terms of

1    taking these depositions of these government witnesses by the

2    Government's delay in responding to the *Touhy* requests that

3    were made and that process we went through very cooperatively

4    with the Government for so long.  We then entered into a more

5    formal process, as you know, with subpoenas, now, in turn,

6    Motions to Quash, Motions to Transfer, and so there has been

7    considerable delay.  And for that reason, those depos,

8    obviously, are being scheduled beyond the September 1st

9    deadline.

10          There's no problem with that.  I just raised an issue

11   wanting to make sure that there were not discovery depositions

12   being scheduled for witnesses who were not the subject of a

13   *Touhy* request as of September 1st.

14          And we had some discussion about this, and I think

15   everyone is on the same page.  The Plaintiffs, same issue in

16   terms of corporate discovery.  The 30(b)(6) depos have extended

17   beyond September 1st.  We discussed this, actually, I think at

18   the last CMC.  There's good cause for that.  They are going to

19   be completed this week.

20          And then, the first full week of October they expect

21   to complete the sales reps depositions.  I believe there may

22   still be some information back and forth on those sales reps

23   and which reps called on which bases, and that meet-and-confer

24   is still proceeding.  But everyone knows that D-day is 10/9, so

25   I think everyone is working hard to get those depositions

1    scheduled by that deadline.

2              I'm jumping around just a little bit.  I'm following

3    my notes as opposed to tightly to the agenda.

4              There was also a motion -- back to Motions to Quash

5    and motions in other districts, there was a motion filed in the

6    District of Arizona by TCA.  Top Class Action filed a Motion to

7    Quash a subpoena that was issued -- I think we talked about

8    this last time -- by 3M.  There's a Motion to Transfer to this

9    Court filed in Arizona.  3M has opposed that.

10             There's also a related matter before the JPML.  I

11   believe the Plaintiffs must have filed a tag-along, and there

12   was a conditional transfer order entered by the JPML to which I

13   believe 3M has opposed.

14             So, this issue of 3M's subpoena to TCA is pending

15   before two courts.  I'll refer to the JPML as a court.  And I

16   also -- I think the Plaintiffs have filed a Motion to Intervene

17   in the Arizona matter.  I also think there may be a Motion to

18   Stay the Arizona proceedings while the JPML decides the issue

19   before it.  Rather complicated.  Just wanting to let everyone

20   know that that related litigation is ongoing and is not before

21   this Court at this time.

22             Since we are talking about issues in other courts --

23   we did not discuss this this morning earlier, but I will raise

24   it now if someone can address it -- that is the Minnesota state

25   court litigation.

1          I believe 3M's counsel, Benjamin Hulse, is on.

2          **MR. AYLSTOCK:**  Mr. Paul is here, Your Honor.

3          **THE COURT:**  Mr. Paul is also here.

4          Mr. Paul, you have the *Graves* case, correct?

5          **MR. PAUL:**  Correct, Your Honor.

6          **THE COURT:**  Do you have any of the other plaintiffs

7    cases in Minnesota?

8          **MR. PAUL:**  I have all that I believe have been

9    remanded, which I think are six or seven cause numbers at this

10   point.  And then there's other cases pending.  I'm not the only

11   one with cases pending in the District of Minnesota --

12         **THE COURT:**  Right.  I have 70 or so of those that are

13   the subject of a Motion to Remand.  My order will be entered

14   very soon on that.

15         Could I get an update from you?  I don't mean to put

16   you on the spot.  But, if you don't mind, what's going on in

17   your litigation in Minnesota?

18         **MR. PAUL:**  Sure, happy to.  Thank you, Judge.  That's

19   why I came.

20         So, there hasn't really been a lot of activity, at

21   least as far as the docket is concerned.  We have been --

22         **THE COURT:**  Could I stop you one moment?  I'm sorry.

23   Do you mind coming into the well and to the podium, because I

24   think, for everyone to hear you, you probably need a microphone

25   close by.  Thank you, Mr. Paul.

1      **MR. PAUL:**  So, at this point, we had a status

2   conference with Judge Fraser last week, I believe.  He's going

3   to, as this Court has been doing, start having monthly status

4   conferences.  We are starting to talk about some of the

5   pretrial orders that this Court has entered.  So, at this

6   point, we're trying to stay as coordinated as we can, enter the

7   same type of orders that Your Honor has entered, and get those

8   entered in the state court in Minnesota.

9          Other than that, we're just participating, catching up

10   on the discovery, and preparing the case for trial.

11          **THE COURT:**  Do you have an April trial date?

12          **MR. PAUL:**  March 29.

13          **THE COURT:**  March 29th, okay.  I haven't -- and this

14   is on me -- communicated with Judge Fraser in some time.  I

15   need to do that, and I will, just to touch base with him.

16          **MR. PAUL:**  We have been slowed, Your Honor, by -- so

17   there have been a number of remand orders entered by Judge

18   Tunheim.  But, for whatever reason, the mandate has gotten lost

19   in the mail and hasn't been entered back in the state court

20   docket to actually transfer jurisdiction.  And so, part of the

21   slow process there in Minnesota is awaiting those remand orders

22   that don't ever seem to hit the docket.

23          **THE COURT:**  What is the status of the *Graves* case in

24   the Eighth Circuit?

25          **MR. PAUL:**  It is up on appeal and -- initial briefs

1    have been filed.  I think there's still a reply brief to be

2    filed, and we have not gotten a setting yet for oral argument.

3    We got the initial notice from the Eighth Circuit asking us to

4    give conflict dates, so I think sometime, either the end of the

5    year very beginning of the year, that will be set for oral

6    argument.

7         **THE COURT:**  And Mr. Hulse -- I don't know if Mr. Hulse

8    is counsel for 3M in all of these Minnesota cases, but I'm

9    curious, have any of the other cases that have been remanded by

10   Judge Tunheim been appealed?

11        **MR. HULSE:**  Yes, Your Honor.  There's actually the

12   *Graves* case, that's fully briefed in front of the Eighth

13   Circuit.  And then there was a second order by Judge Tunheim

14   also going out to -- *(inaudible)* -- cases.  There were six

15   cases as part of that group.  And we filed our -- *(inaudible)*

16   -- filed appeal on the -- *(inaudible)* -- last week.  So I don't

17   know -- you know, it will be 90 days or so before that's fully

18   briefed.

19        But I agree with Mr. Paul, just based on the Eighth

20   Circuit's schedule, it's probably unlikely that we get a

21   hearing date before -- *(inaudible)* -- on the *Graves* appeal.

22        **THE COURT:**  And they haven't consolidated the appeals?

23        **MR. HULSE:**  You know, there actually is -- I just

24   looked at the docket the other day.  The cases are linked in

25   the docket on the clerk's office, but that doesn't necessarily

1    mean, based on our experience, that they will actually be --

2    *(inaudible)* --

3         **THE COURT:**   Okay.  Well, thank you.  That's helpful.

4    I appreciate the update from both of you.

5         Mr. Paul, could I ask one other thing.  And I don't

6    know if you two need to work together on this or not.  I'd like

7    -- and I know we have liaison counsel as well -- or Mr. Paul,

8    you are our liaison counsel.  But I think Mr. Barr or Mr. --

9         **MR. PAUL:**   Mr. Burns.

10        **THE COURT:**   -- Burns was also participating in that

11   role.

12        What I'm looking for is maybe an update -- and it

13   doesn't have to be anything fancy -- identifying the cases that

14   are in Minnesota right now, in Minnesota either district court

15   and subject to a Motion to Remand or have actually been

16   remanded and are back in state court.

17        **MR. PAUL:**   I have an Excel spreadsheet I can send Your

18   Honor.  It had been my intent, per the coordination order, to

19   send updates as those cases got sent back.  It's just the

20   mandate never got sent, and so I was waiting for the mandate to

21   be sent.  So every week I thought I would be sending you that

22   list of cases.  And since it never happened, I never sent the

23   email.  They seem to be just lost out there in space.  But I'll

24   go ahead and send the email with a list of both venues of cases

25   pending there so you see the whole picture.

1          **THE COURT:**  That will be great.  And I will look at it

2     with the caveat that the mandate may or may not have been

3     issued.  If you would do that, obviously, share it with 3M's

4     counsel.

5          **MR. PAUL:**  Of course.

6          **THE COURT:**  And then I'll certainly send it to Judge

7     Herndon and Judge Jones, but that will be helpful to get that.

8          Mr. Burns, you're standing.

9          **MR. BURNS:**  I will just be glad to help Mr. Paul

10    anything he needs, Your Honor.

11         **THE COURT:**  Very good.

12         Mr. Hulse, thank you as well.

13         **MR. HULSE:**  Thank you, Your Honor.

14         **THE COURT:**  Back to government discovery.  3M, and the

15    Plaintiffs as well, but probably largely 3M because 3M is the

16    one that's trying to take these depositions primarily, they

17    have been working sort of informally with the Government and

18    very cooperatively making efforts to comply with everything the

19    Government is asking of them to get these depositions scheduled

20    notwithstanding the subpoenas and the Motions to Quash and

21    Motions to Transfer.

22         Like I said, one of those Motions to Quash was

23    actually resolved in a cooperative fashion, and so there's been

24    an effort to continue that with some regular telephone

25    communications with the Government.

1            I applaud the parties for continuing to try to work

2    cooperatively.  But, as you know, I have stressed to them to

3    not take their foot off the gas and don't withdraw those

4    subpoenas unless you have a date certain for the deposition of

5    that government witness.  I hope that you continue to make some

6    progress, but it sounds like it's very slow and painstaking, so

7    we may have to, again, resort to the more formal process.

8            Moving on then from government discovery.  Document

9    stipulations have been reached in the Trial Group A cases.

10   I've asked the parties to file those stipulations largely on

11   authenticity grounds 803(6), but to file those in some respect,

12   but anyway, to file those stipulations in the respective cases.

13           And Ms. Hoekstra has indicated that -- I think she's

14   working with Mr. Gunderson; is that right?

15           **MS. HOEKSTRA:**  (Indicating affirmatively.)

16           **THE COURT:**  -- will get that done.

17           Judge Jones has, thankfully, dealt with a number of

18   Motions to Compel in the bellwether cases, and there is one

19   remaining pending that's in the Rowe case; it's regarding a

20   Motion to Compel forensic analysis of his cell phone.  So

21   that's pending, but otherwise, those have been resolved.

22           Currently there is a dispute that the parties have --

23   and you'll see this on the agenda under Item 3B where it

24   references additional written discovery served on Group A

25   Plaintiffs.  Apparently 3M has served interrogatory requests,

1    maybe some requests for production as well, and then request

2    for admissions on the Trial Group A Plaintiffs.

3            Mr. Aylstock has taken issue with that.  I believe the

4    time to respond may be tomorrow, or it may have already passed,

5    but anyway, there's an objection.  The Plaintiffs believe that

6    these written discovery requests are outside the scope of PTO

7    28.

8            3M takes a different position, and I heard from Ms.

9    Branscome and Mr. Nomellini in that regard.  They believe these

10   are appropriate, and that Pretrial Order 28 did not limit 3M's

11   ability to submit this additional written discovery.  There was

12   a reference to Pretrial Order 42.

13           I did not have PTO 28 or PTO 42 with me this morning

14   in the conference, so what I have done is taken this under

15   advisement.  I'm not going to require formal briefing on it.  I

16   want to look back at my orders and test my memory and then

17   maybe also discuss this as well with Judge Herndon, and then I

18   told the parties I'd let them know my position.  So that's

19   under advisement.

20           We also discussed motion practice for the Groups C and

21   D trial groups, namely Motions to Compel in those cases.  The

22   parties are going to propose dates.  We already have the dates,

23   obviously, for A and B.  But for C and D, they're going to

24   propose some dates and allowing time for rulings before these

25   plaintiff depositions.

1          We also discussed -- this is Item No. 4 -- the status

2     of the Defense medical exams.  I believe Judge Herndon has been

3     involved with the parties on this issue as well.  Mr. Pennock

4     on the Plaintiffs' side has been largely involved.  Ms.

5     Branscome, I heard from her.

6          And it sounds like the parties are very close to

7     reaching a stipulation on the protocol and other matters

8     related to the Rule -- well, they won't be officially Rule 35

9     exams, but that's essentially what they are.  But if the

10    parties can reach the stipulation in these cases, then I don't

11    need to enter a Rule 35 order.  And so that's what effort is

12    ongoing right now.

13         There's also discussion about sequencing with experts,

14    and I'm leaving it in the parties' hands.  And they know I

15    would like to have a stipulation and agreement regarding the

16    timing and sequencing within the next couple of weeks.  And the

17    stipulations should include the protocol for the Defense exams,

18    and then there may be some modifications depending on what the

19    Plaintiffs exams -- what the protocol looks like for those.

20         Then Item No. 5 relates to a matter that was discussed

21    at our last conference.  Ms. Hoekstra has been driving and

22    handling very adeptly the VA authorizations and VA DoD

23    production for the plaintiffs both in the bellwether cases and

24    then now in also the 1%, which this item addresses.

25         I entered an order, some of you may be aware, to the

1    plaintiffs in the 1% pool who had not yet submitted their

2    authorizations for release of these records.

3              Apparently, as of earlier this morning, there were 105

4    outstanding authorizations.  I believe it was 360-plus, give or

5    take a few, at the time of my order.  A number have been

6    returned.  There's 105 outstanding, and I believe that number

7    was down to 101 a little while ago.  So they're coming in, and

8    I appreciate that.  Their deadline is September 28th or they

9    face a dismissal, as my order indicated.

10             We're not sure exactly why the Department of Defense

11   has not been as responsive as the VA has been in regards to the

12   1% production, and we're not exactly sure of the reason for

13   that.  It might be that some of these people did not serve in

14   active duty capacity.  I'm not sure.

15             But the parties have a call today with the Government,

16   including Maj. Kim, and that's going to be discussed, and we'll

17   try to get a better handle on that DoD production.

18             So I understand that there is a large universe of

19   plaintiffs or cases beyond the 1%, obviously.  I don't even

20   know what the number is up to today.

21             Does anybody know what the number is in BrownGreer?

22        **MR. BURNS:**  It's a little over 210,000, Your Honor.

23        **THE COURT:**  Mr. Burns says a little over 210,000.  I

24   should have checked that before today; I usually do.

25             So we are going to have a discussion about what to do

1    about the universe beyond the 1%.  We can only manage so much

2    at one time -- not only us, but the Government as well.  And

3    the Government, as you know, is a very important part of the

4    discovery in this litigation, and so we don't want to overwhelm

5    them.

6            If any of you read the VA's response many months ago

7    when we submitted a *Touhy* request with 100,000 names on it,

8    you'll understand what I'm saying.  They basically told us to

9    go pound sand, so we had to start over.  So we're trying to

10   proceed in manageable numbers.

11           And I told the parties at our next CMC -- and

12   hopefully I'll be at that CMC -- we can start a discussion

13   about how to proceed with production for more of the plaintiffs

14   on the administrative docket.  And we do need to do that, so

15   that is pending.  It has never been off my radar, but it's time

16   to start talking about it.

17           Anything else on that greater number, anything, Bryan?

18           **MR. AYLSTOCK:**  No, Your Honor.

19           **THE COURT:**  From the Defense?  Mr. Nomellini, I'll ask

20   you because you're prominent.

21           **MR. NOMELLINI:**  Nothing further, Your Honor.  Thank

22   you.

23           **THE COURT:**  Okay.  I'm not sure if some of those law

24   firms are on the call today that have plaintiffs in that

25   greater number.  We have had feedback a while ago from the

1    Department of Justice asking us to communicate to individual

2    plaintiffs law firms who had plaintiffs who were out trying to

3    obtain records on their own through FOIA requests, National

4    Archives requests, and maybe other ways.

5            The request was that we stop that because that was

6    creating duplication for the Government and conceivably would

7    be a legitimate reason for them to cite in terms of denying a

8    request in one of the -- for the 1% even to just say we're

9    getting hit from all sides and it's overly burdensome.

10           So, if you're on the call today and you are one of

11   those law firms, I hear you, I understand that you're anxious

12   to see the litigation proceed at least with records production

13   in your specific case.  We're going to proceed down that path;

14   we're going to create a path for that.  But I would ask that

15   you respect the Government's request and not continue those

16   efforts unilaterally on your own.

17           And I guess moving backwards a little bit, I skipped

18   over the -- I believe it was on the agenda.  But, in any event,

19   the TAR -- I had a joint submission by the parties on the TAR

20   training and the completion of that.  And I've asked them to --

21   or they kindly offered to put that into something that I could

22   actually formally enter on the record.

23           And I said to them, I guess maybe a little selfishly,

24   I'd like to do that because I'm so proud of it, of what you all

25   have accomplished with TAR, so I'd like to share it with

1    everyone.  So they're going to do that.  And I say selfishly.

2    I didn't have anything to do with it.

3            Ms. Six, I know you're on, and Mr. Buchanan is here,

4    and a whole host of others on your team.  But it really is

5    something to cite, and so I'm happy you'll be submitting that

6    for me.

7            Our next CMC is October 16th.  I told the lawyers this

8    morning that I may or may not be available that day, in light

9    of my criminal trial docket.  And I'm happy to have Judge Jones

10   -- and I know Judge Herndon will be there, he's very involved

11   in day to day and what's going on in this MDL.  I'm happy for

12   them to handle the CMC.  And I haven't discussed it with Judge

13   Jones if he's available.  But if he is and I'm not, that's

14   where I'm leaning towards is to just have him handle it and

15   then I'll get updated.

16           Ms. Hutson --

17           **JUDGE JONES:**  I am available and I'm certainly happy

18   to do it.

19           **THE COURT:**  Very good.  Thank you.  So you all can

20   leave that, then, on your calendars.  And I hope I can join

21   you, but there's certainly a chance and maybe a good chance I

22   won't be there.

23           Ms. Hutson, you just popped up.  I don't know -- you

24   might have just cleared your throat and came up.  Did you have

25   something you wanted to say?

1      **MS. HUTSON:**  No, I didn't.

2          **THE COURT:**  All right.  Now, I should also mention,

3   Ms. Hutson -- talking to her is making me think about it -- we

4   do have now, although I haven't seen it because my log in

5   credentials were denied by MDL Centrality.  But we do have the

6   deposition calendar, the sort of live realtime calendar.

7          And I'm trusting that what, Ms. Hutson, you told me

8   the last time we talked about this is there is only a very

9   select number of people that can edit that calendar.

10         **MS. HUTSON:**  That's exactly right.  One set of

11  credentials for Plaintiffs and one set of credentials for

12  Defendants.

13         **THE COURT:**  All right.  Well, that's good.  I'm

14  looking forward to seeing if my new set of credentials works.

15  But apparently for Judge Herndon, it took three sets of

16  credentials for his to work, so maybe tomorrow I'll get in.

17         I think that's all of my notes.

18         Mr. Aylstock, have I overlooked anything?

19         **MR. AYLSTOCK:**  Nothing from the Plaintiffs, Your

20  Honor.  Thank you.

21         **THE COURT:**  Mr. Brock or Ms. Branscome, Mr. Nomellini,

22  Mr. Hill, anyone, anything from 3M?

23         **MR. BROCK:**  Not on our end, Your Honor.  Thank you.

24         **THE COURT:**  You know what, I did overlook something.

25  Mr. Fields, I know, is on.

1    We have the choice of law chart that was presented to

2    the Court, and it's excellent.  I'm very happy with it.  And

3    now what I've asked Mr. Fields to do with Mr. Sacchet on the

4    Plaintiffs' side is to get together and propose a briefing

5    schedule for those choice of law issues in the Trial Group A

6    cases.

7    And we talked about one comprehensive document that is

8    suitable to me, and my only request was that the briefing be

9    submitted in advance of the dispositive motion deadlines.  So

10   Mr. Fields is aware of that and, like I said, he'll reach out

11   to Mr. Sacchet.

12   And that may inform some of the summary judgment

13   motions; and then otherwise, beyond that, more broadly

14   speaking, it certainly will inform trial issues.

15   Well, it's nice to see everyone.

16   Mr. Paul, thank you.

17   Mr. Hulse, thank you.

18   And if I don't see you before, hopefully I'll see you

19   on the 16th.  Everyone take care.

20   *(Proceedings concluded at 10:52 a.m.)*

21   --------------------

22   *I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  Any*

23   *redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy are noted within the transcript.*

24

25   *s/Donna L. Boland*                    *9-22-2020*
     *Donna L. Boland, RPR, FCRR*            *Date*
     *Official Court Reporter*