# **EXHIBIT C**

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Mark Nomellini<br>To Call Writer Directly:<br>+1 312 862 2410<br>mnomellini@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br>United States<br><br>+1 312 862 2000<br><br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

August 7, 2020

**Via Email**

Major Nicole Kim
Nicole.m.kim2.mil@mail.mil
(703) 693-1092

     Re: Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Major Kim:

  In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a multidistrict litigation pending before the Northern District of Florida, this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") *Touhy*[1] request to the United States Department of Defense ("DoD") for Real Ear Attenuation at Threshold ("REAT") and impulse testing data of non-Combat Arms earplugs that were distributed to, and used by Bellwether Plaintiffs in Trial Group A. Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97; 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy Instruction 5820.8A; Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

**I. Summary of the Litigation**

  3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a longstanding relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 2

hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs—the subject of this litigation.

Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contracts, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became the CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady attenuation of ambient noise. In contrast, the yellow end is nonlinear and attenuates different sounds differently. In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire. This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise. Servicemember plaintiffs in this litigation allege that the CAEv2 was defective and caused them to sustain serious injuries during their military service, including hearing damage.

On February 27, 2020, the Court issued Pretrial Order No. 29, which selected twenty-five cases for the initial bellwether pool. The parties are now conducting discovery in the initial bellwether cases, Trial Group A.

II.     **Summary and Relevance of the Documents Requested**

Defendants request both REAT and impulse testing data for the enumerated, non-Combat Arms hearing protection devices that were used by Bellwether Plaintiffs in Trial Group A. Government actions and knowledge are critical issues in this litigation. The DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard exclusively possess information concerning the

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 3

military's decision to buy CAEv2 from Defendants, including testing information from non-CAEv2 hearing protection devices that reveals their relative performance capabilities compared to CAEv2. These materials speak to, among other things: (i) plaintiffs' allegations that any injuries occurred while they were wearing the CAEv2, as opposed to when they were wearing other devices, (ii) plaintiffs' allegations that the CAEv2 provided less hearing protection than alterative devices, and (iii) plaintiffs' allegations that there was a product defect or a failure to warn.

### III. Document Requests

Specifically, Defendants request testing data relating to non-Combat Arms hearing protection devices used by Bellwether Plaintiffs in Trial Group A during their military service. The specific non-Combat Arms hearing protection devices are listed below:

- A. **Bose Noise-Cancelling Headsets**
- B. **Bose Noise-Cancelling, Communication Helmet**
- C. **Bose Noise Suppression Headset**
- D. **Combat Vehicle Crewman's ("CVC") Helmet**
- E. **Elvex, Quad-Flange Plug**
- F. **Etymotic Electronic BlastPLG EB15 Earplug**
- G. **Hocks Noise Braker**
- H. **Howard Leight AirSoft Earplugs**
- I. **Howard Leight Foam Earplugs**
- J. **Howard Leight Fusion Earplugs**
- K. **Max Lite Earplugs**
- L. **Moldex Battleplugs**
- M. **Moldex 6405 Rockets Earplugs**
- N. **Noise-Cancelling Crew Vehicle Helmet**

KE 70337898.3

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 4

    **O.**    **Peltor Comtac Tactical Communications Headset**

    **P.**    **Pyramex Taper Fit Earplugs**

    **Q.**    **Pyramex Triple Flange Earplugs**

    **R.**    **Sonic Defender Surefire Earplugs**

## IV. Additional Considerations

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, Coast Guard, and the Department of Homeland Security regarding the provision of information by its employees in connection with litigation in federal court:

1. Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2. Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3. Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4. Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5. Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6. Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 5

       7.      Disclosure would not violate any person's expectation of confidentiality or privacy.

       8.      The United States is not, and is not reasonably anticipated to be a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

### V.    Administrative Matters

Defendants will bear the costs of producing the information sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States. to the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the requested live testimony, and narrow the scope of what each individual witness may speak to. Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

                                                    Sincerely,

                                                  */s/ Mark Nomellini*

                                                  One of the Attorneys
                                                  Representing 3M