# **EXHIBIT D**

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

|  |  |  |
|---|---|---|
| _____ | ) |  |
| *Plaintiff* | ) |  |
| v. | ) | Civil Action No.   3:19-md-02885 |
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS | ) |  |
| LIABILITY LITIGATION | ) |  |
| _____ | ) |  |
| *Defendant* | ) |  |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Department of Defense c/o Paul C. Ney,
                       1400 Defense Pentagon Washington, DC 20301

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See the documents requested in the attached Touhy requests (Exhibits 1-6).

| Place: Ashley Neglia<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004 | Date and Time:<br><br>09/23/2020 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/04/2020

CLERK OF COURT

                                                        OR

_____                    /s/ Ashley Neglia
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Defendants

_____ , who issues or requests this subpoena, are:

Ashley Neglia, Kirkland & Ellis LLP, 555 S. Flower St., Los Angeles, CA 90071; Ashley.Neglia@kirkland.com; (213) 680-8114

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:19-md-02885

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **<u>EXHIBIT 1</u>**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, CA 90071
United States

Kimberly Olvey Branscome, P.C.
To Call Writer Directly:
+1 213 680 8370
kimberly.branscome@kirkland.com

+1 213 680 8400

Facsimile:
+1 213 680 8500

www.kirkland.com

June 21, 2019

**Via Email**

Major Collin Evans
Collin.p.evans2.mil@mail.mil
703-693-0352

> Re:   Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Major Evans:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*—a multidistrict litigation pending before Judge Rodgers in the Northern District of Florida—this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") *Touhy*[1] request to the United States Department of Defense ("DoD"), Defense Logistics Agency ("DLA"), Army, Navy, Marine Corps, Air Force, and Coast Guard for certain contracts and other documents related to, among other things: (i) the design, sale and use of Combat Arms Earplugs Version 2 ("CAEv2"); and (ii) noise exposure data and hearing conservation efforts in the various military branches.  Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97, 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45, DoD Directive 5405.2 § 6.2, Navy Instruction 5820.8A, and Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

## I.   Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people.  3M produces more than 60,000 products world-wide.  Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few.  In addition to its consumer-side business, 3M also has a long-standing relationship with the federal government and provides thousands of products designed to protect American troops and support their missions.  In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana.  The

---

[1]   *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 2

acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation.

Hearing loss is a common injury among military veterans.  The U.S. military has provided hearing protection and preservation services to soldiers for decades.  In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2.  CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine.  Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL").  Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center.  The green end works like a conventional passive earplug, providing steady attenuation of ambient noise.  In contrast, the yellow end is nonlinear and attenuates different sounds differently.  In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear.  The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire.  This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel.  These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2.  Design decisions regarding the CAEv2 may be contained in emails and other communications with Dr. Doug Ohlin.  And one or more branches of the military may have tested the products' performance.

To date, over 900 cases have been filed on behalf of current or former military personnel.  These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment.  Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat settings, and assert

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 3

claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud.  On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order consolidating the cases in an MDL before Judge Rodgers in the Northern District of Florida.

## II.      Summary and Relevance of the Documents Requested

Government actions and knowledge are critical issues in this litigation.  The DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard exclusively possess necessary information concerning the military's decision to buy CAEv2 from Defendants, the precise specifications Defendants were required to follow in designing, evaluating, and selling the earplugs, military procurement and Indefinite-Quantity contracts, design features, operational considerations in the design of the earplugs, product testing, audiology reports and studies, and training, safety, and fitting information provided to service members.  These materials speak to, among other things, plaintiffs' allegations that there was a product defect or failure to warn, Defendants' affirmative defenses, and various bases for the Court's subject matter jurisdiction over certain claims.  Accordingly, DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard possess information that is necessary for the Court to evaluate the parties' claims and defenses.

Defendants' specific document requests are contained in Section III, below.  In short, Defendants request documents regarding: (a) design specifications and requests for proposals; (b) the military's purchase and distribution of CAEv2; (c) instructions for CAEv2 and other earplugs; (d) complaints or recalls related to CAEv2; (e) communications with Dr. Doug Ohlin regarding CAEv2; (f) communications with Moldex-Metric, Inc. regarding CAEv2; (g) CAEv2 testing; (h) policies and procedures regarding earplug fit for service members; (i) noise and ototoxin exposure in the military; and (j) hearing protection usage in the military.  These documents are relevant to the claims and defenses in the above-referenced litigation for numerous reasons, including the following.

**Documents regarding design specifications and requests for proposals**.  *First*, documents regarding design specifications and requests for proposals will rebut plaintiffs' claims that CAEv2 was defectively designed, including by showing that design decisions balanced military performance requirements with operational needs for soldiers and military personnel.  *Second*, these documents are relevant to establish Defendants' "government contractor" defense, under which a defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).  In particular, the requested documents will show, among other things, that the military established reasonably precise specifications governing CAEv2's performance, testing, inspection, packaging, and labeling.  *Third*, these documents are relevant to the Court's subject matter jurisdiction under the "federal

KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 4

officer removal statute," 28 U.S.C. § 1442(a)(1), which provides for federal jurisdiction where, as here, the complained of conduct was taken under the direction of a federal officer, and the defendant has "colorable" federal defenses (such as the "government contractor" defense referenced above). *See e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'").

   **Documents regarding purchasing and distribution data**.  *First*, documents regarding purchasing and distribution data will help identify which plaintiffs may have used CAEv2, which is a threshold issue for any claim.  *Second*, these documents will help determine *when* a particular plaintiff used CAEv2 and are thus relevant to whether any claims are barred by the applicable statute of limitations.  *Third*, these documents may show whether and to what extent CAEv2 was distributed in combat zones, which is relevant to Defendants' "combatant activities" defense. Although Congress waived sovereign immunity for tort claims against the United States and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant activities of the military or armed forces, or the Coast Guard, during time of war."  28 U.S.C. § 2680(j).  This "combatant activities" exception has been applied to contractors like Defendants to create a federal defense shielding manufacturers from tort claims arising from war.[2]  *Fourth*, these documents will show that CAEv2 was distributed at least in part at military bases, which is relevant to the Court's subject matter jurisdiction under the "federal enclave" doctrine.  In particular, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves,'" such as military bases, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006), and Defendants have removed certain cases from state court to federal court in part on that basis.[3]

   **Documents regarding instructions for CAEv2 and other earplugs**.  *First*, documents regarding instructions for CAEv2 and other earplugs may rebut plaintiffs' principal allegation that Defendants failed to adequately instruct the military or individual service members on proper use, including in particular plaintiffs' allegation that Defendants did not instruct the military to "roll back" the flanges on the opposite end prior to insertion.  *Second*, a central issue in this litigation is whether and to what extent the plaintiffs received and/or followed training on how to properly

---

[2]   *See, e.g., Saleh v. Titan Corp.*, 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war.").

[3]   *See Jamil v. Workforce Resources, LLC*, 2018 WL 2298119 (C.D. Cal. May 21, 2918) ("Camp Pendleton is a federal enclave"); *see also Haining v. Boeing Co.*, 2013 WL 4874975, at *2 (C.D. Cal. Sept. 11, 2013) (concluding Vandenberg AFB is a federal enclave).

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 5

insert earplugs, such as CAEv2, in their ears.  Plaintiffs' failure to properly insert an earplug in their ears could decrease the attenuation provided by that earplug, and thus undermine any argument that a product defect caused their alleged injuries.  *Third*, for similar reasons, these documents may support that particular plaintiffs misused CAEv2, which is a common law defense to certain claims.  *Fourth*, these documents may be relevant to Defendants' "government contractor" defense, which, as discussed above, requires a showing that the government was on notice of alleged product dangers.  For example, to the extent the military included in service member instructions a reference to the product characteristics plaintiffs now challenge—such as "rolling back" any flanges prior to insertion—then that would support that the government was on notice of those issues.

**Documents regarding complaints or recalls related to CAEv2**.  *First*, to the extent there are no or few complaints or recalls, then that may undermine any assertion that CAEv2 was defective.  *Second*, complaints by any particular plaintiff are relevant to showing the date on which the plaintiff was on notice of the alleged defect, which is relevant to whether the statute of limitations has run on his or her claims.  *Third*, complaints by individual plaintiffs may show that they continued to use CAEv2 after gaining knowledge of the alleged issue, which would support various common law defenses to plaintiffs' tort claims, such as "assumption of the risk" and "failure to mitigate."  *Fourth*, to the extent the government continued to purchase and use CAEv2 after receiving complaints about its performance, then that would support Defendants' government contractor defense, which, as noted above, requires a showing that the government was on notice of the alleged product dangers.

**Communications with Dr. Doug Ohlin regarding CAEv2**.  *First*, communications with Dr. Ohlin regarding CAEv2 will rebut plaintiffs' allegations that CAEv2 was defectively designed by showing that the military participated in the design of CAEv2 and made decisions that balanced performance requirements with operational needs for soldiers and military personnel.  *Second*, these documents will help to establish Defendants' "government contractor" defense by showing that the military approved reasonably precise specifications and was on notice of the alleged product dangers.  *Third*, like the design specifications and requests for proposals discussed above, Ohlin's communications regarding CAEv2 are relevant to the Court's jurisdiction under the federal officer removal statute, which provides for federal jurisdiction where, as here, the complained of conduct was performed under the direction of a federal officer.  28 U.S.C. § 1442(a)(1).

**Communications with Moldex regarding CAEv2**.  At and around the time Defendants were working with the military to develop CAEv2, Moldex was marketing a competing product to the military known as the BattlePlug.  To the extent that Moldex criticized the Combat Arms Earplugs during its communications with the military, or compared and contrasted various features of the BattlePlug with those of the Combat Arms Earplugs, then those communications may be relevant to show, among other things, the military's knowledge of any alleged product dangers, which, as noted above, is relevant to Defendants' "government contractor" defense.

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 6

**Documents regarding CAEv2 testing.** *First*, CAEv2 test results will undermine plaintiffs' allegation that the product was defective. *Second*, testing documents in the military's possession—whether or not the test was performed by the military—will show that the military was on notice of CAEv2 performance capabilities, which is relevant to, among other things, plaintiffs' failure to warn claims, Defendants' "government contractor" defense, and the Court's jurisdiction under the federal officer removal statute.

**Policies and procedures regarding earplug fit for service members**. *First*, policies and procedures regarding earplug fit for service members will show whether and how the military determined that CAEv2 would fit in particular plaintiffs' ear canals. To the extent such a determination was made, then that would undermine any allegation that the earplug did not "fit" a particular plaintiff. To the extent it was not, then that may show that plaintiffs were not using the earplug appropriately. *Second*, policies showing that the military required trained medical staff to make an individual determination of fit for each service member will undermine any allegation that Defendants were responsible for fitting individual service members. *Third*, these documents may show whether and how the military trained soldiers to insert earplugs like CAEv2 into their ears. As discussed above, Plaintiffs' failure to properly insert CAEv2 could significantly impact attenuation, and thus undermine plaintiffs' argument that a product defect caused their alleged injuries. *Fourth*, these documents may provide the basis for a defense that plaintiffs' misused CAEv2 by failing to follow military policies.

**Documents regarding noise and ototoxin exposure in the military**. *First*, documents regarding noise exposure data—such as noise dosimetry and sound level data—will show that plaintiffs were exposed to a wide variety of potentially dangerous noises or ototoxins unrelated to their use of CAEv2, which will undermine plaintiffs' allegation that CAEv2 caused their alleged injuries. *Second*, these documents may show that individual plaintiffs violated military hearing protection recommendations by performing dangerous activities with no or insufficient hearing protection, which would also undermine any assertion that CAEv2 caused their alleged injuries. *Third*, these documents may also support Defendants' "combatant activities" defense by showing that service members were required to wear CAEv2 in combat situations. *Fourth*, these documents may also be relevant to whether plaintiffs' claims present non-justiciable political questions, insofar as plaintiffs are challenging the military's strategic decisions regarding equipment to be worn in combat settings. *Fifth*, for similar reasons, these documents are also relevant to the Court's subject matter jurisdiction under the federal officer removal statue, which requires a showing that Defendants have "colorable" defenses under federal law.

**Documents regarding (actual) hearing protection usage in the military**. These documents are relevant to the issue of whether or not military service members typically use recommended or required hearing protection—including both in training and in combat settings—which is relevant to, among other things, plaintiffs' assertions that CAEv2 caused their alleged injuries.

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 7

## III.    Document Requests

Pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and the above-referenced statutes, directives and instructions, Defendants request the following documents from the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard.  To the extent that these documents relate to the procurement, design specifications, and audiology-related studies of CAEv2, Defendants understand that the contracting officer, the contracting officer's representative, and the hearing conservation program manager may be likely sources of the requested information.

### A.    Documents Regarding Design Specifications And Requests For Proposals.

1.    Specifications and drawings for the CAEv2.

2.    Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-100-1674, olive drab color.

3.    Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-533-6168, navy blue color.

4.    Request for Proposal known as Solicitation No. SP0200-07-D-4102.

5.    Request for Proposal known as Solicitation No. SP0200-07-D-4103.

6.    Responses to Solicitation No. SP0200-06-R-4202, including from 3M and Aearo.

7.    Responses to Solicitation No. SP0200-07-D-4103, including from 3M and Aearo.

8.    Requests for Proposals, Commerce Business Daily announcements, or solicitations including design and/or performance specifications, features or performance requirements for any "nonlinear," "level-dependent," "sound transmission," "amplitude-sensitive," "pass-through," "gunshot-reactive," "shooter's earplug," "dual state," or "situation-awareness enhancing" hearing protection device or earplug or ear insert style, from January, 1998 to December, 2015.

9.    Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the sizing of any hearing protective earplug, the distribution of military personnel to be accommodated by various sizes of earplugs, or the means of matching earplug sizes to individuals, from January, 1998 to December, 2015.

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 8

10.     Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the length and/or diameter of any hearing protective earplug, and/or the compatibility of any hearing protective earplug with other headgear such as helmets or earphones, from January, 1998 to December, 2015.

**B.      Documents Regarding Purchasing And Distribution Of CAEv2.**

1.      Purchase data for CAEv2 from January, 1998 to December, 2015.

2.      Distribution data for CAEv2 from January, 1998 to December, 2018.

**C.      Documents Regarding Instructions For CAEv2 And Other Earplugs.**

1.      Wallet Card instructions, Blister Pack instructions, Retail Pack instructions, instructions on or with bulk earplug boxes, and other bulk packaging instructions for CAEv2 from January, 1998 to December, 2015.

2.      Training materials regarding the proper use, fit, maintenance, and/or care of CAEv2 from January, 1998 to December, 2015, including but not limited to, presentations, slide decks, computerized tutorials, on-line instructions, printed instructions, pamphlets, or memoranda.

3.      Specifications, instructions or training materials relating to folding back, flipping backward, rolling back, or reversal of the flanges of any flange-style hearing protective earplug from January, 1998 to December, 2015.

**D.      Documents Regarding Complaints Or Recalls Related To CAEv2.**

1.      Feedback, complaints, or other information relating to the CAEv2 provided by service member users.

2.      Feedback, complaints, or other information relating to the CAEv2 provided by military audiologists and medically trained personnel.

3.      Product recalls, accident or injury documentations, or other verifications of problems related to CAEv2 from January, 1998 to December, 2015.

**E.      Communications With Dr. Douglas Ohlin Regarding CAEv2.**

1.      Communications relating to the CAEv2 that are to, from, copying, or involving Dr. Douglas Ohlin from 1998 to 2012.

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 9

**F.**     **Communications With Moldex-Metric, Inc. Regarding CAEv2.**

1.     Communications relating to the CAEv2 that are to, from, copying, or involving employees or other representatives of Moldex-Metric, Inc. from January 1998 to December 2015.

**G.**     **Documents Regarding CAEv2 Testing.**

1.     CAEv2 test results provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *internal* to the DoD, including **but not limited to**:

    a.   CAEv2 attenuation testing for continuous and impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA S12.6-1997, ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

    b.   CAEv2 test results from Army Research Laboratory, Aberdeen Proving Ground, Maryland;

    c.   CAEv2 test results from U.S. Army Aeromedical Research Laboratory, Ft. Rucker, Alabama;

    d.   CAEv2 test results from Air Force Research Laboratory, Wright-Patterson Air Force Base, Ohio;

    e.   CAEv2 test results from Naval Air Systems Command, Patuxent River, Maryland;

    f.   CAEv2 test results from White Sands Missile Range, New Mexico;

    g.   CAEv2 test results publications, or research authored or presented by any of the following individuals:  Dr. Lorraine Babeu, Dr. Kathy Gates, Dr. Nancy Vause, Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedel, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, Dr. Eric Fallon, Douglas Moses, and/or Elliott Berger.

2.     CAEv2 test results provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *external* to the DoD, including **but not limited to**:

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 10

    a.   CAEv2 attenuation testing for continuous and/or impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA  S12.6-1997,ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

    b.   CAEv2 test results from Honeywell, Howard Leight;

    c.   CAEv2 test results from Michael & Associates;

    d.   CAEv2 test results from NIOSH; and

    e.   CAEv2 test results from A.L. Dancer or P.J.F. Hamery of French-German Research Institut of Saint-Louis.

**H.**    **Policies And Procedures Regarding Earplug Fit For Service Members.**

1.    Policies and procedures relating to compliance with ST 4-02.501 (Feb. 1 2008), Army Hearing Program, § 4-54, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

2.    Policies and procedures relating to compliance with Department of the Army Pamphlet 40-501, Hearing Conservation, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

3.    Policies and procedures relating to compliance with DoD Instruction 6055.12 (Dec. 3, 2010), DoD Hearing Conservation Program, Enclosure 3, § 7(i), that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

4.    Policies and procedures relating to compliance with TM6260.51.99-2 (Sept. 15, 2008), Navy Hearing Conservation Program Procedures, § C1.4.1, that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

**I.**    **Documents Regarding Noise And Ototoxin Exposure In The Military.**

1.    Noise dosimetry data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons.

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 11

2.   Sound level data and recommendations for hearing protection in particular situations or when operating particular weapons, such as those documented on DD Form 2214.

3.   Documents that contain recommendations and/or guidelines for specific hearing protectors to be worn when using specific weapons or when encountering other noise exposures.

4.   Documents regarding military noise exposures or hearing protection recommendations or guidelines authored by the following individuals:  Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedele, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr. Lorraine Babeu, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, and Dr. Eric Fallon.

5.   Research by Dr. Richard Price and/or Dr. Joel Kalb of the Army Research Laboratory that has used the Auditory Hazard Assessment Algorithm for Humans ("AHAAH") model in connection with nonlinear earplugs, including the CAEv2.

6.   Studies or policies relating to the prevention of service member exposure to the following ototoxins:  toluene, xylene, n-hexane, organic tin, carbon disulfide, mercury, organic lead, hydrogen cyanide, diesel fuel, kerosene fuel, jet fuel, organophosphate pesticides, and nerve agents.

7.   Internal research and results relating to the Noise Outcomes in Service Member Epidemiology ("NOISE") Study.

8.   Policies and procedures regarding "quiet areas" designed to expose service members to lower levels of noises.

**J.   Documents Regarding Hearing Protection Usage In The Military.**

1.   Studies regarding the actual (as opposed to suggested or required) usage of hearing protection (including, but not limited to, CAEv2) by service members in training or combat from 2000 to the present.

## IV.   Additional Considerations

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard regarding the provision of information by its employees in connection with litigation in federal court:

# KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 12

1.    Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2.    Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3.    Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4.    Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5.    Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6.    Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7.    Disclosure would not violate any person's expectation of confidentiality or privacy.

8.    The United States is not, and is not reasonably anticipated to be, a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## V.    Administrative Matters

Defendants will bear the costs of duplicating and producing the documents sought by this *Touhy* request.  Costs will be paid by check or money order payable to the Treasury of the United States.  For ease of production, all electronically stored information can be produced via a secure

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 13

file transfer protocol site that will be provided free of charge or via electronic storage media that
will be provided to you at no charge and upon your request.  Any requests for assistance with the
transmittal of electronically stored documents, or coordination of the inspection of documents
should be made to Michelle Six, counsel for Defendants, at (212) 446-4693 or
michelle.six@kirkland.com.  Additionally, to the extent the DoD, DLA, Army, Navy, Marine
Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the
statutory considerations set forth above, Defendants are willing to work with the DoD, DLA,
Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the request.

       If you anticipate that full production will require more than one hundred twenty (120) days
from the date of service, we request that you notify Defendants and/or the Court.  Should you have
any questions or require additional information about this *Touhy* request, please do not hesitate to
contact me.  Thank you for your assistance.

Sincerely,


*Kimberly Olvey Branscome, P.C.*


Attorney for Defendants

## KIRKLAND & ELLIS LLP

Major Collin Evans
June 21, 2019
Page 14


cc:     Michael J. Fucci
        Associate General Counsel
        Department of Defense
        michael.j.fucci.civ@mail.mil

# EXHIBIT 2

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Kimberly Olvey Branscome, P.C.
To Call Writer Directly:
+1 213 680 8370
kimberly.branscome@kirkland.com

333 South Hope Street
Los Angeles, CA 90071
United States

+1 213 680 8400

www.kirkland.com

Facsimile:
+1 213 680 8500

July 26, 2019

**Via Email**

Major Collin Evans
Collin.p.evans2.mil@mail.mil
703-693-0352

Re:     Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Major Evans:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*—a multidistrict litigation pending before Judge Rodgers in the Northern District of Florida—this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy*[1] request to the United States Department of Defense ("DoD"), Defense Logistics Agency ("DLA"), Army, Navy, Marine Corps, Air Force, and Coast Guard for certain contracts and other documents related to, among other things: (i) the design, sale and use of Combat Arms Earplugs Version 2 ("CAEv2"); and (ii) noise exposure data and hearing conservation efforts in the various military branches. Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97, 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45, DoD Directive 5405.2 § 6.2, Navy Instruction 5820.8A, and Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

## I.      Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including

---

[1]   *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). This request is being sent following the July 22, 2019 Meeting Involving Judge M.C. Rodgers, representatives of the United States Department of Defense, representatives of the United States Department of Justice, Lead Counsel for Plaintiffs in *In re: 3M Combat Arms Earplug Products Liability Litigation*, and counsel for 3M. During that meeting, it was agreed that, to provide clarification and to assist with the existing *Touhy* requests, 3M would supplement its prior *Touhy* requests, dated June 21, 2019.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 2

Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few.  In addition to its consumer-side business, 3M also has a long-standing relationship with the federal government and provides thousands of products designed to protect American troops and support their missions.  In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana.  The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation.

Hearing loss is a common injury among military veterans.  The U.S. military has provided hearing protection and preservation services to soldiers for decades.  In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2.  CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine.  Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL").  Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center.  The green end works like a conventional passive earplug, providing steady attenuation of ambient noise.  In contrast, the yellow end is nonlinear and attenuates different sounds differently.  In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear.  The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire.  This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel.  These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2.  Design decisions regarding the CAEv2 may be contained in emails and other communications with Dr. Doug Ohlin.  And one or more branches of the military may have tested the products' performance.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 3

To date, over 900 cases have been filed on behalf of current or former military personnel. These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment.  Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat settings, and assert claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud.  On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order consolidating the cases in an MDL before Judge Rodgers in the Northern District of Florida.

## II.      Summary and Relevance of the Documents Requested

Government actions and knowledge are critical issues in this litigation.  The DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard exclusively possess necessary information concerning the military's decision to buy CAEv2 from Defendants, the precise specifications Defendants were required to follow in designing, evaluating, and selling the earplugs, military procurement and Indefinite-Quantity contracts, design features, operational considerations in the design of the earplugs, product testing, audiology reports and studies, and training, safety, and fitting information provided to service members.  These materials speak to, among other things, plaintiffs' allegations that there was a product defect or failure to warn, Defendants' affirmative defenses, and various bases for the Court's subject matter jurisdiction over certain claims. Accordingly, DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard possess information that is necessary for the Court to evaluate the parties' claims and defenses.

Defendants' specific document requests are contained in Section III, below.  In short, Defendants request documents regarding: (a) design specifications and requests for proposals; (b) the military's purchase and distribution of CAEv2; (c) instructions for CAEv2 and other earplugs; (d) complaints or recalls related to CAEv2; (e) communications with Dr. Doug Ohlin regarding CAEv2; (f) communications with Moldex-Metric, Inc. regarding CAEv2; (g) CAEv2 testing; (h) policies and procedures regarding earplug fit for service members; (i) noise and ototoxin exposure in the military; and (j) hearing protection usage in the military.  These documents are relevant to the claims and defenses in the above-referenced litigation for numerous reasons, including the following.

**Documents regarding design specifications and requests for proposals**.  *First*, documents regarding design specifications and requests for proposals will rebut plaintiffs' claims that CAEv2 was defectively designed, including by showing that design decisions balanced military performance requirements with operational needs for soldiers and military personnel. *Second*, these documents are relevant to establish Defendants' "government contractor" defense, under which a defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United

KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 4

States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). In particular, the requested documents will show, among other things, that the military established reasonably precise specifications governing CAEv2's performance, testing, inspection, packaging, and labeling. *Third*, these documents are relevant to the Court's subject matter jurisdiction under the "federal officer removal statute," 28 U.S.C. § 1442(a)(1), which provides for federal jurisdiction where, as here, the complained of conduct was taken under the direction of a federal officer, and the defendant has "colorable" federal defenses (such as the "government contractor" defense referenced above). *See e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'").

**Documents regarding purchasing and distribution data**. *First*, documents regarding purchasing and distribution data will help identify which plaintiffs may have used CAEv2, which is a threshold issue for any claim. *Second*, these documents will help determine *when* a particular plaintiff used CAEv2 and are thus relevant to whether any claims are barred by the applicable statute of limitations. *Third*, these documents may show whether and to what extent CAEv2 was distributed in combat zones, which is relevant to Defendants' "combatant activities" defense. Although Congress waived sovereign immunity for tort claims against the United States and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant activities of the military or armed forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). This "combatant activities" exception has been applied to contractors like Defendants to create a federal defense shielding manufacturers from tort claims arising from war.[2] *Fourth*, these documents will show that CAEv2 was distributed at least in part at military bases, which is relevant to the Court's subject matter jurisdiction under the "federal enclave" doctrine. In particular, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves,'" such as military bases, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006), and Defendants have removed certain cases from state court to federal court in part on that basis.[3]

**Documents regarding instructions for CAEv2 and other earplugs**. *First*, documents regarding instructions for CAEv2 and other earplugs may rebut plaintiffs' principal allegation that

---

[2]  *See, e.g., Saleh v. Titan Corp.*, 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war.").

[3]  *See Jamil v. Workforce Resources, LLC*, 2018 WL 2298119 (C.D. Cal. May 21, 2918) ("Camp Pendleton is a federal enclave"); *see also Haining v. Boeing Co.*, 2013 WL 4874975, at *2 (C.D. Cal. Sept. 11, 2013) (concluding Vandenberg AFB is a federal enclave).

KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 5

Defendants failed to adequately instruct the military or individual service members on proper use, including in particular plaintiffs' allegation that Defendants did not instruct the military to "roll back" the flanges on the opposite end prior to insertion. *Second*, a central issue in this litigation is whether and to what extent the plaintiffs received and/or followed training on how to properly insert earplugs, such as CAEv2, in their ears. Plaintiffs' failure to properly insert an earplug in their ears could decrease the attenuation provided by that earplug, and thus undermine any argument that a product defect caused their alleged injuries. *Third*, for similar reasons, these documents may support that particular plaintiffs misused CAEv2, which is a common law defense to certain claims. *Fourth*, these documents may be relevant to Defendants' "government contractor" defense, which, as discussed above, requires a showing that the government was on notice of alleged product dangers. For example, to the extent the military included in service member instructions a reference to the product characteristics plaintiffs now challenge—such as "rolling back" any flanges prior to insertion—then that would support that the government was on notice of those issues.

**Documents regarding complaints or recalls related to CAEv2**. *First*, to the extent there are no or few complaints or recalls, then that may undermine any assertion that CAEv2 was defective. *Second*, complaints by any particular plaintiff are relevant to showing the date on which the plaintiff was on notice of the alleged defect, which is relevant to whether the statute of limitations has run on his or her claims. *Third*, complaints by individual plaintiffs may show that they continued to use CAEv2 after gaining knowledge of the alleged issue, which would support various common law defenses to plaintiffs' tort claims, such as "assumption of the risk" and "failure to mitigate." *Fourth*, to the extent the government continued to purchase and use CAEv2 after receiving complaints about its performance, then that would support Defendants' government contractor defense, which, as noted above, requires a showing that the government was on notice of the alleged product dangers.

**Communications with Dr. Doug Ohlin regarding CAEv2**. *First*, communications with Dr. Ohlin regarding CAEv2 will rebut plaintiffs' allegations that CAEv2 was defectively designed by showing that the military participated in the design of CAEv2 and made decisions that balanced performance requirements with operational needs for soldiers and military personnel. *Second*, these documents will help to establish Defendants' "government contractor" defense by showing that the military approved reasonably precise specifications and was on notice of the alleged product dangers. *Third*, like the design specifications and requests for proposals discussed above, Ohlin's communications regarding CAEv2 are relevant to the Court's jurisdiction under the federal officer removal statute, which provides for federal jurisdiction where, as here, the complained of conduct was performed under the direction of a federal officer. 28 U.S.C. § 1442(a)(1).

**Communications with Moldex regarding CAEv2**. At and around the time Defendants were working with the military to develop CAEv2, Moldex was marketing a competing product to the military known as the BattlePlug. To the extent that Moldex criticized the Combat Arms

### KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 6

Earplugs during its communications with the military, or compared and contrasted various features of the BattlePlug with those of the Combat Arms Earplugs, then those communications may be relevant to show, among other things, the military's knowledge of any alleged product dangers, which, as noted above, is relevant to Defendants' "government contractor" defense.

**Documents regarding CAEv2 testing.** *First*, CAEv2 test results will undermine plaintiffs' allegation that the product was defective. *Second*, testing documents in the military's possession—whether or not the test was performed by the military—will show that the military was on notice of CAEv2 performance capabilities, which is relevant to, among other things, plaintiffs' failure to warn claims, Defendants' "government contractor" defense, and the Court's jurisdiction under the federal officer removal statute.

**Policies and procedures regarding earplug fit for service members**. *First*, policies and procedures regarding earplug fit for service members will show whether and how the military determined that CAEv2 would fit in particular plaintiffs' ear canals. To the extent such a determination was made, then that would undermine any allegation that the earplug did not "fit" a particular plaintiff. To the extent it was not, then that may show that plaintiffs were not using the earplug appropriately. *Second*, policies showing that the military required trained medical staff to make an individual determination of fit for each service member will undermine any allegation that Defendants were responsible for fitting individual service members. *Third*, these documents may show whether and how the military trained soldiers to insert earplugs like CAEv2 into their ears. As discussed above, Plaintiffs' failure to properly insert CAEv2 could significantly impact attenuation, and thus undermine plaintiffs' argument that a product defect caused their alleged injuries. *Fourth*, these documents may provide the basis for a defense that plaintiffs' misused CAEv2 by failing to follow military policies.

**Documents regarding noise and ototoxin exposure in the military**. *First*, documents regarding noise exposure data—such as noise dosimetry and sound level data—will show that plaintiffs were exposed to a wide variety of potentially dangerous noises or ototoxins unrelated to their use of CAEv2, which will undermine plaintiffs' allegation that CAEv2 caused their alleged injuries. *Second*, these documents may show that individual plaintiffs violated military hearing protection recommendations by performing dangerous activities with no or insufficient hearing protection, which would also undermine any assertion that CAEv2 caused their alleged injuries. *Third*, these documents may also support Defendants' "combatant activities" defense by showing that service members were required to wear CAEv2 in combat situations. *Fourth*, these documents may also be relevant to whether plaintiffs' claims present non-justiciable political questions, insofar as plaintiffs are challenging the military's strategic decisions regarding equipment to be worn in combat settings. *Fifth*, for similar reasons, these documents are also relevant to the Court's subject matter jurisdiction under the federal officer removal statue, which requires a showing that Defendants have "colorable" defenses under federal law.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 7

**Documents regarding (actual) hearing protection usage in the military**. These documents are relevant to the issue of whether or not military service members typically use recommended or required hearing protection—including both in training and in combat settings—which is relevant to, among other things, plaintiffs' assertions that CAEv2 caused their alleged injuries.

## III.   Document Requests

Pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and the above-referenced statutes, directives and instructions, Defendants request the following documents from the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard.  To the extent that these documents relate to the procurement, design specifications, and audiology-related studies of CAEv2, Defendants understand that the contracting officer, the contracting officer's representative, and the hearing conservation program manager may be likely sources of the requested information.

### A.   Documents Regarding Design Specifications And Requests For Proposals.

1. Specifications and drawings for the CAEv2.

2. Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-100-1674, olive drab color.

3. Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-533-6168, navy blue color.

4. Request for Proposal known as Solicitation No. SP0200-06-R-4202.

5. Request for Proposal known as Solicitation No. SP0200-07-D-4103.

6. Responses to Solicitation No. SP0200-06-R-4202, including from 3M and Aearo.

7. Responses to Solicitation No. SP0200-07-D-4103, including from 3M and Aearo.

8. Requests for Proposals, Commerce Business Daily announcements, or solicitations including design and/or performance specifications, features or performance requirements for any "nonlinear," "level-dependent," "sound transmission," "amplitude-sensitive," "pass-through," "gunshot-reactive," "shooter's earplug," "dual state," or "situation-awareness enhancing" hearing protection device or earplug or ear insert style, from January, 1998 to December, 2015.

# KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 8

9.  Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the sizing of any hearing protective earplug, the distribution of military personnel to be accommodated by various sizes of earplugs, or the means of matching earplug sizes to individuals, from January, 1998 to December, 2015.

10. Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the length and/or diameter of any hearing protective earplug, and/or the compatibility of any hearing protective earplug with other headgear such as helmets or earphones, from January, 1998 to December, 2015.

**B.    Documents Regarding Purchasing And Distribution Of CAEv2.**

1.  Documents sufficient to show:  (i) the number of CAEv2 earplugs purchased by the United States; (ii) the dates on which CAEv2 earplugs were purchased by the United States, and the number purchased on each such date; (iii) the number of CAEv2 earplugs purchased for the (a) Army, (b) Navy, (c) Marine Corps, (d) Air Force, and (e) Coast Guard; and (iv) the identity of the distributor who made each sale of CAEv2 earplugs to the United States on each date.

2.  Documents sufficient to show:  (i) the specific locations to which CAEv2 earplugs were distributed, including the number distributed to each; (ii) if applicable, the military unit (*e.g.,* division, brigade, battalion/battery, regiment, fleet, squadron, company, *etc.*) to which CAEv2 earplugs were distributed, including the number distributed to each; (iii) if applicable, the bases to which CAEv2 earplugs were distributed, including the number distributed to each base; and (iv) if applicable, the audiology or public health program directors to whom CAEv2 were distributed, including the number distributed to each.

**C.    Documents Regarding Instructions For CAEv2 And Other Earplugs.**

1.  Wallet Card instructions, Blister Pack instructions, Retail Pack instructions, instructions on or with bulk earplug boxes, and other bulk packaging instructions for CAEv2 from January, 1998 to December, 2015.

2.  Training materials regarding the proper use, fit, maintenance, and/or care of CAEv2 from January, 1998 to December, 2015, including but not limited to, presentations, slide decks, computerized tutorials, on-line instructions, printed instructions, pamphlets, or memoranda.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 9

3.      Specifications, instructions or training materials relating to folding back, flipping backward, rolling back, or reversal of the flanges of any flange-style hearing protective earplug from January, 1998 to December, 2015.

**D.      Documents Regarding Complaints Or Recalls Related To CAEv2.**

1.      Feedback and complaints relating to the CAEv2 provided by service member users.

2.      Feedback and complaints relating to the CAEv2 provided by military audiologists and medically trained personnel.

3.      Product recalls and accident or injury documentation related to CAEv2 from January, 1998 to December, 2015.

**E.      Communications With Dr. Douglas Ohlin Regarding CAEv2.**

1.      Communications relating to the CAEv2 that are to, from, copying, or involving Dr. Douglas Ohlin from 1998 to 2012.  3M requests that the following search terms be used to search these communications:   "CAE" OR "CAEP" OR "Combat Arms" OR "CAEv2" OR "CEP" OR "Aearo" OR "Aero" OR "3M" OR "Berger" OR "wallet card" OR flange OR "NRR" OR  "ISL" OR "Institut Saint-Louis" OR "Moldex" OR "battleplug" OR "hear-through" OR "pass-through" "level-dependent" OR "amplitude-sensitive" OR "CAEP" OR "double-ended" OR "double-sided" OR "imperceptible" OR "imperceptibly" OR "slippage" OR "carrying case."  To the best of 3M's knowledge, Dr. Ohlin's email addresses during this time frame were:  doug.ohlin@us.army.mil; Douglas.Ohlin@APG.AMEDD.ARMY.MIL; Douglas.Ohlin@AMEDD.ARMY.MIL.

**F.      Communications With Moldex-Metric, Inc. Regarding CAEv2.**

1.      Communications relating to the CAEv2 that are to, from, copying, or involving employees or other representatives of Moldex-Metric, Inc. from January 1998 to December 2015.  3M requests that the emails of Lieutenant Colonel Eric Fallon, Lieutenant Colonel  Marjorie Grantham, Lieutenant Colonel Martin Robinette, Lieutenant Colonel John Merkley, Colonel Kathy Gates, and Brian Hobbs be searched using the same search terms specified for Dr. Douglas Ohlin in III.E above.  To the best of 3M's knowledge, their email addresses were: marjorie.grantham@us.army.mil; marjorie.grantham@arl.army.mil; marjorie.a.grantham.mil@mail.mil; martin.robinette@us.army.mil;

KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 10

martin.b.robinette.mil@mail.mil; john.a.merkley.mil@mail.mil;
john.merkley@us.af.mil; John.Merkley@us.army.mil;
John.Merkley2@AMEDD.ARMY.MIL; Kathy.Gates@us.army.mil;
kathy.e.gates.ctr@mail.mil; brian.hobbs@med.navy.mil;
eric.fallon@us.army.mil; Eric.Fallon@med.navy.mil.

**G.    Documents Regarding CAEv2 Testing.**

1.    CAEv2 test results (excluding test results that are publicly available) provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *internal* to the DoD:

    a.    CAEv2 attenuation testing for continuous and impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA S12.6-1997, ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

    b.    CAEv2 test results from Army Research Laboratory, Aberdeen Proving Ground, Maryland;

    c.    CAEv2 test results from U.S. Army Aeromedical Research Laboratory, Ft. Rucker, Alabama;

    d.    CAEv2 test results from Air Force Research Laboratory, Wright-Patterson Air Force Base, Ohio;

    e.    CAEv2 test results from Naval Air Systems Command, Patuxent River, Maryland;

    f.    CAEv2 test results from White Sands Missile Range, New Mexico;

    g.    CAEv2 test results publications, or research authored or presented by any of the following individuals:  Dr. Lorraine Babeu, Dr. Kathy Gates, Dr. Nancy Vause, Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedel, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, Dr. Eric Fallon, Douglas Moses, and/or Elliott Berger.

2.    Data and protocols relating to any of the above-listed tests, including if the test results are publicly available but the data and protocols are not publicly available.

# KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 11

3. CAEv2 test results (excluding test results that are publicly available) provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *external* to the DoD:

    a. CAEv2 attenuation testing for continuous and/or impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA S12.6-1997,ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

    b. CAEv2 test results from NIOSH; and

    c. CAEv2 test results from A.L. Dancer or P.J.F. Hamery of French-German Research Institut of Saint-Louis.

4. Data and protocols relating to any of the above-listed tests, including if the test results are publicly available but the data and protocols are not publicly available.

## H.   Policies And Procedures Regarding Earplug Fit For Service Members.

1. Policies and procedures relating to compliance with ST 4-02.501 (Feb. 1 2008), Army Hearing Program, § 4-54, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

2. Policies and procedures relating to compliance with Department of the Army Pamphlet 40-501, Hearing Conservation, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

3. Policies and procedures relating to compliance with DoD Instruction 6055.12 (Dec. 3, 2010), DoD Hearing Conservation Program, Enclosure 3, § 7(i), that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

4. Policies and procedures relating to compliance with TM6260.51.99-2 (Sept. 15, 2008), Navy Hearing Conservation Program Procedures, § C1.4.1, that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 12

**I.      Documents Regarding Noise And Ototoxin Exposure In The Military.**

1.      Noise dosimetry data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons.

2.      Sound level data and recommendations for hearing protection in particular situations or when operating particular weapons, such as those documented on DD Form 2214.

3.      Documents that contain recommendations and/or guidelines for specific hearing protectors to be worn when using specific weapons or when encountering other noise exposures.

4.      Documents regarding military noise exposures or hearing protection recommendations or guidelines authored by the following individuals, excluding documents that are publicly available:  Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedele, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr. Lorraine Babeu, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, and Dr. Eric Fallon.

5.      Research by Dr. Richard Price and/or Dr. Joel Kalb of the Army Research Laboratory that has used the Auditory Hazard Assessment Algorithm for Humans ("AHAAH") model in connection with nonlinear earplugs, including the CAEv2, excluding documents that are publicly available.

6.      Studies or policies relating to the prevention of service member exposure to the following ototoxins:  toluene, xylene, n-hexane, organic tin, carbon disulfide, mercury, organic lead, hydrogen cyanide, diesel fuel, kerosene fuel, jet fuel, organophosphate pesticides, and nerve agents, excluding documents that are publicly available.

7.      Internal research and results relating to the Noise Outcomes in Service Member Epidemiology ("NOISE") Study.

8.      Policies and procedures regarding effective \quiet areas (*e.g.*, effective quiet areas on a U.S. Navy aircraft carrier) designed to expose service members to lower levels of noises, excluding documents that are publicly available.  *See also* ST 4-02.501, Army Hearing Program, Section 4-18 (Feb. 1 2008) ("The most effective administrative control is to provide quiet areas where Soldiers can gain relief from workplace noise. Areas used for breaks and dining facilities should be located

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 13

away from noise. If these areas must be near noise, they should have noise barriers appropriately placed to minimize background noise levels."); https://www.ncbi.nlm.nih.gov/pubmed/30943127 (abstract of article entitled "Noise characterization of 'effective quiet' areas on a U.S. Navy aircraft carrier").

**J.      Documents Regarding Hearing Protection Usage In The Military.**

1.      Studies regarding the actual (as opposed to suggested or required) usage of hearing protection (including, but not limited to, CAEv2) by service members in training or combat from 2000 to the present.

## IV.   Additional Considerations

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard regarding the provision of information by its employees in connection with litigation in federal court:

1.      Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2.      Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3.      Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4.      Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5.      Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6.      Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 14

> or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7.     Disclosure would not violate any person's expectation of confidentiality or privacy.

8.     The United States is not, and is not reasonably anticipated to be, a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## V.    Administrative Matters

Defendants will bear the costs of duplicating and producing the documents sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States. For ease of production, all electronically stored information can be produced via a secure file transfer protocol site that will be provided free of charge or via electronic storage media that will be provided to you at no charge and upon your request. Any requests for assistance with the transmittal of electronically stored documents, or coordination of the inspection of documents should be made to Michelle Six, counsel for Defendants, at (212) 446-4693 or michelle.six@kirkland.com. Additionally, to the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the request.

If you anticipate that full production will require more than one hundred twenty (120) days from the date of service, we request that you notify Defendants and/or the Court. Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me. Thank you for your assistance.

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 15

Sincerely,


*Kimberly Olvey Branscome, P.C.*


Attorney for Defendants

## KIRKLAND & ELLIS LLP

Major Collin Evans
July 26, 2019
Page 16


cc:     Michael J. Fucci
        Associate General Counsel
        Department of Defense
        michael.j.fucci.civ@mail.mil

# **<u>EXHIBIT 3</u>**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Mark J. Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

December 2, 2019

**Via E-mail**

Major Collin Evans
Litigation Attorney, General Litigation
Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
Collin.p.evans2.mil@mail.mil
703-693-0352

> Re:   Supplemental Touhy Request For Documents Relating to *In re:  3M Combat Arms Earplug Products Liability Litigation, 3:19-md-02885-MCR-GRJ (N.D. Fla.)*

Dear Major Evans:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*—a multidistrict litigation pending before Judge Rodgers in the Northern District of Florida—this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy*[1] request to the United States Department of Defense ("DoD"), Defense Logistics Agency ("DLA"), Army, Navy, Marine Corps, Air Force, and Coast Guard for certain contracts and other documents related to, among other things, the design, sale and use of Combat Arms Earplugs Version 2 ("CAEv2"); and (ii) noise exposure data and hearing conservation efforts in the various military branches.

Case Management Order No. 6 in MDL No. 2885 (Dkt. 6) states:  "With the assistance of Judge Herndon, the parties must review Defendants' supplemental DOD *Touhy* request dated July 26, 2019, as well as each side's DOD *Touhy* requests for interviews and/or depositions, and segregate the requests that are relevant to Defendants' affirmative defenses from those which are not relevant to the defenses. By December 13, 2019, the parties must submit the two lists to Major

---

[1]   *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951).

Beijing Boston Chicago Dallas Hong Kong Houston London Munich New York Palo Alto Paris San Francisco Shanghai Washington, D.C.

KE 65491569.1  12/2/2019

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 2

Evans and Major Kim, along with a request that the Government defer action on the *Touhy* requests that are not relevant to the affirmative defenses until after it responds to the *Touhy* requests for documents, interviews, and depositions that are relevant to the defenses." Pursuant to the Court's Order, this supplemental *Touhy* requests contains two categories of document requests: (i) document requests which should be prioritized in connection with Defendants' affirmative defenses; and (ii) document requests which should be de-prioritized.[2]

Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97, 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45, DoD Directive 5405.2 § 6.2, Navy Instruction 5820.8A, and Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

## I.    SUMMARY OF THE LITIGATION

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a long-standing relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation.

Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a

---

[2] Certain document request which should be de-prioritized may have some relevance to defendants' affirmative defenses. Nonetheless, Defendants understand that the Court wishes to move expeditiously with respect to government discovery and, accordingly, deprioritizes certain requests.

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 3

specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady attenuation of ambient noise. In contrast, the yellow end is nonlinear and attenuates different sounds differently. In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire. This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel. These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2. Design decisions regarding the CAEv2 may be contained in emails and other communications with Dr. Doug Ohlin. And one or more branches of the military may have tested the products' performance.

To date, over 900 cases have been filed on behalf of current or former military personnel. These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment. Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat settings, and assert claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud. On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order consolidating the cases in an MDL before Judge Rodgers in the Northern District of Florida.

## II.     SUMMARY AND RELEVANCE OF THE PRIORITY DOCUMENTS REQUESTED

Government actions and knowledge are critical issues in this litigation. The DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard exclusively possess necessary information concerning the military's decision to buy CAEv2 from Defendants, the precise specifications Defendants were required to follow in designing, evaluating, and selling the earplugs, military procurement and Indefinite-Quantity contracts, design features, operational considerations in the design of the earplugs, product testing, audiology reports and studies, and training, safety, and fitting information provided to service members. These materials speak to, among other things,

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 4


Plaintiffs' allegations that there was a product defect or failure to warn, Defendants' affirmative defenses, and various bases for the Court's subject matter jurisdiction over certain claims. Accordingly, the DoD, DLA, Army, Navy, Marine Corps, Air Force and Coast Guard possess information that is necessary for the Court to evaluate the parties' claims and defenses.

Defendants' specific priority document requests are contained in Section III, below. In short, Defendants request documents regarding: (a) design specifications and requests for proposals; (b) instructions for CAEv2 and other earplugs; (c) complaints or recalls related to CAEv2; (d) communications with Dr. Doug Ohlin and other government representatives regarding CAEv2; (e) CAEv2 testing; and (f) policies and procedures regarding earplug fit for service members. These documents are relevant to the claims and defenses in the above-referenced litigation for numerous reasons, including the following.

**Documents regarding design specifications and requests for proposals**. *First*, documents regarding design specifications and requests for proposals will rebut Plaintiffs' claims that CAEv2 was defectively designed, including by showing that design decisions balanced military performance requirements with operational needs for soldiers and military personnel. *Second*, these documents are relevant to establish Defendants' "government contractor" defense, under which a defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). In particular, the requested documents will show, among other things, that the military established reasonably precise specifications governing CAEv2's performance, testing, inspection, packaging, and labeling. *Third*, these documents are relevant to the Court's subject matter jurisdiction under the "federal officer removal statute," 28 U.S.C. § 1442(a)(1), which provides for federal jurisdiction where, as here, the complained of conduct was taken under the direction of a federal officer, and the defendant has "colorable" federal defenses (such as the "government contractor" defense referenced above). *See e.g., Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'").

**Documents regarding instructions for CAEv2 and other earplugs**. *First*, documents regarding instructions for CAEv2 and other earplugs may rebut Plaintiffs' principal allegation that Defendants failed to adequately instruct the military or individual service members on proper use, including in particular Plaintiffs' allegation that Defendants did not instruct the military to "roll back" the flanges on the opposite end prior to insertion. *Second*, a central issue in this litigation is whether and to what extent the Plaintiffs received and/or followed training on how to properly

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 5

insert earplugs, such as CAEv2, in their ears. Plaintiffs' failure to properly insert an earplug in their ears could decrease the attenuation provided by that earplug, and thus undermine any argument that a product defect caused their alleged injuries. *Third*, for similar reasons, these documents may support that particular Plaintiffs misused CAEv2, which is a common law defense to certain claims. *Fourth*, these documents may be relevant to Defendants' "government contractor" defense, which, as discussed above, requires a showing that the government was on notice of alleged product dangers. For example, to the extent the military included in service member instructions a reference to the product characteristics Plaintiffs now challenge—such as "rolling back" any flanges prior to insertion—then that would support that the government was on notice of the issue.

**Documents regarding complaints or recalls related to CAEv2**. *First,* to the extent there are no or few complaints or recalls, then that may undermine any assertion that CAEv2 was defective. *Second,* complaints by any particular Plaintiff are relevant to showing the date on which the Plaintiff was on notice of the alleged defect, which is relevant to whether the statute of limitations has run on his or her claims. *Third,* complaints by individual Plaintiffs may show that they continued to use CAEv2 after gaining knowledge of the alleged issue, which would support various common law defenses to Plaintiffs' tort claims, such as "assumption of the risk" and "failure to mitigate." *Fourth,* to the extent the government continued to purchase and use CAEv2 after receiving complaints about its performance, then that would support Defendants' government contractor defense, which, as noted above, requires a showing that the government was on notice of the alleged product dangers.

**Communications with Dr. Doug Ohlin and other government representatives regarding CAEv2**. *First,* communications with Dr. Ohlin and other government representatives regarding CAEv2 will rebut Plaintiffs' allegations that CAEv2 was defectively designed by showing that the military participated in the design of CAEv2 and made decisions that balanced performance requirements with operational needs for soldiers and military personnel. *Second*, these documents will help to establish Defendants' "government contractor" defense by showing that the military approved reasonably precise specifications, engaged in a continuous back-and-forth dialogue with Defendants regarding design specifications, and was on notice of the alleged product dangers. *Third,* like the design specifications and requests for proposals discussed above, Ohlin's and other government representatives' communications regarding CAEv2 are relevant to the Court's jurisdiction under the federal officer removal statute, which provides for federal jurisdiction where, as here, the complained of conduct was performed under the direction of a federal officer. 28 U.S.C. § 1442(a)(1).

**Documents regarding CAEv2 testing.** *First,* CAEv2 test results will undermine Plaintiffs' allegation that the product was defective. *Second,* testing documents in the military's possession—whether or not the test was performed by the military—will show that the military

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 6

was on notice of CAEv2 performance capabilities, which is relevant to, among other things, Plaintiffs' failure to warn claims, Defendants' "government contractor" defense, and the Court's jurisdiction under the federal officer removal statute.

**Policies and procedures regarding earplug fit for service members**. *First,* policies and procedures regarding earplug fit for service members will show whether and how the military determined that CAEv2 would fit in particular Plaintiffs' ear canals. To the extent such a determination was made, then that would undermine any allegation that the earplug did not "fit" a particular Plaintiff. To the extent it was not, then that may show that Plaintiffs were not using the earplug appropriately. *Second,* policies showing that the military required trained medical staff to make an individual determination of fit for each service member will undermine any allegation that Defendants were responsible for fitting individual service members. *Third,* these documents may show whether and how the military trained soldiers to insert earplugs like CAEv2 into their ears. As discussed above, Plaintiffs' failure to properly insert CAEv2 could significantly impact attenuation, and thus undermine Plaintiffs' argument that a product defect caused their alleged injuries. *Fourth,* these documents may provide the basis for a defense that Plaintiffs' misused CAEv2 by failing to follow military policies.

## III.   PRIORITY DOCUMENT REQUESTS FOR AFFIRMATIVE DEFENSES.

Pursuant to *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951), Case Management Order No. 6 in MDL No. 2885, and the above-referenced statutes, directives and instructions, Defendants request the following prioritized documents from the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard. To the extent that these documents relate to the procurement, design specifications, and audiology-related studies of CAEv2, Defendants understand that the contracting officer, the contracting officer's representative, and the hearing conservation program manager may be likely sources of the requested information.

### A.   Documents Regarding Design Specifications And Requests For Proposals.

1.   Specifications and drawings for the CAEv2.

2.   Specifications and drawings, including those transmitted via email, related to the stem size and/or length of the CAEv2 from 1996 to 2000.

3.   Documents related to Georges Garinther's APEX trip to the ISL Institute in France December 5-23, 1995.

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 7

4.       Documents pertaining to the December 16, 1997 meeting at Aberdeen Proving Ground, Maryland attended by G. Richard ("Dick") Price, Dr. Doug Ohlin, Georges Garinther, Theresa Schultz, Armand Dancer, Pascal Hamery, and Elliott Berger.

5.       Documents, including those transmitted via email, related to CAEv2 prototype samples received by Dr. Ohlin from Defendants in 1998.

6.       Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-100-1674, olive drab color.

7.       Specifications and drawings for the earplug carrying case (national stock number (NSN)) 6515-01-533-6168, navy blue color.

8.       Request for Proposal known as Solicitation No. SP0200-06-R-4202.

9.       Request for Proposal known as Solicitation No. SP0200-07-D-4103.

10.      Responses to Solicitation No. SP0200-06-R-4202, including from 3M and Aearo.

11.      Responses to Solicitation No. SP0200-07-D-4103, including from 3M and Aearo.

12.      Requests for Proposals, Commerce Business Daily announcements, or solicitations including design and/or performance specifications, features or performance requirements for any "nonlinear," "level-dependent," "sound transmission," "amplitude-sensitive," "pass-through," "gunshot-reactive," "shooter's earplug," "dual state," or "situation-awareness enhancing" hearing protection device or earplug or ear insert style, from January, 1998 to December, 2015.

13.      Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the sizing of any hearing protective earplug, the distribution of military personnel to be accommodated by various sizes of earplugs, or the means of matching earplug sizes to individuals, from January, 1998 to December, 2015.

14.      Request for Proposals, Commerce Business Daily announcements, or solicitations that include any design and/or performance specifications, features or other requirements related to the length and/or diameter of any hearing protective earplug, and/or the compatibility of any hearing protective earplug with other headgear such as helmets or earphones, from January, 1998 to December, 2015.

### KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 8

**B.      Documents Regarding Instructions For CAEv2 And Other Earplugs.**

1.      Wallet Card instructions, Blister Pack instructions, Retail Pack instructions, instructions on or with bulk earplug boxes, and other bulk packaging instructions for CAEv2 from January, 1998 to December, 2015.

2.      Training materials regarding the proper use, fit, maintenance, and/or care of CAEv2 from January, 1998 to December, 2015, including but not limited to, presentations, slide decks, computerized tutorials, on-line instructions, printed instructions, pamphlets, or memoranda.

3.      Specifications, instructions or training materials relating to folding back, flipping backward, rolling back, or reversal of the flanges of any flange-style hearing protective earplug from January, 1998 to December, 2015.

4.      Documents and photos, including drafts, input into the "Visual Information (VI) Work Order System" related to wallet-size, laminated instruction cards for CAEv2 from 2000 to 2005.

5.      Communications related to information input into the "Visual Information (VI) Work Order System" related to wallet-size, laminated instruction cards for CAEv2 from 2000 to 2005.

6.      Documents and drafts of wallet-size, laminated instruction cards for CAEv2 produced from the "Visual Information (VI) Work Order System" from 2000 to 2005.

**C.      Documents Regarding Complaints Or Recalls Related To CAEv2.**

1.      Feedback and complaints relating to the CAEv2 provided by service member users.

2.      Feedback and complaints relating to the CAEv2 provided by military audiologists and medically trained personnel.

3.      Feedback and complaints relating to CAEv2 provided by service member uses to military audiologists.

4.      Product recalls and accident or injury documentation related to CAEv2 from January, 1998 to December, 2015.

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 9

**D.      Communications With Dr. Douglas Ohlin And Other Government Representatives Regarding CAEv2.**

1.      Communications relating to the CAEv2 that are to, from, copying, or involving Dr. Douglas Ohlin, Lieutenant Colonel Eric Fallon, Lieutenant Colonel Marjorie Grantham, Lieutenant Colonel Martin Robinette, Lieutenant Colonel John Merkley, Colonel Kathy Gates, and Brian Hobbs from 1996 forward. 3M requests that the following search terms be used to search these communications: "CAE" OR "CAEP" OR "Combat Arms" OR "CAEv2" OR "CEP" OR "Aearo" OR "Aero" OR "3M" OR "Berger" OR "wallet card" OR flange OR "NRR" OR "ISL" OR "Institut Saint- Louis" OR "Moldex" OR "battleplug" OR "hear-through" OR "pass-through" "level-dependent" OR "amplitude-sensitive" OR "CAEP" OR "double-ended" OR "double-sided" OR "imperceptible" OR "imperceptibly" OR "slippage" OR "carrying case" OR "prototype" OR "production sample" OR "cut down the stem" OR "one-quarter inch" OR "1/4 inch" OR "wallet card." To the best of 3M's knowledge, Dr. Ohlin's and the other government representatives' email addresses during this time frame were: doug.ohlin@us.army.mil; Douglas.Ohlin@,APG.AMEDD,ARMY.MIL; Douglas.Ohlin@AMEDD.ARMY.MIL;   mariorie.grantham@us.army.mil;   marj orie.grantham@arl.army.mil;          mariorie.a.grantham.mil@mail.mil; martin.robinette@us.army.mil;          martin.b.robinette.mil@mail.mil; iohn.a.merklev.mil@mail.mil;          iohn.merklev@us.af.mil; John.Merkley@us.army.mil;          John.Merklev2@AMEDD.ARMY.MIL; Kathy.Gates@us.army.mil;          kathy.e.gates.ctr@mail.mil; brian.hobbs@med.navv.mil; eric.fallon@us.armv.mil; Eric.Fallon@med.navy.mil.

**E.      Documents Regarding CAEv2 Testing.**

1.      CAEv2 test results (excluding test results that are publicly available) provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *internal* to the DoD:

        a.      CAEv2 attenuation testing for continuous and impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA S12.6-1997, ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 10

    b.    CAEv2 test results from Army Research Laboratory, Aberdeen Proving Ground, Maryland;

    c.    CAEv2 test results from U.S. Army Aeromedical Research Laboratory, Ft. Rucker, Alabama;

    d.    CAEv2 test results from Air Force Research Laboratory, Wright-Patterson Air Force Base, Ohio;

    e.    CAEv2 test results from Naval Air Systems Command, Patuxent River, Maryland;

    f.    CAEv2 test results from White Sands Missile Range, New Mexico;

    g.    CAEv2 test results publications, or research authored or presented by any of the following individuals: Dr. Lorraine Babeu, Dr. Kathy Gates, Dr. Nancy Vause, Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedel, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, Dr. Eric Fallon, Douglas Moses, and/or Elliott Berger.

2.    Data and protocols relating to any of the above-listed tests, including if the test results are publicly available but the data and protocols are not publicly available.

3.    CAEv2 test results (excluding test results that are publicly available) provided to the Army, Navy, Marine Corps, Coast Guard, Air Force, Defense Logistics Agency, and Department of Defense from testing laboratories *external* to the DoD:

    a.    CAEv2 attenuation testing for continuous and/or impulsive noise (on either end of the earplug) performed according to any of the following standards: ANSI/ASA S3.19-1974, ANSI/ASA S12.6-1997,ANSI/ASA S12.6-2008, ANSI/ASA S12.6-2016, ANSI/ASA S12.42-1995, ANSI/ASA S12.42-2010, and MIL-STD-912;

    b.    CAEv2 test results from NIOSH; and

    c.    CAEv2 test results from A.L. Dancer or P.J.F. Hamery of French-German Research Institut of Saint-Louis.

4.    Data and protocols relating to any of the above-listed tests, including if the test results are publicly available but the data and protocols are not publicly available.

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 11

**F.      Policies And Procedures Regarding Earplug Fit For Service Members.**

1.      Policies and procedures relating to compliance with ST 4-02.501 (Feb. 1 2008), Army Hearing Program, § 4-54, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

2.      Policies and procedures relating to compliance with Department of the Army Pamphlet 40-501, Hearing Conservation, that medically trained personnel must fit service members with triple-flanged earplugs to ensure a proper fit.

3.      Policies and procedures relating to compliance with DoD Instruction 6055.12 (Dec. 3, 2010), DoD Hearing Conservation Program, Enclosure 3, § 7(i), that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

4.      Policies and procedures relating to compliance with TM6260.51.99-2 (Sept. 15, 2008), Navy Hearing Conservation Program Procedures, § C1.4.1, that medically trained personnel must fit service members with preformed earplugs to ensure a proper fit.

5.      Policies, procedures, and instructions given to military audiologists regarding proper fit, use, and care

## IV.    SUMMARY AND RELEVANCE OF THE DE-PRIORITIZED DOCUMENTS REQUESTED

Defendants' specific de-prioritized document requests are contained in Section V, below. In short, Defendants request documents regarding: (a) the military's purchase and distribution of CAEv2; (b) noise and ototoxin exposure in the military; and (c) hearing protection usage in the military. These documents are relevant to the claims and defenses in the above-referenced litigation for numerous reasons, including the following.

**Documents regarding purchasing and distribution data**. *First,* documents regarding purchasing and distribution data will help identify which Plaintiffs may have used CAEv2, which is a threshold issue for any claim. *Second,* these documents will help determine when a particular Plaintiff used CAEv2 and are thus relevant to whether any claims are barred by the applicable statute of limitations. *Third*, these documents may show whether and to what extent CAEv2 was distributed in combat zones, which is relevant to Defendants' "combatant activities" defense. Although Congress waived sovereign immunity for tort claims against the United States and those acting on its behalf in the Federal Tort Claims Act, it excluded "claims arising out of combatant

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 12

activities of the military or armed forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). This "combatant activities" exception has been applied to contractors like Defendants to create a federal defense shielding manufacturers from tort claims arising from war.[3] *Fourth*, these documents will show that CAEv2 was distributed at least in part at military bases, which is relevant to the Court's subject matter jurisdiction under the "federal enclave" doctrine. In particular, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves,'" such as military bases, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006), and Defendants have removed certain cases from state court to federal court in part on that basis.[4]

**Documents regarding noise and ototoxin exposure in the military**. *First*, documents regarding noise exposure data—such as noise dosimetry and sound level data—will show that Plaintiffs were exposed to a wide variety of potentially dangerous noises or ototoxins unrelated to their use of CAEv2, which will undermine Plaintiffs' allegation that CAEv2 caused their alleged injuries. *Second*, these documents may show that individual Plaintiffs violated military hearing protection recommendations by performing dangerous activities with no or insufficient hearing protection, which would also undermine any assertion that CAEv2 caused their alleged injuries. *Third*, these documents may also support Defendants' "combatant activities" defense by showing that service members were required to wear CAEv2 in combat situations. *Fourth*, these documents are also relevant to the Court's subject matter jurisdiction under the federal officer removal statue, which requires a showing that Defendants have "colorable" defenses under federal law.

**Documents regarding (actual) hearing protection usage in the military**. These documents are relevant to the issue of whether or not service members typically use recommended or required hearing protection—including both in training and in combat settings—which is relevant to, among other things, Plaintiffs' assertions that CAEv2 caused their alleged injuries.

## V.   DE-PRIORITIZED DOCUMENT REQUESTS FOR AFFIRMATIVE DEFENSES.

Pursuant to *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951), Case Management Order No. 6 in MDL No. 2885, and the above- referenced statutes, directives and instructions,

---

[3] *See, e.g., Saleh v. Titan Corp.*, 580 F.3d 1, 6 (D.C. Cir. 2009) (applying § 2680(j) exception to tort claims arising from treatment of inmates in military prison in Iraq brought against private contractor); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993) ("The combatant activities exception generates a federal common law defense which immunizes manufacturers such as Hughes from state tort suits arising from war.").

[4] *See Jamil v. Workforce Resources, LLC*, 2018 WL 2298119 (C.D. Cal. May 21, 2918) ("Camp Pendleton is a federal enclave"); *see also Haining v. Boeing Co.*, 2013 WL 4874975, at *2 (C.D. Cal. Sept. 11, 2013) (concluding Vandenberg AFB is a federal enclave).

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 13

Defendants request the following de-prioritized documents from the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard.

### A.  Documents Regarding Purchasing And Distribution Of CAEv2.

1.  Documents sufficient to show: (i) the number of CAEv2 earplugs purchased by the United States; (ii) the dates on which CAEv2 earplugs were purchased by the United States, and the number purchased on each such date; (iii) the number of CAEv2 earplugs purchased for the (a) Army, (b) Navy, (c) Marine Corps, (d) Air Force, and (e) Coast Guard; and (iv) the identity of the distributor who made each sale of CAEv2 earplugs to the United States on each date.

2.  Documents sufficient to show: (i) the specific locations to which CAEv2 earplugs were distributed, including the number distributed to each; (ii) if applicable, the military unit (e.g., division, brigade, battalion/battery, regiment, fleet, squadron, company, etc.) to which CAEv2 earplugs were distributed, including the number distributed to each; (iii) if applicable, the bases to which CAEv2 earplugs were distributed, including the number distributed to each base; and (iv) if applicable, the audiology or public health program directors to whom CAEv2 were distributed, including the number distributed to each.

### B.  Documents Regarding Noise And Ototoxin Exposure In The Military.

1.  Noise dosimetry data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons.

2.  Sound level data and recommendations for hearing protection in particular situations or when operating particular weapons, such as those documented on DD Form 2214.

3.  Documents that contain recommendations and/or guidelines for specific hearing protectors to be worn when using specific weapons or when encountering other noise exposures.

4.  Documents regarding military noise exposures or hearing protection recommendations or guidelines authored by the following individuals, excluding documents that are publicly available: Dr. Richard Price, Dr. Joel Kalb, Dr. P. Fedele, Dr. Georges Garinther, Dr. Tomas R. Letowski, Richard McKinley, Dr.

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 14

Lorraine Babeu, Dr. Doug Ohlin (deceased), Dr. William Ahroon, Dr. Douglas Brungart, and Dr. Eric Fallon.

5. Research by Dr. Richard Price and/or Dr. Joel Kalb of the Army Research Laboratory that has used the Auditory Hazard Assessment Algorithm for Humans ("AHAAH") model in connection with nonlinear earplugs, including the CAEv2, excluding documents that are publicly available.

6. Studies or policies relating to the prevention of service member exposure to the following ototoxins: toluene, xylene, n-hexane, organic tin, carbon disulfide, mercury, organic lead, hydrogen cyanide, diesel fuel, kerosene fuel, jet fuel, organophosphate pesticides, and nerve agents, excluding documents that are publicly available.

7. Internal research and results relating to the Noise Outcomes in Service Member Epidemiology ("NOISE") Study.

8. Policies and procedures regarding effective quiet areas (e.g., effective quiet areas on a U.S. Navy aircraft carrier) designed to expose service members to lower levels of noises, excluding documents that are publicly available. See also ST 4-02.501, Army Hearing Program, Section 4-18 (Feb. 1 2008) ("The most effective administrative control is to provide quiet areas where Soldiers can gain relief from workplace noise. Areas used for breaks and dining facilities should be located away from noise. If these areas must be near noise, they should have noise barriers appropriately placed to minimize background noise levels."); https://www.ncbi.nlm.nih.gov/pubmed/30943127 (abstract of article entitled "Noise characterization of 'effective quiet' areas on a U.S. Navy aircraft carrier").

**C. Documents Regarding Hearing Protection Usage In The Military.**

1. Studies regarding the actual (as opposed to suggested or required) usage of hearing protection (including, but not limited to, CAEv2) by service members in training or combat from 2000 to the present.

## VI. ADDITIONAL CONSIDERATIONS

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard regarding the provision of information by its employees in connection with litigation in federal court:

## KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 15

1.    Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2.    Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3.    Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4.    Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5.    Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6.    Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7.    Disclosure would not violate any person's expectation of confidentiality or privacy.

8.    The United States is not, and is not reasonably anticipated to be, a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## VII.    ADMINISTRATIVE MATTERS

Defendants will bear the costs of duplicating and producing the documents sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States. For ease of production, all electronically stored information can be produced via a secure file transfer protocol site that will be provided free of charge or via electronic storage media that will be provided to you at no charge and upon your request. Any requests for assistance with the

# KIRKLAND & ELLIS LLP

Major Collin Evans
December 2, 2019
Page 16

transmittal of electronically stored documents, or coordination of the inspection of documents should be made to Mark Nomellini, counsel for Defendants, at (312) 862-2410 or mnomellini@kirkland.com. Additionally, to the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the request.

If you anticipate that full production will require more than one hundred twenty (120) days from the date of service, we request that you notify Defendants and/or the Court. Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me. Thank you for your assistance.

Sincerely,

*/s/ Mark J. Nomellini*

Mark J. Nomellini

cc:      Michael J. Fucci
         Associate General Counsel
         Department of Defense
         Michael.j.fucci.civ@mail.mil

# EXHIBIT 4

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Mark J. Nomellini | 300 North LaSalle | |
| To Call Writer Directly: | Chicago, IL 60654 | |
| +1 312 862 2410 | United States | Facsimile: |
| mnomellini@kirkland.com | +1 312 862 2000 | +1 312 862 2200 |
|  | www.kirkland.com | |

March 17, 2020

**<u>Via Email</u>**

Major Collin Evans
Litigation Attorney, General Litigation Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
collin.p.evans2.mil@mail.mil
703-693-0352

Re: Supplemental *Touhy* Request Relating to *In re: 3M Combat Arms Earplug
Products Liability Litigation, 3:19-md-02885-MCR-GRJ (N.D. Fla.)*

Dear Major Evans:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*—a multidistrict litigation pending before Judge Rodgers in the Northern District of Florida—this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy* request to the United States Department of Defense ("DoD"), Army, Navy, Marine Corps, Air Force, and Coast Guard for certain documents related to Military Audiology Short Course meetings held while the Combat Arms Earplugs Version 2 were in use.

## I.     SUMMARY OF THE LITIGATION

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a long-standing relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs—the subject of this litigation.

# KIRKLAND & ELLIS LLP

Maj. Collin Evans
March 17, 2020
Page 2

Hearing loss is a common injury among military veterans.  The U.S. military has provided hearing protection and preservation services to soldiers for decades.  In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2.  CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine.  Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL").  Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center.  The green end works like a conventional passive earplug, providing steady attenuation of ambient noise.  In contrast, the yellow end is nonlinear and attenuates different sounds differently.  In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear.  The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire.  This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

Servicemember plaintiffs in this litigation allege that the CAEv2 was defective and caused them to sustain serious injuries during their military service, including hearing damage.  In particular, Plaintiffs allege they were not aware of the need to roll back the flanges of the opposing end of the CAEv2 to obtain an adequate fit because Defendants concealed this issue from the military.  Defendants argue that plaintiffs' claims are barred by the government contractor defense, which preempts state tort claims "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).  The military's knowledge of the alleged need to roll back the flanges is therefore critical to Defendants' government contractor defense.

## II.    SUMMARY AND RELEVANCE OF THE DOCUMENTS REQUESTED

# KIRKLAND & ELLIS LLP

Maj. Collin Evans
March 17, 2020
Page 3

**Documents Related To Annual Military Audiology Association Short Course Meetings From 2001 to 2005.**  Defendants request documents, communications, and presentations related to the annual meetings of the Military Audiology Association from 1999 to 2005.  Such documents are highly relevant to Defendants' government contractor defense because such documents speak to, among other things, military knowledge with respect to whether and when to roll back the flanges of CAEv2 to improve fit.  For example, LTC John Merkley testified during his February 27, 2020 deposition that Dr. Doug Ohlin had discussions regarding the CAEv2 with "most of the Army audiologists" at the "military audiology short course" conferences Merkley attended between 2001 and 2005.  Merkley Dep. Tr. at 105:14-107:2.  Merkley testified that, during these meetings, Dr. Ohlin informed Army audiologists that some users might find it beneficial to roll back the opposing flanges of the CAEv2 in order to obtain a better fit.  *Id*. at 98:4-99:2.  Materials related to the annual Short Course meetings may include Dr. Ohlin's advice regarding rolling back the flanges, or other information conveyed to audiologists regarding the CAEv2, which would demonstrate the military's knowledge of the product's capabilities and limitations.  Although LTC Merkley discussed the conferences he attended between 2001-2005 in particular, Defendants request materials related to the broader 1999-2005 time period because Dr. Ohlin likely would have given similar talks in the years prior to Merkley becoming an Army audiologist.

**Documents Identified In Army Pamphlet 40-501 Regarding Service Member Noise Exposure.**  Defendants request documents related to the noise surveys, identification of noise-hazardous areas, and identification of noise-exposed and ototoxin-exposed personnel, which are performed and maintained by the Industrial Hygiene Program Managers for each Army installation per Army Pamphlet 40-501.  In particular, Army Pamphlet 40-501 requires the Industrial Hygiene Program Manager at every Army installation to, among other things, (i) survey all known and suspected noise-hazardous areas and equipment and ototoxic exposures, (ii) maintain a current inventory of all noise-hazardous areas, (iii) compile the names and social security numbers of noise-exposed and ototoxic-exposed personnel and the magnitude of their noise exposure, and (iv) track noise exposure violations for inclusion on a violation inventory log.  (DA PAM 40-501 at 1-4.)  Similarly, Army Pamphlet 40-501 requires the Hearing Conservation Officers to, among other things, (i) notify noise-exposed and ototoxic-exposed personnel under their supervision of their exposures, and (ii) ensure that noise-exposed and ototoxic-exposed personnel wear noise and ototoxic chemical dosimeters when requested.  (*Id.*)  Documents regarding each of these activities are relevant to determining the cause of any hearing loss or tinnitus alleged by the Plaintiffs, and will be necessary for Defendant's to adequately prepare these cases for trial.

**Documents Identified In Army Pamphlet 40-501 Regarding Service Member Complaints Regarding Combat Arms Version 2.**  Defendants request documents related to any service member complaints regarding Combat Arms Earplugs version 2.  Army Pamphlet 40-501 requires the Hearing Conservation Officers to, among other things, refer any personnel under their

# KIRKLAND & ELLIS LLP

Maj. Collin Evans
March 17, 2020
Page 4

supervision to the military treatment facility for any complaints associated with wearing hearing protectors.  (DA PAM 40-501 at 1-4)  Documents memorializing any service member complaints regarding the CAEv2 are relevant to Plaintiffs' assertions that the CAEv2 is defective and does not provide adequate attenuation.

## III.     ADMINISTRATIVE MATTERS

Defendants will bear the costs of duplicating and producing the documents sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States.  Any requests for assistance with the transmittal of electronically stored documents, or coordination of the inspection of documents should be made to Mark Nomellini, counsel for Defendants, at (312) 862-2410 or mnomellini@kirkland.com.  Defendants are willing to work with any Federal agencies implicated in this request in order to properly narrow or tailor the scope of this and any future request.  If you should require additional information as to the relevancy of any document listed in this request, we would be happy to provide it at your convenience.

Should you have any questions or require any additional information concerning this request, please do not hesitate to contact me.  Thank you for your assistance.

Sincerely,

*/s/ Mark J. Nomellini*

Mark J. Nomellini

cc:     Major Nicole Kim
        Judge Advocate, U.S. Army
        Litigation Attorney
        nicole.m.kim2.mil@mail.mil

        Jacqueline Snead
        Federal Programs Branch
        Department of Justice
        jacqueline.snead@usdoj.gov

# **<u>EXHIBIT 5</u>**

**From:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil>
**Sent:** Wednesday, May 20, 2020 2:39 PM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com>; Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov>; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil>
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: [Non-DoD Source] RE: 3M CAE Litigation


Nick-

I'm referring to the portions of those paragraphs that use words like "operating particular weapons systems"  or "specific weapons". For those paragraphs that include those words, are the requests being narrowed to just the weapons you listed in your email?

V/r

Major Collin P. Evans
Litigation Attorney
General Litigation Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
Office: 703-693-0352
Mobile: 571-234-3843
Email: Collin.p.evans2.mil@mail.mil

**From:** Wasdin, Nick <nick.wasdin@kirkland.com>
**Sent:** Wednesday, May 20, 2020 11:52 AM
**To:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil>; Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov>; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil>
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: [Non-DoD Source] RE: 3M CAE Litigation

All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.

---

I did not understand that providing this information would narrow our requests.  We are still seeking other documents/data regarding the amount of noise service members are exposed to in particular specialties or situations.

For example, it was our understanding that, per 40-501, the Industrial Hygiene Program Manager at every Army installation was required to, among other things, (i) survey all known and suspected noise-hazardous areas and equipment and ototoxic exposures, (ii) maintain a current inventory of all noise-hazardous areas, (iii) compile the names

equipment and ototoxic exposures, (ii) maintain a current inventory of all noise-hazardous areas, (iii) compile the names and social security numbers of noise-exposed and ototoxic-exposed personnel and the magnitude of their noise exposure, and (iv) track noise exposure violations for inclusion on a violation inventory log.  (DA PAM 40-501 at 1-4.)  Similarly, 40-501 requires Hearing Conservation Officers to, among other things, (i) notify noise-exposed and ototoxic-exposed personnel under their supervision of their exposures, and (ii) ensure that noise-exposed and ototoxic-exposed personnel wear noise and ototoxic chemical dosimeters when requested.  (Id.)

If those or other data/documents regarding noise exposures exist, we are still requesting them.  That said, I understood from our last call that you had looked into those types of records and determined that they do not exist, and that the only noise-exposure type records that do exist are the health hazard assessments, but let me know if that's incorrect.

Thanks again,

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com >

**From:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil>
**Sent:** Wednesday, May 20, 2020 9:17 AM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com>; Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov>; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil>
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: [Non-DoD Source] RE: 3M CAE Litigation

Thanks Nick. I will send these to the HHA folks to see if they can pull this information.  Am I correct that this narrows paragraphs (I)(1) and (I)(2) of your July 26, 2019 request, and (b)(1) and (b)(2) of your December 2, 2019 request?

Major Collin P. Evans
Litigation Attorney
General Litigation Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
Office: 703-693-0352
Mobile: 571-234-3843
Email: Collin.p.evans2.mil@mail.mil < Caution-mailto:Collin.p.evans2.mil@mail.mil >

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com > >
**Sent:** Wednesday, May 20, 2020 9:34 AM
**To:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-mailto:collin.p.evans2.mil@mail.mil > >; Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-mailto:Jacqueline.Snead@usdoj.gov > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-mailto:nicole.m.kim2.mil@mail.mil > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-mailto:mnomellini@kirkland.com > >
**Subject:** RE: [Non-DoD Source] RE: 3M CAE Litigation

All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.

---

Thanks, Collin.

Separately, our last call, you asked us to pass along a list of weapons used by the bellwether plaintiffs to help prioritize production of the health hazard assessments associated therewith. That list is below. I apologize in advance that some of these are generic (e.g., "grenades"); it's the best list we could compile based on the information provided by the plaintiffs to date.

Thanks as always,

Nick

- .50 Cal Machine Gun
- 120 MM Cannon
- 25 MM
- 50 Cal
- 60 MM
- 81 MM
- AT4
- Beretta M9
- Browning M2
- Carl Gustove Rocket Launcher
- Claymore M18
- Firing pistols
- Grenades
- Javalin Rocket Launcher
- Law Rocket Launcher
- M1 A2
- M109 Howitzer
- M119 Howitzer
- M14
- M16
- M16 A2
- M16 A4
- M16/203
- M19
- M2
- M2 40B
- M2 50 CAL
- M-203
- M223
- M240
- M243
- M249
- M256
- M29
- M320

- M4
- M4 A2
- M4 Carbine
- M9
- MK19
- Shotgun
- Smaw-D Rocket Launcher
- Striker tank, 60 mm and 120 mm mortars
- Tank Artillery

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com > < Caution-Caution-mailto:nick.wasdin@kirkland.com >

**From:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-mailto:collin.p.evans2.mil@mail.mil > >
**Sent:** Wednesday, May 20, 2020 8:17 AM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com > >; Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-mailto:Jacqueline.Snead@usdoj.gov > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-mailto:nicole.m.kim2.mil@mail.mil > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-mailto:mnomellini@kirkland.com > >
**Subject:** RE: [Non-DoD Source] RE: 3M CAE Litigation

Nick-

Yes, I can provide you the letter by COB Friday.

V/r

Major Collin P. Evans
Litigation Attorney
General Litigation Branch
U.S. Army Legal Services Agency
9275 Gunston Road
Ft. Belvoir, VA 22060
Office: 703-693-0352
Mobile: 571-234-3843
Email: Collin.p.evans2.mil@mail.mil < Caution-mailto:Collin.p.evans2.mil@mail.mil > < Caution-Caution-mailto:Collin.p.evans2.mil@mail.mil >

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-mailto:nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-mailto:nick.wasdin@kirkland.com > > >
**Sent:** Tuesday, May 19, 2020 5:52 PM
**To:** Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-

mailto:nicole.m.kim2.mil@mail.mil  > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-mailto:mnomellini@kirkland.com  > > >
**Subject:** [Non-DoD Source] RE: 3M CAE Litigation

All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.

---

Thanks, Jacqui.  Given our timing concerns, is the government able to provide the letters by the end of the week?

Best,

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com  >  < Caution-Caution-mailto:nick.wasdin@kirkland.com  >  < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  >

**From:** Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  > > >
**Sent:** Tuesday, May 19, 2020 4:49 PM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-mailto:nick.wasdin@kirkland.com  > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-mailto:mnomellini@kirkland.com  > > >
**Subject:** RE: 3M CAE Litigation

Hi Nick:

We are working on letters and would prefer that they serve as the government's response to your request for an update.  As for your prospective expert witness, he/she may want to contact the Office of Government Ethics or OGC of the former agency employer to discuss the engagement and find out what statutory constraints are applicable.

Thanks.

Jacqui

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-

5

mailto:nick.wasdin@kirkland.com  %3c Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  > > > >

**Sent:** Tuesday, May 19, 2020 1:19 PM

**To:** Snead, Jacqueline Coleman (CIV) <jsnead@CIV.USDOJ.GOV < Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  < Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  < Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  %3c Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > >;
Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > >

**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > >

**Subject:** RE: 3M CAE Litigation

Jacqui,

Following up on the below, is there a time this week that would work for a call?

Best,

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
T +1 312 862 3254 F +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com  > < Caution-Caution-mailto:nick.wasdin@kirkland.com  > < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com >

---

**From:** Wasdin, Nick
**Sent:** Thursday, May 14, 2020 8:04 AM
**To:** 'Snead, Jacqueline Coleman (CIV)' <Jacqueline.Snead@usdoj.gov < Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > >;
Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-

mailto:nicole.m.kim2.mil@mail.mil < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > > >

**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > > >

**Subject:** RE: 3M CAE Litigation

Thanks, Jacqui.

We have a number of deadlines in the litigation coming up over the next few weeks, and it would be very helpful to get a preview of the documents and depositions that will be coming.  It would also be helpful for us to further discuss with you the statutory constraints that might be implicated by former government experts.  And so if you have any time over the next few days, we think a call could still be beneficial.

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com > < Caution-Caution-mailto:nick.wasdin@kirkland.com > < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com >

**From:** Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  > > > >
**Sent:** Thursday, May 14, 2020 6:17 AM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  > > > >;
Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > > >
**Subject:** RE: 3M CAE Litigation

Good morning:

We have decided to prepare written supplemental Touhy responses to the open Touhy requests this month that should obviate the need for the telephone update that you have requested. As for your former government employee expert, if he or she intends to use official information then authorization of the agency is required, and you would need to submit a request to the agency. There are also statutory constraints on former government employee experts that might be implicated.

Thanks.

Jacqui

---

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  %3c Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  > > > >
**Sent:** Wednesday, May 13, 2020 6:49 PM
**To:** Snead, Jacqueline Coleman (CIV) <jsnead@CIV.USDOJ.GOV < Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  < Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  < Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  %3c Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > > >
**Subject:** RE: 3M CAE Litigation

Thanks, Jacqui.

Mark and I are available (all time Eastern)
- Thursday: before 10:30, or 1-4:30
- Friday: any time other than 12-3.

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com >

**From:** Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov _ < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov _ < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov _%3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov _ > > > >
**Sent:** Wednesday, May 13, 2020 11:41 AM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _ < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _ < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _%3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-mailto:nick.wasdin@kirkland.com _ > > > >;
Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _%3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ > > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil _ < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil _%3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil _ > > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com _ < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com _ < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com _%3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com _ > > > >
**Subject:** RE: 3M CAE Litigation

Hi Nick:

Yes, your understanding is correct.  Sorry for the confusion I created.

Thanks.

Jacqui

---

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _ < Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _ < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com _%3c Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-mailto:nick.wasdin@kirkland.com _ > > > >
**Sent:** Wednesday, May 13, 2020 12:24 PM
**To:** Snead, Jacqueline Coleman (CIV) <jsnead@CIV.USDOJ.GOV < Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV _ < Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV _ < Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV _ > > >; Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _%3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil _ > > >;
Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil _ < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil _ < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-

mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > > >

**Cc:** Nomellini, Mark J. < mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > > >

**Subject:** RE: 3M CAE Litigation

Thanks. I saw Major Kim's separate email proposing 3:30 this afternoon, but I believe Jacqui's email below means we are not moving forward at that time.  Let me know if that's wrong.  Otherwise we will schedule the call at a time that works for everyone.

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-mailto:nick.wasdin@kirkland.com >

**From:** Snead, Jacqueline Coleman (CIV) <Jacqueline.Snead@usdoj.gov < Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  < Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  < Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  %3c Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov %3c Caution-Caution-Caution-mailto:Jacqueline.Snead@usdoj.gov  > > > >
**Sent:** Wednesday, May 13, 2020 11:18 AM
**To:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com   < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  %3c Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  > > > >;
Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  > > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  > > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  > > > >
**Subject:** RE: 3M CAE Litigation

Good afternoon Nick:

I am not available this afternoon.  We'll get back to you under separate cover.

Thanks.

Jacqui

**From:** Wasdin, Nick <nick.wasdin@kirkland.com < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  < Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com   < Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com  %3c Caution-Caution-mailto:nick.wasdin@kirkland.com %3c Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com   > > > >
**Sent:** Tuesday, May 12, 2020 1:39 PM
**To:** Evans, Collin P MAJ USARMY HQDA OTJAG (USA) <collin.p.evans2.mil@mail.mil < Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  < Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil   < Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil  %3c Caution-Caution-mailto:collin.p.evans2.mil@mail.mil %3c Caution-Caution-Caution-mailto:collin.p.evans2.mil@mail.mil   > > > >; Kim, Nicole M MAJ USARMY HQDA OTJAG (USA) <nicole.m.kim2.mil@mail.mil < Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  < Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil   < Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil  %3c Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil %3c Caution-Caution-Caution-mailto:nicole.m.kim2.mil@mail.mil   > > > >; Snead, Jacqueline Coleman (CIV) <jsnead@CIV.USDOJ.GOV < Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  < Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV   < Caution-mailto:jsnead@CIV.USDOJ.GOV %3c Caution-Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV  %3c Caution-Caution-mailto:jsnead@CIV.USDOJ.GOV   > > > >
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com < Caution-Caution-Caution-mailto:mnomellini@kirkland.com  < Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com   < Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com  %3c Caution-Caution-mailto:mnomellini@kirkland.com %3c Caution-Caution-Caution-mailto:mnomellini@kirkland.com   > > > >
**Subject:** 3M CAE Litigation

All,

Do folks have time for a call sometime this week?  In addition to getting any updates on the items we discussed last week, we'd like to discuss the government's views on defendants retaining former government employees as experts in the litigation.

Nick

**Nicholas F. Wasdin**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3254 **F** +1 312 862 2000

nick.wasdin@kirkland.com < Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-mailto:nick.wasdin@kirkland.com >  < Caution-Caution-Caution-mailto:nick.wasdin@kirkland.com >

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or byemailtopostmaster@kirkland.com < Caution-mailto:emailtopostmaster@kirkland.com >  < Caution-Caution-mailto:topostmaster@kirkland.com >  < Caution-Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or byemailtopostmaster@kirkland.com < Caution-mailto:emailtopostmaster@kirkland.com > < Caution-Caution-mailto:topostmaster@kirkland.com > < Caution-Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or byemailtopostmaster@kirkland.com < Caution-mailto:emailtopostmaster@kirkland.com > < Caution-Caution-mailto:topostmaster@kirkland.com > < Caution-Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or byemailtopostmaster@kirkland.com < Caution-mailto:emailtopostmaster@kirkland.com > < Caution-Caution-mailto:topostmaster@kirkland.com > < Caution-Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or byemailtopostmaster@kirkland.com < Caution-mailto:emailtopostmaster@kirkland.com > < Caution-Caution-mailto:topostmaster@kirkland.com > < Caution-Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by emailtopostmaster@kirkland.com < Caution-mailto:topostmaster@kirkland.com > < Caution-Caution-mailto:postmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email topostmaster@kirkland.com < Caution-mailto:topostmaster@kirkland.com > , and destroy this communication and all copies thereof, including all attachments.

# **<u>EXHIBIT 6</u>**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Mark Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

August 7, 2020

**Via Email**

Major Nicole Kim
Nicole.m.kim2.mil@mail.mil
(703) 693-1092

Re:   Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Major Kim:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a multidistrict litigation pending before the Northern District of Florida, this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") *Touhy*[1] request to the United States Department of Defense ("DoD") for Real Ear Attenuation at Threshold ("REAT") and impulse testing data of non-Combat Arms earplugs that were distributed to, and used by Bellwether Plaintiffs in Trial Group A.  Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97; 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy Instruction 5820.8A; Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

## I.    Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a longstanding relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding

---

[1]   *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Beijing   Boston   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

KE 70337898.3

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 2

hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs—the subject of this litigation.

Hearing loss is a common injury among military veterans.  The U.S. military has provided hearing protection and preservation services to soldiers for decades.  In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contracts, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became the CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady attenuation of ambient noise. In contrast, the yellow end is nonlinear and attenuates different sounds differently. In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse noises, like gun-fire. This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.  Servicemember plaintiffs in this litigation allege that the CAEv2 was defective and caused them to sustain serious injuries during their military service, including hearing damage.

On February 27, 2020, the Court issued Pretrial Order No. 29, which selected twenty-five cases for the initial bellwether pool.  The parties are now conducting discovery in the initial bellwether cases, Trial Group A.

## II.     Summary and Relevance of the Documents Requested

Defendants request both REAT and impulse testing data for the enumerated, non-Combat Arms hearing protection devices that were used by Bellwether Plaintiffs in Trial Group A. Government actions and knowledge are critical issues in this litigation.  The DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard exclusively possess information concerning the

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 3

military's decision to buy CAEv2 from Defendants, including testing information from non-CAEv2 hearing protection devices that reveals their relative performance capabilities compared to CAEv2.  These materials speak to, among other things:  (i) plaintiffs' allegations that any injuries occurred while they were wearing the CAEv2, as opposed to when they were wearing other devices, (ii) plaintiffs' allegations that the CAEv2 provided less hearing protection than alterative devices, and (iii) plaintiffs' allegations that there was a product defect or a failure to warn.

**III.    Document Requests**

Specifically, Defendants request testing data relating to non-Combat Arms hearing protection devices used by Bellwether Plaintiffs in Trial Group A during their military service. The specific non-Combat Arms hearing protection devices are listed below:

      **A.**      **Bose Noise-Cancelling Headsets**

      **B.**      **Bose Noise-Cancelling, Communication Helmet**

      **C.**      **Bose Noise Suppression Headset**

      **D.**      **Combat Vehicle Crewman's ("CVC") Helmet**

      **E.**      **Elvex, Quad-Flange Plug**

      **F.**      **Etymotic Electronic BlastPLG EB15 Earplug**

      **G.**      **Hocks Noise Braker**

      **H.**      **Howard Leight AirSoft Earplugs**

      **I.**      **Howard Leight Foam Earplugs**

      **J.**      **Howard Leight Fusion Earplugs**

      **K.**      **Max Lite Earplugs**

      **L.**      **Moldex Battleplugs**

      **M.**      **Moldex 6405 Rockets Earplugs**

      **N.**      **Noise-Cancelling Crew Vehicle Helmet**

## KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 4

      **O.**     **Peltor Comtac Tactical Communications Headset**

      **P.**     **Pyramex Taper Fit Earplugs**

      **Q.**     **Pyramex Triple Flange Earplugs**

      **R.**     **Sonic Defender Surefire Earplugs**

**IV.**   **Additional Considerations**

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, Coast Guard, and the Department of Homeland Security regarding the provision of information by its employees in connection with litigation in federal court:

1. Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2. Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3. Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4. Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5. Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401,  or other matters exempt from unrestricted disclosure.

6. Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

# KIRKLAND & ELLIS LLP

Major Nicole Kim
August 7, 2020
Page 5

7.      Disclosure would not violate any person's expectation of confidentiality or privacy.

8.      The United States is not, and is not reasonably anticipated to be a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## V.      Administrative Matters

Defendants will bear the costs of producing the information sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States.  to the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the requested live testimony, and narrow the scope of what each individual witness may speak to.  Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

Sincerely,

*/s/ Mark Nomellini*

One of the Attorneys
Representing 3M

KE 70337898.3