# **EXHIBIT L**

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Mark Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

June 3, 2020

**Via Email**

Major Nicole Kim
Nicole.m.kim2.mil@mail.mil
(703) 693-1092

Re:  Touhy Request Relating to *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-02885-MCR-GRJ (N.D. Fla.).

Dear Major Kim:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a multidistrict litigation pending before the Northern District of Florida, this letter constitutes Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") *Touhy*[1] request to the United States Department of Defense ("DoD") to identify the individuals who acted as Hearing Conservation Program Manager(s) and Industrial Hygiene Program Manager(s)—as those roles are described in Army Pamphlet 40-501 dated December 10, 1998—at the Army installations identified as service locations for the bellwether plaintiffs in the above-referenced litigation. Pursuant to 32 C.F.R. § 516.40-57 and 32 C.F.R. § 97; 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy Instruction 5820.8A; Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy* request as follows:

### I.     Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has grown into a global science company employing over 90,000 people. 3M produces more than 60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also has a longstanding relationship with the federal government and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was

---

[1]    *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

# KIRKLAND & ELLIS LLP

June 3, 2020
Page 2

a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs—the subject of this litigation.

Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists and industrial hygienists to administer hearing conservation programs at every Army installation. In particular, pursuant to Army Pamphlet 40-501, dated December 10, 1998, the commander of every Army installation must, among other things, (i) appoint an audiologist, where available, to act as the Hearing Conservation Program Manager and to be a member of the installation's Safety and Occupational Health Advisory Council, and (ii) appoint an individual to act as the Industrial Hygiene Program Manager. The roles of the Hearing Conservation Program Manager and Industrial Hygiene Program Manager are detailed in Army Pamphlet 40-501(and the related DoD Instruction 6055.12), and include, respectively, among other things: (i) ensuring that medically trained personnel fit individuals with preformed earplugs, like the CAEv2, and examine those individuals at least annually to ensure proper earplug condition and fit, and (ii) surveying all known and suspected noise-hazardous areas and equipment and ototoxic exposures, maintaining a current inventory of all noise-hazardous areas, compiling the names and social security numbers of noise-exposed and ototoxic-exposed personnel and the magnitude of their noise exposure, and tracking noise exposure violations for inclusion on a violation inventory log.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became the CAEv2.

CAEv2 is a "dual ended" earplug that consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady attenuation of ambient noise. In contrast, the yellow end is nonlinear and attenuates different sounds differently. In particular, sound travels into the opening at the center of the earplug and through a sound channel and the patented ISL filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through with minimal attenuation, but provides increased attenuation for higher-level impulse

## KIRKLAND & ELLIS LLP

June 3, 2020
Page 3

noises, like gun-fire. This enables the user to experience enhanced situation awareness while receiving some protection from unexpected impulse noise.

Plaintiffs in this litigation allege that the CAEv2 was defective and caused them to sustain injuries during their military service, including hearing loss and tinnitus. Defendants argue that plaintiffs' claims are barred by the government contractor defense, which preempts state tort claims "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Defendants further argue that Plaintiffs claims are without merit for a variety of other reasons, including that CAEv2 was not defective, and that their alleged injuries were not caused by CAEv2.

The Court in this litigation has selected certain "bellwether" plaintiffs to proceed to case-specific discovery and early trial settings. Defendants seek the identities of the Hearing Conservation Program Manager and Industrial Hygiene Program Manager at the Army installations at which the bellwether plaintiffs allege to have been stationed. Defendants need this information to identify relevant witnesses regarding the implementation of the Army's hearing conservation program at those installations, including the aspects of the hearing conservation program described in Army Pamphlet 40-501, such as information regarding how the bellwether plaintiffs were distributed and fit with the CAEv2, what training the bellwether plaintiffs received on the proper use of the CAEv2, and the types of noise exposures service members were subjected to at those installations with and without hearing protection.

## II. Summary of Installation Locations and Dates for Individual Identities Requested

Defendants request the identities of the individuals who served as Hearing Conservation Program Manager(s) and Industrial Hygiene Program Manager(s)—as those roles are described in Army Pamphlet 40-501 dated December 10, 1998—at the following Army installations during the specified time periods relevant to the bellwether plaintiffs:

- **A. Fort Hood (1998-2019)**
- **B. Fort Benning (1997-2017)**
- **C. Fort Carson (2005-2016)**
- **D. Fort Bragg (2000-2018)**
- **E. Joint Base Lewis-McChord/Fort Lewis (2004-2020)**

# KIRKLAND & ELLIS LLP

June 3, 2020
Page 4

  F.  **Fort Bliss (2001-2012)**

  G.  **Fort Campbell (2005-2015)**

  H.  **Camp Case, South Korea (1994-2006)**

  I.  **Fort Knox (2002-2011)**

  J.  **Camp Shelby (2004-2010)**

  K.  **Camp Taji, Iraq (2007-2010)**

  L.  **Fort Stewart (2004-2008)**

  M.  **West Point (2008-2012)**

  N.  **Charleston Naval Weapons Station (2009-2012)**

  O.  **Camp Ederle (2003-2006)**

  P.  **Fort Leonard Wood (2000-2006)**

  Q.  **Fort Richardson (2007-2010)**

  R.  **Rose Barracks, Germany (1999-2001)**

  S.  **Schofield Barracks (2007-2015)**

  T.  **Schweinfurt, Germany (1999-2001)**

  U.  **Shaw Air Force Base (2012-2014)**

  V.  **Wackernheim, Germany (1999-2001)**

  W.  **Fort Jackson (2004-2006)**

  X.  **Fort Irwin (2012-2014)**

  Y.  **Eskan Village, KSA (2016-2017)**

  Z.  **Fort Gordon (2010-2011)**

  AA.  **Fort Lee (2005)**

## KIRKLAND & ELLIS LLP

June 3, 2020
Page 5

    **BB.**    **Fort Polk (2006)**

    **CC.**    **Fort Rucker (2005)**

    **DD.**    **Fort Drum (2009)**

    **EE.**    **Fort Meade (2004)**

    **FF.**    **Fort Sam Houston (2006)**

    **GG.**    **Lackland Air Force Base (2004**

**III.**    **Additional Considerations**

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, Coast Guard, and the Department of Homeland Security regarding the provision of information by its employees in connection with litigation in federal court:

1. Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2. Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3. Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4. Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5. Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6. Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or

# KIRKLAND & ELLIS LLP

June 3, 2020
Page 6

      similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7. Disclosure would not violate any person's expectation of confidentiality or privacy.

8. The United States is not, and is not reasonably anticipated to be a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## IV. Administrative Matters

Defendants will bear the costs of producing the information sought by this *Touhy* request. Costs will be paid by check or money order payable to the Treasury of the United States. to the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the requested live testimony, and narrow the scope of what each individual witness may speak to. Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

      Sincerely,

      */s/ Mark Nomellini*

      One of the Attorneys
      Representing 3M