**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-2885 |
| | ) ) | Hon. Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |
| This Document Relates to All Actions | ) | PUBLIC VERSION - REDACTED |

**Plaintiffs' Response to Defendants' Statement on the Deposition of Kevin Michael, PhD**

Plaintiffs respectfully submit this memorandum in opposition to Defendants' Statement on the Deposition of Kevin Michael, PhD.

## Introduction

During the October 2, 2020 Leadership Teleconference, the Court requested that the Defendants submit a statement regarding the timeline of Defendants' efforts to schedule the deposition of Dr. Kevin Michael on October 9, 2020. Despite extending for six pages, Defendants' brief only provides one paragraph of detail regarding the timeline of their efforts to contact Dr. Michael and schedule his deposition. These details make clear that the proposed deposition is untimely, in violation of the Court's previous Orders and directives, and would be highly prejudicial to the Plaintiffs, and, as such, should not be permitted to proceed.

Defendants argue that they scheduled Dr. Michael's deposition in accordance with both the Federal Rules and Pre-Trial Order No. 13 ("PTO 13"). Not so. PTO 13 explicitly provides that "[a]bsent agreement of the parties, good cause, or an order of the MDL Court, any deposition notice must be served at least thirty (30) days before the date the noticed deposition is to occur." ECF No. 554 at 7. Nevertheless, on September 29, 2020, just ten (10) days before the date the deposition is scheduled to occur—and ten (10) days prior to both the cutoff for Group A discovery and the deadline for Plaintiffs' Group A expert disclosures—Defendants served a notice of intent to subpoena a deposition of Dr. Michael on the day of that deadline, October 9. Ex. A (Defendants' Notice of Intent to Serve Subpoena). Until last week, 3M had provided no indication that it had any interest in obtaining deposition testimony from Dr. Michael in the context of the present litigation.

Plaintiffs do not agree to the deposition on such short notice, particularly with the looming discovery and expert disclosure deadlines, and Defendants make no effort to identify good cause for the timing of the notice. Because Defendants have failed to comply with the Court's clear deadlines, the proposed October 9 deposition of Dr. Michael should not proceed.

## Legal Standard

The Court has broad discretion to manage its caseload and establish discovery and deposition deadlines. *See Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360

(11th Cir. 2002); *N.P. by E.P. v. Sch. Bd. of Okaloosa Cty., Fla.*, No. 3:18-CV-453-MCR-CJK, 2018 WL 7358591, at *2 (N.D. Fla. Nov. 5, 2018) (Rodgers, J.) ("This broad discretion extends to pre-trial matters such a discovery and scheduling."). As the Manual on Complex Litigation notes, "[t]he Federal Rules and the court's inherent power provide the court with broad authority" to control and limit discovery. MANUAL FOR COMPLEX LITIGATION (FOURTH) at § 11.422 Planning and Control, Limitations (2004). Accordingly, courts have the authority to hold parties to previously set scheduling orders. *See Saperstein v. The Palestinian Auth.*, No. 04-20225-CIV-SEITZ, 2010 WL 2854146, at *2 (S.D. Fla. July 20, 2010) ("The Court finds that the plaintiff had adequate warning about the Court's intent to hold the parties to the scheduling order. Accordingly, the plaintiff cannot complain when he has failed to comply with the deadlines stated therein.").

**Argument**

Defendants' Notice of Deposition of Dr. Michael was untimely and violated PTO 13, and if permitted to proceed, the deposition would prejudice Plaintiffs at the eleventh hour.

First, Defendants' statement fails to provide any "good cause" for the unreasonable timing of the proposed deposition. Michael & Associates is a non-party psychoacoustics laboratory run by Dr. Kevin Michael that "has a long history of testing various hearing protection devices," including the Combat Arms Earplug

version 2 ("CAEv2"). ECF 1449 at 1. As Defendants point out, Dr. Michael and his lab are no stranger to the parties or to litigation arising from Defendants' conduct with respect to the CAEv2. *Id.* Plaintiffs agree that Dr. Michael's October 2015 deposition transcript from the prior litigation has been produced in the context of the present litigation and that Plaintiffs served a subpoena on Michael & Associates in November 2019. *Id.* But Plaintiffs' knowledge of Dr. Michael is a red herring. These facts lend no support to Defendants' late-request for a deadline-day deposition. To the contrary, Defendants' familiarity with Michael & Associates and its relevance to the litigation undercuts any justification for waiting to schedule the deposition and then scheduling it on the deadline for expert disclosures.

Defendants have long used Michael & Associates to test its own products, Ex. B filed under seal (3M_MDL000227585) (test report for Aearo hearing protector from 2001). Defendants point out that Dr. Michael's October 2015 deposition has been produced, but oddly fails to mention that his deposition was taken by 3M itself. Further, Dr. Michael runs one of the few NVLAP certified labs in the country, located at Penn State University. Simply put, Defendants knew that Dr. Michael had relevant information to this case well before discovery began.

Nevertheless, despite the history between Defendants and Dr. Michael, until last week, Defendants made no indication that it had any interest in obtaining discovery from Dr. Michael in the context of the present litigation. Counsel for

Defendants represented to the Court at the recent Teleconference that they had been trying to locate Dr. Michael and that "there was a period of time where [they] were not able to reach out to him." October 2, 2020 Teleconference Transcript at 18. Defendants now represent that they made their first attempt to contact Dr. Michael on September 4, 2020, more than a year into the litigation—after the September 1 cutoff they themselves requested for general discovery on 3M and the Government—and with the discovery clock down to only one remaining month. Defendants made another attempt to contact Dr. Michael on September 8. Apparently, 3M's counsel made no attempt to write Dr. Michael, to call anyone else associated with his lab, nor to personally serve him at his residence or place of business at this time. Rather, Defendants waited three additional weeks before even attempting to make another contact with Dr. Michael. Only then, on September 29, 2020, just ten (10) days prior to the cutoff for Group A discovery and the deadline for Plaintiffs' Group A expert disclosures and well after the required thirty (30) day notice window required by PTO 13, did Defendants finally serve a notice of intent to subpoena Dr. Michael's deposition on the day of that deadline, October 9.

Second, Plaintiffs would be prejudiced by a testing-related deposition occurring on the same day as the expert disclosure deadline. This Court has repeatedly made clear that the Parties must coordinate on depositions. *See* October 2, 2020 Teleconference Transcript at 20. Defendants now say that "in hindsight"

they "should have done a better job coordinating the date." ECF 1449 at 3. But this glosses over the upshot: Defendants made no effort to coordinate with Plaintiffs regarding the date or even the fact of their interest in deposing Dr. Michael. While Plaintiffs have been aware of Michael & Associates and the documents it produced in response to Plaintiffs' subpoena, Plaintiffs had no knowledge that Defendants may use Dr. Michael to support its claims or defenses. Defendants' Rule 26(a)(1) initial disclosures make no mention of Dr. Michael or his laboratory. *See* Ex. C (Defendants' Initial Disclosures).

This deadline-day testimony is highly likely to prejudice Plaintiffs and their experts. Michael & Associates was hired by Moldex in the course of litigation and to develop products to compete with Defendants. A deposition would necessarily address the broader context of the testing that Dr. Michael conducted, and would likely concern other testing performed by Michael & Associates at the request of both Moldex and Defendants. One would reasonably expect that this testimony would need to be considered by the Plaintiffs' experts and could materially impact expert disclosures and the orderly process the Court directed.

Finally, Defendants cannot use an untimely deposition request to convince Plaintiffs to waive their right to object to admissibility. Defendants have asked Plaintiffs to stipulate the four documents produced by Michael & Associates are authentic and are exceptions to the rule against hearsay. But the record provides

numerous reasons to doubt that the documents were created in the ordinary course of the business or are trustworthy. For example, when Jeff Hamer assumed the position of technical director at the EARCAL lab in 2007, he wrote to Dr. Michael as follows: [redacted] Ex. D filed under seal (MICHAELASSOC_00000500).

Given this testimony, it is reasonable that a deposition of Dr. Michael, if it were to proceed, would have to cover more than just the results of the four tests identified by Defendants. Further, any testimony regarding these four tests, their methodology, potential biases, and other potentially relevant tests conducted by Dr. Michael would necessarily impact any expert testimony provided about the tests, either jeopardizing the Court's scheduling order or prejudicing the Plaintiffs' experts opinions, if any, regarding the testing. In addition, any new information from Dr. Michael could prompt additional third-party discovery requests of Moldex—concerning, *inter alia*, communications and discussions with Michael & Associates attendant to the tests, the results, and the testing conditions that would be necessary to properly understand and contextualize the testing. Had Defendants provided some

indication—whether by supplemental disclosures or proper notice—the discovery path would have been a different one, and prejudice could have been averted.

## Conclusion

This Court provided clear rules for conducting depositions. Those rules were violated despite Defendants' long-held, direct knowledge of Dr. Michael. For the aforementioned reasons, Defendants' Notice of Deposition of Dr. Michael is untimely, and the Court should not permit it to proceed.

Date: October 7, 2020                     Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, GP
440 Louisiana Street, Suite 1700
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

***Counsel for Plaintiffs***

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I hereby certify that this brief complies with the word limit of Local Rule 7.1(F) and contains 1,661 words.

*/s/ Bryan F. Aylstock*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan F. Aylstock*