# **EXHIBIT D**



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY LEGAL SERVICES AGENCY
LITIGATION DIVISION
9275 GUNSTON ROAD
FORT BELVOIR, VA  22060-5546

September 10, 2020

SUBJECT:  Response to Subpoena for release of official information in the case of *In Re.: 3M Combat Arms Earplug Products Liability Litigation,* Civil Action File No.: 3:19-md-02885, United States District Court for the Northern District of Florida

Mark J. Nomellini
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60054
(Via Email)

Dear Mr. Nomellini,

This letter responds to your subpoena dated August 27, 2020, served on August 28, 2020, seeking testimony from LTC Martin Robinette.  The subpoena incorporates by reference Section II.B.2 of your December 2, 2019, *Touhy* request for this same testimony that the Department of Defense ("DoD") denied pursuant to DoDD 5405.2, which is published at 32 C.F.R. Sec. pt. 97 (2005).  *See* Letter from MAJ Nicole Kim, to Bryan Aylstock and Mark Nomellini, dated June 23, 2020.

Specifically, your subpoena again seeks to depose LTC Robinette regarding:

1. the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem;

2. military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs;

3. instructions and/or training that military audiologists provided to service members for the use or fit of the Combat Arms Earplugs; and

4. the location of documents or other data regarding those topics.

The DoD objects to this subpoena under Fed. R. Civ. P. 26 and 45 for the following reasons:

First, the requested deposition is unduly burdensome and not "proportional to the needs of the case."  *See* Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(1).  Courts

Case 3:19-md-02885-MCR-HTC   Document 1457-4   Filed 10/08/20   Page 3 of 6

2

routinely protect non-parties from the undue burden of discovery. *See, e.g., Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Sahu v. Union Carbide Corp.,* 262 F.R.D. 308, 317 (S.D.N.Y. 2009) (stating that courts are more sensitive to discovery burdens on third parties).

As an initial matter, depositions are usually the most burdensome means of obtaining facts in litigation. The government has a "legitimate interest in orderly governmental operations and the proper use of officials' time." *Alex v. Jasper Wyman & Son*, 115 F.R.D. 156, 157 (D. Me. 1986). These concerns are especially significant when live testimony is requested from a federal agency. In the face of such a request, "an agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007). Once an agency determines not to provide testimony "in the context of private litigation when the government is not a party, a court should not order testimony to be given . . . without the showing of a compelling interest." *Alex*, 115 F.R.D. at 157; *Comsat Corp v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999) (to conserve agency resources and prevent a non-party agency from becoming embroiled in private litigation, the decision to permit employee testimony is committed to the agency's sole discretion). Thus, a court may require that information be sought by means that are "more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. 26(b)(2)(C). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *See, e.g., Gomez v. City of Nashua,* N.H., 126 F.R.D. 432, 436 (D. N.H. 1989).

The DoD previously has denied your request for the same testimony that your subpoena now seeks. Indeed, your subpoena incorporates by reference your previously denied *Touhy* request. Thus, you continue to seek the same information based on the same justification as before. Accordingly, DoD incorporates herein by reference the reasoned explanation set forth in its letter of June 23, 2020, denying your request.

LTC Robinette then and now still lacks personal knowledge of the topics on which you seek his testimony. He had a minimal role, if any, in acquiring or approving the CAEv2, and his direct communications about the CAEv2 were limited. He has no personal knowledge regarding the design and development of the CAEv2. Further, he has no personal knowledge regarding the testing, research, and analysis of the effectiveness of the CAEv2. His personal knowledge regarding the testing, research, and analysis of hearing protection effectiveness is in an aggregate sense for all hearing protection used by the Army – not specific to the CAEv2. Because his work spans the use of all Army hearing protection, he is unable to parse out any specific research, testing, or analysis pertaining to the CAEv2.

Additionally, although he served as an expert to the Department of Justice ("DoJ") in a separate investigation related to the underlying facts of this case, his work and the information he obtained in relation thereto are privileged and not information the DoD has the authority to authorize him to disclose. The nature of the withheld information concerns inquiries by the DoJ relating to the Army Hearing Program to obtain information in order to advise the agency about whether and how to proceed with the False Claims Act *qui tam* litigation. Fed. R. Civ. P. 45(e)(2)(A). Because of the context in which this information was obtained and discussed, the subpoena implicates the deliberative process privilege. The deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. U.S. Dep't of Justice,* 312 F.3d 70, 76 (2d Cir. 2002), *cert. denied,* 538 U.S. 1056 (2003) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Additionally, the sought information also implicates the attorney-client privilege and the work product doctrine.

Second, your request is additionally objectionable as cumulative and duplicative. Courts limit the "frequency or extent of discovery" if they determine that "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C). The testimony you seek here would be cumulative and duplicative of the testimony of COL John Merkley and COL Kathy Gates, both of whom you previously deposed. The DoD authorized COL Merkley[1] and COL Gates[2] to testify –and pursuant to that authority both did testify—about the military's design and development of the CAEV2, the military's testing of the CAEV2, and the instructions and training provided

---

[1] In the December 19, 2019, approval letter for LTC Merkley, the DoD authorized him to testify regarding: "(i) LTC Merkley's knowledge of the military's desire for and solicitation of non-linear hearing protection devices like the Combat Arms Earplug Version 2 (CAEV2); (ii) LTC Merkley's knowledge of *the military's design and development of the CAEV2*; (3) LTC Merkley's knowledge of *the military's testing of the CAEV2*; (iv) LTC Merkley's knowledge of *the CAEV2's compliance with military specifications*; (v) LTC Merkley's knowledge of *the effectiveness of the CAEV2 in preventing and mitigating hearing loss in the military*; (vi) LTC Merkley's knowledge concerning *the instructions and training provided to service members for use of the CAEV2*; and, (vii) LTC Merkley's *knowledge of the location of documents and other data regarding those topics.*" Emphasis added.

[2] In the May 19, 2020, approval letter for COL Gates, the DoD authorized her to testify regarding: "(1) her knowledge of the DoD Working Groups' *discussions regarding the development of the CAEV2*; (2) her knowledge of the *military testing and evaluation of the CAEV2*; (3) her knowledge of *the role of military audiologists as it pertains to providing fitting instructions and tutorials to service members on the use of the CAEV2*; (4) her experience *training service members to use the CAEV2*; (5) Colonel (Retired) Gates' knowledge of service member misuse or non-use of the CAEV2; (6) Colonel (Retired) Gates' knowledge of survey information regarding service member satisfaction with the CAEV2; and (7) Colonel (Retired) Gates' knowledge of the *location of her documents or other data regarding these topics.*" Emphasis added.

to service members for use of the CAEV2—the exact same topics on which you seek testimony from LTC Robinette.

Relatedly, the limited, non-privileged, responsive information that LTC Robinette has can be provided through means less burdensome than a deposition. *See* Fed. R. Civ. P. 26(b)(2)(C). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *See, e.g., Gomez v. City of Nashua,* N.H., 126 F.R.D. 432, 436 (D. N.H. 1989). The DoD previously offered to authorize LTC Robinette to respond to interrogatories. The offer included providing responses to six interrogatories based on the submitted *Touhy* request and his limited knowledge of the CAEv2. Interrogatories would avoid issues related to LTC Robinette's work as an expert with the DoJ and not require him to be absent from his duties. 3M to date has failed to avail itself of this alternative means of obtaining the information it seeks.

Third, the subpoena failed to allow DoD a reasonable time to comply. *See* Fed. R. Civ. P. 45(d)(3)(A)(i). "[J]ust as negligence in the air does not exist, neither does reasonableness: the analysis is necessarily case-specific and fact-intensive. What would be reasonable . . . may take on a very different cast where, as here, . . . the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. Aug. 26, 2005) (noting that "the plaintiffs were keenly aware of all of these facts and of the competing demands imposed by the other discovery disputes that had been percolating for some period"); *see also Minor Doe I Through Parent I Doe v. School Board for Santa Rosa County*, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009) ("Although the rule does not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case."). Although, dated August 27, 2020, the subpoena was not served until August 28, 2020, eleven business days prior to the specified September 16, 2020, deposition date. This is an unreasonable time given the telework environment due to the COVID-19 pandemic, the many other subpoenas your office issued in the same timeframe, not to mention the numerous other pending discovery requests (some duplicative) that your office has served in this same action.

Finally, DoD has considered the cumulative impact of subpoenas like yours, in light of the fact that this litigation involves more than 180,000 plaintiffs. The cumulative impact of such requests would be disruptive to the agency's functioning. "[A]ny given request may seem small in isolation, but an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely granting requests for testimony." *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011) (citing *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)).

For the foregoing reasons, DoD objects to your subpoena for testimony for LTC Robinette. Accordingly, he is not authorized to give testimony on September 16, 2020.

5

In reasonable accommodation of your request, DoD again proffers to authorize LTC Robinette to respond to interrogatories as set forth in the June 23, 2020 letter denying your *Touhy* request.  Should you have any questions, please contact me at (703) 693-1015 or robert.e.wald.mil@mail.mil.

        Sincerely,

        *Robert Wald*

        Robert E. L. Wald
        Major, U.S. Army
        Litigation Attorney