# EXHIBIT E

United States District Court
Western District of Texas
San Antonio Division

United States of America,
    Petitioner,

v.

3M Company,
    Respondent.

No. SA-20-MC-01085

### Motion to Quash Subpoena to LTC Martin Robinette

The United States of America files this action and moves to quash the subpoena Respondent 3M Company served on LTC Martin Robinette, an employee of the Department of Defense ("DOD"). The Amended Subpoena to Testify at Deposition is attached as Exhibit 1.

## I.  Background

Respondent 3M is a defendant in multi-district litigation occurring in the Northern District of Florida related to the safety of 3M products. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885-MCR-GRJ (N.D. Fla.). The United States is not a party to that litigation.

In connection with the MDL and an earlier request for documents and testimony from LTC Robinette, 3M issued a subpoena on August 25, 2020 seeking testimony.[1] Ex. 2. 3M issued an Amended Subpoena for testimony on August 27, 2020, which changed the topics for deposition. Ex. 1. 3M served the subpoena on August 28, 2020. 3M unilaterally scheduled LTC Robinette's deposition for 9 a.m. on September 16, 2020. Ex. 1.

In 3M's Subpoena, 3M asserts that LTC Robinette's relevance is solely connected to development of earplugs, testing of earplugs, training related to earplugs, and the location of documents related to those topics. Ex. 1 at 1, 11–12.

---

[1] The Subpoena lists a number of document requests as the topics for deposition. Ex. 2 at 1, 4–9. However, the Subpoena does not actually request production of documents. This is consistent with the Amended Subpoena, which does not request documents. Ex. 1 at 1.

**II.  Regulatory Scheme**

The DOD established policies and procedures for release of DOD information and testimony of DOD personnel as witnesses in litigation. 32 C.F.R. § 97.1 et seq. The DOD limits the disclosure of DOD information and testimony of DOD personnel related to information obtained during the individuals' performance of official duties. 32 C.F.R. § 97.6. DOD personnel are not allowed to testify in litigation without prior written approval. *Id.* The DOD has set forth factors for the DOD to consider in determining whether to allow DOD personnel to testify. 32 C.F.R. § 97.6(b). Under these provisions, the DOD may produce agency records or provide testimony in such proceedings only if the DOD determines that the disclosure is appropriate based on the factors, requirements, and procedures set forth in the regulations. These regulations help the United States (1) avoid spending the time and money to benefit private parties, (2) conserve the time of DOD personnel for conducting their official duties, and (3) minimize the DOD's possible involvement in issues unrelated to its mission.

**III. Argument**

**A.  The Subpoena Should be Quashed under Touhy**

As noted above, the testimony of DOD employees and production of government records is governed by 32 C.F.R. § 97.1 et seq. The United States Supreme Court has upheld these types of regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Moreover, the Fifth Circuit has upheld similar regulations. *See CF Indus., Inc. v. Dept. of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 692 F. App'x 177, 181 (5th Cir. 2017) (per curiam).

Currently, the primary statutory source for such regulations is 5 U.S.C. § 301, the federal government's so-call "housekeeping" statute, which authorizes the head of every Executive Branch agency to "prescribe regulations" for governing the department, the conduct of its employees, the distribution and performance of its business, and "the custody, use, and preservation of the records, papers, and property appertaining to it." *See, e.g., Touhy*, 340 U.S. at 468 (relying on predecessor to current 5 U.S.C. §301); *see also id.* at 463 n.2. Such regulations also serve to centralize department or agency determinations as to whether subpoenas will be

**Motion to Quash Subpoena**                                                                 **2**

willingly obeyed or challenged. *Id.* at 468. These regulations thereby avoid "the possibilities of harm from unrestricted disclosure in court." *Id.*

Because courts universally recognize the validity of regulations like the one in this case, court have repeatedly held that the regulations impose a binding legal duty on federal employees that the courts cannot force the employees to disobey. In the words of the Fourth Circuit, "an unbroken line of authority directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989).

The leading case in this area of the law is the Supreme Court's decision in *Touhy*. In *Touhy*, an employee of the Department of Justice was subpoenaed to provide departmental records to a prisoner in a federal habeas corpus proceeding. 340 U.S. at 464. Acting pursuant to a regulation like the one involved in this case, the Attorney General withheld permission for the employee to comply with the subpoena. *Id.* at 464–65. The district court that issued the subpoena held the employee in contempt for complying with the Attorney General's directive. *Id.* at 465. On appeal, the Supreme Court held that the agency regulation was valid under the predecessor to present 5 U.S.C. § 301 and that because the regulation was valid, the employee could not be compelled to obey the district court's subpoena. *Id.* at 467–69. The Court noted that it had reached the same result a half century earlier in *Boske v. Comigore*, 177 U.S. 459 (1900).

Compliance with Touhy regulations is mandatory. *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994). "[A]n agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007). The court can only set aside an agency's decision not to produce documents or allow testimony if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *CF Indus.*, 692 F. App'x at 181. "The scope of review under this standard is narrow, and a court is not to substitute its judgment for that of the agency." *Id.* (quoting *Hasie v. Office of the Comptroller of the Currency*, 633 F.3d 361, 365 (5th Cir. 2011)).

**Motion to Quash Subpoena**                                                                                           **3**

In response to the subpoena for LTC Robinette's testimony, the DOD analyzed the factors and decided not to authorize LTC Robinette's appearance. Exs. 3–4. The DOD incorporated its June 23, 2020, response to 3M's Touhy request and reasoning for denying the request for LTC Robinette to testify. Ex. 4. In denying the Touhy request, the DOD allowed 3M to submit six interrogatories to the DOD. Ex. 3 at 2. The DOD advised 3M that after receipt of any interrogatory responses, 3M could renew its request for testimony and state the basis in light of the interrogatory responses. *Id.*

The DOD's basis for objecting to the subpoena for LTC Robinette's testimony is that he "had a minimal role, if any, in acquiring or approving the CAEv2, and his direct communications about the CAEv2 were limited." Ex. 4 at 2. Moreover, LTC Robinette "served as an expert to the Department of Justice in a separate investigation related to the underlying facts of this case." *Id.* at 3. LTC Robinette's work as an expert for the DOJ is also not discoverable and is privileged. *Id.* In addition, the subpoena is cumulative and duplicative because it seeks testimony on the same subjects on which 3M has already deposed two other DOD employees, COL John Merkley and COL Kathy Gates. *Id.* at 3–4. These is no need for a third deposition on the same subjects.

The DOD's decision not to allow LTC Robinette to testify is neither arbitrary nor capricious. The Court must consider the cumulative impact on the DOD given that the 3M MDL involves more than 150,000 plaintiffs who likely all had significant interactions with other DOD employees during their military service. Indeed, 3M included thirty individuals in its Touhy request for LTC Robinette, including LTC Robinette as a "de-prioritized witness." Ex. 1 at 8–16. 3M has also served several subpoenas and Touhy requests on the DOD and Department of Veterans Affairs ("VA") seeking documents and depositions of other DOD and VA personnel and may continue to do so. The cumulative impact of removing DOD personnel from their official duties and responsibilities to comply with 3M's requests, especially during a global pandemic, would be highly disruptive to the DOD.

"[A]ny given request may seem small in isolation, but an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely

**Motion to Quash Subpoena**                                                          **4**

granting requests for testimony." *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011) (citing *Moore v. Amour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991). 3M's subpoena critically "fails to take into account the [agency's] 'legitimate concern with the potential cumulative effect of granting such requests.'" *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011) (quashing subpoenas for testimony of VA employees). "[A]n agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007). Once an agency determines not to provide testimony "in the context of private litigation, when the government is not a party, a court should not order testimony to be given … without the showing of a compelling interest." *Alex v Jasper Wymann & Son*, 115 F.R.D. 156, 157 (D. Me. 1986).

The DOD offered an alternative to deposition testimony in the form of interrogatories. Ex. 4 at 4. Interrogatory responses would not only be less burdensome, but would avoid issues related to LTC Robinette's work as an expert with the DOJ. Moreover, interrogatories would not require LTC Robinette to be absent from his active duties. Thus, the Court should quash the subpoena for LTC Robinette's deposition based on *Touhy*.

**B. The Court should Quash the Subpoena under Rule 45**

Federal Rule of Civil Procedure 45 sets forth numerous protections for third parties faced with subpoenas from litigation of which they are not a party. A court

> must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The Fifth Circuit has set forth six factors to consider when evaluating whether a subpoena presents an undue burden:

> (1) relevance of the information requested;
> (2) the need of the party for the documents;
> (3) the breadth of the document request;
> (4) the time period covered by the request;

**Motion to Quash Subpoena**                                                                                                    **5**

(5) the particularity with which the party describes the requested documents; and
(6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The court should also "consider the expense and inconvenience to the non-party." *Id.*

The need to reduce the discovery burden on nonparties is especially important where, as here, the request is for the deposition of a government employee. The government has a "legitimate interest in orderly governmental operations and the proper use of officials' time." *Alex*, 115 F.R.D. at 157; *see also Sharon Lease Oil Co. v. F.E.R.C.*, 691 F. Supp. 381, 384 (D.D.C. 1988) (same). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *See, e.g., Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 436 (D. N.H. 1989).

The Court should quash the subpoena because it does not allow sufficient time to comply and subjects LTC Robinette to an undue burden. 3M scheduled LTC Robinette's deposition without any consultation and less than three weeks from subpoena service. This does not provide LTC Robinette and the DOD sufficient time to prepare for the deposition and provide cover for LTC Robinette's missed work. *Cf. Parra v. State Farm Lloyds*, No. 7:14-CV-691, 2015 U.S. Dist. LEXIS 185386, at *3–4 (S.D. Tex. Jan. 13, 2015) (quashing a subpoena requiring production in 22 days, because "thirty days is a 'reasonable time' to respond to a subpoena duces tecum, and defendant should have been given at least thirty days.").

Moreover, given the minimal role, if any, LTC Robinette had in acquiring or approving the CAEv2, his deposition is an undue burden and not proportional to the needs of the 3M MDL. Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(1). A less burdensome and more proportional way for LTC Robinette to provide any limited information he may have would be through the proffered interrogatories. *See Gomez*, 126 F.R.D. at 436 ("Courts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an

**Motion to Quash Subpoena**                                                                                      **6**

alternative and less burdensome method to the government."). Thus, based on the Federal Rules

of Civil Procedure, the Court should quash the subpoena for LTC Robinette's deposition.

## IV. Conclusion

For the foregoing reasons, the Court should quash the subpoena.


Respectfully submitted,

John F. Bash
United States Attorney

By:   */s/ Matthew Mueller*
Matthew Mueller
Assistant United States Attorney
Texas Bar No. 24095592
601 N.W. Loop 410, Suite 600
San Antonio, Texas  78216
(210) 384-7362 (phone)
(210) 384-7358 (fax)
matthew.mueller@usdoj.gov

**Motion to Quash Subpoena**                                    **7**

**Certificate of Service**

I certify that on September 11, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system.


/s/ Matthew Mueller
Matthew Mueller
Assistant United States Attorney

No. SA-20-MC-01085

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Florida

| | )
|---|---|
| _____ *Plaintiff* | ) |
| v. | ) Civil Action No.   3:19-md-02885 |
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) |
| _____ *Defendant* | ) |

### AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    LTC Martin Robinette
                                        San Antonio, Texas ▮▮▮

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Section II.B.2 of Exhibit 1.

| Place: San Antonio Marriott Northwest 3233 NW Loop 410 San Antonio, Texas 78213 | or, Alternatively, via Remote Deposition | Date and Time: 09/16/2020 9:00 am |
|---|---|---|

The deposition will be recorded by this method:     Stenographic and Videographic

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/27/2020

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Ashley Neglia |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants. _____ , who issues or requests this subpoena, are:

Ashley Neglia, Kirkland & Ellis LLP, 555 S. Flower St., Los Angeles, CA 90071; Ashley.Neglia@kirkland.com; (213) 680-8114

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit 1 Page 1 of 17

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   3:19-md-02885

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit 1 Page 2 of 17

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit 1 Page 3 of 17

# EXHIBIT 1

Exhibit 1 Page 4 of 17

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Mark Nomellini
To Call Writer Directly:
+1 312 862 2410
mnomellini@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

December 2, 2019

**Via Email**

Michael Fucci
Major Collin Evans
Collin.p.evans2.mil@mail.mil
703-693-0352

Re:   Supplemental Touhy Request For Interviews and Depositions Relating to
*In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-
02885-MCR-GRJ (N.D. Fla.).

Dear Major Evans and Mr. Fucci:

In connection with *In re: 3M Combat Arms Earplug Products Liability Litigation*, a
multidistrict litigation pending before the Northern District of Florida, this letter constitutes
Defendants 3M Company ("3M") and Aearo Technologies LLC's ("Aearo") supplemental *Touhy*[1]
request to the United States Department of Defense ("DoD"), Defense Logistics Agency ("DLA"),
Army, Navy, Marine Corps, Air Force, and Coast Guard to interview and depose certain
individuals who are current or former representatives and/or employees of the DoD, DLA, Army,
Navy, Marine Corps, Air Force, and/or Coast Guard who were involved in the design, conception,
development, testing, distribution, and the provision of Combat Arms Earplugs Version 2
("CAEv2") from Defendants to the U.S. Military and service members and/or certain relevant
aspects of the military's hearing conservation programs.  Pursuant to 32 C.F.R. § 516.40-57 and
32 C.F.R. § 97; 33 C.F.R. § 1.20-1 and 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy
Instruction 5820.8A; Air Force Instruction 51-301, Defendants set forth the basis for their *Touhy*
request as follows:

## I.      Summary of the Litigation

3M was founded in 1902 as a small-scale mining venture in Northern Minnesota, and has
grown into a global science company employing over 90,000 people and produces more than

---

[1]   *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Beijing   Boston   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

Exhibit 1 Page 5 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 2

60,000 products world-wide. Many of 3M's brands have become universally known, including Scotch™ Brand adhesive tapes, Post-it® Brand sticky notes, and Thinsulate™ thermal insulation, to name just a few. In addition to its consumer-side business, 3M also had a long-standing relationship with federal and state governments for well over fifty years and provides thousands of products designed to protect American troops and support their missions. In 2008, 3M purchased Aearo, who, at the time, was a global leader in personal protection equipment, headquartered in Indianapolis, Indiana. The acquisition helped 3M expand its occupational health and environmental safety platform by adding hearing protection, eyewear protection, and fall protection to its product lines, including Combat Arms Earplugs - the subject of this litigation. Combat Arms Earplugs represented a significant advance in hearing protection in that they were one of the first hearing protection devices to offer protection from high-level impulse noises, like gun-fire, while still allowing the user to hear lower level sounds, like speech, with limited interruption. Hearing loss is a common injury among military veterans. The U.S. military has provided hearing protection and preservation services to soldiers for decades. In support of that mission, the military employs audiologists to administer hearing conservation programs and work with outside contractors, like 3M, to advance their hearing protection goals.

The complaints in this MDL assert claims for alleged hearing loss or tinnitus allegedly caused by noise exposure to plaintiffs while wearing the Combat Arms Earplugs Version 2. CAEv2 was developed and designed by Aearo at the request of and in close consultation with U.S. military audiologists, including Dr. Doug Ohlin, former Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventative Medicine. Specifically, the U.S. military and Aearo decided to modify and update Aearo's Ultrafit® triple-flanged earplug by including a specially patented filter created by the French-German Institute in Saint Louis, France ("ISL"). Thereafter, Aearo worked with the U.S. military and ISL to develop an earplug embodying ISL's patented technology, which ultimately became CAEv2. CAEv2 consists of two Ultra-fit type tips, one green and one yellow, attached to opposite sides of a plastic stem with a small opening at the center. The green end works like a conventional passive earplug, providing steady and continuous protection from ambient noise. In contrast, the yellow end allows sound to travel into the opening at the center of the earplug and through a sound channel and the patented filter before entering the ear. The filter allows lower-level sounds, such as speech, to pass through while reducing higher-level impulse noises, like gun-fire.

Throughout the design process, Aearo worked closely with the U.S. military to ensure that CAEv2 would appropriately balance performance with military operational needs for soldiers and military personnel. These specifications were memorialized in a Medical Procurement Item Description ("MPID") that was used by the Defense Logistics Agency to solicit bids from Aearo for CAEv2. To date, thousands of actions have been filed on behalf of current or former military personnel. These claims allege plaintiffs were provided CAEv2 by various branches of the military, and used CAEv2 during training and/or deployment. Plaintiffs asserting these claims typically allege hearing loss and/or tinnitus as a result of noise exposure in military and combat

Exhibit 1 Page 6 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 3

settings, and assert claims for design defect, negligence, failure to warn, breach of warranties, and/or fraud.  On April 3, 2019, the Judicial Panel on Multidistrict Litigation entered an order transferring the consolidated cases and any tag-along actions to the Northern District of Florida.

## II.   Summary of the Interviews And Depositions Requested[2]

Defendants request interviews and depositions with the individuals listed below. Defendants request the interviews to occur prior to the depositions, and believe that such interviews will make the deposition process more efficient, including by (i) identifying the location of relevant documents and data in advance of the deposition, which will help avoid the need for additional depositions after a witnesses identifies relevant materials for the first time during a deposition; and (ii) minimizing unnecessary depositions through pre-deposition identification of any witnesses with minor roles or immaterial knowledge, which may reduce the time and expense of organizing a formal depositions for those witnesses.

Case Management Order No. 6 in MDL No. 2885 (Dkt. 6) states:  "With the assistance of Judge Herndon, the parties must review Defendants' supplemental DOD *Touhy* request dated July 26, 2019, as well as each side's DOD *Touhy* requests for interviews and/or depositions, and segregate the requests that are relevant to Defendants' affirmative defenses from those which are not relevant to the defenses. By December 13, 2019, the parties must submit the two lists to Major Evans and Major Kim, along with a request that the Government defer action on the *Touhy* requests that are not relevant to the affirmative defenses until after it responds to the *Touhy* requests for documents, interviews, and depositions that are relevant to the defenses."  Pursuant to the Court's Order, this supplemental *Touhy* requests contains two categories of interview and deposition requests: (i) requests which should be prioritized in connection with defendants' affirmative defenses; and (ii) requests which should be de-prioritized.[3]

---

[2]    Per recent guidance provided to Defendants by Major Evans, this *Touhy* request omits government witnesses who are or were employed by non-military government agencies.  Such witnesses include, for example, William Murphy (NIOSH) and James Lovejoy (Department of Energy), both of whom conducted testing on the Combat Arms Earplugs for the government.  Per Major Evans' guidance, Defendants are submitting separate *Touhy* requests to the relevant government agency for these witnesses.

[3]    Certain of the requests which should be de-prioritized may have some relevance to Defendants' affirmative defenses.  Nonetheless, Defendants understand that the Court wishes to move expeditiously with respect to government discovery and, accordingly, deprioritizes certain of their requests.

Exhibit 1 Page 7 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 4

### A.    Priority Witnesses[4]

The following witnesses should be prioritized over the witnesses in Section B, *infra*.

1.    **Theresa Schultz, U.S. Army/Air Force,** ▇▇▇▇▇▇▇▇ **Vacaville, CA,** ▇▇

Theresa Schultz was a military audiologist who participated in the military's solicitation of the Combat Arms Earplug.  Among other things, documents produced to date detail Schultz's: (i) attendance at meetings with representatives from the U.S. military, Aearo and ISL to discuss the design and development of the dual-ended Combat Arms Earplug; and (ii) participation in sessions of the DoD Hearing Conservation Working Group at which the Combat Arms Earplugs were proposed and discussed.  Defendants wish to interview and depose Ms. Schultz regarding: (i) the military's desire for a non-linear hearing protection device; (ii) the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms Earplug; (iii) analyses or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplug; and (iv) the location of any documents or data regarding those topics.

2.    **G. Richard Price, U.S. Army,** ▇▇▇▇▇▇▇▇▇

G. Richard Price was an Army scientist who participated in the military's solicitation of the Combat Arms earplugs.  Documents produced to date detail Price's attendance at a December 1997 meeting with representatives from the U.S. military, Aearo and ISL to discuss the design and development of the dual-ended Combat Arms Earplug.  Defendants wish to interview and depose Mr. Price regarding:  (i) the military's desire for a non-linear hearing protection device; (iii) the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms Earplug; (iv) analyses or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplug; and (v) the location of any documents or data regarding those topics.  Additionally, Defendants wish to interview and depose Mr. Price regarding: (i) Price's development of the Auditory Hazard Assessment Algorithm for Humans ("AHAAH Model") model, (ii) how the military's analysis of impulse noise led to the solicitation of non-linear hearing protection devices, like the dual-ended Combat Arms Earplug, (iii) analyses of the Combat Arms Earplug performed using the AHAAH model; and (iv) whether and how military personnel utilize(d) that AHAAH model in determining the efficacy and sufficiency of non-linear hearing protection devices in military settings.

---

[4]   Defendants believe that the following witnesses are deceased: Georges Garinther, Don Ciliax, Robert Bosanko, and Daniel L. Johnson.  These witnesses have relevant information and would have been included on this interview and deposition request, and Defendants reserve the right to supplement this request to add one or more of these witnesses should it later be determined that they are not deceased.

Exhibit 1 Page 8 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 5

      3.    **Marc Stevens, U.S. Army,** ▇▇▇▇▇▇

Marc Stevens was an Army audiologist stationed at Fort Campbell in the early 2000's and was involved with the military's solicitation of the dual-ended Combat Arms Earplugs. Defendants wish to interview and depose Mr. Stevens regarding: (i) the military's design and development of the Combat Arms Earplug; (ii) the military's policies regarding training service members to use the Combat Arms Earplug; (iii) service member usage rates of the Combat Arms Earplug; and (iv) the location of documents or other data related to those topics.

      4.    **Col. John Andrew ("Andy") Merkley, U.S. Army,** ▇▇▇▇▇▇

Col. Merkley is an Army audiologist and is the Army Liaison to the Defense Hearing Center of Excellence and Regional Health Command. Col. Merkley also held Dr. Ohlin's position as Program Manager of the Army Hearing Conservation Group after Dr. Ohlin. Defendants wish to interview and depose Col. Merkley regarding: (i) the military's desire for and solicitation of non-linear hearing protection devices like the Combat Arms Earplug; (ii) any knowledge Col. Merkley has of the military's design and development of the Combat Arms Earplug; (iii) military testing of the Combat Arms Earplug; (iv) the Combat Arms Earplug's compliance with military specifications; (v) the effectiveness of the Combat Arms Earplug in preventing and mitigating hearing loss in the military; (vi) instructions and training provided to service members for use of the Combat Arms Earplug; and (vii) the location of documents and other data regarding those topics.

      5.    **Kathy Gates, U.S. Army,** ▇▇▇▇▇

Kathy Gates is a military audiologist. Documents produced to date detail Gates' involvement: (i) as a member of the DOD Hearing Conservation Working Group, including at meeting(s) discussing the development of the Combat Arms Earplug; and (ii) compiling survey information regarding service member satisfaction with the Combat Arms Earplug. Defendants wish to interview and depose Ms. Gates regarding: (i) the DoD working group and the discussions that took place within that group regarding the development of the Combat Arms Earplug; (ii) military testing or evaluation of the Combat Arms Earplug; (iii) the role of military audiologists as it pertains to providing fitting instructions and tutorials to service members on the use of Combat Arms Earplugs; (iv) her personal experience as it relates to service member training for and use of Combat Arms Earplug; (v) service member misuse or non-use of Combat Arms Earplugs; (vi) survey information regarding service member satisfaction with Combat Arms Earplugs; and (vii) the location of documents or other data regarding those topics.

Exhibit 1 Page 9 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 6

6.   **LTC. Lorraine Babeu, U.S. Army,** ▮▮▮▮▮▮

Documents produced to date detail testing on the Combat Arms Earplug performed by LTC. Babeau on behalf of the Army Research Lab at Aberdeen Proving Grounds. Defendants seek to interview and depose LTC. Babeau regarding: (i) military testing of the Combat Arms Earplugs; (ii) the test protocols employed during LTC. Babeu's testing; (iii) the context surrounding LTC Babeu's testing, including why it was commissioned and what the information was used for; (iv) the Combat Arms Earplug's compliance with military specifications; and (v) the location of documents and data regarding those topics.

7.   **Brian Hobbs, U.S. Navy,** ▮▮▮▮▮▮▮▮▮▮

Documents produced to date show Brian Hobbs conducted January 2009 testing on the Combat Arms Earplug on behalf of the Air Force. Defendants seek to interview and depose Mr. Hobbs regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, what the information was used for, and (iii) the location of documents and other data regarding those topics.

8.   **Mary Binseel, Army Research Laboratory,** ▮▮▮▮▮▮

Documents produced to date show that Mary Binseel conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory, and that Ms. Binseel or her colleagues communicated with Aearo regarding this while it was ongoing. Defendants seek to interview and depose Ms. Binseel regarding: (i) the test protocols employed in the testing, (ii) the results of the study; (iii) Combat Arms Earplug's compliance with military specification; (iv) the context surrounding the study, including why the study was commissioned, who requested it, what the information was used for, (v) communications with Aearo or other entities regarding the study, and (vi) the location of documents and other data regarding those topics.

9.   **Nancy Vause, U.S. Army,** ▮▮▮▮▮▮

Nancy Vause is a military audiologist. Defendants wish to interview and depose Ms. Vause regarding: (i) training and instructions provided to service members for use of the Combat Arms Earplug; (ii) usage rates of Combat Arms Earplugs among service members; (iii) military noise exposures and rates of hearing loss; (iv) misuse of Combat Arms Earplugs by service members; (v) military and service member satisfaction with Combat Arms Earplugs; (vi) any testing or analyses performed on the Combat Arms Earplugs; (vii) labeling requirements for Combat Arms Earplugs shipped to the military; and (viii) the location of any documents or data regarding those topics.

Exhibit 1 Page 10 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 7

     10.     **David Chandler, U.S. Army,** ██████████

Documents produced to date indicate LTC Chandler was involved in the military's decision to shorten the stem of the Combat Arms Earplugs to fit into the military's preferred carrying case. Defendants seek to interview and depose LTC Chandler regarding: (i) the military's design and development of the Combat Arms Earplug, including the decision to shorten the desired length of the Combat Arms Earplug; and (ii) the location of any documents or data regarding those topics.

     11.     **Dr. Mark Little, U.S. Army**

Documents produced to date show that Dr. Little communicated in 2001 with Aearo regarding Combat Arms Earplugs, including product testing and instructions. Defendants seek to interview and depose Dr. Little regarding: (i) communications with Aearo and other military personnel regarding Combat Arms Earplugs testing and instructions; (ii) testing and analyses of the Combat Arms Earplugs performed by Dr. Little on behalf of the military or other government agencies; and (iii) the location of documents and other data related to those topics.

### B.     De-Prioritized Witnesses

Pursuant to the Court's Case Management Order No. 6, the following witnesses should be de-prioritized as compared to the witnesses in Section A, *supra*.

     1.     **Wayne Loyborg, U.S. Navy,** ████████

Documents produced to date indicate Mr. Loyborg was involved in the military's decision to shorten the stem of the Combat Arms Earplugs to fit into the military's preferred carrying case. Defendants seek to interview and depose Mr. Loyborg regarding: (i) the military's design and development of the Combat Arms Earplug, including the decision to shorten the desired length of the Combat Arms Earplug; and (ii) the location of any documents or data regarding those topics.

     2.     **LTC. Martin Robinette, U.S. Army,** ████████

Documents produced to date detail LTC Robinette's: (i) 1999 correspondence with Dr. Ohlin regarding the military's desire to shorten the stem of the dual-ended Combat Arms Earplug so that it fit into the military's preferred carrying case; and (ii) a 2015 analysis showing how the Combat Arms Earplug has prevented and mitigated negative health effects in Army populations. Defendants wish to interview and depose LTC. Robinette regarding: (i) the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem; (ii) military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs; (iii) instructions and/or training that military audiologists provided to service members

Exhibit 1 Page 11 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 8

for the use or fit of the Combat Arms Earplugs; and (iv) the location of documents or other data regarding those topics.

### 3.    Belva Hoffman

Documents produced to date show that Belva Hoffman communicated with Dr. Ohlin regarding obtaining a National Stock Number for Combat Arms Earplugs.  Defendants seek to interview and depose Ms. Hoffman regarding: (i) military requirements prior to obtaining a National Stock Number; (ii) product analysis prior to requesting and obtaining a National Stock Number, including the review of production samples of the Combat Arms Earplug; (iii) requests for product modifications prior to and after obtaining a National Stock Number; (iv) information submitted to obtain a National Stock Number on the Combat Arms Earplug; and (v) the location of documents and data regarding those topics.

### 4.    Thomas Sidor, Defense Logistics Agency,

Thomas Sidor is the Contracting Officer listed on the 2006 military specification for the Combat Arms Earplug.  Defendants wish to interview and depose Mr. Sidor regarding: (i) the origin of the specifications for the Combat Arms Earplug; (ii) the military's collaboration, if any, with Aearo or other contractors in creating the product specifications; (iii) the reason(s) the military sought a product that conformed to the requested specifications; (iv) analyses the military performed to determine if the product conformed to the requested specifications; (v) labeling requirements for Combat Arms Earplugs shipped to the military; and (vi) the location of documents or other data regarding those topics.

### 5.    Albert Gatica, Defense Logistics Agency,

Albert Gatica is listed as the Approving Officer on the 2006 military specification for the Combat Arms Earplug.  Defendants wish to interview and depose Mr. Gatica regarding: (i) the origin of the specifications for the Combat Arms Earplug; (ii) the military's collaboration, if any, with Aearo or other contractors in creating the product specifications; (iii) the reason(s) the military sought a product that conformed to the requested specifications; (iv) analyses the military performed to determine if the product conformed to the requested specifications; (v) labeling requirements for Combat Arms Earplugs shipped to the military; and (vi) the location of documents or other data regarding those topics.

### 6.    John King, U.S. Army

John King is the former scientific advisor to the Army Southern Europe Command. Documents produced to date indicate he requested and received 1,000 Combat Arms Earplugs. Defendants wish to interview and depose Mr. King regarding: (i) military analyses of Combat

Exhibit 1 Page 12 of 17

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 9

Arms Earplugs, including any testing King performed on the units he received; (ii) military contributions to the design and development of the Combat Arms Earplugs; (iii) military and service member satisfaction with the Combat Arms Earplug; (iv) instructions or training provided to service members for use of Combat Arms Earplugs; and (v) the locations of any documents or data regarding those topics.

7.   **Kristi Casto, U.S. Army,** ███████████████

Kristi Casto is an Army audiologist.  Defendants wish to interview and depose Ms. Casto regarding: (i) training and instructions provided to service members for use of the Combat Arms Earplug; (ii) usage rates of Combat Arms Earplugs among service members; (iii) military noise exposures and rates of hearing loss; (iv) misuse of Combat Arms Earplugs by service members; (v) military and service member satisfaction with Combat Arms Earplugs; (vi) any testing or analyses performed on the Combat Arms Earplugs; (vii) labeling requirements for Combat Arms Earplugs shipped to the military; and (viii) the location of any documents or data regarding those topics.

8.   **Bettye Simmons, U.S. Army,** ██████████

Bettye Simmons was a Brigadier General in the Army.  Documents produced to date indicate that Simmons sent a memorandum justifying the acquisition of Combat Arms Earplug to the Army Chief of Staff.  Defendants wish to interview and depose Ms. Simmons regarding: (i) analyses performed in connection with the memorandum to the Army Chief of Staff; (ii) conversations with Dr. Ohlin regarding the Combat Arms Earplugs, including in connection with drafting and submitting the memorandum; (iii) the decision to send the memorandum to the Army Chief of Staff, and the basis for that decision; and (iv) the location of any documents or data regarding those topics.

9.   **Kara Cave, Army Research Laboratory,** ██████████

Documents produced to date show that Ms. Cave conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory, and that Ms. Cave communicated with Aearo regarding this while it was ongoing.  Defendants seek to interview and depose Ms. Cave regarding: (i) the test protocols employed in the testing, (ii) the results of the study; (iii) the Combat Arms Earplug's compliance with military specification; (iv) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (v) communications with Aearo or other entities regarding the study, and (vi) the location of documents and other data regarding those topics.

Exhibit 1 Page 13 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 10

10. **Tomasz Letowksi, Army Research Laboratory,** ███████████

Documents produced to date show that Mr. Letowski conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory.  Defendants seek to interview and depose Mr. Letowski regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (iii) communications with Aearo or other entities regarding the study, and (iv) the location of documents and other data regarding those topics.

11. **Maj. Dean Hudson, U.S. Army,** ███████████

Documents produced to date show that Maj. Dean Hudson conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Maj. Hudson regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

12. **Richard McKinley, Air Force Research Laboratory**

Documents produced to date show that Mr. McKinley conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Mr. McKinley regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

13. **Dr. Douglas Brungart, Walter Reed National Military Medical Center,** ███████████

Documents produced to date show that Dr. Brungart conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Dr. Brungart regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

14. **Julie Parisi, U.S. Air Force**

Documents produced to date show that Ms. Parisi conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force.  Defendants seek to interview and depose Ms. Parisi regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the

Exhibit 1 Page 14 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 11

study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

15. **James Hamil, Air Force Research Laboratory**

Documents produced to date show that Mr. Hamil conducted January 2009 testing on the Combat Arms Earplugs on behalf of the Air Force. Defendants seek to interview and depose Mr. Hamil regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

16. **Joel Kalb, U.S. Army,**

Documents produced to date show that Mr. Kalb conducted a December 2012 study on Combat Arms Earplugs on behalf of the Army Research Laboratory. Defendants seek to interview and depose Mr. Kalb regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, (iii) communications with Aearo or other entities regarding the study, and (iv) the location of documents and other data regarding those topics. Additionally, Defendants wish to interview Mr. Kalb regarding AHAAH Model's application to CAEv2, and how Army personnel utilize(d) that AHAAH model in determining the efficacy and sufficiency of CAEv2 in military settings.

17. **Angelique A. Scharine, Army Research Laboratory,**

Documents produced to date show that Ms. Scharine conducted January 2014 testing on Combat Arms Earplugs on behalf of the Marine Corps. Defendants seek to interview and depose Ms. Scharine regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

18. **Rachel A. Weatherless , Army Research Laboratory,**

Documents produced to date show that Ms. Weatherless conducted January 2014 testing on Combat Arms Earplugs on behalf of the Marine Corps. Defendants seek to interview and depose Ms. Weatherless regarding: (i) the test protocols employed in the testing, (ii) the context surrounding the study, including why the study was commissioned, who requested it, and what the information was used for, and (iii) the location of documents and other data regarding those topics.

Exhibit 1 Page 15 of 17

## KIRKLAND & ELLIS LLP

December 2, 2019
Page 12

19.    **Leanne Cleveland**

Leanne Cleveland is an Army audiologist.  Documents produced to date show that Ms. Cleveland attended a Post Deployment Health Reassessment Survey Session in 2005 and asked soldiers questions regarding CAEv2.  Defendants seek to interview and depose Ms. Cleveland regarding:  (i) questions and answers conduced at the post Deployment Health Reassessment Survey; (ii) Ms. Cleveland's personal experience regarding CAEv2 usage and application within the Army; (iii) Cleveland's personal knowledge and experience regarding service member satisfaction with CAEv2 while worn in training and in combat.

## III.    Additional Considerations

These requests comply with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, Coast Guard, and the Department of Homeland Security regarding the provision of information by its employees in connection with litigation in federal court:

1.    Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under the federal discovery rules.

2.    Disclosure of the requested information would be appropriate under the Federal Rules of Evidence and appropriate under the rules of the Northern District of Florida.

3.    Disclosure of the requested information would be appropriate under the Federal Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4.    Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5.    Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6.    Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets

Exhibit 1 Page 16 of 17

# KIRKLAND & ELLIS LLP

December 2, 2019
Page 13

or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7.   Disclosure would not violate any person's expectation of confidentiality or privacy.

8.   The United States is not, and is not reasonably anticipated to be a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); Department of Defense Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

## IV.   Administrative Matters

Defendants will bear the costs of producing the witnesses for interviews and depositions sought by this *Touhy* request.  Costs will be paid by check or money order payable to the Treasury of the United States.  To the extent the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard believe any of the requested information does not implicate the statutory considerations set forth above, Defendants are willing to work with the DoD, DLA, Army, Navy, Marine Corps, Air Force, or Coast Guard to narrow the scope of the requested interviews and depositions.  Should you have any questions or require additional information about this *Touhy* request, please do not hesitate to contact me at (312) 862-2410 or mnomellini@kirkland.com.

Sincerely,

*/s/ Mark J. Nomellini*

Mark J. Nomellini

Exhibit 1 Page 17 of 17

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

No. SA-20-MC-01085

# UNITED STATES DISTRICT COURT
### for the
Northern District of Florida

|  |  |
|---|---|
| _____ ) <br> _Plaintiff_ ) <br> v. ) <br> IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS ) <br> LIABILITY LITIGATION ) <br> _____ ) <br> _Defendant_ ) | Civil Action No.   3:19-md-02885 |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     LTC Martin Robinette
                                        ████ San Antonio, Texas ████
                    *(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

SEE ATTACHMENT (Schedule A).

| Place: San Antonio Marriott Northwest<br>3233 NW Loop 410<br>San Antonio, Texas 78213 | or, Alternatively, via<br>Remote Deposition | Date and Time:<br><br>09/09/2020 9:00 am |
|---|---|---|

The deposition will be recorded by this method:   Stenographic and Videographic

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/25/2020

| *CLERK OF COURT* | | |
|---|---|---|
|  | OR | /s/ Ashley Neglia |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants.
_____ , who issues or requests this subpoena, are:

Ashley Neglia, Kirkland & Ellis LLP, 555 S. Flower St., Los Angeles, CA 90071; Ashley.Neglia@kirkland.com; (213) 680-8114

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit 2 Page 1 of 9

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   3:19-md-02885

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit 2 Page 2 of 9

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit 2 Page 3 of 9

## SCHEDULE A

## DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (collectively, "Defendants"), by and through their counsel, hereby request that you produce documents responsive to these Requests for Production of Documents (the "Requests") to Defendants in the time and manner set forth in this Subpoena.

## DEFINITIONS

1.      "Communications" encompasses used in the requests below includes any transmission or exchange of information, ideas, facts, data, proposals, or other matters, between or among Persons, by any means. For example, communications would include text messages (short message service (SMS) and multimedia message service (MMS)), or any messaging application (e.g., WhatsApp, Facebook Messenger).   The definition also includes Documents evidencing oral communications.

2.      "Document" or "documents" as used below includes hard copy documents as well as electronically stored information.

3.       The terms "you" and "your" shall refer to LTC Martin Robinette.

Exhibit 2 Page 4 of 9

4.     "CAEv2" shall mean the dual-ended Combat Arms Earplug™ Version 2.

## **INSTRUCTIONS**

1.     The preceding Definitions apply to these Instructions and each of the succeeding Requests.  All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

2.     You are required to produce all responsive documents in your possession, custody, or control, wherever located, including but not limited to electronic sources, such as:

> (a) any of your email accounts (*e.g.,* Gmail, Yahoo, and Hotmail);
>
> (b) any of your computers (*e.g.*, desktop or laptop computers);
>
> (c) any of your mobile and handheld electronic devices (*e.g.*, smartphones, computer tablets, portable music players, and digital cameras);
>
> (d) any of your other hardware storage devices (*e.g.*, external hard drives, network storage drives, memory cards, USB flash ("thumb") drives, and CDs/DVDs);
>
> (e) any messaging applications you use (*e.g.* text messages, iMessage, Facebook Messenger, WhatsApp, Telegram, and Snapchat);
>
> (f) any social media accounts/platforms you use (*e.g.*, Facebook, Instagram, LinkedIn, Twitter, MySpace, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups);
>
> (g) any website where you have made online postings (*e.g.*, Reddit, Tumblr, and other blog or message boards);

2

Exhibit 2 Page 5 of 9

(h) any cloud storage you use (*e.g.*, DropBox, Microsoft Office365 Account, Google Drive, iCloud, and Amazon Drive).

3.     If you cannot comply with any Request in full, you must comply to the fullest extent possible, and you should provide an explanation as to why full compliance is not possible.

4.     If any document called for by these Requests has been destroyed or discarded, you must identify that document in writing by providing the following information:  (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all Persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the Persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

5.     If no document exists that is responsive to a particular Request, you must state so in writing.

6.     Defendants request that you produce all photographs, films, movies, and video recordings as native files, in their original resolution and file size.

3

Exhibit 2 Page 6 of 9

## REQUESTS FOR PRODUCTION

1.      All documents related to the testing of CAEv2, including test reports, protocols, results, and analyses.

2.      Communications between you and Defendants (@aearo.com; @compuserve.com; and @mmm.com domain names) pertaining to testing on, or the performance of, the CAEv2.

3.      Communications between you and others in the United States government, including Doug Ohlin and others in the military, pertaining to testing on, or the performance of, the CAEv2.

4.      Documents relating to training for the CAEv2.

5.      Communications between you and Defendants (@aearo.com; @compuserve.com; and @mmm.com domain names) pertaining to training for the CAEv2.

6.      Communications between you and others in the United States government, including Doug Ohlin and others in the military, pertaining to training for the CAEv2.

7.      Documents related to fitting for the CAEv2.

4

Exhibit 2 Page 7 of 9

8.      Communications   between   you   and   Defendants   (@aearo.com;
@compuserve.com; and @mmm.com domain names) pertaining to fitting for the
CAEv2.

9.      Communications   between   you   and   others   in   the   United   States
government, including Doug Ohlin and others in the military, pertaining to fitting
for the CAEv2.

10.     Documents related to instructions for use and/or wallet cards for the
CAEv2.

11.     Communications   between   you   and   Defendants   (@aearo.com;
@compuserve.com; and @mmm.com domain names) pertaining to instructions for
use and/or wallet cards for the CAEv2.

12.     Communications   between   you   and   others   in   the   United   States
government,   including   Doug   Ohlin   and   others   in   the   military,   pertaining   to
instructions for use and/or wallet cards for the CAEv2.

13.     Documents related to the acquisition of and distribution of the CAEv2
by United States military.

5

Exhibit 2 Page 8 of 9

14.     Communications between you and Defendants (@aearo.com; @compuserve.com; and @mmm.com domain names) pertaining to the acquisition of and distribution of the CAEv2 by United States military.

15.     Communications between you and others in the United States government, including Doug Ohlin and others in the military, pertaining to the acquisition of and distribution of the CAEv2 by United States military.

16.     Documents relating to the design and development of the CAEv2.

17.     Communications between you and Defendants (@aearo.com; @compuserve.com; and @mmm.com domain names) pertaining to the design and development of the CAEv2.

18.     Communications between you and others in the United States government, including Doug Ohlin and others in the military, pertaining to the design and development of the CAEv2.

Exhibit 2 Page 9 of 9

Case 3:19-md-02885-MCR-HTC   Document 1457-5   Filed 10/08/20   Page 36 of 43
Case 5:20-mc-01085   Document 1-3   Filed 09/11/20   Page 1 of 2
No. 5:20-MC-01085



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY LEGAL SERVICES AGENCY
LITIGATION DIVISION
9275 GUNSTON ROAD
FORT BELVOIR, VA  22060-5546


June 23, 2020


SUBJECT:  Response to *Touhy* Requests for Witness Production Dated November 11, 2019 and December 2, 2019 in the case of *In Re.: 3M Combat Arms Earplug Products Liability Litigation,* Civil Action File No.: 3:19-md-02885, United States District Court for the Northern District of Florida


Bryan Aylstock
Aylstock, Witkin, Kreis, Overholtz
17 East Main Street, Suite 200
Pensacola, FL 32502
(Via Email)

Mark J. Nomellini
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60054
(Via Email)


Dear Mr. Aylstock & Mr. Nomellini,

        This letter responds to your requests to depose COL Marty Robinette, in the above captioned matter, made pursuant to Department of Defense Directive (DoDD) 5405.2.  These requests were submitted to the DoD on November 11, 2019 by the Plaintiffs and December 2, 2019 by the Defendant.

        After speaking with COL Robinette, it is apparent that he lacks relevant knowledge of the information you listed in your requests.  COL Robinette had a minimal role, if any, in acquiring or approving the CAEv2 and his direct communications about CAEv2 were limited.  Additionally, he served as a DOJ subject matter expert in a separate investigation related to the underlying facts of this case.  Because of this, it is our position that allowing this employee to sit for a deposition would not be productive and would create an undue burden on the DoD due to the amount of time the DoD would expend preparing for and participating in the requested deposition.  *See* DoDD 5405.2 and Fed. R. Civ. P. 26.  Therefore, your request to depose this individual is denied.


Exhibit 3 Page 1 of 2

2

However, the DoD is willing to authorize COL Robinette to provide responses to interrogatories based on the submitted Touhy requests and his limited knowledge of the CAEv2 should your office(s) submit them to us.  If you would like to do this, you may submit the interrogatories to the undersigned, and I will work with COL Robinette to provide responses to those questions.  Additionally, if after providing his responses to the interrogatories you still believe a deposition is necessary, we will reconsider your request as supplemented by your explanation of your continued need for his deposition.

Please note that the interrogatories are limited to any knowledge COL Robinette has outside of his work for and on behalf of DOJ.  Additionally, the number of interrogatories that may be submitted are limited to six interrogatories.  This limit applies to both parties.  As a result, if both parties intend on submitting interrogatories for COL Robinette, the parties will need to determine how best to divide the authorized number listed above.

Finally, we reserve the right to object to any interrogatories that seek information that is irrelevant, unduly burdensome, disproportional to the needs of the case, prohibited from disclosure by federal law, or otherwise not authorized for release under DoDD 5405.2 and Fed. R. Civ. P. 26.

If you have any questions, the point of contact for this matter is the undersigned at nicole.m.kim2.mil@mail.mil or (703) 693-1092.

Sincerely,

Nicole M. Kim
Major, U.S. Army
Litigation Attorney

Exhibit 3 Page 2 of 2



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY LEGAL SERVICES AGENCY
LITIGATION DIVISION
9275 GUNSTON ROAD
FORT BELVOIR, VA  22060-5546

September 10, 2020

SUBJECT:  Response to Subpoena for release of official information in the case of *In Re.: 3M Combat Arms Earplug Products Liability Litigation,* Civil Action File No.: 3:19-md-02885, United States District Court for the Northern District of Florida

Mark J. Nomellini
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60054
(Via Email)

Dear Mr. Nomellini,

This letter responds to your subpoena dated August 27, 2020, served on August 28, 2020, seeking testimony from LTC Martin Robinette.  The subpoena incorporates by reference Section II.B.2 of your December 2, 2019, *Touhy* request for this same testimony that the Department of Defense ("DoD") denied pursuant to DoDD 5405.2, which is published at 32 C.F.R. Sec. pt. 97 (2005).  *See* Letter from MAJ Nicole Kim, to Bryan Aylstock and Mark Nomellini, dated June 23, 2020.

Specifically, your subpoena again seeks to depose LTC Robinette regarding:

1. the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem;

2. military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs;

3. instructions and/or training that military audiologists provided to service members for the use or fit of the Combat Arms Earplugs; and

4. the location of documents or other data regarding those topics.

The DoD objects to this subpoena under Fed. R. Civ. P. 26 and 45 for the following reasons:

First, the requested deposition is unduly burdensome and not "proportional to the needs of the case."  *See* Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(1).  Courts

Exhibit 4 Page 1 of 5

Case 3:19-md-02885-MCR-HTC   Document 1457-5   Filed 10/08/20   Page 39 of 43
Case 5:20-mc-01085   Document 1-4   Filed 09/11/20   Page 2 of 5

2

routinely protect non-parties from the undue burden of discovery.  *See, e.g., Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation.  Non-parties have a different set of expectations.  Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Sahu v. Union Carbide Corp.,* 262 F.R.D. 308, 317 (S.D.N.Y. 2009) (stating that courts are more sensitive to discovery burdens on third parties).

As an initial matter, depositions are usually the most burdensome means of obtaining facts in litigation.  The government has a "legitimate interest in orderly governmental operations and the proper use of officials' time."  *Alex v. Jasper Wyman & Son*, 115 F.R.D. 156, 157 (D. Me. 1986).  These concerns are especially significant when live testimony is requested from a federal agency.  In the face of such a request, "an agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."  *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007).  Once an agency determines not to provide testimony "in the context of private litigation when the government is not a party, a court should not order testimony to be given . . . without the showing of a compelling interest."  *Alex*, 115 F.R.D. at 157; *Comsat Corp v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999) (to conserve agency resources and prevent a non-party agency from becoming embroiled in private litigation, the decision to permit employee testimony is committed to the agency's sole discretion).  Thus, a court may require that information be sought by means that are "more convenient, less burdensome, or less expensive."  *See* Fed. R. Civ. P. 26(b)(2)(C).  Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government."  *See, e.g., Gomez v. City of Nashua,* N.H., 126 F.R.D. 432, 436 (D. N.H. 1989).

The DoD previously has denied your request for the same testimony that your subpoena now seeks.  Indeed, your subpoena incorporates by reference your previously denied *Touhy* request.  Thus, you continue to seek the same information based on the same justification as before.  Accordingly, DoD incorporates herein by reference the reasoned explanation set forth in its letter of June 23, 2020, denying your request.

LTC Robinette then and now still lacks personal knowledge of the topics on which you seek his testimony.  He had a minimal role, if any, in acquiring or approving the CAEv2, and his direct communications about the CAEv2 were limited.  He has no personal knowledge regarding the design and development of the CAEv2.  Further, he has no personal knowledge regarding the testing, research, and analysis of the effectiveness of the CAEv2.  His personal knowledge regarding the testing, research, and analysis of hearing protection effectiveness is in an aggregate sense for all hearing protection used by the Army – not specific to the CAEv2.  Because his work spans the use of all Army hearing protection, he is unable to parse out any specific research, testing, or analysis pertaining to the CAEv2.

Exhibit 4 Page 2 of 5

Case 3:19-md-02885-MCR-HTC   Document 1457-5   Filed 10/08/20   Page 40 of 43
Case 5:20-mc-01085   Document 1-4   Filed 09/11/20   Page 3 of 5

3

Additionally, although he served as an expert to the Department of Justice ("DoJ") in a separate investigation related to the underlying facts of this case, his work and the information he obtained in relation thereto are privileged and not information the DoD has the authority to authorize him to disclose.  The nature of the withheld information concerns inquiries by the DoJ relating to the Army Hearing Program to obtain information in order to advise the agency about whether and how to proceed with the False Claims Act *qui tam* litigation. Fed. R. Civ. P. 45(e)(2)(A).  Because of the context in which this information was obtained and discussed, the subpoena implicates the deliberative process privilege.  The deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. U.S. Dep't of Justice,* 312 F.3d 70, 76 (2d Cir. 2002), *cert. denied,* 538 U.S. 1056 (2003) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  Additionally, the sought information also implicates the attorney-client privilege and the work product doctrine.

Second, your request is additionally objectionable as cumulative and duplicative.  Courts limit the "frequency or extent of discovery" if they determine that "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).  The testimony you seek here would be cumulative and duplicative of the testimony of COL John Merkley and COL Kathy Gates, both of whom you previously deposed.  The DoD authorized COL Merkley[1] and COL Gates[2] to testify –and pursuant to that authority both did testify—about the military's design and development of the CAEV2, the military's testing of the CAEV2, and the instructions and training provided

---

[1] In the December 19, 2019, approval letter for LTC Merkley, the DoD authorized him to testify regarding: "(i) LTC Merkley's knowledge of the military's desire for and solicitation of non-linear hearing protection devices like the Combat Arms Earplug Version 2 (CAEV2); (ii) LTC Merkley's knowledge of *the military's design and development of the CAEV2*; (3) LTC Merkley's knowledge of *the military's testing of the CAEV2*; (iv) LTC Merkley's knowledge of *the CAEV2's compliance with military specifications*; (v) LTC Merkley's knowledge of *the effectiveness of the CAEV2 in preventing and mitigating hearing loss in the military*; (vi) LTC Merkley's knowledge concerning *the instructions and training provided to service members for use of the CAEV2*; and, (vii) LTC Merkley's *knowledge of the location of documents and other data regarding those topics.*" Emphasis added.

[2] In the May 19, 2020, approval letter for COL Gates, the DoD authorized her to testify regarding: "(1) her knowledge of the DoD Working Groups' *discussions regarding the development of the CAEV2*; (2) her knowledge of the *military testing and evaluation of the CAEV2*; (3) her knowledge of *the role of military audiologists as it pertains to providing fitting instructions and tutorials to service members on the use of the CAEV2*; (4) her experience *training service members to use the CAEV2*; (5) Colonel (Retired) Gates' knowledge of service member misuse or non-use of the CAEV2; (6) Colonel (Retired) Gates' knowledge of survey information regarding service member satisfaction with the CAEV2; and (7) Colonel (Retired) Gates' knowledge of the *location of her documents or other data regarding these topics.*" Emphasis added.

Exhibit 4 Page 3 of 5

Case 3:19-md-02885-MCR-HTC   Document 1457-5   Filed 10/08/20   Page 41 of 43
Case 5:20-mc-01085   Document 1-4   Filed 09/11/20   Page 4 of 5

4

to service members for use of the CAEV2—the exact same topics on which you seek testimony from LTC Robinette.

Relatedly, the limited, non-privileged, responsive information that LTC Robinette has can be provided through means less burdensome than a deposition.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government."  *See, e.g., Gomez v. City of Nashua*, N.H., 126 F.R.D. 432, 436 (D. N.H. 1989).  The DoD previously offered to authorize LTC Robinette to respond to interrogatories.  The offer included providing responses to six interrogatories based on the submitted *Touhy* request and his limited knowledge of the CAEv2.  Interrogatories would avoid issues related to LTC Robinette's work as an expert with the DoJ and not require him to be absent from his duties.  3M to date has failed to avail itself of this alternative means of obtaining the information it seeks.

Third, the subpoena failed to allow DoD a reasonable time to comply.  *See* Fed. R. Civ. P. 45(d)(3)(A)(i).  "[J]ust as negligence in the air does not exist, neither does reasonableness: the analysis is necessarily case-specific and fact-intensive. What would be reasonable . . . may take on a very different cast where, as here, . . . the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices."  *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. Aug. 26, 2005) (noting that "the plaintiffs were keenly aware of all of these facts and of the competing demands imposed by the other discovery disputes that had been percolating for some period"); *see also Minor Doe I Through Parent I Doe v. School Board for Santa Rosa County*, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009) ("Although the rule does not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case.").  Although, dated August 27, 2020, the subpoena was not served until August 28, 2020, eleven business days prior to the specified September 16, 2020, deposition date.  This is an unreasonable time given the telework environment due to the COVID-19 pandemic, the many other subpoenas your office issued in the same timeframe, not to mention the numerous other pending discovery requests (some duplicative) that your office has served in this same action.

Finally, DoD has considered the cumulative impact of subpoenas like yours, in light of the fact that this litigation involves more than 180,000 plaintiffs.  The cumulative impact of such requests would be disruptive to the agency's functioning.  "[A]ny given request may seem small in isolation, but an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely granting requests for testimony."  *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011) (citing *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)).

For the foregoing reasons, DoD objects to your subpoena for testimony for LTC Robinette.  Accordingly, he is not authorized to give testimony on September 16, 2020.

Exhibit 4 Page 4 of 5

5

In reasonable accommodation of your request, DoD again proffers to authorize LTC Robinette to respond to interrogatories as set forth in the June 23, 2020 letter denying your *Touhy* request.  Should you have any questions, please contact me at (703) 693-1015 or robert.e.wald.mil@mail.mil.

Sincerely,

*Robert Wald*

Robert E. L. Wald
Major, U.S. Army
Litigation Attorney

Exhibit 4 Page 5 of 5

United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| United States of America,<br>Petitioner,<br><br>v.<br><br>3M Company,<br>Respondent. | No. SA-20-MC-01085 |

**[Proposed] Order**

Before the Court is Plaintiff's Motion to Quash Deposition Subpoena to LTC Martin

Robinette.  Having considered the Motion, the Court hereby GRANTS the Motion and quashes

the subpoena issued to LTC Martin Robinette.


**SIGNED AND ENTERED ON THE DAY \_\_\_\_ OF September, 2020.**


_____
United States District Judge