## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PROUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) | No. 3:19-md-02885-MCR-GRJ |
| THIS DOCUMENT RELATES TO ALL ACTIONS | )<br>)<br>)<br>) |  |

## DEPARTMENT OF DEFENSE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL, ECF NO. 1433

### PRELIMINARY STATEMENT

Defendants, 3M Company and certain of its subsidiaries (collectively "3M"), have moved for an order compelling non-party the United States Department of Defense ("DoD") to produce various categories of data and documents. ECF No. 1433. As discussed in greater detail below, 3M failed to identify several of the categories of data and documents in any of its *Touhy* requests. 3M cannot now insist on the production of information that it never properly requested. Even when 3M served its recent subpoena on the DoD, it merely attached its prior *Touhy* requests, which DoD had repeatedly explained failed to provide sufficient specificity about the information sought. 3M inexplicably did not identify the information now sought through its Motion to Compel.

Even putting that failure aside, 3M does not establish a basis to compel the disclosure of the data and documents described in the Motion. DoD does not possess some of the data sought and other information is protected from disclosure, not relevant to the litigation, or would be unduly burdensome to produce. Moreover, DoD has already produced certain documents sought by 3M's Motion, and 3M fails to explain why it is apparently dissatisfied with those prior productions.

For these reasons, as discussed further below, the Court should deny 3M's motion.

## FACTUAL BACKGROUND

At issue are *Touhy* requests for documents that 3M submitted to the DoD by letters dated June 21, 2019; July 26, 2019; December 2, 2019; March 17, 2020; June 3, 2020; and August 7, 2020. Mot., Exs. A, B, C, D at 38, E, L. The requests are broad and many sought several categories of information. For example, 3M's July 26, 2019 *Touhy* request sought approximately 45 categories of documents and data. Ex. E at 8-14. Among those were eight categories of documents and data regarding noise and ototoxin exposure in the military. *Id*. at 13.[1]

In 2019, DoD informed 3M by telephone that the July 26, 2019 *Touhy* request was still extensive and overly broad. Declaration of Major (MAJ) Nicole M. Kim ¶

---

[1] Ototoxins are chemicals or other substances that may negatively affect how the ear functions and may cause hearing loss and/or affect balance.

4, attached hereto.  On December 2, 2019, 3M sent a letter to DoD stating that its request for noise and ototoxin exposure documents was deprioritized.  Mot., Ex. D at 48.  Accordingly, the DoD focused efforts on the prioritized categories of documents.  Kim Decl. ¶ 4.

In early 2020, DoD informed 3M that it was unable to identify the noise and ototoxin documents that 3M was seeking in paragraphs I(1) and I(2) of the July 26, 2019 *Touhy* request because the requests were vague.  Kim Decl. ¶ 6.[2]  On March 17, 2020, 3M submitted a supplemental *Touhy* request purporting to provide additional information about the noise and ototoxin documents it was seeking.  Mot., Ex. B at 4.  After reviewing the supplemental request and conducting further inquiries, DoD determined that the request was overbroad and unduly burdensome, and DoD so advised 3M by telephone conference in May 2020.  Kim Decl. ¶ 8.  DoD specifically advised 3M to narrow the request and provide more detail about the specific types of documents sought.  *Id*.  3M thereafter provided a non-exhaustive list of 45 weapons or weapons systems for which they sought certain documents and described the duties of Industrial Hygiene Program Managers within the military,

---

[2] Paragraph I(1) seeks "Noise dosimetry data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons."  Mot., Ex. E at 13. Paragraph I(2) seeks "Sound level data and recommendations for hearing protection in particular situations or when operating particular weapons, such as those documented on DD Form 2214."  *Id*.

but did not otherwise describe the documents sought.  Mot., Ex. K at 2-3.  The weapons 3M identified are generic, leaving out key information such as the type of weapon system and the type of munitions associated with the weapon system.  *Id*.

On August 7, 2020, DoD submitted another *Touhy* request seeking testing data related to 18 hearing protection devices; none of which is at issue in this litigation. Mot., Ex. C.

In response to 3M's various *Touhy* requests for documents, DoD has issued 14 disclosure letters and has produced over 10,000 pages of records.  Kim Decl. ¶ 5.

On October 14, 2020, 3M served a subpoena for documents on DoD.  Kim Decl. ¶ 3; Mot., Ex. D.  The subpoena did not specify the records sought other than to attach the various *Touhy* requests that 3M had served previously and to which DoD already had largely responded.  Mot., Ex. D.

## LEGAL STANDARD

"For purposes of discovery, a party may subpoena information from a non-party to litigation, but Federal Rule of Civil Procedure 45 protects the subpoena recipient by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena' and by setting out several mandatory and discretionary grounds for quashing a subpoena."  *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (citing Fed. R. Civ. P. 45(d)(1), (3)).  "While Rule 45 does not specifically identify irrelevance as a reason

4

to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Id*. (citing Fed. R. Civ. P. 26(b)(1)). "The party requesting discovery has the burden of demonstrating the relevance of the discovery requests." *Jones v. Gov't Emp. Ins. Co.*, No. 17-cv-891, 2019 U.S. Dist. LEXIS 112788, at *9 (M.D. Fla. Apr. 22, 2019).

Courts should not enforce a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[T]o determine whether the subpoena subjects the subpoena recipient to an undue burden, one must identify both that burden as well as the interests served by demanding compliance with the subpoena." *Jordan*, 947 F.3d at 1342. "[A] subpoena recipient's status as a non-party to the litigation is also a factor that can weigh against disclosure." *Id*.; *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (upholding denial of motion to compel against a nonparty and explaining that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"); *High Tech Med. Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("nonparties subject to discovery requests deserve extra protection from the courts").

## ARGUMENT

## I.     The Unreasonable Delay Framework Is Largely Inapplicable Here

3M contends that DoD "has unreasonably delayed all production of the documents discussed" in 3M's Motion.  Mot. at 2.  The APA "instructs a reviewing court to 'compel agency action . . . unreasonably delayed.'"  *FCC v. Fox Tel. Stations, Inc.*, 566 U.S. 502, 515 (2009) (quoting 5 U.S.C. § 706(1)).  But the APA's unreasonable delay framework is largely inapplicable to 3M's Motion.  In order to demonstrate "agency inaction" under the APA, a plaintiff must show, *inter alia*, "that an agency failed to take a *discrete* agency action that it is *required* to take."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  As discussed below, 3M seeks various categories of noise and ototoxin data, but it did not request those data through its subpoena.  DoD was not required to produce information that 3M had not specifically requested.  *See Sydnor v. OPM*, No. 06-0014, 2008 U.S. Dist. LEXIS 37162, at *17 (E.D. Pa. May 7, 2008) (claim of agency inaction failed where the plaintiff never requested the agency to take the action).

Likewise, as to two of the categories of documents sought in 3M's Motion – (1) sales and distribution data and (2) documents relating to "short course" meetings – DoD has already provided all responsive records.  Thus, there is no delay and no basis to "compel agency action" where that action has already been performed.

Finally, although DoD has not yet issued a response to 3M's request for testing data for various hearing protection devices, that request was only made in August 2020. DoD has not unreasonably delayed responding. In any event, 3M is not entitled to production of testing data for the reasons discussed below.

## II. 3M Is Not Entitled to Production of the Noise and Ototoxin Exposure Data Referenced in Its Motion

### A. Average Noise and Ototoxin Exposure Data

3M's Motion seeks "average noise and ototoxin exposure per military occupational specialty. This data may be kept as average daily, weekly, monthly or yearly exposures." Mot. at 7. At the outset, 3M's motion should be denied as to these data because 3M did not specifically request them in any of the *Touhy* requests incorporated into its subpoena. 3M may not move to compel the production of documents that it did not request through Rule 45. *See Rosenthal v. Shiraz, Inc.*, No. 07-81184, 2009 U.S. Dist. LEXIS 130472, at *12 (S.D. Fla. July 7, 2009) (a formal request for documents made pursuant to the Federal Rules of Civil Procedure is a necessary prerequisite to a motion to compel).

To be sure, 3M's July 26, 2019 request sought various documents regarding noise and ototoxin exposure in the military, but that request was vague and overbroad, and it did not mention "average noise and ototoxin exposure per military occupational specialty." Mot., Ex. E at 13. In 2019 and again in early 2020, DoD informed 3M that the July 26, 2019 request was vague and overbroad, and sought

clarification.  Kim Decl. ¶¶ 4, 6.  On March 17, 2020, 3M submitted a new *Touhy* request purporting to provide additional information about the noise and ototoxin data it was seeking, but that request did not mention "average noise and ototoxin exposure per military occupational specialty."  Mot., Ex. B at 4.  Even when 3M sent its September 2020 subpoena, it merely attached its prior *Touhy* requests instead of specifically identifying the information it was seeking.  Mot., Ex. D.  The subpoena thus also did not mention "average noise and ototoxin exposure per military occupational specialty."  *Id*.

Because 3M did not specifically request this information through its subpoena, it cannot seek to compel production of the information.  *See Rosenthal*, 2009 U.S. Dist. LEXIS 130472, at *12; *see also Hammitt v. Butte Cty. Jail*, No. 2: 16-cv-2644 KJN P, 2017 U.S. Dist. LEXIS 189256, at *3 (E.D. Cal. Nov. 14, 2017) ("Plaintiff may not amend his discovery requests in a motion to compel."). Likewise, DoD has not unreasonably delayed in providing information that 3M did not clearly identify in any of its requests, particularly considering DoD's extensive efforts to meet and confer with 3M to better understand the documents 3M was seeking.

In any event, as explained in the Kim Declaration, DoD does not possess "average noise and ototoxin exposure per military occupational specialty."  *See* Kim Decl. ¶ 12.  3M speculates that such data may exist because an Army pamphlet and

other public documents state that the Army monitors certain noise and ototoxin exposures.  Mot. at 4-5.  But those documents do not suggest that DoD maintains data regarding "average noise and ototoxin exposure per military occupational specialty."  Rather, as 3M acknowledges, it is merely Defendants' unsupported "understand[ding]" that the Army "calculates the average daily noise exposure of individuals working in each military occupational specialty."  Mot. at 4.  As explained in the Kim Declaration, 3M's understanding is incorrect.  *See Wachovia Fin. Servs. v. Birdman*, No. 09-81252-CIV, 2010 U.S. Dist. LEXIS 152291, at *29 (S.D. Fla. Sep. 27, 2010) (speculation that a party is withholding information "is insufficient to support entry of an order compelling discovery which the resisting party claims does not exist").  Accordingly, 3M's motion should be denied because DoD does not possess the data sought.  *See id*. ("It is elementary that a party can not be ordered to compel non-existent information.").[3]

---

[3] Promptly after receiving 3M's motion to compel, DoD attempted to identify any information that was similar to the average exposure information sought by 3M.  On October 15, 2020, DoD offered to produce data from its Health Hazard Information Module separated by Military Occupational Specialty ("MOS") as it relates to different noise and ototoxin hazards, and provided a sample of the data to 3M.  DoD offered to produce the data for a reasonable number of MOSs, but not for all of the roughly 1,500 MOSs in the military.  The parties are continuing to discuss this proposal but have not yet reached an agreement.

## B. Army Installation Noise and Ototoxin Exposure Data

3M also seeks "[d]ata regarding noise and ototoxin exposures at the bellwether relevant Army installations."  Mot. at 7.  As with the data discussed above, however, 3M did not seek this information through the *Touhy* requests incorporated into its subpoena.  The eight categories of documents regarding noise and ototoxin exposure that 3M sought in its July 26, 2019 *Touhy* request do not mention "Army installations."  Mot., Ex. E at 13.  On March 17, 2020, 3M submitted a new *Touhy* request purporting to provide additional information about the noise and ototoxin data it was seeking, but that request did not discuss any "[d]ata regarding noise and ototoxin exposures at the bellwether relevant Army installations."  Mot., Ex. B at 4.  DoD did not unreasonably delay in providing information that 3M did not clearly identify in any of its requests.

Even if 3M had sought this information, DoD would not be able to provide it. The request generally seeks "[d]ata regarding noise and ototoxin exposures" at Army installations.  3M's Motion fails to specify the type of "data" it seeks, other than that it regards "noise and ototoxin exposures."  It has recently become clear through conversations between counsel, however, that 3M is seeking the *entirety* of DoD's Defense Occupational and Environmental Health Readiness System - Industrial Hygiene ("DOEHRS-IH") database.  3M's request is absurd.  3M has not established that any portion of – let alone the entirety of – the database is relevant to this

litigation.   Moreover, the database contains sensitive information about DoD civilians, Service members, and military installations, which is protected from disclosure and thus cannot be provided to 3M.  Kim Decl. ¶ 16.  Certain documents relating to noise and ototoxin exposures are located, not in the DOEHRS-IH database, but at the various Army installations.  To the extent 3M may be seeking those documents, they would be overly burdensome to gather because the industrial hygiene program managers at the various Army installations would have to search through hard copy records.  Kim Decl. ¶ 13.  Many of those managers are working remotely, do not have daily access to records, and have limited staff and thus are not in a position to conduct that search.  *Id.*

### C. Army Installation Noise and Ototoxin Exposure Data

3M also seeks the "health hazard assessments for the weapons operated by the bellwether plaintiffs."   Mot. at 7.   Again, 3M did not seek Health Hazard Assessments ("HHA") reports in its subpoena.  Although it generally sought "[n]oise dosimetry data or other documents regarding the amount of noise service members are exposed to . . . when operating particular weapons," Mot., Ex. E at 13, that overbroad request failed to adequately specify the documents sought and did not identify HHA reports.

In any event, DoD cannot produce HHA reports because they contain proprietary and national security sensitive information.  Kim Decl. ¶ 20.  Redacting

the non-releasable information from the reports would be extremely time-consuming, as it would require a line-by-line review of the documents, some of which are hundreds of pages long.  *Id.*  There are two individuals within the Army capable of compiling this information and they have other responsibilities and cannot be diverted from those for such a labor-intensive task.  *Id.* ¶ 21.

3M also failed to specify which HHA reports it is seeking.  Although 3M eventually provided a list of weapons systems, Mot., Ex. K at 4-5, many of the weapons systems were generic, as 3M acknowledged, *id.* at 4.   HHA reports do not correspond to general weapons systems like "M16" or "grenades," but rather they pertain to weapons systems utilized under particular conditions, such as specific ammunition.  Kim Decl. ¶¶ 18, 22.  Therefore, DoD does not know which of the *thousands* of HHA reports 3M is seeking, and it is not the government's job to sort through the many HHA reports and try to discern which ones may be of interest to 3M.[4]

### D. Recommendations and Lifetime Exposure Data

3M also seeks the production of the "'comprehensive, operational and work task potential exposures-based medical surveillance recommendations,' and 'DoD lifetime personnel exposure data,' that are referred to in the promotional materials

---

[4] DoD has recently proposed a compromise to 3M under which it would extract information from a limited number of HHA.  The parties are continuing to confer about this request.

related to the DOEHRS-IH database." Mot. at 7 (citing Ex. H). Once again, 3M did not identify this information in its subpoena or the *Touhy* requests incorporated therein. 3M's motion to compel the production of this information should be denied for that reason alone. Moreover, it is unclear what "medical surveillance recommendations" 3M is seeking or how that information is relevant to this litigation. DoD cannot readily identify "recommendations" in the DOEHRS-IH database. Kim Decl. ¶ 15.

As for the "lifetime personnel exposure data," it is unclear what specific type of exposure data 3M is seeking. Whatever type of data 3M may be seeking, 3M's request is massively overbroad, in part because it is not limited to any particular servicemembers. Instead, it apparently seeks data about *any servicemember* who may have information in the DOEHRS-IH database, regardless of whether that servicemember is a plaintiff in this litigation. Information about non-parties is not relevant. Moreover, producing data from the DOEHRS-IH system would require a user to search with information associated with a specific person (*e.g.*, name and social security number) and examine the information generated from the search to try to identify information about "exposures." Kim Decl. ¶ 14. Performing these searches for a large number of people would be unduly burdensome. "'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs'" in any case in which third-party

discovery is sought. *See Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007). That factor is entitled to particular weight where, as here, the third-party discovery is sought from the United States. Any such discovery "must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Id*. (quoting *Exxon Shipping Co. v. Dep't of the Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). 3M's motion should therefore be denied to avoid the imposition of an undue burden on DoD.[5]

### III.   DoD Has Already Produced Sales and Distribution Data

3M seeks to compel the production of "sales and distribution data for the CAEv2" because, it contends, DoD "has yet to provide any response." Mot. at 7. That is demonstrably false. Over seven months ago – on March 6, 2020 – DoD sent a letter to 3M explaining that it was releasing documents in response to paragraphs B(1) and B(2) of 3M's July 26, 2019 request. Ex. A attached hereto. In those paragraphs, 3M sought "documents regarding purchasing and distribution of CAEv2." Mot., Ex. E at 9. DoD's March 6, 2020 letter explains that DoD "has provided all of the responsive records it possesses" for paragraphs B(1) and B(2). At no point prior to filing its motion to compel did 3M indicate that it was dissatisfied

---

[5] The parties have recently begun exploring whether a compromise may be possible under which DoD would produce a more limited set of information, and the parties' discussions are continuing.

with DoD's response or request any additional sales or distribution data.  3M's motion fails to even acknowledge DoD's March 6, 2020 document production, much less explain why that production may be insufficient.  *See Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect.").  The Court should deny 3M's motion for records that have already been produced.

## IV.   DoD Has Already Produced Any Records Regarding Short Course Meetings

Next, 3M seeks the production of "documents related to the Military Audiology Association 'Short Course' meetings from 1999 to 2005."  Mot. at 8. DoD does not have a repository of documents related to short course meetings.  Kim Decl. ¶ 23.  To the extent that responsive documents exist, they would have been produced in response to various other requests that 3M has made.  For example, on October 10, 2019, DoD released records in response to paragraphs C(1), C(2), C(3), E, F, and G(1)(b) of 3M's July 26, 2019 request.  Ex. B attached hereto.  Those paragraphs sought, among other things, various training materials, instructions, and communications.  Mot., Ex. E at 9-11.  DoD also produced voluminous records in response to subpoenas to DoD employees, some of whom attended short course

meetings. Those productions would have included any documents responsive to this request.

After 3M submitted its March 17, 2020 request for "short course" materials, DoD conducted another search specifically for documents related to military audiology association short courses. Kim Decl. ¶ 23. DoD found no additional responsive information than what previously had been produced. *Id.* The Court should deny 3M's motion for records that have already been produced.

## V.     3M Is Not Entitled to Production of Testing Data on Other Hearing Protection Devices

Lastly, 3M seeks "testing data on other hearing protection devices distributed to the Group A bellwether plaintiffs." Mot. at 9-10. 3M seeks such data for 18 different hearing protection devices. Mot., Ex. C at 4-5. 3M's Motion should be denied, first, because the request seeks irrelevant information. The hearing protection devices for which 3M seeks testing data are not at issue in this litigation and 3M has offered no factual basis to infer that those devices contributed to any plaintiff's hearing loss. *See* Mot. at 9-10. 3M's speculation that the testing data may show an alternative cause of the plaintiffs' injuries is insufficient to meet its burden to demonstrate relevance. *See Jones v. Gov't Emples. Ins. Co.*, No. 17-cv-891, 2019 U.S. Dist. LEXIS 112788, at *9 (M.D. Fla. Apr. 22, 2019) ("The party requesting discovery has the burden of demonstrating the relevance of the discovery requests."); *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-20000, 2016 WL 11689073, at

*1 (N.D. Ala. June 20, 2016) (when seeking discovery from third parties, "the requesting party must demonstrate need and must limit the discovery to reduce the burden it imposes").

Moreover, 3M's request is vague and would impose an undue compliance burden on DoD. The request seeks "testing data" about various hearing protection devices without identifying particular studies or explaining the information sought. To the extent that 3M seeks studies regarding tests performed on the hearing protection devices, those studies are already publicly available because the Army publishes them. Kim Decl. ¶ 24. Thus, the subpoena improperly seeks information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Depending on the scope of 3M's request, 3M may also be seeking proprietary information about other manufacturers' products, which may not be produced to 3M. Kim Decl. ¶ 24.

Furthermore, 3M's argument that DoD has unreasonably delayed in responding to this request is meritless. 3M did not seek the testing data until August 7, 2020. Mot., Ex. C. "[N]o per se rule [exists] as to how long is too long." *In re Int'l Chem. Workers*, 958 F.2d 1144, 1149 (D.C. Cir. 1992). "[T]he agency's delay" must be "so egregious," however, "as to warrant mandamus." *Tel. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984). Cases in which courts have "actually issued an order compelling an agency to press forward with a specific

project" thus are "exceptionally rare." *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

Courts have identified certain factors that "provide[] useful guidance in assessing claims of agency delay." *Id.* One of those factors is "the consequences of the agency's delay." *Chem. Workers*, 958 F.2d at 1149. "'Delays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake.'" *Id.* (quoting *Pub. Citizen Health Rsrch. Grp. v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983)). Another factor is the presence of "'any plea of . . . administrative convenience, practical difficulty . . . or need to prioritize in the face of limited resources.'" *Id.* (quoting *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987)).

Both of these factors militate against the conclusion that 3M is entitled to any relief against DoD because of the minimal delay in DoD's response to 3M's August 2020 *Touhy* request.

First, no "'human lives are at stake'" in this litigation. *See Chem. Workers*, 958 F.2d at 1149. "This multidistrict litigation," to the contrary, "is a products liability action." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 1821924, at *1 (N.D. Fla. Apr. 10, 2020).

Second, the avalanche of *Touhy* requests and subpoenas that 3M has submitted to DoD are so numerous and so broad that the personnel given the task of

18

responding to them have been required to choose among the requests to determine how best to allocate their limited time.  DoD has limited personnel resources with which to respond to the demands of civil litigation.  It should not be criticized for the resource allocations it has made in this litigation.  Not only do the courts have "no basis for reordering agency priorities" but "[t]he agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Barr*, 930 F.2d at 76.  DoD has already expended enormous resources responding to the 3M's numerous *Touhy* requests and subpoenas, to the detriment of other requesters and Department priorities.  DoD has already produced over 10,000 pages of records to 3M.  Kim Decl. ¶ 5.  3M thus should not be heard to complain that DoD has not yet responded to an overbroad request that it made on the eve of this Court's deadline for government discovery.  *See* Case Management Order No. 13, ECF 1203, at 2.

Third, the COVID-19 pandemic has caused DoD to issue mandatory telework instructions to its personnel. Those instructions have impacted access to DoD facilities and record systems, thereby making compliance with 3M's *Touhy* requests all the more difficult.  Kim Decl. ¶ 7.

A claim of unreasonable delay is unwarranted in cases where "[the] delay results from practical difficulties due to the large size of [the claimant's] claims and the need to prioritize a competing workload with limited resources." *Orion Reserves*

*L.P. v. Kempthorne*, 516 F. Supp. 2d 8, 16-17 (D.D.C. 2007).  This case is such a case.  Any delay that has taken place in this litigation thus does not warrant the granting of 3M's motion to compel.

**CONCLUSION**

3M's motion to compel should be denied for the reasons set forth above.

Respectfully submitted,

JOHN V. COGHLAN
Deputy Assistant Attorney General

LAWRENCE KEEFE
United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

s/ *Joshua M. Kolsky*
JOSHUA KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

Dated: October 23, 2020          *Attorneys for the Department of Defense*

## CERTIFICATE OF SERVICE

I certify that I served the within memorandum on all counsel of record by filing it with the Court by means of its ECF system on October 23, 2020.

s/ *Joshua M. Kolsky*

## CERTIFICATE UNDER N.D. FLA. LOC. R. 7.1(F)

I certify that the within memorandum contains 4,309 words, not counting the caption or signature block, based on the word-processing software used to prepare it.

s/ *Joshua M. Kolsky*