IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                           Case No. 3:19-md-2885

                                                  Judge M. Casey Rodgers
                                                  Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Compel the Deposition of LTC Martin Robinette. ECF No. 1457. LTC Robinette is an employee of the Department of Defense. The Government has filed a response in opposition, ECF No. 1474, and the motion, therefore, is ripe for consideration. The district court referred this matter to the undersigned for the preparation and issuance of a report and recommendation. ECF No. 1459. For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendants' motion to compel should be **DENIED**.

### I.  BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2"). More specifically:

> Plaintiffs assert state law claims for negligence and strict product liability based on design defect and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence per se, and consumer-protection claims.  Plaintiffs' design defect claims target two features of the CAEv2, alleging that: (1) its stem was too short for certain users—primarily those with medium to large ear canals—to insert the device deeply enough into their ears to obtain the airtight seal necessary to provide hearing protection; and (2) when the earplug was inserted according to standard fitting instructions, the positioning of the opposing flanges relative to the outer ear caused the basal edge of the third flange of the non-inserted side of the earplug to press against some users' ear canal openings and fold up, causing imperceptible loosening of the seal, which, they claim, results in little to no hearing protection for the user.  Plaintiffs' failure-to-warn claims are based on allegations that Defendants failed to provide warnings regarding the alleged dangers inherent in the use of the CAEv2.

MDL ECF No. 1280 at 16–17.  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  MDL ECF No. 704.  Defendants dispute these allegations.  MDL ECF No. 959.

The Government is not a party to this litigation, MDL ECF No. 704 at ¶¶ 16-20, but its relationship to this matter is undeniable.  The docket reflects litigation between the parties over the discoverability of government records, *see, e.g.*, MDL ECF Nos. 977, 1154, 1258, and, until recently, Defendants attempted to invoke the government contractor defense as a shield from state tort liability for those plaintiffs claiming injury from using the CAEv2 during their military service, *see* MDL ECF No. 1280 (denying

Defendants' motion for summary judgment based on the government contractor defense and granting Plaintiffs' motion for summary judgment on the same as a matter of law).

Consequently, the parties have identified the United States' various agencies and employees as critical sources of third-party discovery. Relevant here, on October 25, 2019, Defendants sent United States Army Major Collin Evans, on behalf of the Department of Defense, a nine-page letter requesting interviews with 30 witnesses (including LTC Robinette) and providing the bases for their request in narrative form.  ECF No. 1457-1.  Defendants advised Major Evans that an interview and deposition of LTC Robinette would be relevant to this multidistrict litigation because he would "likely have knowledge related to government participation in the design and decision to purchase the CAEv2" because was "copied on correspondence between Dr. Ohlin and Defendants were Dr. Ohlin informed Defendants the production samples he received were too long and that he shortened those samples to fit into the case."  *Id.* at 6. Additionally, Defendants stated that LTC Robinette "authored a 2015 narrative outlining some of the ways the Army Hearing Conservation Program's missions have prevented/mitigated negative health effects in Army populations, including through use of the CAEv2."  *Id.*

3

Defendants revised their request on December 2, 2019.  ECF No. 1457-3 at 9–21.  Unlike their first request, Defendants described the supposed relevance of each witness in turn and provided contact information where available.  *Id.* at 12–20.  As to LTC Robinette, Defendants stated:

> Documents produced to date detail LTC Robinette's: (i) 1999 correspondence with Dr. Ohlin regarding the military's desire to shorten the stem of the dual-ended Combat Arms Earplug so that it fit into the military's preferred carrying case; and (ii) a 2015 analysis showing how the Combat Arms Earplug has prevented and mitigated negative health effects in Army populations. Defendants wish to interview and depose LTC. Robinette regarding: (i) the military's design and development of the dual-ended Combat Arms Earplugs, including the desired length of the CAEv2 stem; (ii) military testing, research or other analysis of the effectiveness of the Combat Arms Earplugs; (iii) instructions and/or training that military audiologists provided to service members for the use or fit of the Combat Arms Earplugs; and (iv) the location of documents or other data regarding those topics.

*Id.* at 15–16.

On June 23, 2020, United States Army Major Nicole Kim informed the parties that the Department declined to authorize LTC Robinette to sit for a deposition.  ECF No. 1457-2.  Major Kim provided this reasoning:

> After speaking with COL Robinette, it is apparent that he lacks relevant knowledge of the information you listed in your requests. COL Robinette had a minimal role, if any, in acquiring or approving the CAEv2 and his direct communications about CAEv2 were limited. Additionally, he served as a DOJ subject matter expert in a separate investigation related to the underlying

4

>facts of this case. Because of this, it is our position that allowing this employee to sit for a deposition would not be productive and would create an undue burden on the DoD due to the amount of time the DoD would expend preparing for and participating in the requested deposition. See DoDD 5405.2 and Fed. R. Civ. P. 26. Therefore, your request to depose this individual is denied.

*Id.* at 1. The Department nevertheless authorized LTC Robinette "to provide responses to interrogatories based on the submitted Touhy requests and his limited knowledge of the CAEv2," but it imposed limitations on the number and scope of these interrogatories and reserved the right to object on grounds of relevance, undue burden, proportionality, and privilege. *Id.* at 2.

Defendants filed a motion to compel on July 1, 2020, challenging the Department's decision to preclude LTC Robinette's deposition, ECF No. 1211, and the district court referred the motion to the undersigned, ECF No. 1212. On July 30, 2020, the undersigned recommended the district court grant Defendants' motion to compel and compel the Department to produce LTC Robinette for deposition. ECF No. 1292. The Department objected to the undersigned's report and recommendation. ECF No. 1320.

On August 17, 2020—upon review of the Department's objections—the district court directed the parties to issue appropriate subpoenas for any government witness depositions or document productions. MDL ECF No. 1331 at 47. The district court memorialized this ruling on August 20, 2020,

5

in Pretrial Order No. 50, in which it explained that "the parties' practice of not issuing subpoenas for [g]overnment witnesses and documents," although understandable, "is complicating matters and interfering with the fair and efficient progress of discovery[.]"  ECF No. 1340 at 3. Consequently, the district court declined to adopt the undersigned's report and recommendation and denied as moot Defendants' motion to compel. ECF No. 1341.

Defendants acted promptly.  On August 27, 2020, they issued a subpoena to LTC Robinette for an in-person or remote deposition on September 16, 2020.  ECF No. 1457-3.  The subpoena incorporated by reference Defendants' December 2, 2019, discovery request to Major Evans.  *Id.* at 5.

The Department objected to the subpoena in a comprehensive letter to Defendants' counsel on September 10, 2020.  ECF No. 1457-4.  The Department asserted that LTC Robinette's deposition would be unduly burdensome and not proportional to the needs of this litigation.  *Id.* at 1–2. The Department relied on its earlier reasoning, stated in the July 23, 2020, letter to the parties, and added additional arguments.  The Department claimed LTC Robinette had "a minimal role, if any, in acquiring or approving the CAEv2," "his direct communications about the CAEv2 were limited,"

"[h]e has no personal knowledge regarding the design and development of the CAEv2," and "[h]is personal knowledge regarding the testing, research, and analysis of hearing protection effectiveness is in an aggregate sense for all hearing protection used by the Army" and "not specific to the CAEv2." *Id.* at 3.

Moreover, the Department asserted that "his work and the information he obtained in relation to" serving as an expert for the Department of Justice is protected from disclosure under the deliberative process privilege, attorney-client privilege, and work product protection and, therefore, not testimony the Department has the authority to authorize LTC Robinette to disclose. *Id.* at 4. Specifically, LTC Robinette learned about inquiries by the Department of Justice "relating to the Army Hearing Program to obtain information in order to advise the agency about whether and how to proceed with the False Claims Act *qui tam* litigation." *Id.*

Finally, the Department raised other objections to Defendants' subpoena: (1) the testimony sought is cumulative and duplicative of testimony by LTC John Merkley and Col. Kathy Gates "about the military's design and development of the CAEv2, the military's testing of the CAEv2, and the instructions and training provided to service members for use of the CAEv2"; (2) the testimony may be obtained through less burdensome

7

means, such as the six interrogatories the Department offered in its July 23, 2020; (3) the subpoena failed to give the Department a reasonable time to comply; and (4) the cumulative impact of authorizing this subpoena in this multidistrict litigation "would be disruptive to the agency's functioning." *Id.* 4–5.

On September 11, 2020, the Government moved to quash Defendants' subpoena in the Western District of Texas. Case No. 3:20-mc-51-MCR-GRJ, ECF No. 1. Upon 3M's motion, Case No. 3:20-mc-51-MCR-GRJ, ECF No. 2, Judge David A. Ezra transferred the matter to this Court but denied the motion to quash as moot subject to refiling here, 3:20-mc-51-MCR-GRJ, ECF No. 6. The Government did not refile its motion to quash, so Defendants filed the instant motion to compel.

## II.  THE HOUSEKEEPING STATUTE, *TOUHY*, AND THE ADMINISTRATIVE PROCEDURE ACT

Typically, the Federal Rules of Civil Procedure—specifically Rule 45—govern the production of third-party discovery and objections thereto. Fed. R. Civ. P. 45; *Citizens Union of City of New York v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). Not so here because the subject third-party is a current government employee. Instead, the Court must look to numerous federal statutes and regulations, beginning with the Housekeeping Statute, 5 U.S.C. § 301.

The Housekeeping Statute authorizes "the head of an Executive department or military department" to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. The antecedents of § 301, however, "go back to the beginning of the Republic, when statutes were enacted to give heads of early Government departments authority to govern internal department affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979). Congress first enacted housekeeping statutes in 1789 "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file government documents." H.R. Rep. No. 85-1461 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352. "Those laws were consolidated into one statute in 1874[,] and the current version of the statute was enacted in 1958." *Chrysler Corp.*, 441 U.S. at 309.

In 1951, the Supreme Court looked to the Housekeeping Statute to determine whether the Attorney General properly issued a regulation prohibiting a subordinate official of the Department of Justice from obeying a subpoena duces tecum ordering the production of records in his possession. *Touhy*, 340 U.S. at 463. The Court held the regulation was

9

valid because the Housekeeping Statute authorized the Attorney General "to prescribe regulations not inconsistent with the law for the custody, use, and preservation of the records, papers, and property appertaining to the Department of Justice[.]"  *Id.* at 468.

The Supreme Court's holding prompted federal agencies to adopt so-called "*Touhy* regulations" concerning testimony by agency employees and the production of government documents.  *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011).  The Department of Defense's *Touhy* regulations are codified at 32 C.F.R. § 97.1, *et seq.*, which provide in pertinent part:

> In response to a litigation request or demand for official DoD information or the testimony of DoD personnel as witnesses, the General Counsels of DoD, Navy, and the Defense Agencies; the Judge Advocates General of the Military Departments; and the Chief Legal Advisors to the JCS and the Unified and Specified Commands, with regard to their respective Components, are authorized—after consulting and coordinating with the appropriate Department of Justice litigation attorneys, as required—to determine whether official information originated by the Component may be released in litigation; whether DoD personnel assigned to or affiliated with the Component may be interviewed, contacted, or used as witnesses concerning official DoD information or as expert witnesses; and what, if any, conditions will be imposed upon such release, interview, contact, or testimony.  Delegation of this authority, to include the authority to invoke appropriate claims of privilege before any tribunal, is permitted.

32 C.F.R. § 97.6(a). "[T]he individual seeking such release or testimony must set forth, in writing and with as much specificity as possible, the nature and relevance of the official information sought." 32 C.F.R. § 97.6(c)(2). The Department defines "official information" as:

> All information of any kind, however stored, that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the United States Armed Force

32 C.F.R. § 97.3(d).

When deciding whether to authorize the release of official information or testimony, the Department "should consider the following … factors":

> (1) Whether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules;
>
> (2) Whether the disclosure, including release in camera, is appropriate under the rules of procedure governing the case or matter in which the request or demand arose;
>
> (3) Whether the disclosure would violate a statute, executive order, regulation, or directive;
>
> (4) Whether the disclosure, including release in camera, is appropriate or necessary under the relevant substantive law concerning privilege;
>
> (5) Whether the disclosure, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to DoD 5200.1-R, "Information Security Program Regulation," August 1982; unclassified

technical data withheld from public release pursuant to DoD Directive 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure," November 6, 1984; or other matters exempt from unrestricted disclosure; and,

(6) Whether disclosure would interfere with ongoing enforcement proceedings, compromise constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

32 C.F.R. § 97.6(b).

Nevertheless, *Touhy* did not create or endorse an executive privilege for federal agencies to resist entirely discovery efforts by private parties. *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).[1] Only two years after *Touhy*, the Supreme Court emphasized that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953). What's more, Congress amended the Housekeeping Statute in 1958 to include the following limitation: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

777–78 (9th Cir. 1994) (discussing the 1958 amendment to the Housekeeping Statute).

Because the Government does not have unfettered discretion to withhold discovery from federal litigants (either in the form of records or testimony), the Government's application of *Touhy* regulations does not escape judicial review.  The Eleventh Circuit, however, cabins such review to the Administrative Procedure Act ("APA") rather than Federal Rule of Civil Procedure 45.  *Moore*, 927 F.2d at 1197.[2]  Generally speaking, the APA provides two types of challenges for a dissatisfied party to seek redress in federal court.  5 U.S.C. § 706.  First, when presented with a complaint of agency inaction, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed."  § 706(1).  Second, a reviewing court may set aside a final agency action that it concludes is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" in addition to other reasons.  § 706(2).

The scope of review under § 706(2) is narrow and requires only reasoned decisionmaking by the Government.  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020).  The Court must

---

[2] This standard of review is the subject of a circuit split.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.2 (3d ed.).

13

"determine only whether [the Government] examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

## III. DISCUSSION

Turning to the dispute at hand, the issue of whether the Department properly precluded LTC Robinette's deposition is not before the Court on a blank slate. The undersigned concluded on July 30, 2020, that the Department's decision, as stated in its June 23, 2020, letter to the parties, ECF No. 1457-2, was arbitrary and capricious. ECF No. 1292 at 26–29. The thrust of this ruling was the incongruous representations by the Department that, on the one hand, LTC Robinette played a "minimal role" in the military's acquisition or approval relative to his role and, on the other hand, he served as a subject matter expert for the Department of Justice in an investigation related to the underlying facts of this multidistrict litigation. *Id.* at 28. Moreover, the Court noted that "the Department's offer for the parties to submit interrogatories (which are typically unavailable in third-party discovery) to LTC Robinette tacitly recognizes that his testimony is relevant." *Id.* In the Court's view, there did not appear to be any rational

14

connection between the facts before the Department and its ultimate decision.

But the administrative record[3] and agency reasoning before the Court now are not the same as that presented three months ago. After Defendants issued their subpoena to LTC Robinette in August, the Department responded with a comprehensive letter, in which it raised several objections to the relevance, proportionality, burden, and scope of the subpoena. ECF No. 1457-4. As it turns out, this more copious explanation by the Department makes all the difference. That is, the Department's reasoning for precluding LTC Robinette's deposition is not arbitrary and capricious.

In determining whether to authorize LTC Robinette for deposition, the Department was required to consider "whether [Defendants' subpoena] is unduly burdensome or otherwise inappropriate under the applicable court rules[,]" *i.e.*, the Federal Rules of Civil Procedure. 32 C.F.R. § 97.6(b)(1). The Department did just that. Although the Department offered some generalized assertions of burden that this Court has rejected previously, *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-55, 2020 WL

---

[3] "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." Dep't of Commerce, 139 S. Ct. at 2573.

15

6274824, at *6 (N.D. Fla. Oct. 26, 2020), it explained, in detail, why LTC Robinette's testimony would not pass even the threshold relevance test for discoverability under Rule 26(b)(1).  ECF No. 1457 at 3–4.  The Department clarified that in LTC Robinette's "minimal role … in acquiring or approving the CAEv2," he does not have personal knowledge "regarding the design and development of the CAEv2" or "the testing, research, and analysis of the effectiveness of the CAEv2."  *Id.* at 3.  The Department stated further that even if LTC Robinette could offer some relevant testimony, it would not authorize his deposition because that discovery would be unreasonably cumulative and duplicative of the testimony offered by other military witnesses.  *Id.* at 4[4]; *see also* Fed. R. Civ. P. 26(b)(2)(C).

The Department was also required to consider "whether the disclosure … is appropriate under the rules of procedure governing the case or matter in which [Defendants' subpoena] arose[.]"  32 C.F.R. § 97.6(b)(2).  The Department did that too.  Indeed, it concluded that LTC

---

[4] Specifically, the Department permitted LTC Merkley to testify regarding, *inter alia*, his knowledge of "the military's design and development of the CAEv2[,]" of "the military's testing of the CAEv2[,]" of "the effectiveness of the CAEv2 in preventing and mitigating hearing loss in the military[,]" and of "the instructions and training provided to service members for use of the CAEv2."  ECF No. 1457-4 at 4 n.1.  Similarly, the Department authorized COL Gates to testify concerning, *inter alia*, her knowledge of "the military testing and evaluation of the CAEv2[,]" of "the role of military audiologists as it pertains to providing fitting instructions and tutorials to service members on the use of the CAEv2," and of "training service members to use the CAEv2."  *Id.* at 4 n.2.

Robinette's deposition should be barred because Defendants' subpoena sought testimony on privileged information obtained in relation to his work as a subject-matter expert for DOJ, during which he "advise[d] the agency about whether and how to proceed with the False Claims Act *qui tam* litigation." ECF No. 1457-4 at 4; *see also* Fed R. Civ. P. 45(e)(2).

The thrust of Defendants' argument in its motion to compel is that the Department failed to examine critical facts in the administrative record. Defendants argue that "LTC Robinette's testimony would be highly relevant to demonstrating the military's knowledge of the flange-fold instruction," which Plaintiffs allege Defendants concealed. ECF No. 1457 at 4; *see also* ECF No. 1457-8 at 4 (under seal). And they state that "the record indicates that LTC Robinette had more than a minimal role in the military's decision to acquire the CAEv2." ECF No. 1457-8 at 4 (under seal). Defendants, however, rely on "facts [they] never presented" to the Department, and, thus, are not part of the administrative record. ECF No. 1474 at 13. This is unavailing on APA review because the Department's "only obligation [was] to consider the information presented to it in a request in light of the Department's regulations." *Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011), *aff'd*, 443 F. App'x 407 (11th Cir. 2011).

In any event, Defendants fail to present a meaningful challenge to the Department's conclusion that LTC Robinette's testimony, if relevant, would be unreasonably cumulative and duplicative of the testimony offered by other military witnesses. The Department compared Defendants' purported reasons for requesting LTC Robinette's deposition with its authorizations for LTC Merkley and Col. Gates to testify concerning certain subjects relevant to this litigation. Defendants' contention that LTC Robinette "appears to have greater knowledge … of the flange-fold instruction," ECF No. 1457-8 at 5, is insufficient to overturn the Department's decision because it is couched in conjecture. Moreover, the fact that LTC Robinette may have "knowledge of [Doug] Ohlin's general practices when approving new hearing protection devices," *id.* (under seal), is immaterial at this juncture because it appears this testimony would only be relevant to Defendants' government contractor defense, which this Court rejected as a matter of law. ECF No. 1280.

Lastly, as the Government points out, Defendants do not address in their motion to compel the Department's assertions of privilege. ECF No. 1474 at 14. This is fatal to Defendants' motion because "[i]t is well understood in administrative law that a reviewing court will uphold an agency action resting on several independent grounds *if any of those*

*grounds* validly supports the result." *Pierce v. S.E.C.*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) (emphasis added). Because the Department was "certainly entitled to consider the risk to privileged information and the burden this would place on the agency in determining whether to make" LTC Robinette available for deposition, its ultimate decision based on this consideration is not arbitrary or capricious. *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Defense*, 246 F. Supp. 3d 34, 48 (D.D.C 2017).

In sum, the administrative record reveals that the Department examined the facts before it and considered whether LTC Robinette's deposition would be an undue burden or inappropriate under the Federal Rules of Civil Procedure, as required by its *Touhy* regulations. Defendants fail to demonstrate that the Department's reasoning to preclude LTC Robinette's testimony (because it was irrelevant, cumulative and duplicative, and privileged) is arbitrary or capricious.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendants' Motion to Compel the Deposition of LTC Martin Robinette, ECF No. 1457, should be **DENIED**.

**IN CHAMBERS** this 29th day of October 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.