IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

## ORDER

Pending before the Court is Defendants' Motion to Compel Plaintiffs to Produce All Facts or Data Considered by Plaintiffs' Experts. ECF No. 1479. Plaintiffs filed a response in opposition, ECF No. 1491, and Defendants, with leave of court, filed a reply memorandum, ECF No. 1510. The instant motion, therefore, is ripe for consideration. For the reasons discussed below, Defendants' motion to compel is due to be **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

This multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2"). Plaintiffs are servicemembers, veterans, and civilians, asserting state law claims for negligence and strict products liability based on design defect

and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence *per se*, and consumer-protection claims. They are seeking damages for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.

The parties are engaged in case-specific discovery related to the Bellwether Plaintiffs' claims and Defendants' defenses. On October 9, 2020, the Trial Group A Bellwether Plaintiffs disclosed to Defendants 44 expert reports (20 "general" reports and 24 case-specific reports).[1] One such report—an exemplar used by Defendants in their motion and, consequently, discussed by Plaintiffs—is authored by Dr. David A. Eddins. ECF No. 1479-2. Dr. Eddins, a Professor and Director of the Auditory & Speech Sciences Laboratory at the University of South Florida, was retained by Plaintiffs to "provide [his] expert scientific input as to the fit, function, and usability of the [CAEv2] hearing protection device[,]" specifically "whether or not a hearing scientist with a background in clinical audiology, in a well-equipped laboratory, could reasonably determine the hearing protection ability." *Id.* at 3. In short, Dr. Eddins opines that "design

---

[1] Defendants say in their motion that Plaintiffs served them with 46 reports (21 "general" reports and 25 case-specific reports). ECF No. 1479 at 3. This distinction is immaterial to the resolution of this motion, but the Court will use the numbers stated by Plaintiffs because this motion concerns their expert reports.

2

issues lead to compromised fit and function that would impact many users of the CAEv2 who otherwise expected to receive protection from hazardous noise exposure when wearing either end of the dual-end earplug." *Id.*

One component of Dr. Eddins' report, titled "Imperceptible Loosening: 3-Minute Jog," studied Plaintiffs' "concerns that the CAEv2 is subject to imperceptible loosening." *Id.* at 43.  For one experiment, "[s]ubjects were fit with earplugs … and asked to jog in place for [three] minutes while wearing the earplugs and while wearing a backpack that weighed 30 pounds" while "[m]easurements of insertion loss were made before and after the activity." *Id.* at 43–44.  The report explains in detail how Dr. Eddins completed the study using microphone in real ear ("MIRE") testing and refers to both human MIRE ("hMIRE") and model MIRE ("mMIRE") measurements.  *Id.* at 44–46.  Additionally, Dr. Eddins recorded the study "to document any adverse events" to "offer the potential opportunity for visual confirmation of changes in earplug position in the ear for any subjects who exhibited very large changes in insertion loss as a result of the jogging activity." *Id.* at 47.

Dr. Eddins saved the video and hMIRE and mMIRE audio recordings for later use. *Id.* at 46–47.  Indeed, Dr. Eddins used data from the audio recordings to create Figures 19 and 20 of his report.  *Id.* at 48–49.  As Plaintiffs explain, "Figure 19 presents hMIRE recordings pre- and post-

3

jogging activity and the data from all subjects," and "Figure 20 likewise presents hMIRE insertion loss data from individual subjects." ECF No. 1491 at 7. Plaintiffs also say that Dr. Eddins used the video recordings "to grab still shots of test subjects' ears." *Id.* Dr. Eddins' report confirms this—Figure 33 is labeled "[i]mages from the forward perspective for two subjects immediately prior to the [three] minute jogging activity." ECF No. 1479-2 at 66.

Various other experts interviewed the Trial Group A Bellwether Plaintiffs. ECF No. 1479 at 5. The parties agree that the comprehensive case-specific reports disclosed some notes from these interviews.

Defendants now move for an order compelling the production of "facts or data considered by [Plaintiffs' experts] in forming" the opinions they express. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). They say in their motion this includes:

> (1) raw data generated during testing and considered in forming the expert's opinions, such as the audio and video files discussed in Dr. Eddins' report; (2) models and formulas (that are not publicly available and have not been produced) considered in forming the expert's opinions; (3) measurements considered in forming the expert's opinions; (4) non-publicly-available, unproduced documents considered in forming the expert's opinions; and (5) interview notes from factual interviews conducted by Plaintiffs' experts and any forms filled out by, or on behalf of, Plaintiffs with factual information.

4

ECF No. 1479 at 9–10.

Since Defendants filed their motion, Plaintiffs have agreed to allow Defendants to inspect Dr. Eddins' laboratory, advised Defendants that some of their experts do not possess interview or visit notes, and supplemented case-specific reports to include additional information that Defendants argue was not provided but are "facts or data" under Rule 26(a)(2)(B)(ii).  ECF No. 1491 at 3; *see also* ECF No. 1510 at 1 ("[O]ver the last two weeks, Plaintiffs produced 16 amended expert reports.  At least eight included new interview notes, and two included new numerical data.").  This includes "all extant interview notes[.]"  ECF No. 1491 at 12–13.  Moreover, Dr. Eddins "has agreed to produce spreadsheets of every graphic data point collected form the hMIRE probe microphone[,]" as well as the mMIRE recordings.  ECF No. 1491 at 7.  Plaintiffs argue they have complied with the Rule 26 disclosure requirements for all of their experts and Defendants' motion should be denied where it fails "to review [Plaintiffs' remaining] reports or specify any alleged deficiencies."  *Id.* at 13.  As to Dr. Eddins, Plaintiffs assert that he did not consider in formulating his opinions the audio and video recordings Defendants seek, his report includes his models, formulas and measurements (or this information has

5

otherwise been disclosed), and Dr. Eddins did not consider any non-publicly-available, unproduced documents or forms.

This leaves Defendants' reply memorandum, in which the remaining issues are the disclosure of Plaintiffs' experts' interview notes, ECF No. 1510 at 1–20, and Dr. Eddins' audio and video recordings, *id.* at 2–4.  Yet, Defendants point tersely to other expert "consideration materials" they contend Plaintiffs must produce: "(1) Berkley 'SPICE simulation files' used to obtain the models in Figures 8-11 of the Armstrong report; (2) models of acoustic resistance measurements referenced in Figures 15-22 of the Armstrong report; or (3) a 'Consultation with Dr. Bielefeld, Audiologist; September 4, 2020' listed in Elizabeth Davis' reliance materials list[.]"  *Id.* at 2.

## II.  LEGAL STANDARD

A party's expert disclosure "must contain … the facts or data considered by the [expert] in forming" the expert's opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  The linchpin of this rule is the term "considered," which has been defined "broadly to include materials that an expert reviews, reflects upon, reads, and/or uses."  *Dyson Tech. Ltd. v. Maytag Corp.*, 241 F.R.D. 247, 251 (D. Del. 2007); *see also Friebel v. Paradise Shorts of Bay Cty., LLC*, No. 5:10-cv-120-RS-EMT, 2011 WL 2420230, at *1 (N.D. Fla. June

13, 2011) ("facts or data" is "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients"); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005) ("information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected").

"Although an expert's representation as to whether or not he considered a document is not controlling, his testimony that he did not receive, read, review, or author a document will negate discovery absent evidence to the contrary." *Euclid Chem. Co. v. Vector Corrosion Tech., Inc.*, No. 1:05-cv-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007). Any ambiguities as to what materials were considered should be resolved in favor of discovery. *Id.*; *see also Emps. Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008).

### III.   DISCUSSION

Defendants' motion to compel raises only a few discrete, straightforward discovery issues concerning the Trial Group A Bellwether Plaintiffs' expert disclosures. The Court will address each in turn.

7

First, notwithstanding Defendants' request, the Court will not enter a blanket order requiring "Plaintiffs to disclose all facts or data considered by their experts in forming their expert opinions."  ECF No. 1479 at 10.  Rule 26(a)(2)(B)(ii) is self-executing, and Plaintiffs say they have, in good faith, disclosed all information they and their experts believe would fall within this rule.  Accordingly, such an order has no practical purpose.

More pointedly, it is Defendants' burden on a motion to compel to "frame the dispute clearly" and "set out the reasons why the discovery should be compelled."  N.D. Fla. Loc. R. 26.1(D).  Although they have done that for Dr. Eddins' expert report, the Court cannot extrapolate from a single expert report to infer a widespread deficiency in Plaintiffs' entire expert disclosures.  Therefore, other than as to Dr. Eddins (whose report is addressed below), Defendants' motion is due to be denied because they have made no attempt to narrowly tailor their request by specifically explaining or identifying what requested data or documents cited or referenced in Plaintiff's expert reports have yet to be produced."  *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2008 WL 5262707, at *3 (S.D. Fla. Dec. 17, 2008).[2]

---

[2] The Court will not address Defendants' passing reference in their reply memorandum to three other purported deficiencies in Plaintiffs' expert disclosures because they did not raise these issues in their initial motion to compel.  *See Tafel v. Lion Antique Invs. &*

8

Second, Defendants' motion to compel the additional disclosure of Plaintiffs' experts' interview notes is due to be denied as moot. Plaintiffs say they "disclosed all extant interview notes" initially or with amended reports, ECF No. 1491 at 12, and Defendants do not cite any evidence to the contrary in their reply memorandum, ECF No. 1510 at 1–2. Therefore, this discovery dispute is moot. *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 604 (N.D. Fla. Jan. 30, 2019); *S.E.C. v. Huff*, No. 08-60315-CIV, 2010 WL 228000, at *2 (S.D. Fla. Jan. 13, 2010).

Finally, as to Dr. Eddins, Defendants' motion to compel is due to be granted only to the extent he must disclose certain audio and video recordings. As Plaintiffs assert in their response, Defendants do not point to any deficiencies in Dr. Eddins' report that fall within the other four categories of "facts or data" suggested by Defendants. ECF No. 1491 at 4–12.[3] However, the Court concludes that Dr. Eddins considered the actual audio and video recordings underlying the graph, figures, and images in his expert report. It is evident that Dr. Eddins generated these

---

*Consulting Servs.*, 459 F. App'x 847, 849 (11th Cir. 2012); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1382 (S.D. Fla. 2012).

[3] It bears mentioning that Dr. Eddins is not required to turn over completed questionnaires if he produces to Defendants the survey responses in summary form. ECF No. 1491 at 11–12.

recordings in connection with the formulation of his opinions, *Synthes Spine Co.*, 232 F.R.D. at 463, because they are the bases for the "raw data" that summarized in his report—whether in his graphs and figures, ECF No. 1479-2 at 48–49, or in still images, *id.* at 66—and produced to Defendants in spreadsheet format.  *Avaya, Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2016 WL 223696, at *4 (D.N.J. Jan. 19, 2016).  This production is necessary to give Defendants "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses[.]"  Fed. R. Civ. P. 26 advisory committee's note.[4]

### IV.   CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Compel Plaintiffs to Produce All Facts or Data Considered by Plaintiffs' Experts, ECF No. 1479, is **GRANTED IN PART and DENIED IN PART**.  Plaintiffs **must** produce to Defendants the audio and video recordings considered by Dr. Eddins in formulating the opinions stated in his expert report.

**DONE AND ORDERED** this 5th day of November 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[4] Any disclosure of a test subject's protected health information, 45 C.F.R. § 160.103, must be subject to a protective order.