## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| Lloyd Baker Case No. 7:20-cv-00039 | **CONFIDENTIAL – FILED UNDER SEAL** |
| Luke Estes Case No. 7:20-cv-00317 | |
| Lewis Keefer Case No. 7:20-cv-00104 | |
| Dustin McCombs Case No. 7:20-cv-00094 | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO 3M'S MOTION TO COMPEL THE RULE 35 EXAMINATION OF BELLWETHER TRIAL GROUP A PLAINTIFFS LLOYD BAKER, LUKE ESTES, LEWIS KEEFER, AND DUSTIN MCCOMBS

Plaintiffs Lloyd Baker, Luke Estes, Lewis Keefer, and Dustin McCombs (collectively, "Plaintiffs") hereby file their Response in Opposition to 3M's Motion to Compel the Rule 35 Examination of Bellwether Trial Group A Plaintiffs Lloyd Baker, Luke Estes, Lewis Keefer, and Dustin McCombs by Vocational Expert Dr. Michael Shahnasarian. As explained below, 3M's motion must be denied in its entirety.

## INTRODUCTION

3M's motion to compel vocational examinations is the latest in a series of attempts by 3M to procure discovery it neglected to obtain prior to the close of fact discovery on October 9, 2020. 3M's motion is both untimely and baseless.

3M has been on notice of Plaintiffs' loss of income and loss of earning capacity claims since the filing of the Master Long-Form Complaint on September 20, 2019. This was then reaffirmed with the Plaintiffs' Rule 26 disclosures which also made these claims clear, and provided, to the best of their ability at the time, a quantification of those damages. Following these disclosures, 3M's counsel conducted fulsome depositions during which questions were or could have been asked about the claims made by each of the Plaintiffs. All of this was known by 3M when the parties negotiated the stipulation for DMEs for the bellwether plaintiffs, in which Plaintiffs agreed to allow these DME's to be conducted outside of the Group A discovery deadline. Nonetheless, 3M sat on its hands until *30 days* after the close of Group A fact discovery, *one business day* before 3M's expert disclosures and reports were due, and *two weeks* before the deadline for Plaintiffs' Group A rebuttal reports before moving to compel vocational examinations.[1] 3M's motion fails for this reason alone.

3M has also failed to demonstrate "good cause" for allowing the vocational

---

[1] *See* Pretrial Order No. 53, ECF No. 1404.

examinations under Rule 35. FED. R. CIV. P. 35(a). Conflating Rule 35's "in controversy" and "good cause" requirements, 3M summarily states that good cause exists because Plaintiffs' expert, Dr. Davis, interviewed Plaintiffs. Defs.' Mot. at 1–2, 4–5. Good cause does not exist because a wealth of information obtained through discovery remains available to 3M's experts. Indeed, Dr. Shahnasarian's expert report identifies multiple examples of pre-existing discovery that supposedly supports his opinions. Because Dr. Shahnasarian obtained (or could have obtained) the factual information he now seeks through less burdensome discovery, "good cause" does not exist for him to conduct belated Rule 35 examinations of Plaintiffs.

## BACKGROUND

Plaintiffs put 3M on notice that they were seeking "loss of earnings and loss of earning capacity" on September 20, 2019—**over a year ago**—in Plaintiffs' Master Long-Form Complaint.[2] The parties then engaged in an exhaustive discovery process, through which Plaintiffs provided 3M with ample information about their claims and damages related to the Combat Arms Earplugs version 2 ("CAEv2").

Plaintiffs and 3M jointly negotiated the Bellwether Selection Sheet, which was timely completed by each Bellwether Plaintiff. Within the Bellwether Selection Sheet, due in February 2020, Plaintiffs answered a variety of questions about their claims, including whether they were claiming or expected to claim that they "lost

---

[2] *See* ECF No. 704, at 89.

earnings or suffered an impairment of [their] earning capacity as a result of [their] Injury."[3] The Bellwether Selection Sheet also requested Plaintiffs' "average annual income" from 2010 to 2020.[4]

On March 12, 2020, 3M served initial written discovery on Group A Plaintiffs, which included interrogatories addressing Plaintiffs' lost wages and loss of earning capacity claims.[5] Plaintiffs timely objected to and later fully answered these interrogatories concerning their lost wage and loss of earning capacity claims. Then, this Court granted 3M's motion for each individual bellwether plaintiff to provide fulsome Rule 26 disclosures, and the plaintiffs complied.

Throughout the written discovery process, 3M aggressively sought information about Plaintiffs' mental health and educational backgrounds. For example, 3M sought education authorizations unlimited in time or scope from Plaintiffs. 3M justified the requests by arguing that "[e]ducational records may . . . identify certain educational milestones that the Bellwether Plaintiffs may or may not have achieved, which is relevant to their claims for loss of income and earning capacity."[6] In other words, 3M sought to show that Bellwether Plaintiffs' past

---

[3] *See, e.g.*, Ex. A, Bellwether Selection Sheet Form, at 14.

[4] *Id.*

[5] *See* Ex. B, Def. 3M's First Interrogatories to Lloyd Eugene Baker, at 15–16; Ex. C, Def. 3M's First Interrogatories to Luke Estes, at 15–16; Ex. D, Def. 3M's First Interrogatories to Lewis Keefer, at 15–16; and Ex. E, Def. 3M's First Interrogatories to Dustin McCombs, at 15–16. Specifically, see Interrogatories Nos. 52, 53, 55, 56, 57.

[6] *See* Ex. F, Defs.' Letter Brief, March 20, 2020, at 3.

scholastic performance could preclude significant professional achievements. The Court rejected 3M's argument, stating that "[t]he Bellwether Plaintiffs' educational records from prior to their military service are not relevant to their damages claims."[7]

The Court also rejected 3M's repeated attempts to discover privileged mental health records in cases where Plaintiffs had not placed their mental health in controversy.[8] According to the Court:

> Plaintiffs' request for damages to compensate mental anguish, distress, and loss of enjoyment of life are "garden variety" claims that do not place in controversy Plaintiffs' mental health records and thus open the door to discovery on this sensitive area.[9]

In addition to extensive written discovery, 3M deposed Plaintiffs about a range of issues, including vocational issues, and observed their demeanor and credibility over a 7-hour period. 3M was free to meet with Dr. Shahnasarian prior to these videotaped depositions. 3M also deposed several of the Plaintiffs' employers, providing yet another opportunity to discover Plaintiffs' vocational abilities. Finally, Plaintiffs produced a substantial volume of documents, including *Touhy* records from the VA and DOD, and even agreed to a Defense Medical Exam ("DME") Protocol despite concerns about the impending fact discovery deadline.[10] 3M never mentioned the possibility of *vocational* examinations during these painstaking

---

[7] *See* Order, ECF No. 1065 at 13.
[8] *Id*.
[9] *Id*.
[10] *See* Pretrial Order No. 43, Amended Discovery & Trial Schedule for Trial Group A Cases, ECF No. 1204, at 2.

negotiations. In fact, 3M remained silent about vocational examinations until ***three weeks after*** the fact discovery deadline.[11]

On November 9, 2020, ***one business day*** after 3M filed this motion, 3M served Dr. Shahnasarian's expert reports.[12] According to these reports, Dr. Shahnasarian considered a wealth of information that Plaintiffs provided to 3M over the course of the discovery process: interrogatory answers, census forms, Bellwether Selection Sheets, deposition testimony, medical and military records, reports of Plaintiffs' experts, employment records, disability records, Social Security Administration records, W-2 statements, and federal and state income tax returns.[13]

## LEGAL STANDARD

"An order for the physical or mental examination of a party is not granted as of right." 8B C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2234.1 (3d ed. Oct. 2020) (WRIGHT & MILLER). Rather, "[t]he Federal Rules of Civil Procedure authorize the physical or mental examination of a party only in limited circumstances." *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 208 (5th Cir. 1990).

Rule 35 allows a court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably

---

[11] *See* Ex. G, E-mail from Barry Fields, Oct. 28, 2020.
[12] *See* Ex. H, Expert Report of Michael Shahnasarian, Ph.D. (Baker), at 1-2; Ex. I, Expert Report of Michael Shahnasarian, Ph.D. (Estes), at 1-2; Ex. J, Expert Report of Michael Shahnasarian, Ph.D. (Keefer), at 1-2; Ex. K, Expert Report of Michael Shahnasarian, Ph.D. (McCombs), at 1-2.
[13] *Id.*

licensed or certified examiner." FED. R. CIV. P. 35(a)(1); *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 614 (N.D. Fla. 2016); *Rellas v. Lee Cty. Port Auth.*, 2018 WL 3361885, at *2 (M.D. Fla. July 10, 2018). "The party seeking to compel such an examination must show that there is 'good cause' why its request should be granted." *Winstead*, 315 F.R.D. at 614. "Good cause requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere."[14] *Jackson v. U.S. Kids Golf, LLC*, 2008 WL 2078777, at *1 (E.D. Tex. May 15, 2008); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).

The party seeking an examination must show that the examinee's condition is in controversy and that good cause exists for the examination. *Schlagenhauf*, 379 U.S. at 118–19. These requirements "are not met by mere conclusory allegations of

---

[14] "The mere fact that the desired materials are relevant is only the beginning of the evaluation, and this court declines to translate mere 'need' into 'good cause.'" *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002). As stated in *Acosta*:

> The specific requirement of good cause [in Rule 35] would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words '. . . good cause . . .,' the Rules indicate that there must be greater showing of need under Rule[ ] 35 than under the other discovery rules.

913 F.2d at 210 & n.9 (quoting *Guilford Nat'l Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962)). Simply stated, the "use of Rule 26 to circumvent the express limitations of Rule 35 would render meaningless the limitations embodied within Rule 35." *Stanislawski v. Upper River Services, Inc.*, 134 F.R.D. 260, 262–63 (D. Minn. Feb. 22, 1991) (collecting cases). Here, Plaintiffs do not concede the relevance of the information sought through 3M's motion. This Court has previously ruled that at least some of this information is irrelevant. *See* Background, *supra*. To the extent that the information sought is relevant, 3M could have acquired this information though less obtrusive means.

the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant." *Brennan v. Thomas*, 780 F. App'x 813, 818-19 (11th Cir. 2019); *accord Schlagenhauf,* 379 U.S. at 118–19. The Court "must conduct a 'discriminating application' of Rule 35 to decide whether the party requesting the mental or physical examination has adequately demonstrated the Rule's 'in controversy' and 'good cause' requirements." *Rellas*, 2018 WL 3361885, at *2 (citing *Schlagenhauf*, 379 U.S. at 118–19); *see also Winstead*, 315 F.R.D. at 614.

Rule 35 also requires the movant to "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2)(A)–(B); *Rellas*, 2018 WL 3361885, at *2. Motions that fail to detail that information violate Rule 35. *See, e.g.*, *Woods v. Century I, L.C.*, 1993 WL 33339, at *1 (D. Kan. Jan. 11, 1993) (denying Rule 35 examination because movant failed to provide details other than the identity of the proposed examiner).

When an examination is ordered, the Court has extensive discretion to determine the "permissible scope" of the examination. WRIGHT & MILLER §§ 2234, 2235; *see, e.g., Mayhew v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1770195, at *1-3 & n.4 (N.D. Fla. May 9, 2011). This includes permissible diagnostic procedures. *See* FED. R. CIV. P. 35(a)(2)(A)–(B). If a party has already conducted a Rule 35 examination, "a stronger showing of necessity [is required] before [the

Court] will order repeated examinations." WRIGHT & MILLER § 2234; *Davis v. Baker Hughes Oilfield Ops, Inc.*, 2007 WL 1558721, at *2 (E.D. La. May 29, 2007).

Motions to compel Rule 35 examinations filed after the discovery cutoff date are untimely. WRIGHT & MILLER § 2234; *Miksis v. Howard*, 106 F.3d 754, 758–59 (7th Cir. 1997) (affirming the denial of defendants' motion for a Rule 35 medical examination as untimely because the motion was filed after the discovery cutoff date but before defendants' expert disclosure deadline); *Shumaker v. West*, 196 F.R.D. 454, 456-57 (S.D.W.V. Sept. 29, 2000) (denying as untimely defendant's motion for a Rule 35 examination filed one week before his expert disclosures were due).

## ARGUMENT

3M predicates its motion to compel on the fact that each Plaintiff has "placed his employment capability at issue and allege[s] a loss of earning capacity because of hearing-related injuries." Defs.' Mot. at 1. On this basis, and because Plaintiffs' vocational rehabilitation expert, Dr. Davis, conducted vocational interviews of each Plaintiff, 3M demands "a reciprocal vocational examination[.]"[15] *Id.* at 1–5. Although Dr. Shahnasarian has now produced his expert reports concerning each Plaintiff, 3M contends it will be prejudiced if the Court does not allow Dr.

---

[15] 3M's proposed examination is not reciprocal in nature. Unlike Dr. Davis, Dr. Shahnasarian seeks "to conduct clinical interviews, observe and assess physical functioning, and perform other [unidentified] noninvasive tests" relating to, *inter alia*, Plaintiffs' "mental health conditions," "psychological history," "intelligence," and "personality[.]" Defs.' Mot. at 6-7, 9, n.2, & n.3.

Shahnasarian to conduct the requested vocational examinations. *Id.* at 6.

3M's arguments are meritless. 3M's untimely motion not only ignores the factual history of this litigation, it also disregards unfavorable precedent. While 3M repeatedly cites one case granting a motion to authorize Dr. Shahnasarian to take a vocational examination, 3M omits at least two other cases that expressly rejected or greatly limited the vocational examination sought by Dr. Shahnasarian. *See, e.g.*, *Rellas*, 2018 WL 3361885, at *2-4; *Mayhew*, 2011 WL 1770195, at *1-3 & n.4.

## I.     3M's Motion Should Be Denied Because It Is Untimely.

Attempting to satisfy the "in controversy" requirement, 3M emphasizes that "Plaintiffs' Long-Form Complaint generally alleges 'loss of earning and loss of earning capacity.'" Defs.' Mot. at 4. Plaintiffs' Long-Form Complaint was filed on September 20, 2019. Thus, to the extent 3M now insists that vocational examinations are necessary to evaluate Plaintiffs' future employability and earning capacity, 3M has been on notice of that purported need for 13 months. Because 3M failed to move for such relief before the close of discovery, its motion is untimely. *See* WRIGHT & MILLER § 2234; *Miksis*, 106 F.3d at 758–59.

## II.    3M's Motion Should Be Denied for Failure to Satisfy Rule 35.

3M's motion also fails to satisfy Rule 35's "good cause" requirement. 3M first collapses the good-cause inquiry by arguing that satisfaction of the "in controversy" requirement automatically establishes good cause for a vocational examination. 3M

then asserts that good cause necessarily exists because Plaintiffs have been interviewed by their own vocational expert.

This Court has previously considered and rejected both arguments. In *Winstead*, the defendant argued that "once the 'in controversy' condition [of Rule 35] has been met, the 'good cause' requirement [of Rule 35] is more or less automatically met[.]" 315 F.R.D. at 616. Magistrate Judge Walker disagreed, stating that "[a]lthough some courts seem to have collapsed the two Rule 35 requirements, they are distinct and implicate different concerns." *Id.* (internal citations omitted). The defendant also argued that it would be unfair to allow the plaintiff's experts to opine about the plaintiff's injuries without allowing its own expert to investigate those injuries. *Id.* Magistrate Judge Walker again disagreed and denied the Rule 35 motion for want of good cause. *Id.*; *see, e.g.*, *Acosta*, 913 F.2d at 209 (rejecting argument that plaintiff's retention of a vocational expert and the issuance of a report by that expert constituted good cause to compel an examination by defendant's vocational expert).

Good cause "requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere." *Jackson*, 2008 WL 2078777, at *1; *see also Schlagenhauf*, 379 U.S. at 118; *Winstead*, 315 F.R.D. at 616 ("One factor that is relevant to the determination of 'good cause' is the possibility of obtaining the desired information by other means."); *Marroni v.*

11

*Matey*, 82 F.R.D. 371, 372 (E.D. Pa. Mar. 27, 1979); *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002) ("courts have held that parties moving to compel vocational examinations under Rule 35 do so without good cause when other and adequate evidence is available for a vocational expert's review.").

In *Winstead*, this Court found that good cause did not exist because the defendant could obtain adequate information to examine the plaintiff's claims through other discovery tools, including depositions of the plaintiff and her experts. *Winstead*, 315 F.R.D. at 616 & n. 4. Likewise, in *Rellas*, the Middle District of Florida rejected a request for Dr. Shahnasarian to conduct a vocational examination of the plaintiff for lack of good cause. The defendant had "ample opportunity to seek information about the [p]laintiff's skills, abilities, experience and job search" through other discovery. *Rellas*, 2018 WL 3361885, at *4. Dr. Shahnasarian could "opine about [p]laintiff's employability and attempts to mitigate damages without examining her." *Id.*

3M's good cause argument is even more tenuous than in those cases. 3M has failed to cite any facts demonstrating the need for the information sought or that it could not have obtained the information it seeks by other means.[16] Instead, 3M

---

[16] 3M has not identified in its motion a mental condition of any Plaintiff that would entitle it to the Rule 35 examination it is seeking. For instance, to the extent 3M seeks to discover Plaintiffs' "mental health concerns," Defs.' Mot. at 9, it has not shown that each Plaintiff's mental health is "in controversy" as required by Rule 35(a)(1). 3M should not be permitted to make an end run around the Court's prior orders prohibiting discovery of mental health records by means of a Rule 35 examination.

simply states that Dr. Shahnasarian's exam would contain two parts. Defs.' Mot. at 9.

Part One is a clinical interview concerning, among other things, Plaintiffs' physical capabilities, work history, education, and training. Defs.' Mot. at 9. Part One is unnecessary because Dr. Shahnasarian can gather the same facts from Plaintiffs' videotaped depositions, Dr. Davis's reports, and the voluminous discovery produced herein.[17] Part Two is the "*potential administration*[18] of various [unidentified] standardized tests [to assess] plaintiff's employment limitations and prospects." Defs.' Motion at 9 (emphasis added). Part Two is beyond the scope of any proper examination and unnecessary.[19] Dr. Davis did not conduct similar psychological, intelligence, or personality testing and—though 3M fails to cite it— this Court has previously *prohibited* Dr. Shahnasarian from conducting this type of testing. *See Mayhew*, 2011 WL 1770195, at *1-3 & n.4.[20] Simply stated, 3M has

---

[17] 3M falsely asserts that this information was not ascertainable during fact discovery. All of the questions Dr. Shahnasarian would pose by interview could have been posed during Plaintiffs' 7-hour depositions or through written discovery. At the very least, 3M could have negotiated it into the parties' stipulated DME protocol, but failed to do so. To the extent 3M contends it is important for Dr. Shahnasarian to observe Plaintiffs firsthand, the videotaped depositions provide that information.

[18] Not even 3M is asserting these Part Two tests are needed or necessary. Defs.' Mot. at 9 & n. 3 ("[Dr. Shahnasarian] *may* also conduct a series of standardized tests[.]") (emphasis added).

[19] 3M's motion fails to identify any mental condition (or any physical condition, for that matter) suffered by Plaintiff Baker, Estes, Keefer, or McCombs that would necessitate psychological, intelligence, or personality testing. *See Mayhew*, 2011 WL 1770195, at *2.

[20] In *Mayhew*, the plaintiff agreed to undergo a vocational assessment by defendant's expert, Dr. Shahnasarian, but asserted that he should not be required to undergo psychological, intelligence, or personality testing as sought by defendant. *Mayhew*, 2011 WL 1770195, at *1. The Court agreed, holding, declaring that "Dr. Shahnasarian's evaluation and interview shall not include any

13

given no justification, much less an adequate one, for the smattering of vague psychological, intelligence, or personality tests it seeks to impose upon Plaintiffs.

Furthermore, 3M has had ample opportunity to obtain the information it now seeks. During discovery, 3M obtained copies of Plaintiffs' medical records, DOD and VA military and medical records, employment and education files, Plaintiffs' electronically stored information and social media as well as other records. 3M also deposed Plaintiffs and their family members, friends, physicians, colleagues, and employers about Plaintiffs' education, training, work history, and injuries. *See Sheehan*, 282 F.R.D. at 429 (denying motion because defendants were not "inhibited in any way from questioning the plaintiff at his deposition about his background, his skills, his education, his efforts to find other employment, the reasons why those efforts were unsuccessful, and any of the other matters specified in the motion"). Given this volume of discovery, Dr. Shahnasarian has more than enough information to analyze Plaintiffs' employment capability.

If 3M was unsatisfied with the volume of information available, it could have moved months ago to compel vocational examinations before the discovery period closed. *See Miksis*, 106 F.3d at 759 ("When [defendants] decided not to move for a

---

form of psychological, intelligence, or personality testing; and the evaluation shall be limited to the same scope as the examination conducted by [plaintiff's vocational expert]." *Id.* at *3. Notably, *Mayhew* also makes clear that a plaintiff's mere assertion of past lost wages, impaired earning capacity, and costs associated with vocational training is not the equivalent of placing one's mental health at issue for purposes of a Rule 35 examination. *See Id.* at *1-3.

medical examination prior to the discovery deadline—which they knew was prior to any required expert disclosures—they also made the decision to remain in ignorance."). Even after the close of fact discovery, 3M could have addressed any legitimate concerns when negotiating the recent DME protocol. Now 3M wants to renege on that agreement by allowing Dr. Shahnasarian to re-depose Plaintiffs for an unlimited duration—without Plaintiffs' counsel present—and to subject Plaintiffs to countless psychological, intelligence, and personality tests. Ultimately, 3M does not seek to "level the playing field," but rather to tilt the playing field in its favor through untimely and prejudicial discovery. Because 3M has failed to demonstrate the need for vocational examinations of Plaintiffs or that it could not have obtained the information it seeks by other means, good cause does not exist to grant 3M's motion. *See Winstead*, 315 F.R.D. at 616 & n. 4; *Rellas*, 2018 WL 3361885, at *2.[21]

Finally, Rule 35 requires that a court order compelling examination of a party "must specify the time, place, manner, conditions, and scope of the examination, as

---

[21] *See also Acosta*, 913 F.2d at 209 (finding that good cause did not exist where defendant received plaintiff's expert report and test results, deposed plaintiff and plaintiff's expert plaintiff, and submitted both written interrogatories and document requests to plaintiff); *accord Stanislawski*, 134 F.R.D. at 262; *Soudelier v. Tug Nan Servs., Inc.*, 116 F.R.D. 429, 430 (E.D. La. 1987); *Storms*, 211 F.R.D. at 298; *Hubbard v. Tyco Integrated Cable Sys., Inc.*, 2013 WL 1558695 at *2 (D.N.H. Apr. 12, 2013; *Sheehan v. City of Markham*, 282 F.R.D. 428, 429 (N.D. Ill. Aug. 7, 2012). In its motion, 3M cites the case of *Monroe v. Cooper/T. Smith Stevedoring Co., Inc.*, 2008 WL 687196 (M.D. La. Mar. 10, 2008). But that case, like nearly all of the cases cited by 3M, is clearly distinguishable. In *Monroe*, the Court made clear there was no way for defendant's expert to adequately scrutinize the conclusions of plaintiff's expert without conducting an independent examination, at least in part, because the *Monroe* plaintiff had not furnished written discovery concerning the issue nor his expert's testing data. That simply is not the case here. Rather, this case is more akin to *Winstead*, *Rellas*, *Acosta*, *Soudelier*, *Storms*, *Hubbard*, and *Sheehan*.

well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2)(A)-(B); *Rellas*, 2018 WL 3361885, at *2. The movant is required to furnish this information in its motion. *Rellas*, 2018 WL 3361885, at *2. Other than the name of its proposed examiner, 3M has failed to provide any such information. 3M's motion therefore fails for this additional reason. *See Woods*, 1993 WL 33339, at *1; *Marroni*, 82 F.R.D. at 372.

## III. If the Court Allows Rule 35 Examinations, It Should Prohibit Dr. Shahnasarian From Exceeding the Scope of the Examinations Conducted by Dr. Davis.

Although 3M requests "a reciprocal vocational examination" to "respond to the vocational rehabilitation opinions being espoused by Dr. Davis[,]" 3M seeks a far more invasive examination of Plaintiffs. Defs.' Mot. at 2. This is improper.

In *Mayhew*, Magistrate Judge Timothy considered a similar motion to compel a Rule 35 vocational examination by Dr. Shahnasarian. 2011 WL 1770195, at *1. There, the defendant sought an order compelling the plaintiff to undergo Dr. Shahnasarian's proposed 10-hour examination[22] involving "an evaluation of Mayhew's 'mental functioning, occupational interests, and personality,' as well as a three-hour (approximate) interview of Mayhew." *Id*. Although the plaintiff did not oppose the examination itself, he argued that Dr. Shahnasarian "should not be required to undergo psychological, intelligence, or personality testing because his

---

[22] 3M does not provide a time estimate for Dr. Shahnasarian's proposed examinations here.

mental condition is not 'in issue,'" as the plaintiff only made "garden variety" claims of mental anguish. *Id.*, at \*1-2. Judge Timothy agreed, reasoning that "the experts retained by [the plaintiff] conducted no psychological testing and formed their opinions largely on objective criteria, such as medical records, past earnings, and costs associated with educational or vocational training." *Id.* at \*2. The court therefore allowed Dr. Shahnasarian to conduct a vocational evaluation but prohibited him from conducting "any form of psychological, intelligence, or personality testing." *Id.* at 3. The court also made clear that "the evaluation shall be limited to the same scope as the examination conducted by [plaintiff's vocational expert]." *Id.*

Here, 3M seeks an order allowing Dr. Shahnasarian to perform an overly-broad examination far exceeding the scope of the vocational assessment performed by Dr. Davis. As stated in her expert reports, Dr. Davis based her opinions upon a vocational assessment of each Plaintiff, research literature, deposition transcripts, VA records, medical records, and consultation with other experts.[23] Dr. Davis' vocational assessment of Plaintiffs included an interview to "obtain relevant ***background information*** with regard to age, education, present employment and status, past employment, earnings, experience, and current work life status" (emphasis added).[24] During her vocational assessment, Dr. Davis ***did not*** (1) perform

---

[23] *See, e.g.*, Ex. L, Expert Report of Dr. Elizabeth Davis (Baker), at 1-2.
[24] *Id.* at 5. The scope of Dr. Davis' vocational assessment is the same for Plaintiffs Estes, Keefer, and McCombs. *See* Ex. M, Expert Report of Dr. Elizabeth Davis (Estes), at 5; Ex. N, Expert Report

a physical examination; (2) conduct psychological, intelligence, or personality testing, or (3) question Plaintiffs about liability issues in the present action.

3M's proposed exam goes well beyond this information. Dr. Shahnasarian would not only "observe firsthand the Plaintiffs' functionality, limitations, personality, communication skills, and other capabilities," he would also conduct "clinical interviews, [to] observe and assess physical functioning" and "noninvasive tests to [] elicit vocationally relevant information[,]" including "a series of standardized tests to assess intelligence, personality[,] and interests[.]" Defs.' Mot. at 6–7. Thus, if this Court permits Dr. Shahnasarian to perform vocational examinations on Plaintiffs, which it should not, the examinations should be strictly limited in scope to the type of "examination" performed by Dr. Davis. *See Mayhew*, 2011 WL 1770195, at *3. Specifically, the Court should prohibit Dr. Shahnasarian from (1) undertaking a physical examination of Plaintiffs, (2) conducting mental health, psychological, intelligence, or personality testing, (3) inquiring into any "mental health conditions" or history of Plaintiffs, or (4) asking any questions relating to liability issues.

## CONCLUSION

For the foregoing reasons, 3M's motion to compel should be denied.

---

of Dr. Elizabeth Davis (Keefer), at 5.; Ex. O, Expert Report of Dr. Elizabeth Davis (McCombs), at 5.

DATED: November 13, 2020

| Attorneys for Plaintiffs | /s/ Bryan F. Aylstock |
|---|---|
| | Bryan F. Aylstock, Lead Counsel<br>Florida State Bar No. 078263<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street, Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>baylstock@awkolaw.com |
| Christopher A. Seeger, Co-Lead Counsel<br>(Admitted Pro Hac Vice)<br>New Jersey State Bar No. 042631990<br>Seeger Weiss LLP<br>55 Challenger Road 6th Floor<br>Ridgefield Park, NJ 07660<br>Tel.: (212) 584-0700<br>cseeger@seegerweiss.com | Shelley V. Hutson, Co-Lead Counsel<br>(Admitted Pro Hac Vice)<br>Texas State Bar No. 00788878<br>Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>shutson@triallawfirm.com |
| Shawn Fox<br>(Admitted Pro Hac Vice)<br>TX State Bar No. 24040926<br>Tracey & Fox Law Form<br>400 Louisiana Street, Suite 1901<br>Houston, TX 77002<br>Tel.: (713) 495-2333<br>sfox@traceylawfirm.com<br>**Counsel for Plaintiff Lloyd Baker** | Sean Tracey<br>(Admitted Pro Hac Vice)<br>TX State Bar No. 20176500<br>Tracey & Fox Law Form<br>400 Louisiana Street, Suite 1901<br>Houston, TX 77002<br>Tel.: (713) 495-2333<br>stracey@traceylawfirm.com<br>**Counsel for Plaintiff Lloyd Baker** |
| Katherine Cornell<br>(TX Bar No. 24082858)<br>Pulaski Kherkher, LLP<br>2925 Richmond Ave., Ste 1725<br>Houston, TX 77098<br>Tel.: (713) 644-4555<br>kcornell@pulaskilawfirm.com<br>**Counsel for Plaintiff Estes** | Troy Bouk<br>FL Bar No. 43384<br>Levin Papantonio Thomas Mitchell Rafferty & Proctor, PA<br>316 S. Baylen St., Suite 400<br>Pensacola, FL 32502<br>Tel.:: (850) 435-7155<br>tbouk@levinlaw.com<br>**Counsel for Plaintiff Lewis Keefer** |

| Taylor C. Bartlett<br>**Heninger Garrison Davis, LLC**<br>2224 First Avenue North<br>Birmingham, AL 35213<br>Tel: (205) 427-6630<br>taylor@hgdlawfirm.com<br>***Counsel for Plaintiff McCombs*** | |

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULE 7.1(F)

I hereby certify that this motion complies with the word limit of Local Rule 7.1(F) and contains 4633 words.

*/s/ Bryan F. Aylstock*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan F. Aylstock*