**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG   )   Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,  )
                                )   Pensacola, Florida
                                )   October 2, 2020
                                )   12:29 p.m.
                                )
                                )
_____)


**LEADERSHIP PHONE CONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-56)

# A P P E A R A N C E S

**JUDGE DAVID R. HERNDON** (ret.)

**FOR THE PLAINTIFFS:**          **BRYAN F. AYLSTOCK, ESQUIRE**
**JENNIFER HOEKSTRA, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida  32502

**DAVID R. BUCHANAN, ESQUIRE**
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660

**SHELLEY HUTSON, ESQUIRE**
Clark Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, Texas  77002

**MICHAEL A. SACCHET, ESQUIRE**
Ciresi Conlin LLP
225 South 6th Street, Suite 4600
Minneapolis, Minnesota  55402

**FOR THE DEFENDANTS:**          **ROBERT C. BROCK, ESQUIRE**
Kirkland & Ellis, LLP
1301 Pennsylvania Avenue NW
Washington, D.C.  20004

**MICHELLE SIX, ESQUIRE**
Kirkland & Ellis, LLP
601 Lexington Avenue
New York, New York 10022

**MARK J. NOMELLINI, ESQUIRE**          **KIMBERLY BRANSCOME, ESQUIRE**
**BARRY FIELDS, ESQUIRE**             **JAY L. BHIMANI, ESQUIRE**
Kirkland & Ellis, LLP                 Dechert, LLP
300 N Lasalle                         633 W 5th Street, Suite 4900
Chicago, Illinois  60654              Los Angeles, California  90071

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | **JUDGE RODGERS:**  Mr. Aylstock, are you on? |
| 3 | **MR. AYLSTOCK:**  Yes, Your Honor, I'm here. |
| 4 | **JUDGE RODGERS:**  Okay, very good. |
| 5 | And Kimberly Branscome and Mike Brock, are you on? |
| 6 | **MS. BRANSCOME:**  I am, Your Honor. |
| 7 | **JUDGE RODGERS:**  Very good.  Thank you. |
| 8 | Mike? |
| 9 | *[No response.]* |
| 10 | Mr. Brock, are you on? |
| 11 | *[No response.]* |
| 12 | All right.  Well, he'll let us know if and when he |
| 13 | joins. |
| 14 | I'm just going to ask, if you speak, just identify |
| 15 | yourself so that the court reporter knows who is talking.  I'm |
| 16 | getting pretty good at recognizing voices, but I don't know if |
| 17 | she will, so please identify yourself.  I'm not going to take a |
| 18 | rollcall here; that would take too much time. |
| 19 | But I do want to ask if Judge Jones is on. |
| 20 | **JUDGE JONES:**  Yes, I am. |
| 21 | **JUDGE RODGERS:**  Good.  Thanks. |
| 22 | And is Judge Herndon on? |
| 23 | **JUDGE HERNDON:**  I am. |
| 24 | **JUDGE RODGERS:**  Very good. |
| 25 | Well, I hope everyone is having a nice Friday.  Let |

1    me, before we jump into the agenda -- and I know there's been a

2    few modifications to the agenda, which I appreciate, because

3    that means you all have resolved some things.

4             I wanted to let everyone know that I am able to attend

5    the CMC next Friday -- no, two weeks, the 16th, so I am able to

6    attend that hearing.  My trial has been continued that week.

7             Let me address the agenda, then.  The first item the

8    parties have resolved.  I, again, appreciate that, so we don't

9    need to address that, I don't believe.  I've marked it off the

10   agenda.

11            As to the second item, broadly, government discovery

12   update, "a." refers to the DoD production for the 1%.  This is

13   a Plaintiffs agenda item.

14            Bryan, I don't know if Ms. Hoekstra is going to

15   address this or someone else or you; but I'm all ears, if you

16   want to start.

17       **MR. AYLSTOCK:**  We were going to designate Jen to do

18   that, although there's not a whole lot to report.

19            But, Jen, are you on?

20       **MS. HOEKSTRA:**  I am on.

21       **JUDGE RODGERS:**  I saw an email from Judge Herndon

22   addressing this.  I don't know if you were copied on that or

23   not.  It sounds like it's good news as far as the bellwethers

24   and maybe not such good news for the 1%.  But yet maybe -- I

25   say that and then, you know, I qualify it by saying I

1    understand maybe this work has been assigned to a new office,

2    so maybe there will be more movement.

3         **MR. AYLSTOCK:**  Yeah, I think that's right, Judge, they

4    absolutely did say that they were working on it and it is in

5    process.  They couldn't really give us much of a timeline

6    beyond that, and Judge Herndon asked for clarity.  And luckily

7    we have these calls every week, so it certainly keeps the fires

8    burning.

9         **MS. HOEKSTRA:**  The other good news, Your Honor, is

10   that they did agree that any production would be on a rolling

11   basis.  So the holdup is not that they're waiting until they

12   have information on every one to start to give us information.

13        **JUDGE RODGERS:**  That is good news, very good.  All

14   right.  Well, I know you all will continue to keep us apprised

15   of that progress with the 1%.  I'm certainly anxious to see

16   that production come in.

17        All right.  Defendants, do you have anything you'd

18   like to add?

19        **MS. BRANSCOME:**  We do not, Your Honor.

20        **JUDGE RODGERS:**  Okay.  Thank you.  The next item has

21   been removed.  And so then turning to the Item C, subpoenas to

22   government and government personnel.

23        Is this you, Kim, or your team?

24        **MS. BRANSCOME:**  It is, Your Honor.  So we are

25   continuing, obviously, to try to work with the Government on

1    identifying the individuals for depositions.  We -- as of the

2    moment, there was one deposition that went forward -- I believe

3    Your Honor is aware of that -- by agreement.  That was Taurin

4    Mosby in the *Keefer* case.

5         Otherwise, I don't believe any other current

6    government employee has been authorized to sit for deposition

7    that is case-specific.

8         And so, that sort of dovetails into the next agenda

9    item, which is the motions to quash and motions to transfer.

10        One issue did come up that I just want to apprise Your

11   Honor of.  There's no action item at the immediate time.  But

12   the night before we were about to take the deposition of,

13   actually, a former government employee, Norvis Haygood, we were

14   informed by the Government that they had provided us with

15   erroneous information about the time that Dr. Haygood had

16   actually served as a hearing conservation program manager; and

17   that, in fact, Dr. Haygood had left Fort Benning before the

18   plaintiff, Lloyd Baker, had ever arrived, and so, therefore his

19   deposition, obviously, wouldn't be helpful in the *Baker* case.

20        They asked us to pull down the deposition.  We agreed

21   to pull down the deposition.  We, obviously -- I mean, if he's

22   not someone with relevant factual information, that's not a

23   deposition that we're going to take.

24        But we asked the Government for the identity of the

25   individual who should have correctly been identified as the

1   person at Fort Benning during the relevant time frame.  We just

2   heard this morning from the Government that they have

3   identified that individual.  Unfortunately, that individual is

4   a current government employee who is living in Germany.  They

5   have not been able to get in touch with that individual but

6   said they were going to attempt to do that that next week.

7        I think, you know, they have been a little bit more

8   accommodating on this particular individual, given, you know,

9   that it was their mistake and that it took nearly a month to

10  get Dr. Haygood's deposition scheduled.  But it remains to be

11  seen whether they will authorize the replacement hearing

12  conservation program manager for deposition or whether we will

13  even be able to serve him given that he is outside of the

14  country and, to date, none of the institutions, either DOJ,

15  DoD, or the VA, have been willing to accept service on behalf

16  of their employees.

17       And so we are hoping to get the deposition scheduled

18  of the replacement individual.  As soon as we got that

19  individual's name, we issued a *Touhy* request; that's already

20  gone out this morning.  Maj. Kim acknowledged receipt.  But we

21  are not, at this time, able to issue a deposition subpoena

22  because we do not know where Lt. Col. Hannah is located, and he

23  is most likely overseas.

24       So this will be kind of an ongoing process.

25  Obviously, if he is outside of our ability to serve him, we may

1   need to shift gears in the *Baker* case.  But, again, there's no

2   action item at the moment.

3          And we will add the new replacement individual to our

4   deposition chart.  This literally just happened about an hour

5   ago.  But I just wanted to put it on your radar, because this

6   deposition may obviously take a while to get, you know,

7   scheduled and sorted out.

8          **JUDGE RODGERS:**  Okay.  So this deposition is in which

9   case?

10          **MS. BRANSCOME:**  This is in the *Baker* case, Your Honor;

11   it's one of the Plaintiffs' picks.  And it -- you know,

12   hopefully maybe this will all move smoothly and there won't be

13   a problem.

14          And we also asked the Government could they check the

15   rest of their chart to see -- because, if Your Honor will

16   recall, we submitted a *Touhy* request asking them to identify

17   the hearing conservation program managers that would have been

18   applicable for the different bellwether plaintiffs where they

19   were stationed.

20          We asked the Government to confirm that there were no

21   other errors.  The Government said there are no other errors in

22   that chart.  Whether that turns out to be the case I think

23   remains to be seen, but this was the first one that came up.

24          **JUDGE RODGERS:**  All right.  Well, I think it's -- like

25   you said, there's no action item, and it sounds like it's fluid

1    right now; you need to get some more information on this

2    individual.  And this is a Lt. Col. Hannah?

3              **MS. BRANSCOME:**  It is, yes, Your Honor.

4              **JUDGE RODGERS:**  Okay.  Speaking of the hearing

5    conservation program managers, on your deposition chart, in the

6    *McCombs* case, there's an individual, James Davis.  This is No.

7    11 on the chart.  And from the chart, it looks like the *Touhy*

8    request was issued after the discovery deadline.  So this is --

9    I have a question about Mr. Davis.

10             **MS. BRANSCOME:**  Your Honor, I do not know.  I have to

11   say *McCombs* is not one of the cases that I personally manage.

12             Mark, do you happen to have any insight on why Mr.

13   Davis was sort of later in the sequence?

14             **MR. NOMELLINI:**  Yeah.  The only thing I could say on

15   that, Your Honor, is we got the identification of these

16   individuals near the end of August; I don't know the exact

17   date.  So that -- you know, the hearing conservation people

18   were among the last people noticed.

19             **JUDGE RODGERS:**  Right.  But, I mean, you had it a

20   month before -- approximately a month before you issued this

21   *Touhy* request.

22             **MR. NOMELLINI:**  Yeah.  I don't know the specifics of

23   that *McCombs* one, Your Honor.  It could be a matter of finding

24   the address.  We can check on that for Your Honor and happy to

25   do that.

1     **JUDGE RODGERS:**  Yeah, this is one I would have

2  expected you to request leave to subpoena this person.  So go

3  ahead and check into it, Mark, and then be prepared to discuss

4  it further with me at the CMC on the 16th.

5     **MR. NOMELLINI:**  Will do, Your Honor.

6     **JUDGE RODGERS:**  Thank you.

7     And also, on Lt. Col. -- I always say RAA-BihN-EHT but

8  it might be RAA-Bih-NEH-TEE.  So, this matter was pending, as

9  you all know, in the Western District of Texas, and the Motion

10  to Transfer was granted.  But, before the matter was

11  transferred here, the judge in that district denied the Motion

12  to Quash without prejudice to the motion being refiled after

13  transfer.  I have to say, this is a little odd.

14     So now we have this action pending on our docket, this

15  miscellaneous action; but it's just sitting there, and I don't

16  have the Government in front of me such that I can give the

17  Government a deadline for filing their motion to quash.

18     So I guess I want to talk about this.  I'm thinking

19  maybe we need to reissue the subpoena.  I mean, the Motion to

20  Quash was denied, and it's incumbent --

21     **JUDGE JONES:**  Or file a motion to compel.

22     **MS. BRANSCOME:**  That's what I was thinking is the

23  procedural proper way to do it.  I think if we reissued the

24  subpoena, Judge -- we have kind of dealt with this with the

25  Government a little bit -- they almost treat it as the clock

1    starts over again.  So that would be one --

2            **JUDGE RODGERS:**  Okay.  So Judge Jones has the better

3    path or the better way to proceed.  Something, though, needs to

4    kick start this to get this moving; because, otherwise, it's

5    just going to sit.  I mean, there's not a deposition -- the

6    deposition date, I assume that that's passed; it was the 16th

7    of September.

8            So, just go ahead and file a motion to compel, and

9    then I guess that will get things started.

10           **MS. BRANSCOME:**  Will do, Your Honor.

11           **MR. NOMELLINI:**  Will do, Your Honor.

12           **JUDGE RODGERS:**  Or restarted.  Thank you.

13           Anything from anybody else on -- oh, I have a

14   question -- I'm sorry, one other thing I have a note to ask

15   about.

16           Have you gotten any work addresses from the

17   Government?

18           **MR. NOMELLINI:**  No, we haven't, Your Honor.  We raised

19   that on the call today.

20           **MR. AYLSTOCK:**  Ms. Snead had indicated that she just

21   received Your Honor's order and was looking into it, so she was

22   unable to give a timetable.

23           **JUDGE RODGERS:**  All right.  Well, let's table this for

24   now.  And if there hasn't been any movement there, please

25   someone be prepared to update me on the 16th as to that.

1        **MR. NOMELLINI:**  Yes, Your Honor.  We'll probably

2   update you sooner than that, in fact, given that we need to get

3   moving and they have a deadline.

4        **JUDGE RODGERS:**  Okay.  Thank you.

5        **MR. NOMELLINI:**  Your Honor, we have at least three

6   motions to transfer having been granted.  And in the *Donaldson*

7   case in the Middle District of Tennessee, the judge indicated

8   that he found 3M's arguments persuasive and asked the

9   Government to file anything further by today.  So that's where

10  we stand.

11       The Motion to Quash in the *Schulman* case, which is now

12  before Judge Jones, I believe is fully briefed.

13       **JUDGE JONES:**  Yes.

14       **JUDGE RODGERS:**  Okay, great.

15       **MR. AYLSTOCK:**  I was just going to update the Court on

16  the TCA.  That motion to transfer is there.  We actually used

17  the same arguments that 3M made to get it before Your Honor.

18  But that motion is opposed, so no -- the hearing is still

19  coming up but no movement there.

20       It did get on the JPML panel, so it will be heard at

21  the next -- I don't know if they have accepted oral argument or

22  not, but that was also opposed through the panel.

23       **JUDGE RODGERS:**  Right.  So what's happening in the

24  District of Arizona?

25       **MR. AYLSTOCK:**  So my understanding is the Court has

1    set -- and you can help me, Mark, if I'm misstating it -- has

2    set a hearing on the PSC's Motion to Intervene as well as the

3    Motion to Transfer.

4              **JUDGE RODGERS:**  Okay.

5              **JUDGE JONES:**  I had a question for Bryan generally on

6    these motions to quash but in particular on *Schulman*.

7              As Mr. Nomellini pointed out, that's been transferred,

8    it's fully briefed.  I'm actually taking a look at it.  But

9    under the protocol I set out -- because at the last CMC or

10   leadership call, Mr. Aylstock, you had said that the Plaintiffs

11   might want to chime in on the motions to quash.  And I forget

12   how many days I gave but -- for example, on *Schulman*, I think

13   the deadline was yesterday -- yesterday or Wednesday -- and I

14   did not see that you all had filed a response.

15             And I guess my question is -- because I wait for that

16   amount of time -- were you all intending to file something

17   letting the Court know you have nothing to add, or simply

18   silence was your position on it?

19             **MR. AYLSTOCK:**  Yes, Your Honor, for the *Schulman* case,

20   we do not have a -- we're not taking a position.  And I

21   apologize for not sending an email or letting you know if --

22   however the Court would like us to do it.  And in fact, it may

23   make sense for -- if that were to happen, to do it before the

24   two days, if we already know our position.

25             We wanted to see the Defendants' position, what they

 1    said, and make that decision, so we decided that we were not

 2    going to take a position on that.

 3            **JUDGE JONES:**  Why don't you -- because this helps me

 4    out because I waited the two days and we're working on *Schulman*

 5    right now -- is, if you're not going to take a position, simply

 6    file some benign document that the Plaintiffs do not take a

 7    position or something like that so I'll know not to wait for a

 8    brief.

 9            **MR. AYLSTOCK:**  Yes, Your Honor.

10            **MR. NOMELLINI:**  Your Honor, just quickly on the

11    motions to compel on documents.  We, actually, now have two

12    motions.  One is a CDC document motion, the other is a DoD

13    document motion.

14            On the CDC, we have, I think, some good news to

15    report.  There is a new DOJ attorney involved by the name of

16    Gary Feldon.  And we have an understanding -- we're working on

17    a stipulation now that I think will resolve the CDC Motion to

18    Compel.  And so we were trying to get that on file, if not

19    today, then on Monday.  The Government has indicated it might

20    need to clear it with various people, so that is that.

21            We just filed the DoD Motion to Compel documents.

22    Judge Herndon is aware, the Government is going to take the

23    position that it's premature, and they haven't served all the,

24    you know, objections that they need to serve under their rules,

25    et cetera.  We will oppose that.  And among our positions will

1   be that, you know, this needs to get resolved because there's

2   been months and months of delays.

3          We'll try to do the same thing on the DoD Motion to

4   Compel, to, you know, work something out on that as well.  I

5   don't know if this is some kind of change in attitude or

6   position by the Government, or maybe it's just a particular CDC

7   lawyer, but we will see.

8          **JUDGE RODGERS:**  Mark, what is the DoD motion directed

9   to?

10         **MR. NOMELLINI:**  So, it's four categories, Your Honor.

11  It's noise and ototoxin exposure data, distribution data, three

12  documents related to the Annual Military Audiology Association

13  Short Course Meetings from 1999 to 2005, and then testing data

14  on other hearing protection devices distributed to Group A

15  bellwether plaintiffs, all of which we had served earlier *Touhy*

16  requests on.

17         **JUDGE RODGERS:**  Early on, yes.

18         **MR. NOMELLINI:**  Yes.

19         **JUDGE RODGERS:**  Some of this was definitely early on.

20  Okay, very good.

21         **MR. AYLSTOCK:**  Your Honor, before we leave this

22  section II, there was a late-breaking issue involving a Motion

23  to Quash under 2d.  It involves a subpoena that we received on

24  Tuesday.  We were unaware that it was coming.

25         It was -- the date was set for actually this Friday,

1   which obviously doesn't work for us regardless, given the

2   expert deadline and the many depositions going on.  We did have

3   a discussion about that with Mr. Nomellini.

4          But beyond the timing of it and the short notice on

5   the deposition, this is a deposition of Kevin Michael.  Kevin

6   Michael runs a lab out of Penn State, one of the few NVLAP labs

7   that's accredited under NVLAP to do REAT testing and so forth.

8          He tested -- he's been known to the parties, actually

9   3M, before this case even started, because there was some

10  testing done in 2010 involving *Moldex* and their battle plug --

11  and that was the whole patent case -- head-to-head testing

12  between the battle plug impulse testing on August 16th that his

13  lab did and the Combat Arms Version 2.  There was additional

14  testing March 28th, 2002, involving Combat Arms and REAT

15  testing that Mr. Michael did.

16         And we actually served a subpoena on him for documents

17  in his lab way back in November.  There was some discussion

18  with regard to his counsel, and he said that -- we were

19  informed there was an MDA issue involving 3M.  But ultimately

20  we got documents from him late last year, I believe it was.

21         So this is a critical piece of information, and we

22  received the documents, again, last year.  And what's

23  concerning, very concerning to us, is, with our expert

24  deadline, that -- thank you, by the way, for moving it and

25  giving us the additional week.  So this deposition was actually

1    noticed before the original expert deadline, but noticed the

2    week of the new expert deadline.

3         So it seems to us, given the obvious importance of

4    this witness -- and it is absolutely not a new witness.  I

5    understand this is technically a third-party witness, and the

6    Government and 3M discovery cutoff, of course, was 9/1.  But

7    either this was sort of an afterthought because we had just

8    received the subpoena without any discussion on dates or even

9    the fact that they were going to do it on Tuesday of this week,

10   or it's just an effort to jam us up on our experts.

11        Because our experts, of course, are going into all of

12   this testing.  They're well aware of the testing that was done

13   at the Michael's lab and will be talking about it, but we don't

14   know what he's going to say about any of that.

15        And obviously, if this was an important issue, it

16   should have been noticed when we got the documents last year,

17   months ago, I don't know, but certainly not on literally the

18   week all of our expert reports are due.

19        And the last thing I want to ask Your Honor is to move

20   an expert deadline again.  I don't want to do that.  But this

21   is just a late-breaking development.  And if 3M intends to move

22   forward with this deposition -- they've said, look, give us

23   another date after the 9th, which of course, is the deadline,

24   and we'll work with you, assuming Your Honor agrees.

25        But this isn't something that we think is appropriate,

1     and will really prejudice our experts.  I understand they can

2     supplement, but they'll be saying things about these very

3     studies, the testing that was done by the Michael's lab.

4           And again, this was known to 3M back in 2010, 2012,

5     certainly at the inception of this case.  And if they had

6     forgotten about it, they certainly remembered it when we

7     produced the documents back this year when we received them

8     pursuant to our subpoena back in November of Kevin Michael.

9           **MR. FIELDS:**  Your Honor, this is Barry Fields.  One,

10    I'm a little confused because at first I thought he said

11    October 2nd, but the deposition is scheduled for October 9th.

12          Second, for background, we have been trying to locate

13    Mr. Michael so that we could serve a subpoena on him and also

14    try to coordinate with him on dates.  And there was a period of

15    time where we were not able to reach out to him.  We have

16    served the subpoena; it is for a deposition on October 9th.

17          I think the other thing is what Mr. Aylstock is saying

18    is that the parties were aware of Dr. Michael.  And that is

19    true.  But it is strange to me that he would suggest that this

20    is such a significant issue that it could have an effect on his

21    experts' opinions and yet the Plaintiffs also didn't attempt to

22    depose this witness earlier.

23          So, it's really a two-edged issue.  I mean, at the end

24    of the day, yes, both parties were aware of Dr. Michael; yes,

25    the parties were aware that he had performed some testing, and

1    we have identified him as a witness that we would like to

2    depose.

3            But, again, if the Plaintiffs believed that he is so

4    significant to their expert opinions, then it seems to me that

5    it was incumbent upon them to identify him as a deponent

6    earlier in the process and try to depose him.

7            **MR. AYLSTOCK:**  May I respond, Your Honor?

8            First of all, they didn't attempt to try to coordinate

9    with us.  I had no idea they were out there talking to him

10   about dates.  The first notice we received of any thought that

11   he might be deposed was when we got the subpoena setting it for

12   the same week, well within the two weeks that normally happens

13   with these subpoenas.  So, common courtesy would have dictated

14   a little bit of a heads-up.

15           So there was no coordination, and it's literally

16   noticed three days before the deposition is supposed to happen,

17   on the expert deadline.

18           We have the written reports of Kevin Michael and his

19   lab.  That's what we have all had.  We also know, as lawyers --

20   and I think you've seen it as recently as *Abilify* -- that when

21   authors of those studies get deposed, stuff can become

22   extremely relevant to an expert report.  That's why they're

23   deposing them, I suppose, because they would like to get

24   information beyond the written record.  Both sides have had the

25   written record, so we were proceeding on the written record

1     just like we're entitled to, just like they were entitled to.

2            And again, to do it on the very week of the expert

3     deadline?  It's either an afterthought or you're jamming us on

4     our experts.  And I just don't think it's appropriate.  It

5     certainly wasn't done in coordination with the Plaintiffs.  And

6     I do recall Your Honor telling 3M, *Look, before you notice a*

7     *date, let's get on the same page with the other side.*

8            So, we can't do it on Friday.  It's unfair to do it on

9     Friday, regardless of whether we could do it, because that's

10    the very day our expert reports are due.

11           **JUDGE RODGERS:**  Okay.  So my first thought was -- I

12    mean, I'm thinking back to -- maybe it was our last leadership

13    call where we had the discussion about the need for the

14    calendar.  I don't know if it was the last leadership call, but

15    it wasn't that long ago, and I was very clear in what I said to

16    everyone about the need to coordinate.

17           And that was an issue -- I don't remember the

18    deponent's name, but the Defendants didn't coordinate in any

19    way with the Plaintiffs, and they just sent out a notice for a

20    deposition with about two days' advanced notice, I think.

21           And I thought I made myself clear, so this does come

22    as some surprise to me, the way this has come about.

23           **MR. FIELDS:**  Your Honor -- I'm sorry, Your Honor.

24           **JUDGE RODGERS:**  No, go ahead.  I'd like to hear your

25    response to that.

1       **MR. FIELDS:**  Your Honor, we -- you know, once we were

2   able to locate Dr. Michael --

3       **JUDGE RODGERS:**  Mr. Fields, let me ask you -- because

4   I'm probably going to have you or one of the lawyers on your

5   team file something and represent to the Court exactly the

6   efforts that you all have made to contact this Dr. Michael, and

7   I want to know dates when you first made those efforts and what

8   the results of those efforts were and why they weren't

9   fruitful, because it just to me seems like it is very last

10  minute.  And I'm not suggesting motives here, but it seems very

11  last minute, and it does seem unfair to the Plaintiffs.

12      **MR. AYLSTOCK:**  It's also important for Your Honor to

13  know that we had located Dr. Michael; we served him.  They have

14  the service information from the subpoena that we served.  And

15  he's at Penn State.  It's not some secret where he is.  He runs

16  one of the few NVLAP labs in the country, and they test

17  earplugs for all sorts of manufacturers, including 3M, before

18  they had --

19      **MR. FIELDS:**  -- *(inaudible)* -- speak before Mr.

20  Aylstock interrupted me --

21      **JUDGE RODGERS:**  Mr. Fields, what?

22      **MR. FIELDS:**  Yes.  So we did attempt to coordinate

23  with the Plaintiffs.  The issue was -- yes, we do know where

24  Dr. Michael is located.  The issue is, of course, with

25  COVID-19, trying to find someone who is actually at a lab is

1    much more challenging.

2           Secondly, we did try to coordinate with the Plaintiffs

3    on dates and we followed up on the phone.  And so it's set --

4    it's not set for today; it was set for next week.  So we have

5    tried to coordinate.  But again, one of the issues that we have

6    seen is trying to coordinate with the witness, trying to

7    coordinate with Plaintiffs, and we have been trying to do that.

8           **JUDGE RODGERS:**  Mr. Fields, when did you make contact

9    with this witness, with Dr. Michael?

10          **MR. FIELDS:**  We finally were able to -- I think Mr.

11   Nomellini can chime in, but we were finally able to talk with

12   him in real time a day or two before we tried to reach out to

13   Plaintiffs to coordinate, so that would have been earlier this

14   week.

15          **JUDGE RODGERS:**  All right.  I appreciate that, but

16   it's difficult for me to do this over the telephone as we are.

17   So what I'm going to ask you to do is to provide a timeline to

18   me, but I need it quickly.  So I suppose -- today is Friday, we

19   have the weekend, but I need it by Monday.

20          And then, Plaintiffs, you can respond regarding the

21   timeline, but I'll need your response on Tuesday.

22          **MR. AYLSTOCK:**  Yes, Your Honor.

23          **JUDGE RODGERS:**  But I want to know, Mr. Fields, and I

24   want you to document the efforts that you made in terms of who

25   you spoke to and who you called, what efforts you made to get

1    in touch with Dr. Michael to get this scheduled and when that

2    was done.

3              **MR. FIELDS:**  Okay, Your Honor.

4              **JUDGE RODGERS:**  All right.

5              **MR. BROCK:**  Judge, this is Mike Brock.  I just wanted

6    to speak to this also just to say that one of our issues with

7    Dr. Michael is actually establishing foundation on some of the

8    testing that he has done.  And so --

9              **JUDGE RODGERS:**  Mr. Brock, does this not seem late to

10   you?  I mean, discovery ends next week.

11             **MR. BROCK:**  It is at the end of the discovery period.

12   I'm not arguing that point.  The point that I'm making is that

13   I don't anticipate that he will be saying anything different in

14   his deposition than is in the reports.  And it's possible that,

15   if Plaintiffs are saying that the test results are admissible,

16   if relevant, that that might take care of the issue.  That's

17   all I wanted to convey.

18             **JUDGE RODGERS:**  Oh, I see.  So, if the only reason for

19   deposing him is foundation -- is that what -- in terms of the

20   testing that he's done, is that what I'm hearing?

21             **MR. BROCK:**  That's the primary reason.  I don't know

22   -- Barry has been working this up, but I just wanted to convey

23   that that is one of the objectives of the deposition and one of

24   the primary objectives.

25             **JUDGE RODGERS:**  Well, I mean --

1          **MR. AYLSTOCK:**  This is the first I've heard of that,

2     Judge, but --

3          **JUDGE RODGERS:**  Well, I was going to say that might

4     change my view of whether this is fair or unfair to the

5     Plaintiffs.  So I think you all on 3M's side, you need to

6     discuss that, and then you need to include that in what you

7     submit to me as far as the purpose of this deposition.

8          **MR. AYLSTOCK:**  Well, and I'm happy, Your Honor, to

9     discuss a stipulation with Mr. Brock.  We have been very

10    accommodating on stipulations to obviate the need for a

11    deposition.  But the timing of this -- if that's all it is, we

12    will certainly consider it.  If it's beyond that, the timing of

13    this within the two weeks of the presumptive reasonableness of

14    most deposition notices, it would be highly prejudicial.

15         **JUDGE RODGERS:**  Well, the deposition is set the day

16    your expert report is due.

17         **MR. AYLSTOCK:**  Yes, Your Honor.

18         **JUDGE RODGERS:**  And I'm not inclined -- and this

19    shouldn't be a surprise to either side, but I'm not going to

20    move that date again.

21         **MR. AYLSTOCK:**  And I would not want to be asking you

22    to, Your Honor.

23         **JUDGE RODGERS:**  All right.  Well --

24         **MR. BROCK:**  We understand what you want us to do, if

25    we -- *(inaudible)* -- the deposition for other reasons in terms

1    of a timeline, and also I think this is good guidance on the

2    issue of the admissibility of the test reports.

3         **JUDGE RODGERS:**  Okay.  Thank you.  All right.

4    Anything further we need to discuss in Item No. 2?

5         **MR. AYLSTOCK:**  No, Your Honor.

6         **JUDGE RODGERS:**  Defense?

7         **MR. NOMELLINI:**  No, Your Honor.

8         **JUDGE RODGERS:**  Then No. 3, bellwether discovery

9    update.  First up is the Defense medical exams.

10        **MS. BRANSCOME:**  Yes, Your Honor, this is Kim

11   Branscome.  I can report on this.  This is a good news report,

12   from my perspective.  Although, if Ms. Hutson is on the line,

13   she can back me up, or if Paul Pennock is.

14        We had a very good conversation with the Plaintiffs

15   yesterday; Judge Herndon graciously joined us.  We walked

16   through sort of each element that would be involved in, you

17   know, what will ultimately be a stipulation in place of a Rule

18   35 Motion.

19        We have provided to Plaintiffs the list of the tests

20   that we would like to conduct as part of a medical examination.

21   We have gone over with them the length of time that would be

22   involved.  These are noninvasive, standard tests, although we

23   have flagged that, you know, for each individual plaintiff we

24   may not do all of the tests.  We wanted to give them an

25   overinclusive list.  They said that was helpful.

1          So they have the list now in advance of their experts'

2    reports, which is what they have requested.  There are a few

3    conditions that they have requested that we agreed to.  The one

4    thing that is still being worked out is that, as we

5    discovered -- you know, you may be familiar with this, Your

6    Honor, but in prior litigations where we have had independent

7    medical exams, you know, you can often sort of do them in any

8    kind of facility.  For these particular tests, which are

9    hearing tests, the equipment is not portable.

10         It should have been obvious, but it was news to me

11   when I started talking to our audiologists.  They need sound

12   booths.  You know, these are things that are built in place.

13         There's also some challenges with respect to

14   audiologists crossing state lines and using equipment in a

15   state in which they are not licensed to conduct tests.  So it

16   took us, you know, a little while to sort of find audiologists

17   with facilities that could do these exams in different parts of

18   the country.  We have provided those locations to the

19   Plaintiffs.

20         The good news is, for a few of the plaintiffs it's

21   within reasonable driving distance, so that's good.  There are

22   two of the six who, you know, would have to travel a little

23   farther.  So the Plaintiffs are evaluating that, and they will

24   get back to us.

25         We have also reserved essentially the last three weeks

1    of October for when these exams could take place, and the

2    Plaintiffs are looking into their schedules.  We are

3    understanding that we are asking them to go a little farther

4    than their home towns.  We are trying to be as flexible as

5    possible about scheduling.

6            So the Plaintiffs are going to be checking on their

7    end about, you know, the schedule that would work.  But each of

8    the locations, it would be possible for an individual plaintiff

9    to fly in that morning, have the exam conducted, and fly out

10   that evening, if they didn't want to stay overnight someplace.

11   So I think we're in, you know, good shape.  We're going to

12   reconvene early next week.

13           As part of the discussion on the IMEs, we also had a

14   discussion about the way that we could actually, in an

15   organized fashion, get ready for the expert depositions and the

16   sequencing that would take place in terms of scheduling those

17   so that we could work it all out and not end up with sort of

18   chaos in the month of December, which is when most of the

19   depositions we believe will occur, given the new expert report

20   deadlines.

21           So we kind of merged those discussions because it's

22   all related to scheduling.  And we're going to reconvene early

23   next week to nail down both a plan for how we handle expert

24   deposition scheduling and also to hopefully lock in these

25   particular IMEs, and then we will put it all in a stipulation

1   that we can submit to the Court.

2           **JUDGE RODGERS:**  All right.  Thank you for that update.

3           Shelley, if you're on, did you want to add anything?

4       **MS. HUTSON:**  I am on.  I don't really have anything to

5   add, Your Honor.  We did have a productive call yesterday.  We

6   did get today the specific list of testing that they're

7   proposing.

8           And as Ms. Branscome stated, we do need to loop back,

9   obviously, with the attorneys for the bellwether cases, and

10  we're in the process of doing that.  And as she mentioned, we

11  will loop back with her early next week and try to get what is

12  now a tentative framework hopefully finalized.  It is heading

13  in the right direction.

14          **JUDGE RODGERS:**  Yes, that sounds positive.  Thank you

15  both.

16          Okay.  Deadlines for Group C and D for motions to

17  compel.  You were going to, I think, update me or give me a

18  proposal.

19          **MR. AYLSTOCK:**  Jen, are you on?

20      **MS. HOEKSTRA:**  I am on.  I'm not sure if Mr. Gunderson

21  is on.  He and I have been emailing this week about proposed

22  dates.  I think we have an agreement for Group C, and we may

23  need to speak further about Group D.

24          **MR. BROCK:**  Jen and Judge, this is Mike Brock.  I can

25  handle this one for the Defense side.  We do have an agreement

1    about C, and I think we can probably reach an agreement about

2    D.  We just got the Plaintiffs' response to our proposal back

3    just a few minutes before the hearing started today or the

4    session started today.

5            I might ask the Court just a question -- this might be

6    for Judge Jones or, I'm not sure, maybe for you, Judge Rodgers.

7            The proposal that we were making would have the Group

8    D motions to compel and replies completed before Christmas.

9    And the Plaintiffs' proposal is that we would file our motions

10   to compel on December 23rd with the responses from the

11   Plaintiffs being due January 4th.

12           And that's probably okay with us, as long as we can --

13   and I think this is the part where we would like some input

14   from the Court.  We would probably like to have rulings on

15   those motions by the 8th of January in order to be able to

16   finish up -- *(inaudible)* -- anything they're required to do and

17   so that we can get the depositions.

18           I will say we're seeing significantly fewer disputes

19   in the Group D cases than we did in the Group A.  It may be

20   that we won't have that much to fuss about by the time we get

21   to D.  But we would want to make sure we had plenty of time for

22   the Court to consider anything we have filed, and I think we'd

23   probably need rulings probably by the end of that week, by

24   January 8th or so.

25           **JUDGE RODGERS:**  Okay.  So, Judge Jones, I would ask

1    you to --

2            **JUDGE JONES:**  Yeah, I'll chime in on that.  Certainly

3    four days seems like a pretty tight schedule, from the Court's

4    perspective.  These things won't be ripe until the 4th.

5    Although I can take a look at the motion on the 23rd, it's

6    really a holiday week.

7            You know, it would be better, from the Court's

8    perspective, if motion, response, everything was finalized

9    before Christmas.  And then, possibly, over that week before

10   the holidays and the New Year's, I might be able to rule on

11   them.  But worst case scenario, it would be shortly after

12   January.

13           I don't know how many of these motions will be filed.

14   If we're talking about one motion with one or two discrete

15   issues, that's not a big deal.  But if it turns into a whole

16   host of motions and the issues are a little more complicated

17   than you normally have in a motion to compel, that really

18   leaves the Court with not a lot of time.  So I would prefer

19   that everything be completely briefed before Christmas.

20           **MS. HOEKSTRA:**  I think we might be able to come to an

21   agreement on that, Your Honor.  Part of the reason we were

22   pushing the dates the way we were is because of the deadlines

23   for initial disclosures and, you know, the meet-and-confer

24   process for Group D.  We were hoping that all of the discovery,

25   including the initial disclosures, would be submitted before

1    the motions were due.  And the deadlines are very close to

2    overlapping if briefing starts and has to be completed by the

3    21st.

4         **JUDGE JONES:**  Oh, I see.  Well, it still gives the

5    Court more time.  I understand the challenge overlapping with

6    the deadline for initial disclosures.

7         What is the magic of January 8th?  Maybe that sort of

8    went over my head.

9         **MS. HOEKSTRA:**  I believe -- and I don't want to speak

10   for Mr. Brock, but that's about two weeks before the deadline

11   to complete depositions for Group D.  Because that would give

12   us time to move the schedule around, if needed, but still have

13   everything finalized in advance of going into those depos.  We

14   had been aiming for about a two-week window since Group A to

15   have your ruling going into the depositions.

16        **JUDGE JONES:**  Well, what is the forecast for what the

17   landscape is going to look like on the motions to compel in

18   Group D?  I know it's premature, but what kinds of things are

19   you all anticipating, if any?

20        **MS. HOEKSTRA:**  I mean, I think part of what we were

21   also trying to explain is like for Group B we went from -- or

22   Group A we went from six down to three in Group B, and only one

23   actually had the -- *(inaudible)* -- because everything else was

24   resolved during meet-and-confers while the briefs were being

25   filed.

1            We're hopeful that we won't have more than, you know,

2    a handful of issues every time we get a ruling from you in the

3    earlier group designating issues that we're resolving with any

4    discovery for the later groups.

5            **JUDGE JONES:**  Let me just take a quick look at my

6    calendar here.  Okay.  So the 4th is that Monday; the 8th is

7    that Friday.  That really gives the Court one, two --

8    essentially three days on the motion.

9            **JUDGE RODGERS:**  Judge Jones, so what if I move the

10   deadline for the Plaintiffs' depos to the 30th?  Then you could

11   move the time for a ruling as well.

12           **JUDGE JONES:**  Yeah, that would be great.

13           **JUDGE RODGERS:**  What do the parties think about that

14   suggestion of moving the deadline from the 22nd to the 30th,

15   and then that would give Judge Jones a little more breathing

16   room to get a ruling out and still give you two weeks before

17   the close of that discovery period?

18           **MR. BROCK:**  No objection from the Defense.

19           **MS. HOEKSTRA:**  No objection from Plaintiffs.

20           **MR. AYLSTOCK:**  Yeah, no objection from us, Judge.  I

21   think that's a good solution.

22           **JUDGE RODGERS:**  What about 3M?

23           **MR. BROCK:**  Yeah, I think Bryan and I were doing the

24   voiceover; I was saying no objection at the same time he was.

25   Yes, that's fine.

1    **JUDGE JONES:**  Yeah, that would work from my

2    perspective.  So, with a 23rd deadline for the motion, response

3    January 4th, that gives me certainly a little more time to

4    address motions in Group D.

5    **JUDGE RODGERS:**  Yeah, because if you had a ruling out,

6    say, by -- you all were wanting two weeks, is that what it is,

7    Mike?

8    **MR. BROCK:**  That's what we had been, yeah, thinking,

9    that that would allow for any adjustments to the Plaintiffs,

10   you know, in terms of responding to an order, if something was

11   favorable for the Defense, to get that done and get it across

12   the line over to us in time to be ready.

13   **JUDGE RODGERS:**  All right.  Then, Judge Jones, I think

14   you'd have sufficient time to --

15   **JUDGE JONES:**  Oh, yeah, that would be fine.

16   **JUDGE RODGERS:**  Okay.  Well, that's easy to do, and

17   just consider it done.  I'll enter something that makes that

18   clear.

19   By the way, what was the agreement on Group C?

20   **MR. BROCK:**  Oh, yes, Group C is November 6th for

21   motions to compel and November 16th for oppositions.

22   **JUDGE RODGERS:**  Okay.  And that's agreed to, so we

23   just need to enter that.

24   **MS. HOEKSTRA:**  Yes, Your Honor.  And that's with the

25   understanding, hopefully, that Judge Jones would be able to get

1    us a ruling before Thanksgiving, which I think is on the 26th

2    this year.

3              **JUDGE JONES:**  Yeah, that wouldn't be a problem.

4              **JUDGE RODGERS:**  Okay.  Yeah, so that's another ten

5    days, okay.  Well, wait, no, so the -- I'm sorry.  I want to

6    make sure I have this in my head right.  So the deadline to

7    depose the Group C plaintiffs is December 4th; is that right?

8              **MS. HOEKSTRA:**  Yes, Your Honor.

9              **JUDGE RODGERS:**  So, Judge Jones, you feel confident --

10             **JUDGE JONES:**  Yes, if it's fully briefed by the 16th,

11   possibly the end of that week, at the latest, the 23rd.  It

12   will probably be the 20th, but, at the latest, the 23rd.  That

13   gives me a full week.  And then they have one, two weeks,

14   although there is an intervening holiday for them.

15             **JUDGE RODGERS:**  Okay.  Well, we're going to leave it

16   at --

17             **MS. HOEKSTRA:**  Both parties are comfortable with that

18   time frame, given the holiday situation there.  It was more

19   confusing between -- in December, so --

20             **JUDGE RODGERS:**  All right, good.  Well, that's worked

21   out.

22             Is there an update you want to give me on your

23   bellwether discovery calendar, anything more we need to talk

24   about?

25             **MS. BRANSCOME:**  I don't believe so, Your Honor.  We

1    just wanted to make sure that you were able to get access.  I

2    think the last time that we spoke there had been some

3    challenges that I believe Judge Herndon had a couple of times

4    logging in.  So we just wanted to make sure everything was up

5    and running and that it is working to your satisfaction.

6              **JUDGE RODGERS:**  It's great.  Thank you.  I appreciate

7    you checking on that.

8              Item d is in regards to Mr. Rowe's case.  The d(ii)

9    has been resolved; I just got word on that.  So I'd remove that

10   from the agenda.  It is a Motion to Compel on the forensic

11   examination.  Isn't that still before Judge Jones?

12             **MR. AYLSTOCK:**  It is, Your Honor.  The Defendants

13   filed their reply, and so it's fully briefed from the

14   Plaintiffs' perspective.  If the Court desires oral argument,

15   we're happy to do that.

16             **JUDGE JONES:**  Well, let me make a comment on that.

17   The motion was filed, and maybe I was a little too quick with

18   the trigger finger with granting the motion for leave to file a

19   reply without giving you an opportunity to -- the Plaintiffs an

20   opportunity to chime in.  And even if you chimed in, I was

21   probably going to give the Defendants an opportunity to reply,

22   but you have comments to that.

23             Do you want to file today, or let's say by Monday, a

24   sur-reply to the reply?

25             **MR. AYLSTOCK:**  If Your Honor is okay with that, I'm

1   happy to do that; or we could handle any additional issues in

2   an argument, if Your Honor would like that.

3          We had -- there was a third-party witness.  And in his

4   deposition he said one thing about when some documents were

5   supplied to 3M.  And we believed that, based upon his sworn

6   testimony, that it was before, and we have been corrected

7   because we didn't know that.

8          So, in any event, had we known all the facts, we

9   wouldn't have probably opposed the reply anyway.  But if Your

10  Honor is okay with a short sur-reply, we're happy to do that.

11         **JUDGE JONES:**  Yeah, if you're not -- if you don't feel

12  that there's some compelling need to do so, I don't need it.  I

13  know your position.  I just wanted to give you a chance, if you

14  needed to put something on the record, to dispute anything

15  that's in the reply.

16         **MR. AYLSTOCK:**  Yes, I think we would like to do that,

17  Judge; and we could do it by Monday, if that works.

18         **JUDGE JONES:**  Okay, why don't you do that.

19         **MR. AYLSTOCK:**  Thank you, Judge.

20         **JUDGE JONES:**  And then I can go ahead and rule on the

21  motion then.

22         **JUDGE RODGERS:**  Okay, very good.

23         The next item is in the *Vilsmeyer* case and the

24  completeness of the DoD production.  There's a "No Records"

25  statement from the VA.

1              **MS. HOEKSTRA:**  Yes, Your Honor, this is Jennifer.  I'm

2       happy to actually address both e. and f., if that's possible.

3       We brought these up with the Government earlier this morning.

4       They're kind of involved and related to the ongoing discovery

5       for bellwether plaintiffs either through -- *(inaudible)* -- or

6       from the VA and the DoD directly.

7              Mr. Estes had an audiogram done over the summer.  It

8       is not available through his VA portal that he can find.  It

9       was done as part of his -- it was done, we believe, I think,

10      late June or July, that request along with the fact that

11      Mr. Vilsmeyer, who is actually a current DoD employee and has

12      no VA records which we expected but has not had any DoD medical

13      records produced because the DoD has been relying on the VA to

14      produce those records.

15             These issues were brought up with Ms. Snead, and she's

16      going back to the DoD to get additional information on them.

17      We were just raising these generally with Your Honor that there

18      may be supplemental discovery as some of these active duty

19      individuals have ongoing medical care.

20             **JUDGE RODGERS:**  So, beyond what you've identified

21      here, you're expecting more?

22             **MS. HOEKSTRA:**  Not necessarily specifically beyond

23      that.  But we have asked to have a conversation with the DoD

24      and the VA to confirm that, if there was anything additional,

25      what steps would need to be taken to obtain those.

1          The VA authorizations were for one-time use until the

2     request was completed.  The VA might be taking the position

3     that they've completed the request as of the date it was made

4     or as of the date the documents were produced and that there's

5     not an ongoing obligation.  We're continuing to have that

6     discussion with them.

7          **MR. BHIMANI:**  Your Honor, this is Jay Bhimani from

8     Dechert, if I can just add a little more color to that.

9          With respect to VA records, you know, as Your Honor

10    knows, a lot of these plaintiffs are continuing to seek care

11    from VA facilities, and so we have had a conversation both

12    between the parties and with the Government.

13         The Government raised this issue with the

14    authorizations being, you know, according to them, for one-time

15    sort of use.  We have explained to the Government that the

16    authorizations actually say, quote, "after one-time disclosure,

17    if all needs are satisfied."

18         And we had a call with the Government actually just

19    this morning, and the parties, you know, sort of jointly

20    informed the Government that both parties read that language to

21    authorize the production of records, you know, updated records

22    that now exist, as both parties kind of want those records.

23         The Government has indicated that it will go back to

24    the VA to confirm that understanding.  But, you know, we are

25    holding out hope and are optimistic that we can get those

1   records under the existing authorizations.

2          **JUDGE RODGERS:**  And these are for the plaintiffs that

3   have -- obviously, that have VA records, and so Mr. Vilsmeyer

4   would not be one of those plaintiffs?

5          **MS. HOEKSTRA:**  Correct, Your Honor.

6          **MR. FIELDS:**  This is Barry Fields.  On *Vilsmeyer*, I

7   think we're on the same page.  I mean, there's a significant

8   question about the DoD's production of medical records because

9   it appears to us that he is not -- that he is an active duty

10  military member, and so there are no VA records.  But thus far,

11  we don't have the DoD's medical records.  So our hope is, of

12  course, that the DoD will move forward and make sure that we

13  get these -- a complete set of medical records as soon as

14  possible.

15         **JUDGE RODGERS:**  Well, I suspect you will.  I mean,

16  I've had a discussion -- it's been some time -- with Maj. Kim

17  regarding the active duty plaintiffs, and it's always been my

18  understanding that they understood there would be no VA records

19  and that they would produce the DoD medical records.

20         Well, actually, wait a minute.  This is the issue

21  where those active duty plaintiffs had to present the

22  authorization to their base medical office, correct?

23         **MR. FIELDS:**  That's my recollection.

24         **MS. HOEKSTRA:**  Correct.  And our understanding is that

25  they've all done that, Your Honor, and we still do not have DoD

1    records.

2         **JUDGE RODGERS:**  Okay.  So Maj. Kim just needs to run

3    that down.  She needs to find out where those records are, or

4    Jacqui Snead does, somebody needs to.  I mean, I assume it

5    would be Maj. Kim but --

6         Do you know, does Maj. Kim know -- I mean, I'm sure

7    she has access to this, but if you all could give it to her --

8    where each of these individuals is stationed right now?

9         **MS. HOEKSTRA:**  Yes, ma'am.

10        **JUDGE RODGERS:**  What base they're at and where they

11   presented their authorization?

12        **MS. HOEKSTRA:**  We had that conversation with her a few

13   months ago when we were getting the individual authorizations

14   to confirm we had the right form and the right contacts at each

15   of those locations.  Several of them had questions, so we've

16   gone back to her to get clarification.  We'll follow up this

17   week and make sure she has that information, if she needs it.

18        **JUDGE RODGERS:**  Okay.  Well, do keep Judge Herndon and

19   he can keep me apprised of this.  Because if it doesn't appear

20   that they're going to run these down, then I think I need to

21   get involved.  Because this was the understanding from the

22   beginning.  And if these individuals have presented those

23   authorizations to their base medical office -- I mean, this was

24   quite some time ago -- then we just have to run it down.

25        Okay.  Well, that's good to know.  And certainly, as

1   far as I can tell, this delay is not the fault of either side

2   in this litigation; it sounds like it's just the DoD.  I don't

3   know whether she thought the base medical offices were going to

4   produce the records or what.  Maj. Kim is who I'm referring to.

5   So we just need to talk with her about it, and it sounds like

6   you have; and let me know what her response is.

7            Now, Estes is not active duty, correct?

8            **MS. HOEKSTRA:**  He was and he no longer is.  He had

9   medical treatment right before he separated, and those are the

10   records that he's currently looking for.  He wasn't sure if

11   they would be transferred to the VA or if the DoD had them.

12           We have been dealing with his counsel directly and

13   seeing what we can do to track those down, which is why we've

14   raised the issue with Maj. Kim as well.

15           **JUDGE RODGERS:**  Yeah, there was some question about

16   this a while back as far as whether the DoD would have

17   transferred.

18           Did he ETS -- did he exit the military fairly

19   recently?  Active duty is what I'm referring to.

20           **MS. CORNELL:**  Your Honor, this is Catherine Cornell.

21   Sorry.  I'm counsel for Mr. Estes, so let me chime in here.

22           He exited the military in 2017, but he recently had a

23   VA disability decision letter issued to him, and part of that

24   was this new audiogram that he had on July 8th.  So it will

25   certainly come from the DoD -- I'm sorry -- from the VA, not

1   the DoD.

2   **JUDGE RODGERS:**  Okay.  That's helpful.  Thank you.

3   Well, you all will stay on top of this, I know, and just keep

4   me posted.

5   **MR. AYLSTOCK:**  Yes, Your Honor.

6   **JUDGE RODGERS:**  Let's hear an update on the sales rep

7   discovery.

8   **MR. BUCHANAN:**  Yes, Your Honor, this is Dave Buchanan.

9   As we noted for the Court at the last CMC, we've been in

10  discussions with the Defense concerning the depositions of the

11  sales representatives who called on or had interactions with

12  the various bases implicated in the Trial Group A plaintiff

13  cases.

14  Through discussions with Defense counsel, we

15  understand there were four.  One was previously deposed.  And

16  the remaining three, Mr. Harris and Mr. Edwards and Ms. Knodder

17  *[phonetic]* are set for deposition next week.

18  Relatedly, and as part of our discussions, we've been

19  interested in really documenting the interactions between these

20  folks and the bases, whether it's, you know, training,

21  warnings, marketing collateral they dealt with in the nature of

22  those communications.

23  We had understood for most of the, I guess, the period

24  of our discovery and in response to our earlier discovery

25  requests that, unlike what you might expect, that the company

1   didn't maintain a sales force database that kept track of those

2   interactions.  More recently there's one; but seemingly, in the

3   period of time relevant for most of these cases, there was not

4   one.

5          We learned last week that there was one that, as you

6   may expect, you know, a so-called customer relationship

7   database, something like sales force that would log the

8   interactions between the sales rep and the people on the other

9   side, their counter-parties, did exist; it went by the name of

10  Act! with an exclamation point on the end.

11         We have been in discussions since the meet-and-confer

12  when that was revealed last week and then following the

13  30(b)(6) where it was confirmed by a corporate representative

14  in an attempt to get that database.

15         Defense counsel is searching backup tapes.  We have

16  been advised that they have been unable to find it, and they

17  have indeed looked in various places and talked to various

18  people.  We have asked them to search backup tapes, and they're

19  doing so.

20         As a parallel, we understood that reports were

21  generated from that database and sent around to managers --

22  kind of how I spent my last week -- to the manager at the bases

23  that were visited, the nature of their communications.

24         So we asked the Defendants to conduct a further search

25  of the TAR corpus using some search terms designed to identify

those weekly reports.  We do understand they found those -- or
found some for the relevant custodians and that they're going
to be produced today.

I'm not sure that we have the final word on the Act!
database.  We do have word on some weekly reports.  But that's
the update.  And they will be deposed next week.

**JUDGE RODGERS:**  Okay.  Anything from 3M that you would
like to say in response?

**MS. SIX:**  Good afternoon, Your Honor.  This is
Michelle Six.

**JUDGE RODGERS:**  Hello.

**MS. SIX:**  Hi.  With respect to the weekly reports, we
did go ahead and do targeted searches in our database,
identified a small number of documents, and those will be
produced today.

With respect to the Act! database, we have spoken to
many different individuals.  The Act! database does not exist
anymore.  The only hope we have for potentially finding
something -- and we're being pretty cooperative here, I think,
to be looking for this -- but we're looking through the file
names and file paths from the Aearo backup tapes.

I suspect, based what I've seen so far, that all we
have are what are called system files; in other words, they're
artifacts of the database that may be on the backup tape, but
not anything user-generated, not like a real file, but more

1  like something that's an artifact of how the database was

2  working in the system.  But we will go through those.

3       We have our vendor pulling those out, where I assume

4  we will look through them.  If there is anything that is

5  substantive that is responsive, we will get that produced.  But

6  right now I have not seen anything to indicate that that would

7  be the case.

8       **JUDGE RODGERS:**  But you're looking through the system

9  files now?

10      **MS. SIX:**  Yes, ma'am.

11      **JUDGE RODGERS:**  All right.  Thank you for that update.

12      Turning to Item No. 4 on the corporate discovery.  I

13  did receive your joint statements regarding the TAR training

14  process, and I appreciate very much you submitting that.  And I

15  hope you got the word to go ahead and file that.

16      **MR. BUCHANAN:**  We got the word, and we'll do so, Your

17  Honor.

18      **MS. SIX:**  Yes, Your Honor.

19      **JUDGE RODGERS:**  Okay, very good.

20      And then the next item, is this just advising me the

21  good news that the 30(b)(6) depos have been completed?

22      **MR. BHIMANI:**  Yes, Your Honor.  This is Jay Bhimani.

23  That was the purpose of this agenda item, those are now done.

24      **JUDGE RODGERS:**  That's a milestone.  That's good.

25  Good to hear.  Kudos to you all.

```
 1              Anything else on corporate discovery as far as --
 2   well, I guess not; it sounds like it's done.
 3              MR. AYLSTOCK:   There is one issue, Judge.  It's really
 4   not corporate, but it's third-party.  New Dynamics was a
 5   distributor of the plug for some period of time, and we have
 6   been going back and forth.
 7              We served a subpoena for deposition on them back in
 8   mid September.  We did receive a letter from their counsel.
 9   And it was noticed within the discovery period, actually, on
10   the 9th.  It's really not an expert issue, but it's a
11   distributor.
12              So, in any event, apparently they're seeking coverage,
13   so there might be coverage counsel.  And although the subpoena
14   was more than two weeks, actually, for the depo, they're asking
15   for a deposition date in late October.  Obviously, that would
16   be after the cutoff for Group A.
17              I wanted to highlight that issue and, I guess, bring
18   it up to see if that could be taken out of time.
19              JUDGE RODGERS:   Any response?
20              MR. NOMELLINI:   Your Honor, this is the first I have
21   been aware of Plaintiffs seeking this relief in dates.  I think
22   it would make sense for us to talk to Bryan about what he's
23   seeking and then circle back to Your Honor, if that's
24   acceptable to the Court.
25              JUDGE RODGERS:   It is.  I guess I just feel, well, I
```

1    guess compelled to again reference my desire that you all

2    coordinate these depo dates and that there's not any surprises.

3           **MR. AYLSTOCK:**  Yes, Your Honor.  The date -- the

4    subpoena was coordinated back in mid September that was served

5    on the Defendants, but I guess there's an issue with the

6    counsel.  So I'm happy to discuss that with Mr. Nomellini and

7    see if there's some agreement.

8           **JUDGE RODGERS:**  Well, I guess I'm just surprised that

9    3M is saying they didn't know anything about this.  But that's

10   fine, you all discuss it.  It doesn't sound like it's going to

11   impact any expert discovery.  I think I'm right about that; am

12   I not?

13          **MR. AYLSTOCK:**  Yes, Your Honor, you are, Your Honor.

14          **JUDGE RODGERS:**  All right.  Well, please, you all

15   discuss it, and then let me know if you need some kind of

16   ruling from me.

17          **MR. AYLSTOCK:**  Yes, Judge.

18          **JUDGE RODGERS:**  And the next item is an update on

19   choice of law.

20          **MR. FIELDS:**  Yes, Your Honor, this is Barry Fields.

21          **JUDGE RODGERS:**  Barry, okay.

22          **MR. FIELDS:**  I just wanted to give you an update on

23   where we stand.  The parties have engaged in some

24   meet-and-confer activities.  We will continue to do so next

25   week with the hope of being able to present you with a briefing

1 schedule.

2 You know, from my standpoint, I think it was very wise

3 of the Court to sort of provide briefing of this earlier.  It's

4 something I think other courts should consider doing because I

5 think it streamlines the summary judgment and dispositive

6 motion briefing.

7 We have not come to finalize the schedule.  I do think

8 we would appreciate some guidance from Your Honor, because it

9 will help us sort of frame what the eventual schedule might

10 look like.

11 Obviously, the Court knows that the dispositive motion

12 and *Daubert* briefs are due on January 8th.  From my standpoint,

13 I think, Your Honor, you know, the parties would appreciate the

14 Court's guidance and rulings on what law might apply to each of

15 the six bellwether cases.  And I think the parties would need

16 at least a couple of weeks before that deadline in order to

17 incorporate -- you know, make sure we're briefing the right

18 law.

19 And so, one of the issues is going to be when Your

20 Honor would like the choice of law briefing fully completed so

21 that you have ample time in order to issue guidance to the

22 parties in December.

23 **MR. SACCHET:**  And, Your Honor, this is Michael Sacchet

24 for Plaintiffs.  I'm happy to chime in in that any color from

25 Plaintiffs' perspective, if that would be helpful, unless you'd

1    like to answer Barry's question first.

2         *[No response.]*

3         **MR. AYLSTOCK:**  Did we lose Judge Rodgers?

4         **JUDGE RODGERS:**  I'm sorry.  I was on mute.  I was

5    talking but you all --

6         **MR. AYLSTOCK:**  That's something we're supposed to do,

7    not you.

8         **JUDGE RODGERS:**  I do it.

9         So, what I was saying, Mr. Sacchet, is I definitely

10   wanted to hear from you, after hearing from Mr. Fields.

11        Is there are any disagreement in terms of what Mr.

12   Fields just said to the Court as far as the need to get this

13   done sooner rather than later?

14        **MR. SACCHET:**  I don't know if I would put it as

15   disagreement, Your Honor.  During our brief meet-and-confer, I

16   presented Plaintiffs' perspective, which is that we're viewing

17   the timeline in which the briefing should occur for choice of

18   law essentially occurring in a window or between two bookends,

19   one being, of course, what the judge asked -- what Your Honor

20   asked for in CMO 16, which is for the briefing to be done

21   before briefing begins on the dispositive motions.

22        On the other hand, Plaintiffs are faced with the

23   situation that expert disclosures will not be complete in full

24   until November 19th.  And because, of course, choice of law

25   analysis will depend, in large part, on location of injury,

1     which is subject to some expert testimony, Plaintiffs feel that

2     the briefing should not begin in advance of the Plaintiffs'

3     rebuttal disclosure deadline of November 19th.

4           In Plaintiffs' view, we would be happy to file an

5     opening brief soon thereafter, you know, perhaps something as

6     soon as one business day later after Plaintiffs' rebuttal

7     disclosures are due, which would be November 23rd.  That Monday

8     we could file an opening brief, let's just say.  And if we

9     followed a normal timeline, 14 days later 3M responding on

10    December 7th, with Plaintiffs replying on December 14th, that

11    would still be --

12          **JUDGE RODGERS:**  Let me stop you just a minute.

13          These aren't motions, right?  So what you're doing is

14    you're presenting briefs to me.  I don't know that I need

15    point/counter-point.

16          Why can't you file simultaneous briefs?

17          **MR. SACCHET:**  That would be fine, Your Honor, because

18    the format was left open other than it should be a consolidated

19    omnibus brief.

20          3M had proposed on the meet-and-confer following a

21    normal briefing schedule of Plaintiffs filing first, 3M

22    responding, and Plaintiffs filing a reply, which Plaintiffs

23    didn't want to object to and hopefully make it easier for Your

24    Honor without bringing a dispute before the Court.

25          But if Your Honor's additional guidance right now is

1    to do simultaneous briefing, I don't think Plaintiffs would

2    have any problem doing that, if that's your preference.

3              **JUDGE RODGERS:**  Well, I think just because of the

4    window, I think that it works better that way, and I think

5    that's all I need.

6              You're, obviously, going to file your Motion for

7    Summary Judgment, and you'll be able to respond and reply to

8    those.

9              **MR. SACCHET:**  Of course.

10             **JUDGE RODGERS:**  But I do agree with Mr. Fields that I

11   think it would be informative for y'all to have my views on

12   this in terms of drafting your motions for summary judgment.

13             Right?

14             **MR. FIELDS:**  Yes, Your Honor.  So one of the things

15   that we talked about is making sure that, you know, the

16   briefing was fully completed, you know, by the end of November

17   or December 1st.  It would still be fairly tight for Your

18   Honor, but we thought it might be possible with a couple of

19   weeks that you might be able to issue a ruling.

20             Our concern was, if somehow briefing wasn't completed

21   until the end of the first week of December or December 14th,

22   that that simply does not -- would not provide the Court with

23   ample opportunity to give us guidance and issue rulings.

24             So, if Your Honor wanted simultaneous briefings, one

25   of the possibilities would be something like a simultaneous

1    brief, and if Your Honor wanted, you know, each party to do,

2    you know, a short three-page reply to the other side, you know,

3    if that's what the Court wanted, I think we could build that

4    in.  But I think, from my standpoint and 3M's standpoint, we

5    think it's better to get this briefing done, you know, by

6    November 30th, or pretty close, to give Your Honor ample time.

7            **JUDGE RODGERS:**  Actually, I don't know that I think

8    you need until November 30th.  But I'm going to discuss this

9    with Hillary and Tevenia, and I will go ahead and just give you

10   a schedule.

11           **MR. FIELDS:**  Yes, Your Honor.  And as a matter of

12   fact -- may I say one other thing, if you don't mind?

13           **JUDGE RODGERS:**  Yes.

14           **MR. FIELDS:**  I mean, one of the things that we haven't

15   even talked about, our original suggestion was that we try to

16   wrap everything up actually before Thanksgiving.  And so we are

17   sort of in the camp of Your Honor, which is, at the end of the

18   day, I'm not sure that we need to wait until the end of

19   November.  I think that an earlier time period in December is

20   perhaps even better from a scheduling perspective.

21           **MR. SACCHET:**  Your Honor, if I can just chime in very

22   shortly.  I don't want the gravity of the Plaintiffs' expert

23   rebuttal disclosure deadline to be lost on the conversation.

24   That's the primary reason which Plaintiffs object to briefing

25   being completed before Thanksgiving.

1          I mean, Thanksgiving is, I think, a couple of days

2     after our rebuttal reports are due, and that simply wouldn't

3     leave enough time for Plaintiffs to incorporate any additional

4     information that our experts would be relying on in those

5     reports to support their opinion that the injury occurred in

6     one state versus another state.

7          And therefore, I understand Mr. Fields's position that

8     this briefing should be completed in advance of the summary

9     judgment briefing so there's notice for each party to determine

10    what state law applies; but asking Plaintiffs to do so before

11    Thanksgiving and anytime before the Plaintiffs' rebuttal

12    disclosures are due I think would handicap Plaintiffs in an

13    unfair manner.

14         **JUDGE RODGERS:**  Well, Mr. Sacchet, I thought you just

15    said that your rebuttal report was due on the 19th and you

16    could have something filed the next day?

17         **MR. SACCHET:**  The first brief.  And I was interpreting

18    Mr. Fields's comment to suggest that briefing would be totally

19    completed, in the event that oppositions or other briefs would

20    be filed after that, before then as well.

21         **JUDGE RODGERS:**  Well, I'm only contemplating one

22    brief.

23         **MR. SACCHET:**  Okay.  If Your Honor is contemplating

24    one brief, I think we could have it done before Thanksgiving in

25    total.

1          **JUDGE RODGERS:**  All right.  Thank you.

2          Like I said, I want to discuss this with the law

3    clerks, and then I will give you a schedule.  I appreciate

4    that.  Thank you.

5          Thank you, Mr. Fields.

6          **MR. FIELDS:**  Thank you.

7          **JUDGE RODGERS:**  Okay.  That completes the agenda.  Is

8    there anything from anyone else?

9          **MR. NOMELLINI:**  Yes.

10          **MR. AYLSTOCK:**  Not from the Plaintiffs, Your Honor.

11          **JUDGE RODGERS:**  Somebody said yes.

12          **MR. NOMELLINI:**  Yes, Your Honor, it's Mark Nomellini.

13    I've done a little bit of digging on two things that came up

14    during the call that I just wanted to briefly report on.

15          First, there does seem to be some inconsistency in

16    Plaintiffs' positions on the third-party subpoenas and notice.

17          I looked back.  The New Dynamics deposition notice

18    came out on September 22nd, and we were not consulted with

19    respect to the date on that.

20          That said, I'm happy to talk to Bryan and, you know,

21    we will -- we were also not consulted in terms of moving the

22    date, which was just requested.  That said, I'm happy to talk

23    to Bryan and understand Your Honor's comments with respect to

24    both sides communicating clearly with respect to any kind of

25    scheduling issues, that is early and often.  That's the first

1    item.

2           And then the second item is with respect to Mr. Davis.

3    Your Honor raised that early on in the call.  And we can

4    provide this to Tevenia and Hillary in an email or in any form

5    that Your Honor would prefer.  But the timing was, we asked

6    Plaintiffs' counsel -- Mr. McCombs's counsel for a date on

7    September 4th, and there's a lot of email back and forth.

8    There was no agreement on a deposition date until September

9    23rd.  Part of the reason was that McCombs's counsel wanted to

10   schedule Mr. McCombs's girlfriend's deposition.

11          So, Your Honor did ask for a report on that, and I

12   wanted to provide that.  And we can just provide the email

13   correspondence to Tevenia and Hillary, if Your Honor would like

14   that.

15          **JUDGE RODGERS:**  Thank you, Mark.  I don't need that.

16   That's acceptable to me.  If you asked for dates and started

17   that discussion with his attorney on September 4th, then that's

18   the only explanation I need.  I don't have an issue with that.

19          But I still do have an issue, potentially, with

20   Dr. Michael, just because I see that it certainly could impact

21   expert discovery.  So that one I am going to need your response

22   in terms of the timeline, unless you all somehow otherwise work

23   it out.  Even though that, as well as New Dynamics, both

24   involve some concerns about you need to do better at

25   coordinating, I see them different in terms of impacting the

1    schedule.

2            **MR. AYLSTOCK:**  Thank you, Your Honor.

3            **MR. NOMELLINI:**  Thank you, Judge.  And we'll work with

4    Bryan on the document aspect of that, which I think is key.

5            **JUDGE RODGERS:**  And if that's all it is, then I

6    suspect you all will work it out.

7            **MR. AYLSTOCK:**  Yes, Your Honor, I think so, too.

8            **MR. NOMELLINI:**  Thank you, Judge.

9            **JUDGE RODGERS:**  All right.  Well, everyone has a nice

10   weekend.  And if we don't talk before the 16th, I'll see you on

11   the 16th.  Take care.

12                *(Proceedings concluded at 1:54 p.m.)*

13                   --------------------

14   *I certify that the foregoing is a correct transcript from the*
     *record of proceedings in the above-entitled matter.  Any*
15   *redaction of personal data identifiers pursuant to the Judicial*
     *Conference Policy on Privacy are noted within the transcript.*
16

17
      *s/Donna L. Boland*                        *10-5-2020*
18    *Donna L. Boland, RPR, FCRR*               *Date*
      *Official Court Reporter*
19

20

21

22

23

24

25