**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG  )<br>PRODUCTS LIABILITY LITIGATION, )<br>                               )<br>                               )<br>                               )<br>                               )<br>                               )<br>                               )<br>_____) | Case No. 3:19md2885<br><br>Pensacola, Florida<br>October 16, 2020<br>10:32 a.m. |

**SEVENTEENTH CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-20)

# **A P P E A R A N C E S**

**JUDGE DAVID R. HERNDON** (ret.)

**FOR THE PLAINTIFFS:**     **BRYAN F. AYLSTOCK, ESQUIRE**
Aylstock, Witkin, Kreis & Overholtz
17 E Main Street, Suite 200
Pensacola, Florida  32502

**SHELLEY HUTSON, ESQUIRE**
Clark Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, Texas  77002

**CHRISTOPHER A. SEEGER, ESQUIRE**
**DAVID R. BUCHANAN, ESQUIRE**
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660

**FOR THE DEFENDANTS:**     **ROBERT C. BROCK, ESQUIRE**
Kirkland & Ellis, LLP
1301 Pennsylvania Avenue NW
Washington, D.C.  20004

| | |
|---|---|
| **MICHELLE SIX, ESQUIRE**<br>Kirkland & Ellis, LLP<br>601 Lexington Avenue<br>New York, New York 10022 | **KIMBERLY BRANSCOME, ESQUIRE**<br>Dechert, LLP<br>633 W 5th Street, Suite 4900<br>Los Angeles, California  90071 |
| **MARK J. NOMELLINI, ESQUIRE**<br>Kirkland & Ellis, LLP<br>300 N Lasalle<br>Chicago, Illinois  60654 | **LARRY HILL, ESQUIRE**<br>**CHARLES F. BEALL, JR., ESQUIRE**<br>**HALEY J. VANFLETEREN, ESQUIRE**<br>Moore, Hill & Westmoreland, PA<br>350 W Cedar Street, Suite 100<br>Pensacola, Florida  32502 |

1                         P R O C E E D I N G S

2          **JUDGE RODGERS:**  It was a good morning 30 minutes ago.
3     I apologize for the delay in getting started.  And I guess all
4     I can say about the technical difficulties that we continue to
5     have in this courtroom is that I'm doing everything I can to
6     get those corrected, obviously, not very successfully.
7          The next CMC, if there's any problem, we're not going
8     to take 30 minutes to get started -- because we still don't
9     have the problem fixed -- everybody is just going to have to
10    call in by telephone.  If you're not here in person, you'll
11    have to appear by phone.  And again, my apologies.
12         So we are here for our Seventeenth Case Management
13    Conference in the 3M Combat Arms Earplug Products Liability
14    Litigation.  Of course, this is MDL 2885.
15         There are a number of attorneys here in the courtroom
16    for both sides as well as a number of attorneys appearing by
17    video -- or trying to appear by video.  I believe there are 16
18    on the Video Bridge.  I can only see a couple of you.  I'm not
19    going to identify everyone.
20         Let me just ask, please, if you do address the Court
21    and you're on video, that you just identify yourself, because I
22    probably can't see you, so please just identify yourself by
23    name.
24         I understand that Judge Jones and Judge Herndon are
25    both present.  I can see a part of Judge Herndon.  I can't see

1 | any part of Judge Jones, but I understand he is there.
2 | Judge Jones, can you hear me?
3 | **JUDGE JONES:** I can.  I can hear you and see you.
4 | **JUDGE RODGERS:** Very good.
5 | Judge Herndon, can you hear and see me?
6 | **JUDGE HERNDON:** I can hear and see you.  I just want
7 | to know if you can see the better part of me.
8 | **JUDGE RODGERS:** Well, actually, now I see the best
9 | part of you, because somebody did something, and I can see all
10 | of you, all of your face.  So something may be shaking loose in
11 | terms of our technical difficulties, so happy to have you.
12 | Judge Jones, let me ask you to speak again and see if
13 | you don't magically pop up.
14 | **JUDGE JONES:** Yeah, I should pop up when I speak.
15 | **JUDGE RODGERS:** We're all giggling here because we
16 | have Mr. Sacchet popping up for you.
17 | **JUDGE JONES:** Oh, okay.
18 | **JUDGE RODGERS:** Okay.  So maybe not 100 percent just
19 | yet.
20 | All right.  Here in the courtroom, for the Plaintiffs
21 | I have Mr. Aylstock, Ms. Hutson, Mr. Seeger, Mr. Buchanan; for
22 | the Defense, Mr. Hill, Ms. VanFleteren, and also Mr. Beall for
23 | 3M.
24 | And it's nice to have you here, Mr. Beall.  I didn't
25 | see you earlier.  I don't think you were here earlier.

1        **MR. BEALL:** I was not.

2        **JUDGE RODGERS:** I have the agenda.  We have been over
3 some of the highlights of the agenda this morning in our
4 preconference leadership meeting.  I will, as always, go
5 through the agenda, and I'll ask the parties or attorneys for
6 each side if there's something I miss or overlook that we
7 didn't touch on that we need to touch on here, then I'll ask
8 you to please address the Court in that regard.

9        Also, if there's anyone, again, on the Video Bridge
10 that has something to contribute, just go ahead and speak, but
11 do identify yourselves.

12        Counsel here in the courtroom, if you address the
13 Court, you are free to come to the lectern to do that; and if
14 you come to the lectern, you're free to take your mask off at
15 the lectern when you speak.

16        Let me get my notes together here just a minute.

17        Well, the agenda starts with an update on government
18 discovery.  There have been -- we have talked about this in the
19 past, but there have been a number of subpoenas issued for
20 depositions of government employees.  In return, there have
21 been a number of motions to quash filed by the United States in
22 regards to many of those subpoenas.

23        Those motions to quash are filed in other districts,
24 the districts where the depositions were to take place.  Many
25 of those motions have been transferred here to this district by

1  those courts.  Judge Jones has heard those motions to quash.
2  He has, I believe --
3             Correct me if I'm wrong.  I believe you have ruled on
4  at least two.  There have been at least two denials of Motions
5  to Quash.
6             Judge Jones -- and I know you have some pending as
7  well, but have you ruled on more than two?
8             **JUDGE JONES:**  Two, possibly three.
9             **JUDGE RODGERS:**  Okay.  And I've asked 3M to get with
10 the Plaintiffs, get dates for those depositions for those
11 deponents or witnesses for whom the Motions to Quash have been
12 denied, and the parties are working on that.
13            Anything else, either side, you think we need to touch
14 on here as far as just either the motions to compel, quash, or
15 transfer?
16            **MR. AYLSTOCK:**  Not from the Plaintiffs, Your Honor.
17            **JUDGE RODGERS:**  Mr. Hill?
18            **MR. HILL:**  No, Your Honor.
19            **JUDGE RODGERS:**  All right.  There was an update given
20 to myself and Judge Jones and Judge Herndon.  And Judge Herndon
21 is very familiar with this, because, of course, he's assisting
22 the parties with all of the Government production of records,
23 and bless him for that.  But there was an update on the VA
24 records.
25            We have had a very positive response regarding records

1 production from the VA in the bellwether cases as well as in
2 what we call the 1%, the 1500-plus -- I think it's 1536 cases.
3       There is a new Department of Justice attorney who is
4 on the scene now.  His name is Gary Feldon, I believe.  And
5 apparently Mr. Feldon is -- I don't want to say he's taking
6 over; I don't know that to be the case.  I think Ms. Snead is
7 still involved.  But apparently he's there to add another level
8 of support.  And the feedback I'm receiving from the parties is
9 positive on Mr. Feldon's involvement, and I think it's going to
10 be fruitful going forward.
11       There are -- as you can expect with some of the
12 bellwether plaintiffs, they are continuing to receive treatment
13 through the VA.  And so there's a need for those records --
14 when they receive treatment -- for those records to be
15 available to the parties.  And so the parties are working with
16 Mr. Feldon on an efficient way to see that those records are
17 produced on a rolling, continuous basis for that treatment that
18 is ongoing for certain plaintiffs.
19       I'm going to be reaching out to Mr. Feldon myself
20 regarding the DoD's production, particularly on the 1%, which
21 has been slow.  And I'm curious about that.  I'm also wanting
22 to speak with him about a number beyond the 1%.  And I made
23 efforts at doing that after our last CMC; they weren't very
24 fruitful.  So I'm going to see if I can get somewhere with Mr.
25 Feldon.

1           Okay.  Anything else on update in terms of the records
2 production?
3           Mr. Nomellini, I know you've been involved on the
4 Defense side.  Is there anything else you'd like to add?
5           **MR. NOMELLINI:**  No further arguments, Your Honor.
6           **JUDGE RODGERS:**  You popped up; that's a good sign.
7           Plaintiffs' side, anything else, Ms. Hutson?
8           **MS. HUTSON:**  No, there's nothing further.
9           **JUDGE RODGERS:**  I had a very good update from counsel
10 this morning regarding the Defense medical exams of the
11 bellwether plaintiffs in Trial Group A.  Save one of the
12 plaintiffs, these are all scheduled.  The first one is set to
13 take place on Tuesday, and that's for Mr. Baker.  This has been
14 a great example of a very positive and productive
15 meet-and-confer process on a fairly complex matter as far as
16 these medical exams.
17           The parties are continuing to work out the parameters
18 of the exams.  The exams are going to be primarily, if not
19 exclusively, testing-based exams, and the parties are working
20 out their agreement on the tests that will be administered.  I
21 expect to receive an order either today or Monday that I'll be
22 entering regarding the parameters of these exams.
23           Anything else, Ms. Hutson?
24           **MS. HUTSON:**  No, nothing further.
25           **JUDGE RODGERS:**  Ms. Branscome?

1    **MS. BRANSCOME:**  Nothing further.

2    **JUDGE RODGERS:**  Okay, very good.  The next item on the
3    agenda is bellwether discovery calendar.  There was a motion by
4    the Defendants that was pending regarding a request to take
5    certain depositions following the October 9th deadline.  I
6    ruled on that motion yesterday, and my ruling is set forth in
7    that order.

8    One of the deponents is an individual by the name of
9    Lt. Col. Kevin Hannah; he's a witness in Mr. Baker's case, I
10   believe.  But Lt. Col. Hannah, there's some question as to
11   where he is, whether he is stationed overseas; it sounds like
12   he may be.

13   The Government is hopefully going to be getting 3M the
14   information regarding his whereabouts, and we're going to hope
15   that the Government does that by the end of next week; and then
16   the Defendant will decide how to move forward at that point
17   with that depo.

18   An issue came up, and I'm going to discuss it now
19   here, in regards to the bellwether discovery update.  But an
20   issue came up in connection with a Motion to Quash that's
21   before Judge Jones, and the issue is whether or not that
22   deposition for which the Motion to Quash has been filed,
23   whether that deposition exceeds the number authorized as far as
24   fact witness depositions in these bellwether plaintiff cases.
25   It's not germane to the Motion to Quash.  This is an

1   issue that is more related to my management orders, discovery
2   management and scheduling orders.  From what I understand --
3   and I haven't seen the parties' positions on this.  But just
4   hearing briefly on it this morning, if the Motion to Quash is
5   denied and this deposition is taken, then this would exceed six
6   depositions in that particular bellwether case.
7          The Defendants have set forth their position in their
8   response to the Motion to Quash.  The Plaintiffs want to weigh
9   in on that before Judge Jones.
10         I have asked them to carve this out of the briefings
11  in connection with the Motion to Quash, because I see it as a
12  more sort of threshold fundamental issue that is not directly
13  related to the Motions to Quash, and they're going to do that.
14         I believe Mr. Barr -- this is his case -- he will be
15  filing a Motion for Protective Order in the next day or two,
16  the Defendants will respond, and then he'll reply, all very
17  quickly, in a matter of just a few days.  And we will get a
18  ruling out in that regard.  And then, Judge Jones, if
19  necessary, will move forward on the Motion to Quash.
20         Did I say that correctly, everyone?
21       **MR. AYLSTOCK:**  Yes, Your Honor.
22       **MR. HILL:**  Yes, Your Honor.
23       **MR. FIELDS:**  Your Honor, this is Barry Fields.
24       **JUDGE RODGERS:**  Yes.
25       **MR. FIELDS:**  There was only one issue.  I think you

1   indicated that the reply -- Plaintiffs' reply would be limited
2   to the issue of good cause.
3         **JUDGE RODGERS:**  Yes.  Thank you.  That is correct, I
4   did limit the reply to, I think, one page, but to the issue of
5   good cause.  Because under the scheduling order, the parties
6   are limited to six fact witnesses, unless there's good cause to
7   exceed that number.
8         So, the Defendants' position is the number six in
9   terms of the depos authorized does not include the plaintiff's
10  depo, just for whatever this is worth, that's what their
11  argument is.  But even if the plaintiff is included in the six,
12  they believe there's good cause to exceed that number in this
13  case.
14        The next item on the agenda was resolved by the
15  parties yesterday, so no need to discuss that.
16        There was discussion this morning about the sales
17  representative discovery.  I believe we talked last time or
18  heard some discussion of this last time on a database called
19  the Act! database that apparently existed at Aearo at one point
20  in time.  It apparently no longer exists.
21        I heard from Ms. Six this morning on this issue, and
22  also Mr. Aylstock.
23        And, Mr. Buchanan, you can weigh in here, if you like.
24  I'm going to summarize what our discussion was this morning;
25  and if there's something that you'd like to add, you'd be

1        welcomed to in just a minute.
2                 But my understanding is, is that 3M, the effort led by
3        Ms. Six, has done a very deep dive into trying to determine
4        what happened to this database and whether there is any shred
5        of it that remains anywhere in terms of data.  And they have
6        looked at backup tapes and trying to identify if there are any
7        artifacts in those backup tapes that could be linked to the
8        Act! database.
9                 Apparently they -- I believe, Ms. Six, you located
10       nine users on that database -- or on the backup tapes maybe,
11       but that none of them are custodians in this litigation.  So it
12       is 3M's position that they have done everything they can do to
13       try to locate or recreate this data and that they do not
14       believe they are going to be able to do so.
15                And so, I left it with them that there needs to be a
16       certification by someone within the company that certifies the
17       efforts that have been undertaken to try to uncover this data
18       and even recreate it, if at all possible, and then certifying
19       that it's not possible.
20                And, Ms. Six, I believe your final sort of comment on
21       this was that 3M cannot recreate data that it doesn't have.
22       And I certainly don't disagree with that and would just ask
23       that someone within the company certify that.
24                Mr. Buchanan, if you have anything to add, I'll hear
25       from you on it.

1        **MR. BUCHANAN:** Yes, Your Honor. Okay from here?

2        **JUDGE RODGERS:** Yes.

3        **MR. BUCHANAN:** So, the database, I think, based on
4   Ms. Six has described, the Act! database does not appear to
5   continue to be available. We're separating that at this point
6   from the data from that database, because it's our experience
7   that this kind of information companies highly value and would
8   have migrated it forward.

9        **JUDGE RODGERS:** Wait a minute.

10       Can the folks on the bridge, can you hear Mr.
11  Buchanan?

12       They're saying yes. I didn't know if you had gotten
13  too far away from the microphone.

14       **MR. BUCHANAN:** These microphones are pretty amazing.

15       So we're separating the old Act! database now from the
16  data. And I believe Ms. Six is still in the process of trying
17  to identify if that data was migrated forward into a later
18  database called Siebel. That was still in the process as of
19  yesterday. I don't know that that's been concluded.

20       **JUDGE RODGERS:** I heard this morning that it has been
21  concluded. And I did leave that out of my summary, and I
22  apologize. She did mention the Siebel and that it appears that
23  they can't locate any data.

24       **MR. BUCHANAN:** Then, as Your Honor indicated, a
25  certification from the company as to the steps that were

1   undertaken to find this.  I mean, it's generally core
2   information of high significance in cases like this, so we
3   would obviously want something from the company as to what
4   happened to the data or what efforts were made to identify it
5   and determine its absence.
6       **JUDGE RODGERS:**  All right.  Very good.
7       Ms. Six, anything that you would like to add?
8       **MS. SIX:**  Thank you, Your Honor.  I would say that, in
9   addition to a certification from the company as to the position
10  of any data, we would also probably include a certification
11  from our vendor as to the steps that they took to try to locate
12  any remnants of the Act! database, so we can provide those to
13  Plaintiffs.
14      **JUDGE RODGERS:**  Very good.  Thank you.
15      And the sales representative, that discovery has been
16  conducted, depositions have been taken.
17      The next item concerns timing of expert depositions.
18  And the Plaintiffs, consistent with the Court's order, have
19  identified their Trial Group A experts.  It is a robust list of
20  individuals.  There is a window in which the parties are going
21  to endeavor to get these depositions taken; I believe it's a
22  three-week window.  I've given them a fairly tight time frame
23  to complete -- all of the expert depos have to be completed by
24  the 23rd of December.
25      The Defendants will be disclosing their experts, I

1    believe, on the 9th of November, and there will be a two-week
2    period in which the Plaintiffs will be able to take those
3    depositions.  I'm hoping that the Defendants will have been
4    able to complete the Plaintiffs' expert depositions within that
5    three-week window.
6              To the extent that that's not possible, and for good
7    reason, then I've told the parties that I would be willing to
8    add another week on at the end of the period to hopefully wrap
9    up and take any depositions that simply just was not realistic
10   to get those taken in the time frame despite everyone's best
11   efforts.
12             So, I have a calendar that the Plaintiffs have given
13   to the Defendants.  It's an excellent process for getting
14   depositions scheduled for so many people in such a short time
15   frame.  The Defendants, I'm sure, will duplicate or something
16   very similar when they disclose their experts in terms of
17   proposed dates and locations.
18             The parties do need to do some research on COVID
19   restrictions and depositions in some of these locations and
20   make arrangements accordingly.  Some of these depositions will
21   obviously need to be remote depositions, which should help with
22   the time frame as well.
23             The one thing I did make sure the parties were clear
24   on and understood is that, while there is some flexibility in
25   terms of getting all of these expert depositions completed, I

1    am not going to move the *Daubert* deadlines or dispositive
2    motion deadlines.
3             As far as the choice of law update, as you all know,
4    if you read my order, the choice of law briefing is due
5    November 23rd.  There is oral argument scheduled for December
6    3rd.  I asked the parties to meet and confer.  Mr. Sacchet and
7    Mr. Fields have taken the lead on this choice of law matter.
8             They have agreed to a total of one hour for the oral
9    arguments with 30 minutes per side, and the party going first
10   has the option of reserving five minutes of that 30 minutes for
11   a reply.
12            The parties are to let each other know and let the
13   Court know if there are any changes to the chart that was
14   presented to the Court on choice of law, which really was a
15   summary of their positions, but they're to let me know and each
16   other by October 31st if there are any changes to the chart.
17            The other thing that still needs to be decided -- an
18   important matter -- is who is going to go first with the oral
19   arguments.  And I'm going to wait and look at the briefing
20   before I make that decision.  And if it doesn't appear to me
21   that it matters based on the briefing, then I'm going to put
22   the two sides in a hat and make the choice that way.
23            Mr. Fields, anything to add?
24            **MR. FIELDS:**  No, Your Honor.  Thank you.
25            **JUDGE RODGERS:**  Mr. Sacchet?

| | |
|---|---|
| 1 | **MR. SACCHET:**  No, Your Honor.  Thank you. |
| 2 | **JUDGE RODGERS:**  Okay, very good. |
| 3 | Anything else to add regarding the 1%, the discovery |
| 4 | that is -- well, the records production, not really discovery |
| 5 | so much, but records production on the 1%?  Mr. Aylstock? |
| 6 | **MR. AYLSTOCK:**  No, Your Honor.  We appreciate the |
| 7 | Court's and Judge Herndon's assistance in continuing that |
| 8 | process. |
| 9 | **JUDGE RODGERS:**  Yeah.  And I certainly appreciate |
| 10 | Judge Herndon's assistance.  It is my goal or hope and goal to |
| 11 | increase that number.  As of last evening, we are at 216,435 |
| 12 | cases; 200,000 on the administrative docket, 11,000, |
| 13 | approximately, filed, and then there are almost 4800 that are |
| 14 | not yet filed nor on the administrative docket. |
| 15 | I'm not sure of the reason for that, but apparently |
| 16 | BrownGreer is aware of those cases.  They're in BrownGreer, so |
| 17 | I may need to follow-up with Roma on that. |
| 18 | But back to the point of the records production, at |
| 19 | the time we pulled the 1%, it was, like I said, I think, just |
| 20 | north of 1500 cases.  We have got to find a way to move beyond |
| 21 | that to get more data in these cases.  I'm working on it, and I |
| 22 | know you all are working on it and will continue to work on it. |
| 23 | Another matter that I discussed with leadership |
| 24 | counsel this morning was the issue of the trials for the Group |
| 25 | A cases.  For months now, I have told you all that those trials |

1  would commence in April.  April 5th is the date I have always
2  identified for you when we have talked about this.  That is my
3  criminal trial docket, but I can move that to another time, if
4  need be.
5         But it is important for me, from a standpoint of just
6  managing my own docket, to firm up these trials for purposes of
7  my docket and length of time of the trials, whether the trials
8  are going to be consolidated.
9         And so I've asked the parties to meet and confer about
10 the issue of consolidation and to decide how they want to
11 present the issue to me, whether it's a motion for
12 consolidation by the Plaintiffs to which the Defendants respond
13 in opposition or simultaneous briefing.  I'm thinking more the
14 former than the latter.
15        These would be motions specific to the five Trial
16 Group A cases.  I have asked that they meet and confer and
17 present a proposal to me that would allow the briefing to be
18 done and before me ripe for my consideration by the end of the
19 year, so by 12/31.  And so they'll be working on that.
20        Judge Jones, anything that you would like to add?  And
21 before you speak, I'll just again thank you for all of your
22 efforts to keep the ball moving in this litigation.  I don't
23 know where we would be -- I don't even want to think about
24 where we would be if it weren't for you and your help.
25        **JUDGE JONES:**  I did have one question on the deadline

1  for the Motion for Protective Order on the issue of whether
2  there is good cause to exceed the number. What was the
3  deadline for that to be filed?
4          **JUDGE RODGERS:** I believe I gave two days.
5          Mr. Barr, what --
6          **MR. BARR:** I was thinking Tuesday morning, but I can
7  do it Monday, whatever Your Honor would prefer.
8          **JUDGE RODGERS:** Tuesday morning, Judge Jones, is
9  that --
10          **JUDGE JONES:** Yeah, that would being fine.
11          **JUDGE RODGERS:** So, if it's Tuesday morning, and then
12  Thursday morning for a response, and then Friday morning for
13  your very brief reply?
14          **MR. HILL:** Yes, Your Honor.
15          **JUDGE RODGERS:** Does that work for you, Judge Jones?
16          **JUDGE JONES:** Yes.
17          **JUDGE RODGERS:** Mr. Fields, I don't know if you're
18  handling this, but would that work for you?
19          **MR. FIELDS:** Yes, Your Honor. Thank you very much.
20          **JUDGE RODGERS:** Judge Herndon, is there anything you
21  would like to add?
22          **JUDGE HERNDON:** I don't have anything to add. Thank
23  you very much.
24          **JUDGE RODGERS:** All right. Plaintiffs, Mr. Aylstock?
25          **MR. AYLSTOCK:** Nothing further from the Plaintiffs,

1  Judge.

2  **JUDGE RODGERS:** And Mr. Hill, I'll ask you since
3  you're here in the courtroom, anything else?

4  **MR. HILL:** Nothing further, Your Honor. Thank you.

5  **JUDGE RODGERS:** Very good. Our next CMC, I believe,
6  is the 20th of November. We have a leadership call set for
7  December 1st, and then, of course, we have the oral arguments
8  on the 3rd.

9  I have asked -- I believe we communicated this -- I
10  would like the oral arguments to be in person. I thought we
11  communicated that.

12  **MR. BROCK:** Understood. Thank you.

13  **JUDGE RODGERS:** Very good. Well, it's nice to see
14  everyone. Thank you all for your input today. I will talk to
15  leadership on the 1st and hear the oral arguments on the 3rd.
16  But before that, I'll see you all again on the 20th. Take
17  care.

18  *(Proceedings concluded at 11:02 a.m.)*

19  --------------------

20  *I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Any*
21  *redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy are noted within the transcript.*
22

23
   *s/Donna L. Boland*                          *10-19-2020*
24  *Donna L. Boland, RPR, FCRR*                 *Date*
    *Official Court Reporter*
25