**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG    )     Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,  )
                            )     Gainesville, Florida
                            )     November 9, 2020
                            )     2:00 p.m. EST
                            )
                            )
_____)


**TELECONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-40)

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*1 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

**A P P E A R A N C E S**

FOR THE PLAINTIFFS:        **DAVID R. BUCHANAN, ESQUIRE**
                          **MAXWELL H. KELLY, ESQUIRE**
                          Seeger Weiss, LLP
                          55 Challenger Road, 6th Floor
                          Ridgefield Park, New Jersey  07660

FOR THE DEFENDANTS:        **JAY L. BHIMANI, ESQUIRE**
                          Dechert, LLP
                          633 W 5th Street, Suite 4900
                          Los Angeles, California  90071

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | **THE COURT:**  We have a number of people on the |
| 3 | line, and I'm not going to take a rollcall.  But, in a |
| 4 | moment, I'll ask who will be speaking on behalf of |
| 5 | each party. |
| 6 | What I had scheduled for hearing this |
| 7 | afternoon was the Defendants' Motion for Leave to Take |
| 8 | the Deposition of Mark Klever.  This is in the *Wayman* |
| 9 | case, which is 7:20cv149.  And I did receive and |
| 10 | reviewed an opposition that the Plaintiffs filed |
| 11 | earlier today. |
| 12 | So let me first turn to the Defendants.  And |
| 13 | who is going to be speaking on behalf of the |
| 14 | Defendants this afternoon? |
| 15 | **MR. BHIMANI:**  Good afternoon, Your Honor. |
| 16 | This is Jay Bhimani from Dechert.  I'll be addressing |
| 17 | the motion for Defendants. |
| 18 | **THE COURT:**  Okay.  Good afternoon. |
| 19 | And who is going to be speaking on behalf of |
| 20 | the Plaintiffs? |
| 21 | **MR. BUCHANAN:**  Good afternoon, Your Honor. |
| 22 | This is Dave Buchanan.  My colleague, Mr. Kelly, will |
| 23 | be handling the principal argument, though I may need |
| 24 | to supplement a point or two. |
| 25 | **THE COURT:**  Okay, very good. |

1          **MR. KELLY:**  Good afternoon, Your Honor.

2          **THE COURT:**  Good afternoon to both of you.

3    This is a pretty discrete and straightforward motion.

4          So let me first turn to Mr. Bhimani, and let

5    me hear your best argument why you should be permitted

6    to go beyond the six-deposition limit.  And I

7    understand the Plaintiffs count it as eight.

8          But, for the sake of argument, why is this

9    deposition so critical?

10          I think we can all agree that what you say

11    the deponent might know is relevant to the case.  But

12    that's not the standard.  The standard has to be

13    something else more than that.

14          And then, secondly, to give you also a little

15    bit of guidance, although we have -- I forget what PTO

16    it is -- I guess it's 42, you know, set forth the

17    six-deposition limit.

18          Under the Rules of Civil Procedure, there's

19    normally a ten-deposition limit.  And, if you wanted

20    to go beyond the ten-deposition limit, in other words,

21    you were applying for leave to exceed the

22    ten-deposition limit, the law that would apply

23    wouldn't be just to show the additional deposition is

24    relevant; it's really to show that your whole

25    discovery plan requires an additional deposition.

1          And the reason why courts use that standard
2    is pretty straightforward.  You know, even if you had
3    a ten-deposition limit, you know, if you decided to
4    take nine depositions of the cousins and relatives of
5    the plaintiff because you thought they might be
6    interesting, and then for an eleventh deposition you
7    wanted to take the deposition of the key doctor who
8    had treated the plaintiff over a course of a number of
9    years that would provide highly relevant information,
10   you know, you might not win on that motion, because
11   the Court would say, *Well, Dr. Such-and-such certainly*
12   *is a very important witness; you sort of wasted your*
13   *time by taking the deposition of nine of the*
14   *plaintiff's cousins.*
15         So, Mr. Bhimani, that's why I want to hear
16   from you, one, why Mr. Klever is so important, and why
17   the other depositions that you have taken or already
18   have noticed are equally as important.
19         **MR. BHIMANI:**  Yes, Your Honor, absolutely.
20   And I think Your Honor has hit the nail on the head as
21   far as the issue, at least as far as Defendants see
22   it.  And so, what I'll speak to really is the way in
23   which Mr. Wayman is unique but also, to Your Honor's
24   point just now, the way in which Mr. Klever is unique
25   among the lineup and how each of the deponents that we

1    have identified to date are unique as between
2    themselves.
3            So this is not a situation where, you know,
4    we have sought the deposition of three witnesses on
5    the same issue.  So let me drill down into the
6    specifics of that.
7            So, with respect to Mr. Wayman, he's unique
8    in at least a few respects.  And I'm not suggesting
9    that he's the only one perhaps that meets this sort of
10   criteria, but I do think it is unique.
11           He has the following claims:  That his
12   tinnitus exacerbates his PTSD, and a lost wages claim,
13   and he has a medical history with traumatic brain
14   injuries, and he has a spouse who he served in the
15   military with and who was his direct supervisor in the
16   Army for a period of time and had daily interactions
17   with him.
18           So, with respect to the depositions that we
19   have already taken to date, which have been of
20   Mr. Wayman, of course.  Mr. Wayman is the plaintiff;
21   that is a core deposition in a case.  His wife also
22   had unique knowledge that, you know, perhaps a spouse
23   in other cases may not have regarding their time in
24   the Army together.
25           We also have indicated an intention to depose

1    a witness, Elizabeth Knight, who is a psychiatrist who

2    has conducted some traumatic brain injury evaluations

3    on Mr. Wayman given his history of TBIs.  And I think,

4    you know, that witness does have unique knowledge with

5    respect to Mr. Wayman's claims and as it relates to

6    the TBI issue, and that's sort of a unique thing for

7    that witness.

8            Similarly, we have indicated that we want to

9    depose Dr. Gloria Ryder, who is a therapist that

10   Mr. Wayman is seeing relating to his PTSD.  And again,

11   her kind of unique spot in the lineup, for lack of a

12   better way to say it, is she has the information about

13   Mr. Wayman's claims that his PTSD has been worsened on

14   account of his tinnitus.

15           And, you know, with respect to Mr. Klever --

16   well, before I get to Mr. Klever, the other witnesses

17   that we have identified are Decelles, who is

18   Mr. Wayman's current primary care provider, who, of

19   course, is uniquely positioned among the lineup given

20   that, you know, that is kind of the point of contact

21   that Mr. Wayman has for his medical needs.

22           And then Debra Powell, who is an audiologist

23   who kind of, you know -- the way that I look at both

24   Decelles and Powell is really those are witnesses that

25   would be deposed in most of these cases.  You know,

1    you see primary care providers and audiologists get

2    deposed because they kind of have unique knowledge in

3    each case.  But I do think Knight on the TBI issue,

4    Ryder on the PTSD issue, and Klever on the lost wages

5    piece of Mr. Wayman's claim do have unique and not

6    overlapping knowledge.

7         And so, Mr. Klever, as Your Honor has seen in

8    the motion, is Mr. Wayman's supervisor at his current

9    job.  And so, you know, in observing Mr. Wayman at

10   work and observing Mr. Wayman's performance in his

11   duties at work and, you know, whether or not his

12   hearing issues affect that are directly relevant to

13   Mr. Wayman's claims that he has diminished earning

14   capacity and lost wages on account of his medical

15   condition.

16        And, Your Honor, we have not identified in

17   our lineup somebody else who can -- you know, is in

18   the position of an employer, whether a past employer

19   or a current employer, who will speak to those issues.

20        I can tell Your Honor in other cases, you

21   know, we may -- to the extent that there is space in

22   the lineup within the limitations in the order, you

23   know, there may be instances in which multiple

24   employer witnesses are identified and deposed and they

25   may overlap, and that's just the function of the space

1    that is, you know, in another case.

2         But here, we really have been kind of

3    diligent to find people that are addressing really

4    unique, nonoverlapping areas.  And so, Klever is

5    somebody that, you know, we are looking to address a

6    specific thing that bears on a specific claim that

7    Mr. Wayman has made.

8         I will also say, you know, Mr. Wayman is

9    unique in that he has sort of all of these facets that

10   are going into his claim, but, you know, every case is

11   different, too.

12        So, Your Honor may be aware of this, but

13   there's another case, Taylor, which also has a mental

14   health condition sort of at issue in the case, but I

15   think the Defendants there are going to come in under

16   the deposition limit.

17        So it's not as though, you know, I'm

18   suggesting that in every case with a PTSD issue or in

19   every case with a TBI issue that there would be a need

20   to go over the limit.  It's just the unique -- you

21   know, the unique lineup that we have here in light of

22   Mr. Wayman's unique claims.

23        So I do think he is of critical importance

24   because I do think there would be sort of a gap in the

25   coverage of the discovery that the Defendants would

1   have as to a certain aspect of Mr. Wayman's claims if

2   the Defendants are denied the deposition of

3   Mr. Klever.

4          The Plaintiffs also did raise this issue, and

5   Your Honor alluded to it as well, on an eighth

6   deposition of a hearing conservation program manager.

7          Just for Your Honor's background, I will say

8   that the Government has not yet identified the hearing

9   conservation program manager for Mr. Wayman.  That is

10  why we have filed this motion, and this motion really

11  does focus on Mr. Klever.

12         To the extent that Defendants have a hearing

13  conservation program manager identified later and we

14  believe that his testimony -- his or her testimony

15  would be necessary, I would envision coming back to

16  Your Honor on that motion, and I would suspect that

17  there would be a different showing made by Defendants,

18  there might be different arguments made by the

19  Plaintiffs.

20         That's not really before Your Honor on this

21  motion.  This motion really is seeking a specific

22  order on the seventh deposition for Mr. Klever.  But

23  I'm happy to address those issues in more detail.

24         I do have some issues, Your Honor, that I can

25  address with respect to the prejudice argument that

1    Plaintiffs have made.  But if Your Honor has other
2    questions --
3            **THE COURT:**  One question on Mr. Wayman's
4    employment.  What is Klever's job and what type of
5    employment setting is Mr. Wayman involved in?
6            **MR. BHIMANI:**  Yeah, so, Mr. Wayman, his
7    current job is as an automotive technician at Land
8    Rover.  And Mr. Klever -- I don't know his formal
9    title, but Mr. Klever is Mr. Wayman's immediate
10   supervisor in his job as an auto technician at Land
11   Rover.
12           **THE COURT:**  Okay.  And give me a snapshot of
13   what you would hope to develop from a supervisor
14   relating to Mr. Wayman's job as an auto mechanic,
15   essentially.
16           **MR. BHIMANI:**  Yeah.  And so, Mr. Klever, you
17   know, I think Mr. Klever has substantial interaction
18   with Mr. Wayman.  And I can tell Your Honor, you know,
19   having read transcripts and having participated in
20   depositions of employers in other cases -- so this is
21   separate from Mr. Wayman, of course -- you know, we
22   have gotten some very important testimony that has fed
23   into the expert reports.
24           Frankly, for both the Plaintiffs' and the
25   Defendants' reports that will be due today will

address similar things.  But, you know, supervisors
have direct knowledge of the extent to which or the
lack of an impact that hearing issues can have on a
job.

So, you know, if he can describe -- and
Mr. Wayman has described the interactions that he sort
of has to have as an automotive technician and the
interactions that he would have with his supervisors,
with his coworkers, the extent to which his hearing
issues, or lack thereof, are impacting his ability to
do his job effectively or not is something that will
be directly relevant, you know, to the extent that
Plaintiffs -- you know, and my expectation would be
that Plaintiffs would disclose vocational experts to
support their lost earning capacity and lost wages
claim.

And so, to have somebody testify about those
issues, I think, you know, frankly, would be something
that the Plaintiffs' vocational expert, to the extent
that testimony existed, would take into account, and
certainly our experts would want to understand that,
when Mr. Wayman is claiming that, you know, he can't
earn as much money in his job or that his job duties
have been impeded in some way on account of his
hearing, what the people that actually supervise him

1     and speak to him every day and observe him in his job

2     duties actually have to say about that separate and

3     apart from --

4          **THE COURT:**  Mr. Wayman, he's been deposed; is

5     that correct?

6          **MR. BHIMANI:**  Mr. Wayman has already been

7     deposed, yes, Your Honor.

8          **THE COURT:**  And what did he say in particular

9     about any impact on his current employment as a result

10    of tinnitus or hearing loss?  Did he talk about that?

11         **MR. BHIMANI:**  Well, so, yes and no, Your

12    Honor.  I think he talked about the ways in which

13    that, you know, his overall -- so he was a pilot in

14    the military.  And his claim, in some sense, is that,

15    you know, he's had to work as an automotive technician

16    and, you know, can't get work as a pilot.  I don't

17    want to characterize the testimony, but I do think

18    that's the testimony.

19         I don't know that, you know -- to be -- I

20    think what Your Honor is getting at, I don't think

21    he's claiming that he can't make more money at Land

22    Rover because of his hearing.  But I do think that,

23    you know, in addition to his career as a pilot, the

24    Plaintiffs -- and I don't know until I see their

25    expert reports, but I would suspect, based on other

1    cases, that the Plaintiffs would take a broader view

2    that his earning capacity in general has been impeded

3    on account of his hearing condition.

4            But the issue that Mr. Wayman spoke to in his

5    deposition related to the impact that this has had on

6    his ability to be a pilot.

7            **THE COURT:**  Yeah, because what I was getting

8    at is, if Wayman testified -- and I'm sure if someone

9    asked him at his deposition does his level of hearing

10   loss or tinnitus make it difficult or impact in any

11   way his day-to-day activities in the workplace at

12   Range Rover, and if he said, *Well, no, not really, I'm*

13   *just fixing cars, and based on that environment it's*

14   *not really a big deal, my hearing loss,* then -- and I

15   don't know if he said that.  But if he said that, it

16   would seem that taking Mr. Klever's deposition really

17   wouldn't be essential or that helpful.

18           **MR. BHIMANI:**  Yes, Your Honor, so -- I'm

19   sorry, Your Honor.

20           **THE COURT:**  Go ahead.

21           **MR. BHIMANI:**  No, so I will say, so that is

22   actually not the case, Your Honor.  So he did testify

23   that, you know, for example, that his tinnitus would

24   affect his ability to concentrate.  He also gave some

25   testimony that he's had to give up some work to his

other coworkers at Land Rover.  So there is testimony
in the record about, you know, the ways in which his
tinnitus is affecting things in his job at Land Rover,
including concentration and his ability to do work
that he otherwise would be able to do and not do that
and gave that to others within his employment.

And so, again, I don't know what the
Plaintiffs' experts will do with that, but there is
testimony to that effect in the deposition.

**THE COURT:**  Okay.  Now, you were going to
tell me about prejudice.

**MR. BHIMANI:**  Yes.  So, just briefly with
respect to prejudice, you know, there is some argument
that this is kind of a threadbare showing of potential
relevance and, if that's the standard, it can really
expand things.

And, as I hope I have conveyed, that's not
really -- we're not looking to a threadbare standard
of relevance.  We are looking to the standard that
Your Honor has articulated.

I will say that this deposition -- as Your
Honor sort of acknowledged by working with the parties
to schedule this hearing today early with expedited
briefing, this deposition should occur this week, it
should occur before the cutoff.

1           So, with respect to impact on expert reports,
2   this is something, schedule-wise, that would be
3   something that the Plaintiffs could incorporate into
4   their expert reports.  And so, I don't necessarily
5   think there is any prejudice to having this discovery
6   go forward as the timing should be in line with what
7   the expectation was on fact discovery depositions
8   occurring.

9           **THE COURT:**  Okay.  Well, thank you.  Let me
10  hear from the Plaintiffs, and then I'll come back to
11  you, Mr. Bhimani, with any rebuttal.

12          Let me hear from the Plaintiffs.

13          **MR. KELLY:**  Thank you, Your Honor.  This is
14  Max Kelly.  I guess the first thing I want to respond
15  to is what Mr. Bhimani said last about the expectation
16  of timing here.

17          And I think part of the issue is, again, that
18  the Defendants are talking about this as one
19  additional deposition of one person when that's not
20  really the issue.  The issue is that we're a week from
21  the end of discovery, and Defendants have not settled
22  on a deposition calendar, they have not determined
23  what individuals they plan to depose within the scope
24  of discovery, as ordered in this case.

25          I would disagree with the notion that

1    preparing for any deposition is a trivial matter that

2    can be thrown into any given week.  And one of the

3    issues here is that it's not clear that Mr. Klever is

4    going to be the last deposition.  Obviously, Ryder has

5    been noticed for later in the week.  There is this

6    eighth hearing conservation program manager which

7    Defendants acknowledge they intend to depose as well,

8    which is also beyond the six.

9             And, in any event, they're -- I realize

10   Mr. Bhimani's point that, if this deposition happens

11   in a couple of days, that would still leave, you know,

12   almost a week before the expert deadline, but there's

13   obvious prejudice to workflow that comes out of this.

14            More importantly, just in general, this is --

15   people have to make choices in discovery.  There were

16   limits on Plaintiffs discovery in this case.  We

17   abided within those limits.  It's not the case that we

18   took deposition testimony from every single individual

19   who works at 3M who we believe might have relevant

20   information.  The parties have to choose their

21   priorities and operate within the orders the Court has

22   given.

23            In *Keefer*, there was an issue about a

24   misinterpretation of whether the orders of six

25   case-specific depositions included the plaintiff.  The

1   Court clarified that two weeks ago.  And Defendants,

2   in the *Wayman* matter, have proceeded with what appears

3   to just be an eighth deposition calendar.  They should

4   be forced to make a decision and abide within the

5   limits this Court has set.

6          I also want to push back on some of these

7   arguments about the prior depositions that took place.

8   There was a suggestion that Knight has conducted

9   multiple evaluations of Mr. Wayman.  That is not the

10  case.  Elizabeth Knight has seen Mr. Wayman on one

11  occasion.  Same thing with Dr. Powell, who was deposed

12  last week.

13         And Powell is honestly -- I mean, I can't

14  tell Defendants how to run their deposition calendar,

15  but Powell is the kind of witness who, based on the

16  examination, could have maybe been handled by some

17  other way.  It did not seem like an extremely

18  necessary deposition.

19         So I'm not sure what issue Your Honor would

20  like further clarified, but I think the issue is just

21  that Defendants have decided that they want to take

22  eight depositions but they're entitled to six.  And

23  they should have to decide which ones, and they should

24  have decided this much earlier, honestly.

25         **THE COURT:**  So, let me ask you this, Mr.

1    Kelly.  So, obviously, Mr. Wayman your client's
2    deposition has been taken.  Powell's deposition was
3    taken, which, according to you, wasn't a big deal.
4    But I guess can't really fault the Defendants from
5    taking an audiologist who did diagnose your client
6    with tinnitus.
7         Knight, she was deposed as well; is that
8    correct?
9         **MR. KELLY:**  Knight and Decelles have not been
10   deposed, although they were subpoenaed for depositions
11   on October 28th and 29th.  The Defendants did not take
12   those subpoenas down.  I believe we got a certificate
13   of nonattendance.
14        **THE COURT:**  Okay.  So, in looking at the
15   lineup, obviously, they were going to take your
16   client's deposition.
17        Taking Debra Powell's, maybe it turned out to
18   not be that great of a deposition, but it seems not
19   unreasonable to notice her and take her deposition.
20        Dr. Ryder, that seems that is someone that
21   you were representing, the Defendants, that you would
22   probably want to take.
23        But what I'm leading up to is, one of the
24   depositions that I guess has not been taken that's
25   been noticed is the current primary care physician,

1   Dr. Decelles.

2          And Mr. Bhimani indicated that, you know,

3   it's standard fare in these cases that the Defendants

4   will depose the primary care physician and then we can

5   debate about the other types of witnesses they would

6   depose.

7          So my question is, is that true in these

8   cases that it has been standard fare that you would,

9   meaning the Defendants, would take the depo of the

10  primary care physician?

11         **MR. BUCHANAN:**  Your Honor, this is Dave

12  Buchanan.  I'll comment for Plaintiffs.  I may have

13  broader perspective across different cases.

14         It's not my experience that they do.  If you

15  were in a case with a prescribing doctor, you would

16  certainly take the prescribing doctor's deposition.

17  That would be somebody who made some decisions with

18  regard to exposure.  You may take a diagnosing

19  physician, and you may take that.

20         But I look at the three VA witnesses,

21  Dr. Powell, Dr. Knight, and Dr. Decelles, and I was

22  frankly surprised that there would be a request for

23  three witnesses from the VA, two of whom only saw

24  Mr. Wayman on one occasion.

25         There are ways to address this - they are

1    medical records; and there are ways to make sure

2    they're available, obviously, for experts and for the

3    jury in some way.

4         But to take each of them, frankly, struck me

5    as excessive.  But again, Plaintiffs were not crafting

6    the Defense discovery program here.

7         I am concerned at the suggestion that having

8    asked for those then we're really just talking about

9    Mr. Klever as the seventh as opposed to the decision

10   to take those other three.  Because I think that does

11   go in the mix and, as I said, Ms. Knight saw -- or

12   Dr. Knight saw Mr. Wayman once, Dr. Powell saw him

13   once, and Dr. Decelles has seen him on a handful of

14   occasions through coordinated VA care.

15        I would suspect Dr. Knight is going to say

16   she doesn't remember him specifically, having seen him

17   only once, which was exactly what Dr. Powell said.  In

18   a VA setting with a number of patients, I can't

19   imagine there's going to be a lot of personal

20   knowledge other than, if you will, referring through

21   the records.

22        So, again, we didn't design the Defendants'

23   discovery program, but I do question the ability to

24   just kind of take those three as foregone conclusions

25   and then look at Mr. Klever in isolation.  I do think

 1    there are choices we all make when we have limits.

 2    And I'm not sure I would align with those choices, but

 3    I don't think you can take them as a given and then

 4    just look at Mr. Klever independently.

 5         **THE COURT:**  Dr. Decelles, I'm sure the

 6    parties have his medical records; is that correct?

 7         **MR. BUCHANAN:**  We do.

 8         **THE COURT:**  Yeah.  I mean, is there -- and

 9    I'll ask the same question in a moment to Mr. Bhimani.

10         Is there anything in Dr. Decelles's records

11    as a primary care physician that -- I don't want to

12    say "jumps out" but, you know, has importance?

13         Like, I mean, for example, if you went to my

14    primary care physician, they would look at the

15    records, they would take a blood test, and say, oh,

16    I'm pretty healthy, and maybe every issue I have

17    wouldn't necessarily be in my primary care physician's

18    records.

19         Is there anything in there about tinnitus or

20    hearing loss, or does Mr. Wayman have any specific

21    medical issues that, in a way, could be relevant to

22    hearing loss for which he is being treated by

23    Dr. Decelles?

24         I know there's PTSD, but I don't know if

25    that's necessarily a primary care physician.

1          And Dr. Decelles is a VA doctor; is that

2     right?

3          **MR. BUCHANAN:**  Yes.

4          **MR. KELLY:**  Dr. Decelles is a VA doctor, yes.

5          **THE COURT:**  Yeah, he's a VA doctor, okay.

6     And the VA hasn't objected to his deposition being

7     taken at this point?

8          **MR. BUCHANAN:**  As I understand it, they have

9     objected to both.  There's a Motion to Quash that's in

10    the process of being transferred to Your Honor.  And I

11    think the Defense isn't clear on whether -- neither

12    side is clear on whether both of those depositions

13    will -- whether they will indeed agree to produce a

14    witness.  They both still stand at this point.  And

15    Your Honor ultimately, I suspect, will receive a

16    Motion to Quash from Colorado.

17         **THE COURT:**  Okay.  So, as of right now, the

18    Defendants are not going to be able to take

19    Dr. Decelles's deposition because there is a pending

20    Motion to Quash somewhere; is that right?

21         **MR. KELLY:**  Yes.

22         **MR. BUCHANAN:**  Yes, for Dr. Decelles and

23    Dr. Knight.

24         **MR. KELLY:**  Correct.

25         **THE COURT:**  And Dr. Knight, yeah.  Okay.

1          Anything else, Mr. Buchanan?

2          **MR. BUCHANAN:**  No, Your Honor.  Thank you.

3          **THE COURT:**  Okay.  Now, Mr. Bhimani, let me

4    get back to you.

5          So, although I understand, you know, you're

6    asking for permission, this would, in your view, be

7    your seventh deposition.

8          What about Knight and Decelles?  The

9    Government, at this point, is resisting producing

10   them; is that right?

11         **MR. BHIMANI:**  Correct.  So, they filed -- as

12   Mr. Buchanan pointed out correctly, they filed Motions

13   to Quash.  We have filed a Motion to Transfer that to

14   Your Honor, and that is in the process of being

15   decided.

16         **THE COURT:**  Okay.  So, let's focus on my

17   questions about Dr. Decelles.  You do have his

18   records.

19         What makes Dr. Decelles such an important --

20   maybe that's the wrong word, important -- the kind of

21   witness that you would absolutely want to include in

22   your lineup of six depositions?

23         **MR. BHIMANI:**  Yeah, so, understood, Your

24   Honor, and I think I understand the issue.  And I'll

25   speak to Decelles first, but I also want to address

1    Knight and Powell, to the extent that they were raised

2    by the Plaintiffs.

3         But with respect to Decelles, you know, as

4    the Plaintiffs counsel were pointing out, for example,

5    there was one TBI evaluation done by Knight for a

6    disability exam.  We think that was extremely

7    important.  But Decelles is really a doctor that saw

8    Mr. Wayman more frequently for an extended period of

9    time, for a number of years.  I believe it was -- you

10   know, it started in 2018, and so it's been at least

11   two years.

12        And I don't want to veer too far into the

13   strategy, but just to give Your Honor a sense of the

14   relevance of this.  You know, Your Honor was asking is

15   there anything in the medical records.  I mean, the

16   fact that this is the primary care doctor that

17   Mr. Wayman has seen repeatedly for a number of years

18   and did not raise hearing issues, I think, in and of

19   itself, is relevant.

20        You know, it is a powerful thing for the

21   Defendants to present to the jury that this is his

22   doctor that he sees as his primary care physician and

23   the doctor that he has seen among the lineup for more

24   than one appointment and, you know, hearing is not

25   something that came up I think speaks to the extent

1     and the severity of the hearing loss.  And I think the
2     jury is entitled to hear about that from the
3     perspective of the primary care physician.

4            So that is really -- and I'm hesitant to kind
5     of get into, again, more of the work product there.
6     But to give Your Honor a sense, that is why we think
7     Decelles is relevant.

8            With respect to Knight, to the extent that I
9     misspoke -- I hopefully didn't -- Mr. Wayman had
10    multiple TBIs.  Dr. Knight did a single TBI
11    evaluation; it was for a disability exam, which I
12    think makes it extraordinarily important.  And, you
13    know, the TBI that was being evaluated there I do
14    think has really direct relevance to the claims.  And
15    I know the Plaintiffs have kind of their view of that
16    and the Defendants have their view of that.

17           With respect to Powell, the final thing I'll
18    say on this, Powell is -- I would not agree that her
19    deposition was kind of a nonevent.  You know,
20    Ms. Powell spoke to a variety of issues.

21           She talked about the extent to which the
22    plaintiff's hearing was within normal limits.  She
23    talked about the extent to which the tinnitus testing
24    is something that's really subjective, which, frankly,
25    I think the parties kind of have some good sense

1    about, I'm sure the Court does as well, given that we

2    have all been living these cases in the context of

3    this MDL.

4         But I do think, you know, a jury, when they

5    hear the case, that it's going to be something that's

6    very important for them to hear from the audiologist

7    who did this examination on Mr. Wayman.

8         You know, she talked about the tests that she

9    did or didn't do and that existed or didn't exist and

10   the subjectivity that's inherent in that, and she

11   talked about whether his hearing was within normal

12   limits or not.  I mean, I think that is really the

13   core of relevance and, you know, the jury ought to

14   hear about that, you know, from a witness, you know,

15   even if there is a stipulation that certain medical

16   records may be admitted as exhibits that they can take

17   back to the jury room.

18        So, you know, that -- to give Your Honor a

19   little bit more context, we have a very different view

20   of the relevance of Ms. Powell's deposition.  And I

21   hope I have done an okay job explaining to Your Honor

22   the relevance that we see for Decelles and for Knight.

23            **THE COURT:**  Do you have --

24            **MR. BHIMANI:**  And the Plaintiffs --

25            **THE COURT:**  Go ahead.

1              **MR. BHIMANI:**  No, no, just a couple of other

2     points, I mean, with respect to Mr. Kelly's argument

3     about the lineup.

4              We have been very proactive in communicating

5     to the Plaintiffs the witnesses that we think will be

6     in the lineup.  We have had extensive discussions

7     particularly about scheduling.

8              I mean, Knight and Decelles, the dates for

9     those were agreed upon.  Unfortunately, you know, the

10    Government's motion had put a fork in the road that

11    the parties didn't have any control over.

12             We pulled those depositions down because

13    there is a local rule in Colorado that the filing of

14    the motions stayed the depositions.  And that was done

15    with the guidance from Judge Herndon.  But hopefully

16    that will be decided soon and those depositions will

17    proceed.

18             There was a discussion about dates for Ryder

19    and Klever in late October and, you know, there are

20    agreed upon dates there also.

21             And so, I don't -- I hope that Your Honor was

22    not left with an impression, because I don't think it

23    would be accurate, that we sprung numerous witnesses

24    on them kind of at the eleventh hour and didn't work

25    with them on scheduling.  These are really things that

1   we have been, you know, understanding that, you know,

2   the parties are dealing with a lot both in this case

3   and in other cases, to get dates that worked for

4   everybody, and we think we have done that.

5           And I'm happy to speak to any of the other

6   issues also.  It is true that we knew about Your

7   Honor's October 26th order in the *Keefer* case on

8   October 26th.

9           I will say, again, without getting into work

10  product, that, of course, these are very important

11  cases, and the planning for discovery, as I think the

12  Plaintiffs are also aware, happens much earlier than

13  October 26th with fact discovery cutoff like the one

14  we have now.

15          So, all of that to say, I think I have made

16  my argument, and I don't want to ramble on, unless

17  Your Honor has questions.

18          **THE COURT:**  I did have one question.  Now, I

19  assume you have employment records which would include

20  employment records at Range Rover?

21          **MR. BHIMANI:**  We do have employment records,

22  yes, Your Honor.

23          **THE COURT:**  And how long has -- because I

24  think this is important -- how long has Mr. Wayman

25  worked at Range Rover?

1        **MR. BUCHANAN:**  Since 2017, Your Honor.

2        **THE COURT:**  Okay.

3        **MR. BHIMANI:**  Yeah, that seems correct, yeah.

4        **THE COURT:**  So this is not some new six-month

5    employment; he's been there essentially in the same

6    position for about three years; is that right?

7        **MR. BUCHANAN:**  You know, Max has the more

8    precise timeline.  I think he had a job here or there

9    after he returned, and then this has been his job for

10   at least the last two years, Your Honor.

11       **MR. KELLY:**  Yes, that's correct.

12       **THE COURT:**  Okay, for some period of time.

13       **MR. BUCHANAN:**  Your Honor --

14       **THE COURT:**  Yeah, go ahead.

15       **MR. BUCHANAN:**  I'm sorry, I just wanted to

16   respond to a few points.

17       And again, we're not really critical of how

18   the Defendants elect to use their discovery time and

19   how they choose their depositions.  I have done

20   defense work.  Would I have made the same choices?

21   Probably not.

22       Dr. Powell is a one-visit witness, and she

23   didn't recall the witness.  And it was really just a

24   narration of the -- of, you know, his examination.

25       Dr. Knight is a one-visit witness.  And I

1    suspect it will be the same, in a busy VA practice

2    with an absence of memory, considering that she hasn't

3    seen him in more two years.

4              Dr. Decelles has seen him a few times.

5              Now, again, these are choices the Defense can

6    make.  And I think Mr. Bhimani was candid in saying,

7    *Well, yeah, we could have just had the record but, you*

8    *know, we wanted something that we could play to*

9    *narrate that.*

10             Of course, that could be done with experts.

11   It could certainly be discussed on cross-examination.

12   There are many different ways to have records

13   presented to the jury.  All of those are subject to

14   counsel's election.  That doesn't mean that a witness

15   needs to sit in the chair to do that.

16             We have a reality in this case that there is

17   a lot of significant work to do, not just in

18   Mr. Wayman's case and not with deadlines just by

19   Friday, but with expert reports the following week and

20   with many cases and other duties in connection with

21   this litigation.  And that creates a situation where

22   the planes can start to get stacked up over the

23   runway, so to speak.

24             And I think it's in everybody's benefit,

25   certainly, to bring as much certainty as quickly as

1   possible to what the discovery program is, but also to

2   finishing it.

3       And I understand we have an issue with two

4   witnesses.  That would be simpler probably in terms of

5   resolving the Government's Motion to Quash if it was

6   just one of those two witnesses, but the Defendants

7   are pressing for both in Knight and Decelles.

8       I'm concerned about the one that's still in

9   the wings, the unnamed hearing conservation program

10  manager.  And I realize, tactically or otherwise, the

11  Defendants have taken that off the argument calendar

12  for today.  They're not just seeking to go beyond the

13  six for multiple; they're going to come back again at

14  some later point in time.

15      But it does create problems.  It creates

16  problems from an expert proof perspective with regard

17  to a potential future general liability witness in

18  Mr. Wayman's case.  It presents resource issues.  As

19  you start looking at two additional depositions, while

20  the deposition itself may only take a half day or a

21  day, the work around that is quite significant when

22  you start overlaying all of these deadlines as they

23  start to mesh together.

24      So, again, we don't question the choice.  The

25  Defendants can elect their six as they wish.  But we

1    do think Your Honors carefully crafted a limit

2    recognizing that these cases exist on a broader

3    context and that that context needed -- that the

4    parties needed to be mindful of it so that it's not a

5    situation where everybody gets everything they want.

6    They make choices.  And I think the Defendants -- and

7    Plaintiffs respectfully ask the Court to require the

8    Defendants to exercise that choice within the six the

9    Court previously set.

10          **THE COURT:**  Okay.  I think I've got it.

11   So --

12          **MR. BHIMANI:**  Your Honor, to the extent Your

13   Honor is done hearing argument, if I could just very,

14   very, very briefly -- I think there was a slightly new

15   argument -- and I don't mean to be critical, but it

16   was an argument that I didn't hear previously at least

17   about the burden with respect to this deposition in

18   the context of other work.

19          And I fully acknowledge everybody is busy,

20   including Mr. Buchanan and Mr. Kelly, given their

21   position in leadership.

22          What I will say is these depositions have

23   been in other cases very, very short.  I expect that,

24   if Mr. Klever's deposition is permitted to go forward,

25   it will not be a lengthy deposition.  And I understand

1    there is still work that goes into those depositions.

2         To the extent Your Honor imposes a time

3    limit, I don't even think that's necessary because I

4    do think, as just a matter of necessity, these are not

5    going to be, you know, full day depositions certainly.

6    And so, I do think that speaks to the burden issue.

7    Though I don't think any burden is undue regardless, I

8    do hope that I can make at least that productive

9    comment.

10        **THE COURT**:  Okay.  Thank you.  So, here is

11   what I'm going to do and here is my view.

12        As a starting point, yes, there is the six

13   deposition limit.  The old adage, *what's good for the*

14   *goose is good for the gander*, yes, that applies.  I'm

15   mindful of there are other cases -- and in *Keefer*, for

16   reasons discussed in that case, we gave the Defendants

17   an opportunity to take a seventh deposition.

18        I'm looking down the road.  We certainly

19   don't want that to be the new normal in every case.

20   But looking at the standards with PTO 42, six

21   depositions, the parties are requested to request

22   additional depositions.  With leave, there's really no

23   standard in PTO 45.

24        But, as I announced at the beginning of the

25   hearing, you know, the standard I'm really going to

 1   use is I'm going to look at what is the discovery

 2   plan, and then, certainly and importantly, what is the

 3   real importance of the additional witness for whom

 4   leave is being requested.

 5          And on balance, you know, I think maybe this

 6   case is a little bit different, and here is why.  As

 7   Defendant points out, there is a diagnosis of PTSD,

 8   and Mr. Wayman receives therapy for that, and we can

 9   all agree that can be relevant to the claims.

10          There's also the suggestion here of a

11   traumatic brain injury and possibly even more than

12   one.

13          So, when I look at Dr. Knight, although it's

14   a one-time thing, my understanding is, at least the

15   way the Defendants present it, is she conducted a

16   comprehensive traumatic brain injury evaluation,

17   which, in the normal course of events, a defendant

18   defending a case like this certainly would want to

19   see.

20          And, as I understand it, the spouse here --

21   this is, I'm assuming, not a loss of consortium claim,

22   but the spouse was in the military with Mr. Wayman and

23   indeed was Mr. Wayman's supervisor.

24          So, in terms of a non-medical family member

25   deposition, I don't want to say that was essential,

1    but more than reasonable that you would want to take

2    that deposition.

3           Candidly, the one deposition that I really

4    had some questions about was Dr. Decelles, you know,

5    is it really necessary to take a deposition of the

6    primary care doctor.  But now, after hearing argument

7    of counsel, I do get why that might be a fairly

8    important deposition.

9           You have a longitudinal history there, so

10   this is not a one-visit doctor.  This is a medical

11   professional who can testify about Mr. Wayman's

12   condition over a certain period of time.  So that

13   gives some more credence to the testimony.

14          Whether there is any evidence of hearing loss

15   with the primary care physician remains to be seen.

16   But what I can read through the tea leaves here is the

17   Defendants are intending to establish during that

18   longitudinal history there is no note of it but no

19   discussion with the doctor, and they can use that as

20   evidence to argue as appropriate.

21          So, for those reasons, I think this case

22   might be a little bit different, and that would be a

23   reason potentially to exceed the six-deposition limit,

24   that the lineup that they have taken so far or have

25   noticed so far does seem to be reasonable and

1   necessary and wasn't a waste of time.

2          Now, as to Mr. Klever, I don't know how

3   important of a witness he is.  But this is a

4   supervisor of, I'm assuming, a job that was

5   Mr. Wayman's most significant employment since he left

6   the military.  And, you know, that would be certainly

7   important on a loss of wage claim, lack of earning

8   capacity, and those kinds of things.

9          And I don't know if the Plaintiffs are going

10  to have a vocational expert.  But certainly, from the

11  Defendants' viewpoint, you would want to make some

12  inquiry into those types of employment issues, if,

13  indeed, all of that is going to be part of the

14  equation of some of the damages in this case.

15         So, you know what, it's a close question.

16  I'll be candid with you, before the hearing I was

17  thinking I wasn't sure all of these witnesses were

18  really necessary or relevant.  But I'm now convinced

19  that there was a reasoned basis for the Defendants to

20  take and/or notice the depositions that we discussed,

21  and therefore, I am going to grant permission to take

22  Mr. Klever's deposition.

23         Also, as part of my decision-making on that,

24  I do note that, you know, Klever does not seem like

25  it's going to be a big deal deposition.  It should be

1    fairly straightforward.  I believe, according to the

2    papers, he's been subpoenaed and/or has agreed to be

3    available before the discovery cutoff.  I guess the

4    deposition is scheduled for Wednesday of this week.

5         So, yes, the parties have to attend and be

6    prepared, but it's probably not going to move the

7    course of history if that deposition goes forward.

8         I do want to footnote, however, you know, we

9    have floating around out there this conservation

10   program manager.  And I know the Defendants don't know

11   at this point who it is or whether they are going to

12   be able to take the deposition of that person.  But

13   it's going to be a pretty steep hill -- if you do

14   identify that person and then you come back in this

15   case again and say, *Oh, by the way, we want to take*

16   *another deposition,* you know, it's going to have to be

17   a pretty compelling argument.  You know, this is going

18   to have to be, for me to really give consideration of

19   that motion, you know, an important witness with a

20   capital I.

21        And, you know, when we get to that, if the

22   Defendants intend to come back and say, *Well, we*

23   *couldn't notice him because we didn't know who it was*

24   *and we now do and, you know, this relates to hearing*

25   *and we would like to take it*, that's probably not

1  going to be a winning argument.  So I just want to

2  foreshadow that to the parties.

3          And then, lastly, as I said, in the *Keefer*

4  case, although this is now the second time that I have

5  granted leave to take a deposition, I really am, as

6  best as possible, looking at these cases on an

7  individual basis.  And this is not establishing some

8  precedent that, you know, just come up with a pretty

9  good argument why would you like to take someone else

10 and that will win the day.

11         Because, as Mr. Buchanan did point out, and

12 I'm sure, if Judge Rodgers was here, she would

13 certainly tell the parties that was a limit set by the

14 Court, and it applies to both sides, and both sides

15 certainly have to live by it and make decisions based

16 on that.

17         In this particular case, however, I am

18 concluding that there is something different or

19 additional about this case that passes the line so

20 that I am going to grant the motion.

21         Mr. Bhimani, anything else on behalf of the

22 Defendants?

23         **MR. BHIMANI:**  No, Your Honor.  Thank you.

24         **THE COURT:**  Okay.  Mr. Buchanan or Mr. Kelly,

25 anything else on behalf of your client?

1          **MR. KELLY:**  No, Your Honor.

2          **MR. BUCHANAN:**  No, Your Honor.  We understand

3   your ruling.  Thank you.

4          **THE COURT:**  Okay.  Thank you all very much.

5   Have a good day.

6          **MR. BUCHANAN:**  Thank you.  Have a good day.

7          *(Proceedings concluded at 2:56 p.m. EST)*

8          --------------------

9   *I certify that the foregoing is a correct transcript*
    *from the record of proceedings in the above-entitled*
10  *matter.  Any redaction of personal data identifiers*
    *pursuant to the Judicial Conference Policy on Privacy*
11  *are noted within the transcript.*

12

13   *s/Donna L. Boland*                          *11-16-2020*
     *Donna L. Boland, RPR, FCRR*                    *Date*
14   *Official Court Reporter*

15

16

17

18

19

20

21

22

23

24

25