**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, | ) ) ) ) ) ) ) ) ) | Case No. 3:19md2885<br><br>Pensacola, Florida<br>November 20, 2020<br>10:09 a.m. |

**EIGHTEENTH CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 1-28)

A P P E A R A N C E S

**JUDGE DAVID R. HERNDON** (ret.)
*dave@herndonresolution.com*

**FOR THE PLAINTIFFS:**     Aylstock, Witkin, Kreis & Overholtz, PLLC
By:  **BRYAN F. AYLSTOCK**
*baylstock@awkolaw.com*

    **JENNIFER HOEKSTRA**
*jhoekstra@awkolaw.com*
17 E Main Street, Suite 200
Pensacola, Florida  32502

Clark Love & Hutson, GP             Seeger Weiss, LLP
By:  **SHELLEY HUTSON**                  By: **CHRISTOPHER A. SEEGER**
*shutson@triallawfirm.com*              *cseeger@seegerweiss.com*
440 Louisiana Street, Suite 1600
Houston, Texas  77002                 **DAVID R. BUCHANAN**
*dbuchanan@seegerweiss.com*
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660

**FOR THE DEFENDANTS:**     Kirkland & Ellis, LLP
By:  **ROBERT C. BROCK**
*mike.brock@kirkland.com*
1301 Pennsylvania Avenue NW
Washington, D.C.  20004

Dechert, LLP                           Kirkland & Ellis, LLP
By: **KIMBERLY BRANSCOME**         By: **MARK J. NOMELLINI**
*kimberly.branscome@dechert.com*    *mnomellini@kirkland.com*
633 W 5th Street, Suite 4900         300 N Lasalle
Los Angeles, California  90071      Chicago, Illinois  60654

Moore, Hill & Westmoreland, PA
By: **LARRY HILL**
*lhill@mhw-law.com*

    **CHARLES F. BEALL, JR.**
*cbeall@mhw-law.com*
350 W Cedar Street, Suite 100
Pensacola, Florida  32502

1          P R O C E E D I N G S

2          **JUDGE RODGERS:**  Good morning.  For a minute I

3    thought y'all were having a party in here without me.

4          So, I think Ms. Simms made everyone aware of

5    what was happening with the audio and the people who

6    are on the telephone and, if your law firm has music

7    that plays during hold, if a call is placed on hold,

8    we were hearing that music.

9          So, we have had to mute the incoming audio

10   from the telephone, which means I won't be able to

11   hear if there is anyone on the telephone who wishes to

12   address the Court.  I apologize for that.  Don't have

13   the same problem with the video.

14          We'll probably need to do this for future

15   calls and future conferences.  And so, I would ask

16   that, if there is any member of either the Defense or

17   the Plaintiffs that you know wishes to address the

18   Court from the telephone, you'll have to let me know

19   that in advance.  It's not usually done, but just on

20   the chance that there is someone who wishes to, I

21   would need to know that in advance.

22          All right.  Welcome again.  We are here for

23   the Eighteenth Case Management Conference in the 3M

24   Combat Arms Earplug Liability Litigation; it is

25   MDL2885.

1          Here in the courtroom for the Plaintiffs I
2    have Mr. Aylstock, Ms. Hutson, Ms. Hoekstra, I believe
3    Mr. Barr is also here, thank you.  For the Defense, I
4    have Mr. Hill and Mr. Beall.  And there are a number
5    of others from 3M's side as well as from the
6    Plaintiffs' leadership side who are appearing by
7    video.
8          I would ask, if you are on video and if you
9    do address the Court, please identify yourself before
10   you speak.
11         Judge Jones, are you present and accounted
12   for?
13   **JUDGE JONES:**  I am.
14   **JUDGE RODGERS:**  There you are.  The video is
15   on a format where I can't see everyone; I only have a
16   few select VIP boxes on the bottom.  And then, as soon
17   as someone speaks, then that person is prominent.
18         So, Judge Jones, you're prominent on the
19   video monitor right now because you were the most
20   recent to speak from the video.
21         Judge Herndon, you're in a VIP box; I see
22   you.
23   **JUDGE HERNDON:**  That's good to know.
24   **JUDGE RODGERS:**  Now you're prominent, very
25   prominent.  I've always known that.

1          Okay.  Let's go through the agenda.  We had

2    our preconference leadership meeting this morning; a

3    number of items were discussed.  The agenda was

4    available for you all to review in advance.

5          The first three items on the agenda overlap;

6    they all relate to government discovery.  And there

7    are, again, a number of subparts to these agenda

8    items.  I'm going to go through and try to give you

9    some specifics.

10         There has been a great deal of work and

11   effort that has been undertaken by the Court, through

12   Judge Herndon, and then the parties and the

13   Government, namely DOJ, in an effort to work through

14   some of the discovery subpoenas that have been issued,

15   in addition to the *Touhy* requests that have been made,

16   but more recently I think there have been efforts to

17   resolve some of the litigation surrounding subpoenas,

18   motions to quash, motions to compel.

19         We've had this discussion before in previous

20   CMCs.  Those discussions continue to be ongoing, and

21   again, a great deal of effort has been put towards

22   trying to resolve those issues without the need for

23   the Court's involvement.

24         Of course, as you know, the Court has had to

25   get involved on a couple of the matters.  I'll talk

1    about that in just a moment; there were some

2    outstanding.  But, again, I do think, with the help of

3    representatives of the Department of Justice, the

4    parties and the Government are working through some of

5    those issues.

6         Speaking of what's pending, there was a

7    motion to quash the deposition of a subpoena for --

8    Teresa, I believe, is her first name, but the last

9    name is Schultz.  And that motion to quash was

10   transferred to our court -- well, actually, the motion

11   wasn't transferred, I should correct that; that's the

12   issue here.  The motion was denied by the Western

13   District of Texas, and then the miscellaneous matter

14   was transferred without a pending motion.

15        So, what's pending now on our docket is the

16   miscellaneous matter.  There is no pending motion

17   associated with that matter.  There is a live subpoena

18   for Ms. Schultz.  And it is going to be, I guess, up

19   to 3M -- 3M, I believe, may amend the notice of

20   deposition for the subpoena and set it for a certain

21   date to see if the deponent shows on that date.  But

22   that's the Schultz matter.

23        There is another matter pending before the

24   Court with the name --

25        **MR. NOMELLINI:**  Murphy.

1       **JUDGE RODGERS:**  William Murphy.  Thank you,

2  Mr. Nomellini.

3       And there was a ruling, an R&R issued.  The

4  Government has objected, and 3M intends to respond to

5  that motion -- and I'm losing my place in my notes --

6  November 30th, I believe, Mr. Nomellini, is the date

7  you've said for response, correct?

8       **MR. NOMELLINI:**  That is correct, Your Honor.

9       **JUDGE RODGERS:**  Okay, very good.

10       There is still an outstanding motion before

11  Judge Jones, a motion to compel records production by

12  the Department of Defense.  I believe that matter is

13  ripe and before Judge Jones.

14       Judge Jones, is that correct?

15       **JUDGE JONES:**  That is correct.  Mr.

16  Nomellini, however, is still having discussions and

17  advised that they will report sometime next week as to

18  whether some or all of that has been resolved.  So I'm

19  holding off until I hear further from 3M on that.

20       **JUDGE RODGERS:**  Okay, very good.  And there

21  is a phone call scheduled today between the parties

22  and the Government, and I think that issue, along with

23  some others, is to be raised and discussed.

24       In addition, I think will also be part of the

25  discussions this afternoon and have been the subject

1    of prior discussions, the parties are trying to work

2    with the Department of Justice on a stipulation

3    regarding some of the motions to quash, with regards

4    to health care providers and, even more particularly,

5    hearing conservation program managers.  Again, we're

6    hoping that that's productive and maybe will resolve

7    some of the motions that are pending.

8         I wanted to update you all about a

9    conversation I had with a Department of Justice

10   representative yesterday.  Her name is Jennifer

11   Dickey.  She is the Principal Deputy Assistant

12   Attorney General over the civil division.  She has

13   oversight responsibility for many things, many other

14   cases and litigation matters, but also ours included.

15   And it was a good discussion with her.

16        What I wanted to talk with her about was the

17   delay in receiving the records production from the

18   Department of Defense on both personnel records as

19   well as the DOEHRS data, which are the audiograms, for

20   what we have always called the 1%, which is no longer

21   1%, but it's roughly the 1500 cases in addition to the

22   bellwether cases.

23        And you have heard me say before at other

24   CMCs, I have updated you on discussions that I have

25   had with the DOJ and the DoD, most notably, Maj.

1    Nicole Kim, who has been so helpful and has worked so

2    hard for the DoD to get records produced.  But we just

3    haven't had an update lately, and it seems like things

4    have stalled, and so that's why I wanted to talk to

5    Ms. Dickey.  She assured me she would get with her

6    team and would see if she could determine what the

7    holdup was as far as the records production for those

8    1500 or so cases.

9         The DoD records production for the bellwether

10   cases, including the personnel files as well as the

11   audiograms or the DOEHRS data, has been complete since

12   April.  And we haven't had any rolling production with

13   the 1500, and so I'm hoping that something shakes

14   loose there and we start to see some production.

15        I was told by Ms. Hoekstra, who has been in

16   discussions with Jacqui Snead -- you've heard her name

17   before, she's at the DOJ -- that there may be

18   production of personnel files for some number of

19   plaintiffs, presumably within this 1500 group; that

20   these personnel files are on a CD, and I believe

21   they're hoping to have those produced by Thanksgiving,

22   is what we've been told.

23        But we don't know how many plaintiffs'

24   records -- or the records for how many plaintiffs are

25   contained on these CDs.  So that's important to find

1    out.  And there's really been no information on the

2    DOEHRS data.

3         The DOEHRS data, the audiograms of the

4    military members, for obvious reasons, is very

5    important data points or information for both sides to

6    the litigation.  So, we're hoping -- again, we have

7    them for the bellwether plaintiffs, so we're hoping to

8    get them for the 1500.

9         I'm still trying to move as best I can the

10   Government beyond the 1500.  That has been, I guess, a

11   more difficult conversation to have because of, I'm

12   sure, resources and the shortage of resources within

13   the Government agencies as well as the pressures and

14   challenges that we all know everyone has been

15   presented with, but the Government, I'm sure, in a big

16   way as far as COVID.

17        I am still attempting to have those

18   discussions with the Government and move past the

19   1500, but for now we're still focused on the 1500.

20        With that said, the Plaintiffs have continued

21   to submit *Touhy* requests for individual plaintiffs

22   beyond the 1500.  And I have, along those lines,

23   entered Privacy Act orders for those plaintiffs.

24        I'm not sure of the number that is in excess

25   of the 1500.  Ms. Hoekstra is going to present me with

1   a spreadsheet that's going to tell me that.

2           We have done this because, as you know, no

3   plaintiff is going to receive any records from the

4   Government through this litigation absent the *Touhy*

5   process.  I mean, that's the discussions we have had

6   with the Government, and we have agreed to this --

7   what we had all hoped would be an orderly and

8   efficient process.

9           And so there is a stack of *Touhy*

10  requests/Privacy Act orders that are with the

11  Government both on the VA side as well as the DoD

12  side.  I just don't know the number yet.  But that's

13  only going to increase.  At last count -- I believe I

14  had an update from Mr. Sansom either yesterday or the

15  day before -- 221,000 plaintiffs, I believe, is the

16  most recent case count.  So I'll continue to keep you

17  updated on our efforts to obtain the records as we

18  have been doing.

19          There was an issue that was raised and it was

20  -- no real substantive discussion about it.

21  Apparently there was a deposition that was ordered to

22  go forward for a Dr. Donaldson, and there was some

23  issues during the deposition.

24          Dr. Donaldson -- there were objections by a

25  Government lawyer, probably an AUSA, and Dr. Donaldson

1    was instructed not to testify to a number of different

2    questions.

3           3M has raised the issue just to let me know

4    that there may be a need to bring this to the Court's

5    attention for a ruling on the possibility that the

6    Government's position may not change with regard to

7    other deponents.  And that's really all that was said.

8    I didn't want to go any further with that discussion;

9    the Government was not present.

10          And so, if need be, that will be briefed

11   before the Court and the Government given an

12   opportunity to respond or address the issues; will

13   likely be an issue that Judge Jones would handle.

14          I did ask that this be raised today with the

15   Government in the afternoon call.  So that should be

16   part of those discussions, and maybe it won't be

17   necessary to bring it to the Court.

18          There is a stipulation that's been submitted

19   to the DOJ, specifically to Gary Feldon -- you've

20   heard me mention his name before -- regarding the

21   supplementation for the VA records and the production

22   for the bellwether cases.  That's pending.  It's still

23   in discussions, but I do expect there will be a

24   stipulation soon on that supplementation.

25          As soon as that happens, then I would expect

the stipulation would apply to the other three groups

as well, B, C, and D.  This stipulation pertains to

Group A.

Let me stop for a minute and ask both sides,

anything else that you feel needs to be brought up as

far as the Government discovery and any update with

that?

Mr. Aylstock?

**MR. AYLSTOCK:**  Not from the Plaintiffs, Your

Honor.  I think you've covered it.

**JUDGE RODGERS:**  Mr. Hill?

**MR. HILL:**  No, Your Honor.

**JUDGE RODGERS:**  There is the outstanding

issue of consolidation of the five Group A cases for

trial.  And the parties have presented a briefing

schedule to me for consideration; it is fine with me.

This is the schedule you'll see in my order.

The Plaintiffs' opening brief -- which the

Plaintiffs, obviously, are a proponent of

consolidation of some form; their brief is due

December 7th.  It is limited to 20 pages with one

caveat I'll address in a minute.

The Defendants' responsive brief is due

12/15.  That is to be limited to 25 pages.

The Plaintiffs' reply is due on the 22nd of

December, and the agreement is 12 pages; however, they
can have up to 15 pages.  But whatever amount they
exceed 12 they lose on their opening brief.  So, if
they wanted to have 15 -- Plaintiffs -- for their
reply brief, then they get 17 for their opening brief.

And I have not yet decided whether there will
be oral argument on the issue of consolidation.  I'll
decide that once I see the initial briefs.

I did, however, clarify this morning earlier
that these briefs should be very specific as far as
the cases that are at issue and why it makes sense to
one side or doesn't make sense to the other side that
specific cases should or should not be consolidated
based on the facts of those cases and what are known
about the issues in those cases.

The next item on the agenda really -- it's
part of the Government discovery update, I should have
discussed it in connection with the first three items,
and I did in some respects -- pertains to the DOEHRS
data for the 1500.

And again, I have requested Ms. Hoekstra to
provide a spreadsheet to me that will identify all the
plaintiffs for whom a *Touhy* request has been submitted
to the DoD.

I do continue to feel strongly that we have

1  got to move beyond the 1500 and the bellwethers, so

2  I'll continue to talk to the Government about that.

3         Item No. 6.  There was a pending motion to

4  compel vocational examination of the plaintiffs.  I

5  ruled and entered that ruling this morning.  The

6  motion has been denied, and it is on the docket, that

7  ruling.

8         Items 7 and 8 pertain to expert depositions

9  and scheduling.  And that is really heating up, and I

10  don't mean in terms of dispute, not at all.  Nothing

11  could be further from that.  The parties have worked

12  very hard and diligently in getting these expert

13  depositions scheduled, and I'm impressed with those

14  efforts.  It's a very aggressive schedule for both

15  sides.

16         I did agree to -- well, let me stop.  Right

17  now the deadline for all expert depositions to be

18  completed is the 23rd of December.  I have agreed to

19  extend that date to the 31st.

20         And that's still going to be a very

21  aggressive endeavor for all concerned.  But I'm told

22  that the parties believe that they can accomplish it

23  within that one-week-or-so extension, with the

24  exception of possibly one Defense expert, and the

25  parties are going to work to try to get that scheduled

1    before the 31st.  If not, I have agreed to an

2    extension to January 4th to accommodate the need to

3    possibly depose that one Defense expert by the

4    Plaintiffs.

5              The parties are working -- sticking with the

6    expert deposition matters, they're working on a

7    protocol for the expert depositions.  It sounds like

8    they're working well on that.  It hasn't been

9    presented to the Court yet for adoption.  There might

10   be a few lingering issues that need to be worked out,

11   might even need to be addressed by the Court.  But the

12   parties assure me they are working towards that

13   protocol and hopefully without the Court's

14   involvement, if possible.

15             All right.  Anything else, Mr. Aylstock,

16   regarding the expert depositions and scheduling that

17   needs to be discussed?

18        **MR. AYLSTOCK:**  No, Your Honor.  We

19   appreciate --

20        **JUDGE RODGERS:**  I would expect that depo

21   protocol to apply to the other groups, obviously.

22        **MR. AYLSTOCK:**  That's the idea, Judge.  We

23   hope to get there.  If not, we can certainly bring any

24   issues to the Court.  But we had a very productive

25   call, as Ms. Branscome indicated in the preconference,

1  yesterday on that, with Judge Herndon's assistance.

2  **JUDGE RODGERS:**  Very good.  Thank you.

3  Mr. Hill, anything?

4  **MR. HILL:**  No, Your Honor.

5  **JUDGE RODGERS:**  The next item on the agenda

6  pertains to the scheduling of Defense medical exams

7  for the Group B plaintiffs.  I guess those have not

8  been calendared yet and the locations have not yet

9  been determined.  But the Plaintiffs are hoping that

10  that can be done quickly, and Ms. Branscome assures me

11  that it will be.

12  As far as the other two groups and the

13  scheduling of the DMEs for those plaintiffs, I am

14  going to ask that those be set -- the locations

15  determined and the dates set two weeks before the

16  Plaintiffs' expert disclosures are due.

17  We do have a protocol in place for these

18  medical exams, at least for Group A.  I presume it

19  would apply to the other groups as well.  To the

20  extent there is a need for clarification or there is

21  an issue that the parties are having regarding

22  protocol that's not addressed in that order, then

23  that's something that needs to be presented to the

24  Court quickly.  We need to know what that is and get a

25  ruling out on that.

1    **MS. BRANSCOME:** Your Honor, I wanted to start

2    with a clarification question. We don't have any

3    problem identifying locations and scheduling the exams

4    early in the process for Groups C and D. But we do

5    believe that the exams themselves should occur after

6    the disclosure of the Plaintiffs' expert reports.

7    That's how it's worked for Groups A and B.

8         And the reason why that's important is that

9    we often learn for the first time in the Plaintiffs'

10   expert reports specific allegations that they are

11   making about the nature of the plaintiff's injuries,

12   and that can influence which specific tests among the

13   protocol are conducted and may even influence the way

14   in which that data is collected or interpreted.

15   That's how it's been for Groups A and B.

16        I would also note that historically in the

17   Group A plaintiffs -- I don't know yet whether it's

18   true for Group B -- the Plaintiffs' experts themselves

19   have actually conducted their own exams, and so, the

20   exams by the Defense experts are also responding to

21   the Plaintiffs' exams. If we were to conduct those

22   exams before the Plaintiffs' expert reports are

23   disclosed, we would then not be able to respond to the

24   exams before our experts render their reports, for

25   example, if the Plaintiffs' experts conducted a

specific type of test, something along those lines.

So we are happy to set dates and locations early in the schedule. And I wasn't sure, when Your Honor was saying the two-week deadline, whether that was simply to get them scheduled or that you had the intention that the exams would occur before the disclosure of the Plaintiffs' reports; and for the reasons I articulated, we would be opposed to that.

**JUDGE RODGERS:** Two comments, and then I'll hear from Mr. Aylstock.

One is, I was only -- the discussion this morning really was focused on location and dates. So, if there is a broader discussion that needs to take place, then we can have that now; we didn't this morning.

Also, second comment is, I understood from prior -- I don't know if it's a leadership call or a prior CMC -- that you all had agreed to the sequencing.

**MS. BRANSCOME:** That's correct, Your Honor. And the sequencing is that the exams occur after the Plaintiffs have issued their reports. That's our current --

**JUDGE RODGERS:** So, if there is an agreement, I don't know that we need to have the bigger

1    discussion.  But let me hear from Mr. Aylstock.

2         **MR. AYLSTOCK:**  Thank you, Your Honor.  In

3    Group A, the request for medical examination by the

4    Defendants came very late in the process; in fact, it

5    was after the close of discovery.

6         In the course of our meet-and-confer, we

7    raised the fact that the rule provides for the DME,

8    Rule 35, but, of course, that rule dictates that it be

9    done within the discovery period.  And that's for good

10   reason.  Because, if there is a DME done, the

11   Plaintiffs' expert should have the benefit of that

12   when making a fulsome opinion.

13        We, through the meet-and-confer process, went

14   ahead and said, well, we're not going to stand on that

15   for Group A, and we'll go ahead and do that.  But that

16   agreement was for Group A.  The discussion since then

17   is let's get these done so that the Plaintiffs'

18   experts can have whatever is out there.  It is not the

19   case that every Plaintiffs' case-specific expert will

20   examine every plaintiff.

21        **JUDGE RODGERS:**  Let me stop just a minute.

22   Group B, your disclosures are due today.

23        **MR. AYLSTOCK:**  Well, and that's why we were

24   asking and have asked now for a while can you go ahead

25   and get these scheduled.  It's just because of

1  everything going on it didn't get done.  But that's

2  what I was referring to in chambers was, we'd like

3  them done and we'd like the results so that our

4  experts can have the benefit of them pursuant to the

5  way that it works under the Federal Rules of Civil

6  Procedure before their expert reports and within the

7  discovery period.

8          **JUDGE RODGERS:**  Well, it seems to me that

9  Group A and B, I mean, it's moot, that issue --

10          **MR. AYLSTOCK:**  That horse is out of the barn.

11          **JUDGE RODGERS:**  -- is moot, right.

12          So, as to C and D, then I think you all -- it

13  sounds like you have a dispute.  Ms. Branscome is

14  saying they object to that sequencing.

15          And so, I think you need to both file your

16  positions, and either Judge Jones or I will decide the

17  issue.  But it needs to be done quickly.  I don't have

18  the C schedule in my head, but it's probably --

19          **MR. AYLSTOCK:**  We'll tee it up promptly.  I

20  have the schedule here but not in my head.

21          **JUDGE RODGERS:**  Well, I have it, too, but I

22  don't know where we are.  I may only have A and B.

23          **MS. BRANSCOME:**  We can get it teed up.

24          **JUDGE RODGERS:**  Okay.  Well, I would ask that

25  you do tee it up.

1              What is the deadline for fact discovery

2    cutoff for C?

3              **MS. BRANSCOME:**  I believe it's the end of

4    January, but I don't know if Mr. Aylstock has the

5    specific date handy.

6              **MR. AYLSTOCK:**  I'm looking at PTO 46, which

7    has it for Friday, February 5th.  So we do have some

8    time but not -- you know, it's the holidays and

9    experts so --

10             **JUDGE RODGERS:**  Right, I know, and you all

11   are very busy, I understand that.  And while I don't

12   want to add to your plate, I think, if you're asking

13   for our assistance here, then you'll have to get it to

14   us.  Because, at some point, we're going to pass that

15   -- you have got to give us time to rule.

16             **MR. AYLSTOCK:**  Yes, Your Honor.

17             **JUDGE RODGERS:**  And we're going to be past

18   your deadline, and then it's going to be moot for C as

19   well.

20             **MR. AYLSTOCK:**  Yes, Your Honor.  Perhaps if

21   we could have until next Friday to maybe do just

22   simultaneous -- I don't think it's a long brief, just

23   five pages each or something like that just to tee up

24   the issue.  It's fairly straightforward, in our view.

25             **JUDGE RODGERS:**  Well, why don't I give you

1    until the 30th.

2          **MR. AYLSTOCK:**  We'll take it, Judge.

3          **JUDGE RODGERS:**  So that's a Monday.

4          **MR. AYLSTOCK:**  Yes, I forgot next week is

5    Thanksgiving.

6          **JUDGE RODGERS:**  Yes.  I won't be here to rule

7    on it on Friday, and I don't think Judge Jones will

8    either, so how about the 30th, and I think

9    simultaneous briefs are fine.

10         **MS. BRANSCOME:**  That seems fine.  I also

11   think we might be able to meet and confer about this.

12   This is the first that we are hearing of this request

13   from the Plaintiffs.  And we were very successful in

14   working out the agreement for the first, you know,

15   Group A, so perhaps we might have some success; and if

16   we don't, we will submit briefing by the 30th.

17         **JUDGE RODGERS:**  Okay, very good.

18         **MR. AYLSTOCK:**  Thank you, Judge.

19         **JUDGE RODGERS:**  Thank you both.

20         The final item on the agenda pertained to the

21   scheduling of supplemental ESI disclosures and

22   production for the bellwether cases.

23         I told the parties that the supplementation

24   for Group A -- well, they have actually agreed to

25   this, I just went ahead and adopted their agreement --

1    that it's due January 19th.

2         And then, they're going to be working on an

3    agreement for B, C, and D.  And if the parties can't

4    reach an agreement, then they will bring the matter to

5    Judge Jones.

6         I think there was an issue about the trial

7    dates as far as Group D and wanting to know what those

8    were before setting the supplementation dates.  If you

9    all can't work that out and reach an agreement, then

10   you'll raise that with Judge Jones.

11        Anything else, Mr. Aylstock, from the agenda?

12        **MR. AYLSTOCK:**  The only other thing is you

13   had given the parties some potential dates for CMCs;

14   and we have checked with our side, and any of those

15   dates are fine with us.

16        **JUDGE RODGERS:**  I have those.  But from the

17   agenda that you all presented, was there anything

18   else?

19        **MR. AYLSTOCK:**  No, Your Honor.

20        **JUDGE RODGERS:**  Mr. Hill, from your side,

21   anything else?

22        **MR. HILL:**  No, Your Honor.  Thank you.

23        **JUDGE RODGERS:**  On the video?

24        **MR. BROCK:**  No, Judge.  Thank you.

25        **JUDGE RODGERS:**  Thank you.

1          Then, a couple of additional items.  As Mr.

2     Aylstock just referenced, I did present some proposed

3     dates for CMCs the first three months of the year.

4     The Plaintiffs have told me that they are good with

5     those dates.  However, there was an option or a choice

6     in January, the 21st or 22nd, February 19th, and March

7     19th.

8          Are either of those days good for you in

9     January?

10          **MR. AYLSTOCK:**  Yes, Your Honor.  I guess if

11    we had our druthers, Friday seems to work out better;

12    but I know Your Honor had something that date, and

13    Thursday is fine, too.

14          **JUDGE RODGERS:**  I think I can move what I

15    have to later in the afternoon, so that shouldn't be a

16    problem.  But thank you.

17          And, Mr. Brock, you're going to tell me on

18    Monday?  You're going to get with your team and let me

19    know if those dates work for y'all?

20          **MR. BROCK:**  Correct, hopefully this

21    afternoon.

22          **JUDGE RODGERS:**  Okay, very good.

23          So, in the order that I enter following the

24    CMC, I will reference these dates once I hear back

25    from 3M.

1      **MR. BROCK:**  Thank you.

2          **JUDGE RODGERS:**  We have the choice of law

3    hearing December -- well, the oral argument is on

4    December 3rd.  I believe that's our next scheduled

5    event in the courtroom, I believe.  And those

6    presenters will be here live for the oral argument.

7    The briefing is due on the 23rd.

8          Judge Jones, is there anything --

9          **JUDGE JONES:**  I have nothing further to add.

10         **JUDGE RODGERS:**  Okay.  Thank you.

11         Judge Herndon?

12         **JUDGE HERNDON:**  Nothing further.  Thank you

13   very much.

14         **JUDGE RODGERS:**  All right.  Well, as always,

15   I thank you both for helping us to continue this train

16   moving.

17         Anything else from anyone here in the

18   courtroom?

19         **MR. AYLSTOCK:**  No, Your Honor.

20         **MR. HILL:**  No, Your Honor.

21         **JUDGE RODGERS:**  One thing.  I did not get an

22   update from Mr. Paul.  He may be on the telephone.

23         I have -- Mr. Burns, you have just removed

24   your mask; I'm assuming you may have something you

25   want to --

1           **MR. BURNS:**  Your Honor, Mr. Paul is on the

2      phone.  Because the music stopped and he was able to

3      hear, so he can participate now.

4           **JUDGE RODGERS:**  Okay, thank you.

5           Mr. Paul?

6           **MR. PAUL:**  Yes, Your Honor, I'm here.

7           **JUDGE RODGERS:**  Okay, good.  So I just wanted

8      to -- I didn't want to forget to ask you if there was

9      anything that you would like to make me aware of as

10     far as the state court litigation.  I do appreciate

11     you keeping us abreast of what's happening in that

12     litigation in Minnesota.

13          I'm having a little bit of trouble with

14     feedback.

15          Is there anything specific you would like to

16     make me aware of?

17          **MR. PAUL:**  No, Your Honor.  I think we're

18     still on the schedule that the Court has entered, and

19     we're moving forward on that.  I didn't provide an

20     update to the Court on this past Monday because there

21     hadn't been anything.  I suspect there will be, and

22     we'll continue to update the spreadsheet of cases so

23     that you know what the status of all that is.  But

24     otherwise, I think we're working according to the

25     schedule and following closely behind the MDL here.

1    **JUDGE RODGERS:**  All right, Mr. Paul.

2    Mr. Paul, let me ask one other question.  Do you have

3    any cases pending in the MDL?

4    **MR. PAUL:**  I do, I have a lot of cases in the

5    MDL.

6    **JUDGE RODGERS:**  Okay.  I wasn't sure.  I

7    meant to check on that earlier in the week and have

8    just forgotten to do that.  Okay, thank you.

9    Anything from anyone else?

10   *[No response.]*

11   If not, I hope you all have a nice

12   Thanksgiving holiday and safe Thanksgiving holiday.

13   And our next CMC, by the way -- I did not

14   mention that -- is December 17th.  So I will see you

15   all then, if I don't see you at the oral arguments on

16   the 3rd.

17   **(Proceedings concluded at 10:47 a.m.)**

18   ---------------------

19   *I certify that the foregoing is a correct transcript*
     *from the record of proceedings in the above-entitled*
20   *matter.  Any redaction of personal data identifiers*
     *pursuant to the Judicial Conference Policy on Privacy*
21   *are noted within the transcript.*

22

23   *s/Donna L. Boland*                    *11-20-2020*
     *Donna L. Boland, RPR, FCRR*               *Date*
24   *Official Court Reporter*

25