## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-2885 |
| | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |
| | ) | |
| This Document Relates to All Cases | ) | **CONFIDENTIAL - FILED** |
| | ) | **UNDER SEAL** |

## <u>DEFENDANTS' BRIEF REGARDING</u>
## <u>CHOICE OF LAW FOR GROUP A PLAINTIFFS</u>

The choice-of-law issues facing this Court are not typical. In many cases, there is a strong argument to apply the law of the state where a plaintiff acquires, uses, or is injured by an allegedly defective product. This litigation is not like most cases. Here, *none* of those events took place within the jurisdiction of *any* state. The plaintiffs acquired, used, and were allegedly injured by the CAEv2 in places subject to exclusive federal jurisdiction—military bases and foreign combat theaters.

Because there is no federal tort law, the law of some state must apply to these cases. For injuries allegedly sustained on domestic military bases, a federal statute provides an easy answer. Under 28 U.S.C. § 5001(b), the law of the state where the base is located applies. Neither § 5001(b) nor any other federal statute provides an answer for injuries allegedly sustained by plaintiffs overseas. Under such circumstances, the only state with any significant ties to the dispute—and thus the

only state whose law can apply consistent with the Due Process Clause—is Indiana. This is the state where Aearo is headquartered and where all of the allegedly wrongful conduct related to the design and testing of the CAEv2 occurred.

Defendants thus respectfully request that the Court apply the law of Indiana for the cases brought by Dustin McCombs, Stephen Hacker, Lewis Keefer, and Lloyd Baker—because they sustained alleged injuries in foreign countries. The parties agree that the law of Georgia applies to the case of Luke Estes, who sustained his alleged injury at Fort Benning.

## ARGUMENT

The crucial question for the Court's choice-of-law analysis is where each plaintiff sustained his alleged injuries. This is a fact question, but it is appropriate for a judge, and not a jury, to resolve fact questions that bear on the choice-of-law analysis. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1160-61 (N.D. Cal. 2016) (collecting authority).

With plaintiffs who used the CAEv2 in the military, there are only two possible places of injury: either the plaintiff was injured on a domestic military base, or he was injured while serving in one or more foreign countries.

If the plaintiff was injured on a domestic military base, then 28 U.S.C. § 5001(b) dictates that the law of the surrounding state controls. The statute provides that "[i]n a civil action brought to recover on account of an injury sustained in" "a

place subject to the exclusive jurisdiction of the United States within a State" "the rights of the parties shall be governed by the law of the State in which the place is located." It is well settled that 28 U.S.C. § 5001(b) applies to tort suits arising from injuries on domestic military bases, which are "place[s] subject to the exclusive jurisdiction of the United States" located "within a State." *See La. United Bus. Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F. Supp. 3d 852, 863-864 (W.D. La. 2015) (applying the statute and collecting cases). The statute does not apply, however, to military installations or operations in foreign countries, which are not located "within a State." *See Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 655-56 (W.D. Pa. 2011) (declining to apply the identical predecessor statute to an injury that occurred in Iraq).

In cases where the plaintiff sustained his alleged injuries overseas, the Court should apply the choice-of-law rules of the court where the plaintiff would have brought his case if not for inclusion in this multidistrict proceeding. *See Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 496 (6th Cir. 2015). Here, as discussed in greater detail below, the rules of any forum will lead to the same conclusion: the law of Indiana, the state where all the allegedly wrongful conduct took place, applies to claims arising from overseas injuries. Indeed, the Due Process Clause *requires* that outcome. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant

aggregation of contacts [with the dispute], creating state interests." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) (plurality opinion)). No state other than Indiana has *any* interest in these cases, which involve plaintiffs who used the product overseas or on federal land—while serving in the United States military. No events relevant to these cases took place within the jurisdiction of any state other than Indiana, and thus no other state's law can apply.

## I.     Dustin McCombs — Indiana Law

### A.     McCombs Sustained His Alleged Injury In Afghanistan.

McCombs's alleged injury indisputably occurred in Afghanistan. McCombs is only pursuing a claim for tinnitus. He has disclaimed any allegation that he suffers from hearing loss. (*See* Ex. 1, Supplemental Response to Interrogatory 47 7/5/20 ("[Plaintiff] does not suffer hearing loss."); Ex. 2, McCombs Dep. Tr. at 207:11-208:15.) McCombs testified that his tinnitus began "[i]nstantly" after a blast from an improvised explosive device ("IED") in Afghanistan on April 23, 2009. (*See* Ex. 2, McCombs Dep. Tr. at 211:9-212:18. (Q: "Prior to the IED blast, had you ever heard the ringing in your ears as you describe it? A: No, not that I can recall." Q: "And how soon after the IED blast that occurred on April 23, 2009 … did you begin to hear the ringing in your ears?" A: "Instantly.").) McCombs's expert witness has opined that his tinnitus was subsequently aggravated by another incident in

Afghanistan, when his truck was struck by a rocket-propelled grenade.  (*See* Ex. 3, Arriaga Report at 4.)

Despite this unambiguous record that McCombs sustained the injuries that led to his tinnitus in Afghanistan, Plaintiffs now maintain that he was injured in Alaska. McCombs served at Fort Richardson in Alaska from August 2008 until his deployment to Afghanistan in March 2009, and then returned to Fort Richardson from March 2010 to July 2011.  (*See* Ex. 2, McCombs Dep. Tr. at 415:15-19.) McCombs alleges that he used the CAEv2 at Fort Richardson, but there is no evidence that he suffered injuries to his hearing there.  On the contrary, McCombs has testified that his tinnitus began after a specific incident in Afghanistan.  There is no good-faith basis to suggest that the milder noise exposures that McCombs experienced at Fort Richardson, and not the IED and RPG blasts identified by McCombs and his expert witness, were the cause of his tinnitus.

Because McCombs sustained his alleged injury overseas, 28 U.S.C. § 5001(b) does not apply.  *See Harris*, 796 F. Supp. 2d at 655-56.  The choice-of law rules of Minnesota, the state where McCombs would have brought his case if not for the MDL, therefore govern his case.  (*See* Dkt. 4 (designating the District of Minnesota as his chosen forum).)

**B.      Indiana Law Applies Under A Minnesota Choice-of-Law Analysis.**

In Minnesota, the first question in any choice-of-law analysis is whether there is a genuine conflict between the state laws proposed by the parties. *See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000) (en banc). Here, there are a number of substantive conflicts between Indiana and Alaska law, including statutes of repose[1] and limits on punitive damages.[2]

After determining there is a conflict, the court must "ensure that each state has significant contacts so that its law can be constitutionally applied." *Id*. at 94 n.2. The Due Process Clause prevents the application of a state's law unless the state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818 (quoting *Hague*, 449 U.S. at 312-13); *see also Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001).

Alaska has *no* significant contacts with McCombs's case. McCombs was never domiciled in Alaska. When he lived in the state, he was stationed at Fort

---

[1] *See* Alaska Stat. 09.10.055(b) (exempting product-liability actions from the statute of repose); Indiana Code 34-20-3-1 (providing that "a product liability action must be commenced … within ten (10) years after the delivery of the product to the initial user or consumer").

[2] *See* Alaska Stat. 09.17.20(f) (providing that punitive damages are capped at three times compensatory damages or $500,000, whichever is higher); Indiana Code 34-51-3-4 (capping punitive damages at three times compensatory damages or $50,000, whichever is higher).

Richardson, a federal enclave. *See In re Porvaznik*, 456 B.R. 738, 740 (Bankr. M.D. Pa. 2011) ("The domicile of a soldier or sailor … generally remains unchanged … by being temporarily stationed in the line of duty at a particular place.") (internal quotation marks and citation omitted); *Restatement (Second) of Conflict of Laws* § 17 (1971) ("A person does not acquire a domicile of choice by his presence in a place under physical or legal compulsion."). McCombs's use of the CAEv2 in Alaska took place entirely at Fort Richardson, which is subject to exclusive federal jurisdiction. Alaska has no power to regulate the military equipment that soldiers use on those bases, nor does it have any interest in doing so. *See Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012) (noting that "Congress has exclusive legislative authority over [federal] enclaves).[3] There are *no* events relevant to McCombs's case that took place within Alaska's jurisdiction.

Because Alaska has no contacts with the McCombs case, application of its law would violate the Due Process Clause. Plaintiffs' proffered choice of law is thus impermissible, and the law of Indiana—which, as the home of Aearo and the place where the allegedly wrongful conduct occurred, indisputably has significant contacts with the case—applies by default.

---

[3] Had McCombs been injured at Fort Richardson in Alaska, then Alaska law would apply as a matter of *federal* law under 28 U.S.C. § 5001(b). But as discussed above, McCombs has testified that he was injured in Afghanistan, not at Fort Richardson.

Proceeding through the rest of the Minnesota choice-of-law analysis confirms that Indiana law should apply to McCombs's case.  Minnesota has adopted the "significant contacts" test for choice-of-law analyses.  *Nodak*, 604 N.W.2d at 94. Minnesota courts consider five factors when applying the significant contacts test. *See id*.  The purpose of these factors is "to prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law."  *See Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W.2d 467, 470 (Minn. 1994) (en banc).  The Minnesota Supreme Court has cautioned that courts should not seek "mechanical rules" or "superficial factual analogies between cases," and should instead "wrestle with each situation anew."  *Id*.

Two of the five factors—the predictability of the result and simplification of the judicial task—"have little value in tort cases," and a third factor—the application of the better rule of law—"does not appear to carry much weight" in any choice-of-law analysis.  *Burks v. Abbott Labs.*, 639 F. Supp. 2d 1006, 1013 (D. Minn. 2009). There are, then, just two factors for the Court to consider: (1) "maintenance of the interstate order"; and (2) "advancement of the forum's governmental interest."  *Id*. (internal quotation marks and internal citation omitted).  Both favor Indiana law.

### i      The "Maintenance Of The Interstate Order" Factor Favors Indiana Law.

Under the "maintenance of the interstate order" factor, Minnesota courts assess whether the application of a particular state's law would "manifest disrespect"

for the sovereignty of another state with a greater interest in the dispute. *Nodak Mut. Ins. Co.*, 604 N.W.2d at 95 (quoting *Jepson*, 513 N.W. 2d at 471). The factor is meant to ensure that "the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.*

No state has a meaningful interest in this litigation other than Indiana, where Aearo was located and where all of the allegedly wrongful conduct took place. All of the other events relevant to McCombs's case (or any case involving a military plaintiff, for that matter) took place in locations where no state has any regulatory authority—specifically, on military bases and in foreign countries. McCombs obtained pairs of the CAEv2 at Fort Benning in Georgia, Fort Richardson in Alaska, and while serving in Afghanistan. (Ex. 1, Supplemental Responses to Interrogatory Nos. 27, 29 7/5/20.) He used the CAEv2 only on the bases where he was stationed and during his service in Afghanistan. This is not a typical tort case, where the state or states where the plaintiff purchased the product and where the accident took place would have some interest in the litigation. *See, e.g.*, *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620-21 (8th Cir. 2001). The plaintiffs here did not acquire or use the CAEv2 within the jurisdiction of *any* state.

The choice of any law other than Indiana, then, would be disrespectful to Indiana's sovereign right to regulate the companies that do business within its borders. All of the supposedly negligent decisions regarding the design, testing,

labeling, and marketing of the CAEv2 that are at issue in this case occurred at Aearo's headquarters and research laboratory in Indianapolis.  Indiana has a substantial interest in regulating Aearo's conduct, and because Aearo's conduct did not have *any* alleged effects within the jurisdiction of *any* other state, Indiana's interest is clearly predominant.  In a case like this one, where a military plaintiff used an allegedly defective product on federal military bases or overseas, "the place where the product was designed and manufactured" has by far the greatest interest in applying its law.  *See Norwood v. Raytheon Co.*, 604 F. Supp. 2d 961, 966 (W.D. Tex. 2009) (internal quotation marks omitted).

### ii.   The "Advancement Of The Forum Government's Interest" Factor Favors Indiana Law.

Consideration of this factor requires analysis "not only of Minnesota's governmental interests" as the forum state, but also "the relative policy interests" of the other states whose laws are at issue.  *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995) (internal quotation marks and citation omitted).  Minnesota has a recognized interest in compensating tort victims, but that interest is "lessened where," as here, "the injury occurred in another state, the injured party is not a Minnesota resident and did not receive medical care here."  *Schmelzle v. ALZA Corp.*, 561 F. Supp. 2d 1046, 1050 (D. Minn. 2008).  There is thus no basis to select Alaska law rather than Indiana law simply because Alaska law might allow for a

greater recovery. Indiana law has by far the greatest interest in this litigation, and its law therefore applies.

## II.    Stephen Hacker — Indiana Law

### A.    Hacker Sustained His Alleged Injuries in South Korea.

There is little evidence that Hacker's alleged injuries actually resulted from the limited noise exposure he experienced during his military service. The more likely causes of Hacker's alleged tinnitus and mild hearing loss are his diagnosed otosclerosis or facial nerve abnormalities. Indeed, Hacker has conceded that his hearing loss in his right ear was not caused by noise exposure. (*See* Ex. 4, Spankovich Report at 12.) And although Hacker claims to have a mild hearing loss in his left ear at 6000 Hz, (*see id.*), his unusually high hearing threshold at 6000 Hz dates to before his military service. In fact, two 2018 audiograms show Hacker with a *lower/better* threshold at 6000 Hz in his left ear than when he entered the military in 1998. (*Compare* Ex. 5 at 2 *and* Ex. 6; *with* Ex. 7.)

Hacker's tinnitus is, therefore, the only alleged noise-induced injury that he could plausibly claim to have sustained while using the CAEv2. The record indicates that Hacker developed his tinnitus overseas. Hacker acquired the CAEv2 at Fort Bliss in Texas, shortly before he deployed to Kuwait in November 2002. (Ex. 8, Hacker Dep. Tr. at 84:5-13; Ex. 9 at 147, 149.) He used the CAEv2 during his six-month tour in Kuwait. (Ex. 10, Third Supplemental Response to Interrogatory

No. 26. 7/9/20.)  Hacker continued using the CAEv2 at Fort Bliss in Texas from May 2003 to April 2005, when he was transferred to South Korea.  (Ex. 9 at 149; Ex. 8, Hacker Dep. Tr. 141:25-143:19.)  Hacker continued wearing the CAEv2 in South Korea, and then moved on to Fort Campbell in Kentucky in February 2006.

Hacker dates the onset of his tinnitus to early 2006, at the end of his ten months of service in South Korea.  Hacker stated in his initial disclosures that his "injury date" was "approximately the beginning of 2006."  (Ex. 11, Supplemental Initial Disclosures at 18.)  Hacker's medical records show that he first reported tinnitus on April 3, 2006, during an examination at Fort Campbell.  Hacker testified that his tinnitus began "at least a few months before" he first reported it on April 3, 2006. (Ex. 12; *see* Ex. 8, Hacker Dep. Tr. at 130:12-20 ("I don't believe that I just started suffering [from tinnitus] the day I complained about it.").)  Hacker was stationed in South Korea until February 11, 2006, so he was still in South Korea "a few months before" April 3, 2006, or, in other words, the "the beginning of 2006."  According to Hacker's own testimony, then, his tinnitus began towards the end of his service in Korea, a few months before it was diagnosed at Fort Campbell.

Plaintiffs contend that Hacker was injured in Kentucky, but this conflicts with Hacker's own testimony that his tinnitus began "at least a few months before" his diagnosis.  Hacker had been at Fort Campbell less than eight weeks before he was diagnosed with tinnitus, so his condition could not have developed in Kentucky.  In

fact, when Hacker received his diagnosis, he told the medical provider that he had experienced ringing in his ears for "the past several years now." (Ex. 13.) That statement conflicts with Hacker's testimony in this case, which dates the onset of tinnitus to his service in South Korea. But if Hacker had already been suffering from tinnitus for "several years" by April 2006, then his tinnitus must have begun while he was serving in Texas or Kuwait. There is no basis at all for Plaintiffs' contention that Hacker's alleged tinnitus emerged during his first two months at Fort Campbell.

There is also no indication that Hacker's alleged tinnitus worsened significantly after his April 2006 diagnosis. Even if there were evidence of subsequent noise-related injuries, the most obvious cause would be noise exposure during Hacker's two deployments to Iraq, not noise exposure at Fort Campbell, where Hacker testified he worked "primarily in an office." (Ex. 8, Hacker Dep. Tr. at 148:17-149:3; Ex. 10, Third Supplemental Response to Interrogatory No. 26. 7/9/20)

Because Hacker sustained his alleged injury overseas, 28 U.S.C. § 5001(b) does not apply.[4] The choice-of law rules of Minnesota, the state where Hacker

---

[4] To the extent Hacker's alleged injury occurred on a domestic military base, it could only have occurred at Fort Bliss in Texas. Thus, even if § 5001(b) did apply, it would dictate that Texas law should apply—not Kentucky law.

would have brought his case if not for the MDL, therefore govern his case.  (*See* Dkt. 5 (designating the District of Minnesota as his chosen forum).)

### B. Indiana Law Applies Under A Minnesota Choice-of-Law Analysis.

Indiana law applies to Hacker's case for the same reasons it applies to McCombs's case.  First, there are several substantive conflicts between the law of Indiana, which Defendants suggest applies, and that of Kentucky, which Hacker suggests applies.[5]  Second, application of Kentucky law would violate the Due Process Clause because Kentucky has no contacts with Hacker's case.  Hacker has never been a citizen of Kentucky, and his use of the CAEv2 took place on federal enclaves, over which Kentucky has no authority.  Third, the Minnesota choice-of-law factors strongly favor Indiana, the place where Aearo was located and where all of the allegedly wrongful conduct took place, because Indiana is the only state that has any significant contacts with the events at issue in this litigation.

---

[5] *See, e.g.*, Kentucky Rev. Stat. 411.182(1) (providing for a pure comparative fault allocation, where each party is liable for the percentage of fault assigned); Indiana Code 34-51-2-6 (providing for a modified comparative fault allocation, where the claimant may not recover if more than 50% at fault).

### III.   Lewis Keefer — Indiana Law

#### A.   Keefer Sustained His Alleged Injuries In Iraq.

Keefer claims he acquired the CAEv2 in March 2007, during basic training at Fort Benning in Georgia.  (Ex. 14, Supplemental Response to Interrogatory No. 27. 7/2/20.)  He says he continued using the earplugs at Fort Benning until he deployed for Iraq in July 2009, where he served until June 23, 2010.  (Ex. 14, Supplemental Response to Interrogatory No. 26. 7/2/20)  Shortly after Keefer returned to Fort Benning, on July 13, 2010, he received a diagnosis of hearing loss and tinnitus. Keefer has admitted that this was his first such diagnosis, and that he is seeking damages from July 13, 2010 on.  (Ex. 15, Requests for Admission Responses Nos. 75, 76.)  The medical provider who diagnosed Keefer with hearing loss and tinnitus suggested that the injuries were "deployment related" and that Keefer had suffered "[a]coustic trauma" from gun ranges and Humvees.  (Ex. 16.)  In addition to the exposures noted by the medical provider in 2010, Keefer testified that he rode in Stryker vehicles and worked around helicopters on a daily basis while wearing the CAEv2 in Iraq.  (Ex. 17, Keefer Dep. Tr. at 224:14-225:22.)

If Keefer's hearing conditions were truly caused by noise exposure, as he claims, they stemmed from noise exposure during the deployment to Iraq—a deployment that he completed less than a month before the diagnosis.  Keefer now argues that he sustained his injuries at Fort Benning, but this does not square with

the diagnosed injury date to which Keefer has already admitted.  Keefer had only been back at Fort Benning for a few weeks when received his diagnosis, after eleven months in Iraq.  And Keefer claims his noise exposure in Iraq was greater than what he had previously experienced at Fort Benning, which was limited to vehicle-related activities and periodic weapons qualifying tests.  (*See id.* at 208:14-22; 214:10-215:6.)  The only reasonable conclusion, based on the evidentiary record and Keefer's own admissions, is that Keefer's alleged injuries occurred during his tour in Iraq.

### B.  Indiana Law Applies Under A Georgia Choice-of-Law Analysis.

Because Keefer sustained his alleged injuries in Iraq, 28 U.S.C. § 5001(b) does not apply.  The choice-of law rules of Georgia, the state where Keefer would have brought his case if not for the MDL proceeding, therefore govern his case.  (*See* Dkt. 4 (designating the Middle District of Georgia as his chosen forum).)

Georgia applies the traditional choice-of-law rule of *lex loci delicti* in tort cases.  *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 414 (Ga. 2005).  Under that rule, a tort action "is governed by the substantive law of the state where the tort was committed."  *Id.*  A tort is considered to be "committed" in "the place where the last event necessary to make an actor liable … takes place," which is "the place where the injury sustained was suffered rather than the place where the [allegedly tortious]

act was committed." *Auld v. Forbes*, ___ S.E.2d ___, 2020 WL 5753317, at * 2 (Ga. Sept. 28, 2020).

Keefer's alleged injury occurred in Iraq, but a Georgia court would not mechanically apply the *lex loci delicti* rule and hold that Iraqi law governs Keefer's case. First, neither party argues in favor of Iraqi law. Second, the application of Iraqi law would be unconstitutional. Although Keefer's alleged injury occurred in Iraq, that country has no "contacts" that create policy "interests" in the case. *See Phillips Petroleum Co.*, 472 U.S. at 818 (holding that a jurisdiction's substantive law can apply only if it has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"). Iraq has no interest in applying its law to a case concerning an American citizen's use of an American company's product while serving in the United States Army.

In a very similar situation, an MDL court held that *lex loci delicti* states would not apply their standard choice-of-law analysis to claims concerning the use of Agent Orange by American servicemembers in Vietnam, Cambodia, and Laos. *See In re Agent Orange Prod. Liab. Litig.*, 580 F. Supp. 690, 707 (E.D.N.Y. 1984) (noting that "when lex loci delicti remains the general rule in tort cases it may be displaced in extraordinary cases"). The fact that a state adheres to the *lex loci delicti* approach "does not mean that it is immune to arguments based on the relative interests of

jurisdictions," and foreign countries have no interest in applying their law to suits between American parties concerning a product designed and sold in the United States. *Id*. at 708.

In the *Agent Orange* litigation, the MDL court applied "national consensus law" in part because the case involved seven different defendants located throughout the country, and no plaintiff could say with certainty which company made the Agent Orange herbicide to which they were exposed. *Id*. at 713. Here, Plaintiffs do not argue in favor of "national consensus law," and there is no reason to resort to that novel solution. Aearo (and later 3M) is the only company that made the CAEv2, and all of the company's allegedly wrongful conduct occurred in Indiana.

Indiana has by far the strongest interest in Keefer's case. Because *lex loci delicti* cannot apply, a Georgia court would choose Indiana law. Indeed, a Georgia court would *have to* choose Indiana law because, as explained above, the choice of any other state's law would violate the Due Process Clause. No state has any meaningful contacts with Keefer's case other than Indiana. Aside from the allegedly wrongful conduct by Aearo that took place in Indiana, all of the events that gave rise to Keefer's claim occurred on federal enclaves or in foreign countries. Keefer's acquisition and use of the CAEv2 did not take place within the jurisdiction of *any* state, so no state other than Indiana can claim to have a significant contact with this litigation.

IV.  **Lloyd Baker — Indiana Law**

  A.  **Baker Sustained His Alleged Injuries in Iraq.**

Baker claims that he first acquired the CAEv2 during basic training at Fort Benning in May 2005, and received another pair at Fort Lewis, Washington, in December 2005.  (*See* Ex. 18, Baker Dep. Tr. at 23:21-25; 28:21-29:3; Ex. 19.)  After just a month at Fort Lewis, Baker was transferred to Camp Vilseck in Germany on January 2, 2006.  (Ex. 19.)  From Germany, Baker deployed to Iraq from August 2007 to October 2008.  (Ex. 20, Supplemental Response to Interrogatory No. 26. 6/2/20)

Baker testified that he first noticed his tinnitus in 2006, when he was in Germany.  (*See* Ex. 18, Baker Dep. Tr. at 117:2-5 (Q: "When did the ringing in your ears begin?" A: "The first time I noticed it was in 2006.")).  And, according to Baker, his noise exposure significantly increased after he arrived in Germany in 2006, where he was exposed to helicopter noise, frequently rode in Stryker vehicles, and trained as a machine gunner.  (*See id*. at 123:24-124:18; 126:22-25; 135:18-136:17.)

Baker's noise exposure further increased in Iraq, where Baker served as an infantryman for more than a year.  Indeed, before his deposition, Baker had repeatedly stated that his tinnitus resulted from noise exposure in Iraq.  For example, when Baker underwent a medical examination in 2009 for his application for disability benefits, he reported "hazardous exposure to machine gun fire, explosions

and engine noise and the onset of tinnitus following [his] return from Iraq." (Ex. 21 at 1643.) The audiologist who conducted the examination confirmed that Baker told her his pertinent noise exposures occurred in Iraq. (Ex. 22, Parker Dep. at 38:16-39:11; 94:14-95:18.) During a periodic health assessment in 2012, Baker told the provider that his hearing loss had been "noise induced 2007-08," which are the years Baker served in Iraq. (Ex. 23 at 192.) And in connection with a job application in 2012, when asked if he had "ever been exposed to loud noises on the job," Baker stated "in the military. Iraq '07-'08." (Ex. 24 at 181.)

Whether Baker sustained his alleged injuries in Iraq or Germany, the relevant point is that he sustained his injuries overseas, so 28 U.S.C. § 5001(b) does not apply.

Plaintiffs' position that Baker was injured at Fort Lewis in Washington lacks any factual basis. Baker was stationed at Fort Lewis for less than a month. He arrived at Fort Lewis on December 6, 2005, and was at Camp Vilseck in Germany by January 2, 2006. (*See* Ex. 19.) Baker receives no solace by now claiming that he suffered injuries in 2006 (rather than in 2007-2008). If true, that would mean any injuries *must* have occurred in Germany—the only place Baker was stationed that year. The only apparent basis for Plaintiffs' claim that Baker was injured in Washington is the report of retained expert Dr. Mark Packer, who wrote that Baker "recalled a distinct event associated with an acute onset of severe tinnitus and

hearing loss during urban warfare training at [Ft.] Lewis" and that he had experienced tinnitus "since that event." (Ex. 25, Packer Report at 5.)

This hearsay report of a specific event at Fort Lewis that caused Baker's tinnitus is contradicted by Baker's own sworn testimony. When asked, "Was there a specific event that precipitated [your tinnitus]?," Baker said "No. I -- I just remember noticing it for the first time at a friend's apartment." (Ex. 18, Baker Dep. Tr. at 117:6-9.) Baker also testified that he noticed his tinnitus in 2006, when he was in Germany, not after training at Fort Lewis. Baker's testimony and the documentary evidence are clear that his alleged injuries occurred in Germany and/or Iraq. No late-breaking report of an earlier event, inconsistent with all other evidence in the case, can alter that conclusion.

### B. Indiana Law Applies Under a South Carolina Choice-of-Law Analysis.

Because Baker sustained his alleged injuries in foreign countries, 28 U.S.C. § 5001(b) does not apply. The choice-of law rules of South Carolina, the state where Baker would have brought his case if not for the MDL proceeding, therefore govern his case. (*See* Dkt. 4 (designating the District of South Carolina as his chosen forum).)

South Carolina, like Georgia, applies the traditional *lex loci delicti* rule in tort cases. But for the same reasons that Iraqi law cannot apply in Keefer's case, Iraqi or German law cannot apply in Baker's case. Neither country has any genuine

contact with the case nor any interest in applying its law to a dispute regarding equipment made by an American company and issued to American soldiers.

The only state's law that can apply to Baker's case, consistent with the Due Process Clause, is Indiana.  No other state has any contact with or interest in the case because Baker acquired and used the CAEv2 exclusively in places that were subject to exclusive federal jurisdiction.  The only events relevant to the case that took place within the jurisdiction of *any* state took place in Indiana, where Aearo designed and tested the CAEv2.

## V.    Luke Estes — Georgia Law

### A.    Estes Sustained His Alleged Injury at Fort Benning, and Georgia Law Therefore Applies.

Plaintiffs now agree that Estes sustained his alleged injuries at Fort Benning in Georgia.  Estes testified that he first noticed both his hearing loss and tinnitus in 2014, while he was at Fort Benning, and even traced the onset of his alleged hearing loss and tinnitus to a specific incident on the firing range.  (Ex. 26, Estes Dep. Tr. at 79:4-80:1; 255:8-14; 256:24-257:3; Ex. 27.)  Because Estes sustained his alleged injuries at Fort Benning, the law of Georgia applies to his case under 28 U.S.C. § 5001(b).[6]

---

[6] While Plaintiffs agree that Georgia law applies to Estes's case, they mistakenly derive that conclusion from the choice-of-law rules of Estes's designated forum, New York, rather than 28 U.S.C. § 5001(b).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court apply Indiana law to the cases of Dustin McCombs, Stephen Hacker, Lewis Keefer, and Lloyd Baker, and apply Georgia law to the case of Luke Estes.

Dated:  November 23, 2020                      Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that the foregoing contains 5,388 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  November 23, 2020               Respectfully submitted,

*/s/ Robert C. Brock*

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 23, 2020, a true

and correct copy of the foregoing:

## DEFENDANTS' BRIEF REGARDING CHOICE OF LAW FOR GROUP A PLAINTIFFS

was served as follows:

☒       **[E-Mail]** By causing the above document to be sent via electronic mail to the parties at the email addresses listed below. I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Douglass A. Kreis<br>Neil D. Overholtz<br>Aylstock, Witkin, Kreis & Overholtz,<br>PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>Email: baylstock@awkolaw.com<br>Email: dkreis@awkolaw.com<br>Email: NOverholtz@awkolaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137<br><br>*Counsel for Plaintiff Dustin McCombs*<br>Case No. 7:20-cv-00094<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Shelley V. Hutson, Co-Lead<br>Counsel Clark, Love & Hutson,<br>GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>Email: shutson@triallawfirm.com |

| | |
|---|---|
| Christopher A. Seeger, Co-Lead Counsel<br>David R. Buchanan<br>Caleb A. Seeley<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>Email: cseeger@seegerweiss.com<br>Email: dbuchanan@seegerweiss.com<br>Email: cseeley@seegerweiss.com<br>Email: MDL2885@seegerweiss.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 | Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com<br>Email: maburns@mostynlaw.com |
| Evan D. Buxner,<br>Plaintiffs' Executive Committee<br>Gori Julian & Associates<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorijulianlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 S Baylen St. Ste 600<br>Pensacola, FL 32502<br>Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com<br>Email: tbouk@levinlaw.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 |
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Discovery & ESI Subcommittee<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>Email: taylor@hgdlawfirm.com<br>Email: lewis@hgdlawfirm.com | Katherine E. Charonko,<br>Discovery & ESI Subcommittee<br>Bailey & Glasser LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>Tel.: (304) 345-6555<br>Email: kcharonko@baileyglasser.com |

| | |
|---|---|
| *Counsel for Plaintiff Dustin McCombs*<br>Case No. 7:20-cv-00094 | |
| Virginia E. Anello,<br>Discovery & ESI Subcommittee<br>Douglas & London<br>59 Maiden Ln, 6th Floor<br>New York, NY 10038<br>Tel.: (212) 566-7500<br>Email: vanello@douglasandlondon.com | J. Nixon Daniel, III<br>Discovery & ESI Subcommittee<br>Beggs & Lane<br>501 Commendencia Street<br>Pensacola, FL 32502<br>Tel.: (850) 469-3306<br>Email: jnd@beggslane.com |
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Discovery & ESI Subcommittee<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>Email: taylor@hgdlawfirm.com<br>Email: lewis@hgdlawfirm.com | Shawn Fox<br>Sean P. Tracey<br>Tracy & Fox Law Firm<br>440 Louisiana Street, Suite 1901<br>Houston, TX 77002<br>Tel.: (713) 495-2333<br>Email: sfox@traceylawfirm.com<br>Email: stracey@traceylawfirm.com<br><br>*Counsel for Plaintiff Lloyd E. Baker*<br>Case No. 7:20-cv-00039 |
| Katherine L. Cornell<br>Pulaski Law Firm<br>2925 Richmond Avenue, Suite 1725<br>Houston, TX 77098<br>Tel.: (713) 664-4555<br>Email:<br>kcornell@pulaskilawfirm.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 | Thomas W. Pirtle<br>Laminack Pirtle & Martines<br>5020 Montrose Blvd., 9th Floor<br>Houston, TX 77006<br>Tel.: (713) 292-2750<br>Email: tomp@lpm-triallaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 |
| Jeanie Sleadd<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336 | Quinn R. Wilson<br>Onder Law LLC<br>110 E. Lockwood Avenue, 2nd Floor<br>St. Louis, MO 63119<br>Tel.: (314) 963-9000 |

| Email: jsleadd@hgdlawfirm.com | Email: wilson@onderlaw.com |
|---|---|
| *Counsel for Plaintiff Dustin McCombs* <br> Case No. 7:20-cv-00094 | *Counsel for Plaintiff Stephen Hacker* <br> Case No. 7:20-cv-00131 |
| Thomas P. Cartmell <br> Wagstaff & Cartmell <br> 4740 Grand Avenue, Suite 300 <br> Kansas City, MO 64112 <br> Tel.: (816) 701-1100 <br> Email: tcartmell@wcllp.com <br><br> *Counsel for Plaintiff Stephen Hacker* <br> Case No. 7:20-cv-00131 | |

DATED:  November 23, 2020          /s/ Robert C. Brock_____

Robert C. "Mike" Brock