# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| | Judge M. Casey Rodgers |
| This Document Relates to: <br> *Lloyd Baker*, No. 7:20-cv-00039; <br> *Luke Estes*, No. 7:20-cv-00137; <br> *Stephen Hacker*, No. 7:20-cv-00131; <br> *Lewis Keefer*, No. 7:20-cv-00104; <br> *Dustin McCombs*, No. 7:20-cv-00094 | Magistrate Judge Gary R. Jones |

## PLAINTIFFS' MOTION FOR CONSOLIDATION OF BELLWETHER GROUP A FOR TRIAL

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LEGAL STANDARD............................................................................................2

ARGUMENT ........................................................................................................2

The Group A Bellwethers Should Be Consolidated For A Single Trial. ..................2

    A.    The Group A Bellwethers Involve Substantial Overlap
           Of Law And Fact..........................................................................................3

    B.    Consolidation Would Provide Significant Efficiencies For The
           Court, The Parties, And Witnesses................................................................9

    C.    The Court Has Sufficient Tools To Avoid Potential Prejudice
           Or Confusion. ...........................................................................................14

    D.    Consolidation Will Best Promote The Goals Of The Bellwether
           Process......................................................................................................17

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Allstate Ins. Co. v. Vizcay*,
 826 F.3d 1326 (11th Cir. 2016) ........................................................................2, 9

*Banks v. ICI Americas Inc.*,
 450 S.E.2d 671 (Ga. 1994) ...................................................................................7

*Blanks v. Fluor Corp.*,
 450 S.W.3d 308 (Mo. Ct. App. 2014) ..................................................................8

*Blount v. Bos. Sci. Corp.*,
 2019 WL 3943872 (E.D. Cal. Aug. 21, 2019) ...................................................15

*Bunch v. Pac. Cycle, Inc.*,
 2015 WL 11622953 (N.D. Ga. July 20, 2015) ......................................................7

*Campbell v. Bos. Sci. Corp.*,
 882 F.3d 70 (4th Cir. 2018) ........................................................................ *passim*

*Cusack v. Abbott Labs., Inc.*,
 2017 WL 3688149 (D. Alaska Jan. 17, 2017) ......................................................7

*Dempsey v. Mac Towing, Inc.*,
 876 F.2d 1538 (11th Cir. 1989) ..........................................................................14

*Eghnayem v. Bos. Sci. Corp.*,
 873 F.3d 1304 (11th Cir. 2017) ................................................................... *passim*

*Fisher v. Ciba Specialty Chems. Corp.*,
 245 F.R.D. 539 (S.D. Ala. 2007) ...................................................... 9, 13, 15, 16

*Frankum v. Bos. Sci. Corp.*,
 2015 WL 3832187 (W.D.N.C. June 22, 2015) .................................................3, 4

*Fraynert v. Delaware & Hudson Ry. Co.*,
 2012 WL 6929343 (Pa. Com. Pl. Oct. 1, 2012) .................................................15

*Ghogomu v. Delta Airlines Glob. Servs. LLC*,

    2014 WL 2481879 (N.D. Okla. June 3, 2014) ....................................................3, 6

*Green v. Beer*,

    2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009) ........................................................8

*Hendrix v. Raybestos-Manhattan, Inc.*,

    776 F.2d 1492 (11th Cir. 1985) ............................................................ 2, 4, 14, 15

*Hopkins v. Ford Motor Co.*,

    2011 WL 5525454 (W.D. Ky. Nov. 14, 2011)......................................................7

*In re Air Crash Disaster*,

    720 F. Supp. 1455 (D. Colo. 1988) ......................................................................7

*In re Air Crash Disaster*,

    549 F.2d 1006 (5th Cir. 1972)..........................................................................9, 13

*In re Crash of Aircraft N93PC on July 7, 2013*,

    2020 WL 2739173 (D. Alaska May 26, 2020)......................................................7

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,

    2016 WL 10719395 (N.D. Tex. Jan. 8, 2016).......................................................3

*In re Joint Eastern and Southern Dists. Asbestos Litig.*,

    125 F.R.D. 60 (E.D.N.Y. 1989)..........................................................................13

*In re Mentor Corp Obtape Transobturator Sling Prods. Liab. Litig.*,

    2010 WL 797273 (M.D. Ga. Mar. 3, 2010) ....................................... 3, 13, 17, 18

*In re N.Y. City Asbestos Litig.*,

    99 A.D.3d 410 (N.Y. App. Div. 1st Dep't 2012)..................................................8

*In re Stand 'N Seal Prods. Liab. Litig.*,

    2009 WL 2224185 (N.D. Ga. July 21, 2009)..................................... 3, 15, 16, 18

*In re Syngenta AG MIR 162 Corn Litig.*,

    2017 WL 2876767 (D. Kan. July 6, 2017).......................................................6, 8

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
  2010 WL 4024778 (S.D. Ill. Oct. 13, 2010)..........................................................17

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 ...........................................................................................................3

*Jones v. Otis Elevator Co.*,
  861 F.2d 655 (11th Cir. 1988)...............................................................................16

*Kirkland v. Emhart Glass S.A.*,
  805 F. Supp. 2d 1072 (W.D. Wash. 2011) ...............................................................7

*Laughlin v. Biomet, Inc.*,
  2020 WL 1307397 (D. Md. Mar. 18, 2020) ..............................................................4

*Lockaby v. JLG Indus., Inc.*,
  233 F. App'x 909 (11th Cir. 2007).........................................................................15

*Macias v. Saberhagen Holdings, Inc.*,
  282 P.3d 1069 (Wash. 2012) .....................................................................................7

*Miller v. Coty, Inc.*,
  2018 WL 1440608 (W.D. Ky. Mar. 22, 2018).........................................................7

*Ostendorf v. Clark Equip. Co.*,
  122 S.W.3d 530 (Ky. 2003)......................................................................................7

*Pallano v. AES Corp.*,
  2016 WL 97496 (Del. Super. Ct., Jan. 4, 2016)....................................................16

*Prince v. Parachutes, Inc.*,
  685 P.2d 83 (Alaska 1984) .......................................................................................7

*Sears, Roebuck & Co. v. Tyco Fire Prods. LP*,
  2010 WL 3274278 (N.D. Ill. Aug. 17, 2010)...........................................................6

*Sims v. Atrium Med. Corp.*,
  349 F. Supp. 3d 628 (W.D. Ky. 2018) ......................................................................7

iv

*United States v. Stone*,

    9 F.3d 934 (11th Cir. 1993) ...................................................................15

*Vincelli v. Nat'l Home Health Care Corp.*,

    112 F. Supp. 2d 1309 (M.D. Fla. 2000) ..................................................9

*Wilson v. Johns-Manville Sales Corp.*,

    107 F.R.D. 250 (S.D. Tex. 1985) ..........................................................13

*Young v. City of Augusta*,

    59 F.3d 1160 (11th Cir. 1995) .................................................................2


**Statutes**

O.C.G.A. § 51-1-11 ......................................................................................7

Wash. Rev. Code § 7.72.030 .........................................................................7


**Rules**

Fed. R. Civ. P. 42(a) ..................................................................................1, 2


**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

    § 2382 (3d ed. 2020) ...............................................................................6

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

    § 2384 (3d ed. 2020) ...............................................................................3

Manual for Complex Litigation, Fourth § 11.631 ..........................................2

Manual for Complex Litigation, Fourth § 22.315 ........................................17

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(a) and CMO No. 18, ECF 1542, Plaintiffs move for the consolidation of the Group A Bellwether cases of Lloyd Baker, Luke Estes, Stephen Hacker, Lewis Keefer, and Dustin McCombs for trial.

The Group A Bellwethers are five of more than 220,000 servicemembers and veterans with cases pending in this multidistrict products liability action against Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC (collectively "Defendants" or "3M") for damages related to their use of the Combat Arms Earplug version 2 ("CAEv2"). Each is a veteran who alleges that their auditory injury was caused by the CAEv2, a product that failed to protect them from the sounds attendant to their military careers. Across all five cases, the factual and legal issues are predominately common: the CAEv2's defects, and 3M's inadequate warnings and misrepresentations. Single-plaintiff trials would burden the Court, the parties, and witnesses with the presentation of duplicative evidence and the relitigation of common issues. A consolidated trial, on the other hand, will allow the common issues to be presented only once, allowing timely consideration of the Group A Bellwethers' claims, without unduly taxing the available judicial resources.

## LEGAL STANDARD

At the Court's discretion, multiple actions that "involve a common question of law or fact" may be consolidated for trial.  *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017) (quoting Fed. R. Civ. P. 42(a)).  The Eleventh Circuit has "urged" district courts "to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion."  *Id.* at 1314 (quoting *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995)).

## ARGUMENT

### The Group A Bellwethers Should Be Consolidated For A Single Trial.

In exercising its "considerable discretion," the Court must consider "[w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."  *Id.* at 1313 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).  "A joint trial is appropriate where there is clearly substantial overlap in the issues, facts, evidence, and witnesses required."  *Id.* at 1314 (quoting *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016)); Manual for Complex Litigation, Fourth § 11.631 ("Whether consolidation is permissible or desirable

depends largely on the amount of common evidence among the cases."); *Ghogomu v. Delta Airlines Glob. Servs. LLC*, 2014 WL 2481879, at *2 (N.D. Okla. June 3, 2014) (consolidating despite "the application of different laws and provisions" because "[e]ven if that were true, Rule 42(a) requires only that there be common questions of fact *or* law, and the common issues of fact raised by the two cases are unavoidably similar.").

### A.    The Group A Bellwethers Involve Substantial Overlap Of Law And Fact.

"Actions by different plaintiffs arising out of the same tort, such as a single accident or disaster or the use of a common product that is alleged to be defective in some respect, frequently are ordered consolidated under Rule 42(a)."[1]  9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2384 (3d ed. 2020).  If Plaintiffs bring "the same claims based largely on the same facts . . . differences in causation are not enough, standing alone, to bar consolidation of

---

[1] *See, e.g.*, *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74-76 (4th Cir. 2018) (affirming consolidated trial of four mesh cases because they shared "many common questions of law and fact"); *In re Stand 'N Seal Prods. Liab. Litig.*, 2009 WL 2224185, at *2 (N.D. Ga. July 21, 2009) (approving of consolidated bellwether trial of seven individuals alleging injury from same product); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 10719395, at *2 (N.D. Tex. Jan. 8, 2016) (consolidating five cases for trial); *In re Mentor Corp Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *4 (M.D. Ga. Mar. 3, 2010) (consolidating four cases for trial); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285; (2d Cir. 1990) (affirming consolidation of two asbestos cases); *Frankum v. Bos. Sci. Corp.*, 2015 WL 3832187, at *2-4 (W.D.N.C. June 22, 2015) (consolidating two cases).

products liability claims." *Eghnayem*, 873 F.3d at 1314 (affirming consolidation of four cases for trial although "there will be separate evidence relating to failure to warn and individual damages"); *Hendrix*, 776 F.2d at 1495-96 (affirming consolidation of four products liability cases for trial notwithstanding different proof of causation); *Laughlin v. Biomet, Inc.*, 2020 WL 1307397, at *7 (D. Md. Mar. 18, 2020) ("[T]he existence of facts unique to each plaintiff does not preclude consolidation."); *Frankum*, 2015 WL 3832187, at *1 ("[W]hen two causes of action involve common witnesses, identical evidence, and similar issues, judicial economy will generally favor consolidation.").

Consolidation is justified because the Group A Bellwethers involve overlapping, and frequently coextensive, issues and facts. As with a traditional design defect litigation, the need to prove general liability for the product at issue outweighs individual variations as to causation and damages. Each Plaintiff alleges that the CAEv2 was unreasonably dangerous by design, that 3M failed to adequately warn of the CAEv2's risks, and that 3M misrepresented the safety and efficacy of the product. Across all Group A Bellwethers, the same "web" of conduct—the creation of the CAEv2, its inherently unsafe nature, its manufacture, and its promotion and sale through ongoing misrepresentations and omissions to the Defense Logistics Agency and military bases, including the bases where each Plaintiff was stationed—will be at issue. *See* ECF 1540 at 6. Such general liability

is overwhelmingly, if not exclusively, common, and will be demonstrated through common expert witnesses, documents, and deposition testimony.

Beyond the commonality sufficient for consolidated trial in standard product or device cases, the Group A Bellwethers also share significant facts relating to the acquisition, training, and use of the CAEv2.  All received the earplug in the course of military service, were overseen by the same Army and Department of Defense rules and programs, used the CAEv2 in an effort to protect from the same types of military-occupational noise, and had their hearing measured through military-issue audiograms.  All were injured during military training: Estes and Keefer at Fort Benning; Baker at Fort Lewis, McCombs at Fort Richardson, and Hacker at Fort Campbell.  *See id.* at 4-5.  For example, at trial, each will deploy the same evidence to demonstrate that the Flange Report was never shared with the Army or anyone outside of Aearo until it was produced by 3M in a lawsuit in 2014 and that "[i]mmediately following the release of the Flange Report in that litigation, the CAEv2 was discontinued."  ECF 1280 at 15.  And each will offer overlapping evidence regarding hearing protection use during training, and common (and, if not consolidated, duplicative) expert testimony regarding the human auditory system and the damage caused by using inadequate hearing protection around the weapons fire and military vehicles.  Although causation and damages will involve some case-specific testimony, the vast majority of the evidence will go toward common issues;

and the limited evidence on individual issues will be "comparatively straightforward." *See Eghnayem*, 873 F.3d at 1314. Accordingly, consolidation is appropriate.

3M will likely argue that legal differences exist due to the potential application of multiple states' laws.[2] But independent of any legal variations, the factual overlap alone justifies consolidation. *See Ghogomu*, 2014 WL 2481879, at *2 (noting Rule 42 is disjunctive). Consolidation is warranted when its benefits outweigh the potential complications posed by differences in state law. *See In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 2876767, at *2 (D. Kan. July 6, 2017); *Sears, Roebuck & Co. v. Tyco Fire Prods. LP*, 2010 WL 3274278, at *6 (N.D. Ill. Aug. 17, 2010) (denying motion to sever into six separate trials cases under "incompatible" product liability laws of six states); 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2382 (3d ed. 2020) ("[T]he existence of a common question by itself is enough to permit consolidation under Rule 42(a) ....").

The benefits of consolidation outweigh potential complications because the state laws share core elements. Georgia, Kentucky, Washington, and Alaska all

---

[2] Choice of law has been separately briefed. Plaintiffs argue that *Estes*, *Keefer*, *Hacker*, *Baker*, and *McCombs* should be subject to the law of Georgia, Georgia, Kentucky, Washington, and Alaska, respectively. ECF 1540. 3M agrees that Georgia law applies to *Estes*, but argues that Indiana law should apply to the four other cases. ECF 1539.

recognize strict liability design defect claims[3] and that inadequate directions and warnings can render a product unreasonably unsafe.[4]  These four states employ just two standards to determine defect: Georgia and Kentucky apply a risk-utility test[5]; Alaska applies a consumer expectations test[6]; and Washington allows design defect to be established pursuant to either test.[7]  Although the framing varies, each test depends on common evidence regarding the CAEv2's performance, both anticipated and actual.  And each state recognizes that manufacturers owe a duty of care to the consumers of their products, and permit products claims sounding in negligence according to the same elements.[8]

The remaining variations in fact or law can be managed through appropriately-tailored instructions and verdict forms.  *In re Air Crash Disaster*, 720

---

[3] *See* O.C.G.A. § 51-1-11; *In re Crash of Aircraft N93PC on July 7, 2013*, 2020 WL 2739173, at *3 (D. Alaska May 26, 2020); *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 638-39 (W.D. Ky. 2018); *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1074 (Wash. 2012).

[4] *See* O.C.G.A. § 51-1-11; *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984); *Miller v. Coty, Inc.*, 2018 WL 1440608, at *11 (W.D. Ky. Mar. 22, 2018); *Macias*, 282 P.3d at 1074.

[5] *See Banks v. ICI Americas Inc.*, 450 S.E.2d 671, 674 (Ga. 1994); *Hopkins v. Ford Motor Co.*, 2011 WL 5525454, at *2 (W.D. Ky. Nov. 14, 2011).

[6] *See In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, 2020 WL 2739173, at *3.

[7] *See Kirkland v. Emhart Glass S.A.*, 805 F. Supp. 2d 1072, 1076 (W.D. Wash. 2011).

[8] *See Bunch v. Pac. Cycle, Inc.*, 2015 WL 11622953, at *9 (N.D. Ga. July 20, 2015); *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003); *Cusack v. Abbott Labs., Inc.*, 2017 WL 3688149, at *3 (D. Alaska Jan. 17, 2017); Wash. Rev. Code § 7.72.030.

F. Supp. 1455, 1460 (D. Colo. 1988) ("The presentation of two representative cases for trial of common issues in multidistrict litigation does not present problems which could not be addressed through a combination of appropriate jury instructions and verdict forms."); *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 363 (Mo. Ct. App. 2014) (16 plaintiffs each brought four claims; jury received 214 instructions and completed 32 verdict forms, one for each plaintiff in compensatory stage and punitive damages stage). It is well-recognized that a jury is capable of considering claims under multiple states' laws.[9] *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 2876767, at *2 ("[T]he Court is confident that differences in the state law may be addressed by appropriate instructions to the jury."); *In re N.Y. City Asbestos Litig.*, 99 A.D.3d 410, 411 (N.Y. App. Div. 1st Dep't 2012) (affirming consolidation of claims by plaintiffs from three states because, in part, "defendant has not demonstrated why the purported differences in the various states' laws cannot be cured with appropriate jury instructions."); *Green v. Beer*, 2009 WL 3401256, at *8 (S.D.N.Y. Oct. 22, 2009) ("no risk of jury confusion or prejudice with respect to the possible application of multiple states' law"; if choice-of-law rules required use of

---

[9] A single joint trial is feasible through careful framing of jury instructions and verdict forms. However, depending on the resolution of the parties' choice-of-law arguments, subgroups of the Group A Bellwethers may also be appropriate for consolidation.

multiple states' substantive law, "appropriate jury instructions will ensure proper application of those laws to the facts underlying each claim").

### B.   Consolidation Would Provide Significant Efficiencies For The Court, The Parties, And Witnesses.

Consolidation is appropriate if a joint trial will "save the parties from wasteful relitigation, avoid duplication of judicial effort, and not materially prejudice the parties' rights." *Vizcay*, 826 F.3d at 1333 (quotation omitted and alteration adopted); *In re Air Crash Disaster*, 549 F.2d 1006, 1014 (5th Cir. 1972) ("The purpose of consolidation is to permit trial convenience and economy in administration."); *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1312 (M.D. Fla. 2000) ("[C]onsiderations of judicial economy favor consolidation."). If individual trials would involve "substantially similar, partially overlapping" testimony, "the attendant drag on the efficient administration of justice would be considerable." *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 543 (S.D. Ala. 2007).

Plaintiffs' proposal would allow the issues of common proof to be presented and decided once, promoting judicial efficiency while alleviating potentially prohibitive burdens on the parties and witnesses. Currently, Plaintiffs estimate that the combined evidence presentations of both parties (i.e. direct, cross, and redirect fact and expert witness examinations, whether live or by deposition) in a single-plaintiff trial would require a total of approximately 80 hours. Because each additional plaintiff is able to rely on the common liability (both affirmative and

defensive) and general causation witness and document proofs, and realize further efficiencies with common case-specific witnesses (*e.g.,* common experts get qualified and delineate their methodologies and generic findings only once), each additional plaintiff would be expected to add, on average, no more than 12 additional hours of case-specific evidence at trial. Thus, a five-plaintiff trial would likely involve 128 hours of evidence, while five single-plaintiff trials would take 400 hours. The benefits are clear: For each additional 12 hours of trial time incurred from consolidating an additional plaintiff's claims, 68 hours are saved—before factoring in the hours saved by averting multiple jury selections, overlapping openings and closings, and separate deliberations on common issues.

A single joint trial, in contrast, will allow the fact and expert testimony regarding defective design, negligence, and general causation to be set forth only once, avoiding potential inconsistent adjudications, and saving the parties and witnesses from the burdens of duplicative testimony. All 12 witnesses on 3M's Rule 26(a) disclosures are common to all plaintiffs, and each Plaintiff has likewise identified a common list of many more 3M and government witnesses with evidence regarding the design, testing, manufacture, marketing, and sale of the CAEv2. More than fifty depositions have been conducted on these common issues, and any trial will be dominated by the testimony and evidence on them.

10

The risk of duplicative testimony cannot be overstated.  The parties' expert disclosures reveal extensive overlap in expert testimony, and further belie any argument that state law variations would overwhelm the common issues.[10]

| 3M Expert[11] | Plaintiff | | | | |
| | Baker | Estes | Hacker | Keefer | McCombs |
|---|---|---|---|---|---|
| James Crawford | X | X | X | X | X |
| Vickie Tuten | X | X | X | X | X |
| Richard Neitzel | X | X | X | X | X |
| Jennifer Sahmel | X | X | X | X | X |
| Harri Kytomaa | X | X | X | X | X |
| John Casali | X | X | X | X | X |
| John Scarbrough and Samuel Lundstrom | X | X | X | X | X |
| John House | X | X | X | | |
| Gregory Flamme and Mark Stephenson | X | X | X | X | X |
| Michael Shahnasarian | X | X | | X | X |
| Douglas Jacobs | | | | X | |
| Derek Jones and Jennifer Laborde | | | | X | |
| Robert Rubin | | | X | | X |
| Dennis Driscoll | | | | | X |
| Eric Fallon | X | X | X | X | X |
| Elliott Berger | X | X | X | X | X |

---

[10] That 3M has disclosed one set of experts regarding whether the CAEv2 was defectively designed—for all five Plaintiffs and regardless of the applicable state law—demonstrates that the core elements are sufficiently common such that consolidation is justified.  While it is unlikely for either side to need all the general experts that have been designated, whichever experts each party choses to call will involve substantial overlap.

[11] *See* November 9, 2020 3M Trial Group A Expert Disclosure Letter, PX1.

| | Plaintiff | | | | |
|---|---|---|---|---|---|
| Plaintiff Expert[12] | Baker | Estes | Hacker | Keefer | McCombs |
| Steven Armstrong | X | X | X | X | X |
| Moises Arriaga | X | X | X | X | X |
| Eric Bielefeld | X | X | X | X | X |
| Althea Coetzee Leslie | X | X | X | X | X |
| David Eddins | X | X | X | X | X |
| Timothy Edens | X | X | X | X | X |
| Marc Fagelson | X | X | X | X | X |
| John Franks | X | X | X | X | X |
| Blaine Huston | X | X | X | X | X |
| Robert Johnson | X | X | X | X | X |
| Roger Juneau | X | X | X | X | X |
| Lawrence Lustig | X | X | X | X | X |
| David Madigan | X | X | X | X | X |
| Christopher Marshall | X | X | X | X | X |
| Richard McKinley | X | X | X | X | X |
| James Mills | X | X | X | X | X |
| Michael Ostacher | X | X | X | X | X |
| Mark Packer | X | X | X | X | X |
| Eric Rose | X | X | X | X | X |
| Vernon Rose | X | X | X | X | X |
| Christopher Spankovich | X | X | X | X | X |
| Elizabeth Davis | X | X | | X | X |
| Kristin Kucsma | X | X | | X | X |

As the Fourth Circuit has held, denying consolidation in product defect cases like this one, "would be to sacrifice the substantial savings of time and money that consolidation offers." *Campbell*, 882 F.3d at 76.

> Both plaintiffs and defendants benefit from lessened litigation costs and the reduced need for expert testimony. Witnesses benefit from reduced demands on their time by limiting the need for them to provide repetitive testimony. The community as a whole benefits from reduced demands on its resources, including reduced demand for jurors. The

---

[12] *See* October 9, 2020 Plaintiffs' Trial Group A Expert Disclosure Letter, PX2.

> judicial system benefits from the freedom consolidation affords judges
> to conscientiously resolve other pending cases.

*Id.*  Similarly, in *Fisher*, the district court concluded that forcing nine experts to provide "substantially similar, partially overlapping opinions in each of [] five trials" would subject the court to "something akin to a judicial *Groundhog Day.*"[13]  245 F.R.D. at 543 (denying motion for severance because "five different trials would be financially foolhardy and needlessly wasteful of the parties' economic resources, potentially even rendering these trials cost-prohibitive.").

Efficiency is of heightened importance where, as here, hundreds of thousands of cases involving common questions of law and fact have already been referred to the Court to "bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants."  *In re Air Crash Disaster*, 549 F.2d at 1012; *see In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *3 ("Consolidation appears to be a particularly appropriate tool that should be seriously considered in modern-day multidistrict litigation.").  The multidistrict litigation procedure

---

[13] *See Wilson v. Johns-Manville Sales Corp.*, 107 F.R.D. 250, 253 (S.D.Tex.1985) ("[C]onsolidation will save these defendants the expense of litigating the [common] issues of product defectiveness and punitive damages in 50 separate trials."); *In re Joint Eastern and Southern Dists. Asbestos Litig.*, 125 F.R.D. 60, 63 (E.D.N.Y. 1989) ("Consolidation will result in substantial time-savings . . . . When six to eight claims are consolidated for trial, [common evidence] can be presented once rather than six to eight times in individual trials.").

13

"reflects the need to promote efficiency without sacrificing fairness in the resolution of large-scale disputes." *Campbell*, 882 F.3d at 76.

Trying individual cases one-by-one that involve the same allegations of defect against the same product would waste the limited resources of the parties and the judiciary. The effort and expense associated with repeatedly bringing the same witnesses and experts to trial to prove the same liability case will enable 3M to use its resources to protract and deny resolution to all.

## C. The Court Has Sufficient Tools To Avoid Potential Prejudice Or Confusion.

Given the efficiencies that would be generated from a joint trial, consolidation is appropriate unless "prejudice to rights of the parties obviously results." *Eghnayem*, 873 F.3d at 1314. During the parties' meet and confer, 3M advised that it opposed consolidation for trial, and will no doubt contend that consolidation will prejudice its ability to receive a fair trial. But "[t]he court must also bear in mind the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation." *Id.* at 1313-14; *Hendrix*, 776 F.2d at 1495, 1497; *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1545 (11th Cir. 1989). 3M cannot identify any specific risk of prejudice or confusion that cannot be alleviated though careful instruction and management.

14

First, a joint trial with will not cause confusion.  It is presumed that jurors will carefully heed the Court's instructions.  *See, e.g.*, *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions."); *Lockaby v. JLG Indus., Inc.*, 233 F. App'x 909, 910 (11th Cir. 2007) ("We assume that jurors carefully follow instructions for this assumption underpins our constitutional system of trial by jury.").  Even if individual proof of causation is "necessarily different," the danger of prejudice from confusion can be alleviated through jury instructions and explanations throughout the trial.  *Eghnayem*, 873 F.3d at 1314; *Hendrix*, 776 F.2d at 1497; *see Blount v. Bos. Sci. Corp.*, 2019 WL 3943872, at *6 (E.D. Cal. Aug. 21, 2019); *In re Stand 'N Seal, Prods. Liab. Litig.*, 2009 WL 2224185, at *2.  "Federal juries are routinely asked to parse facts that are relevant to particular claims or particular parties, and are able to do so without difficulty."  *Fisher*, 245 F.R.D. at 543-44 & n.7; *see Fraynert v. Delaware & Hudson Ry. Co.*, 2012 WL 6929343, at *1 (Pa. Com. Pl. Oct. 1, 2012) ("Juror note-taking and special verdict interrogatories will enable the jury to digest the evidence presented and to evaluate the merits of each occupational exposure claim.").

Second, there is no prejudice from including five plaintiffs' in a single trial.  Multiple-plaintiff trials of the same and larger size are not uncommon.  *Blount*, 2019 WL 3943872, at *3 n.2; *see, e.g.*, *In re Stand 'N Seal Prods. Liab. Litig.*, 2009 WL

2224185, at \*2 (7 plaintiffs); *Pallano v. AES Corp.*, 2016 WL 97496, at \*2 (Del. Super. Ct., Jan. 4, 2016) (25 plaintiffs).  Any potential prejudice from the presence of multiple claimants can be cured by instruction.  *Eghnayem*, 873 F.3d at 1315; *see Campbell*, 882 F.3d at 76 (noting consolidation does not alter the standard of care).  The composition of the Group A Bellwethers further reduces any possibility of prejudice, as these five cases include an equal number of Plaintiff and Defense selections, along with one random Court selection.  The mere presumption that the Court will fail to properly instruct the jury is not prejudice.

Nor can it be presumed that the presence of multiple Plaintiffs will lead to the improper admission of evidence.  "'[A]ppropriate limiting instructions' can be used to cabin 'evidence relevant to the claims of one plaintiff but not to others.'"  *Eghnayem*, 873 F.3d at 1315 (quoting *Fisher*, 245 F.R.D. at 543 n.7)).  3M is represented by counsel capable of requesting any necessary instructions at trial.  And even if the cases are tried individually, evidence of other plaintiffs with similar injuries will be admissible to show the CAEv2's dangerous character and 3M's awareness and knowledge of its defective design and warnings.  *Id.*; *see Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988) ("We have held that evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."

(internal quotation marks omitted)).  Indeed, the consolidation of design defect cases always implicates this concern, and the Eleventh Circuit has affirmed consolidation in such cases.  *Egnayem*, 873 F.3d at 1315.

### D.   Consolidation Will Best Promote The Goals Of The Bellwether Process.

Bellwether trials can be an effective way to manage multidistrict litigation to a successful conclusion.  *See In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *3.  As recognized by the Manual for Complex Litigation, the purpose of bellwether trials is to "produce a sufficient number of representative verdicts . . . to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis."  Manual for Complex Litigation, Fourth § 22.315. As such, the bellwether process will be valuable only if it provides insight on a range of cases that are representative of the whole.  *Id.*; *see In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 4024778, at *1-2 (S.D. Ill. Oct. 13, 2010) ("It is critical to a successful bellwether plan that an honest representative sampling of cases be achieved. . . . Little credibility will be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case.").

17

A single consolidated trial of all of the Group A plaintiffs will best advance this litigation.  More than 220,000 cases are pending, and some consolidation will be necessary for plaintiffs to have their claims heard.  To that end, "consolidation of multiple cases for trial in the MDL setting would provide the parties with an opportunity to obtain results for multiple claims without burdening the court or the parties with the substantial cost of multiple separate trials."  *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig*, 2010 WL 797273, at *3; *In re Stand 'N Seal, Prods. Liab. Litig.*, 2009 WL 2224185, at *2 ("[A] single trial will serve more effectively as a bellwether trial in this multidistrict litigation.").  Having a single jury assess the circumstances of Plaintiffs selected by both parties will reveal how one jury evaluates and differentiates among claims and injuries, and aid the parties' understanding of the range of values for Plaintiffs' claims.

## CONCLUSION

For the aforementioned reasons, the Group A Bellwethers should be consolidated for trial.

DATED: December 7, 2020

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead
Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660

Tel.: (212) 584-0700
cseeger@seegerweiss.com


Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz,
PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com


***Counsel for Plaintiffs***

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH CASE MANAGEMENT ORDER NO. 18</u>

I hereby certify that this motion complies with the Cast Management Order

No. 18 and is 18 pages.

*/s/ Christopher A. Seeger*      

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Christopher A. Seeger*