UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS ) | |
| EARPLUG PRODUCTS LIABILITY ) | |
| LITIGATION ) | Case No. 3:19-md-2885 |
| ) | |
| ) | Hon. Judge M. Casey Rodgers |
| *This Document Relates to All Actions* ) | Magistrate Judge Gary R. Jones |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Pursuant to the Court's December 10, 2020 Order, Dkt. No. 1559, Plaintiffs respectfully submit this memorandum in opposition to Defendants' December 9, 2020 Motion for a Protective Order, Dkt. No. 1558. As with any other expert, Plaintiffs should be permitted to depose Dr. Eric Fallon and Elliott Berger on the facts and opinions to which they are expected to testify.

**BACKGROUND**

On November 9, 2020, Defendants disclosed Fallon and Berger as "hybrid" witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2)(c) in all Bellwether Group A Cases.[1] Along with the disclosure letter, Defense counsel submitted disclosures purporting to set forth both the subject matters on which the hybrid witnesses are expected to present testimony under Federal Rule of Evidence 702,

---

[1] See Exhibit F (Nov. 9, 2020 3M Disclosure Ltr.) at 2.

703, or 705, and a summary of the facts and opinions to which they are expected to testify.[2] For both Fallon and Berger, however, Defendants described testimony outside the scope of their prior testimony, and well beyond the limits of their personal knowledge, in a seeming attempt to impermissibly enable Fallon and Berger to address an all-encompassing collection of expert-type issues that could potentially arise at trial – without proper disclosure or percipient witness knowledge.

As with all the other experts disclosed by both parties, Plaintiffs met and conferred with Defendants regarding a deposition protocol and suitable dates for the depositions of Fallon and Berger, and Plaintiffs advocated for seven hours of deposition time for each of the two hybrid witnesses. During these negotiations, Defendants never expressed a desire to shield either witness completely from a post-disclosure deposition. To the contrary, Defendants argued to both Plaintiffs and the Court that the depositions of the hybrid witnesses should be limited to 3.5 hours.[3] On December 1, 2020, the Court entered the deposition protocol for the Group A Bellwether experts, Pre-Trial Order No. 60, setting seven-hour limits for the depositions of Berger and Fallon.

---

[2] *See* Exhibit A, Defendants' Rule 26(A)(2)(C) Disclosure of Elliot Berger; Exhibit B, Defendants' Rule 26(A)(2)(C) Disclosure of Eric Fallon.

[3] Exhibit E (Defs. Nov 30, 2020 Deposition Protocol Letter Brief) at 5.

The following week, Defendants advised Plaintiffs that they planned to re-litigate the issue and further seek to bar *any* further deposition testimony from Fallon and Berger—in sharp contrast to their earlier position to Plaintiffs and their briefing to the Court. Nearly two weeks after the Court ordered the deposition protocol and just one week before the date of Berger's deposition, Defendants' filed an "EMERGENCY" motion for a protective order.

## LEGAL STANDARD

Rule 26(c) authorizes Courts to limit discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden of showing good cause which must be demonstrated with a particularity," *Doe v. St. John's Episcopal Day School Inc.*, 2015 WL 12839273, at *1 (M.D. Fla. Mar. 27, 2015) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)), and it is "a heavy burden to show good cause for precluding a deposition altogether." *See* Dkt. 1346, Aug. 24, 2020 Order on Motion for Protective Order.

## ARGUMENT

**I. Defendants' Fail to Demonstrate Good Cause For Preventing Discovery Regarding the Facts and Opinions of Disclosed Expert Witnesses.**

Defendants' motion contains no reference to Rule 26(c)'s standard, or the heavy burden they must carry to demonstrate the need for preventing a deposition. Indeed,

3

Defendants make no serious attempt to satisfy Rule 26(c), and argue only that the witness disclosures do not contain any new information and the witnesses already provided testimony on the disclosed topics during their fact depositions. See Dkt. 1558 at 4. Standing alone, however, Defense counsel's characterization of the scope of Berger and Fallon's future testimony is insufficient to bar Plaintiffs from discovering the metes and bounds of their personal knowledge and potential qualifications to offer expert testimony. In short, depositions of the hybrid witnesses are necessary because the 26(a)(2)(c) disclosures discuss topics outside the hybrid witnesses' personal knowledge and experience or the scope of their prior testimony.

    The purpose of Rule 26(a)(2) is disclosure and preventing trial by surprise, and Defendants' assertion that Plaintiffs will not suffer prejudice is unfounded, and insufficient justification to forego standard practice. Indeed, the Rules expressly permit the deposition of all persons identified as an expert whose opinions may be presented at trial. Fed. R. Civ. P. 26(b)(4). More broadly, when an expert is retained by a party to develop analysis and opinions to which to testify, they are required to provide a detailed report of their qualifications, the information they considered, and their opinions and their bases. *See* Fed. R. Civ. P. 26(a)(2)(B). For witnesses with personal knowledge of the disputed issues who also possess relevant technical expertise, the Rules do not require an expert report, but still mandate the disclosure of the "subject matter on which the witness is expected to present evidence" and a

4

"summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C). As the advisory committee explained, the disclosure under this provision is less extensive than that for retained experts in part because "these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Committee Note to 2010 amendment to Rule 26(a).[4]

To these ends, district courts in this Circuit have concluded that when a deposed witness is later identified as a hybrid witness, the opposing party is entitled to a deposition on the disclosed expert opinions. *See Frasca v. NCL (Bahamas) Ltd.*, 2014 WL 970060, at *2–3 (S.D. Fla. Mar. 12, 2014) (allowing additional deposition is "the only fair approach" where witness had not been disclosed as hybrid or expert at time of original fact deposition); *Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp.*, 2017 WL 5665346, at *5 (S.D. Fla. Nov. 6, 2017) (employee belatedly disclosed as "hybrid witness" was subject to second deposition after designation, and ultimately excluded for failure to comply with disclosure requirements); *see also Desrosiers v. Giddings & Lewis Mach. Tools LLC*, 2009 WL 4406149, at *1 (D. Md. Nov. 25, 2009) (ordering additional deposition of previously-deposed hybrid witness, "in light of his new role as defense expert witness," after expert disclosure), *objections sustained in part and overruled in part*

---

[4] Notably, Elliot Berger is no longer a 3M employee, and has been specially retained and generously compensated by Defendants to provide testimony in this action.

*sub nom. Desrosiers v. MAG Indus. Automation Sys., LLC*, 2010 WL 2132826, at *3 (D. Md. May 25, 2010) (reversing on other grounds, but affirming entitlement to deposition).

Because Defendants fail to demonstrate good cause for preventing the depositions of Fallon and Berger, their motion should be denied.

### II. Defendants' Overbroad Disclosures Justify The Additional Depositions of Fallon and Berger.

Defendants argue that they disclosed Berger and Fallon as Rule 26(a)(2) experts "out of an abundance of caution, in case Plaintiffs argue that any of the testimony Mr. Berger and Dr. Fallon have already provided as fact witnesses is subject to Rule 702." Dkt. 1558 at 2. Such hybrid witness testimony would be limited to the percipient knowledge Berger and Fallon gleaned in the course of their ordinary work, and already provided as fact witnesses in their personal capacities. That same narrower scope is reflected in purported "trial direct" deposition testimony that Defendants took from both Berger and Fallon, pursuant to the cross-notice provisions of Pre-Trial Order No. 13. *See* PTO 13, Dkt. No. 554, July 30, 2019, at 9-10. Defendants claim that "Plaintiffs have already explored all of the opinions the witnesses will provide." *See* Dkt. 1558 at 1. If that is true, and

6

Defendants merely seek to use[5] or elicit the testimony already provided in prior personal depositions, Plaintiffs do not require depositions of Berger and Fallon.

At times, Defendants appear to recognize that Fallon and Berger have not been properly proffered as experts on any subject that is based on facts outside of their direct and personal knowledge. *See* Dkt. 1558 at 2. And Plaintiffs do not dispute that Defense Counsel noticed and conducted trial-directs of both witnesses during their fact depositions. As stated above, to the extent Defendants merely seek to use or elicit the same testimony elicited during Fallon and Berger's earlier personal depositions, Plaintiffs would be willing to forego the expert depositions of the hybrid witnesses.

However, the disclosures signed by defense counsel go well beyond the characterization Defendants provide in their motion, and reflect that Defendants intend to elicit facts and opinions from Fallon and Berger regarding events to which they have no personal knowledge, and which were not discussed during any prior testimony. In this way, Defendants attempt to dramatically expand the subject matters on which, and capacities in which, Fallon and Berger can testify after the close of corporate discovery. Accordingly, Plaintiffs seek their depositions to clarify

---

[5] Plaintiffs reserve all rights as to appropriate evidentiary objections to the use of any prior deposition testimony at trial.

7

and discover the complete summary of facts and opinions to which the witnesses expect to testify.

### a. Elliot Berger's Disclosure and Testimony

Defendants argue that Berger has personally been deposed for five days and has already discussed the topics covered in his disclosure. Not so. Defendants' Disclosure of Berger contains previously undisclosed expert analysis that Plaintiffs are entitled to probe, as well as significant facts and opinions not only beyond the scope of Berger's prior individual deposition testimony, but also beyond the scope of Berger's personal knowledge.[6] Defendants elide the distinction between fact and corporate deposition testimony, misconstrue his prior testimony, and ignore the source and basis of the facts and opinions to which Berger intends to testify.

First, Defendants fail to mention the distinction between personal and corporate testimony, ignoring the significant work Berger has undertaken as Defense counsel's retained witness, and treating Berger's personal testimony and 3M's corporate testimony interchangeably. *See* Exhibit A at 10 (attributing 3M corporate testimony to Berger as a hybrid witness); Dkt. 1558 at 4-5 (same). Pursuant to Rule

---

[6] In addition to the inquiry necessary on Berger's newly-disclosed expert opinions, and the scope of Berger's personal versus corporate knowledge, the Berger Disclosure also contains several allegations on which Berger almost certainly has ***no*** personal knowledge, including the state of mind of domestic and foreign government actors. *See*, *e.g.*, Exhibit A at 10 (Berger expected to testify as to what "the French Army thought.").

8

30(b)(6), 3M designated Berger to testify on their behalf, and he was permitted (and undertook) investigations to develop factual knowledge to present on behalf of 3M. As a hybrid witness, Berger would only be permitted to testify as to the percipient knowledge he developed in the ordinary course of his job, as informed by any relevant technical expertise. A hybrid witness may not properly go beyond that percipient knowledge in developing new facts, analyses, and opinions for purposes of testifying in litigation. *See Rossi v. Darden*, 2017 WL 2129429, at \*4 (S.D. Fla. May 17, 2017) ("providing a technical evaluation of evidence he had reviewed in preparation for trial" is the realm of retained experts, not "hybrid" experts); *Hartford Steam Boiler Inspection & Ins. Co. v. Menada, Inc.*, 2018 WL 3911212, at \*6 (S.D. Fla. April 4, 2018). Information learned in preparation for providing corporate testimony is neither properly within the scope Berger's potential trial testimony nor would it represent an area on which there were prior opportunities for personal, fact deposition testimony.

The potential confusion between corporate and personal knowledge is emphasized here because Berger engaged in an extensive *post hoc*, litigation-driven review of evidence, in preparation to give the several days of corporate testimony on which Defense counsel designated Berger.[7] Berger testified that, in developing

---

[7] Defendants rely in part on claims of burden to Berger, but the number of deposition days for which Berger has sat is due to Defendants' decision to repeatedly designate

his 30(b)(6) testimony, he met with counsel, "reviewed documents on my 3M computer," "reviewed documents that were provided to me by the attorneys," and "interviewed some current and former employees on various topics." *See* Exhibit G 11/13/19 Berger 30(b)(6) Dep. Tr. at 40:9-41:18.  He testified that he began this investigation and review of evidence in September 2019, well after Berger's formal retirement from 3M.  *Id*.  Berger described a similar, attorney-involved preparation process in connection with his September, 2020 30(b)(6) deposition.  *See* Exhibit H, 9/25/20 Berger 30(b)(6) Dep. Tr. at 282:22-283:3 (of the documents Berger reviewed in preparation, "Some of the documents came from my files, some came from corporate files, some came from discoveries.  [Counsel] assembled the documents for me.").

Beyond identifying the true scope of Berger's personal knowledge, Plaintiffs have also not had adequate opportunity to probe the newly-disclosed expert opinions to which Berger intends to testify.  Defendants' Berger disclosure contains not only the testimony discussed above, but also apparent expert opinions that run the gamut from regulatory matters and scientific conclusions, to the feasibility of alternative designs. *See generally* Exhibit A.  At the time of his only personal-capacity deposition, December 2019, Plaintiffs had no notice that Berger would offer expert

---

Berger as a corporate representative.  Plaintiffs previously noticed only one, two-day deposition of Berger in his personal capacity.

testimony, which had not been disclosed at the time. Because Defense counsel now intends to elicit such testimony from Berger, Plaintiffs' prior examination of Berger cannot be considered an adequate opportunity to investigate those then-undisclosed expert opinions.

### b. Eric Fallon's Disclosure and Testimony

As to Fallon, Defendants' disclosure similarly includes significant expert testimony—in this instance on behalf of the Military and on the subject of Military policies, practices, rules—that was beyond the scope of his deposition.[8] As such, Plaintiffs are entitled to take an additional deposition of Fallon regarding these new matters on which his testimony was previously forbidden.

Fallon was initially disclosed to Plaintiffs as merely a "3M employee with knowledge of 3M business operations and Combat Arms marketing, including to U.S. government customers." *See* Exhibit D, Defendants' Initial Disclosures, at 2. At the Parties' initial discovery conference in June 2019, Defendants described Fallon as a technical service specialist unlikely to have relevant information from before 2012.

Now, however, Defendants' Motion for Protective Order couches Fallon as "an audiologist who served in the United States Army for 24 years in a variety of

---

[8] *See* Exhibit C at 11:21-15:25

11

hearing conservation roles," who plans to offer expert testimony regarding "his experience with the CAEv2 in the military, and his more general experience with the Army's hearing conservation program." *See* Dkt. 1558 at 7.  Defendants disclose that "Fallon is expected to provide testimony on the Department of Defense ('DOD') and Army Hearing Conservation Program's requirements and guidance as it relates to hearing conservation, hearing protection devices, and the manner in which this guidance was or was not implemented." *See* Exhibit B at 4.

The Disclosure further states that Fallon will testify on the topics of the use of the CAEv2 within the Military, Military knowledge regarding instructions and fit of the CAEv2 within the Military, and other topics including interpretations of Department of Defense Instruction 6055.12, Department of the Army Pamphlet 40-501, the Army's institutional awareness with regard to fitting the CAEv2, and the use or non-use of hearing protection in the military as a general global matter. *See generally* Exhibit B.  But Fallon was neither authorized nor qualified to testify as to any of these topics on behalf of the Military or as an expert on the Military in his previous deposition.  The Department of Defense, Counsel for the US Army, specifically objected to and prohibited Fallon from providing this kind of testimony, both before and during Fallon's prior deposition. *See* Exhibit C at 11:21-15:13 (statement of Major R. Wald, Department of Defense, Counsel for the Army). Indeed, Fallon confirmed under oath that he understood that he was not giving

testimony on behalf of the US Military or the Department of Defense. *See* Exhibit C at 15:22-25. Consistent with this scope limitation, when Fallon attempted to testify as to Army policies, practices, and procedures, the Department of Defense consistently objected "to the extent the witness purports to be speaking on behalf of the government." *See* Exhibit C at 734:11-21; *see also id.* at 752:25-753:17 (objecting to extent Fallon purports to speak for the military); *id.* at 754:1-13 (same); *id.* at 776:24-777:10 (same); *id.* at 798:13-22 (same).

Defendants claim they have disclosed Fallon's intent to provide this previously-forbidden testimony as a mere "precautionary" step, to clarify that Fallon will repeat the hybrid expert/fact opinions he previously aired in depositions. *See* Dkt. 1558 at 2. But as is clear above, Fallon was not authorized to provide any such testimony on the topics in the Disclosure in his prior depositions: Per the Army's authorization, Fallon's "may not purport to testify on behalf of the Department of the Army or announce what is or was a policy position of the Department of the Army," and his testimony "cannot be… accorded any additional weight as would accompany an expert's testimony." *See* Exhibit C at 11:21-15:13.

The Fallon Disclosure describes expert testimony in which Fallon purports to expertly interpret and speak to military regulations and policy, and further purports to speak on the military's behalf with regard to institutional knowledge and compliance with regulations. Because such testimony was disallowed in Fallon's

13

prior deposition, it cannot be the case that Fallon's newly-disclosed expert testimony will be limited to the opinions expressed in his deposition.  Plaintiffs are therefore entitled to depose Fallon on his expert opinions and his bases for them.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' December 9, 2020 Motion, and allow Plaintiffs' seven-hour depositions of Berger and Fallon to proceed as ordered in PTO 60.

Dated: December 11, 2020

>
> Respectfully submitted,
>
> */s/ Christopher A. Seeger*
> Christopher A. Seeger, Co-Lead Counsel
> (Admitted Pro Hac Vice)
> New Jersey State Bar No. 042631990
> Seeger Weiss LLP
> 55 Challenger Road 6th Floor
> Ridgefield Park, NJ 07660
> Tel.: (212) 584-0700
> cseeger@seegerweiss.com
>
> Bryan F. Aylstock, Lead Counsel
> Florida State Bar No. 078263
> Aylstock, Witkin, Kreis & Overholtz, PLLC
> 17 East Main Street
> Suite 200
> Pensacola, FL 32502
> Tel.: (850) 202-1010
> baylstock@awkolaw.com
>
> Shelley V. Hutson, Co-Lead Counsel
> (Admitted Pro Hac Vice)
> Texas State Bar No. 00788878

Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, I caused the foregoing Memorandum of Law to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/* Christopher A. Seeger

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum in Opposition to Defendants' Motion for a Protective Order contains 3,266 words per my word-processing system, and including all words exhibited within Plaintiffs' Certificates of Service, Conference, and Word Amount.