## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| | Judge M. Casey Rodgers |
| This Document Relates to: *Lloyd Baker*, No. 7:20-cv-00039; *Luke Estes*, No. 7:20-cv-00137; *Stephen Hacker*, No. 7:20-cv-00131; *Lewis Keefer*, No. 7:20-cv-00104; *Dustin McCombs*, No. 7:20-cv-00094 | Magistrate Judge Gary R. Jones |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CONSOLIDATION OF BELLWETHER GROUP A FOR TRIAL

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................1

I.     3M Fails To Identify Specific Risks Of Prejudice Or Confusion. ..................1

II.    The Common Issues Outweigh The Individual Differences. .........................4

       A.   Plaintiffs' claims turn on common facts that will be proven by common evidence..................................................................5

       B.   The differences in law identified by 3M are neither significant nor material.........................................................................7

III.   Consolidated Bellwether Trials Will Advance The Resolution Of This MDL. ................................................................................................8

IV.   COVID-19 Does Not Justify Sacrificing The Benefits Of Consolidation.............................................................................................9

V.    3M Fails To Justify Separate, Randomly Ordered Trials.............................10

CONCLUSION ............................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Bailey v. Northern Trust Co.*,

   196 F.R.D. 513 (N.D. Ill. 2000) .........................................................................3, 5

*Blount v. Boston Scientific Corp.*,

   2019 WL 3943872 (E.D. Cal. Aug. 21, 2019) ............................................. 2, 5, 9

*Boles v. Eli Lilly & Co.,*

   2015 WL 6132478 (S.D. Ind. Oct. 19, 2015).........................................................5

*Campbell v. Boston Scientific Corp.*,

   882 F.3d 70 (4th Cir. 2018) ...............................................................................2, 10

*Eghnayem v. Boston Scientific Corp.*,

   873 F.3d 1304 (11th Cir. 2017) ..................................................................... *passim*

*Fisher v. Ciba Specialty Chems. Corp.*,

   245 F.R.D. 539 (S.D. Ala. 2007).......................................................................3, 10

*Frankum v. Boston Scientific Corp.*,

   2015 WL 3832187 (W.D.N.C. June 22, 2015).......................................................9

*Gen. Motors Corp. v. Farnsworth*,

   965 P.2d 1209 (Alaska 1998) .................................................................................8

*Grayson v. K-Mart Corp.*,

   849 F. Supp. 785 (N.D. Ga. 1994)..........................................................................3

*Green v. Beer*,

   2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009) ........................................................7

*In re Bristol-Meyers Squibb Co.*,

   975 S.W.2d 601 (Tex. 1998) ..................................................................................8

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,

   2016 WL 10719395 (N.D. Tex. Jan. 8, 2016)........................................................2

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,

   2010 WL 797273 (M.D. Ga. Mar. 3, 2010) ........................................6, 9

*In re Repetitive Stress Injury Litig,*

   11 F.3d 368 (2d Cir. 1993) ..................................................................6

*In re Silica Prods. Liab. Litig.*,

   398 F. Supp. 2d 563 (S.D. Tex. 2005)...................................................5

*In re Stand 'N Seal, Prods. Liab. Litig.*,

   2009 WL 2224185 (N.D. Ga. July 21, 2009)......................................8, 9

*In re Syngenta AG MIR 162 Corn Litig.*,

   2017 WL 2876767 (D. Kan. July 6, 2017)........................................7, 11

*In re Welding Fume Prods. Liab. Litig.*,

   2006 WL 2869548 (N.D. Ohio Oct. 5, 2006).........................................12

*Laughlin v. Biomet, Inc.*,

   2020 WL 1307397 (D. Md. Mar. 18, 2020).......................................4, 5

*Lockaby v. JLG Indus.*,

   233 F. App'x 909 (11th Cir. 2007).........................................................2

*Malcolm v. Nat'l Gypsum Co.*,

   995 F.2d 346 (2d Cir. 1993)—reversing ...............................................5

*Soproni v. Polygon Apartment, Ptrs.*,

   971 P.2d 500 (Wash. 1999) ..................................................................8

*Ulysse v. Waste Management, Inc.*,

   2013 WL 11327137 (S.D. Fla. Sept. 13, 2013).....................................3

*United States v. Buckner*,

   750 F. App'x 905 (11th Cir. 2018).........................................................4

*United States v. Stone*,

   9 F.3d 934 (11th Cir. 1993) .............................................................1, 2

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE

    AND PROCEDURE § 2384 (3d ed. 2020)....................................................................4

Manual for Complex Litigation, Fourth § 22.93 ....................................................11

*Trials and Tribulations*, U.S. Chamber Institute for Legal Reform,

    (Oct. 2019)............................................................................................................1

# ARGUMENT

3M's speculative opposition to consolidating the Group A Bellwethers (and any other bellwether plaintiffs) lacks any grounding in Eleventh Circuit law.[1]  3M feigns openness to some form of consolidation after two dozen individual trials[2] while launching broad-sides against consolidated trials by attacking one of the judicial system's pillars, the jury.  Juries are frequently called upon to find the truth in equally complex cases that involve not merely money damages, but individual liberty and fundamental constitutional freedoms.   And, as in those cases, consolidation here will promote fair and efficient resolution of Plaintiffs' claims, redounding to the benefit of the parties, the witnesses, and the Court.

## I.      3M Fails To Identify Specific Risks Of Prejudice Or Confusion.

3M admits that "there is a common issue at the center of these cases," ECF 1566 at 1, but argues that consolidation is at odds with a bellwether process because the jury will "blend together" the merits of the individual cases.  *Id.* at 4.  However, "[f]ew tenets are more fundamental to our jury trial system than the presumption that

---

[1] 3M makes no attempt to distinguish any of the cases Plaintiffs cited in support of consolidation, and "agree[s]" with the only Eleventh Circuit case it cites, *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304 (11th Cir. 2017), which affirmed a consolidated trial of four product liability defect cases.  ECF 1566 at 11.

[2] 3M's assertion that future consolidation may be appropriate, ECF 1566 at 2, cannot be reconciled with its citation to a publication that includes a section headlined "Multi-Plaintiff MDL Trials Violate Defendants' Due Process Rights." *Id.* at 8; *see Trials and Tribulations*, U.S. Chamber Institute for Legal Reform, at 8 (Oct. 2019).

juries obey the court's instructions." *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993); *see, e.g.*, *Lockaby v. JLG Indus.*, 233 F. App'x 909, 910 (11th Cir. 2007) (noting that the assumption "that jurors carefully follow instructions . . . underpins our constitutional system of trial by jury."). The Eleventh Circuit therefore requires consideration of the extent to which jury instructions and special interrogatories can alleviate specific risks of confusion due to consolidation. *See Eghnayem*, 873 F.3d at 1313-14. And Courts repeatedly reject bald assertions that a significant risk of prejudice exists simply because a defendant will have to defend itself against multiple plaintiffs. *See Blount v. Bos. Sci. Corp.*, 2019 WL 3943872, at *3 (E.D. Cal. Aug. 21, 2019); *Eghnayem*, 873 F.3d at 1314; *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74-75 (4th Cir. 2018); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 10719395, at *2 (N.D. Tex. Jan. 8, 2016).

3M curiously ignores this precedent, and fails to either identify any specific source of confusion or explain why appropriately-tailored jury instructions, special verdict forms, or cautionary instructions, ECF 1551 at 8 & 16, will prove insufficient. *See Campbell*, 882 F.3d at 75 (rejecting assertions of jury confusion unsupported by evidence). Rather than grapple with the relevant law, 3M cites three employment discrimination cases for the proposition that consolidation will confuse the jury. ECF 1566 at 4-5. But these cases are inapposite, as they lack any common issue, a fact that 3M concedes is present. *Compare* ECF 1566 at 1 ("CAEv2 and its

background" is "a common issue at the center of these cases.") *with Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 787-89 (N.D. Ga. 1994) (concluding each plaintiff's age-related demotion was based upon "wholly separate acts of the defendant"); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 514-18 (N.D. Ill. 2000) (finding no evidence that the claims were related in any respect); *Ulysse v. Waste Management, Inc.*, 2013 WL 11327137, at *1-5 (S.D. Fla. Sept. 13, 2013) (severing discrimination claims of 79 plaintiffs because they were based on 79 "different factual situations").

On its face, 3M's argument would bar any consolidated trial involving multiple defendants or plaintiffs. This is simply not the law. *See Eghnayem*, 873 F.3d at 1313. Pursuant to Rule 42(a), courts "may consolidate multiple actions that involve a common question of law or fact" and, in this circuit, "have been urged to make good use of [consolidation] in order to expedite [] trial and eliminate unnecessary repetition and confusion." *Id.* at 1313-14 (internal quotation marks omitted); *see also* ECF 1551 at 3 n.1 (collecting cases). Indeed, "[f]ederal juries are routinely asked to parse facts that are relevant to particular claims or particular parties, and are able to do so without difficulty so long as counsel presents the evidence in a cogent, orderly fashion that makes clear which evidence attaches to which particular claims or defenses." *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 543–44 (S.D. Ala. 2007). And jurors ably carry out these responsibilities in not only civil trials, but also criminal trials, including sprawling,

complex conspiracies—cases with far more at stake than monetary damages. *See United States v. Buckne*r, 750 F. App'x 905, 908 (11th Cir. 2018) (affirming conviction and life sentence in part because jury instructions prevented prejudice). In this district, for example, three defendants charged as part of a conspiracy including more than 29 indicted individuals were tried together in October 2020. The federal jury found one defendant guilty of conspiracy to commit wire fraud, theft of government funds and aggravated identity theft, and also returned a not-guilty verdict as to two defendants on charges of conspiracy and theft of government funds. *See United States v. Crawson*, 5:19-cr-00077-TKW-MJF, ECF 842, 844, 845, 846 (Oct. 22, 2020), PX3.

## II.    The Common Issues Outweigh The Individual Differences.

3M speculates that factual and legal differences regarding the manner and extent of each plaintiff's injury may "overwhelm" the jury. ECF 1566 at 11. Not so. It is black letter law that notwithstanding individual proof of causation and damages, "actions by different plaintiffs arising out of the same tort, such as . . . use of a common product that is alleged to be defective" are suitable for consolidation. 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2384 (3d ed. 2020); *see Eghnayem*, 873 F.3d at 1314; *Laughlin v. Biomet, Inc.*, 2020 WL 1307397, at *7 (D. Md. Mar. 18, 2020); ECF 1551 at 3 n.1. 3M in fact "agree[s]" with the Eleventh Circuit precedent that differences in causation are not

enough to bar consolidation of products liability claims, ECF 1566 at 11, and fails to identify any differences in either fact or law that necessitate individual trials.

### A.    Plaintiffs' claims turn on common facts that will be proven by common evidence.

3M argues that consolidation is "untenable" because "individual product usage testimony will be critical," since these Plaintiffs used the CAEv2 "at different times, in different situations, [and] in different locations."  ECF 1566 at 10-11.  But, in general, "there is no reason to believe that a jury cannot keep track and individually assess how the differing situations and medical histories of each Plaintiff affected their damages or causation."  *Blount*, 2019 WL 3943872, at *4. "[T]he existence of facts unique to each plaintiff does not preclude consolidation. Were it otherwise, consolidation would never occur in products liability litigation." *Laughlin*, 2020 WL 1307397, at *7.[3]  Because plaintiffs will never be carbon copies

---

[3] None of the cases 3M cites are to the contrary, as they lack common issues—which 3M admits are present here.  For example, *Bailey*, ECF 1566 at 11, was an employment discrimination case, in which there was no common wrongful act or corporate policy among the plaintiffs.  196 F.R.D. at 516.  The injury alleged in *Boles v. Eli Lilly & Co.*, was not caused by use, but rather the specific manner of an individual's discontinuation of use.  2015 WL 6132478 (S.D. Ind. Oct. 19, 2015). And neither *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651-52 (S.D. Tex. 2005)—remanding for lack of jurisdiction claims alleging silicosis from hundreds of unrelated worksites—nor *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 352 (2d Cir. 1993)—reversing a consolidated asbestos trial involving 48 plaintiffs and 25 defendants because "there was no finding of common ownership, common suppliers, or common practices"—bear any resemblance to this case, about 3M's liability to five plaintiffs for auditory injuries caused by use of a single product.

or clones, all product liability litigation involves causation issues that are plaintiff-specific, but courts have repeatedly concluded that those individual questions are no bar to consolidation. *Eghayem*, 873 F.3d 1314; *see In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *3 (M.D. Ga. Mar. 3, 2010) ("While each of Plaintiffs' specific medical conditions may be different, those differences and their significance can be explained to a jury and easily understood.").

In particular, 3M points to differences among the Group A Bellwethers' injuries, use of hearing protection, and exposures to noise—the individual evidence of causation and damages that has not previously prevented consolidated trials in this Circuit. Nor do the facts warrant separate trials here, as the differences are largely immaterial, and ultimately outweighed by common issues. For example, 3M complains that noise exposures occurred in different places. ECF 1566 at 16. But a plaintiff's location at the time of their injury is irrelevant to their strict liability claims. As to injury, 3M's Appendix A demonstrates that the Group A Bellwethers have more in common than not: All five allege their use of the CAEv2 caused their tinnitus, and four of the five plaintiffs allege it also caused noise-induced hearing loss.[4] ECF 1566 App. A. All received the CAEv2 in the course of military service, will use the same evidence to prove that 3M concealed information regarding the

---

[4] *In re Repetitive Stress Injury Litig.* is therefore inapposite. *See* 11 F.3d 368, 371, 373 (2d Cir. 1993) (denying consolidation of claims alleging "a diverse array" of 15 distinct injuries allegedly caused by "a variety of mechanical devices.").

risks of the CAEv2, and allege injuries suffered during military training.  ECF 1551 at 5.  The individual issues regarding specific causation are secondary to the common issues regarding the design, testing, manufacture, marketing, and sale of the CAEv2 that will be proved through common documents, witnesses, and experts—i.e. whether, due to its design and/or warnings, the CAEv2 provided users with inadequate protection from loud noise.

###### B.   The differences in law identified by 3M are neither significant nor material.

3M further speculates that variation among "occasionally inconsistent" potentially applicable laws may confuse the jury.  ECF 1566 at 17-19.  However, 3M fails to identify any material differences or actual inconsistencies.   In its Appendix B, 3M identifies five substantive categories that have some variation among the four states' law Plaintiffs argue should govern the Group A Bellwethers' claims.  *See* ECF 1557 at App. B.  Two of these categories, whether a state provides for or limits punitive damages and whether a state has a modified or pure comparative framework are largely immaterial to consolidation because they involve "legal issues for the Court" and therefore will not confuse the jury.  *See In re Syngenta AG MIR 162 Corn Litig*., 2017 WL 2876767, at *2 n.3 (D. Kan. July 6, 2017).  For the two time limitation categories, to the extent those defenses remain viable at trial, interrogatories regarding knowledge of injury and fault can be put to the jury.  *Green v. Beer*, 2009 WL 3401256, at *8 (S.D.N.Y. Oct. 22, 2009).

Similarly, although 3M identifies variation in the design defect definitions, there are only two tests: risk-utility and/or consumer expectations. *See* ECF 1566 at 18 & App. B.  And the two states at issue that define defect pursuant to consumer expectations, Alaska and Washington, also provide for design defect based on a risk-utility test.  *See Gen. Motors Corp. v. Farnsworth*, 965 P.2d 1209, 1220 (Alaska 1998); *Soproni v. Polygon Apartment Ptrs.*, 971 P.2d 500, 504-05 (Wash. 1999).  All the Group A Bellwethers' states provide for a risk-utility test, and the additional consumer-expectations option can be provided as appropriate on the special interrogatories and verdict forms.  *See* ECF 1551 at 6-8.

## III.   Consolidated Bellwether Trials Will Advance The Resolution Of This MDL.

3M suggests that consolidation is inappropriate because the CAEv2 litigation is not "mature."  ECF 1566 at 8.  However, the sole case cited by 3M in support of this proposition, *In re Bristol-Meyers Squibb Co.*, 975 S.W.2d 601 (Tex. 1998), stated in dicta that "the breast implant litigation is not a mature tort," before concluding that the consolidation of claims for trial was neither an abuse of discretion nor the cause of any demonstrated prejudice.  *Id.* at 603-05.

3M agrees that the bellwether trials should provide representative verdicts that can be applied to the broader pool of 220,000 cases, but seems intent on delaying that resolution for years.  Consolidated bellwether trials are an efficient way to progress mass-tort litigation to a successful conclusion.  *See In re Stand 'N Seal,*

*Prods. Liab. Litig.*, 2009 WL 2224185, at *2; *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *3.   Consolidation would enable the parties to obtain results for multiple claims in less time and at lower cost than multiple separate trials.  *Id.*  Having the same jury adjudicate the claims of multiple plaintiffs is valuable under the circumstances present here, because it will reveal which case-specific facts bear on value of Plaintiffs' claims, without risking inconsistent adjudications on common issues. *See, e.g.*, *Frankum v. Bos. Sci. Corp.*, 2015 WL 3832187, at *1 (W.D.N.C. June 22, 2015) ("Consolidation of actions involving common questions of law and fact also avoids the risk of inconsistent judgments."); *Blount*, 2019 WL 3943872, at *1.

## IV.   COVID-19 Does Not Justify Sacrificing The Benefits Of Consolidation.

3M argues that a consolidated trial will be "protracted" and "potentially unsafe" due to COVID-19.   ECF 1566 at 19-21.   This argument rests on two propositions, each unfounded.

First, 3M claims that case-specific testimony will add six trial days to a consolidated trial.  Setting aside that Plaintiffs' experience suggests 3M's estimate is excessive, it is undisputed that a consolidated trial will allow the testimony regarding defective design, negligence, and general causation to be set forth only once, avoiding potential inconsistent adjudications, and saving the parties and witnesses from the burdens of duplicative testimony.  ECF 1551 at 10.  Nor does 3M

dispute that a single trial of the Group A Bellwethers would require substantially less time to complete than five single-plaintiff trials, and would "sacrifice the substantial savings of time and money that consolidation offers." *Campbell*, 882 F.3d at 76.

Second, 3M claims that a consolidated trial will fill the courtroom with additional people, unable to socially distance. The pandemic should be (and has been) taken seriously, but it cannot justify foregoing the efficiencies of consolidation. As 3M concedes, the future status of COVID-19, a vaccine, or local health regulation is unknowable. What is known, however, is that an array of precautions can be taken to ensure that any trial is conducted safety, including remote participation, masking protocols, and limits on public in-person attendance. In fact, the parties have both identified overlapping experts and witnesses on general and case-specific issues. Single-plaintiff trials would thus force the common attorneys, experts, and witnesses to repeatedly travel across the country. 3M's proposal would create more health risks than it would solve, all at the expense of the "efficient administration of justice." *See Fisher*, 245 F.R.D. at 543.

## V.    3M Fails To Justify Separate, Randomly Ordered Trials.

For the reasons set out above and in Plaintiffs' opening brief, a single joint trial is feasible through careful framing of jury instructions and verdict forms, and will provide tremendous efficiencies for the Court and both parties. 3M argues that

instead of taking advantage of these benefits, the Court should hold two dozen single-plaintiff trials in a random order.  ECF 1566 at 22-23.  To the contrary, should concerns regarding the length or complexity of a five-plaintiff trial weigh against the consolidation of all five cases, the Group A Bellwethers should still be consolidated, albeit in smaller groups.  To that end, Plaintiffs offer two alternative proposals.[5]

First, the Court could divide the Group A Bellwethers into two trials, Trial A1 consisting of Estes, Keefer, and Hacker, and Trial A2 for Baker and McCombs. Each group would still share the common issues relating to 3M's liability for the CAEv2, and balances Plaintiff and Defense selections.  In addition, each would be limited to two states' law.  *See, e.g.*, *In re Syngenta,* 2017 WL 2876767, at *2 (ordering multiple two-state trial groups).  Trial A1 would require the application of Georgia and Kentucky law, ECF 1540, two states that apply only a risk-utility test for design defect.  *See* ECF 1551 at 7; ECF 1566 at 18 & App. B.  Trial A2 would involve Washington and Alaska law, both states that provide for a consumer expectations test in addition to a risk-utility test for design defect.  *See* ECF 1551 at 7; *supra* II.B.  These subgroups would preserve the benefits of having Plaintiff and Defense selected bellwethers evaluated by a common jury and provide many of the

---

[5] The Court has a variety of tools at its disposal to promote the efficient resolution of multiple claims.  *See* Manual for Complex Litigation, Fourth § 22.93

efficiencies of a single-joint trial, allowing five cases to be tried in approximately half the time that would be required for five individual trials.

Alternatively, the Court could begin with a consolidated trial of the two plaintiffs governed by Georgia law, Estes and Keefer. *See In re Welding Fume Prods. Liab. Litig.*, 2006 WL 2869548, at *6 (N.D. Ohio Oct. 5, 2006) (consolidating for first trial claims of two plaintiffs from the same state). Consolidating these two cases will save the court dozens of hours of duplicative testimony on common issues, while only requiring the jury to apply a single state's law to two claims of hearing loss and tinnitus caused by use of the CAEv2 during training at Ft. Benning. The experience from conducting one consolidated trial, "will also give the Court critical information to assess the feasibility of future consolidation," ECF 1566 at 23, and can be used to determine the most efficient path forward.

## CONCLUSION

For the aforementioned reasons, the Group A Bellwethers should be consolidated for trial.

DATED: December 22, 2020

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead
Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660

Tel.: (212) 584-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz,
PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

**_Counsel for Plaintiffs_**

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH CASE MANAGEMENT ORDER NO. 18</u>

I hereby certify that this motion complies with the Cast Management Order

No. 18 and is 12 pages.

*/s/ Christopher A. Seeger*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2020, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Christopher A. Seeger*