**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to All Cases
_____/

# REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Compel Against the Department of Defense.  ECF No. 1433.  In short, Defendants argue the Department has unreasonably delayed in responding to their discovery requests[1] for: (1) noise and ototoxin exposure data; (2) sales and distribution data for the CAEv2; (3) documents related to annual Military Audiology Association "Short Course" meetings from 1999 to 2005; and (4) testing data for hearing protection devices other than the CAEv2.

The district court referred this matter to the undersigned for the preparation and issuance of a report and recommendation.  ECF No. 1437.  The Government filed a response in opposition, ECF No. 1483, and

---

[1] It bears mentioning that, until recently, Defendants sent their discovery requests to the Department as letters rather than by way of Federal Rule of Civil Procedure 45 non-party subpoenas.  The Government acquiesced to this process until Defendants filed a motion to compel in July 2020, ECF No. 1211, which resulted in the Court entering Pretrial Order No. 50.  ECF No. 1340.

Defendants, with leave of court, filed a reply memorandum, ECF No. 1504.[2] The motion, therefore, is ripe for consideration. For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendants' motion to compel should be **DENIED**.

## I.  BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2"). More specifically:

> Plaintiffs assert state law claims for negligence and strict product liability based on design defect and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence per se, and consumer-protection claims. Plaintiffs' design defect claims target two features of the CAEv2, alleging that: (1) its stem was too short for certain users—primarily those with medium to large ear canals—to insert the device deeply enough into their ears to obtain the airtight seal necessary to provide hearing protection; and (2) when the earplug was inserted according to standard fitting instructions, the positioning of the opposing flanges relative to the outer ear caused the basal edge of the third flange of the non-inserted side of the earplug to press against some users' ear canal openings and fold up, causing imperceptible loosening of the seal, which, they claim,

---

[2] Since then, Defendants and the Government continued to meet and confer concerning the issues raised in the instant motion to compel. They advised the Court last week that they reached a stipulation for the production of one category of noise and ototoxin exposure data (certain health hazard assessments pertaining to weapon and vehicle systems) and documents reflecting testing data for hearing protection devices other than the CAEv2, to the extent these documents exist in reasonably accessible locations. ECF No. 1576. All other issues pertaining to additional categories of noise and ototoxin data, sales and distribution data, and "Short Course" meeting materials remain outstanding.

>results in little to no hearing protection for the user.  Plaintiffs' failure-to-warn claims are based on allegations that Defendants failed to provide warnings regarding the alleged dangers inherent in the use of the CAEv2.

MDL ECF No. 1280 at 16–17.  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  MDL ECF No. 704.  Defendants dispute these allegations.  MDL ECF No. 959.

The Government is not a party to this litigation, MDL ECF No. 704 at ¶¶ 16-20, but its relationship to this matter is undeniable.  The docket reflects litigation between the parties over the discoverability of government records, *see, e.g.*, MDL ECF Nos. 977, 1154, 1258, and, until recently, Defendants attempted to invoke the government contractor defense as a shield from state tort liability for those plaintiffs claiming injury from using the CAEv2 during their military service, *see* MDL ECF No. 1280 (denying Defendants' motion for summary judgment based on the government contractor defense and granting Plaintiffs' motion for summary judgment on the same as a matter of law).

Consequently, the parties have identified the United States' various agencies and employees as critical sources of third-party discovery.  For example, the Court has addressed individually the merits of challenges by federal agencies to seven of Defendants' discovery subpoenas for

3

depositions of current government employees.³  Relevant here, Defendants have requested the production of several categories of data and documents from the Department of Defense since mid-2019.

### A. Noise and Ototoxin Data

Defendants first breached the subject of discovery pertaining to noise and ototoxin data in their June 21, 2019, discovery request to the Department of Defense.  ECF No. 1433-1 at 7.  Defendants requested the production of eight categories of "[d]ocuments [r]egarding [n]oise [a]nd [o]toxin [e]xposure [i]n [t]he [m]ilitary," *id.* at 11–12, including "data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons," *id.* at 11.  Defendants offered five bases for their request, the first of which was that "documents regarding noise exposure data—such as noise dosimetry and sound level data—will show that plaintiffs were

---

³ *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-65, 2020 WL 7232079, at *1 (N.D. Fla. Dec. 8, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-56, 2020 WL 6438614, at *1 (N.D. Fla. Nov. 2, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 6787216, at *1 (N.D. Fla. Oct. 29, 2020), *report and recommendation adopted*, 2020 WL 6746620, at *1 (Nov. 17, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-55, 2020 WL 6274824, at *1 (N.D. Fla. Oct. 26, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-54, 2020 WL 6140561, at *1 (N.D. Fla. Oct. 19, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-53, 2020 WL 6065076, at *1 (N.D. Fla. Oct. 14, 2020); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-49, 2020 WL 5994266, at *1 (N.D. Fla. Oct. 9, 2020).

exposed to a wide variety of potentially dangerous noises or ototoxins unrelated to their use of CAEv2[.]" *Id.* at 7.

At the Department's invitation, Defendants clarified their discovery request in a letter dated July 26, 2019. ECF No. 1433-5. Defendants, however, informed the Department in December 2019, that this request for noise and ototoxin data was "de-prioritized." ECF No. 1433-4 at 48. When United States Army Major Collin Evans advised Defendants that he was "unable to locate [this] information and believed it did not exist[,] ECF No. 1433 at 3, Defendants sent the Department a supplemental discovery request on March 17, 2020, that noted government regulations requiring the collection of this data and identified potential sources for locating it. ECF No. 1433-2 at 4–5. On June 26, 2020, United States Army Major Nicole Kim informed Defendants that the Department had not started processing their March 17, 2020, supplemental discovery request because it was prioritizing Defendants' earlier requests and, therefore, did not have a final determination on the production of this data. ECF No. 1433-6 at 4.

**B.    Sales and Distribution Data**

Defendants requested the Department produce "documents regarding purchasing and distribution data" for the CAEv2—from January 1998 through December 2018—in their June 21, 2019, discovery request.

ECF No. 1433-1 at 5, 9.  At the Department's invitation, Defendants clarified their discovery request in a letter dated July 26, 2019.  ECF No. 1433-5.  The Department advised Defendants on March 6, 2020, that it had "provided all responsive records it possesses for" this request.  ECF No. 1483-1 at 1.  Defendants explain in their reply memorandum that the Department produced a spreadsheet to them that "purports to relate to sales and distribution[.]"  ECF No. 1504 at 5; *see also* ECF No. 1504-3.

### C.   "Short Course" Meeting Materials

In their March 17, 2020, supplemental discovery request to the Department of Defense, Defendants requested the Department produce "documents, communications, and presentations related to the annual meetings of the Military Audiology Association from 1999 to 2005."  ECF No. 1433-2 at 4.  Defendants advised the Department this discovery was "highly relevant to [their] government contractor defense[.]"  *Id.*  Defendants contend this request overlaps with Defendants' earlier requests for various training materials, instructions, and communications concerning the CAEv2, and, therefore, any responsive documents were already produced.  ECF No. 1483 at 15.  In any event, the Department searched for responsive documents following Defendants' March 17, 2020, request and found none.  *Id.* at 16 (citing ECF No. 1483-3 at 10).

6

**D.     Defendants' First Motion to Compel and Subsequent Subpoena**

This is not the first motion to compel Defendants have filed against the Department of Defense.  In Defendants' first motion, filed on July 1, 2020, they argued, *inter alia*, that the Department had improperly withheld the production of certain documents, including noise and ototoxin exposure data.  ECF No. 1211.  The district court referred the motion to the undersigned.  ECF No. 1212.

On July 30, 2020, the Court entered a report and recommendation, in which the undersigned concluded that the Department had unreasonably delayed in resolving this discovery request and recommended the district court grant Defendants' motion to compel to the extent it should require the Department to provide a final decision on production by a date certain.  ECF No. 1292 at 25.  The Department objected to the report and recommendation.  ECF No. 1320.

On August 17, 2020—upon review of the Department's objections—the district court directed the parties to issue appropriate subpoenas for any government witness depositions or document productions.  MDL ECF No. 1331 at 47.  The district court memorialized this ruling on August 20, 2020, in Pretrial Order No. 50, in which it explained that "the parties' practice of not issuing subpoenas for [g]overnment witnesses and documents,"

7

although understandable, "is complicating matters and interfering with the fair and efficient progress of discovery[.]"  ECF No. 1340 at 3.  Consequently, the district court declined to adopt the undersigned's report and recommendation and denied as moot Defendants' motion to compel.  ECF No. 1341.

Defendants acted promptly.  On September 4, 2020, they issued a subpoena to the Department of Defense for the production of documents referred to in their earlier discovery requests, including the long-sought-after noise and ototoxin data, sales and distribution data, and "Short Course" meeting materials.  ECF No. 1457-3.  The Department was not served with the subpoena until October 14, 2020—twelve days after Defendants filed the instant motion—and, therefore, did not respond to the subpoena.  ECF No. 1433 at 2, 13; ECF No. 1483 at 3.

## II.  LEGAL STANDARD

By now, the parties and the Government are familiar with the applicable legal framework.  Typically, the Federal Rules of Civil Procedure—specifically Rule 45—govern the production of third-party discovery and objections thereto.  Fed. R. Civ. P. 45; *Citizens Union of City of New York v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).  Not so here because the subject third-party is a federal agency.

Instead, the Court turns to the Housekeeping Statute (5 U.S.C. § 301), the Department of Defense *Touhy*[4] regulations (32 C.F.R. § 97.1, *et seq.*), and the Administrative Procedure Act ("APA") (5 U.S.C. § 706).  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6787216, at **3–5; *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

The Housekeeping Statute authorizes the Department of Defense to adopt regulations concerning testimony by agency employees and the production of government documents. *Touhy*, 340 U.S. at 463.  When deciding whether to authorize or preclude agency employees to testify or produce documents, the Department considers myriad factors, including, in pertinent part, "[w]hether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules[.]"  32 C.F.R. § 97.6(b)(1).  If the agency's decision is challenged on a motion to quash or motion to compel, the Court must determine whether it is arbitrary and capricious under the APA, such that the agency failed to "examine[] the relevant data" or articulate "a rational connection between the facts found

---

[4] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

9

and the choice made," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

A federal agency cannot escape judicial review by endlessly delaying responding to a federal litigant's *Touhy* request. A reviewing court presented with a complaint of agency inaction—as opposed to final agency action—may "compel agency action unlawfully withheld or unreasonably delayed." § 706(1).

Although § 706(1) vests federal courts with the discretion to determine whether agency delay is unreasonable, *Forest Guardians v. Babitt*, 174 F.3d 1179, 1190 (10th Cir. 1999), "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstance before the court," *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "[T]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support such a claim." *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)).

In determining whether an agency has unreasonably delayed reaching final agency action, federal courts frequently apply a six-factor test developed by the District of Columbia Circuit Court of Appeals looking at:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research and Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted).

### III.  DISCUSSION

The thrust of Defendants' motion is that the Department has unreasonably delayed in responding to their *Touhy* requests for the production of three subcategories of noise and ototoxin exposure data, as well as sales and distribution data for the CAEv2 and "Short Course" meeting materials.  ECF No. 1433 at 2–9.  The Government argues that Defendants' motion should be denied because it seeks to compel responses to discovery requests Defendants did not previously send to the Department or to which the Department has already responded.  ECF No. 1483 at 7–16.  The Government further contends that some of the

11

discovery sought by Defendants does not exist. *Id.* at 9, 16. The Court will address in turn each discovery request.

### A.  Noise and Ototoxin Data

Defendants ask the Court to compel the Department of Defense to respond to their *Touhy* requests for three subcategories of noise and ototoxin data: (1) "average noise and exposure per military occupational specialty"; (2) "noise and ototoxin exposures at the bellwether-relevant Army installations"; and (3) "comprehensive, operational and work task potential exposures-based medical surveillance recommendations and DoD lifetime personnel exposure data[.]" ECF No. 1433 at 7. This issue is not before the Court on a clean slate. *See* ECF No. 1292 at 25 (concluding in a report and recommendation that the Department unreasonably delayed in responding to Defendants' *Touhy* requests for these subcategories of noise and ototoxin data). Here, however, the Government presents more nuanced arguments about the Department's delay and evidence in support thereof. "As it turns out, this more copious explanation … makes all the difference." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6787216, at *6.

*First*, Defendants seek the production of "average noise and exposure per military occupational specialty." ECF No. 1433 at 7.

Defendants initially requested this data in their June 21, 2019, *Touhy* request, which sought "data or other documents regarding the amount of noise service members are exposed to in particular specialties, in particular situations, or when operating particular weapons." ECF No. 1433-1 at 11. Defendants further point to their March 17, 2020, supplemental *Touhy* request, which sought "documents related to the noise surveys, identification of noise hazardous areas, and identification of noise-exposed and ototoxin-exposed personnel, which are performed and maintained by the Industrial Hygiene Program Managers for each Army installation per Army Pamphlet 40-501." ECF No. 1433-2 at 4; *see also* ECF No. 1504 at 2. In the instant motion, Defendants state that they "understand" the regulations set forth in Army Pamphlet 40-501 to mean that "the Army collects the required data and calculates the average daily noise exposure of individuals working in each military occupational specialty." ECF No. 1433 at 4.

On the other hand, the Government offers a sworn declaration from Major Kim in which she distinguishes the noise and ototoxin data collected by the military and that requested by Defendants. ECF No. 1483 at 8; ECF No. 1483-3. Major Kim explains that the Army Industrial Hygiene Program Office at each Army installation conducts "industrial hygiene surveys of

13

potential hazardous areas on [Department] installations" and collects this information in a database called the "Defense Occupational Environmental Health Readiness System—Industrial Hygiene," or "DOEHRS-IH."  ECF No. 1483-3 at 5.  The DOEHRS-IH database is searchable but it requires data analysts to build a query and (assuming the query is successful) to analyze responsive data.  Major Kim states that the average noise and ototoxin exposure per military occupational specialty is not readily available in the DOEHRS-IH database and any attempt to determine this information "would require [the Department] to perform an analysis of other data, which is not an analysis the [Department] currently does[.]"  *Id.* at 5–6.

In view of Major Kim's explanation of the limits of the DOEHRS-IH database, the Court concludes the Department's delay in responding to Defendants' *Touhy* request for the average noise and exposure per military occupational specialty has been reasonable.  The data does not exist for production, and basic discovery rules dictate that the Court cannot compel the Department to create it.  *Wachovia Fin. Servs., Inc. v. Birdman*, No. 09-81252-CIV, 2010 WL 11506044, at *8 (S.D. Fla. Sept. 27, 2010).  Moreover, there is no basis for the Court to conclude the Department's refusal to respond to this request is arbitrary and capricious.  The administrative record demonstrates that the Department properly

14

considered the undue burden of using the available information in the DOEHRS-IH database to attempt to respond to this request.  32 C.F.R. § 97.6(b)(1).

*Second*, Defendants seek the production of "noise and ototoxin exposures at the bellwether-relevant Army installations."  ECF No. 1433 at 7.  Defendants requested this information on March 17, 2020.  ECF No. 1504 at 3.  Indeed, they sought production of the "documents identified in Army Pamphlet 40-501[,]" and cited Army Pamphlet 40-501 for the proposition that "the Industrial Hygiene Program Manager at *every Army installation to* … compile the names and social security numbers of noise-exposed and ototoxic-exposed personnel and the magnitude of their noise exposure[.]"  ECF No. 1433-2 at 4 (emphasis added).  The Government contends that the Department has not responded to this *Touhy* request because, according to Major Kim, locating "any sort of exposure data would require [the Department] to conduct searches for particular individuals and examine information that would be generated through that search to attempt to locate data regarding exposure."  ECF No. 1483 at 10–11; ECF No. 1483-3 at 6.  Additionally, the Government argues, and Major Kim explains, that the Department interpreted this *Touhy* request as seeking information protected under the Privacy Act and the Health Insurance

15

Portability and Accountability Act (HIPAA) and sensitive information regarding military installations.  ECF No. 1483 at 11; ECF No. 1483-3 at 7.

The Court concludes the Department's delay in responding to Defendants' *Touhy* request for the noise and ototoxin exposures at the bellwether-relevant Army installations has been reasonable.  This data is not readily available in the DOEHRS-IH database, and the Government contends it remained unclear—until the instant briefing—exactly what documents, information, or data Defendants were seeking.  In any event, there is no basis for the Court to conclude that the Department's refusal to respond to this request is arbitrary and capricious.  The Department has properly considered the undue burden of collecting this information from each individual military base.  Defendants also fail to refute the Government's assertion that this information should not be disclosed because it is privileged or otherwise sensitive.  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6438614, at *5 (citing *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Defense*, 246 F. Supp. 3d 34, 48 (D.D.C 2017)).

*Third*, Defendants seek the production of "comprehensive, operational and work task potential exposures-based medical surveillance recommendations and DoD lifetime personnel exposure data[.]"  ECF No.

1433 at 7.  The Government argues, and Major Kim explains, that any capability of the DOEHRS-IH database to track "lifetime personnel exposure data" is in a "testing phase[,]" and the DOEHRS-IH database does not have a standardized field to track or search for "recommendations."  ECF No. 1483 at 12–13; ECF No. 1483-3 at 6–7.  Defendants do not suggest where the Department may otherwise obtain this information.  Therefore, the Court concludes the Department's delay in responding to this *Touhy* request has been reasonable.  Alternatively, the Department's contention that responding to this *Touhy* request would be unduly burdensome, ECF No. 1483 at 13, is not arbitrary and capricious.  ECF No. 1483 at 13.[5]

In sum, Defendants' motion to compel the production of noise and ototoxin data from the Department of Defense is due to be denied.

**B.   Sales and Distribution Data**

Defendants also ask the Court to compel the Department of Defense to respond to their *Touhy* request for sales and distribution data for the CAEv2.  ECF No. 1433 at 7–8.  Defendants initially requested this data on

---

[5] In their reply memorandum, Defendants suggest they are not seeking lifetime exposure data for "every single servicemember" but, instead, for the "Military Occupational Specialties corresponding to the bellwether plaintiffs."  ECF No. 1504 at 5.  This does not address the Department's chief concern that it would be an undue burden to obtain responsive information or data for a still-unknown number of servicemembers because it would require individual queries in DOEHRS-IH for each servicemember's exposure.

June 21, 2019. ECF No. 1433-1 at 5, 9. Defendants' motion is puzzling because the Department responded to this *Touhy* request on March 6, 2020. ECF No. 1483-1 at 1. Indeed, Defendants acknowledge in their reply memorandum that they received a "single document the United States produced that … purports to relate to sales and distribution[.]" ECF No. 1504 at 5. The Department, therefore, has not unreasonably delayed responding to this *Touhy* request.

In their reply memorandum, Defendants attempt to shift the focus of their argument by attacking the completeness of the Department's response. ECF No. 1504 at 5. This argument fails for two reasons. For starters, any belated argument under § 706(2) fails because it is raised for the first time in a reply memorandum. *QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 280 F.R.D. 694, 695 n.3 (S.D. Fla. 2012). Moreover, Defendants do not suggest—let alone demonstrate—that the Department's response is arbitrary and capricious even if more information or documents would assist Defendants in understanding discovery the Department already produced.

In sum, Defendants' motion to compel the production of sales and distribution data for the CAEv2 from the Department of Defense is due to be denied.

18

## C. "Short Course" Meeting Materials

Finally, Defendants ask the Court to compel the Department of Defense to respond to their *Touhy* request for documents related to annual Military Audiology Association "Short Course" meetings from 1999 to 2005. ECF No. 1433 at 8–9. Defendants requested this discovery on March 17, 2020. ECF No. 1433-2 at 4. The Government argues that any response to this *Touhy* request was subsumed in the Department's responses to similar discovery requests by Defendants for various training materials, instructions, and communications. ECF No. 1483 at 15–16. Nevertheless, Major Kim explains that the Department does not have a repository for this information but the Army Hearing Program Manager at the Army Public Health Center conducted a "secondary search for documents specifically related to military audiology association short courses" and "found no additional responsive information[.]" ECF No. 1483-3 at 10.

The Court concludes that the Department has not unreasonably delayed responding to Defendants' *Touhy* request for "Short Course" meeting materials. The Department believed that any response to this request was subsumed into its responses to Defendants' other discovery requests. Additionally, the Department has conducted a subsequent search for these materials and not located any responsive documents.

In sum, Defendants' motion to compel the production of "Short Course" meeting materials from the Department of Defense is due to be denied.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendants' Motion to Compel Against the Department of Defense, ECF No. 1433, should be **DENIED**.

**IN CHAMBERS** this 4th day of January 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.