UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Baker*, 7:20cv39 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**

The Court has previously determined that Georgia law applies to the Estes and Keefer cases, and Kentucky law applies to Hacker's case. *See* Order, Case No. 3:19md2885, ECF No. 1599.[1] The remaining choice of law question before the Court pertains to the Group A cases of Baker and McCombs. This Order decides the question for Baker.[2] A separate order will follow for McCombs. Baker argues for application of Washington law. Defendants argue for Indiana law.

As with the other three Group A cases, the question of where a plaintiff was injured is central to the choice of law decision. To the extent a plaintiff "sustained" his alleged injuries at a place "subject to the exclusive jurisdiction of the United States within a State," such as military installations within the United States, the Court must apply the substantive law of the state surrounding the military

---

[1] The Court incorporates by reference the general law section of that Order.

[2] The parties' joint stipulation applies to this decision. *See* Joint Stipulation, Case No. 319md2885, ECF No. 1597.

Case 3:19-md-02885-MCR-HTC   Document 1613   Filed 01/17/21   Page 2 of 8

Page 2 of 8

installation. *See* Order, Case No. 319md2885, ECF No. 1599 at 3 (citing authority). Notably, under the statute, the term "State" is narrowly construed and does not include a foreign country. *See Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 655 (W.D. Pa. 2011). Thus, where a plaintiff's injuries were sustained overseas, the Court must apply the choice of law rules of the plaintiff's designated forum. *See id.* at 655-56 (applying the choice of law rules of the forum after concluding that 28 U.S.C. § 5001's predecessor, 16 U.S.C. § 457, did not provide the controlling choice of law rule because the alleged injury occurred on a base in Iraq).

Baker claims he suffered hearing-related injuries related to his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service, both domestically and abroad. The question here is whether he sustained any hearing-related injury while stationed stateside. Based on a preponderance of the evidence, the Court finds that Baker sustained at least one of his claimed injuries, tinnitus, at Fort Lewis in Washington state.

Baker was an infantryman when he entered the military and was specifically assigned to operate the M240 machine gun. While stationed at Fort Lewis between December 2005 and August 2006, Baker participated in urban warfare training exercises designed to prepare soldiers for deployment to the Middle East. These exercises were conducted in a mock city environment and involved room clearing

using flash bang grenades and machine gunfire inside of enclosed concrete structures. Baker described the noise conditions as "extremely loud" and "very concussive." It is undisputed that Baker wore the CAEv2 (yellow end inserted) for hearing protection during this training. Baker testified, both at the evidentiary hearing and in one of his two depositions, that during one urban warfare exercise just before Christmas in 2005, he experienced muffled hearing and ringing in his ears.[3] According to Baker, although the muffled hearing subsided shortly thereafter, he noticed about a week later while sleeping over at a friend's apartment that the ringing in his ears was still present. Baker explained that the ringing was noticeable because his friend's apartment was very quiet, unlike his living quarters on base. Baker testified without hesitation that his hearing was "definitely different" in Fort Lewis, after his training there.

Despite Baker's testimony, it is undisputed that he did not complain to anyone about his hearing issues before August 2006, when he left Fort Lewis, and in fact there is no evidence of Baker having a hearing problem until his diagnosis of bilateral hearing loss and tinnitus in October 2009 by the VA. It is also undisputed that when asked about his noise exposure and hearing injuries while serving in the

---

[3] Baker did not specifically reference the urban warfare training at his first deposition, but he did discuss field training exercises generally. Additionally, at his first deposition, he was not asked many questions specific to his military training generally or his experience at Fort Lewis specifically.

military—long after he left Fort Lewis, including in connection with this case—Baker did not mention the urban warfare training exercise or Fort Lewis, identifying Iraq instead as the location of his noise exposure and hearing injury onset. Defendants ask the Court to discredit Baker's claim of experiencing symptoms consistent with temporary hearing loss and tinnitus while at Fort Lewis and find instead that his injuries, if any, occurred following his deployment to Germany and later Iraq. The Court declines to do so and instead accepts Baker's explanation of why there is no evidence of a hearing problem prior to his 2009 diagnosis and also no mention of the urban warfare training incident prior to his second deposition in this case.[4]

First, Baker credibly explained that he did not complain about his tinnitus before he left Fort Lewis because of the high pace of the training and out of concern for how those complaints would be viewed coming from a newly enlisted combat infantryman. According to Baker, "there is a bit of the military culture, especially in combat arms, is that, if you're injured or something but it's not serious, it's not life, limb, or eyesight, you just suck it up and keep going, because you can't call timeout just because your hearing is muffled or you have tinnitus." Second, although his medical record from an examination at the Charleston, South Carolina VA

---

[4] The Court notes that even before his first deposition, in his Third Supplemental Interrogatory Responses, Baker stated that he used the CAEv2 during "while conducting combat training" generally in the Army from 2005-2009.

Medical Center in October 2009 does not specifically identify Baker's urban warfare training at Fort Lewis when listing his history of military noise exposure, it does generally list his time "in the infantry for 4 years," which includes his time at Fort Lewis, and also lists his exposure to machine gunfire and explosions, consistent with Baker's description of the urban warfare training at Fort Lewis. Although the record refers to noise exposure in Iraq and references Baker's "onset of tinnitus following [his] return from Iraq," the record does not exclude other locations of noise exposure, and Baker explained in his testimony that he did not really know what "onset" meant and just assumed that "onset" and "diagnosis" were the same thing. Next, although other documents, including his Initial Census Form in this case, state that Baker's tinnitus began in approximately 2007, which was after he left Fort Lewis, Baker explained that his first couple of years in the military training as a combat infantryman were stressful, and he did not have a clear recollection of the timeline of where he was stationed and when until he recently discovered and reviewed some of his old military paperwork regarding his change of duty stations. Defendants also point to Baker's Third Supplemental Interrogatory Responses, specifically, Interrogatory No. 23, which asked Baker to describe "[a]ll injuries . . . including the date that You sustained the injuries" and in response Baker listed "2009 or 2010" as the date of his hearing loss and tinnitus. The Court notes, however, that the preceding interrogatory asked for "*the date of diagnosis*" of any medical condition

and Baker also listed 2009 or 2010.[5]  Finally, Defendants rely on Baker's employment paperwork with a military contractor, Triple Canopy, which states that Baker suffered noise exposure in the military and more specifically in Iraq during 2007-2008.  However, the paperwork does reference all of his years in the military.  Moreover, as explained below, given the amount of noise exposure Baker experienced overseas as compared to Fort Lewis, it is not surprising that he would focus on Iraq in this response.

Perhaps most convincing is the undisputed fact that during his time at Fort Lewis, Baker was a new soldier participating in intense combat training exercises designed to prepare soldiers for overseas warfare.  It is reasonable to conclude that the urban warfare training exercise he described was a part of that training.  Moreover, Baker's expert, Dr. Mark Packer, testified that Baker's recollection of his tinnitus beginning at Fort Lewis is consistent with the level of noise exposure to be expected during urban warfare training exercises.  According to Dr. Packer, Baker's urban warfare training involved soldiers clearing out fully enclosed concrete structures with gunfire, which created "very reverberant conditions" that significantly amplified the gunfire noise.  Dr. Baker also said that the M240 machine gun that Baker fired during these exercises was very loud at 160 decibels.  It is also

---

[5] Baker made the correct distinction between the date of onset and the date of diagnosis in his Fourth Supplemental Interrogatory Responses.

worth noting that Baker's recollection of the urban warfare training incident was as a result of his interview by Dr. Packer, who would have asked Baker very specific questions about his noise exposure in the military based on Dr. Packer's personal experience over two decades in the military as a otolaryngologist treating servicemembers' hearing-related injuries, and his extensive experience with the Department of Defense (DoD) Hearing Center of Excellence.[6]  It is not surprising that Baker would recall the urban warfare training incident with Dr. Packer, but not before when filling out paperwork or responding to general questions, particularly given that the urban warfare training incident was a limited noise exposure that was followed by three and half years of infantry service in Germany and Iraq, including 15 months of combat in Iraq, where Baker was regularly exposed to loud noise from weapons fire, explosives, and vehicle engines.  Dr. Packer also testified that, in his experience, military medical records may not always document the complete picture behind a condition, either because the physicians are busy and not focused on obtaining a clear medical history for the precise time when a medical condition may have begun, and/or the patient reports only the most recent episode related to a condition, which is not at all uncommon.

    Although Defendants will have the opportunity to attempt to discredit Baker at trial regarding his injury at Fort Lewis, the Court accepts his testimony and that

---

[6] Dr. Packer was the founding director of the Hearing Center of Excellence.

of his expert, Dr. Packer for purposes of choice of law.  Accordingly, by a preponderance of the evidence, the Court finds that Baker suffered tinnitus while stationed at Fort Lewis, and as a result, the substantive law of Washington applies to his case pursuant to 28 U.S.C. § 5001(b).[7]

**SO ORDERED**, on this 17th day of January, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[7] This finding satisfies due process, *see* Order, ECF No. 1599 at 9 n. 8, and applies to all of Baker's claims.  In light of the Court's findings, the Court has no occasion to consider whether the law of Indiana should apply to Baker's claims.

3:19md2885/MCR/GRJ