UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *McCombs*, 7:20cv94 | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**ORDER**

The Court has determined that Georgia law applies to the Estes and Keefer cases, Kentucky law applies to Hacker's case, and Washington law applies to Baker's case. *See* Orders, Case No. 3:19md2885, ECF No. 1599, 1613.[1] The remaining choice of law question before the Court pertains to the McCombs case.[2] McCombs argues for application of Alaska law. Defendants argue for Indiana law.

The Court concludes that 28 U.S.C. § 5001(b) governs the choice of law decision for McCombs, which means the substantive law of Alaska applies to his claims. By its plain language, the statute is not limited in application to the *first* place of injury. Instead the statute refers only to "an injury sustained" at "a place subject to the exclusive jurisdiction of the United States within a State. . . ."

---

[1] The Court incorporates by reference the general law section of those Orders.

[2] The parties' joint stipulation applies to this decision. *See* Joint Stipulation, Case No. 319md2885, ECF No. 1597.

28 U.S.C. § 5001. Although it is undisputed that McCombs' tinnitus first began in Afghanistan following an IED blast in April 2009, there is also no dispute that he continued to wear the Combat Arms Earplugs version 2 ("CAEv2") when he returned to Fort Richardson and that his tinnitus continued to worsen there—in other words, McCombs continued to suffer hearing-related injury at Fort Richardson while using the CAEv2. Consequently, under 28 U.S.C. § 5001(b), the substantive law of Alaska applies to his case.

Notwithstanding, even if 28 U.S.C. § 5001(b) does not control, Alaska's substantive law still applies to McCombs' claims. Because McCombs first suffered his hearing injury overseas in Afghanistan and no party has advocated for application of Afghanistan law to his claims, this Court must apply the choice of law rules of McCombs' designated forum, which is Minnesota. *See* Order, Case No. 3:19md2885, ECF No. 1613 at 1-2 (citing authority); *see also In re Agent Orange Prod. Liab. Litig*, 580 F. Supp. 690, 708 (E.D.N.Y. 1984) (refusing to apply foreign law when no party argued for its application).

Minnesota employs a multi-step choice of law test, beginning with the question of whether there is an actual, outcome-determinative conflict between Minnesota substantive law and the law of the states advocated for.[3] *Burks v. Abbott*

---

[3] If the statute at issue is procedural, the law of the forum—Minnesota—applies. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995); *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn. 1983).

*Labs.*, 639 F. Supp. 2d 1006, 1012-13 (D. Minn. 2009). If there is no conflict, Minnesota law applies. *In re St. Jude Med., Inc.,* No. 01-1396JRT/FLN, 2006 WL 2943154, at *4 (D. Minn. Oct. 13, 2006), rev'd and remanded on other grounds, 522 F.3d 836 (8th Cir. 2008); *see also Allstate Imaging, Inc. v. First Indep. Bank*, No. 08-CV-11363, 2010 WL 1524058, at *3 (E.D. Mich. Apr. 15, 2010) (finding that where there is no conflict between states' laws, "the Court should simply apply the law of the forum state"). In the event of a conflict, the inquiry shifts to whether application of a particular state's law to plaintiff's claims complies with due process. *Burks*, 639 F. Supp. 2d at 1012. In the event more than one state's law satisfies due process, the Court must apply the following five factor test to determine which state's substantive law should be applied: "(1) predictability of the result; (2) maintenance of interstate order; (2) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Id.* at 1013 (quoting *Jepson v. General Cas. Co. of Wisconsin*, 513 N.W. 2d 467, 470 (Minn. 1994)). Courts should "carefully and critically consider each new fact situation" when applying the multi-factor test. *See Jepson*, 513 N.W. 2d at 470 (observing that "[w]hile prior opinions may be helpful to a court's deliberations," the court should "wrestle with each situation anew" and void "seek[ing] superficial factual analogies between cases and import wholesale the choice of law analysis contained therein").

As a threshold matter, the Court notes that neither party argues for the application of Minnesota law.  At the same time, the Court has not found, nor have the parties identified, any case where a court has applied Minnesota's choice of law rules without considering whether to apply the substantive law of Minnesota.  Thus, the Court will consider Minnesota law in its choice of law analysis.

Between Minnesota, Alaska, and Indiana, there is at least one true conflict among all three states' product liability laws.  Alaska, like Indiana, has a ten-year statute of repose for product liability claims, but Alaska's statute expressly exempts claims involving personal injury resulting from an allegedly defective product.  *See* Alaska Stat. § 09.10.055.  Minnesota does not have a comparable statute of repose; however, it has a "useful life" statute that provides a defense to designers, manufacturers, distributors or sellers against alleged injuries sustained after the "ordinary useful life of" their product has expired.  *See* Minn. Stat. § 604.03.  Because Indiana's statute of repose would "operate as a statutory bar" to McCombs' products liability claims, Minnesota law would not bar the claims but could limit Defendants' liability for those claims, and Alaska law does neither, the state laws are in actual conflict.  *See Nesladek v. Ford Motor Co*., 46 F.3d 734, 736 (8th Cir. 1995) (finding a "true conflict of laws" because Nebraska's statute of repose would bar the product liability action while Minnesota's "useful life" statute might limit liability but not necessarily dispose of the claim.).

Under the second step in Minnesota's choice of law analysis, the Court finds that the substantive law of all three states can be constitutionally applied to McCombs' claims. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981). Under this inquiry, the Court examines "the contacts of the State . . . with the parties and with the occurrence or transaction giving rise to the litigation." *Id.* at 308. Here, given that McCombs wore the CAEv2 and suffered tinnitus in Alaska, some claim-relevant design decisions were made in Indiana, and all Defendants are headquartered in Minnesota and most maintain their principal places of business there,[4] the Court does not see how application of any of these states' laws would be arbitrary or fundamentally unfair.[5]

---

[4] 3M Company acquired the Aearo Defendants in April 2008.

[5] Defendants argue that Alaska has no contacts with McCombs' claims because its interests are not recognized or otherwise do not exist on land under the exclusive jurisdiction of the United States. The Court readily rejects this argument. First, Defendants have not cited a single case for this proposition. But more importantly, Defendants' argument completely ignores 28 U.S.C. § 5001(b). Indeed, when Congress enacted 28 U.S.C. § 5001's nearly identical predecessor, 16 U.S.C. § 457, in 1928, *see* P.L. No. 70-11, it intended for the state surrounding the place subject to the exclusive jurisdiction of the United States to dictate the rights of the parties in an action arising from injury sustained there, just as if the injury occurred within the state. *See* H. Rep. No. 70-369 (1928) ("[The proposed legislation] provides that a right of action shall exist as though the place were under the jurisdiction of the State and that the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which [a place subject to the exclusive jurisdiction of the United States] may be."); 69 Cong. Rec. S1486 (1928) (explaining that the proposed legislation would "make the [surrounding] State law applicable" to injury occurring in

Turning to Minnesota's five-factor test, the Court finds that Alaska law is favored. Of the five factors, only the second and fourth factors, maintenance of interstate order and advancement of the forum's governmental interest, generally control in tort cases.[6] *See Gruenwald v. Toro Co.*, No. CV 19-2294 (PAM/BRT), 2019 WL 6524894, at *2 (D. Minn. Dec. 4, 2019); *Burks*, 639 F. Supp. 2d at 1013. With regard to the second factor—maintenance of interstate order—Minnesota's "primary concern" is "whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *Blake Marine Grp. v. CarVal Inv'rs LLC*, 829 F.3d 592, 595 (8th Cir. 2016). This factor "weighs in favor of the state which has the most

---

"places in the United States under the exclusive jurisdiction of the United States," for example, "if under the law of Arkansas a right of recovery could be had if the death occurred outside of the national park, the same right of action would exist if it occurred in the national park"). As noted, there is no dispute on the record before the Court that McCombs' tinnitus worsened while he was at Fort Richardson and using the CAEv2.

[6] The other three factors are generally neutral in tort cases. The first factor, predictability of results, is "typically not relevant in tort cases because 'the parties in such cases are not alleged to have acted in reliance on any state's laws.'" *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245, 258 (D. Minn. 2018) (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1125 (8th Cir. 2012). Similarly, the third factor, simplification of the judicial task, has "little value in tort cases." *Burks*, 639 F. Supp. 2d at 1013; *Gruenwald v. Toro Co.*, No. CV 19-2294 (PAM/BRT), 2019 WL 6524894, at *2 (D. Minn. Dec. 4, 2019) ("[T]he first and third factors 'have generally not been applied in tort cases.'" (citation omitted)); *see also Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) (applying the identical Arkansas five-factor test and finding the first and third factors had "no relevance" in determining which state's substantive law should apply to product liability claims). Finally, the fifth factor, the application of the better rule of law, also "does not . . . carry much weight." *Burks*, 639 F. Supp. 2d at 1013; *see also In re Baycol Prod. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) ("Minnesota courts have not placed any emphasis on the fifth factor for nearly twenty years.").

significant contacts with the facts relevant to the litigation." *See Gruenwald*, 2019 WL 6524894, at *3 (citation omitted).  While this factor tends to merge with the threshold due process inquiry, it requires a state to have a more "substantial connection with the total facts and the particular issue being litigated" than is required for constitutional sufficiency.  *Nesladek v. Ford Motor Co.*, 876 F. Supp. 1061, 1068 (D. Minn. 1994), aff'd, 46 F.3d 734 (8th Cir. 1995); *see also Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997) ("[A] court looks at the contacts the state has with the issues being litigated" when evaluating this factor).

The fourth factor favors the state law that would best advance the interests of the forum state.  *Burks*, 639 F. Supp. 2d at 1013.  This requires consideration of not only the public policy interests of Minnesota, but also the interests of the other state or states whose substantive law the parties argue should apply.  *See Blake Marine Grp.*, 829 F.3d at 596; *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245, 259 (D. Minn. 2018); *Schmelzle v. ALZA Corp.*, 561 F. Supp. 2d 1046, 1050 (D. Minn. 2008).  Minnesota has an interest in compensating alleged tort victims injured in the state, but otherwise favors the state where plaintiff lives and where the injury occurred.  *See id.* at 1050 ("Minnesota's interest in compensating tort victims is lessened where the injury occurred in another state, the injured party is not a Minnesota resident and did not receive medical care here."); *see also*

*Johannessohn v. Polaris Indus., Inc.,* 450 F. Supp. 3d 931, 965 (D. Minn. 2020) ("This factor generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred." (citation and internal quotation marks omitted)); *In re: Mirapex Prod. Liab. Litig.*, No. CV 06-1206 JMR/FLN, 2007 WL 9636345, at *4 (D. Minn. Nov. 27, 2007) ("[A]dvancement of the forum's governmental interest, generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred.").

Here, both factors weigh in favor of the application of Alaska substantive law to McCombs' claims.

Under the second factor, maintenance of interstate order, Alaska's contacts with the litigation are more substantial that those of Minnesota or Indiana. Courts applying Minnesota law in personal injury actions have generally found that the state where the plaintiff purchased, used, and was allegedly injured by the product has more significant contacts with the litigation than the state where the product was designed or manufactured or the state where the defendant is headquartered.[7] *See,*

---

[7] Defendants' reliance on *Norwood v. Raytheon Co.*, 604 F. Supp. 2d 961, 966 (W.D. Tex. 2009) is misplaced. There, the court found that Massachusetts—applying the "most significant-relationship test" of the Second Restatement—had the greater interest in the litigation given that all of the wrongful conduct, i.e. the manufacture, design, and concealment of the allegedly defective product, occurred there. The court "decline[d] to treat Tennessee as the place of injury" where there was no evidence that plaintiff was exposed to the defective product there. *See id.* at 966-67. As discussed above, Indiana is not the place where *all* of the alleged wrongful activities related to McCombs' claims occurred, and it is undisputed that McCombs' continued to experience a worsening of his hearing injury in Alaska.

*e.g.*, *Hughes v. Wal-Mart Stores, Inc.,* 250 F.3d 618, 620-21 (8th Cir. 2001) (finding that the second Minnesota factor favored the state where the injury occurred and the plaintiff resided as opposed to the state where the defendant distributor had its principal place of business); *Gruenwald*, 2019 WL 6524894 at *3 (finding under the second factor that Minnesota's connections to the product liability lawsuit, which included design defect and failure to warn claims and no manufacturing defect claims, "pale[d]" in comparison to North Carolina's, where the defendant was headquartered in Minnesota and the product may have been designed in Minnesota, but the plaintiff bought, used and was injured by the product in North Carolina); *see also In re Baycol Prod. Litig.,* 218 F.R.D. 197, 207 (D. Minn. 2003) (because "[t]he Eighth Circuit . . . has not given the docile [sic] of the corporate defendant much weight in tort cases," the court found the second factor weighed in favor of plaintiff's home state, where the injury occurred).

In this case, the place of use of the allegedly defective product and injury from that product is Alaska. McCombs was stationed at Fort Richardson, Alaska twice in his military career—first from August 2008 to March 2009 and then from March 2010 to July 2011—and he used the CAEv2 both times during weapons squad training. Additionally, while in Alaska, he received instruction from leadership on

how to use the CAEv2, specifically on the fit and intended use.[8] Moreover, although McCombs' tinnitus first began following an IED blast in Afghanistan, there is no dispute that it continued to worsen in Alaska after he returned from Afghanistan and continued using the CAEv2 for hearing protection. According to McCombs' expert, Dr. Moisés Arriaga, McCombs' tinnitus continued to worsen in Alaska due to his repeated noise exposure during heavy weapons training there and the fact that loud noise exposure aggravates and exacerbates tinnitus.

In contrast, and precisely contrary to much of what is represented in Defendants' choice-of-law briefing regarding Indiana contacts, the alleged wrongful conduct relevant to McCombs' claims occurred in numerous domestic and international locations.[9] Not just in Indiana, or even Minnesota. There were design

---

[8] Although in his deposition McCombs did not identify Fort Richardson as a place where he received instruction on the CAEv2, he did testify to this at the evidentiary hearing and this testimony is corroborated by the deposition testimony of McCombs' former platoon-mate, Zachary Thompson.

[9] Throughout Defendants' choice of law brief, they repeatedly represented that Indiana was the place where "all the allegedly wrongful conduct took place," including the design and testing of the CAEv2. *See, e.g.*, Defs.' Br., ECF No. 1539 at 3 (representing Indiana as the "state where all the allegedly wrongful conduct took place"); *id.* at 22 (stating that "[t]he only events relevant to the case . . . took place in Indiana, where Aearo designed and tested the CAEv2"). At the evidentiary hearing, Defendants' corporate witness, Brian Myers, made similar sweeping overstatements on direct examination regarding where the CAEv2 was designed and tested. For example, Myers testified that "like all the other design work, [it] would have taken place there in Indianapolis," when in fact design decisions relevant to this litigation were made in France, Maryland, and Massachusetts. He also testified that the entire technical group only ever worked from Indiana, even after 3M acquired Aearo, when the record clearly establishes that the group's headquarters moved to Minnesota following the acquisition. And when asked where product testing occurred, Myers described only the tests conducted in Indianapolis, although a great deal of other relevant and more regular product testing was clearly also performed in Mexico.

meetings held and decisions made in France, Maryland, and Massachusetts. Acoustic impedance testing was performed in Mexico and impulse testing was completed in France and/or Mexico, both of which are relevant to McCombs' claims.[10]  A myriad of other activities related to the CAEv2, and relevant to McCombs' product liability claims, also occurred outside of Indiana.  For instance, while the earplug's triple flange ends, which are important to McCombs' claim that the CAEv2 imperceptibly loosened, may have been invented in Indianapolis, the patent for that design was assigned to a Massachusetts corporation.  Thereafter, the CAEv2 was manufactured in Massachusetts, assembled in Mexico and New York, and shipped to the military primarily from distributers in Florida and New York. Instructions for use that were attached to the CAEv2's packaging, if any, which may impact McCombs' failure-to-warn claims, were often prepared by those same Florida and New York distributors.  Notably, Aearo's technical group, which was partly responsible for testing the CAEv2, did not solely work out of Indiana, and in fact also operated out of Mexico.  Moreover, the entire hearing protection division moved its headquarters to Minnesota after 3M acquired Aearo in April 2008.  After the acquisition, all marketing relevant to the CAEv2 was done out of Minnesota.  In other words, by the time McCombs allegedly was injured while wearing the CAEv2

---

[10] This testing was in addition to the Real-Ear Attenuation at Threshold (REAT) testing that Aearo performed in Indiana.

in 2009 in Afghanistan, Defendants' marketing operations for the product were accomplished from Minnesota. Even the e-mail pulling the CAEv2 from the market was sent from Minnesota, strongly suggesting that the decision to do so was made there as well.

In short, the CAEv2 followed a circuitous route through the stream of commerce to the military, where McCombs used the earplug and allegedly suffered injuries as a result. *See Bavlsik v. General Motors, LLC*, No. 4:13cv509, 2015 WL 5919857 at *3 3 (E.D. Mo. Oct. 9, 2015) (finding that the state where the defective product was "assembled, marked, and sold," i.e. where it was put into the stream of commerce, and not where it was designed and manufactured, was the place of the conduct causing the injury under the "most significant relationship test" of the Second Restatement). While the Court recognizes that two meaningful contacts relevant to McCombs' design defect and failure-to-warn claims occurred in Indiana—the decision to shorten the stem of the earplug and the REAT testing—numerous other litigation-relevant activities regarding the CAEv2 occurred elsewhere. Thus, on balance of *all* the relevant contacts with McCombs' claims, Alaska's contacts (again, the place of use and injury) are more substantial than those of Indiana or Minnesota. Consequently, Minnesota's second factor weighs in favor of Alaska law.

The fourth factor, advancement of the forum government's interest, also favors Alaska. Minnesota's interest in McCombs' claims is only "slight" given that McCombs does not reside in Minnesota and was never injured there. *See Blake*, 829 F.3d at 596 ("[A] state's interest in protecting nonresidents from tortious acts committed within the state . . . is only slight" (citation omitted)); *Murray v. Cirrus Design Corp., No. 18CV02510NEBLIB*, 2019 WL 1086345, at *4 (D. Minn. Mar. 7, 2019) (finding that Minnesota government interests are not "significantly furthered" by "employing Minnesota law for injuries that occurred in another state to a nonresident" (citation omitted)). Minnesota nevertheless "places great value in compensating tort victims." *Jepson*, 513 N.W.2d at 472.

McCombs undisputedly suffered from tinnitus while he was stationed in Alaska, and applying Alaska law would further Alaska's interest in providing an "effective means of redress" for residents who were tortuously injured in Alaska. *See Samson Tug & Barge Co. v. Koziol*, 869 F. Supp. 2d 1001, 1013 (D. Alaska 2012); *see also Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 433-34 (Alaska 2001) (finding that Alaska's interest in redressing victims of negligence, promoting public safety and deterring negligent conduct outweighed Washington's interest in protecting resident corporations' contract rights related to torts committed in other states). Indiana, on the other hand, imposes a statute of repose on product liability claims, *see* Ind. Code § 34-20-3-1, and also does not provide for strict

liability for design defect claims, *see TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209 (Ind. 2010) ("For actions based on an alleged product design defect, however, the Act departs from strict liability and specifies a different standard of proof: '[T]he party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product.'" (quoting Ind. Code § 34-20-2-2)).  Thus, if Indiana law applied to McCombs' claims, Indiana law would completely bar his design defect and possibly other product liability claims.  Moreover, Indiana's interests would not be served by application of Indiana law because Indiana does not have an interest in protecting nonresidents from products sold or used outside of its borders, even if the product was manufactured in Indiana.  *Cf. Thornton v. Sea Quest, Inc.*, 999 F. Supp. 1219, 1223 (N.D. Ind. 1998) ("Indiana has an interest in protecting *its residents* who are victims of torts . . . . [and] has a strong interest in preventing the sale of supposedly defective products *within its borders*" (emphasis added)); *see also Hansen v. Sears, Roebuck & Co.*, 574 F. Supp. 641, 644 (E.D. Mo. 1983) ("It is incomprehensible to this Court that an Indiana statute of repose could operate to bar a cause of action in a Missouri federal court based upon Missouri substantive law, simply because the product involved happened to be manufactured in Indiana.").

Thus, the Court believes Minnesota would favor application of Alaska substantive law to McCombs' claims because McCombs used the CAEv2 in Alaska and suffered injury there, and Alaska law would better serve to compensate him.

Accordingly, under either 28 U.S.C. § 5001(b) or Minnesota's choice of law rules, Alaska law applies to McCombs' claims.[11]

**SO ORDERED**, on this 18th day of January, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[11] This ruling applies to all of McCombs' claims.

3:19md2885/MCR/GRJ