# EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION ) ) ) ) ) This Documents Relates to All Cases ) ) | Case No. 3:19-md-2885-MCR-GRJ<br><br>Judge M. Casey Rodgers<br><br>Magistrate Judge Gary R. Jones |

## OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO COMPEL AGAINST THE DEPARTMENT OF DEFENSE

Defendants respectfully object to the Magistrate Judge's January 4, 2021 Report and Recommendation (the "R&R") recommending denial of Defendants' motion to compel against the Department of Defense ("DoD"). Specifically, Defendants object to the R&R as it relates to requests for noise and ototoxin exposure data and sales and distribution data for the CAEv2.

### ARGUMENT

For eighteen months, Defendants have followed the guidance provided by the government to obtain documents that are critical to its defense of this case. Initially, DOJ and the DoD stated that no subpoenas were required, and indeed stressed that subpoenas would be counterproductive because it would not come from a Court of competent jurisdiction. *See* Dkt. 399 (5/20/19 Tr. of Touhy Presentation). Specifically, the guidance that the DOJ and DoD provided to defendants was as

follows: "[Y]ou don't need to send a subpoena. That subpoena signed by an attorney is not from a court of competent jurisdiction from DOJ's perspective." (*Id.* at 33:23-34:1.)

As Judge Jones explained: "Last year, Major Evans, on behalf of the Department, instructed the parties to not send subpoenas for their discovery requests because, in its opinion, they would have no legal effect…. What's more, the record before the Court demonstrates Defendants and the Department have operated in accordance with these instructions for more than one year, and the Department has appeared on behalf of its current employees at depositions in this matter. In sum, the Department's instructions, assurances, and appearances throughout this litigation amount to waiver by conduct." (Dkt. 1292 at 17-18 (citation omitted).)

In reliance on the government's express directive, Defendants submitted *Touhy* requests in the form of letters, not subpoenas, starting on June 21, 2019. As required by the Department's *Touhy* regulations, those letters included far more information and explanation than a standard Rule 45 subpoena. After the government cited burden issues, Defendants also agreed to the government's request to prioritize government-contractor-related requests because they were more time-sensitive, but never agreed that either noise exposure and ototoxin data or sales and distribution data were not important to their defense of the case.

After many meetings, emails, and conference calls with the government in which Defendants awaited progress, in July 2020 Defendants moved to compel on the noise exposure and ototoxin data. In response, the government did not make various of the arguments it is making now. Instead, contradicting the statements it had made at the *Touhy* presentation, the government argued for the first time that subpoenas were required.

Nonetheless, Judge Jones granted Defendants' motion to compel, including as to noise exposure and ototoxin data. Judge Jones stated:

> The Department has offered examples—namely, one witness it has been unable to reach (Ms. Binseel) and the difficulty locating custodians for 21 years of noise and ototoxin data. The Department neglects to mention what efforts are being made or to explain why it has not attempted to responded to these requests piecemeal. For instance, LTC Schulz has been interviewed, the Department is aware of what knowledge she has regarding the events underlying this action, but it has not decided whether it will allow her deposition. There is no justification for this inaction.
>
> Accordingly, the undersigned concludes that Defendants' motion to compel is due to be granted to the extent the Department has unreasonably delayed resolving Defendants' *Touhy* requests for: (1) the depositions of Ms. Binseel, Dr. Little, Dr. Cleveland, LTC Schulz, and Dr. King; (2) the production of four categories of noise and ototoxin data described in Defendants' motion to compel; and (3) the production of safety release documentation for the CAEv2. The Department must provide a final decision on these *Touhy* requests by a date certain (discussed below). (Dkt. 1292 at 25) (citations omitted).

On August 20, 2020, the Court issued Pretrial Order 50, requiring the parties to issue subpoenas for government documents. As Judge Jones explains:

3

"Defendants acted promptly.  On September 4, 2020, they issued a subpoena to the Department of Defense for the production of documents referred to in their earlier discovery requests, including the long-sought-after noise and ototoxin data, sales and distribution data . . ." (Dkt. 1590 at 8.)

To be clear, Defendants do not take issue with the Court's entry of PTO 50, nor its requirement that Defendants issue subpoenas.  What defendants strongly object to is that, after Defendants initially followed the government's guidance and issued *Touhy* requests without subpoenas, after Defendants waited and met and conferred for a year, after Defendants filed a motion to compel, after Judge Jones initially accepted Defendants' arguments, after the government reversed course on subpoenas and Defendants served subpoenas, after Defendants again met and conferred, and after Defendants filed a second motion to compel, the government then opportunistically made "more nuanced" arguments to Judge Jones that it did not make when opposing Defendants' first motion to compel.  As Judge Jones explained in the order Defendants now object to:

> This issue is not before the Court on a clean slate. *See* ECF No. 1292 at 25 (concluding in a report and recommendation that the Department unreasonably delayed in responding to Defendants' *Touhy* requests for these subcategories of noise and ototoxin data). Here, however, the Government presents more nuanced arguments about the Department's delay and evidence in support thereof. "As it turns out, this more copious explanation … makes all the difference." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6787216, at *6. (Dkt. 1590 at 12.)

4

The reason that Defendants had to file a second motion to compel is that the government changed its position with respect to the requirement for subpoenas. Given that Judge Jones rejected the government's initial arguments,[1] it was unfair for the government to insist on subpoenas and a new motion to compel, and then to make arguments (and submit a declaration) that the government chose not to assert the first time around. Defendants respectfully submit that the government's change of position on this issue should not be rewarded. In evaluating Defendants' motion to compel, the government's new arguments and declaration should be disregarded.

Defendants further respectfully object to the R&R for the reasons described below.

## I.   NOISE AND OTOTOXIN EXPOSURE DATA

Defendants first requested noise and ototoxin exposure data in June 2019 and then clarified their request at the request of this Court on December 2, 2019. The DoD now argues that much of this data does not exist, and that the DoD has interpreted Defendants' *Touhy* requests to distinguish between noise and ototoxin data collected by the military and that requested by Defendants. Defendants object

---

[1] Although Judge Jones ruled on noise and ototoxin exposure data, he did not rule on distribution data.

to these arguments belatedly raised by the DoD—over one year after Defendants' *Touhy* requests.[2]

## A. Exposure Data By Military Occupational Specialty ("MOS")

Defendants have requested exposure data for each Military Occupational Specialty ("MOS") of the bellwether plaintiffs in Groups A and B. The declaration submitted by Major Kim appears to acknowledge that this data does exist in the DoD's DOEHRS-IH database. She claims, however, that accessing the MOS data "would require [the Department] to perform an analysis of other data, which is not an analysis the [Department] currently does[.]" Dkt. 1483-3 at 5-6. The DoD has had well over one year to either perform the data analysis (or attempt to perform the analysis), or inform Defendants much sooner that this type of analysis could not be done so that Defendants could pursue other avenues to obtain this relevant information. Defendants thus respectfully disagree with the R&R's conclusion that the DoD's response to Defendant's request for MOS exposure data has not been unreasonably slow.

---

[2] Defendants recognize that the Eleventh Circuit has held that an agency's denial of a *Touhy* request is considered an "agency action" subject to review under the APA. 5 U.S.C. § 706(2)(A); *see Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). Defendants contend that holding is incorrect, and that federal courts should assess the discovery obligations of federal agencies under the applicable Federal Rules of Civil Procedure. *See Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (Kavanaugh, J.); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994).

### B. Exposure Data By Installation

Defendants have also requested exposure data for each bellwether-relevant Army installation. Defendants made this request in their March 17, 2020 *Touhy* request, which asked for the data that Army regulations require "the Industrial Hygiene Program Managers *for each Army installation*" to collect, (Dkt. 1433, Ex. B at 3 (emphasis added)), and identified precisely the data that the regulations require: an inventory of all noise- and ototoxin-hazardous areas, "the names of … exposed personnel," and "the magnitude of their noise exposure." (*See id.*; Dkt. 1071, Ex. 8 at 1–4(h).) The R&R accepted the government's claim that collecting this data would be unduly burdensome, citing Major Kim's statement that "any sort of exposure data would require [the Department] to conduct searches for particular individuals and examine information that would be generated through that search to attempt to locate data regarding 'exposure.'" Dkt. 1483-3 at 6. It is not clear, however, why conducting such searches, at least for the 24 bellwether plaintiffs, would be unduly burdensome.

The government also argued that the data Defendants requested would be protected under HIPAA and Privacy Act. The government did not make this argument the first time Defendants moved to compel production of this data, and the argument should thus be disregarded. In any event, the government does not explain

7

why redactions or anonymization to comply with the applicable statutes would impose an undue burden.

## II. SALES AND DISTRIBUTION DATA

Defendants first requested data related to sales and distribution data on June 21, 2019. Ten months later, the DoD, in response to Defendants' *Touhy* request, produced a single document. That document is indecipherable and, notably, itself references other documents the government has not produced. (Dkt. 1504, Ex. C.) When defendants requested that the government provide a deponent to explain the document, the government rejected that request. Defendants respectfully object to the R&R's conclusion that the production of this single document does not amount to arbitrary and capricious delay by the DoD. Distribution documents are critical because they determine whether plaintiffs would have had access to CAEv2 and the single document the DoD produced that even purports to relate to sales and distribution was a spreadsheet that contains no dates, and references other distribution documents that have *not* been produced.

## CONCLUSION

For the foregoing reasons, Defendants respectfully object to the Judge's January 4, 2021 Report and Recommendation recommending that Defendants' motion to compel against the Department of Defense be denied.

Dated:  January 19, 2021 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Robert C. Brock*
　　　　　　　　　　　　　　　　　　Robert C. "Mike" Brock
　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　1301 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　　Washington, D.C. 20004
　　　　　　　　　　　　　　　　　　Telephone: (202) 389-5991
　　　　　　　　　　　　　　　　　　mike.brock@kirkland.com

　　　　　　　　　　　　　　　　　　Mark J. Nomellini
　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　Telephone: (312) 862-3254
　　　　　　　　　　　　　　　　　　mnomellini@kirkland.com

　　　　　　　　　　　　　　　　　　Kimberly Branscome
　　　　　　　　　　　　　　　　　　DECHERT LLP
　　　　　　　　　　　　　　　　　　633 W. 5th St., Suite 4900
　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071
　　　　　　　　　　　　　　　　　　Telephone: (213) 808-5762
　　　　　　　　　　　　　　　　　　kimberly.branscome@dechert.com

　　　　　　　　　　　　　　　　　　*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(I)**

Pursuant to Local Rule 7.1(I), counsel for Defendants certify that this brief contains 1,767 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated: January 19, 2021                              Respectfully submitted,

/s/ Robert C. Brock
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 19, 2021, a copy of the foregoing was filed on the Court's CM/ECF system, which will serve all counsel of record.

DATED: January 19, 2021

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*