## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

|  |  |
|---|---|
| **IN RE: 3M COMBAT ARMS EARPLUG PROUCTS LIABILITY LITIGATION** | ) ) ) ) |
|  | **No. 3:19-md-02885-MCR-GRJ** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | ) ) ) ) ) |

### RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO COMPEL AGAINST THE DEPARTMENT OF DEFENSE

Defendants, 3M Company and certain of its subsidiaries, moved for an order compelling non-party the United States Department of Defense ("DoD") to produce various categories of data and documents. *See* ECF No. 1433 ("Motion"). Magistrate Judge Jones has recommended by report and recommendation ("R&R") dated January 4, 2021, ECF No. 1590, that Defendants' Motion be denied. Defendants have filed objections ("Obj.") to the R&R. ECF No. 1624. For the reasons discussed below, the Court should overrule Defendants' objections and adopt the R&R in full.

## BACKGROUND

### I.    Defendants' *Touhy* Requests

Since 2019, Defendants have served numerous *Touhy* requests on DoD. Those requests have sought documents, depositions, and other information related to the CAEv2 earplug, service member noise exposures, and DoD's hearing conservation program.  Most relevant to Defendants' objections are Defendants' *Touhy* requests dated June 21, 2019 and July 26, 2019.  Mot., Exs. A, E.  The requests are broad and sought several categories of information.  For example, 3M's July 26, 2019 *Touhy* request sought approximately 45 categories of documents and data.  Ex. E at 8-14.  Among those were eight categories of documents and data regarding noise and ototoxin exposure in the military, *id*. at 13,[1] as well as documents sufficient to show various information about DoD's purchasing and distribution of the CAEv2, *id*. at 9.

In 2019, DoD informed 3M by telephone that the July 26, 2019 *Touhy* request was extensive and overly broad.  Declaration of Major (MAJ) Nicole M. Kim ("Kim Decl.") ¶ 4, ECF No. 1483-3.  On December 2, 2019, 3M sent a letter to DoD stating that its request for noise and ototoxin exposure documents was deprioritized.  Mot.,

---

[1] Ototoxins are chemicals or other substances that may negatively affect how the ear functions and may cause hearing loss and/or affect balance.

Ex. D at 48.  Accordingly, the DoD focused efforts on the prioritized categories of documents.  Kim Decl. ¶ 4.

In response to 3M's various *Touhy* requests for documents, DoD has issued 14 disclosure letters and has produced over 10,000 pages of records.  Kim Decl. ¶ 5.

## II.    Defendants' Motions to Compel

Defendants first moved on June 12, 2020, to compel DoD to comply with certain outstanding *Touhy* requests.  ECF No. 1178, at 3-4, 17.  Defendants withdrew their motion to compel without prejudice by notice dated June 24, 2020, ECF No. 1197.  Defendants did so because Special Master Hon. David R. Herndon "[had] advised [them] to hold [the] motion in abeyance in order to refine the contested issues, if any."  *Id*. at 1.

Defendants filed a renewed motion to compel against DoD on July 1, 2020. ECF No. 1211.  That motion sought an order requiring DoD to present six current DoD employees for deposition, and to produce the following documents and information: various categories of noise and ototoxin exposure data, safety release documentation for the CAEv2, and the names of the Hearing Conservation Program Managers and Industrial Hygiene Program Managers.  *Id*. at 1.  DoD's opposition argued, *inter alia*, that the Court did "not have personal jurisdiction over DoD because defendants have failed to bring it before the Court through the issuance of a summons or subpoena."  ECF No. 1253, at 5.

Magistrate Judge Jones recommended that Defendants' motion be granted in part and denied in part.  ECF No. 1292.  In particular, Judge Jones concluded that the Court had personal jurisdiction over DoD because he found the DoD waived any objection to personal jurisdiction, and that exercise of jurisdiction was not unconstitutional.  *Id*. at 14-19.  After DoD objected to the report and recommendation, the Court issued Pretrial Order 50, which required the parties to subpoena the United States government with any requests for depositions or production of documents, including those that were the subject of Defendants' motion to compel.  ECF No. 1340.  Accordingly, the Court ruled as follows:

> Because Pretrial Order No. 50 now moots the threshold dispute between the parties and, should subpoenas issue, will provide the Department with an opportunity to respond to the subpoena, the Court hereby REJECTS the entire Report and Recommendation (ECF No. 1292) and DENIES Defendants' Motion to Compel (ECF No. 1211) as moot.

Order, ECF No. 1341, at 1-2.

On September 22, 2020, Defendants notified the DoD that they mailed a subpoena to the DoD.  Kim Decl. ¶ 3; Mot., Ex. D.  DoD was served with the subpoena on October 14, 2020.  Kim Decl. ¶ 3.  The subpoena did not specify the records sought other than to attach the various *Touhy* requests that 3M had served previously and to which DoD already had largely responded.  Mot., Ex. D.

On October 2, 2020, Defendants filed the instant Motion to Compel ("Motion").  ECF No. 1433.  The Motion sought to compel DoD to produce (1)

4

various categories of noise and ototoxin exposure data; (2) sales and distribution data for the CAEv2; (3) documents related to the annual Military Audiology Association "Short Course" meetings from 1999 to 2005; and (4) testing data on other hearing protection devices distributed to the Group A bellwether plaintiffs. *Id*. at 1. DoD filed its opposition to the Motion on October 23, 2020. ECF No. 1483. Defendants sought, and were granted, leave to file a reply brief, which they filed on October 30, 2020. ECF No. 1504.

After Defendants filed the Motion, Defendants and DoD conferred on several occasions in an attempt to resolve the issues raised in the Motion. On December 22, 2020, Defendants and DoD filed a Joint Stipulation Mooting, in Part, Defendants' Motion to Compel Against the Department of Defense. ECF No. 1576. That stipulation resolved Defendants' Motion "as it relates to the health hazard assessment data and non-CAEv2 hearing protection device studies." *Id*. ¶ 5.

## III.   The R&R

Judge Jones issued the R&R on January 4, 2021. ECF No. 1590. In the R&R, Judge Jones recommended that Defendants' Motion be denied. *Id*. at 20. As to Defendants' request for "average noise and ototoxin exposure per military occupational specialty," Judge Jones found that the requested data "does not exist for production, and basic discovery rules dictate that the Court cannot compel the Department to create it." *Id*. at 14. As to Defendants' request for unspecified "[d]ata

regarding noise and ototoxin exposures at the bellwether relevant Army installations," Judge Jones found that such data "is not readily available in the DOEHRS-IH database," and that DoD "has properly considered the undue burden of collecting this information from each individual military base."  R&R at 16. Judge Jones also ruled that Defendants had failed "to refute the Government's assertion that this information should not be disclosed because it is privileged or otherwise sensitive."  *Id*.  As to Defendants' request for the production of "sales and distribution data for the CAEv2" as to which Defendants claimed DoD had failed "to provide any response," Judge Jones found that "the Department responded to this *Touhy* request on March 6, 2020."  R&R at 18.

## LEGAL STANDARD

"A district court reviewing a magistrate judge's decision on a nondispositive issue 'must consider . . . objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Howard v. Hartford Life & Accident Ins. Co.*, No. 10-cv-192, 2012 WL 3069384, at *2 (M.D. Fla. July 26, 2012); *see also* Fed. R. Civ. P. 72(a).  "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Howard*, 2012 WL

6

3069384, at *2 (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)).  A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Howard*, 2012 WL 3069384, at *2.

## ARGUMENT

### I.     The Court Should Not Disregard DoD's Arguments and Evidence Presented in Opposition to Defendants' Motion to Compel

Defendants ask the Court to "disregard[]" the arguments and evidence that DoD presented in opposition to Defendants' motion to compel because DoD did not raise those arguments or submit the same evidence in response to Defendants' prior motion to compel.  Obj. at 1-5.

At the outset, Defendants' argument is not properly before this Court because Defendants never raised it before Judge Jones.  It is well-settled that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).  "[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge."  *Id.* (quoting *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 991 (1st Cir. 1988)).

That is exactly what Defendants are attempting to do here.  Defendants could

7

have raised their argument with Judge Jones, who would have considered it in the first instance.  In fact, Defendants sought, and obtained, leave of Court to file a reply in support of their Motion, in which they could have made this argument, but they failed to do so.  ECF No. 1504.  Accordingly, the Court should exercise its discretion and decline to consider Defendants' argument because Defendants have not even attempted to explain their failure to raise the argument with Judge Jones.  Without any such explanation, there is no basis on which to excuse Defendants' failure.  *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 14-307, 2015 U.S. Dist. LEXIS 184399, at *5 (M.D. Fla. Dec. 3, 2015) ("[T]he Court deems Defendant to have waived that objection by failing to raise the issue before the Magistrate Judge."); *Wasser v. Comm'r of Soc. Sec.*, No. 12-1399, 2014 U.S. Dist. LEXIS 3891, at *3 n.2 (M.D. Fla. Jan. 13, 2014) ("These arguments were not raised to the Magistrate Judge, and are therefore waived.").

Defendants' argument also fails on the merits.  Defendants contend that "it was unfair for the government to insist on subpoenas and a new motion to compel, and then to make arguments (and submit a declaration) that the government chose not to assert the first time around."  Obj. at 5.  As an initial matter, the Court ordered Defendants to issue subpoenas to the Government in Pretrial Order No. 50 – which Defendants claim they "do not take issue with."  *Id*. at 4.  Moreover, Defendants fail to identify *any* legal theory that would preclude DoD from offering new argument

and evidence in response to two different motions, and they fail to cite *any* authority supporting Defendants' position.  Accordingly, Defendants fail to identify any legal grounds for the Court to "disregard[]" DoD's arguments.

In addition, there was nothing "unfair" about DoD's responses to Defendants' motions to compel.  When Defendants previously attempted to compel discovery from DoD, DoD's opposition appropriately focused primarily on the threshold jurisdictional deficiency – that Defendants had not yet followed the procedures set forth in the Federal Rules for obtaining non-party discovery.  *See* ECF No. 1253; *see also* Pretrial Order No. 50, ECF No. 1341, at 2 n.2 (noting that DoD's position that "a subpoena is required before it can be compelled to act" was a "threshold objection").  Defendants cite no rule of law requiring a non-party to raise all applicable merits defenses in response to a motion to compel where a valid jurisdictional defense also applies.  After Defendants cured the jurisdictional deficiency by serving a subpoena and then filed a new motion to compel, DoD was free to raise any and all applicable defenses to Defendants' new motion.  Again, Defendants identify no rule of law to the contrary.[2]

---

[2] Defendants are incorrect in claiming that DoD "changed its position with respect to the requirement for subpoenas."  Obj. at 5.  DoD has never suggested that the Court could enforce a discovery request without issuance of appropriate process.  When, in 2019, Major Evans stated, "you don't need to send a subpoena," he was not addressing personal jurisdiction.  Obj. at 2.  He was telling the parties, instead, that DoD did not need to be served with a subpoena in order to "make a determination if [a request] can be approved."  ECF No. 399 at 34:2-3.  That advice was consistent

## II.   Judge Jones Correctly Ruled that DoD Does Not Maintain Data Sought by Defendants

Defendants' Motion seeks "average noise and ototoxin exposure per military occupational specialty.  This data may be kept as average daily, weekly, monthly or yearly exposures."  Mot. at 7.  In response, DoD submitted the Kim Declaration, which explained that the DoD's "DOEHRS-IH database does not contain 'average noise and ototoxin exposure per military occupational specialty.'"  ECF No. 1483-3 ¶ 12.  Major Kim further stated, "[t]o attempt to determine such information would require DoD to perform an analysis of other data, which is not an analysis the DoD currently does and therefore defendants' request requires the generation of new work product solely for this private litigation."  *Id*. ¶ 12.  Accordingly, Judge Jones correctly found that the data sought by 3M "does not exist for production, and basic discovery rules dictate that the Court cannot compel the Department to create it."  R&R at 14.

Defendants, in a one-paragraph argument, state that they "disagree with the R&R's conclusion that the DoD's response to Defendant's request for MOS exposure data has not been unreasonably slow."  Obj. at 6.  But mere

---

with DoD regulations.  Those regulations give designated officials of DoD the authority to determine "[i]n response to a *litigation request or demand* . . . whether official information may be released in litigation[.]"  32 C.F.R. § 97.6(a)(1) (emphasis added).  What process is needed in order to obtain a court order compelling discovery from DoD, is a distinct legal question that Major Evans never addressed.

"disagree[ment]" with a Magistrate Judge's ruling does not establish a basis to "modify or set aside any part of the order." Fed. R. Civ. P. 72(a). Defendants must show that the order is clearly erroneous or contrary to law. *Id.*; *see also Howard*, 2012 WL 3069384, at *2. Defendants' disagreement with Judge Jones' ruling falls far short of the requisite showing.

Defendants have not cited any evidence that would undermine Judge Jones' determination that DoD does not maintain the requested data. Instead, Defendants argue that DoD should "perform the data analysis" to create the requested data. Obj. at 6. But Judge Jones correctly ruled that "basic discovery rules dictate that the Court cannot compel the Department to create" information that does not already exist. R&R at 14. "Although a subpoena under Rule 45 may require a non-party to produce 'documents, electronically stored information, or tangible things in that person's possession, custody, or control,' Fed. R. Civ. P. 45(a)(1)(A), Rule 45 'does not contemplate that a non-party will be forced to create documents that do not exist.'" *Taylor v. Kilmer*, No. 18-7403, 2020 U.S. Dist. LEXIS 21159, at *7 (N.D. Ill. Feb. 7, 2020) (citing cases). "Thus, if a requested document is not in the possession of a party or non-party, *such person need not create the nonexistent document*." *Georgacarakos v. Wiley*, No. 07-01712, 2009 U.S. Dist. LEXIS 34379, at *5 (D. Colo. Apr. 3, 2009) (emphasis added); *see also* Fed. R. Civ. P. 45(e)(1)(A) ("A person responding to a subpoena to produce documents must produce them *as*

11

*they are kept in the ordinary course of business*[.]") (emphasis added).  There is simply no obligation for DoD to undertake a data analysis to create new data for Defendants that do not currently exist, and Defendants cite no authority to the contrary.  Judge Jones's ruling was correct.

### III.   Judge Jones Correctly Determined that Defendants' Vague and Overbroad Request for "Noise and Ototoxin Exposures" Data Is Unduly Burdensome

Defendants' Motion seeks unspecified "[d]ata regarding noise and ototoxin exposures at the bellwether relevant Army installations."  Mot. at 7.  The Kim Declaration, however, described the heavy burden associated with attempting to locate data pertaining to noise and ototoxin exposures: "[t]o locate any sort of exposure data would require DoD to conduct searches for particular individuals and examine information that would be generated through that search to attempt to locate data regarding 'exposure.'"  Kim Decl. ¶ 14.  Moreover, the DOEHRS-IH database does not contain all information relating to "exposures" so "[t]o locate Army installation noise and ototoxin exposure data, the various installation industrial hygiene program managers would need to conduct searches of the hard copy records located at the installations[.]"  *Id*. ¶ 13.  Performing such searches during the pandemic would be particularly difficult given that "many industrial hygiene program managers are working remotely, do not have daily access to records, and have limited staff."  *Id*.  Accordingly, Judge Jones correctly found that the exposure

data sought by Defendants "is not readily available in the DOEHRS-IH database," and that DoD "has properly considered the undue burden of collecting this information from each individual military base." R&R at 16.

Defendants have not shown any error in Judge Jones' ruling, much less a clear error. Indeed, Judge Jones' conclusion regarding the burden associated with Defendants' request is precisely the type of factual determination to which district courts routinely defer.[3] The *entirety* of Defendants' explanation of why they believe Judge Jones's burden determination was incorrect is the following: "It is not clear, however, why conducting such searches, at least for the 24 bellwether plaintiffs, would be unduly burdensome." Obj. at 7. That cursory objection is wholly insufficient to demonstrate clear error. Indeed, Defendants do not appear to dispute Judge Jones' determination that their request, as written, would be unduly burdensome. Rather, they suggest only that a different, narrower request for

---

[3] *See, e.g.*, *Integra Bank Corp. v. Fid. & Deposit Co.*, No. 11-00019, 2014 U.S. Dist. LEXIS 3039, at *10 (S.D. Ind. Jan. 10, 2014) ("[T]he court does not find that the Magistrate Judge's conclusion that this would be unduly burdensome is clearly erroneous."); *Johnson v. City of Fayetteville*, No. 12-456-F, 2013 U.S. Dist. LEXIS 111289, at *23 (E.D.N.C. Aug. 5, 2013) ("[T]he court cannot conclude that the magistrate judge's assessment as to the burdensome nature of this request is either clearly erroneous or contrary to law."); *Robinson v. Quicken Loans Inc.*, No. 12-0981, 2013 U.S. Dist. LEXIS 56210, at *16 (S.D. W. Va. Apr. 19, 2013) ("The Court defers to this factual determination of the magistrate judge [regarding burden] and finds no basis in the record to find that any mistake has been committed."); *IBEW Local 212 v. Am. Laundry Mach., Inc.*, No. 1:07-cv-324, 2009 U.S. Dist. LEXIS 1213, at *9 (S.D. Ohio Jan. 8, 2009) ("The Magistrate Judge's conclusion that Plaintiffs' request is overly broad and burdensome is not clearly erroneous.").

exposure data pertaining to "the 24 bellwether plaintiffs" would not be unduly burdensome.  But Defendants' request was not limited to any particular individuals and instead broadly sought any "data regarding noise and ototoxin exposures at the bellwether-relevant Army installations."  Mot. at 7.  In fact, it became clear during conversations between counsel that Defendants were seeking the *entirety* of DoD's DOEHRS-IH database.  ECF No. 1483, at 10.  Defendants chose to pursue a burdensome request for an overbroad set of data, and Defendants' motion to compel must stand or fall on the basis of *that* request, not some hypothetical narrower request that Defendants never mentioned in their Motion.[4]

Defendants also take issue with Judge Jones' ruling that Defendants "fail to refute the Government's assertion that this information should not be disclosed because it is privileged or otherwise sensitive."  R&R at 16.  They argue that "the government does not explain why redactions or anonymization to comply with the applicable statutes would impose an undue burden."  Obj. at 7.  Defendants did not raise that argument before Judge Jones.  Indeed, Defendants did not raise *any* argument on the privilege question, and it is too late now to assert new arguments.

---

[4] Inexplicably, Defendants fail to mention that DoD *did* offer to produce certain exposure history reports for the 24 bellwether plaintiffs, to resolve aspects of Defendants' motion to compel.  *See* Ex. A (Letter from Maj. Nicole M. Kim to Mark J. Nomellini (Dec. 28, 2020)).  Defendants, however, did not accept that offer.

*See Williams*, 557 F.3d at 1292.  In any event, redacting or anonymizing the data would only add to the burden that Judge Jones already determined was undue.

### IV. Judge Jones Correctly Ruled That DoD Already Responded to Defendants' Request for Sales and Distribution Data

Defendants' Motion sought to compel the production of "sales and distribution data for the CAEv2" because, it insisted, DoD "has yet to provide any response." Mot. at 7. That was factually incorrect. As Judge Jones noted, "Defendants' motion is puzzling because the Department responded to this *Touhy* request on March 6, 2020." R&R at 18. "Indeed, Defendants acknowledge in their reply memorandum that they received a 'single document the United States produced that … purports to relate to sales and distribution[.]'" *Id*. That document was a spreadsheet containing sales and distribution data compiled by the Defense Logistics Agency ("DLA") in response to Defendants' request. *See* Ex. B (explaining the contents of the spreadsheet).

When Defendants, in their reply, "attempt[ed] to shift the focus of their argument by attacking the completeness of the Department's response," Judge Jones ruled that any such argument "fails because it is raised for the first time in a reply memorandum." *Id*. And Defendants did "not suggest—let alone demonstrate—that the Department's response is arbitrary and capricious even if more information or documents would assist Defendants in understanding discovery the Department already produced." *Id*.

15

In their objections, Defendants ignore Judge Jones's rulings, and thereby fail to show any error in them.  Instead, Defendants simply repeat the arguments they belatedly raised in their reply, namely, that the produced spreadsheet allegedly "contains no dates" and allegedly references other documents that were not produced.  Obj. at 8.  The Court should not consider those untimely arguments, which were raised for the first time in Defendants' reply.  If Defendants were dissatisfied with DoD's production, they should have explained why in their Motion (after meeting and conferring with DoD), instead of inaccurately claiming that DoD had failed to respond and then waiting until their reply to note their concerns.  In any event, Defendants' criticisms of the spreadsheet that DoD produced are baseless.  As Major Kim explained to Defendants' counsel during a November 13, 2020 teleconference, the spreadsheet *does* contain date information (in the column titled "_BIC_BORDER_DT").  ECF No. 1504-3.  And as to the alleged "other documents" that were not produced, Major Kim explained that if there were ever such documents in the contract file for the CAEv2, the documents no longer exist.  Moreover, Defendants' *Touhy* request sought documents "sufficient to show" certain things, not any and all documents related to sales and distribution of the CAEv2.  Mot., Ex. E at 9.

Defendants also contend that the spreadsheet is "indecipherable."  Obj. at 8. But DoD has already made significant efforts to explain the spreadsheet to

Defendants, by providing a written explanation to Defendants, Ex. B, and through a November 2020 teleconference during which Major Kim walked Defendants' counsel through the spreadsheet and answered questions about it.

Accordingly, Defendants have failed to show that Judge Jones's ruling is clearly erroneous or is contrary to law.

## CONCLUSION

For the reasons set forth above, Defendants' objections should be overruled.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LAWRENCE KEEFE
United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

s/ *Joshua M. Kolsky*
JOSHUA KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Attorneys for the Department of Defense*

17

## CERTIFICATE OF SERVICE

I certify that I served the within memorandum on all counsel of record by filing it with the Court by means of its ECF system on February 3, 2020.

s/ *Joshua M. Kolsky*

## CERTIFICATE UNDER N.D. FLA. LOC. R. 7.1(F)

I certify that the within memorandum contains 3,499 words, not counting the caption or signature block, based on the word-processing software used to prepare it.

s/ *Joshua M. Kolsky*

18