# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| | Judge M. Casey Rodgers |
| This Document Relates to: | Magistrate Judge Gary R. Jones |
| *Luke Estes*, No. 7:20-cv-00137; | |
| *Stephen Hacker*, No. 7:20-cv-00131; | |
| *Lewis Keefer*, No. 7:20-cv-00104 | **[FILED UNDER SEAL]** |

## PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE
### AND MEMORANDUM OF LAW

FILED USDC FLND PN
FEB 19 '21 AM 8:02

# <u>TABLE OF CONTENTS</u>

A.    Motions to Prohibit Prejudicial Litigation Conduct.............................1

    1.    Motion to bar improper bolstering of 3M's "good character." (PG12) ......................................................................1

    2.    Motion to prohibit references to the personal lives/backgrounds of the attorneys, including to experience in the U.S. military or Alabama football. (PS6)............................................................................1

    3.    Motion to prohibit counsel for Defendants from referring to 3M as "we," "us," or "our." (PS7)............................................1

    4.    Motion to exclude preemptive bolstering of the credibility of 3M's witnesses. (PS8)............................................2

B.    Motions to Bar Evidence or Argument on a Verdict's Impact on Defendants............................................................................2

    1.    Motion to prohibit evidence or argument that a verdict may result in increases in the price of military goods and services or otherwise impact the military's ability to equip servicemembers. (PS15)......................................................2

    2.    Motion to prohibit argument suggesting jurors will pay for a verdict against Defendants through higher costs for military goods. (PS16) ...............................................................3

    3.    Motion to prohibit argument that a verdict against Defendants may result in the higher costs of Defendants' other products. (PS17) .................................................................3

    4.    Motion to prohibit argument that a potential verdict against Defendants may result in Defendants firing employees. (PS18) ......................................................................3

C.    Motions to Exclude Generalized Evidence Unconnected to Plaintiffs .4

    1.    Motion to exclude evidence or argument of generalizations about the military or its branches without

proof of a connection to the specific plaintiffs or their cases. (PG1) ................................................................4

    2.    Motion to exclude evidence or argument of military violation of military rules, regulations, or standards. (PG2) ................................................................................5

D.    Motions to Exclude Settled Issues ........................................6

    1.    Motion to exclude evidence or argument that military or government had ultimate responsibility over design or labeling, prohibited instructions, or provided design "specifications" in advance of the development of the CAEv2. (PG3, PG4) ......................................................6

    2.    Motion to bar untimely disclosed evidence of 3M's knowledge of testing. (PG11) ....................................7

    3.    Motion to prohibit fact testimony inconsistent with factual admissions in Defendants' 30(b)(6) testimony. (PG13) ................................................................8

E.    Motions to Exclude "Mind-Reading" ..................................8

    1.    Motion to exclude argument that an individual's position or knowledge reflects the position or knowledge of the U.S. government or military as a whole. (PG5) ........................9

    2.    Motion to exclude evidence from 3M corporate witnesses that purports to describe the intentions, interests, concerns, or decisions of Dr. Ohlin or of any other government entity or agent. (PG6) ............................................10

    3.    Motion to exclude hearsay testimony on the knowledge and decisions of NVLAP. (PG10) ............................................11

F.    Motions to Exclude Prejudicial Non-Scientific Evidence ................11

    1.    Motion to exclude lay opinion on the CAEv2's efficacy. (PG7) ................................................................11

    2.    Motion to Exclude the Lovejoy Report. (PG9) ........................12

G. Motions to Exclude Prejudicial Evidence Relating to Plaintiffs ........14

 1. Motion to exclude argument or evidence about how, when, or under what circumstances Plaintiffs chose or employed their attorneys, including any referral arrangements or other counsel the Plaintiffs may have retained other than their current counsel. (PS4) ......................14

 2. Motion to exclude the census and bellwether selection forms. (PS14; PE4) ..................................................................14

 3. Motion to exclude evidence or argument that Plaintiffs' recovery should be impacted by disability or other collateral benefits or otherwise affected by operation of law. (PC1) ...............................................................................15

 4. Motion to exclude VA Compensation & Pension documents and determinations. (PC2, PC3, PC6) ...................16

  a. All VA information should be excluded. ......................16

  b. VA files regarding unrelated medical conditions should be excluded. ..................................................................17

 5. Motion to exclude evidence or argument of Plaintiffs' non-military noise exposure in the absence of presentation of causal evidence. (PC4)....................................17

 6. Motion to exclude unattributed statements in medical records. (PC5) ..........................................................................18

 7. Motion to exclude evidence or argument regarding speculative future treatments. (PC7)........................................20

 8. Motion to exclude evidence of alcohol and tobacco use. (PC8) ........................................................................................20

H. Motions Applicable to Luke Estes ....................................................21

 1. Motion to exclude evidence or argument relating to erectile dysfunction, virginity, fertility, Viagra, or other issues relating to sex between Mr. and Mrs. Estes. (PE1)........21

2.   Motion to exclude evidence or argument relating to the disposition of Estes's "pocket talker." (PE2) ..........................22

3.   Motion to exclude evidence relating to Estes's father's disabilities. (PE3) ......................................................22

4.   Motion to exclude evidence or argument that Estes was diagnosed with or suffers from clinical anxiety or depression (PE5) ......................................................22

I.   Motions Applicable to Stephen Hacker ...............................................23

1.   Motion to exclude opinion testimony of undisclosed expert Dr. Cunningham. (PH1) ...................................................23

2.   Motion to exclude records from Hacker's 2019 Mountainview visit for kidney issues. (PH2) .........................24

3.   Motion to exclude evidence of irrelevant and prejudicial events in Hacker's life. (PH4) ...................................................25

4.   Motion to exclude evidence of family issues. (PH5)...............25

J.   Motions Applicable to Lewis Keefer ...............................................26

1.   Motion to exclude evidence and argument relating to Keefer's alleged bad acts. (PK2) ...............................................26

2.   Motion to exclude evidence and argument relating to Keefer's past job performance. (PK3) ......................................27

3.   Motion to exclude evidence and argument relating to the reasons for Keefer's divorces. (PK5).......................................27

Conclusion ..........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. McGhan Medical Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ................................................................. 12, 13

*Amalgamated Transit Union Local 1324 v. Roberts*,
  434 S.E.2d 450 (Ga. 1993) ..........................................................................15

*Aycock v. R.J. Reynolds Tobacco Co.*,
  769 F.3d 1063 (11th Cir. 2014) ............................................................. 20, 25

*Bryan v. Whitfield*,
  2015 WL 11109792 (N.D. Fla. 2015) ..................................................... 23, 24

*Caicedo v. Food for Life Experience, Inc.*,
  2014 WL 2991090 (N.D. Fla. 2014) ..............................................................8

*Chavez v. Waterford School District*,
  2011 WL 887784 (E.D. Mich. 2011) ............................................................16

*Compton v. Bach*,
  374 F.Supp.3d 1296 (N.D. Ga. 2019) ..........................................................15

*Crompton v. Tuskegee University*,
  2016 WL 9775229 (M.D. Ala. 2016) .............................................................6

*E.E.O.C. v. West Customer Management Group, LLC*,
  899 F.Supp.2d 1241 (N.D. Fla. 2012) ...........................................................5

*Eghnayem v. Boston Scientific Corporation*,
  873 F.3d 1304 (11th Cir. 2017) ............................................................... 5, 17

*Ermini v. Scott*,
  937 F.3d 1329 (11th Cir. 2019) .....................................................................3

*Geis v. Tricam Industries, Inc.*,

    2011 WL 2971247 (D.N.J. 2011) .........................................................................20

*Gray v. Lockheed Aeronautical Systems Company*,

    125 F.3d 1371 (11th Cir. 2009) ............................................................................6

*Hendrix v. Evenflo Company*, *Inc.*

    255 F.R.D 568 (N.D. Fla 2009). ........................................................................21

*Huskey v. Ethicon*, *Inc.*

    848 F.3d 151 (4th Cir. 2017) .............................................................................17

*Ierardi v. Lorillard, Inc.*

    1991 WL 158911 (E.D. Pa. 1991) ......................................................................8

*In re C.R. Bard, Inc. MDL. No 2187, Pelvic Repair System Products Liability*

    *Litigation*,

    810 F.3d 913 (4th Cir. 2016) ..............................................................................5

*In re Chiquita Brands International, Inc.*,

    2019 WL 11497632 (S.D. Fla. 2019) ..................................................................4

*In re Delta/Airtran Baggage Fee Antitrust Litigation*,

    245 F. Supp. 3d 1343 (N.D. Ga. 2017)..............................................................20

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products*

    *Liability Litigation*,

    2017 WL 9807464 (N.D. Tex. 2017)..................................................................14

*In re Levaquin Products Liability Litigation*,

    2011 WL 6888533 (D. Minn. 2011) ....................................................................3

*In re Tylenol (Acetaminophen) Marketing Litigation*,

    2016 WL 3125428 (E.D. Pa. 2016) ....................................................... 1, 2, 3, 14

*In re Vioxx Products Liability Litigation*,

    2005 WL 3164251 (E.D. La. 2005) ..................................................................1, 3

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and PMF*
  *Products Liability Litigation*,
  2011 WL 6740391 (S.D. Ill. 2011) ............................................................ 1, 3, 14

*Kaiser v. Johnson & Johnson and Ethicon, Inc.*,
  947 F.3d 996 (7th Cir. 2020) ..............................................................17

*Kelley v. Purcell*,
  686 S.E.2d 879 (Ga. 2009)........................................................... 15, 16

*Leonard v. United States*,
  2017 WL 5987864 (S.D. Ohio 2017) ..................................................16

*Mamani v. Berzain*,
  2018 WL 1010582 (S.D. Fla. 2018) ....................................................13

*Orber v. Jain*,
  2012 WL 1565299 (D.N.J. 2012) ................................................. 16, 17

*Peeler v. KVH, Industries, Inc.*
  2014 WL 117101 (M.D. Fla. 2014) .......................................................7

*Peters v. Wooten*,
  297 S.W.3d 55 (Ky. App. 2009) ..........................................................15

*Potts v. Martin & Bayley, Inc.*,
  2011 WL 4738660 (W.D. Ky. 2011) ...................................................20

*Rafferty v. Erhard*,
  2012 WL 3518565 (W.D.N.Y. 2012) ..................................................16

*Rainey v. American Forest and Paper Association, Inc.*,
  26 F.Supp.2d 82 (D.D.C. 1998)............................................................8

*Samaan v. St. Joseph Hospital*,
  764 F.Supp.2d 238 (D. Me. 2011) ......................................................20

*Sowers v. R.J. Reynolds Tobacco Co.*,
  2015 WL 12839775 (M.D. Fla. 2015) .................................................21

*Stewart v. Daimler Chrysler Financial Services America*, LLC,

    2008 WL 11333226 (S.D. Fla. 2008) ....................................................4

*Transit Authority of River City v. Vinson*,

    703 S.W.2d 482 (Ky. App. 1985) ................................................ 15, 16

*U.S. v. Frazier*,

    387 F.3d 1244 (11th Cir. 2004) ................................................... 12, 13

*U.S. v. Monroe*,

    2015 WL 7176417 (N.D. Ga. 2015) ..................................................18

*U.S. v. Peneaux*,

    432 F.3d 882 (8th Cir. 2005) ............................................................17

*U.S. v. Taylor*,

    166 F.R.D. 356 (M.D.N.C. 1996) ......................................................8

*Warren v. Ballard*,

    467 S.E.2d 891 (Ga. 1996)................................................................15

*Williams v. Mast Biosurgery USA, Inc.*,

    644 F.3d 1312 (11th Cir. 2011) ........................................................12

*Wilson v. Taser International, Inc.*,

    303 Fed.Appx. 708 (11th Cir. 2008).................................................23

**Statutes**

38 U.S.C. § 101 ......................................................................................16

38 U.S.C. § 5107 ....................................................................................16

K.R.S. § 620.050 ....................................................................................26

**Rules**

Fed. R. Civ. P. 26(e)................................................................................7

Fed. R. Civ. P. 37(c)................................................................................7

FRE 401, 402 ....................................................................................... passim

FRE 402, 403 ..................................................................................................1

FRE 403 ............................................................................................... passim

FRE 404 ...................................................................................... 1, 25

FRE 404(a)(1), 608 ..........................................................................................2

FRE 404(b)(1) ................................................................................................25

FRE 602, 801 ...................................................................................... 8, 10

FRE 701, 802 ................................................................................................12

FRE 702 ......................................................................................... 5, 12

FRE 702(a) ...................................................................................................13

FRE 801 ..........................................................................................................7

FRE 802 ................................................................................................12

FRE 803(8) ....................................................................................................13

FRE 805 ................................................................................................19

**Regulations**

32 C.F.R. § 97.6 ..............................................................................................9

38 C.F.R. § 4.85 ............................................................................................16

38 C.F.R. § 4.87 ............................................................................................16

Pursuant to the Federal Rules of Evidence ("FRE"), Plaintiffs respectfully submit the following motions.

## A.     Motions to Prohibit Prejudicial Litigation Conduct

### 1.     *Motion to bar improper bolstering of 3M's "good character." (PG12)*

All witnesses and counsel should be barred from introducing evidence or argument relating to Defendants' non-hearing-protection-device products, corporate character, reputation, good acts, and charitable contributions.

Character evidence is inadmissible under FRE 404. In this case, the only purpose for such evidence would be to suggest that 3M is a "good company" that makes familiar non-CAEv2 products and is therefore unlikely to have made harmful products or irresponsible decisions in this instance. This is inadmissible propensity evidence. FRE 404; *see, e.g.*, *In re Yasmin*, 2011 WL 6740391, *16 (S.D. Ill. 2011) ("Bayer is not allowed to argue to the jury, even in the punitive damages phase, that it is the company that introduced a drug or drugs that greatly benefited society in an effort to have the jury overlook any wrong the jury might otherwise find with the contraceptive at issue here."); *In re Vioxx*, 2005 WL 3164251, *1 (E.D. La. 2005); *In re Tylenol*, 2016 WL 3125428, *11 (E.D. Pa. 2016).

If this Court permits introduction of Defendants' alleged "good acts," Plaintiffs should be permitted to present rebuttal evidence about Defendants' "bad acts" including, for example, the number of individuals alleging injuries caused by the CAEv2 and Defendants' environmental pollution to temper the undue prejudice of "good acts" under FRE 403.

### 2.     *Motion to prohibit references to the personal lives/backgrounds of the attorneys, including to experience in the U.S. military or Alabama football. (PS6)*

Defense counsel should not be permitted to raise gratuitous and irrelevant facts relating to prejudicial aspects of their personal backgrounds. FRE 402, 403. References to counsel's military service, religion, or relationship to popular sports are all irrelevant, highly prejudicial, and improper.

### 3.     *Motion to prohibit counsel for Defendants from referring to 3M as "we," "us," or "our." (PS7)*

Defense should be barred from suggesting they are part of 3M or Aearo by

using the terms "we," "us," or "our" when referring to Defendants.[1] Such statements are irrelevant and inaccurate and constitute improper vouching. FRE 401, 402. This form of argument lacks probative value and will unduly prejudice Plaintiffs, confuse the issues, and mislead the jury. FRE 403. Such language suggests that defense counsel has personal knowledge of the facts; is calculated to generate unwarranted sympathy from the jury, through the implication that the attorneys are parties to the litigation; and encourages the jury to base its decision on factors other than the law.[2]

### 4. *Motion to exclude preemptive bolstering of the credibility of 3M's witnesses. (PS8)*

Defendants have elicited inadmissible deposition testimony solely intended to bolster the character of their witnesses.[3] However, evidence of a witness's character or trait, including truthfulness, is not admissible to prove that on a particular occasion that witness acted in accordance with that trait. FRE 404(a)(1), 608. Such evidence is irrelevant, unduly prejudicial, and inadmissible. FRE 401, 402, 403. Accordingly, all witnesses and counsel should be barred from providing argument or evidence to bolster Defendants' current or former employees and experts unless their character or traits have been challenged. *See In re Tylenol*, 2016 WL 3125428, *8.

### B. Motions to Bar Evidence or Argument on a Verdict's Impact on Defendants

### 1. *Motion to prohibit evidence or argument that a verdict may result in increases in the price of military goods and services or otherwise impact the military's ability to equip servicemembers. (PS15)*

Argument suggesting that the jury should not award damages or should reduce

---

[1] *See, e.g.*, PX1(Hearing-Tr-(2/5/21)-7:25-12:6) ("[T]hat was a directive from the military to us."); 7:25-8:2 ("In other words, they claim we should have made a longer earplug and the military told us to make a shorter one"); 21:19-21 ("One year after we sent them that design, we began receiving emails from Doug Ohlin requesting that we shorten it").

[2] *See* PX2(Final-Pretrial-Conf-Tr-*Moody v. E.I. du Pont de Nemours*, at 75-76 (emphasizing that this is a "serious issue and oftentimes it leads to mistrials")); PX3(*Xarelto*-Order-(8/1/18)).

[3] *See, e.g.*, PX4(Merkley-Dep-(2/26/20)-100:2-104:7) (Defense counsel eliciting testimony as to Berger's reputation); PX5(Binseel-Dep-(10/6/20)-43:1-44:4) (same).

2

the amount of damages based on anything other than admissible evidence is improper. Any such evidence is not relevant, and its probative value is substantially outweighed by the risk of unfair prejudice. FRE 401, 402, 403; *Vioxx*, 2005 WL 3164251, *1 (granting plaintiff's motion in limine to exclude "[a]ny reference that this case . . . may cause an increase in the cost of purchasing or maintaining on the market[,]"or "an increase in the cost of purchasing medication for the public").

## 2.     *Motion to prohibit argument suggesting jurors will pay for a verdict against Defendants through higher costs for military goods. (PS16)*

Evidence or argument suggesting that the outcome of the case will ultimately impact the way jurors' tax dollars are spent is akin to asking jurors to place themselves in the shoes of the victim, which is universally prohibited. *Ermini v. Scott*, 937 F.3d 1329, 1340 (11th Cir. 2019) ("[T]he jury's sympathy will be unfairly aroused, resulting in a disproportionate award of damages."). Argument that a verdict against Defendants will impose costs on the jurors, as taxpayers, would make the jury consider their personal interests instead of the admissible evidence relating to Plaintiffs' damages and should therefore be precluded.

## 3.     *Motion to prohibit argument that a verdict against Defendants may result in the higher costs of Defendants' other products. (PS17)*

For the same reasons stated in Part B(2), Defendants should also be precluded from offering evidence or arguments that this lawsuit or a potential verdict could impact the cost of Defendants' other products. *See Levaquin*, 2011 WL 6888533, *1 (D. Minn. 2011) (excluding "evidence that tends to suggest in any way that an award of damages in this case will adversely affect the public's access to medications"); *Yasmin*, 2011 WL 6740391, *16 (similar); *Vioxx*, 2005 WL 3164251, *1.

## 4.     *Motion to prohibit argument that a potential verdict against Defendants may result in Defendants firing employees. (PS18)*

 While evidence of Defendants' net worth or financial status is admissible to prove punitive damages, Defense counsel's speculation on business decisions that may be made after a verdict is irrelevant and unduly prejudicial. Such evidence or argument would encourage the jury to decide the case based on bias or prejudice, and base damages on something other than the admissible facts. *See Tylenol*, 2016 WL 3125428, *5 (excluding argument or evidence that a plaintiff's verdict will or could cause layoffs); *In re Levaquin*, 2011 WL 6888533, *1; *In re Vioxx*, 2005 WL 3164251, *1 (E.D. La. Nov. 18, 2005).

## C.   Motions to Exclude Generalized Evidence Unconnected to Plaintiffs

### 1.   *Motion to exclude evidence or argument of generalizations about the military or its branches without proof of a connection to the specific plaintiffs or their cases. (PG1)*

Generalizations about a group's members, cultures, practices, or states of mind are speculative, irrelevant, and inadmissible without a specific connection to the case.[4]   Nevertheless, Defendants have proffered expert testimony, deposition designations, and exhibits that repeatedly discuss generalizations about the Army, the military, and servicemembers without any connection to Plaintiffs. These generalizations are irrelevant and risk undue prejudice. They also directly contradict undisputed facts. As discussed in this Court's *Daubert* order, Defendants cannot use this evidence to speculate about Plaintiffs.[5]

Among other evidence, Defendants should be prohibited from offering the 2011 GAO Report as evidence of Plaintiffs' or the military's hearing conservation practices.[6] The statements in the GAO report are irrelevant because there is no evidence that the alleged shortcomings at the two Army bases at issue there affected any of the Plaintiffs or their duty stations. *See In re Chiquita*, 2019 WL 11497632, *31-33 (S.D. Fla. 2019); *Stewart v. Daimler Chrysler Fin. Serv. Am.*, 2008 WL 11333226, *2 (S.D. Fla. 2008). Similarly, Dr. Battler, an Army audiologist, testified that the CAEv2 was distributed to soldiers without fittings, trainings, or written instructions.[7] But no evidence connects Dr. Battler's generalization about the Army's distribution of the CAEv2 with Plaintiffs. That evidence and any other general evidence unrelated to Plaintiffs should be excluded.[8]

---

[4] *See* Dkt. 1651 (excluding evidence of "what was 'understood' or 'well-known' by 'the military,'" "generalities about *all* servicemembers," "'widespread' [military/Army] practices," "generaliz[ations] about all servicemembers often not receiving instruction and fitting with their hearing protection devices"); FRE 401, 402, 403, 404.

[5] Dkt. 1651.

[6] *See* Dkt. 1627-35.

[7] *See* PX6(Battler-Dep-(9/10/20)-17:45-46:48).

[8] *See, e.g.*, Dkt. 1627-21 (Casali); Dkt. 1627-22 (HCE); Dkt. 1627-23 (Mcllwain); Dkt. 1627-18-222:1-227:9 (internet blog); PX7(3M_MDL000272862) (Ohlin email).

## 2.    *Motion to exclude evidence or argument of military violation of military rules, regulations, or standards. (PG2)*

The Court has precluded Defendants' government-fault experts from opining about the military's general noncompliance with military rules, regulations, and standards.[9] Nevertheless, Defendants still intend to offer lay and expert testimony about alleged failures by the Army to comply with military rules, regulations, and standards—both in and outside the context of Plaintiffs' cases. First, Defendants' case-specific experts intend to testify about whether the Army's regulations were violated in Plaintiffs' cases. Second, Defendants' general culture experts intend to testify about other instances of military non-compliance based on their personal experiences. Third, Defendants might also offer lay testimony from military audiologists that the military violated its rules and regulations. All of this evidence and any related argument should be excluded under Rules 403 and 702.

As a threshold matter, this evidence presents a risk of "misle[ading] the jury into thinking that general [] regulatory compliance, not state tort liability, [is] the core issue." *Eghnayem*, 873 F.3d at 1318-19. To prove their apportionment defense, Defendants must establish the military was negligent, not that the military breached its rules and regulations. *See id.* Such evidence will provoke the parties to engage in a time-consuming "mini-trial" on whether the military in fact complied with its rules and regulations, which *Eghnayem* prohibits. *Id.* Given these "concerns of prejudice and confusion," any evidence or argument regarding the military's alleged noncompliance with its rules and regulations should be excluded. *See id.* (affirming exclusion of evidence of FDA regulations under FRE 403); *In re C.R. Bard*, 810 F.3d 913, 921-22 (4th Cir. 2016) ("[H]aving a 'mini-trial' could easily inflate the perceived importance of compliance and distract the jury from the central question before it.").

Moreover, the Court has ruled that Defendants' military-fault defenses do not require expert testimony—and for good reason.[10] Defendants concede that "[j]urors do not need expert testimony" to determine that military regulations "require medically trained personnel to fit and train service members with earplugs" and that "if no one tells a user about a technique for improving the fit of an earplug, the user may get less protection from the earplug than he otherwise would have."[11] Thus, under Defendants' own argument, expert testimony on military noncompliance is "not helpful" under Rule 702. *See, e.g.*, *E.E.O.C. v. W. Customer*, 899 F.Supp.2d 1241, 1251 (N.D. Fla. 2012) (Rodgers, J.).

---

[9] *See* Dkt. 1651.
[10] *E.g.*, *Estes*, Dkt. 59 at 7.
[11] *Estes*, Dkt. 43 at 27.

Even if such testimony were helpful, it violates Rule 403. Allowing witnesses "cloaked in the special credibility of an 'expert' to testify that there is some magic" about the military's alleged nonconformance is "not appropriate." *Crompton v. Tuskegee*, 2016 WL 9775229, *3 (M.D. Ala. 2016). This is especially true because none of Defendants' experts opines that the military's alleged noncompliance caused Plaintiffs' hearing-related injuries. Despite insinuating that nonconformance put Plaintiffs' "at greater risk of sustaining a hearing impairment,"[12] Defendants' military-fault experts all disavow "any causality opinions."[13] Lacking any evidence that the military's alleged noncompliance caused Plaintiffs' to use the CAEv2 improperly, Defendants' expert testimony is confusing and misleading.

## D.   Motions to Exclude Settled Issues

### 1.   *Motion to exclude evidence or argument that military or government had ultimate responsibility over design or labeling, prohibited instructions, or provided design "specifications" in advance of the development of the CAEv2. (PG3, PG4)*

Defendants should be barred from arguing, "with respect to [their] design and [labeling] decisions that the government made [them] do it." *Gray v. Lockheed*, 125 F.3d 1371, 1377 (11th Cir. 2009). To permit Defendants to present evidence or argument that the military had ultimate responsibility over the design or labeling of the CAEv2 would effectively allow the jury to reconsider the government contractor defense, after this Court rejected that defense.[14]

This Court specifically held that "not only did the Army *not* exercise design discretion, [it] also gave Aearo complete freedom to decide whether and how to proceed."[15] Indeed, "no aspect of the design for the CAEv2 was ever the subject of a procurement contract with the Army," *id.* at 55; Defendants "independently redesigned the CAEv2," *id.* at 11; and "[t]here is no evidence—none—that the Army prohibited Aearo from warning of alleged dangers," *id.* at 53-54. In fact, this Court has unequivocally found that the military did *not* have ultimate responsibility over design or labeling—Aearo did. *See also id.* at 2 n.2, 8 n.11 (Aearo held patents), 8

---

[12] *E.g.*, Dkt. 1595-24 at 30.

[13] *E.g.*, *Hacker*, Dkt. 50-10 at 21; *Keefer*, Dkt. 43-9 at 24.

[14] *See* Dkt. 1280; Dkt. 1329.

[15] Dkt. 1280 at 41, 43 ("Aearo had sole discretion"), 49 ("discretionary design decisions … were made by Aearo alone").

n.12 (Aearo is the "creator").[16]

Defendants should also be prohibited from arguing that the government provided design "specifications" for the CAEv2. The Court has already found "there was no record evidence that the Army approved reasonably precise specifications for the CAEv2."[17] That ends the inquiry. *See, e.g.*, *Peeler v. KVH*, 2014 WL 117101, *6 (M.D. Fla. 2014) (granting motion in limine, consistent with summary-judgment order, because party cannot "re-submit its argument to the jury in hopes of a different determination at trial"). Such evidence is also irrelevant, unduly prejudicial, and confusing. FRE 401, 402, 403.

Similarly, Defendants should also be prohibited from arguing that the military "didn't want" instructions included with the CAEv2.  Santoro testified that Ohlin requested that 3M ship the CAEv2 "with nothing else in there," and specifically "not to include instructions" in the CAEv2 bulk pack.[18] In addition to being inconsistent with this Court's orders, these statements are also bald hearsay, and should be excluded on that basis. FRE 801.

Lastly, Defendants might argue that evidence or argument about military responsibility supports their government-fault defenses. But the Court has limited those defenses to the military's alleged failure to (1) "ensure [Plaintiff] was fit with the CAEv2 by medically trained personnel" and (2) "inform him of the flange-fold fitting technique."[19]  Neither theory implicates the military's "ultimate responsibility" for design or warning decisions made by Defendants.

### 2.    *Motion to bar untimely disclosed evidence of 3M's knowledge of testing. (PG11)*

Defendants should be barred from claiming that 3M was aware of testing of non-linear hearing protection devices ("HPDs") beyond that disclosed in 3M's Response to Interrogatory No. 16 and its supplements.[20] A party must supplement a discovery response unless the information has "otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37(c). When such information has not "otherwise been made known," and has not been provided in a supplemental response, Defendants may not "'sandbag'

---

[16] To allow Defendants to inform the jury that the military had "ultimate responsibility" for labeling would also subvert the Court's summary-judgment ruling on the combat-use exception. *See Estes*, Dkt. 53 at 25; *Keefer*, Dkt. 59 at 17.

[17] Dkt. 1329 at 2; *see* Dkt. 1329 at 36-38 & n.31.

[18] PX8(Santoro-Dep-(12/3/19)-326:8-21).

[19] *Estes*, Dkt. 59 at 6-7.

[20] *See* PX9(Def-Rog-Responses-16).

Plaintiffs at trial with evidence or testimony inconsistent with" their responses.[21] Although the fact that additional non-party testing *occurred* has been made known in discovery, there has been no new disclosures about *Defendants' knowledge* of such tests. Therefore, Defendants may not argue that 3M had knowledge of any undisclosed testing responsive to Interrogatory No. 16.

### 3. *Motion to prohibit fact testimony inconsistent with factual admissions in Defendants' 30(b)(6) testimony. (PG13)*

Defendants should be precluded from introducing any evidence or testimony that contradicts Defendants' 30(b)(6) admissions. *See Caicedo v. Food for Life*, 2014 WL 2991090, *3 (N.D. Fla. 2014) ("As the 30 (b)(6) representative the testimony of the witness is binding on the corporation and serves as a party admission.").

The exclusion of evidence contrary to 30(b)(6) admissions is "consistent with both the letter and spirit of Rule 30(b)(6)," which "makes clear that a designee is not simply testifying about matters within his or her own personal knowledge, but rather is 'speaking for the corporation.'" *Rainey v. American Forest*, 26 F.Supp.2d 82, 94 (D.D.C. 1998). Many district courts have concluded that "[u]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *See, e.g., Ierardi v. Lorillard*, 1991 WL 158911, *3 (E.D. Pa. 1991); *U.S. v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996).

The effect of Rule 30(b)(6) testimony would be perverted if a corporate party was allowed to elicit contradictory testimony from its own employees, agents, and representatives. Such conduct would also confuse the jury. Because binding 30(b)(6) testimony is provided by party-representatives, it is also necessary to take extra precautions to prevent Defendants from creating confusion by having those same individuals later testify to facts inconsistent with their 30(b)(6).[22]

## E.   Motions to Exclude "Mind-Reading"

As this Court has recently observed, "[n]o witness, expert or otherwise, is going to be able to comment about what other people knew or understood, what they believed."[23] 3M proffers testimony from many deponents that purports to engage in

---

[21] Dkt. 1258 at 5-6.

[22] For example, 3M gave 30(b)(6) testimony that the earplug tips for the CAEv2 and the Ultrafit were identical. PX10(30(b)(6)-Dep-(9/25/20)-254:15-19). 3M should therefore be precluded from introducing testimony at trial that their designs were different.

[23] PX11(Hearing-Tr-(2/5/21)-35:16-18); *see* FRE 602, 801.

exactly this kind of "mind-reading," and all such evidence and argument should be excluded as foundationless hearsay.

    **1.**    ***Motion to exclude argument that an individual's position or knowledge reflects the position or knowledge of the U.S. government or military as a whole. (PG5)***

Individual percipient deposition testimony provided under *Touhy* by current and former government employees does not and may not reflect any official position of any part of the government.[24] For this restriction to be meaningful, the Court must exclude *Touhy* testimony likely to confuse the jury on the state of mind or knowledge of the government as a whole.

For example, Fallon made an unsupported declaration as to what all "[t]echnicians were instructed"[25] by CHPPM to do in connection with CAEv2 fitting, has testified that he "had no reason to suspect there were any military audiologists who did not have" information on the need to fold flanges on the CAEv2;[26] and has testified as to the military's intended purpose for the "wallet card."[27] Fallon lacks personal knowledge on these issues, and Defendants should be prohibited from directly or indirectly suggesting otherwise, including that he speaks on behalf of the Army or CHPPM. FRE 403; 32 C.F.R. § 97.6 (*Touhy* witnesses only "testify concerning those matters that were specified in writing and properly approved").

Defense counsel designed the testimony they took from *Touhy* witnesses to *seem* like official government positions or knowledge, despite it being only the testimony of an individual employee.[28] For example, Merkley testified about how the Army "correctly" evaluates fit,[29] the military's expectation of the impact of its guidance,[30] and whether and when "the Air Force had test data on the performance of the Combat Arms Earplug."[31]  Binseel testified on "the purpose of" the military's

---

[24] *See, e.g.*, PX12(Fallon-Dep-(9/3/20)-13:17-14:1) ("He may not purport to testify on behalf of the Department of the Army or announce what is or was the policy position of the Department of Army[.]").

[25] Dkt. 1071-67 at 3.

[26] PX13(Fallon-Dep-(9/4/2020)- 809:21-810:7).

[27] *Id.* at 794:23-795:23.

[28] *See, e.g.*, PX4(Merkley-Dep-(2/26/20)-61:13-16) ("Q. The memorandum is on Department of Army letterhead?"); *id.* at 66:14-15; 81:1-7.

[29] *Id.* at 33:5-34:4.

[30] *Id.* at 107:21-108:15.

[31] *Id.* at 176:4-11.

testing of HPDs.[32] Battler testified that "ultimately, the final responsibility" for ensuring HPD fit "comes down to the soldier."[33] Both Battler and Merkley testified on what military regulations require with regard to fitting of HPDs.[34]

Testimony tending to suggest that these deponents speak on behalf of the military must be excluded to avoid confusing the jury. FRE 403.

## 2. *Motion to exclude evidence from 3M corporate witnesses that purports to describe the intentions, interests, concerns, or decisions of Dr. Ohlin or of any other government entity or agent. (PG6)*

No witness is competent to testify on the state of mind, knowledge, or intentions of the military or its agents, and such testimony should be excluded. FRE 602, 801.

For example, Berger intends to opine that "Doug Ohlin ultimately determined" which design elements "best served the needs of the United States Army," and that "Ohlin opted for a one-sized plug designed to fit 'most,' not all."[35] Berger also intends to testify to which designs "the French and United States militaries were aware of," and what "the French Army thought."[36] Berger has also provided hearsay testimony on "positive responses" he claims to have received from Ohlin, and Defendants seek to admit Berger's speculative writings and hearsay testimony on what Ohlin, and by extension the military, "[a]ccepts," or "would not accept" or "is interested in," in terms of HPDs, as well as Ohlin's reasons for those positions.[37]

Additionally, Hamer testified that he believes the military does not "rely on the NRR," that "the military was aware of the flange-flipping issue," and that "Doug Ohlin was involved in the development of this product."[38] Santoro also repeatedly testified as to what Ohlin "felt" about HPD fit training.[39]

This hearsay and speculation as to Ohlin and the military's state of mind violates the Federal Rules and this Court's limitation that no witness may "comment

---

[32] PX5(Binseel-Dep-(10/6/20)-99:9-16, 102:20-103:11).

[33] PX6(Battler-Dep-(9/10/20)-39:5-18).

[34]   PX4(Merkley-Dep-(2/26/20)-25:17-26:13);   PX6(Battler-Dep-(9/10/20)-58:23-59:2, 66:8-14).

[35] PX14(Berger-Exp.-Disc.-5).

[36] *Id.* at 10.

[37]   PX15(3M_MDL000425673);   *see also*   PX16(Berger-Dep-(12/12/19)-60:2-21, 61:8-17).

[38] PX17(Hamer-Dep-(12/18/19)-160:19-161:6, 328:10-22).

[39] PX8(Santoro-Dep-(12/3/19)-326:22-327:3; 328:23-329:1; 329:7-18).

about what other people knew or understood, what they believed."[40] Therefore, it should be excluded.

### 3. *Motion to exclude hearsay testimony on the knowledge and decisions of NVLAP. (PG10)*

Berger has no foundation to testify as to the state of mind or knowledge of the accrediting organization NVLAP or its agents/inspectors. 3M has disclosed Berger's intention to testify beyond his personal knowledge of NVLAP audits, including testifying that NVLAP has "approved of" specific Aearo testing procedures, and Berger has already testified that "NVLAP feels we do a pretty good job."[41] Berger has no foundation for this testimony on NVLAP's knowledge and impressions and, as the Court previously stated, it must be excluded.[42]

## F. Motions to Exclude Prejudicial Non-Scientific Evidence

### 1. *Motion to exclude lay opinion on the CAEv2's efficacy. (PG7)*

Defendants repeatedly attempted to elicit lay testimony as to non-expert's opinions regarding the efficacy of the CAEv2.[43] Defendants have also produced documents and developed testimony containing anecdotal hearsay or otherwise unscientific statements about the efficacy and usage of the CAEv2.[44]

---

[40] PX11(Hearing-Tr-(2/5/21)-35:16-18).

[41] PX14(Berger-Exp.-Disc-6); PX16(Berger-Dep-(12/12/19)-28:10).

[42] *See* PX11(Hearing-Tr-(2/5/21)-35:16-18).

[43] *E.g.*, PX18(Gates-Dep-(5/29/20)-85:7-86:24); PX4(Merkley-Dep-(2/26/20)-197:1-11, 226:5-228:20, 446:3-9, 469:6-16): PX12(Fallon-Dep-(9/3/20)-262:25-266:4); PX6(Battler-Dep-(9/10/20)-120:8-16, 124:8-24, 125:7-126:1, 137:21-138:11, 243:6-244:12, 249:10-16); PX19(Gavin-Dep-(1/29/20)-128:13-131:11, 133:2-6, 135:4-7); PX20(Myers-Dep-(12/13/19)-697:13-698:7); PX21(Murphy-Dep-(1/15/21)-20:21-21:3, 38:8-16); PX22(Lovejoy-Dep-(6/24/20)-33:1-34:9); PX23(McNamara-Dep-(3/11/20)-111:11-113:2)

[44] PX24(3M_MDL000271582); PX25(3M_MDL000008279); PX26(3M_MDL000229331); PX27(3M_MDL000017328) PX28(3M_MDL000016943); PX7(3M_MDL000272862); PX29(ILS_Fallon00000021); PX30(3M_MDL000451171); PX31(3M_MDL000321481); PX32(CTRL_3M_Touhy00000142); PX33(3M_MDL000393650); PX34(3M_MDL000229593); PX35(3M_MDL000008610); PX36(FALLONSDT000995); PX37(3M_MDL000478130); PX38(3M_MDL000620406);

Opinions of persons not disclosed and qualified as experts concerning the CAEv2's efficacy should be excluded under Rules 701, 702, 403, and 802 to the extent they constitute hearsay. Such lay opinions include, without limitation: (i) testimony from percipient witnesses as to their personal opinions about whether the CAEv2 prevented hearing injury for them; (ii) anecdotes or statements from laypersons as to the CAEv2's efficacy, such as a soldier's statement that wearing the CAEv2 "probably made the difference between eardrum [hearing] damage and not,"[45] or impressions that the CAEv2 "protected their ears as well as improved communication ability and noise"; [46] and (iii) opinions about the CAEv2's efficacy as stated in reports or studies not generated by experts disclosed and qualified in this case.

An opinion from a layperson may only be offered at trial if it is "not based on scientific, technical, or other specialized knowledge." FRE 701. Under Rule 702, only a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." Reliable opinions concerning the efficacy of earplugs in preventing hearing injury necessarily require "scientific, technical, or other specialized knowledge." *Williams v. Mast*, 644 F.3d 1312, 1318, 1320-21 (11th Cir. 2011). Indeed, both sides in this litigation have proffered expert testimony on the CAEv2's efficacy precisely because laypersons are unqualified to do so.

Such unqualified opinion evidence would be both unhelpful to the jury, and would also mislead and confuse the jury. The scientific claims here involve the CAEv2's inability to prevent injury in non-obvious ways, such as imperceptible loosening. Because lay opinion concerning the CAEv2's efficacy would only confuse and mislead jurors on such scientific issues, it should be excluded under Rule 403. *See, e.g.*, *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004); *Allison v. McGhan*, 184 F.3d 1300, 1309-10 (11th Cir. 1999).

### 2.   *Motion to Exclude the Lovejoy Report. (PG9)*

The March 2007 report written by James Lovejoy[47] and any testimony

---

PX39(3M_MDL000620407); PX40(3M_MDL000620408); PX41(3M_MDL000620409); PX42(Binseel-et-al-2012-comparison-of-the-single-sided-and-double-sided-CAE-21-22); PX43(JDVAC-2009-Operational-Hearing-Services-in-an-Active-Theater); PX6(Battler-Dep-(9/10/20)-77:13-80:25, 118:2-126:1, 155:11-156:21, 244:1-24); PX16(Berger-Dep-(12/12/19)-111:13-114:1).

[45] PX24(3M_MDL000271582).

[46] PX44(Berger-Dep-(12/11/19)-473:20-474:4).

[47] PX45(Lovejoy-Report).

concerning it should be excluded pursuant to Rules 702, 403, 802, and Pretrial Order No. 28.[48] The Lovejoy Report purports to summarize a study of the CAEv2 "to determine if it provides adequate hearing protection in accordance with the requirements of MIL-STD-1474C/D."[49] Lovejoy, however, has not been disclosed as an expert, and was indisputably unqualified to conduct the study.

Lovejoy admits that prior to conducting the study he had never performed "impulse noise testing," "localization testing," or "speech intelligibility testing using hearing protection devices."[50] In fact, he had never "done any testing in a lab on humans using ... any protective device."[51] Lovejoy also concedes that his report was never published, it was not intended to be "released" outside of his laboratory, and it was "not designed to see whether these [CAEv2] would be safe to use at a firing range."[52] Defendants cannot show that Lovejoy had the necessary qualifications to test the CAEv2 or that he followed a reliable methodology in conducting this study.

The report itself is inadmissible hearsay. Notably, it does not meet the public-records exception. Although Lovejoy worked at a government laboratory, his report does not "set[] out ... the office's activities," it is not a record of a "matter observed while under a legal duty to report," and it does not constitute "factual findings from a legally authorized investigation." FRE 803(8). Lovejoy took it upon himself to conduct the study after his laboratory purchased a mannequin for other uses.[53] There was no "involvement from anyone ... employed by the Department of Energy in connection with [his] testing."[54] In any event, the testing is not trustworthy evidence concerning the efficacy of earplug protection. See FRE 803(8).[55]

Because of Lovejoy's lack of specialized knowledge, the opinions and results set forth in the Lovejoy Report would not help the trier of fact, *see* FRE 702(a), and they would also confuse and mislead the jury. It should thus be excluded under Rule 403. *See*, *e.g.*, *Frazier*, 387 F.3d at 1263; *Allison*, 184 F.3d at 1309-10.

---

[48] Dkt. 1009.

[49] PX45(Lovejoy-Report-iii).

[50] PX22(Lovejoy-Dep-(6/24/20)-96:2-97:19).

[51] *Id.* at 98:12-19.

[52] *Id.* at 104:2-16, 133:9-21, 136:15-22.

[53] *Id.* at 125:13-126:22.

[54] *Id.* at 130:24-131:6, 39:24-40:17.

[55] Defendant cannot circumvent the hearsay rules by having a testifying expert serve as a conduit for Lovejoy's unreliable opinions by calling his report "reliance materials." *See, e.g.*, *Mamani v. Berzain*, 2018 WL 1010582, at *3 n. 6 (S.D. Fla. 2018). Regardless, Defendants' experts cannot reasonably rely on the report under Rule 703 given the unreliability of Lovejoy's testing and his lack of expertise.

### G.   Motions to Exclude Prejudicial Evidence Relating to Plaintiffs

**1.   *Motion to exclude argument or evidence about how, when, or under what circumstances Plaintiffs chose or employed their attorneys, including any referral arrangements or other counsel the Plaintiffs may have retained other than their current counsel. (PS4)***

How, when, or under what circumstances Plaintiffs chose or employed their attorneys is irrelevant to the issues in this litigation. FRE 401, 402; *see, e.g.*, *In re Yasmin*, 2011 WL 6740391, *16 (S.D. Ill. 2011). Alternatively, all such evidence and argument should be excluded as unduly prejudicial—designed solely to embarrass Plaintiffs or their attorneys—and misleading and confusing. FRE 403; *see In re DePuy*, 2017 WL 9807464, *3 (N.D. Tex. 2017); *In re Tylenol*, 2016 WL 3125428, *5-6, *17 (E.D. Pa. 2016); *In re Yasmin*, 2011 WL 6740391, *16.

**2.   *Motion to exclude the census and bellwether selection forms. (PS14; PE4)***

Case census forms and bellwether selection sheets should be excluded because their prejudicial value and potential for confusion far outweighs their relevance. MDLs are a unique breed of cases, and this MDL is itself "special and unique in its own right."[56] This Court has used an array of docket-management tools: an initial census requirement for filed cases,[57] an inactive docket for unfiled cases,[58] and a bellwether selection process that included unsworn bellwether selection sheets.[59]

The census form is of minimal probative value and its admission would require significant explanation of the context in which it was completed. This form was completed for tens of thousands of cases in less than 45 days and without access to DOD and VA records. Moreover, since this information was first collected, Defendants have received answers to more than 70 interrogatories, taken numerous depositions, and received thousands of pages of documents from Plaintiffs.  That discovery supersedes the census forms, and Defendants should not be permitted to suggest that Plaintiffs are changing their stories merely because of the unusual sequence of discovery in this MDL.

The bellwether selection sheet is even more unusual and prejudicial.

---

[56] PX46(CMC-1-Tr.-(4/17/19)-8:14-17).

[57] Dkt. 775.

[58] Dkt. 864, 865 & 898.

[59] Dkt. 922.

Bellwether cases were selected from the administrative docket before the cases had been formally filed, vetted, or screened. The selection sheets were completed by counsel, unsigned, and intended as tools for bellwether selection, not discovery. *See* Dkt. 922 (prohibiting counsel from "investigating any potential bellwether candidate and/or claim at this time, beyond obtaining responses to the questions on the Bellwether Selection Form"). The Court thus warned that it "didn't expect to [see this form] in cross-examination at trial."[60] Permitting Defendants to use it on cross-examination will unduly prejudice Plaintiff and confuse the jury.

Should either the bellwether selection sheet or census form be used at trial, it would require a broader discussion of the circumstances around these submissions.

### 3. *Motion to exclude evidence or argument that Plaintiffs' recovery should be impacted by disability or other collateral benefits or otherwise affected by operation of law. (PC1)*

Evidence of collateral benefits is inadmissible to reduce a plaintiff's damages under Georgia and Kentucky tort law. *Amalgamated v. Roberts*, 434 S.E.2d 450, 451-52 (Ga. 1993); *TARC v. Vinson*, 703 S.W.2d 482, 484 (Ky. App. 1985). This prohibition is based on the sound policy that tortfeasors should not benefit from payments to their victims by other sources pursuant to contractual obligations. *Amalgamated*, 434 S.E. 2d at 451; *Peters v. Wooten*, 297 S.W.3d 55, 62 (Ky. App. 2009). There is an "absolute bar" to admitting collateral source evidence because it is irrelevant. *Amalgamated*, 434 S.E.2d at 453; *Compton v. Bach*, 374 F.Supp.3d 1296, 1302 (N.D. Ga. 2019).

No exceptions that could potentially admit this evidence apply here. Any exceptions are narrowly limited to impeachment, where the plaintiff has opened the door by giving false evidence relating to a material issue in the case. *See, e.g.*, *Kelley v. Purcell*, 686 S.E.2d 879, 881-82 (Ga. 2009); *Peters*, 297 S.W.3d at 62-63. This exception is inapplicable where, the plaintiff's testimony does not relate to a material issue in the case. *See Warren v. Ballard*, 467 S.E.2d 891, 893 (Ga. 1996).

No Plaintiff here will testify that he failed to seek medical treatment because he could not afford it. Nor can Defendants plausibly argue that any Plaintiff exaggerated his injuries for financial gain. Accordingly, collateral-source evidence is irrelevant and inadmissible.

Georgia and Kentucky also recognize a strong presumption against admitting collateral-source evidence under Rule 403 because of the substantial likelihood of prejudice to the jury. The Georgia Supreme Court "strongly reaffirmed the principle that [collateral-source evidence] will rarely be admissible in a personal injury tort

---

[60] PX47(CMC-8-Tr.-(1/16/20)-17:24-18:1).

action such as this, even to counter a false impression created by other testimony." *Kelley*, 686 S.E. 2d at 881. Likewise, Kentucky courts "have long recognized that evidence of collateral sources to show malingering has little or no probative value" and such evidence "would be more likely to reduce [plaintiff's] award than to change the jury's mind. This is precisely the evil which the collateral-source rule guards against." *TARC*, 703 S.W.2d at 485.

### 4. Motion to exclude VA Compensation & Pension documents and determinations. (PC2, PC3, PC6)

Plaintiffs applied for and received VA disability benefits for various medical conditions, many unrelated to their claims here. The Court should exclude all documents in Plaintiffs' VA disability files[61]—and any related testimony—under Rule 403 because the probative value of any such evidence is substantially outweighed by its likelihood to prejudice, confuse, or mislead the jury. Alternatively, the Court should exclude any determinations about unrelated medical conditions and any statements from non-treaters contained in such files.

#### a. All VA information should be excluded.

All information in VA disability files—and related testimony—should be excluded because it is unfairly prejudicial and likely to mislead the jury. VA submissions and determinations are made in the context of 38 U.S.C. § 101 *et seq.*, which imposes a different standard than civil litigation. *See* 38 U.S.C. § 5107 (claimant's responsibility and benefit of doubt); *id.* § 1155 ("The ratings shall be based … upon the average impairments of earning capacity resulting from such injuries in civil occupations."). Determinations made under different standards would confuse the issues and mislead the jury. *Chavez v. Waterford*, 2011 WL 887784, *3 (E.D. Mich. 2011); *cf. Leonard v. U.S.*, 2017 WL 5987864, *2-3 (S.D. Ohio 2017). That the VA granted benefits or found a condition service-connected is of limited relevance to this case. *See Rafferty v. Erhard*, 2012 WL 3518565, *2 (W.D.N.Y. 2012).

The VA disability process also lacks the procedural safeguards of civil litigation. *See Orber v. Jain*, 2012 WL 1565299, *2 (D.N.J. 2012). And, VA determinations are inherently confusing – for example, VA percentage "ratings" that appear to be numerical are often simply binary determinations, and an individual's combined VA ratings do not consistently match that individual'.[62] The relevance of

---

[61] PX83(Hacker-C&P-File); PX84(Keefer-C&P-File); PX85(Estes-C&P-File).

[62] *See, e.g.*, PX48(Spankovich-Dep-(12/10/20)-149:22-158:2); 38 C.F.R. § 4.87 (tinnitus rating fixed at 10%); 38 C.F.R. § 4.85 (table for hearing-related rating).

all VA evidence—including Plaintiffs' VA applications—is thus substantially outweighed by unfair prejudice, wasting time, confusing issues, and misleading the jury. Indeed, if jurors consider evidence from Plaintiffs' VA applications, they will speculate about the rest of the process including whether Plaintiffs are presently receiving collateral benefits. But mini-trials about the VA process and evidence would confuse jurors waste time. *See also Eghnayem v. Bos. Sci.*, 873 F.3d 1304, 1318-19 (11th Cir. 2017) (excluding FDA evidence for similar reasons); *Kaiser v. Johnson*, 947 F.3d 996, 1018 (7th Cir. 2020); *Huskey v. Ethicon*, 848 F.3d 151, 160-61 (4th Cir. 2017).

### b.  *VA files regarding unrelated medical conditions should be excluded.*

Regardless of the admissibility as to the VA disability process related to Plaintiffs' hearing loss and tinnitus, the VA C&P files and VA's determinations about unrelated medical conditions are irrelevant.[63] FRE 401, 402. Even otherwise relevant statements are unnecessarily cumulative, *Orber*, 2012 WL 1565299, *2, and inadmissible hearsay made for purposes of securing benefits rather than medical treatment or diagnosis.[64] *Cf. U.S. v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005). To the extent that VA personnel provided their own annotations and impressions about statements from Plaintiffs, those statements are also inadmissible hearsay. Thus, much of the information in these files should be excluded, even if the Court does not exclude them entirely.

### 5.  *Motion to exclude evidence or argument of Plaintiffs' non-military noise exposure in the absence of presentation of causal evidence. (PC4)*

Any evidence or testimony regarding Plaintiffs' noise exposure outside of the military should be excluded. Defendants elicited Plaintiffs' testimony about noise

---

[63]  *See* PX49(L_C_Keefer-VA-000460-62) (benefits decision for irrelevant conditions, including aging, arthritis, and elbow issues); PX50(S_A_Hacker-VATouhy-1235-56) (PTSD, sleep apnea, arm motion); PX51(L_E_Estes-PPR-000001-12) (lumbosacral strain and joint disease). Related conditions include hearing loss and tinnitus for all Plaintiffs, as well as mental health conditions for Plaintiff Keefer. Everything else is irrelevant.

[64]  *See, e.g.*, PX52(L_C_Keefer-VA-3485-90); *id.* at 3488 (veteran may have hearing loss but not a disability for VA purposes).

exposure in non-military settings,[65] and other witnesses gave similar testimony.[66] Examples include Hacker using ATVs and power tools; Keefer riding in motorboats and firing guns recreationally; and Estes re-enacting Civil War scenes and hunting.[67] No expert opines that any Plaintiff suffered hearing injuries because of such noise exposures. Instead, defense experts opine that Hacker has no noise-induced hearing loss,[68] that Keefer's audiograms "lead[] to a ruling out of noise-induced hearing loss,"[69] and that Estes's military noise exposure damaged his hearing.[70]

Therefore, any testimony about non-military noise exposure is irrelevant, unduly prejudicial, and misleading. If the jury hears about Hacker's ATVs, Keefer's motorboats, or Estes's hunting, jurors will have to speculate as to what effect, if any, that noise exposure had on Plaintiffs' hearing. Jurors cannot reliably make such determinations. *See, e.g.*, *U.S. v. Monroe*, 2015 WL 7176417, *8 (N.D. Ga. 2015) (excluding polygraph evidence due to risk jury would give it "undue weight").

### 6.   *Motion to exclude unattributed statements in medical records. (PC5)*

Defendants may argue that notations on audiograms indicate that Plaintiffs did not wearing hearing protection or wore devices other than the CAEv2. Some audiograms indicate no hearing protection; others indicate "hand formed earplug" or "quad flange" for "type issued."[71] These form selections are choices from a drop-

---

[65]   PX53(Hacker-Dep-(7/31/20)-37:25-50:6,   53:10-54:6);   PX54(Keefer-Dep-(7/30/20)-76:22-100:5, 103:23-108:15, 115:3-21, 119:3-120:16, 130:15-132:21, 151:3-15); PX55(Estes-Dep-(7/28/20)- 231:18-253:3).

[66] *See, e.g.*, PX56(Eileen-Hacker-Dep-(9/25/20)-76:1-78:14); PX57(Jennifer-Estes-Dep-(7/29/20)-163:21-165:14);   PX58(Emily-Keefer-Dep-(9/23/20)-75:20-77:17, 80:10-85:5).

[67]   PX53(Hacker-Dep-(7/31/20)-38:12-40:16,   43:5-44:22);   Px54(Keefer-Dep-(7/30/20)-79:13-92:2, 106:20-108:15); PX55(Estes-Dep-(7/28/30)-234:5-236:20, 238:18-240:9).

[68] PX59(Neitzel-(Hacker)-4); PX60(House-(Hacker)-2).

[69] PX61(LaBorde/Jones-(Keefer)-12-14).

[70] PX62(Flamme/Stephenson-(Estes)-28); *see also* PX63(House-(Estes)-3).

[71]   PX64(Hacker-Audiograms-Comp-3/9/2006,   S_A_Hacker-DOD-Touhy-002; 2/15/2007, S_A_Hacker-DOD-Touhy-006; 6/19/2007, S_A_Hacker-DOD-Touhy-011; 7/6/2007, S_A_Hacker-DOD-Touhy-001; 8/24/2009, S_A_Hacker-DOD-Touhy-012);       PX65(Keefer-Audiograms-Comp-L_C_Keefer-DOD-000001-L_C_Keefer-   DOD-000003;   L_C_Keefer-DOD-000006-L_C_Keefer-DOD-000014;       L_C_Keefer-000441;       L_C_Keefer-000001-L_C_Keefer-000013;

down menu, and their meaning is ambiguous and confusing.[72] These notations are inadmissible hearsay, even if the document itself is a medical record. *See* FRE 805.

Rule 803(4)—statements for medical diagnosis or treatment—and Rule 801(d)(2)—opposing party's statements—are inapplicable because there is no evidence that Plaintiffs made these statements. Hacker testified that he always wore hearing protection, and from 2003 to 2010 it was the CAEv2 99% of the time.[73] Keefer testified that he consistently wore the CAEv2, he was not issued other plugs, and any contrary audiogram is incorrect.[74] Estes's records indicate "quad flange," but he testified he never used that type of plug.[75] Christina Lee, who conducted

---

L_C_Keefer-000308-L_C_Keefer-000309;        L_C_Keefer-000065-L_C_Keefer-000066;        L_C_Keefer-000079-L_C_Keefer-000084;        L_C_Keefer-000308-L_C_Keefer-000309;   LCKeefer-Medical   Records-000052-LCKeefer-Medical Records-000054; LCKeefer-Medical Records-000066-LCKeefer-Medical Records-000071; LCKeefer-Medical Records-000202-LCKeefer-Medical Records-000204; LCKeefer-Medical Records-000324; L_C_Keefer-VA-000832-L_C_Keefer-VA-000833;   L_C_Keefer-VA-000847-L_C_Keefer-VA-000850;   L_C_Keefer-VA-000851-L_C_Keefer-VA-000852;        L_C_Keefer-VA-001076-L_C_Keefer-VA-001077;   L_C_Keefer-VA-001350-L_C_Keefer-VA-001351;   L_C_Keefer-VA-001364-L_C_Keefer-VA-001366;        L_C_Keefer-VA-001368-L_C_Keefer-VA-001369; L_C_Keefer-VA-001593-L_C_Keefer-VA-001594; L_C_Keefer-DOD-000171-L_C_Keefer-DOD-000172;        L_C_Keefer-DOD-000185-L_C_Keefer-DOD-000190; L_C_Keefer-DOD-000406-L_C_Keefer-DOD-000407; L_CKeefer-Medical Records-000398;   L_C_Keefer-VA-002357-L_C_Keefer-VA-002358; L_C_Keefer-VA-002372-L_C_Keefer-VA-002375;        L_C_Keefer-VA-002376-L_C_Keefer-VA-002377;        L_C_Keefer-VA-002875-L_C_Keefer-VA-002876; L_C_Keefer-VA-002889-L_C_Keefer-VA-002892;        L_C_Keefer-VA-002893-L_C_Keefer-VA-002894;        L_C_Keefer-VA-003118-L_C_Keefer-VA-003119; L_C_Keefer-VA-004549-L_C_Keefer-VA-004550;        L_C_Keefer-VA-004564-L_C_Keefer-VA-004569;        L_C_Keefer-VA-004793-L_C_Keefer-VA-004794; L_C_Keefer-VA-005067-L_C_Keefer-VA-005068;L_C_Keefer-VA-005081-L_C_Keefer-VA-005086;        L_C_Keefer-VA-005310-L_C_Keefer-VA-005311); PX66(Estes-Audiograms-Comp-LE Estes-DOD-T140-T150).

[72] PX4(Merkley-Dep-(2/26/20)-206-213, 396-99) (explaining process and stating "none" may only mean they "just weren't fitted on that day" and "doesn't mean that they don't have it").

[73] PX53(Hacker-Dep-(7/31/20)-115:2-19).

[74] PX54(Keefer-Dep-(7/30/20)-170-178; 205-206; 232-255).

[75] PX55(Estes-Dep-(7/28/30)-121:25-122:3).

Estes's March 2015 audiogram, said she thought the quad flange was the CAEv2.[76] These types of notations are unreliable, often the result of data entry errors.[77]

Because the source of the statements is unknown, no hearsay exception applies. *See Potts v. Martin*, 2011 WL 4738660, *2 (W.D. Ky. 2011); *Geis v. Tricam*, 2011 WL 2971247, *3 (D.N.J. 2011); *Samaan v. St. Joseph*, 764 F.Supp.2d 238, 240 (D. Me. 2011). These notations should be excluded. FRE 401, 403, 801.

### 7.   *Motion to exclude evidence or argument regarding speculative future treatments. (PC7)*

Defendants' vocational expert opined that Estes's hearing-related injuries will not affect future earnings.[78] Shahnasarian testified that "[t]here are ways to mitigate problems that could potentially arise in the future that have not manifested that would negate a loss of earning capacity, but at this point it would be speculative."[79] Such evidence or argument that undefined future treatments may reduce Plaintiffs' injuries or mitigate future wage loss should be excluded. No medical expert has opined that Plaintiffs' hearing loss or tinnitus will be mitigated by future treatment besides hearing aids. Therefore, speculative testimony about future procedures or treatment is irrelevant and unfairly prejudicial. *See, e.g.*, *In re Delta*, 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017).

### 8.   *Motion to exclude evidence of alcohol and tobacco use. (PC8)*

Hacker abused alcohol from 2004 to 2014.[80] Keefer stopped drinking alcohol "years ago" when he felt he was "drinking too much."[81] Even if past alcohol use is relevant to damages, it is irrelevant to causation, so its probative value is low. *Cf. Aycock v. R.J. Reynolds*, 769 F.3d 1063, 1070 (11th Cir. 2014) (probative value high where, unlike here, it is essential to causation defenses). Further, Hacker's alcohol abuse ended in 2014,[82] and his tinnitus has since worsened.[83] Because Hacker's alcohol abuse is not recent, it has not had a "lingering effect" on his life. *See Sowers*

---

[76] PX67(Lee Dep-(9/29/20)-147:1-6, 166:5-25).

[77] PX68(GAO-Report-(Jan-2011)-19-20) (explaining that data entry errors are widespread).

[78]    PX69(Shahnasarian-Dep-(12/29/2020)-72:23-75:22);   PX70(Shahnasarian-(Estes)-21-22).

[79] PX69(Shahnasarian-Dep-(12/29/2020)-75:12-15); *see also* PX71(Shahnasarian-(Keefer)-50).

[80] PX72(Hacker-Alcohol-Recs-Comp); PX53(Hacker-Dep-(7/31/20)-317:5-21).

[81] PX54(Keefer-Dep-(7/30/20)-373:9-374:18).

[82] PX73(Rubin-(Hacker)-9).

[83] PX53(Hacker-Dep-(7/31/20)-51:12-20; 96:18-97:7).

*v. R.J. Reynolds*, 2015 WL 12839775, *10 (M.D. Fla. 2015).

Hacker's experts are also barred from opining on conditions "other than hearing loss and tinnitus," and Hacker is limited to testimony about "garden variety" mental anguish and emotional distress.[84] Expert testimony concerning Hacker's past alcohol abuse is irrelevant to the "garden variety" damages at issue, as Hacker will address how tinnitus affects his daily life. There is heightened danger of prejudice because the jury may assign undue weight to expert testimony. *Hendrix v. Evenflo Co.*, Inc. , 255 F.R.D. 568, 579 (N.D. Fla 2009). The low probative value of such evidence is outweighed by its potential to unfairly prejudice Plaintiffs, confuse the issues, and mislead the jury. FRE 403. Argument and evidence referencing alcohol use should be excluded.

The same rules dictate exclusion of Plaintiffs' tobacco use. Hacker used tobacco from around 2000 to 2018.[85] As to Keefer, defense experts noted "evidence of oral tobacco use."[86] No expert opines that Plaintiffs' tobacco use caused hearing issues. Jones and LaBorde state generally that "tobacco may be associated with [Keefer's] tinnitus and hearing loss,"[87] but they disclaim any causal connection as to Keefer.[88] Moreover, no expert opines that Plaintiffs' tobacco use is relevant to damages. Thus, such evidence would only inflame the jury.

## H.    Motions Applicable to Luke Estes

### 1.    *Motion to exclude evidence or argument relating to erectile dysfunction, virginity, fertility, Viagra, or other issues relating to sex between Mr. and Mrs. Estes. (PE1)*

Defendants elicited invasive, irrelevant, and graphic testimony from Mr. and Mrs. Estes about their sex life at the time they were first married and related difficulties due to sexual inexperience.[89] These facts are irrelevant, not only because they occurred prior to Mr. Estes's hearing loss, but also because such sexual issues are of an entirely different kind than those at issue in Mrs. Estes's loss-of-consortium claim. Allowing the jury to hear about specific examples in the Estes' sex life would be unduly prejudicial. *See* FRE 403.

---

[84] *Hacker*, Dkt. 57 at 2, 9.

[85] PX53(Hacker-Dep-(7/31/20)-316:9-317:4).

[86] PX61(LaBorde/Jones-(Keefer)-21).

[87] *Id.*

[88] PX74(LaBorde-Dep-(12/22/20)-242:2-4).

[89] *See* PX57(Jennifer-Estes-Dep-(7/29/20)-149:16-152:15).

### 2. *Motion to exclude evidence or argument relating to the disposition of Estes's "pocket talker." (PE2)*

Evidence of Estes's decision to sell a "pocket talker" hearing device should be excluded as irrelevant and unduly prejudicial. Estes testified that the device was "cumbersome" and "embarrassing," so he discontinued use.[90] Its efficacy in treating Estes's injuries and his use or non-use of the device may be relevant to damages. But what happened to the "pocket talker" after Estes discontinued use is irrelevant, and evidence or argument on its sale[91] increases risk of unfair prejudice. FRE 401, 403.

### 3. *Motion to exclude evidence relating to Estes's father's disabilities. (PE3)*

Evidence of any disability of non-party Paul Estes—Plaintiff Estes's father— is not relevant to any issue in this case. FRE 401, 403. Introduction of evidence on the irrelevant disabilities of a non-party who shares Plaintiff's name has clear potential to create confusion and prejudice, without any probative benefit whatsoever. FRE 403.

### 4. *Motion to exclude evidence or argument that Estes was diagnosed with or suffers from clinical anxiety or depression (PE5)*

Defendants should not be permitted to amplify stray references to isolated symptoms in Estes's medical records into clinical mental health diagnoses, which are irrelevant and likely to prejudice the jury. FRE 403.

Certain of Estes's medical records include isolated reports of symptoms including anxiety and depression.[92] Those reports are unreliable for several reasons. They appear only in the records of doctors not deposed in this action, none of whom are mental health specialists. No doctor has diagnosed or treated Estes in connection with any clinical mental health conditions. Because Estes does not claim a diagnosed mental health condition caused by Defendants' tort, these reports are also irrelevant. The records themselves should be excluded, and to the extent they are not, Defendants and their experts should nonetheless be barred from prejudicial argument concerning them. FRE 403.

---

[90] PX55(Estes-Dep-(7/29/20)-280:4-14).

[91] PX69(Shahnasarian-Dep-(12/29/20)-115:6-124:2).

[92] PX75(L_E_ESTES-VA-T32-000003; L_E_ESTES-VA-T8-000020).

I.      **Motions Applicable to Stephen Hacker**

1.      *Motion to exclude opinion testimony of undisclosed expert Dr.*
        *Cunningham. (PH1)*

This Court should exclude testimony by treating physician Cunningham who
was not a designated expert and treated Hacker for hearing loss,[93] not tinnitus—the
only injury at issue.[94] Cunningham testified that a facial abnormality that may have
caused Hacker's hearing loss,[95] but Cunningham testified that Hacker might have
otosclerosis.[96] Cunningham also testified that Hacker's conditions were not "related
in any way to not using a hearing protection device"[97] and that he did not know
whether Hacker's tinnitus was caused by noise exposure or conductive hearing
loss.[98] Counsel asked whether Hacker's hearing loss or tinnitus was "caused by
anything relating to his military service," and Cunningham said he did not think so.[99]
Duke's records do not address treatment or diagnosis for tinnitus, or discuss noise
exposure or HPD use.[100]

Because Cunningham is not a designated expert,[101] "testimony exceeding the
scope of [his] care and treatment will be excluded." *Bryan v. Whitfield*, 2015 WL
11109792, *2 (N.D. Fla. 2015). For example, "causation opinions typically fall
outside the scope of a treating physician's care and treatment and thus cross the line
from lay to expert testimony." *Id.* at *3 (citing *Wilson v. Taser Int'l, Inc.*, 303
Fed.Appx. 708, 712-13 (11th Cir. 2008)). In addition, Cunningham's testimony
about tinnitus should be excluded because he did not diagnose or treat Hacker for
that condition. Although counsel asked Cunningham whether Hacker's nerve defect
or otosclerosis *could* cause tinnitus,[102] these questions solicited expert rather than
diagnostic opinions, requiring exclusion under Rule 26.

Any quasi-expert testimony about Hacker's noise exposure and the CAEv2
should also be excluded because none of it is within "the scope of the physician's

---

[93] PX76(HACKERS-MDL2885-29DUHS-00001-177-("DukeHealth")-4).

[94] *Id.*

[95]  PX77(Cunningham-Dep-(9/22/20)-29:23-31:5).  Plaintiff has highlighted the
designated testimony that should be excluded per this motion.

[96] *Id.* 32:23-33:11; *see also* 36:1-16.

[97] *Id.* 39:4-11, 44:22-45:7.

[98] *Id.* 74:5-75:7.

[99] *Id.* 77:21-78:4.

[100] PX76(DukeHealth-4).

[101] PX77(Cunningham-Dep-(9/22/20)-10:20-23).

[102] *Id.* 34:23-35:24, 36:1-16.

care and treatment." *Bryan*, 2015 WL 11109792, *2. Hacker's treatment records do not address noise exposure, the military, or the CAEv2. Cunningham did not even know Hacker had used the CAEv2,[103] so Hacker's use of HPDs played no role in Cunningham's diagnosis.[104] Thus, any testimony about Hacker's noise exposure and HPD use goes beyond Cunningham's treatment. *Id.* at *2-3.

Finally, Cunningham's testimony about tinnitus, noise exposure, and the CAEv2 should also be excluded under Rules 401, 403, and 602. Cunningham only treated Hacker for hearing loss. Cunningham has no foundation to discuss whether the CAEv2 or noise exposure caused Hacker's tinnitus. Those issues played no role in Hacker's treatment and he had no knowledge of Hacker's CAEv2 use. Even testimony that Cunningham did not consider these issues when treating Hacker could confuse jurors into believing that Cunningham ruled out noise exposure. He did not. The Court should thus exclude all of Cunningham's designated testimony about tinnitus, noise exposure, and the CAEv2.

### 2. *Motion to exclude records from Hacker's 2019 Mountainview visit for kidney issues. (PH2)*

Hacker seeks exclusion of emergency room records from a November 2019 visit related to kidney stones.[105] The record states, "Ears-No complaint of hearing difficulty, loss of hearing, or change in hearing, pain free, no drainage."[106] The source of these statements is unidentified. Hacker explained that when undergoing the assessment, the "focus [is] on kidney stones" and the hearing-related questions are directed at whether the patient can understand and communicate.[107] He further clarified, "the statement about no complaints about hearing difficulty or being pain free and no drainage, that [] statement is inaccurate on this document."[108]

The Court should exclude these records under Rules 401 and 403. Records from an ER visit for kidney stones do not tend to make a fact "of consequence" to this ear-plug product liability action "more or less probable." FRE 401. Admission of this record, which documents treatment unrelated to Hacker's ears and provides no timeframe, context, or declarant as to the statements at issue, would unfairly prejudice Hacker, suggesting incorrectly that he reported no ear-related complaints

---

[103] *Id.* 13:14-19.

[104] *Id.* 38:19-39:11.

[105] PX78(HACKERS-MDL2885-3MVH-00001-00122).

[106] *Id.* at HACKERS-MDL2885-3MVH-00087.

[107] PX53(Hacker-Dep-(7/31/20)-289:1-14).

[108] *Id.* 290:20-25.

in November 2019.[109] Such records should be excluded under Rule 403.

### 3.     Motion to exclude evidence of irrelevant and prejudicial events in Hacker's life. (PH4)

This Court should exclude any evidence or argument relating to Hacker's history of physical altercations, arrest for obstructing a peace officer, patronizing a strip club, and/or testing positive for cocaine in 2004 and the related Article 15 proceeding and discipline.[110] These events are irrelevant because they have no tendency to make any fact at issue more or less probable and any potential probative value is substantially outweighed by unfair prejudice. FRE 401, 403; *see also Aycock v. R.J. Reynolds*, 769 F.3d 1063, 1069 (11th Cir. 2014). Further, any reference to these regrettable events constitutes inadmissible character evidence. FRE 404(b)(1). Defendants hope to convince the jury that it is in Hacker's character to engage in rule-breaking activity and that his actions conformed to that character when he misused hearing protection. Rule 404 prohibits the admission of such evidence.

### 4.     Motion to exclude evidence of family issues. (PH5)

This Court should exclude evidence of immaterial and prejudicial events in Hacker's family life, such as events related to his marriage (separation, divorce, his wife's alleged infidelity, and paternity of Hacker's child)[111] and visits or welfare checks by the Family Advocacy Program or Child Protective Services.[112] Hacker's marital issues have no relevance to his hearing loss or damages, and these events would negatively affect the jury's view of Hacker. Visits or welfare checks conducted by the Family Advocacy Program or Child Protective Services are similarly prejudicial and irrelevant. FRE 401, 403. Such reports are also confidential under Kentucky law. *See* K.R.S. § 620.050.

---

[109] *Id.*

[110] PX53(Hacker-Dep-(7/31/20)-317:23-318:8);  PX79(S_A_Hacker-DoD-Touhy-036,  S_A_Hacker-DoD-Touhy-037,  S_A_Hacker-000717,  S_A_Hacker-DoD-Touhy-271,  S_A_Hacker-DoD-Touhy-274,  S_A_Hacker-000329-  S_A_Hacker-000331, S_A_Hacker-DoD-Touhy-346, S_A_Hacker-DoD Touhy 669- S_A_Hacker-DoD Touhy 673).

[111] PX53(Hacker-Dep-(7/31/20)-100:13-102:9,  123:2-24);  PX80(S_A_Hacker-DOD Touhy 512, S_A_Hacker-VA Touhy 12928, S_A_Hacker-VA Touhy-0003427, S_A_Hacker-VA Touhy 6965, S_A_Hacker-DOD Touhy 548, S_A_Hacker-DOD Touhy 539).

[112] PX53(Hacker-Dep-(7/31/20)-319:11-320:21); PX81(S_A_Hacker-DOD Touhy 344, S_A_Hacker-DOD Touhy 586, S_A_Hacker-DOD Touhy 457).

Some family evidence in these categories was excluded even from discovery. Denying a motion to compel, Judge Jones, who reviewed the documents in camera, wrote that "the matters redacted in the documents are far afield from this litigation and involve highly personal issues …." (Dkt. 1258 at 10.) They should similarly be excluded from trial.

**J.     Motions Applicable to Lewis Keefer**

**1.     *Motion to exclude evidence and argument relating to Keefer's alleged bad acts. (PK2)***

Keefer moves to exclude any evidence and argument referencing his Article 15 disciplinary proceeding, the basis for the "charges" that led to the proceeding, and the resulting punishments. These issues are irrelevant and improper character evidence, and any probative value is outweighed by unfair prejudice.

The relevance of the Article 15 proceeding has been litigated and the report itself was found to be irrelevant.[113] Indeed, Judge Jones ruled that the Article 15 report was not even discoverable because it was not relevant.[114] Although Defendants have designated testimony suggesting that the basis of the charge was sexual harassment,[115] such a charge has nothing to do with this case and the limited probative value of this evidence is clearly outweighed by unfair prejudice. Nor is there any basis for impeachment because Keefer's testimony on the issue has been consistent and the circumstances of the Article 15 charges are extrinsic evidence of a collateral matter that cannot be used for impeachment.

Because the Article 15 itself and related charges are not admissible, Keefer's reduction in pay and demotion in rank should also be excluded. Although Defendants argued that Keefer's demotion impacts his claims of mental distress and/or his divorce, Emily Keefer testified that the divorce had nothing to do with the Article 15, the demotion, or sexual harassment. While Keefer has testified that he believes his hearing loss was a reason for difficulties in the marriage and contributed to his divorce, his Article 15 demotion is not a proper rebuttal to such evidence. Emily Keefer testified the Article 15 was not why she divorced Keefer.

Any temporary mental distress caused to Keefer as a result of the demotion is not relevant to the mental distress he now experiences due to his hearing loss and tinnitus. Keefer claims that his hearing loss and tinnitus contributes to his PTSD and Major Depressive Disorder and that his tinnitus is more bothersome due to those

---

[113] *See Keefer*, Dkt. 27.

[114] *Id.*

[115] *See, e.g.*, PX58(Emily-Keefer-Dep-(9/23/20)-70:1-71:21).

conditions. This mental distress is wholly separate from any temporary distress that may have been the result of his demotion. While Defendants will likely argue that the demotion is relevant to his mental distress, Defendants' experts ultimately opine that Mr. Keefer does not have PTSD or Major Depressive Disorder. In any event, as the Article 15 is not a criminal conviction and the punishment that resulted from the Article 15 procedure lacked the due process protections that would allow for its admission in a civil proceeding, the punishment should be excluded.

The Article 15 demotion also caused Keefer to not meet his retention control point and he was not allowed to re-enlist. Defendants' should not be allowed to argue that Keefer was "kicked out" of the military. Regardless, the conditions upon which Keefer left the military are not relevant to any of the issues in this case.

### 2. *Motion to exclude evidence and argument relating to Keefer's past job performance. (PK3)*

Plaintiff moves to exclude any evidence and argument pertaining to the July 7, 2014 NCO Evaluation Report of Keefer.[116] Defendants have used this document in two ways. First, they attempted to use it with Emily Keefer to call into question Keefer's "moral courage."[117] Although Keefer knew nothing about the evaluation or the charges and has no personal knowledge of the issues, Defendants have designated this testimony. Second, Defendants are using the report to attack Keefer's character due to the inadmissible Article 15 as the evaluation contains a reference to a claim that Keefer "contributed to hostile environment for the females within the platoon." Such irrelevant character attacks should be excluded. FRE 401, 403, 404.

### 3. *Motion to exclude evidence and argument relating to the reasons for Keefer's divorces. (PK5)*

Plaintiff moves to exclude any evidence and argument referencing the reasons for his divorces from Prisha Deeds and Emily Keefer. Defendants intend to introduce evidence that Keefer's former wives engaged in extramarital affairs. Such allegations as to Keefer's ex-wives, who are not parties, are irrelevant and are inadmissible character evidence. Nor is there any evidence that Keefer was unfaithful in either marriage. Defendants are attempting to manufacture inconsistencies between Keefer's testimony and Emily Keefer's testimony to accuse Keefer of dishonesty. Defendants also appear likely to offer the testimony of Emily Keefer as improper character evidence to impeach Keefer himself, even though Mr.

---

[116] PX82(NCO-Evaluation-Report-(7/7/14)-Keefer).
[117] PX58(Emily-Keefer-Dep-(9/23/20)-106:10-112:17).

Keefer's testimony on this point has been consistent.[118] Finally, the testimony on extramarital affairs is improper extrinsic evidence on a collateral matter that is not admissible to impeach Keefer. *See* FRE 401, 403, 404.

## <u>CONCLUSION</u>

Plaintiffs respectfully request the Court grant Plaintiffs' motions.

---

[118] PX58(Emily-Keefer-Dep-(9/23/20)-112).

Date: February 19, 2021          Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com
**Counsel for Plaintiffs**

Katherine Cornell
PULASKI LAW FIRM, PLLC
2925 Richmond Ave., Ste 1725
Houston, TX 77098
Tel: (713) 664-4555
kcornell@pulaskilawfirm.com
**Counsel for Plaintiff Luke E. and Jennifer Estes**

Evan D. Buxner
GORI JULIAN & ASSOCIATES
156 North Main Street
Edwardsville, IL 62025
Tel: (618) 659-9833
evan@gorijulianlaw.com

Quinn Robert Wilson
ONDER LAW LLC
110 E Lockwood Avenue
Second Floor
St. Louis, MO 63119
Tel: (314) 963-9000
wilson@onderlaw.com
***Counsel for Plaintiff Stephen Hacker***

Brian Hugh Barr
LEVIN PAPANTONIO
316 S Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7045
bbarr@levinlaw.com

Winston Troy Bouk
LEVIN PAPANTONIO
316 S Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7045
tbouk@levinlaw.com
***Counsel for Plaintiff Lewis Keefer***

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)</u>

Pursuant to Local Rule 7.1(B), counsel for Plaintiffs certify that they conferred with Defendants' counsel on February 10, 2021 and February 13, 2021 regarding the foregoing motion but were unable to resolve the issues herein with Defendants.

*/s/ Bryan F. Aylstock*

31

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH COURT'S WORD LIMIT</u>

I hereby certify that the foregoing contains 9,384 words, exclusive of caption and tables of contents and authorities, complying with the Court's directive at the pre-trial conference on February 11, 2021 that Plaintiffs file omnibus motions in limine with incorporated memorandums of law not to exceed 10,000 words.

*/s/ Bryan F. Aylstock*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on February 19, 2021, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

<i>/s/ Bryan F. Aylstock</i>