# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG LITIGATION
LIABILITY LITIGATION

This Document Relates to:

*Luke E. Estes*
Case No. 7:20-cv-00137

*Stephen Hacker*
Case No. 7:20-cv-00131

*Lewis Keefer*
Case No. 7:20-cv-00104

CASE NO.: 3:19-MD-2885-MCR-GRJ

Chief Judge M. Casey Rodgers
Magistrate Judge Gary Jones

**CONFIDENTIAL - FILED
UNDER SEAL**

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OMNIBUS MOTIONS *IN LIMINE* AND MEMORANDUM OF LAW

FILED USDC FLND PN
FEB 24 '21 PM3:13

# TABLE OF CONTENTS

**Page**

A.1.  "IMPROPER BOLSTERING" (PG12)..........................................................1

2.  ALL REFERENCES TO PERSONAL
LIVES/BACKGROUND SHOULD BE EXCLUDED. (PS6) .......................1

3.  DEFENDANTS' COUNSEL WILL NOT IMPROPERLY
VOUCH FOR 3M. (PS7)......................................................................................1

4.  "PREEMPTIVE BOLSTERING" OF THE CREDIBILITY OF
3M WITNESSES. (PS8)........................................................................................1

B.1-4. EVIDENCE OF IMPACT OF PUNITIVE DAMAGES
AWARD ON DEFENDANTS IS ADMISSIBLE. (PS15, PS16,
PS17, PS18) ...........................................................................................................1

C.1.  The GAO Report and Battler's Testimony are admissible.
(PG1)........................................................................................................................2

2.  EVIDENCE OF THE MILITARY'S FAILURES IS
ADMISSIBLE. (PG2)............................................................................................2

D.1.  EVIDENCE REGARDING THE GOVERNMENT'S ROLE IN
DESIGN AND RELATED ISSUES IS ADMISSIBLE. (PG3,
PG4).........................................................................................................................3

2.  3M WAS NOT REQUIRED TO SUPPLEMENT. (PG11) ...........................3

3.  DEFENDANTS MAY INTRODUCE TESTIMONY
PLAINTIFS' CLAIM IS "INCONSISTENT" WITH 30(B)(6)
TESTIMONY. (PG13) ..........................................................................................3

E.1.  DEFENDANTS' WITNESSES MAY TESTIFY ABOUT
THEIR OBSERVATIONS. (PG5) .....................................................................4

2.  EVIDENCE REGARDING GOVERNMENT
PROCUREMENT IS NOT HEARSAY. (PG6)..............................................4

3.  EVIDENCE REGARDING NVLAP'S ACCREDITATION
AND AUDITS ARE NOT HEARSAY. (PG10)...............................................5

ii

F.1.   TESTIMONY REGARDING CAEV2 EFFICACY ARE
       ADMISSIBLE. (PG7)...............................................................5

2.     THE LOVEJOY REPORT IS ADMISSIBLE UNDER 803(8).
       (PG9)....................................................................................6

G.1.   WHEN PLAINTIFFS RETAINED COUNSEL IS
       RELEVANT. (PS4) ................................................................6

2.     THE CENSUS AND BELLWETHER SELECTION FORMS
       ARE ADMISSIBLE. (PS14; PE4) .............................................7

3-4.   DISABILITY FILES ARE ADMISSIBLE. (PC1-3, PC6) ............7

5.8.   EVIDENCE OF OTHER EXPOSURES IS ADMISSIBLE.
       (PC4, PC8) ...........................................................................8

6.     MILITARY HEARING RECORDS ARE ADMISSIBLE.
       (PC5).....................................................................................8

7.     EVIDENCE REGARDING FUTURE TREATMENTS IS
       ADMISSIBLE. (PC7)...............................................................9

H.1.   THE ESTES HAVE PUT THEIR SEX LIFE DIRECTLY AT
       ISSUE. (PE1) .........................................................................9

2.     ESTES' SALE OF HIS POCKET TALKER IS RELEVANT.
       (PE2) .....................................................................................9

3.     PAUL ESTES' DISABILITIES (PE3) - UNCONTESTED. ........10

4.     IF PLAINTIFFS DEFEAT DEFENDANTS' GARDEN
       VARIETY MOTION, THEN ESTES' RECORDS OF
       DEPRESSION AND ANXIETY ARE RELEVANT. (PE5)........10

I.1.   CUNNINGHAM'S TESTIMONY IS ADMISSIBLE. (PH1) ......10

2.     HACKER'S MOUNTAINVIEW RECORDS ARE
       ADMISSIBLE. (PH2)..............................................................11

3.     EVIDENCE OF HACKER'S OTHER HEALTH
       CONDITIONS MAY BE RELEVANT. (PH4) ...........................11

iii

4.    HACKER HAS PLACED FAMILY ISSUES IN DISPUTE.
      (PH5)............................................................................................12

J.1.3. KEEFER'S DEMOTION AND THE CAUSE OF HIS
      DIVORCE ARE RELEVANT. (PK2, PK5) ................................................12

2.    KEEFER HAS PLACED HIS JOB PERFORMANCE AT
      ISSUE. (PK3) ................................................................................13

CONCLUSION ...................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baez v. Wal-Mart Stores*,
   2012 WL 13005548 (S.D. Fla. 2012) ...................................................2

*Banks v. ICI Americas, Inc.*,
   450 S.E.2d 671 (Ga. 1994) ...................................................3

*Chavez v. Waterford Sch. Dist.*,
   2011 WL 887784 (E.D. Mich. 2011)...................................................8

*Christopher Phelps v. Galloway*,
   492 F.3d 532 (4th Cir. 2007) ...................................................6

*Coleman v. Boston Sci. Corp.*,
   2020 WL 7090700 (S.D. Ala. Sept. 22, 2020) ...................................................3

*Garcia v. GEICO Gen. Ins. Co.*,
   807 F.3d 1228 (11th Cir. 2015) ...................................................1

*Garrett v. City of Tupelo, Miss.*,
   2018 WL 2994808 (N.D. Miss. 2018)...................................................5

*Hubbard v. Detroit Public Schools*,
   372 F. App'x 631 (6th Cir. 2010) ...................................................8

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2020 WL 6887885 (E.D. Pa. 2020) ...................................................2

*In re Wright Med. Tech.*,
   2015 WL 6690046 (N.D. Ga. 2015)...................................................1

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2015 WL 7455569 (S.D.N.Y. 2015)...................................................8

*Keepers v. City of Milford*,
   807 F.3d 24 (2d Cir. 2015) ...................................................3

i

*Levine v. Wyeth Inc.*,
   2010 WL 2612579 (M.D. Fla. 2010) ...................................................................11

*McElgunn v. CUNA*,
   2009 WL 1514398 (D.S.D. 2009) .........................................................................7

*ML Healthcare Servs., LLC v. Public Super Markets*,
   881 F.3d 1293 (11th Cir. 2018) ............................................................................7

*Ngo v. Standard Tools & Equip.*,
   197 F.R.D. 263 (D. Md. 2000) ...........................................................................10

*Orber v. Jain*,
    2012 WL 1565299 (D.N.J. 2012) ......................................................................7, 8

*R.J. Reynolds Tobacco Co. v. Mack*,
   92 So. 3d 244 (Fla. 1st DCA 2012) (per curiam) ................................................8

*SEC v. Jasper*,
   678 F.3d 1116 (9th Cir. 2012) ..............................................................................5

*Smith v. Fox*,
   2009 WL 2033152 (E.D. Ky. 2009) ......................................................................6

*Toyota Motor Corp. v. Gregory*,
   136 S.W.3d 35 (Ky. 2004) ....................................................................................3

*United States v. Cruz*,
   805 F.2d 1464 (11th Cir. 1986) .......................................................................4, 5

*United States v. Mateos*,
   623 F.3d 1350 (11th Cir. 2010) ............................................................................5

*United States v. Mena*,
   863 F.2d 1522 (11th Cir. 1989) ............................................................................4

*United States v. Rivera*,
   780 F.3d 1084 (11th Cir. 2015) ............................................................................4

*United States v. Sisto*,
   534 F.2d 616 (5th Cir. 1976) ................................................................................7

ii

*Waits v. City of Chicago*,
2003 WL 21310277 (N.D. Ill. 2003) ....................................................................2

*Wise v. Southern Tier Express*,
2017 WL 8219076 (D. Nev. 2017) ......................................................................6

**Rules**

F.R.E. 803(8) ............................................................................................................2, 6

FRCP 26(e) ....................................................................................................................3

FRE 404 .........................................................................................................................1

FRE 404 and 608 ..........................................................................................................1

FRE 608(a) ....................................................................................................................1

FRE 801, 1972 ..............................................................................................................5

FRE 801(d)(2) ...............................................................................................................7

FRE 803(4) ....................................................................................................................8

FRE 803(6) ............................................................................................................5, 6, 8

FRE 803(8)(ii) ...............................................................................................................8

FRE 803(8)(A)(iii) ........................................................................................................6

Rule 702 .....................................................................................................................5, 6

**Other Authorities**

Charles Alan Wright, et al., *Fed. Practice & Procedure* § 2103 (3d
ed.) ...........................................................................................................................3

### A.1.  "IMPROPER BOLSTERING." (PG12)

Plaintiffs' motion is impermissibly vague as to what constitutes "improper bolstering" or "good acts."  Defendants will not offer evidence in violation of FRE 404 or 608, but reserve the right to respond to disparaging or inflammatory evidence or argument offered by Plaintiffs, including in connection with punitive damages.

### 2.  ALL REFERENCES TO PERSONAL LIVES/BACKGROUND SHOULD BE EXCLUDED. (PS6)

Defendants agree that *all* references to the personal background of counsel should be excluded.  This should include references to ties with Pensacola and/or Florida.

### 3.  DEFENDANTS' COUNSEL WILL NOT IMPROPERLY VOUCH FOR 3M. (PS7)

During a five-week trial a defense attorney may use "we" or "us," for example saying "we" (3M via counsel) presented evidence on certain points.  Such use does not reflect vouching.  If Plaintiffs believe a line is crossed, they may object at trial.

### 4.  "PREEMPTIVE BOLSTERING" OF THE CREDIBILITY OF 3M WITNESSES. (PS8)

Plaintiffs' motion is impermissibly vague as to what constitutes "preemptive bolstering of the credibility of 3M's witnesses."  Bolstering may be improper "when the purpose of the evidence is to vouch for a witness's credibility."  *Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1235 (11th Cir. 2015).  Defendants will not offer evidence in violation of FRE 404 and 608.  However, the examples cited by Plaintiffs violate neither rule.  First, the testimony goes to issues other than truthfulness.  That Ohlin was a leader in the field of audiology and hearing conservation devices and programs does not go to his credibility.  Second, even if this testimony did go to Ohlin's truthfulness, it would still be permitted under FRE 608(a) once, as 3M anticipates, Plaintiffs attack his credibility.

### B.1-4. EVIDENCE OF IMPACT OF PUNITIVE DAMAGES AWARD ON DEFENDANTS IS ADMISSIBLE. (PS15, PS16, PS17, PS18)

Defendants will not argue that punitive damages would raise prices of goods, increase taxes, or cause layoffs.  Defendants may introduce evidence of punitive damages' impact on their business.  *In re Wright Med. Tech.*, 2015 WL 6690046, at *3 (N.D. Ga. 2015) ("financial impact . . . on Defendants' business" is admissible);

*Waits v. City of Chicago*, 2003 WL 21310277, at *4 (N.D. Ill. 2003) ("financial impact that [punitive] award will have on a defendant [is] relevant as well") (collecting cases).

## C.1.   THE GAO REPORT AND BATTLER'S TESTIMONY ARE ADMISSIBLE. (PG1)

Plaintiffs' motion re-litigates an already-decided issue.  Dkt. 1651 at 2 (experts may testify about the "history, purpose, intent, and implementation of the … Army Hearing Program[,]" ("AHP") even though such testimony may not be tied to any specific Plaintiff, if the testimony is based on their experience and knowledge).

Both the GAO Report and Battler's testimony go to the "intent[] and implementation of the … Army Hearing Program." *Id.*  The GAO Report is a comprehensive performance audit that included Army officer interviews and review of applicable regulations, Dkt. 1627, Ex. 35 at 2, and is admissible under F.R.E. 803(8).  Battler's testimony is based on her personal knowledge and career in the Army.[1]  Such evidence goes to proximate cause and will rebut testimony from Plaintiffs' experts that the AHP was effective.  *See Baez v. Wal-Mart Stores*, 2012 WL 13005548, at *1 (S.D. Fla. 2012).

## 2.   EVIDENCE OF THE MILITARY'S FAILURES IS ADMISSIBLE. (PG2)

PG2 seeks to re-litigate the Court's determination that there is "sufficient record evidence to create a triable issue of fact" regarding the government's causative role. *Estes* Dkt. 59 at 8. Defendants intend to offer testimony from Tuten, Fallon, Crawford, and Stephenson based on their observations of the AHP's failings and their consequences.  Defendants also intend to offer testimony about how the AHP failed each Plaintiff and the impact thereof.  This evidence goes to the government's role in Plaintiffs' alleged injuries and is admissible under the Court's Orders.

Moreover, when detailed frameworks or regulatory schemes (and their application to a particular circumstance) are involved, expert testimony is appropriate to help the jury. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2020 WL 6887885, at *45 (E.D. Pa. 2020) (collecting cases).

---

[1] Battler also served at Fort Carson with Plaintiff Hacker.

Finally, 403 does not warrant exclusion.  The nature and extent of the AHP's fitting and training requirements will be helpful to the jury.  Moreover, in assessing Plaintiffs' experts' causation opinions, the jury should hear from Defendants' experts as to the AHP's failures' role in causation.  Finally, testimony from these experts will build a broader causation case and other experts may use such information to draw causation conclusions.  *Coleman v. Boston Sci. Corp.*, 2020 WL 7090700, at \*11 (S.D. Ala. Sept. 22, 2020).

## D.1.   EVIDENCE REGARDING THE GOVERNMENT'S ROLE IN DESIGN AND RELATED ISSUES IS ADMISSIBLE. (PG3, PG4)

Defendants do not seek to revisit the Court's ruling on the government contractor defense.  But the government's role in the development and labeling of the CAEv2 remains central.  The design and labeling of the CAEv2 resulted from Defendants' interaction with the government, and the jury must consider the genesis of and reasons for the design and labeling in order to assess their "reasonableness" under the "risk-utility" test applied by both Georgia and Kentucky.  *Banks v. ICI Americas, Inc*., 450 S.E.2d 671, 673 (Ga. 1994); *see Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004).  The evidence also goes to the "reprehensibility" requirement for punitive damages.

Santoro's testimony that Ohlin requested 3M ship the CAEv2 without instructions in the box is not inconsistent with the Court's ruling.  The Court credited Santoro's testimony.  *See* Dkt. 1280 at 54.  The ruling rested instead on the lack of a prohibition on providing the instructions outside the box, or in some other form.

## 2.   3M WAS NOT REQUIRED TO SUPPLEMENT. (PG11)

Plaintiffs' argument that Defendants cannot present evidence of 3M's awareness of testing of non-linear HPDs because 3M did not supplement its response flies in the face of this Court's ruling that "Rule 26(e) requires a responding party to supplement interrogatory answers only when the responding party has learned information outside of the discovery process or the respondent's position has changed."  Dkt. 1020 at 9.  Because 3M's knowledge of these tests has "otherwise been made known to [Plaintiffs] during the discovery process," supplementing was not required.  FRCP 26(e).

## 3.   DEFENDANTS MAY INTRODUCE TESTIMONY PLAINTIFS' CLAIM IS "INCONSISTENT" WITH 30(B)(6) TESTIMONY. (PG13)

Plaintiffs argue that 30(b)(6) testimony is "binding on the corporation" "[b]ut as with any other party statement, they are not 'binding' in the sense that the

corporate party is forbidden to call the same or another witness to offer different testimony at trial."  8A Charles Alan Wright, et al., *Fed. Practice & Procedure* § 2103 (3d ed.); *see Keepers v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015) ("Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements").

## E.1.  DEFENDANTS' WITNESSES MAY TESTIFY ABOUT THEIR OBSERVATIONS. (PG5)

Plaintiffs again seek to avoid the Court's *Daubert* Order.  Dkt. 1651. Witnesses may offer testimony regarding the AHP based on their experience.  *Id.* at 2, *e.g.,* 10-11 (describing topics Fallon may opine about).  Defendants intend to offer testimony from government witnesses—including Fallon, Murphy, Merkley, Binseel, Gates, Babeu, and Battler—consistent with this Order, i.e. based on their observations or to provide context regarding the AHP, including HPD evaluation. Presenting evidence from witnesses with personal knowledge or expertise is not the same as suggesting "that these deponents speak on behalf of the military," and confusion is unlikely.

## 2.  EVIDENCE REGARDING GOVERNMENT PROCUREMENT IS NOT HEARSAY. (PG6)

The testimony Plaintiffs cite does not speculate on any government agent's state of mind, but instead concerns non-hearsay statements based on personal knowledge.

Statements that are "more in the nature of an order or a request" are not hearsay.  *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015); *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986).  The statements from Ohlin were orders or requests regarding the type of plug he wanted.

Moreover, "utterances involved in making a contract" are a "verbal act" and "not hearsay at all[.]"  *United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989). The statements were involved in making a contract for buying the CAEv2.

Furthermore, "an out-of-court statement admitted to show its effect on the hearer is not hearsay."  *Rivera*, 780 F.3d at 1092; *Cruz*, 805 F.2d at 1478.  The statements from Ohlin show the effect on Aearo personnel regarding what they believed the military wanted regarding a plug, as well as what the military relied on or knew about, and thus show the effect such statements had on Aearo in designing the CAEv2.

Finally, the testimony is based on each witness's personal knowledge—such as Berger being present when Ohlin made statements and Santoro's conversations

with Ohlin—and thus satisfies Rule 601. *E.g.*, Ex 1 at 76:5-11; Ex. 2 at 60:18-61:19; Ex. 3 at 181:11-182:4, 195:6-23; Ex. 4 at 325:16-327:10, 328:18-329:18.

## 3. EVIDENCE REGARDING NVLAP'S ACCREDITATION AND AUDITS ARE NOT HEARSAY. (PG10)

Berger has personal knowledge of NVLAP's audits of Aearo's EARCAL lab and policy manual, and thus has a sufficient foundation for his testimony, which is based on personal knowledge and is not hearsay. Ex. 5 at 6; Ex. 2 at 120:20-121:24. Moreover, Berger is not offering testimony about NVLAP's state of mind or knowledge, but instead that NVLAP has accredited, approved procedures of, audited, and given comments regarding the lab. These are statements whose significance "lies solely in the fact that [they were] made" and thus are not hearsay for that independent reason. FRE 801, 1972 advisory committee note to (c); *United States v. Mateos*, 623 F.3d 1350, 1364 (11th Cir. 2010); *Cruz*, 805 F.2d at 1478.

## F.1. TESTIMONY REGARDING CAEV2 EFFICACY ARE ADMISSIBLE. (PG7)

While Plaintiffs vaguely seek to exclude "lay opinions" about "the CAEv2's efficacy," the evidence they cite in footnotes 43 and 44 is admissible. *See* Dkt. 1663 at 11-12. *First*, in footnote 43, Plaintiffs cite various depositions from witnesses testifying that they used the CAEv2 and obtained a good fit; that the CAEv2 attenuated sound in noisy environments; and that they could detect when the CAEv2 was losing its seal. This testimony describes each witness's own experience, and is within their personal knowledge. Such testimony does not require specialized knowledge—one need not be an expert to determine, for example, if ambient sounds are reduced while wearing an earplug. Indeed, numerous of the *Plaintiffs* give testimony on when they first perceived their injuries, and much of the testimony plaintiffs seek to exclude was given by medically trained audiologists. This testimony is relevant for numerous reasons, including that it rebuts Plaintiffs' arguments that the CAEv2 is "too short for proper insertion," "will not properly fit anyone," *e.g.*, Ex. 7 at 69:14-70:24, and "imperceptibly loosens."

*Second*, in footnote 44, the presentations, studies, emails, and other documents discussing the CAEv2's efficacy are business records. Descriptions of individuals' experience with the CAEv2 contained in these documents are admissible for the reasons stated above. Additionally, an "opinion contained in a business record need not satisfy the independent requirements of Rule 702." *Garrett v. City of Tupelo, Miss.*, 2018 WL 2994808, at *2-3 (N.D. Miss. 2018); *see SEC v. Jasper*, 678 F.3d 1116, 1124 (9th Cir. 2012). Thus, even if such documents contain opinions regarding the CAEv2's efficacy, they remain admissible under FRE 803(6).

## 2. THE LOVEJOY REPORT IS ADMISSIBLE UNDER 803(8). (PG9)

The Lovejoy Report is admissible as "factual findings from a legally authorized investigation[.]" FRE 803(8)(A)(iii). Lovejoy testified that the investigation in his report was authorized by the Department of Energy and that the report contains his factual findings. Ex. 6 at 49:21-51:11; *see also* Ex. 34.

Plaintiffs' principal criticism of Lovejoy is that "prior to conducting the study he had never performed" the same types of tests before. (Br. at 13)  But the same is true of plaintiffs' own retained testing expert, Eddins, who had never conducted REAT (and other) testing on HPDs prior to this litigation. Ex. 7 at 78:18-81:2, 87:21-88:10, 303:5-16, 322:23-323:3. Moreover, Lovejoy has two decades of experience as an industrial hygienist and has evaluated the effectiveness of hearing conservation programs. Ex. 6 at 233:23-235:10. Before conducting his investigation, Loveyjoy did an an "extensive amount of sampling" on weapons systems for impulse noise. Ex. 6 at 175:20-176:10; *see id.* 236:21-238:22. Lovejoy was trained in using the head-and-torso simulator for his investigation, and reviewed studies regarding the CAEv2 in impulse noise situations, spending several months preparing the methodology to test the CAEv2. Ex. 6 at 239:5-240:5. Lovejoy spent this time because he intended for the result of his study to be used for evaluating hearing protection for government security officers. Ex. 6 at 241:19-242:9. Thus, contrary to plaintiffs' criticisms, Lovejoy's report is not untrustworthy. In any event, as with FRE 803(6), an opinion in a FRE 803(8) report need not satisfy Rule 702. *See Christopher Phelps v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007).

## G.1. WHEN PLAINTIFFS RETAINED COUNSEL IS RELEVANT. (PS4)

When Plaintiffs first retained counsel may show that they did not claim injuries—or not to the extent now asserted—until retaining counsel. *See Smith v. Fox*, 2009 WL 2033152, at *2 (E.D. Ky. 2009) ("The date Plaintiff first hired counsel, however, is relevant to Defendant's argument that Plaintiff may have exaggerated her medical condition or her damages"). Thus, it bears on credibility. For Estes and Keefer, it is relevant to statute-of-limitations because it supports when they knew of a connection between their alleged injuries and the CAEv2. This evidence's limited nature—which seeks only a time frame—is often allowed, with the jury deciding its weight. *See Wise v. Southern Tier Express*, 2017 WL 8219076, at *1 (D. Nev. 2017).

## 2.    THE CENSUS AND BELLWETHER SELECTION FORMS ARE ADMISSIBLE. (PS14; PE4)

"It is hornbook law that evidence of prior inconsistent statements of a witness may be admitted to impeach that witness," even if the prior statement is unsworn. *United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1976).  Prior statements from parties are not hearsay.  FRE 801(d)(2).

Defendants are entitled to use these prior statements at trial, especially because the census forms are *sworn* and Plaintiffs testified that they supplied the information for the Bellwether forms.  Ex. 8 at 93:20-98:1; Ex. 9 at 221:23-229:7; Ex. 10 at 35:8-38:8.  The Court agreed the Bellwether form "is a statement of a plaintiff" and declined to "predetermine what is going to happen in a trial."  Ex. 11 at 17:15-17:20.

Plaintiffs' only justification for this request is that using them would require explaining the "context" to the jury.  But parties often explain prior statements with "context," and they can do so here without details of the MDL or the Bellwether process.

## 3-4.   DISABILITY FILES ARE ADMISSIBLE. (PC1-3, PC6)

Under the collateral source rule, evidence of collateral benefits may be admitted if it serves "a valid evidentiary purpose other than just revealing to the jury those benefits."  *ML Healthcare Servs., LLC v. Public Super Markets*, 881 F.3d 1293, 1298 (11th Cir. 2018).  Defendants do not intend to introduce the monthly dollar amount of disability benefits to reduce Plaintiffs' damages.

Many of the VA's disability determinations, however, are relevant for other "valid evidentiary purpose[s]."  *Id.*  Plaintiffs allege that their hearing injuries interfere with their enjoyment of life, and Estes and Keefer allege that their injuries will affect their ability to work.  That Plaintiffs suffer from other issues is relevant to assessing Plaintiffs' alleged damages.  A disability determination is admissible to prove that a plaintiff suffers from a disability, as opposed to the monetary benefits received.  *E.g.*, *McElgunn v. CUNA*, 2009 WL 1514398, at *8-9 (D.S.D. 2009).  Even in *Orber*, which Plaintiffs cite, the court admitted that the plaintiff "was found to be disabled … by the SSA."  *Orber v. Jain*, 2012 WL 1565299, at *2 (D.N.J. 2012).

Plaintiffs' argument against admission does not apply to Plaintiffs' disability applications and C&P exam records.  Plaintiffs claim that the disability determinations will confuse the jury because they were made under the VA's administrative standards.  But the statements Plaintiffs made about their disabilities, and the VA physicians' notes, are just inputs to the VA's decision-making process. Those statements' significance does not depend on the standard applied.

Accordingly, one of the decisions cited by Plaintiffs admitted a disability application even while excluding a determination. *See Chavez v. Waterford Sch. Dist.*, 2011 WL 887784, at *3 (E.D. Mich. 2011); *see also Hubbard v. Detroit Public Schools*, 372 F. App'x 631, 635 (6th Cir. 2010).

Moreover, Plaintiffs' own experts relied on the C&P exams and the VA's disability determinations. *See, e.g.* Ex. 12 at 6-7. Notes in the C&P exams are admissible because they fall into the hearsay exception for public records of "a matter observed while under a legal duty to report[.]" FRE 803(8)(ii); *see Orber*, 2012 WL 1565299, at *1 (collecting cases).

Finally, evidence of allegedly "unrelated" medical conditions is also plainly admissible. *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7455569, at *2 (S.D.N.Y. 2015) (evidence of injuries to body parts not involved in accident "plainly relevant" to loss of enjoyment and lost earnings capacity).

## 5.8. EVIDENCE OF OTHER EXPOSURES IS ADMISSIBLE. (PC4, PC8)

Plaintiffs' experts conducted differential diagnoses to support their opinions that Plaintiffs' alleged injuries were caused by noise exposures during their military service. *See* Ex. 13 at 10; Ex. 14 at 9. In order to conduct that analysis, Plaintiffs' experts had to "rule[] out" all other potential causes of Plaintiffs' injuries. *Id.* at 10. Any potentially damaging noises Plaintiffs have been exposed to are therefore relevant.

Whether Defendants' experts opined that these non-military noise exposures caused Plaintiffs' hearing loss makes no difference. Plaintiffs have the burden to prove that the CAEv2 caused their injuries. Defendants can undermine Plaintiffs' argument by pointing to alternative causes Plaintiffs' experts ignored. Defendants need not prove that these non-military exposures were the actual causes of Plaintiffs' injuries. *See R.J. Reynolds Tobacco Co. v. Mack*, 92 So. 3d 244, 248 (Fla. 1st DCA 2012) (per curiam) (reversing decision excluding alternative causation evidence even though defense experts did not testify that the alternative causes were more likely than not the actual cause of the plaintiff's injuries).

For the same reasons, evidence of Hacker and Keefer's past tobacco use is admissible. Tobacco is ototoxic, and thus Plaintiffs' experts should have accounted for tobacco use. *See* Ex. 16 at 21.

## 6. MILITARY HEARING RECORDS ARE ADMISSIBLE. (PC5)

Plaintiffs' annual audiograms satisfy the requirements of both the public records and statements-for-medical-diagnosis-or-treatment exceptions. *See* FRE 803(8), 803(6). These records are not "untrustworthy." Military audiologists have testified to their accuracy. Ex. 17 (Lecesse Dep. Tr.) at 79:10-80:16 (noting Hacker

was fitted and demonstrated proper use of a quad flange ear plug, as reflected in his record); Ex. 18 (Lee Dep. Tr.) at 134:13-22 (hearing technician marked "Other" for type of hearing protection worn because "he told me it was quad flange" and that "wasn't one of the options on the form"). Tellingly, Plaintiffs rely heavily on the *rest* of their audiograms and do not argue they are "untrustworthy."

By Plaintiffs' logic, any statement in any government or medical record could be excluded with a party's conclusory assertion that it is inaccurate. Plaintiffs' assertions about inaccuracies in the records turn on credibility determinations for the jury.

## 7. EVIDENCE REGARDING FUTURE TREATMENTS IS ADMISSIBLE. (PC7)

Dr. Shahnasarian did not testify that future treatment to mitigate Keefer's damages was "speculative" but instead stated that "it would be speculative, based on the individual factors that I've assessed, to reach a determination that he has sustained a loss of earning capacity." Ex. 21 at 75.

To the extent Plaintiffs offer evidence that they may experience problems in the future that will affect their future earning capacity, Defendants are entitled to offer evidence that, *if these problems arise*, mitigating treatments are available.

## H.1. THE ESTES HAVE PUT THEIR SEX LIFE DIRECTLY AT ISSUE. (PE1)

The Esteses have put their sex life at issue by filing a loss-of-consortium claim. Mrs. Estes has testified that Mr. Estes' alleged hearing loss has negatively affected their sex life. Ex. 19 at 153:12-154:11. Accordingly, Defendants should be permitted to present evidence to the contrary—including that the Esteses are satisfied with their sex life and that Mr. Estes' prior issues surrounding erectile dysfunction are not related to hearing loss/tinnitus, and were resolved shortly after their marriage.

Defendants do not intend to affirmatively present evidence related to Mrs. Estes' fertility.

## 2. ESTES' SALE OF HIS POCKET TALKER IS RELEVANT. (PE2)

Estes' decision to not use his VA-provided hearing aid and instead to sell it is relevant to his allegations of hearing loss and damages. Whether and to what degree Estes suffers from hearing loss is at the crux of this litigation. That Estes elected to *sell* his VA-provided hearing device—indicating that he does not have a current or *future* need for the device—is probative in assessing Estes' hearing loss allegations.

9

Estes' actions are at odds with Plaintiffs' expert testimony that Estes will need future medical care for his hearing loss, "could benefit from Hearing Aids," "will likely benefit from amplification," and should "consider ear level devices and/or amplification to improve hearing and stimulate pathway to diminish perception of tinnitus." *See e.g.*, Ex. 20 at 22, *Id.* at Ex. D at 4, Ex. 12 at 2.

## 3.    PAUL ESTES' DISABILITIES (PE3) - UNCONTESTED.

## 4.    IF PLAINTIFFS DEFEAT DEFENDANTS' GARDEN VARIETY MOTION, THEN ESTES' RECORDS OF DEPRESSION AND ANXIETY ARE RELEVANT. (PE5)

Defendants have moved to exclude of non-garden-variety mental anguish. Plaintiffs oppose that motion.  If Plaintiffs prevail, then medical documentation of Mr. Estes' depression and anxiety are related to his allegations of tinnitus because Defendants' medical expert John House has opined that depression and anxiety can cause and/or aggravate tinnitus, and that patients who have such mental conditions "may perceive their tinnitus as being very loud."  Ex. 25 at 10.  Otherwise, defendants will not seek to admit this evidence.

## I.1.    CUNNINGHAM'S TESTIMONY IS ADMISSIBLE. (PH1)

Plaintiffs misstate the scope of permissible testimony from treating physicians. "The 'fact opinions' of a treating physician's testimony include not only his or her simplistic observations … but also notions regarding causation, diagnosis, prognosis, and the extent of the disability or injury."  *Ngo v. Standard Tools & Equip.*, 197 F.R.D. 263, 267 (D. Md. 2000).  Part of Cunningham's treatment of Hacker involved surgery (incising the skin of Hacker's ear canal and lifting the eardrum to expose his middle-ear bones).  Cunningham acquired first-hand knowledge of Hacker's conductive hearing loss and the causes thereof (whether otosclerosis or a facial nerve abnormality).  Cunningham's determination about the cause of Hacker's hearing-related issues played a role in his decision to start and terminate his surgery on Hacker.

Plaintiffs misstate the record by asserting Cunningham "did not diagnose or treat Hacker" for tinnitus.  Cunningham evaluated Hacker's tinnitus for the purposes of treatment.  Tinnitus is a common symptom of conductive hearing loss like Hacker's, and "***if you correct the hearing loss***, … oftentimes ***the tinnitus will improve***."  Ex. 26 at 46:14-23 (emphasis added).  His records document three dates when Hacker reported or denied tinnitus, Ex. 27 at Hackers-MDL2885-29DUHS-00004, 148, 173, and his patient instructions explained that "[m]ost patients with

otoscolerosis notice Tinnitus (head noise) to some degree." *Id.* at Hackers-MDL2885-29DUHS-00018.

Cunningham testified that Hacker has hearing loss from either a genetic (otosclerosis) or a congenital (facial-nerve abnormality) condition. Ex. 26 at 34:18-22. The hearing loss from those conditions typically results in tinnitus. *Id.* at 34:23-35:4. And because neither condition is caused by noise, *id.* at 33:17-20, they are not related to HPDs. *Id.* at 39:5-11.

Plaintiffs' suggestion that Cunningham did not conduct an analysis of Hacker's noise exposures is irrelevant—Cunningham determined that Hacker's condition is unrelated to noise entirely. Plaintiffs also are incorrect—Cunningham *did* examine Hacker's audiometric record and observed no "noise notch." *Id.* at 76:14-77:13, 77:21-78:19.

Moreover, treating physicians need not provide "a written report if [their testimony is] based on the examination and treatment of the patient." *Levine v. Wyeth Inc.*, 2010 WL 2612579, at *1 (M.D. Fla. 2010). Any failure to provide a summary Rule 26 disclosure was substantially justified or harmless under Rule 37(c)(1) because Plaintiffs had notice of Cunningham's testimony and further discovery would have yielded no other information. Both parties questioned Cunningham at his deposition (though Plaintiffs asked just four minutes of questions). Finally, Plaintiffs' experts considered Cunningham's records and testimony in forming their opinions. There is no additional discovery Plaintiffs would have pursued and no further evidence they would have adduced.

## 2.    HACKER'S MOUNTAINVIEW RECORDS ARE ADMISSIBLE. (PH2)

Hacker's 2019 Mountainview medical record should not be excluded. PX78 at HACKERS-MDL-2885-MRC-00001. It fits within the hearsay exception for statements made for medical diagnosis or treatment under FRE 803(4). The document is also relevant. Hacker's claim in this case is that he has a hearing-related injury. Yet the record states: "Ears-No complaint of hearing difficulty, loss of hearing, or change in hearing, pain free, no drainage." Dkt. 1663-70-80 at HACKERS-MDL2885-3MVH-00087. The document also has "timeframe, context, or declarant"—it is from 2019, the context is apparent, and it relates to medical treatment provided to Hacker.f

## 3.    EVIDENCE OF HACKER'S OTHER HEALTH CONDITIONS MAY BE RELEVANT. (PH4)

Hacker is limited at trial to testimony about "garden variety" mental anguish and emotional distress. Dkt. 1663 at 21. Based on the Court's prior ruling, *see*

*Hacker* Dkt. 57, Defendants have moved to preclude evidence relating to conditions beyond hearing loss and tinnitus, such as anxiety and depression. *See* Dkt. 1664 at 1. To the extent Hacker is permitted to present such evidence, PH4 and PC8 (as it relates to Hacker) should be denied. Hacker's alleged stress, anxiety, depression, and other potential health conditions coincide with other major life events and stressors. For example, "Hacker's alcohol abuse over the first 16 years of his military career was a major contributor to his diminished quality of life." Ex. 28 at 2. Evidence of substance abuse would rebut any claim that Hacker suffers from stress or anxiety due to the CAEv2 instead of other factors. If Hacker chooses (and is allowed to) to raise such a claim, Defendants should be permitted to rebut it.

## 4. HACKER HAS PLACED FAMILY ISSUES IN DISPUTE. (PH5)

Hacker and his ex-wife have testified that his hearing-related injuries have contributed to marital and familial problems. Ex. 29 at 29:24-30:4, 38:23-39:5. To the extent Hacker raises such claims at trial, Defendants should be entitled to rebut them with other reasons for the alleged problems. Likewise, to the extent Hacker is permitted to testify that he has experienced stress or anxiety from his hearing-related injury, Defendants should be permitted to rebut that with other causes of such issues during the same period.[2]

## J.1.3. KEEFER'S DEMOTION AND THE CAUSE OF HIS DIVORCE ARE RELEVANT. (PK2, PK5)

Evidence and argument pertaining to Keefer's demotion and Article 15 are relevant to allegations Keefer has put at issue.

*First,* that Keefer was demoted from sergeant to specialist in 2014 is relevant to the Keefer's noise exposure during his last year in the Army. Keefer's supervisor after his demotion testified that Keefer "was not around" and that they were "allowing [Keefer] some leeway to kind of transit out of the military." Ex. 30 at 77:11-78:23. Keefer testified that following his demotion "there was less [noise] exposure" and that he did not do weapons training or "got to the field" during this last year. Ex. 10 at 282:2-20. Evidence regarding Keefer's demotion also supports that Keefer's alleged hearing loss and tinnitus had nothing to do with his

---

[2] Plaintiffs also argue that child-protective reports are confidential, citing the Kentucky Juvenile Code. But Plaintiffs do not identify the purportedly confidential record. Nor do they explain how Kentucky's disclosure law applies to evidentiary rules in federal court. Regardless, that law has exceptions, including "those persons so authorized by a court order," and protective orders are in place to address such concerns.

"involuntary separation" from the Army and move from Hawaii to Oklahoma in 2015. *Id.* at 279:18-280:16.

*Second*, Keefer alleges mental health conditions that are exacerbated by hearing loss and tinnitus. But the Parties dispute whether Keefer suffers from diagnosed mental health conditions at all and whether he is now exaggerating his alleged symptoms. Contrary to Keefer's claims now that his demotion caused only "temporary mental distress," Dkt. 1663 at 26, in 2015 Keefer reported in a certified statement to the VA for purposes of seeking disability payments that the circumstances of his demotion contributed to his alleged PTSD. *See* Ex. 31. Keefer's demotion and the causes of that demotion are relevant for testing that claim. Indeed, Plaintiffs' expert Ostacher considered the causes of Keefer's Article 15 in his assessment of Keefer for PTSD. Ex. 32.

*Third*, Keefer has put at issue the cause of his divorce from Emily Keefer by alleging it was caused, in part, by his hearing issues. *See* Ex. 10 at 325:12-23, 328:12-329:4. Defendants are entitled to challenge this allegation by offering evidence related to other potential causes of the divorce—including blaming Emily for his demotion for failing to disclose the Article 15 allegations made against him, claiming that Emily was unfaithful, and Emily's testimony that Keefer was irresponsible. Ex. 33 at 51:7-52:9, 93:19-95:18, 101:7-23, 162:16-163:2, 164:20-165:8.

## 2.    KEEFER HAS PLACED HIS JOB PERFORMANCE AT ISSUE. (PK3)

Keefer alleges that he has diminished future earning capacity due to using the CAEv2. Defendants are entitled to present evidence about other causes affecting his earning capacity. Keefer's discipline in the military, including accusations of creating a hostile environment for females, is relevant to assess whether there are factors—other than his alleged hearing issues—affecting his future job prospects.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motions *in limine*.

Respectfully submitted:

/s/ Charles F. Beall, Jr.
Larry Hill
Florida Bar No. 173908
lhill@mhw-law.com
Charles F. Beall, Jr.
Florida Bar No. 66494
cbeall@mhw-law.com
Haley J. VanFleteren
Florida Bar No. 1003674
hvanfleteren@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541

/s/ Robert C. "Mike" Brock
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

14

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F) and the Court's January 4, 2021 decision on the parameters for briefing, counsel for Defendants certify that this memorandum contains 4,943 words, excluding the case style, motion (which is less than 500 words), tables of contents and authorities, signature block, and certificates of compliance with the Local Rules.

Dated:  February 24, 2021

Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 24, 2021, a true and correct

copy of the foregoing:

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* AND MEMORANDUM OF LAW

was served as follows:

☒        **[E-Mail]** By causing the above document to be sent via electronic mail to the parties at the email addresses listed below. I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Douglass A. Kreis<br>Neil D. Overholtz<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>Email: baylstock@awkolaw.com<br>Email: dkreis@awkolaw.com<br>Email: NOverholtz@awkolaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Shelley V. Hutson, Co-Lead Counsel Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>Email: shutson@triallawfirm.com |

| | |
|---|---|
| Christopher A. Seeger, Co-Lead Counsel<br>David R. Buchanan<br>Caleb A. Seeley<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>Email: cseeger@seegerweiss.com<br>Email: dbuchanan@seegerweiss.com<br>Email: cseeley@seegerweiss.com<br>Email: MDL2885@seegerweiss.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 | Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX  77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com<br>Email: maburns@mostynlaw.com |
| Evan D. Buxner,<br>Plaintiffs' Executive Committee<br>Gori Julian & Associates<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorijulianlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 S Baylen St. Ste 600<br>Pensacola, FL 32502<br>Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com<br>Email: tbouk@levinlaw.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 |
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Discovery & ESI Subcommittee<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>Email: taylor@hgdlawfirm.com<br>Email: lewis@hgdlawfirm.com | Katherine E. Charonko,<br>Discovery & ESI Subcommittee<br>Bailey & Glasser LLP<br>209 Capitol Street<br>Charleston, WV  25301<br>Tel.: (304) 345-6555<br>Email: kcharonko@baileyglasser.com |

| | |
|---|---|
| Virginia E. Anello,<br>Discovery & ESI Subcommittee<br>Douglas & London<br>59 Maiden Ln, 6th Floor<br>New York, NY 10038<br>Tel.: (212) 566-7500<br>Email: vanello@douglasandlondon.com | J. Nixon Daniel, III<br>Discovery & ESI Subcommittee<br>Beggs & Lane<br>501 Commendencia Street<br>Pensacola, FL 32502<br>Tel.: (850) 469-3306<br>Email: jnd@beggslane.com |
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Discovery & ESI Subcommittee<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>Email: taylor@hgdlawfirm.com<br>Email: lewis@hgdlawfirm.com | Katherine L. Cornell<br>Pulaski Law Firm<br>2925 Richmond Avenue, Suite 1725<br>Houston, TX 77098<br>Tel.: (713) 664-4555<br>Email: kcornell@pulaskilawfirm.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 |
| Thomas W. Pirtle<br>Laminack Pirtle & Martines<br>5020 Montrose Blvd., 9th Floor<br>Houston, TX 77006<br>Tel.: (713) 292-2750<br>Email: tomp@lpm-triallaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 | Quinn R. Wilson<br>Onder Law LLC<br>110 E. Lockwood Avenue, 2nd Floor<br>St. Louis, MO 63119<br>Tel.: (314) 963-9000<br>Email: wilson@onderlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 |
| Thomas P. Cartmell<br>Wagstaff & Cartmell<br>4740 Grand Avenue, Suite 300<br>Kansas City, MO 64112<br>Tel.: (816) 701-1100<br>Email: tcartmell@wcllp.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | |

DATED:  February 24, 2021          _/s/ Robert C. Brock_____
                                   Robert C. "Mike" Brock