UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-2885 |
| *This document relates to: All Actions* | ) ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |

**MEMORANDUM OF LAW IN SUPPORT OF LIMITED OBJECTION AND MOTION TO MODIFY COMMON BENEFIT ORDER**

Plaintiffs' Lead Counsel ("Minnesota PLC") in the Minnesota Consolidated Litigation move the Court for an order modifying Common Benefit Order No. 3, Doc. 1659, because it reaches beyond the Court's jurisdiction and because it may have consequences the Court did not intend.[1]

As this Court may know, Judge Fraser has already entered a common benefit order in the Minnesota Consolidated Litigation establishing a similar holdback and disbursement procedure. *See In re 3M Earplug Prod. Liab. Litig.*, No. 27-cv-19-19916, Common Ben. Ord. (Hennepin Cty. Dist. Ct., Oct. 12, 2020), attached as Exhibit A. The two common benefit orders overlap in several respects, effectively resulting in double taxation of Minnesota cases. Coordination between the two Courts on a uniform common benefit process would

---

[1] The Minnesota PLC files this motion as a placeholder to meet the Court-ordered deadline for objections to Common Benefit Order No. 3. Doc. 1659 at 7. The Minnesota PLC respectfully requests that the Court defer ruling on this motion while they try to resolve these matters with the assistance of Special Masters, Judge Herndon and Judge Keyes.

avoid double-taxation and cure any potential jurisdictional issues with the Court's common benefit order.

## BACKGROUND

As this Court knows, on April 3, 2019, the Judicial Panel on Multidistrict Litigation determined that a series of cases against Defendants should be consolidated pursuant to 28 U.S.C. §1407 and assigned the MDL to this Court.[2] This MDL commenced shortly thereafter. In the master complaint for the MDL, the plaintiffs (current and former military servicemembers) allege the following counts: negligent design defect; strict liability design defect; negligent failure to warn; strict liability failure to warn; breach of express warranty; breach of implied warranty; negligent misrepresentation; fraudulent misrepresentation, fraudulent concealment; fraud and deceit; gross negligence; negligence per se; consumer fraud and unfair trade practices; loss of consortium; unjust enrichment; and punitive damages.

In December 2019, Plaintiff Graves filed his complaint in Minnesota State Court alleging a single failure-to-warn claim under Minnesota law. Defendants removed the case to federal court citing the government contractor defense arising out of the federal officer removal statute, 28 U.S.C. §1442. Plaintiff Graves moved to remand and on March

---

[2] Several of these cases were originally filed in the Fourth Judicial District, Hennepin County, Minnesota State Court. In early February 2019, the cases were consolidated before Judge Fraser.

23, 2020, Chief Judge Tunheim rejected Defendants' arguments and remanded Plaintiff Graves's case.[3] To date, Judge Tunheim has remanded 28 cases (mostly involving civilians and all asserting a single failure-to-warn claim) to Minnesota State Court. Judge Fraser is now presiding over these cases as the Minnesota Consolidated Litigation.

Upon remand, the Parties quickly began working together on streamlining the case. In quick succession the Parties proposed, and the Minnesota State Court entered, a joint discovery plan, a joint ESI protocol, and a joint protective order, among other things. In the first status conference with Judge Fraser, the Parties explained that Mr. Graves's case was different from – but nonetheless similar to – the large group of cases filed in this Court. The Parties also explained that Mr. Graves was not alone. Many additional civilians were interested in pursuing their claims in Minnesota State Court.

On June 1, 2020, Judge Fraser entered an Order Regarding Date Certain Trial Setting. In this Order, Judge Fraser indicated that, in conjunction with a joint case management conference with this Court, the trial in Mr. Graves's case would begin on March 29, 2021. Shortly thereafter, the Parties worked together with the Courts on establishing an order to coordinate the MDL and the Minnesota Consolidated Litigation. This Court entered that coordination order on June 3, 2020,[4] and Judge Fraser entered a substantially similar

---

[3] Defendants have appealed this decision (and the subsequent 28 remand orders) to the Eighth Circuit.
[4] This Court appointed Rick Paul of Paul LLP as Liaison Counsel between the MDL and the Minnesota Coordinated Litigation.

order in the Minnesota actions on June 10, 2020.[5] *See Graves v. 3M Co.*, No. 27-cv-19-19916, Joint Coord. Ord. (Hennepin Cty. Dist. Ct. June 10, 2020), attached as Exhibit B.

Not only did this Court and Judge Fraser confer about the trial date and the subsequently entered coordination orders, the Minnesota Court held (and continues to hold) monthly status conferences with the Parties to stay apprised of the status of newly remanded cases and any updates to the litigation as a whole.[6] Discovery progressed on Plaintiff Graves's case and the Minnesota PLC followed the two coordination orders by conferring with the MDL Plaintiffs' Lead Counsel ("MDL PLC") on depositions and related matters.

Judge Fraser also appointed co-lead counsel in the Minnesota Consolidated Litigation – specifically – Rick Paul of Paul LLP, Dan Gustafson of Gustafson Gluek PLLC, and Bill Sieben of Schwebel, Goetz, and Sieben, P.A., and Amanda Williams of Gustafson Gluek PLLC, as liaison counsel. In addition to coordinating and effectuating the discovery of Mr. Graves's case, the Minnesota PLC has worked with Defendants to establish and enact

---

[5] Judge Fraser's Order attached the adopted Pretrial Order No. 3 Deposition Protocol and Pretrial Order No. 35 Remote Depositions from the MDL and attached the MDL's June 3, 2020 Coordination Order as well.

[6] These monthly status conferences have been set to occur approximately one-week post this Court's monthly status conferences.

4

a separate bellwether protocol and process, depose witnesses and experts,[7] and make (and respond to) several dispositive motions. These dispositive motions are pending, and the Parties are actively preparing for upcoming trials.[8]

## ARGUMENT

**I.  Absent coordination with the state court, the Court lacks jurisdiction to order holdbacks in unfiled and state cases.**

Although the Court has "broad discretion in coordinating and administering a multi-district litigation," the creation of an MDL does not "expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). In this MDL, "[a]s in any other case," jurisdiction "is limited to cases and controversies between persons who are properly parties to the cases transferred." *Id.* at 166. Unfiled cases and cases in the Minnesota Consolidated Litigation are not before the Court; claimants in those cases have not invoked this Court's jurisdiction. This will pose jurisdictional problems for implementation of the common benefit order.

**a.  The Court lacks the required statutory basis for jurisdiction.**

---

[7] The Minnesota PLC obtained and prepared its own set of experts – separate and apart from the experts used in the MDL.

[8] Although the Graves's trial was originally scheduled to begin March 29, the trial was recently continued by Judge Fraser because the first criminal trial of the police officers for the murder of George Floyd was scheduled to start opening statements that same day. Mr. Graves's trial has now been rescheduled to start August 2, 2021.

The Court needs a statutory basis for jurisdiction to impose holdbacks on state court and unfiled cases, but no statute extends the Court's jurisdiction so far. *See Bourdon v. U.S. Dep't Homeland Sec.*, 940 F.3d 537, 546 (11th Cir. 2019) ("[T]he exercise of federal jurisdiction is proper only when prescribed by Congress."). Indeed, the District of Minnesota has already determined there is no federal question jurisdiction or federal officer removal jurisdiction over the Minnesota cases, which is why they are not proceeding here. *See Graves v. 3M Co.*, 447 F. Supp. 3d 908 (D. Minn. 2020); *Copeland v. 3M Co.*, No. 20-cv-1490, 2020 WL 5748114 (D. Minn. Sept. 25, 2020); *Sultan v. 3M Co.*, No. 20-cv-1747, 2020 WL 7055576 (D. Minn. Dec. 2, 2020).

The multidistrict litigation statute, 28 U.S.C. § 1407, is not jurisdictional. It authorizes the Judicial Panel on Multidistrict Litigation to transfer "civil actions involving one or more common questions of fact" to one district court for consolidated pretrial proceedings. This statute merely "provides a procedure for transferring cases filed in different districts to a single district court[;] nowhere does it expand the jurisdiction of either the transferor or the transferee court." *In re Showa Denko*, 953 F.2d at 165.

The lack of a basis for jurisdiction has led numerous courts, including three federal courts of appeals, to conclude an MDL court cannot assess holdbacks in unfiled or state cases. The Fourth Circuit explained in *In re Showa Denko* that "[c]laimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court[,] nor have they been brought in by process. The

6

district court simply has no power to the extend the obligations of its order to them." *Id.* at 166. Similarly, the Eighth Circuit in *In re Genetically Modified Rice Litigation* affirmed the MDL court's conclusion that it "d[id] not have the power to order parties in cases not before it to contribute to the [common benefit] Fund." 764 F.3d 864, 874 (8th Cir. 2014). The Ninth Circuit in *Hartland v. Alaska Airlines* granted writs of mandamus to require an MDL court to reimburse common benefit funds assessed on a case pending in another federal court and an unfiled case. 544 F.2d 992, 1002 (9th Cir. 1976). Of the unfiled case, the Ninth Circuit said forcefully that the MDL "had not even a semblance of jurisdiction . . . to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay . . . . There was just 'no action' pending anywhere." *Id.* at 1001. District courts around the country have come to the same conclusion. *See In re Genetically Modified Rice Litig.*, No. 4:06-md-1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) (holding the MDL had no jurisdiction over state cases and collecting district court authority).

### b. Ordering Defendants to withhold assessments does not cure the jurisdictional issue.

Other courts have concluded that they have no jurisdiction to require an MDL defendant to withhold assessments from non-MDL settlements and verdicts, as this Court's order does. Doc. 1659 at 9 (requiring Defendants to "withhold an assessment from any and all amounts paid to Claimants and to pay the assessment directly in the" common benefit fund). This requirement "indirectly reaches the same result achieved directly" by imposing an assessment on state and unfiled cases. *In re Showa Denko*, 953

7

F.2d at 166. It "effectively orders [Defendants] to exact the assessments if it wishes to settle . . . with any plaintiff or claimant not before the court." *Id.* In essence, the order's requirement grafts an additional term into all potential settlement agreement or state court judgment, requiring Defendants to divert some of the agreed-upon settlement to a common benefit fund without the claimant's consent. Under current law, the Court has no power to bind parties not before it in this way.

For state court cases, the requirement that Defendants hold back payment could also interfere with a state court judgment against them. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 2:14-md-2591, 2015 WL 2165341, at *2 (D. Kan. May 8, 2015) (noting that an MDL "holdback requirement could subject [a defendant] to conflicting obligations"). This result would contravene the Supreme Court's longstanding admonishment that federal interference with state court proceedings should be the rarest of exceptions. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987); *Younger v. Harris*, 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."). No showing has been made that *Younger*'s narrow justifications for inserting a federal court into a state proceeding – "bad faith and harassment" – are present here. *Younger*, 401 U.S. at 53.

That some counsel may have cases in both the MDL and in the Minnesota Court makes no jurisdictional difference. The common benefit order imposes a holdback in

8

disputes between Defendants and unfiled claimants or state-court plaintiffs—in other words, the holdback runs with the case. Doc. 1659 at 9. Rejecting the argument that a holdback order could impose obligations on counsel with cases in the MDL, the Eighth Circuit explained: "The state-court *plaintiffs* at issue" did not "agree[] to be part of the federal MDL. . . . Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs and [defendants]." *In re Genetically Modified Rice*, 764 F.3d at 874 (first emphasis added). Imposing the assessment on counsel creates similar problems as imposing the holdback on MDL defendants. "[T]he effect of a holdback [on counsel with cases in the MDL] may be to interfere with a state-court plaintiff's total recovery, which belongs to the plaintiff and not to its attorney." *In re Syngenta*, 2015 WL 2165341, at *3.

All this does not mean the Court cannot create a common benefit process that reaches cases pending elsewhere. But the MDL courts that have done so coordinated with state courts and counsel to reach mutual participation agreements. *See, e.g., In re Avandia Mtg., Sales Pracs., & Prods. Liab. Litig.*, 617 F. App'x 136, 142 (3d Cir. 2015) (unpublished) (holdback permissible based on participation agreement); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 191 (S.D.N.Y. 2020) (same). Such coordination with the state court would resolve the jurisdictional issues set forth above. *See In re Genetically Modified Rice*, 2010 WL 716190, at *4 ("Some courts have entered [common benefit] orders covering state cases where there was an agreement by the state courts or parties to do

so."); *In re Diet Drugs Prods. Liab. Litig.*, No. 1203, 1999 WL 124414, at *4 (E.D. Pa. Feb. 10, 1999) (common benefit order to become effective "[u]pon approval of the agreement by . . . the coordinating judge in California"). Minnesota PLC thus urge the Court to coordinate with the Minnesota Court.

**II.    This Court's order will double-tax the Minnesota PLC.**

The need for cooperation is even more acute in this instance because Judge Fraser has already entered a common benefit order for the Minnesota Consolidated Litigation. *See* Ex. A. The Minnesota Court's order recognizes that the Minnesota PLC's work will confer a benefit on all plaintiffs, and it creates a fair process for equitably sharing the burden of that work among all Minnesota plaintiffs. *Id.* at 1.

This Court's order overlaps with much of the Minnesota Court's order. Both assess a holdback. Ex. A at 19; Doc. 1659 at 6–7. Both establish a common benefit fund. Ex. A at 16; Doc. 1659 at 5. Both make a judgment about what constitutes common benefit work. Ex. A at 4; Doc. 1659 at 2. But while the Minnesota Court's order only affects Minnesota cases, this Court's order, by its terms, has no such limitation.[9]

The overlap will result in double taxation. As it stands, this Court's order and the Minnesota court's order impose separate holdbacks on a claimant's recovery. The current situation could require Minnesota plaintiffs' counsel to pay nearly twice what MDL

---

[9] For purposes of argument in this section, we assume without conceding that the Court has jurisdiction over unfiled and state court cases.

10

plaintiffs' counsel must pay. *See* Ex. A at 19 (establishing holdback percentage); Doc. 1659 at 6–7 (same). This result is unfair. Although the Minnesota PLC has access to much of the MDL's work product, it does not have access to the experts or to the trial preparation work. Nor has Minnesota participated in the MDL bellwether process but instead, Minnesota has a separate bellwether process and separate Minnesota experts, with all that entails, including expert depositions and motions and a separate trial process. As this Court's order is written, it will force the Minnesota PLC to pay for common benefit work they did not receive. No one disputes that the MDL PLC should be compensated for its contribution to the overall litigation, including for work product that benefits all cases. But it should not be compensated through an unfair double tax.

At the same time, the Court's most recent order appears not to recognize the benefits that accrue from the Minnesota PLC's efforts. The Minnesota Court is now a second front in this litigation focused on 3M's failure to warn of the dangers of using its earplugs. The Minnesota bellwethers will provide additional data points for 3M's exposure in another forum—one where many MDL cases must return once pretrial proceedings end, absent a settlement. 28 U.S.C. § 1407 ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred."). The Minnesota PLC's work will benefit all plaintiffs, MDL included, by presenting a second pressure point against 3M. *See In re Syngenta AG Mir162 Corn Litig.*, No. 2:14-md-2591, 2018 WL 7254709, at *36 (D. Kan. Nov. 21, 2018) (awarding common

11

benefit funds to Minnesota counsel where "[u]nquestionably, the Minnesota state court litigation advanced the cause of pressuring" the defendant to settle).

The Minnesota PLC have devoted substantial time and resources to the Minnesota litigation. As recounted above, 3M's insistence on removing all failure-to-warn only cases in Minnesota has necessitated dozens of remand motions and appellate briefs, to ensure the cases proceed in a court with jurisdiction. The need for different Minnesota experts required expert depositions, with all the preparation that entails. The Minnesota PLC has also handled several pretrial motions in the first case to be remanded, *Graves v. 3M Co.*, including cross-motions for summary judgment, a motion for punitive damages, and multiple *Frye-Mack* motions (Minnesota's version of the *Daubert* standard, *see Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn. 2000)). These motions will establish the admissibility of experts for future Minnesota plaintiffs, as well as 3M's liability for punitive damages in Minnesota Court. A bellwether process is well underway to select plaintiffs for trial, with trials expected later this year. The Minnesota bellwethers will likely also involve pretrial proceedings.

Again, the Minnesota PLC does not dispute that the MDL PLC contributed to Minnesota cases or that it should be compensated for it. But different circumstances in Minnesota cases call for different holdbacks. The Court's most recent order does not acknowledge the difference, nor does it seem to recognize that its order imposes a double

holdback on Minnesota plaintiffs' counsel. Respectfully, the Court's order is simply unfair to the Minnesota PLC's work.

### III. Coordinating with the Minnesota Court to institute a common benefit process will promote efficiency and comity.

Given these issues, the current common benefit process has the potential to create friction between the MDL and the Minnesota proceedings. Coordination between the two Courts would avoid both issues and fairly apportion common benefit holdbacks.

From the beginning, this Court and the Minnesota Court have shown mutual comity. Both entered coordination orders to facilitate the efficient resolution of this litigation. *See* Doc. 1162; Ex. B. The discovery sharing requirement created efficiencies that benefit everyone and will continue to do so. In keeping with both Courts' orders, the Minnesota PLC has coordinated as much as possible with the MDL PLC, including using some of the MDL PLC's work product. The Minnesota PLC also tried on several occasions to reach an agreement with the MDL PLC about the allocation of common benefit funds, without success.[10] The disconnect threatens the cooperation that has so far benefited the two proceedings. A uniform common benefit process would ensure that work product can be freely shared.

The two Courts' cooperation on a shared common benefit process would moreover preserve "comity and respect for the state courts' supervision of [its] own docket[]." *In re*

---

[10] The Court's third common benefit order came as a surprise. Minnesota PLC filed this motion to meet the objection deadline in this Court's order. Doc. 1659 at 7.

13

*Zyprexa Liab. Litig.*, 467 F. Sup. 2d 256, 268 (E.D.N.Y. 2006); *see also id.* at 268–69 ("The issue of assessing state cases with the costs of a discovery process that benefits all cases, state and federal, should, in the first instance, be left to state court judges."). As noted above, numerous district courts have coordinated with state courts to create mutual common benefit protocols for precisely this reason. *In re Genetically Modified Rice Litig.*, 2010 WL 716190, at *4 (collecting cases). The coordination Minnesota Counsel proposes will give fair recognition to each proceeding for its contribution to the overall litigation without putting a disproportionate burden on Minnesota plaintiffs.

## CONCLUSION

For these reasons, the Court should coordinate with the Minnesota Court to create a uniform common benefit process. As noted at the outset, the Minnesota PLC and the MDL PLC will work to achieve a resolution without the need for court intervention. Minnesota PLC will alert the Court if a ruling becomes necessary.

| | |
|---|---|
| Date: March 1, 2021 | Respectfully submitted,<br><br>**PAUL LLP**<br>*/s/ Richard M. Paul III*<br>Richard M. Paul III<br>601 Walnut Street, Suite 300<br>Kansas City, Missouri 64106<br>Telephone: (816) 984-8100<br>Rick@PaulLLP.com<br>Ashlea@PaulLLP.com<br><br>**ATTORNEY FOR PLAINTIFFS** |

**CERTIFICATE OF SERVICE**

In compliance with L.R. 5.1(F), the undersigned certifies that a true and correct copy of the foregoing was filed via the Court's CM/ECF system on March 1, 2021, which sends notice to all counsel of record.

*/s/ Richard M. Paul III*