## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Estes*, 7:20cv137 *Hacker*, 7:20cv131 *Keefer*, 7:20cv104 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This Order addresses the following key motions in limine for the upcoming bellwether trial, beginning March 29, 2021:  Defendants' VI—Evidence of Previous Litigation and XVI—Evidence Related to 3M's Discontinuation and Lack of Recall of CAEv2; and Plaintiffs' C—Generalized Evidence Unconnected to Plaintiffs and F1—Lovejoy Report.  Rulings on the remaining motions will follow by separate order.

## Defendants' Motions

### VI.    Evidence of Previous Litigation

Defendants move to exclude all evidence and argument related to (1) the qui tam suit in *United States ex rel. Moldex-Metric v. 3M Co.*, No. 3:16-cv-1533 (D.S.C.) (the "qui tam litigation"); (2) a report by the United States Army Criminal Investigation Command ("CID") generated in response to the claims of the qui tam

litigation (the "CID Report"); and (3) the patent infringement litigation and subsequent lawsuits between 3M and Moldex, including *3M Co. v. Moldex-Metric, Inc.*, No. 12-611 (D. Minn.) and *Moldex Metric Inc. v. 3M Co.*, No. 14-1821 (D. Minn.) (the "patent lawsuits"). Defendants argue that this evidence is inadmissible under Rules 402, 403, 408, and 802.

A.    Evidence Related to Qui Tam Litigation

Defendants argue the allegations in the qui tam complaint should be excluded because they are (1) irrelevant, (2) inadmissible hearsay, and (3) unduly prejudicial. Defendants also move to exclude evidence of the settlement agreement that concluded the qui tam litigation (the "Settlement Agreement") under Rule 408 and Rule 403. For the following reasons, the Court finds that the amount of the Settlement Agreement is inadmissible, and that other evidence related to the qui tam litigation is inadmissible for non-impeachment purposes.  Impeachment is another matter.

First, the allegations in the qui tam complaint are inadmissible hearsay and may not be admitted for non-impeachment purposes. *See Salinero v. Johnson & Johnson*, No. 1:18-cv-23643, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) ("[E]vidence of lawsuits is generally considered inadmissible hearsay." (citation omitted)). However, the allegations in the qui tam complaint might be used for impeachment if Defendants open the door to their use at trial. *See Gutierrez v.*

*Galiano v. Enters. of Miami, Corp.*, No. 17-24081, 2019 WL 3302325, at *3–4 (S.D. Fla. July 23, 2019); *Rushing v. Wells Fargo Bank, N.A.*, No. 8:10-cv-1572, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012). The Court cannot make that determination until the time of trial and will therefore defer ruling on whether the qui tam allegations may be used for impeachment. Before Plaintiffs attempt to present any such evidence, they should request to be heard outside of the jury's presence.

Turning to the Settlement Agreement, the Court agrees with Defendants that evidence of the settlement amount is inadmissible under Rule 408 and Rule 403. "Rule 408 bars settlements or offers to settle in order 'to prove liability for, invalidity of, or amount of a claim.' " *Barker v. Niles Bolton Assocs., Inc.*, 316 F. App'x 933, 937 (11th Cir. 2009) (quoting Fed. R. Evid. 408); *see also Dallis v. Aetna Life Ins. Co.*, 786 F.2d 1303, 1306 (11th Cir. 1985) (Rule 408 applies "to situations involving settlements between one of the parties and a third party, where such settlements have arisen out of the same transaction that is in dispute"). Further, the settlement amount is not probative of Plaintiffs' allegations and any probative value is substantially outweighed by the danger of undue prejudice and jury confusion. *See* Fed. R. Evid. 403.

However, the Settlement Agreement also includes various non-monetary terms, including that the Settlement Agreement "is neither an admission of liability by 3M, nor a concession by the United States that its claims are not well founded."

*See* ECF No. 1664-7 at p. 3, ¶ D. Plaintiffs represent that they "do not intend to offer the qui tam settlement agreement at trial unless needed to rebut 3M's claims about disclosure to the government." Pltfs. Resp. at 11. The Court is skeptical that the Settlement Agreement will be admissible for this purpose, *see* Fed. R. Evid. 408(a) (evidence of compromise "is not admissible . . . to impeach by a prior inconsistent statement or a contradiction"); nonetheless, at this point, the Court cannot determine whether the non-monetary terms of the Settlement Agreement may be admissible at trial "for another purpose, such as proving a witness's bias or prejudice," *see* Fed. R. Evid. 408(b), and will therefore defer ruling on their admissibility. *See Barker*, 316 F. App'x at 937 (concluding admission of settlement agreement in Fair Housing Act claim "for the limited purposes of showing modifications to [the plaintiff's] apartment and mitigation of damages" did not violate Rule 408 where the settlement agreement was redacted as to "not provide evidence as to how much [the plaintiffs'] claim was worth"); *see also Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 811 (M.D. Fla. 2007) ("[W]hether or not evidence of the prior settlement is presented to the court at trial is in fact relevant and admissible . . . is a decision that should be made by the Court at the time of the trial."). Plaintiffs should request to be heard outside of the jury's presence before attempting to present the non-monetary terms of Settlement Agreement.

B.   <u>Evidence Related to the CID Report</u>

The CID Report, which was prepared by Special Agent Jennifer Coleman, is divided into two parts: (1) a six-page "final report" *see* ECF No. 71-8 at 2–7,[1] and (2) exhibits to the final report, including witness interview memos, copies of documents gathered, and a copy of the qui tam Settlement Agreement, *see id.* at 8–261. *See* SA Coleman Depo. Tr. at 457:2–24. Defendants move to exclude the CID Report in its entirety. Defendants argue first that the final report and witness interview memos are inadmissible hearsay and violate Rule 403. Defendants further argue that the documents included with the final report should be excluded as cumulative and duplicative because the documents have been separately produced in this litigation. Finally, Defendants re-assert their arguments against admission of the Settlement Agreement. Plaintiffs respond that the final report and the witness interview memos satisfy the public-records exception to the rule against hearsay. The Court agrees, in part.

First, the Court finds that the six-page final report is admissible under the public records exception to the rule against hearsay. *See* Fed. R. Evid. 803(8). That exception excludes from hearsay "a record or statement of a public office" that sets out "in a civil case . . . factual findings from a legally authorized investigation." Fed.

---

[1] The Court cites to the CM/ECF page numbers at the top of the CID Report rather than the page numbers at the bottom of the document.

R. Evid. 803(8)(A)(iii). "In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988), the Supreme Court concluded that opinions and conclusions based on factual findings are also admissible under Rule 803(8)(C)".[2] *Mamani v. Sánchez Bustamante*, 968 F.3d 1216, 1241 n.27 (11th Cir. 2020). For the public-records exception to apply, the report's "factual findings" must be "based upon the knowledge or observations of the preparer of the report, as opposed to a mere collection of statements from a witness.' " *Id.* at 1241 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009)) (internal quotation marks omitted). A report's "entries must result from the preparer's 'own observations and knowledge,' " and " 'statements made by third persons under no business duty to report' are not admissible." *Id.* (quoting *United States v. Ransfer*, 749 F.3d 914, 925 (11th Cir. 2014)). Finally, unless the government agency disavows it, "a report prepared by a staff member in the ordinary course of duty and circulated outside the agency is exactly the sort of 'factual findings from a legally authorized investigation' that 803(8)[A](iii) is designed to exclude from the prohibition on hearsay." *See United States v. Gluk*, 831 F.3d 608, 613 (5th Cir. 2016); *cf. Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (concluding that "positions and opinions of

---

[2] In 2011, subsection 8(C) was deleted and is now found under subsections (8)(A)(iii) and (B). The change is "stylistic only." *See* Fed. R. Evid. 803 advisory committee's note to 2011 amendment.

individual staff members, which the agency ultimately declined to accept" did not reflect "factual findings" for purposes Rule 803(8)(A)(iii)).

Applying this standard,[3] the Court finds that the final report is admissible under Rule 803(8). First, there is no dispute that the CID's investigation was "a legally authorized investigation." Second, the final report states that "[i]nterviews of US Government personnel *confirmed* that had they known about the February 2000 test results (i.e., that the CAE was too short for proper insertion in the users' ears and, therefore, did not perform well in certain individuals) on the CAE they may not have purchased the items." *See* ECF No. 71-8 at 3 (emphasis added). As SA Coleman explained at her deposition, the purposes of the investigation were to (1) determine whether or not the United States government and the Army knew about Defendants' test results from 2000 and whether that was material to their decision to purchase the CAEv2, and (2) provide the United States Attorney's Office "fact-based, unbiased investigative findings that reflect impartiality." *See* SA Coleman Depo. Tr. at 26:7–29:9, 53:22–54:10; *see also id.* at 74:4–10 ("Q. Okay. This report, this final report

---

[3] Defendants do not explicitly challenge the trustworthiness of the final report. *See* Fed. R. Evid. 803(8)(B).To the extent Defendants do challenge the final report as untrustworthy, the Court finds that they have adduced no evidence that the final report lacks trustworthiness and have therefore failed to carry their burden of proof. *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347 (11th Cir. 2020) ("The plain language of Rule 803(8)(B) . . . provides that the burden of demonstrating a lack of trustworthiness is on the party opposing admission."); *see also Gess v. United States*, 952 F. Supp. 1529, 1534 n.8 (M.D. Ala. 1996) (finding that an Air Force Office of Special Investigations report was reliable because it "was conducted consistent with Air Force policy, reviewed for trustworthiness and was never contradicted by the United States Government).

from 2018, this reflected your factual – the course of your investigation and the factual determinations that you made; is that right? A. The factual – the facts as we found them through the case, yes."). Moreover, the final report was approved by SA Coleman's supervising agent and was circulated outside of the CID. *See* CID Report at 6–7; *Gluk*, 831 F.3d at 613. The final report therefore constitutes a "factual finding[] from a legally authorized investigation" and is admissible under Rule 803(8).[4]

The Court agrees with Defendants, however, that the second portion of the CID Report is inadmissible. First, the witness interview memos are inadmissible hearsay within hearsay. As SA Coleman explained at her deposition, the witness interview memos are "just a recitation" of what witnesses told her. *See* SA Coleman Depo. Tr. at 458:11–459:11. The witness interview memos are therefore "double hearsay forbidden by Rule 805." *See Mamani*, 968 F.3d at 1241; *United Techs. Corp.*, 556 F.3d at 1278 ("[P]lacing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statement admissible."

---

[4] The final report's factual findings are highly probative of Plaintiffs' claims. *See Smith v. Univ. Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) ("The fact that an investigator, trained and experienced in the area . . . has found that it is likely that such unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases."). If necessary, the Court can provide the jury with instructions that will guard against any potentially unfair prejudice that might arise from admission of the final report (i.e., use of the word "criminal" and reference to the qui tam litigation). *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1288–89 (11th Cir. 2008) (finding no abuse of discretion in admitting an EEOC determination in light of the trial court's instruction to the jury that "correctly explained the purpose and character of an EEOC determination").

(citation omitted)); *Roxbury-Smellie v. Fla. Dep't of Corr.*, 324 F. App'x 783, 785 (11th Cir. 2009) (affirming district court's determination that "interview notes did not fall into the public records exception because they were not a factual finding made by the EEOC investigator, but rather a record of the interviews conducted by the EEOC investigator"). Second, the Court agrees with Defendants that copies of documents obtained from the DLA and 3M and attached to the CID Report are cumulative and duplicative because the documents have already been separately produced in this litigation.[5] Finally, for the reasons previously stated, the Court finds that the non-monetary portions of the Settlement Agreement are inadmissible for non-impeachment purposes.

C.   Evidence Related to Patent Lawsuits

Defendants move to all evidence related to the patent lawsuits because it is irrelevant, hearsay not within an exception, and its probative value is substantially outweighed by a danger of jury confusion and undue prejudice. Plaintiffs respond that (1) "wholesale exclusion" of such evidence is improper because the patent lawsuits generated "a number of depositions and document productions that address

---

[5] Plaintiffs do not respond to Defendants' argument regarding the copies of documents gathered. It therefore stands unopposed.  Although not addressed by either side, the CID Report's exhibits also include two document review summaries in which the reporters "noted" information contained in the documents. *See* CID Report at 9–11 (review of DLA contracting documents), 42–44 (review of documents provided by 3M). The Court finds that the document review summaries are also due to be excluded as duplicative and cumulative as they do nothing more than restate information contained in the documents themselves.

the CAEv2's development and features," including Doug Ohlin's only testimony on the CAEv2 before he passed away, and (2) evidence of 3M's "baseless patent-infringement action[]" against Moldex is relevant to punitive damages "because it is evidence of 3M's efforts to exclude safer alternatives despite knowing the CAEv2 was defective." *See* Pltfs. Resp. at 5.

The Court agrees with Plaintiffs that wholesale exclusion of evidence generated by the patent lawsuits is unwarranted to the extent that the evidence is relevant to Plaintiffs' claims. The Court also agrees that evidence of the patent litigation may be relevant to punitive damages to the extent it tends to show that 3M undertook efforts to exclude safer alternatives to the CAEv2 even though it knew that the CAEv2 was defective. *See, e.g.*, O.C.G.A. § 51-12-5.1(b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, . . . or that entire want of care which would raise the presumption of conscious indifference to consequences."); *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) ("The threshold for the award of punitive damages in a tort case is whether there is misconduct . . . 'outrageous' in character . . . ."); Ky. Rev. Stat. § 411.186(2) (listing factors that should be considered in determining the amount of punitive damages); *see also McCollough v. Johnson, Rodenberg & Lauinger*, 645 F. Supp. 2d 917, 923 (D. Mont. 2009) (finding evidence of the large

number of lawsuits filed by a debt collection firm and testimony that the lawsuits were baseless "was relevant to a jury's consideration of punitive damages"). The Court is cognizant of the risk that introduction of evidence of the patent lawsuit may (1) "lead to a series of mini-trials" resulting in a waste of time and judicial resources, *see Smith v. E-backgroundchecks.com, Inc.*, No. 1:13-cv-20658, 2015 WL 11233453, at *2 (N.D. Ga. June 4, 2015), and (2) be improperly used by the jury for purposes of using a punitive damages verdict to punish 3M for harm allegedly caused to Moldex or other non-parties, *see Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) ("[A] jury may not . . . use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties."). Defendants may raise an appropriate objection at trial should Plaintiffs attempt to introduce evidence from the patent lawsuits that Defendants believe is inadmissible, and Plaintiffs' counsel must seek leave prior to introducing evidence of the patent lawsuit at trial for purposes of punitive damages.

## XVI.      Motion to Exclude Evidence Related to 3M's Discontinuation and Lack of Recall of CAEv2

Defendants move to exclude evidence of 3M's discontinuation of sales of the CAEv2, as well as to preclude Plaintiffs' counsel from asking witnesses why 3M never recalled the CAEv2. Defendants argue these matters are (1)  barred by Rule 407's prohibition against the introduction of subsequent remedial measures to prove liability, (2) irrelevant, and (3) their admission would violate Rule 403. Plaintiffs

respond that evidence of 3M failure to do more than discontinue sales of the CAEv2 (1) does not violate Rule 407 because it is not "remedial," (2) is relevant to Plaintiffs' claims, and (3) is admissible for other purposes, including impeachment. The Court agrees, in part.

Rule 407 provides, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." However, evidence of a manufacturer's subsequent remedial measures may be admitted for the purpose of impeachment. *See* Fed. R. Evid. 407. Rule 407's proscription does not apply to evidence of subsequent remedial measures undertaken by third-parties. *See Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1302 (11th Cir. 2007).

The Court finds that evidence of 3M's discontinuation of sales of the CAEv2 is a subsequent remedial measure because it "would have made an earlier injury or harm less likely to occur" had the CAEv2 not been sold prior to the injury. *See* Fed. R. Evid. 704; *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004, 2010 WL 2015146, at *1–2 (M.D. Ga. May 20, 2010) (finding manufacturer's "decision to stop selling ObTape is a subsequent remedial measure under Rule 407"). Consequently, this evidence plainly is inadmissible to prove

Defendants' negligence, culpable conduct, that the CAEv2 was defective, or the need for warning or instruction.

With respect to impeachment, the Eleventh Circuit has cautioned that "[c]are must be taken to ensure that Rule 407's impeachment exception is not used merely 'as subterfuge to prove negligence or culpability of the defendant.' " *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1567–68 (11th Cir. 1991) (citation omitted). For example, "[a]lthough any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a defendant's testimony that he was using due care at the time of [an] accident, if this counted as 'impeachment' the exception would swallow the rule." *See id.* (citation omitted). Ultimately, whether evidence of subsequent remedial measures is admissible for impeachment purposes will depend on the evidence and argument offered by Defendants at trial. *See Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1208 (11th Cir. 1995) ("The trial court . . . acted properly in cautioning Morbark's attorney that, if feasibility ever became an issue, evidence of subsequent remedial measures would be allowed."); *Stecyk v. Bell Helicopter Textron, Inc.*, No. 94-CV-1818, 1998 WL 744087, at *13 (E.D. Pa. Oct. 23, 1998) (in case arising from fatal crash of experimental military aircraft, admitting evidence of subsequent remedial measures "for the limited purpose of rebutting the affirmative defense raised by defendants" that they "warned the United States of the consequences of the design choices").

Thus, the Court will defer ruling on whether evidence of 3M's discontinuation of sales of the CAEv2 may be used for impeachment. Plaintiff should request to be heard outside the jury's presence before attempting to present any such evidence.

Plaintiffs may, on the other hand, question witnesses as to why 3M never recalled the CAEv2. Rule 704 prohibits evidence of subsequent remedial measures that "are *taken*." Thus, Defendants *failure* to recall the CAEv2 is not remedial or limited by Rule 407. Moreover, Defendants' argument that such evidence is irrelevant and violates Rule 403 is without merit. Evidence that Defendants did not take steps to prevent servicemembers' use of CAEv2 that remained in the military's inventory is highly probative of Plaintiffs' claims and Defendants' government-fault defenses. *See, e.g.*, O.C.G.A. § 51-12-5.1(b); Ky. Rev. Stat. § 411.186(2).

**Plaintiffs' Motions**

**C.    Motion to Exclude Generalized Evidence Unconnected to Plaintiffs**

Plaintiffs move to exclude two categories of argument and evidence relating to the military. First, they move to exclude evidence or argument of generalizations about the Army, the military, or servicemembers that is not connected to Plaintiffs. Second, they move to exclude evidence or argument of the military's alleged violations of its rules, regulations, or standards. For the following reasons, the motions are granted, in part.

1.   <u>Evidence or argument of generalizations about the Army, military, or servicemembers</u>

No witness, expert or lay, will be permitted to offer an opinion at trial regarding the Army Hearing Program ("AHP") implementation that exceeds the scope of the witness's personal knowledge. As explained in the Court's prior orders on the parties' *Daubert* challenges, *see* ECF Nos. 1651 & 1690, there simply is nothing quantifiable or verifiable anywhere in the evidentiary record to support generalized and broad-based conclusions about the Army, military, or servicemembers. No expert has performed independent research on the AHP or its impact on hearing-related injuries in soldiers and no expert relies on any such research study for his/her opinions. For the most part, the witnesses who seek to give these opinions rely merely on a handful of anecdotal criticisms of the AHP's implementation. For instance,[6] Dr. Battler testified in her deposition that, based on her personal experience with the Rapid Fielding Initiative in 2008, servicemembers were "often" provided CAEv2 without proper instruction and fitting. *See* Dr. Battler Depo. Tr. at 43–49. She also testified, based on an email she received from LTC Tuten stating that earplugs were provided to soldiers with no instructions, that "I guess if it's in an email from Colonel Tuten, then I guess it's happened." *See* Dr.

---

[6] The Court has already provided examples of this type of improper testimony from Defendants' experts. *See* ECF No. 1651.

Battler Depo. Tr. at 30–31.[7] Neither Dr. Battler nor any other witness may extrapolate from their limited personal experiences to offer generalized opinions about the AHP's implementation.

Certain experts rely on a 2011 Government Accountability Office Report (the "GAO Report" or "Report") to support their generalized opinions about the Army Hearing Program and how it failed to protect soldiers from hearing-related injuries. But the GAO Report does not support these experts' opinions. The GAO Report is simply an audit or a survey of *the DoD's* hearing conservation efforts, with certain recommendations to Congress pertaining specifically to the DoD, *not the Army*. While the GAO Report does comment on the Army's hearing conservation efforts, those comments are based on an evaluation of the AHP at two installations where the GAO reviewers interviewed a small number of servicemembers who gave their personal opinions about certain aspects of the AHP. *See, e.g.*, GAO Report at 13 ("Hearing conservation personnel at one of the Army bases we visited recounted a

_____

[7] Dr. Battler also offered the following explanation of her opinion that alleged shortcomings in the Army's hearing conservation efforts during the initial deployment for the Global War on Terror resulted in a dramatic increase in hearing loss among soldiers in 2003:

> I pulled these numbers historically from the DOEHRS data repository. I was obviously not in the Army in 2002. But if the earplugs were not available and not fitted, and there was a war, and the hearing loss increased, and that was not the case when those hearing protection devices were fitted, then, to me, that's a significant correlation.

*See* Dr. Battler Depo. Tr. [ECF No. 1663-7] at 54–55. This opinion is due to be excluded because it constitutes improper expert testimony by a lay witness and, beyond that, it is pure speculation.

story . . . ."), 33–34 (indicating that the reviewers visited Fort Meade and Fort Carson and interviewed 12 military and civilian audiologists and 123 servicemembers "across each of the armed services"). There is no evidence that the GAO reviewers' observations of alleged shortcomings in the AHP's implementation at Fort Meade and Fort Carson affected soldiers throughout the Army or, more importantly, any of the Plaintiffs. Moreover, the GAO Report does not conclude that the AHP was deficient to the extent that any soldier was placed at risk and that fact cannot be reasonably inferred from the Report. The Report and the opinions on which it is based are therefore due to be excluded. *See United States v. Frazier*, 387 F.3d 1244, 1265 (11th Cir. 2004) (affirming exclusion of expert's opinion where the expert "never explained just how his own experience, or the texts he mentioned" supported his opinion); *see also Ferguson v. Bombardier Servs. Corp.*, 244 F. App'x 944, 950 (11th Cir. 2007) (in suit brought by personal representatives of passengers killed in a crash of an Army aircraft, affirming exclusion of an Army Safety Center Report on the crash "[g]iven the lack of any indicia of reliability" regarding the report's findings relating to the cause of the crash).

Additionally, the Court finds that the GAO Report is due to be excluded under Rule 403. For the reasons previously stated, it is not probative of the AHP's overall success or failure, let alone with respect to any Plaintiff, and any probative value is substantially outweighed by the danger that the jury will be swayed by the Report's

"aura of special reliability and trustworthiness." *See Gehl ex rel. Reed v. Soo Line R.R. Co.*, 967 F.2d 1204, 1208 (8th Cir. 1992) (quoting *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (affirming exclusion of Department of Transportation Safety Assessment under Rule 403); *see also United States v. Jones*, 664 F.3d 966, 975 (5th Cir. 2011) (affirming exclusion of GAO reports "in light of the reports' limited probative worth"); *United States v. Wiszowaty*, 506 F.3d 537, 541 (7th Cir. 2007) (affirming exclusion of GAO report that was "confusing and irrelevant"); *Eason v. Flemings Cos., Inc.*, 4 F.3d 989 (5th Cir. 1993) ("[B]ecause the GAO report is a *general* attack on EEOC investigations, it would have been reasonable for the district court to conclude that the report was not sufficiently probative of the EEOC's investigation of [the plaintiff's] charges.").

    2.   <u>Evidence or argument of military violation of military rules, regulations, or standards</u>

    Plaintiffs also move to exclude three categories of testimony and related argument about the Army's alleged non-compliance with military rules, regulations, and standards. First, Plaintiffs move to exclude Defendants' case-specific experts' testimony about whether the Army's regulations were violated in Plaintiffs' cases. Second, Plaintiffs move to exclude Defendants' general military culture experts' testimony about other instances of military non-compliance based on their personal experiences. Third, Plaintiffs move to exclude lay witness testimony from military audiologists that the military violated its rules and regulations based on their

personal experiences. Plaintiffs argue that this evidence should be excluded under Rules 702 and 403. The Court agrees, in part.

The Court finds that Defendants' case-specific experts' opinions that the military's alleged non-compliance with hearing protection device fitting and training put Plaintiffs at greater risk of sustaining a hearing impairment is due to be excluded because it is unhelpful. "The helpfulness prong of the [*Daubert*] inquiry requires that an expert's testimony involve matters beyond the understanding of the average lay person." *Coggon v. Fry's Elecs., Inc.*. No. 1:17-CV-3189, 2019 WL 2137465, at *3 (N.D. Ga. Feb. 6, 2019) (citing *Frazier*, 387 F.3d at 1262). Thus, "expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Id.* (quoting *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908 (11th Cir. 1995)). In denying Plaintiffs' motions for summary judgment on Defendants' government-fault defenses, the Court agreed with Defendants that their affirmative defenses relating to the Army's alleged failure to fit and/or train Plaintiffs do not require expert testimony. *See, e.g.*, Order at 6–8, Estes, 7:20cv137, ECF No. 59. Accordingly, because Defendants' case-specific experts' opinions on the Army's alleged non-compliance are not necessary, they are not helpful and must be excluded under Rule 702. *See Coggon*, 2019 WL 2137465, at *4 (excluding opinion of "professional safety expert witnesses" relating to a

business's failure to take certain safety precautions to prevent a trip and fall because the opinions were "limited to matters of common understanding and would not assist the trier of fact").

However, Defendants' experts may—consistent with the Court's prior Orders—testify as to the implementation of the Army's hearing conservation efforts "to the extent [that testimony] is reliably based on their experience with and knowledge of the programs." *See* ECF No. 1651 at 2. This testimony is admissible for the limited purpose of "assisting the jury with understanding the Army's safety and hearing conservation programs." *See id.* Similarly, lay witnesses may testify as to their personal experiences with and knowledge of the Army's hearing conservation efforts. Importantly, however, as noted, this testimony is not probative of whether the Army's alleged non-compliance caused Plaintiffs' injuries absent a connection between the witnesses' personal experiences and the Plaintiffs' cases. Absent evidence of such a connection, any argument or testimony inferring a causal link between these witnesses' personal observations and the Plaintiffs' injuries amounts to improper speculation and will not be permitted.

## F.2    Motion to Exclude Lovejoy Report

Plaintiffs move to exclude a March 2007 report written by James Lovejoy (the "Lovejoy Report"). Lovejoy is an industrial hygienist with more than two decades experience in evaluating and ensuring the effectiveness of hearing conservation

programs. *See* Lovejoy Depo. Tr. at 234:22–235:10. At the time he authored the Report, Lovejoy was an industrial hygienist in safety oversight security operations at the Idaho National Laboratory ("INL").[8] *See* Lovejoy Depo. Tr. at 34:24–35:1. In that role, Lovejoy was responsible for evaluating and minimizing potential exposure to hazards associated with the INL's security organization, including noise exposure from firearms and weapons systems. *See* Lovejoy Depo. Tr. at 35:4–37:19. The Lovejoy Report sets out the methodology, results, and conclusion of Lovejoy's study of whether the CAEv2 provides adequate hearing protection when used to protect against impulse noise generated by small arms fire using blank ammunition. *See* Lovejoy Report at iii.

Plaintiffs argue that the Lovejoy Report should be excluded because (1) Lovejoy has not been disclosed as an expert, (2) the Lovejoy Report's findings do not satisfy the qualification, reliability, and helpfulness requirements of Rule 702 and *Daubert*, (3) the Lovejoy Report is inadmissible hearsay that does not meet the public-records exception, and (4) the Lovejoy Report would confuse and mislead the jury. Defendants respond that the Lovejoy Report is admissible under the

---

[8] The INL is part of the United States Department of Energy's complex of national laboratories. *See General Information*, Idaho National Laboratory, https://inl.gov/about-inl/general-information/ (last visited Mar. 3, 2021). The INL is the nation's leading center for nuclear energy research and development. *Id.*

public-records exception as "factual findings from a legally authorized investigation." *See* Fed. R. Evid. 803(8)(A)(iii). The Court agrees with Defendants.

First, the Lovejoy Report is the result of a "legally authorized investigation." *See* Lovejoy Depo. Tr. at 50:3–7 ("Q. So the investigation reported in this study was authorized by the Department of Energy under the contract number listed on the bottom of the report; is that right? A: That is correct."). Second, the Lovejoy Report sets out factual findings and conclusions regarding the CAEv2's effectiveness for INL protective security forces activities. *See Mamani v. Sánchez Bustamante*, 968 F.3d 1216, 1241 n.27 (11th Cir. 2020) ("[O]pinions and conclusions based on factual findings are also admissible" under Rule 803(8)(A)(iii)) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988)). Finally, the Court finds that Plaintiffs have not met their burden to demonstrate "that the source of information or other circumstances indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(8)(B); *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347 (11th Cir. 2020) ("The plain language of Rule 803(8)(B) . . . provides that the burden of demonstrating a lack of trustworthiness is on the party opposing admission.").

The crux of Plaintiffs' challenge to the Lovejoy Report's trustworthiness and their argument under Rule 403 is that Lovejoy is not qualified and did not apply a proper methodology. The Court is not persuaded.  Government reports admitted under Rule 803(8) are not subject to the gatekeeper provisions of Rule 702 and

*Daubert* because they "represent the outcome of a governmental process and were relied upon for non-judicial purposes."[9] *See Christopher Phelps & Assocs.*, 492 F.3d 532, 542 (4th Cir. 2007); *see also In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1240 (E.D.N.Y. 1985) ("[P]ublic officials who are scientists generally perform their duties accurately and faithfully."). Moreover, as Lovejoy testified in his deposition, he "spent months preparing the methodology" he used in drafting the Lovejoy Report because he "wanted to develop a comprehensive study that would be useful for our management" and "tried to make sure that if we were going to utilize [the CAEv2], that we would be protected." *See* Lovejoy Depo. Tr. at 240:2–242:9.

Accordingly, the Lovejoy Report satisfies Rule 803(8) and does not violate Rule 403. Plaintiffs' motion to exclude it under Rules 403 and 802 is denied.

**SO ORDERED**, on this 7th day of March, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[9] Plaintiffs also argue that Defendants' experts cannot reasonably rely on the Lovejoy Report under Rule 703 "given the unreliability of Lovejoy's testing and his lack of expertise." Pltfs. Resp. at 13 n. 55. The Court disagrees. Plaintiffs' criticisms of an expert's reliance on the Lovejoy Report bears on the weight, not the admissibility, of that expert's testimony. *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017).