## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Estes*, 7:20cv137 *Hacker*, 7:20cv131 *Keefer*, 7:20cv104 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This Order addresses the following motions in limine for the upcoming bellwether trial, beginning March 29, 2021: Defendants' II, IV-V, VIII, X-XI, XIII, XV, XVII-XVIII, XIX, XX-XXIV, and XXVI-XXVII; and Plaintiffs' A(1)-(4), B(1)-(4), D(1)-(3), E(1)-(2), G(1)-(2), (5), and (8), H(2)-(3), and I(2). A list of motions that the parties must be prepared to discuss at the pretrial conference is also included.[1]

**Defendants' Motions**

## II.  Evidence or Argument that Hacker's Alleged Injuries Arose Anywhere But Kentucky in 2006

**DENIED**.[2] *See* Order, ECF No. 1599 at 7; Joint Stip., ECF No. 1597 at 1.

---

[1] Additionally, rulings on the following motions will follow by separate order: Defendants' I, III, IX, XII, XXVIII-XXIX; and Plaintiffs' E(3), F(1), G(7), and I(1).

[2] Notwithstanding this ruling, any testimony given by a Plaintiff at the choice of law evidentiary hearing may be used at trial for impeachment.

## IV.    Statements by Mrs. Estes' Father

Defendants move to exclude statements by Mrs. Estes' deceased father. Plaintiffs consent to the exclusion of these statements.  Defendants' motion to exclude the statements is **GRANTED**.

## V.    Evidence of the Estes Family's Religious Upbringing and Beliefs

Defendants' motion to exclude evidence of the Estes' family's religious upbringing and beliefs is **GRANTED** with respect to any argument that evidence of the Estes' faith supports their propensity to tell the truth.  "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."  Fed. R. Evid. 610.  In all other respects, the motion is **DENIED**.

## VIII.    Evidence of the 1993 Fine Imposed on Cabot Safety Corporation

In 1993, the DOJ and EPA fined the corporate predecessor to Aearo, Cabot Safety Corporation ("Cabot"), for labeling its foam earplug with an NRR that was too high.  Defendants argue evidence about this incident is irrelevant and inadmissible under Rule 404(b).  The Court disagrees.

A party cannot use evidence of a "crime, wrong, or other act" to prove a person's character or propensity to act in accordance with that character.  Fed. R. Evid. 404(b)(1).  However, this type of evidence may be admissible for other purposes, such as proving motive, intent, plan, knowledge, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b)(2).  Rule 404(b) "is a rule of inclusion, and

[relevant prior bad acts] evidence, like other relevant evidence, should not be lightly excluded" when it is central to a party's case. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). The test for the admissibility of prior bad acts evidence requires a showing that: (1) the evidence is relevant to an issue other than the defendant's character; (2) there is sufficient evidence from which a jury could find that the defendant committed the extrinsic act; and (3) the probative value of the evidence is not substantially outweighed by the potential for undue prejudice. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008).

Regarding the first requirement, evidence about the 1993 fine is relevant. Elliott Berger and Ron Kieper both worked for Cabot at the time. Berger participated in the original labeling decision that led to the fine, which allegedly involved reporting the highest NRR achieved for the foam earplug over the course of "16 to 18" tests, and he retested the earplug with NIOSH's supervision (at the behest of the EPA), which resulted in a lower NRR and the fine for having previously reported a higher one. *See* Berger Dep., ECF No. 1674-18 at 9. This evidence is highly probative here for the non-character purposes of showing Defendants' knowledge (in that both Berger and Kieper knew from the fine that selectively reporting the highest test results violates EPA regulations), motive, intent and absence of mistake when Berger and Kieper carried out and reported the labeling tests for the CAEv2 just seven years later.

As for the second requirement, the evidence would support a jury finding that Defendants committed the acts that led to the 1993 fine.  Cabot was responsible for the tests and ultimately decided which test results to report, and Berger previously testified to the underlying facts that gave rise to the fine.  *See United States v. Chilcote*, 724 F.2d 1498, 1502 n.2 (11th Cir. 1984) ("[A defendant's] own statement, admitting that he committed the act . . ., is sufficient to justify a jury finding that he committed the act.").  Finally, the probative value of this evidence is not outweighed by the risk of undue prejudice.  Indeed, there is little likelihood of the evidence causing *undue* prejudice at all—it is "not of a heinous nature, likely to incite the jury to an irrational decision," *see United States v. Mitchell*, 666 F.2d 1385,1390 (11th Cir. 1982), nor will it be cumulative or otherwise confusing to the jury, *see United States v. Tunsil*, 672 F.2d 879, 881 (11th Cir. 1982).  Any potentially prejudicial effect from the admission of this evidence may be mitigated by an appropriate cautionary instruction to the jury, which will be given, if requested.  *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993).

In sum, the Court finds the evidence of the 1993 fine imposed on Cabot Safety Corporation is relevant and admissible under Rule 404(b).  Defendants' motion in limine to exclude this evidence is **DENIED**.

## X.      Motion to Exclude Evidence of Alleged Injuries of Others, Including the Number of Claimants

Defendants move to exclude evidence of alleged injuries to other CAEv2 users and to preclude any reference to the total number of claimants in this multidistrict litigation and the related Minnesota state court litigation. Defendants argue that the other users' alleged injuries are irrelevant, constitute inadmissible hearsay, and that admission of this evidence would violate Rule 403. Defendants further argue that any reference to the total number of claimants would violate Rule 403 because it lacks any probative value, and its introduction would be highly prejudicial to defendants by creating the inference that defendants must have engaged in tortious conduct. Plaintiffs counter by citing Eleventh Circuit precedent that "[e]vidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involves, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990). However, "because of the potential prejudicial impact of prior occurrences or accidents, such evidence is only admissible if conditions substantially similar to the occurrence caused the prior accidents." *See id.* at 649. Under the "substantial similarity" doctrine, this type of evidence is admissible if the proponent demonstrates that: (1) the circumstances of the prior incidents are substantially similar to those at issue in the present action;

(2) the prior incidents are not too remote in time; and (3) the evidence must be more probative than prejudicial. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1998); *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997).

The Court finds that Defendants' motion is not ripe for decision at this point because no specific similar occurrences have been raised. In light of the fact-intensive nature of determining similar occurrence relevance, the Court cannot yet determine the admissibility of such evidence.[3] *See Ray v. Ford Motor Co.*, No. 3:07cv175, 2011 WL 6183099, at *1 (M.D. Ala. Dec. 13, 2011) (reserving judgment on motion in limine to exclude evidence of other similar incidents where "no specific similar occurrences have been raised"); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004, 2010 WL 1962943, at *2 (M.D. Ga. May 14, 2010) ("Plaintiffs must establish that prior or subsequent incident evidence is substantially similar for it to be admitted."). Moreover, the Court cannot at this

---

[3] "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). Importantly, however, "[s]imilarity of conditions marks the beginning, not the end, of a court's inquiry with respect to the admissibility of prior incidents." *Martin v. Altec Indus., Inc.*, No. 1:03-CV-331, 2005 WL 6038744, at *9 (N.D. Ga. Dec. 30, 2005). For example, evidence of prior incidents may be excluded if it is "not probative because of the necessity for a considerable amount of extrinsic evidence to determine whether the incidents [are] sufficiently similar to meet the standards of [Rule] 403" or if "such evidence is needlessly cumulative." *See id.* (quoting *Wilson v. Bicycle S., Inc.*, 915 F.2d 1503, 1510 (11th Cir. 1990)).

point determine whether Plaintiffs will be able to overcome a hearsay objection.[4]

*See Salinero v. Johnson & Johnson*, No. 1:18-cv-23643, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) ("[E]vidence of lawsuits is generally considered inadmissible hearsay." (citation omitted)); *Ray*, 2011 WL 6183099, at *1; *cf. Godelia v. Zoll Servs., LLC*, No. 16-60471, 2019 WL 3883682, at *3 (S.D. Fla. Aug. 16, 2019) (admitting evidence of similar occurrences contained in documents "created and maintained" by defendants as opposing party statements and as business record exceptions to the hearsay rule).

Accordingly, the Court reserves judgment on this issue. The parties are directed to be prepared to discuss this matter in detail, including specific evidence sought to be introduced, at the pretrial conference.

## XI.    Evidence of Falco's Termination

Falco was terminated from his position in 2010 for "inappropriate use of the company's computer system." Plaintiffs have agreed that the specific reason for his termination is not relevant—since it was not based on job performance or the CAEv2—but argue the *fact* that he was terminated for violating 3M's business conduct policies is relevant to his credibility. Defendants seek to exclude the fact

---

[4] Evidence of other claims might be used for impeachment if Defendants open the door for its use at trial. *See Gutierrez v. Galiano v. Enters. of Miami, Corp.*, No. 17-24081, 2019 WL 3302325, at *3–4 (S.D. Fla. July 23, 2019); *Rushing v. Wells Fargo Bank, N.A.*, No. 8:10-cv-1572, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012).

that Falco left 3M involuntarily, as irrelevant and unduly prejudicial. This is incorrect. The fact that Falco was terminated is probative of his credibility, bias, and motive to lie, all of which bear on the accuracy and truth of his testimony. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *United States v. Ruan*, 966 F.3d 1101, 1164 (11th Cir. 2020) (same regarding proof of bias or motive to lie). The jury is entitled to know that Falco was employed by Defendants and was terminated for violating 3M's business conduct policies, but no more. So limited, the probative value of this evidence substantially outweighs any potential for undue prejudice. If requested, an appropriate cautionary instruction will be given about the purposes for which the jury may consider this evidence. Defendants' motion to exclude evidence of Falco's termination is **DENIED**.

## XIII.   Evidence and Argument Relating to "What Is Your Favorite Sound" Video

Defendants move to exclude a video entitled "What Is Your Favorite Sound" which was created by 3M to explain the importance of hearing conservation. *See* ECF No. 1664-14. In the video, actors depict the effects of hearing related injuries, including tinnitus and hearing loss. Defendants argue that the video should be excluded under Rules 402 and 403 because it does not purport to represent any

individual's actual experience with tinnitus or hearing loss and will therefore not be helpful to the jury in understanding the extent of Plaintiffs' alleged injuries. Plaintiffs respond that the video is probative of "Defendants' knowledge of the severity, permanence, and progression of damages intrinsic to tinnitus and hearing loss." The Court agrees.

The video is probative of Defendants' knowledge at the time the CAEv2 was sold, which directly informs the jury's assessment of Defendants' decisions with respect to the design of the CAEv2. *See, e.g., Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003) ("[I]t is the legal duty of a manufacturer to use reasonable care to protect against foreseeable dangers . . . . [T]he risk-utility test examines what the manufacturer knew or should have known *at the time the product was sold*."); *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 736 n.6 (Ga. 1994) (listing "the gravity and severity of the danger posed by the design" as a factor to be considered under the risk-utility analysis); Ky. Rev. Stat. § 411.186(2)(a)–(b) ("In determining the amount of punitive damages to be assessed, the trier of fact should consider . . . . [t]he likelihood at the relevant time that serious harm would arise from defendant's misconduct [and] [t]he degree of defendant's awareness of that likelihood."). The Court finds that the probative value of the video is not substantially outweighed by a danger of undue prejudice.  Defendants' motion to

exclude evidence and argument relating to the "What's Your Favorite Sound" video
is **DENIED**.

## XV.    Arguments that Defendants Were Required, Should Have, or Actually Fitted or Trained Plaintiffs

Defendants move to exclude any evidence or argument that they were required
to, should have, or actually did fit or train individual soldiers on properly using the
CAEv2.  Regarding evidence that Defendants were "required to" or "should have"
personally fit or trained individual soldiers, the motion is **GRANTED**.  Plaintiffs do
not appear to argue for admission of evidence or argument of that nature, and no
evidence of any such requirement has ever been presented to the Court.  However,
evidence or argument that Defendants "actually did" fit or train individual soldiers
is relevant to Plaintiffs' claims, including their claims for misrepresentation, fraud,
and warranty.   Defendants' motion to exclude on this basis is **DENIED**.

## XVII.    Evidence Related to Family Member Pain or Anguish

Defendants move to exclude evidence on how Plaintiffs' alleged injuries
affected their family members and friends.  Defendants argue that such evidence is
not relevant, and any minimal probative value is outweighed by its prejudicial
impact on Defendants.  Plaintiffs respond that they are entitled to introduce evidence
"on the intrinsic impact of Plaintiffs' injuries on their personal relationships,
including with family."  Pls.' Resp., ECF No. 1674 at 17.    The Court agrees with
Defendants, in part.  Evidence of physical or emotional injuries of any person other

than the Plaintiffs is not relevant, and any marginal probative value it may have is substantially outweighed by the danger of unfair prejudice.  *See Worley v. State Farm Mut. Auto. Ins. Co*., No. 3:12-CV-1041-J-MCR, 2014 WL 12619898, at *1 (M.D. Fla. May 12, 2014).  Defendants' motion to exclude evidence of physical or emotional injury of any person other than Plaintiffs is **GRANTED**.  However, evidence of how Plaintiffs' alleged injuries have impacted their own relationships with others is relevant to certain of Plaintiffs' claims for emotional damages.  *See* Fed. R. Evid. 401.  Defendants' motion to exclude this evidence is **DENIED**.

## XVIII.   Evidence Related to AEARO's Start and Stop of Non-CAEv2 Tests

Defendants move to exclude any evidence or argument relating to Aearo stopping its non-CAEv2 REAT tests, on grounds that this topic is irrelevant, and any marginal relevance is substantially outweighed by unfair prejudice and the likelihood of confusing and misleading the jury.  Fed. R. Evid. 401, 402, 403.  The Court disagrees.  Evidence that Defendants had an unwritten policy or practice of stopping REAT tests with undesirable results prior to their completion for all hearing protectors, including the CAEv2, is relevant to Plaintiffs' claims that Defendants intentionally used in-house testing to label the CAEv2 with an unrepresentative NRR, as well as their punitive damages claims.  Moreover, as Plaintiffs point out, the "unwritten nature of the policy directly rebuts" Defendants' argument that the National Voluntary Laboratory Accreditation Program (NVLAP) approved this

testing procedure.  The probative value of this evidence far outweighs any marginal risk of unfair prejudice.  Defendants' motion as to evidence related to Aearo's start and stop of non-CAEv2 REAT tests is **DENIED**.

## XIX.    Evidence or Argument that the CAEv2 Did Not Comply with Any Contractual Specification

Defendants argue that Plaintiffs should be judicially estopped from arguing that the CAEv2 failed to meet any contractual specification at trial because they previously and successfully took the position, in connection with the motions for summary judgment on the government contractor defense, that there were "no specifications" for the CAEv2, and that there was "no contract" between Aearo and the government.  The Court disagrees.

Judicial estoppel is an equitable doctrine "intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment." *Slater v. U.S. Steel Corp*., 871 F.3d 1174, 1176 (11th Cir. 2017).  As relates to this litigation, the doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  In this context, a three-factor test "typically informs" a court's decision about whether judicial estoppel applies: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have successfully persuaded the court to accept the earlier position; and (3) the party

would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped from advancing the inconsistent position.[5]  *Slater*, 871 F.3d at 1181 (quoting *New Hampshire*, 532 U.S. at 750-51).  These factors are neither "inflexible prerequisites" nor an "exhaustive formula."  *Id*.  The decision to impose judicial estoppel is within the discretion of the district court, and driven by the specific facts of a case.  *New Hampshire*, 532 U.S. at 750-51.

Based on the specific facts of this litigation, Defendants' argument fails on the first factor.  Plaintiffs' summary judgment position was not that there was never *any* contract between Aearo and the government related to the CAEv2.  Rather, they argued that there was no *design* contract, *see* Pl. Summary Judgment Mot., ECF No. 1072-73 at 23-24, and that the later sales contracts and solicitation for the already existing CAEv2 (including the MPID) could not amount to procurement contracts with reasonably precise specifications for the product's design and development, *see id*. at 25-26.  Nothing about Plaintiffs' earlier positions regarding the absence of a *design* contract is at all inconsistent with them offering evidence or argument at trial that the CAEv2 did not conform with the performance specifications of Defendants' later *sales* contracts/solicitation with the government.   Because there is no

---

[5] The Eleventh Circuit employs a slightly different, two-part test in cases involving allegedly inconsistent statements in prior proceedings (*e.g.*, in prior bankruptcy proceedings) to which the party seeking to invoke the doctrine was not a party.  *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181-82 (11th Cir. 2017).

inconsistency, judicial estoppel is not appropriate here.  Defendants' motion to exclude evidence or argument that the CAEv2 did not comply with any contractual specification is **DENIED**.

## XX.    Evidence Suggesting that the Rise in Hearing Loss in the 2000s Was Due to Combat Arms Earplugs

Defendants move to exclude evidence regarding an overall rise in hearing loss in the 2000s and to preclude Plaintiffs from "impl[ying] that the rise in hearing loss in the 2000s was due to the CAEv2" under Rules 402 and 403. Plaintiffs respond that they do not intend to introduce such evidence but assert that they "should be entitled to rebut" any argument by Defendants that "hearing loss and tinnitus was (and remains) the number-one cause for VA disability claims or that hearing loss in the military is inevitable." Based on Plaintiffs' response, Defendants' motion is **DENIED WITHOUT PREJUDICE**. Plaintiffs should request to be heard outside the presence of the jury before attempting to present any such evidence or argument at trial.

## XXI.    Evidence Regarding the Removal of the Flange-Fold Fitting Tip from Retail Packaging in 2012

In approximately 2012, 3M removed the "fitting tip" regarding folding back the opposing flanges before insertion from the CAEv2's retail packaging. Defendants move to exclude any discussion of their removal of the fitting tip on grounds that it would confuse the jury and waste time because none of the Plaintiffs

purchased a pair of CAEv2 with the post-2012 instructions and there is no evidence that any of these Plaintiffs saw the instructions.  The Court disagrees.  Evidence regarding removal of the flange-fold fitting tip from retail packaging is relevant to Plaintiffs' claims that the "fitting tip" was never an essential component of the product's instructions or label, and it undermines Defendants' position that the "fitting tip" was widely known and disseminated.  Therefore, presentation of this evidence will not waste time.  Moreover, Defendants will have the opportunity to explain their decision to remove the "fitting tip" from retail packaging and also to tell the jury whether (and if so, how) the "fitting tip" was communicated to the military.  Consequently, there is little danger of confusing the jury.  In short, the probative value of this evidence substantially outweighs any marginal risk of confusion or wasting time.  Defendants motion to exclude evidence regarding the removal of the flange-fold fitting tip from retail packaging in 2012 is **DENIED**.

## XXII.    Evidence Relating to Method B Test Data

Defendants move to exclude evidence related to REAT tests and NRR ratings calculated using Method B protocol (untrained, inexperienced subjects) on grounds that the evidence: (a) is irrelevant, because military service members are trained and experienced users of hearing protectors; and (b) will confuse the jury, waste time at trial and prejudice Defendants, who will have to "spend significant time explaining" the difference between NRRs calculated with Method B data and those calculated

with other testing protocols.  *See* Def. Mot., ECF No. 1664 at 31.  Consistent with the Court's prior Order, REAT tests and NRR ratings calculated with Method B are relevant and will help the jury evaluate the attenuation provided by the CAEv2.  *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 765019, at *21 (N.D. Fla. Feb. 28, 2021).  Dr. David Eddins, Plaintiffs' expert, explained that Method B testing better approximates service members' real world experience with hearing protection than does the alternative, Method A.  *Id.*  At the time the CAEv2 was developed, the Army required that evaluations of the "potential effectiveness of hearing protectors" be "based on [M]ethod B (subject fit)" protocols.  *See* Department of the Army Pamphlet 40-501, dated December 10, 1998, ECF No. 1630-6 at 4, 13.  Moreover, Defendants themselves used Method B to test the CAEv2 and their lead scientist, Dr. Elliott Berger, has previously opined that Method B (as opposed to Method A) more closely corresponds to the real-world hearing protection achievable by "groups of informed users in workplace hearing conservation programs."  *See In re 3M*, 2021 WL 765019, at *21.  Under these circumstances, evidence relating to Method B test data cannot be considered unduly prejudicial.  As with any evidence "beyond the understanding and experience of the average citizen," the differences between the various test protocols can be readily explained to the jury.  *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985).  Defendants' motion to exclude evidence relating to Method B test data is **DENIED**.

## XXIII.    Evidence Regarding Aearo's Use of Product-Specific Testing Panels and Use of Employees and Their Family Members as Test Subjects

Defendants move to exclude evidence that Aearo assigned individual test subjects to product-specific testing panels, and also used employees and their family members as test subjects.  As to the former, they argue the evidence is irrelevant to Plaintiffs' claims because Aearo began using product-specific panels after the CAEv2 labeling tests in 2000, and any marginal relevance is outweighed by the potential for this evidence to confuse and mislead the jury into believing that Aearo used product-specific test panels for its earlier REAT tests of the CAEv2.  As to the latter, they argue that the test subjects' identities are irrelevant and unduly prejudicial because they would serve only to "cast Defendants in a negative light by insinuating that Aearo used its employees so that they (or a relative) would manipulate their own results in order to deliver higher NRRs."  Def. Mot., ECF No. 1664 at 32.  The Court disagrees.  Defendants' REAT testing policies and procedures—including their policies regarding test subject and panel composition—are highly relevant to Plaintiffs' negligence and punitive damages claims, which are based on allegations that Defendants manipulated REAT test results for multiple hearing protectors, including the CAEv2, in many ways for many years, not just on a single labeling test in 2000.  Defendants will have the opportunity to explain the bases for their testing policies and procedures to the jury.  And the jury will decide whom to believe.  The Court discerns no risk of *unfair* prejudice from the admission of this evidence.

Defendants' motion to exclude evidence regarding Aearo's use of product-specific testing panels, and its use of employees and their family members as test subjects, is **DENIED**.

## XXIV.    Assertions of Privilege

Defendants request that: (1) any privilege marking on otherwise-admissible documents be redacted, and (2) any privilege objections at trial be argued outside of the jury's hearing.  In response, Plaintiffs defer to the Court's discretion regarding the form of privilege objections.  At this stage of the proceedings, the Court cannot anticipate what the trial testimony will be and whether or how privilege issues will arise.  However, the Court agrees with Defendants that the jury should not be made aware of privilege invocations by either side, given the risk that an adverse or negative inference might be drawn.  *See, e.g., Broyles v. Cantor Fitzgerald & Co.*, 2016 WL 7656028 (M.D. La. Sept. 8, 2016).  Accordingly, Defendants' request for redaction of privilege designations is **GRANTED**.  The Court **DEFERS RULING** on the manner in which privilege objections will be addressed at trial, and will discuss this matter with the parties during the pretrial conference.

## XXVI.    Evidence Related to Quality Control for Manufacturing of the CAEv2

Defendants argue that any evidence, expert or fact testimony, or argument related to alleged manufacturing defects or failed quality control in the manufacturing process for the CAEv2 should be excluded under Rules 401 and 403

because it has no relevance to Plaintiffs' design defect claims in this litigation.  This argument fails.   Consistent with the Court's prior Order discussing Plaintiffs' experts' opinions on Defendants' quality assurance testing, evidence of this nature is relevant to Plaintiffs' claims "that Defendants' overall quality assurance process for the CAEv2 was substandard," *see In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 765019, at *32 (N.D. Fla. Feb. 28, 2021); *see also id*. at *35, which bears on Plaintiffs design defect, negligent testing, breach of warranty, and failure-to-warn claims.  This evidence is not unduly prejudicial.  Defendants motion to exclude evidence related to quality control for manufacturing of the CAEv2 is **DENIED**.

## XXVII.     Inflammatory Political Remarks

**GRANTED**, without opposition.

## Plaintiffs' Motions

### A.     Motions to Prohibit Prejudicial Litigation Conduct

**1.     Motion to bar improper bolstering of 3M's "good character."**

**GRANTED**.

**2.     Motion to prohibit references to the personal lives/backgrounds of the attorneys, including experience in the U.S. military or Alabama football.**

**GRANTED**.

**3.**     **Motion to prohibit counsel for Defendants from referring to 3M as "we," "us," or "our."**

**GRANTED**.  While the Court recognizes there may be inadvertent references when counsel for either side are referring to something they have done in the course of the litigation on behalf of their clients, counsel should avoid making a personal connection with their clients in front of the jury.  Should this become a repetitive issue, counsel will be admonished in front of the jury.

**4.**     **Motion to exclude preemptive bolstering of the credibility of 3M's witnesses.**

**GRANTED**.  While it is not exactly clear what Plaintiffs are referring to, in general, bolstering of a witness is improper under Federal Rule of Evidence 404, unless and until the witness's character has been challenged.  To the extent any party intends to offer "bolstering-type" evidence, the party must advise the Court in advance.

**B.     Motions to Bar Evidence or Argument on a Verdict's Impact on Defendants**

**1.**     **Motion to prohibit evidence or argument that a verdict may result in increases in the price of military goods and services or otherwise impact the military's ability to equip servicemembers.**

**GRANTED**.  However, Defendants may argue the financial impact to their business from a punitive damages award but they cannot suggest how that will in turn impact the public, including the jurors themselves, employees, or the costs of other goods.

**2.      Motion to prohibit argument suggesting jurors will pay for a verdict against Defendants through higher costs for military goods.**

**GRANTED**.

**3.      Motion to prohibit argument that a verdict against Defendants may result in the higher costs of Defendants' other products.**

**GRANTED.**

**4.      Motion to prohibit argument that a potential verdict against Defendants may result in Defendants firing employees.**

**GRANTED.**

**D.      Motions to Exclude Settled Issues**

**1.      Motion to exclude evidence or argument that military or government had ultimate responsibility over design or labeling, prohibited instructions, or provided design "specifications" in advance of the development of the CAEv2.**

The parties must be prepared to discuss this matter at the pretrial conference.

**2.      Motion to bar untimely disclosed evidence of 3M's knowledge of testing.**

The parties must be prepared to discuss this matter, including specific evidence that Defendants intend to introduce, at the pretrial conference.

**3.      Motion to prohibit fact testimony inconsistent with factual admissions in Defendants' 30(b)(6) testimony.**

Plaintiffs seek an order precluding Defendants from introducing any evidence or testimony that contradicts the deposition testimony of witnesses designated as corporate representatives under Federal Rule of Civil Procedure 30(b)(6).   They

argue that a corporation is bound by its 30(b)(6) testimony, which they construe to mean that "the corporation cannot later proffer new or different" testimony unless it proves that the new or different information was inaccessible or not previously known to it. *See Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998). In the Court's view, Plaintiffs overstate the binding effect of 30(b)(6) testimony.

The Eleventh Circuit has not addressed whether the testimony of a Rule 30(b)(6) representative constitutes a judicial admission, with conclusive effect, or merely an evidentiary admission, which can be contradicted or explained at trial. *See Ussery v. Allstate Fire & Cas. Ins. Co*., 150 F. Supp. 3d 1329, 1344-45 (M.D. Ga. 2015) (distinguishing judicial and evidentiary admissions). Every other circuit to consider the issue has treated 30(b)(6) testimony as an evidentiary admission that is binding in the sense that it can be used against the corporation, but not "in the sense that it precludes the [corporation] from [later] correcting, explaining, or supplementing" that testimony. *See R&B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 786-87 (8th Cir. 2001); *see also Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1260-61 (10th Cir. 2016); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35-36 (2d Cir. 2015); *A.I. Credit Corp. v. Legion Ins. Co*., 265 F.3d 630, 637 (7th Cir. 2001). In other words, a corporation "is no more bound than any witness is by his or her deposition testimony. A witness is free to testify differently

from the way he or she testified in a deposition, albeit at the risk of having his or her credibility impeached by the introduction of the deposition." *See R & B Appliance*, 258 F.3d at 786; *see also Cont'l Cas. Co. v. First Fin. Emp. Leasing, Inc*., 716 F. Supp. 2d 1176, 1190-91 (M.D. Fla. 2010). Plaintiffs' motion to prohibit fact testimony inconsistent with factual statements in Defendants' 30(b)(6) testimony is **DENIED**.

**E.    Motions to Exclude "Mind-Reading"**

**1.    Argument that an individual's position or knowledge reflects the position or knowledge of the U.S. government or military as a whole**

Plaintiffs move to exclude various witnesses' *Touhy*[6] testimony that is "likely to confuse the jury on the state of mind or knowledge of the government as a whole." The motion is **GRANTED**. No argument or testimony suggesting that any witness speaks on behalf of the United States government or military will be permitted. Additionally, consistent with the Court's prior orders on the parties' *Daubert* challenges, no witness may testify about the United States government or military's state of mind (e.g., what they believed, intended, knew, should have known, wanted to know, or did not know about various propositions). *See In re 3M*, 2021 WL 830309, at *6 (N.D. Fla. Mar. 4, 2021).

---

[6] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

   **2.      Evidence from 3M corporate witnesses that purports to describe the intentions, interests, concerns, or decisions of Dr. Ohlin or of any other government entity or agent**

   Plaintiffs move to exclude as inadmissible hearsay and improper speculation certain evidence of the state of mind, knowledge, or intentions of the military or its agents, including Dr. Ohlin.[7] In particular, Plaintiffs move to exclude the following evidence of Dr. Ohlin's out-of-court statements: (1) Elliott Berger's testimony about what Dr. Ohlin "determined," "accepts," "would not accept," or "was interested in" regarding hearing protection devices and Dr. Ohlin's reasons for those positions, *see* ECF Nos. 1663-15, 1663-16, 1663-17; and (2) Marc Santoro's testimony about what Dr. Ohlin "requested" regarding the CAEv2's packaging and instructions and Dr. Ohlin's reasons for those requests, ECF No. 1663-9.[8]  Defendants counter that the witnesses' testimony as to Dr. Ohlin's out-of-court statements is based on their personal knowledge and does not constitute hearsay because Dr. Olin's statements are (1) orders or requests regarding the type of earplug he wanted,  (2) involved in making a contract for buying the CAEv2, or (3) admissible to show their effect on Aearo personnel regarding what they believed the military wanted regarding a plug, what the military relied on or knew about, as well as to show the effect such

---

   [7] Dr. Ohlin is deceased.

   [8] Plaintiffs also cite to various instances of testimony regarding what "the French and United States militaries were aware of," what "the French Army thought," or what "the military was aware of." The Court reiterates that this type of state-of-mind testimony will not be permitted.

statements had on Aearo in designing the CAEv2. The Court is not persuaded and finds that Dr. Ohlin's out-of-court statements are inadmissible hearsay.

An out-of-court statement is not hearsay if it is admitted for some purposes other than the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Thus, "an out-of-court statement that is either (1) offered to show its effect on the listener or (2) more in the nature of an order or a request that, to a large degree, is not even capable of being true or false, is not hearsay." *United States v. Hart*, No. 20-11096, -- F. App'x ----, 2021 WL 373097, at *1 (11th Cir. Feb. 3, 2021) (citing *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015)); *see United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986) (same). Similarly, a "verbal act . . . to which the law attaches independent significance" is not hearsay. *United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989).

With that said, the Court is not persuaded that Dr. Ohlin's statements would be offered solely for the fact that they were made and the effect they might have had on the listener. *Cf. Cruz*, 805 F.2d at 1478. Rather, it appears the real reason Defendants seek to offer Dr. Ohlin's statements is to prove the truth of the matters asserted in them. *See McKay v. Tracor, Inc.*, No. CV-03-BE-0590, 2005 WL 8158361, at *1 (N.D. Ala. Mar. 22, 2005) (rejecting government contractor's argument that evidence of a then-deceased military officer's directive would be offered to show that the contractor designed the product a certain way "because the

military told it to" and finding instead that "the real reason Defendants offer [the officer's] statement" was to show "that the United States did, in fact, approve" the design).

For starters, Defendants intend to introduce these statements to show that the military approved the CAEv2's design. *See, e.g.*, Berger Depo. Tr. (12/12/2019) at 61 ("Q. So one of the design options that the Army could have asked for would have been to make plugs with different sizes, that is, where the flanges would be different sizes, correct? A. Correct. Q. All right. But Doug Ohlin is saying that he is interested in and wants a two-ended plug, one size, correct? A. Correct."). Additionally, Defendants intend to introduce these statements to show that Defendants did not include instructions in the CAEv2's packaging because "the military audiologists were going to take on that responsibility of individually training every soldier." *See* Santoro Depo. Tr. (12/3/2019) at 326–327. Thus, no matter the probative value to Defendants' defenses, Dr. Ohlin's statements and requests are hearsay not within any recognized exception.[9]  Plaintiffs' motion to exclude evidence certain evidence on the state of mind, knowledge, or intentions of the military or its agents, including Dr. Ohlin, is **GRANTED**.

---

[9] *Cruz* is distinguishable from this case for the same reasons it was distinguishable in *McKay*: (1) the out-of-court statements are not offered solely for the fact that they were made and their effect on the listeners, and (2) the declarant will never be available to testify to his own out-of-court statements and is not subject to cross-examination. *See* 2005 WL 8158361, at *1.

**G.     Motions to Exclude Prejudicial Evidence Relating to Plaintiffs**

**1.     Motion to exclude argument or evidence about how, when, or under what circumstances Plaintiffs chose or employed their attorneys, including any referral arrangements or other counsel the Plaintiffs may have retained other than their current counsel.**

Plaintiffs move to exclude all evidence and argument regarding how, when, or under what circumstances Plaintiffs chose or employed their attorneys as irrelevant under Rules 401 and 402 and unduly prejudicial, misleading, and confusing under Rule 403.  Defendants respond that they seek only to introduce evidence of *when* Plaintiffs first retained counsel, and argue this bears on Plaintiffs' credibility.  Additionally, for Estes and Keefer, Defendants argue that the point in time at which Plaintiffs retained counsel is relevant to Defendants' statute of limitations defense.  The Court disagrees.

First, when Plaintiffs chose or employed their attorneys is irrelevant to the Plaintiffs' credibility.  *See In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *5 (E.D. Pa. June 3, 2016); *see also Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 1:12-CV-3096-MHC, 2015 WL 11199154, at *3 (N.D. Ga. Feb. 3, 2015) (granting plaintiffs' motion to exclude reference as to when, why, or how plaintiff retained counsel to represent him as irrelevant and inadmissible under Rule 402).  Second, it is also irrelevant to the statute-of-limitations defense in both Estes' and Keefer's cases.  With respect to Estes, the discovery rule applies to Estes' claims, so the statute of limitations did not begin to run until Estes knew or

reasonably should have known the nature of his injury *and* the causal connection between his alleged hearing injuries and the alleged negligent conduct of Defendants. *See In re 3M*, 2021 WL 753563, at *2-3 (N.D. Fla. Feb. 2, 2021) (Rodgers, J.).   Although when Estes knew or reasonably should have known the latter remains an outstanding issue for the jury, Estes testified at his deposition that he did not speak to a lawyer about his claims until *after* a relative brought the litigation surrounding the CAEv2 to his attention.  Estes Dep., ECF No. 41-2 at 10-11; *see also In re 3M*, 2021 WL 753563 at *4 (concluding that "the evidence is equally susceptible of showing that he neither knew nor should have known that his alleged injuries were caused by Defendants' alleged wrongful conduct until a relative brought the litigation surrounding [the] CAEv2 to his attention in 2019").  *Id.* at *4. Thus, when Estes chose or employed his attorneys has no bearing on when the statute of limitations clock started in his case and is irrelevant and inadmissible under Rule 402.

The same is true for Keefer.  Like Estes, the discovery rule applies to Keefer because there is evidence that his alleged hearing injuries involve a continuing tort. *See, e.g.*, Keefer Dep. Tr. 318:13-20 (describing his tinnitus as "[p]rogressively worsening" since 2015 such that "the ringing and the buzzing is getting louder, more noticeable more of the day"); *id.* at 306:9-12 (testifying that with respect to his tinnitus, "the problems have progressed"); *id.* at 301:16-302:4 (testifying that

"there's been progressive signs that [the hearing loss] is getting worse" and the "[r]inging and buzzing in [his] ears constantly has gotten louder")). However, Keefer testified that he learned of the litigation involving the CAEv2 through an email or message from a friend. *Id.* at 374:19-376:19. Only after receiving his friend's message did he contact attorneys regarding the litigation. *See id.* Thus, like with Estes, when Keefer chose or employed his attorneys is not relevant to the statute of limitations issue in his case and is inadmissible under Rule 402.

Although the Court infers from Defendants' response, which was limited only to evidence regarding *when* Plaintiffs' retained counsel, that they do not intend to offer evidence and argument regarding how or under what circumstances Plaintiffs chose or employed their attorneys, the Court nonetheless finds such information irrelevant and unduly prejudicial, and thus inadmissible under Rules 402 and 403. *See In re: Tylenol*, 2016 WL 3125428 at *5; *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig.*, No. 3:09-CV-10012-DRH, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011).

Plaintiffs' motion to exclude evidence and argument about how, when, or under what circumstances Plaintiffs chose or employed their attorneys is **GRANTED**.

**2.     Motion to exclude the census and bellwether selection forms/sheets.**[10]

Plaintiffs move to exclude their case census forms and bellwether selection sheets "because their prejudicial value and potential for confusion far outweighs their relevance." Pls.' Mot., ECF No. 1663 at 24. More specifically, Plaintiffs argue that the census form has minimal probative value because it was completed without access to personnel and medical records from the Department of Defense (DoD) and Department of Veteran's Affairs (VA), and subsequent discovery supersedes the information provided in the census form. Plaintiffs also contend that the bellwether selection sheet is prejudicial because they were used for bellwether selection only and completed by counsel, and its admission would confuse the jury. Defendants respond that they are entitled to use statements in these documents for impeachment because such statements are not hearsay per Rule 801(d)(2), and Plaintiffs swore to the veracity of their statements in both documents: for the census form, by signing a declaration under penalty of perjury per 28 U.S.C. § 1746; and for the bellwether selection sheet by testifying under oath at their depositions that they supplied the information in their sheets to counsel. The Court agrees that Plaintiffs may be cross-examined regarding statements in the census forms, but not the bellwether selection sheets.

---

[10] Plaintiffs use the term "bellwether selection form." For clarity and consistency, the Court will refer to the form by its label, the "bellwether selection sheet."

First, statements in Plaintiffs' census forms qualify as admissions of a party opponent and are therefore not hearsay because Plaintiffs either made the statement or provided the information underlying the statement and otherwise confirmed that they believed it to be true. See Fed. R. Evid. 801(d)(2)(A), (B). The census form itself contains a declaration that each Plaintiff signed, affirming that, under penalty of perjury, "all the information provided in response to [the census form questions] is true and correct to the best of my knowledge, information and belief formed after a reasonable inquiry." *See* Case Census Form, ECF No. 775-1 at 6.[11] *Cf. Geis v. Tricam Indus., Inc.,* No. CIV.A. 09-1396 MLC, 2011 WL 2971247, at *2 (D.N.J. July 20, 2011) (finding challenged statements in medical records did not fall under the scope of Rule 801(d)(2) because "the records themselves do not indicate that [plaintiff] was the one to make the challenged statements"). Plaintiffs' argument that the census forms were completed before extensive discovery and without access to records goes to credibility and weight. Plaintiffs' motion to exclude Plaintiffs' census forms is **DENIED.**

The same is not true of the bellwether selection sheet, however. The bellwether selection sheet was created as a tool for bellwether selection; it was never intended to be used as evidence in this litigation, which the Court made clear from

---

[11] Hacker and Keefer also testified that they provided the answers on the form at their depositions. *See* Hacker Dep., ECF No. 1673-8 at 6-7; Keefer Dep., ECF No. 1673-10 at 8-9.

the beginning of the bellwether selection process.  In fact, the undersigned cautioned the parties that she "didn't expect to see [the bellwether selection sheets] in cross-examination at trial."  8th Case Mgmt. Conf. Tr., ECF No. 1663-48 at 5-6.  Plaintiffs' motion to exclude Plaintiffs' bellwether selection sheets is **GRANTED**.

**5.     Motion to exclude evidence or argument of Plaintiffs' non-military noise exposure in the absence of presentation of causal evidence.**

**DENIED**.

**8.     Motion to exclude evidence of alcohol and tobacco use.**

Plaintiffs move to exclude evidence of Hacker's and Keefer's alcohol and tobacco use under Rule 403.  Hacker abused alcohol from 2004 to 2014, and as of 2017 still drank some alcohol; he also used tobacco from around 2000 to 2018. Hacker Dep., ECF No. 1663-54 at 18-19; Hacker Medical Records, ECF No. 1663-73.  Keefer used to drink alcohol, but stopped "[s]everal years ago."  *See* Keefer Dep. ECF No. 1663-55 at 373-74.  Defendants' experts also observed evidence of Keefer's oral tobacco use.  *See* LaBorde/Jones Rep. (Keefer), ECF No. 1663-62 at 12, 23.

Plaintiffs argue that evidence of these Plaintiffs' alcohol and tobacco use has little probative value because it is not relevant to causation, and no expert has opined that Plaintiffs' tobacco use is relevant to damages.  Additionally, Plaintiffs contend that any little probative value of this evidence is outweighed by its potential to unfairly prejudice Plaintiffs and confuse and mislead the jury, and thus should be

excluded under Rule 403. Defendants do not respond to Plaintiffs' motion to exclude evidence of their alcohol use. Plaintiffs' motion with respect to evidence of alcohol use is **GRANTED**.

With respect to evidence of Plaintiffs' tobacco use, Defendants argue that tobacco is ototoxic and therefore relevant to showing an alternative cause to Plaintiffs' alleged hearing injuries. The Court disagrees. Defendants have not presented any evidence that tobacco is ototoxic such that it could be *an alternative cause* of Plaintiffs' hearing injuries, other than one sentence from their experts' report for Keefer stating that "use of tobacco may be associated with tinnitus and hearing loss." *See* LaBorde/Jones Rep. (Keefer), ECF No. 1663-62 at 23. As Plaintiffs point out, however, Defendants' experts disclaim any causal connection between Keefer's tobacco use and alleged hearing injuries. *See* LaBorde Dep., ECF No. 1663-75 at 6-7. Moreover, the Court hosted a second Science Day where both parties and their experts presented evidence of whether a relevant scientific association exists between certain medications and illicit substances—identified by Defendants—and hearing loss and/or tinnitus. Tobacco was not identified on Defendants' list, and the Court found that "cigarette smoke" and nicotine were, "at most," marginally relevant. *See* Order, ECF No. 1330. In any event, any limited probative value of this evidence is outweighed by the risk of unfair prejudice and confusing the jury on the relationship between tobacco and Plaintiffs' injuries. *See*

Fed. R. Evid. 403, advisory committee notes (1972 proposed rules) (explaining "unfair prejudice" means "an undue tendency to suggest decision on an improper basis").

Additionally, Defendants' argument that Plaintiffs' experts should have accounted for Hacker's and Keefer's tobacco use in opining on causation is meritless. The Court has already concluded that Plaintiffs' experts' differential etiologies are reliable, in part because they adequately and reliably ruled out other "factors that could have been the *sole* cause" of their injuries. *See In re 3M*, 2021 WL 765019 at *12-14 (emphasis added) (internal quotation marks and citation omitted). Again, Defendants have not presented any evidence that tobacco could have caused Plaintiffs' hearing injuries, so Plaintiffs' experts' failure to account for tobacco use in their causation opinions does not change the Court's findings. *See id.*

Defendants do not respond to, and thus seem to concede, Plaintiffs' argument that tobacco use is also not relevant to damages. Plaintiffs' motion to exclude evidence of Hacker's and Keefer's tobacco use is **GRANTED**.

**H.     Motions Applicable to Luke Estes**

**2.     Motion to exclude evidence or argument relating to the disposition of Estes's "pocket talker."**

**DENIED**.

    **3.**      **Motion to exclude evidence relating to Estes's father's disabilities.**

    **GRANTED**, without opposition.

**I.**      **Motions Applicable to Stephen Hacker**

    **2.**      **Motion to exclude records from Hacker's 2019 Mountainview visit for kidney issues.**

    **DENIED.**

**<u>Motions for Discussion at Pretrial Conference</u>**

    The parties should be prepared to discuss the following motions at the pretrial

conference:

**1.**      **Defendants**
      a.      Evidence regarding Defendant's financial condition (VII)

      b.      Evidence of alleged injuries of others, including the number of claimants (X)

      c.      Evidence related to Dr. Fallon's downloading of documents (XII)

      d.      Assertions of privilege (XXIV)

      e.      Inflammatory comments regarding DoD and VA's record-keeping practices (XXV)

**2.**      **Plaintiffs**
      a.      Motion to exclude evidence or argument that military of government had ultimate responsibility over design or labeling, prohibited instructions, or provided design "specifications" in advance of the development of the CAEv2 (D1)

      b.      Motion to bar untimely disclosed evidence of 3M's knowledge of testing (D2)

c.    Motion to exclude evidence or argument that Plaintiffs' recovery should be impacted by disability or other collateral benefits or otherwise affected by operation of law (G3)

d.    Motion to exclude VA Compensation & Pension documents and determinations (G4)

e.    Motion to exclude unattributed statements in medical records (G6)

f.    Motion to exclude evidence or argument relating to erectile dysfunction, virginity, fertility, Viagra, or other issues relating to sex between Mr. and Mrs. Estes (H1)

g.    Motion to exclude evidence or argument that Estes was diagnosed with or suffers from clinical anxiety or depression (H4)

h.    Motion to exclude evidence of irrelevant and prejudicial events in Hacker's life (I3)

i.    Motion to exclude evidence of Hacker's family issues (I4)

j.    Motions to exclude evidence and argument relating to Keefer's alleged bad acts (J1)

k.    Motions to exclude evidence and argument relating to Keefer's past job performance (J2)

l.    Motion to exclude evidence and argument relating to the reasons for Keefer's divorces (J3)

**SO ORDERED**, on this 10th day of March, 2021.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**