UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to:<br>*Estes*, 7:20cv137<br>*Hacker*, 7:20cv131<br>*Keefer*, 7:20cv104 | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**ORDER**

This Order addresses the following motions in limine for the upcoming bellwether trial, beginning March 29, 2021: Defendants' IX, XIV, XXVIII, and XXIX; and Plaintiffs' E(3), F(1), G(7), and I(1).[1]

**Defendants' Motions**

**IX. Character Evidence relating to Plaintiffs' military service unconnected to their alleged CAEv2 use, including commendations**

Defendants move to exclude mention of Plaintiffs' military commendations and any military activities unrelated to the parties' claims or defenses. Defendants claim that this evidence would constitute inadmissible character evidence designed to bolster Plaintiffs' credibility. Defendants also argue that such evidence is not relevant to any claims, defenses, or damages, and it presents a high danger of undue

---

[1] This Order resolves all remaining motions in limine, except for those set for discussion at the pretrial conference.

prejudice. Plaintiffs argue in response that a person's general background, which would include Plaintiffs military service and commendations, is important to give the jurors context. The Court disagrees.

Courts typically consider evidence of military or police commendations as impermissible character evidence, beyond ordinary background evidence. *See Leahy v. Salem*, 2011 WL 13263541, at *4 (E.D. Pa. Feb. 4, 2011) (finding plaintiffs could not introduce evidence of plaintiff's military commendations or possible acts of heroics because such evidence did not speak to his truthfulness); *Selliken v. Country Mut. Ins. Co.*, 2014 WL 12634309, at *2 (E.D. Wash. Jan. 21, 2014) (finding evidence of plaintiff's honorable military service was not probative, and was prejudicial, in a lawsuit unrelated to plaintiff's military service); *see also United States v. Brown*, 503 F. Supp. 2d 239, 242 (D.D.C. 2007) (finding evidence of prior police commendations and awards went beyond background evidence). The Court agrees and also finds that any probative value of this type of evidence is substantially outweighed by the risk unfair prejudice. *See* Fed. R. Evid. 403. Defendants' motion to exclude evidence of Plaintiffs' military commendations and awards for background purposes is **GRANTED**. With that said, testimony by a Plaintiff that he was promoted during his military service and/or honorably discharged from the military is admissible as background evidence.

## XIV.   Arguments regarding 3M's alleged monopoly of hearing protection device market

Defendants move to exclude evidence or argument about Defendants' share of the hearing protection device market as a "monopoly" or "virtual monopoly." Defendants argue "Plaintiffs have erroneously implied that Defendants unfairly affected competition and dominated the hearing protection market for the military." *See* Def. Mot., ECF No. 1664 at 25. Additionally, because antitrust violations are not at issue in this litigation, Defendants argue this evidence is irrelevant. Plaintiffs argue in response that the evidence is relevant to show Defendants' "recognition" that there were safer alternative earplug designs and for purposes of punitive damages. *See* Pl. Resp., ECF No. 1674 at 15. The Court agrees, in part.

The term "monopoly" has legal significance in the context of antitrust law. Because no antitrust violations are at issue in these proceedings, the use of the term or any derivative of the term, such as "virtual monopoly" or "monopolistic practices" is precluded. *See Aetna, Inc. v. Blue Cross Blue Shield of Michigan*, 2015 WL 1646464, at *11-12 (E.D. Mich. Apr. 14, 2015). The probative value of these terms is substantially outweighed by the risk of confusing or misleading the jury. *See SolidFX, LLC v. Jeppesen Sanderson*, Inc., 2014 WL 1319361, at *3 (D. Colo. Apr. 2, 2014) ("[O]veruse of anti-trust terms – such as monopoly and relevant market – are likely to confuse the jury about the real issues in the case…"). However, Plaintiffs may submit evidence of Defendants' market share provided the evidence

is relevant to motive and punitive damages.  Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## XXVIII.   References to the bellwether process

**GRANTED, IN PART.**  In its previous denial of Plaintiffs' motion to exclude the case census forms, the Court concluded that the fact that the census forms were completed before extensive discovery and without access to records goes to credibility and weight.  *See In re: 3M*, 2021 WL 918214, at *10 (N.D. Fla. Mar. 10, 2021).  In the same vein, the parties will be permitted to provide context for when the forms were completed in the litigation, i.e. before records were obtained.  The parties, however, will not be permitted to discuss the bellwether selection process.

## XXIX.   Discovery process and disputes

**GRANTED, IN PART.**  Defendants' motion is granted with respect to any reference to the subject and outcome of discovery disputes litigated before the Court, including but not limited to motions to compel and motions for protective orders, and the Court's rulings on those motions.  *See Amegy Bank Nat. Ass'n v. DB Priv. Wealth Mortg., Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 791505, at *3 (M.D. Fla. Feb. 24, 2014) (excluding as unduly prejudicial reference to any discovery objections, including privilege objections, made in pretrial discovery and any of the court's rulings on such objections); *Eli Rsch., LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2015 WL 6501070, at *2 (M.D. Fla. Oct. 22, 2015) (similar).

The parties are permitted to introduce evidence showing that certain data, memoranda, instructions, labels, and correspondence do not exist, including by referencing that they were requested in discovery but not produced. However, the parties cannot suggest to the jury that one side or the other was entitled to certain discovery that was not produced if the Court ruled otherwise on a discovery motion. Additionally, the Court cautions the parties that repeated introduction of such evidence, to the extent it becomes cumulative and unnecessary, will not be permitted under Rule 403.

**Plaintiffs' Motions**

**E.    Motions to Exclude "Mind-Reading"**

**3.    Motion to exclude hearsay testimony on the knowledge and decisions of NVLAP**

Plaintiffs move to exclude testimony from Elliott Berger regarding NVLAP audits, including testimony that NVLAP has "approved of" specific Aearo testing practices. *See* Pl. Mot., ECF No. 1663 at 21 (internal quotes omitted). Plaintiffs argue that Berger has no foundation to testify as to the knowledge and impressions of the NVLAP. Defendants respond that Berger's foundation for testifying on NVLAP's audits of Aearo's EARCAL lab and policy manual is based on his personal knowledge. Defendants state that Berger will not offer testimony regarding the state of mind or knowledge of NVLAP; rather, he will testify that "NVLAP has

accredited, approved procedures of, audited, and given comments regarding the lab." Def. Resp., ECF No. 1673 at 12.

Consistent with the Court's previous Order, Berger can testify to *his understanding* of EARCAL's laboratory NVLAP accreditation based on his personal experience working in, and managing, the EARCAL lab. *See* ECF No. 1680 at 11-12. Berger, however, is not permitted to testify as to the knowledge or state of mind of any NVLAP auditor or the NVLAP. Berger is also not permitted to provide testimony consisting of out-of-court statements made by any NVLAP auditor that constitute hearsay, including statements about the lab's testing practices.[2]

Defendants argue that comments from an NVLAP auditor regarding the EARCAL lab do not constitute hearsay because their "significance lies solely in the fact that [they were] made." *See* Def. Resp., ECF No. 1673 at 12 (quoting FRE 801, 1972 advisory committee note to (c)) (internal quotes omitted). An out-of-court statement is not hearsay if it is admitted for some purposes other than the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Thus, "an out-of-court statement that is either (1) offered to show its effect on the listener or (2) more in the nature of an order or a request that, to a large degree, is not even capable of being true or false,

---

[2] Specifically, Berger cannot testify that "NVLAP feels we do a pretty good job." *See* Berger Dep., ECF No. 1663-17 at 4.

is not hearsay." *United States v. Hart*, No. 20-11096, -- F. App'x ----, 2021 WL 373097, at *1 (11th Cir. Feb. 3, 2021) (citing *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015)); *see United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986) (same). However, it is not readily apparent to the Court how an out-of-court statement made by an NVLAP auditor regarding Aero's EARCAL lab is relevant solely because the statement was made, and Defendants have not provided specific examples for the Court to consider. As a result, Plaintiffs' motion to exclude hearsay testimony on the knowledge and decisions of the NVLAP, to extent based on hearsay, is **GRANTED**.

### F.     Motions to Exclude Prejudicial Non-Scientific Evidence

####   1.     Motion to exclude lay opinion on the CAEv2's efficacy

Plaintiffs move to exclude testimony and documents containing lay opinions on the CAEv2's efficacy. Plaintiffs argue that (1) the lay witnesses' opinions on the CAEv2's efficacy is "based on scientific, technical, or other specialized knowledge" and therefore inadmissible under Rule 701; (2) anecdotes or statements about the CAEv2's efficacy contained in various emails, PowerPoint presentations, and reports or studies not generated by experts disclosed and qualified in this litigation constitute inadmissible hearsay; and (3) these opinions should be excluded under Rule 403 because they "would only confuse and mislead jurors on such scientific issues." Defendants respond that the witnesses' testimony is relevant because it

rebuts Plaintiffs' claims that the CAEv2 "will not properly fit anyone" and is admissible under Rule 701 because it describes their personal experiences with the CAEv2 and is not based specialized knowledge within the scope of Rule 702. Defendants further respond that the documents discussing the CAEv2's efficacy are admissible under the business-records exception. The Court agrees with Defendants, in part.

The Court will permit lay witnesses to testify regarding their personal use of the CAEv2 and how the earplug worked for them. *See* Fed. R. Evid. 701. "Under Federal Rule of Evidence 701, a lay witness may give testimony in the form of an opinion as long as the opinion is '(a) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " *United States v. Umbach*, 708 F. App'x 533, 545 (11th Cir. 2017). Subsection (c) is intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id.* (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendments). The lay witnesses' opinions regarding their personal use of the CAEv2 and opinions that are rationally based on their perception of its efficacy satisfy Rule 701's requirements because an opinion that ambient sounds are reduced while wearing an earplug does not require specialized

knowledge.[3] Plaintiffs' criticisms that the lay witnesses' opinions lack a technical/medical basis are not grounds for excluding the testimony but instead are fodder for cross-examination. *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1221 (11th Cir. 2003). Moreover, the Court finds that the testimony is probative of Plaintiffs' claims that the CAEv2 "will not properly fit anyone" and that its probative value is not substantially outweighed by a danger of jury confusion. Plaintiffs' motion to exclude lay witness testimony regarding the witnesses' personal use and perception of the CAEv2's efficacy is **DENIED**.

However, the Court finds that lay opinions regarding the CAEv2's efficacy contained in the documents cited by Plaintiffs must be excluded because they are inadmissible hearsay. One of the documents is a PowerPoint presentation created by LTC Lorraine Babeu. *See* ECF No. 1663-34. At her deposition, LTC Babeu testified that she prepared the PowerPoint for use at a conference in 2005, for the purpose of presenting information about a study she conducted on the CAEv2. *See* Babeu Depo. Tr. at 109, 150. According to LTC Babeu, before she gave the PowerPoint presentation, Elliott Berger (an Aero employee) "reviewed and corrected" the study "so that it presented the [CAEv2] in a proper light." *See id.* at 152–55. In light of this, the Court finds that LTC Babeu's PowerPoint presentation does not satisfy the

---

[3] To be clear, no lay witness may offer an opinion of the *overall* effectiveness of the CAEv2. *See* Fed. R. Evid. 701(a). The Court will give a limiting instruction in connection with this type of testimony to ensure the jury is not confused or misled.

business records exception because (1) Defendants have not made a sufficient showing that the PowerPoint was made in the course of a regularly conducted business activity, *see Lion Oil Trading & Transp. Inc.*, No. 98 Civ. 11315, 2011 WL 855876, at *6 (S.D.N.Y. Feb. 11, 2011) (finding PowerPoints were not business records because they were "unique responses to unusual or isolated events"); and (2) Berger's involvement in ensuring that the study underlying the PowerPoint "presented the [CAEv2] in a proper light" undermines the PowerPoint's trustworthiness and reliability, *see id. See United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996) ("The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence.").

Additionally, assuming the other documents cited by Plaintiffs satisfy Rule 803(6)'s requirements,[4] the statements regarding the CAEv2's efficacy contained within the documents are inadmissible hearsay-within-hearsay. *E.g.*, ECF No. 1663-26 at 2 (PowerPoint slide containing a statement regarding the CAEv2's efficacy "from a soldier in Iraq"); ECF No. 1663-31 at 11 (email from a soldier in Iraq stating

---

[4] "[T]he mere fact that a business record was created for a business entity does not necessarily satisfy the requirements of Rule 803(6)(B) that 'the record was kept in the course of a regularly conducted activity of a business' and Rule 803(6)(C) that 'making the record was a regular practice of that activity.' " *United States v. Parnell*, No. 1:13-CR-12, 2015 WL 3447250, at *9 (M.D. Ga. May 28, 2015); *see Candy Craft Creations, LLC v. Gartner*, No. 2:12-cv-91, 2015 WL 6680883, at *2 (S.D. Ga. Nov. 2, 2015) ("[M]any courts have recognized that merely because a party's employee regularly receives and sends e-mails does not equate to a finding that all such e-mails fall within the business records exception to the hearsay rule.").

that the CAEv2 earplugs "work great in this environment!"); ECF No. 1663-33 at 23 (email from a solider sharing "two success stories" regarding the CAEv2); *see* Fed. R. Evid. 805; *Braggs v. Dunn*, No. 2:14cv601, 2017 WL 426875, at *4 (M.D. Ala. Jan. 31, 2017) ("[I]f business records include statements made by individuals who were not engaging in a regularly conducted business activity, those statements amount to hearsay within hearsay."); *Candy Craft Creations*, 2015 WL 6680883, at *3 (excluding emails between plaintiffs' representatives and their customers regarding questions and complaints about the plaintiffs' products because "[d]efendants have not established that the customers whose complaints are recorded . . . were acting in the scope of any regularly conducted business activity").

Plaintiffs' motion to exclude LTC Babeu's PowerPoint presentation and documents containing anecdotal hearsay regarding the CAEv2's efficacy is **GRANTED**.

G.  **Motions to Exclude Prejudicial Evidence Relating to Plaintiffs**

7.  **Motion to exclude evidence or argument regarding speculative future treatments**

Plaintiffs move to exclude testimony from Defendants' vocational expert, Michael Shahnasarian that "[t]here are ways to mitigate problems that could potentially arise in the future that have not manifested that would negate a loss of earning capacity, but at this point it would be speculative." *See* Pl. Mot., ECF No. 1663 at 30 (internal quotes omitted). Plaintiffs argue that this statement constitutes

speculative testimony of future treatment. Given the way in which this testimony came in at Shahnasarian's deposition, the Court agrees with Defendants that Shahnasarian's use of the qualifier "speculative" was in reference to his determination that the Plaintiff had sustained a loss of earnings capacity, not as a qualifier on potential future treatments.[5] Plaintiffs' motion is **DENIED**.

I.      **Motions Applicable to Stephen Hacker**

        1.      **Motion to exclude opinion testimony of undisclosed expert Dr. Cunningham**

Plaintiffs move to exclude Hacker's treating physician, Dr. Calhoun Cunningham, from testifying regarding Hacker's tinnitus, noise exposure, and use of hearing protection devices on the grounds that the testimony constitutes expert opinion beyond the scope of treatment that was not disclosed pursuant to Fed. R. Civ. P. 26(a)(2). Dr. Cunningham is an otolaryngologist specializing in otology and neurotology at Duke University Medical Center. Dr. Cunningham treated Hacker for hearing loss in 2015. *See* ECF No. 81-78 at 9. As part of his treatment, Dr. Cunningham diagnosed Hacker with otosclerosis of the right ear. *Id.* at 12. During a subsequent surgical operation on Hacker's inner ear, Dr. Cunningham discovered a congenital facial nerve abnormality. *Id.* at 39. Based on his treatment and

---

[5] Shahnasarian testified that "[t]here are ways to mitigate problems that could potentially arise in the future that have not manifested that would negate a loss of earning capacity, but at this point it would be speculative, based on the individual factors that I've assessed, to reach a determination that he has sustained a loss of earning capacity." *See* Shahnasarian Dep., ECF No. 1663-70 at 9.

observation of Hacker both before and during surgery, Dr. Cunningham testified that Hacker's hearing loss is due to either otosclerosis or the facial nerve abnormality. *See* Dr. Cunningham Depo. Tr. at 34. Dr. Cunningham was not designated an expert in this case and did not provide a Rule 26 disclosure.

Plaintiffs argue that Dr. Cunningham's testimony should be excluded because only Hacker's tinnitus, not his hearing loss, is at issue in this litigation and Dr. Cunningham's treatment of Hacker was limited to his hearing loss. Plaintiffs also argue that Dr. Cunningham's testimony as to whether Hacker's noise exposure or use of hearing protection devices caused his hearing loss should be excluded because it exceeds the scope of Dr. Cunningham's treatment of Hacker. Finally, Plaintiffs argue that Dr. Cunningham's testimony about Hacker's tinnitus, noise exposure, and use of the CAEv2 should be excluded under Rules 401, 403, and 602 because he only treated Hacker for hearing loss and thus has no foundation to discuss whether the CAEv2 or noise exposure caused Hacker's tinnitus. Defendants counter that Hacker's tinnitus was within the scope of Dr. Cunningham's treatment because he "evaluated Hacker's tinnitus for the purposes of his treatment." Defendants further argue that their failure to provide a summary Rule 26(a) disclosure was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The Court disagrees.

### a.  Whether Dr. Cunningham proffered expert opinions

"Treating physicians disclosed only as lay witnesses may testify only to lay facts." *Tomson v. Minn. Life Ins. Co.*, No. 6:18-cv-1719, 2020 WL 5822247, at *2 (M.D. Fla. May 14, 2020) (quoting *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1365 (S.D. Ga. 2016)). "A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 n.23 (11th Cir. 2014) (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)). "But 'a treating doctor . . . is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation.' " *Id.* (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 n.2 (7th Cir. 2004)).

The Court finds that Dr. Cunningham's testimony regarding Hacker's tinnitus exceeds the scope of his treatment. A review of Hacker's records from Duke University Medical Center and Dr. Cunningham's deposition testimony shows that Dr. Cunningham did not diagnose or treat Hacker's tinnitus. *See* ECF No. 81-78 at 9 (medical record dated 9/11/2015 listing "Hearing Loss" as "Reason for Visit" and "Otosclerosis of right ear" under "Diagnoses" and "Problem List"); Dr. Cunningham

Depo. Tr. at 34 (Q. And is it your opinion and diagnosis that in Mr. Hacker's case, Mr. Hacker's hearing loss was caused, again, either by otosclerosis or by his facial nerve abnormality? A. Yes."). It is true Dr. Cunningham testified that Hacker's facial nerve abnormality or otosclerosis *could* cause tinnitus.[6] *See* Dr. Cunningham Depo. Tr. at 34–36; *see also id.* at 46 ("[I]f you correct the hearing loss . . . oftentimes the tinnitus will improve."). But "when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317–18 (11th Cir. 2011); *see Henderson*, 409 F.3d at 1300 ("[T]he ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses." (citation omitted)).

Similarly, Dr. Cunningham's causation opinions relating to Hacker's noise exposure and use of hearing protection devices are due to be excluded. Causation opinions typically fall outside the scope of a treating physician's care and treatment and thus cross the line from lay to expert testimony. *See Bryan v. Whitfield*, No. 3:14cv341, 2015 WL 11109792, at *3 (N.D. Fla. July 15, 2015) (citing *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712–13 (11th Cir. 2008)). Indeed, as Dr.

---

[6] While it is also true, as Defendants emphasize, that Hacker's Duke medical records note his reports and denials of tinnitus, *see* ECF No. 81-78 at 6, 150, 175, and that his patient instructions state that "[m]ost patients with otosclerosis notice Tinnitus (head noise) to some degree," and "[t]he amount of Tinnitus is not necessarily related to the degree or type of hearing impairment," *see id* at 20, in the Court's view, this does not indicate that Dr. Cunningham diagnosed or treated Hacker for tinnitus *in addition to* hearing loss.

Cunningham conceded at his deposition, he never reached the opinion or conclusion that Hacker's hearing loss or tinnitus were related in any way to his use of the CAEv2. *See* Dr. Cunningham Depo. Tr. at 44–45; *see also id.* at 13 ("Q. Before you received a subpoena in this case, did you have any knowledge that Mr. Hacker is contending that a 3M product called the Combat Arms Version 2 Earplug had caused his hearing loss? A. No. I did not."). The Court therefore finds that Dr. Cunningham's causation opinions are outside the scope of his lay witness testimony as a treating physician. *See Wilson*, 303 F. App'x at 712 ("[A]lthough Dr. Meier was the treating physician, his opinion regarding the cause of Wilson's injuries was not needed to explain his decision making process, nor did it pertain to Wilson's treatment."); *Kraese v. Jialiang Qi*, No. CV417-166, 2021 WL 640826, at *3 (S.D. Ga. Feb. 18, 2021) ("[N]either Plaintiff nor Dr. Dennison demonstrated that Dr. Dennison needed to determine the cause of Plaintiff's injury to diagnose or treat her injury."). Rather, Dr. Cunningham's opinions regarding the cause of Hacker's tinnitus are merely hypotheses that cross the line from lay to expert testimony. *See Williams*, 644 F.3d at 1317–18.

**b.     Whether Defendants' failure to comply with Rule 26's disclosure requirements was substantially justified or harmless**

Under Rule 37(c)(1), the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either "substantially justified" or "harmless." *See Mitchell v. Ford Motor Co.*, 318 F.

App'x 821, 824 (11th Cir. 2009). In determining whether the failure to disclose was substantially justified or harmless, courts "consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party" that would result from the admission of the information. *See Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009).

Defendants do not argue that their failure to disclose Dr. Cunningham's expert opinions was substantially justified. They argue instead that their violation of Rule 26(a) was harmless because (1) Plaintiffs were put on notice of Dr. Cunningham's expert opinions during his deposition, and (2) Plaintiffs' experts considered Dr. Cunningham's records and testimony in forming their opinions. According to Defendants, there is therefore "no additional discovery Plaintiffs would have pursued and no further evidence they would have adduced." The Court is not persuaded. For one, allowing Dr. Cunningham to proffer expert testimony would "subvert this Court's scheduling orders, not to mention the Federal Rules of Civil Procedure." *See Kraese*, 2021 WL 640826, at *5 (quoting *Thompson v. United States*, No. 4:17-cv-63, 2019 WL 149553, at *11 (S.D. Ga. Jan. 9. 2019)). Even if the Court were to conclude that Plaintiffs are unlikely to be surprised at trial by Dr. Cunningham's expert opinions, "this does not excuse [Defendants'] fairly blatant disregard for the rules." *See Martin v. Wal-Mart Stores E., L.P.*, No. CV418-197, 2020 WL 5949222, at *4 (S.D. Ga. Oct. 7, 2020); *Kraese*, 2021 WL 640826, at *6

(finding that the plaintiff's "blatant disregard for Rule 26's requirements . . . weighs heavily in favor of excluding Dr. Dennison's expert opinions"). Moreover, without at least a summary of Dr. Cunningham's opinions or expected testimony, Plaintiffs' counsel "could not have fully prepared to depose [Dr. Cunningham] on those issues." *See Kraese*, 2021 WL 640826, at *5.

As a result, Rules 26 and 37 compel the Court to exclude Dr. Cunningham's expert testimony regarding Hacker's tinnitus, noise exposures, and use of hearing protection devices, and Plaintiffs' motion is **GRANTED**. Consequently, the Court limits Dr. Cunningham's testimony to only the facts and observations he obtained firsthand during the course of his treatment and diagnosis of Hacker.

**SO ORDERED**, on this 14th day of March, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**