IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION LIABILITY LITIGATION | CASE NO.: 3:19-MD-2885-MCR-GRJ |
| This Document Relates to: | Chief Judge M. Casey Rodgers Magistrate Judge Gary Jones |
| *Luke E. Estes* Case No. 7:20-cv-00137 | **CONFIDENTIAL - FILED UNDER SEAL** |
| *Stephen Hacker* Case No. 7:20-cv-00131 | |
| *Lewis Keefer* Case No. 7:20-cv-00104 | |

## DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MOTIONS IN LIMINE ORDERS, ECF 1693 & 1695

Defendants respectfully request that the Court reconsider three specific rulings from its prior orders on the parties' omnibus motions in limine: (1) the portion of its Order finding the six-page final CID Report admissible (ECF 1693 at 5-9); (2) the portion of its order granting Plaintiffs' motion to exclude "certain evidence on the state of mind, knowledge, or intentions of the military or its agents, including Dr. Ohlin" (ECF 1695 at 24-26); and (3) the portion of its Order excluding evidence of Hacker's alcohol use (ECF 1695 at 32-33). This Court has previously observed that, "[a]s with any interlocutory order, the district judge always remains free, in the exercise of sound judicial discretion, to alter a previously entered ruling

on a motion in limine." *Fed. Deposit Ins. Corp. v. Amos*, No. 3:12CV548-MCR/EMT, 2016 WL 7802146, at *1 (N.D. Fla. Feb. 5, 2016).  Respectfully, Defendants submit that the Court should exercise this discretion in these three narrow instances.

**I.     The final CID report relies exclusively on inadmissible hearsay for its conclusion, and without that hearsay, the document lacks any relevance**

The Court concluded that the final CID report was admissible under Rule 803(8), the "public records" exception to the hearsay rule.  Yet, the only substantive paragraph of the final report—other than a summary of the allegations in the *Moldex* qui tam complaint, and a mention of 3M's settlement with the government, both of which the Court already concluded are not admissible—is entirely hearsay.  The author of the report stated in her conclusion:

> Interviews of U.S. Government personnel confirmed that had they known about the February 2000 test results (i.e. that the CAE was too short for proper insertion in the users' ears and, therefore, did not perform well in certain individuals) on the CAE they may not have purchased the items.

ECF 1664 DX8 at 3.

In the same portion of the Order, the Court concluded that "the witness interview memos [attached to the report] are inadmissible hearsay within hearsay." ECF 1693 at 8.  Yet, the statement above is nothing more than a summary of the witness interview memos, which is no less hearsay than the memos themselves, and should therefore be exluded for the same reasons.

The Eleventh Circuit cases cited by the Court for its ruling fully support Defendants' position.  In *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1268-69 (11th Cir. 2009), the circuit court addressed the admissibility of "a summary of an August 24, 2004 interview" included in a government investigative report.  The Eleventh Circuit noted that the public records exception only applied to entries based upon the author's *own* knowledge and observations and did not apply to "a mere collection of statements from a witness."  *Id*. at 1278.  "In other words, '[p]lacing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible.'"  *Id*. (quoting *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp*. 407 F. Supp. 2d 1304, 1315 n.2 (S.D. Fla. 2005).  Thus, the Court concluded "we can say with confidence that Rules 803(6) and (8) cannot render admissible Mazer's hearsay statements contained within the report."  *Id*.; *accord Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1241 (11th Cir. 2020).

That is precisely the situation here.  SA Coleman's testimony makes clear that the above-referenced language in the final report was not based upon *her own* observations or knowledge, but was instead derived solely from summarizing her interviews with third parties—in other words, summarizing statements made by out-of-court declarants offered to prove the truth of the matter asserted:

> Q. Some of those – some of those findings are just based on what people told you, right?

3

> A. Right, during the course of this investigation, numerous interviews, and then it goes to summarize.
>
> Q. You're just summarizing what other people told you there under your interview summaries, right?
>
> A. Correct.

Ex. 1 (J. Coleman 3/3/20 Dep. Tr.) at 464:23-465:7. SA Coleman's summarizing of these third-party statements does not cure the hearsay problem because she learned the information for her conclusion solely from those third-party interviews. *See Mamani*, 968 F.2d at 1241 ("statements can be hearsay 'even though they do not explicitly paraphrase the words of others, [because] the only conceivable explanation for how [the witness] discovered this information is through listening to the statements of others.'" (quoting *United States v. Ransfer*, 749 F.3d 914, 925 (11th Cir. 2014)).

The Court's order on the admissibility of the CID report does not address the above testimony from SA Coleman, which was cited in Defendant's brief. ECF 1664 at 7. Rather, the Court's order appears to turn on the use of the word "confirmed" in the above-referenced language, which is italicized in the Court's order. ECF 1693 at 7. The word "confirmed," however, does not mean that SA Coleman had a separate, non-hearsay basis for the witness interview summary in the final report. Rather, a common meaning of the word "confirm" is to "establish the truth or correctness of something previously believed, suspected, or feared to be the

4

case."[1]  Thus, SA Coleman may have believed, suspected or feared that "had [the witnesses she interviewed] known about the February 2000 test results … on the CAE they may not have purchased the items," but she did not establish the truth or correctness of that finding until the witnesses told her.  SA Coleman confirmed that reading of the final report during her deposition, by testifying that the at-issue portion of the final report was "just based on what people told [her]," and that she was "just summarizing what other people told [her]."  Ex. 1 (J. Coleman 3/3/20 Dep. Tr.) at 53:11-21, 464:23-465:7.  Nowhere in the CID report is there an independent, non-hearsay basis for those statements that would make them independently admissible.  Thus, those "findings" must be excluded as a summary of hearsay.

Moreover, the Court's present order—which correctly excludes the hearsay interview memos, but allows in the summary of those same interviews—will cause significant prejudice to Defendants at trial.  As it stands, Plaintiffs may be able to use the interview summary to argue that the witnesses interviewed during the CID investigation may not have purchased the CAEv2 had they known about Aearo's February 2000 testing, but Defendants cannot cross examine those witnesses.  And Defendants cannot defend against that argument by pointing out that many of the

---

[1] *Confirm*, OXFORD ENGLISH DICTIONARY (2021); *see also* https://dictionary.cambridge.org/us/dictionary/english/confirm ("to prove that a belief or an opinion that was previously not completely certain is true").

witnesses who were asked that question separately stated they had no involvement in the design and development of the product, and did not have any meaningful background in the government's decision to purchase the product. *See e.g.*, Ex.1 (J. Coleman 3/3/20 Dep. Tr.) at 383:10-23, 384:4-7, 385:2-386:25.  This issue exists if the Court excludes the hearsay witness interview memos on the one hand, but allows in a summary of those same statements in the final report.  Even if Plaintiffs' use of the interview summary in the final report opens the door to introducing the portions of the witness interview memos relevant to rebut the summary, Defendants respectfully submit that the correct solution to the problem under the Federal Rules of Evidence and the Eleventh Circuit precedent cited above, is to exclude *all* of the hearsay, including the summay of the hearsay in the final report.

    Finally, once the hearsay summary of the interviews and the references to the settlement are redacted from the CID report—as both should be—the document itself loses any conceivable relevance.  At that point, the document simply confirms that an investigation occurred and lists the (already excluded) attachments.  And even if the fact of an investigation in and of itself was somehow relevant—it is not— its admission would only serve to confuse the jurors, who would inevitably wonder why the investigation took place and what it was all about—information not found in the properly redacted report.

## II. Dr. Ohlin's statements are admissible, and any concerns about their use can be addressed with a limiting instruction, not excluding them entirely

Defendants also respectfully request the Court reconsider its ruling barring testimony regarding out-of-court comments by Dr. Doug Ohlin about the design of and instructions for the CAEv2. These statements are not hearsay because Defendants will not introduce them for the truth of the matter asserted. Indeed, some of the statements—such as Ohlin's directive "not to include instructions in [the] box"—are not assertions at all. ECF PX8 at 326:19-21. An "order or a request" like this one "is not even capable of being true or false" and thus "is not hearsay." *United States v. Hart*, 2021 WL 373097, at *1 (11th Cir. Feb. 3, 2021) (per curiam). Ohlin's request not to provide instructions is significant "solely for the fact that it was made." *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986).

Other statements of Ohlin's, although phrased as assertions, are likewise "more in the nature of an order or a request." *Hart*, 2021 WL 373097, at *1. Defendants will not introduce Ohlin's statement that he "was interested in [a] two-ended plug, one-size plug" in order to prove that Dr. Ohlin did in fact have that interest on a certain date in December 1997. ECF 1663 PX16 at 61:1-2. (Although, even if Defendants were introducing the statement for that purpose, it would fall into the exception for statements "of the declarant's then-existing state of mind." FRE 803(3).) Rather, the point is that Aearo left the December 1997 meeting with the *understanding* that the Army official with responsibility for approving hearing

7

protection devices wanted a dual-ended, single-sized plug. The statement is introduced "to show its effect on the listener" and thus "is not hearsay." *Hart*, 2021 WL 373097, at *1.

Excluding these statements will prejudice Defendants at trial. Without them, it will be impossible to describe the development of the CAEv2's design. Aearo created its first dual-ended prototype shortly after the meeting with Dr. Ohlin at which he made those comments, and later shortened the earplug in response to further input from Dr. Ohlin. But in light of the Court's order, Defendants' witnesses will be limited in their ability to explain to the jury *why* the earplug was designed in the manner that it was (*e.g.*, dual-ended, single-size, non-linear).

The Court concluded that Defendants would not introduce the statements "solely" for the purpose of showing their effect on Aearo, and that "the real reason Defendants seek to offer Dr. Ohlin's statements is to prove the truth of the matters asserted in them." ECF 1695 at 25. Defendants respectfully submit that Dr. Ohlin's statements are either directives, and thus not assertions at all, or are directives phrased as assertions about Dr. Ohlin's state of mind. The only genuine assertions in the testimony at issue relate to Dr. Ohlin's "reasons" for his directives. But it is not important to Defendants whether those "reasons"—such as Dr. Ohlin's belief "that personal training was the most effective way to train the soldiers"—were valid. ECF 1663 PX8 at 326:22-327:3. The key point is that Aearo received Dr. Ohlin's

requests.  If the Court considers it necessary, it could instruct the jury not to consider the reasons Dr. Ohlin gave for his requests for the truth of the matter asserted, but only for their effect on Aearo.  The requests themselves, however, as distinct from the underlying reasons, are not hearsay at all.

The Court's order cited as support the district court's decision in *McKay v. Tracor*, 2005 WL 8158361, at *1 (N.D. Ala. Mar. 22, 2005).  Defendants respectfully submit that *McKay* is mistaken.  The statement at issue in *McKay* was a pure directive—one of the defendant's employees testified that a military officer "told [him] to set the masking time at sixty seconds." *Id*.  That statement is not an assertion, and is thus "not even capable of being true or false." *Hart*, 2021 WL 373097, at *1.  Yet the *McKay* court reasoned that the statement was not being "offered solely for the fact that it was made and the effect it might have had upon its hearer."  2005 WL 8158361, at *1 (internal quotations and citations omitted).  Instead, "the real reason Defendants offer[ed] [the] statement," the court said, was to satisfy the first element of the government contractor defense by showing "that the United States did, in fact, approve the sixty-second masking time." *Id*.

The *McKay* court was surely correct that defendants sought to admit the statement to demonstrate government approval, but it does not follow that the statement was hearsay.  The military officer's directive to set the masking time at sixty seconds could not possibly have been hearsay because it did not make an

assertion. Defendants properly sought to admit the statement to satisfy the first element of the contractor defense, because the simple fact that the directive was made was evidence that the government had approved the masking time.

Dr. Ohlin's out-of-court statements are even more clearly admissible than those in *McKay*. Defendants are no longer attempting to satisfy the first element of the contractor defense, as the *McKay* defendants were. At this stage, Defendants wish to introduce Dr. Ohlin's statements only so that they can present the full story of the design and development of the CAEv2. That story necessarily involves Dr. Ohlin's comments regarding design and instructions, and the effect Dr. Ohlin's comments had on Aearo. Absent Dr. Ohlin's comments, Defendants will be unable to fully explain *why* they acted the way they did to the jury.

### III. The Court should reconsider its ruling on alcohol use because, contrary to the order, Defendants did respond to this argument, at least for Hacker

The Order granted Plaintiffs' Motion No. 8, under the "Motions to Exclude Prejudicial Evidence Relating to Plaintiffs" category, on the ground that it was not opposed. ECF 1695 at 33 ("Defendants do not respond to Plaintiffs' motion to exclude evidence of their alcohol use. Plaintiffs' motion with respect to evidence of alcohol use is **GRANTED**.").

But Defendants did oppose the motion as to Plaintiff Hacker. ECF 1673 at 11-12. Defendants argued that all evidence relating to Hacker's conditions beyond hearing loss and tinnitus, such as anxiety and depression, should be precluded. *Id.*

10

But to the extent such evidence is admitted, Plaintiffs' motion relating to alcohol use should be denied as to Hacker:

> To the extent Hacker is permitted to present such evidence, PH4 and PC8 (as it relates to Hacker) should be denied. Hacker's alleged stress, anxiety, depression, and other potential health conditions coincide with other major life events and stressors. For example, "Hacker's alcohol abuse over the first 16 years of his military career was a major contributor to his diminished quality of life." Ex. 28 at 2. Evidence of substance abuse would rebut any claim that Hacker suffers from stress or anxiety due to the CAEv2 instead of other factors. If Hacker chooses (and is allowed to) to raise such a claim, Defendants should be permitted to rebut it.

*Id.* at 12. Thus, because the Court did not consider the merits of this issue in its original order, Defendants respectfully request that the Court reconsider its ruling based on the foregoing.

## CONCLUSION

Defendants respectfully request that the Court reconsider and change its ruling on the three issues identified above.

DATED: March 12, 2021

Respectfully submitted:

*/s/ Charles F. Beall, Jr.*
Larry Hill
Florida Bar No. 173908
lhill@mhw-law.com
Charles F. Beall, Jr.
Florida Bar No. 66494
cbeall@mhw-law.com
Haley J. VanFleteren

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Florida Bar No. 1003674
hvanfleteren@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com


Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F) counsel for Defendants certify that this memorandum contains 2,547 words.

Dated: March 12, 2021                                Respectfully submitted,

                                                                     /s/ Robert C. Brock
                                                                     Robert C. "Mike" Brock
                                                                     KIRKLAND & ELLIS LLP
                                                                     1301 Pennsylvania Avenue, N.W.
                                                                     Washington, D.C. 20004
                                                                     Telephone: (202) 389-5991
                                                                     mike.brock@kirkland.com

                                                                     *Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that they previously conferred with Plaintiffs' counsel regarding these three motions, and Plaintiffs oppose the relief requested. Counsel for Defendants conferred with Judge Herndon prior to filing this motion, and Judge Herndon concurred that an additional conference would be futile.

Dated:  March 12, 2021                     Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 12, 2021, a true and correct copy of the foregoing:

**DEFENDANTS' OMNIBUS MOTION *IN LIMINE* TO EXCLUDE THE INTRODUCTION OF CERTAIN EVIDENCE AT TRIAL**

was served as follows:

⊠ **[E-Mail]** By causing the above document to be sent via electronic mail to the parties at the email addresses listed below. I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel<br>Douglass A. Kreis<br>Neil D. Overholtz<br>Aylstock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street<br>Suite 200<br>Pensacola, FL 32502<br>Tel.: (850) 202-1010<br>Email: baylstock@awkolaw.com<br>Email: dkreis@awkolaw.com<br>Email: NOverholtz@awkolaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Shelley V. Hutson, Co-Lead Counsel Clark, Love & Hutson, GP<br>440 Louisiana Street<br>Suite 1600<br>Houston, TX 77002<br>Tel.: (713) 757-1400<br>Email: shutson@triallawfirm.com |

| | |
|---|---|
| Christopher A. Seeger, Co-Lead Counsel<br>David R. Buchanan<br>Caleb A. Seeley<br>Seeger Weiss LLP<br>77 Water Street<br>8th Floor<br>New York, NY 10005<br>Tel.: (212) 587-0700<br>Email: cseeger@seegerweiss.com<br>Email: dbuchanan@seegerweiss.com<br>Email: cseeley@seegerweiss.com<br>Email: MDL2885@seegerweiss.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 | Michael A. Burns, Co-Liaison Counsel<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com<br>Email: maburns@mostynlaw.com |
| Evan D. Buxner,<br>Plaintiffs' Executive Committee<br>Gori Julian & Associates<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorijulianlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk<br>Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.<br>316 S Baylen St. Ste 600<br>Pensacola, FL 32502<br>Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com<br>Email: tbouk@levinlaw.com<br><br>*Counsel for Plaintiff Lewis Keefer*<br>Case No. 7:20-cv-00104 |
| Taylor C. Bartlett<br>William L. Garrison, Jr.<br>Discovery & ESI Subcommittee<br>Heninger Garrison Davis LLC<br>2224 1st Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 326-3336<br>Email: taylor@hgdlawfirm.com<br>Email: lewis@hgdlawfirm.com | Katherine E. Charonko,<br>Discovery & ESI Subcommittee<br>Bailey & Glasser LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>Tel.: (304) 345-6555<br>Email: kcharonko@baileyglasser.com |

| | |
|---|---|
| Virginia E. Anello,<br>Discovery & ESI Subcommittee<br>Douglas & London<br>59 Maiden Ln, 6th Floor<br>New York, NY 10038<br>Tel.: (212) 566-7500<br>Email: vanello@douglasandlondon.com | J. Nixon Daniel, III<br>Discovery & ESI Subcommittee<br>Beggs & Lane<br>501 Commendencia Street<br>Pensacola, FL 32502<br>Tel.: (850) 469-3306<br>Email: jnd@beggslane.com |
| Katherine L. Cornell<br>Pulaski Law Firm<br>2925 Richmond Avenue, Suite 1725<br>Houston, TX 77098<br>Tel.: (713) 664-4555<br>Email: kcornell@pulaskilawfirm.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 | Thomas W. Pirtle<br>Laminack Pirtle & Martines<br>5020 Montrose Blvd., 9th Floor<br>Houston, TX 77006<br>Tel.: (713) 292-2750<br>Email: tomp@lpm-triallaw.com<br><br>*Counsel for Plaintiff Luke Estes*<br>Case No. 7:20-cv-00137 |
| Thomas P. Cartmell<br>Wagstaff & Cartmell<br>4740 Grand Avenue, Suite 300<br>Kansas City, MO 64112<br>Tel.: (816) 701-1100<br>Email: tcartmell@wcllp.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 | Quinn R. Wilson<br>Onder Law LLC<br>110 E. Lockwood Avenue, 2nd Floor<br>St. Louis, MO 63119<br>Tel.: (314) 963-9000<br>Email: wilson@onderlaw.com<br><br>*Counsel for Plaintiff Stephen Hacker*<br>Case No. 7:20-cv-00131 |

DATED:  March 12, 2021          */s/ Robert C. Brock*
                                 Robert C. "Mike" Brock