# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Chief Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |
| *Luke Estes*, No. 7:20-cv-00137;<br>*Stephen Hacker*, No. 7:20-cv-00131;<br>*Lewis Keefer*, No. 7:20-cv-00104; | |
| | **[FILED UNDER SEAL]** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MOTIONS IN LIMINE ORDERS, ECF 1693 & 1695

Rule 54(b) "addresses the Court's authority to revise prior orders at any time prior to final judgment." *EBSCO Gulf Coast Dev., Inc. v. Salas* as Tr. of Salas Child. Tr. dated Sept. 28, 2009, 2018 WL 7291441, at *2 (N.D. Fla. June 9, 2018) (Rodgers, J.). "Notwithstanding [that rule], courts in the Eleventh Circuit have consistently recognized that an interlocutory motion to reconsider consumes 'scarce judicial resources' and is an 'extraordinary remedy to be employed sparingly.'" Id. (quoting *Madura v. BAC Home Loans Servicing L.P.*, 851 F. Supp. 2d 1291, 1296 (M.D. Fla.

FILED USDC FLND PN
MAR 15 '21 AM9:43

2012)). Accordingly, "[a] motion to reconsider will be granted only if there is a change in controlling law, new evidence becomes available, or there is a 'need to correct clear error or manifest injustice.'" *Parker v. Esper*, 2020 WL 4480739, at *1 (N.D. Fla. Aug. 4, 2020) (Rodgers, J.) (emphasis added) (quoting Madura, 851 F. Supp. 2d at 1296 (M.D. Fla. 2012); see *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5578938, at *7 (N.D. Fla. Aug. 19, 2020) (Jones, M.J.) (same).

Defendants fail to satisfy—or to even identify—this demanding standard in their Motion for Partial Reconsideration of the Court's Motions in Limine Orders, ECF 1693 & 1695 (ECF 1703) ("Mot. to Reconsider"). Instead, they largely repeat arguments the Court already rejected, or make new arguments they clearly could have raised in the initial briefing. That is wholly improper and alone requires denying the motion, since "'[m]otions for reconsideration should not be used to raise arguments which could, and should, have been previously made.'" *EBSCO Gulf Coast Dev., Inc*, 2018 WL 7291441, at *2 (quoting *Scelta v. Delicatessen Support Servs.*, Inc., 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000)); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5578938, at *7 (N.D. Fla. Aug. 19, 2020) (Jones, M.J.) (observing, in connection with a previous 3M motion for reconsideration in this case, that "[a] motion for reconsideration is not an opportunity

for a party to relitigate what has already been found lacking or to raise arguments which could, and should, have been previously made").[1]

Even if Defendants could satisfy this high standard, however, each of their repeated challenges still fail, for the reasons discussed below.

## I.   The CID Report's Factual Findings Satisfy FRE 803(8), and Defendants Still Fail to Meet Their Burden to Show Otherwise

Defendants' request to reconsider the Court's ruling on the CID summary does not highlight any change in controlling law. Nor do Defendants identify new evidence on the issue not previously available. Given that evidentiary rulings are reviewed only for abuse of discretion,[2] Defendants tellingly do not identify any clear error on the Court's part, nor any manifest injustice that would result from the jury learning that, in light of Defendants' assertion that the military knew all about the CAEv2's alleged defects and bought them anyway, the government in fact concluded the exact opposite. (*See generally* Mot. to Reconsider at 2-6.)

---

[1] The only case Defendants identify on the ability to reconsider previous rulings, *F.D.I.C. v. Amos*, 2016 WL 7802146 (N.D. Fla. Feb. 5, 2016), is inapposite to the issues raised in Defendants' MIL Reconsideration Motion. In *Amos*, this Court reconsidered its prior ruling on a motion *in limine* to admit conversations between the defendant and the FBI after the Department of Justice would not authorize the special agent to testify on those matters. *Id.* at *1. The Court noted that this prevented it from performing a Rule 403 balancing test (which it had deferred to the time of testimony), therefore constituting a basis to reconsider the previous ruling. *Id.* No such circumstances exist here.

[2] *United States v. Massey*, 89 F.3d 1433, 1441 (11th Cir. 1996).

Given Defendants' failure—or in reality, inability—to address the reconsideration standard, their motion fails on that basis alone. *See Ladies Mem'l Ass'n, Inc. v. Pensacola*, 2020 WL 8449154, at *2 (N.D. Fla. Oct. 2, 2020) ("[M]otions for reconsideration 'may not be used to present the court with arguments already heard and dismissed.'") (Rodgers, J.) (quoting *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003)); *Barney v. Biegalski*, 2018 WL 9517271, at *2 (N.D. Fla. Sept. 19, 2018) (Rodgers, J.) (denying motion for reconsideration when movant made same arguments raised in prior motions); *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 684 (S.D. Fla. 2007) ("[T]o the extent [the movant] merely reargues points previously considered and rejected by the Court, or tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration.").

But a failure to even explain how they meet the standard is not the only reason Defendants' motion fails; it also remains wrong as a matter of fact and law.

First, the motion's central premise is incorrect. The paragraph Defendants seek to exclude is not just "a summary of the witness interview memos." That paragraph, (a) makes a qualitative factual assessment about what the February 2000 test results show—"i.e. that the CAE was too short for proper insertion in the users' ears and, therefore, did not perform well in certain individuals"; (b) indicates that,

consistent with the purpose of the CID investigation (*see* ECF 1693 at 7), SA Coleman asked relevant witnesses about whether they knew about those test results; (c) implicitly finds as a result of the investigation they did not, (*see also* Coleman Dep., attached as Exhibit A,  at 118:8-18 (testifying that her "factual determination" based on the interviews is that no one in the U.S. Army ever received the Flange Report)); and (d) finds what her investigation indicated they would have done had they known about the results ("may have not purchased the items"). SA Coleman testified that these conclusions stemmed from *both* the witness interviews and her review of the relevant documents (Ex. A at 243:15-244:2) and, indeed, the CID Report's plain language and extensive document exhibits confirm this fact (which Defendants do not seriously contest). This all clearly indicates, as the Court held, that the findings are exactly that: factual findings from an authorized investigation, the trustworthiness of which Defendants have not challenged in any meaningful way (and thus do not meet their burden to exclude). (ECF 1693 at 5-8.)

Defendants' citation to just ten lines from SA Coleman's deposition testimony does not change this conclusion and, indeed, ignores her broader testimony regarding the CID Report summary, including the testimony immediately preceding the portion Defendants cite. (Ex. 1 to Mot. to Reconsider at 464:16-22.) Just moments earlier, in response to Defendants' questioning, SA Coleman testified that the Report's first six pages are her "findings of facts," which included both

assessments of what witnesses told her and what she reviewed in the documents. (*Id.*) SA Coleman also testified that the witnesses were under an obligation to tell her the truth, which factored into her analysis and ultimate findings. (Ex. A at 180:8-12.) The CID Report summary was not mere regurgitation; it was a factual finding informed by the scope of the investigation and quality and content of the evidence before SA Coleman.

But, even if all this were not so, the next fallacy in Defendants' motion is their assumption that an investigator's factual findings somehow become inadmissible if they characterize the facts drawn from witness statements. That is not the law. Courts within and outside this Circuit and (including Defendants' own case citations) are crystal clear that government investigators can base their findings on otherwise inadmissible hearsay evidence.[3] The key avenue open to a party opposing such

---

[3] *See*, *e.g.*, *Crawford v. ITW Food Equip. Grp.*, LLC, 977 F.3d 1331, 1348 (11th Cir. 2020) (admitting OSHA report summaries based on investigations that included interviews); *Roxbury-Smellie v. Fla. Dep't of Corrections*, 324 F. App'x 783, 785 (11th Cir. 2009) (noting that factual findings made by an investigator fall within public records exception to hearsay, although the underlying interview statements did not); *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1310 (5th Cir. 1991) ("[M]any government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason."); *accord Jessup v. Miami-Dade Cty.*, 697 F. Supp. 2d 1312, 1322 (S.D. Fla. 2010) (noting, as the Court did here, that factual findings are generally admissible under FRE 803(8) and that witness summaries are not); *see also Gregory v. Wal-Mart Stores East, LP*, 2013 WL 12180710, at *6 (S.D. Ga. July 23, 2013) (police report admissible to the extent it contains the opinions and conclusions formed during the investigation, but any statement contained in the

factual findings is to challenge the *trustworthiness of the investigation itself*, which Defendants did not do here. (ECF 1693 at 7 n.3.)

As the Court noted, SA Coleman's job in the CID investigation was, *inter alia*, to make a causal finding—specifically, whether knowledge of the CAEv2 February 2000 test results was material information for purchasing those earplugs. Witness after witness after witness confirmed that such knowledge was in fact critical for government purchasing and use decisions, which is the finding SA Coleman provided in the CID Report. (Ex. A at 244:3-24.) Causal opinions such as these, even if based on hearsay evidence, are admissible public records. *See*, *e.g.*, *Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013) ("Cause

---

report that was made by a non-party witness or bystander is inadmissible as hearsay within hearsay).

Defendants' two main cases (which they previously cited in their original motion) are *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009), and *Mamani v. Sanchez Bustamante*, 968 F.3d 1216 (11th Cir. 2020), both of which the Court cited in its MIL order. *Mazer* noted it only held that specific hearsay statements in a public record are inadmissible. 556 F.3d at 1278. *Mamani* just as clearly held that summaries of statements made by those with an obligation to report the information (like the witnesses in the CID investigation) are admissible under 803(8). *Mamani*, 968 F.3d 1243 n.29 (11th Cir. 2020). Notably, making argument on these cases again does not satisfy the reconsideration standard. *See AstroTel, Inc. v. Verizon Fla., LLC*, 2012 WL 3670398, at *3 (M.D. Fla. Aug. 27, 2012) (holding that movant failed to meet motion for reconsideration standard when movant "asserted the very same arguments, citing the very same cases" as movant's initial motion).

7

determinations by the Equal Employment Opportunity Commission ('EEOC') are generally admissible under the hearsay exception for public records."); *Glados, Inc. v. Reliance Ins. Co.*, 888 F.2d 1309, 1312-13 (11th Cir. 1987) (admitting detective reports regarding a fire, including the detective's conclusion as to who set the fire, after court determined the factfinding process was trustworthy).

To the extent Defendants quibble on the meaning of the word "confirmed" in the CID paragraph they seek to exclude, they ignore (as the Court already found) that word choice indicates the finding was directly related to SA Coleman's assignment for the CID investigation; *i.e.*, to determine whether, as a matter of *fact*, "the United States government and the Army knew about Defendants' test results from 2000 and whether that was material to their decision to purchase the CAEv2." (ECF 1693 at 7.) Every witness SA Coleman interviewed said the exact same thing, thus allowing her as the investigator to "confirm" this fact.

At bottom, Defendants dislike that government investigation findings are admissible public records, even if some of their underlying factual bases might be inadmissible hearsay. But dislike for the law and worry about the effect "highly probative" evidence (ECF 1693 at 8 n.4) may have on one's defense is not a basis to exclude.[4] This is particularly so where the party seeking to exclude would like to

---

[4] Indeed, given the highly trustworthy and probative nature of the CID investigation, the CID Report summary would likely fall under the residual hearsay exception even if it were not a public record. *See MSC Mediterranean Shipping*

have its own witnesses testify to the exact opposite of the government's factual findings—findings that the government relied on to intervene in the *qui tam* action.

## II.    The Court Properly Excluded Dr. Ohlin's Out-of-Court Statements Concerning the CAEv2

Defendants next ask the Court to reverse its ruling excluding out-of-court statements regarding what Dr. Ohlin (1) "determined," "accepts," "would not accept," or "was interested in" regarding hearing protection devices and his reasons for those positions, and (2) supposedly "requested" regarding the CAEv2's packaging and instructions. (Mot. to Reconsider at 7-10.) Just as with the CID Report portion of their motion, Defendants identify no change in controlling law, no new evidence, and do not argue there is a need to correct any "clear error or manifest injustice." *Madura*, 851 F. Supp. 2d at 1296. The Court should thus reject this rehash of arguments the Court already considered and denied. (ECF 1695, at 24-26.) Even considering the arguments anew, however, they still fail.

At the outset, the Court should reject 3M's mischaracterization of almost every out-of-court statement by Dr. Ohlin as a "request" or "order" that cannot constitute hearsay, because they supposedly are not "assertions." The case law is

---

*Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1277, 1282 (S.D. Fla. 2012) (applying residual exception even after excluding document under public record exception, because the witnesses clearly had percipient knowledge, "understood they were taking part in an official and formal investigation, and clearly understood the seriousness of the situation," and the hearsay statements were the most direct evidence regarding the fact question at issue).

clear that "non-assertive" statements are ones that literally have no qualitative aspect to them; they are typically either questions that move along a conversation, or short utterances that occur in normal conversation and give context, but are not otherwise factual statements. *See*, *e.g.*, *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (noting that questions like "And who's Felipe?"; "Why don't you tell me what's going on?"; "Why do I have to put my purse away?"; "What's the problem?" were not assertive statements, and same for short utterances like "Yeah"; "All right"; "You know what I mean?"; and "Oh, my God."); *United States v. Osborne*, 677 F. App'x 648, 655 (11th Cir. 2017) (admitting the following texts as non-assertive statements that gave context to the conversation: (1) "yeah;" (2) "come where bra;" (3) "give me a min bra;" and (4) "ight bra.").

Here, the statements Defendants wish to introduce are inherently assertive in nature. The key to their alleged relevance is that what Dr. Ohlin supposedly said is *true* (*i.e.*, that he understood what Mr. Berger allegedly told him about the CAEv2; that he would or would not accept a plug with certain features; that he did not want instructions in the bulk boxes of CAEv2 sold to the military). Defendants state that they only want to introduce these statements for their effect on the listener, but counsel for the Defendants stated earlier today at the pretrial conference that what the government allegedly wanted and did not want is relevant (they say) to various defenses, such as the learned intermediary defense. Given that representation from

defense counsel, it is clear that the supposed truth of decedent Dr. Ohlin's alleged out of court statements plays large in how they intend to prove up those affirmative defenses.

As the Court thus correctly recognized, Defendants' real reason for introducing these statements is to prove the truth of the matter asserted in them; namely, that the U.S. military supposedly approved the design of the CAEv2 and that the military did not want instructions included in the CAEv2's packaging. (ECF 1695 at 25-26.) But as the Court previously ruled, it was Defendants who decided how to design the CAEv2 and whether to shorten it, not the military. (ECF 1280 at 44-45.) There was no design contact between Aearo and the military, and Aearo made design changes at its own discretion. (*Id.* at 38.) Requirements for 3M to provide fitting instructions are spelled out in government solicitations and other documents. (ECF 1280 at 53-54.) Secondhand accounts of Dr. Ohlin's purported intentions and concerns regarding the CAEv2 by 3M employees, decades after these conversations supposedly took place, would not only confuse the jury about an issue that has already been decided in this case, but also provide unreliable testimony that such statements were true. That is classic prejudicial hearsay.

Acknowledging that the *McKay* court excluded out-of-court statements by a deceased military officer very similar to the statements at issue here, Defendants resort to arguing that *McKay* too was wrongly decided. Not so. In *McKay*, the

defendant sold allegedly defective alarm systems to the U.S. military, and one of defendant's employees testified that a deceased military officer directed him—*i.e.*, ordered him—"to set the masking time [of the alarm system] at sixty seconds," leading to the defect at issue. Pointing to the *Cruz* decision, the defendant in *McKay* made the same argument 3M makes here; that the deceased military officer's statement "is a directive that cannot be true or false, and the statement is offered to show its effect on the hearer." *McKay v. Tracor, Inc.*, 2005 WL 8158361, at *1 (N.D. Ala. Mar. 22, 2005).

The *McKay* court determined that defendants' reliance on *Cruz* was misplaced for at least two reasons. First, in *Cruz*, where the Eleventh Circuit held that an undercover officer's out-of-court request for an introduction to a drug dealer's supplier "was not hearsay at all because it was not offered for the truth of any matter," the Eleventh Circuit found that the undercover officer's statement was reliable because, unlike Dr. Ohlin, the speaker of the hearsay (the undercover officer) was alive and subject to cross-examination.[5] Second, as 3M admits, the statement at issue in *McKay* was not being introduced "solely for the fact that it was

---

[5] This is especially relevant here where testimony from current and former 3M employees regarding their otherwise undocumented verbal communications with Dr. Ohlin is inherently unreliable as the supposed conversations took place decades ago, Dr. Ohlin is deceased and cannot be questioned about these topics, and because in this action 3M has consistently laid blame on the military's hearing conservation program for hearing damage suffered by military users of the CAEv2.

made and the effect it might have had upon its hearer," but instead to show that the military approved the design of the alarm system. (Mot. to Reconsider at 9)

Just like in *McKay*, 3M's reliance on *Cruz* for the proposition that Ohlin's statements were "requests" or "orders" that cannot be hearsay is misplaced. Indeed, 3M did not previously and does not now identify a single case with even remotely analogous facts that found out-of-court statements like Dr. Ohlin's admissible. 3M's argument that it seeks to use these statements "to show their effect on the listener" is a red herring and is another example of 3M taking a second bite at an argument that Court has already considered and rejected. (*Compare* Defendants' Response to Plaintiffs' Omnibus MIL at 4 *with* Mot. to Reconsider at 10; *see also* ECF 1695 at 25-26).  The key point 3M is trying to establish with these statements is *not only* "that Aearo received Dr. Ohlin's requests," but that the Army approved Aearo's design and did not want instructions included in the CAEv2 packaging.

The Court should also reject any suggestion by 3M that Dr. Ohlin's supposed out-of-court statements are assertions about Dr. Ohlin's state of mind would fall into the FRE 803(3) hearsay exception. (Mot. to Reconsider at 7-8.)  First, Defendants disavowed this argument in their initial response as it would amount to speculating about Dr. Ohlin's state of mind. (*See* Defendants' Response at 4: "The testimony Plaintiffs cite does not speculate on any government agent's state of mind.")  And second, the only example provided in Defendants' Motion for Reconsideration on

this point (Dr. Ohlin's supposed statement that he was only "interested in [a] two-ended plug, one-size plug") would not fall in within this exception because Dr. Ohlin's "motive, intent, or plan" in allegedly making this statement is not a relevant issue in this case in light of the fact that Defendants were responsible for designing the CAEv2 and ensuring it was safe to use.  *See Calhoun v. Walmart Stores* E., LP, 818 F. App'x 899, 904 (11th Cir. 2020) (declarant's state of mind must be a relevant issue).   Nor do Dr. Ohlin's statements relate to his then existing emotional, sensory or physical condition.  FRE 803(3).  The Court should thus deny 3M's motion on this issue.

Lastly, 3M's argument that it is prejudiced because "it will be impossible to describe the development of the CAEv2's design" without these statements is meritless, as there are numerous documents and testimony describing the development the CAEv2 that do not rely on inadmissible hearsay. (Mot. to Reconsider at 6) The Court should deny 3M's motion to reconsider this ruling.

## III.    This Court should reject the motion to reconsider its ruling that Hacker's alcohol abuse is irrelevant and/or unfairly prejudicial.

This Court properly held that evidence of Hacker's alcohol use should be excluded under Rule 403, and the Court should deny reconsideration.

3M's theory is that if Hacker mentions "stress, anxiety, depression," or related health conditions,[6] 3M should have *carte blanche* to explore any alternative cause from Hacker's life. (Mot. to Reconsider at 11) 3M's argument illogically assumes that stress and anxious feelings could only derive from a single source. Hacker plans to testify about how **his tinnitus** causes him stress and anxious feelings. Even if some other issue in Hacker's life was causing him stress, that fact does not mean that **tinnitus** could not have been causing him stress or anxiety. They are not mutually exclusive.

In addition, there is a reverse correlation between Hacker's alcoholism and the severity of his tinnitus. Hacker's alcoholism was confined to his time in the military. (*See* Hacker Dep., attached as Exhibit B, at 318:6-23 (noting that he was in the Army substance abuse program in 2004, 2011, and 2014)).[7] Meanwhile, Hacker's tinnitus has worsened in recent years, post-service. (*Id.* at 51:7-52:7, 61:21-

---

[6] 3M improperly conflates "stress, anxiety, [and] depression" in describing certain "health conditions" that 3M believes would open the door to testimony about Hacker's alcoholism. Hacker's claim is limited to "garden variety" mental distress damages from his tinnitus. (Case 7:20-cv-00131, ECF 57 at 2). Stress is different from depression. Stress is an emotion that people without mental health conditions experience daily, and Hacker should be able to talk about it. Clinical depression is a diagnosable mental condition that Plaintiffs assume is off-limits. Anxiety can be an everyday feeling or a diagnosed medical condition, depending on context.
[7] In addition, there are no medical records referencing a present issue with alcoholism after 2014.

62:2, 96:12-21). Thus, there is no correlation between tinnitus and alcoholism or stress from tinnitus and alcoholism.

The Court should deny reconsideration. Alternatively, if the Court believes that certain testimony could "open the door," that door should open both ways. Hacker does not intend to testify that tinnitus caused any of the issues that are subject to his motions *in limine*—including family issues, which are addressed in a separate motion. However, if the Court permits cross-examination on any of these issues, then Hacker should be able to address whether his tinnitus contributed to the problem he is being questioned about.

Date: March 15, 2021          Respectfully submitted,
                               */s/ Bryan F. Aylstock*
                               Bryan F. Aylstock, Lead Counsel
                               Florida State Bar No. 078263
                               AYLSTOCK, WITKIN, KREIS & OVERHOLTZ,
                               PLLC
                               17 East Main Street, Suite 200
                               Pensacola, FL 32502
                               Tel.: (850) 202-1010
                               baylstock@awkolaw.com

                               Shelley V. Hutson, Co-Lead Counsel
                               (Admitted Pro Hac Vice)
                               Texas State Bar No. 00788878
                               CLARK, LOVE & HUTSON, GP
                               440 Louisiana Street, Suite 1600
                               Houston, TX 77002
                               Tel.: (713) 757-1400
                               shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com
**Counsel for Plaintiffs**

Katherine Cornell
PULASKI LAW FIRM, PLLC
2925 Richmond Ave., Ste 1725
Houston, TX 77098
Tel: (713) 664-4555
kcornell@pulaskilawfirm.com
**Counsel for Plaintiff Luke E. and Jennifer Estes**

Evan D. Buxner
GORI JULIAN & ASSOCIATES
156 North Main Street
Edwardsville, IL 62025
Tel: (618) 659-9833
evan@gorijulianlaw.com

Quinn Robert Wilson
ONDER LAW LLC
110 E Lockwood Avenue
Second Floor
St. Louis, MO 63119
Tel: (314) 963-9000
wilson@onderlaw.com
**Counsel for Plaintiff Stephen Hacker**

Brian Hugh Barr
LEVIN PAPANTONIO
316 S Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7045
bbarr@levinlaw.com

Winston Troy Bouk
LEVIN PAPANTONIO
316 S Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7045
tbouk@levinlaw.com
***Counsel for Plaintiff Lewis Keefer***

## <u>CERTIFICATE OF COMPLIANCE</u>

## <u>WITH COURT'S WORD LIMIT</u>

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing contains 3,905 words.

<span style="float:right">*/s/ Bryan F. Aylstock*        </span>

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2021, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan F. Aylstock*