# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG LITIGATION
LIABILITY LITIGATION

This Document Relates to:

*Luke E. Estes*
Case No. 7:20-cv-00137

*Stephen Hacker*
Case No. 7:20-cv-00131

*Lewis Keefer*
Case No. 7:20-cv-00104

CASE NO.: 3:19-MD-2885-MCR-GRJ


Chief Judge M. Casey Rodgers
Magistrate Judge Gary Jones


# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' REQUEST FOR HEARING

# TABLE OF CONTENTS

**Page**

ARGUMENT ......................................................................................................2

I.     PLAINTIFFS' REQUEST IS PROCEDURALLY IMPROPER...................2

       A.     Plaintiffs' Request Violates Local Rule 7.1(B) And (C). ...................2

       B.     Plaintiffs' Request Fails To Cite Any Authority. ...............................4

       C.     Plaintiffs' Request Concerning A Website That Has Been
              Live Over 19 Months—And That Plaintiffs Have Known
              About For At Least 15 Months—Is Untimely. ...................................5

II.    THE FIRST AMENDMENT PROTECTS 3M'S WEBSITE........................6

       A.     The First Amendment Protects Case Participants' Speech
              Regarding Litigation. ..........................................................................6

       B.     Plaintiffs Provide No Basis To Restrict 3M's Speech. .......................8

III.   PLAINTIFFS' REQUEST APPLIES TO PLAINTIFF'S
       COUNSEL'S WEBSITES.........................................................................12

       A.     Plaintiffs' Counsel's Websites Contain Arguments About
              The Litigation And Seek To "Bolster" Counsel's
              Reputation. .........................................................................................12

       B.     3M's Cookies Do Not Collect Identifying Information.....................16

       C.     Plaintiffs' Counsel Pays For Google Ads. .........................................17

CONCLUSION .................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridges v. California*,
    314 U.S. 252 (1941)................................................................................7

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011).................................................................................6

*Connick v. Myers*,
    461 U.S. 138 (1983).................................................................................6

*In re Dan Farr Prods.*,
    874 F.3d 590, 592 (9th Cir. 2017) ....................................................9, 10

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ...............................................................10

*Neb. Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)........................................................................7, 8, 9

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971).................................................................................8

*Phillips v. Hillcrest Med. Ctr.*,
    244 F.3d 790 (10th Cir. 2001) ...............................................................4

*Schenck v. Pro-Choice Network of W. N.Y.*,
    519 U.S. 357 (1997).................................................................................6

*Schwarz v. Vills. Charter Sch., Inc.*,
    2016 WL 7407346 (M.D. Fla. Dec. 22, 2016) ......................................9

*SSH2 Acquisitions, Inc. v. Howard*,
    2012 WL 668042 (S.D. Fla. Feb. 29, 2012) .........................................4

*United States v. Carmichael*,
    326 F. Supp. 2d 1267 (M.D. Ala. 2004)......................................8, 9, 11

*Wood v. Georgia*,
   370 U.S. 375 (1962)............................................................................................7

**Statutes**

False Claims Act ...................................................................................2, 12, 14, 15

**Rules**

Local Rule 7.1 ...................................................................................................3, 4

Local Rule 7.1(B)......................................................................................1, 2, 3, 4

Local Rule 7.1(B) and (C) ....................................................................................2, 3

Local Rule 7.1(C)...............................................................................................3, 4

Local Rule 7.1(F) ................................................................................................19

Plaintiffs' Request for Hearing violates this Court's rules, violates the First Amendment, and violates basic principles of fairness and reciprocity.

*First*, plaintiffs failed to conduct a good faith meet and confer on this issue, and indeed filed their Request only 14.5 hours—most of which ran overnight—after first raising the issue, violating Local Rule 7.1(B). Moreover, the 3M Earplugs Facts website has been active for over 19 months to communicate 3M's views about the litigation with customers, shareholders, and the public. Plaintiffs' assertion that they learned of the website a "short while ago" is belied by a December *2019* deposition where plaintiffs' counsel questioned a witness about the website. Despite having well over a year to file any motions concerning the website, plaintiffs waited until shortly before trial to file their Request in a transparent attempt to waste 3M's time as it prepares for trial.

*Second*, plaintiffs' Request—which lacks a single citation to any case law or other authorities—ignores that their motion seeks prior restraints that are anathema to the First Amendment and this nation's cherished principles of free speech. Not only is plaintiffs' Request devoid of law, it is bereft of any evidence suggesting that 3M's Earplugs Facts website could influence the jury, much less meet the high, constitutionally-required standards for a prior restraint. Decisions within the Eleventh Circuit and across the country have rejected gag orders and other speech restraints in similar circumstances.

*Third*, plaintiffs' Request is extraordinarily hypocritical.   While plaintiffs complain about 3M's website, plaintiffs' counsel's firms' websites have pages about this litigation providing plaintiffs' views on the CAEv2 and this litigation to any visitor, including potential jurors.   This includes disclosing evidence that the Court has excluded; indeed, the very first sentence of the Aylstock Witkin Kreis Overholtz website page sets forth the amount 3M paid to settle the False Claims Act lawsuit. Moreover, Bryan Aylstock has hosted interactive Reddit threads in which he has proclaimed his views on the litigation, the Court's rulings, and the Court itself—all of which are still publicly available.   Plaintiffs also complain about the 3M website's cookies, but such cookies do not provide individual identifying information about website visitors—as plaintiffs' counsel should know from operating their own websites that use cookies.

In short, plaintiffs' Request is not a good-faith pleading, but a baseless attempt at gamesmanship on the eve of trial.   The Request should be denied.

## ARGUMENT

## I.   PLAINTIFFS' REQUEST IS PROCEDURALLY IMPROPER.

### A.   Plaintiffs' Request Violates Local Rule 7.1(B) And (C).

Local Rule 7.1(B) requires parties to make good faith efforts to resolve disputes before needlessly wasting the Court's time:

> Before filing a motion raising an issue, an attorney for the moving party must attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party.  … .   An email or

2

> other writing sent at or near the time of filing the motion is not a meaningful conference.  When a conference is conducted in writing or electronically, an attorney ordinarily should be afforded at least 24 hours … to respond to a communication.

Local Rule 7.1(C) requires a movant to include a certificate confirming that it complied with 7.2(B).

Plaintiffs titling their filing a "Request" cannot avoid the requirements of Local Rule 7.1; it is in substance a motion seeking to restrict 3M's Earplugs Facts website.  Indeed, this Court's docket reflects that plaintiffs filed a "MOTION for Hearing *Request for Hearing*."  ECF No. 1709, Docket Text.  If parties could avoid Local Rule 7.1 by titling motions as "Requests," the entire rule would be a nullity.

Plaintiffs violated both Local Rule 7.1(B) and (C).  Plaintiffs first raised their supposed concerns regarding 3M's website in an emailed letter sent to 3M's counsel at 7:47 PM CT on March 18, 2021.  Ex. 13 (Email from Wolfson to Branscome, *et al.*)  3M's counsel responded the next morning at 9:39 AM on March 19 asking to discuss the letter.  Ex. 1 (Email from Brock to Aylstock & Seeger).  Plaintiffs ignored 3M's request for a meet and confer, and instead filed their Request at 10:09 AM on March 19.  ECF No. 1709 (Notice of Electronic Filing ("NEF")).  Therefore, plaintiffs' statement in their Request that 3M did not respond to its Request "[a]s of this submission," ECF No. 1709 ("Pls. Request") at 2, is false.

Plaintiffs filed their motion approximately 14.5 hours after first raising the issue with 3M, violating the 24-hour requirement of Local Rule 7.1(B).  Moreover,

3

plaintiffs ignored 3M's request to meet and confer, violating Local Rule 7.1(B)'s requirement that a movant "must attempt in good faith to resolve the issue through a meaningful conference."  Finally, plaintiffs' motion lacks a certificate as required under Local Rule 7.1(C).

These violations of Local Rule 7.1 are alone a sufficient basis to deny plaintiffs' request.  And as demonstrated in the remainder of this brief, plaintiffs' failure to make a good faith attempt to confer about their Request has wasted time of both this Court and 3M that should be spent preparing for trial.

### B.    Plaintiffs' Request Fails To Cite Any Authority.

"Generally, a 'litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.'"  *SSH2 Acquisitions, Inc. v. Howard*, 2012 WL 668042, at *3 (S.D. Fla. Feb. 29, 2012) (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 (10th Cir. 2001)).  Plaintiffs fail to cite a single case or other legal authority in their Request. Plaintiffs' Request is an attempt to impose a prior restraint on 3M and raises serious First Amendment issues, yet plaintiffs provide no authority to support their arguments or guide the Court.

**C.    Plaintiffs' Request Concerning A Website That Has Been Live Over 19 Months—And That Plaintiffs Have Known About For At Least 15 Months—Is Untimely.**

The website about which plaintiffs complain first went live on July 29, 2019. Since then it has been updated, with 3M understanding that the most recent update occurred on July 17, 2020.  Thus, plaintiffs' insinuation that the website was created to influence the jury is incorrect.  The website was created over a year-and-a-half ago to counter plaintiffs' counsel's websites (which are further discussed in Section III.A) and provide 3M's views regarding the litigation.

Furthermore, plaintiffs' counsel's assertion that they learned of the site a "short while ago" is false.  On December 18, ***2019***, plaintiffs took the deposition of Jeffrey Hamer.  Ex. 2 (Hamer 12/18/19 Dep. Tr.) at 1.  Sean Tracey was plaintiff's questioner at the deposition, and Lawrence Tracey, Shelley Hutson, Emily Marlowe, and Mikal Watts also appeared on behalf of plaintiffs.  *Id.* at 2.  During his questioning, Tracey asked Hamer about "your company's … website dedicated to telling the truth about the Combat Arms Earplug."  *Id.* at 189:15-18.  After a break, Tracey made crystal clear that he was asking about the 3M Earplug Facts website:

> Q.  Mr. Hamer, before our lunch break I was asking if you had seen the 3M website on these cases, earplugfacts.com, 3Mearplugsfacts.com, "Our Commitment."
>
> Have you seen that website?
>
> Here, we got it up on the screen now.

5

*Id.* at 190:23-191:4; *see also id.* 191:5-194:15 (continued questioning regarding the website).   The deposition transcript proves that Tracey was well aware of the website, had been to the site, and showed the site to the witness.   Thus, the record evidence establishes that plaintiffs have known about the 3M Earplugs Facts website for at least 15 months.   Plaintiffs' representation to the Court that they learned of the 3M Earplugs Facts a "short while ago," Pls. Request at 1, is not honest or accurate.

Moreover, that the website has been live for 19 months—and plaintiffs have known about it for at least 15 months—renders plaintiffs' Request untimely. Plaintiffs have had well over a year to raise any issues regarding 3M's website.   Yet they failed to do so until now, shortly before trial.   Plaintiffs provide no explanation for this delay besides misrepresenting when they learned about the website.

## II.     THE FIRST AMENDMENT PROTECTS 3M'S WEBSITE.

### A.     The First Amendment Protects Case Participants' Speech Regarding Litigation.

The Supreme Court has explained repeatedly that public speech on matters of public concern lies at the heart of the First Amendment.   *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011) ("The Free Speech Clause exists principally to protect discourse on public matters"); *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377 (1997) (describing how "commenting on matters of public concern" belongs among the "classic forms of speech that lie at the heart of the First Amendment"); *Connick v. Myers*, 461 U.S. 138, 154 (1983) (describing

6

"long-standing recognition that the First Amendment's primary aim is the full protection of speech upon issues of public concern").

Consistent with that basic First Amendment principle, courts have repeatedly held that persons have a right to express their views regarding pending litigation. *Wood v. Georgia*, 370 U.S. 375 (1962) (reversing judgment of appellate court affirming state court's contempt finding against sheriff for sheriff's statements, made in form of press release to media, challenging grand jury proceedings as racially biased and corrupt); *Bridges v. California*, 314 U.S. 252 (1941) (reversing California Supreme Court's affirmation of contempt rulings against individuals and newspaper companies for publication of commentary on pending case); *see also Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) (state trial court's pre-trial order severely limiting ability of media to generate commentary on upcoming murder trial overturned for failure to satisfy heavy burdens imposed on prior restraints under Court's First Amendment jurisprudence).

3M's Earplug Facts website falls squarely within these precedents. This is one of the largest MDLs in history, and thus is even more obviously a topic of public concern than a typical case. 3M created the website 19 months ago—long before the trial or any jury selection—to communicate with customers, shareholders, and the public at large. 3M's Earplug Facts also was intended to respond to plaintiffs' counsel's websites as well as media reporting. Indeed, the home page of 3M's

website states that the CAEv2 "is the subject of litigation and recent media reporting." Accordingly, the 3M Earplug Facts website is public speech on a matter of public concern and falls within the core of the First Amendment's protections.

## B.   Plaintiffs Provide No Basis To Restrict 3M's Speech.

A "trial court's order that prohibits or limits the speech of lawyers or parties before the court, a so-called 'gag order,' is a prior restraint." *United States v. Carmichael*, 326 F. Supp. 2d 1267, 1291 (M.D. Ala. 2004) (collecting cases). "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Id.* (quoting *Neb. Press*, 427 U.S. at 559) (brackets and internal quotations marks omitted). "Thus, any prior restraint on expression comes with a heavy presumption against its constitutional validity." *Carmichael*, 326 F. Supp. 2d at 1291 (quoting *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)) (cleaned up).

A gag order that restrains protected speech (such as the 3M Earplugs Facts website) on the grounds of protecting a fair trial can be imposed only if (1) it is narrowly tailored; (2) there are no less burdensome alternatives; and (3) where the speech of parties, rather than attorneys, is to be restricted, the speech at issue must present "a 'clear and present danger' or a 'serious and imminent threat' to a fair trial." *Carmichael*, 326 F. Supp. 2d at 1293 (collecting circuit court cases, explaining the circuit split on the threshold for imposing a prior restraint, and

adopting the stated test where the gag order would apply to the party itself); *see also Schwarz v. Vills. Charter Sch., Inc.*, 2016 WL 7407346, at *6 (M.D. Fla. Dec. 22, 2016).

Courts applying these requirements have rejected gag orders under similar, and indeed less compelling, circumstances.  In *Carmichael*, the individual defendant's website listed supposed "informants" against him, which the prosecution claimed was a threat against those witnesses.  326 F. Supp. 2d at 1272.  Yet *Carmichael* held the proposed gag order to that would require defendant to take down the site failed each requirement of the prior restraint test.  *Id.* at 1294.  *Carmichael* explained that the traditional alternatives to gag orders—"searching questioning of potential jurors" and "the use of emphatic and clear instructions"— were more appropriate means of balancing the right to a fair trial and the defendant's right to free speech.  *Id.* at 1295 (quoting *Neb. Press*, 427 U.S. at 564).

In *In re Dan Farr Prods.*, defendants created a website to share news an documents about the case, as well as "their own opinions on the merits of the case and [plaintiff's] conduct."  874 F.3d 590, 592 (9th Cir. 2017).  The district court granted a gag order against the defendant's website, and the Ninth Circuit reversed, holding that the "orders at issue are unconstitutional prior restraints" that "prohibit speech that poses neither a clear and present danger nor a serious and imminent threat to … a fair trial."  *Id.* at 593.  The Ninth Circuit noted that plaintiffs present

"no evidence connecting the scope of Petitioner's speech with the relevant jury pool" such as how many of those who viewed the site could be potential jurors. *Id.* at 594. Even if 8.9 percent of potential jurors had viewed the website, that would not prevent selecting the necessary number of unbiased jurors. *Id.* (also citing a case holding that 20 percent of jurors seeing a broadcast still would leave a "an extremely large pool of untained potential jurors"). The Ninth Circuit also held that "voir dire" and "jury instructions" were "appropriate alternatives preferable to censorship." *Id.* at 595; *see also Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013) (reversing district court gag order requiring plaintiffs to take a website with critical statements concerning the defendant).

Here, plaintiffs have not presented ***any*** evidence that 3M's Earplugs Facts website could influence any potential jurors, much less that it could influence a sufficient number of potential jurors to hinder the Court from finding a full complement of unbiased jurors. Plaintiffs assert that the "advertisement listing includes Pensacola," but—like most other websites—3M's website is available across the country. Plaintiffs present no evidence that the website has influenced a single potential juror in Pensacola, much less a significant number. Indeed, the websites of plaintiffs' counsel's firms that are located in Pensacola, such as Aylstock, are more likely to taint potential jurors, as described in Section III.A.

10

Nor do plaintiffs present any evidence or argument that the 3M Earplugs Facts website presents "clear and present danger" or a "serious and imminent threat" to a fair trial.  And, of course, they cite no case law to support censoring any part of the website.

Plaintiffs also ignore their own counsel's myriad websites asserting plaintiffs' versions of the facts and claims against 3M.  As long as those other sites remain up, basic First Amendment principles against favoring one viewpoint over another mandate that 3M's does as well.

Finally, plaintiffs ignore less restrictive means to protect the trial's fairness. As in *Carmichael*, these include questioning potential jurors about what websites they have seen—which should include both the 3M Earplugs Facts site as well as the myriad sites and webpages set up by plaintiffs' counsel—and instructing jurors not to search for or read any websites or other materials about the CAEv2, 3M, or the parties' attorneys.

In short, plaintiffs have utterly failed to produce a single iota of argument or evidence to support their heavy burden in seeking to restrict 3M's constitutionally protected speech.

## III.   PLAINTIFFS' REQUEST APPLIES TO PLAINTIFF'S COUNSEL'S WEBSITES.

Curiously, plaintiffs' Request fails to tell the Court about what plaintiff's counsel's own websites say regarding this litigation.  In truth, the Request's arguments would be better made against those sites.

### A.   Plaintiffs' Counsel's Websites Contain Arguments About The Litigation And Seek To "Bolster" Counsel's Reputation.

Plaintiffs accuse 3M of attempting to influence potential jurors, an assertion much more applicable to their own counsels' websites.  For example, the home page of the website for Aylstock Witkin Kreis Overholtz displays a link to a page concerning the CAEv2 litigation.  Ex. 3, https://www.awkolaw.com/.  That page asserts that the CAEv2 "cause hearing loss for military" that "Servicemembers were supplied defective Combat Arms Earplugs"; "3M knowingly supplied the defective earplugs"; and plaintiffs "may be entitled to significant monetary compensation." Ex. 4,         https://www.awkolaw.com/top-cases-3m-defective-earplugs-lawsuit/. Moreover, the very first sentence of the page states that "In a startling settlement in July 2018, the 3M corporation agreed to pay $9.1 million in a False Claims Act lawsuit," even though the Court has ruled "that the amount of the Settlement Agreement is inadmissible," ECF No. 1693 at 3.  Thus, the Request's assertion that 3M "attempts to influence the jury by making expressly the arguments" that this Court rejected applies to the Aylstock firm's website.  Pls. Request at 2.

12

Indeed, plaintiffs' counsel Bryan Aylstock has gone beyond a passive website to directly interacting with the public (and potentially prospective jurors) concerning this case on the social media site Reddit. Aylstock created multiple threads where he invited other users to an "AMA," meaning an "Ask Me Anything" question-and-answer session, about the "3M earplug litigation." Ex. 5 (https://www.reddit.com/r/ Veterans/comments/iicmnp/im_bryan_aylstock_courtappointed_lead_counsel _for/); Ex. 6, (https://www.reddit.com/r/Veterans/comments/f2u7yt/im_bryan_ aylstock_ courtappointed_lead_counsel_for/). Notably, these threads were posted in multiple forums targeted at former servicemebers, such as "r/Veterans," "r/Airforce," "r/airnationalguard," "r/Military," "r/USMC," "r/Navy," "r/Army" and so forth.

During these sessions, Aylstock notes that he is the "court-appointed lead counsel for all of the plaintiffs in the 3M earplug litigation," Ex. 5 at 1; Ex. 6 at 1, and promulgates plaintiffs' story, such as asserting that "Based on the company's own testing, the CAEv2 were dangerously defective," Ex. 6 at 1; "The earplug could loosen, allowing noise to pass through and subsequently cause serious hearing damage, such as hearing loss and tinnitus," Ex. 6 at 1; "3M knowingly misled the military by fabricating test results," Ex. 5 at 5; and similar statements. *See also* Ex 5 at 1-2. Aylstock also encouraged those in the thread to file suit by telling them "there is strength in numbers," that "every suit filed by someone who has been

harmed by these defective earplugs is another chance to hold 3M accountable for its misconduct," and "approximately 200,000 servicemembers and veterans are part of the case against 3M." Ex. 5 at 4, 8, 11. Aylstock references a number of issues that should not be part of the upcoming trial, such as claiming that "one of 3M's key defenses was dismissed by the judge." Ex. 5 at 1-2, 9; *see also id.* at 5. He describes details about the bellwether process and the $9.1 million settlement with the Government, among other issues. Ex. 5 at 1, 4-5, 10; Ex. 6 at 1, 9, 11. Aylstock also asserted that "3M is able to pay for the best defense attorneys possible, and they are paying them handsomely." Ex. 6 at 7. Finally, Aylstock stated that "Judge Rodgers, who is oversseing the case, also served in the military" and what that "does mean is that there is an understanding of what you all have gone through and face." Ex. 5 at 7. These threads remain publicly available for anyone to read. 3M submits that such interactions are more likely to influence potential jurors than anything on the 3M Earplugs Facts website.

Similarly, the Seeger Weiss website contains a page on the 3M litigation. Ex. 7     (https://www.seegerweiss.com/defective-products/3m-military-earplug-lawsuit/). That website contains plaintiffs' counsel's assertions about how the 3M dual-ended earplugs are defective, what damages those earplugs caused, how 3M was negligent in manufacturing the dual-ended earplugs, and so forth. *Id.* The page also contains the amount of False Claims Act settlement, *id.*, despite the Court's

14

ruling that this is inadmissible.  Moreover, that website also asserts that "3M has been accused of manufacturing earplugs that did not meet the specifications of either military or industrial use," *id.*, despite plaintiffs claiming that there were no military contracts "with reasonably precise specifications for the product's design and development," ECF No. 1695 at 13.  Other plaintiffs' counsel's websites with pages asserting their allegations and theories about CAEv2 litigation include, but are not limited to, Levin Papantonio (Ex. 8 (https://www.levinlaw.com/combat-arms-earplugs-lawsuit)); Clark, Love & Huston (Ex. 9 (https://www.triallawfirm.com/3m-earplugs-litigation/)); Morgan & Morgan (Ex. 10 (https://www.forthepeople.com/defective-product-lawyers/3m-ear-plugs-lawsuit/)); Heninger Garrison Davis, LLC (Ex. 11 (https://www.hgdlawfirm.com/practice-areas/consumer-class-action-and-mass-torts/military-earplugs-lawsuit/)).

Similarly, while plaintiffs fault 3M's website for supposedly bolstering 3M's reputation, Pls. Request at 3, their counsel's own websites contain pages about the litigation that much more clearly attempt to bolster counsels' reputation.  For example, the Aylstock firm home page claims the firm has "over $2.5 Billion in settlements"; "our attorneys are nationally recognized as leaders in their field"; and they've helped "tens of thousands of clients."  Ex. 3 (https://www.awkolaw.com/). The Seeger Weiss homepage lists their recent settlements and claims they have "over two decades of experience going up against the largest corporations in the country

and recovering billions of dollars to date on behalf of our clients and class members."

Ex. 12 (https://www.seegerweiss.com/).   Other plaintiffs' counsel's home page

likewise advertise their supposed successes to anyone who clicks on the web page,

including potential jurors.

## B.     3M's Cookies Do Not Collect Identifying Information.

Plaintiffs assert that an issue is the "Defendants' collection of cookies."  To

begin with, a website visitor is not required to accept or enable cookies to view the

website.  Moreover, the 3M Earplugs Fact website uses Google Analytics tools for

the purposes of measuring the number of website visits, and gaining other insights

such as the number of pages visited by each user and the total time spent on the site.

But these cookies ***do not*** provide a website owner such as 3M with any identifying

information about any website visitor, or any information that could be used to

determine an individual website visitor's location.  Thus, 3M cannot identify any

individual that visits the website, much less determine whether a visitor is a potential

juror.

Moreover, website owners typically use cookies to gather the same general,

aggregate information that 3M does.  Yet plaintiffs do not mention whether their

own websites use cookies, or explain what information they can collect concering

potential jurors or other website visitors.  3M understands that the Aylstock firm's

website page about this litigation has several pieces of code that is using cookies to capture data from website visitors.

### C.   Plaintiffs' Counsel Pays For Google Ads.

Plaintiffs assert that 3M paid to pin the link to 3M Earplugs Facts at the top of web searches, but ignore that plaintiffs' law firms have likewise paid Google for advertisements for terms like "earplugs lawsuit" and "Combat Arms Earplugs." Based on the Google advertising platform's "auction insights" tool, firms including Seeger Weiss, Morgan & Morgan, Thomas J. Henry, and the Aylstock firm have all paid for advertisements for these terms.  Plaintiffs have no explanation for why purchasing such advertisements is improper when 3M does it, but of no concern when their law firms do the same thing.

## CONCLUSION

Plaintiffs' Request should never have been filed.  Plaintiffs violated the basic rules of this Court and civility among attorneys to make frivolous insinuations more applicable to their own law firms' websites and advertising.  Plaintiffs have cited no law and no evidence to support their request for a hearing, and any relief they could seek would violate the First Amendment.  The Court should summarily reject this Request so that the parties and the Court can focus on the upcoming trial.

Dated:  March 20, 2021

Respectfully submitted:

*/s/ Charles F. Beall, Jr.*
Larry Hill
Florida Bar No. 173908
lhill@mhw-law.com
Charles F. Beall, Jr.
Florida Bar No. 66494
cbeall@mhw-law.com
Haley J. VanFleteren
Florida Bar No. 1003674
hvanfleteren@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541

*/s/ Robert C. "Mike" Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F) counsel for Defendants certify that this memorandum contains 3,933 words.

Dated:  March 20, 2021                    Respectfully submitted,

                                          */s/ Robert C. Brock*
                                          Robert C. "Mike" Brock
                                          KIRKLAND & ELLIS LLP
                                          1301 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20004
                                          Telephone:  (202) 389-5991
                                          mike.brock@kirkland.com

                                          *Counsel for Defendants*
                                          *3M Company,*
                                          *3M Occupational Safety LLC,*
                                          *Aearo Technologies LLC,*
                                          *Aearo Holding, LLC,*
                                          *Aearo Intermediate, LLC and*
                                          *Aearo LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 20, 2021, a copy of the foregoing was filed on the Court's CM/ECF system, which will serve all counsel of record.

DATED:  March 20, 2021

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*