**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *Luke Estes*, No. 7:20-cv-00137; *Stephen Hacker*, No. 7:20-cv-00131; *Lewis Keefer*, No. 7:20-cv-00104 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones **PLAINTIFFS' REPLY IN SUPPORT OF THEIR REQUEST FOR HEARING** |

None of 3M's arguments justify foregoing a hearing and further investigation into the 3M Earplugs Fact website.

**I.  Plaintiffs' Request Is Proper**

3M's statement that "Plaintiffs ignored 3M's request for a meet and confer" is false.  Mr. Seeger responded within 40 minutes of Mr. Brock's email, and more than 24 hours before 3M's filing, agreeing to a conference at the time Mr. Brock proposed, but received no reply.  *See* Exhibit A.  3M's omission of Mr. Seeger's reply was at best disingenuous.  Moreover, Plaintiffs' request sought no relief beyond a hearing,[1] and was not, as 3M argues, "a motion seeking to restrict 3M's Earplugs Facts website."  And setting aside Defense counsel's nonresponse, 3M

---

[1] Determining any remedy requires investigation into the nature of 3M's targeting, data collection, and promotion, as discussed *infra* at Section IV.  Appropriate forms of relief would depend on that information, and (apart from restricting 3M's Earplugs Facts website) may include asking jurors about their exposure to the website.

1

makes clear that it has no intention of taking the necessary steps to avoid the need for a hearing—*e.g.*, providing declarations from those knowledgeable or otherwise involved in creation of the subject website, its promotion, or the use of information captured from it, and otherwise offering to alter the website or 3M's efforts to promote its content to potential people in this community.

3M's claim that certain of Plaintiffs' counsel have earlier visited the website misses the mark. Timing matters.  Promoting the 3M Earplugs Fact website to the community of potential jurors for the first bellwether trial one week from jury selection is of an entirely different character than issuing press releases with 3M's public position on the litigation.  And the 3M Earplugs Fact website was updated after its launch – notably, in July 2020 – to add the "Product History" page, which contains baseless representations regarding the military's responsibility for the design of the CAEv2.[2]

## II.    Plaintiffs' Counsel's Public Statements Are Distinguishable

3M further attempts to cloud the issue by inapt comparisons to Plaintiffs' counsel's public advertisements.  In short, the 3M Earplug Facts website serves no commercial purpose—it exists apart from the rest of 3M's internet presence, and

---

[2] *See* https://web.archive.org/web/20200417071111/https://www.3mearplugsfacts.com/ (April 17, 2020 – final capture of home page before "Product History" link added); https://web.archive.org/web/20200417071111/https://www.3mearplugsfacts.com/ (August   5, 2020 – first available capture of "Product History" page).

2

provides unsupportable claims about a product that has not been sold for half a decade. The website exists for the sole purpose of (i) amplifying representations that 3M was unable to support with any facts or evidence in its summary judgment briefs,[3] and (ii) suggesting that unrelated "good acts" are relevant to 3M's misconduct in connection with the CAEv2. 3M's promotion of the 3M Earplugs Facts Website and collection of information from visitors raises questions that are not answered by a brief by outside counsel.

Plaintiffs' counsel's websites and public statements are of a different character entirely. Plaintiffs' counsel can and do provide information about this case and others to clients and potential clients. In a case where the use of the defective product spanned more than fifteen years, without *any* warning, current and former service members harmed by the CAEv2 continue to seek representation and other information relevant to their claims. Such attorney advertising is highly regulated by the various state bars and ethics rules. And the information on the websites identified by 3M is public, and drawn from allegations in Plaintiffs' complaints and other public filings, news articles, and press releases.[4] While Plaintiffs believe that open communication with clients and potential clients is essential, particularly

---

[3] 3M advanced the same argument in a statement to InvestigativeTV.com *on the very day* of the pretrial conference in which the Court admonished 3M it would not be permitted to suggest or argue that the government had ultimate responsibility for the design of the CAEv2. *See* Exhibit B ("The CAEv2 product met all the rigorous specifications requested and required by the U.S. military.").

[4] See Exhibit C (July 30, 2018 DOJ Press Release).

where, as here, 3M has argued vigorously for the strict application of statutes of limitations and repose to extinguish the legal rights of those individuals. Plaintiffs would of course comply with any directive from the Court designed to reduce the possibility of prejudicing the jury.

Lead Counsel also has a duty to act in the best interests of the litigation, including by ensuring that public information about the litigation is accurate. Plaintiffs' counsel has met this duty by engaging in public forums[5] in order to ensure the availability of accurate information on the case, and by issuing cease-and-desist letters to prevent the dissemination of false information by others.[6]

### III.    This Court Has Authority to Prevent Jury Tampering

Determining the appropriate response to the 3M Earplugs Facts website requires a hearing, and may require additional investigation.  But 3M is incorrect that its online statements are beyond the Court's power.  *See Marceaux v. Lafayette*

---

[5] 3M misleadingly edited the following statement from Mr. Aylstock, while taking questions in an online forum many months ago:  "I have great respect for all of you who put your life on the line, and myself and my co-lead counsel take that responsibility very seriously. Judge Rodgers, who is overseeing this case, also served in the military. *That of course does not mean she will be 'for us' or 'against us,'* but what it does mean is that there is an understanding of what you all have gone through and face." *See* Exhibit E (emphasis added).  Unlike 3M, Mr. Aylstock did not pay to "pin" this forum up at the top of any search, nor is it targeted at potential jurors in Pensacola or anywhere– it merely exists in the internet ether.  Moreover, as Mr. Aylstock made clear at the very outset of the online forum, its purpose was to correct misinformation involving unscrupulous marketers who were gathering information on our veterans through social media: "Lastly, some of you may have seen false advertisements on social media saying, for example, that there has been a settlement and you can receive a payout.  This is not true and we've been taking steps to combat these fraudulent ads.  If you have been affected by these ads and believe your information may have been used in a way that you did not consent…please send me a message…"  *Id.*

[6] *See* Exhibit D, Aylstock Cease-and-Desist Letters.

4

*City-Par. Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013) (with regard to objectionable trial publicity on website, "the court must engage in a specific review of any claimed improper material.  In this process, the district court has considerable, but not unfettered, discretion").

## IV.  Conclusion

All Parties need equal access to information on the nature and potential impact of 3M's conduct before broader relief can be directed.  Attorney briefing is not evidence of a lack of prejudice, and 3M must proffer declarations by appropriately knowledgeable people establishing exactly what 3M is doing to target and influence potential jurors in this community.

Other necessary inquiries include:

- What other advertisements or public statements relating to this litigation, is 3M currently promoting, and in what media?

- What geographical or other targeting has 3M used to promote such messages?

- What information is 3M gathering from visitors to its website, or other social media, and what is 3M doing with that information?[7]

- Have any potential jurors visited the 3M Earplugs Facts website?

---

[7] The limited uses 3M's counsel identify in their brief (without personal knowledge, or sworn to under penalty of perjury) differ dramatically from those outlined by the website itself.  *See* Exhibit F, https://www.3mearplugsfacts.com/privacy-policy/, at 4 (3M sites use "persistent cookies. . . . By assigning your computer a unique identifier, we are able to create a database of your previous choices and preferences[.]").

DATED: March 21, 2021

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

6

Adam Wolfson
Plaintiffs' Executive Committee
Quinn Emanuel Urquhart & Sullivan,
LLP
865 South Figureroa Street, 10th Fl.
Los Angeles, CA 90017
Tel.: (213) 443-3000
adamwolfson@quinnemanuel.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2021, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Christopher A. Seeger*