UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Estes*, 7:20cv137<br>*Hacker*, 7:20cv131<br>*Keefer*, 7:20cv104 | Case No. 3:19md2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

# ORDER

Defendants move for reconsideration of three specific rulings from the Court's prior orders on the parties' omnibus motions in limine: (1) the portion of its Order finding the six-page final CID Report admissible, *see* ECF No. 1693 at 5–9; (2) the portion of its Order granting Plaintiffs' motion to exclude "certain evidence of the state of mind, knowledge, or intentions of the military or its agents, including Dr. Doug Ohlin's, *see* ECF No. 1695 at 24–26; and (3) the portion of its Order excluding evidence of Hacker's alcohol use, *see* ECF No. 1695 at 32–33. On full consideration, Defendants' motion for reconsideration, ECF No. 1703, is **DENIED, in part and GRANTED, in part**.

While the Court "always remains free, in the exercise of sound judicial discretion, to alter a previously entered ruling on a motion in limine," *see FDIC v. Amos*, No. 3:12cv548, 2016 WL 7802146, at *1 (N.D. Fla. Feb. 5, 2016), "a motion

for reconsideration must show why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," *see Estate of Jennings v. Gulfshore Priv. Home Care, LLC*, No. 2:19-cv-72, 2020 WL 5805368, at *1 (M.D. Fla. Sept. 29, 2020) (citation and internal quotations omitted). Accordingly, "[a] motion to reconsider will be granted only if there is a change in controlling law, new evidence becomes available, or there is a 'need to correct clear error or manifest injustice.' " *See Parker v. Esper*, No. 3:19cv126, 2020 WL 4480739, at *1 (N.D. Fla. Aug. 4, 2020). "A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgement.' " *Quality of Life, Corp. v. City of Margate*, 805 F. App'x 762, 773 (11th Cir. 2020) (quoting *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010)); *see Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1235 (11th Cir. 2020) ("We have long held that district courts act well within their discretion when they refuse to consider arguments that a party made for the first time in a motion for reconsideration."). Defendants do not assert that there has been a change in controlling law or that new evidence has become available. Thus, Defendants must show that reconsideration is necessary "to correct clear error or manifest injustice." *See Parker*, 2020 WL 4480739, at *1.

## I. CID Report

The Court finds that Defendants' motion is due to be denied to the extent it seeks reconsideration of the Court's ruling that the six-page final CID Report (the "final report") is admissible under the public records exception to the rule against hearsay. *See* Fed. R. Evid. 803(8). As a threshold matter, Defendants' motion is due to be denied because it merely repeats their prior argument that the final report does not satisfy Rule 803(8) because SA Coleman did not have "a separate, non-hearsay basis for the witness interview summary in the final report." ECF No. 1703 at 4; *see* ECF No. 1664 at 17 ("[T]his 'summary' simply repeats unverified hearsay statements."); *Imperator v. Hartford Ins. Co.*, 803 F. App'x 229, 232 (11th Cir. 2020) (affirming district court's denial of plaintiff's motion for reconsideration where the motion "merely echoed [plaintiff's] arguments to differing degrees, presenting nothing new of substance or merit").

Moreover, even if the Court were to reconsider Defendants' argument, Defendants' motion would still fail. For one, "many government reports . . . have to rely in part on hearsay evidence, and the reports are generally not excluded for this reason." *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1309–10 (5th Cir. 1991); *see Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1348 (11th Cir. 2020) (affirming admission of OSHA reports based on investigations that included witness interviews). As the Court previously explained, the final report satisfies Rule 803(8)

because (1) the CID's investigation was a legally authorized investigation, (2) the final report contains SA Coleman's "factual findings" that the government personnel she interviewed "may not have purchased" the CAEv2 "had they known about the February 2000 test results," *see* CID Report at 3, and (3) the final report was approved by SA Coleman's supervising agent was circulated outside of the CID, *see* CID Report at 6–7. *See In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 848074, at *3 (N.D. Fla. Mar. 7, 2021). The final report is highly probative on the issue of the government's knowledge of the CAEv2's alleged performance issues.[1] *See id.* at *3 n.4.

Additional facts bolster the Court's finding that the final report satisfies Rule 803(8)'s requirements. First, the final report's "factual findings" are based not only on witness interviews, but also the CID investigators' review of Defense Logistics Agency ("DLA") and 3M documents. *See* CID Report at 9–11 (detailing review of DLA documents), 42–44 (detailing review of 3M documents); *see also id.* at 2 ("During the course of this investigation, numerous interviews *and record reviews* were conducted reference [sic] the testing resulting and contracting process." (emphasis added)); SA

---

[1] To be clear, the final report is not admissible to show that the CAEv2 is defective. The purpose of the CID's investigation was not to determine whether the CAEv2 was a defective product. *See* SA Coleman Depo. Tr. at 396 (Q. The CID report does not contain a finding by you that the product does not work. [objection omitted] True? A. It does not contain them."). Rather, the purpose of the CID's investigation was to determine whether or not the government knew about the February 2000 test results and to determine whether the February 2000 test results would have been material to the government's decision to purchase the CAEv2. *See* SA Coleman Depo. at 53–54, 125–26.

Coleman Depo. Tr. at 243–44 ("Q. Okay. . . . did all of these interviews and review of documents play a part in what you wrote in your final report dated December 13, 2018, on page 1 and 2, 3 through 5 of the full report? A. Yes."). Second, the witness interviews conducted as part of the CID's investigation were given under oath. 31 U.S.C. § 3733(h)(1) ("The officer before whom the testimony is to be taken shall put the witness on oath or affirmation . . . ."); s*ee* SA Coleman Depo. Tr. at 180–81. Third, attorneys from the DLA, DOJ, and CID were present at the witness interviews. *See* SA Coleman Depo. Tr. at 181; CID Report at 26, 36, 37, 38, 40. Each of these additional facts reinforces the final report's trustworthiness because the final report "was compiled or prepared in a way that indicates that its conclusions can be relied upon ("reliability")." *See Moss*, 933 F.2d at 1306–07 (explaining that "in determining trustworthiness under Rule 803(8)[], credibility of the report itself or the testimony in the report are not the focus. Instead, the focus is the report's *reliability*").

Finally, the policy underlying Rule 803(8) is "[b]road admissibility of public records containing evaluative conclusions." *See Crawford*, 977 F.3d at 1349 (quoting *Rainey v. Beech Aircraft Corp.*, 827 F.2d 1498, 1512–13 (11th Cir. 1987) (Tjoflat, J., concurring)). Accordingly, the public records exception "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." *See* Fed. R. Evid. 803 advisory committee's notes to 1972 amendments; *Solarcom, LLC v. Fleet Bus. Credit, LLC*, No. 1:05-CV-0125, 2006 WL 8431899, at

\*5 (N.D. Ga. Feb. 1, 2006) ("Under Rule 803(8)[], there is a presumption in favor of admissibility of public reports, and the party moving for exclusion bears the burden of proving untrustworthiness."). Defendants have not made any showing that the final report is untrustworthy.

Accordingly, Defendants' motion is **DENIED** to the extent it seeks reconsideration of the Court's ruling that the final report is admissible under Rule 803(8).

## II.    Dr. Ohlin's Statements

On second look, the Court agrees, in part, with Defendants that certain out-of-court statements allegedly made by Dr. Ohlin are admissible for a limited non-hearsay purpose. In its Order, the Court excluded certain out-of-court statements allegedly made by Dr. Ohlin. *See In re: Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 918214, at \*8 (N.D. Fla. Mar. 10, 2021). First, the Court excluded statements Dr. Ohlin allegedly made to Elliot Berger[2] during a December 16, 1997, meeting at Aberdeen Proving Ground (the "Aberdeen Meeting"). Defendants sought to introduce these statements through Berger's notes from the Aberdeen Meeting and his testimony at trial. *See* ECF No. 1663-16 at 4 (copy of Berger's meeting

---

[2] Berger "spent his entire career with E-A-R, Aearo, and 3M, where he worked in and subsequently managed the acoustics laboratory and conducted product development research as well as basic scientific research." *See* Berger Rule 26(A)(2)(C) Disclosure [ECF No. 1663-15] at 2.

notes, stating that Dr. Ohlin "[a]ccepts our plug because they have had good experience with Comfit. Would not accept 2 different plugs, i.e. one nonlinear and one conventional. Is interested in 2-ended plug 1-size plug because easier to dispense and they are losing so many field audiologists that they need a less labor-intensive item to use"); Berger Depo. Tr. (12/12/2019) [ECF No. 1663-17] at 59–62; *see also* Berger Rule 26(A)(2)(C) Disclosure [ECF No. 1663-15] at 5, 10–11. Second, the Court excluded statements Dr. Ohlin allegedly made to Marc Santoro.[3] According to Santoro, Dr. Ohlin "requested the [CAEv2] to be put in a bulk pack," "requested that specifically 50 pair in a . . . plastic bag, with nothing else in there, inside a box," and told Santoro to not include instructions in that box because "[h]e felt that personal training was the most effective way to train the soldiers, and that the military audiologists were going to take on that responsibility of individually training every solider." *See* Santoro Depo. Tr. [ECF No. 1663-9] at 327–29. The Court found that these statements were inadmissible hearsay because, contrary to Defendants' insistence that the statements would be offered to show their effect on Defendants' employees, "the real reason Defendants seek to offer Dr. Ohlin's statements is to prove the truth of the matters asserted in them:" that the military approved the CAEv2's design and that the military did not want instructions included in the CAEv2's packaging. *See In re: 3M*, 2021 WL

---

[3] Santoro was a 3M employee at the time Dr. Ohlin allegedly made the statements to him. *See* Santoro Depo. Tr. [ECF No. 1663-9] at 327–28.

918214, at *8–9 (citing *McKay v. Tracor, Inc.*, No. CV-03-BE-0590, 2005 WL 8158361, at *1 (N.D. Ala. Mar. 22, 2005)).

In their motion, Defendants again insist that they intend to use Dr. Ohlin's statements "only so that they can present the full story of the design and development of the CAEv2." *See* ECF No. 1703 at 10. After consideration of Defendants' representations at the pretrial conference, the Court agrees that portions of Dr. Ohlin's statements are admissible for the limited non-hearsay purpose of showing the statements' effect on the listeners. *See* Fed. R. Evid. 801(1)(c); *United States v. Hart*, No. 20-11096, --- F. App'x ----, 2021 WL 373097, at *1 (11th Cir. Feb. 3, 2021). Defendants may only use Dr. Ohlin's statements at the Aberdeen Meeting for the purpose of showing that, after the Aberdeen Meeting, Berger had an understanding that the Army wanted a dual-ended, single-sized plug with a nonlinear filter. On the other hand, the Court denies Defendants' motion to the extent it seeks reconsideration of the Court's exclusion of Dr. Ohlin's alleged statement at the Aberdeen Meeting that the Army was "losing so many field audiologists that they need[ed] a less labor-intensive item to use," *See* ECF No. 1663-16 at 4. This alleged statement regarding the reasons for the Army's interest in certain design features is irrelevant to the effect of the statement on the listener, so the statement is excluded.[4] Similarly, Defendants may only

---

[4] Even assuming this statement were admissible as non-hearsay, the Court would still exclude it because any probative value of the statement to show its effect on Berger is substantially outweighed by a danger of unfair prejudice and jury confusion. Fed. R. Evid. 403; *see Dresser v.*

use Dr. Ohlin's statements to Santoro for the purpose of showing that Santoro had an understanding that the Army did not want 3M to include instructions in the CAEv2's bulk packaging. The Court also finds that Dr. Ohlin's alleged statement to Santoro that "[h]e felt that personal training was the most effective way to train the soldiers, and that the military audiologists were going to take on that responsibility of individually training every solider," *see* Santoro Depo. Tr. at 326–27, is admissible for the non-hearsay purpose of showing the statement's effect on the listener. Specifically, this alleged statement may be used to show that Santoro understood that Dr. Ohlin did not want Defendants to include *instructions*—as distinct from *warnings*—in the CAEv2's bulk packaging. Importantly, the Court finds that its concerns over the danger of improper use of Dr. Ohlin's and/or Santoro's statements can be adequately addressed by a jury instruction limiting the purpose for which the jury may consider them and an instruction regarding the Court's ruling on Defendants' government contractor defense.[5]

---

*Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006) ("[W]hen the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the proper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence." (citing *United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir. 1980))).

[5] The Court remains concerned that Defendants will—contrary to the Court's grant of summary judgment for Plaintiffs on Defendants' government contractor defense, *see In re 3M Prods. Liab. Litig.*, 474 F. Supp. 3d 1231 (N.D. Fla. 2020)—argue to the jury that the government dictated, directed, approved, or otherwise exercised discretion with respect to military specifications for aspects of the design of the CAEv2. Indeed, in an article published on the first day of the pretrial conference, Law360 quoted a "3M spokesman" as stating, "As we will demonstrate at trial, the Combat Arms Earplugs Version 2 product is effective and safe to use, and **its design, development**

Accordingly, Defendants' motion is **GRANTED, in part** to the extent it seeks reconsideration of the Court's ruling that Dr. Ohlin's statements are inadmissible hearsay. Defendants may offer evidence of Dr. Ohlin's statements at the Aberdeen Meeting for the limited non-hearsay purpose of showing their effect on Berger, but Defendants may not offer evidence of Dr. Ohlin's statements regarding his or the Army's reasons for making the statements to Berger. Defendants may offer evidence of Dr. Ohlin's statements to Santoro, including Dr. Ohlin's statements regarding his or the Army's reasons for making the statements, for the limited non-hearsay purpose of showing their effect on Santoro.

## III.  Hacker's Alcohol Abuse

The Court incorrectly granted Plaintiffs' motion in limine to exclude evidence of Hacker's alcohol abuse as unopposed because Defendants embedded their response to the motion within their response to a separate motion in limine. On reconsideration, the Court finds that evidence of Hacker's alcohol abuse may be admissible to rebut Hacker's claims for non-economic damages. Specifically, if Hacker argues in his case-in-chief that he suffers mental anguish and emotional distress due to hearing-related injuries from his use of the CAEv2, Defendants will be entitled to rebut the argument

---

**and testing reflect the direction, feedback and approval of individuals acting on the military's behalf."** See Emily Field, *Experts Barred From Testifying In 3M Earplug MDL*, Law360 (Mar. 15, 2021, 6:16 PM), https://www.law360.com/articles/1364990/experts-barred-from-testifying-in-3m-earplug-mdl (emphasis added).

Case 3:19-md-02885-MCR-GRJ   Document 1725   Filed 03/24/21   Page 11 of 12

Page 11 of 12

with evidence of other stressors in Hacker's life, such as alcohol abuse, that may have caused or contributed to his alleged mental anguish and emotional distress. *See Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1072 (11th Cir. 2014) (finding district court erred in excluding evidence of decedent's alcohol abuse because it was highly relevant to, among other things, his widow's claim for emotional damages); *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1475 (11th Cir. 1984) (affirming admission of evidence of plaintiff's use of alcohol and drugs as relevant to his claim for mental anguish and to rebut testimony of plaintiff's quality of life before the accident).[6] To be clear, if Hacker opens the door to such evidence, Defendants may not get into the specific details of any "bad act" by Hacker that occurred while he was abusing alcohol, but instead may only generally reference alcohol abuse that occurred during his military service. Given this limitation, such evidence is highly probative to the issue of mental and emotional damages and its probative value is not substantially outweighed by a danger of unfair prejudice. Defendants' motion is therefore **GRANTED in part** to the extent it seeks reconsideration of the Court's ruling that evidence of Hacker's alcohol abuse is inadmissible for any purpose.

---

[6] Plaintiffs, citing *Sowers v. R.J. Reynolds*, No. 3:09 C 11829, 2015 WL 12839775, at *10 (M.D. Fla. Jan. 23, 2015), argue that Hacker's alcohol abuse is not probative because he ceased abusing alcohol in 2014. The Court disagrees. Unlike in *Sowers*, where the decedent's alcohol abuse was not relevant to damages because there was no evidence to suggest that the decedent's alcohol abuse "left a lingering effect on the family" because he had stopped drinking approximately twenty years before he died, *see* 2015 WL 12839775, at *10, Hacker's alcohol abuse occurred within the past seven years and is therefore probative to his claim for non-economic damages.

Accordingly, Defendants' motion for reconsideration, ECF No. 1703, is **GRANTED in part** consistent with this Order.

**DONE AND ORDERED** this 24th day of March 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**