**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION )  )  )  ) | Case No. 3:19-md-2885 |
| *This document relates to: All actions*   ) ) | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**REPLY IN SUPPORT OF LIMITED OBJECTION AND MOTION TO MODIFY COMMON BENEFIT ORDER**

As the Minnesota PLC pointed out in seeking leave to reply, Federal/State Liaison Rick Paul informed the Court and the MDL PLC of the Minnesota common benefit order the day it was entered. *See* Doc. 1717 at 1–2; Doc. 1717-1, Decl. of Rick Paul, at 3, ¶4. The MDL PLC admitted as much in its subsequent filing. *See* Doc. 1720.

To keep the coordination of the two consolidated litigations, the Minnesota PLC asked the Minnesota court to adopt many of the same type of pretrial orders as this Court entered at the outset of the MDL litigation, including a Common Benefit Order that was largely modeled after one entered by the same Minnesota court in the *In re Syngenta* litigation. Although Mr. Paul reached out to Mr. Aylstock about a mutually agreeable common benefit process prior to entry of the Minnesota Common Benefit Order, the MDL and Minnesota PLC were in the midst of deposition discovery at the time and discussions never advanced. Doc. 1717-1 at 3–4, ¶ 5–6.

1

Initially, both common benefit orders set up processes for submitting and reviewing proposed common benefit time/expenses. The MDL common benefit order did not set a percentage holdback and neither order imposed a deadline to participate without penalty. Now that this Court has entered Common Benefit Order No. 3, which sets percentage holdbacks, imposes a deadline to participate without facing a six percent penalty and a deadline to object, the Minnesota PLC felt that it had to interpose an objection to avoid facing a waiver argument.

The Minnesota PLC requests that the Court grant its motion and coordinate with the Minnesota state court to adopt a shared common benefit process. In their continuing effort to coordinate these litigations, the Minnesota PLC will seek to amend the Minnesota Common Benefit Order to align the with the MDL Order so long as the common benefit work performed by the Minnesota PLC is recognized. To be clear, though, the Minnesota PLC reiterate that the best solution here is for the two courts to direct the leadership of both litigations to work with Special Masters Herndon and Keyes to reach a mutually acceptable agreement.

**A. The Minnesota Common Benefit Order was not a failure to coordinate.**

The fact that Mr. Paul and Mr. Aylstock did not reach an agreement was not a failure to coordinate but simply a lack of reaching an agreement. But until Common Benefit Order No. 3, there was no overlapping assessment or deadlines that precipitated motion practice. Now that this Court's revised common benefit order

imposes obligations on the Minnesota PLC, including a penalty for not signing the participation agreement timely, coordinated resolution is needed.

To be clear, the Minnesota PLC firmly believes that cooperation remains in the best interest of efficiency, equity, and federalism. While the Minnesota PLC was forced to preserve its jurisdictional objection under the circumstances, the opening objection acknowledged the substantial work performed by the MDL PLC and agreed to work toward a solution that would compensate the MDL PLC for the common benefit work product they created.

In the same vein, however, the Minnesota PLC has also performed a substantial amount of common benefit work and fully funded the related litigation expenses, including a separate panel of expert witnesses. The Minnesota PLC's work benefits the entire litigation, not the least because it provides an additional venue to try a massive backlog of cases and because the first Minnesota bellwether trials will provide information about civilian plaintiffs' claims, as opposed to the soldier claims being heard in this Court. Cooperation will ensure that all attorneys working to resolve this litigation receive fair compensation.

**B. Minnesota Plaintiffs should not bear a higher common benefit assessment.**

The MDL PLC concedes it did not provide the Minnesota PLC access to expert discovery. Doc. 1700 at 15. Minnesota PLC thus worked up and funded their own

expert witnesses. It would thus be unfair to require Minnesota plaintiffs to pay full price and subsidize work product that undisputedly will not benefit them.

Meanwhile, the Minnesota PLC has worked diligently to prepare for trial in Minnesota state court. The mostly civilian plaintiffs in the Minnesota Coordinated Proceedings necessitated mostly different expert work product, and the Minnesota PLC has spent many hours on expert discovery and depositions. Doc. 1717-1 at 4, ¶ 6. In addition, the Minnesota PLC has already briefed and argued *Frye-Mack* (the Minnesota equivalent of *Daubert)* motions for those experts.

The Minnesota PLC has also handled pretrial proceedings in the first remanded *Graves* case, including several dispositive motions: motions for summary judgment on Mr. Graves's failure-to-warn claim and on Defendants' government contractor defense. The Minnesota PLC recently won a motion to add a punitive damages' claim to Mr. Graves's case as well, and the Minnesota PLC anticipates extending this victory to other cases in coming weeks. *See* Ord. on Punitive Damages (Hennepin Cty. Dist. Ct. Mar. 5, 2021), attached as Exhibit A.[1] The Minnesota PLC will soon begin pretrial proceedings in other cases, as the separate Minnesota bellwether selection process recently completed. And, until 3M sought a

---

[1] The Order grants leave to amend the plaintiff's complaint to seek punitive damages. Ex. A at 1. Under Minnesota law, a complaint cannot seek punitive damages at the beginning of an action; a party must move to amend to seek punitive damages after filing suit and support the motion with clear and convincing evidence. *See* Minn. Stat. § 549.121.

continuance, the Minnesota PLC were preparing to begin trial on March 29 simultaneous with the first trial in this Court.

In preparing for trial, the Minnesota MDL are creating its own trial materials for Minnesota state court and there has, to date, been no collaboration on trial preparation. Further, much of the MDL PLC's discovery is framed in the context of "soldiers" or "the military" and, for that reason, Minnesota PLC are working to develop trial materials useable in a trial on behalf of civilians. Given the trial preparation work, it is clear that trying a civilian case is not like trying a soldier case. The MDL PLC's trial materials, even if shared, will be of limited value in the Minnesota civilian cases.

Each Court's respective common benefit process should acknowledge the work of the Minnesota PLC as it acknowledges (and to which the Minnesota PLC agrees) the important work of the MDL PLC. Having an additional court holding trials in the largest multi-district litigation in history, particularly on issues/plaintiffs unique to the currently-scheduled trials in the MDL, provides value to all plaintiffs. Although there has been coordination between the MDL PLC and the Minnesota PLC, there has been little collaboration. The substantial work the Minnesota PLC has had to do to litigate its cases demonstrates that the Minnesota PLC has been working independently of the MDL PLC, not free riding. Because the Minnesota PLC will have a similar, albeit smaller, claim for payment of common benefit

fees/expenses, Minnesota plaintiffs should thus not be penalized with double taxation if assessed with a full assessment in the MDL.

### C. The Minnesota PLC did not waive its objections.

Finally, the MDL PLC wrongly claims the Minnesota PLC waived its objections to the common benefit order for two reasons. First, because it misconstrues the nature of the Court's subject matter jurisdiction and, second, because it disregards the procedure the Court created to hear objections to Common Benefit Order No. 3.

Because the Minnesota PLC's jurisdictional objection involves the subject matter jurisdiction of this Court, it cannot be waived. *See In re Heatherwood Holdings, LLC*, 746 F.3d 1206, 1216 (11th Cir. 2014) ("Parties cannot waive subject matter jurisdiction, and [the court] may consider subject matter jurisdiction claims at any time during litigation.") (alteration adopted). Even absent an objection, this Court would have a duty to assure itself of jurisdiction. "[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The Court therefore must consider the Minnesota PLC's jurisdictional objection.

Second, this Court expressly invited objections to Common Benefit Order No. 3. *See* Doc. 1659 at 7. The Minnesota PLC duly objected by the deadline. *See* Doc. 1683. The MDL PLC does not dispute the objection's timeliness. *See generally* Doc.

1700. That should end the waiver analysis. But the MDL PLC nonetheless argues that the Minnesota PLC should have objected to earlier common benefit orders. *Id.* at 17. Accepting this position would require accepting the premise that Common Benefit Order No. 3 created a pointless procedure – inviting objections that had already been waived.[2]

Moreover, the Court's most recent order is the Minnesota PLC's first opportunity to object to the holdback amount. The earlier common benefit orders did not set a holdback amount, nor did they create any procedure for objections. *Compare* Doc. 488 and Doc. 900, *with* Doc. 1659. The MDL PLC nonetheless claims the Minnesota PLC should have objected way back when. But the MDL PLC never explains what exactly the Minnesota PLC should have objected to as there was not a conflict at that time. A holdback objection to an order that did not set a holdback amount would have done little good. And the Court would no doubt have considered such an objection unripe. As the Court observed at the time, its first common benefit order "merely provides guidance so that, *should the issue become ripe*, any attorneys applying for common benefit fees or expenses will have notice of the standards that will be employed in assessing those applications." Doc. 488 at 1 (emphasis added).

---

[2] The MDL PLC does not make the point, but it bears mention that the objection procedure is not simply for counsel who join the MDL in the future. The Court set one deadline for objections from counsel "who currently have cases pending in this MDL court or any state court" and a separate deadline for "Claimants' counsel who do not yet have a case file in the MDL or any state court." Doc. 1659 at 7.

7

In the circumstances, the Court should consider the merits of the objection its Order invited.

## CONCLUSION

The Minnesota PLC respectfully requests that the Court grant its request and coordinate with the Minnesota court on an equitable common benefit process.

Date: March 30, 2021                                    Respectfully submitted,

**PAUL LLP**
*/s/ Richard M. Paul III*
Richard M. Paul III
Ashlea G. Schwarz
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

In compliance with L.R. 5.1(F), the undersigned certifies that a true and correct copy of the foregoing was filed via the Court's CM/ECF system on March 30, 2021, which sends notice to all counsel of record.

*/s/ Richard M. Paul III*