UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *McCombs*, 7:20cv94 *Baker*, 7:20cv39 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**

This Order addresses the parties' remaining expert challenges to Dr. Packer (*Baker*), Dr. Fagelson (*McCombs*), and Dr. Driscoll in (*McCombs*), and resolves the parties' omnibus motions to exclude these experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**I.      Legal Standard**

Rule 702, as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under Rule 702 and *Daubert*, district courts are compelled to act as "gatekeepers" to ensure the reliability and relevancy of expert testimony. *Id.* (quoting *Daubert*, 509 U.S. at 589). Expert testimony is reliable and relevant—and, therefore, admissible—when the following criteria are met: (1) the expert is sufficiently qualified to testify about the matters he intends to address; (2) the methodology used is "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*;

and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* The Eleventh Circuit refers to these criteria separately as "qualification, reliability, and helpfulness," *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004), and has emphasized that they are "distinct concepts that courts and litigants must take care not to conflate," *Quiet Tech. DC-8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The party offering the expert has the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Rink*, 400 F.3d at 1292.

To meet the qualification requirement, a party must show that its expert has sufficient "knowledge, skill, experience, training, or education to form a reliable opinion about an issue that is before the court." *Hendrix ex. Rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (citing Fed. R. Evid. 702) ("*Hendrix II*"), *aff'g* 255 F.R.D. 568 (N.D. Fla. 2009) ("*Hendrix I*"). Importantly, if a "witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). The qualifications standard for expert testimony is "not stringent" and "[s]o long as the witness is minimally qualified, objections to the level of [his]

expertise [go] to credibility and weight, not admissibility." *Hendrix I*, 255 F.R.D. at 585.

To meet the reliability requirement, an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue. *Frazier*, 387 F.3d at 1261-62. The reliability analysis is guided by several factors, including: (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. "[T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech.*, 326 F.3d at 1341. The court's focus must be on the expert's principles and methodology, not the conclusions they generate. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. The test for reliability is "flexible" and courts have "broad latitude" in determining both how and whether this requirement is met. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

Finally, to satisfy the helpfulness requirement, expert testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th

Cir. 1985). Relevant expert testimony "logically advances a material aspect of the proposing party's case" and "fits" the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004). Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded [under Federal Rule of Evidence] 403." *Frazier*, 387 F.3d at 1263 (internal citations excluded). "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming," or if it is otherwise unfairly prejudicial. *Id*. "Indeed, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id*. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the districts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id*.

When scrutinizing the reliability, relevance, and potential prejudice of expert testimony, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate factfinder. *Frazier*, 387 F.3d at 1272.

The court's gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Only the jury may determine "where the truth in any case lies" and the court "may not usurp this function." *Frazier*, 387 F.3d at 1272. Thus, a court may not "evaluate the credibility of opposing experts" or the persuasiveness of their conclusions, *Quiet Tech.*, 326 F.3d at 1341; instead, its duty is limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence," *Frazier*, 387 F.3d at 1272.

## II. Defendants' Experts

Plaintiffs' remaining expert challenge is directed to opinions of Dennis Driscoll. Driscoll is a mechanical engineer and board-certified noise control engineer. He obtained his master of science in mechanical engineering in 1980 and has worked an acoustical consultant since 1998. Driscoll Rep., ECF No. 1595-67, at 3, 12. He is currently President and Principal Consultant of his own professional acoustical engineering firm, Driscoll Acoustics, LLC, which specializes in "noise measurement, noise exposure assessment, noise control engineering, and hearing loss prevention." *Id.* at 3.

Driscoll offers several opinions in McCombs' case regarding his hearing injuries and his use of hearing protection devices while in the military. More specifically, Driscoll opines that (1) McCombs faced a "significant risk" for noise-

induced hearing loss and tinnitus at the time a military truck on which he was positioned as the gunner was struck by an improvised explosive device (IED) in Afghanistan in 2009; (2) McCombs does not have noise-induced hearing loss (NIHL) as a result of his military service; and (3) "[t]he audiograms of Mr. McCombs support that the hearing protection devices he used during his service protected his hearing."[1]  See Driscoll Rep., ECF No. 1595-67 at 8.  Plaintiff argues that Driscoll's opinions must be excluded because he is not qualified, and he also fails to provide a reliable methodology, to support his opinion on the cause of McCombs' tinnitus and "related injuries."  Plaintiff also argues that the remainder of Driscoll's opinions are unhelpful to the jury.

First, Driscoll will not be permitted to offer the opinion that McCombs does not have noise-induced hearing loss as a result of his military service.  Driscoll is not qualified to diagnose McCombs' hearing injuries or opine on why McCombs does not have noise-induced hearing loss because he is an engineer, not a medical doctor or audiologist, he has no medical education, training, or experience, and he has never treated or diagnosed a patient for tinnitus or hearing loss.  Driscoll Dep.,

---

[1] Defendants argue that Driscoll offers only two opinions, not three, as set out in his report.  According to Defendants, Driscoll's conclusion that McCombs does not have noise-induced hearing loss from his Army service is merely an assumption on which Driscoll may rely for the basis of one of his other opinions.  See Defs.' Resp., ECF No. 1627 at 62.  But at his deposition, Driscoll testified that this conclusion is specifically "not an assumption," but rather a separate expert opinion he is offering in McCombs' case.  See Driscoll Dep., ECF 1627-51 at 5-6, 8.

ECF No. 1595-68 at 3-4; *see In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 830309, at *6 (N.D. Fla. Mar. 4, 2021) (Rodgers, J.) (precluding specific causation opinions of mechanical engineer because he was not a medical doctor or audiologist); *Day v. RM Trucking, Inc.*, No. 3:11-CV-400-J-25 MCR, 2012 WL 12906568, at *1 (M.D. Fla. Aug. 31, 2012) (allowing qualified biomechanical expert to provide biomechanical testimony but not testimony "that specifically opines that the forces exerted in the crash did not cause Plaintiff's specific injuries"); *see also Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014) ("Expertise in one field does not qualify a witness to testify about others.").

Even if Driscoll was qualified to offer this specific-causation opinion, Plaintiff argues that the opinion is "merely a restatement of the diagnoses made by other experts" and is not supported by a reliable methodology.[2] Pls.' Mot., ECF No. 1595 at 71. The Court agrees. "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002); *TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (finding expert testimony

---

[2] Plaintiff also argues that Driscoll's opinion is unreliable because it is not supported by a differential diagnosis. But as this Court previously held, an expert's failure to perform a differential diagnosis in rendering a specific causation opinion alone does not compel exclusion of the expert's testimony if the opinion is otherwise reliable. *In re 3M*, No. 3:19MD2885, 2021 WL 830309, at *5 (N.D. Fla. Mar. 4, 2021) (Rodgers, J.).

inadmissible where he adopted the predictions of another expert" because he "in essence assumed the very matter at issue on which he was called to express his opinion," even though he lacked any familiarity with the methods and reasoning used by that other expert); *Abrams v. Ciba Specialty Chemicals Corp.*, No. CIV.A. 08-0068-WS-B, 2010 WL 779283, at *4 (S.D. Ala. Mar. 2, 2010) (excluding an expert's opinions where the expert treated another expert's opinions as his own, despite having no expertise in the field); *see also Lowery v. Sanofi-Aventis LLC*, No. 7:18-CV-00376-RDP, 2021 WL 872620, at *15 (N.D. Ala. Mar. 9, 2021) (finding unreliable a differential diagnosis that included a "bare-bones reliance on a treating physician's clinical impressions," without an analysis on why it supported ruling out one diagnosis while ruling in another).  Here, Driscoll generally lists "discovery documents," McCombs' testimony, other expert reports, OSHA and NIOSH regulations, a military database for sound pressure levels and noise exposures, scientific literature, and his education, training, and experience as the basis for *all* of his opinions.  *See* Driscoll Rep., ECF 1595-67 at 8.  But when asked specifically about the basis for his specific-causation opinion at his deposition, he testified that he was "citing the medical experts' opinions" and "[r]elying on the evidence of other experts and their conclusions with regard to Mr. McCombs' hearing status" in reaching his opinion, *see* Driscoll Dep., ECF 1627-51 at 9-10, instead of applying

his own expertise to analyze the medical experts' opinions and reach his own opinion.

Defendants nevertheless argue that Driscoll "used [a] reliable methodology to arrive at [his] opinions," without explaining that methodology. *See* Defs.' Opp., ECF No. 1627 at 61. To the extent Defendants believe that Driscoll employed a reliable methodology by otherwise basing his opinion on the documents he reviewed and his experience, Defendants are wrong. Experts may rely on their professional experience in offering expert testimony only if they "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Frazier*, 387 F.3d at 1261; *see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained."). Here, Driscoll failed to explain how, from the materials he reviewed and his non-medical experience, he reached the conclusion that McCombs does not have NIHL as a result of his military service. Thus, Driscoll's opinion that McCombs does not have NIHL as a result of his military service is not supported by a reliable methodology and is inadmissible.

Plaintiff challenges Driscoll's remaining two opinions as unhelpful to the jury. More specifically, according to Plaintiff, Driscoll's opinion that McCombs wore

hearing protection devices during his military service is unhelpful because it is not an insight beyond the understanding of a juror, but rather a "personal" opinion and "assumption" he made from the factual record.[3] Defendants did not respond to this challenge, and have therefore waived any argument in response. *See also United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion."); N.D. Fla. L. R. 7.1(H) ("The Court may grant a motion by default if an opposing party does not file a memorandum."). In any event, the Court agrees that this opinion is not helpful to the jury. For an expert's testimony to be helpful under Rule 702 and *Daubert*, it must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *Rouco,* 765 F.2d at 995. According to Driscoll's report and deposition testimony, his opinion that McCombs' use of hearing protection devices protected his hearing is based entirely on McCombs' audiograms. *See* Driscoll Rep., ECF No. 1595-67 at 8. Yet, according to Driscoll, he is not "interpret[ing] the results" of any audiograms[4]; he is

---

[3] At his deposition, Driscoll testified that he was "not going to offer an opinion" on "whether the evidence is conflicting regarding Mr. McCombs's CAEv2 use at the time of an IED attack in April 2009" in forming his opinion on the risks of noise-induced hearing injury at that time. Driscoll Dep., ECF No. 1595-68 at 14. Thus, Driscoll's opinion that McCombs wore hearing protection devices during his military service pertains only to the conclusion that those hearing protection devices protected McCombs' hearing.

[4] For sure, Driscoll is not qualified to interpret audiogram results, given his lack of any medical or audiological experience. *See supra* at 6-7.

merely "read[ing] the report and what the audiologist or medical person reported." Driscoll Dep., ECF No. 1595-68 at 4-5. Merely restating what is reported in audiograms is not helpful to the jury because it does not provide any insight or analysis beyond what the jury can read from the audiogram themselves with the assistance of a qualified audiologist or ENT. Moreover, the probative value of Driscoll's opinion, which is nothing more than lay opinion testimony disguised as "expert" testimony, is substantially outweighed by a risk that his testimony will confuse or mislead the jury, and is cumulative of the testimony of other experts who are qualified to actually interpret McCombs' audiograms. *See* Fed. R. Civ. P. 403; *Frazier*, 387 F.3d at 1263 ("Exclusion under Rule 403 is appropriate . . . if the expert testimony is cumulative or needlessly time consuming."). Accordingly, Driscoll's opinion that "[t]he audiograms of Mr. McCombs support that the hearing protection devices he used during his service protected his hearing" is unhelpful and inadmissible under Rules 403 and 702.[5]

Plaintiff also argues that Driscoll's opinion regarding McCombs' risk of hearing injury in Afghanistan at the time his truck was struck by an IED is unhelpful to the jury because it is contradictory. More specifically, Driscoll opines that "even with the green end of the CAEv2 tightly inserted and sealed again [sic] the entrance

---

[5] To the extent this opinion amounts to a specific-causation opinion, it is inadmissible for the same reasons Driscoll's opinion that McCombs does not have NIHL as a result of his military service is inadmissible. *See supra* at 7-9.

of the ear canal," McCombs would have faced a peak sound pressure level of 173 dB during the 2009 IED blast in Afghanistan when applying a "real-world" NRR of 7, instead of the 22 NRR on the label, to the green end.  *See* Driscoll Rep., ECF No. 1595-67 at 8.  Plaintiff argues that this statement contradicts Driscoll's own definition of the "real-world" NRR valuation because the real-world value accounts for all user-related issues and does not presume a tight and proper seal.  *See* Pl.'s Mot., ECF No. 1595 at 72.  To the extent this is contradictory, the Court disagrees that it renders Driscoll's opinion inadmissible.  "The fact that [an expert] arguably contradicted himself . . . does not bear upon the admissibility of his testimony, but upon his credibility, which is a jury determination."  *Gonzalez v. Inman Trucking, Inc.*, No. EP-16-CV-6-PRM, 2017 WL 7905499, at *5 (W.D. Tex. June 20, 2017); *In re 3M*, No. 3:19MD2885, 2021 WL 765019, at *26 (N.D. Fla. Feb. 28, 2021) (Rodgers, J.) ("To the extent [the expert's] actual deposition testimony can be viewed as conflicting with his previously given opinions . . . that is a matter affecting the weight and credibility of his opinion, not its admissibility."); *see also United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) ("[B]y concentrating on [the expert's] contradictory, evasive, and 'speculative' responses, the district court erroneously shifted the focus of its [*Daubert*] inquiry to the credibility of [the expert] as a witness.").  Thus, Plaintiff's objections to Driscoll's opinion in this regard go to weight, not admissibility.

### III. Plaintiffs' Experts

Defendants' remaining expert challenges are directed at Dr. Mark Parker's opinions related to Baker's post-traumatic stress disorder (PTSD)[6] and Dr. Marc Fagelson's opinions related to McCombs' PTSD and sleep disorder.

#### a. Dr. Mark Packer

Dr. Packer is board-certified in otolaryngology, otology, and neurotology, and currently serves as the Medical Director of Neurotology at Mercy Hospital in St. Louis. He previously served in the United States Air Force, and spent seven years as the Interim, and then Executive, Director of the Department of Defense Hearing Center of Excellence. *See* Packer Rep., ECF No. 1606-12 at 2, 5-11. Dr. Packer offers an opinion in Baker's case that "[h]earing loss may also impact on PTSD as an additive factor in the anxiety and depression that often develops as a consequence of these injuries." Packer Rep. ECF No. 1606-12 at 28. At his deposition, Dr. Packer further explained that "[Baker] is at increased risk for . . . the noise-induced hearing loss and tinnitus, potentially exacerbating his now-in-remission PTSD, and/or that if his PTSD recurs and becomes worse, that that could aggravate and make his tinnitus worse specifically." Packer Dep., ECF No. 1606-9 at 32-33. Defendants argue that

---

[6] Defendants also moved separately on non-*Daubert* grounds to preclude all testimony or evidence relating to Baker's mental health, to include Dr. Packer's testimony. *See Baker*, ECF No. 51. The Court denied the motion. *See Baker*, ECF No. 73 at 8-12.

Dr. Packer's opinion is speculative because he opines that hearing loss or tinnitus "may" affect Baker's PTSD.[7]

The Court disagrees. First, Dr. Packer's opinion is not speculative because he is not offering the opinion that Baker's hearing loss or tinnitus may lead to a possible future PTSD diagnosis. According to Baker's medical records, on which Dr. Packer relied, Baker was diagnosed with PTSD in 2015, and Dr. Packer properly relied on that diagnosis as a factual basis for his opinion on the relationship between McCombs' tinnitus and PTSD. *See* Packer Rep. (McCombs), ECF No. 1606-12 at 25-26; *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1217 (S.D. Fla. 2016) (finding expert testimony based on 26-year experience as an orthopedic surgeon and review of plaintiff's medical records admissible); *Milbrath v. NCL (Bahamas) Ltd.*, No. 17-CV-22071, 2018 WL 2291307, at *2 (S.D. Fla. May 18, 2018) (finding expert opinion based on plaintiff's medical records, deposition testimony, and expert's two decades of experience as a board-certified neurologist reliable); *see also Haller v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1271, 1295 (M.D. Fla. 2009) ("[T]he Court does not deem it necessarily fatal that an expert medical witness has relied on medical records alone to reach a specific causation opinion.").

---

[7] Defendants do not challenge Dr. Packer's opinion on qualifications grounds.

Also, Dr. Packer's opinion is not devoid of any analysis. As he explained in his general report[8], "[n]oise induced hearing loss and tinnitus have long been associated with co-morbid psychiatric conditions," and in fact, "[s]everal systematic reviews of the literature have linked tinnitus to psychiatric disorders, with a high prevalence of anxiety and depression seen." Packer Rep., ECF No. 1631-23 at 40-41; *see also id.* at 42 ("The association of hearing loss in general and noise-induced hearing loss and tinnitus specifically and their association with depression, anxiety . . . is well recognized.").

Moreover, Dr. Packer's experience in psychology and extensive experience in otology and neurotology, together with his explanation of how that experience informed his PTSD opinion, provides a reliable basis for his opinion. *See Frazier*, 387 F.3d at 1261 (finding experts relying on their experience must explain "how that experience is reliable applied to the facts"). For his opinion, Dr. Packer relied on his "experience, training, background and associations and searches of the literature, [and his] understanding of the progression of . . . noise-induced hearing loss and tinnitus, and psych health issues, including PTSD. Packer Dep., ECF No. 1606-9 at 32. That experience includes his degree in psychology, experience at psychiatric hospitals, his examination and treatment of patients with PTSD and patients with

---

[8] In his case-specific report, Dr. Packer references his general report as a reliance material. *See* Packer Rep. (McCombs), ECF No. 1606-12 at 2.

hearing loss and tinnitus who also have depression, and his experience at the Hearing Center of Excellence looking at associations between psychological health issues and hearing loss and tinnitus. *Id.* at 30-31; Packer Rep. (McCombs), ECF No. 1606-12 at 12. This is sufficient under *Daubert*. *See United States Sec. & Exch. Comm'n v. Spartan Sec. Grp., Ltd*, No. 8:19-CV-448-T-33CPT, 2020 WL 7024885, at *4 (M.D. Fla. Nov. 30, 2020) (finding expert's extensive professional experience, review of the relevant documents, and explanation of how his experience supports his opinion satisfied the reliability requirement under Rule 702 and *Daubert*); *Williams v. Tristar Prod., Inc.*, 418 F. Supp. 3d 1212, 1222-23 (M.D. Ga. 2019) (similar). The fact that Dr. Packer did not review all of Baker's psychology records or examine his cortisol levels goes to the weight and not admissibility. *See, e.g.*, *Garcia v. Scottsdale Ins. Co., No. CV 18-20509-CIV, 2019 WL 1318090*, at *2 (S.D. Fla. Mar. 22, 2019); In re Disposable Contact Lens Antitrust, 329 F.R.D. 336, 372 (M.D. Fla. 2018) ("If [d]efendants believe that the basis for [the expert's] opinions is insufficient, they can explore that with [the expert] on cross examination and argument for the benefit of the trier of fact.").

  **b. Dr. Marc Fagelson**

  Dr. Fagelson is an audiologist with over 25 years of clinical experience, including treatment of patients at Veterans' Affairs clinics. Fagelson Rep. (McCombs), ECF No. 1606-47 at 3-4. He has a Master of Science in Audiology and

a Ph.D. in Hearing Sciences, and is now a professor in the Department of Audiology and Speech Language Pathology at East Tennessee State University. *Id.* at 2-3. Dr. Fagelson offers the general opinion that tinnitus may exacerbate PTSD, *see* Fagelson Rep., ECF No. 1606-46 at 17, and specifically with respect to McCombs, that his tinnitus exacerbates his PTSD and sleep disorder, *see* Fagelson Rep. (McCombs), ECF No. 1606-47 at 9. Defendants argue that Fagelson is not qualified to diagnose or opine on PTSD and sleep disorder because he is not a psychiatrist or psychologist and does not hold a medical degree or license.

The Court agrees that Dr. Fagelson is not qualified to diagnose PTSD since he is not a psychiatrist, psychologist, or medical doctor. *See United States v. Crosby*, 713 F.2d 1066, 1077 (5th Cir. 1983) (finding trial court properly refused to qualify a counselor at Veterans' Outreach Center as a diagnostic expert on PTSD). However, Dr. Fagelson is not diagnosing McCombs' PTSD. Instead, like Dr. Packer, he relied on McCombs' medical records reflecting a PTSD diagnosis, *see* Fagelson Dep., ECF No. 1630-49 at 10, and offers an opinion regarding the relationship between McCombs' tinnitus and PTSD, specifically, "McCombs' tinnitus is a substantial factor that exacerbates his PTSD," *see* Fagelson Rep. (McCombs), ECF No. 1606-47 at 9. Moreover, the standard for qualification under Rule 702 is "not stringent," and requires an expert to be "minimally qualified" based on his knowledge, skill, experience, education, or training. *See Navelski*, 244 F.

Supp. 3d at 1293 (citations omitted). Here, Dr. Fagelson has treated patients with tinnitus and PTSD symptoms at VA clinics, *see* Fagelson Dep., ECF No. 1630-49 at 28-29, has presented research on "the bi-directional influences of tinnitus and PTSD," and is currently co-investigator on a study investigating preferences for hearing aid characteristics among patients who carry a service connection in the VA for PTSD, *see* Fagelson Rep. (McCombs), ECF No. 1606-47 at 4-6. Thus, the Court concludes that Dr. Fagelson's clinical and research experience qualifies him to offer his general opinion that tinnitus may exacerbate tinnitus and his specific opinion regarding the relationship between McCombs' tinnitus and PTSD. Any objections to his level of expertise go to weight, not admissibility. *See Hendrix I*, 255 F.R.D. at 585.

With respect to Dr. Fagelson's opinion on the relationship between McCombs' tinnitus and his sleep disorder, Dr. Fagelson is not qualified to diagnose McCombs' sleep disorder for the same reasons he is not qualified to diagnose PTSD. *See supra* at 17. However, it is not clear from the record that Dr. Fagelson is relying on a separate sleep disorder diagnosis in reaching his opinion.[9] To the extent Dr. Fagelson's opinion is a sleep disorder diagnosis, he is not qualified to offer that opinion, and it would be excluded. But to the extent Dr. Fagelson is offering an

---

[9] Plaintiff argues that Dr. Fagelson relied on McCombs' medical records as the factual basis for his medical conditions, *see* Pl.'s Opp., ECF No. 1630 at 119 n. 438, but neither Plaintiff nor Dr. Fagelson point to a specific record showing a sleep disorder diagnosis.

opinion that McCombs' tinnitus could affect his ability to sleep or the quality of his sleep, the Court concludes that his clinical experience treating tinnitus patients and managing related symptoms, as well as his experience identifying opportunities to help patients improve their sleep, make him minimally competent to offer that opinion.  *See* Fagelson Dep., ECF No.1606-45 at 6-8.

Based on the foregoing, the parties' omnibus motions to exclude expert opinions under Rule 702 and *Daubert*, ECF Nos. 1595 and 1605, are granted in part and denied in part, consistent with this Order, with respect to Dennis Driscoll, Dr. Mark Packer's PTSD opinion in *Baker*, and Dr. Marc Fagelson's PTSD and sleep disorder opinion in *McCombs*.

**SO ORDERED**, on this 11th day of May, 2021.

*M. Casey Rodgers*
------------------------------
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**