UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION ) ) ) ) This Document Relates To: ) All Cases ) ) ) | Case No. 3:19-md-2885-MCR-GRJ<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**MOTION FOR LEAVE TO CROSS NOTICE
THE DEPOSITION OF JAY A. VIETAS**

Pursuant to the Court's August 3, 2021 Order, Defendants file this motion for leave to cross notice the deposition of Retired Col. Jay Vietas in the federal MDL. The government has granted 3M's *Touhy* request to take the Vietas deposition in the Minnesota litigation, in which discovery is ongoing. The government has not yet provided dates for the deposition, but recently stated that it will likely occur in mid- to late-September.

Given that the deposition is also relevant to the claims in the federal MDL, Defendants have endeavored to keep the MDL Plaintiffs apprised of the status of 3M's efforts to schedule the Vietas deposition in the Minnesota litigation. To that end, Defendants (1) notified Plaintiffs that the deposition was proceeding in Minnesota, (2) invited Plaintiffs to participate in the deposition, (3) asked Plaintiffs to provide convenient dates, and (4) provided Plaintiffs with a list of procedural steps

Defendants intended to take in the event Defendants sought this Court's permission to cross notice and use Vietas' testimony in connection with the federal MDL. To date, the Plaintiffs have declined to participate in those discussions.

Instead, on August 3, 2021 Plaintiffs emailed a letter to this Court requesting expedited briefing on the issue. According to Plaintiffs, expedited briefing is necessary because Defendants are moving forward with scheduling the deposition in a way that will "prevent MDL Plaintiffs from developing [Vietas'] testimony." The letter did not mention that Defendants invited Plaintiffs to participate in deposition scheduling, and informed Plaintiffs that, in the event the deposition was scheduled and noticed in Minnesota, Defendants would seek this Court's leave prior to cross noticing it in the federal MDL.

In response to Plaintiffs' letter, the Court instructed Defendants to move forward with filing a motion for leave to reopen discovery and cross notice the Vietas deposition in the federal MDL. (Dkt. No. 1851). Thus, Defendants file the present motion seeking leave to cross notice the Vietas deposition in the federal MDL if and when it is noticed in the Minnesota litigation.

Good cause exists for granting Defendants' motion. First, the Vietas Letter was not produced by the government until February 2020, months after Defendants had submitted their global *Touhy* deposition request, and the subsequent deadline imposed by CMO 6 for Defendants to identify prioritized and de-prioritized *Touhy*

deponents. (CMO 6 at 2.) Second, given the government's limited resources (and the consequent slow pace of *Touhy* discovery), Defendants appropriately prioritized depositions of individuals who, unlike Col. Vietas, had been identified on documents as having personal knowledge of the military's (i) role in the development of the CAEv2, and/or (ii) testing of the CAEv2. Third, Defendants did not believe that the Vietas Letter would be admissible at trial, but the Court has subsequently allowed it in over Defendants' objections, and the Plaintiffs have made it one of the centerpieces of their case. Fourth, and most importantly, Plaintiffs will suffer no prejudice if the Court grants Defendants' motion—to the contrary Plaintiffs will be provided the opportunity to participate in the Vietas deposition (which is occurring in Minnesota in any event) and in that deposition can attempt to develop testimony supporting their arguments about the Vietas Letter at trial.

To be clear, Defendants do not believe that the act of cross noticing the deposition in the federal MDL is dispositive of the ultimate issue of its "use" in this case as contemplated by CMO 20, and Defendants are not requesting a ruling on whether and how the Vietas deposition can be used in the federal MDL at this time. Indeed, it would be premature to rule on use before the deposition is taken, including because (a) there are numerous ways a deposition taken in a one proceeding may be used in another, and the parties will not know whether or how they might want to use Vietas' testimony until that testimony is given, and (b) it may be helpful to the

Court to review Col. Vietas' testimony when deciding whether and how it can be used in this case. At this point, all Defendants are seeking is leave to notify Plaintiffs in the federal MDL that the deposition is occurring so that they have an opportunity to participate should they choose to do so.

## BACKGROUND

### A.  Defendants Submitted *Touhy* Requests In 2019.

This is a massive multi-district litigation, involving hundreds of thousands of documents produced by 3M and various third parties. One piece of the overall discovery effort has been discovery taken from the federal government, including document and deposition requests submitted by the parties pursuant to the government's *Touhy* regulations. As part of that effort, on July 26, 2019, Defendants submitted a broad request for documents related to the CAEv2 (among other things), and the government thereafter made rolling productions of documents in response to that request. (Ex. 1, Defendants' July 26, 2019 Touhy Request).

Among the most important documents produced by the government are a number of test reports overviewing testing conducted on the CAEv2 by various military laboratories. All of the military test reports demonstrate the efficacy of the CAEv2, and none state that the CAEv2 is defective. For example, one test report created by the Air Force Research Laboratory in 2008 states that the CAEv2 provides "very good attenuation" and "seems to work as advertised." (Ex. 2, Air Force

WHISPr Report at 19-20, 71.)  Importantly, these test reports identify the military personnel who participated in the testing, and thus have actual scientific knowledge regarding whether and how the CAEv2 preforms under various test conditions.  (*See id.* at 1.)

On October 25, 2019, after reviewing all of the records produced by the government to date, Defendants submitted a request to interview and/or depose 30 military and government witnesses.  (Ex. 3, Defendants' October 2019 *Touhy* Interview Request.)  In creating the list, Defendants focused on those individuals identified in the documents as being involved with (1) researching nonlinear earplugs for the military and/or working with Aearo during the development of the CAEv2, and (2) the military's testing of the CAEv2, including the individuals identified as authors or co-authors of the various military test reports described above.  *Id.*

**B. The Court Ordered Defendants To Submit Deposition Requests In December 2019.**

The government struggled to respond to Defendants' *Touhy* requests, and scheduling depositions in particular was slow going.  The issue came to a head in November 2019, when the Court ordered the parties to submit deposition lists to the government by December 13, 2019. (CMO 6.)  Defendants complied with that order on December 2, 2019, and at that time submitted lists to the government ranking the

5

requested witnesses into the prioritized and de-prioritized categories described in the Court's order. (Ex. 4, Defendants' December 2, 2019, Letter to The Government.)

### C. The Government Produced The Vietas Letter In February 2020.

On February 3, 2020, the government made another production of documents. (Ex. 5, DOD 4th Disclosure Letter.) One of the documents produced at that time was a single-page letter authored by Retired Air Force Colonel Jay Vietas, dated July 30, 2019 (the "Vietas Letter"). Ex. 6 (Vietas Letter). The Vietas Letter—which was authored months after this litigation began (and months after service members like Vietas were exposed to advertisements related to the litigation)—instructs its recipients to confirm that the CAEv2 had been removed from Air Force inventories because "[t]hese earplugs were found to be defective." *Id*. The letter contains no explanation or reasoning supporting that statement, and no witness knows (or has testified about) the bases for Vietas' "conclusion."

Defendants did not depose Vietas during the general/military discovery period for several reasons. First, the Vietas letter was not produced until two months after the deadline in CMO 6 to submit deposition requests to the government. Second, although Defendants do not believe 30 (or, for that matter 50) government depositions would have been disproportionate to the size of this litigation, the government was already pushing back on the number of depositions Defendants had initially requested in October 2019, which led to the Court ordering Defendants to

6

"request that the Government defer action" on numerous of the depositions already requested. (CMO 6 at 2.)  Finally, Defendants did not believe that the Vietas Letter would be admissible at trial, including because it is hearsay and Vietas has no foundation for his statement that the earplugs were "found to be defective."[1]

### D. Plaintiffs Relied Heavily On The Vietas Letter At Trial.

The Court subsequently overruled Defendants' objections to the admissibility of the Vietas Letter, and Plaintiffs have, in turn, relied heavily on that letter at trial. *See, e.g.,* 4/29/2021 Trial Tr. at 127:4-5, 225:1-3 (referring to letter in closing and rebuttal arguments); *see also* 4/1/2021 Trial Tr. at 125:21-23 (direct examination of Plaintiff's expert, Rich McKinley); 6/7/2021 Trial Tr. at 62:1-63:4 (referring to letter in opening statement); 6/8/2021 Trial Tr. at 197:25-198:2 (direct examination of Plaintiff's expert, Rich McKinley); 6/8/21 Tr. at 208:23-209:2 (Q: "'3M dual-ended Combat Arms Earplugs were found to be defective and did not protect the wearer to the advertised level of protection.' Mr. McKinley, do you agree with that statement?" A: "I do."); 6/18/2021 Trial Tr. at 139:3-7 (stating in closing arguments that "the Air Force … concluded this was a defective product").  Indeed, during the *EHK* trial, Plaintiffs' counsel printed the Vietas Letter on an oversize board and displayed it on a large easel in the courtroom for portions of the trial.  The Court also

---

[1]  Indeed, the "found to be defective" language is frequently used in attorney advertisements that erroneously describe the resolution of the CAEv2 *Qui Tam* litigation.  *See generally* Google Search: (CAEv2 + "found to be defective")

has allowed the jury to "consider this document for what the Air Force knew about the earplugs, what the Air Force believed about the earplugs, and why the Air Force made the decision that it did to remove the earplugs from its inventory." 6/8/2021 Trial Tr. at 199:16-19; *see also* 4/1/2021 Trial Tr. at 126:7-8 (allowing the jury to consider the letter as evidence of "what the military knew about these earplugs"). In light of the above rulings, and Plaintiffs' use of it at trial, the Vietas Letter has turned out to be more important that Defendants believed it would be when it was initially produced by the government.

### E. 3M Is Seeking Vietas' Deposition In Connection With The Minnesota Litigation.

Although general discovery is closed in the federal MDL, it is ongoing in the separate Minnesota litigation. *See* Ex. 7 (Minnesota MDL Discovery Schedule). Thus, shortly after completion of the first two federal bellwether trials—in connection with which Defendants learned not only Court's various rulings on the Vietas letter, but also how much emphasis Plaintiffs would place on the letter at trial—3M served a *Touhy* request in the Minnesota litigation to depose Col. Vietas. Ex. 8 (3M's June 17, 2021 *Touhy* Request). On July 1, 2021, the government approved 3M's request, allowing Col. Vietas to testify regarding "(i) a July 30, 2019, letter concerning CAEv2 which he signed, (ii) his statement in that July 2019 letter asserting that CAEv2 'were found to be defective'; and (iii) the purported bases, if any, for that statement." Ex. 9 (Response to *Touhy* Request). The Vietas deposition

8

was initially scheduled by the government for July 15, 2021, but Defendants worked with 3M's Minnesota counsel to move the date of the deposition after Plaintiffs' counsel in the federal MDL objected that the date was not convenient.

Shortly after 3M agreed to move the deposition, the Minnesota plaintiffs threatened to file a motion to quash it. Ex. 10 (email communications in Minnesota litigation). In response, 3M offered to forego the deposition if the Minnesota plaintiffs agreed, among other things, not to use the Vietas Letter during the Minnesota trials. *Id.* The Minnesota plaintiffs rejected that proposal and instead filed a motion to quash the deposition on relevance grounds. Ex. 11 (Motion to Quash). Tellingly, that motion included a footnote reserving the Minnesota plaintiffs' right to use the Vietas Letter at trial. *Id.* at n.5.

On July 19, 2021, Special Master Keyes denied the Minnesota plaintiffs' motion to quash, finding, among other things, that "the allegedly defective design of the CAEv2 is relevant in this case," including because "Defendants will defend against the failure-to-warn claims on the basis that the CAEv2 was not defective." Ex. 12, at 1. Special Master Keyes noted that "Plaintiffs' motion to quash specifically reserves the right to use Col. Vietas' July 2019 letter at the trial, after Defendants defend the failure-to-warn claim by arguing the CAEv2 product was found to be safe and [e]ffective without the flanges folded back." *Id.* Addressing the plaintiffs' argument that Col. Vietas' deposition is not relevant to the civilian

9

claims in the near term bellwether trials, Special Master Keyes stated: "[T]his discovery is not case specific and general discovery in the Minnesota litigation is open and ongoing." *Id.*

Since the motion to quash was denied, 3M has been working with the government to re-schedule the Vietas deposition in the Minnesota litigation. That effort has been delayed by: (1) the Minnesota plaintiffs serving their own *Touhy* request seeking documents related to Vietas and other government witnesses, and their related objections to the deposition proceeding in advance of the production of those documents (Ex. 13, Minnesota Plaintiffs Touhy Request); and (2) Vietas being part of a CDC deployment from August 14 to September 14 (Ex. 14, 8/9/2021 Government Email.) Most recently, on August 9, 2021, the government emailed 3M's counsel and stated that the government will follow up to schedule the deposition after Vietas returns from his CDC deployment in mid-September. (Ex. 14, 8/9/2021 Government Email.)

### F. Defendants Invited The MDL Plaintiffs To Participate In The Vietas Deposition.

Given that the Vietas deposition is relevant to both the Minnesota and federal litigation, Defendants have endeavored to keep Plaintiffs apprised of the status of 3M's efforts to schedule that deposition in the Minnesota litigation. (Ex. 15, July 21, 2021 email from N. Wasdin to B. Aylstock.) As part of that process, Defendants have invited Plaintiffs to participate in the deposition if and when it occurs in the

Minnesota litigation, and have endeavored to schedule the deposition on a date that is convenient for Plaintiffs. To date, Plaintiffs have declined to participate in any scheduling discussions.

**G. Case Management Order No. 20**

The parties discussed the issue of the Vietas deposition with the Court during the July 9, 2021 Case Management Conference. At that hearing, Defendants requested guidance from the Court on how to proceed in the event that the Vietas deposition occurred in Minnesota and Defendants sought to use it in the federal MDL. (Ex. 16, July 9, 2021 CMC Tr. at 50-51.) Following the CMC, the Court issued Case Management Order No. 20, which instructs that "[s]hould the [Minnesota] motion to quash be denied, Defendants must file a motion for leave to use the deposition in the [federal] MDL." (CMO 20 at 5). Defendants interpreted CMO 20 as requiring a motion for leave if Defendants seek to use Col. Vietas' testimony in the federal MDL, such as, for example, by seeking leave to play Vietas' testimony at one of the federal bellwether trials.

During the parties' subsequent correspondence on this issue, Defendants informed Plaintiffs of how they intended to proceed in light of the Court's instruction in CMO 20:

> 3M intends to proceed as follows: (i) schedule and notice the deposition in MN; (ii) seek leave from Judge Rodgers to cross notice the deposition in the federal MDL, requesting that the Court reserve on the issue of "use" in

11

>  the MDL until after the deposition is taken and the Court
>  has the benefit of reviewing Vietas' testimony; and (iii)
>  after the deposition is complete, file a motion for leave to
>  "use" it in the MDL consistent with CMO 20.

(Ex. 17, July 22, 2021 email from N. Wasdin to B. Aylstock.) Plaintiffs did not respond to Defendants' email.

### H. Plaintiffs' August 3, 2021 Letter To The Court Regarding The Vietas Deposition

On August 3, 2021, Plaintiffs emailed a letter to the Court requesting expedited briefing on this issue, including on the grounds that the procedure Defendants were following would "prevent MDL Plaintiffs from developing [Vietas'] testimony." (Ex. 18, Plaintiffs August 3, 2021 Letter re Vietas) The letter did not mention that Defendants invited MDL Plaintiffs to participate in deposition scheduling, and informed MDL Plaintiffs that, in the event the deposition was scheduled and noticed in Minnesota, Defendants would seek this Court's leave prior to cross noticing it in the federal MDL.

## ARGUMENT

Courts have "broad discretion in managing their cases." *See Abdullah v. City of Jacksonville*, 242 F. App'x 661, 664 (11th Cir. 2007) (per curiam); *see also Madison v. Jack Link Assocs. Stage Lighting & Prods., Inc.*, 297 F.R.D. 532, 537 (S.D. Fla. 2013) (granting leave to take additional depositions). Pursuant to Federal Rule of Civil Procedure 16(b)(4) "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). And, under Federal Rule

of Civil Procedure 6(b), "the court may, for good cause, extend the time" needed to complete any act "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). Courts analyzing whether a party's failure to complete a certain task within the original discovery deadline was excusable look at "all pertinent circumstances, including the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015) (citation omitted).

The absence of prejudice to the non-moving party weighs heavily in this analysis. For example, *Bermudez v. Equifax Info. Servs., LLC*, the plaintiff sought leave to take a series of depositions after the discovery deadline, and his excuse was that plaintiff's counsel simply forgot to calendar the deadline. 2008 WL 11336164, at *1 (M.D. Fla. Oct. 3, 2008). The court nevertheless held that there was good cause to allow the late depositions, including because (1) plaintiffs' counsel shown "some diligence" during the discovery period (he has separately served timely written discovery), and (2) there was no prejudice to the defendants in allowing the depositions to proceed. *Id.* at *2.

The absence of prejudice to the non-moving party is particularly apparent where, as here, the deposition is proceeding in a related action in any event. For

13

example, in *Fed. Trade Comm'n v. Barr Pharms., Inc.*, there were two sets of related proceedings with different discovery cut offs: the "Government Cases" and the "Private Cases." 2007 WL 9813289, at *3 (D.D.C. Jan. 24, 2007). The Defendant noticed a deposition in the Private Cases, in which discovery was ongoing, and sought the court's leave to also notice and take the deposition for purpose of the Government Cases, in which discovery had already closed. *Id.* at *2-3, n.6. The court noted that the deposition was proceeding in the Private Cases in any event, and held that defendants had good cause to take the deposition for purposes of the Government Cases because, among other things, the deposition was "crucial" and would cause no prejudice to plaintiffs. *Id.* at *3.

Here, Defendants did not initially depose Vietas during the discovery period because the Vietas Letter was not produced by the government until months after Defendants had submitted their government deposition requests, as required under CMO 6. (CMO 6 at 2.) Additionally, notwithstanding the relatively small number of deponents requested by Defendants (30), the government was already pushing back on the number of potential deponents, which led to the Court ordering Defendants to "request that the Government defer action" on numerous of the depositions already requested. (CMO 6 at 2.) Given that Defendants had already identified the witnesses with actual personal knowledge of the relevant issues (*e.g.* product development and testing), and the government was already pushing back on

14

putting even some of those witnesses up for deposition, Defendants focused on completing as many depositions as possible on their initial list, and did not risk frustrating that process by seeking leave to supplement the initial list with additional witnesses who, like Vietas, do not appear to have relevant personal knowledge.

Moreover, Defendants did not believe that the Vietas Letter would be admissible at trial, including because it is hearsay and Vietas has no foundation for his statement that the earplugs were "found to be defective." Since then, the Court has allowed in the Vietas letter over Defendants' objection, and Plaintiffs have made it one of the centerpieces of their presentation. After the Court issued its rulings in the first two bellwether trials, and Defendants observed how the Plaintiffs would be able to use the Vietas Letter, Defendants acted diligently in submitting a *Touhy* request for the Vietas deposition in the Minnesota litigation, where discovery in ongoing.

Finally, Plaintiffs will suffer no prejudice if the Court grants Defendants leave to cross notice the Vietas deposition in the federal MDL. The deposition will occur in the Minnesota litigation in any event. Far from prejudicing Plaintiffs, cross noticing the deposition in the federal MDL will merely ensure that Plaintiffs have an opportunity to participate in the deposition should they choose to do so. This deposition will not delay or impact the schedule in this case, which will proceed

forward to the upcoming bellwether trials regardless of when the Vietas deposition ultimately occurs in Minnesota.

Plaintiffs' August 3 letter suggests that Defendants are trying to avoid this Court's discovery deadlines by pursuing the Vietas deposition in the Minnesota litigation. That is not accurate. General discovery remains "open and ongoing" in Minnesota. Ex. 12, at 1. 3M faces hundreds of individual claims in that litigation, and must of course defend itself in that forum. As noted in Special Master Keyes' order denying the motion to quash, Col. Vietas' testimony is independently relevant to the Minnesota claims, and the plaintiffs in that action have expressly reserved the right to use the Vietas Letter at trial. For that reason, 3M would take Col. Vietas' deposition in Minnesota even if this Court ultimately rules that it cannot be used in the federal MDL.

However, as stated above, Defendants do not believe that the mere act of cross noticing the deposition in the federal MDL will automatically result in it being usable for any or all purposes in the federal MDL. Rather, consistent with CMO 20, Defendants believe that the appropriate time to address the issue of "use" is after Vietas has testified in the Minnesota litigation, including because the Court may benefit from reviewing Vietas' testimony in connection with deciding that issue. Thus, consistent with CMO 20, Defendants respectfully request that the Court

reserve on the issue of "use" until such time as Defendants file a subsequent motion for leave to use the Vietas deposition in the federal MDL.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that its motion for leave to cross notice the deposition of Col. Vietas in the federal MDL be granted.

Dated: August 10, 2021

Respectfully submitted,

/s/ Robert C. Brock
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding,*

*LLC, Aearo Intermediate, LLC and Aearo, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this motion contains 3,862 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated:  August 10, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Robert C. Brock
　　　　　　　　　　　　　　　　　　　　　　Robert C. "Mike" Brock
　　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　　1301 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20004
　　　　　　　　　　　　　　　　　　　　　　Telephone: (2020) 389-5991
　　　　　　　　　　　　　　　　　　　　　　mike.brock@kirkland.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2021, a copy of the foregoing was filed on the Court's CM/ECF system, which will serve all counsel of record.

DATED: August 10, 2021

/s/ *Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*