# EXHIBIT 11

| STATE OF MINNESOTA DISTRICT COURT COUNTY OF HENNEPIN DISTRICT | DISTRICT FOURTH   JUDICIAL |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION | Case Type: Personal Injury Hon. Laurie J. Miller FILE NO. 27-CV-19-19916 |
| This Document Relates To: All Actions | **MOTION TO QUASH DEPOSITION NOTICE OF COLONEL (RET) JAY VIETAS** |

Plaintiffs respectfully request that the Court quash Defendants' deposition notice served on Col. (Ret.) Jay Vietas on July 6, 2021.[1] The noticed deposition seeks irrelevant information and is an end-run around the deadlines in the coordinated MDL litigation.

## I.     Background

Defendants served a *Touhy*[2] request on the U.S. military on June 17, 2021. Ex. 1. In that request, Defendants seek testimony from and documents relating to a memo Col. (Ret) Jay A. Vietas penned on July 30, 2019. In that July 2019 memo,

---

[1] *See* Ex. 2.

[2] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Broadly speaking, *Touhy* provided that federal government agencies may adopt and enforce their own requirements for how litigants may seek discovery from an agency.

Col. Vietas instructed Air Force personnel to stop all use of CAEv2 earplugs because the "earplugs were found to be defective." Ex. 1-A. In his memo, Col. Vietas instructed each impacted base to verify that there was no remaining inventory of the "defective" product. Ex. 1-A.

As Defendants note in their *Touhy* request, Colonel Vietas memo has been used as an exhibit in MDL bellwether trials. In their *Touhy* request, Defendants state that Col. Vietas's deposition and related documents are needed to help understand: "the support for Colonel Vietas's statement and otherwise establishing whether the Air Force conducted analysis and concluded CAEv2 were defective." Ex. 1 at 2. Defendants continue that they "are not aware of any determination by the U.S. military that CAEv2—the product of close collaboration between Defendants and the military and used successfully by military servicemembers for more than a decade—were defective." Ex. 1 at 2. Defendants further claim that "the information sought by these *Touhy* requests will assist Defendants in establishing that CAEv2 were not defective, did not cause the Plaintiffs' alleged hearing loss and tinnitus, and/or will relate to the alleged seriousness of Plaintiffs' injuries." Ex. 1 at 2.

## II.   Argument

While Minn. R. Civ. P. 45.03 specifically governs the rights of third-party subpoena recipients, Minnesota courts have noted that "rule 45.03 does not override the application of rules 26.02 and 26. 03." *Boldon v. Boldon*, A14-1251 2015 WL 1880336 at *2 (Minn. Ct. App. Apr. 27, 2015) (upholding the district court's determination to quash two third-party subpoenas that recipients had not objected to on opposing counsel's motion.)

Under Minn. R. Civ. P. 26.03 a court "may issue an order that the discovery may not be had or that the discovery may be had only on specified terms and conditions, including a designation of the time or place for good cause shown." Under Minn. R. Civ. P. 26.02(b), "Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and proportional to the needs of the case…" (emphasis added). Because the Defendants' request fails to satisfy Rule 26.02(b)'s relevancy requirement, good cause exists to quash Defendants' notice.

A cursory reading of Defendants' *Touhy* letter lays bare that the request 1) seeks information irrelevant for a failure to warn claim and 2) is a tardy attempt to avoid lapsed MDL deadlines.[3]

As the Court knows, this case is comprised of Plaintiffs asserting only failure to warn claims. But Defendants' *Touhy* letter makes clear Defendants are seeking information that could only be relevant to product defect claims. That information *may* be relevant in the MDL proceedings – where Plaintiffs assert product defect claims – but the information isn't relevant where there is no product defect claim. The basis or analysis supporting Col. Vietas's July 2019 statement that the CAEv2's were "found to be defective" simply has no probative value because the statement doesn't bear on whether Defendants failed to warn. Plaintiffs allege Defendants failed to warn that the CAEv2 didn't provide the labeled attenuation if the third flanges were not folded back. Col. Vietas's memo (and the basis of the memo) are irrelevant to that claim. Indeed, if Plaintiffs attempted to offer Col. Vietas's memo at one of the upcoming bellwether trials in their case-in-chief, Defendants would undoubtedly object that the memo is irrelevant in a failure to warn claim.

---

[3] *See In Re: 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19md2885, Doc. 1009, Pretrial Order No. 28 (setting general case discovery deadline as July 31, 2020).

Further undermining any claim to relevancy, the entire bellwether pool consists of individuals who used the CAEv2s as civilians. Not only did the bellwethers not serve in the Air Force, no bellwether served in the military. Bellwether Freddie Guerrero used the CAEv2's while shooting recreationally from approximately 2010 to 2015. Bellwethers Marc Roush, Mitchell Calvert, and Jesse Spears used CAEv2's for hearing protection at their civilian jobs.[4] Roush used his CAEv2s from roughly 2002 – 2006. Calvert used his CAEv2s from roughly 2011 – 2016. And Spears used his CAEv2's from roughly 2011 – 2013.

Col. Vietas's memo (and the basis of that memo) in July 2019 to his military colleagues – three years after Defendants discontinued sales of CAEv2s – are not relevant to such claims.

Defendants' proposed discovery is thus doubly irrelevant, and Plaintiffs' motion can and should be sustained on either or both grounds.[5]

---

[4] It is true that this litigation now contains military plaintiffs. However, the parties have agreed to defer discovery on the military plaintiffs pending the 8th Circuit's ruling on jurisdictional issues, including whether military claims may proceed in this Court. Further, even if military discovery were not paused in this case, the discovery Defendants seek from Col. Vietas remains irrelevant because – like the civilian Plaintiffs – the military plaintiffs in this litigation assert only failure to warn claims.

[5] While Plaintiffs do not believe Col. Vietas' memo is relevant to this case, Plaintiffs expressly reserve their rights to revisit this issue at trial. More specifically, if

III.    **Conclusion**

To be sure, this Court has ordered the parties to coordinate with the MDL proceedings. But that mandate may not be used to justify Defendants using this completely distinct litigation to end-run MDL deadlines. The deadline for general discovery in the MDL has long passed, otherwise Defendants would have served their *Touhy* request and deposition notice in the MDL, where they may have had a leg to stand on with respect to relevancy. In this litigation (coordinated but completely distinct), Defendants' request exceeds the proper scope of discovery.

Plaintiffs' requested relief should be granted.

---

Defendants seek (and are permitted) to defend Plaintiffs' failure-to-warn claims by arguing that the CAEv2's were found to be safe and effective without the flanges folded back, such argument and evidence would open the door to counter-evidence such as Col. Vietas's memo, both for merits and impeachment purposes.

Dated: July 9, 2021                    Respectfully Submitted,

**SCHWEBEL GOETZ & SIEBEN, P.A.**    **GUSTAFSON GLUEK PLLC**
*/s/ Alicia N. Sieben*                    Daniel Gustafson (#202241)
William R. Sieben (#100808)         Amanda M. Williams (#341691)
Alicia N. Sieben (#389640)          Canadian Pacific Plaza
Matthew J. Barber (#397240)         120 South Sixth Street, Suite 2600
5120 IDS Center                     Minneapolis, Minnesota 55402
80 South Eighth Street              Telephone: 612-333-8844
Minneapolis, Minnesota 55402        Fax:   612-339-6622
Telephone: 612-377-7777             dgustafson@gustafsongluek.com
Fax: 612-333-6311                   awilliams@gustafsongluek.com
bsieben@schwebel.com
asieben@schwebel.com
mbarber@schwebel.com

**PAUL LLP**
Richard M. Paul III
(appearing pro hac vice)
Ashlea G. Schwarz
(appearing pro hac vice)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: 816-984-8100
Fax: 816-984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com

## ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on July 9, 2021, I electronically served the foregoing document via the court's electronic filing system.

*/s/ Alicia N. Sieben*

7



Andrew "Andy" Crowder
Direct Dial: 612-343-3206
E-Mail: acrowder@blackwellburke.com

June 17, 2021

**Via E-Mail**

Maj. Robert E. Wald
robert.e.wald.mil@mail.mil

Maj. Nicole M. Kim
nicole.m.kim2.mil@mail.mil

**Re:      *Touhy* Request Relating to *In re: 3M Combat Arms Earplug Litigation***
**State of Minnesota, Fourth Judicial District**

Dear Major Wald & Major Kim,

I write on behalf of Defendants 3M Company ("3M") and Aearo Technologies LLC ("Aearo") in connection with *In re: 3M Combat Arms Earplug Litigation*—a grouping of cases pending before the Hon. Laurie Miller in the Fourth Judicial District of Minnesota. This letter constitutes Defendants' *Touhy*[1] request to the United States Department of Defense ("DoD") to take the deposition of Air Force Colonel Jay A. Vietas, who Defendants understand to be the Associate Chief of Bioenvironmental Engineering for the Air Force Medical Readiness Agency in Falls Church, Virginia. Colonel Vietas authored documents related to the product at issue in these cases, the Combat Arms Earplug, version 2 ("CAEv2"), and thus is someone who may possess knowledge and information pertaining to Plaintiffs' claims and/or Defendants' defenses. And as outlined below, Defendants also seek any documents that relate to Colonel Vietas's assertions about CAEv2.

Defendants hereby set forth the following bases for their *Touhy* request under 32 C.F.R. §§ 97, 516.40-57; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; DoD Directive 5405.2 § 6.2; Navy Instruction 5820.8A; and Air Force Instruction 51-301:

**I.       Summary of the Litigation**

Plaintiffs in these state court proceedings include civilians, military contractors, and military servicemembers who claim to have obtained CAEv2 either through consumer purchase or in relation to their service as military contractor or servicemember. The CAEv2 was initially designed and distributed by Aearo. In 2008, 3M purchased Aearo and continued to market and sell CAEv2. Plaintiffs in these proceedings allege that Defendants failed to warn that the CAEv2 was defective and thereby caused them to sustain serious injuries, including hearing damage,

---

[1]*See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Maj. R.E. Wald; Maj. N.M. Kim
June 17, 2021
Page 2

during their military service or otherwise. The information sought by these *Touhy* requests will assist Defendants in establishing that CAEv2 were not defective, did not cause the Plaintiffs' alleged hearing loss and tinnitus, and/or will relate to the alleged seriousness of Plaintiffs' injuries.

This request qualifies as general, non-case-specific discovery, and therefore it is subject to a September 2, 2021 deadline under the parties' agreed proposed scheduling order, which has been submitted for approval to Judge Miller.

## II.      Summary of the Information Requested

Defendants request to take the deposition of Colonel Jay A. Vietas. Defendants seek to depose Colonel Vietas regarding a July 30, 2019 letter concerning CAEv2 which he signed (*see attached* **Exhibit A**). Defendants specifically seek to question Colonel Vietas about his statement in that July 2019 letter asserting that CAEv2 "were found to be defective" and the purported bases, if any, for that statement.

Defendants also request any documents related to Colonel Vietas's assertion that the CAEv2 "was found to be defective," including: (i) any studies, testing, or other analyses supporting that assertion, (ii) internal correspondence, or (iii) correspondence from third parties.

## III.      Relevance of the Information Requested

Plaintiffs in these related proceedings allege that Defendants failed to warn them about defects with CAEv2 which caused them to sustain serious injuries, including hearing damage. Plaintiffs all specifically allege that they suffer hearing loss and tinnitus from their use of the CAEv2. In a July 30, 2019 letter, without any supporting analysis provided, Colonel Vietas indicates that CAEv2 "were found to be defective." (*See* **Exhibit A**.) Colonel Vietas's letter has been used as an exhibit during the bellwether trials in the related federal MDL proceeding regarding the CAEv2, currently pending before Judge Rodgers in the Northern District of Florida.

The information sought by this *Touhy* request—specifically, Colonel Vietas's deposition and documents related to his assertions about CAEv2—will assist Defendants in understanding the support for Colonel Vietas's statement and otherwise establishing whether the Air Force conducted analysis and concluded CAEv2 were defective. Defendants are not aware of any determination by the U.S. military that CAEv2—the product of close collaboration between Defendants and the military and used successfully by military servicemembers for more than a decade—were defective.

The requested information is also relevant to directly rebutting Plaintiffs' allegations that their hearing was injured due to the use of CAEv2.



Maj. R.E. Wald; Maj. N.M. Kim
June 17, 2021
Page 3

### IV. Additional Considerations

This request complies with the policies of the DoD, DLA, Army, Navy, Marine Corps, Air Force, and Coast Guard regarding the provision of information by its employees in connection with litigation in Minnesota state court:

1. Disclosure of the requested information is not unduly burdensome or otherwise inappropriate under Minnesota's discovery rules.

2. Disclosure of the requested information would be appropriate under the Minnesota Rules of Evidence and appropriate under the rules of the Minnesota State Court for the Fourth Judicial District.

3. Disclosure of the requested information would be appropriate under the Minnesota Rules of Civil Procedure and would not impact any concerns regarding privileged information pursuant to the rules of procedure governing this litigation.

4. Disclosure of the requested information would not violate any statute, executive order, regulation, or directive.

5. Disclosure of the requested information would not reveal any classified information, data restricted pursuant to AR 380-5, unclassified technical data withheld from public release pursuant to 32 C.F.R. § 250 or DoD Directive 5230.25, privileged safety information restricted from public release by DoD Directive 6055.7, AFI 31-401, or other matters exempt from unrestricted disclosure.

6. Disclosure of the requested information would not interfere with ongoing enforcement proceedings, compromise any constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances.

7. Disclosure would not violate any person's expectation of confidentiality or privacy.

8. The United States is not, and is not reasonably anticipated to be, a party in this litigation.

*See* 32 C.F.R. §§ 97.6(b)(1)-(6); 32 C.F.R. §§ 516.41(d), 516.44; Navy Instruction 5280.8A(1)-(10); DoD Directive 5405.2 § 6.2; 33 C.F.R. § 1.20-1; 6 C.F.R. § 5.45; Air Force Instruction 51-301, 9.5.1-9.5.6.

### V. Administrative Matters

If you anticipate that a response will require more than ten (10) days from the date of service, we request that you notify the parties and/or the Court. Should you have any questions or



Maj. R.E. Wald; Maj. N.M. Kim
June 17, 2021
Page 4

require additional information about this *Touhy* request, please do not hesitate to contact Andy Crowder, counsel for Defendants, at (612) 343-3206 or acrowder@blackwellburke.com.

Thank you for your assistance.


Sincerely,

*/s/ Andrew J. Crowder*

Andrew "Andy" Crowder
*Counsel for Defendants*

AC:sjl

cc:     William R. Sieben
        Alicia N. Sieben
        Matthew J. Barber
        Daniel Gustafson
        Amanda M. Williams
        Richard M. Paul III
        Sean Cooper
        Ashlea G. Schwarz



# EXHIBIT A

P1521.1



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS UNITED STATES AIR FORCE**
**WASHINGTON DC**

30 Jul 19

MEMORANDUM FOR 43EX/4B0X/CIVILIAN PERSONNEL

FROM:  HQ USAF/SG3PB
         7700 Arlington Blvd
         Falls Church, VA 22042

SUBJECT:  Removal of 3M Dual-Ended Combat Earplugs from Inventory; National
              Item Identification Number (NIIN):  6515-01-466-2710

     Please verify with all shops on the Hearing Conservation Program and all shops that use
hearing protection that any 3M Dual-Ended Combat Earplugs are not being used for hearing
protection purposes.  These earplugs were found to be defective.  The Air Force stopped
purchasing these items from 3M in 2016, however inventory may remain.

       While it is highly unlikely that these earplugs remain in the inventory, we need each base
to verify that this is indeed the case.  Please respond back through your MAJCOM SGPB by 30
Aug 19 when you have completed this task.  My point of contact for this tasker is Major Kevin
Whitney, Chief of Occupational Health Operations and he can be reached at
kevin.n.whitney.mil@mail.mil or (703) 681-7626 with any questions or concerns.

VIETAS.JAY.A
.1005440382
Digitally signed by
VIETAS.JAY.A.1005440382
Date: 2019.08.01 07:56:57 -04'00'

JAY A. VIETAS, Col, USAF, BSC
Associate Chief, Bioenvironmental Engineering
Air Force Medical Readiness Agency

Electronically Served
7/6/2021 4:47 PM
Hennepin County, MN

**STATE OF MINNESOTA**
**COUNTY OF HENNEPIN**

**DISTRICT COURT**
**FOURTH JUDICIAL DISTRICT**
Case type: Personal Injury

---

In re: 3M COMBAT ARMS EARPLUG
LITIGATION,

Court File No. 27-CV-19-19916

This Document Relates to:
ALL CASES

**NOTICE OF REMOTE ORAL AND
VIDEOTAPED DEPOSITION OF
COLONEL (RET.) JAY VIETAS**

---

PLEASE TAKE NOTICE that commencing at 9:00 a.m. Eastern Daylight Time (8:00 a.m. Central Daylight Time) and concluding at 1:00 p.m. Eastern Daylight Time (12:00 p.m. Central Daylight Time) on July 15, 2021, Defendants 3M Company and Aearo Technologies LLC, by and through their counsel of record, will take the oral and videotaped deposition of Colonel (Ret.) Jay Vietas pursuant to Minnesota Rule of Civil Procedure 30, MDL 2885 Pretrial Order No. 13, and MDL 2885 Pretrial Order No. 35[1], see Exhibit A.  The deposition of Col. Vietas will be conducted remotely via secure web-based video or internet video conference technology.

Pursuant to Section 2 of MDL 2885 Pretrial Order No. 35, the location(s) (city and state) from which the witness, court reporter, and videographer will attend the remote deposition are as follows: (1) Col. Vietas will be located in West Chester, Ohio; (2) the court reporter will be located in __TBD_____; and (3) the videographer will be located in __TBD_____.

The deposition of Col. (Ret.) Jay Vietas will be taken for discovery and all other purposes permitted by the Minnesota Rules of Civil Procedure before a person authorized to administer oaths who will attend remotely via video conference and will be recorded using the stenographic method,

---

[1] PTO 13 and PTO 35 were adopted in this matter by the Joint Coordination Order with Federal MDL dated June 10, 2020.

through the instant visual display of testimony, and will also be recorded using audio and videotape technology.

Veritext will provide remote access for all parties via a ZOOM-based platform.  *See* Exhibit B.  Please contact the attorney point of contact and Veritext prior to the deposition to advise of your participation so that the necessary credentials, call-in numbers, testing and any other necessary information can be provided to you prior to the deposition.

Please take further notice that if the deponent requires the use of an interpreter, written notice of the language required must be provided to this office no later than three (3) business days before the deposition date.

The attorney point of contact for the noticing party is Benjamin W. Hulse of the law firm Blackwell Burke P.A., 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, telephone (612) 343-3256, e-mail: bhulse@blackwellburke.com.


Dated: July 6, 2021                         Respectfully submitted,

                                            *s/ Benjamin W. Hulse*
                                            Jerry W. Blackwell (MN #186867)
                                            Benjamin W. Hulse (MN #0390952)
                                            BLACKWELL BURKE P.A.
                                            431 South Seventh Street, Suite 2500
                                            Minneapolis, MN 55415
                                            Phone: (612) 343-3200
                                            Fax: (612) 343-3205
                                            Email: blackwell@blackwellburke.com
                                                   bhulse@blackwellburke.com

                                            **Counsel for Defendants 3M Company and
                                            Aearo Technologies LLC**

2

# EXHIBIT A

27-CV-19-19916
Case 3:19-md-02885-MCR-HTC Document 1802-11 Filed 05/10/21 Page 18 of 33
Case 3:19-md-02885-MCR-GRJ Document 1425 Filed 05/13/21 Page 18 of 7

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PRETRIAL ORDER NO. 35
### Remote Depositions

The COVID-19 global pandemic has affected virtually every aspect of American society, including civil litigation in this Court and across the federal system. Governmental authorities have responded to this public health emergency by imposing travel restrictions, "stay at home" directives, and other social distancing measures designed to slow the communal spread of the disease. Plaintiffs and Defendants (the "Parties") have expressed a strong preference to conduct in-person depositions in this litigation, but social distancing restrictions in various jurisdictions may sometimes preclude this option. Pursuant to Fed. R. Civ. P. 30(b)(4), this Court has authorized the use of remote depositions by videoconference ("Videoconference Deposition") and now issues the following protocol[1] to govern any depositions

---

[1] This Order does not address which depositions may proceed by videoconference, a subject that the Court has addressed in a prior case management conference and will address further in future Orders as appropriate.

1

27-CV-19-19916

Case 3:19-md-02885-MCR-GRJ   Document 1862-11   Filed 05/10/21   Page 19 of 33
Case 3:19-md-02885-MCR-GRJ   Document 1862-25   Filed 05/13/21   Page 2 of 7

conducted by remote videographic means in *In re: 3M Combat Arms Earplug Products Liability Litigation*.

1.   Any Videoconference Deposition taken pursuant to this Court's Orders must comply with the requirements in Fed. R. Civ. P. 30(b)(5).  This includes the requirements that, (a) "[u]nless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28," and (2) that officer must administer the oath or affirmation to the deponent. A Videoconference Deposition taken pursuant to this Case Management Order will be deemed to have been taken before an appropriate officer despite the court reporter not being in the same physical location as the witness—as long as the court reporter attends the deposition by the same remote means as the other participants and is able to hear and communicate with other attendees.  To the extent permitted by the law of the state in which the witness is located, the witness may be sworn in remotely with the same effect as an oath administered in person.

2.   The deposition notice for any Videoconference Deposition pursuant to Fed. R. Civ. P. 30 must list the location(s) (city and state) from where the witness, the court reporter, and the videographer will attend.

3.   All deposition notices must identify the company that will host and record the remote deposition (the "Remote Deposition Vendor") and contain a general

2

27-CV-19-19916

Case 3:19-md-02885-MCR-HTC Document 1862-11 Filed 08/10/21 Page 20 of 33
Case 3:19-md-02885-MCR-GRJ Document 94-25 Filed 05/13/21 Page 3 of 7

description of how those attending may access the remote connection being utilized (*e.g.*, GoToMeeting, Zoom, WebEx). The party noticing the deposition must provide the witness and all other attendees with detailed instructions regarding how to participate in the Videoconference Deposition at least three business days before the deposition—and will use best efforts to provide the detailed instructions at least five business days before the deposition.

4.     To host a remote deposition, a Remote Deposition Vendor must have implemented adequate security measures to ensure the confidentiality of the remote deposition (*e.g.*, video and audio feeds, exhibits). These security measures include using tools such as a "virtual waiting room" that allows the court reporter to admit only individuals authorized to attend the deposition.

5.     At least 24 hours before the Videoconference Deposition is scheduled to start, counsel, the witness, and the Remote Deposition Vendor must conduct a test of the system, equipment, and internet connection that will be used to conduct the remote deposition (the "Remote Deposition Technology"). If a witness noticed for a Videoconference Deposition does not have a webcam-equipped tablet, desktop or laptop computer that can be used during the deposition, counsel who noticed the deposition must provide the deponent with an agreed-upon tablet containing the audio, webcam, and Wi-Fi connectivity needed to

27-CV-19-19916

Case 3:19-md-02885-MCR-HTC Document 1862-11 Filed 08/10/21 Page 21 of 33
Case 3:19-md-02885-MCR-GRJ Document 9125 Filed 05/13/21 Page 4 of 7

participate in the deposition.

6.      At the time of the deposition, the witness must advise the court reporter of his
or her physical location.  The witness should endeavor to participate in the
deposition from a quiet, well-lit, indoor location, while seated in front of a
neutral background, and facing the camera being used to record the witness.
To avoid any potential disruptions of a Videoconference Deposition, those
attending must enable "do not disturb" settings for applications not in use,
including but not limited to, Skype, instant messaging, and/or e-mail
notifications.  The Court recognizes that the microphones for certain attendees
(such as the witness, the court reporter, the attorney taking the deposition, and
the attorney defending the deposition) must remain on when the deposition is
on the record.  Other attendees should mute microphones when not speaking.
The Remote Deposition Technology must be able to show in real-time a list
of all persons attending the Videoconference Deposition.  The participating
attorneys may be visible to all other participants during the deposition.

7.      A videographer employed by the Remote Deposition Vendor will record the
witness's deposition testimony, by the best technological means available,
including remote video capture/recording.   The video recording of the
deposition may only be suspended during the deposition upon stipulation by
counsel conducting and defending the deposition.  With the exception of the

4

27-CV-19-19916

Case 3:19-md-02885-MCR-HTC Document 1862-11 Filed 05/10/21 Page 22 of 33
Case 3:19-md-02885-MCR-GRJ Document 1123 Filed 05/13/21 Page 6 of 7

videographer and the court reporter, the deposition may not otherwise be recorded electronically without the consent of the Parties. The videographer must only record (1) the audio and video of the witness's testimony; (2) the video of any documents being displayed or annotated for the witness during the deposition; and (3) the audio of the questioning and defending attorneys. The fact that a deposition was noticed to take place remotely, and was recorded remotely, will not, by itself, be a sufficient basis for preventing the remote deposition from being admitted at trial with the same effect as a deposition video that was recorded in-person.

8.  During the deposition, full and complete copies of deposition exhibits must be provided to the witness and counsel who are attending the deposition. Deposition exhibits may be made available in physical (hardcopy) form or via the Remote Deposition Technology, file sharing software, or other electronic means. A witness may be required to use a keyboard, mouse, or other similar means to open and/or advance the pages of an exhibit. Access to a full copy of the deposition exhibit electronically via iPad, tablet, laptop, or other devices, will be deemed to equate to hardcopy access. The fact that a witness was provided with an electronic copy of an exhibit will be an insufficient basis, by itself, to object to the admissibility of that exhibit at trial. During the deposition, the Remote Deposition Technology must allow counsel to

27-CV-19-19916

Case 3:19-md-02885-MCR-HTC Document 1862-11 Filed 08/10/21 Page 23 of 33
Case 3:19-md-02885-MCR-GRJ Document 1142-25 Filed 05/13/21 Page 6 of 7

display and annotate exhibits for the witness, add and remove exhibits, and change the order in which the exhibits are presented to the witness.

9. During the deposition examination, no person is permitted to communicate with the witness by any means not recorded in the same manner as the deposition itself (*e.g.*, no text or email exchanges with the witness). However, the witness's counsel may communicate with the witness telephonically or by other electronic means during breaks, consistent with Federal Rule of Civil Procedure 30(c)(1).

10. Any pauses, lags, and/or disruptions in technology, including but not limited to interruptions in Internet connection, will not result in waiver of objections by any party. If any pauses, lags, and/or disruptions are persistent or prolonged, the Parties should: (1) extend the remote deposition by an amount of time equal to the duration of the pause, lag, and/or disruption, provided that the additional time is less than an hour; or (2) consider rescheduling the remote deposition for a later date, if the additional time required is an hour or more.

11. Nothing in this Order prevents a party from moving for a protective order under Fed. R. Civ. P. 26(c) to require that a given individual deposition proceed in person. Further, nothing in this Order precludes counsel for a witness from being in the same room as the witness, if the witness consents

6

27-CV-19-19916

Case 3:19-md-02885-MCR-HTC Document 1862-11 Filed 05/10/21 Page 24 of 33
Case 3:19-md-02885-MCR-GRJ Document 1125 Filed 05/13/21 Page 7 of 7

and such attendance is consistent with social distancing restrictions. Under such circumstances, the party noticing the deposition may still opt to conduct its examination by videoconference.

12. For *Touhy*-witness depositions, additional protocols may be established by the Court.

**SO ORDERED**, on this 13th day of May, 2020.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT B



# A PRACTICAL GUIDE TO PARTICIPATING IN VIRTUAL DEPOSITIONS WITH VERITEXT

## KEY SERVICE POINTS

- Secure service and connection HIPAA compliant and 256 BIT encryption
- Unlimited participants
- Remote or in person officiant for the entirety of your proceeding – situation dependent
- The proceeding may be video recorded either in person or remotely
- See sample notice provided by your Veritext representative.
- Stipulation on the record sample: Attorneys or the Reporter typically read a simple statement as follows at the beginning of the deposition to clearly set forth the remote virtual setting of the participants:
    - o "The attorneys participating in this deposition acknowledge that the reporter/deposition officer is not physically present in the deposition room and that the reporter/deposition officer will be reporting this deposition remotely. The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting. Please indicate your agreement by stating your name and your agreement on the record."

## VIRTUAL VIDEO DEPOSITION REQUIREMENTS FOR ALL REMOTE ATTENDEES

- Computer
- Wireless or wired internet (wired preferred)
- Webcam
- Speakerphone with the ability to receive a phone call or place a toll-free call*
- It is highly recommended that the participants connect through a dedicated cell or landline for your audio connection versus your computer audio to avoid possible internet connection quality interference.

## EXHIBIT SHARE DEPOSITION REQUIREMENTS FOR ALL REMOTE ATTENDEES

- Computer/ iPad / tablet device
- Wireless or wired internet (wired preferred)

Taking Attorney Tutorial  https://www.veritext.com/exhibit-share-tutorial-depo-ordering-attorney/
Attending Parties & Deponent Tutorial https://www.veritext.com/exhibit-share-tutorial-at-the-depo-for-participatingparties/
Remote Proceeding Functionality Tutorials (e.g. sharing screen, marking exhibits, etc.)
https://www.veritext.com/remote/ (scroll to the bottom of the web page)

## YOUR INVITATIONS TO VIRTUAL DEPOSITION & EXHIBIT SHARE

### Virtual Video ZOOM Invitation:

- Invitations from @Remote Counsel  - You will get one invitation for video and realtime should you  add the realtime service.
- Please save these invites in your calendar.  15 minutes before the deposition start time please join the session by: Clicking the link in the e-mail invitation/s which will launch Zoom.  Alternatively, you can copy the entire link and paste it into your browser window.



**Veritext Virtual Platform Invitation (separate platform from Video Zoom): (note: the two platforms is a bit confusing to the unknowing)**

- o   Email goes out to attorneys when the session is created by our Veritext  Virtual Team.  The e-mails DOES NOT contain a link to join the session, it contains information about testing, technical support, and how to access MyVeritext the day of the deposition to log in to the Virtual Session.  Witness and Vendor invitations are sent as a link in an email.
- o   Invites come from: [mobiledepo@veritext.com](mailto:mobiledepo@veritext.com)
- o   Join the session by: Attorneys – Log into MyVeritext, click Live Sessions and join the session.  Witness/Vendors – Click the link in the e-mail that was sent

**Exhibit Share Invitation (Separate platform from the 2 virtual connection platforms above):**

- •   Once the Exhibit Share session is set up, attorneys that didn't previously have a user account for exhibit share are sent an invitation to create an Exhibit Share account from [notify@egnyte.com](mailto:notify@egnyte.com).  ( Please do this ahead of the deposition )
- •   If an attorney is TAKING or PARTICIPATING in an Exhibit Share deposition and ALREADY has an Exhibit Share account, they will not receive a new invitation, just an e-mail that a NEW FOLDER has been set up in XYZ Case for that deposition.
- •   Invites Come from: [Notify@egnyte.com](mailto:Notify@egnyte.com)
- •   Join the Session by: Logging in with your username/password by visiting [https://www.veritext.com/services/veritext-exhibit-share-intro/](https://www.veritext.com/services/veritext-exhibit-share-intro/)   Bookmark this page for future use and save your login somewhere secure.

## PRE-DEPOSITION TECHNOLOGY & LOGISTICS PREPARATION

- •   Consider including protocol for in deposition best practices for all parties in the CMO.
- •   Consider what admonitions you would like to bring forth to set the tone for all participants at the start of the deposition, including on the record communications between the deponent and their counsel (e.g. texting back and forth, etc.).
- •   Ensure that you have provided Veritext with contact information for all remote participants including your opposing counsel and the witness at least 48 hours ahead of the deposition so all can be added and provided adequate training.
- •   Know how you are going to share exhibits; ensure they are scanned ahead of time so you can share with the reporter and other attendees.  Ensure exhibits get to the court reporter once the depo is over.
- •   All invitations to join depositions should be saved. Any instructions around training and testing (especially for first time users ) should be followed to ensure success in the live deposition session.
- •   If you are planning on using multiple virtual options such as video, realtime, screenshare,  you may wish to have two monitors.
- •   If you are logging into Virtual and Realtime you will get two invitations with a link from "Remote Counsel".
- •   If you are also using Exhibit Share you will get an additional email with a separate log in.

## CREATE A PROFESSIONAL ENVIRONMENT*  - Video and Audio Best Practices
   **( *Particularly important for the witness if being video recorded )**

- •   Please listen to the court reporters' advisements on best practices.
- •   Be aware of "on" and "off" the record prompts to avoid having an off the record conversation recorded.
- •   Do not talk over one another.
- •   Be clear when introducing exhibits and include the document title and bates #
- •   If exhibits have not been circulated in advance, please advise your reporter as to the mechanism of exhibit delivery so



that he/she can prepare the final transcript.

- Curate your background. No plain white walls or messy rooms. Bookshelves and desks show you are all business.
- Do not sit with any windows behind you. This causes back lighting and makes your image difficult to see.
- Have lights above you but not directly pointed at your face. This prevents washout or harsh, unflattering light.
- Turn off other audio devices (TV in background, turn off personal cell phone, Siri, Alexa, try to distance yourself from family members and pets, etc.)
- Try to avoid black or white shirts so you don't blend in with your background
- Bright rooms, but no lights directly pointed at face (washout/ harsh light)
- Do not lean into the camera (dipping in and out of frame)
- Put your laptop/tablet on top of a book etc. so you are eye level with the camera.
- Do not lean into the camera or dip in and out of frame.
- You should be an arm's length away from the webcam.
- Try to protect your video feed by calling into the meeting instead of using the computer audio.
- Use headphones on your phone to prevent an echo when on speakerphone.

## DURING THE VIRTUAL DEPOSITION – BEST PRACTICES

- Log in at least 15 minutes early in case you have any issues connecting so you have time to engage with technical support.
- Mute your microphone if you're not talking. This cuts back on soft background noise.
- Please do not talk over each other.
- Appropriate and professional behavior of all participants should be discussed and understood by all participants.
- Ensure the deponent and taking attorney are on screen. The reporter relies on visual cues and reads lips in addition to his / her listening skills.
- If ordering remote Realtime, understand that you receive this once the reporter "shares" it with you, it does not activate until the reporter is ready.
- If you are going off the record, clearly announce this to all participants.
- During breaks be sure to turn off your webcam, mute your computer microphone and hang up on the phone call. You can dial back in after the break.
- Introducing exhibits, please be sure to give a full description of the exhibit including Bates # range, if applicable.

## WITNESS PREPARATION – POINTS TO CONSIDER

**Timing, trial run(s) – getting used to the setting & technology being used:**
- Your client is not in your physical presence
- Handling questions and answers in general – then pause before answering
- How are you going to handle instructions not to answer and/or objections
- Handling off the record conversations (disconnecting from the conference line, turning off Siri, Alexa if in the area, etc.)
- Handling the review and testimony related to exhibits regardless of medium & size (think documents, video, spreadsheets, plans, social media) Get it on the record.

## VALUABLE TUTORIALS AND VIDEO TO GUIDE YOU

Lastly Veritext has created a comprehensive guide to our suite of remote deposition tools that can be accessed by following this link https://www.veritext.com/remote/  scroll down the page to find instructional tutorials and more.

Veritext Zoom: How to Join a Meeting

## Overview

Virtual Zoom is a web conference service that allows professionals to join a meeting from their laptop, tablet, or smartphone. Below are instructions for first time users that will illustrate how to connect to the conference and select your camera and microphone.

## Joining the Conference

When a web conference is scheduled participants will receive three pieces of information.

1. A link to join the meeting
2. A meeting ID
3. A number to dial in from via telephone

For first time Veritext Zoom users, clicking the link to join the meeting will open your browser and download an installation file onto your computer.



Run the installation file by double clicking it and the web conference software will be automatically installed on your device. If the Virtual Zoom session has begun the meeting will open and you will be able to begin selecting your settings.



Veritext Zoom: How to Join a Meeting

## Audio Settings

Upon opening a Virtual Zoom session, you will be automatically prompted to select your audio preferences. To utilize your device's built in speaker and microphone click the Join with Computer Audio button.



You may alternatively choose to utilize a phone for audio purposes. Selecting the Phone Call tab will display the dial in number and meeting ID numbers. To use your phone, dial the dial in number and enter the meeting ID number when prompted to do so.

Another method of using your phone is the Call Me feature. To use this option select the Call Me tab, enter your number, and click the Call Me button. Within seconds the selected phone number will receive a call. Answer the call and follow the prompts to join the meeting.



## Camera Settings

Selecting your camera is a simple as a click. On the Virtual Zoom's bottom toolbar locate the "Start Video" button and click it to enable your primary camera. You may select an alternate camera by clicking the arrow next to Start Video and clicking on a different camera.





**Veritext Virtual: How to Share Exhibits**

## Overview

Veritext Virtual has a screenshare function that enables users to share their screens from either a desktop, tablet, or mobile device. When doing so, all other participants will be able to follow along live as you display documents, manipulate spreadsheets, play videos, and more.

## How to Share

During a Veritext Virtual conference, to share your screen, do so by clicking on the "Share" icon on the bottom toolbar, circled in red below.



After clicking this button, a new window will appear that lists all screens and applications currently open on your device. In this window, select what you want to share by clicking on the icon, which will highlight your selection blue. When the appropriate screen or application is highlighted, select share in the lower right corner and you will be displaying your content to the room. If what you want to share is a video with audio, check the "Share computer audio" box in the lower left before clicking Share.







## While Screen Sharing

After initiating a screen share a new menu will appear at the top of your screen. This menu enables you to perform some key functions while screen sharing.



Most importantly, you may terminate your share session by clicking the red Stop Share portion of the menu. Alternatively, if you simply need a moment to organize while presenting, you may click the Pause Share button to freeze what the viewers are seeing; this will change the Pause Share icon into a Resume Share icon. Once you have adjusted your screen appropriately simply click Resume Share to proceed.

Additionally, the Annotate feature activates a toolbar (below) that allows all deposition participants to use the screen as a whiteboard to write words and lines or stamp symbols on your screen. Before or during annotating, under the More icon you can disable participant annotations or show names of annotators. Finally, once you have an annotated document, you may select Save on the annotation toolbar to archive a screenshot of your display with the annotations made.



Finally, the Remote Control feature allows you to select a specific Veritext Virtual participant and provide him/her control your computer. With this control they can operate your mouse and keyboard which can be useful during document review. Once a remote control has initiated it can be terminated by selecting the Remote Control icon again and clicking Abort Control.



Re:     *In re: 3M COMBAT ARMS EARPLUG LITIGATION*
        *Court File No. 27-CV-19-19916*

        *This Document Relates to:*
        *ALL CASES*

## AFFIDAVIT OF SERVICE

STATE OF MINNESOTA     )
                       )ss.
COUNTY OF HENNEPIN     )

I, Joyce Dominique, state that on the 6th day of July, 2021, I e-served the attached:

### *NOTICE OF REMOTE ORAL AND VIDEOTAPED DEPOSITION OF COLONEL (RET.) JAY VIETAS*

Service was accomplished by posting a true and correct copy of the above-entitled document in Odyssey® File and Serve and thereby serving all counsel of record by electronic service.

*/s/ Joyce Dominique*
Joyce Dominique