## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| *All Cases* | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' MOTION TO REOPEN DISCOVERY

Global discovery closed in this MDL on September 1, 2020.  Nearly a year later, Defendants threaten that if Plaintiffs abide by the discovery deadline, in declining to participate in the untimely deposition of Retired Colonel Jay Vietas, Defendants will nevertheless seek to "use" that testimony in subsequent MDL trials.

Defendants' proposal to determine the permissible "use" of untimely discovery only after the deposition is taken must be rejected.  There is no good cause to reopen discovery, and Defendants' motion should be denied.

## BACKGROUND

On June 22, 2020, Defendants proposed a global corporate discovery cutoff of August 31, 2020.[1]  Defendants argued that corporate "discovery must close at some point," and that a lack of finality "will interfere with the Parties' trial

---

[1] *See* Exhibit A, June 22, 2020 Def Ltr re Scheduling Order.

1

preparation, including expert reports, depositions, and *Daubert* motions."[2]
Defendants argued that a discovery deadline was necessary to enable the litigation
to "proceed[] to trial in an orderly fashion."[3]  Because discovery was ongoing, and
in light of the one-sided nature of Defendants' proposal, Plaintiffs opposed the
request.[4]

On June 29, 2020, Defendants' request for a discovery cutoff was largely
granted: Corporate and Government discovery would close on September 1, 2020.
At that time, the Court clearly urged Defendants on the record to proceed with all
Government discovery in time for the deadline.  With regard to military fact
witnesses no longer employed by the Government, the Court "directed the
Defendants to move forward with those depositions without any further delay."[5]

Ten months after the close of generic MDL discovery—and only after three
bellwether trials (for five plaintiffs)—Defendants invited Plaintiffs to "participate
in" an anticipated deposition of Vietas, originally noticed in Minnesota state court.[6]
When it became clear Defendants intended to take this discovery without seeking
leave, Plaintiffs raised the untimely discovery to the Court.  The Court reiterated the
substance of its discovery orders, and ordered that, should Minnesota plaintiffs'

---

[2] *See* Exhibit A, June 22, 2020 Def Ltr re Scheduling Order at 2.
[3] *Id.*
[4] *See* Exhibit B, June 22, 2020 Pl Ltr re Scheduling Order.
[5] June 26, 2020 CMC Tr. at 20:13-21:9 (emphasis added).
[6] *See* Def. Br. at 1-2, *id.* at 8-12.

2

"motion to quash be denied, Defendants must file a motion for leave to use the deposition in the MDL."  ECF No. 1839 at 5.

After the motion to quash was denied, Defendants declined to file a motion as this Court had directed.  Instead, Defendants proceeded with efforts to schedule Vietas' deposition, in disregard of the discovery deadlines in this MDL.[7]  When it became clear, again, that Defendants did not intend to seek leave to reopen discovery, on August 3, 2021 Plaintiffs, again, raised the issue to the Court,[8] which, again, repeated its prior guidance:  Defendants "will not be permitted to use Col. Vietas' deposition in any MDL case for which no cross notice was given to Plaintiffs."[9]

Plaintiffs do not believe there is a basis for Defendants' statements that the Vietas deposition is certain to occur in the Minnesota action and would be timely in that action.[10]  *First*, Plaintiffs understand Vietas is not available for deposition before the discovery deadline in the Minnesota cases, September 10, 2021, and that therefore an extension of the deadline would be necessary to take Vietas' testimony.

---

[7] *See* Exhibit C, 7/22/21 Wasdin Email. *See Moyer v. Disney World Co.*, 146 F.Supp.2d 1249, 1252 (M.D. Fla. 2000) ("[a] Scheduling Order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'") (quoting *Payne v. Rider Sys., Inc. Long Term Disability Plan*,173 F.R.D. 537, 540 (M.D. Fla. 1997)).
[8] *See* 8/3/21 Pl Ltr to Ct.
[9] ECF No. 1851 at 2.
[10] *See* Defs' Br. at 15 ("The deposition will occur in the Minnesota litigation in any event."); *id.* at 3.

3

Plaintiffs understand the Minnesota parties have not yet sought such an extension from the Minnesota court. *Second*, as Defendants stated in their brief, Minnesota Defendants "offered to forego the [Vietas] deposition if the Minnesota plaintiffs agreed, among other things, not to use the Vietas letter during the Minnesota trials."[11]  Plaintiffs understand that Minnesota plaintiffs have since proffered such an agreement, although Plaintiffs do not know the impact of that proffer on the deposition.  It is therefore apparent that the Vietas deposition will not occur within the current Minnesota discovery deadlines, and may not occur at all in the Minnesota action due to potential stipulation by the Minnesota parties.

Now, Defendants not only seek to reopen discovery, but also insist they are entitled to seek leave to "use" of Vietas' deposition testimony after the deposition is taken.  Defendants' request to reopen discovery and Defendants' request to defer ruling on the admissibility of untimely discovery should be denied.

## LEGAL STANDARD

A party seeking to modify a scheduling order after the deadline has passed must show good cause by demonstrating that their failure to act was attributable to excusable neglect.  *See* Fed. R. Civ. P. 6(b).

---

[11] Defs' Br. at 9.  As the Court is aware, the MN litigation is centered largely, if not entirely, around civilian use of the CAEv2.

"To establish good cause, the party seeking the extension must establish that the schedule <u>could not be met</u> despite the party's diligence." *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) (emphasis added) (citing *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008)).   In determining excusable neglect, the Eleventh Circuit considers the following factors: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Fisher Island Ltd. v. Fisher Island Invs., Inc.*, 518 F. App'x 663, 667 (11th Cir. 2013).

The good cause inquiry depends in large part on the diligence of the moving party, particularly the relationship between the time when the movant became aware of the discovery now sought, and the time when the movant elected to seek the discovery.   "In other words, the moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline." *Williams v. Blue Cross & Blue Shield of Fla., Inc.*, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010).

5

## ARGUMENT

### I.   There Is No Good Cause to Reopen Discovery

Defendants do not meet—and tellingly, failed even to clearly articulate—the standards for good cause and excusable neglect.  Defendants also decline to address the obvious prejudice and burden to Plaintiffs, instead insisting that no prejudice to Plaintiffs would result from their request.  Defendants' motion should be denied. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) ("We have often held that a district court has not abused its discretion by holding the litigants to the clear terms of its scheduling order.").

### a.  Defendants Did Not Exercise Diligence

Defendants expend considerable words attempting to explain or justify their strategic decision not to depose Vietas.  But tactical planning does not constitute good cause.  Indeed, Defendants make no sincere effort to argue that they lacked the information, time, or opportunity necessary to take the discovery.[12]

"A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry."  *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002).  Here, the timeline of relevant event reflects Defendants'

---

[12] *See Sweet v. Lockheed Martin Corp.*, 2009 WL 10664952, at *3 (N.D. Ga. Aug. 21, 2009) (denying motion to reopen discovery where movant did not dispute that they "had the opportunity to take the depositions. . . during the extended discovery period but chose not to do so.").

6

utter lack of diligence.  Defendants fully admit that they were aware of the Vietas Letter on February 3, 2020, four months before Defendants even requested a discovery deadline, and seven months before the discovery deadline ultimately imposed by the Court.  Defendants made use of the document almost immediately— in the February 26, 2020 Merkley deposition—and it was thereafter repeatedly an exhibit to other depositions within the period of open general Government discovery.[13]  Defendants do not deny that they made no effort to seek Vietas' deposition until June 17, 2021, more than sixteen months after the Vietas letter was produced and used.[14]

Instead of claiming diligent and timely action, or that they lacked necessary information, Defendants explain the strategy behind their decisions.  Defendants claim that they did not seek Vietas' deposition because they "did not believe that the Vietas Letter would be admissible at trial."[15]  And that they did not seek Vietas' deposition because the "Vietas Letter has turned out to be more important than Defendants believed it would be."[16]  These decisions are admittedly strategic and cannot be the basis for establishing good cause.  Defendants "chose to roll the dice"

---

[13] 2/26/20 Merkley Dep. Ex. 18; *see also* 3/10/20 Babeu Dep; 7/16/20 Hobbs Dep.

[14] *See* Exhibit D, June 5, 2020 Def Ltr. Re Custodians at 1-2 (Defendants arguing that request for additional custodians should be denied, because the request was made "*three to six months after Plaintiffs possessed the documents they allege demonstrate these custodians' relevance.*") (emphasis in original).

[15] Def. Br. at 7; *id.* at 15.

[16] Def. Br. at 8.

with regard to the importance and admissibility of the Vietas letter, and seeking to re-open discovery only after the Court's evidentiary orders is "an impermissible attempt to get a second bite at the apple and do an end-run around the Court's ruling." *United States for use & benefit of Tennessee Valley Auth. v. An Easement & Right-of-Way Over 2.56 Acres of Land, More or Less, in Whitfield Cty., Georgia*, 2019 WL 10734656, at *2 (N.D. Ga. Mar. 5, 2019). After Defendants obtained the discovery cutoff they requested, all Parties were required to make strategic choices in prioritizing certain topics and witnesses within the remaining open discovery period. Plaintiffs have lived with those choices, and have abided by deadlines that have denied them the opportunity for further corporate depositions or document productions. Defendants' second-guessing of their own past strategic choices and subsequent desire for a do-over does not constitute good cause to reopen discovery.

### b. CMO 6 Did Not Prevent Vietas' Deposition

Defendants acknowledge, as discussed above, the strategic nature of their decision not to depose Vietas. In apparent recognition that such decisions do not create good cause, Defendants have attempted to backfill an argument that CMO 6 prevented Vietas' deposition. But CMO 6 was no bar to discovery.

CMO 6 did not require a final submission of all government deposition requests—it merely required the Parties to "segregate the requests that are relevant to Defendants' affirmative defenses from those which are not relevant to the

8

defenses."[17] CMO 6 did not require Defendants to "request that the Government defer action" on any particular deposition, or to defer action on any deposition indefinitely—Defendants were ordered only to request deferred action on issues unrelated to affirmative defenses.[18] And on June 26, 2020, at the time the discovery deadline was set, the Court expressly "directed the Defendants to move forward with those depositions [of former Government employees] without any further delay."[19] Defendants' decision not to take Retired Colonel Vietas' deposition reflects a failure of diligence, which cannot be cured by a strained reading of a much earlier order.

### c. Plaintiffs Would Suffer Prejudice

Since the close of discovery nearly a year ago, the Parties have spent considerable time and expense synthesizing the factual record as developed in discovery into the testimony, expert proofs, and extensive work product necessary for trials in this MDL. Reopening discovery, even where nominally limited to a single deposition, will have broader impact, and prejudice Plaintiffs.

The prejudice to Plaintiffs extends well beyond the costs and burdens of preparing for and taking a deposition out of time.[20] Plaintiffs have devoted

---

[17] *Compare* CMO 6 at 2 *with* Def. Br. at 2, 6, 14.

[18] *Id*.

[19] June 26, 2020 CMC Tr. at 20:13-21:9 (emphasis added).

[20] These burdens would, however, be a sufficient basis to deny Defendants' motion on their own. *See, e.g.*, *Sweet v. Lockheed Martin Corp.*, 2009 WL 10664952, at *3 (N.D. Ga. Aug. 21, 2009) (denying good cause motion because reopening discovery

thousands of hours since the close of general discovery to synthesize the factual record, to designate and litigate deposition testimony, to develop expert proofs, to engage in extensive pretrial motion practice on evidentiary matters, and to generate trial-related work product. Plaintiffs have done so while properly relying on the enforceability of this Court's discovery orders and deadlines.

Defendants' effort to open this window only a sliver will not only cause Plaintiffs prejudice, [21] but will also not succeed. Most of the general corporate and government testimony in this case is frozen in time, and played as video tape. Under the timeline Defendants have designed for themselves, Vietas will therefore get the final say in this litigation – by taking this discovery out of time, Defendants make it impossible for Plaintiffs to confront any of the many previously deposed government and corporate witness with Vietas' testimony. Defendants' strategic lack of diligence also prevents meaningful follow-up discovery relating to any testimony Vietas might give. During general discovery, the Parties would have been able to pursue other witnesses and documents that Vietas might raise in his testimony.

---

for an additional deposition "would result in additional costs and fees. . . relating to the taking of the depositions. . . causing additional expense" to the non-movant).

[21] Defendants make no serious attempt to address the issue of prejudice in their motion, opting instead to play dumb. They claim that Plaintiffs "suffer no prejudice" from the demands of preparing for and taking an additional general discovery deposition – to the contrary, Defendants argue, Plaintiffs are being "provided the opportunity to participate," not a burden. Def. Br. at 3.

Defendants' strategic delay has made such follow-up discovery impossible, and their request should be denied.

## II. Defendants' Request to Defer Ruling Until After the Deposition Must Be Denied.

The Court has repeatedly advised Defendants that they "will not be permitted to use Col. Vietas' deposition in any MDL case for which no cross notice was given to Plaintiffs."[22]  Defendants, however, continue to suggest that they may take the Vietas deposition in Minnesota, regardless of the MDL's discovery deadline or prejudice to MDL Plaintiffs, and seek its admission in the MDL "after Vietas has testified."[23]  This proposal is a direct attack on the procedural protections of the Federal Rules, would cause significant prejudice to Plaintiffs, and must be rejected.

As a practical matter, deferring judgment on the "use" of Vietas' testimony would cause Plaintiffs the same prejudice as reopening discovery.  To adequately represent MDL Plaintiffs, Plaintiff Leadership must have the opportunity to conduct cross-examination when testimony is taken that might be used in MDL Trials.  The necessity of a representative to develop testimony is reflected, for example, in Rule 30's requirement of deposition notices, and in Rule 32's limitations on the use

---

[22] ECF 1851 at 2.
[23] Def. Br. at 16.

of deposition testimony against parties who received no notice.[24]  Defendants seek
to avoid these Rules, and the Court's orders.  If Defendants, as they propose, can
later seek to use Vietas' testimony, then that possibility forces Plaintiff Leadership
to prepare for and take the deposition, the same as if the deposition was timely cross-
noticed within the general discovery period.  If discovery remains closed, Plaintiff
Leadership would nevertheless be forced to shoulder the burden of preparing for and
taking Vietas' testimony if a decision on Defendants' clearly-intended "use" of
untimely discovery is deferred.

Additionally, Defendants' proposal renders moot any discovery deadline
entered by this Court. Under Defendants' proposal, as long as Defendants can find
third parties testifying in other proceedings, Defendants can ignore all Court-ordered
deadlines, avoid notice to Plaintiffs, neglect to demonstrate good cause to reopen
discovery, but nevertheless seek to "use" the untimely discovery they gathered.
Defendants apparently believe this Court's order cutting off Government discovery
was a bluff, and they are calling it.

III.    Conclusion

Plaintiffs request that the Court deny Defendants' motion to reopen discovery.
Defendants sought and benefitted from a global discovery cutoff that Plaintiffs

---

[24] *See* Fed. R. Civ. P. 30(b)(1) (requiring "written notice to every other party"); Fed.
R. Civ. P. 32(a)(1)(A) (a deposition may only be used against a party "present or
represented at the taking of the deposition or [who] had reasonable notice of it.").

12

opposed, and Plaintiffs should not be denied the same peace and stability that the close of discovery granted Defendants.   Plaintiffs further request, in light of the burden and prejudice described above, that absent an order reopening discovery in advance of Vietas' deposition, Defendants be barred from *post hoc* attempts to "use" Vietas' testimony in any MDL case or trial.

Date:  August 17, 2021            Respectfully submitted,

/s/ Bryan Aylstock
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2021, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*<u>/s/ Bryan Aylstock</u>*