EXHIBIT D

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Robert C. Brock, P.C.
To Call Writer Directly:
+1 202 389 5991
mike.brock@kirkland.com

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

+1 202 389 5000

www.kirkland.com

Facsimile:
+1 202 389 5200

June 5, 2020

Judge Gary R. Jones
United States Magistrate Judge
United States District Court for the
Northern District of Florida
401 SE First Avenue
Gainesville, Florida 32601

> Re: *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885

Dear Judge Jones:

Defendants now return to the Court to renew their request that this Court enter an order barring Plaintiffs from continuing to add new custodians. Defendants have worked diligently to complete company discovery, and have been working with Plaintiffs to finalize the TAR process and close out elusion testing. But now, at the eleventh hour, when Defendants have already certified completion of over **50** existing custodians, and produced over 330,000 documents, Plaintiffs sent a letter requesting that Defendants add eight entirely new custodians. (*See* Ex. 1.) The addition of new custodians—*individuals which Plaintiffs should have been aware of for months*—seemingly has no end.

As discussed below, Plaintiffs have been in possession of produced documents related to the requested custodians for months without asking them to be added. The earliest that Plaintiffs received the documents they allege demonstrate these custodians' relevance was September 28, 2019, over *six* months before they sent the request to add new custodians. The ***latest*** that Plaintiffs possessed the documents they allege demonstrate these custodians' relevance was January 10, 2020—over *three* months before they sent this request. Plaintiffs chose to delay for

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 2

three to six months before seeking to add these custodians; that delay alone requires that Plaintiffs' request be denied.

Nor can plaintiffs have it both ways. They cannot complain about late-produced documents, while simultaneously requesting that Defendants add custodians to the TAR Corpus *three to six months after Plaintiffs possessed the documents they allege demonstrate these custodians' relevance.* As discussed with Plaintiffs and before the Court on multiple occasions, because of the nature of the TAR process, until the TAR model is finalized, adding new custodian data to the "TAR Corpus" requires the system to re-sample from all existing data, and results in additional productions for previously-identified and previously-deposed custodians. Based on these additional documents then, Plaintiffs challenge Defendants' good-faith, comprehensive discovery efforts. This is exactly what Defendants warned against, and exactly why, in their November 13, 2019 letter to the Court, Defendants stated:

> [W]hen custodians are added, the TAR algorithm yields new documents, including documents from "old" custodians that had previously been rejected for production by the TAR system. These new TAR documents give plaintiffs new "leads" on more custodians to request. Thus, new TAR custodians lead to even more TAR custodians - there is no "finish line" unless a custodian cut-off is imposed. . . .

> What does all this mean, given that depositions have already started? It means that, notwithstanding Defendants' diligence, Plaintiffs' continuing addition of custodians (including last Friday [November 8]) will guarantee that deponents' documents are only identified and produced after their depositions have occurred. Plaintiffs will then (wrongly) use these post-deposition productions to advocate for more depositions.

> From the beginning, Defendants have repeatedly warned Plaintiffs that seeking early depositions—while plaintiffs are simultaneously adding new custodians and document requests—will cause document productions and depositions to overlap. Defendants also (correctly)

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 3

> forecast that Plaintiffs would use this overlap to seek to re-depose witnesses.
>
> There is no way to address Plaintiffs' new custodial requests without impacting the rest of the fact discovery process.

(Ex. 2, 11/13/19 Ltr. at 5–6.)

But despite the Court's admonition that Plaintiffs' discretion to request new custodians is not unlimited,[1] Plaintiffs now seek to add *six* additional custodians—custodians that they have known of for months.[2] Thus, Defendants respectfully request that the Court not only deny Plaintiffs' requests but also order that Plaintiffs may not continue to add document requests or custodians.

### I. The Nature of the TAR Process Mandates that Adding New Custodians and Document Requests Results in New Productions From Previously-Identified Custodians.

As explained in detail in Defendants' November 13, 2019 letter, the dynamic nature of the TAR process means that the addition of new custodians necessarily results in additional productions from previous custodians for which Defendants have certified completion. This is exactly what happened here, and has led to Plaintiffs' current complaints regarding "late" productions.

Just last week, Plaintiffs argued before the Court that Defendants produced documents for custodians that were certified as complete prior to their depositions after those depositions. But because training on the TAR model continues, the addition of the new custodians and collections *specifically requested* by Plaintiffs

---

[1] *See, e.g.*, 12/3/2019 Order (denying addition of six out of eight requested custodians); 12/3/2019 Hr'g Tr. 72:22–73:1 (this Court noting that "just so there's no mystery on this, the designation of new custodians, you know, the standard isn't I got an email, I saw someone's name on it, I want him or her to be a custodian. It really has to do with something coming up that truly is new material proportional that is necessary.").

[2] Defendants understand that Plaintiffs are no longer requesting the addition of Pegeen Smith and Lauraine Wells. The six custodians that Plaintiffs request be added are: John Clingman, John Jurney, Steve Todor, Mike Edwards, Selina Ramirez, and Rafael Martinez.

KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 4

since the completion of those depositions has resulted in new documents being produced for certain witnesses. This is not due to lack of diligence by Defendants, but is instead caused by Plaintiffs' own requests. The addition of documents to the TAR Corpus due to Plaintiffs' requests inevitably leads to Plaintiffs' "discovery" of additional custodians to request. The never-ending cycle of adding new custodians thus continues. Although the parties are in the process of validating and finalizing the TAR model such that further training and updating might not be necessary, that process has been going on since the parties last litigated a custodian dispute in early March and still has not yet been resolved.

## II.     Plaintiffs' Recent, Belated Custodian Requests.

In their April 22 letter, Plaintiffs identify certain documents that purport to show the relevance of each of the requested custodians. But what these documents in fact show is how long Plaintiffs were, or should have been, aware of each of the requested custodians, and how late their request to add such custodians came. Below is a chart of the earliest production date of documents identified by Plaintiffs for each custodian:

| **Custodian** | **Bates** | **Production Date** |
|---|---|---|
| Todor | 3M_MDL000423469 | 10/13/2019 |
| Clingman | 3M_MDL000755465 | 1/10/2020 |
| Ramirez | 3M_MDL000601979 | 11/22/2019 |
| Martinez | 3M_MDL000745879 | 1/1/2020 |
| Jurney | 3M_MDL000591210 | 11/21/2019 |
| Edwards | 3M_MDL000362160 | 9/28/2019 |

As shown above, the *earliest* that Plaintiffs' possessed the documents they allege demonstrate these custodians' relevance was September 28, 2019, over *six* months before they sent the request to add new custodians. The *latest* that Plaintiffs possessed the documents they allege demonstrate these custodians' relevance was January 10, 2020—over *three* months before they sent this request. And Rafael Martinez, for example, was raised at Mr. Kieper's deposition on December 20, 2019. (*See* Ex. 3, 12/20/2019 Kieper Dep. Tr. 679:22-23.) Similarly, an exhibit Plaintiffs

KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 5

utilized at Mr. Knauer's December 17, 2019 deposition lists Mr. Clingman as having received the August 16, 1999 memorandum regarding the "Combat Arms Plugs" design review meeting.[3]  (*See* Ex. 5, 3M_MDL000569933.)  Plaintiffs were aware of each of these custodians since at least December 2019.

And for certain custodians, the delay is even more pronounced.  Plaintiffs delayed over *six* months in requesting the addition of Mike Edwards and Steve Todor.  Since that time, Plaintiffs have requested no less than three additional sets of custodians, but nonetheless failed to include these custodians which they now suggest are highly relevant.  A graphic showing Plaintiffs' additional custodian requests on or after September 23 is below.[4]



---

[3] Plaintiffs asked Mr. Knauer at his deposition who Mr. Clingman was, and Mr. Knauer responded that he was an "operations supervisor." (Ex. 4, 12/17/2019 Knauer Dep. Tr. 177:18-20.) Plaintiffs cannot say that they were not aware of Mr. Clingman's role during the relevant time period until mid-January or later.

[4] The custodians who have been added include Julie Tremblay, Mike Cimino, Richard Knauer, Brian McGinley, Frank Gavin, Tom Geier, Peter Murphy, Martin Salon, Gary Warren, Rick Augustine, Gina Buccellato, Scott Cheek, Mary Colston, Marc Doty, Christine Dunn, George Foley, Vaughn Grannis, Lee Hager, Michael Harrison, Robert Klun, Joseph Kronzer, Tom LaValle, Frank Little, Timothy McNamara, Rick Morris, Ann Nostin, Ronda Notter, Mohammed Saleem, Kevin Spahn, Chuck Stobbie, Thomas Thomson, Phillip Van der Werken, David Viele, Robert Zielinski, Annette Childress, and April Noblitt.

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 6

As shown above, despite Plaintiffs' knowledge of each of the requested additional custodians months ago, Plaintiffs chose to wait until Defendants moved to Phase 2 Bellwether Plaintiff discovery to request these additional custodians. Plaintiffs' late requests should be denied.

### III. The Scope of Plaintiffs' Discovery Has Not Been Limited to Affirmative Defenses.

At the parties' meet and confer, Plaintiffs suggested that they did not seek these custodians until now because these custodians were not relevant to the government contractor defense, but instead are relevant to manufacturing and quality control. But Plaintiffs are wrong, as Defendants have repeatedly represented to this Court. Plaintiffs' discovery thus far in this case has not been limited to the government contractor defense. Indeed, the parties' Rule 26(f) report does not distinguish between general company discovery and affirmative defense discovery. (*See* Ex. 6.) In the Rule 26(f) report, "[t]he Parties agree[d] that ***generic discovery*** from Defendants and non-parties can fully proceed during this period," and "propose[d] the [] Phase 1 discovery and case management deadlines, which [were] intended to prioritize government and company discovery" as opposed to any plaintiff discovery. (*Id.* at 6 (emphasis added).)

That Plaintiffs have sought merits discovery from Defendants throughout the discovery period is reflected in Plaintiffs' November 19, 2019 letter to Judge Rodgers regarding "disputed custodians, and their role and relevance." (*See* Ex. 7.) In the attached custodian chart, Plaintiffs identify the ***59*** custodians that Plaintiffs had already requested to date, and their purported "Areas of Primary Relevance." The relevant information or topics include many that are not relevant ***only*** to the government contractor defense, including: (1) commercial sales of the CAEv2, (2) military sales of the CAEv2, (3) supply of the CAEv2, (4) labeling of the CAEv2, and (5) third party contracts and communications regarding the CAEv2.[5] This is further reflected in Plaintiffs' January 10 request to add additional, non-affirmative

---

[5] For certain requested custodians, Plaintiffs listed areas of primary relevance that could only relate to merits discovery. For example, Peter Murphy and Ann Nostin were involved only in consumer sales of the CAEv2, which was not relevant to the government contractor defense.

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 7

defense custodians including April Noblitt, whom Plaintiff requested due to her involvement in consumer sales, and Robert Zielinski, who is related to many of the same issues Plaintiffs cite in connection with the current request sent more than four months later.

As Mr. Buchanan told the Court on January 14, 2020, "[t]he scope of [Defendants'] document production has not been limited to affirmative defenses, so we would have the benefit, if you will, Your Honor, just to alleviate some concern, of their full custodial file on relevant issues. Our document requests, while incorporating affirmative defense discovery, were broad enough to incorporate general liability discovery because we didn't want to do, you know, broad do-overs on issues and coming back to certain custodians." (Ex. 8, Jan. 14, 2020 Hr'g Tr. 32:8–15.) And at that hearing, Mr. Nomellini confirmed, stating, "our understanding is that the custodians who have been requested so far, I mean, some of them have no general contractor involvement and some of them had very little." (*Id.* at 32:23-33:1.) Plaintiffs have sought broad discovery from 3M, which was not limited to the government contractor defense. Plaintiffs should not be permitted to effectively re-start company discovery at this late stage.

### IV. Plaintiffs' Additional Custodians Are Duplicative And Not Relevant to the Claims and Defenses in this Case.

In any event, Plaintiffs fail to meet the standard for the addition of new custodians at this late stage. To justify an order compelling a responding party to search the records of additional custodians, the requesting party "must demonstrate that the additional requested custodians would provide unique relevant information not already obtained." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107-08 (S.D.N.Y. 2013) (refusing to compel a party to search the records of a number of additional custodians despite the fact that each had some connection to the events of the case); *see also Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016). Any relevance that

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 8

any of the requested custodians might have does not overcome their duplicativeness and the disproportional burden on Defendants at this time.[6]

Each of the six disputed custodians already has a substantial amount of data related to them—in the form of emails and attachments—that have already been collected from other custodians and incorporated into the TAR Corpus. Each of the six custodians are addressed in turn:

- **John Clingman**: Mr. Clingman is duplicative of previously added custodians, including Annette Childress, Jeff Hamer, Brian Myers, Brian McGinley, and Robert Klun. Defendants have collected and included over 24,000 emails and attachments sent from or to Mr. Clingman to the TAR process, over 1,100 of which were produced on or before September 30, 2019.

- **John Jurney**: Mr. Jurney is duplicative of custodians and deponents Brian Myers, Dick Knauer, and Bob Klun, among others. The document cited by Plaintiffs (Ex. 9, 3M_MDL000591210, produced November 21, 2019) lists Mr. Jurney as a "Team Member," along with Mr. Knauer and Mr. Klun, with Mr. Myers as the Project Manager. Moreover, Plaintiffs have had documents since at least September 2019 describing Mr. Jurney as the Combat Arms development Team Member responsible for "Final Tooling" indicating his role in manufacturing. (Ex. 10, 3M_MDL000259191, at 6.)

- **Steven Todor**: Mr. Todor is duplicative of already added custodians including Robert Klun, Annette Childress, and Brian Myers. To date, Defendants have already collected and added to the TAR process more than 9,000 emails and attachments sent from or to Mr. Todor, almost 650 of which were produced on or before December 20, 2019.

---

[6] As Defendants have explained, the addition of new custodians requires numerous weeks—not days—to complete productions. Defendants must undertake several steps, including: (1) interview the custodian, (2) collect and process all potentially responsive data from the custodians, (3) collect and process all potentially responsive data from any non-custodial repositories the new custodian identifies, (4) process the data through TAR, and (5) review for relevance and privilege prior to production the newly-processed custodial data and any additional documents identified for review by TAR for existing custodians.

KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 9

- **Mike Edwards**: Mr. Edwards was on Mr. Gavin's sales team, and Plaintiffs have already added multiple custodians that duplicate any information Mr. Edwards may have. As Plaintiffs acknowledge, Mr. Edwards is duplicative of other custodians, including Frank Gavin, Michael Harrison, Tom Thomson, and Ronda Notter. Moreover, all three documents Plaintiffs cite in their April 22, 2020 letter requesting Mr. Edwards were produced in September 2019.

- **Rafael Martinez**: The one document cited by Plaintiffs to show Mr. Martinez's relevance does not relate to assembly of CAEv2 at all, but instead stems from a question regarding the glue used for push ins. Plaintiffs have provided no showing that Mr. Martinez is relevant, and certainly not sufficiently relevant to overcome the disproportional burden on Defendants.

- **Selina Ramirez**: Ms. Ramirez is duplicative of custodians Bob Zielinski and Ronald Kieper, each of whom is copied on the emails cited by Plaintiffs, and who were involved in the same issues Plaintiffs cite for the potential relevance of adding Ms. Ramirez as a custodian. Moreover, Defendants have already added over 2,800 emails and attachments sent from or to Ms. Ramirez to the TAR process, almost 500 of which were produced on or before September 30, 2019, and 750 of which were produced on or before December 20, 2019.

Finally, none of these witnesses are relevant to the claims and defenses in this case. At the parties' June 1 meet and confer, Plaintiffs stated that these witnesses relate to manufacturing and quality control, which was not at issue in the government contractor defense. What Plaintiffs fail to explain is why these witnesses are relevant now. Plaintiffs' Master Long Form Complaint does not include any allegations regarding manufacturing defects. Thus, it is unclear how these witnesses relate to any of Plaintiffs' claims in this case, as required by Rule 26. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). To the extent Plaintiffs assert that manufacturing and quality control issues at the manufacturing facility that assembled the CAEv2 are relevant to their claims, Plaintiffs should be required to so plead. S*ee Sloan v. Cunningham*, 2017 WL 11441904, at *2 (S.D. Ala. Aug. 23, 2017) ("'A party may discover any matter that

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 10

is relevant to any claim, issue or defense that is pleaded in the case, regardless of which party raises the claim, issue or defense. Discovery is not permitted as to potential additional claims or defenses.'" (quoting Baicker-McKee, Janssen, Corr, *Federal Civil Rules Handbook*, 23d edition (2016), pp. 810-11)); *Caliber Home Loans, Inc. v. Bales*, 2017 WL 8341699, at *1 (M.D. Fla. Aug. 17, 2017) ("The fact that the requested discovery relates to an unpled counterclaim is insufficient to bring it within the scope of discovery. Defendant must demonstrate that its requests are relevant to the claims and defenses the parties have raised.").

Plaintiffs are also wrong about the Rule 26 conference and Defendants' Rule 26 obligations. Under Rule 26(a)(1), "a party must . . . provide to the parties the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support ***its*** claims or defenses." FRCP 26(a)(1) (emphasis added).

Courts have also repeatedly rejected Plaintiffs' interpretation of Rule 26(f). The Federal Rules of Civil Procedure direct parties to discuss at the Rule 26 meeting "issues about disclosure, discovery, or preservation of electronically stored information." FRCP 26(f)(3)(C). In connection with that process, a responding party is generally entitled to select the custodians most likely to possess responsive information. *See Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) ("The Federal Rules of Civil Procedure explicitly direct parties to discuss 'issues about disclosure, discovery, or preservation of electronically stored information ...' early in the litigation process when making their discovery plan. A responding party is generally entitled to select the custodians most likely to possess responsive information." (internal citation omitted)); *see also Mortg. Res. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 12017 WL 2305398, at * 2 (S.D.N.Y. May 18, 2017) ("Absent agreement among the parties, then, the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals."). "Unless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or ... designating custodians." *Mortg. Res. Servicing, LLC* 2017 WL 2305398, at * 2 (S.D.N.Y. May

## KIRKLAND & ELLIS LLP

Judge Gary R. Jones
June 5, 2020
Page 11

18, 2017). Moreover, "'a party seeking to compel another party to search the files of additional custodians bears the burden of establishing the relevance of the documents it seeks from those custodians.'" *Id.* (*quoting Lightsquared Inc. v. Deere & Co.*, No. 13 Civ. 8157, 2015 WL 8675377, at *5 (S.D.N.Y. Dec. 10, 2015)); *see also Enslin v. Coca-Cola Company*, 2016 WL 7042206, at * 3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information, and in either case, the burden appropriately lies with the requesting party to show that the responding party's search was inadequate.") (*citing Scott C. v. Bethlehem Area Sch. Dist.*, 2002 WL 32349817, at *1 (E.D. Pa. July 23, 2002) (refusing to compel a party to conduct a further search for documents because the requesting party "ha[d] not pointed to any evidence" that the responding party had failed to conduct a reasonable search) & The Sedona Conference, The Sedona Principles 43 (2007) ("The requesting party has the burden on a motion to compel to show that the responding party's steps to ... produce relevant electronically stored information were inadequate.")); *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. May 19, 2009) (" '[a]bsen[t] agreement, a [responding] party has the presumption, under Sedona Principle 6, that it is in the best position to choose an appropriate method of searching and culling data.' ") (citing The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E–Discovery))).

\*   \*   \*

Defendants request that the Court deny Plaintiffs request to add new custodians at this juncture. However, to the extent that the Court determines Plaintiffs should be permitted to add new custodians, Defendants request that the Court enter a scheduling order setting a final deadline by which Plaintiffs must add all new custodians. Put simply, allowing Plaintiffs to add new custodians every six to eight weeks does not work for purposes of the TAR process, nor to fairly and efficiently advance this litigation.

**KIRKLAND & ELLIS LLP**

Judge Gary R. Jones
June 5, 2020
Page 12

                                              Respectfully submitted,

                                              */s/ Robert C. Brock*

                                              *Counsel for Defendants*

cc:    MDL Counsel of Record