UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**

This matter is before the Court on Defendants' Motion for Leave to Cross Notice the Deposition of Jay A. Vietas, ECF No. 1862. Retired Col. Vietas is the author of the hotly contested July 30, 2019 "Air Force memorandum" (P-GEN-2586). Defendants never sought to depose Vietas prior to the close of discovery on September 1, 2020. Now, nearly a year after the discovery deadline and more than sixteen months after the Air Force memorandum was produced by the government, Defendants seek to reopen discovery to cross notice a deposition of Vietas that is "likely to occur" in related Minnesota litigation, where discovery remains open.[1] On full consideration, Defendants' motion is **DENIED**.

"When a party fails to complete discovery in time, it may move to reopen discovery and the court may, 'for good cause,' grant the motion if the party shows

---

[1] It is not clear that Vietas will, in fact, be deposed in the Minnesota litigation. For purposes of this Order, the Court assumes the deposition will occur.

that it failed 'because of excusable neglect.' " *EarthCam., Inc. v. OxBlue Corp.*, 703 F. App'x 803, 813 (11th Cir. 2017) (quoting Fed. R. Civ. P. 6(b)(1)).[2] To establish "good cause," the party moving to reopen discovery must show that the court's already-expired scheduling order deadline could not be met despite the party's "diligence." *See Payne*, 606 F. App'x at 944. A moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline. *See Williams v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:09cv225, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010).

The "excusable neglect" standard is "more rigorous" than the "good cause" standard. *See Hughley v. Lee County, Ala.*, No. 3:15CV126, 2015 WL 4094461, at *1 n.2 (M.D. Ala. June 9, 2015). In determining whether a party has shown excusable neglect, courts consider "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *EarthCam.*, 703 F. App'x at 813 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Primary importance is accorded to the absence of prejudice to the

---

[2] Thus, "[a] party seeking the extension of an already-expired scheduling order deadline must show both good cause *and* excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015) (citing Fed. R. Civ. P. 6(b)(1) and Fed. R. Civ. P. 16(b)(4)).

nonmoving party and to the interest of efficient judicial administration. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) (citing *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996)). The test is "not mechanical," *see Fisher Island Ltd. v. Fisher Island Invs., Inc.*, 518 F. App'x 663, 666 n.1 (11th Cir. 2013), and district courts have "considerable leeway" because "the impact on judicial proceedings of extending discovery varies from case to case," *see EarthCam*, 703 F. App'x at 814. The Eleventh Circuit has "often held that a district court has not abused its discretion by holding the litigants to the clear terms of its scheduling order." *See Ashmore*, 503 F. App'x at 685.

Defendants insist that they have shown good cause and excusable neglect to reopen discovery because their decision not to depose Vietas was based on (1) the government "pushing back" on the number of potential deponents and Defendants' desire to not "risk frustrating that process" by seeking leave to supplement their initial *Touhy*[3] requests with witnesses like Vietas who "d[id] not appear to have relevant personal knowledge;" and (2) their belief that the Air Force memorandum would not be admissible at trial. Defendants also insist Plaintiffs will not be prejudiced because "[t]he deposition will occur in the Minnesota litigation in any event" and will not delay or impact the schedule in this case. Plaintiffs respond that (1) Defendants had the information, time, and opportunity necessary to depose

---

[3] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Vietas before the close of discovery; (2) Defendants' "strategic decision" not to depose Vietas does not constitute good cause; and (3) Plaintiffs would suffer prejudice if discovery was reopened at this stage in the litigation.

While the Court certainly understands Defendants' desire to now take Vietas' deposition, Defendants have not shown "good cause" or "excusable neglect" to warrant reopening discovery. Neither the government nor the Court's Orders prevented Defendants from identifying Vietas as a *Touhy* witness after the production of the Air Force memorandum. Defendants' assumption that supplementing their initial *Touhy* requests to add Vietas would "frustrate" their efforts to depose as many of the witnesses on their initial witness list as possible is pure speculation. Defendants had full knowledge that Vietas was the author of the Air Force memorandum for at least six months before the close of discovery yet failed to seek Vietas' deposition before the deadline passed. Defendants have therefore not demonstrated the diligence required to show good cause. *See Williams*, 2010 WL 3419720, at *1.[4]

Most importantly, reopening discovery would prejudice Plaintiffs and would negatively impact the efficient administration of the MDL. Plaintiffs would suffer undeniable prejudice if discovery was reopened in the middle of bellwether trials

---

[4] Notably, Defendants knew that Magistrate Judge Jones had denied many of the government's motions to quash deposition subpoenas.

nearly a year after the close of discovery.[5] As Plaintiffs point out, they relied on the Court's discovery orders and deadlines in devoting "thousands of hours since the close of general discovery to synthesize the factual record, to designate and litigate deposition testimony, to develop expert proofs, to engage in extensive pretrial motion practice on evidentiary matters, and to generate trial-related work product."[6] *See Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, No. 8:11-cv-1160, 2013 WL 12155934, at *3 (M.D. Fla. June 19, 2013) (denying plaintiff's motion to reopen discovery because "the Court does find significant the prejudice to Defendant in having to develop a newly structured damages defense in light of re-opening discovery on the eve of trial"). Moreover, the Court finds that taking Vietas' deposition now would inject significant delay because it will likely necessitate additional discovery. Defendants' suggestion otherwise ignores the reality of this litigation.

---

[5] For this reason, the cases cited by Defendants are easily distinguishable. In *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07-cv-1492, 2008 WL 11336164 (M.D. Fla. Oct. 3, 2008), the court found that the nonmovant's trial preparation would not be prejudiced by the reopening of discovery because the additional depositions would be completed more than three months before trial. Similarly, in *FTC v. Barr Pharms., Inc.*, No. 05-2182, 2007 WL 9813289 (D.D.C. Jan. 24, 2007), the court found that the nonmovant would not be prejudiced by the reopening of discovery because the deposition at issue was scheduled only two weeks after the discovery deadline and the nonmovant had known for at least a month before the close of discovery that the movant sought to depose the witness and had "even initially agreed to allow her deposition after the discovery deadline."

[6] Additionally, Plaintiffs would be prejudiced by the costs and burdens of preparing for and taking a deposition out of time in the middle of preparing for more bellwether trials. This alone is a sufficient basis to deny Defendants' motion. *See Sweet v. Lockheed Martin Corp.*, No. 1:08-CV-2094, 2009 WL 10664952, at *3 (N.D. Ga. Aug. 21, 2009).

Additionally, Defendants' reasons for the delay in seeking Vietas' deposition—that they did not believe that the Air Force memorandum would be admissible at trial and that it "has turned out to be more important that Defendants believed it would be"—are entirely within Defendants' control and do not demonstrate excusable neglect. Intentional strategic decisions cannot constitute "excusable neglect." Defendants chose to "roll the dice" on the admissibility of the Air Force memorandum and cannot now "attempt to get a second bite at the apple and do an end-run around the Court's ruling." *See United States ex rel. Tenn. Valley Auth. v. An Easement & Right-of-Way Over 2.56 Acres of Land, More or Less, In Whitefield Cty., Ga.*, No. 4:16-CV-325, 2019 WL 10734656, at *2 (N.D. Ga. Mar. 5, 2019) (denying motion to reopen discovery after the court excluded a portion of the defendant's expert's opinions). And Defendants' assertion that they did not believe that the Air Force memorandum would be important in this litigation strains credulity. The memorandum is drafted on letterhead from the Air Force Headquarters, is authored by a senior official of the Air Force Medical Readiness Agency and directs the entire Air Force to remove all CAEv2 from base store inventories. Whether or not the Air Force was correct about the CAEv2 having been found to be defective, the memorandum directly rebuts Defendants' repeated assertions that the military (including the Air Force) knew everything about the CAEv2 through experience, testing in military labs, and communications from

Defendants, and that the military was satisfied with the CAEv2's performance. Hindsight may be 20/20, but Defendants' mistaken belief about the Air Force memorandum's importance does not constitute excusable neglect. Accordingly, Defendants' motion is denied.

Finally, the Court must address Defendants' request that "the Court reserve on the issue of 'use' until such time as Defendants file a subsequent motion for leave to use the Vietas deposition" in this case. The Court agrees with Plaintiffs that deferring ruling on whether Vietas' deposition testimony may be used in this case would create a Catch-22[7] requirement that Plaintiffs prepare for and take Vietas' deposition despite the Court's denial of Defendants' request to reopen discovery. The Court will therefore resolve the issue now. Because Defendants will not be permitted to reopen discovery and cross notice Vietas' deposition in this case, Plaintiffs will not have "reasonable notice" of Vietas' deposition if it occurs in the Minnesota litigation. Accordingly, Defendants may not use the Vietas' deposition in this case as substantive evidence. *See* Fed. R. Civ. P. 32(a)(1)(A) (a deposition may only be used against a party "present or represented at the taking of the deposition or [who] had reasonable notice of it"); Fed. R. Civ. P. 30(b)(1) (requiring "reasonable written notice to every other party").

---

[7] Joseph Heller, Catch–22 (1961).

Accordingly, **IT IS ORDERED**:

1. Defendants' Motion for Leave to Cross Notice the Deposition of Jay A. Vietas, ECF No. 1862, is **DENIED**.

2. Defendants may not use Vietas' deposition at any trial.

**SO ORDERED** on this 19th day of August 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**