**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG      )      Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,     )
                                   )      Pensacola, Florida
                                   )      July 9, 2021
                                   )      8:42 a.m.
                                   )
                                   )
_____)


**TWENTIETH CASE MANAGEMENT CONFERENCE**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 67)


**A P P E A R A N C E S**


JUDGE DAVID R. HERNDON (ret.)

FOR THE PLAINTIFFS:   Aylstock, Witkin, Kreis & Overholtz, PLLC
                      By:  **BRYAN F. AYLSTOCK**
                           *baylstock@awkolaw.com*

                           **JENNIFER HOEKSTRA**
                           *jhoekstra@awkolaw.com*
                      17 E Main Street, Suite 200
                      Pensacola, Florida  32502

```
Appearances (cont'd):

FOR THE PLAINTIFFS:     Seeger Weiss LLP
                        By: CHRISTOPHER A. SEEGER
                             cseeger@seegerweiss.com
                        55 Challenger Rd, 6th Floor
                        Ridgefield Park, NJ  07660

                        Lanier Law Firm
                        By:  K. RACHEL LANIER
                             rachel.lanier@lanierlawfirm.com
                        10940 W Sam Houston Pkwy North, Suite 100
                        Houston, Texas  77069

                        Ciresi Conlin LLP
                        By:  MICHAEL A. SACCHET
                             mas@ciresiconlin.com
                        225 South 6th Street, Suite 4600
                        Minneapolis, Minnesota  55402

                        Mostyn Law
                        By:  MICHAEL A. BURNS
                             epefile@mostynlaw.com
                        3810 W Alabama Street
                        Houston, Texas  77027

FOR THE DEFENDANTS:     Kirkland & Ellis, LLP
                        By:  MARK J. NOMELLINI
                             mnomellini@kirkland.com

                             BARRY E. FIELDS
                             barry.fields@kirkland.com

                             NICHOLAS F. WASDIN
                             nick.wasdin@kirkland.com
                        300 N Lasalle
                        Chicago, Illinois   60654

                        Moore, Hill & Westmoreland, PA
                        By: LARRY HILL
                             lhill@mhw-law.com

                             CHARLES F. BEALL, JR.
                             cbeall@mhw-law.com
                        350 W Cedar Street, Suite 100
                        Pensacola, Florida  32502
```

1        _P_ _R_ _O_ _C_ _E_ _E_ _D_ _I_ _N_ _G_ _S_

08:36:58    2    (*Call to Order of the Court.*)

08:42:07    3        **JUDGE RODGERS:**  Good morning, everyone.  And welcome

08:42:09    4    to our 20th, I believe, case management conference in the

08:42:18    5    3M Combat Arms Earplug Products Liability MDL.  This is

08:42:23    6    MDL 2885.

08:42:24    7        It's been several months since we last held a CMC,

08:42:29    8    given our trial posture over the last few months, so I'm sure

08:42:34    9    there's quite a bit for us to talk about.

08:42:36   10        I have -- I think I counted on my sheet there's

08:42:39   11    approximately 14 or 15 counsel at counsel table, so I'm not

08:42:44   12    going to introduce every single one of you.  I'm going to

08:42:46   13    introduce Mr. Aylstock on behalf of the plaintiffs, national

08:56:14   14    archives Mr. Nomellini on behalf of the defendants, and then,

08:42:54   15    to the extent any of you other attorneys address the Court

08:42:57   16    during the CMC, please just introduce yourself.

08:43:01   17        I have Judge Jones joining me here this morning on the

08:43:06   18    bench.  I'm pleased to have him here in person.

08:43:09   19        And Judge Herndon, we have on the Zoom I see.

08:43:12   20        **JUDGE HERNDON:**  Good morning.

08:43:13   21        **JUDGE RODGERS:**  Good morning.

08:43:16   22        All right.  Thank you for the agenda.  I did note

08:43:19   23    there was a revised agenda.  Just a couple of changes were made

08:43:24   24    from the initial one that was sent.  We did not hold a

08:43:29   25    preconference meeting this morning at my request, so we have

08:43:33  1    not discussed the agenda in any way at this point.  So I'll

08:43:45  2    just start with the first item on the agenda.  That's the Early

08:43:48  3    Vetting Subcommittee update.

08:43:49  4              Ms. Lanier, that would be by you, I presume.

08:43:52  5              MS. LANIER:  Yes, Your Honor.

08:43:52  6              JUDGE RODGERS:  Do you have a PowerPoint?

08:43:53  7              MS. LANIER:  Yes, I do, Your Honor.  Permission to

08:43:55  8    come to the lectern?

08:43:57  9              JUDGE RODGERS:  Yes, ma'am, please.  Thank you.  And

08:43:58  10   it's nice to see you again.

08:43:59  11             MS. LANIER:  Nice to see you, too.

08:44:01  12             Good morning.  May it please the Court.

08:44:03  13             JUDGE RODGERS:  Yes, ma'am.

08:44:04  14             MS. LANIER:  Would you like a copy of the PowerPoint

08:44:08  15   and paper?  Or I can just --

08:44:13  16             JUDGE RODGERS:  For now, I will follow along on the

08:44:15  17   monitor, but I would like to have a copy maybe for later to

08:44:19  18   review.

08:44:20  19             MS. LANIER:  Absolutely.  Sounds good.

08:44:21  20             Well, it's great to be in front of Your Honor again.

08:44:26  21   Although many of my subcommittee members and I have been out of

08:44:29  22   sight due to some of the COVID pandemic and the trials and

08:44:32  23   et cetera, I assure you that we have had early vetting at the

08:44:36  24   forefront of our minds.  So with that, I'm going to dive into

08:44:39  25   our Early Vetting Subcommittee update.

08:44:41   1   As a reminder, some people have gotten used to seeing

08:44:46   2   these folks with masks on their face, so here are the Early

08:44:51   3   Vetting Subcommittee members, otherwise known as EVS.  We've

08:44:54   4   Beth Burke, Kenny Byrd, Abby McClellan, myself, Erin Rogiers,

08:45:00   5   and Sara Schramm.  And I would be remiss if I did not mention

08:45:04   6   our honorary EVS members who have done a huge, huge amount of

08:45:07   7   help for us and for the litigation:  Jennifer Hoekstra, Avery

08:45:12   8   Halfon, Cristina Delise, and Amanda Hunt.

08:45:14   9   So myself and the Early Vetting Subcommittee members

08:45:17   10   and leadership and the defense, we have all worked together as

08:45:21   11   best as we possibly can to continue the vetting process through

08:45:23   12   the entire litigation.  So I have three key buckets of updates,

08:45:27   13   if you will.  The first is just updating the Court on attorney

08:45:30   14   education and information that we have disseminated to all of

08:45:34   15   counsel.

08:45:35   16   No. 2 is streamlining the overall inventory and

08:45:38   17   updating the Court on some of the things that we've done as of

08:45:41   18   late over the last several months with regard to that.

08:45:46   19   Third is maintaining case data consistency and the

08:45:49   20   efforts that we've undergone to keep cases consistent across

08:45:53   21   the board in terms of their data.

08:45:56   22   So, under the first bucket, attorney education and

08:45:59   23   information, when you're looking at early vetting from a

08:46:03   24   50,000-foot view, we might look at this inventory and think oh,

08:46:06   25   my goodness, there are 250,000 some-odd cases.  I think that

08:46:11  1   the Court did such a marvelous job appointing an Early Vetting
08:46:17  2   Subcommittee so early on because from the moment that this
08:46:20  3   litigation even got off the ground, there was a massive amount
08:46:23  4   of education that was done to all plaintiff counsel.
08:46:25  5        We have continued doing that.  We have an email
08:46:29  6   address, and we counted up -- we actually have had several
08:46:33  7   thousands of questions that have sent to this email address
08:46:37  8   over the last couple of years by all plaintiff counsel that
08:46:40  9   participate in this litigation that the Early Vetting
08:46:44  10  Subcommittee takes turns answering.  So that's a huge part of
08:46:48  11  the day-to-day attorney education that takes place and is a
08:46:52  12  moving, fluid thing.
08:46:53  13       Another area of attorney education that we have really
08:46:56  14  tried to emphasize the last couple of years has been reaching
08:46:59  15  out to firms who are new to the litigation.  The subcommittee
08:47:03  16  actually created and we keep updated a roadmap of sorts, a
08:47:07  17  PowerPoint that sort of walks through all of the pertinent
08:47:10  18  steps and deadlines and the beginning stages of a case as well
08:47:14  19  as frequently asked questions.  It was updated as recently as
08:47:18  20  July 1st, 2021, so a little preview of what that looks like.
08:47:23  21  This is just, you know, the first page of that, but this is
08:47:26  22  something that we sent to plaintiff counsel to try to inform
08:47:29  23  them of how to -- how to approach this litigation so that
08:47:33  24  things don't fall under the cracks.
08:47:35  25       Part of the extensive vetting that's happened early on

08:47:39  1    and has continued throughout is this constant communication and

08:47:43  2    the education with attorneys that are part of this litigation

08:47:46  3    to let them know this -- you know, this case is a meritorious

08:47:52  4    case.  This case -- you know, if this product wasn't used

08:47:57  5    during these years, then it's likely not the product at issue.

08:48:01  6         So trying to really communicate from the get-go, we've

08:48:04  7    made a lot of efforts to ensure that the inventory is filled

08:48:10  8    with meritorious cases as much as humanly possible.

08:48:14  9         Under the -- let's see -- one other area of attorney

08:48:21  10   information and education is that we've also informed and

08:48:24  11   assisted firms with regard to proper categorization of records

08:48:28  12   when we do receive *Touhy* records.  So we've done our best to

08:48:33  13   try to let folks know don't just put it all under the "other"

08:48:37  14   bucket.  There are categories in BrownGreer that they have

08:48:40  15   worked really hard on, that the Court has worked hard on.  So

08:48:42  16   encouraging that when court -- when plaintiff counsel gets

08:48:45  17   *Touhy* records.

08:48:46  18        **JUDGE RODGERS:**  And can I confirm -- I don't mean to

08:48:49  19   interrupt, but let me confirm that all of the cases in --

08:48:55  20   registered with BrownGreer are MDL cases; is that correct?

08:49:00  21        **MS. LANIER:**  That's my understanding, Your Honor.

08:49:02  22        **JUDGE RODGERS:**  No state court -- Minnesota state

08:49:03  23   court cases?

08:49:04  24        **MS. LANIER:**  That's my understanding with the

08:49:06  25   exception of --

| | | |
|---|---|---|
| 08:49:06 | 1 | **MS. HOEKSTRA:**  5,000 remand cases that are kind of in |
| 08:49:15 | 2 | limbo. |
| 08:49:15 | 3 | **MS. LANIER:**  Yes, yes.  So there is about 5,000 |
| 08:49:16 | 4 | cases -- thank you, Ms. Hoekstra, one of our honorary members. |
| 08:49:17 | 5 | There is about 5,000 potential remands that are in flux.  I |
| 08:49:23 | 6 | apologize that I'm not aware of the current status of those, so |
| 08:49:26 | 7 | those seem like they're kind of in limbo.  But other than that, |
| 08:49:27 | 8 | my understanding is everything else -- all the other cases are |
| 08:49:28 | 9 | MDL cases. |
| 08:49:29 | 10 | **JUDGE RODGERS:**  Could I ask Ms. Hoekstra:  Those 5,000 |
| 08:49:33 | 11 | cases are where in terms of -- are they in Minnesota state |
| 08:49:40 | 12 | court and subject to -- are they part of the Eighth Circuit |
| 08:49:49 | 13 | *Graves* appeal? |
| 08:49:50 | 14 | **MS. HOEKSTRA:**  Correct, they are part of the Eighth |
| 08:49:52 | 15 | Circuit *Graves* appeal.  They were registered with MDL |
| 08:49:54 | 16 | Centrality.  And rather than kick them out of the system, we're |
| 08:49:57 | 17 | waiting for the outcome of that to make a determination. |
| 08:50:00 | 18 | **JUDGE RODGERS:**  When I say "5,000 cases," we mean |
| 08:50:03 | 19 | 5,000 claimants? |
| 08:50:04 | 20 | **MS. HOEKSTRA:**  Claimants, correct, yes. |
| 08:50:06 | 21 | **JUDGE RODGERS:**  All right.  Thank you. |
| 08:50:06 | 22 | **MS. LANIER:**  Thanks, Your Honor. |
| 08:50:08 | 23 | So, under Category No. 2, streamlining the overall |
| 08:50:11 | 24 | inventory, the Early Vetting Subcommittee has undergone |
| 08:50:15 | 25 | extensive efforts on an individual level and on a mass firm |

08:50:20   1   reach-out level regarding short-form complaints and proper

08:50:24   2   timely filing.  Anytime that we've noticed along the way that a

08:50:28   3   short-form complaint needs to be filed, we try to notify the

08:50:32   4   firm before it becomes too late, essentially, and before -- we

08:50:37   5   try to ensure proper and timely filing.

08:50:39   6        We also have worked extensively with BrownGreer to set

08:50:42   7   up a reminder system to just keep, you know, with so many

08:50:46   8   moving parts, to keep people keep dotting I's and crossing T's.

08:50:53   9        In addition to streamlining the overall inventory of

08:50:56   10  cases, a huge thing that we have undergone the last several

08:50:59   11  years, but especially the last several months and throughout

08:51:02   12  COVID times, has been resolving dual reps, dual

08:51:07   13  representations, which is where one law firm and another law

08:51:11   14  firm might accidentally represent the same client.

08:51:14   15       So, we have worked with BrownGreer.  They have been

08:51:17   16  fantastic, obviously, and we actually created and formulated a

08:51:21   17  new, detailed dynamic report that law firms can run themselves

08:51:25   18  to see where their dual reps are, and we have resolved a ton of

08:51:31   19  those -- I mean, literally thousands have been in the process

08:51:34   20  of resolving.

08:51:35   21       Now, I say that.  When we look at the numbers in the

08:51:38   22  system, this is sort of like a relay race where each person has

08:51:42   23  the baton and they hand it to somebody else.  So a law firm

08:51:45   24  will notice a dual rep, and they'll hand it to the other law

08:51:49   25  firm, and there are steps each law firm has to take to notify

08:51:53  1    BrownGreer and the Court every step of the way.  But we have

08:51:55  2    reached out to dozens of law firms regarding thousands of

08:51:59  3    potential dual reps to help resolve those, and we continue to

08:52:03  4    do that as recently as even earlier this week, so it's a very

08:52:07  5    consistent process.

08:52:07  6         Another area of streamlining the overall inventory is

08:52:12  7    that we've been encouraging law firms that, when they have

08:52:14  8    cases that they're ready to move from the administrative docket

08:52:18  9    over to the active docket, we've just been trying to encourage

08:52:21  10   law firms along the way.  It's a continual work in progress.

08:52:24  11   But we -- we create -- we helped facilitate with BrownGreer --

08:52:27  12   and they're fantastic, again -- to create a system where that's

08:52:31  13   possible for that to happen and where it's a streamlined

08:52:35  14   process as much as possible.

08:52:36  15        So, finally, under the third category of just

08:52:40  16   maintaining case data consistency.  What I mean by that is one

08:52:44  17   of the projects that we have undergone has been we have

08:52:47  18   compared the data in the short-form complaints with the data on

08:52:50  19   the census form to make sure that the two are consistent with

08:52:54  20   one another.

08:52:55  21        It may seem silly, but, for example, if somebody marks

08:52:59  22   an injury in the census form but then that's not the same

08:53:02  23   injury alleged in the complaint, that's an issue.  So we've

08:53:06  24   reached out to firms individually to resolve that.  And nine

08:53:09  25   times out of ten, it's just -- it's just data entry issues, but

| | |
|---|---|
| 08:53:13 | 1 |
| 08:53:17 | 2 |
| 08:53:18 | 3 |
| 08:53:21 | 4 |
| 08:53:23 | 5 |
| 08:53:28 | 6 |
| 08:53:29 | 7 |
| 08:53:31 | 8 |
| 08:53:35 | 9 |
| 08:53:38 | 10 |
| 08:53:41 | 11 |
| 08:53:43 | 12 |
| 08:53:46 | 13 |
| 08:53:51 | 14 |
| 08:53:55 | 15 |
| 08:53:59 | 16 |
| 08:54:03 | 17 |
| 08:54:07 | 18 |
| 08:54:11 | 19 |
| 08:54:14 | 20 |
| 08:54:15 | 21 |
| 08:54:18 | 22 |
| 08:54:21 | 23 |
| 08:54:24 | 24 |
| 08:54:29 | 25 |

it's cleanup that's necessary and keeps a clean inventory as much as possible.

Also, under maintaining case data consistency, what we have tried to do is identify those cases that are far -- far outside of the realm of possibility of dates of use of the product.

For example, if there is a one-off case where somebody, it says, ended their service in the '70s, then we know that there's little possibility that they used the product at issue, unless, of course, it's a typo or something like that.  So we've reached out to those folks to say, you know, "This is well outside of the realm of possibility that this client could have used this product; What's going on here?"

And again, with that, a lot of the times it's that actually -- I mean, no one from the '70s has this problem.  But sometimes if it's kind of close wiggle-room-wise date, it might be somebody who got their dates wrong or they entered it wrong, or some people get nervous and are waiting on records and are doing the best they can to remember.  So we've just tried to resolve --

**JUDGE RODGERS:**  It's actually pre-2000, not the '70s.

**MS. LANIER:**  Oh, yeah, that's what -- sorry if I -- it's confusing, Your Honor.  What I'm trying to explain is, if we see somebody who ended their dates of service in the '70s, then we know that they didn't use the product at issue.

08:54:31    1          **JUDGE RODGERS:**  Or the '90s.

08:54:32    2          **MS. LANIER:**  Yeah, or the '80s, '90s.  I'm just using

08:54:35    3  the most extreme example that --

08:54:38    4          **JUDGE RODGERS:**  So tell me what you're doing, Rachel,

08:54:40    5  to identify these dates-of-use issues.

08:54:44    6          **MS. LANIER:**  BrownGreer has a system in place where we

08:54:47    7  can run detailed reports to just find the dates of usage.  And

08:54:52    8  then in a lot of these cases, there are actually a lot of

08:54:56    9  question marks for the dates of usage because the client may

08:55:00   10  not know the exact date, and these clients get very nervous to

08:55:03   11  put something down and be swearing to it when they aren't

08:55:08   12  positive of the exact dates of use.

08:55:10   13          **JUDGE RODGERS:**  What are you doing to determine if

08:55:11   14  these same people where there's a question mark on dates of use

08:55:14   15  have a DD214?

08:55:17   16          **MS. LANIER:**  So what we've tried to do is we'll reach

08:55:20   17  out to the firms on an individual level to the people at the

08:55:22   18  law firms, and we'll speak with them and say, "We've noticed

08:55:25   19  this data in the system, that there are question marks.  You

08:55:28   20  know, it would really be beneficial if you can continue to

08:55:31   21  reach out to your client and try to hone down the dates of use,

08:55:36   22  try to get more information."

08:55:37   23        And a lot of the times what we've found is that the

08:55:40   24  firm maybe hadn't received records yet, and then the moment

08:55:43   25  they receive records, they update that date information.

| | | |
|---|---|---|
| 08:55:46 | 1 | **JUDGE RODGERS:**  We're over two years into this |
| 08:55:48 | 2 | litigation.  I mean, every plaintiff or every potential |
| 08:55:51 | 3 | plaintiff, claimant -- whatever you want to call them -- should |
| 08:55:54 | 4 | have their DD214 at this point.  I mean, whether they had it, |
| 08:56:00 | 5 | you know, and they have had it in their possession since they |
| 08:56:03 | 6 | ETS'd from the service or whether they went through Freedom of |
| 08:56:07 | 7 | Information, whether they went through the National Archives to |
| 08:56:15 | 8 | retrieve their records, or through this process, the *Touhy* |
| 08:56:18 | 9 | process, for the records that have been received through the |
| 08:56:25 | 10 | DoD.  But there should be really no excuse for not having -- if |
| 08:56:29 | 11 | you're military, you know, current or former military, then you |
| 08:56:34 | 12 | should have a DD214 at this point, and that DD214 is going to |
| 08:56:38 | 13 | accurately list your dates of service. |
| 08:56:42 | 14 | And I'm close to the point of considering -- and |
| 08:56:48 | 15 | certainly have been thinking about it -- but entering an order |
| 08:56:51 | 16 | requiring proof of dates of use.  Because two hundred and I |
| 08:56:59 | 17 | think -- I last heard 262,000 claimants was the last number |
| 08:57:04 | 18 | I've received.  I think that was through BrownGreer. |
| 08:57:07 | 19 | We need to know if -- and we are, I think, past the |
| 08:57:13 | 20 | point of needing to know, you know, how many of that number |
| 08:57:21 | 21 | reflect people who could never have used these earplugs. |
| 08:57:24 | 22 | That's just a simple, basic, you know, easy-to-determine |
| 08:57:28 | 23 | question.  And if they haven't used the earplugs, then they |
| 08:57:32 | 24 | don't need to be in this litigation, and we need to clean them |
| 08:57:35 | 25 | out. |

| | |
|---|---|
| 08:57:36 | 1 |
| 08:57:40 | 2 |
| 08:57:45 | 3 |
| 08:57:48 | 4 |
| 08:57:53 | 5 |
| 08:57:56 | 6 |
| 08:58:00 | 7 |
| 08:58:04 | 8 |
| 08:58:07 | 9 |
| 08:58:09 | 10 |
| 08:58:11 | 11 |
| 08:58:12 | 12 |
| 08:58:14 | 13 |
| 08:58:18 | 14 |
| 08:58:22 | 15 |
| 08:58:26 | 16 |
| 08:58:35 | 17 |
| 08:58:41 | 18 |
| 08:58:45 | 19 |
| 08:58:46 | 20 |
| 08:58:49 | 21 |
| 08:58:53 | 22 |
| 08:58:58 | 23 |
| 08:59:01 | 24 |
| 08:59:06 | 25 |

1   And so, I'm -- and I'm just sharing this with all of

2   you, not just you, Ms. Lanier, but I think it's time.  We're

3   over two years into this litigation.  There just don't need to

4   be people in the system who could not have used these earplugs.

5   **MS. LANIER:**  We totally understand where the Court is

6   coming from on that, and it absolutely makes sense.  What we've

7   been doing to sort of help with that process is -- and it,

8   unfortunately, does end up taking quite a bit of time just

9   because of the amount of people to --

10   **JUDGE RODGERS:**  But I'm here to help you with that.

11   **MS. LANIER:**  Absolutely, absolutely, Your Honor.

12   **JUDGE RODGERS:**  I think I can help you with that by

13   entering an order similar to what I'm referring to and having

14   that submitted via BrownGreer -- you know, I don't know if

15   cases are on the administrative docket, the active docket, but

16   something from the plaintiff and/or the attorney, you know,

17   affidavit-wise, declaration, but representing that there is

18   proof that they have used this earplug, meaning dates of

19   service really is what I'm looking at.

20   Because from my standpoint -- and this has been my

21   feeling from the beginning of the litigation -- I know the

22   defendants -- early on there was an issue about proof of use

23   and whether there were going to be records that these

24   servicemembers actually used this earplug.  And of course, this

25   has been an issue of contention in the trials.

08:59:09   1          Well, the juries have not bought that at all in terms

08:59:12   2   of whether the records didn't reflect that the particular

08:59:18   3   plaintiff was issued this earplug.  The juries have not been

08:59:23   4   moved by that at all.

08:59:24   5          These are such unique earplugs.  And so, if a

08:59:28   6   plaintiff says, "I recognize this earplug.  This is the earplug

08:59:33   7   I used, it's the Bumblebee, it's the" -- you know, it's the one

08:59:38   8   and only dual-sided earplug, yellow and combat green, olive

08:59:43   9   green, and they served during a period of time from, whether

08:59:48   10  it's 2000 to 2015, whatever that range is, then they have proof

08:59:53   11  of use.  That's sufficient for me, and it's certainly been

08:59:56   12  sufficient for these juries.

08:59:57   13         But there are going to be people in that 262,000

09:00:04   14  number who do not meet those dates of service and who could not

09:00:08   15  have used this earplug.  And we need to know what that number

09:00:13   16  is, and those cases just don't need to be in the system.

09:00:17   17         **MS. LANIER:**  If I may, Your Honor, I do believe that a

09:00:20   18  lot of those date issues will be cleaned up fairly quickly.  I

09:00:25   19  think that the reach-out that we've done has been pretty

09:00:31   20  successful so far in facilitating or helping firms identify

09:00:36   21  those dates and --

09:00:38   22         **JUDGE RODGERS:**  It's interesting you say that.  But

09:00:41   23  the overall number is not shrinking; it's just growing.  And

09:00:45   24  so, I -- how many have you discovered -- I mean, how many cases

09:00:50   25  are there where they truly do not meet the date range and so

09:00:57  1   you've said, "You don't belong in this litigation"?  Because we

09:01:00  2   know there are going to be those cases.

09:01:02  3        **MS. LANIER:**  So the minority issue -- the vast

09:01:05  4   majority of cases have dates of use.  But these niche minority

09:01:14  5   cases, we have done reach-out to these firms, and a lot of the

09:01:17  6   time it's been data entry issues or the moment people get

09:01:18  7   records just updating and fixing it.  So it's been -- it feels

09:01:21  8   and seems slow, but I promise it is -- this process is working.

09:01:26  9        It just -- I think that, by the time of the next case

09:01:35  10  management conference, for example, my hope would be that a lot

09:01:38  11  of this has been even further decreased in terms of the

09:01:44  12  amount -- the minority, minority cases that either just don't

09:01:48  13  have dates of use at all and just need to be updated in terms

09:01:53  14  of that.

09:01:54  15       So, it might feel like a big issue, but it actually is

09:02:01  16  the vast minority of cases that that's a problem on.  And we

09:02:07  17  are aware of it and reaching out to those people, and they're

09:02:09  18  working very diligently to resolve those issues.

09:02:12  19       **JUDGE RODGERS:**  It's just such a basic issue that it

09:02:18  20  needs to be addressed.  It may be certainly a minority of

09:02:21  21  claims that we're talking about, but they're claims that just

09:02:24  22  don't have any business in this litigation.

09:02:26  23       **MS. LANIER:**  What ends up happening sometimes,

09:02:28  24  Your Honor, is the delay can sometimes just be getting some

09:02:32  25  client verification, for example.  It just takes some time to

| | | |
|---|---|---|
| 09:02:35 | 1 | reach out to this number of people, because firms are hesitant |
| 09:02:39 | 2 | to just update a form without talking to the client and |
| 09:02:43 | 3 | discussing -- |
| 09:02:44 | 4 | JUDGE RODGERS:  Well, that's where I think I can come |
| 09:02:46 | 5 | in and be of help.  And this is not critical of you, |
| 09:02:53 | 6 | Ms. Lanier, or your committee by any means.  I'm very |
| 09:02:57 | 7 | complimentary of the work that you all have done and very |
| 09:03:01 | 8 | pleased with it. |
| 09:03:01 | 9 | MS. LANIER:  Thank you. |
| 09:03:02 | 10 | JUDGE RODGERS:  But I think that it's time that these |
| 09:03:04 | 11 | firms are required to get hands-on with their cases and let me |
| 09:03:12 | 12 | know whether their clients can meet the dates of service and |
| 09:03:16 | 13 | use that we all know is clear-cut.  I mean, the plugs just |
| 09:03:22 | 14 | weren't in existence in the military before a certain date, and |
| 09:03:28 | 15 | that's not in dispute. |
| 09:03:31 | 16 | MS. LANIER:  And I hope that what I'm saying is not |
| 09:03:35 | 17 | conveying that firms aren't working very, very diligently -- |
| 09:03:39 | 18 | JUDGE RODGERS:  You're not conveying that, but I'm -- |
| 09:03:41 | 19 | at this point I'm impatient.  We're over two years into the |
| 09:03:45 | 20 | litigation.  I think it's time to start a more formalized |
| 09:03:50 | 21 | process for winnowing out the cases that just don't belong |
| 09:03:57 | 22 | here. |
| 09:03:59 | 23 | MS. LANIER:  I feel confident that I can speak on |
| 09:04:01 | 24 | behalf of the subcommittee at least to say that I do believe |
| 09:04:05 | 25 | that that will end up being a very small subset -- |

| | | |
|---|---|---|
| 09:04:05 | 1 | THE COURT:  It may be. |
| 09:04:07 | 2 | MS. LANIER:  -- because of the efforts that we have |
| 09:04:09 | 3 | undergone early on, thankfully for being appointed from day |
| 09:04:13 | 4 | one to try to educate and inform people.  So my hope is that it |
| 09:04:17 | 5 | will be clear to the Court that I believe that everyone in this |
| 09:04:21 | 6 | litigation has tried so hard to have solely meritorious cases |
| 09:04:26 | 7 | existing in MDL Centrality, and sometimes the right hand just |
| 09:04:29 | 8 | has to talk to the left, and we're trying really hard to help |
| 09:04:32 | 9 | facilitate that process.  And I'm confident that firms will be |
| 09:04:36 | 10 | able to do that and are currently working on doing that and |
| 09:04:42 | 11 | that it is a very small subset of cases. |
| 09:04:45 | 12 | **JUDGE RODGERS:**  And it may just be that date range is |
| 09:04:47 | 13 | not the right -- is not the right parameter in terms of an end |
| 09:04:51 | 14 | date because we don't know when -- I mean, there still may |
| 09:04:58 | 15 | be -- I don't know -- there still may be these earplugs in |
| 09:05:03 | 16 | military inventory.  I don't know.  I've never heard otherwise. |
| 09:05:06 | 17 | I know that we have certainly seen evidence that there were |
| 09:05:15 | 18 | efforts to remove them from inventory, at least, in the |
| 09:05:17 | 19 | Air Force, but certainly the beginning date is a given in terms |
| 09:05:20 | 20 | of when these plugs were sold.  We know those dates, when the |
| 09:05:25 | 21 | plugs were developed, when they were first sold to the |
| 09:05:27 | 22 | military. |
| 09:05:27 | 23 | **MS. LANIER:**  Well, the Court is -- obviously, I would |
| 09:05:30 | 24 | never tell the Court what to do, but if you want to give us at |
| 09:05:34 | 25 | least until the next case management conference, and perhaps I |

09:05:36  1  can give you an update then on where the numbers were now and

09:05:40  2  where they are then --

09:05:41  3      **JUDGE RODGERS:**  Why are you all resisting this type of

09:05:44  4  an order?  What is the resist- -- I mean why?

09:05:50  5      **MR. SEEGER:**  We're not --

09:05:51  6      **MS. LANIER:**  I'm sorry, I'm not trying to come across

09:05:53  7  as resistant at all.

09:05:55  8      **JUDGE RODGERS:**  And I'm not being critical of the work

09:05:57  9  you've done, but it's a massive number of cases and an arduous

09:06:07  10  task or herculean task on your committee's part to go through

09:06:11  11  these, even with BrownGreer's system in place and their ability

09:06:13  12  to do data analytics, and -- I just think at this point, it may

09:06:18  13  be easier for me to enter an order and require the information.

09:06:24  14      Mr. Aylstock?

09:06:25  15      **MR. AYLSTOCK:**  Yes, Your Honor.  Thank you for

09:06:27  16  allowing me to address the Court on this.

09:06:28  17      There's two main examples of what I think Rachel is

09:06:33  18  talking about with the dates of use.  One is people who put a

09:06:36  19  date -- they got out in 1998.  Well, logically if they got out

09:06:41  20  and they didn't have their earplugs, then they shouldn't be in

09:06:45  21  this case.  Some of them may have got them from Army surplus.

09:06:50  22  Some of -- there are exceptions to that, that wherein maybe

09:06:53  23  they went back in the reserves or something like that, and then

09:06:56  24  they got them there because they got called up to go with the

09:07:00  25  War on Terror.  So it's easy to say, okay, this is a bucket of

09:07:04   1   cases that needs to be looked at and probably needs to go, but

09:07:08   2   maybe not necessarily, just depending on their DD214.

09:07:12   3          There's also a group of cases where they weren't

09:07:14   4   comfortable because they weren't sure the exact dates, so they

09:07:18   5   just put question marks.  And those -- they should be able to

09:07:21   6   do more than that, and that's also a small bucket of cases as

09:07:25   7   well.

09:07:26   8          So the order, at least in my view, can probably be

09:07:32   9   narrowly tailored to those.  In addition to the DD214, of

09:07:38   10  course --

09:07:38   11         JUDGE RODGERS:  Well, with the first bucket of cases,

09:07:40   12  that can be set forth in the affidavit.

09:07:42   13         MR. AYLSTOCK:  Correct, Your Honor.  And then VA

09:07:45   14  records obviously can help with dates of service, treatment

09:07:48   15  records, things like that.  So I do think that it is an issue I

09:07:51   16  know Rachel and her team have been working very hard on.  I do

09:07:55   17  agree with her, though, that it's a relative minority of cases,

09:07:59   18  and I think they fall in those two buckets.  And both of them

09:08:02   19  have been identified by the team and are being worked through,

09:08:04   20  and we don't -- we're not resistant to an order anyway.  I just

09:08:09   21  think that it can be probably narrowly tailored to those two

09:08:14   22  buckets.

09:08:14   23         JUDGE RODGERS:  All right.  Let's move on to, then,

09:08:17   24  Ms. Lanier -- the right side of this slide says "No selected

09:08:23   25  injury."

09:08:23  1    **MS. LANIER:**  Yes.  So another small, small subset that
09:08:26  2    we've identified, that the subcommittee's identified is if
09:08:30  3    there hasn't been a selected injury at all, no tinnitus alleged
09:08:34  4    or hearing loss alleged, then we've reached out to those firms.
09:08:38  5    And it's a very, again, small subset of cases, but we've asked
09:08:42  6    them, you know, if there is no injury being alleged here that
09:08:45  7    is part of this litigation so something is up here.  And the
09:08:47  8    vast majority of those are data entry issues, and they get
09:08:51  9    fixed really quickly.  But it is something that makes, you
09:08:54  10   know, a flag go off in our head, so we've been reaching out to
09:08:57  11   those people as well and will continue to do so.  Again, a
09:09:01  12   very, very -- that's even smaller, smaller, smaller, and
09:09:05  13   cross-referencing the census forms with the short-form
09:09:09  14   complaints has also helped with regard to that.
09:09:11  15         So, continuing on, finishing up, maintaining case data
09:09:16  16   consistency.  We continue reviewing the census forms when
09:09:20  17   people have questions about things, and we encourage all firms
09:09:24  18   to continue to diligently fill them out.  And we are happy to
09:09:29  19   review deficiencies and continue that process.  The portal is
09:09:34  20   alive and well where EVS is able to get through all of that,
09:09:39  21   and we encourage firms to continue steadily filling that out
09:09:43  22   regardless of suspended deadlines with reference to that just
09:09:46  23   to make sure everyone is getting through the census forms as
09:09:49  24   well as possible and as diligently as possible.
09:09:51  25         And then that's the end.

09:09:53    1          So any questions?  You've asked a few along the way,

09:09:56    2   but I want to open it up in case you have any more questions.

09:09:59    3          **JUDGE RODGERS:**  Well, the -- I mean, I'm wondering

09:10:02    4   about reinstituting the census forms deadline.  It's been

09:10:10    5   suspended for -- I don't even know how long.  It's been a long

09:10:13    6   time.  You say the firms are continuing to work or you're

09:10:19    7   encouraging -- your committee's encouraging firms to continue

09:10:23    8   to work on the forms.  I think we suspended it initially

09:10:29    9   because of the difficulty in obtaining records, I believe, and

09:10:34   10   the hesitancy of many of these claimants to sign under penalty

09:10:42   11   of perjury regarding information that they did not have

09:10:45   12   documentary support for.  I think that was a big part of the

09:10:49   13   reason.

09:10:49   14          So where do we stand now over two years into this

09:10:56   15   litigation?

09:10:57   16          **MS. LANIER:**  Well, in terms of -- that's where kind of

09:11:00   17   the attorney education has come into play for people who are

09:11:04   18   very new to the litigation and are trying to figure out, what

09:11:06   19   are my obligations under the tolling agreement?  And then we

09:11:09   20   kind of explain, well, now the tolling agreement is there, but

09:11:13   21   these things are the relevant -- you know, this has actually

09:11:16   22   kind of supplanted that in a way and here are your record

09:11:21   23   obligations and this and that.  So it's been a process

09:11:23   24   educating people about that for the new firms and that subset

09:11:26   25   of folks.

| | | |
|---|---|---|
| 09:11:27 | 1 | And then for the firms that are used to being in the |
| 09:11:31 | 2 | litigation, now at this point, it's just been continuing to |
| 09:11:34 | 3 | encourage them to fill out those census forms.  I don't have |
| 09:11:40 | 4 | specific numbers for you on that. |
| 09:11:42 | 5 | JUDGE RODGERS:  You don't know how many completed |
| 09:11:45 | 6 | census forms we have -- is that fair? -- or -- |
| 09:11:49 | 7 | MS. LANIER:  Yes, Your Honor. |
| 09:11:51 | 8 | MR. SEEGER:  I think it's 106,000. |
| 09:11:55 | 9 | MS. LANIER:  We have a ton -- yeah, a ton, several -- |
| 09:11:56 | 10 | MS. HOEKSTRA:  There's an opportunity right now with |
| 09:11:58 | 11 | the way the system is set up that you can load them but not |
| 09:12:01 | 12 | serve them because there's no deadline in place, so there's a |
| 09:12:04 | 13 | larger number.  And that's what we're encouraging people to do |
| 09:12:07 | 14 | which is put them into the system.  But until there's an actual |
| 09:12:11 | 15 | deadline, in case the information changes, to not serve it with |
| 09:12:14 | 16 | a signature that would have to be changed again. |
| 09:12:17 | 17 | MS. LANIER:  Yes.  Because we're trying to decrease |
| 09:12:18 | 18 | the amount of changes that repeatedly get done if things get |
| 09:12:19 | 19 | updated and this and that, just in terms of encouraging firms |
| 09:12:23 | 20 | to fill them out as completely as possible.  Because early on |
| 09:12:27 | 21 | when firms wanted to make sure that we met all the deadlines |
| 09:12:31 | 22 | and everything and we're waiting on records, as Your Honor |
| 09:12:33 | 23 | correctly identified, it was harder for them at least at the |
| 09:12:36 | 24 | time to fill out all of the form completely without a couple of |
| 09:12:40 | 25 | updates or tweaks here or there once records came in. |

09:12:45  1          So I think in terms of continuing to encourage firms

09:12:48  2     to put all the census data that they possibly can in there with

09:12:53  3     any information that they possibly have, I think firms have

09:12:56  4     been working really diligently on that.  And I think that -- I

09:12:59  5     know that the Court has different priorities on its plate, and

09:13:05  6     so I would defer to the Court on, obviously, all of this but

09:13:10  7     what your viewpoint is on that.  But I can just tell you what

09:13:14  8     we've been trying to do which is encourage folks to get things

09:13:18  9     uploaded as much as humanly possible, and they've gotten a lot

09:13:22  10    uploaded.

09:13:23  11         **JUDGE RODGERS:**  Well, I think I'm going to hear from

09:13:25  12    the defense, and then following this conference, next week I'm

09:13:29  13    going to reach out to BrownGreer, and Roma more specifically,

09:13:34  14    and have some in-depth discussions with her about some of the

09:13:38  15    data I'd like to see, and I'll keep you all posted on that.

09:13:44  16         But thank you, Ms. Lanier, very much.  And please

09:13:47  17    convey my thanks to all your committee members for their hard

09:13:51  18    work.

09:13:52  19         **MS. LANIER:**  Thank you, Your Honor.  Will do.

09:13:54  20         **JUDGE RODGERS:**  Mr. Nomellini, do you want to be

09:13:56  21    heard, or Mr. Fields, anybody that's been involved or whoever?

09:14:01  22    Wasdin, Hill.

09:14:02  23         Glad to see you again, Mr. Hill.  Haven't seen you in

09:14:07  24    a while.

09:14:08  25         **MR. NOMELLINI:**  Yes, Your Honor.  I think Mr. Wasdin

09:14:09  1   is going to address this if there is anything to add on our

09:14:12  2   end.  One thing that I heard from Your Honor is the census form

09:14:15  3   deadline.  We would be in favor of reinstituting that deadline.

09:14:20  4   But Mr. Wasdin was assigned to this.  I just wanted to see if

09:14:25  5   he had anything else to add to that presentation.

09:14:27  6           **MR. WASDIN:**  I don't.

09:14:37  7           **JUDGE RODGERS:**  The census form deadline, I think, is

09:14:39  8   important.  I also think that the service of complaints is

09:14:42  9   important as well.  And so if I put a deadline in for census

09:14:45  10  forms, I'm probably also going to put in a deadline for service

09:14:48  11  of complaints as well to just round out that formalized

09:14:57  12  process, for whatever that's worth.

09:14:57  13         Anything else that I need to hear from anyone on early

09:15:01  14  vetting and -- as you all are thinking, if you have anything

09:15:06  15  else to add, let me ask Judge Jones if he has anything.

09:15:10  16          **JUDGE JONES:**  I have nothing.

09:15:12  17          **JUDGE RODGERS:**  Judge Herndon?

09:15:13  18          **JUDGE HERNDON:**  I have no questions, thank you.

09:15:14  19          **JUDGE RODGERS:**  Judge Herndon, could I ask you,

09:15:16  20  though, for -- well -- I hear you, but I can't see you.

09:15:23  21          **JUDGE HERNDON:**  I don't know why.

09:15:25  22          **JUDGE RODGERS:**  And I can barely hear.  I'm sure it's

09:15:30  23  on our end, Dave.  Just a minute.  I think it's this transition

09:15:43  24  from the PowerPoint back to --

09:15:46  25          **JUDGE HERNDON:**  It's above my pay grade.

| | |
|---|---|
| 09:15:48 | 1 |
| 09:15:49 | 2 |
| 09:15:55 | 3 |
| 09:16:03 | 4 |
| 09:16:06 | 5 |
| 09:16:14 | 6 |
| 09:16:20 | 7 |
| 09:16:24 | 8 |
| 09:16:31 | 9 |
| 09:16:36 | 10 |
| 09:16:38 | 11 |
| 09:16:47 | 12 |
| 09:16:54 | 13 |
| 09:16:56 | 14 |
| 09:16:58 | 15 |
| 09:17:01 | 16 |
| 09:17:04 | 17 |
| 09:17:08 | 18 |
| 09:17:11 | 19 |
| 09:17:15 | 20 |
| 09:17:20 | 21 |
| 09:17:24 | 22 |
| 09:17:24 | 23 |
| 09:17:27 | 24 |
| 09:17:30 | 25 |

**JUDGE RODGERS:**  There you are.

I know I've seen and signed some Privacy Act orders over the past month or two.  To your knowledge, is the DoD and the VA, I guess, if they're still producing records, but certainly the DoD in the process of processing those requests?

**JUDGE HERNDON:**  I presume they're processing.  They have not produced any records to MDL Centrality in quite some time.  They had a tranche of uploads -- I don't want to say a month ago, but not on a regular or consistent basis.

**JUDGE RODGERS:**  All right.  Well, that's probably another matter of outreach to undertake.  I haven't spoken with Ms. Snead in quite some time or Major Kim, so probably time to do that so we can encourage them to continue to produce those records.

Do you know anything else on that front, Mr. Aylstock?

**MR. AYLSTOCK:**  No, I'm not aware of any productions. And I'm not sure how much processing is being done as well.

**JUDGE RODGERS:**  Well, I think there have been thousands of names of individuals in these orders.

**MR. AYLSTOCK:**  Tens or hundreds of thousands are on backlog, so that's definitely an issue that at some point would need to be addressed.

With regard to the census forms, Your Honor, I think that's something the plaintiffs can get behind.  Our concern is twofold.  One is with regard to the verification and nature of

09:17:33   1   that.  As Ms. Lanier indicated, that was one of the issues that

09:17:36   2   I think Your Honor identified in suspending that order.  It

09:17:41   3   certainly injects a lot of delay and a lot of concern for our

09:17:44   4   servicemembers who don't have their records to have to swear

09:17:47   5   under penalty of perjury and then update, sometimes many times,

09:17:53   6   as new records come in, different answers come out, and that

09:17:56   7   becomes a real problematic issue.

09:17:59   8           JUDGE RODGERS:  But for those who do have their

09:18:01   9   records, why shouldn't they swear under penalty of perjury if

09:18:05   10  they have their records?

09:18:06   11          MR. AYLSTOCK:  No, that's fine if they have all the

09:18:08   12  records.  We're not opposed to that.  If not, we would just

09:18:12   13  suggest that we would be able to get the information faster and

09:18:15   14  certainly alleviate a lot of the, I think, very legitimate

09:18:19   15  concerns if we could do them unverified such that they're not

09:18:23   16  used in trial to make them out to be liars, as we've seen from

09:18:29   17  our perspective.

09:18:30   18          JUDGE RODGERS:  All right.  Anything else?

09:18:35   19          [No response.]

09:18:35   20          Okay.  Let's move, then, to II, which is the Group B

09:18:44   21  trial dates, the schedule for those cases, and then this also

09:18:51   22  involves the recent motion to dismiss Ms. Blum's case.

09:18:58   23          Who wants to start us off with this item,

09:19:03   24  Mr. Aylstock or Mr. --

09:19:04   25          MR. AYLSTOCK:  It might be best for Mr. Burns to

09:19:09   1   address the Blum issue first because I think that then falls

09:19:12   2   into whether we have an open October setting and what folks

09:19:12   3   should do about that.

09:19:15   4           **JUDGE RODGERS:**  All right, Mr. Burns.

09:19:15   5           **MR. BURNS:**  Good morning, Your Honor.  Mike Burns for

09:19:15   6   the plaintiff.

09:19:19   7           Good morning, Judge Jones and Judge Herndon.

09:19:21   8           Your Honor, we recently filed a motion to dismiss in

09:19:24   9   Ms. Blum's case after the Court set the order for the trial in

09:19:27   10  her case, Your Honor.  Basically the issue for us in Ms. Blum's

09:19:31   11  gets down to her family matter with her 25-year-old son Curtis.

09:19:37   12  He'll be 26 years old next month, Your Honor.  He's autistic

09:19:41   13  and also suffers from ADHD, attention deficit hyperactivity

09:19:49   14  disorder, and ODD which is the oppositional dysfunction *[sic]*

09:19:54   15  disorder.  And it's very difficult for her to get care for him

09:19:56   16  for extended periods of time.  And we've worked with her in the

09:19:59   17  past, and that's the main issue in her particular case, that

09:20:03   18  she cannot leave Curtis alone for the two-week period of time,

09:20:08   19  plus then it would require her to attend the trial.

09:20:12   20          **JUDGE RODGERS:**  What if I didn't require her to be

09:20:15   21  here for two weeks?  She doesn't have to be here for two weeks

09:20:19   22  if I allow that, and she certainly could appear via Zoom.  She

09:20:25   23  could even -- perhaps even give her testimony via Zoom.

09:20:29   24          **MR. BURNS:**  Those are possibilities, Your Honor, that

09:20:31   25  we could entertain.  We didn't know that that was a particular

09:20:34  1   option with the Court.  We thought that her appearance would be

09:20:37  2   required for the trial.

09:20:39  3         **JUDGE RODGERS:**  I mean, I've -- she's been a member of

09:20:43  4   this group from the beginning, this bellwether group from the

09:20:47  5   beginning.  You all have worked up her case.  Lots of discovery

09:20:53  6   and time and effort has gone into it.  She is set for trial.

09:20:58  7   And I'm -- I'm not inclined to -- let me just say I hear what

09:21:13  8   the defendants are saying.  I mean, they're frustrated by this,

09:21:16  9   and I can appreciate that given the effort that's gone into

09:21:19  10  this.  She's known that she has this conflict or issue with her

09:21:22  11  son, and so to have this come up after trial has been set is

09:21:27  12  understandably frustrating to the defense, particularly when

09:21:30  13  this was a defense pick, I believe.

09:21:33  14        So I'm inclined to accommodate her need to be absent

09:21:42  15  from the trial, and I can explain to the jury that she is a

09:21:45  16  caregiver and cannot be here in person.  So I'd prefer that you

09:21:51  17  think about that.

09:21:52  18        **MR. BURNS:**  Yes, ma'am.

09:21:54  19        **JUDGE RODGERS:**  I can also continue her trial to

09:21:57  20  another date to give her more time to find -- if she wants to

09:22:00  21  be in person at her trial -- to find time -- to try to find

09:22:04  22  time to arrange for a caregiver.  If that's just not possible,

09:22:08  23  then I seriously think the other option is what I would

09:22:16  24  propose.  And if she's not inclined to accept that option, then

09:22:20  25  I have to say I'm concerned about why she's moving to dismiss

| | | |
|---|---|---|
| 09:22:28 | 1 | her case. |
| 09:22:29 | 2 | **MR. BURNS:**  Yes, ma'am.  We could discuss those |
| 09:22:31 | 3 | particular options with her, and if you would be willing to |
| 09:22:35 | 4 | continue the case and let us discuss that with her, then we |
| 09:22:39 | 5 | could get back with the Court and inform the Court of her |
| 09:22:41 | 6 | decision at that time. |
| 09:22:43 | 7 | **JUDGE RODGERS:**  All right.  Well, if I continue her |
| 09:22:46 | 8 | trial, then I would substitute Adkins in into that trial slot, |
| 09:22:53 | 9 | which I've already carved out of my docket.  And we can talk |
| 09:22:58 | 10 | about potential dates for her trial.  If there's a time frame |
| 09:23:05 | 11 | where she thinks she can get help, then I'm amenable to |
| 09:23:09 | 12 | considering that.  I'm not going to put it off indefinitely. |
| 09:23:12 | 13 | **MR. BURNS:**  I know, Your Honor.  And would the Court |
| 09:23:14 | 14 | also consider maybe including her in the group of the |
| 09:23:17 | 15 | consolidated trials for January? |
| 09:23:19 | 16 | **JUDGE RODGERS:**  I don't know.  I'd have to hear from |
| 09:23:22 | 17 | the defendants on that.  I haven't even considered that.  I |
| 09:23:28 | 18 | don't know. |
| 09:23:29 | 19 | **MR. BURNS:**  If you can give us an opportunity to |
| 09:23:31 | 20 | discuss that with her, Your Honor, that may be an option for |
| 09:23:34 | 21 | her, and we'd gladly do that. |
| 09:23:38 | 22 | **JUDGE RODGERS:**  All right.  Then right now, I am going |
| 09:23:44 | 23 | to defer ruling on the motion to dismiss and wait until I hear |
| 09:23:49 | 24 | back from you all, hopefully sooner rather than later -- |
| 09:23:54 | 25 | **MR. BURNS:**  Oh, yes, ma'am. |

|  |  |  |
|---|---|---|
| 09:23:55 | 1 | **JUDGE RODGERS:**  -- on her position.  I mean, I'd like |
| 09:24:00 | 2 | to know why she would not be amenable to a nonappearance, I |
| 09:24:09 | 3 | mean, in person.  I mean, if she could appear via Zoom, the |
| 09:24:13 | 4 | jury is told why she's not physically here -- |
| 09:24:18 | 5 | **MR. BURNS:**  And, Your Honor, that's on me because I |
| 09:24:20 | 6 | didn't know that that would be an option, so that's on me. |
| 09:24:22 | 7 | **JUDGE RODGERS:**  So before I move Taylor into that slot |
| 09:24:26 | 8 | formally, I'd like to hear back on that option. |
| 09:24:31 | 9 | **MR. BURNS:**  Yes, ma'am.  If you could give me to next |
| 09:24:34 | 10 | week to discuss it with her, I'd be glad to get back with you |
| 09:24:37 | 11 | at that time. |
| 09:24:38 | 12 | **JUDGE RODGERS:**  Okay, very good.  Thank you. |
| 09:24:39 | 13 | **MR. BURNS:**  Thank you, Your Honor. |
| 09:24:41 | 14 | **JUDGE JONES:**  Could I say something? |
| 09:24:42 | 15 | **JUDGE RODGERS:**  Yes. |
| 09:24:43 | 16 | **JUDGE JONES:**  Just one other suggestion about the Zoom |
| 09:24:46 | 17 | is have your client come here to testify.  That's a day.  She |
| 09:24:52 | 18 | finds a caregiver.  And then the rest of the trial, she's not |
| 09:24:55 | 19 | physically here and she could watch by Zoom, participate in |
| 09:25:02 | 20 | that way, and Judge Rodgers could instruct the jury why she's |
| 09:25:07 | 21 | not here.  That might be another option. |
| 09:25:09 | 22 | **JUDGE RODGERS:**  Certainly that's an option. |
| 09:25:11 | 23 | **MR. BURNS:**  We appreciate the options, Your Honor, and |
| 09:25:13 | 24 | I'll discuss those with her and get back to the Court by next |
| 09:25:17 | 25 | Friday, if that's okay with the Court. |

09:25:19  1    **JUDGE RODGERS:**  Yes, that's fine.  Well, I'm going to

09:25:27  2  defer ruling on the motion, so I'll wait to hear back from you.

09:25:30  3    **MR. BURNS:**  Thank you, Your Honor.  May I be excused?

09:25:32  4    **JUDGE RODGERS:**  Yes, you may.

09:25:35  5    All right, Mr. Aylstock, then?

09:25:37  6    **MR. AYLSTOCK:**  Obviously, depending on how that

09:25:41  7  goes -- and I appreciate the Court's suggestion and

09:25:44  8  Judge Jones' on that -- that sort of brings up if Adkins is

09:25:49  9  slotted in for a continuance of Blum or whatever happens there,

09:25:54  10  the idea that Adkins and Taylor are both Washington law.

09:26:00  11    **JUDGE RODGERS:**  I'm not going to consolidate them.

09:26:03  12  Sorry.  It's not going to happen.  I mean, I have this worked

09:26:07  13  out, you know, with what I'm comfortable with in terms of

09:26:12  14  trying these cases.  And it's a hybrid.  It's a combination of

09:26:17  15  consolidated trials and single-plaintiff trials.  And I

09:26:22  16  understand the efficiency, the benefit and the sense it makes

09:26:28  17  to try two cases together that have the same state law, but

09:26:33  18  there are other reasons that I think outweigh doing that, and

09:26:40  19  part of it is just fairness.  I'm not going to consolidate all

09:26:44  20  these cases.

09:26:45  21    **MR. AYLSTOCK:**  No, I understand that, and I'm not

09:26:47  22  going to beat a dead horse.  My only point that maybe you

09:26:52  23  hadn't considered is that *Baker*, of course, was Washington law.

09:26:54  24  We have now got the jury's -- heard from the jury, and

09:26:56  25  hopefully both sides are putting that learning about a

09:27:00    1    single-plaintiff Washington law case.  I'm not so sure that

09:27:03    2    having not just Taylor but then Adkins, three Washington law

09:27:09    3    single-plaintiff cases, really informs the bellwether process

09:27:12    4    which is really designed to as much as anything inform the

09:27:15    5    parties' understanding of what a jury may do.  But I understand

09:27:19    6    the Court's decision on that.

09:27:23    7         So with that, I think we have --

09:27:24    8         **JUDGE RODGERS:**  Now, with that said, I mean, if you

09:27:28    9    all want to get together and figure out a different

09:27:34    10   configuration for the trials where I have consolidated and

09:27:43    11   single-plaintiff trials -- in other words, if you want to break

09:27:46    12   up the three that I've consolidated for January -- I might

09:27:48    13   consider consolidating these two.  But I'm not going to do all

09:27:52    14   single-plaintiff and I'm not going to do all consolidated.

09:27:56    15        And so the way I've worked it out, as you know, what

09:28:00    16   happened with the first group, we had the three consolidated,

09:28:03    17   two singles; we have three consolidated for Group B with two

09:28:08    18   singles.  But it would have to be something you both agreed to.

09:28:12    19        **MR. AYLSTOCK:**  And we'll discuss that, because in

09:28:14    20   looking at the experts for those two cases, if they were

09:28:18    21   consolidated, maybe we can work a deal with the other

09:28:20    22   consolidation.  We're really talking about one more trial day

09:28:25    23   for the plaintiffs.  We can -- I think we could potentially get

09:28:29    24   rid of two or three general experts who would have to come back

09:28:32    25   as well as two or three case-specific experts.

| | | |
|---|---|---|
| 09:28:35 | 1 | **JUDGE RODGERS:**  Well, you all confer and let me know |
| 09:28:37 | 2 | if you reach an agreement.  I just -- the only thing I don't |
| 09:28:40 | 3 | have flexibility on really is the time that I've given -- set |
| 09:28:46 | 4 | aside for the trials.  Because once I set those trials, I've, |
| 09:28:54 | 5 | you know, rearranged my other docket to accommodate those |
| 09:28:57 | 6 | trials, so now I have the time before and after those trials |
| 09:29:06 | 7 | dedicated to other cases. |
| 09:29:07 | 8 | **MR. AYLSTOCK:**  Understood, Your Honor. |
| 09:29:08 | 9 | So with that, maybe we could talk about the Taylor |
| 09:29:11 | 10 | deadline. |
| 09:29:11 | 11 | **JUDGE RODGERS:**  Okay. |
| 09:29:12 | 12 | **MS. HOEKSTRA:**  The proposed pretrial schedule for the |
| 09:29:16 | 13 | Taylor setting was added to the agenda because the parties had |
| 09:29:19 | 14 | not finalized their agreement on what the exchange deadlines |
| 09:29:22 | 15 | would be internally. |
| 09:29:23 | 16 | **JUDGE RODGERS:**  But I don't understand that.  I |
| 09:29:25 | 17 | thought I gave you deadlines. |
| 09:29:26 | 18 | **MS. HOEKSTRA:**  You do, but we have certain things that |
| 09:29:29 | 19 | have to happen before we have the pretrial conference and the |
| 09:29:31 | 20 | pretrial stipulation submission.  The parties were going back |
| 09:29:34 | 21 | and forth on the dates for those.  Those are now final.  In the |
| 09:29:38 | 22 | previous trials, we submitted a stipulation essentially of what |
| 09:29:40 | 23 | those exchanges were for depo designations and witness lists |
| 09:29:44 | 24 | prior to the pretrial stipulation being submitted to the Court. |
| 09:29:47 | 25 | You had set those dates.  We just had gone through and |

09:29:51   1   confirmed what they would be in terms of the exchanges that

09:29:54   2   will start between the parties next week in anticipation of

09:29:58   3   that deadline.

09:29:59   4            JUDGE RODGERS:  And so you want to --

09:30:00   5            MS. HOEKSTRA:  We just wanted to do -- in the past

09:30:03   6   because we've stuck to those deadlines and anything was

09:30:06   7   considered late if it did not meet them, we are exchanging

09:30:09   8   witness lists on July 14th, exhibit lists and deposition

09:30:14   9   designations on the 16th, objections to those exhibits and

09:30:17   10  designations as well as counter designations on August 2nd, and

09:30:22   11  then we have a supplemental deadline for exhibits on the 5th as

09:30:26   12  well as objections to counter designations and objections to

09:30:30   13  supplemental exhibits on the 9th of August in anticipation of

09:30:35   14  the --

09:30:36   15           JUDGE RODGERS:  This is for Taylor?

09:30:37   16           MS. HOEKSTRA:  This is for Taylor, for the September

09:30:39   17  trial, yes.  And in anticipation of the pretrial stipulation

09:30:43   18  being submitted to the Court on the 16th per your order.  And

09:30:46   19  then, if it is agreeable with the Court, based on the practice

09:30:49   20  in the previous cases, the parties had agreed that we would

09:30:52   21  submit priority deposition designations and priority exhibits

09:30:55   22  for ruling to the Court on the 30th of August with the same

09:31:00   23  caveats as before where we would identify those that had been

09:31:03   24  previously ruled on or presented in the earlier trials.

09:31:06   25           JUDGE RODGERS:  I'm amenable to that.

09:31:09  1    **MS. HOEKSTRA:**  I do think one of the open issues at

09:31:12  2    the moment was the proposal between the parties on how to

09:31:15  3    handle the *Daubert* and dispositive briefing.  Pretrial Order 70

09:31:21  4    sets the deadline for all of the Group B cases.  Plaintiffs

09:31:24  5    would prefer to move forward with that date.

09:31:29  6         In Group A, as you may remember, there was staggered

09:31:34  7    briefing for the dispositive deadlines for summary judgment

09:31:37  8    motions because choice of law had not been finalized.  In

09:31:40  9    Group B, choice of law is finalized, the parties have agreed,

09:31:44  10   and there has been no brief on that.  So our proposal was that

09:31:47  11   the dispositive deadline that was set for August 6th would

09:31:51  12   continue, and that the general *Daubert* and case-specific for

09:31:56  13   Taylor would continue on that date as well.

09:31:59  14        Plaintiffs would prefer that all *Daubert* briefing for

09:32:02  15   the entirety of Group B be on that date.  I believe defendants

09:32:07  16   may have a slightly different position on the *Daubert* briefing.

09:32:10  17        I'm not sure who is handling that from your side.

09:32:12  18        **MR. BEALL:**  Apparently I am, Your Honor.

09:32:14  19        **JUDGE RODGERS:**  Thank you, Ms. Hoekstra.

09:32:15  20        Mr. Beall.

09:32:16  21        **MR. BEALL:**  May it please the Court.  And on the Blum

09:32:21  22   issue, just to give you -- I know we totally agree with the

09:32:24  23   idea of letting her appear remotely.  That was going to be our

09:32:28  24   suggestion today to avoid this.  We think continuing the

09:32:30  25   trial -- unless there is a reason why October would not work

09:32:33  1   for that -- would not be the appropriate approach, so I don't

09:32:36  2   know that we agree with the idea of them having a week to tell

09:32:39  3   you they want to continue that to a later date.  If she can

09:32:39  4   appear remotely, she should be able to do it in October.

09:32:45  5          I would note the FEMA case we cited in our briefing,

09:32:49  6   the exact same approach was offered by the Court.  The Court

09:32:50  7   offered the plaintiff in that case the chance to either appear

09:32:51  8   remotely or not appear, and the plaintiff rejected that.  And

09:32:54  9   that's why the Court dismissed it with prejudice, one of the

09:32:57  10  reasons.  So if she rejects that offer, we do believe the Court

09:33:01  11  should dismiss with prejudice like we suggested earlier.

09:33:03  12         The briefing issue is a little bit up in the air

09:33:07  13  because of the fact we don't know when the January trial is

09:33:09  14  going to be.  We may know that shortly.  But our suggestion

09:33:13  15  would be --

09:33:13  16         **JUDGE RODGERS:**  Well, it's going to be all of January.

09:33:16  17  So it will be the -- I don't remember -- I looked at this

09:33:19  18  previously, and I don't have -- well, maybe I do have a

09:33:22  19  calendar here.  Oh, of course, it doesn't go into -- well, I

09:33:29  20  don't have the -- whatever the first Monday -- I don't have a

09:33:40  21  2022 yet.

09:33:42  22         **MADAM CLERK SIMMS:**  The 3rd is the first Monday.

09:33:45  23         **JUDGE RODGERS:**  The 3rd?  The 3rd of January.

09:33:48  24         **MADAM CLERK SIMMS:**  That's probably a holiday, though.

09:33:51  25         **JUDGE RODGERS:**  That's what we didn't know, and that's

09:33:53    1    why -- this is actually why I didn't give you the start date,

09:33:57    2    because we need to check with the Administrative Office of the

09:34:00    3    U.S. Courts to determine what day they are going to set as that

09:34:05    4    holiday, and it may be the 3rd.  And if that's the case, then

09:34:10    5    we would start on the 4th.

09:34:12    6             MR. BEALL:  You've answered my question.  It's going

09:34:14    7    to be the 1st of January not January 30th.  It could have been

09:34:18    8    all of the month.  We didn't know where it was going to start.

09:34:20    9    That's all I was trying to say.

09:34:21   10             So the dates we were talking about proposing are

09:34:23   11    subject to change, but we would propose that you basically have

09:34:27   12    a two-part briefing process for the dispositive motions where

09:34:32   13    we brief Taylor and Blum or Atkins, whichever one is in that

09:34:37   14    October slot first, and do those together with the same

09:34:39   15    deadlines, the same ones you've already set, but that the three

09:34:43   16    cases set for trial in January would be briefed slightly later

09:34:47   17    because the Court is going to want to stagger its rulings

09:34:50   18    anyway, and it seems to us that's a lot of upfront work to wait

09:34:54   19    on the other three.  So in other words, we would suggest

09:34:56   20    that --

09:34:56   21             JUDGE RODGERS:  I'd like to get them over with,

09:34:59   22    Charles.

09:34:59   23             MR. BEALL:  Well, I understand you want to get them

09:35:01   24    over with, but --

09:35:01   25             JUDGE RODGERS:  I'd like to deal with them and get

09:35:03  1    them behind me.  We did it this way before.  I don't know why

09:35:07  2    we need to --

09:35:07  3         MR. BEALL:  Actually, before if you'll recall,

09:35:09  4    Your Honor, with Group A, because the choice of law issues were

09:35:11  5    still outstanding, we actually had those briefed -- I think we

09:35:14  6    had three different deadlines for them because we had -- I

09:35:15  7    think Estes -- we already knew the choice of law.

09:35:16  8         JUDGE RODGERS:  *Daubert* is all at the same time.

09:35:18  9         MR. BEALL:  We are agreeable to *Daubert* being resolved

09:35:21  10   at the same time.  That's what I was going to get to next.

09:35:24  11   This is simply a summary judgment issue because the *Daubert*

09:35:26  12   briefing is the experts' reports are going to be out there, the

09:35:30  13   depositions have been taken, and we think we can get those

09:35:33  14   ready.  Some of them are general and some of them are across

09:35:35  15   cases.  So the *Daubert* briefing, we're fine with the current

09:35:39  16   deadlines on that.

09:35:39  17        JUDGE RODGERS:  But why -- the choice of law is

09:35:42  18   decided --

09:35:43  19        MR. BEALL:  It is.

09:35:43  20        JUDGE RODGERS:  -- so what is the need for putting it

09:35:45  21   off?  3M has two law firms, huge law firms representing --

09:35:52  22   three, actually, your firm, too -- representing it in this

09:35:56  23   litigation.  You can't tell me you all can't get these briefs

09:36:00  24   together.

09:36:00  25        MR. BEALL:  We could, Your Honor.  It's simply the

09:36:02    1    practicalities of it.  It seemed to work last time that we

09:36:06    2    briefed them and then you got them sort of a rolling -- you

09:36:08    3    rolled out your orders as the briefing was done.  That's what

09:36:11    4    we're simply suggesting here.

09:36:12    5           **JUDGE RODGERS:**  I'll consider it.

09:36:13    6           **MR. BEALL:**  That's really the only dispute we had is

09:36:16    7    whether we would sort of --

09:36:17    8           **JUDGE RODGERS:**  Actually, you're asking me to

09:36:20    9    reconsider an order that's already set.  I mean, I've already

09:36:24   10    given you the deadline.

09:36:25   11           **MR. BEALL:**  Sure, that's exactly right.  So we're

09:36:27   12    simply saying for those three cases, we would propose they be

09:36:30   13    briefed six weeks later.

09:36:31   14           **JUDGE RODGERS:**  I've already considered this, and I

09:36:34   15    gave you an August 6th deadline.  But I've heard from you.

09:36:38   16    I'll think about it and let you know.  Right now it remains

09:36:41   17    August 6th.  If I change my mind and agree with you, I'll give

09:36:44   18    you a new date.

09:36:45   19           Anything else?

09:36:48   20           **MS. HOEKSTRA:**  The only last thing, Your Honor, in

09:36:51   21    relation to the Taylor deadlines is the parties will have a

09:36:53   22    brief meet-and-confer with Judge Herndon about word limits.

09:36:58   23    Our understanding is most of the general *Daubert* for Group B

09:37:00   24    overlap with general *Daubert* for Group A, so we think that the

09:37:03   25    word limits on the *Daubert* briefing will be less than what

09:37:05  1    we've had for the Group A cases.  But we will finalize that

09:37:09  2    shortly with the parties.

09:37:10  3            **JUDGE RODGERS:**  All right.  Thank you.

09:37:16  4            Anything else, Judge Herndon or Judge Jones?

09:37:20  5            **JUDGE JONES:**  No.

09:37:21  6            **MR. AYLSTOCK:**  With regard to that January trial

09:37:23  7    setting, Your Honor, we've been looking internally at sort of

09:37:26  8    the -- which experts overlap and how we can potentially

09:37:31  9    streamline the case.  Of course, the last three-plaintiff

09:37:34  10   consolidation, Your Honor gave us five weeks.  We think we can

09:37:38  11   do that quicker this time, and particularly, we obviously

09:37:44  12   didn't know what cases were going to be consolidated or even if

09:37:48  13   they were going to be consolidated when we were doing the

09:37:51  14   expert reports.

09:37:52  15           We do have, unfortunately, on the case-specific side,

09:37:56  16   some experts don't overlap but are general experts.  For

09:38:04  17   example, Dr. Lustig is a general expert that the Court and the

09:38:04  18   defendants are very familiar with, having testified in multiple

09:38:07  19   trials.  Did a case-specific report.  And I would request that,

09:38:13  20   if we could provide a case-specific report by Dr. Lustig for

09:38:19  21   one of the other cases, we could eliminate two or three of the

09:38:23  22   other case-specific experts in that consolidation and maybe

09:38:26  23   even make it quicker, like a three-and-a-half-week trial.

09:38:29  24           **JUDGE RODGERS:**  I'm not going to allow Dr. Lustig to

09:38:32  25   give new opinions, if that's what you're asking.

09:38:34  1    **MR. AYLSTOCK:**  It would only be with regard to one of

09:38:36  2   the cases, and then that would eliminate an entire witness and

09:38:40  3   probably save us a couple of trial days.  So given that he's a

09:38:45  4   known quantity, known expert, been deposed many times --

09:38:49  5         **JUDGE RODGERS:**  Well, if you can get their agreement

09:38:51  6   on it, I'm all in favor of it.  But otherwise, I'm not going to

09:38:54  7   allow you to do that.

09:38:57  8         **MR. AYLSTOCK:**  Okay.  So did Your Honor have any

09:38:59  9   thoughts on timing given that, as far as how much time might be

09:39:03  10  provided in January?  You said maybe the whole month?

09:39:06  11        **JUDGE RODGERS:**  I'm thinking five weeks again, and I'm

09:39:09  12  going to go with the 55/45, which is what I think has worked

09:39:15  13  out best and is the most fair.

09:39:18  14        **MR. AYLSTOCK:**  Thank you, Judge.

09:39:19  15        **JUDGE RODGERS:**  Understanding the burdens of each

09:39:21  16  side.

09:39:21  17        **MR. AYLSTOCK:**  Hopefully we don't even need the full

09:39:25  18  five weeks.

09:39:26  19        **JUDGE RODGERS:**  Well, if you decide you don't need the

09:39:28  20  five weeks, then I would like to hear that, I mean, because

09:39:30  21  from my standpoint, I would like to -- still, you're going to

09:39:33  22  get 55 and you're going to be 45 percent, and that's how it's

09:39:36  23  going to be allotted.  But I suspect Mr. Nomellini is going to

09:39:39  24  say they want the five weeks.

09:39:41  25        **MR. NOMELLINI:**  Your Honor, on the length of time, I

09:39:43  1   think we can talk to Mr. Aylstock and then report back to

09:39:46  2   Your Honor.

09:39:46  3            **JUDGE RODGERS:**  That's fine.

09:39:47  4            **MR. AYLSTOCK:**  Thank you, Judge.

09:39:51  5            **JUDGE RODGERS:**  And, actually, I think January has --

09:39:56  6   I think it's a five-week month; is that right?  Is there a

09:40:01  7   fifth week or not?

09:40:02  8            **MR. AYLSTOCK:**  The 31st is a Monday of the following

09:40:05  9   week.

09:40:05  10           **JUDGE RODGERS:**  Right.  So for me, for my docket,

09:40:08  11  that's a five-week docket.  So that's why it worked out.  So my

09:40:14  12  criminal docket would not start until that following --

09:40:17  13  whatever that first Tuesday -- first Monday is in February,

09:40:20  14  which would be like, what, the 7th or -- right.  So I have five

09:40:25  15  weeks.  It works out with you all, but that was part of the

09:40:30  16  thinking on my part for January was because there were those

09:40:33  17  five weeks.

09:40:34  18           The next item, I believe, is maybe an update on the

09:40:44  19  Eighth Circuit, Mr. Nomellini, Eighth Circuit matter with the

09:40:48  20  *Graves* case.

09:40:51  21           **MR. NOMELLINI:**  Yes, Your Honor, and I believe

09:40:53  22  Ben Hulse is also on the phone.  We thought that Your Honor

09:40:58  23  might appreciate a summary of where things stand.

09:41:00  24           On March 16th, the Eighth Circuit heard argument in

09:41:04  25  two sets of appeals from remand orders.  One set related to

09:41:09   1   civilian purchasers of the CAEv2, and the other set related to

09:41:15   2   civilian military contractors.

09:41:16   3        **JUDGE RODGERS:**  I saw that one member of the panel is

09:41:25   4   an old friend of mine, Ralph Erickson.  Good judge.  Can't tell

09:41:30   5   you how he'd rule.  I have my suspicions, but I'll keep them to

09:41:37   6   myself.

09:41:37   7        **MR. NOMELLINI:**  So those two are going forward.  And

09:41:40   8   then there's a third round of appeals for military

09:41:43   9   servicemembers.  The Eighth Circuit granted the parties'

09:41:49   10  request to stay briefing and argument until the other appeals

09:41:56   11  are decided.  So the military servicemembers, that briefing has

09:42:05   12  been stayed.

09:42:05   13       **JUDGE RODGERS:**  So the argument that was heard was

09:42:07   14  just on the cases involving the commercial use or civilian.

09:42:10   15       **MR. NOMELLINI:**  It was civilian -- yes, pure civilians

09:42:12   16  and then civilian military contractors, correct, Your Honor.

09:42:16   17       **JUDGE RODGERS:**  And then there's another subset -- or

09:42:18   18  set of cases that are pure military?

09:42:21   19       **MR. NOMELLINI:**  Yes, military servicemembers, correct,

09:42:25   20  Your Honor.

09:42:25   21       **JUDGE RODGERS:**  I don't think I -- I'm not sure I

09:42:27   22  appreciated that.  Do you know the numbers involved?

09:42:30   23       **MR. NOMELLINI:**  Mr. Hulse, are you on?

09:42:35   24       **MR. HULSE:**  Yes, I am, and good morning, Your Honor.

09:42:37   25            So it's a relatively small number of military

09:42:40  1  servicemembers.  I don't have that number at hand, but roughly

09:42:44  2  10 percent of the -- actually, less than that, about 6 percent

09:42:47  3  of the full docket of a thousand Minnesota plaintiffs is

09:42:51  4  military servicemembers.

09:42:52  5       **JUDGE RODGERS:**  All right.  Thank you for that.

09:42:56  6       So that's been stayed.

09:42:58  7       **MR. NOMELLINI:**  Correct.

09:42:59  8       **JUDGE RODGERS:**  But the other is proceeding.

09:43:01  9       **MR. NOMELLINI:**  Correct.

09:43:02  10       **JUDGE RODGERS:**  And you're just waiting on a decision?

09:43:04  11  Or we are just waiting on a decision?

09:43:07  12       **MR. NOMELLINI:**  That is correct, Your Honor.

09:43:09  13       **JUDGE RODGERS:**  Well, I had a nice chat this week with

09:43:13  14  Judge Herndon's assistance with Judge Miller, who is, as you

09:43:18  15  know, handling the consolidated 3M Litigation in Minnesota, and

09:43:24  16  she, too, is waiting on that -- anxious for that decision.

09:43:29  17       **MR. NOMELLINI:**  Right.

09:43:32  18       **JUDGE RODGERS:**  But right now, Mr. Hulse, since you're

09:43:34  19  on the line, my understanding is there is no trial date.  There

09:43:41  20  was an August date, I believe, for Mr. Graves and that has been

09:43:42  21  lifted and has not been reset.

09:43:47  22       **MR. HULSE:**  That's correct, Your Honor.  Mr. Graves

09:43:49  23  had some personal medical issues that resulted in a request for

09:43:53  24  continuance, which was granted.  And Your Honor probably knows

09:43:57  25  this from talking with Judge Miller, but we do have a tentative

| | | |
|---|---|---|
| 09:44:02 | 1 | date for some of our bellwether cases on January 31st next |
| 09:44:06 | 2 | year, and that's a maybe date because Judge Miller has some |
| 09:44:10 | 3 | other cases that are in front of it on her trial calendar.  And |
| 09:44:14 | 4 | then we have a hard date for another bellwether trial on |
| 09:44:20 | 5 | April 4th of next year. |
| 09:44:22 | 6 | **JUDGE RODGERS:**  Okay.  All right, well, very good.  I |
| 09:44:27 | 7 | appreciate that. |
| 09:44:28 | 8 | Anything else, Mr. Nomellini, on that front? |
| 09:44:30 | 9 | **MR. NOMELLINI:**  That's all.  Thank you, Judge. |
| 09:44:32 | 10 | **JUDGE RODGERS:**  Okay.  Thank you. |
| 09:44:38 | 11 | The next item pertains to the appeal bond in EHK. |
| 09:44:43 | 12 | Mr. Sacchet? |
| 09:44:45 | 13 | **MR. SACCHET:**  Good morning, Your Honor. |
| 09:44:48 | 14 | Michael Sacchet for plaintiffs. |
| 09:44:50 | 15 | **JUDGE RODGERS:**  That's been posted, right? |
| 09:44:52 | 16 | **MR. SACCHET:**  Yes.  Specifically, I think the agenda |
| 09:44:54 | 17 | item pertains to the question of interest on the judgments. |
| 09:44:57 | 18 | **JUDGE RODGERS:**  Right. |
| 09:44:58 | 19 | **MR. SACCHET:**  Upon review of both the EHK judgment and |
| 09:45:02 | 20 | the *Baker* judgment, plaintiffs noticed that there is no mention |
| 09:45:04 | 21 | of postjudgment interest.  Courts approach that in different |
| 09:45:07 | 22 | ways.  It's generally assumed to be given.  Of course, |
| 09:45:10 | 23 | 28 U.S.C. 1961 makes it mandatory.  Plaintiffs have reviewed |
| 09:45:14 | 24 | some of your prior decisions on the matter.  *Nationstar* in 2018 |
| 09:45:18 | 25 | and *Gulf Power* in 2012 are Your Honor's two most foremost |

09:45:23  1   decisions on the topic.

09:45:23  2           **JUDGE RODGERS:**  A blast from the past.

09:45:25  3           **MR. SACCHET:**  A blast from the past.  But in any

09:45:27  4   event, we are more or less seeking guidance from the Court as

09:45:29  5   to how to best approach this issue.  I don't think the question

09:45:32  6   of postjudgment interest as opposed to prejudgment interest is

09:45:36  7   controversial.

09:45:37  8           Plaintiffs' recommendation would be, pursuant to

09:45:39  9   Rule 60(a), for the Court to *sua sponte nunc pro tunc* enter an

09:45:45  10  amendment to the judgment just preserving the issue of

09:45:47  11  postjudgment interest.  I don't know for sure, but I would be

09:45:50  12  surprised if 3M objected to that given that that interest is

09:45:54  13  required and mandatory.

09:45:55  14          Of course, if Your Honor did not want to do so *sua*

09:45:58  15  *sponte* or *nunc pro tunc*, plaintiffs could move under 59(e) in

09:46:03  16  *Baker* because we're still within the 28-day time period to do

09:46:07  17  that.  In EHK, we would have to move under 60(b) because the 20

09:46:07  18  days have expired.  We're still within the one-year time

09:46:11  19  period.  Appeal hasn't happened yet, so the Court still has

09:46:14  20  jurisdiction.

09:46:15  21          So at the end of the day, there's a number of avenues.

09:46:17  22  In *Gulf Power*, Your Honor used 60(a) to just get it done, amend

09:46:22  23  the order and judgment and specify postjudgment relief so there

09:46:27  24  wasn't a question.  So we're basically here today to put this

09:46:29  25  on the table and see if 3M has any specific questions and if

09:46:33  1   Your Honor prefers one course or another.

09:46:35  2          **JUDGE RODGERS:**  All right.  Let me hear from 3M,

09:46:38  3   Mr. Nomellini.

09:46:39  4          **MR. NOMELLINI:**  Your Honor, I think postjudgment

09:46:42  5   interest is statutory and noncontroversial.  So what we would

09:46:45  6   like to do if it's okay with Your Honor is review the citations

09:46:49  7   that Mr. Sacchet mentioned, talk to him -- I don't think

09:46:51  8   there's going to be a controversy -- and then get back to

09:46:54  9   Your Honor.  We just haven't had a chance to look at those

09:46:57  10  cases.

09:46:58  11         **JUDGE RODGERS:**  I think it accrues as a matter of law.

09:47:00  12         **MR. NOMELLINI:**  Right.

09:47:01  13         **JUDGE RODGERS:**  But you all discuss it, let me know,

09:47:04  14  and I can amend the judgment.

09:47:06  15         **MR. NOMELLINI:**  Thank you, Your Honor.

09:47:06  16         **MR. SACCHET:**  Thank you.

09:47:07  17         **JUDGE RODGERS:**  Thank you.

09:47:08  18         Okay.  Moving on from Group B matters to C and D.

09:47:20  19  PTO 70.

09:47:22  20         Ms. Hoekstra.

09:47:22  21         **MS. HOEKSTRA:**  I'm actually going to turn this over to

09:47:26  22  whichever on the defense side is handling this issue.

09:47:30  23  Plaintiffs are following PTO 70 and assume those deadlines

09:47:32  24  still apply for Groups C and D.  Defendants had some questions

09:47:33  25  given the timing for some of the consolidated trial if any of

| | | |
|---|---|---|
| 09:47:37 | 1 | those deadlines might be shifted. |
| 09:47:40 | 2 | **JUDGE RODGERS:**  Okay.  Now, let me ask, I believe -- I |
| 09:47:47 | 3 | thought Group D was set off.  Do we have -- but we do have |
| 09:47:56 | 4 | dates, though. |
| 09:47:56 | 5 | **MS. HOEKSTRA:**  It was set off, but Group D discovery |
| 09:48:00 | 6 | is about to start resuming based on setting it off. |
| 09:48:04 | 7 | **JUDGE RODGERS:**  Oh, I see.  I'm looking at it now. |
| 09:48:07 | 8 | Okay.  Who wants to -- |
| 09:48:08 | 9 | **MS. HOEKSTRA:**  We're basically seeking clarification |
| 09:48:10 | 10 | that those deadlines still apply unless there's some -- |
| 09:48:13 | 11 | **JUDGE RODGERS:**  Well, they do.  They're in my order. |
| 09:48:17 | 12 | My order is in the docket -- or on the docket.  So I would not |
| 09:48:22 | 13 | be inclined to move these dates without some good cause. |
| 09:48:25 | 14 | **MR. NOMELLINI:**  I think the parties -- we're seeking |
| 09:48:29 | 15 | guidance from Your Honor. |
| 09:48:44 | 16 | **JUDGE RODGERS:**  This next item may be moot.  This item |
| 09:48:47 | 17 | of the cross notice of the deposition of Colonel Vietas.  My |
| 09:48:53 | 18 | understanding is this was noticed in the state court |
| 09:48:56 | 19 | litigation, then you all cross-noticed it.  It's now off the |
| 09:48:58 | 20 | table in the state court litigation, so I'm presuming it's off |
| 09:49:01 | 21 | the table here.  But I'll hear from you. |
| 09:49:03 | 22 | Mr. Wasdin. |
| 09:49:04 | 23 | **MR. WASDIN:**  I believe it's actually the subject of a |
| 09:49:07 | 24 | motion to quash in state court, so that just needs to be |
| 09:49:08 | 25 | resolved.  We have pulled down our cross notice in the federal |

| | | |
|---|---|---|
| 09:49:11 | 1 | MDL until that all gets sorted out in Minnesota. |
| 09:49:15 | 2 | **JUDGE RODGERS:** I thought the -- is the motion to |
| 09:49:17 | 3 | quash actually still pending and ripe? |
| 09:49:22 | 4 | Do you know, Judge Herndon? Is it -- |
| 09:49:28 | 5 | **JUDGE HERNDON:** The last word I had was that there was |
| 09:49:30 | 6 | an intent to file a motion to quash. I don't know if one has |
| 09:49:32 | 7 | actually been filed, but the parties up there were to meet and |
| 09:49:38 | 8 | confer. |
| 09:49:38 | 9 | **MR. WASDIN:** Mr. Hulse may know. He's on the line. |
| 09:49:40 | 10 | **JUDGE RODGERS:** All right. Mr. Paul. |
| 09:49:40 | 11 | **MR. PAUL:** Good morning, Your Honor. There is a |
| 09:49:43 | 12 | motion to quash pending. |
| 09:49:45 | 13 | **JUDGE RODGERS:** It is pending? |
| 09:49:47 | 14 | **MR. PAUL:** It is pending. |
| 09:49:49 | 15 | **JUDGE RODGERS:** Then your cross notice, obviously, |
| 09:49:51 | 16 | is -- |
| 09:49:51 | 17 | **MR. WASDIN:** We've already pulled that down. |
| 09:49:53 | 18 | **JUDGE RODGERS:** You have? Okay. Then I don't need to |
| 09:49:54 | 19 | address this today. |
| 09:49:55 | 20 | **MR. WASDIN:** I agree. |
| 09:49:56 | 21 | Actually, Your Honor, assuming the Court in Minnesota |
| 09:49:59 | 22 | allows the dep to go forward, one thing Mr. Aylstock and I |
| 09:50:02 | 23 | talked about is we're happy to get guidance on sort of the |
| 09:50:05 | 24 | procedure that the Court would want us to follow in the federal |
| 09:50:07 | 25 | MDL. I think the defendants, assuming we take that dep in |

| | | |
|---|---|---|
| 09:50:10 | 1 | Minnesota, would be -- |
| 09:50:12 | 2 | **JUDGE RODGERS:**  How would you take the dep in |
| 09:50:14 | 3 | Minnesota?  Because discovery is closed for B and C. |
| 09:50:19 | 4 | **MR. WASDIN:**  The Minnesota defendants in 3M will take |
| 09:50:22 | 5 | the dep in Minnesota.  The dep will exist.  I assume that we |
| 09:50:28 | 6 | would want to use that in this case, if that was possible.  We |
| 09:50:32 | 7 | could seek leave for a cross notice or -- |
| 09:50:33 | 8 | **JUDGE RODGERS:**  Well, you would -- this would have to |
| 09:50:35 | 9 | be the subject of briefing because this would be outside of the |
| 09:50:41 | 10 | Court's scheduling order.  You would have to have, you know, |
| 09:50:44 | 11 | good cause.  I presume you all have known -- I mean, I know you |
| 09:50:48 | 12 | have known about Colonel Vietas because that letter has been a |
| 09:50:52 | 13 | part of discovery.  It would have been disclosed, I'm sure, by |
| 09:50:54 | 14 | the government.  That's where that letter came from that he |
| 09:50:57 | 15 | signed, the Air Force letter.  We all know that letter.  I'm |
| 09:51:01 | 16 | surprised I don't know the exhibit number.  But anyway, we know |
| 09:51:05 | 17 | that letter. |
| 09:51:07 | 18 | It was produced by the military as part of the *Touhy* |
| 09:51:10 | 19 | process.  You could have taken his deposition as part of |
| 09:51:14 | 20 | that -- the government discovery.  There was no limit on the |
| 09:51:17 | 21 | depositions that you could have taken or sought to take during |
| 09:51:20 | 22 | that phase of discovery.  It ended September 30th.  I'm not -- |
| 09:51:26 | 23 | I'll hear from you, but it needs to be in briefing form. |
| 09:51:28 | 24 | **MR. WASDIN:**  Thank you, Your Honor. |
| 09:51:29 | 25 | **JUDGE RODGERS:**  Did you have something, Mr. Aylstock? |

09:51:32    1    **MR. AYLSTOCK:**  I think you stated our position

09:51:34    2    perfectly.

09:51:35    3    **JUDGE RODGERS:**  Okay.  Well, again, I'm not precluding

09:51:38    4    you from presenting a motion for leave with good cause.  I'll

09:51:44    5    consider it with those thoughts, those preliminary thoughts.

09:51:49    6    Okay.  Let's move on, then, to the next item which is

09:51:54    7    the final item, Item No. 7, future trials, early discovery of

09:52:02    8    cases.

09:52:04    9    Mr. Seeger?

09:52:05    10   **MR. SEEGER:**  Good morning, Your Honor.

09:52:06    11   **JUDGE RODGERS:**  Good morning.

09:52:07    12   **MR. SEEGER:**  Judge Jones, Judge Herndon.

09:52:10    13   This was kind of -- comes under the heading as maybe

09:52:12    14   "Food For Thought."  It was a placeholder to start a

09:52:17    15   conversation with the Court and the defendants on -- the whole

09:52:19    16   purpose of a bellwether process really is to inform the parties

09:52:23    17   of what the case is -- the important issues in the case.

09:52:25    18   That information comes from the trials, and it should

09:52:27    19   be used to explore resolution and other things.  But there are

09:52:32    20   possibilities -- and I have been in MDLs that have gone on for

09:52:35    21   years.

09:52:36    22   So I guess the question is:  When do we start thinking

09:52:38    23   that, if this information isn't used for the purpose of

09:52:43    24   resolution, the only option is trials?

09:52:44    25   And so we've put kind of a menu of options for the

| | | |
|---|---|---|
| 09:52:49 | 1 | Court for us to talk to you about and for you to consider and |
| 09:52:51 | 2 | ask us questions about.  We've heard some talk about what do |
| 09:52:55 | 3 | the cases look like since you selected your 1 percent, maybe |
| 09:52:59 | 4 | draw a pool, work up those cases, see what they look like. |
| 09:53:04 | 5 | **JUDGE RODGERS:**  You mean the later-filed cases? |
| 09:53:06 | 6 | **MR. SEEGER:**  Later-filed cases, Your Honor.  You know, |
| 09:53:08 | 7 | you have 200-and-something thousand cases here.  If you're |
| 09:53:11 | 8 | going to be forced to continue with -- I shouldn't say |
| 09:53:14 | 9 | "forced".  If the cases aren't going to settle and you're going |
| 09:53:17 | 10 | to continue with trials, I think the Court has two options. |
| 09:53:17 | 11 | Either you're going to have to figure a way to get through a |
| 09:53:19 | 12 | lot of trials quickly, which might be consolidations, you know, |
| 09:53:22 | 13 | maybe we group them by states, by issues. |
| 09:53:25 | 14 | The other option is you could look into remands.  We |
| 09:53:28 | 15 | do think the option of serial remands, you know, remanding |
| 09:53:32 | 16 | segments of the cases to maybe certain states, to certain |
| 09:53:36 | 17 | judges, certain groupings.  So we wanted to put all these |
| 09:53:39 | 18 | options on the table and begin that discussion with you now. |
| 09:53:44 | 19 | One other thing, Your Honor, just to remind you of, |
| 09:53:47 | 20 | one of our obligations as a representative committee is to put |
| 09:53:49 | 21 | together a trial that others could use should they have to come |
| 09:53:52 | 22 | to your court or elsewhere.  It's going to be hard to keep |
| 09:53:56 | 23 | calling experts to testify live if we're into trial 10, 20, 30, |
| 09:53:56 | 24 | 40, 50. |
| 09:54:02 | 25 | So, at some point, we may want to come back to you and |

| | | |
|---|---|---|
| 09:54:04 | 1 | talk about how we put that testimony on video or in a box, like |
| 09:54:07 | 2 | an essay-type deposition so that we could put a trial kit |
| 09:54:12 | 3 | together for plaintiffs' lawyers who might want to try a case |
| 09:54:18 | 4 | in Idaho or somewhere else. |
| 09:54:20 | 5 | So a lot here.  I don't know if my friends over here |
| 09:54:21 | 6 | have had a chance to process a lot of this, but I wanted to |
| 09:54:25 | 7 | kick it off. |
| 09:54:26 | 8 | **JUDGE RODGERS:**  Let me hear from Mr. Fields before I |
| 09:54:29 | 9 | say anything. |
| 09:54:30 | 10 | Mr. Fields? |
| 09:54:30 | 11 | **MR. FIELDS:**  Good morning, Your Honor.  Barry Fields |
| 09:54:33 | 12 | on behalf of 3M.  With respect to this particular item, it |
| 09:54:36 | 13 | really is more abstract right now.  We have not had a |
| 09:54:39 | 14 | discussion with the plaintiffs.  We do recognize that some of |
| 09:54:43 | 15 | the issues that are being raised by plaintiffs are things that |
| 09:54:46 | 16 | are of concern on any MDL. |
| 09:54:49 | 17 | I think one of the things that we need to be thinking |
| 09:54:51 | 18 | about is sort of two tracks, and this is food for thought on |
| 09:54:54 | 19 | the process going forward.  Your Honor has been rightly |
| 09:54:57 | 20 | focused, obviously, on the administrative docket, and I think |
| 09:55:00 | 21 | the Court's focus is correct.  We've got a lot of cases. |
| 09:55:04 | 22 | And the question is:  Can we winnow down those cases |
| 09:55:08 | 23 | on the administrative docket?  Not just the trials that are |
| 09:55:10 | 24 | going to take place, but are there claims that are not without |
| 09:55:15 | 25 | -- that lack merit? |

09:55:17  1        So I think we have to focus on that and figure out is

09:55:20  2   there a more effective way of dealing with that, and maybe the

09:55:23  3   parties can talk about that and present a proposal to

09:55:26  4   Your Honor.

09:55:26  5        With respect to these other ideas that are being

09:55:29  6   proposed, I just don't think we have enough information.  For

09:55:33  7   example, there are MDLs where there are serial remands.  The

09:55:41  8   issue in this case, however, is right now, we don't really have

09:55:44  9   the parameters to even understand how the serial remand process

09:55:46  10  would work, whether or not those cases are ready for trial or

09:55:51  11  close to being ready for trial.

09:55:52  12       So I think it is good to be thinking about this

09:55:55  13  process going forward, but right now I don't think we have

09:55:57  14  enough information to really propose something concrete to

09:56:01  15  Your Honor to consider on how we're going to handle this

09:56:04  16  process going forward.

09:56:05  17       But I do agree, and my client agrees, we do need to

09:56:10  18  figure out a process to move this MDL forward, but we do

09:56:15  19  believe that there is value right now in keeping the cases here

09:56:19  20  and Your Honor sort of overseeing this process.

09:56:24  21       **JUDGE RODGERS:**  Okay.  Thank you, Mr. Fields.

09:56:28  22       **MR. FIELDS:**  Thank you, Your Honor.

09:56:35  23       **JUDGE RODGERS:**  So at the end of January, early

09:56:36  24  February, we should have -- or you should have -- correct me if

09:56:40  25  I'm wrong with my math, but I believe ten verdicts, which would

| | | |
|---|---|---|
| 09:56:51 | 1 | leave 13 more to go, I believe.  Because we have -- we had a |
| 09:56:55 | 2 | total of four bellwether pools of six cases.  One of those |
| 09:56:58 | 3 | cases fell out of Group A, as you know.  So there should be -- |
| 09:57:03 | 4 | there was 23, so there should be 13 after January, I'm |
| 09:57:10 | 5 | thinking.  But, again, it's dangerous when I do math, so that |
| 09:57:16 | 6 | may not be completely accurate.  I know the ten is accurate. |
| 09:57:19 | 7 | And so if we do ten, we should have -- I don't know, |
| 09:57:24 | 8 | that didn't make sense because there should be six in Group C |
| 09:57:28 | 9 | and six in Group D, so that should be -- and five of those -- |
| 09:57:31 | 10 | one is an alternate in each one, so that's five, so that's |
| 09:57:35 | 11 | another ten.  That doesn't make sense either. |
| 09:57:39 | 12 | Charles, come on. |
| 09:57:39 | 13 | MR. AYLSTOCK:  I think it just depends where Adkins |
| 09:57:42 | 14 | falls because Adkins is now after January.  So I think your |
| 09:57:45 | 15 | math is right.  It's six in C and D and depending if Adkins is |
| 09:57:49 | 16 | moved up or stays where it is. |
| 09:57:50 | 17 | JUDGE RODGERS:  Well, and Adkins is B. |
| 09:57:56 | 18 | MS. HOEKSTRA:  It does not have a trial date set. |
| 09:57:59 | 19 | MR. AYLSTOCK:  But it doesn't have a trial date set. |
| 09:58:02 | 20 | It was going to be after the consolidation. |
| 09:58:05 | 21 | JUDGE RODGERS:  Right, but that number of ten assumes |
| 09:58:07 | 22 | that either Blum goes or Adkins goes. |
| 09:58:10 | 23 | MR. AYLSTOCK:  Right. |
| 09:58:11 | 24 | JUDGE RODGERS:  So after that, we should have ten |
| 09:58:13 | 25 | more.  If we remove the alternates, we should have -- |

09:58:17   1      **MR. AYLSTOCK:**   Removing alternates.

09:58:19   2      **JUDGE RODGERS:**   Let's remove the alternates.   And I

09:58:24   3   can certainly get through -- I mean, good Lord willing, I can

09:58:31   4   get through all four bellwether pools or all the cases in terms

09:58:35   5   of trials.   But we've got to start thinking beyond that.   So I

09:58:40   6   agree with both Mr. Seeger and Mr. Fields what that looks like.

09:58:44   7      I have a number of colleagues in this district who

09:58:49   8   have offered to try cases for me, which would keep them here.

09:58:54   9   Certainly, they would remain with me up to the point of trial,

09:58:59   10  but then you would have a different judge overseeing the

09:59:03   11  trials.

09:59:03   12     I went and tried tobacco litigation in the

09:59:10   13  Middle District when they had that litigation to deal with, and

09:59:18   14  those numbers were large, but they were nowhere near the

09:59:24   15  mushroom we have here.

09:59:25   16     So I don't know.   I mean, everything is on the table,

09:59:29   17  I guess, in terms of how we proceed.   I do think it is

09:59:32   18  important and smart to start thinking about it now.   I don't

09:59:34   19  have any answers for you.   I don't even really have any

09:59:38   20  suggestions other than I can promise you I'll get through the

09:59:42   21  four bellwether groups.   To the extent we need to move beyond

09:59:50   22  that, we need to come up with a plan.   So I think we need to

09:59:54   23  start talking about it.

09:59:55   24     **MR. FIELDS:**   And, Your Honor, I think one of the

09:59:57   25  things -- and we haven't talked with plaintiffs about this --

| | | |
|---|---|---|
| 10:00:00 | 1 | but going back and looking at the parameters that were used to |
| 10:00:04 | 2 | select A through D and whether or not there are other |
| 10:00:08 | 3 | characteristics that you want to evaluate in that pool, because |
| 10:00:12 | 4 | obviously you pick -- you know, you said here is the most |
| 10:00:15 | 5 | likely or the most representative.  But there are obviously |
| 10:00:19 | 6 | other -- there's other data points in that pool, and so maybe |
| 10:00:22 | 7 | one of the things we need to be doing is looking at what that |
| 10:00:26 | 8 | pool looks like and are there other categories of claimants |
| 10:00:29 | 9 | that provide a good sampling and figure out whether that |
| 10:00:34 | 10 | provides value as we move forward in this process. |
| 10:00:37 | 11 | **JUDGE RODGERS:**  And I agree with that.  I don't think |
| 10:00:40 | 12 | there are a whole lot of variables, though, here.  I'm |
| 10:00:46 | 13 | interested in the commercial use civilian cases.  It's a small |
| 10:00:53 | 14 | number of cases, but it is a unique subset of cases in this |
| 10:00:58 | 15 | litigation.  And I had the number; again, it's very small.  But |
| 10:01:03 | 16 | they are so different that, I mean, I think it's worth working |
| 10:01:08 | 17 | a few of them up.  Some of you may disagree with me, but we |
| 10:01:13 | 18 | need to know -- we need to get some data from those cases, too. |
| 10:01:19 | 19 | They're still cases that have got to be dealt with. |
| 10:01:21 | 20 | Whether it's through trial or otherwise, they've got to be |
| 10:01:24 | 21 | dealt with, and we don't know anything about them.  Or I don't. |
| 10:01:27 | 22 | I don't think you do either. |
| 10:01:29 | 23 | **MR. FIELDS:**  I don't remember exactly all the data |
| 10:01:32 | 24 | points in the original analysis, but I think that is something |
| 10:01:34 | 25 | we can go back and look at that analysis from BrownGreer and |

| | |
|---|---|
| 10:01:38 | 1 |
| 10:01:43 | 2 |
| 10:01:46 | 3 |
| 10:01:49 | 4 |
| 10:01:53 | 5 |
| 10:01:56 | 6 |
| 10:01:58 | 7 |
| 10:02:01 | 8 |
| 10:02:05 | 9 |
| 10:02:09 | 10 |
| 10:02:16 | 11 |
| 10:02:22 | 12 |
| 10:02:27 | 13 |
| 10:02:31 | 14 |
| 10:02:37 | 15 |
| 10:02:40 | 16 |
| 10:02:49 | 17 |
| 10:02:52 | 18 |
| 10:02:55 | 19 |
| 10:02:58 | 20 |
| 10:03:01 | 21 |
| 10:03:03 | 22 |
| 10:03:08 | 23 |
| 10:03:10 | 24 |
| 10:03:11 | 25 |

see if there's another way that we can slice and dice the pools.  I know Your Honor is saying there's not that many variables, but it's something at least we should look at and figure out is there some additional categories of cases in that pool that it might make sense to work up and evaluate.

**JUDGE RODGERS:**  And I agree with that --

And I'll hear from you in a minute, Mr. Seeger.

It might be worthwhile for me to appoint -- you know how much I love committees and subcommittees -- appoint a select group, Mr. Fields, Mr. Seeger, and I would like to be involved in it at some level.  But to get with BrownGreer -- Roma or Jake Woody, whoever -- and start looking at what variables do exist.  They have the data.  They can run the data analytics.  But I think it's worth having both sides give input into that with some court oversight.

**MR. SEEGER:**  Your Honor, I was literally about to say both sides, for different reasons or the same reasons, are looking at the data beyond your 1 percent.  We know a lot about your 1 percent, so we're looking at everything else.  And I think that what you just suggested about a committee to tease through the issues to find things in addition to what you just raised, but there may be some information that we're not going to get from the groupings that we have right now that we may want to look at.

And I'm just throwing this out there.  I'm not trying

| | | |
|---|---|---|
| 10:03:15 | 1 | to disrupt the schedule, but Your Honor may look at this and |
| 10:03:18 | 2 | say, you've got a lot of information right now, and if this is |
| 10:03:21 | 3 | the piece you need, well, maybe we'll substitute this in for |
| 10:03:25 | 4 | this date and we'll go get that information to help on other |
| 10:03:28 | 5 | things. |
| 10:03:28 | 6 | JUDGE RODGERS:  Well, if both sides agreed with that, |
| 10:03:32 | 7 | and it made sense, I'm not opposed to it.  I don't like to see |
| 10:03:37 | 8 | time wasted, but I don't think it is time wasted even if we |
| 10:03:41 | 9 | ended up substituting.  You know, you've worked up -- you're |
| 10:03:46 | 10 | getting ready to start on the fourth group.  You've worked up |
| 10:03:48 | 11 | three groups.  You've had five verdicts.  You do have a lot of |
| 10:03:55 | 12 | information about this group of cases, but it's a small |
| 10:03:59 | 13 | percentage. |
| 10:04:00 | 14 | MR. SEEGER:  And there are a lot of creative ideas out |
| 10:04:06 | 15 | there from other litigations that we should take advantage of. |
| 10:04:06 | 16 | The one point you just made about pulling other judges in, |
| 10:04:09 | 17 | Judge Kennelly in the Northern District in Illinois in the TRT |
| 10:04:13 | 18 | litigation recruited like 15 judges that he worked with.  I |
| 10:04:16 | 19 | know you don't have that many available.  I think right where |
| 10:04:24 | 20 | you sit in Northern Florida, you could probably bring more |
| 10:04:27 | 21 | judges. |
| 10:04:28 | 22 | JUDGE RODGERS:  I wish.  I have the Middle District |
| 10:04:30 | 23 | not too far away, and like I said, I was happy to go over there |
| 10:04:34 | 24 | and try a couple of tobacco cases for them, so I have no doubt |
| 10:04:37 | 25 | there would be plenty of judges.  And I get calls routinely |

| | | |
|---|---|---|
| 10:04:41 | 1 | from senior judges even from the Southern District who are |
| 10:04:45 | 2 | looking to try cases.  We all like to try cases, so I don't |
| 10:04:49 | 3 | think it will be any problem to find some judges.  And |
| 10:04:52 | 4 | actually, judges can travel here and try -- we have courtrooms |
| 10:04:58 | 5 | now.  We're blessed now to be flush with courtrooms.  So we can |
| 10:05:07 | 6 | try them here, you all can try them here or certainly you can |
| 10:05:10 | 7 | try them elsewhere.  My preference would be for judges to come |
| 10:05:14 | 8 | here as opposed to you all going out. |
| 10:05:15 | 9 | MR. SEEGER:  My last point is we agree with |
| 10:05:17 | 10 | Mr. Fields.  We are not looking for you at some point to shut |
| 10:05:20 | 11 | this MDL down and send it back.  That's why our proposal on |
| 10:05:26 | 12 | serial remands -- which is what Judge Fallon did in *Chinese* |
| 10:05:29 | 13 | *Drywall* where he sent cases back to Florida, specifically |
| 10:05:32 | 14 | Florida, and there are other examples of that where the MDL |
| 10:05:35 | 15 | Court and Your Honor maintains control of the litigation but |
| 10:05:39 | 16 | controls where cases go and how they get resolved. |
| 10:05:40 | 17 | I'd love to work with whoever on the defense -- |
| 10:05:44 | 18 | Mr. Fields, Mr. Nomellini, whoever -- and we've got folks that |
| 10:05:48 | 19 | want to work on it and come up with ideas for Your Honor. |
| 10:05:48 | 20 | JUDGE RODGERS:  Very good.  It sounds like a good |
| 10:05:51 | 21 | start. |
| 10:05:51 | 22 | MR. SEEGER:  Thank you, Your Honor. |
| 10:05:57 | 23 | JUDGE RODGERS:  Anything else? |
| 10:05:58 | 24 | MR. BEALL:  I have a logistical question for guidance |
| 10:06:02 | 25 | about the appellate issues that are about to be coming up -- |

10:06:03 1 appellate record, I should say.  And there are two separate

10:06:07 2 things, but they're sort of related.

10:06:08 3       There are a number of -- when we gave exhibits to the

10:06:11 4 Court, and both sides did for ruling, we submitted the

10:06:14 5 exhibits, I think, on a thumb drive or sort of, you know,

10:06:17 6 without filing them on the docket.  We got the rulings.  But if

10:06:21 7 a document was excluded, the exhibit itself, while you've

10:06:24 8 reviewed it, is not part of the public record, if that makes

10:06:28 9 sense.

10:06:28 10       So, in other words, there were exhibits that you

10:06:30 11 reviewed, but they were never filed in the record of the case

10:06:33 12 for purposes the appellate record.  So they've been ruled

10:06:37 13 upon, they've been identified, we all know what they are, but

10:06:40 14 the Eleventh Circuit won't.

10:06:42 15       So I guess the first question is from -- and we don't

10:06:46 16 need every one of the exhibits that you've ruled upon, but

10:06:48 17 there are maybe a dozen or so exhibits that may or may not be

10:06:52 18 part of an appellate issue that we may want to include in the

10:06:52 19 records.

10:06:54 20       So the question is:  How would you propose that we --

10:06:56 21 like we do a notice of filing, "this is the exhibits, they

10:07:00 22 were -- that's a simple way to do it.

10:07:01 23       You have the documents somewhere on a thumb drive or

10:07:04 24 something.  We could tell you which exhibits we're talking

10:07:07 25 about and you could do them yourselves.  So that's one bucket.

| | | |
|---|---|---|
| 10:07:11 | 1 | **JUDGE RODGERS:**  I don't want to do them, and I don't |
| 10:07:14 | 2 | want anyone on my staff to do them. |
| 10:07:16 | 3 | So what I would prefer is that you all come to an |
| 10:07:19 | 4 | agreement about whatever that body of exhibits is and submit it |
| 10:07:29 | 5 | to us, and then let us transmit it to the Eleventh Circuit. |
| 10:07:32 | 6 | But I don't want us having to go through and find those |
| 10:07:34 | 7 | exhibits. |
| 10:07:34 | 8 | **MR. BEALL:**  I assumed that to be the case.  And I'll |
| 10:07:37 | 9 | get with Mr. Sacchet about that. |
| 10:07:38 | 10 | The second one is a broader picture that goes into, I |
| 10:07:42 | 11 | think, all the cases, and that is, we have the master case |
| 10:07:45 | 12 | number, 2885, which applies to all cases.  But when we appeal |
| 10:07:49 | 13 | the *Estes* case, hypothetically, that's a separate docket |
| 10:07:52 | 14 | number.  We get 150 documents, but we don't get the master |
| 10:07:57 | 15 | case.  So, for example, the government contractor briefing was |
| 10:08:01 | 16 | all done in the master case. |
| 10:08:02 | 17 | **JUDGE RODGERS:**  I think my order was, though, filed in |
| 10:08:04 | 18 | the individual cases. |
| 10:08:05 | 19 | **MR. BEALL:**  The order may have been, but I'm not sure |
| 10:08:07 | 20 | that all of the briefing and things that we would need to show |
| 10:08:10 | 21 | what was argued and preserved and everything was in there.  And |
| 10:08:14 | 22 | I don't -- I don't know if your order was in the individual |
| 10:08:17 | 23 | cases. |
| 10:08:17 | 24 | **JUDGE RODGERS:**  I can't recall right now, but I know |
| 10:08:19 | 25 | the order made clear it applied to all the individual cases. |

10:08:23   1    **MR. BEALL:**  And I'm happy to confer with Mr. Sacchet

10:08:23   2   or whoever on the other side to come up with a procedure for

10:08:28   3   doing that, but I wanted to sort of flag that for the Court's

10:08:28   4   attention.  We don't want to include all thousand-plus

10:08:32   5   documents on the master case and any individual case because

10:08:35   6   most of them are notice of appearances anyway, but we just want

10:08:37   7   to make sure that we get the core documents that are needed

10:08:41   8   from the master case which do apply to all these cases into,

10:08:44   9   say, *Estes, Keefer, Baker*, whatever.

10:08:48   10    **JUDGE RODGERS:**  Well, it might make the most sense,

10:08:52   11   Mr. Beall, for me to reach out to the Eleventh Circuit to ask

10:08:56   12   them how they would like us to handle that as opposed to you

10:08:59   13   all -- they probably have a -- I'm sure they have their own

10:09:04   14   thoughts about how that should be done, in terms of your second

10:09:08   15   question.

10:09:08   16    **MR. BEALL:**  That's perfectly -- we would be happy to

10:09:11   17   wait for your guidance on that.

10:09:13   18    **JUDGE RODGERS:**  Let me get with my clerk of court and

10:09:15   19   have her investigate that, and I'll get back with you.

10:09:19   20    **MR. BEALL:**  Perfect.  And I will confer with

10:09:21   21   Mr. Sacchet about the exhibit issues and anything else that we

10:09:23   22   think may be missing.  That's the one that came to our mind.

10:09:27   23   So, okay.

10:09:28   24    **JUDGE RODGERS:**  Yeah, there were -- I know in the

10:09:30   25   context of the trials themselves, obviously, there were

10:09:35  1  exhibits identified.  If they were overruled, I thought we kept

10:09:42  2  track of that.

10:09:43  3       Did we not, Hillary?  Yeah, we did.

10:09:47  4       But you're saying that they're not in the --

10:09:52  5       **MR. BEALL:**  When we submitted the exhibits to you for

10:09:54  6  ruling, priority rulings or whatever, we simply gave you the

10:10:00  7  documents and listed them, but we didn't do a notice of

10:10:02  8  filing "Here's our exhibits" because that would have been

10:10:07  9  gigabytes and gigabytes of stuff.

10:10:08  10       **JUDGE RODGERS:**  Just get together and identify them,

10:10:12  11  make sure that you all -- plaintiffs are in agreement with the

10:10:16  12  defendants and the defendants are in agreement with any

10:10:19  13  identified by the plaintiffs, and put those together on a hard

10:10:22  14  drive for us, I guess, or -- I don't know -- they probably

10:10:25  15  won't take your hard drive.

10:10:27  16       **MR. BEALL:**  We would probably electronically file them

10:10:30  17  unless it's too large.

10:10:30  18       **JUDGE RODGERS:**  You'd have to.  They won't take it

10:10:32  19  that way.

10:10:32  20       **MR. BEALL:**  Again, we're not talking about every

10:10:34  21  single document the Court ruled upon.  We're simply talking

10:10:36  22  about a handful that may or may not --

10:10:37  23       **JUDGE RODGERS:**  I wouldn't do that if I was you.  I

10:10:40  24  would not send the Eleventh Circuit every single document you

10:10:42  25  sent to me.

| | | |
|---|---|---|
| 10:10:44 | 1 | **MR. BEALL:** That's why I said. Trust me -- |
| 10:10:45 | 2 | **JUDGE RODGERS:** You'll start off on the wrong foot, I |
| 10:10:48 | 3 | promise. |
| 10:10:48 | 4 | **MR. BEALL:** No, I don't want any more courts mad at |
| 10:10:51 | 5 | me, so I won't do that. Thank you. |
| 10:10:52 | 6 | **JUDGE RODGERS:** That's just a whole lot to review. |
| 10:10:54 | 7 | So we will get back with you on the second question as |
| 10:11:00 | 8 | far as the master docket. You all talk about trial exhibits |
| 10:11:05 | 9 | that you need to be part of the appellate record, and then we |
| 10:11:10 | 10 | can get those filed on the docket. |
| 10:11:12 | 11 | Is there anything else that we need to discuss? |
| 10:11:16 | 12 | **MR. AYLSTOCK:** Not from the plaintiffs, Your Honor. |
| 10:11:18 | 13 | **MR. NOMELLINI:** Not from defendants, Judge. |
| 10:11:20 | 14 | **JUDGE RODGERS:** Well, my last comment is a word of -- |
| 10:11:25 | 15 | I guess, of praise and thanks to Ms. Dang, who is going to be |
| 10:11:31 | 16 | leaving us. Her last day in my chambers is at the end of this |
| 10:11:36 | 17 | month. Very sad for me and for all of us. But also a big loss |
| 10:11:41 | 18 | to the MDL because she has been just -- phenomenal is an |
| 10:11:47 | 19 | understatement. I don't have a word for how much value she's |
| 10:11:50 | 20 | added to this process. I, for one, would not have made it |
| 10:11:53 | 21 | through the trials had it not been for Ms. Dang. |
| 10:11:56 | 22 | So thank you very much, Hillary. We're going to miss |
| 10:12:01 | 23 | you. |
| 10:12:02 | 24 | **MR. SEEGER:** And we join you. |
| 10:12:03 | 25 | **JUDGE RODGERS:** I'm sure I speak for all those, I |

| | | |
|---|---|---|
| 10:12:06 | 1 | know, here in the courtroom; they all appreciate very much how |
| 10:12:08 | 2 | much you did to get us through those several weeks of trial. |
| 10:12:13 | 3 | Well, are you all going to be here for the festivities |
| 10:12:20 | 4 | this weekend?  Yes?  Okay, very good.  I'll look forward to |
| 10:12:23 | 5 | seeing you all, then.  If you haven't seen the Blue Angels, you |
| 10:12:31 | 6 | are in for a real treat.  I think the weather is going to |
| 10:12:35 | 7 | cooperate, sounds like it. |
| 10:12:36 | 8 | I thank both sides for arranging that and putting it |
| 10:12:39 | 9 | together, and I will see you all again at those festivities. |
| 10:12:43 | 10 | We're in recess. |

11    *(Proceedings concluded at 10:12 a.m.)*

12    --------------------

13    *I certify that the foregoing is a correct transcript from the*
14    *record of proceedings in the above-entitled matter.  Any*
      *redaction of personal data identifiers pursuant to the Judicial*
15    *Conference Policy on Privacy are noted within the transcript.*

16

17    *s/Donna L. Boland*                          *7-9-2021*
      *Donna L. Boland, RPR, FCRR*                 *Date*
18    *Official Court Reporter*

19

20

21

22

23

24

25