**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS EARPLUG    )    Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,   )
                                 )    Pensacola, Florida
                                 )    August 20, 2021
                                 )    10:08 a.m.
                                 )
                                 )
_____)

**TWENTY-FIRST CASE MANAGEMENT CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
and
THE HONORABLE GARY R. JONES
UNITED STATES MAGISTRATE JUDGE
(Pages 27)

**A P P E A R A N C E S**

JUDGE DAVID R. HERNDON (ret.)

FOR THE PLAINTIFFS:    Aylstock, Witkin, Kreis & Overholtz, PLLC
                       By:  **BRYAN F. AYLSTOCK**
                            *baylstock@awkolaw.com*

                            **JENNIFER HOEKSTRA**
                            *jhoekstra@awkolaw.com*
                       17 E Main Street, Suite 200
                       Pensacola, Florida  32502

Appearances (cont'd):

FOR THE PLAINTIFFS:     Clark Love & Hutson, GP
                        By:  **SHELLEY HUTSON**
                             bgreif@triallawfirm.com
                        440 Louisiana Street, Suite 1600
                        Houston, Texas  77002

                        Seeger Weiss LLP
                        By: **CHRISTOPHER A. SEEGER**
                             *cseeger@seegerweiss.com*
                        55 Challenger Rd, 6th Floor
                        Ridgefield Park, NJ  07660


FOR THE DEFENDANTS:     Dechert, LLP
                        By: **KIMBERLY BRANSCOME**
                             *kimberly.branscome@dechert.com*

                             **JAY L. BHIMANI**
                             *jay.bhimani@dechert.com*
                        633 W 5th Street, Suite 4900
                        Los Angeles, California  90071

                        Kirkland & Ellis, LLP
                        By:  **MARK J. NOMELLINI**
                             *mnomellini@kirkland.com*

                             **NICHOLAS F. WASDIN**
                             *nick.wasdin@kirkland.com*
                        300 N Lasalle
                        Chicago, Illinois   60654

                        Moore, Hill & Westmoreland, PA
                        By: **LARRY HILL**
                             *lhill@mhw-law.com*

                             **CHARLES F. BEALL, JR.**
                             *cbeall@mhw-law.com*
                        350 W Cedar Street, Suite 100
                        Pensacola, Florida  32502

                        Kirkland & Ellis, LLP
                        By:  **SAGHAR ESFANDIARIFARD**
                             *saghar.esfandiarifard@kirkland.com*
                        555 South Flower Street, Suite 3700
                        Los Angeles, California  90071

1

## P R O C E E D I N G S

2   (*Call to Order of the Court.*)

3   **THE COURT:**  Good morning.  Welcome to the 21st, I

4   believe, case management conference in the 3M Combat Arms

5   Earplug Multidistrict Litigation.  This is, as we all know, MDL

6   2885.

7   A number of attorneys present in the courtroom.  At

8   counsel table for the plaintiffs I have Mr. Aylstock, Ms.

9   Hutson, Ms. Hoekstra, and Mr. Seeger.  At defense counsel

10   table, Ms. Branscome, Mr. Hill, Mr. Nomellini, Mr. Wasdin, Mr.

11   Bhimani, Mr. Beall, and Ms. Esfandiarifard.

12   Did I get that right?

13   **MS. ESFANDIARIFARD:**  Close enough.

14   **THE COURT:**  Close enough, okay, you'll let me pass,

15   thank you.

16   (*Musical disruption from telephonic attendees.*)

17   **THE COURT:**  Is that my playlist?  It sounds like it.

18   **MADAM CLERK ROGERS:**  Please make sure that all of your

19   Zooms are muted, please.  If you're appearing via Zoom or

20   listening in, you need to make sure that you're on mute.

21   **THE COURT:**  Go Barbara.

22   So, everyone, two housekeeping matters.  First I'll

23   start with my new courtroom deputy.  This is Ms. Barbara

24   Rogers.  Ms. Simms retired following our last trial, and I'm

25   lucky to have Ms. Rogers -- without a D -- as my new courtroom

| | |
|---|---|
| 10:09:52 | 1 |

deputy.  So you will all, I'm sure, come to know and like her

very much.

Another housekeeping matter.  Effective Monday I have

a new policy that will be in place for my courtroom and my

chambers.

*(Musical disruption from telephonic attendees.)*

**THE COURT:**  I'm going to hold somebody in contempt.

**MS. HUTSON:**  That usually happens when they put

somebody on hold.

**THE COURT:**  Well, they shouldn't be on hold.  It's

disruptive.

If you're on the Zoom on the phone, I can't proceed

with this conference because of your playback of the music,

whether it's your firm line, your -- I don't know, but it needs

to stop.

Do we know if that's -- is that the Zoom or is that

the telephone?

**MADAM CLERK ROGERS:**  I believe it's the

teleconferencing.  And I have muted the incoming volume, but

they can still hear the out.

**THE COURT:**  Well, that's fine, we don't need to hear

from them anyway.  Well, that should solve that disruption.

So, effective Monday, a new policy for my chambers and

my courtroom as far as COVID.  You will need to have proof of

vaccination or a negative COVID test within the prior week in

10:11:29   1   order to be present in my courtroom, so you need to make note

10:11:32   2   of that.

10:11:32   3          When it comes to trial -- we have an upcoming trial in

10:11:35   4   September.  If the COVID case numbers are still surging and

10:11:41   5   this policy is still in place, then we will have -- and we

10:11:45   6   don't have a policy for the courthouse, and there may be one.

10:11:48   7   But I'm not the chief judge anymore, so that's left to someone

10:11:55   8   else to decide.  But to the extent there is not a similar

10:11:58   9   policy in place for the entire courthouse, then there will be

10:11:58   10  overflow space in jury assembly again for viewing of the trial;

10:12:02   11  you just will not be permitted to be in the courtroom.

10:12:05   12         Now, if you're in the courtroom and you have been

10:12:07   13  vaccinated, you are free to remove your mask.  That's up to

10:12:10   14  you.  You don't have to remove them, but you are free to, if

10:12:13   15  you like.

10:12:13   16         Judge Jones and Judge Herndon are present via Zoom.

10:12:19   17  Thank you for being here.

10:12:23   18         I have the parties' proposed agenda for the

10:12:28   19  conference, and I've disrupted it somewhat or maybe a lot.  The

10:12:34   20  first item I've entered a ruling disposing of that late

10:12:39   21  yesterday.  The second item which pertains to future trials and

10:12:45   22  discovery cases, as leadership learned this morning, I have

10:12:49   23  definitely disrupted that.  I like to think it's been

10:12:54   24  productive in terms of what I'm about to tell you all, but it

10:13:00   25  is certainly a change of pace from what I think maybe most were

10:13:08   1   expecting.

10:13:09   2           So let me just advise everyone as to what I'm

10:13:13   3   referring to.  I'm going to be entering a series of orders that

10:13:17   4   are going to change the pace of things in this litigation

10:13:20   5   mainly because of the size of the litigation and my

10:13:23   6   responsibility as the presiding judge over this massive MDL to

10:13:28   7   move things along.

10:13:30   8           And nobody's fault, but the bellwether process that

10:13:36   9   we've been pursuing and the pace of the trials that have taken

10:13:43  10   place is just not moving things quickly enough, in my mind.  I

10:13:48  11   mean, I've said it, it's a whack-a-mole approach; it's one

10:13:54  12   judge, really one case.  I did consolidate a couple.  But when

10:13:58  13   you look at the numbers that we have, three cases consolidated

10:14:03  14   into one trial, it's not going to move the needle at all.

10:14:06  15           And so what's going to happen, a couple of things.

10:14:09  16   The first thing is going to be a transition order that's going

10:14:13  17   to be entered most likely next week, and there will be a series

10:14:16  18   of these entered.  The intent is to move cases from the admin

10:14:22  19   docket to the MDL docket, to the active docket.  The admin

10:14:28  20   docket was never intended to exist in perpetuity.  And so those

10:14:36  21   transition orders will be entered.

10:14:37  22           I haven't yet decided the numbers that I'm going to

10:14:40  23   move at one time and how quickly.  I told leadership this

10:14:44  24   morning in the preconference meeting most likely anywhere from

10:14:48  25   10- to 20,000 cases at a time, one to two weeks at a time.  I

10:14:54   1   am going to try to spread the pain across law firms.  I'm

10:15:00   2   certainly going to be sensitive to those firms with the largest

10:15:04   3   number of cases in terms of spreading that out over a lengthier

10:15:07   4   period of time.

10:15:09   5          Also, within those orders, depending on the number of

10:15:12   6   cases your law firm has, you will have more time to complete

10:15:18   7   all the requirements in that order.  And those requirements are

10:15:22   8   filing a notice of transition from the administrative docket to

10:15:27   9   the active docket or the MDL docket, entering your own lawyer

10:15:32  10   information into the docket.  So this will require legwork on

10:15:37  11   your firm's part.  In my mind, it doesn't require lawyer work,

10:15:44  12   but it is still work.  You will also need to file the short

10:15:49  13   form complaint.  You will file a notice of designated forum.

10:15:58  14   This will all be spelled out in the order.  Notice of

10:15:58  15   designated forum.

10:16:00  16          Very importantly, in connection with that notice of

10:16:03  17   designated forum, your staff or whoever it is that is doing

10:16:07  18   this work, needs to also type into the CM/ECF docket itself --

10:16:16  19   there's a box where you can type in "Notice of Designated

10:16:22  20   Forum," hyphen, and then you're going to list the forum, FLND,

10:16:30  21   ALSD.  Whatever the district is, I just need that designation.

10:16:35  22          That way I can run reports that tell me where these

10:16:38  23   cases are properly forumed, and I can't do that without that

10:16:43  24   text being in the docket.  It's not enough to just have the pdf

10:16:50  25   of the notice of designated forum for our purposes.  Because

10:16:53   1   right now all the cases on the active docket that have notice

10:16:58   2   of designated forums indicated, my staff is having to go

10:17:02   3   through those manually to pull out those forums.

10:17:06   4         The administrative docket, most of the cases no one

10:17:08   5   ever listed the designated forum, so those are deficient in any

10:17:13   6   event.  So that will hopefully get corrected.

10:17:16   7         You will also pay your filing fee at the time of

10:17:19   8   transition.

10:17:22   9         Justin, what else?  Notice of designated forum -- oh,

10:17:30   10  I just remembered what it was.

10:17:31   11        The short form complaint.  Very importantly, once you

10:17:35   12  have that date stamp proof of filing, you will take that -- I

10:17:39   13  guess it's a pdf that you have, you will send that to Roma at

10:17:45   14  BrownGreer electronically, obviously, you'll send that to her,

10:17:48   15  and she will serve all of the complaints on 3M through that

10:17:51   16  system.  And that's the process for the transitions.

10:17:57   17        It may take as much as a year.  I'm hoping not, but it

10:18:03   18  could take as much as a year for all of these cases to get

10:18:08   19  transitioned.

10:18:08   20        The first group of cases to transition will include

10:18:19   21  1500 cases that have been identified previously in two

10:18:24   22  respects.  They've been identified as the 1%.  Most of us know

10:18:28   23  what the 1% represents.  It's now no longer 1%.  Obviously,

10:18:37   24  it's no longer 1%, but right now it's 1358 cases.

10:18:41   25        And then there's an additional 157 cases that we

10:18:46  1  recently received records on, at 3M's request, from the DoD, so

10:18:52  2  those 157 will be combined with the 1358.  I think I have the

10:19:00  3  numbers right.  But, in any event, I believe it's 1500 cases

10:19:06  4  specifically.  So I may have the numbers wrong.  It may be 1343

10:19:11  5  and 157, that might be correct.  But, in any event, it comes to

10:19:14  6  1500 cases.

10:19:15  7      And we have records -- the reason I've identified

10:19:18  8  these 1500 cases as the first ones to be transitioned is we

10:19:22  9  actually have for most of these cases -- there may be two or

10:19:26  10  three dozen that I still need to push the DoD on -- but we have

10:19:30  11  the DoD and VA information and data, including the DOEHRS data,

10:19:35  12  on those cases.  So we're going to start with those.

10:19:38  13      I do not know what law firms have those cases.  I

10:19:42  14  don't have any idea, but I can get that information for you.

10:19:45  15      And then, as I said, as far as the bigger number of

10:19:51  16  cases in those orders, I'm going to do my best to make sure

10:19:54  17  that I spread that out across firms so that the firms with the

10:19:57  18  most cases are not hit the hardest.

10:19:59  19      From there, there will be another series of orders

10:20:05  20  entered.  I call them wave orders.  If any of you were involved

10:20:10  21  in the TBM cases, the mesh cases, then you're familiar with

10:20:17  22  wave orders from Judge Goodwin.  I'm borrowing from his

10:20:21  23  playbook.

10:20:22  24      There will be three wave orders that I'm going to

10:20:24  25  start with.  That won't be the end of it, but I am going to

10:20:27   1   start with three wave orders for those 1500 cases, again,

10:20:30   2   because we have records, best place as any to start.  Three

10:20:36   3   waves of 500 cases apiece or per wave.  Those cases will be put

10:20:43   4   on an eight-month discovery schedule.  I'll be working with the

10:20:47   5   parties and talking with them about what needs to happen during

10:20:49   6   those eight months in those cases.

10:20:52   7          There will be a new wave order entered every three

10:20:56   8   months.  And those cases will be worked up and most likely

10:21:00   9   remanded after they're worked up to their respective

10:21:06   10  jurisdictions.

10:21:09   11         Then back to the bellwethers.  As you know, we have

10:21:17   12  four bellwether groups, A, B, C, and D.  At the end of January,

10:21:22   13  I will have tried all of the cases to be tried in Group A and

10:21:27   14  Group B.  You will have ten verdicts at that point.

10:21:31   15         Group C will be ready for trial in October.  And so I

10:21:38   16  have reached out to my colleagues for assistance in trying

10:21:42   17  those cases.  And those cases -- there are five cases in Group

10:21:46   18  C.  Regardless of whatever happens with Lopez, we still have an

10:21:52   19  alternate, so I expect there to be five cases to be tried in

10:21:56   20  Group C.  And those cases will be tried between October and

10:22:00   21  December, and they'll be tried by other judges in this

10:22:03   22  district.  I've already had two takers, Chief Judge Walker has

10:22:09   23  agreed to try a case, and then Judge Winsor has also agreed to

10:22:14   24  try a case.

10:22:15   25         I've told them that these are single plaintiff trials

10:22:18   1   of two each, timed trials just like the others everybody is

10:22:24   2   familiar with.  To encourage participation, I've agreed to take

10:22:28   3   all the *Daubert* and the summary judgment motions.  I'm probably

10:22:32   4   going to have to take the depo designations as well, but I

10:22:36   5   haven't yet agreed to that.  But most likely that will be a

10:22:41   6   deal-killer if I don't.

10:22:44   7           So I've asked the parties to provide to me the experts

10:22:49   8   on both sides for those trials.  My intent in doing that would

10:22:54   9   be to try to separate out the trials so that they're not

10:23:00   10  overlapping and imposing on the experts.

10:23:04   11          But Mr. Seeger had a great suggestion that -- and this

10:23:07   12  is definitely going to be necessary going forward, maybe or

10:23:11   13  maybe not for Group C, but to take preservation depositions for

10:23:16   14  experts.  I can be present for those, rule on those objections

10:23:20   15  live at those depositions, and then those can be played at

10:23:24   16  trial in order to avoid that issue.

10:23:26   17          Also, I've neglected to ask in the preconference

10:23:30   18  meeting -- can you tell me, as far as Group C and the choice of

10:23:34   19  law briefing -- I believe it's been filed.

10:23:38   20          **MS. HOEKSTRA:**  Yes.

10:23:40   21          **THE COURT:**  Do we have the same stipulation as in the

10:23:43   22  other cases as far as choice of law or is that not in place?

10:23:46   23  Because if not, I've got to think about hearings and --

10:23:49   24          **MS. HOEKSTRA:**  My understanding -- and this was based

10:23:51   25  on the submission and discussion with Judge Herndon -- is that

10:23:53  1  both sides agreed that you could make that determination.

10:23:55  2        **THE COURT:**  As in the other groups?

10:23:57  3        **MS. HOEKSTRA:**  As in the other groups yes.

10:23:59  4        **THE COURT:**  Is that on record somewhere?

10:24:01  5        **MS. HOEKSTRA:**  I believe it was included in the papers

10:24:03  6  but --

10:24:03  7        **THE COURT:**  I haven't looked at the papers.  I'm

10:24:05  8  sorry.  I probably should have just done that.  So maybe it is

10:24:08  9  in the papers.

10:24:09  10        Do you know, Judge Herndon, did you ask them to

10:24:12  11  include that in the papers?

10:24:13  12        **JUDGE HERNDON:**  We talked about it and I assume it's

10:24:16  13  there, but I haven't looked myself.

10:24:17  14        **THE COURT:**  And is it your understanding there was an

10:24:20  15  agreement?

10:24:20  16        **JUDGE HERNDON:**  Yes.

10:24:21  17        **THE COURT:**  All right.  Thank you.

10:24:24  18        Group D has not really kicked off in terms of its

10:24:32  19  discovery.  There are deadlines in place.  The parties are all

10:24:36  20  aware of those.  I believe, according to that schedule, that

10:24:39  21  those cases are ready for trial -- this is our final bellwether

10:24:46  22  pool -- that they're ready for trial February 25th, so the end

10:24:49  23  of February of 2022.

10:24:51  24        I will be soliciting help from, whether it's judges in

10:24:55  25  my district or in other districts in the Eleventh Circuit, to

10:24:58   1   help me get those five trials scheduled and completed in the

10:25:04   2   early spring of 2022.  And then all our bellwethers will be

10:25:09   3   complete, and we will start to really focus our attention on

10:25:16   4   the waves.  But you're going to be focusing on those waves

10:25:20   5   regardless.

10:25:22   6            But as far as trials and the decision about trials in

10:25:24   7   those cases, I'm not there yet.  My intent, as I've said right

10:25:30   8   now, if I had to make a decision, it would just be to remand

10:25:33   9   all of them.

10:25:34   10            I don't know if I would remand summary judgment and

10:25:39   11   *Daubert*s.  Every colleague that I've spoken to has said

10:25:45   12   absolutely remand the *Daubert* and the summary judgment.  Judge

10:25:48   13   Goodwin swears he would never do that again.  But I don't know

10:25:52   14   yet.  I just have to wait and see how I feel about it later.

10:25:57   15            Before I get on to some other things, I have a couple

10:26:00   16   of things.  I want to talk to you all about Adkins.  And I know

10:26:04   17   we have the motion to dismiss Lopez from Group C, that's on the

10:26:10   18   agenda.

10:26:11   19            Any questions from anyone, clarifications?

10:26:16   20            One second, Mr. Aylstock.

10:26:17   21            Mr. Nomellini raised a good question in the

10:26:20   22   preconference meeting about whether I would entertain

10:26:22   23   suggestions from the parties on some of the mechanical aspects

10:26:28   24   of these orders in terms of how in practice they're going to

10:26:32   25   work out.  And I said I would.  But I made it very clear that I

| | | |
|---|---|---|
| 10:26:37 | 1 | would not reconsider any aspect of these decisions. |
| 10:26:41 | 2 | Mr. Aylstock? |
| 10:26:42 | 3 | MR. AYLSTOCK:  Yes, Your Honor.  With regard to choice |
| 10:26:43 | 4 | of law in Group C, we certainly -- I'm told we did put in our |
| 10:26:48 | 5 | papers that we have the same stipulation, at least from the |
| 10:26:51 | 6 | plaintiffs' side.  And to the extent it's not, I can represent |
| 10:26:54 | 7 | to the Court that we do. |
| 10:26:55 | 8 | I think your order suggested that, if a hearing was |
| 10:27:00 | 9 | needed or necessary, it may be as soon as August 27th.  And I |
| 10:27:07 | 10 | don't know that one is.  I don't believe so.  But if one is |
| 10:27:11 | 11 | necessary, if we would just kind of have a little heads up on |
| 10:27:16 | 12 | that.  I don't think -- |
| 10:27:17 | 13 | THE COURT:  When did I say August 27th? |
| 10:27:19 | 14 | MS. HOEKSTRA:  It's in PTO 70, it indicates that we |
| 10:27:25 | 15 | will have oral argument next Friday if it's necessary for |
| 10:27:29 | 16 | choice of law for Group C. |
| 10:27:30 | 17 | THE COURT:  So that -- oh, it is August 27th, you're |
| 10:27:46 | 18 | right, it's in the schedule.  So you all gave me that date. |
| 10:27:50 | 19 | MR. AYLSTOCK:  We did. |
| 10:27:50 | 20 | THE COURT:  And I agreed to it. |
| 10:27:51 | 21 | MR. AYLSTOCK:  And we're prepared to proceed. |
| 10:27:56 | 22 | THE COURT:  It just may not be necessary.  I just need |
| 10:27:59 | 23 | to look at those and I'll find another date.  That's probably a |
| 10:28:08 | 24 | little too soon even for me at this point. |
| 10:28:11 | 25 | MR. AYLSTOCK:  Thank you, Judge. |

10:28:12  1      **THE COURT:**  That's like a week away.  I haven't even

10:28:17  2  looked at the briefings.

10:28:19  3            Anyone else?  Ms. Branscome?

10:28:22  4      **MS. BRANSCOME:**  I have one a clarification question,

10:28:24  5  Your Honor, that I thought about after this morning.

10:28:25  6            Do you have a sense of the sequence -- will you be

10:28:28  7  issuing the wave orders sort of after the period has run from

10:28:32  8  the transition from the administrative docket?  I'm just trying

10:28:35  9  to gauge kind of rough timeframes, and I'm certain our client

10:28:39  10  will be interested in that.

10:28:40  11      **THE COURT:**  The first wave will start as soon as the

10:28:45  12  30 days for the transition, yes, but it's going to start right

10:28:51  13  on the heels.

10:28:53  14      **MS. BRANSCOME:**  Thank you.

10:28:54  15      **THE COURT:**  So, just an observation I guess in regards

10:29:06  16  to the Adkins trial.  And I don't know that I have everybody

10:29:09  17  here that is involved in that trial; if not, please pass this

10:29:13  18  along.

10:29:13  19            But you all have -- those trial teams have been

10:29:22  20  conferring at my request with Judge Herndon, and I know you've

10:29:27  21  been trying to work out issues in advance and leading up to the

10:29:31  22  trial.

10:29:34  23            As far as those conferences in the future -- starting

10:29:39  24  today, any future conferences, the decision-makers on those

10:29:43  25  issues have to be on the call, have to be on the call.  There

10:29:49   1   is no more of "let me get back to you after I talk to my team."

10:29:53   2   Along those same lines for any trial in front of me,

10:29:56   3   including Adkins and the Blum trial and the January trial, any

10:30:07   4   lawyer who is going to have any part appearing in the trial on

10:30:14   5   a given day must be present for the morning conference,

10:30:20   6   physically present in the courtroom for the morning conference.

10:30:24   7   If you are going to participate in any way during the trial

10:30:28   8   that day -- I'm not worried about the next day or the next day,

10:30:31   9   but that day you must be present for the conference or you

10:30:35   10  won't participate.

10:30:39   11  I believe my intent to enter transition orders and

10:31:01   12  wave orders disposes of Agenda Item No. 2 and Agenda Item No.

10:31:08   13  5.

10:31:08   14  Is there anything I need to be updated on as far as

10:31:12   15  the Group B trial status and pretrial deadlines?  That's on the

10:31:16   16  Agenda in No. 3.

10:31:17   17  Ms. Hoekstra?

10:31:18   18  **MS. HOEKSTRA:**  I do not believe so.  It was just a

10:31:20   19  placeholder in part to let you know that the orders have been

10:31:24   20  entered for the parties' agreed deadlines for Adkins and Blum.

10:31:27   21  We're working to come up with a similar deadline timeline for

10:31:30   22  the January trial, and we'll provide that shortly.

10:31:33   23  **THE COURT:**  Okay.  Did you start to say something, Ms.

10:31:36   24  Branscome?

10:31:36   25  **MS. BRANSCOME:**  No, no.  I have the same update that

| | | |
|---|---|---|
| 10:31:39 | 1 | we're still waiting to get the pretrial sequence and order |
| 10:31:42 | 2 | entered for the January trial. |
| 10:31:44 | 3 | THE COURT:  Okay.  I'd like to ask who is trying the |
| 10:31:48 | 4 | Adkins case?  I'd like to know for both sides.  I'll start with |
| 10:31:54 | 5 | the plaintiff and then turn to the defense. |
| 10:31:56 | 6 | MS. HOEKSTRA:  Adam Wolfson, Mike Sacchet, and myself. |
| 10:32:02 | 7 | MR. AYLSTOCK:  Matt Hosen. |
| 10:32:02 | 8 | MS. HOEKSTRA:  Oh, and Matt Hosen.  I'm sorry.  Adam |
| 10:32:05 | 9 | Wolfson, Matt Hosen, Mike Sacchet, and myself. |
| 10:32:05 | 10 | THE COURT:  Okay.  Now, you know I presume from my |
| 10:32:09 | 11 | orders, all of you need to be physically present for the |
| 10:32:12 | 12 | pretrial conference. |
| 10:32:13 | 13 | MS. HOEKSTRA:  Correct.  Robert Cowan will also be |
| 10:32:17 | 14 | part of the team from Bailey Cowan.  And they're all on the |
| 10:32:20 | 15 | Zoom today as well, but they understand they have to be here |
| 10:32:20 | 16 | for the pretrial conference. |
| 10:32:20 | 17 | THE COURT:  Okay, very good. |
| 10:32:21 | 18 | Mr. Nomellini? |
| 10:32:21 | 19 | MR. NOMELLINI:  Your Honor, for defendants, it's Kari |
| 10:32:23 | 20 | Karis, Nick Wasdin, and myself. |
| 10:32:26 | 21 | THE COURT:  And you know the same rule applies as far |
| 10:32:29 | 22 | as pretrial conference? |
| 10:32:30 | 23 | MR. NOMELLINI:  Right. |
| 10:32:31 | 24 | THE COURT:  What about Blum?  Has it been determined? |
| 10:32:38 | 25 | MR. AYLSTOCK:  Mr. Overholtz along with Mr. Monsour. |

10:32:44   1    **THE COURT:**   Mr. Overholtz, will you come forward, if

10:32:47   2    you could shed some light on that for me, please.   Thank you.

10:32:53   3            **MR. OVERHOLTZ:**   Yes.   We're still building the team,

10:32:56   4    but it's definitely going to be Mr. Monsour and myself, also

10:32:59   5    Ms. Krottinger from Mr. Monsour's firm and someone from Mr.

10:33:04   6    Burns's firm.

10:33:05   7            **THE COURT:**   Someone from Mr. Burn's firm?

10:33:05   8            **MR. OVERHOLTZ:**   That's correct.

10:33:05   9            **THE COURT:**   That's Mr. Burns's firm or the Mostyn

10:33:10   10   firm?

10:33:10   11           **MR. OVERHOLTZ:**   The Mostyn firm, yes.

10:33:10   12           **THE COURT:**   The Mostyn firm, okay.   That'll be fine,

10:33:10   13   so just same rules.

10:33:14   14           **MR. OVERHOLTZ:**   Same rules, everyone will be here.

10:33:15   15   Mr. Monsour has a trial scheduled the week before we're going

10:33:19   16   to have the pretrial.   It should be over.   But if something

10:33:23   17   happens, we'll let the Court know.

10:33:25   18           **THE COURT:**   Okay.   Thanks.

10:33:27   19           How about for the defense, the Blum trial?

10:33:29   20           **MR. NOMELLINI:**   For the defense, Your Honor, same

10:33:31   21   issue, we're still building our team and trial schedules.   I

10:33:36   22   would say Mike Brock, Barry Fields, Sierra Elizabeth, and

10:33:42   23   myself.

10:33:42   24           **THE COURT:**   Okay.   And then what about the January

10:33:44   25   trial for you all, the consolidated trial?

| | | |
|---|---|---|
| 10:33:44 | 1 | **MR. AYLSTOCK:**  So -- |
| 10:33:48 | 2 | **THE COURT:**  And just give me your best -- I'm not |
| 10:33:49 | 3 | going to hold you to it.  I'm trying to just get a feel for who |
| 10:33:52 | 4 | is trying these cases. |
| 10:33:54 | 5 | **MR. AYLSTOCK:**  Myself, Mr. Buchanan, Ms. Hutson, and |
| 10:33:57 | 6 | Mr. Pirtle has a case.  And we're still -- we haven't made any |
| 10:34:02 | 7 | final decisions about any of that, but that would be the |
| 10:34:07 | 8 | lineup. |
| 10:34:07 | 9 | **THE COURT:**  And we don't have the -- again, you're |
| 10:34:09 | 10 | still working on those deadlines so we don't have the pretrial |
| 10:34:13 | 11 | conference deadlines set yet for that. |
| 10:34:16 | 12 | **MR. AYLSTOCK:**  We do not.  And we did submit a joint |
| 10:34:19 | 13 | proposal with regard to starting that trial on the 10th and |
| 10:34:22 | 14 | cutting down on the number of hours. |
| 10:34:24 | 15 | **THE COURT:**  Oh, I thought I -- did I not enter an |
| 10:34:26 | 16 | order on that? |
| 10:34:28 | 17 | **MR. AYLSTOCK:**  Not yet, Your Honor. |
| 10:34:29 | 18 | **THE COURT:**  If you all have agreed to it, then I'm |
| 10:34:33 | 19 | fine with it.  As long as both sides know the parameters, |
| 10:34:37 | 20 | that's fine by me starting on the 10th.  I'm sorry, I meant to |
| 10:34:41 | 21 | relay that to you all.  I apologize. |
| 10:34:43 | 22 | **MR. AYLSTOCK:**  Thank you, Judge. |
| 10:34:44 | 23 | **THE COURT:**  And then, Ms. Branscome, are you all |
| 10:34:46 | 24 | trying that case? |
| 10:34:47 | 25 | **MS. BRANSCOME:**  We have not yet worked out -- again, |

10:34:51  1   because it's larger with multiple plaintiffs, so we will let

10:34:53  2   Your Honor know.  But we understand that trial counsel all need

10:34:55  3   to be there for the pretrial conference.

10:34:57  4        **THE COURT:**  Okay, very good.

10:35:00  5        Then Item No. 4 pertains to the motion to dismiss.

10:35:06  6   And I don't mind hearing about this.  I've read the motion,

10:35:10  7   I've read the response, and then I think a reply is due today

10:35:14  8   that I don't have.

10:35:15  9        **MR. AYLSTOCK:**  I believe the reply was filed last

10:35:19  10  evening.

10:35:19  11       **MR. BURNETT:**  Riley Burnett for Mr. Lopez.  We filed

10:35:21  12  that reply yesterday afternoon.

10:35:24  13       **THE COURT:**  I'm sorry, I have not seen it.  I don't

10:35:26  14  know that I need argument on this, to be honest.

10:35:29  15       Is there something in particular someone wanted to

10:35:33  16  point out to me that I can't glean through the briefing?  I

10:35:39  17  know you put it on the agenda so -- anybody?

10:35:43  18       **MR. AYLSTOCK:**  Only to the extent you wanted to hear,

10:35:47  19  Mr. Burnett is certainly here and ready to --

10:35:48  20       **MR. BURNETT:**  I'm hear to discuss with the Court, if

10:35:52  21  the Court desires it.  If the Court wants to rely on the

10:35:56  22  briefs, that's fine.

10:35:57  23       **THE COURT:**  No, come forward, and then I'll hear from

10:36:01  24  Mr. Nomellini.

10:36:03  25       **MR. BURNETT:**  Thank you, Your Honor.

10:36:04   1          **THE COURT:**  You came all the way for this, then

10:36:06   2    certainly I'll hear from you.

10:36:06   3          **MR. BURNETT:**  I represent Kevin Lopez.  Mr. Lopez has

10:36:10   4    decided that he no longer wants to prosecute his lawsuit.

10:36:13   5    We've ask the Court to dismiss his case at his request.

10:36:17   6          Given the status of the case -- an answered has been

10:36:20   7    filed, it's discretionary with the court as to whether or not

10:36:23   8    the Court would grant it with prejudice or without prejudice.

10:36:27   9    We're asking the Court to grant the motion without prejudice,

10:36:31   10   and that is because Mr. Lopez, under the standard, has not

10:36:34   11   displayed any delay or willful conduct.

10:36:36   12         He's participated in the discovery process.  Five

10:36:40   13   fact-specific depositions have been taken.  No substantive

10:36:45   14   motion practice has occurred.  No dispositive motions have

10:36:48   15   occurred.  The plaintiff have designated experts, but the

10:36:50   16   defendants have yet to do so.

10:36:52   17         I spoke with Kevin yesterday to confirm what he wanted

10:36:55   18   to do.  And he's -- basically he doesn't want to move forward

10:37:00   19   because he doesn't want to relive some of the events of his

10:37:04   20   past -- his childhood, his psychological treatment, some of his

10:37:08   21   experiences overseas.  And I confirmed that with him yesterday.

10:37:13   22   In our reply -- I'm telling you what's in our reply.  It's this

10:37:16   23   simple, this basic, this short.

10:37:18   24         I read to him the reply, and he said that is my

10:37:21   25   choice, I do not wish to proceed, and I'm asking that you

| | | |
|---|---|---|
| 10:37:23 | 1 | dismiss my case.  And so, on his behalf, I'm asking that. |
| 10:37:26 | 2 | The remaining issue is with or without prejudice.  We |
| 10:37:31 | 3 | suggest it should be without. |
| 10:37:33 | 4 | The other issue is that the defendants asked for cost. |
| 10:37:36 | 5 | We don't think that his behavior or conduct warrants the |
| 10:37:39 | 6 | imposition of cost. |
| 10:37:41 | 7 | **THE COURT:**  But is that a consideration for me under |
| 10:37:43 | 8 | the Eleventh Circuit law for cost, his behavior? |
| 10:37:48 | 9 | **MR. BURNETT:**  Well, the issue for costs, I do not |
| 10:37:50 | 10 | know.  His conduct with regard to with or without prejudice, |
| 10:37:51 | 11 | it's certain his conduct and our conduct -- costs I do not |
| 10:37:57 | 12 | know.  But in the event the Court decides that she's |
| 10:38:00 | 13 | considering cost, we would ask you to consider what occurred in |
| 10:38:03 | 14 | the *Potenberg* case. |
| 10:38:05 | 15 | In that particular case, the case was dismissed |
| 10:38:08 | 16 | without prejudice.  But as a condition precedent to refiling, |
| 10:38:12 | 17 | the plaintiff would have to pay the defendants' cost. |
| 10:38:15 | 18 | So, if the Court considers or believes that costs are |
| 10:38:22 | 19 | warranted, we ask that it be only assessed to the extent that |
| 10:38:25 | 20 | Mr. Lopez comes back to the Court and asks for his case to be |
| 10:38:30 | 21 | reinstated or refiled.  Thank you, Your Honor, for your time. |
| 10:38:33 | 22 | **THE COURT:**  Thank you. |
| 10:38:34 | 23 | Mr. Nomellini? |
| 10:38:35 | 24 | **MR. NOMELLINI:**  Thank you, Your Honor.  Thank you, |
| 10:38:40 | 25 | Judge.  Let me start with costs because I think Your Honor hit |

| | | |
|---|---|---|
| 10:38:44 | 1 | on exactly the right issue.  The test is that costs are awarded |
| 10:38:49 | 2 | to the, quote, "prevailing party."  And whether it's with |
| 10:38:55 | 3 | prejudice or without whether, 3M would be the prevailing party. |
| 10:38:59 | 4 | Your Honor can look to the *Hendrix vs. Evenflo* case |
| 10:39:03 | 5 | out of this district, 2007 WL 3520815. |
| 10:39:10 | 6 | Moreover, the Eleventh Circuit has said that there is |
| 10:39:14 | 7 | a strong presumption in favor of awarding costs to the |
| 10:39:18 | 8 | prevailing party -- when a plaintiff voluntarily dismisses his |
| 10:39:22 | 9 | or her claim, the defendants are considered the prevailing |
| 10:39:26 | 10 | party. |
| 10:39:26 | 11 | And the *Yellow Pages vs. Ziplocal* case, 846 F.3d 1159 |
| 10:39:34 | 12 | Eleventh Circuit says "Not awarding costs to the prevailing |
| 10:39:38 | 13 | party is in the nature of a court penalty to the prevailing |
| 10:39:43 | 14 | party."  And there's nothing that we think would merit such a |
| 10:39:47 | 15 | penalty here.  So that's on the issue of costs, Your Honor. |
| 10:39:50 | 16 | With respect to with or without prejudice, I |
| 10:39:54 | 17 | appreciate counsel's arguments on that.  Counsel has cited in |
| 10:39:59 | 18 | the briefs changing jobs and moving to another state and then |
| 10:40:03 | 19 | the potential for mental health issues. |
| 10:40:08 | 20 | There's no declaration or affidavit that's been |
| 10:40:14 | 21 | provided, no expert testimony that's been provided.  Simply |
| 10:40:18 | 22 | what counsel has said/reported about talking to his client. |
| 10:40:24 | 23 | And Your Honor will recall, because Your Honor cited |
| 10:40:28 | 24 | it in the *Burgus* case, the *FEMA Trailer* case from the Fifth |
| 10:40:35 | 25 | Circuit, 628 F.3d 157, "Courts must be exceedingly wary of mass |

10:40:41  1    litigation in which plaintiffs are unwilling to move their

10:40:44  2    cases to trial."

10:40:46  3         And that court case also says, "When a plaintiff files

10:40:52  4    any court case, however, sitting back is no option.  He must be

10:40:55  5    prepared to undergo the costs psychological, economic and

10:41:00  6    otherwise that litigation entails."

10:41:04  7         Particularly, Your Honor, as we're going forward with

10:41:07  8    vetting, plaintiffs are making decisions about whether to move

10:41:13  9    from the administrative docket, incur the filing fees, this

10:41:18  10   consideration is important, that whenever a plaintiff files a

10:41:22  11   court case, they have to be prepared to go to trial

10:41:25  12   notwithstanding the psychological, economic, and other costs.

10:41:29  13   And if plaintiffs are allowed to dismiss their case, it is

10:41:33  14   significant legal prejudice to 3M just in terms of the status

10:41:37  15   of where things are.

10:41:38  16        **THE COURT:**  Just so no one -- I'm sorry, Mr.

10:41:40  17   Nomellini, for interrupting you.  But just so those who weren't

10:41:44  18   in the preconference meeting understand and are not confused by

10:41:48  19   this, if a case on the administrative docket does not move to

10:41:52  20   the active docket and is dismissed, that is without prejudice.

10:41:56  21        **MR. NOMELLINI:**  Understood, Judge.

10:41:58  22        **THE COURT:**  And I'm not speaking about Mr. Lopez.

10:42:00  23   He's in a different category, obviously.

10:42:02  24        **MR. NOMELLINI:**  Yes, I do recall that, Your Honor.

10:42:06  25   And so, for Mr. Lopez, we're in a situation where we've already

1  gone through fact discovery.

2          THE COURT:  What were the depos that have been taken,

3  do you know?

4          MR. NOMELLINI:  I think, Your Honor, that there were

5  six depositions -- fact depositions.  And Mr. Beall is here.  I

6  believe he took Mr. Lopez's -- I believe he took four

7  depositions.

8          MR. BURNETT:  I can answer that, if you would like.

9          THE COURT:  So you're saying there were five, Mr.

10  Burnett?

11          MR. BURNETT:  That's correct.  The plaintiff was

12  deposed as well as his girlfriend/his previous fiancée, a

13  fellow soldier, his primary care doctor, and a physician's

14  assistant were deposed.  Five depositions.  I believe most of

15  them were by Zoom.

16          THE COURT:  All right.

17          MR. NOMELLINI:  And then, Your Honor, expert reports

18  were prepared and served by plaintiffs.  I think the notice of

19  dismissal came a few days before our expert reports were due,

20  so we had prepared drafts of our expert reports.

21          THE COURT:  All right.  I'm going to take this under

22  advisement and I will issue a decision shortly.

23          MR. NOMELLINI:  Thank you, Judge.

24          MR. BURNETT:  Thank you, Your Honor.

25          THE COURT:  Thank you.

| | | |
|---|---|---|
| 10:43:27 | 1 | Now, there's no question I'm going to grant the |
| 10:43:29 | 2 | dismissal.  The question is with or without prejudice and |
| 10:43:32 | 3 | whether costs will be awarded to the defendant.  And so, for |
| 10:43:35 | 4 | Group C purposes, Mr. Montero is the alternate, and so he would |
| 10:43:40 | 5 | then move in to Mr. Lopez's case.  And it just so happens |
| 10:43:48 | 6 | they're both court random picks.  It worked out again. |
| 10:43:59 | 7 | Anything else we need to discuss today? |
| 10:44:01 | 8 | MR. AYLSTOCK:  Not from the plaintiffs. |
| 10:44:01 | 9 | THE COURT:  Anyone else? |
| 10:44:03 | 10 | MS. BRANSCOME:  Not from us. |
| 10:44:04 | 11 | THE COURT:  Okay.  Thank you. |
| 10:44:04 | 12 | Judge Jones, anything? |
| 10:44:07 | 13 | JUDGE JONES:  I have nothing to add.  Thank you. |
| 10:44:10 | 14 | THE COURT:  Judge Herndon? |
| 10:44:12 | 15 | JUDGE HERNDON:  Nothing further.  Thank you very much. |
| 10:44:14 | 16 | THE COURT:  All right.  Then I know I'll be seeing |
| 10:44:16 | 17 | those involved in the *Adkins* trial coming up.  We have a |
| 10:44:22 | 18 | *Daubert* hearing, I believe.  Maybe we're going to have -- in |
| 10:44:25 | 19 | Group C we'll have some argument on choice of law.  I don't |
| 10:44:28 | 20 | know yet, I need to look at that.  But otherwise, I think that |
| 10:44:31 | 21 | would be the next time we would be together in court would be |
| 10:44:35 | 22 | for that *Daubert* hearing. |
| 10:44:37 | 23 | Is that right? |
| 10:44:38 | 24 | MR. AYLSTOCK:  That's correct, Your Honor. |
| 10:44:39 | 25 | THE COURT:  Okay, very good.  Well, you all have a |

10:44:39

1    nice rest of the day, thank you very much.  We'll be in recess.

2                    *(Proceedings concluded at 10:44 a.m.)*

3                    --------------------

4    *I certify that the foregoing is a correct transcript from the*
     *record of proceedings in the above-entitled matter.  Any*
5    *redaction of personal data identifiers pursuant to the Judicial*
     *Conference Policy on Privacy are noted within the transcript.*
6

7

8    *s/Donna L. Boland*                            *8-20-2021*
     *Donna L. Boland, RPR, FCRR*                   *Date*
9    *Official Court Reporter*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25