UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Michele Blum*, 7:20cv122 *Marcus Hensley*, 7:20cv093 *Ronald E. Sloan*, 7:20cv001 *William Wayman*, 7:20cv149 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**[1]

This Order addresses the parties' respective expert challenges to Cloie B. Johnson and Neil Bennett, and resolves the parties' omnibus motions to exclude these experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**A. Cloie B. Johnson, M.Ed., A.B.V.E., C.C.M.**

Cloie Johnson is a Certified Case Manager and Diplomate with the American Board of Vocational Experts with a master's degree in Education and substantial experience in the field of vocational rehabilitation. Johnson used the Rehabilitation Plan, Access to the Labor Market, Placeability, Earning Capacity, and Labor Force

---

[1] As with the Court's prior Orders addressing the parties' omnibus motions to exclude experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), this Order assumes the parties' familiarity with the nature of this multidistrict litigation, the claims and defenses, and the current evidentiary record, and sets out only what is necessary to explain the instant rulings.

Participation ("RAPEL") model to evaluate Plaintiffs Adkins, Blum, Sloan, and Wayman's earning capacities and worklife expectancies but for their noise-induced hearing loss and/or tinnitus.[2] Defendants do not dispute Johnson's qualifications as a vocational expert; however, they do object to her testimony on reliability grounds. *See* Def. Mot., ECF No. 1864 at 51 to 60. Specifically, Defendants argue that Johnson's opinions are based on incorrect or unreproducible data. Defendants also claim that Johnson does not articulate a reliable methodology and that her conclusions are not tied to relevant facts.

Defendants argue that Johnson's opinions concerning Blum, Sloan, and Wayman's access to the labor market is unreliable because Johnson based her opinion on incorrect data. Johnson makes the following statement in each of her reports:

> Noise intensity levels of 'very quiet' or 'quiet' account for only 7.36% of occupations; and hearing requirements of 'never' or 'occasional' account for only 8% of occupations. [Plaintiff] has lost access to over 90% of occupations based on his hearing impairment alone.[3]

---

[2] Adkins did not seek damages for diminished earnings capacity at trial. Accordingly, Johnson's opinions regarding Adkins' worklife expectancy and future earnings capacity are no longer relevant and the Court considers challenges to those portions of Johnson's Adkins opinion moot.

[3] In Blum, Johnson's opinion varies slightly, stating:

> Noise intensity levels of 'very quiet' or 'quiet' account for only 7.36% of occupations; and hearing requirements of 'never' or 'occasional' account for only 8% of occupations. Ms. Blum had lost access to over 90% of occupations pre-injury based on her *conductive* hearing impairment alone, *however this loss of access is further exacerbated by the tinnitus and residual sequelae for which there is no remedy.*

*See* Johnson Rep. (Sloan), ECF No. 1864-36 at 18; *and* Johnson Rep. (Wayman), ECF No. 1864-37 at 17. The support for Johnson's statement that 8% of occupations "never" or "occasional[ly]" include hearing requirements comes from the Revised Handbook of Analyzing Jobs. *See* Johnson Dep., ECF No. 1864-38 at 13. However, rather than utilizing data on occupations with hearing requirements, as Johnson represents in her reports, Johnson mistakenly considered occupations with *handling* requirements instead of occupations with *hearing* requirements. *See id.* at 23-26 ("But I did definitely make a typographical error in using the HA instead of the HE"). After considering the correct data, Johnson acknowledged that 72% of occupations "never" or "occasional[ly]" include hearing requirements according to the Revised Handbook of Analyzing Jobs rather than the 8% that she reported. *See id.* Due to this error, Johnson will not be permitted to opine that Plaintiffs "lost access to over 90% of occupations" based on the number of occupations with hearing requirements because the basis for that opinion is the mistaken conclusion that according to the Revised Handbook of Analyzing Jobs only 8% of occupations "never" or "occasional[ly]" include hearing requirements. *See U.S. v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997) ("Opinions derived from erroneous data are appropriately excluded."). However, according to Johnson, her opinion regarding

---

*See* Johnson Rep. (Bum), ECF No. 1864-40 at 18 (emphasis added).

access to the labor market is based on more than just the percentage of occupations with hearing requirements as reported in the Revised Handbook of Analyzing Jobs. *See* Johnson Dep., ECF No. 1864-38 at 26-28.  Because Johnson also bases her opinion on the number of occupations with certain noise intensity levels, she can still offer the opinion that Plaintiffs will lose access to 90% of occupations due to their hearing impairments, and Defendants can test this conclusion on cross-examination.  *See Quiet Tech. DC-8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003).

Defendants argue that Johnson's opinion is also unreliable because she could not define "Very Quiet," "Quiet," "Moderate," "Loud," or "Very Loud," occupations as defined in Revised Handbook of Analyzing Jobs, which means she could not apply those categories of occupations to the Plaintiffs' employment. Defendants do not question the reliability of the opinion based on the specific data set used by Johnson, rather Defendants object to Johnson's specific application of that data set to Plaintiffs' facts.  The Court's role as gatekeeper does not require a determination as to whether an expert's testimony is correct, rather, the Court must decide by a preponderance of the evidence, whether the testimony is reliable.  *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Defendants' concerns go to the weight of Johnson's opinions rather than their

admissibility, and Defendants can test Johnson's opinions on cross-examination and through competing expert testimony. *See Quiet Tech.*, 326 F.3d at 1345.

Defendants also argue that Johnson fails to articulate a reliable methodology for her conclusions that Sloan will sustain a minimum of 10% loss of earning capacity due to his hearing injuries and that Blum will sustain a 10% loss of earning capacity due to her conductive hearing loss and a 3-5% reduction due to her sensorial hearing loss and tinnitus. *See* Def. Mot., ECF No. 1864 at 55. Defendants claim that Johnson's opinions that Sloan and Blum will suffer a certain percentage of future lost earnings are unreliable because Johnson failed to articulate how she arrived at the percentage of losses. Defendants argue the Johnson merely relied on generalized statements that her opinions are based on the totality of the information available and her experience in the field, which renders her opinion unreliable. The Court disagrees.

Using Blum as an example, Johnson does cite to her own "education, training, knowledge, clinical experience, and judgement" in her deposition testimony as a part of the basis for her opinion that Blum will suffer a loss of earning capacity. *See* Def. Mot., ECF No. 1864-39 at 53. Defendants focus on this portion of Johnson's deposition testimony to support their motion; however, Johnson also cites to her review of the record, her interview of Blum, and her consultation with the medical experts as support for her opinion. *See id.* Additionally, Johnson's expert reports

clearly contain an analysis for each Plaintiffs' post-injury earnings capacity, in which she cites to several papers and studies containing data on the employability and earnings capacity of those suffering from a hearing-based disability. *See* Johnson Rep. (Sloan), ECF No. 1864-36 at 15-18; Johnson Rep. (Blum), ECF No. 1864-40 at 15-18. To the extent Defendants disagree with Johnson's analysis, find it inadequate, or question how she applied the findings from the studies she cited, records she reviewed, and interviews she conducted, to each specific plaintiff, these criticisms go to the weight of her testimony rather than its reliability. *See Quiet Tech.*, 326 F.3d at 1345 ((citing *Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir.2002) (holding that "whatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony")).

Defendants also argue that Johnson's vocational opinions are unreliable because she does not consider Plaintiffs' non-hearing related ailments or injuries in her vocational and future earning capacity assessments. In response, Plaintiffs say that Johnson did in fact consider many of the items that Defendants accuse her of ignoring. To be sure, Johnson will need to explain her consideration of each Plaintiffs' specific circumstances and injuries if called to testify; however, the criticism that Johnson should have included additional information in her opinions goes to the weight of those opinions, not their admissibility. *See Fox v. Safeco Ins. Co. of Ill.*, 2018 WL 792093, at *4 (M.D. Fla. Jan. 23, 2018) (a party's argument

that a vocational rehabilitation expert should have considered additional information is a question of weight and not admissibility).

Last, Defendants argue that Johnson did not use a replicable methodology in developing Plaintiffs' life care plan costs. Johnson has stated that in determining the costs associated with Plaintiffs' future medical and vocational needs, she identified vendors and medical providers in each Plaintiffs' geographic area and solicited cost information for certain products. *See* Johnson Dep., ECF No. 1864-38 at 54-59. Johnson then used the information from these vendors and providers to calculate an average amount, which is included in her report. Johnson did not take notes of her calls, she does not have the names of the individuals she spoke with, nor does she share the specific calculations that she performed, as she no longer has that information. Defendants argue that this renders her methodology non-replicable. The Court disagrees. Johnson explained her process, and she included in her report the names of the organizations from whom she solicited the information. Defendants were free to contact those organizations, or other similarly situated organizations, and compare the results to Johnson's report. Accordingly, Defendants' argument goes entirely to the weight of Johnson's opinions. *See Quiet Tech.*, 326 F.3d at 1345. Subject to the limitation discussed above, Johnson's opinions are otherwise admissible.

## B. Neil Bennett, M.E.D., CRC, FVE, CEA

Neil Bennett is a Certified Rehabilitation Counselor (CRC), Forensic Vocational Expert (FVE), and a Certified Earnings Analyst (CEA) with a master's degree in Educational Counseling. Bennett prepared an assessment for each of Adkins, Blum, Sloan and Wayman calculating the present value of lost wages earning capacity and the cost of future medical and personal care.[4] Bennett based his analyses on the vocational assessment and life care plan prepared by Cloie Johnson. Defendants argue that Bennett's lost earning capacity and worklife expectancy opinions are unreliable because he relies on Johnson's pre-injury wage-earning capacity, lost earning capacity, and loss of worklife expectancy opinions, which Defendants have separately argued are unreliable. Additionally, Defendants challenge the reliability of the discount rate used by Bennett to calculate the present value of Plaintiff's purported damages, and Defendants also challenge the fit between Bennett's calculations and each Plaintiffs' factual circumstances. Defendants do not dispute Bennett's qualifications.

Defendants first contend that Bennett relied entirely on Johnson's reports for his lost earnings opinions, and therefore, given the unreliability of Johnson's

---

[4] Adkins did not seek damages for diminished earnings capacity at trial. Accordingly, Bennett's opinions regarding Adkins' worklife expectancy and future earnings capacity are no longer relevant and the Court considers challenges to those portions of Bennett's Adkins opinion moot.

opinions, Bennett's are unreliable as well. Experts are permitted to rely on the opinions of other experts. *See Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 607 n.75 (N.D. Fla. 2009) ("An expert may properly rely on the opinion of another expert."), *aff'd*, 609 F.3d 1183 (11th Cir. 2010). As a result, to the extent that Bennett's opinions are based on Johnson's opinions that have not been separately excluded by the Court under *Daubert* or Rule 702, Bennett can rely on those opinions.

Defendants also argue that Bennett's below-market discount rate calculation is unreliable because he used the Employer Cost Index ("ECI") as a measure of inflation in calculating the present value of future lost earnings rather than the Consumer Price Index ("CPI"). The Court disagrees. Defendants contend that because Bennett claims to rely on *Jones & Laughlin Steel Corp. v. Pfeiffer* for his below-market discount rate methodology, Bennett must measure inflation by the CPI rather than the ECI. However, *Pfeiffer* does not specify how inflation must be measured for purposes of calculating a discount rate. *See generally, Jones & Laughlin Steel Corp. v. Pfeiffer*, 462 U.S. 523 (1983). Additionally, Defendants neither articulate why CPI is a more reliable measure for inflation than ECI nor do they cite to any case law or guidance to support their contention that ECI is unreliable. Defendants' sole critique appears to be that Bennett's use of ECI resulted in a higher damages number than if he had used CPI. Notably, Defendants do not

challenge Bennett's methodology, which is the use the of a below-market discount rate in order to calculate the present value of future lost earnings; rather, Defendants challenge a specific input in Bennett's calculation. This challenge goes to the weight, not reliability, of Bennett's opinions. *See Quiet Tech.*, 326 F.3d at 1345 ("The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination.").

Defendants argue that Bennett's projection of Sloan and Blum's future lost earnings based on each Plaintiff's social security retirement age is unreliable because Johnson opined that each Plaintiff would experience a shorter worklife due to their alleged disability. Defendants also argue that Bennett's use of the social security retirement age is "independently flawed" because it assumes Plaintiffs will not become disabled, involuntarily unemployed, or voluntarily retire before the age of 67. Def. Mot., ECF No. 1864 at 64. Defendants do not cite any case law to support the notion that Bennett was required to rely on Johnson's opinion. In fact, while experts are permitted to rely on another expert's opinions, "blind reliance" is prohibited. *See In re Polypropylene Carpet Antitrust Litig.*, 93 F.Supp.2d 1348, 1357 (N.D. Ga. 2000) ((citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir.1999) (finding blind reliance by an expert on another expert's opinions demonstrates flawed methodology under *Daubert*)). When questioned about his use of the social security retirement age during his deposition, Bennett explained the basis for his

decision, which consisted of more than a "blind reliance" on Johnson's report. *See* Pl. Resp. Mot., ECF No. 1902-48 at 5. While Defendants also do not cite any case law to support the notion that the social security retirement age is an unreliable benchmark for calculating worklife expectancy, Plaintiffs cite to several cases in which courts have admitted testimony from experts who calculated worklife expectancy using the social security retirement age. *See e.g., Franco v. Bos. Sci. Corp.*, 2016 WL 3248505, at *19-20 (S.D.W. Va. June 13, 2016); *Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, 2013 WL 351546, at *25 (D.D.C. Jan. 29, 2013), amended, 2013 WL 653921 (Mar. 13, 2013); *and Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48, 80 (D.D.C. 2011). Bennett's data inputs for his calculations and methodology are clear in his report and deposition testimony. Accordingly, any weaknesses perceived by Defendants in Bennett's calculations, such as his use of the social security retirement age, can be easily tested on cross-examination or through competing expert testimony. *See Quiet Tech.*, 326 F.3d at 1345.

Defendants challenge Bennett's calculation of Blum's earnings arguing that Bennett incorrectly used the average earnings for men in order to calculate Blum's earnings, rather than the average earnings for women, which renders Bennett's opinions unreliable. However, these objections go to the weight of Bennett's conclusions rather than their admissibility. *See id.* That Defendants would have

calculated Blum's earnings differently does not by itself render Bennett's opinions unreliable. Defendants are free to offer an alternative calculation and question Bennett's conclusions on cross-examination.

Defendants also argue that Bennett's calculation of Wayman's lost earnings is unreliable because Bennett submitted an amended report in which he increased his earnings calculation for Wayman but Bennett was unable to explain the reasons for this change during his deposition. Specifically, Defendants questioned how Bennett's estimated pretrial damages for Wayman could increase in the second report considering that Wayman's pretrial wages increased by $900. According to Defendants, this increase in pretrial wages should have resulted in a corresponding decrease in damages. *See* Def. Mot., ECF No. 1864 at 66-67. Plaintiffs responded by explaining that Bennett's original Wayman report mistakenly undercounted one year of Wayman's anticipated worklife. *See* Pl. Resp. Mot., ECF No. 1902 at 69. Thus, according to Plaintiffs, the increase in Bennett's earnings calculation in Wayman's amended report was because it reflected an additional year of damages. *See id.* Defendants' arguments challenge the accuracy of Bennett's results, rather than the validity of his underlying methods. Accordingly, Defendants' arguments go to the weight of Bennett's opinions rather than their admissibility. *See Quiet Tech.*, 326 F.3d at 1345 ((citing *Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir. 2002) (holding that "whatever shortcomings existed in [the expert's]

calculations went to the weight, not the admissibility, of the testimony")). Thus, Bennett's damages opinions are admissible.

Accordingly,

1. The motion to exclude Johnson's expert opinions are **GRANTED in part and DENIED in part**.

2. The motion to exclude Bennett's expert opinions in their entirety are **DENIED**.

**SO ORDERED**, on this 13th day of October 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**