**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-MD-2885-MCR-GRJ |
| This Document Relates to: | Judge M. Casey Rodgers |
| *Guillermo Camarillorazo* Case No. 7:20-cv-00098 | Magistrate Judge Gary R. Jones |
| *Theodore Finley*, Case No. 7:20-cv-00170 | **CONFIDENTIAL - FILED UNDER SEAL** |
| *Carlos Montero*, Case No. 7:20-cv-00067 | |
| *Joseph Palanki*, Case No. 3:19-cv-02324 | |
| *Carter Stelling*, Case No. 7:20-cv-00143 | |
| *Ronald E. Sloan*, Case No. 7:20-cv-00001 | |
| *William Wayman*, Case No. 7:20-cv-00149 | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' EXPEDITED MOTION TO AUTHORIZE REMOTE TESTIMONY PURSUANT TO RULE 43(a) FROM 3M FACT WITNESSES ELLIOTT BERGER AND BRIAN MYERS

For the reasons described below, Defendants respectfully request that the Court deny Plaintiffs' motion to authorize the remote testimony of Elliott Berger and Brian Myers in the upcoming, above-captioned trials.

## MEMORANDUM OF LAW

Plaintiffs again attempt to compel the remote, live testimony of Elliott Berger and Brian Myers, though this time for not one, but six bellwether trials. But Rule

43(a) authorizes remote testimony only "[f]or good cause in compelling circumstances," which is wholly absent here.  Indeed, as this Court has already noted, "the standard the Court needs to address is whether there is exceptional or compelling circumstances in this case," as the rules do not countenance contemporaneous transmission under Rule 43 "simply [] be[ing] the default mode for how testimony is going to be presented" in these bellwether actions.  Yet a "default" in favor of testimony by contemporaneous transmission is precisely what Plaintiffs now request across all remaining bellwether actions.  It would be one thing if Plaintiffs were asking this Court to authorize remote testimony outside the bounds of its subpoena power because these witnesses' unavailability was unforeseeable and thus Plaintiffs could not obtain their testimony *at all*.  But in this MDL, Berger and Myers sat for videotaped depositions totaling *nine days*—specifically to secure and preserve trial testimony.  And Plaintiffs have seen fit to use Myers' deposition testimony, in particular, throughout the course of the bellwether trials to date.  There simply is no "good cause in compelling circumstances" that justify compelling their remote testimony for the next *six* bellwether trials, especially when they have already sat for videotaped depositions to secure and preserve their sworn testimony.

## I.   BACKGROUND

From the outset of this MDL, the parties knew that the overwhelming majority of witnesses would be non-parties, including current and former 3M and Aearo

employees, who reside and work more than 100 miles from the courthouse. To avoid multiple live appearances by the same witness and preserve the testimony of witnesses who may be unavailable to testify at trial, the Court and parties developed and implemented comprehensive video deposition procedures to secure testimony for use in MDL bellwether trials. *See* MDL Dkt. 554 (Pretrial Order No. 13 Deposition Protocol). Through this process, Plaintiffs were allotted 40 days of depositions and opted to use more than 20% of those days to depose the two witness who are the subject of their present motion, deposing Berger for six days and Myers for three.

Pursuant to the Court's Pretrial Order, the parties conducted these videotaped depositions specifically to secure and preserve trial testimony. The Order required them to "be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at a trial." MDL Dkt. 554 at 14. Accordingly, the deposition transcripts are replete with references to what the jury would be seeing at trial.[1]

---

[1]   *See e.g.*, Ex. 1 (10/18/19 Myers Dep. Tr.) at 13:6-9 ("I wanted to introduce you a little bit to the jury"); *id.* at 17:5-7 ("Mr. Myers, we're showing the jury a copy of Deposition Exhibit 1…"); *id.* at 47:4-6 ("And then so the jury is clear, Aearo was then purchased by 3M in 2008"); *id.* at 48:14-15 ("I've handed you Exhibit 3, and we're showing the jury"); *see, e.g.*, Ex. 9 (B. Berger 30(b)(6) Dep. Tr.) at 44:17-23 ("Well, that would prevent the jury from being able to read and see documents . . . to help the jury understand and see the language or the drawings or whatever is in the document"); *id.* at 72:14-15 ("And so if we look at this section . . . for the jury

Berger was deposed by Plaintiffs for one day in November 2019, three days in December 2019, again in September 2020, and again in December 2020, in addition to sitting for depositions in 2013 and 2015 for the Moldex litigations that the Court has found to be admissible.[2]  Similarly, Plaintiffs have deposed Myers for three full days, introducing 129 exhibits and eliciting over 1,300 pages of sworn testimony.  *See id.*; Ex. 1 (10/18/2019 Myers Dep. Tr.); Ex. 3 (12/12/19 Myers Dep. Tr.); Ex. 4 (12/13/19 Myers Dep. Tr.). Plaintiffs have also affirmatively designated the testimony from Myers' 2015 deposition in the Moldex litigation.

Consistent with Court's pretrial order, Plaintiffs have relied on Myers' deposition testimony in prior bellwether trials, even when Defendants offered his live testimony.  In the first bellwether trial (*EHK*), Myers was available for live testimony, yet three days before he was scheduled to take the stand, Plaintiffs "shifted [their] trial strategy" and decided to play his deposition instead.  *Camarillo* Dkt. 57 at 3.  In the second bellwether trial (*McCombs*), Plaintiffs did not call Myers either live or via deposition designation.  And in the third bellwether trial (*Baker*), Plaintiffs sought to compel his testimony "[v]ia [r]emote [l]ink" from Minnesota,

_____

to see . . .."); *id.* at 210:17-19 ("If you are going to stipulate that I can play different parts of different depositions in order for the jury--").

[2]   Defendants maintain their objection to the admissibility of the Moldex depositions for the same reasons asserted in previous bellwether trials.

Ex. 5 (5/12/21 Myers Subpoena), but the Court denied Plaintiffs' motion because there was "not good cause in compelling circumstances for his remote testimony," *Baker* Dkt. 133 at 15.  Plaintiffs then proceeded to play portions of his deposition during trial.  *See* 6/15/21 Trial Tr. at 271:21-309:14.

Plaintiffs have been content to play Myers' deposition testimony at the remaining bellwether trials to date.  In the fourth trial (*Adkins*), the parties stipulated that Plaintiffs would "not to seek to compel live testimony of any other current or former Aearo or 3M employees, pursuant to Rule 43 or otherwise"—a stipulation that included Myers.  *Adkins* Dkt. 73, Ex. H at 1-2.  Plaintiffs again played portions of his deposition instead.  *See* 9/27/21 Trial Tr. at 228:8-256:6.  And in the bellwether trial that began this week (*Blum*), Plaintiffs agreed to the same, stipulating not to call Myers live and designating portions of all three days of his deposition. *Blum* Dkt. 69, Ex. G at 1-2; *Blum* Dkt. 69 at 13-14.

To be sure, Berger has testified at prior trials, and this Court permitted his remote testimony in the *Baker* trial.  But in so ordering, the Court made clear that remote testimony is not going to be the "default" for "how testimony is going to be presented" in the bellwether trials.  5/27/2021 *Baker* Hrg. Tr. at 16.  As the Court explained in *Baker*:

> Because the standard here, clearly under Rule 43, is not simply—I don't know how many more bellwether trials we are going to have, but it just means every witness that's more than a hundred miles away is going to testify by contemporaneous transmission. *And certainly that's not what*

> *the rule contemplates.* And that's not what I am going to rule, and I guarantee you Judge Rodgers does not complete that as bellwether trials with having every witness testify from someplace else.

*Id.* (emphasis added).  In addition to not being a "default" in general, the Court was also clear it was not the default for Berger either.  As the Court explained, its ruling allowing Berger's remote testimony in *Baker* "d[id] not mean" that in "every bellwether trial [] Berger is going to have to appear by contemporaneous transmission."  *Id.* at 54.  To the contrary, the Court would consider any future requests on a "case by case basis."  *Id*.  Now, unlike in *Baker*, Berger is not even consulting for Defendants, and in fact has retained his own counsel.

## II.   LEGAL STANDARD

Rule 43(a) establishes, as a general matter, that witnesses must deliver their testimony live and in open court, but provides an exception to this general rule:  "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."   Fed. R. Civ. P. 43(a).  Rule 43(a) is an "exception" that should be invoked "cautiously."   Fed. R. Civ. P. 43 advisory committee's note (1996 amendment); *see also U.S. v. Thompson*, 599 F.3d 595, 600-01 n.4 (7th Cir. 2010) ("videoconferencing is the exception rather than the rule"). Accordingly, it is typically invoked by available witnesses who wish to testify remotely due to ill health or other unforeseen circumstances that make traveling impracticable. *See id.*

advisory committee's note (1996 amendment) (discussing "unexpected reasons, such as accident or illness").  Relatedly, Federal Rule of Civil Procedure 45 limits the reach of a court's trial subpoena powers to "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).

## III.   ARGUMENT

Plaintiffs cannot demonstrate "good cause in compelling circumstances" to invoke Rule 43(a)'s exceptional "contemporaneous transmission provision" for the testimony of Berger and Myers.  Fed. R. Civ. P. 43.  Plaintiffs' present motion is devoid of any compelling argument that Berger's and Myers' unavailability is unexpected or that their live testimony is necessary when ample videotaped testimony is available.  Plaintiffs did not call Myers during the first bellwether trial, despite being offered the opportunity to do so; did not call him at all during the second trial; were unable to show good cause compelling his live testimony for the third bellwether trial; and did not attempt to seek his live testimony in the fourth or fifth trials.  That history belies any suggestion that his live testimony is necessary for the next six trials.  This motion is on even weaker ground than Plaintiffs' motion in *Baker* and should be denied for all the same reasons and more.[3]

---

[3]   Defendants incorporate their prior argument that Plaintiffs cannot circumvent Rule 45(c) through a subpoena to compel testimony "via remote link" under Rule 43(a), *see Baker* Dkt. 122 at 7-10, which is enough to deny Plaintiffs' motion.  But

1.   At the outset, Plaintiffs cannot establish "good cause in compelling circumstances" because neither Berger's nor Myers' unavailability is "unexpected." As the advisory committee notes to Rule 43 explain, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for *unexpected reasons*, such as accident or illness, but remains able to testify from a different place."  Fed. R. Civ. P. 43(a) advisory committee's note (1996 amendment) (emphasis added).  Thus "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of their circumstances."  *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 6467254, at *3 (S.D.N.Y. Nov. 10, 2014) (internal quotation marks and citation omitted); *Niemeyer v. Ford Motor Co.*, 2012 WL 5199145, at *3 (D. Nev. Oct. 18, 2012) (same); *Prideaux v. Tyson Foods, Inc.*, 387 F. App'x 474, 479 (5th Cir. 2010) (per curiam) (same).

There can be no question that Berger's and Myers' unavailability was foreseeable in this MDL.  The parties secured and preserved testimony from them by videotaped deposition for exactly that reason.  Indeed, it would be unreasonable for Plaintiffs to assume that both Berger and Myers will be available to prepare and

---

Defendants understand that this Court has already rejected that argument, *Baker* Dkt. 133 at 9-12, and include it here only for preservation purposes.

8

participate in six trials in the span of only three months, some of which are overlapping, just in the event that Plaintiffs may subpoena them "as their trial strategy requires." *Camarillo* Dkt. 57 at 16 n.4. It is no surprise, then, that Plaintiffs do not even address the foreseeability of the witnesses' unavailability in their motion.

2. Moreover, there is no "good cause in compelling circumstances" because both Berger's and Myers' testimony is fully available via videotaped deposition, obviating any need for remote testimony. This is not a circumstance where testimony is available remotely or not at all. As explained, there is ample videotaped testimony that was secured specifically for use at bellwether trials in this MDL. And this is not even a circumstance where the Court is deciding between *in person* testimony and a video deposition, although, even then, there is only "minimal[] prejudic[e]" when "a videotaped deposition … can be introduced in lieu of live testimony." *Estate of Spear v. C.I.R.*, 41 F.3d 103, 116 (3d Cir. 1994). Here, Plaintiffs are seeking *live* video testimony in lieu of *taped* video testimony—the testimony will be by video regardless.

There is no "good cause in compelling circumstances" to authorize live video testimony when taped video testimony is readily available. The advisory committee notes to the Federal Rules make clear that videotaped depositions "provide a superior means of securing the testimony of a witness who is beyond the reach of a trial

9

subpoena." Fed. R. Civ. P. 43 advisory committee's note (1996 amendment). And courts have rejected the notion that "video-conferencing would allow the jury to assess [a witness's] testimony any better than by watching his video deposition." *Passmore v. Barrett*, 2016 WL 1253541, at *3 (N.D. Ind. Mar. 31, 2016). That is especially so where unforeseen technical issues with remote testimony could result in delay, interruptions, and poor connections, all of which would interfere with the jury's ability to assess the testimony and are substantially minimized through the use of a videotaped deposition.

None of Plaintiffs' arguments about why they need Berger's testimony live compels a different result. Plaintiffs contend that they need his remote testimony because he authored the Flange memo and thus is an important witness and because they have gotten "new admissions" from him during his recent trial testimony. *Camarillo* Dkt. 57 at 7. But Plaintiffs asked Berger about the Flange memo in every one of his depositions to date. *See* Ex. 2 (11/13/2019 Berger Dep. Tr. Flange memo marked as Exhibit 22); Ex. 6 (12/10/2019 Berger Dep. Tr. Flange memo marked as Exhibit 7); Ex. 7 (12/11/2019 Berger Dep. Tr. Flange memo marked as Exhibit 7); Ex. 8 (12/12/2019 Berger Dep. Tr. Flange memo marked as Exhibit 41); Ex. 9 (9/25/2020 Berger Dep. Tr. at 325:4-326:2); Ex. 10 (12/18/2020 Berger Dep. Tr. at 277:15-280:10). And setting aside whether Plaintiffs even in fact were able to obtain new admissions from Berger (they point to only one in the course of the prior four

trials), his testimony is now more than well known, and their desire to keep getting new bites at the apple is no reason to allow them to obtain his testimony remotely for six more trials when they have already had a full and fair opportunity to examine him over *five days* of depositions and *four* prior trials. This Court recognized as much when it first allowed his remote testimony in the *Baker* trial, observing that the ruling there "does not mean" that in "every bellwether trial [] Berger is going to have to appear by contemporaneous transmission." 5/27/2021 *Baker* Hrg. Tr. at 54. Plaintiffs' motion seeking his remote testimony for the next six bellwether trials flouts this Court's admonishment that whether he should appear remotely must be determined on "a case by case basis." *Id*.

Plaintiffs' arguments about Myers fare no better and provide no reason for this Court to depart from its ruling in *Baker*. Plaintiffs mainly repeat the arguments that this Court already rejected, emphasizing that they need live testimony to ask Myers about certain documents or topics that they did not ask him during the three days of his videotaped deposition. But they have not amended their master complaint since Myers was deposed. Nor did they move the Court to reopen his deposition before the close of discovery. *Christians of Cal.*, 2014 WL 6467254, at *4 n.2 (failure to re-depose is "relevant to the Rule 43 'good cause' analysis"). This Court already rejected these arguments in *Baker*, and there is no reason to take a different approach now. *Compare Baker* Dkt. 131 at 11 (arguing that they "should

be allowed to … elicit new [admissions] from Myers), *with Camarillo* Dkt. 57 at 7 (arguing that they should be able to "cross Myers with … new facts and use them to elicit new admissions from Myers).

Plaintiffs' two new arguments—that Myers "controlled the flow of information regarding the CAEv2 and was the point of contact for Doug Ohlin" and that Defendants have pressed a new theory about "the discontinuation of the CAEv2 was part of the products 'normal evolutionary lifecycle'"—do not amount to good cause. *Camarillo* Dkt. 57 at 8.  At the time of his deposition, Plaintiffs were well aware of Myers' role with the CAEv2 and his interactions with Ohlin at the time— they questioned him extensively about those topics over the course of the three days. *See, e.g.,* Ex. 1 (10/18/19 Myers Dep. Tr.) at 242:9-244:23; Ex. 2 (12/12/19 Myers Dep. Tr.) at 113:13-119:14; 196:16-200:3; 287:9-292:25; Ex. 3 (12/13/19 Myers Dep. Tr.) at 530:12-534:5; 543:15-544:14; 656:7-658:8; 666:14-667:20; 695:7-697:3; 713:13-25; 726:16-728:18; 739:4-753:5.  And Plaintiffs also already asked Myers' about the discontinuation of the CAEv2.  *See, e.g.,* Ex. 1 (10/18/19 Myers Dep. Tr.) at 317:17-325:5.  That Plaintiffs wish they had asked more or different questions does not satisfy Rule 43.

Plaintiffs' new argument about the discontinuation of the CAEv2 is especially specious.  The only support Plaintiffs offer for the notion that this argument was raised "for the first time at trial" is an exchange with one of Defendants' experts

during the *first* bellwether trial, *see Camarillo* Dkt. 57 at 8 (citing 4/27/21 Trial Tr. at 238:3-19)—and that testimony came in only *after* the Court ruled that the door had been opened to it, *see* 4/13/21 Trial Tr. at 176:15-177:24.  Defendants had tried to keep that evidence *out*.  *See* MDL Dkt. 1664 at 16-17 (Defendants' *EHK* motion *in limine* to exclude evidence of discontinuation and recall).  It is telling that the best Plaintiffs could muster is a single exchange from three trials ago.  And in all events, when the Court ruled that the door had been opened, it specifically allowed Plaintiffs to redirect the expert with P-Gen-128, which was an exhibit to Myers' deposition. 12/12/2019 Myers Dep., Ex. 29.  Defendants simply did not spring some new theory on them at trial, much less one that authorizes remote testimony several trials later.

4.  Finally, although Defendants preserve their argument that the *Vioxx* factors do not apply here, *see Baker* Dkt. 122 at 15-18, Plaintiffs cannot justify remote testimony under them even if they did.  Those factors consider "(1) the control exerted over the witness by the defendant; (2) the complex, multiparty, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience of the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation."  *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006).

Plaintiffs cannot point to any tactical advantage to be gained by Defendants by failing to produce Berger or Myers live, nor can they show a lack of prejudice to Defendants were Defendants required to do so. Berger is no longer consulting for Defendants, and he has retained his own counsel to represent him with respect to this case. Any suggestion that Defendants have control over his availability and can use that to obtain a tactical advantage is misguided. As for Myers, Defendants prepared him in the first bellwether trial, only to have Plaintiffs decide on the eve of his testimony that they would prefer to play his deposition. They now ask Defendants to prepare them not for one trial, but for *six* trials, all of which are proceeding on a compressed schedule.

To make matters worse, Plaintiffs do not even specify in which trials they actually expect to call Berger or Myers, leaving their schedules entirely dependent on Plaintiffs' "trial strategy," which apparently varies by the day. *Camarillo* Dkt. 57 at 16 n.4. The additional time and resources necessary to prepare Berger and Myers for live remote testimony when they have already provided hours of videotaped testimony in this very MDL would prejudice Defendants and burden the witnesses, who would have to prepare for and participate in *six* trials on top of all the other testimony they have already provided, and notwithstanding that they are outside the subpoena range of the Court. There is no countervailing prejudice to Plaintiffs, who are free to play the witnesses' videotaped depositions as they have

14

done with Myers in trial after trial thus far. The *Vioxx* factors, even were they to apply, do not support compelling remote testimony here.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Expedited Motion to Authorize Remote Testimony Pursuant to Rule 43(a) From 3M Fact Witnesses Elliott Berger and Brian Myers.

Dated:  October 19, 2021                        Respectfully submitted,

/s/ Robert C. Brock
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, California 90071
Telephone:  (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*

15

*Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this opposition contains 3,441 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated: October 19, 2021                 Respectfully submitted,

                                        */s/ Robert C. Brock*

                                        Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2021, a true and correct

copy of the foregoing:

**DEFENDANTS' RESPONSES TO PLAINTIFFS' EXPEDITED MOTION
TO AUTHORIZE REMOTE TESTIMONY PURSUANT TO RULE 43(A)
FROM 3M FACT WITNESSES ELLIOTT BERGER AND BRIAN MYERS**

was served as follows:

☒ **[E-Mail]** By causing the above document to be sent via electronic mail to the parties at the email addresses listed below. I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

| | |
|---|---|
| Bryan F. Aylstock, Lead Counsel Douglass A. Kreis Neil D. Overholtz Jennifer M. Hoekstra Aylstock, Witkin, Kreis & Overholtz, PLLC 17 East Main Street Suite 200 Pensacola, FL 32502 Tel.: (850) 202-1010 Email: baylstock@awkolaw.com Email: dkreis@awkolaw.com Email: NOverholtz@awkolaw.com Email: jhoekstra@awkolaw.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo* Case No. 7:20-cv-00098<br><br>*Counsel for Plaintiff Theodore Finley* Case No. 7:20-cv-00170<br><br>*Counsel for Plaintiff Carlos Montero* | Shelley V. Hutson, Co-Lead Counsel Emily B. Marlow Marcela J. Arevalo Clark, Love & Hutson, GP 440 Louisiana Street Suite 1600 Houston, TX 77002 Tel.: (713) 757-1400 Email: shutson@triallawfirm.com Email: emarlowe@triallawfirm.com Email: bgreif@triallawfirm.com Email: marevalo@triallawfirm.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo* Case No. 7:20-cv-00098<br><br>*Counsel for Plaintiff Joseph Palanki* Case No. 3:19-cv-02324<br><br>*Counsel for Plaintiff Ronald Sloan* Case No. 7:20-cv-00001 |

| | |
|---|---|
| Case No. 7:20-cv-00067<br><br>*Counsel for Plaintiff Joseph Palanki*<br>Case No. 3:19-cv-02324<br><br>*Counsel for Plaintiff Carter Stelling*<br>Case No. 7:20-cv-00143<br><br>*Counsel for Plaintiff Ronald Sloan*<br>Case No. 7:20-cv-00001<br><br>*Counsel for Plaintiff William Wayman*<br>Case No. 7:20-cv-00149 | |
| Christopher A. Seeger, Co-Lead Counsel<br>David R. Buchanan<br>Caleb A. Seeley<br>Maxwell H. Kelly<br>Parvin K. Aminolroaya<br>Seeger Weiss LLP<br>55 Challenger Road, 6th Floor<br>Ridgefield Park, NJ 07660<br>Tel.: (212) 584-0700<br>Email: cseeger@seegerweiss.com<br>Email: dbuchanan@seegerweiss.com<br>Email: cseeley@seegerweiss.com<br>Email: mkelly@seegerweiss.com<br>Email: paminolroaya@seegerweiss.com<br>Email: MDL2885@seegerweiss.com<br><br>*Counsel for Plaintiff Carter Stelling*<br>Case No. 7:20-cv-00143<br><br>*Counsel for Plaintiff William Wayman*<br>Case No. 7:20-cv-00149 | Michael A. Burns, Co-Liaison Counsel<br>Caroline L. Maide<br>Mostyn Law Firm<br>3810 W. Alabama Street<br>Houston, TX 77027<br>Tel.: (713) 714-0000<br>Email: epefile@mostynlaw.com<br>Email: maburns@mostynlaw.com |
| Evan D. Buxner,<br>Plaintiffs' Executive Committee | Brian H. Barr, Co-Liaison Counsel<br>Winston Troy Bouk |

| | |
|---|---|
| Gori Julian & Associates<br>156 North Main Street<br>Edwardsville, IL 62025<br>Tel.: (618) 659-9833<br>Email: evan@gorijulianlaw.com | Troy A. Refferty<br>Levin, Papantonio, Thomas, Mitchell,<br>Rafferty, & Proctor, P.A.<br>316 S Baylen St. Ste 600<br>Pensacola, FL 32502<br>Tel.: (850) 435-7045<br>Email: bbarr@levinlaw.com<br>Email: tbouk@levinlaw.com<br>Email: trafferty@levinlaw.com |
| Keith M. Jensen<br>Keith M. Jensen PC<br>1024 N. Main Street<br>Fort Worth, TX 76105<br>Tel.: (817) 334-0762<br>Email: kj@jensen-law.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098 | Thomas W. Pirtle<br>Buffy K. Martines<br>Laminack Pirtle & Martines<br>5020 Montrose Blvd, 9th Fl.<br>Houston, TX 77006<br>Tel.: (713) 292-2750<br>Email: tomp@lpm-triallaw.com<br>Email: buffym@lpm-triallaw.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098 |
| Jonathan M. Sedgh<br>Panagiotis V. Albanis<br>Paul J. Pennock<br>Morgan & Morgan<br>850 3rd Avenue, Suite 402<br>Brooklyn, NY 11232<br>Tel.: (212) 738-6839<br>Email: jsedgh@forthepeople.com<br>Email: palbanis@forthepeople.com<br>Email: ppennock@forthepeople.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098 | Katherine L. Cornell<br>Pulasaki Law Firm<br>2925 Richmond Avenue, Suite 1725<br>Houston, TX 77098<br>Tel.: (713) 664-4555<br>Email: kcornell@pulaskilawfirm.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098 |
| Thomas J. Henry<br>Roger L. Turk<br>Lesley C. Paniszczyn | Nicole Corinne Berg<br>Ashley Barriere<br>Kathryn Lee Couey |

| | |
|---|---|
| Russell W. Endsley<br>Thomas J. Henry Law PLLC<br>521 Starr Street<br>Corpus Christi, TX 78401<br>Tel.: (361) 985-0600<br>Email: tjh.3m@thomasjhenrylaw.com<br>Email: rlt.3m@thomasjhenrylaw.com<br>Email:<br>lpan.3m@thomasjhenrylaw.com<br>Email:<br>rwe.3m@thomasjhenrylaw.com<br><br>*Counsel for Plaintiff Theodore*<br>*Finley*<br>Case No. 7:20-cv-00170 | Keller Lenkner LLC<br>150 N. Riverside Plaza<br>Suite 4270<br>Chicago, IL 60606<br>Tel.: (312) 741-5220<br>Email: ncb@kellerlenkner.com<br>Email:<br>ashley.barriere@kellerlenkner.com<br>Email:<br>kathryn.couey@kellerlenkner.com<br><br>*Counsel for Plaintiff Carlos*<br>*Montero*<br>Case No. 7:20-cv-00067 |
| Alexandra M. Walsh<br>1050 Connecticut Avenue<br>Suite 500<br>Washington, DC 20036<br>Tel.: (202) 780-4127<br>Email: awalsh@alexwalshlaw.com<br><br>*Counsel for Plaintiff Carlos*<br>*Montero*<br>Case No. 7:20-cv-00067 | Jason M. Milne<br>Clark Love & Hutson<br>757 W. Meadow Side Drive<br>Saratoga Springs, UT 84045<br>Tel.: (385) 447-1041<br>Email: jmilne@triallawfirm.com<br><br>*Counsel for Plaintiff Joseph Palanki*<br>Case No. 3:19-cv-02324 |
| Matthew S. Hosen<br>Quinn Emanuel Urquhart<br>1109 1st Avenue, Suite 210<br>Seattle, WA 98101<br>Tel.: (206) 905-7000<br>Email:<br>matthosen@quinnemanuel.com<br><br>*Counsel for Plaintiff Joseph Palanki*<br>Case No. 3:19-cv-02324 | Muhammad S. Aziz<br>Abraham Watkins Nichols<br>800 Commerce Steet<br>Houston, TX 77055<br>Tel.: (713) 222-7211<br>Email: jdean@abrahamwatkins.com<br><br>*Counsel for Plaintiff Joseph Palanki*<br>Case No. 3:19-cv-02324<br><br>*Counsel for Plaintiff Ronald*<br>*Sloan*<br>Case No. 7:20-cv-00001 |

| | |
|---|---|
| Andre M Mura<br>Gibbs Law Group LLP<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>Tel.: (510) 350-9717<br>Email: amm@classlawgroup.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098<br><br>*Counsel for Plaintiff Theodore Finley*<br>Case No. 7:20-cv-00170 | Joshua M. Autry<br>Morgan & Morgan<br>333 W. Vine Street, Suite 1200<br>Lexington, KY 40507<br>Tel.: (859) 286-8369<br>Email: jautry@forthepeople.com<br><br>*Counsel for Plaintiff Guillermo Camarillorazo*<br>Case No. 7:20-cv-00098 |

DATED:  October 19, 2021

/s/ Robert C. Brock
Robert C. "Mike" Brock

5