UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Guillermo Camarillorazo*, 7:20cv098 *Joseph Palanki*, 3:19cv2324 *Theodore Finley*, 7:20cv170 *Carlos Montero*, 7:20cv067 *Carter Stelling*, 7:20cv143 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

# ORDER[1]

This Order addresses Defendants' motion to exclude the *h*MIRE (human-microphone in real ear) opinions of Dr. David A. Eddins, as supplemented in his report dated July 6, 2021, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See* ECF No. 2042 at 47-52. On consideration, the motion is denied.

Dr. David A. Eddins is an audiologist, professor of biomedical engineering, and Director of the Auditory & Speech Sciences Laboratory at the University of South Florida. He offers opinions that the "fit, function, and usability" of the CAEv2 was

---

[1] The Court assumes the parties' familiarity with the nature of this multidistrict litigation, the claims and defenses, and the current evidentiary record. Thus, this Order sets out only what is necessary to explain the Court's rulings. The Order also incorporates by reference the applicable legal standard set forth in prior similar orders. *See, e.g.*, *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2021 WL 765019, at *1-3 (N.D. Fla. Feb. 28, 2021).

compromised by design defects in the length, width, and rigidity of its stem and the position of its opposing flanges, which led to "poor initial fit, poor stability and retention" of acoustic seal, or both, in many wearers. *See* Eddins Rep., ECF No. 2042-54 at 3-4. His opinions are based on his examination of the CAEv2, his review of Defendants' REAT testing and internal documents, and a series of tests he conducted under controlled laboratory conditions: (1) REAT testing of the CAEv2; (2) *h*MIRE testing on a replica of the CAEv2; and (3) *m*MIRE (molded-microphone in real ear) testing of the CAEv2 on silicone human ear replicas with and without simulated mandibular motion.

In the Trial Group A cases, the Court concluded that Dr. Eddins' REAT testing may reliably support his opinions in this litigation and would help the jury evaluate the attenuation provided by the CAEv2. *See In re 3M Combat Arms Prod. Liab. Litig.*, No. 3:19md2885, 2021 WL 765019, at *21 (N.D. Fla. Feb. 28, 2021). His opinions based on static *m*MIRE testing (i.e., no mandibular motion) with silicone ear replicas were likewise found reliable and admissible. *See id*. at *25. However, the Court excluded his *m*MIRE testing with the mandibular motion simulator because of the analytical gap between his "remarkably innovative" technique and current scientific knowledge about ear canal dynamics. *See id*. at *24. Dr. Eddins' *h*MIRE testing opinions were excluded because the evidentiary record at that time indicated his surrogate earplug "differ[ed] from the CAEv2 in critical ways" that impacted the

reliability of drawing "conclusions about the CAEv2's alleged propensity to loosen . . from evidence that the surrogate earplug loosens." *See id*. at 22. Based on his expert report and supporting materials, his *h*MIRE methodology did not appear to have been "considered and generally accepted in the hearing protection community, tested by anyone other than him, or subjected to peer review or publication." *Id*. at 23. And he had not adequately demonstrated and/or explained why the surrogate earplug was sufficiently similar to the actual CAEv2 for *h*MIRE testing on the surrogate to advance the question of whether and to what extent the actual CAEv2 imperceptibly loosens. *Id*. at 22.

After the Trial Group A rulings, Dr. Eddins updated his report with additional analysis and reference materials responding to the Court's reliability concerns about his *h*MIRE testing with the surrogate earplug. Defendants now seek continued exclusion of Dr. Eddins' *h*MIRE opinions in the Trial Group C cases because, in their view, he still has not shown that *h*MIRE findings for the surrogate earplug can be reliably extrapolated to the CAEv2. The Court disagrees.

To begin with, this time around, Dr. Eddins has offered scientific literature demonstrating that experts studying hearing protection devices in the field *do* modify commercially available earplugs by drilling a hollow core through the center to allow

a microphone probe to be inserted for purposes of MIRE measurements.[2] In such studies, microphones that "very closely matched" the diameter of the hollow core and were lubricated for insertion have been "assumed to provide a complete acoustic seal of the vent [opening] when inserted," and the attenuation of the modified earplug when the vent opening was sealed has been "assumed to be identical to that of" the original, unmodified earplug.[3] Thus, the current evidentiary record establishes that Dr. Eddins' broad methodological approach—that is, modifying an off-the-shelf earplug to enable MIRE testing—has been generally accepted in the scientific community, tested by other experts in the field, and subjected to peer review and publication.

---

[2] *See, e.g.*, Wu et al., *Comparison of noise reduction of earplugs between fit test and coal mine work and observed variability of real-time noise reduction in coal mine work*, 51 WORK 531 (2016) ("Wu 2016") (MIRE testing on E-A-R® PVC foam earplugs modified by experimenters who "punched a hole through the center . . . so that a 0.23 cm diameter plastic tube could be passed through" it and a microphone threaded through the tube); Richard Neitzel et al., *Variability of Real-World Hearing Protector Attenuation Measurements*, 50(7) ANNALS OF OCCUPATIONAL HYGIENE 679, 681 (2006) ("Neitzel 2006") (MIRE testing on "off-the-shelf" E-A-R Classic earplugs modified by experimenters with a "hollow plastic core running the length of the earplug" for microphone insertion); *see also* Jérémie Voix & Lee D. Hager, *Individual Fit Testing of Hearing Protection Devices*, 15(2) INT'L J. OCCUPATIONAL SAFETY & ERGONOMICS 211, 212 (2009) ("Voix-Hager 2009") (stating that "a consistent and reliable sound bore that enables the insertion of [a] measurement microphone . . . can be accomplished internally in the design of the HPD . . . or by inserting a probe tube with known and quantified acoustical performance qualities (as with a roll-down foam or premolded earplug)").

[3] *See* Neitzel 2006 at 681; Wu 2016 at 532-33 ("[T]he acoustic attenuation characteristics of the E-A-R® earplug fitted with [a] microphone is not changed from the unmodified earplug."); *see also* Voix-Hager 2009 at 212 (stating that in MIRE testing of foam or premolded earplugs using a probe tube, "the bias introduced by such tubing of the earplug has been carefully studied and its effect on the measured attenuation can reasonably be neglected).

Of course, Dr. Eddins did not just drill a hole through the adapter stem of the CAEv2. Rather, he input the specific dimensions for the actual CAEv2's stem into a computer-aided design program and 3D printed replicas with small hollow cores through the center, the diameters of which were "approximately the same as the outer diameter of the microphone probe tube" required for $h$MIRE testing.[4] *See* Eddins Rep. (July 6, 2021), ECF No. 2042-54 at 49. Defendants' triple-flanged, silicone Ultra-Fit tips—the same tips used on the CAEv2—were then affixed to each end of the replica adapter stems. According to Dr. Eddins, the result was an $h$MIRE-suitable version of the CAEv2 with materially the same physical and attenuation characteristics as the olive end of the original. "They were essentially, in effect, the same earplug." *See* Eddin Dep. (Dec. 15, 2020), ECF No. 1630-4 at 28.

Dr. Eddins' original report and supporting materials did not adequately demonstrate that the replica did, in fact, reliably replicate the olive end of the CAEv2, given the evident differences in the length, weight and stem, and the introduction of microphone probe instruments. However, the additional scientific references and analysis provided in Dr. Eddins' report dated July 6, 2021 have persuaded the Court that any alleged differences between the two are not sufficiently material as to warrant exclusion of his $h$MIRE opinions on reliability grounds, subject to testing by cross-examination and contrary evidence.

---

[4] The dimensions were taken from the original design drawings for the CAEv2 by Marc Doty.

Briefly, the average difference in length—0.002 millimeters—is less than the width of a single human hair and, as aptly observed by Plaintiffs, "less than the variability that Defendants allowed in their own CAEv2 samples." In other words, the surrogate's length was within Defendants' established range of acceptable lengths for the actual CAEv2. Under these circumstances, the relative lengths of the surrogate and CAEv2 cannot reasonably be considered materially distinct for reliability purposes.

The composition of the replica's stem ("PR48" resin) and the stem of the CAEv2 (Delrin) are also sufficiently similar to support Dr. Eddins' *h*MIRE testing opinions. Dr. Eddins explained that the "hardness" and rigidity of the CAEv2's stem were the "key" physical properties to replicate in the surrogate because those were the compositional properties of the stem that allegedly contributed to imperceptible loosening. *See* Eddins Dep. (Aug. 25, 2021), ECF No. 2199-41 at 27. By those measures, PR48 and Delrin are materially identical. PR48 has a Shore D hardness of 85, while Delrin is 86 Shore D, which makes them "a very good match" in terms of relative hardness.[5] *See id.* at 28. Both materials are rigid and inflexible, and both had the strength and durability to withstand the repeated insertion, removal, handling and storage requirements of earplugs. *See id.* at 29. According to Dr. Eddins, the only meaningful differences between PR48 and Delrin are in the outer limits of each

---

[5] The Shore D Hardness Scales measure the relative hardness of hard rubbers, semi-rigid plastics and hard plastics. *See Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 925 n.1 (Fed. Cir. 1990).

material's strength under stress before failure, which is "irrelevant" here because the stress and strain to which an earplug adaptor stem is exposed is "nowhere in the ballpark of the limits of the material[s]." *See id*. Notably, the actual CAEv2's adaptor was not always made of Delrin, as Defendants made it from different materials over the years, *see* Eddins Dep. (Dec. 15, 2020), ECF No. 1630-4 at 27, which further supports Dr. Eddins' opinion that it is the hardness and rigidity of the adaptor's material—and not its chemical composition per se—that bear on the defects alleged in this litigation.

Defendants' remaining criticisms of the replica have also been adequately addressed by Dr. Eddins. He explained that from a "scientific logic and reason" perspective, the weight and center of mass differences between the replica and the CAEv2 are so "extremely, extremely small" that they have no "effect on things measured, such as attenuation or loosening."[6] *See* Eddins Dep., ECF No. 2199-41 at 35. And finally, as already discussed, he has shown that MIRE-modified off-the-shelf earplugs are considered "identical" to the original, unmodified earplugs where, as here, the diameter of the modified hollow core is "approximately the same as the outer

---

[6] With the probe tube inserted, the replica is 1.99% lighter than the CAEv2. Without the probe tube, the replica is 4.46% lighter than the CAEv2. The replica's center of mass is at the center of the earplug, while the CAEv2's center of mass is 0.185 mm closer to its yellow end due to the non-linear filter. In Dr. Eddins' opinion, "the presence or absence of the non-linear filter is only relevant in terms of its effect on the center of mass of the earplug," and would have only "a negligible effect on earplug insertion and earplug retention[,] including the propensity of the earplug to loosen." *See* Eddins Rep. (July 6, 2021), ECF No. 2199-39 at 49.

diameter of the microphone probe tube" and a lubricant is applied to create an acoustic seal.[7]  See Eddins Rep. (July 6, 2021), ECF No. 2199-39 at 49.

Based on the foregoing, the Court finds that Dr. Eddins has now demonstrated the scientific reliability of his *h*MIRE opinions, and that his findings can be reliably extrapolated to the CAEv2.  His technique is generally accepted in the scientific community, can be and has been tested, and has been subjected to peer review and publication.  See *Daubert*, 509 U.S. at 593-94.  Every step of his analysis is "supported by good grounds and appropriate validation."  See *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237-38 (11th Cir. 2005).  None of the alleged weaknesses identified by Defendants detract from the validity of the scientific principles and methods underlying Dr. Eddins' approach, or impact the reliability of his application of those principles and methods in this litigation.  Dr. Eddins' *h*MIRE opinions thus satisfy Rule 702 and *Daubert*.  Cross-examination and competing expert testimony are the appropriate means of challenging those opinions.  See *Daubert*, 509 U.S. at 596.  Accordingly, Defendants' motion to exclude Dr. Eddins' opinions regarding hMIRE testing, ECF No. 2042 at 47-52, is **DENIED**.

**SO ORDERED**, on this 25th day of October, 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[7] *See supra* n.3.