**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to:

*Guillermo Camarillorazo,* 7:20-cv-98
*Theodore Finley,* 7:20-cv-170
*Marcus Hensley,*7:20-cv-93
*Carlos Montero,* 7:20-cv-67
*Joseph Palanki,* 3:19-cv-2324
*Ronald Sloan,* 7:20-cv-1
*Carter Stelling,*7:20-cv-143
*William Wayman,* 7:20-cv-149
_____/

## ORDER

On October 22, 2021, the Court conducted a telephonic hearing to address Plaintiffs' Expedited Motion to Authorize Remote Testimony Pursuant to Rule 43(a) from 3M Fact Witnesses Elliott Berger ("Berger") and Brian Myers ("Myers"), Master Docket ECF No. 2190, and Berger's Motion to Quash/for a Protective Order.[1]  Prior to the hearing, Defendants filed a response in opposition to Plaintiffs' motion.  ECF No. 2222

---

[1] Berger filed his motion, ECF No. 1, in a miscellaneous action, *Berger v. 3M Co.*, Case No. 1:21-mc-61-MCR-GRJ (N.D. Fla.). No response to Berger's motion was filed.

(SEALED).[2]  For the reasons discussed on the record (which are fully incorporated herein) and those explained below, Plaintiffs' Motion is due to be **GRANTED**.  Plaintiffs will be permitted to subpoena Berger and Myers for remote live testimony in these eight bellwether cases.  Because the Court grants Plaintiffs' Motion for the reasons discussed herein, Berger's Motion to Quash/for Protective Order, ECF No. 1, *Berger v. 3M Co.*, Case No. 3:21-mc-61-MCR-GRJ, is due to be **DENIED**.  This order is a non-exhaustive recitation of the arguments made by the parties, as well as the Court's reasoning.

## I.  BACKGROUND

The multidistrict litigation ("MDL") is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  The bellwether trials in these eight cases are scheduled to take place in the coming weeks and months.

---

[2] The corresponding ECF numbers in the individual cases are as follows: *Guillermo Camarillorazo,* Case No. 7:20-cv-98 (ECF No. 57); *Theodore Finley,* Case No. 7:20-cv-170 (ECF No. 50); *Marcus Hensley*, Case No. 7:20-cv-93 (ECF No. 55); *Carlos Montero,* Case No. 7:20-cv-67 (ECF No. 41); *Joseph Palanki,* Case No. 3:19-cv-2324 (ECF No. 52); *Ronald Sloan,* Case No. 7:20-cv-1 (ECF No. 54); *Carter Stelling,* Case No. 7:20-cv-143 (ECF No. 39); and *William Wayman,* Case No. 7:20-cv-149 (ECF No. 66).

At issue here is whether two 3M employees (one current, one former), who are key witnesses in the MDL litigation, should be compelled to testify live at these eight trials, albeit from a remote location. These particular witnesses, Berger and Myers, are no ordinary witnesses. Each played a central role in the design, development, production, sale, testing, and discontinuation of the CAEv2. Berger served as both 3M's paid consultant and its Federal Rule of Civil Procedure 30(b)(6) designee. Myers was the CAEv2's project manager, and Berger's direct superior. He was also the point of contact for military customers for the CAEv2, and he was ultimately responsible for stopping the CAEv2's distribution.

3M previously made both Berger and Myers available at bellwether trials to-date. Yet, 3M has now decided not to make Berger and Myers available, even remotely, to testify live in these eight bellwether cases. 3M argues that Plaintiffs have plenty of videotaped deposition testimony and trial transcripts from these two witnesses to use going forward. 3M further contends that requiring Berger and Myers to appear remotely poses an undue burden both on them and counsel tasked with preparing them.

Plaintiffs contend that because these are bellwether trials, upon which will have an impact on resolution of hundreds of thousands of other cases, live remote testimony must be permitted for the benefit of the juries.

The crux of Plaintiff's argument is that they will be prejudiced if they are forced to proceed on videotaped depositions taken more than one year ago, especially since Berger has made new admissions, which substantially alter his former testimony.[3]

In light of 3M's opposition to their appearance, Plaintiffs seek leave of court to subpoena Berger and Myers under Federal Rule of Civil Procedure 45, with the Court's permission for the witnesses to testify in open court by contemporaneous transmission from a remote location pursuant to Federal Rule of Civil Procedure 43(a).[4] This Court previously held that there is good cause in compelling circumstances to permit Berger's remote testimony. *See Llyod Baker*, Case No. 7:20-cv-39, ECF No. 133. Although the Court did not find good cause in compelling circumstances for Myers' remote testimony at that time, Berger's testimony has evolved such that Plaintiffs want to examine Myers (as Berger's direct report) about Berger's new statements.

---

[3] This Court previously found that live remote testimony in a 3M bellwether trial was preferable to the play-back of a videotaped deposition. *See Baker v. 3M*, 7:20-cv-39 (N.D. Fla.), ECF No. 133, at 14.

[4] Berger lives in Indianapolis, Indiana, and Myers lives in Vadnais Heights, Minnesota.

Plaintiffs argue that Myers' key role cannot be understated. He controlled the flow of information regarding the CAEv2. He was the point of contact for Doug Ohlin. He made the decision to halt CAEv2 distribution displaying the NNR on the package. And, finally, his contemporaneous e-mail giving the reason for pulling the CAEv2 off the market contradicts 3M's new arguments at trial that the product was discontinued as part of its normal evolutionary lifecycle.

Defendants respond that Plaintiffs fail to establish good cause in compelling circumstances. They argue that the parties knew all along that the overwhelming majority of witnesses in the MDL would be non-parties, including current and former 3M employees, who are outside of the subpoena power of the court. The parties, therefore, with the Court's assistance, created a process by which the testimony of these witnesses would be preserved for use in the MDL bellwether trials, e.g., videotaped depositions.[5]

---

[5] Defendants also make the argument that a witness's unavailability at trial must be for unexpected reasons, citing the advisory committee note to Federal Rule of Civil Procedure 43(a). The Court finds this argument unpersuasive as times have certainly changed during the pandemic with respect to the use of technology and remote appearances of witnesses, parties, counsel, and even criminal defendants in court. As the court in *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 642-43 (E.D. La. 2006) (MDL No. 1657,) pointed out, "there has been an increasing trend by federal courts allowing. . . the use of contemporaneous transmission of trial testimony." Since *Vioxx*, courts around the country are ordering live testimony via remote means under Rule 43. *See e.g., In re: RFC and RESCAP Liquidating Trust Action v. Primary Residential*

Berger, through counsel, argues that because he is now retired from 3M, the bellwether trials should not disrupt his personal schedule *ad infinitum*. Moreover, since he will testify live at two upcoming trials, Plaintiffs could videotape his live trial testimony and use the recording in subsequent trials. At the hearing, the Court discussed the feasibility of this suggestion with the parties, and all agreed that it was unworkable due to time and technology constraints. The Court, however, determined that the Court would record the remote live testimony of these witnesses at the next two trials where Berger and Myers appear via ZoomGov.

## II.  LEGAL STANDARD

A witness's testimony at trial must be taken in open court unless a federal rule or statute allows otherwise. Fed. R. Civ. P. 43(a). When a party presents "good cause in compelling circumstances" and assures the Court of "appropriate safeguards," the Court "may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Federal courts have been admonished to proceed with caution under Rule 43(a) to ensure what is typically an exception (live

---

*Mortgage, Inc.,* 444 F. Supp. 3d 967 (D. Minn. 2020*); Flores v. Alvarado*, Case No. 3:17-cv-514-RJC-DSC, 2018 WL 1697314 (W.D.N.C. Apr. 6, 2018); *Novello v. Progressive Express Ins. Co.*, Case No. 8:19-cv-1618, 2021 WL 1751351 (M.D. Fla. May 4, 2021); *Mendoza v. Pascual*, Case No. CV 615-40, 2015 WL 13650770 (S.D. Ga. May 5, 2015).

testimony by contemporaneous transmission) does not swallow the rule (live in-person testimony):

> Contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

Fed. R. Civ. P. 43 advisory committee's note.[6]

Federal Rule of Civil Procedure 45 provides a party with the subpoena power to secure a witness's attendance at trial. Relevant here, "[a] subpoena may command a person to attend a trial, hearing, or deposition … within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A). And "[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)." Fed. R. Civ. P. 45 advisory committee's note. The "court for the district were compliance is required" must quash a

---

[6] "Although not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)[.]" Fed. R. Civ. P. 45(d)(3)(A)(ii).

## III.  DISCUSSION

**A.  Good cause in compelling circumstances exists to permit remote testimony of Berger and Myers at these bellwether trials.**

Upon careful review of the parties' and Berger's papers and arguments, the Court finds good cause in compelling circumstances to authorize Berger and Myers to testify via contemporaneous transmission at these eight bellwether trials.  The Court will also impose appropriate safeguards for the trial testimony as discussed below.

"The Court's discretion on this question is supplemented by its wide latitude in determining the manner in which evidence is to be presented under the Federal Rules of Evidence."  *In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020).  Neither Rule 43(a) nor the advisory committee notes defines "good cause" or "compelling circumstances."  Nevertheless, some federal courts apply the five-factor *Vioxx* test to resolve the remote testimony question.  Those factors are:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true

8

prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.

*In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006).

Although the Court need not apply the *Vioxx* factors, the Court finds the factors useful in determining whether Plaintiffs in these cases should be allowed to subpoena Berger and Myers to testify live at trial from a remote location. Because the Court's analysis is the same for each witness the Court will address Berger and Myers together.[7]

First, as to Berger, he is and has been from the outset, a key witness for both parties.  Moreover, he has been 3M's star witness until now and is a paid consultant for 3M.  Berger, presumably, is paid handsomely as a consultant, and no doubt, he understood the gargantuan nature of this MDL when he signed on as such. The Court further observes that Berger's presentation of evidence has evolved, substantially.  As Berger's testimony has evolved, so, have Plaintiffs' case strategies.  If these eight bellwether Plaintiffs are deprived of the opportunity to question Berger live before the jury, they will be prejudiced.  *See In re Actos*, 2014 WL 107153, at *8 ("[A] trial, itself, is a dynamic, ever evolving process and the use of

---

[7] This Court previously found that good cause in compelling circumstances existed for Berger to testify remotely, but not Myers. *See Llyod Baker*, Case No. 7:20-cv-39, ECF No. 133.  Circumstances have changed since that ruling, making the analysis different this time with respect to Myers.

contemporaneous transmission of live testimony better allows for the witness and counsel to be responsive to the inevitable, unexpected developments and shifts that always occur during trial."). Consequently, the Court will permit Plaintiffs to subpoena Berger's live trial testimony from a remote location within 100 miles of his residence.

Notwithstanding its decision to allow Plaintiffs to subpoena Berger, the Court remains sensitive to the fact that Berger has spent a significant amount of time testifying at both his videotaped depositions and at prior bellwether trials. And, in light of his recent retirement, Plaintiffs surely cannot expect Berger to testify live at all of the remaining trials contemplated in this massive MDL. That said, precluding Berger's live testimony for these eight bellwether cases will have the undesired effect of thwarting the parties' access to information they need to chart the "future course of this entire litigation." *In re Xarelto*, 2017 WL 2311719, at *4.

Next, as to Myers. He, too, is a key witness in these cases. The Court finds that Myers' live testimony on Berger's evolving statements is necessary for the resolution of these bellwether cases.[8] Myers is a high-

---

[8] Berger's new testimony really does change the posture of Myers here. When the Court previously ruled that good cause in compelling circumstances did not exist as to Myers, nothing new had transpired. As a result, the Court concluded that Myers' videotaped deposition would suffice. That is no longer the case.

10

ranking official at 3M. He was Berger's direct superior. He controlled the flow of information regarding the CAEv2 to key players. He licensed the patents for the CAEv2, controlled the Flange Report's disclosure, and decided to stop distributing the CAEv2 with the NRR displayed on the packaging. Myers should, therefore, be questioned about Berger's new statements, especially those regarding 3M's policy of stopping labeling tests short of ten subjects, then checking with marketing. Berger originally testified that this policy of stopping labeling tests short of ten subjects was an unwritten one. He more recently testified that he was not involved in the development of the policy and that he does not know why it was implemented. In view of this new information, Plaintiffs want Myers to explain the policy's origins and purpose to the jury. The Court finds this argument persuasive. Additionally, precluding Myers' live testimony for these eight bellwether cases will also have the chilling effect of denying the parties' access to information they need to assess the "future course of this entire litigation." *In re Xarelto*, 2017 WL 2311719, at *4.[9]

---

[9] As an important side note, Plaintiffs Montero, Stelling and Waymen designated the District of Minnesota as their chosen forum. Had Plaintiffs been permitted to litigate their actions there, Myers would have fallen within the subpoena power of that Court.

11

In addition to the key role Berger and Myers play in resolving these cases, the *Vioxx* factors also favor Plaintiffs. First, Berger and Myers are under Defendants' control—Berger has an (indirect) consulting contract with 3M and Myers is a high-ranking officer at 3M. Defendants presented both witnesses at prior bellwether trials, even though they fall outside of the Court's subpoena power. As to the second *Vioxx* factor, the Court need not address it. As Defendants correctly point out, the second *Vioxx* factor is a "non-factor" factor. MDLs are, by their very nature, complex. The third *Vioxx* factor, however, is the most important one, and, as such, the Court will assign it the most weight.

For obvious reasons, 3M seeks a tactical advantage by withholding Berger and Myers from testifying live in front of the jury. Each party to these cases has viewed and still views Berger's and Myers' testimony as key. Up until this moment, 3M has showcased Berger and Myers as their primary deponents. 3M's sudden decision not to make these two witnesses available at trial comes just after Berger made statements at trial which contradict his prior testimony. Defendants thus attempt to shield Berger from being impeached in front of the jury. The same is true for Myers. Myers, as Berger's superior, should not be kept off the witness

stand.  Plaintiffs rightly want the opportunity to examine Berger's superior about his new statements in front of the jury.

As to the remaining Vioxx factors, the Court finds no prejudice or inconvenience to 3M or the witnesses, given that Berger and Myers can testify from a location convenient to them.  And finally, allowing these key witnesses to testify via contemporaneous transmission gives the Court the flexibility it needs to manage these complex cases.

### B.   Court-imposed safeguards for testimony by contemporaneous transmission in these bellwether trials.

Under Rule 43, the court has a duty to impose appropriate safeguards when it allows for remote testimony at trial.  Fed. R. Civ. P. 43(a).  "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Warner v. Cate*, No. 1:12-cv-1146-LJO-MSJ (PC), 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015).

Both Berger and Myers will testify via contemporaneous videoconferencing technology (ZoomGov), which is, of itself, an appropriate safeguard.  *See Liu v. State Farm Mut. Auto. Ins. Co.*, No. 2:18-1862-BJR, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) ("[M]odern

13

videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live' testimony, thereby allowing a juror to judge credibility unimpeded."); *In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d at 971 ("Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony 'satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.'" (quoting *In re Vioxx*, 439 F. Supp. 2d at 644).

Additionally, the Court directs Plaintiffs to ensure the presence of a technology vendor at the site of Berger's and Myers' remote testimony each time they testify. Further, Plaintiffs must supply an attorney at the remote location to manage exhibits were there to be a delay in transmitting the exhibits via ZoomGov.

The Court further directs the parties to confer as soon as possible to establish a logistical protocol and schedule for Berger's and Myers' remote testimony for each of these cases. The protocol must address how the parties and the witnesses will handle both the transmission of exhibits and the raising of objections. The schedule must anticipate that all aspects of Berger's and Myers' testimony will begin and conclude in one trial day and cause no delay in the Court's trial schedule. The parties must share the

logistical protocol and schedule with the Court and the Court's IT Department at their earliest convenience.

Finally, because Plaintiffs did not, and could not, provide the Court with a date certain as to when Berger and Myers will be called to testify in these cases, the Court directs counsel to coordinate with Berger and Myers (through 3M's counsel) to the greatest extent possible. Counsel must coordinate the dates, times, and locations for the testimony with these witnesses (in every case in which they are called to testify), giving Berger and Myers ample time to prepare and adjust their schedules.

### C. Court-ordered videotaping of live testimony at the next two bellwether trials.

During the telephonic hearing on Plaintiffs' and Berger's motions, the court explored the idea of recording ZoomGov testimony at the next two bellwether trials where Berger and Myers appear live from a remote location.  ZoomGov has a record feature that would permit the testimony to be preserved and later viewed by counsel and the court.  After some productive discussion, the Court decided to instruct court personnel to record the live remote testimony for two purposes: (1) to preserve the testimony of these key witnesses live in court before a jury; and (2) to

15

inform the Court and the parties as to whether the recorded testimony would be suitable for use at future trials.[10]

Accordingly, the Court will instruct the Court's IT Department to record Berger's and Myers' testimony when they appear via ZoomGov at the first two of the upcoming bellwether trials where they appear remotely.[11] Counsel must notify the Court of the expected date and time of Berger's and Myers' remote testimony so that court personnel can prepare to record it.

## IV.  CONCLUSION

Accordingly, it is **ORDERED**:

1. Plaintiffs' Expedited Motion To Authorize Remote Testimony Pursuant to Rule 43(a) from 3M Fact Witnesses Elliott Berger and Brian Myers, Master Docket ECF No. 2190, is **GRANTED**.[12]  Plaintiffs may subpoena Berger and Myers to

---

[10] Any party who objects to the recoding of the remote live testimony must file an objection with the reasons for the objection on before October 28, 2021. The Court has not determined whether the recorded testimony can or should be used in subsequent trials so the parties are not required to object to the use of the recordings unless or until one or both sides elects to use the recordings in subsequent trials.

[11] It is the Court's understanding that Berger will appear live at the bellwether trials scheduled for next week.

[12] The corresponding ECF numbers in the individual cases for the motions to be granted are as follows: *Guillermo Camarillorazo,* Case No. 7:20-cv-98 (ECF No. 57); *Theodore Finley,* Case No. 7:20-cv-170 (ECF No. 50); *Marcus Hensley*, Case No. 7:20-cv-93 (ECF No. 55); *Carlos Montero,* Case No. 7:20-cv-67 (ECF No. 41); *Joseph Palanki,* Case No. 3:19-cv-2324 (ECF No. 52); *Ronald Sloan,* Case No. 7:20-cv-1 (ECF No. 54); *Carter Stelling,* Case No. 7:20-cv-143 (ECF No. 39); and *William Wayman,* Case No. 7:20-cv-149 (ECF No. 66).

testify remotely by contemporaneous transmission at these bellwether trials.

2. Berger's Motion to Quash/for Protective Order, *Berger v. 3M Co.*, Case No. 3:21-mc-61-MCR-GRJ (N.D. Fla.) is **DENIED**.

3. The remote testimony of Berger and Myers will be recorded by ZoomGov at the next two cases where they appear from a remote location. Counsel must assist the court by providing the expected dates, times, and locations for the testimony so it can be recorded.

4. The parties must confer with one another **as soon as possible** to establish a logistical protocol and schedule for Berger's and Myers' remote testimony at these bellwether trials. The parties must share the logistical protocol and schedule with the Court and the Court's IT Department as soon as is reasonably possible.

**DONE AND ORDERED** this 28th day of October 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge