**PHILIP A. BATES, P.A.**
ATTORNEY AT LAW
25 WEST CEDAR STREET, SUITE 550
PENSACOLA, FLORIDA 32502

PHILIP A. BATES
pbates@philipbates.net

CAROL A. RUEBSAMEN
cruebsamen@philipbates.net

SARAH S. WALTON
swalton@philipbates.net

MAILING ADDRESS:
POST OFFICE BOX 1390
PENSACOLA, FL 32591-1390

TELEPHONE: (850) 470-0091
FAX:        (850) 470-0441

December 28, 2021

**EMAIL**
Bryan F. Aylstock
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502

Re:   3M Combat Arms Earplug Products Liability Litigation
      Northern District of Florida Case No.: 3:19-md-2885

Dear Mr. Aylstock:

Pursuant to the Court's Order of December 28, 2021, we have attached documents we have been able to obtain under the time constraints imposed by the issuance of the Order. Contemporaneously herewith we have filed our Response to Subpoena and Privilege Log.

PHILIP A. BATES

PAB/CAR
Enclosures

Seller Personnel Agreement

Worker's Name ("Worker")  Elliott H. Berger _____

Worker's Employer or Contractor ("Seller")_____VOLT_____

## 1. SCOPE

This agreement (this "Agreement") states the terms under which Seller will assign Worker to perform certain services for 3M Company and its affiliates ("3M Assignment"). This Agreement is made in consideration of the 3M Assignment, all compensation paid by Seller to Worker for the 3M Assignment, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. If Worker is a former 3M employee or otherwise has obligations to 3M under any other agreement, nothing in this Agreement reduces or otherwise alters Worker's obligations under such agreement.

## 2. 3M CONFIDENTIAL INFORMATION; 3M SYSTEMS ACCESS AND INVENTIONS

WORKER AGREES AND ACKNOWLEDGES THAT WORKER MAY, IN CONNECTION WITH THE 3M ASSIGNMENT, RECEIVE, HAVE ACCESS TO, OR CONTRIBUTE TO 3M CONFIDENTIAL INFORMATION (as defined below), INCLUDING, WITHOUT LIMITATION, ACCESS TO VARIOUS DATA PROCESSING EQUIPMENT (SUCH AS COMPUTERS AND WORD PROCESSORS) THAT PROCESS, ACCESS, OR DISPLAY 3M CONFIDENTIAL INFORMATION. DURING THE 3M ASSIGNMENT AND CONTINUOUSLY THEREAFTER, WORKER WILL NOT USE, DISCLOSE, REPORT, OR DISCUSS 3M CONFIDENTIAL INFORMATION, EXCEPT TO AND WITH 3M EMPLOYEES IN CONNECTION WITH THIS OR A FUTURE 3M ASSIGNMENT.

A. "3M Confidential Information" means all information that is: (1) not generally known about 3M, including, without limitation, trade secrets about 3M's processes and products, and information relating to research, development, manufacture, raw materials, purchasing, accounting, engineering, marketing, selling, services, finance, and business systems and techniques, or a third party's similar information entrusted to 3M; (2) disclosed to Worker during the 3M Assignment that Worker has reason to believe is, or that 3M treats as, 3M Confidential

1

Information; or (3) aurally or visually perceived by Worker while on any 3M site or accessing any 3M data storage, computer, or network system that is not otherwise covered in this paragraph (including, without limitation, technical, legal, or business information, software, and employee data).

B. 3M may give Worker access to one or more 3M data storage systems ("3M Systems") to assist Worker in providing services to 3M. Worker agrees that each access code ("Access Code") and password ("Password") provided by 3M to Worker will only be used by Worker and that Worker will not disclose any Access Code or Password to anyone and will use 3M Systems only as authorized and as necessary to provide services to 3M and in accordance with 3M's network rules. 3M may terminate Worker's rights to use 3M Systems at any time and for any reason. Access Codes and Passwords are 3M Confidential Information and must be returned to 3M on request, on 3M's termination of Worker's right to use 3M Systems, or at the end of Worker's 3M Assignment. Seller will, at its own expense, install and maintain all information technology equipment ("IT Equipment") required to transmit and receive data between its systems and 3M Systems. 3M may deny Worker access to 3M Systems if Worker's IT Equipment is incompatible with any 3M Systems. 3M may also make changes in the 3M Systems operation rules, accessibility periods, Worker identification procedures, types of terminal equipment, and system programming languages. 3M provides Worker with access to 3M Systems on an "AS IS" basis. 3M MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING 3M SYSTEMS. 3M is not responsible for any damage to Worker equipment or loss of Worker or Seller's data arising out of Worker's access to 3M Systems.

C. "Invention" means any discovery, improvement, and idea whether or not shown, described in writing, or reduced to practice, mask work (topography of semiconductor chips) and work of authorship (including, without limitation, document, drawing, manuscript, text, artwork, photograph, motion picture, video program, computer software, sound recording and similar property and work), whether or not patentable, registerable, or copyrightable that: (1) relates directly to 3M business; (2) relates to 3M's actual or demonstrably anticipated research or development; (3) results from the 3M Assignment; (4) is or was made using any 3M equipment, supplies, facility, or 3M Confidential Information; or (5) is or was developed during the 3M Assignment.

2

D. With respect to Inventions made, authored, or conceived by Worker, either solely or jointly with others, during the 3M Assignment or within one year after the 3M Assignment ends, whether or not during normal working hours or at 3M's premises, Worker:

1. Will keep accurate, complete, and timely records of Inventions, which records will be 3M property and be retained on 3M's premises.

2. Will promptly and fully disclose and describe any Inventions in writing to 3M.

3. Will assign, and does hereby assign, to 3M or its designated affiliate, all of Worker's rights to any Inventions, and to application for letters patent, copyright registrations, and/or mask work registrations in all countries and to letters patent, copyright registrations, and/or mask work registrations granted on such Inventions in all countries (collectively referred as "Registrations").

4. Will acknowledge and promptly deliver to 3M (without charge but at 3M's expense) such instruments and to do such other acts as may be necessary in 3M's opinion to preserve property rights against forfeiture, abandonment, or loss and to obtain, defend, and maintain all Registrations and to vest the entire right and title thereto in 3M or its designated affiliate.

This Section 2D does not apply to an Invention developed entirely on Worker's own time and for which no equipment, supplies, facility, or trade secret information of 3M was used and that does not: (a) relate directly to 3M business or to 3M's actual or demonstrably anticipated research or development; or (b) result from Worker's work during the 3M Assignment.

E. Worker will not disclose 3M Confidential Information to any other party and will use 3M Confidential Information only as is required in the 3M Assignment. During the 3M Assignment, Worker will not disclose to 3M or use in the performance during the 3M Assignment, any confidential information in breach of Worker's obligations to any third party. At the 3M Assignment's end, Worker will leave with 3M all records, compositions, articles, devices, and other items that disclose or embody 3M Confidential Information whether prepared by Worker or others, including all copies or specimens thereof in Worker's possession.

3

F. Except as is listed below, Worker will not assert any rights under any Inventions as having been made, conceived, authored, or acquired by Worker prior to the 3M Assignment. WRITE BRIEF DESCRIPTION HERE. IF ADDITIONAL SPACE IS NEEDED, ATTACH SEPARATE SHEETS TO THIS AGREEMENT. (Do not disclose or describe here anything Worker regards as confidential. Give a brief description of the product or process, etc., plus a list of source documents, such as patents, patent applications, drawings, or written descriptions, identified by number, title, and date.)

For two years after the 3M Assignment ends, before accepting any employment or assignment, Worker will inform his/her employer and any party to whom Worker is assigned of this Worker Agreement and provide them a copy of it.

3. NOTICE AND CONSENT: PERSONAL INFORMATION TRANSFER AND STORAGE

A. Worker understands that, in order for 3M to facilitate Worker's assignment, certain information including but not limited to Worker's personal and administrative information will be collected, processed, and stored by 3M, a 3M affiliate, and selected contractors.

1. Personal information gathered by 3M includes, without limitation, Worker's name, home contact information, and social security number or national identification number. This information will be used by 3M for identification, security, and personnel management purposes, such as providing building access, electronic systems access, and assignment administration.

2. Administrative information gathered by 3M includes (if provided) Worker's 3M phone number, 3M email address and physical mailing address while assigned at 3M, and contact information about Seller. During Worker's assignment, general 3M contact information will be available to 3M employees and other contract and temporary employees to help facilitate Worker's assignment.

3. 3M will retain Worker's administrative information and certain personal information after Worker's assignment at 3M has ended for as long as deemed necessary by 3M.

4

B. Worker acknowledges that Worker understands and consents to this collection, use, and disclosure of Worker's personal and administrative information.

4. ADDITIONAL PROVISIONS

A. This Agreement is indefinite in term and applies each time Worker accepts a 3M Assignment unless Worker signs a separate written agreement for a future 3M Assignment. During the 3M Assignment Worker will not for any purposes be employed by 3M and Worker will not ever claim otherwise. Worker acknowledges that if 3M hires Worker as a 3M employee, Worker will receive no credit for any 3M Assignment. Regardless of the type of work Worker performs or the length of the 3M Assignment, no 3M benefit or 3M benefit plan of any kind available to 3M employees will apply to Worker, including, without limitation, any related to worker's compensation, unemployment, health, life, pension plan, or any other matter.

B. Worker will have no right to seek, and will not seek, any compensation of any kind from 3M. Any compensation Worker receives will be from Seller. 3M is not obligated to withhold from any payments made to Seller any taxes relating to the 3M Assignment. Worker is not a 3M employee or entitled to any 3M employee rights or benefits, even if, during the 3M Assignment, Worker is asked to attend any 3M function, is given access to certain 3M areas, is assigned any 3M identification number, is required to use a 3M pass, receives any 3M publications, etc. During the 3M Assignment, Worker will follow all 3M policies and rules relating to behavior and conduct, including, without limitation, those relating to drug, alcohol, anti-harassment, health, safety, security, and information security. At any time, 3M may end a 3M Assignment and give Seller assessments of Worker's performance and behavior, which Seller may use for any purpose. Worker waives any future claim that Worker may have against 3M or any of its employees in connection with any of these actions.

C. Worker and Seller acknowledge that: (1) 3M and its affiliates are third party beneficiaries to this Agreement, who can directly enforce any of Seller's rights without Worker having a right to setoff, defense, or counterclaim; and (2) under no circumstances will any 3M entity be responsible to pay any fee, expense, or other consideration that Seller may owe to Worker.

5

D. This Agreement may only be modified or terminated by written agreement of the Parties. This Agreement replaces any prior written or oral agreement between the Parties as to this subject matter but does not affect any obligations or rights that accrued prior to the date hereof, nor does it affect any obligations or duties owed between Seller and Worker. All Worker's obligations under this Agreement bind Worker's' heirs, successors, assigns, and legal representatives.  Nothing provided herein supersedes or replaces other obligations that Worker may have with Seller, including, without limitation, where such obligations may be more restrictive.  The 3M Assignment to which Worker may be assigned will be carried out pursuant to a services agreement ("Services Agreement") between Seller and 3M; and Seller enters into this Agreement under the Services Agreement.

WORKER   Elliott H. Berger

Signature:

Printed Name: Digitally signed by Elliott H. Berger
Location: eberger@compuserve.com
09/07/2018 02:51:57 PM -04:00

Date:      09/07/2018

SELLER      VOLT

Signature:

Printed Name:

Title:

Date:   09/07/2018

6

# VOLT MANAGEMENT CORP. EMPLOYMENT AGREEMENT
**Hourly Non-Exempt**

**VOLT**

Employee ID or Last 4 Digits of SSN: 8011                     Department ID: 53110

This Employment Agreement ("Agreement") made 09/07/2018                     between Volt Management Corp., (hereinafter
                                                         (Date)

called "Company") and Elliott H. Berger                                           (hereinafter called "Employee").
                                    (Employee Name)

Whereas, the parties agree that Employee is to be employed by the Company, conditioned upon the following terms and conditions applicable to Employee's employment assignment.

1. **Effective** 10/1/2018                     , Employee shall earn wages for performing actual work services on Employee's employment assignment to the Company's customer(s) (each of which is hereinafter called "Client") as follows:

   Client Name: 3M-DTS

   Address: 7911 Zionsville Rd.  Indianapolis, IN 46268-1650

   Report to: Jeff Hamer                               Job Title: Senior Technical Analyst

2. **AT-WILL EMPLOYMENT:**  This Agreement is for temporary employment only.  Either party may terminate Employee's employment at any time, with or without cause, by giving notice to the other, and Employee's employment shall terminate upon the giving of such notice.  Any assignment may be terminated at any time by Employee or Company (including at Client's direction) with or without cause.

3. Straight Time Hourly Rate: $ 125.00          Overtime Hourly Rate: $ 187.50          (Overtime hours as determined by the laws of the State of employment).

4. Employee agrees to comply with the Client's instructions and rules while on assignment with the Client.

5. Per Diem: Director or VP approval is required, please send form VTC 270 (Employee Per Diem Eligibility Certification) to perdiemapproval@volt.com (*Check box (a),(b) or (c) that applies.*
   (a)◉ NONE; or
   (b)○ For each *full* day actually worked by Employee a daily amount of $ _____ , not to exceed _____ days per week (the number of days in Employee's regularly scheduled workweek).
   (c)○ Only for applicable qualifying assignments, $ _____ minimum Per Diem payable for each week in which any work is performed on assignment in the workweek.

   In addition to the wage rates stated above, Employee shall only be eligible to be paid Per Diem, payable in accordance with applicable law, conditioned upon and subject to the terms set forth in the Employee Per Diem Eligibility Certification, a properly completed and signed copy of which must be attached to this Agreement for payment of Per Diem.

6. Employment Restriction:  In those states that enforce restrictive covenants, employee shall not accept employment directly or indirectly with, at, for or by Client or Client's customer for a period of 180                     days following the completion of Employee's assignment to Client or Client's customer without the written consent of the Company.

7. Other Compensation: ◉None ○ See attached (describe): _____

8. **AGREEMENT TO ARBITRATE DISPUTES:**  Any employment and/or employment termination related disputes and/or disputes arising out of or relating to the actions of the Company (or Company's employees) and/or disputes arising out of or related to any assignment and/or termination of any assignment and/or arising out of or relating to the actions of the Client (or Client's employees), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the employment rules of the American Arbitration Association ("AAA"), which can be found at www.adr.org or a copy of the AAA rules can be provided to Employee upon Employee's request to the Company at the time of hire.  Any arbitration between the Company and Employee will be on an individual basis only, and the arbitrator shall not have any authority to preside over or to resolve claims on a class, collective, consolidated or representative basis.  With respect to Private Attorney General Act ("PAGA") claims, Employer and Employee will not arbitrate PAGA claims on behalf of anyone other than the Employee, and the arbitrator shall not have any authority to preside over a PAGA claim involving anyone other than the Employer and Employee. The arbitrator may award any and all remedies in accordance with the laws of the state where Employee was last employed with the Company.  The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award.  Judgment upon the arbitrator's award may be entered in any court having jurisdiction.  All issues pertaining to the enforceability, application or validity of this agreement or arbitrability of any claim shall be decided only by a court of competent jurisdiction and not by an arbitrator.  If any claim is deemed not to be arbitrable, the arbitrable claim(s) shall be resolved first and any non-arbitrable claim(s) will be stayed pending the resolution of the arbitrable claim(s).  If any portion of this agreement is deemed unenforceable, that portion shall be severed and the remainder of the agreement shall be enforced to the full extent permitted by law. The Company and Employee hereby waive our respective rights to trial by jury and/or to bring any class, collective, consolidated or representative claim, cause of action or defense that each may have against the other or against any Client to the extent set forth above.  This agreement to arbitrate disputes does not prevent Employee from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

**EMPLOYEE AND COMPANY CERTIFY THAT EACH HAS READ THE ABOVE ALONG WITH THE ADDITIONAL TERMS ON PAGE TWO (2) AND EMPLOYEE AND COMPANY AGREE TO ALL TERMS AND CONDITIONS OF THIS AGREEMENT.**

**Volt Management Corp.**

**Company Representative:** _____
                                     (Print Name)

SIGN HERE ▶ : _____

**Title:** _____

Digitally signed by Elliott H. Berger
Location: eberger@compuserve.com
09/07/2018 12:24:07 PM -04:00

**Employee:** _____
                          (Print Name)

SIGN HERE ▶ : _____

**Date:** _____

Original: Employee File          Copy: Employee          Copy: Shared Accounting Services if Per Diem selected

VTC 341B (02/01/2017)

## Additional Terms

9. <u>Waiver of Jury Trial:</u>  The Company and Employee hereby waive our respective right to trial by jury in any lawsuit or cause of action between Employee and the Company and/or any other employee of the Company and/or any Client of the Company and/or Client employee.

10. During the course of employment by the Company, employee will not disclose to the Company any secret or confidential information owned by a third party.  Employee further agrees to inform the Company in writing if anything disclosed by Employee to the Company is known or believed by Employee to be the subject matter of a Patent or Copyright.

11. Employee represents and warrants that Employee is under no obligation or restriction, nor will Employee assume any such obligation or restriction, which would in any way interfere, be inconsistent or be in conflict with Employee's employment by the Company and/or position with/at Client.

12. All ideas, inventions, creations, developments or improvements (collectively "Ideas") conceived by Employee, alone or with others, while employed by the Company, whether or not during working hours, that are within the scope of the Company's or Client's business or that relate to any of the Company's or Clients work or projects, are the exclusive property of the Company or Client, as the case may be.  Employee agrees to assign and does hereby assign and transfer to Company or Client, as the case may be, all of Employee's right, title and interest in and to all such Ideas, and to any Letters Patent, Copyrights and applications therefore in all countries.  Employee agrees, whenever required by the Company and at the expense of the Company, to execute and deliver all documents and do all things necessary for the Company to establish that all Ideas are the exclusive property of the Company or Client.  Employee agrees not to divulge any Ideas to anyone and shall keep, maintain and make available to the Company complete and up-to-date written descriptions and drawings of all Ideas.

    The previous paragraph of this Agreement does not apply to any invention for which no equipment, supplies, facility, or trade secret information of the Company or Client was used and which was developed entirely on Employee's own time, and (a) which does not relate to the business of the Company or Client or to the Company's or Client's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed for the Company or Client.

    Employee further agrees that while employed by the Company, all Ideas being developed by Employee shall be identified to the Company promptly upon conceiving such Ideas.  Upon request by the Company, Employee will disclose any such Idea to the Company (by a full and clear description) for the purpose of determining the Company's and/or Client's rights therein.

13. Employee will not incorporate any Ideas owned by Employee or by any third party into the work being performed by Employee under this Agreement nor use any such Ideas in performing work under this Agreement.  Employee further agrees that Employee will not insert into any work any Code that would in any way interfere with Client's unrestricted and perpetual use of the work thereafter, except as required in the course of employment by the Company.

14. While employed by the Company, Employee may have access to and become acquainted with secrets, confidential information and various trade secrets, such as formulas, patterns, Ideas, devices, processes, software programs, finances, compilations and documentation, which are owned by the Company or Client or used in the operation of Company's or Client's business.  **Employee agrees not to disclose any of these and not to use them in any way, either while employed by the Company or at any time thereafter, except as required in the course of employment by the Company or as permitted or required by law, litigation or government agency investigation** (refer to Volt's Code of Conduct or Whistleblower Policy for further information).

15. The original and all copies of all files, records, drawings, specifications and documents of any nature whatsoever, all equipment and all software programs whether prepared by Employee or otherwise coming into Employee's possession while employed by the Company, are and shall remain the exclusive property of the Company or Client.  None of these items can be used or retained by Employee except as required in the course of employment by the Company.  At the termination of employment or Employee's assignment or at the request of the Company all of these items in Employee's possession shall be returned to the Company.

16. Employee understands and agrees that the assignment to Client is conditioned upon acceptance of this Agreement for Employee's employment services.  In consideration of the payments and benefits offered and made to Employee by the Company, which Employee accepts as full compensation for employment on assignment to Client, Employee hereby expressly waives any entitlement to any compensation, insurance or benefits of any kind from Client and agrees that Employee will neither participate in nor make any claim from or against any of Client's employee benefit plans, including but not limited to pension, 401 (k), profit sharing, stock option, stock purchase, retirement, insurance(s), disability, vacation, severance or any other such programs that may be offered by the Client to its employees.  Employee understands that he/she has induced the Company to offer Employee the employment assignment to Client, based upon the Employee's knowing and voluntary acceptance of the compensation herein, as the complete and total consideration for Employee's employment services, with the further understanding that the Company is relying on these compensation terms as the basis for Company's financial and contractual arrangements with the Client.

17. Employee will execute and deliver all such other further instruments and documents as may be necessary, in the opinion of the Company, to carry out the purpose of this Agreement.

18. Employee and Company both acknowledge that either party shall be entitled to seek applicable injunctive relief as appropriate under the law.  It is acknowledged and agreed that in the event that Employee fails or refuses to perform Employee's obligations under this Employment Agreement, irreparable damage will result to the Company, its business and properties and/or the Client, for which damage remedies available at law will be inadequate (none of which remedies or damages are hereby waived) and may be in addition to any injunctive relief.

19. If any provision of this Agreement is held for any reason to be unenforceable, the remainder of the Agreement shall nevertheless remain in full force and effect.

20. This contains the entire agreement between the parties and can be changed only in a signed writing, except (i) an increase in the wage rate must be in writing issued by an authorized representative of the Company or (ii) changes in wage and/or per diem rates imposed by statute, ordinance, regulation, code, order and/or similar laws, which subsequently become applicable to Employee's employment assignment, will result in adjustment of the wage and/or per diem rate(s), without increase in the aggregate wage and per diem rates payable to the Employee, and Employee agrees to such modification(s) without further signed writing.

EB
Employee
Initials

VTC 341B (02/01/2017)

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

Nick Wasdin
To Call Writer Directly:
+1 312 862 3254
nick.wasdin@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

August 5, 2019

Elliott H. Berger, President
Berger Acoustical Consulting, LLC
221 Olde Mill Cove
Indianapolis, IN 46260-2381

Dear Mr. Berger:

As you know, Kirkland & Ellis LLP (the "firm") represents 3M Company ("3M") in connection with litigation involving the Combat Arms Earplugs. Acting on behalf of 3M, we have discussed with you the possibility of you serving as a consulting expert in this matter.

I am pleased to inform you that 3M has authorized the firm, as its agent, to retain you, operating exclusively on behalf of and in your role as President of Berger Acoustical Consulting, LLC ("BAC"), for that purpose. They have agreed to pay BAC's customary fee of $400/hr. plus reasonable expenses incurred in connection with your work for 3M. Significant expenses, those exceeding $1,500, should be approved in advance if possible. Travel time in airports and in flight will be billed at $125/hr. unless working during airline travel, in which case the standard rate applies.

The firm, acting only as an agent of 3M, will pay BAC directly for your services. BAC should send its bills to Kimberly Branscome at Kirkland & Ellis LLP. Please understand that Kirkland & Ellis LLP will not pay any of your bills greater than $50,000 prior to obtaining reimbursement from 3M. Due to billing cycles, payment of such large amounts may result in a late payment. If 3M contests any of BAC's fees and costs, Kirkland & Ellis LLP is not and will not be responsible for the payment of the fees and costs absent a written agreement to the contrary.

In the course of your retention, we may call upon you to provide information, prepare studies or reports, participate in meetings, review materials, and undertake other tasks for the firm as counsel to 3M. We intend that your work, opinions, conclusions and communications will be covered by the attorney-client privilege and attorney work product rule to the extent provided by law, and you agree to do all things necessary to preserve those privileges.

BAC agrees that documents and information of any kind that you (or anyone assisting you) acquire will be maintained in strict confidence and not disclosed to any other person or

Beijing   Boston   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

# KIRKLAND & ELLIS LLP

Elliott H. Berger
August 5, 2019
Page 2

party without our prior written consent.  All documentary material provided to you (or to anyone assisting you) together with all copies thereof must be returned immediately upon request.  In addition, any activities that you perform under this agreement and any conclusions or judgments that you reach or have reached must be maintained as confidential in the same way.  You should understand that these restrictions will continue even after the termination of your consulting work for us and after the termination of the matter.

Reports and other documents generated, or obtained by BAC, in the course of its work on this matter will be the property of our client 3M.  If authored by you, they will be considered "Works Made for Hire" and all right, title and interest in such works is hereby assigned by you and BAC to 3M.

The reasonable expenses that 3M has agreed to pay above shall not include any fees or expenses of attorneys or accountants retained to advise BAC or you personally in connection with the review or enforcement of this agreement or any other aspect of your work for 3M, provided, however, that 3M agrees to pay the reasonable fees and expenses of an attorney specializing in securities matters to advise you on compliance with applicable securities laws during the course of your retention.

BAC undertakes that it will not, and will take reasonable steps to ensure that any person acting on its behalf in connection with this retention (including, without limitation employees, affiliates and agents) does not:

- offer, promise or give any financial or other advantage to any person with the intention of influencing a person (who need not be the recipient of the advantage) to perform his or her function improperly, or where the acceptance of such advantage would itself be, or might reasonably be seen to be, improper; or

- offer, promise or give any financial or other advantage to a foreign public official (or to any other person at the request of, or with the acquiescence of, a foreign public official) with the intention of influencing that official in the performance of his or her public functions;

in either case with a view to obtaining or retaining business or any form of commercial advantage either for Kirkland & Ellis LLP or for 3M in connection with this retention.

3M recognize that you currently have an arrangement through Volt Workforce Solutions for general consulting to the 3M Indianapolis Acoustical Laboratories.  3M agrees that the agreement set forth in this letter does not affect the above arrangement through Volt Workforce Solutions.

# KIRKLAND & ELLIS LLP

Elliott H. Berger
August 5, 2019
Page 3


The nature and duration of your retention will be determined by the firm and may be modified or terminated by us at any time for any reason.  Likewise, BAC also retains the right to terminate this agreement at any time for any reason.  This agreement may not be amended or modified, nor any provision waived by any means other than an express writing to such effect which is signed by you, the firm, and 3M.


\* \* \*


We greatly appreciate your help in this matter, and we are looking forward to working with you.

Sincerely yours,

KIRKLAND & ELLIS LLP

By: _Nicholas F. Wasdin_

Name:    Nicholas F. Wasdin

## KIRKLAND & ELLIS LLP

Elliott H. Berger
August 5, 2019
Page 4


Agreed and accepted this _5__th day of August, 2019.

Berger Acoustical Consulting, LLC

By: _____

Name: Elliott H. Berger, President

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Sierra Elizabeth
To Call Writer Directly:
+1 213 680 8543
sierra.elizabeth@kirkland.com

333 South Hope Street
Los Angeles, CA 90071
United States

+1 213 680 8400

www.kirkland.com

Facsimile:
+1 213 680 8500

October 31, 2019

Elliott Berger

Re:     *3M Combat Arms Earplugs Product Liability Litigation*

Dear Mr. Berger:

As you are aware, Kirkland & Ellis LLP ("Kirkland & Ellis") represents 3M Company ("3M") in the above-referenced litigation.

You have been subpoenaed to give testimony at a deposition and to provide documents in this case. 3M has agreed to provide you with legal representation for the limited purpose of preparing for and giving a deposition and producing documents in this litigation. 3M has agreed to provide such representation, at its cost, under the terms set forth in this letter.

As has been discussed with you by telephone, Kirkland & Ellis is not currently aware of any conflict of interest between you and 3M. However, in the event that a conflict of interest arises (or is later determined to exist) and Kirkland & Ellis determines in its sole discretion that it is unable to continue to represent you, Kirkland & Ellis reserves the right to resign from this limited representation. You hereby consent to such right of resignation by Kirkland & Ellis and agree that you will not assert any conflict of interest or other objection that would preclude Kirkland & Ellis from representing 3M or its affiliates in this current matter or any other matters, including adverse to you. To the extent that Kirkland & Ellis determines that it cannot continue the representation of you described in this letter, you agree to seek separate legal counsel in such event, with the reasonable expenses of such representation to be paid by 3M.

Kirkland & Ellis acknowledges, and you agree, that there is a common interest as between you and 3M for purposes of responding to the subpoena and sitting for deposition in this action. As such, any privileged information or work product provided to you by 3M during the course of this representation is subject to a joint defense or common interest privilege such that the protections from discovery afforded to privileged information and work product are preserved and are not waived. You also agree that, although communications between you and 3M's counsel, Kirkland & Ellis (as well as communications between you and other attorneys retained by 3M to work on this litigation), may be privileged as attorney-client communications, such communications will not be confidential as between you and 3M. Therefore, Kirkland & Ellis may use such information obtained from you in connection with the representation of 3M

Beijing   Boston   Chicago   Dallas   Hong Kong   Houston   London   Munich   New York   Palo Alto   Paris   San Francisco   Shanghai   Washington, D.C.

## KIRKLAND & ELLIS LLP

Elliott Berger
October 31, 2019
Page 2

regarding the matters contemplated by this letter, including adverse to you, and you hereby agree not to raise any objection to such use.

In addition, we want to be fair not only to you but also to our other clients. Because your current legal interests (and future legal interests) may differ from those of our other clients, it is possible that one of our other clients might at some time take a position contrary to yours in another matter in which we have been retained. If such a conflict of interest exists or arises in the future, you hereby agree to waive any such conflict of interest or other objection that would prevent our representation of another client in that matter. Specifically, our representation of you in connection with your deposition will be with the understanding that our work for you will not prevent us from continuing any current representation of another client or assuming any future representation in other matters that another client may request.

You have a right to obtain separate counsel to review independently the terms of this retention before you agree to those terms if you desire, and we have advised you of your right to retain separate counsel to represent you in response to the subpoena in this case.

If you agree to the joint representation as described herein, please confirm your agreement by signing this letter in the space provided below and returning it to us. If you accept our representation of you for purposes of this subpoena, our first step will be to contact plaintiffs' counsel to set a mutually convenient date for the deposition. Assuming that you agree to have us represent you, please tell anyone who attempts to contact you regarding the subpoena or this litigation that you are represented by counsel and refer such person(s) to me.

If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sierra Elizabeth

I have read this letter, and I understand and agree with the contents. I request Kirkland & Ellis LLP, on behalf of 3M, to represent me for the limited purpose of preparing for and defending any depositions and associated document requests arising out of the *3M Combat Arms Earplugs Product Liability Litigation* matter noted herein. I hereby waive my objection to any conflict of interest that Kirkland & Ellis LLP has or may have in this representation.

KIRKLAND & ELLIS LLP

Elliott Berger
October 31, 2019
Page 3

_____     Date: _____
Elliott Berger

PHILIP A. BATES, P.A.

ATTORNEY AT LAW

25 WEST CEDAR STREET, SUITE 550

PENSACOLA, FLORIDA 32502

PHILIP A. BATES
pbates@philipbates.net

CAROL A. RUEBSAMEN
cruebsamen@philipbates.net

SARAH S. WALTON
swalton@philipbates.net

MAILING ADDRESS:
POST OFFICE BOX 1890
PENSACOLA, FL 32591-1890

TELEPHONE: (850) 470-0091
FAX:         (850) 470-0441

August 16, 2021

<u>VIA EMAIL AND U.S. MAIL</u>: (eberger@compuserve.com)
Elliott Berger
221 Olde Mill Cv.
Indianapolis, IN 46260

RE:    *In Re:* 3M Combat Arms Earplug Products Liability Litigation
Northern District of Florida Case No.: 3:19-md-2885

Dear Mr. Berger:

This correspondence will confirm that you have engaged this firm to represent you as a witness in connection with the referenced matter. We are pleased to have this opportunity to work with you. At the outset, we feel it is important to make sure there is no misunderstanding about what we are going to do and how we will charge for our services. We have agreed to undertake this representation on the following terms:

1.    <u>Work</u>:  We are going to represent your interests in connection with your ongoing role as a subpoenaed witness in the above case. It will be our objective to limit and hopefully conclude your required participation in the coming six months to nine years.

2.    <u>Communication</u>: We understand that you will be our contact in this matter. We will send copies of all papers sent or received by this office in order that you will be fully apprised of the posture of the case.

3.    <u>Fees</u>:  In connection with this representation, we understand that 3M Company will be responsible for the payment of our fees. We will bill for legal services performed based upon the value of our actual time spent at the hourly rates for the attorneys and legal assistants who work on the file. My hourly rate for services rendered in connection with the matter will be $375.00 per hour. Other lawyers in this firm will be billed at their lesser rates. My legal assistant's time will be billed at the rate of $150.00 per hour. My rates adjust annually during January of the year. The rate, as adjusted, will be applicable as of the date of my January billings.

4.    <u>Interim Billings</u>. Interim billings will be submitted on a monthly basis. All sums due pursuant to interim billings will be due and payable upon receipt of the invoice (not later than fifteen days after the date of the invoice) unless otherwise agreed or stated on the invoice. Our

Elliott Berger
August 16, 2021
Page 2

engagement is conditional upon 3M Company's prompt payment of our billings. Failure to pay interim billings promptly will permit the firm, after notice to you, to terminate its representation.

        5.     <u>Out-of-Pocket Disbursements</u>. You will be responsible for the payment of all firm costs and out-of-pocket disbursements incurred in connection with our handling of matters.

        6.     <u>Conflicts of Interest</u>: Please be aware that this firm represents many other clients. It is possible that after the conclusion of our current representation you, a current or future client of ours may be involved in a transaction with you or have a dispute with you. In such cases where the other client's matter is not substantially related to our current representation of you, professional standards allow this firm to proceed with the new representation without additional consultation with you. In contrast, in such cases where the future client's matter is substantially related to our current representation of you, this firm must obtain your consent before proceeding to represent the other client in that matter. Absent further agreement, our current representation of you shall be deemed to have ended no later than the point when we have performed no legal services for you in connection with this representation for a period of one year. In no event will our representation of another client involve the use, to your  disadvantage, of any confidential information that we have obtained from you as a result of your representation.

        7.     <u>Termination of Engagement</u>: You may terminate this engagement with or without cause at any time on reasonable written notice to us. If the firm determines that it has grounds to terminate its relationship with you on grounds that relate to the Florida Code of Professional Responsibility or for non-payment of statements, the firm will be able to terminate its relationship at that time by reasonable notice. We will return all of your  papers and property immediately upon the termination of the engagement. We will, however, retain our own files. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable time after the termination of the engagement. Termination of our services will not affect your responsibility to pay for legal services rendered and all costs incurred up to the date of notice of termination, and for any further work required of us in order to facilitate an orderly turnover of matters in process at the time of termination.

        8.     Because of the increase in corporations owning or partially owning subsidiaries, and the problems this creates for lawyers in identifying potential conflicts of interest, we advise our corporate clients that unless otherwise agreed, we will not typically regard an affiliate of a corporate client as a client of the firm. Furthermore, the firm will not regard a representation that is adverse to an affiliate of a corporate client as adverse to the client, in the absence of a request by the client to the contrary. Accordingly, if there is a corporate family member that you wish to regard as a client for conflict purposes, please let us know.

Elliott Berger
August 16, 2021
Page 3

9.     You have been advised that contested litigation is often expensive, and that the fees and costs incurred in a case are frequently dictated by the opposing parties' legal position and its inclinations with regard to prosecuting or defending this case. Consequently, you have been made aware that in the event of litigation, the cost may be significant over the long term.

10.     We may engage other lawyers or law firms to assist us in various aspects of this work. We will remain responsible in any such instance for the quality and supervision of such work. It is our understanding that you have consented to this and that you will be responsible for those fees and costs, as well.

We would appreciate you indicating your acceptance and confirmation of these terms by signing a copy of this letter and returning the signed copy to us as soon as practicable. If you have some question or concern regarding any of the foregoing, please contact me at your early convenience.

Sincerely,

PHILIP A. BATES

PAB/dmw
Enclosure

Elliott Berger
August 16, 2021
Page 4

           The terms of the foregoing engagement are accepted by Elliott Berger as of this ___ day of August, 2021.


_____

Elliott Berger

**PHILIP A. BATES, P.A.**
ATTORNEY AT LAW
25 WEST CEDAR STREET, SUITE 550
PENSACOLA, FLORIDA 32502

PHILIP A. BATES
pbates@philipbates.net
CAROL A. RUEBSAMEN
cruebsamen@philipbates.net
SARAH S. WALTON
swalton@philipbates.net

MAILING ADDRESS:
POST OFFICE BOX 1390
PENSACOLA, FL 32591-1390

TELEPHONE: (850) 470-0091
FAX:        (850) 470-0441

August 16, 2021

**VIA EMAIL AND U.S. MAIL:** (eberger@compuserve.com)
Elliott Berger
221 Olde Mill Cv.
Indianapolis, IN 46260

RE:   *In Re:* 3M Combat Arms Earplug Products Liability Litigation
      Northern District of Florida Case No.: 3:19-md-2885

Dear Mr. Berger:

This correspondence will confirm that you have engaged this firm to represent you as a witness in connection with the referenced matter. We are pleased to have this opportunity to work with you. At the outset, we feel it is important to make sure there is no misunderstanding about what we are going to do and how we will charge for our services. We have agreed to undertake this representation on the following terms:

1.    Work:   We are going to represent your interests in connection with your ongoing role as a subpoenaed witness in the above case. It will be our objective to limit and hopefully conclude your required participation in the coming six months to nine years.

2.    Communication: We understand that you will be our contact in this matter. We will send copies of all papers sent or received by this office in order that you will be fully apprised of the posture of the case.

3.    Fees:   In connection with this representation, we understand that 3M Company will be responsible for the payment of our fees. We will bill for legal services performed based upon the value of our actual time spent at the hourly rates for the attorneys and legal assistants who work on the file. My hourly rate for services rendered in connection with the matter will be $375.00 per hour. Other lawyers in this firm will be billed at their lesser rates. My legal assistant's time will be billed at the rate of $150.00 per hour. My rates adjust annually during January of the year. The rate, as adjusted, will be applicable as of the date of my January billings.

4.    Interim Billings.   Interim billings will be submitted on a monthly basis. All sums due pursuant to interim billings will be due and payable upon receipt of the invoice (not later than fifteen days after the date of the invoice) unless otherwise agreed or stated on the invoice. Our

Elliott Berger
August 16, 2021
Page 2

engagement is conditional upon 3M Company's prompt payment of our billings. Failure to pay interim billings promptly will permit the firm, after notice to you, to terminate its representation.

        5.     <u>Out-of-Pocket Disbursements</u>. You will be responsible for the payment of all firm costs and out-of-pocket disbursements incurred in connection with our handling of matters.

        6.     <u>Conflicts of Interest</u>: Please be aware that this firm represents many other clients. It is possible that after the conclusion of our current representation you, a current or future client of ours may be involved in a transaction with you or have a dispute with you. In such cases where the other client's matter is not substantially related to our current representation of you, professional standards allow this firm to proceed with the new representation without additional consultation with you. In contrast, in such cases where the future client's matter is substantially related to our current representation of you, this firm must obtain your consent before proceeding to represent the other client in that matter. Absent further agreement, our current representation of you shall be deemed to have ended no later than the point when we have performed no legal services for you in connection with this representation for a period of one year. In no event will our representation of another client involve the use, to your disadvantage, of any confidential information that we have obtained from you as a result of your representation.

        7.     <u>Termination of Engagement</u>: You may terminate this engagement with or without cause at any time on reasonable written notice to us. If the firm determines that it has grounds to terminate its relationship with you on grounds that relate to the Florida Code of Professional Responsibility or for non-payment of statements, the firm will be able to terminate its relationship at that time by reasonable notice. We will return all of your papers and property immediately upon the termination of the engagement. We will, however, retain our own files. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable time after the termination of the engagement. Termination of our services will not affect your responsibility to pay for legal services rendered and all costs incurred up to the date of notice of termination, and for any further work required of us in order to facilitate an orderly turnover of matters in process at the time of termination.

        8.     Because of the increase in corporations owning or partially owning subsidiaries, and the problems this creates for lawyers in identifying potential conflicts of interest, we advise our corporate clients that unless otherwise agreed, we will not typically regard an affiliate of a corporate client as a client of the firm. Furthermore, the firm will not regard a representation that is adverse to an affiliate of a corporate client as adverse to the client, in the absence of a request by the client to the contrary. Accordingly, if there is a corporate family member that you wish to regard as a client for conflict purposes, please let us know.

Elliott Berger
August 16, 2021
Page 3

9.     You have been advised that contested litigation is often expensive, and that the fees and costs incurred in a case are frequently dictated by the opposing parties' legal position and its inclinations with regard to prosecuting or defending this case. Consequently, you have been made aware that in the event of litigation, the cost may be significant over the long term.

10.     We may engage other lawyers or law firms to assist us in various aspects of this work. We will remain responsible in any such instance for the quality and supervision of such work. It is our understanding that you have consented to this and that you will be responsible for those fees and costs, as well.

We would appreciate you indicating your acceptance and confirmation of these terms by signing a copy of this letter and returning the signed copy to us as soon as practicable. If you have some question or concern regarding any of the foregoing, please contact me at your early convenience.

Sincerely,

PHILIP A. BATES

PAB/dmw
Enclosure

Elliott Berger
August 16, 2021
Page 4


       The terms of the foregoing engagement are accepted by Elliott Berger as of this 16 day of August, 2021.




                              Elliott Berger
                              Elliott Berger

**PHILIP A. BATES, P.A.**

ATTORNEY AT LAW

25 WEST CEDAR STREET, SUITE 550

PENSACOLA, FLORIDA 32502

PHILIP A. BATES
pbates@philipbates.net

CAROL A. RUEBSAMEN
cruebsamen@philipbates.net

SARAH S. WALTON
swalton@philipbates.net

MAILING ADDRESS:
POST OFFICE BOX 1390
PENSACOLA, FL 32591-1390

TELEPHONE: (850) 470-0091
FAX:         (850) 470-0441

August 16, 2021

**VIA EMAIL: (ejrucker@mmm.com)**
3M Company
**Attn: Eric Rucker**
Associate General Counsel
3M Legal Affairs
3M Center, 220-9E-02
St. Paul, MN 55144-1000

RE:   *In re:* 3M Combat Arms Earplug Products Liability Litigation
Northern District of Florida Case No.: 3:19-md-2885
Elliott Berger

Dear Mr. Rucker:

I am writing to follow up our calls and communications with respect to representation of Mr. Elliott Berger in connection with the ongoing 3M Earplug MDL currently pending in the Northern District of Florida, Pensacola Division.

I have attached a copy of my engagement letter to Mr. Berger for your consideration. I would appreciate some affirmative confirmation from 3M as to its concurrence in and intent to pay the sums properly accruing and billed and indicated in this letter. Please call if you have a question or concern.

Thank you for the opportunity to work with you and 3M in this case.

Sincerely,

PHILIP A. BATES

PAB/dmw
Enclosure
cc:   Elliott Berger

PHILIP A. BATES, P.A.

ATTORNEY AT LAW

25 WEST CEDAR STREET, SUITE 550

PENSACOLA, FLORIDA 32502

PHILIP A. BATES
pbates@philipbates.net

CAROL A. RUEBSAMEN
cruebsamen@philipbates.net

SARAH S. WALTON
swalton@philipbates.net

MAILING ADDRESS:
POST OFFICE BOX 1390
PENSACOLA, FL 32591-1390

TELEPHONE: (850) 470-0091
FAX:        (850) 470-0441

August 16, 2021

**VIA EMAIL AND U.S. MAIL**: (eberger@compuserve.com)
Elliott Berger
221 Olde Mill Cv.
Indianapolis, IN 46260

RE:  *In Re:* 3M Combat Arms Earplug Products Liability Litigation
Northern District of Florida Case No.: 3:19-md-2885

Dear Mr. Berger:

This correspondence will confirm that you have engaged this firm to represent you as a witness in connection with the referenced matter. We are pleased to have this opportunity to work with you. At the outset, we feel it is important to make sure there is no misunderstanding about what we are going to do and how we will charge for our services. We have agreed to undertake this representation on the following terms:

1.     Work:  We are going to represent your interests in connection with your ongoing role as a subpoenaed witness in the above case. It will be our objective to limit and hopefully conclude your required participation in the coming six months to nine years.

2.     Communication: We understand that you will be our contact in this matter. We will send copies of all papers sent or received by this office in order that you will be fully apprised of the posture of the case.

3.     Fees:  In connection with this representation, we understand that 3M Company will be responsible for the payment of our fees. We will bill for legal services performed based upon the value of our actual time spent at the hourly rates for the attorneys and legal assistants who work on the file. My hourly rate for services rendered in connection with the matter will be $375.00 per hour. Other lawyers in this firm will be billed at their lesser rates. My legal assistant's time will be billed at the rate of $150.00 per hour. My rates adjust annually during January of the year. The rate, as adjusted, will be applicable as of the date of my January billings.

4.     Interim Billings.  Interim billings will be submitted on a monthly basis. All sums due pursuant to interim billings will be due and payable upon receipt of the invoice (not later than fifteen days after the date of the invoice) unless otherwise agreed or stated on the invoice. Our

Elliott Berger
August 16, 2021
Page 2

engagement is conditional upon 3M Company's prompt payment of our billings. Failure to pay interim billings promptly will permit the firm, after notice to you, to terminate its representation.

     5.    <u>Out-of-Pocket Disbursements</u>. You will be responsible for the payment of all firm costs and out-of-pocket disbursements incurred in connection with our handling of matters.

     6.    <u>Conflicts of Interest</u>: Please be aware that this firm represents many other clients. It is possible that after the conclusion of our current representation you, a current or future client of ours may be involved in a transaction with you or have a dispute with you. In such cases where the other client's matter is not substantially related to our current representation of you, professional standards allow this firm to proceed with the new representation without additional consultation with you. In contrast, in such cases where the future client's matter is substantially related to our current representation of you, this firm must obtain your consent before proceeding to represent the other client in that matter. Absent further agreement, our current representation of you shall be deemed to have ended no later than the point when we have performed no legal services for you in connection with this representation for a period of one year. In no event will our representation of another client involve the use, to your disadvantage, of any confidential information that we have obtained from you as a result of your representation.

     7.    <u>Termination of Engagement</u>: You may terminate this engagement with or without cause at any time on reasonable written notice to us. If the firm determines that it has grounds to terminate its relationship with you on grounds that relate to the Florida Code of Professional Responsibility or for non-payment of statements, the firm will be able to terminate its relationship at that time by reasonable notice. We will return all of your papers and property immediately upon the termination of the engagement. We will, however, retain our own files. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable time after the termination of the engagement. Termination of our services will not affect your responsibility to pay for legal services rendered and all costs incurred up to the date of notice of termination, and for any further work required of us in order to facilitate an orderly turnover of matters in process at the time of termination.

     8.    Because of the increase in corporations owning or partially owning subsidiaries, and the problems this creates for lawyers in identifying potential conflicts of interest, we advise our corporate clients that unless otherwise agreed, we will not typically regard an affiliate of a corporate client as a client of the firm. Furthermore, the firm will not regard a representation that is adverse to an affiliate of a corporate client as adverse to the client, in the absence of a request by the client to the contrary. Accordingly, if there is a corporate family member that you wish to regard as a client for conflict purposes, please let us know.

Elliott Berger
August 16, 2021
Page 3

        9.     You have been advised that contested litigation is often expensive, and that the fees and costs incurred in a case are frequently dictated by the opposing parties' legal position and its inclinations with regard to prosecuting or defending this case. Consequently, you have been made aware that in the event of litigation, the cost may be significant over the long term.

        10.    We may engage other lawyers or law firms to assist us in various aspects of this work. We will remain responsible in any such instance for the quality and supervision of such work. It is our understanding that you have consented to this and that you will be responsible for those fees and costs, as well.

        We would appreciate you indicating your acceptance and confirmation of these terms by signing a copy of this letter and returning the signed copy to us as soon as practicable. If you have some question or concern regarding any of the foregoing, please contact me at your early convenience.

        Sincerely,

        PHILIP A. BATES

PAB/dmw
Enclosure

Elliott Berger
August 16, 2021
Page 4


        The terms of the foregoing engagement are accepted by Elliott Berger as of this ___ day of August, 2021.




                          _____

                          Elliott Berger

From  Elliott Berger <eberger@compuserve.com> ★

Subject  termination of my consulting for 3M

To  Chelsea Zimmerman <CZimmerman@designtechnical.com> ★

Cc  Jeff Hamer <jeff.hamer@mmm.com> ★, Eric Rucker <ejrucker@mmm.com> ★

Tags  Important

↩ Reply | ↩ Reply All ∨ | → Forward | 🗄 Archive | 🔥 Junk | 🗑 Delete | More ∨

10/11/2021, 4:27 PM

Chelsea,
Per our conversation of last week, this emails confirms that I wish to terminate my consulting for 3M as of end of the today, Monday October 11.  I have
appreciated working for 3M and Volt but at this time need to withdraw from this assignment.

Regards,
Elliott
--
Elliott H. Berger
Consultant in Acoustics
221 Olde Mill Cove
Indianapolis, IN 46260-2581
317-752-0614 h/c

On 12/27/2021 12:13 PM, Philip Bates wrote:

Elliott,

Please send me a copy of your current agreement with 3M.

Also, please confirm that you have not agreed to appear at 3M's instruction.

Thanks,

Philip

--
Elliott H. Berger
221 Olde Mill Cove
Indianapolis, IN 46260-2381
317-752-0614 h/c

2