**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| *Kelley*, 7:20-cv-00153 *Vaughn*, 7:20-cv-00134 *Beal*, 7:20-cv-00006 *Wilkerson*, 7:20-cv-00035 | |

**PLAINTIFFS' MEMORANDUM ON**
**CHOICE OF LAW FOR BELLWETHER GROUP D**

**INTRODUCTION**

On December 3, 2021, the parties exchanged positions on choice of law for Group D Bellwether Plaintiffs. The parties failed to agree on the law applicable to Plaintiffs Denise Kelley, Jonathon Vaughn, James Beal, and Steven Wilkerson. Applying 28 U.S.C. § 5001 and this Court's prior orders, Kentucky law governs Kelley's case, Missouri law governs Vaughn's and Beal's cases, and Wisconsin law governs Wilkerson's case.

**ARGUMENT**

I.   **Under 28 U.S.C. § 5001, the law of the state surrounding the military bases on which Plaintiffs were first injured controls the choice-of-law analysis in *Kelley*, *Vaughn*, *Beal*, and *Wilkerson*.**

"In a civil action brought to recover on account of an injury sustained in a place [subject to the exclusive jurisdiction of the United States within a State], the rights of the parties shall be governed by the law of the State in which the place is located." 28 U.S.C. § 5001(b). "Military bases and other military properties located in the United States are subject to 28 U.S.C. § 5001." Dkt. 1599 at 3 (collecting cases). Because Plaintiffs Kelley, Vaughn, Beal, and Wilkerson were injured on military bases, § 5001 governs the law applicable to their cases.

When claims brought under § 5001 involve injury on one federal enclave, the Court's choice-of-law analysis is simple: apply the law of the place of injury. In such cases, it does not matter where the plaintiff was first injured, so long as the plaintiff

was injured on a federal enclave. Dkt. 1599 at 5 n.5. In the cases currently before the Court, however, the facts indicate that some plaintiffs were or may have been injured on more than one federal enclave. In such cases, a cause of action accrues under § 5001 where the last event necessary to make defendant liable for the tort (*i.e.*, plaintiff's injury) took place. This interpretation of § 5001 is supported by the plain language of the statute, which provides that the "right of action shall exist" when a plaintiff is injured "in a place subject to the exclusive jurisdiction of the United States within a State." 28 U.S.C. § 5001(a)-(b). If a plaintiff is further injured on another enclave, that injury is an aggravation of an existing injury for which the plaintiff already had a cause of action.

This interpretation is also consistent with other choice-of-law rules focusing on the place of injury (*i.e.*, *lex loci*)—the cause of action accrues under the law where plaintiff's injury first occurred. *See, e.g.*, *Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515, 1521 (11th Cir. 1993) (holding the *lex loci* is "the jurisdiction where the harm was suffered," "where the last event necessary to make an actor liable for the alleged tort takes place"); *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 860-61 (E.D. Va. 2013) ("[T]he *lex loci delicti* analysis again hinges on the location of the first injury to the plaintiff."); *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) ("[A]n injury is deemed to occur where the plaintiff first suffers harm, even if the tortious conduct subsequently results in additional or

more severe harm elsewhere."); *Purnell v. United States*, 1987 WL 11211, at \*3 (E.D. Pa. May 21, 1987) (noting continuing injury in multiple states did not alter the *lex loci* because "the first harmful result" occurred in Pennsylvania).

Plaintiffs anticipate that Defendants will argue—as they have in prior bellwether cases—that length of use on a particular military base controls. But this is inconsistent with the plain text of § 5001, which provides that a cause of action exists once an injury on a federal enclave occurs. Calculating the magnitude of injury over time in numerous locations will—in most multistate torts—be impossible. The extent of Plaintiffs' injuries over time depends on many factors, including length and frequency of use, different noise exposures, and particular circumstances surrounding each exposure. Rather than depart from established legal norms, the Court should apply the traditional legal standard used in other injury-based, choice-of-law standards—the place where the injury started.

### A. Kentucky law applies to *Kelley*.

Kelley used the CAEv2 and suffered injury on a military base in Kentucky; thus, Kentucky law governs her claims. *See* 28 U.S.C. § 5001(b). Kelley was stationed at Fort Campbell, Kentucky, from May 2005 to September 2007. PX1(Kelley-202:13-18); PX2(Kelley-Rog-5); PX3(Kelley-ERB). She wore the CAEv2 whenever she was in noisy environments and on the range for weapons qualification and training. PX1(Kelley-211:6-10, 212:18-213:22, 216:23-217:10,

287:19-298:3). Kelley received her second pair of CAEv2 in Kentucky as well, PX1(Kelley-274:12-275:1), which she used during her deployment to Iraq from August 2005 to March 2006. PX1(Kelley-234:23-235:2); PX2(Kelley-Rog-5, 27, 29). Following her deployment, Kelley returned to base at Fort Campbell, Kentucky, where she was stationed until September 2007. PX2(Kelley-Rog-5); PX3 Kelley-ERB).

Kelley was in Kentucky when her injuries manifested. She first noticed the onset of tinnitus in both ears in 2006, while at Fort Campbell. PX1(Kelley-314:3-315:2). She then endured her injury for approximately a year at Fort Campbell. *Cf.* Dkt. 1615 at 2 (finding Washington law applied under § 5001 as the place where plaintiff continued to suffer the effects of his tinnitus after injury in Afghanistan). And throughout her time at Fort Campbell, Kelley used the CAEv2 while exposed to noises from military vehicles and while on the range, PX1(Kelley-212:18-213:9, 218:13-219:9), which contributed to her auditory injuries. PX4(Djalilian-Kelley-Decl.-2). Accordingly, Kentucky law applies to Kelley's claims.

In advocating for Texas law, Defendants might claim that Kelley was subsequently stationed at Fort Bliss, Texas, for a longer period and had an abnormal audiogram there. *See* PX1(Kelley-359:16-363:5). This argument is weak because Kelley first experienced tinnitus seven years earlier at Fort Campbell. PX1(Kelley-314:3-315:2). Nor can Defendants plausibly deny that tinnitus is a serious, noise-

induced injury; in 3M's own words, "[T]innitus may be an early indicator of damage to the auditory system, showing up before a loss of hearing is obvious." PX5(P-GEN-2523). Because Kelley's first place of injury was in Kentucky, where the onset of her tinnitus occurred, Kentucky law controls. *See, e.g.*, MDL Dkt. 1613 at 2 (applying Washington law because plaintiff first experienced tinnitus while on a military base in Washington).

### B. Missouri law applies to *Vaughn*.

Vaughn used the CAEv2 and first suffered injury at Fort Leonard Wood, Missouri, so Missouri law governs his claims. *See* 28 U.S.C. § 5001(b). Vaughn received the CAEv2 at the start of basic training at Fort Leonard Wood, PX6(Vaughn-196:12-197:6), where he was stationed for approximately six months in 2006.[1] PX6(Vaughn 148:22-150:4); *see also* PX7(Vaughn-Rog-27) There, his noise exposure while wearing the CAEv2 was significant: Vaughn trained and qualified as a driver on large transport trucks, PX6(Vaughn-152:21-154:1); he also trained and qualified on numerous weapons, including rifles, machine guns, and grenades. PX6(Vaughn-136:5-137:10, 151:2-18). Vaughn first noticed tinnitus in

---

[1] Vaughn clarified in deposition that he began basic training at Fort Leonard Wood in Spring 2006 and then transferred briefly to Fort Sam Houston, Texas, that summer for classroom medic training, where he had little to no noise exposure and did not use the CAEv2. Vaughn returned to Fort Leonard Wood after a few weeks, where he resumed basic training for another three months. PX6(Vaughn-148:22-150:4.)

2006 near the end of basic training at Fort Leonard Wood. PX6(Vaughn-252:15-253:22).

Defendants may posit that Colorado law applies because Vaughn was in Missouri for less than one year and in Colorado for several years thereafter. But nothing in § 5001 imposes a duration requirement. *Cf. Williams*, 790 F. Supp. 2d at 414 (place where plaintiff first suffers harm controls under § 5001, even if defendant's tortious conduct results in additional injury elsewhere).

Defendants may further argue for Colorado law because Vaughn's audiograms detected hearing loss in 2008 and 2009 while he was stationed at Fort Carson, Colorado. *See* PX8(Vaughn Dep. Ex. 14); PX9(Vaughn Dep. Ex.15). Even so, noise exposure during basic training in Missouri contributed to the tinnitus Vaughn first suffered in Missouri. PX10(Lustig-Decl.-2). And 3M itself admits that tinnitus may be an early sign of hearing loss.  PX5(P-GEN-2523). Because the onset of Vaughn's auditory injury occurred at Fort Leonard Wood, Missouri law controls his claims. *See* 28 U.S.C. § 5001(a)-(b); *Williams*, 790 F. Supp. 2d at 414.

### C. Missouri law applies to *Beal*.

Like Vaughn, Beal was first injured by the CAEv2 at Fort Leonard Wood, Missouri. Accordingly, Missouri law governs his claims. *See* 28 U.S.C. § 5001(b). Beal was stationed at Fort Leonard Wood from September 2005 to February 2006, where he was issued the CAEv2 and completed basic training. PX11(Beal-104:18-

21, 106:8-14). There, Beal was exposed to significant noise while wearing the CAEv2, including from M16s and grenades during weapons training. PX11(Beal-103:13-105:11).

Beal first noticed tinnitus during basic training at Fort Leonard Wood. PX11(Beal-206:8-12); PX12(Beal-Rog-17, 47). That Beal continued to suffer from tinnitus in Hawaii matters naught because he had already sustained this injury on a federal enclave in Missouri.  In recommending Hawaii law, Defendants may emphasize that Beal was subsequently diagnosed with hearing loss while stationed at Schofield Barracks. PX11(Beal-106:8-107:3); PX13(Beal-Census-No.4(b)). But again, tinnitus is no less a qualifying injury than hearing loss. *See* PX5(P-GEN-2523) (instructing that tinnitus can be a "devastating life-changing" condition and an early sign of hearing loss). Beal's auditory injuries began when he developed tinnitus at Fort Leonard Wood. Thus, the evidence supports the application of Missouri law— the place where Beal first suffered injury. *See* MDL Dkt. 1613 at 2.

D. **Wisconsin law applies to *Wilkerson*.**

Wilkerson sustained injury from the CAEv2 while on active duty at Fort McCoy, Wisconsin. Thus, Wisconsin law controls. *See* 28 U.S.C. § 5001(b). Wilkerson began serving at Fort McCoy on March 8, 2010, as part of his Army National Guard duties. PX14(Wilkerson_DOD_00072). It was there that he received and began using the CAEv2 during extensive pre-deployment training,

7

PX15(Wilkerson-138:12-139:5,     141:8-11,     255:14-257:2),     which     lasted approximately   one   month.   PX15(Wilkerson-138:16-139:5).   Wilkerson's   noise exposure   at   Fort   McCoy   was   significant;   among   the   weapons   he   fired   on   the shooting and demolition ranges were M-4 carbines, M-2 machine guns, 50-caliber and 240 Bravo machine guns, squad automatic weapons, and grenade launchers. PX15(Wilkerson-276:20-277:5, 277:22-278:11).

On   March   11,   2010—three   days   after   beginning   combat   training   at   Fort McCoy—Wilkerson's   audiogram   revealed   a   significant   threshold   shift. PX16(Djalilian-Decl.-Wilkerson at 2). A follow-up audiogram one day later confirmed hearing damage. *Id.* At that point, Wilkerson had not yet experienced tinnitus, *see* PX15(Wilkerson-119:22-120:3), so his auditory injury in Wisconsin was the first injury for purposes of § 5001.

Defendants may nevertheless argue that Mississippi law applies, claiming that most  of  Wilkerson's  noise  exposure  and  hearing  loss  occurred  later,  during deployment to Afghanistan, where he first noticed his tinnitus, and in Mississippi. Defendants  may  also  assert  that  Wilkerson  suffered  more  injury  in  Mississippi because  he  was  stationed  there  the  longest;  this  argument,  however,  is  tenuous. Objective evidence from Wilkerson's 2010 audiograms clearly establishes that the onset of his hearing injury first occurred in Wisconsin.  And as 3M itself admits, "One brief instance, one unprotected gun shot… can cause hearing loss, tinnitus, or

both," which can lead to permanent injury. PX5(P-GEN-0253). Indeed, Dr. Djalilian

opines that Wilkerson's initial auditory damage first manifested in March 2010 at

Fort McCoy and progressed thereafter. PX16(Djalilian-Wilkerson-Decl. at 2). Nor

is the military facility in Lucedale, Mississippi a federal enclave.  Wisconsin law

thus applies to Wilkerson because Fort McCoy, Wisconsin, is where his injury first

arose.

## CONCLUSION

For these reasons, the Court should apply Kentucky law in *Kelley*, Missouri

law in *Vaughn* and *Beal*, and Wisconsin law in *Wilkerson*.


DATED: January 4, 2021

*s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com


Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
cseeger@seegerweiss.com

***Counsel for Plaintiffs***


John Foley
(Admitted Pro Hac Vice)
Illinois Bar No. 6288152
Trent Miracle
(Admitted Pro Hac Vice)
Illinois Bar No. 6281491
Simmons Hanly Conroy
One Court St.
Alton, IL 62002
Tel: (618) 259-2222
tmiracle@simmonsfirm.com
jfoley@simmonslawfirm.com

***Counsel for Plaintiff Kelley***

Gerard L. Guerra
(Admitted Pro Hac Vice)
Missouri Bar No. 42703
Onder Law, LLC
110 E. Lockwood Ave.
St. Louis, MO 63119
Tel: (314) 408-6136
Guerra@onderlaw.com

Bryan F. Aylstock
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: (850) 202-1010
baylstock@awkolaw.com

Evan D. Buxner
(Admitted Pro Hac Vice)
Illinois Bar No. 6221006
Gori Julian & Associates
156 N. Main St.
Edwardsville, IL 62025
Tel: 618-659-9833
evan@gorijulianlaw.com

Thomas P. Cartmell
(Admitted Pro Hac Vice)
Missouri Bar No. 45366
Wagstaff & Cartmell
4740 Grand Ave., Ste. 300
Kansas City, MO 64112
Tel: 816-701-1100
tcartmell@wcllp.com

***Counsel for Plaintiff Vaughn***

Bryan F. Aylstock
Florida State Bar No. 078263
Douglass A. Kreis
Florida State Bar No. 129704
Caitlyn P. Miller
Florida State Bar No. 126097
Neil D. Overholtz
Florida State Bar No. 188761
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com
dkreis@awkolaw.com
cmiller@awkolaw.com
noverholtz@awkolaw.com

***Counsel for Plaintiff Beal***

Keith M. Jensen
(Admitted Pro Hac Vice)
Texas Bar No. 10646600
Keith M. Jensen, PC
514 E. Belknap St.
Fort Worth, TX 76102
Tel: (817) 334-0762
kj@jensen-law.com

Richard N. Laminack
(Admitted Pro Hac Vice)
Thomas W. Pirtle
(Admitted Pro Hac Vice)
Texas Bar No. 16038610
Buffy K. Martines
(Admitted Pro Hac Vice)
Texas Bar No. 24030311
Laminack Pirtle & Martines, LLP
5020 Montrose Blvd., 9th Floor
Houston, TX  77006
Tel: (713) 292-2750

rickl@lpm-triallaw.com
tomp@lpm-triallaw.com
buffym@lpm-triallaw.com

Katherine Cornell
(Admitted Pro Hac Vice)
Texas Bar No. 24082858
Pulaski Kherkher, PLLC
2925 Richmond Ave., Ste. 1725
Houston, TX 77098
Tel. (800) 223-3784
kcornell@pulaskilawfirm.com

Bryan F. Aylstock
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: (850) 202-1010
baylstock@awkolaw.com

***Counsel for Plaintiff Wilkerson***

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum, which contains 1,911 words, complies with Local Rule Rule 7.1(F) and the parties' December 21, 2021 agreement not to exceed 4,000 words.

*s/ Bryan F. Aylstock*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*
