**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                              Case No. 3:19-md-2885

                                                        Judge M. Casey Rodgers
                                                        Magistrate Judge Gary R. Jones

This Document Relates to:
*Ronald Sloan,* 7:20-cv-1
*William Wayman,* 7:20-cv-149
_____/

## REPORT AND RECOMMENDATION

Pending before the Court upon referral from the District Judge, ECF

No. 2355, is Defendants' Objection to the Magistrate Judge's November

22, 2021, Order and Motion for Reconsideration of This Court's November

21, 2021, Order. ECF No. 2330.[1] Plaintiffs filed a Response. ECF No.

2352.[2]

On December 29, 2021, the Court conducted an evidentiary hearing

during which Elliott Berger testified by remote transmission. After the

evidentiary hearing, with the Court's permission, the parties filed post

_____

[1] Defendants' Objection and Motion for Reconsideration, were also filed in *Slaon v. 3M,*
case no. 7:20-cv-1-MCR-GRJ at ECF No. 82 and in *Wayman v. 3M*, caase no. 7:20-cv-
149-MCR-GRJ at ECF No. 90.

[2] The response was filed in *Sloan,* at ECF No. 99 and in *Wayman,* at ECF No. 108.

hearing briefs. ECF Nos. 2381 & 2382. [3] The District Judge then entered

an order denying Defendants' Motion for Reconsideration as it relates to

the use of Elliott Berger's prior sworn testimony in the *Sloan/Wayman* trial.

ECF No. 2396. The Court, however, did not address the objections to the

November 21, 2021 order. Because the trial in *Sloan/Wayman* is ongoing

and Elliott Berger has testified through remote transmission at the trial any

issue relating to Berger's unavailability as it applies to *Sloan/Wayman* is

moot. Even though the issue is no longer a live issue as it relates to

*Sloan/Wayman* there are additional bellwether trials scheduled this year in

which the issue of whether Elliott Berger is unavailable will be an issue.

Specifically, Defendants want to use Berger's deposition testimony at

any trials where Berger does not testify by remote transmission based upon

Defendants' assertion that they are entitled to do so because Berger is

unavailable as contemplated by Rule 32 of the Federal Rules of Civil

Procedure. This report and recommendation, therefore, addresses the

issue of whether Berger is unavailable as a witness, as Defendants

contend, or whether, as Plaintiffs assert, Defendants have no basis to claim

unavailability because "Defendants have not demonstrated any failure of

---

[3] The post hearing briefs were filed in *Sloan,* at ECF Nos. 122 & 123 and in Wayman at ECF Nos. 130 & 131.

Mr. Berger to appear for live testimony, nor have they moved to authorize

Mr. Berger's remote testimony under Rule 45." The starting point for the

analysis is the evidence presented at the evidentiary hearing.

## I. Evidentiary Hearing

Elliott Berger testified by remote transmission at the evidentiary

hearing. Defendants—who have the burden to show unavailability—

presented Mr. Berger's testimony. Mr. Berger also testified on cross-

examination by Plaintiffs' counsel. The following material facts were

established through Berger's testimony and the documents Berger

produced for the hearing pursuant to a subpoena served by Plaintiffs:

- Berger resides in Indianapolis, Indiana and is currently retired.

- After Berger retired from 3M he entered into a Seller Personnel
  Agreement with an entity known as "Volt Management Corp."
  The purpose of the agreement was, among other reasons, to
  set up a contractual structure for Berger to provide consulting
  for the benefit of 3M. ECF No. 2369, Ex. 1. Further, as part of
  his contractual arrangement with Volt to provide assistance to
  3M Berger entered into an Employment Agreement with Volt,
  which among other provisions, established the hourly rate
  Berger would be paid. *Id.* p. 8. Notably, the Employment
  Agreement provided that Berger reported to Jeff Hamer, a 3M
  employee, and Berger's boss while Berger was employed at
  3M. Before Berger recently terminated the Volt Employment
  Agreement on October 11, 2021, he met with and discussed
  the termination with an attorney from Kirkland & Ellis.

- In addition to the Volt agreement Berger entered into a
  consulting agreement with Kirkland & Ellis, as agent for 3M, in

August 2019, ECF No. 2369, pp. 10-13. And in October 2019, Berger entered into a representation agreement with Kirkland & Ellis for Berger's testimony relating to his testimony about the CAEv2 in this MDL. ECF No. 2369, pp. 14-16. Under the consulting agreement Berger agreed to serve as a consulting expert for 3M in this MDL. Under the representation agreement Kirkland & Ellis agreed to represent Berger in providing testimony at depositions in this MDL. Notably, Berger has never terminated the consulting agreement or the representation agreement. So, as of the date of this report and recommendation Berger continues to serve as a consulting expert for 3M in this litigation.

- In August of 2021 Berger requested and 3M's counsel provided Berger with the name of an attorney to represent Berger individually. Based upon the referral from 3M Berger retained Phillip Bates, P.A. on August 16, 2021 for the purpose of limiting and concluding Berger's participation in the MDL. Notably, 3M has agreed to pay all the attorney's fees charged by Bates. Indeed, the legal bills are sent directly to 3M. Berger testified that he does not even receive copies of the bills from Bates. Mr. Bates had no involvement in the preparation of Berger's testimony in the *Adkins* or *Blum* trials and no involvement in the preparation of Berger's testimony in the bellwether trials in November and December 2021. So, the sole purpose for Bates' representation of Berger is to take legal action (i.e, filing motions to quash, etc.) to protect Berger from having to testify in any of the MDL bellwether trials.

- Since the inception of this MDL Berger has spent approximately 800 hours involved in the litigation relating to the CAEv2. Of the 800 hours Berger has spent consulting and preparing his testimony he has been paid for approximately 600 hours of his preparation time.

- Berger no longer wants to appear to testify in this MDL unless he is subpoenaed to do so.

- Kirkland & Ellis attorneys prepared Berger for his testimony at the evidentiary hearing and assisted in the preparation of Berger's testimony in each of the nine trials in which Berger has testified. No other attorneys, including Mr. Bates, were involved in the preparation of Berger's testimony in the September, October, November or December trials. And following Berger's testimony in the bellwether trials Kirkland & Ellis attorneys would discuss and recap Berger's testimony with him.

- Prior to the *Camarillo* trial in November Berger has testified in Defendants' case without a subpoena from 3M in four of the bellwether trials. In the *EHK* trial, although Berger was subpoenaed by Plaintiffs, Berger appeared and testified in Defendants' case without any subpoena. In *McCombs* Berger testified voluntarily in Defendants' case. In both the *Adkins* and *Blum* trials Berger appeared as a witness for Defendants without the necessity of a subpoena. In the *Camarillo* trial in November Berger did not appear in Plaintiffs' case but testified in Defendant's case via remote transmission under a subpoena issued by Defendants.

## II.  Discussion

Defendants argue that the combination of the Court's November 21, 2021 Order and the Court's November 22, 2021 Order have placed Defendants in the position of being unable to introduce any of Berger's testimony unless he voluntarily appears at trial or in the event Plaintiffs subpoena Berger to testify by remote transmission.

The Court's November 21, 2021 Oder addressed designations of Berger's previous trial testimony. MDL ECF No. 2300. The Court ruled that because no party had demonstrated Berger's unavailability in light of the

5

Court's previous order authorizing remote testimony, no party could introduce any portion of Berger's prior trial testimony. With the exception of Berger's 30(b)(6) deposition testimony, the Order excluded any party from using any prior sworn testimony from Berger in his individual capacity, except for purposes of impeachment. The Court has denied Defendants' motion for reconsideration of that order as it applies to *Sloan/Wayman* because Berger testified via remote transmission and therefore was available to Defendants to provide testimony.

The Court's November 22, 2021 Order was entered in the miscellaneous case, *Berger v. 3M*, case no. 3:21-mc-61-MCR-GRJ. The Order denied Berger's motion for reconsideration. Relevant here the order also addressed Berger's argument that he is not an important witness because he was not subpoenaed by Plaintiffs in the *Camarillo* trial and instead testified for the Defendants remotely under a subpoena issued by Defendants. The Court's order clarified that 3M was never granted authorization under Rule 43(a) to subpoena Berger to testify remotely. The Court underscored in its order that 3M had never filed a motion or asked the Court for permission to subpoena Berger under Rule 43(a) and had staunchly opposed the use of Rule 43(a) to obtain Berger's testimony by remote transmission. The Court gratuitously suggested that had 3M made

such a request it would have been denied. Relying upon the Court's *dicta* in the November 22, 2021 Order Defendants argue that they should be permitted to use Berger's deposition testimony because he is unavailable.

Thus, resolution of whether Berger is unavailable is pivotal to whether Berger's deposition testimony may be used at trial. Defendants argue that Berger is unavailable under Rule 32 of the Federal Rules of Civil Procedure because he lives more than 100 miles from the Court and Defendants have not procured his absence. Defendants' argument, however, presupposes that Defendants cannot subpoena Berger to provide testimony by remote transmission under Rule 43(a) of the Federal Rules of Civil Procedure.

As explained below, the evidence presented at the December 29, 2021 evidentiary hearing demonstrates that notwithstanding Berger's testimony that "he wants to extricate himself" from this litigation, Berger's relationship with 3M, through its agent, Kirkland & Ellis, suggests significant control over Berger and, at least to some degree, that 3M has affirmatively assisted Berger in attempting to avoid providing testimony in the bellwether trials. Additionally, even if the Court concluded that 3M did not procure Berger's unavailability, 3M's naked reliance upon the Court's *dicta* in the November 22, 2021 Order falls well short of demonstrating that 3M is

7

barred from obtaining Berger's testimony at trial through remote transmission under Rule 43(a).

First, the Court will address the issue of Berger's unavailability under Rule 32 of the Federal Rules of Civil Procedure. The starting point is the rule. Rule 32 governs the use of depositions in court proceedings. Relevant here, the Rule provides that a witness is "unavailable" if "the witness is more than 100 miles from the place of hearing or trial …unless it appears that the witness's absence was procured by the party offering the deposition." Fed. R. Civ. P. 32(a)(4)(B).

The Federal Rules of Evidence, also address the issue of whether a witness is "unavailable" for the "former testimony" exception to the hearsay rule. Rule 804(a)(5)(B) of the Federal Rules of Evidence provides that a witness is unavailable if the witness "is absent from the trial … and the statement's proponent has not been able, by process or other reasonable means, to procure … the declarant's attendance" unless "the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying."

Thus, whether Berger is unavailable under either Rule 32 of the Federal Rules of Civil Procedure or under Rule 804 of the Federal Rules of Evidence is dependent upon whether 3M, through its agents, has taken any

action to facilitate Berger's unavailability and has sufficient control to procure Berger's appearance. The evidence presented at the evidentiary hearing supports the conclusion that 3M has taken action that has facilitated Berger's unavailability. That is so based upon Berger's record of voluntary appearances in previous bellwether trials coupled with the evidence that despite Berger's position that he does not want to participate any further in this MDL, Berger continues to serve as a consulting expert for 3M, through its counsel, and has never terminated the consulting agreement he entered into with Kirkland & Ellis in 2019. And equally compelling is the retention of Mr. Bates, whose name was selected by 3M and whom 3M pays, for the sole objective of taking action to protect Berger from testifying in the bellwether trials. These events standing alone might not be sufficient to evidence that 3M has influenced Berger's unavailability but taken together create the unmistakable picture that 3M (within ethical guidelines) has directly facilitated and thus indirectly procured Berger's unavailability.

The most compelling evidence that 3M can obtain the attendance of Berger is the ability of 3M in previous Bellwether trials to orchestrate Berger's appearance as a witness in 3M's case in chief. For example, in the first bellwether trial, *EHK*, although Berger was subpoenaed by

Plaintiffs, Berger voluntarily appeared and testified in 3M's case without the necessity of serving a subpoena.  Similarly, in *McCombs* Berger again testified voluntarily in 3M's case. Later, in both the *Adkins* and *Blum* trials in September and October Berger appeared as a witness for 3M without the necessity of a subpoena. Lastly, in the *Camarillo* trial in November Berger did not appear in Plaintiffs' case but testified in Defendant's case via remote transmission under a subpoena issued by Defendants. While these events standing alone are not dispositive of whether Berger is unavailable, Berger's voluntary appearance for 3M at no less than four bellwether trials from January 2021 through October 2021 is strong evidence that Berger continues to cooperate with 3M. Berger's voluntary appearance is not surprising because he was retained as a consulting expert several years ago and has been paid for at least 600 hours of his time for consulting.

In addition to Berger's track record in appearing voluntarily for 3M it was disclosed during the evidentiary hearing that Berger voluntarily met with 3M's attorneys to prepare his testimony every time Berger has testified in the bellwether trials, including preparing Berger's testimony before the evidentiary hearing. On each of these occasions Berger has voluntarily met with and participated with 3M's attorneys in the preparation of his testimony in these bellwether cases. Thus, although Berger testified that he "wants to

extricate himself" from the MDL, he has, nonetheless, voluntarily participated with 3M regarding his testimony in every case in which he testified.

As evidence that Berger does not want to testify unless a subpoena is served, Berger points to the termination of his consulting agreement with 3M on October 11, 2021. But, despite terminating the consulting agreement Berger has not, as of the date of this report and recommendation, terminated his consulting agreement with 3M's attorneys or the representation agreement with 3M's counsel. Berger says he has not terminated the consulting agreement with 3M's counsel because he wants to continue to get paid for his preparation time for future testimony. While this is understandable the decision not to terminate his consulting agreement and continue with his contractual arrangement with 3M's counsel speaks volumes about whether Berger continues to be a consulting expert within 3M's orbit. Although there is no provision in the consulting agreement that requires Berger to testify for 3M, he, nonetheless, has done so at least four times in previous bellwether trials.

As further evidence that 3M has been intimately involved with Berger in his availability to provide testimony at bellwether trials, 3M provided Berger with a local attorney, for the sole purpose and objective of

11

protecting Berger from providing testimony in further bellwether trials.
Berger's attorney is paid by 3M. But in addition to making direct payments
to Berger's attorney, the invoices for the attorney's services are sent
directly to 3M. Berger does not even receive copies of the invoices from his
counsel. While there is nothing unethical about 3M paying for Berger's
counsel, the arrangement underscores that 3M has taken affirmative action
to assist Berger in protecting Berger from testifying.

Against this backdrop, 3M has never petitioned the court to authorize
a subpoena under 43(a) for Berger to testify by remote transmission.
Indeed, 3M has consistently taken the position that the Court should not
authorize the issuance of a subpoena under Rule 43(a) so Berger can
testify by remote transmission. 3M points to the Court's comment in the
November 22, 2021 order as evidence that it would be futile to do so
because the Court suggested such a request would be denied. 3M's
position, however, flies in the face of the subpoena 3M served on Berger in
the *Camarillo* trial for Berger's testimony by remote transmission.

To demonstrate Berger's unavailability 3M would need to
demonstrate that it has requested permission to subpoena Berger but was
not authorized to do so by the Court. Indeed, if 3M truly wanted Berger to
appear as a witness— as 3M represented to the Court at the evidentiary

12

hearing—logic dictates that 3M would have filed a motion under Rule 43(a) for permission to subpoena Berger so he could provide testimony by remote transmission. 3M's failure to do so and consistent challenges to Plaintiffs' request to issue subpoenas under Rule 43(a) speaks volumes about whether 3M truly wants Berger to testify live or whether 3M strategically only wants to present brief sanitized portions of Berger's testimony through video deposition on the grounds that he is unavailable.

Defendants argue that the Court should ignore the evidence that 3M and its counsel have exerted and continue to exert control over Berger and instead should focus on the narrow issue of whether 3M "procured" Berger's unavailability. According to 3M, "a party is found to procure a witness's absence only through a showing of an affirmative act of wrongdoing by the party." ECF No. 2381, p.4.  Defendants say there is a difference between "procuring absence and doing nothing to facilitate presence." *Carey v. Bahama Cruise Lines,* 864 F. 2d 201, 204 (1st Cir. 1988). Thus, Defendants assert that because "there is no evidence that Defendants colluded to send Mr. Berger away from the trial site when he was otherwise planning to be there," Defendants did not procure his absence as contemplated by Rule 32 of the Federal Rules of Civil Procedure. ECF No. 2381, p.5.

As examples where courts have found a witness is unavailable even though a party had passive control over the witness, Defendants point to employees of a corporation, who are located more than 100 miles from the courthouse, *Carey,* 864 F. 2d at 204; *Chao v. Tyson Foods, Inc.*, 255 F.R.D. 560, 561 (N.D. Ala. 2009), and to officers and managing agents of a corporation. *Mazloum v. D.C. Metro Police Dep't.,* 248 F.R.D. 725, 726 (D.D.C. 2008); *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC,* No. 5:14-CV-5262, 2017 WL 1312968, at *1-2 (W.D. Ark. Apr. 5, 2017). These cases stand for the unremarkable proposition that simply because a corporation has a passive relationship with an employee or an officer that relationship, standing alone, is not enough to demonstrate that the witness is available. Conspicuously absent from these cases is any evidence that the corporation's actions had facilitated the witness's failure to appear. Neither *Mazloun, Wal-Mart* nor *Carey* suggests that where the relationship between the corporation and the employee or officer is not simply passive but the corporation takes affirmative steps to facilitate the witness's failure to appear the witness is unavailable.

Witness availability is, therefore, dependent upon whether the party seeking to use the witness's deposition testimony has taken actions designed to promote unavailability rather than simply non-passive conduct.

Here, contrary to the situation where the sole reason a corporation wants to use the deposition of an employee or officer of a corporation is because the witness is located more than 100 miles from the courthouse, the evidence demonstrates that 3M, through its agents, took affirmative steps to assist and facilitate Berger's unavailability. Chief among the actions 3M took was to facilitate the engagement and payment of an attorney for the sole purpose of taking all necessary action so Berger would not have to testify in the bellwether trials.

Additionally—and equally as compelling—3M coordinated with Berger the preparation for and presentation of his testimony in each of the bellwether trials. Indeed, 3M affirmatively obtained the voluntary appearance of Berger to testify for 3M in at least four bellwether trials. In each of these cases, 3M paid Berger significant fees for the time Berger assisted with the preparation of his trial testimony,

Most telling, however, about the nature of the relationship between Berger and 3M is the fact that to date Berger has continued his consulting agreement with 3M's attorneys and has not terminated the consulting contract, even though he says he terminated the separate consulting agreement with 3M in October 2021. 3M attempts to downplay the significance of the consulting agreement between Berger and Kirkland &

Ellis by arguing that because the agreement does not require testimony and is terminable at will the consulting agreement should be ignored by the Court. While the consulting agreement is terminable at will it is significant that neither Berger nor Kirkland & Ellis have terminated the agreement, thus, evidencing that both Berger and Kirkland & Ellis affirmatively elected to continue the consulting relationship.

Defendants affirmative conduct in this case, therefore, is a far cry from the cases 3M relies upon where there was no evidence the corporation had done anything affirmatively regarding the testimony of the employee, other than the mere fact the witness was employed by the corporation as an employee or officer. There was no evidence in the cases 3M relies upon that the corporations there retained counsel for the employee to assist the employee in avoiding providing testimony. Nor was there any evidence in those cases that the employee, managing agent or officer had voluntarily testified multiple times previously at the request of the corporation. And in the cases 3M relies upon there was no evidence that the employee was paid significant consulting fees for preparing his testimony.

In sum, contrary to 3M's arguments 3M is not merely a passive participant concerning whether Berger is available to provide testimony.

16

Rather, 3M, through its agents, has successfully facilitated Berger's voluntary appearance previously in bellwether trials, when 3M believed strategically that Berger's testimony would be beneficial to its case. 3M has continued to maintain the consulting agreement with Berger and affirmatively selected and paid for an attorney to represent Berger for the sole purpose of protecting Berger from having to testify. By protecting Berger from testifying 3M strategically could then attempt to present Berger's sanitized deposition testimony in lieu of Berger testifying live where Berger would be subject to the crucible of cross-examination before a jury. Therefore, for these reasons, the Court concludes that 3M's conduct evinces sufficient affirmative action, which facilitated Berger's unavailability. Accordingly, Berger is not an unavailable witness as contemplated under Rule 32 of the Federal Rules of Civil Procedure.

While not directly relevant to the issue of unavailability under Rule 32(a)(4)(B), two other points are relevant to whether Berger's deposition testimony may be used at bellwether trials.

First, Berger was offered as, and provided deposition testimony, on behalf of 3M as a 30(b)(6) witness. Thus, to the extent that 3M intends to use any of Berger's deposition testimony at a bellwether trial that was provided by Berger in his role as a 30(b)(6) witness, 3M is prohibited from

doing so because even if Berger is unavailable, 3M is not.  3M can, if it so chooses, offer the testimony at trial of scores of witnesses, other than Berger.

Further, Rule 32(a)(3) expressly provides that the deposition of a 30(b)(6) witness can only be used by an adverse party. Thus, Plaintiffs, as adverse parties, are entitled to use Berger's 30(b)(6) deposition testimony "for any purpose," independent of whether Berger is or is not unavailable. Notably, however, the Rule does not contemplate that the corporation who offered the witness as a 30(b)(6) witness can use the deposition for any purpose.

Lastly, the primary basis 3M has objected to the Court's November 22, 2021, order is because the Court suggested that if 3M had requested permission to subpoena Berger under Rule 43(a) the Court would have denied the request. Defendants' reliance on the Court's comment in support of their position that they only can obtain Berger's testimony if Plaintiffs choose to subpoena him under Rule 43(a) is somewhat misplaced. To be clear the Court's comment in the November 22, 2021, Order does not mean the Court has denied a request by Defendants to subpoena Berger under Rule 43(a). To the contrary, the Court's comment was directed at 3M's incorrect assumption in the *Camairillo* trial that 3M

18

had the unbridled right to utilize Rule 43(a) simply because the Court had granted Plaintiffs' request to do so. The determination of whether to authorize a party to utilize Rule 43(a) to obtain the testimony of a witness by remote transmission is the exception and not the rule. The Court concluded that Plaintiff had presented compelling circumstances for obtaining Berger's testimony by contemporaneous transmission from a different location. Part of the Court's reasoning for granting Plaintiffs' request was based upon the importance of Berger's testimony in the bellwether trials. The Court concluded that it was preferable to have Berger testify live (via remote transmission) in keeping with the overall preference of the Court to have live testimony presented to the jury when possible.

Defendants have not requested permission to obtain Berger's testimony through Rule 43(a).  So, thus far there is nothing in the record that would establish compelling circumstances on behalf of 3M. Indeed, 3M has vigorously opposed at every step of the case the issuance of a subpoena under Rule 43(a). 3M dismisses this fact by simply asserting "[t]he law does not impose any requirement that Defendants seek authorization to subpoena Mr. Berger's remote testimony under Rule 43 in order to establish Mr. Berger is unavailable." ECF No. 2381, p. 6 n.4.  True, while the law does not require 3M to do so, that does not mean 3M cannot

do so if 3M truly wants Berger to testify at trial as 3M represented to the Court at the evidentiary hearing. So, even assuming as 3M argues that it cannot force Berger to testify at trial, 3M has had and continues to have available to it recourse to Rule 43(a) if 3M believes that it needs Berger's testimony at bellwether trials. The Court has not foreclosed this avenue. The Court has simply confirmed in the November 22, 2021, order that 3M cannot do so unilaterally but must make a separate application to the Court for permission to do so based upon compelling circumstances.

Therefore, the Court's November 22, 2021, Order in combination with the November 21, 2021, Order, does not, as 3M complains, "created an untenable situation," in which "Defendants are now unable to introduce any of Mr. Berger's testimony unless he voluntarily appears live at trial … or if Plaintiffs call him remotely." Rather, because 3M has elected not to pursue relief under Rule 43(a) it finds itself in the situation where 3M can only present Berger's testimony if Plaintiffs call him remotely. The Court has not, thus far, denied 3M permission to present Berger's testimony remotely because 3M has never made such a request.

### III.  Conclusion

For the reasons discussed above, it is respectfully **RECOMMENDED** that: (1) in future bellwether trials the Court find that Elliott Berger is not

unavailable as contemplated under Rule 32(a)(4)(B) of the Federal Rules of

Civil Procedure, and (2) the Court conclude that the November 22, 2021

Order does not bar Defendants from requesting permission to present

Berger's testimony by remote transmission under Rule 43(a) and,

therefore, Defendants are not unable to introduce any of Berger's testimony

unless Berger voluntarily appears or unless Plaintiffs call Berger remotely.[4]

 **IN CHAMBERS** this 26th day of January 2022.

     *s/Gary R. Jones*
     GARY R. JONES
     United States Magistrate Judge


## NOTICE TO THE PARTIES

 **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[4] The Clerk is directed to file this report and recommendation in the master case, 3:19-md-2885-MCR-GRJ and also file it in the individual cases, *Sloan v. 3M*, case no.7:20cv-1-MCR-GRJ and *Wayman v. 3M*, case no. 7:20-cv-149-MCR-GRJ.