# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Vilsmeyer*,<br>Case No. 7:20-cv-113<br><br>*Wilkerson*,<br>Case No. 7:20-cv-35<br><br>*Kelley*,<br>Case No. 7:20-cv-153<br><br>*Vaughn*,<br><br>Case No. 7:20-cv-134<br><br>*Beal*,<br>Case No. 7:20-cv-6 | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

# PLAINTIFFS' MOTION TO AUTHORIZE REMOTE TESTIMONY PURSUANT TO RULE 43(a) FROM ELLIOTT BERGER

## INTRODUCTION

For the upcoming Group D bellwether trials, Plaintiffs seek the live, remote testimony of former 3M employee, and current paid consultant Elliot Berger. "When a party presents 'good cause in compelling circumstances' and assures the Court of 'appropriate safeguards,' the Court 'may permit testimony in open court by contemporaneous transmission from a different location.'" Dkt. 2247 at 6 (quoting Fed. R. Civ. P. 43(a)). Good cause in compelling circumstances exists for the remote testimony of Berger. He has intimate knowledge of the design, testing, and development of the CAEv2. As the Court has previously observed, "he is and has been from the outset, a key witness for both parties," "he has been 3M's star witness until now and is a paid consultant for 3M," and his "presentation of evidence has evolved, substantially." Dkt. 2247 at 9. The five above-captioned cases are last scheduled bellwether trials in this massive MDL. As he has now done multiple times without incident, Berger would testify near his home in Indiana using familiar technology, and Defendants would suffer no prejudice. Additionally, Plaintiffs can assure the Court of appropriate safeguards—as evidenced by the Court's prior experience with remote testimony during this litigation, including by Berger on a half-dozen occasions and two different courthouses, and other fact witnesses such as Sergeant Moody in the *Adkins* trial, and Kelly Sloan in the *Sloan/Wayman* trial. Accordingly, the Court should issue an order permitting remote testimony from

2

Berger.

## FACTUAL BACKGROUND

Berger was central to the development, sale, testing, and labelling of the CAEv2. Berger oversaw the labelling tests of the CAEv2 and ultimately drafted the Flange Report. To date, Berger has repeatedly been subpoenaed to testify in a plaintiff's case at trial, or the parties have worked cooperatively to secure Mr. Berger's live trial testimony through various agreements. He has testified live in all but one bellwether trial (*Palanki*, where Defendants agreed to bring Brian Myers live and in exchange Plaintiff agreed not to subpoena Berger), and in *Camarillo*, when the plaintiff released Berger from the subpoena, he appeared via Zoom in Defendants' case.

On October 1, 2021, Defendants contacted Plaintiffs' Leadership to propose an agreement regarding "future live testimony" of Berger. Dkt. 2190 at 3. In the course of subsequent communications, defense counsel indicated that 3M did not agree to produce Berger live in any MDL bellwether plaintiff's case, and that they did not plan to call Berger to testify live in the defense case for the remaining MDL bellwether trials. Defendants also declined to make available or commit to calling any current or former employee for live testimony. Since that time, Defendants have continued to insist that Berger is not available to them, but—as mentioned above— called Berger in their case during the *Camarillo* trial, and defense counsel have an

3

ongoing consulting agreement with Mr. Berger .

With the final five bellwether trials scheduled to start within the next three months—and two starting in six weeks—Plaintiffs need certainty and the ability to plan their order of proof. None of these bellwethers should lose their opportunity to question Berger live before a jury of their peers. Accordingly, Plaintiffs move for the authorization of remote testimony.

## LEGAL STANDARD

Rule 43(a) provides that generally a witness's testimony "must be taken in open court." Fed. R. Civ. P. 43(a). However, a district court "may permit testimony in open court by contemporaneous transmission from a different location" when there is "good cause in compelling circumstances" and "appropriate safeguards" are used. *Id.*; *see* Dkt. 2247 at 6-8. "The Court's discretion on this question is supplemented by its wide latitude in determining the manner in which evidence is to be presented under the Federal Rules of Evidence." *Id.* at 8 (citing *In re RFC and ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020)); *see Argonaut Ins. Co. v. Manetta Enters.*, 2020 WL 3104033, at *1 (E.D.N.Y. June 11, 2020).

Rule 45 governs subpoenas for parties ordered to testify by contemporaneous transmission from a remote location. Subpoenas "must issue from the court where the action is pending," but "may be served at any place within the United States,"

Fed. R. Civ. P. 45(a)(2), (b)(2). Subpoenas "may command a person to attend a trial" at the courthouse or "within 100 miles of where the person resides," depending on witness's role in the case. Fed. R. Civ. P. 45(c)(1).

As this Court has previously held in this MDL, "Rules 43(a) and 45 should be read in tandem" such that upon a Rule 43(a) order authorizing remote testimony, "a party may use a Rule 45 subpoena to compel remote testimony by a witness from anywhere so long as the place of compliance (where the testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c)." *Baker*, Dkt. 133 at 9-12.

## ARGUMENT

**I.  Good cause exists to permit Berger to testify remotely.**

**A.  There is good cause in compelling circumstances under Rule 43.**

Good cause in compelling circumstances exists to permit Berger to provide live testimony at trial via remote link. *See* Fed. R. Civ. P. 43(a).

This Court has made clear that live testimony is superior to pre-recorded video depositions. *See* Dkt. 2247 at 4 n.3; *Baker*, Dkt. 133 at 13-14 ("[T]here is little doubt that live testimony by contemporaneous transmission offers the jury better quality evidence than a videotaped deposition"); *Baker*, Dkt. 131 Ex. J at 19:4-6 ("[I]t was always -- no surprise -- my preference that you present as many live witnesses as absolutely possible."). Live testimony via video permits "the jury to more

5

realistically 'see' the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration,' without editing or the unavoidable esthetic distance created by a video deposition." *In re Actos*, 2014 WL 107153, at *8; *see also Ramada Worldwide Inc. v. Bellmark Sarasota Airport*, 2006 WL 1675067, at *4 (D.N.J. June 15, 2006). The "very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling." Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment. Live testimony via video also produces higher levels of jury engagement than does pre-recorded deposition testimony. *Mullins v. Ethicon*, 2017 WL 532102, at *2 (S.D. W.Va. Feb. 8, 2017).

Berger is key witness whose contemporaneous testimony is essential to the jury's resolution of these upcoming bellwether trials. *See* Dkt. 2247 at 9. Berger has repeatedly appeared in Plaintiffs' case-in-chief. And for good reason. Berger drafted the Flange Report and invented the CAEv2, and he has been Defendants' star witness in defending the product. "As Berger's testimony has evolved, so, have Plaintiffs' case strategies. If these [] bellwether Plaintiffs are deprived of the opportunity to question Berger live before the jury, they will be prejudiced." Dkt. 2247 at 9. Accordingly, this Court has previously held that "there is good cause in compelling circumstances to permit his remote testimony." *Baker*, Dkt. 133 at 13; Dkt. 2247 at 9-10.

Because these are bellwether trials, a jury verdict based on live testimony will be more meaningful for all litigants. *See In re Xarelto*, 2017 WL 2311719, at *5. Defendants are likely to argue that attending repeated trials is a burden on Berger, who is 70 years old, retired, and has traveled from Indiana to Florida multiple times in 2021. But testimony via remote link does not require the witnesses to travel at all. Defendants may further argue that prior orders grating Plaintiffs' motions for remote testimony cautioned that Berger cannot be expected to testify at all remaining trials contemplated in this massive MDL. Dkt 2247 at 10. After the next five trials, the Courts bellwether schedule will be complete, and the need for live testimony from Berger may be subject to reevaluation, but that time has not come. At this time, the tail-end stage of the bellwether process, compelling circumstances require his live testimony from convenient locations near his home. Indeed, the practice of live transmission of remote trial testimony is particularly prevalent in MDLs because "the Manual for Complex Litigation recognizes the permissibility and value of contemporaneous transmission through the use of videoconferencing." *In re Vioxx*, 439 F. Supp. 2d at 642-43 (citing Manual for Complex Litigation (Fourth) § 12.334 (2004)).[1] And precluding Berger's live testimony for these remaining bellwether

---

[1] Courts around the country routinely order live testimony at trial via remote means under Rule 43. *See, e.g.*, *Baker*, Dkt. 133; *Int'l Seaway Trading Corp.*, 2021 WL 672990, at *5; *Newbrook Shipping Corp.*, 2020 WL 6451939, at *4; *In re RFC & ResCap Liquidating Trust Action*, 2020 WL 1280931, at *2-4 (D. Minn. Mar. 13, 2020); *Aoki v. Gilbert*, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019); *Chapman*

cases will have the undesired effect of thwarting the parties' access to information they need to chart the "future course of this entire litigation." Dkt. 2247 at 10 (quoting *In re Xarelto*, 2017 WL 2311719, at *4).

### B. The *Vioxx* factors also support remote testimony at trial.

The *Vioxx* factors provide additional compelling reasons to permit Berger to testify via live video feed at the upcoming bellwether trial. *See* Dkt. 2247 at 12-13; *Baker*, Dkt. 133 at 14-15. Though the *Vioxx* court coined the test, these factors have been used for decades by MDL courts:

> [T]here has been an increasing trend by federal courts allowing . . . the use of contemporaneous transmission of trial testimony. . . . In 1988 and 1989, respectively, in the context of multidistrict litigation, the Western District of Washington, *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 525314 (W.D. Wash. Aug. 9, 1988), and the District of Puerto Rico, *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424 (D.P.R. 1989), each allowed the testimony of witnesses through the use of contemporaneous transmission. . . .
>
> In *Washington Public* . . . the court fashioned a five-prong test for determining whether the use of videoconferencing was permitted at

---

v. Tristar Prod., Inc., 2017 WL 7048986, at *1 (N.D. Ohio July 6, 2017); *In re Xarelto*, 2017 WL 2311719, at *4 (E.D. La. May 26, 2017); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2016 WL 9776572, at *2 (N.D. Tex. Sept. 20, 2016); *Mullins v. Ethicon, Inc.*, 2015 WL 8275744, at *3 (S.D. W.Va. Dec. 7, 2015); *Hall v. Boston Sci. Corp.*, 2015 U.S. Dist. LEXIS 120031 (W.D. Wisc. Sept. 9, 2015); *Warner v. Cate*, 2015 WL 4645019, at *2 (E.D. Cal. Aug. 4, 2015); *Rockett v. Stifel, Nicolaus & Co.*, 2014 WL 5500546, at *1 (M.D. Ga. Oct. 30, 2014); *In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2014 WL 107153, at *1, 4-5 (W.D. La. Jan. 8, 2014); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010); *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006).

8

> trial. 1988 WL 525314, at *2-3. The five factors were: (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation. *Id.* This same five-prong test was adopted and used by the court in *San Juan Dupont*, 129 F.R.D. at 426.

*In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d at 642-43. MDL courts continue to use these factors to assess good cause under Rule 43. *See Baker*, Dkt. 133 at 14-15; *see also, e.g.*, *In re Xarelto*, 2017 WL 2311719, at *4; *Hall*, 2015 U.S. Dist. LEXIS 120031; *Mullins*, 2015 WL 8275744, at *2.

Defendants have previously conceded that the second and fifth factors favor remote testimony. *See Baker*, Dkt. 122 at 16-17. As Judge Fallon explained, even a trial that involves "a single plaintiff . . . and the law of a single jurisdiction" favors remote testimony where it is "a bellwether trial for a MDL involving thousands of lawsuits" and implicating "every state of the nation." *In re Vioxx*, 439 F. Supp. 2d at 643; *cf. O'Bryant v. Gray Ins. Co.*, 2017 WL 4785793, at *2 (E.D. La. Oct. 19, 2017). And "[t]hese bellwether trials are complex—the complexity of these cases mirrors the undisputed fact that this is the largest MDL in American history." *Baker*, Dkt. 133 at 14.

The remaining *Vioxx* factors favor the same result. Indeed, this Court has previously held that the *Vioxx* factors favor remote testimony from Berger. *See* Dkt. 2247 at 12-13. Under the first factor, the Court's authority to compel remote

9

testimony is at its peak where, as here, the witness is controlled by a party. *See In re Actos*, 2014 WL 107153, at *7. "Berger is under Defendants' control—he has an (indirect) consulting contract with Defendant 3M, and Defendants presented him as a live witness in the prior bellwether cases." *Baker*, Dkt. 133 at 14; Dkt. 2247 at 12.

Under the third factor—"the most important one," Dkt. 2247 at 12—the timing of Defendants' refusal to produce Berger—shows "3M seeks a tactical advantage by withholding Berger from testifying live in front of the jury." Dkt. 2247 at 12; *see Mullins*, 2015 WL 8275744, at *2. The relative convenience of remote testimony also raises the inference that Defendants' preference for "'canned' deposition testimony" is "purely tactical." *In re Vioxx*, 439 F. Supp. 2d at 643. Defendants cannot cry foul about preparing Berger to testify at these trials. Berger has already spent hundreds of hours preparing to appear live already, and have disclosed him as a hybrid-expert in the Group D bellwethers. *See Mullins*, 2015 WL 8275744, at *2. The time required to prepare his for additional trials would be minimal.

The same considerations demonstrate that, under the fourth factor, 3M will not be unduly prejudiced. Dkt 2247 at 13. Berger has already been deposed, *Chapman*, 2017 WL 7048986, at *1, and "has already testified at . . . another [Earplugs] trial," *In re Vioxx*, 439 F. Supp. 2d at 643. Moreover, "there is no prejudice or inconvenience to 3M or Berger, given that he can testify remotely from

10

a location convenient to him, and Defendants have raised no specific prior commitment that would preclude their participation in the trial.  Dkt. 2247 at 13; *Baker*, Dkt. 133 at 14-15.

Plaintiffs, on the other hand, would be prejudiced by presenting video deposition testimony or reading trial transcripts in lieu of live testimony.  Although Berger sat for depositions, those examinations took place nearly two years ago.[2]  Since then, substantial discovery has occurred. And in Berger's case, he has testified live at trial, providing testimony that may be fodder for future impeachment.  Forcing Plaintiffs to play tape or read these admissions to the jury rather than cross-examine this witness based on recent developments would perversely reward Defendants for withholding this witness—the precise tactical advantage they seek.

With Defendants' refusal to bring or make available current employees, and Berger's refusal to come to future bellwethers, Defendants are strategically preventing the presentation of live fact witness testimony on the liability issues—e.g., no live defense witnesses to challenge on defense counsel's opening contentions or arguments it develops through cross.  To be sure, Defendants will bring one or

---

[2] Berger's former testimony in his personal capacity as a fact witness is not as extensive as Defendants may claim.  Berger testified for two days, pursuant to the parties' deposition protocol.  Plaintiffs later obtained a court order to question Berger for one additional day, but only because Berger belatedly disclosed certain expert opinions.  Any remaining depositions are attributable to Defendants, who not only designated him as a 30(b)(6) witness (twice) but also took their own full-day deposition of Berger.

11

two experts to spin the documents and testimony, but there can be no doubt that Defendants are refusing to put a witness in the box (or live on the screen) to face scrutiny before the factfinder on the facts in the context of a specific bellwether's case. As the trials to date have revealed, the testimony before the fact finder, with the oversight of the Court, has compelled admissions on questions a witness had been able to evade during deposition. More fundamentally, Plaintiffs will have no live defense witness to challenge on fundamental contentions made by defense counsel, or to undermine the premises of the Defendants' experts (whose disclosures post-date all of the deposition testimony). The reverse is not true; Defendants have the opportunity at trial to examine each Plaintiff well beyond their deposition, and in a manner responsive to trial counsel's contentions/arguments, and the assumptions and conclusions of both sides' experts. One party—Plaintiffs—will be at trial and subject to examination before the fact finder; under Defendant's plan, the other will not.

**II.     Modern technology and the COVID-19 pandemic have ameliorated concerns about the feasibility and reliability of remote testimony.**

Finally, "appropriate safeguards" for testimony by contemporaneous transmission can be assured. *See* Fed. R. Civ. P. 43(a). As this Court held and has experienced at evidentiary hearings, *Daubert* hearings, and in the *Baker* and *Adkins* trials, there are appropriate safeguards because Berger will testify via contemporaneous videoconferencing technology (ZoomGov). Dkt. 2247 at 13-14

(concluding ZoomGov is, of itself, an appropriate safeguard); *Baker*, Dkt. 133 at 16; *see Liu v. State Farm Mut. Auto. Ins. Co.*, No. 2:18-1862-BJR, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) ("[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live' testimony, thereby allowing a juror to judge credibility unimpeded."); *In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d at 971 ("Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony 'satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.'" (quoting *In re Vioxx*, 439 F. Supp. 2d at 644)).

Defendants cannot seriously dispute that adequate safeguards exist for live video testimony, especially given the parties experience with remote testimony on top of the sheer number of video depositions already taken in this MDL, and defense counsel's remote appearance at the Court's most recent *Daubert* hearing, and at the *Sloan/Wayman* pretrial conference.  *See, e.g.*, *Aoki*, 2019 WL 1243719, at *1 ("Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately.").

While Plaintiffs would prefer that Berger be made available in person, "courts are moving into a more technologically advanced world," where "testimony of this

13

nature is feasible" and can "be presented smoothly and without interruption." *Rockett*, 2014 WL 5500546, at *1; *see Mullins*, 2017 WL 532102, at *3 (rejecting concerns of difficulty with exhibits). "[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernible difference between it and 'live' testimony." *Kieffaber v. Ethicon, Inc.*, 2021 WL 425822, at *3 (D. Kan. Feb. 8, 2021) (collecting cases).

Indeed, the COVID-19 pandemic has illustrated—and increased—the availability of reliable testimony via remote means. *See, e.g.*, *Wood v. Paccar, Inc.*, 2020 WL 6387374, at *2-3 (N.D. Iowa Oct. 8, 2020) (noting the ongoing pandemic and finding good cause under Rule 43(a) for three witnesses to testify at trial "via video link"); *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 2020 WL 3717792, at *4 (E.D. Mich. June 30, 2020) (same); *In re RFC & ResCap Liquidating Trust Action*, 2020 WL 1280931, at *2, *4 (D. Minn. Mar. 13, 2020) (same).[3]

## CONCLUSION

For the aforementioned reasons, the Court should authorize remote testimony by Elliott Berger pursuant to Rule 43(a).

---

[3] Plaintiffs' motion seeks permission for remote testimony pursuant to Rule 43(a). Should the motion be granted, each plaintiff may subpoena Berger as their trial strategy requires.

DATED: February 2, 2022 /s/ *Bryan F. Aylstock*

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
David R. Buchanan
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042741993
Caleb A. Seeley
(Admitted Pro Hac Vice)
New Jersey State Bar No. 303522019
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

**Counsel for Plaintiffs**

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULES 7.1(F)

I hereby certify that this memorandum complies with the word limit of Local Rules 7.1(F) and contains 3,341 words.

/s/ Bryan F. Aylstock

## CERTIFICATE OF CONFERENCE

I certify that Plaintiffs have complied with the conference requirement pursuant to the Court's Local Rule 7.1(B). A telephonic meet and confer was conducted February 1, 2022, with Plaintiffs' counsel, Defense counsel and Mr. Berger's counsel but no agreement was reached.

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

/s/ Bryan F. Aylstock