UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *Vilsmeyer*, 7:20-cv-00113 *Wilkerson*, 7:20-cv-00035 *Kelley*, 7:20-cv-00153 *Vaughn*, 7:20-cv-00134 *Beal*, 7:20-cv-00006 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PLAINTIFFS' MOTION TO PRESERVE *DAUBERT* AND RULE 702 MOTIONS AND ARGUMENTS PREVIOUSLY RULED UPON

On December 30, 2021, Defendants disclosed seventeen (17) expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2) in the above-captioned Group D cases.[1] Defendants also disclosed two hybrid/percipient witnesses.[2] Defendants disclosed as general expert witnesses: John Casali, James Crawford, Gregory Flamme & Mark Stephenson, Harri Kytomaa, Jennifer LaBorde, Samuel Lundstrum & John Scarbrough, and Vickie Tuten. Defendants disclosed as case-specific expert witnesses: Walter W. Chatham (*Kelley*), James Crawford (*Kelley, Wilkerson*), Dennis P. Driscoll (*Vaughn*), Douglas Jacobs (*Vaughn, Wilkerson*), Dennis Pappas,

---

[1] *See* PX1 which accompanies Plaintiffs' Omnibus Motion and Memorandum of Law to Exclude Defendants' Expert Opinions and Testimony filed simultaneously herewith. The Group D plaintiffs include Luke Vilsmeyer, Steven Wilkerson, Denise Kelley, Jonathan Wade Vaughn, and James Beal ("Plaintiffs").
[2] *See id.*

Jr. (*Vaughn*), Stan Phillips (*Vilsmeyer*), Gregory Flamme & Mark Stephenson (*Vilsmeyer, Wilkerson*), Michael Shahnasarian (*Vilsmeyer, Wilkerson*), Derek Jones & Jennifer LaBorde (*Wilkerson*), Samuel Lundstrom (*Wilkerson*), and Richard Neitzel (*Wilkerson*).[3] Defendants disclosed as hybrid/percipient witnesses: Eric Fallon and Elliott Berger.

With respect to the general expert witnesses, only one of these witnesses, James Crawford, have given new general expert opinions in the Group D cases.[4] The others issued general reports for the Group D bellwether cases that are substantially similar, if not identical, to their general reports issued in Groups A, B and C.[5] With respect to the hybrid/percipient witnesses, neither Fallon nor Berger offers any new

---

[3] Pursuant to the parties' agreement dated October 28, 2021, case-specific *Daubert* motions are due in Plaintiff Beal's case on March 28, 2022. Therefore, if necessary, Plaintiff Beal will file a separate case-specific *Daubert* motion and/or preservation motion on or before that date.

[4] Crawford's new expert opinions are addressed in Plaintiffs' *Daubert* motion filed simultaneously herewith.

[5] *Compare* PX4(Casali-(General)), PX5(Crawford-(General)), PX6(Flamme & Stephenson-(General)), PX7(Kytomaa-(General)), PX8(LaBorde-(General)), and PX9(Tuten-(General)) which accompany Plaintiffs' *Daubert* motion filed simultaneously herewith *with* Dkt. 2051 exhibits PX2(Casali-(General)), PX3(Crawford-(General)), PX4(Flamme&Stephenson-(General)), PX5(Kytomaa-(General)), PX11(LaBorde-(General)), and PX8(Tuten-(General)). Any substantive change between a Group A general report and a Group B general report raising a new *Daubert* issue was addressed in Plaintiffs' Group B *Daubert* motion and previously adjudicated by the Court. *See* Dkt. 1863 and 1910. Likewise, any substantive change between a Group B general report and a Group C general report raising a new *Daubert* issue was addressed in Plaintiffs' Group C *Daubert* motion and previously adjudicated by the Court. *See* Dkt. 2051, 2218, and 2290.

opinions in the Group D cases, rather their Group D disclosures are identical to their Group A disclosures.[6] All of the case-specific experts offer new case-specific opinions concerning one or more of the Group D Plaintiffs, but given the nature of this litigation, these opinions often overlap with or are similar to opinions given in other prior Group A, B, and/or C cases.

Plaintiffs have previously moved under *Daubert* and Rule 702 to exclude the general expert opinions of John Casali, James Crawford, Gregory Flamme & Mark Stephenson, Harri Kytomaa, Jennifer LaBorde and Vickie Tuten, in prior Group A, Group B, and/or Group C *Daubert* briefing. Dkt. 1595 (Group A), Dkt. 1863 (Group B), Dkt. 2051 (Group C). Plaintiffs have also previously moved under *Daubert* and Rule 702 to exclude the case-specific expert opinions of James Crawford, Dennis P. Driscoll, Douglas Jacobs, Dennis Pappas, Jr., Gregory Flamme & Mark Stephenson, Derek Jones & Jennifer LaBorde, and Richard Neitzel, in prior Group A, Group B, and/or Group C *Daubert* briefing. Dkt. 1595 (Group A), Dkt. 1863 (Group B), Dkt. 2051 (Group C). Finally, Plaintiffs have previously moved under *Daubert* and Rule 702 to exclude the expert opinions of hybrid/percipient witnesses Eric Fallon and Elliott Berger. Dkt. 1595 (Group A). The Court has already ruled on these motions and has excluded the opinions of the above-referenced expert witnesses in whole or

---

[6] *Compare* PX2(Fallon) and PX3(Berger) which accompany Plaintiffs' *Daubert* motion filed simultaneously herewith *with* Dkt. 1595 exhibits PX53(Fallon) and PX54(Berger).

in part. *See* Dkt. 1651, 1680, 1690, 1701 and 1780 (Group A), Dkt. 1910 and 1933 (Group B), and Dkt. 2218 and 2290 (Group C).

To the extent the Court previously granted Plaintiffs' Group A, Group B, and/or Group C *Daubert* motions and excluded these general, hybrid/percipient, or case-specific experts' opinions in whole or in part, the opinions should also be excluded in the Group D cases for the same reasons. Plaintiffs wish to preserve their prior arguments and respectfully request that the Court heed its prior decisions granting plaintiffs' Group A, Group B, and Group C *Daubert* motions and excluding, in whole or in part, the expert opinions of the above-referenced expert witnesses.

For instance, as expressed by the Court in Dkt. 1910, 2218, and/or 2290, the following expert testimony has been excluded:

- **Casali:** (1) Defendants' or the military's state of mind; (2) any alleged duties, responsibilities, or policies of the military; (3) the military's policies and instructions on hearing conservation, or the military's compliance or noncompliance therewith; (4) federal or military procurement generally or the specific procurement process for the CAEv2; (5) legal opinions or interpretations of the MPID, or whether Aearo or the CAEv2 "complied with" or "satisfied" the MPID; and (6) the reasonableness or infeasibility of any provision of the MPID, who was responsible for a particular provision, or whether Aearo was required to comply with a particular provision. Dkt. 1910.

- **Crawford:** (1) the Army-wide success or failure of hearing conservation efforts; (2) the Army-wide implementation of the hearing program and/or applicable regulations; (3) the Army's alleged emphasis on its own testing over NRR values; (4) his opinion that the military took responsibility for instructing and training soldiers on hearing protection, and did not rely on manufacturers' instructions or training; (5) his "understanding" regarding whether servicemembers

4

were provided instructions or individually fitted when given hearing protection; (6) what the military audiologist community, medical staff or the military, more broadly, knew or understood about various propositions; (7) the alleged need for "individual fit testing" and personal attenuation ratings for servicemembers; and (8) "HEAR" training materials. Dkt. 1910.

- **Kytomaa:** (1) general causation or the specific cause of any individual plaintiff's hearing-related problems; (2) Dr. Eddins and Juneau's silicone ear replicas or their testing methods; (3) opinions regarding REAT or MIRE testing;[7] and (4) the opinions in §§ 2.3 and 2.4 of his report. Dkt. 1910.

- **Tuten:** (1) the Army-wide failure of the hearing conservation efforts or a purported "widespread" culture of non-compliance with Army safety and hearing conservation program requirements; (2) any lack of resources and/or operational support constituted a failure of the Army Hearing Program Army-wide and led to hearing injuries in servicemembers as a whole; (3) that she "understand[s] that information was provided by the Army Public Health Command regarding a recommendation to roll the last flange back to get a better insertion of the CAEv2"; (4) that "anecdotal information relayed to me was that no instruction was provided by the military staff handing out the CAEv2;" (5) that "the [Army Hearing Program] was not implemented consistently *across installations*"; and (6) about "'frustrations expressed' by unidentified 'military audiologists' and 'anecdotal information relayed to [her]' by 'soldiers.'" Dkt. 1910.

- **Flamme & Stephenson:** (1) any Department of Defense program was implemented inadequately or failed; (2) that the military not conducting audiograms contributed to a Plaintiff's injuries; (3) that anything the military did put Plaintiffs "at greater risk of sustaining a hearing impairment" or otherwise caused their injuries; (4) that any military program was "inconsistently implemented" or otherwise failed, either as a general matter or as to any particular plaintiff; (5) that the military's "poor safety culture" or failure to provide "adequate and effective training" contributed to Plaintiffs' injuries; (6) that they are unable to rule out burn pit exposure as a cause of tinnitus; and (7) that cigarette

---

[7] *See also* Dkt. 1690 at 17.

5

smoking (tobacco use) is ototoxic and could be a cause of any Plaintiff's tinnitus. Dkt. 1910; Dkt. 2218 at 30-35.

- **LaBorde:** Testimony concerning "other hearing disorders" in cases where the plaintiff has not been reliably diagnosed with these conditions. Dkt. 2290 at 8-9.

- **Jones & LaBorde:** Permanent impairment ratings based on the 1996 Florida Uniform Permanent Impairment Rating Schedule ("FUPIRS") or "other impairment rating schemes" as referenced by the Court, including those "developed for workers' compensation and social security cases." Dkt. 2290 at 6-8.[8]

In addition to the above, the Court has also made clear that none of Defendants' expert may opine or testify on certain matters, including without limitation:

- a purported "widespread" culture of compliance or non-compliance with Army safety and hearing conservation program requirements (Dkt. 1651 at 3-8);

- Army-wide success or failure of hearing conservation efforts (*Id.*);

- that anything the military did placed Plaintiffs "at greater risk of sustaining a hearing impairment" or otherwise caused their injuries (Dkt. 1690 at 13); and,

- the Defendants' or the military's state of mind (*Id.* at 15).

The Court should impose the same limitations on all of Defendants' Group D experts. Accordingly, Plaintiffs move the Court to heed its prior rulings in the Group A, Group B, and Group C *Daubert* Orders, *see* Dkt. 1651, 1680, 1690, 1701, 1780

---

[8] *See also* Dkt. 1680 at 27-30.

(Group A), Dkt. 1910 and 1933 (Group B), Dkt. 2218 and 2290 (Group C) to the extent that (1) the Court granted the Group A plaintiffs', Group B plaintiffs', and/or Group C plaintiffs' motions to exclude the opinions of Defendants' experts, and (2) any of Defendants' Group D experts now offer (or attempt to offer) those same or substantially similar expert opinions in the Group D cases.

Finally, to the extent Plaintiffs made additional *Daubert* arguments concerning the above-described expert witnesses which were denied by the Court, including without limitation the following, Plaintiffs seek to preserve these arguments for appellate purposes:

- Motion to exclude the opinions of Flamme & Stephenson that rely upon the Auditory Hazard Assessment Algorithm for Humans ("AHAAH") (Dkt. 1595 at 5-10);

- Motion to exclude the causation opinions of Flamme & Stephenson that do not apply a differential diagnosis or similar reliable methodology (*Id.* at 10-12);

- Motion to exclude the opinions of Kytomaa that rebut Dr. Richard McKinley and Dr. Stephen Armstrong's opinions related to Aearo's testing with the Acoustical Resistance Checker and its quality assurance processes, as well as the material composition of the CAEv2 (*Id.* at 12-14);

- Motion to exclude the opinions of Crawford that relate to the following: the Hearing Center of Excellence, the regulations governing the Army Hearing Program, and the importance of training and instruction relating to, and fitting of, hearing protection devices; medical readiness and hearing conservation in the Army; and his personal experiences and observations of the "significant gaps in the training and fitting of hearing protection devices" (*Id.* at 15-22);

- Motion to exclude the opinions of Casali that relate to military procurement, the MPID, whether the CAEv2 conformed to the performance specifications of the MPID, and AHAAH (*Id.* at 22-26); and,

- Motion to exclude the opinions of Tuten that relate to the DoD's and Army Hearing Program's regulations and requirements regarding hearing protection and the DoD's and Army Hearing Program's implementation of such regulations and requirements (*Id.* at 42-44).

For each of these reasons, in accordance with the Court's prior instructions to the parties and for purposes of preservation, the Group D Plaintiffs hereby assert and incorporate herein by reference all of plaintiffs' prior Group A, Group B, and Group C *Daubert* motions and all of plaintiffs' related arguments. Dkt. 1595; Dkt. 1863; Dkt. 2051. Plaintiffs move the Court to heed its prior rulings in its Group A, Group B, and Group C *Daubert* Orders (*see* Dkt. 1651, 1680, 1690, 1701, and 1780 (Group A), Dkt. 1910 and 1933 (Group B), and Dkt. 2218 and 2290 (Group C)) to the extent that (1) the Court granted the Group A, Group B, or Group C plaintiffs' motions to exclude the opinions of Defendants' experts, and (2) any of Defendants' experts now offer (or attempt to offer) those expert opinions in the Group D cases.

## **CONCLUSION**

Plaintiffs respectfully move this Court to grant each of the above-referenced *Daubert* motions in the Group D cases. Nevertheless, Plaintiffs understand this Court will enter orders in the Group D cases consistent with those entered in the Group A, Group B, and Group C bellwether cases. Plaintiffs move on each of these *Daubert* motions for preservation purposes. Plaintiffs further ask the Court to heed

8

its prior decisions granting plaintiffs' Group A, Group B, and Group C *Daubert* motions.

Date: February 4, 2022            Respectfully submitted,

<div style="margin-left: 3em;">

<u>/s/ Bryan F. Aylstock</u>
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com
***Plaintiffs' Lead Counsel & Counsel for Plaintiff James Beal***

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, PLLC
440 Louisiana Street, Suite 1700
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com
***Plaintiffs' Co-Lead Counsel***

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com
***Plaintiffs' Co-Lead Counsel***

Keith M. Jensen
(Admitted Pro Hac Vice)

</div>

9

Texas Bar No. 10646600
JENSEN & ASSOCIATES
1024 N. Main Street
Fort Worth, TX 76164
817-334-0762
kj@jensen-law.com
***Counsel for Plaintiff Steven Wilkerson***

Joseph L. Messa
Ashley B. DiLiberto
(Admitted Pro Hac Vice)
JM2878/ AD9331
MESSA & ASSOCIATES, P.C.
123 S. 22nd St.
Philadelphia, PA 19103
215-568-3500
215-568-3501 (fax)
jmessa@messalaw.com
adiliberto@messalaw.com
***Counsel for Plaintiff Luke Vilsmeyer***

Trent Miracle
(Admitted Pro Hac Vice)
Illinois Bar No. 6281491
Dan Blouin
(Admitted Pro Hac Vice)
New York Bar No. 4289021
John J. Foley
(Admitted Pro Hac Vice)
Illinois Bar No. 6288152
SIMMONS, HANLY, CONROY
One Court Street
Alton, IL 62002
618-259-2222
618-259-2251 (fax)
tmiracle@simmonsfirm.com
dblouin@simmonsfirm.com
jfoley@simmonsfirm.com
***Counsel for Plaintiff Denise Kelley***

Gerard Guerra
(Admitted Pro Hac Vice)
Missouri State Bar No. 42703
ONDERLAW, LLC
110 East Lockwood Ave.
St. Louis, MO  63119
314-963-9000
314-228-0132 (fax)
guerra@onderlaw.com
***Counsel for Plaintiff Jonathon Vaughn***

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)

Pursuant to Local Rule 7.1(B), counsel for Plaintiffs certify that they conferred with Defendants' counsel on February 2, 2022 regarding the foregoing motion but were unable to resolve the issue with Defendants.

<div style="text-align: right;">

*/s/ Bryan F. Aylstock*

</div>

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this motion complies with the word limit of Local Rule 7.1(F) and contains 2,076 words.

/s/ Bryan F. Aylstock

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

<div style="text-align: right">

*/s/ Bryan F. Aylstock*

</div>