In re: 3M Combat Arms Earplug

Hearing before:

Judge Gary Jones

December 29, 2021

# PHIPPS REPORTING

*Raising the Bar!*

Exhibit "A"

Judge Gary Jones
December 29, 2021

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:  3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION                              Case No. 3:19-md-2885

                                        Judge M. Casey Rodgers

                                        Magistrate Judge
                                        Gary R. Jones
This Document Relates to:
Ronald Sloan, 7:20-cv-1
William Wayman, 7:20-cv-149

_____/

TRANSCRIPT OF HEARING PROCEEDINGS

EVIDENTIARY HEARING

DATE TAKEN:  Wednesday, December 29, 2021
TIME:        10:04 a.m. - 12:30 p.m.
PLACE:       United States District Court
             401 Southeast First Avenue
             Gainesville, FL 32601
BEFORE:      Gary R. Jones,
             Magistrate Judge

    This cause came on to be heard at the time and
place aforesaid, when and where the following proceedings
were stenographically reported by:

             Lynn Marie Durscher, RPR, CRR

Job No.:  225446

Judge Gary Jones
December 29, 2021

Page 2

 1  APPEARANCES:  (Parties appearing at United States District
    Court, 401 Southeast First Avenue, Gainesville, FL 32601)

 2

 3  On Behalf of the Plaintiffs:

 4       Aylstock, Witkin, Kreis & Overholtz, PLLC
         17 East Main Street
 5       Suite 200
         Pensacola, Florida 32502
 6       (850) 202-1010

 7       BY:  JENNIFER M. HOEKSTRA, ESQUIRE
         jhoekstra@awkolaw.com
 8

 9

10  On Behalf of the Defendants:

11       Moore, Hill & Westmoreland, P.A.
         Maritime Place
12       350 West Cedar Street, Suite 100
         Pensacola, FL  32502
13       (850) 434-3541

14       BY:  CHARLES F. BEALL, JR., ESQUIRE
         cbeall@mhw-law.com
15

16

17  ALSO PRESENT:

18  Mr. Maury Goldstein
    Aylstock, Witkin, Kreis & Overholtz, PLLC
19

20

21

22

23

24

25

Judge Gary Jones
December 29, 2021

Page 3

1   APPEARANCES CONTINUED:   (Parties appearing by Web conference)

2   On Behalf of the Plaintiffs:

3        Aylstock, Witkin, Kreis & Overholtz, PLLC
         17 East Main Street
4        Suite 200
         Pensacola, Florida 32502
5        (850) 202-1010

6        BY:   BRYAN F. AYLSTOCK, ESQUIRE
               NEIL D. OVERHOLTZ, ESQUIRE
7        baylstock@awkolaw.com
         noverholtz@awkolaw.com
8
         Laminack, Pirtle & Martines LLP
9        5020 Montrose Boulevard
         9th Floor
10       Houston, TX 77006
         (713) 292-2750
11
         BY:   THOMAS W. PIRTLE, ESQUIRE
12       tomp@lpm-triallaw.com

13

14  On behalf of the Plaintiff Wayman:

15       Seeger Weiss LLP
         55 Challenger Road
16       6th Floor
         Ridgefield Park, NJ 07660
17       (973) 639-9100

18       BY:   MAXWELL H. KELLY, ESQUIRE
               DAVID R. BUCHANAN, ESQUIRE
19       mkelly@seegerweiss.com
         dbuchanan@seegerweiss.com
20

21

22

23

24

25

Judge Gary Jones
December 29, 2021

Page 4
 1  APPEARANCES CONTINUED:  (Parties appearing by Web conference)

 2  On Behalf of the Defendants:

 3       Kirkland & Ellis LLP
         555 South Flower Street
 4       Suite 3700
         Los Angeles, CA 90071
 5       (213) 680-8543

 6       BY:  SIERRA ELIZABETH, ESQUIRE
              STEVEN CRAIG CZAK, ESQUIRE
 7       sierra.elizabeth@kirkland.com
         steven.czak@kirkland.com
 8
                   and
 9
         Kirkland & Ellis LLP
10       300 North Lasalle
         Chicago, IL 60654
11       (312) 861-2410

12       BY:  MARK J. NOMELLINI, ESQUIRE
              RENEE D. SMITH, ESQUIRE
13            COLE T. CARTER, ESQUIRE
         mnomellini@kirkland.com
14       rdsmith@kirkland.com
         cole.carter@kirkland.com
15
                   and
16
         Kirkland & Ellis LLP
17       1301 Pennsylvania Avenue NW
         Washington, DC 20004
18       (202) 879-5991

19       BY:  KASDIN MILLER MITCHELL, ESQUIRE
         kasdin.mitchell@kirkland.com
20

21       Dechert LLP
         One Bush Street
22       Suite 1600
         San Francisco, CA 94104
23       (415) 262-4500

24       BY:  MARY H. KIM, ESQUIRE
         mary.kim@dechert.com
25

Judge Gary Jones
December 29, 2021

Page 5

1  APPEARANCES CONTINUED:  (Parties appearing by Web conference)

2  On Behalf of Elliott H. Berger:

3      Philip A. Bates, P.A.
       25 West Cedar Street, Suite 550
4      Pensacola, FL 32502-5911
       (850) 470-0091
5
       BY:  PHILIP A. BATES, ESQUIRE
6           CAROL ANN RUEBSAMEN, ESQUIRE
       pbates@philipbates.net
7      cruebsamen@philipbates.net

8

9  ALSO PRESENT:  (Appearing by Web Conference)

10 Mr. Elliott H. Berger

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Judge Gary Jones
December 29, 2021

Page 6

1                       I-N-D-E-X

2   Proceedings                                         Page

3   WITNESS:

4   ELLIOTT HARRIS BERGER

5   Direct Examination by Ms. Elizabeth            16
    Cross-Examination by Mr. Bates                 24
6   Cross-Examination by Ms. Hoekstra              27
    Redirect Examination by Ms. Elizabeth          60
7   Examination by the Court                       63
    Recross-Examination by Ms. Hoekstra            65
8   Recross-Examination by Mr. Bates               67

9

10  Argument by Mr. Beall                          70

11  Argument by Mr. Bates                          87

12  Argument by Ms. Hoekstra                       88

13  Closing Instructions by the Court             99

14

15  Certificate of Reporter                       107

16

17

18                   E-X-H-I-B-I-T-S

19                  PLAINTIFFS' EXHIBITS

20      No.                                        Page

21       1     Composite of Documents             37

22

23

24

25

Judge Gary Jones
December 29, 2021

Page 7

1  Proceedings began at 10:04 a.m.:

2          THE COURT:  Please have a seat.

3          Good morning, everyone.

4          MR. BEALL:  Good morning, Your Honor.

5          MS. HOEKSTRA:  Good morning.

6          THE COURT:  This is in the 3M case and particularly

7  in the two cases, Ronald Sloan vs. 3M, et al., and

8  William Wayman vs. 3M, et al., and let me go through a

9  brief roll call of who is present.

10         On behalf of the plaintiffs, I see Jennifer

11 Hoekstra, and with you, Ms. Hoekstra, is Maury Goldstein;

12 is that correct?

13         MS. HOEKSTRA:  Yes, sir.

14         THE COURT:  Okay.  Good morning to both of you.

15         Mr. Charles Beall is here for the defendants.  I

16 guess you drew the short stick and had to drive over here

17 to Gainesville.

18         MR. BEALL:  When you live in the state.

19         THE COURT:  Yeah, right.

20         And with the Court's permission, individuals are

21 appearing by video, and Mr. Berger is present by Zoom.

22         MR. BERGER:  Yes, sir.

23         THE COURT:  Good morning to you.

24         And is represented by Philip Bates, who is present,

25 and also --

Judge Gary Jones
December 29, 2021

Page 8

1        MR. BATES:  Good morning, Your Honor.

2        THE COURT:  And let's see who else.  I see

3   Ms. Elizabeth there.

4        Who else is --

5        MS. ELIZABETH:  Good morning, Your Honor.

6        THE COURT:  Yeah, good morning.

7        Who else is on the Zoom call?  Is there anyone else?

8        MR. KELLY:  This is Max Kelly for Plaintiff William

9   Wayman.

10        THE COURT:  Okay.  Who else?

11        MR. AYLSTOCK:  Good morning, Your Honor.  Bryan

12   Aylstock for Plaintiffs Sloan and Wayman.

13        THE COURT:  Okay.

14        MR. OVERHOLTZ:  Good morning, Your Honor.  Neil

15   Overholtz for plaintiffs.

16        MR. PIRTLE:  Good morning, Your Honor.  Thomas

17   Pirtle for plaintiffs.

18        MR. BUCHANAN:  Good morning, Your Honor.  David

19   Buchanan for Mr. William Wayman.

20        THE COURT:  Okay.  I think that's everyone for the

21   plaintiffs.

22        And for the defendants, I mentioned Ms. Elizabeth

23   was present on behalf of 3M.

24        Who else is on the Zoom call on behalf of 3M?

25        MR. NOMELLINI:  Good morning, Your Honor.  Mark

Judge Gary Jones
December 29, 2021

Page 9

 1    Nomellini on behalf of defendant.

 2        MS. MITCHELL:  Good morning, Your Honor.  This is

 3    Kasdin Mitchell on behalf of defendants.

 4        MS. SMITH:  Good morning.  This is Renee Smith on

 5    behalf of defendants.

 6        MR. CARTER:  Good morning, Your Honor.  Cole Carter

 7    on behalf of defendants.

 8        MR. CZAK:  Good morning, Your Honor.  Steven Czak on

 9    behalf of defendants.

10        MS. KIM:  Mary Kim on behalf of defendants.

11        THE COURT:  Okay.  I think that is everyone.

12        So a couple of things about --

13        MR. BATES:  Your Honor.

14        THE COURT:  Oh, I'm sorry.

15        MR. BATES:  Your Honor, this is Philip Bates.

16        My colleague, Carol Ruebsamen, is also on the call

17    with me for Mr. Berger.

18        I apologize for the interruption.  I thought you

19    should know.

20        THE COURT:  Okay.  Thank you.  Thank you for that.

21        So the protocol is I'm going to ask people on the

22    Zoom call who are not going to speak, who are observing,

23    if you would make sure to mute your microphones because

24    we have the spotlight feature, and if anyone is speaking

25    or making noise, you pop up on Zoom.

Judge Gary Jones
December 29, 2021

1      And although I may be hearing from some of you on

2   Zoom, I'm, obviously, most interested in hearing from

3   Mr. Berger and Mr. Bates as well.

4      Now, with regard to our COVID protocol in the

5   courtroom, you can see we are all wearing masks, but I'll

6   ask the lawyers.  I'm pretty sure I know the answer to

7   the question.

8      I think, Mr. Beall, you have been vaccinated.

9   Ms. Hoekstra, you have been.

10      Have you, Mr. Goldstein?

11      MR. GOLDSTEIN:  Yes.

12      THE COURT:  Okay.  So what I'm going to do is, for

13   the lawyers in the courtroom, when you are addressing the

14   Court, you can use the podium so our court reporter will

15   be able to get down what you are saying, but you'll be

16   free to remove your mask.

17      With that announcement, I'm going to remove mine.

18      Now, the very narrow issue, actually, that we set

19   for the hearing today is to determine in the Sloan and

20   Wayman case whether Mr. Berger is unavailable as a

21   witness, and unavailability, with the unavailability

22   under Rule 32 and possibly the Federal Rules of Evidence.

23   Because all of this, just to give some background, ends

24   up here at an evidentiary hearing because of the issue

25   raised by 3M that they wished to present the deposition

Judge Gary Jones
December 29, 2021

 1   testimony of Mr. Berger, and they can do so, at least

 2   from the Court's perspective, only if he is unavailable,

 3   and the Court preliminarily determined that 3M had not

 4   made that showing, and the matter was referred to me by

 5   Judge Rodgers for an evidentiary hearing.

 6        You know, I should point out that, you know, this

 7   dispute, it's a little bit like a Rubik's cube, but one

 8   thing maybe all of us agree upon, at least for the

 9   January 10th trial, if the plaintiffs call Mr. Berger as

10   a witness via remote transmission, which I have given the

11   plaintiffs permission because they filed a motion and, in

12   my view, had made a sufficient showing, the protocol has

13   been, and I believe will continue to be, that, whether 3M

14   considers Mr. Berger available or unavailable, that 3M

15   would be free to question Mr. Berger as a witness and

16   would not be limited to the cross being confined just to

17   the questions asked on direct.

18        So as a practical matter, if Mr. Berger is called as

19   a witness at the Sloan/Wayman trial, 3M will get an

20   opportunity to ask Mr. Berger any and all questions, and

21   in that sense, the issue of unavailability really becomes

22   a nonissue.

23        And I understand from 3M's perspective they say,

24   well, that's not fair to us because then we're at the

25   mercy of plaintiffs, and there can be gamesmanship

Judge Gary Jones
December 29, 2021

Page 12

1    involved, and, quite frankly, I think there's a fair

2    amount of gamesmanship on both sides as to whether or not

3    Mr. Berger should be called, but, you know, until we

4    reach that point, I am going to have to make a

5    determination based on the evidence presented this

6    morning as to indeed whether Mr. Berger is or is not

7    available.

8         Now, before we begin examination of Mr. Berger, I

9    wanted to address the issue of the subpoena duces tecum.

10        And I don't know if at this point -- I'll ask

11   Ms. Hoekstra.  I mean, do we need to air out any issues

12   with regard to the subpoena duces tecum?

13        And I'm not asking you to concede what you got is

14   fine, you don't need anything else, but, you know,

15   question one is, do you indeed have anything?

16        MS. HOEKSTRA:  Yes, Your Honor.

17        Sorry for that.

18        We received about 30 pages last night in response to

19   the information and received a link at 9:06 this morning

20   with 133 additional documents that we -- or, sorry, 10:06

21   Eastern, 9:06 Central, that we're still looking through.

22        THE COURT:  Okay.  Is there, at this point, is there

23   anything that you believe, not just that you think you

24   are entitled to, but you believe is essential that has

25   not been produced either because it has not been produced

Judge Gary Jones
December 29, 2021

Page 13

1   or because there has been a claim of privilege raised?

2       MS. HOEKSTRA:  There has been a claim of privilege

3   raised.  There was not a privilege log provided.  It was

4   an indication that there was an ongoing privilege review

5   both by Kirkland and by Mr. Bates.  So we do not have a

6   privilege log yet in order to address that, so we do

7   think that that is an open issue.

8       I haven't had a chance in the last 6 minutes to look

9   very closely at the additional materials this morning.

10  What was provided last night is enough to have a

11  discussion with Mr. Berger today about his availability

12  and the control aspects of his testimony.

13      THE COURT:  So let's do this on the subpoena.  We

14  don't have a, as yet, a formal privilege log.  I know

15  Mr. Bates filed something to let the Court know what

16  they've produced and what they are reviewing for

17  privilege, but until we have a formal privilege log which

18  identifies the document by date, the type of document,

19  who sent it, who received it, who was copied on it, and a

20  general description of the document which would not

21  disclose any privilege, you know, we really don't know

22  whether there's a dispute, and what would happen is that

23  privilege log will be produced in due course.

24      The plaintiffs will get an opportunity to look at

25  it.  They will discuss the privilege log with Mr. Bates,

Judge Gary Jones
December 29, 2021

Page 14

1   with 3M's counsel, and if, after discussing it, there

2   legitimately is a dispute as to whether documents are or

3   are not covered by the privilege, then an appropriate

4   motion can be filed and the Court can rule on it at this

5   point.

6        And I'm saying that because I don't want the fact

7   that we're going forward with the hearing to be viewed as

8   essentially a waiver by the plaintiffs of any challenge

9   to documents over which a privilege has been raised.  All

10  Ms. Hoekstra is really telling the Court is, we're here,

11  Mr. Berger is here, we've got some information that will

12  be helpful to the hearing, we'll go forward with the

13  hearing, and then, if necessary, down the road we'll

14  address the issue of privilege.

15       Now, on the issue of availability or unavailability,

16  Mr. Beall, I guess it's your burden because you, 3M, is

17  the party who wants to use deposition testimony of

18  Mr. Berger.  So you cannot do so unless you show he's

19  unavailable.  So as a practical matter, what I was going

20  to ask you to do is, if indeed you're intending to ask

21  Mr. Berger questions, to go forward with your examination

22  of Mr. Berger, and then I will allow the plaintiffs to

23  cross-examine Mr. Berger.

24       And you can present any other evidence that you

25  think I ought to look at, and I'll give Ms. Hoekstra an

Page 15

1   opportunity to present any other testimonial or

2   documentary evidence that the plaintiffs believe I should

3   look at on the issue of unavailability.

4        MR. BEALL:  We understand, Your Honor.

5        Actually, Ms. Elizabeth is going to be handling the

6   examination, and Mr. Bates may be asking questions as

7   well of his client.

8        THE COURT:  Oh, okay.

9        MR. BEALL:  And they will proceed.  I'll be the

10  argument later, but they will handle the actual

11  examination itself.

12       THE COURT:  Okay.  So, Ms. Elizabeth, then you were

13  going to begin with the examination of Mr. Berger; is

14  that correct?

15       MS. ELIZABETH:  Yes, Your Honor.

16       THE COURT:  Okay.  So what I'd like to do is

17  remotely swear in Mr. Berger.

18       So, TiAnn, if you would please swear in Mr. Berger.

19       THE CLERK:  Sure.

20       Mr. Berger, please raise your right hand.

21       Do you solemnly swear that the testimony you are

22  about to give in the cause now pending will be the truth,

23  the whole truth, and nothing but the truth, so help you

24  God?

25       THE WITNESS:  I do.

Judge Gary Jones
December 29, 2021

Page 16

 1          THE COURT:  Okay.  There we are.

 2          THE CLERK:  For the record, please state your name

 3     and spell your last name.

 4          THE WITNESS:  Elliott Harris Berger, B-E-R-G-E-R.

 5          THE COURT:  Okay, thank you.

 6          Ms. Elizabeth, you can proceed.

 7          MS. ELIZABETH:  Thank you.  May it please the Court.

 8  Thereupon:

 9                    ELLIOTT HARRIS BERGER,

10          having been previously sworn by the Clerk,

11                    testified as follows:

12                    DIRECT EXAMINATION

13  BY MS. ELIZABETH:

14     Q.   Good morning, Mr. Berger.

15     A.   Good morning.

16     Q.   Where are you testifying from today?

17     A.   My home in Indianapolis, Indiana.

18     Q.   How long have you lived in Indianapolis, Indiana?

19     A.   Since 1977.

20     Q.   And you're currently retired?

21     A.   Yes, I am.

22     Q.   How old are you?

23     A.   69.

24     Q.   I want to focus my questions on your previous

25  in-person trial testimony, so that's where I'll start today,

Judge Gary Jones
December 29, 2021

Page 17

1  Mr. Berger.

2          In the past have you agreed to testify voluntarily

3  at any trials in this case?

4      A.  Yes, I have.

5      Q.  Okay.  And why did you agree to testify voluntarily

6  at trials in this case?

7      A.  I was involved with the team that developed the

8  Combat Arms Earplug.  I was there from the start.  I wanted

9  to share my story and what I knew about a product that I

10 think was a fine hearing protector and has saved the hearing

11 of many soldiers, and I wanted to be able to present that in

12 these proceedings.

13     Q.  Did you ever feel like you were forced to testify

14 for 3M in the trials that you testified voluntarily in in

15 this case?

16     A.  No.

17     Q.  Did you receive any payment for the hours you spent

18 testifying at any of those trials that you voluntarily

19 testified in?

20     A.  No.

21     Q.  Do you recall a trial by the name of Baker that took

22 place in June of 2021?

23     A.  Yes.

24     Q.  Did 3M's attorneys ask you whether you were

25 available to testify at the Baker trial in June of this year?

Judge Gary Jones
December 29, 2021

Page 18

1    A.    They did.

2    Q.    What did you say?

3    A.    That I did not want to testify at that trial, that

4  I'd already been involved in two trials.  That one in

5  particular fell at a very inconvenient time between my

6  participating on a Ph.D. thesis defense meeting and the

7  beginning of an extended trip to the West Coast for a family

8  reunion.

9    Q.    After you gave that explanation to 3M, did they ask

10 you to testify in the Baker trial anyway?

11   A.    No.

12   Q.    Did 3M force you in any way to testify at the Baker

13 trial?

14   A.    No.

15   Q.    Did you end up testifying at the Baker trial?

16   A.    Yes.

17   Q.    Why?

18   A.    I was subpoenaed by the plaintiffs.

19   Q.    Do you remember a case by the name of Camarillo that

20 was set for November of this year?

21   A.    Yes, I do.

22   Q.    Did 3M ask you whether you were available to testify

23 at the Camarillo trial?

24   A.    They did.

25   Q.    Did you refuse to appear voluntarily for 3M at the

Judge Gary Jones
December 29, 2021

Page 19

1  Camarillo trial?

2      A.   I did.

3      Q.   Why did you refuse?

4      A.   Again, by that time I had even been involved in more

5  trials, more than I'd ever considered I was going to have to

6  be involved in, and once more it fell at an inconvenient time

7  in my life.  I had just, to my surprise, received an award

8  from North Carolina State University and was traveling there

9  to receive that award in Raleigh, North Carolina, and while I

10  was down there, we took an automobile trip down there.  My

11  wife and I had intended to spend a couple of weeks in North

12  Carolina and enjoy that opportunity to be there, and to

13  participate I had to cut that trip short to return here to

14  video testify.

15      Q.   Did you tell 3M that you would not appear

16  voluntarily at the Camarillo trial?

17      A.   I did.

18      Q.   Did you end up testifying at the Camarillo trial?

19      A.   Yes, I did.

20      Q.   Why?

21      A.   Again, this time I was subpoenaed, but this time by

22  3M.

23      Q.   Since the Camarillo trial, have you asked 3M not to

24  subpoena you for any more testimony?

25      A.   Yes.  I made it exceedingly clear that I do not want

Judge Gary Jones
December 29, 2021

1  to be subpoenaed by 3M.  Unfortunately, I have no control

2  over the subpoenas from the plaintiffs.

3      Q.   You retained separate counsel in August of 2021

4  after the Baker trial.  What was the purpose of you hiring

5  separate counsel?

6      A.   I needed a lawyer who was working solely for me, for

7  whom my interests were the only ones that he was paying

8  attention to.

9           Prior to that, 3M counsel had agreed to be my -- be

10  involved in the situations where I'm being deposed and in

11  trial, but, obviously, 3M has their principal interests, and

12  those may not always coincide with mine.  I wanted to have an

13  attorney who would be on my side and I was number one.

14      Q.   Why did you want an attorney to be on your side?

15      A.   When I began my involvement in this in the fall of

16  2019, as I said, I wanted to be able to tell my story and

17  present the facts as I understood them, and my understanding

18  at the time was that I would indeed have a number of

19  depositions, I would have to appear in court, but it would be

20  a limited number of times I'd appear in court.  I had

21  anticipated two or three, subsequent to which either there

22  would be video of my testimony or my trial transcripts

23  because by then I would have answered the questions numerous

24  times, and that that would terminate my involvement with this

25  litigation.

Judge Gary Jones
December 29, 2021

Page 21

1          That didn't come to pass.  I'm retired in 2018 and

2   had goals for my retirement years which did not include being

3   involved in difficult and protracted litigation, and I want

4   to terminate that as soon as possible so that I can go on

5   about my plans in my retirement.

6      Q.   If 3M asked you to testify voluntarily in any more

7   trials, what would you say?

8      A.   No.

9      Q.   Does anything in your agreements with Kirkland &

10  Ellis obligate you to testify for 3M to your understanding?

11     A.   No, there is no obligation to my understanding.

12     Q.   Do you know approximately how many hours total

13  you've already spent in this litigation?

14     A.   Yes.

15     Q.   Approximately how many?

16     A.   I spent about five weeks a year in 2019 and 2020,

17  and in excess of that, probably more like seven or more weeks

18  this year.  Plus when you add together the deposition time,

19  that ends up being another six days.

20          So we're looking at on the order of coming up on

21  800 hours that I have been involved in this litigation.

22     Q.   Did you anticipate that you would be required to

23  spend that many hours on this litigation?

24     A.   Not at all.  This -- this was not supposed to be the

25  product of my retirement years.

Judge Gary Jones
December 29, 2021

Page 22

1    Q.   How has this type of commitment impacted your

2  retirement?

3    A.   I had planned to retire and to do some consulting.

4  The type of consulting I was interested in was presenting

5  lectures, seminars, educational issues.  I had no intention

6  of being an expert witness or a consultant in any litigation

7  cases.

8         I also enjoy supporting students.  I have been

9  involved with a couple of universities being on student

10  defense committees, an ongoing large-scale research project

11  in Canada to develop new and improved hearing protection

12  devices.

13         I still maintain involvement with two principal

14  acoustical organizations, the Acoustical Society of America

15  and the National Hearing Conservation Association, and this

16  ends up, this litigation ends up being a lot more

17  professional hours when added all -- when added to that, on

18  top of which, of course, that the retirement I had intended

19  was one over which I was the captain of my ship and I would

20  decide when I wanted to do things and enable me to spend time

21  with family, grandkids, and other things of my interest.

22         This litigation, I have no control over that, and it

23  makes it difficult.  It has interfered with prior plans where

24  I have had to change plans or even cancel doctors'

25  appointments.

Judge Gary Jones
December 29, 2021

Page 23

1          It is -- you know, as I look forward to potential

2    future cases, I'm wondering if that is going to interfere

3    with my plans over the next six months for some involvement

4    in professional events and the time I want to spend with my

5    family, so it's been intrusive on my life and, again, not

6    what I had intended.

7          Q.   I believe you stopped -- you terminated your

8    consulting agreement with 3M in October of this year; is that

9    right?

10         A.   Yes, October 11th.

11         Q.   Why did you stop consulting for 3M?

12         A.   Because the litigation has been so -- taken up such

13   a large portion of what I had intended for my professional

14   work, I decided that I needed to delete that aspect of my

15   professional career to try and capture more time for other

16   things, and so I sent a letter of resignation to Volt

17   Employment Services on October 11th.

18         MS. ELIZABETH:   Thank you, Mr. Berger.

19         Your Honor, I'd like to reserve additional time in

20      the event that I have other questions after plaintiffs'

21      counsel has asked, but at this time I have no further

22      questions.

23         THE COURT:   Okay.   Thank you.   I'll let you

24      redirect.

25         Mr. Bates, were you intending to ask Mr. Berger any

Judge Gary Jones
December 29, 2021

Page 24

1     questions?

2          MR. BATES:  Your Honor, I am here because I thought

3     that was indicated by Your Honor's orders, and I would

4     want to ask just a couple if that's okay.

5          THE COURT:  Yeah, why don't you go ahead.

6                    CROSS-EXAMINATION

7  BY MR. BATES:

8     Q.   Mr. Berger, do you understand you have the

9  prerogative not to appear unless you are subpoenaed?

10    A.   Yes, I do.

11         Could you hold on just a minute?  The way I had my

12 screen set up, I have lost your face, and I would like to see

13 you while you're talking.

14         There we go.  Thank you.

15    Q.   Let me repeat.

16         Do you understand that, at least as a nonparty to

17 this case, you have the prerogative not to appear without a

18 subpoena?

19    A.   Yes, I do understand that.

20    Q.   Has anyone indicated from the 3M side or from your

21 own counsel something contrary to that?

22    A.   No, they have not.

23    Q.   Have you been threatened in any way, financially or

24 otherwise, if you fail to appear voluntarily?

25    A.   No.  There has been no threats, no effort to try and

Judge Gary Jones
December 29, 2021

Page 25

1  force me to change my mind.

2      Q.   Do you feel vulnerable to any sort of express or

3  tacit coercion by 3M to testify?

4      A.   No, I do not.  I have not experienced anything of

5  that nature.

6      Q.   And since you -- or pardon me.

7           You did make that clear, if I understand correctly,

8  you did in October of this year terminate and sever any

9  business relationship with 3M having to do with these

10 earplugs?

11     A.   I terminated any business relationship with 3M.

12 That relationship really didn't pertain to this earplug.  It

13 was for other matters, but I severed that contract worker

14 relationship with 3M.

15     Q.   So right now you have no business relationship with

16 3M at all?

17     A.   Correct.

18     Q.   In terms of your availability, do you have any

19 intention of coming to Pensacola, Florida, or Florida, for

20 that matter, or the Northern District of Florida to

21 voluntarily testify on behalf of anyone?

22     A.   No, I do not.

23     Q.   And is it your testimony to Judge Jones this

24 morning, do you absolutely refuse, to the extent you have the

25 right to refuse, do you refuse to appear without a subpoena?

Judge Gary Jones
December 29, 2021

Page 26

1    A.   Yes, to the extent that I -- I refuse, and to the

2  extent I can support that, I want to do that.  I am -- I

3  think I have participated in this litigation extensively,

4  contributed what I know.  I don't really think there's any

5  more questions to ask me.  I have answered some questions

6  dozens of times.  I am ready to move on.  I will not

7  voluntarily participate any longer.

8    Q.   If you are subpoenaed, would it be your intention to

9  prepare for that testimony?

10   A.   Yes.

11   Q.   So even though you don't have to appear voluntarily,

12  it is your intention, if you are subpoenaed, to try to bring

13  yourself up to speed to testify if you are able to do so?

14   A.   Yes, I would do that.

15   Q.   With respect to your -- well, let me just say I

16  think we have established -- pardon me.

17         With respect to your engagement of counsel on your

18  own behalf, in other words, with respect to hiring me, what

19  was the purpose of hiring me?

20   A.   I felt it important to have an attorney representing

21  me whose sole interest was my best interest, and that's why I

22  sought out legal counsel.

23   Q.   Did that effort include somehow or another

24  extracting you from this protracted litigation?

25   A.   That was the purpose of retaining you, is to work to

Page 27

1  extract me from this litigation, to close out my involvement.

2      Q.   And have you communicated unequivocally to 3M that,

3  absent a subpoena, you are not going to appear?

4      A.   I have stated that numerous times to a number of the

5  3M attorneys -- of the Kirkland attorneys involved in this

6  litigation.

7           MR. BATES:  Thank you.

8           Your Honor, I appreciate the opportunity to ask

9      those questions.

10          THE COURT:  Okay.  Thank you, Mr. Bates.

11          Now, Ms. Hoekstra, were you going to cross-examine

12      Mr. Berger or was someone else?

13          MS. HOEKSTRA:  It's going to be me, Your Honor.

14          THE COURT:  Okay.  Why don't you come up to the

15      podium.

16                     CROSS-EXAMINATION

17  BY MS. HOEKSTRA:

18      Q.   Mr. Berger, can you see me or hear me?

19      A.   I can hear you.

20          THE COURT:  Pull that microphone up right to

21      your -- right.  Yes, there.

22  BY MS. HOEKSTRA:

23      Q.   I'm in the blue in the middle of the small screen.

24  Apologies, there's a -- it's a larger space here.

25      A.   Okay.  I have the courtroom on my screen now.

Page 28

1    Q.   Thank you, sir.

2    A.   Could it be -- just to be able to see you more

3  clearly -- well, it's a split screen with you on one side,

4  but I can see you and hear you.  Go ahead.

5    Q.   Wonderful.  Thank you, sir.

6         Mr. Berger, is it your understanding that Mr. Bates

7  is the only attorney representing you today?

8    A.   Yes.

9    Q.   Okay.  You indicated that you spent over 800 hours

10 of time on this litigation so far.  Has 3M paid you for that

11 time?

12   A.   I have been paid for my preparation work.  I have

13 not received any payment for the time in testimony or the

14 numerous depositions.

15   Q.   How much of those 800 hours would you say went into

16 prep for your testimony?

17   A.   The majority of that.  There was -- I have been

18 involved in nine trials, so that's nine days of work or more

19 in court, and then I was deposed seven times over six days.

20 So I'm thinking we're looking at about three weeks of that

21 time, 120 hours was uncompensated time that I was involved in

22 depositions or litigation.

23   Q.   So is it safe to say that 3M has paid you for over

24 600 hours of your time in relation to this litigation?

25   A.   Approximately that amount, yes.

Judge Gary Jones
December 29, 2021

Page 29

1    Q.   You had indicated earlier that in October you had

2  terminated your consulting agreement through Volt with 3M; is

3  that correct?

4    A.   Yes.

5    Q.   Do you currently work for Volt at this time?

6    A.   When you're -- I was a Volt employee.  They keep you

7  in their system, I think, for another three months after

8  termination for that type of contract work in case there was

9  something else that would come up, but that isn't going to

10  affect me at all.  I have no interest in working for Volt or

11  anyone else as a contract worker at this time.

12    Q.   So it's your understanding that very shortly, when

13  that three months expires in January, you'll stop working for

14  Volt as well, correct?

15    A.   Well, I have a -- I mean, I get no paychecks.  I

16  just get occasional communications.  I mean, I'm not working

17  for them.  I'm on their books at this time.

18    Q.   Okay.  Do you have a business relationship with

19  Kirkland & Ellis as an expert for 3M?

20    A.   I have a consulting agreement with Kirkland & Ellis

21  for 3M that was established in the summer of 2019 which deals

22  with my involvement in this litigation.

23    Q.   And that agreement is still in place, correct?  That

24  hasn't been terminated?

25    A.   Correct.

Judge Gary Jones
December 29, 2021

1     Q.   Did you also have an agreement with Kirkland & Ellis

2  for your representation in your capacity as a corporate

3  representative in this litigation?

4     A.   Yes.

5     Q.   And that relationship has also not been terminated,

6  correct?

7     A.   Correct.

8     Q.   Was it your understanding, when you entered into

9  that relationship with Kirkland & Ellis, that they were

10  acting as an agent of 3M?

11     A.   Yes.  And I'd like to add, on that original

12  agreement, although it's not terminated, it states that it

13  can be terminated at any time by either party.  There's

14  nothing in that that compels me to do anything.

15     Q.   And I appreciate that, but at this point today, you

16  haven't terminated either of those agreements; is that

17  correct?

18     A.   Correct.

19     Q.   And neither has Kirkland & Ellis?

20     A.   Correct.

21     Q.   Mr. Berger, who prepared you for your testimony here

22  today?

23     A.   I met with Philip Bates, Sierra Elizabeth, and a few

24  other Kirkland attorneys.

25          MS. HOEKSTRA:  And, again, Ms. Elizabeth, I'm not

Judge Gary Jones
December 29, 2021

Page 31

1        planning on getting into the substance of the discussion.

2        I just wanted to know who was involved.

3              So, I'm sorry, faces were popping back up on the

4        screen, so I wanted to make sure of that.  Thank you.

5   BY MS. HOEKSTRA:

6        Q.   Was Mr. Bates involved in your preparation for your

7   testimony in the Adkins case in September?

8        A.   No.

9        Q.   You had retained him at that point in time; is that

10  correct?

11       A.   Yes.

12       Q.   Was Mr. Bates involved in the preparation for your

13  testimony in the Blum trial in October?

14       A.   No.

15       Q.   Has Mr. Bates been involved in your preparation for

16  testimony in either -- or, I'm sorry, in any of the November

17  or December trials?

18       A.   No.

19       Q.   Was anyone other than attorneys for Kirkland & Ellis

20  involved in your preparation for your testimony in the trials

21  this fall, either the September, October, November or

22  December trials?

23       A.   No.

24       Q.   In addition to your discussions with attorneys at

25  Kirkland & Ellis for preparation for your testimony, have you

Judge Gary Jones
December 29, 2021

Page 32

1  spoken with any other 3M experts in preparation for that

2  testimony?

3      A.   No.

4      Q.   I understand that there were a series of e-mails

5  that are still being reviewed for potential privilege by

6  Kirkland in terms of your discussions over the past few

7  months since you retained Mr. Bates.  Is that your

8  understanding, sir?

9      A.   Yes.

10     Q.   Do you have any idea of how many of those e-mail

11 communications would have included transcripts of testimony

12 from trials that you were testifying in?

13     A.   Some of them did.  I don't know -- couldn't give you

14 a number.

15     Q.   In the recent trials, the September, October,

16 November, December trials, were you testifying as an expert

17 for 3M or as a fact witness?

18     A.   In November and December I was a fact witness.  I'm

19 not -- don't exactly recall in September or October.  At one

20 point I had been a hybrid expert, and you'll have to excuse

21 me.  I'm not exactly sure when that designation changed with

22 respect to the courtroom, so I'm -- I don't recall precisely

23 for September and October.

24     Q.   Okay.  Was Baker the first time that you were

25 subpoenaed to testify in a 3M trial?

Judge Gary Jones
December 29, 2021

Page 33

1     A.    No.

2     Q.    Were you subpoenaed to testify in the April 2021

3  trial?

4     A.    Yes.

5     Q.    Did you testify for both parties in that trial?

6     A.    I'm not sure what you mean by that.  I was examined

7  by attorneys on both sides.

8     Q.    You were compensated for your time in preparing for

9  your testimony in the Baker trial; is that correct?

10    A.    Yes.

11    Q.    You were initially subpoenaed for testimony in the

12 Camarillo trial by plaintiffs; is that correct?

13    A.    Yes.

14    Q.    And you hired or you asked Mr. Bates to help quash

15 the subpoena for that testimony; is that correct?

16    A.    Yes.  He was, by that time, he was representing me.

17    Q.    And it's your understanding that plaintiffs pulled

18 down that subpoena for the Camarillo trial; is that correct?

19    A.    I'm going to have to back up a minute on the

20 question that you just asked.

21    Q.    Okay.

22    A.    My recollection is that, in the Camarillo trial, I

23 don't recall having Mr. Bates involved in trying to quash

24 that.  What I recall is that I learned through the Kirkland

25 attorneys that the plaintiffs had decided not to call me.

Judge Gary Jones
December 29, 2021

Page 34

1  The background of that --

2      Q.   Understood, and, again, Mr. Berger --

3           MS. ELIZABETH:  Mr. Berger, just a reminder not to

4      disclose attorney-client communications or privileged

5      communications, but otherwise you can answer

6      Ms. Hoekstra's questions.

7  BY MS. HOEKSTRA:

8      Q.   Is there a reason you didn't ask Mr. Bates to fight

9  against the 3M subpoena for your testimony in the Camarillo

10 trial?

11     A.   I was under the impression that there was a high

12 likelihood that my testimony would be videotaped and that

13 that could be used going forward in the trial so that I would

14 no longer have to be present.

15          And I believed that was likely to happen until

16 shortly before the trial took place.

17          MS. HOEKSTRA:  Mr. Berger, I'd like to --

18          And my apologies for a technical issue for a second.

19     I'd like to pull up the production we received last

20     night and ask Mr. Berger about a couple of those

21     documents.

22          THE COURT:  Okay.

23          MS. HOEKSTRA:  Mr. Goldstein is logged into the Zoom

24     and should be able to share that screen.

25          THE COURT:  Okay, good.

Page 35

1  BY MS. HOEKSTRA:

2      Q.   And, again, Mr. Berger, I just want to make sure you

3  can see the document that's on the screen in front of you.

4      A.   I can.

5      Q.   And the first page of this document that's up on the

6  screen is a communication we received from Mr. Bates last

7  evening.  It attaches 29 pages of production from you.

8      A.   Yes.

9      Q.   And you participated in collecting and providing

10 those materials to Mr. Bates for production; is that correct?

11     A.   I provided materials to Mr. Bates.  I haven't had a

12 chance to review that document.  I don't know all that was

13 sent with that document, but I can tell you that I had

14 provided documents to him that he requested from me.

15     Q.   Understood.  Did you provide documents over the past

16 couple of days to anyone else in relation to the subpoena

17 other than Mr. Bates?

18     A.   No.

19         MS. HOEKSTRA:  Maury, would you mind going to, I

20     think, the second page.

21 BY MS. HOEKSTRA:

22     Q.   And, Mr. Berger, do you see a Seller Personnel

23 Agreement on the page in front of you?

24     A.   Yes.

25     Q.   And this is your contract with Volt; is that

Judge Gary Jones
December 29, 2021

Page 36

1   correct?

2      A.   Correct.

3           MS. HOEKSTRA:   Okay.  And if you'd move to page 7 of

4      the PDF.

5   BY MS. HOEKSTRA:

6      Q.   And, again, this is the agreement that was entered

7   into in September of 2018.  Do you see that there?

8      A.   Yes.

9      Q.   Okay.  And I think if we go to the next two pages,

10  there's a slightly different version of the hourly exempt.

11          This is a continuation of your agreement with Volt;

12  is that correct?

13     A.   Right.  That was -- there were two documents that I

14  had provided to Philip that appear to me to cover the

15  agreement.

16     Q.   Okay.  And when you look at this page of the

17  document, it explains what your hourly rate is; is that

18  right?

19     A.   Yes.

20     Q.   And your hourly rate with Volt was 125 an hour; is

21  that right?

22     A.   Yes.

23     Q.   And at this time it indicated that you would be

24  employed as a senior technical analyst reporting to Jeff

25  Hamer.  Do you see that in the middle of the screen?

Judge Gary Jones
December 29, 2021

Page 37

1    A.   Yes.

2         MS. HOEKSTRA:  And, Your Honor, I'd like to mark the

3    full 30 pages as an exhibit to today's examination once

4    we're complete rather than breaking these out

5    individually.

6         THE COURT:  Yes.  We'll mark that as Plaintiffs'

7    Exhibit 1.

8         MS. HOEKSTRA:  And I will get you a full copy of it

9    when I'm done since I'm limited on the paper that we

10   brought with us today.

11        THE COURT:  Okay.

12        (Plaintiffs' Exhibit 1 was identified and received

13   into evidence.)

14        MS. HOEKSTRA:  And, Maury, if you wouldn't mind

15   going to the -- I think it's page 10 of the document.

16 BY MS. HOEKSTRA:

17   Q.   And, Mr. Berger, Jeffrey Hamer was the same

18 individual that you worked for before your retirement from

19 3M; is that correct?

20   A.   I missed the words before Jeffrey Hamer.

21   Q.   Sorry.  Was he also the same individual you reported

22 to before your retirement from 3M?

23   A.   Yes.

24   Q.   Mr. Berger, do you see on the screen in front of you

25 an August 5, 2019, letter from Kirkland & Ellis?

Judge Gary Jones
December 29, 2021

Page 38

1      A.   Yes.

2      Q.   It's directed towards Berger Acoustical Consulting,

3  LLC.  Do you see that there?

4      A.   Yes.

5      Q.   Or I think it's called BAC or BAC at various points

6  in the letter.

7      A.   Correct.

8      Q.   It indicates that you're the president of Berger

9  Acoustical Consulting, LLC.  Were there any other members of

10  Berger Acoustical Consulting, LLC?

11      A.   No, just me.

12      Q.   Okay.  Then it goes onto say that Kirkland had

13  agreed to pay BAC's customary fee of 400 an hour plus

14  expenses.  Do you see that there?

15      A.   Yes.

16      Q.   And this agreement is in relation to your retention

17  as a consulting expert; is that correct?

18      A.   It was, as it states below, to prepare studies or

19  reports, participate in meetings, review materials, and

20  undertake other tasks for the firm as counsel to 3M.

21      Q.   Okay.  And, again, I know that this agreement

22  between you and Kirkland is still in place; is that correct?

23      A.   Correct.

24      Q.   If you look at page -- it's page 13 of the PDF,

25  Maury.

Judge Gary Jones
December 29, 2021

Page 39

1            It's your countersignature there that you accepted

2    this agreement on August 5, 2019.  Is that your signature,

3    Mr. Berger?

4        A.    Yes.

5        Q.    So you've had a business relationship with

6    Kirkland & Ellis as an agent of 3M since 2019?

7        A.    Correct.

8            MS. HOEKSTRA:  Okay.  If we wouldn't mind going one

9        more page down, Maury.

10   BY MS. HOEKSTRA:

11       Q.    On the screen in front of you, Mr. Berger, there

12   should be an August -- or, sorry, October 31, 2019, letter

13   from Kirkland & Ellis to yourself.  Do you see that there?

14       A.    Yes.

15       Q.    In the second paragraph there it indicates that you

16   have been subpoenaed to give testimony at a deposition and to

17   provide documents in this case.

18            Do you recall this communication with you and

19   Kirkland & Ellis in October of 2019?

20       A.    Yes.

21       Q.    Do you know if this communication was in relation to

22   your personal deposition or your status as a 30(b)(6)

23   corporate representative for 3M?

24       A.    I'm sure, I believe it was for my depositions in

25   general.

Judge Gary Jones
December 29, 2021

Page 40

1      Q.   Okay.  And when you say depositions, that's your

2   personal as well as the 30(b)(6) testimony?

3      A.   Yes.

4      Q.   When you were deposed as an expert as retained by 3M

5   in this litigation, Kirkland & Ellis also represented you in

6   that deposition; is that right?

7      A.   Yes.

8      Q.   And if you look a little bit lower on that

9   paragraph, it says:  "3M has agreed to provide you with legal

10  representation for the limited purposes of preparing for and

11  giving a deposition and producing documents in this

12  litigation."

13          Do you see that there?

14     A.   Yes.

15     Q.   Did you pay anything for that representation?

16     A.   No.

17     Q.   Okay.  If we look at the bottom paragraph of the

18  page here, it starts out:  "Kirkland & Ellis acknowledges,

19  and you agree, that there is a common interest as between you

20  and 3M for purposes of responding to the subpoena and sitting

21  for deposition."

22          Do you see that there?

23     A.   Yes.

24     Q.   Is this agreement from October 31st of 2019 still in

25  place between you and Kirkland & Ellis?

Judge Gary Jones
December 29, 2021

Page 41

 1     A.   Yes.

 2     Q.   And Kirkland & Ellis helped prepare you for your

 3 testimony here today?

 4     A.   Yes.

 5     Q.   And they have helped prepare you for all of your

 6 testimony in the trials, the nine trials you have testified

 7 for to this point?

 8     A.   Yes.

 9     Q.   At this point, that common interest between you and

10 3M still exists; is that correct?

11     A.   The general common interest does.  The area where

12 the interests have diverged is that I no longer wish to be

13 involved in this litigation.

14          MS. HOEKSTRA:  Okay.  If we look at the next page,

15     Maury, of the document.

16 BY MS. HOEKSTRA:

17     Q.   There's a section of this letter that indicates you

18 have a right to obtain separate counsel to review

19 independently the terms of this retention before you agree.

20          Did you hire independent counsel in 2019 to review

21 this for you?

22     A.   Yes, I did.

23     Q.   And could you provide the name of that independent

24 counsel?

25     A.   Ed Harris.

1    Q.   And was Mr. Harris retained to represent you at

2  other points in the 3M litigation?

3    A.   No.  Just to help me look over that document and

4  give me some guidance.

5    Q.   Did he review any other documents between yourself

6  and 3M in relation to this litigation?

7    A.   The original agreement.

8    Q.   And I'm sorry, sir.  When you said "the original

9  agreement," do you mean the August 2019 agreement?

10    A.   Yes.

11    Q.   Okay.  Did you also ask Mr. Harris to review your

12  employment agreement with Volt?

13    A.   No.

14    Q.   Has Mr. Harris ever prepared you for your testimony

15  in this litigation?

16    A.   No.  My only communications with him about this was

17  to look over these two documents.  This was a type of project

18  I had never been involved in.  I wanted to have a better

19  understanding of what I was signing up for at that time.

20        MS. HOEKSTRA:  Maury, would you go to the next page

21    of this document.

22  BY MS. HOEKSTRA:

23    Q.   And, again, Mr. Berger, this is your signature,

24  correct?

25    A.   Yes.

Judge Gary Jones
December 29, 2021

Page 43

1    Q.   On 11/5/2019?

2    A.   Correct.

3    Q.   And to the best of your understanding, this

4  agreement for representation between you and Kirkland & Ellis

5  as an agent of 3M still continues; is that right?

6    A.   Correct.

7    Q.   Mr. Berger, in terms of preparation, do you have any

8  idea of how many hours you've billed Kirkland & Ellis since

9  October 1st of 2021?

10    A.   Since October 2021?

11    Q.   Yes, sir, in the past two months.

12    A.   I haven't submitted a bill for that yet.

13    Q.   Okay.  And I believe I touched on this earlier, but

14  have you spoken with anyone other than Kirkland's attorneys,

15  either prior to trial or during trial, in preparation for

16  your testimony in the September, October, November, or

17  December trials?

18    A.   No.

19    Q.   Did you have any discussions with anyone at

20  Kirkland & Ellis in relation to termination of your Volt

21  consulting agreement?

22    A.   Yes.

23    Q.   Would you mind telling me, without the substance of

24  the conversation, with whom?

25    A.   Sierra Elizabeth.

Judge Gary Jones
December 29, 2021

Page 44

1     Q.    And when did that discussion occur?

2     A.    In and about October.

3     Q.    Did you have a discussion with anyone at

4  Kirkland & Ellis what retaining Mr. Bates as your attorney

5  would have on your relationship with Kirkland & Ellis through

6  the BAC, LLC, your consulting agreement?

7     A.    So if I understand your question, you're asking did

8  I discuss with someone at Kirkland whether retaining

9  Mr. Bates would affect my relationship or my contractual

10 involvement with Kirkland & Ellis?

11    Q.    Yes, sir.

12    A.    No, I didn't.

13    Q.    Did you have any discussions with your attorneys

14 regarding privilege of communications with Kirkland & Ellis

15 following your retention of Mr. Bates?

16         MR. BATES:  I object to the extent it is asking for

17    the substance of communications with counsel.

18         MS. HOEKSTRA:  Just asking if he had any

19    communications, conversations.

20         THE COURT:  Overruled.

21    A.    Could you repeat or rephrase the question?  I am not

22 understanding exactly what you're asking.

23 BY MS. HOEKSTRA:

24    Q.    Understood, sir.

25         You retained Mr. Bates in August of 2021; is that

Page 45

1  correct?

2      A.  Yes.

3      Q.  Did you have any conversations with Mr. Bates or

4  with anyone at Kirkland about what your retention of

5  Mr. Bates as your personal attorney would impact your

6  privileged communications with Kirkland & Ellis under the

7  BAC, LLC, consulting agreement?

8      A.  No.

9      Q.  Mr. Berger, whose idea was it that you first get

10 independent counsel through hiring Mr. Bates?

11     A.  That was contemplated in the, I believe, in this

12 agreement that you have on the screen, at which point I

13 reached an agreement that, if that would have to happen, that

14 3M would cover those costs.

15     Q.  Did you select Mr. Bates as your personal attorney

16 yourself?

17     A.  Yes.

18     Q.  And how did you come to first contact Mr. Bates for

19 representation?

20     A.  Mr. Beall had suggested his name.

21     Q.  Okay.  And is it your understanding that 3M is

22 paying for Mr. Bates' services as provided to you?

23     A.  Yes.

24     Q.  Have you seen any invoices for those services?

25     A.  Have I submitted invoices for Mr. Bates' services?

Judge Gary Jones
December 29, 2021

Page 46

1    Q.   Have you -- no, I'm sorry.  Have you seen any

2  invoices from Mr. Bates?  Have any been sent to you?

3    A.   No.

4    Q.   Do you know if anyone has been invoiced to date for

5  Mr. Bates's representation?

6    A.   Yes.

7    Q.   And do you know who that is?

8    A.   3M.

9    Q.   Do you know anyone specific at 3M?

10    A.   His contact at 3M has been Eric Rucker.

11    Q.   And it's your understanding that your invoices from

12  Mr. Bates are being submitted to 3M and not to Kirkland &

13  Ellis; is that correct?

14    A.   Correct.

15    Q.   When you retired from 3M, were you offered any joint

16  defense agreements in relation to your prior employment with

17  the company?

18    A.   In August 2018 when I retired is what you are

19  referring to?

20    Q.   Yes, sir.

21    A.   No, I was not.

22    Q.   Other than the 2019 consulting agreement and the

23  2019 representation agreements, have you ever been offered

24  any other legal representation by 3M following your

25  retirement?

Judge Gary Jones
December 29, 2021

Page 47

1      A.    No.

2      Q.    You testified by Zoom several times starting with

3  the Baker trial in June; is that correct?

4      A.    Yes.

5      Q.    Was Mr. Bates or anyone from his office present

6  either on the Zoom or with you in Indianapolis when that

7  testimony occurred?

8      A.    No.

9      Q.    Was anyone from Kirkland & Ellis present either on

10  the Zoom or in Indianapolis with you when that testimony

11  occurred?

12      A.    Yes.

13      Q.    I'd like to ask you a few additional questions about

14  the Camarillo testimony.  Initially you were subpoenaed by

15  plaintiff to testify in that trial.  Is that your

16  understanding?

17      A.    Yes.

18      Q.    And I apologize, Mr. Berger.  I forgot to finish

19  going through the last several pages of the document, which

20  I'd like to do before I switch topics.  Apologies for that.

21            On the screen a moment ago we had the August 16,

22  2021, letter from Mr. Bates to you.  Do you see that there?

23      A.    What did you say this was?

24            MS. HOEKSTRA:  Sorry, go down to the Bates letter.

25            There we go.

Page 48

1  BY MS. HOEKSTRA:

2      Q.   This is your August 16, 2021, retention letter with

3  Mr. Bates.  Do you see that there?

4      A.   Yes.

5      Q.   Did anyone other than yourself review this retention

6  letter before you signed it and returned it to Mr. Bates?

7      A.   No.

8      Q.   Is it your understanding that the work that you

9  hired Mr. Bates for was in relation to your ongoing role as a

10 subpoenaed witness in the above case?

11          If you look under No. 1, Work.

12     A.   Yes.  I hired him, as I said, to try to extricate me

13 from these ongoing proceedings.

14     Q.   Did you have any discussion with him about the time

15 frame for doing that?

16     A.   No.

17     Q.   In the paragraph here, it says:  "Between 6 months

18 to 9 years."  Do you see that there?

19     A.   Yes.

20     Q.   And further down if you look under No. 3, Fees, it

21 says:  "In connection with this representation, we understand

22 that 3M Company will be responsible for the payment of our

23 fees."

24          Do you see that there?

25     A.   Yes.

Judge Gary Jones
December 29, 2021

Page 49

1           MS. HOEKSTRA:  Okay.  Maury, if you go down like

2      seven pages, you are going to come to Mr. Berger's

3      signature.

4   BY MS. HOEKSTRA:

5      Q.   And, Mr. Berger, you signed this electronically on

6   August 16, 2021.  Do you see that there?

7      A.   Yeah.  Just to be clear, I'm not eminently familiar

8   with that document.  It looked like we just scrolled through

9   about three or four documents, so I'm not sure what --

10     Q.   Oh, I'm sorry.  In the production we received,

11  Mr. Berger, there was a four-page unsigned version and then a

12  four-page signed version of the two identical documents.

13     A.   You're moving away from the microphone at times,

14  please.

15     Q.   I'm sorry, I think I covered it up with the papers

16  that I have over here.  Let me move the microphone.

17          Is that better, Mr. Berger?

18     A.   Okay.  So what you're telling me is we scrolled

19  through eight pages, four pages were the original document

20  without a signature and then the next four pages are the same

21  document but with a signature added.

22     Q.   Yes, sir.

23     A.   Well, I'll have to trust you on that.  That looks

24  reasonable, but without reviewing it in front of me, I can't

25  attest to that.

Judge Gary Jones
December 29, 2021

Page 50

1     Q.   Understood.  And I think my question was, is this

2  your electronic signature on this page for August 16, 2021?

3     A.   Yes.

4     Q.   And is that your understanding, that that's when

5  your representation by Mr. Bates began?

6     A.   Yes.

7          MS. HOEKSTRA:  And if you can go down to the next

8     page, Maury.

9  BY MS. HOEKSTRA:

10    Q.   Mr. Berger, have you seen this communication

11  previously?

12    A.   I believe I have seen a copy of that.

13    Q.   Okay.  And this is a communication by e-mail from

14  Mr. Bates to Eric Rucker.  Do you see that?

15    A.   Yes.

16    Q.   And, again, this is with respect to representation

17  of Mr. Elliott Berger in connection with the ongoing 3M

18  Earplug MDL currently pending in the Northern District of

19  Florida.  Do you see that there?

20    A.   Yes.

21    Q.   And it indicates that there's an enclosure, and --

22  Mr. Goldstein, if you'd scroll down -- it appears as if it's

23  the unexecuted version of your retention letter from

24  August 16th of 2021.

25          Mr. Berger, you were copied on this communication,

Judge Gary Jones
December 29, 2021

Page 51

1   correct?

2       A.   Yes, I was.

3       Q.   Okay.  And it was your understanding from the date

4   that you retained Mr. Bates that he would be paid by 3M; is

5   that correct?

6       A.   Yes.

7           MS. HOEKSTRA:  Okay.  If you can go down to the last

8       page of the document.

9   BY MS. HOEKSTRA:

10      Q.   And, Mr. Berger, I apologize in advance for this

11  document.  It's how it was produced to all of us.

12          If there's any way we can scroll or Zoom in a bit, I

13  don't know.

14          Here we go.

15          Mr. Berger --

16      A.   I can read it.  I'm able to read that.

17      Q.   Okay.  And you're familiar with this e-mail in front

18  of you, which is an October -- sorry, October 11, 2021,

19  e-mail to Chelsea Zimmerman.  Do you see that there?

20      A.   Yes.

21      Q.   And is this the written termination of your Volt

22  agreement?

23      A.   Yes.

24          THE COURT:  What's the date on that?

25          MS. HOEKSTRA:  October 11, 2021.

Judge Gary Jones
December 29, 2021

Page 52

1          And thank you for bearing with me, Mr. Berger.  We
2     had a few documents that came in this morning after the
3     hearing started that I wanted to ask you a quick question
4     about.
5          Can you put up the "Sooner rather than later" one?
6  BY MS. HOEKSTRA:
7     Q.   Mr. Berger, are you familiar with this
8  communication?
9     A.   Let me read it.
10         Yes.
11    Q.   And, again, the date on this e-mail is November 11,
12 2021.  Do you see that there?
13    A.   It looks like November 13th.
14    Q.   I'm sorry, I don't have a paper copy, so I'm trying
15 to squint across the room at the electronic copy here.
16         Mr. Berger, when did you testify in the Camarillo
17 trial?
18    A.   I would have to check my calendar.  It would be in
19 the second week of November.
20    Q.   Okay.  If I represented to you that you testified on
21 November 10th, does that sound familiar?
22    A.   Yes.  I believe that that sounds reasonable.  If you
23 want, I can check my calendar, or we can go with that.
24    Q.   Following your testimony in these trials, you would
25 occasionally have follow-up conversations with counsel at

Judge Gary Jones
December 29, 2021

Page 53

1   Kirkland & Ellis; is that correct?

2      A.   Yes.

3      Q.   Following your testimony in the Camarillo trial, did

4   you have a recap conversation about your testimony with

5   Kirkland & Ellis?

6      A.   Yes.

7      Q.   And, again, I'm showing you another document that is

8   titled Camarillo Follow-Up Call.  It appears as if it was a

9   calendar accepted on Friday, November 12th.

10     A.   Yes.

11     Q.   Did you have a similar conversation with Kirkland

12  following your testimony in the Finley trial in December of

13  2021?

14     A.   Let's see, Finley.  No.

15     Q.   Okay.  And apologies, Mr. Berger.  I think you

16  testified on December 6th in Finley, December 8th in Montero,

17  and December 9th in Stelling.

18     A.   That sounds correct.

19     Q.   Did you have a recap call or a follow-up with

20  Kirkland & Ellis counsel following any of that testimony?

21     A.   No.

22     Q.   Are you planning on having a recap conversation

23  relating to your December testimony with Kirkland & Ellis?

24     A.   Am I planning on having a recap conversation --

25  could you repeat that, please?

Judge Gary Jones
December 29, 2021

1    Q.   With anyone at Kirkland & Ellis regarding your

2  December testimony.

3    A.   My testimony in the three trials in December is what

4  you're referring to?

5         I'm asking you, just to be clear, you are referring

6  to the three trials in early December?

7    Q.   Correct.

8    A.   I have no plan at this time.

9    Q.   Okay.  Earlier you had indicated that you spent over

10  800 hours in relation to the litigation in the past few

11  years, and when we discussed it, the majority of that time

12  was spent in preparation for your testimony; is that correct?

13    A.   Yes.

14    Q.   And that preparation time is spent with Kirkland &

15  Ellis attorneys; is that right?

16    A.   Some of it is with them.  Some of it is my

17  independent work.

18    Q.   Okay.  Is any of that preparation time spent with

19  Mr. Bates?

20    A.   No.

21    Q.   In each of the nine trials that you have

22  testified at to this point, you've been examined both by

23  Kirkland & Ellis counsel as well as counsel for plaintiffs;

24  is that correct?

25    A.   Yes.

Page 55

1    Q.   Would you say it's fairly evenly split between the

2  amount of time you've been examined by plaintiffs versus

3  Kirkland & Ellis attorneys while you have been on the stand?

4    A.   Yes.  I haven't tracked it, but that would -- in

5  that range.

6    Q.   Okay.  Were there any discussions in relation to

7  your consulting agreement --

8    A.   May I ask --

9    Q.   Yes, sir.

10    A.   Excuse me.  If you're complete on those documents,

11  could we take them down so I could see you better?

12    Q.   Yes, sir.

13    A.   Thank you.

14    Q.   When you indicated to 3M that your preference would

15  be to not testify in future trials either under subpoena from

16  plaintiff or from Kirkland & Ellis, was there any discussion

17  of terminating your consulting agreement at that time?

18    A.   No.

19    Q.   Was there any discussion of terminating your

20  representation agreement at that time?

21    A.   No.

22    Q.   Mr. Berger, if 3M is paying for your personal legal

23  representation and they are representing you when you

24  testify, what is preventing you from agreeing to testify in

25  future trials?

Page 56

1    A.   I'm not interested in being involved with this

2  process anymore.  I want to go on about my life.

3           I had originally become involved, as I said, because

4  I wanted to be able to tell what I knew about the story of

5  the Combat Arms Earplug, and I have told that extensively in

6  seven depositions and nine trials.

7           I was under the impression that I would be in two or

8  three trials at most, and then that testimony would be able

9  to be recorded, either the transcripts used or the video

10 used.

11          I'm not, in my mind, critical to these cases.  They

12 really revolve around the individuals, the plaintiffs, and

13 the details of their claims.  I get asked the same questions

14 every single time.  There's small variations.  There's a

15 universe of questions and each attorney picks some different

16 ones they wish to focus on, but I have been asked and asked

17 and asked again, and I would say with near certainty that, if

18 I'm in the Sloan/Wayman case, the questions I'll be asked are

19 ones that I have been asked multiple times before.  So it's

20 -- I'm not bringing anything to the table, and it's

21 interfering tremendously with my life.  I want to get out of

22 this.

23    Q.   Mr. Berger, do you understand the difference between

24 testifying in the plaintiffs' case versus testifying in the

25 defendants' case?

Judge Gary Jones
December 29, 2021

Page 57

1    A.    I'm not an attorney, so I probably -- I can't tell

2  you the legal technicalities of that.  I know the difference

3  of how the process works, who examines me first, who examines

4  me second.

5    Q.    Prior to the Camarillo trial in November, would it

6  surprise you to learn that you testified in defendants' case

7  in four of the prior trials without a subpoena?

8    A.    No.

9    Q.    And it's your understanding that since the --

10    A.    Excuse me, let me -- let me correct that.

11        In April and May, I was coming as a defendants'

12  witness in April, and to my surprise, when I showed up in

13  Pensacola that evening, I was handed a subpoena from the

14  plaintiffs.  So I was subpoenaed for that April case,

15  although I had planned on testifying in it voluntarily.

16        Likewise, I planned voluntarily to testify in the

17  May case, but, again, I was handed a subpoena by the

18  plaintiffs.

19        So I was a defense witness, but I had been

20  subpoenaed for both of those trials.  The only ones that I

21  recall not being subpoenaed for were September and October of

22  this year, and again I participated in them because it was my

23  hope that that testimony was going to be videoed or otherwise

24  useful in the trials going forward.

25        I had multiple conversations every single time with

Judge Gary Jones
December 29, 2021

Page 58

1  the Kirkland attorneys.  "So this is it, right?  This is my

2  last time."

3          And, you know, I could never be assured of that, but

4  that was always what they understood and what was my

5  intention.

6     Q.   And, again, when you are referring to the Kirkland

7  attorneys, those are the attorneys with which, as agents of

8  3M, you have a relationship under both your consulting

9  agreement and your representation agreement?

10    A.   Correct.

11         MS. HOEKSTRA:  Can I just consult with Mr. Goldstein

12    a second?

13         THE COURT:  Yes.  Take your time.

14 BY MS. HOEKSTRA:

15    Q.   Mr. Berger, a couple of quick questions.  We're

16 going to look at one more document.

17         My apologies.  I was walking towards the mike, so

18 you might not have heard that.

19         Mr. Berger, is there anyone in your home with you

20 right now when you're testifying?

21    A.   My wife may have gotten back from a walk, but I'm in

22 my office with the doors closed.

23    Q.   Okay.  Do you have any papers in front of you right

24 now in preparation for your testimony today?

25    A.   No.

Judge Gary Jones
December 29, 2021

Page 59

1    Q.   Do you have any access to your phone or your e-mail

2  open in front of you at the moment?

3    A.   My phone is here, but it's -- I'm not using it.

4    Q.   Okay.  No communications with anyone other than

5  those of us talking to you by the Zoom today?

6    A.   I'm trying to pay a hundred percent attention to you

7  and your questions.

8    Q.   Thank you.

9         In your testimony in these trials to this point,

10  have you been paid a witness fee?

11   A.   No.

12   Q.   Can you --

13   A.   I was -- I was paid $40 or $60, or whatever check

14  that accompanied the subpoenas, and I did cash those.

15   Q.   Okay.  I just wanted to pull up this document, and

16  we'll include it in the exhibit for today.

17        Mr. Berger, this is a December 10, 2021, e-mail.

18   A.   Yes.

19   Q.   I believe this is in relation to the subpoena for

20  Mr. Sloan and Mr. Wayman's trial in January.  Do you see that

21  there?

22   A.   Yeah.  Yes.

23   Q.   So you were asking questions of both Mr. Bates and

24  Ms. Elizabeth, as well as, I believe, Mr. Rucker -- my

25  apologies, I'm squinting across the room at the document --

Page 60

 1  about your testimony in the upcoming January trial; is that

 2  correct?

 3      A.   About whether I would -- how that was going to

 4  impact on my plans, yes.

 5      Q.   Correct.

 6           At any point in this e-mail, did you indicate that

 7  you did not intend to testify or comply with the subpoena?

 8      A.   I had never indicated that I wouldn't comply with

 9  the subpoena since I suspect I would be -- the Court would

10  follow up on that.  I, you know, I will obey the law.

11           I do not want 3M to subpoena me.  I'm not going to

12  voluntarily appear.  If subpoenas are served on me by either

13  3M or the plaintiffs, I will have to comply.

14           MS. HOEKSTRA:  No further questions.

15           THE COURT:  Okay.  Thank you, Ms. Hoekstra.

16           Ms. Elizabeth, did you have any follow-up

17      questions?

18           MS. ELIZABETH:  I do have a few, Your Honor.  Thank

19      you.

20                      REDIRECT EXAMINATION

21  BY MS. ELIZABETH:

22      Q.   Mr. Berger, you were asked some questions about

23  Kirkland lawyers being present during your testimony that

24  took place live by remote means in Indianapolis.  Do you

25  remember that?

Judge Gary Jones
December 29, 2021

Page 61

1    A.   Yes.

2    Q.   Where exactly did your remote testimony take place

3  in Indianapolis?

4    A.   In regard to the Bates case or in general?

5    Q.   I'm sorry, I didn't hear you.

6    A.   Are you asking about -- because it was in different

7  locations for different trials.  Are we talking about just

8  the Bates case?

9    Q.   Understood.  I'm talking about the cases that just

10 took place, Finley, Montero, and Stelling.

11   A.   That was in the JW Marriott, Room 301.

12   Q.   Okay.  And who was present, if anyone, in the room

13 with you while you were testifying in those trials?

14   A.   Cole Carter from your firm, and I don't recall the

15 names.  There was at times either one or two representatives

16 from the plaintiffs' firm, and the videographer.

17   Q.   Thank you.

18        There was a document on the screen earlier.  I'm

19 hoping we could pull it back up.  It has a subject of "Thank

20 you."

21        MS. HOEKSTRA:  Hold on one second.

22        MS. ELIZABETH:  I don't know if there's a -- thank

23    you.

24        THE COURT:  Can we pull that document up?

25        MS. ELIZABETH:  Great.  That's it.

Page 62

1  BY MS. ELIZABETH:

2      Q.   If we could scroll down to the bottom part of that

3  chain.

4           Okay.  There you go.

5           Mr. Berger, can you see that?

6      A.   Yes.

7      Q.   Okay.  It's an e-mail from you to myself and Eric

8  Rucker, and it says:  "Thank you for the time today and your

9  support for my wishes to conclude my participation."

10          What did you mean by that?

11     A.   That I have been very pleased that there has been no

12 pushback from 3M.  They understand my wishes, and both

13 Kirkland and 3M have been very supportive of my trying to

14 extricate myself from these proceedings.

15     Q.   Mr. Berger, Mr. Bates asked you whether you had ever

16 felt threatened or coerced to appear at trials.

17          I want to ask that in the reverse.  Have you ever

18 felt threatened or coerced not to appear at any trials?

19     A.   I've -- the only coercion is that subpoenas arrive

20 at my house and I have to comply with them, but beyond that,

21 no threatening or coercion from 3M or Kirkland either way.

22     Q.   Has 3M or its attorneys ever offered you any award

23 or incentive not to appear at any more trials in this case?

24     A.   No.

25     Q.   Did 3M or its attorneys offer you any award or

Judge Gary Jones
December 29, 2021

Page 63

1  incentive not to be in Florida while this litigation is

2  taking place?

3      A.   No.  And just to be clear, there has been no

4  discussion of any award or incentive to appear or not to

5  appear in any of the cases.

6      Q.   Mr. Berger, just to be clear, do you reside in

7  Florida?

8      A.   No.

9      Q.   Have you ever resided in Florida?

10     A.   No.

11     Q.   How long have you lived and worked in Indianapolis?

12     A.   Since 1977.

13          MS. ELIZABETH:  Thank you.

14          No further questions.

15          THE COURT:  Okay.  Thank you, Ms. Elizabeth.

16          I just had a few questions for you, Mr. Berger, if

17     you don't mind.

18          In response to one of Ms. Hoekstra's questions, she

19     had asked you about billings for your time preparing,

20     consulting since October forward, and I think you said

21     you had not billed 3M as of today.

22          My question is, even though you haven't billed them,

23     is it your intention to submit a bill for your time from

24     October of 2021 forward?

25          THE WITNESS:  Yes.

Judge Gary Jones
December 29, 2021

Page 64

1       THE COURT:  And if I understand your testimony

2    correctly, your reason for hiring Mr. Bates to represent

3    you was, to use your words, to extricate yourself from

4    your involvement in this case; is that correct?

5       THE WITNESS:  Absolutely.  I am ready for that to

6    happen as soon as possible.

7       THE COURT:  And you learned of Mr. Bates as a

8    potential lawyer through a referral from one of 3M's

9    lawyers; is that correct?

10       THE WITNESS:  Yes.

11       THE COURT:  And your or the attorney's fees for

12    Mr. Bates are the responsibility of 3M, and they are

13    paying the attorney's fees incurred for Mr. Bates's time;

14    is that correct?

15       THE WITNESS:  Yes.

16       THE COURT:  And as I understand it, at least thus

17    far, you have not been provided with any of the invoices

18    for Mr. Bates's services, they are sent directly to 3M?

19       THE WITNESS:  Correct.

20       THE COURT:  And as things stand now, you still have

21    a valid representation agreement and consulting agreement

22    with Kirkland & Ellis; is that correct?

23       THE WITNESS:  Yes.

24       THE COURT:  And throughout these trials, you have

25    detailed how many times that you have testified.  In all

Judge Gary Jones
December 29, 2021

Page 65

```
 1      cases in which you have provided testimony either in

 2      person or remotely, you have billed for and been paid by

 3      Kirkland & Ellis for your preparation time; is that

 4      correct?

 5             THE WITNESS:  Yes.

 6             THE COURT:  And in all situations or cases in which

 7      you have testified remotely in the 3M trials, in your

 8      remote location, lawyers from Kirkland & Ellis have been

 9      present; is that correct?

10             THE WITNESS:  Yes.

11             THE COURT:  Okay.  I didn't have anything further.

12             I don't know, Ms. Hoekstra, if you had any follow-up

13      or Ms. Elizabeth.

14             MS. HOEKSTRA:  Can I ask -- sorry, if Ms. Elizabeth

15      does.  Otherwise, I have just two follow-up questions.

16             THE COURT:  Okay.  Go ahead, Ms. Hoekstra.

17                          RECROSS-EXAMINATION

18  BY MS. HOEKSTRA:

19      Q.   Mr. Berger, I had asked you earlier about

20  communications during trial from Kirkland & Ellis attorneys.

21             Did you receive transcripts during the Adkins trial

22  as the trial was occurring from Kirkland & Ellis attorneys?

23      A.   No.

24      Q.   Did you receive trial testimony as the trial was

25  occurring from Kirkland & Ellis attorneys during Blum?
```

Judge Gary Jones
December 29, 2021

Page 66

1    A.    No.

2    Q.    Did you receive any transcripts or review any

3  testimony during Camarillo?

4    A.    No.

5    Q.    Were you having any communications about the

6  testimony that was being provided by other experts or other

7  individuals in the courtroom in advance of your testimony in

8  any of those trials?

9    A.    No.

10         MS. HOEKSTRA:  No further questions at this time.

11         We would like to keep the privilege log issue open.

12         THE COURT:  Okay, very good.  Thanks, Ms. Hoekstra.

13         Ms. Elizabeth, any follow-up questions to what I

14    asked Mr. Berger?

15         MS. ELIZABETH:  None from me, Your Honor.  Thank

16    you.

17         THE COURT:  Okay.  Thank you.

18         MR. BATES:  Your Honor, might I -- Your Honor,

19    Philip Bates.

20         THE COURT:  Yes, Mr. Bates.

21         MR. BATES:  I was ordered to be here, so I

22    assume I can ask questions.  Could I ask a couple of

23    questions?

24         THE COURT:  Yeah, go ahead.

25         MR. BATES:  Thank you, Judge.

Judge Gary Jones
December 29, 2021

Page 67

 1                    RECROSS-EXAMINATION

 2  BY MR. BATES:

 3     Q.   Mr. Berger, I noticed today that the engagement

 4  letter that I sent to you and which you signed talks about

 5  getting you out of this case between 6 months and 9 years.

 6          I suggest that the 9 years should have said 9

 7  months.  Was that your contemplation?

 8     A.   Could you repeat the last part of that?

 9     Q.   I noticed what appears to be an error in the

10  engagement letter having to do with the length of time that

11  we were going to try to extricate you from this case.  It

12  says 9 years.

13          Did you mean 9 years or did you intend 9 months?

14     A.   I intended as soon as possible.  I believe the

15  9 years was there just, if one doesn't know how litigation

16  moves forward, these trials may be going on 9 years from now,

17  and if I'm still trying to get out of them, I still want you

18  representing me at that time.

19     Q.   There has been a suggestion, I suppose, that since

20  my fees for your representation are being paid or to be paid

21  by 3M, that somehow or another maybe I'm not representing you

22  as much as the interests of 3M.

23          Do you have any concern, question, is there anything

24  in your mind that gives you doubt about the fact that my

25  representation of you is solely for your interests and the

Page 68

 1  interests I have been engaged to accomplish?

 2      A.   Not at all, and for two reasons.  3M's dealing with

 3  me I feel in this case has been honorable in all regards.  I

 4  have trusted what they say, and they have followed through on

 5  their agreement to help me retain an attorney or to pay for

 6  that attorney who I found.  I found you after interviews and

 7  discussion, and my conversations with you make it clear to me

 8  that our relationship is between you and me.  3M is paying

 9  the bill, but you are working for me and only me.

10      Q.   Mr. Berger, regardless of what has been the

11  experience thus far in connection with this MDL and your

12  participation voluntary or otherwise, since August of this

13  year, has it been your intention to get out as soon and as

14  effectively and as lawfully as possible?

15      A.   Since August and before August, my intention was,

16  after April and May, I was going to be able to terminate my

17  involvement, and the interest has only grown with time.

18      Q.   The issue as framed by the Court for purposes of

19  this hearing is whether or not you are available.  Do you

20  understand what that means in this context?

21      A.   I believe that it means that 3M could ask me at any

22  time to appear for them in these cases.

23      Q.   Ask or require?

24      A.   Well, they can require if they issue a subpoena, but

25  short of that, they cannot require me to appear, nor have

1  they ever indicated any intention of forcing me to appear.

2      Q.   If you are subpoenaed, you will appear; is that

3  correct?

4      A.   Yes, I will comply with the law.

5      Q.   Otherwise, you do not intend to, nor do you

6  understand that you are obliged to appear?

7      A.   Correct.

8      Q.   And regardless of what your conduct may have been in

9  the past, regardless of what sort of voluntary assistance you

10 have provided in the past, that has unequivocally ceased; is

11 that correct?

12     A.   Correct.

13          MR. BATES:  Thank you, Judge.

14          THE COURT:  Okay.  Thank you, Mr. Bates.

15          Is there, on behalf of 3M, is there any other

16     evidence you wish to submit, documentary or testimonial,

17     Ms. Elizabeth or Mr. Beall?

18          MR. BEALL:  Argument perhaps, Your Honor, but not

19     evidence.

20          THE COURT:  Okay.

21          And, Ms. Hoekstra, on behalf of the plaintiffs, was

22     there any other testimonial or documentary evidence you

23     wish to submit?

24          THE COURT:  And I assume what you had on the screen,

25     we will mark each of those documents as exhibits and

Judge Gary Jones
December 29, 2021

Page 70

1   they'll be received in evidence as part of this

2   evidentiary hearing, but other than that?

3       MS. HOEKSTRA:  I'm hesitating, Your Honor, only

4   because we're still going through the documents that we

5   received this morning.

6       I would at this time have nothing further to add,

7   but would like to reserve the right to file some

8   additional materials if and when they are -- we finish

9   going through them today.

10      THE COURT:  Okay.  Very well.  So let's do this,

11  then.  It's a fairly discrete issue.

12      Let me hear some argument from each side as to, at

13  least thus far, what you believe the evidence shows in

14  support of your respective positions, and I guess I'll

15  begin with 3M since, as I mentioned, the burden is on 3M.

16      I don't know, Mr. Beall, you are going to make

17  argument?

18      Okay.  You can come up to the podium.

19      MR. BEALL:  May it please the Court.

20      We would also be happy to and it may assist the

21  Court to provide a very short posttrial memorandum.  We

22  could do that as soon as tomorrow at the Court's

23  discretion.  So if you would welcome that, we would be

24  happy to provide that.

25      And, obviously, plaintiffs could do that, I would

Judge Gary Jones
December 29, 2021

Page 71

1  assume a simultaneous filing similar to a closing

2  argument, and that would potentially give them a chance,

3  if they think there's something in the documents they are

4  reviewing -- and not to argue the case for them, but that

5  is another reason to allow for posttrial briefing, but I

6  think it would be beneficial.

7      THE COURT:  Well, I'll tell you, I think that may be

8  helpful because the discrete issue is the meaning of what

9  unavailability really means, and we've heard the

10  evidence, and I'll hear argument from both sides in a

11  moment.

12      And, you know, I have taken a look at it, and a

13  little further deep dive into how courts have interpreted

14  unavailable under Rule 32, as well as the Federal Rules

15  of Evidence, I think, would be helpful to the Court.

16      So I will, at the end of your argument, I'm going to

17  give each side a period of time to file a -- to file a

18  brief.

19      MR. BEALL:  Sure.

20      THE COURT:  I might not put your feet to the fire

21  and have you file it tomorrow, maybe on Monday.  I know

22  Friday is a holiday, but I think that might be a good

23  idea, but you can go ahead and proceed with your

24  argument.

25      MR. BEALL:  I can safely say that nobody will push

Judge Gary Jones
December 29, 2021

Page 72

1    back at giving us more time to file something on that.

2        But I will make a brief argument now based upon the

3    evidence presented and also the law that we have provided

4    the Court thus far, and I think the Court is correct.

5    The issue is a narrow issue.  It's, frankly, a simple

6    issue under the way -- the interpretation of the law that

7    we have here.

8        Rule 32 provides a definition for unavailable

9    witness, and it is done in the disjunctive, if that's the

10   right word.  It uses "or," so there's different ways you

11   could do it.  Dead is one, obviously.  That doesn't apply

12   here, but we have (B), Rule 32(a)(4)(B).  It says you're

13   unavailable if the witness is more than 100 miles from

14   the place of hearing or trial or is outside the United

15   States, unless it appears that the witness's absence was

16   procured by the party offering the deposition.

17       So the question under the case law before the Court,

18   then, is really two questions and two questions only.

19   Those two questions are:  Does Elliott Berger reside or

20   is he more than 100 miles from the place of his testimony

21   in Florida for these cases?

22       And whether did 3M procure his absence if that was

23   the case?  In other words, did we get him to Indianapolis

24   to avoid having to testify in trial.

25       And I think those questions actually answer

Page 73

 1   themselves without any dispute.  There is simply no

 2   evidence to the contrary, and all the questions

 3   Ms. Hoekstra asked elicited no testimony that would

 4   contradict these two truths.

 5        The first truth is Elliott Berger lives, works,

 6   resides, and has always done so in Indianapolis for

 7   decades, which is well over 100 miles outside of the

 8   subpoena power of this Court subject to Rule 43, the

 9   remote testimony issue the Court has addressed

10   previously.

11        The second question is:  Did 3M procure his absence

12   from the jurisdiction to avoid testifying in trial or for

13   any other reason?  And the answer is also self-evident.

14        3M did not transfer Mr. Berger to Indianapolis weeks

15   ago so that he would not be able to be subpoenaed for

16   trial.  Mr. Berger has been there since 1974, more than

17   25 years before the earplug was even put on the market,

18   much less the lawsuits were filed.

19        So it's a very simple question under the case law,

20   and the case law interpreting this is also very clear.

21   The case that we cited in one of our original memoranda

22   on this issue, one of our original motions that I think

23   is probably the leading case on this issue is the Hadjih

24   case, H-A-D-J-I-H, vs. Evenflo Company.  That's a Tenth

25   Circuit case from 2014 that's found at 579 Federal

Page 74

1    Appendix 649.

2         And that case is very interesting because it talks

3    about the standard to use in cases like this.  It goes

4    over the issues, and what the Court there says at

5    Headnote 2 is there is a difference between procuring a

6    witness's absence and electing not to procure his

7    attendance.

8         So those are the two prongs of this.  In other

9    words, it's one thing if we were to, as I mentioned

10   earlier, to give Mr. Berger an assignment and send him to

11   Alaska for a quick thing just to get him out of the area

12   during the trial.  When we see this process server

13   coming, we get him into a taxicab, get him to the

14   airport, and get him out of the town.  That is procuring

15   his absence, but we have no obligation to bring him

16   within a hundred miles of the Court to make him

17   available.  That doesn't have anything to do with the

18   definition of availability.  That is a totally different

19   thing altogether.

20        In fact, the Tenth Circuit cited the First Circuit's

21   decision in Carey, C-A-R-E-Y, vs. Bahama Cruise Lines,

22   which is at 864 F. 2d 201, and the 204 is the pincite

23   here, and that Court said:

24        "Under the case law interpreting Rule 32, the mere

25   fact that the deponents are employed by the defendant and

Page 75

 1    that there is an identity of interest between the

 2    deponents and their employer is not enough to trigger

 3    exclusion because procuring absence and doing nothing to

 4    facilitate presence are quite different things."

 5         So what those cases both stand for the proposition

 6    is that to be un -- to be available in this case, we

 7    would have had to be somehow making him absent from the

 8    jurisdiction so he could not be testifying, as opposed to

 9    simply not bringing him here, and the fact that he is

10    friendly to 3M, the fact that he's a longtime former

11    employee to 3M and its predecessors, the fact that he's

12    cooperated with 3M in the cases thus far, the fact that

13    we've even met with him and prepared him for his

14    testimony is not part of the inquiry.  It is utterly

15    irrelevant to this.

16         And, in fact, as the First Circuit case makes clear,

17    even current employees are subject to the same test.

18    Current employees under our direct control, people that

19    we could hire and fire and promote, people that we could

20    hold carrots to entice them to do something and sticks to

21    prevent them from doing something, even current employees

22    are unavailable if they are more than 100 miles from the

23    place of the trial, and we didn't get them out of that

24    jurisdiction to keep them from testifying.

25         We've cited cases that -- I'll give you a couple of

Judge Gary Jones
December 29, 2021

Page 76

1    case cites right now.  One of the cases we cited is the
2    Chao case, C-H-A-O, vs. Tyson Foods.  That is actually a
3    Northern District of Alabama case, so it's in this
4    jurisdiction, this circuit, and that's a 2009 case found
5    at 255 Federal Rules Decision 560, and in that case the
6    issue was whether the Secretary of Labor could have some
7    of its current and former employees testify by way of
8    deposition in a case in Alabama and they were more than a
9    hundred miles away, and the Court analyzed the rule,
10   cited the Tenth Circuit case we cited, and held that all
11   five of those witnesses, including the current employees,
12   were unavailable.  So current employees in that case were
13   unavailable.
14        Another case with that very same holding, which
15   we'll cite in our memorandum later, but it's the Wal-Mart
16   Stores case vs. Cuker, C-U-K-E-R, Interactive, LLC.  That
17   is at 2017 Westlaw 1312968.  And that is a Western
18   District of Arkansas decision from April of 2017.
19        And in that case one of the parties wanted to use
20   the deposition of its own president who was more than
21   100 miles from the courthouse, and the Court in that case
22   said that is perfectly fine.  The president is
23   unavailable because he, or she, I can't remember, does
24   not reside within a hundred miles, is not located in the
25   same area as the trial, and was not -- was never moved

Judge Gary Jones
December 29, 2021

Page 77

1   from the jurisdiction to avoid that.

2        So, again, those cases stand for the proposition

3   that current employees, even the president, who is of all

4   people in the world very, very interested and very

5   aligned with the party, cannot be considered to be

6   available simply because they're the president.

7        So if a current employee under those facts is

8   considered to be unavailable if they live outside the

9   jurisdiction, a former employee, a retired employee --

10       THE COURT:  But what about, not to interrupt --

11       MR. BEALL:  Sure.

12       THE COURT:  -- what about a consultant?  Because I

13   understand Mr. Berger is a former employee, but in this

14   litigation, he is a consultant.  He has a consulting

15   agreement.  He has consulted.  He's provided a bunch of

16   useful information to 3M.  He's been paid for over

17   600 hours of his work.

18       And I get your distinction between not having him

19   come here and procuring his absence, and there is a

20   difference there, but isn't a consultant in a different

21   situation than an employee?

22       MR. BEALL:  Just the opposite, Your Honor.

23   Certainly not.  There's nothing in that consulting

24   agreement that says Mr. Berger has a requirement to

25   travel to Florida to testify for us, and, by the way,

Page 78

 1   it's also terminable at will.  So even if it was the

 2   case, Mr. Berger would be happy to not be part of that.

 3   I mean, he's already said he does not want to do it.  So

 4   there's simply nothing in that agreement.

 5        The question is really -- there's two parts to this

 6   question.  If we assume the case law, if we assume the

 7   law says that some element of control, some element of

 8   alignment of interests is enough to overcome this

 9   distinction, then I don't think that would apply to the

10   consulting agreement as we've discussed.

11        There was a reason for the consulting agreement.

12   Mr. Berger is a fountain of knowledge, obviously, about

13   this case.  The lawsuit was filed.  The attorneys have to

14   learn about the case.  We need to find somebody who knows

15   about it.

16        Mr. Berger clearly knows about it.  So it made sense

17   to employ him as a consultant for that purpose, but there

18   is nothing in that agreement that allows 3M to basically

19   make him the puppet and say, "You have to do this."

20        Because if we can't do that to our employees, who we

21   can fire and demote and do all these things to, how can

22   we do that to him?

23        He is no more under our control than an employee is

24   under this consulting agreement.

25        THE COURT:  Let me ask you this.  If we were dealing

Judge Gary Jones
December 29, 2021

Page 79

1  with a pure expert, let's say, for example, Dr. Casali --

2       MR. BEALL:  Sure.

3       THE COURT:  -- and he's furnished an expert report,

4  he's participated in these cases, and for some unknown

5  reason it turned out the plaintiffs had a great need for

6  his testimony, and you made the determination, based on

7  his past testimony and performance at other trials, that

8  you did not want to call him as a witness.

9       Would the same rule and reasoning apply?

10      Would it simply be he's an expert.  He can make his

11  own decisions.  He's not under our control.  If the

12  plaintiffs want him here, they have to subpoena him, and

13  because we are not voluntarily bringing him here, he is

14  unavailable.  Instead of having him testify, we can use

15  some or all of his deposition at a trial.

16      Would that be the same result with an expert?

17      MR. BEALL:  I would say I believe likely the case.

18  I want to preface it by saying I've not researched the

19  expert issue completely.  I know there is, in fact, case

20  law that does support the proposition that an expert is

21  unavailable.

22      So, for example, if Mr. Casali or another witness

23  had a deposition and was supposed to testify and had

24  COVID and could not appear and they're more than a

25  hundred miles away, they can't be compelled to appear.

Judge Gary Jones
December 29, 2021

Page 80

1    Perhaps that's the case.

2        I don't want to go out on the limb and tell you the

3    case law completely on that, no, but I would say two

4    distinctions here.

5        One, Mr. Berger, while he was initially designated

6    as a, quote, hybrid expert, as the Court is aware, where

7    he had some expert opinion and some fact opinion, in the

8    cases thus far, he has testified exclusively as a fact

9    witness.

10        There has not been -- he has not been allowed to be

11    -- to serve as an expert witness in that capacity; that

12    neither party has, quite frankly, pushed for it, so he is

13    -- while he has expertise, he is a fact witness in these

14    cases, and that is how he has been used by the parties.

15        And going back to my prior point about the

16    consulting agreement, if you -- you know, I don't think a

17    consulting agreement would move the needle one bit if you

18    assume the test is coercion, control, some sort of

19    ability to manipulate or to make somebody do things under

20    your control, like an employee would be a classic example

21    of that.

22        But, again, that's not the test.  So if it's -- if

23    it's simply a situation where, if the president of a

24    company cannot -- is considered to be unavailable because

25    he lives more than a hundred miles from the site, then a

Page 81

1  consultant certainly has to be unavailable who lives in

2  Indianapolis, especially one who says, "I don't want to

3  go.  I'm done."

4      Mr. Berger has testified at least six days of

5  deposition.  And that was those 30(b)(6).  There may be

6  more days.  I can't remember the exact number.

7      He's testified in nine trials.  He has as much

8  recorded testimony as virtually any fact witness in any

9  litigation I've ever heard of in my 30 years of practice.

10  I'm sure there are some with more, but it's going to be

11  hard to find them.  They will be the exception.

12      The idea that he is somehow an indentured servant to

13  3M because he used to work for us, that we can control

14  him and do something is simply not the case, but that's

15  also not the law.

16      And, again, it's a two-pronged question under the

17  cases we've cited, the Tenth Circuit and the First

18  Circuit.  Honestly, I don't believe the Eleventh Circuit

19  has officially ruled on this yet, but cases within the

20  Eleventh Circuit, as we talked about earlier, have.  He's

21  outside of a hundred miles, and he is not there because

22  we put him there.  He's been there since 1974.

23      For that reason, he is the definition of

24  unavailable, and, therefore, we should be allowed to use

25  his deposition as needed in trial, subject, of course, as

Judge Gary Jones
December 29, 2021

1    the Court said, if he does show up to trial either

2    through subpoena or some other method, he's traveling

3    through Florida on vacation and stops in and wants to

4    testify, obviously, that makes him available, but that's

5    not the situation that we're dealing with in most of

6    these cases.

7         THE COURT:  Does the fact that 3M is paying for a

8    lawyer to represent Mr. Berger and the sole scope of the

9    representation, according to the retention agreement, is

10   to resist, avoid Mr. Berger from having to personally

11   attend the trial, does that make any difference?

12        Does that factor into indirect evidence of

13   procurement; that 3M doesn't want him to testify, so

14   they, essentially, hired a lawyer and are paying a lawyer

15   to do everything legally permissible to avoid Mr. Berger

16   from having to appear, including resisting the

17   plaintiffs' efforts to have him under Rule 43(a) provide

18   testimony through remote transmission?

19        MR. BEALL:  No, for a couple of reasons, Your Honor.

20   One is, nothing in that paying for Mr. Bates to represent

21   Mr. Berger -- which, by the way, is not uncommon as the

22   Court is aware.  Companies routinely pay for former

23   employees' legal counsel if there's going to be a

24   potential conflict.

25        Obviously, I don't think there's any question, 3M

Judge Gary Jones
December 29, 2021

Page 83

1  would much prefer for Elliott Berger to be sitting in

2  court every single trial testifying in person.  I don't

3  think there's any dispute about that.  He's a

4  knowledgeable, good witness.  He's a good face for the

5  company, so we have no issue with that.

6       Therefore, there is a conflict of interest when it

7  comes down to that issue, because we also know that we

8  have no way to control that, so he needs his own lawyer

9  to deal with that issue.

10      Again, I could cite, for example, a case to show

11  what the distinctions are between procuring absence and

12  not.  It's the Phoenix Technologies case vs. VMware.

13  That's at 2017 Westlaw 8069609.  It's a Northern District

14  of California case in 2017.

15      THE COURT:  806?

16      MR. BEALL:  8069609 is the Westlaw cite.

17      And that case, it's a different situation, but just

18  to give you a sense of the nuance there, there was a

19  witness who was actually in town to testify at a trial in

20  a hotel room.  They were -- then the party who was going

21  to be having them testify said to them, to the witness,

22  "We don't think we're going to call you anymore.  You can

23  stay in the hotel room or you cannot.  If you want to

24  hang in the hotel room for a week and do that, that's

25  great.  If you want to go back home, you can go back

Judge Gary Jones
December 29, 2021

Page 84

1   home.  Do what you want to do."

2       The witness went back home, and the Court said that

3   meant unavailable.  They didn't procure the person's

4   absence.  They didn't say, "Here, here's the bus ticket,

5   get out of town quickly."  They left it up to the

6   witness.

7       So that's what we're -- that's no different here

8   than hiring Mr. Bates to deal with this.

9       But as Mr. Berger said very clearly, if he is

10  subpoenaed, he will comply.  Now, that compliance could

11  be filing a motion to quash.  It could be filing a

12  protective order, something to avoid having to continue

13  to testify, but that is a different thing than saying

14  we're going to do this so you can hide.

15      He has been served with a subpoena for this trial --

16  I mean for the upcoming trials.  They know they can serve

17  him with process.  They have done it multiple times, so

18  he is not avoiding process.  He is not leaving the

19  jurisdiction.

20      When he goes on vacation, frankly, he tells people

21  he's on vacation.  I mean, he's not hiding that fact.

22      The Baker trial was a classic example.  I mean, his

23  testimony was worked around his vacation schedule because

24  he was up front about it.  It wasn't like he was trying

25  to hide in his basement to avoid service, and we didn't

Judge Gary Jones
December 29, 2021

Page 85

1    hire armed guards to keep him from being served with a

2    subpoena.  That's a different situation.

3         So he is doing everything by the book, by the letter

4    of the law, and hiring Mr. Bates to represent him in that

5    regard does not procure his absence because, again, he's

6    been subpoenaed for these trials.

7         The issue is going to come down, and may happen in

8    Sloan and Wayman, if they decide not to call him, then we

9    need to be able to play his deposition.

10        We have other trials, and even though these cases

11   are not a part of this hearing, we all know there are

12   five more trials in the spring where this issue is going

13   to keep popping up, and there are two hundred and

14   something thousand more cases that could eventually be

15   tried.

16        THE COURT:  Hopefully not.

17        MR. BEALL:  We're not going to comment about that,

18   but this is a recurring issue that's going to keep coming

19   up, and for that reason, we think he is the classic

20   definition of unavailable under the rules, and I think

21   there is no legal argument to the contrary.

22        I think he is in no different position right now

23   than a close friend or family member.  That's the way I

24   would describe it.  Is he somebody that is on our side as

25   opposed to testifying for the plaintiffs?  Sure.  I don't

Judge Gary Jones
December 29, 2021

Page 86

 1    think there's any dispute about that.  Just like your

 2    best friend or just like your spouse, your child would do

 3    that.

 4         In this litigation, both parties have had friends

 5    and family members testify by deposition over a hundred

 6    miles away.  Every one of those situations the person

 7    could come into Court.  If they're a close friend or

 8    family member, they may want to come into court, but they

 9    can't be compelled to come into court absent subpoena,

10    and, therefore, those depositions have been played

11    without objection because those witnesses are more than a

12    hundred miles away.

13         Mr. Berger may decide in a year, I'm bored with

14    retirement, I want to come back and testify, in which

15    case he can show up in court and testify.  That's a

16    different situation, but he can't be compelled to do that

17    absent a subpoena, and, therefore, he is unavailable

18    because he's outside the subpoena power of this Court

19    other than Rule 43.

20         THE COURT:  Okay.  Thank you, Mr. Beall.

21         Ms. Hoekstra, let me hear argument on behalf of --

22         MR. BATES:  Your Honor.

23         THE COURT:  Yes.

24         MR. BATES:  Your Honor, if possible, I would like to

25    answer or at least partially answer one of the questions

Judge Gary Jones
December 29, 2021

Page 87

1   that you posed to Mr. Beall, if that's -- if this is not

2   the time, I'll wait.

3        THE COURT:  No, go ahead.

4        MR. BATES:  I do not take any instructions

5   whatsoever from 3M.  3M has given me no instructions

6   about what they want, what they want me to do, nor would

7   I take any such instruction.

8        I act independently and exercise independent

9   judgment on behalf of my client, and my client, as the

10  engagement letter shows, feels very much as an indentured

11  servant who is being compelled to be involved in this

12  massive litigation during the very time in his life when

13  he and his wife would like to enjoy retirement.

14       My goal and my effort from the get-go in this

15  engagement has been somehow or another to create a

16  sufficient record for use at future trials so that

17  Mr. Berger doesn't have to be there in order for the

18  plaintiff and the defendant to have a fair trial.

19       That is why we sought to have his testimony

20  recorded.  That is why we -- and we had the argument in

21  front of Your Honor some time ago.  You had said

22  something about recording the testimony, which is why,

23  when he was going to be deposed in -- or, pardon me, when

24  he was going to testify, I think, in November, we said,

25  "Okay, let's get it recorded."

Judge Gary Jones
December 29, 2021

1          So I filed a motion to have it recorded, which was

2    summarily denied by, I think, Judge Winsor.

3          The whole point is, this is not a contrivance, nor

4    would I participate willingly and knowingly in a

5    contrivance to make Mr. Berger unavailable.

6          This is an effort to let Mr. Berger get on with his

7    life, and I have agreed to try to help him within the

8    bounds of the law, and that is why we've been trying to

9    create some opportunity for both the plaintiff and the

10   defendant to get what they need from Mr. Berger now so

11   that he can go on.

12         And so to the extent that it's suggested in argument

13   or whatever that I'm somehow this paid stooge for 3M is

14   absolutely categorically false.

15         I appreciate the Court letting me say that.

16         THE COURT:  Thank you, Mr. Bates.

17         Ms. Hoekstra, let me hear argument on behalf of your

18   clients.

19         MS. HOEKSTRA:  The issue here today is limited, in

20   part, to Mr. Berger's availability.  As Mr. Beall pointed

21   out, that issue is probably not pertinent for Sloan and

22   Wayman given the subpoena that is currently pending for

23   Mr. Berger's live testimony.

24         THE COURT:  He has been subpoenaed?

25         MS. HOEKSTRA:  He has been subpoenaed for the

Judge Gary Jones
December 29, 2021

Page 89

 1    January trial under Rule 43, 45 for remote testimony.

 2         I understand the disputes that have arisen in the

 3    trials that have occurred in the last, you know, several

 4    months in relation to subpoenas for Mr. Berger, whether

 5    he testifies for plaintiffs under their subpoena or

 6    voluntarily for defendants in their case, as to whether

 7    that -- what that implication has as to his availability

 8    to testify.  That's essentially why we're here today.

 9         Under the terms of Rule 32, yes, he's more than a

10    hundred miles from Pensacola.  We are not arguing that.

11         The reason that we're here and the reason that this

12    ongoing motion practice has occurred is because, in all

13    honesty, it's befuddling to most of us that Mr. Berger,

14    who still has an active consulting agreement with

15    Kirkland, who is an agent of 3M, who still has a, you

16    know, representation agreement with them, who has been

17    represented by 3M's attorneys in every instance that he's

18    testified either in deposition or in court for the last

19    several years, can say that he cannot be compelled or is

20    not available for testimony when it's evident from the

21    review of his testimony in the previous trials and the

22    depositions that, when 3M puts him up as a 30(b)(6)

23    representative, he appears.  When 3M requests that he

24    testify, it's their case, he appears.

25         When the motions to quash subpoenas occur, they're

Judge Gary Jones
December 29, 2021

Page 90

1  for plaintiffs' motions for subpoena as opposed to

2  defendants' motions, which have happened -- or

3  defendants' subpoenas, which have happened in several

4  cases.

5      It appears to us as if it was a back end run around

6  the control that 3M may have over him.  3M is paying for

7  his attorney.  3M is paying him for his time.  3M is

8  paying him or representing him when he appears.

9      And part of the reason that Mr. Berger is so central

10  to this discussion and why we've all been going through

11  this never-ending motion practice on this is his

12  testimony in his early depositions, his testimony in the

13  early trials, his testimonies even through the trials of

14  December have not been consistent.

15      Those inconsistencies and the ability to question a

16  fact witness, whether it's live or live by Zoom, is

17  central to plaintiffs' case given Mr. Berger's importance

18  in the development of the Combat Arms, Version 2, its

19  relationship with the government, and in all honesty, the

20  fact that defects in relation to it may or may not have

21  been known for 15 years prior to when 3M stopped selling

22  the product.

23      Because of that central focus and his ongoing

24  relationship with both 3M, individuals at 3M and

25  Kirkland, his unavailability is beyond whether he's a

Page 91

1    hundred miles from Pensacola or not.

2         And we do understand why 3M would want to use his

3    30(b)(6) testimony, in their own defense, or why they

4    would like to use his, you know, nonpersonal testimony

5    specifically.  However, there are elements in his trial

6    testimony that are not consistent or disagreed with

7    elements that he's given in those depositions as a

8    corporate representative, and the distinction and the

9    differences between what he says as a corporate rep

10   versus what he says as a fact witness in live court are

11   the focus for plaintiffs as to why his testimony should

12   be limited or why we've been focusing on using his live

13   testimony specifically, because those differences lead us

14   to believe that certain things in his 30(b)(6) testimony

15   have more of a hearsay aspect than others, and that

16   perhaps the availability aspect of it is less important

17   than whether the testimony should be used in its

18   capacity.

19        But we understand we're here talking about his

20   availability and whether he is -- I don't disagree with

21   Mr. Beall, which doesn't happen very often, but between

22   us -- and I haven't looked at all of the case law that

23   he's had.  We've provided a bunch of case law to you

24   already in the -- essentially.

25        Even Mr. Berger in his declaration or his affidavit

Page 92

1    in this case is conflating his testimony in his personal

2    capacity and his testimony in his 30(b)(6) capacity.

3    Even if Mr. Berger is not available, his 30(b)(6)

4    testimony should not be able to be used by 3M.  He is not

5    the corporation as they have been arguing here today.  He

6    is an important factor in the corporation, but at the end

7    of the day, his availability should not mean that his

8    30(b)(6) testimony on behalf of the company when he made

9    himself available, even though he was no longer an

10   employee at that time, only had the consulting agreement

11   and essentially has the same relationship with them now

12   that he did when he gave that, that hasn't changed the

13   situation.

14       THE COURT:  So let me ask you -- let me ask you

15   this.  That's an interesting angle.

16       So you're saying that, different from just the

17   unavailability issue, that 3M should not be permitted to

18   use 30(b)(6) testimony in their case because, on the one

19   hand, you can't say he's not the corporation, and then in

20   the next hand say these are -- he is a party

21   representative.  That would be -- that would be

22   inconsistent.

23       And then, secondly, it would be inconsistent to say

24   that you can procure his availability as a corporate

25   representative, i.e., a 30(b)(6) witness, i.e., you have

Page 93

 1   control over him, and then turn around and for purposes

 2   of what we're discussing argue that you do not have

 3   control over him and, therefore, he is unavailable.

 4        Is that essentially what you are saying?

 5        MS. HOEKSTRA:  Correct.  I mean, there's case law

 6   out there that a 30(b)(6) representative doesn't have to

 7   be a current or former employee.  It could be someone who

 8   is hired to be educated based on the company's documents

 9   to testify.

10        It doesn't always work that well, but it's an

11   availability.  And for them to turn around and say,

12   Mr. Berger is unavailable; therefore, we can play his

13   corporate testimony, even though we have other employees

14   who have knowledge who are available, is part of the

15   argument and the ongoing discussion between what

16   Mr. Berger's availability actually means in a case where

17   he's subpoenaed to testify.

18        THE COURT:  And what were the, I believe, four cases

19   you said that 3M successfully obtained Mr. Berger's

20   voluntary testimony in their case.

21        MS. HOEKSTRA:  In EHK, Mr. Berger testified in

22   plaintiffs' case under subpoena, but he had already

23   agreed to and did testify then in defendants' case as

24   well voluntarily.

25        In Adkins -- I'm sorry, in McCombs there was

Judge Gary Jones
December 29, 2021

Page 94

1   agreement between the parties, and he testified in

2   defendants' case.  Plaintiffs had an agreement to

3   question him adversely, so the direct went a little -- or

4   the cross went a little broader than the direct, but that

5   was -- he testified voluntarily in defendants' case.

6       THE COURT:  So he was not subpoenaed by either side?

7       MS. HOEKSTRA:  There was -- we had a discussion

8   about a Rule 43 subpoena and came to an agreement prior

9   to the McCombs trial, which is actually why, then, in

10  Baker there was a subpoena, and he testified in

11  plaintiffs' case, not in defendants' case.

12      But then following the Baker case, before the Group

13  B trials began, there was again a discussion and

14  agreement that he testified in defendants' case in both

15  Adkins and in Blum.

16      THE COURT:  So in both Adkins and Blum, Mr. Berger

17  appeared as a witness for the defendants in their case

18  without the necessity of a subpoena?

19      MS. HOEKSTRA:  Yes, sir.

20      And then, again, the next time that he appeared in

21  defendants' case was with a subpoena in Camarillo.

22      THE COURT:  So I guess the, you know, the defendant

23  and Mr. Berger would tell me Adkins and Blum predated

24  where he got fed up or had a change in heart in October

25  and said, "I no longer want to be involved," or did

Judge Gary Jones
December 29, 2021

Page 95

1   Adkins and Blum take place after that?

2        Was Blum after Mr. Bates was retained?

3        MS. HOEKSTRA:  So based on my understanding of

4   e-mail traffic both between plaintiffs' and defense

5   counsel and some of the documents that were provided

6   today, Mr. Berger appeared in defendants' case in Adkins

7   on September 29th of 2021.

8        THE COURT:  After Mr. Bates had been retained?

9        MS. HOEKSTRA:  After Mr. Bates had been retained in

10  August.

11       There's some back and forth because plaintiffs were

12  not entirely aware that Mr. Bates had been retained until

13  October, so we were not aware of that two-month gap

14  there.

15       In addition, after Mr. Bates had been retained,

16  there was communications between the parties, not with

17  Mr. Bates involved because we did not know he should have

18  been included, about Mr. Berger's testimony in the Adkins

19  trial, the Blum trial, and the fall or, I guess, the

20  November and December trials, the winter trials.  I don't

21  recall the names at this point.

22       THE COURT:  And agreements were reached between

23  counsel, but the point you are making, nonetheless, as

24  part of that agreement, without a subpoena, 3M was able

25  to get Mr. Berger to testify in some of those cases?

Page 96

1          MS. HOEKSTRA:  Correct.  And while he was testifying

2     under subpoena in Camarillo, I'd like to point out the

3     subpoena was less than 48 hours before he took the stand.

4     So if there was a motion to quash, it would have been an

5     emergency, but my understanding is there was no objection

6     to that subpoena.

7          THE COURT:  Okay.  And so the subpoena in Camarillo

8     was more belt and suspenders.  You had an agreement

9     already with 3M for Mr. Berger to appear?

10         MS. HOEKSTRA:  No.  Camarillo is part of the fall

11    trials.  There were subpoenas issued for Rule 43.  There

12    was the motion practice.  Parties had been ordered to

13    meet and confer over a protocol for having the Zoom

14    process move forward and recording of it if necessary.

15         The litigation decision was made in both Camarillo

16    and Palanki.  Mr. Berger did not appear in plaintiffs'

17    case in Camarillo.  Mr. Myers appeared live in Palanki

18    instead.

19         And because of that, there was no discussion between

20    the parties or an agreement as to a protocol for

21    recording Mr. Berger, et cetera.

22         When that order and the discussion that defendants

23    were going to bring him in their case occurred, Judge

24    Walker basically indicated there's no subpoena, you're

25    not recording this, there's no protocol.  We continued.

Judge Gary Jones
December 29, 2021

1  Then they issued the subpoena, I assume, for a variety of

2  reasons.

3      My understanding, it wasn't moved to quash, but the

4  testimony was not recorded because there hadn't been an

5  agreement between the parties as to the protocol.

6      THE COURT:  Let me ask one last question.  I'll put

7  you on the spot.

8      Have the parties given any thought to, for lack of a

9  better word, I guess, a de bene esse deposition of

10  Mr. Berger, sort of the, you know, the superdeposition

11  that both sides get to fully participate in and that

12  deposition could be used as a surrogate for his testimony

13  in future trials?

14      MS. HOEKSTRA:  Mr. Aylstock may suddenly unmute

15  himself if I, you know, keep talking, but my

16  understanding is that, prior to all of the Group C and

17  Group D cases getting set in '21, '22, there has been a

18  discussion moving forward about de bene esse depositions

19  taking place perhaps in a courtroom/trial setting so we

20  could record trial testimony for a variety, not just

21  Mr. Berger, of general both fact and expert testimony,

22  general ENTs who don't have case specific opinions, I

23  mean, Mr. McKinley, Admiral Leslie, Mr. Berger,

24  Mr. Myers, you know, defendants -- whoever defendants may

25  want.  Mr. Casali since he doesn't have -- sorry,

Page 98

1   Dr. Casali since he doesn't have case specific opinions,

2   but those discussions haven't moved forward given the

3   pace that we've been moving with litigation at this

4   point.

5        THE COURT:  So that's something that's still

6   floating out there.  Of course, Judge Rodgers would have

7   to make the decision on whether that is something the

8   parties could do, but specifically with regard to

9   Mr. Berger, that would be a potential way to avoid any

10  disputes on availability, unavailability, subpoena,

11  remote testimony under 43(a).

12       So to answer my question, the parties have not or at

13  least the plaintiffs have not completely abandoned that

14  idea at this point?

15       MS. HOEKSTRA:  No, that is not something we've

16  abandoned.  I think part of it -- and I'm working off of

17  my memory instead of any notes from the conversation six

18  months ago -- is that we were amenable, both sides, to

19  the expert de bene esse.

20       Putting fact witnesses in kind of put a pin in the

21  conversation and a let's circle back and talk about this

22  further, and since then, in all honesty, I've been in

23  trial almost every day since we've had that conversation,

24  so it's been a --

25       THE COURT:  Mr. Beall, on behalf of the defendants,

Judge Gary Jones
December 29, 2021

Page 99

1    is that something still potentially out there on the

2    table specifically?  I'm not talking about all the

3    experts, just talking about Mr. Berger.  Is that

4    something that might still be on the table?

5        MR. BEALL:  Your Honor, all I would say about this

6    -- and I'm not the best person to speak -- there was, as

7    Ms. Hoekstra pointed out correctly, Mr. Aylstock, I

8    think, had raised the issue.  There have been very

9    preliminary discussions, no resolution, no decision, no

10   anything, and then it all just sort of got brushed aside.

11   So I can't comment on whether it's something we would

12   agree to in the future or how that would work

13   logistically, and whether it would apply to fact and

14   expert witnesses or anything, it's a different issue.

15       MS. HOEKSTRA:  I think it's something both parties

16   are struggling with --

17       MR. BATES:  Your Honor --

18       MS. HOEKSTRA:  -- given the upcoming cases as well.

19       MR. BATES:  Your Honor, Philip Bates.

20       What Your Honor has just suggested has been an

21   overture I have made not continuously, but more than once

22   since my engagement in August.

23       THE COURT:  Okay.  Well, that's something that may

24   be floating around out there on the table.  Obviously,

25   I'm not going to address it as part of this proceeding,

Judge Gary Jones
December 29, 2021

Page 100

1    but I just wanted to see if that was something that had

2    completely reached loggerheads and had been flatly

3    rejected by both sides and something Judge Rodgers,

4    obviously, could take a look at at some point down the

5    road.

6         So here's what I'm going to do because I do want to

7    look at some of these cases further.  I have looked at

8    some of them.  I want to look at some of them further.

9         So why don't I give each side an opportunity to file

10   a brief, sort of a posthearing brief on the issue of

11   unavailability, and since this is maybe not quite as

12   super time sensitive as I originally thought since it's

13   been represented that Mr. Berger already has been

14   subpoenaed for the Sloan/Wayman trial on January 10th,

15   you know, I don't see a need that I have to have a brief

16   tomorrow and, you know, on New Year's Eve I'll be

17   preparing a report and recommendation.

18        Why don't I give you all until Monday.  I think I

19   have a 2022 calendar here.

20        So Monday is --

21        THE CLERK:  The 3rd.

22        MR. BEALL:  The 3rd.

23        THE COURT:  The 3rd?

24        THE CLERK:  Yes, sir.

25        THE COURT:  Yeah.  Why don't I give you all until

Judge Gary Jones
December 29, 2021

Page 101

1   the close of business on the 3rd, with the idea I'll take

2   a look at that briefing on January 4th, and then make a

3   decision on or do a report and recommendation with regard

4   to the issue that's the focus of this hearing.

5         MR. BEALL:  Your Honor, may I ask for two bits

6   of -- one comment and one clarification or request for

7   clarification on that?

8         THE COURT:  Yes.

9         MR. BEALL:  I think the comment would be, while it

10  is potentially not a subject for Sloan and Wayman, they

11  could decide, plaintiffs could decide to release him from

12  the subpoena and not to call him as a witness and,

13  therefore, it would still be live.

14        So while I'm not suggesting we need to brief it

15  earlier, I don't want to suggest that this is a moot

16  issue because they now control whether he testifies or

17  not and whether we could use -- well, we're not allowed

18  to use his deposition anyway, apparently.  That's what

19  I've been told.  So we do think it is a live issue for

20  Sloan and Wayman.

21        The second is, going back to Ms. Hoekstra's point,

22  which is fair, that we are producing documents because of

23  the Court's order yesterday, I think they may want to use

24  documents.  I don't know this, but there's a chance they

25  may want to use something we produced as part of their

Judge Gary Jones
December 29, 2021

Page 102

1   argument, I assume.

2        Because we're doing simultaneous briefing, if they

3   could provide us prior to that, like, you know, within

4   24, 48 hours after we produce a document, we intend to

5   use this document or we may use this document in our

6   brief, that would allow us to at least respond to

7   something they are going to do without being surprised by

8   it.  I think that would be easier for us to do.

9        THE COURT:  That's fair enough.  You know,

10  obviously, there might be something that was not

11  discussed here, some document that could be important.

12       So if you would do that, Ms. Hoekstra.

13       And if it turns out, Mr. Beall, I receive the

14  briefing on Monday and the focus of the plaintiffs'

15  briefing is on some document that has great importance

16  that wasn't even mentioned here, it wasn't even on the

17  radar screen, although I understand they're documents

18  produced by Mr. Berger, in fairness, if you have to

19  comment on it, I'll give you an opportunity to file a

20  brief reply.

21       MR. BEALL:  Thank you.  I appreciate that.

22       THE COURT:  You know, one thing I would mention to

23  conclude this, I'm sort of curious about all of this, and

24  I began with saying it is a little bit like a Rubik's

25  cube.  You turn it one way and a different color comes up

Page 103

1   the other way.

2        A premise of 3M's argument is that they're caught

3   between a rock and a hard place, they can't use his

4   deposition testimony because he's unavailable and you

5   cannot subpoena Mr. Berger, that's not entirely true.

6        Yes, there is an order I issued that made it clear,

7   when I issued the order, granting plaintiffs' permission

8   under Rule 43(a) to use or to have Mr. Berger testify by

9   remote transmission, 3M vigorously resisted it, did not

10  ask permission from the Court to also subpoena him for

11  remote transmission, and in two or three of the filings

12  after that, has made crystal clear that it vigorously

13  objects to 43(a) being used for Mr. Berger's remote

14  transmission, but conspicuously absent from the docket is

15  any request by 3M to allow that.

16       And I'm not giving an advisory ruling, but I just

17  never have been asked to rule on that issue, and, you

18  know, depending upon the evidence presented here, maybe

19  that's an option for 3M, but I do find it's interesting

20  that up to this point 3M has never made that request,

21  which is part of my conclusion that, you know, 3M really

22  doesn't want Mr. Berger to testify.

23       Because, you know, it just seems like, if you

24  absolutely needed him to testify and even though you are

25  close friends and he said no, there was always the option

Judge Gary Jones
December 29, 2021

Page 104

1    of coming to the Court and saying, you know, "You gave

2    the plaintiffs permission to utilize 43(a).  Why not us?"

3         Plaintiffs might or might not resist that, but I do

4    find that curious that that has never happened, and I

5    understand that isn't necessarily procuring a witness's

6    absence, but that is -- that is something that is

7    curious.

8         Because, you know, when I rule on this, you know,

9    I'm going to look at the law.  Obviously, I'm going to

10   rely on the law.  Whatever the law says, the law says,

11   but, you know, sometimes you get into the weeds on these

12   things and you don't see the 30,000-foot view of, you

13   know, what's going on, and that is something that I have

14   thought about, why that has not happened if, indeed, 3M

15   is so intent on having him testify and they cannot do so.

16        I understand your argument, Mr. Beall.  That's not

17   really part of the calculus on this.  Why 3M may or may

18   not want Mr. Berger to testify is, in your view, largely

19   irrelevant.  The only thing that's relevant is whether

20   they've done something to prevent him from appearing, and

21   so long as they don't prevent him from appearing, their

22   strategies and motives for not having him testify are

23   largely irrelevant, but I do find that curious.

24        MR. BEALL:  Our reading of your prior orders was you

25   said you would deny the motion on Rule 43.  That's the

Judge Gary Jones
December 29, 2021

Page 105

1    reason we made that representation.

2         THE COURT:  Yeah.

3         MR. BEALL:  That's why we -- we certainly read the

4    order that way.

5         THE COURT:  Yeah.  Well, it might -- you know, I

6    guess what I'm saying is, that might not be, you know,

7    the full interpretation of that, and, you know, what

8    really prompted my ruling on that was the fact that it

9    was inconsistent that 3M would vigorously oppose the

10   forty -- the request under 43(a), and then turn around --

11   and I forget which trial it was.  I think it was one of

12   the trials before Judge Walker, possibly.  Yeah, Judge

13   Walker.

14        And they subpoenaed him and called him as a witness,

15   and no one on behalf of 3M ever filed a motion or ever

16   asked me to do that.  That was sort of the reaction from

17   the Court.

18        But, okay, so what I'll do is I'll take a look at

19   your briefs Monday after I receive them, and then, as

20   promptly as possible, I'll get out a report and

21   recommendation on the issue.  It looks like it might not

22   percolate up to a dispute in Sloan/Wayman, but it's

23   certainly an issue that's going to need to be resolved,

24   do a report and recommendation, and then depending upon

25   what the Court does, the parties will have full and fair

Judge Gary Jones
December 29, 2021

Page 106

1   opportunity to challenge my view of things on a de novo

2   review by Judge Rodgers.

3        MR. BEALL:  Thank you, Your Honor.

4        THE COURT:  Okay.  Thank you all very much.  Court

5   is adjourned.

6        (Discussion off the record.)

7        MR. BEALL:  Do you know when the transcript could be

8   ready?

9        THE STENOGRAPHER:  When would you need it?

10       MR. BEALL:  Expedited would be better for both

11  parties.  I know for us it would be.  So, I mean, I know

12  this is the holiday.  To the extent you can, if you could

13  expedite it.

14       (Discussion off the record.)

15       THE STENOGRAPHER:  I'm thinking I could probably get

16  it out sometime Friday.

17       MR. BEALL:  That would be perfect.  That's fine.

18       (Discussion off the record.)

19       THE STENOGRAPHER:  And you would like a copy too?

20       MS. HOEKSTRA:  Yes.

21       MR. BEALL:  Thank you so much.

22       THE STENOGRAPHER:  All right.  You're welcome.

23       (The hearing concluded at 12:30 p.m.)

24

25

Judge Gary Jones
December 29, 2021

Page 107

1                    CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA

4    COUNTY OF ALACHUA

5

6        I, Lynn Marie Durscher, RPR, CRR, certify that I was

7    authorized to and did stenographically report the foregoing

8    Evidentiary Hearing proceedings, and that the transcript is a

9    true and complete record of my stenographic notes.

10       Dated this 31st day of December, 2021.

11

12

13

14    _____

15    Lynn Marie Durscher, RPR, CRR

16

17

18

19

20

21

22

23

24

25

Judge Gary Jones
December 29, 2021

1

**$**

**$40**
  59:13
**$60**
  59:13

**(**

**(B)**
  72:12

**1**

**1**
  37:7,12  48:11
**10**
  37:15  59:17
**100**
  72:13,20  73:7
  75:22  76:21
**10:04**
  7:1
**10:06**
  12:20
**10th**
  11:9  52:21
  100:14
**11**
  51:18,25
  52:11
**11/5/2019**
  43:1
**11th**
  23:10,17
**120**
  28:21
**125**
  36:20

**12:30**
  106:23
**12th**
  53:9
**13**
  38:24
**1312968**
  76:17
**133**
  12:20
**13th**
  52:13
**15**
  90:21
**16**
  47:21  48:2
  49:6  50:2
**16th**
  50:24
**1974**
  73:16  81:22
**1977**
  16:19  63:12
**1st**
  43:9

**2**

**2**
  74:5  90:18
**2009**
  76:4
**201**
  74:22
**2014**
  73:25
**2017**
  76:17,18

  83:13,14
**2018**
  21:1  36:7
  46:18
**2019**
  20:16  21:16
  29:21  37:25
  39:2,6,12,19
  40:24  41:20
  42:9  46:22,23
**2020**
  21:16
**2021**
  17:22  20:3
  33:2  43:9,10
  44:25  47:22
  48:2  49:6
  50:2,24
  51:18,25
  52:12  53:13
  59:17  63:24
  95:7
**2022**
  100:19
**204**
  74:22
**21**
  97:17
**22**
  97:17
**24**
  102:4
**25**
  73:17
**255**
  76:5
**29**
  35:7

**29th**
  95:7
**2d**
  74:22

**3**

**3**
  48:20
**30**
  12:18  37:3
  81:9
**30(b)(6)**
  39:22  40:2
  81:5  89:22
  91:3,14  92:2,
  3,8,18,25
  93:6
**30,000-foot**
  104:12
**301**
  61:11
**31**
  39:12
**31st**
  40:24
**32**
  10:22  71:14
  72:8  74:24
  89:9
**32(a)(4)(b)**
  72:12
**3M**
  7:6,7,8  8:23,
  24  10:25
  11:3,13,14,19
  14:16  17:14
  18:9,12,22,25
  19:15,22,23
  20:1,9,11

21:6,10 23:8,
11 24:20
25:3,9,11,14,
16 27:2,5
28:10,23
29:2,19,21
30:10 32:1,
17,25 34:9
37:19,22
38:20 39:6,23
40:4,9,20
41:10 42:2,6
43:5 45:14,21
46:8,9,10,12,
15,24 48:22
50:17 51:4
55:14,22 58:8
60:11,13
62:12,13,21,
22,25 63:21
64:12,18 65:7
67:21,22
68:8,21 69:15
70:15 72:22
73:11,14
75:10,11,12
77:16 78:18
81:13 82:7,
13,25 87:5
88:13 89:15,
22,23 90:6,7,
21,24 91:2
92:4,17 93:19
95:24 96:9
103:9,15,19,
20,21 104:14,
17 105:9,15

**3m's**
11:23 14:1
17:24 64:8
68:2 89:17
103:2

**3rd**
100:21,22,23
101:1

---

**4**

**400**
38:13

**43**
73:8 86:19
89:1 94:8
96:11 104:25

**43(a)**
82:17 98:11
103:8,13
104:2 105:10

**45**
89:1

**48**
96:3 102:4

**4th**
101:2

---

**5**

**5**
37:25 39:2

**560**
76:5

**579**
73:25

---

**6**

**6**
13:8 48:17
67:5

**600**
28:24 77:17

**649**

74:1

**69**
16:23

**6th**
53:16

---

**7**

**7**
36:3

---

**8**

**800**
21:21 28:9,15
54:10

**806**
83:15

**8069609**
83:13,16

**864**
74:22

**8th**
53:16

---

**9**

**9**
48:18 67:5,6,
12,13,15,16

**9:06**
12:19,21

**9th**
53:17

---

**A**

**a.m.**
7:1

**abandoned**

98:13,16

**ability**
80:19 90:15

**absence**
72:15,22
73:11 74:6,15
75:3 77:19
83:11 84:4
85:5 104:6

**absent**
27:3 75:7
86:9,17
103:14

**absolutely**
25:24 64:5
88:14 103:24

**accepted**
39:1 53:9

**access**
59:1

**accompanied**
59:14

**accomplish**
68:1

**acknowledges**
40:18

**acoustical**
22:14 38:2,9,
10

**act**
87:8

**acting**
30:10

**active**
89:14

**actual**
15:10

**add**

21:18 30:11
70:6

**added**
22:17 49:21

**addition**
31:24 95:15

**additional**
12:20 13:9
23:19 47:13
70:8

**address**
12:9 13:6
14:14 99:25

**addressed**
73:9

**addressing**
10:13

**adjourned**
106:5

**Adkins**
31:7 65:21
93:25 94:15,
16,23 95:1,6,
18

**Admiral**
97:23

**advance**
51:10 66:7

**adversely**
94:3

**advisory**
103:16

**affect**
29:10 44:9

**affidavit**
91:25

**agent**
30:10 39:6

43:5 89:15

**agents**
58:7

**agree**
11:8 17:5
40:19 41:19
99:12

**agreed**
17:2 20:9
38:13 40:9
88:7 93:23

**agreeing**
55:24

**agreement**
23:8 29:2,20,
23 30:1,12
35:23 36:6,
11,15 38:16,
21 39:2 40:24
42:7,9,12
43:4,21 44:6
45:7,12,13
46:22 51:22
55:7,17,20
58:9 64:21
68:5 77:15,24
78:4,10,11,
18,24 80:16,
17 82:9
89:14,16
92:10 94:1,2,
8,14 95:24
96:8,20 97:5

**agreements**
21:9 30:16
46:16,23
95:22

**ahead**
24:5 28:4
65:16 66:24

71:23 87:3

**air**
12:11

**airport**
74:14

**Alabama**
76:3,8

**Alaska**
74:11

**aligned**
77:5

**alignment**
78:8

**allowed**
80:10 81:24
101:17

**altogether**
74:19

**amenable**
98:18

**America**
22:14

**amount**
12:2 28:25
55:2

**analyst**
36:24

**analyzed**
76:9

**angle**
92:15

**announcement**
10:17

**anticipate**
21:22

**anticipated**
20:21

**anymore**
56:2 83:22

**apologies**
27:24 34:18
47:20 53:15
58:17 59:25

**apologize**
9:18 47:18
51:10

**apparently**
101:18

**appeared**
94:17,20 95:6
96:17

**appearing**
7:21 104:20,
21

**appears**
50:22 53:8
67:9 72:15
89:23,24
90:5,8

**Appendix**
74:1

**apply**
72:11 78:9
79:9 99:13

**appointments**
22:25

**approximately**
21:12,15
28:25

**April**
33:2 57:11,
12,14 68:16
76:18

**area**
41:11 74:11
76:25

argue
  71:4 93:2

arguing
  89:10 92:5

argument
  15:10 69:18
  70:12,17
  71:2,10,16,24
  72:2 85:21
  86:21 87:20
  88:12,17
  93:15 102:1
  103:2 104:16

arisen
  89:2

Arkansas
  76:18

armed
  85:1

Arms
  17:8 56:5
  90:18

arrive
  62:19

aspect
  23:14 91:15,
  16

aspects
  13:12

assignment
  74:10

assist
  70:20

assistance
  69:9

Association
  22:15

assume

66:22 69:24
71:1 78:6
80:18 97:1
102:1

assured
  58:3

attaches
  35:7

attend
  82:11

attendance
  74:7

attention
  20:8 59:6

attest
  49:25

attorney
  20:13,14
  26:20 28:7
  44:4 45:5,15
  56:15 57:1
  68:5,6 90:7

attorney's
  64:11,13

attorney-client
  34:4

attorneys
  17:24 27:5
  30:24 31:19,
  24 33:7,25
  43:14 44:13
  54:15 55:3
  58:1,7 62:22,
  25 65:20,22,
  25 78:13
  89:17

August
  20:3 37:25
  39:2,12 42:9

44:25 46:18
47:21 48:2
49:6 50:2,24
68:12,15
95:10 99:22

automobile
  19:10

availability
  13:11 14:15
  25:18 74:18
  88:20 89:7
  91:16,20
  92:7,24
  93:11,16
  98:10

avoid
  72:24 73:12
  77:1 82:10,15
  84:12,25 98:9

avoiding
  84:18

award
  19:7,9 62:22,
  25 63:4

aware
  80:6 82:22
  95:12,13

Aylstock
  8:11,12 97:14
  99:7

─────────────
       B
─────────────

B-E-R-G-E-R
  16:4

BAC
  38:5 44:6
  45:7

BAC's
  38:13

back
  31:3 33:19
  58:21 61:19
  72:1 80:15
  83:25 84:2
  86:14 90:5
  95:11 98:21
  101:21

background
  10:23 34:1

Bahama
  74:21

Baker
  17:21,25
  18:10,12,15
  20:4 32:24
  33:9 47:3
  84:22 94:10,
  12

based
  12:5 72:2
  79:6 93:8
  95:3

basement
  84:25

basically
  78:18 96:24

Bates
  7:24 8:1
  9:13,15 10:3
  13:5,15,25
  15:6 23:25
  24:2,7 27:7,
  10 28:6 30:23
  31:6,12,15
  32:7 33:14,23
  34:8 35:6,10,
  11,17 44:4,9,
  15,16,25
  45:3,5,10,15,

Judge Gary Jones
December 29, 2021

18 46:2,12
47:5,22,24
48:3,6,9
50:5,14 51:4
54:19 59:23
61:4,8 62:15
64:2,7,12
66:18,19,20,
21,25 67:2
69:13,14
82:20 84:8
85:4 86:22,24
87:4 88:16
95:2,8,9,12,
15,17 99:17,
19

**Bates'**
45:22,25

**Bates's**
46:5 64:13,18

**Beall**
7:4,15,18
10:8 14:16
15:4,9 45:20
69:17,18
70:16,19
71:19,25
77:11,22
79:2,17 82:19
83:16 85:17
86:20 87:1
88:20 91:21
98:25 99:5
100:22 101:5,
9 102:13,21
104:16,24
105:3 106:3,
7,10,17,21

**bearing**
52:1

**befuddling**
89:13

**began**
7:1 20:15
50:5 94:13
102:24

**begin**
12:8 15:13
70:15

**beginning**
18:7

**behalf**
7:10 8:23,24
9:1,3,5,7,9,
10 25:21
26:18 69:15,
21 86:21 87:9
88:17 92:8
98:25 105:15

**believed**
34:15

**belt**
96:8

**bene**
97:9,18 98:19

**beneficial**
71:6

**Berger**
7:21,22 9:17
10:3,20 11:1,
9,14,15,18,20
12:3,6,8
13:11 14:11,
18,21,22,23
15:13,17,18,
20 16:4,9,14
17:1 23:18,25
24:8 27:12,18
28:6 30:21
34:2,3,17,20

35:2,22
37:17,24
38:2,8,10
39:3,11 42:23
43:7 45:9
47:18 49:5,
11,17 50:10,
17,25 51:10,
15 52:1,7,16
53:15 55:22
56:23 58:15,
19 59:17
60:22 62:5,15
63:6,16 65:19
66:14 67:3
68:10 72:19
73:5,14,16
74:10 77:13,
24 78:2,12,16
80:5 81:4
82:8,10,15,21
83:1 84:9
86:13 87:17
88:5,6,10
89:4,13 90:9
91:25 92:3
93:12,21
94:16,23
95:6,25 96:9,
16,21 97:10,
21,23 98:9
99:3 100:13
102:18 103:5,
8,22 104:18

**Berger's**
49:2 88:20,23
90:17 93:16,
19 95:18
103:13

**bill**
43:12 63:23

68:9

**billed**
43:8 63:21,22
65:2

**billings**
63:19

**bit**
11:7 40:8
51:12 80:17
102:24

**bits**
101:5

**blue**
27:23

**Blum**
31:13 65:25
94:15,16,23
95:1,2,19

**book**
85:3

**books**
29:17

**bored**
86:13

**bottom**
40:17 62:2

**bounds**
88:8

**breaking**
37:4

**briefing**
71:5 101:2
102:2,14,15

**briefs**
105:19

**bring**
26:12 74:15
96:23

**bringing**
56:20 75:9
79:13

**broader**
94:4

**brought**
37:10

**brushed**
99:10

**Bryan**
8:11

**Buchanan**
8:18,19

**bunch**
77:15 91:23

**burden**
14:16 70:15

**bus**
84:4

**business**
25:9,11,15
29:18 39:5
101:1

---

**C**

**C-A-R-E-Y**
74:21

**C-H-A-O**
76:2

**C-U-K-E-R**
76:16

**calculus**
104:17

**calendar**
52:18,23 53:9
100:19

**California**
83:14

**call**
7:9 8:7,24
9:16,22 11:9
33:25 53:8,19
79:8 83:22
85:8 101:12

**called**
11:18 12:3
38:5 105:14

**Camarillo**
18:19,23
19:1,16,18,23
33:12,18,22
34:9 47:14
52:16 53:3,8
57:5 66:3
94:21 96:2,7,
10,15,17

**Canada**
22:11

**cancel**
22:24

**capacity**
30:2 80:11
91:18 92:2

**captain**
22:19

**capture**
23:15

**career**
23:15

**Carey**
74:21

**Carol**
9:16

**Carolina**
19:8,9,12

**carrots**
75:20

**Carter**
9:6 61:14

**Casali**
79:1,22 97:25
98:1

**case**
7:6 10:20
17:3,6,15
18:19 24:17
29:8 31:7
39:17 48:10
56:18,24,25
57:6,14,17
61:4,8 62:23
64:4 67:5,11
68:3 71:4
72:17,23
73:19,20,21,
23,24,25
74:2,24 75:6,
16 76:1,2,3,
4,5,8,10,12,
14,16,19,21
78:2,6,13,14
79:17,19
80:1,3 81:14
83:10,12,14,
17 86:15
89:6,24 90:17
91:22,23
92:1,18 93:5,
16,20,22,23
94:2,5,11,12,
14,17,21 95:6
96:17,23
97:22 98:1

**cases**
7:7 22:7 23:2
56:11 61:9
63:5 65:1,6
68:22 72:21

74:3 75:5,12,
25 76:1 77:2
79:4 80:8,14
81:17,19 82:6
85:10,14 90:4
93:18 95:25
97:17 99:18
100:7

**cash**
59:14

**categorically**
88:14

**caught**
103:2

**ceased**
69:10

**central**
12:21 90:9,
17,23

**certainty**
56:17

**cetera**
96:21

**chain**
62:3

**challenge**
14:8 106:1

**chance**
13:8 35:12
71:2 101:24

**change**
22:24 25:1
94:24

**changed**
32:21 92:12

**Chao**
76:2

**Charles**
76:2

7:15

**check**
52:18,23
59:13

**Chelsea**
51:19

**child**
86:2

**circle**
98:21

**circuit**
73:25 74:20
75:16 76:4,10
81:17,18,20

**Circuit's**
74:20

**cite**
76:15 83:10,
16

**cited**
73:21 74:20
75:25 76:1,10
81:17

**cites**
76:1

**claim**
13:1,2

**claims**
56:13

**clarification**
101:6,7

**classic**
80:20 84:22
85:19

**clear**
19:25 25:7
49:7 54:5
63:3,6 68:7

73:20 75:16
103:6,12

**Clerk**
15:19 16:2,10
100:21,24

**client**
15:7 87:9

**clients**
88:18

**close**
27:1 85:23
86:7 101:1
103:25

**closed**
58:22

**closely**
13:9

**closing**
71:1

**Coast**
18:7

**coerced**
62:16,18

**coercion**
25:3 62:19,21
80:18

**coincide**
20:12

**Cole**
9:6 61:14

**colleague**
9:16

**collecting**
35:9

**color**
102:25

**Combat**
17:8 56:5

90:18

**comment**
85:17 99:11
101:6,9
102:19

**commitment**
22:1

**committees**
22:10

**common**
40:19 41:9,11

**communicated**
27:2

**communication**
35:6 39:18,21
50:10,13,25
52:8

**communications**
29:16 32:11
34:4,5 42:16
44:14,17,19
45:6 59:4
65:20 66:5
95:16

**Companies**
82:22

**company**
46:17 48:22
73:24 80:24
83:5 92:8

**company's**
93:8

**compelled**
79:25 86:9,16
87:11 89:19

**compels**
30:14

**compensated**
33:8

**complete**
37:4 55:10

**completely**
79:19 80:3
98:13 100:2

**compliance**
84:10

**comply**
60:7,8,13
62:20 69:4
84:10

**concede**
12:13

**concern**
67:23

**conclude**
62:9 102:23

**concluded**
106:23

**conclusion**
103:21

**conduct**
69:8

**confer**
96:13

**confined**
11:16

**conflating**
92:1

**conflict**
82:24 83:6

**connection**
48:21 50:17
68:11

**Conservation**
22:15

**considered**
19:5 77:5,8

80:24

**considers**
11:14

**consistent**
90:14 91:6

**conspicuously**
103:14

**consult**
58:11

**consultant**
22:6 77:12,
14,20 78:17
81:1

**consulted**
77:15

**consulting**
22:3,4 23:8,
11 29:2,20
38:2,9,10,17
43:21 44:6
45:7 46:22
55:7,17 58:8
63:20 64:21
77:14,23
78:10,11,24
80:16,17
89:14 92:10

**contact**
45:18 46:10

**contemplated**
45:11

**contemplation**
67:7

**context**
68:20

**continuation**
36:11

**continue**
11:13 84:12

**continued**
96:25

**continues**
43:5

**continuously**
99:21

**contract**
25:13 29:8,11
35:25

**contractual**
44:9

**contradict**
73:4

**contrary**
24:21 73:2
85:21

**contributed**
26:4

**contrivance**
88:3,5

**control**
13:12 20:1
22:22 75:18
78:7,23 79:11
80:18,20
81:13 83:8
90:6 93:1,3
101:16

**conversation**
43:24 53:4,
11,22,24
98:17,21,23

**conversations**
44:19 45:3
52:25 57:25
68:7

**cooperated**
75:12

**copied**
13:19 50:25

**copy**
37:8 50:12
52:14,15
106:19

**corporate**
30:2 39:23
91:8,9 92:24
93:13

**corporation**
92:5,6,19

**correct**
7:12 15:14
25:17 29:3,
14,23,25
30:6,7,17,18,
20 31:10
33:9,12,15,18
35:10 36:1,2,
12 37:19
38:7,17,22,23
39:7 41:10
42:24 43:2,6
45:1 46:13,14
47:3 51:1,5
53:1,18 54:7,
12,24 57:10
58:10 60:2,5
64:4,9,14,19,
22 65:4,9
69:3,7,11,12
72:4 93:5
96:1

**correctly**
25:7 64:2
99:7

**costs**
45:14

**counsel**

14:1 20:3,5,9
23:21 24:21
26:17,22
38:20 41:18,
20,24 44:17
45:10 52:25
53:20 54:23
82:23 95:5,23

**countersignature**
39:1

**couple**
9:12 19:11
22:9 24:4
34:20 35:16
58:15 66:22
75:25 82:19

**court**
7:2,6,14,19,
23 8:2,6,10,
13,20 9:11,
14,20 10:12,
14 11:3 12:22
13:13,15
14:4,10 15:8,
12,16 16:1,5,
7 20:19,20
23:23 24:5
27:10,14,20
28:19 34:22,
25 37:6,11
44:20 51:24
58:13 60:9,15
61:24 63:15
64:1,7,11,16,
20,24 65:6,
11,16 66:12,
17,20,24
68:18 69:14,
20,24 70:10,
19,21 71:7,

15,20 72:4,17
73:8,9 74:4,
16,23 76:9,21
77:10,12
78:25 79:3
80:6 82:1,7,
22 83:2,15
84:2 85:16
86:7,8,9,15,
18,20,23 87:3
88:15,16,24
89:18 91:10
92:14 93:18
94:6,16,22
95:8,22 96:7
97:6 98:5,25
99:23 100:23,
25 101:8
102:9,22
103:10 104:1
105:2,5,17,25
106:4

**Court's**
7:20 11:2
70:22 101:23

**courthouse**
76:21

**courtroom**
10:5,13 27:25
32:22 66:7

**courtroom/trial**
97:19

**courts**
71:13

**cover**
36:14 45:14

**covered**
14:3 49:15

**COVID**
10:4 79:24

**create**
87:15 88:9

**critical**
56:11

**cross**
11:16 94:4

**CROSS-
EXAMINATION**
24:6 27:16

**cross-examine**
14:23 27:11

**Cruise**
74:21

**crystal**
103:12

**cube**
11:7 102:25

**Cuker**
76:16

**curious**
102:23 104:4,
7,23

**current**
75:17,18,21
76:7,11,12
77:3,7 93:7

**customary**
38:13

**cut**
19:13

**Czak**
9:8

———————————
             D
———————————

**date**
13:18 46:4
51:3,24 52:11

**David**
8:18

**day**
92:7 98:23

**days**
21:19 28:18,
19 35:16
81:4,6

**de**
97:9,18 98:19
106:1

**Dead**
72:11

**deal**
83:9 84:8

**dealing**
68:2 78:25
82:5

**deals**
29:21

**decades**
73:7

**December**
31:17,22
32:16,18
43:17 53:12,
16,17,23
54:2,3,6
59:17 90:14
95:20

**decide**
22:20 85:8
86:13 101:11

**decided**
23:14 33:25

**decision**
74:21 76:5,18
96:15 98:7
99:9 101:3

**decisions**
79:11

**declaration**
91:25

**deep**
71:13

**defects**
90:20

**defendant**
9:1 74:25
87:18 88:10
94:22

**defendants**
7:15 8:22
9:3,5,7,9,10
89:6 94:17
96:22 97:24
98:25

**defendants'**
56:25 57:6,11
90:2,3 93:23
94:2,5,11,14,
21 95:6

**defense**
18:6 22:10
46:16 57:19
91:3 95:4

**definition**
72:8 74:18
81:23 85:20

**delete**
23:14

**demote**
78:21

**denied**
88:2

**deny**
104:25

depending
  103:18 105:24

deponents
  74:25 75:2

deposed
  20:10 28:19
  40:4 87:23

deposition
  10:25 14:17
  21:18 39:16,
  22 40:6,11,21
  72:16 76:8,20
  79:15,23
  81:5,25 85:9
  86:5 89:18
  97:9,12
  101:18 103:4

depositions
  20:19 28:14,
  22 39:24 40:1
  56:6 86:10
  89:22 90:12
  91:7 97:18

describe
  85:24

description
  13:20

designated
  80:5

designation
  32:21

detailed
  64:25

details
  56:13

determination
  12:5 79:6

determine
  10:19

determined
  11:3

develop
  22:11

developed
  17:7

development
  90:18

devices
  22:12

difference
  56:23 57:2
  74:5 77:20
  82:11

differences
  91:9,13

difficult
  21:3 22:23

direct
  11:17 16:12
  75:18 94:3,4

directed
  38:2

directly
  64:18

disagree
  91:20

disagreed
  91:6

disclose
  13:21 34:4

discrete
  70:11 71:8

discretion
  70:23

discuss
  13:25 44:8

discussed
  54:11 78:10
  102:11

discussing
  14:1 93:2

discussion
  13:11 31:1
  44:1,3 48:14
  55:16,19 63:4
  68:7 90:10
  93:15 94:7,13
  96:19,22
  97:18 106:6,
  14,18

discussions
  31:24 32:6
  43:19 44:13
  55:6 98:2
  99:9

disjunctive
  72:9

dispute
  11:7 13:22
  14:2 73:1
  83:3 86:1
  105:22

disputes
  89:2 98:10

distinction
  77:18 78:9
  91:8

distinctions
  80:4 83:11

District
  25:20 50:18
  76:3,18 83:13

dive
  71:13

diverged

41:12

docket
  103:14

doctors'
  22:24

document
  13:18,20
  35:3,5,12,13
  36:17 37:15
  41:15 42:3,21
  47:19 49:8,
  19,21 51:8,11
  53:7 58:16
  59:15,25
  61:18,24
  102:4,5,11,15

documentary
  15:2 69:16,22

documents
  12:20 14:2,9
  34:21 35:14,
  15 36:13
  39:17 40:11
  42:5,17 49:9,
  12 52:2 55:10
  69:25 70:4
  71:3 93:8
  95:5 101:22,
  24 102:17

doors
  58:22

doubt
  67:24

dozens
  26:6

drew
  7:16

drive
  7:16

duces
  12:9,12
due
  13:23

_____
          E
_____

e-mail
  32:10 50:13
  51:17,19
  52:11 59:1,17
  60:6 62:7
  95:4
e-mails
  32:4
earlier
  29:1 43:13
  54:9 61:18
  65:19 74:10
  81:20 101:15
early
  54:6 90:12,13
earplug
  17:8 25:12
  50:18 56:5
  73:17
earplugs
  25:10
easier
  102:8
Eastern
  12:21
Ed
  41:25
educated
  93:8
educational
  22:5
effectively

68:14
effort
  24:25 26:23
  87:14 88:6
efforts
  82:17
EHK
  93:21
electing
  74:6
electronic
  50:2 52:15
electronically
  49:5
element
  78:7
elements
  91:5,7
Eleventh
  81:18,20
elicited
  73:3
Elizabeth
  8:3,5,22
  15:5,12,15
  16:6,7,13
  23:18 30:23,
  25 34:3 43:25
  59:24 60:16,
  18,21 61:22,
  25 62:1
  63:13,15
  65:13,14
  66:13,15
  69:17
Elliott
  16:4,9 50:17
  72:19 73:5
  83:1

Ellis
  21:10 29:19,
  20 30:1,9,19
  31:19,25
  37:25 39:6,
  13,19 40:5,
  18,25 41:2
  43:4,8,20
  44:4,5,10,14
  45:6 46:13
  47:9 53:1,5,
  20,23 54:1,
  15,23 55:3,16
  64:22 65:3,8,
  20,22,25
emergency
  96:5
eminently
  49:7
employ
  78:17
employed
  36:24 74:25
employee
  29:6 75:11
  77:7,9,13,21
  78:23 80:20
  92:10 93:7
employees
  75:17,18,21
  76:7,11,12
  77:3 78:20
  93:13
employees'
  82:23
employer
  75:2
employment
  23:17 42:12
  46:16

enable
  22:20
enclosure
  50:21
end
  18:15 19:18
  71:16 90:5
  92:6
ends
  10:23 21:19
  22:16
engaged
  68:1
engagement
  26:17 67:3,10
  87:10,15
  99:22
enjoy
  19:12 22:8
  87:13
entered
  30:8 36:6
entice
  75:20
entitled
  12:24
ENTS
  97:22
Eric
  46:10 50:14
  62:7
error
  67:9
esse
  97:9,18 98:19
essential
  12:24
essentially

14:8 82:14
89:8 91:24
92:11 93:4

**established**
26:16 29:21

**et al**
7:7,8

**Eve**
100:16

**Evenflo**
73:24

**evening**
35:7 57:13

**evenly**
55:1

**event**
23:20

**events**
23:4

**eventually**
85:14

**evidence**
10:22 12:5
14:24 15:2
37:13 69:16,
19,22 70:1,13
71:10,15 72:3
73:2 82:12
103:18

**evident**
89:20

**evidentiary**
10:24 11:5
70:2

**exact**
81:6

**examination**
12:8 14:21

15:6,11,13
16:12 37:3
60:20

**examined**
33:6 54:22
55:2

**examines**
57:3

**exceedingly**
19:25

**exception**
81:11

**excess**
21:17

**exclusion**
75:3

**exclusively**
80:8

**excuse**
32:20 55:10
57:10

**exempt**
36:10

**exercise**
87:8

**exhibit**
37:3,7,12
59:16

**exhibits**
69:25

**exists**
41:10

**expedite**
106:13

**Expedited**
106:10

**expenses**
38:14

**experience**
68:11

**experienced**
25:4

**expert**
22:6 29:19
32:16,20
38:17 40:4
79:1,3,10,16,
19,20 80:6,7,
11 97:21
98:19 99:14

**expertise**
80:13

**experts**
32:1 66:6
99:3

**expires**
29:13

**explains**
36:17

**explanation**
18:9

**express**
25:2

**extended**
18:7

**extensively**
26:3 56:5

**extent**
25:24 26:1,2
44:16 88:12
106:12

**extract**
27:1

**extracting**
26:24

**extricate**

48:12 62:14
64:3 67:11

_____

**F**

**face**
24:12 83:4

**faces**
31:3

**facilitate**
75:4

**fact**
14:6 32:17,18
67:24 74:20,
25 75:9,10,
11,12,16
79:19 80:7,8,
13 81:8 82:7
84:21 90:16,
20 91:10
97:21 98:20
99:13 105:8

**factor**
82:12 92:6

**facts**
20:17 77:7

**fail**
24:24

**fair**
11:24 12:1
87:18 101:22
102:9 105:25

**fairly**
55:1 70:11

**fairness**
102:18

**fall**
20:15 31:21
95:19 96:10

Judge Gary Jones
December 29, 2021

13

false
   88:14
familiar
   49:7 51:17
   52:7,21
family
   18:7 22:21
   23:5 85:23
   86:5,8
feature
   9:24
fed
   94:24
Federal
   10:22 71:14
   73:25 76:5
fee
   38:13 59:10
feel
   17:13 25:2
   68:3
feels
   87:10
fees
   48:20,23
   64:11,13
   67:20
feet
   71:20
fell
   18:5 19:6
felt
   26:20 62:16,
   18
fight
   34:8
file
   70:7 71:17,21

72:1 100:9
   102:19
filed
   11:11 13:15
   14:4 73:18
   78:13 88:1
   105:15
filing
   71:1 84:11
filings
   103:11
financially
   24:23
find
   78:14 81:11
   103:19 104:4,
   23
fine
   12:14 17:10
   76:22 106:17
finish
   47:18 70:8
Finley
   53:12,14,16
   61:10
fire
   71:20 75:19
   78:21
firm
   38:20 61:14,
   16
flatly
   100:2
floating
   98:6 99:24
Florida
   25:19,20
   50:19 63:1,7,
   9 72:21 77:25

82:3
focus
   16:24 56:16
   90:23 91:11
   101:4 102:14
focusing
   91:12
follow
   60:10
follow-up
   52:25 53:8,19
   60:16 65:12,
   15 66:13
Foods
   76:2
force
   18:12 25:1
forced
   17:13
forcing
   69:1
forget
   105:11
forgot
   47:18
formal
   13:14,17
forty
   105:10
forward
   14:7,12,21
   23:1 34:13
   57:24 63:20,
   24 67:16
   96:14 97:18
   98:2
found
   68:6 73:25

76:4
fountain
   78:12
four-page
   49:11,12
frame
   48:15
framed
   68:18
frankly
   12:1 72:5
   80:12 84:20
free
   10:16 11:15
Friday
   53:9 71:22
   106:16
friend
   85:23 86:2,7
friendly
   75:10
friends
   86:4 103:25
front
   35:3,23 37:24
   39:11 49:24
   51:17 58:23
   59:2 84:24
   87:21
full
   37:3,8 105:7,
   25
fully
   97:11
furnished
   79:3
future
   23:2 55:15,25

87:16 97:13
99:12

---

**G**

**Gainesville**
7:17

**gamesmanship**
11:25 12:2

**gap**
95:13

**gave**
18:9 92:12
104:1

**general**
13:20 39:25
41:11 61:4
97:21,22

**get-go**
87:14

**give**
10:23 14:25
15:22 32:13
39:16 42:4
71:2,17 74:10
75:25 83:18
100:9,18,25
102:19

**giving**
40:11 72:1
103:16

**goal**
87:14

**goals**
21:2

**God**
15:24

**Goldstein**
7:11 10:10,11

34:23 50:22
58:11

**good**
7:3,4,5,14,23
8:1,5,6,11,
14,16,18,25
9:2,4,6,8
16:14,15
34:25 66:12
71:22 83:4

**government**
90:19

**grandkids**
22:21

**granting**
103:7

**great**
61:25 79:5
83:25 102:15

**Group**
94:12 97:16,
17

**grown**
68:17

**guards**
85:1

**guess**
7:16 14:16
70:14 94:22
95:19 97:9
105:6

**guidance**
42:4

---

**H**

**H-A-D-J-I-H**
73:24

**Hadjih**

73:23

**Hamer**
36:25 37:17,
20

**hand**
15:20 92:19,
20

**handed**
57:13,17

**handle**
15:10

**handling**
15:5

**hang**
83:24

**happen**
13:22 34:15
45:13 64:6
85:7 91:21

**happened**
90:2,3 104:4,
14

**happy**
70:20,24 78:2

**hard**
81:11 103:3

**Harris**
16:4,9 41:25
42:1,11,14

**Headnote**
74:5

**hear**
27:18,19 28:4
61:5 70:12
71:10 86:21
88:17

**heard**
58:18 71:9

81:9

**hearing**
10:1,2,19,24
11:5 14:7,12,
13 17:10
22:11,15 52:3
68:19 70:2
72:14 85:11
101:4 106:23

**hearsay**
91:15

**heart**
94:24

**held**
76:10

**helped**
41:2,5

**helpful**
14:12 71:8,15

**hesitating**
70:3

**hide**
84:14,25

**hiding**
84:21

**high**
34:11

**hire**
41:20 75:19
85:1

**hired**
33:14 48:9,12
82:14 93:8

**hiring**
20:4 26:18,19
45:10 64:2
84:8 85:4

**Hoekstra**

7:5,11,13
10:9 12:11,16
13:2 14:10,25
27:11,13,17,
22 30:25 31:5
34:7,17,23
35:1,19,21
36:3,5 37:2,
8,14,16 39:8,
10 41:14,16
42:20,22
44:18,23
47:24 48:1
49:1,4 50:7,9
51:7,9,25
52:6 58:11,14
60:14,15
61:21 65:12,
14,16,18
66:10,12
69:21 70:3
73:3 86:21
88:17,19,25
93:5,21 94:7,
19 95:3,9
96:1,10 97:14
98:15 99:7,
15,18 102:12
106:20

**Hoekstra's**
34:6 63:18
101:21

**hold**
24:11 61:21
75:20

**holding**
76:14

**holiday**
71:22 106:12

**home**
16:17 58:19

83:25 84:1,2

**Honestly**
81:18

**honesty**
89:13 90:19
98:22

**Honor**
7:4 8:1,5,11,
14,16,18,25
9:2,6,8,13,15
12:16 15:4,15
23:19 24:2
27:8,13 37:2
60:18 66:15,
18 69:18 70:3
77:22 82:19
86:22,24
87:21 99:5,
17,19,20
101:5 106:3

**Honor's**
24:3

**honorable**
68:3

**hope**
57:23

**hoping**
61:19

**hotel**
83:20,23,24

**hour**
36:20 38:13

**hourly**
36:10,17,20

**hours**
17:17 21:12,
21,23 22:17
28:9,15,21,24
43:8 54:10

77:17 96:3
102:4

**house**
62:20

**hundred**
59:6 74:16
76:9,24 79:25
80:25 81:21
85:13 86:5,12
89:10 91:1

**hybrid**
32:20 80:6

---

**I**

**i.e.**
92:25

**idea**
32:10 43:8
45:9 71:23
81:12 98:14
101:1

**identical**
49:12

**identified**
37:12

**identifies**
13:18

**identity**
75:1

**impact**
45:5 60:4

**impacted**
22:1

**implication**
89:7

**importance**
90:17 102:15

**important**
26:20 91:16
92:6 102:11

**impression**
34:11 56:7

**improved**
22:11

**in-person**
16:25

**incentive**
62:23 63:1,4

**include**
21:2 26:23
59:16

**included**
32:11 95:18

**including**
76:11 82:16

**inconsistencies**
90:15

**inconsistent**
92:22,23
105:9

**inconvenient**
18:5 19:6

**incurred**
64:13

**indentured**
81:12 87:10

**independent**
41:20,23
45:10 54:17
87:8

**independently**
41:19 87:8

**Indiana**
16:17,18

Indianapolis
  16:17,18
  47:6,10 60:24
  61:3 63:11
  72:23 73:6,14
  81:2
indication
  13:4
indirect
  82:12
individual
  37:18,21
individually
  37:5
individuals
  7:20 56:12
  66:7 90:24
information
  12:19 14:11
  77:16
initially
  33:11 47:14
  80:5
inquiry
  75:14
instance
  89:17
instruction
  87:7
instructions
  87:4,5
intend
  60:7 67:13
  69:5 102:4
intended
  19:11 22:18
  23:6,13 67:14
intending

14:20 23:25
intent
  104:15
intention
  22:5 25:19
  26:8,12 58:5
  63:23 68:13,
  15 69:1
Interactive
  76:16
interest
  22:21 26:21
  29:10 40:19
  41:9,11 68:17
  75:1 83:6
interested
  10:2 22:4
  56:1 77:4
interesting
  74:2 92:15
  103:19
interests
  20:7,11 41:12
  67:22,25 68:1
  78:8
interfere
  23:2
interfered
  22:23
interfering
  56:21
interpretation
  72:6 105:7
interpreted
  71:13
interpreting
  73:20 74:24
interrupt

77:10
interruption
  9:18
interviews
  68:6
intrusive
  23:5
invoiced
  46:4
invoices
  45:24,25
  46:2,11 64:17
involved
  12:1 17:7
  18:4 19:4,6
  20:10 21:3,21
  22:9 27:5
  28:18,21
  31:2,6,12,15,
  20 33:23
  41:13 42:18
  56:1,3 87:11
  94:25 95:17
involvement
  20:15,24
  22:13 23:3
  27:1 29:22
  44:10 64:4
  68:17
irrelevant
  75:15 104:19,
  23
issue
  10:18,24
  11:21 12:9
  13:7 14:14,15
  15:3 34:18
  66:11 68:18,
  24 70:11 71:8
  72:5,6 73:9,

22,23 76:6
  79:19 83:5,7,
  9 85:7,12,18
  88:19,21
  92:17 99:8,14
  100:10 101:4,
  16,19 103:17
  105:21,23
issued
  96:11 97:1
  103:6,7
issues
  12:11 22:5
  74:4

---

J

January
  11:9 29:13
  59:20 60:1
  89:1 100:14
  101:2
Jeff
  36:24
Jeffrey
  37:17,20
Jennifer
  7:10
joint
  46:15
Jones
  25:23
Judge
  11:5 25:23
  66:25 69:13
  88:2 96:23
  98:6 100:3
  105:12 106:2
judgment
  87:9

**June**
  17:22,25  47:3

**jurisdiction**
  73:12  75:8,24
  76:4  77:1,9
  84:19

**JW**
  61:11

---

**K**

**Kasdin**
  9:3

**Kelly**
  8:8

**Kim**
  9:10

**kind**
  98:20

**Kirkland**
  13:5  21:9
  27:5  29:19,20
  30:1,9,19,24
  31:19,25  32:6
  33:24  37:25
  38:12,22
  39:6,13,19
  40:5,18,25
  41:2  43:4,8,
  20  44:4,5,8,
  10,14  45:4,6
  46:12  47:9
  53:1,5,11,20,
  23  54:1,14,23
  55:3,16  58:1,
  6  60:23
  62:13,21
  64:22  65:3,8,
  20,22,25
  89:15  90:25

**Kirkland's**
  43:14

**knew**
  17:9  56:4

**knowingly**
  88:4

**knowledge**
  78:12  93:14

**knowledgeable**
  83:4

---

**L**

**Labor**
  76:6

**lack**
  97:8

**large**
  23:13

**large-scale**
  22:10

**largely**
  104:18,23

**larger**
  27:24

**law**
  60:10  69:4
  72:3,6,17
  73:19,20
  74:24  78:6,7
  79:20  80:3
  81:15  85:4
  88:8  91:22,23
  93:5  104:9,10

**lawfully**
  68:14

**lawsuit**
  78:13

**lawsuits**
  73:18

**lawyer**
  20:6  64:8
  82:8,14  83:8

**lawyers**
  10:6,13  60:23
  64:9  65:8

**lead**
  91:13

**leading**
  73:23

**learn**
  57:6  78:14

**learned**
  33:24  64:7

**leaving**
  84:18

**lectures**
  22:5

**left**
  84:5

**legal**
  26:22  40:9
  46:24  55:22
  57:2  82:23
  85:21

**legally**
  82:15

**legitimately**
  14:2

**length**
  67:10

**Leslie**
  97:23

**letter**
  23:16  37:25
  38:6  39:12

**lawsuits**
  73:18

**41:17  47:22,**
  24  48:2,6
  50:23  67:4,10
  85:3  87:10

**letting**
  88:15

**life**
  19:7  23:5
  56:2,21  87:12
  88:7

**likelihood**
  34:12

**Likewise**
  57:16

**limb**
  80:2

**limited**
  11:16  20:20
  37:9  40:10
  88:19  91:12

**Lines**
  74:21

**link**
  12:19

**litigation**
  20:25  21:3,
  13,21,23
  22:6,16,22
  23:12  26:3,24
  27:1,6  28:10,
  22,24  29:22
  30:3  40:5,12
  41:13  42:2,6,
  15  54:10  63:1
  67:15  77:14
  81:9  86:4
  87:12  96:15
  98:3

**live**

7:18 60:24
77:8 88:23
90:16 91:10,
12 96:17
101:13,19

**lived**
16:18 63:11

**lives**
73:5 80:25
81:1

**LLC**
38:3,9,10
44:6 45:7
76:16

**located**
76:24

**location**
65:8

**locations**
61:7

**log**
13:3,6,14,17,
23,25 66:11

**logged**
34:23

**loggerheads**
100:2

**logistically**
99:13

**long**
16:18 63:11
104:21

**longer**
26:7 34:14
41:12 92:9
94:25

**longtime**
75:10

**looked**
49:8 91:22
100:7

**lost**
24:12

**lot**
22:16

**lower**
40:8

---

**M**

**made**
11:4,12 19:25
78:16 79:6
92:8 96:15
99:21 103:6,
12,20 105:1

**maintain**
22:13

**majority**
28:17 54:11

**make**
9:23 12:4
25:7 31:4
35:2 68:7
70:16 72:2
74:16 78:19
79:10 80:19
82:11 88:5
98:7 101:2

**makes**
22:23 75:16
82:4

**making**
9:25 75:7
95:23

**manipulate**
80:19

**mark**
8:25 37:2,6
69:25

**market**
73:17

**Marriott**
61:11

**Mary**
9:10

**mask**
10:16

**masks**
10:5

**massive**
87:12

**materials**
13:9 35:10,11
38:19 70:8

**matter**
11:4,18 14:19
25:20

**matters**
25:13

**Maury**
7:11 35:19
37:14 38:25
39:9 41:15
42:20 49:1
50:8

**Max**
8:8

**Mccombs**
93:25 94:9

**Mckinley**
97:23

**MDL**
50:18 68:11

**meaning**

71:8

**means**
60:24 68:20,
21 71:9 93:16

**meant**
84:3

**meet**
96:13

**meeting**
18:6

**meetings**
38:19

**member**
85:23 86:8

**members**
38:9 86:5

**memoranda**
73:21

**memorandum**
70:21 76:15

**memory**
98:17

**mention**
102:22

**mentioned**
8:22 70:15
74:9 102:16

**mercy**
11:25

**mere**
74:24

**met**
30:23 75:13

**method**
82:2

**microphone**
27:20 49:13,
16

**microphones**
9:23

**middle**
27:23 36:25

**mike**
58:17

**miles**
72:13,20 73:7
74:16 75:22
76:9,21,24
79:25 80:25
81:21 86:6,12
89:10 91:1

**mind**
25:1 35:19
37:14 39:8
43:23 56:11
63:17 67:24

**mine**
10:17 20:12

**minute**
24:11 33:19

**minutes**
13:8

**missed**
37:20

**Mitchell**
9:2,3

**moment**
47:21 59:2
71:11

**Monday**
71:21 100:18,
20 102:14
105:19

**Montero**
53:16 61:10

**months**
23:3 29:7,13

32:7 43:11
48:17 67:5,7,
13 89:4 98:18

**moot**
101:15

**morning**
7:3,4,5,14,23
8:1,5,6,11,
14,16,18,25
9:2,4,6,8
12:6,19 13:9
16:14,15
25:24 52:2
70:5

**motion**
11:11 14:4
84:11 88:1
89:12 90:11
96:4,12
104:25 105:15

**motions**
73:22 89:25
90:1,2

**motives**
104:22

**move**
26:6 36:3
49:16 80:17
96:14

**moved**
76:25 97:3
98:2

**moves**
67:16

**moving**
49:13 97:18
98:3

**multiple**
56:19 57:25

84:17

**mute**
9:23

**Myers**
96:17 97:24

___

**N**

___

**names**
61:15 95:21

**narrow**
10:18 72:5

**National**
22:15

**nature**
25:5

**necessarily**
104:5

**necessity**
94:18

**needed**
20:6 23:14
81:25 103:24

**needle**
80:17

**Neil**
8:14

**never-ending**
90:11

**night**
12:18 13:10
34:20

**noise**
9:25

**Nomellini**
8:25 9:1

**nonetheless**
95:23

**nonissue**
11:22

**nonparty**
24:16

**nonpersonal**
91:4

**North**
19:8,9,11

**Northern**
25:20 50:18
76:3 83:13

**notes**
98:17

**noticed**
67:3,9

**November**
18:20 31:16,
21 32:16,18
43:16 52:11,
13,19,21 53:9
57:5 87:24
95:20

**novo**
106:1

**nuance**
83:18

**number**
20:13,18,20
27:4 32:14
81:6

**numerous**
20:23 27:4
28:14

___

**O**

___

**obey**
60:10

**object**

Judge Gary Jones
December 29, 2021

20

44:16

**objection**
86:11 96:5

**objects**
103:13

**obligate**
21:10

**obligation**
21:11 74:15

**obliged**
69:6

**observing**
9:22

**obtain**
41:18

**obtained**
93:19

**occasional**
29:16

**occasionally**
52:25

**occur**
44:1 89:25

**occurred**
47:7,11 89:3,
12 96:23

**occurring**
65:22,25

**October**
23:8,10,17
25:8 29:1
31:13,21
32:15,19,23
39:12,19
40:24 43:9,
10,16 44:2
51:18,25
57:21 63:20,

24 94:24
95:13

**offer**
62:25

**offered**
46:15,23
62:22

**offering**
72:16

**office**
47:5 58:22

**officially**
81:19

**ongoing**
13:4 22:10
48:9,13 50:17
89:12 90:23
93:15

**open**
13:7 59:2
66:11

**opinion**
80:7

**opinions**
97:22 98:1

**opportunity**
11:20 13:24
15:1 19:12
27:8 88:9
100:9 102:19
106:1

**oppose**
105:9

**opposed**
75:8 85:25
90:1

**opposite**
77:22

**option**
103:19,25

**order**
13:6 21:20
84:12 87:17
96:22 101:23
103:6,7 105:4

**ordered**
66:21 96:12

**orders**
24:3 104:24

**organizations**
22:14

**original**
30:11 42:7,8
49:19 73:21,
22

**originally**
56:3 100:12

**overcome**
78:8

**Overholtz**
8:14,15

**Overruled**
44:20

**overture**
99:21

---

**P**

---

**p.m.**
106:23

**pace**
98:3

**pages**
12:18 35:7
36:9 37:3
47:19 49:2,
19,20

**paid**
28:10,12,23
51:4 59:10,13
65:2 67:20
77:16 88:13

**Palanki**
96:16,17

**paper**
37:9 52:14

**papers**
49:15 58:23

**paragraph**
39:15 40:9,17
48:17

**pardon**
25:6 26:16
87:23

**part**
62:2 67:8
70:1 75:14
78:2 85:11
88:20 90:9
93:14 95:24
96:10 98:16
99:25 101:25
103:21 104:17

**partially**
86:25

**participate**
19:13 26:7
38:19 88:4
97:11

**participated**
26:3 35:9
57:22 79:4

**participating**
18:6

**participation**
62:9 68:12

parties
33:5 76:19
80:14 86:4
94:1 95:16
96:12,20
97:5,8 98:8,
12 99:15
105:25 106:11

parts
78:5

party
14:17 30:13
72:16 77:5
80:12 83:20
92:20

pass
21:1

past
17:2 32:6
35:15 43:11
54:10 69:9,10
79:7

pay
38:13 40:15
59:6 68:5
82:22

paychecks
29:15

paying
20:7 45:22
55:22 64:13
68:8 82:7,14,
20 90:6,7,8

payment
17:17 28:13
48:22

PDF
36:4 38:24

pending

15:22 50:18
88:22

Pensacola
25:19 57:13
89:10 91:1

people
9:21 75:18,19
77:4 84:20

percent
59:6

percolate
105:22

perfect
106:17

perfectly
76:22

performance
79:7

period
71:17

permissible
82:15

permission
7:20 11:11
103:7,10
104:2

permitted
92:17

person
65:2 83:2
86:6 99:6

person's
84:3

personal
39:22 40:2
45:5,15 55:22
92:1

personally

82:10

Personnel
35:22

perspective
11:2,23

pertain
25:12

pertinent
88:21

Ph.d.
18:6

Philip
7:24 9:15
30:23 36:14
66:19 99:19

Phoenix
83:12

phone
59:1,3

picks
56:15

pin
98:20

pincite
74:22

Pirtle
8:16,17

place
17:22 29:23
34:16 38:22
40:25 60:24
61:2,10 63:2
72:14,20
75:23 95:1
97:19 103:3

plaintiff
8:8 47:15
55:16 87:18

88:9

plaintiffs
7:10 8:12,15,
17,21 11:9,
11,25 13:24
14:8,22 15:2
18:18 20:2
33:12,17,25
54:23 55:2
56:12 57:14,
18 60:13
69:21 70:25
79:5,12 85:25
89:5 91:11
94:2 95:11
98:13 101:11
104:2,3

plaintiffs'
23:20 37:6,12
56:24 61:16
82:17 90:1,17
93:22 94:11
95:4 96:16
102:14 103:7

plan
54:8

planned
22:3 57:15,16

planning
31:1 53:22,24

plans
21:5 22:23,24
23:3 60:4

play
85:9 93:12

played
86:10

pleased
62:11

podium
  10:14 27:15
  70:18

point
  11:6 12:4,10,
  22 14:5 30:15
  31:9 32:20
  41:7,9 45:12
  54:22 59:9
  60:6 80:15
  88:3 95:21,23
  96:2 98:4,14
  100:4 101:21
  103:20

pointed
  88:20 99:7

points
  38:5 42:2

pop
  9:25

popping
  31:3 85:13

portion
  23:13

posed
  87:1

position
  85:22

positions
  70:14

possibly
  10:22 105:12

posthearing
  100:10

posttrial
  70:21 71:5

potential
  23:1 32:5
  64:8 82:24

98:9

potentially
  71:2 99:1
  101:10

power
  73:8 86:18

practical
  11:18 14:19

practice
  81:9 89:12
  90:11 96:12

precisely
  32:22

predated
  94:23

predecessors
  75:11

preface
  79:18

prefer
  83:1

preference
  55:14

preliminarily
  11:3

preliminary
  99:9

premise
  103:2

prep
  28:16

preparation
  28:12 31:6,
  12,15,20,25
  32:1 43:7,15
  54:12,14,18
  58:24 65:3

prepare
  26:9 38:18
  41:2,5

prepared
  30:21 42:14
  75:13

preparing
  33:8 40:10
  63:19 100:17

prerogative
  24:9,17

presence
  75:4

present
  7:9,21,24
  8:23 10:25
  14:24 15:1
  17:11 20:17
  34:14 47:5,9
  60:23 61:12
  65:9

presented
  12:5 72:3
  103:18

presenting
  22:4

president
  38:8 76:20,22
  77:3,6 80:23

pretty
  10:6

prevent
  75:21 104:20,
  21

preventing
  55:24

previous
  16:24 89:21

previously
  16:10 50:11
  73:10

principal
  20:11 22:13

prior
  20:9 22:23
  43:15 46:16
  57:5,7 80:15
  90:21 94:8
  97:16 102:3
  104:24

privilege
  13:1,2,3,4,6,
  14,17,21,23,
  25 14:3,9,14
  32:5 44:14
  66:11

privileged
  34:4 45:6

proceed
  15:9 16:6
  71:23

proceeding
  99:25

proceedings
  7:1 17:12
  48:13 62:14

process
  56:2 57:3
  74:12 84:17,
  18 96:14

procure
  72:22 73:11
  74:6 84:3
  85:5 92:24

procured
  72:16

procurement

82:13

**procuring**
74:5,14 75:3
77:19 83:11
104:5

**produce**
102:4

**produced**
12:25 13:16,
23 51:11
101:25 102:18

**producing**
40:11 101:22

**product**
17:9 21:25
90:22

**production**
34:19 35:7,10
49:10

**professional**
22:17 23:4,
13,15

**project**
22:10 42:17

**promote**
75:19

**prompted**
105:8

**promptly**
105:20

**prongs**
74:8

**proposition**
75:5 77:2
79:20

**protection**
22:11

**protective**

84:12

**protector**
17:10

**protocol**
9:21 10:4
11:12 96:13,
20,25 97:5

**protracted**
21:3 26:24

**provide**
35:15 39:17
40:9 41:23
70:21,24
82:17 102:3

**provided**
13:3,10
35:11,14
36:14 45:22
64:17 65:1
66:6 69:10
72:3 77:15
91:23 95:5

**providing**
35:9

**pull**
27:20 34:19
59:15 61:19,
24

**pulled**
33:17

**puppet**
78:19

**pure**
79:1

**purpose**
20:4 26:19,25
78:17

**purposes**
40:10,20

68:18 93:1

**push**
71:25

**pushback**
62:12

**pushed**
80:12

**put**
52:5 71:20
73:17 81:22
97:6 98:20

**puts**
89:22

**Putting**
98:20

---

**Q**

**quash**
33:14,23
84:11 89:25
96:4 97:3

**question**
10:7 11:15
12:15 33:20
44:7,21 50:1
52:3 63:22
67:23 72:17
73:11,19
78:5,6 81:16
82:25 90:15
94:3 97:6
98:12

**questions**
11:17,20
14:21 15:6
16:24 20:23
23:20,22 24:1
26:5 27:9
34:6 47:13

56:13,15,18
58:15 59:7,23
60:14,17,22
63:14,16,18
65:15 66:10,
13,22,23
72:18,19,25
73:2 86:25

**quick**
52:3 58:15
74:11

**quickly**
84:5

**quote**
80:6

---

**R**

**radar**
102:17

**raise**
15:20

**raised**
10:25 13:1,3
14:9 99:8

**Raleigh**
19:9

**range**
55:5

**rate**
36:17,20

**reach**
12:4

**reached**
45:13 95:22
100:2

**reaction**
105:16

**read**

51:16 52:9
105:3

**reading**
104:24

**ready**
26:6 64:5
106:8

**reason**
34:8 64:2
71:5 73:13
78:11 79:5
81:23 85:19
89:11 90:9
105:1

**reasonable**
49:24 52:22

**reasoning**
79:9

**reasons**
68:2 82:19
97:2

**recall**
17:21 32:19,
22 33:23,24
39:18 57:21
61:14 95:21

**recap**
53:4,19,22,24

**receive**
17:17 19:9
65:21,24 66:2
102:13 105:19

**received**
12:18,19
13:19 19:7
28:13 34:19
35:6 37:12
49:10 70:1,5

**recent**

32:15

**recollection**
33:22

**recommendation**
100:17 101:3
105:21,24

**record**
16:2 87:16
97:20 106:6,
14,18

**recorded**
56:9 81:8
87:20,25 88:1
97:4

**recording**
87:22 96:14,
21,25

**RECROSS-
EXAMINATION**
65:17 67:1

**recurring**
85:18

**redirect**
23:24 60:20

**referral**
64:8

**referred**
11:4

**referring**
46:19 54:4,5
58:6

**refuse**
18:25 19:3
25:24,25 26:1

**regard**
10:4 12:12
61:4 85:5
98:8 101:3

**rejected**
100:3

**relating**
53:23

**relation**
28:24 35:16
38:16 39:21
42:6 43:20
46:16 48:9
54:10 55:6
59:19 89:4
90:20

**relationship**
25:9,11,12,
14,15 29:18
30:5,9 39:5
44:5,9 58:8
68:8 90:19,24
92:11

**release**
101:11

**relevant**
104:19

**rely**
104:10

**remember**
18:19 60:25
76:23 81:6

**reminder**
34:3

**remote**
11:10 60:24
61:2 65:8
73:9 82:18
89:1 98:11
103:9,11,13

**remotely**
15:17 65:2,7

**remove**

10:16,17

**Renee**
9:4

**rep**
91:9

**repeat**
24:15 44:21
53:25 67:8

**rephrase**
44:21

**reply**
102:20

**report**
79:3 100:17
101:3 105:20,
24

**reported**
37:21

**reporter**
10:14

**reporting**
36:24

**reports**
38:19

**represent**
42:1 64:2
82:8,20 85:4

**representation**
30:2 40:10,15
43:4 45:19
46:5,23,24
48:21 50:5,16
55:20,23 58:9
64:21 67:20,
25 82:9 89:16
105:1

**representative**
30:3 39:23
89:23 91:8

92:21,25 93:6

**representatives**
61:15

**represented**
7:24 40:5
52:20 89:17
100:13

**representing**
26:20 28:7
33:16 55:23
67:18,21 90:8

**request**
101:6 103:15,
20 105:10

**requested**
35:14

**requests**
89:23

**require**
68:23,24,25

**required**
21:22

**requirement**
77:24

**research**
22:10

**researched**
79:18

**reserve**
23:19 70:7

**reside**
63:6 72:19
76:24

**resided**
63:9

**resides**
73:6

**resignation**
23:16

**resist**
82:10 104:3

**resisted**
103:9

**resisting**
82:16

**resolution**
99:9

**resolved**
105:23

**respect**
26:15,17,18
32:22 50:16

**respective**
70:14

**respond**
102:6

**responding**
40:20

**response**
12:18 63:18

**responsibility**
64:12

**responsible**
48:22

**result**
79:16

**retain**
68:5

**retained**
20:3 31:9
32:7 40:4
42:1 44:25
51:4 95:2,8,
9,12,15

**retaining**
26:25 44:4,8

**retention**
38:16 41:19
44:15 45:4
48:2,5 50:23
82:9

**retire**
22:3

**retired**
16:20 21:1
46:15,18 77:9

**retirement**
21:2,5,25
22:2,18
37:18,22
46:25 86:14
87:13

**return**
19:13

**returned**
48:6

**reunion**
18:8

**reverse**
62:17

**review**
13:4 35:12
38:19 41:18,
20 42:5,11
48:5 66:2
89:21 106:2

**reviewed**
32:5

**reviewing**
13:16 49:24
71:4

**revolve**
56:12

**road**
14:13 100:5

**rock**
103:3

**Rodgers**
11:5 98:6
100:3 106:2

**role**
48:9

**roll**
7:9

**Ronald**
7:7

**room**
52:15 59:25
61:11,12
83:20,23,24

**routinely**
82:22

**Rubik's**
11:7 102:24

**Rucker**
46:10 50:14
59:24 62:8

**Ruebsamen**
9:16

**rule**
10:22 14:4
71:14 72:8,12
73:8 74:24
76:9 79:9
82:17 86:19
89:1,9 94:8
96:11 103:8,
17 104:8,25

**ruled**
81:19

**rules**
10:22 71:14

76:5 85:20

**ruling**
103:16 105:8

**run**
90:5

---

**S**

**safe**
28:23

**safely**
71:25

**saved**
17:10

**schedule**
84:23

**scope**
82:8

**screen**
24:12 27:23,
25 28:3 31:4
34:24 35:3,6
36:25 37:24
39:11 45:12
47:21 61:18
69:24 102:17

**scroll**
50:22 51:12
62:2

**scrolled**
49:8,18

**seat**
7:2

**Secretary**
76:6

**section**
41:17

**select**
45:15

**self-evident**
73:13

**Seller**
35:22

**selling**
90:21

**seminars**
22:5

**send**
74:10

**senior**
36:24

**sense**
11:21 78:16
83:18

**sensitive**
100:12

**separate**
20:3,5 41:18

**September**
31:7,21
32:15,19,23
36:7 43:16
57:21 95:7

**series**
32:4

**servant**
81:12 87:11

**serve**
80:11 84:16

**served**
60:12 84:15
85:1

**server**
74:12

**service**
84:25

**services**
23:17 45:22,
24,25 64:18

**set**
10:18 18:20
24:12 97:17

**setting**
97:19

**sever**
25:8

**severed**
25:13

**share**
17:9 34:24

**ship**
22:19

**short**
7:16 19:13
68:25 70:21

**shortly**
29:12 34:16

**show**
14:18 82:1
83:10 86:15

**showed**
57:12

**showing**
11:4,12 53:7

**shows**
70:13 87:10

**side**
20:13,14
24:20 28:3
70:12 71:17
85:24 94:6
100:9

**sides**
12:2 33:7

**71:10 97:11**
98:18 100:3

**Sierra**
30:23 43:25

**signature**
39:2 42:23
49:3,20,21
50:2

**signed**
48:6 49:5,12
67:4

**signing**
42:19

**similar**
53:11 71:1

**simple**
72:5 73:19

**simply**
73:1 75:9
77:6 78:4
79:10 80:23
81:14

**simultaneous**
71:1 102:2

**single**
56:14 57:25
83:2

**sir**
7:13,22 28:1,
5 32:8 42:8
43:11 44:11,
24 46:20
49:22 55:9,12
94:19 100:24

**site**
80:25

**sitting**
40:20 83:1

situation
  77:21 80:23
  82:5 83:17
  85:2 86:16
  92:13
situations
  20:10 65:6
  86:6
slightly
  36:10
Sloan
  7:7 8:12
  10:19 59:20
  85:8 88:21
  101:10,20
Sloan/wayman
  11:19 56:18
  100:14 105:22
small
  27:23 56:14
Smith
  9:4
Society
  22:14
soldiers
  17:11
sole
  26:21 82:8
solely
  20:6 67:25
solemnly
  15:21
Sooner
  52:5
sort
  25:2 69:9
  80:18 97:10
  99:10 100:10
  102:23 105:16

sought
  26:22 87:19
sound
  52:21
sounds
  52:22 53:18
space
  27:24
speak
  9:22 99:6
speaking
  9:24
specific
  46:9 97:22
  98:1
specifically
  91:5,13 98:8
  99:2
speed
  26:13
spell
  16:3
spend
  19:11 21:23
  22:20 23:4
spent
  17:17 21:13,
  16 28:9 54:9,
  12,14,18
split
  28:3 55:1
spoken
  32:1 43:14
spot
  97:7
spotlight
  9:24

spouse
  86:2
spring
  85:12
squint
  52:15
squinting
  59:25
stand
  55:3 64:20
  75:5 77:2
  96:3
standard
  74:3
start
  16:25 17:8
started
  52:3
starting
  47:2
starts
  40:18
state
  7:18 16:2
  19:8
stated
  27:4
states
  30:12 38:18
  72:15
status
  39:22
stay
  83:23
Stelling
  53:17 61:10
STENOGRAPHER
  106:9,15,19,

22
Steven
  9:8
stick
  7:16
sticks
  75:20
stooge
  88:13
stop
  23:11 29:13
stopped
  23:7 90:21
stops
  82:3
Stores
  76:16
story
  17:9 20:16
  56:4
strategies
  104:22
struggling
  99:16
student
  22:9
students
  22:8
studies
  38:18
subject
  61:19 73:8
  75:17 81:25
  101:10
submit
  63:23 69:16,
  23

submitted
43:12 45:25
46:12

subpoena
12:9,12 13:13
19:24 24:18
25:25 27:3
33:15,18 34:9
35:16 40:20
55:15 57:7,
13,17 59:19
60:7,9,11
68:24 73:8
79:12 82:2
84:15 85:2
86:9,17,18
88:22 89:5
90:1 93:22
94:8,10,18,21
95:24 96:2,3,
6,7,24 97:1
98:10 101:12
103:5,10

subpoenaed
18:18 19:21
20:1 24:9
26:8,12 32:25
33:2,11 39:16
47:14 48:10
57:14,20,21
69:2 73:15
84:10 85:6
88:24,25
93:17 94:6
100:14 105:14

subpoenas
20:2 59:14
60:12 62:19
89:4,25 90:3
96:11

subsequent
20:21

substance
31:1 43:23
44:17

successfully
93:19

suddenly
97:14

sufficient
11:12 87:16

suggest
67:6 101:15

suggested
45:20 88:12
99:20

suggesting
101:14

suggestion
67:19

summarily
88:2

summer
29:21

super
100:12

superdeposition
97:10

support
26:2 62:9
70:14 79:20

supporting
22:8

supportive
62:13

suppose
67:19

supposed
21:24 79:23

surprise
19:7 57:6,12

surprised
102:7

surrogate
97:12

suspect
60:9

suspenders
96:8

swear
15:17,18,21

switch
47:20

sworn
16:10

system
29:7

———————

T

table
56:20 99:2,4,
24

tacit
25:3

taking
63:2 97:19

talk
98:21

talked
81:20

talking
24:13 59:5
61:7,9 91:19
97:15 99:2,3

talks
67:4 74:2

tasks
38:20

taxicab
74:13

team
17:7

technical
34:18 36:24

technicalities
57:2

Technologies
83:12

tecum
12:9,12

telling
14:10 43:23
49:18

tells
84:20

Tenth
73:24 74:20
76:10 81:17

terminable
78:1

terminate
20:24 21:4
25:8 68:16

terminated
23:7 25:11
29:2,24 30:5,
12,13,16

terminating
55:17,19

termination
29:8 43:20
51:21

terms
  25:18 32:6
  41:19 43:7
  89:9

test
  75:17 80:18,
  22

testified
  16:11 17:14,
  19 41:6 47:2
  52:20 53:16
  54:22 57:6
  64:25 65:7
  80:8 81:4,7
  89:18 93:21
  94:1,5,10,14

testifies
  89:5 101:16

testify
  17:2,5,13,25
  18:3,10,12,22
  19:14 21:6,10
  25:3,21 26:13
  32:25 33:2,5
  47:15 52:16
  55:15,24
  57:16 60:7
  72:24 76:7
  77:25 79:14,
  23 82:4,13
  83:19,21
  84:13 86:5,
  14,15 87:24
  89:8,24 93:9,
  17,23 95:25
  103:8,22,24
  104:15,18,22

testifying
  16:16 17:18
  18:15 19:18
  32:12,16

56:24 57:15
58:20 61:13
73:12 75:8,24
83:2 85:25
96:1

testimonial
  15:1 69:16,22

testimonies
  90:13

testimony
  11:1 13:12
  14:17 15:21
  16:25 19:24
  20:22 25:23
  26:9 28:13,16
  30:21 31:7,
  13,16,20,25
  32:2,11 33:9,
  11,15 34:9,12
  39:16 40:2
  41:3,6 42:14
  43:16 47:7,
  10,14 52:24
  53:3,4,12,20,
  23 54:2,3,12
  56:8 57:23
  58:24 59:9
  60:1,23 61:2
  64:1 65:1,24
  66:3,6,7
  72:20 73:3,9
  75:14 79:6,7
  81:8 82:18
  84:23 87:19,
  22 88:23
  89:1,20,21
  90:12 91:3,4,
  6,11,13,14,17
  92:1,2,4,8,18
  93:13,20
  95:18 97:4,

12,20,21
98:11 103:4

thesis
  18:6

thing
  11:8 74:9,11,
  19 84:13
  102:22 104:19

things
  9:12 22:20,21
  23:16 64:20
  75:4 78:21
  80:19 91:14
  104:12 106:1

thinking
  28:20 106:15

Thomas
  8:16

thought
  9:18 24:2
  97:8 100:12
  104:14

thousand
  85:14

threatened
  24:23 62:16,
  18

threatening
  62:21

threats
  24:25

Tiann
  15:18

ticket
  84:4

time
  18:5 19:4,6,
  21 20:18
  21:18 22:20

23:4,15,19,21
28:10,11,13,
21,24 29:5,
11,17 30:13
31:9 32:24
33:8,16 36:23
42:19 48:14
54:8,11,14,18
55:2,17,20
56:14 57:25
58:2,13 62:8
63:19,23
64:13 65:3
66:10 67:10,
18 68:17,22
70:6 71:17
72:1 87:2,12,
21 90:7 92:10
94:20 100:12

times
  20:20,24 26:6
  27:4 28:19
  47:2 49:13
  56:19 61:15
  64:25 84:17

titled
  53:8

today
  10:19 13:11
  16:16,25 28:7
  30:15,22
  37:10 41:3
  58:24 59:5,16
  62:8 63:21
  67:3 70:9
  88:19 89:8
  92:5 95:6

today's
  37:3

told
  56:5 101:19

tomorrow
  70:22 71:21
  100:16
top
  22:18
topics
  47:20
total
  21:12
totally
  74:18
touched
  43:13
town
  74:14 83:19
  84:5
tracked
  55:4
traffic
  95:4
transcript
  106:7
transcripts
  20:22 32:11
  56:9 65:21
  66:2
transfer
  73:14
transmission
  11:10 82:18
  103:9,11,14
travel
  77:25
traveling
  19:8 82:2
tremendously
  56:21

trial
  11:9,19 16:25
  17:21,25
  18:3,10,13,
  15,23 19:1,
  16,18,23
  20:4,11,22
  31:13 32:25
  33:3,5,9,12,
  18,22 34:10,
  13,16 43:15
  47:3,15 52:17
  53:3,12 57:5
  59:20 60:1
  65:20,21,22,
  24 72:14,24
  73:12,16
  74:12 75:23
  76:25 79:15
  81:25 82:1,11
  83:2,19
  84:15,22
  87:18 89:1
  91:5 94:9
  95:19 97:20
  98:23 100:14
  105:11
trials
  17:3,6,14,18
  18:4 19:5
  21:7 28:18
  31:17,20,22
  32:12,15,16
  41:6 43:17
  52:24 54:3,6,
  21 55:15,25
  56:6,8 57:7,
  20,24 59:9
  61:7,13
  62:16,18,23
  64:24 65:7
  66:8 67:16

  79:7 81:7
  84:16 85:6,
  10,12 87:16
  89:3,21 90:13
  94:13 95:20
  96:11 97:13
  105:12
trigger
  75:2
trip
  18:7 19:10,13
true
  103:5
trust
  49:23
trusted
  68:4
truth
  15:22,23 73:5
truths
  73:4
turn
  93:1,11
  102:25 105:10
turned
  79:5
turns
  102:13
two-month
  95:13
two-pronged
  81:16
type
  13:18 22:1,4
  29:8 42:17
Tyson
  76:2

—————————
      U
—————————

un
  75:6
unavailability
  10:21 11:21
  14:15 15:3
  71:9 90:25
  92:17 98:10
  100:11
unavailable
  10:20 11:2,14
  14:19 71:14
  72:8,13 75:22
  76:12,13,23
  77:8 79:14,21
  80:24 81:1,24
  84:3 85:20
  86:17 88:5
  93:3,12 103:4
uncommon
  82:21
uncompensated
  28:21
understand
  11:23 15:4
  24:8,16,19
  25:7 32:4
  44:7 48:21
  56:23 62:12
  64:1,16 68:20
  69:6 77:13
  89:2 91:2,19
  102:17 104:5,
  16
understanding
  20:17 21:10,
  11 28:6 29:12
  30:8 32:8
  33:17 42:19

43:3 44:22
45:21 46:11
47:16 48:8
50:4 51:3
57:9 95:3
96:5 97:3,16

**understood**
20:17 34:2
35:15 44:24
50:1 58:4
61:9

**undertake**
38:20

**unequivocally**
27:2 69:10

**unexecuted**
50:23

**United**
72:14

**universe**
56:15

**universities**
22:9

**University**
19:8

**unknown**
79:4

**unmute**
97:14

**unsigned**
49:11

**upcoming**
60:1 84:16
99:18

**utilize**
104:2

**utterly**
75:14

—————————
**V**
—————————

**vacation**
82:3 84:20,
21,23

**vaccinated**
10:8

**valid**
64:21

**variations**
56:14

**variety**
97:1,20

**version**
36:10 49:11,
12 50:23
90:18

**versus**
55:2 56:24
91:10

**video**
7:21 19:14
20:22 56:9

**videoed**
57:23

**view**
11:12 104:12,
18 106:1

**viewed**
14:7

**vigorously**
103:9,12
105:9

**virtually**
81:8

**VMWARE**
83:12

**Volt**
23:16 29:2,5,
6,10,14 35:25
36:11,20
42:12 43:20
51:21

**voluntarily**
17:2,5,14,18
18:25 19:16
21:6 24:24
25:21 26:7,11
57:15,16
60:12 79:13
89:6 93:24
94:5

**voluntary**
68:12 69:9
93:20

**vulnerable**
25:2

—————————
**W**
—————————

**wait**
87:2

**waiver**
14:8

**Wal-mart**
76:15

**walk**
58:21

**Walker**
96:24 105:12,
13

**walking**
58:17

**wanted**
12:9 17:8,11
20:12,16
22:20 31:2,4

42:18 52:3
56:4 59:15
76:19 100:1

**Wayman**
7:8 8:9,12,19
10:20 85:8
88:22 101:10,
20

**Wayman's**
59:20

**ways**
72:10

**wearing**
10:5

**weeds**
104:11

**week**
52:19 83:24

**weeks**
19:11 21:16,
17 28:20
73:14

**West**
18:7

**Western**
76:17

**Westlaw**
76:17 83:13,
16

**whatsoever**
87:5

**wife**
19:11 58:21
87:13

**William**
7:8 8:8,19

**willingly**
88:4

**Winsor**
  88:2

**winter**
  95:20

**wished**
  10:25

**wishes**
  62:9,12

**witness's**
  72:15 74:6
  104:5

**witnesses**
  76:11 86:11
  98:20 99:14

**Wonderful**
  28:5

**wondering**
  23:2

**word**
  72:10 97:9

**words**
  26:18 37:20
  64:3 72:23
  74:9

**work**
  23:14 26:25
  28:12,18
  29:5,8 48:8,
  11 54:17
  77:17 81:13
  93:10 99:12

**worked**
  37:18 63:11
  84:23

**worker**
  25:13 29:11

**working**
  20:6 29:10,
  13,16 68:9

  98:16

**works**
  57:3 73:5

**world**
  77:4

**written**
  51:21

_____

**Y**
_____

**year**
  17:25 18:20
  21:16,18 23:8
  25:8 57:22
  68:13 86:13

**Year's**
  100:16

**years**
  21:2,25 48:18
  54:11 67:5,6,
  12,13,15,16
  73:17 81:9
  89:19 90:21

**yesterday**
  101:23

_____

**Z**
_____

**Zimmerman**
  51:19

**Zoom**
  7:21 8:7,24
  9:22,25 10:2
  34:23 47:2,6,
  10 51:12 59:5
  90:16 96:13