# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:19md2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## CASE MANAGEMENT ORDER NO. 35

The Twenty-Second Case Management Conference (CMC) in this matter was held on February 16, 2022. This Order serves as a non-exhaustive recitation of the key points of discussion during the conference.

**I.  Wave Orders**

The Court discussed the timeline of the Wave discovery process. Wave Order #1, ECF No. 2304, was entered on November 22, 2021; Wave Order #2 was entered on February 22, 2022; and Wave Order #3 will be entered in May 2022. Each order identifies 500 cases for Wave discovery. Dispositive motions for cases included in Wave Order #1 are due in July 2022.

The parties have been working diligently to resolve discovery disputes that arise in the Wave cases with the assistance of Judge Herndon, however, there have been scheduling and logistical challenges related to Defense Medical Exams

("DMEs") and depositions.[1] As of February 16, 2022, 32 DMEs had been conducted, 146 had been scheduled, another 171 plaintiffs had been offered dates for their DME, and approximately 30 plaintiffs had failed to respond. Defendants are to provide Plaintiffs' counsel with the names of those 30 plaintiffs. As for plaintiff depositions, 308 have been conducted, 135 are scheduled for February, and 22 are scheduled for March.

The Court also cautioned that it will be monitoring the number of cases dismissed, if any, during the Wave process based on the pattern of dismissals in the bellwether cases. While most bellwether cases did reach trial, eight of them—representing roughly 29% of the bellwether cases—were dismissed either before or during discovery. If that pattern of dismissals holds across the litigation, approximately 80,400 cases could be dismissed before or during discovery. Depending on what happens in the first few Waves, the Court may consider entering an order requiring a threshold level of proof before a case can be selected for future Wave orders.

## II. Transition Orders

The Court entered Transition Orders in August 2021, September 2021, and January 2022, requiring nearly 50,000 cases to transition from the administrative

---

[1] On February 18, 2022, the Court appointed Adriane Theis as Special Master of the Wave process, in part, to oversee the scheduling of DMEs and depositions.

docket to the active docket. *See* ECF Nos. 1876, 1915, 2652. Approximately 84% of cases that were included in Transition Orders #1 and #2 have transitioned to the active docket, and the remaining 16% of cases were either dismissed or were not transitioned. The Court will enter an order dismissing the cases of those plaintiffs who failed to transition to the active docket.

As of February 14, 2022, 16% of the cases included in Transition Order #3 had transitioned to the active docket. This percentage will likely increase as the cases continue to transition in accordance with the order. The Court will enter Transition Order #4 in early March requiring another approximately 25,000 cases to transition from the administrative docket to the active docket. As of February 15, 2022, there were 42,337 cases on the active docket and 234,905 cases on the administrative docket.

The parties are to confer and provide the Court with a list of cases that transitioned to Minnesota state court instead of federal court due to the lack of diversity between the parties.

### III.   Census Forms, DD214 Forms, and DOEHRS Data

The Court expressed concern regarding the 55,119 plaintiffs who have yet to submit a Census Form despite a Court order requiring it. *See* ECF No. 1848. Given that Census Forms are required to facilitate discovery, the Court will enter an order requiring plaintiffs who have failed to timely submit their Census Forms to provide

them by a certain date. The Court will dismiss the cases of plaintiffs who fail to comply.

Additionally, approximately 248,742 plaintiffs have not submitted a DD214 form. The Court will coordinate with BrownGreer PLC to determine how many of these plaintiffs are veterans and how many DD214 forms may have been uploaded as part of a larger file. The Court also intends to speak with the Department of Defense ("DoD") about the process by which a plaintiff can most easily obtain his or her DD214, and based on that discussion, the Court will enter an order requiring all plaintiffs who are veterans to submit their DD214 forms by a date certain.

With the assistance of Judge Herndon, the parties have been coordinating with the DoD to obtain plaintiffs' DOEHRS data. Plaintiffs' counsel and BrownGreer PLC provided the requisite information for 241,000 service members to the DoD in early February. There is no timeline yet for when the DoD will produce the DOEHRS data, but once received, Plaintiffs' counsel will work with BrownGreer PLC to ensure that the information is transferred into MDL Centrality.

**SO ORDERED**, on this 23rd day of February, 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**