# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| This Document Relates to: *Ronald Sloan* Case No. 7:20-cv-00001 *William Wayman* Case No. 7:20-cv-00149 | |

## PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' AND BERGER'S OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 26, 2022 REPORT AND RECOMMENDATION

## INTRODUCTION

Defendants' and Berger's objections to the Court's January 26, 2022 Report and Recommendation ("R&R") do no more than retread well-worn ground, identifying no basis for departing from Judge Jones's well-reasoned decision. As this Court has repeatedly held, Berger is available to 3M in all practical and legal senses, regardless of how Berger now characterizes his preferences. Moreover, Defendants have helped facilitate, and thus indirectly procure, Berger's efforts to evade testifying in Plaintiffs' cases. Because Berger is not unavailable under Rule 32(a)(4)(B), Defendants are not entitled to play his personal deposition testimony. The Court should adopt the R&R and overrule all objections thereto.

## BACKGROUND

Elliott Berger was the primary inventor of the CAEv2, the product at the center of this MDL, the largest consolidated mass tort proceeding in U.S. history.

Dating back to 2013 in the *Moldex* litigation, Berger has repeatedly testified at 3M's beck and call. Since 2019, he has given depositions in this MDL as a fact witness, 30(b)(6) representative, and expert witness for 3M, and provided trial testimony pursuant to a (then-undisclosed) consulting agreement with defense counsel, under which Berger has been paid hundreds of thousands of dollars. He sat for at least six days of depositions and voluntarily appeared at four trials without need for a subpoena.

In summer 2021, 3M and Berger began efforts to thwart Plaintiffs' requests to procure his live testimony.[1] Though Berger grew tired of voluntarily appearing at trial, he has not grown weary of being compensated handsomely for his time.

In November, the Court ruled that because the Magistrate Judge had authorized remote trial testimony from Berger under Rule 43, neither side could "demonstrate that Berger is unavailable for trial." MDL Dkt. 2300 at 1. As a result, the Court ordered that neither side may use his "prior sworn testimony . . . in his individual capacity," carving out exceptions for impeachment and Plaintiffs' use of 30(b)(6) testimony. *Id.* at 1-2 (citing Fed. R. Civ. P. 32(a)(3)). The Court later denied Defendants' motion to reconsider this November 21, 2021 Order pertaining to the use of Berger's prior testimony during the *Sloan/Wayman* trial. *See* MDL Dkt. 2396.

Since then, 3M's attorneys have regularly argued that 3M cannot induce Berger to testify. Those arguments were rejected most recently on January 26, 2022. *See* MDL Dkt. 2610. After holding an evidentiary hearing, Judge Jones reached the same conclusion as the Court already did: "Berger is not unavailable as contemplated by Rule 32(a)(4)(B)." *Id.* at 20-21; *see* MDL Dkt. 2300.

---

[1] The Court has repeatedly found good cause and compelling circumstances for Berger to testify via remote means in additional bellwether cases, in light of the fact that Berger's testimony has "evolved, substantially" across those bellwether trials. *Berger 1st Misc.* (3:21-mc-00061), Dkt. 2 at 4, 9; MDL Dkt. 2783 at 6.

Defendants and Berger filed objections on February 9, 2022, which Plaintiffs oppose herein. *See* MDL Dkt. 2737 ("Berger Obj."); MDL Dkt. 2738 ("3M Obj.").

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(C), the Court reviews *de novo* those portions of the R&R to which objection is made. *See also* MDL Dkt. 2355 at 2 n.1. The Court is to "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

## ARGUMENT

Berger's availability "is dependent upon whether 3M, through its agents, has taken any action to facilitate Berger's unavailability and has sufficient control to procure Berger's appearance." MDL Dkt. 2610 at 8. The answers to both questions demonstrate that Berger is not "unavailable" to Defendants. The evidence shows that Defendants have taken direct action to facilitate Berger's unavailability and that 3M has sufficient control over Berger to induce him to testify when 3M wants him to.

**I.    The R&R on Berger's unavailability is not clearly erroneous or contrary to law because Defendants have procured Berger's unavailability and therefore cannot use his deposition testimony under Rule 32(a)(4)(B).**

**A.    A witness like Berger who testifies live by remote means under Rule 43 is by definition not "unavailable" under Rule 32(a)(4).**

Federal Rule of Civil Procedure 32(a)(4)(B) provides that when a witness is "unavailable," including "that the witness is more than 100 miles from the place of . . . trial," a party may proffer their deposition instead of live testimony, "unless it

appears that the witness's absence was procured by the party offering the deposition."

It is plain from the text and context of Rule 32(a)(4) as a whole that a witness is not "unavailable" if the witness testifies at trial via remote means. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) (explaining "whole-text canon"); *see also Rep. of Ecuador v. Hinchee*, 741 F.3d 1185, 1191 (11th Cir. 2013) (noting that canons of statutory interpretation apply to Federal Rules). For example, Rule 32(a)(4)(E) references giving "due regard to the importance of live testimony in open court" when "permit[ting] the deposition to be used," thus presupposing that a witness who is "unavailable" is one who is *not* available to give live testimony. Similarly, subdivisions (C) and (D) presuppose that the witness cannot give any testimony, whether in person or via remote means: Rule 32(a)(4)(C) refers to a witness who "cannot attend or testify" at all because of age, and Rule 32(a)(4)(D) refers to a witness whose attendance "could not [be] procure[d] . . . by subpoena." Indeed, Rule 32(a)(4)(B) refers to a witness who is "absen[t]."

Given Rule 32(a)(4) as a whole, courts routinely consider whether a witness will testify live—which includes live testimony pursuant to Rule 43 subpoenas—in deciding whether the witness is unavailable. *See Chao v. Tyson Foods, Inc.*, 255 F.R.D. 560, 561-62 (N.D. Ala. 2009) ("Further, *if* the Secretary uses deposition testimony of a witness, she is *precluded* from calling that witness live."); *Mazloum*

*v. D.C. Metro Police Dep't*, 248 F.R.D. 725, 726 (D.D.C. 2008) ("[I]f certain witnesses are made available as has been agreed for examination at trial, the Court will not allow deposition testimony in lieu of live testimony, even though at the time of trial the witness resides or is located at a greater distance than 100 miles."); *Niver v. Travelers Indem. Co. of Illinois*, 430 F. Supp. 2d 852, 866 (N.D. Iowa 2006) ("[U]ntil and unless such a witness who is under subpoena or whom [defendant] has guaranteed will be present is absent when called, [plaintiff] cannot present videotaped deposition testimony in lieu of live testimony pursuant to [Rule 32(a)(4)(B)]."); *cf. Torres v. City of Chicago*, 2021 WL 392703, at *4-5 (N.D. Ill. Feb. 4, 2021) (reserving ruling on Rule 32(a)(4) request and noting "[it] bears mention that testimony may . . . be presented via videoconference" under Rule 43); *Scott Timber, Inc. v. U.S.*, 93 Fed. Cl. 498, 501 n.4 (Fed. Cl. 2010) (expressing "an explicit preference for a witness' testimony to be received 'live' via videoconferencing, rather than . . . in the form of deposition testimony").[2]

Consistent with this authority, this Court considered Rule 43 when applying Rule 32(a)(3) and granting Plaintiff Stelling's motion in limine to exclude

---

[2] *See also, e.g.*, *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 311-13 (N.D. Iowa 2013); *Truckstop.net, LLC v. Sprint Commc'ns Co.*, 2010 WL 1248254, at *1 (D. Idaho Mar. 23, 2010); *Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 977114, at *2-3 (D. Del. Aug. 29, 2007); *Young & Assocs. Pub. Rels., LLC v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 524 (D. Utah 2003); *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16, 17 (D. Conn. 1977).

Defendants' designations of Berger's testimony. *See* MDL Dkt. 2300. The Court found that "[i]n light of the Magistrate Judge's order authorizing remote trial testimony from Elliott Berger . . . no party can demonstrate that Berger is unavailable for trial." *Id.* at 1. The holding that a witness's availability to testify remotely renders the witness not "unavailable" under Rule 32 is consistent with the foregoing authority. Indeed, no side has cited "any authority that allows a party to introduce a fact witness's prior trial testimony in a subsequent trial where that witness is available." *Id.*

### B.   Defendants have indirectly procured Berger's absence by facilitating and funding Berger's efforts to avoid testifying.

Defendants also cannot take advantage of Rule 32(a)(4)(B) because they procured Berger's absence. *See* Fed. R. Civ. P. 32(a)(4)(B) ("unless it appears that the witness's absence was procured by the party offering the deposition"). "The plain meaning of 'procure' in Rule 32(a) is 'to bring about' or 'to cause to happen.'" *Garcia-Martinez v. Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) (citing *Webster's Third New International Dictionary* 1809 (Philip Babcock Gove, ed., 2002)).

Defendants pay for an attorney whose sole role in this litigation is to "protect Berger from testifying in the Bellwether trials." MDL Dkt. 2610 at 9. It is hard to imagine conduct within ethical guidelines that could more directly "bring about" a witness's "unavailability" than what the evidence here shows: A party electing, at its own expense, to fund a fact witness's opposition to testifying. Berger misses the

point by arguing that "giving a referral to an attorney" is innocent behavior. Berger Obj. at 9. It is the payment for and purpose of Mr. Bates's work,[3] not the referral, that evinces 3M's facilitation of Berger's unavailability. MDL Dkt. 2610 at 9. Thus, 3M's payment for Berger's individual counsel for the sole purpose of resisting testifying in these cases "has directly facilitated and thus indirectly procured Berger's unavailability." MDL Dkt. 2610 at 9.

### C. All evidence shows 3M can procure Berger's attendance at will, which further shows that 3M has procured his absence.

All evidence—including Berger's and 3M's past conduct, their contractual and financial relationships, and their representations to the Court and Plaintiffs on this issue—supports the finding that 3M can induce Berger to appear when 3M seeks his testimony.

In advance of the first bellwether trials, Defendants disclosed Berger as a "hybrid" fact and expert witness. *See* MDL Dkt. 1558-1. Although he was designated solely as a fact witness for the *Sloan/Wayman* trial,[4] recent events demonstrate that was merely a strategic decision, not a sign of some material change in Berger's relationship with 3M. On December 30, 2021, Defendants again

---

[3] As the Court observed, Mr. Bates had no involvement in the preparation of Berger's testimony in any trial, and he has been paid by 3M solely "to protect Berger from having to testify." MDL Dkt. 2610 at 4.

[4] *See Wayman*, Dkt. 119-10 at 4 (witness list).

disclosed Berger as a hybrid witness who will provide a combination of expert and fact testimony in the upcoming Group D trials. *See* Ex. A (Defs.' Group D Rule 26(A)(2)(C) Disclosure).

Defendants claim that the relationship between a testifying expert and the party who retained that expert "does not matter," Mot. at 10, but it does. "[J]udges have discretion to exclude depositions of expert witnesses where the party proponent has selected a distant expert and has not made reasonable efforts to assure the expert's presence at trial." *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 2000 WL 135129, at *3 (D. Del. Jan. 13, 2000); *Livers v. Schenck*, 2013 WL 5676881, at *3 (D. Neb. Oct. 18, 2013) (similar); *see also Hanson v. Parkside Surgery Ctr.*, 872 F.2d 745, 750 (6th Cir. 1989), *cert. denied*, 493 U.S. 944 (1989) (not error to exclude expert deposition testimony under Rule 32 where expert's absence "was at least in part due to [proffering party's] own lack of diligence").

Although some of the testimony that Defendants seek to admit is admittedly fact testimony, that does not move the needle. Courts consider the witness's role in litigation as an expert because it demonstrates the party's control over the witness, which speaks to whether the witness is truly unavailable within the letter and spirit of Rule 32(a)(4)(B). *See, e.g.*, *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972) ("[W]e agree there is something unusual about the use of the prior testimony of an expert witness that calls for further scrutiny of his unavailability,"

including that expert's "earlier attendance is almost invariably secured by such voluntary arrangements," including "for a fee.").

Berger maintains a contractual agreement with Kirkland & Ellis,[5] under which he has been paid hundreds of thousands of dollars, and under which he continues to receive payments. Every time Berger has testified at trial—whether pursuant to a subpoena or otherwise—he has also *voluntarily* met with Kirkland & Ellis attorneys to prepare for that testimony. MDL Dkt. 2610 at 5. Neither Berger nor 3M have explained how Berger came to attend those prep sessions, given 3M's claim that it is unable to procure Berger's attendance and Berger's claim that he refuses to participate further in this litigation absent compulsory process.

An attorney paid by 3M to represent Berger now claims that Berger has "sought to be relieved of the burden of having to continue to testify" since the "fall of 2020." *Berger*, Dkt. 1 at 6.[6] Berger and 3M have jointly sought to prevent Berger's testimony when requested by Plaintiffs, including in opposing Plaintiffs' request for

---

[5] Although in their original motion for reconsideration Defendants stated that Berger "terminated his consultancy with Defendants effective October 11, 2021," MDL Dkt. 2330, it was not until the December 29, 2021 hearing that Defendants or Berger disclosed the existence of the second, separate consulting agreement between Berger and Kirkland & Ellis.

[6] On February 9, 2022, Elliott Berger filed yet another miscellaneous action, Case No. 3:22-mc-00008, for the apparent purpose of moving for a protective order. As with Berger's past miscellaneous actions, Plaintiffs' counsel received no timely service (or any explanation as to why an additional docket was necessary for Berger's motion).

his deposition in November 2020. *See* MDL Dkt. 1561.  But what actions did Berger take to avoid testifying when Defendants sought that testimony? None at all. Berger appeared in Defendants' case in *EHK*, *McCombs*, *Adkins*, and *Blum* without need for a subpoena. All four of those trials occurred after fall 2020, which is when Berger's counsel claims that his attempts to be "relived of the burden" of testimony commenced. *Berger* Dkt. 1 at 6. And although 3M served a subpoena on Berger in *Camarillorazo*, the evidence of Berger's availability to 3M in that trial was just as clear: Berger was served a subpoena two days before his testimony in Defendants' case, and he made no objection to testifying, on timeliness grounds or otherwise.

When Plaintiffs seek his testimony, Berger objects and moves for protective orders; but when Defendants seek it, Berger asks "how high?" Attending four trials voluntarily, and attending a fifth one on two days' notice without objection, is the conduct of a paid contractor, not the conduct of a disinterested third party who seeks to avoid testifying in general. As evidenced by his willingness to come when 3M calls, Berger's objection is not to the burden of testifying, but to the impact on 3M's case of Plaintiffs' taking of Berger's testimony.

3M is not unable to procure Berger's attendance, 3M is just unwilling to do so. The objections to the R&R should be overruled.

II.   **The R&R's analysis of the circumstances surrounding Berger's purported unavailability was proper, as Rule 32(a)(4)(B) does not automatically allow Defendants to play Berger's deposition testimony just because Berger resides more than 100 miles from Florida.**

A.   **Courts retain discretion to consider factors beyond the witness's distance from the forum when considering Rule 32(a)(4)(B) requests to play deposition testimony.**

According to Defendants, "[t]he beginning and end of the unavailability inquiry is whether Berger lives more than 100 miles from the trial site." 3M Obj. at 13. If Defendants and Berger had their way, it would not matter that Berger has voluntarily testified on 3M's behalf and that he has been designated as a hybrid expert witness. 3M Obj. at 9-10. Nor would it matter that this Court has authorized both parties to subpoena his live trial testimony by remote means under Rule 43. *See* MDL Dkt. 2783. But these facts *do* matter.

Contrary to Defendants' representation, the application of Rule 32(a)(4)(B) is not a mindless exercise of mapping out whether the witness resides or works more than 100 miles from the Florida courthouse. "Despite its language, Rule 32 has not been applied mechanically," and "the Federal Rules have not abandoned the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify." *San Francisco Estates, S.A. v. Westfeldt Bros.*, 1997 WL 772811, at *1 (E.D. La. Dec. 12, 1997) (quoting Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* 2d § 2142); *VIIV Healthcare Co. v. Mylan Inc.*, 2014

11

WL 2195082, at *1 (D. Del. May 23, 2014) ("Rule 32(a)(4) is not an automatic mechanism for granting deposition testimony in lieu of live testimony.").

Put another way, the Court is "not automatically required" to admit deposition testimony "just because the witness[] [is] more than 100 miles away." *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991). Numerous courts across the country have recognized this. *See, e.g.*, *Garcia-Martinez v. City and Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004); *Synergetics, Inc. v. Hurst*, 2007 WL 2422871, at *11 (E.D. Mo. Aug. 21, 2007); *Bednasek v. Kobach*, 2018 WL 1116264, at *5 (D. Kan. Feb. 27, 2018).

Defendants' own cases recognize as much: "[E]ven if all the requirements of a 32(a)(4) exception to hearsay are met, courts retain the discretion to reject the otherwise permissible deposition testimony." *In re Decade, S.A.C., LLC*, 625 B.R. 616, 632 & n.93 (Bankr. D. Del. 2021); *cf. Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 2009 WL 3111766, at *20 (S.D.N.Y. Sept. 28, 2009). Circuit courts around the country reiterate and uphold this broad discretion. *See, e.g.*, *Fletcher v. Tomlinson*, 895 F.3d 1010, 1020 (8th Cir. 2018) ("We hold that Rule 32(a)(4)(B) gave the district court discretion to admit Dr. Berns's deposition testimony . . . ."); *Oostendorp v. Khanna*, 937 F.2d 1177, 1179-80 (7th Cir. 1991) ("[T]he decision to admit deposition testimony is within the sound discretion of the trial court."); *Hanson v. Parkside Surgery Ctr.*, 872 F.2d 745, 750 (6th Cir. 1989)

(finding district court did not "abuse[] its discretion" in denying request to admit deposition under then-Rule 32(a)(3)(D)).

In exercising that discretion, "courts have tended to look at the circumstances of a case in order to determine the appropriateness of admitting deposition testimony." *San Francisco Estates*, 1997 WL 772811, at *1. A variety of factors may bear on the Rule 32(a)(4)(B) inquiry, including surprise to opposing counsel, *Polys*, 941 F.2d at 1410; the need for the jury to consider and evaluate witness credibility, *id.*; efforts to procure the witness's attendance, *VIIV Healthcare Co.*, 2014 WL 2195082, at *2; and fairness, *Polozie v. United States*, 835 F. Supp. 68, 71 (D. Conn. 1993). It was not contrary to law—in fact, it was entirely consistent with the law—for Judge Jones to consider the circumstances surrounding Berger's procured unavailability, including but not limited to the following:

> (1) Berger's history of voluntary attendance at bellwether trials;
> (2) Berger's ongoing work as a consulting expert;
> (3) 3M's retention and financing of Mr. Bates; and
> (4) that at the time, 3M had never petitioned the Court under Rule 43(a) for Berger's remote testimony.

*See* MDL Dkt. 2610 at 9-12.

### B. Defendants' arguments are based on one-to-one litigation in its original venue, ignoring the unique nature of this consolidated multidistrict litigation venued far from key witnesses.

Defendants and Berger do not cite a single case in the MDL context. But the fact that this case is an MDL presents yet another reason justifying Judge Jones's

exercise of discretion to consider the circumstances surrounding Berger's procured unavailability. *Cf. In re Asbestos Prod. Liab. Litig.*, 718 F.3d 236, 247 (3d Cir. 2013) ("Thus, a sprawling multidistrict matter such as this presents a special situation, in which district judges must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the [JPML]").

Much like Judge Fallon crafted the *Vioxx* factors to guide the Rule 43 inquiry, the District of Colorado created a five-factor test to guide the Rule 32 inquiry:

(1) [the] offeror's need for the evidence to be presented through the deposition,
(2) opportunity provided the opponent to cross-examine the deposition witness on those issues,
(3) nature of the evidence to be presented,
(4) jury's need to observe the demeanor and credibility of the witness, and
(5) actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse.

*In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493, 1502-03 (D. Colo. 1989). Notably, the *In re Air Crash Disaster* case was an MDL, *see id.* at 1494 n.2, but its factors have been used by district courts outside the MDL context, as well. *See, e.g.*, *Bednasek*, 2018 WL 1116264, at *6 ("[T]he [*In re Aircrash*] factors . . . should guide this Court's inquiry.").

Here, the first and fifth *In re Air Crash* factors in particular counsel in favor of rejecting both Berger and Defendants' objection to the R&R and Defendants' future requests under Rule 32(a)(4). Under the first factor, Defendants have little

need to present Berger's deposition testimony when they could procure his attendance—either by persuading him to testify live in person, as they did just a few months ago in *Camarillorazo*, or by compelling him to testify via remote means, as the Court recently authorized pursuant to Rule 43. *See* MDL Dkt. 2783 at 13-14. Under the fifth factor, it is clear that Berger is no ordinary former employee who is unavailable in his retirement. *See supra*; *compare Tsuei v. Smith*, 1990 WL 174460, at *1 (E.D. Pa. Nov. 5, 1990) (authorizing use of deposition where witness "is retired and is no longer employed or subject to the control of defendant").

In essence, the fifth factor allows the Court to consider the witness's and the offeror's true motive—whether unavailability is genuine or engineered. Stated differently, it allows the Court to consider gamesmanship, as Judge Jones did here. *E.g.*, MDL Dkt. 2610 at 13 (3M's conduct "speaks volumes about whether 3M truly wants Berger to testify live or whether 3M strategically only wants to present brief sanitized portions of Berger's testimony through video deposition"). Berger claims to seek to avoid testifying, but has never objected to a 3M subpoena, and has frequently testified without one; Berger claims that he wishes to no longer be involved in this case, but he voluntarily attends hours of prep sessions.[7] Defendants'

---

[7] "3M has made the strategic decision that they believe presenting the testimony of Berger, who two years ago they thought was going to be their main guy -- they think it doesn't help them. And that is one of the reasons why 3M, in my view, is resisting having Berger. . . present their testimony live." 10/22/21 Hrg. Tr. at 45.

own cases recognize that gamesmanship is often afoot when a party selectively employs Rule 32(a)(4). *See, e.g.*, *A.H. ex rel. Hadjih v. Evenflo Co.*, 579 F. App'x 649, 656 (10th Cir. 2014) (noting "the scenario as it played out . . . was substantially driven by strategic and tactical considerations"); *Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 8069609, at *2 (N.D. Cal. June 7, 2017) (lamenting "defendant's plainly intentional tactical decision" that "at a minimum [was] inconsistent with the spirit of the unavailability rule and with the longstanding presumption that live testimony is clearly preferable . . . especially for important witnesses"). The Court should adopt Judge Jones's R&R. To do otherwise would be to reward Defendants' gamesmanship.

## CONCLUSION

Defendants and Berger provide no adequate basis for rejecting Judge Jones's findings and conclusions. They simply ask the Court to be willfully blind to the obvious degree of practical control that Defendants have over Berger. Berger's and 3M's past and present course of dealings, as discussed above, demonstrates beyond any doubt that Berger is not unavailable to testify—regardless of Berger's professed preference not to testify.

The Court should adopt Judge Jones's R&R and overrule all objections thereto. As the Court originally ruled, Berger is available to testify under Rule 43, and thus is not unavailable under Rule 32. *See* MDL Dkt. 2300. Therefore, neither

16

party may play his personal deposition testimony in the Group D trials, although Plaintiffs may play his 30(b)(6) testimony as opposing party statements and both parties remain free to use his prior testimony for impeachment purposes.

DATED: February 23, 2022

Respectfully submitted,

*s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ,
PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com
**Plaintiffs' Lead Counsel**

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, PLLC
440 Louisiana Street, Suite 1700
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com
**Plaintiffs' Co-Lead Counsel**

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com
***Plaintiffs' Co-Lead Counsel &***
***Counsel for Plaintiff William Wayman***

Muhammad S. Aziz
(Admitted Pro Hac Vice)
Texas Bar No. 24043538
ABRAHAM WATKINS NICHOLS, AGOSTO,
AZIZ & STOGNER
800 Commerce Street
Houston, TX 77055
713-222-7211
713-225-0827 (fax)
jdean@abrahamwatkins.com

***Counsel for Plaintiff Ronald Sloan***

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULES 7.1(F)</u>

I hereby certify that this motion complies with the word limit of Local Rules

7.1(F) and contains 4,109 words.

*s/ Bryan F. Aylstock*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*