**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-02885-MCR-GRJ |
| This Document Relates To: | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |
| *Beal*, 7:20-cv-00006<br>*Kelley*, 7:20-cv-00153<br>*Vaughn*, 7:20-cv-00134<br>*Vilsmeyer*, 7:20-cv-00113<br>*Wilkerson*, 7:20-cv-00035 | |

**NON-PARTY ELLIOTT BERGER'S OBJECTION TO MAGISTRATE JUDGE'S FEBRUARY 18, 2022 ORDER**

**INTRODUCTION**

During four depositions and ten trials, plaintiffs have asked non-party Elliott Berger every conceivable question about his involvement in the events relevant to this case. Yet Magistrate Judge Jones ordered Mr. Berger to testify by video at five more trials, with no express guarantee that these trials will be the last. Judge Jones' order violates Rule 45(c), which requires that a witness reside within 100 miles of the trial location regardless of the manner in which that witness testifies. And even were ordering remote testimony lawful, Judge Jones also erred in finding good cause exists to authorize such testimony. The Court should overrule the order and reject

plaintiffs' efforts to force Mr. Berger to appear for any further live remote video testimony.

## I.  BACKGROUND

### A.  Mr. Berger's Prior Testimony

Mr. Berger is a 69-year-old former employee of 3M.  Ex. A (Decl. of Elliott Berger) ¶ 2.  Mr. Berger resides in Indianapolis, Indiana, where he has lived for nearly 40 years.  *Id.*  After retiring in 2018, Mr. Berger's only connection to 3M was as a part-time contract worker.  *Id.*  Mr. Berger terminated that arrangement as of October 12, 2021, and has had no ongoing relationship with 3M since.  *Id.*  While Mr. Berger maintains a consulting agreement with 3M's outside counsel, Kirkland & Ellis, that agreement does not obligate Mr. Berger to testify or otherwise compel his involvement in this matter.  *Id.*

Plaintiffs have deposed Mr. Berger four times, totaling six days of testimony.  Consistent with this Court's pre-trial orders, the parties videotaped the depositions specifically for the purpose of preserving Mr. Berger's testimony for eventual use in a jury trial.  *See* ECF No. 554 (Pretrial Order No. 14, Deposition Protocol) (requiring depositions "be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial").  During the depositions, plaintiffs' counsel subjected Mr. Berger to cross-examination on a range of topics, using hundreds of

exhibits and producing dozens of hours of video and thousands of pages of sworn testimony.

Plaintiffs have also had the opportunity to examine Mr. Berger at ten bellwether trials covering thirteen plaintiffs' cases.[1]   Mr. Berger appeared voluntarily at earlier trials, on the understanding that "thereafter [his] depositions from any trials would be used in subsequent cases." Ex. A ¶ 2. After testifying live at two trials, Mr. Berger objected to appearing voluntarily at later trials. Instead, plaintiffs sought authorization under Rule 43 for Mr. Berger to testify remotely in the *Baker* and eight subsequent trials. Judge Jones granted all of these motions. Mr. Berger's subsequent testimony was extensive, addressing (again and again and again) all of the issues plaintiffs could conceivably wish to cover. Mr. Berger's sworn testimony was transcribed. Mr. Berger also sought to have his testimony video recorded for use at future trials, but plaintiffs have refused.

**B.     The Magistrate Judge's Order**

On February 2, 2022, plaintiffs filed a motion seeking authorization to present Mr. Berger's remote testimony at the five upcoming Group D bellwether trials. Mr. Berger opposed the motion, explaining that the need to repeatedly testify at trials

---

[1] (1) *Estes/Hacker/Keefer*, (2) *McCombs*, (3) *Baker*, (4) *Adkins*, (5) *Blum*, (6) *Camarillorazo*, (7) *Finley*, (8) *Montero*, (9) *Stelling*, and (10) *Sloan/Wayman*.

only to rehash the same issues has "interfered with [Mr. Berger's] retirement," and "has been a burden" for Mr. Berger and his family. *Id.* ¶¶ 5, 6.

On February 18, 2022, Judge Jones issued an order once again granting authorization for remote testimony under Rule 43. The order concluded that remote testimony by Mr. Berger was permissible despite the fact Mr. Berger lives outside the 100-mile limit that Rule 45 imposes. The order further concluded that plaintiffs had established good cause under Rule 43 for allowing Mr. Berger to testify remotely, and that the prejudice to defendants and to Mr. Berger from such testimony did not outweigh the benefits.

## II.   ARGUMENT

### A.   The Magistrate Judge's Order Violates Rule 45

Federal Rule of Civil Procedure 45 expressly limits the scope of district courts' authority to compel a witness's compliance with a subpoena. A subpoena "may command a person to attend a trial, hearing or deposition only as follows: within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(c)(1)(A). A court "must" quash or modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(ii). The textual limitations of Rule 45 are dispositive here, because it is undisputed that Mr. Berger resides in Indianapolis, Indiana, approximately 700 miles from the trial site in Pensacola, Florida. Plaintiffs

are not seeking to make Mr. Berger "attend a trial" within 100 miles of his residence. Fed. R. Civ. P. 45(c)(1)(A). Judge Jones therefore could not lawfully order Mr. Berger to testify remotely or otherwise.

Relying on some district court authority, plaintiffs have argued, and Magistrate Judge Jones held, that the 100-mile limitation in Rule 45(c) does not apply when a subpoena seeks remote testimony under Rule 43(a). But "[t]here is nothing in the language of Rule 43(a) that permits this court to compel the testimony of an individual who is indisputably outside the reach of its subpoena power." *Lea v. Wyeth LLC*, 2011 WL 13195950, at *1 (E.D. Tex. Nov. 22, 2011). Rule 43(a) is not an independent grant of subpoena power. It provides only that, when a subpoena is otherwise validly issued, a court may "[f]or good cause in compelling circumstances" order remote testimony. The plain text, structure of the rules as a whole, and their underlying purpose compel the conclusion that the Court's power to compel testimony in the first instance come from somewhere—here, the provisions of Rule 45. "Thus, application of Rule 43 requires the witness to either be compelled to testify at trial via Rule 45, or willing to testify at trial." *Black Card LLC v. Visa USA Inc.*, 2020 WL 9812009, at *3 (D. Wyo. Dec. 2, 2020).

Nothing in Rule 43's general "good cause" standard modifies the geographic restrictions of Rule 45. If it did, then the 100-mile restriction in Rule 45(c) would be meaningless. Courts "anywhere in the country" would have "the unbounded

4

power to compel remote testimony from any person residing anywhere in the country." *Broumand v. Joseph*, 522 F. Supp. 3d 8, 24 (S.D.N.Y. 2021). The Court should not interpret Rule 43 in a way that would negate Congress's carefully crafted limitations on courts' subpoena power. Indeed, plaintiffs' argument would render Rule 45(c)'s 100-mile limitation dead letter: every potential witness could be compelled to give trial testimony—regardless of the location of the actual trial—by using Rule 43 as an end-run around Rule 45's limitations.

Plaintiffs have argued that their interpretation of Rule 43 is consistent with the 100-mile limitation because Mr. Berger would be testifying within 100 miles of his home. But that argument requires accepting the premise "that trial testimony via live video link moves a trial to the physical location of the testifying person." *Roundtree v. Chase Bank USA, N.A.*, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014). Under that premise, a single trial in the span of an afternoon could hopscotch from Florida to Alaska to Indiana and back again. Indeed, because Rule 45 authorizes worldwide service of U.S. citizens, Fed. R. Civ. P. 45(b)(2), Judge Jones' interpretation would allow a U.S. district court to hold "trial" anywhere in the world so long as a U.S. witness with an Internet connection is located there. Numerous courts have rejected this attempt to rewrite Rule 45(c). *See Roundtree*, 2014 WL 2480259, at *2 (finding "no legal authority or compelling reason" to support the

proposition").[2]  Plaintiffs' position is also contrary to the position of the federal government on this issue, which has observed it is "well established that [Rule 43(a)] does not provide a means to circumvent the geographic limitations set forth in Rule 45."  *See* Gov't Mem. at 5, *Salem v. Pompeo*, No. 19-cv-363, 2020 WL 3884374 (E.D.N.Y. Apr. 15, 2020) (rejecting Rule 43(a)'s application to U.S. State Department employee in Djibouti because "[n]othing in Rule 45 . . . allows a party to subpoena a witness anywhere in the world simply because the possibility exists that the witness could testify by video").  This court should not take a contrary approach.  This is the Northern District of Florida, not the International District of Zoom.

Judge Jones has also pointed to the vast size of this MDL as a reason to interpret Rule 43 as expanding Rule 45.  But courts may not set aside the Federal

---

[2] *See also In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 2822535, at *4 (D. Kan. July 7, 2021) ("If the rule functioned as plaintiffs propose, the court would obviate the limitations that Rule 45 places on a court's subpoena power."); *Black Card LLC*, 2020 WL 9812009, at *4; *Broumand*, 522 F. Supp. 3d at 24 (plaintiff's reading "would render Rule 45(c)'s geographical limitations a nullity"); *In re Urethane Antitrust Litig.*, 2016 WL 723014, at *1 (D.N.J. Feb. 22, 2016) (declining to order testimony by live video feed where none of the witnesses were within Rule 45's geographical limit); *Ping-Kuo Lin v. Horan Cap. Mgmt., LLC*, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014) (Rule 43 "does not operate to extend the range or requirements of a subpoena"); *Cross v. Wyeth Pharms., Inc.*, 2011 WL 2517211, at *9 (M.D. Fla. June 23, 2011) (refusing motions for remote testimony when "each non-party witness resides outside the scope of Rule 45"); *Lea*, 2011 WL 13195950, at *1 (Rule 43 "does not expand the reach of the subpoena power outlined in Rule 45"); *Balsley v. LFP, Inc.*, 2010 WL 11561883, at *3 (N.D. Ohio Jan. 26, 2010); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2009 WL 1840882, at *1 (S.D.N.Y. June 24, 2009) (a party "may not subpoena witnesses, who are otherwise outside this Court's subpoena power, to testify via contemporaneous transmission").

Rules "in favor of enhancing the efficiencies of [an] MDL." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020). Thus, even were Judge Jones correct that "it is simply not practical to expect that witnesses like Berger are going to be located in the forums where these cases are litigated," Order at 9, those practical considerations cannot overcome the plain language of the Federal Rules. Regardless, there is an equally practical solution to the problem Judge Jones identified: As the advisory committee notes to Rule 43 explain, "[o]rdinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena." The advisory committee's guidance is particularly apt here given the six days' of video deposition testimony plaintiffs have to choose from.

Because Mr. Berger resides outside the Court's subpoena power, the Court should overrule Judge Jones' order and hold that plaintiffs cannot obtain any further live remote testimony from Mr. Berger.

## B.    The Magistrate Judge's Order Violates Rule 43

Even were there an independent basis to authorize Mr. Berger's remote testimony, the Magistrate Judge erred in concluding that "good cause in compelling circumstances" under Rule 43(a) exist here that warrant additional remote testimony.

### 1. No Compelling Circumstances Exist

1.     Rule 43 provides that, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Rule 43(a)'s exception is narrow, and generally applies only when unexpected circumstances, like an "accident or illness," suddenly prevent a witness from appearing at trial. Fed. R. Civ. P. 43 advisory committee's note. Thus, "a party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.*

Here, there are no "compelling circumstances" because there is nothing unexpected about Mr. Berger's being located in Indiana, his home for more than four decades. Mr. Berger's depositions and prior remote testimony took place in Indiana, and he has lived there for the entire pendency of this case. The many courts that forbid the application of Rule 43 to witnesses more than 100 miles from trial have noted that similar circumstances do not suffice under Rule 43's "compelling circumstance" standard anyway. *See, e.g., Black Card*, 2020 WL 9812009 ("It is not unanticipated or unforeseeable that the [witnesses] would not appear at trial, as [they] have never been within this Court's subpoena power."). And even the courts that permit remote testimony of witnesses more than 100 miles away have found

Rule 43 not satisfied on similar facts. *See Off. Comm. of Unsecured Creditors v. Calpers Corp. Partners LLC*, 2021 WL 3081880, at *4 (D. Me. July 20, 2021) (witness who "resided outside the 100-mile radius" was "not unavailable for unexpected reasons" under Rule 43). In sum, the entirely foreseeable nature of Mr. Berger's unavailability would preclude application of the "good cause" exception in Rule 43, even if Mr. Berger were within the subpoena power of the Court. *See, e.g., Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2 (E.D. Cal. Aug. 24, 2012) (denying request for remote testimony where "[t]here is simply nothing unexpected about the difficulties Plaintiffs anticipate in this case"); *Sille v. Parball Corp.*, 2011 WL 2680560, at *1 (D. Nev. July 8, 2011) (same).

      2.      None of the justifications Judge Jones pointed to support expanding Rule 43 to permit remote testimony in these circumstances.

Judge Jones first asserted that Mr. Berger's testimony had "evolved" over the course of the litigation, such that Mr. Berger's videotaped depositions were "stale and in some instances out of [sync] with his trial testimony." That logic is indeed ironic. Ordering a witness to testify ad nauseum inherently risks some variation in the witness's testimony unless the Court is prepared to let Mr. Berger ask counsel at trial to read back his prior transcripts from all ten trials and six depositions before answering any questions. In any event, Judge Jones conspicuously failed to identify any evidence demonstrating these purported inconsistencies. An unsupported and

unexplained assertion cannot justify the burden that five more trials would impose on Mr. Berger.  Moreover, the parties have access to *all* of Mr. Berger's testimony, including any portions that would show the supposed "evolution" in his answers.  If counsel believe Mr. Berger's previous trial testimony contains important admissions, or undercuts statements made during his depositions, they can introduce that previous trial testimony at the upcoming trials.

Next, Judge Jones reasoned that "[t]here is little doubt that live testimony by contemporaneous transmission offers the jury better quality evidence than a videotaped deposition." Order at 7.  That rationale is demonstrably wrong.  For both live video testimony and pre-recorded video testimony, the jury would be watching Mr. Berger testify on a screen instead of in person.  The jury's ability to assess his demeanor and credibly is the same.  If anything, the experience for the jury is likely to be *worse* with live remote testimony given the likelihood of technical difficulties and other delays.  For those reasons, courts have held that "[w]hen the circumstance precluding the in-court testimony of witnesses is expected, deposition (including video deposition) provides the superior means of securing the testimony." *Garza-Castillo v. Guajardo-Ochoa*, 2012 WL 15220, at *1 (D. Nev. Jan. 4, 2012).  The same is true here.

Judge Jones also emphasized that the upcoming trials are bellwethers without explaining the relevance of that fact.  Order at 7.  The previous trials where

10

Mr. Berger testified were bellwethers, too.  The parties have had that chance ten times over to preserve all the testimony they require to make a full assessment of the merits of their claims and defenses (plus six more opportunities at Mr. Berger's earlier depositions).  Regardless, there is no blanket exception to Rule 43's good cause requirement for MDL bellwethers, and "the requirements of the Civil Rules" in an MDL "'are the same as those for ordinary litigation on an ordinary docket.'" *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 844 (citation omitted).  In other words, the Federal Rules of Civil Procedure govern MDL bellwether trials, not the other way around.  *See In re EpiPen*, 2021 WL 2822535, at *5 (refusing remote testimony in an MDL and noting that, "to the extent plaintiffs seek to circumvent Rule 45's subpoena requirements because this action is an MDL proceeding, the court can't abide their reasoning").

### 2.      The *Vioxx* Factors Do Not Support Forcing Mr. Berger to Testify Live

Judge Jones also concluded that the so-called "*Vioxx* factors" weighed in favor of compelling Mr. Berger's live remote testimony.  These factors, which have never been adopted by the Eleventh Circuit, look to "(1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to

11

manage a complex multi-district litigation." *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d. 640, 643 (E.D. La. 2006). But in *Vioxx*, the witness was an executive officer of a party, and was validly compelled to appear under Rule 45. *See id.* at 642. That alone renders *Vioxx* inapplicable. And even if *Vioxx* did apply here, the *Vioxx* factors do not favor haling Mr. Berger back into court for another round of live testimony.

With respect to the first factor, Judge Jones determined that Mr. Berger is "a witness over whom 3M has *in the past* exerted a significant amount of control." Order at 9 (emphasis added). But the motion before the Court is case-specific, targeted towards the circumstances of the upcoming trials and the factors that weigh for and against testimony *in those proceedings*. The relevant question, therefore, is whether 3M *currently* controls Mr. Berger. It does not. Mr. Berger's contractual relationship with 3M indisputably ended in October 2021. He is represented in this matter by independent counsel answerable only to Mr. Berger.

Mr. Berger's only remaining connection to 3M is through a consulting agreement with the company's outside counsel, Kirkland & Ellis. That agreement only compensates Mr. Berger if he is required to prepare for testimony at trial. It does not obligate Mr. Berger to testify at any trials, or otherwise obligate him to 3M. *See* Ex. A ¶ 2. The only reason Mr. Berger has not terminated the agreement and "continues to cooperate with Defendants in preparing his trial testimony" is because

Judge Jones continues to force Mr. Berger to testify. Mr. Berger wants nothing more than to make a clean break. But he has been prevented from doing so by Judge Jones, who has compelled Mr. Berger to spend his retirement in involuntary servitude, rehashing the same issues over and over again against his will, and with no end in sight.

As to the second and fifth *Vioxx* factors, Judge Jones cited the complexity of this litigation. Order at 9. Complex MDL litigation may indeed support the use of live remote testimony for some witnesses in some cases. But the issue is not whether it would ever be appropriate for Mr. Berger to testify remotely; it is whether live remote testimony in these particular cases will have any benefit over using the testimony Mr. Berger has already given on sixteen previous occasions. As discussed above, there is no reason to think so. And when deposition testimony is available—never mind six days of depositions and ten prior trials—courts routinely conclude that prior recorded testimony renders the application of Rule 43(a) unnecessary, because the prior video testimony is an adequate substitute. *E.g., In re EpiPen*, 2021 WL 2822535, at *4; *Black Card*, 2020 WL 9812009, at *3.

Judge Jones further stated that there would be a "significant tactical advantage" if the court denied plaintiffs' request because it would "depriv[e] Plaintiffs of the opportunity to test the credibility of Berger's testimony on these issues." Order at 10. Again, that assertion ignores the more than a dozen times Mr.

13

Berger has already been "subjected to the crucible of cross-examination by Plaintiffs." *Id.* The same fact undermines Judge Jones' claim that defendants were attempting to "sanitiz[e]" Mr. Berger's testimony by using the existing video depositions. Playing a witness's video deposition testimony is not a one-sided affair. Plaintiffs will have an equal opportunity to designate and play to the jury whatever portions they think are most helpful to their case. Defendants can do the same. There is no strategic advantage to either side. *See In re EpiPen*, 2021 WL 2822535, at *6 ("[T]o the extent any 'tactical advantage' exists, it applies equally to both ends of the caption and their witnesses.").

Finally, Judge Jones dramatically understated the prejudice to Mr. Berger from further compelled testimony. Contrary to Judge Jones' claim, Mr. Berger was not "well aware" that by voluntarily participating in one case he would potentially be on the hook for endless, repetitive testimony. Mr. Berger has made clear in letters, pleadings, in live testimony that he "did not understand the gargantuan nature of this MDL when [he] signed on as a consultant." Ex. A ¶ 2. In reality, he had no expectation or understanding that he would "be repeatedly subpoenaed for remote testimony and could be subject to thousands of subpoenas." Judge Jones simply ignored these uncontroverted statements, downplaying the prejudice to Mr. Berger—who, again, is nearly 70 years old, retired, and eager to move on with his life—as mere inconvenience. But inconvenience is a form of prejudice, especially

14

for non-parties like Mr. Berger for whom concerns about burden are "entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (denying motion to compel compliance with third-party subpoena). The detriment to Mr. Berger significantly outweighs the dubious and speculative benefits that plaintiffs hope to realize by interrogating Mr. Berger five more times.

## C.   The Magistrate Judge's Order Raises Serious Constitutional Questions

Judge Jones' order also raises grave due-process concerns. Faced with two possible interpretations of the Federal Rules, one of which raises serious constitutional problems, this Court should follow "established practice" and adopt the interpretation that "avoid[s] constitutional difficulties." *In re Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291, 1306 (11th Cir. 2022) (quoting *Office of Sen. Mark Dayton v. Hanson*, 550 U.S. 511, 514 (2007)).

The Due Process Clause forbids the exercise of jurisdiction over a person unless doing so would "comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation marks omitted). The Eleventh Circuit employs a two-step framework for ensuring compliance with that principle when a court attempts to assert nationwide jurisdiction over subpoena recipients. First, the party challenging jurisdiction must "present[] a compelling case that the exercise of jurisdiction would be so unreasonable that the party's liberty

interests have actually been infringed." *SEC v. Marin*, 982 F.3d 1341, 1350 (11th Cir. 2020) (internal quotation marks omitted). And second, the court must "balance the burdens imposed on the individual . . . against the federal interest involved in the litigation." *Id.*

Mr. Berger satisfies both prongs. Although "inconvenience will rise to a level of constitutional concern" "only in highly unusual cases," *id.*, this is just such a case. Judge Jones has now ordered Mr. Berger to testify at five trials with no end in sight, other than a promise Mr. Berger will not have to testify at "fifteen hundred trials." Order at 13. Wherever the line is between ordinary litigation burdens and unconstitutional liberty infringements, that line has been crossed here. After hundreds of hours of preparation and days of depositions and testimony, any future proceedings in this district, four States from Mr. Berger's home, present a "compelling case" of a potential constitutional violation. *See Marin*, 982 F.3d at 1350. At step two, those burdens easily outweigh any marginal federal interest in a jury seeing live Zoom testimony over prerecorded deposition testimony. This Court should not lightly adopt an interpretation of Rules 43 and 45 that compels a non-party to spend his Golden Years testifying involuntarily in federal court.

### D.     At a Minimum, the Court Should Limit Mr. Berger's Obligation To Testify

Judge Jones's order requires Mr. Berger to appear for live testimony in the five upcoming Group D trials. But in requiring testimony at all five trials, Judge

Jones failed to conduct the case-specific analysis required by Rule 43.  Authorization

for remote testimony under Rule 43 depends on the facts of the particular case, and

neither plaintiffs nor Judge Jones explained why forcing Mr. Berger to testify live at

*each of these specific trials* was warranted.  There has been no explanation, for

example, of what questions plaintiffs wish to ask Mr. Berger at the fifteenth trial that

they couldn't ask him at the eleventh, or how the thirteenth examination of Mr.

Berger will be different from his tenth (or the eleventh, twelfth, etc.).

The only explanation for Judge Jones's blanket order is that the five Group D

trials are all bellwethers.  Order at 7.  But if subjecting Mr. Berger to live cross-

examination in a bellwether is necessary for the plaintiffs to make "[a] full evaluation

of the case," *id.*, plaintiffs will have that opportunity yet again at the bellwether trials

schedule to begin March 14.  Plaintiffs and their leadership are fully capable of

coordinating to ensure that those examinations fully exhaust the issues they wish to

cover with Mr. Berger.  There is no cause at all—let alone "good cause in compelling

circumstances—to order Mr. Berger to testify beyond those two cases.

## III.   CONCLUSION

Mr. Berger respectfully requests that the Court reverse the magistrate judge's

ruling and hold that Mr. Berger cannot be compelled to provide remote testimony

under Rule 43.  In the alternative, the Court should limit any authorization for Mr.

Berger's remote testimony to the two trials scheduled to begin on March 14, 2022,

and require plaintiffs to establish good cause for obtaining additional testimony in future trials on a case-by-case basis.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), I certify that this Objection is in compliance with the Court's word limit. According to the word processing program used to prepare this document, the document contains less than 4,557 words, exclusive of the case style, signature block, and this certification.

Dated:  February 23, 2022                    Respectfully submitted,


_____ */s/ Philip A. Bates*
PHILIP A. BATES
Florida Bar No. 228354
CAROL A. RUEBSAMEN
Florida Bar No. 380946
PHILIP A. BATES, P.A.
25 West Cedar Street, Suite 550 (32502)
Post Office Box 1390
Pensacola, FL 32591-1390
Telephone: (850) 470-0091
Telecopier: (850) 470-0441
pbates@philipbates.net
cruebsamen@philipbates.net
lgrove@philipbates.net
Attorney for Elliott Berger, individually

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Philip A. Bates*
PHILIP A. BATES