# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Beal*, 7:20-cv-00006<br>*Kelley*, 7:20-cv-00153<br>*Vaughn*, 7:20-cv-00134<br>*Vilsmeyer*, 7:20-cv-00113<br>*Wilkerson*, 7:20-cv-00035 | Case No. 3:19-md-2885<br><br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS'
AND BERGER'S OBJECTIONS TO MAGISTRATE JUDGE'S
FEBRUARY 18, 2022 REPORT AND RECOMMENDATION**

## INTRODUCTION

In the latest installment in the Berger saga, Defendants and Elliott Berger have objected to Magistrate Judge Jones's February 18, 2022 order authorizing Berger's remote testimony in the upcoming Group D trials. As with the Court's prior orders authorizing the same in Groups A, B, and C, Judge Jones properly interpreted Rules 43 and 45 in tandem. Judge Jones's interpretation of these rules was not erroneous; on the contrary, it was consistent with the plain language of the rules and the great weight of authority from MDL courts. Judge Jones also reasonably applied the *In re Vioxx* factors and found good cause in compelling circumstances for Berger's remote testimony in the final five bellwether trials in this MDL. The Court should deny these objections and affirm Magistrate Judge Jones's well-reasoned order.

## BACKGROUND

Berger is Defendants' retained expert and a central fact witness in this MDL. He has received hundreds of thousands of dollars under an (until recently, undisclosed) agreement with Defense counsel and has routinely appeared voluntarily on Defendants' behalf. Although Berger has never refused Defendants' requests that he testify, he decries any injured servicemember's use of standard civil discovery tools, such as a trial subpoena, as a "gilded cage" presenting "grave due-process concerns." *Berger 2d Misc.* (3:22-mc-0008), Dkt. 1 at 9; Dkt. 7-1 at 17.

In Groups A, B, and C, the Court conducted a case-by-case inquiry into whether there was good cause in compelling circumstances for Elliott Berger to testify remotely at bellwether trials in this MDL. *See Baker*, Dkt. 133; MDL Dkt. 2247. The Court has consistently interpreted Rule 43 (governing remote testimony) and Rule 45 (governing subpoenas) in tandem, holding that "a party may use a Rule 45 subpoena to compel remote testimony from anywhere so long as the place of compliance (where the testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c)." *Baker*, Dkt. 133 at 10; *see* MDL Dkt. 2247 at 10. The Court has also repeatedly applied the *In re Vioxx* factors to guide the "good cause in compelling circumstances" inquiry under Rule 43(a). *Baker*, Dkt. 133 at 12-14; MDL Dkt. 2247 at 9. Notably, neither Defendants nor Berger sought reconsideration of those rulings before Judge Jones, nor did they appeal those rulings to Judge Rodgers or the Eleventh Circuit.

Most recently, Judge Jones granted the Group D Plaintiffs' Rule 43(a) motion seeking Berger's remote testimony.[1] MDL Dkt. 2783. To no one's surprise but Defendants' and Berger's, the Court again held that "Rules 43(a) and 45 should be

---

[1] Although Judge Jones found Rule 43 satisfied as to all five trials, Plaintiffs will only subpoena Berger in four. As Plaintiffs stated in their February 23, 2022 opposition to one of Berger's motions for protective order, in a coordinated effort to accommodate Berger's schedule, Plaintiffs have agreed to seek his testimony at only four of the five upcoming trials. *See Berger 2d Misc.*, Dkt. 6 at 3.

read in tandem" and that "the 100-mile limitation now found in Rule 45(c) has to do with the place of compliance; not the location of the court from which the subpoena issued." *Id.* at 5. And the Court again employed the *In re Vioxx* factors in ascertaining that Plaintiffs had shown good cause in compelling circumstances. *Id.* at 8.

Though nothing has changed, Defendants and Berger have objected for the first time.[2] *See* MDL Dkt. 2793 ("Berger Obj."); MDL Dkt. 2802 ("3M Obj."). Filing strikingly similar briefs, party and non-party alike argue that the order violates the 100-mile limitation in Rule 45(c)(1)(A) and that Judge Jones improperly found good cause under Rule 43(a). The Court ordered expedited briefing in light of the impending bellwether trials, with two of the Group D trials set to begin in two weeks on March 14, 2021. *See* MDL Dkt. 2799; MDL Dkt. 2807.

## LEGAL STANDARD

"[T]he [C]ourt may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "The Court is to "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

---

[2] Defendants have changed their tune from their opposition brief, in which they stated that they "understand that this Court has already rejected [their] argument . . . and include it here only for preservation purposes." *E.g.*, *Beal*, Dkt. 56 at 8 n.3.

# ARGUMENT

## I.     The Court properly interpreted Rules 43 and 45 in tandem.

### A.     It was not clearly erroneous or contrary to law for the Court to interpret Rules 43 and 45 to allow remote testimony within 100 miles of the witness's residence, particularly because there is a split of authority.

Defendants and Berger argue that it is erroneous for "Rule 43 [to] serve as an end run around the 100-mile radius of Rule 45's subpoena power." 3M Obj. at 7; Berger Obj. at 6. In support, they each proffer a similar string cite of cases reaching their desired outcome. *See* Berger Obj. at 7 n.2 (collecting cases); 3M Obj. at 7 n.2 (similar). But Defendants and Berger both acknowledge that there is a conflicting line of cases going the other way. *See* Berger Obj. at 4; 3M Obj. at 7.

What they fail to mention is that this split of authority, in and of itself, means Judge Jones's order was not clearly erroneous or contrary to law. Where there is "disagreement among federal trial courts on [an] issue," it is "neither clearly erroneous nor contrary to law" for the Court to follow either line of authority. *Hite v. Hill Dermaceuticals, Inc.*, 2013 WL 6799334, at *5 (M.D. Fla. Dec. 23, 2013). District courts in this Circuit and beyond have affirmed magistrate judges' orders involving such a "split of authority." *E.g.*, *Tillman v. C.R. Bard, Inc.*, 2015 WL 1062182, at *3 (M.D. Fla. Mar. 11, 2015); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, 2014 WL 2865900, at *5 (D. Minn. June 24, 2014) ("Given the split of authority on this issue, the Court cannot conclude that it was contrary to

law . . . and will defer to the Magistrate Judge's discretion."); *see also, e.g.*, *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614-15 (D. Minn. 2019) (affirming magistrate judge's ruling in light of "intra-District split"); *In re Sugarleaf Timber, LLC*, 529 B.R. 317, 335 n.17 (Bankr. M.D. Fla. 2015).

In light of the split of authority, Judge Jones's interpretation of Rules 43 and 45 was not clearly erroneous or contrary to law. Indeed, Defendants' and Berger's cited cases discussed the split of authority as they grappled with this issue. *See, e.g.*, *Black Card LLC v. Visa USA, Inc.*, 2020 WL 9812009, at *2 (D. Wyo. Dec. 2, 2020) ("Other Districts have read Rule 43 and Rule 45 together to allow the court to serve a subpoena on a witness located anywhere in the United States and order the person to testify via remote transmission."); *Off. Comm. of Unsecured Creditors v. Calpters Corp. Partners LLC*, 2021 WL 3081880, at *2-3 (D. Me. July 20, 2021) ("[O]ther courts have addressed similar requests and come to varying conclusions."); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 2822535, at *3 (D. Kan. July 7, 2021) (collecting cases).

Defendants specifically take issue with Judge Jones's statement that "[a]n overwhelming consensus of federal courts, including MDL courts, have held that Rules 43(a) and 45 should be read in tandem." 3M Obj. at 6-7 (quoting MDL Dkt. 2783 at 4-5). Defendants then claim they "have identified far more district court cases that have rejected the notion that Rule 43 can serve as an end run around the

6

100-mile radius of Rule 45's subpoena power." *Id.* at 7 & n.3 (citing 10 cases). But this misses the mark, because the mere existence of a split of authority—regardless of precisely how many citations one side listed favoring one holding over another— justifies affirming Judge Jones's order. *See, e.g.*, *Hite*, 2013 WL 6799334, at *5.

Regardless, Plaintiffs have identified numerous cases that agree with Judge Jones rather than disagree.[3] And other courts have permitted Rule 43(a) testimony from a location beyond 100 miles from the courthouse without mentioning any Rule 45(c)(1) concerns—further support that there are none.[4] In fact, some courts have even held that the inability to subpoena the witness to testify in person because he

---

[3] *See, e.g.*, *Orbital Eng'g, Inc. v. Buchko*, 2022 WL 170043, at *2 (W.D. Pa. Jan. 19, 2022); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2021 WL 6202422, at *3 (E.D. La. July 26, 2021); *Off. Comm. of Unsecured Creditors v. Calpers Corp. Partners LLC*, 2021 WL 3081880, at *2-3 (D. Me. July 20, 2021); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 2311719, at *4 (E.D. La. May 25, 2017); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 9776572, at *1-2 (N.D. Tex. Sept. 20, 2016); *Berlinger v. Wells Fargo, N.A.*, 2016 WL 316585, at *1 (M.D. Fla. Jan. 27, 2016); *Mullins v. Ethicon, Inc.*, 2015 WL 8275744, at *1-2 (S.D. W. Va. Dec. 7, 2015); *Nexen Petroleum U.S.A., Inc. v. Ensco Offshore Co.*, 2015 WL 6511879, at *9 (W.D. La. Oct. 27, 2015); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 107153, at *9 (W.D. La. Jan. 8, 2014); *see also Int'l Seaway Trading Corp. v. Target Corp.*, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021); *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 815 (D. Md. 2020); *cf. Katzin v. United States*, 124 Fed. Cl. 122, 125 (2015).

[4] *See, e.g.*, *Beltran-Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000); *Michael v. Davis*, 2015 WL 7889635, at *2 (E.D. Cal. 2015); *Humbert v. O'Malley*, 303 F.R.D. 461, 464-65 (D. Md. 2014); *F.T.C. v. Swedish Match N. Am. Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000); *Official Airline Guides, Inc. v. Churchfield Pubs., Inc.*, 756 F. Supp. 1393, 1398 n.2 (D. Or. 1990).

or she lives more than 100 miles from the courthouse supports finding good cause under Rule 43(a).[5]

Particularly among MDL courts, the majority rule is that Rules 43 and 45 should be interpreted together.[6] Defendants and Berger have identified a single MDL court, *In re EpiPen*, going their way. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 2822535 (D. Kan. July 7, 2021). Most recently, the *In re Taxotere* MDL court considered the issue and declined to follow *In re EpiPen*, instead finding Judge Jones's and other MDL courts' rationale to be most persuasive. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2021 WL 6202422, at *2-3 & n.5 (E.D. La. July 26, 2021) (citing *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 2605957, at *2 (N.D. Fla. May 28, 2021)). Acknowledging that "courts are indeed divided" on this interplay between Rules 43 and 45, and noting "there is not yet controlling precedent," Judge Milazzo held that

---

[5] *See, e.g.*, *Aoki v. Gilbert*, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019); *Warner v. Cate*, 2015 WL 4645019, at *2 (E.D. Cal. Aug. 4, 2015); *Rockett v. Stifel, Nicolaus & Co.*, 2014 WL 5500546, at *1 (M.D. Ga. Oct. 30, 2014); *Lyons v. Leonhardt*, 2013 WL 3807996, at *10-11 (D. Nev. July 19, 2013); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010).

[6] *Compare In re Taxotere*, 2021 WL 6202422, at *3; *In re Xarelto*, 2017 WL 2311719, at *4; *In re DePuy*, 2016 WL 9776572, at *1-2; *In re Actos*, 2014 WL 107153, at *9; *with In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 2822535 at *3 (D. Kan. July 7, 2021); *In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 2009 WL 1840882, at *1 (S.D.N.Y. June 24, 2009); *see also Off. Comm. of Unsecured Creditors*, 2021 WL 3081880, at *3 ("Many of the cases . . . were bellwether multidistrict litigation cases.").

"Rule 45 is satisfied so long as the witness is not compelled to testify at a location beyond 100 miles from the witness's residence." *Id.* at *3.

Because courts are divided on this issue, *see id.*, Judge Jones's order was neither contrary to law nor clearly erroneous.

### B.     Ample authority supports Judge Jones's well-reasoned ruling.

Three times now, Judge Jones has properly interpreted Rules 43 and 45 in tandem. *See Baker*, Dkt. 133; MDL Dkt. 2247; MDL Dkt. 2783; *see also Canon, Inc. v. Color Imaging, Inc.*, 2014 WL 12802902, at *1 (N.D. Ga. Apr. 9, 2014) (noting that Federal Rules of Civil Procedure "cannot be read in isolation" but "must be read together in conjunction with the other Rules"). In doing so, he follows the lead of numerous federal courts, including MDL courts, around the country that have interpreted Rules 43 and 45 the same way. Beyond case law, there is ample authority to support his well-reasoned ruling. The plain language of the rules, advisory committee comments, and authoritative treatises all support Judge Jones's order.

First, the plain language of Rules 43 and 45 supports the Court's order. Rule 43(a) authorizes "testimony in open court by contemporaneous transmission from a different location"—full stop. It does not say "from a different location, so long as it is within 100 miles of where the person resides." Rule 45(c)(1)(A) provides, in relevant part, that "[a] subpoena may command a person to attend a trial . . . within 100 miles of where the person resides." There is nothing in the rule specifying that

it is the place of trial, not the place of attendance, that matters. Thus, the drafters intended the language of Rule 45 to be flexible enough to accommodate witnesses who are not appearing at trial in person, but who are testifying virtually from another location. Relatedly, Rule 30(b)(4) explains that when a deposition is taken by remote means, "the deposition takes place where the deponent answers the questions." Logically, then, when trial testimony is taken by remote means, the place of attendance is where the witness answers the questions—which here is less than 100 miles from Berger's home in Indiana.

Second, the advisory committee comments support Judge Jones's interpretation. The comments to Rule 45 state that "[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from *any place* described in Rule 45(c)(1)." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment (emphasis added). The comments to Rule 43 state that "ordinarily depositions . . . provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena," implicitly recognizing that in some circumstances a trial subpoena could compel someone to attend a trial for remote testimony beyond the 100-mile radius from the courthouse (the limitation that applies when testifying in person). *See* Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment.

Third, several authoritative treatises support the Court's order. As Wright and Miller recognize, although the court has limited "authority to compel a party or party officer to travel long distances to testify [in person] at trial," non-party witnesses "can be commanded to testify from any place described in Rule 45(c)(1)" so long as "a Rule 43(a) order authorizes testimony from a remote location." 9A Wright & Miller, *Federal Practice and Procedure* § 2461 (3d. ed.). Another treatise, *Federal Rules of Civil Procedure: Rules and Commentary*, has gone a step further:

> Read together, Rule 43 and Rule 45 allow a judge to serve a subpoena on a witness located anywhere in the United States and order the person to appear at a place within the person's local area and give trial testimony via remote transmission. . . .
>
> Some courts have rejected this application of the two rules as an end run around Rule 45's geographic limits on a court's ability to compel a witness to appear at the place of trial. But other courts have upheld the practice. *In terms of defining the court's authority, the latter approach is better*. Rule 45 clearly permits a court to issue a subpoena anywhere in the country. There would seem to be no reason why a judge in Oklahoma City should have the power to order a witness to appear in New York City and speak into a camera if the testimony is being recorded to be played back later in Oklahoma City, but not if it is being broadcast contemporaneously to Oklahoma City.

Gensler & Mulligan, 1 *Federal Rules of Civil Procedure: Rules & Commentary*, Rule 43 (Feb. 2022 update) (footnotes omitted) (emphasis added).

There is no shortage of authority for Judge Jones's well-reasoned order authorizing Plaintiffs to issue subpoenas for Berger's remote testimony in these final

bellwether trials. The Court should affirm his order, which was neither clearly erroneous nor contrary to law.

## II.   The Court's finding of good cause in compelling circumstances was not clearly erroneous or contrary to law.

### A.   The Court properly relied in part on the *In re Vioxx* factors.

Three times now, Judge Jones has properly applied the *In re Vioxx* factors in assessing Plaintiffs' Rule 43(a) motions. *See Baker*, Dkt. 133 at 12-14; MDL Dkt. 2247 at 9; MDL Dkt. 2783 at 8. But this time, Defendants and Berger object. It was entirely proper for the Court to employ the *In re Vioxx* factors to supplement the Rule 43(a) analysis of "good cause in compelling circumstances."

Defendants dispute whether the *In re Vioxx* factors "provide[] the appropriate standard." 3M Obj. at 10-11. But Judge Jones did not substitute the Rule 43(a) inquiry with an *In re Vioxx* analysis; rather, he supplemented the Rule 43(a) analysis with the *In re Vioxx* factors. MDL Dkt. 2783 at 8 ("*In addition to these reasons*, the Court finds instructive . . . the five-factor test used in *In re Vioxx*.") (emphasis added). Moreover, several MDL courts have employed the *In re Vioxx* factors to assess good cause under Rule 43. *See, e.g.*, *In re Xarelto*, 2017 WL 2311719, at *4 (E.D. La. May 26, 2017); *Hall v. Boston Sci. Corp.*, 2015 U.S. Dist. LEXIS 120031 (W.D. Wisc. Sept. 9, 2015); *Mullins v. Ethicon, Inc.*, 2015 WL 8275744, at *2 (S.D. W.Va. Dec. 7, 2015).

In conclusion, it was not contrary to law for Judge Jones to rely on the *In re Vioxx* factors as part of his good-cause analysis.

**B.     There is good cause for Berger to testify at the four upcoming Group D trials.**

Berger's unique role in the facts underlying each case in this MDL, his unique relationship with Defendants and Defense counsel, and the unique scope of this litigation, together create an overwhelming basis for Judge Jones's finding of good cause and compelling circumstances.

Defendants argue that Judge Jones's order is objectionable because it is "wholly lacking in any case-specific analysis about why his testimony is needed in each of the upcoming five trials." 3M Obj. at 10. But as the Court observed, Defendants do not dispute that Berger is a "key witness in these bellwether cases," MDL Dkt. 2783 at 6, and the extreme importance of Berger's testimony to determining liability in each Group D case is not diminished simply by the existence of other cases in which Berger's testimony is also important. Defense counsel also appear to rely on the inaccuracy of their own advice to Berger, arguing that they did not anticipate "Berger would be required to continue to provide live testimony." *Id.* at 13. Defendants provide no authority that relies, for purposes of Rules 43 or 45, on a trial witness's or counsel's *anticipation* of their obligation to testify.

The Court's findings, unlike these arguments from Defendants, were based on the facts surrounding Berger's testimony, and the law governing the "compelling

13

circumstances" analysis under Rule 43. *Id.* at 7-10. The Court had a more than adequate basis for finding that Berger is an "important witness" who "invented the CAEv2 and has been one of the key witnesses defending the CAEv2." *Id.* at 6. Defendants have no response at all to the Court's observation that live testimony is preferable to pre-recorded deposition testimony, producing greater jury engagement and offering the jury higher-quality evidence. *Id.* at 7. Defendants argue that jurors can still engage in some evaluation of credibility in the context of pre-recorded testimony, and that "taken to its logical conclusion, this reasoning would mean that no videotaped deposition should ever be played in federal court." 3M Obj. at 10. Both arguments take Judge Jones's reasonable conclusions and extrapolate them to unreasonable extremes. Judge Jones did not hold, as Defendants suggest, that jurors have no ability at all to evaluate witness credibility in prerecorded testimony, nor does he suggest that his holding with regard to someone in Berger's unique position would apply globally to other, normal fact witnesses.

Nor do Defendants refute the Court's recognition of the specially-situated nature of these bellwether trials in the largest consolidated mass tort in U.S. history. *Id.* at 7-8. And Defendants' argument that they "would be required to coordinate with Berger to prepare him" for that testimony, *id.* at 10-11, is a nullity: Plaintiffs have no control over whether Berger and Defendants elect to "coordinate," but

Berger and Defendants are welcome to forego such preparation if they deem it unduly burdensome.

Finally, Berger's overwrought complaints of burden fall flat, particularly weighed against the needs of each Group D case. The Court acknowledged that "Berger is retired and represents he no longer has the time or commitment to testify in the bellwether cases." *Id.* at 11. In doing so, the Court described the burden to Berger in the same level of detail Berger himself has provided. MDL Dkt. 2793-1 at 2 ("This has tied up my personal schedule, has interfered with my retirement, and is an undue burden on me"); *id.* at 3 ("My attendance at repeated trials has been a burden to me.").

Defendants pile on, suggesting that the Court has not done enough to protect Berger from the time and expense of the discovery and testimony to which Plaintiffs are entitled. 3M Obj. at 8. But Defendants themselves have acknowledged that the principles they cite "arise most often in the context of subpoenas seeking discovery from non-parties." *Beal*, Dkt. 56 at 9. As discussed herein, Berger is no ordinary non-party, and moreover, Berger has already received an extreme degree of protection from discovery in the hundreds of thousands of individual cases in which, absent the consolidation of this MDL, he would have been subpoenaed for deposition. *See* MDL Dkt. 554 (PTO 13) at 1, 3 (limiting the total depositions of all defense-associated witnesses in hundreds of thousands of consolidated cases to forty

days). Ultimately, "[t]he jury's primary fact-finding role through evaluating witness credibility cannot be impaired by lawyers agreeing to excuse live testimony for the convenience of witnesses who may prefer a fishing vacation to avoid looking the jury in the eyes." *Thompson v. Jones*, No. CV 09-1396, 2018 WL 4286196, at *1 (M.D. Pa. Sept. 7, 2018).

Judge Jones's finding of good cause and compelling circumstances to allow Berger's remote testimony in each of the Group D cases was based on relevant evidence and the governing law. Defendants' and Berger's objections seeking "case-specific" determinations that the inventor of a product is relevant to a case about the product should be rejected.

## III.   Berger's due-process arguments are without merit.

In opposing the Rule 43(a) motion, Berger argued that attending these trials "amounts to indeterminate incarceration" in "a gilded cage," depriving him of his freedom without substantive due process. MDL Dkt. 2757 at 10. He now claims that there are "grave due-process concerns" and the Court should not "compel a non-party to spend his Golden Years testifying involuntarily." Berger Obj. at 16-17.

For starters, Berger is a non-party whose objections are procedurally improper. At this juncture, the Court has simply authorized the five Group D Plaintiffs to issue subpoenas for Berger's remote attendance at trial. Those

subpoenas have not yet issued, so Berger's claimed burden is entirely speculative.[7] Berger's vague objections about undue burden are better suited for a motion to quash, which is not ripe unless and until Berger actually receives a subpoena. *See* Fed. R. Civ. P. 45(d)(3). The question of whether there is "good cause in compelling circumstances" under Rule 43(a) is not designed to consider the burden on the subpoenaed party. *See In re Vioxx*, 439 F. Supp. 2d at 643 (considering, at most, "inconvenience to the witness" to assess whether the defendant seeks a "tactical advantage"). Whether any forthcoming subpoenas impose an undue burden on Berger is a question for another day. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) ("On timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden.").

Setting that aside for a moment, Berger's due-process challenge is misguided. The cases he cites—*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), and *SEC v. Marin*, 982 F.3d 1341, 1350 (11th Cir. 2020)—involve challenges to the court's exercise of personal jurisdiction over nonresident defendants, making them inapposite here. To the extent Berger thinks that the Fifth Amendment somehow offers him safe harbor, he can make that claim in a future motion to quash. Judge

---

[7] In fact, at least one Plaintiff does not intend to subpoena Berger, as Plaintiffs recently made clear in a related filing. *See Berger 2d Misc.*, Dkt. 6 at 3 ("Plaintiffs offer to call [Berger] to testify only once during the week of March 14, 2022, despite the existence of overlapping trials that week.").

Jones had no obligation under Rule 43 to "balance the burdens imposed on [Berger]." *Cf.* Berger Obj. at 17. Judge Jones's order goes the extra mile by directing the parties to work together with Berger on scheduling to avoid "create[ing] an unfair burden for Mr. Berger." *Cf.* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

Even if the Court were inclined to consider Berger's claimed constitutional violations, they have no merit. He says that the "inconvenience [to him] rise[s] to a level of constitutional concern," but his objection is premised on the burden of not only testifying but also preparing for trial. Berger Obj. at 17 ("hundreds of hours of preparation and days of deposition and testimony"). It is senseless for a non-party to complain about time spent preparing with a party to testify when the subpoena requires nothing more than his attendance at trial. At most, Berger will be required to testify for four days over the span of the next three months. To the extent that Defendants have convinced Berger that something more is required, it bears repeating that Berger is free to terminate his ongoing consulting agreement with Kirkland and Ellis. The Court should thus reject Berger's purported due-process challenge.

**IV.    The Court should enter an order to manage the overwhelming and unnecessary motion practice that 3M has funded.**

The campaign of repetitive, unnecessary, and procedurally improper motions that 3M continues to pay Mr. Bates to write must cease.

3M has funded through its cat's-paw Mr. Bates, at least eleven[8] motions on the issue of Berger's trial testimony—including multiple motions that violate Local Rule 7.1's requirement for a pre-motion conference,[9] and multiple others that were filed at the eleventh hour before trial, requiring Plaintiffs and the Court to defer or forego urgent trial preparation to respond to Mr. Bates's frivolous motions on an expedited schedule.[10]

3M's strategy in funding Mr. Bates's conduct has met its apparent goals, in that it has wasted significant amounts of the Court's and Plaintiffs' resources, at strategically advantageous times to Defendants, while preserving Defense counsel's credibility by allowing them to avoid bringing these baseless motions themselves.

---

[8] *See* MDL Dkts. 2358, 2365, 2394, 2736, 2737, 2757, and 2793; *Berger 1st Misc.* (3:21-mc-0006), Dkt. 1, 3, and 6; *Berger 2d Misc.*, Dkt. 1; *Stelling*, Dkt. 124; Ex. A (10/19/21 Rule 43 Opp). Plaintiffs do not claim to have been able to fully catalogue all of the filings – many entirely duplicative – Berger has made across the MDL docket, various bellwether dockets, and the two miscellaneous actions he inexplicably instituted.

[9] *See Berger 2d Misc.*, Dkt. 7 at 4 (certifying that an "email to Mr. Aylstock" sent approximately four hours before filing reflected a "good faith" attempt at a "meaningful conference"); Ex. A (10/19/21 Rule 43 Opp) at 11 ("The undersigned assumes that counsel for Plaintiff opposes the relief sought.").

[10] *E.g.*, *Berger 1st Misc.*, Dkt. 7 (ordering expedited briefing in response to Mr. Bates's filing); MDL Dkt. 2799 (same).

In light of this success, there is no reason why Defendants would stop paying for a stream of repetitive and unnecessary motions to divert Plaintiffs' resources on the eve of trial. Plaintiffs request that the Court enter an order limiting the contexts in which Mr. Bates may require more motion papers from Plaintiffs and more orders from the Court, and/or an order directing 3M to stop funding Mr. Bates's vexatious conduct.

## CONCLUSION

For the foregoing reasons, the Court should adopt Judge Jones's order and overrule all objections thereto.

DATED: February 28, 2022

Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com
***Plaintiffs' Lead Counsel & Counsel for Plaintiff James Beal***

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, PLLC
440 Louisiana Street, Suite 1700
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com
*Plaintiffs' Co-Lead Counsel*

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com
*Plaintiffs' Co-Lead Counsel*

Keith M. Jensen
(Admitted Pro Hac Vice)
Texas Bar No. 10646600
JENSEN & ASSOCIATES
1024 N. Main Street
Fort Worth, TX 76164
817-334-0762
kj@jensen-law.com
*Counsel for Plaintiff Steven Wilkerson*

Joseph L. Messa
Ashley B. DiLiberto
(Admitted Pro Hac Vice)
JM2878/ AD9331
MESSA & ASSOCIATES, P.C.
123 S. 22nd St.
Philadelphia, PA 19103
215-568-3500
215-568-3501 (fax)
jmessa@messalaw.com
adiliberto@messalaw.com
**_Counsel for Plaintiff Luke Vilsmeyer_**

Trent Miracle
(Admitted Pro Hac Vice)
Illinois Bar No. 6281491
Dan Blouin
(Admitted Pro Hac Vice)
New York Bar No. 4289021
John J. Foley
(Admitted Pro Hac Vice)
Illinois Bar No. 6288152
SIMMONS, HANLY, CONROY
One Court Street
Alton, IL 62002
618-259-2222
618-259-2251 (fax)
tmiracle@simmonsfirm.com
dblouin@simmonsfirm.com
jfoley@simmonsfirm.com
**_Counsel for Plaintiff Denise Kelley_**

Gerard Guerra
(Admitted Pro Hac Vice)
Missouri State Bar No. 42703
ONDERLAW, LLC
110 East Lockwood Ave.
St. Louis, MO  63119
314-963-9000
314-228-0132 (fax)
guerra@onderlaw.com
**_Counsel for Plaintiff Jonathon Vaughn_**

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULES 7.1(F)

I hereby certify that this motion complies with the word limit of Local Rules

7.1(F) and contains 4,894 words.

_s/ Bryan F. Aylstock_

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*s/ Bryan F. Aylstock*