UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | \| \| \| | Case No. 3:19md2885 |
| | \| | |
| This Documents Relates to: | \| | Judge M. Casey Rodgers |
| *Camarillorazo,* 7:20cv98 | \| | Magistrate Judge Gary R. Jones |
| *Finley,* 7:20cv170 | \| | |
| *Hensley,* 7:20cv93 | \| | |
| *Montero,* 7:20cv67 | \| | |
| *Palanki*, 3:19cv2324 | \| | |
| *Stelling,* 7:20cv143 | \| | |
| *Sloan,* 7:20cv1 | \| | |
| *Wayman,* 7:20cv149 | \| | |

## RESPONSE TO PLAINTIFFS' EXPEDITED MOTION TO AUTHORIZE REMOTE TESTIMONY, AND RULE 43(a) MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW Elliott Berger ("Berger"), by and through his below signed counsel, and enters a limited appearance for purposes of filing this Response and Rule 43(a) Motion for Protective Order and Memorandum in Support Thereof, directed toward Plaintiffs' Expedited Motion to Authorize Remote Testimony Pursuant to Rule 43(a) from 3M Fact Witness Elliott Berger and Brian Myers (Case 2885 ECF 2190), and states that no further trial subpoenas should be issued in this

EXHIBIT A

matter directed toward Berger, and/or the trial subpoenas should be limited as set forth below.  In support thereof, Berger states as follows:

## MEMORANDUM

1.      This case commenced on or around April 3, 2019 when the United States Judicial Panel on Multi District Litigation created a referral to this Court.  It stated, "On the basis of the papers filed and hearing session held, we find that these actions involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." (Underlining added). [ECF 1 at 1-2].[1]  Thus, the convenience of the parties and witnesses are major factors in the MDL process.

2.      In the Pretrial Order No. 13 (Deposition Protocol) [ECF 554 at 2-3], the Court noted that the Order applied to all fact depositions of witnesses who are currently or were formerly employees of MDL Defendants and stated:

> The Parties are reminded that deposition discovery in the context of MDL Proceedings can be extraordinarily complex and demanding.  The process of scheduling and taking depositions, when such large numbers of cases and attorneys are involved, requires a large degree of coordination, cooperation, and effort.  Counsel are expected, throughout this process, to meet and confer and to strive to reach agreement between and among all involved Parties where possible.

---

[1]  All ECF references will be to 3:19-md-2885 unless otherwise indicated.

Thus, this Court recognized the need for coordination and cooperation.

       3.     In Pretrial Order No. 23 (Bellwether Selection Protocol) [ECF 922] the Court noted that on December 16, 2019 there were 139,693 claimants registered in MDL Centrality in connection with the 3M litigation. The Court at that time determined that 175 cases listed on Exhibit A contained therein, would be selected as bellwether cases. From that 175 cases the Court selected six cases to proceed with case specific discovery, along with one alternate. Plaintiff Leadership and Defendants were directed to each select nine cases from the remaining potential bellwether candidates - seven cases to proceed with discovery, two cases as alternates - using a below described process, resulting in an initial discovery pool of 20 cases and 5 alternates.[2]

       4.     In Pretrial Order No. 35 (Remote Depositions) [ECF 1125] dated May 13, 2020, the Court, acknowledging both the issues created by COVID-19 as well as the complexity of the litigation, permitted and authorized the use of remote

---

    [2] In Pretrial Order No. 22 [ECF 898], the Court noted in Footnote 3 there was an exception for Minnesota unfiled claims, at least at that time, in light of motions to remand currently pending and under consideration in the numerous Minnesota cases filed in the 3M MDL. This indicates that there were, in fact, other cases at that time which might not be included in the current multi-district litigation. In Case Management Order No. 11 [ECF 1113], the Court found that one Minnesota case had in fact been remanded.

depositions by video conference and noted that the videographer employed by the remote deposition vendor was to record the witnesses' deposition testimony by the best technological means available including remote video capture/recording. Thus, Plaintiffs and Defendants, since mid-2020, have had the specific authority to video depositions.

5.      As evidenced by Pretrial Order No. 52 (Protocol for Case-Specific Depositions, Bellwether Trial Group A) [ECF 1357], the Court used its inherent authority to govern and control the discovery process. For example, the parties were limited to 6 case specific depositions per side. The parties were reminded that cooperation in the discovery proceeding was essential. The Court's order demonstrated particular attention to non-overlapping witnesses and overlapping joint witnesses establishing a separate protocol for each. Thus, the Court was particularly sensitive and attuned to the burden on witnesses in the individual trials.

6.      This Court has the inherent authority to make sure witnesses are not unduly burdened. In this Court's Order dated October 8, 2020 [ECF 1454 at 4], this Court stated in a footnote, *"See Equity Lifestyle Properties, Inc. v. Fla. Mowing and Landscape Serv., Inc.,* 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has

inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases . . .'"

7.     In the Magistrate's Order of December 14, 2020 [ECF 1561], Berger was identified as a hybrid fact and expert witness. Thus the parties have had almost a year to respond to that Order via depositions. In that Order, the Court concluded that Berger and Fallon had already sat for 2 days of depositions in their personal capacity and that Berger sat for 2 days of depositions as a corporate representative. The Court decided, however, that there was no sound legal or factual basis for the Court to arbitrarily limit the Trial Group A bellwether Plaintiffs' opportunity to examine Berger (and Fallon) regarding facts and opinions and thus the request for a limit on the amount of time of the deposition was denied. Thus, a full deposition ostensibly proceeded forward.

8.     This Court has also acknowledged the need for efficiency in the trials and the need to avoid repetition and undue burden. In this Court's Order of December 30, 2020 [ECF 1583 at 3], addressing a consolidation issue, the Court noted,

> While the Court appreciates the practicality of Defendants' argument, it cannot overcome the need for efficiency in the trial process. Indeed, separate trials in these three cases would be largely repetitive and thus would implicate the great many burdens, delays, and expenses that consolidation is designed to mitigate.

5

9.    In the current Motion, the Plaintiffs acknowledge that there were upcoming Group B and C bellwether trials.  This Motion was apparently not filed in relation to the *Blum* case, but agreed that there were 6 bellwether trials scheduled to start within the next four months, and two starting in three weeks.  The Plaintiffs' Motion concedes:

> [The] Defendants are likely to argue that attending repeated trials is a burden on Berger, who is 70 years old, retired, and has traveled from Indiana to Florida three times in 2021.  But testimony via remote link does not require the witness to travel at all.  <u>At some point it may no longer be reasonable to permit remote testimony at every trial, but that time has not come.</u>  At this pivotal stage of the bellwether process, compelling circumstances require live testimony from convenient locations near their homes. [Underlining added.] [Motion at 8.]

This ignores the fact that being required to testify in and of itself is burdensome in this particular context.[3]

10.    The Court has developed and implemented a comprehensive video deposition procedure to secure the testimony for use in the bellwether trials.  Pretrial Order No. 13 (Deposition Protocol) [ECF 554].  The Plaintiffs were allotted 40 days of depositions, 6 of which they used to depose Mr. Berger.  Consistent with the

---

[3] Interestingly, in Footnote 4 of Plaintiffs' Motion the Plaintiffs say that should the Motion be granted, but that each Plaintiff "may" subpoena Berger and/or Myers as their trial strategy requires.  One would presume that whether to subpoena Berger should have been determined prior to the filing of the instant Motion.

Order, the parties conducted video depositions that would serve to secure and preserve trial testimony, and there were numerous references to the jury during the depositions. Mr. Berger was deposed for 1 day in November, 2019, 3 days in December, 2019, again in September, 2020 and in December, 2020, in addition to sitting for depositions in the Modex litigation.[4] A stipulation was filed in McCombs (7:20-cv-94) [ECF 106] resulting in the Motion to Quash Berger's deposition becoming moot, in which Mr. Overholtz represented:

> Ashley, we would agree to this compromise, assuming you agree we would not be limited in scope for cross-examination of Mr. Berger, as an adverse party witness.
>
> Second, as to avoiding Mr. Berger being subpoenaed for Baker or future trials, that could be avoided if you agreed to accept and produce Mr. Berger under Subpoena to appear in Pensacola, then no one could issue a second subpoena for a future trial. We of course would agree his appearance would only be under the terms of our agreement, that he appear in your case, with you questioning first. [ECF 106, Ex. A at 3.]

The McCombs case went to trial in May, 2021. Thus, the depositions and trial testimony should obviate the need for further trial testimony.

11.    In the *Baker* case (7:20-cv-39), on May 17, 2021 the Defendants filed a Motion to Quash the Subpoenas as to Berger and Brian Myers [ECF 122]

---

[4] See Declaration of Berger, <u>EXHIBIT A</u>, paragraph 6.

which Motion was sealed and Plaintiff filed a sealed Response in Opposition [ECF

131].

The Magistrate, in his Order dated May 28, 2021 [ECF 133 at 12] filed

in the *Baker* case (7:20-cv-39) concluded the following:

> The Court must now turn to the pivotal question of whether there is
> "good cause and compelling circumstances" to permit Berger and Myers
> to testify remotely. "The Court's discretion on this question is
> supplemented by its wide latitude in determining the manner in which
> evidence is to presented under the Federal Rules of Evidence." *In re
> RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 970
> (D. Minn 2020).

Thus, this Court has wide latitude in determining the manner in which evidence is to

be presented.

In the *Baker* Order, the Magistrate commented he observed the

presentation of evidence in 2 bellwether trials, and it was "evident that the nuances

and details of Berger's testimony have evolved along with the MDL Plaintiffs' case

strategies," concluding and there would be prejudice to <u>Plaintiff *Baker*</u> if he did not

have the opportunity to question Berger before the jury. *Id.* at 13. However, the

opportunity for that questioning has in fact occurred not only in the June, 2021 *Baker*

trial, but there was an opportunity to do so again in the *Adkins* trial (7:20-cv-12)

which ended October 1, 2021, and they will have another opportunity in the trial

commencing this week.

8

Magistrate Jones noted that this is the largest MDL in American history finding there was no prejudice or inconvenience to Berger with a remote trial testimony for that specific trial. However, the Magistrate in *Baker* continued:

> In the same vein, the Court is sensitive to the fact that Berger has spent a significant amount of time testifying at his video depositions and in the prior bellwether trials - and perhaps one day the Court will need to say no more - but precluding his live testimony in this bellwether trial will not adequately "inform the parties on the future course of this entire litigation." (Underlining added.) [ECF 133 at 13.]

12.    In this Court's Order of August 30, 2021 [ECF 1895] the Court noted that the Camarillorazo case would be set for trial from November 1 through 12; the Palanki trial would also be set from November 1 through November 12; the Finley trial would be set from November 30 through December 10, 2021; the Stelling trial would be set from December 6 through December 17, 2021; and the Monterro trial would be set from December 6 through December 17, 2021. In addition to those Group C cases, the Group B bellwether consolidated cases of Hensley,[5] Sloan, and Wayman would be set for January 10, 2022 through February 4, 2022. Assuming that these motions, which are filed in the individual cases are seeking the attendance at the trial of Elliott Berger throughout this time, he in essence would be precluded from scheduling anything from November 1 - 12; November 30 - December 17; and

---

[5] Hensley case was dismissed last week.

January 10 - February 4, 2022.  To tie up a witness for a period of 56 days over the course of 3 months is an undue burden and against the entire purpose of MDL.  *See* Declaration of Elliott Berger, a true and correct copy of which is attached hereto as **EXHIBIT A.**

13.     The Plaintiffs and Defendants have had ample opportunity to depose, video, and examine at trial Elliott Berger.  The quality of the trial presentation by the increased use of Zoom and/or video depositions is in stark contrast to the old fashioned standard in which a paper deposition was read to the jury by a third party.  If, in fact, counsel for the Plaintiffs chose not to video the trials so they could use the trial testimony in later cases, that was a strategy decision that they made at the time.  Were this repetitive subpoena process to continue, arguably Mr. Berger could be subpoenaed in all the cases and claims.  That is not the intent of MDL.  It is designed to prevent this type of repetitive, duplicative abuse of witnesses.  Further, during the *Blum* trial, Plaintiffs can again fully examine him as a witness and if there is any question unasked, it can be asked then.  To repetitively subpoena or seek to subpoena Mr. Berger should not be permitted and the Motion for Protective Order should be granted as to all future cases.

14.     Alternatively, Mr. Berger is scheduled to be out of Indiana from November 1-12, 2021 to receive an award.  Thus, the remote testimony should not be

required for the *Camarillorazo* (7:20-cv-98) or *Palanki* (3:19-cv-2324) cases, and any questions for Mr. Berger should be asked in the *Blum* trial.[6] All other cases should utilize the *Blum* trial testimony or depositions.

## CONCLUSION

For the foregoing reasons, Elliott Berger, respectfully requests this Court grant this limited appearance for the filing of this Response and Motion for Protective Order, grant the Motion for Protective Order and deny the issuance of further subpoenas to Elliott Berger.

## NOTICE OF COMPLIANCE WITH RULE 7.1(B)

Pursuant to Local Rule 7.1(B) & (C), the undersigned counsel certify that they attempted in good faith to resolve the issue raised in this Motion for Protective Order through a meaningful conference with Bryan F. Aylstock, lead counsel for Plaintiff. The communication was by a phone call to Mr. Aylstock and Mr. Overholtz on October 19, 2021. Neither was available to take the call. The undersigned left voice messages but has not had a return call. The undersigned assumes that counsel for Plaintiff opposes the relief sought. Defendants' counsel, 3M

---

[6] Should this Court disagree, then simultaneous remote testimony for the November trials should be other than November 4, 2021, and at Mr. Berger's then location.

Company, 3M Occupational Safety, LLC, Aearo Technologies, LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo LLC represented that the Defendants consented to the Motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), I certify that this Motion for Protective Order is in compliance with the Court's word limit. According to the word processing program used to prepare this document, the document contains less than 2,738 words, exclusive of the case style, signature block, and this certification.

Respectfully submitted,

_/s/ Philip A. Bates_
PHILIP A. BATES
Florida Bar No. 228354
CAROL A. RUEBSAMEN
Florida Bar No. 380946
PHILIP A. BATES, P.A.
25 West Cedar Street, Suite 550 (32502)
Post Office Box 1390
Pensacola, FL 32591-1390
Telephone: (850) 470-0091
Telecopier: (850) 470-0441
pbates@philipbates.net
cruebsamen@philipbates.net
lgrove@philipbates.net
Attorney for Elliott Berger, individually

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2021, I cause a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

/s/ Philip A. Bates
PHILIP A. BATES

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | &#124; &#124; &#124; | Case No. 3:19md2885 |
| | &#124; | Judge M. Casey Rodgers |
| This Documents Relates to: | &#124; | Magistrate Judge Gary R. Jones |
| *Camarillorazo,* 7:20cv98 | &#124; | |
| *Finley,* 7:20cv170 | &#124; | |
| *Hensley,* 7:20cv93 | &#124; | |
| *Montero,* 7:20cv67 | &#124; | |
| *Palanki,* 3:19cv2324 | &#124; | |
| *Stelling,* 7:20cv143 | &#124; | |
| *Sloan,* 7:20cv1 | &#124; | |
| *Wayman,* 7:20cv149 | &#124; | |

## DECLARATION OF ELLIOTT BERGER

Under penalty of perjury, pursuant to 28 U.S.C. § 1746, Elliott Berger ("I") declare as follows:

1.    I have personal knowledge of the statements made herein or they are from the pleadings, motions, responses and orders filed in these cases.

2.    As of October 12, 2021, I concluded my contract work for 3M and have no ongoing work with 3M. Prior to October 12, 2021, I was a contract worker for 3M, employed by Volt Workforce Solutions, but not a full time employee of 3M. I retired on July 31, 2018. I am nearly 70 years old, have fully retired, and live in Indianapolis, Indiana.



3.      I understand at one point there were 139,693 claims and 20 bellwether trials set or to be set.

4.      I understand from Plaintiffs' Expedited Motion to Authorize Remote Testimony Pursuant to Rule 43(a) from 3M Fact Witness Elliott Berger and Brian Myers (Case 2885 ECF 2190) ("Motion") that there are 6 bellwether trials scheduled to start within the next 4 months, and 2 starting in 3 weeks.  I have agreed to voluntarily appear at the *Blum* trial commencing October 18, 2021, which is not one of the trials mentioned in the Motion.

5.      I understand the Plaintiffs were initially allotted 40 days of depositions, at least 6 of which they used to depose me.

6.      I sat for 2 days of depositions in my personal capacity and 3 days as a corporate representative.  I was deposed for at least 1 day in November, 2019, 3 days in December, 2019, again in September, 2020 and again in December, 2020, in addition to sitting for depositions in the Modex litigation.

7.      During the course of this Case I testified at a trial in April with 3 Plaintiffs, a trial in May, the *Baker* trial in June at which I testified remotely, and a trial in September to October 1, 2021.

8.      Based upon this Court's Order of August 30, 2021 [ECF 1895] the Court noted that the *Camarillorazo* case would be set for trial from November 1 through 12; the Palanki trial would be set from November 1 through November 12; the *Finley* trial would be set from November 30 through December 10, 2021; the *Stelling* trial would be set from December 6 through December 17, 2021; and the *Monterro* trial would be set from December 6 through December 17, 2021.   In addition to those Group C cases, the Group B bellwether consolidated cases of *Hensley,*[1] *Sloan*, and *Wayman* would be set for January 10, 2022 through February 4, 2022.   Assuming that these motions which are filed in the individual cases are seeking my attendance at the trial throughout this time, I would be precluded from scheduling anything from November 1 - 12; November 30 - December 17; and January 10 - February 4, 2022.   This would tie up my schedule for a period of 56 days over the course of the next 3 months.   That is an undue burden on me and not appropriate.

9.      My attendance at repeated trials has been a burden to me and my

---

[1]  Hensley was dismissed last week.

traveling there again in October, 2021. I am and have been unable to visit family or friends, attend meetings, plan vacations or otherwise enjoy the benefit of retirement. I currently have plans to be on vacation from November 1 through 12, 2021. I have an especially significant event, to be inducted into the North Carolina State University Engineering Department Hall of Fame, on November 4, 2021 to attend during that vacation. I cannot continue to do and attend to all that the Plaintiffs seem to want me to do even remotely.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 19, 2021.

Elliott Berger