UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Wilkerson*, 7:20cv0035 *Vilsmeyer*, 7:20cv0113 *Kelley*, 7:20cv0153 *Vaughn*, 7:20cv0134 *Beal*, 7:20cv0006 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**[1]

This Order resolves the parties' respective challenges to Drs. Antony Joseph and Douglas Jacobs (Wilkerson) under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[2] *See* ECF Nos. 2716, 2721.

I. **Legal Standard**

Rule 702, as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under Rule 702 and *Daubert*, district courts must act as "gatekeepers" to ensure the

---

[1] The Court assumes the parties' familiarity with the nature of this multidistrict litigation, the claims and defenses, and the current evidentiary record. Thus, this Order sets out only what is necessary to explain the Court's rulings.

[2] The following expert challenges will be addressed by separate Order: Drs. Hamid Djalilian, Eric Gershwin, James Crawford, and W. Chatham's case-specific opinions for Kelley; and Drs. Lawrence Lustig, Eric Bielefeld, Dennis Pappas, and Douglas Jacobs's case-specific opinions for Vaughn.

reliability and relevancy of expert testimony. *Id.* (quoting *Daubert*, 509 U.S. at 589). Expert testimony is reliable and relevant—and, therefore, admissible—when the following criteria are met: (1) the expert is sufficiently qualified to testify about the matters he intends to address; (2) the methodology used is "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* The Eleventh Circuit refers to these criteria separately as "qualification, reliability, and helpfulness," *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004), and has emphasized that they are "distinct concepts that courts and litigants must take care not to conflate," *Quiet Tech. DC-8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The party offering the expert has the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Rink*, 400 F.3d at 1292.

To meet the qualification requirement, a party must show that its expert has sufficient "knowledge, skill, experience, training, or education to form a reliable opinion about an issue that is before the court." *Hendrix ex. Rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (citing Fed. R. Evid. 702) ("*Hendrix II*"), *aff'g* 255 F.R.D. 568 (N.D. Fla. 2009) ("*Hendrix I*"). Importantly, if a "witness is relying solely or primarily on experience, then the witness must explain how that

experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). The qualifications standard for expert testimony is "not stringent" and "[s]o long as the witness is minimally qualified, objections to the level of [his] expertise [go] to credibility and weight, not admissibility." *Hendrix I*, 255 F.R.D. at 585.

To meet the reliability requirement, an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue. *Frazier*, 387 F.3d at 1261-62. The reliability analysis is guided by several factors, including: (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. "[T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech.*, 326 F.3d at 1341. The court's focus must be on the expert's principles and methodology, not the conclusions they generate. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. The test for reliability is "flexible" and courts have "broad

latitude" in determining both how and whether this requirement is met. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

Finally, to satisfy the helpfulness requirement, expert testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Relevant expert testimony "logically advances a material aspect of the proposing party's case" and "fits" the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004). Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded [under Federal Rule of Evidence] 403." *Frazier*, 387 F.3d at 1263 (internal citations excluded). "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming," or if it is otherwise unfairly prejudicial. *Id*. "Indeed, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id*. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors,

and, therefore, . . . district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id*.

When scrutinizing the reliability, relevance, and potential prejudice of expert testimony, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate factfinder. *Frazier*, 387 F.3d at 1272. The court's gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Only the jury may determine "where the truth in any case lies" and the court "may not usurp this function." *Frazier*, 387 F.3d at 1272. Thus, a court may not "evaluate the credibility of opposing experts" or the persuasiveness of their conclusions, *Quiet Tech.*, 326 F.3d at 1341; instead, its duty is limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence," *Frazier*, 387 F.3d at 1272.

## II.   Plaintiffs' Expert—Dr. Antony Joseph

Dr. Antony Joseph is a clinical audiologist and tenured professor in the Communication Sciences and Disorders Department at Illinois State University. He has more than 32 years of clinical experience—with more than 40,000 patient contacts as a clinical and occupational audiologist—including 24 years as a "uniformed, deployed military practitioner and investigator." *See* Joseph Rep., ECF No. 2812-3 at 3. As relates to the instant briefing, Dr. Joseph offers opinions

regarding whether: (1) the CAEv2's design impacted initial and continued fit and seal; (2) the design "provided the proper and necessary noise attenuation and impulsive noise insertion loss"; and (3) the CAEv2's risks, if any, outweighed its benefits. Defendants argue that certain of Dr. Joseph's opinions are outside the scope of his expertise or constitute impermissible legal conclusions and state-of-mind opinions.

Defendants first argue that Dr. Joseph is unqualified to offer opinions about the design of the CAEv2 and the adequacy of 3M's testing. The Court disagrees, in part. Like other audiologists involved in this litigation, Dr. Joseph has designed custom hearing protection devices for military service members, and also has experience sizing and fitting hearing protectors for his patients, which qualifies him to opine on how various aspects of the CAEv2's design prevented proper fit and seal due to the variability in the anatomy of the human ear and ear canal. *See In re 3M*, 3:19md2885, ECF No. 1680 at 108-14. Dr. Joseph has not personally performed REAT testing, but he has specialized knowledge and training on it, and has modeled it in his lab, and he has extensive experience evaluating and recommend hearing protectors from a clinical perspective, based partially on NRR labeling. Based on his familiarity with hearing protector testing, Dr. Joseph is at least "minimally qualified" to opine on the REAT testing of the CAEv2. *See id.* at 109; *see also In re C.R. Bard., Inc. v. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2018

WL 514753 at *3 (S.D. W.Va. Jan. 23, 2018).  To be clear, however, Dr. Joseph's opinions regarding the CAEv2's testing may not exceed the scope of his experience-based expertise with REAT testing.  *See Bouton v. Ocean Beach Props*., No. 16-cv-80502, 2017 WL 4792488, at *15 (S.D. Fla. Oct. 23, 2017).

Defendants' challenge to portions of Dr. Joseph's opinions as impermissible legal conclusions is granted, in part.  As explained in a prior Order, which the Court incorporates by reference here, questions of law are not the proper subject of expert testimony.  *See In re 3M*, 3:19md2885, ECF No. 1680 at 114-20.  This rule requires exclusion of expert testimony about "the meaning of a statute or regulation or about whether someone violated the law . . . [,] the meaning of legal terms or the legal effect of statutes or laws." *See id*. at 116.  It also precludes an expert's use of terminology with distinct and specialized legal import.  *See id*.  However, "a qualified expert may testify about the industry standards of care, which may be reflected in regulations and statutes, and he can testify about how a reasonable operator in the industry would comply with these statutes and regulations." *See id*. at 117.

Consistent with those rules, Dr. Joseph may offer opinions—within the sphere of his clinical expertise—on the alleged problems with the design, fit and/or seal of the CAEv2, and on whether Defendants adhered to the general industry standard of care for hearing protector labels (including ANSI standards), from a clinical

perspective. *See id*. at 118. He may not, however, couch his opinion in legal terms that "carry special meaning under the law and are contingent upon application of the appropriate standard of care," such as "defective," "duty," "unreasonably dangerous," or "failed to warn." *See id*. at 119. "With that said, he may use different words—that is words that are not legal terms of art—to convey the same opinion." *See id*., ECF No. 2218 at 20.

Defendants also object that Dr. Joseph improperly opines on their state of mind by offering opinions as to what they "knew" about the alleged defects and the import of their internal testing data. The Court agrees that testimony of this nature is improper and must be excluded. Experts may testify about whether information in Defendants' internal documents indicated certain risks to users of the CAEv2, but they may not opine about Defendants' knowledge, intent, or motives. *See id*., ECF No. 1680 at 119-20; *see also Tillman v. C.R. Bard, Inc*., 96 F. Supp. 3d at 1333 (permitting expert to opine "on what information and knowledge was available to [the defendant]" but excluding opinion on defendant's "intent, motive, or what it should have done with that information"); *Deutsch v. Novartis Pharm. Corp*., 768 F. Supp. 2d 420, 443 (E.D.N.Y. 2011).

**III. Defendants' Expert—Dr. Douglas Jacobs**

Plaintiffs move to exclude Dr. Douglas Jacobs's testimony and opinions regarding any impact of Wilkerson's hearing loss and tinnitus on his PTSD, suicidal

ideation, overall distress, sleep and employment, and the consistency of reporting of Wilkerson's auditory symptoms in his medical records. Wilkerson will not introduce evidence or argument that his PTSD is exacerbated by his hearing loss and tinnitus; therefore, Dr. Jacobs's PTSD opinion is excluded on relevance, helpfulness, and 403 grounds. Dr. Jacobs' suicidal ideations opinion is excluded for similar reasons. Wilkerson is pursuing only garden-variety complaints related to mental anguish, distress and/or loss of enjoyment of life here, and suicidal ideation is not a garden-variety mental health complaint.

Dr. Jacobs's opinion that Wilkerson's "hearing loss/tinnitus contributed none or negligibly to his overall distress" is admissible. *See* Jacobs Rep. (Wilkerson), ECF No. 2716-23 at 6, 43. Although Dr. Jacobs never personally interviewed Wilkerson, he demonstrably reviewed Wilkerson's medical and service records, and explained how and why their contents support his conclusion that other factors (e.g., work and financial stressors) were and are the cause of Wilkerson's garden-variety mental health symptoms. Of particular note to Dr. Jacobs, the records contained no indication that Wilkerson had ever previously told a health care provider that his psychiatric symptoms were triggered or exacerbated by any alleged hearing injuries. Observations of this nature are fairly within the scope of a psychiatrist's expertise. Factual disagreements with the bases and persuasiveness of Dr. Jacobs's conclusions

regarding the source of Wilkerson's "overall distress" bear on weight, not admissibility.

Dr. Jacobs' sleep and employment opinions are admissible, in part. Dr. Jacobs is qualified by training and clinical experience to evaluate Wilkerson's sleep and employment claims from a psychiatric perspective. To the *very* limited extent that Dr. Jacobs explained how Wilkerson's records reflect mental health or other external factors (e.g., financial stressors, sleep apnea) cause or contribute to Wilkerson's sleep and employment problems, his opinions are admissible. In all other respects, including Dr. Jacobs' assessment of whether there is support in Wilkerson's records for the proposition that tinnitus impacts his sleep and employment, these opinions are excluded. The jury needs no help from an expert to decide this question. *See* Fed. R. Evid. 403.

Last, Dr. Jacobs' opinions regarding the consistency of reporting of Wilkerson's auditory symptoms in his medical records are excluded. He is wholly unqualified to, and may not, offer any opinion on the existence or cause of Wilkerson's hearing injuries, or otherwise report on what is documented in Wilkerson's medical records with respect to their etiology. *See, e.g., In re 3M*, 3:19md2885, ECF No. 2218 at 53-54. Dr. Jacobs is not an otolaryngologist, neurotologist or audiologist, and he has no specialized training or experience in those fields. He has never before reviewed medical records and formed an opinion on the

etiology of a patient's hearing injuries, and he did not perform any independent assessment of causation for Wilkerson's alleged hearing injuries.  *See id*.  Thus, Dr. Jacobs lacks any reliable basis for commenting on the cause of Wilkerson's hearing problems.  Moreover, merely restating what is reported in Wilkerson's medical records would be unhelpful because it does not provide any insight or analysis beyond what a jury can read from the records themselves.  *See id*., ECF No. 1910 at 23.  Finally, Dr. Jacobs is also precluded from referencing disability benefits and the availability of tools for managing hearing loss and/or tinnitus.

## IV.     Conclusion

Based on the foregoing, the parties' motions to exclude the expert opinions of Drs. Antony Joseph and Douglas Jacobs (Wilkerson) under Rule 702 and *Daubert*, ECF Nos. 2716 and 2721, are **GRANTED IN PART and DENIED IN PART**, consistent with this Order.  The remaining expert challenges will be resolved by separate order.

**SO ORDERED**, on this 10th day of March, 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**