**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION LIABILITY LITIGATION<br><br>This Document Relates to:<br>*All Cases* | CASE NO.: 3:19-MD-2885-MCR-GRJ<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

## DEFENDANTS' MOTION TO REQUIRE PAYMENT OF FILING FEES

**INTRODUCTION**

For more than eighteen months, plaintiffs' attorneys in this MDL proceeding were permitted to file un-vetted claims at no cost on an administrative docket. Unlike other cases filed in federal courts, no filing fees were required, no *pro hac vice* fees, no service of process, no vetting of claims.  All that was required to start a federal action in this MDL proceeding was a form complaint that named the plaintiff and identified alleged injuries from a list of options.

With all meaningful and customary barriers to filing a lawsuit removed, this MDL quickly became the largest in history.  Plaintiffs' lawyers no longer needed to determine whether an individual case had merit before filing a complaint. They continually inflated the number of claims through expansive advertising, spending more than $25 million to collect what plaintiffs' counsel themselves described as yet-to-be-vetted cases.

Before the creation of a separate administrative docket, which excused the filing fee and other basic requirements for initiating a case, there were 2,700 filed cases pending in this MDL proceeding.  MDL. Dkt. 840 (11/22/2019 Hr'g Tr. at 4. Following the elimination of basic case-initiation requirements and the associated procedural protections for defendants, there were more than 265,000 actions filed on the administrative docket without being required to pay any filing fee.  Indeed, this MDL proceeding has become so large that for the last two years, in his annual report

on the federal judiciary, Chief Justice Roberts has singled out the "unusually large number of filings" associated with this MDL and has reported two separate sets of data detailing the annual number of civil filings in the U.S.—one set that includes this MDL, and one that does not. *E.g.*, Ex. 1 (Chief Justice Roberts, *2021 Year-End Report on the Federal Judiciary*) at 8. Of the over 280,000 Earplug MDL filings (for 2020/2021) discussed in Chief Justice Roberts' reports, fewer than 15,000 had paid a filing fee or complied with other basic requirements for initiating an action.

Moreover, many filings on the administrative docket are listed as pro se filings even though most of the claimants are not pro se and, instead, are represented by counsel. As a result, the Northern District of Florida accounted for more than 73% of all of the pro se filings in the country for the 12-month period ending in September 2020 (with 197,118 pro se filings) and for more than 56% of all civil pro se filings in the country for the 12-month period ending in September 2021 (with 82,301 pro se filings)—even including prisoner petitions. *See* Ex. 2 (U.S. District Courts—Civil Pro Se and Non-Pro Se Filings—During the 12-Month Periods Ending September 30, 2020, *available at* https://www.uscourts.gov/statistics/table/c-13/judicial-business/2020/09/30), *see* Ex. 3 (U.S. District Courts—Civil Pro Se and Non-Pro Se Filings—During the 12-Month Periods Ending September 30, 2021, *available at* https://www.uscourts.gov/statistics/table/c-13/judicial-business/2021/09/30).

The Court has recently begun to dismantle the administrative docket and is taking other steps towards initial vetting of claims.  In particular, the Court has started requiring that plaintiffs' counsel transition cases from the administrative docket and pay filing fees.  But under the schedule set forth by the Court, 180,000 plaintiffs do not yet have a deadline to pay filing fees and more than 9,000 plaintiffs have been allowed several months to pay filing fees. Even if the Court identifies 25,000 plaintiffs to transition their cases per month, it will take almost a year to complete the transfer of so many cases at the current pace.

There is no reason to further delay the payment of filing fees, which should have been required from the very beginning.  Federal law is clear that the clerk of the district court "*shall require* … a filing fee of $350" whenever any party "institute[s] *any* civil action, suit or proceeding."  28 U.S.C. § 1914 (emphases added).  Under, 28 U.S.C. § 1914(c), "[e]ach district court by rule or standing order may require advance payment of fees."  Here, the Local Rules of the United States District Court for the Northern District of Florida require that "a party who files or removes a civil case must simultaneously either pay any fee required under 28 U.S.C. § 1914 or move for leave to proceed in forma pauperis under 28 U.S.C. § 1915."  N.D. Fla. Loc. R. 5.3; *see also* http://www.flnd.uscourts.gov/fee-schedule (requiring filing fee of $402 for a civil case).  Those filing fees act as a barrier to the filing of frivolous suits, and also raise much-needed revenue for the federal

government, including for the court system.  Requiring filing fees from the hundreds of thousands of plaintiffs who have brought cases at no cost will thus benefit the federal judicial system by providing millions of dollars of revenue, and protect the court system and defendants from frivolous claims by helping to winnow out those that lack merit.

## BACKGROUND

As of November 2019, there were approximately 2,700 filed cases pending in this MDL proceeding.  MDL Dkt. 840 (11/22/2019 Hr'g Tr.) at 4.[1]  On December 6, 2019, the Court created an administrative docket and stated that "[a]ll cases placed on the inactive administrative docket will be subject to the jurisdiction of the Court." MDL Dkt. 864 (Pretrial Order No. 20) at 2.  In that and related orders, the Court ordered that all claimants on the administrative docket would get the benefit of certain Court orders and resources, including the Court's protective order and its Privacy Act orders authorizing federal agencies to disclose confidential information. MDL Dkt. 864 (Pretrial Order No. 20) ¶ 2; *In re 3M Administrative Docket,* Order

---

[1] *See also* Ex. 4 (November 19, 2019 MDL Statistics Report - Distribution of Pending MDL Dockets by Actions Pending, U.S. Judicial Panel on Multidistrict Litigation, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDLs_by_Actions_Pending-November-19-2019.pdf).

No. 1 ¶¶ 2-3 (Admin. Dkt. 3).[2]  And while the Court required all plaintiffs on the administrative docket to submit short-form complaints via MDL Centrality, *see* MDL Dkt. 864 (Pretrial Order No. 20) ¶ 3; Admin. Dkt. 3 ¶ 4, the Court determined that several of the other basic requirements for initiating a case in federal court would not apply to the administrative docket.  The Court's order provided that "[n]o filing fee is required while a case remains on the inactive administrative docket," that a plaintiff on the administrative docket should not serve his short-form complaint on the defendants, and that attorneys need not seek admission *pro hac vice* (and pay the requisite fee) to represent a plaintiff on the administrative docket.  MDL Dkt. 864 (Pretrial Order No. 20) ¶ 4; Admin. Dkt. 3 ¶ 5.

Before any cases were placed on the administrative docket, Plaintiffs' counsel described such unfiled cases as "yet-to-be vetted cases." MDL Dkt. 469 (6/17/2019

---

[2] *See also In re 3M Administrative Docket,* Order No. 1 ¶ 2 (Admin. Dkt. 3.) ("A primary purpose of the 3M MDL administrative docket is to enable the Court to facilitate an efficient process by which the parties may submit *Touhy* requests to the Department of Defense and the Department of Veterans Affairs for confidential information related to the previously unfiled claims.  The 3M MDL administrative docket is also designed to ensure that MDL resources—including the electronic litigation support apparatus put in place by the Court and paid for, in part, by Defendants and Plaintiffs' Common Benefit Fund—are used only for the benefit of plaintiffs who are actually part of the 3M MDL and can be the subject of a *Touhy* request.").

CMC Hr'g Tr.) at 18-19.[3]   Plaintiffs' counsel further described cases on the administrative docket, such as the *Garcia* bellwether case, as cases that likely would never have been filed on a regular docket.[4]   The *Garcia* bellwether case, which plaintiff's counsel voluntarily dismissed shortly after discovery began, is exemplary. Plaintiffs' counsel explained that cases such as *Garcia* (and the *Burgus* case, which plaintiffs' counsel described as "similar") were on the administrative docket not because a decision had been made as to the viability or merits of the cases, but in order to obtain *Touhy* records so that yet-to-be-vetted cases could be vetted.[5]   The lack of vetting, or even the most basic analysis, of claims on the administrative

---

[3] *See also* MDL Dkt. 1027 (3/4/2020 Hr'g Tr.) at 66:16-67:7 (plaintiffs' counsel discussing production requirements for certain cases on the administrative docket and noting that "[t]hese cases, the vast majority of which are on the administrative docket, are being investigated still by the Plaintiffs.").

[4] Plaintiff's Resp. to Order to Show Cause at 7 (*Garcia,* Case No. 20-cv-072, Dkt. 14 ("Were it not for the unique situation this litigation has found itself in with respect to *Touhy* records and the need for cases to be filed on the administrative docket in order to obtain these records, Mr. Garcia's case would likely still be unfiled.").

[5] *Id.* ("Additionally, while a complaint was ultimately filed on his behalf, it was filed on the administrative docket as ordered by Pretrial Order No. 22, so that his attorneys could obtain his *Touhy* records (medical and military) and further evaluate his case."); *see also* MDL Dkt. 1225 (7/6/2020 Hrg. Tr.) at 14 (plaintiffs' counsel describing Lonnie Burgus' case as similar to Sigifredo Garcia's case, "including the fact that, although his case was filed, it was initially filed on the administrative docket").

docket is illustrated by the inclusion of 11,000 active claims involving plaintiffs who filed more than one case.

At or around the same time the filing fee, service, and *pro hac vice* requirements for these cases were eliminated, another critical feature of MDL litigation was suspended: the plaintiff information fact sheet or initial census forms. Plaintiff fact sheets (or, in this case, initial census forms) are standard in large MDLs like this one. *See* Ex. 5 (Guidelines & Best Practices For Large & Mass-Tort MDLs, Bolch Jud. Instit., Duke Law School (2d ed. Sept. 2018) ("Duke MDL Guidelines")) at 10 ("BEST PRACTICE 1C(v)" "plaintiff and defendant fact sheets, which can provide information useful for case management…. Fact sheets also help to uncover cases that should not have been centralized in the first instance."); *id.* ("Fact sheets are one of the most useful and efficient initial mechanisms for obtaining individual discovery in large mass-tort MDLs."). This further led to the proliferation of un-vetted claims as the barriers to entry became practically nonexistent.

Consistent with MDL practice, the Court initially ordered that "[e]ach Plaintiff must complete and serve on Defendants through MDL Centrality answers to the Initial Census Questions." *See* MDL Dkt. 775 (Pretrial Order No. 18) at 2. As is required in other MDL proceedings, the Court ordered on October 22, 2019, that plaintiffs provide responses to a series of questions regarding product use and injury claims and that they swear to the accuracy of those claims under penalty of perjury.

*Id*. at 1-3. The Court also required plaintiffs to produce certain personnel and medical records so that their claims could be assessed. *Id.* at 3-6. But that requirement was short-lived; just a month later, obligations on plaintiffs in the active docket to provide information about their claims and to produce records were suspended. MDL Dkt. 836 (CMO 6).

In suspending initial discovery (census) information deadlines, the Court cited "the difficulty in obtaining records from the military." MDL Dkt. 840 (11/22/2019 Hr'g Tr.) at 4:18-19; MDL Dkt. 836 (CMO 6). The fact that a case involves military records, however, does not excuse plaintiffs' discovery obligations, nor does it prevent plaintiffs from answering basic questions related to their claims such as whether and when they allegedly used the CAEv2 or what injuries they allegedly experienced. Furthermore, the Department of Justice has stated that various records sought by Plaintiffs are already available to them through military and veteran websites and other sources. Ex. 6 (Kolsky Letter) at 2. The Department of Justice urged plaintiffs to use these resources. *Id.* In addition, using standard forms from the DOD or VA (including forms beyond those cited by the Department of Justice), veterans and soldiers can request free copies of medical records and personnel files

themselves.[6]  The Court recently required all plaintiffs who have not submitted a DD 214 to produce either a DD 214 or a DoD Military Service Information Report produced by the VA Blue Button (colloquially, the "Blue Button Report"), which is available through MyHealtheVet, to establish their military service.  MDL. Dkt. 2911 (CMO 40) at 2.

Indeed, for almost two years most plaintiffs were not required to provide *any* records or essential information about their claims. Initial census form obligations remained suspended until July 2021.  MDL Dkt. 1848 (Pretrial Order No. 81) at 1. Even when initial census form obligations were reinstated, the previous requirement that the initial census questions be answered under penalty of perjury was eliminated.  *Id*. at 2.[7]  And the Court also did not require claimants to provide copies of any documents or medical records they might have available to support their claims.[8]

---

[6] The fact that production of records by the DoD and VA is necessary to fully defend and analyze the claims in this litigation does not excuse plaintiffs from obtaining and producing the subset of records that are available to them directly.

[7] *See also* Ex. 5 (Guidelines & Best Practices For Large & Mass-Tort MDLs, Bolch Jud. Instit., Duke Law School (2d ed. Sept. 2018)) at 10 (to serve their intended purpose, fact sheets "should be deemed a form of discovery governed by the relevant Federal Rules of Civil Procedure, requiring the same level of completeness and verification").

[8] *See* Ex. 5 (Guidelines & Best Practices for Large & Mass-Tort MDLs, Bolch Jud. Instit., Duke Law School (2d ed. Sept. 2018)) at 11 ("[R]equiring the collection of

As a result of the suspension of initial discovery (census) document and information obligations, there is an extremely small volume of records and little reliable data available to determine whether any particular plaintiff ever used the CAEv2 or has suffered any injury, let alone an injury that could even theoretically be attributed to the CAEv2. For the initial cases where information *has* been discovered, there have been numerous dismissals and 3M trial victories. Of the 27 bellwether plaintiffs, eight were dismissed and five resulted in trial victories in favor of 3M—meaning 13 out of 27 bellwether plaintiffs were dismissed, with three cases not yet fully tried.[9] And among the plaintiffs who are part of the first "wave" ordered by the Court—the early tranche of cases in which incentives to remain in the

---

plaintiffs' medical records (in personal injury cases) or employment histories (in employment cases) is another straightforward way that a transferee judge can encourage a robust exchange of key information at a relatively early stage. This information can help defendants verify the answers provided in the fact sheets and can shed light on the potential causes of the plaintiffs' injuries."); *see also* MDL Dkt. 2911 (CMO 40) (recently requiring production of DD 214 or Military Service Information Report).

[9] *See Burgus* (Case No. 7:20-cv-007) Dkt. 11; *Garcia* (Case No. 7:20-cv-072) Dkt. 16; *Hensley* (Case No. 7:20-cv-093) Dkt. 59; *King* (Case No. 7:20-cv-132) Dkt. 21; *Lopez* (Case No. 7:20-cv-060) Dkt. 24; *McNeal* (Case No. 7:20-cv-066) Dkt. 24; *Rowe* (Case No. 7:20-cv-026) Dkt. 30; *Taylor* (Case No. 7:20-cv-071) Dkt. 24; *Blum* (Case No. 7:20-cv-122) Dkt. 119; *McCombs* (Case No. 7:20-cv-094) Dkt. 157; *Montero* (Case No. 20-cv-067) Dkt. 132; *Palanki* (Case No. 3:19-cv-2324) Dkt. 135; *Stelling* (Case No. 20-cv-143) Dkt. 176.

litigation are at their highest—so far 96 plaintiffs were either dismissed, removed from the first wave, or had their cases stayed for various reasons, including because people on whose behalf plaintiffs' counsel filed cases could not be contacted. Even with respect to wave discovery, document production is incomplete for a significant number of plaintiffs. Yet currently available records already indicate a substantial number of plaintiffs who had military noise exposure without any hearing protection; plaintiffs with conductive hearing loss which is not caused by noise; injuries alleged to have occurred before CAEv2 use; and other alternate causes of alleged injuries.

The combination of these orders allowed plaintiffs' attorneys to initiate an action in federal court without any meaningful obligations or the ordinary procedural protections for defendants:  no filing fees, no service costs, no *pro hac vice* applications or fees, minimal or no vetting, no need to prepare a detailed complaint that could support a claim to relief, no obligation to provide an initial discovery disclosure, and not even an obligation to disclose when or where the plaintiff alleges to have used the product at issue in this litigation. Instead, plaintiffs' attorneys were simply required to put their clients' names on short-form complaints and tick a few boxes identifying the defendants, claims asserted, and alleged injuries (none of which vary substantially from case to case). With barriers to entry practically nonexistent, case numbers exploded. Encouraged by massive advertising

expenditures by plaintiffs' attorneys, who could now bring a case at no cost, tens of thousands of plaintiffs filed complaints on the administrative docket.  More than 265,000 Plaintiffs have filed individual claims on the administrative docket, making this the largest MDL in history.  Indeed, data provided by the Judicial Panel on Multidistrict Litigation shows that, as of March 16, 2022, this MDL had more than twice as many claims as the other 182 pending MDLs combined.[10]

On August 20, 2021, the Court ordered 1,358 of the more than 250,000 then-remaining cases on the administrative docket to transfer to the MDL docket, only then triggering the responsibility to pay a filing fee.  MDL Dkt. 1876 at 1-2, 4.  On September 3, 2021, the Court ordered an additional 24,393 cases to be transitioned to the MDL docket.  MDL Dkt. 1915 at 2-3.  On January 31, 2022, the Court ordered the transition of 23,744 cases by April 1, 2022 (MDL Dkt. 2652 (Transition Order #3) at 1), and on March 1, 2022, the Court ordered the transition of 23,016 cases by May 2, 2022.  MDL Dkt. 2825 (Transition Order #4) at 1.  The deadline for transitioning cases from the administrative docket had passed for 58,775 of the

---

[10] *See* Ex. 7 (March 16, 2022 MDL Statistics Report - Distribution of Pending MDL Dockets by Actions Pending, U.S. Judicial Panel on Multidistrict Litigation, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_ By_Actions_Pending-March-16-2022.pdf).

plaintiffs on the administrative docket. But there are still more than 180,000 cases on the administrative docket with no filing fee yet required.

## ARGUMENT

The waiver of an initial filing fee and other basic requirements for initiating a case cannot be reconciled with statutory filing requirements and has dramatically inflated the size of this MDL by permitting tens of thousands of un-vetted claims to be filed in federal court at no cost to plaintiffs or their attorneys.

Waiver of the filing fees and other basic requirements never served a necessary purpose in this MDL. Even assuming *arguendo* it were necessary to create an "administrative docket" to obtain records from the DOD and VA, nothing about that purported need justifies excusing filing fees and other basic requirements and procedural protections. Indeed, as discussed below, federal law requires the payment of a filing fee for *any* "civil action, suit or proceeding." 28 U.S.C. § 1914(a). There is no "administrative docket exception" to that statute.

Although the Court is now correctly dismantling the administrative docket, given the enormous size of the docket and all the demands on the clerk's office, it will understandably take time to transfer all cases to the active docket. There is no reason, however, for any delay in requiring all plaintiffs on the administrative docket to pay filing fees, which should have been collected as soon as complaints were filed. The statutorily mandated fees are already months or years overdue. The fees will

also have two significant benefits: providing the federal courts with revenue to defray the costs of this enormous litigation, and finally forcing plaintiffs' attorneys to vet their cases.

### A.    The Statute Unambiguously Requires the Clerk to Assess a Filing Fee for Each Complaint Filed in This MDL.

There can be no serious question that Congress has required the clerk to assess a filing fee for each complaint filed in this MDL.  28 U.S.C. § 1914 requires the payment of a filing fee for "*any* civil action, suit or proceeding" that a party "institut[es]" in district court, "whether by original process, removal or *otherwise*." 28 U.S.C. § 1914(a) (emphases added).[11]  As the Supreme Court has repeatedly held, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *Gonzales*, 520 U.S. 1, 5 (1997) (citation omitted).  Thus, there is no limitation or qualification on the type of civil action or proceeding subject to the imposition of the filing fee.  The phrase "or otherwise" is similarly broad and places no limitation on the *means* by which the action or proceeding is instituted in district court.  *See Gravitt v. Sw. Bell Tel. Co.*, 430 U.S. 723, 723-24 (1977) (giving expansive reading to phrase "or otherwise" in 28 U.S.C. § 1447(d)); *Bowles v.*

---

[11] Local Rule 5.3 provides that "[a] party who files or removes a civil case must simultaneously either pay any fee required under 28 U.S.C. § 1914 or move for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915."  N.D. Fla. Loc. R. 5.3; *see* http://www.flnd.uscourts.gov/fee-schedule (requiring $402 filing fee for civil case).

*Hayes*, 155 F.2d 351, 354 (3d Cir. 1946) (giving unrestricted meaning to "or otherwise" in Price Control Act); *see also In re Diet Drugs*, 325 F. Supp. 2d 540, 542 (E.D. Pa. 2004) ("By including the words *proceeding* and *otherwise*, Congress has given the statute a very broad reach." (emphasis in original)).

There are few exemptions from the filing fee required under § 1914(a) and the Local Rules, none of which applies here.  The first is in the statutory provision itself: the fee for an application for a writ of habeas corpus is $5.  28 U.S.C. § 1914(a). Further, the filing fee may be waived in whole or in part for a person who obtains *in forma pauperis* status.  *Id.* § 1915(a)(1); *see also* N.D. Fla. Loc. R. 5.3 (discussing motions for leave to proceed *in forma pauperis*).  Seamen may also institute certain types of suits "without prepaying fees or costs or furnishing security therefor."  28 U.S.C. § 1916.  Finally, the United States government and its agencies are exempt from paying filing fees.  *See* 28 U.S.C. § 2412(a)(2); H.R. Rep. No. 102-1006, at 22 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3931.

There is no exemption or fee waiver for claims filed in the context of multidistrict litigation or filed on any administrative docket.  In the absence of any such statutory exemption, Congress has made clear that the Clerk "shall require" payment of the fee.  28 U.S.C. § 1914(a).  *See, e.g.*, *McCune v. United States*, 406 F.2d 417, 419 (6th Cir. 1969) (motion to vacate sentence under 28 U.S.C. § 2255 is "a civil action" for which "clerk has no choice but to charge … filing fee" required

by § 1914(a)); *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012) (holding that § 1914(a) "*requires* each party instituting a civil action to pay a filing fee") (emphasis added); *see also Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he mandatory 'shall' … normally creates an obligation impervious to judicial discretion.") (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).   Other MDL courts thus adhere to the plain text of § 1914(a) and require the payment of the filing fee at the time a complaint is filed.   *See In re Diet Drugs*, 325 F. Supp. 2d at 542 ("The filing of a separate complaint constitutes the institution of a civil action or proceeding—if not by original process or removal, then *otherwise*.") (emphasis in original).   The Duke MDL guidelines also advise that filing fees should always be collected from plaintiffs who join an MDL.   *See* Ex. 3 at 22 & n.81 (observing that an order permitting direct filing "should not alter filing-fee requirements").

A complaint filed in an MDL—even if it is just a "short form" complaint—commences a "civil action, suit or proceeding."   Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").   Such an action is "institut[ed]" in district court either "by original process" (because it is the first complaint by that single plaintiff), or "otherwise" (because, for example, it was transferred to the MDL court).   The complaints filed on the administrative docket therefore fit comfortably

within the wide reach of § 1914(a) and are subject to the filing fee requirement.  *See* 28 U.S.C. § 1914(a).

**B.    The Lack of a Filing Fee for Cases Filed on the Administrative Docket Nullifies the Salutary Purposes of 28 U.S.C. § 1914.**

Requiring the filing fee in this litigation is not only statutorily mandated, but would advance the "two salutary purposes" of § 1914.  The first purpose is to serve as "a revenue raising measure."  *In re Diet Drugs*, 325 F. Supp. 2d 540 at 541.  The filing fees are deposited with the Treasury, with $190 of each fee assigned to a special fund "to be available to offset funds appropriated for the operation and maintenance of the courts of the United States."  28 U.S.C. § 1931(a).  The second purpose is to "act[] as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits."  *In re Diet Drugs*, 325 F. Supp. 2d at 541.  Neither of these goals is achieved when filing fees are not required for complaints filed on the administrative docket.

**1.    Congress Expects Filing Fees to Provide Essential Funding for the Federal Court System.**

Filing fees are an important, and much needed, source of revenue for the federal court system.  *See Malibu Media, LLC*, 295 F.R.D. 527 at 534 (section 1914(a) "generates much needed revenue to offset the administrative cost of federal litigation").  Under 28 U.S.C. § 1931(a), $190 of each filing fee is deposited into "a special fund of the Treasury to be available to offset funds appropriated for the

operation and maintenance of the courts of the United States."[12]  Thus, the Senate

Report accompanying the Federal Courts Improvement Act of 1996 described the

fee as an "initial 'user fee' for *all* litigants not proceeding in forma pauperis."  S.

Rep. No. 104-366, at 38 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4202, 4218

(emphasis added).

Indeed, the importance of the revenue generated from the fee was emphasized

when Congress enacted section 301 of the Federal Courts Administration Act of

1992, Pub. L. No. 102-572, 106 Stat. 4506, 4511.   That provision amended 28

U.S.C. § 2412(a) by adding the following subparagraph (2):

> A judgment for costs, when awarded in favor of the United States in an
> action brought by the United States, may include an amount equal to
> the filing fee prescribed under section 1914(a) of this title. The
> preceding sentence shall not be construed as requiring the United States
> to pay any filing fee.

106 Stat. 4511.  As the legislative history of that provision explains, because the

United States is exempt from paying filing fees in civil actions, "the cost to the court

of adjudicating meritorious civil actions brought by the United States [could not] be

---

[12] In addition to the $350 fee expressly mentioned in 28 U.S.C. § 1914(a), the District
Court Administrative Fee Schedule, "issued in accordance with 28 U.S.C. § 1914,"
provides for "administrative fee for filing a civil action, suit, or proceeding in a
district court, $52."   United States Courts, District Court Miscellaneous Fee
Schedule, *available at* https://www.uscourts.gov/services-forms/fees/district-court-
miscellaneous-fee-schedule.

defrayed to the extent of the filing fee." H.R. Rep. No. 102-1006, at 22, *reprinted in* 1992 U.S.C.C.A.N. at 3931. The amendment corrected that situation "by permitting prevailing United States plaintiffs to recover the amount of the filing fee, which is then made available to the judiciary." *Id.*; *see* 28 U.S.C. § 1931(a) ($190 of each amount paid to United States as part of a judgment for costs under 28 U.S.C. § 2412(a)(2) is deposited into special Treasury fund for the federal courts).

In this MDL, as of March 23, 2022, more than 200,000 individual plaintiffs remained on the administrative docket and had availed themselves of the benefits of rulings by this Court, all while depriving the court system of more than $80 million in fees. 28 U.S.C. § 1931(a); *see, e.g.*, *In re Diet Drugs*, 325 F. Supp. 2d at 542 (without the payment of filing fees in MDL action, "the federal fisc and more particularly the federal courts are being wrongfully deprived of their due"); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2019 WL 13139424, at *1 (S.D.N.Y. May 22, 2019); *Schwartz v. Maxim Healthcare Servs., Inc.*, No. CIV. JFM-15-1508, 2015 WL 4920299, at *1 (D. Md. Aug. 14, 2015) ("Filing fees help defray, however modestly, the expense to the court (and ultimately to the public) in litigation …."); *In re Asbestos Prods. Liab. Litig.* (No. VI), No. CIV. A. 2 MDL 875, 1996 WL 239863, at *5 n.12 (E.D. Pa. May 2, 1996) (requiring payment of fees in more than 17,000 maritime asbestos cases because "the costs applicable to these filings are great and the burden and cost to the court system has

19

been considerable"); *In re Seroquel Prods. Liab. Litig.*, No. 606MD-1769-ORL-22DAB, 2007 WL 737589, at *3 (M.D. Fla. Mar. 7, 2007) (filing fees help defray "the cost of managing" large numbers of "cases in the federal court system as a whole, both as part of [a] multi-district case and once remanded to the transferor or other proper court, as individual cases").

### 2. Congress Intended Filing Fees to Constitute a "Threshold Barrier" to Frivolous Lawsuits.

Filing fees, though modest, also provide a "gatekeeping" function to ensure non-meritorious claims do not burden the judicial system or defendants or, by their numerical presence, make settlement more difficult. *See In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2007 WL 737589, at *3; *In re Gen. Motors,* No. 14-md-2543, 2019 WL 13139424, at *1–2 (collecting authorities). Stated another way, "[f]iling fees … constitute a 'threshold barrier' to frivolous law suits." *Schwartz*, 2015 WL 4920299, at *1; *see also In re McDonald*, 489 U.S. 180, 184 (1989) (noting that filing fees help discourage frivolous lawsuits and allocate judicial resources to more meritorious cases). Courts have long recognized the reality that litigation costs are "borne not only by the plaintiff but by the defendant, by the taxpayer, and by parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter." *Lumbert v. Illinois Dep't of Corr.*, 827 F.2d 257, 259 (7th Cir. 1987). The filing-fee requirement incentivizes "the putative plaintiff to think about the case and not just file

reflexively"—in other words, "having to make even a modest monetary outlay may help focus his thinking." *Id.*

Plaintiffs' lawyers in MDLs historically sought to avoid paying filing fees by misjoining claims, so that multiple plaintiffs could join in one complaint and pay only one filing fee. This posed a problem of judicial administration because, "[b]y misjoining claims, a lawyer or party need not balance the payment of the filing fee against the merits of the claim or claims." *In re Diet Drugs*, 325 F. Supp. 2d at 542. Courts have uniformly rejected these efforts because § 1914(a) does not "bestow a free ride on misjoined or misjoining plaintiffs." *Id.*; *see also, e.g.*, *In re Asbestos Prods. Liab. Litig.*, No. CIV A 08-CV-61183, 2008 WL 4290954, at *1-*2 (E.D. Pa. Sept. 18, 2008) (requiring amended and severed complaint and payment of filing fee within 60 days on pain of dismissal with prejudice); *In re Gen. Motors*, 2019 WL 13139424, at *2 (requiring amended and severed complaint and payment of filing fee within 90 days of order). Many of the same concerns that motivated courts to prohibit misjoinder support requiring payment of the filing fees here.

## CONCLUSION

For the foregoing reasons, the Court should require that within 30 days all Plaintiffs on the administrative docket pay the $402 filing fee mandated by 28 U.S.C. § 1914(a) and Local Rule 5.3.

Dated:  April 5, 2022

Respectfully submitted,

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com

Kimberly Branscome
DECHERT LLP
633 W. 5th St., Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5762
kimberly.branscome@dechert.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 5,342 words.


 Dated:  April 5, 2022

<div style="margin-left:40%">

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo LLC*

</div>

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on April 5, 2022, Defendants' counsel conferred with Plaintiffs' counsel on this issue pursuant to the Court's Local Rule 7.1(B).

Dated:  April 5, 2022

*/s/ Robert C. Brock*
Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 5th day of April 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated:  April 5, 2022

*/s/ Robert C.  Brock*

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company,*
*3M Occupational Safety LLC, Aearo*
*Technologies LLC, Aearo Holding,*
*LLC, Aearo Intermediate, LLC and*
*Aearo LLC*

3