# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PROUCTS LIABILITY LITIGATION | ) ) ) ) | No. 3:19-md-02885-MCR-GRJ |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AGAINST THE DEPARTMENT OF DEFENSE AND DEPARTMENT OF VETERANS AFFAIRS, ECF NO. 2935

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

REGULATORY SCHEMES ..................................................................... 1

I.  FACTUAL BACKGROUND............................................................... 3

   A.  3M's *Touhy* Requests to the DoD………………………………… 4

   B.  3M's *Touhy* Requests to the VA…………………………………… 6

   C.  3M's Motion to Compel…………………………………………… 8

II.  ARGUMENT ...................................................................................... 9

   A.  3M's Motion is Moot Given that 3M Has Not Sought An Extension of the Discovery Period…………………………………………………… 10

   B.  The Government's Responses to 3M's Requests for Depositions Were Not Arbitrary or Capricious…………………………………………….. 12

   C.  The Government's Responses to 3M's Requests for Documents Were Not Arbitrary or Capricious………………………………………………... 22

   D.  The Government's Responses to 3M's Touhy Requests for Former Employees Were Not Arbitrary or Capricious………………………… 23

III.  CONCLUSION………………………………………………………... 25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Agility Pub. Warehousing Co. K.S.C.P. v. United States, DoD*,
   246 F. Supp. 3d 34 (D.D.C. 2017)........................................................................16

*Bowman Transp. v. Ark.-Best Freight Sys.*,
   419 U.S. 281 (1974) ...........................................................................................10

*Camp v. Pitts*,
   411 U.S. 138 (1973) .............................................................................................9

*COMSAT Corp. v. NSF*,
   190 F.3d 269 (4th Cir. 1999) ..............................................................................13

*FCC v. Fox Tel. Stations*,
   556 U.S. 502 (2009) .............................................................................................9

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005) .........................................................................11

*Moore v. Armour Pharm. Co.*,
   927 F.2d 1194 (11th Cir. 1991) ................................................................ 9, 10, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................... 9, 10

*Nat. Res. Def. Council v. Cty of Dickson Tenn.*,
   No. 3:08-cv-00229, 2010 WL 11478994 (N.D. Ga. July 20, 2010) ...................19

*Pierce v. S.E.C.*,
   786 F.3d 1027 (D.C. Cir. 2015)...........................................................................19

*Westchester Gen. Hospital, Inc. v. HHS, Ctr. for Medicare & Medicaid Services*,
   770 F. Supp. 2d 1286 (S.D. Fla. 2011)...................................................... 1, 9, 19

## <u>STATUTE</u>

5 U.S.C. § 706(2)(A)...............................................................................................9

## **REGULATIONS**

32 C.F.R. § 97.1 ................................................................................................1

32 C.F.R. § 97.6 .......................................................................................... 2, 13

38 C.F.R. § 14.800 .............................................................................................2

38 C.F.R. § 14.803(a)......................................................................................2, 3

38 C.F.R. § 14.804(d) ......................................................................................13

## PRELIMINARY STATEMENT

Defendants, 3M Company and certain of its subsidiaries, have moved for an order compelling non-parties United States Department of Defense ("DoD") and the Department of Veterans Affairs ("VA") to produce for deposition dozens of government employees and to respond to numerous requests for the production of documents.  Defs' Mot. Compel Against the Dep't of Defense and the Dep't of Veterans Affairs, ECF No. 2935 ("Mot.").  As discussed in detail below, the DoD and the VA each made reasonable decisions not to continue processing 3M's *Touhy* requests for depositions because 3M had afforded the agencies insufficient time for the requested depositions to take place, and made appropriate determinations in response to 3M's document requests.  Under the "extremely deferential" standard of review applicable here, *Westchester Gen. Hospital, Inc. v. HHS, Ctr. for Medicare & Medicaid Services*, 770 F. Supp. 2d 1286, 1295 (S.D. Fla. 2011), 3M has failed to show that the agencies' determinations were arbitrary, capricious, or otherwise unlawful.  In any event, 3M's failure to move for an extension of the discovery period renders its Motion moot.  The Court should deny 3M's Motion.

## REGULATORY SCHEMES

The DoD has established policies and procedures for release of DoD information and testimony of DoD personnel as witnesses in litigation. 32 C.F.R. § 97.1 *et seq*. The DoD limits the disclosure of DoD information and testimony of

DoD personnel related to information obtained during the individuals' performance of official duties. 32 C.F.R. § 97.6. DoD personnel are not allowed to testify in litigation without prior written approval by the agency. *Id*. The DoD has set forth factors for the DoD to consider in determining whether to allow DoD personnel to testify. 32 C.F.R. § 97.6(b). Under these provisions, the DoD may produce agency records or provide testimony in such proceedings only if the DoD determines that the disclosure is appropriate based on the factors, requirements, and procedures set forth in the regulations. These regulations help the DoD (1) avoid spending the time and money to benefit private parties, (2) conserve the time of DoD personnel for conducting their official duties, and (3) minimize the DoD's possible involvement in issues unrelated to its mission.

Likewise, the VA has established regulations that control the disclosure of official information or records, as well as testimony of VA personnel relating to any official information acquired through an individual's performance of official duties or by virtue of his or her official status. 38 C.F.R. § 14.800 *et seq*. Under these regulations, VA personnel may not provide testimony or produce VA records in connection with most legal proceedings without authorization by the agency. 38 C.F.R. § 14.803(a). The VA's regulations provide that when determining whether to authorize the release of records of testimony, the determining official should consider a number of factors, including, but not limited to, the need to conserve the

tiIme of VA personnel for conducting their official duties, whether the demand is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules, and the need to minimize the VA's possible involvement in issues unrelated to its mission   The determining official is instructed to consider both the effect in the particular case in which the document or testimony is sought, and also the effect "in future cases generally." 38 C.F.R. § 14.803(a).

## I.    FACTUAL BACKGROUND

For approximately two years, the DoD and the VA have been processing an unprecedented number of document and deposition requests in this litigation in which neither agency is a party.  *See* Decl. of Major Robert Wald ¶ 3; Decl. of Shaquana Cooper ¶ 5.  The agencies have released many thousands of pages of records and voluminous data, and have produced dozens of witnesses for deposition. *See* Wald Decl. ¶ 3.  Accordingly, this litigation—which is only one part of the heavy caseloads managed by agency counsel—has imposed a substantial burden on the agencies.  Wald Decl. ¶ 3.

The requests at issue in 3M's Motion relate to the Court's first Wave Order, issued on November 22, 2021.  ECF No. 2304.  That order provided that fact discovery must be completed within 130 days. *Id*. at 3.  The government was advised that the parties did not expect the Court to extend the discovery deadline.  Wald Decl. ¶ 4.

**A. 3M's *Touhy* Requests to the DoD**

By letter dated February 9, 2022, 3M submitted a *Touhy* request to the DoD. Mot., Ex. 1.  That request asked the DoD to "identify the individual(s) who acted as Hearing Conservation Program Managers" for specified years at 77 different military installations.   3M submitted supplemental information regarding that request on February 18, 2022.  Mot., Ex. 2.  The DoD issued a response on March 18, 2022, in which it identified the Hearing Conservation Program Managers "currently known to the Army for the respective time periods requested after a reasonable search for responsive information."  Mot., Ex. 3.

On February 17, 2022, 3M submitted a *Touhy* request to the DoD seeking "to take the depositions of the 58 individuals . . . who administered audiograms to approximately 394 of the remaining 445 Wave 1 Plaintiffs."  Mot., Ex. 4, at 1.  The request also sought various categories of documents.   *Id*. at 2-3.   The request specifically noted that, "[a]ll fact depositions related to [the wave one] cases must be completed by April 1, 2022."  *Id*. at 2.  The DoD issued a response on March 24, 2022.  Mot., Ex. 5.  The response explained that 34 of the 58 individuals identified in the request "are not currently known to be Department of Defense ("DoD") employees and therefore no Touhy authorization or denial as to them will be processed by the DoD[.]"  *Id*. at 1.  As to the remaining 24 individuals, the DOD explained that it "does not expect to be in a position to produce them for deposition

by the April 1, 2022 discovery deadline in this litigation" and that it is "aware based on our discussions with the parties and the Special Master, Hon. David R. Herndon (ret.), that the parties do not expect the Court to extend the discovery deadline." *Id*. at 3. "Under these circumstances," the DoD concluded that "it would not be a prudent use of government resources for the DoD to continue processing this request." *Id*. The DoD also denied 3M's request for documents. *Id*. at 4.

On March 8, 2022, 3M submitted a *Touhy* request to the DoD seeking to take the depositions of ten individuals identified as current employees of the DoD and for the production of various categories of documents. Mot., Ex. 6. On March 25, 2022, the DoD issued a response stating that five of the individuals were not known to be DoD employees and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to continue processing this request. Mot., Ex. 7. The response also denied 3M's request for documents. *Id*.

On March 14, 2022, 3M submitted a *Touhy* request to the DoD seeking to take the depositions of 70 individuals identified as current employees of the DoD and for the production of various categories of documents. Mot., Ex. 10. On March 28, 2022, the DoD issued a response stating that 28 of the individuals were not known to be DoD employees, that the DoD needed additional information to determine if four of the individuals are current DoD employees, and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to

5

continue processing this request.  Mot., Ex. 11.  The response also denied 3M's request for documents.  *Id*.

On March 18, 2022, 3M submitted a *Touhy* request to the DoD seeking to take the depositions of 11 individuals whom the DoD had identified as Hearing Conservation Program Managers and for the production of various categories of documents.  Mot., Ex. 13.  The request specifically noted that, "[a]ll fact discovery in Wave 1 cases must be completed by April 1, 2022."  *Id*. at 2.  On March 31, 2022, the DoD issued a response stating that seven of the individuals were not known to be DoD employees and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to continue processing this request.  Mot., Ex. 14.  The response also denied 3M's request for documents.  *Id*.

### B. 3M's *Touhy* Requests to the VA

On March 8, 2022, 3M submitted a *Touhy* request to the VA, seeking the testimony of fourteen individuals believed to be current VA employees, as well as records regarding the care and treatment of and communications with fourteen Plaintiffs, and the VA employment records associated with an additional Plaintiff.  Mot., Ex. 9.

On March 14, 2022, 3M submitted another *Touhy* request to the VA, this time seeking the testimony of seventy-five additional individuals believed to be current VA employees.  Mot., Ex. 12.  The *Touhy* request also sought certain VA records

related to the care and treatment of and/or communications with approximately 39 Plaintiffs.  *Id.*

On March 22, 2022, the VA provided an interim response to the first *Touhy* request, advising 3M that five of the individuals in that *Touhy* request were not current VA employees.  Mot. Ex. 16.  The response explained that because these individuals were not current VA employees, the VA "cannot compel their appearance at your requested deposition."  *Id.*  at 3.  The VA's response also denied the request for certain records on the basis that the requests were "duplicative and cumulative of prior Touhy requests" and because the requested records were available through other means.  *Id.* at 2-3.

On March 30, 2022, the VA provided a further response to both *Touhy* requests.  *See* Mot., Ex. 16.  With respect to the requests for the testimony of the remaining eighty-four individuals, the VA explained that "[d]ue to the time and resources required to prepare for and schedule depositions, the VA will not be in a position to produce these individuals for deposition by the April 1, 2022[] discovery deadline in this case," and therefore "it would not be a prudent use of government resources for the agency to continue processing these requests for depositions."  *Id.* at 2.  The VA also noted that it had considered the "cumulative impact of Touhy requests like [3M's requests], particularly in light of the numerous requests the VA has received to date for documents and testimony in this litigation matter and the

7

fact that this multi-district litigation now includes over 280,000 cases." *Id.*  The VA concluded that "the cumulative impact of potential depositions across all of these cases will impose a significant undue burden on the VA, and will pose a significant disruption to the ability of agency personnel to conduct their official duties." *Id.*  The VA then denied 3M's requests for VA records regarding the care and treatment of specific Plaintiffs, noting that (1) the requests were "duplicative of documents already produced by the VA in this litigation" and (2) sought "documents that can be obtained from Plaintiffs," and thus imposed an undue burden on the VA.  Finally, the VA denied 3M's request for the VA employment records of one Plaintiff on the basis that (1) the Touhy request failed to explain the relevance of the requested records to the litigation, (2) the records were available through the Plaintiff, and (3) the records were protected by the Privacy Act.

### C. 3M's Motion to Compel

On the final day of the fact discovery period for Wave One cases, 3M moved the Court to "set aside the actions of" the DoD and the VA, and to "compel the Government to (1) present current employees for deposition pursuant to Defendants' *Touhy* requests; and (2) permit the deposition of former employees without a *Touhy* request but with notice."  Mot. 1-2.  In support of its Motion, 3M argued that the DoD and the VA's responses to its requests to depose current DoD and VA employees were arbitrary and capricious, *see id*. at 12-13, and claimed that the

government's responses to requests for the testimony of former employees have been "conflicting and confusing," *see id*. at 13-14.

## II.    ARGUMENT

"The appropriate standard of review" under the Administrative Procedure Act for a final agency decision is whether the decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A)." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  This standard applies to an agency's denial of a *Touhy* request and a decision not to authorize a witness to testify in response to a subpoena.  *See Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (applying the standard to an appeal from an order granting a motion to quash a subpoena seeking a deposition covered by HHS' *Touhy* regulations); *Wilson v. Jackson Nat'l Life Ins. Co.*, No. 2017 U.S. Dist. LEXIS 230695, at *10 (M.D. Fla. Dec. 27, 2017).

"[T]his Court's review of the Department's denial is extremely deferential." *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1295 (S.D. Fla. 2011).  An agency decision withstands challenge under the above standard if "[the] agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'"  *FCC v. Fox Tel. Stations*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The court "'is not to substitute its judgment for

that of the agency,'" *id.*, "and should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* at 513-14 (quoting *Bowman Transp. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 286 (1974)). The "standard of review" thus is "'narrow.'" *Id.* at 513 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).[1]

### A. 3M's Motion is Moot Given that 3M Has Not Sought An Extension of the Discovery Period

As the Court is well aware, fact discovery for cases subject to the Court's first Wave Order closed on April 1, 2022. ECF No. 2304. Nevertheless, on the last day of the discovery period, 3M filed its Motion seeking to compel expansive government discovery relating to Wave One cases. The Court should deny 3M's Motion, because 3M has not sought an extension of the period in which the requested discovery must occur. And 3M has not attempted to demonstrate why such an extension would be justified.

Whether 3M has a right to the requested discovery (it does not) is a different question from whether the Court should extend the discovery deadline to accommodate further discovery. 3M's Motion addresses only the former, and

---

[1] As 3M's Motion observes, 3M has not served subpoenas on the government in connection with the *Touhy* requests at issue. Mot. at 6 n.2. The government therefore construes the Motion as a challenge to the agencies' responses to the *Touhy* requests, and notes that standard of review is the same as for a motion to compel a response to a subpoena. *Moore*, 927 F.2d at 1197.

ignores the latter. *Cf. Riojas v. Monte Alto Indep. Sch. Dist.*, No. 19-300, 2021 U.S. Dist. LEXIS 26299, at *3-4 (S.D. Tex. Feb. 11, 2021) (where party sought to compel production of discovery material after the expiration of the discovery deadline, the party had to "also demonstrate good cause to extend the discovery deadline before the Court can analyze whether an order to compel production is appropriate").

3M fails to explain why it believes an extension of discovery would be justified, had one been requested. In any event, the facts would not support such an extension. Although Wave One discovery began in November of last year, 3M waited until between mid-February and late March to request discovery from the government. Even then, 3M failed to demonstrate that all of the information sought was necessary, was not duplicative of prior discovery, and was not already available to the parties. 3M's delay has prejudiced both the government and the Court, the former in the time available for it to process the requests, and the latter in its ability to manage the timeline of this litigation in an orderly fashion. 3M should not be rewarded for its delay. Indeed, "[w]here a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion." *Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, No. 03-760, 2004 U.S. Dist. LEXIS 26861, at *18-19 (N.D. Ill. Dec. 29, 2004); *id.* at *4 (finding a motion to compel filed four days before the discovery cutoff "a clear case of too little, too late"); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337

(N.D. Ill. 2005) (denying motion to compel brought on the last day of the discovery period, noting that were "the motion [] to be granted, it would result in protracted discovery, the bane of modern litigation" (internal quotation marks omitted))).

In short, authorizing further government discovery without a corresponding extension of the now-expired discovery deadline would serve no purpose. Because 3M has not sought an extension of discovery, 3M's Motion should be denied.

## B. The Government's Responses to 3M's Requests for Depositions Were Not Arbitrary or Capricious

Putting aside that the discovery period has ended and 3M has not sought to extend it, 3M's Motion fails for the additional reason that the government's responses to 3M's requests for dozens of depositions of government personnel were not arbitrary or capricious. First, the DoD appropriately determined that "it would not be a prudent use of government resources for the DoD to continue processing" the requests for depositions. Mot., Exs. 5, 7, 11, 14. After considering "the time and resources required to prepare for and schedule depositions," the DoD concluded that it would "not be in a position to produce [the requested witnesses] for depositions by the April 1, 2022 discovery deadline in this litigation." *Id*. The DoD further explained that it was aware based on "discussions with the parties and the Special Master, Hon. David R. Herndon (ret.), that the parties do not expect the Court to extend the discovery deadline." *Id*. The VA made a similar assessment. *See* Mot. Ex. 9.

12

The government's responses were reasonable, and not arbitrary or capricious. "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT Corp. v. NSF*, 190 F.3d 269, 278 (4th Cir. 1999). Here, the agencies reasonably determined that processing requests where there was insufficient time to conduct the requested depositions would waste government resources. And the agencies reasonably relied on the Court's discovery deadline— which 3M specifically noted in some of the requests—in determining that there was insufficient time to conduct the dozens of requested depositions. *See* 32 C.F.R. § 97.6(b)(1) (in deciding whether to authorize the release of official DoD information, DoD officials should consider, *inter alia*, "[w]hether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules[.]"); *see also* 38 C.F.R. § 14.804(d) ("[i]n deciding whether to authorize the disclosure of VA records or information or the testimony of VA personnel, VA officials should consider, *inter alia*, "[w]hether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules").

As explained in the Wald Declaration, the process of identifying, scheduling, and preparing a witness for deposition is time-consuming and requires significant DoD resources. Wald Decl. ¶¶ 11-20. Major Wald explains that DoD must first determine which organization the requested deponents work for and whether they

13

are current or previous government employees. *Id*. ¶ 12. Each name must be searched in DoD's global directory and, to the extent multiple names exist, additional research must be done to determine to which individual the request pertains. *Id*. If DoD determines that a requested deponent is an active employee, a DoD attorney must coordinate a time to discuss the request with him or her after circulating the request through the servicing legal office at the installation where the individual is located. *Id*. ¶ 13. It can take some time to schedule the discussion, particularly in the case of medical personnel because of their busy patient and training schedule. *Id* ¶ 14. Based on the information gathered from the prospective deponent and considering the factors identified in DoD's *Touhy* regulations, along with any other relevant information, DoD determines whether the request should be approved or denied. *Id*. ¶ 15. If DoD decides to approve the request, DoD then drafts and sends a written response to the *Touhy* request, providing dates of availability for the deposition. *Id* ¶ 16. In many instances, a witness will not have availability for a deposition until several days or weeks later. *Id*. Prior to the deposition, a DoD attorney prepares the witness for the deposition, which requires finding a time when both the DoD attorney and the witness are available. *Id*. ¶ 18. Here, 3M expected DoD to complete that process for 149 individuals in the waning weeks before of the discovery period for the Wave One cases.

Likewise, the VA has its own multi-step process for responding to each request for testimony.  *See* Cooper Decl. ¶¶ 7-16.  First, Ms. Cooper must take several steps to identify the individuals named in each request and to determine whether they are current VA personnel.  *See* Cooper Decl.  ¶ 9.  If Ms. Cooper is able to determine that an individual is a current VA employee, she then reaches out to each individual to provide background on the case and on the request for testimony, to determine whether the witness has relevant information, and to discuss that individual's availability to prepare for and participate in a deposition, if authorized.  *Id.* ¶¶ 11-12.  Because of the high volume of requests for testimony in connection with this litigation and limited resources at the VA, the VA often relies on attorneys from the United States Department of Justice to prepare witnesses and defend depositions in connection with this litigation.  *Id.* ¶ 13.  Accordingly, for each witness requested, Ms. Cooper must also reach out the U.S. Attorneys' Office in the district where the deposition would take place, in order to arrange for an attorney to handle the deposition, if authorized.  *Id.*  ¶ 14.  Assuming the VA determines that it is appropriate to authorize testimony, Ms. Cooper must then determine possible deposition dates that work for both the requested witness and the government attorney and finalize an authorization letter.  *Id.* ¶¶ 11-14.  This process simply cannot happen overnight; instead, it ordinarily takes at least two to three weeks, and may take longer when there are multiple pending requests.  *Id.*  ¶ 16.  Indeed, Ms.

Cooper started this process shortly after receiving 3M's March 8, 2022 request for the deposition of fourteen individuals, and she was unable to arrange for any depositions to take place before the April 1, 2022 deadline. *Id.* ¶ 24. When the VA received a second request for the testimony of 75 additional witnesses only eighteen days before the fact discovery cut-off, Ms. Cooper reasonably determined that it was highly unlikely that the VA would be able to arrange for depositions before April 1, 2022, and therefore determined that undergoing this process with respect to those 75 witnesses would not be a prudent use of agency resources. *Id.* ¶ 26.

Accordingly, the agencies each made a reasonable determination that continuing to process the requests would not be a proper use of government resources. The timing of 3M's requests, submitted near the end of the discovery period, afforded inadequate time for the depositions to take place. Thus, the "Court may not substitute its judgment for that of the agency about the agency's use of its own resources where [the government] has considered the relevant factors and articulated a rational basis for its decision." *Agility Pub. Warehousing Co. K.S.C.P. v. United States DoD*, 246 F. Supp. 3d 34, 49 (D.D.C. 2017).

3M's cursory Motion fails to show otherwise. 3M claims that "the Government does not explain *why* it could not have made its employees available for deposition before April 1," and notes that "Judge Jones has already ruled that a subpoena providing seven business days to prepare for the deposition of a DOEHRS

16

provider was reasonable." Motion at 12 (citing *United States v. 3M Co.*, No. 3:20-mc-55, Dkt. 20 at 22). Judge Jones' ruling, however, addressed a *Touhy* request for a *single* deposition and thus has no bearing on what constitutes a reasonable time to prepare for and conduct *dozens* of depositions subject to an impending discovery deadline. Indeed, Judge Jones' decision correctly notes, "common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case." *United States v. 3M Co.*, No. 3:20-mc-55, Dt. 20 at 22. Here, as already demonstrated, the agencies considered the extent of the depositions requested and the circumstances in the case and made the reasonable determination that further processing of the requests was not an appropriate use of government resources.

3M also suggests, without substantiation, that the government "delay[ed] timely responding" to the *Touhy* requests 3M waited to submit at the end of its discovery period. 3M's insinuation is baseless and false. As an initial matter, 3M allowed most of its discovery period for the Wave One cases to lapse before issuing its boilerplate requests that seek documents already produced by the government or available from plaintiffs as well as deposition testimony cumulative of testimony already obtained in this litigation. Once the government received those request, it took some time for the agency to sort through the large lists of requested deponents and determine which were not current government employees. *See* Mot., Exs. 5, 7,

11, 14 (listing individuals not known to be DoD employees); *see also* Wald Decl. ¶ 12 (describing process for determining whether requested deponent is a current employee); *see also* Cooper Decl. ¶¶ 19-20.  The agencies also had to consider, in coordination with the Department of Justice, how to respond in light of the unprecedented scope of 3M's requests.  And they had to do these things while also working on various other issues and requests in this litigation, notwithstanding the substantial caseloads of government counsel.

Moreover, contrary to 3M's claim, the government did not issue a "blanket refusal to present current employees for deposition."  Mot. at 12.  Indeed, the claim demonstrates complete disregard for the countless expenditure of time and resources by the VA and DoD to accommodate 3M's requests for documents and witnesses throughout this litigation.  The government anticipates that it may authorize additional depositions in this litigation in the future, provided that the requesting party provides sufficient notice and otherwise meets the requirements of *Touhy*.  In fact, the DoD has recently taken steps to expand its capacity to respond to *Touhy* requests submitted during wave discovery in this litigation.  Wald Decl. ¶ 21.

Additionally, 3M's Motion fails to even mention the additional reason that the VA relied on in its *Touhy* response: the VA's determination that "the cumulative impact of potential depositions" across all of the cases regarding the CAEv2 earplug "will impose a significant undue on the VA, and will pose a significant disruption to

the ability of agency personnel to conduct their official duties." Mot. Ex. 9. As Judge Jones has explained in reviewing previous motions to compel, 3M's failure to even address this issue "is fatal to the Defendants' motion because '[i]t is well understood in administrative law that a reviewing court will uphold an agency action resting on several independent grounds *if any one of those grounds* validly supports the result." *See* Report & Recommendation 19, ECF No. 1494 (quoting *Pierce v. S.E.C.*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) (emphasis added)). Courts in this Circuit have recognized that although "any given request may seem small in isolation, . . . an agency has an interest in protecting itself against the *cumulative* disruption to its duties that would come with routinely granting requests for testimony." *Westchester Gen. Hosp., Inc. v. Dep't of Health & Hum. Servs., Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla.) (citing *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)); *see also Nat. Res. Def. Council v. Cty of Dickson Tenn.*, No. 3:08-cv-00229, 2010 WL 11478994, at *6 (N.D. Ga. July 20, 2010) (noting "the EPA's legitimate concern with the potential cumulative effect of granting such requests"). Here, 3M's request is not small in isolation—it seeks the depositions of dozens of VA employees—but the VA reasonably concluded that it was even more burdensome in light of the nearly 280,000 cases waiting in the wings, many of which seem likely to inspire similar

19

requests for depositions of VA employees.   Because 3M fails to challenge this separate basis for the VA's decision, that decision should be affirmed.

Finally, the government does not concede that "each of the current employees Defendants seek to depose possesses evidence relevant to this litigation."   Mot. at 12.   In order to determine whether the employees possess relevant information, the agencies would have to speak with each of them to understand whether they in fact served in the capacities alleged in the requests and whether they gained any relevant information.   Obtaining such information from the employees is itself a time-consuming process.   *See* Wald Decl. ¶ 12; Cooper Decl. ¶¶ 12, 16.   As explained above, the agencies determined that they should not spend government resources interviewing dozens of deposition witnesses when the depositions could not realistically occur before the close of discovery.   Thus, the agencies have not yet determined whether the requested deponents possess relevant information.[2] Moreover, 3M compounds the problem by submitting boilerplate requests for testimony and documents certain of which clearly are duplicative of requests the government already has honored or violate this Court's deadline for general government discovery.   For example, 3M seeks to depose 11 Hearing Conservation

---

[2] Because the agencies were unable to complete processing the *Touhy* requests (due to the limited time they had been given and the substantial volume of discovery requested), there may be additional objections to particular witnesses based on their lack of knowledge or burdens particular to the witness.   The government reserves the right to raise those objections if necessary.

Program Managers on various topics, including several topics that do not relate to specific plaintiffs but instead seek general government discovery, such as the following:

- "their role and responsibilities as HCPMs at the identified installations;"

- "the Hearing Conservation Program and/or Army Hearing Program at those installations;"

- "selection, distribution, fitting, and training for hearing protection devices, including the CAEv2, at the identified installations;"

- "evaluation of potential noise exposures at the installations and steps, if any, taken to mitigate those exposures"

- "instructions, in any form, provided to service members, including the Wave 1 Plaintiffs, related to the CAEv2 or other hearing protection devices;"

- "practices, policies and procedures related to military audiological evaluations"

Ex. 13 at 2.

General government discovery concluded long ago.  ECF No. 1295 at 2 & n.1. And 3M has already deposed several Hearing Conservation Program Managers in this litigation.   Wald Decl. ¶ 3.   3M has failed to show that the 11 Hearing Conservation Program Managers whose depositions are sought possess any relevant information that has not already been disclosed in the prior depositions.  Given the consistency of the DoD's hearing conservation program across its military installations, additional depositions would likely be cumulative of the testimony already provided.  3M should make more of an effort to review the information

already provided by the government and determine what additional information, if any, is truly necessary.  Instead, 3M continues to submit boilerplate requests that impose on the government the burden of determining which requests previously have been addressed or are cumulative of other information provided by the agencies.

For these reasons, 3M has failed to show that the DoD's and the VA's responses to 3M's *Touhy* requests for depositions were arbitrary or capricious.

### C. The Government's Responses to 3M's Requests for Documents Were Not Arbitrary or Capricious

In addition to seeking depositions, 3M's *Touhy* requests also sought various categories of documents.  The government considered and denied the document requests for reasons including that certain requests constitute general government discovery (which concluded on September 1, 2020); are duplicative of prior requests for documents as to which DoD or the VA had already produced responsive documents; seek documents that can be obtained from a party to the litigation; are protected by the Privacy Act; do not adequately identify the relevance of the documents sought; do not adequately identify the documents sought; and/or seek documents that could not be produced by the conclusion of discovery. *See* Ex. 5 at 3; Ex. 7 at 2; Ex. 9 at 3; Ex. 16 at 2-3; Ex. 11 at 2-3; Ex. 14 at 2.

Although 3M asks this Court to compel the Government to produce documents, its Motion does not argue that the government's denial of these

document requests was arbitrary or capricious.  Instead, 3M's legal argument is limited entirely to the agencies' responses to the *deposition* requests.  *See* Mot. at 12 ("The DOD's and VA's Refusal To Present Their Current Employees For Deposition Is Arbitrary And Capricious.").  Indeed, 3M's motion does not discuss or challenge *any* of the DoD of the VA's stated reasons for denying their requests for documents.  For that reason alone, the Court should affirm the government's decision to deny those requests.  *See, e.g.*, Order, *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, Case No. 3:19-md-2885 (N.D. Fl. Jan. 18, 2021), ECF No. 21 (noting that 3M's failure to address certain of an agency's contentions in support of its denial of the *Touhy* request "is sufficient to affirm the [agency's] decision as unopposed").

### D. The Government's Responses to 3M's Touhy Requests for Former Employees Were Not Arbitrary or Capricious

In addition to seeking testimony from current DoD and VA employees, 3M sought testimony from a number of individuals who were later determined to be former employees.  When the agencies determined that certain witnesses were not current employees (and thus not under direct control of the agencies), both agencies promptly notified 3M.  In its motion to compel, 3M does not challenge the agencies' determination that these individuals are not current employees, nor does it challenge the agencies' claims that they cannot compel former employees to appear for a

deposition.  Accordingly, 3M has established no reason for the Court to issue an order concerning those former employees.  Mot. at 14.

The agencies' responses to 3M's *Touhy* requests for the testimony of former employees were not arbitrary or capricious.  As explained in Ms. Cooper's declaration, when the VA received the March 8, 2022 *Touhy* request, it began the process of identifying the individuals from whom testimony was requested.  *See* Cooper Decl. ¶¶ 18-24.  As part of that process, the VA determined that at least five of the individuals identified in the March 8, 2022 *Touhy* request were not current VA employees and issued a response explaining that because these individuals were not VA employees, "VA cannot compel their appearance at your requested deposition."  Mot. Ex. 16 at 3.  3M has not offered any reason to doubt the VA's determination that these individuals are not VA employees, nor have they challenged the VA's claim that it cannot compel their appearance at the requested deposition.  Because the VA lacks the ability to compel these individuals to appear at a deposition, its response to that effect was neither arbitrary nor capricious.  Likewise, the DoD determined that many of the individuals for whom depositions were sought were not current DoD employees and therefore declined to issue a *Touhy* denial or authorization as to them.  *See* Exs. 5, 7, 11, 14.  Nothing in the agencies' responses thus precludes 3M from issuing subpoenas to former employees and attempting to compel their appearance at a deposition.  In that event, the government has preserved

its right to become involved in order to guard its privileged, classified, or otherwise protected information. But in any event, because neither the VA nor DoD can compel these witnesses to testify, the Court should not compel the agencies to do so.

Notwithstanding that there is no dispute between the parties as to the former employees at issue in the *Touhy* requests here, 3M seeks to manufacture a dispute and ask for additional relief from the Court not warranted by the facts in the record. Rule 37 does not, however, provide the mechanism for doing so and accordingly, 3M's request should be denied.[3]

### III.   CONCLUSION

3M's motion to compel should be denied for the reasons set forth above.

Respectfully submitted,

BRIAN D. BOYNTON
Principal Deputy Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

---

[3] Notably, before filing this motion, 3M represented to VA personnel that the Court already had issued the order requested here. Cooper Decl. ¶ 31. In March 2022, purportedly pursuant to that Order, 3M issued a subpoena to at least one former VA employee without a *Touhy* request, but without any notice to the government. *Id.* ¶¶ 31-32. As 3M's recent conduct indicates, 3M's request here creates a risk that the government will not be able to determine which official information might be at risk of disclosure in former employee depositions thereby depriving the government of the ability to adequately guard against the improper disclosure of privileged, classified, or otherwise statutorily protected information. That risk further counsels against 3M's proposal.

s/ *Joshua M. Kolsky*
JOSHUA KOLSKY, D.C. Bar No. 993430
ALEXANDRA SASLAW
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that I served the within memorandum on Plaintiffs' counsel and Defendants' counsel through ECF on April 18, 2022.

s/ *Joshua M. Kolsky*

## CERTIFICATE UNDER N.D. FLA. LOC. R. 7.1(F)

I certify that the within memorandum contains 6,222 words, not counting the caption, table of contents, table of cases, or signature block, based on the word-processing software used to prepare it.

s/ *Joshua M. Kolsky*