# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PROUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) ) ) ) ) ) No. 3:19-md-02885-MCR-GRJ |

## DECLARATION OF MAJOR (MAJ) ROBERT WALD

1. I am a Major in the Judge Advocate General's (JAG) Corps currently assigned to the Army's Litigation Division in its General Litigation Branch. The Litigation Division supports the Department of Justice in defending the Department of the Army and its personnel and the Department of Defense (DoD) and its personnel (in delegated cases) in civil litigation. The General Litigation Branch's portfolio of cases includes handling all requests for Army official information (otherwise known as *Touhy* requests) submitted to the Department of the Army for use in civil litigation. The General Litigation Branch consists of four full-time litigation attorneys, one part-time litigation attorney, and one paralegal, and handles a caseload of approximately 250 cases at any given time. Each attorney handles a caseload of approximately 45-65 cases at any given time.

2. In July 2019, the Army's Litigation Division, General Litigation Branch was assigned as the lead counsel on behalf of Department of Defense in responding to requests for official information in the above-captioned case. In July 2019, MAJ Collin Evans was assigned as lead counsel. In August of 2019, MAJ Nicole Kim was assigned to this case as a co-counsel, and in June 2020, she was assigned as lead counsel. In June of 2020, I was assigned as co-counsel, and in May of 2021, I was assigned as lead counsel. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

***DoD's Previous Contributions to the Litigation***

3. In this litigation, the DoD has provided many thousands of pages of documents through the *Touhy* process in over 45 disclosure letters encompassing medical records, personnel records, hearing data, and troves of documents from the Hearing Conservation Programs across the DoD, among other categories of documents. The coordination and man-hours required for the productions to date have imposed a substantial burden on my office and the agency. DoD has also provided documents and depositions in response to dozens of *Touhy* requests aimed at individual government employees, including approximately 50 approved *Touhy* requests since October 2020. These depositions include the depositions of several Hearing Conservation Program Managers.

*Touhy Requests Received by DoD for Wave 1 Cases*

4. The DoD has received multiple *Touhy* requests from defendants for discovery pertaining to the Wave 1 cases. Each of those requests were subject to the Court's April 1, 2022 discovery deadline. While the DoD was considering the requests, I was informed that the parties were not expecting the Court to extend the discovery deadline.

5. On February 9, 2022, DoD received the first *Touhy* request for Wave 1 cases. This request was for the identities of individuals who served as Hearing Conservation Program Managers (HCPM) at 77 Army, Navy, and Air Force installations throughout the world. On February 18, 2022, defendants provided DoD a supplement to the February 9, 2022, request, adding the names of plaintiffs associated with each of the installations' HCPMs requested. The DoD responded to the request on March 18, 2022. The response provided the identities of HCPMs for 40 of the requested installation based on information gathered by DoD personnel.

6. On February 17, 2022, the DoD received another *Touhy* request for Wave 1 cases. That request sought documents from and depositions of 58 individuals who, according to defendants, "administered audiograms to approximately 394 of the remaining 445 Wave 1 Plaintiffs." On March 21, 2022, defendants submitted a supplement to the February 17, 2022 *Touhy* request indicating that of the 58

providers requested for Wave 1 cases, 56 also saw plaintiffs from Wave 2 cases. The DoD responded to the request on March 24, 2022. The response explained that 34 of the 58 individuals identified in the request "are not currently known to be Department of Defense ("DoD") employees and therefore no Touhy authorization or denial as to them will be processed by the DoD[.]" As to the remaining 24 individuals, the DOD explained that it "does not expect to be in a position to produce them for deposition by the April 1, 2022 discovery deadline in this litigation" and that it is "aware based on our discussions with the parties and the Special Master, Hon. David R. Herndon (ret.), that the parties do not expect the Court to extend the discovery deadline." "Under these circumstances," the DoD concluded that "it would not be a prudent use of government resources for the DoD to continue processing this request." The DoD also denied 3M's request for documents.

7. On March 8, 2022, the DoD received another *Touhy* request for Wave 1 cases. That request sought documents from and depositions of ten current and former DoD employees. On March 25, 2022, the DoD issued a response stating that five of the individuals were not known to be DoD employees and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to continue processing this request. The response also denied 3M's request for documents.

4

8.  On March 14, 2022, the DoD received another *Touhy* request for Wave 1 cases. That request sought defendants submitted a *Touhy* request for depositions and documents from 70 current and former DoD employees as well as a separate request for documents. On March 28, 2022, the DoD issued a response stating that 28 of the individuals were not known to be DoD employees, that the DoD needed additional information to determine if four of the individuals are current DoD employees, and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to continue processing this request. The response also denied 3M's request for documents.

9.  On March 18, 2022, defendants submitted a *Touhy* request for depositions and documents from 11 HCPMs previously identified in the government's response (dated March 18, 2022) to defendants' February 9, 2022, *Touhy* request for the identities of certain HCPMs. On March 31, 2022, the DoD issued a response stating that seven of the individuals were not known to be DoD employees and, as to the remaining individuals, it would not be a prudent use of government resources for the DoD to continue processing this request. The response also denied 3M's request for documents.

**The Burden Associated with Defendants' Touhy Requests**

10.  As discussed in the DoD's response letters, the DoD considered defendants' requests for depositions and determined that the DoD would not be in

5

a position to produce the requested witnesses for depositions by the April 1, 2022 discovery deadline for Wave 1 cases. Accordingly, the DoD determined that it would not be a prudent use of government resources to continue processing the requests.

11. Given the very large number of depositions sought in defendants' *Touhy* requests, further processing of those requests would consume substantial government resources and could not reasonably be completed in time to produce the requested witnesses before the discovery deadline. Each request for a deposition requires multiple steps to organize, research, and consolidate resources prior to responding.

12. The first step is determining which organization the requested deponents work for and whether they are current or previous government employees. Each name must be searched in our global directory and, to the extent multiple names exist, additional research must be done to determine to which individual the request pertains. For example, defendant's March 14, 2022, *Touhy* request asked to depose "Matthew Todd," among other individuals. There are 16 individuals with the name "Matthew Todd" in the DoD global directory and determining which of those, if any, is the individual referenced in the *Touhy* request requires additional research into the 16 individuals' job titles, unit descriptions, and locations. In some cases, determining which is the correct person requires contacting the individuals

in the global directory. The time this takes varies on the responsiveness of the individual. Occasionally, we need to contact the individual's supervisor to request a response which can take additional time. The contact information and agency of service in DoD's database is not always accurate or available, which increases the time required to complete this first step in responding to one of defendants' *Touhy* requests.

13. After determining which individuals are active employees responsive to the request, a DoD attorney must coordinate a time to discuss the request with them. Before contacting the individual for a substantive discussion of the request, the attorney must circulate the request through the servicing legal office at the installation where the individual is located. The speed with which the servicing legal office provides access to the requested deponent varies but in some cases it may take several days.

14. After the servicing legal office provides access to the requested employee, DoD counsel sends the *Touhy* request to the employee and arranges a time to discuss the *Touhy* process and request.  In the case of medical personnel, scheduling a time for the discussion is often difficult because of their busy patient and training schedule. Further, although few of the requested deponents have been current government contractors, those who are contractors often find it difficult to schedule a time to discuss the request because of concerns with whether or not the

contract under which they are employed allows this use of the employees' time. In those instances, further coordination with a labor law attorney, the contracting officer and/or the contract and fiscal law attorney advising on the contract is necessary before having the initial consultation with the prospective deponent.

15. The initial discussion with the prospective deponent is vital to confirming: (i) the deponent is the correct person identified in the *Touhy* request; (ii) the deponent searches for responsive documents if the request includes a request for documents; and (iii) the deponent is available to be deposed. These initial discussions range in length from 10 minutes to an hour. A DoD attorney will use the information gathered from the prospective deponent, along with any other relevant information, to determine whether the request should be approved or denied based on the factors identified in DoD's *Touhy* regulations.

16. If DoD decides to approve the request, DoD then drafts and sends a written response to the *Touhy* request, providing dates of availability for the deposition. In many instances, a witness will not have availability for a deposition until several days or weeks later.

17. If the deponent has any responsive documents, the documents are typically reviewed first by the installation legal office and then sent to DoD counsel for review prior to release along with the *Touhy* response letter.

18. Prior to the witness's deposition, a DoD attorney prepares the witness for the deposition. This is an essential step to ensure the witness understands the limits of his or her testimony and what he or she is approved to discuss. Practically, the prep session is also essential to confirm the witness is able to connect to the deposition using a Zoom platform. This process usually takes 20 minutes to an hour depending on the deponent, and it requires finding a time when both the DoD attorney and the witness are available.

19. Finally, the witness is deposed. A DoD attorney attends the depositions of DoD employees authorized to testify pursuant to DoD's *Touhy* regulations to make any necessary objections and ensure that the limits of the *Touhy* authorization are respected.

20. The DoD's process in researching, coordinating, and preparing for a deposition is time-consuming but necessary to protect the agency's interests through the *Touhy* process.

***DoD's Preparation After the Court Issued Wave Order 1***

21. The *Touhy* process in this litigation has primarily been handled by one lead attorney in Army's Litigation Division, General Litigation Branch. DoD, however, has recently taken steps to expand its capacity to respond to *Touhy* requests submitted during wave discovery in this litigation. Specifically, in recent weeks, DoD—in coordination with the Department of Justice—has trained certain

DoD attorneys located at military installations on the *Touhy* process specific to this litigation. Although these attorneys will have many other job duties and responsibilities separate from this litigation, it is expected that their participation will enable DoD to more quickly process *Touhy* requests during the wave discovery process going forward.

22. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2022.

*Robert Wald*

MAJ ROBERT WALD