**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-2885 |
| EARPLUG PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | Judge M. Casey Rodgers |
| **THIS DOCUMENT RELATES TO:** | ) | Magistrate Judge Gary R. Jones |
| *All Wave 1 Cases* | ) | |
| | ) | |
| | ) | |

## <u>DEFENDANTS' OBJECTION TO ORDER DENYING</u>
## <u>MOTION TO COMPEL AGAINST THE GOVERNMENT</u>

Defendants hereby object to Magistrate Judge Jones' denial of their motion to compel the depositions of the DOEHRS providers and hearing conservation program managers (HCPMs) identified in their *Touhy* requests for the Wave 1 cases. The motion was decided on a ground that was not raised by Plaintiffs or the Government and that was not in dispute; namely, that Defendants had not adequately shown any of the witnesses possessed relevant evidence. This Court's prior rulings and the agreement between the parties and the Government establish that such testimony is plainly relevant. Moreover, Judge Jones' opinion was premised on a mischaracterization of the applicable discovery schedule. Contrary to Judge Jones' determination, Defendants did not unreasonably delay in submitting their *Touhy* requests to the Government with respect to the DOEHRs providers and HCPMs.

Neither irrelevance nor delay supports the denial of Defendants' motion to compel. Neither the Government nor Plaintiffs disputed that the DOEHRS providers and HPCMs would provide relevant testimony—indeed, this Court has expressly authorized Defendants to take such depositions in the Wave 1 cases. And Judge Jones was simply mistaken that Defendants had "eight months" to conduct fact discovery in the Wave 1 cases. The Court named the Wave 1 plaintiffs on November 22, 2021. Defendants had 130 days to conduct fact discovery before it closed on April 1, 2022. During that time period, Defendants (1) analyzed ongoing medical records productions, written discovery responses, and plaintiff depositions; (2) worked quickly to prioritize and narrow their *Touhy* requests, and (3) identified the DOEHRs providers and bases whose HCPMs they wanted to depose, all with nearly two months to spare.

The Court should reject Judge Jones' recommendation, grant the motion to compel, and permit Defendants to take these timely requested depositions of relevant witnesses in the Wave 1 cases.

## BACKGROUND

*Touhy* requests are not new to this litigation. As Judge Jones noted, the Government's "relationship to these cases cannot be understated." Dkt. 3049 at 2. Since June 2019, Defendants have served numerous *Touhy* requests on the Government seeking documents, depositions, and other information related to the

Combat Arms Earplug version 2 ("CAEv2"), service-member noise exposures, and the Department of Defense's hearing conservation program.  The Court denied multiple motions to quash the depositions of Government employees during the bellwether cases notwithstanding the Government's representations that the employees did not remember their interactions with the bellwether plaintiffs.  *See, e.g.*, *United States v. 3M Co.*, Case No. 3:20-mc-53, Dkt. 16; Case No. 3:20-mc-55, Dkt. 20; Case No. 3:20-mc-56, Dkt. 21.

Defendants timely submitted several *Touhy* requests seeking to depose three categories of government employees: (1) HCPMs at installations where the plaintiffs served; (2) audiologists and hearing technicians (DOEHRS providers) who administered audiograms to the plaintiffs; and (3) medical providers who treated the plaintiffs in the military or in the VA system.  Defendants' objections to Judge Jones' order pertain only to the first two categories of witnesses, which correspond to Defendants' two earliest requests (both initiated in February 2022).

### A.    The Role of HCPMs and DOEHRS Providers in the U.S. Army

HCPMs are the audiologists that the military employs to administer hearing conservation programs at every Army installation.  Pursuant to Army Pamphlet 40-501, the commander of every Army installation must appoint an audiologist, where available, to act as the Hearing Conservation Program Manager ("HCPM").  Dkt. 1071, Ex. 8, at § 1-4.  The duties of the Hearing Conservation Program Manager are

detailed in Army Pamphlet 40-501 (and the related DOD Instruction 6055.12), and include, among other things, ensuring that medically trained personnel fit individuals with preformed earplugs, like the CAEv2, and examine those individuals at least annually to ensure proper earplug condition and fit.  HCPMs thus have knowledge of whether and how servicemembers at a particular installation were fit with and trained to use the CAEv2.

The DOEHRS providers are the audiologists and hearing technicians who work in the hearing conservation programs at different installations.  Like the HCPMs, the DOEHRS providers are familiar with the types of hearing protection devices that were issued to servicemembers at particular times and places, and the kind of training the servicemembers received.  The DOEHRS providers also administer audiograms to servicemembers and complete the associated form memorializing information about the audiogram.  Therefore, they are well positioned to explain the meaning of various notations on the form, including their individual practices for completing the "hearing protection used" field and documenting any reported tinnitus.  These DOEHRS providers also frequently issue hearing protection devices, provide hearing conservation training on the use of hearing protection devices, and are responsible for checking the fit of the hearing protection devices used by individual servicemembers.

## B.      Wave 1 Fact Discovery

Defendants made streamlined *Touhy* requests to depose HCPMs and DOEHRS providers as soon as the rapid schedule for Wave 1 fact discovery allowed. A timeline with the key dates in the discovery schedule is set forth below.



Judge Jones stated in his order that Defendants "had eight months to conduct fact specific discovery" for Wave 1.  But it was not until November 22, 2021, that the Court identified the 500[1] Wave 1 cases and set Wave One discovery deadlines. *See* Dkt. 2304 (CMO No. 31).  The Court ordered that all Wave 1 fact discovery, including fact depositions, be completed by April 1, 2022.  *Id.* at 3; *see also* Dkt. 2820 (CMO No. 36) at 1.

---

[1] Since Wave Order #1, the number of cases has decreased due to dismissals and requests for some cases to be transferred to a later wave.

In December 2021 alone, Wave 1 plaintiffs produced 2,159,368 pages of medical records and personnel files.  That was followed by the production of an additional 336,266 pages in January 2022; 210,026 pages in February; and 110,186 pages in March.  Defendants reviewed these productions to help determine which *Touhy* requests to make.

The deadline for Wave 1 plaintiffs' written discovery responses was February 5, 2022.  Plaintiffs' written discovery responses provided, among other things, information about the dates and locations where they received their CAEv2.  This information was important to defendants' *Touhy* requests for HCPMs and DOEHRs providers, including because plaintiffs often provide information additional to or different from what was included in any census forms.

Defendants began depositions of Wave 1 plaintiffs on January 24, 2022, and completed them on March 7, 2022.

### C.    January 21, 2022 Call With the Government

On January 21, 2022, counsel for 3M held a call with counsel for the Government and Plaintiffs and Judge Herndon, to discuss the Government's participation in wave discovery.  Defendants' January 18 email to Judge Herndon setting up the call stated:  "We wanted to reach out because in the wave cases, there are a number of issues pertaining to government witnesses (both fact witnesses and Hearing Conservation Program Managers), plaintiffs' depositions, and government

records that cut across multiple cases. To ensure we're coordinating and minimizing disruption on the government to the extent possible, we thought it would be helpful to set up a call with the DOJ to start discussing how best to handle these upcoming issues." Ex. 17 at 3.

The call with the DOJ occurred on January 21, 2022.  Ex. 18 at 5.  On that call, the Government requested that 3M submit a combined *Touhy* request for HCPM and DOEHRS providers, instead of individual requests.  (Two months later, the Government would object to those combined requests.)  At no point during the January 21 call did the Government suggest that it would be objecting to every one of 3M's deposition requests.

### D.    Request to Depose HCPMs

On February 9, 2022—two months before the close of fact discovery— Defendants submitted a *Touhy* request for the identities of individuals who served as HCPMs at specific Army installations during the time periods relevant to the Wave 1 plaintiffs.  Dkt. 2935, Ex. 1.  Per the DOJ's request, Defendants spent considerable time analyzing records for hundreds of Plaintiffs and submitting a single consolidated request for the identities of HCPMs relevant to Wave 1 plaintiffs in order to minimize the burden on the Government of responding to individual *Touhy* requests.  Defendants supplemented their *Touhy* request on February 18, 2022

to further identify the Wave 1 plaintiffs related to the earlier request. Dkt. 2935, Ex. 2.

### E.     March 11, 2022 Call With the Government

On March 3, 2022, having seen little progress from the Government, Defendants reached out to Judge Herndon stating:  "We wanted to reach out because we thought it may be helpful to have a follow up call with the DOJ to touch base about Touhy issues relating to the wave cases.  We are ***very mindful of the April 1 fact discovery deadline*** and thought it may be useful to connect with the DOJ regarding the Wave 1 Touhy requests that 3M has served so far . . ."  Ex. 17 at 1.

The call with the Government occurred on March 11, 2022.  Counsel for the Government indicated they expected to provide responses to Defendants' outstanding requests within approximately one week.  At no point during that call did the Government suggest that it would be rejecting all of Defendants' deposition requests.

### F.     March 18, 2022 Government Response and Defendants' Request For HCPM Depositions

On March 18, 2022, the Government identified the HCPMs for 40 of the 74 locations/timeframes requested. Dkt. 2935, Ex. 3.  That same day, Defendants submitted a *Touhy* request to take the depositions of 11 of the 40 identified HCPMs.

Dkt. 2935, Ex. 13.[2]  Defendants prioritized these 11 individuals because they were the HCPMs and/or Army Hearing Program Managers at the Army installations where at least 39 Wave 1 Plaintiffs allege they were stationed and received the CAEv2.  The DOD denied Defendants' request on March 31, 2022, claiming that it would not "be in a position to produce" the four individuals who were current DOD employees for deposition before April 1, 2022, and so it would not be a "prudent use of government resources" to continue evaluating the request. Dkt. 2935, Ex. 14.

## G.    Request to Depose DOEHRS Providers

After learning the identities of the Wave 1 plaintiffs on November 22, 2021, 3M conducted a painstaking review of thousands of hearing tests performed on the Wave 1 plaintiffs by more than 1,500 different audiologists and hearing technicians. Based on that review, 3M was able to make a streamlined request on February 17, 2022, to depose just 58 DOEHRS providers, who had collectively administered audiograms to approximately 394 of the then-remaining 445 Wave 1 plaintiffs.  Dkt. 2935, Ex. 4.  To eliminate the need for duplicate depositions as part of Wave 2 discovery, Defendants later supplemented their *Touhy* request and identified

---

[2] As discussed with Judge Herndon, Defendants have not served subpoenas on the Government, pending further negotiations regarding the discovery at issue. Defendants will serve subpoenas should the Court and/or Judge Herndon determine it is necessary to do so.

approximately 289 Wave 2 plaintiffs who were administered audiograms by the same 58 DOEHRS providers.  Dkt. 2935, Ex. 15.

On March 24, 2022, the DOD sent a blanket denial of the *Touhy* request with respect to *all* DOEHRS providers known to be DOD employees. Dkt. 2935, Ex. 5. As with the HCPMs, the DOD explained that it would not "be in a position to produce" its employees for deposition before April 1, and thus that it would not be a "prudent use of government resources" to continue processing the request.[3]  A timeline of relevant events is set forth at page 5 above.

### H.   Motion to Compel

The day after the DOD denied Defendants' request to depose the HCPMs, Defendants promptly filed a motion to compel on April 1, 2022.  *See* Dkt. 2935.  The Government and the Plaintiffs filed briefs in opposition that focused, like the DOD's denials, on the timeliness of Defendants' requests.  *See* Dkt. 2961; 3017.  Neither the Government nor Plaintiffs expressed any doubt that the witnesses Defendants sought to depose possessed relevant evidence.

Judge Jones denied Defendants' motion to compel on April 27, 2022.  *See* Dkt. 3049.  With respect to the HCPMs, Judge Jones found that the Government's

---

[3] Defendants requested depositions of the same 58 Wave 1 DOEHRS providers for Wave 2 discovery on March 21, 2022.  The Government has still not responded to that Wave 2 *Touhy* request, despite follow up communications with the Department of Defense on April 20, 2022.

denials were not arbitrary and capricious because Defendants "ha[d] not shown a particularized need to depose" them. *Id*. at 7. Judge Jones faulted Defendants for not explaining "why these HCPMs have particular knowledge beyond a general awareness of hearing conservation matters during the time that certain Plaintiffs were stationed at the same military base" and observed that "not one HCPM has testified [during the bellwether trials] that he or she has any information regarding a specific plaintiff servicemember." *Id*. Additionally, Judge Jones' order stated that "Defendants have had eight months to conduct fact specific discovery yet waited until a month-and-a-half (February 18, 2022) before the discovery deadline (April 1, 2022)" to inquire about the identities of the HCPMs where the Wave 1 plaintiffs served." *Id*. at 8. Defendants should have known, Judge Jones wrote, that "the completion of even eleven HCPM depositions would not be possible by April 1, 2022." *Id*.

With respect to the DOEHRS providers, Judge Jones again found that Defendants had "fail[ed] to state with particularity what information" the audiologists and hearing technicians "possess with respect to any individual Plaintiff." *Id*. at 9. Judge Jones opined that "[t]here is little need to depose individual DOEHR[S] providers to have them simply repeat the information in the audiogram" and observed that "[n]o DOEHR[S] provider in any bellwether trial has provided testimony that they remembered administering an audiogram for any particular

soldier." *Id*. at 9-10.  Besides the timeliness of the HCPM request, none of Judge Jones' other reasons for denial had been raised by the parties.

## ARGUMENT

Judge Jones' opinion rests on two false premises.  First, he *sua sponte* held that Defendants had not shown that the HCPMs and DOEHRS providers would have relevant, plaintiff-specific information.  But that argument is flatly belied by the fact that this Court has authorized these depositions and heard testimony from HCPMs and DOEHRS providers at trial.  Notably, neither the Government nor the Plaintiffs advanced this argument in opposing Defendants' motion—nor could they, as it is demonstrably wrong.  The HCPMs and DOEHRS providers can testify about critical case-specific information such as what training the plaintiff would have received, what earplugs he would have been issued, and what certain notations on his audiogram results mean.  Indeed, as Judge Jones acknowledged elsewhere in his opinion and as described below, Defendants have played depositions from HCPMs and DOEHRS providers to make those very points at several bellwether trials.

Second, with respect to the HCPMs, Defendants did not have "eight months" to conduct discovery for the Wave 1 cases, as Judge Jones believed.  They had just four months, the first two of which they spent reviewing an enormous volume of records, written discovery responses, and depositions; holding calls with the Government about the format in which to submit the requests; and creating a

streamlined request that minimized the burden on the Government.  The Government could reasonably be expected to have timely responded to Defendants' requests and arranged the HCPM depositions within the fact discovery period.

### A.    The HCPMs and DOEHRS Providers Possess Relevant, Plaintiff-Specific Information.

Depositions of the HCPMs and DOEHRS providers are clearly warranted because they indisputably possess information relevant to the Wave 1 cases.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").  Indeed, consistent with an agreement reached by the parties, this Court expressly authorized Defendants to depose one HCPM or DOEHRS provider per case in Wave 1, independent of the four-deposition limit.  Dkt. 2877 (CMO No. 39).  Defendants presented testimony from HCPMs five times during the bellwether trials, and from DOEHRS providers eight times.  *See* 4/23/2021 *EHK* Tr. at 7:3-47:18 (Cave, HCPM); 4/28/21 *EHK* Tr. at 144:18-162:4 (Toyama, DOEHRS provider); 5/27/2021 *McCombs* Tr. at 221:5-229-13 (Davis, HCPM);  6/16/21 *Baker* Tr. at 197:24-201:22 (Van Densen, DOEHRS provider); *id*. at 202:11-204:1 (Hannah, HCPM); 9/29/21 *Adkins* Tr. at 358:15-372:23 (Ohama, HCPM); 9/30/21 *Adkins* Tr. at 235:16-247:15 (Van Densen, DOEHRS provider); 12/14/21 *Montero* Tr. at 169:17-178:6 (Rodgers, DOEHRS provider); *id.* at 178:8-184:8 (Lewis, DOEHRS provider); 4/6/22 *Kelley* Tr. at 2617:8-2630:6 (Delgado, DOEHRS

provider); 4/26/22 *Vaughn* Tr. at 292:13-14 (Lymburn, DOEHRS provider); 3/23/22 *Vilsmeyer* Tr. at 146:22 (Van Densen, DOEHRS provider); 3/24/22 *Vilsmeyer* Tr. at 89:9 (Ohama, HCPM).

Judge Jones' reliance on the fact that HCPMs and DOEHRS providers deposed during the bellwether process did not remember specific plaintiffs is misplaced. Judge Jones thought it notable that none of the HCPMs deposed to date have "provided any information concerning the issuance of an earplug to a particular plaintiff or any recollection of involvement or interaction with a particular plaintiff," and that none of the DOEHRS providers "ha[ve] provided any testimony that they remembered administering an audiogram for any particular soldier." Dkt. 3049 at 8, 10.

But the testimony of the HCPMs and DOEHRS providers can be important to an individual plaintiff's case, regardless of any specific memory of the plaintiff himself. The testimony of HCPMs is independently relevant because they can explain what earplugs were issued and what training was provided at a particular military base during a particular time period, which may call into question the plaintiff's claim to have received the CAEv2 (with or without training) at a certain place and time. The DOEHRS providers can testify to these issues and can also explain what certain notations they made on the plaintiff's audiograms forms mean, given their practice in filling out those forms. *See, e.g.*, 4/28/21 *EHK* Tr. at 133:3-4

(explaining that a technician would select a type of hearing protection after "ask[ing] the soldier what kind of earplug he used").  Indeed, during the bellwether cases, Judge Jones *rejected* the Government's request to quash a subpoena on the ground that a DOEHRS provider did not remember the plaintiff, because Judge Jones recognized that the witness could still provide important testimony.  *See U.S. v. 3M Co.*, No. 3:20-mc-55, Dkt. 20 ("Mr. Toyama does not need an independent recollection of his evaluations to explain Plaintiff Keefer's medical records or his practices as an audiology technician.").

Judge Jones's prior recognition of the relevance of DOEHRS providers has been confirmed in practice.  During trial, testimony from DOEHRS providers has clarified that a reference to use of  "Combat Arms Earplugs" on an audiogram was to a later version of the CAE not the CAEv2 (*see EHK* 4/28/21 Tr. at 152:13-153:4), that the lack of a tinnitus notation on an audiogram indicated the plaintiff failed to report tinnitus the day of an audiogram (*see id.* at 153:5-154:6), and that they were aware of the flange-fold fitting tip for the CAEv2 and would have instructed users to fold back the CAEv2 flange if necessary to improve fit.  *See Adkins* 9/30/2021 Tr. at  243:24-244:3, 245:19-246:16, 246:25-247:10.  The testimony of HCPMs and DOEHRS providers is indisputably relevant.

**B.     Defendants Timely Requested the Depositions of HCPMs.**

Judge Jones also was mistaken that the request to depose the HCPMs came too late, a holding that was premised on his mistaken belief that Defendants had "eight months to conduct fact specific discovery" in Wave 1.   Dkt. 3049 at 8. Defendants had approximately four months—from November 22, 2021 to April 1, 2022—to complete fact discovery in the Wave 1 cases.   Within two weeks of the Wave 1 cases being identified, on December 3, 2021, Defendants served interrogatory requests asking plaintiffs to describe when, where, and with what instructions they were issued the CAEv2.   After initial objections from Plaintiffs' Leadership, Defendants served amended requests on December 8, 2021 asking for the same information.   Plaintiffs' deadline to serve responses was January 7, 2022, though numerous plaintiffs failed to comply with this deadline.   Shortly thereafter, Defendants began analyzing Plaintiffs' responses, comparing that data to the HCPMs previously identified by the DOD, and then generating the tailored list of particular military installations and time periods for which Defendants were missing HCPM information.

During a call on January 21, 2022, counsel for the Government specifically requested that 3M submit combined Wave 1 *Touhy* requests for HCPM and DOEHRS providers, rather than individual requests.   At no point during that call (or

during the subsequent, March 11 call) did the Government suggest that it would be denying all of Defendants' deposition requests.

Defendants asked the DOD to identify the relevant HCPMs on February 9, and at Plaintiffs' request, sent a supplemental request on February 18 identifying the specific Plaintiffs relevant to the specific installations and time periods for which HCPM identification was requested.  The DOD responded over a month later, on March 18, and Defendants requested depositions of 11 of the identified HCPMs that same day.

Defendants used the limited time available to significantly narrow the scope of their deposition requests in order to minimize the burden on the Government.  The alternative, which the Government expressly stated it wanted to avoid, would have resulted in the submission of dozens of rolling requests to depose every HCPM at any facility where any plaintiff ever served.  Defendants should not be penalized for spending the necessary time to consolidate the pool of HCPMs to depose before submitting *Touhy* requests to the DOD.

 Judge Jones correctly declined to find, despite the Government's urging, that Defendants had unreasonably delayed in submitting their request to depose the DOEHRS providers.  As Judge Jones noted, Defendants "[n]arrow[ed] the request from the 1,400 [DOEHRS providers] identified to 58."  Dkt. 3049 at 9.  Although Judge Jones apparently believed this winnowing process took place over six-and-a-

half months, and that that was a reasonable amount of time, Defendants actually completed the process in two-and-a-half months.  As with the HCPMs, Defendants used the short amount of time available to create a streamlined request for depositions.  They should not be penalized for the substantial work they did to minimize the burden on the Government.

### C.    Defendants' Motion Is Not Moot.

The Government argued before Judge Jones that Defendants' motion to compel is moot because Wave 1 discovery closed on April 1, 2022.  Judge Jones rightly declined to address that argument.  The discovery deadline this Court put in place does not somehow prevent the Court from granting this timely filed motion to compel and permitting Defendants to take discovery that they requested well before the deadline passed.  The motion is not moot because, if the Court grants it, then Defendants will obtain the relief they seek.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court reject Judge Jones' recommendation and grant their motion to compel.

Dated:  May 12, 2022                    Respectfully submitted,


                                        */s/Robert C. Brock*
                                        Robert C. "Mike" Brock
                                        KIRKLAND & ELLIS LLP
                                        1301 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 389-5991
                                        mike.brock@kirkland.com

                                        Mark J. Nomellini
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle
                                        Chicago, Illinois 60654
                                        Telephone: (312) 862-3254
                                        mark.nomellini@kirkland.com

                                        Kimberly Branscome
                                        DECHERT LLP
                                        633 W. 5th St., Suite 4900
                                        Los Angeles, CA 90071
                                        Telephone: (213) 808-5762
                                        kimberly.branscome@dechert.com

                                        *Counsel for Defendants 3M Company,*
                                        *3M Occupational Safety LLC, Aearo*
                                        *Technologies LLC, Aearo Holding, LLC,*
                                        *Aearo Intermediate, LLC and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I HEREBY CERTIFY that this brief complies with the word limit of Local

Rule 7.1(F), and contained 3,790 words, excluding the parts exempted by the Rule.


Dated: May 12, 2022

/s/Robert C. Brock
Robert C. "Mike" Brock

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 12th day of May 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.


Dated: May 12, 2022

*/s/Robert C. Brock*
Robert C. "Mike" Brock