**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*ALL CASES* | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A CASE MANAGEMENT ORDER REQUIRING NON-WAVE PLAINTIFFS TO PRODUCE CERTAIN MEDICAL RECORDS**

## I.   INTRODUCTION

Plaintiffs' Leadership submits this memorandum in response to Defendants' Motion for a Case Management Order Requiring Non-Wave Plaintiffs to Produce Certain Medical Records (the "Motion") [Docket No. 3205]. Defendants seek production of certain medical records (MyHealtheVet and TRICARE portals) for all non-Wave Plaintiffs within 90 days or face dismissal. As explained below, 3M's motion must be denied in its entirety.[1]

## II.   BACKGROUND

As early as the Rule 26 Discovery conference, it was apparent that discovery from the U.S. Government – namely from the Department of Defense and Veterans Affairs – would be central to the case-specific discovery in this MDL.  In May 2019, the Court arranged for a presentation from government counsel to outline and coordinate the process of discovery from the government pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), (i.e., *Touhy* requests) for plaintiff medical records and other government records relating to the litigation. Plaintiffs were

---

[1] This motion comes with little to no discussion between the parties nor advance notice of Defendants interest in reinstating (or revising) the Census Document Requirements from Pretrial Order No. 18 and, on its face, appears to be a very delayed Motion for Reconsideration of Case Management Order No. 6 (November 25, 2019 Order suspending Census Deadlines in MDL 2885). It also, suspiciously, occurs exactly at the time when 1500 Remand Waves case (3 Waves of 500) are in the middle of accelerated discovery schedules.

1

admonished to not make individual requests on the government via individual VA medical centers due to concerns about duplicate requests and overwhelmed resources. On June 28, 2019, Plaintiffs' Leadership submitted initial *Touhy* requests on behalf of Plaintiffs "in this litigation [which] include servicemen and women who were issued the Combat Arms Earplugs Version 2 ("CAEv2") in connection with their military service." (*See* Exhibit A, Plaintiffs' 6/28/2019 *Touhy* Request). The request was limited following meet-and-confers between the parties and government, and a revised *Touhy* request was jointly submitted on August 8, 2019. (*See* Exhibit B, Parties' 8/8/2019 Joint *Touhy* Request). This revised request specifically outlined requests for the following categories of servicemember records: a) Health records including audiology specific records, and medical profiles from the military and the VA; b) DD2215 (Reference Audiograms); c) DD2216 (Annual Audiograms); d) Individual Servicemember Administrative/Personnel records (including OERs, ORBs, NCOER, ERBs, DD214). Following this formal request, Plaintiffs' Leadership further coordinated with the government about a format of submitting information for the requests (Excel spreadsheet and fields required such as date, SSN, years, and branches of service) and submitted 44 separate Privacy Act Requests (resulting in related Privacy Act Orders), providing the identifying information for nearly 240,000 individual servicemembers requesting those records between August 2019 and

November 2021. Indeed, the process and timing for collection of Plaintiff medical records from the government was so convoluted that Judge David Herndon (ret.) was appointed as a Special Master to assist with government discovery in October 2019. Defendants were also well aware of the volume of cases for which medical records would be needed for vetting purposes as early as September 2019, as a series of Tolling Agreements were reached between various counsel/Leadership and Defendants, facilitating the disclosure and registration on MDL-Centrality of more than 150,000 Plaintiffs in the next few months. Between August and November 2019, more than 120,000 individual servicemembers' records were requested pursuant to the *Touhy* and Privacy Act Order process established in MDL 2885. Further, the delays in obtaining servicemember discovery from the government led to negotiations and compromises between the Parties and U.S. government to a) prioritize full *Touhy* discovery a limited pool of Bellwether Plaintiffs and b) for a pool of 1% of the cases in 2019 to be "prioritized" for *Touhy* production under the Parties' requests. Any implication by Defendants that this "swollen docket has remained unchecked for too long" is ridiculous given the amount of effort put in before the Court even established the Inactive Administration Docket on December 6, 2019. (*See Dkt.* 863; Pretrial Order No. 20 Inactive Administrative Docket). On November 25, 2019, the initial census deadlines (including production of the Initial Census Documents) were

3

suspended. (*See* Case Management Order No. 6, ECF No. 836).

On July 28, 2021, the Court entered Pretrial Order No. 81, Dkt. No. 1848, which reinstated the Initial Census Questions process originally established in Pretrial Order No. 18, Dkt. No. 775. However, PTO 81 did not reinstate the Census Document Obligations which had been suspended by CMO 6. In October 2021, the government indicated that, outside of the Bellwether and 1% Discovery, they would defer further action on the Parties' August 8, 2019 *Touhy* request and the Court's associated Privacy Act Orders providing specific servicemember information to the government. *See* Dkt. 3205-1, U.S. Dept. of Justice Letter re: Online Resources for Records. As of April 12, 2022, nearly 240,000 census forms had been submitted. Further, when the Census was reinstated and the Parties raised concerns about the extent of medical and military records still missing, the Parties' focus was exclusively on use of the earplug and dates of military service to the extent that the Court issued Case Management Order No. 40, requiring all Plaintiffs to submit a DD214 to establish their military service. Dkt. No. 2911. The DD214 provides basic information regarding a veteran's military service and so is an important document for veterans alleging injury as a result of using the CAEv2 during their military service. At no point in time between July 28, 2021 and the filing of Defendants' current motion have Defendants raised the issue of re-instating the document requirements from the Initial Census Order.

4

## III.   ARGUMENT

### a. The Discovery Process in MDL 2885 Has Been Tailored to the Litigation

Defendants' position about discovery in the 3M Combat Arms litigation being a "departure" from MDL practice is a red herring. As Defendants acknowledged (Defs. Motion at 8), discovery in this MDL is not significantly different than other recent MDLs which have adopted a census form process. (See Pretrial Order No. 15, *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-md-2924 (S.D. Fla. April 2, 2020)(Order on Procedures for Implementing Census); *see also* Pretrial Order No. 27, *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-md-2924 (S.D. Fla. June 30, 2020) (Order Regarding Deadline for Filing Notice of Appearance and Election to Participate in the Census Registry)). Defendants' litany of examples of requirements for medical record production exist in litigations where there was a formal Plaintiff Fact Sheet process (as a replacement for traditional individual Plaintiff Interrogatory Requests) and associated limited Document Production Requirements (as a replacement for traditional Requests for Production). The decision to utilize a Census Sheet for early discovery in MDL 2885 was a joint one; the Parties went forward with this process knowing it was unlikely a Plaintiff Fact Sheet process would occur and that the next step would be incremental traditional discovery, such as in the three (3) Remand Waves currently proceeding through the accelerated discovery process. (*See*

Dkt. Nos. 2304 (CMO 31; Wave Order #1), 2787 (CMO 34; Wave Order #2), 3126(CMO 47; Wave Order #3)).

As explained in detail in the background section above, the discovery process in MDL 2885 was tailored to meet the unique requirements of collecting military and medical records for 250,000 servicemembers utilizing government discovery. Multidistrict litigation "presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation." *In re Asbestos Prod. Liab. Litig.*, 718 F.3d 236, 247 (3d Cir. 2013). This litigation presented even more unique circumstances, given the volume of records which were unavailable via traditional medical record ordering processes. The current status of the litigation, now in its third year with 16 bellwether trials completed in just over a year and 1,500 cases currently in accelerated discovery, (See Dkt. Nos. 2304 (CMO 31; Wave Order #1), 2787 (CMO 34; Wave Order #2), 3126(CMO 47; Wave Order #3)) is reflective of the volume of discovery and vetting being done across the entire litigation.

The purpose of the census process was to provide early, preliminary information about each Plaintiff's case. (See Dkt. 2992, CMO No. 42, Census Deficiency Process (4/15/2022)). The parties agreed to use Census Forms and to

6

forego the traditional MDL discovery tool: use of a Plaintiff Fact Sheet as Interrogatories with related Requests for Production. That does not mean discovery has not occurred. As part of the Remand Wave accelerated discovery process, Plaintiffs are required to produce Fed. R. Civ. P. 26(a)(1) initial disclosures, the parties have the opportunity to serve written discovery requests, and the parties may take depositions to examine witnesses. *See* Dkt. 2992, Case Management Order No. 42, Census Deficiency Process (4/15/2022). The Census was not, nor was it ever intended to be, a substitute for the traditional methods of obtaining information in civil litigation. (*See* Dkt. 2992, CMO No. 42, Census Deficiency Process (4/15/2022)). And the formal discovery process for the majority of this litigation, absent the Bellwether and Remand Wave Cases or Census process is stayed, pending further Order.

It is well established that district courts have broad discretion when managing the cases on their dockets. *See In re Nat'l Prescription Opiate Litig.*, No. 20-3075, 2020 WL 1875174, at *3 (6th Cir. April 15, 2020) ("an MDL court has broad discretion to create efficiencies and avoid duplication — of both effort and expenditure — across cases within the MDL"); *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010) ("District court judges have broad discretion in managing their own dockets."); *In re Vioxx Products Liab. Litig.*, 230 F.R.D. 470,

7

472-73 (E.D. La. 2005) ("The Federal Rules of Civil Procedure give federal courts wide discretion in case management. Federal courts possess an inherent power governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (citation and internal quotation marks omitted)).

This is especially true in multidistrict litigation. *See In re Asbestos Products Liab. Litig. (No. VI)*, 718 F.3d 236, 247 (3d Cir. 2013) ("Thus, a sprawling multidistrict matter such as this presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation."); *see also In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) ("We recognize that a district court needs to have broad discretion in coordinating and administering multi-district litigation. . . . The ultimate goal is that the district court to which pretrial proceedings in multi-district litigation have been transferred 'promote the just and efficient conduct of such actions.'"). This broad discretion is being applied in the current litigation; regardless of Defendants' positions about the volume of medical records available to them. That Defendants take issue with the Court's application of its discretion while misrepresenting the work done and information available is apparent

8

given the unilateral motions requesting Court Orders for census deficiencies, filing fees, and now enforcing arbitrary deadlines for production of medical records before facing dismissal.

### b. Defendants' Motion Does Not Provide Good Cause for Either a Change in the Court's Existing Orders or Potential Sanctions in the Form of Dismissal

Defendants' Motion here continues in the same vein as their April 2022 Motion to Require Payment of Filing Fees. Defendants here again urge an "abrupt course change and no explanation for the sudden urgency of doing so." (*See* Dkt. 2953, April 6, 2022 Order at 2). Requiring the production of this limited set of documents may be consistent with the Court's repeated recognition of the manifest relevance of medical records; but it is not similar to the Court's order requiring production of the DD214 forms. Defendants have failed to identify how many Plaintiffs' this will impact (i.e., whether they received medical records for any non-Wave client who would be excluded), have not provided any basis for requiring production other than having filed a lawsuit (Defendants do not address whether some Plaintiffs may not have MyHealtheVet or TRICARE records) while requesting the Plaintiff's claims be dismissed for failure to comply with their arbitrary requirement. Further, Defendants have not addressed the burden on the federal government for the traffic an additional 200,000 requests thru their online records systems will cause. At the very least, there

should be a discussion with the government about the increase in traffic on their websites; Plaintiffs have little reason to believe their servers can manage more than 230,000 essentially simultaneous requests – in fact, the DD214 order has created multiple examples of technical difficulties with the online public resources Defendants are pushing for an order requiring. (*See* Exhibit C, Examples of Errors on milConnect and myHealtheVet from various Plaintiffs' counsel).

Defendants here are requesting dismissal as a sanction for failing to provide certain medical records. Although the Court has wide latitude in issuing discovery orders (and to even dismissing actions for non-compliance with such orders), that is not a given where the Plaintiffs were not "put on notice by a motion that dismissal was being sought and given the opportunity to oppose the motion." *In re Asbestos Prod. Liab. Litig.*, 718 F.3d 236, 247 (3d Cir. 2013). If Defendants intention is to winnow the cases in the MDL by creating Case Management Orders that force dismissal for mere violation of discovery deadlines; Plaintiffs' oppose that notion. That aspect of any proposed Case Managements Order (dismissing for failure to produce discovery records) is essentially the Defendants further shifting the burden to the Court and Plaintiffs. The Court must monitor for noncompliance and Plaintiff must monitor to demonstrate whether or not the Plaintiff complied before any order exists (i.e., has already produced records) or have no responsive records to produce (have

never visited the VA/TRICARE). This is a further complication of imposing any sanctions so severe as dismissal for failure to meet a currently unnecessary discovery burden.

The sanction of dismissal is an extreme remedy and should not be imposed if lesser sanctions will suffice. *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988) (*citing Hashemi v. Campaigner Publications, Inc.*, 737 F.2d 1538, 1538–39 (11th Cir. 1984)); *see also Phipps v. Blakeney,* 8 F.3d 788, 790 (11th Cir. 1993) ("Dismissal with prejudice is the most severe Rule 37 sanction and is not favored." ); *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (noting that severe sanction of dismissal should be imposed only where there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice"); *cf Wouters v. Martin County, Florida*, 9 F.3d 924, 934 (11th Cir. 1993) ("Dismissal is warranted only where noncompliance with discovery orders is due to willful or bad faith disregard for those orders."); *In re Polyproplylene Carpet Antitrust Litig,*, 181 F.R.D. 680, 696 (N.D. Ga. 1998) ("The decision to dismiss a claim ... 'ought to be a last resort—ordered only if non-compliance with discovery orders is due to willful or bad faith disregard for those orders.' ") (*quoting Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986)). Defendants' request for a discovery Case Management Order where dismissal is assumed for noncompliance without a showing of willful or bad faith

11

disregard should be a nonstarter for the Court and all counsel involved in this MDL.

Once the Court enters a scheduling order, that order may be "modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Defendants' motion does not provide any basis for why this requirement for additional medical records for 230,000-plus plaintiffs is a necessity within the next 90 days. They offer no statistics about the volume of cases which have provided either MyHealtheVet or TRICARE records – or the equivalent from the Plaintiff's own files – to this point in time. There is no showing as to how this proposed order will address vetting and case-inventory management. Likewise, Defendants' claims that this medical record process will result in a winnowing of claims in overblown. The medical records they are seeking will not show confirmation of hearing protection device usage or noise exposure; those responses will still be provided by interrogatory and deposition responses. Given that the Department of the Army agreed in April 2022 to expedite production of DOEHRS-HC records (audiograms) for the entire pool of Plaintiffs in the MDL, much of the hearing loss information Defendants seek is being processed by the DOD on an expedited basis. (*See* Exhibit D, Maj. Wald April 22, 2022 DOEHRS-HC Production Letter). Defendants are aware, based on the census data, of the volume of Plaintiffs claiming hearing loss only, tinnitus only, or both hearing loss and tinnitus. There has been no good cause showing of how this proposed case

12

management order will reduce the number of cases or claims – because dismissals due to a failure to comply will likely apply to hearing loss only cases.[2] Defendants have been warned previously that "filing frivolous motions will not 'winnow' frivolous cases." *See* Dkt. 2953, April 6, 2022 Order at 3.

Plaintiffs' Leadership has widely circulated the Dept. of Justice's October 2021 guidance relating to online resources and deference of the *Touhy* Privacy Act Order requests for all non-Wave (non-1% Cases) to Counsel within the MDL. It has been provided repeatedly by Defendants whenever deficiencies in discovery responses for Wave cases are raised. However, in their motion, Defendants have provided no evidence as to whether or not some portion of Plaintiffs have provided these records to Defendants voluntarily or associated with their Census submission. Defendants' argument about the status of vetting for Plaintiffs in this litigation is disingenuous. Any candor between counsel with regard to the status of (1) unfiled cases, and (2) investigation of claims mere weeks after appointment of leadership should not be referenced in motion practice with sweeping generalities as to the vetting being done currently in this MDL. Under the Administrative docket order – which Defendants

---

[2] Even if medical records show hearing loss years before or after use of the CAEv2, that does not alleviate subjective tinnitus claims; i.e., the number of claims may reduce but not the number of cases.

13

sought – counsel for Plaintiff complied by filing all claims (vetted or not) and that process should not now result in a mid-course change with punitive effects for individual Plaintiffs who are continuing to comply with a variety of census and DD214 orders and deadlines, as well as participate in full-blown discovery for another 1,500 cases at the same time.

At this point, Plaintiffs' agree with the Court wholeheartedly: "a more productive and beneficial approach would be to continue to work cooperatively with . . . Plaintiffs to find a mutually agreeable solution to the complications presented by the inventory." (*See* Dkt. 2953, April 6, 2022 Order at 3-4). The volume of cases (more than 100,000 identified cases registered with MDL-Centrality within 6 months of the MDL being established and a similar volume of *Touhy* requests submitted via Privacy Act Order) was always going to lead to the application of the Court's discretion in terms of discovery methods and mechanisms in MDL 2885. Defendants have failed to show why a new course of action for management of the MDL is required at this time.[3]

---

[3] This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's note; *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). Defendants' motion has indicated no good cause – and Defendants are not the party seeking an extension as no deadline currently exists.

## IV. CONCLUSION

For the foregoing reasons, there is no need to arbitrarily apply a 90-day deadline for production of medical records for all non-Wave plaintiffs given the contested history of medical record discovery in this litigation, Defendants' delay in seeking the records in question and the burden placed on both the government and Plaintiffs by requiring a significant volume of records in a short time period.

Dated:  June 29, 2022                          Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

15

>Christopher A. Seeger, Co-Lead Counsel
>(Admitted Pro Hac Vice)
>New Jersey State Bar No. 042631990
>Seeger Weiss LLP
>55 Challenger Road 6th Floor
>Ridgefield Park, NJ 07660
>Tel.: (212) 584-0700
>cseeger@seegerweiss.com
>
>*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this motion complies with Local Rule 7.1(F) and contains 3386 words.

*/s/ Bryan F. Aylstock*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

/s/ Bryan F. Aylstock