**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, | ) Case No. 3:19md2885<br>)<br>)<br>)<br>) Judge M. Casey Rodgers<br>) |
| This Document Relates to All Wave 2 Plaintiffs | ) Magistrate Judge Gary R. Jones<br>)<br>)<br>) |

## DEFENDANTS' MOTION TO COMPEL WAVE PLAINTIFFS' DATA AND ELECTRONICALLY STORED INFORMATION RESPONSIVE TO DEFENDANTS' REQUEST FOR PRODUCTION NUMBER 10

This MDL centers on Plaintiffs' allegation that their use of the CAEv2 caused them to suffer hearing loss, tinnitus, and/or related injuries. In Waves 2 and 3, Defendants requested that Plaintiffs produce all data related to their hearing and hearing health that is recorded and maintained on their personal electronic devices. *See* Ex. 1, Defs.' First Set of Req. for Produc. ("RFP") No. 10. In particular, Defendants have requested production of noise exposure data automatically collected by Apple's iOS and WatchOS system software from Apple smartphones and smartwatches. This data includes information regarding the ambient sound in a Plaintiff's environment—including the intensity and duration of noise exposures—and information regarding the number of noise notifications a Plaintiff may have received due to dangerous noise exposures or headphone usage.

1

The data Defendants requested is highly relevant to Plaintiffs' hearing injury claims and can be collected and produced with only a minimal burden on Plaintiffs. Despite this, only one Wave 2 Plaintiff produced the requested data.[1] The hundreds of remaining Wave 2 Plaintiffs either (i) objected to the request in its entirety as irrelevant and burdensome, or (ii) claimed to have conducted a "reasonable investigation" and found no data to produce. Any reasonable investigation into whether a Plaintiff has responsive data must include both an inquiry into whether a Plaintiff has used devices that may have automatically recorded the information requested by Defendants and then an actual check of those devices for whether any responsive data exists. During their depositions, multiple Wave 2 Plaintiffs who claimed to have conducted a "reasonable investigation" testified under oath that they never looked at their Apple iOS devices to determine whether those devices contained noise exposure or noise alert data responsive to RFP No. 10.

Defendants respectfully request that the Wave 2 Plaintiffs' objections to RFP No. 10 be overruled and that they be compelled to conduct a reasonable investigation for responsive information—including an actual review of Apple iOS devices that

---

[1] Defendants served an identical RFP No. 10 on all Wave 3 Plaintiffs. Wave 3 Plaintiffs' deadline to respond to this request was June 24, 2022. Defendants continue to meet and confer with Wave 3 Plaintiffs regarding their responses. However, Defendants expect the Court's resolution of the present motion to provide guidance to the Parties regarding these identical Wave 3 requests.

automatically record noise exposure and hearing-related information—and produce any responsive information.

## **BACKGROUND**

On March 3, 2022, Defendants timely served their First Set of Requests for Production ("RFP") on all Wave 2 Plaintiffs. *See, e.g.*, Ex. 1, RFP. Plaintiffs' responses were due by April 4, 2022. Case Management Order ("CMO") 34, Dkt. No. 2787, § I.2. RFP No. 10 asked each Plaintiff to produce:

> All data And electronically stored information regarding your hearing And hearing health from Any and All smartphones, tablets, Apple Watches, hearing aids, Or other electronic devices from one year preceding the date you first used the CAEv2 earplugs until present, including but not limited to hearing aid usage, headphone audio level data, audiograms, environmental sound levels, noise exposure levels, headphone notifications, And noise notifications.

*Id.* at 13–14. Defendants further stated that they were "prepared to meet and confer to discuss a process or protocol for production of this information." *Id.*

To facilitate Plaintiffs' production of data in response to RFP No. 10, Defendants agreed to accept a lower-burden screenshot production in lieu of a more formal collection to make it easier for Plaintiffs to quickly collect and produce this important information. To this end, Defendants provided Plaintiffs with a step-by-step guide for how to locate and capture responsive data that might exist on an Apple iOS device like an iPhone. *See* Ex. 2, Consilio Hearing Health Data Navigation & Capture Guide (the "Hearing Health Data Guide"). The Hearing Health Data Guide

provides simple instructions, with photos, to help iPhone-using Plaintiffs locate and capture the Headphone Safety Data and Health Application Hearing Data that is tracked and maintained by Plaintiffs' Apple iOS devices. *See id.* To be clear, Plaintiffs may certainly opt to produce responsive data that has been collected via more formal means than the screenshot format discussed herein and outlined in the Hearing Health Data Guide.

Since at least the release of iOS 13 in 2019, Apple iPhones have automatically recorded and stored data related to sound levels during users' headphone usage, environmental noise exposure levels measured by Apple Watches, and warnings delivered to users when they have excessive noise exposures.[2] The headphone and environmental noise exposure includes measures both of intensity (i.e., the loudness of a noise exposure measured in decibels) and duration (i.e., the length of time of the exposure) allowing users to "View exposure levels over a time period," "Learn about

---

[2] Ex. 3, *iPhone User Guide: Automatically collect data in Health on iPhone*, APPLE, https://support.apple.com/guide/iphone/automatically-collect-data-iphbb8259c61/ios (describing automatic collection of headphone audio levels and environmental noise levels and "notifications about loud sounds") (last visited June 27, 2022); Ex. 4, *iPhone User Guide iOS 13*, *Collect health and fitness data on iPhone,* APPLE, https://support.apple.com/en-gb/guide/iphone/iphbb8259c61/13.0/ios/13.0 (last visited June 27, 2022); Ex. 5, *Apple Watch User Guide, Measure noise levels with Apple Watch*, APPLE, https://support.apple.com/guide/watch/noise-apd00a43a9cb/watchos (last visited June 27, 2022); Ex. 6, *Using the Noise app on your Apple Watch*, APPLE, https://support.apple.com/en-us/HT209593 (last visited on June 27, 2022).

the sound level classifications," "See details about a moment in time," "View details about average exposure," and "View the high and low range."[3]

Of the hundreds of Wave 2 Plaintiffs who responded to Defendants' First Set of Requests for Production, only one plaintiff produced documents or information in response to RFP No. 10. *See* Ex. 8, Zuniga (Case No. 8:20-cv-30619) Resp. to RFP No. 10.

Virtually all other Wave 2 Plaintiffs objected. Many Plaintiffs objected to RFP No. 10 in its entirety, refusing to conduct any reasonable investigation or search for responsive data. For example, twenty-five Wave 2 Plaintiffs represented by the law firm Keller Postman objected in wholesale:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, seeks information which is not relevant, is designed to harass and embarrass Plaintiff, and is disproportionate to the needs of the case. This request is vague, ambiguous, and overly broad because, if read literally, it would require Plaintiff to provide information outside of Plaintiff's possession, custody, or control. This request is overly broad and seeks information which is not relevant because it requires Plaintiff to provide audio information that has no probative value; this request is a fishing expedition. Defendant's request is designed to harass and/or embarrass Plaintiff by forcing Plaintiff to turn over non relevant sensitive and personal information on Plaintiff's devices. Plaintiff will have to submit his devices—devices used for work and social activity—to forensic examination in order to provide this non relevant information. Forensic examination of the

---

[3] Ex. 7, *iPhone User Guide: Check your headphone levels on iPhone*, APPLE, https://support.apple.com/guide/iphone/check-your-headphone-levels-iph0596a9152/ios (last visited June 27, 2022).

devices will be costly, and Plaintiff will have to purchase and use alternative devices while his devices are being analyzed.

Ex. 9, Leslie Resp. to RFP No. 10.

Certain other Plaintiffs objected to RFP 10 but nonetheless claimed to have conducted a "reasonable investigation" and located no responsive data. For example, Plaintiff Charles Byrd (and all other Wave 2 Plaintiffs represented by Aylstock, Witkin, Kreis & Overholtz PLLC) objected to RFP No. 10 as follows:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, seeks information, which is not relevant, is designed to harass and embarrass Plaintiff, and is disproportionate to the needs of the case. This request is overly burdensome, as it requires Plaintiffs to gather data from devices that possess no means of exporting raw data into a consumable and transferable format, Plaintiffs would be forced to improvise an imperfect means of capturing data in its non-native format, thus subjecting the data to human error and rendering the data inaccurate and therefore irrelevant. Supplementally and in the alternative, this request is overly burdensome as Plaintiff will have to submit his/her devices—devices used for work and social activity—to forensic examination in order to provide this non relevant information. Forensic examination of the devices will be costly, may subject the devices to damage or destruction, and Plaintiff will have to purchase and/or use alternative devices while his devices are being analyzed.

> This request is vague, ambiguous, and overly broad because, if read literally, it would require Plaintiff to provide information outside of Plaintiff's possession, custody, or control, as the request does not distinguish between devices used exclusively by Plaintiff and those used by multiple persons. Plaintiff, in such circumstance would require authorization from other device user(s) prior to disclosure. Further it requires Plaintiff to turn over information from devices that they may not own without consent of the actual owner(s), nor does it distinguish between data within the hard drive of the device, a parent device, or only accessible via a third-party's server. This request is overly broad

and seeks information which is not relevant because it requires Plaintiff to provide audio information that has no probative value. The request fails to take into consideration or distinguish data which may be collected while Plaintiff is not in the presence of the device; further, wearable technology may or may not be classified as a medical device and those not classified would not subjected to the rigorous standards of devices manufactured for such use, nor does the Plaintiff possess the necessary expertise to distinguish "proper" or "intended" use of the device for the purposes of calibration and accurate measurement. Put simply, this request is a fishing expedition. Defendants' request is designed to harass and/or embarrass Plaintiff by forcing Plaintiff to turn over non relevant sensitive and personal information on Plaintiff's devices. Further, Defendants' request is directly contrary to the explicit agreement between the parties when negotiating discovery limitations in the Remand Wave Orders.[4]

Subject to and without waiving the foregoing general and specific objections, Plaintiff has conducted a proportional and reasonably diligent search for documents and communications responsive to this Request and responds as follows: Plaintiff does not have any responsive documents beyond the military and medical records previously produced.

Ex. 10, Byrd Resp. to RFP No. 10. However, despite claiming to have conducted "a proportional and reasonably diligent search," Plaintiff Byrd testified:

Q.  Do you have an iPhone?
A.  Yes.
Q.  Have you ever looked at your hearing data that's kept by your iPhone?
A.  No.
Q.  Did you look on your iPhone for that hearing data to respond to 3M's discovery in this case?
A.  No.

---

[4] Plaintiffs' objections relating to an "explicit agreement between the parties when negotiating discovery limitations in the Remand Wave Orders" has been resolved. *See infra* note 5 (discussing the only pertinent agreement between the parties on this issue).

Ex. 11, Byrd Dep. Tr. 20:20–21:2.

This inconsistency is not limited to just one or even a handful of Plaintiffs. In many cases where Plaintiffs claimed to have conducted a proportional and reasonably diligent search and to have no responsive data, ***no search*** was actually conducted. In fact, many Plaintiffs did not check their iPhones at all to see if responsive data even exists. *See, e.g.*, Ex. 12, Bussart Dep. Tr. 17:10–18:7 (testifying that Plaintiff is not aware that his iPhone keeps hearing data and did not look for that data despite having claimed in his Interrogatory responses to have conducted a proportional and reasonably diligent search for responsive data); Ex. 13, Weaver-Register Dep. Tr. 136:12–22 (testifying that Plaintiff took no steps to secure any of the audio-related data from either of her iPhones from the relevant time period despite having claimed in her Interrogatory responses to have conducted a proportional and reasonably diligent search for responsive data); Ex. 14, Coleman Dep. Tr. 144:14–146:3 (testifying that Plaintiff had not "looked on [his] phone in the settings or applications to determine if [he] could even find information about, in answer to [RFP No. 10], including the level of audio used for headphones" despite having claimed in his Interrogatory responses to have conducted a proportional and reasonably diligent search for responsive data); *id.* at 104:11–105:7 (testifying that Plaintiff never submitted iPhone hearing data to Plaintiff's counsel despite having claimed in his Interrogatory responses to have conducted a proportional and

reasonably diligent search for responsive data); Ex. 15, Schragal Dep. Tr. 105:25–
107:4 (agreeing that Plaintiff had not "checked [his] device to see what audio levels
could be captured from the device"); Ex. 16, A. Fletcher Dep. Tr. at 138:3–139:10
(when asked whether Plaintiff searched his iPhone "to see if there's any noise data
in [his] iPhone related to [his] iPhone use," Plaintiff responded, "I did not," despite
having claimed in his Interrogatory responses that he "conducted a proportional and
reasonably diligent search" for responsive data (Ex. 17, A. Fletcher Suppl. Resp. to
RFP No. 10)); *see also, e.g.*, Ex. 18, Salamanca Dep. Tr. at 20:14–21:10 (Although
Defendants have not received Plaintiff Salamanca's response to RFP No. 10, when
asked whether he has "taken any steps to retrieve any information related to audio
levels on [his] iPhone," Plaintiff responded, "No, sir, I haven't.").

Defendants now seek to compel all Wave 2 Plaintiffs to search for information
requested by RFP No. 10, including to take the basic step of reviewing their Apple
iOS devices that record noise exposure and hearing-related information, and produce
any and all responsive data.

## LEGAL STANDARD

Defendants may serve requests on Plaintiffs seeking "to inspect, copy, test, or
sample" "electronically stored information" in Plaintiffs' control. Fed. R. Civ. P.
34(a)(1)(A). As with all discovery, discoverable electronically stored information
must be "relevant to any parties' claim or defense" and "proportional to the needs of

the case." Fed. R. Civ. P. 26(b)(1). When ruling on a motion to compel, courts consider "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

District courts have "broad discretion . . . to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 26(b)). "The objecting party typically bears the burden to substantiate its objections." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 1821924, at *4 (citing *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005)). As this Court has stated, "[i]f a party objects to the relevance of propounded discovery requests, the objecting party must establish that the requested discovery (1) is not relevant under Rule 26(b)(1), or (2) is marginally relevant, such that production would cause potential harm outweighing the presumption in favor of broad disclosure." *Id.* (citations omitted).

Applying these standards here,[5] Plaintiffs' objections to RFP No. 10 should be overruled, and their responses should be compelled.

_____

[5] No agreement or rule precludes or absolves Plaintiffs' obligations to conduct a reasonably diligent search for and produce the highly relevant information requested by RFP No. 10. In contrast to the Order Governing Bellwether Plaintiffs' Obligations to Review and Produce Electronically Stored Information (Pretrial Order 42, Dkt. No. 1171), the Parties agreed, upon Plaintiffs' insistence, that Wave

## **DISCUSSION**

Information relating to Plaintiffs' hearing and hearing health is unquestionably relevant and proportional to the needs of these cases. Defendants are defending against hundreds of Wave 2 cases in which Plaintiffs allege that their use of the CAEv2 caused them to suffer hearing-related injuries and each experience millions of dollars in damages. *See* Master Long Form Compl. (Dkt. No. 704) ¶¶ 12, 123; Ex. 20, Pl. Byrd Initial Discl. at 17 (indicating an intent to seek non-economic damages between $3,108,900 and $5,181,500 and punitive damages of $9 billion calculated as 10% of Defendants' estimated $90 billion net worth).

## I.    THE REQUESTED INFORMATION IS UNDENIABLY RELEVANT.

Plaintiffs' objection to RFP No. 10 on the basis that the noise exposure and noise notification data requested is irrelevant to their claims is without merit. At this

---

Plaintiffs' obligations are defined by Rule 34. The Parties' agreement is reflected in a December 2, 2021 email from Plaintiffs' Leadership to the Court:

> On the ESI protocol, the parties agree that their ESI obligations in the wave cases may be covered solely by Fed. R. Civ. P. 34. The parties agree, however, that the fact that Pretrial Order Nos. 10 and 42 will not be expressly adopted here does not alleviate any wave plaintiff of their obligation to search for and produce responsive ESI, including e-mails, text/messenger app messages, and social media.

Ex. 19, 12/2/2021 Email. This agreement was further incorporated into the Wave 2 and Wave 3 orders. *See* CMO 34, Dkt. No. 2787, § II.4 ("The parties' ESI obligations will be governed by Fed. R. Civ. P. 34."); CMO 47, Dkt. No. 3126, § II.4 (same). As set forth herein, production is required pursuant to Rules 26 and 34.

stage in the MDL litigation—in particular, after the disclosure of hundreds of expert reports and more than a dozen bellwether trials—it is well understood by all Parties that the risk of noise-induced injury is determined by the intensity (i.e., loudness) and duration (i.e., length of time) of noise exposures. *See, e.g.*, Ex. 21, General Expert Report of Christopher Spankovich, Au.D., Ph.D. (Oct. 9, 2020) at 49 ("A basic tenant of NIHL is that damage risk is related to the level and the duration of the exposure."); Ex. 22, General Expert Report of Moises Arriaga, MD (Oct. 9, 2020) at 14; Ex. 23, General Expert Report of Mark Packer, MD (Oct. 9, 2020) at 22 ("With sufficient intensity and duration of noise, sensory hair cells and the entire organ of Corti may be disrupted.").

Noise intensity and duration information automatically recorded by Apple iOS devices is exactly what RFP No. 10 asks Plaintiffs to produce. This information includes how loud and for how long Plaintiffs used their headphones, how loud and for how long Plaintiffs were exposed to environmental noise, and how frequently Plaintiffs were notified by their phones that they were being exposed to dangerous levels of noise. *See supra* notes 2 and 3.

In objecting to this information, Plaintiffs claim this noise exposure data is not relevant because it only exists for recent years after Plaintiffs stopped using the CAEv2. These assertions miss the point. Plaintiffs are claiming that their alleged hearing loss and/or tinnitus **today** are caused by the CAEv2. Thus, to explore

potential alternative causes and defend against these claims, Defendants must be able to obtain discovery and data on *all* noise exposures Plaintiff has experienced—not just his or her noise exposures while using the CAEv2. This is particular true given the large number of Wave Plaintiffs who suffered no demonstrable hearing loss and no documented tinnitus during their use of the CAEv2.

As just one example, Plaintiff Zuniga—the only Wave 2 Plaintiff who produced RFP No. 10 data—claims to "use personal headphones when working out approximately once to twice a week at a *normal* volume" (Ex. 24, Zuniga Resp. to Interrog. No. 8 (emphasis added)), but the data he produced in response to RFP No. 10 shows consistently dangerous levels of headphone usage and more than 95 dangerous headphone usage noise notifications in the 6 months prior to his RFP No. 10 collection (Ex. 25, Zuniga Resp. to RFP No. 10 at Headphone Safety).

Wave 2 Plaintiffs have also objected that the data automatically collected by Plaintiffs' personal Apple iOS devices is not reliable. This objection mistakenly conflates eventual questions of admissibility with the question of relevance for discoverability. *See Bartis v. Biomet, Inc.*, 2021 WL 2092785, at *3 (E.D. Mo. May 24, 2021) (rejecting reliability objections to the production of wearable device data, stating that "[t]his argument clearly goes to admissibility and weight, not discoverability. No inquiry into the reliability of Fitbit data is necessary at this

juncture." (citation omitted)); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

As the Court has recognized in the context of prior discovery in this MDL, "[r]elevancy is construed 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" Order, Dkt. No. 1085, at 8–9 (Apr. 10, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 1821924, at *4 (same). The requested data certainly meets this relevancy standard. *See, e.g.*, *Bartis*, 2021 WL 2092785, at *3 (ordering the plaintiff to produce all data from his Fitbit where the plaintiff claimed pain and lack of mobility); *Cory v. George Carden International Circus, Inc.*, No. 4:13-CV-760, 2016 WL 3460781 (E.D. Tex. Feb. 5, 2016) (ordering the plaintiff to provide defendant access to her mobile phones, tablets, computers, and fitness monitoring devices, finding that data relevant where the plaintiff claimed loss of eyesight). Specifically, the requested information directly bears on Plaintiffs' alleged noise exposures and hearing injuries—essential elements of Plaintiffs' causes of action—and even if it did not, the data reasonably could lead to the discovery of admissible testimony and evidence by refreshing Plaintiffs' recollections or identifying gaps in Plaintiffs' experts' differential diagnoses. Plaintiffs' objection to Defendants'

interpretation of any data that might be produced goes to the ***weight*** any eventual finder of fact should give the data.

## II.   THE REQUESTED PRODUCTION IS PROPORTIONAL HERE, WHERE PLAINTIFFS EACH SEEK MILLIONS OF DOLLARS IN DAMAGES.

Defendants' request for the investigation and production of hearing-related data is certainly proportional to the needs of each case. Plaintiffs' initial disclosures establish that they are seeking *millions* of dollars in compensatory damages and *billions* of dollars in punitive damages *each*. *See, e.g.*, Ex. 20, Pl. Byrd Initial Discl. at 17. Moreover, although disputed vigorously by Defendants, the hundreds of millions of dollars in damages awarded in the handful of bellwether trials won by plaintiffs show that tens of millions of dollars are potentially at stake in each of these cases.

In light of the significant relevance of the data sought (*see supra* § I) and the "***extremely low*** burden of production" (*Bartis*, 2021 WL 2092785, at *2 (emphasis added)), Plaintiffs' proportionality objections simply have no merit. *See infra* § III; *see also Monat Glob. Corp. v. Miller*, No. 3:18-MC-24-J-32MCR, 2018 WL 8578017, at *3 (M.D. Fla. Nov. 27, 2018) (finding that a "subpoena request for Facebook Group data is not disproportionate to the needs of the case given that Monat seeks damages in excess of $225,000"); *Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 207032, at *2 (M.D. Fla. Jan. 24, 2012) (granting

motion to compel ESI were the case was claimed to be worth hundreds of thousands of dollars).

## III.   COLLECTING AND PRODUCING THE REQUESTED DATA IS MINIMALLY BURDENSOME.

Plaintiffs have not—and cannot—establish that RFP No. 10 is overly burdensome. *See Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) (explaining the resisting party's burden in objecting to discovery); *see also* N.D. Fla. Local R. 26.1(C) (requiring the objections "be set out specifically for the individual . . . production request . . . ; an objection cannot be set out generally for an entire set of discovery requests. Boilerplate objections are strongly disfavored."). Plaintiffs generically assert that collecting and producing the requested data would be costly and disruptive. *See*, *e.g.*, Ex. 10, Byrd Resp. to RFP No. 10. This objection has no merit—the requested information is quite literally in the palms of Plaintiffs' hands.

Rule 34(a) specifically contemplates the production of electronically stored information in various formats, allowing "a requesting party to inspect and to copy the product—whether it be a document, disk, or other device—*resulting from the respondent's translation of the data into a reasonably usable form*." *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (emphasis added); *see* Fed. R. Civ. P. 34(a). The need to take certain additional steps to capture the relevant information renders neither the information beyond Plaintiffs' custody or control nor its

production burdensome. *See* Fed. R. Civ. P. 34(a) advisory committee's note (1970 amend.) ("[W]hen the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, this means that respondent will have to supply a print-out of computer data."); *see also, e.g.*, *Bartis*, 2021 WL 2092785, at *3 (ordering the plaintiff to "produce his Fitbit data"); *Higgins v. Koch Dev. Corp.*, No. 3:11-cv-81-RLY-WGH, 2013 WL 3366278, (S.D. Ind. July 5, 2013) (compelling production of electronically stored social media postings to rebut injury claims); *see also Monat Glob. Corp.*, WL 8578017, at *3 (compelling production of social media data "using an e-discovery vendor for the collection and production of the Facebook Group material"). It is by that very principle that Defendants have produced volumes and volumes of electronic discovery. *See, e.g.*, Order, Dkt. No. 1085, at 5 n.3, 12 (Apr. 20, 2020) (recognizing that Defendants "spent hundreds of hours working with numerous employees" and concluding that Defendants satisfied their discovery obligations by "harvest[ing] multiple databases [to] compile the [requested] data into spreadsheets"); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 1821924, at *5 (same).

Defendants requested that all Plaintiffs who use iOS devices check those devices for the existence of any data responsive RFP No. 10. Such would require each Plaintiff to spend mere minutes navigating to the hearing section of his or her

iOS device's health application to determine if any hearing-related information has been recorded. *See* Ex. 2, Hearing Health Data Guide. Due to the automatic nature in which iOS devices record and store hearing-related information without affirmative efforts by the user, this minimal investigation is necessary to ensure all relevant RFP No. 10 data that might exist—including data Plaintiffs are unaware exists—is located. To alleviate any concerns regarding Plaintiffs' production obligations, Defendants proactively offered to accept production of the requested data in the form of screenshots that each Plaintiff can quickly capture and send to his or her counsel in satisfaction of production obligations. The Hearing Health Data Guide created by Defendants' e-discovery vendor Consilio and provided to Plaintiffs explains, in layman's terms, how to collect the requested data in an extremely low-burdensome format. *See* Ex. 2, Hearing Health Data Guide.

To be clear, Defendants simply agreed to accept a lower-burden screenshot production in lieu of a more formal collection to make it easier for Plaintiffs to quickly collect and produce this important information. Plaintiffs have always been free to conduct a formal collection and production (as contemplated by Rule 34) to satisfy their RFP No. 10 production obligations. If a Plaintiff were to opt for a more formal production, that, too, would be minimally burdensome. Plaintiffs' objections to the contrary ignore recent advances in remote e-discovery collections. As described in the attached declaration of Timothy Ferguson, a Senior Digital Forensic

Analyst within Consilio's Digital Forensics and Expert Services division, a formal, targeted collection of hearing health data from iOS devices can be conducted remotely by an e-discovery vendor—i.e., without Plaintiffs turning over their devices—in less than half an hour, at a cost of approximately $500 per custodian, with no resulting damage or destruction to Plaintiffs' data or devices. *See* Ex. 26, Ferguson Decl.

Any burden to look for and produce the relevant, responsive data is extremely low and should be overruled accordingly.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court overrule Plaintiffs' objections and require Plaintiffs to conduct a reasonable search for—including an actual check of all Apple iOS devices—and produce the noise-exposure and hearing-related information requested by Defendants' RFP No. 10.


DATED: July 1, 2022                    */s/ Mark J. Nomellini*
                                       Mark J. Nomellini
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, Illinois 60654
                                       Tel.: (312) 862-3254
                                       mnomellini@kirkland.com

                                       Kimberly Branscome
                                       DECHERT LLP
                                       633 W. 5th St., Suite 4900
                                       Los Angeles, CA 90071

Telephone: (213) 808-5762
kimberly.branscome@dechert.com

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5991
mike.brock@kirkland.com

Kari L. Sutherland
BUTLER SNOW LLP
1200 Jefferson Ave., Suite 205
Oxford, Mississippi 38655
Telephone: (662) 513-8002
kari.sutherland@butlersnow.com

*Counsel for Defendants 3M Company,
3M Occupational Safety LLC, Aearo
Technologies LLC, Aearo Holding,
LLC, Aearo Intermediate, LLC and
Aearo, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C)

Pursuant to Local Rule 7.1(B), counsel for Defendants certify that they conferred with Plaintiffs' counsel regarding the above noncompliance. To date, the Plaintiffs identified herein have failed to comply with this Court's Order.

DATED: July 1, 2022              */s/ Mark J. Nomellini*
                                 Mark J. Nomellini

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 4,694 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

DATED: July 1, 2022                */s/ Mark J. Nomellini*
                                       Mark J. Nomellini

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2022, a copy of the foregoing was filed on the Court's CM/ECF system, which will serve all counsel of record.

DATED: July 1, 2022                */s/ Mark J. Nomellini*
                                       Mark J. Nomellini
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, Illinois 60654
                                       Tel.: (312) 862-3254
                                       mnomellini@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo, LLC*