**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |
| *Wave 2 Plaintiffs* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL WAVE 2 PLAINTIFF RESPONSES TO RFP 10

# I.   TABLE OF CONTENTS

**I.**   DEFENDANTS MAKE NO SHOWING WITH REGARD TO MOST DEVICES .........................................................................................8

**II.**   THE PRODUCTION DEFENDANTS SEEK IS NOT PROPORTIONAL .........................................................................................................9

    a)   RFP 10 IS OVERBROAD, INVASIVE AND WILL CAPTURE NON-PARTY HEALTH DATA .........................................................................9

    b)   PLAINTIFFS HAVE MET THE STANDARD FOR DILIGENCE THAT WAS APPLIED TO DEFENDANTS' RESPONSES TO PLAINTIFFS' WRITTEN DISCOVERY ..........................................................................10

    c)   THE PRODUCTION DEFENDANTS WOULD REQUIRE IS UNDULY BURDENSOME ....................................................................12

    d)   THE BENEFIT OF THE PROPOSED DISCOVERY IS MINIMAL TO NON-EXISTENT ..............................................................................14

    e)   DEFENDANTS' GOAL IS NOT TO SEEK RELEVANT DISCOVERY, BUT TO WINNOW THE MDL DOCKET BY BURDENING PLAINTIFFS .......................17

**III.**   DEFENDANTS' MOTION FAILS ON MULTIPLE PROCEDURAL GROUNDS ..............................................................................19

    a)   DEFENDANTS' MOTION FAILS FOR LACK OF TIMELINESS .......................19

    b)   DEFENDANTS REFUSED TO CONDUCT PRE-MOTION CONFERENCES ........20

    c)   GRANTING ANY PART OF DEFENDANTS' UNRIPE MOTION WILL YIELD ADDITIONAL CASE-SPECIFIC MOTION PRACTICE .....................................21

## INTRODUCTION

Discovery in Wave 2 closed on July 5, 2022. One business day before that deadline, Defendants sought an order compelling "all Wave 2 Plaintiffs"[1] to produce all data related to their hearing and hearing health on personal electronic devices. *See* Dkt. 3265 at 1. As Defendants' motion implicitly concedes, this manner of data is only known to be available on iOS devices and is only known to exist for the period after 2019. *See* Dkt. 3265 at 4.

Defendants' motion should be denied because of its many procedural defects, including a glaring failure of timeliness. The motion should also be rejected for substantive reasons, including because the data it seeks is inherently invasive, relates in some instances solely to non-parties, will be of little or no worth in resolving the underlying issues, requires Plaintiffs to undertake a massive burden, and because Defendants fail to demonstrate or even allege that any responsive data exists with regard to the vast majority of Plaintiffs. Last but not least, the motion should be denied because Request for Production No. 10 ("RFP10") is directly contrary to the

---

[1] Defendants did not conduct a pre-motion conference in many Wave 2 Plaintiffs' cases in advance of this motion, although Defense counsel represented to the Court that they conferred on unspecified dates with unspecified counsel for "the Plaintiffs identified herein" regarding purported "noncompliance… with this Court's Order." *See* Nomellini Decl, Dkt. 3265 at 20 (Plaintiffs do not know what order Defense Counsel's declaration refers to). For that and other reasons, this opposition cannot adequately raise all objections asserted by the hundreds of Wave 2 Plaintiffs, given Defendants' refusal to ripen the issues relevant to each case in advance of this motion.

explicit agreement between the parties that no specific ESI protocol would apply for the Wave cases, but rather the Federal Rules of Civil Procedure would apply as to the manner and reasonableness of collection. 3M has made no showing that any of the plaintiffs subject to this motion have failed in their discovery obligations pursuant to the Federal Rules.

## **BACKGROUND**

As part of the give-and-take process of negotiating the agreed-upon Wave order governing these cases, 3M specifically agreed that there would be no specific ESI protocol that would apply to wave cases, but rather the Federal Rules of Civil Procedure would apply.[2]  3M does not deny that agreement existed, yet it seeks to avoid that agreement in Wave 2 cases through RFP 10.[3]

On March 3, 2022, in RFP10, Defendants asked Wave 2 Plaintiffs to produce:

> All data And electronically stored information regarding your hearing And hearing health from Any and All smartphones, tablets, Apple Watches, hearing aids, Or other electronic devices from one year

---

[2] CMO 31, Wave Order No. 1, Dkt. 2304, on November 22, 2021, indicated that "The parties ESI obligations will be governed by Fed. R. Civ. P. 34. Within 10 days of this Order, the parties must meet and confer regarding the protocols outlined in Pretrial Order No. 10 and Pretrial Order No. 42, which applied for the bellwether cases, and alert the Court as to whether these same protocols should be adopted for the wave cases, or a modified order should be entered. ECF Nos. 443 and 1172."  The parties met-and-conferred to confirm that the prior ESI protocols would not be adopted, and that Fed. R. Civ. P. 34 would govern ESI Obligations for Wave cases.

[3] RFP10 was also propounded as part of Wave 3 Discovery but Defendants have raised the current challenge specifically in relation to Wave 2 Plaintiffs.

preceding the date you first used the CAEv2 earplugs until present, including but not limited to hearing aid usage, headphone audio level data, audiograms, environmental sound levels, noise exposure levels, headphone notifications, And noise notifications.

This was the first time RFP10 was propounded during either Bellwether or Wave discovery. Defendants did not issue a parallel RFP – or indeed any specific ESI request – to Wave 1 Plaintiffs.

Upon receipt of the Wave 2 Discovery Requests on March 3, 2022, Plaintiffs' Leadership immediately contacted Defendants to object to RFP10 as not only contrary to the existing ESI protocols in this MDL, but also outside the bounds of the Parties' prior negotiations relating to ESI and personal communication devices such as phones and laptops. Leadership requested that RFP10 be taken down for all Wave 2 Plaintiffs.

During a March 8 meet-and-confer with Leadership, Defendants proposed creating a protocol using screenshots to collect certain iOS data. Leadership reminded Defendants of the Parties' agreement to not apply any ESI protocol in the Wave cases but agreed to review a proposal if made by Defendants. On March 29, 2022, just days before the deadline for responding to RFP10, Defendants shared their proposed protocol with Leadership. Leadership rejected this proposal as contrary to existing ESI protocols in this MDL, and violative of the Parties' prior agreements and negotiations relating to ESI production for non-Bellwether Plaintiffs.

After Plaintiffs' Leadership rejected this proposal, Defendants strategically elected to negotiate further on this issue with counsel other than the Plaintiffs' Leadership firms who had been involved in RFP10 discussions. In late April 2022, Defendants sent emails to some firms[4] with Wave 2 Plaintiffs, purporting to identify "deficiencies" in their discovery responses. These communications included various versions of the statement below:

> Plaintiff's response to RFP Number 10 is deficient. Plaintiff contends that they have no responsive information to produce. However, each smartphone tracks this type of data and is readily available.
>
> Attached is a set of instructions as to how to retrieve this data. This information was sent to plaintiffs' leadership counsel, but I am not sure if it was shared with you. For each Plaintiff, please produce the available information responsive to this request.[5]

Defendants then strategically continued to confer on RFP10 with individual counsel in only one[6] of the hundreds of Wave 2 cases, and individual counsel in the Zuniga case agreed to make a responsive production.

---

[4] Notably, none of the Plaintiffs' Leadership firms involved in prior discussions of Request for Production #10 received this communication.

[5] Defense counsel's communication did not indicate that the proffered protocol had not been adopted or approved – indeed, had been rejected – by Plaintiffs' Leadership.

[6] Defendants declined to identify to Plaintiffs' leadership the cases in which Defendants purport to have conducted a meet-and-confer in advance of this motion; based on the briefing submitted Zuniga is the only confirmed case.

In late May 2022 Defendants threatened motion practice on RFP10 in all Wave 2 cases if Plaintiffs' Leadership did not adopt a global iOS data collection process governed by an ESI protocol. Leadership again observed that the Parties had agreed to not use an ESI protocol in the Wave cases, and that Defendants had not engaged in conferences to identify which Plaintiffs may be appropriate for motion practice. Defense Counsel then spent five weeks doing nothing to ripen the issue in any individual case or meet procedural pre-motion requirements.

The instant motion followed, filed over Independence Day weekend one business day before the close of Wave 2 discovery.[7] Plaintiffs oppose[8] the motion for the reasons discussed herein.

## **LEGAL STANDARD**

A Party may obtain discovery of any matter "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[7] Plaintiffs' Wave 2 expert reports are due today, July 15, 2022, and many are already filed.

[8] Defendants conveniently neglect to mention that in several cases on which their motion relies, the Court's determination drew in significant part on the producing party's failure to object to the request or oppose the motion. *See, e.g., Monat Glob. Corp. v. Miller*, 2018 WL 8578017, at *2 (M.D. Fla. Nov. 27, 2018) (responding party "failed to file any objections or a motion to modify or quash the subpoena."); *Cory v. George Carden Int'l Circus, Inc.*, 2016 WL 3460781, at *2 (E.D. Tex. Feb. 5, 2016) (despite significant privacy concerns attendant to the discovery sought, because "Plaintiff failed to reply to Defendants' motion, [Plaintiff] is not in a good position to complain about loss of privacy.").

Proportionality depends upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## DISCUSSION

### I.   Defendants makes no showing with regard to most devices

Defendants' Motion to Compel addresses the relevance and burden of producing hearing data only from 2019 and newer Apple iOS devices. Defendants make no mention of the relevance or burden of searching for hearing data on other electronic devices. In fact, Defendants have made no showing that any potentially responsive hearing data might exist on any personal electronic device other than certain post-2019 iOS devices. Many Wave 2 Plaintiffs do not have Apple iOS devices from 2019 or later, but instead older Apple devices, Android devices, other brands of electronic devices, or no "smart" portable electronic device at all.

Defendants do not claim to have established (and, for most Plaintiffs, did not establish) personal use and possession of a post-2019 iOS device in fact discovery. Defendants' "mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Unilin Beheer B.V. v. NSL Trading Corp.*, 2015 WL 12698382, at *5 (C.D. Cal. Feb. 27, 2015). In the cases of Plaintiffs for whom

post-2019 iOS device use has not been established, or even alleged, during fact discovery, Defendants do not have the necessary "colorable basis for [their] belief that relevant, responsive documents exist and are being withheld." *Id*. (citing *Carter v. Dawson*, 2010 WL 4483814, at *5 (E.D. Cal. Nov. 1, 2010)).

Defendants' motion should be denied in its entirety with regard to all Plaintiffs for whom Defendants did not establish personal use and possession of a post-2019 iOS device in fact discovery.

## II.     The production Defendants seek is not proportional.

### a)  RFP 10 is overbroad, invasive, and will capture non-party health data.

Compliance with RFP10 and the protocol Defendants have proposed for extracting responsive data would require Plaintiffs to produce sensitive health data of non-parties with whom Plaintiffs share a phone or other device, including family members. Nothing in the hearing data Defendants seek to compel can indicate whether Plaintiff or some other individual was using the device at the time any data was collected. *See* Exhibit 1, Declaration of M. Ciaramitaro, ¶¶33-34. Defendants propose no method for excluding the health data of Plaintiff's family members and other non-Parties from production – and indeed, Plaintiffs understand that there is no such method. *Id*. Because compliance with RFP10 would require Wave 2 Plaintiffs to produce to Defendants sensitive health data of all non-parties with whom they share a phone, Defendants' motion should be denied.

9

**b) Plaintiffs have met the standard for diligence that was applied to Defendants' responses to Plaintiffs' written discovery**

Defendants motion should be denied because it seeks to apply to Wave 2 Plaintiffs a different, more burdensome standard for "reasonable" searches than Defendants themselves have enjoyed in these cases. Defendants have strenuously argued that a Party has satisfied its obligations, and any further burden is undue, where that Party has produced only known responsive information, and made themselves available for deposition examination. Plaintiffs should not be subject to a higher standard or greater burden than 3M.

3M has argued that merely providing a deponent who can speak to the Party's knowledge on an issue satisfies written discovery requests, and that requiring anything more represents an undue burden. *See* Dkt. 1252 at 14 (burden is undue "because Plaintiffs have already had a less burdensome opportunity to elicit testimony" from the counterparty on the issue); *id.* at 26 ("the burden of conducting such an investigation is undue" because Plaintiffs "have taken significant [counterparty] testimony" on the issue). The Court has accepted these arguments and denied Plaintiffs' associated motions to compel written discovery. *See* Dkt. 1258.

Similarly, Defendants have repeatedly argued for an entitlement to not investigate the existence of additional information responsive to Plaintiffs' discovery requests, as long as Defendants have provided the material which they have subjective knowledge of. *See* Dkt. 1252, at 25 (Defendants opposing motion to

compel further investigation where "Defendants are not presently aware of any information beyond what was previously compiled"); *id.* at 26 (same, where "Defendants are not presently aware of any information [on the topic] beyond what was previously compiled and produced").

The Court denied Plaintiffs' motions to compel further searches for responsive information in the contexts above on the basis that Defendants' responses "do not leave the door open for [the Responding Party] to 'sandbag' [the Requesting Party] at trial with evidence or testimony inconsistent with these responses." *See* Dkt. 1257 at 5. As demonstrated in Defendants' motion, Plaintiffs are in precisely the position that Defendants were in when further discovery was denied. Plaintiff Fletcher noted in his objections to RFP 10 that "to the extent such data or information exists, Plaintiff is not aware of it." Def. Mot., Dkt. 3265, Ex. 17. Likewise, when Plaintiff Bussart was asked at his deposition about whether he possesses audio health data, he testified "I'm not aware of that. You'd have to defer to a technical expert." *Id.* at Ex. 12.

Defendants seek to compel each Plaintiff to produce purportedly responsive documents that many Plaintiffs (as shown in Defendants' motion) do not even know exist. Given that in the examples in Defendants' motion, the Plaintiffs were apparently unaware that any responsive data existed, the likelihood of

"sandbagging" in this context is non-existent. *See* Dkt. 1257 at 5. The motion should therefore be denied.

### c) The production Defendants would require is unduly burdensome

Defendants do not meaningfully address how the burden they seek to impose on Plaintiffs impacts proportionality.

RFP10, as served, would require Plaintiffs to search for every electronic device they have used from one year preceding the date each Plaintiff first used the CAEv2 earplugs until the present (for all Plaintiffs, this request covers a period of at least eight years, and for many, a period of decades) to determine which devices might contain data collected and stored unbeknownst to Plaintiff. After this time-consuming search through and research on years of electronic devices, Plaintiffs in many cases (particularly those without post-2019 iOS devices) would need to submit their devices to a forensic examiner to determine if any hearing data could be extracted from each device, depriving Plaintiffs of necessary tools for daily life.

ILS estimates that extraction of the requested data from a single post-2019 iOS data would be a time-intensive process involving vendors and other professionals billed at hourly rates. Ex. 1 ¶31. Conducting the extraction remotely – in a way that would not require Plaintiff to forego use of his electronic devices for a period of days – would create further complexity. *Id*. Even after any identified potentially responsive data is extracted, there are additional burdens and costs

attendant to parsing the extracted data, loading it to a review platform, and redacting sensitive health information that relates solely to non-parties or is otherwise irrelevant. Ex. 1 ¶¶24-25. In the case of devices targeted by RFP10 other than post-2019 iOS devices (the only devices Defendants' motion addresses), extraction will almost certainly require physical inspection of the device, or shipment to Plaintiff of a rented computer with forensic collection software. Ex. 1 ¶¶26-27.

Defendants' attempts to characterize this burden as minimal fall flat.[9] Defendants rely on cases with starkly different facts to support their claims that requests like RFP10 have been held proportional. Defendants cite *Monat Global* for the proposition that a responding entity's burden "is not disproportionate to the needs of the case," but Defendants omit that "Monat also offered to pay for an e-discovery vendor" to foot the costs to the responding entity. *Compare* Def. Mot. at 15 *to Monat Glob. Corp. v. Miller*, 2018 WL 8578017, at *1 (M.D. Fla. Nov. 27, 2018). Similarly, Defendants cite *Keen* for the proposition that a discovery request was proportional due to the amount in controversy – but omit that the responding party in *Keen* was

---

[9] Def. Mot. Ex. 26 proffers little and is based on less. *First*, Ferguson's statements are expressly limited to Plaintiffs who (1) possess a post-2019 iOS device; (2) have health data enabled; (3) sync their data to iCloud; (4) have sufficient iCloud storage for the proposed process. *Second*, Ferguson provides no support for his shot-in-the-dark cost of $500 per device, and that figure is limited to the cost of "remote collection," expressly excluding the costs of hosting, review, and production. *Third*, Ferguson provides no means by which to exclude the sensitive health data of non-parties to this action with whom Plaintiffs share their electronic devices.

13

"a corporation, likely with substantial resources,"[10] and the requesting parties were three individuals, the inverse of the instant facts. *See Indep. Mktg. Grp., Inc. v. Keen*, 2012 WL 207032, at *3 (M.D. Fla. Jan. 24, 2012).

### d) The benefit of the proposed discovery is minimal to non-existent.

To the extent that some Wave 2 Plaintiffs possess and use devices containing electronic hearing data that can be extracted (at significant burden and cost), the data those Plaintiffs can produce is of minimal to no benefit in resolving the issues of this case. Defendants' claims of relevance are ultimately a preview of the prejudicial suggestions they will make at trial, which the Court should foreclose now, not after imposing a massive burden on Plaintiffs.

Throughout their motion, Defendants intentionally and repeatedly conflate *Plaintiffs* with the post-2019 iOS *devices* that Defendants believe may contain responsive data. Defendants are wrong in suggesting that the data at issue in this motion indicates "how loud and for how long Plaintiffs used their headphones," because there is no indication in the headphone audio data that Defendants seek whether it was *Plaintiff* using those headphones.[11] *Compare* Def. Mot. at 12 *with*

---

[10] The 3M Company received approximately $35 billion in revenue in 2021.

[11] In some circumstances the post-2019 iOS data Defendants seek would not even reflect whether a connected audio output *is a set of headphones*. Ex. 1 ¶19.

Ex. 1 ¶¶33-34. At trial, Defendants will continue to prejudicially conflate a *device's* exposure to noise with a *Plaintiff's* exposure, as they did throughout their motion.[12]

Defendants' arguments on Zuniga's headphone data only demonstrate the prejudice Defendants will seek to create with data that has no probative value. Defendants claim that Zuniga's device's automatic reduction of noises over 85dB is evidence of exposure to hazardous noise by "dangerous headphone usage." Dkt. 3265 at 13. Not so. These alerts simply track times when iOS automatically reduced noise that may have exceeded 85dB. As Defendants' own experts recognize,[13] continuous noise is not hazardous until it exceeds an 8-hour TWA of 85dB—and that hazard assumes extended exposure to a TWA above 85dB over the course of an entire career. Exposure to 85dB noise across isolated moments over the course of a week is not only not "dangerous," but also entirely irrelevant to the cause of Plaintiff's alleged auditory injury or to any possible defense pointing the finger at Plaintiff's own listening habits.[14]

---

[12] *See* Def. Mot. at 13 (data reflects "noise exposures *Plaintiff* has experienced") (emphasis added); *id.* at 12 (data reflects "how loud and for how long *Plaintiffs* were exposed to environmental noise, and how frequently *Plaintiffs* were notified by their phones that *they* were being exposed to dangerous levels of noise.") (emphasis added).

[13] *See* Exhibit 3, Flamme, Stephenson, Tasko, Murphy Report, at 37.

[14] *See* Ex. 3 at 62 recognizing DOD HCP only implemented "when personnel are exposed to continuous and intermittent noise levels exceeding an 85 dBA average

Even beyond the issues attendant to the identification of Plaintiff's data as opposed to that of other users, the data Defendants discuss in their motion cannot be meaningfully used to determine what noises *any* user (whether the Plaintiff or someone else) was exposed to. As discussed in the Declaration of Dr. Chris Spankovich,[15] as of July 2022 the data sought by RFP10 represents "no more than a novelty to get a general idea of noise levels." Ex. 2 ¶15. The physical devices and software at issue "do not have the capacity to provide an accurate measure of the user's noise exposures," including because they are not calibrated in advance of measurement. Ex. 2 ¶¶15-20. In addition, the microphones this data relies on are subject to wear and tear, including due to environmental exposure and age. *Id.* ¶¶17 & 20. Even in the situation of a brand-new device, with a microphone that has not suffered any damage or degradation, the mere act of adding a protective case to a mobile device (as many users do) "will alter the factory-designed response characteristic of the microphone." *Id.* ¶22. The "accuracy and reliability" of noise

---

level over an 8-hour period or impulse noises having peak levels greater than 140 dB SPL.")

[15] *See* Exhibit 2. Defendants' motion provides no scientific support for their repeated claims that the data RFP10 seeks could reflect the actual noise levels a Plaintiff's device was exposed to. Dr. Spankovich has "experience in evaluating audiological data, including in relation to noise exposure, and can competently opine on the veracity or reliability of any hearing health data captured by an electronic device, or the possible relevance or significance to the instant litigation, as this is within my background and expertise." Ex. 2 at ¶13.

data collected depends on where and how the device is held in the user's hand, stored in a pocket or bag, or positioned elsewhere on or off a user's person. *Id.* Dr. Spankovich opines that it would not be possible to support the data responsive to RFP10 "as something likely to provide accurate results without uniform calibration and uniform technology." *Id.* ¶25. Dr. Spankovich's assessment of the reliability of this data, and the willingness of any expert to support it as reliable or accurate, is entirely consistent with Defendants' inability over a period of months to identify any expert to support the claims in their motion about the potential uses of this data.

The data RFP10 seeks does not do what Defendants claim it can and is irreparably unreliable and inaccurate. The only "benefit" of the proposed discovery is its tendency to empower Defendants to conflate a device's noise exposure with a Plaintiff's, and enable other prejudicial arguments. The motion should be denied as not proportional.

### e)  Defendants' goal is not to seek relevant discovery, but to winnow the MDL docket by burdening Plaintiffs.

As discussed above, Defendants' motion seeks relief that will have no meaningful benefit to resolving issues in this litigation, but that will invade the privacy of Plaintiffs and their family members and require expenditure of significant time and expense from individual Plaintiffs. Defendants seek to impose this undue

burden not because they overestimate the usefulness of data responsive to RFP10 or underestimate the burden on Plaintiffs – it is instead another intentional effort to arbitrarily winnow the docket in this MDL by unduly burdening Plaintiffs.

Defendants have made repeated efforts to use methods other than merits determinations to discourage potential claimants from filing or seek the dismissal of Plaintiffs' cases. In early 2022, Defendants sought to impose an untimely "deficiency process" that would prejudice Plaintiffs by requiring responses to tens of thousands of deficiency notices instead of on the rolling basis the relevant orders established. Defendants pushed ahead with their proposed process without any response to Plaintiffs' objections, until Defendants were ultimately shut down by the Court. *See* Dkt. 2992 at 3 ("After nine months of rolling production and review of census forms, Defendants will not now be permitted to serve census deficiency notices for tens of thousands of Plaintiffs all at once."). Similarly, in April 2022 Defendants moved to require "millions of dollars" in "filing fees" from Plaintiffs who had not, in fact, filed on the MDL Docket, but were merely included in the administrative docket that *Defendants themselves* sought early in this case. *See* Dkt. 2941. The Court stopped this effort as well, observing that "[i]t is hard to divine what Defendants, in good faith, hoped to accomplish here." Dkt. 2953 at 3; *see also id.* ("Filing frivolous motions will not 'winnow' frivolous cases."). Defendants' desire to make up for their repeated failures to winnow or hide the number of claims

arising from their misconduct – not a desire for useful discovery – is the true cause of the instant motion.

### III.   Defendants' Motion Fails on Multiple Procedural Grounds

#### a) Defendants' motion fails for lack of timeliness

Defendants' motion to compel, filed after-hours one business day before the close of discovery, is untimely. A "party seeking the extension of an already-expired scheduling order deadline must show both good cause *and* excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015). In evaluating excusable neglect, Courts focus in particular on prejudice to the non-movant and on the interests of efficiency in judicial administration. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) (citing *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996)).

Wave 2 Plaintiffs' expert reports are due today, a deadline based on the scheduled close of fact discovery ten days ago. *See* CMO 34. Requiring production of additional data after those reports are due could require amendments that would render the current expert discovery schedule impossible to meet in some cases. The Court has previously observed that reopening discovery can cause significant prejudice to Plaintiffs, and that the Eleventh Circuit has "often held that a district court has not abused its discretion by holding the litigants to the clear terms of its scheduling order." *See* Dkt, 2201 (quoting *Ashmore*, 503 F. App'x at 685). Indeed,

19

mere months ago, this Court denied another of Defendants' eleventh-hour motions to compel discovery, including on the basis that "Defendants knew" that it "would not be possible" for the discovery to be provided in time for the applicable deadline. *See* Dkt. 3049 at 8 (denying motion to compel DoD).

Defendants were well aware that a motion filed on July 1, 2022 would not be resolved before the close of fact discovery on July 5, 2022. In light of their desire to seek additional discovery after the Wave 2 deadline, they were obligated to timely move to extend that deadline. Defendants made no motion to extend the deadline (neither before its expiration, nor after). In light of the chaos Defendants' requested relief would cause in the Wave 2 schedule, and in light of the prejudice to Plaintiffs of fact discovery exchanged after the deadline for Plaintiff expert reports, Defendants' motion should be denied.[16]

### b) Defendants refused to conduct pre-motion conferences

Defendants served RFP10 on Plaintiffs on March 3, 2022. During the approximately three months between Plaintiffs' service of objections and Defendants' filing of this motion, the counsel with whom Defendants conferred on

---

[16] Plaintiffs' arguments relating proportionality and relevance apply to all cases where RFP10 was propounded; regardless of any procedural deficiencies in timing of the present motion. Plaintiffs in all Wave 3 cases have objected similarly to the Wave 2 Plaintiffs to RFP10.

specifics of an individual Plaintiff was in the Zuniga case. [17] This non-compliance with the Local Rules is not harmless: Defendants' decision to forego pre-motion conferences means that their motion is confusingly directed towards hundreds of Plaintiffs who possess no responsive data, and argues proportionality only with regard to post-2019 iOS devices.

The conference necessary in advance of a motion to compel may be satisfied "by telephonic conference, contemporaneous email communication, or the now-rare personal meeting amongst parties," but is **not** satisfied by a "one-sided, perfunctory letter." *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 723 (D.N.M. 2017). The Court may "summarily deny a motion to compel in the event the Court concludes that the movant failed to confer with opposing counsel in good faith." *Id*. This Court should do so here.

### c) Granting any part of Defendants' unripe motion will yield additional case-specific motion practice

Defendants' motion should be denied on the basis of its untimeliness and Defendants' failure to confer individually in advance of filing. In light of those defects, the other issues raised in Defendants' motion (the availability or existence of responsive information; its potential relevance; the burden of identifying,

---

[17] Defendants' refusal to identify which Plaintiffs they move against makes this motion unworkable. Defendants had several months during Wave 2 discovery (including a full month of inactivity in the lead-up to filing this motion) to confer with any individual counsel who they believed possessed newer iOS devices.

extracting, reviewing, and producing that material; the myriad case-specific factors that Defendants declined to crystalize in advance of their omnibus motion; and the impact on all of those factors on a determination of proportionality) are not ripe for resolution.[18]

## **CONCLUSION**

Defendants' motion should be denied for a host of procedural and substantive reasons. Procedurally, Defendants waited until one business day before the close of discovery to file the motion, and their requested relief would wreak havoc on the Court's schedule. Defendants' decision to forego pre-motion conferences requires the denial of the motion, which seeks resolution of individual issues across hundreds of cases that have not been ripened. Substantively, Defendants have made no showing that the requested data exists anywhere other than post-2019 iOS devices and have made no proposal for how it could be extracted from any older iOS device or non-iOS device. Defendants' requested relief, perhaps intentionally, is unreasonably burdensome and expensive, and seeks to impose a search standard on Plaintiffs that Defendants successfully opposed when resisting discovery earlier in this case. To the extent any data exists and is produced, it is substantively unreliable

---

[18] Even an order only partially granting Defendants' motion will lead to a host of individual motions for protective orders due to Defendants' refusal to ripen these issues in advance of filing. The motion should be denied due to the obstacles to judicial administration of these cases that Defendants' violation of the Local Rules creates.

and technologically unattributable, and Defendants have proposed no method for protecting the sensitive data of non-parties stored in electronic devices to which Plaintiffs have access.

Plaintiffs respectfully ask the Court to deny Defendant's Motion.

Date:  July 15, 2022                    Respectfully submitted,

/s/ Bryan Aylstock
Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

23

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I hereby certify that this motion complies with Local Rule 7.1(F) and contains 5387 words.

<u>*/s/ Bryan F. Aylstock*</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan Aylstock*