# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE 3M COMBAT ARMS | ) | Case No. 3:19-md-02885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |
| | ) | |
| This Document Relates | ) | |
| to**: Sawyer Aubrey** | ) | |
| Case No. | ) | |
| 7:20cv75257-MCR-GRJ | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that the Court enter summary judgment in their favor on Plaintiff Sawyer Aubrey's claims. Fed. R. Civ. P. 56.

Defendants also note that critical issues pertaining to Aubrey's claims are currently on appeal in the Eleventh Circuit. *See*, *e.g.*, *3M Company v. Estes, et al.*, No. 21-13131, 21-13133, 21-13135 (11th Cir.). Specifically, each of Aubrey's claims is barred by the government contractor defense. Also at issue on appeal is the applicability of the combat-use exemption under the Noise Control Act to the CAEv2. Should these issues be resolved in Defendants' favor on appeal, then all of Aubrey's claims would be subject to dismissal. Defendants expressly do not waive reliance on this defense and statutory exemption and reserve the right to raise these issues in supplemental summary judgment briefing following resolution of the appeal.

## MEMORANDUM OF LAW

Aubrey claims that defects in the Dual-Ended Combat Arms Earplug ("CAEv2") caused him to experience hearing loss and tinnitus from military noise exposure. The complaint asserts 16 claims against Defendants. ECF No. 1.

## STATEMENT OF FACTS

1.    Aubrey served in the Marine Corps from 2008 to 2012. Exhibit 1 (Plaintiff's DD-214).

2.    Aubrey served in the Marine Corps Reserves from 2012 to 2015. Exhibit 2 (2/4/2022 Deposition of Sawyer Aubrey) ("Aubrey Dep.") 49:1-12.

3.    Aubrey received the CAEv2 in 2009. Aubrey Dep. 83:24-85:22.

4.    Aubrey used the CAEv2 in 2009 and subsequent years to protect his hearing, as required by the Marine Corps. Aubrey Dep. 83:24-84:8, 89:10-25.

5.    Aubrey first noticed ringing in his ears in 2010. Aubrey Dep. 116:13-16.

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the record could not lead a rational trier of fact to find for the nonmovant, "there is no genuine issue for trial." *Hubbard v. Bayer HealthCare Pharms. Inc.*, 983 F.3d 1223, 1232 (11th Cir. 2020).

**I. Aubrey's claims are barred by Virginia's two-year statute of limitations, which runs from the date of first injury.**

In Virginia, unless expressly provided otherwise, "every action for personal injuries," and "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code § 8.01-243(A); *see also* Va. Code § 8.01-246 (products liability warranty actions use § 8.01-243 limitation period). Personal injury claims are "deemed to accrue," and the statute "begin[s] to run," from the date of injury, "***not when the resulting damage is discovered***." Va. Code § 8.01-230 (emphasis added). This is "well established" Virginia law. *Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 708 S.E.2d 834, 837 (Va. 2011).

Because Virginia does not follow the discovery rule, the statute runs from the date of injury, even if "more substantial injuries" or diagnosis "occur later." *Smith v. Danek Med., Inc.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998). A "defendant[ ] need not establish . . . the exact date of injury, [it] need only show that it is more probable than not that the injury occurred outside the two-year window." *Id.* at 701 n.4 (citation omitted).

The Master Long Form Complaint identifies the injury at the root of the "hearing-related injuries and sequelae thereto" that Aubrey is alleging as "damaging sounds . . . enter[ing] [his] ear canals." *In re: 3M Combat Arms Earplug Products Liability Litig.*, No. 3:19-md-2885, ECF No. 704 at ¶ 8 (Sept. 20, 2019). His claims

3

therefore accrued when "damaging sounds" first allegedly entered his ears while wearing the CAEv2.[1]

Crediting Aubrey's testimony, he began wearing the CAEv2 in 2009 and wore the CAEv2 afterward, whenever he was exposed to noises he considered dangerously loud. Aubrey Dep. 49:1-50:3, 61:11-24, 74:6-75:4, 76:6-78:14, 83:24-85:11; Exhibit 3 (Plaintiff's Objections and Responses to Defendant 3M's Amended First Set of Interrogatories), No. 5. He says he wore the CAEv2 "whenever he was exposed to loud noise." *See* Exhibit 4 (Case-specific expert report of Veena Vanmala Vats) ("Vats Report") at 9. Aubrey's claims therefore accrued in 2009.

Alternatively, Aubrey's claims accrued no later than 2010, when he first noticed symptoms he and his expert associate with his use of the CAEv2. *See Brown*, 1995 WL 559656 at *3–6; *see also, e.g.*, *Lo v. Burke*, 455 S.E.2d 9, 13 (Va. 1995) (plaintiff "did not sustain an injury, and the statute of limitations did not begin to run, until [formerly benign] cyst became malignant"); Aubrey Dep. 116:10-16. His expert report describes those symptoms as a "loud, painful ringing." Vats Report at 14.

---

[1]    Although Aubrey entered into a tolling agreement, that agreement tolled the statute of limitations beginning in 2019; it cannot revive claims that had already lapsed. Aubrey's claims lapsed before 2019, so the tolling agreement is immaterial.

**A.     The SCRA does not save Aubrey's claims.**

The Servicemembers Civil Relief Act ("SCRA") excludes the period of a "servicemember's military service" from the computation of "any period limited by law . . . for the bringing of any action or proceeding in a court." 50 U.S.C. § 3936(a). Under the SCRA, "military service" is defined as:

(i)     active duty, as defined in section 101(d)(1) of Title 10, and

(ii)    in the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under section 502(f) of Title 32 for purposes of responding to a national emergency declared by the President and supported by Federal funds

50 U.S.C. § 3911(2)(A). "Active duty" in the first statutory category is limited to "full-time duty in the active military service of the United States" by a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and "does not include full-time National Guard duty." 50 U.S.C. § 3911(2)(A)(i); 10 U.S. C. 101(d)(1).

The SCRA tolled Aubrey's claims until 2012, when he was "[r]eleased from active duty" in the Marine Corps. Exhibit 1 (Aubrey DD-214). At that point, he was no longer on "active duty"; nor does his subsequent time in the Marine Corps Reserves (2012-2015) qualify as "active duty." *See* 50 U.S.C. §§ 3936(a), 3911(2)(A); 10 U.S.C. 101(d)(1); Aubrey Dep. 49:1-12. Virginia's two-year statute

of limitations began running in 2012, so Aubrey's claims lapsed in 2014. This suit, filed years later, is time-barred.[2]

**B.    Va. Code § 8.01-249(1) does not apply to Aubrey's fraud-based (Counts VII-X) claims seeking recovery strictly for personal injury.**

Aubrey purports to state claims sounding in fraud.[3] Although Va. Code § 8.01-249(1) has a "discover[y]" rule for "actions for fraud or mistake," labeling a claim as fraud doesn't change Va. Code § 8.01-230's "general rule" that a claim accrues when "the injury is sustained . . . not when the resulting damage is discovered[.]" *Cockrell v. Brogan*, 7 Va. Cir. 176, 1982 WL 215313, at *2 (Va. Cir. Ct. Dec. 23, 1982). The "object of an action and not its form determines" what statute of limitations applies. *Friedman v. Peoples Serv. Drug Stores, Inc.*, 160 S.E.2d 563, 565 (Va. 1968) (citation omitted). Therefore, although Va. Code § 8.01-249(1) sets forth a "discover[y]" rule for "actions for fraud or mistake," merely labeling a claim as fraud is insufficient to invoke this "exception to the general rule." *Cockrell*, 7 Va. Cir. 176, at *2 (1982).

---

[2] Even if Aubrey's time in the Reserves had qualified for SCRA tolling, his claims would have accrued in 2015 and lapsed in 2017.

[3] Including Counts VIII (fraudulent misrepresentation), IX (fraudulent concealment), and X (fraud and deceit).

6

Aubrey's "object [i]s to recover damages for personal injuries allegedly sustained through defendant's failure to properly" design the CAEv2 and warn of its alleged risks. *Friedman*, 160 S.E.2d at 565. Even for the purported fraud claims, he alleges strictly personal injuries, and seeks "damages arising from hearing-related injuries and sequelae thereto caused by the Dual-Ended Combat Arms Earplug." Master Long Form Complaint ¶¶ 1, 368, 380, 392, 414.

Those fraud claims therefore also accrued on "the date the injury [was] sustained," meaning that (with the benefit of the SCRA) Aubrey's action should have been filed no later than 2014 (or by 2017, if his time in the Reserves were counted for SCRA purposes). *See Wells*, 2000 WL 33258774, at *2 (applying two-year statute of limitations to constructive fraud claim); *Williams v. Reynolds*, 2006 WL 3198968, at *3 (W.D. Va. Oct. 31, 2006) (fiduciary duty claim, which plaintiff contended sounded in fraud, accrued at time of injury). No matter how labeled, Aubrey's fraud-based claims are time-barred.

## II. Aubrey's strict liability claims (Counts II and IV) are not cognizable under Virginia law.

Aubrey's strict liability claims fail because "Virginia has not adopted a strict liability regime for products liability." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021) (quoting *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018)).

### III.    Aubrey's negligence, implied warranty of merchantability, gross negligence, and negligence per se claims (Counts I, III, VI (in part), XI-XII) fail because he cannot establish their essential elements.

In Virginia, "plaintiffs may pursue a products liability remedy 'under a theory of implied warranty of merchantability or under a theory of negligence.'" *Id.* (quoting *Evans*, 810 S.E.2d at 469). Under "either theory, a plaintiff must prove '(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.'" *Id.* (quoting *Evans*, 810 S.E.2d at 469)

A plaintiff may demonstrate that a "product is unreasonably dangerous" by establishing that it is "unreasonably dangerous in design" or "unaccompanied by adequate warnings concerning its hazardous properties." *Id.* at 299.  Aubrey cannot do either.

### A.    Aubrey cannot establish a design defect that proximately caused his alleged injuries.

A design defect plaintiff must show "that the defect actually caused [his] injury." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993); *McCauley*, 331 F. Supp. 2d at 461 (but-for causation applies to design defect claims).

Design defect plaintiffs also must show a non-hypothetical alternative design that (a) "is technically feasible and desirable," *Lemons v. Ryder Truck Rental, Inc.*, 906 F. Supp. 328, 334 (W.D. Va. 1995); (b) is "not an altogether essentially different

product," *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 895, 900 (E.D. Va. 2010); (c) "is safer overall than the design used by the manufacturer," *Evans*, 810 S.E.2d at 471; and (d) "would in fact have prevented the accident from occurring," *Lemons*, 906 F. Supp. at 334.

Aubrey cannot make this showing.  He lacks case-specific evidence that "the alternative design offered would in fact have prevented" his injury; he therefore "cannot establish causation." *Lemons*, 906 F. Supp. at 334.

### B.  Aubrey cannot show that any actionable failure to warn by Defendants proximately caused harm.

Even when the defendant breached a duty to warn, a plaintiff must prove the breach proximately caused his injuries. *Butler v. Navistar Int'l Transp. Corp.*, 809 F. Supp. 1202, 1208 (W.D. Va. 1991); *see also Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 645 (4th Cir. 1981) (applying Virginia law). That includes showing that different or additional warnings "would . . . have made [Aubrey] act differently" and avoid the harm. *Blue v. Walls Indus.*, 1994 WL 329493, at *1 (4th Cir. July 12, 1994).

There is no failure-to-warn causation when (1) the plaintiff did not read or rely on the product's warnings; (2) additional warnings would not have changed the plaintiff's behavior, *see id.*; or (3) the plaintiff was independently aware of the allegedly unwarned-of risk, *see Babb v. Boddie-Noell Enterprises, Inc.*, 69 F. Supp. 2d 812, 814 (W.D. Va. 1998).

Aubrey cannot establish that he would not have used the CAEv2 had additional or different warnings accompanied it. *See, e.g.*, *Stanback*, 657 F.2d at 645 (no recovery where "uncontradicted evidence" established plaintiff would have received vaccinations even if manufacturer had "fully warned" her physician about risks"); *Kling v. Key Pharm., Inc.*, 35 F.3d 556 (Table), 1994 WL 477815, at *3 (4th Cir. Sept. 6, 1994) (summary judgment warranted where there was no evidence that "more explicit warnings would have altered [physician's] treatment plan").

Aubrey instead testified that the Marine Corps required him to use the CAEv2 and that the CAEv2 was the "only [earplug] authorized for use in uniform, at least where I was." Aubrey Dep. 89:22-90:4. "It wasn't really a decision that was made personally. It was a 'This was what you're instructed to wear,' and as an E3, you do what the E6 tells you to wear." Aubrey Dep. 98:10-19.[4]

Moreover, there is no evidence that a different warning to the government would have avoided Aubrey's injury by causing the government not to purchase the CAEv2. Nor can Aubrey establish that an additional warning would have altered the outcome in his particular case.

---

[4] "E3" refers to a Private First Class; "E6" to a Staff Sergeant. *See* https://www.military.com/army/enlisted-ranks.html (last accessed July 17, 2022).

Aubrey received his CAEv2 during an "initial gear issue" before deployment; that is, in a bulk shipment delivered to the military. Aubrey Dep. 85:16-86:5. The Court has ruled that, consistent with the military's instructions not to provide instructions *inside* the bulk shipments of CAEv2, Defendants could have provided warnings to servicemembers by "affixing warnings to the outside of the [bulk shipment] boxes."[5]  However, Aubrey has no evidence that he would have actually seen any warning affixed to the bulk shipment box. Rather, he testified that military employees simply handed him a "greenish tin box" containing the CAEv2. Aubrey Dep. 85:16-86:23. He does not recall any other packaging, and he does not recall that the "tin box" had any labeling or words. Aubrey Dep. 87:16-88:2.[6]

## IV.   Aubrey cannot meet the requirements for breach of express warranty (Count V).

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" *Valley Proteins, Inc. v. Mid-S. Steam Boiler & Eng'g Co.*, 2017 WL 11507175, at *5–6 (E.D. Va. May 12, 2017) (quoting Va. Code § 8.2-313(1)(a));

---

[5] Case No. 3:19-md-02885, Dkt. 1280 at 54.

[6] Because Aubrey's negligence-based claims (negligent failure-to-warn and negligent design defect) fail, so too do his gross negligence and negligence per se claims arising from the same conduct.

Va. Code § 8.2-313(2) (seller's affirmation of value, opinion, or commendation of goods does not create warranty).

Aubrey "points to no specific warranties that plausibly formed the basis of [his] decision to" use the CAEv2. *Porter v. DePuy Orthopaedics, Inc.*, 2019 WL 3979656, at *10 (E.D. Va. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 3978407 (E.D. Va. Aug. 22, 2019); *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 190 (Va. 2003) (allegation could not sustain express warranty claim by "merely parrot[ing] the language of Code § 8.2–313").

Aubrey did not choose to wear the CAEv2 based on specific warranties; he followed the Marine Corps' orders to wear the CAEv2. Aubrey Dep. 89:22-90:4. He could not choose to ignore these orders. Aubrey Dep. 89:17-21.

Aubrey also does not recall any specific warranties about the CAEv2, only vaguely recalling that an instruction card, which he did not identify as being written by Defendants, contained some writing. *See* Aubrey Dep. 87:16-88:2, 92:6-95:8 (at most, he recalls this instruction card said that inserting one end of the CAEv2 allowed some noise, while the other blocked more noise), 96:11-22 (he saw no wallet card, posters, presentations, videos, or advertisements about CAEv2 while in military). These vague recollections are exactly the "ambiguous, inconclusive, or general discussions" that cannot support a Virginia express warranty claim.

*Porter*, 2019 WL 3979656, at *9 (citation omitted). Nor does Aubrey's testimony show that he relied on any statement made by Defendants.

   **V.   Aubrey's claim for breach of implied warranty for fitness for particular purpose fails because he used the CAEv2 for its ordinary purpose (Count VI).**

   Virginia law recognizes two kinds of implied warranties: "an implied warranty of merchantability" or "fit[ness] for [the product's] ordinary purpose," and "an implied warranty of fitness for a particular purpose." *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 502–03 (Va. 1999) (citing Va. Code §§ 8.2-314, 8.2-315). As discussed above, Aubrey's claims based on the implied warranty of merchantability (fitness for ordinary purpose) fail.

   As to a claim for an implied warranty of fitness for a *particular* purpose, Aubrey must show the seller had reason to know the particular purpose for which the buyer required the goods," and that the buyer "relied upon the seller's skill or judgment." *Medcom, Inc. v. C. Arthur Weaver Co.*, 348 S.E.2d 243, 246 (Va. 1986). "A 'particular purpose' differs from the ordinary purpose for which the goods are used." Va. Code § 8.2-315, cmt. 2.

   Thus, this claim requires Aubrey to show that the military bought, and he used, the CAEv2 for some purpose "*other than its ordinary purpose and peculiar and unique to the plaintiff.*" *Whitaker*, 2017 WL 3197243, at *2 (emphasis added).

13

Aubrey cannot do this: he (and the military) used the CAEv2 only for their ordinary purpose—hearing protection from potentially damaging noise.

## VI. Aubrey's fraud claims (Counts VII-X) fail absent any representation or omission by Defendants upon which he relied to his detriment.

Virginia law recognizes actual and constructive fraud.[7] *See Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). For both, a plaintiff must prove reliance, among other elements, "by clear and convincing evidence." *Id.* (citation omitted).

The requisite "reliance" on the false statement or omission must be "by the party misled" and "damaged," i.e., the plaintiff. *Evaluation Research Corp.*, 439 S.E.2d at 390; *see also Murray v. Hadid*, 385 S.E.2d 898, 903 (Va. 1989) *Harter v. Ethicon, Inc*., 2016 WL 7407425, at *4 (S.D. W. Va. Dec. 15, 2016) ("Virginia law requires proof of reliance by the injured party, as opposed to reliance by a third party[.]"). Aubrey cannot meet this requirement.

---

[7] Virginia law does not "recognize negligent misrepresentation as a separate cause of action from that of constructive fraud." *Baker v. Elam*, 883 F. Supp. 2d 576, 581 (E.D. Va. 2012) (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)). Therefore, Defendants will treat Count VII as purporting to state a claim for constructive fraud. Although Aubrey pleads fraudulent concealment as a standalone claim (Count IX), in Virginia it is simply a form of actual fraud. *See, e.g.*, *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581-82 (Va. 2003).

As discussed, at most, Aubrey recalls that he read an instruction sheet indicating the earplug had two ends to be used as protection against different levels of noise. *See* Aubrey Dep. 87:16-88:2, 92:6-95:8. That does not show that he relied on a statement that Defendants made. He also denies he read or saw a wallet card, posters, presentations, videos, or advertisements about the CAEv2 while in the military. Aubrey Dep. 96:11-22. The fraud claims fail for Aubrey's lack of reliance. *See Evaluation Research Corp.*, 439 S.E.2d at 390.

## VII.   Aubrey's consumer protection claim (Count XIII) fails for multiple reasons.

"The Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 *et seq.*, "does not apply to federally regulated products." *Ball*, 963 F. Supp. 2d at 507–08; *see also* Va. Code § 59.1-199(A). This Court has ruled that the CAEv2 is subject to the federal "Environmental Protection Agency's ('EPA') regulations governing the labeling of hearing protection devices[.]" *McCombs v. 3M et seq.*, No. 7:20-cv-00094-MCR-GRJ, ECF No. 64 at 13–16 (April 2, 2021) (citing 40 C.F.R. § 211.201 *et seq.*). Therefore, the CAEv2 is excepted from the VCPA's purview.

Moreover:

- the military's issuance of the CAEv2 to Aubrey is not a "consumer transaction" under the VCPA, *see* Va. Code § 59.1-198;

- Aubrey cannot establish "loss"—meaning a pecuniary loss, *see* Va. Code § 59.1-204(A); *Devonshire v. EurAuPair Int'l, Inc.*, 40 Va. Cir. 149 (1996); *Deane v. Novacare Orthotics & Prosthetics E., Inc.*, 50 Va. Cir. 418 (1999) (product liability claim, not VCPA claim, is correct avenue to recover personal injury damages); and

- "the VCPA requires a plaintiff to allege a fraudulent misrepresentation of fact," including a knowing, intentional, and false representation; reliance; and resulting damage. *Hamilton v. Boddie-Noell Enterprises, Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015) (citation omitted); *Weiss v. Cassidy Dev. Corp.*, 63 Va. Cir. 76 (2003). As discussed, Aubrey cannot satisfy these elements.

**VIII.  Aubrey cannot establish a claim for unjust enrichment (Count XV).**

"Unjust enrichment is a judicially-created rationale for implying a contract where no express contract exists." *Webb v. Webb*, 37 Va. Cir. 274 (1995). To state a claim, Aubrey must allege that he "conferred a benefit on Defendants," who were aware of the benefit and should reasonably have expected to pay for it, but did not. *In re All Pending Chinese Drywall Cases*, 80 Va. Cir. 69, 2010 WL 7378659, at *6 (2010) (citations omitted). Unjust enrichment is not available where the plaintiff has an adequate remedy at law.  *See, e.g.*, *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 2008 WL 10669311, at *7 (2008).

16

Aubrey's allegations sound in tort, not contract or quasi-contract, and he has no evidence that he conferred a benefit upon Defendants that was not repaid. Further, he has an adequate legal remedy (monetary damages) for any tortious wrongdoing by Defendants. The unjust enrichment claim fails.

## IX. Aubrey's claims for loss of consortium and punitive damages (Counts XIV and XVI) fail without viable substantive claims and are not cognizable.

Loss of consortium and punitive damages are not stand-alone claims and fail without any viable, underlying substantive claim. *See, e.g.*, *Hixson v. Hutcheson*, No. 5:17-CV-032, 2019 WL 302516, at *8 (W.D. Va. Jan. 23, 2019) ("Without . . . substantive underlying claims, Hixson's claims for punitive damages and attorneys' fees are groundless and DISMISSED."). Any claim for loss of consortium fails for the additional reason that "Virginia no longer recognizes a loss of consortium cause of action." *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014).

## CONCLUSION

For these reasons, Defendants respectfully request that the Court enter summary judgment in their favor.

Respectfully submitted,


 /s/  J. William Manuel
J. William Manuel (MS Bar #9891)
    *Admitted Pro Hac Vice*
Jeffrey R. Blackwood (MS Bar #10613)
    *Admitted Pro Hac Vice*
Michael C. Williams (MS Bar #104537)
    *Admitted Pro Hac Vice*
Bradley Arant Boult Cummings LLP
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile:  (601) 948-3000
wmanuel@bradley.com
jblackwood@bradley.com
mcwilliams@bradley.com

*Counsel for Defendants 3M Company; 3M*
*Occupational Safety LLC; Aearo*
*Technologies LLC; Aearo Holding, LLC;*
*Aearo Intermediate, LLC; and Aearo, LLC*

18

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 3,717 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

    */s/  J. William Manuel*
J. William Manuel (MS Bar #9891)
    *Admitted Pro Hac Vice*
Jeffrey R. Blackwood (MS Bar #10613)
    *Admitted Pro Hac Vice*
Michael C. Williams (MS Bar #104537)
    *Admitted Pro Hac Vice*
Bradley Arant Boult Cummings LLP
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
wmanuel@bradley.com
jblackwood@bradley.com
mcwilliams@bradley.com

*Counsel for Defendants 3M Company; 3M Occupational Safety LLC; Aearo Technologies LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; and Aearo, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida using the electronic case filing system of the Court, which will send electronic service to all registered counsel of record.

 */s/  J. William Manuel*
J. William Manuel (MS Bar #9891)