**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-02885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITYLITIGATION | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |
| This Document Relates | ) | |
| To:  Christopher Blimka | ) | |
| Civil Case No. 7:20-cv-6868 | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants respectfully request that the Court enter summary judgment in their favor on Plaintiff's claims for all Plaintiff Christopher Blimka's claims. In support of this motion, Defendants rely upon the pleadings and the following memorandum of law and exhibits.

Defendants also note that critical issues pertaining to Plaintiff's claims are currently on appeal in the Eleventh Circuit. *See*, *e.g.*, *3M Company v. Estes, et al.*, No. 21-13131, 21-13133, 21-13135 (11th Cir.). Specifically, each of Plaintiff's claims is barred by the government contractor defense. Also at issue on appeal is the applicability of the combat-use exemption under the Noise Control Act to the CAEv2. Should these issues be resolved in Defendants' favor on appeal, then all of Plaintiff's claims would be subject to dismissal. Defendants expressly do not waive reliance on this defense and statutory exemption and reserve the right to raise these

issues in supplemental summary judgment briefing following resolution of the appeal.

## **MEMORANDUM OF LAW**

Plaintiff seeks compensatory and punitive damages, alleging that defects in the Dual-Ended Combat Arms Earplug ("the CAEv2") caused his partial hearing loss and tinnitus from noise exposure during his military service. The complaint asserts 15 claims against Defendants. *See* ECF No. 1. All fail under Washington law.[1]

## **STATEMENT OF FACTS**

1.      Plaintiff Christopher Blimka joined the Army in July 2001 and was discharged in February 2009. **Ex. 1**, Christopher Blimka, 2/22/2022, Dep. 66:14–22.

2.      Plaintiff first used a CAEv2 in late 2001 or early 2002 when he arrived at Fort Bragg. *Id.* at 80:16–81:11.

3.      The last time Plaintiff used a CAEv2 was in November or December of 2008. *Id.* at 82:2–11.

4.      The CAEv2 was Plaintiff's primary hearing protection device while he was in the Army. *Id.* at 119:14–20.

5.      Plaintiff believed that the CAEv2 did not provide a good seal when he was in the military. **Ex. 2**, Dennis Agliano, M.D., 6/20/2022, Dep. 58:6–10.

---

[1] The parties have agreed that Washington law applies to Plaintiff's claims.

6.     Plaintiff did not rely on any written material in deciding whether to use the CAEv2. **Ex. 1**, Blimka Dep. at 152:6–12, 144:3–20.

7.     Plaintiff never saw any advertisements or promotional materials related to the CAEv2. *Id.* at 152:13–16.

8.     Plaintiff never purchased a CAEv2. *Id.* at 143:3–5.

9.     In accordance with instructions from the Government, Defendants did not provide any written or oral instructions or warnings with the CAEv2.

10.     Plaintiff knew that he was supposed to use the CAEv2 as hearing protection against noise exposures. **Ex. 1**, Blimka Dep. at at 147:13–16.

11.     Plaintiff first perceived his alleged tinnitus when he returned from deployment in Iraq in 2003, during which time he says that he used a CAEv2 around noise exposures. *Id.* at 174:7–22, 123:1–17.

12.     Plaintiff first became aware of his alleged hearing loss in 2009. *Id.* at 165:2–17.

13.     Plaintiff filed this lawsuit on February 4, 2020. ECF No. 1.  He seeks personal injury damages, asserting that alleged defects in the CAEv2 caused his hearing loss and tinnitus. **Ex. 5**, Plaintiff's Resp. to 3M's Am. First Set of Interrogatories, No. 2.

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021). If the record could not lead a rational trier of fact to find for the nonmovant, "there is no genuine issue for trial." *Hubbard v. Bayer HealthCare Pharms. Inc.*, 983 F.3d 1223, 1232 (11th Cir. 2020).

## I.   The WPLA precludes most of Plaintiff's claims.

The Washington Product Liability Act ("WPLA"), RCW 7.72.010 *et seq.*, "is the exclusive remedy for product liability claims." *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012) (en banc) (citations omitted). There are only four theories of recovery permitted under the WPLA: "(1) a defective design claim; (2) a failure to warn claim; (3) a defective manufacture claim; or (4) a breach of express or implied warranty claim." *Staub v. Zimmer, Inc.*, No. C17-0508JLR, 2017 WL 2506166, at *2 (W.D. Wash. June 9, 2017) (citing RCW 7.72.030). The only exceptions to WPLA preclusion are claims for fraud or intentional torts, or consumer protection act claims. RCW 7.72.010(4). Accordingly, Plaintiff's claims for negligent misrepresentation (Count VII), gross negligence (Count XI), negligence per se (Count XII), and unjust enrichment (Count XV) are therefore subsumed by the WPLA and should be dismissed. *See*

*Rodman*, 2021 WL 2434521, at \*3; *see also Breen*, 2021 WL 673485, at \*7; *Baker v. 3M Co. et al.*, No. 7:20-cv-00039-MCR-GRJ, ECF No. 87 at 5 (N.D. Fla. April 8, 2021) (construing "Master Short Form Complaint as raising discrete theories of liability under a single WPLA cause of action").

## II.    **Plaintiff's claims not precluded by the WPLA are time-barred.**

### A.    **Washington's applicable three-year statutes of limitations bar Plaintiff's claims.**

Under the WPLA, "no claim . . . may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." RCW 7.72.060(3).   Likewise, fraud-based claims are subject to a three-year limitation period that runs upon "the discovery by the aggrieved party of the facts constituting the fraud[.]" RCW 4.16.080(4).

Under Washington's "discovery rule," an "action accrues when the plaintiff knows ***or should know*** the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Allen v. State,* 826 P.2d 200, 203 (Wash. 1992) (emphasis added). The rule does not require that a plaintiff know he has a legal cause of action, because "[t]o so require would effectively do away with the limitation of actions until an injured person saw his/her attorney." *Gevaart v. Metco Const., Inc.*, 760 P.2d 348, 350 (Wash. 1988); *see also Clare v. Saberhagen Holdings, Inc.*, 123 P.3d 465, 468 (Wash. Ct. App. 2005); *Reichelt v. Johns-Manville Corp.*, 733 P.2d 530, 536 (Wash. 1987).

Once a plaintiff "is placed on notice by some appreciable harm occasioned by another's wrongful conduct," he "must make further diligent inquiry to ascertain the scope of the actual harm." *Green*, 960 P.2d at 916 (quotations and citations omitted). "The plaintiff is charged with what a reasonable inquiry would have discovered." *Id.* A plaintiff invoking the discovery rule bears the burden "to show that facts constituting the cause of action were not discovered *or could not have been discovered* by due diligence within the limitations period." *Precision Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151, 1153 (W.D. Wash. 2003). Where the facts are undisputed, accrual under the discovery rule "may be determined as a matter of law." *Clare*, 123 P.3d at 467.

Plaintiff's claims are barred by the three-year statutes of limitations. Plaintiff was first issued and began using the CAEv2 in late 2001 or early 2002. **Ex. 1**, Blimka Dep. 80:16–81:11. The CAEv2 was his primary hearing protection device from that time until November or December 2008. *Id.* at 119:14–20. Significantly, Plaintiff believed that the CAEv2 did not provide a good seal when he was in the military. **Ex. 2**, Agliano Dep 58:6–10. And he knew that he used the CAEv2 to protect his ears and hearing around loud noises. **Ex. 1**, Blimka Dep. 147:13–16. Plaintiff testified that he first perceived his alleged tinnitus when he returned from deployment in Iraq in 2003, during which time he says that he used a CAEv2 around noise exposures. *Id.* at 174:7–22, 123:1–17. At this time, even if he didn't know the

cause of his tinnitus, Plaintiff knew facts sufficient to prompt inquiry into issues with his CAEv2 hearing protection and the extent of the harm, including his alleged tinnitus. Plaintiff also said that he first became aware of his alleged hearing loss in 2009, *id.* at 165:2–17, after about seven years of wearing primarily the CAEv2.

In short, Plaintiff knew some of the harm (his alleged tinnitus and hearing loss) and knew or should have known of facts to prompt further diligent inquiry in 2003 at the latest. Yet he did not file his lawsuit until February 2020, 17 years later. *See* ECF No. 1. As discussed below, tolling cannot save his claims, so they are time-barred and should be dismissed.

### B.    The SCRA does not save Plaintiff's claims.

The Servicemembers Civil Relief Act ("SCRA") excludes the period of a "servicemember's military service" from the computation of "any period limited by law . . . for the bringing of any action or proceeding in a court." 50 U.S.C. § 3936(a). Military service is, principally, active-duty service. 50 U.S.C. § 3911(2)(A)(i); 10 U.S.C. § 101(d)(1). National Guard service qualifies as "active duty" under SCRA only if the National Guard member's unit provided "[s]upport of operations or missions . . . at the request of the President or Secretary of Defense." 50 U.S.C. § 3911(2)(A)(i); 32 U.S.C. § 502(f)(2)(A).

The SCRA does not save Plaintiff's claims from dismissal. Under the SCRA, Plaintiff's limitation periods were tolled until he left service in February of 2009.

**Ex. 1**, Blimka Dep. 66:14–22. At that time, the three-year statutes of limitations for his WPLA and fraud claims began to run and expired in February 2012. Plaintiff's claims were thus barred by the applicable statutes of limitation when he sued on February 4, 2020.

### III. Plaintiff's claims related to hearing loss fail because Plaintiff lacks admissible expert testimony establishing that the CAEv2 proximately caused his subjective hearing loss.

Any tort plaintiff must "show proximate causation by a preponderance of the evidence to prevail." *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1033–34 (E.D. Wash. 2010), *aff'd*, 438 F. App'x 607 (9th Cir. 2011). A plaintiff must show both "that he was exposed to a product that could have caused the physical injuries he complains about (general causation), and that his exposure did in fact result in those injuries (specific causation)." *Baker*, ECF No. 87 at 5–6 (quoting *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008)).

"Expert testimony is required to establish causation when an injury involves obscure medical factors that would require an ordinary lay person to speculate or conjecture in making a finding." *Rodman v. Ethicon, Inc.*, No. C20-6091 BHS, 2021 WL 2434521, at *5 (W.D. Wash. June 15, 2021). "Without any admissible testimony as to legal causation, as opposed to diagnosis, there can be no genuine issue of material fact on the causation issue." *Luttrell v. Novartis Pharm. Corp.*, 894 F. Supp. 2d 1324, 1340–41 (E.D. Wash. 2012), *aff'd*, 555 F. App'x 710 (9th Cir.

2014). The cause of Plaintiff's alleged hearing loss and tinnitus is a complex medical inquiry beyond the knowledge of the ordinary juror. Therefore, Plaintiff must adduce expert testimony "demonstrat[ing] that the [CAEv2] 'probably' or 'more likely than not' caused the injury, rather than 'might have,' 'could have,' or 'possibly did,'" and the testimony "must be based on a reasonable degree of medical certainty . . . as opposed to unsupported speculation.'" *Baker*, ECF No. 87 at 6 (quoting *Luttrell*, 894 F. Supp. 2d 1340).

Plaintiff's case-specific expert, Dr. Dennis Agliano, testified that he will not offer any opinions at trial relating to Plaintiff's alleged hearing loss. **Ex. 2**, Agliano Dep. 20:21–21:9. In fact, the only case-specific expert opinion related to Plaintiff's alleged hearing loss is that of Defendants' expert, Dr. Avner Aliphas. In his report, Dr. Aliphas says that "Mr. Blimka has normal hearing. There is no evidence of any hearing loss on extensive audiometric testing. The CAEv2 earplugs protected Mr. Blimka' s hearing while he was in the military." **Ex. 6**, Case-Specific Expert Report of Avner Aliphas, M.D., 21.

Accordingly, Plaintiff has not proffered admissible expert testimony that the CAEv2 proximately caused his alleged hearing loss. He thus cannot establish an essential element of his hearing loss claims and summary judgment on all hearing loss claims is proper.

**IV.   Plaintiff cannot show that any alleged failure to warn by Defendants proximately caused his harm (Counts III-IV).**

The WPLA permits recovery where "the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). To establish failure to warn causation, a plaintiff must show "that, but for the absence of warnings, [hi]s accident and injuries would not have occurred." *Hiner v. Bridgestone/Firestone, Inc*., 978 P.2d 505, 510 (Wash. 1999) (en banc).

Thus, a "[f]ailure to warn is not a proximate cause of injury when it is clear that a warning would have made no difference." *Kauffman v. Manchester Tank & Equip. Co.*, 203 F.3d 831 (Table), 1999 WL 1103357, *3 (Dec. 3, 1999) (applying Washington law). An allegedly inadequate warning is not the proximate cause of a plaintiff's harm when (1) the plaintiff did not read or rely on the product's warnings, *see Hiner*, 978 P.2d at 510–11; (2) the plaintiff would not "have changed his behavior in response to even more detailed warnings," *Anderson v. Weslo, Inc.*, 906 P.2d 336, 341 (Wash. Ct. App. 1995); or (3) the plaintiff is independently aware of the allegedly unwarned-of risk, *see Hofstrand v. Coast Crane Co. of Washington*, 2002 WL 31303558, at *4 (Wash. Ct. App. Oct. 14, 2002). Here, Plaintiff cannot show that any additional warnings would have altered the outcome. There is no evidence that a different warning to the government would have

10

avoided Plaintiff's injury by causing the government not to purchase the CAEv2. For example, Defendants did not provide any written or oral instructions or warnings with the CAEv2 in accordance with instructions from the Government. **Ex. 3**, Battler Dep. 152:8–17, 151:18–152:17; **Ex. 4**, Santoro  Dep. 326:13–327:6.

Nor can Plaintiff establish that an additional warning would have altered the outcome in his particular case. Significantly, even if Defendants had provided additional warnings and even if Plaintiff would have preferred not to use the CAEv2, Plaintiff still would have been required to use the issued CAEv2, and there were no other hearing protection devices available to him. **Ex. 1**, Blimka Dep. 152:6–12, 144:3–20.  Plaintiff's own testimony establishes that he did not rely on any warning.

Plaintiff thus cannot establish that he would not have used the CAEv2 if the product had been accompanied by additional or different warnings. *See, e.g., Hofstrand*, 2002 WL 31303558, at *4.  Accordingly, summary judgment is proper on Plaintiff's failure to warn claim.

## V.   Plaintiff cannot meet the requirements for breach of express warranty (Count V).

Although the WPLA provides for warranty-based recovery under certain circumstances, *see* RCW 7.72.030(2), contractual privity between the buyer and seller is generally required unless "the manufacturer makes express

representations . . . to the plaintiff." *Thongchoom v. Graco Children's Prod.*, Inc., 71 P.3d 214, 219 (Wash. Ct. App. 2003) (citing *Baughn*, 727 P.2d at 669).

Plaintiff cannot establish that he was in privity with Defendants because there is no record evidence that he purchased the CAEv2 from Defendants. **Ex. 1**, Blimka Dep. 143:3–5. Nor has Plaintiff identified any "express representation" made to him by Defendants. To the contrary, Plaintiff does not remember ever seeing any advertisements or promotional materials related to the CAEv2. *Id.* at 152:13–16. Therefore, Defendants are entitled to summary judgment on any claim for breach of express or implied warranty. *See Thongchoom*, 71 P.3d at 219; *Baughn*, 727 P.2d at 669.

Even putting aside privity, Plaintiff still cannot establish an express warranty claim. The affirmation of fact must be a "part of the basis of the bargain," RCW 7.72.030(2)(b), which means Plaintiff must show that he was aware of and "relied on the alleged express warranty," *Reece v. Good Samaritan Hosp.*, 953 P.2d 117, 123 (Wash. Ct. App. 1998) (citation omitted); *see also Baker*, ECF No. 87 at 9 ("Recovery for breach of an express warranty is contingent on a plaintiff's knowledge of the representation.'") (quoting *Thongchoom*, 71 P.3d at 307). This Court has held that a plaintiff must "sufficiently identif[y]" the substance of the alleged "express warranties from Defendants regarding the CAEv2" and adduce evidence "rais[ing] a triable issue of fact as to whether he was aware of the express

warranties at issue." *Baker*, ECF No. 87 at 9–10. Finally, the alleged express warranty must "prove[] to be untrue." RCW 7.72.030(2)(b).

Plaintiff cannot meet these requirements. As already discussed, Plaintiff did not rely on any representation about the CAEv2. **Ex. 1**, Blimka Dep. 152:6–12, 144:3–20. *See Lovold v. Fitness Quest Inc.*, 2012 WL 529411, at *5 (W.D. Wash. Feb. 16, 2012) ("[B]reach of express warranty claim fails as a matter of law" when plaintiff "present[s] no evidence regarding what warranties are at issue, whether they were the basis of the bargain, whether the warranty relates to a material fact, and that the warranty was untrue.").

## VI.   Plaintiff cannot establish the essential elements of his fraud and misrepresentation claims (Counts VII-X).

### A.   Negligent misrepresentation (Count VII) is precluded by the WPLA.

"The WPLA clearly contemplates . . . negligent misrepresentation within its scope of preemption." *Rodman*, 2021 WL 2434521, at *3; *see also Breen*, 2021 WL 673485, at *7. Any such claim here should be dismissed.

### B.   Washington does not recognize a standalone claim for fraud and deceit (Count X).

Defendants are not aware of any standalone claim for fraud and deceit under Washington law that is separate from fraudulent misrepresentation or concealment. Therefore, Count X should be dismissed as non-existent and/or duplicative.

**C.      Plaintiff's fraud claims (Counts VII-X) fail absent any representation or omission by Defendants upon which he detrimentally relied.**

To prove a fraud claim under Washington law, a plaintiff must prove reliance, among other elements, by "clear, cogent and convincing evidence." *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996). Negligent misrepresentation (even if not preempted here, which it is) likewise requires justifiable reliance. *See Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 623–24 (Wash. 2002).

For actual fraud, privity between the parties is not necessarily required. *See Baker*, ECF No. 87 at 11–12 (citing *Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1070 (Wash. 1987)). Rather, a defendant may owe a duty to "third persons whom the defendant intends or has reason to expect will receive the [allegedly false] information," particularly in "a business transaction" where the defendant "has knowledge necessary to prevent misrepresentation, or facts basic to the transaction where the plaintiff would reasonably expect disclosure." *Haberman*, 744 P.2d at 1070. Thus, the Court previously found that plaintiffs could base fraud claims on alleged misrepresentations by Defendants "regarding the CAEv2 [made] to both the military and to soldiers like" them. *Baker*, ECF No. 87 at 11–12; *see also Adkins v. 3M Company*, No. 7:20-cv-00012-MCR-GRJ, ECF No. 58 at 4–5 (N.D. Fla. Aug. 24, 2021).

Nothing in *Haberman*, however, modifies the requirement of Plaintiff's actual "reliance on the truth of the representation," *Stiley*, 925 P.2d at 204, whether it was made directly to him or "pass[ed] onto" him by the military, *Haberman*, 744 P.2d at 1070. Indeed, in denying summary judgment in both *Baker*, ECF No. 87 at 12, and *Adkins*, ECF No. 58 at 5, this Court noted the specific record evidence of the plaintiffs' material reliance on Defendants' statements.

Likewise, Plaintiff lacks such evidence here. He testified that he does not remember any advertisements or promotion materials about the CAEv2 itself. **Ex. 1**, Blimka Dep. 152:13–16. What's more, Plaintiff testified that he did not rely on any material about the CAEv2. *Id.* at 152:6–12, 144:3–20 Therefore, summary judgment on his fraud claims is warranted. *See, e.g.*, *Breen*, 2021 WL 673485, at *7 (granting summary judgment on fraud claim where "Breen has not put forth any evidence that . . . she actually relied on any statement made by Defendants"); *Ellis*, 2021 WL 2949779, at *5 (granting summary judgment on fraud claim where "Plaintiffs do not identify any *particular* fraudulent statements Mrs. Ellis relied upon").

### D. Fraudulent concealment (Count IX) fails for lack of a special relationship between Defendants and Plaintiff giving rise to a duty to disclose.

Under Washington law, liability "based on failure to disclose a material fact" arises only "when there is a duty to disclose because of the nature of the

parties' relationship." *Wetzel v. CertainTeed Corp.*, 2019 WL 3976204, at *4 (W.D. Wash. Mar. 25, 2019) (citing *Colonial Imports, Inc. v. Carlton Nw.*, 853 P.2d 913, 917–18 (Wash. 1993)).[2] "Absent a special relationship between the parties, a defendant's failure to disclose the existence of a defect to the plaintiff is insufficient to establish a claim for fraudulent concealment." *Id.* (quotations and citation omitted). "Whether such a duty to disclose exists is a question of law[.]" *Id.*

In *Baker* and *Adkins*, this Court concluded that the plaintiffs had raised a triable issue of fact as to whether Defendants owed them a duty to disclose. ECF No. 87 at 12; ECF No. 58 at 6. As an initial matter, these determinations are inconsistent with *Colonial Imports, Inc.*'s admonition that "[t]he existence of a duty is a question of law," 853 P.2d at 916, which the Court must determine, based on the evidence before it.

*Baker* and *Adkins* also cite *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020), and *Zwicker v. Gen. Motors Corp.*, No. C07-0291, 2007 WL 5309204, at *2 (W.D. Wash. July 26, 2007), for the proposition that, "under Washington law, when a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that

---

[2] If it were not precluded by the WPLA, negligent misrepresentation would also require the showing of a special relationship. *See Colonial Imports, Inc.*, 853 P.2d 913 at 917.

information." *Baker*, ECF No. 87 at 12; *Adkins*, ECF No. 58 at 6 (quotations and alterations omitted). The quoted language from *Short* comes from *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010), which, in turn, was quoting the unpublished decision in *Zwicker*—which did not support the quoted statement with any case citation. *See* 2007 WL 5309204, at *3. Thus, these cases are not persuasive authority; moreover, they are inapposite because they involved Rule 12 motions to dismiss, not summary judgment motions.

*Baker* and *Adkins* also cite *Colonial Imports, Inc.* for the proposition that a duty to disclose "exists 'where a seller has knowledge of a material fact not easily discoverable by the buyer.'" *Baker*, ECF No. 87 at 12; *Adkins*, ECF No. 58 at 6. However, the language quoted in *Baker* and *Adkins* does not fully capture the Washington Supreme Court's actual holding in *Colonial Imports, Inc.*, which arose from a transaction involving the sale of automobiles from one dealer, Carlton, to a second dealer, Colonial, via a third-party intermediary, Imports Unlimited. *See* 853 P.2d at 914–16. Although the transaction was being facilitated by the intermediary, a representative of Colonial spoke with the general manager of Carlton immediately beforehand. *Id.* at 915. In their conversation, Carlton's general manager allegedly misrepresented the financial condition of the intermediary, leading to a lawsuit from Colonial. *See id.* Carlton was very much "a seller [who] ha[d] knowledge of . . . material fact[s] not easily discoverable by the

buyer," Colonial. *Id.* at 917. Nevertheless, the Washington Supreme Court "conclude[d] that the relationship, such as it was, between the parties to this lawsuit was insufficient to support a duty to disclose." *Id.* The court reasoned that "neither was in any sense a party to the same business transaction" in light of Imports Unlimited's intermediary role. *Id.* Thus, under *Colonial Imports, Inc.*, the mere fact that a seller allegedly had "knowledge of a material fact not easily discoverable by" the ultimate buyer or user is not, by itself, sufficient to give rise to a duty to disclose. *See id.*

Likewise, here, Defendants sold the CAEv2 to the military, not servicemembers like Plaintiff. Further, the United States military is undeniably a sophisticated actor. *See Colonial Imports, Inc.*, 853 P.2d at 917 ("Both principals are experienced and independent businesspersons."). Defendants also had "no pre-existing special relationship" with Plaintiff or any other individual soldier, and they certainly were "not in the business of giving financial advice." *Id.*

Upon consideration of all the relevant factors identified in *Colonial Imports, Inc.* and its progeny, the Court should decline to find a duty to disclose sufficient to support a claim for fraudulent concealment (or negligent misrepresentation if it were not precluded) and grant summary judgment on those claims.

**VII.   Plaintiff's CPA claim (Count XIII) fails because Plaintiff is seeking personal injury damages only.**

To state a Consumer Protection Act ("CPA") claim, RCW 19.86.010 *et seq.*, Plaintiff must show an injury  "in his or her business or property." *Ambach v. French*, 216 P.3d 405, 407 (Wash. 2009). "Personal injury damages," including "medical expenses, wage loss, loss of earning capacity, and out-of-pocket expenses," "do not constitute injury to business or property" and thus "are not compensable damages under the CPA. *Id.* at 408–09 (cleaned up). The "cost of a product . . . acquired [purportedly] due to fraud or deception," likewise, is not a compensable injury under the CPA where, as here, "the larger reality of [the] claimed injury" is personal injury damages. *Id.* Because any damages claimed by Plaintiff here necessarily constitute personal injury damages only, *see* **Ex. 5** Plaintiff's Resp. to 3M's Am. First Set of Interrogatories, No. 2, Plaintiff cannot maintain a CPA claim.

**VIII.  Punitive Damages (Count XVI) fails.**

In Washington, punitive damages "necessarily fail" when "all . . . substantive claims" are dismissed. *Goolsby v. Raney*, 483 F. App'x 326, 328–29 (9th Cir. 2012). In any event, punitive damages are "prohibit[ed] . . . in a product liability action" under "Washington law." *Breen*, 2021 WL 673485, at *8 (citation omitted); *see also, e.g.*, *Hai v. STL Int'l, Inc.*, 180 Wash. App. 1026 (2014).

## CONCLUSION

For these reasons, Defendants respectfully request that the Court enter summary judgment in their favor on all Plaintiff's claims.

Respectfully submitted,

*/s/ J. William Manuel*
J. William Manuel (MS Bar #9891)
*Admitted Pro Hac Vice*
Jeffrey R. Blackwood (MS Bar #10613)
*Admitted Pro Hac Vice*
Michael C. Williams (MS Bar #104537)
*Admitted Pro Hac Vice*
Bradley Arant Boult Cummings LLP
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
wmanuel@bradley.com
jblackwood@bradley.com
mcwilliams@bradley.com

*Counsel for Defendants 3M Company; 3M Occupational Safety LLC; Aearo Technologies LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; and Aearo, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 4,380 words, excluding the motion heading, case style, signature block, andcertificates of compliance with the Local Rules.

<div style="margin-left:40%">

 /s/  *J. William Manuel*

J. William Manuel (MS Bar #9891)
    *Admitted Pro Hac Vice*
Jeffrey R. Blackwood (MS Bar #10613)
    *Admitted Pro Hac Vice*
Michael C. Williams (MS Bar #104537)
    *Admitted Pro Hac Vice*
Bradley Arant Boult Cummings LLP
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
wmanuel@bradley.com
jblackwood@bradley.com
mcwilliams@bradley.com

*Counsel for Defendants 3M Company; 3M Occupational Safety LLC; Aearo Technologies LLC; Aearo Holding, LLC; Aearo Intermediate, LLC; and Aearo, LLC*

</div>

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida using the electronic case filing system of the Court, which will send electronic service to all registered counsel of record.

<div align="right">

*/s/ J. William Manuel*

J. William Manuel (MS Bar #9891)

</div>