# PX11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG ) <br> PRODUCTS LIABILITY LITIGATION, ) <br> ) <br> ) <br> *Re: Brandon Adkins* ) <br> *7:20cv00012* ) <br> ) <br> _____) | Case No. 3:19md2885 <br><br> Pensacola, Florida <br> September 30, 2021 <br> 7:31 a.m. |

<u>VOLUME IX</u>
(Pages 1 to 400)

TRANSCRIPT OF NINTH DAY OF JURY TRIAL
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE, and a jury.

**A P P E A R A N C E S**

FOR THE PLAINTIFFS:  Quinn Emanuel Urquhart
By: **ADAM B. WOLFSON**
  *adamwolfson@quinnemanuel.com*
865 South Figuero St., 10th Floor
Los Angeles, California  90017

By: **MATTHEW S. HOSEN**
  *matthosen@quinnemanuel.com*
1109 1st Avenue
Seattle, Washington  9810

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*1 N Palafox Street * Pensacola, Florida  32502*
**Donna_Boland@flnd.uscourts.gov**

```
Appearances (cont'd):

FOR PLAINTIFFS: Aylstock, Witkin, Kreis & Overholtz
                By:  BRYAN F. AYLSTOCK
                     baylstock@awkolaw.com

                     NEIL D. OVERHOLTZ
                     noverholtz@awkolaw.com

                     JENNIFER HOEKSTRA
                     jhoekstra@awkolaw.com
                17 E Main Street, Suite 200
                Pensacola, Florida   32502

                Ciresi Conlin LLP
                By:  MICHAEL A. SACCHET
                     mas@ciresiconlin.com

                     MEGAN L. ODOM
                     mlo@ciresiconlin.com
                225 South 6th Street, Suite 4600
                Minneapolis, Minnesota   55402

                Bailey Cowan Heckaman, PLLC
                By: ROBERT W. COWAN
                     rcowan@bchlaw.com
                1360 Post Oak Boulevard, Suite 2300
                Houston, Texas   77056

FOR THE DEFENDANTS:  Kirkland & Ellis, LLP
                By:  HARIKLIA KARIS
                     hkaris@kirkland.com

                     MARK J. NOMELLINI
                     mnomellini@kirkland.com

                     NICHOLAS F. WASDIN
                     nick.wasdin@kirkland.com
                300 N Lasalle
                Chicago, Illinois   60654
```

```
Appearances (cont'd):

FOR THE DEFENDANTS:    Kirkland & Ellis, LLP
                       By:  ASHLEY E. NEGLIA
                            ashley.neglia@kirkland.com

                            SAGHAR ESFANDIARIFARD
                       saghar.esfandiarifard@kirkland.com
                       555 S Flower St., Ste 3700
                       Los Angeles, California  90071


                       Moore, Hill & Westmoreland, PA
                       By:  CHARLES F. BEALL, JR.
                            cbeall@mhw-law.com
                       350 W Cedar Street, Suite 100
                       Pensacola, Florida  32502
```

10:01:42  1  Arms plug.
10:01:42  2  **Q.** Your testimony is at your clinic you did not issue the
10:01:45  3  Combat Arms Version 2?
10:01:46  4  **A.** Correct.
10:01:46  5  **Q.** You do not doubt, sir, that the Combat Arms Version 2 was
10:01:50  6  issued and provided to soldiers while you were in the Army?
10:01:53  7  **A.** Correct, it was.
10:01:54  8  **Q.** It was. It was -- do you doubt that the Special Text says
10:02:04  9  that the Combat Arms Version 2 began to be issued to all
10:02:07  10 deploying soldiers in 2004? Do you doubt that it says that?
10:02:12  11 **A.** It says that, but that's not what the experience was, and
10:02:15  12 I've seen testimony to the contrary.
10:02:17  13 **Q.** Okay. Now, on this audiogram issue -- let's talk about
10:02:20  14 that. You agree, do you not, that on the audiogram you select
10:02:25  15 one kind of hearing protection device?
10:02:28  16 **A.** Correct.
10:02:28  17 **Q.** You agree, do you not, sir, that soldiers often have two
10:02:34  18 pairs of earplugs, one in the case, one elsewhere on their
10:02:39  19 person such as in their pocket?
10:02:41  20 **A.** That may be the case.
10:02:43  21 **Q.** Have you testified to that before, that they have two
10:02:46  22 pairs?
10:02:46  23 **A.** I have seen that, yes.
10:02:48  24 **Q.** You testified to it under oath, correct?
10:02:50  25 **A.** Yes.

| | | |
|---|---|---|
| 10:02:50 | 1 | **Q.** So a soldier has two pairs. The audiogram requires one |
| 10:02:57 | 2 | pair. One of those might not be recorded on the audiogram, |
| 10:03:00 | 3 | correct? |
| 10:03:01 | 4 | **A.** Right. And I don't agree with the practice. Right? |
| 10:03:03 | 5 | Because it's important that they're fit. So if they have one |
| 10:03:06 | 6 | that wasn't fit and one that was, we have an annual requirement |
| 10:03:09 | 7 | to inspect them to make sure they're not worn, not broken, and |
| 10:03:13 | 8 | that they fit. |
| 10:03:13 | 9 | So if they have one that we fit and it is not appropriate, |
| 10:03:15 | 10 | in order for it to work in the Hearing Conservation Program, |
| 10:03:17 | 11 | they need to use that plug. So if they have a second one, they |
| 10:03:23 | 12 | may, but it shouldn't. |
| 10:03:23 | 13 | **Q.** My question was simply: You agree soldiers have two plugs, |
| 10:03:28 | 14 | audiograms record one plug, ergo, one plug not recorded on the |
| 10:03:34 | 15 | audiogram? |
| 10:03:34 | 16 | **A.** So that would mean one plug not fit, one plug fit. |
| 10:03:38 | 17 | **Q.** The one plug not fit doesn't necessarily need to be the one |
| 10:03:38 | 18 | plug that wasn't on that form if it was fitted previously, |
| 10:03:43 | 19 | correct? |
| 10:03:43 | 20 | **A.** But in order for the program to function, we need to make |
| 10:03:45 | 21 | sure the plug was fit. So if they're wearing a plug that |
| 10:03:49 | 22 | wasn't fit, they're not part of the program. |
| 10:03:51 | 23 | **Q.** Not my question. If there's two plugs that the soldier |
| 10:03:54 | 24 | uses, one that they were previously fit with, the other that |
| 10:03:57 | 25 | was recorded on a subsequent audiogram, that subsequent |

| | | |
|---|---|---|
| 10:04:00 | 1 | audiogram is not indicating that the prior plug was fit and is |
| 10:04:03 | 2 | used, correct? |
| 10:04:04 | 3 | **A.** Correct. But you used my words against me, and I wanted to |
| 10:04:08 | 4 | make sure I clarified. |
| 10:04:09 | 5 | **Q.** On this same issue, you reviewed the deposition testimony |
| 10:04:13 | 6 | of Dan Ohama, the Hearing Conservation Program manager at |
| 10:04:18 | 7 | Fort Lewis, correct, sir? |
| 10:04:20 | 8 | **A.** Yes. |
| 10:04:20 | 9 | **Q.** You are aware that Mr. Ohama testified and the jury has |
| 10:04:24 | 10 | heard that the accuracy of the audiograms as to the type of |
| 10:04:29 | 11 | hearing protection device that the soldier wore can be |
| 10:04:33 | 12 | questioned? |
| 10:04:34 | 13 | **A.** I heard that testimony, correct, for the reasons you just |
| 10:04:39 | 14 | mentioned, correct. |
| 10:04:40 | 15 | **Q.** The audiograms do not show, according to Mr. Van Densen and |
| 10:04:45 | 16 | I believe your personal -- your expert opinion, that what type |
| 10:04:48 | 17 | of plug a servicemember wore on the range would necessarily be |
| 10:04:52 | 18 | on that audiogram? |
| 10:04:54 | 19 | **A.** Correct, the same things that I just mentioned again -- |
| 10:04:57 | 20 | **Q.** So, too, the audiograms would not record what earplug a |
| 10:05:02 | 21 | soldier wore in combat if the audiogram was not actually taken |
| 10:05:06 | 22 | when in combat? |
| 10:05:08 | 23 | **A.** So there's a lot to that statement. But I would just say |
| 10:05:13 | 24 | that, again, in order for it to work in the program, he needs |
| 10:05:16 | 25 | to wear a fit earplug, so if they're not, that raises concern |