**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *All Cases* | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

---

***Ex PARTE* MOTION AND INCOPORATED MEMORANDUM TO ISSUE A TEMPORAY RESTRAINING ORDER TO ENJOIN 3M[1] FROM TAKING ANY ACTION OUTSIDE THE MDL TO ENJOIN PARTIES FROM PURSUING CAEV2 LITIGATION AGAINST 3M**

Now into court, comes Plaintiff, Richard Valle, through undersigned counsel, who respectfully asks this Court to issue a Temporary Restraining Order ("TRO") for seven (7) days to enjoin 3M from taking any action outside of this MDL to enjoin other parties from pursuing their CAEV2 claims against 3M. The All Writs Act endows the Court with this authority, and the Court is free to take action regarding 3M because the automatic stay only applies to the Aearo entities. The balance of equities and consideration of judicial resources clearly favor this Court—and not the Bankruptcy Court—to decide the limits of the automatic stay as to this litigation. For these reasons, and as fully detailed below, Plaintiff respectfullys ask for a TRO to

---

[1] 3M refers to 3M Company.

1

enjoin 3M, or any party acting on their behalf, from seeking relief to enjoin parties from pursuing their claims arising out of the CAEv2.

## I.   Legal Standard

The standard to obtain a TRO is identical to that of obtaining a preliminary injunction. *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010). "To obtain a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest." *Martin v. Kemp*, 341 F. Supp 3d 1326, 1332 (N.D. Ga. 2018).

## II.   The Automatic Stay only Applies to the Debtor.

It is black-letter law that only a debtor in bankruptcy receives the protection of the Bankruptcy Code's automatic stay provision. *See* 11 U.S.C.A. § 362; *In re Stuart*, 594 B.R. 834, 840 (Bankr. N.D. Ga. 2018) ("[T]he automatic stay of 11 U.S.C. § 362(a) protects only the debtor, property of the debtor, and property of the estate. It does not protect non-debtor parties or their property.") (quoting *In re Advanced Ribbons and Office Products, Inc.*, 125 B.R. 259, 263 (9th Cir. BAP 1991)); *see also In re Teknek, LLC*, 563 F.3d 639, 641–50 (7th Cir. 2009) (declining to extend automatic stay to non-debtor, related co-defendants). Where both the

debtor and a non-debtor are separately liable for tortious conduct, there is no basis to extend a stay of litigation to the non-debtor. *Id.* **In simple terms, if the non-debtor wishes to receive the benefits of bankruptcy protection, it must also incur its consequences.**

"Defendant 3M Company is not a debtor in the bankruptcy cases; therefore, the automatic statutory stay does not apply to it by operation of law." MDL Dkt. 3329 at 1. Notably, 3M is the subject of multiple jury verdicts for its *own* conduct related to the CAEv2 earplug. That its co-defendant, Aero, has filed for bankruptcy is immaterial. Unless and until 3M files for bankruptcy, Plaintiffs must remain free to continue to pursue their claims in district court, as they have since the inception of this highly complex MDL.

## III. This Court has the authority to interpret the extent of the automatic stay and whether it applies to these proceedings.

This Court has independent authority to interpret the extent and applicability of a Section 362 automatic stay. *Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.,* 140 B.R. 969, 973 (N.D. Ill. 1992) ("[I]t is settled that both the bankruptcy court and the court in which the other litigation exists may construe the automatic stay.") (Easterbrook, J.); *In re Baldwin–United Corporation Litigation,* 765 F.2d 343, 347 (2d Cir.1985)) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending."); *Chicago*

*Title Ins. Co. v. Lerner*, 435 B.R. 732, 735 (S.D. Fla. 2010) ("Federal district courts have jurisdiction concurrent with the originating bankruptcy court to determine the applicability of the bankruptcy court's automatic stay."); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990). This concurrent authority recognizes that a court overseeing multidistrict litigation "may have the perspective needed to manage litigation that involves other parties" and "may be in the best position to decide" the scope of § 362's applicability to the multidistrict action. *Matter of Mahurkar Double Luman Hemodialysis Catheter Pat. Litig.*, 140 B.R. at 973. Included in that authority is the authority to determine whether the requisite "unusual circumstances" exist to warrant extending a stay to non-debtors. *See, e.g.*, *Gray v. Hirsch*, 230 B.R. 239 (S.D.N.Y. 1999); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603 (S.D.N.Y. 1996); *Chicago Title*, 435 B.R. 432. Such "unusual circumstances" do not exist where, as here, the debtor and non-debtor are "independently liable" in tort actions. *Variable Parameter*, 945 F. Supp. at 608 (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). But, crucially, this Court retains the power to make that determination.

**IV.    This Court should decide the extent of the automatic stay because it has unparalleled knowledge of the litigation and is currently moving thousands of cases through litigation – all of which will be ground to a halt if 3M has its way.**

This Court and the litigants have spent tens of thousands of hours and hundreds of millions of dollars addressing common legal and factual issues

associated with hundreds of thousands of Plaintiffs' claims. Concerns with judicial economy and avoiding duplicative jurisdiction are always important. *See, e.g.*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting that "[a]s between federal district courts… though no precise rule has evolved, the general principle is to avoid duplicative litigation") *and Weatherly v. Alabama State Univ.*, 728 F.3d 1263, 1270 (11th Cir. 2013) (finding no reversible error where district court, "[f]aced with the potential of duplicative suits and duplicative discovery… found judicial economy militated in favor of keeping the Appellees' claims together in order to avoid wasting resources"). Such concerns are especially acute with MDLs, which exist for the very purpose of avoiding wasted resources and conflicting judgments in high stakes, complex cases like the case at bar.[2] *See, e.g.*, *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2013) (discussing *In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F.Supp.2d 1378, 1379 n. 2 (U.S. Jud. Pan. Mult. Lit. 2012), where a judge "opined that the action 'should not proceed independently from [the consolidated action], as judicial economy counsels against unnecessary duplication"). It is because of these considerations that MDLs are often

---

[2] Notably, 3M supported consolidation of claims arising out of the CAEv2. *See* Dkt. 98.  It is only now, that 3M has lost 13 of 19 bellwether trials with significant jury verdicts that it claims the MDL should be stayed so that a bankruptcy court, with *no* experience with the facts of this case, should resolve the outstanding 233,000 claims. Such a proposition is ludicrous and not grounded in the law.

referred to as akin to *in rem* proceedings. *See, e.g.*, *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985) (*"*[T]he jurisdiction of a multidistrict court is 'analogous to that of a court in an *in rem* action . . . where it is intolerable to have conflicting orders from different courts.'") (citing 17 C. Wright & A. Miller & E. Cooper, Federal Practice & Procedure § 4225 at 105 n.8 (Supp. 1985)); *In re Vioxx Prod. Liab. Litig.*, 869 F. Supp. 2d 719, 726 (E.D. La. 2012)  ("[C]omplex litigation cases are sufficiently similar to *in rem* proceedings . . . The theory behind the *in rem* analogy is that when complex litigation has reached the point of sufficient advancement, and there has been substantial investment of time

and   resources,   in   essence,   a   *res*   is   created.")   (Fallon,   J.).

At this moment alone, the Court has before it post-trial motions to set aside or undo a jury verdict against 3M. Other final judgments against 3M are on appeal, where 3M has challenged this Court's pre-trial decisions. And scores of other plaintiffs with claims against 3M are subject to wave orders to permit their claims to proceed, relying on the extensive MDL litigation history and countless pre-trial orders. Indeed, fifteen hundred cases have or are currently engaged in Wave discovery. *Daubert* and dispositive motions for approximately three hundred seventy-five Wave 1 cases will be ripe on August 9, 2022, and one Wave 1 case is already set for trial in this district.   *See* MDL Dkt. 3329.

**V.     Through the All Writs Act, this Court has the authority to enjoin 3M from attempting to argue the stay applies to this case outside of this Court.**

This Court has the authority to stop 3M from attempting to duplicate this litigation and litigate the same issues elsewhere. It would make a mockery of these extensive proceedings for 3M, as an independent defendant that is not in bankruptcy, to seek potentially conflicting rulings associated with the CAEv2 earplugs in another tribunal. Both to protect the Court's MDL jurisdiction to address all pretrial proceedings, as well as its jurisdiction over individual cases that have proceeded through a jury verdict, this Court has ample authority to prevent 3M from presenting substantially similar legal or factual arguments elsewhere. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002) ("The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts, which this one does not."); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (affirming a federal district court's power under the All Writs Act to enjoin a party from relitigating the same or similar issues in another federal court); *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (holding that the All Writs Act provides that federal courts may issue injunctions related to proceedings in other federal

courts "when necessary for adjudication or settlement of a case."); *Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 337–38 (N.D. Tex. 2011) (noting that in cases involving a "limited fund," a "court's enjoining of competing procedures is generally necessary to ensure that the 'limited fund' is not depleted").

Accordingly, this Court should temporarily enjoin for the next 7 days, 3M and any party acting on 3M's behalf, from filing any motion, action, proceeding, brief, or other judicial filing that seeks to enjoin parties from pursuing CAEv2 related claims against 3M in this MDL or in district courts where MDL cases have been remanded. *See In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002) (where an MDL court exercises its authority under the All Writs Act to prevent settlement in another federal court).

Dated:  July 27, 2022                    */s/ Ashley C. Keller*

Ashley C. Keller (Bar #1029118)
ack@kellerpostman.com
Nicole C. Berg (Pro Hac Vice)
ncb@kellerpostman.com
Ashley Barriere (Pro Hac Vice)
ashleybarriere@kellerpostman.com
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100
Chicago, Illinois  60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

*Counsel for Plaintiff Richard Valle*

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULES 7.1(F) AND 56.1(E)</u>

I hereby certify that this motion complies with the word limit of Local Rules

7.1(F) and 56.1(E) and contains 1823 words.

*/s/ Ashley C. Keller*
Ashley C. Keller

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2022, I caused a copy of the foregoing to be

filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Ashley C. Keller*
Ashley C. Keller