**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, | ) ) ) ) ) ) ) ) ) | Case No. 3:19md2885<br><br>Pensacola, Florida<br>July 27, 2022<br>7:34 a.m. |

**SHOW CAUSE HEARING AND STATUS CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE

(Pages 1-20)

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**   Aylstock, Witkin, Kreis & Overholtz, PLLC
by:  **BRYAN F. AYLSTOCK**
*baylstock@awkolaw.com*
17 E Main Street, Suite 200
Pensacola, Florida  32502

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**   Clark Love & Hutson, GP
by:  **SHELLEY HUTSON**
*bgreif@triallawfirm.com*

   **W. MICHAEL MORELAND**
*mmoreland@triallawfirm.com*
440 Louisiana Street, Suite 1600
Houston, Texas   77002

**FOR THE DEFENDANTS:**   Kirkland & Ellis, LLP
by:  **MARK J. NOMELLINI**
*mnomellini@kirkland.com*
300 N Lasalle
Chicago, Illinois   60654
   **LESLIE M. SMITH**
*leslie.smith@kirkland.com*
300 N Lasalle
Chicago, Illinois   60654

White & Case
By:  **JESSICA C. LAURIA**
*Jessica.lauria@whitecase.com*
1221 Avenue of the Americas
New York, New York   10020-1095

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | **THE COURT:**  Good morning. |
| 3 | **MR. AYLSTOCK:**  Good morning, Your Honor. |
| 4 | **MS. HUTSON:**  Good morning. |
| 5 | **THE COURT:**  Let's get started.  We are here in MDL |
| 6 | 2885.  This is the 3M Combat Arms Earplug Liability Litigation. |
| 7 | There are a number of attorneys and others present in |
| 8 | the courtroom.  I know I have a number of attorneys present via |
| 9 | Zoom.  And then there are dozens, I believe, of attorneys and |
| 10 | maybe members of the press and the public even present by |
| 11 | telephone.  I'm certainly not going to take rollcall there; |
| 12 | that's too many.  But welcome, everyone, to this status |
| 13 | conference and show cause hearing. |
| 14 | One other housekeeping matter.  Let me say there |
| 15 | should be no audio or visual recording of this proceeding by |
| 16 | anyone, and that is by order of this Court.  So, if you have |
| 17 | any audio devices on for recording, you must turn them off. |
| 18 | Thank you. |
| 19 | Present here in the courtroom I have Mr. Aylstock, Ms. |
| 20 | Hutson, and Mr. Moreland.  Good morning. |
| 21 | **MR. AYLSTOCK:**  Good morning. |
| 22 | **MS. HUTSON:**  Good morning. |
| 23 | **MR. MORELAND:**  Good morning, Your Honor. |
| 24 | **THE COURT:**  On Zoom -- I don't have any defense |
| 25 | counsel present in the courtroom, but on Zoom I believe I have |

1  Mr. Nomellini.  Good morning.
2           **MR. NOMELLINI:**  Good morning, Your Honor.
3           **THE COURT:**  Ms. Smith, good morning.
4           **MS. SMITH:**  Good morning, Your Honor.
5           **THE COURT:**  And Ms. Lauria?
6           **MS. LAURIA:**  Yes.  Good morning, Your Honor.  Jessica
7  Lauria of White & Case.
8           **THE COURT:**  Good morning.  Thank you for being here.
9           What I'd like to do first -- I know Chief Judge Graham
10 has a hearing scheduled at 8:30 Central/9:30 Eastern, so let me
11 proceed as quickly as I can.
12          First I want to see if we can agree on a few things,
13 and then I do have a request for an explanation.  I have some
14 confusion about the bankruptcy filings, and so, Ms. Lauria, I'm
15 glad that you are present.  But first let's see if I can get
16 counsel to agree on a few things so I can make this clear for
17 the record.
18          First:  This MDL was formed and the litigation was
19 consolidated by the Judicial Panel on Multidistrict Litigation
20 pursuant to an act of Congress and as sanctioned by the
21 Judicial Conference of the United States.
22          Can we all agree on that?  Anyone doesn't agree with
23 that?
24          **MR. AYLSTOCK:**  We agree, Your Honor.
25          **THE COURT:**  What about the defense, you agree?  One

1	person.  Mr. Nomellini, on behalf of 3M, do you agree?
2	          **MR. NOMELLINI:**  Your Honor, that sounds correct.
3	          **THE COURT:**  That doesn't sound correct or it is
4	correct?
5	          **MR. NOMELLINI:**  Is correct.
6	          **THE COURT:**  I apologize.  There's a bit of a delay.
7	Thank you.
8	          Second:  This Court, the Northern District of Florida,
9	is authorized by Article III of the Constitution and Congress
10	to handle the disputes in this MDL.
11	          Any disagreement?
12	          **MR. AYLSTOCK:**  We agree, Your Honor.
13	          **THE COURT:**  Not hearing any.
14	          Third:  The defendants --
15	          **MR. NOMELLINI:**  Your Honor?
16	          **THE COURT:**  Yes?
17	          **MR. NOMELLINI:**  Your Honor, that would not extend, in
18	our view, to the matters that are currently before the
19	bankruptcy court.
20	          **THE COURT:**  Well, I said the disputes in this MDL.  Do
21	you disagree with that?
22	          **MS. SMITH:**  Yes, Your Honor.
23	          **THE COURT:**  You do disagree that -- I'm not authorized
24	or this Court is not authorized to handle the disputes in this
25	MDL?

1	**MS. SMITH:**  Your Honor, we don't have any dispute with
2	you handling the MDL.
3	**THE COURT:**  That's my only question, Ms. Smith, had to
4	do with the MDL, so you don't have any dispute about that.
5	Thank you.
6	Third:  The defendants consented to the bellwether
7	trials, all 16 trials, with 19 plaintiffs being tried by this
8	Court.
9	Agreed, Mr. Nomellini?
10	**MR. NOMELLINI:**  Yes, we agreed to *Lexecon* waivers for
11	those trials, Your Honor.
12	**THE COURT:**  All right.  Also, during the
13	three-and-a-half years this litigation has been pending, not
14	once in this court has 3M ever questioned its legal
15	responsibility for the alleged problems with the CAEv2.  If
16	there is something, please make me aware of it where you've
17	asked me to resolve a dispute about 3M's responsibility.
18	**MR. NOMELLINI:**  We have not asked you to resolve a
19	dispute on that issue, Your Honor.
20	**THE COURT:**  All right.
21	Next:  There are six defendants that are named in the
22	MDL, five of whom declared Chapter 11 bankruptcy yesterday in
23	the Southern District of Indiana.  One of those defendants, 3M
24	Company, did not declare bankruptcy, and therefore is a
25	nondebtor under the Bankruptcy Code.  And there is presently

1    today, as we are sitting here in this courtroom -- or you are
2    via Zoom -- presently no automatic stay pursuant to Title 11 of
3    the United States Code § 362(a) in effect as to 3M in this
4    litigation.
5             Is that agreed, Ms. Lauria?
6             **MS. LAURIA:**  Your Honor, that is not agreed.  We do
7    believe that the automatic stay applies to this proceeding even
8    with respect to nondebtor 3M Company.
9             **THE COURT:**  Okay.  Interestingly, you've asked --
10   well, let me rephrase my statement then.
11            That there is presently no automatic stay by operation
12   of law that applies to 3M in this litigation.
13            **MS. LAURIA:**  Your Honor, again, you're right, the
14   first count of the complaint asks for confirmation that the
15   automatic stay does apply to 3M.  Numerous courts have
16   recognized that 362(a)(1) and 362(a)(3) of the Bankruptcy Code
17   may operate to stay claims against nondebtors, including
18   automatically.
19            In fact, in the last month or so, Judge Isgur out of
20   the bankruptcy court for the Southern District Texas recognized
21   that there was in effect an automatic stay that arose by
22   operation of the two statutory provisions that I just
23   mentioned.
24            **THE COURT:**  But you've asked Chief Judge Graham for a
25   declaration to that effect.  So I presume, by you feeling the

1   need to ask, which wasn't done for Aearo, you feeling the need
2   to ask for a declaration regarding the stay, that that's not a
3   settled principle of law.
4         **MS. LAURIA:**  Your Honor, in the Seventh Circuit in the
5   *Fernstrom* decision, the Court acknowledged in dicta -- and I
6   acknowledge it was in dicta -- that there are two exceptions to
7   the automatic stay only applying to the debtor, and it is that
8   dicta, among other court opinions, that have looked to
9   362(a)(1) and 362(a)(3) that the Aearo debtor is relying on,
10  and because it is in dicta, we've asked for the first count of
11  the complaint.
12        **THE COURT:**  Okay.  And so then maybe we could agree
13  that that is a matter that is subject to litigation before
14  Chief Judge Graham.
15        **MS. LAURIA:**  Again, if Chief Judge Graham concludes
16  that the automatic stay does, in fact, apply to 3M Company
17  under *Fernstrom* and the other decisions, then it does apply as
18  of the date that Aearo filed for bankruptcy --
19        **THE COURT:**  I think you're missing my point.  My point
20  is you have to get that ruling from him first.  You've asked
21  for it, correct?
22        **MS. LAURIA:**  We have asked for that ruling, Your
23  Honor.
24        **THE COURT:**  And so that's one of the reasons we're
25  here today is I still have jurisdiction over this litigation,

1  and so no one has enjoined this litigation or entered a stay
2  that I'm aware of, no other court that I'm aware of, and I
3  disagree that 362 applies to enjoin me from doing what I'm
4  doing here today.  So maybe we don't agree on that one point.
5  　　　　　All right.  Let's see if we can agree on something
6  else.  And if we can't, I'll take judicial notice of my court's
7  own docket.  And that is:  Since the start of this litigation
8  nearly three-and-a-half years ago, either by order of the Court
9  or by voluntary dismissal likely due to the pressure that the
10 Court placed on the plaintiffs to make certain disclosures,
11 nearly 65,000 individual cases have been dismissed.
12 　　　　　Do you agree with that, Mr. Nomellini?  Any reason to
13 disagree?
14 　　　　　**MR. NOMELLINI:**  I don't have those numbers in front of
15 me, Your Honor.
16 　　　　　**THE COURT:**  Okay.  Well, I'll take judicial notice of
17 my own court's docket.
18 　　　　　Even more notably, according to my court's docket,
19 45,000 of those have been dismissed by the Court in the past
20 five months, since February, 45,000 in five months, many of
21 those with prejudice.  And there are nearly -- now, this,
22 again, I'll have to take judicial notice of, you're not aware
23 of this -- there are nearly 15,000 more that are ripe for
24 dismissal today, which means, if I'm able to enter that order
25 before I'm precluded from doing so, will mean that 60,000

```
 1   individual cases will have been dismissed by this Court in less
 2   than six months and 80,000 since the start of the litigation.
 3             I don't think most defendants would characterize that
 4   as dysfunctional.  Maybe you all do, but most wouldn't.
 5             So let's see if we can agree on something else, and if
 6   not, my court's docket will reflect it.
 7             On the day of your bankruptcy filings, 3M's bankruptcy
 8   filings, there were and there are today 1,526 motions that are
 9   pending in the Wave 1 cases.  Many of those are motions filed
10   by 3M.  These are summary judgment motions, *Daubert* motions,
11   expert challenges, and choice of law matters before the Court.
12             And also, I can't take judicial notice of this docket,
13   but I think we can all agree that there are over 1,000 cases
14   presently pending against 3M in Minnesota State Court involving
15   this earplug.
16             Do the plaintiffs agree with that?
17             **MR. AYLSTOCK:**  We do, Your Honor.
18             **THE COURT:**  Do the defense agree with that?
19             **MR. NOMELLINI:**  Yes, Your Honor.
20             **THE COURT:**  We're on the same page so far, it sounds
21   like, except for that one issue of the automatic stay provision
22   and whether or not that applies.
23             So now to my need for an explanation.  And let me make
24   a couple of comments in that regard.
25             I have great respect for the authority and the work of
```

1    the bankruptcy courts in this country.  With the exception of a
2    dozen or so appeals, I have largely stayed out of the
3    Bankruptcy Code during my 20 years on the bench.  As a result,
4    I'm a little confused about the bankruptcy filings, again,
5    given my belief that there is no automatic stay in place today
6    against 3M as a nondebtor.
7             And so, let me ask for an explanation.  And again,
8    this is in part based on my understanding that 3M has never
9    questioned its legal responsibility for the claims in this
10   litigation.  In fact, it's always been my understanding that 3M
11   contractually agreed to assume all of Aearo's liabilities.
12            So help me a little bit with this, Ms. Lauria.  This
13   past Friday, 3M -- and I'm taking this from your first day
14   declarations, I believe is where it is.  This past Friday, 3M
15   entered into an indemnification agreement with Aearo whereby
16   Aearo agreed to indemnify 3M for the liabilities in this
17   litigation.
18            So help me understand that.  How do you arrive at that
19   agreement on that Friday, which just happened to be the same
20   day the Court-ordered mediation impassed, and on Tuesday seek
21   protection from the bankruptcy court, which certainly Chief
22   Judge Graham is going to want to ensure that this
23   indemnification agreement was an arm's length transaction not
24   designed to fraudulently deprive these nearly 240,000
25   plaintiffs out of their right to pursue their lawfully filed

|   |   |
|---|---|
| 1 | claims in a United States District Court, correct? |
| 2 | **MS. LAURIA:**  Your Honor, one minor point of |
| 3 | correction.  The funding agreement was entered into on |
| 4 | Saturday, not Friday, following meetings by the 3M Company |
| 5 | board as well as the Aearo Company board of directors. |
| 6 | **THE COURT:**  Okay.  Well, that may be my |
| 7 | misunderstanding.  I read the date of Friday, July 22nd.  I |
| 8 | thought that was the date.  So that will be reflected in the |
| 9 | record.  If it's my error, then I apologize.  It would be the |
| 10 | day after the impasse of the Court-ordered mediation. |
| 11 | **MS. LAURIA:**  Right, Your Honor, I think one minor |
| 12 | correction, that was it. |
| 13 | **THE COURT:**  So I'm confused by the request for |
| 14 | declaratory and injunctive relief, again, against these MDL |
| 15 | proceedings given that 3M -- now, Ms. Lauria, I know you |
| 16 | haven't been a part of this MDL, so I certainly take note of |
| 17 | that, so maybe somebody else wants to answer this, but it does |
| 18 | bear on the bankruptcy -- given that 3M has its own potential |
| 19 | liability for tens of thousands of these plaintiffs' claims |
| 20 | independent of Aearo. |
| 21 | There are post-2008 sales.  Why would those plaintiffs |
| 22 | be subject to the automatic stay based on Aearo's bankruptcy? |
| 23 | Those sales postdate 3M's acquisition.  3M sold those plugs. |
| 24 | There are post-2008 alleged fraudulent |
| 25 | misrepresentations and failures to warn by 3M employees, not |

1    Aearo employees, about the effectiveness of the yellow end of
2    the earplug to protect soldiers on the gun range. There are
3    thousands of plaintiffs who wore the earplug after 2008 who
4    claim they were injured on a gun range, and there are clear 3M,
5    not Aearo, marketing materials saying the plug is safe for the
6    gun range and will protect on the gun range, and then there's
7    internal corporate documents that are 3M's documents, not
8    Aearo's, that that wasn't true.
9            So why should those plaintiffs with those claims that
10   don't involve Aearo at all lose their ability to prosecute
11   their claims against 3M in a United States District Court?
12           **MS. LAURIA:** Your Honor, let me give three responses
13   to that question, and then I'll defer to my colleagues at
14   Kirkland & Ellis, to the extent there are some factual issues
15   that need to be addressed that are inherent to your question.
16           First, as I understand it, Your Honor, 80 percent of
17   the sales of this particular product occurred prior to the 2008
18   acquisition. And while I understand that sales occurred
19   post-2008 acquisition, the factual underpinnings, as far as I
20   know, are the same. They are the same claims, they rely upon
21   the same evidence. And in fact, as I understand it, 3M and the
22   Aearo entities were, in effect, treated as the same legal
23   entity in the litigation predating the bankruptcy case. So
24   that's part one.
25           Part two is --

1    **THE COURT:** You don't disagree that 3M purchased Aearo
2    and those employees, at least the ones that have testified
3    here, all became employees of 3M at that time?

4    **MS. LAURIA:** And that I'm going to have to defer to
5    Kirkland & Ellis on. It's my understanding that the company
6    was purchased in 2008, that the business resided at Aearo until
7    2010, and that at that point portions of the business, if not
8    all of the business, were transitioned to 3M Company. But I
9    would defer to folks that are more familiar with the factual
10   basis on that point.

11   **THE COURT:** Well, I just want to ask -- and, Ms. Smith
12   or Mr. Nomellini, you can address this. But did anyone ask
13   Chief Judge Graham to carve out those post-Aearo claims? I
14   guess not because you don't believe they should be carved out.
15   But was he aware of these claims?

16   **MS. LAURIA:** Your Honor, what I would say is this: I
17   think you saw in the papers it was very clearly disclosed the
18   fact that the acquisition occurred in 2008 and the 2010
19   assumption of those -- I'll call them assets loosely -- by 3M
20   Company. But that probably brings me to my next two points
21   that I wanted to make, if I may --

22   **THE COURT:** Yes.

23   **MS. LAURIA:** -- which is -- sure, thank you very much,
24   Your Honor.

25        The second point is that there is shared insurance

1  between 3M Company and the Aearo debtors, and that insurance
2  has aggregate limits.  And numerous courts have found that, not
3  only does that implicate section 362(a)(3), which we talked
4  about earlier, but it also provides that sort of identity of
5  interests between the debtor and the nondebtor -- in this case
6  3M Company -- that would give rise to the issuance of either
7  the stay or a preliminary injunction.
8         So it's that additional layer -- in addition to the
9  sameness and the identity of interests, it's that insurance
10 additional layer that addresses I think that next piece that
11 you just mentioned.
12        **THE COURT:**  All right.  Well, ultimately Chief Judge
13 Graham will decide this and then, beyond that, the Seventh
14 Circuit Court of Appeals.  I can only hope that they do so
15 expeditiously given the potential impact of the bankruptcy
16 proceedings on this MDL.
17        But, Ms. Smith or Mr. Nomellini, if you wish to
18 respond to my statement about the separate and independent
19 claims against 3M for failure to warn about the yellow end on
20 the gun range, I'm happy to hear from you.  I do know the
21 evidence, though, but go ahead.
22        **MR. NOMELLINI:**  Your Honor, we have nothing to add.
23 We do agree that these are issues before the bankruptcy court.
24        **THE COURT:**  Again, ultimately, the bankruptcy court
25 and the Seventh Circuit will decide these issues.

1            Let me also add -- and this is sort of separate and
2       apart from the 362(a) question for Chief Judge Graham.  But I
3       read your informational brief that you filed in the bankruptcy
4       court, and honestly it reads a lot like your Eleventh Circuit
5       Court of Appeals briefing and, in particular, the amicus brief
6       of chamber plus your own.
7            You raised some interesting questions about the MDL
8       system as a whole.  I mean, the briefing is essentially an
9       indictment of the system on policy grounds, which, in my view
10      -- this is just my view but I'm stating it for the record, for
11      whatever it's worth, but it belongs with Congress, not with the
12      appellate courts or the bankruptcy court.
13           The fact that 3M feels that this MDL is unfair given
14      its size is not a reason for an appellate court to overturn
15      lawfully entered judgments and certainly not a reason in my
16      mind for a bankruptcy court, with all due respect to Chief
17      Judge Graham and his court, but for a bankruptcy court to offer
18      safe haven or bankruptcy protection to a perfectly solvent
19      defendant, depriving over 200,000 plaintiffs of their right to
20      have their case resolved by a United States District Court,
21      wherever that may be.  Those policy disagreements are not for
22      the courts to decide, period.
23           And finally, in your informational briefings you make
24      reference to this MDL -- and this is on appeal and the brief is
25      on appeal, too -- as being dysfunctional.  But let me see if we

1  can agree on something again.
2          Every single action taken by this Court while
3  presiding over this MDL has been within this Court's
4  Constitutional and statutory authority, regardless of how you
5  feel about the MDL system.
6          Agreed, Mr. Nomellini?
7          **MR. NOMELLINI:**  Your Honor, there have been so many
8  actions taken, I don't think I can say that with respect to
9  every action.
10         **THE COURT:**  So you think there's been actions I've
11 taken that were outside of the Court's Constitutional and
12 statutory authority?
13         **MR. NOMELLINI:**  Your Honor, this is a three-year-old
14 MDL.  I can't make that --
15         **THE COURT:**  Okay, Mr. Nomellini.
16         Mr. Aylstock, what about the plaintiffs?
17         **MR. AYLSTOCK:**  We certainly agree, Your Honor.
18         **THE COURT:**  All right.  Thank you for that, Mr.
19 Nomellini.
20         Now let's turn to the show cause part of this hearing.
21         We've established -- at least I've established in my
22 mind that the statutory automatic stay provision by law does
23 not operate to 3M at this point as it does the other individual
24 defendant debtors.
25         So it's my understanding that yesterday 3M proceeded

1  unilaterally, with no advanced notice to this Court to request
2  leave to cancel depositions, but they did so anyway.  3M simply
3  cancelled depositions that were scheduled for yesterday, today,
4  and tomorrow, I believe.  And in fact, in some instances,
5  plaintiffs and their lawyers were present for the depositions
6  only to be told that they would not be going forward because of
7  the bankruptcy.
8        This is what I've been told by the Special Master.
9        And again, there was not so much as a phone call to
10  this Court to request last minute authority to do that.
11        Is that different from your understanding, Ms. Smith
12  or Mr. Nomellini?
13        **MS. SMITH:**  Your Honor, the depositions were cancelled
14  based on the bankruptcy filing.  Notice was given to
15  plaintiffs' counsel of the bankruptcy filing and of the
16  cancellation.
17        **THE COURT:**  And who gave 3M the right to take over
18  this MDL and manage it and cancel, you know, just discovery
19  that had been scheduled?
20        **MS. SMITH:**  Your Honor, I don't --
21        **THE COURT:**  Again, you're asking the bankruptcy court
22  for a stay.  That stay hasn't been entered.  There's no
23  injunction.  And you don't even give the Court the courtesy of
24  a phone call or -- it would have taken five minutes to call my
25  office and say, *Judge, these pleadings have been filed in*

1  *bankruptcy court.  We don't think we should go forward with the*
2  *depos today.  How do you see it?*
3              That didn't happen, did it?
4              **MS. SMITH:**  Your Honor, the Court was given notice of
5   the bankruptcy filing.
6              **THE COURT:**  That's not my question.  My question was:
7   That didn't happen, did it?
8              **MS. SMITH:**  No phone call was made to Your Honor with
9   respect to the depositions.
10             **THE COURT:**  All right.  So I also understand that
11  there was a request made to BrownGreer, a firm that this Court
12  appointed to help it manage this litigation, to post all of the
13  bankruptcy filings as well as an email prepared by 3M about the
14  bankruptcy filings on the portals of all cases.  BrownGreer
15  declined to do so without first consulting with the Court,
16  which 3M did not do.
17             So, I'm perplexed.  Without a stay in place of this
18  Court's litigation, this MDL, in my mind, there's no good cause
19  for the steps you took yesterday unilaterally to take over this
20  litigation.
21             **MR. NOMELLINI:**  Your Honor, we understood it was
22  appropriate not to go forward with the depositions in light of
23  the fact that, one, they were all depositions noticed by us;
24  and second, in light of the bankruptcy filings.
25             And on the bankruptcy filings aspect of it, I'd turn

1  to Jessica.

2  **THE COURT:** Well, I agree that you noticed those
3  depositions, and so I agree that you have the ability to
4  withdraw a notice, but not when it is at the expense of
5  plaintiffs' counsel.

6  And so, I'll be entering an order requiring 3M to pay
7  the expenses associated with any deposition that was
8  unilaterally cancelled before any injunction or stay issues in
9  this litigation, if there are expenses. If there aren't any
10 expenses, obviously you can't submit those expenses. But I'll
11 enter a written order to that effect.

12 And then, finally, the only other thing I have to say
13 is that, regardless of any issuance of an injunction or a stay,
14 I'll be issuing a separate notice scheduling a hearing to
15 determine whether 3M proceeded in good faith in connection with
16 the recent court-ordered mediation. So that will be
17 forthcoming.

18 This Court has nothing else and will be in recess.

19 *(Proceedings concluded at 7:58 a.m.)*

20 --------------------

21 *I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Any*
22 *redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy are noted within the transcript.*
23

24
   *s/Donna L. Boland*                                    *7-27-2022*
25 *Donna L. Boland, RPR, FCRR*                            *Date*
   *Official Court Reporter*