# Exhibit B

## TOLLING AGREEMENT

THIS AGREEMENT is by and between 3M Company, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo, LLC ("Defendants"), and the individual(s) identified on **Exhibit A**[1] ("Claimant(s)"), and _____Nicole Berg_____ ("Plaintiffs' Counsel"), and _____Keller Lenkner LLC_____ ("Plaintiffs' Law Firm") (each a "Party" and collectively the "Parties").

WHEREAS, Claimant(s) assert claims against Defendants alleging personal injury(ies) caused by using the dual-ended Combat Arms Earplugs Version 2 ("Combat Arms Earplugs"), or that they are, or are in the process of becoming, the legal representative of a person, or of the estate of a person, who was allegedly injured as a result of using Combat Arms Earplugs;

WHEREAS, Plaintiffs' Counsel and Plaintiffs' Law Firm represent Claimant(s);

WHEREAS, numerous cases involving Combat Arms Earplugs have been consolidated in MDL 2885, *In re: 3M Combat Arms Earplug Products Liability Litigation*, currently pending in the Northern District of Florida (the "Court");

WHEREAS, the Parties agree that it would be appropriate at this time to defer litigation of certain Claims (defined below), subject to the conditions contained in this Tolling Agreement;

WHEREAS, the Parties recognize the benefits of deferring litigation at this time, including cost savings, early vetting of cases without unnecessary expense, early exchange of significant information on unfiled cases that normally could not occur but for such agreement, and other benefits recognized by the Parties;

THEREFORE, the Parties have agreed as follows:

---

[1]      Each Plaintiffs' Counsel shall complete and serve Exhibit A within 10 days of execution of this Tolling Agreement by that individual Plaintiffs' Counsel.

**Definitions**

1.       The term "Effective Date" shall mean: (i) with respect to Claimants who enter into this Tolling Agreement on or before October 4, 2019, **June 20, 2019**; (ii) with respect to Claimants who enter into this Tolling Agreement after October 4, 2019, **the date this Tolling Agreement is executed**; or (iii) with respect to Future Claimants, **the Disclosure Date on which the Future Claimant is disclosed to Defendants** (as such terms are defined in Paragraph 32 below).

2.       The term "Tolling Period" shall mean the time period beginning on the Effective Date and ending on the earlier of: (i) 90 days after any Party provides written notice that the Party is withdrawing from this Tolling Agreement; (ii) the date on which the Claimant files or otherwise commences a tolled Claim against Defendants; or (iii) December 20, 2021.[2]  The Tolling Period can be extended upon written agreement by all of the Parties.

3.       The term "Claim" shall refer to any claim(s) or cause(s) of action alleging personal injury and associated harms caused by using Combat Arms Earplugs.  The term "Claim" as defined herein specifically includes any loss of consortium claims and punitive damages claims that may exist, if any.

4.       The term "Limitations" shall mean any and all time limitations for filing or pursuing Claims, including statutes of limitation, statues of repose, prescription, laches, and any other time bars, including, but not limited to, those based in equity.

5.       The term "Initial Census Questions" shall refer to the questions in the questionnaire attached hereto as **Exhibit B**.

6.       The term "Census Question Deadline" shall mean December 2, 2019.

---

[2] Provided, however, that solely for cases in which Louisiana law applies, the term "Tolling Period" shall mean the time period beginning on the Effective Date and ending on the earlier of: (i) 90 days after any Party provides written notice that the Party is withdrawing from this Tolling Agreement; (ii) the date on which the Claimant files or otherwise commences a tolled Claim against Defendants; or (iii) June 20, 2020, with an automatic extension thereafter through June 20, 2021, and a second automatic extension thereafter thru December 20, 2021.

7.     The term "<u>Initial Census Documents</u>" shall refer to the documents responsive to the document requests attached hereto as **Exhibit C**.

8.     The term "<u>First Document Deadline</u>" shall mean October 7, 2019.

9.     The term "<u>Final Document Deadline</u>" shall mean December 23, 2019.

10.    The term "<u>Unfiled Client(s)</u>" shall refer to all individuals represented by Plaintiffs' Counsel or Plaintiffs' Law Firm as of June 20, 2019 who had or have unfiled claims or causes of action against Defendants related to Combat Arms Earplugs.

11.    The term "<u>Future Unfiled Client(s)</u>" shall refer to all individuals who enter into an attorney-client relationship with Plaintiffs' Counsel or Plaintiffs' Law Firm after June 20, 2019 who have unfiled claims or causes of action against Defendants related to Combat Arms Earplugs.

## Tolling

12.    The Defendants agree to the tolling of Limitations during the Tolling Period with respect to the Claim(s) held by Claimant(s), provided, however, that this Tolling Agreement shall not revive existing Claims, if any, that have expired under applicable Limitations prior to commencement of the Tolling Period.  As an example, if any applicable Limitations were to have expired prior to the Effective Date of this Tolling Agreement, then the Defendants' right and ability to assert Limitations in defense of the Claims is fully preserved.

13.    In determining the effect of any tolling under this Tolling Agreement, only any applicable Tolling Period will be excluded when calculating Limitations; otherwise, Limitations will be treated as running continuously before and after any applicable Tolling Period, unless tolled by operation of law for reasons other than those set forth in this Tolling Agreement.

14.    Any dispute between the Parties arising out of, or as to the meaning or effect of, this Tolling Agreement shall be resolved exclusively by the *In re: 3M Combat Arms Earplug*

*Products Liability Litigation* MDL 2885 Court, which shall have personal jurisdiction over the Claimant.

### Initial Census Questions

15.     Each Claimant will complete and serve on Defendants through MDL Centrality answers to the Initial Census Questions by the Census Question Deadline.   Each Claimant's answers to the Initial Census Questions will be made under penalty of perjury, will be binding on the Claimant in any litigation against Defendants, will be treated as interrogatories pursuant to Federal Rules of Civil Procedure 33, and will be subject to Federal Rules of Civil Procedure 26 and 37.   The Census Question Deadline may be extended by: (i) the Court upon good cause shown; or (ii) agreement of the Parties.   To the extent a Claimant or Plaintiffs' Law Firm requests an extension of the Census Question Deadline for extenuating circumstances, Defendants will not unreasonably withhold their consent.   If a Claimant fails to complete and serve answers to the Initial Census Questions by the Census Question Deadline no tolling under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

16.     If a Claimant serves deficient answers to the Initial Census Questions, Defendants shall notify Plaintiffs' Counsel that Claimant's answers are deficient.[3]   Claimant will then have a sixty (60) day time period to serve non-deficient answers to Defendants (the "Cure Period").   If Claimant's answers to the Initial Census Questions contain any material deficiencies at the expiration of the Cure Period, no tolling under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

---

[3]     Whether an answer is deficient shall be determined under the standards and law that apply to interrogatories under Federal Rule of Civil Procedure 33.

17.     To the extent Defendants take the position that no tolling under this Tolling Agreement applies because of a material deficiency with Claimant's answers to the Initial Census Questions, the Parties will submit the issue to the Court to decide whether Claimant's answers to the Initial Census Questions were materially deficient.

## Initial Census Documents

18.     Each Plaintiff's Counsel shall provide Defendants through MDL Centrality with the Initial Census Documents for each Claimant that are in his or her possession, custody or control by the First Document Deadline.  If Claimant or Plaintiff's Counsel thereafter gains possession, custody or control of additional Initial Census Documents, Plaintiffs' Counsel will timely provide those documents to Defendants through MDL Centrality.

19.     To the extent any Initial Census Documents are in the possession of a third party, including the military or other government agency, Claimant agrees to request those documents from the third party within the following time periods: (i) for *Touhy* requests, within twenty one (21) days of the execution of this Tolling Agreement; and (ii) for all other requests, within sixty (60) days of the execution of this Tolling Agreement.

20.     Each Claimant will complete his or her production of the Initial Census Documents to Defendants through MDL Centrality by the Final Document Deadline.  The Final Document Deadline may be extended by: (i) the Court upon good cause shown; or (ii) agreement of the Parties.  To the extent the Claimant or Plaintiffs' Law Firm requests an extension of the Final Document Deadline for extenuating circumstances, Defendants will not unreasonably withhold their consent.

21.     If a Claimant fails to materially complete production of the Initial Census Documents by the Final Document Deadline, including any applicable extension(s), no tolling

under this Tolling Agreement shall apply, and the Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

22.     To the extent Defendants take the position that no tolling under this Tolling Agreement applies because of a Claimant's failure to materially complete production of the Initial Census Documents by the Final Document Deadline, the Parties will submit the issue to the Court to decide whether Claimant's production of Initial Census Documents was materially deficient.

## Claims Filed Prior To Completion Of The Initial Census

23.     If any Claimant files any Claims prior to providing answers to the Initial Census Questions and production of Initial Census Documents, Claimant shall remain obligated to complete the Initial Census Questions and complete production of the Initial Census Documents within the time periods contained in this Tolling Agreement, or within forty-five (45) days of filing, whichever is later.  Failure to do so absent good cause shown shall be grounds for dismissal with prejudice.

## Venue For Filing Claims

24.     If any Claimant who is not a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction files a lawsuit concerning a Claim tolled under this Tolling Agreement, the Claimant shall file such lawsuit only in (i) the federal District where he or she is domiciled or was provided and/or used Combat Arms Earplugs, and will consent to the transfer of the lawsuit to MDL 2885, or (ii) directly in the Northern District of Florida.  Claimant agrees that when filing a lawsuit in federal court, he or she will not name any non-diverse person as a defendant.  If a Claimant resists transfer to MDL 2885 of a case filed in federal court, no tolling under this Tolling Agreement shall apply, and Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

25.     If any Claimant who is a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction files a lawsuit concerning a Claim tolled under this Tolling Agreement, the Claimant shall file such lawsuit only in (i) state court in Minnesota or Delaware; (ii) the federal District where he or she is domiciled or was provided and/or used Combat Arms Earplugs, and will consent to the transfer of the lawsuit to MDL 2885, or (iii) directly in the Northern District of Florida.  To the extent the Claimant files a lawsuit concerning a Claim tolled under this Tolling Agreement in state court, he or she (i) will not oppose removal of the lawsuit to federal court, (ii) will consent to transfer of the lawsuit to MDL 2885, and (iii) will not seek to remand the lawsuit to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to the Claims.  If a Claimant resists transfer to MDL 2885 of a case filed in or removed to federal court, or seeks to remand a case to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to the Claims, no tolling under this Tolling Agreement shall apply, and Limitations shall be deemed to have run without suspension or interruption as if this Tolling Agreement did not exist.

26.     If Plaintiffs' Counsel or Plaintiffs' Law Firm files any lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs on behalf of a plaintiff who is not a citizen of either Minnesota or Delaware for purposes of federal diversity jurisdiction, Plaintiffs' Counsel or Plaintiffs' Law Firm shall file such lawsuit only in: (i) a federal district where venue is appropriate, and will consent to the transfer of the lawsuit to MDL 2885, or (ii) directly in the Northern District of Florida.  Plaintiffs' Counsel and Plaintiffs' Law Firm agree that when filing such a lawsuit in federal court, he or she will not name any non-diverse person as a defendant.

27.     If Plaintiffs' Counsel or Plaintiffs' Law Firm files any lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs on behalf of a plaintiff who is a citizen

of either Minnesota or Delaware for purposes of federal diversity jurisdiction, Plaintiffs' Counsel or Plaintiffs' Law Firm shall file such lawsuit only in: (i) state court in Minnesota or Delaware; (ii) a federal district where venue is appropriate, and will consent to the transfer of the lawsuit to MDL 2885, or (iii) directly in the Northern District of Florida.  To the extent Plaintiffs' Counsel or Plaintiffs' Law Firm files a lawsuit concerning claims or causes of action regarding the Combat Arms Earplugs in state court, he or she (i) will not oppose removal of the lawsuit to federal court, (ii) will consent to transfer of the lawsuit to MDL 2885, and (iii) will not seek to remand the lawsuit to state court prior to Defendants providing notice to the Court that no basis for federal subject matter jurisdiction exists with respect to such claims or causes of action.

### Filing Schedule After Notice Of Withdrawal

28.     In the event Defendants provide written notice of their withdrawal from this Tolling Agreement, in order to maintain any benefit of this Tolling Agreement, Plaintiffs' Counsel shall file Claims under the following schedule: one hundred (100) Complaints per day for the first thirty (30) days from Defendants' written notice of withdrawal, and the remainder of all filings within ninety (90) days from Defendants' written notice of withdrawal.  If a Court objects to this filing schedule, the parties shall meet and confer and coordinate with the clerk's office to establish a schedule for filing the complaints.

### Master Pleadings

29.     The Parties consent to the use of a "Master Complaint" and "Master Responsive Pleading" in MDL 2885.

30.     If any Claimant files a lawsuit concerning a Claim tolled under this Tolling Agreement, and such lawsuit is consolidated in MDL 2885, Claimant will adopt any "Master Complaint" in MDL 2885 through use of a separate "Short Form Complaint."

**Participation In Tolling Agreement**

31.     Plaintiffs' Counsel and Plaintiffs' Law Firm warrant and represent that the Claimants identified on Exhibit A include all or substantially all of their Unfiled Clients.

32.     Plaintiffs' Counsel and Plaintiffs' Law Firm agree to disclose Future Unfiled Clients to Defendants on each of the following dates: September 30, 2019; November 29, 2019; January 31, 2020; March 31, 2020; May 29, 2020; July 31, 2020; September 30, 2020; November 30, 2020; January 29, 2021; March 31, 2021; and May 31, 2021 (each, a "Disclosure Date"). Each Future Unfiled Client included in such disclosures shall be referred to herein as a "Future Claimant."

33.     Plaintiffs' Counsel and Plaintiffs' Law Firm warrant and represent that each Future Claimant shall enter into and be bound by the terms of this Tolling Agreement as of the Disclosure Date on which they are disclosed to Defendants, provided, however, that (i) the "Census Question Deadline" for a Future Claimant will be ninety (90) days from the Disclosure Date on which they are disclosed to Defendants, (ii) the "First Document Deadline" for a Future Claimant will be forty-five (45) days from the Disclosure Date on which they are disclosed to Defendants, and (iii) the "Final Document Deadline" for a Future Claimant will be one hundred and twenty (120) days from the Disclosure Date on which they are disclosed to Defendants.

34.     Plaintiffs' Counsel's and Plaintiffs' Law Firm's participation and submission of Claimants under this Tolling Agreement constitutes participation in and reliance on valuable work product in the litigation of court proceedings involving claims of 3M Combat Arms Earplug-related injuries (the "Common Benefit Work Product") and establishes an amicable, working relationship with the PEC for the mutual benefit of their clients, as well as an intention to be legally bound by a Participation Agreement to contribute and share in Common Benefit Work Product pursuant to the Common Benefit Order(s) entered by the Court in MDL 2885.

**Other Provisions**

35.     In the event Defendants identify a duplicate Claimant pursuant to the information provided under this Tolling Agreement, Defendants shall reasonably notify Plaintiffs' Counsel.

36.     This Tolling Agreement shall not be construed as an admission or indication that the Defendants agree that any Claimant has meritorious claims against the Defendants.

37.     This Tolling Agreement shall not be construed as an admission or indication that Claimants claims are subject to any Statute of Limitations arguments.

38.     This Tolling Agreement cannot be modified except by a writing signed by the Parties or their attorneys.

39.     The Parties hereto agree that the existence and terms of this Tolling Agreement shall be deemed confidential and shall not be disclosed to anyone except as otherwise provided or required by law. This paragraph shall not be construed to prevent Claimants from disclosing this Tolling Agreement to overcome a defense based upon Limitations, or to co-counsel and their clients.

40.     If any term, provision, condition or covenant of this Tolling Agreement or the application thereof to any party or circumstance is held to be illegal, invalid or unenforceable under any present or future law: (i) such provision will be fully severable; (ii) this Tolling Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; and (iii) the remaining provisions of this Tolling Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

41.     Claimants are represented by counsel of their choice.  By executing this Tolling Agreement, Plaintiffs' Counsel represents that he or she has entered into a written retention

agreement with the Claimant(s).  Plaintiffs' Counsel warrants and represents that he or she has the authority of the Claimant(s) to enter into this Tolling Agreement.

42.     This Agreement may be signed in counterpart.

Plaintiffs' Counsel: Nicole Berg

Dated: October 4, 2019

For Defendants: Mark Nomellini

Dated: August 26, 2019

For Plaintiffs' Law Firm:  Travis Lenkner

Dated: October 4, 2019

## EXHIBIT A

**Claimant Information**

| Claimant full name: | Claimant SSN: | Claimant DOB: |
|---|---|---|
| Claimant home address: | Claimant mailing address: | |

**EXHIBIT B**

**Initial Census Questions**

1. Information

    a.    Claimant Name: _____

    b.    Law Firm: _____

    c.    Male ☐   Female ☐

    d.    Date of birth: _____

    e.    Current state of residence: _____

    f.    Number of years in current state of residence: _____

2. Did the claimant serve in the military and/or armed forces?

    Yes ☐    No ☐

If yes:

    a.    Identify each branch the claimant served in, and the dates of service in each branch:

| Branch | Start Date | End Date |
|---|---|---|
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |

    b.    Identify each of the claimant's duty stations between 2000 and present:

| Duty Station | Start Date | End Date |
|---|---|---|
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |
|  |  | ☐ Present |

| Duty Station | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

c.    Identify each of the claimant's military occupational specialties between 2000 and present:

| Military Occupation Specialty | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

| Military Occupation Specialty | Start Date | End Date |
|---|---|---|
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |
| | | ☐ Present |

3.  Is the claimant currently on active military duty?

         Yes ☐       No ☐

4.  Did the claimant use the Combat Arms Earplugs version 2 ("CAEv2") when he or she served in the military and/or armed forces?

         Yes ☐       No ☐

If yes,

a.  State whether the claimant used CAEv2 in training, combat, or both:

         Training ☐   Combat ☐   Both ☐

- 15 -

b.   Identify the year(s), duty station(s), and military occupational specialties in which the claimant used the CAEv2 earplugs:

| Year(s) | Duty Station | Military Occupational Specialty |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

5.   Did the claimant use CAEv2 earplugs as a civilian any time?

Yes ☐      No ☐

6.   Identify the physical injuries claimant sustained as a result of using CAEv2 earplugs:

☐ Total Hearing Loss, Left Ear

☐ Total Hearing Loss, Right Ear

Percentage/grade of hearing loss, if known:

☐ Partial Hearing Loss, Left Ear

_____

☐ Partial Hearing Loss, Right Ear

Percentage/grade of hearing loss, if known:

☐ Tinnitus, Left Ear

_____

☐ Tinnitus, Right Ear

☐ Tinnitus - Extent Unknown

☐ Other—Specify: _____

7.   Identify the approximate year on which the claimant first noticed:

   a.   that the CAEv2 was not providing adequate protection from loud noises;

   b.   the injury described in response to Question No. 6 above.

| Injury described in response to Question No. 6 | Approx. year first noticed injury |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

8.   Has the hearing loss identified in response to Question No. 6 above been identified during an audiogram or other hearing test?

   If yes, what was the approximate date of the first audiograms or other hearing tests that identified the injuries described in response to Question No. 6 above?

| Injury identified | Approx. Date of the first hearing tests |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

- 17 -

9.    Has the claimant received disability benefits as a result of hearing loss, tinnitus or other hearing injury?

       Yes ☐        No ☐

If yes, identify the agency or entity that provided the claimant with disability benefits:

**Declaration**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that all the information provided in response to these Initial Census Questions is true and correct to the best of my knowledge, information and belief formed after a reasonable inquiry.  I understand that I am under an obligation to supplement these responses.

Date:        _____

Signature:   _____

Name:        _____

- 18 -

## EXHIBIT C

### Initial Census Document Requests

1.   Form DD214 and the ORB, ERB and/or NORB relating to the claimant's service in the military.

2.   DD2215 and DD2216s audiological exams relating to the claimant's service in the military.

3.   Any audiograms or other hearing tests performed on claimant outside of the military.

4.   Records relating to any disability benefits claimant applied for and/or received as a result of hearing loss, tinnitus or other hearing injury.  Such records would include, where available:

   a.   VBA Worksheet 1305 (Audio)

   b.   VA Form 21-4138 – Statement in Support of Claim

   c.   VA 21-8940 (Application for Increased Compensation Based on Unemployability)

   d.   21-4192 (Request for Employment Information in Connection with Claim for DB)

   e.   VA Form 21-256 EZ – Application for disability benefits

   f.   VA form 10-2364 and 10-2354a – VA audiological examinations (audiograms)

   g.   Rating Decision