# Exhibit C

```
                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF INDIANA

IN RE:                         .   Case No.  22-02890-JJG
                               .   (Jointly Administered)
AEARO TECHNOLOGIES LLC,        .
ET AL.,                        .   116 U.S.  Courthouse
                               .   46 E.  Ohio Street, Room 116
         Debtors.              .   Indianapolis, IN  46204
 . . . . . . . . . . . . . .
AEARO TECHNOLOGIES LLC,        .
ET AL.,                        .
                               .
         Plaintiffs,           .
    V.                         .   Adversary No. 22-50059
                               .
THOSE PARTIES LISTED ON        .
APPENDIX A,                    .
                               .
         Defendants.           .
                               .   Wednesday, July 27, 2022
 . . . . . . . . . . . . . .       9:30 a.m.

     TRANSCRIPT OF MISCELLANEOUS MOTIONS BY PLAINTIFFS/DEBTORS
             BEFORE THE HONORABLE JEFFREY J. GRAHAM
                UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          BY:  CHAD HUSNICK, ESQ.
                               DAVID M. BERNICK, ESQ.
                               SPENCER WINTERS, ESQ.
                          300 North LaSalle Street
                          Chicago, IL  60654




Audio Operator:           Heather Heiser-Davis

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
```
_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjCourt@jjCourt.com

(609) 586-2311   Fax No.  (609) 587-3599

```
APPEARANCES CONTINUED:

For the Debtors:          Kirkland & Ellis LLP
                          BY:   EMILY GEIER, ESQ.
                          601 Lexington Avenue
                          New York, NY  10022

                          Kirkland & Ellis
                          BY:   JARED MAHER, ESQ.
                                MARK McKANE, ESQ.
                          555 California Street, 27th Floor
                          San Francisco, CA  94104

                          Kirkland & Ellis
                          BY:   DAVID HOROWITZ, ESQ.
                          333 South Flower Street, Suite 3700
                          Los Angeles, CA  90071

For Creditors:            Valenti Hanley & Robinson PLLC
                          BY:   MARK A. ROBINSON, ESQ.
                          One Riverfront Plaza
                          401 W. Main Street, Suite 1950
                          Louisville, KY  40202

For 3M Company:           Faegre Drinker Biddle & Reath LLP
                          BY:   JAY JAFFE, ESQ.
                          600 East 96th Street, Suite 600
                          Indianapolis, IN  46240

                          White & Case LLP
                          BY:   MATTHEW E. LINDER, ESQ.
                                MICHAEL ANDOLINA, ESQ.
                          111 S. Wacker Drive, Suite 5100
                          Chicago, IL  60606

For Aylstock, Witkin,     Klee, Tuchin, Bogdanoff & Stern, LLP
Kreis & Overholtz, PLLC:  BY:   SASHA M. GURVITZ, ESQ.
                          1801 Century Park East, 26th Floor
                          Los Angeles, CA  90067

For Seeger Weiss LLP:     Rubin & Levin, P.C.
                          BY:   DEBORAH CARUSO, ESQ.
                                MEREDITH R. THEISEN, ESQ.
                          135 N. Pennsylvania St., Suite 1400
                          Indianapolis, IN  46204
```

```
APPEARANCES CONTINUED:

For Seeger Weiss LLP:    Seeger Weiss LLP
                         BY:  CHRISTOPHER SEEGER, ESQ.
                              DAVID BUCHANAN, ESQ.
                         55 Challenger Road
                         Ridgefield Park, NJ  07660

                         Otterbourg P.C.
                         BY:  MELANIE CYGANOWSKI, ESQ.
                              ADAM SILVERSTEIN, ESQ.
                         230 Park Avenue
                         New York, NY  10169-0075

For the U.S. Trustee:    U.S. Department of Justice
                         BY:  HARRISON E. STRAUSS, ESQ.
                              NANCY GARGULA, ESQ.
                              RONALD J. MOORE, ESQ.
                              DAMARIS ROISCH-SCHWARTZ, ESQ.
                              LAURA A. DUVALL, ESQ.
                         46 E. Ohio St., Road 520
                         Indianapolis, IN  46204

For various claimants:   Jacobson Hile Kight
                         By:  ANDREW KIGHT, ESQ.
                         108 E. 9th Street
                         Indianapolis, IN 46202

                         Weitz & Luxenberg
                         By:  LISA BUSCH, ESQ.
                         700 Broadway
                         New York, NY 10003


For various Claimants:   BY:  MARK WENZEL, ESQ.


For Richard Valle:       Keller Postman
                         BY:  ASHLEY KELLER, ESQ.
                         150 N. Riverside Plaza
                         Chicago, IL  60606
```

1  believe that number to be accurate.  That covers approximately
2  2059 pending cases where the Aearo debtors are defendants, are
3  named defendants in the litigation.  There are some additional
4  cases where the debtors have indirect indemnification
5  obligations of parties.
6          Importantly, the TRO that Your Honor is considering
7  today does not relate to the asbestos docket.  It's dealing
8  with the Combat Arms docket today.
9          Where are we?  We're trying to get a fair and
10 efficient resolution using the Chapter 11 tools.  We're trying
11 to address each of the issues that I pointed out as I moved
12 through the materials, the lack of vetting of the 230,000
13 claims that are actively on the docket, or that are sitting on
14 the docket, whether on the administrative docket or the active
15 docket, but they're on unvetted.  We would propose that a
16 Chapter 11 process will have verified disclosures established
17 through a well-known bar date process required under the
18 Bankruptcy Rules.  It will require plaintiffs and claimants to
19 verify the nature and extent of their injuries so that they can
20 be properly evaluated.
21         Through the MDL, we've been unable to resolve
22 anything more than a small fraction of the cases and it's all
23 been through a piecemeal process.  We would propose, Your
24 Honor, a consolidated resolution, one where we're dealing with
25 the plaintiffs *in toto* instead of having one-off trials.

1          Your Honor, we want to ensure fair compensation to
2   all of the plaintiffs, as opposed to the inconsistent jury
3   awards that you saw a couple of slides ago.  It cannot be that
4   150 times greater jury verdict is appropriate.  We would
5   propose, ultimately as part of an estimation process, that the
6   estimation be based on scientifically calculated allocations
7   and determinations of liability.  Ultimately, this is a
8   settlement negotiation, Your Honor.  That's what we intend to
9   do is negotiate with the plaintiffs in an attempt to try and
10  get to settlement using the tools that the bankruptcy process
11  provides.
12         We believe that the Chapter 11 process will provide
13  finality.  Because it has to be negotiated through a global
14  settlement with at least 75 percent of the plaintiffs, at least
15  in the respirator stage, that will engender a great deal of
16  consensus and hopefully avoid what could be years or even a
17  decade or more of litigation.  And that's not to mention the
18  imposition on the federal district courts.  Judge Rogers, I
19  believe, noted that, as she starts to remand the over 230 cases
20  now that the Bellwethers are complete, that could result in an
21  imposition on the 94 federal districts to the tune of 2,500
22  cases per district, which we certainly believe needs to be
23  taken into account when we're addressing the public interest
24  component of the TRO standard.
25         Your Honor, the debtors have done their homework in

1 terms of determining what we believe the estimated liability
2 is.  The preliminary analysis by Dr. Charles Mullin at Bates
3 White, who is an experienced estimator of claims in the
4 Chapter 11 cases, who has testified in many, many large cases,
5 including Takata, the Purdue bankruptcy case, W.R. Grace.
6         Your Honor, Mr. Mullin's preliminary analysis
7 assesses that the total value of claims involving functional
8 hearing loss in the Combat Arms MDL is less than $1 billion.
9 We will present that analysis and his final report at the
10 appropriate time to both the Court and, of course, to the
11 plaintiffs.
12         Your Honor, the last piece I want to summarize is the
13 funding agreement.  I will not spend much time here.  Suffice
14 to say, 3M is committed to funding the resolution of this case.
15 Their lawyers are here.  They will say the same thing.  In
16 support of that commitment, they funded up front $5 million of
17 upfront cash and agreed to fund $1.24 billion into a trust and
18 to fund the operations of the debtors through the Chapter 11
19 cases.  The debtors are cash users during these cases.
20         Critically, really critically, these funds are
21 uncapped.  It is not meant to serve as a cap but is simply what
22 the debtors are committed -- or what 3M is committing up front.
23 3M is committed to provide additional funding to the extent
24 necessary to bring resolution to the cases.  3M has also agreed
25 to provide shared services that have historically been provided

1 definition of irreparable harm, not only to the litigants but
2 to the courts.
3         This is a case -- I can't think of a case that's more
4 compelling in terms of the acceleration in the docket and then
5 the impact on following a rule-based process.  I can't think of
6 a single precedent for it.  And I think that the irreparable
7 harm is continuing.  It may have been there before.  But it's
8 certainly here now.  It needs to stop now.
9         And just take a look at what's happened in the last
10 couple of days.  We're facing show cause orders out of the MDL.
11 We're now facing the prospect the court wants to take a look at
12 whether the parties have conducted themselves appropriately in
13 the mediation.  That's at least the essence of it.
14         And so now we're going to have the MDL during the
15 course of this case which is now pending, still activated to
16 look at us and take action with respect to us.  In fact, I
17 think we should extend our request for a TRO to include the
18 individual attorneys because I think it's going to happen.  I
19 think you're going to see orders from this Court that start to
20 go after the attorneys.  And then, it's almost, you know, it's
21 remarkable.
22         So there's now a tag-along action, a tag-along
23 request that's been filed to the JPMDL asking for this case,
24 this entire case, to be transferred to the MDL.  I mean, there
25 was consideration of doing that in the early '90s because there

1  was an MDL for all asbestos claims in federal court before a
2  Judge Weiner, in 1991.  And he kind of looked at it, and well,
3  you know, maybe we should go ahead and do this.  And they took
4  two years to kind of look at it and decide what to do, and they
5  said, we're not going to do this.
6       And we're not going to do it because the bankruptcy
7  case is not just a civil case in the MDL.  There's a district
8  court there, right.  That is a common feature.  But the
9  underlying bankruptcy case and the underlying bankruptcy
10 jurisdiction is only one place and it's a place of the debtors
11 choosing within the rules of the Bankruptcy Code.
12      And so the idea that we're going to have an MDL judge
13 who is -- they're now asking that she -- well, let's just give
14 that whole case back to her and she'll figure out what to do
15 with it.  I mean, that is the imminent harm and it's happening
16 every day.  It's a distortion to the process.  It was rejected
17 by the JPMDL, and they're doing it under far less compelling
18 circumstances.  That was all of asbestos.  My God, there were
19 cases all over the country.
20      We have one case before one MDL judge, and they're
21 saying, oh, let's tag-along the bankruptcy so that judge has it
22 too, when the heart of our problem comes out of her court.  And
23 it's regardless of whether she did what right or she did wrong.
24 It's we're, you know, it's in the fact is indifferent to it.
25 The fact is we've got a docket that's broken and a case that's

43

broken and that invokes the, I think the obligation of the bankruptcy courts to provide us the relief that we're seeking.

I hope that answers Your Honor's question. I'm sorry to go on for -- and it's also, I got a note, Judge Rodgers, the MDL, is about to remand thousands of cases back to all the other -- wherever it is that they came from. So the out-of-control docket now becomes an out-of- control remand docket. I mean, they're kind of saying, well, you know, we're kind of seeing that it's like Mark Twain and, you know --

THE COURT: But when you say "about to," it's not now, correct?

MR. BERNICK: Somebody else can talk about the specific timing of that. I believe that that is the --

THE COURT: Let me ask this. Is it within the next 14 days?

MR. BERNICK: I don't know whether that's in the -- I suspect not. But maybe somebody else can answer. I don't know the answer to the question. Somebody else I'm sure will be able to answer.

What I can tell you right now, there are 343 depositions scheduled between now and September 15. Sixty-two of depositions next week. Expert reports are due for 372 plaintiffs on August 15th. That's a little bit past 14 days. Six hundred and nineteen Daubert or summary judgment oppositions are due on August 9th. That is the intensity of

1 this litigation. And, again, so I mean, you know, I can say,
2 Your Honor, that, you know, when you talked about the balance
3 of harms associated with the next 14 days, all of the harms are
4 one way. Absolutely all of the harms are one way. That's why
5 we're here now. And that's why we're asking for a TRO.

6      And you could have, again -- well, I'm repeating
7 myself so I'll just proceed unless Your Honor has further --
8      THE COURT: No, go ahead.
9      MR. BERNICK: Okay. Thank you.
10     Let's go to Slide 14.
11     Courts have consistently recognized that the measures
12 are the essential first step is just to be a Chapter 11 case,
13 incontestable. A.H. Robins, I think was handled by Judge
14 Mehridge in the district court, a very esteemed mass tort
15 judge. I think he was on the JPMDL at the time. "It seems
16 incontestable that, if suits are permitted to continue
17 discovery allowed, any effort at reorganization of the debtor
18 will be frustrated, if not permanently thwarted."
19     I mean, this is why we're at the beginning, Slide 15.
20 And I'll move along here, Your Honor. I know that I've been
21 going for a while.
22     This is how the process works. I mean, the whole
23 idea is to centralize and consolidate. And once you have all
24 the claims in one place, and only then can you actually do an
25 estimation. You have the pool of claimants and you can go

1  THE COURT: He said he -- I didn't write it down,
2 but, yes. I have a feeling your opposition may know and can
3 fill you on that.
4  MR. BERNICK: Right. That's what I figured, but I
5 thought I would just ask. So, a few things and they're not
6 going to be unfortunately in particular order because there are
7 just so many things that were happening, but that's fine. So,
8 there are a lot of broad statements that have been made that,
9 you know, for example, juries aren't estimators.
10  THE COURT: I'm not --
11  MR. BERNICK: Yeah.
12  THE COURT: Okay.
13  MR. BERNICK: Okay.
14  THE COURT: For rebuttal, let's just focus on the one
15 thing I'm really worried about right now is the TRO.
16  MR. BERNICK: Okay.
17  THE COURT: That's what I'm really concerned about
18 because that's what's in front of me.
19  MR. BERNICK: Right. Well, that was the one thing I
20 did want to make sure is that we're also seeking relief under
21 the stays and the stays are now, whatever they are, they're
22 triggered by the filing of the bankruptcy.
23  THE COURT: Right, as to all the named debtors,
24 correct.
25  MR. BERNICK: Yeah. Well, but under 360(a)(1), it is

1  any claim that is made, in effect, against the non-debtor
2  parties.
3          THE COURT:  Right.
4          MR. BERNICK:  Yeah.  And this is not, as you know, an
5  unusual situation.  I mean, it's been said that this is without
6  precedent and it's a Texas Two Step.  It's not a Texas Two
7  Step.  And this exact configuration has been litigated again
8  and again and again.  And I don't want to belabor that with
9  Your Honor, but it's our view that those stays are in place and
10 they cover 3M for the reasons that we've stated.  And I don't
11 think that --
12         THE COURT:  But isn't that what your TRO is for?
13         MR. BERNICK:  No.  The TRO is not that.  The TRO is a
14 broader, is broader relief so that if, in fact, the stays are
15 in place as we believe they are for the reasons that we've
16 indicated, then the effectively the case, the entire litigation
17 is stayed against both the debtor and --
18         THE COURT:  Why do you need a TRO if you think you've
19 got a stay against everybody?
20         MR. BERNICK:  It is a belt and suspenders.  That's
21 what it is.  Again, that one of my charts was you need the TRO
22 as a predicate for using related to jurisdiction and a Section
23 105 injunction.
24         THE COURT:  You mean I have to find a TRO to do
25 something?

```
 1            MR. BERNICK:  Yeah, you have to find a --
 2            THE COURT:  Which would be to say under 105 I'm
 3  extending the stay to 3M.
 4            MR. BERNICK:  If the stays are not applicable.  If
 5  the stay is applicable --
 6            THE COURT:  Okay.
 7            MR. BERNICK:  -- then this is a standard -- I'm
 8  sorry, Your Honor, I don't mean to teach the Court.  I mean,
 9  I'm just --
10            THE COURT:  Well, I guess you may teach me because I
11  disagree with you, but I don't know if you're going to have an
12  apt student here.  The stay doesn't automatically apply to
13  random people.
14            MR. BERNICK:  That's correct.
15            THE COURT:  Unless you're in a 13, you can get a
16  co-debtor stay, right?
17            MR. BERNICK:  Yeah, so that's correct.
18            THE COURT:  So, enlighten me as to why you think 3M's
19  already got a stay in its favor?
20            MR. BERNICK:  Because --
21            THE COURT:  We could have saved two hours.
22            MR. BERNICK:  Well, that's why we stood up and all
23  the slides said stay and.
24            THE COURT:  Well, yes, including the slide you said,
25  oh, by the way, this should say stay too.
```

1           MR. BERNICK:  Yes, right.  That was one of the
2  earlier slides.
3           THE COURT:  You're on an uphill battle here, so --
4           MR. BERNICK:  Sure.
5           THE COURT:  -- if you want to sum up.  I mean, you
6  can make that argument, but --
7           MR. BERNICK:  Well, the argument is pretty simple
8  because it's been adopted in, you know, many cases and --
9           THE COURT:  Well, again, everyone likes to tell me
10 all the -- I don't care about other cases specifically right
11 now.  I want to know this and how the law applies to other
12 things, but I know asbestos has all sorts of great things that
13 have happened to asbestos cases which was mainly your chart.
14 Asbestos is its own special breed that's been --
15          MR. BERNICK:  Right.
16          THE COURT:  -- largely adopted by Congress.
17          MR. BERNICK:  Right.
18          THE COURT:  It hasn't really expanded it pursuant to
19 these other things.  So, it seems to me that now you, maybe I'm
20 wrong, and obviously if you disagree with me you can appeal, if
21 it's interlocutory you maybe can, but that the stay already
22 applies.  But that seems a bold maneuver.  So, but go ahead.
23          MR. BERNICK:  Well, the precedence for that are,
24 again, in that little slide and I'm sorry it wasn't -- for
25 whatever reason I'm sorry it didn't get across.  That's my

1  responsibility.  But the stays are -- have been used and the
2  non-bankruptcy cases that we're talking about are Dow Corning,
3  that was breast implants.
4           THE COURT:  Right.
5           MR. BERNICK:  Okay.
6           THE COURT:  But where there's -- where, essentially,
7  a judgment against a non-debtor is a judgment against the
8  debtor?
9           MR. BERNICK:  That's correct.
10          THE COURT:  Which is one of the showings I thought
11 you would have to make for the TRO.  And to get a TRO at a
12 preliminary injunction to extend the stay, those are findings
13 --
14          MR. BERNICK:  No, no, actually the TRO is different
15 because under related to jurisdiction it's any impact on the
16 Chapter 11 process.
17          THE COURT:  All right.
18          MR. BERNICK:  Okay.  So -- but that's pretty
19 important for us.  That's why it's related to.  The stay is our
20 core.  Related to jurisdiction really picks up a broader sweep
21 of penumbra around the core issues.  So --
22          THE COURT:  I don't think you want to use penumbra.
23          MR. BERNICK:  Okay.  That's true.  I don't want to --
24          THE COURT:  That hasn't really worked.
25          MR. BERNICK:  Yeah, that's right.

1  resources of 3M, right.  And so the debtors' --

2            THE COURT:  Well, resources also include legal
3  resources.

4            MR. BERNICK:  Yes.  Well, I would think so.  I mean,
5  we, unfortunately or fortunately, lawyers are essential to the
6  Chapter 11 process.  And so that's why, you know, we're all
7  here and I'm just pointing it out to the Court with complete
8  respect.  Then you get to the question of the -- what's
9  happening in the MDL.  And, yes, I, you know, I have made very
10 strong arguments on behalf of my client about what's happening
11 in the MDL case.  And I think the documentation substantiates
12 what we're saying in this court and in our papers which say
13 exactly the same thing.

14           And what's happened over the last 48 hours actually
15 makes a very troubling and compelling case all by itself that
16 this case, that that case should be stayed insofar as both the
17 debtor and 3M are concerned because effectively what's
18 happening, and I think Your Honor can easily see this, is that
19 the same matters that Your Honor is focused on in connection
20 with our request for a TRO are now being focused on by the MDL
21 judge.  She's asking the same questions of us that are similar
22 questions to the ones that you're asking, there's show cause
23 orders to respond and to discuss these matters, matters before
24 Your Honor in a separate proceeding where our stay and our
25 requests are directed.

1      And I'm also informed that there are communications
2 now between where apparently Judge Rodgers is listening into
3 this and we're now, you know, getting messages about what it is
4 that she apparently has said that she might be prepared to do.
5 And they're not coming through any formal line of communication
6 and so I'm very concerned about that.  I think everybody should
7 be concerned about it.
8      So, and then you have the tag-along where counsel on
9 somebody's behalf is saying, well, this is really not
10 inconsistent with the stay.  Well, of course, it's inconsistent
11 with the stay.  It seeks to move this entire case to a
12 different court, back to the MDL court.  How can that not be
13 inconsistent with the stay?  We're now going to get the MDL
14 panel.
15      I mean, this case is going to set records for the
16 activity of -- activity by -- that's being asked of or
17 instigated by judges that are not involved in this case.  It
18 will set records.  The tag-along, well, it was tried for all of
19 asbestos.  That was completely different case and it wasn't
20 accepted.  Now all of a sudden it's being invoked here.  This
21 case is so special we're going to go back and go to the MDL
22 panel.  You get the MDL judge conducting hearings on what's
23 happening in this court.
24      I'm not aware of any situation where that's ever
25 taken place, in my experience, which is not inconsiderable.

1  And then you've got -- well, and so what is the control that
2  this Court needs to excerpt, it's control that needs to excerpt
3  now.  Now is precisely the moment of fragility.  And the harms
4  and benefits, it's the harms and benefits, the irreparable
5  damage to this proceeding, to the bankruptcy case.  And this
6  case is being harmed right now by the things that are taking
7  place before the MDL judge.

8         And, you know, I am a Chicago boy.  I still live in
9  Chicago, although I've moved around a lot.  And that's basic
10 common sense.  And it's the same basic common sense I feel
11 strongly about and if I'm going too hard, I apologize to Your
12 Honor, but the same basic common sense says this Court is being
13 invoked now for an unbelievably important process.

14        Your Honor should have freedom from having to worry
15 about what the judge in the MDL is doing and what is happening
16 in that case.  That should not be happening, period.  It should
17 not be taking place and yet it's taking place.  It's
18 extraordinary.  And, if nothing else, that's what the TRO is
19 for.

20        There are all these complaints about the TRO.  Well,
21 we didn't get the -- well, that's what happens in every TRO
22 situation.  Yes, it's short notice.  The trustee, I think,
23 requires 24 hours notice.  We gave 24 hours notice.  No, there
24 wasn't discovery.  Yes, they had to prepare it quickly.  We had
25 to prepare it quickly ourselves, much as they think otherwise

124

# **C E R T I F I C A T I O N**

We, KAREN WATSON, TAMMY DeRISI and KELLI R. PHILBURN, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

/s/ Karen Watson

KAREN WATSON

/s/ Tammy DeRisi

TAMMY DeRISI

/s/ Kelli R. Philburn

KELLI R. PHILBURN

J&J COURT TRANSCRIBERS, INC.          DATE:  July 29, 2022