UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Cupit*, 8:20-cv-97300 | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

**MOTION FOR RULING ON 3M COMPANY'S WAIVER AND/OR JUDICIAL ESTOPPEL OF ANY DEFENSE REGARDING ITS FULL LIABILITY, AND REQUEST FOR EXPEDITED BRIEFING AND TO JOIN AUGUST 11, 2022 HEARING**

## I. PRELIMINARY STATEMENT

Plaintiff Guy Cupit is a veteran who years ago brought suit for injuries incurred while using the Combat Arms Earplug v2 ("CAEv2"). Today, his ability to proceed with that lawsuit in a timely and efficient manner against Defendant 3M Company ("3M") is threatened by 3M's argument in the Aearo Defendants' recently-filed bankruptcy that all litigation against 3M should be stayed indefinitely. The basis for 3M's request in the Bankruptcy Court to stay this MDL is the idea that somehow 3M is not fully liable for the injuries alleged in these consolidated lawsuits. 3M, however, has demonstrated through its conduct in this MDL, including in years of pleadings and discovery, as well as in 16 different bellwether trials, that it is

directly and fully liable for all CAEv2-related injuries. Mr. Cupit therefore asks this Court for a ruling that 3M has waived and/or is judicially estopped from defending, arguing, or otherwise attempting to avoid any portion of its liability based on the argument that 3M is the "wrong party" because it does not bear full liability for all CAEv2-related injuries.

A ruling along these lines will have multiple immediate benefits. First, a ruling that that recognizes and binds 3M to the position it has taken throughout this consolidated litigation (*i.e.*, that it bears full responsibility for CAEv2-related injuries) will permit the MDL to proceed against 3M on the previously-agreed upon timeline, without miring this MDL in the bankruptcy proceedings. Such a ruling would streamline both this MDL and the Aearo Defendants' bankruptcy because Mr. Cupit and all other plaintiffs in this MDL will be able to simply amend the Master and individual Complaints to drop the Aearo Defendants. (In fact, that is the primary goal of this filing.) Second, ruling in this fashion will put the lie to 3M's never-before-seen implications that the Aearo Defendants bear liability for CAEv2 injuries, when trial after trial has shown it is 3M alone that bears that liability. Third, it will send a strong message to companies like 3M that they cannot simply abuse the judicial system at will, manufacturing reasons to run to a different court years after the fact just because they dislike that justice will continue to be served against them in an efficient and effective manner in a forum where they litigated for years.

Given the importance and immediacy of these issues, Mr. Cupit requests expedited briefing on this motion, as well as the right to be heard at the August 11 preliminary injunction hearing (Dkt. 3359). To be clear, Mr. Cupit does not seek any relief against any debtor in the recently-filed bankruptcy case. He also does not believe the ruling he requests must be issued as a preliminary injunction rather than as a motion clarifying the record in these proceedings, on the basis of waiver and/or judicial estoppel, regarding 3M's full liability. However, to the extent the Court does analyze this as a preliminary injunction request, Mr. Cupit believes he satisfies those factors for the reasons stated below.

## II. ARGUMENT

### A. 3M Cannot Now Disclaim its Full Liability for All CAEv2-Related Injuries

There are two independent bases to hold that 3M should be precluded from making any arguments or introducing any evidence that it is anything but fully liable for all CAEv2-related injuries, regardless of when they occurred. These include waiver under Rule 8(c) and judicial estoppel.

#### 1. Rule 8(c) waiver for failure to plead an affirmative defense

Federal Rule of Civil Procedure 8(c) requires a defendant to "affirmatively state any avoidance or affirmative defense" in their answer, else waive that defense. *See Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988) ("If the party fails to raise an affirmative defense in the pleadings, the party generally waives its

right to raise the issue at trial."). "An affirmative defense has been described as '[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law.'" *Id.* (quoting 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985)). "In determining whether a particular argument is an affirmative defense, courts consider 'the logical relationship between the defense and the cause of action,' and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Id.* (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)).

Based on these precepts, the Eleventh Circuit is clear that "an issue not directly related" to a defendant's liability for the "real subject of the litigation" is an affirmative defense. *Id.* This means that "defenses which relieve liability" *and* "defenses that diminish damages" are affirmative defenses that must be identified and pled in an answer. *Fredrick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000); *see also Hassan*, 842 F.2d at 263 (holding that collateral sources defense, which defendant asserted in an attempt to reduce damages, was an affirmative defense). So, too, must a defendant specifically plead any defenses that would reasonably lead an opposing party to seek discovery or more information in order to assess their merit. *See*, *e.g.*, *Poole v. Dhanraj Amrit, Jungle Trans, LLC*, 2018 WL 6380792, at *4 (N.D. Ga. 2018) (finding that defendant waived defense where it "substantially participated in the litigation without pursuing this defense," including

4

just six months of discovery); *Kipperman v. Onex Corp.*, 411 B.R. 805 (N.D. Ga. 2009) (finding defense waiver where plaintiff repeatedly sought to elicit information about any affirmative defenses the defendants might assert and defendants stayed quiet).

Although Mr. Cupit is unaware of any Eleventh Circuit opinion directly holding that a wrong party/lack of successor liability defense is an affirmative defense, multiple Courts of Appeal, District Courts, and other courts throughout the country have come to exactly that conclusion. *See*, *e.g.*, *Jordan v. City of Baton Rouge*, 192 F.3d 125 (5th Cir. 1999) ("As the court noted, and the city does not dispute, failure to sue the proper party must be raised as an affirmative defense; if not, it is waived unless the court grants leave to amend the pleadings."); *Bokunewicz v. Purolator Products, Inc.*, 907 F.2d 1396, 1402 (3d Cir. 1990) ("failure to [plead the argument that the defendant was the wrong party] is a waiver of the defense unless leave of court is granted to amend under Fed. R. Civ. P. 15"); *Noel v. Terrace of St. Cloud, LLC*, 212 F. Supp. 3d 1193, 1204 (M.D. Fla. 2016) (lack of successor liability was properly pled as affirmative defense); *Roll v. Tracor, Inc.*, 26 F. Supp. 2d 482, 488-489 (W.D.N.Y. 1998) ("defendants have waived any failure of plaintiff to plead [successor liability] because defendants have not themselves raised successor liability as an affirmative defense nor did they file a pre-answer motion to dismiss"); *Denty v. SmithKline Beecham Corp.*, 907 F. Supp. 879, 882 (E.D. Pa.

1995), *aff'd*, 109 F.3d 147 (3d Cir. 1997) ("the defense of failure to sue the proper party is indeed considered to be an affirmative defense which must be pled in the defendant's answer"); *Celotex Corp. v. Tate*, 797 S.W.2d 197, Prod. Liab. Rep. (CCH) P 12673 (Tex. App. Corpus Christi 1990), *writ dismissed by agreement*, (Aug. 16, 1996) (noting that the defense of "no successor liability" is an affirmative defense, requiring it to be specifically pled).[1]

So it is here. In its Master Answer, 3M Company never denied Mr. Cupit's (or any other Plaintiff's) allegation that "Defendant 3M is liable for Aearo Defendants' conduct;" rather, 3M just said no response was required and largely dodged the allegation. *Compare* Master Complaint ¶ 21; *with* Amended Answer to Master Long Form Complaint (Dkt. 959) ¶ 21 ("Defendants object to the allegations in Paragraph 21 of the Master Complaint as they call for a legal conclusion and

---

[1] *See also Cao v. Flushing Paris Wedding Center LLC*, 2022 WL 219565, at *4 (E.D.N.Y. Jan. 25, 2022) (noting that counterclaim asserting the plaintiff sued the wrong party was really just mislabeled affirmative defense and allowing it to proceed as a defense on that basis) *In re Bullseye Holdings, LLC*, 2018 WL 4998089, at *1 (Bkrtcy. D. Del. Oct. 15, 2018) (successor liability pled as affirmative defense); *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 6393503, at *12 (N.D. Cal. Oc. 28, 2016) (declining to strike appropriately-pled affirmative defense that plaintiff sued wrong party); *Millentree v. TENT Restaurant Ops., Inc.*, 2008 WL 4559879, at *1 (W.D. Mo. Oct. 8, 2008) (noting defendant "claim[ed] as an affirmative defense that Plaintiff sued the wrong party in interest because" the defendant merged with another entity); *Harris Corp. v. McBride and Assocs., Inc.*, 2002 WL 1677695, at *3 (W.D.N.Y. July 19, 2022) (denying as futile "motion for leave to amend [defendant's] Answer to add the affirmative defense that plaintiff sued the wrong party" because it was not supported by any evidence).

therefore, no response is required. To the extent a response is required, Defendants admit that Aearo Technologies LLC is a successor of Aearo Company I. Defendants further admit that the Aearo Defendants are indirect, wholly-owned subsidiaries of 3M."). Then, in the "Defenses and Affirmative Defenses" section of its Answer, 3M never once mentioned successor liability or wrong party issues, despite listing 26 separate, detailed defenses there. Dkt. 959, at 94-101.

Adding to these pleading failures is that 3M demonstrated throughout discovery and throughout the bellwether process that it would *not* assert a successor liability or wrong party defense, or otherwise defend on the basis that 3M was not the fully liable party. At the parties' Rule 26(f) conference, for example, 3M stated that it, not the Aearo Defendants, was on the hook for all liabilities related to the CAEv2 and that Aearo had no employees. *See* Declaration of Jennifer Hoekstra dated August 4, 2022, filed herewith ¶¶ 5-7, *see* Hoekstra Decl., Ex. B & C. It then never again raised the issue nor even a whiff of the issue despite years of general discovery—discovery that included multiple 30(b)(6) depositions of 3M in which its corporate representative witnesses testified at length *on 3M's behalf* regarding pre-2008 events (*e.g.*, Mr. Berger's extensive Rule 30(b)(6) testimony, which was played or discussed at nearly every bellwether trial). In fact, in general discovery—which, at 3M's request, the Court eventually closed—*only* 3M verified interrogatory responses sent to all Defendants, *see* Hoekstra Decl., Exs. D, G, H, I, J, and key

witnesses were confused by the suggestion that Aearo was still an operating entity in any respect. *Id.*, Exs. E, L (testimony of Brian Myers). This is not surprising, given similar testimony in court and under oath that Aearo's headquarters had, in fact, been liquidated following the 2008 acquisition and that Aearo "ceased to exist." *Id.*, Exs. E, L.

3M similarly did not raise this issue even for bellwether trials that involved pre-2008 use of the CAEv2, such as the Adkins, Baker, Beal, Blum, Camarillorazo, Finley, Hacker, Keefer, Kelley, Montero, Palanki, Sloan, Stelling, Vaughn, Vilsmeyer, and Wayman trials. And, at the bellwether trials, the Court required the Defendants to have a corporate representative present. Who showed up? Only 3M's in-house counsel, Eric Rucker—the Aearo Defendants never sent a representative, because 3M was and remains the only defendant actually bearing liability. *See id.*, Exs. M thru V (examples of Court introductions of Mr. Rucker). Even today, 3M has studiously avoided stating in any filings—whether here or in the Bankruptcy Court—that it is anything but fully liable with respect to all asserted CAEv2-related liabilities.

For these reasons, 3M has waived any successor liability or wrong party defense, and it is within the Court's power to find now that it did so. *Hassan*, 842 F.2d at 263 ("If the party fails to raise an affirmative defense in the pleadings, the party generally waives its right to raise the issue at trial."). Such a ruling is

particularly necessary because this Court ordered general discovery closed at 3M's request; thus, any attempt by 3M to amend its master answer comes too late because it would severely prejudice Mr. Cupit and all other plaintiffs in this MDL. Mr. Cupit respectfully believes the Court should therefore rule to prevent 3M from abusing the bankruptcy process to invoke a defense it cannot make in his or any other future trials, because it has been waived.

### 2. **Judicial estoppel**

"Judicial estoppel is an equitable concept invoked at a court's discretion" and designed "to prevent the perversion of the judicial process." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citation omitted).[2] "Although the Supreme Court has noted that 'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,' *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (citations omitted), [the Eleventh Circuit] generally consider two factors." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to

---

[2] *See also Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 863 (N.D. Ala. 1999) (the judicial estoppel doctrine "precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted when inconsistency would allow the party to 'play fast and loose with the courts'") (*quoting Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361-62 (3d Cir. 1996)).

9

have been calculated to make a mockery of the judicial system." *Id.* (quoting *Burnes*, 291 F.3d at 1285 (citation omitted)).

There is no real question that 3M made multiple representations under oath that it does not intend to invoke a successor liability or wrong party defense against any CAEv2 plaintiff. In the 16 different bellwether trials, 3M, through its lawyers, signed pretrial briefs never once invoking these concepts. 3M similarly submitted jury instructions and jury verdict forms 16 different times staying quiet on these concepts. In trials involving pre-2008 CAEv2 use, such as the bellwether trials mentioned above, 3M submitted itself as a party that could (and did) bear full responsibility for pre-Aearo acquisition liability. And 3M argued that any supposed separation between the parties for liability purposes was "illusory,"[3] and would ignore "the reality that the Defendants are, in fact, for purposes of liability *in this case*, one and the same." *See Wayman*, 7:20-cv-149, Dkt. 194, at 3. In short, 3M represented to this Court again and again and again that it was fully liable for *all* CAEv2 liabilities, regardless of when they were incurred. Indeed, 3M confirmed this point at the recent July 27, 2022 hearing:

> THE COURT: All right. Also, during the three-and-a-half years this litigation has been pending, not once in this court has 3M ever questioned its legal responsibility for the alleged problems with the

---

[3] *See Vaughn*, 7:20-cv-134, Dkt. 179, at 10 ("3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate parties for purposes of *this litigation* illusory.") (emphasis in original).

>CAEv2. If there is something, please make me aware of it where you've asked me to resolve a dispute about 3M's responsibility.
>
>MR. NOMELLINI: We have not asked you to resolve a dispute on that issue, Your Honor.

7/27/22 Hr'g Tr. at 6:12-19.

As for whether its contrary suggestions now are "calculated to make a mockery of the judicial system," Mr. Cupit believes that is self-evident. At the Court-ordered mediation, the only corporate in-house representative to show up was 3M's in-house attorney; none of the Aearo Defendants sent separate counsel. The parties have engaged in years of discovery, which is now closed as to 3M and, albeit temporarily continued by agreement of the parties, may only proceed on case-specific discovery for each of the thousands of plaintiffs ready to proceed to trial. 3M's implied about face on successor liability/wrong party would clearly make a mockery of all that discovery, the 16 bellwether trials, and this Court's studious management of one of the largest mass torts in history. Accordingly, this factor is established as well.

For these reasons, 3M should be judicially estopped from now asserting before a different court that 3M is not fully liable for CAEv2-related injuries. Ruling that way will also benefit the Aearo Defendants by extricating them from their position as co-defendants in this MDL and permitting them to instead focus on the bankruptcy.

11

### B. Although unnecessary for a ruling here, Mr. Cupit also satisfies the other preliminary injunction factors

As noted above, Mr. Cupit believes that any ruling the Court makes on 3M's waiver and/or judicial estoppel need not be considered a request for preliminary injunction, but rather as a housekeeping ruling under the Court's inherent ability to manage its docket. But, even if the Court determines that Mr. Cupit must meet the other preliminary injunction factors (irreparable harm, balance of hardships, and whether an injunction is in the public interest), Mr. Cupit believes he satisfies those as well. So as not to repeat points currently before the Court, Mr. Cupit notes that he would suffer irreparable harm for the same reasons as articulated in Mr. Valle's pending preliminary injunction request. *See* Dkt. 3358-1, at 18-20. So, too, does Mr. Valle's motion identify reasons that the balance of hardships clearly fall in Mr. Cupit's favor, and why an injunction would benefit the public interest. *Id.* at 20-22.

Mr. Cupit further notes that 3M clearly would not suffer any hardship from the requested relief, because this motion does not seek to alter the *status quo* as to 3M; it simply seeks a ruling that 3M may not now invoke a defense it never previously raised, even through 16 different bellwether trials. And the alternative is to allow 3M to make implied arguments to a different court that will be (and have been) used to argue that Mr. Cupit and every other CAEv2 plaintiff should be foreclosed indefinitely from pursuing their claims here, where the Court has set a schedule to achieve finality in the near term.

## III. <u>CONCLUSION</u>

3M's gambit is a cynical ploy to spring a new defense on plaintiffs well beyond the eleventh hour in an effort to deprive this Court of its ability to continue managing this years-long MDL. Such a ploy directly contradicts the Federal Rules of Civil Procedure and all notions of fair play in our federal court system. Mr. Cupit therefore respectfully requests that the Court rule 3M has waived and/or is judicially estopped from arguing it bears anything but full liability for CAEv2-related injuries. Doing so will allow Mr. Cupit and all other plaintiffs like him to drop the Aearo Defendants from these cases and permit this MDL to proceed in a streamlined fashion against 3M, consistent with 3M's position thus far in the MDL.

DATED: August 4, 2022        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Adam B. Wolfson*
Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Matthew Hosen (*pro hac vice*)
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

*Attorneys for Plaintiff Guy Cupit*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Adam B. Wolfson*
Adam B. Wolfson (*pro hac vice*)
