EXHIBIT A

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|   |   |   |
|---|---|---|
| IN RE 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL DOCKET NO. 2885 |

**DEFENDANT 3M COMPANY'S RESPONSE TO THE MOTION TO TRANSFER
RELATED ACTIONS FOR COORDINATED PRETRIAL PROCEEDINGS**

3M Company ("3M") supports centralization of the more than two hundred Combat Arms Earplug actions that have been filed against it to date (the "Related Actions"), and the "thousands" of additional similar cases plaintiffs' counsel have stated they intend to file in the future. The complaints in the Related Actions are nearly identical and involve numerous questions that, once resolved, may—and likely will—be dispositive of many of the claims. Given this overlap, centralization pursuant to 28 U.S.C. 1407 will "eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* issues and other pretrial matters, . . . conserve the resources of the parties, their counsel, and the judiciary," and facilitate the coordination of any related state court litigation. *In re Farxiga (Dapagliflozin) Prod. Liab. Litig.*, 273 F. Supp. 3d 1380, 1382 (J.P.M.L. 2017).

3M also agrees with plaintiff's suggestion in the MDL transfer motion that the Related Actions be transferred to the District of Minnesota. (*See* Docket No. 1, at ¶ 5; Docket No. 1-1, at 1, 3.) As noted therein, "the District of Minnesota is the most appropriate forum" because 3M has its "principal place[] of business there" and "relevant documents and witnesses are located there." (*Id.*) Moreover, consolidation in the District of Minnesota will facilitate the coordination of related

state court cases, many of which are presently pending in Minnesota at a courthouse less than half a mile from the federal courthouse in downtown Minneapolis.  Finally, as the Panel has previously recognized, the District of Minnesota is a "centrally located" venue for nationwide litigation, and "possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that [a] complex [MDL] docket is likely to require." *In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001).

In sharp contrast to this principled suggestion, the venues and judicial picks suggested in various plaintiffs' responses to the MDL transfer motion—including the Eastern District of Louisiana, the Western District of Missouri, the Southern District of California, the Central District of California, the Middle District of Georgia, the Eastern District of Pennsylvania, the District of South Carolina, the Northern District of Florida, the Southern District of Georgia, and the Western District of Texas—have no more connection to the issues and evidence in this litigation than any other district, and certainly less than the District of Minnesota.  Plaintiffs offer no principled reason why the cases should be transferred to these venues.  Rather, as certain plaintiffs have stated, their preference for some of these forums is driven by the desire to consolidate the cases in a district with a large military presence or in front of a judge with military experience.  But selecting one district with a military presence over another would inequitably favor those plaintiffs over others with similar claims who happened to be located on or near a different military base.  Plaintiffs provide no reasonable justification for making such a preferential selection over a forum that is centrally located and would not objectively favor some plaintiffs over others.  Forum shopping for an MDL jurisdiction should be rejected.  *See* MULTIDISTRICT LITIGATION MANUAL § 7:7 ("The Panel does not give the parties an opportunity to judge-shop . . . . The Panel is quite ready to ignore the positions taken by the parties, especially when the odor of forum shopping is

present."). In short, the District of Minnesota is a far more appropriate district to manage this MDL.

## BACKGROUND

The Related Actions assert products liability claims against 3M—and, in some cases, Aearo Technologies Inc. ("Aearo")—related to the Combat Arms Earplugs. Plaintiffs in the Related Actions allege, among other things, that the earplugs were defective in that the design prevented a snug fit in the wearer's ear, which purportedly caused hearing loss or tinnitus. (*E.g.*, Docket No. 1-1, at 4-5; Docket No. 11, at 3.) To date, 3M is aware of 222 Related Actions filed in federal district courts across the country.[1]

### A. 3M Company and Aearo Technologies Inc.

3M is headquartered in St. Paul, Minnesota. The company was founded in 1902 in Minnesota as a mining venture, and began expanding in the 1920s into other products. 3M currently produces more than 60,000 products used in homes, businesses, hospitals and other industries.

3M acquired Aearo in 2008. At that time, Aearo was a global leader in personal protection equipment headquartered in Indianapolis, Indiana. The acquisition added, among other things, hearing protection, eyewear protection, and fall protection to 3M's product lines, including the Combat Arms Earplugs.

### B. Version 2 of the Combat Arms Earplugs.

The specific model at issue in the Related Actions is version 2 of the Combat Arms Earplugs ("CAE2"). CAE2 is a dual-sided earplug with a yellow end and green end. Each end

---

[1] Contemporaneously with this filing, 3M is filing a Notice of Related Actions listing those Related Actions 3M is presently aware of that have not been separately identified in other Notices of Related Actions filed to date.

3

has a different purpose. When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire. In contrast, when the green end of the earplug is inserted, CAE2 acts like a traditional earplug, providing steady and continuous protection from ambient noise.

CAE2 was designed by Aearo at the request of and in consultation with the United States military. CAE2 represented a revolutionary breakthrough in hearing protection for the military in that it was the first product to offer differential attenuation with constant impulse noise protection. Thus, soldiers wearing CAE2 could maintain situational awareness (*e.g.*, to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel sounds. After acquiring Aearo in 2008, 3M continued to sell CAE2 through 2015.

### C. The MDL Transfer Motion Seeks Consolidation In The District Of Minnesota.

On January 25, 2019, a Related Action plaintiff filed a motion with the Panel to transfer the Related Actions to the District of Minnesota for coordinated pretrial proceedings. (Docket No. 1.) The moving plaintiff notes, among other things, that "[t]he District of Minnesota is the most appropriate venue because . . . Defendant[] 3M … ha[s] [its] corporate headquarters and principal place[] of business in the District of Minnesota, and it is thus where the relevant documents and witnesses are located." (*Id.* at ¶ 5.) Since then, numerous other plaintiffs have filed responses also supporting consolidation in the District of Minnesota for the same (and additional) reasons. (Docket No. 60; Docket No. 70; Docket No. 72; Docket No. 87.)

### D. Other Plaintiffs Seek Consolidation In Districts With No Particular Connection To The Issues And Evidence In These Cases.

Although the MDL transfer motion acknowledges that the District of Minnesota is "the most appropriate venue," and 3M and other plaintiffs agree with that position, counsel for certain Related Action plaintiffs have suggested that the MDL should instead be located in one of several

4

other districts with no particular connection to the issues or evidence in these cases. In particular, plaintiffs have to date suggested that Related Actions be transferred to: the Eastern District of Louisiana (*see* Docket Nos. 6, 49); Judge Bough in the Western District of Missouri (*see* Docket Nos. 11, 33, 91); the Southern District of California (*see* Docket No. 11); Judges Staton, Guilford, Selna or Carter in the Central District of California (Docket No. 55); the Middle District of Georgia (Docket No. 65); the Southern District of Georgia (Docket No. 82); Judges Schiller, Sanchez, Goldberg, or Joyner in the Eastern District of Pennsylvania (Docket No. 68, 90); the District of South Carolina (Docket No. 77, 83); Judge Rodgers in the Northern District of Florida (Docket No. 80); and the Western District of Texas (Docket No. 92).

## ARGUMENT & AUTHORITIES

**I. TRANSFER FOR CONSOLIDATED PRETRIAL PROCEEDINGS IS APPROPRIATE.**

Coordination for pretrial purposes is appropriate where "civil actions involving one or more common questions of fact are pending in different districts." 28 U.S.C. § 1407(a). "Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues[.]" *In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007). Rather, coordination is appropriate where there is an "overlap in the central factual issues, parties, and claims." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litg.*,, 201 F. Supp. 3d at 1375, 1378 (J.P.M.L. 2016).

3M agrees that coordination is appropriate here. ***First***, 3M is aware of 222 Related Actions filed to date, and plaintiffs' counsel have stated their intention of filing "thousands" of additional Related Actions in the future. (*E.g.*, Docket No. 1-1, at 3.) All of the Related Actions allege products liability claims against 3M on behalf of U.S. military personnel who allegedly now suffer

5

from hearing loss and/or tinnitus.[2]  ***Second***, coordination of the Related Actions would be "convenien[t] … [for the] parties and witnesses" and "promote the just and efficient conduct of such actions" (28 U.S.C. 1407) by, among other things, "eliminat[ing] duplicative discovery, prevent[ing] inconsistent rulings on *Daubert* and other pretrial matters, and conserv[ing] the resources of the parties, their counsel, and the judiciary." *Farxiga*, 2017 WL 1282904 at 1382; *see also In re: Plasma-Derivative Protein Therapies Antitrust Litig.*, 657 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009.)  Accordingly, 3M supports consolidation of the Related Actions for coordinated pretrial proceedings.[3]

## II. THE DISTRICT OF MINNESOTA IS THE MOST APPROPRIATE FORUM FOR THIS LITIGATION.

3M also agrees with the suggestion in the MDL transfer motion that "[t]he District of Minnesota is the most appropriate forum." (Docket No. 1-1, MDL Transfer Motion at 3.)  To date, over 20 Related Actions have been filed in the District of Minnesota.  Numerous relevant factors weigh in favor of consolidating the other Related Actions in that venue.

***First***, the District of Minnesota has a "nexus" to the litigation because it is the location of the defendant and relevant evidence.  As noted in the MDL transfer motion, 3M is headquartered

---

[2] Two of the Related Actions—*Lynch et al v. 3M Company*, 19-cv-00273-RC (D.D.C.) and *Mathis et al v. 3M Company*, 19-cv-20606-UU (S.D. Fl.)—are putative class actions.  Although not appropriate for class certification, these cases raise many of the same factual issues as the other Related Actions, and thus warrant consolidation in a single forum for the same reasons, including "eliminat[ing] duplicative discovery, prevent[ing] inconsistent rulings on *Daubert* and other pretrial matters, and conserv[ing] the resources of the parties, their counsel, and the judiciary." *Farxiga*, 2017 WL 1282904 at 1382.

[3] In its order setting a briefing schedule, the Panel directed the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)."  (Docket No. 3.)  Given the volume of presently filed Related Actions—and the expected "thousands" of additional Related Actions (*e.g.*, Docket No. 1-1, at 3)—informal coordination and other alternatives to centralization are not practicable.

6

in St. Paul, Minnesota, and "relevant documents and witnesses are located there." (Docket No. 1-1, at 1.) This nexus weighs heavily in favor of transfer to the District of Minnesota. *See e.g.*, *In re Delphi Corp. Sec., Derivative & ""Erisa" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (selecting district with "a significant nexus to the litigation" because "[t]his district is where many relevant documents and witnesses are likely to be found, inasmuch as [defendant's] principal place of business is located there."); *In re: Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 818 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (selecting the district with "a nexus to the allegations given the location of the defendants there, and relevant documents and witnesses likely will be found there.").[4] This is particularly true where, as here, centralization in the district with a nexus to the litigation is supported by numerous plaintiffs, including the moving party. (*See* Docket No. 1, at ¶ 5 (moving plaintiff advocating for the District of Minnesota); Docket Nos. 60, 70, 87 (responding plaintiffs advocating for the District of Minnesota); *see also In re: Verizon Wireless Data Charges Litig.*, 701 F. Supp. 2d 1380, 1382 (J.P.M.L. 2010) ("Common defendant Verizon Wireless has its headquarters in New Jersey, giving the district a clear nexus to the allegations,

---

[4] *See also In re Polyurethane Foam Antitrust Litig.*, 753 F.Supp.2d 1376 (J.P.M.L., 2010) (choosing a district that has a "nexus to the litigation through the location of the headquarters of [one of the defendants]"); *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1361 (J.P.M.L. 2017) (selecting the district "near [defendant's] corporate headquarters [], where many of the common documents and witnesses are likely to be located"); *In re Mirena IUD Prod. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013) (selecting district where "the primary witnesses and documentary evidence on the common factual issues likely will be located"); *In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.,* , 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) (transferring to district in which defendant was headquartered and "where relevant documents and witnesses are likely to be found"); *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (selecting Eastern District of Kentucky because "[r]elevant documents and witnesses likely are located within the Eastern District of Kentucky at defendant Xanodyne's Newport headquarters.").

7

and centralization in the District of New Jersey has the support of moving plaintiffs, defendant Verizon Wireless, and plaintiff in an action pending outside the district.").[5]

***Second***, the District of Minnesota has extensive experience managing complex MDLs, and is well-equipped to handle this large and complex action. The Panel has transferred over 45 MDLs to the District of Minnesota, including at least fourteen involving products liability cases.[6] Nine of the fourteen judges in the District of Minnesota have presided over MDLs,[7] and one of the fourteen judges has an active MDL in which 3M is a defendant. *See Bair Hugger Forced Air Warming Devices Products Liability Litigation*, MDL No. 2666 (Ericksen, J.). As the Panel has previously recognized, the District of Minnesota "possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that [a] complex [MDL] docket is likely to require." *In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d at 1380.

Certain plaintiffs have argued that other districts are more appropriate because they have fewer active MDLs, and can thus "take on the potential caseload of this litigation." (Docket No. 11, at 11-12; *see also* Docket No. 6, at 5-6.) Any concerns regarding the District of Minnesota's capacity for an additional MDL are unfounded. Six of the ten MDLs currently pending in the

---

[5]   *See also In re: Brican Am. LLC Equip. Lease Litig.*, 731 F. Supp. 2d 1358, 1359 (J.P.M.L 2010) ("The Southern District of Florida has a nexus to the actions given the presence of Brican in that district, and centralization in this district has the support of plaintiffs in both Southern District of Florida actions as well as the Brican defendants.").

[6]   *Multidistrict Litigation Terminated Through September 30, 2018*, at 33-34 (available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2018.pdf); *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, at 3 (available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2019.pdf).

[7]   *Id.*

8

District of Minnesota have fewer than 25 active cases; four have fewer than three; and two have zero.[8] In any event, numerous of the judges in the District of Minnesota do not presently have an MDL, and each would make an excellent choice to manage this litigation. *Cf. In re: Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 818 F. Supp. 2d 1377, 1378 (J.P.M.L 2011) (selecting a district that both "has a nexus to the allegations given the location of the defendants [] and relevant documents," and "also permits the Panel to assign the litigation to a judge who is not presently presiding over other multidistrict litigation.").

***Third***, transfer to the District of Minnesota would promote state and federal coordination. Four first-filed state court cases are pending in Hennepin County, Minnesota, at a courthouse less than half a mile from the federal courthouse in downtown Minneapolis. 3M may seek removal in these (and any future) state court cases. However, to the extent they remain or are remanded, these first-filed state court cases are the most likely to outpace and disrupt the MDL in the absence of coordination. The potential benefits of preempting any conflicts through close coordination by the courts in Minneapolis is another factor weighing in favor of consolidation in the District of Minnesota. *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) (noting that a Washington state court action "could, if appropriate, be coordinated with the federal actions," which "is another factor favoring the selection of the Western District of Washington.").[9]

---

[8] *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, at 2-3 (available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2019.pdf).

[9] *See also In re Internal Revenue Serv. 1031 Tax Deferred Exch. Litig.*, 528 F. Supp. 2d 1343, 1344 (J.P.M.L 2007) ("Nevada is also the location of related state court proceedings, and centralization in the District of Nevada will enhance the potential for coordination between the state and federal courts regarding this matter."); *In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478–79 (J.P.M.L. 1979) ("Additionally, the related actions that are pending in the Illinois state courts can be coordinated with the federal proceedings

9

***Finally***, the District of Minnesota is a convenient forum for all parties, witnesses, and their counsel, who are scattered across the country. A major international airport serves Minneapolis and St. Paul. It handles over 400,000 flights per year, provides nonstop service to 136 domestic and 27 international markets, and was named the 2017 top North American airport for efficiency excellence in its size category by the Air Transportation Research Society. (*See* http://mspairport.com/about-msp). Two federal courthouses in the district are located less than ten miles from this airport. Thus, as the Panel has previously recognized, "Minnesota is a geographically central and accessible location" for nationwide litigation. *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994); *see also In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d at 1380 (transfer to the District of Minnesota "permits the Panel to effect the Section 1407 assignment to a major metropolitan court that," among other things, "is centrally located.").[10]

\*  \*  \*

In sum, transfer to the District of Minnesota is the most logical choice for an MDL because it is the only suggested venue that has a nexus to the litigation, it has numerous qualified judges and extensive experience handling MDLs in general (and products liability MDLs in particular),

---

there. The possibility of promoting this state/federal coordination is another factor favoring the selection of the Northern District of Illinois as the transferee forum."); *In re Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig.*, 289 F. Supp. 3d 1350, 1353 (J.P.M.L. 2018) ("Centralization in [the Central District of California] also will facilitate coordination with California state court litigation involving the same alleged defect.").

[10]     *See also In re: Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 536 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) ("Because Medtronic has its headquarters within the District of Minnesota, relevant discovery may be found there. Transfer to this district also provides a centrally located forum for actions filed in several locations nationwide."); *In re: Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338, 1339 (J.P.M.L. 2014) ("[T]he District of Minnesota is easily accessible and relatively centrally located for the parties to this litigation, which is nationwide in scope.").

transfer will promote federal and state court coordination, and Minneapolis/St. Paul is centrally located, with two federal courthouses near a major international airport.

### III. THE MIDDLE DISTRICT OF TENNESSEE WOULD ALSO BE AN APPROPRIATE FORUM.

Several non-movant plaintiffs have objected to consolidation in the District of Minnesota, including on the grounds that it is 3M's home district. (*E.g.*, Docket No. 11, at 3; Docket No. 77, at 5-6.) However, the convenience of the parties and the location of relevant evidence weigh *in favor* of consolidation in that district, and not against it. But to the extent the Panel is inclined to consider a different forum, then the Middle District of Tennessee would be an appropriate "neutral" choice for several reasons.

*First*, the Middle District of Tennessee is well-equipped to handle and manage these large and complex actions, and has experience managing complex MDLs. The Panel has transferred at least 9 prior MDLs to the Middle District of Tennessee, including at least one large products liability MDL.[11] Two of the four judges in the Middle District of Tennessee have presided over MDLs.[12] And none of the four judges are presently presiding over an active MDL.[13]

*Second*, like the District of Minnesota, the Middle District of Tennessee is centrally located and convenient for all parties and witnesses. An international airport services Nashville, and provides nonstop service to more than 65 domestic and international markets. (*See*

---

[11] *Multidistrict Litigation Terminated Through September 30, 2018*, at 28 (available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2018.pdf).

[12] (*Id.*)

[13] *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, at 3 (available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2019.pdf)

11

https://www.flynashville.com/flights/pages/default.aspx.) This airport is less than 10 miles from the federal courthouse in downtown Nashville.

*Third*, the Middle District of Tennessee is "neutral" *not only* as between 3M and plaintiffs, but *also* as between the various competing plaintiff groups. Several of the responses to the MDL transfer motion argue for a particular district on the grounds that it contains a military base and thus a large cluster of potential plaintiffs. (*E.g.*, Docket No. 11, 12-13 (arguing that the Western District of Missouri is close to a large military base); Docket 55, at 3-4 (arguing that the Central District of California is close to many military bases).) These arguments provide no good reason to select one group of plaintiffs over another. Selecting the Middle District of Tennessee allows the Panel to avoid that problem entirely because—in addition to not being 3M's "home" district—it is not the "home" location of any group of responding plaintiffs. *Cf. In re Diet Drugs Prod. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) ("With respect to selection of the transferee district, we note that this is truly a nationwide litigation in which no particular district or region emerges as the geographic center of gravity.")

*Finally*, although there are no cases pending in the Middle District of Tennessee, "that is no impediment to its selection as a transferee district," particularly where, as here, the litigation is nationwide in scope, and thus almost every district other than Minnesota has the same level of connection to the proceedings. *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prod. Liab. Litig.*, 996 F. Supp. 2d 1380, 1382-83 (J.P.M.L 2014). Although 3M believes that the District of Minnesota has the greatest connection to this litigation, to the extent the Panel is inclined to look for a neutral forum elsewhere, 3M submits that the Middle District of Tennessee is a very strong option.

12

## IV. THE FORUMS PROPOSED IN OTHER RESPONSES ARE NOT APPROPRIATE FOR THIS LITIGATION.

Certain non-movant plaintiffs have filed responses contending that the Panel should transfer the MDL to one of several alternative forums (and in some cases particular judges within those forums). Suggestions to date include the Eastern District of Louisiana (*see* Docket Nos. 6, 49); Judge Bough in the Western District of Missouri (*see* Docket Nos. 11, 33, 91); the Southern District of California (*see* Docket No. 11); Judges Staton, Guilford, Selna or Carter in the Central District of California (Docket No. 55); the Middle District of Georgia (Docket No. 65); the Southern District of Georgia (Docket No. 82); Judges Schiller, Sanchez, Goldberg, or Joyner in the Eastern District of Pennsylvania (Docket No. 68, 90); the District of South Carolina (Docket No. 77, 83); Judge Rodgers in the Northern District of Florida (Docket No. 80); and the Western District of Texas (Docket No. 92). These venues have no particular connection to this litigation. Rather, as certain plaintiffs have stated, their preference for some of these forums is driven by the desire to consolidate the cases in a district with a large military presence or in front of a judge with military experience. But selecting one district with a military presence over another would inequitably favor those plaintiffs over others with similar claims who happened to be located on or near a different military base. Plaintiffs provide no reasonable justification for making such a preferential selection over a forum that is centrally located and would not objectively favor some plaintiffs over others. Forum shopping for an MDL jurisdiction (or a particular judge) is improper and should be rejected. *See* MULTIDISTRICT LITIGATION MANUAL § 7:7.

## CONCLUSION

For all of the foregoing reasons, 3M agrees with plaintiff's suggestion in the MDL transfer motion that the Related Actions be transferred to the District of Minnesota for coordinated pretrial proceedings.

Date:   February 19, 2019                              Respectfully submitted,


                                                       KIRKLAND & ELLIS LLP


                                                       By: /s/ Kimberly O. Branscome
                                                       Kimberly O. Branscome
                                                       KIRKLAND & ELLIS LLP
                                                       333 South Hope Street
                                                       Los Angeles, CA 90071
                                                       Telephone: (213) 680-8400
                                                       Facsimile: (213) 680-8500
                                                       Email: kimberly.branscome@kirkland.com

                                                       *Attorney for Defendant*
                                                       3M Company

14