EXHIBIT I

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION, | ) ) ) | Case No. 3:19-md-02885 |
| | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Gary R. Jones |
| This Document Relates to All Cases | ) ) | |
| | ) | **CONFIDENTIAL - SUBJECT TO** |
| | ) | **PROTECTIVE ORDER** |
| _____ | ) | |

**DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure and the Court's

April 10, 2020 Order (Dkt. 1085), Defendants serve these Supplemental Responses and Objections

to Plaintiffs' First Interrogatories dated August 28, 2019.  Defendants' investigation of facts and

information relating to these interrogatories is continuing, and Defendants reserve the right to

modify, amend, or supplement their responses as discovery continues, including discovery from

the U.S. Government and other third parties.

**INTERROGATORY NO. 3:**

Please identify each version of the 3M Earplugs (and any predecessor or successor design),
together with its (i) brand name(s); (ii) internal name(s), product code(s), or product identifier(s);
(iii) external product identifier(s), including product or part number(s), SKU(s), National Stock
Number(s), or P/N(s); (iv) date(s) of first and last sale; (v) number of units sold to domestic
purchasers; (vi) number of units sold to the U.S. Government, broken down by number of units
sold to each entity, agency, bureau, division, branch, or other subpart thereof; (vii) number of units
sold to foreign purchasers, by country of purchase.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants object to this interrogatory as vague, ambiguous, overbroad, unduly

burdensome and disproportional to the needs of the case to the extent it seeks information

regarding "any predecessor or successor design."  Defendants further object to this interrogatory

as unduly burdensome to the extent it seeks voluminous sales information that is equally available to both parties from the documents produced in this litigation subject to the agreed TAR protocol. Subject to and without waiving their objections, Defendants will: (i) identify the brand name(s), internal name(s), product, and the SKU and/or national stock number(s) for the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use; and (ii) produce documents sufficient to identify relevant sales histories for those products.

*Combat Arms Earplug version 2*:

Brand/Internal Name:    Combat   Arms   Earplug   version   2;   CAEv2; Bumblebee

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| 370-1000<br><br>ND-370-1000 | 70071521218<br><br>70071613031<br><br>JH200153569 | 6515-01-466-2710 |
| 370-1002 | 70071529468 | |
| 370-1011 | 70071521226<br>XH000712139 | 6515-01-466-2710 |
| 370-ALPHA | 70071557162 | |
| 370-1012 | | |
| 370-1200 | 7000052748 | |

*ARC Plug:*

Brand/Internal Name:  E-A-R™ ARC Plug™

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|

2

| 370-2000 | 70071521275 | |
| | 70000052749 | |
| 370-2001 | 70071538329 | |

*Indoor/Outdoor Range Plug:*

Brand/Internal Name:  Indoor/Outdoor Range; Peltor Combat Arms; Hear-Through

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| 97079-10C | 70006945201 | |
| 97079-00000 | 70005064715 | |

Relevant sales histories for these products can be found in documents bearing Bates numbers:    3M_MDL000393649;    3M_MDL000393648;    3M_MDL000393647; 3M_MDL000393646; 3M_MDL000393651.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Defendants further identify the brand name(s), internal name(s), product, and the SKU and/or national stock number(s) for the Browning Duo Earplugs.

*Browning Duo Earplugs:*

Brand/Internal Name:  Browning Duo; Duo Earplugs

Product, SKU, and/or National Stock Numbers:

| Product Number | SKUs | NSN |
|---|---|---|
| Browning Duo | 70005065381 | |

Relevant sales history for the Browning Duo Earplug can be found in documents previously produced at 3M_MDL000425745.

**INTERROGATORY NO. 13:**

Please identify any scientists, audiologists, physicians, medical professionals, professional associations, or other organizations or persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any … persons that you paid or compensated in any way for speaking about, researching, publishing about, or otherwise promoting any HPD," which, read literally, would cover not only (i) any current or former employee who has ever discussed a hearing protection device, but also, among other things, (ii) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, and (iii) every attorney who has ever represented Defendants in litigation regarding a hearing protection device.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "any HPD" other than Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks "the amount of such compensation, … and the identity of any specific

4

programs, speaking engagements, or presentations for which you provided direct or indirect compensation." Defendants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify individuals identified to date that may have spoken about or promoted the Combat Arms Earplug version 2 or any like-design dual-ended earplugs sold by Defendants for civilian use at industry trade shows or in a marketing capacity.

1. Elliott Berger.

2. Mike Cimino.

3. Mike Edwards

4. Dawn Gasaway.

5. Frank Gavin.

6. Mike Harrison.

7. Tim McNamara.

8. Doug Ohlin.

9. Laurie Wells.

10. Brian Myers.

11. Doug Moses.

12. Marc Santoro.

13. Ron Throndsen.

14. Eric Miller.

15. Ronda Notter.

16.     Pete Murphy.

17.     Marty Salon.

18.     Dave Savage.

19.     Theresa Schultz.

20.     Tom Thompson.

21.     Bill Venazza.

22.     Larry Mitsch.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Elliott Berger is a former employee whose job responsibilities included researching, publishing on, and speaking about hearing protection devices. Mr. Berger regularly participated in professional conferences and committees, gave lectures on hearing protection and conservation, taught classes and seminars on hearing protection and conservation, and regularly published on various aspects of hearing protection and conservation. A more detailed description of those activities can be found on Mr. Berger's resume, which was previously produced at BERGERSUBPOENA0001-0005. Through his retirement in 2018, Mr. Berger was a salaried employee and did not receive any particular compensation (beyond his regular salary) for these activities.

Mike Cimino, Mike Edwards, Frank Gavin, Mike Harrison, Tim McNamara, Brian Meyers, Doug Moses, Marc Santoro, Ron Throndsen, Eric Miller, Ronda Notter, Pete Murphy, Marty Salon, Dave Savage, Tom Thompson, and Bill Venazza are current or former employees

whose job responsibilities included sales or marketing of hearing protection devices and promotional activities incidental thereto, such as attendance at trade shows and/or interaction with customers. These individuals were salaried employees and did not receive any particular compensation (beyond their regular salary) for these activities.

Don Gasaway is a former employee whose job responsibilities included sales of hearing protection devices and promotional activities incidental thereto, including customer interactions. Mr. Gasaway also taught classes and gave lectures on hearing protection and conservation, including by teaching the EAR Clinic alongside Elliott Berger from approximately 1994 to 2000. During the time period of his employment, Mr. Gasaway was a salaried employee and did not receive any particular compensation (beyond his regular salary) for these activities. Defendants are investigating whether, prior to 1994, Mr. Gasaway worked as an independent contractor for Aearo, and, if so, what, if any, compensation he was provided for any similar services provided during that time period.

Doug Ohlin is a former independent contractor whose responsibilities included speaking about hearing protection and conservation, as well as sales of hearing protection devices and promotional activities incidental thereto, including customer interactions. Dr. Ohlin participated in trade shows and professional conferences. Defendants compensated Dr. Ohlin at an hourly rate between $85 and $115. Defendants refer Plaintiffs to Dr. Ohlin's invoices previously produced at 3M_MDL000258162-167; 3M_MDL000360109; 3M_MDL000258170-171; 3M_MDL000269168; 3M_MDL000491549; 3M_MD000347748; 3M_MDL000273085-86; 3M_MDL000273175; 3M_MDL000273262; 3M_MDL000273391; 3M_MDL000268758; MDL000268879; 3M_MDL000269546; 3M_MDL000273767; 3M_MDL000269089; 3M_MDL000268625; 3M_MDL000269680; 3M_MDL000346104; 3M_MDL000490451;

7

3M_MDL000270333;   3M_MDL000271090;   3M_MDL000546813;   3M_MDL000272519;
3M_MDL000271762;   3M_MDL000026710;   3M_MDL000547214;   3M_MDL000282080;
3M_MDL000617256;   3M_MDL000283556;   3M_MDL000281646;   3M_MDL000281588;
3M_MDL000285158.

Laurie Wells is a current employee whose job responsibilities include working with regulatory issues regarding hearing protection and hearing conservation.  Dr. Wells participates in professional conferences and committees, gives lectures on hearing protection and conservation, and teaches classes and seminars on hearing protection and conservation.  Dr. Wells is a salaried employee and does not receive any particular compensation (beyond her regular salary) for these activities.  Prior to her employment with 3M, Dr. Wells was an independent contractor that taught a portion of the EAR Clinic alongside Elliott Berger beginning in approximately 2006.  During that time period, she was compensated at a rate of $3000 per clinic.  Defendants refer Plaintiffs to the decks used by Dr. Wells in connection with the EAR Clinics, which were previously produced at  3M_MDL000478757;  3M_MDL000463832;  3M_MDL000463834;  3M_MDL000696112;
3M_MDL000696122;   3M_MDL000696127;   3M_MDL000494831;   3M_MDL000463835;
3M_MDL000636643;   3M_MDL000463836;   3M_MDL000463837;   3M_MDL000463838;
3M_MDL000463840;   3M_MDL000696128;   3M_MDL000465522;   3M_MDL000465524;
3M_MDL000465526; 3M_MDL000696217; 3M_MDL000515947; 3M_MDL000440492.

Theresa Schulz taught a portion of the EAR Clinic alongside Elliott Berger from approximately 2001 to 2006.  Defendants are investigating the compensation, if any, paid to Schulz for this work.  Defendants refer Plaintiffs to the decks used by Schulz in connection with the EAR Clinics, which were previously produced at 3M_MDL000513509;  3M_MDL000436748;

3M_MDL000677041;   3M_MDL000436751;   3M_MDL000513511;   3M_MDL000501746;

3M_MDL000465528.

Larry Mitsch was a third-party marketing consultant who developed sales and marketing materials for the Combat Arms Earplug.  Mitsch was compensated for his work on a per-project basis.  Defendants are investigating the specific compensation paid to Mitsch for this work.

**INTERROGATORY NO. 14:**

Please identify any external experts, consultants, scientists, physicians, medical professionals, thought leaders, academics, or key opinion leaders, who you have compensated for work promoting or otherwise distributing information regarding the risk of auditory injury, and/or the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise, together with the amount of such compensation, the person's role, and the identity of any specific programs, speaking engagements, or presentations for which you provided direct or indirect compensation.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendants object to the terms "thought leaders" and "key opinion leaders" as vague and ambiguous.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case, including because, read literally, it would cover not only (i) every external marketing professional that has ever assisted Defendants with an advertisement regarding a hearing protection device, but also (ii) every consulting or testifying expert who has ever researched or opined on hearing loss or hearing protection devices in the context of litigation. Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding "the importance of hearing conservation programs and hearing protection devices, whether to the government, the public, or otherwise," without any particular connection to the Combat Arms Earplug version 2, any like-design dual-ended earplugs sold by Defendants for civilian use, or the specific issues at issue in this litigation.  Defendants further object to this interrogatory to the extent it seeks

9

information protected by the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert privilege, or any other applicable privilege, exemption, or immunity. Subject to and without waiving their objections, Defendants are not presently aware of any individuals responsive to this interrogatory beyond those identified in response to Interrogatory No. 13.

Discovery in this case is ongoing, including discovery from the military and other third parties. Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Defendants refer Plaintiffs to their supplemental response to Interrogatory No. 13.

**INTERROGATORY NO. 15:**

Please identify all studies, including NRR, REAT, physical measurement, acoustic test fixture, walk-up, and impulse noise studies, regarding 3M Earplugs and any predecessor, successor, and/or alternative designs that use any aspect of the technologies used in the 3M Earplugs, including flanges, level dependence, or non-linearity technologies, mechanisms or filters, or that involved a comparison between an HPD's design and the design of the 3M Earplugs. For each study identified, please provide, if applicable, (i) the study's name and study number; (ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of Defendants in the study, including any direct or indirect financial support or compensation of any kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results, including final and draft reports, amendments to protocols, and any study data not included in the final study report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S. Government and the Bates number of those documents constituting such transmittal.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding hearing protection devices other than the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use. Defendants also object to this interrogatory as

overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks

voluminous information regarding each study—including "(i) the study's name and study number;

(ii) the study's date; (iii) the identity of all investigators, authors or experimenters involved in the

study; (iv) the number of study subjects; (v) the entity sponsoring the study; (vi) the role of

Defendants in the study, including any direct or indirect financial support or compensation of any

kind for the study; (vii) Bates numbers for documents constituting the study's protocol and results,

including final and draft reports, amendments to protocols, and any study data not included in the

final study report; and (viii) the date of transmittal of any items identified in part (vii) to the U.S.

Government and the Bates number of those documents constituting such transmittal"—which

would be unduly burdensome to compile but is equally available to both parties in the produced

documents.  Defendants further object to this interrogatory as overbroad and unduly burdensome

to the extent it seeks information beyond the scope of the documents produced in response to the

agreed TAR protocol, or seeks information regarding testing or other studies that are available in

the publicly available literature, including the academic literature.  Defendants further object to

this interrogatory as premature to the extent it seeks information regarding studies done by the

military or other third parties because such discovery is ongoing.  Further, to the extent this

interrogatory seeks information regarding the transmission of testing data between Defendants and

the U.S. Government, Defendants further object to this interrogatory as duplicative of

Interrogatories No. 5 and 9 and refer Plaintiffs to Defendants' answers to Interrogatories No. 5 and

9.  Defendants further object to this interrogatory to the extent it seeks information protected by

the attorney-client privilege, the work-product doctrine, the consulting or non-testifying expert

privilege, or any other applicable privilege, exemption, or immunity.

Subject to and without waiving their objections, Defendants will identify non-publicly available attenuation testing they are presently aware of related to the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

1.   July 1995, insertion loss test on predecessor Combat Arms Earplug version 2. (3M_MDL000325266) (May, 1998, Blast Overpressure Studies, Daniel L. Johnson, U.S. Army Aearomedical Research Laboratory).

2.   December 1996, ISL Impulse Noise Testing on predecessor Combat Arms Earplug, G. Garinther (U.S. Government Production, Garinther Trip Report to ISL France - E1.pdf).

3.   1997, ISL Impulse Noise Testing on predecessor Combat Arms Earplug version 2. (3M_MDL000016506).

4.   December 8, 1999, ISL Impulse Noise Testing, Institute Saint Louis Laboratory, Pascal Hamery.

5.   January 25, 2000 REAT test (Test ID: 213015), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  8 test subjects. (3M_MDL000107680).

6.   January 25, 2000 REAT test (Test ID: 213016), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 test subjects. (3M_MDL000188143).

7.   May 9, 2000 REAT test (Test ID: 213017), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 Test subjects.  (3M_MDL000195517).

8.   October 2001, impulse peak testing on the Combat Arms Earplug version 2 using a 9mm handgun and M16 rifle. William J. Murphy.  (3M_MDL000024875).

9.      June 15, 2004 REAT test (Test ID:  215009), EARCAL Laboratory, Indianapolis, Indiana.  10 test subjects.  (3M_MDL000319275).

10.     March 2005, Level Dependent Hearing Protection and Distortion Otoacoustic Emissions (DPOAE) After Small Arms Fire.  LTC Lorraine Babeu, Ph.D, U.S. Army Research Laboratory, Human Research and Engineering Directorate, Aberdeen Proving Ground, Maryland.  (3M_MDL000393650).

11.     March 2005, CAE Aearo Prototypes, ISL measurements March 2005, Pascal Hamery and Armand Dancer.  (3M_MDL000232247).

12.     June 15, 2005 REAT test (Test ID: 215511), EARCAL Laboratory, Indianapolis, Indiana.  5 Test subjects.  (3M_MDL000009701).

13.     June 30, 2005 REAT test (Test ID: 215512), EARCAL Laboratory, Indianapolis, Indiana.  5 Test subjects.  (3M_MDL000016445).

14.     October 28, 2005 REAT test (Test ID:  215515), EARCAL Laboratory, Indianapolis, Indiana.  3 Test subjects.  (3M_MDL000009728).

15.     April 20, 2006 REAT test (Test ID: 215012), EARCAL Laboratory, Indianapolis, Indiana, Ron Kieper and Elliott Berger.  10 Test subjects.  (3M_MDL000006960).

16.     March 2007, impulse test, Idaho National Laboratory, Idaho Falls, Idaho, James Lovejoy.  Prepared for the U.S. Department of Energy, Office of Nuclear Energy Under DOE Idaho Operations Office.  (3M_MDL000357176).

17.     April 26, 2007 REAT test (Test ID:  215516), EARCAL Laboratory, Indianapolis, Indiana.  3 Test Subjects.  (3M_MDL000195585).

18.  June 12, 2007, Experimental Evaluation of Different Kinds of Level-Dependent Earplugs (with Slits and Defaults) and Level-Independent Earplugs.  Hamery, P., De Mezzo, S.  (3M_MDL000193696).

19.  June 29 - July 4, 2008 - "Empirical Evaluation using Impulse Noise of the Level-Dependency of Various Passive Earplug Designs."  Meeting of the Acoustical Society of America, Elliott Berger (EARCAL Laboratory) and Pascal Hamery (ISL).  (3M_MDL000066439).

20.  January, 2009, Air Force Research Laboratory, Wright-Patterson Air Force Base, Dayton, Ohio, Capt. Brian Hobbs, Maj. Dean Hudson, Richard McKinley, Dr. Douglas Brungart, Julie Parisi, and James Hamil.  (3M_MDL00005379).

21.  June 16, 2009 REAT test (Test ID:  Q1930A), Michael & Associates, State College, Pennsylvania, Kevin Michael.  10 Test subjects.  (3M_MDL000005607).

22.  June 16, 2009 REAT test (Test ID:  Q1929A), Michel & Associates, State College, Pennsylvania, Kevin Michael.  10 Test subjects.  (3M_MDL000005607).

23.  March 28, 2012 REAT test (Test ID:  Q2558A), Michael & Associates, State College, Pennsylvania, Kevin Michael.  10 Test subjects.  Sponsored by Moldex. (3M_MDL000005607).

24.  March 28, 2012 REAT test (Test ID:  Q2559A), Michael & Associates, State College, Pennsylvania, Kevin Michael.  10 Test subjects.  Sponsored by Moldex. (3M_MDL000005607).

25.  December, 2012, Army Research Laboratory, Aberdeen Proving Ground, Maryland, Mary Binseel, Kara Cave, Joel Kalb, Tomasz Letowski.  (available at https://apps.dtic.mil/dtic/tr/fulltext/u2/a609344.pdf).

26. January, 2014, U.S. Marine Corps Level-Dependent Hearing Protector Assessment: Objective Measures of Hearing Protection Devices, Angelique a. Scharine and Rachel A. Weatherless. (3M_MDL000012099).

27. December 23, 2014, Measurement of Impulse Peak Insertion Loss from two Acoustic Test Fixtures and Four Hearing Protector Conditions, William J. Murphy et al. (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4617327/?report=printable).

28. July 22, 2015 REAT test (Test ID:  I15103), EARCAL Laboratory, Indianapolis, Indiana, Michael E. Stergar and Elliott Berger.  5 Test subjects. (3M_MDL000009469).

Defendants also refer Plaintiffs to the documents produced by the U.S. Government, which contain reports and correspondence regarding testing.  Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

Defendants further refer Plaintiffs to the HPDA database for information on Defendants' testing of predecessor, successor, and alternative designs of the CAEv2. (*See* 3M_MDL000426649.)  Defendants are not presently aware of any such testing that is not contained in the HPDA database.

**INTERROGATORY NO. 16:**

Please identify all passive level-dependent or non-linear HPDs you are aware of, whether developed by you or any other entity, including (i) the person that developed or marketed such HPD; (ii) the date you became aware of such HPD; (iii) any study or testing performed by you or any other person on such HPD; and (iv) any communications between you and the U.S. Government concerning such HPDs.

**RESPONSE TO INTERROGATORY NO. 16:**

Defendants object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information, including publicly available information equally accessible to both parties, regarding hearing protection devices developed by entities other than Defendants.  Defendants further object to this interrogatory as overbroad, unduly burdensome and disproportional to the needs of the case to the extent it seeks information regarding hearing protection devices other than the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use.

To the extent this interrogatory seeks information regarding "the person that developed or marketed" the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use, or "the date you became aware of such HPD," Defendants refer Plaintiffs to Defendants' answer to Interrogatories No. 1, 5, 9 and 13.  To the extent this interrogatory seeks information regarding "any study or testing performed by you or any other person" on the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use, Defendants refer Plaintiffs to Defendants' answer to Interrogatory Nos. 9 and 15.  To the extent this interrogatory seeks information regarding "communications between you and the U.S. Government" regarding the Combat Arms Earplug version 2 and any like-design dual-ended earplugs sold by Defendants for civilian use, Defendants refer Plaintiffs to Defendants' answer to Interrogatory Nos. 5 and 9.

Subject to and without waiving their objections, Defendants will identify the passive level-dependent or non-linear hearing protection devices developed or marketed by Defendants.

1.      The Combat Arms family of products, including versions 1-4.1, and the
like-design dual-ended earplugs sold by Defendants for civilian use.

2.      The Ultra9000 earmuff.

Discovery in this case is ongoing, including discovery from the military and other third parties.  Defendants reserve the right to supplement this response in accordance with the Federal Rules of Civil Procedure.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

Defendants further state that there was no individual, or group of individuals, whose dedicated job function was to examine alternative hearing protection devices and compare those products to hearing protection devices manufactured by Aearo.  On occasion, Elliott Berger evaluated and tested hearing protection devices produced by other manufacturers, and worked with Aearo technical staff in those efforts as needed, including Mark Doty.  With respect to passive level-dependent non-linear HPDs in particular, Berger: (1) analyzed the filter used in the Hock's Noise Braker at various time between 2005 and 2012, and the drawings related to those analyses can be found at 3M_MDL000804337; (2) performed a comparative analysis of the level dependency of various passive earplugs in 2007 and 2008, and presented and published the results of that study, a copy of which can be found at 3M_MDL000450222; (3) analyzed the filter used in the Moldex BattlePlug in 2011, and the drawing related to that analysis can be found at 3M_MDL000107342; and (4) performed a comparative analysis of the Combat Arms Earplug and the Moldex Battleplug and Surefire EP3 and EP4 earplugs in 2013, copies of which can be found at 3M_MDL000239976-78.  Based upon a reasonable investigation, Defendants are not presently aware of any conversations between Aearo or 3M employees and the United States Government regarding the design of passive level-dependent non-linear hearing protection devices that were alternatives to Defendants' products.  However, in August 2011, Doug Ohlin contacted military

personnel to inquire whether the military was using the Moldex Battleplug.   (*See* 3M_MDL000035618-19.)

**INTERROGATORY NO. 21:**

Please describe the similarities and differences with regard to design, performance, and use between the dual-ended Combat Arms earplugs (Version 2 CAEv.2) that were designed, manufactured, and/or sold by Defendants to the U.S. Government and any like-design earplugs marketed or sold by you for civilian use or non-military use, including the ARC Earplugs.

**RESPONSE TO INTERROGATORY NO. 21:**

Subject to and without waiving their objections, Defendants state that the only difference between the Combat Arms Earplug version 2 and the ARC Earplugs is the color of the flanges and, for certain models, the flash fire ratings.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:**

Responding further, Defendants state that the design and performance of the Browning Duo and Indoor/Outdoor Range earplugs are the same as the Combat Arms Earplug version 2.

DATED:  May 11, 2020                              By: *Robert C. Brock*
                                                 Robert C. "Mike" Brock
                                                 KIRKLAND & ELLIS LLP
                                                 1301 Pennsylvania Ave., N.W.
                                                 Washington, D.C. 20004
                                                 Tel.:  (202) 389-5000
                                                 Email: mike.brock@kirkland.com

                                                 *Attorney for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo Intermediate, LLC, and Aearo, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on May 11, 2020, a true and correct copy of the foregoing:

<u>**DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**</u>

was served as follows:

☒      **[E-Mail]** By causing the above documents to be sent via electronic mail to the parties at the email addresses listed below.  I am aware that service is presumed invalid if the email transmission is returned as undeliverable.

☒      **[MDL Centrality]** By causing the above to be electronically served via the MDL Centrality website pursuant to Pretrial Order No. 15 (ECF No. 630).

Bryan F. Aylstock, Lead Counsel
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street
Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
Clark, Love & Hutson, GP
440 Louisiana Street
Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
Seeger Weiss LLP
77 Water Street
8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Brian H. Barr, Co-Liaison Counsel
Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
Tel.: (850) 435-7044
bbarr@levinlaw.com

Michael A. Burns, Co-Liaison Counsel
Mostyn Law Firm
3810 W. Alabama Street
Houston, TX 77027
Tel.: (713) 714-0000
epefile@mostynlaw.com

Virginia E. Anello, Discovery & ESI Subcommittee
Douglas & London, PC
59 Maiden Ln, 6th Floor
New York, NY 10038
Tel.: (212) 566-7500
vanello@douglasandlondon.com

Kathering E. Charonko, Discovery & ESI Subcommittee
Bailey Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Taylor C. Bartlett, Discovery & ESI Subcommittee
Henninger Garrison Davis LLC
2224 1st Avenue North
Birmingham, AL 35203

Tel.: (304) 345-6555
kcharonko@baileyglasser.com

J. Nixon Daniel, Discovery & ESI
Subcommittee
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, FL 35202
Tel.: (850) 469-3306
jnd@beggslane.com

Tel.: (205) 301-6115
taylor@hgdlawfirm.com

David R. Buchanan, Discovery & ESI
Subcommittee
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (973) 639-9100
dbuchanan@seegerweiss.com

DATED:  May 11, 2020

*/s/ Robert C. Brock*
Robert C. "Mike" Brock