# EXHIBIT V

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*Jonathan Vaughn*<br>Case No. 7:20-cv-00134 | Case No. 3:19-md-02885-MCR-GRJ<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## **DEFENDANTS' BRIEF ON COLORADO'S STATUTORY CAP**[1]

The Court asked the parties to brief the impact of Colorado's statutory cap on noneconomic damages on the final judgment. *See* Colo. Rev. Stat. § 13-21-102.5. Given the jury's verdict, the total amount of the judgment should be $668,010.00, plus prejudgment interest required by Colorado law.[2] Mr. Vaughn's anticipated arguments to increase the amount of the judgment are misplaced.

---

[1] For the limited purposes of this brief only, Defendants do not address—and intend to preserve—any arguments relating to the jury's findings and damages awards, as well as all post-judgment arguments. Defendants will address the propriety of the jury's verdict following entry of the judgment.

[2] While the Court did not request briefing on the issue at this stage, Plaintiff has indicated it will argue that Colorado law requires an award of prejudgment interest on the amount of the judgment. *See* Colo. Rev. Stat. §§ 13-21-101 and 6-1-113. The parties have met and conferred on this issue and have agreed, for purposes of Mr. Vaughn's case, that prejudgment interest should be assessed at a rate of 8% per annum from June 20, 2019, the date his complaint is deemed to have been filed under the tolling agreement.

Case 3:19-md-02885-MCR-GRJ Document 3369-2 Filed 08/04/22 Page 2 of 14
Case 7:20-cv-00134-MCR-GRJ Document 167 Filed 05/16/22 Page 2 of 14

I. **Colorado law caps the award of compensatory damages at $668,010.00**

By statute, Colorado limits awards "in civil actions for noneconomic losses or injuries" other than awards for "physical impairment or disfigurement." Colo. Rev. Stat. § 13-21-102.5. The limit has been found constitutional under Colorado law. *See Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 95-96 (Colo. Ct. App. 1997). Under the statute, the cap is periodically adjusted for inflation by the Secretary of State. *See* Colo. Rev. Stat. § 13-21-102.5(3)(c). The current damages cap for causes of action accruing between 2008 and 2019 is $468,010.00. *See Pisano v. Manning*, 2022 WL 480895, at *3 n.2 (Colo. Ct. App. Feb. 17, 2022); *see also* https://www.sos.state.co.us/pubs/info_center/files/damages_new.pdf.

Here, the jury awarded Mr. Vaughn $200,000.00 for "physical impairment," which is not subject to the statutory cap, but $2 million for all other noneconomic damages—"physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life"—an award that *is* subject to the cap. Dkt. 163. So, the total award of compensatory damages after applying the cap is $668,010.00 ($468,010.00 plus $200,000.00).

II. **Mr. Vaughn offered no evidence to justify doubling the capped amount**

Mr. Vaughn may argue that this Court should apply an exception that permits an award for noneconomic damages not related to physical impairment or disability of up to $936,030.00—double the capped amount—if "the court finds justification

2

by clear and convincing evidence therefor," § 13-21-102.5(3)(a); *see also* https://www.sos.state.co.us/pubs/info_center/files/damages_new.pdf. Mr. Vaughn may argue that the cap should be doubled because the size of the jury's award for these other noneconomic damages, compared to the current cap, provides "clear and convincing evidence" for doubling it or that the jury's award itself was supported by "clear and convincing evidence." Not so.

A Colorado appellate court addressed a very similar issue earlier this year. *See Pisano*, 2022 WL 480895. In *Pisano*, the court affirmed a trial court order denying a request to exceed the statutory cap, agreeing with the defendant that "an award in excess of the statutory cap necessarily represents an exception to the standard limit" that would be available in a "typical" case. *Id*. at *4.

First, the *Pisano* court rejected the suggestion that the trial court's focus should be on the size of the jury's award. *See id*. at *6 ("we are not aware of any case that stands for the proposition that a trial court must exceed the statutory cap if it determines that the jury's noneconomic damages award was supported by clear and convincing evidence"). To the contrary, the *Pisano* court noted that "to grant an exception to the cap merely because the jury awarded noneconomic damages, even on strong evidence, 'would essentially circumvent the basic intent of' section 13-21-102.5(3)(a).'" *Id*. (quoting *Wallbank v. Rothenberg*, 140 P.3d 177, 181 (Colo. Ct. App. 2006)). Thus, to justify exceeding the cap, "[i]t is not sufficient that the

3

jury valued Pisano's noneconomic injuries at more than three times the statutory limit" because "[i]n every case where the court must decide whether to apply a statutory cap, the jury's verdict has exceeded the limit." *Id*. at *7.

Second, the *Pisano* court agreed that the trial court properly considered whether "exceptional circumstances" existed that would justify exceeding the cap. *Id*. at *5. As the court of appeals noted, Colorado "courts have consistently relied on a case's exceptional circumstances to justify the decision to exceed the cap." *Id*. at *5. The *Pisano* court cited *Mower v. Century I Chevrolet, Inc.*, 2006 WL 2729265 (D. Colo. June 16, 2006), for the proposition that "case law interpreting section 13-21-102.5(3)(a) 'appears to merely examine the nature and extent of the non-economic injuries.'" *Pisano*, 2022 WL 480895, at *5 (*quoting Mower*, 2006 WL 2729265, at *22 (D. Colo. June 16, 2006) (unpublished opinion)).

The *Pisano* court also assembled for comparison a host of Colorado cases in which courts found clear and convincing support for exceeding the cap, all of which involved catastrophic injuries. *See id*. (Citing cases in which, among other things, "the teenaged plaintiff was rendered a tetraplegic," a case involving "profound, severe, and life-altering" injuries, and one where the plaintiff "was likely going to end up in a wheelchair").

Whatever can be said of Mr. Vaughn's claims of tinnitus and hearing loss, his "physical and mental pain and suffering, inconvenience, emotional stress, and

4

impairment of the quality of life" do not fall in the same categories as those cases. Indeed, Mr. Vaughn offered extremely limited testimony regarding his noneconomic damages—less than six pages of trial testimony—and almost all focused on his subjective complaints of tinnitus. *See* Trial Tr. 4/22/2022 at 42:3-43:14; 46:12-47:21; 49:1-51:4. Yet, Mr. Vaughn conceded that he never complained about his tinnitus between 2004 and 2008 to anyone and that he denied having tinnitus at all in his post-deployment health assessment. *See* Trial Tr. 4/22/2022 at 70:10-12, 102:4-22. Moreover, as with the plaintiff's injuries in *Pisano*—which the trial court there held did not qualify as "exceptional circumstances" to depart from the legislatively-imposed cap—Mr. Vaughn offered no evidence that he cannot function independently and care for himself, nor have his hearing issues restricted his physical activity at all (as opposed to his numerous other physical and mental health problems unrelated to hearing). *See also Watson v. Dillon Cos.*, 2013 U.S. Dist. LEXIS 122595, at *19 (Dist. Colo. Aug. 28, 2013) (finding no "exceptional circumstances" that would warrant exceeding the cap because, while the court is "sympathetic" to the plaintiff, "the evidence indicates that he is able to function independently, exercise with moderation, and work part-time").

In short, there is nothing in Mr. Vaughn's case that would justify making his case an "exception to the standard limit" for noneconomic damages under Colorado law—much less an exception proven by "clear and convincing evidence." *Id*. at *4.[3]

### III. Because Mr. Vaughn consistently treated the Defendants as a single entity, he cannot now argue that they are six entities for the damages cap

Mr. Vaughn also apparently intends to argue that the statutory cap should be multiplied *six times* for each of the six corporate Defendants. If so, that would be the first time he has even suggested that the Defendants should be treated individually, rather than collectively, in assessing liability. That conclusion is not compelled by Colorado law and is entirely inconsistent with the pleadings and the positions Mr. Vaughn took at trial.

It is true that the Colorado Supreme Court stated that "the cap in section 13-21-102.5 applies to the liability share of each defendant in a case, and does not act as a cap on the total amount a plaintiff can recovery." *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1362 (Colo. 1994). But *Niemet* addressed—and answered—an entirely different question than the one presented here. Viewed in its proper context, *Nieman* fully supports Defendants' position.

---

[3] Even assuming *arguendo* that the Court found "clear and convincing evidence" to depart from the standard cap, his noneconomic damages would still be limited to $936,030.00, for a total compensatory damages award of $1,136,030.00.

6

The Colorado legislature abolished joint and several liability (other than for conspiracy) decades ago and replaced it with pro rata liability. *See* Colo. Rev. Stat. § 13-21-111.5. Under that statute, "no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant." *Id*. Critically, the statute also requires juries to return a special verdict determining the percentage of liability for both parties and non-parties. *Id*.

Thus, as the Colorado Supreme Court noted, the sole issue presented in *Nieman* was "the relationship between section 13-21-102.5, which limits noneconomic damages in a civil action, and section 13-21-111.5, the pro rata liability statute." *Nieman*, 866 P.2d at 1362 (citations omitted). More specifically, "the issue is whether a trial court should apply the statutory cap on noneconomic damages before or after it rules on the pro rata liability of the defendants and the plaintiff." *Id*. at 1363. The court found the damages cap statute ambiguous on this point. *See id*. at 1364. But after examining the legislature history, the court concluded that a trial court "should apportion pro rata liability among the defendants and plaintiff before it applies the statutory cap of section 13-21-102.5." *Nieman*, 866 P.2d at 1367.

Notably, the decision in *Neiman assumed* that the plaintiff had proven—and the fact finder had determined—pro rata liability against more than one tortfeasor.

7

Nothing in *Nieman* suggests that a plaintiff could recover multiple capped amounts from defendants sharing a single vicarious liability for an injury. This is especially true under the facts here given the allegations in the Master Complaint, the way Mr. Vaughn litigated the case through trial, and the reality that the Defendants are, in fact, for purposes of liability *in this case*, one and the same.

First, in the Master Complaint, Plaintiffs do not differentiate the potential liabilities of the six defendants at all. To the contrary, Plaintiffs specifically allege that "Defendant 3M is liable for Aearo Defendants' conduct." Case No. 3:19-md-02885-MCR-GRJ, ECF 704 at ¶ 21. Thereafter in the Master Complaint—including in every cause of action—Plaintiffs refer to the six corporate defendants collectively as "Defendants" and nowhere do they assert that any of the six corporate defendants committed any actions or omissions different from the others.

Second, Mr. Vaughn tried the case the same way—to the point of telling the jury explicitly in his opening statement that the six Defendants were one and the same:

> Now, I've mentioned 3M and Aearo. These are all of the companies that are involved. <u>They're all the same company for the intents and purposes of this lawsuit.</u> Whether the company goes by EAR, Peltor, AOSafety, Aearo, Cabot, or 3M, they are all the same company for this lawsuit. One was acquired by the other; one was a division of the other. But <u>anytime you see any of those names, it's the same people</u>.

8

Trial Tr. 4/18/2022 at 144:17-23 (emphasis added).  He presented no evidence that would have permitted a jury to allocate fault differently to any of the Defendants. He did not request jury instructions on pro rata liability, nor did he request that the jury be asked to apportion fault among the six Defendants on the verdict form.  *See* ECF 99-1 at 3 (Plaintiff's proposed verdict form); ECF 155 at 8 (Plaintiff's alternate proposed verdict form).  In fact, during the charge conference, the Court asked the parties whether there was "any objection to referring to defendant or defendants as 3M if that's what's been done during trial?"  Mr. Vaughn's counsel did not raise an objection in response. Trial Tr. 4/27/2022 at 269.  Thus, the final jury instructions only referenced 3M as the defendant. ECF 167 at 6.  And in closing arguments, his attorney again asked for a single verdict against 3M.  4/28/2022 at 76 ("you're going to ask to apportion between 3M, Mr. Vaughn, and the Army.  3M is 100 percent at fault").

Third, regardless of their corporate form, the Defendants share the same potential liability in this case.  Specifically, in their answer to the Master Complaint, Defendants admitted the allegations in paragraphs 18 and 19. *See* Case No. 3:19-md-02885-MCR-GRJ, ECF 800 at ¶¶ 18-19.  In those paragraphs, Plaintiffs allege:

> 18. On or about November 15, 2007, 3M and/or 3M Occupational Safety LLC (collectively, "3M Defendants") acquired Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC (collectively, "Aearo Defendants") for approximately $1.2 billion.

9

> 19. Defendant Aearo Technologies LLC's sole member is Defendant Aearo LLC, whose sole member is Defendant Aearo Intermediate LLC, whose sole member is Defendant Aearo Holding LLC, whose sole member is Defendant 3M Occupational Safety LLC, whose sole member is Defendant 3M.

Case No. 3:19-md-02885-MCR-GRJ, ECF 704 at ¶¶ 18-19. Thus, 3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate parties for purposes of *this litigation* illusory.

In short, Mr. Vaughn—and all the Plaintiffs in this litigation—made a strategic decision to treat the six corporate defendants as one and the same for liability purposes. Having done that—successfully here—Mr. Vaughn cannot now receive six times the statutory cap simply because he chose to name 3M Company and five wholly-owned subsidiaries in his complaint. Nothing in the language of section 13-21-102.5 or the holding in *Neiman* dictates that result.

Dated: May 16, 2022                    Respectfully submitted,

                                        */s/ Robert C. Brock*
                                        Robert C. "Mike" Brock
                                        KIRKLAND & ELLIS LLP
                                        1301 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 389-5991
                                        mike.brock@kirkland.com

Mark J. Nomellini
Mark W. Premo-Hopkins
Erin C. Johnston
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-3254
mnomellini@kirkland.com
mark.premohopkins@kirkland.com
ejohnston@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

Case 7:20-cv-00835-AMC-GRJ Document 367-23 Filed 05/06/22 Page 12 of 14

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 2,218 words.

Dated: May 16, 2022

Respectfully submitted,

/s/ Robert C. Brock

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5991
mike.brock@kirkland.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 16th day of May 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated: May 16, 2022                        Respectfully submitted,

                                                   */s/ Robert C. Brock*

                                                   Robert C. "Mike" Brock
                                                   KIRKLAND & ELLIS LLP
                                                   1301 Pennsylvania Avenue, N.W.
                                                   Washington, D.C. 20004
                                                   Telephone: (202) 389-5991
                                                   mike.brock@kirkland.com

                                                   *Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC and Aearo LLC*