**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION LIABILITY LITIGATION<br><br>This Document Relates to:<br>   *All Cases* | CASE NO.: 3:19-MD-2885-MCR-GRJ<br><br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary Jones |

## DEFENDANT 3M'S MEMORANDUM IN OPPOSITION TO PLAINTIFF VALLE'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION...............................................................................................1

BACKGROUND ...............................................................................................5

ARGUMENT AND AUTHORITIES ................................................................8

    I.     THERE HAS BEEN NO CHANGE IN CIRCUMSTANCES SINCE THIS COURT DENIED PLAINTIFF'S TRO MOTION. ................................................................................................8

    II.    THE ALL WRITS ACT IS NOT AN APPROPRIATE BASIS TO COLLATERALLY ATTACK THE BANKRUPTCY COURT'S JURISDICTION AND DENY 3M ITS CONSTITUTIONAL RIGHT TO DUE PROCESS. .....................10

    III.   PLAINTIFF MISCHARACTERIZES THE EFFECT OF THE DEBTORS' BANKRUPTCY PROCEEDINGS ON COMBAT ARMS CLAIMS. ..........................................................................23

CONCLUSION................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*,
    788 F.2d 994 (4th Cir.1986) ................................................................14, 26, 28

*BioConvergence LLC v. Attariwala*,
    No. 19-cv-01745 (SEB) (TAB), 2020 WL 1915269 (S.D. Ind. 2020)..............19

*Chao v. Hosp. Staffing Servs., Inc.*,
    270 F.3d 374 (6th Cir. 2002) ..............................................................................16

*Chicago Title Ins. Co. v. Lerner*,
    435 B.R. 732 (S.D. Fla. 2010) ............................................................................18

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
    788 F.3d 1318 (11th Cir. 2015) ..........................................................................22

*Gilchrist v. Gen. Elec. Cap. Corp.*,
    262 F.3d 295 (4th Cir. 2001) ................................................................16, 20, 21

*Gruntz v. Cty. of L.A. (In re Gruntz)*,
    202 F.3d 1074 (9th Cir. 2000) ............................................................................19

*Ho v. City of Boynton Beach*,
    No. 21-81023-cv (JDM), 2022 U.S. Dist. LEXIS 53240 (S.D. Fla. Mar. 23,
    2022) ....................................................................................................................22

*Home Ins. Co. v. Cooper & Cooper Ltd.*,
    889 F.2d 746 (7th Cir. 1989) ..............................................................................14

*In re Airadigm Commc'ns, Inc.*,
    519 F.3d 640 (7th Cir. 2008) ..............................................................................29

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
    770 F.2d 328 (2d Cir. 1985) ........................................................17, 18, 19, 22

*In re Caesars Ent'mt Op. Co.*,
    808 F.3d 1186 (7th Cir. 2015) ............................................................................15

*In re LTL Mgmt., LLC*,
   637 B.R. 396 (Bankr. D.N.J. 2022) ....................................................25

*In re Managed Care Litig.*,
   236 F. Supp. 2d 1336 (S.D. Fla. 2002) .............................................21

*In re Mid-City Parking, Inc.*,
   332 B.R. 798 (Bankr. N.D. Ill. 2005) ................................................19

*In re NTE Conn., LLC*,
   26 F.4th 980 (D.C. Cir. 2022) ...........................................................21

*In re Purdue Pharma L.P.*,
   619 B.R. 38 (S.D.N.Y. 2020) .............................................................15

*In re Rodriguez*,
   *633 F*. App'x 524, 526 (11th Cir. 2015) ............................................12

*In re Stinnett*,
   465 F.3d 309 (7th Cir. 2006) .............................................................14

*In re Vioxx Prods. Liab. Litig.*,
   869 F. Supp. 2d 719 (E.D. La. 2012) .................................................21

*In re W.R. Grace & Co.*,
   386 B.R. 17 (Bankr. D. Del. 2008) ...............................................14, 15

*In re W.R. Grace & Co.*,
   No. 01-01139 (JKF), 2004 WL 954772, at *4 (Bankr. D. Del. Apr. 29, 2004). 29

*In re WMR Enters., Inc.*,
   163 B.R. 884 (N.D. Fla. 1994) ..........................................................14

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ....................................................15, 21

*Meadows v. Commissioner*,
   405 F.3d 949 (11th Cir. 2005) ...........................................................18

*Melvin v. Blitz U.S.A., Inc.*,
   No. 8:11-cv-2542-T-24 (TGW) (SCB), 2012 WL 415444 (M.D. Fla. Feb. 9, 2012) ...................................................................................................18

iv

*Miller v. Brooks (In re Am. Honda Motor Co.),*
   315 F.3d 417 (4th Cir. 2003) ................................................................21

*N.Y. Life Ins. Co. v. Deshotel,*
   142 F.3d 873 (5th Cir. 1998) ................................................................21

*Penn. Bureau of Corr. v. U.S. Marshals Serv.,*
   474 U.S. 34 (1985)................................................................................15

*Riccard v. Prudential Ins. Co. of Am.,*
   307 F.3d 1277 (11th Cir. 2002) ...........................................................21

*Rohe v. Wells Fargo Bank, N.A.,*
   988 F.3d 1256 (11th Cir. 2021) ....................................................16, 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   511 B.R. 375 (Bankr. S.D.N.Y. 2014).................................................19

*Tenn. Student Assistance Corp. v. Hood,*
   541 U.S. 440 (2004).............................................................................16

*United States v. New York Tel. Co.,*
   434 U.S. 159 (1977).............................................................................22

## DOCKETED CASES

*In re TK Holdings Inc.,*
   No. 17-11375 (BLS) (Bankr. D. Del. February 21, 2018) [Docket No. 2120] ..27

*In re USA Gymnastics,*
   No. 18-09108 (Bankr. S.D. Ind. Apr. 17, 2019) [Docket No. 1776]..................29

## FEDERAL STATUTES

11 U.S.C. § 1109(b) .....................................................................12, 30

28 U.S.C. § 157(a) ...........................................................................3, 10

28 U.S.C. § 157(b)(5)........................................................................passim

28 U.S.C. § 157(d) ................................................................................11

28 U.S.C. § 1334(e) ..............................................................3, 10, 16, 21, 27

All Writs Act. 28 U.S.C. § 1651 ........................................................................passim

Bankruptcy Code Chapter 11...........................................................................passim

Bankruptcy Code § 105(a) .................................................................3, 15, 19, 22, 29

Bankruptcy Code § 362...............................................................3, 4, 15, 23, 24, 30

Bankruptcy Code § 541.....................................................................................14

Bankruptcy Code § 1109 ..............................................................................12, 30

## FEDERAL RULES

Federal Rule of Civil Procedure 65 ..........................................................................20

Federal Rules of Bankruptcy Procedure Rule 9033 ...............................................27

## INTRODUCTION

Plaintiff's renewed request for a preliminary injunction under the All Writs Act against 3M in this multi-district litigation is based on a misapprehension of the law and the foundational underpinnings of the Bankruptcy Code.  Plaintiff treads entirely new ground by requesting that this Court preempt the Bankruptcy Court's imminent hearing on the Debtors' adversary complaint—just six days from now—regarding the application of the automatic stay to 3M and the issuance of a preliminary injunction barring litigation of Combat Arms Claims against 3M.  If granted, the request would also deprive 3M of its ability to participate in the Debtors' bankruptcy cases, including as to matters that directly affect 3M.  Courts have held that an All Writs Act injunction is a drastic remedy that must be used sparingly, consistent with constitutional guarantees of due process of law and access to courts. As to 3M, an order granting Plaintiff's motion would infringe upon its constitutional right to due process and its right to participate in the bankruptcy as a party in interest.

In addition to the matters currently pending before the Bankruptcy Court, Plaintiff's motion, if granted, could be construed to prohibit 3M from participating in the negotiation of a trust for the benefit of holders of Combat Arms Claims, which 3M is obligated to fund under the Funding Agreement.  It could also inhibit 3M's ability to appear before the Bankruptcy Court, make filings and arguments with respect to contested matters, provide sworn testimony, participate in any bankruptcy-

supervised mediation of Combat Arms Claims and vote to accept or reject a plan of reorganization, as applicable.  To be clear, as Plaintiff concedes, the bankruptcy cases will continue without regard to the disposition of Plaintiff's motion.  3M, however, will be irreparably harmed by any injunction imposed by this Court that purports to restrain 3M in violation of its constitutional due process rights.  Any such restraint would contravene the wishes of representatives of a majority of plaintiffs in this MDL, who have demanded 3M's participation in the bankruptcy cases. Plaintiff's motion should be denied for the reasons set forth herein.

*First*, on July 28, 2022, this Court denied Plaintiff's request for the same relief sought in the instant motion.  Plaintiff's motion merely renews his request on an emergency basis, based on the same purported legal authority, the All Writs Act.  No circumstances have changed in the short time that elapsed between this Court's denial of Plaintiff's previous motion and the filing of Plaintiff's renewed motion for a preliminary injunction against 3M.  Indeed, 3M has not made any filings (other than its notice of appearance) or argued in the Bankruptcy Court other than to clarify one item related to the Debtors' first-day cash management motion.[1]  Nor has Plaintiff presented any new evidence to this Court.  As Plaintiff concedes, this

---

[1]    In contrast, certain plaintiffs have served extensive document discovery on 3M in connection with the Debtors' adversary complaint.  3M has fully cooperated with such discovery on an expedited basis.  These plaintiffs also took the rule 30(b)(6) deposition of a 3M corporate representative on August 9, 2022.

motion is merely a less "hurried" and "more complete" version of the motion that the Court denied.

**Second**, Plaintiff's attempt to invoke the All Writs Act to abrogate the authority of the Bankruptcy Court to hear and rule on the Debtors' (not 3M's) adversary complaint is fatally flawed. The residual authority afforded to federal courts under the All Writs Act cannot be used to supplant the clear statutory authority under the Bankruptcy Code, which empowers courts exercising bankruptcy jurisdiction[2] under section 362(a) to apply the automatic stay to preserve the property of a debtor's estate and under 105(a) to issue a preliminary injunction to support the debtor's reorganization efforts. It is also well established that federal district courts, including courts presiding over multi-district litigation, should defer to bankruptcy courts on matters pertaining to a debtor's automatic stay.[3]

---

[2]    Importantly, the matters raised by Plaintiff's motion do not inherently create a conflict between Article I and Article III courts, as plaintiff suggests. 28 U.S.C. § 1334(e) grants exclusive jurisdiction to *federal district courts* over all property of a debtor in bankruptcy. Under 28 U.S.C. § 157(a), each district court may provide that cases under the Bankruptcy Code and proceedings arising thereunder, therein or related thereto, shall be referred to the bankruptcy judges for such district. The Bankruptcy Court presiding over the Debtors' chapter 11 cases has jurisdiction under section 1334 and the *Standing Order of Reference from the United States District Court for the Southern District of Indiana*, dated July 11, 1984.

[3]    If Combat Arms Claims were permitted to be severed and proceed only against 3M, the result would be an ongoing violation of the Debtors' automatic stay under section 362(a)(3) of the Bankruptcy Code, which stays any act to exercise control over property of the estate. Any defense costs incurred by 3M or verdicts against 3M would be paid by the Debtors first from their own assets, including

There is currently a complaint pending before the Bankruptcy Court—the court with appropriate jurisdiction to decide these matters—to determine the application of the automatic stay and enjoin Combat Arms Claims as to 3M. Moreover, the Debtors (not 3M) have filed a motion in their bankruptcy cases to enforce the automatic stay against Plaintiff's counsel in response to counsel's filing of a notice of potential tag-along action with the Judicial Panel on Multidistrict Litigation seeking to transfer the entirety of the chapter 11 cases to this Court.[4]  In sum, the Bankruptcy Court is the appropriate forum to decide the scope of the automatic stay and whether any supplemental injunction should be issued in furtherance of the Debtors' bankruptcy cases.

***Third***, Plaintiff mischaracterizes the effect of the Debtors' bankruptcy proceedings on his Combat Arms Claim.  Rather than setting a devastating precedent, as Plaintiff argues, the Debtors—like many other companies before them—are pursuing an avenue to obtain finality with respect to Combat Arms Claims through settlement negotiations or claims estimation in bankruptcy. Moreover, contrary to Plaintiff's contention, this Court's determinations with

---

proceeds of shared insurance.  Any such losses by 3M would also implicate the Debtors' obligations to indemnify 3M.

[4]    *Declaration of Laura E. Baccash in Support of Defendant 3M's Memorandum in Opposition to Plaintiff Valle's Emergency Motion for Preliminary Injunction* (the "**Baccash Declaration**"), Ex. 1 (Bankr. Docket No. 173).

respect to Combat Arms Claims will continue to carry the same force of law during the Debtors' bankruptcy.  Plaintiff also erroneously construes the intent of 28 U.S.C. § 157(b)(5)  and the ultimate effect that such statute will have on the vast majority of holders of Combat Arms Claims.

## BACKGROUND

Plaintiffs asserting claims that have been consolidated for pre-trial proceedings in this MDL (the "**MDL Plaintiffs**"), including movant, Plaintiff Richard Valle ("**Plaintiff**"), assert claims against Aearo Technologies LLC and certain of its affiliates (collectively, the "**Debtors**") and non-debtor 3M Company ("**3M**") in more than 230,000 pending civil actions in state and federal court related to the Combat Arms Earplug, Version 2 ("**CAEv2**") and a civilian version of the CAEv2 sold commercially to non-military consumers (collectively, the "**Combat Arms Claims**").

On July 25, 2022, 3M and the Debtors entered into that certain Funding and Indemnification Agreement (the "**Funding Agreement**").[5]  Under the Funding Agreement, 3M has agreed, subject to the Debtors' first depleting their own assets (including insurance assets), to fund the Debtors' restructuring expenses and

---

[5]     At the July 27, 2022 hearing before this Court, counsel to 3M inadvertently provided the incorrect date on which the Funding Agreement was entered into among the Debtors and 3M as Saturday, July 23, 2022.  July 27, 2022 Hr'g Tr. at 12:2–5.  The Funding Agreement was entered into on Monday, July 25, 2022.

liabilities for Combat Arms Claims, including any contribution to a trust for holders of compensable Combat Arms Claims.  In exchange, the Debtors have agreed to indemnify 3M for losses related to Combat Arms Claims.

On July 26, 2022, the Debtors (not 3M) filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of Indiana (the "**Bankruptcy Court**").  On the same date, the Debtors (not 3M) filed a complaint (the "**Complaint**") and supporting motion and memorandum of law, requesting an extension of the automatic stay and a preliminary injunction barring the prosecution of Combat Arms Claims against 3M and its non-debtor affiliates, thereby commencing an adversary proceeding (the "**Adversary Proceeding**").[6]  As stated in the Complaint, the Debtors commenced the Adversary Proceeding to preserve assets of their bankruptcy estates in furtherance of the efficient and equitable resolution of Combat Arms Claims against the Debtors through a plan of reorganization.

On July 27, 2022, Plaintiff filed the *Ex Parte Motion and Incorporated Memorandum to Issue a Temporary Restraining Order to Enjoin 3M from Taking*

---

[6]     Baccash Decl., Exs. 2, 3, *3M Occupational Safety LLC et al. v. Those Parties Listed on Appendix A to the Complaint and John and Jane Does 1-1000 (In re Aearo Techs. LLC)*, Adv. Pro. No. 22-50059 (Bankr. S.D. Ind. July 26, 2022) (Bankr. Adv. Pro. Docket Nos. 1, 2).

*Any Action Outside the MDL to Enjoin Parties from Pursuing CAEv2 Litigation Against 3M* [MDL Docket No. 3332] ("**Plaintiff's TRO Motion**").[7]

On the same date, the Bankruptcy Court held a "first day" hearing.  Thereafter, the Debtors and certain parties in the Adversary Proceeding agreed and stipulated to the provisions set forth in the *Amended Agreed Entry Resolving Debtors' Request for a Temporary Restraining Order*,[8] which the Bankruptcy Court approved on August 5, 2022 (the "**Agreed Order**").[9]  The Agreed Order provides for an agreement among the parties (not including Plaintiff) to request from this Court that (1) all depositions scheduled between July 27, 2022 and August 17, 2022 in Wave cases be continued, (2) any discovery deadlines in the MDL Wave cases that have not already expired be continued three weeks, and (3) 3M and the MDL plaintiffs shall comply with the current MDL deadlines for briefing on Wave 1 summary judgment and *Daubert* response or venue disputes.  The Bankruptcy Court set for hearing on August 15, 2022 the Debtors' (not 3M's) request for an extension of the automatic stay and a preliminary injunction.

On July 28, 2022, this Court denied Plaintiff's TRO Motion.[10]

---

[7]     The Plaintiff TRO Motion was filed at 9:28 a.m. Central Time, just minutes before the Bankruptcy Court began the Debtors' first day hearing.

[8]     Baccash Decl., Ex. 4 (Bankr. Docket No. 62).

[9]     Baccash Decl., Ex. 5 (Bankr. Docket No. 78.)
[10]    MDL Docket No. 3343.

On August 3, 2022, Plaintiff filed the *Plaintiff's Emergency Motion for Preliminary Injunction Against Defendant 3M Company* and memorandum in support thereof [MDL Docket No. 3358] ("**Plaintiff's PI Motion**").

On August 4, 2022, this Court entered an order setting a briefing schedule on Plaintiff's PI Motion and scheduling oral argument for August 11, 2022.[11]

## ARGUMENT AND AUTHORITIES

## I. THERE HAS BEEN NO CHANGE IN CIRCUMSTANCES SINCE THIS COURT DENIED PLAINTIFF'S TRO MOTION.

Plaintiff's TRO Motion (which this Court denied) requested that this Court enjoin under the All Writs Act, 28 U.S.C. § 1651(a), "3M and any party acting on 3M's behalf, from filing any motion, action, proceeding, brief, or other judicial filing that seeks to enjoin parties from pursuing CAEv2 related claims against 3M in this MDL or in the district courts where MDL cases have been remanded."[12]  Plaintiff's PI Motion renews his request for the same relief—verbatim—on an emergency basis, again under the All Writs Act.[13]  The only difference between the relief requested in Plaintiff's TRO Motion and Plaintiff's PI Motion is that the latter also requests 3M be enjoined "from supporting and/or advocating in favor of any other

---

[11]     MDL Docket No. 3359.

[12]     Plaintiff's TRO Motion at 1–2, 8.

[13]     Plaintiff's PI Motion at 1, 23.

party seeking to enjoin any parties from pursuing CAEv2 related claims against 3M." As Plaintiff concedes, Plaintiff's PI Motion is merely a less "hurried" and "more complete" version of Plaintiff's TRO Motion.[14]

In its order denying Plaintiff's TRO Motion, this Court concluded that Plaintiff had failed to demonstrate irreparable harm because (1) the Bankruptcy Court had not yet ruled on whether the automatic stay applies to 3M, and (2) the parties stipulated to continuing Wave 3 discovery deadlines.[15] No circumstances have changed in the six days between denial of Plaintiff's TRO Motion and the filing of Plaintiff's PI Motion. Indeed, 3M has not made any filings other than its notice of appearance or argued in the Bankruptcy Court other than to clarify one item for the Bankruptcy Court related to the Debtors' first day cash management motion. Certain MDL Plaintiffs, on the other hand (not including Plaintiff), have served extensive document requests on 3M in connection with the Complaint, to which 3M responded on an expedited basis. These MDL Plaintiffs have also taken the rule 30(b)(6) deposition of a 3M corporate representative. Plaintiff has failed to present any new evidence to this Court in support of the instant motion. For those reasons, and as addressed below, there can be no threat of irreparable injury to Plaintiff in the absence of a preliminary injunction. Moreover, as explained below, the Debtors'

---

[14]   Plaintiff's PI Motion at 4.

[15]   MDL Docket No. 3343 at 2.

chapter 11 cases do not threaten the integrity of this MDL, and the All Writs Act does not afford this Court the authority to grant the requested relief.

## II.   THE ALL WRITS ACT IS NOT AN APPROPRIATE BASIS TO COLLATERALLY ATTACK THE BANKRUPTCY COURT'S JURISDICTION AND DENY 3M ITS CONSTITUTIONAL RIGHT TO DUE PROCESS.

Plaintiff's PI Motion is an improper collateral attack on the Bankruptcy Court's jurisdiction over the Debtors and their estates, which is derived from the exclusive jurisdiction of the United States District Court for the Southern District of Indiana under 28 U.S.C. § 1334(e).  In accordance with 28 U.S.C. § 157(a) and the *Standing Order of Reference from the United States District Court for the Southern District of Indiana*, dated July 11, 1984, all bankruptcy cases filed in the Southern District of Indiana have been referred by the District Court to the United States Bankruptcy Court for the Southern District of Indiana.  If Plaintiff disagrees with the Bankruptcy Court's authority and wishes the District Court for the Southern District of Indiana to determine a dispute related to the Debtors or their reorganization, Plaintiff's recourse is to file a motion for withdrawal of the District Court's reference to the Bankruptcy Court under 28 U.S.C. § 157(d).[16]

Instead, Plaintiff's PI Motion seeks to divest the Bankruptcy Court from exercising the jurisdiction that has been conferred upon it by the District Court to

---

[16]    A district court may, but is not required to, withdraw a case referred to the bankruptcy court, upon timely motion of a party, for cause shown.  28 U.S.C. §

hear and determine the Complaint, on which a hearing is scheduled in a mere six days, and to determine matters related to the bankruptcy that directly impact 3M's rights and obligations.   Plaintiff asks this Court to invoke the All Writs Act to abrogate the Bankruptcy Court's jurisdiction by enjoining 3M and "any party acting on 3M's behalf" (the meaning of which is unclear) from taking any action to enjoin parties from pursuing Combat Arms Claims against 3M.[17]

This relief would preclude 3M from participating in the adjudication of the Complaint in contravention of its constitutional right to due process.   *See Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019) ("Due process, in its most basic form, still requires notice and an opportunity to be heard.").   Plaintiff's motion, if granted, could also be construed to prohibit 3M from negotiating with the Debtors, plaintiffs, insurers and other stakeholders with respect to the funding of a

---

157(d).   Discretionary withdrawal requires truly exceptional and compelling circumstances.   *United States v. Kaplan*, 146 B.R. 500, 505 (D. Mass. 1992).

[17]   Although it is unclear whether Plaintiff is arguing for a preliminary injunction under any standard other than the All Writs Act, the relevant factors weigh against granting the requested relief, as addressed throughout this opposition.   Additionally, the balance of equities weighs in favor of 3M, as it would be prejudiced by the entry of Plaintiff's requested preliminary injunction while there would no prejudice to Plaintiff if Plaintiff's PI Motion were denied because the bankruptcy proceeding will continue without regard to the disposition of Plaintiff's PI Motion.   The public interest weighs against granting the requested relief because of the strong public interest in promoting the reorganization of the Debtors and an equitable resolution for creditors.

trust for the benefit of holders of Combat Arms Claims, which 3M is obligated to fund under the Funding Agreement.  Plaintiff's requested relief could also inhibit 3M's right under section 1109(b) of the Bankruptcy Code to appear as a "party in interest" that "may raise and be heard on any issue in a bankruptcy case." *In re Rodriguez, 633 F*. App'x 524, 526 (11th Cir. 2015).  To receive adequate process in the Bankruptcy Court, 3M must be able to make filings and arguments with respect to contested matters therein, including implementation of a channelling injunction under a plan of reorganization for the Debtors, provide sworn testimony with respect to such matters, participate in any Bankruptcy Court-supervised mediation of Combat Arms Claims and related issues and vote to accept or reject a plan of reorganization for the Debtors, as applicable. *See SEC v. Terry*, 833 F. App'x 229, 233 (11th Cir. 2020) (recognizing a party's due process rights to "present and argue their facts," "rebut the characterizations [of its conduct]," and "present affirmative defenses.").  Taken to the extreme, given its request to enjoin 3M from "supporting . . . any other party seeking to enjoin" Combat Arms Claims, an order granting Plaintiff's PI Motion could produce the absurd result of barring 3M from performing its obligations under the Funding Agreement or the Shared Services Agreement.[18]

---

[18]    The "Support Services Agreement" refers to that certain Support Services Agreement dated as of April 1, 2008, by and among 3M and certain of the Debtors.

As Plaintiff concedes in his motion, the bankruptcy cases and the Complaint will proceed without regard to the disposition of Plaintiff's motion before this Court. Accordingly, it is unclear how Plaintiff could demonstrate irreparable harm given that the Debtors will not be restrained from prosecuting the Complaint. Moreover, Plaintiff's concession provides no comfort to 3M, as the entry of an order granting the requested injunction will irreparably harm 3M by purporting to deprive 3M of its constitutional right to due process. Further, as noted above, representatives of a majority of MDL Plaintiffs have demanded 3M's participation in the Debtors' bankruptcy cases, and there is no indication that any MDL Plaintiff other than Plaintiff joins in his request for an injunction.[19]

Plaintiff's PI Motion could be construed to collaterally attack the application of the automatic stay by inviting this Court to invoke the All Writs Act to potentially prevent the Bankruptcy Court from deciding the matters that are the subject of the Complaint without the full participation of relevant parties, including 3M in its capacity as a non-debtor creditor, party in interest, parent of the Debtors and co-defendant with the Debtors in this MDL. Moreover, to the extent Plaintiff's PI

---

[19]   The only other context in which we are aware that Combat Arms Claims could be enjoined against 3M is under the terms of a confirmed chapter 11 plan for the Debtors. Under section 1121 of the Bankruptcy Code, the Debtors have the exclusive right to file and solicit votes on a plan for up to 18 months. 3M could not file a plan now even if it so desired. There is therefore no imminent threat of irreparable harm by 3M and 3M disputes any notion that any plan would result in irreparable harm for the reasons set forth below.

Motion purports to limit the breadth of the Debtors' (not 3M's) automatic stay or their ability to prosecute the Complaint or any other matter in the Bankruptcy Court (which the Debtors argue includes enjoining Combat Arms Claims against 3M and its non-debtor affiliates), the Plaintiff PI Motion violates the automatic stay.[20] Regardless, as described below, the All Writs Act should not be wielded in a manner that would supersede the Bankruptcy Court's ability to interpret and apply the provisions of the Bankruptcy Code to matters that relate to the Debtors' estates or a party in interest's right to participate in the bankruptcy cases.

"The [All Writs] Act does not create any substantive federal jurisdiction. Instead, it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citations omitted). The Act "is a residual source of authority to issue writs that are not otherwise covered by

---

[20]     Section 362(a)(3) of the Bankruptcy Code precludes all entities from taking "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Proceeds of an insurance policy are property of a chapter 11 debtor's estate under section 541(a)(1) of the Bankruptcy Code. 11 U.S.C. § 541(a)(1); *see In re WMR Enters., Inc.*, 163 B.R. 884, 886 (Bankr. N.D. Fla. 1994); *In re Stinnett*, 465 F.3d 309, 312-13 (7th Cir. 2006); *Home Ins. Co. v. Cooper & Cooper Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989). Moreover, the automatic stay applies to litigation that implicates a debtor's obligation to indemnify a non-debtor. *See A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 999-1001 (4th Cir.1986); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, No. 01-01139, Adv. Proc. No. 01-771, 2004 Bankr. LEXIS 579, at *12 (Bankr. D. Del. Apr. 29, 2004).

statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

Here, the relief requested in the Complaint is predicated on statutes that specifically address the particular issues at hand—sections 105(a) and 362(a) of the Bankruptcy Code.[21] For that reason, it is those specific statutes in the Bankruptcy Code, rather than the All Writs Act, that must control under these circumstances. *See Penn. Bureau of Corr.*, 474 U.S. at 43. It would turn the All Writs Act on its head to effectively strip the Bankruptcy Court of its jurisdiction to determine the matters that are the subject of the Complaint, which directly affect the administration of the bankruptcy estate. The Bankruptcy Code provides a clear statutory scheme that is intended to preserve the property of a debtor's estate, which supersedes any residual authority afforded to federal courts by the All Writs Act. Indeed, as noted

---

[21] Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The Complaint, in addition to requesting a determination of the application of the automatic stay under section 362(a) of the Bankruptcy Code to 3M, requests that the Bankruptcy Court issue a preliminary injunction under section 105(a) enjoining all persons or entities from commencing or continuing Combat Arms Claims against 3M. Such relief is granted in chapter 11 cases to the extent the bankruptcy court determines it is necessary to safeguard the debtor's prospects for a successful reorganization and would serve the public interest. *See In re Caesars Ent'mt Op. Co.*, 808 F.3d 1186, 1188–89 (7th Cir. 2015); *In re Purdue Pharma L.P.*, 619 B.R. 38, 45-46 (S.D.N.Y. 2020); *In re W.R. Grace & Co.*, 386 B.R. 17, 36 (Bankr. D. Del. 2008).

above, the Bankruptcy Court has the *exclusive* jurisdiction, conferred upon it by the

District Court under 28 U.S.C. § 1334(e) "of all of the property, wherever located,

of the debtor as of the commencement of [the chapter 11] case, and of property of

the estate."[22]   *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).

Accordingly, the Bankruptcy Court, applying specific statutes in the Bankruptcy

---

[22]   Perhaps recognizing that his request for a preliminary injunction pertains to the Debtors' estate property, Plaintiff describes this Court's authority as "analogous to that of a court in an *in rem* action."[22]   Critically, however, the Bankruptcy Court presiding over the Debtors' chapter 11 cases is *actually* exercising *in rem* jurisdiction over the Debtors' estates and their property.   Courts have explicitly recognized the bankruptcy court's actual *in rem* authority to enjoin proceedings that would affect a debtor's bankruptcy estate.   *See Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1266 (11th Cir. 2021) ("[W]here a court is exercising jurisdiction over particular property, as in an *in rem* proceeding or with regard to a bankruptcy estate, the court generally has the power to protect its jurisdiction over that property by enjoining proceedings in other courts regarding the property . . . because control over the *res* is fundamental to the court's ability to render judgment in the case." (internal quotation omitted)).   Indeed, the *in rem* jurisdiction of a bankruptcy court generally takes precedence over the jurisdiction of other federal and state courts.   *See, e.g.*, *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383–87 (6th Cir. 2002) (explaining extent of bankruptcy court's exclusive jurisdiction over property); *Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 303–04 (4th Cir. 2001) (holding that a bankruptcy court had jurisdiction over property rather than court in which a receivership proceeding was filed).

Code, has the paramount authority to make the rulings requested in the Complaint without the jurisdictional encroachment that the Plaintiff's PI Motion advocates.

Contrary to Plaintiff's unsupported suggestion that this Court is "best equipped to decide the parameters of the automatic stay,"[23] it is well established that federal district courts, including courts presiding over multi-district litigation, should defer to bankruptcy courts on matters pertaining to a debtor's automatic stay.[24]  The Second Circuit's decision in *In re Baldwin-United Corp. Litigation* is instructive.  In that case, the Second Circuit acknowledged that a district court's "duty to assure orderly pretrial proceedings in the multi-district litigation assigned to it is important" but held that "to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer [a] complex reorganization and the authority of the District Court to administer consolidated pretrial proceedings, the equities favor maintenance of the unfettered authority of the Bankruptcy Court."  765 F.2d 343, 348 (2d Cir. 1985).  The Second Circuit reasoned that the bankruptcy court must be allowed to use its "vital authority" to "'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Bankruptcy Code," and

---

[23]     Plaintiff's PI Motion at 21.

[24]     Indeed, on August 1, 2022, the Debtors filed a motion in their bankruptcy cases to enforce the automatic stay against Plaintiff's counsel in response to the filing of a notice of potential tag-along action with the Judicial Panel on Multidistrict Litigation seeking to transfer the entirety of the chapter 11 cases to this Court.  *See* Baccash Decl., Ex. 1 (Bankr. Docket No. 173).

a district court should not interfere with such authority by seeking to interpret the scope of the stay or issuing related injunctions. *Id.*

Cases recognizing the paramount authority of a bankruptcy court in the context of the automatic stay are legion, including in the Eleventh Circuit. *See, e.g.*, *Meadows v. Commissioner*, 405 F.3d 949, 959 (11th Cir. 2005) (finding that tax court did not abuse its discretion by deferring complex issues to bankruptcy court because the bankruptcy court is more knowledgeable about the scope of the automatic stay); *Chicago Title Ins. Co. v. Lerner*, 435 B.R. 732, 737 (S.D. Fla. 2010) (deferring to bankruptcy court's determination of whether litigation against non-debtors was subject to automatic stay based on *In re Baldwin-United Corp.*); *Melvin v. Blitz U.S.A., Inc.*, No. 8:11-cv-2542-T-24 (TGW) (SCB), 2012 WL 415444, at *2 (M.D. Fla. Feb. 9, 2012) ("[T]he Court finds that the issue of whether the claims . . . should be stayed due to their effect on [the] bankruptcy and reorganization would be best handled by the bankruptcy court, because the bankruptcy court is in the best position to analyze the issue.").[25]

The Eleventh Circuit has similarly deferred to the Bankruptcy Court's jurisdiction in the context of the automatic stay and declined invitations to enjoin

---

[25] There are also countless examples of similar decisions outside of the Eleventh Circuit. *See, e.g.*, *Gruntz v. Cty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts."); *BioConvergence LLC v. Attariwala*, Case No. 19-cv-01745 (SEB)

litigation under the All Writs Act in light of a pending bankruptcy.  In *Rohe v. Wells Fargo Bank, N.A.*, the debtor filed an All Writs Act petition in federal district court requesting that the court void certain state court orders on the grounds that they violated the automatic stay.  988 F.3d at 1262.  The district court denied the petition. The Eleventh Circuit affirmed, holding that the bankruptcy court was the proper court to enforce the automatic stay, because the *bankruptcy court* "can exercise authority provided by both the All Writs Act, and 11 U.S.C. § 105(a)."  *Id.* (citations omitted) ("Because the bankruptcy case falls within the purview of the bankruptcy court, which is well-equipped to protect the proceeding's integrity, the bankruptcy case is not a proceeding on which non-appellate use of the All Writs Act by the District Court could be predicated.").

It is also not appropriate to use the All Writs Act to attempt to exempt Combat Arms Claims pending in this MDL from the application of the Debtors' (not 3M's) automatic stay or to deprive the Bankruptcy Court of its exclusive jurisdiction over

---

(TAB), 2020 WL 1915269, at *3 (S.D. Ind. 2020) ("[T]he bankruptcy court does possess the final word: If the non-bankruptcy court issues a finding as to the application of the stay that the bankruptcy court deems erroneous, the bankruptcy court's resolution of this issue is determinative"); *In re Mid-City Parking, Inc.*, 332 B.R. 798, 804 (Bankr. N.D. Ill. 2005) ("The bankruptcy court from which the automatic stay originated nonetheless has the final say [on the scope of that stay]."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 511 B.R. 375, 388 (Bankr. S.D.N.Y. 2014) (concluding, based on *In re Baldwin-United Corp.*, that it was appropriate for the bankruptcy court to decide the scope of the automatic stay).

property of the Debtors' estates simply because the MDL was the first-filed case. The Court of Appeals for the Fourth Circuit examined this question in *Gilchrist v. Gen. Elec. Cap. Corp.* 262 F.3d 295 (4th Cir. 2001).  In *Gilchrist*, the United States District Court for the District of South Carolina, which was presiding over a previously filed receivership of a debtor's assets, issued a temporary restraining order to protect its jurisdiction under the All Writs Act, specifically enjoining creditors from "undertaking any action in furtherance of [an] involuntary petition filed against [the debtor] in the Southern District of Georgia." *Id.* at 298.  On appeal, the Court of Appeals recognized that "the district court has within its equity power the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651, and through its injunctive powers, consistent with Federal Rule of Civil Procedure 65." *Id.* at 302.  Nevertheless, the Court of Appeals reversed the District Court's All Writs Act injunction, determining that "Congress intended that the bankruptcy process be favored in circumstances such as these" because "[s]ection 1334(e) of title 28 is unequivocal in its grant of exclusive jurisdiction to the bankruptcy court . . . ." *Id.*  Here, the injunction requested by Plaintiff is indistinguishable from the All Writs Act injunction that was rejected by the Fourth Circuit in *Gilchrist* and should be denied for the same reasons.

Plaintiff cites no case where a District Court—in this Circuit or elsewhere—granted injunctive or other relief under the All Writs Act to bar a party in interest

from appearing before a Bankruptcy Court regarding matters pertaining to the automatic stay or the issuance of a preliminary injunction.  Indeed, none of Plaintiff's cited cases addresses the use of the All Writs Act to enjoin a litigant before a bankruptcy court.[26]  Indeed, an All Writs Act injunction is a "drastic remedy" that must be used "sparingly," "consistent with constitutional guarantees of due process of law and access to the courts."  *Comer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004).  The Supreme Court has explained that the constitutional

---

[26]     *See Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002) (affirming district court's use of the All Writs Act to enjoin a serial litigant "bent on re-litigating claims" in state court and administrative agencies); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) (overturning district court's improper use of the All Writs Act to prevent defendants from proceeding with arbitration of claims); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (affirming district court's use of the All Writs Act to enjoin a litigant from relitigating in another district court); *Miller v. Brooks (In re Am. Honda Motor Co.)*, 315 F.3d 417, 438 (4th Cir. 2003) (affirming an MDL court's use of the All Writs Act to enjoin a party from enforcing a portion of an arbitration award); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 333–34 (2d Cir. 1985) (affirming MDL court's use of the All Writs Act to enjoin states from litigating state claims against settling MDL defendants); *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 723-24 (E.D. La. 2012) (using All Writs Act to enjoin state court plaintiffs from offering evidence in separate proceedings that implicated damages for claims settled in the MDL); *In re NTE Conn., LLC*, 26 F.4th 980, 987 (D.C. Cir. 2022) (granting district court's use of the All Writs Act against the Federal Energy Regulatory Commission where the Circuit's "prospective jurisdiction was certain"); *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002) (finding that an MDL judge could overrule a prospective settlement with a sub-class of plaintiffs in a separate district court proceeding); *United States v. New York Tel. Co.*, 434 U.S. 159 (1977) (finding that a district court may direct a telephone company to provide facilities and technical assistance under that All Writs Act).

protection afforded by access to the courts is "the right conservative of all other rights, and lies at the foundation of orderly government." *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907).

Because the All Writs Act is inapposite by virtue of the clear and supervening statutory authority of the Bankruptcy Court to determine the scope of the automatic stay and grant a preliminary injunction under sections 362(a) and 105(a) of the Bankruptcy Code, respectively, Plaintiff fails to set forth any cognizable claim or cause of action that could support an injunction, much less a likelihood of success on the merits of any such claim. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318 (11th Cir. 2015) (affirming lower court's denial of request for preliminary injunction finding a failure to show likelihood of success on the merits); *Ho v. City of Boynton Beach*, Case No. 21-81023-cv (JDM), 2022 U.S. Dist. LEXIS 53240, at *15 (S.D. Fla. Mar. 23, 2022) (denying plaintiff's renewed request for preliminary injunction where no cognizable claim was discernable, "let alone one on which they are likely to succeed on the merits.").[27]

---

[27]    It is also critical to note that if this Court grants Plaintiff's PI Motion (which it should not), and Combat Arms Claims are permitted to proceed against 3M, any defense costs or bellwether trial verdicts would be paid *by the Debtors* first from their own assets.  In particular, any continuation of Combat Arms Claims against 3M would deplete the proceeds of insurance policies shared among the Debtors and 3M.  *See* Baccash Decl., Ex.  2.  It would also implicate the Debtors' obligation to indemnify 3M for losses related to Combat Arms Claims.  *Id.*  Moreover, the Funding Agreement contains a waterfall provision that requires the Debtors to use

## III.   PLAINTIFF MISCHARACTERIZES THE EFFECT OF THE DEBTORS' BANKRUPTCY PROCEEDINGS ON COMBAT ARMS CLAIMS.

Plaintiff's PI Motion is premised on purported irreparable injuries that Plaintiff argues he will sustain if Combat Arms Claims are enjoined against 3M pursuant to the Complaint filed by the Debtors (not 3M) in the Adversary Proceeding.  In particular, Plaintiff argues, among other things, as follows:

- The Debtors are seeking to relitigate in Bankruptcy Court matters this Court has already decided.[28]

- Plaintiff is "*entitled by law* to an Article III court's adjudication of his claims" under 28 U.S.C. § 157(b)(5), and the "roundtripping" of Plaintiff's case back to the relevant district court following the culmination of the bankruptcy is nothing more than an "expensive detour."[29]

---

their own assets—including insurance recoveries—to satisfy their liabilities before they are entitled to request funding from 3M.  Funding Agreement § 1, Definition of "Permitted Funding Use."  As a result, the entry of an order granting Plaintiff's PI Motion would ensure that Combat Arms Claims continue to be prosecuted against 3M in an ongoing violation of the Debtors' automatic stay under section 362(a)(3), without any court needing to consider whether section 362(a)(1) of the automatic stay extends to 3M.

[28] Plaintiff's PI Motion at 6.

[29] *Id.* at 5-6, 20.

- 3M would be "gaming the system" by benefitting from the Debtors' restructuring.[30]

For the reasons that follow, Plaintiff's concerns mischaracterize how mass tort claims are addressed in bankruptcy and the process that is commonly implemented in chapter 11 to provide equitable compensation to holders of compensable claims. Moreover, Plaintiff ignores that any relief the Debtors request in their chapter 11 cases is subject to applicable legal standards and that Plaintiff will be afforded due process—in the Bankruptcy Court—with respect to any and all such proposed relief.

The Debtors commenced their chapter 11 cases to implement an equitable and expeditious process to resolve Combat Arms Claims by consolidating such claims for uniform treatment and negotiating and soliciting creditor votes on a global resolution implemented through a plan of reorganization that provides finality. Rather than creating a "devastating precedent,"[31] the Debtors—like many other companies before them—are pursuing an avenue to obtain complete finality with respect to Combat Arms Claims following a successful settlement negotiation or estimation. *See In re LTL Mgmt., LLC*, 637 B.R. 396, 411 (Bankr. D.N.J. 2022) ("Addressing mass torts through a legislative scheme enacted by Congress within the bankruptcy system . . . provides a judicially accepted means of aggregating and

---

[30] *Id.* at 21.

[31] *See id.* at 21.

resolving mass tort claims."). In addition to the benefits that the bankruptcy system affords to the Debtors, the process also affords holders of Combat Arms Claims the opportunity to avoid potentially disparate outcomes in the tort system and unequal compensation.

The premise that 3M will "relitigate" legal and factual issues that have already been decided by this Court is incorrect. The commencement of a bankruptcy case does not afford 3M, the Debtors or any other party an opportunity for a "do-over,"[32] in the form of an exception to principles of *res judicata* or otherwise. Neither this Court's nor any other court's prior determinations with respect to Combat Arms Claims will fail to continue to carry the same force of law during the Debtors' bankruptcy.

Plaintiff's PI Motion is a transparent attempt to accomplish precisely what the Bankruptcy Code is intended to forestall—a race by plaintiffs who happen to be closest to trial to liquidate their claims before other similarly situated creditors can do the same. Plaintiff's desire to effectively sever his claims against 3M from those against the Debtors and proceed against 3M alone does not constitute a legal basis to grant the relief requested in Plaintiff's PI Motion.

---

[32] *See id.* at 20.

To make his argument, Plaintiff also mischaracterizes Congress's intent in enacting 28 U.S.C. § 157(b)(5) and the effect such statute will have on the vast majority of holders of Combat Arms Claims.  Section 157(b)(5) provides that

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Plaintiff's arguments are baseless for several reasons.  First, section 157(b)(5) aims to "centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins Co.*, 788 F.2d at 1011 (quoting House Agreement to the Conf. Report on H.R. 5174, 130 Cong. Rec. 20206, at 20228 (1984), as reprinted in 1984 U.S.C.C.A.N. 576, 579 (statement of Rep. Kastenmeier, Member, H. Comm. on the Judiciary)).  Second, as the Sixth Circuit stated in *Dow Corning*, which involved claims against the bankrupt manufacturer of silicone gel breast implants and various non-debtor defendants,

> Section 157(b)(5) should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are "related to" a debtor's bankruptcy proceedings pursuant to Section 1334(b).  This approach will further the prompt, fair, and complete resolution of all claims "related to" bankruptcy proceedings, and harmonize Section 1334(b)'s broad jurisdictional grant with the oft-stated goal of centralizing the administration of a bankruptcy estate.

26

86 F.3d 482, 497 (6th Cir. 1996) (internal footnote omitted).   Third, because distribution procedures under a mass tort plan of reorganization are typically the subject of hard-fought negotiations with representatives of a majority of plaintiffs and overwhelmingly approved by individual plaintiffs, the number of claimants who elect under distribution procedures to pursue their claims in the tort system will likely be few in number.   Fourth, Plaintiff fails to acknowledge rule 9033 of the Federal Rules of Bankruptcy Procedure, which enables a debtor to obtain district court approval of a plan of reorganization that provides for binding treatment of one or more classes of personal injury claims.   This rule offers a solution to the constitutional inability of an Article I court to liquidate a personal injury claim for purposes of distribution.[33]

Plaintiff also improperly attributes the Debtors' bankruptcy filing and restructuring strategy to non-debtor 3M, making no distinction between the legal entities.  Despite the manner in which Plaintiff strategically interchanges the Debtors

---

[33]     *See, e.g.*, *In re TK Holdings Inc.*, 17-11375 (BLS) (Bankr. D. Del. February 21, 2018) [Docket No. 2120] (confirming a plan involving personal injury claims but referring the channeling injunction to the district court for affirmation); *In re Mallinckrodt plc*, 20-12522 (JTD) (Bankr. D. Del. March 2, 2022) [Docket No. 6660] (confirming a plan involving personal injury claims subject to affirmation by the district court).  In each of these cases and many others, the debtor was able to confirm and consummate a plan of reorganization consistent with section 157(b)(5), without the wasteful "roundtripping" regarding which Plaintiff expresses apparent concern.

and 3M throughout the Plaintiff PI Motion in an effort to erroneously imply that 3M is orchestrating the Debtors' actions, 3M itself did not file for bankruptcy protection. 3M did not file the Adversary Proceeding or request the injunction that is the subject of the Complaint. The Debtors are managed by their boards of directors, including two disinterested directors to whom the boards have delegated authority to decide any matter in which there is a conflict of interest between the Debtors and 3M. As noted above, 3M and the Debtors are parties to the Funding Agreement, which was negotiated at arm's length.

Neither 3M's agreement to fund the Debtors' restructuring of Combat Arms Claims under the terms of the Funding Agreement nor the Debtors' request in the Complaint to enjoin litigation against 3M related to Combat Arms Claims is "tactical gamesmanship" or an effort to "gam[e] the system."[34] As noted above, there is an extensive and uniform body of case law recognizing that the automatic stay enjoins the prosecution of cases against a non-debtor where such claims are the exact same claims, such that the debtor is the real party defendant. *See A.H. Robins Co., Inc.*, 788 F.2d at 1002–03. Additionally, litigation against a non-debtor that implicates shared insurance or a debtor's indemnification obligations violates the debtor's automatic stay. *See id.* 1001–02; *In re W.R. Grace & Co.*, No. 01-01139 (JKF), 2004

---

[34]     *See* Plaintiff's PI Motion at 2, 21.

WL 954772, at *4 (Bankr. D. Del. Apr. 29, 2004).  Moreover, there are clear standards that must be satisfied for a bankruptcy court to approve a plan of reorganization that contains third-party releases in favor of a non-debtor.  *See In re Airadigm Commc'ns, Inc.,* 519 F.3d 640, 657 (7th Cir. 2008).  Far from a "contemptible bankruptcy ploy,"[35] the Debtors have availed themselves of the protections afforded by chapter 11 of the Bankruptcy Code, including the protections available under section 105(a) and afforded by section 362(a) thereof, which guard against threats to their reorganization.  Any relief that the Debtors request in their chapter 11 cases, from the imposition of a preliminary injunction to confirmation of a plan that compensates holders of Combat Arms Claims, is subject to applicable legal standards and will afford plaintiffs due process.[36]

The appropriate forum for the grievances expressed in Plaintiff's PI Motion is the Bankruptcy Court.  The Bankruptcy Court has set a deadline to object or otherwise respond to the relief requested in the Complaint of August 11, 2022.

---

[35]  *See id.* at 21 n.8.

[36]  Any liability of 3M relating to Combat Arms Claims may be resolved and channelled to a trust under the Debtors' ultimate plan of reorganization only if the Bankruptcy Court approve third-party releases in favor of 3M.  *See In re Airadigm Commc'ns*, 519 F.3d at 657 (finding that "Congress affirmatively gave the bankruptcy court the power to release third parties from a creditor's claims"); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Apr. 17, 2019) [Docket No. 1776] (confirming a plan where the releases and injunctions were "narrow" and "essential to the reorganization").

Under section 1109 of the Bankruptcy Code, any party in interest, including Plaintiff, in his capacity as a creditor, "may raise and may appear and be heard on any issue" in a chapter 11 case.  11 U.S.C. § 1109(b).  Plaintiff cannot demonstrate irreparable harm where he has the right to participate in the Debtors' bankruptcy proceeding.  By prosecuting what is, in effect, an objection to the Complaint under the guise of a preliminary injunction motion against 3M in this Court, Plaintiff is attempting to circumvent the collective nature of the bankruptcy process and elevate his own interests above those of the class of plaintiffs as a whole.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's PI Motion.

Dated:  August 9, 2022               Respectfully submitted,

<u>s/ *Jessica C. Lauria*</u>
Jessica C. Lauria (admitted *pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

*Counsel for Defendant 3M Company in*
*Connection with the Restructuring of the*
*Debtors*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), counsel for Defendant 3M certifies that this memorandum contains 7,920 words.

Dated:  August 9, 2022

s/ *Jessica C. Lauria*
Jessica C. Lauria (admitted *pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

*Counsel for Defendant 3M Company in Connection with the Restructuring of the Debtors*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 9th day of August 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

<u>s/ *Jessica C. Lauria*</u>
Jessica C. Lauria (admitted *pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

*Counsel for Defendant 3M Company in Connection with the Restructuring of the Debtors*