# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Guy Cupit*,<br>8:20-cv-97300 | Case No.: 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

# DEFENDANT 3M COMPANY'S OPPOSITION
# TO PLAINTIFF GUY CUPIT'S MOTION FOR RULING ON 3M
# COMPANY'S WAIVER AND/OR JUDICIAL ESTOPPEL OF ANY
# <u>DEFENSE REGARDING ITS FULL LIABILITY</u>

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT AND AUTHORITIES.....................................................................3

I.    WAIVER CLAIMS ARE CONTRARY TO THE COURT'S
      PRETRIAL ORDER AND IRRECONCILABLE WITH 3M'S
      MASTER ANSWER. .....................................................................................3

      A.    PTO No. 17 Expressly Provides That 3M's "Master Answer"
            Does Not Waive Any Defenses In Individual Cases. ..........................3

      B.    3M Neither Conceded Nor Waived Responses To Successor
            Liability Claims, Which Are Plaintiff's Burden To Prove In
            Any Event.............................................................................................4

II.   PLAINTIFF'S JUDICIAL ESTOPPEL ARGUMENTS ARE
      BACKWARD AND IMPROPERLY USE THE MDL TO BLUR
      INDIVIDUAL CASE IDENTITIES. .............................................................8

      A.    There Is No Inconsistent Position That 3M Persuaded This
            Court To Take. .....................................................................................8

      B.    Judicial Estoppel Does Not Apply To Legal Conclusions Like
            Successor Liability. ............................................................................11

      C.    The Court Cannot Estop 3M From Asserting Successor
            Liability Defenses In Other Cases Or Other Jurisdictions.................13

III.  THE COURT SHOULD REJECT PLAINTIFF'S INVITATION TO
      RENDER AN IMPROPER ADVISORY OPINION. ...................................15

      A.    The Court Should Not Make An Ineffective Advisory Ruling
            On An Incomplete Record....................................................................15

      B.    Any Successor Liability Issues Should Be Addressed in the
            Bankruptcy Court. ..............................................................................17

      C.    3M Is Providing The Information Required By The Court's
            Order....................................................................................................19

CONCLUSION ..................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1000 Friends of Maryland v. Browner*,
265 F.3d 216 (4th Cir. 2001) ...............................................12

*ADT LLC v. Vivint, Inc.*,
2017 WL 11632866 (S.D. Fla. Dec. 8, 2017) .........................12

*In re Aearo Techs. LLC, et al.*,
No. 22-02890-JJG-11 (Bankr. S.D. Ind.), Dkt. 11-2 ...............23

*In re Aearo Techs. LLC, et al.*,
No. 22-50059 (Bankr. S.D. Ind.), Dkt. 53 ...............................23

*Anderson v. Catholic Bishop of Chicago*,
759 F.3d 645 (7th Cir. 2014) ....................................9, 10, 12

*BancInsure, Inc. v. F.D.I.C.*,
796 F.3d 1226 (10th Cir. 2015) .............................................12

*Biomedical Pat. Mgmt. Corp. v. Cal. Dep't of Health*,
2006 WL 1530177 (N.D. Cal. June 5, 2006) ...........................13

*Boerner v. Brown and Williamson Tobacco Co.*,
2003 WL 22341283 (E.D. Ark. July 2, 2003) ......................5, 6

*Bokunewicz v. Puralator Prods., Inc.*,
907 F.2d 1396 (3d Cir. 1990).................................................6

*Boston Gas Co. v. Century Indem. Co.*,
708 F.3d 254 (1st Cir. 2013)..................................................13

*Bud Antle, Inc. v. Eastern Foods, Inc.*,
758 F.2d 1451 (11th Cir. 1985) .............................................19

*Celotex Corp. v. Tate*,
797 S.W.2d 197 (Tex. Ct. App. 1990) .....................................7

*Chafin v. Chafin*,
568 U.S. 165 (2013).............................................................16

*In re Chateaugay Corp.*,
156 B.R. 391 (Bankr. S.D.N.Y. 1993).....................................13

i

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Denty v. SmithKline Beecham Corp.*,
   907 F. Supp. 879 (E.D. Pa. 1995), *aff'd*, 109 F.3d 147 (3d Cir. 1997).....................7

*Dorocon, Inc. v. Burke*,
   2005 WL 3454338 (D.D.C. Dec. 16, 2005).............................................................5

*E & C Copiers Exp.-Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*,
   2022 WL 2341001 (S.D. Fla. May 16, 2022).........................................................14

*E.E.O.C. v. Vucitech*,
   842 F.2d 936 (7th Cir. 1988) ................................................................................19

*Elf Atochem N. Am. v. United States*,
   908 F. Supp. 275 (E.D. Pa. 1995) ........................................................................11

*Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*,
   740 F.3d 875 (3d Cir. 2014).................................................................................17

*Flores v. Velocity Express, LLC*,
   2015 WL 4463639 (N.D. Cal. July 21, 2015).........................................................11

*Fountain v. Colonial Chevrolet Co.*,
   1988 WL 40019 (Del. Super. Ct., Apr. 13, 1988)...................................................21

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015)......................................................................................2, 14

*In re Genetically Modified Rice Litig.*,
   2008 WL 80663 (E.D. Mo. Jan. 7, 2008) ..............................................................17

*Granite State Ins. Co. v. Songer Steel Servs., Inc.*,
   2016 WL 6574298 (E.D. Mich. Nov. 7, 2016).......................................................14

*In re Hafen*,
   616 B.R. 570 (B.A.P. 10th Cir. 2020)....................................................................18

*Hernandez v. Brewer*,
   2012 WL 2798748 (D. Ariz. July 9, 2012) ............................................................14

*Jordan v. City of Baton Rouge*,
   192 F.3d 125 (5th Cir. 1999) ................................................................................6

*Khan v. Metro. Cas. Ins. Co.*,
   2014 WL 12791874 (M.D. Fla. Mar. 6, 2014) .......................................................16

*In re Kouregenis*,
   539 B.R. 625 (Bankr. S.D. Fla. 2015)...................................................................14

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990).................................................................................................16

*Longaberger Co. v. Kolt*,
    586 F.3d 459 (6th Cir. 2009) ...............................................................................13

*Lowery v. Stovall*,
    92 F.3d 219 (4th Cir. 1996) .................................................................................12

*Maharaj v. Bankamerica Corp.*,
    128 F.3d 94 (2d Cir. 1997)...................................................................................12

*Marvellous Day Elec. (S.Z.) Co. v. Ace Hardware Corp.*,
    900 F. Supp. 2d 835 (N.D. Ill. 2012) ....................................................................5

*McMillian v. Ala. Dep't of Youth Servs.*,
    2008 WL 2441043 (M.D. Ala. June 16, 2008) ...................................................12

*Minnesota Life Ins. Co. v. Countrywide Fin. Corp.*,
    2012 WL 6742119 (C.D. Cal. Dec. 6, 2012) .......................................................22

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. 38*,
    288 F.3d 491 (2d Cir. 2002), *rev'd on other grounds*, 351 F.3d 43 (2d Cir.
    2003) (per curiam) ...............................................................................................13

*Nat'l Advert. Co. v. City of Miami*,
    402 F.3d 1335 (11th Cir. 2005) ...........................................................................15

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) ...............................................................................14

*Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*,
    98 F.3d 262 (7th Cir. 1996) ...................................................................................5

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)......................................................................................8, 9, 11

*Nigro v. Dwyer*,
    438 F. Supp. 2d 229 (S.D.N.Y. 2006)...................................................................6

*Noel v. Terrace of St. Cloud, LLC*,
    212 F. Supp. 3d 1193 (M.D. Fla. 2016)..............................................................6, 7

*O'Dette v. Fisher*,
    2014 WL 6632470 (E.D.N.Y. Nov. 21, 2014)...................................................12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Parker v. Wendy's Int'l, Inc.*,
   365 F.3d 1268 (11th Cir. 2004) .................................................................................10

*Picon v. Morris*,
   933 F.2d 660 (8th Cir. 1991) ....................................................................................17

*In re Prescott*,
   402 B.R. 494 (Bankr. D. N.H. 2009) ........................................................................12

*Roll v. Tracor, Inc.*,
   26 F. Supp. 2d 482 (W.D.N.Y. 1998) ........................................................................7

*Ryan Data Exch., Ltd. v. Graco Inc.*,
   2016 WL 9450699 (S.D. Iowa Oct. 6, 2016) ...........................................................17

*Sirpal v. Univ. of Miami*,
   509 F. App'x 924 (11th Cir. 2013) ...........................................................................15

*Sterio v. Highmark Life Ins. Co.*,
   2007 WL 2062953 (E.D. Cal. July 13, 2007) ..........................................................16

*Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*,
   2012 WL 1799028 (C.D. Cal. Feb. 17, 2012) ..........................................................22

*United States v. Accra Pac, Inc.*,
   173 F.3d 630 (7th Cir. 1999) ....................................................................................16

*United States v. Gen. Battery Corp.*,
   423 F.3d 294 (3d Cir. 2005)......................................................................................19

*Utica Mutual Ins. Co. v. Munich Reinsurance Am., Inc.*,
   7 F. 4th 50 (2d Cir. 2021) ...........................................................................................4

*White v. O'Dell Indus., Inc.*,
   1999 WL 1096046 (D. Kan. Oct. 26, 1999) ........................................................11, 12

*In re Wright*,
   220 B.R. 543 (S.D.N.Y. 1998)..................................................................................17

**Statutes**

Bankruptcy Code § 362(a)(3) ...........................................................................................18

Bankruptcy Code § 541 ....................................................................................................18

Del. Code Ann. tit. 6, § 18-303.........................................................................................21

Del. Code Ann. tit. 8, § 102(b)(6)......................................................................................21

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Rules**

Fed. R. Civ. Pro. 8(b)(3) ....................................................................................................5

Fed. R. Civ. Pro. 9(a) and 8(c) ..........................................................................................6

## **INTRODUCTION**

Plaintiff Guy Cupit—whose short-form complaint (which was filed less than three months ago) 3M has not yet answered and to which no responsive pleading date is set—now moves this Court to secure an advisory ruling that 3M has waived or is estopped from asserting successor liability defenses in his own case and those of "all other plaintiffs in the MDL." Dkt. 3361 ("Mot.") at 2. The Motion (i) advances meritless waiver theories that are contrary to the plain language of PTO No. 17; (ii) relies on a judicial estoppel argument that is wrong in substance and overbroad in scope; and (iii) is rooted in a misguided belief that a preemptive and improper advisory-opinion "win" in this Court on August 11, 2022, will hinder chapter 11 debtor, Aearo Technologies LLC, from prevailing on its August 15, 2022 preliminary injunction hearing in the Bankruptcy Court. Indeed, such a ruling would only further demonstrate the necessity for a preliminary injunction. This Court should deny the Motion for multiple independently dispositive reasons.

*First*, the argument that 3M's answer to the Master Complaint "waived" successor liability or "wrong party" "affirmative defenses" is incompatible with the Court's pretrial order that expressly provides that the adoption of the Master Answer "is ***without prejudice to Defendants later*** moving to dismiss certain counts alleged in the Master [] Complaint (at the appropriate time in any individual Plaintiff's

action) [and] ***asserting any affirmative defenses*** … ."[1] Moreover, successor liability

is a liability theory that is plaintiffs' burden to prove and not an affirmative defense,

and 3M preserved all responses to successor liability.

*Second*, Plaintiff has the judicial estoppel argument backward. 3M has not

"persuaded" this Court or litigated the successor liability issue at all in this MDL,

and certainly has not done so in a way that benefited 3M to the detriment of its

opponents. The claim that prior positions in individual cases could estop 3M from

pursuing valid defenses in all other cases in both the MDL and the Bankruptcy Court

has been soundly rejected in judicial-estoppel jurisprudence. These black-letter

doctrinal limits apply with full force in this MDL, where individual cases still "retain

their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015).

*Third*, the Motion seeks a procedurally improper advisory ruling in an effort

to create a record in this MDL that certain plaintiff lawyers incorrectly believe will

preempt or hamper Aearo's efforts to enjoin litigation against 3M in the Bankruptcy

Court—a motion that is critical to Aearo's successful restructuring that is set to be

heard on August 15, 2022.[2] But regardless of whether all MDL plaintiffs elected to

"simply amend the Master and individual Complaints to drop the Aearo

---

[1]   Dkt. 763 at 1 (Pretrial Order No. 17) at 3 (emphasis added).

[2]   As this Court recognized, claims against Aearo, a chapter 11 debtor, are
      automatically stayed. Dkt. 3356.

2

Defendants," Mot. at 2, this would not change the automatic-stay and injunction calculus in the Bankruptcy Court, which would still bar those same plaintiffs from proceeding only against 3M in this MDL.

## ARGUMENT AND AUTHORITIES

### I.     WAIVER CLAIMS ARE CONTRARY TO THE COURT'S PRETRIAL ORDER AND IRRECONCILABLE WITH 3M'S MASTER ANSWER.

#### A.     PTO No. 17 Expressly Provides That 3M's "Master Answer" Does Not Waive Any Defenses In Individual Cases.

Plaintiff claims that 3M has waived any defense based on principles of successor liability, and that it therefore should be barred from invoking a successor liability defense "in [Plaintiff's] or any other future trials, because it has been waived" because 3M did not assert it in its Master Answer to the Master Complaint. *See* Mot. at 9. But this argument ignores the on-point Court order on this very issue, which states:

> The adoption of the Master Answer in every case is without prejudice to Defendants later moving to dismiss certain counts alleged in the Master [] Complaint (at the appropriate time in any individual Plaintiff's action), asserting any affirmative defenses, filing an Amended Answer to address specifically any individual Complaints …, or otherwise challenging the sufficiency of any claim or cause of action in any Complaint under the applicable state's law, including cases that may be selected for inclusion in a discovery pool or bellwether trial pool.

Dkt. 763 at 1 (Pretrial Order No. 17) at 3–4. It is unclear why MDL Plaintiffs' Executive Committee member Adam Wolfson signed and filed the Motion without

3

acknowledging or addressing PTO No. 17, particularly because that PTO provision is recited again in 3M's Master Answer, which is also attached to the Motion. Dkt. 3361-7 at 2.

> **B.   3M Neither Conceded Nor Waived Responses To Successor Liability Claims, Which Are Plaintiff's Burden To Prove In Any Event.**

The waiver argument fails for additional reasons.

*First*, the crux of Plaintiff's argument is that successor liability is an affirmative defense that is waived if not affirmatively pled. Mot. at 3-9. But successor liability is ***not*** an affirmative defense. As the Second Circuit recently explained (in a case not cited by Plaintiff), "[a]n affirmative defense is a defense that will defeat the plaintiff's … claim, even if all allegations in the complaint are true, rather than an attack on the truth of the allegations or a rebuttal of a necessary element of the claim." *Utica Mutual Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F. 4th 50, 63 (2d Cir. 2021) (internal quotation marks omitted).[3] But successor liability is "a refutation of [the plaintiff's] case, not an affirmative defense." *Id.* Thus, the Second Circuit held it would be an "abuse[] of discretion" to hold that a defendant has waived a response to a successor liability claim because it did not affirmatively plead it. *Id.* The Seventh Circuit has likewise recognized that the ***plaintiff*** carries

---

[3]   By way of analogy, the court explained that "it [is] no affirmative defense to assert that an intervening cause" has broken "the chain of causation, because the intervening cause challenge[s] 'an integral part' of the causation element of the plaintiff's breach-of-contract claim." *Id.* In that example, the defendant "ha[s] merely asserted that the plaintiff cannot prove a necessary element of its claim." *Id.*

"[t]he burden of proof on the issue of successor liability." *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996).[4]

*Second*, there is no waiver on this defense because 3M ***denied*** the allegation that "Defendant 3M is liable for Aearo Defendants' conduct," Master Complaint (Dkt. 704) ¶ 21. 3M's response to Paragraph 21 states:

> Allegation: Defendant 3M is liable for Aearo Defendants' conduct.
>
> Response: Defendants object to the allegations in Paragraph 21 of the Master Complaint as they call for a legal conclusion and therefore, no response is required. To the extent a response is required, Defendants admit that Aearo Technologies LLC is a successor of Aearo Company I. Defendants further admit that the Aearo Defendants are indirect, wholly-owned subsidiaries of 3M.

Amended Answer to Master Long Form Complaint (Dkt. 959) ¶ 21. 3M's Master Answer also stated: "Defendants deny each and every allegation contained in Plaintiffs' Master Complaint except those specifically admitted above." *Id.* ¶ 1. This is wholly proper under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 8(b)(3) ("A party that does not intend to deny all the allegations must either

---

[4]   *See also Boerner v. Brown and Williamson Tobacco Co.*, 2003 WL 22341283, at *4 (E.D. Ark. July 2, 2003) ("The burden of alleging and proving successor liability is on the plaintiff."). In that sense, a claim that a defendant is liable on a successor liability theory is akin to an attempt to pierce the corporate veil. In that context, a "plaintiff who seeks to pierce the corporate veil and hold an individual defendant liable for actions of the corporation must plead facts sufficient to pierce the veil. Corporate form is not an affirmative defense." *Marvellous Day Elec. (S.Z.) Co. v. Ace Hardware Corp.*, 900 F. Supp. 2d 835, 846 (N.D. Ill. 2012). Stated another way, "an 'alter ego'/'piercing the corporate veil' theory is not an affirmative defense" because "the burden of proof rests with the party seeking to negate the existence of the separate entity." *Dorocon, Inc. v. Burke*, 2005 WL 3454338, at *2 (D.D.C. Dec. 16, 2005).

specifically deny designated allegations or generally deny all except those specifically admitted."). Where a party has "properly put the matter [of successor liability] in issue with a general denial," as 3M did here, there accordingly is no need for an additional affirmative defense. *Boerner*, 2003 WL 22341283, at *4 (rejecting plaintiff's "conten[tion] that defendant ha[d] waived" "limited liability as an affirmative defense," holding that, because "[t]he burden of alleging and proving successor liability is on the plaintiff," "[t]here is no affirmative defense involved" and the "defendant ha[d] properly put the matter in issue with a general denial").[5]

*Third*, Plaintiff's cited cases do not advance his cause because they arise in the context of labor-and-employment cases which have adopted different parameters on this issue or are otherwise outliers. Plaintiff cites three employment cases— *Jordan v. City of Baton Rouge*, 192 F.3d 125 (5th Cir. 1999); *Bokunewicz v. Puralator Prods., Inc.*, 907 F.2d 1396, 1402 (3d Cir. 1990); and *Noel v. Terrace of St. Cloud, LLC*, 212 F. Supp. 3d 1193, 1204 (M.D. Fla. 2016). But "[t]he general rule … that a successor entity is not responsible for the debts and liabilities of a

---

[5]   Waiver also does not apply where a specific statute provides a defense. In those circumstances, the statutory defense need not be affirmatively pled, and a general denial is sufficient. In *Nigro v. Dwyer*, 438 F. Supp. 2d 229 (S.D.N.Y. 2006), the plaintiffs "incorrectly point[ed] to Rule 9(a) and 8(c) of the Federal Rules of Civil Procedure in support of their claim that defendant ha[d] waived his so-called 'improper party' defense." *Id.* at 237. The defendant had generally denied that he was personally liable for "ostensibly corporate debts," and the court explained that "the reason he [was] not liable"—a specific New York statute governing the elements plaintiffs needed to meet to prove liability—"is not an affirmative defense that needs to be raised under either Rule 8 or Rule 9." *Id.* In other words, the New York legislature provided the defense to the defendant by passing the relevant statute, and that defense did not need to be affirmatively pled. The defendant's general "denial of personal liability put[] [the statutory requirements] at issue and [was] sufficient." *Id.*

6

predecessor" "yields in the context of labor and employment disputes, where important employment-related policies may justify imposing liability against a successor for its predecessor's discriminatory actions." *Noel*, 212 F. Supp. 3d at 1199. As a result, in the context of employment claims, the plaintiff is relieved of his burden to prove successor liability, and the defendant must affirmatively plead a successor liability defense.

Plaintiff's other cases are similarly inapposite. *Roll v. Tracor, Inc.* does not discuss whether the defendant made a general denial or whether a specific statute provided a defense to the relevant claim, and its analysis on the question is cursory at best. 26 F. Supp. 2d 482, 488-89 (W.D.N.Y. 1998). Plaintiff also cites a case for the proposition that "the defense of failure to sue the proper party is … an affirmative defense." *Denty v. SmithKline Beecham Corp.*, 907 F. Supp. 879, 882 (E.D. Pa. 1995), *aff'd*, 109 F.3d 147 (3d Cir. 1997). But Plaintiff *did* sue Aearo, so it is unclear how *Denty* has any application here. Finally, *Celotex Corp. v. Tate* apparently contradicts the more widely accepted view, *see supra* at 4-5, that a plaintiff bears the burden of proving successor liability. 797 S.W.2d 197, 207 (Tex. Ct. App. 1990) (stating that "successor liability comprises an independent ground for the denial of appellees' cause of action since the defense in no way rebuts any factual propositions

comprising the cause of action"). 3M is unaware of any other case that holds this anomalous view.[6]

In short, Plaintiff has failed to show that successor liability is an affirmative defense, or that 3M waived the defense, and the Court should reject this argument.

## II.   PLAINTIFF'S   JUDICIAL   ESTOPPEL   ARGUMENTS   ARE BACKWARD AND IMPROPERLY USE THE MDL TO BLUR INDIVIDUAL CASE IDENTITIES.

"[T]he circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation," but "several factors" nevertheless "typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). None of these factors supports—and instead many directly undercut—the application of judicial estoppel here.

### A.   There Is No Inconsistent Position That 3M Persuaded This Court To Take.

A cornerstone of judicial estoppel is that the "later position" of the party against whom judicial estoppel is to be invoked "must be ***clearly inconsistent*** with its earlier position"; and the party must have "***succeeded in persuading a court to accept that party's earlier position***, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the

---

[6]   Plaintiff also cites in a footnote a number of unpublished opinions in which courts noted, but did not analyze or otherwise comment on, the fact that a plaintiff pled successor liability as an affirmative defense. Mot. at 6 n.1. These cases have no analytical or precedential value and should be disregarded.

second court was misled" or the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 749 (emphases added).

But 3M never succeeded in convincing the Court that it is wholly liable as a successor in interest to Aearo's liability. *New Hampshire*, 532 U.S. at 749. 3M neither ***asserted*** the defense ***nor prevailed on it*** before the Court. The Seventh Circuit addressed a similar issue in *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014). In that case, the plaintiff "point[ed] to the many cases throughout the United States in which the Catholic Church ha[d] chosen to settle claims, including 'stale claims' which otherwise could have been barred by the prevailing statute of limitations." *Id.* at 652. The plaintiff argued that judicial estoppel should prevent the church from invoking the statute of limitations in his case given this course of conduct in previous cases. *Id.* "There are numerous problems with this contention," the Seventh Circuit reasoned in rejecting the plaintiff's argument, "not the least of which is that ***the failure to assert a potential limitations defense is not an assertion of an opposite position—it is the absence of any position***." *Id.* (emphasis added). The court explained that "[a] defendant is not required to assert any and all potentially meritorious defenses, and the failure to assert one is not akin to a statement that the defense would not succeed." *Id.* This logic fully applies here; 3M not injecting successor liability issues into any of the

9

bellwether trials "is not an assertion of an opposite position—it is the absence of" a position. *Id.*

Plaintiff accordingly has not shown that any "allegedly inconsistent position[] w[as] made under oath in a prior proceeding." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004). It is not enough to assert, as he does, that "3M, through its lawyers, signed pretrial briefs" in "the 16 different bellwether trials" "***never once invoking these concepts***," or that 3M "submitted jury instructions and jury verdict forms 16 different times ***staying quiet on these concepts***," or that 3M's counsel acknowledged to the Court that "***[w]e have not asked you to resolve a dispute on that issue***, Your Honor." Mot. at 10-11 (emphases added). That's the point: 3M did not invoke a successor liability defense in the bellwethers, much less under oath. Nor do Defendants' briefs, cited by Plaintiff (Mot. at 10), that addressed Colorado's statutory damages cap meet this requirement. Those briefs were submitted ***after*** verdicts had been rendered in the *Wayman* and *Vaughn* trials—that is, ***after*** trials in which Defendants ***did not*** take a position on successor liability and Plaintiffs had "made a strategic decision to treat the six corporate defendants as one and the same for liability purposes." *Vaughn*, 7:70-cv-134, Dkt. 179 at 10. It was Plaintiffs' strategic decision to treat the Defendants as one that prevailed, not any sworn position by Defendants.

Moreover, the purpose of judicial estoppel is to "prevent[] parties from playing fast and loose with the courts"—to prevent them from gaining an advantage in one proceeding, only to switch positions in a later proceeding to gain yet another advantage. *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted). Parties cannot offer one story when it suits them and a different story when their interests change. *See id.* at 749-50. But it was arguably ***against*** 3M's interest to stay silent on successor liability in the bellwether cases. In other words, 3M gained no advantage—and may well have been disadvantaged—by its decision to not invoke a successor liability defense. 3M's decision not to contest successor liability in earlier cases could not indicate therefore that it was engaging in gamesmanship or abusing the courts, rendering the doctrine inapplicable here.

## B.      Judicial Estoppel Does Not Apply To Legal Conclusions Like Successor Liability.

"Whether one corporation is a substantial continuation of another"— sufficient to find "successor liability"—"is a ***legal question***." *Elf Atochem N. Am. v. United States*, 908 F. Supp. 275, 279 (E.D. Pa. 1995) (emphasis added); *see also Flores v. Velocity Express, LLC*, 2015 WL 4463639, at *2 (N.D. Cal. July 21, 2015) ("The question of whether successor liability *ever* applies when an acquired company is merged into a subsidiary is a question of law."). Indeed, "[s]uccessor liability is a legal doctrine based on" a complicated "analysis of facts and circumstances." *White v. O'Dell Indus., Inc.*, 1999 WL 1096046, at *4 (D. Kan. Oct.

26, 1999). "Jurisdictions differ in their approach to successor liability," with "some requir[ing] that particular factors be weighed." *Id.*

The fact that successor liability is a legal determination is important because, under the doctrine of judicial estoppel, a "'position sought to be estopped ***must be one of fact*** rather than law or legal theory.'" *ADT LLC v. Vivint, Inc.*, 2017 WL 11632866, at *4 (S.D. Fla. Dec. 8, 2017) (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)) (emphasis added); *see also BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1240 (10th Cir. 2015) ("[J]udicial estoppel only applies when the position to be estopped is one of fact, not one of law."); *Anderson*, 759 F.3d at 652 ("Judicial estoppel applies to statements of fact and not to legal opinions or conclusions … ." (internal quotation marks omitted)); *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 226 (4th Cir. 2001) (requiring the position to be estopped to "be one of fact rather than law or legal theory" and to "have been accepted by the court"); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) ("[J]udicial estoppel may be applied to bar a party from asserting a[n inconsistent] factual position … ."); *O'Dette v. Fisher*, 2014 WL 6632470, at *7 (E.D.N.Y. Nov. 21, 2014) ("judicial estoppel" is "inapplicable to … an inconsistent legal position"); *In re Prescott*, 402 B.R. 494, 500 (Bankr. D. N.H. 2009) ("Judicial estoppel will not apply in cases where only legal conclusions or opinions are involved."); *McMillian v. Ala. Dep't of Youth Servs.*, 2008 WL 2441043, at *6 (M.D. Ala. June 16, 2008) ("Judicial estoppel

applies to facts, not legal theories."); *In re Chateaugay Corp.*, 156 B.R. 391, 403 n.16 (Bankr. S.D.N.Y. 1993) ("In any case, estoppel applies only to factual, not legal misrepresentations."). *Compare Boston Gas Co. v. Century Indem. Co.*, 708 F.3d 254, 264 (1st Cir. 2013) ("[A] party's directly conflicting statements about purely factual matters, such as 'The light was red/green,' present precisely the sort of threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent." (internal quotation marks omitted)).[7]

### C. The Court Cannot Estop 3M From Asserting Successor Liability Defenses In Other Cases Or Other Jurisdictions.

Finally, this Court may not estop 3M from taking any position in a ***separate*** case or forum that is outside this Court's jurisdiction.

*First*, the attempt to lump all the MDL cases together is improper. Regardless of what positions 3M elected to take in individual cases, it simply may not be estopped from taking different positions in entirely different cases—even if they are all consolidated for pretrial proceedings in front of this MDL court. As the Sixth Circuit recently reiterated: "MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance. For neither § 1407

---

[7] For this reason, a party is permitted to alter its legal theories during the pendency of a case. *See, e.g.*, *Longaberger Co. v. Kolt*, 586 F.3d 459, 469-71 (6th Cir. 2009) (permitting party to alter legal theory of recovery in response to change in law); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. 38*, 288 F.3d 491, 504 (2d Cir. 2002), *rev'd on other grounds*, 351 F.3d 43 (2d Cir. 2003) (per curiam) (wavering positions regarding the ramifications of a strike upon a collective bargaining agreement were legal conclusions, not "inconsistent factual positions" that could otherwise justify judicial estoppel); *Biomedical Pat. Mgmt. Corp. v. Cal. Dep't of Health*, 2006 WL 1530177, at *5-6 (N.D. Cal. June 5, 2006) (permitting party to change legal claim of jurisdiction).

nor Rule 1 remotely suggests that, whereas the Rules are law in individual cases, they are merely hortatory in MDL ones." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020). "Nor can a party's rights in one case be impinged to create efficiencies in the MDL generally. 'Section 1407 refers to individual 'actions' which may be transferred to a single district court, not to any monolithic multidistrict 'action' created by transfer.'" *Id.* (quoting *Gelboim*, 574 U.S. at 413).

*Second*, this Court may not determine the applicability of judicial estoppel to proceedings in other courts. "[T]he decision to apply judicial estoppel to bar a claim is ***always made in the second court*** … . Judicial estoppel can never be asserted in the prior forum so as to bind the subsequent forum . …" *In re Kouregenis*, 539 B.R. 625, 630-31 (Bankr. S.D. Fla. 2015) (emphasis added).[8] This Court may not estop 3M from taking specific actions in the Bankruptcy Court.

For all of these reasons, the Court should reject Plaintiff's motion seeking a ruling on judicial estoppel.[9]

---

[8]    For similar reasons, one court "cannot enjoin … [p]arties from making arguments" in a separate forum. *Hernandez v. Brewer*, 2012 WL 2798748, at *7 (D. Ariz. July 9, 2012); *see also E & C Copiers Exp.-Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*, 2022 WL 2341001 (S.D. Fla. May 16, 2022) ("This Court, as one of limited jurisdiction, is simply without authority to restrain or otherwise address the alleged conduct, which is occurring outside this District."); *Granite State Ins. Co. v. Songer Steel Servs., Inc.*, 2016 WL 6574298, at *3 (E.D. Mich. Nov. 7, 2016) ("This court cannot control proceedings in another jurisdiction, and will not purport to limit, permit, or endorse filings that may be presented to another court.").

[9]    Because Plaintiff's waiver and judicial estoppel arguments are deficient, his cursory and "unnecessary" request for a preliminary injunction (*see* Mot. at 12) should be summarily denied.

14

## III.   THE COURT SHOULD REJECT PLAINTIFF'S INVITATION TO RENDER AN IMPROPER ADVISORY OPINION.

### A.   The Court Should Not Make An Ineffective Advisory Ruling On An Incomplete Record.

The Motion seeks this Court's blessing in advance so that Plaintiff, as well as all other plaintiffs in this MDL, can "simply amend the Master and individual Complaints to drop the Aearo Defendants" without risking their ability to recover. Mot. at 2. But there is no live controversy between 3M and Plaintiff on this issue: 3M has not even answered Plaintiff's complaint; Plaintiff's case is not even among the 1,500 selected for wave discovery; and it is unclear when if ever his case will be set for trial, at which time disputes concerning successor liability (if any exist) could be assessed and resolved in pretrial summary judgment motions or during trial as appropriate. Indeed, Plaintiff has not moved (and for the reasons discussed in the next section could not move) for summary judgment asserting successor liability. To the extent such a motion ever were appropriate, both 3M and the Court would need to review the facts and law cited in any future motion for summary judgment based on successor liability filed by Plaintiff, before anyone could begin to assess whether 3M had "waived" responses to that *as-yet-unfiled* motion.

Instead, the Motion seeks expedited pre-emptive sweeping assurances from the Court now, which is precisely the type of advisory ruling prohibited by Article III. *See Sirpal v. Univ. of Miami*, 509 F. App'x 924, 932 (11th Cir. 2013); *Nat'l*

15

*Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999) ("[D]istrict judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or controversy must be present at every moment of the litigation."); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not ... give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990))).

This advisory opinion bar applies to questions of waiver and estoppel like those raised here. *See Khan v. Metro. Cas. Ins. Co.*, 2014 WL 12791874, at *5 (M.D. Fla. Mar. 6, 2014) (refusing to "issue an advisory opinion determining whether Metropolitan would be successful with its affirmative defense of judicial estoppel if Khan were to have a ripe breach of contract claim and if he were to assert positions inconsistent with positions taken in his prior bankruptcy proceeding while litigating that claim"); *Sterio v. Highmark Life Ins. Co.*, 2007 WL 2062953, at *2 (E.D. Cal. July 13, 2007) ("[T]he undersigned nevertheless cannot issue an advisory opinion as to the standard of review to be applied ... on the issue of judicial estoppel. The

appropriate time on which to determine whether plaintiff should be estopped is the time that plaintiff takes a position inconsistent with the position taken at discovery hearing."); *In re Genetically Modified Rice Litig.*, 2008 WL 80663, at *2 (E.D. Mo. Jan. 7, 2008) ("I need not issue an advisory opinion about whether potential future claims might be barred by principles of res judicata and collateral estoppel."); *Ryan Data Exch., Ltd. v. Graco Inc.*, 2016 WL 9450699, at *6 (S.D. Iowa Oct. 6, 2016) ("It is not proper for a court to render an advisory opinion as to the viability of a res judicata defense in an action not before it." (citing *Picon v. Morris,* 933 F.2d 660, 662 (8th Cir. 1991))); *In re Wright*, 220 B.R. 543, 543–45 (S.D.N.Y. 1998) (declining to render advisory opinion regarding whether future pleadings, testimony, and discovery compliance in case would constitute a waiver of party's Fifth Amendment right against self-incrimination).

## B. Any Successor Liability Issues Should Be Addressed in the Bankruptcy Court.

Not only would an opinion from this Court on Plaintiff's waiver and judicial estoppel motion be advisory, it would improperly usurp the authority of the Bankruptcy Court. Property of the estate is a broad concept, and courts around the country have made clear that "this principle extends to actions based upon successor liability." 5 Collier on Bankruptcy P 541.07 (16th ed. 2022) (collecting cases); *see also Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 880 (3d Cir. 2014) (explaining that several courts "have held that state law causes of action for

17

successor liability … are properly characterized as property of the bankruptcy estate," and reaching a similar conclusion). The determination of what constitutes estate property rests within the exclusive jurisdiction of the bankruptcy court. *In re Hafen*, 616 B.R. 570, 578 (B.A.P. 10th Cir. 2020) ("The Bankruptcy Court is the only court with subject matter jurisdiction to determine whether [causes of action] are property of the bankruptcy estate."). Accordingly, Plaintiff's Motion seeks a ruling from this Court that would run afoul of its jurisdiction to the extent that it requires a finding as to whether successor liability claims constitute property of the Debtors' estate.

Any claims or causes of action for successor liability related to 3M (and any defenses or determinations related thereto) fall squarely within the ambit of "estate property" set forth in § 541 of the Bankruptcy Code. As such, § 362(a)(3) prevents any party from attempting to "exercise control" over or otherwise interfering with such causes of action. Indeed, a debtor-in-possession has the exclusive authority to pursue such claims and causes of action. *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 280 (3d Cir. 2020). Contrary to the command of § 362(a)(3), Plaintiff's Motion seeks a non-bankruptcy court—and advisory—determination directly bearing on the merits of certain successor liability claims. Thus, the Motion directly violates the automatic stay. Successor liability issues, if any, should be addressed in the bankruptcy court.

**C.     3M Is Providing The Information Required By The Court's Order.**

As discussed above, there is no ripe issue for this Court to decide, and if it decides to issue an opinion, it will be an advisory one with no force that will not change the outcome in the Bankruptcy Court. Further, even Plaintiff's motion does not present to the Court the merits of the successor liability issue. While Plaintiff argues—incorrectly—that 3M has waived or is judicially estopped from raising successor liability, he does not actually argue that successor liability would apply to his claims, nor to those of all other plaintiffs. Nor could he. For one, it is unknown at this stage what state law would govern Plaintiff's claims. *Cf. Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1456-59 (11th Cir. 1985) (analyzing the doctrine of successor liability under Georgia law).

And the law on successor liability can vary substantially by state, particularly as applied in a given situation. *See United States v. Gen. Battery Corp.*, 423 F.3d 294, 301 (3d Cir. 2005) ("[A]lthough the general doctrine of successor liability is largely uniform under state law, this uniformity is less apparent when the general standards are applied in specific cases." (internal quotations and citations omitted)). As the Seventh Circuit has explained, "[t]he entire issue of successor liability … is dreadfully tangled, reflecting the difficulty of striking the right balance between the competing interests at stake." *E.E.O.C. v. Vucitech*, 842 F.2d 936, 944 (7th Cir. 1988). Put simply, successor liability is a complicated issue of fact and law that

Plaintiff's motion does not present and that is not appropriate for adjudication by this Court under the circumstances.

3M nonetheless provides the following information in response to the Court's order on Plaintiff's motion for an expedited hearing requiring 3M to "outline" the following information:

> *the terms of [3M's] purchase of Aearo in 2008, including assumption of liabilities, if any, and also the reported 2010 transfer to 3M of "the component of [Aearo's] business responsible for the significant majority of its earplugs sales.*

MDL Dkt. 3364 at 1:

The terms of "[3M's] purchase of Aearo in 2008" are described in the Agreement and Plan of Merger, which was produced in discovery and marked in several depositions. 3M, its wholly owned subsidiary Titan Acquisition Subsidiary, Inc. ("Titan"), and Aearo Holding Corp. entered into the Agreement and Plan of Merger on November 14, 2007. Titan was created solely for purposes of this all-cash reverse triangular merger. 3M paid $1.2 billion to the shareholders of Aearo Holding Corp. and became the sole shareholder of Aearo Holding Corp.,[10] in accordance with the terms of the agreement. Titan merged into Aearo Holding Corp, after which Titan ceased to exist. As a result, 3M's shares in Titan were converted into the post-merger

---

[10]   On March 18, 2008, 3M incorporated "3M Occupational Safety, Inc." to be the sole shareholder in Aearo Holding Corp. On September 29, 2008, this corporation was converted to a limited liability company named 3M Occupational Safety LLC, which is a Debtor entity.

company, Aearo Holding Corp. This transaction closed in April 2008. At no point did Aearo Holding Corp. ever cease to exist, nor did it ever merge into 3M. As part of the Agreement and Plan of Merger, subject to exception not relevant here, "the identity, existence, corporate organization, purposes, powers, objects, franchises, privileges, rights, immunities, restrictions, debts, liabilities and duties (collectively, the 'Corporate Rights') of [Aearo Holding Corp.] shall continue in effect and be unimpaired by the Merger[.]" Ex. 1 (Agreement and Plan of Merger dated Nov. 14, 2007).

Subsequent to the merger, the Aearo Debtor entities were converted into limited liability companies. Additionally, certain Aearo entities conveyed certain intellectual property assets to other 3M entities, and certain Aearo employees became employees of 3M. In addition, in January 2010, certain assets and liabilities of Aearo Technologies' Product Safety business, which included its earplug business, were recorded on the books and records of 3M Company and for management reporting purposes. On or around January 2010, the Product Safety businesses income statement, which included its earplug business, was accounted for on a go-forward basis on 3M Company's books and records.

No Debtor was ever merged into 3M Company, no Sale Agreement was ever executed, and 3M Company never assumed any Debtor tort liabilities. It is axiomatic that a shareholder of a corporation is not liable for the liabilities of the corporation.

*See* Del. Code Ann. tit. 8, § 102(b)(6).[11] Similarly, a member of a limited liability company is not liable for the liabilities of the LLC. *See* Del. Code Ann. tit. 6, § 18-303. Thus, although to be sure the matter is not before the Court, it must be noted that 3M cannot be liable under Delaware law for the liabilities of Aearo simply because of the 2008 acquisition.[12]

The Court also ordered 3M to address:

> the extent to which the recent indemnification agreement bears on 3M's successor liability.

MDL Dkt. 3364 at 1:

The Funding and Indemnification Agreement entered between 3M and the Debtors is unambiguous as to the obligations of the parties:

> The Aearo Entity Earplug Defendants **shall and hereby agree to jointly and severally indemnify, defend and hold harmless the Payor [3M] and each of the Payor Affiliates** (each of which is an express third-party beneficiary of the provisions of this Section 3) from and against, and pay and reimburse Payor (or the applicable Payor Affiliate) for **any Losses incurred, sustained by or imposed on Payor or any Payor Affiliate arising out of, relating in any way to**

---

[11]   *See also Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *8-9 (Del. Super. Ct., Apr. 13, 1988) ("The continuation theory of corporate successor liability has been narrowly construed by the Delaware courts"; for the mere continuation exception to apply, the defendant "must be the same legal person, having a continued existence under a new name.").

[12]   In his Notice of Designated Forum, Plaintiff designated the United States District Court for the District of Minnesota. Minnesota choice-of-law rules would select Delaware successor liability law. *See Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*, 2012 WL 1799028, at *7–8 (C.D. Cal. Feb. 17, 2012) (finding that the law of the state of incorporation should apply under Minnesota's five factor test because applying the forum state's law would "decrease predictability, complicate the judicial task, disrespect the law of Countrywide's state of incorporation, and encourage forum shopping among plaintiffs."); *Minnesota Life Ins. Co. v. Countrywide Fin. Corp.*, 2012 WL 6742119, at *7 (C.D. Cal. Dec. 6, 2012) (applying law of the place of incorporation and determining that "Minnesota choice-of-law rules apply Delaware law to the de facto merger claim.").

> ***or in connection with any Earplug Liabilities***, including
> any Losses for reimbursement or other obligations of
> Payor or any Payor Affiliate under or in respect of any
> appeal bonds or similar litigation-related surety Contracts
> that are or have been posted or entered into by Payor or
> any Payor Affiliate in connection with Proceedings in
> respect of any Earplug Liabilities, as applicable.

*In re Aearo Techs. LLC, et al.*, No. 22-02890-JJG-11 (Bankr. S.D. Ind.), Dkt. 11-2 at 10 (emphases added). Thus, setting aside the intricacies of the doctrine of successor liability and whether given state law would apply to the claims of a particular plaintiff, the fact is that the Debtors are responsible for ***all*** 3M tort liabilities associated with the CAEv2.

Plaintiff does not mention the Funding and Indemnification Agreement in his motion despite his counsel's knowledge of and involvement in the bankruptcy proceedings thus far. *See In re Aearo Techs. LLC, et al.*, No. 22-50059 (Bankr. S.D. Ind.), Dkt. 53 at 6 (Agreed Entry Resolving Debtors' Request for a Temporary Restraining Order filed August 1, 2022 listing Adam Wolfson and Matthew Hosen as counsel to bellwether plaintiffs); *In re Aearo Techs. LLC, et al.*, No. 22-02890-JJG-11 (Bankr. S.D. Ind.), Dkt. 225 (motion to appear pro hac vice in Debtor bankruptcy proceedings filed by Matthew Hosen); *id.* Dkt. 263 (motion to appear pro hac vice in Debtor bankruptcy proceedings filed by Adam Wolfson). But under those agreements, even granting Plaintiff's motion would not "extricat[e]" Aearo (Mot. at 11) in terms of resource and monetary obligations. Pursuant to the

Indemnification Agreement, Aearo would remain liable to 3M for any liabilities assessed against it in the MDL, thus impeding Aearo's ability to "focus" "on the bankruptcy" (*id.*) and successfully restructure.

The Court should deny Plaintiff's motion.

## **CONCLUSION**

For these reasons, 3M respectfully requests the Court deny Plaintiff's motion in its entirety.

Dated: August 9, 2022

Respectfully submitted,

*/s/ Charles F. Beall, Jr.*
Charles F. Beall, Jr.
Moore, Hill & Westmoreland, P.A.
350 W Cedar St. Suite 100
Pensacola, FL 32502
Telephone: (850) 434-3541
Email: cbeall@mhw-law.com

*Attorneys for Defendant 3M Company*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this motion contains 6,332 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated: August 9, 2022                    Respectfully submitted,

                                         /s/ *Charles F. Beall, Jr.*
                                         Charles F. Beall, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

Respectfully submitted,

*/s/ Charles F. Beall, Jr.*
Charles F. Beall, Jr.