# EXHIBIT 41

```
 1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF FLORIDA
 2                     PENSACOLA DIVISION

 3    IN RE: 3M COMBAT ARMS         § CASE NO.:
      EARPLUG PRODUCTS LIABILITY    § 3:19-md-2885
 4    LITIGATION                    §
                                    §
                                    §
 5                                  §
      This Document Relates to:     § Judge M. Casey Rodgers
 6    All Wave 1 Cases              §
                                    §
 7                                  §
                                    § Magistrate Judge
 8                                  § Gary R. Jones
 9
10
11        *******************************************
12            REMOTE VIDEOCONFERENCED DEPOSITION OF
13                   JOHN BERTELSON, M.D.
14                     JUNE 24, 2022
15        *******************************************
16
17
18
19
20
21
22
23
24
25    Job No. 310339
```

```
 1            REMOTE VIDEOCONFERENCED DEPOSITION OF JOHN
 2   BERTELSON, M.D., produced as a witness at the
 3   instance of the Plaintiffs, and remotely duly sworn
 4   by agreement of all counsel, was taken in the
 5   above-styled and numbered cause on June 24, 2022,
 6   from 1:03 p.m. to 3:57 p.m., before Karen L. D.
 7   Schoeve, RDR, CRR, RSA, reported remotely by
 8   computerized machine shorthand, pursuant to the
 9   Federal Rules of Civil Procedure, Pretrial Order No.
10   13, Pretrial Order No. 35, Pretrial Order No. 60,
11   and the Stipulation Regarding Expert Discovery for
12   Wave Cases, and the provisions stated on the record
13   or attached hereto.
14
15            REPORTER'S NOTE:  Please note that due to the
16   quality of a Zoom videoconference and transmission
17   of data and overspeaking causes audio distortion
18   which disrupts the process of preparing a
19   videoconference transcript.
20
21            Quotation marks are used for clarity and do
22   not necessarily reflect a direct quote.
23
24
25
```

```
 1                A P P E A R A N C E S
 2
        *********************************************
 3
                     ALL PARTIES APPEARED
 4                    REMOTELY VIA ZOOM
 5      *********************************************
 6
    FOR THE PLAINTIFFS:
 7
            JENNIFER M. HOEKSTRA, ESQUIRE
 8          AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
            17 East Main Street, Suite 200
 9          Pensacola, Florida 32502
            T: 850.202.1010
10          F: 850.916.7449
            jhoekstra@awkolaw.com
11
12  FOR DEFENDANTS 3M COMPANY, 3M OCCUPATIONAL SAFETY
    LLC, AEARO TECHNOLOGIES LLC, AEARO HOLDINGS, LLC,
13  AEARO INTERMEDIATE, LLC and AEARO, LLC:
14          DIANA CLOUGH BENTON, ESQUIRE
            KIRKLAND & ELLIS LLP
15          609 Main Street
            Houston, Texas 77002
16          D: 713.836.3461
            T: 713.836.3600
17          diana.benton@kirkland.com
18
    ALSO PRESENT:
19
20     Melissa Bardwell, Videographer
          Litigation Services
21
22  CERTIFIED STENOGRAPHIC COURT REPORTER:
23       Karen L. D. Schoeve
         Certified Realtime Reporter
24       Registered Diplomate Reporter
         Realtime Systems Administrator
25
```

1  mild.  The term concussion is commonly used

2  interchangeably with mild TBI."

3           Do you see that?

4      A.  I do.

5      Q.  What process goes into a formal diagnosis

6  of a mild TBI?

7           (Background noise)

8      A.  I'm sorry.  Someone said something?  Oh, I

9  thought I heard something.

10          So it depends on the circumstances.

11 If it's a patient in front of me, I will go through

12 the differential diagnosis process we referred to

13 earlier, gather a history, do an examination, create

14 a differential order, and, if there were tests, go

15 over the test results.

16          If it's a chart review, then I will

17 review the medical records, testimonies, whatever

18 other information I have in order to try to

19 determine what sort of injury may have occurred

20 based on the records that have been provided to me.

21     Q.  Okay.  So in your clinical practice, you

22 do noncontemporaneous TBI diagnoses; is that

23 accurate?

24     A.  Yeah.  And I'm sorry.  I was an engineer,

25 not any kind of contemporaneous that you alluded to.

 1   indicates, "Traumatic brain injury, especially mild

 2   TBI, is a common injury in servicemembers.  TBI in

 3   this population can be caused by blast and non-blast

 4   related events."

 5             Is there any specific portion of your

 6   report above that that correlates to that opinion?

 7       A.   Sure.  I can quote you a line from Section

 8   Number 2, which speaks to that, and some of that is

 9   just kind of, you know, common sense --

10       Q.   Okay.

11       A.   -- common medical knowledge.

12       Q.   Number 3 under your summary and

13   conclusions for your opinions is, "Routine head CT

14   and brain MRI are usually normal in the setting of

15   mild TBI."

16             Do you see where I'm at?

17       A.   I do.

18       Q.   Are you familiar with review of military

19   medical records?

20       A.   Am I familiar with the review of military

21   medical records?

22       Q.   Yes, sir.

23       A.   I don't know how that would be

24   fundamentally different than the review of

25   nonmilitary medical records.

1          Do you see where I'm at?

2     A.   I do.

3     Q.   And you state that some literature

4  suggests that exposure to repeated low-level

5  pressure blast waves can result in evidence of brain

6  injury, even in the absence of a diagnosed TBI; is

7  that accurate?

8     A.   Yes.  I didn't see that on this page you

9  just showed me, but that does sound accurate from

10 what I read and what I wrote.

11    Q.   Okay.  And you have a citation here for --

12 and I'm going to pronounce it incorrectly --

13 Boutte 2021.

14         Do you see where I'm at on your

15 report, on page 5 --

16    A.   Yes.

17    Q.   -- of the .pdf?

18    A.   Yes.

19    Q.   Do you have any other references or

20 sources for that opinion other than Boutte 2021?

21    A.   I don't have any other references.  I have

22 some clinical experience that's at least indirect,

23 that I'm happy to speak to.

24    Q.   And what is that clinical experience?

25    A.   So I've evaluated a number of retired NFL

1  football players who have reported a number of

2  concussions during their professional experience,

3  academic experience, and many report taking hits

4  that don't always produce concussive sort of

5  symptoms.  They may have kind of what I'll call

6  subconcussive injuries or a hit to the head without

7  necessarily experiencing any symptoms.

8             So I guess as I'm -- as I just spoke,

9  then, that doesn't speak to pressure blast waves or

10 serologic injury or brain injury.

11            So I'm sorry if I took on a bit of a

12 tangent.  I apologize.

13      Q.   No, that's okay.  I wanted to ask you

14 about the NFL concussion references later, anyhow.

15            You're offering an opinion that

16 there's literature supporting -- or suggesting that

17 exposure from low-level pressure blast waves can

18 cause a brain injury even in the absence of a

19 diagnosed TBI; is that accurate?

20            MS. BENTON:  Object to form.

21      A.   Yes.

22            THE WITNESS:  Sorry.

23      Q.   (BY MS. HOEKSTRA)  But you're not

24 suggesting in your report that all plaintiffs with a

25 medical history of low-level pressure blast waves

1   hearing loss and tinnitus in the report.  So yes, I
2   have.
3       Q.   Okay.  Would you agree with me that it's
4   difficult to attribute, to a degree of medical
5   certainty, a TBI as a cause of any tinnitus or
6   hearing loss symptoms unless there was specific
7   testing done at the time of the noise exposure to
8   diagnose an individual with a TBI?
9            MS. BENTON:  Object to form.
10      A.   No.  And that was -- I got this -- no.
11  Can you ask the question again?
12      Q.   (BY MS. HOEKSTRA)  Would you agree with me
13  that it's difficult to attribute, to a degree of
14  medical certainty, a TBI as a cause of tinnitus or
15  hearing loss from a patient unless there was a
16  specific TBI diagnosis made at the time of the noise
17  or blast exposure?
18           MS. BENTON:  Object to form.
19      A.   No, I wouldn't agree with that.
20      Q.   (BY MS. HOEKSTRA)  In your clinical
21  practice, how often do you diagnose someone with a
22  TBI that occurred more than 10 years in the past?
23      A.   From my NFL players, I do that quite a
24  bit.
25      Q.   Okay.  What percentage of your clinical

1      A.   Yes.  That's pertaining to that reference,
2  yes.
3      Q.   Okay.  But you also go on to note that the
4  literature does not consistently identify an
5  association between PTSD and tinnitus; is that
6  accurate?
7      A.   Yes.  That was referring to another
8  author, but that's right.
9      Q.   Are you intending to offer an opinion that
10 there is consistent identification between -- sorry,
11 consistent association between PTSD and tinnitus?
12     A.   Well, it wouldn't be consistent, because
13 not every article would indicate that.  But I would
14 offer an opinion that individuals with PTSD would be
15 at a higher likelihood of reporting tinnitus.
16     Q.   So you go on to indicate that it should
17 not be unexpected that patients with PTSD would
18 likely be more bothered with tinnitus than patients
19 without PTSD.
20          Is that accurate?
21     A.   That's right.
22     Q.   But you're not suggesting somehow that
23 there's a causal effect between PTSD and tinnitus;
24 is that accurate?
25     A.   Well, I mean, I would say that PTSD would

John Bertelson, M.D.

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
 2                   PENSACOLA DIVISION

 3   IN RE: 3M COMBAT ARMS        § CASE NO.:
     EARPLUG PRODUCTS LIABILITY   § 3:19-md-2885
 4   LITIGATION                   §
                                  §
                                  §
 5                                §
     This Document Relates to:    § Judge M. Casey Rodgers
 6   All Wave 1 Cases             §
                                  §
 7                                §
                                  § Magistrate Judge
 8                                § Gary R. Jones
 9
10   *******************************************
11        REMOTE VIDEOCONFERENCED DEPOSITION OF
12              JOHN BERTELSON, M.D.
13                  JUNE 24, 2022
14   *******************************************
15
16              CERTIFIED STENOGRAPHIC
17            COURT REPORTER'S CERTIFICATE
18
19      I, Karen L. D. Schoeve, Registered Diplomate
20   Reporter, Certified Realtime Reporter, and Realtime
21   Systems Administrator, residing in the State of
22   Texas, do hereby certify that the foregoing
23   proceedings were reported remotely by me and that
24   the foregoing transcript constitutes a full, true,
25   and correct transcription of my stenographic notes,
```

 1   to the best of my ability and hereby certify to the

 2   following:

 3          By agreement of all attending attorneys, the

 4   witness, JOHN BERTELSON, M.D., was remotely duly

 5   sworn by the officer and that the transcript of the

 6   oral deposition is a true record of the testimony

 7   given by the witness;

 8          That the original deposition was delivered to

 9   JENNIFER M. HOEKSTRA, custodial attorney;

10          That a copy of this certificate was served on

11   all parties and/or the witness shown herein on

12   _____.

13          I further certify that pursuant to FRCP No.

14   30(f)(i) that the signature of the witness was

15   requested by the witness or a party before the

16   completion of the deposition and the signature is to

17   be returned within 30 days from date of receipt of

18   the transcript.

19          If returned, the attached Changes and

20   Signature Page contains any changes and the reasons

21   therefor.

22          That pursuant to information given to the

23   deposition officer at the time said testimony was

24   taken, the following includes counsel for all

25   parties of record:

```
 1
 2   FOR THE PLAINTIFFS:
 3       JENNIFER M. HOEKSTRA, ESQUIRE
         AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
 4       17 East Main Street, Suite 200
         Pensacola, Florida 32502
 5       T: 850.202.1010
         F: 850.916.7449
 6       jhoekstra@awkolaw.com
 7
     FOR DEFENDANTS 3M COMPANY, 3M OCCUPATIONAL SAFETY
 8   LLC, AEARO TECHNOLOGIES LLC, AEARO HOLDINGS, LLC,
     AEARO INTERMEDIATE, LLC and AEARO, LLC:
 9
         DIANA CLOUGH BENTON, ESQUIRE
10       KIRKLAND & ELLIS LLP
         609 Main Street
11       Houston, Texas 77002
         D: 713.836.3461
12       T: 713.836.3600
         diana.benton@kirkland.com
13
14
15        I further certify that I am neither counsel
16   for, related to, nor employed by any of the parties
17   in the action in which this proceeding was taken,
18   and further that I am not financially or otherwise
19   interested in the outcome of the action.
20
21
22
23
24
25
```

```
 1        Subscribed and sworn to on this the 27th day
 2   of June, 2022.
 3
 4
 5
 6
 7
 8
     _____
 9   Karen L.D. Schoeve, RDR, CRR
     Realtime Systems Administrator
10   NCRA Exp. Date:  09-30-24
     Litigation Services
11   Firm Registration No. 726
     3960 Howard Hughes Parkway, Suite 700
12   Las Vegas, Nevada 89169
     T: 877.370.3777
13   F: 917.591.5672
14
15
16
17
18
19
20
21
22
23
24
25   Job No. 310339
```