# EXHIBIT 52

```
                                                                Page 1
 1                      HIGHLY CONFIDENTIAL
 2              UNITED STATES DISTRICT COURT
                    DISTRICT OF MINNESOTA
 3
                         - - - - -
 4
     MOLDEX-METRIC, INC.,    )
 5                           )
             Plaintiff,      )
 6                           )
             vs.             ) Civil No.
 7                           ) 14-cv-1821 (JNE/FLN)
     3M COMPANY and 3M       )
 8   INNOVATIVE PROPERTIES   )
     COMPANY,                )
 9                           )
             Defendants.     )
10
                         - - - - -
11
     VIDEOTAPED DEPOSITION OF KEVIN L. MICHAEL, PH.D.
12
                         - - - - -
13
                    HIGHLY CONFIDENTIAL
14
                         - - - - -
15
                    October 29, 2015
16
                         - - - - -
17
18
19
20
21
22
23
                         - - - -
24   Reported By: Michelle Hall
25   Job No: 99416
```

TSG Reporting - Worldwide - 877-702-9580

3M Confidential - Attorneys' Eyes Only                    3M00026902

Page 2

```
 1         HIGHLY CONFIDENTIAL
 2   VIDEOTAPED DEPOSITION OF KEVIN L. MICHAEL, PH.D.,
 3   a 30(b)(6) witness herein, called by the
 4   Defendant, 3M, for examination, taken pursuant
 5   to the Federal Rules of Civil Procedure, by and
 6   before Michelle L. Hall, a Registered Merit
 7   Reporter and Notary Public in and for the
 8   Commonwealth of Pennsylvania, at the law
 9   offices of McQuaide Blaski, 811 University
10   Drive, State College, Pennsylvania, on
11   Thursday, October 29, 2015, at 9:36 a.m.
12                - - - - -
13            A P P E A R A N C E S
14
     ON BEHALF OF THE PLAINTIFF:
15
         Kevin Conneely, Esquire
16       STINSON LEONARD STREET
         150 South Fifth Street
17       Minneapolis, MN 55402
             And
18       Harold Barza, Esquire (Via Telephone)
         Quinn Emanuel Urquhart & Sullivan
19       865 South Figueroa Street
         Los Angeles, CA 90017
20
     ON BEHALF OF THE WITNESS:
21
         David Mason
22       MASON LAW OFFICE
         200 North Front Street
23       Philipsburg, PA 16866
24
25
```

Page 3

```
 1         HIGHLY CONFIDENTIAL
 2   ON BEHALF OF THE DEFENDANTS, 3M COMPANY AND 3M
     INNOVATIVE PROPERTIES COMPANY, INC.:
 3
         Calvin Litsey, Esquire
 4       Peter Routhier, Esquire
         FAEGRE BAKER DANIELS
 5       1950 University Avenue
         East Palo Alto, CA 94303
 6           And
         Ann Anaya, Senior Counsel
 7       3M Legal Affairs
         3M Center Building
 8       St. Paul, MN 55144
 9
     ALSO PRESENT: Kelly Boyd, Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1         HIGHLY CONFIDENTIAL
 2             I N D E X
 3              - - - - -
 4   WITNESS: KEVIN L. MICHAEL, PH.D.
 5
 6   E X A M I N A T I O N:         PAGE
 7
 8   BY MR. LITSEY                    7
 9   BY MR. CONNEELY                 91
10
11   E X H I B I T S:
12
13   EXHIBIT 1111                     8
14   Subpoena for Kevin Michael Dated October 29,
     2015
15
     EXHIBIT 1112                    10
16
     Subpoena for Kevin Michael Dated September 28,
17   2015
18   EXHIBIT 1113                    11
19   Collection of documents Bates Range 000001
     through 000335
20
     EXHIBIT 1114                    66
21
     E-mail from Crest Turdjian to Jim Hornstein
22   with attachments, Dated 9/21/2010, Bates Nos.
     MM00106768 through
23   MM00106774
24
25
```

Page 5

```
 1         HIGHLY CONFIDENTIAL
 2   EXHIBIT 1115                    82
 3   E-mail from Kuk Kim to Jim Hornstein with
     attachments, Dated 9/21/2010, Bates Nos.
 4   Moldex00126315 through Moldex00126318
 5   EXHIBIT 1116                    83
 6   String of e-mails Bates Nos. Moldex00148111
     through Moldex00148118
 7
     Exhibit 1117                   105
 8
     Letter dated November 1, 2010, from Kevin
 9   Michael to Crest Turdjian, Bates Nos.
     MM00010840 through MM00010842
10
     Exhibit 1118                   107
11
     Letter dated November 1, 2010, from Kevin
12   Michael to Crest Turdjian, Bates Nos.
     MM00010843 through MM00010845
13
     Exhibit 1119                   110
14
     E-mail from Kevin Michael to Crest Turdjian
15   dated 11/1/2010, with attachments, Bates Nos.
     MM00106742 through MM00106749
16
     Exhibit 1120                   112
17
     E-mail from Kevin Michael to Bernard Mishkin
18   dated 11/3/2010, with attachments, Bates Nos.
     Moldex00149220 through Moldex 00149232
19
20
21
22
23
24
25
```

2 (Pages 2 to 5)

TSG Reporting - Worldwide - 877-702-9580

3M Confidential - Attorneys' Eyes Only                         3M00026903

```
                                                          Page 58
 1           HIGHLY CONFIDENTIAL
 2           MR. CONNEELY: Object to the
 3   form. It's leading and compound.
 4       Q.  All right. Well, let me quote from
 5   the document. "These listeners were selected
 6   from a standby group of about 35 volunteers,
 7   mostly graduate students, who regularly serve
 8   as listeners for measurements of this kind."
 9   Did I read that correctly?
10       A.  Yes.
11       Q.  And is that an accurate statement of
12   the listeners who were selected for this test?
13       A.  Yes.
14       Q.  And those, that standby group of
15   about 35 volunteers, is the group that you
16   described earlier that's selected in the way
17   that you testified earlier?
18       A.  Yes.
19       Q.  Did you personally participate in
20   this testing?
21       A.  No.
22       Q.  So, this test was conducted by Miss
23   Clinger?
24       A.  Kline.
25       Q.  Kline. I'm sorry, Kline. Is that
```

```
                                                          Page 59
 1           HIGHLY CONFIDENTIAL
 2   right?
 3       A.  Yes.
 4       Q.  Do you recall whether any of the
 5   test members for this test were excluded or
 6   not?
 7       A.  No.
 8       Q.  You don't recall?
 9       A.  No.
10       Q.  And do you know how the open end of
11   the Combat Arms Version 2 earplug was fit in
12   this particular case for this test?
13           MR. CONNEELY: Objection.
14   Lack of foundation and vague.
15       A.  Just like we fit every other
16   product.
17       Q.  And how would that be?
18       A.  As I described before.
19       Q.  Do you know if anything different or
20   special was done in terms of the fitting for
21   the Combat Arms Version 2 test that's reflected
22   in this report on Pages 23 through 25?
23       A.  No.
24           MR. CONNEELY: Excuse me,
25   counsel. You just said Version 2.
```

```
                                                          Page 60
 1           HIGHLY CONFIDENTIAL
 2           MR. LITSEY: Right.
 3           MR. CONNEELY: Is that
 4   reflected in the document? Maybe the witness
 5   already testified to it.
 6           MR. LITSEY: Yeah, he did.
 7           MR. CONNEELY: Okay. Thank
 8   you.
 9   BY MR. LITSEY:
10       Q.  If you look at, I guess this -- let
11   me find the page. I think there's actually
12   a -- if you look at Page 201 of this Idaho
13   National Laboratory report, there's a diagram
14   of a Combat Arms earplug fit in an ear canal.
15   Do you see that?
16       A.  Yes.
17       Q.  That's in Figure 3 on Page 201?
18       A.  Yes.
19       Q.  Is it your understanding, is that
20   the way the Combat Arms Version 2 earplug was
21   fit for the lab tests that you conducted that
22   appears as the report on Pages 23 through 25?
23           MR. CONNEELY: Objection.
24   Foundation, speculation. He's already
25   testified he did not conduct the fitting.
```

```
                                                          Page 61
 1           HIGHLY CONFIDENTIAL
 2       A.  Approximately.
 3       Q.  If you could turn to the next test
 4   which starts on Page 26 and goes through
 5   Page 28, this is, again, another report dated
 6   March 28, 2012, relating to the -- I guess this
 7   is for the closed end of the Combat Arms
 8   Version 2; is that right?
 9       A.  Yes.
10       Q.  And this test report number is
11   Q2559A; is that right?
12       A.  Correct.
13       Q.  Were you personally involved in
14   conducting this test, Dr. Michael?
15       A.  No.
16       Q.  So this was a test conducted by Miss
17   Kline?
18       A.  Yes.
19       Q.  And it looks like the listener group
20   selected for this test was from the same
21   standby group of about 35 volunteers who are
22   among the panel members whose selection process
23   you described earlier?
24       A.  Yes.
25           MR. CONNEELY: Objection to
```

3M Confidential - Attorneys' Eyes Only

3M00026917

Page 62

HIGHLY CONFIDENTIAL

1 the form. It's leading, and it lacks
2 foundation as to whether they're the exact
3 same.
4     Q.   Do you know whether anyone who was
5 involved in this test was excluded at some
6 point and replaced?
7     A.   No.
8     Q.   And is it your understanding that
9 the Combat Arms Version 2 closed end of the
10 earplug was fitted for this test in the same
11 way that's generally shown in Figure 3 on
12 Page 201?
13          MR. CONNEELY: Object to the
14 form. Foundation.
15     A.   Approximately.
16     Q.   Okay. Do you recall anybody --
17 well, I guess do you recall Miss Kline ever
18 discussing with you fitting the closed end of
19 this earplug in a manner that required the
20 yellow open end to be rolled back on one of the
21 flanges?
22     A.   I don't recall that.
23     Q.   Do you ever recall any testing of a
24 Combat Arms Version 2 earplug that your lab has

Page 63

HIGHLY CONFIDENTIAL

1 conducted where the earplug was fit by rolling
2 back the third flange of the opposite side?
3     A.   I don't recall that.
4     Q.   If you look at Page 22 of
5 Exhibit 1113, there is an e-mail from you to
6 Mr. Mishkin on March 28, 2012; is that right?
7     A.   Yes.
8     Q.   And you're reporting to him the
9 results of your NRR tests on these two, the
10 open and the closed ends of the Combat Arms
11 Version 2; is that right?
12     A.   Correct.
13     Q.   Did you discuss these test results
14 with anyone at Moldex?
15     A.   Not that I recall.
16     Q.   Did anyone -- did Mr. Mishkin tell
17 you what he was planning to do with these test
18 results?
19     A.   No.
20     Q.   Have you ever had any discussions
21 with anyone at Moldex about these test results?
22     A.   Just about the testing. Not about
23 what they planned to do with them.
24     Q.   Okay. What do you recall about the

Page 64

HIGHLY CONFIDENTIAL

1 testing? Any discussions that you had about
2 the testing, who were those with?
3     A.   Bernard. And I don't remember the
4 contents of the discussion.
5     Q.   This was with Bernard Mishkin?
6     A.   Yes.
7     Q.   When were those discussions,
8 approximately?
9     A.   I don't remember if there were any
10 for sure. If there were, they were likely
11 around March 28, 2012.
12     Q.   Again, so as you sit here today, you
13 don't have any specific memory of a specific
14 conversation with Mr. Mishkin about the test
15 results on the Combat Arms Version 2 earplug?
16     A.   Right.
17     Q.   Okay. Let me turn briefly to
18 another test your lab conducted. This one's on
19 Page 11 of Exhibit 1113 through 13. So, again,
20 Pages 11 through 13. It looks like a June 16,
21 2009, test report No. Q1929A; is that right?
22     A.   Yes.
23     Q.   And this was a lab test your lab
24 conducted on the AEARO Combat Arms Version 3

Page 65

HIGHLY CONFIDENTIAL

1 single-sided open, in open mode; is that right?
2     A.   Yes.
3     Q.   By the way, if you look at the first
4 page of this report, after the test report
5 number, it says, revision zero.
6     A.   Yes.
7     Q.   Do you see that? What does that
8 mean? Does that mean that there were no
9 subsequent revisions to this report?
10          MR. CONNEELY: Objection.
11 Foundation.
12     Q.   Why don't you just explain what the
13 revision --
14     A.   It's the first version. If I have
15 to go in and make changes, it would be revision
16 one.
17     Q.   Got it. And then if you look at
18 Pages 14, 15, and 16, this is another test
19 report by your lab. This one, June 16, 2009,
20 report No. Q1930A. This would have been on the
21 closed end of the Version 3 AEARO Combat Arms
22 single-sided earplug; is that right?
23     A.   Yes.
24     Q.   In terms of your lab's numbering, I

3M Confidential - Attorneys' Eyes Only

3M00026918

Page 126

```
 1        HIGHLY CONFIDENTIAL
 2  only one. It was a 30(b)(6). It is concluded.
 3        MR. CONNEELY: Okay. Thank
 4  you. We have no further questions.
 5        THE VIDEOGRAPHER: This
 6  concludes the deposition of Kevin Michael. The
 7  time is now 1:47 p.m., as indicated on the
 8  screen, and this is the end of media unit two.
 9        (Signature not waived.)
10        (Whereupon, the above-entitled
11  matter was concluded at 1:47 p.m.)
12              - - - - -
13
14
15
16
17
18
19
20
21        _____
22           KEVIN L. MICHAEL, PH.D.
    Subscribed and sworn to before me this
23  _____ day of _____, 2015.

24  _____
        Notary Public        (MLH)
25
```

Page 127

```
 1  NAME OF CASE:
 2  DATE OF DEPOSITION:
 3  NAME OF WITNESS:
 4  Reason Codes:
 5     1. To clarify the record.
 6     2. To conform to the facts.
 7     3. To correct transcription errors.
 8  Page _____ Line _____ Reason _____
 9  From _____ to _____
10  Page _____ Line _____ Reason _____
11  From _____ to _____
12  Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
17  From _____ to _____
18  Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
21  From _____ to _____
22  Page _____ Line _____ Reason _____
23  From _____ to _____
24
                _____
25
```

Page 128

```
 1
 2  COMMONWEALTH OF PENNSYLVANIA)
    COUNTY OF ALLEGHENY        )
 3
 4        I, Michelle L. Hall, a notary public
    in and for the Commonwealth of Pennsylvania, do
 5  hereby certify that the witness, KEVIN L.
    MICHAEL, PH.D., was by me first duly sworn to
 6  testify the truth, the whole truth, and nothing
    but the truth; that the foregoing deposition
 7  was taken at the time and place stated herein;
    and that the said deposition was recorded
 8  stenographically by me and then reduced to
    typewriting under my direction, and constitutes
 9  a true record of the testimony given by said
    witness, all to the best of my skill and
10  ability.
11        I further certify that the inspection,
    reading and signing of said deposition were not
12  waived by counsel for the respective parties
    and by the witness and if after 30 days the
13  transcript has not been signed by said witness
    that the witness received notification and has
14  failed to respond and the deposition may then
    be used as though signed.
15
          I further certify that I am not a
16  relative, or employee of either counsel, and
    that I am in no way interested, directly or
17  indirectly, in this action.
18        IN WITNESS WHEREOF, I have hereunto
    set my hand and affixed my seal of office this
19  10th day of November, 2015.
20
21
22        S/Michelle L. Hall
          _____
23
24        _____
25
```

33 (Pages 126 to 128)

TSG Reporting - Worldwide - 877-702-9580

3M Confidential - Attorneys' Eyes Only                                    3M00026934