# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>*All Cases* | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

## PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT 3M COMPANY

# INTRODUCTION

Since they were first created in 1789, Congress empowered federal courts to issue injunctions to protect their jurisdiction. Preventing litigants from fleeing to a new tribunal to press issues this Court has resolved is exactly the sort of attack on the Court's adjudicatory authority that the All Writs Act was designed to thwart:

- "The All Writs Act . . . empower[s] federal courts to protect final judgments and res judicata principles by enjoining [ ] court proceedings." Ex. 1, *Petitta* Br. at 3.

- An injunction is necessary when "[a party's] counsel ha[s] made clear, through their briefing, that they intend to revisit many of the discovery [ ] orders of the MDL. If successful, the parties in this MDL will no longer be able to rely on this Court's rulings as generally applicable to the litigation as a whole - the rulings of the [bankruptcy] court will control." *Id.* at 10.

- "Other MDL courts have exercised their statutory authority to prevent [other] court litigation from undermining coordinated proceedings and collaterally attacking the Court's pretrial orders." Ex. 2, *Petitta* Reply at 2 (citing *In re Rezulin Prods. Liab. Litig. and In re Corrugated Container Antitrust Litig*, 223 F.R.D. 109, 119 (S.D.N.Y. 2004)).

- "This would fragment a litigation that, thus far, has proceeded in a coordinated manner. Enjoining [3M is] . . . an appropriate exercise of that discretion to protect the objectives of the MDL." *Id.* at 10.

These principles should have a familiar ring to 3M. They are 3M's own words, deployed by the company when plaintiffs in another consolidated proceeding sought to undermine the MDL court's jurisdiction by seeking refuge in other courts. Of course, 3M won crucial rulings it sought to preserve in that MDL. Apparently, 3M's true position is that an MDL court has the power to protect its jurisdiction when it is wielded to issue judgments 3M likes, but it must defer to another tribunal when 3M is dissatisfied with the MDL court's orders, decisions, or final judgments. That is nonsense. Protecting this Court's jurisdiction, and with it the integrity of the judicial process, turns on neutral principles that are plainly implicated here.

Rather than seriously engaging with those principles, 3M claims that it is *not* attempting to relitigate issues that this Court has already decided. That assertion blinkers objective reality. The entire purpose of Debtors' bankruptcy is hiding in plain sight: to undo this Court's evidentiary, scientific, and summary-judgment rulings, and to disregard adverse, final jury verdicts as "tainted" due to this Court's supposed errors. That purpose is a textbook collateral attack on *this* Court's constitutional and statutory jurisdiction. 3M's suggestion that this Court must defer to the *Bankruptcy Court*, the very forum where 3M plans to relitigate this Court's decisions, would erase the All Writs Act from the Statutes at Large.

3M may disagree with this Court's rulings, and it can vindicate that right by appealing. What it cannot do is disrespect the authority of our Nation's judicial system by treating three-and-a-half years' worth of painstaking litigation as little more than a dress rehearsal. In our civil justice system, a trial on the merits is "the main event," not simply "a tryout on the road" to some later, determinative hearing. *Wainright v. Sykes*, 433 U.S. 72, 90 (1977). This Court wields the "judicial power of the United States." U.S. Const. Art. III, Sec. 1. It must protect that vested jurisdiction against 3M's unabashed assault.[1]

## ARGUMENT

### I. This Court has unambiguous authority to protect its jurisdiction under the All Writs Act.

"Federal courts have both inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc). 3M does not dispute that through the All Writs Act, Congress "codified" "the long

---

[1] 3M represents to this Court, with no citation, that "a majority of plaintiffs in this MDL [ ] have demanded 3M's participation in the bankruptcy case." Dkt. 3370 at 8, 19. Plaintiffs' counsel has vehemently opposed *any* stay as it pertains to 3M. *See, e.g.*, *3M Occupational Safety LLC et al. v. Those Parties listed on Appendix A to the Complaint, et al*, 22-5890 Dkt. 16, 19 (objections filed by Plaintiff leadership to the Debtors' motion for a temporary restraining order); Dkt 3361. 3M may be alluding to plaintiffs' discovery requests to oppose the Aearo Debtors' preliminary injunction, but that action is to prevent 3M from using the bankruptcy to divest itself of this Court's jurisdiction. 3M knows that, and to represent otherwise to this Court, is nothing short of reprehensible.

recognized power of the courts of equity to effectuate their decrees by injunctions or writs of assistance and *thereby avoid relitigation* of questions once settled between the same parties." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) (emphasis added). To effect this purpose, the All Writs Act grants "broad powers [ ] to federal courts." *Id.* There is no authority—none—for the proposition that this Court's broad powers suddenly vanish if the disgruntled litigant plans its collateral attack in a bankruptcy tribunal.

3M claims that the All Writs Act must yield in the face of the specific statutory commands of the Bankruptcy Code. Dkt. 3370 at 21. That misdirection does not withstand scrutiny. It is true that Courts cannot issue injunctions under the All Writs Act when doing so would defy specific provisions of federal statutes, as that use of equity would not be "agreeable to the usages and principles of law." 28 U.S.C. § 1651. But no provision of the Bankruptcy Code empowers *non-debtor* 3M to proceed unfettered in the Bankruptcy Court—free to impugn this Court's myriad carefully reasoned decisions. The automatic stay protects the *debtors* in a bankruptcy case. And as 3M knows full well, Valle's motion seeks no relief against the Debtors.

Defying the plain text of the Bankruptcy Code, 3M nevertheless argues that *it* is subject to the automatic stay. *See* Dkt. 3370 at 15-22. That position fails. *First*, this court "not only has jurisdiction to determine its jurisdiction, but actually

5

possesses the authority to construe § 362 and decide what effect that statute has on the multidistrict [ ] litigation." *Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.,* 140 B.R. 969, 973 (N.D. Ill. 1992) (Easterbrook, J.) (applying All Writs Act to enjoin parties from enforcing bankruptcy court's TRO to stop litigation in multidistrict patent case). Whether 3M enjoys the benefit of the automatic stay—and thus whether an All Writs Act injunction would be disagreeable to the "usages and principles of law"—is for this Court to decide. And it has already decided: "Defendant 3M company is not a debtor in the bankruptcy cases; therefore, the automatic statutory stay does not apply to it by operation of law." Dkt. 3329. The Court should adhere to that decision. Because there is no conflict between enjoining 3M and the Bankruptcy Code, this Court retains the full measure of its authority under the All Writs Act.

*Second,* even if this Court should abjectly defer to the Bankruptcy Court's determination of whether 3M enjoys the benefits of the automatic stay (and it should not), the Bankruptcy Court has also rejected 3M's attempt to claim the benefits reserved to debtors in bankruptcy. Dkt. 3358-4, July 27, 2022 Bankr. Hrg. at 103:8-105:22 ("Well I guess you may teach me because I disagree with you, but I don't know if you're going to have an apt student here. The stay doesn't automatically apply to random people.").

6

The cases 3M cites do not change this conclusion. Most focus on a court's application of the § 362 automatic stay *to a debtor* or otherwise concern a permanent injunction already issued to protect a debtor. *See Meadows v. Commissioner*, 405 F.3d 949, 953 (11th Cir. 2005) (action by a debtor); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1259 (11th Cir. 2021) (involving claims brought against debtor); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 511 B.R. 375, 386 (Bankr. S.D.N.Y. 2014) (enjoining claims already covered by a permanent injunction).

3M is not a debtor in bankruptcy; it is brazenly attempting to undermine this Court's jurisdiction; equitable relief against 3M is fully authorized; and that relief will not in any way deprive the Bankruptcy Court of its authority to preside over the Debtors. 3M's specious arguments to the contrary should be rejected.

## II.    3M is attempting to re-litigate this Court's prior rulings.

Unable to dilute this Court's power under the All Writs Act, 3M attempts to sanitize its collateral attack on this Court's rulings. 3M claims it is not seeking to undermine or relitigate this Court's decisions, but merely wants "to provide equitable compensation to holders of compensable claims." Dkt. 3370 at 24. Has 3M no shame? Does it honestly believe this Court should ignore the way the way the integrity of this MDL was besmirched over and again in the Bankruptcy Court? Let there be no mistake: 3M plans to put this Court's rulings—its exercise of constitutional and statutory jurisdiction—on trial:

- "What we decided to do is to go through the MDL process. And what we found in the process of doing that is how unbelievably broken it is. *I don't think that there's a single MDL in history that is as broken as this one is*." Ex. 3, 7/27/22 Bankr. AM. Tr. 38:20-25.

- "I am blaming the district judge in the sense that there was a departure from the case management standards that are used in other cases." *Id.* 39:21-23.

- "[Judge Rodgers] has actually given the definition of irreparable harm, which is a distorted – a distorted litigation process that's not working." *Id.* 57:15-17.

- "Before the trials began, the MDL court denied Aearo's and 3M's summary judgment motion that the government contractor defense barred plaintiffs' claims, and granted plaintiffs' motion for summary judgment against that same defense. As a result, large swaths of evidence regarding the military's role in the design and development of the Combat Arms earplug were excluded from trial." Dkt. 3358-2, Infor. Br. at 9.

- "And the 'staggering' burden that the MDL court recently predicted would befall other federal courts throughout the country upon remand will be averted. Meanwhile, Aearo and 3M will be able to resolve the claims against them on a scientific basis *based on a fair and complete evidentiary record*." *Id.* at 61.

There is no ambiguity. 3M will seek to compress the value of the Plaintiffs' claims by attempting to convince the Bankruptcy Court that this Court flouted basic science, gutted meritorious defenses, and admitted inadmissible evidence. If that is not an attempt to relitigate matters that have already been decided by this Court, then nothing is.

    3M cannot palm off responsibility for this affront to the Court's jurisdiction by blaming the Debtors for the collateral attack. At no point in its Opposition does 3M deny that it will fully supports the Debtors' efforts to shrink Plaintiffs' claim values by asserting that this Court repeatedly erred. Indeed, 3M has the gall to claim

8

that refusing to permit it to relitigate this Court's decisions in Bankruptcy Court somehow violates *3M's* due process rights.

The notion that 3M plans a hands-off approach, leaving the independent Debtors to do its dirty work is the purest form of make believe. As the parties and the Court are aware, 3M has represented itself as one and the same with the Debtors. *See* Dkt. 3361 (detailing 3M's extensive representations throughout this litigation that it and the Debtors are a single entity). Outside of this litigation, 3M has taken responsibility as *the* decisionmaker for the Debtors' bankruptcy filing. On the day of the bankruptcy, 3M stated:

> **3M** (NYSE: MMM) today announced *__it is taking action__* to resolve litigation related to Combat Arms Earplugs Version 2 ("Combat Arms Earplugs). Aearo Technologies and related entities ("Aearo Technologies"), all of which are wholly-owned 3M subsidiaries, have voluntarily initiated chapter 11 proceedings seeking court supervision to help establish a trust – funded by 3M – to efficiently and equitably resolve all claims determined to be entitled to compensation.

Ex. 4, 7/26/22 3M Press Release (emphasis added). 3M's Chair and Executive Officer, Mike Roman, further stated "*We determined that taking this decisive action now* will allow 3M and Aearo Technologies to address these claims in a way that is more efficient and equitable than the current litigation." *Id.* Mr. Roman reaffirmed during a later 3M earnings call: "The decision to really take the steps related to Combat Arms litigation came out of really, first and foremost, the result of the

9

bellwether trials. They were highly variable. We believe it would take years to litigate those claims. And so given a choice between a costly litigation process, in a better, fair, more efficient resolution [].." Ex. 5, 7/26/22 3M Earnings Call Transcript at 16, 3M, by its own admissions, is in control of the marionette. While the Court cannot enjoin the puppets, it has full authority to enjoin the puppet master.

### III. 3M is not being denied due process by respecting this Court's jurisdiction.

Valle's requested relief in no way threatens 3M's due-process rights. 3M's argument to the contrary simply reaffirms its utter contempt for this Court and its duly authorized jurisdiction.

To state the obvious, this Article III Court adheres scrupulously to the rules that govern civil litigation, *see* Fed. R. Civ. P. 1, which afford all litigants notice and a full opportunity to be heard on issues affecting their claims or defenses. 3M remains free to press any arguments it wishes here and to exercise its unquestioned right to appeal any adverse orders to the Eleventh Circuit. But 3M is not content with those robust procedural safeguards. Because 3M does not like this Court's rulings, it wishes to sidestep *all process* in this Court in favor of another one that it hopes will see the law differently. Preventing 3M from *undermining* the decisions of this Court by fleeing to some other tribunal is not a deprivation of due process but a *vindication* of the very judicial process firmly ensconced in our Nation's constitutional design. *See United States v. New York Tel. Co.*, 434 U.S. 159, 171, (1977) ("This Court has

10

repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1982) (affirming injunction when attorneys filed and threatened to file "duplicative and harassing litigation in the courts of various states and by seeking therein orders disrupting the proceedings in M.D.L. 310."). Were it otherwise, every injunction in aid of a federal Court's jurisdiction would flout the conjured due process right 3M concocts.

That 3M somehow interprets continuing litigation in this Court as a deprivation of its due process rights underscores the thinly masked contempt it has for this Court's jurisdiction. *See, e.g.,* Dkt. 3358-4 at 42:20-43:2 (stating to the Bankruptcy Court "the heart of our problem comes out of her [Judge Rodgers'] court"). 3M cannot formulate an argument as to why its constitutional rights are dependent on it having the ability to argue to the Bankruptcy Court (and not this Court) about the parameters of the Debtors' stay. To the contrary, and as explained in Valle's Memorandum, 3M's argument in support of moving this entire litigation to the bankruptcy court is simply that 3M has lost. *See* Ex. 3, 7/27/22 Bankr. AM Tr. at 39:3-5 ("I mean, we need protection now because it's an unsustainable broken process that's producing terrible verdicts and costing tens and hundreds of millions

11

of dollars."). But plaintiffs are allowed to win and 3M is allowed to lose without running afoul of the Fifth Amendment.

IV. **Valle does not need to show irreparable harm under the All Writs Act, because attacks on a Court's jurisdiction constitute irreparable harm** *per se*.

3M argues that Valle fails to show irreparable injury, but the standard for a preliminary injunction under the All Writs Act is less demanding than a traditional injunction under Rule 65: an All Writs Act injunction, by definition, implicates concerns regarding a district court's jurisdiction. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004); *FTC v. Americans for Financial Reform*, 720 F. App'x 380, 383 (9th Cir. 2017) (explaining an All Writs injunction is not required to satisfy the "dictates" of a "standard preliminary injunction"). "Proceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, [therefore] threaten the jurisdiction of the district court enough to warrant an injunction." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004).[2] That standard is easily met here. 3M plans to participate in another proceeding in another court to argue

---

[2] 3M deliberately obfuscates the Court's Order on Valle's TRO. This Court's holding recognized that "the bankruptcy court's decision on whether the automatic stay will apply to 3M Company will not be made until August 18 or later," which was outside the seven-day TRO request. Dkt. 3343 at 2. Now, the Bankruptcy Court's hearing on the Debtor's preliminary injunction to extend the stay as to 3M is on August 15, within days. There is therefore the threat of imminent and irreparable harm to this Court's jurisdiction.

that this Court's already issued judgments and orders are wrong. That is "enough to warrant an injunction."

That relief is especially appropriate because 3M cannot effectively refute that Valle is *entitled* to an Article III adjudication of his claims under the Bankruptcy Code. Without his consent, which he will never provide, the Bankruptcy Court cannot adjudicate his personal injury claims under Section 157(b)(5). 3M is forced to begrudgingly acknowledge as much: "Section 157(b)(5) should be read to allow a *district court* to fix venue for cases pending against nondebtor defendants." Dkt. 3370 at 26 (emphasis added) (quoting *In re Dow Corning Corp.*, 86 F. 3d 482, 497 (6th Cir. 1996)). The concession is fatal to 3M's repeated and specious contention that bankruptcy offers "an equitable and expeditious process to resolve" Plaintiffs' claims. Valle is entitled to have his claims adjudicated in an Article III court. While Section 157(b) may venue his trial in Indiana or place of injury, that does nothing more than control where this Court must *remand* following pretrial proceedings. This Court should never countenance a brazen attack on its jurisdiction; but such an attack is all the more pernicious when—after years of expense and delay—it will be doomed to failure by operation of black-letter law.

## CONCLUSION

The time has come for this Court to put an end to 3M's disrespect for the rule of law. Valle's motion should be granted.

Dated: August 10, 2022

Respectfully submitted,

*/s/ Ashley C. Keller*

Ashley C. Keller (Bar #1029118)
ack@kellerpostman.com
Nicole C. Berg (Pro Hac Vice)
ncb@kellerpostman.com
Ashley Barriere (Pro Hac Vice)
ashley.barriere@kellerpostman.com
Frank G. Dylewski (Pro Hac Vice)
frank.dylewski@kellerpostman.com
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

*Counsel for Plaintiff Richard Valle*

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULES 7.1(F) AND 56.1(E)

I hereby certify that this motion complies with the word limit of Local Rules 7.1(F) and 56.1(E) and contains 3,146 words.

*/s/ Ashley C. Keller*
Ashley C. Keller

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

>                              */s/ Ashley C. Keller*
>                              Ashley C. Keller