**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


IN RE: 3M COMBAT ARMS EARPLUG      )      Case No. 3:19md2885
PRODUCTS LIABILITY LITIGATION,     )
                                   )      Pensacola, Florida
                                   )      August 11, 2022
                                   )      10:05 a.m.
                                   )
                                   )
_____)


**ORAL ARGUMENT**


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE

(Pages 1-76)


**A P P E A R A N C E S**


FOR THE PLAINTIFFS:      Keller Lenkner, LLC
                         By:  **ASHLEY KELLER**
                              *ack@kellerlenkner.com*
                         150 N. Riverside Plaza, Suite 4270
                         Chicago, Illinois  60606


                         Quinn Emanuel Urquhart
                         By: **ADAM B. WOLFSON**
                              *adamwolfson@quinnemanuel.com*
                         865 South Figuero St., 10th Floor
                         Los Angeles, California  90017

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**
                        Aylstock, Witkin, Kreis & Overholtz
                        by:  **BRYAN F. AYLSTOCK**
                             *baylstock@awkolaw.com*

                             **JENNIFER HOEKSTRA**
                             *jhoekstra@awkolaw.com*
                        17 E Main Street, Suite 200
                        Pensacola, Florida  32502

                        Clark Love & Hutson, GP
                        by:  **SHELLEY HUTSON**
                             *bgreif@triallawfirm.com*
                        440 Louisiana Street, Suite 1600
                        Houston, Texas  77002

**FOR THE DEFENDANTS:**  Moore, Hill & Westmoreland, PA
                        By:  **CHARLES F. BEALL, JR.**
                             *cbeall@mhw-law.com*
                        350 W Cedar Street, Suite 100
                        Pensacola, Florida  32502

                        White & Case
                        By:  **JESSICA C. LAURIA**
                             *Jessica.lauria@whitecase.com*
                        1221 Avenue of the Americas
                        New York, New York  10020-1095

```
 1              P R O C E E D I N G S
 2        THE COURT:  Good morning.  The Court will hear oral
 3   argument on two motions this morning in the Combat Arms Earplug
 4   Product Liability Litigation, MDL2885.
 5          The two motions are as follows:  One was filed by
 6   Mr. Ashley Keller.  It is a motion on behalf of Plaintiff
 7   Richard Valle, emergency motion on his behalf as well as on
 8   behalf of all of the plaintiffs in the MDL for preliminary
 9   junction against defendant, 3M Company.
10          And the second motion, filed by Mr. Wolfson on behalf
11   of Plaintiff Cupit, is a Motion For Ruling On 3M Company's
12   Waiver And/Or Judicial Estoppel Of Any Defense Regarding Its
13   Full Liability.
14          So, I have Mr. Ashley Keller present along with
15   Ms. Barriere.  Thank you.  So you are here to present the first
16   motion.  And I have Mr. Wolfson I see as well.
17          And then, for 3M, I have Mr. Beall and Ms. Lauria.
18          And, Mr. Beall, I understand you'll be responding to
19   the Cupit motion and, Ms. Lauria, to Mr. Wolfson's motion on
20   behalf of the plaintiff.
21        MS. LAURIA:  Yes, Your Honor.
22        THE COURT:  Mr. Keller, I'll let you start us off.
23        MR. KELLER:  Good morning, Judge.  And may it please
24   the Court?
25        THE COURT:  Yes, sir.
```

| | |
|---|---|
| 10:07:02 | 1 |
| 10:07:04 | 2 |
| 10:07:09 | 3 |
| 10:07:13 | 4 |
| 10:07:16 | 5 |
| 10:07:19 | 6 |
| 10:07:20 | 7 |
| 10:07:23 | 8 |
| 10:07:25 | 9 |
| 10:07:28 | 10 |
| 10:07:32 | 11 |
| 10:07:38 | 12 |
| 10:07:42 | 13 |
| 10:07:45 | 14 |
| 10:07:51 | 15 |
| 10:07:56 | 16 |
| 10:07:59 | 17 |
| 10:08:03 | 18 |
| 10:08:08 | 19 |
| 10:08:14 | 20 |
| 10:08:16 | 21 |
| 10:08:19 | 22 |
| 10:08:25 | 23 |
| 10:08:25 | 24 |
| 10:08:31 | 25 |

**MR. KELLER:**  Ashley Keller on behalf of Mr. Valle.

Mr. Valle's right to relief flows from three simple principles.  The first is that this Court has jurisdiction over this MDL.  And I know that that's a rudimentary point.  But given the things that we're discussing today, I think it's important that we establish it.

First let's talk about the Constitution.  Article III vests federal courts with the judicial power of the United States, and you are, of course, a federal court ordained by Congress.  That empowers you to issue judgments in specified cases and controversies, importantly, including controversies between citizens of different states, diversity cases that covers the 233,000 veterans before Your Honor.

Let's talk about a statute.  Congress, through 28 U.S.C. § 1407, gave this Court exclusive jurisdiction over all pretrial proceedings involving the CAEv2 when the JPML issued an order pursuant to its discretion, which 3M supported, naming you as the transferee judge.  And, of course, you have been exercising your constitutional and statutory jurisdiction tirelessly for three-and-a-half years.  There are so many thousands of docket entries from this MDL that it would be a fool's errand to recount them all.  But here are some important ones:

You've issued 24 *Daubert* decisions, 263 motion in limine decisions, 42 motion for summary judgment decisions, six

10:08:34  1    post-trial motions have been resolved, and two are final

10:08:37  2    judgments that are on appeal to the United States Court of

10:08:40  3    Appeals for the Eleventh Circuit.

10:08:41  4         It is unquestioned that you have jurisdiction -- I

10:08:46  5    think -- over this MDL.  And this is not an MDL in an ascent

10:08:54  6    phase; it's not just getting out of the starting block.  You

10:08:54  7    have presided over an MDL that has resulted in 16 jury verdicts

10:08:57  8    in three-and-a-half years with 19 final judgments for veterans.

10:09:03  9    It is a remarkable achievement.

10:09:05  10        **THE COURT:**  I think it's actually 19 separate

10:09:08  11   verdicts.

10:09:09  12        **MR. KELLER:**  19 separate verdicts with 16 jury trials,

10:09:13  13   correct, Your Honor.

10:09:14  14        Because you have jurisdiction, it should also be

10:09:16  15   undisputed that you have the statutory authority to protect it.

10:09:20  16   This goes back to the dawn of our republic.  The very first

10:09:24  17   Congress in 1789 passed the very first judiciary act that

10:09:29  18   included and codified the All Writs Act that gives you the

10:09:34  19   power to use equity in aid of your jurisdiction where that

10:09:37  20   comports with the usages and principles of law.

10:09:40  21        Why does this power exist to act in aid of your

10:09:43  22   jurisdiction?  The heartland case is where a litigant is

10:09:48  23   hell-bent on relitigating issues that Your Honor has already

10:09:52  24   adjudicated in another tribunal.

10:09:55  25        **THE COURT:**  Has 3M -- I believe they said they weren't

| | |
|---|---|
| 10:09:59 | 1 |
| 10:10:02 | 2 |
| 10:10:05 | 3 |
| 10:10:07 | 4 |
| 10:10:09 | 5 |
| 10:10:13 | 6 |
| 10:10:14 | 7 |
| 10:10:16 | 8 |
| 10:10:19 | 9 |
| 10:10:24 | 10 |
| 10:10:28 | 11 |
| 10:10:31 | 12 |
| 10:10:36 | 13 |
| 10:10:38 | 14 |
| 10:10:39 | 15 |
| 10:10:42 | 16 |
| 10:10:47 | 17 |
| 10:10:52 | 18 |
| 10:10:52 | 19 |
| 10:10:56 | 20 |
| 10:11:00 | 21 |
| 10:11:00 | 22 |
| 10:11:07 | 23 |
| 10:11:12 | 24 |
| 10:11:13 | 25 |

1  intending to re-litigate --

2          **MR. KELLER:**  They do say that.

3          **THE COURT:**  I don't know if the distinction is going

4  to be between judgments or issues, I'm not sure but --

5          **MR. KELLER:**  It covers both, Your Honor, under the All

6  Writs Act, because you have authority to protect jurisdiction

7  that you've already exercised that is culminated in a final

8  judgment.  And under Eleventh Circuit precedent such as *Clay*,

9  it's very clear that you also have jurisdiction to protect your

10  jurisdiction for go-forward proceedings such as Mr. Valle's.

11          On the very day that 3M submitted its opposition

12  brief, Mr. Valle submitted his opposition brief to their Motion

13  for Summary Judgment against his case.  So you clearly have

14  continuing jurisdiction.

15          And this notion that 3M isn't going to collaterally

16  attack Your Honor's orders doesn't withstand scrutiny, which is

17  the second principle that supports the relief that Mr. Valle is

18  seeking.

19          Let's define what it is to collaterally attack Your

20  Honor's jurisdiction.  And I actually think, since we're

21  talking about 1789 and the first judiciary act, a useful test

22  can come from the most famous case construing the first

23  judiciary act, *Marbury vs. Madison*.  We all know it from law

24  school for establishing judicial review, it's emphatically the

25  province and duty of the judiciary to say what the law is.

10:11:15    1        There's a more mundane section of the opinion that we
10:11:18    2    all probably forget that defines and delineates the distinction
10:11:22    3    between original jurisdiction and appellate jurisdiction.  And
10:11:26    4    Chief Justice Marshall says for the unanimous court original
10:11:30    5    jurisdiction is where a court has the power to decide an issue
10:11:33    6    for the first time, appellate jurisdiction is where an
10:11:36    7    appellate court gets to issue corrections and revisions to
10:11:40    8    those decisions.  It's basically claims of error.
10:11:43    9        If someone is trying to litigate and seek corrections
10:11:48   10    and revisions to this Court's decisions and judgments not in an
10:11:53   11    appellate court, that's a pretty good test to establish that
10:11:56   12    they are attempting to collaterally attack your jurisdiction.
10:12:01   13    And I don't think that it withstands scrutiny that your
10:12:05   14    jurisdiction is not being impugned in the bankruptcy court.
10:12:09   15        Look at the revisions and corrections that are the
10:12:12   16    entire focus of that proceeding.  You, Your Honor, have
10:12:17   17    presided over the most broken MDL in history.  You are to blame
10:12:22   18    for screwing up the case management orders that would normally
10:12:26   19    be obtained in an MDL.  You have conducted a distorted
10:12:31   20    litigation process that isn't working.  You have denied summary
10:12:34   21    judgment for 3M and granted it for plaintiffs on the government
10:12:41   22    contractor defense that has tainted the jury pools and inflamed
10:12:44   23    their passions resulting in verdicts that are not
10:12:47   24    representative.  You have robbed 3M of a fair and complete
10:12:50   25    evidentiary record.

| | | |
|---|---|---|
| 10:12:51 | 1 | The list goes on and on.  These are direct quotations |
| 10:12:55 | 2 | or snippets from the bankruptcy court first day hearing or the |
| 10:12:59 | 3 | informational brief.  This entire MDL is being put on trial in |
| 10:13:03 | 4 | the bankruptcy court.  It beggars belief that the purpose of |
| 10:13:09 | 5 | that proceeding is not to second guess the judgments and |
| 10:13:13 | 6 | decisions and orders that 3M doesn't like. |
| 10:13:14 | 7 | And it's not far to seek why they're doing that.  They |
| 10:13:17 | 8 | want to compress the claim values.  They want a new court to |
| 10:13:22 | 9 | say everything Judge Rodgers did in the MDL was mistaken, was |
| 10:13:26 | 10 | erroneous, that led to this false impression that juries |
| 10:13:29 | 11 | actually think 3M is liable when a true scientific and factual |
| 10:13:34 | 12 | record would demonstrate that they're not, and the veterans |
| 10:13:37 | 13 | claims should be settled for a song. |
| 10:13:39 | 14 | That is a classic -- |
| 10:13:42 | 15 | **THE COURT:**  What would that look like? |
| 10:13:44 | 16 | **MR. KELLER:**  What would that look like? |
| 10:13:46 | 17 | **THE COURT:**  This quote/unquote, "true scientific |
| 10:13:48 | 18 | process"? |
| 10:13:49 | 19 | **MR. KELLER:**  Respectfully, Your Honor, you're going to |
| 10:13:52 | 20 | have to ask my able adversaries because I think this MDL has |
| 10:13:56 | 21 | comported itself admirably, and the record here speaks for |
| 10:13:57 | 22 | itself, and the jury verdicts are proper.  And I'm excited to |
| 10:13:59 | 23 | defend Your Honor's judgments in the United States Court of |
| 10:14:02 | 24 | Appeals for the Eleventh Circuit, where appellate decisions |
| 10:14:06 | 25 | should be issued and where attempts to seek corrections and |

10:14:09   1    revisions actually properly lie.

10:14:11   2            So I have no idea what a proper set of scientific

10:14:15   3    facts and evidentiary records would look like, but I know that

10:14:20   4    they think such a thing exists, and they want the bankruptcy

10:14:22   5    court to embrace it, which is completely and totally improper.

10:14:26   6    If that's not an attack on this Court's jurisdiction, if that's

10:14:31   7    not an attempt to re-litigate issues that you've already

10:14:34   8    decided, I don't know what is.

10:14:35   9            Which leads to the third principle that establishes

10:14:38   10   this Court's right to issue Mr. Valle's relief.  Nothing in the

10:14:43   11   bankruptcy code stops you.  They are correct.  And like many

10:14:47   12   misperceptions that draws on a kernel of truth, they are

10:14:52   13   correct you can't use your All Writs Act authority when a more

10:14:56   14   specific federal statute prohibits it.  But they rest the

10:14:58   15   notion that there's a more specific statue on the bankruptcy

10:14:59   16   code, and they say that the automatic stay applies to them.

10:15:03   17   But Your Honor gets to decide whether the automatic stay

10:15:06   18   applies to them.

10:15:08   19           The cathodes patent case from Judge Easterbrook

10:15:13   20   sitting by designation in the Seventh Circuit establishes this

10:15:16   21   principle.  Their own cases like *Gilchrist* establish this

10:15:19   22   principle.  Every court concludes that Your Honor has

10:15:22   23   jurisdiction to determine your jurisdiction and jurisdiction to

10:15:24   24   determine whether the automatic stay applies.  And you've

10:15:27   25   exercised that jurisdiction.  You held in your order to show

| | | |
|---|---|---|
| 10:15:30 | 1 | cause they're not subject to the automatic stay.  You don't |
| 10:15:33 | 2 | have to abjectly defer to the bankruptcy court on this |
| 10:15:36 | 3 | question.  Even if you wanted to, the bankruptcy court has also |
| 10:15:40 | 4 | said the automatic stay doesn't apply to random people.  It |
| 10:15:43 | 5 | applies to debtors.  3M is not a debtor.  It has chosen not -- |
| 10:15:50 | 6 | **THE COURT:**  I agree with you, the stay is not in place |
| 10:15:53 | 7 | against 3M at this point. |
| 10:15:53 | 8 | **MR. KELLER:**  That is correct. |
| 10:15:55 | 9 | **THE COURT:**  Why shouldn't the bankruptcy court decide |
| 10:15:57 | 10 | that or decide whether the Chapter 11 was fraudulent or in bad |
| 10:16:03 | 11 | faith?  I don't believe you've got a motion to dismiss there in |
| 10:16:05 | 12 | front of the bankruptcy judge, but perhaps he'll be deciding |
| 10:16:09 | 13 | that or considering it in his hearing on Monday, I believe. |
| 10:16:13 | 14 | **MR. KELLER:**  Your Honor, the bankruptcy court should |
| 10:16:15 | 15 | decide for itself matters that are properly before him.  And |
| 10:16:18 | 16 | you're right, we have not filed a motion with you or yet in the |
| 10:16:21 | 17 | bankruptcy court to say that the bankruptcy was fraudulent. |
| 10:16:24 | 18 | But such a motion, if it ever is filed as evidence is gathered, |
| 10:16:29 | 19 | would be directed to the debtors.  It would still have nothing |
| 10:16:31 | 20 | to do with 3M.  It would still not allow 3M to avail itself of |
| 10:16:35 | 21 | the automatic stay. |
| 10:16:36 | 22 | So the provision of federal law that they're saying is |
| 10:16:38 | 23 | specific and trumps your ability to use your powers that have |
| 10:16:43 | 24 | existed since 1789 just don't apply here.  3M is not a debtor |
| 10:16:47 | 25 | in bankruptcy. |

| | |
|---|---|
| 10:16:49 | 1 |
| 10:16:54 | 2 |
| 10:16:57 | 3 |
| 10:17:01 | 4 |
| 10:17:04 | 5 |
| 10:17:09 | 6 |
| 10:17:12 | 7 |
| 10:17:17 | 8 |
| 10:17:17 | 9 |
| 10:17:21 | 10 |
| 10:17:25 | 11 |
| 10:17:26 | 12 |
| 10:17:29 | 13 |
| 10:17:33 | 14 |
| 10:17:37 | 15 |
| 10:17:40 | 16 |
| 10:17:48 | 17 |
| 10:17:50 | 18 |
| 10:17:50 | 19 |
| 10:17:54 | 20 |
| 10:17:57 | 21 |
| 10:18:00 | 22 |
| 10:18:05 | 23 |
| 10:18:08 | 24 |
| 10:18:10 | 25 |

**THE COURT:**  What about 105?  Most of the cases deal with 362.  But what about 105?

**MR. KELLER:**  Yeah, 105 is basically a broad grant sort of like the All Writs Act saying that bankruptcy courts can issue injunctions.  And they accuse Mr. Valle of trying to interfere with the bankruptcy court's jurisdiction.  We're not.  We're not seeking an injunction preventing the bankrupt court from adjudicating the 105 question that's properly before it and being heard next week.  We're just trying to enjoin a party who is not subject to an automatic stay from relitigating issues in that court.

Even if the bankruptcy court chooses in a way that I think would be legally erroneous -- but I respect court judgments so I would take an appeal if I disagreed with the bankruptcy court.  Even if the bankruptcy court chooses to issue a 105 injunction that says, *No more CAEv2 litigation against 3M in Judge Rodgers's courtrooms*, you still would have the power to enter an injunction saying, *That's fine, but, 3M, you cannot go into that proceeding as a nondebtor and start relitigating all of the things that I have issued as binding orders and judgments for the last three-and-a-half years.*

**THE COURT:**  How would that bind Aearo?

**MR. KELLER:**  It wouldn't.  It would not bind Aearo, Your Honor.  We are not seeking -- this is the conflation that I think 3M skips over in its brief.  We have not sought relief

| | |
|---|---|
| 10:18:13 | 1 |
| 10:18:19 | 2 |
| 10:18:22 | 3 |
| 10:18:26 | 4 |
| 10:18:30 | 5 |
| 10:18:32 | 6 |
| 10:18:36 | 7 |
| 10:18:36 | 8 |
| 10:18:40 | 9 |
| 10:18:42 | 10 |
| 10:18:45 | 11 |
| 10:18:48 | 12 |
| 10:18:51 | 13 |
| 10:18:54 | 14 |
| 10:18:58 | 15 |
| 10:19:02 | 16 |
| 10:19:03 | 17 |
| 10:19:05 | 18 |
| 10:19:08 | 19 |
| 10:19:12 | 20 |
| 10:19:16 | 21 |
| 10:19:20 | 22 |
| 10:19:22 | 23 |
| 10:19:25 | 24 |
| 10:19:30 | 25 |

of any kind against the debtors.  We recognize begrudgeingly that the automatic stay does apply to the debtors in bankruptcy unless and until lifted by the bankruptcy court.  And there may be lots of arguments we will eventually lodge as more information comes out about the eve-of-bankruptcy funding agreement and all sorts of other things that demonstrate that this is not the typical bankruptcy where a hard-on-its-luck debtor is just seeking to stay creditors so that they can have an orderly reorganization.

We'll make those arguments at the appropriate time. We are not seeking relief from you as to Aearo, so the injunction that we're seeking here would not bar Aearo from saying anything.  But it can and it should, to preserve the integrity of the judicial process, stop 3M, a nondebtor who doesn't get the benefit of the stay, from relitigating Your Honor's decisions.

And I would just close, Your Honor, with the following observation:  I think you have the unquestioned power to do what Mr. Valle is asking, but it's an equitable power.  And so it is always the case when a court is deciding whether to issue injunctive relief that you have discretion, and you can still say no, even if all of the factors have been met.

And so the question here is:  Is this the sort of case where you should use, admittedly, an extraordinary writ, an extraordinary remedy to stop someone from going into another

10:19:34   1   court and re-litigate things that you have decided for the last

10:19:36   2   three-and-a-half years?

10:19:38   3         And Mr. Valle would say the answer is an emphatic

10:19:42   4   "Yes."

10:19:42   5         I think it is always the case when someone is

10:19:45   6   second-guessing the judgments and decisions and orders of an

10:19:49   7   Article III tribunal that that offends the dignity of the

10:19:53   8   judicial process.  We're supposed to have an appellate process

10:19:56   9   where dissatisfied litigants can take their grievances.  That

10:20:01   10   undermines it.

10:20:02   11         But this is -- I beg your pardon, Your Honor.

10:20:02   12         **THE COURT:**  I was just going to say, if it's an

10:20:06   13   equitable power that I have -- and I don't disagree with you

10:20:09   14   about that -- why wouldn't I -- and I may be making your

10:20:12   15   argument -- but why wouldn't I look at what happened in the

10:20:18   16   bankruptcy --

10:20:19   17         **MR. KELLER:**  You should.

10:20:19   18         **THE COURT:**  -- as to whether it was in good faith or

10:20:22   19   bad faith from my standpoint?

10:20:24   20         **MR. KELLER:**  You are very much making my argument.

10:20:27   21   You should look at what happened in the bankruptcy.

10:20:29   22         And I have to say, as an officer of the Court, I'm not

10:20:31   23   prone to hyperbole.  I am appalled and flabbergasted at the way

10:20:39   24   this Court has been besmirched in the bankruptcy tribunal.

10:20:45   25         I get decisions I don't like from judges all the time.

| | |
|---|---|
| 10:20:50 | 1 |
| 10:20:52 | 2 |
| 10:20:57 | 3 |
| 10:20:58 | 4 |
| 10:20:59 | 5 |
| 10:21:01 | 6 |
| 10:21:06 | 7 |
| 10:21:10 | 8 |
| 10:21:12 | 9 |
| 10:21:15 | 10 |
| 10:21:20 | 11 |
| 10:21:24 | 12 |
| 10:21:27 | 13 |
| 10:21:30 | 14 |
| 10:21:34 | 15 |
| 10:21:40 | 16 |
| 10:21:43 | 17 |
| 10:21:46 | 18 |
| 10:21:48 | 19 |
| 10:21:51 | 20 |
| 10:21:54 | 21 |
| 10:21:56 | 22 |
| 10:21:57 | 23 |
| 10:22:00 | 24 |
| 10:22:07 | 25 |

It's part of our business.  And I'll confess, I might mutter under my breath sometimes, "I really can't believe the judge said that."  I might even vent to a colleague privately, "Can you believe what this judge said."  I would never affix my name to the things that were said and written in the bankruptcy court about this tribunal.  They are undermining the integrity of the judicial process in a way that is discourteous and unprofessional and scurrilous.

So it's not just the litigant running to another court and saying, *I want a do-over*.  It's them attacking Your Honor personally at times and saying that you've engaged in misbehavior by having ex parte communications about what you may or may not do as a result of the bankruptcy process.

The way they show utter disdain for Your Honor's rulings over the last three-and-a-half years, I blanch on their behalf.  They should show more shame about what they are doing to three-and-a-half years of litigation before Your Honor.

Right or wrong, Your Honor has the power to make judicial decisions.  You're doing the best you can, and I think you've done an incredible job.  They're entitled to their belief that you haven't, and that's what the Eleventh Circuit is for.

**THE COURT:**  Perhaps -- and you didn't request this, but in terms of authority and ability to address concerns that I have, I suppose contempt is also available as well, which

| | | |
|---|---|---|
| 10:22:11 | 1 | would be an exception to the automatic stay. |
| 10:22:13 | 2 | **MR. KELLER:**  Contempt is available.  I would dare say |
| 10:22:19 | 3 | you should consider both.  I think that the relief that |
| 10:22:21 | 4 | Mr. Valle is asking for will be more impactful and have a more |
| 10:22:26 | 5 | significant deterrent effect.  This is a big case, everybody |
| 10:22:30 | 6 | knows it.  Lots of people are watching.  And I know that we've |
| 10:22:33 | 7 | made a big ask.  But this is also a big moment where preserving |
| 10:22:39 | 8 | the integrity of the judicial process is so important precisely |
| 10:22:43 | 9 | because so many people are watching and seeing the way that |
| 10:22:45 | 10 | this Court's integrity is being undermined in a fashion that I |
| 10:22:47 | 11 | find completely despicable. |
| 10:22:50 | 12 | So you have discretion, but admittedly I think that |
| 10:22:55 | 13 | you should exercise it and do the big thing in this big moment |
| 10:22:58 | 14 | and prevent 3M from second-guessing your judgments. |
| 10:23:01 | 15 | **THE COURT:**  What if the bankruptcy judge, Chief Judge |
| 10:23:07 | 16 | Graham, what if he issues the stay or applies the stay and I |
| 10:23:10 | 17 | haven't acted yet? |
| 10:23:13 | 18 | **MR. KELLER:**  I don't think that undermines your |
| 10:23:15 | 19 | authority to rule on our sub judice motion. |
| 10:23:19 | 20 | I can't come back before you.  I would respect the |
| 10:23:23 | 21 | bankruptcy court's stay because I respect the integrity of the |
| 10:23:28 | 22 | judicial process, and I would lodge appeal to say that I don't |
| 10:23:31 | 23 | think the stay should have issued, so I won't be back in front |
| 10:23:35 | 24 | of Your Honor.  But it's fully briefed.  He's not enjoining |
| 10:23:38 | 25 | you, and so Your Honor would still have full authority as an |

10:23:38   1   Article III officer to issue the injunctive relief that Mr.

10:23:41   2   Valle has asked for.  And it won't be inconsistent, in the

10:23:43   3   hypothetical world that Your Honor is describing that I hope

10:23:46   4   won't materialize, with Judge Graham's stay.

10:23:49   5        Saying that we're not allowed as lawyers to litigate

10:23:51   6   in front of Your Honor related to the CAEv2 doesn't clash with

10:23:57   7   an order from Your Honor saying, *and 3M is not allowed to go*

10:24:01   8   *into another tribunal and second-guess my judgments.*  Those are

10:24:07   9   consistent equitable injunctions that I hope will not coexist,

10:24:11   10  but they could peacefully coexist.

10:24:15   11        Thank you, Your Honor.

10:24:15   12        **THE COURT:**  Thank you, Mr. Keller.

10:24:16   13        I believe, Ms. Lauria, you are going to present

10:24:20   14  argument on behalf of 3M.

10:24:29   15        Ms. Lauria, do you all think -- is it that you don't

10:24:34   16  believe I have the authority under the All Writs Act or you

10:24:37   17  don't think I should exercise it?  What is your position?

10:24:39   18        **MS. LAURIA:**  Your Honor, I don't think you should

10:24:42   19  exercise it.  I think --

10:24:43   20        And again, may it please the Court?  Jessica Lauria,

10:24:46   21  White & Case, on behalf of 3M Company.

10:24:48   22        I think we need to take the argument made by

10:24:50   23  Mr. Keller today and start dissecting it into its component

10:24:55   24  parts.

10:24:55   25        If you look at the face of Mr. Keller's motion, what

10:24:57  1   he's actually asking the Court to do today, which is twofold,

10:25:02  2   enjoin 3M Company, my client, from seeking an junction, not the

10:25:06  3   debtor, he's conceded that today, he's conceded that in all of

10:25:10  4   his papers so he's not asking for an junction with respect to

10:25:13  5   the debtor, but to enjoin 3M Company from seeking an injunction

10:25:16  6   of this Court in another court and then secondarily from

10:25:19  7   supporting an injunction in another court.

10:25:22  8          **THE COURT:**  Are you doing that?  Are you actually

10:25:24  9   seeking the injunction or is Aearo seeking the injunction?

10:25:28  10         **MS. LAURIA:**  Thank you, Your Honor.  That's exactly

10:25:30  11  where I was going to go with this.  If you start to dissect the

10:25:33  12  relief that Mr. Keller is seeking, 3M Company is not the

10:25:36  13  movant.  3M Company did not file the adversary proceeding that

10:25:41  14  is before Judge Graham.  3M Company -- and I'll get to 3M

10:25:45  15  Company's participation.  We briefed that, but I think it's

10:25:48  16  important that we understand it.

10:25:49  17         Because the All Writs Act injunction that Mr. Keller

10:25:52  18  is seeking has the very real possibility of enjoining 3M

10:25:56  19  Company from even participating in discovery requests and other

10:26:00  20  aspects of the case, which is completely violative of the

10:26:04  21  bankruptcy code.

10:26:06  22         **THE COURT:**  I didn't hear him say that.  I heard him

10:26:08  23  ask for an injunction that would prohibit 3M from relitigating

10:26:12  24  matters that have been decided by this Court.

10:26:15  25         **MS. LAURIA:**  Well, I'm glad you pointed that out

| | |
|---|---|
| 10:26:17 | 1 |

because I actually think there's five things he's asking for.

His motion on the face of it asks for it, too.

It says, "3M Company should be enjoined from filing any action, proceeding, brief, or similar document seeking an injunction in a another court.

The second thing that he asks for is an injunction preventing 3M from supporting any other party in seeking that injunction.

That's what we see in the four corners of his document.

If you dissect what he's saying on the record, I describe what Mr. Keller is doing as basically a disguised *Clay* motion.  And by *Clay*, I'm sure the Court knows I'm referring to the Eleventh Circuit decision on All Writs Act.

His disguised *Clay* relief falls into three categories: One is he's seeking this Court's determination of the 362 issue; the second is, he's seeking a stay of any party's ability to re-litigate the issue; and third is he's basically seeking this Court's determination of what I'm going to call wrongful bankruptcy.

And that's what I really refer to when I talk about the *Clay* issue or his disguised *Clay* motion.  Because, if you read *Clay*, what Mr. Keller is seeking falls squarely within what he actually said when he took the podium.

Now, in his papers he tried to narrowly tailor his

| | | |
|---|---|---|
| 10:27:37 | 1 | relief to enjoin us from seeking an injunction or to enjoin 3M |
| 10:27:40 | 2 | from supporting an injunction.  But everything we just heard |
| 10:27:43 | 3 | from Mr. Keller today demonstrates that what Mr. Keller is in |
| 10:27:47 | 4 | fact seeking is a determination that the bankruptcy was wrong |
| 10:27:51 | 5 | and that the bankruptcy should be dismissed. |
| 10:27:53 | 6 | **THE COURT:**  Well, if I believe that the bankruptcy was |
| 10:27:56 | 7 | fraudulent and was concocted as a way to escape this Court's |
| 10:28:05 | 8 | jurisdiction, then that may be a perfect use of the All Writs |
| 10:28:13 | 9 | Act. |
| 10:28:13 | 10 | **MS. LAURIA:**  I don't think it is, Your Honor.  I think |
| 10:28:15 | 11 | under the Eleventh Circuit's *Clay* decision, what *Clay* said was, |
| 10:28:18 | 12 | as you know, not to rehash it, but there are three forms of |
| 10:28:25 | 13 | injunctive relief:  You've got Federal Rule of Civil Procedure |
| 10:28:28 | 14 | 65, and for 65 you have to have a claim or a cause of action; |
| 10:28:32 | 15 | you've got statutory; and then you have the All Writs Act. |
| 10:28:36 | 16 | With respect to this matter, very similar to the |
| 10:28:38 | 17 | Eleventh Circuit, the Eleventh Circuit said, you know what, |
| 10:28:40 | 18 | there's not actually a civil claim for wrongful arbitration. |
| 10:28:44 | 19 | Remember that was a tension between the All Writs |
| 10:28:47 | 20 | injunction that the district court issued enjoining |
| 10:28:50 | 21 | arbitrations from going forward.  They said, well, there's not |
| 10:28:53 | 22 | actually a wrongful arbitration civil act.  And so we |
| 10:28:57 | 23 | understand why the movant is proceeding under the All Writs |
| 10:29:02 | 24 | Act. |
| 10:29:03 | 25 | It then goes on to say -- and by the way, it overturns |

10:29:07
10:29:10
10:29:15
10:29:19
10:29:22
10:29:29
10:29:32
10:29:37
10:29:38
10:29:42
10:29:46
10:29:50
10:29:54
10:29:57
10:29:57
10:30:00
10:30:03
10:30:06
10:30:13
10:30:17
10:30:20
10:30:24
10:30:27
10:30:31
10:30:34

1    the All Writs injunction on the basis that there was adequate

2    remedies under applicable law for wrongful arbitration.

3             Similarly -- and you just asked Mr. Keller about this

4    -- there's more than adequate remedy under the Bankruptcy Code

5    11 U.S.C. 1112(b) for Mr. Keller and any other party to go

6    before the bankruptcy court and ask for that to be dismissed.

7    There's very clear statutory authority for a remedy that

8    Mr. Keller seeks.

9             And it's my view, Your Honor, that, because that's how

10   *Clay* came out and because that's how the Eleventh Circuit came

11   out in subsequent decisions -- and I'm talking about *Rowe v.*

12   *Wells Fargo* -- where they essentially said, if you have a

13   statutory remedy, it is not appropriate to use the All Writs

14   Act.

15            Because he knew of that law and there isn't a civil

16   case for wrongful bankruptcy that he could have brought before

17   Your Honor, what he did was he constructed an injunction

18   request that looks narrowly tailored that 3M should be enjoined

19   from seeking an injunction from this Court.

20            3M is not doing that.  He's already said the Aearo

21   debtor -- his motion doesn't apply to the Aearo debtor.  And as

22   Your Honor recognized in your questioning of him, Aearo is the

23   movant, Aearo filed the complaint, Aearo is presenting

24   evidence, Aearo is going to be in front of Judge Graham for

25   three days next week presenting evidence and legal argument

10:30:38   1   with respect to the 362 and 105 issue.

10:30:41   2         **THE COURT:**  Do you have a case that you can refer me

10:30:43   3   to where the bankruptcy court was used in this fashion by a

10:30:54   4   defendant, as 3M is -- and just I think without any hesitation

10:31:00   5   or question just blatantly expressing that it's using the

10:31:09   6   bankruptcy court as a way to escape what it doesn't like about

10:31:12   7   this Court?

10:31:14   8         **MS. LAURIA:**  So I wouldn't characterize it that way,

10:31:16   9   Your Honor.

10:31:16   10        **THE COURT:**  Then you and I have a different view of

10:31:18   11  the facts.

10:31:19   12        **MS. LAURIA:**  I understand that, I understand that.  I

10:31:20   13  wouldn't characterize it that way.

10:31:22   14        Aearo, as a defendant, has 230,000 claims asserted

10:31:25   15  against it, and its independent directors together with its

10:31:28   16  board elected to file for bankruptcy.

10:31:30   17        **THE COURT:**  And Aearo may well have the right to do

10:31:32   18  that.  It has and it may get the relief it's seeking.  But

10:31:37   19  that's not my question.  I asked if you had a case --

10:31:40   20        **MS. LAURIA:**  Sure.

10:31:41   21        **THE COURT:**  -- on similar facts.

10:31:43   22        **MS. LAURIA:**  I do, Your Honor.  So, as I think we

10:31:45   23  cited in our papers, the *LTL* decision out of the district court

10:31:51   24  for the District of New Jersey --

10:31:53   25        **THE COURT:**  Let me add a little bit to my question,

| | |
|---|---|
| 10:31:55 | 1 |
| 10:32:05 | 2 |
| 10:32:08 | 3 |
| 10:32:13 | 4 |
| 10:32:18 | 5 |
| 10:32:21 | 6 |
| 10:32:26 | 7 |
| 10:32:30 | 8 |
| 10:32:31 | 9 |
| 10:32:33 | 10 |
| 10:32:36 | 11 |
| 10:32:38 | 12 |
| 10:32:40 | 13 |
| 10:32:44 | 14 |
| 10:32:47 | 15 |
| 10:32:47 | 16 |
| 10:32:49 | 17 |
| 10:32:52 | 18 |
| 10:32:55 | 19 |
| 10:32:59 | 20 |
| 10:33:00 | 21 |
| 10:33:04 | 22 |
| 10:33:09 | 23 |
| 10:33:17 | 24 |
| 10:33:21 | 25 |

then.  I thought you might go to talc and J&J.  I'll add to my

question a case with the same motive by the corporate -- the

solvent corporate defendant as well as the subsidiary, where

the vehicle that was used to get into bankruptcy court and to

seek the protection of the bankruptcy court as a financially

distressed debtor -- in that case the LT Management, in this

case Aearo -- where that vehicle was created on the eve of

bankruptcy.

MS. LAURIA:  And by "vehicle" I assume you're

referring to the funding agreement?

THE COURT:  The indemnity and funding agreement.

MS. LAURIA:  Understood, Your Honor.  Again, in both

the *LTL* cases, there are also four cases pending in the North

Carolina Courts funding agreements were entered into prior to

the bankruptcy case.

THE COURT:  I'm not talking about the funding

agreement.  I'm talking about the indemnity -- I still haven't

figured out if you all have a separate indemnity agreement or

if just a clause in the funding agreement.  That was a question

I was going to have for you.

In *LTL Management* it's very different.  That

indemnification agreement existed all the way back to 1979 with

the baby products division in the old J&J, and it had been in

existence for three decades, Judge Kaplan referenced that in

his decision.  That's very different than what we have here.

| | | |
|---|---|---|
| 10:33:24 | 1 | **MS. LAURIA:**  So, Your Honor, what I would say about |
| 10:33:25 | 2 | that is -- so we're conflating the issues related to the motion |
| 10:33:25 | 3 | to dismiss and the bankruptcy court's jurisdiction with |
| 10:33:29 | 4 | respect -- |
| 10:33:29 | 5 | **THE COURT:**  I need you to answer my questions.  I'm |
| 10:33:34 | 6 | not conflating anything. |
| 10:33:34 | 7 | **MS. LAURIA:**  To my knowledge, Your Honor, there's not |
| 10:33:36 | 8 | a prefunding agreement/indemnity agreement between 3M Company |
| 10:33:40 | 9 | and Aearo. |
| 10:33:42 | 10 | **THE COURT:**  Right.  It exists only because it was |
| 10:33:44 | 11 | created for purposes of the bankruptcy filing? |
| 10:33:48 | 12 | **MS. LAURIA:**  That's my understanding, Your Honor. |
| 10:33:49 | 13 | **THE COURT:**  So let me -- since you are the bankruptcy |
| 10:33:52 | 14 | lawyer, I want to just make sure you understand -- I mean, you |
| 10:33:55 | 15 | all -- 3M has been working on this for months and months and |
| 10:33:59 | 16 | months, and it's intricate and complex, and so I've only had a |
| 10:34:05 | 17 | short period of time, and I just want to make sure whether I |
| 10:34:11 | 18 | understand what the parties did correctly as far as the |
| 10:34:14 | 19 | documentation.  And I'm referring primarily to the funding and |
| 10:34:18 | 20 | indemnity agreement.  And please correct me where I'm wrong. |
| 10:34:25 | 21 | So my understanding is, before the funding indemnity |
| 10:34:31 | 22 | agreement -- I think it was entered into on the 25th of July or |
| 10:34:35 | 23 | somewhere right around there -- Aearo had no separate liability |
| 10:34:38 | 24 | for the claims in this MDL.  Because if it did, I don't know |
| 10:34:42 | 25 | why there would be a reason for the indemnity agreement.  And |

10:34:44   1   I'm going to ask Mr. Beall some of these same questions as far
10:34:47   2   as the liabilities.
10:34:48   3        Aearo was also not in any financial distress.
10:34:53   4        Have I misstepped yet?
10:34:55   5        MS. LAURIA:   So can we take it -- with respect to your
10:34:58   6   first question, my understanding is that Aearo was joint and
10:35:01   7   severally liable with respect to 3M -- or with respect to the
10:35:05   8   Combat Arms claims.
10:35:06   9        THE COURT:   Okay.  And then why did you need the
10:35:09   10  indemnity agreement then?
10:35:10   11       MS. LAURIA:   So, I think as Your Honor knows, I'm sure
10:35:12   12  better than I do because you've sat through many of these
10:35:15   13  trials, after 3M purchased Aearo, the liabilities resided at
10:35:22   14  the Aearo level.  Those assets were ultimately back up at the
10:35:27   15  3M Company level.  It's my understanding that 80 percent of the
10:35:31   16  claims relate to the Aearo time period and 20 percent of the
10:35:34   17  claims relate to the 3M time period.
10:35:38   18       THE COURT:   Were there liabilities ever carried on
10:35:41   19  Aearo's balance sheets or just on 3M's?
10:35:44   20       MS. LAURIA:   I don't know the answer to that question,
10:35:46   21  Your Honor.
10:35:46   22       THE COURT:   And if in fact Aearo did have liability
10:35:52   23  for the claims in the MDL -- and we'll talk about the
10:35:56   24  bellwethers -- wouldn't 3M have had a duty to its shareholders
10:36:05   25  to assert that?

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:36:07 | 1  | **MS. LAURIA:**  To assert that Aearo was the liable         |
| 10:36:11 | 2  | party?                                                       |
| 10:36:11 | 3  | **THE COURT:**  Correct, even if it was a certain            |
| 10:36:14 | 4  | percentage of that.                                          |
| 10:36:15 | 5  | **MS. LAURIA:**  Your Honor, actually, I don't know if 3M    |
| 10:36:18 | 6  | ever took that position or not.                              |
| 10:36:19 | 7  | **THE COURT:**  They did not.  And I'll go over this with    |
| 10:36:22 | 8  | Mr. Beall because he was there.  They did not.               |
| 10:36:25 | 9  | My next point was:  Whether Aearo was any financial          |
| 10:36:29 | 10 | distress?                                                    |
| 10:36:29 | 11 | **MS. LAURIA:**  Well, I would argue they were.  They had    |
| 10:36:33 | 12 | 230,000 claims being asserted against Aearo.  Based on its   |
| 10:36:37 | 13 | balance sheet, it could not begin to satisfy 230,000 claims. |
| 10:36:42 | 14 | **THE COURT:**  Well, the way I read the agreement is that   |
| 10:36:45 | 15 | they only had the liability after the agreement was signed.  |
| 10:36:50 | 16 | And surely someone will get to the bottom of this.  Because if |
| 10:36:57 | 17 | there was no liability and if 3M had all of the liability -- |
| 10:37:02 | 18 | and I can assure you that is how 3M proceeded in this court for |
| 10:37:07 | 19 | three-and-a-half years -- it appears to me that they gave Aearo |
| 10:37:10 | 20 | and Aearo agreed voluntarily to take 100 percent of the      |
| 10:37:15 | 21 | liability for the claims in this MDL and thus voluntarily    |
| 10:37:20 | 22 | agreed to go into financial distress based on that indemnity |
| 10:37:25 | 23 | agreement.                                                   |
| 10:37:27 | 24 | So what I understand through the documents is that           |
| 10:37:33 | 25 | Aearo assumes all the liability through the indemnification  |

10:37:38   1    agreement, has to indemnify 3M if 3M pays claims outside of the

10:37:46   2    bankruptcy context, but not in the bankruptcy context because

10:37:49   3    there's a no repayment clause as part of the agreement.  But in

10:37:54   4    return, 3M pays Aearo $1.24 billion to reorganize.  But the

10:38:01   5    only reason Aearo needs to reorganize is because of this

10:38:05   6    newly-created indemnity agreement.  Outside of that, there's no

10:38:08   7    reason, in my view, for 3M to have paid Aearo the $1.24

10:38:17   8    billion.

10:38:17   9         The only value that I see to the agreement is that 3M

10:38:20   10   gets to use Aearo's bankruptcy to resolve claims against 3M in

10:38:25   11   bankruptcy court rather than this Court.  That's how I view it.

10:38:28   12        Is my -- again, I don't -- and tell me if I'm wrong,

10:38:32   13   but what reason was there for Aearo to reorganize before that

10:38:37   14   indemnity agreement?

10:38:38   15        **MS. LAURIA:**  Your Honor, that is where you and I

10:38:40   16   disagree.  As I indicated, it's my understanding that Aearo is

10:38:44   17   responsible for 80 percent of the claims.

10:38:47   18        Now, there may be joint and several liability as a

10:38:50   19   result of the M and A transaction, but 80 percent of that

10:38:55   20   liability relates to the pre-3M time period.

10:38:58   21        In exchange for that indemnity, 3M agreed to assume

10:39:02   22   the funding obligations for the bankruptcy case, which, as you

10:39:07   23   probably saw in the funding agreement, the estimate is not a

10:39:10   24   small amount of money.

10:39:12   25        **THE COURT:**  Again, the only value 3M receives for that

| | | |
|---|---|---|
| 10:39:14 | 1 | is that it gets to have the MDL claims resolved against it |
| 10:39:21 | 2 | resolved in bankruptcy.  Because, again, if any of those claims |
| 10:39:24 | 3 | are paid or any judgments that 3M has to pay outside of |
| 10:39:29 | 4 | bankruptcy, then Aearo has to indemnify 3M for that. |
| 10:39:35 | 5 | **MS. LAURIA:**  That is correct. |
| 10:39:37 | 6 | **THE COURT:**  It's an automatic trigger under the |
| 10:39:41 | 7 | funding agreement that automatically they are entitled -- 3M is |
| 10:39:45 | 8 | entitled to repayment of those funds, which in turn depletes |
| 10:39:51 | 9 | the funds available to Aearo for this reorganization.  But, |
| 10:39:54 | 10 | again, if the claims are resolved in bankruptcy, then there's |
| 10:39:57 | 11 | no triggering -- there's no repayment clause actually. |
| 10:40:01 | 12 | So, again, it seems to me that the funding and the |
| 10:40:07 | 13 | indemnity agreement were structured for the sole purpose of |
| 10:40:09 | 14 | resolving 3M's liability in bankruptcy as opposed to under this |
| 10:40:13 | 15 | Court's jurisdiction rather than to validly reorganize Aearo, |
| 10:40:20 | 16 | who it still seems to me did not have any liability before this |
| 10:40:24 | 17 | agreement was entered into. |
| 10:40:26 | 18 | And I can speak to you about that or I can speak to |
| 10:40:29 | 19 | Mr. Beall about it or both of you.  But it seems that 3M has |
| 10:40:33 | 20 | created a structure intentionally in which Aearo's ability to |
| 10:40:38 | 21 | pay its CAEv2 or earplug liability in bankruptcy is directly |
| 10:40:42 | 22 | tied to 3M's judgments outside of the bankruptcy court, again, |
| 10:40:47 | 23 | because if there's a judgment against 3M in this court or |
| 10:40:50 | 24 | another district court, then Aearo's potential reorganization |
| 10:40:54 | 25 | funds are depleted through the indemnification agreement and 3M |

| | |
|---|---|
| 10:40:58 | 1 |
| 10:41:04 | 2 |
| 10:41:08 | 3 |
| 10:41:15 | 4 |
| 10:41:19 | 5 |
| 10:41:23 | 6 |
| 10:41:30 | 7 |
| 10:41:36 | 8 |
| 10:41:42 | 9 |
| 10:41:49 | 10 |
| 10:41:53 | 11 |
| 10:41:57 | 12 |
| 10:42:04 | 13 |
| 10:42:10 | 14 |
| 10:42:13 | 15 |
| 10:42:21 | 16 |
| 10:42:30 | 17 |
| 10:42:36 | 18 |
| 10:42:39 | 19 |
| 10:42:44 | 20 |
| 10:42:49 | 21 |
| 10:42:53 | 22 |
| 10:42:57 | 23 |
| 10:43:02 | 24 |
| 10:43:05 | 25 |

becomes a creditor of its own subsidiary.

It's troubling, I'll tell you, Ms. Lauria, it's troubling to me. I can -- and I'll move into some comments that I had to go over with Mr. Beall, but there's overlap here, and then I'll hear from Mr. Wolfson as well.

But you say you disagree with me about 3M's position about this MDL. I can only read what you all have written in your papers, I can read what's in transcripts that has been said about how broken this MDL is and how critical 3M is of my case management practices and my legal rulings, and that 3M believes that's a valid reason to seek protection in bankruptcy court and to do what they've done very, very creatively and craftily to seek that protection and to get out of this Court. It's really to get out of this Court.

So Mr. Keller -- I didn't see this myself on my own, I saw it in his reply, that 3M has stated that the MDL is broken -- I think he was quoting, actually, Mr. Roman may be in some public statements he's made, and that there was a reference to in bankruptcy there will be a fair and complete evidentiary record that hasn't existed in this court.

So, setting aside the fact that 3M -- I know you haven't been a part of the MDL at all so you're not privy to this. Mr. Beall certainly has been. But setting the aside the fact that 3M has been at the table -- at the table for three-and-a-half years through countless case management

| | |
|---|---|
| 10:43:09 | 1 |
| 10:43:13 | 2 |
| 10:43:16 | 3 |
| 10:43:21 | 4 |
| 10:43:27 | 5 |
| 10:43:30 | 6 |
| 10:43:35 | 7 |
| 10:43:38 | 8 |
| 10:43:41 | 9 |
| 10:43:46 | 10 |
| 10:43:50 | 11 |
| 10:43:54 | 12 |
| 10:43:59 | 13 |
| 10:44:03 | 14 |
| 10:44:06 | 15 |
| 10:44:11 | 16 |
| 10:44:14 | 17 |
| 10:44:18 | 18 |
| 10:44:22 | 19 |
| 10:44:27 | 20 |
| 10:44:32 | 21 |
| 10:44:35 | 22 |
| 10:44:38 | 23 |
| 10:44:42 | 24 |
| 10:44:43 | 25 |

conferences, was actually a part of many of those case management decisions, the fact that my case management decisions have resulted in the dismissal of over 80,000 of the plaintiffs' case, 65,000 the last five months -- I said this the last time we were together -- setting all that aside, the unfairness of my legal rulings and your client's belief and feelings about that, I agree with Mr. Keller, they're entitled to it, they can be as unhappy as they want to be.  That just goes with the robe.  They can even comment about it publicly.

But what party gets to run to another forum because they don't like the judge and the judge's rulings?  That's why we have appellate review.  We even have emergency mandamus options, which 3M has never taken in this litigation.  And I'm quite surprised that they haven't given now what I know about how very unhappy they've been.  But that certainly was an avenue for them.

In fact, Mr. Beall, your firm's defense clients have enjoyed numerous favorable rulings out of this Court, many from me.  One comes to mind, that's the *International Paper* class action case.  And I don't think your client, International Paper, would have thought it was very fair if those plaintiffs had been able to run into another forum to have my decisions and my rulings in your client's favor reviewed by some other court.

And I suppose -- I have nearly 700 BELO *Deepwater*

| | |
|---|---|
| 10:44:50 | 1 |
| 10:44:54 | 2 |
| 10:44:58 | 3 |
| 10:45:03 | 4 |
| 10:45:06 | 5 |
| 10:45:12 | 6 |
| 10:45:17 | 7 |
| 10:45:20 | 8 |
| 10:45:21 | 9 |
| 10:45:29 | 10 |
| 10:45:33 | 11 |
| 10:45:40 | 12 |
| 10:45:45 | 13 |
| 10:45:48 | 14 |
| 10:45:51 | 15 |
| 10:45:54 | 16 |
| 10:45:54 | 17 |
| 10:45:56 | 18 |
| 10:45:57 | 19 |
| 10:45:59 | 20 |
| 10:46:01 | 21 |
| 10:46:05 | 22 |
| 10:46:06 | 23 |
| 10:46:09 | 24 |
| 10:46:13 | 25 |

*Horizon* cases that I've been handling for the last three years along with this MDL, and many of those rulings have been in BP's favor.  I don't think BP would like it if those plaintiffs could just run into another forum and have those rulings overturned.  And maybe you'd say BP should have hired creative lawyers to devise a way to get into bankruptcy court without being bankrupt if they were unhappy with my rulings.  That hasn't happened.

And this notion that -- or this statement that -- and Mr. Keller referenced it -- that in bankruptcy court everything is going to be perfect, here everything was terrible, because you're going to be able to on a scientific basis get the claims against 3M resolved based on a fair and complete evidentiary record.  That does concern me.  That statement concerns me.  That tells me something about your intent or your client's intent.

**MS. IAURIA:**  Your Honor, may I respond?

**THE COURT:**  One minute.

**MS. IAURIA:**  Okay.

**THE COURT:**  Again, you don't know this but Mr. Beall does, the plaintiffs certainly do, the other defense lawyers do.

For over two years I've tried to get the parties to agree to a biostatistician to look at the inventory in this MDL and to come up with a scientific basis for resolving the

| | |
|---|---|
| 10:46:16 | 1 |
| 10:46:20 | 2 |
| 10:46:25 | 3 |
| 10:46:26 | 4 |
| 10:46:29 | 5 |
| 10:46:32 | 6 |
| 10:46:41 | 7 |
| 10:46:47 | 8 |
| 10:46:49 | 9 |
| 10:46:51 | 10 |
| 10:46:54 | 11 |
| 10:46:58 | 12 |
| 10:47:02 | 13 |
| 10:47:06 | 14 |
| 10:47:09 | 15 |
| 10:47:14 | 16 |
| 10:47:18 | 17 |
| 10:47:22 | 18 |
| 10:47:24 | 19 |
| 10:47:31 | 20 |
| 10:47:33 | 21 |
| 10:47:37 | 22 |
| 10:47:39 | 23 |
| 10:47:43 | 24 |
| 10:47:44 | 25 |

claims.  The plaintiffs have agreed with that, 3M has always resisted it.  And the bellwethers were selected based on a scientific method.

So to suggest that there's been no scientific approach by this Court or attempted scientific approach by this Court to resolve claims is wrong, is false.  But I am concerned about what appears to me to be an intent to re-litigate evidentiary and legal rulings of the Court.

You go ahead and respond now, if you'd like.

**MS. LAURIA:**  Sure, Your Honor, I'm happy to do that.  And let's talk about first the re-litigation concept.  And I understand the Court's concerns in that regard.

The context that Mr. Keller is referring to is a potential estimation proceeding in the bankruptcy court.  Again, just like the TRO before the bankruptcy court, that would be brought by the Aearo debtor, not by 3M, as Aearo debtor has the right to do under the bankruptcy code.

**THE COURT:**  Then why is 3M talking about the potential for being able to take advantage of that if it's Aearo?

**MS. LAURIA:**  I actually thought Mr. Keller was citing portions of the informational brief in the first day hearing transcript, and those were Aearo's statements, Aearo talking about what its intentions were to do under the confines of the bankruptcy code.

**THE COURT:**  Okay, Mr. Keller will have to -- maybe I

10:47:46   1   was wrong.  I thought there was a reference to 3M itself but
10:47:49   2   maybe not.
10:47:50   3           **MS. LAURIA:**  I do think the CEO of 3M issued a
10:47:53   4   statement that was quoted, I think he was referring to the
10:47:55   5   funding agreement in that particular statement of Mr. Keller's
10:47:58   6   brief.
10:47:59   7           In any event, the context that Mr. Keller is referring
10:48:01   8   to is an estimation proceeding in the bankruptcy court.  That
10:48:06   9   only happens by motion.  And in fact, the claimants are free to
10:48:10   10  object to even the concept of estimating the claims.  That's
10:48:14   11  certainly happening in the *J&J*, *LTL* proceeding.
10:48:18   12          The claims are estimated in an aggregate level.  The
10:48:22   13  bankruptcy court itself doesn't even have authority to estimate
10:48:25   14  individual personal injury or wrongful death claims.  And in
10:48:29   15  fact, in my experience -- and I'm dating myself to the asbestos
10:48:33   16  days -- we actually withdrew references to have the federal
10:48:36   17  district court rather than the bankruptcy court consider the
10:48:41   18  estimation.
10:48:42   19          So that's the context that Mr. Keller is referring to.
10:48:44   20  And --
10:48:45   21          **THE COURT:**  But you have a basis for valuing claims.
10:48:49   22  You have 19 verdicts.
10:48:53   23          **MS. LAURIA:**  And embedded I think, though, in the
10:48:56   24  Court's questions in Mr. Keller's assumption is that Judge
10:49:00   25  Graham doesn't know how to apply principles of res judicata or

| | |
|---|---|
| 10:49:05 | 1 |
| 10:49:08 | 2 |
| 10:49:13 | 3 |
| 10:49:13 | 4 |
| 10:49:16 | 5 |
| 10:49:19 | 6 |
| 10:49:21 | 7 |
| 10:49:24 | 8 |
| 10:49:28 | 9 |
| 10:49:32 | 10 |
| 10:49:32 | 11 |
| 10:49:34 | 12 |
| 10:49:41 | 13 |
| 10:49:48 | 14 |
| 10:49:50 | 15 |
| 10:49:53 | 16 |
| 10:49:55 | 17 |
| 10:49:58 | 18 |
| 10:50:02 | 19 |
| 10:50:04 | 20 |
| 10:50:09 | 21 |
| 10:50:10 | 22 |
| 10:50:12 | 23 |
| 10:50:16 | 24 |
| 10:50:18 | 25 |

collateral estoppel if he's the judge that's conducting the estimation, or that the federal district court in Indiana, if the reference is withdrawn and that court conducts the estimation, doesn't have the ability to apply collateral estoppel and res judicata.

There's nothing in the record or before Your Honor that would suggest that those courts are going to disregard what happened in front of this Court in reaching an aggregate estimation of liability, the purpose of which is to fund the trust.

THE COURT:  The concern, though, is that your client is going to go into that process and ask the courts to do that, to disregard this Court's lawfully entered orders, whether you agree with them or not.

MS. LAURIA:  As we said in our papers, Your Honor, that is certainly not our intent.  But if you look at --

THE COURT:  What's the problem with an injunction?  If it's not your intent, then what's the harm of an injunction?

MS. LAURIA:  Well, the injunction, as Mr. Keller said, is an extraordinary remedy in this case.  So if there's no basis of harm, there's no basis --

THE COURT:  A lot is extraordinary in this case.

MS. LAURIA:  That's a fair point, Your Honor.

THE COURT:  I've been accused of disregarding traditional case management tools, but there's nothing

10:50:21    1    traditional about this MDL.

10:50:22    2         **MS. LAURIA:**  Understood, Your Honor.  But if you look

10:50:24    3    at -- I think the most analogous circumstance is probably the

10:50:28    4    re-litigation exception under the Anti-Injunction Act.  And the

10:50:32    5    Supreme Court said that -- and again, that was federal court

10:50:35    6    versus state.  But the Supreme Court said, in applying the

10:50:37    7    re-litigation exception to the Anti-Injunction Act, that courts

10:50:42    8    should not assume that the state court doesn't know how to

10:50:45    9    apply issue preclusion.

10:50:47   10         And I would urge the same thing here, the Court should

10:50:51   11    not assume that, if Aearo or 3M -- and again, I'll represent

10:50:56   12    again 3M is not -- we understand principles of res judicata and

10:51:01   13    collateral estoppel.  But I don't think it's fair for this

10:51:04   14    Court to assume that Judge Graham or the Indiana District Court

10:51:09   15    won't apply Your Honor's rulings in prior decisions.  And

10:51:12   16    that's what is embedded in this.

10:51:14   17         And I think it's *Smith v. Bayer*, the *Vioxx* decision

10:51:20   18    talks about this as well, which was cited I think in both of

10:51:23   19    our papers.  If given the choice between an extraordinary

10:51:26   20    remedy, which is what we're doing under the All Writs Act,

10:51:30   21    versus allowing another court to properly apply issue

10:51:34   22    preclusion via collateral estoppel or res judicata, we should

10:51:39   23    let the Court apply those rules.

10:51:41   24         **THE COURT:**  I would agree with you in an ordinary

10:51:43   25    case.  But in this case where one party has been so vocal and

10:51:51   1   obvious in its intent, I'm not sure I'm comfortable just

10:51:55   2   leaving it to another court to make that decision.  I'm just

10:52:04   3   not sure I agree with you on that.

10:52:06   4        You certainly have the right -- 3M has the right to

10:52:11   5   its opinions, to express them, but it's a bridge too far to say

10:52:23   6   we're going to go in and ask another court to undo this Court's

10:52:27   7   rulings that have been entered over the last three-and-a-half

10:52:30   8   years.  No matter how much your client is upset about those

10:52:34   9   rulings and disagrees with them and thinks they're wrong, they

10:52:40   10  are lawfully entered orders pursuant to this Court's

10:52:44   11  jurisdiction, and they should stay that way.  And if they're

10:52:49   12  going to be reversed or disregarded, that's the prerogative of

10:52:54   13  the Eleventh Circuit Court of Appeals.

10:52:58   14       Ms. Lauria, I appreciate your presentation.

10:53:01   15       Mr. Keller, I'll give you five minutes to reply and

10:53:06   16  then I'll hear from Mr. Wolfson and Mr. Beall.

10:53:09   17       **MS. LAURIA:**  Thank you, Your Honor.

10:53:10   18       **THE COURT:**  Thank you.

10:53:13   19       **MR. KELLER:**  Thank you, Your Honor.  Ashley Keller

10:53:17   20  again for Mr. Valle.  I'll try not to use all of the five

10:53:20   21  minutes.

10:53:21   22       The res judicata and collateral estoppel points will

10:53:27   23  eviscerate the All Writs Act in every case because a litigant

10:53:29   24  could always say don't issue an injunction, the court that I'm

10:53:31   25  running to to re-litigate these issues knows how to apply res

| | |
|---|---|
| 10:53:35 | 1 |
| 10:53:36 | 2 |
| 10:53:39 | 3 |
| 10:53:44 | 4 |
| 10:53:47 | 5 |
| 10:53:51 | 6 |
| 10:53:52 | 7 |
| 10:53:55 | 8 |
| 10:53:59 | 9 |
| 10:54:01 | 10 |
| 10:54:05 | 11 |
| 10:54:05 | 12 |
| 10:54:08 | 13 |
| 10:54:08 | 14 |
| 10:54:11 | 15 |
| 10:54:14 | 16 |
| 10:54:18 | 17 |
| 10:54:18 | 18 |
| 10:54:22 | 19 |
| 10:54:26 | 20 |
| 10:54:29 | 21 |
| 10:54:33 | 22 |
| 10:54:38 | 23 |
| 10:54:39 | 24 |
| 10:54:44 | 25 |

judicata and collateral estoppel.

We do have to say that with respect to state courts. That's what the Anti-Injunction Act says.  But as a news flash to everybody, the bankruptcy court is an Article I tribunal. It's not a state court.  It doesn't get the benefit of the Anti-Injunction Act.

And so, just like this Court has the authority to issue its All Writs Act injunction with respect to a different Article III tribunal, a court of equal dignity, this Court of course has that authority under the statute with respect to a bankruptcy court.

And I'm casting no aspersions on the bankruptcy judge. Judge Graham is obviously --

**THE COURT:**  Neither am I at all.

**MR. KELLER:**  He's an able jurist and he's conscientiously approaching this case as he would any other. So I have immense respect for Judge Graham, but it doesn't change the fact that the collateral estoppel point can't carry the day here, the Anti-Injunction Act has no applicability.

Let me talk about an extremely important concession that my colleague just made.  The estimation process is done at an aggregate level.  They admit that, under 157(b)(5) of the bankruptcy code, the bankruptcy court lacks jurisdiction because it's not an Article III court to adjudicate the value of Mr. Valle's claims.

| | |
|---|---|
| 10:54:45 | 1 |
| 10:54:48 | 2 |
| 10:54:50 | 3 |
| 10:54:54 | 4 |
| 10:54:57 | 5 |
| 10:54:57 | 6 |
| 10:55:06 | 7 |
| 10:55:07 | 8 |
| 10:55:10 | 9 |
| 10:55:12 | 10 |
| 10:55:16 | 11 |
| 10:55:16 | 12 |
| 10:55:20 | 13 |
| 10:55:23 | 14 |
| 10:55:27 | 15 |
| 10:55:29 | 16 |
| 10:55:32 | 17 |
| 10:55:34 | 18 |
| 10:55:39 | 19 |
| 10:55:41 | 20 |
| 10:55:43 | 21 |
| 10:55:50 | 22 |
| 10:55:50 | 23 |
| 10:55:51 | 24 |
| 10:55:54 | 25 |

So they want to ship him to a bankruptcy process that Your Honor rightly noted has been manufactured.  I am telling you now I have spoken with my client through my colleagues, he will not consent to the bankruptcy court adjudicating the value of his claims.  He wants his Seventh Amendment right to a jury and he is entitled to it under the bankruptcy code.  But now he's got to wait, instead of being on the cusp of finally seeing the jury who will adjudicate the value of his claims so that they can go through this process that for him is going to be meaningless -- and they say in their papers without any citation to authority, *Well, most plaintiffs, they'll accept the estimation process because it's going to be fair*.

Let me assure you that's not going to be true for my 15,000 clients.  My strong advice to them is going to be that they should exercise their right to a trial by jury.  So this whole bankruptcy is a distraction to eventually getting these cases right back where they are.

The JPML initial transfer order is not going to be vacated because of the bankruptcy.  When Mr. Valle eventually files his case in an Article III court and moves to withdraw the reference, the JPML is going to tag it and send it back to Your Honor.

What are we doing here allowing them to re-litigate this Court's rulings for however long the bankruptcy process is going to take when he has a right to an Article III

| | |
|---|---|
| 10:55:57 | 1 |
| 10:55:58 | 2 |
| 10:56:01 | 3 |
| 10:56:06 | 4 |
| 10:56:08 | 5 |
| 10:56:12 | 6 |
| 10:56:17 | 7 |
| 10:56:17 | 8 |
| 10:56:22 | 9 |
| 10:56:23 | 10 |
| 10:56:24 | 11 |
| 10:56:27 | 12 |
| 10:56:31 | 13 |
| 10:56:32 | 14 |
| 10:56:35 | 15 |
| 10:56:38 | 16 |
| 10:56:43 | 17 |
| 10:56:44 | 18 |
| 10:56:44 | 19 |
| 10:56:47 | 20 |
| 10:56:48 | 21 |
| 10:56:48 | 22 |
| 10:56:53 | 23 |
| 10:56:55 | 24 |
| 10:56:59 | 25 |

1  adjudication of his claims?

2        The final point I'll make in rebuttal, Your Honor, is

3  this:  Again, shifting between Aearo and 3M.  If 3M wants to

4  say, *This is all Aearo, they're the ones saying the bad things*

5  *about relitigating this Court's decisions, we haven't done any*

6  *of that,* they can put it to rest right now, let them say in

7  open court, *We will not challenge this Court's decisions on the*

8  *government contractor defense in bankruptcy, we're not going to*

9  *seek to relitigate this Court's Daubert* decisions.  They won't

10  do it.

11        And while, on the one hand in their brief, they're

12  saying, *This is all Aearo, it's the debtors*, on the other

13  they're saying it's a due process clause violation for you to

14  enter this injunction so we can't run into bankruptcy court and

15  parrot everything that Aearo has said.  When they're talking to

16  their stockholders, 3M has had no problem saying, *We are the*

17  *ones who decided to end this through an efficient process in*

18  *bankruptcy* --

19        **THE COURT:**  This is what you've quoted in your reply,

20  right?

21        **MR. KELLER:**  Correct, Your Honor.  The press release

22  is there for all to see, the earnings call transcript was there

23  for all to see.  They are perfectly happy to claim that they're

24  in charge of this when they're talking to the investors who

25  support their market capitalization, but they now want to tell

10:57:04  1  this Court Aearo is separate.

10:57:05  2  If Aearo is really separate and independent and run by

10:57:08  3  all of these directors who have nothing to do with the 3M,

10:57:11  4  there should be no harm from the injunction, 3M doesn't get a

10:57:15  5  stay, they shouldn't get to re-litigate anything in bankruptcy

10:57:16  6  court.  And if Aearo wants to do that without them pulling the

10:57:18  7  puppet strings, that's completely fine.  We're not seeking

10:57:21  8  relief against Aearo.

10:57:22  9  **THE COURT:**  All right.  Thank you.

10:57:24  10  **MR. KELLER:**  Thank you, Your Honor.

10:57:25  11  **THE COURT:**  Mr. Wolfson?

10:57:29  12  **MR. WOLFSON:**  Thank you, Your Honor.  Adam Wolfson

10:57:38  13  from Quinn Emmanuel on behalf of plaintiff Guy Cupit.

10:57:42  14  Your Honor, our motion, as you noted at the beginning

10:57:44  15  of the hearing, is slightly different than Mr. Keller's motion

10:57:47  16  and Mr. Valle's motion.  Ours is about what has happened over

10:57:50  17  three years and what now appears to be an about face from 3M on

10:57:54  18  its own full liability for Combat Arms Version 2 related

10:57:59  19  injuries.

10:58:00  20  Your Honor already noted and we've already discussed

10:58:02  21  this morning that we've had three-and-a-half years of

10:58:06  22  litigation where 3M never said, *Hey, we're not fully liable*

10:58:12  23  *here*.

10:58:12  24  What 3M has done is now in its opposition it is

10:58:16  25  saying, *Oh, well, we kept this issue live*.  And I'm going to

10:58:19  1   address that in a moment, Your Honor.

10:58:20  2       But the argument in the bankruptcy is that the Aearo

10:58:22  3   debtors have liability here because they're named defendants

10:58:25  4   and that therefore there should be an injunction against these

10:58:28  5   cases moving forward, because if we have a trial against 3M

10:58:31  6   it's necessarily going to impart some kind of liabilities on

10:58:35  7   the Aearo debtors which decreases the assets of the estate and

10:58:41  8   therefore harms the debtors.

10:58:42  9       But here are some things I heard from 3M's counsel

10:58:44  10  this morning:  Aearo has 230,000 claims against it.  3M has

10:58:48  11  been jointly and severally liable and is jointly and severally

10:58:52  12  liable for that, including on 80 percent of the claims that are

10:58:55  13  from the Aearo period versus 20 percent of the claims that are

10:59:01  14  just the 3M period.

10:59:02  15      So why don't we talk about the bellwethers that have

10:59:05  16  happened, the 16 different bellwethers that involve usage in

10:59:10  17  both the Aearo period and the 3M period.

10:59:13  18          **THE COURT:**  I think it's 19.

10:59:15  19          **MR. WOLFSON:**  The 19 plaintiffs, Your Honor, I believe

10:59:18  20  it's that 16 of them -- or 17 of them -- let me take that back.

10:59:25  21  16 are in both periods.  One, Mr. Adkins, which I'll talk

10:59:29  22  about, was solely in the Aearo period, and then I believe two

10:59:33  23  were solely in the 3M period.

10:59:35  24          **THE COURT:**  Okay.  I didn't know there were two in the

10:59:37  25  3M period.  I didn't know that.  Baker may have been one of

| | |
|---|---|
| 10:59:42 | 1 |

them.

| | |
|---|---|
| 10:59:43 | 2 |

**MR. WOLFSON:**  I believe that is -- well, I have a list

| | |
|---|---|
| 10:59:46 | 3 |

but --

| | |
|---|---|
| 10:59:46 | 4 |

**THE COURT:**  That's all right.

| | |
|---|---|
| 10:59:47 | 5 |

**MR. WOLFSON:**  In each of the 19 trials what we had was

| | |
|---|---|
| 10:59:51 | 6 |

3M as a party that was fully liable.  Almost a year ago I was

| | |
|---|---|
| 10:59:56 | 7 |

in this courtroom trying the *Adkins* case where in its opening

| | |
|---|---|
| 11:00:01 | 8 |

statement and its closing argument 3M's lawyers got up there

| | |
|---|---|
| 11:00:05 | 9 |

and pointed out that Mr. Adkins's usage of the Combat Arms

| | |
|---|---|
| 11:00:11 | 10 |

Version 2 stopped before the Aearo acquisition, yet 3M was

| | |
|---|---|
| 11:00:14 | 11 |

fully liable for this.  This was an issue that every single

| | |
|---|---|
| 11:00:18 | 12 |

bellwether jury is asked to decide.

| | |
|---|---|
| 11:00:21 | 13 |

So, we either have an issue that they have waived the

| | |
|---|---|
| 11:00:25 | 14 |

defense of successor liability, we have an issue of them making

| | |
|---|---|
| 11:00:29 | 15 |

judicially -- statements that can be judicially estopped; or if

| | |
|---|---|
| 11:00:37 | 16 |

we credit what they're saying in their opposition brief -- and

| | |
|---|---|
| 11:00:39 | 17 |

again to go back to something Ms. Lauria talked about, there is

| | |
|---|---|
| 11:00:43 | 18 |

now an issue that they have made live of collateral estoppel.

| | |
|---|---|
| 11:00:47 | 19 |

So, on that point, Your Honor, let's accept everything

| | |
|---|---|
| 11:00:52 | 20 |

they have said.  Let's accept that they have kept this issue

| | |
|---|---|
| 11:00:54 | 21 |

live, that a general denial here in their -- as their first

| | |
|---|---|
| 11:00:55 | 22 |

defense somehow kept the issue live of successor liability.

| | |
|---|---|
| 11:00:59 | 23 |

Well, in the Eleventh Circuit there's four factors for

| | |
|---|---|
| 11:01:03 | 24 |

collateral estoppel:  The issue at stake must be identical; the

| | |
|---|---|
| 11:01:08 | 25 |

issue must have been actually litigated; the determination of

| | |
|---|---|
| 11:01:11 | 1 |
| 11:01:13 | 2 |
| 11:01:16 | 3 |
| 11:01:20 | 4 |
| 11:01:21 | 5 |
| 11:01:23 | 6 |
| 11:01:27 | 7 |
| 11:01:28 | 8 |
| 11:01:31 | 9 |
| 11:01:34 | 10 |
| 11:01:36 | 11 |
| 11:01:39 | 12 |
| 11:01:43 | 13 |
| 11:01:44 | 14 |
| 11:01:46 | 15 |
| 11:01:48 | 16 |
| 11:01:51 | 17 |
| 11:01:53 | 18 |
| 11:01:58 | 19 |
| 11:02:06 | 20 |
| 11:02:11 | 21 |
| 11:02:13 | 22 |
| 11:02:14 | 23 |
| 11:02:18 | 24 |
| 11:02:22 | 25 |

the issue in the prior litigation must have been critical and
necessary; and then that the party against whom the earlier
decision is asserted must have had a full and fair opportunity
to litigate it.

So is the issue identical?  Absolutely.

Is 3M liable for the pre-2008 acts of the Aearo
defendants?

Was it actually litigated?  Of course it was.

We have in all these bellwethers every single time,
with the exceptions that I just noted, you have plaintiffs that
had usage both before and after the Aearo bankruptcy, and the
question was is 3M liable for this.  We have all these juries
that say, yes, it was.

**THE COURT:**  But they're saying they're jointly and
severally liable now.

**MR. WOLFSON:**  Well, jointly and severally liable --
Your Honor, I would point out, for example, going back to the
*Adkins* case, this is the point:  If 3M did not have liability
for purely pre-Aearo acquisition acts, then they could have
been exempted from the ruling.  They could have asked that 3M
have a separate line did you show that 3M lacks liability for
this.

**THE COURT:**  I think their point is is that Aearo has
liability, not just 3M.  And that's not how they acted and
proceeded for three-and-a-half years, but I think that's the

11:02:26  1   position they're taking now is we've never said that Aearo

11:02:29  2   didn't have liability.  And in fact, we're hearing the 80/20

11:02:36  3   percent.  And so I don't think they're trying to argue that 3M

11:02:41  4   doesn't have liability, but I think they're trying to argue

11:02:43  5   that Aearo also has liability.

11:02:47  6           **MR. WOLFSON:**  Right.  And, Your Honor, our point is

11:02:49  7   that the way that this litigation has occurred and the

11:02:51  8   statements that they've made in support of various positions

11:02:54  9   that they actually got the Court to adopt is that 3M bears full

11:02:57  10  liability, that -- to quote from the *Wayman* trial, post-trial

11:03:02  11  briefing on the statutory caps, they said -- I'll just read a

11:03:06  12  portion of it.  This is Document 194.

11:03:09  13          **THE COURT:**  Right, I have it.

11:03:10  14          **MR. WOLFSON:**  This is page 4, Your Honor:  "Third,

11:03:15  15  regardless of their corporate forum, the defendants share the

11:03:18  16  same potential liability in this case."

11:03:22  17          Specifically in their answer to the master complaint,

11:03:26  18  defendants admitted the allegations in paragraphs 18 and 19

11:03:29  19  which talk about the acquisition.

11:03:31  20          And then they go on in the following paragraph:  "Thus

11:03:34  21  3M Company owns and controls 100 percent of the other five

11:03:38  22  named defendants rendering any suggestion that they are six

11:03:42  23  separate parties for purposes of this litigation illusory."

11:03:47  24          They have taken the position that this corporate forum

11:03:50  25  difference is they say for purposes of liability illusory

11:03:53   1   because 3M Company has its own liability.  They in discovery

11:03:58   2   told us that there was no real difference between the Aearo

11:04:02   3   defendants and 3M Company in terms of liability.

11:04:05   4         They have gone in bellwether trial after bellwether

11:04:09   5   trial after bellwether trial with 3M Company, the company

11:04:14   6   liable for pre-2008 acts.  And now when it suits them with the

11:04:20   7   bankruptcy that Your Honor noted has a lot of troubling aspects

11:04:24   8   to it, now they are taking the opposite position, *Well, no, 3M*

11:04:28   9   *does not have its own liability, it did not take on the*

11:04:31  10   *liability, Aearo defendants have that.*

11:04:36  11         And our argument here is just --

11:04:38  12         **THE COURT:**  Well, that's the only way the indemnity

11:04:40  13   agreement makes sense.

11:04:43  14         **MR. WOLFSON:**  Well, they're trying to manufacture

11:04:47  15   that, that's the problem, Your Honor.

11:04:48  16         So what this really is about is about a course of

11:04:50  17   conduct over three years, what it is about is fairness.

11:04:53  18         And when you have, for example -- let's go back to the

11:04:56  19   idea of collateral estoppel.  When you've tried 19 different

11:04:59  20   bellwether cases and every single time that the plaintiffs have

11:05:02  21   won 3M Company has been liable for all of the acts, this is a

11:05:06  22   necessary critical point, you have an issue -- or a necessary

11:05:10  23   and critical point to those verdicts, you have an issue that

11:05:13  24   they cannot now run away from.

11:05:16  25         Because every time that the plaintiffs lost in the

| | | |
|---|---|---|
| 11:05:19 | 1 | bellwethers, it was a full slate loss.  The reasoning was not |
| 11:05:22 | 2 | Aearo defendants are not liable, 3M is liable, or you never had |
| 11:05:27 | 3 | anything where Aearo defendants were found liable and 3M was |
| 11:05:30 | 4 | not. |
| 11:05:31 | 5 | **THE COURT:**  They had one verdict form. |
| 11:05:33 | 6 | **MR. WOLFSON:**  Well, this is also again about a course |
| 11:05:35 | 7 | of conduct.  3M has assumed these liabilities and now they're |
| 11:05:38 | 8 | trying to -- |
| 11:05:38 | 9 | **THE COURT:**  But they're saying that 3M is not |
| 11:05:41 | 10 | asserting anything different. |
| 11:05:44 | 11 | **MR. WOLFSON:**  I'm sorry, Your Honor? |
| 11:05:45 | 12 | **THE COURT:**  They're saying that 3M is not asserting |
| 11:05:49 | 13 | anything to the contrary. |
| 11:05:51 | 14 | **MR. WOLFSON:**  Well, I believe that's -- we disagree on |
| 11:05:54 | 15 | that.  Because, when you have trials, when you have positions |
| 11:05:57 | 16 | throughout the case where the parent company has assumed the |
| 11:06:02 | 17 | liabilities, then it really -- we could have cleaned up the |
| 11:06:07 | 18 | master complaint years ago had they asked for this or had they |
| 11:06:11 | 19 | raised this issue.  We could have dropped all of the Aearo |
| 11:06:14 | 20 | defendants, gone just against 3M Company, and that's really |
| 11:06:18 | 21 | what we want to do here. |
| 11:06:19 | 22 | The reason that Mr. Cupit is asking for this relief |
| 11:06:22 | 23 | from Your Honor, this decision from Your Honor is so that |
| 11:06:23 | 24 | tomorrow he can drop the Aearo defendants from his complaint, |
| 11:06:27 | 25 | proceed, because really the only party here that matters is 3M |

| | | |
|---|---|---|
| 11:06:30 | 1 | Company, not the Aearo defendants.  And that's how they have |
| 11:06:35 | 2 | comported themselves throughout, that is how they have tried |
| 11:06:38 | 3 | all the bellwethers, and it is the position that they have |
| 11:06:40 | 4 | taken in front of this Court throughout this case. |
| 11:06:43 | 5 | Now, we have various different ways that we think that |
| 11:06:46 | 6 | this Court can get there.  I just mentioned the collateral |
| 11:06:49 | 7 | estoppel point from the bellwethers, but in our motion we talk |
| 11:06:53 | 8 | about also the waiver of the defense. |
| 11:06:56 | 9 | Now, in these cases, the bellwether trials where they |
| 11:07:00 | 10 | could have said, *Well, 3M is not liable for pre-2008 acts*, |
| 11:07:05 | 11 | under the Eleventh Circuit's test in the *Frederick* case, Your |
| 11:07:11 | 12 | Honor, that would be an argument -- a defense that would reduce |
| 11:07:15 | 13 | 3M Company's damages.  But they never identified them. |
| 11:07:21 | 14 | **THE COURT:**  Which you would think that they would have |
| 11:07:23 | 15 | done.  They would have actually, in my view, had a duty to do |
| 11:07:28 | 16 | that -- |
| 11:07:28 | 17 | **MR. WOLFSON:**  Yes. |
| 11:07:29 | 18 | **THE COURT:**  -- if, in fact, Aearo had separate |
| 11:07:31 | 19 | responsibility from 3M for the claims.  But anyway. |
| 11:07:35 | 20 | **MR. WOLFSON:**  Absolutely, we 100 percent agree with |
| 11:07:39 | 21 | Your Honor. |
| 11:07:40 | 22 | And going to the point that they raised in their brief |
| 11:07:42 | 23 | about PTO 17 where adopting the master answer was without |
| 11:07:48 | 24 | prejudice to adding affirmative defenses, we are now at a point |
| 11:08:00 | 25 | where we are past motions for summary judgment, not only the |

| | |
|---|---|
| 11:08:01 | 1 |
| 11:08:06 | 2 |
| 11:08:10 | 3 |
| 11:08:14 | 4 |
| 11:08:21 | 5 |
| 11:08:25 | 6 |
| 11:08:25 | 7 |
| 11:08:28 | 8 |
| 11:08:28 | 9 |
| 11:08:29 | 10 |
| 11:08:31 | 11 |
| 11:08:33 | 12 |
| 11:08:38 | 13 |
| 11:08:42 | 14 |
| 11:08:42 | 15 |
| 11:08:44 | 16 |
| 11:08:48 | 17 |
| 11:08:51 | 18 |
| 11:08:56 | 19 |
| 11:08:59 | 20 |
| 11:09:06 | 21 |
| 11:09:09 | 22 |
| 11:09:13 | 23 |
| 11:09:13 | 24 |
| 11:09:16 | 25 |

first round or the second round.  We're at a point where the

plaintiffs -- we have no ability to attack this idea.

And now they're going to say, *Well, okay, this was our*

*ability to add this affirmative defense anytime we want*.

Under Rule 15(a) --

**THE COURT:**  Well, they would not proceed under Rule

15(a).  They would have to proceed under Rule 16.  There's no

question about that.

**MR. WOLFSON:**  Well, Your Honor, then I think that even

more elevated standard shows that they absolutely could not

amend their answer now.  Even if you went to 15(a), though,

undue delay, prejudice, dilatory motive, all of that, no matter

which standard you apply, we don't think that they can amend

their answer.

So, Your Honor, if you have -- I'd be happy to go on,

but the gist of our motion here is that you have

three-and-a-half years of statement after statement, hearing

after hearing and 19 different bellwethers where 3M has

indicated through words, through actions, through verdicts that

it has assumed all Combat Arms Version 2 liabilities, and now

they want to go back on that because of the bankruptcy.  We

don't think it's fair, we don't think it's justified under law,

nor --

**THE COURT:**  They haven't asked -- they haven't filed a

motion with the Court to do that.  I think you are maybe

11:09:19    1    presuming that they're going to do that.  They haven't yet.

11:09:25    2              **MR. WOLFSON:**  Right.

11:09:26    3              **THE COURT:**  So tell me again specifically the relief

11:09:28    4    that you and your client are seeking in terms of an injunction.

11:09:34    5    How would that read?

11:09:35    6              **MR. WOLFSON:**  Well, I don't think we're asking for an

11:09:38    7    injunction, Your Honor.  I think what we're asking for is a

11:09:40    8    ruling that 3M has either waived this defense or it is unable

11:09:44    9    to raise a successor liability defense.

11:09:46   10              **THE COURT:**  So you're not asking for me to enjoin them

11:09:49   11    from doing that, you just want a declaratory judgment or

11:09:56   12    something that tells them that they have waived it, I can see

11:10:00   13    perhaps that argument.

11:10:03   14              **MR. WOLFSON:**  Or a Motion to Strike, Your Honor, to

11:10:05   15    the extent that they're claiming that they have denied and can

11:10:09   16    continue denying their successor liability based on the master

11:10:14   17    answer, at this point, for Mr. Cupit's purposes, at the

11:10:19   18    beginning of his case and moving forward, being able to strike

11:10:21   19    that defense for the reasons that we discussed and we put in

11:10:22   20    our papers is another potential vehicle for that.

11:10:24   21              **THE COURT:**  They've argued -- I believe Mr. Beall

11:10:28   22    raised the argument that they haven't taken any position in

11:10:32   23    Mr. Cupit's case.

11:10:33   24              What is your response to that?

11:10:36   25              **MR. WOLFSON:**  Well, we know that they are trying to

|          |    |
|----------|----|
| 11:10:38 | 1  | stay Mr. Cupit's case and that, as indicated by their |
| 11:10:43 | 2  | opposition brief, they intend now to maintain this argument. |
| 11:10:49 | 3  | So, for our view, Your Honor, general discovery is |
| 11:10:52 | 4  | closed in Mr. Cupit's case. All that's left is case-specific |
| 11:10:57 | 5  | discovery as he moves forward. But beyond that what we have is |
| 11:11:02 | 6  | a full set of pleadings and we have a case that is live, absent |
| 11:11:08 | 7  | any sort of stay from the bankruptcy court is going to proceed. |
| 11:11:12 | 8  | So, knowing that Mr. Cupit is not going to get to |
| 11:11:14 | 9  | trial down the line and have 3M assert this defense which has |
| 11:11:17 | 10 | indicated through other means that it intends to do or may |
| 11:11:19 | 11 | intend to do, will provide greater clarity for Mr. Cupit and |
| 11:11:23 | 12 | frankly for the rest of the plaintiffs who are still moving |
| 11:11:26 | 13 | forward with their cases at this time. |
| 11:11:27 | 14 | **THE COURT:** All right. Thank you. |
| 11:11:29 | 15 | **MR. WOLFSON:** Thank you, Your Honor. |
| 11:11:41 | 16 | **MR. BEALL:** May it please the Court? Charles Beall |
| 11:11:44 | 17 | for 3M today. |
| 11:11:45 | 18 | Before I begin my argument on this motion, I did want |
| 11:11:48 | 19 | to sort of clarify something that was asked in the prior |
| 11:11:52 | 20 | argument just to make sure that the record is clear about this, |
| 11:11:54 | 21 | and that is: There is in fact a pre-bankruptcy indemnification |
| 11:12:01 | 22 | language agreement. |
| 11:12:02 | 23 | In the 2013 reorganization of the entities from |
| 11:12:05 | 24 | corporations to LLC's, there was indemnification language |
| 11:12:09 | 25 | included in paragraph 20b of each of those entities in the |

| | |
|---|---|
| 11:12:15 | 1 |
| 11:12:20 | 2 |
| 11:12:21 | 3 |
| 11:12:24 | 4 |
| 11:12:28 | 5 |
| 11:12:31 | 6 |
| 11:12:35 | 7 |
| 11:12:36 | 8 |
| 11:12:37 | 9 |
| 11:12:39 | 10 |
| 11:12:41 | 11 |
| 11:12:44 | 12 |
| 11:12:44 | 13 |
| 11:12:47 | 14 |
| 11:12:47 | 15 |
| 11:12:50 | 16 |
| 11:12:54 | 17 |
| 11:13:00 | 18 |
| 11:13:03 | 19 |
| 11:13:07 | 20 |
| 11:13:10 | 21 |
| 11:13:15 | 22 |
| 11:13:18 | 23 |
| 11:13:18 | 24 |
| 11:13:23 | 25 |

Aearo Holding that indemnified covered persons, and 3M Company
would be a covered person under that.

That was produced I believe last week in the
bankruptcy.  I should say I was not there so I'm just going by
representation, I understand it was discussed yesterday at
Mr. Stein's deposition so they do have this document.  I don't
know if Your Honor has it.

**THE COURT:**  I don't have it.

**MR. BEALL:**  I apologize for that because it came up
today, but I wanted to clarify that there is in fact something
that -- I don't want to go over my skis here and start arguing
something --

**THE COURT:**  I would like to have it submitted to me,
though, so someone needs to submit it to me.

**MR. BEALL:**  I'm sure we can do that for Your Honor and
do a filing of notice with all of that documentation there.

With respect to Mr. Wolfson's argument, I want to make
just a few preliminary points about the motion.  First it's
obvious it's a one-off motion, it's just Mr. Cupit, he's by
himself in this.  Even though Ms. Hoekstra presented an
affidavit or declaration in support of it, leadership did not
join this, it is not an all-cases filing.

It is asking for relief solely for Mr. Cupit.  But
somehow he asked the Court to rule for all 230,000-plus cases
in his case.  I'm not sure why he would have the authority to

| | |
|---|---|
| 11:13:26 | 1 |
| 11:13:28 | 2 |
| 11:13:33 | 3 |
| 11:13:33 | 4 |
| 11:13:33 | 5 |
| 11:13:41 | 6 |
| 11:13:45 | 7 |
| 11:13:51 | 8 |
| 11:13:54 | 9 |
| 11:13:54 | 10 |
| 11:13:57 | 11 |
| 11:14:01 | 12 |
| 11:14:10 | 13 |
| 11:14:14 | 14 |
| 11:14:19 | 15 |
| 11:14:23 | 16 |
| 11:14:26 | 17 |
| 11:14:34 | 18 |
| 11:14:36 | 19 |
| 11:14:39 | 20 |
| 11:14:44 | 21 |
| 11:14:44 | 22 |
| 11:14:49 | 23 |
| 11:14:52 | 24 |
| 11:14:56 | 25 |

even make that request, but I wanted to make that point.

It is also, as we pointed out, premature.  His case is not only not a bellwether, it's not even a wave case.  His case is down the -- we haven't even answered his complaint yet.  It was just filed about three months ago.

He has not filed a motion seeking successor liability in this case -- in fact, nobody has -- nor have we filed a motion saying that we are not the liable successor to Aearo in any of these decisions.

**THE COURT:**  Let's talk about that, Mr. Beall, for a minute.  You have -- I recognize that issue has never been teed up in this litigation before me.  But at the same time -- and you've been here for three-and-a-half years -- Aearo has never had its own identity in this litigation independent of 3M Company, ever, not in what has been presented to this Court.

Counsel, corporate representative on behalf of all the defendants, one 3M person.  At the initial multi-day Rule 26 conference, there was no Aearo separately at that conference.  Meetings with me -- now, you weren't there for this, but meetings with me at the Pentagon and then at the DOJ to try to find a way get those agencies on board with releasing medical and VA records for the mass numbers of plaintiffs in the litigation as timely as possible, there was no Aearo separately at the table for that.  Countless monthly case management conferences you have been at where important and at times

| | | |
|---|---|---|
| 11:15:01 | 1 | sensitive case management matters have been discussed and |
| 11:15:02 | 2 | hammered out between the parties and the Court, no separate |
| 11:15:04 | 3 | Aearo.  Two years of corporate and government military |
| 11:15:09 | 4 | discovery including 30(b)(6) depos, no separate Aearo.  No |
| 11:15:13 | 5 | separate Aearo at the bellwether conferences or strategies for |
| 11:15:16 | 6 | selecting those bellwether cases were discussed, no Aearo.  As |
| 11:15:22 | 7 | has been discussed throughout 16 bellwether trials for 19 |
| 11:15:24 | 8 | plaintiffs, no Aearo ever appeared separately, and there was |
| 11:15:29 | 9 | never an assertion by 3M that 3M wasn't responsible for those |
| 11:15:33 | 10 | claims fully, even though many of those plaintiffs' claims had |
| 11:15:43 | 11 | pre-2008 purchase and use of those plugs. |
| 11:15:54 | 12 | You all stood back silent while I made comment after |
| 11:15:58 | 13 | comment to the jury about you all being one and the same.  No |
| 11:16:02 | 14 | one corrected me.  If that was a misstatement, then that was a |
| 11:16:08 | 15 | lack of candor, frankly, on the part of the attorneys to not |
| 11:16:13 | 16 | make that correction so that I'm not telling the jury something |
| 11:16:16 | 17 | that's not true. |
| 11:16:18 | 18 | Jury instructions, countless, I mean, you were there |
| 11:16:21 | 19 | for I think most if not all of them, those conferences. |
| 11:16:26 | 20 | Verdict forms, no separate verdict forms.  Numerous witnesses |
| 11:16:30 | 21 | testified that at the point 3M purchased Aearo they became 3M |
| 11:16:33 | 22 | employees, and there was never any contrary indication about |
| 11:16:39 | 23 | that. |
| 11:16:42 | 24 | And it's an interesting observation that, while 3M and |
| 11:16:46 | 25 | Aearo I guess were here jointly represented in the Group D |

| | |
|---|---|
| 11:16:51 | 1 |
| 11:16:54 | 2 |
| 11:16:57 | 3 |
| 11:17:02 | 4 |
| 11:17:06 | 5 |
| 11:17:09 | 6 |
| 11:17:14 | 7 |
| 11:17:19 | 8 |
| 11:17:25 | 9 |
| 11:17:30 | 10 |
| 11:17:38 | 11 |
| 11:17:42 | 12 |
| 11:17:46 | 13 |
| 11:17:54 | 14 |
| 11:17:57 | 15 |
| 11:17:57 | 16 |
| 11:18:00 | 17 |
| 11:18:01 | 18 |
| 11:18:02 | 19 |
| 11:18:03 | 20 |
| 11:18:06 | 21 |
| 11:18:08 | 22 |
| 11:18:09 | 23 |
| 11:18:11 | 24 |
| 11:18:14 | 25 |

bellwether trials throughout the spring, at the very same time
they were taking these obvious steps to separate themselves for
purposes of the MDL liability and the filing of the Chapter 11.

And then I agree with Mr. Wolfson, I made note of it,
you all responded and said, *Oh, we were just responding to the
plaintiff's argument*.  But in *Vaughn* and *Wayman* and actually I
believe it's *Vaughn* was in May, you all were -- or not you, but
3M and Aearo were in the process of, again, separating
themselves for purposes of liability while you were
representing to me that you're one and the same.  So it's
confusing at best.

But I said this earlier:  If Aearo did have
liabilities, shouldn't 3M have made that clear?  If Aearo had
separate liability from 3M, shouldn't that have been made
clear?

**MR. BEALL:**  Your Honor, may I respond to sort of the
whole litany?

**THE COURT:**  Sure.

**MR. BEALL:**  Let me do that first.  And while I
recognize -- you say Aearo was not present.

**THE COURT:**  I said separately.

**MR. BEALL:**  Separately present, and you are correct,
the same attorneys have represented all the defendants, which
is not uncommon in a situation where you've got a corporation
with subsidiaries beneath it being represented by common

| | | |
|---|---|---|
| 11:18:18 | 1 | lawyers. |
| 11:18:18 | 2 | **THE COURT:**  What is uncommon is to allow cases to go |
| 11:18:22 | 3 | to verdict and judgment if there is separate liability for one |
| 11:18:28 | 4 | of the those subsidiaries and that's never been raised or made |
| 11:18:32 | 5 | known to anyone. |
| 11:18:32 | 6 | **MR. BEALL:**  Well, there are a couple of -- and I would |
| 11:18:35 | 7 | confess that I'm -- as you probably can imagine, I'm not |
| 11:18:38 | 8 | involved in all strategy sessions, but I think it's fair to say |
| 11:18:42 | 9 | that there are reasons for that, one of which is, prior to |
| 11:18:44 | 10 | bankruptcy, Aearo -- there was no particular reason to.  There |
| 11:18:47 | 11 | was assets to pay everything, if necessary. |
| 11:18:49 | 12 | The second thing is the bellwether process, as the |
| 11:18:51 | 13 | Court is aware, is a unique process.  The purpose of that |
| 11:18:54 | 14 | process is to, in part, to sort of evaluate claims and |
| 11:18:59 | 15 | arguments and things of that nature, including liability and |
| 11:19:02 | 16 | defenses.  And that was the decision made to focus on that. |
| 11:19:05 | 17 | The plaintiffs did the same.  They did not ever submit |
| 11:19:08 | 18 | a verdict form or a jury instructions asking the jury to |
| 11:19:12 | 19 | allocate between the various defendants and liability, which is |
| 11:19:15 | 20 | what we argued in *Vaughn* and *Wayman*. |
| 11:19:18 | 21 | **THE COURT:**  They had no reason to. |
| 11:19:20 | 22 | **MR. BEALL:**  And nor did we have a reason at that time |
| 11:19:22 | 23 | to make a different issue.  We were focused on, you know, what |
| 11:19:26 | 24 | a jury would find about whether the CAEv2 was defective. |
| 11:19:29 | 25 | **THE COURT:**  But now you do because your client and |

| | |
|---|---|
| 11:19:31 | 1 |
| 11:19:40 | 2 |
| 11:19:45 | 3 |
| 11:19:46 | 4 |
| 11:19:48 | 5 |
| 11:19:51 | 6 |
| 11:19:55 | 7 |
| 11:19:59 | 8 |
| 11:20:01 | 9 |
| 11:20:01 | 10 |
| 11:20:01 | 11 |
| 11:20:03 | 12 |
| 11:20:06 | 13 |
| 11:20:09 | 14 |
| 11:20:11 | 15 |
| 11:20:12 | 16 |
| 11:20:14 | 17 |
| 11:20:15 | 18 |
| 11:20:17 | 19 |
| 11:20:17 | 20 |
| 11:20:19 | 21 |
| 11:20:21 | 22 |
| 11:20:25 | 23 |
| 11:20:27 | 24 |
| 11:20:29 | 25 |

Aearo have entered into this indemnification agreement that has
put Aearo in financial distress, given them all the liability
for this MDL.

        **MR. BEALL:**  Well, we have the -- first of all, the
corporate forums have always been maintained separately, and
that's an issue that's never been before the Court.  In fact,
in Mr. Wolfson's motion he doesn't even cite those issues --

        **THE COURT:**  I'm sorry who did you say -- oh, corporate
forums?

        **MR. BEALL:**  Corporate forums.  In other words, we've
never suggested there was only one defendant.  We've always
said "defendants".  For the simplicity of the jury, we've
referred to us as "3M" occasionally, and I recognize that.

        **THE COURT:**  Who carried the liabilities?

        **MR. BEALL:**  Excuse me?

        **THE COURT:**  On their balance sheet, who carried the
liabilities?

        **MR. BEALL:**  That -- I do not know the answer to that,
Your Honor so I --

        **THE COURT:**  Somebody does.

        **MR. BEALL:**  Well, I'm sure somebody knows the answer
to that question.  But for purposes of Mr. Wolfson's motion, I
don't see that as an issue.

        Again, by way of example:  If in the bellwether
trials, all 16 trials, if we had walked in and said, you know,

| | |
|---|---|
| 11:20:33 | 1 |
| 11:20:38 | 2 |
| 11:20:42 | 3 |
| 11:20:44 | 4 |
| 11:20:48 | 5 |
| 11:20:50 | 6 |
| 11:20:50 | 7 |
| 11:20:53 | 8 |
| 11:20:54 | 9 |
| 11:20:57 | 10 |
| 11:20:57 | 11 |
| 11:21:02 | 12 |
| 11:21:02 | 13 |
| 11:21:05 | 14 |
| 11:21:07 | 15 |
| 11:21:09 | 16 |
| 11:21:12 | 17 |
| 11:21:16 | 18 |
| 11:21:17 | 19 |
| 11:21:19 | 20 |
| 11:21:23 | 21 |
| 11:21:26 | 22 |
| 11:21:26 | 23 |
| 11:21:27 | 24 |
| 11:21:31 | 25 |

we want to find out what these cases are worth if we don't even contest liability, we could have walked into all 16 trials -- this is not -- happens all the time across the country -- and said, we concede that we're liable, how much are these cases worth, and gone to the jury that way.  That's a perfectly legitimate position we could have taken.

THE COURT:  On behalf of your shareholders if you weren't?

MR. BEALL:  Well, I'm saying we could have used it to evaluate claims.  I'm not saying it was a wise thing.  I'm saying -- but people do in car wrecks people admit liability all the time, as the Court is aware.

THE COURT:  But your client has shareholders.

MR. BEALL:  But my point is this, Your Honor: Whatever position we want to take in the first 16 trials, we can take a different position.  For example, in some of the bellwether trials we put the military on the verdict form, sometimes we didn't.

THE COURT:  That's not what we're talking about here. But also let me go back to that point about the corporate forums and what the balance sheets reflect.  Those are public documents.

MR. BEALL:  They are.

THE COURT:  A publicly traded company.

MR. BEALL:  They are.  And in fact, the acquisition

| | |
|---|---|
| 11:21:31 | 1 |
| 11:21:35 | 2 |
| 11:21:38 | 3 |
| 11:21:39 | 4 |
| 11:21:41 | 5 |
| 11:21:45 | 6 |
| 11:21:49 | 7 |
| 11:21:55 | 8 |
| 11:22:00 | 9 |
| 11:22:02 | 10 |
| 11:22:06 | 11 |
| 11:22:09 | 12 |
| 11:22:11 | 13 |
| 11:22:16 | 14 |
| 11:22:17 | 15 |
| 11:22:20 | 16 |
| 11:22:22 | 17 |
| 11:22:26 | 18 |
| 11:22:27 | 19 |
| 11:22:32 | 20 |
| 11:22:33 | 21 |
| 11:22:36 | 22 |
| 11:22:38 | 23 |
| 11:22:42 | 24 |
| 11:22:46 | 25 |

documents were produced to the plaintiffs so they've had those documents.  It wasn't in Mr. Wolfson's motion, but they've had those documents.

But to finish my point, it was simply this:  If I admit liability in 16 straight trials, that doesn't mean on the 17th trial I'm estopped from challenging liability.  Each of these 230,000 claims is brought by an individual sole jurist, the Court is aware, and that's why the Court has properly given different jury instructions and different verdict forms for each of these claims and why we have a different judgment for each of these claims and why the judgment lists each of these defendants separately on the various claims.  That's why it's done this way so we can litigate one case one way and another case the other way.

And on the estoppel the issue is very clear.  We have to ask the Court -- and the Court said earlier we've never asked the Court to make a ruling on successor liability nor have the plaintiffs, and so we've not won a position.

A good example of estoppel is this:  If in a case one of the plaintiffs said --

**THE COURT:**  I don't mean to laugh but --

**MR. BEALL:**  I understand you understand estoppel, Your Honor, but here is a classic example:  If a plaintiff says my injury occurred after a certain date to avoid a statute of limitations argument and they win that issue and then later

| | |
|---|---|
| 11:22:49 | 1 |
| 11:22:53 | 2 |
| 11:22:53 | 3 |
| 11:22:59 | 4 |
| 11:23:00 | 5 |
| 11:23:00 | 6 |
| 11:23:03 | 7 |
| 11:23:03 | 8 |
| 11:23:10 | 9 |
| 11:23:13 | 10 |
| 11:23:17 | 11 |
| 11:23:19 | 12 |
| 11:23:23 | 13 |
| 11:23:27 | 14 |
| 11:23:30 | 15 |
| 11:23:31 | 16 |
| 11:23:34 | 17 |
| 11:23:37 | 18 |
| 11:23:47 | 19 |
| 11:23:47 | 20 |
| 11:23:47 | 21 |
| 11:23:51 | 22 |
| 11:23:53 | 23 |
| 11:23:54 | 24 |
| 11:23:59 | 25 |

1  they say -- they try for an earlier date to avoid a change in
2  the law like a damages cap, they would be estopped from that.
3  You can't have two different arguments, one you win -- heads I
4  win, tails you lose.  You can't do that.  That's not what we've
5  done here.
6      If we had gone to the Court two years ago and said, we
7  want a ruling on successor liability that 3M either is or is
8  not liable and you had ruled and then we take a different
9  position, that's a different thing.  We've never done that.  It
10  didn't become important until now.  It's important now.
11      And Mr. Cupit has still not asked the Court to decide
12  the issue of successor liability on the merits.  We don't have
13  any documents here from him about the corporate reorganization,
14  the purchase.  We don't even know which law applies to
15  Mr. Cupit's claim.
16      Successor liability is different for all 50 states.
17  Now, there are some common elements, but the decision might be
18  different in Hawaii versus Alaska versus Oregon.  We don't
19  know.
20      **THE COURT:**  Are you suggesting to me, Mr. Beall, that
21  you're -- are you preparing me for the motion that's coming to
22  amend your master answer?
23      **MR. BEALL:**  No, I -- well, I -- that's not what I was
24  saying at all.  And if you're talking about successor liability
25  in the master answer, that goes to waiver argument, which I

| | | |
|---|---|---|
| 11:24:02 | 1 | think is the first of the two arguments they make.  And I |
| 11:24:05 | 2 | should also just for the record say collateral estoppel was |
| 11:24:08 | 3 | uttered for the first time today in court, so that's -- there's |
| 11:24:11 | 4 | obviously a due process argument collaterally estopping us for |
| 11:24:15 | 5 | something we didn't know about this morning, but I think that's |
| 11:24:19 | 6 | a nonissue, too.  He didn't argue that in his motion but it's a |
| 11:24:19 | 7 | nonissue for the same reasons. |
| 11:24:22 | 8 | The waiver argument he makes is related solely to |
| 11:24:26 | 9 | Rule 8 on the issue of not pleading as a defense successor |
| 11:24:31 | 10 | liability.  In the motion they put in a bunch of sort of side |
| 11:24:34 | 11 | light facts about Rule 26 conferences and the like.  But the |
| 11:24:38 | 12 | only way the Court can find a waiver as a matter of law is to |
| 11:24:40 | 13 | find that we didn't assert this defense and we cannot assert |
| 11:24:43 | 14 | this defense now. |
| 11:24:44 | 15 | There are two problems with that:  First, it's not a |
| 11:24:48 | 16 | defense.  Now, I recognize there's a split of authority -- |
| 11:24:50 | 17 | **THE COURT:**  I don't think we need to get into this. |
| 11:24:52 | 18 | Again, are you telling me you're going to be filing a motion to |
| 11:24:55 | 19 | assert the defense or are you -- because otherwise I don't have |
| 11:24:59 | 20 | that in front of me.  I do not have a request by 3M to assert |
| 11:25:02 | 21 | the defense. |
| 11:25:03 | 22 | **MR. BEALL:**  We don't think it's a defense so we don't |
| 11:25:05 | 23 | think we need to amend the answer. |
| 11:25:07 | 24 | Now, if the Court tells us in an order that you have |
| 11:25:10 | 25 | concluded that the Seventh Circuit and the Second Circuit are |

11:25:12   1   wrong and you agree with the cases they cite and it is a

11:25:15   2   defense, then at that point we probably would need to move to

11:25:21   3   amend our answer for that purpose.  But we don't think we need

11:25:24   4   to because the case law is pretty clear, even though there is a

11:25:25   5   split, that the better rule -- the majority rule seems to be

11:25:28   6   the successor liability is in fact their burden, which makes

11:25:33   7   sense because they've got the burden to prove --

11:25:34   8             **THE COURT:**  But why -- you say this is important now.

11:25:38   9   Why is it important now but it wasn't before?

11:25:42   10            **MR. BEALL:**  Well, I mean, the most obvious answer is

11:25:46   11  right now we have a bankruptcy proceeding going on.

11:25:49   12            **THE COURT:**  Exactly.

11:25:50   13            **MR. BEALL:**  And I'm not suggesting that -- but the

11:25:51   14  other point of this is that, you know, when we were trying this

11:25:53   15  cases before, again, we used the bellwether process and I

11:25:56   16  understand --

11:25:56   17            **THE COURT:**  Well, a bankruptcy proceeding in which it

11:25:59   18  needs to appear that Aearo is legitimately bankrupt or

11:26:06   19  financially distressed and in need of reorganization, and

11:26:10   20  you've done that through an indemnification agreement, and then

11:26:13   21  I suppose you might also try to boost that with the now

11:26:24   22  newly-raised defense.

11:26:27   23            **MR. BEALL:**  I guess my point, Your Honor, is,

11:26:31   24  respectfully we think we can do any of those things at this

11:26:35   25  point because we can change our litigation --

| | |
|---|---|
| 11:26:37 | 1 |
| 11:26:40 | 2 |
| 11:26:42 | 3 |
| 11:26:44 | 4 |
| 11:26:49 | 5 |
| 11:26:52 | 6 |
| 11:26:55 | 7 |
| 11:26:59 | 8 |
| 11:27:02 | 9 |
| 11:27:05 | 10 |
| 11:27:08 | 11 |
| 11:27:11 | 12 |
| 11:27:15 | 13 |
| 11:27:18 | 14 |
| 11:27:21 | 15 |
| 11:27:23 | 16 |
| 11:27:28 | 17 |
| 11:27:30 | 18 |
| 11:27:31 | 19 |
| 11:27:33 | 20 |
| 11:27:37 | 21 |
| 11:27:41 | 22 |
| 11:27:44 | 23 |
| 11:27:47 | 24 |
| 11:27:50 | 25 |

**THE COURT:**  You can't use this Court to perpetrate a fraud on the bankruptcy court.

**MR. BEALL:**  Totally understand that, Your Honor. That's not at all what I would suggest, so that's not -- if that was what you read, that's not what I meant to say.

What I'm simply saying is that, in the bellwether process our focus was simply on what's a jury going to think about the CAEv2, what's a jury going to think about our experts, about their experts, about the size of the verdicts. We used the process the way that we think it was supposed to be used, and I think they did, too, by the way, which is I think one of the reasons when they pled this they didn't ask for allocation between Aearo and 3M.  We were really all focused on what's the jury going to think about the product and about these plaintiffs and about these witnesses, that's the focus.

**THE COURT:**  They don't have any liability.  It's the defense that has the liability.

**MR. BEALL:**  I understand that.

**THE COURT:**  And it's an important issue, it's an important issue if it is separate.

**MR. BEALL:**  Again, the corporate forums have always been maintained separately.  That continues to this day.  That was the case back in 2008 at the time of the acquisition.

**THE COURT:**  But not in this courtroom.

**MR. BEALL:**  For the purposes of expediency, Your

11:27:53   1   Honor, we're talking about the defendants, we didn't try to --

11:27:55   2   you know, what you did tell the jury every time and the verdict

11:27:57   3   form would say here are the defendants, and then list them.

11:27:58   4       **THE COURT:**  But no one ever corrected me and ever

11:28:02   5   said, Judge, that -- I mean, from day one that that is not

11:28:05   6   correct.  I haven't gone back through the transcripts, but I

11:28:08   7   wouldn't be surprised if I didn't make sure that everyone was

11:28:11   8   on board with that.  But even if I didn't -- maybe I should

11:28:15   9   have.  But if I didn't, you didn't correct me when we went

11:28:18   10   through -- I'm sure the visiting judges did the same thing.

11:28:21   11       **MR. BEALL:**  Sure.  And let's say maybe we should have,

11:28:26   12   and I'm just saying that just hypothetically.  I don't think we

11:28:29   13   needed to, but that's fine, let's assume that.  I think you've

11:28:32   14   sort of already answered the estoppel argument earlier when you

11:28:35   15   pointed out that that is to our detriment, "our" being 3M's

11:28:38   16   detriment that we didn't raise that before, and so there's no

11:28:42   17   benefit to 3M by not raising that before.

11:28:45   18       To use judicial estoppel, we have to succeed in

11:28:50   19   convincing you of a position that helps us and then take a

11:28:54   20   contrary position later that would be contrary to that first

11:28:58   21   ruling and try to have our cake and eat it, too.  We never did

11:29:03   22   that.  Because, again, as you point out, to the extent we

11:29:05   23   didn't make those arguments in the first 16 trials, that is not

11:29:09   24   necessarily in 3M's best interest.  In retrospect maybe we

11:29:13   25   should have made those arguments.  We didn't.  But that was

| | | |
|---|---|---|
| 11:29:15 | 1 | fine at the time.  We were really only focused on the verdicts. |
| 11:29:20 | 2 | **THE COURT:**  I was trying to get to the truth.  That's |
| 11:29:23 | 3 | really all I'm trying to get to here, Mr. Beall. |
| 11:29:26 | 4 | **MR. BEALL:**  And I understand that.  I guess the truth |
| 11:29:28 | 5 | of what is maybe what I'm trying to make sure I can help you |
| 11:29:32 | 6 | what, if I can. |
| 11:29:33 | 7 | **THE COURT:**  Well, the truth of who really has the |
| 11:29:35 | 8 | earplug liability. |
| 11:29:37 | 9 | **MR. BEALL:**  Well, and my argument right now would be |
| 11:29:39 | 10 | that that is not before the Court because it's not been made a |
| 11:29:42 | 11 | part of -- they've -- |
| 11:29:44 | 12 | **THE COURT:**  Well, I don't know that I fully agree with |
| 11:29:46 | 13 | that.  Maybe not directly on this motion, but I do think it's |
| 11:29:51 | 14 | an issue before the Court on Mr. Keller's motion, and it's an |
| 11:29:57 | 15 | important one, I mean, did Aearo have earplug liability as part |
| 11:30:05 | 16 | of this litigation or was it 3M's liability, in which case 3M |
| 11:30:12 | 17 | created that liability through the indemnification agreement |
| 11:30:16 | 18 | solely for the purpose of seeking bankruptcy protection. |
| 11:30:20 | 19 | **MR. BEALL:**  Your Honor, I will say simply that I do |
| 11:30:23 | 20 | believe Aearo does have -- to the extent there's liability at |
| 11:30:26 | 21 | all, I think Aearo would have the liability.  But I would |
| 11:30:29 | 22 | rather not get into the specifics of the funding agreement and |
| 11:30:33 | 23 | the like because I was not a party to that and -- |
| 11:30:33 | 24 | **THE COURT:**  They do have it now, no question they have |
| 11:30:36 | 25 | it. |

| | | |
|---|---|---|
| 11:30:36 | 1 | **MR. BEALL:**  Oh, I understand, yeah, as I pointed out |
| 11:30:36 | 2 | at the beginning.  And I know you haven't seen the document, |
| 11:30:38 | 3 | but there was the 2013 documents that had that -- |
| 11:30:39 | 4 | **THE COURT:**  My question about that -- and I haven't |
| 11:30:42 | 5 | seen it, didn't know about it -- is:  If that was in existence, |
| 11:30:46 | 6 | why did you need the indemnification agreement? |
| 11:30:48 | 7 | **MR. BEALL:**  Again, I hate to punt on that, but again, |
| 11:30:51 | 8 | I have not been involved in the bankruptcy discussions or |
| 11:30:54 | 9 | process at all and I don't want to go onto that route. |
| 11:30:54 | 10 | **THE COURT:**  Maybe those are questions for Judge |
| 11:30:57 | 11 | Graham.  We'll see. |
| 11:30:58 | 12 | **MR. BEALL:**  And that's the other part of our motion, |
| 11:31:00 | 13 | we believe that Mr. Cupit's motion should be denied because |
| 11:31:04 | 14 | it's not a proper motion.  It should be denied on the merits. |
| 11:31:07 | 15 | But a third reason is it is a bankruptcy issue.  Because |
| 11:31:11 | 16 | whatever ruling this Court makes on that will have an impact on |
| 11:31:14 | 17 | the bankruptcy estate one way or the other.  This is an issue |
| 11:31:18 | 18 | -- successor liability is something that the bankruptcy court |
| 11:31:20 | 19 | should be addressing, not this Court. |
| 11:31:22 | 20 | So there's a host of reasons why the Court should not |
| 11:31:25 | 21 | grant this motion, one of which is simply that we don't think |
| 11:31:28 | 22 | this is the proper jurisdiction to address that motion given |
| 11:31:30 | 23 | the bankruptcy filing right now. |
| 11:31:32 | 24 | But again, we think you can simply deny it based on |
| 11:31:36 | 25 | the merits because there's no -- there is simply no waiver when |

| | | |
|---|---|---|
| 11:31:40 | 1 | we denied in our answer their allegation.  And again, we don't |
| 11:31:44 | 2 | believe this is an affirmative defense.  And again, estoppel, |
| 11:31:49 | 3 | we did not prevail before the Court in our favor taking one |
| 11:31:53 | 4 | factual position and making another -- |
| 11:31:54 | 5 | THE COURT:  Well, you kind of did in *Vaughn* and |
| 11:31:56 | 6 | *Wayman*. |
| 11:31:56 | 7 | MR. BEALL:  Well, if you look at the responses we |
| 11:31:59 | 8 | filed to their briefing and post-trial and that, it was based |
| 11:32:04 | 9 | upon the plaintiffs.  In those cases, Colorado law, as the |
| 11:32:08 | 10 | Court pointed out in its order, says you get multiple statutory |
| 11:32:12 | 11 | caps as long as the jury has found liability for, you know, |
| 11:32:17 | 12 | defendant X is liable for 60 percent, defendant B for whatever |
| 11:32:22 | 13 | and all that.  And they did not put forth the verdict forms or |
| 11:32:27 | 14 | jury instructions that would have allowed the jury to allocate. |
| 11:32:30 | 15 | That was their burden, and that's the reason that the Court -- |
| 11:32:31 | 16 | we made that argument.  And the arguments that we made in |
| 11:32:34 | 17 | response, you know, I was very careful drafting that, Your |
| 11:32:38 | 18 | Honor, to say if this case -- |
| 11:32:38 | 19 | THE COURT:  Well, what you said was -- really what you |
| 11:32:41 | 20 | said -- and I'm reading it verbatim -- is "3M Company owns and |
| 11:32:44 | 21 | controls 100 percent of the other five named defendants |
| 11:32:47 | 22 | rendering any suggestion that they are six separate parties for |
| 11:32:51 | 23 | purposes of this litigation illusory." |
| 11:32:54 | 24 | MR. BEALL:  Yeah.  And again, I was always talking |
| 11:32:58 | 25 | about this case.  And another thing is that was the *Vaughn* |

| | | |
|---|---|---|
| 11:32:59 | 1 | case, the *Wayman* case. |
| 11:33:01 | 2 | Had they come in in another Colorado case and asked |
| 11:33:04 | 3 | the Court and the jury to allocate between the various |
| 11:33:07 | 4 | defendants, we could have briefed that issue and decided |
| 11:33:08 | 5 | whether that was proper -- probably would have been proper -- |
| 11:33:10 | 6 | and then we could have done that and had they succeeded in |
| 11:33:14 | 7 | finding liability against all six defendants or four defendants |
| 11:33:15 | 8 | or whatever it was -- |
| 11:33:15 | 9 | **THE COURT:**  I agree with you. |
| 11:33:17 | 10 | **MR. BEALL:**  I know you do. |
| 11:33:19 | 11 | So my point is that was not a situation where we were |
| 11:33:21 | 12 | taking a position.  That was that they had failed to take that |
| 11:33:26 | 13 | position at trial.  So in a weird sense they were -- I didn't |
| 11:33:28 | 14 | use this language in the response, but they were judicially |
| 11:33:31 | 15 | estopped at that situation because at trial they took the |
| 11:33:35 | 16 | position that there was one defendant, post-trial they took the |
| 11:33:39 | 17 | position that there were six, and they won at trial on the |
| 11:33:40 | 18 | one-defendant argument. |
| 11:33:40 | 19 | **THE COURT:**  You said, no, there's only one, and I |
| 11:33:42 | 20 | agreed with you. |
| 11:33:43 | 21 | **MR. BEALL:**  Exactly.  So we were responding to the way |
| 11:33:45 | 22 | they tried the case in *Vaughn* and *Wayman* as opposed to us |
| 11:33:49 | 23 | affirmatively making that representation because we weren't the |
| 11:33:52 | 24 | ones trying to get six statutory caps.  So that's the reason |
| 11:33:53 | 25 | that doesn't apply to this situation. |

| | | |
|---|---|---|
| 11:33:56 | 1 | Other than that, the Court has not even ruled on this |
| 11:33:59 | 2 | issue before, so therefore there's no way we could be estopped |
| 11:34:03 | 3 | under the Eleventh Circuit precedent. |
| 11:34:04 | 4 | **THE COURT:**  All right.  Mr. Beall, thank you very |
| 11:34:06 | 5 | much. |
| 11:34:07 | 6 | Mr. Wolfson, I'll give you a couple of minutes reply. |
| 11:34:11 | 7 | **MR. WOLFSON:**  Thank you, Your Honor.  I'd like to |
| 11:34:12 | 8 | start where Mr. Beall ended, the *Vaughn* and *Wayman* briefs. |
| 11:34:15 | 9 | If you notice in those briefs the argument about the |
| 11:34:18 | 10 | corporate separateness or lack thereof, the illusoriness of the |
| 11:34:26 | 11 | corporate separateness was an independent argument.  The how |
| 11:34:27 | 12 | the plaintiffs tried the case, they sued six defendants, |
| 11:34:29 | 13 | referred to them as one -- |
| 11:34:29 | 14 | **THE COURT:**  I saw that. |
| 11:34:31 | 15 | MR. WOLFSON:  -- are the first and second arguments. |
| 11:34:32 | 16 | The third is, regardless of corporate forum, the |
| 11:34:36 | 17 | defendants share the same potential liability in this case. |
| 11:34:39 | 18 | That's a direct quote from their own words sworn under oath to |
| 11:34:44 | 19 | this Court and, as you noted, got you to agree with them.  And |
| 11:34:48 | 20 | we at the time disagreed with the Court's ruling, but of course |
| 11:34:52 | 21 | we respect it.  And 3M can't now change their position just |
| 11:34:57 | 22 | because it helps them in the bankruptcy. |
| 11:34:59 | 23 | Whether or not this is an issue for the bankruptcy |
| 11:35:05 | 24 | court, for us this is an issue about case management here. |
| 11:35:10 | 25 | They are not saying Mr. Cupit has not brought a Motion for |

| | |
|---|---|
| 11:35:15 | 1 |
| 11:35:17 | 2 |
| 11:35:20 | 3 |
| 11:35:22 | 4 |
| 11:35:25 | 5 |
| 11:35:29 | 6 |
| 11:35:32 | 7 |
| 11:35:35 | 8 |
| 11:35:40 | 9 |
| 11:35:42 | 10 |
| 11:35:49 | 11 |
| 11:35:54 | 12 |
| 11:35:59 | 13 |
| 11:36:04 | 14 |
| 11:36:05 | 15 |
| 11:36:09 | 16 |
| 11:36:09 | 17 |
| 11:36:13 | 18 |
| 11:36:16 | 19 |
| 11:36:19 | 20 |
| 11:36:22 | 21 |
| 11:36:25 | 22 |
| 11:36:30 | 23 |
| 11:36:33 | 24 |
| 11:36:38 | 25 |

Summary Judgment on successor liability.  The whole point of this motion is that he shouldn't be forced to, nor should any other plaintiff who is out there.

And to the extent Mr. Beall says this is Mr. Cupit's motion only, I think it's safe to say that case leadership of the MDL supports this motion and that, if the Court rules in favor of Mr. Cupit here, that you will see a request to drop the Aearo defendants from the master complaint, from pretty much every other complaint out there.

Now, the idea that -- who carried the liabilities, Your Honor asked that.  And we're after the truth here, too, because in early 26(f) conferences we say, *Are you going to make an issue of Aearo liabilities?*  Now, that wasn't under oath in front of the Court, but they told us:  *Well, it was a stock purchase agreement, so, no, we're not going to argue that.*

So it was never a really major issue.  Even though Mr. Beall is now saying that they kept it live through their general denials, they don't think it's a defense, it's because they can't, and they knew they couldn't, and they said everything throughout the case -- the *Wayman* trial, the *Vaughn* trial the *Adkins* trial where it was nothing but pre-Aearo acquisition use, every indication, every statement by 3M that it itself was liable by putting itself on proposed verdict forms, by proposing jury instructions that, if you find for the

11:36:41  1   plaintiff, then you find against all defendants.

11:36:44  2          I mean, all of these were submitted to the Court,

11:36:47  3   signatured by 3M Company, by its lawyers, averring that these

11:36:52  4   were true statements, that these were its positions, and now

11:36:55  5   they're trying to walk back from that.

11:36:58  6          Who owns the liabilities?  Well, in the current

11:37:01  7   Eleventh Circuit appeal of the *EHK* trial, the Estes, Hacker --

11:37:06  8   I forget his last name -- who put up the bond for the appeal?

11:37:11  9   3M Company, three times.

11:37:15  10         Did any Aearo defendant put up a bond in this publicly

11:37:19  11  accessible document?  Your Honor can take judicial notice of

11:37:23  12  it.  No.

11:37:24  13         Who owns the liabilities for that first bellwether

11:37:26  14  trial which is now on appeal?  3M Company.  They have done this

11:37:30  15  in front of the Eleventh Circuit.

11:37:31  16         In discovery, sworn discovery statements we asked who

11:37:34  17  bears the legal fees in this case.  3M.

11:37:36  18         In the *qui tam* settlement, a previous settlement with

11:37:46  19  the government that predates this -- and of course they didn't

11:37:49  20  take any liabilities there.  But who were the parties to the

11:37:54  21  *qui tam* settlement with the government settling all claims

11:37:54  22  related to every action from 2000 up to the present at that

11:38:02  23  time?  3M Company, 3M Innovative Properties.  Neither of those

11:38:08  24  companies are now in bankruptcy.

11:38:09  25         So the idea that there's not been statements to

| | |
|---|---|
| 11:38:12 | 1 |
| 11:38:17 | 2 |
| 11:38:22 | 3 |
| 11:38:25 | 4 |
| 11:38:28 | 5 |
| 11:38:31 | 6 |
| 11:38:34 | 7 |
| 11:38:37 | 8 |
| 11:38:40 | 9 |
| 11:38:44 | 10 |
| 11:38:48 | 11 |
| 11:38:51 | 12 |
| 11:38:57 | 13 |
| 11:38:58 | 14 |
| 11:39:02 | 15 |
| 11:39:02 | 16 |
| 11:39:06 | 17 |
| 11:39:09 | 18 |
| 11:39:10 | 19 |
| 11:39:11 | 20 |
| 11:39:15 | 21 |
| 11:39:17 | 22 |
| 11:39:22 | 23 |
| 11:39:26 | 24 |
| 11:39:30 | 25 |

entities like the government, this Court, to the juries that 3M owns all the liabilities for the Combat Arms Version 2 is ridiculous and it's manufactured for the purpose of the bankruptcy.  And this is why Mr. Cupit is asking to strike this defense or find that there's a waiver of this defense because it doesn't want to have to spend the time dealing with this.

And frankly, yes, will this have an impact on the bankruptcy if Your Honor issues findings before the court rules on the preliminary injunction?  Absolutely.  Because it removes the manufactured reason for preliminary injunction against 3M Company by saying that the Aearo debtors have some sort of independent liability in this case or had some sort of primary liability in this case.

**THE COURT:**  Well, they have liability now for the claims due to the indemnification agreement.

**MR. WOLFSON:**  Right.  And I think that is an issue that is squarely before the Court, whether or not that was -- whether it was fraudulent, whether there is any reason to enjoin 3M.

But the reason we are asking for this is because it has become crystal clear that it's the tenuous hook that they are trying to use beyond just the indemnity agreement.  But the fact that the Aearo debtors are defendants in this MDL, that's the hook -- one of the hooks that they are trying to use to get an injunction against this MDL.  And we just don't think it's

11:39:33    1    fair, we don't think it's right, we don't think it's true, and

11:39:37    2    we don't think it's allowed under the law or the Rules of

11:39:43    3    Procedure.

11:39:43    4              **THE COURT:**  Thank you.

11:39:43    5              Mr. Beall, is there anything you want to say?  If

11:39:45    6    there is, I'll let you go last.

11:39:48    7              **MR. BEALL:**  My only comment would be that the

11:39:50    8    information that's not part of the motion I didn't have the

11:39:52    9    ability to respond to, but it doesn't change my fundamental

11:39:56   10    argument here.  I don't think we've taken -- there are only

11:39:59   11    limited ways that the Court can grant the relief he wants.

11:40:02   12              Even assuming it's proper to seek at this point,

11:40:05   13    waiver and estoppel are very specific and have to have very

11:40:08   14    specific conduct, and I don't think they have met that.  And so

11:40:10   15    what we have is a lot of allegations.

11:40:12   16              As the Court noted, we did, no question, talk about 3M

11:40:16   17    to the jury as one defendant to make it simple for them.  That

11:40:20   18    does not estop us from taking different positions later because

11:40:24   19    we did not succeed in anything that benefits 3M in doing that.

11:40:27   20    And again the waiver --

11:40:29   21              **THE COURT:**  Except for *Vaughn* and *Wayman.*  I disagree

11:40:32   22    with you there.

11:40:33   23              **MR. BEALL:**  And I think I've already addressed that in

11:40:35   24    my response.

11:40:36   25              And on the issue of the answer, again, we don't think

| | | |
|---|---|---|
| 11:40:39 | 1 | that we have a duty to raise a defense of successor liability. |
| 11:40:42 | 2 | We think the recent Second Circuit case is as on point as |
| 11:40:46 | 3 | possible and is the correct law. |
| 11:40:48 | 4 | Obviously, if you tell us differently, we will |
| 11:40:51 | 5 | disagree, but at that point we can decide whether we need to |
| 11:40:55 | 6 | try to amend our answer.  But again, under the scheduling |
| 11:40:59 | 7 | order, we are allowed to assert new defenses.  We haven't even |
| 11:41:01 | 8 | answered his complaint yet.  So, for that reason, it would be |
| 11:41:02 | 9 | premature to bar us from raising a defense we haven't even |
| 11:41:05 | 10 | raised for the first time. |
| 11:41:08 | 11 | THE COURT:  Mr. Aylstock, is there something? |
| 11:41:11 | 12 | MR. AYLSTOCK:  With your indulgence, I'd like to |
| 11:41:14 | 13 | address Mr. Beall's point with regard to the authority of |
| 11:41:19 | 14 | Mr. Wolfson to potentially amend the master complaint.  And I |
| 11:41:22 | 15 | also have some answers to some of your questions about who held |
| 11:41:25 | 16 | the liability on their books as well. |
| 11:41:27 | 17 | THE COURT:  Well, I'd like to hear that. |
| 11:41:29 | 18 | And then, Ms. Lauria, you or Mr. Beall can respond. |
| 11:41:32 | 19 | MR. AYLSTOCK:  The answer to the question is 3M held |
| 11:41:35 | 20 | the liability on the books, according to the corporate |
| 11:41:37 | 21 | representative designee, and we're happy to submit that |
| 11:41:40 | 22 | testimony to Your Honor. |
| 11:41:41 | 23 | THE COURT:  Was this taken recently? |
| 11:41:44 | 24 | MR. AYLSTOCK:  Yes.  Yesterday? |
| 11:41:46 | 25 | MS. HOEKSTRA:  Tuesday. |

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
| 11:41:47 | 1  | **MR. AYLSTOCK:**  Tuesday, and we have the transcript of |
| 11:41:49 | 2  | that, as well as the transcript of Mr. Stein, the independent |
| 11:41:55 | 3  | director who had no knowledge of any prior indemnity agreement. |
| 11:41:58 | 4  | Indeed, none was produced. |
| 11:41:59 | 5  | There may be a 2013 operating agreement, but the |
| 11:42:02 | 6  | designee for the corporate representative the 30(b)(6) -- |
| 11:42:05 | 7  | **THE COURT:**  This was Aearo disinterested director? |
| 11:42:09 | 8  | **MR. AYLSTOCK:**  Correct, said there was no such |
| 11:42:11 | 9  | agreements on the CAE with regard to this litigation until the |
| 11:42:16 | 10 | indemnity agreement that was entered the day after the |
| 11:42:18 | 11 | mediation was declared at impasse or whatever that date was. |
| 11:42:22 | 12 | In fact, if there was an indemnity agreement prior to |
| 11:42:25 | 13 | that, why would they even need that? |
| 11:42:27 | 14 | **THE COURT:**  Well, that was my question. |
| 11:42:28 | 15 | **MR. AYLSTOCK:**  Why would they even have paid the |
| 11:42:31 | 16 | consideration of the billion-plus dollars?  So that makes no |
| 11:42:34 | 17 | sense.  We're happy to -- if they're going to submit, we can |
| 11:42:37 | 18 | submit -- |
| 11:42:37 | 19 | **THE COURT:**  I believe I asked them to submit the |
| 11:42:39 | 20 | agreement that they say exists, and I would like the |
| 11:42:41 | 21 | transcripts of those two depos. |
| 11:42:44 | 22 | **MR. AYLSTOCK:**  Happy to provide them. |
| 11:42:45 | 23 | With regard to Mr. Wolfson's authority, I have my |
| 11:42:48 | 24 | co-leads here, we absolutely endorse the motion of Mr. Keller |
| 11:42:53 | 25 | and Mr. Wolfson.  We join in that. |

11:42:55   1               And in fact, Mr. Cupit is farther down in the waves.

11:43:00   2   I have clients in Wave 1.  Discovery is closed.  Not just

11:43:07   3   general discovery that they asked to be closed many moons ago,

11:43:07   4   bust case-specific.  In fact, summary judgments have already

11:43:11   5   been briefed.  I don't even have an opportunity on behalf of

11:43:14   6   Robert Coleman, Mr. Hasen, and my other Wave 1 plaintiffs, nor

11:43:14   7   does anybody else, to even address this issue.

11:43:22   8               The example that Mr. Beall gave, *Well, if we admit*

11:43:26   9   *liability in 17 cases, we don't have to do it in the 18th case,*

11:43:31   10   that may be true, but not where you've admitted liability from

11:43:35   11   the Rule 26(f) conference where you've made the representation

11:43:39   12   that all the liabilities are with 3M.  That was a specific

11:43:42   13   representation made by 3M's corporate representative to us.

11:43:45   14               But discovery is closed.  You can't say, in the

11:43:49   15   example Mr. Beall said, we're now going to litigate liability

11:43:56   16   when discovery on liability is closed and we didn't have an

11:44:00   17   opportunity to even explore that.  That's why estoppel -- why

11:44:04   18   waiver exists.  So we do join in the motion.

11:44:08   19               **THE COURT:**  Thank you.

11:44:09   20               Mr. Beall and then, Ms. Lauria, if you wish to

11:44:11   21   respond.  Did you all know about this testimony yesterday or

11:44:13   22   the day before, recent testimony in regards to the --

11:44:17   23              **MS. LAURIA:**  Your Honor, I knew that there were

11:44:18   24   depositions and obviously document production.  I didn't attend

11:44:21   25   either.  And while I was at the podium, our colleagues were

| | | |
|---|---|---|
| 11:44:25 | 1 | getting emails that actually this was testified to in |
| 11:44:28 | 2 | depositions.  I think Stein's deposition was yesterday; that's |
| 11:44:31 | 3 | the disinterested director.  And the 30(b)(6) for 3M was on |
| 11:44:34 | 4 | Tuesday.  So we're happy to produce those transcripts to Your |
| 11:44:37 | 5 | Honor. |
| 11:44:37 | 6 | **THE COURT:**  Thank you.  What I'm hearing, though, is |
| 11:44:39 | 7 | that they said that indemnification agreement they didn't know |
| 11:44:42 | 8 | anything about it, the 2013 agreement.  So let's don't play |
| 11:44:46 | 9 | fast and loose with the facts. |
| 11:44:47 | 10 | If there is an agreement that exists prior to the July |
| 11:44:55 | 11 | indemnification agreement and you believe that it creates |
| 11:45:03 | 12 | liability in Aearo -- and that's what you represented to me -- |
| 11:45:06 | 13 | I hope it does because that's what I was told. |
| 11:45:09 | 14 | **MS. LAURIA:**  Your Honor, we'll file the documents, |
| 11:45:11 | 15 | also file the deposition transcripts.  My understanding is |
| 11:45:14 | 16 | different than Mr. Aylstock's, but let's just look at the |
| 11:45:17 | 17 | documents ourselves and make that determination. |
| 11:45:19 | 18 | **THE COURT:**  Fair enough. |
| 11:45:21 | 19 | **MR. BEALL:**  May I respond to something separate?  They |
| 11:45:24 | 20 | had raised the issue of the Rule 26 conference and |
| 11:45:27 | 21 | representations and Ms. Hoekstra put the declaration in the |
| 11:45:30 | 22 | record about what occurred.  Nobody on our side remembers that, |
| 11:45:34 | 23 | but I certainly am not trying to argue that her declaration is |
| 11:45:38 | 24 | wrong or right.  I have no idea about that situation, I have no |
| 11:45:39 | 25 | recollection of it. |

| | |
|---|---|
| 11:45:40 | 1 |
| 11:45:43 | 2 |
| 11:45:46 | 3 |
| 11:45:50 | 4 |
| 11:45:53 | 5 |
| 11:45:57 | 6 |
| 11:45:59 | 7 |
| 11:46:02 | 8 |
| 11:46:07 | 9 |
| 11:46:12 | 10 |
| 11:46:15 | 11 |
| 11:46:19 | 12 |
| 11:46:24 | 13 |
| 11:46:26 | 14 |
| 11:46:28 | 15 |
| 11:46:28 | 16 |
| 11:46:28 | 17 |
| 11:46:31 | 18 |

1   But, again, if there was an admission made at the
2 Rule 26 conference that we're going to do something, then the
3 way to handle that is to put it in the Rule 26 report or into a
4 stipulation or request for admission or whatever.  But again,
5 we answered the complaint shortly thereafter, within I think
6 weeks of that, and denied that very issue.
7   So the idea that three-and-a-half years later we're
8 getting a declaration saying that an oral representation was
9 made by somebody at a conference three-and-a-half years ago
10 somehow binds the company to an oral representation made, that
11 just doesn't make any sense to me if that was the case.  But
12 again, that's not part of their waiver argument.  Their waiver
13 argument really goes to the answer, that's just window
14 dressing, and so we think it's irrelevant for this Court's
15 consideration.
16   **THE COURT:**  All right.  Thank you.
17   Thanks to everyone.  I appreciate your arguments.
18 We'll be in recess.
19   *(Proceedings concluded at 11:46 a.m.)*
20   ---------------------
21 *I certify that the foregoing is a correct transcript from the
22 record of proceedings in the above-entitled matter.  Any
redaction of personal data identifiers pursuant to the Judicial
Conference Policy on Privacy are noted within the transcript.*
23
24
25   *s/Donna L. Boland*                    *8-11-2022*
   *Donna L. Boland, RPR, FCRR*            *Date*
   *Official Court Reporter*