UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Gary R. Jones |

# ORDER

This matter is before the Court on an Emergency Motion for Preliminary Injunction Against 3M Company filed by Plaintiff Richard Valle, *see* ECF No. 3358, which 3M opposes, *see* ECF No. 3370.  The motion follows on the heels of a petition for Chapter 11 bankruptcy filed in the Southern District of Indiana by five of the six defendants in this MDL—Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and 3M Occupational Safety LLC (collectively, "Aearo").  In the bankruptcy court, Aearo has, among other things, requested that the automatic stay of actions or proceedings against it be extended to 3M Company, Aearo's non-debtor parent, and has made clear that its motive for doing so is to upend this statutorily authorized MDL.  *See In re Aearo Techs. LLC*, Case No. 1:22bk2890, Informational Brief, ECF No. 12 at 56-61.  Valle now asks this Court to enjoin 3M Company from (1) supporting an extension of the automatic stay that would preclude individual plaintiffs from litigating CAEv2 matters against 3M in

the MDL or following remand for trial; and (2) relitigating matters in bankruptcy court that this Court has already adjudicated. Oral argument was heard on August 11, 2022. After careful consideration, Valle's motion is granted in part and denied in part.

Valle's motion is grounded in the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate" to safeguard the integrity of "ongoing proceedings" and "potential future proceedings" before them, and to "protect or effectuate" their prior orders and judgments. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1100 (11th Cir. 2004); *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *see also* 28 U.S.C. § 1651. A court's authority to enjoin certain activities in other forums is broad and "extends, under appropriate circumstances, to [any] persons who . . . are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. New York Tel*. Co., 434 U.S. 159, 174 (1977). Nevertheless, an All Writs Act injunction is an extraordinary remedy which, although derived from statute, is "essentially equitable" and, as such, generally is not available where there are adequate remedies at law. *See Klay*, 376 F.3d at 1100.

All Writs Act injunctions must be "predicated on the existence of some underlying proceeding over which the issuing court [already] has jurisdiction[.]" *See*

*Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021).[1] Accordingly, to obtain an injunction under the Act, the requesting party must "point to some ongoing proceedings, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *See id*. For threats to ongoing proceedings, "a court may enjoin almost any conduct which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *See Klay*, 376 F.3d at 1102. For threats to prior orders, a court "has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court." *See New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998) (citing *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971)).

The Court begins with Valle's request that 3M be enjoined from supporting a bankruptcy injunction that would preclude individual plaintiffs from continuing to litigate CAEv2 matters against 3M in the MDL and other forums. There can be no doubt that if Aearo's automatic bankruptcy stay is extended to 3M, this Court will be prevented from guiding this litigation to "its natural conclusion." *See Klay*, 376

---

[1] *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) ("The Act does not create any substantive federal jurisdiction" and is instead a "codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source.").

F.3d at 1102. Except for matters related to the recent bankruptcy filing, the MDL is now at a complete standstill. Nearly 1,200 cases at various stages of Wave discovery are sitting idle. Countless scheduled and pending depositions and defense medical exams have been, or will be, indefinitely cancelled. Roughly 1,500 ripe *Daubert* and summary judgment motions are languishing. Multiple appeals pending in the Eleventh Circuit Court of Appeals are halted. Concurrent litigation in Minnesota state court likewise is halted. And this is only the beginning. *See*, the "ultimate objective" of this entire scheme is a permanent channeling injunction (and a third-party release of 3M) in the bankruptcy court requiring that all CAEv2 hearing-related claims be resolved through a bankruptcy claims trust rather than adjudicated in an Article III court. *See In re Aearo*, 1:22bk2890, Informational Brief, ECF No. 12 at 61. If successful, hundreds of thousands of individual plaintiffs will be deprived of their constitutional right to a jury trial while 3M—a fully solvent and highly profitable Fortune 500 Company that will never actually file a bankruptcy petition itself—will reap all of the benefits of the bankruptcy system without the attendant burdens.[2] The unabashed justification for dismantling this MDL is 3M/Aearo's

---

[2] The Aearo debtors apparently were solvent wholly owned subsidiaries of 3M until the bankruptcy-eve execution of a funding and indemnity agreement, which left the companies in severe financial distress due to their newly created *exclusive* liability for the CAEv2 claims in this litigation. As the Court reads it, albeit without the benefit of an evidentiary hearing, the funding and indemnity agreement creates no value other than to mount 3M's escape from this MDL. In the agreement, Aearo agrees to take on potentially billions in liability for the CAEv2 claims in exchange for 3M funding a claims trust that automatically depletes if and only if 3M faces judgments in the MDL (or state court), artificially tying Aearo's ability to reorganize with

dissatisfaction with the MDL system, this Court's legal rulings, and the multiple jury verdicts against it in this litigation. *See id.*

Under these circumstances, the Court readily concludes that it has jurisdiction to determine whether Aearo's automatic stay applies to the claims against 3M in this MDL, *see, e.g., Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986), and the authority under the All Writs Act to enjoin actions by 3M in other forums which threaten the Court's jurisdiction, *see* 28 U.S.C. § 1651. Nevertheless—and despite the Court's serious concerns over the prospect of a solvent defendant being able to evade the jurisdiction of an Article III court, leaving over 230,000 plaintiffs in its wake, based solely on its policy disagreement with a system created by Congress and its dissatisfaction with the lawfully entered rulings of an Article III court—the Court declines to exercise that jurisdiction to prohibit 3M from supporting a bankruptcy court injunction precluding plaintiffs from litigating CAEv2 matters against 3M.

"[T]he All Writs Act is a residual source of authority to issue writs which are not otherwise covered by statute." *Klay*, 376 F.3d at 1100. Here, the Court's jurisdiction to interpret the automatic stay statute, 11 U.S.C. § 362, is concurrent

---

continued litigation against 3M in the MDL (or state court). While the argument can be made (and has been) that this is a fairly transparent attempt at manipulation and abuse of the bankruptcy code, it may be a perfectly legitimate use. This Court trusts that the bankruptcy court judge is well-equipped to decide the matter based on his knowledge of bankruptcy law and the fact that he will have a complete evidentiary record.

with that of the bankruptcy court.³ However, the bankruptcy court also has even broader equitable powers to further extend the stay under 11 U.S.C. § 105(a), and the bankruptcy court judge is presiding over an evidentiary hearing on that matter at this very moment. Thus, while this Court respects and appreciates the solemn responsibility of Article III courts to enforce, protect and preserve their jurisdiction, there are times when those ends are best served by yielding to a court with concurrent jurisdiction, specialized expertise, and a full evidentiary record. This is one of those times. The bankruptcy court is well-qualified and aptly suited to determine whether 3M is lawfully using the Bankruptcy Code for a proper restructuring purpose or, instead, using its subsidiaries' bankruptcy petition as bad faith subterfuge to defeat this Court's jurisdiction and relitigate this Court's rulings. *See, e.g., In re Moog*, 159 B.R. 357, 361 (Bankr. S.D. Fla. 1993) (explaining that "if the timing of the filing [of the bankruptcy petition] is such that the court concludes that the primary, if not sole purpose, of the filing was *litigation tactic*, the petition may be dismissed" and that "frustrating the legitimate processes of a non-bankruptcy forum" is inconsistent with the congressional intent of the bankruptcy code) (emphasis added).⁴

---

[3] *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir. 1985) (MDL courts have concurrent jurisdiction to interpret whether a bankruptcy stay applies and to issue injunction in aid of the MDL court's jurisdiction but may appropriately decline to exercise that jurisdiction when it unduly interferes with the bankruptcy court's ability to carry out its duties).

[4] *See also In re Karum Grp., Inc.*, 66 B.R. 436 (Bankr. W.D. Wash.1986) (case dismissed where debtor filed bankruptcy as a litigation tactic to avoid posting supersedeas bond); *In re Golden Ocala P'ship,* 50 B.R. 552 (Bankr. M.D. Fla. 1985) (Chapter 11 not designed to resolve internal fights between feuding shareholders); *In re Ofty Corp.,* 44 B.R. 479 (Bankr. D. Del.

Valle's second request implicates a more specific threat to this Court's jurisdiction. Aearo's written submissions and oral representations to the bankruptcy court are replete with substantive challenges to this Court's many legal and evidentiary rulings in the MDL, and culminate in an outright rejection of traditional appellate review of those decisions by the Eleventh Circuit Court of Appeals. According to Aearo, *both* companies—specifically, "Aearo and 3M"—prefer to resolve CAEv2 claims on the basis of the "fair and complete evidentiary record" they plan to create in bankruptcy court. *See In re Aearo*, 1:22bk2890, Informational Brief, ECF No. 12 at 61. From this, the threat to this Court's previously exercised jurisdiction is undeniable. It cannot and will not be countenanced, and compels immediate action from this Court by means of an All Writs Act injunction prohibiting 3M from attacking this Court's prior orders.

For the avoidance of doubt, the scope of today's injunction prevents 3M from "attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in" bankruptcy court. *See New York Life*, 142 F.3d at 879. This includes the relitigation of identical issues that the defendants

---

1984) (bankruptcy case filed to circumvent liquidation orders in state court dismissed as a bad faith filing); *In re Wally Findlay Galleries (N.Y.) Inc.,* 36 B.R. 849 (Bankr. S.D.N.Y. 1984) (bankruptcy case dismissed where intent was to relitigate not reorganize); *but see In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022)("Texas Two-Step" corporate restructuring and transfer of liability to a reorganized debtor considered a valid bankruptcy purpose, not merely aimed at gaining a tactical litigation advantage), *appeal docketed*, No. 22-2003 (3d Cir. Mar. 10, 2022).

litigated and lost against a particular plaintiff in this Court. *See, e.g., Jack Faucett Assocs., Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984) (citing *S. Pac. Commc'ns Co. v. AT&T*, 740 F.2d 1011, 1014 n.2 (1984)). 3M also is enjoined from supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum, including Aearo. After nearly three and a half years of litigation, 3M has had a "full and fair opportunity to litigate" a myriad of issues that were "critical and necessary" to the Court's orders and judgments. *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (articulating standard for collateral estoppel. Today's injunction enforces the preclusive effect of all of those orders and judgments. If 3M defies this injunction by attempting to relitigate (or supporting relitigation of) these matters in the bankruptcy court, this Court retains jurisdiction to convene contempt proceedings to enforce compliance. *See United States v. Coulton*, 594 Fed. App'x 563, 565-66 (11th Cir. 2014).

Based on the foregoing, Valle's Motion for Preliminary Injunction, ECF No. 3358, is **GRANTED IN PART and DENIED IN PART**, consistent with this Order.

**DONE AND ORDERED** this 16th day of August 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**