# Exhibit A

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG ) <br> PRODUCTS LIABILITY LITIGATION, ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> _____) | Case No. 3:19md2885 <br><br> Pensacola, Florida <br> August 11, 2022 <br> 10:05 a.m. |

**ORAL ARGUMENT**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE

(Pages 1-76)

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**      Keller Lenkner, LLC
By:  **ASHLEY KELLER**
        *ack@kellerlenkner.com*
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois  60606


Quinn Emanuel Urquhart
By: **ADAM B. WOLFSON**
        *adamwolfson@quinnemanuel.com*
865 South Figuero St., 10th Floor
Los Angeles, California  90017

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**
Aylstock, Witkin, Kreis & Overholtz
by: **BRYAN F. AYLSTOCK**
_baylstock@awkolaw.com_

**JENNIFER HOEKSTRA**
_jhoekstra@awkolaw.com_
17 E Main Street, Suite 200
Pensacola, Florida  32502

Clark Love & Hutson, GP
by: **SHELLEY HUTSON**
_bgreif@triallawfirm.com_
440 Louisiana Street, Suite 1600
Houston, Texas  77002

**FOR THE DEFENDANTS:**   Moore, Hill & Westmoreland, PA
By: **CHARLES F. BEALL, JR.**
_cbeall@mhw-law.com_
350 W Cedar Street, Suite 100
Pensacola, Florida  32502

White & Case
By: **JESSICA C. LAURIA**
_Jessica.lauria@whitecase.com_
1221 Avenue of the Americas
New York, New York  10020-1095

| | | |
|---|---|---|
| 10:22:11 | 1 | would be an exception to the automatic stay. |
| 10:22:13 | 2 | **MR. KELLER:** Contempt is available.  I would dare say |
| 10:22:19 | 3 | you should consider both.  I think that the relief that |
| 10:22:21 | 4 | Mr. Valle is asking for will be more impactful and have a more |
| 10:22:26 | 5 | significant deterrent effect.  This is a big case, everybody |
| 10:22:30 | 6 | knows it.  Lots of people are watching.  And I know that we've |
| 10:22:33 | 7 | made a big ask.  But this is also a big moment where preserving |
| 10:22:39 | 8 | the integrity of the judicial process is so important precisely |
| 10:22:43 | 9 | because so many people are watching and seeing the way that |
| 10:22:45 | 10 | this Court's integrity is being undermined in a fashion that I |
| 10:22:47 | 11 | find completely despicable. |
| 10:22:50 | 12 | So you have discretion, but admittedly I think that |
| 10:22:55 | 13 | you should exercise it and do the big thing in this big moment |
| 10:22:58 | 14 | and prevent 3M from second-guessing your judgments. |
| 10:23:01 | 15 | **THE COURT:** What if the bankruptcy judge, Chief Judge |
| 10:23:07 | 16 | Graham, what if he issues the stay or applies the stay and I |
| 10:23:10 | 17 | haven't acted yet? |
| 10:23:13 | 18 | **MR. KELLER:** I don't think that undermines your |
| 10:23:15 | 19 | authority to rule on our sub judice motion. |
| 10:23:19 | 20 | I can't come back before you.  I would respect the |
| 10:23:23 | 21 | bankruptcy court's stay because I respect the integrity of the |
| 10:23:28 | 22 | judicial process, and I would lodge appeal to say that I don't |
| 10:23:31 | 23 | think the stay should have issued, so I won't be back in front |
| 10:23:35 | 24 | of Your Honor.  But it's fully briefed.  He's not enjoining |
| 10:23:38 | 25 | you, and so Your Honor would still have full authority as an |

```
10:23:38   1    Article III officer to issue the injunctive relief that Mr.
10:23:41   2    Valle has asked for.  And it won't be inconsistent, in the
10:23:43   3    hypothetical world that Your Honor is describing that I hope
10:23:46   4    won't materialize, with Judge Graham's stay.
10:23:49   5              Saying that we're not allowed as lawyers to litigate
10:23:51   6    in front of Your Honor related to the CAEv2 doesn't clash with
10:23:57   7    an order from Your Honor saying, and 3M is not allowed to go
10:24:01   8    into another tribunal and second-guess my judgments.  Those are
10:24:07   9    consistent equitable injunctions that I hope will not coexist,
10:24:11  10    but they could peacefully coexist.
10:24:15  11              Thank you, Your Honor.
10:24:15  12         THE COURT:  Thank you, Mr. Keller.
10:24:16  13              I believe, Ms. Lauria, you are going to present
10:24:20  14    argument on behalf of 3M.
10:24:29  15              Ms. Lauria, do you all think -- is it that you don't
10:24:34  16    believe I have the authority under the All Writs Act or you
10:24:37  17    don't think I should exercise it?  What is your position?
10:24:39  18         MS. LAURIA:  Your Honor, I don't think you should
10:24:42  19    exercise it.  I think --
10:24:43  20              And again, may it please the Court?  Jessica Lauria,
10:24:46  21    White & Case, on behalf of 3M Company.
10:24:48  22              I think we need to take the argument made by
10:24:50  23    Mr. Keller today and start dissecting it into its component
10:24:55  24    parts.
10:24:55  25              If you look at the face of Mr. Keller's motion, what
```

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 10:24:57 | 1  | he's actually asking the Court to do today, which is twofold,               |
| 10:25:02 | 2  | enjoin 3M Company, my client, from seeking an junction, not the             |
| 10:25:06 | 3  | debtor, he's conceded that today, he's conceded that in all of              |
| 10:25:10 | 4  | his papers so he's not asking for an junction with respect to               |
| 10:25:13 | 5  | the debtor, but to enjoin 3M Company from seeking an injunction             |
| 10:25:16 | 6  | of this Court in another court and then secondarily from                    |
| 10:25:19 | 7  | supporting an injunction in another court.                                  |
| 10:25:22 | 8  | **THE COURT:**  Are you doing that?  Are you actually                       |
| 10:25:24 | 9  | seeking the injunction or is Aearo seeking the injunction?                  |
| 10:25:28 | 10 | **MS. LAURIA:**  Thank you, Your Honor.  That's exactly                     |
| 10:25:30 | 11 | where I was going to go with this.  If you start to dissect the             |
| 10:25:33 | 12 | relief that Mr. Keller is seeking, 3M Company is not the                    |
| 10:25:36 | 13 | movant.  3M Company did not file the adversary proceeding that              |
| 10:25:41 | 14 | is before Judge Graham.  3M Company -- and I'll get to 3M                   |
| 10:25:45 | 15 | Company's participation.  We briefed that, but I think it's                 |
| 10:25:48 | 16 | important that we understand it.                                            |
| 10:25:49 | 17 | Because the All Writs Act injunction that Mr. Keller                        |
| 10:25:52 | 18 | is seeking has the very real possibility of enjoining 3M                    |
| 10:25:56 | 19 | Company from even participating in discovery requests and other             |
| 10:26:00 | 20 | aspects of the case, which is completely violative of the                   |
| 10:26:04 | 21 | bankruptcy code.                                                            |
| 10:26:06 | 22 | **THE COURT:**  I didn't hear him say that.  I heard him                    |
| 10:26:08 | 23 | ask for an injunction that would prohibit 3M from relitigating              |
| 10:26:12 | 24 | matters that have been decided by this Court.                               |
| 10:26:15 | 25 | **MS. LAURIA:**  Well, I'm glad you pointed that out                        |

```
10:26:17   1    because I actually think there's five things he's asking for.
10:26:19   2    His motion on the face of it asks for it, too.
10:26:21   3             It says, "3M Company should be enjoined from filing
10:26:24   4    any action, proceeding, brief, or similar document seeking an
10:26:32   5    injunction in a another court.
10:26:33   6             The second thing that he asks for is an injunction
10:26:37   7    preventing 3M from supporting any other party in seeking that
10:26:40   8    injunction.
10:26:40   9             That's what we see in the four corners of his
10:26:42   10   document.
10:26:42   11            If you dissect what he's saying on the record, I
10:26:45   12   describe what Mr. Keller is doing as basically a disguised *Clay*
10:26:50   13   motion.  And by *Clay*, I'm sure the Court knows I'm referring to
10:26:55   14   the Eleventh Circuit decision on All Writs Act.
10:26:58   15            His disguised *Clay* relief falls into three categories:
10:27:03   16   One is he's seeking this Court's determination of the 362
10:27:07   17   issue; the second is, he's seeking a stay of any party's
10:27:11   18   ability to re-litigate the issue; and third is he's basically
10:27:15   19   seeking this Court's determination of what I'm going to call
10:27:19   20   wrongful bankruptcy.
10:27:20   21            And that's what I really refer to when I talk about
10:27:23   22   the *Clay* issue or his disguised *Clay* motion.  Because, if you
10:27:27   23   read *Clay*, what Mr. Keller is seeking falls squarely within
10:27:30   24   what he actually said when he took the podium.
10:27:33   25            Now, in his papers he tried to narrowly tailor his
```

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 10:27:37 | 1  | relief to enjoin us from seeking an injunction or to enjoin 3M               |
| 10:27:40 | 2  | from supporting an injunction.  But everything we just heard                 |
| 10:27:43 | 3  | from Mr. Keller today demonstrates that what Mr. Keller is in                |
| 10:27:47 | 4  | fact seeking is a determination that the bankruptcy was wrong                |
| 10:27:51 | 5  | and that the bankruptcy should be dismissed.                                 |
| 10:27:53 | 6  | **THE COURT:**  Well, if I believe that the bankruptcy was                   |
| 10:27:56 | 7  | fraudulent and was concocted as a way to escape this Court's                 |
| 10:28:05 | 8  | jurisdiction, then that may be a perfect use of the All Writs                |
| 10:28:13 | 9  | Act.                                                                         |
| 10:28:13 | 10 | **MS. LAURIA:**  I don't think it is, Your Honor.  I think                   |
| 10:28:15 | 11 | under the Eleventh Circuit's *Clay* decision, what *Clay* said was,          |
| 10:28:18 | 12 | as you know, not to rehash it, but there are three forms of                  |
| 10:28:25 | 13 | injunctive relief:  You've got Federal Rule of Civil Procedure               |
| 10:28:28 | 14 | 65, and for 65 you have to have a claim or a cause of action;                |
| 10:28:32 | 15 | you've got statutory; and then you have the All Writs Act.                   |
| 10:28:36 | 16 | With respect to this matter, very similar to the                             |
| 10:28:38 | 17 | Eleventh Circuit, the Eleventh Circuit said, you know what,                  |
| 10:28:40 | 18 | there's not actually a civil claim for wrongful arbitration.                 |
| 10:28:44 | 19 | Remember that was a tension between the All Writs                            |
| 10:28:47 | 20 | injunction that the district court issued enjoining                          |
| 10:28:50 | 21 | arbitrations from going forward.  They said, well, there's not               |
| 10:28:53 | 22 | actually a wrongful arbitration civil act.  And so we                        |
| 10:28:57 | 23 | understand why the movant is proceeding under the All Writs                  |
| 10:29:02 | 24 | Act.                                                                         |
| 10:29:03 | 25 | It then goes on to say -- and by the way, it overturns                       |

|  |  |
|---|---|
| 10:47:46 | 1 |
| 10:47:49 | 2 |
| 10:47:50 | 3 |
| 10:47:53 | 4 |
| 10:47:55 | 5 |
| 10:47:58 | 6 |
| 10:47:59 | 7 |
| 10:48:01 | 8 |
| 10:48:06 | 9 |
| 10:48:10 | 10 |
| 10:48:14 | 11 |
| 10:48:18 | 12 |
| 10:48:22 | 13 |
| 10:48:25 | 14 |
| 10:48:29 | 15 |
| 10:48:33 | 16 |
| 10:48:36 | 17 |
| 10:48:41 | 18 |
| 10:48:42 | 19 |
| 10:48:44 | 20 |
| 10:48:45 | 21 |
| 10:48:49 | 22 |
| 10:48:53 | 23 |
| 10:48:56 | 24 |
| 10:49:00 | 25 |

1  was wrong.  I thought there was a reference to 3M itself but
2  maybe not.
3           **MS. LAURIA:**  I do think the CEO of 3M issued a
4  statement that was quoted, I think he was referring to the
5  funding agreement in that particular statement of Mr. Keller's
6  brief.
7           In any event, the context that Mr. Keller is referring
8  to is an estimation proceeding in the bankruptcy court.  That
9  only happens by motion.  And in fact, the claimants are free to
10 object to even the concept of estimating the claims.  That's
11 certainly happening in the *J&J*, *LTL* proceeding.
12          The claims are estimated in an aggregate level.  The
13 bankruptcy court itself doesn't even have authority to estimate
14 individual personal injury or wrongful death claims.  And in
15 fact, in my experience -- and I'm dating myself to the asbestos
16 days -- we actually withdrew references to have the federal
17 district court rather than the bankruptcy court consider the
18 estimation.
19          So that's the context that Mr. Keller is referring to.
20 And --
21          **THE COURT:**  But you have a basis for valuing claims.
22 You have 19 verdicts.
23          **MS. LAURIA:**  And embedded I think, though, in the
24 Court's questions in Mr. Keller's assumption is that Judge
25 Graham doesn't know how to apply principles of res judicata or

```
10:49:05   1    collateral estoppel if he's the judge that's conducting the
10:49:08   2    estimation, or that the federal district court in Indiana, if
10:49:13   3    the reference is withdrawn and that court conducts the
10:49:13   4    estimation, doesn't have the ability to apply collateral
10:49:16   5    estoppel and res judicata.
10:49:19   6              There's nothing in the record or before Your Honor
10:49:21   7    that would suggest that those courts are going to disregard
10:49:24   8    what happened in front of this Court in reaching an aggregate
10:49:28   9    estimation of liability, the purpose of which is to fund the
10:49:32  10    trust.
10:49:32  11              THE COURT:  The concern, though, is that your client
10:49:34  12    is going to go into that process and ask the courts to do that,
10:49:41  13    to disregard this Court's lawfully entered orders, whether you
10:49:48  14    agree with them or not.
10:49:50  15              MS. LAURIA:  As we said in our papers, Your Honor,
10:49:53  16    that is certainly not our intent.  But if you look at --
10:49:55  17              THE COURT:  What's the problem with an injunction?  If
10:49:58  18    it's not your intent, then what's the harm of an injunction?
10:50:02  19              MS. LAURIA:  Well, the injunction, as Mr. Keller said,
10:50:04  20    is an extraordinary remedy in this case.  So if there's no
10:50:09  21    basis of harm, there's no basis --
10:50:10  22              THE COURT:  A lot is extraordinary in this case.
10:50:12  23              MS. LAURIA:  That's a fair point, Your Honor.
10:50:16  24              THE COURT:  I've been accused of disregarding
10:50:18  25    traditional case management tools, but there's nothing
```

10:50:21  1    traditional about this MDL.
10:50:22  2            **MS. LAURIA:**  Understood, Your Honor.  But if you look
10:50:24  3    at -- I think the most analogous circumstance is probably the
10:50:28  4    re-litigation exception under the Anti-Injunction Act.  And the
10:50:32  5    Supreme Court said that -- and again, that was federal court
10:50:35  6    versus state.  But the Supreme Court said, in applying the
10:50:37  7    re-litigation exception to the Anti-Injunction Act, that courts
10:50:42  8    should not assume that the state court doesn't know how to
10:50:45  9    apply issue preclusion.
10:50:47  10           And I would urge the same thing here, the Court should
10:50:51  11   not assume that, if Aearo or 3M -- and again, I'll represent
10:50:56  12   again 3M is not -- we understand principles of res judicata and
10:51:01  13   collateral estoppel.  But I don't think it's fair for this
10:51:04  14   Court to assume that Judge Graham or the Indiana District Court
10:51:09  15   won't apply Your Honor's rulings in prior decisions.  And
10:51:12  16   that's what is embedded in this.
10:51:14  17           And I think it's *Smith v. Bayer*, the *Vioxx* decision
10:51:20  18   talks about this as well, which was cited I think in both of
10:51:23  19   our papers.  If given the choice between an extraordinary
10:51:26  20   remedy, which is what we're doing under the All Writs Act,
10:51:30  21   versus allowing another court to properly apply issue
10:51:34  22   preclusion via collateral estoppel or res judicata, we should
10:51:39  23   let the Court apply those rules.
10:51:41  24           **THE COURT:**  I would agree with you in an ordinary
10:51:43  25   case.  But in this case where one party has been so vocal and

| | | |
|---|---|---|
| 10:51:51 | 1 | obvious in its intent, I'm not sure I'm comfortable just |
| 10:51:55 | 2 | leaving it to another court to make that decision.  I'm just |
| 10:52:04 | 3 | not sure I agree with you on that. |
| 10:52:06 | 4 | You certainly have the right -- 3M has the right to |
| 10:52:11 | 5 | its opinions, to express them, but it's a bridge too far to say |
| 10:52:23 | 6 | we're going to go in and ask another court to undo this Court's |
| 10:52:27 | 7 | rulings that have been entered over the last three-and-a-half |
| 10:52:30 | 8 | years.  No matter how much your client is upset about those |
| 10:52:34 | 9 | rulings and disagrees with them and thinks they're wrong, they |
| 10:52:40 | 10 | are lawfully entered orders pursuant to this Court's |
| 10:52:44 | 11 | jurisdiction, and they should stay that way.  And if they're |
| 10:52:49 | 12 | going to be reversed or disregarded, that's the prerogative of |
| 10:52:54 | 13 | the Eleventh Circuit Court of Appeals. |
| 10:52:58 | 14 | Ms. Lauria, I appreciate your presentation. |
| 10:53:01 | 15 | Mr. Keller, I'll give you five minutes to reply and |
| 10:53:06 | 16 | then I'll hear from Mr. Wolfson and Mr. Beall. |
| 10:53:09 | 17 | **MS. LAURIA:**  Thank you, Your Honor. |
| 10:53:10 | 18 | **THE COURT:**  Thank you. |
| 10:53:13 | 19 | **MR. KELLER:**  Thank you, Your Honor.  Ashley Keller |
| 10:53:17 | 20 | again for Mr. Valle.  I'll try not to use all of the five |
| 10:53:20 | 21 | minutes. |
| 10:53:21 | 22 | The res judicata and collateral estoppel points will |
| 10:53:27 | 23 | eviscerate the All Writs Act in every case because a litigant |
| 10:53:29 | 24 | could always say don't issue an injunction, the court that I'm |
| 10:53:31 | 25 | running to to re-litigate these issues knows how to apply res |