IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

This Document Relates to:
All Wave 2 Plaintiffs
_____/

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

# ORDER

Pending before the Court is Defendants' Motion to Compel Wave Plaintiffs' Data and Electronically Stored Information Responsive to Defendants' Request for Production Number 10.  Master Docket ECF No. 3265. In the motion, Defendants seek a court order compelling Wave 2 Plaintiffs to produce noise exposure data automatically recorded by the operating systems for Plaintiffs' smartphones and smartwatches.  *Id*. at 1. Plaintiffs oppose the motion for many reasons but focus primarily on proportionality and timeliness grounds.  Master Docket ECF No. 3304. Defendants filed a reply memorandum with leave of Court, Master Docket ECF No. 3417. The motion is, therefore, ripe for consideration.  For the reasons explained below the motion is due to be denied.

1

## I. Background

On March 3, 2022, Defendants served their First Request for Production ("RFP") No. 10, in which Defendants asked Wave 2 Plaintiffs to produce:

> All data and electronically stored information regarding your hearing and hearing health from Any and All smartphones, tablets, Apple Watches, hearing aids, or other electronic devices from one year preceding the date you first used the CAEv2 earplugs until present, including but not limited to hearing aid usage, headphone audio level data, audiograms, environmental sound levels, noise exposure levels, headphone notifications, And noise notifications.

Master Docket ECF No. 3265, Ex. 1. Plaintiffs' responses were due on April 4, 2022. Master Docket ECF No. 2787, CMO No. 34 (Wave Order #2) § I.2. Notably, Defendants did not request this information during Bellwether discovery or during discovery to the Wave 1 Plaintiffs. To facilitate production, Defendants provided Plaintiffs with written instructions on how to locate information stored by the operating system (iOS) for Apple smart devices, as well as how to capture the information by taking a screen shot. *See* Master Docket ECF No. 3265-2.

Except for one Wave 2 Plaintiff, who produced the requested information, all other Plaintiffs objected (among other reasons) on the grounds that the request is overly broad and disproportionate to the needs

of the case. *See, e.g.,* Leslie Resp. to RFP No. 10, Master Docket ECF No. 3265-9. Some of the objecting Plaintiffs responded that they had conducted a reasonable investigation but located no responsive data. *See, e.g.,* Byrd Resp. to RFP No. 10, Master Docket ECF No. 3265-10 at 4. Yet, according to Defendants, when these Plaintiffs were deposed, they testified that they had not made any effort to locate the information. *See, e.g.,* Byrd Depo. Tr. 20:20-21:2, Master Docket ECF No. 3265-11 at 3-4.

According to Defendants, Plaintiffs' noise exposure data stored on their smart devices are highly relevant to Plaintiffs' hearing injury claims and can be collected with only a minimal burden on Plaintiffs. Consequently, Defendants ask the Court to order all Wave 2 Plaintiffs to conduct a reasonable investigation for the data requested and produce any responsive information.

Plaintiffs oppose Defendants' motion on both substantive and procedural grounds. Substantively, Plaintiffs argue that Defendants have not shown Plaintiffs used or possessed any post-2019 iOS devices where such data might be stored. Further, Plaintiffs say that the discovery sought is not proportional to the needs of the cases, is overly burdensome, and the burden of producing it outweighs any minimal benefit achieved by its production. Plaintiffs also contend that the request invades the privacy of

Plaintiffs and their families by intruding unnecessarily into sensitive health areas outside of the scope of discovery.

Procedurally, Plaintiffs argue that the motion was not timely made, that Defendants failed to conduct pre-motion conferences, and that if the motion is granted, additional case-specific motion practice will be required as the Defendants' omnibus motion as to all Wave 2 Plaintiffs fails to account for facts specific to each Plaintiff.

In Defendants reply they say that contrary to Plaintiffs' representation regarding Defendants' failure to "meet-and-confer" on this issue, Defendants did, in fact, discuss the issue with eight (8) different law firms in Plaintiffs' leadership who represent more than one hundred (100) Wave 2 Plaintiffs.

## II. iOS Apple Health Data

Central to the issue of whether production of the data is proportional is to first define the nature and scope of the data and what information the data provides and what information the data does not provide. Secondly, as part of the proportionality analysis the Court must consider what are the burdens, if any, to collect, review and produce the data.

Although RFP No. 10 broadly read would require the production of data on Androids and other electronic devices, the primary focus of

Defendants' arguments is on the noise exposure and hearing related information recorded on Apple iOS devices. Thus, an overview of the data captured by iOS devices is necessary.

On devices where Apple Health Data is enabled, the devices have the capability to record "Environmental Sound Levels," which Apple describes as "sounds in your environment measured in A-Weighted decibels (dB)" recorded when the Noise App on an Apple Watch is synched to the iOS device. Master Docket ECF No. 3304-1 pp. 4-5 ¶13. (Declaration of Michael Ciaramitaro) (the "Ciaramitaro Decl." "Environmental Sound Levels" are captured for iPhone users who also have an Apple Watch with the Noise App configured. *Id.*

Apple devices also record headphone audio levels. Apple describes the "Headphone Audio Levels" data as representing the "volume of your headphone audio measured in A-weighted decibels (dB)." Highly relevant to this case "these measurements are most accurate when using Apple or Beats headphones." *Id.* pp. 5-6, ¶14. Therefore, "Audio played through other headphones or speakers connected via a wire can be estimated based on the volume of your device." *Id.* Consequently, only data recorded when using Apple or Beats headphones are considered most accurate. *Id.*

In addition to the limitation on the accuracy of the data where headphones other than Apple or Beats are used, the iOS system only captures Headphone Audio Levels decibel data when the device is connected to an external output device, such as headphones, Bluetooth speakers, built-in automobile speakers, or home audio speaker systems. *Id.* p. 8 ¶19. This means unless the user is using an output device like headphones, there is no hearing health data recorded. So, for Plaintiffs who own an iPhone, hearing data is not captured for telephone calls or telephone calls where the speaker is used or where the person is listening to music on the iPhone speaker.

Importantly, the data does not distinguish which external source registered the decibel reading when the data is collected and viewed through industry standard collection and review tools such as Cellebrite and Elcomsoft Phone Breaker. *Id.* p. 8 ¶19. Although the Headphone Audio Levels visible on the iPhone identify the connected device by the name associated with the device—so arguably the data may exist on the iPhone somewhere else—the instructions Defendants provided to Plaintiffs for the self-collection of the data do not provide instructions to click on any links that would provide this information and do not instruct Plaintiffs to screen shot the information. The bottom line is that the accuracy of the data is

suspect if headphones other than Apple or Beats are used and the data collected and reviewed using industry standard collection and review tools do not identify whether the data was generated by car speakers, headphones, or connected blue tooth speakers.

This is important because sound delivered through headphones as compared to blue tooth speakers may be a world apart. For example, where speakers are used there is no way to measure in the data how far the listener was from the speaker. The speakers conceivably could be located in a living room while the listener is in the kitchen or even outside the building where the speakers are located.

There are also significant problems when collecting the health data when using industry standard tools, such as Cellebrite and Elcomsoft. Notably, when collecting the data the tools collect all health data and not just hearing data. Ciaramitaro Decl. p. 11, ¶ 24. So, when collecting the data collection tools also collect the following health data stored in the iOS devices[1]: (1) Activity, which includes exercise tracker and step count; (2) Body Measurements, (3) Menstrual Cycle Tracking, (4) Heart, including blood pressure and heart rate, (5) Mindfulness, (6) Nutrition, (7)

---

[1] Some of the Health data, such as mindfulness, nutrition and respiratory are tracked through linked applications, Therefore, if the user has not linked data these data fields would not contain any information.

Respiratory, (8) Sleep, symptoms and other data manually inputted by the iOS user. *Id.*

Defendants propose that the health data could be self-collected by each Plaintiff in accordance with instructions provided by Defendants' consultant. The instructions apply only to iOS devices so they are not of any assistance regarding collection of data from hearing aids or Android devices. And while the instructions do provide a road map for collection of the data the process has serious limitations. First, the instructions require some basic knowledge of the Settings and Health Application features in the iPhone. Secondly, because the instructions contemplate taking screen shots to capture data, Apple iOS devices only make visible to a front-end user data from a limited time period from the current date, making the data produced by a screen shot in many cases much more limited than the requested time period in the RFP, which in this case includes data from one year before the Plaintiff first used the 3M Combat Arms Earplug to present. This is highly problematic because, as Defendants represent, it is only since the release of iOS 13 in 2019 that Apple iPhones have automatically recorded and stored data related to sound levels during user's headphone usage, environmental noise exposure levels and warnings delivered to users when they have excessive noise exposures.

ECF No. 3265, p. 4. The military stopped issuing the CAEv2 in 2015, so all the iPhone data would (at the very least) begin at least five years before iPhones began collecting and storing the hearing data. So, the earliest date the data would be available would be in 2019 when iOS 13 was released. Because screen shots of data in accordance with the instructions Defendants provided for self-collection would capture, at best, limited data the only available method to collect all the data recorded and stored in an iPhone would be through forensically collecting the hearing health data, a process that would be about the same as collecting other data, such as text messages or photos from a device. Ciaramitaro Decl. pp. 9-10, ¶ 23. Consequently, the cost of collecting and reviewing the data will likely be much more than the cost of the limited self-collection.

### III.  Discussion

As both sides acknowledge the scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discoverable information need not be admissible at trial. *Id.* Rule 26 provides six factors to consider regarding proportionality: (1) the

importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). This analysis often means "that the burden of responding to discovery lies heavier on the party who has more information, and properly so." Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendment). Rule 26's proportionality requirement is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendment).

The Court has reviewed the declarations submitted by both parties' computer forensic experts, along with all exhibits and memorandum submitted for the Court's consideration. While Plaintiffs advance the argument that the motion to compel should be denied because of a 'glaring failure of timeliness," the Court concludes that while there are legitimate concerns about the timing of the motion to compel, timeliness as an independent ground is not a sufficient reason to deny the motion.[2] Instead,

---

[2] The RFP was served on March 3, 2022, during the discovery period in the Wave 2 cases. Although the motion to compel was not filed until July 1, 2022, just five days before the fact discovery cutoff, the motion was technically timely. But because the

because Defendants failed to establish that the noise exposure data would be important to resolving the issues in this case and the burden and expense of collecting and reviewing the hearing data outweighs the likely benefit, the motion to compel fails on proportionality grounds. Here's why.

First, as a threshold matter, Defendants have not shown that all (or any) Wave 2 Plaintiffs possess an Apple device capable of storing the information they seek. If Defendants truly believed obtaining this data from Plaintiffs' iPhones was critical Defendants could have (and should have) requested in an interrogatory that each Plaintiff disclose the year and model of iPhone or other electronic device they currently possess and have owned in the past. Because Defendants have not collected any information on individual Plaintiffs it is highly speculative as to how many Plaintiffs, if any, currently have post 2019 iOS devices. And as to devices other than post 2019 iOS devices Defendants have made no showing that relevant hearing data exists and is available for collection on any other personal electronic devices, including Androids or other brands of electronic devices.

---

motion was served just five days before fact discovery cut-off if the motion was granted the Court would be required to extend the discovery deadline so the data could be collected and further discovery taken as to each Plaintiff regarding their alleged use of their iPhone. Additionally, expert disclosures were due by July 15, 2022. Thus, if the motion was granted expert disclosures could have been affected. Nonetheless, even though Defendants should have filed the motion to compel much earlier to obtain the relief they wanted the Court does not conclude that the motion should be denied because the motion was filed at the last minute.

Second, even if a Wave 2 Plaintiff possessed a post 2019 iOS device, collection and review of the data with industry standard tools would result in the production of other private health data of the user and potentially of non-parties with whom the user shares a phone or other device, such as family members.

Third, apart from the fact that collection of the data could result in the disclosure of unrelated health data, none of the requested hearing data identifies who was using the device when hearing data registered or how the device was being used. For example, the data would not distinguish whether the Plaintiff, the Plaintiff's spouse, the Plaintiff's children or others were using the device when the device recorded the data.[3] In the Court's view it is not uncommon for individuals, other than the owner, to use a device for a variety of reasons, ranging from making a quick telephone call to using the device for music or navigation during automobile trips.

Furthermore, in addition to the fact that the hearing data does not disclose who was using the device when the hearing data registered, the

---

[3] Even though many newer models of iPhones have facial recognition that can be used to unlock an iPhone, data identifying who unlocked the device is not available for collection by any industry tools or self-collection. Ciaramitaro Decl. p. 16, ¶ 34. Thus, there is no way to identify who used the device.

data does not provide any information regarding where the device was located in relation to the user when the hearing data registered.

Lastly, and most telling, the reliability and usefulness of the hearing data is further diluted because the requested data does not disclose whether the user was using headphones, a blue tooth speaker, an automobile speaker through use of Carplay or some other connected device.  This information would be critical because the difference between hearing data registered while using Apple earplugs and for example hearing data registered while the device was connected to speakers outside at a family gathering or other event are situations that are worlds apart. It is highly doubtful that any hearing expert would associate hearing loss with sound levels from a speaker where the user is not in close proximity to the connected device. And the data from the self-collection Defendants have identified would provide no information as to whether the user even viewed the hearing health information or took immediate action to turn down the volume in response to a headphone or noise alert level.

Putting aside that the data would not identify who used the device, what external device was connected or where the user was located in relation to the device, the noise alert data Defendants seek does not provide evidence of exposure to hazardous noise. The noise alerts

recorded on the iOS devices track the times when the iOS device automatically reduced noise that may have exceeded 85dB. Continuous noise is not hazardous until it exceeds an 8-hour TWA of 85dB, a view recognized by Defendants' own experts. ECF No. 3265, Exhibit 3, p. 37. Thus, data that at most evidences exposure to 85dB noise during isolated times over the course of a week is not particularly useful in identifying the cause of Plaintiffs' auditory injury.

Separate from the problems with the usefulness of the data, there are inherent problems with the reliability of the data. The quality and accuracy of the recording of the data by the device is dependent upon the age and wear and tear of the device. Further, the accuracy and reliability of the measurements taken by the iOS device is dependent upon how the device is held and positioned. ECF No. 3304-2. P. 9, ¶ 22. Declaration of Christopher Spankovich. For example, devices with protective cases (which most users have) will alter the factory designed response characteristics of the microphone, which effects the accuracy and reliability of the measurements. And because built-in microphones have limited dynamic range and low frequency response, there is a significant variance across devices and apps, even in iOS devices. *Id*. p. 8, ¶ 21.

Although Defendants suggest that these problems go to admissibility and not the question of relevance for purposes of discovery, the fundamental problems with what the data shows, however, inform the Court's analysis of proportionality because the collection, review and production of data that has minimal to no benefit in resolving the issues in these cases certainly fails any measure of proportionality.

Against the minimal benefit of the data the burden and expense of producing the data far outweighs any likely benefit. While Defendants proffer a self-collection protocol they say will not be expensive the Court strongly doubts that any of the Plaintiffs—most of whom are not forensically familiar with iOS devices—would be able to navigate the self-collection protocol without expert assistance. And while forensic collection of an iOS device can be accomplished remotely, review of the data, including removal of any non-hearing health data, would increase the expense and burden. Thus, even remote collection would involve the same time and expense that is typically involved in collecting, reviewing and producing text messages and photos from an iOS device. Even though that expense might not be a stand-alone reason to deny the request for the data, the burden and expense of collecting, reviewing and producing the data still far outweigh any likely benefit to resolution of the issues in this case.

In sum, Defendants say that the data is relevant and proportional because the data will show how loud and how long Plaintiffs used their headphones, how loud and for how long Plaintiffs were exposed to environmental noise, and how frequently Plaintiffs were notified by their phones that they were being exposed to dangerous levels of noise. As explained in detail above, the Court concludes that the data Defendants seek at best reflects data about the device itself and not data about how the Plaintiffs were affected by noise generated by the device. Because the data will not show who was using the device, what connected external device was being used, or even where the user was located in relation to the device when a hearing event was registered, collection, review and production of the data is not proportional and, therefore, Defendants' motion to compel is due to be denied.

Accordingly, upon due consideration, it is **ORDERED** that:

Defendants' Motion to Compel Wave Plaintiffs' Data and Electronically Stored Information Responsive to Defendants' Request for Production No. 10, Master Docket ECF No. 3265, is **DENIED.**

**DONE AND ORDERED** this 23rd day of September 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge