EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *All Wave 1 Cases Listed on Attached Exhibit B* | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## REMAND WAVE 1 PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON 3M COMPANY'S FULL AND INDEPENDENT LIABILITY FOR CAEv2-RELATED INJURIES

Pursuant to Federal Rule of Civil Procedure 56, N.D. Fla. Local Rule 56.1, and Case Management Order Nos. 31, 34, 45 and 47 as amended by Nos. 49 and 51 (MDL Dkts. 2304, 2787, 3079 and 3126 as amended by Dkts. 3352 and 3402), the Wave 1 Remand Plaintiffs (collectively, "Plaintiffs") respectfully move for summary judgment on 3M Company's arguments and defenses that it is anything but fully and independently liable for all CAEv2-related injuries, whether incurred

before or after the 2008 Aearo Defendant acquisition.[1] There are four independent bases for such a ruling, including: (1) judicial estoppel; (2) collateral estoppel; (3) waiver; and (4) ordinary application of successor liability law under any of the potentially relevant state laws governing the 2008 acquisition and subsequent events in 2010, when 3M Company "upstreamed" the Aearo Defendants' hearing protection business into 3M Company.

This motion comes after 3M Company finally confirmed in Short Form Answers[2] filed in the Wave 1, 2 and 3 remand cases[3] what Plaintiffs have suspected was coming since the Aearo Defendants filed bankruptcy in late July—*i.e.*, that, after more than three-and-a-half years of litigation, 19 bellwether verdicts, and more than

---

[1]   Such arguments and defenses include but are not limited to any attempt by 3M Company to shift blame to the Aearo Defendants through direct liability arguments, but also via apportionment and/or superseding cause defenses. *See, e.g.*, Exhibit C, Declaration of Jennifer M. Hoekstra dated October 4, 2022 ("Hoekstra Decl.") at Ex. 2-4 (Amended Answers, Defenses and Admissions at para. 21, 23-24).

[2]   3M Company filed hundreds of formulaic and identical answers in the Remand Wave cases following the Court's September 19, 2022 Case Management Order No. 52 (Dkt. 3467), Hoekstra Decl. Ex. 1; *Cabiness* Dkt. 48 (Wave Exemplar Answer to Amended SFC), Hoekstra Decl. Ex. 2; *Hopson* Dkt. 23 (Wave Exemplar Answer to SFC), Hoekstra Decl. Ex. 3; Redline of Wave Answer based on Beal Bellwether Answer, Hoekstra Decl. Ex. 4.

[3]   At this time Leadership is submitting this Motion for Summary Judgment only on behalf of the Wave 1 Cases, because those cases are most immediately impacted by the issues addressed in this motion. However, the same issues regarding 3M Company's full and independent liability apply to all remand cases, regardless of wave.

400 fully-briefed summary judgment motions, 3M Company now intends to argue that it does not, in fact, bear full and independent liability for CAEv2-related injuries. These Short Form Answers—which are essentially amendments to the Master Answer—echo 3M Company's recent arguments to this Court that Plaintiffs not only bear the burden on successor liability issues, but that such issues remain live in all future CAEv2 cases in this MDL. *See* Dkt. 3372. Plaintiffs therefore bring this motion for summary judgment to resolve the issue now. Doing so will have the dual benefits of clarifying the record on the scope of 3M Company's liability at this critical juncture and avoiding unnecessary disputes later, when Plaintiffs proceed to trial.

## I.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate where the record reflects there are no genuine disputes of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). Once that burden is met, the nonmoving party must "go beyond the pleadings" and present competent record evidence showing the existence of a genuine, material factual dispute for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In doing so, and to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The "mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505. In assessing whether a movant is entitled to summary judgment, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## II.   <u>ARGUMENT</u>

As noted above, there are four independent bases why any defense 3M Company asserts to its full and independent liability for all CAEv2-related injuries (whether incurred before or after the 2008 Aearo acquisition and subsequent 2010 upstreaming) fails as a matter of law.[4] These include: (1) judicial estoppel; (2) collateral estoppel; (3) waiver and (4) ordinary application of successor liability law to the record evidence.

### A.   <u>3M is Judicially Estopped From Disclaiming its Full and Independent Liability for CAEv2-Related Injuries</u>

In its August 14, 2022 order on the *Cupit* motion, the Court found that "Aearo's successor liability [was then] only a potential defense that 3M Company has never raised in Cupit's case or any other individual case in this MDL." Dkt. 3386, at 8. That now has changed with the Wave Short Form Answers, which finally make explicit 3M Company's intention to invoke such a defense in future trials. *See*

---

[4]   Plaintiffs' motion focuses on 2010, because that is the year 3M Company "upstreamed" the Aearo Defendants' hearing protection business into 3M Company itself, and when Plaintiffs believe the facts demonstrate under the summary judgment standard that it clearly took on all CAEv2-related injuries. That is also the more expansive time frame at issue for this particular liability issue. Note that multiple 3M Company witnesses, including those giving corporate 30(b)(6) testimony have repeatedly testified that when 3M acquired Aearo in 2008, 3M assumed *all* of its liabilities. See Hoekstra Decl. at Ex. 7, Brian Myers 10/18/19 30(b)(6) Testimony; Ex. 8, Elliott Berger 11/13/2019 30(b)6 Testimony; Ex. 9, Brian McGinley 2013 30(b)6 Testimony; and at Ex. 10, Brian Myers 1/8/2021 Choice of Law Testimony.

*supra*, at n.1. So as not to repeat briefing unnecessarily, Plaintiffs respectfully

incorporate the arguments and facts set forth in the *Cupit* motion, which also

discusses the law on this issue and why it requires judicial estoppel now, when 3M

Company has indicated it does intend to disclaim its full liability for pre-2010

CAEv2-related injuries. *See* Dkt. 3361. Plaintiffs specifically request that 3M

Company be judicially estopped from asserting any variation of a successor liability

defense. The Court's Order on the *Cupit* motion explains why each element of

judicial estoppel applies to 3M Company's about face, including that:

- "[A]t no point since the beginning of the MDL—over the years of intensive discovery, motions practice, and bellwether trials—did 3M Company ever hint, much less represent, that any entity other than itself was responsible for the CAEv2 claims in this litigation." Dkt. 3386, at 3.

- "From the start, Aearo was a party to this litigation in name only." *Id.*

- "As early as the Master Answer, the defendants jointly asserted an array of defenses aimed at shifting liability either to the United States military,[5] or to the plaintiffs themselves,[6] but never to Aearo." *Id.*

- Defendants themselves have explicitly disavowed the notion that Aearo has a meaningful role or identity in this litigation.

  - "During discovery, 3M Company alone verified the responses to interrogatories sent to all defendants. Not Aearo." *Id.*

  - "3M Company produced virtually all of the discovery materials. Not Aearo." *Id.*

---

[5]    *See In re 3M*, 3:19md2885, Master Answer, ECF No. 959 at 99–100 ¶¶ 18-19.

[6]    *See id*. at 94-95 ¶¶ 4-7.

- o "3M Company sent 30(b)(6) witnesses to testify at depositions. Not Aearo." *Id.*

- "At the initial multi-day Rule 26 conference, 22 subsequent case management conferences, countless biweekly discovery and leadership calls, Pentagon and Department of Justice meetings, a myriad of hearings and oral arguments on various matters, and in every formal and informal communication with the Court, the six defendants maintained an unqualifiedly united front, with 3M Company—not Aearo—at the helm." *Id.* at 3-4.

- "Even in the 16 bellwether trials, 3M Company maintained its posture of singularity and control." *Id.* at 4.

- "When bellwether juries were instructed that 3M and Aearo would be "refer[red] to collectively as '3M'" for purposes of liability and damages, 3M did not object. *See, e.g.*, *Blum v. 3M Co.*, 7:20cv122, Dkt. 114 at 13." Dkt. 3386, at 4.

- "Regarding the apportionment of fault defense, those same bellwether juries could apportion fault only to a single defendant, 3M Company, and the company never once argued that the relative fault of any other defendant should be considered in connection with the plaintiffs' injuries, even in cases involving CAEv2 use that occurred solely before 3M Company acquired Aearo. *See, e.g., Adkins v. 3M Co.*, 7:20cv012, Verdict Form, Dkt. 118 at 4." *Id.* at 4.

- "Just as in discovery, the six defendants presented a united front at each bellwether trial with 3M calling all the shots, never once asserting crossclaims against other "separate" defendants for indemnification, presenting evidence that would have permitted a jury to allocate fault differently to any of the defendants, or asking for jury instructions or a verdict form that would enable juries to apportion fault among the six defendants. If the Aearo subsidiaries were, in fact, responsible parties in this litigation, and thus should have been subject to independent liability determinations during the bellwether trials, it was a costly error to omit any such argument until now." *Id.* at 4-5.

- "In post-trial briefing on statutory cap issues in the *Wayman* and *Vaughn* cases, the defendants stood firm that '3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate parties for purposes of this litigation illusory.' *See Vaughn v. 3M*,

7:20cv134, Dkt. 179 at 10; *Wayman v. 3M*, 7:20cv149, Dkt. 194 at 4. This was the dispositive issue under the applicable law, which imposed noneconomic damages caps on a per defendant basis. *See* Colo. Rev. Stat. § 13-21-102.5(3)(a),(c); *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1366 (Colo. 1994). For the *Wayman* and *Vaughn* cases, this meant the difference between a nearly $1 million damages cap based on a single defendant, 3M Company, and a $6 million cap based on six defendants. Of note, the defendants argued that the two plaintiffs should not be permitted to receive six times the statutory cap for a single defendant after making the wholly inconsistent "strategic decision" to pursue the six defendants collectively as "3M" at trial and for the entirety of the litigation. The Court agreed, and relying on the defendants' argument, applied the nearly $1 million statutory cap for a single defendant, which in turn significantly reduced the two plaintiffs' damages awards—to the defendants' financial benefit. *See Wayman*, 7:20cv149, Dkt. 198; *Vaughn*, 7:20cv134, Dkt. 181." Dkt. 3386, at 5-6.

Accordingly the Court held "that 3M's new narrative bears the hallmark characteristics of a successor liability defense" and would not be well taken, given the history of its positions in this MDL. Plaintiffs submit that reasoning should apply here, *id.*, particularly because 3M Company's core defense against judicial estoppel from the *Cupit* motion—that it supposedly only applies to purely "factual" issues— is incorrect as a matter of law. The law within this Circuit and without is clear that even purely legal issues are subject to judicial estoppel, and that mixed questions of fact and law like successor liability (as 3M Company's own previous citations indicate) are certainly subject to judicial estoppel.[7]

---

[7]     *See, e.g.*, *Korman v. Iglesias*, 2018 WL 4410226, at *3 n.2 (S.D. Fla. June 28, 2018), *R&R adopted*, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd*, 778 F. App'x 680 (11th Cir. 2019) ("The Eleventh Circuit has not distinguished between issues of fact and law when ruling on the applicability of judicial estoppel. Thus, regardless of whether we classify the authorship of the Song as an issue of fact or as an issue

**B.**   **3M is Collaterally Estopped From Disclaiming its Full Liability for CAEv2-Related Injuries**

In addition to judicial estoppel, 3M Company is also collaterally estopped from now disclaiming its full and independent liability. The Eleventh Circuit looks to the following factors to determine whether a party is collaterally estopped from taking a different position in subsequent litigation, like these cases:

(1) The issue at stake must be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior suit;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and

(4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

---

of mixed fact and law, judicial estoppel still applies."); *see also Hefland v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) ("The greater weight of federal authority, however, supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is … a statement of fact or a legal assertion. The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.") (collecting cases from First, Third, Seventh Circuits); *see also Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) ("The doctrine [of judicial estoppel] has not been uniformly adopted by federal courts…"); Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4477.3 (3d ed.) ("[L]egal positions are advanced in litigation with respect to specific fact situations, and most assertedly inconsistent positions are likely to involve some elements of both law and fact. Little would be left of judicial estoppel if any trace of law were to defeat preclusion. Judicial estoppel may properly apply even when the facts are clear and only legal positions have changed, so long as the underlying facts are constant.").

9

*Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (quoting *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)).

Here, there is clearly an identity of issues on 3M's full and independent liability between the Wave cases and the bellwether trials. Whether 3M Company is fully and independently liable for pre-2010 CAEv2-related injuries has been tried multiple different times in the bellwether cases in this MDL, including bellwether trials (such as the *Adkins* trial) where ***all*** CAEv2 usage and injury occurred before 3M Company even acquired the Aearo Defendants. Nearly every bellwether involved such pre-2010 usage and injury, and several, straddled the pre- and post-2010 period. Accordingly, in addition to identity of issues, it is also clear that 3M Company actually litigated successor liability, even if it did not explicitly invoke that concept—juries could not find that 3M Company was liable for pre-2010 acts unless it held 3M Company was directly and independently liable for the Aearo Defendants' CAEv2 liabilities.

Next, when juries found for the plaintiffs in the various bellwether trials, it was necessary for them to find that 3M Company was fully liable for those injuries. They did not find that only the Aearo Defendants were liable for pre-2010 acts or injuries, and 3M did not ask to apportion fault among itself and its subsidiaries, even though it demonstrated the ability to request apportionment in each bellwether trial. Dkt. 3386. Similarly, when the juries found for the Defendants, they absolved ***all***

10

Defendants, indicating that their verdicts hinged on issues other than 3M Company's liability vis-à-vis the Aearo Defendants (*e.g.*, case specific injury). This consistency (a) shows that 3M Company's own liability was critical and necessary for findings against 3M Company, and (b) removes any concerns under the Supreme Court's decision, in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), that offensive collateral estoppel should be employed when previous verdicts are not inconsistent on the precluded issue.[8]

And it is also crystal clear that 3M had an opportunity to address these issues in every bellwether trial. For these reasons, 3M Company is collaterally estopped from contesting its full and independent liability for CAEv2-related injuries, therefore rendering summary judgment for Plaintiffs on that issue appropriate.

### C.    3M Has Waived its Position That it Has no Liability for CAEv2 That Were Sold by the Aearo Entities, and Not by 3M.

Questions of waiver based on a party's litigation conduct are for the court to resolve. *Grigsby & Associates, Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1354 (11th Cir. 2011). Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *Rubinstein v. Yehuda*, 38 F.4th 982, 995 (11th Cir. 2022). Waiver may be explicit, or it may be implied through

---

[8]    Similarly, there is no risk of unfairness to 3M Company, given that it had the opportunity ***19 different times*** to obtain a different trial result on its full and independent liability. *Id.*

conduct if the conduct makes out a clear case. *Air Prod. and Chem., Inc. v. La. Land and Exploration Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989); *Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *6 (M.D. Fla. July 1, 2022).

A defendant may waive a defense if the district court, after considering the relevant circumstances, determines that the defendant's litigation conduct gave the plaintiff a reasonable expectation that the defendant intended to defend the suit on the merits. *Cottrell v. DeVillers*, No. 2:20-CV-5354, 2022 WL 2340884, at *8 (S.D. Ohio June 29, 2022) (*citing Blessing v. Chandrasekhar*, 988 F.3d 889, 895 (6th Cir. 2021)). "[A] party's litigation conduct can generally waive affirmative defenses, including equitable defenses." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A.*, 247 F. Supp. 3d 76, 99 (D.D.C. 2017).

These waiver principles apply to 3M's newly-concocted position that it has no liability for the Aearo Entities' sales of CAEv2 to the military, or for injuries first suffered from using the CAEv2 before 2008 or 2010. 3M has previously argued that it had a right to remain silent and not assert a successor liability defense because that is not an affirmative defense and is a plaintiff's burden to prove. 3M, through its litigation conduct, however, waived any defense that it is not liable for CAEv2 that was designed and sold by the Aearo Entities, therefore rendering summary judgment for Plaintiffs on that issue appropriate.

**D.    Ordinary Application of Successor Liability Law Also Warrants Summary Judgment on 3M's Full and Independent Liability**

The final reason 3M Company is fully and independently liable for CAEv2-related injuries is ordinary application of successor liability. 3M Company itself put this at issue in the MDL via its recent Short Form Answers in the *Wave* cases, as well as its statements indicating that it believes successor liability remains a live issue for all remaining CAEv2 lawsuits, thus indicating its belief that the issue must be decided in this Court or any other court overseeing a remanded wave case.

### 1.    Relevant Facts for 3M Company's Successor Liability

The key facts applicable to 3M Company's successor liability are not in dispute. In 2008, 3M Company purchased all of the equity of the Aearo Defendants, becoming their 100% owner. Declaration of Jennifer M. Hoekstra dated October 4, 2022 ("Hoekstra Decl."), Ex.11. The acquisition agreement was governed by Delaware law. *Id.* In 2010, 3M Company "upstreamed" the Aearo Defendants' hearing protection business (including the CAEv2 business) into 3M Company itself, providing a nearly $1 billion receivable to the Aearo Defendants for that exchange. *Id.*, Ex. 16 at 6. Brian Myers oversaw that transition, *id.*, Ex. 13, Aug. 16 Tr. 118:22–25., and, as the Court has seen in multiple different bellwether trials, every key employee involved with the CAEv2 from the Aearo days became 3M Company employees—including Mr. Berger, Mr. Kieper, Mr. Myers, and others. *Id.*, Hoekstra Decl. ¶¶ 10-13, 20. 3M Company then sold the CAEv2 directly under

its own name and branding until 2015, when 3M Company (at Mr. Myers' direction) quietly stopped selling the CAEv2 after Moldex discovered the Flange Report. *Id.*, Exs. 17 and 18.

In 2016, Moldex-Metric brought a *qui tam* lawsuit against 3M Company. *See United States ex rel. Moldex-Metric, Inc. v. 3M Co.*, 3:16-cv-1533, Dkt. 1 at 2, 5-6 (D.S.C. May 12, 2016). That lawsuit, which referred to 3M Company as "3M/Aearo," *see generally id.*, alleged wrongdoing and damage to the government for the entirety of the time that first the Aearo Defendants and then 3M Company sold CAEv2 to the military. *Id.* at 14-17. The government subsequently intervened in that case. *Id.*, Dkt. 22. Then, in the parties' settlement agreement, 3M Company—and ***only*** 3M Company—settled the claims for the entire CAEv2 sales period (including the pre-acquisition period). *See id.*, Dkt. 23, Ex. 1. At no time in that *qui tam* litigation did 3M point the finger at Aearo or otherwise disclaim any portion of liability for all CAEv2-related injuries the government suffered from the companies' fraudulent sales.

Subsequently, in this MDL, 3M Company has continued the same practice with respect to taking on full liability for CAEv2-related injuries, as exemplified by it not only acquiescing to listing itself as a fully liable defendant in each of the 16 bellwether trials (and 19 verdicts) but doing so in cases (such as the *Adkins* bellwether trial) that involved ***only*** pre-Aearo acquisition CAEv2 use. Dkt. 3386, at

14

4. Similarly, 3M Company has argued in post-trial briefing in the *Wayman* and *Vaughn* trials that it not only shares full liability for CAEv2 injuries, but that "3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate parties for purposes of *this litigation* illusory." *Id.* at 5 (quoting same).

Finally, also relevant to this discussion is that 3M Company is a Delaware corporation with its primary place of business in Minnesota,[9] and that the Aearo Defendants were at all relevant times Indiana-based businesses. Dkt. 959 ¶¶ 16-20.

### 2. Each potentially relevant state has the same basic law on successor liability

Regardless of whether one applies Indiana, Minnesota, or Delaware law, successor liability exists for an acquiring corporation in four general situations: (1) where there was an implied or express agreement to assume liabilities; (2) there a fraudulent sale of assets done for the purpose of evading liability; (3) a purchase is a *de facto* consolidation or merger; or (4) where the purchaser is a mere continuation of the seller. *See Ziese & Sons Excavating, Inc. v. Boyer Const. Corp.*, 965 N.E.2d 713, 722 (Ind. Ct. App. 2012); *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98

---

[9] *See* 3M Company's 2021 SEC Form 10-K, at 1, *available at* https://s24.q4cdn.com/834031268/files/doc_financials/2021/q4/2021-3M-10-K.pdf; see also https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=be2c506f-a4d4-e011-a886-001ec94ffe7f.

(Minn. 1989); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at \*7 (Del. Super. Apr. 13, 1988) (citing *Fehl v. S. W.C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977)).

Plaintiffs are unaware of any state that does not include implied or express assumption of liabilities as a basis for successor liability. Some states are more *expansive* in when they will apply successor liability—such as the product line exception[10]—but Plaintiffs are unaware of narrower exceptions that have any effect on this motion.

### 3.   Regardless of other bases for successor liability, it is clear that 3M Company impliedly assumed CAEv2 liabilities

Although there are strong bases to argue that the 2010 upstreaming constituted either a *de facto* consolidation/merger or rendered 3M Company a mere continuation of the Aearo Defendants' hearing protection business, the Court need not wade into those issues now because 3M Company's actions since 2010 clearly demonstrate that it impliedly assumed all CAEv2-related liabilities. After upstreaming the Aearo Defendants' hearing protection business into 3M Company, the latter settled all CAEv2 liabilities with the government in the *qui tam* case, indicated throughout this

---

[10]    *See*, *e.g.*, *Ramirez v. Armsted Industries, Inc.*, 86 N.J. 332 (1981) (holding that a corporation which acquires all or substantially all of the manufacturing assets of another corporation and undertakes essentially the same manufacturing operation as the selling corporation bears successor liability for injuries from those products).

MDL via words and actions that it was independently liable for all CAEv2 liabilities, submitted itself as the primary defendant for CAEv2 injuries in 16 different bellwether trials (representing 19 different verdicts), and did so for cases that not only spanned the pre- and post-acquisition periods (thereby incurring liability for 3M Company for the pre-acquisition portions of those cases), but also for purely pre-acquisition injury cases (*e.g.*, *Adkins*).

This long history of indisputable conduct indicates that 3M Company impliedly assumed all CAEv2-related liabilities with either the 2008 acquisition or the 2010 upstreaming (or both). Put differently, 3M Company's history in this case and before reflects "two truths—that 3M Company is directly and independently responsible for the CAEv2 liability in this litigation and that its subsidiaries are parties in name only." Dkt. 3386 at 9. Thus, regardless of whether the Court applies Delaware, Minnesota, or Indiana law on successor liability, 3M Company is liable under any and all.

**E.    In the alternative, Plaintiffs Move to Strike the Amended Claims and Defenses in 3M Company's Answers in Wave Cases**

As this Court is aware, 3M Company has never explicitly asserted a defense against its full and independent liability before now, and in fact was found to have such full and independent liability by multiple different juries. The about-face the Court and Plaintiffs are now witnessing in 3M Company's new Short Form Answers—which are essentially amendments to the Master Answer—is plainly

Aearo bankruptcy-related. But Plaintiffs are aware of no case law holding that shifting positions in order to obtain litigation leverage through a parallel bankruptcy satisfies Rule 16(b)'s "good cause" requirement. And, even if 3M could establish good cause, Rule 15(a) (which underlies Rule 16(b) when pleading amendments are at issue) still requires that 3M Company not engage in undue delay or have a dilatory motive for amending its Answer, and that an amendment not unduly prejudice its opponent.

The Eleventh Circuit has "also recognized that district courts have the inherent power to strike a pleading as part of their inherent powers to manage their dockets." *Whipple v. Johnson*, 2020 WL 8615598, at *1 (11th Cir. Aug. 27, 2020). Indeed, "the power to strike a pleading, is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions." *State Exch. Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982). The key to unlocking a court's inherent power is a finding of bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). A finding of bad faith is warranted where a party knowingly or recklessly raises a frivolous argument. *Id.* "A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

If a proposed amendment is futile (which is assessed under a standard equivalent to Rule 12(b)(6)), then the Court may reject it on that basis alone. The Short Form Answers—which contend 3M Company is not fully and independently

18

liable for CAEv2-related injuries, whether incurred before or after the 2008 Aearo acquisition and subsequent 2010 upstreaming—are futile for two independent reasons: judicial and collateral estoppel. *See supra*. Even if that were not the case, it is clear that 3M Company violates Rule 16(b)'s good cause requirements, as well as Rule 15(a)'s prohibitions on dilatory and prejudicial amendments. It is plainly obvious that 3M Company is trying to inject successor liability issues into this MDL extraordinarily late in the process and, most likely, as a way to use its proposed amendment as some yet-to-be-determined hook for a motion in the Aearo Defendants' bankruptcy. Such motivations are clearly improper, come too late, fail to satisfy the requisite burdens, and therefore are improper under Rules 16(b) and 15(a).

Pretrial Order No. 17 and the Court's recent Orders that 3M Company file Short Form Answers (*e.g.*, Dkt. 3467) do not change this conclusion. Although PTO 17 allowed 3M Company to amend to add defenses at a later point, it did not purport to change Rule 15's or 16's requirements regarding such amendments, particularly after such notable events as the close of general fact discovery (Wave 1) or where changing allegations or adding defenses explicitly contradict extended litigation positions and admissions in the Master Answer (all Waves).[11] And, in its recent

---

[11]   For example, 3M Company admits multiple times in the currently-operative Master Answer.

Orders requiring 3M Company to file Shot Form Answers, the Court noted that "to the extent 3M Company denies the successor liability allegations in the plaintiffs' amended complaints, or otherwise raises any defense as to successor liability, the plaintiffs may file an appropriate motion addressed to those issues within 14 days after the amended answer is filed in their cases." This is the "appropriate motion addressed to those issues."

### F.   If the Court Determines There is a Triable Issue of Fact, 3M Company's Successor Liability Defense Puts at Issue Several Pieces of Evidence it Previously Convinced the Court to Exclude

Although Plaintiffs believe the Court should grant their motion, they note that if 3M Company convinces the Court there is a triable issue of material fact regarding its full and independent liability, that will put at issue several categories of evidence 3M Company previously convinced the Court to exclude via motions *in limine* and, in certain instances, with Plaintiffs' agreement. These include at least the *qui tam* settlement, press release regarding the same from the government, and each of the previous CAEv2 plaintiff bellwether verdicts. The reason these categories of evidence will be relevant is because each shows the ways in which 3M Company confirmed that it impliedly or expressly assumed the Aearo Defendants' CAEv2-related liabilities. Each is thus a critical basis for any successor liability showing Plaintiffs must make at trial. Therefore, if the Court denies this motion and Plaintiffs must once again try 3M Company's full and independent liability—this time, with

3M Company actively trying to deny that liability rather than its previous acquiescence—they ask for a ruling that these categories of evidence are relevant and may be introduced to all future juries in CAEv2-related cases.

## III.   <u>**CONCLUSION**</u>

For the above reasons, Plaintiffs respectfully request that the Court rule 3M Company is fully and independently liable for all CAEv2-related injuries (if proven at trial), regardless of when they occurred.

DATED:  October 4, 2022         By   */s/ Bryan F. Aylstock*
                                                Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

Shelley V. Hutson, Co-Lead Counsel
(Admitted Pro Hac Vice)
Texas State Bar No. 00788878
CLARK, LOVE & HUTSON, GP
440 Louisiana Street, Suite 1600
Houston, TX 77002
Tel.: (713) 757-1400
shutson@triallawfirm.com

Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
SEEGER WEISS LLP
77 Water Street, 8th Floor
New York, NY 10005
Tel.: (212) 587-0700
cseeger@seegerweiss.com

Adam B. Wolfson, Executive Committee
(Admitted Pro Hac Vice)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000

**Counsel for Plaintiffs**