# EXHIBIT 7

                  Confidential - Pursuant to Protective Order

 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF FLORIDA
 2                    PENSACOLA DIVISION
 3
      IN RE: 3M COMBAT ARMS   )   Case No.
 4    EARPLUG PRODUCTS        )   3:19md2885
      LIABILITY LITIGATION    )
 5    _____  )   Judge M. Casey
                              )   Rodgers
 6    THIS DOCUMENT RELATES   )   Magistrate Judge
      TO ALL CASES            )   Gary R. Jones
 7
 8              FRIDAY, OCTOBER 18, 2019
 9      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                      - - -
11           Videotaped deposition of Brian
12   Myers, held at the offices of KIRKLAND &
13   ELLIS LLP, 300 North LaSalle, Chicago,
14   Illinois, commencing at 9:00 a.m., on the
15   above date, before Carrie A. Campbell,
16   Registered Diplomate Reporter, Certified
17   Realtime Reporter, Illinois, California &
18   Texas Certified Shorthand Reporter, Missouri
19   & Kansas Certified Court Reporter.
20                      - - -
21
              GOLKOW LITIGATION SERVICES
22         877.370.3377 ph | 917.591.5672 fax
                    deps@golkow.com
23
24
25

Confidential - Pursuant to Protective Order

```
 1                  (Myers 30(b)(6) Exhibits 1, 2,
 2         3, 4, 5, 6, 7, 8, 9 and 10 marked for
 3         identification.)
 4                  VIDEOGRAPHER:  Please begin.
 5                  DIRECT EXAMINATION
 6    QUESTIONS BY MR. CARTMELL:
 7         Q.    Good morning, Mr. Myers.
 8         A.    Good morning.
 9         Q.    My name is Tom Cartmell.  It's
10    very nice to meet you this morning.  I'm
11    going to be asking you questions today.
12                  I think you've had your
13    deposition taken before; is that correct?
14         A.    That's correct.
15         Q.    I know of at least two
16    litigations in the past in which you've given
17    your depositions as a witness on behalf of
18    Aearo and 3M; is that correct?
19         A.    I have -- I have given at least
20    two depositions.
21         Q.    Are there more than those two,
22    do you think?
23         A.    I don't -- I don't recall.
24         Q.    Okay.  You understand the
25    process, however.  You understand I'll ask
```

Confidential - Pursuant to Protective Order

```
 1          Q.   Okay.  And your role at that
 2   time, I believe, included involvement in the
 3   marketing department or the marketing related
 4   to that product, including marketing pieces
 5   and literature and the production of the
 6   product; is that fair?
 7               MR. NOMELLINI:  Form.
 8               THE WITNESS:  So as a business
 9        manager, I was involved with the
10        marketing aspects of it.
11            What -- the second part you
12        said?
13               MR. NOMELLINI:  Could you break
14        that up, Tom?
15               MR. CARTMELL:  Yeah, let me --
16        that was a bad question.  Let me start
17        over.
18   QUESTIONS BY MR. CARTMELL:
19          Q.   When the Combat Arms Earplugs
20   version 2 that we're talking about in this
21   case was launched onto the market in the
22   United States, I think you've testified that
23   you were a business manager or a product
24   manager for that product; is that right?
25          A.   That's correct.
```

Confidential - Pursuant to Protective Order

 1       Q.      Okay.  And was that a position
 2   in the marketing department at Aearo as of
 3   that time?
 4       A.      It would have been considered a
 5   marketing position.
 6       Q.      Okay.  And I don't want to get
 7   too far afield.  We'll get back into that.  I
 8   wanted to introduce you a little bit to the
 9   jury.
10               But let me ask you this:  Do
11   you understand that you have been identified
12   by 3M as a corporate witness to discuss
13   certain topics that we've asked for testimony
14   related to?
15       A.      I do understand that.
16       Q.      Okay.  And the company 3M has
17   specifically designated you, or you are their
18   corporate designee, to talk about certain
19   topics, correct?
20       A.      Yes, that's my understanding.
21       Q.      Do you understand that in that
22   capacity your testimony is giving testimony
23   as the company?
24               MR. NOMELLINI:  Calls for a
25       legal conclusion.

```
 1                You can answer.
 2                THE WITNESS:  I suppose that
 3      was my assumption.
 4   QUESTIONS BY MR. CARTMELL:
 5      Q.    Okay.  And you understand your
 6   testimony can bind the company?
 7                MR. NOMELLINI:  Same objection.
 8                You can answer.
 9                THE WITNESS:  I'm going to be
10      as truthful as I can.
11   QUESTIONS BY MR. CARTMELL:
12      Q.    Okay.  Now, I represent
13   plaintiffs in the multidistrict litigation,
14   in re: 3M Combat Arms Product Liability
15   Litigation.
16                Do you understand that?
17      A.    That you are representing --
18      Q.    Plaintiffs, including soldiers,
19   around America who have brought claims
20   against 3M.
21      A.    Yes.
22      Q.    Okay.  And Aearo, the company
23   Aearo.
24                Do you understand that?
25      A.    I didn't know there was an
```

1       Aearo anymore, but...

2               Q.      And there may not be, but...

3                       Do you understand, sir, as you

4       sit here today that there are thousands of

5       soldiers around America making claims against

6       3M related to the Combat Arms version 2

7       earplugs?

8                       MR. NOMELLINI:  Objection.

9               Outside the scope of the 30(b)(6)

10              notice.

11                      I'm going to instruct you not

12              to answer that question.

13                      MR. CARTMELL:  Well, I think

14              I'm entitled to understand what the

15              basis of his knowledge is as he sits

16              here as a corporate designee.  So I

17              don't think it's proper to tell him

18              not to answer it.

19                      MR. NOMELLINI:  Well, I

20              disagree.

21                      I'm instructing you not to

22              answer that question.

23      QUESTIONS BY MR. CARTMELL:

24              Q.      Are you going to listen to the

25      advice of your counsel?

Confidential - Pursuant to Protective Order

```
 1                THE WITNESS:  Yes, I have seen
 2         this.
 3     QUESTIONS BY MR. CARTMELL:
 4          Q.    So, Mr. Myers, Deposition
 5     Exhibits 1 and 2, the notices for these
 6     depositions, outlined certain topics that we
 7     have asked for testimony from the company,
 8     correct?
 9          A.    Yes, I think that's what I
10     understand this document does.
11          Q.    Okay.  And you, I take it, are
12     here today testifying on behalf of the
13     3M Corporation with knowledge about certain
14     testimony that you've been designated to
15     give; is that fair?
16          A.    That's correct.
17                MR. CARTMELL:  Mr. Nomellini,
18         would you go ahead, please, just for
19         the record, and state the topics by
20         number that Mr. Myers is prepared to
21         testify about?
22                MR. NOMELLINI:  Certainly.  So
23         with respect to the first 30(b)(6)
24         notice, Mr. Myers has been designated
25         as to topics 2, 6, 9, 11, 12 and 14 as
```

```
 1    what I think was noticed.
 2         Q.    Let's talk before we get into
 3    your testimony related to those subjects
 4    about what you did to prepare for your
 5    deposition today.
 6               Okay?
 7         A.    Okay.
 8         Q.    Why don't you go ahead and just
 9    tell us how much time it was that you've
10    spent preparing for your testimony related to
11    these topics.
12         A.    Okay.  So about seven days,
13    seven full days, were spent.  Yeah.
14         Q.    Seven full days, eight or nine
15    hours a day?
16         A.    Yeah, they were long days.
17         Q.    Longer than nine hours?
18         A.    I don't think so.
19         Q.    Okay.
20         A.    No.
21         Q.    How much of those 56, let's
22    say, to 70 hours that you spent preparing was
23    spent with attorneys?
24         A.    I was with attorneys during all
25    of that time.
```

Confidential - Pursuant to Protective Order

```
 1          Q.     Okay.  Did you do any
 2   preparation for this deposition on your own
 3   outside of the presence of your attorneys?
 4          A.     I probably looked through
 5   binders without the attorneys being present,
 6   or looked through materials.
 7          Q.     Okay.  So somewhere around 56
 8   to 70 hours with the attorneys.
 9                 How much time outside of that
10   were you preparing by looking through
11   documents?
12          A.     Maybe one or two hours.
13          Q.     I see.
14                 During your preparation, did
15   you interview any employees of 3M or former
16   employees of 3M?
17          A.     Yes, I did.
18          Q.     Did you bring notes of those
19   interviews with you today?
20          A.     I did.
21          Q.     Okay.  Other than spending time
22   with your attorneys for 56 to 70 hours,
23   interviewing other employees, former and
24   current of 3M, what else did you do?
25          A.     So I actually instructed some
```