# EXHIBIT 11

| | |
|---|---|
| **From:** | llambert@mmm.com |
| **Sent:** | 11/14/2007 10:47:54 PM |
| **To:** | CN=Steven J. Beilke/OU=LA-Legal/O=3M/C=US; Iwan.Michael@dorsey.com; CN=Jed D. Larkin/OU=US-Corporate/O=3M/C=US@3M-Corporate; capeterson1@mmm.com; dlfleming@mmm.com; neschmidt@mmm.com; jrallison@mmm.com; pmeagher@mmm.com; ejmaki@mmm.com; jfvoegeli@mmm.com; sjlosinski@mmm.com; kghanson@mmm.com; mcfaricy@mmm.com |
| **Cc:** | gmlarson@mmm.com; kfprice@mmm.com |
| **Subject:** | Executed Titan Merger Agreement |
| **Attachments:** | GC Non-IP Disclosure Schedules to Merger Agreement.DOC; ATT7YF46; GC IP Disclosure Schedules to Merger Agreement.DOC |
| **Importance:** | Normal |

The Project Titan merger agreement has been executed. The communications plan will be initiated first thing tomorrow morning. A fully executed copy of the merger agreement along with disclosure schedules is attached for your reference. Congratulations and thank you all for your great support on this one. Louis

Louis B. Lambert
Office/Mobile: (651) 736-6739
Fax: (651) 732-7766
Email: llambert@mmm.com



PLAINTIFFS'
TRIAL EXHIBIT
**P-GEN-01196**

Confidential - Subject to Protective Order

P-GEN-01196.2

**SCHEDULES TO**

**AGREEMENT AND PLAN OF MERGER**

among

**AEARO HOLDING CORP.,**

**3M COMPANY**

and

**TITAN ACQUISITION SUBSIDIARY, INC.**

November 14, 2007

On even date herewith, 3M Company, a Delaware corporation ("Parent"), Titan Acquisition Subsidiary, Inc., a Delaware corporation ("Acquisition Sub"), and Aearo Holding Corp., a Delaware corporation ("Company") are entering into an Agreement and Plan of Merger (the "Merger Agreement").  All capitalized terms not defined in these schedules (as amended or supplemented in accordance with the Merger Agreement, the "Schedules") shall have the meanings ascribed to them in the Merger Agreement, unless the context otherwise requires.

Subject to the immediately following sentence hereof, the representations and warranties of the Company in the Merger Agreement are made and given subject to the disclosures in these Schedules.  Regardless of the existence or absence of cross-references, the disclosure of any matter in any Schedules shall be deemed to be a disclosure for all other Schedules if, in each case, it is reasonably apparent from the information disclosed that another Schedule is also applicable.  The section headings in these Schedules are for convenience of reference only and shall not be deemed to alter or affect the meaning or interpretation of any information disclosed herein or any provision of the Merger Agreement.

The listing of any matter shall expressly not be deemed to constitute an admission by the Company, or to otherwise imply, that any such matter is required to be disclosed under the Merger Agreement.  In particular, (1) certain matters are disclosed below that may not be required to be disclosed because of certain minimum thresholds or materiality standards set forth in the Merger Agreement, (2) the disclosure of any such matter does not mean that it meets or surpasses any such minimum thresholds or materiality standards and (3) no disclosure in the Schedules relating to any possible breach or violation of any agreement, law or regulation shall be construed as an admission or indication that any such breach or violation exists or has actually occurred.  In no event shall the listing of such matters in the Schedules be deemed or interpreted to expand the scope of the Company's representations and warranties contained in the Agreement.  All attachments to the Schedules are hereby incorporated by reference into the Schedules in which they are directly or indirectly referenced.

The information contained herein is in all events subject to the Confidentiality Agreement.

1173933v13

AEARO HOLDING CORP.

Schedule 1.2
Permitted Encumbrances

1.   Encumbrances related to the Company's first lien credit facility, including without limitation:

    a.    First Lien Credit Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the Lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bank of America, N.A., as Swing Line Lender, Bank of America, N.A., as L/C Issuer, Bear Stearns Corporate Lending Inc., as Syndication Agent, Deutsche Bank Securities Inc., as Documentation Agent, and Fifth Third Bank, as Senior Managing Agent

    b.    Mortgage, Security Agreement, Assignment of Leases, Rents and Profits, Financing Statement and Fixture Filing, made by Aearo Company I, as the Mortgagor, to Bank of America, N.A. as Mortgagee, dated as of June 1, 2007, for the following properties:

- Newark, Delaware
- Indianapolis, Indiana (Woodland Drive, Zionsville Road and 79th Street properties)

    c.    First Lien Security Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the other loan parties from time to time party thereto, Bank of America, N.A., as First Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    d.    First Lien Pledge Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc the other loan parties from time to time party thereto, Bank of America, N.A., as First Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    e.    First Lien Collateral Agency Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the other loan parties from time to time party thereto, Bank of America, N.A., as First Lien Credit Agreement Agent, and Bank of America, N.A., as Collateral Agent

    f.    First Lien Guaranty, dated as of March 24, 2006, among Pacer Holding Company, the subsidiary grantors from time to time party thereto, and Bank of America, N.A., as First Lien Administrative Agent

    g.    First Lien Charge Over Shares Relating to Aearo Limited, dated June 1, 2007, by Cabot Safety Intermediate Corporation, as Chargor, in favor of Bank of America, N.A., as First Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    h.    First Lien Share Pledge Agreement, dated June 1, 2007, between Cabot Safety Intermediate Corporation, as Pledgor, the Secured Parties, and Bank of America, N.A., as Collateral Agent

1173933v13

1

2.    Encumbrances related to the Company's second lien credit facility, including without limitation:

    a.    Amended and Restated Second Lien Credit Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bear Stearns Corporate Lending Inc., as Syndication Agent, and Deutsche Bank Securities Inc., as Documentation Agent

    b.    First Amendment of Mortgage, Security Agreement, Assignment of Leases, Rents and Profits, Financing Statement and Fixture Filing, made by Aearo Company I, as the Mortgagor, to Bank of America, N.A. as Agent and Mortgagee, dated as of June 1, 2007, for the following properties:

- Newark, Delaware
- Indianapolis, Indiana (Woodland Drive, Zionsville Road and 79th Street properties)

    c.    Amended and Restated Second Lien Security Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the other loan parties from time to time party thereto, Bank of America, N.A., as Second Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    d.    Amended and Restated Second Lien Guaranty, dated as of June 1, 2007, among Aearo Holding Corp., the subsidiary guarantors from time to time parties thereto, and Bank of America, N.A., as Second Lien Administrative Agent

    e.    Second Lien Collateral Agency Agreement, dated as of June 1, 2007, among Aearo Technologies Inc., the other grantors from time to time party thereto, Bank of America, N.A., as Second Lien Credit Agreement Agent, and Bank of America, N.A., as Collateral Agent

    f.    Amendment and Restatement Agreement, dated June 1, 2007, relating to a Second Lien Share Pledge Agreement dated March 24, 2006, between Cabot Safety Intermediate Corporation, as Pledgor, The Second Lien Secured Parties, represented in the Agreement by Bank of America, N.A., as Second Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    g.    Amended and Restated Second Lien Pledge Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the other loan parties from time to time party thereto, Bank of America, N.A., as Second Lien Collateral Agent, and Bank of America, N.A., as Control Agent

    h.    Second Lien Charge Over Shares Relating to Aearo Limited, dated June 1, 2007, by Cabot Safety Intermediate Corporation, as Chargor, in favor of Bank of America, N.A., as Second Lien Collateral Agent, and Bank of America, N.A., as Control Agent

3.    Encumbrances related to the borrowing from Toronto-Dominion Bank by Aearo Canada Limited

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294213

P-GEN-01196.6

AEARO HOLDING CORP.

Schedule 3.2(a)
Shares

List consisting of seven (7) pages is attached hereto.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294214

AEARO HOLDING CORP.

Schedule 3.2(a)
Shares

| Shareholder | Common [12] | Series A Preferred [12] |
|---|---|---|
| **Management** | | |
| Ark Capital Investments, LLC | 80,973.00000 | 723.485 |
| Thomas R. D'Amico and Carol J. D'Amico, Co-Trustees of the Thomas R. D'Amico Revocable Trust u/d/t dated August 10, 2006 | 57,935.00000 | 513.641 |
| Floyd, James H. | 72,556.00000 | 715.800 |
| Gannon, Thomas A. | 2,375.00000 | 19.442 |
| Robert B. Hebert IRA, Charles Schwab & Co., Inc. Custodian | 2,500.00000 | 25.923 |
| Hebert, Robert B. | 43,250.00000 | 25.923 |
| Kulka, Jeffrey S. | 66,363.00000 | 571.994 |
| Mallitz, M. Rand | 55,708.00000 | 480.180 |
| McLain Capital Partners, LLC | 21,930.00000 | 0.000 |
| McLain, Michael A. | 205,505.00000 | 2,130.907 |
| James M. Phillips and Carol E. Phillips, Trustees of the James M. Phillips Trust dated December 19, 2000 | 42,434.00000 | 440.004 |
| Phillips, James M. | 3,000.00000 | 0.000 |
| Schwalm, Eric K. | 1,250.00000 | 12.961 |
| Warren, III, D. Garrad | 86,102.00000 | 776.668 |
| **Subtotal** | **741,881.00000** | **6,436.928** |
| **Investors** | | |
| Permira Europe III Co-Investment Scheme | 41,796.07079 | 433.388 |
| Permira Europe III GMBH & Co. KG | 64,607.16397 | 669.918 |
| Permira Europe III L.P. 1 | 1,710,716.80831 | 17,738.594 |
| Permira Europe III L.P. 2 | 4,935,996.03962 | 51,181.838 |
| Permira Investments Limited | 121,893.91730 | 1,263.930 |
| **Subtotal** | **6,875,009.99999** | **71,287.668** |
| Ainslie, Adam | 187.00000 | 0.000 |
| Aufmann, Alberta A. | 1,080.00000 | 11.199 |
| Berthiaume, Paul A. | 610.00000 | 6.332 |
| Charton, Daryl A. | 4,084.00000 | 42.356 |
| Chew, Bruce | 273.00000 | 2.831 |
| Cimino, Michele | 3,750.00000 | 38.884 |
| Cook, Neil Robert | 8,519.00000 | 79.014 |
| Coss, David T. | 1,080.00000 | 11.199 |
| Crawford, Diane | 200.00000 | 0.000 |
| Dellomo, Maryan | 1,159.00000 | 12.025 |
| Doron, Paul T. | 1,032.00000 | 7.079 |
| Douar, Michel | 4,506.00000 | 46.725 |
| Dunn, Julie | 525.00000 | 5.444 |
| Marc F. Farris, Trustee of the Marc Farris Trust, dated November 17, 2006 | 6,689.00000 | 56.926 |
| Fecteau, Keith | 5,103.00000 | 52.921 |
| Fellows-Harris, Amy | 34.00000 | 0.354 |

1173933v13

AEARO HOLDING CORP.

Schedule 3.2(a)
Shares

| Shareholder | Common [1] [2] | Series A Preferred [1] [2] |
|---|---|---|
| John E. Flanagan and Linda M. Flanagan, Co-Trustees of The John E. Flanagan Living Trust Dated October 23, 2006 | 6,689.00000 | 56.926 |
| Folkesson, Jan | 187.00000 | 0.000 |
| France, Katherine | 187.00000 | 0.000 |
| French, Aaron | 546.00000 | 5.662 |
| Gabuzda Jr., George E. | 4,144.00000 | 42.980 |
| Gavin, Frank C. | 1,365.00000 | 14.154 |
| Gray, James F. | 5,033.00000 | 42.864 |
| Griggs, James B. | 200.00000 | 2.074 |
| Gross, Allan H. | 1,401.00000 | 14.529 |
| Gustafsson, Per | 5,556.00000 | 48.702 |
| Hamer, Jeffery L. | 3,000.00000 | 0.000 |
| Handy, Greg R. | 5,824.00000 | 60.396 |
| Hartz, Nils | 496.00000 | 0.000 |
| Henry, Paul D. | 1,000.00000 | 0.000 |
| Hill, Sherry | 340.00000 | 3.538 |
| Holub, Richard | 5,199.00000 | 53.915 |
| Igo, Gilbert R. | 5,503.00000 | 46.694 |
| Joyal, Brian | 200.00000 | 2.074 |
| Karlsson, Par | 249.00000 | 0.000 |
| Kastan, Jay | 3,434.00000 | 35.616 |
| Kelble, Keith M. | 2,000.00000 | 20.738 |
| Kemper, Wolfgang | 1,280.00000 | 11.199 |
| Kennedy, James M. | 1,380.00000 | 11.199 |
| Klett, George E. | 786.00000 | 8.159 |
| Klun, Robert T. | 6,204.00000 | 50.854 |
| Kuenz, James M. | 4,900.00000 | 38.884 |
| Rosemary J. Labanoski Living Trust, Rosemary J. Labanoski, Trustee, Ronald A. Labanoski, Trustee | 3,858.00000 | 35.863 |
| Lonergan, Kieran | 2,814.00000 | 29.189 |
| Magliana, John | 13,050.00000 | 124.429 |
| Maude, Daniel A. | 345.00000 | 1.769 |
| McCready, Ed | 0.00000 | 0.000 |
| Meer, James M. | 4,900.00000 | 7.777 |
| Melin, Lars | 2,061.00000 | 17.339 |
| Millar, Timothy A. | 6,521.00000 | 54.657 |
| Miller, Eric M. | 720.00000 | 7.466 |
| Mills, Donald E. | 1,620.00000 | 16.798 |
| Moses, Douglas | 800.00000 | 4.148 |
| Mullally, Ian C. | 6,276.00000 | 56.143 |
| Murphy, Peter | 7,902.00000 | 68.458 |
| Myers, Brian C. | 7,189.00000 | 62.110 |
| Nilsson, Sigvard | 4,743.00000 | 40.244 |
| Nordin, Henrik | 2,572.00000 | 23.953 |
| Nostin, Ann | 1,125.00000 | 11.665 |
| Peterson, Gregory P. | 1,667.00000 | 17.285 |
| Plesner, Neil | 1,080.00000 | 11.199 |

1173933v13

Confidential - Subject to Protective Order

## AEARO HOLDING CORP.

### Schedule 3.2(a)
### Shares

| Shareholder | Common [1][2] | Series A Preferred [1][2] |
|---|---|---|
| Power, Larry D. | 8,150.00000 | 77.777 |
| Pye, Steven | 1,575.00000 | 16.331 |
| Raines, Carl W. | 525.00000 | 0.000 |
| Renninger, Daniel J. | 1,080.00000 | 11.199 |
| Rocha, Javier Rodriguez | 5,952.00000 | 129.608 |
| Rozman, Roman | 1,341.00000 | 13.916 |
| Salce, John E. | 2,216.00000 | 22.978 |
| Salon, Martin C. | 6,639.00000 | 59.518 |
| Savage, David | 1,804.00000 | 18.716 |
| Seville, Alan | 0.00000 | 0.000 |
| Sneed, Jody L. | 3,974.00000 | 41.212 |
| Sullivan, Liza | 187.00000 | 0.000 |
| Sutton, Gary L. | 1,844.00000 | 19.114 |
| Svensson, Ulrik | 1,591.00000 | 13.909 |
| Throndsen, Ron | 3,133.00000 | 32.495 |
| Tremblay, Julie A. | 2,724.00000 | 28.247 |
| Vancelette, Earle | 7,799.00000 | 74.924 |
| Vernazza, Robert William | 5,112.00000 | 44.071 |
| Walker, Debra | 511.00000 | 5.308 |
| Whitehead, Nicola | 187.00000 | 0.000 |
| Wickstrom, Hans | 4,572.00000 | 41.976 |
| Wojnarowicz, John J. | 5,765.00000 | 53.569 |
| Wrinkle, Eileen | 33.00000 | 0.346 |
| Zielinski, Robert V. | 215.00000 | 2.229 |
| Zmetra, Guylaine | 1,224.00000 | 12.697 |
| **Subtotal** | **243,330.00000** | **2,255.078** |
| | | |
| **Total** | **7,860,220.99999** | **79,979.674** |

[1] The total number of shares of all classes of stock which the Corporation has authority to issue is 10,800,000 shares, consisting of 10,500,000 shares of Common Stock, $.01 par value per share, and 300,000 shares of preferred stock, $.01 par value per share, of which 232,000 shares are designated as Series A Preferred Stock.

[2] All shares of Common Stock and Series A Preferred Stock listed above are subject to the Stockholders' Agreement, dated as of March 24, 2006, among Aearo Holding Corp. and the holders thereof. The Stockholders' Agreement, which shall terminate upon the Effective Time of the Merger, contains certain preemptive rights.

[3] Amounts shown include 32,000 shares of Restricted Stock held by Mr. Hebert, 3,200 shares of Restricted Stock held by Mr. Meer, 3,000 shares of Restricted Stock held by Mr. Hamer, and 1,000 shares of Restricted Stock held by Mr. Henry. The shares of Restricted Stock were issued pursuant to the Corporation's 2006 Stock Incentive Plan and are subject to vesting and transfer restrictions under a Restricted Stock Agreement with each individual.

1173933v13

P_GEN-01196.10

# AEARO HOLDING CORP.

## Schedule 3.2(a)
## Options

| Name | Tranche A | | | Tranche B | | | Tranche C | | |
|------|-----------|---|---|-----------|---|---|-----------|---|---|
| *Exercise Price* | **$10.00** | **$12.10** | **$21.00** | **$30.00** | **$36.30** | **$63.00** | **$40.00** | **$48.40** | **$84.00** |
| **Management** | | | | | | | | | |
| Ark Capital Investments, LLC | 44,800 | | | 28,000 | | | 28,000 | | |
| Thomas R. D'Amico and Carol J. D'Amico, Co-Trustees of the Thomas R. D'Amico Revocable Trust u/d/t dated August 10, 2006 | 33,600 | | | 21,000 | | | 21,000 | | |
| Floyd, James H. | 43,475 | | | 23,500 | | | 23,500 | | |
| Gannon, Thomas A. | 4,500 | | | 2,500 | | | 2,500 | | |
| Hebert, Robert B. | 4,250 | | | 2,500 | | | 2,500 | | |
| Kulka, Jeffrey S. | 44,800 | | | 28,000 | | | 28,000 | | |
| Mallitz, M. Rand | 37,600 | | | 23,500 | | | 23,500 | | |
| McLain Capital Partners, LLC | 124,270 | | | 73,100 | | | 73,100 | | |
| Phillips, James M. | 27,000 | | | 15,000 | | | 15,000 | | |
| Schwalm, Eric K. | 5,000 | | | 2,500 | | | 2,500 | | |
| Warren, III, D. Garrad | 44,800 | | | 28,000 | | | 28,000 | | |
| **Subtotal** | **414,095** | | | **247,600** | | | **247,600** | | |
| Ainslie, Adam | 1,063 | | | 625 | | | 625 | | |
| Anderson, Nina | 1,250 | | | 625 | | | 625 | | |
| Aufmann, Alberta A. | 3,000 | | | 1,500 | | | 1,500 | | |
| Behrmann, Melissa | 1,000 | | | 500 | | | 500 | | |
| Berger, Elliot | 1,750 | | | 875 | | | 875 | | |
| Berthiaume, Paul A. | 2,000 | | | 1,000 | | | 1,000 | | |
| Bogdan, Bill | 1,250 | | | 625 | | | 625 | | |
| Borrelli, Wayne | 3,000 | | | 1,500 | | | 1,500 | | |
| Brockmeyer, Jan | 1,500 | | | 750 | | | 750 | | |
| Brown, James D. | | 1,250 | | | 625 | | | 625 | |
| Brown, Scott | 2,500 | | | 1,250 | | | 1,250 | | |
| Carlborg, Lars | 1,250 | | | 625 | | | 625 | | |
| Charton, Daryl A. | 4,500 | | | 2,250 | | | 2,250 | | |
| Chew, Bruce | 2,500 | | | 1,250 | | | 1,250 | | |
| Cimino, Michele | 6,000 | | | 3,000 | | | 3,000 | | |
| Cook, Neil Robert | 5,100 | | | 3,000 | | | 3,000 | | |
| Coons, Steven A. | | 1,250 | | | 625 | | | 625 | |
| Coss, David T. | 2,000 | | | 1,000 | | | 1,000 | | |
| Crawford, Diane | 800 | | | 500 | | | 500 | | |
| Daniels, John | 1,000 | | | 500 | | | 500 | | |
| Dellomo, Maryan | 2,000 | | | 1,000 | | | 1,000 | | |
| Dias, Vivian | 1,250 | | | 625 | | | 625 | | |
| Dixon, Dana | 1,000 | | | 500 | | | 500 | | |
| Doron, Paul T. | 3,150 | | | 1,750 | | | 1,750 | | |
| Douar, Michel | 4,500 | | | 2,250 | | | 2,250 | | |
| Dunn, Julie | 3,000 | | | 1,500 | | | 1,500 | | |
| Edginton, Jeff | 3,500 | | | 1,750 | | | 1,750 | | |

1173933v13

3M_MDL000294218

AEARO HOLDING CORP.

Schedule 3.2(a)
Options

| Name | Tranche A | | | Tranche B | | | Tranche C | | |
|---|---|---|---|---|---|---|---|---|---|
| *Exercise Price* | $10.00 | $12.10 | $21.00 | $30.00 | $36.30 | $63.00 | $40.00 | $48.40 | $84.00 |
| Eichelberger, Kris | 1,500 | | | 750 | | | 750 | | |
| Emilsson, Niklas | 1,250 | | | 625 | | | 625 | | |
| Erickson, Zane | 1,250 | | | 625 | | | 625 | | |
| Fallin, Donna | 2,000 | | | 1,000 | | | 1,000 | | |
| Fangeat, Sebastien | 1,500 | | | 750 | | | 750 | | |
| Mark F. Farris, Trustee of the Marc Farris Trust, dated November 17, 2006 | 4,800 | | | 3,000 | | | 3,000 | | |
| Fecteau, Keith | 4,000 | | | 2,000 | | | 2,000 | | |
| Fellows-Harris, Amy | 2,000 | | | 1,000 | | | 1,000 | | |
| John E. Flanagan and Linda M. Flanagan, Co-Trustees of The John E. Flanagan Living Trust Dated October 23, 2006 | 4,800 | | | 3,000 | | | 3,000 | | |
| Folkesson, Jan | 1,063 | | | 625 | | | 625 | | |
| France, Katherine | 1,063 | | | 625 | | | 625 | | |
| French, Aaron | 3,000 | | | 1,500 | | | 1,500 | | |
| Gabuzda Jr., George E. | 3,500 | | | 1,750 | | | 1,750 | | |
| Gaillard, Jean-Michel | 1,000 | | | 500 | | | 500 | | |
| Gavin, Frank C. | 4,500 | | | 2,250 | | | 2,250 | | |
| Gray, James F. | 3,600 | | | 2,250 | | | 2,250 | | |
| Gries, Dave | 1,250 | | | 625 | | | 625 | | |
| Griggs, James B. | 2,500 | | | 1,250 | | | 1,250 | | |
| Gross, Allan H. | 2,000 | | | 1,000 | | | 1,000 | | |
| Gustafsson, Per | 4,890 | | | 2,875 | | | 2,875 | | |
| Hamer, Jeffery L. | | 1,000 | | | 500 | | | 500 | |
| Handy, Greg R. | 5,000 | | | 2,500 | | | 2,500 | | |
| Hartz, Nils | 1,002 | | | 501 | | | 501 | | |
| Hellmann, Tommy | 1,250 | | | 625 | | | 625 | | |
| Henocq, Gildas | 1,250 | | | 625 | | | 625 | | |
| Henry, Paul D. | 1,250 | | | 625 | | | 625 | | |
| Hill, Sherry | 2,000 | | | 1,000 | | | 1,000 | | |
| Hjort, Patrick | 1,750 | | | 875 | | | 875 | | |
| Holub, Richard | 5,000 | | | 2,500 | | | 2,500 | | |
| Igo, Gilbert R. | 4,000 | | | 2,500 | | | 2,500 | | |
| Joyal, Brian | 3,500 | | | 1,750 | | | 1,750 | | |
| Karlsson, Par | 1,001 | | | 625 | | | 625 | | |
| Kastan, Jay | 4,500 | | | 2,250 | | | 2,250 | | |
| Kelble, Keith M. | 3,500 | | | 1,750 | | | 1,750 | | |
| Kemper, Wolfgang | 1,900 | | | 950 | | | 950 | | |
| Kennedy, James M. | 1,700 | | | 1,000 | | | 1,000 | | |
| Klee, Sharon R. | 2,000 | | | 1,000 | | | 1,000 | | |
| Klett, George E. | 3,500 | | | 1,750 | | | 1,750 | | |
| Klun, Robert T. | 5,200 | | | 3,250 | | | 3,250 | | |

1173933v13

3M_MDL000294219

## AEARO HOLDING CORP.

### Schedule 3.2(a)
### Options

| Name | Tranche A | | | Tranche B | | | Tranche C | | |
|---|---|---|---|---|---|---|---|---|---|
| *Exercise Price* | $10.00 | $12.10 | $21.00 | $30.00 | $36.30 | $63.00 | $40.00 | $48.40 | $84.00 |
| Knauer, Richard | 1,500 | | | 750 | | | 750 | | |
| Kuenz, James M. | 4,600 | | | 2,875 | | | 2,875 | | |
| Labanoski, Rosemary J. | 3,600 | | | 2,000 | | | 2,000 | | |
| LeClair, Jim | 2,500 | | | 1,250 | | | 1,250 | | |
| Leister, Neil | 1,000 | | | 500 | | | 500 | | |
| Liew, Vincent | 1,250 | | | 625 | | | 625 | | |
| Lin, Thomas | 1,500 | | | 750 | | | 750 | | |
| Lonergan, Kieran | 4,500 | | | 2,250 | | | 2,250 | | |
| Magliana, John | 5,950 | | | 3,500 | | | 3,500 | | |
| Marston, Monica | 1,500 | | | 750 | | | 750 | | |
| Masterson, Peter | 1,250 | | | 625 | | | 625 | | |
| Maude, Daniel A. | 1,575 | | | 875 | | | 875 | | |
| McCready, Ed | 1,000 | | | 500 | | | 500 | | |
| Meer, James M. | 1,350 | | | 750 | | | 750 | | |
| Melin, Lars | 1,710 | | | 950 | | | 950 | | |
| Millar, Timothy A. | 4,250 | | | 2,250 | | | 2,250 | | |
| Miller, Eric M. | 2,000 | | | 1,000 | | | 1,000 | | |
| Miller, Jim | 1,250 | | | 625 | | | 625 | | |
| Mills, Donald E. | 2,500 | | | 1,250 | | | 1,250 | | |
| Mills, Joy | 1,250 | | | 625 | | | 625 | | |
| Moses, Douglas | 1,600 | | | 1,000 | | | 1,000 | | |
| Mullally, Ian C. | 4,888 | | | 2,875 | | | 2,875 | | |
| Murphy, Peter | 5,200 | | | 3,250 | | | 3,250 | | |
| Myers, Brian C. | 4,800 | | | 3,000 | | | 3,000 | | |
| Nevistich, Doug | 1,250 | | | 625 | | | 625 | | |
| Nilsson, Sigvard | 4,888 | | | 2,875 | | | 2,875 | | |
| Nordin, Henrik | 1,488 | | | 875 | | | 875 | | |
| Nostin, Ann | 2,500 | | | 1,250 | | | 1,250 | | |
| Peterson, Gregory P. | 1,750 | | | 875 | | | 875 | | |
| Plesner, Neil | 3,500 | | | 1,750 | | | 1,750 | | |
| Power, Larry D. | 5,850 | | | 3,250 | | | 3,250 | | |
| Pye, Steven | 2,500 | | | 1,250 | | | 1,250 | | |
| Raines, Carl W. | 2,975 | | | 1,750 | | | 1,750 | | |
| Renninger, Daniel J. | 3,500 | | | 1,750 | | | 1,750 | | |
| Richard, Josh | 1,250 | | | 625 | | | 625 | | |
| Roney, Deborah | 2,000 | | | 1,000 | | | 1,000 | | |
| Rozman, Roman | 3,000 | | | 1,500 | | | 1,500 | | |
| Salce, Art | 1,250 | | | 625 | | | 625 | | |
| Salce, John E. | 1,250 | | | 625 | | | 625 | | |
| Salon, Martin C. | 3,600 | | | 2,250 | | | 2,250 | | |
| Sanchez, Manuel | 1,250 | | | 625 | | | 625 | | |
| Santoro, Marc | 1,600 | | | 800 | | | 800 | | |
| Savage, David | 4,500 | | | 2,250 | | | 2,250 | | |
| Seville, Alan | 1,250 | | | 625 | | | 625 | | |

1173933v13

AEARO HOLDING CORP.

Schedule 3.2(a)
Options

| Name | Tranche A | | | Tranche B | | | Tranche C | | |
|---|---|---|---|---|---|---|---|---|---|
| *Exercise Price* | $10.00 | $12.10 | $21.00 | $30.00 | $36.30 | $63.00 | $40.00 | $48.40 | $84.00 |
| Smith, William | 1,500 | | | 750 | | | 750 | | |
| Sneed, Jody L. | 4,500 | | | 2,250 | | | 2,250 | | |
| Spooner, Frank | 1,250 | | | 625 | | | 625 | | |
| Suchecki, Emma | 1,500 | | | 750 | | | 750 | | |
| Sullivan, Liza | 1,063 | | | 625 | | | 625 | | |
| Sutton, Gary L. | 2,000 | | | 1,000 | | | 1,000 | | |
| Svensson, Ulrik | 1,750 | | | 1,000 | | | 1,000 | | |
| Tam, Ander | 2,500 | | | 1,250 | | | 1,250 | | |
| Throndsen, Ron | 4,000 | | | 2,000 | | | 2,000 | | |
| Trazzi, Marco | 1,250 | | | 625 | | | 625 | | |
| Tremblay, Julie A. | 3,000 | | | 1,500 | | | 1,500 | | |
| Tsai, Eileen J. | | | 1,000 | | | 500 | | | 500 |
| Van Vliet, Leon | 1,250 | | | 625 | | | 625 | | |
| Vancelette, Earle | 5,176 | | | 2,875 | | | 2,875 | | |
| Vann, Tom | 1,000 | | | 500 | | | 500 | | |
| Vernazza, Robert William | 4,888 | | | 2,875 | | | 2,875 | | |
| Viele, Dave | 2,000 | | | 1,000 | | | 1,000 | | |
| Walker, Debra | 3,000 | | | 1,500 | | | 1,500 | | |
| Webster, Gary | 1,500 | | | 750 | | | 750 | | |
| White, John | 1,000 | | | 500 | | | 500 | | |
| Whitehead, Nicola | 1,063 | | | 625 | | | 625 | | |
| Wickstrom, Hans | 2,975 | | | 1,750 | | | 1,750 | | |
| Wojnarowicz, John J. | 3,400 | | | 2,000 | | | 2,000 | | |
| Wrinkle, Eileen | 2,000 | | | 1,000 | | | 1,000 | | |
| Yuan, Jason | 1,250 | | | 625 | | | 625 | | |
| Zielinski, Robert V. | 1,750 | | | 875 | | | 875 | | |
| Zmetra, Guylaine | 2,000 | | | 1,000 | | | 1,000 | | |
| **Subtotal** | **332,871** | **3,500** | **1,000** | **177,701** | **1,750** | **500** | **177,701** | **1,750** | **500** |
| | | | | | | | | | |
| **Total** | **746,966** | **3,500** | **1,000** | **425,301** | **1,750** | **500** | **425,301** | **1,750** | **500** |

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294221

P-GEN-01196.14

AEARO HOLDING CORP.

Schedule 3.2(b)
<u>Company Subsidiaries</u>

List consisting of two (2) pages is attached hereto.

1173933v13

1

Confidential - Subject to Protective Order

3M_MDL000294222

P-GEN-01196.15

**AEARO HOLDING CORP.**
Company Subsidiaries

| Name of Subsidiary of Aearo Holding Corp. | State or Other Jurisdiction of Incorporation | Number of Authorized Shares | Number of Issued and Outstanding Shares | Owner |
|---|---|---|---|---|
| Aearo Technologies Inc. | Delaware | 4,000,000 | 10 | Aearo Holding Corp. |
| Aearo Corporation | Delaware | 400,000 | 100 | AC Safety Holding Corp. (n/k/a Aearo Technologies Inc.) |
| Aearo Company I | Delaware | 1,000 | 100 | Aearo Corporation |
| Eastern Safety Equipment Co., Inc. (in dissolution) | New York | | 3 Common Voting | Cabot Safety Corporation (n/k/a Aearo Company I) |
| Aearo Trading (Shenzhen) Co., Limited | China | N/A | $500,000.00 Registered Capital | Aearo Company I |
| Cabot Safety Intermediate Corporation | Delaware | 100 | 100 | Aearo Company I |
| Aearo Proteccion Laboral SA (in dissolution) | Spain | 10,000 | 10,000 | Cabot Safety Intermediate Corporation |
| Aearo GMBH | Germany | Nominal value (120,000 Deutsche Marks) | Nominal value (120,000 Deutsche Marks) | Cabot Safety Intermediate Corporation (60,000 Deutsche Marks) Peltor AB (60,000 Deutsche Marks) |
| Aearo Canada Limited | Canada | Unlimited | 100 | Cabot Safety Intermediate Corporation |
| Aearo SRL | Italy | Nominal value (23,400 Euros) | Nominal value (23,400 Euros) | Cabot Safety Intermediate Corporation |
| Aearo Limited | United Kingdom | 15,000,000 | 3,759,688 | Cabot Safety Intermediate Corporation (2,518,991) Peltor AB (1,240,697) |
| Aearo SARL (in dissolution) | France | 1,000 | 1,000 | Cabot Safety Intermediate Corporation |
| Aearo do Brasil LTDA. | Brazil | 55,854 | 55,854 | Cabot Safety Intermediate Corporation (55,844) Aearo Company I (10) |

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294223

| Aearo LPE Holding SARL | France | 475 | 475 | Cabot Safety Intermediate Corporation |
| Aearo LPE SA | France | 242,500 | 242,500 | Aearo LPE Holding SARL |
| Aearo Peltor AB | Sweden | 1,000 | 1,000 | Cabot Safety Intermediate Corporation |
| Peltor Holding AB | Sweden | 878,050 | 878,050 | Aearo Peltor AB |
| Peltor AB | Sweden | 20,000 | 20,000 | Peltor Holding AB |
| Peltor Forvaltnings AB | Sweden | 1,000 | 1,000 | Peltor AB |
| Peltor Communications AS | Norway | 1,000 | 1,000 | Peltor AB |
| Peltor Limited | United Kingdom | | 7,999 | Aearo Limited |
| Walter Gyr AG | Switzerland | 100 | 100 | Peltor AB |
| Aearo Mexico Holding Corp. | Delaware | 100 | 100 | Cabot Safety Intermediate Corporation (70)<br>Javier Rodriguez Rocha (30) |
| Aearo Technologies de Mexico S.A. de C.V. | Mexico | 50,000 | 50,000 | Aearo Mexico Holding Corp. (49,999)<br>Cabot Safety Intermediate Corporation (1) |

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294224

AEARO HOLDING CORP.

Schedule 3.4
Consents and Approvals

A.    The following agreements require the Company to obtain consent to the transactions contemplated by the Merger Agreement:

1.    First Lien Credit Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the Lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bank of America, N.A., as Swing Line Lender, Bank of America, N.A., as L/C Issuer, Bear Stearns Corporate Lending Inc., as Syndication Agent, Deutsche Bank Securities Inc., as Documentation Agent, and Fifth Third Bank, as Senior Managing Agent

2.    Amended and Restated Second Lien Credit Agreement, dated effective as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bear Stearns Corporate Lending Inc., as Syndication Agent, and Deutsche Bank Securities Inc., as Documentation Agent

3.    Master Equipment Lease Agreement between National City Leasing Corporation and Aearo Company I, dated as of May 19, 2000

4.    Lease Agreement between A.S.V. Enterprises Corp. and Aearo Canada Limited, dated March 13, 2000, and amended December 14, 2004 (Barrie, Ontario)

5.    Industrial Lease Agreement between Gateway Brentwood, Inc. (and successor-in-interest Mid-Atlantic (Pencader) Industrial LLC), and Aearo Company, dated April, 2003, and amended April 5, 2006 (Newark, Delaware)

B.    The following agreements or items require the Company to provide notice of the transactions contemplated by the Merger Agreement:

1.    EMC Corporation Continuous Coverage Product Maintenance Schedule on behalf of Aearo Corporation in effect from March 23, 2007 to September 30, 2007

2.    Sales Distribution Agreement between NHK Spring Co. Ltd. and Aearo Company, dated as of September 1, 2002

3.    Supply Agreement between E.D. Bullard Company and Aearo Company, dated April 21, 2004

1173933v13

1

4.      Prescription Safety Eyewear Agreement between E.I. du Pont de Nemours and Company and Aearo Company, dated effective January 1, 1999, and amended as of May 31, 2006

5.      Equipment Lease Agreement between Aearo Company and Carl Zeiss Optical, Inc., dated May 27, 2004

6.      Services Agreement between Ozburn-Hessey Logistics, as successor in interest to ODC Integrated Logistics and Aearo Company, dated as of November 25, 1999, and amended as of September 27, 2007

7.      Under the International Traffic in Arms Regulations ("ITAR"), Aearo Corporation, a subsidiary of the Company, must comply with certain notice and filing obligations following the Effective Time of the Merger.

1173933v13

1

Confidential - Subject to Protective Order

3M_MDL000294226

AEARO HOLDING CORP.

Schedule 3.5
Unaudited Financial Statements; Exceptions to Company Group Financial Statements

1.      The attached financial statements provided pursuant to Section 3.5 of the Merger Agreement are unaudited and do not include a statement of stockholders' equity, which will be provided.

2.      Exceptions to Company Financial Statements – Since September 30, 2006:

None.

1173933v13

1

P-GEN-01196.20

**AEARO HOLDING CORP. AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS**
(Dollars in Thousands)

| | Successor | | | | Predecessor |
|---|---|---|---|---|---|
| | Three Months Ended June 30, <u>2007</u> | Three Months Ended June 30, <u>2006</u> | Nine Months Ended June 30, <u>2007</u> | Three Months Ended June 30, <u>2006</u> | Six Months Ended March 31, <u>2006</u> |
| Net Sales | $ 133,097 | $ 121,639 | $   379,232 | $ 121,639 | $   218,475 |
| Cost of goods sold | 66,880 | 86,064 | 189,285 | 86,064 | 111,843 |
| Gross Profit | 66,217 | 35,575 | 189,947 | 35,575 | 106,632 |
| Selling and administrative | 37,451 | 33,949 | 111,629 | 33,949 | 161,414 |
| Research and technical services | 3,521 | 2,892 | 9,948 | 2,892 | 5,205 |
| Amortization expense | 2,606 | 2,586 | 7,818 | 2,586 | 2,633 |
| Other charges (income), net | 2,503 | 1,365 | 972 | 1,365 | 299 |
| Operating income (loss) | 20,136 | (5,217) | 59,580 | (5,217) | (62,919) |
| Interest expense, net | 16,732 | 10,950 | 39,561 | 10,950 | 35,075 |
| Income (loss) before income taxes | 3,404 | (16,167) | 20,019 | (16,167) | (97,994) |
| Provision (Benefit) for income taxes | 1,326 | 510 | 6,250 | 510 | (37,362) |
| Net income (loss) | $ 2,078 | $ (16,677) | $   13,769 | $ (16,677) | $   (60,632) |

2

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294228

P-GEN-01196.21

**AEARO HOLDING CORP. AND SUBSIDIARIES**
**CONSOLIDATED BALANCE SHEETS**
(Dollars in Thousands)

| | June 30, 2007 | September 30, 2006 |
|---|---|---|
| **ASSETS** | | |
| CURRENT ASSETS: | | |
| Cash and cash equivalents | $ 23,887 | $ 24,174 |
| Accounts receivable (net of allowance of doubtful account of $1,931 and $1,654, respectively) | 78,967 | 75,869 |
| Inventories | 60,370 | 54,150 |
| Deferred income taxes and prepaid expenses | 41,626 | 40,450 |
| Total current assets | 204,850 | 194,643 |
| | | |
| LONG TERM ASSETS: | | |
| Property, plant and equipment, net | 54,747 | 56,201 |
| Other assets | 22,489 | 15,509 |
| Other intangible assets, net | 352,179 | 358,780 |
| Goodwill | 397,269 | 389,510 |
| | | |
| Total assets | $ 1,031,534 | $ 1,014,643 |
| | | |
| **LIABILITIES** | | |
| CURRENT LIABILITIES: | | |
| Current portion of long term debt | $ 5,139 | $ 3,943 |
| Accounts payable and accrued liabilities | 71,878 | 71,640 |
| U.S. and foreign income taxes | 2,417 | 1,184 |
| Total current liabilities | 79,434 | 76,767 |
| | | |
| LONG TERM LIABILITIES: | | |
| Long term debt | 670,514 | 509,455 |
| Deferred income taxes | 109,644 | 109,070 |
| Other liabilities | 17,842 | 15,108 |
| | | |
| Total liabilities | 877,434 | 710,400 |
| | | |
| COMMITMENTS AND CONTINGENT LIABILITIES | | |
| Minority Interest | 90 | - |
| | | |
| **SHAREHOLDERS' EQUITY** | | |
| Preferred stock, $.01 par value | 2 | 2 |
| - Authorized - 300,000 shares | | |
| - Issued and outstanding - 231,152 and 230,967 shares, respectively | | |
| Common stock, $.01 par value | 79 | 78 |
| - Authorized - 10,500,000 shares | | |
| - Issued and outstanding - 7,762,033 and 7,760,158 shares, respectively | | |
| Paid in capital | 339,426 | 320,244 |
| Accumulated earnings (deficit) | (22,695) | (19,100) |
| Accumulated other comprehensive income | 7,198 | 3,019 |

3

1173933v13

3M_MDL000294229

|  | | |
|---|---|---|
|  | 324,010 | 304,243 |
| Less preferred stock in treasury (151,173 and 0 shares, respectively) | 170,000 | - |
| Total stockholders' equity | 154,010 | 304,243 |
|  | | |
| Total liabilities and stockholders' equity | $   1,031,534 | $   1,014,643 |

4

Confidential - Subject to Protective Order

3M_MDL000294230

**AEARO HOLDING CORP. AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CASH FLOWS**
(Dollars in Thousands)

| | Successor | | Predecessor |
| | Nine Months Ended June 30, 2007 | Three Months Ended June 30, 2006 | Six Months Ended March 31, 2006 |
|---|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | | |
| Net income (loss) | $ 13,769 | $ (16,677) | $ (60,632) |
| Adjustments to reconcile net income (loss) to cash provided by operating activities - | | | |
| Depreciation | 9,450 | 2,344 | 4,916 |
| Amortization of intangible assets and deferred financing costs | 11,305 | 2,905 | 3,275 |
| Inventory purchase accounting adjustment | - | 22,422 | - |
| Deferred income taxes | (353) | (4,815) | (37,850) |
| Foreign currency exchange (gain) loss | (1,568) | 2,134 | - |
| Stock based compensation | 477 | - | - |
| Other, net | (59) | 27 | (694) |
| Changes in assets and liabilities - | | | |
| Accounts Receivable | (1,364) | (5,532) | (3,315) |
| Inventories | (5,071) | 2,411 | (6,614) |
| Income taxes payable | 1,017 | 3,833 | (1,828) |
| Accounts payable and accrued liabilities | (1,745) | (53,741) | 116,823 |
| Prepaid and deferred assets | (609) | 2,708 | (1,707) |
| Other assets | 557 | (856) | (169) |
| Other liabilities | 3,622 | 436 | 2,010 |
| Net cash provided by operating activities | 29,428 | (42,401) | 14,215 |
| | | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | | |
| Additions to property, plant and equipment | (6,526) | (4,444) | (3,781) |
| Cash paid for acquisitions, net of cash | (4,353) | (401,647) | - |
| Cash paid for investment | (2,338) | | - |
| Proceeds provided by disposals of property, plant and equipment | 6 | 3 | 32 |
| Net cash used for investing activities | (13,211) | (406,088) | (3,749) |
| | | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | | |
| Capital infusion | 330 | 275,100 | - |
| Repayment of credit facility | (1,829) | (650) | - |
| Stock option exercises and subscription | 1,017 | - | 129 |
| Proceeds from term loans | 525,000 | 510,000 | - |
| Repayment of term loans | (365,775) | (123,234) | - |
| Repayment of 8.25% senior subordinated notes | | (175,000) | - |
| Repayment of mortgage | | (1,808) | - |
| Repayment of note | | (54,000) | - |
| Debt issuance costs | (9,458) | (11,250) | - |
| Redemption of preferred stock | (170,000) | - | - |

5

1173933v13

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Proceeds from minority investment in subsidiary | | 90 | | - | - |
| Repayment of credit facility | | | | | (312) |
| Repayment of capital lease obligations | | (231) | | (73) | (142) |
| Net cash used for financing activities | | (20,856) | | 419,085 | (325) |
| EFFECT OF EXCHANGE RATE ON CASH | | 4,352 | | 4,609 | (339) |
| | | | | | |
| INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | | (287) | | (24,795) | 9,802 |
| | | | | | |
| CASH AND CASH EQUIVALENTS, BEGINNING OF PERIOD | | 24,174 | | 39,870 | 30,068 |
| | | | | | |
| CASH AND CASH EQUIVALENTS, END OF PERIOD | $ | 23,887 | $ | 15,075 | $ 39,870 |
| | | | | | |
| CASH PAID FOR: | | | | | |
| Interest | $ | 35,194 | $ | 9,716 | $ 10,246 |
| Income taxes | $ | 4,652 | $ | 740 | $ 2,770 |

6

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294232

AEARO HOLDING CORP.

Schedule 3.6
Exceptions to Absence of Material Change (Since June 30, 2007)

We participated in Menards' Safety Line Review on May 16, 2007.  On June 11, we signed their Vendor Agreement and Advertising Rebate Agreement and assumed that we had retained the business.  This was corroborated by the buyer.

In August, we learned from the buyer that Bacou Dalloz (Stanley brand) had been allowed to make a further offer, and we were no longer competitive.  On September 6, Mike McLain and Gary Warren attended a meeting with the buyer and his management. We were told that we were still 10% too high.

This additional discount would have resulted in Aearo losing money on this business.  We decided not to meet the offer, and as a result, ended our relationship with Menards until the next line review.

1173933v13

1

P-GEN-01196.26

AEARO HOLDING CORP.

Schedule 3.7
Exceptions to Compliance with Law; Permits

None.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294234

AEARO HOLDING CORP.

Schedule 3.8
Litigation

***No listing under this Schedule 3.8 shall be construed to constitute a waiver of the attorney-client privilege or the attorney's work product with respect to documents and files related to the respective matters.***

A.   Litigation:

1.     *Silica and Asbestos Litigation and Claims*: Aearo Company (or its Affiliates) is a defendant in lawsuits by plaintiffs alleging that they have respiratory medical conditions, such as asbestosis, mesothelioma, silicosis, coal worker's pneumoconiosis or related long latency diseases, relating to exposure to asbestos, silica or coal, and that such conditions result, in part, from the use of respirators which, allegedly, were defectively designed or manufactured.

2.     *Liquidator, SCP Belat and Desprat, of GIE GPS vs. Aearo LPE (an affiliate of Aearo Company), Rostaing and Pontvert,* March, 2006, Tribunal de Commerce, Bourg en Bresse, FR: The liquidator seeks to recover from defendants "social indebtedness" arising from the termination of employees of GIE GPS in connection with its bankruptcy in the approximate amount of $280,000 US, together with interest.  On July 7, 2006, Aearo's counsel filed a statement of defense with the Court.  No ruling or procedural schedule has been issued to date. No insurance coverage is available or being sought.

3.     *CitiCapital Technology Finance, Inc. (f/k/a EAB Leasing Corp.) v. Aearo Company I, successor by merger to V.H. Industries, Inc. et al.,* Superior Court of Gaston County, NC, Case No. 06-CvS-5547, December 5, 2006:  Complaint alleges that Aearo Company I is obligated as a corporate guarantor of the obligations of Royal American Company LLC pursuant to an equipment lease, and that approximately $955K is due and owing.   The matter is under investigation and Aearo Company I is vigorously defending this claim.  Aearo has filed cross-claims against co-guarantors and indemnitors, as well as a third party beneficiary claim against a potential third party defendant.  A joint settlement has been reached with CitiCaptial requiring Aearo to pay $375K, subject to issuance of a release and dismissal of the primary litigation.  No insurance coverage has been sought or denied.  An accrual exists on Aearo's balance sheet of $625K.

4.     *Ahmed Long vs. 531 W. 19th LLC and Turner Construction Company ("Turner"); and Turner vs. Aearo Technologies, Aearo Company, AO Safety (collectively "Aearo") and IKAR-GmbH,* Supreme Court of NY, Bronx County, Case No. 17321/06, July 25, 2007:  Third Party Complaint alleges that Aearo and IKAR should indemnify Turner against losses arising out of Ahmed Long's complaint against Turner for bodily injury damages.   The matter is under investigation.   Aearo has requested indemnification from IKAR, the manufacturer of the fall protection device allegedly worn by Mr. Long at the time of the accident.  Insurance coverage has not been confirmed, but a decision is pending.  Coverage is subject to a $250K SIR.

1

Confidential - Subject to Protective Order

B.  Active Settlement Agreements:

1.     *Moldex/Metric, Inc. and Cabot Corporation (assignor to Company Group)*, confidential Settlement Agreement, May 10, 1990:  relating to patent infringement, unfair competition and Noise Control Act of 1972 claims.  Stipulation and Consent for Entry of Final Judgment and Stipulation and Order of Dismissal entered on or about May 29, 1990 in *Moldex/Metric, Inc. vs. Cabot Corporation*, U.S. District Court, Central District of CA, Case No. 83-1289-ER (Px).

2.     *Cabot Corporation and Cabot Safety Corporation (assigned to Company Group) on the one hand, and on the other, Bilsom AB and Bilsom International, Inc.*, Agreement to Settle Claims, dated as of January 1, 1994:  relating to dismissal of claims before the U.S. Patent and Trademark Office, and recognition of trademark rights in the color yellow for earplugs.

3.     *Gargoyles, Inc. and Aearo Company,* Settlement Agreement, dated as of October 20, 1998:  relating to resolution of patent infringement claims, grant of perpetual license agreement in favor of Aearo Company, and dismissal of litigation.  Consent Judgment entered November 16, 1998 in *Gargoyles, Inc. vs. Aearo Company,* U.S. District Court, District of MA, Case No. 96-12344-NMG.

4.     *Moldex-Metric, Inc., on the one hand, and on the other, Aearo Company, and its subsidiary, Cabot Safety Intermediate Corporation,* confidential Settlement Agreement and Mutual Release, dated as of November 16, 2000:  relating to trademark infringement claims and counterclaims.  Judgment and Permanent Injunction Pursuant to Stipulation entered in *Moldex-Metric, Inc. vs. Aearo Company,* U.S. District Court, Central District of CA, December 21, 2000, Case No. CV99-9592-LGB (RNBx).

5.     *Aearo Company, Cabot Safety Intermediate Corporation, Bacou-Dalloz USA Safety, Inc. and Howard Leight Industries, LLC,* confidential Settlement Agreement, dated as of February 9, 2005:  relating to trademark and patent infringement claims and counterclaims; and dismissal of litigation in Case No. 03-CV-00235-DFH-VSS (S.D. Ind); Case No. 03-CV-1406 (S.D. Ind); Case No. 04-CV-0547 RLY-WTL (S.D. Ind.); and Case No. 04-CV-02069 JDT-TAB (S.D. Ind.).

6.     *Aearo Company I, V H Industries, Inc. d/b/a SafeWaze, and D B Industries, Inc. d/b/a DBI/SALA,* confidential Settlement Agreement and Release, dated as of September 12, 2005:  relating to patent infringement claims and counterclaims; underlying litigation in *D B Industries, Inc. d/b/a DBI/SALA vs. Aearo Company I and V H Industries, Inc. d/b/a SafeWaze,* U.S. District Court, District of MN, Case No. 05-CV-00623 (JMR/FLN) dismissed.

7.     *Aearo Company and Oakley, Inc.* Settlement Agreement, effective as of November 11, 2005:  relating to alleged infringement by certain of Aearo Company's safety eyewear relative to Oakley's U.S. Patent Nos. D446,803S and 5,208,614; and trademark Registration Nos. 1,984,501 and 2,237,511.  In exchange for Aearo Company agreeing to the validity of the patents and modifying certain of its eyewear, Oakley agreed to release Aearo Company from related claims.

2

1173933v13

3M_MDL000294236

8.      *Aearo Company and Oakley, Inc.* confidential Settlement Agreement, dated as of May 23, 2006: relating to alleged infringement by certain of Aearo Company's eyewear relative to certain of Oakley's U.S. patents, payment of consideration by Aearo Company, discontinuance of sale of the accused eyewear, dismissal of litigation brought by Oakley in *Oakley, Inc. vs. Aearo Company,* U.S. District Court, S.D. of CA, Case No. 06-CV-829, and release of claims by Oakley.

9.      *Uvex Arbeitsschutz GMBH, on the one hand, and on the other, Aearo Company and Cabot Safety Intermediate Corporation,* Settlement Agreement, dated as of September 17, 2006: acknowledgement of Aearo's intellectual property rights in packaging known as the "pillow pack," yellow colored foam earplugs and blue colored cords in conjunction with foam earplugs; Uvex' agreement to discontinue using a pillow pack type packaging, yellow foam earplugs with blue cords, and related sales and marketing activities; and related releases.

10.     *Aearo Company, Cabot Safety Intermediate Corporation and Eye Ojo Corp. d/b/a Greattech Vision,* Settlement Agreement, dated as of December 12, 2006: relating to alleged infringement by Greattech of Cabot Safety's trademark for the color yellow, the mark "E-A-R" and the mark "CLASSIC," all of which are licensed to Aearo. Greattech agreed to discontinue selling, distributing, importing or advertising yellow colored earplugs, or any Aearo products without Aearo's permission. Greattech also agreed not to infringe any of Aearo's trademarks. In exchange, the parties released one another from all claims relating to the acts described in the agreement.

11.     *Pyramex Safety Products, LLC, on the one hand, and on the other, Aearo Company and Cabot Safety Intermediate Corporation,* Settlement Agreement, dated as of January 17, 2007: acknowledgement of Cabot's aspheric lens patents (among others), Pyramex' agreement to suspend sales of "3900" and "V4G" lines of eyewear, and related releases.

12.     *Intermint Company Limited and Hoi Kwok Ho, on the one hand, and Aearo Company I, on the other,* confidential Settlement Agreement and Release, dated as of February 21, 2007: relating to alleged infringement by Aearo Company's collapsible traffic cones of Intermint's U.S. Patent No. 6,338,311.

13.     *Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, on the one hand, and Eastern Safety Equipment Co., Inc. and Aearo Company I, d/b/a Aearo Company on the other hand,* confidential Settlement Agreement, effective as of January 1, 2007: relating to recovery of overpayment of defense costs by insurers and allocation of future defense costs between insurers and insureds.

14.     *Climb Tech, LLC and K.E. Guthrie & J.D. Schwartz Designs, LLC, on the one hand, and on the other, Aearo Corporation, Aearo Company I et al.,* confidential Settlement Agreement, dated as of April 6, 2007: relating to ClimbTech's patents for removable bolt anchors and trademarks; restricts Aearo's right to sell certain competing products; contains mutual releases and covenants not-to-sue.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294237

15.     *W.W. Grainger, Inc. and Willkie Farr and Gallagher on behalf of Aearo Company,* letter settlement agreement, effective as of February 7, 2007:  relating to reimbursement of costs to be incurred by W.W. Grainger, Inc. in defense of 19 coal worker claims alleging product liability.

16.     *Uvex Arbeitsschutz GMBH, on the one hand, and on the other, Aearo Company and Cabot Safety Intermediate Corporation,* Settlement letter Agreement from James Floyd of Aearo Limited to Dr. Herbert Schneck of Rau, Schneck & Hubner (counsel for Uvex), dated as of October 8 , 2007:  relating to Uvex's  "X-FIT "  mark and Aearo's use of its "UltraFit X " mark on hearing protection products.  The agreement requires that  any textual reference made by Aearo to the relevant Aearo product be written as "UltaFit X" and  requires  Aearo to use the "Ultrafit X" logo in a  particular graphical manner.

Any matters disclosed in Schedule 3.12(c) (<u>Intellectual Property Infringement</u>) or Schedule 3.14 (<u>Environmental Matters</u>) are incorporated herein by reference.

4

Confidential - Subject to Protective Order

3M_MDL000294238

P-GEN-01196.31

AEARO HOLDING CORP.

Schedule 3.9
Certain Liabilities

None.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294239

AEARO HOLDING CORP.

Schedule 3.10
Taxes (Since October 1, 2004)

None.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294240

AEARO HOLDING CORP.

Schedule 3.10(a)
Net Operating Loss

**Aearo Holding Corporation and Subsidiaries**
**State Loss Carryforwards**
**State NOLs as of 9/30/06**

| | 9/30/97 NOL Generated/ (Used) | 9/30/98 NOL Generated/ (Used) | 9/30/99 NOL Generated/ (Used) | 9/30/00 NOL Generated/ (Used) | 9/30/01 NOL Generated/ (Used) | 9/30/02 NOL Generated/ (Used) | 9/30/03 NOL Generated/ (Used) | 4/6/04 NOL Generated/ (Used) | 9/30/04 NOL Generated/ (Used) | 9/30/05 NOL Generated/ (Used) | 3/24/06 NOL Generated/ (Used) | 9/30/06 NOL Generated/ (Used) | Total Carryforwards as of 9/30/06 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Aearo Holding Corp & Subs - Post Apportionment NOLs** | | | | | | | | | | | | | |
| California | 241,114 | 128,401 | 36,572 | (119,919) | 31,363 | 49,710 | - | 222,253 | 165,843 | 213,545 | 1,001,490 | (122,220) | 1,848,151 |
| Minnesota | 120,379 | 122,593 | 21,408 | - | 30,303 | 42,830 | 147,471 | 114,765 | 40,738 | (41,305) | 284,413 | (29,529) | 854,066 |
| Total | 361,493 | 250,994 | 57,980 | (119,919) | 61,666 | 92,540 | 147,471 | 337,018 | 206,581 | 172,240 | 1,285,903 | (151,749) | 2,702,217 |
| **Aearo Holding Corp, Aearo Technologies, Inc., Aearo Corp., & Aearo Company I - Post Apportionment NOLs** | | | | | | | | | | | | | |
| Indiana | - | - | - | 8,220,867 | 7,231,314 | 8,386,901 | 5,099,710 | 6,521,376 | 7,857,389 | 8,323,400 | 19,075,613 | 5,121,147 | 75,837,717 |
| Total | - | - | - | 8,220,867 | 7,231,314 | 8,386,901 | 5,099,710 | 6,521,376 | 7,857,389 | 8,323,400 | 19,075,613 | 5,121,147 | 75,837,717 |
| **Aearo Company I & Cabot Safety Intermediate - Pre-Apportionment NOLs** | | | | | | | | | | | | | |
| New York | | | | 16,650,812 | 20,994,915 | 19,140,778 | 11,994,921 | 7,334,924 | 891,250 | - | 15,149,927 | (29,333,389) | 62,824,138 |
| Total | - | - | - | 16,650,812 | 20,994,915 | 19,140,778 | 11,994,921 | 7,334,924 | 891,250 | - | 15,149,927 | (29,333,389) | 62,824,138 |

1

Confidential - Subject to Protective Order

3M_MDL000294241

**Aearo Company I - Post Apportionment NOLs**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Connecticut | - | - | - | - | 128,886 | 18,126 | - | 22,229 | 21,135 | - | 113,979 | (152,513) | 151,842 |
| Florida | - | - | - | - | 241,777 | 259,032 | 150,444 | 215,645 | 214,277 | 389,503 | 623,797 | (284,114) | 1,810,361 |
| Georgia | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Illinois | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Kentucky | - | - | - | 83,704 | 77,912 | 92,872 | 69,834 | 89,754 | 94,382 | 389,503 | 623,797 | (198,293) | 1,323,465 |
| Louisiana | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Michigan | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Mississippi | - | - | - | 71 | 14,864 | 2,293 | - | 3,346 | 4,149 | (6,801) | 25,779 | (37,506) | 6,195 |
| New Jersey | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| North Carolina | - | - | - | - | - | - | - | - | - | 830,008 | 865,054 | (1,343,398) | 351,664 |
| Oklahoma | - | - | - | 763,506 | 1,079,810 | 814,153 | 511,475 | 586,142 | 585,042 | 767,102 | 677,401 | (861,921) | 4,922,710 |
| Pennsylvania | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Rhode Island | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| South Carolina | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Tennessee | - | - | - | 5,275 | 368,503 | 188,556 | 91,805 | 84,111 | 80,423 | 142,664 | 217,146 | (70,762) | 1,107,721 |
| Texas | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Wisconsin | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | - |
| Total | - | - | - | 5,275 | 368,503 | 188,556 | 91,805 | 84,111 | 80,423 | 142,664 | 217,146 | (70,762) | 1,107,721 |

**Aearo Company I - Pre - Apportionment NOLs**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Delaware | - | - | - | 16,650,812 | 20,994,915 | 19,140,778 | 11,663,640 | 14,008,805 | 16,039,535 | 20,176,804 | 34,350,177 | (15,194,069) | 137,831,397 |
| Maryland | N/A | N/A | N/A | N/A | N/A | 19,140,778 | 11,663,640 | 3,637,134 | 4,963,686 | - | 22,012,117 | (29,828,401) | 31,588,954 |
| Massachusetts | - | - | - | - | | 52,728,702 | - | 5,599,373 | 6,319,770 | 707,747 | 31,656,411 | (26,578,817) | 70,433,186 |
| Missouri | - | - | - | - | 20,994,915 | 19,140,778 | 11,663,640 | 14,008,805 | 16,039,535 | 20,176,804 | 34,350,177 | (15,049,366) | 121,325,288 |
| Total | - | - | - | 16,650,812 | 41,989,830 | 110,151,036 | 34,990,920 | 37,254,117 | 43,362,526 | 41,061,355 | 122,368,882 | (86,650,653) | 361,178,825 |

The various grouping breakouts indicate if state filings are stand alone for Aearo Company I or are grouped with other Aearo entities for filing purposes.

Post apportionment means:
The federal NOL generated in a loss year is adjusted by the state apportionment percentage - the taxable activity in a state's borders - for the loss year before the NOL is applied in a carryback or carryforward year. This post-apportioned NOL is then used to offset post-apportioned income in the year it is utilized.

Pre apportionment means:
The federal NOL generated in a loss year is carried forward or back without adjustment for state apportionment. The loss year federal NOL is applied against the utilization year federal income to determine taxable income before applying the apportionment percentage to derive the state taxable income.

2

P-GEN-01196.34

Confidential - Subject to Protective Order

3M_MDL000294242

**AEARO HOLDING CORP & SUBSIDIARIES**
**Federal NOL Summary**

| YEAR ENDING | AMOUNT GENERATED | AMOUNT UTILIZED | CONVERTED CONTRIBUTIONS | CARRYOVER |
|---|---|---|---|---|
| 9/30/1997 | 7,185,254 | 2,400,872 | 0 | 4,784,382 |
| 9/30/1998 | 8,125,629 | 0 | 0 | 8,125,629 |
| 9/30/1999 | 1,499,563 | 0 | 0 | 1,499,563 |
| 9/30/2000 | 0 | 0 | 0 | 0 |
| 9/30/2001 | 2,138,943 | 0 | 0 | 2,138,943 |
| 9/30/2002 | 2,914,005 | 0 | 0 | 2,914,005 |
| 9/30/2003 | 96,043 | 0 | 0 | 96,043 |
| 4/6/2004 | 9,870,073 | 0 | 0 | 9,870,073 |
| 9/30/2004 | 4,859,739 | 0 | 0 | 4,859,739 |
| 9/30/2005 | 0 | 0 | 113,143 | 113,143 |
| 3/24/2006 | 28,175,762 | 0 | 100,040 | 28,275,802 |
| 9/30/2006 | 0 | 0 | 11,616 | 11,616 |
| TOTAL PER US 1120, STATEMENT #25 | 64,865,011 | 2,400,872 | 224,799 | 62,688,938 |

| | |
|---|---|
| TOTAL NOL @ EOY 9/30/06 CARRIED FORWARD TO NEXT YEAR: | 62,688,938 |
| ESTIMATED NOL GENERATED FOR 9/30/07: | |
|     April 2006 stock option expense related to Permira transaction | 61,800,000 |
|     Estimated operating activities (2) | 4,800,000 |
| ESTIMATED NOL GENERATED FOR 10/01/07 to 1/31/08: | |
|     Stock Expense related to Titan Transaction (1) | 42,800,000 |
|     Operating activities (assume same as FY07, pro-rated) | 1,600,000 |
| TOTAL FEDERAL NOLS -approximate | 173,688,938 |

1) Stock Expense related to Titan Transaction estimated by use of following assumptions:
a) Common share value of $50 per share;
b) Strike prices of $10, $30 and $40 per share for Tranche A, B and C, respectively.
c) 1,606,318 unexercised options.  Previously exercised options excluded.
2) Updated from the $8.1M as distributed on 11/12.07 due to changes in Subpart F income estimates as part of final tax provision calculation.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294243

AEARO HOLDING CORP.

Schedule 3.11
Brokers' and Finders' Fees

1.      Permira Advisers, L.L.C. ("Permira") pursuant to that certain Professional Services Agreement among Aearo Holding Corp. (fka Pacer Holding Company), Aearo Technologies Inc., Aearo Company I and Permira, dated as of March 24, 2006.  Any transaction fee payable to Permira is a Transaction Related Expense.

2.      Goldman, Sachs & Co. ("Goldman") pursuant to that certain Engagement Agreement, dated as of August 6, 2007, by and between Aearo Holding Corp. and Goldman.  Any transaction fee payable to Goldman is a Transaction Related Expense.

1

1173933v13

Confidential - Subject to Protective Order

AEARO HOLDING CORP.

Schedule 3.12(a)
Exceptions to Intellectual Property Rights

None, except as otherwise disclosed in Schedule 3.12(c) (<u>Intellectual Property Rights</u> <u>Infringement</u>).

1

1173933v13

Confidential - Subject to Protective Order                                                    3M_MDL000294245

AEARO HOLDING CORP.

Schedule 3.12(c)
Intellectual Property Rights Infringement

The following infringement claims or litigations, if resolved adverse to the Company Group, would not be reasonably expected, individually or in the aggregate, to result in a Material Adverse Effect, but are being scheduled in the interest of full disclosure:

1.      *Cabot Safety Intermediate Corporation U.S. Trademark Application No. 77/078,357 Notice of Opposition of CUSTOME-A-R in International Class 9 filed by Custom Protect Ear, Inc., July 13, 2007:*   Custom Protect Ear, Inc. ("CPE") filed opposition to Cabot Safety Intermediate Corporation's ("CSIC") pending trademark application for "CUSTOME-A-R" alleging confusion over the virtual identical nature of CPE's mark (issued in Canada and pending before the USPTO) "CUSTOM PROTECT EAR." This matter is under review and investigation. No insurance coverage has been sought or denied.

2.      *Apothecary Products, Inc. v. Cabot Safety Intermediate Corporation, (a subsidiary of Aearo Company),* US Patent and Trademark Office, Trademark Trial and Appeal Board, Cancellation No. 92047259, March 21, 2007:   Petition by Apothecary Products, Inc. for cancellation of CSIC's trademark for "pillow pack" packaging for earplugs on the basis of allegations that the design of such packaging is functional, was obtained improperly, and has been abandoned. CSIC is vigorously defending the action if ongoing negotiations are unsuccessful, and has filed a motion to suspend the proceedings while the infringement suit described below is adjudicated. No insurance coverage has been sought or denied.

3.      *Aearo Company et al vs. Apothecary Products, Inc.,* US District Court for the Southern District of Indiana, Case No. 1:07-cv-0663-RLY-TAB, May 23, 2007: Complaint by Aearo for  declaratory judgment, trademark infringement and related claims relating to Aearo Company's "pillow pack" trademark. Apothecary Products, Inc. filed an answer and counterclaim seeking cancellation of the trademark and the recovery of its legal fees and costs. No insurance coverage has been sought or denied.

4.      *Cabot Safety Intermediate Corp. et al. vs. Arena Industries, LLC,* US District Court for the District of MA, Case No. 07-40164 FDS, June 29, 2007:   Amended complaint filed by CSIC alleging infringement of CSIC's US Patent No. 5,825,455 and 6,019,469 for an invention entitled "Aspheric Plano Eyewear" by Arena's product "Vyken Flakjak" and "Vyken Mozambik"; and requesting a declaratory judgment of non-infringement relative to Arena's claimed infringement by Aearo of Arena's US Patent Nos. 6,772,448 B1 and 6,994,433 B2; and US Design Patent Nos. D536,018S and D537,099S by Aearo Company's "Aspect/Centurian" and "GoggleGear" line of products. Arena has filed an answer denying infringement of the subject CSIC patents, asserting a counterclaim alleging the invalidity of CSIC's '455 and '469 patents, and alleging

1

1173933v13

   3M_MDL000294246

infringement by Aearo of Arena's US patent No. 6,994,433 B2.  No insurance coverage has been sought or denied.

5.      *Claim On Behalf of Waters Industries, Inc. and Michael Waters (collectively, "Waters"),* May 10, 2006:  Letter from Water's legal counsel alleges infringement of Waters' U.S. Patent No. 6,863,416 ("'416") by Aearo Company's LED lighted eyewear, "Light Vision LED Safety Eyewear."  A search of relevant "prior art" leads Aearo Company's legal counsel to conclude that the '416 patent is invalid.  Further, counsel has concluded that Aearo Company's eyewear does not infringe any claims of the '416 patent.  An appropriate response by Aearo Company's legal counsel was sent to Water's legal counsel and no return communication has been received by Aearo Company in over one year.

6.      *Claim of AustriAlpin Vertriebs GmbH,* February 5, 2007:  AustriAlpin claims that a buckle used in a fall safety harness sold by Aearo Company infringes its intellectual property rights set forth in International Design DM/045 484 relative to the "Cobra" buckle.  Aearo Company's legal counsel has identified no property rights in the buckle design that are enforceable in the US or outside of certain designated foreign countries where Aearo Company does not currently sell the safety harness with the accused buckle.  An appropriate response by Aearo Company's legal counsel was sent to AustriAlpin's legal counsel on June 8, 2007 and no response has been received to date.

7.      *Claim of Microelectrocis Research:*  Issues reflected in a letter dated November 3, 2005, to Michael A. McLain, Chairman and Chief Executive Officer, Aearo Company, from Michael Vicari, President of Microelectronics Research, alleging infringement by Aearo Company of Microelectronics' U.S. Patent No. 6,950,627.  No current information is available.

8.      *Cabot Safety Intermediate Corporation U.S. Trademark Application No. 78/753,888 for NIGHTHAWK in International Class 9 for "protective eyewear; safety eyewear; component parts thereof":*  An Office Action was issued by the USPTO in registration of this mark raising a likelihood of confusion with a mark owned by Tillotson Corporation in International Class 9 for "nitrile unsupported examination and protective gloves for industrial, law enforcement and beauty salon use."  Aearo's counsel contacted Tillotson requesting concurrent use of the marks and Tillotson declined to agree with the request.  After consultation with counsel, no further action was taken and the USPTO application was allowed to lapse.  Aearo's use of the mark continues under common law protections.

1173933v13

2

3M_MDL000294247

AEARO HOLDING CORP.

Schedule 3.13(a)(i)
Benefit Plans

A.   Pension, retirement, savings, profit sharing and stock option programs:

(1)   Aearo Holding Corp. 2006 Stock Incentive Plan (and any related award agreements executed in connection with such plan, copies of which have been provided to Parent)

(2)   Aearo Company Nonqualified Deferred Compensation Plan, dated August 5, 1999, as amended December 22, 2005 (and any related award agreements executed in connection with such plan, copies of which have been provided to Parent), including Irrevocable Trust Agreement with Fifth Third Bank, dated April 5, 2004

(3)   Aearo Company Supplemental Executive Retirement Plan, effective as of January 1, 1994, as amended December 22, 2005

(4)   Aearo Company – Employees' Retirement Account Plan, restated effective as of January 1, 2001 (Cash Balance Pension Plan), amended as of December 22, 2005

(5)   Aearo Company - The Corporate Plan for Retirement – Fidelity Basic Plan Document No. 02, as in effect December 5, 2001, including Nonstandardized Adoption Agreement (#001) for use with Fidelity Basic Plan Document No. 02 (Profit Sharing/401(K) Plan), amended as of June 28, 2005

(6)   Aearo Canada Limited – Pension Plan, dated as of May 22, 2002, and then as of January 1, 2003

(7)   Aearo Limited - Pension Plan (Scottish Equitable), effective as of December 1, 2005

(8)   VH Industries, Inc. d/b/a SafeWaze - Adoption Agreement for Pan American Life Insurance Company standardized 401(K) Profit Sharing Plan and Trust with attached EGTRRA Amendment (amended as of November 17, 2003 pursuant to that certain Amendment to Pan-American Life Insurance Company Allocative Group Annuity Contract, Opti-Vest®)(including Schedule of Services Provided by Securian Retirement Services), as further amended as of February 16, 2005

B.   Material employment, bonus or other compensation arrangements:

(1)   Executive Employment Agreement between Aearo Corporation and Michael A. McLain, dated March 10, 2004, as amended by that certain

1

1173933v13

Confidential - Subject to Protective Order   3M_MDL000294248

letter agreement by and between Michael A. McLain and Aearo Holding Corp. (fka Pacer Holding Company), dated March 24, 2006

(2)    Executive Employment Agreement between Aearo Corporation and D. Garrad Warren III, dated March 10, 2004

(3)    Executive Employment Agreement between Aearo Corporation and M. Rand Mallitz, dated March 10, 2004

(4)    Executive Employment Agreement between Aearo Corporation and James M. Phillips, dated March 10, 2004

(5)    Executive Employment Agreement between Aearo Corporation and Rahul Kapur, dated March 10, 2004

(6)    Executive Employment Agreement between Aearo Corporation and Jeffrey S. Kulka, dated March 10, 2004

(7)    Executive Employment Agreement between Aearo Corporation and James H. Floyd, dated March 10, 2004

(8)    Executive Employment Agreement between Aearo Technologies Inc. and Thomas R. D'Amico, dated July 13, 2004

(9)    Executive Employment Agreement, among Aearo Holding Corp., Aearo Corporation, Aearo Company I and Robert B. Hebert, dated June 1, 2006, as amended December 15, 2006

(10)    Fiscal Year 2007 Aearo Company Management Incentive Program (Michael McLain, Tom D'Amico, James Floyd, Rahul Kapur, Jeffrey Kulka, Randy Mallitz, James Phillips and Gary Warren), dated January 5, 2006

(11)    Fiscal Year 2007 Management Incentive Program January 5, 2007

(12)    NAI Sales Incentive Plan for fiscal year 2007, reflected in letter to Robert Ashbreck, dated November 17, 2006

(13)    International Sales Incentive Plan for fiscal year 2007, reflected in letters to participants, dated November 17, 2006

(14)    Consumer Incentive Compensation for fiscal year 2007

(15)    2007 European Sales Incentive Plan

(16)    SRX Fiscal Year 2007 Sales Incentive Plan (Regional Sales Manager, Area Sales Manager, and Customer Program)

(17)    Specialty Composites Sales Incentive Plan

1173933v13

2

3M_MDL000294249

(18)     Construction Incentive Program – Fiscal Year 2007

(19)     Aearo Confidential Interoffice Memorandum regarding 2007 salary planning, dated November 28, 2006

C.     Insurance programs for medical, dental, and vision benefits:

(1)     Tufts Health Plan

(2)     Fallon Community Health Plan

(3)     M-Plan

(4)     Great-West Life and Annuity Insurance Company Administrative Services Contract with Aearo Company with attached July 18, 2002, letter regarding Administrative Service Contract, as amended effective January 1, 2005

(5)     Your Group Benefit Plan – Aearo Company (Medical Care, Dental Care and Prescription Drug Benefit Plan)

(6)     Fallon HMO Plan under Fallon Community Health Plan Group Service Agreement for Aearo Company, as in effect January 1, 2004

(7)     Blue Care IPA Plan

(8)     Group Health Insurance Policy between The Standard Life Assurance Company and Aearo Canada Limited, effective December 1, 2003

(9)     Flexible Spending Account

(10)    Beneplan Inc. Employee Dental Benefit Overview for Aearo Canada Ltd., effective January 1, 1995

(11)    Pharmacy Benefit Plan

(12)    Great-West Life & Annuity Insurance Company Renewal Schedule of Excess Loss Insurance with attached May 27, 2004, letter regarding Final Excess Loss Agreement, as amended February 14, 2007, and Performance Guaranty Agreement by and between Aearo Company and Great-West Life & Annuity Insurance Company, dated January 1, 2007 and FSA Administration Services Agreement by and between Aearo Company and Great-West Life & Annuity Insurance Company, dated December 29, 2007

(13)    BUPA Healthcare – Aearo Limited, dated effective July 1, 2005 (private medical insurance offered to all permanent Aearo Limited employees)

1173933v13

3

D.    Life, accident, sick leave, salary continuation, and disability coverage:

    (1)    Employee Insurance Policy Plan between American Home Assurance Company and Aearo Canada Limited, dated as of August 1, 1997

    (2)    Group Long Term Disability Insurance between RBC Insurance (f/k/a Unum Provident) and Aearo Canada Limited, effective as of December 1, 2003

    (3)    Life Insurance Company of North America, policy number LK-960286 [LTD], effective January 1, 2004

    (4)    Life Insurance Company of North America, policy number FLX 960304, effective January 1, 2004, amended as of January 1, 2006

    (5)    Life Insurance Company of North America, policy number OK-960291 [AD&D], effective January 1, 2004

E.    Severance or layoff arrangements:

*See* Schedule 5.8(d), <u>Employee Severance Benefits</u>

F.    Description of other fringe benefits:

    (1)    United States:

- Vacation with Pay
- Holiday Pay
- Unemployment Insurance
- Workers' Compensation
- Educational Assistance
- Eyewear Program
- Employee Assistance Program
- Matching Gifts
- Service Anniversaries
- Short Term Disability

    (2)    United Kingdom:

- Sick Pay Scheme
- Maternity Policy
- Parental Leave
- Special Leaves
- Time off for Dependants
- Medical Services
- Holidays, in addition to Bank and Public Holidays
- Social Club

1173933v13

4

(3)     Canada:

- Paid Sick Leave
- Vacation with Pay
- Holidays with Pay
- Medical Care at Work
- Special Leaves
- Canada Pension Plan
- Vision Care Program
- Workers' Compensation
- Employment Insurance
- Severance Pay Plan
- Educational Assistance
- Service Anniversaries

1173933v13

5

AEARO HOLDING CORP.

Schedule 3.13(a)(ii)
Exceptions to Benefit Plans Disclosure

The actuarial valuation report for the Aearo Company Employees' Retirement Account Plan dated January 1, 2006 does not reflect sixty-eight active participants who entered the Plan in 2005.  The additional liability for these sixty-eight participants as of January 1, 2006 is approximately $30,000.

The January 1, 2005 actuarial valuation report is not affected.

1173933v13

1

3M_MDL000294253

P-GEN-01196.46

AEARO HOLDING CORP.

Schedule 3.13(a)(iii)
Exceptions to Benefit Plans Compliance

None.

1173933v13

1

3M_MDL000294254

AEARO HOLDING CORP.

Schedule 3.13(a)(iv)
Benefit Plans: Event of Default

None.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294255

AEARO HOLDING CORP.

Schedule 3.13(a)(v)
Benefit Plans: Collective Bargaining Agreements

1.   Employment Contract between Aearo do Brasil Ltd. and Carlos Alberto Rocha Reganatti, dated February 1, 2002

2.   Swedish employees' salary and hours are subject to the labor union agreements between Swedish employers, including Peltor AB, and Svenska Industritjänstemannaförbundet (SIF), the Staff union and Industrifacket (IF), the Plant union.

1173933v13

Confidential - Subject to Protective Order                                    3M_MDL000294256

P_GEN-01196.49

AEARO HOLDING CORP.

Schedule 3.13(b)
<u>Exceptions to Qualified Plans</u>

With respect to Subsection 3.13(b), the Aearo Company 401(k) plan did not pass ADP/ACP testing for 2006. Thirty-six (36) highly-compensated employees received refunds totaling approximately $84,038.95.

1

1173933v13

AEARO HOLDING CORP.

Schedule 3.13(c)
Exceptions to Title IV Plans

None.

1

1173933v13

AEARO HOLDING CORP.

Schedule 3.13(d)
Multiemployer Plans

None.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294259

P2GEN-01196.52

**AEARO HOLDING CORP.**

Schedule 3.13(e)
<u>Health Benefit Plans</u>

      Certain spouses of retired Company employees are eligible for medical/dental benefits under the Company's plans until the respective spouse reaches the age of sixty-five (65). The following spouse of a retired employee is the only spouse eligible under this plan. No other employees/spouses will become eligible for these benefits due to termination of the benefit policy:

- Leah Berti

1

1173933v13

3M_MDL000294260

AEARO HOLDING CORP.

Schedule 3.13(f)
Employment Actions

1.    With respect to Section 3.13(f)(ii) of the Merger Agreement:

      a.    Agreement between Aearo Technologies and I.U.E./CWA, AFL-CIO, CLC Local #809, effective June 27, 2007, to June 27, 2010 – Plymouth, Indiana

      b.    Labor union agreements between Swedish employers, including Peltor AB, and Svenska Industritjänstemannaförbundet (SIF), the Staff union and Industrifacket (IF), the Plant union (in Swedish)

      c.    Each industry segment in Brazil has its own employers union and workers union  to decide work-related matters.  Aearo do Brasil Ltd. and its employees are represented by the two unions.  Salaries and other work-related conditions are established and revised on a respective annual base date by way of free collective bargaining in accordance with Article 10 of Law No. 10.192, dated February 14, 2001

      d.    Pursuant to the terms of that certain Employment Substitution Agreement by and between Aearo Technologies de Mexico, S.A. de C.V. and TJR Services, S.A. de C.V., dated as of July 4, 2007, Aearo Technologies de Mexico, S.A. de C.V. is party to the Collective Bargaining Agreement with Sindicato Industrial de Trabajadores de la Industria del Plastico en General, Sus Derivados, Conexos y Similares de Estado de San Luis Potosi, C.R.O.M.

2.    With respect to Section 3.13(f)(iv) of the Merger Agreement, Laurent Froissard ("Froissard"), a former employee of Bacou-Dalloz ("Bacou") has a legal obligation to Bacou not to disclose to Aearo Company or any of its representatives, or to any other persons or entities, certain confidential and/or proprietary/trade secret information of Bacou.  Froissard has executed and delivered a letter in favor of Aearo Company acknowledging such legal obligation, dated May 2, 2007.

1

1173933v13

AEARO HOLDING CORP.

Schedule 3.14
Environmental Matters

1.      Groundwater contamination at the AMP AKZO Electronics Center site (the "AMP Site"), in Newark, Delaware, is being addressed by E.I. DuPont de Nemours and Company ("DuPont") under Delaware's Voluntary Cleanup Program ("VCP"). Groundwater sampling conducted in December 1999 by DuPont at Aearo Technologies' Newark facility ("Newark Facility") detected the presence of certain volatile organic contaminants (VOCs) associated with chlorinated solvents at locations beneath the Newark Facility that are consistent with migration of such contaminants from the neighboring AMP Site. Two contaminants detected in the 1999 sampling event, 1,1-dichloroethene and trichloroethene, were identified at one sample location at levels slightly above Delaware's Unrestricted Use standards.

        In conjunction with DuPont's VCP project at the AMP Site, DuPont was requested by the Delaware environmental agency to install three (3) groundwater monitoring wells at the Newark Facility to determine to what extent, if any, groundwater contaminants originating on the AMP Site had migrated beneath Aearo's adjacent Newark Facility. In July, 2006, Aearo and DuPont entered into a site access agreement whereby Aearo conditionally granted DuPont a license to install and operate the three requested monitoring wells on the Newark Facility. The grant of license was conditioned, among other items, upon DuPont's agreement to indemnify Aearo from any claims or liabilities that might arise from any groundwater contamination that has migrated or is migrating beneath Aearo's Newark Facility from the adjacent AMP Site.

        Subsequently, DuPont conducted monitoring of groundwater at and around the AMP Site in early November 2006. The results of this groundwater monitoring activity, which are described in a report dated June 28, 2007, did not show any VOCs having migrated to the monitoring wells on Aearo's Newark Facility at concentrations exceeding Delaware's cleanup criteria (the Delaware Uniform Risk Based Remediation Standards). The results also indicate, when compared to previous groundwater monitoring results, that VOC concentrations in groundwater at the AMP Site are naturally attenuating over time.

2.      Any matters disclosed in Schedule 3.8 (Litigation) are incorporated herein by reference.

1

Confidential - Subject to Protective Order                                          3M_MDL000294262

AEARO HOLDING CORP.

Schedule 3.15(a)
Material Contracts

**A. Section 3.15(a)(i)**

1. First Lien Credit Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the Lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bank of America, N.A., as Swing Line Lender, Bank of America, N.A., as L/C Issuer, Bear Stearns Corporate Lending Inc., as Syndication Agent, Deutsche Bank Securities Inc., as Documentation Agent, and Fifth Third Bank, as Senior Managing Agent

2. Amended and Restated Second Lien Credit Agreement, dated as of June 1, 2007, among Aearo Holding Corp., Aearo Technologies Inc., the lenders from time to time party thereto, Bank of America, N.A., as Administrative Agent and Collateral Agent, Bear Stearns Corporate Lending Inc., as Syndication Agent, and Deutsche Bank Securities Inc., as Documentation Agent

4. Letter of Credit 68012505 issued by Bank of America, N.A. in favor of Liberty Mutual Insurance Company, dated April 28, 2006

5. Letter of Credit 68012283 issued by Bank of America, N.A. in favor of Proliance Energy, LLC, dated April 17, 2006

6. Letter of Credit 68012284 issued by Bank of America, N.A. in favor of Proliance Energy, LLC, dated April 17, 2006

7. Letter of Credit 68012282 issued by Bank of America, N.A. in favor of Washington International Insurance Company, dated April 17, 2006

8. Letter of Credit issued by Toronto-Dominion Bank in favor of Enersource Hydro Mississauga Inc., dated September 1, 1995, amended as of July 8, 2003

9. Aearo Company has formally documented its hedging relationships, including identification of the hedging instruments and the hedge items, as well as its risk management objectives and strategies for undertaking each hedge transaction. From time to time, the Company enters into forward foreign currency contracts to mitigate the effects of changes in foreign currency rates on profitability and enters into interest rate derivative agreements to hedge its variable interest rate risk. As of August 2, 2007, the Company had thirty (30) forward foreign currency contracts outstanding that are designed to mitigate the effects of changes in foreign currency rates, the value of which will be recognized into earnings over the next nine months.

1

Confidential - Subject to Protective Order                    3M_MDL000294263

**B. Section 3.15(a)(ii)**

1.  License Agreement between Twin Rivers Engineering, Inc. and Cabot Corporation, dated as of July 28, 1984

2.  Settlement Agreement between Cabot Corporation and Lewis Woolf Griptight, Ltd., dated as of February 19, 1985f

3.  Patent Royalty Agreement among Tore Palmaer, Birgit Palmaer, Leif Palmaer, dated July 15, 1986

4.  Letter Agreement between Etymotic Research, Inc. and Aearo Company, dated as of March 8, 2001, modifying License Agreement, dated as of August 10, 1988

5.  Trademark Assignment and License Agreement between American Optical Corporation and EAROS, Inc., dated as of April 16, 1990

6.  Licensing Agreement between Etymotic Research, Inc. and Cabot Safety Corporation, dated as of July 29, 1990

7.  Assignment of Trademarks between Cabot Corporation and Cabot Safety Corporation, dated September 20, 1990

8.  Agreement between Cabot Corporation and Santa Barbara Medco, Inc., dated as of December 17, 1990

9.  Agreement, dated January 14, 1991, between Western Finishing System Inc. and Cabot Safety Corporation re: Exploitation of Technology

10. Consent to Use Trademarks (UNISTAR, OMNI-AIR and AO Safety) between American Optical and Cabot Safety Corporation, dated as of October 15, 1991

11. Assignment of Letters Patent and Design Letters Patent between Cabot Corporation and Cabot Safety Corporation, dated as of December 13, 1991

12. License Agreement between Cabot Safety Corporation and SDC Coatings Inc., dated as of January 1, 1994

13. License Agreement between American Optical Corporation and Cabot Safety Corporation, dated as of August 4, 1994

14. R/3 Software End-User License Agreement between SAP America, Inc., and Cabot Safety Corporation, dated as of January 12, 1995; and attached Extended Maintenance Service Schedule to SAP America, Inc., Software End-User License Agreement between SAP America, Inc., and Cabot Safety Corporation, dated as of January 12, 1995

1173933v13

2

3M_MDL000294264

15. Asset Transfer Agreement, dated as of June 13, 1995, among Cabot Safety Corporation (currently, Cabot CSC Corporation), Cabot Canada Ltd., Cabot Safety Limited, Cabot Corporation, Cabot Safety Holdings Corporation (currently, Aearo Corporation), and Cabot Safety Acquisition Corporation (currently, Aearo Company) and the following related documents:

    a. Worldwide Patent Assignment between Cabot Safety Corporation and Cabot Safety Intermediate Corporation, dated as of July 1995 (not signed)

    b. License Agreement between Cabot Safety Intermediate Corporation and Aearo Limited, dated as of July 1, 1995

    c. License Agreement between Aearo Company and Aearo Limited, dated as of July 1, 1995

    d. License Agreement between Cabot Safety Intermediate Corporation and Aearo Company, dated as of July 1, 1995

    e. Trademark Coexistence Agreement, dated July 11, 1995, between Cabot Corporation and Cabot Safety Intermediate Corporation

    f. Assignment and Assumption Agreement, dated as of July 11, 1995, by and between Cabot Safety Holdings Corporation (currently, Aearo Corporation), Cabot Safety Acquisition Corporation (currently, Aearo Company) and Cabot Safety Intermediate Corporation

    g. Assignment and Assumption Agreement, dated as of July 11, 1995, by and between Cabot Safety Holdings Corporation (currently, Aearo Corporation), Cabot Safety Acquisition Corporation (currently, Aearo Company) and Cabot Safety Acquisition Limited (UK)

    h. Bill of Sale and Assignment, dated as of July 11, 1995, made by Cabot Safety Corporation (currently, Cabot CSC Corporation), Cabot Canada Ltd., and Cabot Safety Limited in favor of Cabot Safety Holdings Corporation (currently, Aearo Corporation), Cabot Safety Acquisition Corporation (currently, Aearo Company), Cabot Safety Intermediate Corporation, Cabot Safety Acquisition Limited and Cabot Safety Canada Acquisition Ltd.

    i. Assumption Agreement, dated as of July 11, 1995, by Cabot Safety Holdings Corporation (currently, Aearo Corporation), Cabot Safety Acquisition Corporation (currently, Aearo Company), Cabot Safety Intermediate Corporation, Cabot Safety Acquisition Limited and Cabot Safety Canada Safety Acquisition Ltd. in favor of Cabot Corporation, Cabot Safety Corporation (currently, Cabot CSC Corporation), Cabot Canada Ltd. and Cabot Safety Limited

1173933v13

3

3M_MDL000294265

    j.   Worldwide Trademark Assignment, dated July 11, 1995, by Cabot Safety Corporation (currently, Cabot CSC Corporation) to Cabot Safety Intermediate Corporation

    k.   Worldwide Copyright Assignment, dated July 11, 1995, by Cabot Safety Corporation (currently, Cabot CSC Corporation) to Cabot Safety Intermediate Corporation

    l.   Worldwide Patent Assignment, dated July 11, 1995, by Cabot Safety Corporation (currently, Cabot CSC Corporation) to Cabot Safety Intermediate Corporation

16. License Agreement between Taxware, LP and Aearo Company, dated August 2, 1995, as amended

17. Software License Agreement between Sterling Software (Mid America), Inc., and Cabot Safety Corporation, dated as of August 31, 1995

18. Trademark Agreement between Epic Corporation, Emtech Laboratories, and Cabot Safety Corporation, dated as of June 13, 1996

19. License Agreement between Cabot Safety Corporation, EAR Specialty Composites Division and NHK Spring Co., Ltd., dated as of July 24, 1996 (Extension of License Agreement for Supersheet (NHK), and Tufcote and Viscolas (EAR), dated July 17, 2003)

20. License Agreement between Cabot Safety Intermediate Corporation and Aearo Canada Ltd., dated as of October 1, 1996

21. Trademark Agreement between Nassau Lens Co., Inc. and Cabot Safety Intermediate Corporation, dated as of December 8, 1998

22. License Agreement between French-German Institut of Saint-Louis and Aearo Company, dated as of March 3, 1999

23. Settlement Agreement among Aearo Company, Cabot Safety Intermediate Corporation, Arkon Safety Equipment, Inc. and Arkon Safety Equipment, Inc. of USA, dated as of May 14, 1999

24. Patent/Trademark Settlement Agreement between Aearo Company, Cabot Safety Intermediate Corporation and Pyramex Safety Products, Inc., dated as of May 19, 1999

25. Trademark Agreement between Cabot Safety Intermediate Corporation, Aearo Company and Calvin Klein Cosmetic Corporation, dated as of October 29, 1999

26. Non-Exclusive Patent License Agreement between Cabot Safety Intermediate Corporation and Norcross Safety Products, LLC, effective as of January 7, 2000

Confidential - Subject to Protective Order          3M_MDL000294266

27. Trademark Settlement Agreement among Aearo Company, Cabot Safety Intermediate Corporation and New Dynamics, Inc., dated as of August 7, 2000

28. Trademark Assignment between Cabot Safety Intermediate Corporation and Aearo Company, dated May 14, 2002, effective as of December 14, 2001

29. Coexistence Agreement between Plasto SA and Cabot Safety Intermediate Corporation, dated as of September 5, 2002

30. Order Agreements between Cognos Corporation and Aearo Corporation, dated as of August 31, 1999, December 22, 2000, and September 30, 2002

31. Termination Agreement of Trademark License Agreement between Leader Industries (2001), Inc. and Aearo Company I, dated as of October 28, 2002

32. Novell Licensing Agreement, dated December 9, 2002

33. Trademark Agreement between Aearo Company, Cabot Safety Intermediate Corporation and Radians, dated as of April 23, 2003

34. Worldwide Consent Agreement among E.I. du Pont de Nemours and Company, Cabot Safety Intermediate Corporation, and Aearo Company, dated January 2004

35. Agreement and Plan of Merger by and among Aearo Corporation, Aearo Technologies Inc. and AC Safety Acquisition Corp., dated as of March 10, 2004 and the documents related thereto

36. Movaris Software License Agreement between Aearo Company and Movaris, Inc., dated as of June 13, 2004

37. License Agreement between Jordan Outdoor Enterprises, Ltd., and Aearo Company, dated October 1, 2004

38. License Agreement between Ligon Brothers Manufacturing Company and Aearo Company, dated February 14, 2005

39. Exclusive Patent License Agreement between Irene Corporation and Aearo Company, dated May 16, 2005

40. Software License and Services Agreement between Aearo Ltd. and Thomsons Online Benefits Limited, dated August 2005

41. Product Rights Assignment Agreement between Peltor AB and DECT-Com A/S, dated October 4, 2005 (not signed by Peltor AB)

1173933v13

5

3M_MDL000294267

42. Intellectual Property License Agreement between Aearo Company and Headsets, Inc., dated effective as of June 2, 2005

43. Consumer Products License Agreement between Orange County Choppers Merchandising, LLC and Aearo Company I d/b/a Aearo Technologies, and Cabot Safety Intermediate Corporation, dated January, 2006

44. Agreement and Plan of Merger by and among Aearo Holding Corp. (fka as Pacer Holding Company), Pacer Merger Company and Aearo Technologies Inc., dated as of February 1, 2006 and the documents related thereto

45. License Agreement by and between Gargoyles, Inc. and Aearo Company, dated October 20, 1998

46. Intellectual Property License Agreement by and between Cabot Safety Intermediate Corporation and Aearo Technologies de Mexico, S.A. de C.V. dated effective as of June 30, 2007

47. Non-Exclusive Patent License Agreement by and between Cabot Safety Intermediate Corporation and Norcross Safety Products, L.L.C., dated as of January 7, 2000

48. Settlement Agreement by and among Aearo Company, Cabot Safety Intermediate Corporation and Shelby Group International, Inc., dated July 15, 2004

49. Trademark License Agreement by and between John Deere Shared Services, Inc. and Aearo Company I, dated April 17, 2006, as amended April 16, 2006

50. Share Purchase Agreement by and between Peltor AB and Alexander Gyr, dated August 2, 2006 and the documents related thereto

51. Con-Space Communications Ltd. Subscription for Units, executed by Aearo Company I and the documents related thereto

52. Asset Purchase Agreement by and among Aearo Company I, Cabot Safety Intermediate Corporation and TJR Manufacturing and Services, S.A. de C.V., dated effective as of June 30, 2007

**C. Section 3.15(a)(iii)**

None.

**D. Section 3.15(a)(iv)**

1. Intellectual Property Assignment Agreement between Aearo Company and SoundGate, Inc., dated effective July 5, 2005

Confidential - Subject to Protective Order

2. Master Purchase Agreement between Aearo Company and ThreeSixty Sourcing Limited, dated March 15, 2005

3. Non-Competition Agreement between Aearo Technologies de Mexico, S.A. de C.V. and Aearo Company I, dated as of May 31, 2007

4. Supplier Confidentiality and Non-Compete Agreement by and between E-A-R Specialty Composites, a division of Aearo Technologies, and DongGuan Hyform Electronic Co., Ltd., dated October 18, 2006

## E. Section 3.15(a)(v)

1. Proprietary Information Exchange Agreement (and related documents) between Honeywell International, Inc. and Aearo/AO Safety, dated as of March 17, 2003 (not signed by Honeywell)

2. Agreement for Protection of Information between Aearo Company and Northrop Grumman Systems Corporation, dated November 29, 2004

3. Endorsement Agreement between Aearo Company and Amy Wynn Pastor, LLC, dated April 1, 2005 (terms are confidential)

4. Technical Contractor Agreement, between Aearo Company and SoundGate, Inc., dated effective as of July 5, 2005 (including: (a) Intellectual Property Assignment Agreement among Aearo Company and SoundGate, Inc. and Mr. Barak Dar, dated effective as of July 5, 2005; (b) Phase II Agreement, between Aearo Company I and SoundGate, Inc., dated effective as of August 7, 2006, as amended by that certain letter agreement dated June 1, 2007)

5. Collaboration Agreement among Aearo Company, QinetiQ, Inc. and QinetiQ Ltd, dated September 30, 2005 (terms are confidential)

6. Development Agreement by and between Peltor AB and KIRK telecom A/S, dated October 19, 2005 (not signed by Peltor AB)

7. Offer – Noise-prevention helmet for Eurofighter ground staff issued by Schuberth Engineering AG to Peltor Communications, dated January 12, 2006

8. Joint Venture Agreement by and between Aearo Company I and Javier Rodriguez Rocha, dated effective as of May 31, 2007

9. Licensing and Distribution Agreement by and between Sonomax Hearing Healthcare, Inc. and Aearo Company I, dated July 2006

Confidential - Subject to Protective Order                                        3M_MDL000294269

10. Intellectual Property License Agreement by and between Cabot Safety Intermediate Corporation and Aearo Technologies de Mexico, S.A. de C.V. dated effective as of June 30, 2007

11. Collaboration Agreement by and between Red Tail Hawk Corporation and Aearo Company I, dated July 27, 2006

12. Product Development Agreement by and between Aearo Company I and Taroko International, dated April 21, 2006

13. Product Development Agreement by and between Radeum, Inc. and Aearo Company I, dated June 28, 2006

14. OEM Distribution Agreement by and between Radeum, Inc. and Aearo Company I, dated June 28, 2006

## F. Section 3.15(a)(vi)

1. Lease among City of Winchester (Poynton) Limited and Aearo Limited, dated October 18, 2000 (Unit 9, Poynton, England)

2. Distributor Agreement between E.A.R. Division, Cabot Corporation and Masterchips Marketing Pte. Ltd., dated as of October 1, 1986

3. Representative Agreement between Allshouse and Associates and Cabot Corporation, E-A-R Division, dated May 15, 1988

4. Executive Price Protection Agreement between Ceridian Employer Services and Cabot Safety Corporation, dated as of December 1, 1995

5. Supply Agreement between OptoMart, Inc., and Aearo Company, dated as of July 1996

6. Agreement for Products between Qwest (f/k/a U.S. West Company) and Aearo Company, dated as of November 9, 1996, and amended as of March 25, 2003

7. Master Trust Agreement between State Street Bank and Trust Company and Aearo Company, dated as of September 1, 1997

8. Prescription Safety Eyewear Purchase Agreement between Burlington Northern and Santa Fe Railway Company and Aearo Company, dated as of January 1, 1998 [NOTE: agreement expired - parties performing under expired terms without written agreement]

9. Prescription Safety Eyewear Agreement between E.I. duPont de Nemours and Company and Aearo Company, dated effective January 1, 1999, and amended as of May 31, 2006

Confidential - Subject to Protective Order

10. Distributor Agreement between Aearo Company and Buckley Industries, dated as of April 1, 1999, amended pursuant to letter agreements dated July 31, 2001, January 22, 2002, and October 1, 2002 (not signed by Buckley Industries, Inc.)

11. Management Services Agreement between IKON Office Solutions, Inc., and Aearo Company, dated as of November 8, 1999

12. Services Agreement between Ozburn-Hessey Logistics, as successor in interest to ODC Integrated Logistics and Aearo Company, dated as of November 25, 1999, and amended as of September 27, 2007

13. Consignment Agreement (and related documents) between Velsicol Chemical Corporation and E-A-R Specialty Composites, dated as of January 20, 2000

14. Purchase Agreement between Canadian Tire Corporation Limited and Aearo Company, dated as of April 14, 2000

15. Aearo Wholesaler Program (U.S.), dated April 19, 2000 (including list of participants and letter agreement between Aearo Company and UASI)

16. Master Equipment Lease Agreement between National City Leasing Corporation and Aearo Company I, dated as of May 19, 2000

17. Corporate Award Agreement Number 2178 between Northrop Grumman Corporation and Aearo Company/AO Safety, dated as of May 28, 2000, and amended as of May 30, 2006

18. Distributor Agreement between E-A-R Specialty Composites, a division of Aearo Company and Wisconsin Foam Products, Inc., dated June 1, 2000

19. Domestic Sales Representative Agreement among Aearo Company, E-A-R Specialty Composites Division and D.C. Henning, Inc., dated October 1, 2000, as amended January 26, 2005

20. Prescription Eyewear Agreement between Deere & Company and Aearo/AO Safety, dated effective February 1, 2001 (not signed)

21. Agreement between Peltor AB and Multisafe Oy, dated June 21, 2001, and Annex to Agreement dated January 20, 2003

22. Data Storage and Service Agreement between Arcus Data Security (currently, Iron Mountain) and Aearo Company, dated July 9, 2001 (Schedule A to Customer Agreement between Iron Mountain Off-Site Data Protection and Aearo Company, dated as of July 1, 2003 provided)

1173933v13

9

Confidential - Subject to Protective Order

23. SafeWaze Agency Agreement between The Mountain States Safety and SafeWaze, dated December 31, 2001

24. Letter to Barry Robinson, Airgas, from Gary Warren, regarding the Premier National Distributor Program between Airgas and Aearo Company for the period January 1, 2007, through December 31, 2007

25. Lease Agreement between Susan Sandelman as Trustee for the Jason Trust and Hereff Trust and Aearo Company, dated February 27, 2002 (8001 Woodland Drive, Indianapolis, Indiana)

26. Consignment Agreement between Formosa Plastics Corporation and E-A-R Specialty Composites/Aearo Company, dated April 30, 2002

27. Fixed Price Services Contract between Boeing Company and Aearo Company/AO Safety, dated as of September 13, 2006

28. Independent Contractor Agreement between High Risk Incorporated and Aearo Company, effective June 1, 2002

29. Short Form Agreement for Services between TXU Generation Company LP and Aearo Company/AO Safety, dated as of July 24, 2002, and amended as of November 16, 2005, as assigned to Stone & Webster, Inc. pursuant to Consent to Assignment, dated June 26, 2006   [NOTE: agreement expired - parties performing under expired terms without written agreement]

30. Support Renewal Confirmation – Cognos Corporation, dated April 27, 2007 (Cognos Software) and Powerplay Renewal, dated September 28, 2006

31. Sales Distribution Agreement between NHK Spring Co. Ltd. and Aearo Company, dated as of September 1, 2002 (terms are confidential)

32. HP Business Recovery Services Customer Support Agreement between Hewlett-Packard Company and Aearo Company, dated as of October 1, 2002, as revised

33. Freight Agreement between Estes Express Lines and Aearo Company, dated October 9, 2002

34. 2007 Marketing Allowance Program by and between Evergreen Marketing Group and Aearo Company, dated January 1, 2007

35. Varilux and Premium Coatings Distributor Agreement between Essilor of America, Inc. d/b/a Essilor Lenses, and Aearo Company, dated as of January 1, 2006

Confidential - Subject to Protective Order

3M_MDL000294272

36. Premier National Distributor Program between W.W. Grainger and the Aearo Company for January 1, 2006 through December 31, 2006 [NOTE: agreement expired - parties performing under expired terms without written agreement]

37. Independent Contractor Agreement between Communications Marketing Company, LLC and Aearo Company, dated as of January 1, 2003

38. Agreement between The Chamberlain Group, Inc. and Aearo Company, EAR Specialty Composites SBU, dated March 1, 2003

39. Distributor Agreement between E-A-R Specialty Composites, a division of Aearo Company and Sound Technology, dated March 1, 2003

40. Mercer Human Resource Consulting Agreement, dated March 11, 2003

41. Common Carrier Pricing Agreement between PJAX, Inc., and Aearo Company, dated March 31, 2003

42. Industrial Lease Agreement between Gateway Brentwood, Inc. (and successor-in-interest Mid-Atlantic (Pencader) Industrial LLC), and Aearo Company, dated April 1, 2003, and amended April 5, 2006 (Newark, Delaware)

43. Contract for Professional Services between Tennessee Valley Authority and Aearo Corporation d/b/a AO Safety, dated as of April 1, 2003, and amended effective as of April 2, 2005

44. Letter from Aearo Limited to ARCO Limited, dated April 3, 2003 re: 2003 Rebate scale

45. Lease between Francis Henry Lee and Aearo Limited, dated May 7, 2003 (Poynton, England Distribution Center)

46. Aearo/SafeWaze Agency Agreement between McCarthy Associates and Aearo/SafeWaze, dated June 1, 2003

47. Aearo/SafeWaze Agency Agreement between Andreas Sales and Aearo/SafeWaze, dated June 1, 2003

48. Aearo/SafeWaze Agency Agreement between Ladd Associates and Aearo/SafeWaze, dated June 1, 2003

49. Aearo/SafeWaze Agency Agreement between Preferred Sales Agency and Aearo/SafeWaze, dated June 1, 2003

50. Aearo/SafeWaze Agency Agreement between Larrabee Company and Aearo/SafeWaze, dated June 1, 2003

Confidential - Subject to Protective Order                                        3M_MDL000294273

51. Aearo/SafeWaze Agency Agreement between The Hazen Agency and Aearo/SafeWaze, dated June 2, 2003

52. Investment Agreement and Investment Management Agreement between Aearo and Wellington Trust Company, NA, as reflected in a letter to James M. Phillips, Vice President, Human Resources, Aearo Company, from Jonathan M. Payson, President, Wellington Trust Company, NA, dated June 11, 2003

53. Amendment to The CorporatePlan for Retirement Service Agreement, dated June 13, 2003

54. Customer Subscriber Agreement between Lowe's Companies, Inc. and Aearo Company, dated July 8, 2003 (terms and existence of contract are confidential)

55. Carrier Agreements by and between Aearo Company and United Parcel Service, Inc., dated August 15, 2003, June 17, 2003, March 21, 2003 (including UPS Incentive Program Contract Carrier Agreement, dated July 21, 2003 and amended as of May 7, 2007)(terms are confidential)

56. Agreement between Peltor AB and Bunzl/Greenham Industrial Supplies, dated August 25, 2003

57. Supply and Distributorship Agreement between Aearo Company, Hagemeyer North America, Inc. and Hagemeyer North America Marketing Co., LLC, dated as of December 31, 2002, as amended by Amendment to Supply and Distributorship Agreement, dated effective as of December 31, 2002 and Amendment to Supply and Distributorship Agreement, dated effective as of September 18, 2003

58. Trading Terms Agreement between Aearo Company and Wesfarmers Companies from October 1, 2006 to September 30, 2007

59. Aearo International Partnership Program (October 1, 2006 - September 30, 2007)

60. Supply Agreement between Freightliner LLC and Aearo Company E-A-R Specialty Composites Business Unit, effective January 1, 2007.

61. Supplier Agreement between Wal-Mart Stores, Inc, Wal-Mart Stores East LP, Wal-Mart Stores East, Inc., Wal-Mart Stores Texas SP, Sam's West, Inc. and Sam's East, Inc. and Aearo Company, dated as of March 22, 2007 (terms are confidential)

62. European Customer Rebate Program, 2007

63. USA Rebate Agreement between The Home Depot and Aearo Technologies, dated October 22, 2007

Confidential - Subject to Protective Order                                          3M_MDL000294274

64. MCI Service Agreement, between MCI WORLDCOM Communications, Inc. and Aearo Company, dated January 17, 2006 (terms are confidential)

65. Travel Services Agreement between Navigant International/North Central, Inc., and Aearo Company, dated December 15, 2003 (terms are confidential)

66. Letter from Mike Smeaton of Safety Marketing Group (SMG) to all SMG Suppliers setting out Supplier Fee Schedule, effective January 1, 2007

67. USA Marketing Agreement between The Home Depot and Aearo Technologies, effective October 22, 2007

68. Fastenal 2006 Shared Investment Program [NOTE: agreement expired - parties performing under expired terms without written agreement]

69. Lease between Southbridge Associates II LLC, and Aearo Company, dated January 1, 2004 (Buildings 35 and 70, Southbridge, Massachusetts)

70. Corporate Purchase Agreement between United Technologies Corporation and Aearo, effective January 1, 2004, as amended December 19, 2006

71. Best Value™ Distribution Agreement between Aearo Company and Cardinal Health 200, Inc., dated March 8, 2004, and amended as of March 4, 2005 (terms are confidential)

72. Aearo/SafeWaze Agency Agreement between CSI Marketing Inc. and Aearo/SafeWaze, dated March 31, 2004

73. Supply Agreement between E.D. Bullard Company and Aearo Company, dated April 21, 2004

74. Independent Contractor Agreement between Aearo Company and Global Sales International, Inc., dated May 26, 2004

75. Equipment Lease Agreement between Aearo Company and Carl Zeiss Optical, Inc., dated May 27, 2004

76. Supplier Agreement between Aearo Company and VisionWeb, L.P., dated June 1, 2004

77. 2006 Partnership Marketing Agreement between Aearo Company and Mid-States Distributing Company, dated June 1, 2004

78. HUB Services Agreement between Fertile Plan International Limited and E-A-R Specialty Composites/Aearo Company, dated July 9, 2004 (terms are confidential)

79. Long Term Supply Agreement between Generac Power Systems, Inc. and E-A-R Specialty Composites, a division of Aearo Company, dated August 1, 2004

Confidential - Subject to Protective Order                                     3M_MDL000294275

80. Letter to Doug Pick, DAP World, Inc., from Martin C. Salon, dated as of June 29, 2007

81. Purchase and Supporting Agreement between Delta Electronics (Dongguan) Co., Ltd, together with its subsidiaries and E-A-R Specialty Composites, a division of Aearo Company, dated August 19, 2004

82. Independent Contractor Agreement by and between Aearo Company and Bruce Chew, dated October 15, 2004

83. Vendor Agreement between Aearo Co. and Meijer Distribution, Inc., dated November 8, 2004 (not signed by Meijer)

84. Contract for Sale and Purchase of Natural Gas between ProLiance Energy, LLC and Aearo Company, dated November 1, 2006

85. Letter from Mark Zacur, Fisher Safety, to Jay Kastan, dated as of November 9, 2006

86. 2005-2006 Fisher Scientific Supplier Profile Agreement between Fisher Scientific and Aearo Company (not signed) (terms are confidential)

87. Vendor/Buyer Reference and Terms Agreement between Aearo Safety and Riverhook Retail Group (Sutherlands), dated effective as of January 1, 2005

88. Supply Agreement between Sears, Roebuck and Co. and Aearo Company, dated effective as of January 1, 2005 (terms are confidential)

89. Advertising Services Contract between Aearo Company and Mitsch Communications, Inc., dated January 15, 2005

90. Distribution Agreement between Aearo Company and Powermatic Security Systems Pvt Ltd, dated January 24, 2005 (terms are confidential)

91. Sales Agent Agreement between Aearo Company and Euro American Marketing & Sales, dated as of January 25, 2005 (not signed)

92. Reliable Paint/Sundries Retail Data Sheet, dated February 14, 2005

93. 2005 Vendor Agreement – Hardlines, between Sherwin Williams between The Sherwin-Williams Company and Aearo Company, dated March 1, 2005

94. Ace Hardware Vendor Advertising Agreement with Aearo Company, dated August 18, 2006

95. Master Purchase Agreement between Aearo Company and ThreeSixty Sourcing Limited, dated March 15, 2005, as amended September 28, 2006

Confidential - Subject to Protective Order                                3M_MDL000294276

96. Supply Agreement between General Electric Company and Aearo Company, dated as of April 1, 2005 (terms and existence of contract are confidential)

97. Letter Agreement between Aramark Clean Room Services and Aearo Company, dated April 29, 2005

98. Letter Agreement between Aearo Company and ALLPRO Corporation, dated May 3, 2005

99. Rebate Agreement between Aearo Ltd. and ARCO Ltd., dated March 19, 2007 (not signed by ARCO)

100. Distributor Agreement between EBOS Group Ltd., and Aearo Company, dated as of May 23, 2005

101. Amendment to The CorporatePlan for Retirement Service Agreement Appendix A, dated July 1, 2005

102. Products Agreement between Qwest Business Resources, Inc. and Aearo Company, dated effective as of July 1, 2005 (terms are confidential)

103. E-A-R Specialty Composites Price Quote for Robert Bosch S.A. DE C.V., dated July 26, 2005

104. Distribution America Manufacturer Information Sheet (MIS) between Distribution America and Aearo Company, dated August 3, 2005

105. Amendment to The CorporatePlan for Retirement Service Agreement, dated August 15, 2005

106. Master Manufacturing Agreement between ThreeSixty Sourcing Limited, Logistic Service & Engineering Company, Ltd. and Aearo Company, dated August 17, 2005 (terms and existence of contract are confidential)

107. Government Distributor Dialog Program (October 1, 2006 – September 30, 2007)

108. Supply Agreement by and between Peltor AB and KIRK telecom A/S, dated October 19, 2005

109. E-A-R Specialty Composites Long Term Pricing Agreement for Mark IV Automotive/Dayco Products - Easley, dated October 27, 2005

110. Pro Group 2007 Marketing Program Commitment Planner, dated September 1, 2006

Confidential - Subject to Protective Order

3M_MDL000294277

111. Amendment to Customer Pick-Up Agreement, between Aearo Company and Fastenal Company, Inc. (not signed)

112. Customer Rebate Program for Customers in Sweden, Norway, Finland, Denmark, Ireland, Estonia, Lithuania and Latvia

113. Term Supply and Service Contract between the City of Kansas City, Missouri and Aearo Company, dated January 1, 2006

114. Aearo Company has business relationships with various suppliers, customers and third party sales representatives that are not subject to a written agreement but which may be defined by their prior course of dealing. Certain customer relationships typically conduct business through purchase orders, pursuant to which Aearo Company delivers products to the customer. Its business relationships with its suppliers are generally defined by correspondence between Aearo Company and its suppliers setting forth one or more of the terms of dealing. Aearo Company also has an unwritten agreement with one third party sales representative, Creeden and Associates, pursuant to which Aearo Company has agreed to pay certain commissions to Creeden based on sales to certain customers. Aearo Company obviously may not be aware of an alleged supplier, customer or representative as to which there would be a disagreement about the existence of any oral agreement with Aearo Company. The binding effect of any such agreements, including the completeness of the terms thereof, can be uncertain.

115. Generac Purchase Order issued by Aearo Company I, E-A-R Specialty Composites, a special business unit of Aearo Company I, dated January 27, 2006 [Mallitz to update.]

116. Professional Services Agreement among Aearo Holding Corp. (fka Pacer Holding Company), Aearo Technologies Inc., Aearo Company I and Permira Advisers, L.L.C., dated as of March 24, 2006

117. Master Services Agreement by and between Peak Technologies, Inc. and Aearo Company I, dated April 13, 2007

118. Domestic Sales Representation Agreement between E-A-R Specialty Composites and Engineered Technology Solutions, Inc., dated September 29, 2006

120. Purchase Order Issued By Allegheny Energy Service Corporation to Aearo Company, dated November 25, 2006

121. Manufacturing and Supply Agreement between Aearo Company and Fortney Eyecare Associates, Inc., dated November 20, 2006

122. Long Term Supply Agreement between Generac Power Systems, Inc. and E-A-R Specialty Composites, dated November 9, 2006

Confidential - Subject to Protective Order                    3M_MDL000294278

123. Long-Term Commitment/Supply Agreement (Purchasing) between International Truck and Engine Corporation and Aearo Company I, dated June 18, 2007

124. Sears Kmart Universal Terms and Conditions executed by Aearo Company I

125. Safety Eyeglass Contract by and between New United Motor Manufacturing, Inc. (NUMMI) and Aearo Company, dated October 30, 2006

126. Aearo DIALOG Program Canada – NAPC Distributors (October 1, 2006 through September 30, 2007)

127. Aearo US Construction Plus Program (October 1, 2006 through September 30, 2007)

128. Aearo Technologies Industrial DIALOG Program US (October 1, 2006 through September 30, 2007)

129. Transportation Contract by and between Aearo Technologies and Roadway Express, Inc., dated December 20, 2006

130. ONE Statements of Work, dated January 12, 2006

131. Solicitation/Contract/Order for Commercial Items, issued by Defense Supply Center Philadelphia to Aearo Company, dated August 23, 2006

132. Major Account Agreement by and between Cellco Parntership d/b/a Verizon Wireless and Aearo Company I, dated August 25, 2006

133. Cingular Corporate Digital Advantage Agreement between Aearo Company and New Cingular Wireless National Accounts, LLC, dated July 12, 2006, as amended by Amendment No. 1 to AT&T Wireless Corporate Digital Advantage Agreement between New Cingular Wireless National Accounts, LLC and Aearo Company, dated effective April 6, 2007

134. Lease Agreements by and between IKON Financial Services and Aearo Technologies Inc. (various dates for the following locations: Indianapolis, Indiana; Southbridge, Massachusetts; and Chickasha, Oklahoma)

135. Rebate Agreement by and between Aearo Ltd. and Greenham dated March 19, 2007 (not signed by Greenham)

136. Bunzl Preferred Supplier Agreement by and between Aearo Limited and Bunzl Outsourcing, dated January 15, 2007

137. Supply Agreement by and between Embraer-Empresa Brasileira de Aeronautica S.A. and E-A-R Specialty Composites, SBU of Aearo Technologies, dated effective September 14, 2006

1173933v13

Confidential - Subject to Protective Order                                    3M_MDL000294279

138.   Affiliated Construction Services, Inc., Change Order, dated August 9, 2007

139.   Tage and Soner agreement with Peltor AB, dated July 6, 2007

140.   Agreement between Aearo Peltor AB and Skydda Protecting People Europe AB, dated June 17, 2007

141.   Purchase Order for EARSoft Assembly System from Aearo Company to Automation Tooling Systems, Inc., dated July 18, 2007.

142.   Pricing structure agreement from Lakeside Plastics, Inc. to Aearo Company, dated February 9, 2006

143.   Supplier agreement between BSMB/Aearo Technologies and TIN, Ind. dba Temple-Inland, dated January 6, 2006

144.   European Distributor Rebate Program, 2007

## G. Section 3.15(a)(vii)

1.   Indemnification Agreement whereby Cabot Safety Corporation agrees to indemnify Consumer Value Stores Division of Melville Corporation, all CVS Store Subsidiaries and affiliates of Melville Corporation and Mark Steven Service Merchandisers, Inc., dated as of November 4, 1991

2.   Indemnification Agreement whereby Aearo Company (vendor) hereby agrees to indemnify CVS Corporation, dated as of October 31, 2001

3.   Continuing Guaranty and Indemnification Agreement between Aearo Company and Amerisource Bergen Corporation, dated July 12, 2002

4.   Indemnification Letter Agreement between Aearo Company and ADS, Inc., dated December 1, 2003

5.   Indemnification Agreement between Aearo Company and Abatement Co-Operatives Group, Inc., dated October 28, 2004

## H. Section 3.15(a)(viii)

None.

Confidential - Subject to Protective Order                3M_MDL000294280

**I. Section 3.15(a)(ix)**

1.  Executive Employment Agreement between Aearo Corporation and Michael A. McLain, dated March 10, 2004, as amended by that certain letter agreement by and between Michael A. McLain and Aearo Holding Corp. (fka Pacer Holding Company), dated March 24, 2006

2.  Executive Employment Agreement between Aearo Corporation and D. Garrad Warren III, dated March 10, 2004

3.  Executive Employment Agreement between Aearo Corporation and M. Rand Mallitz, dated March 10, 2004

4.  Executive Employment Agreement between Aearo Corporation and James M. Phillips, dated March 10, 2004

5.  Executive Employment Agreement between Aearo Corporation and Rahul Kapur, dated March 10, 2004

6.  Executive Employment Agreement between Aearo Corporation and Jeffrey S. Kulka, dated March 10, 2004

7.  Executive Employment Agreement between Aearo Corporation and James H. Floyd, dated March 10, 2004

8.  Executive Employment Agreement between Aearo Technologies Inc. and Thomas R. D'Amico, dated July 13, 2004

9.  Executive Employment Agreement, among Aearo Holding Corp., Aearo Corporation, Aearo Company I and Robert B. Hebert, dated June 1, 2006, as amended December 15, 2006

Confidential - Subject to Protective Order

AEARO HOLDING CORP.

Schedule 3.15(b)
Exceptions to Material Contracts


On June 28, 2006, Aearo Company I entered into a Product Development Agreement ("PDA") and OEM Agreement with Radeum, Inc., d/b/a FreeLinc. The PDA requires FreeLinc to develop custom wireless products utilizing near-field magnetic induction (NFMI) technology for use in communication headsets pursuant to Aearo-approved statements of work, which custom products are then to be sold by Aearo under the OEM Agreement. Aearo has performed all conditions precedent to FreeLinc's obligation to develop the custom products, including advancing $500K toward the project, but FreeLinc has refused to perform the PDA and develop the products. On June 18, 2007, Aearo Company filed a Demand for Arbitration with the American Arbitration Association, to which FreeLinc responded with a denial of the allegations. A hearing date of January 10 and 11, 2008, has been set as the parties continue to explore settlement options.

1

Confidential - Subject to Protective Order

AEARO HOLDING CORP.

Schedule 3.16
Related-Party Transactions

1.  Professional Services Agreement among Aearo Holding Corp. (fka Pacer Holding Company), Aearo Technologies Inc., Aearo Company I and Permira Advisers, L.L.C., dated as of March 24, 2006

2.  Management Rights Agreement between Permira Europe III L.P. 1 and Aearo Holding Corp. (fka Pacer Holding Company), dated as of March 24, 2006

3.  Stockholders' Agreement by and among Aearo Holding Corp. (fka Pacer Holding Company) and the holders that are party thereto, dated as of March 24, 2006

4.  Rahul Kapur serves on the Board of Directors of Con-Space, 20% of the stock of which is owned by Aearo Company I.

5.  Michael McLain and Jeffrey Kulka serve on the Board of Directors of Aearo Technologies de Mexico, S.A. de C.V.

1173933v13

2

3M_MDL000294283

P_GEN-01196.76

AEARO HOLDING CORP.

Schedule 3.17(a)
Parcels

Safety Products
Värnamo, Sweden
Malmstensgatan 15-17, S-
331 02 Varnamo, Sweden
(Buildings 1 and 2 –
Manufacturing, Customer
Service and Sales)

Ingelundsvagen, S-331 02
Varnamo, Sweden
(Building 3 – Warehouse
and Distribution)

Box 2341, Malmstensgatan
19, S-331 02 Varnamo,
Sweden (Building 4 -
Administration)

Corporate Offices / Plants
5457 West 79th Street,
Indianapolis, Indiana 46268

Zionsville Road/79th St.
(Vacant Lot) – Southeast
corner of West 79th Street
and Zionsville Road,
Indianapolis, Indiana 46268

Specialty Composites
7911 Zionsville Road,
Indianapolis, Indiana 46268

650 Dawson Drive,
Newark, Delaware 19713

1

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294284

AEARO HOLDING CORP.

Schedule 3.17(b)
<u>Leased Real Property</u>

**<u>Safety Products</u>**
**<u>Poynton, England</u>**
Unit 9 – First Avenue,
Poynton, Stockport,
Cheshire, England  SK12
1FJ

Unit E – First Avenue,
Poynton, Stockport,
Cheshire, England  SK12
1FJ

Distribution Center – First
Avenue, Poynton,
Stockport, Cheshire,
England  SK12 1FJ

Acumen Building 4 – First
Avenue, Poynton,
Stockport, Cheshire,
England  SK12 1FJ

Acumen Building 3 – First
Avenue, Poynton,
Stockport, Cheshire,
England  SK12 1FJ

**<u>Indianapolis, Indiana</u>**
8001 Woodland Drive,
Indianapolis, Indiana 46278

**<u>Concord, NC</u>**
4451 Raceway Drive SW,
Concord, North Carolina  28027

1

1173933v13

3M_MDL000294285

**Southbridge, Massachusetts**
Building 35 - 90 Mechanic
Street, Southbridge,
Massachusetts 01550

Building 70 - 90 Mechanic
Street, Southbridge,
Massachusetts  01550

**Barrie, Ontario, Canada**
546 Byrne Drive, Unit C,
Barrie, Ontario L4N 9P6

**Safety Prescription Eyewear**
1728 West Frisco,
Chickasha, Oklahoma
73018

401 East Jefferson,
Plymouth, Indiana, 46563

6889 Rexwood Road, Units
8 & 9, Mississauga, Ontario
L4V1R2, Canada

7000 Avenue du Parc, Ste.
407, Montreal, Quebec
H3N 1X1 Canada

**Specialty Composites**
405 Pencader Drive,
Newark, Delaware 19702

2299 Yan An Road West
Suite 10D82-84, Shanghai
Mart, Shanghai 200336
China

**Sales/Customer Service Offices**
300A rue Marcel Paul,
Champigny Sur Marne, Cedex
Paris, France

Via Boccaccio 37, 20090
Trezzano S/Naviglio,
Milano, Italy

Postboks 253, N-1471,
Skarer, Norway

1173933v13

2

Confidential - Subject to Protective Order

3M_MDL000294286

Ottostrasse 1, D-76275,
Ettlingen, Germany

1100 Circle 75 Parkway,
Suite 925
Atlanta, Georgia  30339

**China**
Rm. 806, 8/F, B Area
Zhongtianyuan Logistics
Center, Taohua Rd.,
Futian Free Trade Zone
Shenzhen, China (P.R.C.)

Rm. 807, 8/F, B Area,
Zhongtianyuan Logistics
Center, Taohua Rd.,
Futian Free Trade Zone,
Shenzhen, China (P.R.C.)

Rm. 10D82/84, No. 2299
West Yan'an Road
Changning District,
Shanghai Municipality

House #154, Whale Garden,
Shenzhen, China (P.R.C.)

**Mexico**
Av. CFE Esq. Eje 136 #780
Col. Zona Industrial C.P.
78395
San Luis Potosi, San Luis
Potosi, Mexico

**Russia**
2nd Frunzenskaya Str., 8
119146 Moscow,
Russian Federation

**Switzerland**
Bachstasse 41
8912 Obfelden
Switzerland

1173933v13

3

Confidential - Subject to Protective Order

3M_MDL000294287

P-GEN-01196.80

AEARO HOLDING CORP.

Schedule 3.18
Exceptions to Personal Property

None.

1

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294288

AEARO HOLDING CORP.

Schedule 3.19(a)
Insurance

1.      A list of all material policies of liability, theft, fidelity, business interruption, key man life, fire, product liability, worker's compensation and other material forms of insurance held by the Company or any Company Subsidiary, currently in force and effect, consisting of one (1) page, is attached hereto.

2.      Pending claims – See Schedule 3.8 (Litigation)

1

1173933v13

3M_MDL000294289

Attachment to Schedule 3.19(a), Insurance

**Aearo Corporation**
**Current Insurance Programs**

| Policy Period | Coverage | Carrier | Limit |
|---|---|---|---|
| 3/1/07-3/1/08 | Global "All Risk" Property / Boiler & Machinery | CNA- Continental Casualty | $100mm Deductible $250k all locations |
| 4/24/07-4/24/08 | Directors & Officers Liability | U.S. Specialty Insurance Company | $15mm Deductible $100k |
| 4/24/07-4/24/08 | Fiduciary Liability | U.S. Specialty Insurance Company | $10mm Deductible $10k |
| 9/30/07-9/30/08 | Special Crime | Liberty Insurance Underwriters | $5mm Deductible $0 |
| 9/30/07-9/30/08 | Aviation Products Liability | AIG Aviation | $50mm Deductible $0 |
| 9/30/07-9/30/08 | Non-Owned Aircraft Liability | AIG Aviation | $5mm Deductible $0 |
| 9/30/07-9/30/08 | Commercial Crime | St. Paul - Travelers | $5mm Deductible $100k |
| 9/30/07-9/30/08 | Foreign Liability | ACE | $1mm Deductible $0 |
| 9/30/07-9/30/08 | Commercial General Liability | Ace American Insurance Company | $1mm/$2mm Deductible $250k – product, $20k - premises |
| 9/30/07-9/30/08 | Business Auto | Liberty Mutual Insurance Group | $1mm Deductible $2.5k Physical damage |
| 9/30/07-9/30/08 | Worker's Compensation | Liberty Mutual Insurance Group | $1mm, Statutory – Paid program Deductible $250k |
| 9/30/07-9/30/08 | Umbrella | AIG – Illinois National Insurance Company | $25mm SIR $10k |
| 9/30/07-9/30/08 | Excess Umbrella | American Guarantee & Liability Insurance Company | $25mm Deductible $0 |
| 12/23/06-12/23/07 | Key Man Life – Mike McLain | Prudential Financial | $2.5mm term life Deductible $0 |

1.      Does not include local placed coverage by Foreign locations.

1173933v13

3M_MDL000294290

AEARO HOLDING CORP.

Schedule 3.19(b)
Insurance: Denied Claims

1.      With respect to the disclosure in Schedule 3.8, Item (A)(1), Aearo
Company routinely gives notices to its insurance carriers and from time-to-time receives
denial of coverage letters based upon a lack of coverage for respiratory-related claims.

2.      Aearo Company was insured by American International Specialty Lines Insurance
Company ("AISLIC"), policy no. 9744260, during the period of September 30, 2002 –
2003, against losses arising out of advertising injuries.  AISLIC denied coverage and
refused to defend and indemnify Aearo Company with respect to a trademark
infringement suit which Aearo ultimately settled.  Aearo Company is considering filing
suit against AISLIC to recover defense and indemnity costs incurred above the SIR of the
policy.

1173933v13

Confidential - Subject to Protective Order                                    3M_MDL000294291

AEARO HOLDING CORP.

Schedule 3.20
Customers and Suppliers

A.    Top Ten Customers ("Major Customers")

    1. Home Depot Inc.
    2. Lowes Companies Inc.
    3. Freightliner
    4. Airgas / ADI
    5. Hagemeyer and affiliates
    6. Skydda I Sverige AB
    7. W.W. Grainger
    8. Apple
    9. Arco
    10. DFAS Columbus Center

B.    Top 10 Suppliers ("Major Suppliers")

    1. ThreeSixty Sourcing
    2. Chaplin Industrial Co. LTD
    3. E.D. Bullard Company
    4. Lakeside Plastics, Inc.
    5. Taroko International Co., LTD
    6. Niagara Safety Products
    7. IKAR
    8. Aswan
    9. Focus Systems Technology Company
    10. Inland Paperboard & Packaging

C.    Material decreases in business from Major Customers or Major Suppliers

    None.

1173933v13

Confidential - Subject to Protective Order                                         3M_MDL000294292

AEARO HOLDING CORP.

Schedule 3.21
Product Liability

See Schedule 3.8, Item (A)(1).

Confidential - Subject to Protective Order                                    3M_MDL000294293

P_GEN-01196.86

AEARO HOLDING CORP.

Schedule 5.1(b)
Exceptions to Conduct of Business

1.      With respect to Section 5.1(b)(x) of the Merger Agreement, Aearo Company ("Aearo") is currently in negotiations with an undisclosed company ("Tiger") concerning Aearo's purchase of sixty percent (60%) of the outstanding shares of Tiger.

2.      Also with respect to Section 5.1(b)(x) of the Merger Agreement, Aearo is currently in negotiations with an undisclosed company ("Oak") concerning Aearo's purchase of all of the outstanding shares of Oak for approximately $33,000,000.

1

1173933v13

AEARO HOLDING CORP.

Schedule 5.1(b)(xiii)
Key Employees

1.      Michael A. McLain
2.      Jeffrey S. Kulka
3.      James H. Floyd
4.      M. Rand Mallitz
5.      D. Garrad (Gary) Warren, III
6.      James M. Phillips
7.      Rahul Kapur
8.      Thomas R. D'Amico
9.      Robert B. Hebert

1

Confidential - Subject to Protective Order

AEARO HOLDING CORP.

Schedule 5.8(d)
Employee Severance Benefits

1. Executive Employment Agreement between Aearo Corporation and Michael A. McLain, dated March 10, 2004, as amended by that certain letter agreement by and between Michael A. McLain and Aearo Holding Corp. (fka Pacer Holding Company), dated March 24, 2006

2. Executive Employment Agreement between Aearo Corporation and D. Garrad Warren III, dated March 10, 2004

3. Executive Employment Agreement between Aearo Corporation and M. Rand Mallitz, dated March 10, 2004

4. Executive Employment Agreement between Aearo Corporation and James M. Phillips, dated March 10, 2004

5. Executive Employment Agreement between Aearo Corporation and Rahul Kapur, dated March 10, 2004

6. Executive Employment Agreement between Aearo Corporation and Jeffrey S. Kulka, dated March 10, 2004

7. Executive Employment Agreement between Aearo Corporation and James H. Floyd, dated March 10, 2004

8. Executive Employment Agreement between Aearo Technologies Inc. and Thomas R. D'Amico, dated July 13, 2004

9. Executive Employment Agreement, among Aearo Holding Corp., Aearo Corporation, Aearo Company I and Robert B. Hebert, dated June 1, 2006, as amended December 15, 2006

10. A Supplemental Severance Pay Policy provides executive officers and key employees with salary continuation in the event of a termination. Terminations resulting from cause, retirement, death and disability are not eligible. Subject to Aearo Company's discretion, the policy generally provides for one month's base pay for each full year of service with a minimum amount payable of three months and a maximum amount payable of twelve months.

11. A Supplemental Severance Pay Policy provides full-time and part-time salaried and hourly employees with salary continuation in the event of a termination. Terminations resulting from cause, retirement, death and disability are not eligible. Subject to Aearo Company's discretion, the policy generally provides for one week's base pay for each full year of service, with a minimum amount payable of two weeks and a maximum amount payable of thirteen weeks for

1

1173933v13

3M_MDL000294296

hourly employees, and a minimum amount payable of four weeks and a maximum amount payable of twenty-six weeks for salaried employees.

Confidential - Subject to Protective Order

3M_MDL000294297

AEARO HOLDING CORP.

Schedule I-A
Acquisition Expenses

**AEARO TECHNOLOGIES**
**Silynx / Quest Detailed Fee Analysis**

| | | As of October 31, 2007 | | Estimated Addtl Costs To Close through 1/31/08 (2) | Total |
|---|---|---|---|---|---|
| | | Paid Cash | Accrued | | |
| SI | Deloitte | 182 | 50 | - | 232 |
| SI | Arent Fox | 30 | - | - | 30 |
| SI | Bingham McHale | 136 | 18 | 25 | 179 |
| SI | Kirkland Ellis | - | 45 | - | 45 |
| SI | Cantor Colburn | 32 | 73 | 16 | 121 |
| SI | Fried Frank | - | 146 | - | 146 |
| | **Total Silynx** | **380** | **332** | **41** | **753** |
| | | | | | |
| QU | Parthenon | 138 | 115 | 67 | 320 |
| QU | Deloitte | 9 | - | 25 | 34 |
| QU | Bingham McHale | 72 | 85 | 75 | 232 |
| | **Total Quest** | **219** | **200** | **167** | **586** |

October 31 "New Accrued" may or may not be accrued on the October financial statements.
(1) K&E and Bingham earned are through Nov 13, '07.
(2) K&E and Deloitte assumes no further work on Silynx after Nov 13, '07.

1173933v13

Confidential - Subject to Protective Order

3M_MDL000294298

P-GEN-01196.91

**EXECUTION COPY**

---

## AGREEMENT AND PLAN OF MERGER

among

## AEARO HOLDING CORP.,

## 3M COMPANY

and

## TITAN ACQUISITION SUBSIDIARY, INC.

**November 14, 2007**

---

ffny03\choial\717967.2

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement and Plan of Merger as of the date first written above.

**AEARO HOLDING CORP.**

By: _____
     Name:
     Title:

**3M COMPANY**

By: _____
     Name: Jean J. Lobey
     Title: Executive Vice President

**TITAN   ACQUISITION   SUBSIDIARY, INC.**

By: _____
     Name: Julie L. Bushman
     Title:   President

**PERMIRA ADVISERS L.L.C. (solely in its capacity as the Representative)**

By: _____
     Name:
     Title:

## TABLE OF CONTENTS

**Page**

ARTICLE I GENERAL.................................................................................... 1

1.1 The Merger.................................................................................. 1

1.2 Effective Time of the Merger. ...................................................... 1

1.3 Effects of the Merger. ................................................................. 1

1.4 Certificate of Incorporation; By-Laws; Officers and Directors of Surviving Company. ................................................................... 2

1.5 Taking of Necessary Actions; Further Assurances........................ 2

1.6 The Closing.................................................................................. 2

ARTICLE II PAYMENT OF CLOSING CONSIDERATION; EFFECT OF MERGER ON CAPITAL STOCK OF THE COMPANY AND ACQUISITION SUB ................................................................ 2

2.1 Purchase Price; Delivery of Funds and Surrender of Certificates. ........ 3

2.2 Effect on Capital Stock............................................................... 4

2.3 Stock Options.............................................................................. 5

2.4 Closing Adjustment..................................................................... 5

2.5 No Further Ownership Rights in Common Stock, Preferred Stock and Options................................................................................ 7

ARTICLE III REPRESENTATIONS AND WARRANTIES OF THE COMPANY................................................................................. 7

3.1 Organization, Etc. ....................................................................... 7

3.2 Capitalization of the Company and the Company Subsidiaries; Minute Books.............................................................................. 8

3.3 Authority Relative to this Agreement, Etc.................................... 9

3.4 Consents and Approvals; No Violations....................................... 9

3.5 Financial Statements. .................................................................. 9

3.6 Absence of Certain Changes........................................................ 10

3.7 Compliance with Law; Permits.................................................... 11

3.8 Litigation.................................................................................... 11

3.9 No Undisclosed Liabilities........................................................... 11

3.10 Taxes........................................................................................... 12

3.11 Brokers' and Finders' Fees. ........................................................ 13

3.12 Intellectual Property.................................................................... 13

i

ffny03\choial\717967.2

## TABLE OF CONTENTS
(continued)

**Page**

3.13   Employee Benefit Plans; Employees. ................................................. 15

3.14   Environmental Matters. ..................................................................... 18

3.15   Material Contracts. ............................................................................ 19

3.16   Related-Party Transactions. ............................................................... 21

3.17   Real Property. ..................................................................................... 21

3.18   Personal Property. .............................................................................. 22

3.19   Insurance. ........................................................................................... 23

3.20   Suppliers and Customers. ................................................................... 23

3.21   Product Liability. ................................................................................ 23

3.22   No Additional Representations. .......................................................... 24

ARTICLE IV  REPRESENTATIONS AND WARRANTIES OF  THE PARENT
AND ACQUISITION SUB ................................................... 24

4.1   Organization, Etc. ............................................................................... 24

4.2   Authority Relative to this Agreement, Etc. ......................................... 24

4.3   Consents and Approvals; No Violations. ............................................. 25

4.4   Litigation. ............................................................................................ 25

4.5   Parent's Business Investigation. .......................................................... 25

4.6   Disclaimer Regarding Projections. ...................................................... 26

4.7   Availability of Funds. .......................................................................... 26

4.8   Operations of Acquisition Sub. ........................................................... 26

4.9   Brokers' and Finders' Fees. ................................................................. 26

4.10   No Additional Representations. .......................................................... 26

ARTICLE V  COVENANTS. ............................................................................. 26

5.1   Conduct of Business. ........................................................................... 26

5.2   Access to Information. ......................................................................... 29

5.3   Confidentiality; Solicitation. .............................................................. 29

5.4   Efforts to Consummate. ....................................................................... 30

5.5   Expenses; Transfer Taxes. ................................................................... 32

5.6   Post-Closing Cooperation. .................................................................. 32

5.7   Publicity. ............................................................................................. 32

ii

Confidential - Subject to Protective Order                    3M_MDL000294302

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 5.8 | Employee Matters. | 32 |
| 5.9 | Indemnification, Exculpation. | 34 |
| 5.10 | Maintenance of Cabot Agreement. | 34 |
| ARTICLE VI | CONDITIONS PRECEDENT | 35 |
| 6.1 | Conditions to Each Party's Obligations. | 35 |
| 6.2 | Conditions to Obligations of the Parent and Acquisition Sub. | 35 |
| 6.3 | Conditions to the Obligations of the Company | 37 |
| 6.4 | Frustration of Closing Conditions. | 37 |
| ARTICLE VII | TERMINATION | 37 |
| 7.1 | Termination. | 37 |
| 7.2 | Effect of Termination. | 38 |
| ARTICLE VIII | GENERAL PROVISIONS | 38 |
| 8.1 | Assignment. | 38 |
| 8.2 | No Third-Party Beneficiaries. | 38 |
| 8.3 | Survival of Representations and Warranties. | 39 |
| 8.4 | Notices. | 39 |
| 8.5 | Interpretation; Exhibits and Schedules. | 40 |
| 8.6 | Counterparts; Facsimile Signatures. | 41 |
| 8.7 | Entire Agreement. | 41 |
| 8.8 | Amendments and Waivers. | 41 |
| 8.9 | Severability. | 41 |
| 8.10 | Specific Performance. | 41 |
| 8.11 | Limitation on Damages. | 42 |
| 8.12 | No Personal Liability for Shareholders, Directors or Officers. | 42 |
| 8.13 | Governing Law. | 42 |
| 8.14 | Consent to Jurisdiction; Waiver of Jury Trial. | 42 |

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294303

## TABLE OF CONTENTS
(continued)

**Page**

SCHEDULES

| | |
|---|---|
| Schedule 1.2 | Permitted Encumbrances |
| Schedule 3.2(a) | Shares |
| Schedule 3.2(b) | Company Subsidiaries |
| Schedule 3.4 | Consents and Approvals |
| Schedule 3.5 | Unaudited Financial Statements |
| Schedule 3.6 | Exceptions to Absence of Material Change |
| Schedule 3.7 | Exceptions to Compliance with Law; Permits |
| Schedule 3.8 | Litigation |
| Schedule 3.9 | Certain Liabilities |
| Schedule 3.10 | Taxes |
| Schedule 3.11 | Brokers' and Finders' Fees |
| Schedule 3.12(a) | Exceptions to Intellectual Property Rights |
| Schedule 3.12(c) | Intellectual Property Rights Infringement |
| Schedule 3.12(d)(1) | Domestic Patents |
| Schedule 3.12(d)(2) | Domestic Patent Applications |
| Schedule 3.12(e)(1) | Foreign Patents |
| Schedule 3.12(e)(2) | Foreign Patent Applications |
| Schedule 3.12(f) | Domestic Trademarks |
| Schedule 3.12(g) | Foreign Trademarks |
| Schedule 3.12(h) | Domain Names |
| Schedule 3.13(a)(i) | Benefit Plans |
| Schedule 3.13(a)(ii) | Exceptions to Benefit Plan Disclosure |
| Schedule 3.13(a)(iii) | Exceptions to Benefit Plan Compliance |
| Schedule 3.13(a)(v) | Benefit Plans: Collective Bargaining Agreements |
| Schedule 3.13(b) | Exceptions to Qualified Plans |
| Schedule 3.13(c) | Exceptions to Title IV Plans |
| Schedule 3.13(d) | Multiemployer Plans |
| Schedule 3.13(e) | Health Benefit Plans |
| Schedule 3.13(f) | Employment Actions |
| Schedule 3.14 | Environmental Matters |
| Schedule 3.15(a) | Material Contracts |
| Schedule 3.16 | Related-Party Transactions |
| Schedule 3.17(a) | Parcels |
| Schedule 3.17(b) | Leased Real Property |
| Schedule 3.18 | Exceptions to Personal Property |
| Schedule 3.19(a) | Insurance |
| Schedule 3.19(b) | Insurance: Denied Claims |
| Schedule 3.20 | Customers and Suppliers |
| Schedule 3.21 | Product Liability |
| Schedule 5.1(b) | Exceptions to Conduct of Business |
| Schedule 5.1(b)(xiii) | Key Employees |

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294304

## TABLE OF CONTENTS
(continued)

**Page**

Schedule 5.8(d)                Employee Severance Benefits

<u>Exhibits</u>
Exhibit A – Certificate of Merger
Exhibit B – Letter of Transmittal
Exhibit C – Form of Company Stockholder Consent

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294305

**AGREEMENT AND PLAN OF MERGER**, dated as of November 14, 2007, by and among 3M Company, a Delaware corporation("Parent"), Titan Acquisition Subsidiary, Inc., a Delaware corporation and a wholly-owned subsidiary of Parent ("Acquisition Sub"), and Aearo Holding Corp., a Delaware corporation (the "Company").

WHEREAS, the respective Boards of Directors of each of the Parent, Acquisition Sub and the Company, and Parent, as the sole shareholder of the Acquisition Sub, have each duly approved and adopted this Agreement and Plan of Merger (this "Agreement"), the Certificate of Merger in substantially the form of Exhibit A attached hereto (the "Certificate of Merger") and the proposed merger (the "Merger") of Acquisition Sub with and into the Company in accordance with, and subject to, the terms and conditions of this Agreement, the Certificate of Merger and the Delaware General Corporation Law (the "DGCL"); and

WHEREAS, simultaneously with the execution and delivery of this Agreement, the Principal Stockholders are executing and delivering written consents (each, a "Principal Stockholder Consent") in substantially the form of Exhibit C hereto pursuant to Section 228 of the DGCL pursuant to which such Principal Stockholders adopt this Agreement.

NOW, THEREFORE, in consideration of the benefits to be derived from this Agreement and the Certificate of Merger and the representations, warranties, covenants, agreements and conditions contained herein and in the Certificate of Merger, the parties hereto hereby agree as follows:

## ARTICLE I

## GENERAL

**1.1     The Merger.**

At the Effective Time (as defined below) and in accordance with, and subject to, the provisions of this Agreement, the Certificate of Merger and the DGCL, Acquisition Sub shall be merged with and into the Company and shall cease to exist, and the Company shall be the surviving corporation in the Merger (hereinafter sometimes referred to as the "Surviving Company").

**1.2     Effective Time of the Merger.**

The Merger shall become effective on the Closing Date upon the filing by the Company of the Certificate of Merger with the Secretary of State of the State of Delaware (or at such later time as shall be agreed upon by the Company and Acquisition Sub and set forth in the Certificate of Merger).  The Certificate of Merger shall be executed and delivered in the manner provided under the DGCL.  The time when the Merger shall become effective is referred to herein as the "Effective Time."

**1.3     Effects of the Merger.**

Except as specifically set forth herein or in the Certificate of Merger, at the Effective Time, the identity, existence, corporate organization, purposes, powers, objects, franchises,

1

Confidential - Subject to Protective Order

privileges, rights, immunities, restrictions, debts, liabilities and duties (collectively, the "Corporate Rights") of the Company shall continue in effect and be unimpaired by the Merger, and the Corporate Rights of Acquisition Sub shall be merged with and into the Company, which shall, as the Surviving Company, be fully vested therewith

**1.4     Certificate of Incorporation; By-Laws; Officers and Directors of Surviving Company.**

From and after the Effective Time, (a) the certificate of incorporation of the Acquisition Sub shall be the certificate of incorporation of the Surviving Company until altered, amended or repealed as provided in the DGCL or by applicable Law, except that Article I thereof shall be amended and restated as follows: "The name of the Corporation is Aearo Holding Corp."; (b) the by-laws of Acquisition Sub shall become the by-laws of the Surviving Company, unless and until altered, amended or repealed as provided in the DGCL, the Surviving Company's certificate of incorporation or such by-laws, or by applicable Law; (c) the officers of the Company immediately prior to the Effective Time shall become the officers of the Surviving Company, respectively, unless and until removed or until their respective terms of office shall have expired in accordance with the DGCL or the Surviving Company's certificate of incorporation or by-laws, as applicable and (d) the directors of Acquisition Sub immediately prior to the Effective Time shall be the directors of the Surviving Company unless and until removed or until their respective terms of office shall have expired in accordance with the DGCL or the Surviving Company's certificate of incorporation or by-laws, as applicable.

**1.5     Taking of Necessary Actions; Further Assurances.**

Prior to the Effective Time, and subject to the terms and conditions contained in this Agreement, the parties hereto shall take or cause to be taken all such actions as may be reasonably necessary or appropriate in order to effectuate, as expeditiously as reasonably practicable, the Merger.

**1.6     The Closing.**

The closing (the "Closing") of the transactions contemplated by this Agreement shall take place at the offices of Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 on a date (the "Closing Date") to be mutually agreed upon by the parties, which date shall be the later of January 31, 2008 or the last Business Day in the month that all of the conditions precedent set forth in Article VI have been satisfied or waived (other than those conditions which by their terms are intended to be satisfied at the Closing). On the Closing Date, each of the Company and the Acquisition Sub shall execute the Certificate of Merger, and the Company shall file the Certificate of Merger with the Secretary of State of the State of Delaware pursuant to Section 1.2 hereof.

**ARTICLE II**

**PAYMENT OF CLOSING CONSIDERATION; EFFECT OF MERGER ON CAPITAL STOCK OF THE COMPANY AND ACQUISITION SUB**

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                    3M_MDL000294307

**2.1      Purchase Price; Delivery of Funds and Surrender of Certificates.**

(a)      The aggregate purchase price payable in respect of all Shares, Preferred Shares and Options outstanding immediately prior to the Effective Time pursuant to the Merger shall be a dollar amount (such amount, the "Closing Consideration") equal to (i) $1,200,000,000, plus (ii) the amount, if any, by which Cash exceeds $2,000,000, less (iii) the amount, if any, by which Cash is less than $2,000,000, less (iv) all Transaction Related Expenses to the extent not paid at or prior to the Closing, less (v) Debt, plus (vi) the Acquisition 1 Total Enterprise Value (if any), plus (vii) the Acquisition 2 Total Enterprise Value (if any).

(b)      The Estimated Closing Consideration shall be as set forth in the Estimated Closing Consideration Statement, and shall be subject to adjustment as set forth in Section 2.4.   The Parent shall pay such Estimated Closing Consideration in immediately available funds as directed by the Company in accordance with this Section 2.1(b) and Section 2.3.   At the Effective Time, upon surrender by each Shareholder and each Preferred Holder to the Company of the certificate(s) which, immediately prior to the Effective Time, represented Shares or Preferred Shares, as applicable, together with a duly executed letter of transmittal in substantially the form attached as Exhibit B hereto (a "Letter of Transmittal") containing such provisions as shall reasonably be agreed by the Company and Parent, including provisions designating the Representative as the Representative under this Agreement, and providing for indemnification and other customary terms, the Company shall pay or shall cause to be paid to (i) each such Shareholder with respect to any Shares, an amount in cash equal to the product of (x) (I) the Estimated Closing Consideration plus (II) the Aggregate Exercise Price less (III) the Total Preferred Amount, and (y) such Shareholder's Proportionate Percentage, such amount to be paid by wire transfer of immediately available funds to an account designated by such Shareholder not later than three (3) Business Days prior to the Closing Date and (ii) each such Preferred Holder with respect to any Preferred Shares, an amount in cash equal to the Preferred Amount multiplied by the number of Preferred Shares held by such Preferred Holder, such amount to be paid by wire transfer of immediately available funds to an account designated by such Preferred Holder not later than three (3) Business Days prior to the Closing Date.   Until surrendered as contemplated by this Section 2.1(b), each certificate representing Shares and Preferred Shares shall be deemed, at and after the Effective Time, to represent only the right to receive upon such surrender the consideration or the Preferred Amount, respectively, contemplated by this Article II and the DGCL.

(c)      If payment or delivery is to be made to a Person other than the Person in whose name a certificate representing Shares or Preferred Shares, as applicable, so surrendered is registered, it shall be a condition of payment that the certificate so surrendered shall be properly endorsed or otherwise in proper form for transfer, that the signatures on the certificate or any related stock power shall be properly guaranteed and that the Person requesting such payment either pay any transfer or other Taxes required by reason of the payment to a Person other than the registered holder of the certificate so surrendered or establish to the reasonable satisfaction of the Surviving Company that such Tax has been paid or is not applicable.

(d)      In the event that any certificate representing Shares or Preferred Shares shall have been lost, stolen or destroyed, upon the making of an affidavit of that fact by a registered holder of such lost, stolen or destroyed certificate in form and substance reasonably

3

Confidential - Subject to Protective Order                    3M_MDL000294308

P-GEN-01196.101

satisfactory to the Surviving Company, the Surviving Company will issue in exchange for such lost, stolen or destroyed certificate the Closing Consideration (as adjusted pursuant to Section 2.4) or Preferred Amount, as applicable, in respect thereof in the manner set forth in this Article II.

**2.2    Effect on Capital Stock.**

(a)    The manner and basis of converting, exchanging or canceling the shares of capital stock of each of the Company and Acquisition Sub into or for cash (or the contingent right to receive cash) or securities of the Surviving Company shall be as follows:

(i)    each share of common stock, $.01 par value, of Acquisition Sub issued and outstanding immediately prior to the Effective Time shall be converted into one (1) share of common stock, $.01 par value, of the Surviving Company;

(ii)    each Share and each Preferred Share issued and outstanding immediately prior to the Effective Time and owned directly or indirectly by the Company (whether as treasury stock or otherwise), Parent or Acquisition Sub, if any, shall, by virtue of the Merger and without any action on the part of the holder thereof, be canceled and no consideration shall be delivered in exchange therefor;

(iii)    each Share and each Preferred Share that is authorized but unissued immediately prior to the Effective Time shall be canceled;

(iv)    Shares issued and outstanding immediately prior to the Effective Time (other than Dissenting Shares and Shares to be cancelled in accordance with Section 2.2(a)(ii)) shall, by virtue of the Merger and without any action on the part of the Holders thereof, cease to be outstanding, and each Holder thereof shall thereafter be entitled to receive in respect of such Holder's Shares an amount in cash without any interest thereon equal to the product of (A) (x) the Closing Consideration plus (y) the Aggregate Exercise Price less (z) the Total Preferred Amount, and (B) such Holder's Proportionate Percentage; and

(v)    Preferred Shares issued and outstanding immediately prior to the Effective Time shall, by virtue of the Merger and without any action on the part of the Preferred Holders thereof, cease to be outstanding, and each Preferred Holder shall thereafter be entitled to receive in respect of such Preferred Holder's Preferred Shares an amount in cash without any interest thereon equal to the Preferred Amount multiplied by the number of Preferred Shares held by such Preferred Holder.

(b)    Notwithstanding anything in this Agreement to the contrary, each Shareholder who did not vote or execute a written consent in favor of the Merger and who complies with all of the relevant provisions of Section 262 of the DGCL (each, a "Dissenting Shareholder" and collectively, the "Dissenting Shareholders", and the Shares held by such Dissenting Shareholders, "Dissenting Shares") shall not have the right to receive payment pursuant to Section 2.2(a)(iv) above, but instead and in lieu thereof shall have the right to receive payment from the Surviving Company with respect to its Dissenting Shares in accordance with the DGCL, unless and until such Shareholder shall have effectively withdrawn

4

ffny03/choial/717967.2

Confidential - Subject to Protective Order

or lost its rights to appraisal under the DGCL. If any such Shareholder shall have effectively withdrawn or lost such right, such Shareholder shall have the right to receive from the Surviving Company payment pursuant to Section 2.2(a)(iv) above. No later than ten (10) days following the date on which the Effective Time occurs, the Parent and the Surviving Company shall provide all Dissenting Shareholders with notice of the Effective Time.

## 2.3    Stock Options.

(a)    In connection with the Merger and without any action on the part of the Holders thereof, each Option, whether or not then vested or exercisable, outstanding immediately prior to the Effective Time shall be cancelled as of the Effective Time, and each Holder thereof shall have the right to receive an amount in cash equal to (1) the product of (A) such Holder's Proportionate Percentage and (B) (w) the Closing Consideration, plus (x) the Aggregate Exercise Price, minus (y) the Total Preferred Amount, minus (2) the aggregate exercise price for all Shares issuable upon the exercise of Options held by such Holder outstanding immediately prior the Effective Time. The Company will treat the Merger as a "Realization Event" for purposes of the 2006 Stock Incentive Plan, and will exercise its option under Section 9.3 of such plan to cash out all outstanding equity awards issued under such plan resulting in the termination of such plan.

(b)    On or as soon as practicable following the Closing Date (but in any event within 5 Business Days following the Closing Date), the Parent and the Company shall cause the Company's payroll agent to pay to each Holder of Options an amount in cash equal to (1) the product of (A) such Holder's Proportionate Percentage and (B) (w) the Estimated Closing Consideration, plus (x) the Aggregate Exercise Price minus (y) the Total Preferred Amount, minus (2) the aggregate exercise price for all Shares issuable upon the exercise of Options held by such Holder outstanding immediately prior the Effective Time. Notwithstanding anything in this Agreement to the contrary, any payment to a Holder in respect of any Options or Restricted Shares shall be reduced by the applicable amount of withholding for income and employment Tax purposes (the "Withholding Amount"), which Withholding Amount shall be paid to the Company to be applied to such Taxes for the benefit of the Holders disposing of such Options or Restricted Shares. Prior to the Effective Time, the Company shall provide to Parent a schedule setting forth each Holder of Options and a good faith estimate of the amount such Holder will receive in respect of his or her Options pursuant to this clause (b).

## 2.4    Closing Adjustment.

(a)    On or before the date that is ten (10) days prior to the anticipated Closing Date, the Company shall prepare and deliver to Parent and Acquisition Sub (i) a statement, certified by the Company's Chief Financial Officer (the "Estimated Closing Consideration Statement"), setting forth the Company's good faith estimate of the Closing Consideration (such amount, the "Estimated Closing Consideration"), together with reasonable supporting detail, and (ii) a statement, certified by the Company's Chief Financial Officer (the "Total Preferred Amount Statement"), setting forth the aggregate Preferred Amount to be paid to all Preferred Holders in exchange for the Preferred Shares outstanding immediately prior to the Effective Time (the "Total Preferred Amount"), together with reasonable supporting detail.

5

Confidential - Subject to Protective Order                    3M_MDL000294310

P-GEN-01196.103

(b)     After receipt of the Estimated Closing Consideration Statement and the Total Preferred Amount Statement and prior to the day falling three (3) days prior to the anticipated Closing Date, Parent and the Company shall negotiate in good faith to mutually agree upon the amounts set forth in the Estimated Closing Consideration Statement.  If Parent and the Company agree upon the amounts set forth in the Estimated Closing Consideration Statement and the Total Preferred Amount Statement, then the Closing Consideration set forth therein shall be final, conclusive, binding and non-appealable.

(c)     If Parent and the Company fail to agree upon the amounts set forth in the Estimated Closing Consideration Statement within three (3) days of the anticipated Closing Date, neither Parent nor the Company shall delay the Closing because of such failure to agree. The Estimated Closing Consideration set forth in the Estimated Closing Consideration Statement delivered by the Company shall be deemed to apply for purposes of Section 2.1(b) and Section 2.3(b).  As promptly as practicable following the Closing and in no event later than fifteen (15) days following the Closing Date, Parent and the Representative shall attempt in good faith to resolve any differences that they had with respect to the amounts set forth in the Estimated Closing Consideration Statement.  If Parent and the Representative resolve their differences, then, upon their agreement in writing setting forth such resolution, the Estimated Closing Consideration Statement, as amended to the extent necessary to reflect the resolution of their differences, shall be final, conclusive, binding and non-appealable.

(d)     If Parent and the Representative are unable to agree upon the amounts set forth in the Estimated Closing Consideration Statement during the 15-day period following the Closing Date, then they shall refer their remaining differences to the dispute resolution department of a nationally recognized independent accounting firm as the Parent and the Representative may agree (such accounting firm, the "Independent Accounting Firm"), which shall determine, whether and to what extent, if any, the Estimated Closing Consideration Statement requires adjustment.  Parent and the Representative shall instruct the Independent Accounting Firm to deliver its written determination to Parent and the Representative no later than the 15th day following the date on which the remaining differences are referred to the Independent Accounting Firm.  The Independent Accounting Firm's written determination shall be final, conclusive, binding and non-appealable.  The fees and expenses of the Independent Accounting Firm shall be paid 50% by Parent and 50% by the Representative.  Parent and the Representative shall make available to the Independent Accounting Firm and to each other all relevant books and records and working papers relating to the Estimated Closing Consideration Statement (including, without limitation, access to personnel at the Surviving Company who prepared such Estimated Closing Consideration Statement) and all other items reasonably requested by the Independent Accounting Firm.

(e)     If the Closing Consideration (if and when determined in accordance with Section 2.4(c) or Section 2.4(d)) exceeds the Estimated Closing Consideration (the amount of such excess, the "Excess Amount"), then the Closing Consideration shall be adjusted upward by an amount equal to the Excess Amount and within five (5) Business Days following such determination, Parent shall pay or cause to be paid to each Holder of Shares and Options outstanding immediately prior to the Effective Date an amount equal to the product of (x) such Holder's Proportionate Percentage and (y) the Excess Amount (less the applicable Withholding Amount for any such payment made in respect of Options and Restricted Shares).

6

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294311

(f)     If the Estimated Closing Consideration exceeds the Closing Consideration (if and when determined in accordance with Section 2.4(c) or Section 2.4(d)) (the amount of such excess, the "Shortfall Amount"), then the Closing Consideration shall be adjusted downward by an amount equal to the Shortfall Amount and the Representative (on behalf of the Holders of Shares and Options) shall pay to Parent, within five (5) days following such determination, the Shortfall Amount.

**2.5     No Further Ownership Rights in Common Stock, Preferred Stock and Options.**

The Closing Consideration, when paid in accordance with the provisions of this Article II, shall be deemed to have been paid in full satisfaction of all rights pertaining to the Options, Shares and Preferred Shares outstanding immediately prior to the Effective Time.  At and after the Effective Time, the stock transfer books of the Surviving Company shall be closed with respect to the capital stock of the Company, and there shall be no further registration of transfers of the capital stock of the Company thereafter on the records of the Surviving Company.  If, after the Effective Time, certificates representing Shares or Preferred Shares, or option agreements representing Options, in each case, that were outstanding immediately prior to the Effective Time are presented to the Surviving Company for any reason, together with a duly executed Letter of Transmittal, they shall be canceled and exchanged as provided in this Article II.

**ARTICLE III**

**REPRESENTATIONS AND WARRANTIES
OF THE COMPANY**

The Company hereby represents and warrants to the Parent and Acquisition Sub as follows:

**3.1     Organization, Etc.**

The Company and each of the Company Subsidiaries is duly organized, validly existing and in good standing (in such jurisdictions where such status is recognized) under the laws of the jurisdiction of its organization, with all corporate power and authority and all licenses, permits and authorizations necessary to own, lease or operate the properties and assets owned, leased or operated by it and to carry on its business as currently conducted, except where the failure to be so duly organized, validly existing and in good standing (in such jurisdictions where such status is recognized) or to have such corporate power or authority, licenses, permits and authorizations would not be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.  The Company and each of the Company Subsidiaries is qualified or licensed to do business in each jurisdiction in which ownership of its property or assets or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed is not reasonably likely to have, in the aggregate, a Material Adverse Effect.  True and complete copies of the certificate of incorporation and by-laws (or other comparable governing documents) of the Company and each of the Company Subsidiaries, as in effect as of the date hereof, have been heretofore made available to Parent.

7

ffny03\choial\717967.2

3M_MDL000294312

**3.2     Capitalization of the Company and the Company Subsidiaries; Minute Books.**

(a)     Schedule 3.2(a) sets forth the authorized and the issued and outstanding capital stock of the Company, and the owners thereof, together with the issued and outstanding Options and Restricted Shares and the Holders thereof.  Except as set forth on Schedule 3.2(a), all issued and outstanding shares of capital stock of the Company are duly authorized, validly issued, fully paid, nonassessable and free of preemptive rights and held of record by the Persons indicated on Schedule 3.2(a).  Except as set forth on Schedule 3.2(a) or required by applicable Law, there are no outstanding (i) securities convertible into or exchangeable for the capital stock of the Company, (ii) options, warrants, calls or other rights to purchase or subscribe for capital stock of the Company or (iii) Contracts of any kind to which any of the Company and the Company Subsidiaries is subject or bound requiring the issuance after the date hereof of (x) any capital stock of the Company, (y) any convertible or exchangeable security of the type referred to in clause (i) or (z) any options, warrants, calls or rights of the type referred to in clause (ii).  Except as set forth on Schedule 3.2(a), there are no voting trusts, proxies or other agreements or understandings to which the Company or any Company Subsidiaries is bound or, to the Knowledge of the Company to which any Person is bound with respect to voting of any shares of capital stock or any other equity interest of the Company or any Company Subsidiary.  Neither the Company nor any Company Subsidiary is the subject of any bankruptcy, dissolution, liquidation, reorganization or similar proceeding.

(b)     Schedule 3.2(b) sets forth a complete list of the Company Subsidiaries and the authorized and the issued and outstanding capital stock or other ownership interests, as the case may be, of each of the Company Subsidiaries and the owners thereof.  Except as set forth on Schedule 3.2(b), all issued and outstanding shares of capital stock or other ownership interests of each of the Company Subsidiaries are duly authorized, validly issued, fully paid, nonassessable and free of preemptive rights and held of record and owned beneficially by the Persons indicated on Schedule 3.2(b), free and clear of any Encumbrances other than Permitted Encumbrances.  Except as set forth on Schedule 3.2(b), or required by applicable Law, there are no outstanding (i) securities convertible into or exchangeable for the capital stock or other ownership interests of any of the Company Subsidiaries, (ii) options, warrants, calls or other rights to purchase or subscribe for capital stock or other ownership interests of any of the Company Subsidiaries or (iii) Contracts of any kind by which any of the Company and the Company Subsidiaries is subject or bound requiring the issuance after the date hereof of (x) any capital stock or any other ownership interests of any of the Company Subsidiaries, (y) any convertible or exchangeable security of the type referred to in clause (i) or (z) any options, warrants, calls or rights of the type referred to in clause (ii).  Except for the Company's direct or indirect interest in the Company Subsidiaries as set forth on Schedule 3.2(b), neither the Company nor any Company Subsidiary owns, directly or indirectly, any interest or investment in the form of equity in, and neither the Company nor any Company Subsidiary is subject to any obligation or requirement to provide for or make any investment in, any Person.

(c)     The stock record books of the Company and each Company Subsidiary accurately reflect in all material respects all transactions in their respective capital stock (or other ownership interests).  Correct and complete copies of the minute books of the Company (for the period from Company's inception to date) have been made available to Parent prior to the date hereof.

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                                           3M_MDL000294313

**3.3     Authority Relative to this Agreement, Etc.**

The Company has all requisite corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  The execution and delivery by the Company of this Agreement and the consummation of the transactions contemplated hereby has been duly authorized by all requisite corporate action of the Company. This Agreement has been duly and validly executed and delivered by the Company and, assuming this Agreement has been duly authorized, executed and delivered by Parent and Acquisition Sub, this Agreement constitutes a valid and binding obligation of the Company, enforceable against it in accordance with its terms, in each case subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally.  The execution and delivery of the Principal Stockholder Consents constitutes the required approval of the Holders under the DGCL.

**3.4     Consents and Approvals; No Violations.**

Except as set forth on Schedule 3.4, neither the execution, delivery and performance of this Agreement by the Company nor the consummation by the Company of the transactions contemplated hereby will (a) violate any provision of the certificate of incorporation or by-laws (or other comparable governing documents) of the Company or any of the Company Subsidiaries, (b) require any consent, waiver, approval, license, authorization or permit of, or filing with or notification to, any Governmental Authority except for (i) compliance with all applicable antitrust Laws and (ii) such consents, waivers, approvals, licenses, authorizations, permits, filings or notifications which, if not made or obtained, would not reasonably be likely to have, individually or in the aggregate, a Material Adverse Effect, (c) result in a violation or breach of, or constitute (with or without the giving notice, the lapse of time or both) a default (or give rise to any right of termination, cancellation or acceleration of any liability or obligation to repay or right to receive payment) under any Contract, to which the Company or any of the Company Subsidiaries is a party or by which the Company or any of the Company Subsidiaries or any of their respective properties or assets may be bound, except such violations, breaches and defaults which are not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect, or (d) violate any Law applicable to the Company or any of the Company Subsidiaries or by which any of their respective properties or assets are bound, except such violations which are not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.

**3.5     Financial Statements.**

The Company has made available to Parent true and complete copies of (i) the audited consolidated balance sheet of the Company and its Subsidiaries as of September 30, 2006 and the related consolidated statements of operations, stockholders' equity and cash flows for the year ended September 30, 2006 (collectively, the "Audited Statements").  Attached on Schedule 3.5 are the unaudited consolidated balance sheet of the Company and its Subsidiaries as of June 30, 2007 and the related unaudited consolidated statements of operations, stockholders' equity and cash flows for the nine month period ending on June 30, 2007 (the "Unaudited Financial Statements" and together with the Audited Statements, the "Company Financial Statements").  Except as otherwise indicated in the Company Financial Statements or as set forth on Schedule

9

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294314

3.5, the balance sheets and statements of income and cash flows included in the Company Financial Statements have been prepared in accordance with GAAP consistently applied during the periods involved and fairly present, in all material respects, the consolidated financial position and the results of operations and cash flows of the Company Group as of the dates and for the periods indicated therein (subject, in the case of unaudited statements, to normal year-end adjustments (none of which are expected to be material) and the absence of footnotes). The Company makes no representation with respect to any financial information of the Company or any of the Company Subsidiaries other than as contained in or pursuant to this Agreement.

**3.6    Absence of Certain Changes.**

From June 30, 2007 to the date hereof, except as set forth on Schedule 3.6 or as contemplated by this Agreement and the Related Documents, the Company and the Company Subsidiaries have conducted their respective businesses in the ordinary course of business, and there has not been:

(a)    any change, development, event, occurrence, condition or effect that, individually or in the aggregate, has had or is reasonably likely to have a Material Adverse Effect;

(b)    any declaration, setting aside or payment of any dividend or other distribution (whether in cash, stock or property) with respect to any of the Company's or any Company Subsidiary's capital stock or any redemption, repurchase or other acquisition of any capital stock of the Company or any Company Subsidiary or any securities convertible, exchangeable or exercisable for or into capital stock of the Company or any Company Subsidiary;

(c)    (i) any granting by the Company or any Company Subsidiary to any officer or employee of the Company of any material increase in compensation; (ii) any granting by the Company or any Company Subsidiary to any officer, employee, director or consultant of any increase in severance or termination pay; (iii) any entry by the Company or any Company Subsidiary into any employment agreement, or any severance or termination arrangement, with any officer, employee, director or consultant; or (iv) any adoption, entering into, amendment or termination of any Benefit Plans in each case, except in the ordinary course of business;

(d)    any material change in accounting methods, principles or practices by the Company or any Company Subsidiary, any material Tax elections made or any material Tax liability settled or compromised, or any material revaluation for financial statement purposes by the Company or any Company Subsidiary of any asset (including, without limitation, any material writing down of the value of any material property, investment or assets);

(e)    any material adverse change in the Company or the Company Subsidiaries' relationship with any of its material suppliers, customers, distributors, lessors, licensors, licensees or other third parties material to the business other than changes in pricing and ordinary course changes in scope or quantity of products ordered;

10

ffny03\choial\717967.2

3M_MDL000294315

(f)    any sale, lease, license or other disposition by the Company or a Company Subsidiary of any of its or their assets, individually with a fair market value of $500,000 or higher;

(g)    any amendment, restatement, supplement or waiver of any provision of the certificate of incorporation or by-laws (or other comparable governing documents) of the Company or any Company Subsidiary; or

(h)    any agreement by the Company or any Company Subsidiary to do any of the foregoing.

**3.7    Compliance with Law; Permits.**

Except as set forth on Schedule 3.7, (a) each of the Company and the Company Subsidiaries is in compliance with all Laws applicable to the Company and the Company Subsidiaries, respectively, except for such instances of non-compliance which are not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect, (b) each of the Company and the Company Subsidiaries has all governmental permits, licenses and authorizations necessary for the conduct of its respective business as presently conducted ("Permits") and is in compliance with the terms of its respective Permits, except where the failure to have any such Permit be in compliance is not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect and (c) neither the Company nor any Company Subsidiary has received any written or, to the Knowledge of the Company, oral communication since January 1, 2007 from a Governmental Authority that alleges that the Company or a Company Subsidiary is not in compliance in any respect with any applicable Law, except if such non-compliance is not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.

**3.8    Litigation.**

Except as set forth on Schedule 3.8, as of the date hereof, there is no Action pending, or to the Knowledge of the Company, threatened against the Company or any Company Subsidiary that (a) involves a claim in excess of $250,000, (b) involves a claim for an unspecified amount which is reasonably likely to have a Material Adverse Effect or (c) seeks injunctive relief and is reasonably likely to materially impair the ability of the Company to perform its obligations under this Agreement.  Except as set forth on Schedule 3.8, to the Knowledge of the Company, there are no outstanding writs, judgments, injunctions, decrees, settlement agreements or similar orders by which the Company, the Company Subsidiaries or any of their respective assets or properties, are bound that could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.  Except as set forth on Schedule 3.8, since June 30, 2007, there has not been any change, circumstance or event which has had or would be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect with respect to any liability relating to or arising from any of the Actions set forth on Schedule 3.8.

**3.9    No Undisclosed Liabilities.**

Except as set forth in the Company Financial Statements or as set forth on Schedule 3.9, neither the Company nor any of the Company Subsidiaries has any material indebtedness,

ffny03\choial\717967.2

Confidential - Subject to Protective Order    3M_MDL000294316

obligations or liabilities of any kind (whether accrued, absolute, contingent or otherwise, and whether due or to become due) which are of a nature required by GAAP to be reflected in a balance sheet or the notes thereto and which are not accrued or reserved against in the June 30, 2007 balance sheet included in the Company Financial Statements, other than liabilities or obligations (i) otherwise specifically disclosed in this Agreement or in the Schedules hereto or (ii) incurred since June 30, 2007 in the ordinary course of business consistent with past practice.

**3.10    Taxes.**

Except as set forth on <u>Schedule 3.10</u>, for all taxable periods beginning on or after October 1, 2004, (a) all material Tax Returns required to be filed by or on behalf of the Company and each of the Company Subsidiaries have been duly and timely filed with the appropriate Tax Authority (after giving effect to any valid extensions of time in which to make such filings); (b) such Tax Returns were true, correct and complete in all material respects when filed; (c) all amounts shown on such Tax Returns as due, and all other material Taxes that have become due and payable by any member of the Company Group, have been fully and timely paid; (d) the Company and the Company Subsidiaries have complied in all material respects with all applicable Laws relating to the payment, collection or withholding of Taxes (such as sales Taxes or withholding of Taxes from the wages of employees or other amounts paid or owing to any independent contractor, creditor, stockholder or other third party); (e) neither the Company nor any Company Subsidiary has been a member of a combined, consolidated, affiliated or unitary group for Tax filing purposes, other than the group in which it currently is a member, for which it has any current or future liability for Taxes; (f) the Company and the Company Subsidiaries are not a party to any Tax sharing indemnity or similar agreement allocating tax liability that will not be terminated on the Closing Date without any future liability to the Company or a Company Subsidiary (including for past Taxes); (g) to the Knowledge of the Company, no material claim has been made in writing by any Tax Authority: (i) in a jurisdiction in which the Company or the Company Subsidiaries do not file Tax Returns that any such person is or may be subject to Taxation by that jurisdiction or (ii) concerning any Tax liability of the Company or the Company Subsidiaries; (h) neither the Company nor any of its Subsidiaries currently is the beneficiary of any extension of time within which to file any tax Return; (i) all material deficiencies asserted or assessments made, as a result of any examinations by any Tax Authority of Tax Returns of or covering the Company or any of its Subsidiaries, have been fully paid or are being contested in good faith and no other material audits or investigations by any Tax Authority relating to any Tax Returns of or covering the Company or any of its Subsidiaries are in progress; (j) the Company has made available to Parent all material ruling requests, private letter rulings, notices of proposed deficiencies, closing agreements and settlement agreements, and any similar, documents or communications sent or received by the Company Group relating to Taxes to the extent still pending or in effect; (k) neither the Company nor any of its Subsidiaries has been a United States real property holding corporation within the meaning of Code §897(c)(2) during the applicable period specified in Code §897(c)(1)(A)(ii); (l) to the Knowledge of the Company, each of the Company and its Subsidiaries have disclosed on their federal income tax Returns all positions taken therein that could give rise to a substantial understatement of federal income tax within the meaning of Code §6662; (m) the Company and the Company Subsidiaries have not incurred any material liability for Taxes from and after September 30, 2006 other than Taxes incurred in the ordinary course; (n) the Company and the Company Subsidiaries have not agreed to, and are not required to, make any adjustments or changes either on, before or after the

12

Closing Date, to their accounting methods pursuant to Section 481 of the Code (or similar provisions of state, local or foreign law), and neither the Internal Revenue Service nor any other Tax Authority has, to the Knowledge of the Company, proposed in writing any such adjustments or changes in the accounting methods of the Company and the Company Subsidiaries; (o) the unpaid Taxes of the Company and the Company Subsidiaries, (i) did not, as of the most recent fiscal quarter end, exceed the reserve for Tax liability (rather than any reserve for deferred Taxes established to reflect timing differences between book and Tax income) set forth on the fact of the most recent financial statements of the Company and (ii) will not exceed that reserve as adjusted for operations and transactions through the Closing Date in accordance with the past customs and practice of the Company and the Company Subsidiaries in filing their Tax Returns; and (p) neither the Company nor any of the Company Subsidiaries is a party to any agreement, contract, arrangement or plan that has resulted or will result, separately or in the aggregate in any payment of any "excess parachute payment" within the meaning of Code section 280G (or any corresponding provision of state, local or foreign Tax law).  Other than as set forth in this Section 3.10, the Company makes no representation or warranty in this Agreement with respect to Tax matters.  Schedule 3.10(a) sets forth the Company's good faith estimate of the Company's net operating loss for the periods, and based on the assumptions, set forth in that Schedule.

**3.11   Brokers' and Finders' Fees.**

Except as set forth on Schedule 3.11, the Company has not employed, nor are they subject to, any valid claim of liability or obligation to, any broker, finder, consultant or other intermediary in connection with the transactions contemplated by this Agreement.  Parent shall be responsible for any payment, fee or commission that may be due to the parties (other than Permira Advisers L.L.C.) listed on Schedule 3.11 in connection with the transactions contemplated hereby.

**3.12   Intellectual Property.**

(a)   Except as otherwise indicated on Schedule 3.12(a), the Company or one of the Company Subsidiaries owns or has a valid right to use each patent, trademark, service mark, domain name, logo, trade name, proprietary trade dress, copyright, trade secret, proprietary composition, proprietary information and proprietary method (including registrations and applications for registrations of any of the foregoing) used by the Company Group in its business (the "Intellectual Property"), except where the failure to own or have such a valid right could not reasonably be expected to have a Material Adverse Effect.

(b)   Neither the Company nor any of the Company Subsidiaries is in material default under any material license concerning use of the Intellectual Property and to the Knowledge of the Company there are no threatened claims that the Company or any of the Company Subsidiaries is in material default under any material license concerning use of the Intellectual Property.

(c)   Except as otherwise indicated on Schedule 3.8 or Schedule 3.12(c): (i) to the Knowledge of the Company, the operation of its business as currently conducted, and the use by the Company or any of the Company Subsidiaries of its Intellectual Property, does not infringe the intellectual property rights of any such Person; and (ii) there is no Action or claim

13

ffny03\choial\717967.2

3M_MDL000294318

relating to the Intellectual Property affecting the business or operations of the Company or any of the Company Subsidiaries which are pending or, to the Knowledge of the Company, threatened against the Company or any of the Company Subsidiaries or any of its officers or directors which is reasonably likely to have a Material Adverse Effect.

(d)     The Company, one of the Company Subsidiaries or their respective predecessors is listed in the records of the United States Patent and Trademark Office as the sole owner of record of, and does currently own, the patents listed on Schedule 3.12(d)(1) (the "Domestic Patents") and each of the applications listed on Schedule 3.12(d)(2) (the "Domestic Patent Applications"), except as otherwise indicated on such schedules.  To the Knowledge of the Company: (i) there are no claims of third parties to any ownership interest in any of the Domestic Patents or Domestic Patent Applications, and except for the security interest of the Company's lenders under existing credit facilities, there exists no lien with respect to any of the Domestic Patents or Domestic Patent Applications; and (ii) none of the Domestic Patents or Domestic Patent Applications have been abandoned or have been held invalid or unenforceable.

(e)     The Company, one of the Company Subsidiaries or their respective predecessors is listed in the records of the appropriate foreign offices as the sole owner of record of, and does currently own, the foreign patents listed on Schedule 3.12(e)(1) (the "Foreign Patents") and each of the applications listed on Schedule 3.12(e)(2) (the "Foreign Patent Applications"), except as otherwise indicated on such schedules.  To the Knowledge of the Company: (i) there are no claims of third parties to any ownership interest in any of the Foreign Patents or Foreign Patent Applications, and except for the security interest of the Company's lenders under existing credit facilities, there exists no lien with respect to any of the Foreign Patents or Foreign Patent Applications; and (ii) none of the Foreign Patents or Foreign Patent Applications have been abandoned or have been held invalid or unenforceable.

(f)     The Company, one of the Company Subsidiaries or their respective predecessors is listed in the records of the United States Patent and Trademark Office as the holder of record of, the trademarks listed on Schedule 3.12(f) (the "Domestic Trademarks"), except as otherwise indicated on such schedules.  To the Knowledge of the Company, there are no claims of third parties to any ownership interest in any of the Domestic Trademarks, and except for the security interest of the Company's lenders under existing credit facilities, there exists no lien with respect to any of the Domestic Trademarks, and none of the Domestic Trademarks have been abandoned or have been held invalid or unenforceable.

(g)     The Company, one of the Company Subsidiaries or their respective predecessors is listed in the records of the appropriate foreign offices as the sole owner of record of, and does currently own, the foreign trademarks listed on Schedule 3.12(g) (the "Foreign Trademarks"), except as otherwise indicated on such schedules.  To the Knowledge of the Company, there are no claims of third parties to any ownership interest in any of the Foreign Trademarks, and except for the security interest of the Company's lenders under existing credit facilities, there exists no lien with respect to any of the Foreign Trademarks, and none of the Foreign Trademarks have been abandoned or have been held invalid or unenforceable.

(h)     The Company, one of the Company Subsidiaries or their respective predecessors is listed in the records of the appropriate authority as the sole owner of record of,

14

Confidential - Subject to Protective Order

and does currently own, the domain name URL addresses listed on Schedule 3.12(h) (the "Domain Names"). To the Knowledge of the Company, there are no claims of third parties to any ownership interest in any of the Domain Names, and except for the security interest of the Company's lenders under existing credit facilities, there exists no lien with respect to any of the Domain Names, and none of the Domain Names have been abandoned.

(i)     (1) Except as otherwise indicated on Schedule 3.8 or Schedule 3.12(c), to the Knowledge of the Company, neither the Company nor any of the Company Subsidiaries has received any communication from any Person alleging that the Domestic Patents, Foreign Patents, Domestic Trademarks, or Foreign Trademarks are not valid and enforceable as issued; and (2) there is no action, suit, claim or proceeding relating to the validity or enforceability of the Domestic Patents, Foreign Patents, Domestic Trademarks, or Foreign Trademarks as issued that, if determined in a manner adverse to the Company, would be reasonably expected to result in a Material Adverse Effect.

(j)     Except as would not reasonably be expected to have a Material Adverse Effect, the Intellectual Property consists of all of the intellectual property that is necessary to conduct the business of the Company and the Company Subsidiaries, and no other intellectual property is required to conduct such business. To the Knowledge of the Company, the consummation of the transactions contemplated under this Agreement will not impair the ownership of or valid rights of the Company and the Company Subsidiaries to use the Intellectual Property in any material respect. The Company and the Company Subsidiaries have taken reasonable measures to ensure the confidentiality and security of any trade secrets and other proprietary information included in the Intellectual Property.

**3.13    Employee Benefit Plans; Employees.**

(a)     General.

(i)     Schedule 3.13(a)(i) lists all material employee benefit plans and employment or severance agreements or other similar arrangements to which the Company or any Company Subsidiary is a party or by which any of them is bound or has any liability (collectively, the "Benefit Plans"), including, without limitation, (a) any profit-sharing, deferred compensation, bonus, stock option, phantom stock, stock purchase, pension, retainer, consulting, retirement, severance, change of control, supplemental unemployment benefits, welfare or incentive plan, agreement or arrangement, (b) any plan, agreement or arrangement providing for "fringe benefits" or perquisites to employees, officers, directors or agents, (c) any hospitalization, health, welfare, dental, disability, life insurance or other benefit plan, or (d) any other "employee benefit plan" within the meaning of Section 3(3) of ERISA.

(ii)     Except as set forth on Schedule 3.13(a)(ii), Seller has made available to Parent true and complete copies of all Benefit Plans and, with respect to each Benefit Plan, if applicable, (a) the summary plan description, (b) the Form 5500 filed in the two most recent plan years, (c) the most recent determination letter from the IRS and (d) the two most recent actuarial reports.

15

ffny03\choial\717967.2

(iii)     Except as set forth on Schedule 3.13(a)(iii), the Benefit Plans have been operated in all material respects in compliance with their terms and the applicable provisions of ERISA, the regulations and published authorities thereunder, and all other Laws applicable to the Benefit Plans.  There are no actions (other than routine claims for benefits) pending or, to the Knowledge of the Company, threatened against the Company, any Company Subsidiary or any Benefit Plan or its assets, or arising out of any of the Benefit Plans which could reasonably be expected to result in material liability to the Company or any Company Subsidiary.  No Benefit Plan is under audit or investigation by the Internal Revenue Service, the Department of Labor, the Pension Benefit Guaranty Corporation or other regulatory agency and, to the knowledge of the Company, no such audit or investigation is threatened.  No prohibited transaction (within the meaning of Section 4975 of the Code or 406 of ERISA) has occurred with respect to any of such Benefit Plan that could reasonably be expected to result in material liability to the Company or any Company Subsidiary.

(iv)     No payment or benefit which will be made by the Company or any Company Subsidiary in connection with the transactions contemplated by this Agreement will be characterized as an "excess parachute payment" within the meaning of Section 280G(b)(1) of the Code.  Except as set forth on Schedule 3.13(a)(iv) or as otherwise provided in this Agreement, the execution of, and performance of the transactions contemplated by, this Agreement either alone or together with any additional or subsequent events, will not constitute an event under any Benefit Plan that will result in any payment (whether of severance pay or otherwise), acceleration, forgiveness of indebtedness, vesting, distribution, increase in benefits or obligation to fund benefits with respect to any Company Group Employee.

(v)     Except as set forth on Schedule 3.13(a)(v), no Benefit Plan is subject to the terms of any collective bargaining agreement.

(b)     Qualified Plans.  Except as set forth on Schedule 3.13(b), each Benefit Plan that is intended to be qualified under Section 401(a) of the Code and any trust maintained pursuant thereto has received a determination letter to such effect and that any such trust is exempt from federal income taxation under Section 501(c) of the Code, and nothing has occurred with respect to the operations of the Benefit Plans which is reasonably likely to cause the loss of such qualification or exemption.

(c)     Title IV Plans.  Except as set forth on Schedule 3.13(c), with respect to each Benefit Plan or other employee benefit plan subject to Title IV of ERISA (other than a Multiemployer Plan as defined below) which is maintained or contributed to by the Company, any Company Subsidiary or any trade or business (whether or not incorporated) that is a member of a group of which the Company or a Company Subsidiary is a member and with which the Company or any Company Subsidiary is under common control within the meaning of Section 414(b), (c) or (m) of the Code (an "ERISA Affiliate") or with respect to which any of them has or may have any liability (each a "Title IV Plan"), within the last six years, (i) neither the Company nor any Company Subsidiary nor any ERISA Affiliate has withdrawn from such Title IV Plan as a "substantial employer" (as defined in Section 4001(a) (2) of ERISA), (ii) neither the Company nor any Company Subsidiary nor any ERISA Affiliate has

16

ffny03\choial\717967.2

filed a notice of intent to terminate any such Title IV Plan or adopted any amendment to treat any such Title IV Plan as terminated, (iii) the Pension Benefit Guaranty Company ("PBGC") has not instituted proceedings to terminate any such Title IV Plan, (iv) no material reportable event (as described in Section 4043 of ERISA) (other than those events as to which the thirty day notice period is waived) has occurred with respect to any such Title IV Plan and (v) no amendment with respect to which security is required under Section 307 of ERISA or Section 401(a)(29) of the Code has been made or is reasonably expected to be made.  No accumulated funding deficiency, whether or not waived, exists with respect to any such Title IV Plan.  No event has occurred and no condition exists that would be reasonably expected to subject the Company or any of the Company Subsidiaries to any material liability imposed under Title IV of ERISA.   To the Knowledge of the Company, neither the Company nor any Company Subsidiary has or would have any liability (contingent or otherwise) arising under Title IV that arises or would arise by reason of the Company's or Company Subsidiary's relationship to any ERISA Affiliate (other than the Company or any Company Subsidiary).

(d)     Multiemployer Plans.  Except as set forth in Schedule 3.13(d), neither the Company, the Company Subsidiaries nor any ERISA Affiliate participates or has participated in the last six years in any multiemployer plan, as defined under Section 3(37) of ERISA (a "Multiemployer Plan").

(e)     Health Benefit Plans.   Except as required under Section 4980B of the Code or as set forth on Schedule 3.13(e), no Benefit Plan provides for welfare benefits to any employee following termination of employment.

(f)     Except as set forth in Schedule 3.8 or Schedule 3.13(f), with respect to the Company Group Employees, (i) within the last twelve (12) months, there has not been pending nor, to the Knowledge of the Company, threatened, (A) strike, slowdown, stoppage, organizational effort, picketing, handbilling activity, representation or certification campaign, grievance, arbitration, administrative hearing, or claim of unfair labor practice, not including workers' compensation claims, or (B) Action for wrongful discharge, Action for employment discrimination, Action for sexual harassment or other Action involving an employment dispute of any nature against the Company or any of the Company Subsidiaries which is, in the case of (A) and (B) and in the aggregate, reasonably likely to result in a material liability to the Company or any Company Subsidiaries; (ii) neither the Company nor the Company Subsidiaries are a party to any collective bargaining agreement or other Contract with any labor union or any other similar organization, no labor union or similar organization currently represents the employees of the Company and the Company Subsidiaries, and to the Knowledge of the Company, no labor union or similar organization, or any Company Group Employees have taken any action with respect to organizing the employees of the Company or the Company Subsidiaries; (iii) the Company has not, in the last three years, effectuated a "plant closing" or "mass layoff" as those terms are defined in WARN, affecting in whole or in part any site of employment, facility, operating unit or Company Group Employee without complying with the notice requirements and other provisions of WARN which could cause any liability to the Company or any of the Company Subsidiaries with respect to the Company Group Employees nor in the prior three-month period has any current or former Company Group Employee located in the United Kingdom been made redundant, had their contract of employment terminated or otherwise left their employment nor has any Company Group been

17

ffny03\choial\717967.2

3M_MDL000294322

party to a "relevant transfer" as defined by the Transfer of Undertakings (Protection of Employment) Regulations 1987 at any time in the 3 years prior to the date of this Agreement; (iv) neither the Company nor any Company Subsidiary is the subject of any pending or, to the Knowledge of the Company, threatened proceedings alleging that the Company or any of the Company Subsidiaries has engaged in any material unfair labor practice under any Law; (v) no Company Group Employee having total annual compensation of more than $200,000 has given notice to the Company or any Company Subsidiary of his or her intent to terminate employment with the Company or such Subsidiary; and (vi) to the Knowledge of the Company, no Company Group Employee is subject to any other secrecy or noncompetition agreement or any other agreement or restriction of any kind that would impede in any way the ability of such employee to carry out fully all of his or her activities.

(g)      Foreign Plans.      Without limiting the generality of the foregoing provisions of this Section 3.13, with respect to any Benefit Plan maintained outside of the United States (i) each such Benefit Plan has been maintained in all material respects in accordance with the applicable law of the relevant jurisdiction and (ii) each such Benefit Plan that is intended to satisfy any specific tax or other qualification requirements to the Knowledge of the Company satisfies such tax or other qualification requirements, except where the failure to satisfy such tax or other qualification requirement would not reasonably be expected to result in a Material Adverse Effect.

(h)      Other than as set forth in this Section 3.13, the Company makes no representation or warranty in this Agreement with respect to employee benefit or labor matters.

**3.14    Environmental Matters.**

(a)      Except as set forth on Schedule 3.14: (i) the Company and each of the Company Subsidiaries possess, and, since January 1, 2006, have possessed, all Permits, licenses and authorizations required by Environmental Laws for the conduct of its respective business (collectively,  "Environmental Permits"),  except  where  the  failure  to  possess  such Environmental Permits does not have and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect; (ii) the Company and each of the Company Subsidiaries is and, since January 1, 2006, has been in compliance with all applicable Environmental Laws and Environmental Permits, except for noncompliance that does not have and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect; (iii) there are no claims or proceedings pending or, to the Knowledge of the Company, threatened, against the Company any of the Company Subsidiaries or any of their respective predecessors alleging the violation of, noncompliance with or liability under any applicable Environmental Laws that would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect; (iv) no notice under any Environmental Law has been received from any Governmental Authority that is currently outstanding concerning the Release or possible Release of Hazardous Substances, or requiring an investigation for Hazardous Substances, at any location owned, operated or leased, now or in the past, by the Company or any Company Subsidiary, the subject matter of which notice would reasonably be expected to have a Material Adverse Effect; (v) there are no Hazardous Substances on, at, under, or migrating to or from, (A) any property currently owned, operated or leased by the Company or any of the Company Subsidiaries, or (B) to the Knowledge of the Company, any property

18

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                          3M_MDL000294323

formerly owned, operated or leased by the Company, any of the Company Subsidiaries, or any of their respective predecessors, in each case, that could reasonably be expected to result in liability under Environmental Law, except as would not reasonably be expected to have, in the aggregate, a Material Adverse Effect; and (vi) neither the Company, any of the Company Subsidiaries, nor, to the Knowledge of the Company, any of their respective predecessors, have used any waste disposal site, or otherwise disposed of, transported, or arranged for the transportation of, any Hazardous Substances to any place or location (x) in violation of any Environmental Law, or (y) listed on the National Priorities List or any similar state or foreign list of contaminated sites, in each case, except as would not reasonably be expected to have a Material Adverse Effect.

(b)      the Company has delivered or made available to Parent true and complete copies and results of any material reports, studies, analyses, tests, or monitoring in the possession or control of the Company or any Company Subsidiary with respect to Hazardous Substances on, at, under, or migrating to or from any property currently or formerly owned, operated, or leased by the Company, any Company Subsidiary or any of their respective predecessors, or concerning compliance by any of the foregoing with Environmental Law.

(c)      Other than as set forth in this <u>Section 3.14 and Section 3.8</u>, the Company makes no representation or warranty in this Agreement with respect to environmental, health or safety matters.

**3.15    Material Contracts.**

(a)      Except as set forth on <u>Schedule 3.15(a)</u>, neither the Company nor any of the Company Subsidiaries is a party to any Contract:

(i)      pursuant to which the Company or any Company Subsidiary has incurred any indebtedness for borrowed money, committed to incur indebtedness for borrowed money, or guaranteed indebtedness of any other Person (other than the Company or any Company Subsidiary) in excess of $500,000, or that is a Hedging Contract or Contract relating to the issuance of performance bonds, surety bonds, letters of credit or other credit support;

(ii)      that by its terms provides for the sale, assignment, license or other disposition of any asset or right (including Intellectual Property) of the Company or any Company Subsidiary that is material to the Company and the Company Subsidiaries, taken as a whole,

(iii)      that by its terms grants an Encumbrance upon any material asset of the Company or any Company Subsidiary, except for Permitted Encumbrances;

(iv)      that by its terms contains any covenant or provision currently in effect prohibiting the Company or any of the Company Subsidiaries from engaging in any line of business or competing with any Person in any geographic area;

19

Confidential - Subject to Protective Order

(v)     that is a partnership or joint venture agreement in which the Company or any of the Company Subsidiaries participates as a general partner or joint venturer;

(vi)     that by its terms requires the payment by or on behalf of the Company or any of the Company Subsidiaries in excess of $500,000 per annum, or the delivery by the Company or any of the Company Subsidiaries of goods or services with a fair market value in excess of $500,000 per annum or provides for the Company or any of the Company Subsidiaries to receive any payments in excess of $500,000 per annum;

(vii)     pursuant to which the Company or any Company Subsidiary has agreed to indemnify any other Person in other than Contracts with suppliers, distributors, sales representatives and customers entered into in the ordinary course of business or indemnification provided in connection with any Real Property Lease or in connection with personal property leases entered into in the ordinary course of business;

(viii)     pursuant to which the Company or any Company Subsidiary has advanced or loaned any amount to any of its directors, officers or employees outside the ordinary course of the Company Group's business; or

(ix)     that by its terms requires the Company or any Company Subsidiary to employ any individual at an annual salary in excess of $150,000.

(b)     The Company has made available to Parent or its agents or representatives a correct and complete copy of each Material Contract. Each Material Contract is in full force and effect and constitutes the legal, valid and binding obligation of the member of the Company Group party thereto and, to the Knowledge of the Company, each other party thereto, enforceable against such party in accordance with its terms, in each case subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally. Neither the Company nor any of the Company Subsidiaries or, to the Knowledge of the Company, any other party to any Material Contract, is in breach of, or in default under, any Material Contract, except for such breaches or defaults which would not reasonably likely to have, individually or in the aggregate, a Material Adverse Effect. No party has given any written notice of termination or cancellation of any Material Contract or that it intends to assert a breach of, or seek to terminate or cancel, any Material Contract as a result of the transactions contemplated hereby, in each case, except where such termination, cancellation or assertion, individually or in the aggregate, would not reasonably likely to have a Material Adverse Effect.

(c)     The Cabot Asset Transfer Agreement is in full force and effect and the Company or one of the Company Subsidiaries has timely paid all amounts to Cabot Corporation and its Affiliates required in order to maintain and otherwise keep in effect the Respirator Liability Retention arrangements pursuant to Section 4.12 thereof. To the Knowledge of the Company, as of the date hereof Cabot Corporation has not since April 7, 2004 given notice that it intends to assert a material breach of, or seek to terminate or cancel the Respirator Liability Retention arrangements pursuant to Section 4.12 of the Cabot Asset Transfer Agreement.

20

ffny03\choial\717967.2

Confidential - Subject to Protective Order                    3M_MDL000294325

P-GEN-01196.118

**3.16    Related-Party Transactions.**

Except as set forth on <u>Schedule 3.16</u> or contemplated by this Agreement, since January 1, 2007, no Affiliate of the Company or any Company Subsidiary (other than the Company and the Company Subsidiaries) (i) has been a party to any Contract, or has otherwise entered into any transaction, with the Company or a Company Subsidiary that calls for the payment by or on behalf of the Company or any of the Company Subsidiaries in excess of $50,000 per annum, or the delivery by the Company or any of the Company Subsidiaries of goods or services with a fair market value in excess of $50,000 per annum, or provides for the Company or any of the Company Subsidiaries to receive any payments in excess of, or any property with a fair market value in excess of, $50,000 per annum, (ii) to the Knowledge of the Company, owns any property or right, tangible or intangible, which is used by the Company or any of the Company Subsidiaries or (iii) to the Knowledge of the Company, owns, directly or indirectly, any interest in (other than holding that represent less than 5% of any class of securities of any publicly-traded company), or is an officer, director, employee or consultant of, any Person which is a competitor, lessor, lessee, customer or supplier of the Company or any of the Company Subsidiaries (each, a "<u>Related Party Transaction</u>").

**3.17    Real Property.**

(a)    <u>Schedule 3.17(a)</u> is a true, correct and complete list of all real property owned by the Company or a Company Subsidiary (and the address of such real property) as of the date of this Agreement.  With respect to each parcel of owned real property (a "<u>Parcel</u>") listed on <u>Schedule 3.17(a)</u>, except as set forth on <u>Schedule 3.17(a)</u>:

(i)    the entity owning such Parcel has good, marketable and insurable fee title to such Parcel, free and clear of all Encumbrances other than Permitted Encumbrances, which do not have and are not reasonably likely to, individually or in the aggregate, impair in any material respect the current use or occupancy of property subject thereto;

(ii)    all facilities have received all material approvals of Governmental Authorities (including Permits) required in connection with the ownership or operation thereof and have been operated and maintained in accordance with applicable Law in all material respects;

(iii)    there are no subleases, licenses, concessions or other written agreements granting to any party the right of use or occupancy of any portion of any material Parcel or rights to purchase any material Parcel or any portion thereof or interest therein;

(iv)    there are no parties (other than the Company or any of the Company Subsidiaries) in possession of any Parcel, other than tenants under any leases who are in possession of space to which they are entitled;

21

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                                    3M_MDL000294326

(v)    each material structure on any Parcel is in sufficient repair and operating condition for the conduct of the business of the Company and the Company Subsidiaries as currently conducted.

(vi)    to the Knowledge of the Company, there is no threatened or contemplated special assessment or condemnation against any such Parcel; and

(vii)    no material portion of any material Parcel is subject to any pending condemnation proceeding and, to the Knowledge of the Company, there is no threatened condemnation proceeding with respect thereto.

(b)    Schedule 3.17(b) sets forth all real property and interests in real property used by the Company or one of the Company Subsidiaries, pursuant to leases, subleases, licenses and/or any other types of occupancy agreements, that are material to the continued operation of the business of the Company and the Company Subsidiaries, taken as a whole and as currently operated (any such lease, license or other occupancy agreement, individually, a "Real Property Lease").

(c)    The Company or one of the Company Subsidiaries has a valid and enforceable leasehold interest under each of the Real Property Leases, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity), and, to the Knowledge of the Company, none of the Company and/or the Company Subsidiaries has received any written notice of any default or event, which, with notice or lapse of time, or both, would constitute a default by the Company or such Company Subsidiary under any of the Real Property Leases, except such defaults that do not have and are not reasonably likely to have, in the aggregate, a Material Adverse Effect. Neither the Company nor any Company Subsidiary has transferred any interest in any of the Real Property Leases. The Company has made available to Parent true and complete copies of the Real Property Leases as in effect as of the date hereof, together with all material amendments, modifications or supplements, if any, thereto.

**3.18    Personal Property.**

Except as set forth on Schedule 3.18, the Company and the Company Subsidiaries (a) own, lease or license from third parties all material tangible personal property required to conduct its and their respective businesses as presently conducted, (b) have good and valid title to all such tangible personal property owned by it or them, free and clear of all Encumbrances except for Permitted Encumbrances, and (c) upon consummation of the transactions contemplated by this Agreement, will be entitled to continue to use all such tangible personal property which is currently employed by it or them in the conduct of their respective businesses as presently conducted. All such material tangible personal property is in sufficient repair and operating condition for the conduct of the business of the Company and the Company Subsidiaries as currently conducted.

22

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294327

### 3.19    Insurance.

(a)    Schedule 3.19(a) contains a true and complete list of all material policies of liability, theft, fidelity, business interruption, key man life, fire, product liability, worker's compensation and other material forms of insurance held by the Company or any Company Subsidiary in effect as of the date hereof (specifying the insurer, amount of coverage, type of insurance, policy number, the amount of any deductible or retention, any material pending claims thereunder and the date through which coverage will continue based upon currently paid premiums).  Such policies are in full force and effect.  Except as set forth on Schedule 3.19(a), neither the Company nor any Company Subsidiary has reached or exceeded its policy limits for any insurance policy in effect at any time during the past five (5) years.

(b)    With respect to each policy of insurance listed on Schedule 3.19(a): (i) all premiums due with respect thereto are currently paid and the Company and the Company Subsidiaries are in compliance in all material respects with the terms of such policies; (ii) neither the Company nor any Company Subsidiary has received any written notice that such policy has been or shall be canceled or terminated or will not be renewed on substantially the same terms as are now in effect or the premium on such policy shall be increased on the renewal thereof; (iii) no such policy will terminate or lapse by reason of the transactions contemplated by this Agreement, in each case, except where such non-payment, cancellation, termination or non-renewal would not be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.  Except as set forth on Schedule 3.19(b), with respect to such policies, there have not been any claim(s) brought by the Company or a Company Subsidiary in which the applicable insurer has questioned, denied or disputed coverage.

### 3.20    Suppliers and Customers.

Schedule 3.20 sets forth a list of (i) the ten largest suppliers (by dollar amount) to the Company and the Company Subsidiaries, taken as a whole, during the twelve months ended June 30, 2007 ("Major Suppliers") and (ii) the ten customers with the highest dollar amount of purchases or services from the Company and the Company Subsidiaries, taken as a whole, during the twelve months ended June 30, 2007 "Major Customers").  Except as set forth on Schedule 3.20, no Major Supplier or Major Customer has during the last twelve months materially decreased or limited, or threatened to materially decrease or limit, its provision or receipt of services to or from the Company or any of the Company Subsidiaries.  No termination, cancellation or limitation of, or any material modification or change in, the business relationships (including product pricing and payment terms) of the Company or any of the Company Subsidiaries has occurred or, to the Company's Knowledge, is threatened with any Major Supplier or Major Customer.

### 3.21    Product Liability.

Except as set forth on Schedule 3.21 or except as does not have and would not reasonably be likely to have, individually or in the aggregate, a Material Adverse Effect, all products designed, manufactured, sold, distributed, leased, installed, delivered or held in inventory by the Company or any Company Subsidiary (including, without limitation, all documentation furnished in connection therewith) are either (i) free from any material defects and conform in all

23

ffny03\choial\717967.2

3M_MDL000294328

material respects with all customary and reasonable standards for products of such type or (ii) covered by an applicable effective warranty of the manufacturer of any such product or some additional Person in the chain of distribution of any such product, such that, in either event, neither the Company nor any Company Subsidiary has any liability for replacement or repair thereof or other damages in connection therewith, in each case, subject only to the reserve for product warranty claims set forth on the face of the Company Financial Statements.

**3.22    No Additional Representations.**

NEITHER THE COMPANY NOR ANY OF ITS AFFILIATES IS MAKING ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY NATURE WHATSOEVER WITH RESPECT TO THE COMPANY OR ANY COMPANY SUBSIDIARY, INCLUDING ANY OF THE ASSETS, RIGHTS OR PROPERTIES OF THE COMPANY OR ANY COMPANY SUBSIDIARY AND INCLUDING THE ENVIRONMENTAL CONDITION OF ANY PAST OR CURRENT PROPERTY OR FACILITY OF THE COMPANY OR ANY COMPANY SUBSIDIARY, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN ARTICLE III OF THIS AGREEMENT.

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF
### THE PARENT AND ACQUISITION SUB

The Parent and Acquisition Sub, jointly and severally, hereby represent and warrant to the Company as follows:

**4.1    Organization, Etc.**

Each of Parent and Acquisition Sub is duly organized, validly existing and in good standing (in such jurisdictions where such status is recognized) under the laws of the jurisdiction of its organization, with all corporate power and authority and all licenses, permits and authorizations necessary to own, lease or operate the properties and assets owned, leased or operated by it and to carry on its business as currently conducted, except where the failure to be so duly organized, validly existing and in good standing (in such jurisdictions where such status is recognized) or to have such corporate power or authority, licenses, permits or authorizations would not be reasonably likely to have, in the aggregate, a Buyer Material Adverse Effect.

**4.2    Authority Relative to this Agreement, Etc.**

Each of Parent and Acquisition Sub has all requisite corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by Parent and Acquisition Sub and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action of Parent and Acquisition Sub. This Agreement has been duly and validly executed and delivered by each of Parent and Acquisition Sub and, assuming this Agreement has been duly authorized, executed and delivered by the Company, this Agreement constitutes a valid and binding obligation of each of Parent and Acquisition Sub, enforceable

24

ffny03\choial\717967.2

3M_MDL000294329

against it in accordance with its terms, in each case, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally. The requisite stockholders of Acquisition Sub have adopted this Agreement and authorized and approved the Merger in accordance with the applicable provisions of Acquisition Sub's certificate of incorporation and the DGCL.

### 4.3 Consents and Approvals; No Violations.

Neither the execution, delivery and performance of this Agreement by Parent or Acquisition Sub nor the consummation by Parent or Acquisition Sub of the transactions contemplated hereby will (a) violate any provision of the certificate of incorporation or by-laws (or other comparable governing documents) of Parent or Acquisition Sub, (b) require any consent, waiver, approval, license, authorization or permit of, or filing with or notification to, any Governmental Authority, except for compliance with all applicable antitrust Laws and such consents, waivers, approvals, licenses, authorizations, permits, filings or notifications which, if not made or obtained, would not reasonably be likely to have, individually or in the aggregate, a Buyer Material Adverse Effect, (c) result in a violation or breach of, or constitute (with or without notice or lapse of time or both) a default (or give rise to any right of termination, cancellation or acceleration or any liability or obligation to repay) under any of the terms, conditions or provisions of any Contract to which Parent or Acquisition Sub is a party or by which any of its properties or assets may be bound, except such violations, breaches and defaults which does not have and are not reasonably likely to have, individually or in the aggregate, a Buyer Material Adverse Effect or (d) violate any Law applicable to Parent or Acquisition Sub or by which any of its properties or assets are bound, except such violations which does not have and are not reasonably likely to have, individually or in the aggregate, a Buyer Material Adverse Effect.

### 4.4 Litigation.

There are no Actions pending, or to the Knowledge of the Parent, threatened, against the Parent, Acquisition Sub or any of their respective Subsidiaries, and there are no outstanding writs, judgments, injunctions, decrees, settlement agreements or similar orders by which the Parent, Acquisition Sub or any of their respective Subsidiaries or any of their respective assets or properties, are bound, in either case that could materially impair the ability of Parent or Acquisition Sub to perform its obligations under this Agreement.

### 4.5 Parent's Business Investigation.

The Parent has conducted such investigation of the Company Group's business as it has deemed necessary in order to make an informed decision concerning the transactions contemplated hereby. Neither the Company nor any of its Affiliates shall have or be subject to any liability to the Parent or any other Person resulting from the distribution to the Parent, or the Parent's use of, any such information, including any information, documents or material made available to the Parent and its representatives in any "data rooms" (virtual or otherwise), management presentations or in any other form in expectation of the transactions contemplated hereby.

25

Confidential - Subject to Protective Order                    3M_MDL000294330

3M

P-GEN-01196.123

**4.6     Disclaimer Regarding Projections.**

In connection with Parent's investigation of the Company and the Company Subsidiaries, Parent has received from the Company and its Affiliates and their respective representatives and agents certain projections and other forecasts, including, without limitation, projected financial statements, cash flow items, certain business plan information and other data related to the Company and the Company Subsidiaries.  Parent acknowledges that (a) there are uncertainties inherent in attempting to make such projections, forecasts and plans and, accordingly, is not relying on them, (b) Parent is familiar with such uncertainties and is taking full responsibility for making its own evaluation of the adequacy and accuracy of all projections, forecasts and plans so furnished to it and (c) Parent shall have no claim against anyone with respect to any of the foregoing.

**4.7     Availability of Funds.**

Parent currently has access to sufficient immediately available funds in cash or cash equivalents, and will at the Closing have sufficient immediately available funds, in cash, to pay the Closing Consideration.

**4.8     Operations of Acquisition Sub.**

Since the date of its incorporation, Acquisition Sub has not engaged in any activities other than in connection with or as contemplated by this Agreement.

**4.9     Brokers' and Finders' Fees.**

Except for Lehman Brothers and KPMG LLP, neither the Parent nor Acquisition Sub has employed, nor are they subject to, any valid claim of liability or obligation to, any broker, finder, consultant or other intermediary in connection with the transactions contemplated by this Agreement.  The Parent shall be solely responsible for any payment, fee or commission that may be due to Lehman Brothers in connection with the transactions contemplated hereby.

**4.10     No Additional Representations.**

NONE OF PARENT, ACQUISITION SUB OR ANY OF THEIR AFFILIATES IS MAKING ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY NATURE WHATSOEVER, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN ARTICLE IV OF THIS AGREEMENT.

**ARTICLE V**

**COVENANTS**

**5.1     Conduct of Business.**

(a)     Except (i) with the written consent of the Parent (which consent shall not be unreasonably withheld or delayed), (ii) as set forth on <u>Schedule 5.1(b)</u>, (iii) as otherwise contemplated or permitted by the terms of this Agreement or (iv) as required by Law or any

26

Confidential - Subject to Protective Order

3M_MDL000294331

P. GEN-01196.124

Contract, from the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, the Company shall conduct its business (including, without limitation, with respect to making capital expenditures), and shall cause the businesses of the Company Subsidiaries to be conducted, in the ordinary course in substantially the same manner as presently conducted.

(b)     From the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, except (i) with the written consent of the Parent (which consent shall not be unreasonably withheld or delayed), (ii) as set forth on Schedule 5.1(b), (iii) as otherwise contemplated or permitted by the terms of this Agreement or (iv) as required by Law or any Material Contract, the Company shall not, and shall not permit any Company Subsidiary to:

(i)     declare, set aside, make or pay any dividend or other distribution in respect of the capital stock of the Company or any of the Company Subsidiaries (excluding dividends or distributions by a member of the Company Group to another member of the Company Group) or repurchase, redeem or otherwise acquire any outstanding shares of the capital stock or other securities of, or other ownership interests in the Company or the Company Subsidiaries;

(ii)     transfer, issue, sell or dispose of any shares of capital stock or other equity interests of the Company or any of the Company Subsidiaries (other than pursuant to exercise of any Options or vesting of any Restricted Shares outstanding as of the date hereof) or grant options, warrants, calls or other rights to purchase or otherwise acquire shares of the capital stock or other equity interests of the Company or any of the Company Subsidiaries;

(iii)     effect any recapitalization, reclassification, stock split or like change in the capitalization of the Company or any of the Company Subsidiaries;

(iv)     (A) incur any indebtedness or guarantee any indebtedness of another Person, issue or sell any debt securities or warrants or other rights to acquire any debt securities of the Company or any Company Subsidiary (other than incurrence of indebtedness under the Company's revolving credit facility or equipment financing in the ordinary course of the Company Group's business that may be repaid on the Closing Date without premium or penalty), guarantee any debt securities of another Person or enter into any arrangement having the economic effect of any of the foregoing, (B) make any loans, advances or capital contributions (other than loans, advances or capital contributions made by one member of the Company Group to another member of the Company Group) to any other Person, or (C) forgive any loans or advances to any director, officer or employee;

(v)     amend the certificate of incorporation or by-laws (or other comparable governing documents) of the Company or any of the Company Subsidiaries;

27

Confidential - Subject to Protective Order

3M_MDL000294332

(vi)   grant or take any other action that will result in the imposition of any Encumbrance granted on any property or assets (whether tangible or intangible) of any of the Company or the Company Subsidiaries (other than Permitted Encumbrances);

(vii)   (A) adopt, enter into, terminate or amend any Benefit Plan, other than, in the case of non-executive officer employees, in the ordinary course of the Company Group's business, (B) materially increase in any manner the severance, termination pay, compensation or fringe benefits of, or, except in the ordinary course of business, pay any material bonus to, any director, officer or employee(C) pay any material benefit to any director, officer or employee not provided for under any Benefit Plan (other than customary director fees and expenses), (D) grant any equity-based awards or (E) except as required pursuant to any Benefit Plan, fund or secure the payment of material compensation or benefits under any Benefit Plan other than in the ordinary course of the Company Group's business;

(viii)   institute any general layoff of employees or implement any early retirement plan or announce the planning of such a program;

(ix)   change the Company's or any Company Subsidiary's methods of accounting, except as required by changes in GAAP, make any material Tax elections or settle or compromise any material Tax liability;

(x)   purchase, sell, exchange, license or otherwise dispose or acquire (whether by merger or otherwise) any property or assets or enter into any lease of real property (other than, in each case, in the ordinary course of the Company Group's business) for which the aggregate consideration paid or payable (A) in any individual transaction is in excess of $500,000 or (B) in the aggregate is in excess of $1,000,000;

(xi)   pay, discharge, settle or satisfy any material claims, litigations, accounts payable, liabilities or obligations (absolute, accrued, asserted or unasserted, contingent or otherwise), other than the payment, discharge, settlement or satisfaction, in the ordinary course of the Company Group's business or in accordance with their terms, of liabilities reflected or reserved against in the Company Financial Statements (or the notes thereto) or incurred thereafter in the ordinary course of the Company Group's business other than settlements in an aggregate amount not to exceed $250,000; provided that the Company will not settle any asbestos related claims relating to the AO Group or Eastern Safety in respect of any respirator liability for an aggregate amount per claim of greater than $2,000 or not to exceed $50,000 in total;

(xii)   accelerate the collection of or fail to collect any Company Group accounts receivable, in each case other than in the ordinary course;

(xiii)   terminate the employment of any of the Persons listed on Schedule 5.1(b)(xiii).

(xiv)   enter into, renew, modify or revise any Contract or transaction with any Affiliate, officer, director or employee of the Company or any Company Subsidiary (other than the Company or a Company Subsidiary);

28

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                        3M_MDL000294333

(xv)    (A) modify, amend or terminate any Material Contract (including without limitation the Cabot Asset Transfer Agreement) or Real Property Lease or waive, release or assign any material rights or claims under any Material Contract or Real Property Lease, other than in the Ordinary Course of the Company Group's business, or (B) fail to timely pay amounts  pursuant to Section 4.12 of the Cabot Asset Transfer Agreement or take or fail to take any other action that would reasonably be expected to have the effect of terminating the Respirator Liability Retention arrangements contained therein;

(xvi)    fail to pay any premium when due with respect to any of the insurance policies set forth on Schedule 3.19(a), to the extent such failure may result in the suspension, material impairment or cancellation of any such insurance policies;

(xvii)    terminate any Hedging Contracts prior to the termination date set forth in such agreements; or

(xviii)    authorize any of, or commit or agree to take any of, the foregoing actions.

Notwithstanding the foregoing, the Company and its Subsidiaries may enter into (and consummate) agreements in respect of Acquisition 1 and Acquisition 2.

**5.2      Access to Information.**

From and after the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, the Company shall, and shall cause the Company Subsidiaries to, afford to the Parent and its accountants, counsel, Parent's financing sources and their representatives and other representatives reasonable access during normal business hours to all the properties, books, contracts, commitments, Tax returns and records of the Company and the Company Subsidiaries, and, during such period, shall furnish promptly to the Parent any information concerning the Company and the Company Subsidiaries as the Parent may reasonably request; provided, however, that (a) such access does not unreasonably disrupt the normal operations of the Company or any of the Company Subsidiaries, (b) neither the Company nor any of the Company Subsidiaries is under any obligation to disclose to the Parent or its representatives any information the disclosure of which is prohibited by Contract or applicable Law or would result in the waiver of any attorney-client, work product or other applicable privilege and (c) Parent shall not conduct any environmental sampling or analysis of the nature commonly referred to as a "Phase II Environmental Assessment".  All information provided pursuant to this Section 5.2 shall remain subject in all respects to the Confidentiality Agreement (as defined below).

**5.3      Confidentiality; Solicitation.**

(a)      The Parent acknowledges that the information being provided to it, any of its Affiliates and its accountants, counsel and other representatives in connection with the consummation of the transactions contemplated hereby is being provided subject to the terms of a confidentiality agreement dated as of July 9, 2007 between 3M Company and the Company (the "Confidentiality Agreement").  The Parent acknowledges that it is, and shall remain until

Confidential - Subject to Protective Order                                      3M_MDL000294334

the Closing, subject to the terms of the Confidentiality Agreement, which are incorporated herein by reference.

(b)     The Company agrees that following the date of this Agreement, neither the Company, nor any of the Company Subsidiaries, nor any of their respective Affiliates, officers, directors, representatives or agents will directly or indirectly, solicit, initiate, consider, facilitate, encourage or accept or furnish to any other person any information with respect to, any other proposals from any Person relating to any acquisition or purchase of all or any substantial portion of the capital stock of the Company or any Company Subsidiary or all or substantially all of the assets of the Company or any Company Subsidiary (other than the sale of inventory in the ordinary course of business consistent with past practice).   The Company shall immediately cease and cause to be terminated all existing discussions, conversations, negotiations and other communications with any Person conducted heretofore with respect to any of the foregoing.

**5.4     Efforts to Consummate.**

(a)     Subject to the terms and conditions of this Agreement, each party shall use its reasonable best efforts to cause the Closing to occur and to cause the conditions set forth in Article VI to be satisfied, including (i) defending against any lawsuits, actions or proceedings, judicial or administrative, challenging this Agreement or the consummation of the transactions contemplated hereby, (ii) seeking to have any preliminary injunction, temporary restraining order, stay or other legal restraint or prohibition entered or imposed by any court or other Governmental Authority that is not yet final and non-appealable vacated or reversed and (iii) cooperating with each other to obtain, prior to Closing, all consents and approvals required to consummate the transactions contemplated by this Agreement; provided, however, that neither the Company nor any of its Affiliates shall be required to make any monetary expenditure, commence or participate in any litigation or offer or grant any accommodation (financial or otherwise) to any third Person.   Without limiting the foregoing, each party shall use its reasonable best efforts (subject to the provision in the immediately preceding sentence) to cause the Closing to occur within 90 days after the date hereof.

(b)     In furtherance and not in limitation of the foregoing, each of the Company and Parent shall use its reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary under applicable antitrust laws and regulations to consummate and make effective the transactions contemplated by this Agreement, including, without limitation, to obtain the consent, authorization, order or approval of, or any exemption by, any Governmental Authority with regulatory jurisdiction over enforcement of any applicable antitrust laws ("Governmental Antitrust Authority") or in order to obtain the jurisdiction of the European Commission ("EC") instead of review by EU Member States by means of a reasoned submission pursuant to Article 4 (5) of Council Regulation No. 139/2004 of the European Community, as amended (the "EC Merger Regulation"), which actions shall include, without limitation, furnishing all information required by applicable Law in connection with approvals of or filings with any Governmental Antitrust Authority, including filing, or causing to be filed, as promptly as practicable, except that any required notification and report forms under the HSR Act will be filed with the FTC and the DOJ no later than five (5) Business Days following the execution and delivery of this Agreement.   In the case of any filings required or agreed to be made by the parties pursuant to the EC Merger Regulation, a pre-notification

30

ffny03\choial\717967.2

shall be made as soon as reasonably practicable and the parties shall use best efforts to ensure that the effective date of notification shall in any event be within three (3) Business Days after the EC confirms that the information contained within a pre-notified filing is completed; subject only to the additional requirement that if the EC acquires jurisdiction pursuant to Article 4 (5) of the EC Merger Regulation, unless the parties otherwise agree, a pre-notification to the EC shall be made within five (5) business days from the date on which the EC acquired jurisdiction.

(c)     Each of the Parent and the Company shall furnish to the other such necessary information and reasonable assistance as the other may request in connection with its preparation of any filing or submission that is necessary under the HSR Act, the EC Merger Regulation or any other foreign antitrust merger control laws.  The Company and the Parent shall keep each other apprised of the status of any communications with, and any inquiries or requests for additional information from, the FTC, the DOJ and other Governmental Antitrust Authorities and shall comply as promptly as practicable with any such inquiry or request.  Each of Parent and the Company shall inform the other party of  any substantive meeting or discussion or communication with any Governmental Antitrust Authority in respect of any filings, investigation or inquiry concerning this Agreement or the Merger and shall use reasonable best efforts to consult with the other party in advance and, to the extent permitted by such Governmental Antitrust Authority, give the other party the opportunity to attend and participate thereat.   The Parent shall pay for filing fees incurred by the Company to comply with Section 5.4(b), including any filing fees under the HSR Act, the EC Merger Regulation or any other foreign antitrust merger control laws.

(d)     In furtherance and not in limitation of the foregoing, Parent shall take any and all steps necessary to avoid or eliminate impediments under any antitrust, competition, or trade regulation law that may be asserted by the FTC, the DOJ, applicable non-U.S. Governmental Antitrust Authority or any other Governmental Entity with respect to the Merger and the transactions contemplated by this Agreement so as to enable the consummation thereof as promptly as practicable.

(e)     Notwithstanding anything in this Section 5.4 to the contrary, nothing in this Section 5.4 shall require, or be deemed to require, Parent to propose, negotiate, offer to commit or effect any sale, divestiture or disposition of assets or businesses of Parent, the Surviving Corporation, or their respective subsidiaries if such sale, divestiture or disposition of assets or businesses and all related restrictions and requirements would, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(f)     As promptly as practicable after the date of this Agreement, the Company will provide to any holder of Shares that has not approved and adopted this Agreement notice of the approval of this Agreement by the stockholders of the Company required by Sections 228 and 262 of the DGCL.  The Company shall provide Parent and Acquisition Sub a reasonable opportunity to review and comment on such notice prior to the distribution to such holders.

31

Confidential - Subject to Protective Order

3M_MDL000294336

**5.5     Expenses; Transfer Taxes.**

(a)     Whether or not the Closing takes place, and except as set forth in <u>Section 5.4(c)</u>, all costs and expenses incurred in connection with this Agreement and the Related Documents and the transactions contemplated hereby and thereby shall be paid by the party incurring such expense, including all costs and expenses incurred pursuant to <u>Section 5.4(a)</u>; it being understood and agreed that any such costs and expenses paid by the Company or any Company Subsidiary prior to the Effective Time which are not Transaction Related Expenses shall be added back to Cash for purposes of this Agreement.

(b)     All transfer, documentary, sales, use, registration, value-added and other similar Taxes (including all applicable real estate transfer Taxes and real property transfer gains Taxes and including any filing and recording fees) and related amounts (including any penalties, interest and additions to Tax) incurred in connection with this Agreement, the Related Documents, the Merger and the other transactions contemplated hereby and thereby ("<u>Transfer Taxes</u>") shall be paid by the Parent. Each party shall use reasonable efforts to avail itself of any available exemptions from any such Transfer Taxes and to cooperate with the other parties in providing any information and documentation that may be necessary to obtain such exemptions.

**5.6     Post-Closing Cooperation.**

After the Closing, upon reasonable written notice, the Surviving Company and the Parent shall furnish or cause to be furnished to the Representative and its Affiliates, employees, counsel, auditors and representatives access, during normal business hours, to such information and assistance relating to the Company and the Company Subsidiaries as is reasonably necessary for financial reporting, Tax and accounting matters relating to time periods ending on or before the Closing Date.

**5.7     Publicity.**

Prior to the Effective Time, no public release or announcement concerning the transactions contemplated hereby shall be issued by the Company, on the one hand, or the Parent or Acquisition Sub, on the other hand, without the prior written consent of the Parent or the Company, as the case may be (which consent shall not be unreasonably withheld or delayed), except as such release or announcement may be required by Law or the rules or regulations of any United States or foreign securities exchange, in which case the party required to make the release or announcement shall allow the other parties reasonable time to comment on such release or announcement in advance of such issuance.

**5.8     Employee Matters.**

(a)     Parent agrees that, effective as of the Closing Date and until the first anniversary thereof, Parent shall provide or shall cause to be provided to Company Group Employees (as hereinafter defined) on the Closing Date with employee benefits (except with respect to severance benefits other than those required by <u>Section 5.8(d)</u>, change in control arrangements, and equity-based or equity related arrangements) that are no less favorable in the aggregate than those provided to Company Group Employees immediately prior to the date hereof.  With respect to any employee benefits that are provided to Company Group Employees

32

ffny03\choial\717967.2

3M_MDL000294337

P-GEN-01196.130

under employee benefits plans of Parent or its subsidiaries ("Parent Plans"), service accrued by Company Group Employees during employment with the Company or any of the Company Subsidiaries or their predecessors prior to Closing Date shall be recognized for all purposes to the same extent as such service was taken into account under the corresponding plans of the Company and any Company Subsidiary, except to the extent necessary to prevent duplication of benefits or benefit accrual under any defined benefit retirement plan or retiree welfare benefit plan (including retiree medical benefit plans).  With respect to any medical, dental or other welfare benefits that are provided at any time to Company Group Employees under Parent Plans, any applicable pre-existing condition exclusions (except to the extent not satisfied under the comparable Benefit Plan as of such time) shall be waived, and any expenses incurred before such time under the comparable Benefit Plan shall be taken into account under such Parent Plan for purposes of satisfying applicable deductible, coinsurance and maximum out-of-pocket provisions.

(b)     Parent agrees to cause the Company (and each of the Company Subsidiaries, as applicable) to assume and honor, all of the Company's (and each Company's Subsidiary's) existing employment, severance, retention, bonus, other incentive agreements and arrangements, and medical, dental and life insurance arrangements, as amended through the date hereof (each, an "Employee Arrangement"), for the benefit of any employees and former employees of the Company and each of the Company Subsidiaries, as applicable, and their respective survivors, beneficiaries and dependents, including those Employee Arrangements set forth in Schedule 3.13(a)(i).  Parent agrees that with respect to the Company's Management Incentive Plan and Annual Incentive Plan (collectively, the "Incentive Plans"), it will or will cause the Company to administer the plans for the fiscal year ending September 30, 2007 (the "2007 Fiscal Year") in a manner consistent with the Company's recent past practices.  Without limiting the generality of the preceding sentence, participants shall be entitled to bonuses (i) in respect of the EBITDA component of the Incentive Plans that are based on the actual results for the 2007 Fiscal Year without any reduction, whether or not discretion has been reserved to reduce the amount payable, and (ii) in respect of the individual goals component of the Incentive Plans, that in the aggregate are at least equal to the amount accrued by the Company in respect of the Incentive Plans for the 2007 Fiscal Year, in all cases subject to the other terms and conditions of such Incentive Plans.

(c)     For purposes of this Section 5.8, the term "Company Group Employees" shall mean all current and former employees of the Company and of each of the Company Subsidiaries immediately prior to the Closing Date, including those on vacation, sick leave, maternity leave, military service, lay-off, retirement, disability or other leave of absence, paid or unpaid, and their survivors, beneficiaries and dependents.

(d)     Parent shall, or shall cause the Company or the Company Subsidiaries to, effective as of the Closing Date, and for a two-year period thereafter, provide to those employees of the Company or any of the Company Subsidiaries set forth in Schedule 5.8(d) whose employment is terminated without cause by the Company or any Company Subsidiary, the severance benefits described in Schedule 5.8(d) taking into account past service with the Company or any Company Subsidiary.

33

Confidential - Subject to Protective Order

3M_MDL000294338

(e)     Parent shall not, within ninety (90) days after the Closing Date, effectuate a "plant closing" or "mass layoff" as those terms are defined in WARN, affecting in whole or in part any site of employment, facility, operating unit or Company Group Employee without complying with the notice requirements and other provisions of WARN.

**5.9     Indemnification, Exculpation.**

(a)     All rights to indemnification and exculpation (including the advancement of expenses) from liabilities (including reasonable attorneys' fees and expenses) for acts or omissions occurring at or prior to the Effective Time (including with respect to the transactions contemplated by this Agreement) existing as of the date hereof in favor of the current or former directors, officers and employees of the Company and the Company Subsidiaries, as provided in the certificate of incorporation and/or the by-laws and pursuant to applicable Law shall survive the Merger, without further action, and shall continue in full force and effect without amendment, modification or repeal in accordance with their terms for a period of not less than six (6) years after the Effective Time; provided that no Person entitled to indemnification under this provision may settle any such claim without the prior approval of the Surviving Company, such approval not to be unreasonably withheld or delayed.

(b)     For a period of at least six (6) years after the Effective Time, the Surviving Company shall cause to be maintained in effect standard policies of directors' and officers' liability insurance in an aggregate coverage amount not less than the coverage amounts maintained by the Company and the Company Subsidiaries as of the date hereof and including coverage with respect to claims arising from facts or events which occurred at or prior to the Effective Time to the extent available; provided that (i) in no event shall the Surviving Company or a Company Subsidiary be required to expend more than an amount per year equal to 150% of the current annual premiums paid by the Company or any of the Company Subsidiaries to maintain or procure insurance coverage pursuant hereto, as forth in Schedule 3.19, and (ii) such policies may in the sole discretion of the Surviving Corporation be one or more "tail" policies for all or a portion of the full six (6) years.

(c)     The provisions of this Section 5.9 are (i) intended to be for the benefit of, and will be enforceable by, each Person entitled to indemnification hereunder, and each such Person's heirs, legatees, representatives, successors and assigns, and shall be binding on all successors and assigns of the Parent, Acquisition Sub and the Surviving Company and may not be terminated or amended in any manner adverse to such indemnified Person without its prior written consent and (ii) in addition to, and not in substitution for, any other rights to indemnification or contribution that any such Person may have by Contract or otherwise.

**5.10     Maintenance of Cabot Agreement.**

(a)     The Surviving Company shall pay on behalf of Aearo Corporation, or Parent shall cause to be paid, the amounts required in order to maintain, and otherwise keep in effect, the Respirator Liability Retention arrangements pursuant to Section 4.12 of the Cabot Asset Transfer Agreement.

34

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294339

(b)     The provisions of this <u>Section 5.10</u> are (i) intended to be for the benefit of, and will be enforceable by, each Shareholder, and each such Shareholder's heirs, legatees, representatives, successors and assigns, and shall be binding on all successors and assigns of the Parent, Acquisition Sub and the Surviving Company and may not be terminated or amended in any manner adverse to such Shareholder without its prior written consent and (ii) in addition to, and not in substitution for, any other rights that any such Shareholder may have by Contract or otherwise.

## ARTICLE VI

## CONDITIONS PRECEDENT

**6.1     Conditions to Each Party's Obligations.**

The respective obligations of each party to effect the Merger are subject to the satisfaction or written waiver (to the extent such conditions can be waived) on or prior to the Closing of the following conditions:

(a)     <u>Antitrust Approvals</u>.   All required waiting periods or approvals applicable to this Agreement and the transactions contemplated hereby (including, without limitation, under the HSR Act, the EC Merger Regulation and the applicable foreign antitrust rules or Laws) shall have expired, been received or terminated.

(b)     <u>No Injunctions or Restraints</u>.   No applicable Law or injunction enacted, entered, promulgated, enforced or issued by any Governmental Authority or other legal restraint or prohibition preventing the consummation of the transactions contemplated hereby shall be in effect; <u>provided</u>, <u>however</u>, that each of the Company and the Parent shall have complied with the provisions of Section 5.4, to prevent the entry of any such injunction or other order and to appeal as promptly as possible any such injunction or other order that may be entered.

**6.2     Conditions to Obligations of the Parent and Acquisition Sub.**

The obligations of the Parent and Acquisition Sub to consummate the Merger and the related transactions contemplated hereby are subject to the satisfaction (or written waiver by the Parent) on or prior to the Closing of the following conditions:

(a)     <u>Representations and Warranties</u>.   The representations and warranties of the Company made in this Agreement shall be true and correct in all respects as of the date of this Agreement and as though made on and as of the Closing Date (without giving effect to any "material", "materiality" or "Material Adverse Effect" qualification on such representations and warranties and other than any representation or warranty that expressly relates to a specific date, which representation and warranty shall be so true and correct on the date so specified) except where the failure of any such representations or warranties to be so true and correct, whether individually or in the aggregate, has not had and would not reasonably be expected to have a Material Adverse Effect.  The Parent and Acquisition Sub shall have received a certificate signed by an authorized officer of the Company certifying as to fulfillment of the conditions set forth in this <u>Section 6.2(a)</u> with respect to the Company.

35

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                      3M_MDL000294340

     (b)    <u>Performance of Obligations</u>.  The Company shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Company prior to or at the time of the Closing, and the Parent and Acquisition Sub shall have received a certificate signed by an authorized officer of the Company certifying as to fulfillment of the conditions set forth in this <u>Section 6.2(b)</u> with respect to the Company.

     (c)    <u>Secretary's Certificates</u>.  The Parent and Acquisition Sub shall have received a certificate, dated as of the Closing Date, signed by the Secretary of the Company and certifying as to (i) its certificate of incorporation and by-laws and the incumbency of officers executing this Agreement and (ii) the resolutions of the board of directors of the Company authorizing the execution, delivery and performance by the Company of this Agreement.

     (d)    <u>Chief Financial Officer's Certificate</u>.  The Parent and the Acquisition Sub shall have received a certificate, dated as of the Closing Date, signed by the Chief Financial Officer of the Company certifying either (i) that all Debt of the Company has been paid in full and all related Encumbrances on assets of the Company, including, without limitation, the capital stock of any of the Subsidiaries, have been released prior to the Closing, or (ii) specifying the payoff amounts of all Debt of the Company in either case accompanied by related payoff letters, UCC releases, releases of all mortgages or deeds of trust on any Parcel and releases of all Subsidiary guarantees of Debt of the Company.

     (e)    <u>Material Adverse Effect</u>.  No event, development, circumstance or occurrence shall have occurred since the date hereof that, individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect.

     (f)    <u>Related Party Transactions</u>.  Each agreement between the Company and/or any Company Subsidiary on the one hand, and Permira Advisers L.L.C. and/or its affiliated funds, on the other hand, shall have been terminated without further liability (it being understood that all amounts payable thereunder or in connection therewith shall be paid prior to the Effective Time), and all obligations and liabilities of the Company and the Company Subsidiaries and each of their respective Affiliates, officers, directors, and employees to the other parties thereto shall be canceled, and Parent shall have received reasonably satisfactory evidence of the foregoing.

     (g)    <u>FIRPTA Certificate.</u>  Parent shall have received (i) a certification from the Company, dated no more than thirty (30) days prior to the Closing Date and signed by a responsible corporate officer of the Company, that the Company is not, and has not been at any time during the five years preceding the date of such certification, a "United States real property holding corporation," as that term is defined in Section 897(c)(2) of the Code, and (b) proof reasonably satisfactory to Parent that the Company has provided notice of such certification to the Internal Revenue Service in accordance with the provisions of Treasury Regulation §1.897-2(h)(2).

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294341

**6.3**    **Conditions to the Obligations of the Company.**

The obligations of the Company to consummate the Merger and the related transactions contemplated hereby are subject to the satisfaction (or written waiver by the Company) on or prior to the Closing Date of the following conditions:

(a)    <u>Representations and Warranties of Parent and Acquisition Sub</u>.    The representations and warranties of the Parent and Acquisition Sub made in this Agreement shall be true and correct in all respects as of the date of this Agreement as though made on and as of the Closing Date except where the failure of any such representations or warranties to be so true and correct, whether individually or in the aggregate, would not reasonably be expected to have a Buyer Material Adverse Effect on the Parent or Acquisition Sub, and the Company shall have received a certificate signed by an authorized officer of each of the Parent and Acquisition Sub to such effect.

(b)    <u>Performance of Obligations of Parent and Acquisition Sub</u>.    The Parent and Acquisition Sub shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Parent and Acquisition Sub prior to or at the time of the Closing, and the Company shall have received a certificate signed by an authorized officer of each of the Parent and Acquisition Sub to such effect.

**6.4**    **Frustration of Closing Conditions.**

Neither the Parent, Acquisition Sub nor the Company may rely on the failure of any condition set forth in this <u>Article VI</u> to be satisfied if such failure was caused by such party's failure to act in good faith or to use its reasonable best efforts to cause the Closing to occur, as required by <u>Section 5.4</u>.

**ARTICLE VII**

**TERMINATION**

**7.1**    **Termination.**

(a)    This Agreement may be terminated and the transactions contemplated by this Agreement abandoned at any time prior to the Closing:

(i)    by mutual written consent of the Company and the Parent; or

(ii)    by either the Company or the Parent, if the Closing does not occur on or prior to June 1, 2008 (the "<u>End Date</u>") (other than as a result of the terminating party's failure to comply fully with its obligations under this Agreement).

(b)    In the event of termination by the Company or the Parent pursuant to this <u>Section 7.1</u>, written notice thereof shall forthwith be given to the other and the transactions contemplated by this Agreement shall be abandoned, without further action by any party.  If the transactions contemplated by this Agreement are abandoned as provided herein:

37

Confidential - Subject to Protective Order    3M_MDL000294342

(i)     the Parent and Acquisition Sub shall return all documents and other material received from the Company or any Company Subsidiary relating to the transactions contemplated hereby and any copies thereof, whether so obtained before or after the execution hereof, to the Company; and

(ii)     all confidential information received by the Parent and Acquisition Sub with respect to the business of the Company and the Company Subsidiaries shall be treated in accordance with the Confidentiality Agreement, which shall remain in full force and effect notwithstanding the termination of this Agreement.

**7.2     Effect of Termination.**

If this Agreement is terminated and the transactions contemplated hereby are abandoned as described in Section 7.1, this Agreement shall become null and void and of no further force and effect, except for the provisions of Sections 5.3(a), 5.5 and 5.7, this Article VII and Article VIII.  Nothing in this Section 7.2 shall be deemed to release any party from any liability for any breach by such party of the terms and provisions of this Agreement prior to such termination.

**ARTICLE VIII**

**GENERAL PROVISIONS**

**8.1     Assignment.**

This Agreement and the rights and obligations hereunder shall not be assignable or transferable by the Parent, Acquisition Sub or the Company (including by operation of law in connection with a merger or consolidation of the Parent or Acquisition Sub) without the prior written consent of the other parties hereto; provided, however, that Parent and Acquisition Sub may assign any or all of their rights hereunder to one or more Affiliates or designees (provided that Parent shall remain liable for all of its obligations hereunder.  Upon any such permitted assignment or designation, the references in this Agreement to Parent and Acquisition Sub shall also apply to such assignees unless the context otherwise requires.  Any attempted assignment in violation of this Section 8.1 shall be void.

**8.2     No Third-Party Beneficiaries.**

Except as provided in Article II, Section 5.9 and 5.10 of this Agreement, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, any legal or equitable rights hereunder.  Notwithstanding the foregoing, the Shareholders (acting solely through the Representative) are intended third party beneficiaries of this Agreement and from and after the Closing Date, such Shareholders (acting solely through the Representative) shall be entitled to enforce the provisions of this Agreement and shall be entitled to avail themselves of the benefits of any remedy for a breach of any of the provisions of this Agreement.

38

ffny03\choial\717967.2

**8.3    Survival of Representations and Warranties.**

The representations and warranties contained in this Agreement, any Related Document and in any document delivered in connection herewith or therewith other than the Letter of Transmittal shall terminate and be of no further force and effect from and after the Closing (other than with respect to claims arising from actual fraud) and no party shall have any liability with respect to such representations and warranties from and after the Closing.  The covenants and agreements contained in this Agreement which contemplate performance after the Closing shall survive until performed in accordance with their terms; provided that the covenants and agreements contained in this Agreement which contemplate performance prior to the Closing shall not survive the Closing.

**8.4    Notices.**

All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent by facsimile or sent, postage prepaid, by registered, certified or nationally recognized overnight courier service and shall be deemed given when so delivered by hand or facsimile, or if mailed, three (3) days after mailing (one Business Day in the case of overnight courier service), as follows:

       (i)    if to the Parent or Acquisition Sub or, after the Closing, the Surviving Company, to:

> 3M Company
> 3M Center
> St. Paul, Minnesota  55144-1000
>
> Attention: Executive Vice President, Safety, Security and Protection Services Business
> Telephone: 651-733-1110
> Facsimile:
>
> with copy to:
>
> 3M Company
> 3M Center
> St. Paul, Minnesota  55144-1000
> Attention: General Counsel
> Telephone:  651-733-1110
> Facsimile:  651-736-7859

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294344

      (ii)     if, prior to the Closing, to the Company, to:

Aearo Holding Corp.
5457 West 79th Street
Indianapolis, IN  46268
Attention:  Michael McLain and Robert Hebert
Facsimile:  (317) 692-6557
Telephone:  (317) 692-6784

with a copy to:

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
Attention: Christopher Ewan, Esq.
Facsimile: (212) 859-4000
Telephone: (212) 859-8875

      (iii)    if, to the Representative, to:

Permira Advisers L.L.C.
320 Park Avenue
33rd Floor
New York, New York
10022

Telephone: (212) 386-7480
Facsimile: (212) 386 7481
Attention:  Tom Lister

**8.5     Interpretation; Exhibits and Schedules.**

The headings contained in this Agreement, in any Exhibit or Schedule hereto and in the table of contents to this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  Any matter set forth on any Schedule shall be deemed set forth on all other Schedules if, in each case, it is reasonably apparent from the information disclosed that another schedule is also applicable.  Except when the context requires otherwise, any reference in this Agreement to any Article, Section, clause, Schedule or Exhibit shall be to the Articles, Sections and clauses of, and Schedules and Exhibits to, this Agreement. The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation." Any reference to the masculine, feminine or neuter gender shall include such other genders and any reference to the singular or plural shall include the other, in each case unless the context otherwise requires.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.

ffny03\choial\717967.2

Confidential - Subject to Protective Order     3M_MDL000294345

When a reference is made in this Agreement to a Section, Exhibit or Schedule, such reference shall be to a Section of, or an Exhibit or Schedule to, this Agreement unless otherwise indicated.

**8.6      Counterparts; Facsimile Signatures.**

This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party. Facsimile counterpart signatures to this Agreement shall be acceptable and binding.

**8.7      Entire Agreement.**

This Agreement, the Related Documents and the Confidentiality Agreement contain the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter. Neither party shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein or in the Related Documents or the Confidentiality Agreement.

**8.8      Amendments and Waivers.**

This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto; provided, that any amendment made subsequent to the adoption and approval of this Agreement by the stockholders of the Company or Acquisition Sub as required by the DGCL which, under applicable Law, requires further approval of such stockholders, shall not be made without further approval by such stockholders

**8.9      Severability.**

It is the desire and intent of the parties hereto that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this Agreement shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.  Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

**8.10     Specific Performance.**

The parties hereto agree that if any of the provisions in this Agreement were not performed in accordance with their specific terms or were otherwise breached, irreparable damage would occur, no adequate remedy at law would exist and damages would be difficult to determine, and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or equity.

41

Confidential - Subject to Protective Order                                                   3M_MDL000294346

**8.11    Limitation on Damages.**

Notwithstanding any provision of this Agreement, no party shall be liable for any consequential damages (including loss of revenue, income or profits, loss in value of assets or securities), punitive, speculative, treble, remote, special or indirect damages, or loss of business reputation or opportunity relating to the breach of this Agreement, except to the extent such breach is an intentional breach of a material covenant set forth in this Agreement.

**8.12    No Personal Liability for Shareholders, Directors or Officers.**

The Company, Acquisition Sub and the Parent understand, acknowledge and agree that the officers and directors of the Company and its Affiliates have performed, or may perform, certain acts required or permitted under this Agreement on behalf of the Company or such Affiliates, to facilitate the transactions contemplated by this Agreement.  Except in cases of intentional fraud, no officer or director of the Company or such Affiliate shall, under any circumstances, have any liability for such acts, and the Company, the Acquisition Sub and the Parent hereby absolve all such Persons from any personal liability to the Company or the Parent (and each of their respective Affiliates) for any matter relating to or arising out of this Agreement.

**8.13    Governing Law.**

This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

**8.14    Consent to Jurisdiction; Waiver of Jury Trial.**

(a)    Each of the Parent, Acquisition Sub, and the Company irrevocably submits to the exclusive jurisdiction of (i) the Court of Chancery of the State of Delaware and (ii) the United States District Court for the District of Delaware, for the purposes of any suit, action or other proceeding arising out of this Agreement, any Related Document or any transaction contemplated hereby or thereby.  Each of the Parent, Acquisition Sub, and the Company further agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth above shall be effective service of process for any action, suit or proceeding in Delaware with respect to any matters to which it has submitted to jurisdiction in this Section 8.14.  Each of the Parent, Acquisition Sub, and the Company irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement, any Related Document or the transactions contemplated hereby and thereby in (i) the Court of Chancery of the State of Delaware and (ii) the United States District Court for the District of Delaware, and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(b)    EACH OF THE PARTIES HERETO WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY COURSE OF

42

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294347

P-GEN-01196.140

CONDUCT, COURSE OF DEALING, VERBAL OR WRITTEN STATEMENT OR ACTION
OF ANY PARTY HERETO.

\* \* \* \*

ffny03\choial\717967.2

Confidential - Subject to Protective Order

3M_MDL000294348

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement and Plan of Merger as of the date first written above.

**AEARO HOLDING CORP.**

By: _Michael A. McLe_____

     Name:  Michael A. McLain
     Title:   President and Chief Executive
            Officer

**3M COMPANY**

By: _____

     Name: Jean J. Lobey
     Title:  Executive Vice President

**TITAN   ACQUISITION   SUBSIDIARY, INC.**

By: _____

     Name: Julie L. Bushman
     Title:  President

**PERMIRA ADVISERS L.L.C. (solely in its capacity as the Representative)**

By: _____

     Name:  Thomas H. Lister
     Title:  Managing ~~Partner~~ Director

Confidential - Subject to Protective Order

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement and Plan of Merger as of the date first written above.

**AEARO HOLDING CORP.**

By: _____
     Name:
     Title:

**3M COMPANY**

By: _____
     Name: Jean J. Lobey
     Title: Executive Vice President

**TITAN    ACQUISITION    SUBSIDIARY, INC.**

By: _____
     Name: Julie L. Bushman
     Title:   President

**PERMIRA ADVISERS L.L.C. (solely in its capacity as the Representative)**

By: _____
     Name:
     Title:

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement and Plan of Merger as of the date first written above.

**AEARO HOLDING CORP.**

By: _____

Name:  Michael A. McLain
Title:    President and Chief Executive
             Officer

**3M COMPANY**

By: _____

Name: Jean J. Lobey
Title:  Executive Vice President

**TITAN   ACQUISITION   SUBSIDIARY,
INC.**

By: _____

Name: Julie L. Bushman
Title:  President

**PERMIRA ADVISERS L.L.C. (solely in its
capacity as the Representative)**

By: _____

Name:  Thomas H. Lister
Title:  Managing Director

# ANNEX I

# DEFINITIONS

Capitalized terms used but not defined in the Agreement and Plan of Merger have the respective meanings assigned to such terms below.

"2006 Stock Incentive Plan" means the Company's 2006 Stock Incentive Plan.

"2007 Fiscal Year" has the meaning set forth in Section 5.8(b).

"Acquisition 1 Total Enterprise Value" means, if Acquisition 1 is consummated prior to the Effective Time, the debt free, cash free price paid at the consummation thereof by the Company and its Subsidiaries, plus the out-of-pocket fees and expenses actually paid as of the Closing in connection therewith and specified on Schedule I-A. The Acquisition 1 Total Enterprise Value shall not exceed $35,000,000 in the aggregate.

"Acquisition 2 Total Enterprise Value" means, if Acquisition 2 is consummated prior to the Effective Time, the debt free, cash free price paid at the consummation thereof by the Company and its Subsidiaries, plus the out-of-pocket fees and expenses actually paid as of the Closing in connection therewith and specified on Schedule I-A. The Acquisition 2 Total Enterprise Value shall not exceed $25,000,000 in the aggregate.

"Acquisition 1" means the proposed acquisition of the entity specified in Schedule I-A substantially on the terms (or terms more favorable to the Company and its Subsidiaries) presented to Parent prior to the date hereof.

"Acquisition 2" means the proposed acquisition of the entity specified in Schedule I-A, substantially on the terms (or terms more favorable to the Company and its Subsidiaries) presented to Parent prior to the date hereof.

"Acquisition Sub" has the meaning set forth in the caption.

"Action" means any action, suit, investigation, litigation or proceeding before any Governmental Authority or arbitrator.

"Affiliate" of any Person means another Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person.

"Aggregate Exercise Price" means the aggregate amount that would be paid to the Company in respect of all Options outstanding immediately prior to the Effective Time if the Holders thereof exercised such Options immediately prior to the Effective Time.

"Agreement" has the meaning set forth in the preamble.

"Benefit Plans" has the meaning set forth in Section 3.13(a)(i).

A-1 ffny03\choial\717967.2

                    3M_MDL000294352

"Business Day" means any day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are not required to be open.

"Buyer Material Adverse Effect" means a material adverse effect on the ability of Parent or Acquisition Sub to consummate the transactions contemplated by this Agreement or perform its obligations under this Agreement or the Related Documents.

"Cabot Asset Transfer Agreement" shall mean the Asset Transfer Agreement dated June 13, 1995 among Cabot Safety Corporation, Cabot Canada Ltd., Cabot Safety Limited, Cabot Corporation, Aearo Corporation and Cabot Safety Acquisition Corporation, as amended prior to the date hereof.

"Cash" means, with respect to the Company and the Company Subsidiaries, as of the close of business on the day immediately prior to the Closing Date, cash and cash equivalents determined in accordance with GAAP, consistently applied in accordance with the Company's past practices.

"Certificate of Merger" has the meaning set forth in the preamble.

"Closing" has the meaning set forth in Section 1.6.

"Closing Consideration" has the meaning set forth in Section 2.1(a).

"Closing Date" has the meaning set forth in Section 1.6.

"Code" means the Internal Revenue Code of 1986, as amended.

"Common Stock" means the common stock, par value $.01 per share, of the Company.

"Company" has the meaning set forth in the caption.

"Company Group" means, collectively, the Company and the Company Subsidiaries.

"Company Group Employees" has the meaning set forth in Section 5.8(c).

"Company Financial Statements" has the meaning set forth in Section 3.5.

"Company Subsidiaries" means the Subsidiaries of the Company.

"Confidentiality Agreement" has the meaning set forth in Section 5.3.

"Contract" means any loan or credit agreement, note, bond, mortgage, indenture, lease, sublease, purchase order or other agreement, commitment, or license.

"Corporate Rights" has the meaning set forth in Section 1.3.

A-2

ffny03\choial\717967.2

Confidential - Subject to Protective Order

"<u>Debt</u>" means, with respect to the Company and the Company Subsidiaries on a consolidated basis as of the close of business or the day immediately prior to the Closing Date, (i) all indebtedness for borrowed money or for the deferred purchase price of property or services (other than current trade liabilities incurred in the ordinary course of business and payable in accordance with customary practices), whether or not evidenced by a writing, (ii) any other indebtedness that is evidenced by a note, bond, debenture, draft or similar debt instrument, (iii) all obligations under financing or capital leases, (iv) all obligations in respect of bankers acceptances issued or created for the account of the Company or its Subsidiaries, (v) letters of credit to the extent drawn, and (vi) any guarantee or accrued interest, related to any of the foregoing (but in no event shall the definition of Debt include any amounts already deducted from the Closing Consideration as a Transaction Related Expense); it being understood and agreed that any prepayment premium, penalties or breakage costs in respect of the foregoing shall not be Debt for purposes of this Agreement.

"<u>DGCL</u>" has the meaning set forth in the preamble.

"<u>Dissenting Shares</u>" has the meaning set forth in <u>Section 2.2(b)</u>.

"<u>Dissenting Shareholders</u>" has the meaning set forth in <u>Section 2.2(b)</u>.

"<u>DOJ</u>" means the Antitrust Division of the United States Department of Justice.

"<u>Domain Names</u>" has the meaning set forth in <u>Section 3.12(h)</u>.

"<u>Domestic Patents</u>" has the meaning set forth in <u>Section 3.12(d)</u>.

"<u>Domestic Patent Applications</u>" has the meaning set forth in <u>Section 3.12(d)</u>.

"<u>Domestic Trademarks</u>" has the meaning set forth in <u>Section 3.12(f)</u>.

"<u>EC Merger Regulation</u>" has the meaning set forth in <u>Section 5.4(b)</u>.

"<u>Effective Time</u>" has the meaning set forth in <u>Section 1.2</u>.

"<u>Employee Arrangement</u>" has the meaning set forth in <u>Section 5.8(b)</u>.

"<u>End Date</u>" has the meaning set forth in <u>Section 7.1(a)(ii)</u>.

"<u>Encumbrances</u>" means mortgages, liens, security interests, pledges, easements, rights of first refusal, options, restrictions or encumbrances of any kind.

"<u>Environmental Law</u>" means any Law relating to the protection of the environment or human health or safety in effect as of or prior to the date of this Agreement, and as amended prior to the Closing.

"<u>Environmental Permits</u>" has the meaning set forth in <u>Section 3.14</u>.

"<u>ERISA</u>" means the Employee Retirement Income Security Act of 1974, as amended.

A-3

ffny03\choial\717967.2

Confidential - Subject to Protective Order

"ERISA Affiliate" has the meaning set forth in Section 3.13(c).

"Estimated Closing Consideration" has the meaning set forth in Section 2.4(a).

"Estimated Closing Consideration Statement" has the meaning set forth in Section 2.4(a).

"Excess Amount" has the meaning set forth in Section 2.4(e).

"Foreign Patent Applications" has the meaning set forth in Section 3.12(e).

"Foreign Patents" has the meaning set forth in Section 3.12(e).

"Foreign Trademarks" has the meaning set forth in Section 3.12(g).

"FTC" means the United States Federal Trade Commission.

"GAAP" means generally accepted accounting principles as in effect in the United Stated from time to time.

"Governmental Antitrust Authority" has the meaning set forth in Section 5.4(b).

"Governmental Authority" means any supranational, federal, state, provincial, local, county or municipal government, governmental, regulatory or administrative agency, department, court, commission, board, bureau or other authority or instrumentality, domestic or foreign.

"Hazardous Substance" means any substance, material or waste that is controlled, regulated or governed by any Environmental Law as hazardous, toxic, or words of similar import.

"Hedging Contracts" means any interest rate swap agreement, interest collar agreement, interest hedging agreement, foreign exchange contract, currency swap agreement or any agreement designed to protect against fluctuations in currency values.

"Holder" means any Person who holds Shares, Preferred Shares or Options.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

"Incentive Plans" has the meaning set forth in Section 5.8(b).

"Independent Accounting Firm" has the meaning set forth in Section 2.4(d).

"Intellectual Property" has the meaning set forth in Section 3.12(a).

"Knowledge of the Company" means the actual knowledge, of Michael A. McLain, Jeffrey S. Kulka, Rahul Kapur, and Robert Hebert, none of whom shall have any personal liability or obligations regarding such knowledge.

A-4

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                   3M_MDL000294355

P-GEN-01196.148

"Law" means any law, statute, ordinance, rule, regulation, order, writ, judgment, common law, injunction or decree of any Governmental Authority.

"Letter of Transmittal" has the meaning set forth in Section 2.1(b).

"Major Customers" has the meaning set forth in Section 3.20.

"Major Suppliers" has the meaning set forth in Section 3.20.

"Material Adverse Effect" means any event, change or effect in the business, condition (financial or otherwise), assets, liabilities or results of operations of the Company Group other than as a result of (i) a general deterioration in the economy or in the businesses in which the Company Group operate except to the extent the Company Group is affected in a disproportionate manner as compared to other similarly sized U.S. based companies engaged in the business of the manufacture of personal protection equipment, (ii) the outbreak or escalation of hostilities involving the United States, the declaration by the United States of a national emergency or war or the occurrence of any other calamity or crisis, including an act of terrorism, (iii) any change in accounting requirements or principles imposed upon the Company, the Company Subsidiaries or their respective businesses which are not specific to the Company or the Company Subsidiaries or any change in applicable Laws, rules or regulations or the interpretation thereof except to the extent the Company Group is affected in a disproportionate manner as compared to other similar companies, (iv) the public disclosure of this Agreement, the announcement or public disclosure thereof, the transactions contemplated hereby and the identity or involvement by the Parent and its Affiliates) or (v) any fluctuation in currency exchange rates which has a material adverse effect on the Company Group (after taking into account any insurance recoveries available in respect thereof), taken as a whole.

"Material Contracts" means, collectively, the Contracts listed, or required to be listed, on Schedule 3.15(a).

"Merger" has the meaning set forth in the preamble.

"Multiemployer Plan" has the meaning set forth in Section 3.13(d).

"Options" means options to purchase shares of Common Stock granted pursuant to the 2006 Stock Incentive Plan, whether or not vested or exercisable.

"Parcel" has the meaning set forth in Section 3.17(a).

"Parent" has the meaning set forth in the caption.

"Parent Plans" has the meaning set forth in Section 5.8(a).

"PBGC" has the meaning set forth in Section 3.13(c).

"Permits" has the meaning set forth in Section 3.7.

A-5

ffny03\choial\717967.2

3M_MDL000294356

"<u>Permitted Encumbrances</u>" means (i) those Encumbrances set forth on <u>Schedule 1.2</u> or in the Company Financial Statements, or liens securing debt for borrowed money; (ii) mechanics', carriers', workmen's, repairmen's or other like Encumbrances arising or incurred in the ordinary course of business, Encumbrances arising under original purchase price conditional sales contracts and equipment leases with third parties entered into in the ordinary course of business and liens for Taxes that are not due and payable or that may thereafter be paid without penalty or that are being contested in good faith by appropriate proceedings; (iii) all Encumbrances created by, arising under, or existing as a result of, any Law; (iv) all rights reserved to or vested in any Governmental Authority to control or regulate any asset or property in any manner and all Laws applicable to assets or properties; (v) other imperfections of title or encumbrances, if any, that do not, individually or in the aggregate, materially impair the continued use and operation of the Company's assets in the conduct of its business as presently conducted; (vi) easements, covenants, rights-of-way and other similar restrictions of record; (vii) any conditions that may be shown by a current, accurate survey or physical inspection of any Parcel made prior to Closing; and (viii) (A) zoning, building and other similar restrictions, (B) Encumbrances that have been placed by any developer, landlord or other third party on property over which the Company has easement rights and (C) unrecorded easements, covenants, rights-of-way and other similar restrictions, none of which items set forth in this clause (viii), individually or in the aggregate, materially impair the continued use and operation of any Parcel in the conduct of the business of the Company as presently conducted.

"<u>Person</u>" means and includes any domestic or foreign individual, partnership, corporation, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization or Governmental Authority (or any department, agency or political subdivision thereof).

"<u>Preferred Amount</u>" means the Liquidation Preference Amount, as such term is defined in the Certificate of Designation, Preference and Rights of Series A Preferred Stock, dated as of March 23, 2006, attached to the Certificate of Amendment of the Certificate of Incorporation of Pacer Holding Company as filed with the Secretary of State of the State of Delaware on March 23, 2006, payable with respect to each Preferred Share in connection with the Merger.

"<u>Preferred Holder</u>" means any Person who holds Preferred Shares.

"<u>Preferred Shares</u>" means shares of Preferred Stock.

"<u>Preferred Stock</u>" means the preferred stock, par value $.01 per share, of the Company.

"<u>Principal Stockholders</u>" means, collectively, Permira Europe III L.P. 1, Permira Europe III L.P. 2, Permira Europe III GmbH & Co KG, Permira Investments Limited, Permira Europe III Co-Investment Scheme, Michael A. McLain, McLain Capital Partners, Jeffrey S. Kulka and Rahul Kapur.

"<u>Proportionate Percentage</u>" means (a) with respect to any Shareholder, a fraction (expressed as a percentage) the numerator of which is the number of issued and outstanding

A-6

Confidential - Subject to Protective Order

Shares held by such Holder immediately prior to the Effective Time and the denominator of which is the number of issued and outstanding Shares held by all Holders immediately prior to the Effective Time (assuming the exercise of all Options outstanding immediately prior to the Effective Time) and (b) with respect to any Holder of Options, a fraction (expressed as a percentage) the numerator of which is the number of Shares issuable upon the exercise of Options held by such Holder immediately prior to the Effective Time and the denominator of which is the number of issued and outstanding Shares held by all Holders immediately prior to the Effective Time (assuming the exercise of all Options outstanding immediately prior to the Effective Time).

"Real Property Lease" has the meaning set forth in Section 3.17(b).

"Related Documents" means the Certificate of Merger and such other agreements contemplated by this Agreement, as amended, restated, supplemented or otherwise modified from time to time.

"Related Party Transaction" has the meaning set forth in Section 3.16.

"Release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers and other closed receptacles containing any Hazardous Substance).

"Representative" shall mean Permira Advisers L.L.C.

"Restricted Shares" means those shares of Common Stock that are the subject of "Restricted Stock Awards" made pursuant to the 2006 Stock Incentive Plan and that vest immediately prior to, but subject to, the consummation of the Merger in accordance with the 2006 Stock Incentive Plan.

"Shareholder" means any Person who holds Shares of the Company immediately prior to the Effective Time.

"Shares" means shares of Common Stock and the Restricted Shares.

"Shortfall Amount" has the meaning set forth in Section 2.4(f).

"Subsidiary" of any Person means another Person, an amount of the voting securities, other voting ownership or voting partnership interests of which is sufficient to elect at least a majority of its board of directors or other governing body (or, if there are no such voting interests, 50% or more of the equity interests of which) is owned directly or indirectly by such first Person.

"Surviving Company" has the meaning set forth in Section 1.1.

"Tax" or "Taxes" means, with respect to any Person, all income taxes (including any tax on or based upon net income, gross income, or income as specially defined, or earnings, profits, or selected items of income, earnings or profits) and all gross receipts, sales, use, ad

A-7

ffny03\choial\717967.2

Confidential - Subject to Protective Order

valorem, transfer, franchise, license, withholding, payroll, employment or windfall profits taxes, alternative or add-in minimum taxes, customs duties or other taxes of any kind whatsoever, together with any interest and any penalties, additions to tax or additional amounts imposed by any Taxing Authority on such Person and including any liability for the taxes of any person (other than the Company or any of its Subsidiaries) under Treasury Regulation §1.1502-6 (or any similar provision of state, local, or foreign law), as a transferee or successor, by contract, or otherwise.

"<u>Tax Authority</u>" means any Governmental Authority or any quasi-governmental or private body having jurisdiction over the assessment, determination, collection or imposition of any Tax.

"<u>Tax Return</u>" means any return, report, certificate, form or similar statement or document (including any related or supporting information or schedule attached thereto and any information return, amended Tax return, claim for refund or declaration of estimated Tax and including any amendment thereof) required or permitted to be supplied to, or filed with, a Tax Authority in connection with the determination, assessment or collection of any Tax or the administration of any Laws, relating to any Tax.

"<u>Title IV Plan</u>" has the meaning set forth in <u>Section 3.13(c)</u>.

"<u>Total Preferred Amount</u>" has the meaning set forth in <u>Section 2.4(a)</u>.

"<u>Transaction Related Expenses</u>" means (i) all out-of-pocket fees and expenses payable to Permira Advisers L.L.C. and its Affiliates, (ii) any amounts payable to third party service providers in excess of $5,000,000 that are incurred by the Company or the Company Subsidiaries in connection with this Agreement and the transactions contemplated hereby, and (iii) any amounts payable by the Company to any of its officers, directors or employees, if any, in the nature of a closing or signing bonus or similar payment as a result of the signing of this Agreement or the completion of the transactions contemplated hereby; for the avoidance of doubt it is agreed that any prepayment penalties, premiums, termination fees, expenses or breakage costs under the existing credit facilities or Hedging Contracts of the Company or any Company Subsidiaries shall not be treated as Transaction Related Expenses for purposes of this Agreement.

"<u>Transfer Taxes</u>" has the meaning set forth in <u>Section 5.5(b)</u>.

"<u>Unaudited Financial Statements</u>" has the meaning set forth in <u>Section 3.5</u>.

"<u>WARN</u>" means the Workers Adjustment and Retraining Notification Act, 29 U.S.C.  Sec. 2101 <u>et seq.</u>, as amended, and any other similar state, local or government regulation or ordinance.

"<u>Withholding Amount</u>" has the meaning set forth in <u>Section 2.3</u>.

A-8

ffny03\choial\717967.2

Confidential - Subject to Protective Order                                                     3M_MDL000294359

AEARO HOLDING CORP.

Schedule 3.12(d)(1)
Domestic Patents

A list of domestic issued utility and design patents, consisting of thirteen (13) pages, is attached hereto.

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 88-1135/1 | CON | 07/018746 | | 4968129 | Granted | 03-Mar-1987 | | 06-Nov-1990 | 06-Nov-2007 | | Eyeglass Frame Structures And Method Of Assembling Same |
| Cabot Safety Intermediate Corporation | 88-1376/ | PRI | 07/259171 | | 4977627 | Granted | 18-Oct-1988 | | 18-Dec-1990 | 18-Oct-2008 | AO-3792 | Protective Goggle |
| Cabot Safety Intermediate Corporation | 90-1214/ | DES | 07/529161 | | D325391 | Expired | 14-May-1990 | | 14-Apr-1992 | 14-Apr-2006 | | Eyeglass Safety Frame |
| Cabot Safety Intermediate Corporation | 90-1305/ | DES | 07/571416 | | D324059 | Expired | 21-Aug-1990 | | 18-Feb-1992 | 18-Feb-2006 | | Eyeglass Safety Frame |
| Cabot Safety Intermediate Corporation | 95-1403/1 | PRI | 08/027218 | | 5299448 | Granted | 05-Mar-1993 | | 05-Apr-1994 | 05-Mar-2013 | | Positive Pressure Test Apparatus For Facepiece Respirator |
| Cabot Safety Intermediate Corporation | 95-1413/1 | DES | 29/022900 | | D371193 | Granted | 16-May-1994 | | 25-Jun-1996 | 25-Jun-2010 | | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1430/1 | PRI | 08/048722 | | 5420381 | Granted | 19-Apr-1993 | | 30-May-1995 | 19-Apr-2013 | | Acoustical Earmuff |
| Cabot Safety Intermediate Corporation | 95-1465/1 | DES | 29/012826 | | D358684 | Granted | 10-Sep-1993 | | 23-May-1995 | 23-May-2009 | | Disposable Faceshield |
| Cabot Safety Intermediate Corporation | 95-1466/1 | DES | 29/013215 | | D358463 | Granted | 21-Sep-1993 | | 16-May-1995 | 16-May-2009 | | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1467/1 | DES | 29/021406 | | D375550 | Granted | 15-Apr-1994 | | 12-Nov-1996 | 12-Nov-2010 | | Hearing Protective Earplug |
| Cabot Safety Intermediate | 95-1468/1 | DES | 29/021412 | | D369655 | Granted | 15-Apr-1994 | | 07-May-1996 | 07-May-2010 | | Hearing Protective Earplug |

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corporation | | | | | | | | | | | | |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 29/021414 | | D375551 | Granted | 15-Apr-1994 | | 12-Nov-1996 | 12-Nov-2010 | | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1473/1 | CON | 07/285339 | | 4867149 | Expired | 16-Dec-1988 | | 19-Sep-1989 | 19-Sep-2006 | | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1480/1 | PRI | 07/234427 | | 4936411 | Granted | 19-Aug-1988 | | 26-Jun-1990 | 19-Aug-2008 | | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1482/1 | PRI | 07/425623 | | 4995824 | Granted | 23-Oct-1989 | | 26-Feb-1991 | 23-Oct-2009 | | Line Coupling Device |
| Cabot Safety Intermediate Corporation | 95-1484/1 | PRI | 07/443142 | | 5044463 | Granted | 30-Nov-1989 | | 03-Sep-1991 | 30-Nov-2009 | | Molded Foam Earplug And Method For Making Same |
| Cabot Safety Intermediate Corporation | 95-1503/1 | DES | 07/789478 | | D333478 | Expired | 08-Nov-1991 | | 23-Feb-1993 | 23-Feb-2007 | | Eyeglass Safety Frame |
| Cabot Safety Intermediate Corporation | 95-1506/1 | DES | 07/877602 | | D348893 | Granted | 01-May-1992 | | 19-Jul-1994 | 19-Jul-2008 | | Semi-Rimless Safety Frame |
| Cabot Safety Intermediate Corporation | 95-1507/1 | DES | 07/892379 | | D345663 | Granted | 01-Jun-1992 | | 05-Apr-1994 | 05-Apr-2008 | | Earplug Dispenser |
| Cabot Safety Intermediate Corporation | 95-1510/1 | PRI | 07/047790 | | 4924502 | Expired | 08-May-1987 | | 08-May-1990 | 08-May-2007 | | Means For Stabilizing Sound Pressure Produced At The Eardrum Under An Earpad |
| Cabot Safety Intermediate Corporation | 95-1514/1 | DES | 07/132543 | | D331966 | Expired | 11-Dec-1987 | | 22-Dec-1992 | 22-Dec-2006 | | Hearing Protector |

- 2 -

3M_MDL000294362

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---------|-----------|-----------|-----------------|-----------------|-----------|--------|-------------|------------------|------------|-----------------|------------------|-------|
| Cabot Safety Intermediate Corporation | 95-1525/1 | DES | 07/587364 | | D330761 | Expired | 21-Sep-1990 | | 03-Nov-1992 | 03-Nov-2006 | | Earplug |
| Cabot Safety Intermediate Corporation | 95-1529/1 | DES | 07/676732 | | D340316 | Granted | 28-Mar-1991 | | 12-Oct-1993 | 12-Oct-2007 | | Test Probe For Facepiece Respirators |
| Cabot Safety Intermediate Corporation | 95-1604/1 | PRI | 08/698398 | | 5799658 | Granted | 15-Aug-1996 | | 01-Sep-1998 | 15-Aug-2016 | | Hearing Protective Device Comprising A Foam And A Porous Component And Method Of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1640/1 | CIP | 08/698404 | | 5792998 | Granted | 15-Aug-1996 | | 11-Aug-1998 | 19-Apr-2013 | | Acoustical Hearing Protective Devices Utilizing Dynamically Stiff Foam And Methods Of Producing Same |
| Cabot Safety Intermediate Corporation | 96-1087/1 | DES | 29/053242 | | D393650 | Granted | 18-Apr-1996 | | 21-Apr-1998 | 21-Apr-2012 | | Protective Eyewear Frame |
| Cabot Safety Intermediate Corporation | 96-1178/1 | DES | 29/054494 | | D399233 | Granted | 02-May-1996 | | 06-Oct-1998 | 06-Oct-2012 | | Eyewear |
| Cabot Safety Intermediate Corporation | 96-1179/1 | DES | 29/054492 | | D397126 | Granted | 02-May-1996 | | 18-Aug-1998 | 18-Aug-2012 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 96-1180/1 | DES | 29/054493 | | D384092 | Granted | 02-May-1996 | | 23-Sep-1997 | 23-Sep-2011 | | Eyewear Frame Temple |
| Cabot Safety Intermediate Corporation | 96-1181/1 | DES | 29/054495 | | D386777 | Granted | 02-May-1996 | | 25-Nov-1997 | 25-Nov-2011 | | Eyewear Frame Nosepiece |

- 3 -

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 96-1227/P | CIP | 08/770920 | | 5909267 | Granted | 20-Dec-1996 | | 01-Jun-1999 | 02-May-2016 | | Eyewear Temple Design |
| Cabot Safety Intermediate Corporation | 96-1266/1 | PRI | 08/698367 | | 5809574 | Granted | 15-Aug-1996 | | 22-Sep-1998 | 15-Aug-2016 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1266/C | CON | 09/065881 | | 6006361 | Granted | 24-Apr-1998 | | 28-Dec-1999 | 15-Aug-2016 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1266/D | DIV | 09/060696 | | 6021526 | Granted | 15-Apr-1998 | | 08-Feb-2000 | 15-Aug-2016 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/1 | DES | 29/058459 | | D410079 | Granted | 15-Aug-1996 | | 18-May-1999 | 18-May-2013 | | Hearing Protective Device |
| Cabot Safety Intermediate Corporation | 96-1267/A | DES | 29/095691 | | D410283 | Granted | 28-Oct-1998 | | 25-May-1999 | 25-May-2013 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/B | DES | 29/095690 | | D409743 | Granted | 28-Oct-1998 | | 11-May-1999 | 11-May-2013 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/P | DES | 29/084784 | | D415833 | Granted | 10-Mar-1998 | | 26-Oct-1999 | 26-Oct-2013 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1268/ | DES | 29/055875 | | D405173 | Granted | 14-Jun-1996 | | 02-Feb-1999 | 02-Feb-2013 | | Earplug |
| Cabot Safety Intermediate Corporation | 96-1268/P | DES | 29/060727 | | D423664 | Granted | 04-Oct-1996 | | 25-Apr-2000 | 25-Apr-2014 | | Earplug |
| Cabot Safety Intermediate Corporation | 96-1269/1 | DES | 29/058440 | | D402752 | Granted | 15-Aug-1996 | | 15-Dec-1998 | 15-Dec-2012 | | Hearing Protective Device |

- 4 -

Confidential - Subject to Protective Order

3M_MDL000294364

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 96-1814/1 | CIP | 08/806832 | | 5825455 | Granted | 26-Feb-1997 | | 20-Oct-1998 | 02-May-2016 | | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | 96-1814/C | CON | 09/149629 | | 6019469 | Granted | 08-Sep-1998 | | 01-Feb-2000 | 02-May-2016 | | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 29/067138 | | D410666 | Granted | 26-Feb-1997 | | 08-Jun-1999 | 08-Jun-2013 | | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1024/1 | CIP | 08/806595 | | 6024446 | Granted | 26-Feb-1997 | | 15-Feb-2000 | 02-May-2016 | | Eyewear With Hingedly Attached Strapped Head Retainer |
| Cabot Safety Intermediate Corporation | 97-1024/D | DIV | 09/474045 | | 6511177 B1 | Expired | 28-Dec-1999 | | 28-Jan-2003 | 02-May-2016 | | Protective Eyewear With Adjustable Strap |
| Cabot Safety Intermediate Corporation | 97-1024/P | CIP | 09/032505 | | 6149268 | Granted | 26-Feb-1998 | | 21-Nov-2000 | 02-May-2016 | | Protective Eyewear With At Least One Ventilation Channel |
| Cabot Safety Intermediate Corporation | 97-1025/1 | DES | 29/067016 | | D392990 | Granted | 26-Feb-1997 | | 31-Mar-1998 | 31-Mar-2012 | | Eyewear Having A Strap Attachment |
| Cabot Safety Intermediate Corporation | 97-1300/1 | DES | 29/069419 | | D412008 | Granted | 14-Apr-1997 | | 13-Jul-1999 | 13-Jul-2013 | | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1424/1 | DES | 29/075609 | | D414862 | Granted | 03-Sep-1997 | | 05-Oct-1999 | 05-Oct-2013 | | Filter Mask |
| Cabot Safety Intermediate Corporation | 97-1495/ | DES | 29/071554 | | D403693 | Granted | 02-Jun-1997 | | 05-Jan-1999 | 05-Jan-2013 | | Eyewear Frame Nosepiece |
| Cabot Safety Intermediate Corporation | 97-1542/ | DES | 29/076295 | | D424079 | Granted | 03-Sep-1997 | | 02-May-2000 | 02-May-2014 | | Eyewear Lens |

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 97-1543/ | DES | 29/075626 | | D417678 | Granted | 03-Sep-1997 | | 14-Dec-1999 | 14-Dec-2013 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 29/101342 | | D424080 | Granted | 02-Mar-1999 | | 02-May-2000 | 02-May-2014 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/2 | DES | 29/101373 | | D419167 | Granted | 02-Mar-1999 | | 18-Jan-2000 | 18-Jan-2014 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/3 | DES | 29/101350 | | D420027 | Granted | 02-Mar-1999 | | 01-Feb-2000 | 01-Feb-2014 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/4 | DES | 29/101349 | | D419579 | Granted | 02-Mar-1999 | | 25-Jan-2000 | 25-Jan-2014 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1676/1 | DES | 29/075178 | | D400558 | Granted | 26-Jul-1997 | | 03-Nov-1998 | 03-Nov-2012 | | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1677/1 | DES | 29/075175 | | D398325 | Granted | 26-Jul-1997 | | 15-Sep-1998 | 15-Sep-2012 | | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1678/ | DES | 29/075176 | | D403342 | Granted | 26-Jul-1997 | | 29-Dec-1998 | 29-Dec-2012 | | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1702/ | DES | 29/074073 | | D404849 | Granted | 24-Jul-1997 | | 26-Jan-1999 | 26-Jan-2013 | | Disposable Face Shield |
| Cabot Safety Intermediate Corporation | 97-1723/1 | DES | 29/076286 | | D411221 | Granted | 03-Sep-1997 | | 22-Jun-1999 | 22-Jun-2013 | | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1733/ | PRI | 09/095861 | | 5969787 | Granted | 11-Jun-1998 | | 19-Oct-1999 | 11-Jun-2018 | | Ventilated Browbar Frame And Eyewear |

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 97-1734/ | DES | 29/089249 | | D415516 | Granted | 11-Jun-1998 | | 19-Oct-1999 | 19-Oct-2013 | | Protective Browbar And Eyewear |
| Cabot Safety Intermediate Corporation | 97-1734/D | DES | 29/104634 | | D423033 | Granted | 10-May-1999 | | 18-Apr-2000 | 18-Apr-2014 | | Protective Browbar And Eyewear |
| Cabot Safety Intermediate Corporation | 97-1736/ | CIP | 08/988625 | | 5983399 | Granted | 10-Dec-1997 | | 16-Nov-1999 | 15-Aug-2016 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 97-1962/ | DES | 29/082623 | | D412179 | Granted | 27-Jan-1998 | | 20-Jul-1999 | 20-Jul-2013 | | Eyewear End Piece And Temple Assembly |
| Cabot Safety Intermediate Corporation | 97-1983/1 | DES | 29/093186 | | D411561 | Granted | 04-Sep-1998 | | 29-Jun-1999 | 29-Jun-2013 | | Eyewear End Piece |
| Cabot Safety Intermediate Corporation | 97-2047/1 | PRI | 09/067579 | | 6161540 | Granted | 28-Apr-1998 | | 19-Dec-2000 | 28-Apr-2018 | | Respirator Filter Having A Pleated Filter Layer |
| Cabot Safety Intermediate Corporation | 98-1182/2 | PRI | 09/524825 | | 6241042 B1 | Granted | 14-Mar-2000 | | 05-Jun-2001 | 14-Mar-2020 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 98-1255/1 | PRI | 09/069108 | | 6148821 | Granted | 29-Apr-1998 | | 21-Nov-2000 | 29-Apr-2018 | | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1716/ | PRI | 09/255601 | | 6338342 B1 | Granted | 22-Feb-1999 | | 15-Jan-2002 | 22-Feb-2019 | | Respirator Headpiece And Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | CON | 09/981576 | 0078953-A1 | 6497232 B2 | Granted | 16-Oct-2001 | 27-Jun-2002 | 24-Dec-2002 | 22-Feb-2019 | | Respirator Headpiece And Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-2070/1 | CIP | 09/369115 | | 6254236 B1 | Granted | 05-Aug-1999 | | 03-Jul-2001 | 02-May-2016 | | Parabolic And Hyperbolic Aspheric Eyewear |

- 7 -

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 98-2169/ | PRI | 09/226467 | | 6920956 B1 | Granted | 07-Jan-1999 | | 26-Jul-2005 | 16-Jan-2021 | | Detectable Earplug And Method Of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | CAO-0005/ | DES | 29/100948 | | D44030 1 S | Granted | 22-Feb-1999 | | 10-Apr-2001 | 10-Apr-2015 | | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0006/ | DES | 29/100949 | | D43449 3 | Granted | 22-Feb-1999 | | 28-Nov-2000 | 28-Nov-2014 | | Cartridge Filter |
| Cabot Safety Intermediate Corporation | CAO-0035/ | PRI | 09/357037 | | 6095146 | Granted | 20-Jul-1999 | | 01-Aug-2000 | 20-Jul-2019 | | Glow-In-The-Dark Hearing Protective Devices |
| Cabot Safety Intermediate Corporation | CAO-0036/ | PRI | 09/418381 | | 6241352 B1 | Granted | 09-Jul-1999 | | 05-Jun-2001 | 09-Jul-2019 | | Lens Overlays For Protective Safety Frames |
| Cabot Safety Intermediate Corporation | CAO-0037/ | PRI | 09/357217 | | 6151717 | Granted | 20-Jul-1999 | | 28-Nov-2000 | 20-Jul-2019 | | Transparent Or Translucent Earmuff Cup |
| Cabot Safety Intermediate Corporation | CAO-0055/ | PRI | 09/434602 | | 6105715 | Granted | 05-Nov-1999 | | 22-Aug-2000 | 05-Nov-2019 | | Multi-Color Variably Attenuating Earplug |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PRI | 09/542238 | | 6276795 B1 | Granted | 04-Apr-2000 | | 21-Aug-2001 | 04-Apr-2020 | | Protective Eyewear With Adjustable Strap |
| Cabot Safety Intermediate Corporation | CAO-0067/2 | PRI | 09/891808 | 0043538-A1 | 6604653 B2 | Granted | 26-Jun-2001 | 18-Apr-2002 | 12-Aug-2003 | 26-Jun-2021 | | Earplug Dispenser |
| Cabot Safety Intermediate Corporation | CAO-0068/ | PRI | 09/482237 | | 6695093 B1 | Granted | 13-Jan-2000 | | 24-Feb-2004 | 05-Sep-2020 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | 29/143894 | | D47329 9 S | Granted | 21-Jun-2001 | | 15-Apr-2003 | 15-Apr-2017 | | Cartridge Cap |

Confidential - Subject to Protective Order

3M_MDL000294368

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0083/ | CIP | 09/608899 | | 6536435 B1 | Granted | 30-Jun-2000 | | 25-Mar-2003 | 22-Feb-2019 | | Respirator Headpiece And Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 29/149754 | | D47393 7 S | Granted | 16-Oct-2001 | | 29-Apr-2003 | 29-Apr-2017 | | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0101/ | PRI | 09/710006 | | 6322211 B1 | Granted | 10-Nov-2000 | | 27-Nov-2001 | 10-Nov-2020 | | Adjustable Temple Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0120/2 | PRI | 09/978881 | 0066455-A1 | 6568394 B2 | Granted | 16-Oct-2001 | 06-Jun-2002 | 27-May-2003 | 16-Oct-2021 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0121/ | PRI | 09/829159 | 0146142-A1 | 6826287 B2 | Granted | 09-Apr-2001 | 10-Oct-2002 | 30-Nov-2004 | 24-Jun-2021 | | Earmuff With Controlled Leak |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 29/142299 | | D48452 5 S | Granted | 23-May-2001 | | 30-Dec-2003 | 30-Dec-2017 | | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0142/ | RCE | 09/841479 | 0153192-A1 | 6622816 B2 | Granted | 24-Apr-2001 | 24-Oct-2002 | 23-Sep-2003 | 24-Apr-2021 | | Personal Protective Devices Having An Energy Activated Material |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 29/149766 | | D47262 7 S | Granted | 16-Oct-2001 | | 01-Apr-2003 | 01-Apr-2017 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0214/ | DES | 29/150750 | | D46699 5 S | Granted | 28-Nov-2001 | | 10-Dec-2002 | 10-Dec-2016 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 29/175420 | | D49276 5 S | Granted | 04-Feb-2003 | | 06-Jul-2004 | 06-Jul-2018 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D2 | DES | 29/175421 | | D49276 6 S | Granted | 04-Feb-2003 | | 06-Jul-2004 | 06-Jul-2018 | | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294369

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0224/ | PRI | 09/131467 | | 5987653 | Granted | 10-Aug-1998 | | 23-Nov-1999 | 10-Aug-2018 | | Protective Eyewear For Industrial Use |
| Cabot Safety Intermediate Corporation | CAO-0226/ | PCT | 10/648750 | 0141147-A1 | 6908193 B2 | Granted | 25-Aug-2003 | 22-Jul-2004 | 21-Jun-2005 | 25-Feb-2022 | | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0228/ | PCT | 10/648754 | 0141149-A1 | 6811255 B2 | Granted | 25-Aug-2003 | 22-Jul-2004 | 02-Nov-2004 | 25-Feb-2022 | | Protective Eyewear Assembly |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | 29/157257 | | D47931 9 S | Granted | 14-Mar-2002 | | 02-Sep-2003 | 02-Sep-2017 | | Semi-Aural Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0255/ | DES | 29/155641 | | D47740 0 S | Granted | 13-Feb-2002 | | 15-Jul-2003 | 15-Jul-2017 | | Ornamental Flame |
| Cabot Safety Intermediate Corporation | CAO-0255/C | DES | 29/159479 | | D48013 6 S | Granted | 22-Apr-2002 | | 30-Sep-2003 | 30-Sep-2017 | | Flaming Earplug |
| Cabot Safety Intermediate Corporation | CAO-0255/D | DES | 29/177420 | | D48535 2 S | Granted | 10-Mar-2003 | | 13-Jan-2004 | 13-Jan-2018 | | Flame |
| Cabot Safety Intermediate Corporation | CAO-0262/ | DES | 29/157200 | | D47162 5 S | Granted | 14-Mar-2002 | | 11-Mar-2003 | 11-Mar-2017 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | 29/159097 | | D48111 8 S | Granted | 11-Apr-2002 | | 21-Oct-2003 | 21-Oct-2017 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0320/ | PRI | 10/247228 | 0055923-A1 | 6915907 B2 | Granted | 19-Sep-2002 | 25-Mar-2004 | 12-Jul-2005 | 19-Nov-2022 | | Product Distribution Assembly |
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | 29/156310 | | D49234 0 S | Granted | 25-Feb-2002 | | 29-Jun-2004 | 29-Jun-2018 | | Eyewear |

- 10 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 29/166972 | | D47865 8 S | Granted | 06-Sep-2002 | | 19-Aug-2003 | 19-Aug-2017 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 29/183155 | | D49276 8 S | Granted | 05-Jun-2003 | | 06-Jul-2004 | 06-Jul-2018 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0452/ | DES | 29/183154 | | D49276 7 S | Granted | 05-Jun-2003 | | 06-Jul-2004 | 06-Jul-2018 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 29/187485 | | D49672 2 S | Granted | 01-Aug-2003 | | 28-Sep-2004 | 28-Sep-2018 | | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | N/A | | 08/772763 | | 5798064 | Granted | 23 Dec 1996 | | 25 Aug 1998 | | | Process And Apparatus For Fabrication Of Flexible Foam |
| Cabot Safety Intermediate Corporation | CAO-0218-D3 | | 29/175422 | | D49321 9 | Granted | 4 Feb 2003 | | 20 Jul 2004 | | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-1814R | REX | 90/006862 | | 5825455 C1 | Granted | 14-Nov-2003 | | 26-Sep-2006 | 02-May-2016 | | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227 | PCT | 10/648703 | 0141146-A1 | 6994434 | Granted | 25-Aug-2003 | 22-Jul-2004 | 07-Feb-2006 | 25-Feb-2022 | | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0307 | PRI | 10/307615 | 0105069-A1 | 7055952 | Granted | 02-Dec-2002 | 03-Jun-2004 | 06-Jun-2006 | 02-Dec-2022 | | Temple Piece For Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0566 | DES | 29/207655 | | D51561 5 | Granted | 15-Jun-2004 | | 21-Feb-2006 | 21-Feb-2020 | | Goggle |
| Cabot Safety Intermediate Corporation | CAO-0579 | DES | 29/204061 | | D52493 7 | Granted | 23-Apr-2004 | | 11-Jul-2006 | 11-Jul-2020 | | Hearing Protection Device |

- 11 -

3M_MDL000294371

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---------|-----------|-----------|-----------------|-----------------|-----------|--------|-------------|------------------|------------|-----------------|------------------|-------|
| Cabot Safety Intermediate Corporation | CAO-0579-D | DES | 29/251771 | | D52820 4 | Granted | 12-Jan-2006 | | 12-Sep-2006 | 12-Sep-2020 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-1052 | DES | 29/240275 | | D53892 4 | Granted | 11-Oct-2005 | | 20-Mar-2007 | 20-Mar-2021 | | Earplug With Integral Handle |
| Peltor AB | | | | | 6 965 681 | Granted | | | | 12-Aug-2018 | | An Arrangement In Acoustic Head Sets |
| Peltor AB | | | | | 5 241 971 | Granted | | | | 7-Sept-2010 | | Ear-Protection Cup For Ear Muffs Or Headphones |
| Peltor AB | | | | | 5 239 703 | Granted | | | | 31-Aug-2010 | | A Positionable Visor Arrangement |
| Peltor AB | | | | | 5 384 857 | Granted | | | | 26-Oct-2013 | | Ear Defender Cup Support Means Including A Snapp-In Attachement |
| Peltor AB | | | | | 6 832 393 | Granted | | | | 5-May-2020 | | A Safety Visor |
| Peltor AB | | | | | 7 036 157 | Granted | | | | 15-June-2020 | | Method For Making A Cup And A Cup Made According To The Method |
| Peltor AB | | | | | Des. 411 200 | Granted | | | | 22-Jun-2013 | | Headset Radio & Control Panel Design |
| Peltor AB | | | | | Des. 410 008 | Granted | | | | 18-May-2013 | | Headset Radio & Control Panel Design |
| Peltor AB | | | | | Des. 360 708 | Granted | | | | 25-Jul-2009 | | Helmet Visor Design |
| Peltor AB | | | | | Des. 372 343 | Granted | | | | 30-Jul-2010 | | Helmet Visor Design |
| Peltor AB | | | | | Des. 370 308 | Granted | | | | 28-May-2010 | | Protective Helmet Design |

Confidential - Subject to Protective Order

3M_MDL000294372

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Filing Date | Publication Date | Issue Date | Expiration Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | Des. 434 191 | Granted | | | | 21-Nov-2014 | | Ear Protection Design |
| Peltor AB | | | | | Des. 432 526 | Granted | | | | 24-Oct-2014 | | Microphone Boom Design |
| Peltor AB | | | | | D465 616 S | Granted | | | | 12-Nov-2016 | | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | D468 063 S | | | | | 31-Dec-2016 | | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | D509 323 | | | | | 6-Sep-2019 | | Hearing Protector Design |
| Peltor AB | | | | | D506 577 | | | | | 21-Jun-2019 | | Hearing Protector Design |

- 13 -

Confidential - Subject to Protective Order

AEARO HOLDING CORP.

Schedule 3.12(d)(2)
Domestic Patent Applications

A list of domestic pending utility and design patent applications, consisting of six (6) pages, is attached hereto.

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1486/C | CON | 08/827837 | | Pending | 11-Apr-1997 | | EAR92005B | Process for Making an Acoustical Earmuff Cushion |
| Cabot Safety Intermediate Corporation | 96-1814/R2 | REX | 90/006863 | | Pending | 14-Nov-2003 | | | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0090/2 | PRI | 09/871390 | 0047729-A1 | Pending | 31-May-2001 | 06-Dec-2001 | | Process for Applying Decorative Pattern to Earplugs |
| Cabot Safety Intermediate Corporation | CAO-0111/2 | PRI | 09/990654 | 0124851-A1 | Pending | 21-Nov-2001 | 12-Sep-2002 | | Hearing Protective Device and Method of Making the Same |
| Cabot Safety Intermediate Corporation | CAO-0120/C | CON | 10/422350 | 0069310-A1 | Published | 24-Apr-2003 | 15-Apr-2004 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0162/2 | ORD | 10/200412 | 0084903-A1 | Published | 22-Jul-2002 | 08-May-2003 | | Adjustable Mask |
| Cabot Safety Intermediate Corporation | CAO-0218/ | DES | 29/154252 | | Allowed | 18-Jan-2002 | | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0223/2 | RCE | 10/352336 | 0172938-A1 | Allowed | 27-Jan-2003 | 18-Sep-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0311/2 | ORD | 10/442567 | 0144382-A1 | Published | 21-May-2003 | 29-Jul-2004 | | Heat Management System for Industrial Safety Equipment |
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | 29/156297 | | Pending | 25-Feb-2002 | | | Eyewear and Eyewear Temple |

Confidential - Subject to Protective Order

3M_MDL000294375

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0344/ | PRI | 10/236595 | 0045558-A1 | Published | 06-Sep-2002 | 11-Mar-2004 | | Earplug and Method of Manufacturing an Earplug |
| Cabot Safety Intermediate Corporation | CAO-0384/ | RCE | 10/282280 | 0079579-A1 | Published | 28-Oct-2002 | 29-Apr-2004 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0399/2 | ORD | 10/334548 | 0113339-A1 | Published | 31-Dec-2002 | 17-Jun-2004 | | Pin Grommet Connection Apparatus |
| Cabot Safety Intermediate Corporation | CAO-0399/D | DIV | 11/136914 | 0206058-A1 | Published | 25-May-2005 | 22-Sep-2005 | | Pin Grommet Connection Apparatus |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PRI | 10/346604 | 0139976-A1 | Published | 17-Jan-2003 | 22-Jul-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0428/ | PRI | 10/660015 | 0056288-A1 | Published | 11-Sep-2003 | 17-Mar-2005 | | Earplug and a Method of Forming an Earplug |
| Cabot Safety Intermediate Corporation | CAO-0476/ | PRI | 10/700213 | 0094835-A1 | Published | 03-Nov-2003 | 05-May-2005 | | Low Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0477/ | PRI | 10/740180 | 0135650-A1 | Published | 17-Dec-2003 | 23-Jun-2005 | | Earplug Training Device and Earplug Dispensing Mechanism Having the Same |
| Cabot Safety Intermediate Corporation | CAO-0515/2 | ORD | 11/003813 | | Published | 02-Dec-2004 | | | System for Order and Fulfillment of Occupational Prescription Eyewear |
| No assignment filed | CAO-0519/2 | ORD | 11/150543[*] | | Pending | 10-Jun-2005 | | | Variable Geometry Lens |
| No assignment filed | CAO-0520/2 | ORD | 11/149906[†] | | Pending | 10-Jun-2005 | | | Molded-In Films for Spectacle Lenses |

[*] Patent to be assigned from inventor to Cabot Safety Intermediate Corporation.
[†] Patent to be assigned from inventor to Cabot Safety Intermediate Corporation.

Confidential - Subject to Protective Order

3M_MDL000294376

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|-------------|------------------|------------------|-------|
| No assignment filed | CAO-0535/2 | ORD | 11/149905‡ | | Pending | 10-Jun-2005 | | | In-Mold Movable Parts Assembly and Method |
| Cabot Safety Intermediate Corporation | CAO-0548/2 | ORD | 11/041383 | 0283882-A1 | Published | 24-Jan-2005 | 29-12-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 29/199931 | | Pending | 20-Feb-2004 | | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0563/ | PRI | 10/866212 | 0274568-A1 | Published | 11-Jun-2004 | 15-Dec-2005 | | High Sound Attenuating Hearing Protection Device |
| No assignment filed | CAO-0568/2 | ORD | 10/999367§ | 0238181-A1 | Published | 29-Nov-2004 | 27-Oct-2005 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0612/ | PRI | 10/965939 | 0081415-A1 | Published | 15-Oct-2004 | 20-Apr-2006 | | Earplug |
| Cabot Safety Intermediate | CAO-0793/ | ORD | 11/335412 | 0162992-A1 | Published | 19-Jan-2006 | 27-Jul-2006 | | Damped Premolded Plug |
| Cabot Safety Intermediate Corporation | CAO-0857/P | CIP | 11/258579 | | Pending | 25-Oct-2005 | | | UV Sensor for Determining Product Life |
| Cabot Safety Intermediate Corporation | CAO-1050/ | ORD | 11/545629 [Prov SN 60/725569] | 0089755-A1 | Pending | 10-Oct-2006 | 26-Apr-2007 | | Tube-Formed Push-In Earplug |
| Cabot Safety Intermediate Corporation | CAO-1051/ | ORD | 11/293642 | 0080018-A1 | Published | 2-Dec-2005 | 12-Apr-2007 | | Low Attenuating Foam Earplug With Integral Handle |
| Cabot Safety Intermediate Corporation | CAO-1053/ | PRI | 11/270053 | | Pending | 09-Nov-2005 | | | Angled Stem for Earplug and Earplug formed Therewith |

‡ Patent to be assigned from inventor to Cabot Safety Intermediate Corporation.
§ Patent to be assigned from inventor to a Cabot Safety Intermediate Corporation.

Confidential - Subject to Protective Order

3M_MDL000294377

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-1054/ | DES | 29/242377 | | Pending | 09-Nov-2005 | | | Angled Stem for Earplug and Earplug Formed Therewith |
| Cabot Safety Intermediate Corporation | CAO-0111-D | DIV | 11/357792 | 0138691-A1 | Published | 17-Feb-2006 | 29-Jun-2006 | | Hearing Protective Device and Method of Making the Same |
| Cabot Safety Intermediate Corporation | CAO-0111-D2 | DIV | 11/357768 | 0141083-A1 | Pubished | 17-Feb-2006 | 29-Jun-2006 | | Hearing Protective Device and Method of Making the Same |
| No assignment filed | CAO-0519/3 | PCT | 11/629329 | | Pending | 12-Dec-2006 | | | Variable Geometry Lens |
| No assignment filed | CAO-0886/2 | ORD | 11/696412 | | Pending | 04-Apr-2007 | | | Traveling Fall Protection System |
| Cabot Safety Intermediate Corporation | CAO-1053/P | CIP | 11/584326 | | Pending | 20-Oct-2006 | | | Earplug with Articulating Stem and Locking Features |
| No assignment filed | CAO-1166/2 | ORD | 11/679959 | | Pending | 28-Feb-2007 | | | Wireless Interface for Audiometers |
| Cabot Safety Intermediate Corporation | CAO-1270 | DES | 29/260739 | | Allowed | 31-May-2006 | | | Safety Eyewear |
| Cabot Safety Intermediate Corporation | CAO-1271 | DES | 29/260326 | | Pending | 23-May-2006 | | | Safety Eyewear |
| Cabot Safety Intermediate Corporation | CAO-1272 | DES | 29/260317 | | Allowed | 23-May-2006 | | | Safety Eyewear |
| No assignment filed | CAO-1306 | PRO | 60/811325 | | Pending | 06-Jun-2006 | | | Safety Eyewear Including a Removable Lens Carrier and a Prescription Insert |
| No assignment filed | CAO-1307 | PRO | 60/811181 | | Pending | 06-Jun-2006 | | | Safety Eyewear |
| No assignment filed | CAO-1308 | PRO | 60/811324 | | Pending | 06-Jun-2006 | | | Safety Eyewear Including a Flexible Cable Attachment |

- 4 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|-------------|------------------|------------------|-------|
| Cabot Safety Intermediate Corporation | CAO-1405 | PRI | 11/704475 | | Pending | 09-Feb-2007 | | | Low Sound Attenuating Hearing Protection Device with Filter Arrangement |
| Cabot Safety Intermediate Corporation | CAO-1054-D | DIV | 29/282264 | | Pending | 16-Jul-2007 | | | Earplug Stem |
| Cabot Safety Intermediate Corporation | CAO-1054-D2 | DIV | 29/282265 | | Pending | 16-Jul-2007 | | | Angled Stem for Earplug and Earplug Formed Therewith |
| Cabot Safety Intermediate Corporation | CAO-1054-D3 | DIV | 29/282267 | | Pending | 16-Jul-2007 | | | Angled Stem for Earplug and Earplug Formed Therewith |
| Cabot Safety Intermediate Corporation | CAO-1306 | ORD | 11/758865 | | Pending | 06-Jun-2007 | | | Safety Eyewear Including a Prescription Insert |
| Cabot Safety Intermediate Corporation | CAO-1307 | ORD | 11/758868 | | Pending | 06-Jun-2007 | | | Safety Eyewear |
| Cabot Safety Intermediate Corporation | CAO-1308 | ORD | 11/758879 | | Pending | 06-Jun-2007 | | | Safety Eyewear Including a Flexible Cable Attachment |
| Cabot Safety Intermediate Corporation | CAO-1483 | DES | 29/281072 | | Pending | 15-Jun-2007 | | | Earplug Stem |
| Peltor AB | | | 11/090782 | | Pending | | | | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | 10/580923 | | Pending | | | | Hearing Protection |
| Peltor AB | | | 29/241 597 | | Pending | | | | Hearing Protector With Communications Equipment Design |
| Peltor AB | | | 29/243 558 | | Pending | | | | Hearing Protectors Design |
| Peltor AB | PW-1149-US | | 11/816229 | | Pending | | | | Protective Glasses |

Confidential - Subject to Protective Order

3M_MDL000294379

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Filing Date | Publication Date | Client Reference | Title |
|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | PW-1164-US | | | | Pending | | | | Ear-Protection Cup |
| Peltor AB | PW-1165-US | | | | Pending | | | | Ear-Protection Cup |
| Peltor AB | PW-1166-US | | | | Pending | | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1167-US | | | | Pending | | | | Hearing Protection |

Confidential - Subject to Protective Order

3M_MDL000294380

AEARO TECHNOLOGIES INC.

Schedule 3.12(e)(1)
Foreign Patents

A list of foreign issued utility and design patents, consisting of forty-seven (47) pages, is attached hereto.

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 90-1217/ | DES | 910420 | | 910420 | Granted | France | 23-Jan-1990 | | 23-Jan-1991 | 23-Jan-2015 | Eyeglass Safety Frame(design) |
| Cabot Safety Intermediate Corporation | 90-1218/ | DES | 914300 | | 914300 | Granted | France | 09-Jul-1991 | | 09-Jul-1991 | 09-Jul-2016 | Eyeglass Safety Frame |
| Cabot Safety Intermediate Corporation | 95-1413/1 | DES | M9408800.4 | | M9408800.4 | Granted | Germany | 12-Nov-1994 | | 10-Apr-1995 | 12-Nov-2019 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 3431/94 | | 124323 | Granted | Australia | 14-Oct-1994 | | 14-Oct-1994 | 14-Oct-2010 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | M9407997.8 | | M9407997.8 | Granted | Germany | 14-Oct-1994 | | 17-Mar-1995 | 14-Oct-2019 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 94O000513 | | 68199 | Granted | Italy | 13-Oct-1994 | | 18-Jan-2000 | 13-Oct-2009 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 941055 | | 8283 | Granted | Mexico | 14-Oct-1994 | | 11-Jun-1996 | 14-Oct-2009 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 94/0763 | | 94/0763 | Granted | South Africa | 15-Apr-1994 | | 12-Jan-1995 | 15-Apr-2009 | Hearing Protective Earplug |

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 133584 | | 133584 | Granted | Spain | 14-Oct-1994 | 01-Aug-1995 | 15-Jun-1995 | 15-Jun-2015 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 94/2034 | | 57875 | Granted | Sweden | 13-Oct-1994 | | 05-Jul-1995 | 13-Oct-2009 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 2042568 | | 2042568 | Granted | United Kingdom | 15-Apr-1994 | | 09-Feb-1995 | 15-Apr-2019 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 53876/86 | | 590540 | Expired | Australia | 21-Feb-1986 | 09-Nov-1989 | 08-Mar-1990 | 21-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 502486 | | 1261278 | Expired | Canada | 21-Feb-1986 | | 26-Sep-1989 | 26-Sep-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 86/02097 | 2579456 | 86/02097 | Expired | France | 17-Feb-1986 | 03-Oct-1986 | 21-Sep-1990 | 17-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | P3605597.2 | | 3605597.2 | Expired | Germany | 21-Feb-1986 | | 20-Nov-1997 | 21-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 19498A/86 | | 1212122 | Expired | Italy | 21-Feb-1986 | | 08-Nov-1989 | 21-Feb-2006 | Earplugs |

Confidential - Subject to Protective Order

3M_MDL000294383

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 37155/86 | 59240 | 2023138 | Expired | Japan | 21-Feb-1986 | 28-Jun-1995 | 26-Feb-1996 | 21-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 86/0897 | | 86/0897 | Expired | South Africa | 06-Feb-1986 | | 24-Sep-1986 | 06-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 8600689-7 | 463847 | 8600689-7 | Expired | Sweden | 17-Feb-1986 | 04-Feb-1991 | 13-Jun-1991 | 17-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1470/1 | ORD | 86/03713 | 2173110 | 2173110 | Expired | United Kingdom | 14-Feb-1986 | 08-Oct-1986 | 12-Apr-1989 | 14-Feb-2006 | Earplugs |
| Cabot Safety Intermediate Corporation | 95-1471/1 | DES | 860754 | 235221 | 2092 | Granted | France | 17-Feb-1986 | 27-Mar-1987 | 01-Apr-1987 | 17-Feb-2011 | Earplug Or Similar Article |
| Cabot Safety Intermediate Corporation | 95-1480/1 | PCT | 42200/89 | | 623686 | Granted | Australia | 14-Jul-1989 | 21-May-199 | 15-Sep-1992 | 14-Jul-2009 | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1480/1 | ORD | 608370 | | 1317232 | Granted | Canada | 15-Aug-1989 | | 04-May-1993 | 04-May-2010 | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1480/1 | PCT | 89910389.9 | 386220 | 68924340.5 | Granted | Germany | 14-Jul-1989 | | 20-Sep-1995 | 14-Jul-2009 | Detectable Earplug |

- 3 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1480/1 | EPC | 89910389.9 | 386220 | 386220 | Granted | Italy | 14-Jul-1989 | 12-Sep-1990 | 20-Sep-1995 | 14-Jul-2009 | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1480/1 | EPC | 89910389.9 | 386220 | 386220 | Granted | Sweden | 14-Jul-1989 | 12-Sep-1990 | 20-Sep-1995 | 14-Jul-2009 | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1480/1 | EPC | 89910389.9 | 386220 | 386220 | Granted | United Kingdom | 14-Jul-1989 | 12-Sep-1190 | 20-Sep-1995 | 14-Jul-2009 | Detectable Earplug |
| Cabot Safety Intermediate Corporation | 95-1500/1 | PCT | 2064907 | | 2064907 | Granted | Canada | 25-Jun-1991 | 26-Dec-1191 | 27-Oct-1998 | 25-Jun-2011 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1500/1 | EPC | 91912823.1 | 487716 | 487716 | Granted | France | 25-Jun-1991 | 03-Jun-1992 | 27-Sep-1995 | 25-Jun-2011 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1500/1 | EPC | 91912823.1 | 487716 | 487716; 69113401 | Granted | Germany | 25-Jun-1991 | 03-Jun-1992 | 27-Sep-1995 | 25-Jun-2011 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1500/1 | EPC | 91912823.1 | 487716 | 487716 | Granted | Italy | 25-Jun-1991 | 03-Jun-1992 | 27-Sep-1995 | 25-Jun-2011 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1500/1 | EPC | 91912823.1 | 487716 | 487716 | Granted | Sweden | 25-Jun-1991 | 03-Jun-1992 | 27-Sep-1995 | 25-Jun-2011 | Hearing Protective Earplug |

Confidential - Subject to Protective Order

3M_MDL000294385

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---------|-----------|-----------|-----------------|-----------------|------------|--------|---------|-------------|------------------|------------|-----------------|-------|
| Cabot Safety Intermediate Corporation | 95-1500/1 | EPC | 91912823.1 | 487716 | 487716 | Granted | United Kingdom | 25-Jun-1991 | 03-Jun-1992 | 27-Sep-1995 | 25-Jun-2011 | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1514/1 | DES | 719/88 | | MR0224/1990 | Granted | Denmark | 10-Jun-1988 | | 08-Feb-1990 | 10-Jun-2013 | Hearing Protector |
| Cabot Safety Intermediate Corporation | 95-1514/1 | DES | 883451 | | 883451 | Granted | France | 27-May-1988 | | 31-Jul-1989 | 27-May-2013 | Hearing Protector |
| Cabot Safety Intermediate Corporation | 95-1514/1 | DES | 1050670 | | 1050670 | Granted | United Kingdom | 11-Dec-1987 | | 29-Nov-1988 | 11-Dec-2012 | Hearing Protector |
| Cabot Safety Intermediate Corporation | 95-1524/1 | PCT | 85299/91 | | 646995 | Granted | Australia | 16-Aug-1991 | 10-Mar-1994 | 16-Aug-1991 | 16-Aug-2007 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | PCT | 2089893 | | 2089893 | Granted | Canada | 16-Aug-1991 | | 22-Dec-1998 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 591197 | Granted | France | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 591197; 69132146 | Granted | Germany | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |

Confidential - Subject to Protective Order

3M_MDL000294386

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 69246 | Granted | Italy | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 591197 | Granted | Netherlands | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 2148153 | 591197 | Granted | Spain | 16-Aug-1991 | 16-Oct-2000 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 591197 | Granted | Sweden | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1524/1 | EPC | 91916262.8 | 591197 | 591197 | Granted | United Kingdom | 16-Aug-1991 | 13-Apr-1994 | 16-Aug-1991 | 16-Aug-2011 | Hearing Protective Earplug Having Alternative Modes of Insertion |
| Cabot Safety Intermediate Corporation | 95-1604/D1 | DIV | 2003231322 | | 2003231322 | Granted | Australia | 14-Aug-1997 | | 12-Sep-2005 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | PI9706653-2 | | PI9706653-2 | Granted | Brazil | 14-Aug-1997 | | 18-Feb-2003 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |

Confidential - Subject to Protective Order

3M_MDL000294387

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 97938357.7 | 862397 | 862397 | Granted | France | 14-Aug-1997 | 09-Sep-1998 | 22-Dec-2004 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 97938357.7 | 862397 | 862397 | Granted | Germany | 14-Aug-1997 | 09-Sep-1998 | 22-Dec-2004 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 97938357.7 | 862397 | 862397 | Granted | Italy | 14-Aug-1997 | 09-Sep-1998 | 22-Dec-2004 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 97938357.7 | 862397 | 862397 | Granted | Sweden | 14-Aug-1997 | 09-Sep-1998 | 22-Dec-2004 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |

Confidential - Subject to Protective Order

3M_MDL000294388

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 97938357.7 | 862397 | 862397 | Granted | United Kingdom | 14-Aug-1997 | 09-Sep-1998 | 22-Dec-2004 | 14-Aug-2017 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1640/1 | ORD | 39739 | | 718846 | Granted | Australia | 12-Aug-1997 | 20-Apr-2000 | 12-Aug-1997 | 12-Aug-2017 | Acoustical Hearing Protective Devices Utilizing Dynamically Stiff Foam and Methods of Producing Same |
| Cabot Safety Intermediate Corporation | 96-1087/1 | DES | 1881 | | 81387 | Granted | Canada | 22-Aug-1996 | | 08-Aug-1997 | 08-Aug-2007 | Protective Eyewear Frame |
| Cabot Safety Intermediate Corporation | 96-1087/1 | DES | 964522 | | 964522 | Granted | France | 02-Aug-1996 | | 10-Jan-1997 | 02-Aug-2021 | Protective Eyewear Frame |
| Cabot Safety Intermediate Corporation | 96-1178/1 | DES | 1882 | | 80283 | Expired | Canada | 22-Aug-1996 | | 21-Mar-1997 | 21-Mar-2007 | Eyewear |
| Cabot Safety Intermediate Corporation | 96-1178/1 | DES | 964777 | | 964777 | Granted | France | 20-Aug-1996 | | 24-Jan-1997 | 20-Aug-2021 | Eyewear |
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | PI9706656-7 | | PI9706656-7 | Granted | Brazil | 13-Aug-1997 | | 16-Sep-2003 | 13-Aug-2017 | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294389

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | 982916 | | 208620 | Abandoned | Mexico | 13-Aug-1997 | | 26-Jun-2002 | 13-Aug-2017 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/1 | DES | 970917 | | 970917 | Granted | France | 17-Feb-1997 | | 11-Jul-1997 | 16-Feb-2022 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/2 | DES | 985231 | | 985231 | Granted | France | 08-Sep-1998 | | 08-Jan-1999 | 08-Sep-2023 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/1 | DES | 2063322 | | 2063322 | Granted | United Kingdom | 17-Feb-1997 | | 14-Jul-1997 | 17-Feb-2022 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/2 | DES | 2063323 | | 2063323 | Granted | United Kingdom | 17-Feb-1997 | | 14-Jul-1997 | 17-Feb-2022 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1814/1 | ORD | 27284 | | 723668 | Granted | Australia | 24-Apr-1997 | 31-Aug-2000 | 24-Apr-1997 | 24-Apr-2017 | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | 96-1814/1 | ORD | 2225823 | | 2225823 | Granted | Canada | 24-Apr-1997 | 06-Nov-1997 | 28-Sep-1999 | 24-Apr-2017 | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 5701290-3 | | DI5701290-3 | Abandoned | Brazil | 27-Aug-1997 | | 21-May-2002 | 27-Aug-2022 | Eyewear With Foam Flange |

Confidential - Subject to Protective Order

3M_MDL000294390

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 2223 | | 89663 | Granted | Canada | 26-Aug-1997 | | 16-Jun-2000 | 16-Jun-2010 | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 975235 | | 975235 | Granted | France | 05-Sep-1997 | | 26-Dec-1997 | 05-Sep-2022 | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | M9708535.9 | | M9708535.9 | Abandoned | Germany | 12-Sep-1997 | | 12-Sep-1997 | 12-Sep-2017 | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 1985 | | 64427 | Abandoned | Sweden | 08-Sep-1997 | | 08-Dec-1999 | 08-Sep-2012 | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1023/1 | DES | 2068793 | | 2068793 | Abandoned | United Kingdom | 05-Sep-1997 | | 15-Apr-1998 | 05-Sep-2022 | Eyewear With Foam Flange |
| Cabot Safety Intermediate Corporation | 97-1025/1 | DES | 975234 | | 975234 | Granted | France | 05-Sep-1997 | | 26-Dec-1997 | 05-Sep-2022 | Eyewear Having a Strap Attachment |
| Cabot Safety Intermediate Corporation | 97-1025/1 | DES | 1986 | | 64428 | Abandoned | Sweden | 08-Sep-1997 | | 08-Dec-1999 | 08-Sep-2012 | Eyewear Having a Strap Attachment |
| Cabot Safety Intermediate Corporation | 97-1025/1 | DES | 2068794 | | 2068794 | Abandoned | United Kingdom | 05-Sep-1997 | | 06-Jul-1998 | 05-Sep-2022 | Eyewear Having a Strap Attachment |

Confidential - Subject to Protective Order

3M_MDL000294391

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 97-1025/2 | DES | 2073391 | | 2073391 | Abandoned | United Kingdom | 20-Mar-1998 | | 06-Jul-1998 | 20-Mar-2023 | Eyewear Having a Strap Attachment |
| Cabot Safety Intermediate Corporation | 97-1300/1 | DES | 3422 | | 134107 | Granted | Australia | 14-Oct-1997 | | 16-Jun-1998 | 14-Oct-2013 | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1300/1 | DES | 5701672-0 | | 5701672-0 | Granted | Brazil | 13-Oct-1997 | | 22-Apr-1998 | 13-Oct-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1300/1 | DES | 975985 | | 496132-6 | Granted | France | 13-Oct-1997 | | 06-May-1998 | 13-Oct-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 1017 | | 136937 | Granted | Australia | 08-Apr-1998 | | 31-Mar-1999 | 08-Apr-2014 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 98 22 69 | | 982269 | Granted | France | 10-Apr-1998 | | 21-Aug-1998 | 10-Apr-2023 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | M9803700.5 | | M9803700.5 | Granted | Germany | 06-Apr-1998 | | 10-Nov-1998 | 06-Apr-2018 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 980 000239 | | 76030 | Granted | Italy | 14-Apr-1998 | | 15-Mar-2002 | 14-Apr-2023 | Eyewear Lens |

- 11 -

P-GEN-01196.185

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 12842 | | 1067121 | Granted | Japan | 06-May-1998 | | 21-Jan-2000 | 21-Jan-2015 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1543/1 | DES | 2073839 | | 2073839 | Granted | United Kingdom | 09-Apr-1998 | | 30-Sep-1998 | 09-Apr-2023 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1723/1 | DES | 1016 | | 136936 | Granted | Australia | 08-Apr-1998 | | 31-Mar-1999 | 08-Apr-2014 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1723/1 | DES | 982268 | | 982268 | Granted | France | 10-Apr-1998 | | 21-Aug-1998 | 10-Apr-2023 | Eyewear Lens |
| Cabot Safety Intermediate Corporation | 97-1733/ | PCT | 1510 | | 224354 | Granted | Mexico | 01-Jun-1999 | | 22-Nov-2004 | 01-Jun-2019 | Ventilated Browbar Frame and Eyewear |
| Cabot Safety Intermediate Corporation | 97-1734/1 | DES | 3631 | | 137848 | Granted | Australia | 16-Nov-1998 | | 26-Jul-1999 | 16-Nov-2014 | Protective Browbar and Eyewear |
| Cabot Safety Intermediate Corporation | 97-1734/ | DIV | 3198 | | 89921 | Granted | Canada | 10-Dec-1998 | | 14-Jul-2000 | 14-Jul-2010 | Protective Browbar and Eyewear |
| Cabot Safety Intermediate Corporation | 97-1734/1 | DES | 98 6513 | 534650-661 | 98 6513 | Granted | France | 05-Nov-1998 | 02-Apr-1999 | 02-Apr-1999 | 05-Nov-2023 | Protective Browbar and Eyewear |
| AEARO | 98-1182/ | PCT | 11243 | | 225734 | Granted | Mexico | 14-Mar-2000 | 07-Nov-2003 | 21-Feb-2005 | 14-Mar-2020 | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294393

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 98-1255/ | ORD | 99107856.9 | 955025 | 955025 | Granted | France | 21-Apr-1999 | 10-Nov-1999 | 07-Jul-2004 | 21-Apr-2019 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1255/ | ORD | 99107856.9 | 955025 | 69918490.8 | Granted | Germany | 21-Apr-1999 | 10-Nov-1999 | 07-Jul-2004 | 21-Apr-2019 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1255/ | ORD | 99107856.9 | 955025 | 955025 | Granted | Italy | 21-Apr-1999 | 10-Nov-1999 | 07-Jul-2004 | 21-Apr-2019 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1255/ | ORD | 99107856.9 | 955025 | 955025 | Granted | Sweden | 21-Apr-1999 | 10-Nov-1999 | 07-Jul-2004 | 21-Apr-2019 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1255/ | ORD | 99107856.9 | 955025 | 955025 | Granted | United Kingdom | 21-Apr-1999 | 10-Nov-1999 | 07-Jul-2004 | 21-Apr-2019 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 28741/00 | | 765478 | Granted | Australia | 07-Feb-2000 | 18-Sep-2003 | 18-Sep-2003 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 507519 | | 507519 | Granted | New Zealand | 07-Feb-2000 | 26-Sep-2003 | 07-Feb-2000 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 2000/5614 | | 2000/5614 | Granted | South Africa | 07-Feb-2000 | | 26-Sep-2001 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |

- 13 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0005/ | DES | 1999-2049 | | 88654 | Granted | Canada | 20-Aug-1999 | | 28-Jan-2000 | 28-Jan-2010 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0006/ | DES | 1999-2026 | | 88654A | Granted | Canada | 18-Aug-1999 | | 28-Jan-2000 | 28-Jan-2010 | Cartridge Filter |
| Aearo* Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Granted | France | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | DE600196046 | Granted | Germany | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Granted | Italy | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Abandoned | Spain | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Granted | Sweden | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Granted | Switzerland | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Aearo Company | CAO-0035/ | PCT | 942969.7 | 1200027 | 1200027 | Granted | United Kingdom | 20-Jun-2000 | 02-May-2002 | 20-Apr-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |

* Means Aearo Company I

- 14 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 939974.2 | 1202694 | 1202694 | Granted | France | 20-Jun-2000 | 08-May-2002 | 08-Oct-2003 | 20-Jun-2020 | Transparent or Translucent Earmuff Cup |
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 939974.2 | 1202694 | 60005846.8 | Granted | Germany | 20-Jun-2000 | 08-May-2002 | 08-Oct-2003 | 20-Jun-2020 | Transparent or Translucent Earmuff Cup |
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 939974.2 | 1202694 | 1202694 | Granted | Sweden | 20-Jun-2000 | 08-May-2002 | 08-Oct-2003 | 20-Jun-2020 | Transparent or Translucent Earmuff Cup |
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 939974.2 | 1202694 | 1202694 | Granted | United Kingdom | 20-Jun-2000 | 08-May-2002 | 08-Oct-2003 | 20-Jun-2020 | Transparent or Translucent Earmuff Cup |
| AEARO | CAO-0055/ | PCT | 24702/01 | | 778687 | Granted | Australia | 25-Oct-2000 | 16-Dec-2004 | 16-Dec-2004 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 988497.4 | 1231876 | 1231876 | Granted | France | 25-Oct-2000 | 21-Aug-2002 | 02-Feb-2005 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 988497.4 | 1231876 | 1231876; 60017936 | Granted | Germany | 25-Oct-2000 | 21-Aug-2002 | 02-Feb-2005 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 2002/3201 | | 2002/3201 | Granted | South Africa | 25-Oct-2000 | | 29-Jan-2003 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 988497.4 | 1231876 | 1231876 | Granted | Sweden | 25-Oct-2000 | 21-Aug-2002 | 02-Feb-2005 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 988497.4 | 1231876 | 1231876 | Granted | United Kingdom | 25-Oct-2000 | 21-Aug-2002 | 02-Feb-2005 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |

Confidential - Subject to Protective Order

3M_MDL000294396

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 1189559 | Granted | France | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 60112203.8 | Granted | Germany | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 1189559 | Granted | Italy | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 2001/9473 | | 2001/9473 | Abandoned | South Africa | 03-Apr-2001 | | 28-Aug-2002 | 03-Apr-2021 | Splash Goggle with Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 1189559 | Abandoned | Spain | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 1189559 | Granted | Sweden | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 1964662.9 | | 1189559 | Granted | United Kingdom | 03-Apr-2001 | | 27-Jul-2005 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | 17.381 | | 17.381 | Abandoned | France | 18-Dec-2001 | | 18-Dec-2001 | 18-Dec-2026 | Filtering Cartridge and Cap |

Confidential - Subject to Protective Order

3M_MDL000294397

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | 40111012.5 | | 40111012.5 | Abandoned | Germany | 17-Dec-2001 | | 04-Mar-2002 | 17-Dec-2021 | Filtering Cartridge and Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | MI20010000850 | | 83439 | Abandoned | Italy | 21-Dec-2001 | | 22-Jan-2004 | 21-Dec-2026 | Filtering Cartridge and Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | 01-4283 | | 75262 | Abandoned | Sweden | 19-Dec-2001 | | 16-Oct-2002 | 19-Dec-2016 | Filtering Cartridge and Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/ | DES | 3000298 | | 3000298 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Filter Cartridge and Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/D1 | DES | 3002786 | | 3002786 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Filter Cartridge |
| Cabot Safety Intermediate Corporation | CAO-0082/D2 | DES | 3002787 | | 3002787 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Filter Cartridge |
| Cabot Safety Intermediate Corporation | CAO-0082/D3 | DES | 3002788 | | 3002788 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Filter Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/D4 | DES | 3002789 | | 3002789 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Cartridge Cap |

Confidential - Subject to Protective Order

3M_MDL000294398

P-GEN-01196.191

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0082/D5 | DES | 3002790 | | 3002790 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Cartridge Cap |
| Cabot Safety Intermediate Corporation | CAO-0082/D6 | DES | 3002791 | | 3002791 | Abandoned | United Kingdom | 21-Dec-2001 | | 19-Mar-2003 | 21-Dec-2026 | Cartridge Cap |
| Cabot Safety Intermediate Corporation | CAO-0090/ | | 200175073 | 783748 | 783748 | Granted | Australia | 31-May-2001 | 01 Dec 2005 | | | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | France | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | Germany | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | Italy | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 516950 | 1494 | 516950 | Granted | New Zealand | 31-May-2001 | 16-Dec-2003 | 29-Mar-2004 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 2002/0690 | | 2002/0690 | Abandoned | South Africa | 31-May-2001 | | 30-Oct-2002 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |

- 18 -

Confidential - Subject to Protective Order

3M_MDL000294399

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | Sweden | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | Switzerland | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 1941745 | | 1212023 | Granted | United Kingdom | 31-May-2001 | | 28-Sep-2005 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 79392-00 | | 34191-00 | Granted | Benelux | 07-May-2002 | | 23-Sep-2002 | 07-May-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | DI6201472.2 | | DI6201472-2 | Granted | Brazil | 29-May-2002 | | 22-Oct-2002 | 29-May-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | DA200200335 | | DR200200284 | Abandoned | Denmark | 24-Apr-2002 | | 15-May-2002 | 24-Apr-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 22626 | | 22626 | Granted | France | 22-Apr-2002 | | 22-Apr-2002 | 22-Apr-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 40203684 | | 40203684 | Granted | Germany | 24-Apr-2002 | | 18-Jun-2002 | 24-Apr-2022 | Respirator |

- 19 -

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0094/1 | DES | D146/02 | | D14195 | Abandoned | Ireland | 19-Apr-2002 | | 19-Apr-2002 | 19-Apr-2017 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/2 | DES | D147/02 | | D14196 | Abandoned | Ireland | 19-Apr-2002 | | 19-Apr-2002 | 19-Apr-2017 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | MI2002O000385 | | 87106 | Granted | Italy | 31-May-2002 | | 08-Feb-2005 | 31-May-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 402573 | | 402573 | Abandoned | New Zealand | 22-Apr-2002 | | 22-Apr-2002 | 22-Apr-2017 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 02-0691 | | 75811 | Granted | Sweden | 24-Apr-2002 | | 19-Mar-2003 | 24-Apr-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | 3003465 | | 3003465 | Granted | United Kingdom | 08-May-2002 | | 25-Jun-2002 | 08-May-2027 | Respirator |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 3657/2001 | | 152336 | Granted | Australia | 13-Nov-2001 | | 17-Jul-2003 | 13-Nov-2017 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | DI6103162-3 | | DI6103162-3 | Granted | Brazil | 14-Nov-2001 | | 23-Apr-2002 | 14-Nov-2026 | Eyewear and Eyewear Lens |

- 20 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---------|-----------|-----------|-----------------|-----------------|------------|--------|---------|-------------|------------------|------------|-----------------|-------|
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 40110201.7 | | 40110201.7 | Granted | Germany | 20-Nov-2001 | | 01-Mar-2002 | 20-Nov-2021 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | MI20010000777 | | 84758 | Granted | Italy | 21-Nov-2001 | | 06-Sep-2004 | 21-Nov-2026 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 2001/001332 | | 17405 | Granted | Mexico | 23-Nov-2001 | | 06-Jan-2005 | 23-Nov-2016 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 2106440 | | 2106440 | Granted | United Kingdom | 23-Nov-2001 | | 23-Nov-2001 | 23-Nov-2026 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0140/1 | DIV | 2106441 | | 2106441 | Granted | United Kingdom | 23-Nov-2001 | | 23-Nov-2001 | 23-Nov-2026 | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0162/ | PCT | 2003/09579 | | 2003/9579 | Granted | South Africa | 22-Jul-2002 | | 27-Oct-2004 | 22-Jul-2022 | Respirator Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | DI6201550-8 | | DI6201550-8 | Granted | Brazil | 03-Jun-2002 | | 29-Oct-2002 | 03-Jun-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 99256 | | 99256 | Granted | Canada | 25-Apr-2002 | | 29-Apr-2003 | 29-Apr-2013 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294402

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | DA200200336 | | DR200200285 | Abandoned | Denmark | 24-Apr-2002 | | 15-May-2002 | 24-Apr-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | M20020620 | | 23434 | Granted | Finland | 15-Oct-2002 | 15-Aug-2003 | 31-Oct-2003 | 15-Oct-2017 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 22651 | | 22651 | Abandoned | France | 23-Apr-2002 | | 23-Apr-2002 | 23-Apr-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 40203683.2 | | 40203683.2 | Abandoned | Germany | 24-Apr-2002 | | 18-Jun-2002 | 24-Apr-2022 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/1 | DES | D148/02 | | D14197 | Abandoned | Ireland | 19-Apr-2002 | | 22-Apr-2002 | 19-Apr-2017 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/2 | DES | D149/02 | | D14198 | Abandoned | Ireland | 19-Apr-2002 | | 22-Apr-2002 | 19-Apr-2017 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | MI2002O000292 | | 86598 | Abandoned | Italy | 24-Apr-2002 | | 13-Dec-2004 | 24-Apr-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 402581 | | 402581 | Abandoned | New Zealand | 26-Apr-2002 | | 26-Apr-2002 | 26-Apr-2017 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294403

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 02-0688 | | 75701 | Abandoned | Sweden | 24-Apr-2002 | | 19-Feb-2003 | 24-Apr-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 3003152 | | 3003152 | Abandoned | United Kingdom | 23-Apr-2002 | | 23-Apr-2002 | 23-Apr-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 200302673 | | 156902 | Granted | Australia | 05-Aug-2003 | | 16-Nov-2004 | 05-Aug-2019 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 68796 | | 68796 | Granted | European Community | 16-Aug-2003 | | 25-Nov-2003 | 16-Aug-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 20030432 | | 77722 | Granted | Norway | 07-Aug-2003 | 01-Mar-2004 | 11-Feb-2004 | 07-Aug-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 3870 | | 5848 | Granted | Poland | 07-Aug-2003 | | 23-Nov-2004 | 07-Aug-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 20030988 | | F2003/0988 | Granted | South Africa | 07-Aug-2003 | 28-Apr-2004 | 16-Jul-2004 | 04-Feb-2013 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 129951 | | 129951 | Granted | Switzerland | 06-Aug-2003 | | 06-Aug-2003 | 06-Aug-2028 | Earplug |

- 23 -

Confidential - Subject to Protective Order

3M_MDL000294404

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | 4911 | | 2004/4911 | Granted | South Africa | 27-Jan-2003 | | 30-Mar-2005 | 27-Jan-2023 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0224/ | ORD | 2243040 | | 2243040 | Granted | Canada | 13-Jul-1998 | 13-Jan-2000 | 21-Jan-2003 | 13-Jul-2018 | Protective Eyewear for Industrial Use |
| Cabot Safety Intermediate Corporation | CAO-0226/ | PCT | 20036469 | | 20036469 | Granted | South Africa | 25-Feb-2002 | | 29-Sep-2004 | 25-Feb-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | ORD | 2003/6471 | | 2003/6471 | Granted | South Africa | 25-Feb-2002 | | 28-Apr-2004 | 25-Feb-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | DI6202765-4 | | DI6202765-4 | Granted | Brazil | 12-Sep-2002 | | 03-Jun-2003 | 12-Sep-2027 | Semi-Aural Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | 25405 | | 25405 | Abandoned | France | 11-Sep-2002 | | 11-Sep-2002 | 11-Sep-2027 | Semi-Aural Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | 40207760.1 | | 40207760.1 | Abandoned | Germany | 12-Sep-2002 | | 27-Nov-2002 | 12-Sep-2022 | Earplugs |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | MI2002O000613 | | 87122 | Abandoned | Italy | 13-Sep-2002 | | 08-Feb-2005 | 13-Sep-2027 | Semi-Aural Hearing Protector |

Confidential - Subject to Protective Order

3M_MDL000294405

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | 02-1331 | | 76091 | Abandoned | Sweden | 10-Sep-2002 | | 11-Jun-2003 | 10-Sep-2027 | Semi-Aural Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0248/ | DES | 3006967 | | 3006967 | Abandoned | United Kingdom | 11-Sep-2002 | | 11-Sep-2002 | 11-Sep-2027 | Semi-Aural Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0262/ | DES | 25407 | | 25407 | Granted | France | 11-Sep-2002 | | 14-Feb-2003 | 11-Sep-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0262/ | DES | 02-1330 | | 76090 | Granted | Sweden | 10-Sep-2002 | | 11-Jun-2003 | 10-Sep-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0262/ | DES | 3006966 | | 3006966 | Granted | United Kingdom | 11-Sep-2002 | | 02-Dec-2002 | 11-Sep-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | DI6203092-2 | | DI6203092-2 | Granted | Brazil | 11-Oct-2002 | | 01-Apr-2003 | 11-Oct-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | 26099 | | 26099 | Granted | France | 09-Oct-2002 | | 09-Oct-2002 | 09-Oct-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | 40208508.6 | | 40208508.6 | Granted | Germany | 09-Oct-2002 | | 17-Dec-2002 | 09-Oct-2022 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294406

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | MI2002O000667 | | 87123 | Granted | Italy | 10-Oct-2002 | | 08-Feb-2005 | 10-Oct-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | 02-1481 | | 76295 | Granted | Sweden | 10-Oct-2002 | | 27-Aug-2003 | 10-Oct-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0265/ | DES | 3007660 | | 3007660 | Granted | United Kingdom | 10-Oct-2002 | | 10-Oct-2002 | 10-Oct-2027 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | 25007 | | 25007 | Granted | France | 20-Aug-2002 | | 20-Aug-2002 | 20-Aug-2027 | Eyewear, Eyewear Brow Frame, Eyewear Lens and Nosepiece |
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | 02-1225 | | 76141 | Granted | Sweden | 20-Aug-2002 | | 25-Jun-2003 | 20-Aug-2027 | Eyewear, Eyewear Brow Frame, Eyewear Lens and Nosepiece |
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | 3006495 | | 3006495 | Granted | United Kingdom | 27-Aug-2002 | | 13-Jan-2004 | 27-Aug-2027 | Eyewear, Eyewear Brow Frame, Eyewear Lens and Nosepiece |
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | 25005 | | 25005 | Granted | France | 20-Aug-2002 | | 20-Aug-2002 | 20-Aug-2027 | Eyewear and Eyewear Temple |

Confidential - Subject to Protective Order

3M_MDL000294407

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | MI2002O000560 | | 86897 | Granted | Italy | 21-Aug-2002 | | 26-Jan-2005 | 21-Aug-2027 | Eyewear and Eyewear Temple |
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | 02-1224 | | 76551 | Granted | Sweden | 20-Aug-2002 | | 08-Oct-2003 | 20-Aug-2027 | Eyewear and Eyewear Temple |
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | 3006496 | | 3006496 | Granted | United Kingdom | 27-Aug-2002 | | 13-Jan-2004 | 27-Aug-2027 | Eyewear and Eyewear Temple |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 784/2003 | | 155835 | Granted | Australia | 06-Mar-2003 | | 13-Jul-2004 | 06-Mar-2019 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/D | DIV | 2013/2004 | | 156985 | Granted | Australia | 27-May-2004 | | 02-Dec-2004 | 27-May-2020 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 80392-01/02 | | 35366-01/02 | Granted | Benelux | 28-Feb-2003 | | 22-Dec-2003 | 28-Feb-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | DI6300707-0 | | DI6300707-0 | Granted | Brazil | 28-Feb-2003 | | 25-May-2004 | 28-Feb-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 102297 | | 102297 | Granted | Canada | 04-Mar-2003 | | 10-Dec-2004 | 10-Dec-2014 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294408

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0383/D1 | DES | 106577 | | 106577 | Granted | Canada | 04-Mar-2003 | | 10-Dec-2004 | 10-Dec-2014 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | DA200300160 | | DR200300150 | Granted | Denmark | 03-Mar-2003 | | 06-Mar-2003 | 03-Mar-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | M20030079 | | 23513 | Granted | Finland | 28-Feb-2003 | 15-Oct-2003 | 31-Dec-2003 | 28-Feb-2018 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 31.352 | | 31.352 | Granted | France | 04-Mar-2003 | | 18-Jul-2003 | 04-Mar-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 40301948.6 | | 40301948.6 | Granted | Germany | 04-Mar-2003 | | 13-May-2003 | 04-Mar-2023 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 20030137 | | 78.237 | Granted | Norway | 05-Mar-2003 | | 23-Sep-2004 | 05-Mar-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/1 | DES | 2003/00209 | | 2003/00209 | Granted | South Africa | 06-Mar-2003 | 26-Nov-2003 | 31-Mar-2004 | 06-Mar-2018 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/2 | DES | 2003/00210 | | 2003/00210 | Granted | South Africa | 06-Mar-2003 | 26-Nov-2003 | 31-Mar-2004 | 06-Mar-2013 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294409

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 156401 | | 156401 | Granted | Spain | 06-Mar-2003 | 16-Nov-2003 | 16-Feb-2004 | 16-Feb-2014 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 03-0301 | | 76799 | Granted | Sweden | 03-Mar-2003 | | 19-Nov-2003 | 03-Mar-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | D3011406 | | D3011406 | Granted | United Kingdom | 06-Mar-2003 | | 24-Jun-2003 | 06-Mar-2028 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 105094 | | 105094 | Granted | Canada | 27-Nov-2003 | | 21-Dec-2004 | 21-Dec-2014 | Tab Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 117510 | | 117510 | Granted | European Community | 01-Dec-2003 | | 23-Mar-2004 | 01-Dec-2028 | Tab Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 20030678 | | 78353 | Granted | Norway | 02-Dec-2003 | 06-Dec-2004 | 18-Nov-2004 | 02-Dec-2028 | Tab Earplug |
| Cabot Safety Intermediate Corporation | CAO-0452/ | DES | 105093 | | 105093 | Granted | Canada | 27-Nov-2003 | | 21-Dec-2004 | 21-Dec-2014 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0452/ | DES | 117510 | | 117510 | Granted | European Community | 01-Dec-2003 | | 23-Mar-2004 | 01-Dec-2028 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294410

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 367/2004 | | 156941 | Granted | Australia | 01-Aug-2003 | | 29-Nov-2004 | 01-Aug-2019 | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | DI64002462 | | DI64002462 | Granted | Brazil | 28-Jan-2004 | | 27-Jul-2004 | 28-Jan-2029 | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 105764 | | 105764 | Granted | Canada | 29-Jan-2004 | | 10-May-2005 | 10-May-2015 | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 136171 | | 136171 | Granted | European Community | 23-Jan-2004 | | 01-Jun-2004 | 23-Jan-2029 | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 2004/0098 | | A2004/0098 | Granted | South Africa | 29-Jan-2004 | 29-Sep-2004 | 04-Nov-2004 | 01-Aug-2018 | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 14121 | | 302168 | Granted | Australia | 19-Aug-2004 | | 29-Jun-2005 | 19-Aug-2014 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/D1 | DES | 14122 | | 302169 | Granted | Australia | 19-Aug-2004 | | 29-Jun-2005 | 19-Aug-2014 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | DI6403040-7 | | DI6403040-7 | Granted | Brazil | 20-Aug-2004 | | 01-Mar-2005 | 20-Aug-2029 | Flanged Earplug |

Confidential - Subject to Protective Order

3M_MDL000294411

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 222807-001 | | 222807-001 | Granted | European Community | 16-Aug-2004 | | 16-Nov-2004 | 16-Aug-2029 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/D1 | DES | 222807-002 | | 222807-002 | Granted | European Community | 16-Aug-2004 | | 16-Nov-2004 | 16-Aug-2029 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 456 | | 78844 | Granted | Norway | 19-Aug-2004 | | 05-Sep-2005 | 19-Aug-2029 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 15645 | | 302176 | Granted | Australia | 06-Dec-2004 | | 29-Jun-2005 | 06-Dec-2014 | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | DI6404559-5 | | DI6404559-5 | Granted | Brazil | 10-Dec-2004 | | 12-Apr-2005 | 10-Dec-2029 | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 273552 | | 273552 | Granted | European Community | 09-Dec-2004 | | 08-Mar-2005 | 09-Dec-2024 | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | DI6404547-1 | | DI6404547-1 | Granted | Brazil | 04-Oct-2004 | | 01-Mar-2005 | 04-Oct-2029 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 30099790 | | ZL300997900 | Granted | China (Peoples Republic) | 15-Oct-2004 | | 06-Jul-2005 | 15-Oct-2014 | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294412

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0579/D1 | DES | 30099791.5 | | ZL300997915 | Granted | China (Peoples Republic) | 15-Oct-2004 | | 27-Jul-2005 | 15-Oct-2014 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 252424 | | 000252424-1 | Granted | European Community | 13-Oct-2004 | | 08-Feb-2005 | 13-Oct-2025 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/D1 | DES | 252424 | | 000252424-2 | Granted | European Community | 13-Oct-2004 | | 08-Feb-2005 | 13-Oct-2025 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/D2 | DES | 252424 | | 000252424-3 | Granted | European Community | 13-Oct-2004 | | 08-Feb-2005 | 13-Oct-2025 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1267/1 | DES | 5701789-1 | | 5701789-1 | Granted | Brazil | 13-Feb-1997 | | 04-Aug-1998 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 2234163 | | 2234163 | Granted | Canada | 12-Aug-1997 | 19-Feb-1998 | 10-Apr-2007 | 14-Aug-2017 | Hearing Protective Device Comprising of Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | 97937218.2 | 862399 | 862399 | Granted | France | 13-Aug-1997 | 09-Sep-1998 | 22-Feb-2006 | 13-Aug-2017 | Hearing Protection Device |
| Cabot Safety Intermediate | 96-1266/1 | ORD | 97937218.2 | 862399 | 69735300.1 | Granted | Germany | 13-Aug-1997 | 09-Sep-1998 | 22-Feb-2006 | 13-Aug-2017 | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294413

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corporation | | | | | | | | | | | | |
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | 97937218.2 | 862399 | 862399 | Granted | Sweden | 13-Aug-1997 | 09-Sep-1998 | 22-Feb-2006 | 13-Aug-2017 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | 97937218.2 | 862399 | 862399 | Granted | United Kingdom | 13-Aug-1997 | 09-Sep-1998 | 22-Feb-2006 | 13-Aug-2017 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | 1079777 | Granted | France | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | DE60025340 | Granted | Germany | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | 1079777 | Granted | Italy | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | 1079777 | Granted | Netherlands | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | 1079777 | Granted | Sweden | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | 1079777 | Granted | United Kingdom | 14-Mar-2000 | 07-Mar-2001 | 04-Jan-2006 | 14-Mar-2020 | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 907206.7 | 1071495 | 1071495 | Granted | France | 07-Feb-2000 | 31-Jan-2001 | 07-Dec-2005 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 907206.7 | 1071495 | 60024533 | Granted | Germany | 07-Feb-2000 | 31-Jan-2001 | 07-Dec-2005 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 907206.7 | 1071495 | 1071495 | Granted | United Kingdom | 07-Feb-2000 | 31-Jan-2001 | 07-Dec-2005 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |

Confidential - Subject to Protective Order

3M_MDL000294414

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Corporation | | | | | | | | | | | | |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 138984 | | 138984 | Granted | Israel | 07-Feb-2000 | | 06-Jan-1007 | 07-Feb-2020 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 2000-7011765 | 71170 | 10-0626251 | Granted | Korea, Republic of | 23-Oct-2000 | 28-Jul-2001 | 13-Sep-2006 | 23-Oct-2020 | Respirator Headpiece and Release Mechanism |
| AEARO | CAO-0035/ | PCT | 2002/000688 | | 231114 | Granted | Mexico | 20-Jun-2000 | 28-Nov-2003 | 06-Oct-2005 | 20-Jun-2020 | Glow-in-the-Dark Hearing Protective Devices |
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 2002/000689 | | 231115 | Granted | Mexico | 20-Jun-2000 | 28-Nov-2003 | 06-Oct-2005 | 20-Jun-2000 | Transparent or Translucent Earmuff Cup |
| AEARO | CAO-0055/ | PCT | 2002/004476 | | 235084 | Granted | Mexico | 25-Oct-2000 | | 20-Mar-2006 | 25-Oct-2020 | Multi-Color Variably Attenuating Earplug |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 87286/01 | | 784002 | Granted | Australia | 03-Apr-2001 | | 27-Apr-2006 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 2001/012472 | | 238329 | Granted | Mexico | 03-Apr-2001 | | 03-Jul-2006 | 03-Apr-2021 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0067/ | PCT | 2002/002030 | | 237560 | Granted | Mexico | 26-Jun-2001 | 04-Apr-2003 | 02-Jun-2006 | 26-Jun-2021 | Earplug Dispenser |
| AEARO | CAO-0068/ | PCT | 1902074.2 | 1294331 | 60118557.9 | Granted | Germany | 16-Jan-2001 | 26-Mar-2003 | 05-Apr-2006 | 16-Jan-2021 | Ultrafit Plug |

Confidential - Subject to Protective Order

3M_MDL000294415

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AEARO | CAO-0068/ | PCT | 1902074.2 | 1294331 | 1294331 | Granted | Italy | 16-Jan-2001 | 26-Mar-2003 | 05-Apr-2006 | 16-Jan-2021 | Ultrafit Plug |
| AEARO | CAO-0068/ | PCT | 1902074.2 | 1294331 | 1294331 | Granted | United Kingdom | 16-Jan-2001 | 26-Mar-2003 | 05-Apr-2006 | 16-Jan-2021 | Ultrafit Plug |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 75073/01 | 783748 | 783748 | Granted | Australia | 31-May-2001 | 01-Dec-2005 | 16-Mar-2006 | 31-May-2021 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 103871 | | 103870 | Granted | Canada | 04-Aug-2003 | | 29-Mar-2006 | 29-Mar-2016 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2714997 | 1399775 | 1399775 | Granted | France | 25-Feb-2002 | 24-Mar-2004 | 30-Nov-2005 | 25-Feb-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2714997 | 1399775 | 60207718.4 | Granted | Germany | 25-Feb-2002 | 24-Mar-2004 | 30-Nov-2005 | 25-Feb-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2714997 | 1399775 | 1399775 | Granted | Italy | 25-Feb-2002 | 24-Mar-2004 | 30-Nov-2005 | 25-Feb-2022 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 2003/000213 | | 18824 | Granted | Mexico | 06-Mar-2003 | | 14-Sep-2005 | 06-Mar02018 | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 2003/001467 | | 18015 | Granted | Mexico | 05-Dec-2003 | | 31-Mar-2005 | | Tab Earplug |
| Cabot Safety | CAO-0452/ | DES | 2003/001468 | | 18014 | Granted | Mexico | 05-Dec-2003 | | | 31-May-2005 | Earplug |

Confidential - Subject to Protective Order

3M_MDL000294416

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Intermediate Corporation | | | | | | | | | | | | |
| Cabot Safety Intermediate Corporation | CAO-0482/D1 | DES | 14919/2004 | | 304479 | Granted | Australia | 18-Oct-2004 | | 07-Dec-2005 | | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 107951 | | 107951 | Granted | Canada | 20-Aug-2004 | | 15-Mar-2006 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 30068072.7 | | ZL200430068072.7 | Granted | China (Peoples Republic) | 16-Aug-2004 | | 03-Jan-2007 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/D | DES | 30068070.8 | | ZL200430068070.8 | Granted | China (Peoples Republic) | 16-Aug-2004 | | 25-Oct-2006 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | A2004/1095 | | A2004/1095 | Granted | South Africa | 19-Aug-2004 | 26-Apr-2005 | 31-Oct-2005 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 109274 | | 109274 | Granted | Canada | 02-Dec-2004 | | 24-Jan-2006 | | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 1763 | | A2004/1763 | Granted | South Africa | 15-Dec-2004 | 26-Oct-2005 | 28-Nov-2005 | | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 14407/2004 | | 304874 | Granted | Australia | 14-Sep-2004 | | 09-Jan-2006 | | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294417

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0579/D | DIV | 12162/2005 | | 304875 | Granted | Australia | 07-Apr-2005 | | 09-Jan-2006 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/D2 | DIV | 12163/2005 | | 304876 | Granted | Australia | 07-Apr-2005 | | 09-Jan-2006 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 607 | | 79.423 | Granted | Norway | 22-Oct-2004 | | 10-Apr-2006 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 502753 | | 58242 | Granted | Russian Federation | 22-Oct-2004 | | 16-Nov-2005 | | Hearing Protection Device |
| Peltor AB | | | | | 9702947-4 | Granted | Sweden | | | | 15-Aug-2017 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 1 002 444 | Granted | Germany | | | | 12-Aug-2018 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 1 002 444 | Granted | France | | | | 12-Aug-2018 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 1 002 444 | Granted | Great Britain | | | | 12-Aug-2018 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 1 002 444 | Granted | Italy | | | | 12-Aug-2018 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 314560 | Granted | Norway | | | | 12-Aug-2018 | An Arrangement in Acoustic Head Sets |
| Peltor AB | | | | | 9003501-5 | Granted | Sweden | | | | 2-Nov-2010 | Ear-protection Cup For Ear Muffs or Headphones |

Confidential - Subject to Protective Order

3M_MDL000294418

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 645360 | Granted | Australia | | | | 31-Oct-2007 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 2 054 832 | Granted | Canada | | | | 1-Nov-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 484 306 | Granted | Switzerland | | | | 24-Oct-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 484 306 | Granted | Germany | | | | 24-Oct-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 484 306 | Granted | Spain | | | | 24-Oct-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 484 306 | Granted | France | | | | 24-Oct-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 484 306 | Granted | Great Britain | | | | 24-Oct-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 3266629 | Granted | Japan | | | | 1-Nov-2011 | Ear-protection Cup For Ear Muffs or Headphones |
| Peltor AB | | | | | 9102624-5 | Granted | Sweden | | | | 11-Sept-2011 | A Positionable Visor Arrangement |
| Peltor AB | | | | | 648187 | Granted | Australia | | | | 14-July-2008 | A Positionable Visor Arrangement |
| Peltor AB | | | | | 2 073 739 | Granted | Canada | | | | 13-July-2012 | A Positionable Visor Arrangement |
| Peltor AB | | | | | 432 483 | Granted | Germany | | | | 2-July-2012 | A Positionable Visor Arrangement |

Confidential - Subject to Protective Order

3M_MDL000294419

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 432 483 | Granted | France | | | | 2-July-2012 | A Positionable Visor Arrangement |
| Peltor AB | | | | | 432 483 | Granted | Great Britain | | | | 2-July-2012 | A Positionable Visor Arrangement |
| Peltor AB | | | | | 572 760 | Granted | Germany | | | | 5-Jun-2012 | Visor For Safety Helmets |
| Peltor AB | | | | | 572 760 | Granted | France | | | | 5-Jun-2012 | Visor For Safety Helmets |
| Peltor AB | | | | | 572 760 | Granted | Great Britain | | | | 5-Jun-2012 | Visor For Safety Helmets |
| Peltor AB | | | | | 572 760 | Granted | Italy | | | | 5-Jun-2012 | Visor For Safety Helmets |
| Peltor AB | | | | | 572 760 | Granted | Sweden | | | | 5-Jun-2012 | Visor For Safety Helmets |
| Peltor AB | | | | | 9203209-3 | Granted | Sweden | | | | 29-Oct-2012 | Ear Defender Cup Support Means Including a Snapp-In Attachement |
| Peltor AB | | | | | 43 34 523.9 | Granted | Germany | | | | 9-Oct-2013 | Ear Defender Cup Support Means Including a Snapp-In Attachement |
| Peltor AB | | | | | 2 271 924 | Granted | Great Britain | | | | 25-Oct-2013 | Ear Defender Cup Support Means Including a Snapp-In Attachement |
| Peltor AB | | | | | 1 291 595 | Granted | Canada | | | | 5-Nov-2007 | Protective Face Visor of a Filament Mesh |
| Peltor AB | | | | | 9901732-9 | Granted | Sweden | | | | 11-May-2019 | A Safety Visor |
| Peltor AB | | | | | 1 182 943 | Granted | Germany | | | | 5-May-2020 | A Safety Visor |

Confidential - Subject to Protective Order

3M_MDL000294420

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 1 182 943 | Granted | Finland | | | | 5-May-2020 | A Safety Visor |
| Peltor AB | | | | | 1 182 943 | Granted | France | | | | 5-May-2020 | A Safety Visor |
| Peltor AB | | | | | 9902643-7 | Granted | Sweden | | | | 8-July-2019 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 763267 | Granted | Australia | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | Belgium | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | Germany | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | Spain | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | France | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | Great Britain | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |

Confidential - Subject to Protective Order

3M_MDL000294421

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 1 200 028 | Granted | Italy | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 1 200 028 | Granted | New Zealand | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 2002/0086 | Granted | South Africa | | | | 15-June-2020 | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | | | 0303189-5 | Granted | Sweden | | | | 6-Nov-2023 | Hearing Protection |
| Peltor AB | | | | | 0302216-7 | Granted | Sweden | | | | 13-Aug-2023 | Indicating Device |
| Peltor AB | PW-1149-SE | | | | 050354-6 | Granted | Sweden | | | | 5-Feb-2025 | Protective Glasses |
| Peltor AB | PW-1164-SE | | | | 0500981-6 | Granted | Sweden | | | | 29-Apr-2025 | Ear-protection Cup |
| Peltor AB | PW-1165-SE | | | | 0500928-4 | Granted | Sweden | | | | 29-Apr-2025 | Ear-protection Cup |
| Peltor AB | PW-1166-SE | | | | 0500983-2 | Granted | Sweden | | | | 29-Apr-2025 | Ear-protection Cup with Microphone Arrangement |
| Peltor AB | | | | | 63 210 | Granted | Sweden | | | | 15-Aug-2022 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 135738 | Granted | Australia | | | | 13-Feb-2014 | Headset Radio & Control Panel Design |

Confidential - Subject to Protective Order

3M_MDL000294422

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 135739 | Granted | Australia | | | | 13-Feb-2014 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | DI 5800194-8 | Granted | Brazil | | | | 13-Feb-2023 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | DI 5800193-0 | Granted | Brazil | | | | 13-Feb-2023 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 85350 | Granted | Canada | | | | 11-Dec-2008 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 85351 | Granted | Canada | | | | 11-Dec-2008 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | M9801552.4 | Granted | Germany | | | | 11-Feb-2008 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 98 0889 | Granted | France | | | | 13-Feb-2023 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 2072489 | Granted | Great Britain | | | | 15-Aug-2022 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 74656 | Granted | Norway | | | | 10-Feb-08 | Headset Radio & Control Panel Design |
| Peltor AB | | | | | 53 536 | Granted | Sweden | | | | 5-Jun-2017 | Helmet Visor Design |
| Peltor AB | | | | | 118466 | Granted | Australia | | | | 24-Nov-2008 | Helmet Visor Design |
| Peltor AB | | | | | M 92 08 520.2 | Granted | Germany | | | | 18-Nov-2012 | Helmet Visor Design |

- 42 -

Confidential - Subject to Protective Order

3M_MDL000294423

P-GEN-01196.216

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---------|-----------|-----------|-----------------|-----------------|-----------|--------|---------|-------------|------------------|-----------|-----------------|-------|
| Peltor AB | | | | | 2027570 | Granted | Great Britain | | | | 4-Dec-2017 | Helmet Visor Design |
| Peltor AB | | | | | 2027571 | Granted | Great Britain | | | | 4-Dec-2017 | Helmet Visor Design |
| Peltor AB | | | | | 71241 | Granted | Norway | | | | 18-Nov-2007 | Helmet Visor Design |
| Peltor AB | | | | | 16174 | Granted | Finland | | | | 4-Dec-2007 | Helmet Visor Design |
| Peltor AB | | | | | 862942 | Granted | France | | | | 3-Jun-2011 | Hearing Protector Design |
| Peltor AB | | | | | 54 204 | Granted | Sweden | | | | 29-Oct-2017 | Fastener For Ear Cup Design |
| Peltor AB | | | | | 57 205 | Granted | Sweden | | | | 12-Jan-2019 | Protective Helmet Design |
| Peltor AB | | | | | M9404939.4 | Granted | Germany | | | | 24-Jun-2014 | Protective Helmet Design |
| Peltor AB | | | | | 2039877 | Granted | Great Britain | | | | 12-Jan-2019 | Protective Helmet Design |
| Peltor AB | | | | | 72220 | Granted | Norway | | | | 1-July 2019 | Protective Helmet Design |
| Peltor AB | | | | | 57 160 | Granted | Sweden | | | | 10-May-2019 | Hearing Protector Design |
| Peltor AB | | | | | 64 649 | Granted | Sweden | | | | 2-Jul-2008 | Ear Protection Design |
| Peltor AB | | | | | 498 12 507.6 | Granted | Germany | | | | 23-Dec-2018 | Ear Protection Design |
| Peltor AB | | | | | 2079881 | Granted | Great Britain | | | | 2-Jul-2023 | Ear Protection Design |
| Peltor AB | | | | | 64 748 | Granted | Sweden | | | | 2-Jul-2023 | Microphone Boom Design |
| Peltor AB | | | | | 498 12 507.6 | Granted | Germany | | | | 23-Dec-2018 | Microphone Boom Design |

Confidential - Subject to Protective Order

3M_MDL000294424

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 2079880 | Granted | Great Britain | | | | 2-Jul-2023 | Microphone Boom Design |
| Peltor AB | | | | | 68 841 | Granted | Sweden | | | | 12-Feb-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 148579 | Granted | Australia | | | | 24-Jul-2017 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | DI 6101718-3 | Granted | Brazil | | | | 9-Aug-2026 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 97283 | Granted | Canada | | | | 26-Nov-2012 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 128 109 | Granted | Switzerland | | | | 11-Jul-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 401 06 176.0 | Granted | Germany | | | | 5-Jul-2021 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | MR 2002 00026 | Granted | Denmark | | | | 10-Aug-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 151972 | Granted | Spain | | | | 8-Oct-2022 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 22538 | Granted | Finland | | | | 7-Aug-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 01 4660 | Granted | France | | | | 6-Aug-2016 | Ear Cap For Hearing Protection (Model 32) Design |

Confidential - Subject to Protective Order

3M_MDL000294425

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 2103863 | Granted | Great Britain | | | | 12-Feb-2023 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 76912 | Granted | Norway | | | | 9-Aug-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | A2001-0805 | Granted | South Africa | | | | 12-Feb-2016 | Ear Cap For Hearing Protection (Model 32) Design |
| Peltor AB | | | | | 68 840 | Granted | Sweden | | | | 12-Feb-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 147597 | Granted | Australia | | | | 24-Jul-2017 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | DI 6101718-3 | Granted | Brazil | | | | 9-Aug-2026 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 97283 | Granted | Canada | | | | 26-Nov-2012 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 128 109 | Granted | Switzerland | | | | 11-Jul-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 401 06 176.0 | Granted | Germany | | | | 5-Jul-2021 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | MR 2002 00025 | Granted | Denmark | | | | 10-Aug-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 151972 | Granted | Spain | | | | 8-Oct-2022 | Ear Cap For Hearing Protection (Model 52) Design |

- 45 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 22537 | Granted | Finland | | | | 7-Aug-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 01 4660 | Granted | France | | | | 6-Aug-2026 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 2103862 | Granted | Great Britain | | | | 12-Feb-2026 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 1192555 | Granted | Japan | | | | 24-Oct-2018 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 76911 | Granted | Norway | | | | 9-Aug-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | A2001/0806 | Granted | South Africa | | | | 12-Feb-2016 | Ear Cap For Hearing Protection (Model 52) Design |
| Peltor AB | | | | | 156618 | Granted | Australia | | | | 12-Feb-2020 | Hearing Protector Design |
| Peltor AB | | | | | 301091 | Granted | Australia | | | | 12-Feb-2014 | Hearing Protector Design |
| Peltor AB | | | | | 71675 | Granted | Europe | | | | 15-Aug-2028 | Hearing Protector Design |
| Peltor AB | | | | | 306858 | Granted | Australia | | | | 26-Oct-2015 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 306859 | Granted | Australia | | | | 26-Oct-2015 | Hearing Protector With Communications Equipment |

Confidential - Subject to Protective Order

3M_MDL000294427

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Patent No. | Status | Country | Filing Date | Publication Date | Issue Date | Expiration Date | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Peltor AB | | | | | 206860 | Granted | Australia | | | | 26-Oct-2015 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | DI 6503923-8 | Granted | Brazil | | | | 26-Oct-2030 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 113123 | Granted | Canada | | | | 12-Mar-2017 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 000332713 | Granted | Europe | | | | 29-Apr-2030 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 132 272 | Granted | Switzerland | | | | 24-Oct-1020 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 79616 | Granted | Norway | | | | 21-Oct-2030 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 61310 | Granted | Russian Federation | | | | 28-Oct-2020 | Hearing Protector With Communications Equipment |
| Peltor AB | | | | | 307341 | Granted | Australia | | | | 25-Nov-2015 | Hearing Protectors Design |
| Peltor AB | | | | | 000346465 | Granted | Europe | | | | 27-May-2030 | Hearing Protectors Design |

- 47 -

Confidential - Subject to Protective Order

3M_MDL000294428

P-GEN-01196.221

AEARO TECHNOLOGIES INC.

Schedule 3.12(e)(2)
Foreign Patent Applications

A list of foreign pending utility and design patent applications, consisting of twenty-two
(22) pages, is attached hereto.

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 90-1218/1 | DES | 9200138 | | Pending | Mexico | 24-Sep-1992 | | Eyeglass Safety Frame |
| Cabot Safety Intermediate Corporation | 95-1413/1 | DES | 946168 | | Pending | France | 10-Nov-1994 | | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1469/1 | DES | 945611 | | Pending | France | 13-Oct-1994 | | Hearing Protective Earplug |
| Cabot Safety Intermediate Corporation | 95-1498/1 | DES | 882852 | | Pending | France | 29-Apr-1988 | | Earplug Or Similar Article |
| Cabot Safety Intermediate Corporation | 95-1604/1 | ORD | 2234163 | | Granted | Canada | 12-Aug-1997 | 19-Feb-1998 | Hearing Protective Device Comprising a Foam and a Porous Component and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 95-1640/1 | ORD | PI9706634-6 | | Pending | Brazil | 12-Aug-1997 | | Acoustical Hearing Protective Devices Utilizing Dynamically Stiff Foam and Methods of Producing Same |
| Cabot Safety Intermediate Corporation | 95-1640/1 | ORD | 2234156 | | Published | Canada | 12-Aug-1997 | 19-Feb-1998 | Acoustical Hearing Protective Devices Utilizing Dynamically Stiff Foam and Methods of Producing Same |
| Cabot Safety Intermediate Corporation | 95-1640/1 | ORD | 97937161.4 | 861571 | Published | European Patent Convention | 12-Aug-1997 | 02-Sep-1998 | Acoustical Hearing Protective Devices Utilizing Dynamically Stiff Foam and Methods of Producing Same |
| Cabot Safety Intermediate Corporation | 96-1266/1 | ORD | 97937218.2 | 862399 | Granted | European Patent Convention | 13-Aug-1997 | 09-Sep-1998 | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294430

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 96-1814/1 | ORD | PI9711597-5 | | Pending | Brazil | 05-Jan-1998 | | Aspheric Plano Eyewear |
| Cabot Safety Intermediate Corporation | 96-1814/1 | ORD | 09-538918 | 2002500776 | Published | Japan | 24-Apr-1997 | 08-Jan-2002 | Aspheric Plano Eyewear |
| AEARO | 98-1182/ | PCT | 917934.2 | 1079777 | Granted | European Patent Convention | 14-Mar-2000 | 07-Mar-2001 | Hearing Protection Device |
| AEARO | 98-1182/ | PCT | 604792/2000 | | Abandoned | Japan | 14-Mar-2000 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | 98-1255/1 | PCT | Hei 11-554549 | 2002509474 | Published | Japan | 29-Apr-1999 | 26 Mar 2002 | Selective Nonlinear Attenuating Earplug |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | 2002351485 | | Pending | Australia | 15-Oct-2002 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | PI0005011.3 | | Pending | Brazil | 07-Feb-2000 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | PI0213662-7 | | Pending | Brazil | 15-Oct-2002 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 2328419 | | Published | Canada | 07-Feb-2000 | 31-Aug-2000 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | 2463796 | | Published | Canada | 15-Oct-2002 | 24-Apr-2003 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 373-2000 | | Pending | Chile | 21-Feb-2000 | | Respirator Headpiece and Release Mechanism |

Confidential - Subject to Protective Order

3M_MDL000294431

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 907206.7 | 1071495 | Granted | European Patent Convention | 07-Feb-2000 | 31-Jan-2001 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | 2786402.4 | 1444012 | Published | European Patent Convention | 15-Oct-2002 | 11-Aug-2004 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 138984 | | Granted | Israel | 07-Feb-2000 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 600728/2000 | | Abandoned | Japan | 07-Feb-2000 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/ | ORD | 2000-7011765 | 71170 | Granted | Korea, Republic of | 07-Feb-2000 | 28-Jul-2001 | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | 2017 | | Pending | Norway | 15-Oct-2002 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-1716/C | ORD | P369667 | | Pending | Poland | 15-Oct-2002 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | 98-2169/ | ORD | 99964116 | 1061875 | Abandoned | European Patent Convention | 06-Dec-1999 | 27-Dec-2000 | Detectable Earplug and Method of Manufacture Thereof |
| Cabot Safety Intermediate Corporation | 98-2169/ | PCT | 591947/2000 | | Abandoned | Japan | 06-Dec-1999 | | Detectable Earplug and Method of Manufacture Thereof |
| AEARO | CAO-0035/ | PCT | 510403 | 504156 | Abandoned | Japan | 20-Jun-2000 | 04-Feb-2003 | Glow-in-the-Dark Hearing Protective Devices |
| AEARO | CAO-0035/ | PCT | 2002/000688 | | Granted | Mexico | 20-Jun-2000 | 28-Nov-2003 | Glow-in-the-Dark Hearing Protective Devices |
| AEARO | CAO-0036/ | PCT | 510042 | 504690 | Abandoned | Japan | 20-Jun-2000 | 04-Feb-2003 | Lens Overlays for Eyewear |

Confidential - Subject to Protective Order

3M_MDL000294432

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|----------------|-----------------|--------|---------|-------------|------------------|-------|
| Cabot Safety Intermediate Corporation | CAO-0037/ | PCT | 2002/000689 | | Granted | Mexico | 20-Jun-2000 | 28-Nov-2003 | Transparent or Translucent Earmuff Cup |
| AEARO | CAO-0055/ | PCT | PI0015469-5 | | Pending | Brazil | 25-Oct-2000 | | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 2389967 | | Published | Canada | 25-Oct-2000 | 10-May-2001 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 534324 | 512890 | Published | Japan | 25-Oct-2000 | 08-Apr-2003 | Multi-Color Variably Attenuating Earplug |
| AEARO | CAO-0055/ | PCT | 2002/004476 | | Granted | Mexico | 25-Oct-2000 | | Multi-Color Variably Attenuating Earplug |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 87286/01 | | Granted | Australia | 03-Apr-2001 | | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | PI0105933-5 | | Pending | Brazil | 03-Apr-2001 | | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 2377390 | | Published | Canada | 03-Apr-2001 | | Protective Eyewear With Adjustable Strap |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 2001-572024 | 2003528692 | Published | Japan | 03-Apr-2001 | 30-Sep-2003 | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0065/ | PCT | 2001/012472 | | Granted | Mexico | 03-Apr-2001 | | Splash Goggle With Wrap-Around Lens |
| Cabot Safety Intermediate Corporation | CAO-0067/ | PCT | 71476/01 | | Pending | Australia | 26-Jun-2001 | | Earplug Dispenser |
| Cabot Safety Intermediate Corporation | CAO-0067/ | ORD | 1469-2001 | | Pending | Chile | 25-Jun-2001 | | Earplug Dispenser |
| Cabot Safety | CAO-0067/ | PCT | 1950491.9 | | Pending | European | 26-Jun- | | Earplug Dispenser |

Confidential - Subject to Protective Order

3M_MDL000294433

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Intermediate Corporation | | | | | | Patent Convention | 2001 | | |
| Cabot Safety Intermediate Corporation | CAO-0067/ | PCT | 2002/002030 | | Granted | Mexico | 26-Jun-2001 | 04-Apr-2003 | Earplug Dispenser |
| AEARO | CAO-0068/ | PCT | PI0107784-8 | | Pending | Brazil | 16-Jan-2001 | | Ultrafit Plug |
| AEARO | CAO-0068/ | PCT | 1902074.2 | | Granted | European Patent Convention | 16-Jan-2001 | | Ultrafit Plug |
| Cabot Safety Intermediate Corporation | CAO-0078/ | PCT | 2410260 | | Pending | Canada | 14-May-2001 | | Disposable Respirator |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 75073/01 | 783748 | Granted | Australia | 31-May-2001 | 01-Dec-2005 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | PI0106745-1 | | Pending | Brazil | 31-May-2001 | | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 2391776 | | Abandoned | Canada | 31-May-2001 | | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 2001-587697 | 2003534177 | Published | Japan | 31-May-2001 | 18-Nov-2003 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0090/ | PCT | 2002/001150 | | Published | Mexico | 31-May-2001 | 04-Apr-2003 | Process for Applying Coloring to Earplug Devices |
| Cabot Safety Intermediate Corporation | CAO-0094/ | DES | M20020289 | | Abandoned | Finland | 25-Apr-2002 | | respirator |
| AEARO | CAO-0110/ | PCT | 2002-524993 | 2004508248 | Published | Japan | 05-Sep-2001 | 18-Mar-2004 | Product Dispenser Bottle Connection |

- 5 -

Confidential - Subject to Protective Order

3M_MDL000294434

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| AEARO | CAO-0110/ | PCT | 2002/004479 | | Published | Mexico | 05-Sep-2001 | 11-Apr-2003 | Product Dispenser Bottle Connection |
| Cabot Safety Intermediate Corporation | CAO-0111/ | PCT | 2002217875 | | Abandoned | Australia | 27-Nov-2001 | | A Hearing Protective Device and Method of Making Same |
| Cabot Safety Intermediate Corporation | CAO-0111/ | PCT | 115887.2 | | Pending | Brazil | 27-Nov-2001 | | A Hearing Protective Device and Method of Making Same |
| Cabot Safety Intermediate Corporation | CAO-0111/ | PCT | 2430121 | | Abandoned | Canada | 27-Nov-2001 | | A Hearing Protective Device and Method of Making Same |
| Cabot Safety Intermediate Corporation | CAO-0111/ | PCT | 1998291.7 | | Pending | European Patent Convention | 27-Nov-2001 | | A Hearing Protective Device and Method of Making Same |
| Cabot Safety Intermediate Corporation | CAO-0111/ | PCT | 2003/004735 | | Published | Mexico | 27-Nov-2001 | 20-Aug-2004 | A Hearing Protective Device and Method of Making Same |
| Cabot Safety Intermediate Corporation | CAO-0121/ | PCT | 2002247479 | | Pending | Australia | 03-Apr-2002 | | Earmuff With Controlled Leak |
| Cabot Safety Intermediate Corporation | CAO-0121/ | PCT | 27152750 | 0715275 | Published | European Patent Convention | 03-Apr-2002 | 03-Apr-2002 | Earmuff With Controlled Leak |
| Cabot Safety Intermediate Corporation | CAO-0140/ | DES | 16669 | | Pending | France | 15-Nov-2001 | | Eyewear and Eyewear Lens |
| Cabot Safety Intermediate Corporation | CAO-0162/ | PCT | 2002319607 | | Pending | Australia | 22-Jul-2002 | | Respirator Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0162/ | PCT | PI0211040-7 | | Pending | Brazil | 22-Jul-2002 | | Respirator Release Mechanism |

Confidential - Subject to Protective Order

3M_MDL000294435

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0162/ | PCT | 2451098 | | Published | Canada | 22-Jul-2002 | 30-Jan-2003 | Respirator Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0162/ | PCT | 2750207.9 | 1409081 | Published | European Patent Convention | 22-Jul-2002 | 21-Apr-2004 | Respirator Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0208/ | DES | 128850 | | Abandoned | Switzerland | 03-May-2002 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 63026317 | | Pending | Brazil | 04-Aug-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0218/D | DES | 103871 | | Granted | Canada | 04-Aug-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | 239883 | | Pending | Australia | 27-Jan-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | PI0307169-3 | | Pending | Brazil | 27-Jan-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | 2473153 | | Published | Canada | 27-Jan-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | 3735022 | | Pending | European Patent Convention | 27-Jan-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | 3525 | | Pending | Norway | 27-Jan-2003 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0223/ | PCT | P-370635 | | Pending | Poland | 27-Jan-2003 | | Hearing Protection Device |

Confidential - Subject to Protective Order

3M_MDL000294436

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0226/ | PCT | 2002252096 | | Pending | Australia | 25-Feb-2002 | | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0226/ | PCT | 2337731 | | Published | Canada | 23-Feb-2001 | 23-Aug-2002 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0226/ | PCT | 2721151.5 | 14280160 | Published | European Patent Convention | 25-Feb-2002 | 16-Jun-2004 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2002247220 | | Pending | Australia | 25-Feb-2002 | | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2337940 | | Published | Canada | 25-Feb-2002 | 23-Aug-2002 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0227/ | PCT | 2714997 | 1399775 | Granted | European Patent Convention | 25-Feb-2002 | 24-Mar-2004 | Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0307/ | PCT | 2507508 | | Pending | Canada | 02-Dec-2003 | | Temple Piece for Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0307/ | PCT | 3797041.5 | 1567905 | Published | European Patent Convention | 02-Dec-2003 | 31-Aug-2005 | Temple Piece for Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0307/ | PCT | 2005120740 | | Abandoned | Russian Federation | 02-Dec-2003 | | Temple Piece for Eyewear |
| Cabot Safety Intermediate Corporation | CAO-0311/ | PCT | 2486633 | | Published | Canada | 21-May-2003 | | Heat Management System for Industrial Safety Equipment |
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | 40207205.7 | | Pending | Germany | 22-Aug-2002 | | Eyewear, Eyewear Brow Frame, Eyewear Lens and Nosepiece |

Confidential - Subject to Protective Order

3M_MDL000294437

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0323/ | DES | MI2002O000561 | | Pending | Italy | 21-Aug-2002 | | Eyewear, Eyewear Brow Frame, Eyewear Lens and Nosepiece |
| Cabot Safety Intermediate Corporation | CAO-0324/ | DES | 40207223.5 | | Pending | Germany | 22-Aug-2002 | | Eyewear and Eyewear Temple |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 265872 | | Pending | Australia | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 0313955-7 | 1802 | Abandoned | Brazil | 28-Aug-2003 | 19-Jul-2005 | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 2496588 | | Abandoned | Canada | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 3821173.4 | 41vol.21 | Allowed | China (Peoples Republic) | 28-Aug-2003 | 28-Oct-2005 | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 3794559.9 | 1534200 | Published | European Patent Convention | 28-Aug-2003 | 01-Jun-2005 | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 519/DELNP | | Pending | India | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 2004534415 | 2005-537858 | Published | Japan | 28-Aug-2003 | 15-Dec-2005 | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 538173 | | Abandoned | New Zealand | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 20050657 | | Abandoned | Norway | 28-Aug-2003 | | Improved Push in Earplug |

Confidential - Subject to Protective Order

3M_MDL000294438

P-GEN-01196.231

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | P-374547 | | Pending | Poland | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 2005109928 | | Pending | Russian Federation | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0344/ | PCT | 2005/02156 | | Abandoned | South Africa | 28-Aug-2003 | | Improved Push in Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | MI2003O000139 | | Pending | Italy | 05-Mar-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 2003/000213 | | Granted | Mexico | 06-Mar-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0383/ | DES | 129.523 | | Pending | Switzerland | 05-Mar-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 2003287090 | | Pending | Australia | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | PI0315792-0 | 1810 | Published | Brazil | 14-Oct-2003 | 13-Sep-2005 | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 2503847 | | Pending | Canada | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 80102117 | CN1708267A | Pending | China (Peoples Republic) | 14-Oct-2003 | 14-Dec-2005 | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 0777613 | 1565135 | Pending | European Patent Convention | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |

- 10 -

Confidential - Subject to Protective Order

3M_MDL000294439

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 1295/DELNP | | Abandoned | India | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 2004548382 | | Abandoned | Japan | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 539994 | | Abandoned | New Zealand | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 20051571 | | Abandoned | Norway | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | P-377689 | | Pending | Poland | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 2005116260 | | Pending | Russian Federation | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0384/ | PCT | 2005/03907 | | Abandoned | South Africa | 14-Oct-2003 | | Corded Hearing Protective Device and Method of Manufacturing the Same |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2004207440 | | Pending | Australia | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | PI406768-1 | 1824 | Published | Brazil | 08-Jan-2004 | 12-2005 | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2513175 | | Pending | Canada | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |

Confidential - Subject to Protective Order

3M_MDL000294440

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 80002315.4 | CN1738583A | Published | China (Peoples Republic) | 08-Jan-2004 | 22-Feb-2006 | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 4700903 | 1587469 | Published | European Patent Convention | 08-Jan-2004 | 26-Oct-2005 | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 3061/DELNP/05 | | Pending | India | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2006-536518 | 2007-501130 | Published | Japan | 08-Jan-2004 | 25-Jan-2007 | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 541369 | | Abandoned | New Zealand | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2005 3625 | | Abaondoned | Norway | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | P-376308 | | Pending | Poland | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2005126041 | | Published | Russian Federation | 08-Jan-2004 | 10-Mar-2006 | Method of Forming an Earplug by Laser Ablation and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0401/ | PCT | 2005/06288 | | Abandoned | South Africa | 08-Jan-2004 | | Method of Forming an Earplug by Laser Ablation |

- 12 -

Confidential - Subject to Protective Order

3M_MDL000294441

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Corporation | | | | | | | | | and an Earplug Formed Thereby |
| Cabot Safety Intermediate Corporation | CAO-0428/ | ORD | US04/28237 | | Expired | Patent Cooperation Treaty | 30-Aug-2004 | | Earplug and a Method of Forming an Earplug |
| Cabot Safety Intermediate Corporation | CAO-0451/ | DES | 2003/001467 | | Granted | Mexico | 05-Dec-2003 | | Tab Earplug |
| Cabot Safety Intermediate Corporation | CAO-0452/ | DES | 2003/001468 | | Granted | Mexico | 05-Dec-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0452/ | DES | 20030678 | | Combined with CAO-0451 | Norway | 02-Dec-2003 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0476/ | ORD | US04/36715 | | Expired | Patent Cooperation Treaty | 02-Nov-2003 | | Low Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0482/D1 | DES | 14919/2004 | | Granted | Australia | 18-Oct-2004 | | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0482/ | DES | 167 | | Pending | Mexico | 01-Aug-2003 | | Stemmed Earplug |
| Cabot Safety Intermediate Corporation | CAO-0519/ | ORD | US05/20581 | | Expired | Patent Cooperation Treaty | 10-Jun-2005 | | Variable Geometry Lens |
| Cabot Safety Intermediate Corporation | CAO-0520/ | ORD | US05/20329 | | Abandoned | Patent Cooperation Treaty | 09-Jun-2005 | | Molded-In Films for Spectacle Lenses |
| Cabot Safety Intermediate Corporation | CAO-0535/ | ORD | US05/20586 | | Abandoned | Patent Cooperation Treaty | 10-Jun-2005 | | In-Mold Movable Parts Assembly |

- 13 -

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|---------|-------------|------------------|-------|
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | US05/02159 | | Expired | Patent Cooperation Treaty | 24-Jan-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 107951 | | Granted | Canada | 20-Aug-2004 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 30068072.7 | | Granted | China (Peoples Republic) | 16-Aug-2004 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/D | DES | 30068070.8 | | Granted | China (Peoples Republic) | 16-Aug-2004 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | 1257 | | Pending | Mexico | 20-Aug-2004 | | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0552/ | DES | A2004/1095 | | Granted | South Africa | 19-Aug-2004 | 26-Apr-2005 | Flanged Earplug |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | US05/20858 | | Expired | Patent Cooperation Treaty | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 109274 | | Granted | Canada | 02-Dec-2004 | | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0566/ | DES | 1763 | | Granted | South Africa | 15-Dec-2004 | 26-Oct-2005 | Maxim Goggle Design |
| Cabot Safety Intermediate Corporation | CAO-0568/2 | ORD | US05/043052 | | Pending | Patent Cooperation Treaty | 29-Nov-2005 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 14407/2004 | | Granted | Australia | 14-Sep-2004 | | Hearing Protection Device |

- 14 -

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0579/D | DIV | 12162/2005 | | Granted | Australia | 07-Apr-2005 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/D2 | DIV | 12163/2005 | | Granted | Australia | 07-Apr-2005 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 607 | | Granted | Norway | 22-Oct-2004 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0579/ | DES | 502753 | | Granted | Russian Federation | 22-Oct-2004 | | Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0612/ | ORD | US05/36261 | | Expired | Patent Cooperation Treaty | 11-Oct-2005 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0800/ | ORD | US2005/041704 | WO2006/055723 | Abandoned | Patent Cooperation Treaty | 16-Nov-2005 | 26-May-2006 | Hearing Protection and Earphone Device |
| Cabot Safety Intermediate Corporation | CAO-0872/ | PCT | 2005/03139 | | Abandoned | South Africa | 09-Sep-2003 | | Earplugs and Method of Forming Same |
| Cabot Safety Intermediate Corporation | | | US22372 | 9828118 | Published | Patent Cooperation Treaty | 03 Dec 1997 | 02 Jul 1998 | Process and Apparatus for Fabrication of Flexible Foam |
| Cabot Safety Intermediate Corporation | | | 9476455 | | Pending | Australia | 09 Sep 1994 | | Protective Faceshield Attachable to Eyeglasses for When Dealing With Contagious Diseases |
| Cabot Safety Intermediate Corporation | | | US10073 | 957032 | Published | Patent Cooperation Treaty | 09 Sep 1994 | 16 Mar 1995 | Protective Faceshield Attachable to Eyeglasses for When Dealing With Contagious Diseases |

Confidential - Subject to Protective Order

3M_MDL000294444

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | | | 9343774 | | Pending | Australia | 14 May 1993 | | Earplug Dispenser |
| Cabot Safety Intermediate Corporation | | | US 4637 | 9324393 | Published | Patent Cooperation Treaty | 14 May 1993 | 09 Dec 1993 | Earplug Dispenser |
| Cabot Safety Intermediate Corporation | | | 9187401 | | Pending | Australia | 26 Aug 1991 | | Mold for Foam Products |
| Cabot Safety Intermediate Corporation | | | 916788 | | Pending | Brazil | 26 Aug 1991 | | Mold for Foam Products |
| Cabot Safety Intermediate Corporation | | | 93894 | | Pending | Finland | 26 Feb 1993 | | Mold for Foam Products |
| Cabot Safety Intermediate Corporation | | | 93694 | | Pending | Norway | 26 Feb 1993 | | Mold for Foam Products |
| Cabot Safety Intermediate Corporation | | | US6078 | 9203271 | Published | Patent Cooperation Treaty | 26 Aug 1991 | | Mold for Foam Products |
| | 95-1484 | | | 9169533 | Published | Australia | | 26 June 1991 | Molded Foam Earplug and Method for Making Same |
| | 95-1484 | | | 9107914 | Published | Patent Cooperation Treaty | | 13 June 1991 | Molded Foam Earplug and Method for Making Same |
| Cabot Safety Intermediate Corporation | 98-1716/ | DIV | 172238 | | Pending | Israel | 28-Nov-2005 | | Respirator Headpiece and Release Mechanism |
| Cabot Safety Intermediate Corporation | CAO-0428/ | PCT | 200480026364.1 | CN1849193A | Published | China | 30-Aug-2004 | 18-Oct-2006 | Earplug and a Method of Forming an Earplug |

Confidential - Subject to Protective Order

3M_MDL000294445

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|---------|-------------|------------------|-------|
| Cabot Safety Intermediate Corporation | CAO-0428/ | PCT | 4782671.4 | 1663559 | Published | European Patent Convention | 30-Aug-2004 | 07-June-2006 | Earplug and a Method of Forming an Earplug |
| Cabot Safety Intermediate Corporation | CAO-0428/ | PCT | 2006111705 | | Pending | Russian Federation | 30-Aug-2004 | | Earplug and a Method of Forming an Earplug |
| Cabot Safety Intermediate Corporation | CAO-0476/ | PCT | 4817535 | | Pending | European Patent Convention | 02-Nov-2004 | | Low Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0519/ | ORD | 5760951.3 | 1774398 | Published | Europe | 10-Jun-2005 | 18-Apr-2007 | Variable Geometry Lens |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 2005209264 | | Pending | Australia | 24-Jan-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | PI0506978-5 | | Pending | Brazil | 24-Jan-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 2552653 | | Pending | Canada | 24-Jan-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 200580002368.0 | CN1909862A | Published | China | 24-Jan-2005 | 07-Feb-2007 | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 5706047.7 | 1706082 | Published | Europe | 24-Jan-2005 | 04-Oct-2006 | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 20062893 | | Pending | Norway | 24-Jan-2005 | | High Attenuating Earmuff Device |
| Cabot Safety Intermediate Corporation | CAO-0548/ | ORD | 2006130376 | | Pending | Russian Federation | 24-Jan-2005 | | High Attenuating Earmuff Device |

Confidential - Subject to Protective Order

3M_MDL000294446

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | 2005254072 | | Pending | Australia | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | PI0511867-0 | | Pending | Brazil | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | 2567678 | | Pending | Canada | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | | | Pending | China | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | 5758481.5 | 1765237 | Pending | European Patent Convention | 13-Jun-2005 | 28-Mar-2007 | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0563/ | ORD | 20070138 | | Pending | Norway | 13-Jun-2005 | | High Sound Attenuating Hearing Protection Device |
| Cabot Safety Intermediate Corporation | CAO-0612/ | ORD | | | Pending | China | 11-Oct-2005 | | Earplug |
| Cabot Safety Intermediate Corporation | CAO-0612/ | ORD | 5803791.2 | | Pending | European Patent Convention | 11-Oct-2005 | | Earplug |
| Peltor AB | | | 2 371 707 | | Pending | Canada | | | A Safety Visor |
| Peltor AB | | | 2 375 521 | | Pending | Canada | | | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | PA/a/2002/000143 | | Pending | Mexico | | | Method For Making a Cup and a Cup Made According to the Method |
| Peltor AB | | | 2004292906 | | Pending | Australia | | | Hearing Protection |

Confidential - Subject to Protective Order

3M_MDL000294447

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|---------|-------------|------------------|-------|
| Peltor AB | | | PT 0416932-8 | | Pending | Brazil | | | Hearing Protection |
| Peltor AB | | | 2 546 859 | | Pending | Canada | | | Hearing Protection |
| Peltor AB | | | 200480034957.2 | | Pending | China | | | Hearing Protection |
| Peltor AB | | | 04800370.1 | | Pending | Europe | | | Hearing Protection |
| Peltor AB | | | 20062322 | | Pending | Norway | | | Hearing Protection |
| Peltor AB | | | 2206122890 | | Pending | Russian Federation | | | Hearing Protection |
| Peltor AB | | | 04775303.3 | | Pending | Europe | | | Indicating Device |
| Peltor AB | | | 20060668 | | Pending | Norway | | | Indicating Device |
| Peltor AB | | | SE2006/00155 | | Pending | PCT | | | Protective Glasses |
| Peltor AB | | | SE2006/00496 | | Pending | PCT | | | Ear-protection Cup |
| Peltor AB | | | SE2006/000497 | | Pending | PCT | | | Ear-Protection Cup |
| Peltor AB | | | SE2006/00498 | | Pending | PCT | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1167-SE | | 0501205-9 | | Pending | Sweden | | | Hearing Protection |
| Peltor AB | | | SE2006/000606 | | Pending | PCT | | | Hearing Protection |
| Peltor AB | | | 0601361-9 | | Pending | Sweden | | | Ear Protection Cup |
| Peltor AB | | | SE2007/000544 | | Pending | PCT | | | Ear Protection Cup |
| Peltor AB | | | 0601546-5 | | Pending | Sweden | | | Methods for Limiting Sound Pressure Levels in a |

Confidential - Subject to Protective Order

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|---------|-------------|------------------|-------|
| | | | | | | | | | Headphone |
| Peltor AB | | | SE2007/000545 | | Pending | PCT | | | Methods for Limiting Sound Pressure Levels in a Headphone |
| Peltor AB | | | 0701101-8 | | Pending | Sweden | | | Method and Device for Damping a Signal (dB-limiter) |
| Peltor AB | | | 200530138876.4 | | Pending | China | | | Hearing Protector With Communications Equipment |
| Peltor AB | PW-1149-AU | | 2006214818 | | Pending | Australia | | | Protective Glasses |
| Peltor AB | PW-1149-CN | | | | Pending | China | | | Protective Glasses |
| Peltor AB | PW-1149-EP | | 06704544.3 | | Pending | Europe | | | Protective Glasses |
| Peltor AB | PW-1149-NO | | 20073579 | | Pending | Norway | | | Protective Glasses |
| Peltor AB | PW-1149-RU | | 2007134435 | | Pending | Russia | | | Protective Glasses |
| Peltor AB | PW-1164-AU | | | | Pending | Australia | | | Ear-Protection Cup |
| Peltor AB | PW-1164-CN | | | | Pending | China | | | Ear-Protection Cup |
| Peltor AB | PW-1164-EP | | | | Pending | Europe | | | Ear-Protection Cup |
| Peltor AB | PW-1164-NO | | | | Pending | Norway | | | Ear-Protection Cup |
| Peltor AB | PW-1164-RU | | | | Pending | Russia | | | Ear-Protection Cup |
| Peltor AB | PW-1165-CN | | | | Pending | China | | | Ear-Protection Cup |

Confidential - Subject to Protective Order

3M_MDL000294449

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---------|-----------|-----------|-----------------|-----------------|--------|---------|-------------|------------------|-------|
| Peltor AB | PW-1165-EP | | | | Pending | Europe | | | Ear-Protection Cup |
| Peltor AB | PW-1166-AU | | | | Pending | Australia | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1166-CN | | | | Pending | China | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1166-EP | | | | Pending | Europe | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1166-NO | | | | Pending | Norway | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1166-RU | | | | Pending | Russia | | | Ear-Protection Cup with Microphone Arrangement |
| Peltor AB | PW-1167-CN | | | | Pending | China | | | Hearing Protection |
| Peltor AB | PW-1167-EP | | | | Pending | Europe | | | Hearing Protection |
| Peltor AB | PW-1167-NO | | | | Pending | Norway | | | Hearing Protection |
| Peltor AB | PW-1167-RU | | | | Pending | Russia | | | Hearing Protection |
| | | | | | | | | | |
| Cabot Safety Intermediate Corporation | CAO-0568-AU | PCT | 2005309381 | | Pending | Australia | 29-Nov-2005 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0568-BR | PCT | | | Pending | Brazil | 28-May-2007 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0568-CA | PCT | | | Pending | Canada | 29-Nov-2005 | | Hearing Protector |

Confidential - Subject to Protective Order

3M_MDL000294450

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0568-CN | PCT | 2005800408626 | | Pending | China | 29-Nov-2005 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0568-EP | PCT | 58260464 | | Pending | Europe | 29-Nov-2005 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-0568-NO | PCT | 20072777 | | Pending | Norway | 01-Jun-2007 | | Hearing Protector |
| Cabot Safety Intermediate Corporation | CAO-1306-PCT | PCT | US07/013370 | | Pending | PCT | 06-Jun-2007 | | Safety Eyewear Including a Removable Lens Carrier and Prescription Insert |
| Cabot Safety Intermediate Corporation | CAO-1307-PCT | PCT | US07/013345 | | Pending | PCT | 06-Jun-2007 | | Safety Eyewear |
| Cabot Safety Intermediate Corporation | CAO-1308-PCT | PCT | US07/013344 | | Pending | PCT | 06-Jun-2007 | | Safety Eyewear Including a Flexible Cable Attachment |
| Cabot Safety Intermediate Corporation | CAO-0793-AU | PCT | 2006206471 | | Pending | Australia | 19-Jan-2006 | | Hearing Protection Device with Damped Material |
| Cabot Safety Intermediate Corporation | CAO-0793-BR | PCT | | | Pending | Brazil | 23-Jul-2007 | | Hearing Protection Device with Damped Material |
| Cabot Safety Intermediate Corporation | CAO-0793-CA | PCT | | | Pending | Canada | 19-Jan-2006 | | Hearing Protection Device with Damped Material |
| Cabot Safety Intermediate Corporation | CAO-0793-CN | PCT | 2006800019020 | | Pending | China | 19-Jan-2006 | | Hearing Protection Device with Damped Material |
| Cabot Safety Intermediate Corporation | CAO-0793-EP | PCT | 67188334 | | Pending | Europe | 19-Jan-2006 | | Hearing Protection Device with Damped Material |

Confidential - Subject to Protective Order

3M_MDL000294451

P-GEN-01196.244

| Grantor | Matter No. | Case Type | Application No. | Publication No. | Status | Country | Filing Date | Publication Date | Title |
|---|---|---|---|---|---|---|---|---|---|
| Cabot Safety Intermediate Corporation | CAO-0793-NO | PCT | 20073168 | | Pending | Norway | 22-Jun-2007 | | Hearing Protection Device with Damped Material |
| Cabot Safety Intermediate Corporation | CAO-1053-PCT | PCT | 2007022421 | | Pending | PCT | 22-Oct-2007 | | Earplug with Articulating Stem and Locking Features |
| Cabot Safety Intermediate Corporation | CAO-1053-PCT | PCT | US2006/42439 | WO2007/055969 | Published | PCT | 31-Oct-2006 | 18-May-2007 | Offset Stem for Earplug and Earplug Formed |
| Cabot Safety Intermediate Corporation | CAO-1050-PCT | PCT | US2006/39643 | WO2007/044766 | Published | PCT | 18-Oct-2006 | 19-Apr-2007 | Tube-Formed Earplug with Integral Stem |
| Cabot Safety Intermediate Corporation | CAO-1051-PCT | PCT | US2006/39642 | WO2007/044765 | Published | PCT | 10-Oct-2006 | 19-Apr-2007 | Low Attenuating Push-In Earplug with Integral Stem |
| Cabot Safety Intermediate Corporation | CAO-0793-PCT | PCT | US2006/01822 | WO2006/078767 | Published | PCT | 19-Jan-2006 | 27-Jul-2006 | Hearing Protection Device with Damped Material |
| | | | | | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294452

P-GEN-01196.245

AEARO TECHNOLOGIES INC.

Schedule 3.12(f)
Domestic Trademarks

A list of domestic issued trademark registrations and pending trademark applications, consisting of fourteen (14) pages, is attached hereto.

| Trademark Name | Matter # | Appl. # | Publ. # | Reg. # | TM Status | Country Name | File Date | Publ. Date | Reg. Date | Next Renewal Date | Class |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AEARO | 96-1310/ | 112818 | | 2120532 | Registered | United States of America | 06/03/96 | 01/07/97 | 12/09/97 | 12/09/07 | 9 |
| AEROSITE | 95-1353/ | 577764 | | 1407480 | Registered | United States of America | 01/14/86 | | 09/02/86 | 09/02/16 | 9 |
| A-FORCE | CAO-0530-T/ | 78/514006 | | 3111291 | Registered | United States of America | 11/09/04 | 04/11/06 | 07/04/06 | 07/04/16 | 9 |
| ALERT | CAO-0441-T/ | 78/272640 | | 2925002 | Registered | United States of America | 07/10/03 | 11/16/04 | 02/08/05 | 02/08/15 | 9 |
| ARC PLUG | CAO-0905-T/ | 78/730500 | | 3286998 | Registered | United States of America | 10/11/05 | 06/13/06 | 08/28/07 | 08/28/17 | 9 |
| ARC-BLOCK | 95-1217/ | 685691 | | 2146798 | Registered | United States of America | 06/08/95 | | 03/24/98 | 03/24/08 | 9 |
| ARSENAL | CAO-0690-T/ | 78/474784 | | 3107955 | Registered | United States of America | 08/27/04 | 07/12/05 | 06/20/06 | 06/20/16 | 9 |
| BACKTRACK | CAO-0565-T/ | 78/504472 | | 3262107 | Registered | United States of America | 10/22/04 | 03/07/06 | 07/10/07 | 07/10/17 | 9 |
| BARRAGE | CAO-1104-T/ | 78/830766 | | | Published | United States of America | 03/07/06 | 06/27/06 | | | 9 |
| BLASTS | CAO-0039-T/ | 75/701872 | | 2534562 | Registered | United States of America | 05/10/99 | 03/14/00 | 01/29/02 | 01/29/12 | 9 |
| BLOCKADE | CAO-0638-T/ | 78/527626 | | | Published | United States of America | 12/06/04 | 10/18/05 | | | 9 |
| BX | CAO-0342-T/ | 78/133594 | | 3013746 | Registered | United States of America | 06/06/02 | 12/10/02 | 11/08/05 | 11/08/15 | 9 |
| CABOFLEX | 93-1355/ | 496243 | | 1888297 | Registered | United States of America | 03/03/94 | 01/17/95 | 04/11/95 | 04/11/15 | 9 |
| CALIBER | CAO-1159-T/ | 78/834016 | | 3295524 | Registered | United States of America | 03/10/06 | 06/27/06 | 09/18/07 | 09/18/17 | 9 |
| CANS | CAO-0553-T/ | 78/543005 | | | Published | United States of America | 01/06/05 | 09/27/05 | | | 9 |

Confidential - Subject to Protective Order

3M_MDL000294454

| CATEGORY MANAGEMENT FOR SAFETY | CAO-0653-T/ | 78/487882 | | 3006760 | Registered | United States of America | 09/22/04 | | 10/11/05 | 10/11/15 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CENTURION | 90-1292/ | 93051 | | 1652276 | Renewed | United States of America | 08/31/90 | 05/07/91 | 07/30/91 | 07/30/11 | IC 009  US 026. |
| CLASSIC | 95-1009/ | 629340 | | 2048606 | Registered | United States of America | 02/03/95 | 01/07/97 | 04/01/97 | 04/01/17 | 9 |
| COMBAT ARMS | CAO-0885-T/ | 78/624864 | | 3326152 | Registered | United States of America | 05/06/05 | 09/26/06 | 10/30/07 | 10/30/17 | 9 |
| COMPULSION | CAO-0968-T/ | 78/730091 | | | Published | United States of America | 10/10/05 | 06/27/06 | | | 9 |
| CONFOR | 95-1423/ | 185345 | | 2145943 | Registered | United States of America | 10/22/96 | 12/30/97 | 03/24/98 | 03/24/08 | 17 |
| CONFORM (RESPIRATORS) | CAO-0157-T/ | 76/245379 | | 2691546 | Registered | United States of America | 04/23/01 | 09/04/01 | 02/25/03 | 02/25/13 | 9 |
| COOL MAX | CAO-0182-T/ | 76/313233 | | 2811227 | Registered | United States of America | 09/17/01 | 01/14/03 | 02/03/04 | 02/03/14 | 9 |
| COOLMAX CUP | CAO-1404-T/ | 77/072336 | | | Published | United States of America | 12/28/06 | 08/28/07 | | | 9 |
| CRAVE | CAO-0985-T/ | 78/730434 | | | Published | United States of America | 10/11/05 | 06/27/06 | | | 9 |
| CUSTOME-A-R | CAO-1329-T/ | 77/078357 | | | Published | United States of America | 01/08/07 | 06/19/07 | | | 9 |
| CVIS | CAO-1113-T/ | 78/758546 | | | Published | United States of America | 11/21/05 | 03/13/07 | | | 9 |
| DOUBLE GUARD | CAO-0141-T/ | 76/194007 | | 2769679 | Registered | United States of America | 01/11/01 | 09/10/02 | 09/30/03 | 09/30/13 | 9 |
| DURAFON | 95-1352/ | 749469 | | 1571627 | Renewed | United States of America | 08/30/88 | | 12/19/89 | 12/19/09 | 9, 10 |
| DURALITE | 90-1378/ | 699578 | | 1498467 | Registered | United States of America | 12/07/87 | | 08/02/88 | 08/02/08 | IC 009. US 026. |
| E Z FIT | CAO-1161-T/ | 78/826336 | | | Suspended | United States of America | 03/01/06 | | | | 9 |

- 2 -

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| E Z FIT (SUPPLEMENTAL REGISTER) | 94-1349/ | 617149 | | 2293714 | Registered | United States of America | 01/03/95 | | 11/16/99 | 11/16/09 | 9 |
| E-A-R | 92-1089/ | 275364 | | 1790249 | Registered | United States of America | 05/14/92 | 06/08/93 | 08/31/93 | 08/31/13 | 10 |
| E-A-R | 95-1363/ | 322184 | | 890313 | Renewed | United States of America | 03/19/69 | | 05/05/70 | 05/05/10 | 17 |
| E-A-R | 95-1364/ | 319327 | | 1213673 | Registered | United States of America | 07/17/81 | | 10/19/82 | 10/19/12 | 10 |
| E-A-R (stylized) | 95-1365/ | 620667 | | 1584486 | Renewed | United States of America | 09/18/86 | | 02/27/90 | 02/27/10 | 10 |
| E-A-R AND DESIGN | 97-1439/ | 75/302448 | | 2560765 | Registered | United States of America | 06/03/97 | 01/22/02 | 04/16/02 | 04/16/12 | 9 |
| E-A-R CAPS | 95-1367/ | 742079 | | 1736344 | Registered | United States of America | 07/25/88 | | 12/01/92 | 12/01/12 | 10 |
| E-A-R CLASSIC | 94-1351/ | 617150 | | 2056587 | Registered | United States of America | 01/03/95 | 02/04/97 | 04/29/97 | 04/29/17 | 9 |
| E-A-R GROUP | 95-1214/ | 729191 | | 1559674 | Registered | United States of America | 05/18/88 | | 10/10/89 | 10/10/09 | 10 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 77/059926 | | | Approved for Publication | United States of America | 12/08/06 | | | | 40, 42 |
| E-A-R TONE | 95-1370/ | 73/793536 | | 1599448 | Registered | United States of America | 04/17/89 | | 06/05/90 | 06/05/10 | 10 |
| E-A-R TONE | CAO-1467-T/ | 77/149627 | | | Abandoned | United States of America | 04/05/07 | | | | 10 |
| EARCOM | CAO-0549-T/ | 78/364916 | | 3024554 | Registered | United States of America | 02/09/04 | 01/18/05 | 12/06/05 | 12/06/15 | 9 |
| E-A-RFIT | CAO-1332-T/ | 77/078365 | | | Approved for Publication | United States of America | 01/08/07 | 11/13/07 | | | 9 |
| E-A-RFLEX | CAO-0100-T/ | 76/101269 | | 2622019 | Registered | United States of America | 08/02/00 | 05/29/01 | 09/17/02 | 09/17/12 | 10 |
| E-A-RFLEX 28 | CAO-0254-T/ | 76/368112 | | 2789469 | Registered | United States of America | /07/02 | 11/05/02 | 12/02/03 | 12/02/13 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294456

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| EARHOOKZ | CAO-0817-T/ | 78/613879 | | | Pending | United States of America | 04/21/05 | | | 9 |
| E-A-RLINK | 95-1368/ | 784485 | | 1591880 | Renewed | United States of America | 03/06/89 | | 04/17/90 | 04/17/10 | 10 |
| E-A-RLOG AND DESIGN | 95-1369/ | 206597 | | 1703260 | Renewed | United States of America | 09/20/91 | | 07/28/92 | 07/28/12 | 16 |
| E-A-RSOFT AND DESIGN | 99-1093/ | 75/640664 | | 2537018 | Registered | United States of America | 02/16/99 | 05/02/00 | 02/05/02 | 02/05/12 | 9 |
| EASY-CHANGE | 95-1259/ | 729072 | | 2296271 | Registered | United States of America | 09/14/95 | 06/04/96 | 11/30/99 | 11/30/09 | 9 |
| ELAVATION | CAO-1324-T/ | 78/962600 | | 3314859 | Registered | United States of America | 08/29/06 | 01/16/07 | 10/16/07 | 10/16/17 | 9 |
| ESCAPE ARTIST | 95-1015/ | 629341 | | 1953041 | Registered | United States of America | 01/03/95 | 11/07/95 | 01/30/96 | 01/30/16 | 9 |
| EVP | CAO-1185-T/ | 78/903871 | | | Published | United States of America | 06/08/06 | 01/02/07 | | | 9 |
| EXPRESS | 95-1012/ | 629512 | | 1942900 | Registered | United States of America | 02/03/95 | 09/26/95 | 12/19/95 | 12/19/15 | 10 |
| EZ DROP | CAO-0152-T/ | 76/230250 | | 2701147 | Registered | United States of America | 03/26/01 | 09/04/01 | 03/25/03 | 03/25/13 | 9 |
| EZ-INS | CAO-1410-T/ | 77/067375 | | | Published | United States of America | 12/19/06 | 06/19/07 | | | 9 |
| FAHRENHEIT | CAO-0696-T/ | 78/527613 | | | Published | United States of America | 12/06/04 | 09/27/05 | | | 9 |
| FECTOGGLES | 98-1055/ | 444593 | | 2234166 | Registered | United States of America | 03/04/98 | 12/29/98 | 03/23/99 | 03/23/09 | 9 |
| FECTOGGLES (stylized) | 98-1056/ | 444592 | | 2234165 | Registered | United States of America | 03/04/98 | 12/29/98 | 03/23/99 | 03/23/09 | 9 |
| FECTOIDS | 95-1258/ | 74/732764 | | 2065817 | Registered | United States of America | 09/22/95 | 07/02/96 | 05/27/97 | 05/27/17 | 9 |
| FIREFIGHT | CAO-0940-T/ | 78/730518 | | | Allowed | United States of America | 10/11/05 | 06/27/06 | | | 9 |

- 4 -

Confidential - Subject to Protective Order

3M_MDL000294457

| FLEXI-STAR | 95-1372/ | 272756 | | 1839910 | Registered | United States of America | 05/05/92 | | 06/14/94 | 06/14/14 | 10 |
| FLYWEAR | CAO-0337-T/ | 78/133585 | | 2855010 | Registered | United States of America | 06/06/02 | 12/10/02 | 06/15/04 | 06/15/14 | 9 |
| FORCE3 | CAO-0564-T/ | 78/513940 | | 3184578 | Registered | United States of America | 11/09/04 | | 12/12/06 | 12/12/16 | 9 |
| FORGE | CAO-0992-T/ | 78/730432 | | 3295196 | Registered | United States of America | 10/11/05 | 06/27/06 | 9/18/07 | 9/18/17 | 9 |
| FUEL | CAO-0459-T/ | 78/513989 | | 3095103 | Registered | United States of America | 11/09/04 | 02/28/06 | 05/23/06 | 05/23/16 | 9 |
| GEAR UP FOR SAFETY | CAO-0053-T/ | 75/817665 | | 2413882 | Registered | United States of America | 10/06/99 | 09/26/00 | 12/19/00 | 12/19/10 | 5, 9 |
| GENUS | CAO-0259-T/ | 78/730514 | | | Published | United States of America | 10/11/05 | 06/27/06 | | | 9 |
| GLAREX | CAO-0509-T/ | 78/323257 | | 2982047 | Registered | United States of America | 11/05/03 | 08/24/04 | 08/02/05 | 08/02/15 | 9 |
| GOGGLEGEAR | CAO-0025-T/ | 75/684866 | | 2505099 | Registered | United States of America | 04/19/99 | | 11/06/01 | 11/06/11 | 9 |
| GROUND HOG | CAO-1247-T/ | 78/878935 | | | Published | United States of America | 05/08/06 | 10/31/06 | | | 9 |
| GROUPFORCE | CAO-0573-T/ | 78/410186 | | | Published | United States of America | 04/29/04 | 12/06/05 | | | 9 |
| HANDY WOMAN | CAO-0861-T/ | 78/626267 | | | Published | United States of America | 05/10/05 | 03/20/07 | | | 9 |
| HEAR WEAR | CAO-1285-T/ | 78/906523 | | | Published | United States of America | 06/13/06 | 08/21/07 | | | 9 |
| HEAR-THROUGH (SUPPLEMENTAL REGISTER) | CAO-1063-T/ | 78/760156 | | 3259635 | Registered | United States of America | 11/23/05 | | 07/03/07 | 07/03/17 | 9 |
| I-RIOT | CAO-0610-T/ | 78/446738 | | 3101851 | Registered | United States of America | 07/07/04 | 06/14/05 | 06/06/06 | 06/06/16 | 9 |
| ISODAMP | 95-1023/ | 101361 | | 1071450 | Renewed | United States of America | 09/27/76 | | 08/16/77 | 08/16/07 | 17 |

Confidential - Subject to Protective Order

3M_MDL000294458

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ISOLOSS | 95-1375/ | 793537 | | 1617634 | Renewed | United States of America | 04/17/89 | | 10/16/90 | 10/16/10 | 17 |
| KID'S SAFE SEAL | 95-1379/ | 798719 | | 1578827 | Renewed | United States of America | 05/08/89 | | 01/23/90 | 01/23/10 | 10 |
| KINETIC | CAO-1283-T/ | 78/942229 | | 3314795 | Registered | United States of America | 08/01/06 | 01/16/07 | 10/16/07 | 10/16/17 | 9 |
| LANDSCAPER | 97-1340/ | 302447 | | 2241190 | Registered | United States of America | 06/03/97 | 04/21/98 | 04/20/99 | 04/20/09 | 9 |
| LEXA | 97-2119/ | 418356 | | 2293485 | Registered | United States of America | 01/15/98 | 12/01/98 | 11/16/99 | 11/16/09 | 9 |
| LIGHT VISION | CAO-1014-T/ | 78/781038 | | | Allowed - SOU accepted | United States of America | 12/27/05 | 12/12/06 | | | 9 |
| LR50 | CAO-0590-T/ | 78/435430 | | 3127724 | Registered | United States of America | 06/15/04 | 09/20/05 | 08/08/06 | 08/08/16 | 9 |
| LUMBERJACK | CAO-0052-T/ | 75/768704 | | 2412139 | Registered | United States of America | 08/05/99 | 09/19/00 | 12/12/00 | 12/12/10 | 9 |
| M16 | CAO-0924-T/ | 78/730442 | | | Allowed | United States of America | 10/11/05 | 12/12/06 | | | 9 |
| MALIBU | 94-1354/ | 74/617146 | | 1938771 | Registered | United States of America | 01/03/95 | 09/05/95 | 11/28/95 | 11/28/15 | 9 |
| MAXIM | CAO-0281-T/ | 78/133588 | | | Suspended | United States of America | 06/06/02 | | | | 9 |
| MERLIN | 98-2152/ | 75/619697 | | 2437505 | Registered | United States of America | 01/12/99 | 01/11/00 | 03/20/01 | 03/20/11 | 9 |
| METALIKS | CAO-0187-T/ | 76/328698 | | 2748326 | Registered | United States of America | 10/19/01 | 07/02/02 | 08/05/03 | 08/05/13 | 9 |
| MINI CONFORM | CAO-0376-T/ | 78/155922 | | 2986088 | Registered | United States of America | 08/20/02 | 03/25/03 | 08/16/05 | 08/16/15 | 9 |
| MINIMIZER | CAO-0069-T/ | 75/871537 | | 2476659 | Registered | United States of America | 12/14/99 | | 08/07/01 | 08/07/11 | 2 |
| MISCELLANEOUS DESIGN (headsets) | CAO-0112-T/ | 76/147781 | | 2626872 | Registered | United States of America | 10/16/00 | | 09/24/02 | 09/24/12 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294459

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 74/653521 | | 2068330 | Registered | United States of America | 03/30/95 | 03/18/97 | 06/10/97 | 06/10/97 | 10 |
| MISCELLANEOUS DESIGN (yellow for earplugs) | 95-1166/ | 593430 | | 1435400 | Registered | United States of America | 04/14/86 | | 04/07/87 | 04/07/17 | 10 |
| M-TAC | CAO-0683-T/ | 78/465485 | | 3298808 | Registered | United States of America | 08/11/04 | 07/05/05 | 09/25/07 | 09/25/17 | 9 |
| NASSAU PLUS | 96-1331/ | 126748 | | 2121057 | Registered | United States of America | 06/28/96 | 05/06/97 | 12/16/97 | 12/16/07 | 9 |
| NASSAU RAVE | 98-1919/ | 75/577112 | | 2482934 | Registered | United States of America | 10/26/98 | 01/04/00 | 08/28/01 | 08/28/11 | 9 |
| NASSAU VIBRANCE | CAO-0079-T/ | 75/937202 | | 2557024 | Registered | United States of America | 03/07/00 | 12/12/00 | 04/02/02 | 04/02/12 | 9 |
| NEXA | CAO-0878-T/ | 78/621347 | | | Allowed | United States of America | 05/02/05 | 01/31/06 | | | 9 |
| NEXT | CAO-0414-T/ | 78/277789 | | 2950152 | Registered | United States of America | 07/23/03 | 03/30/04 | 05/10/05 | 05/10/15 | 9 |
| NITRO | CAO-0496-T/ | 78/296190 | | 2973705 | Registered | United States of America | 09/04/03 | 05/25/04 | 07/19/05 | 07/19/15 | 9 |
| NITROUS | CAO-0887-T/ | 78/624873 | | | Allowed | United States of America | 05/06/05 | 07/17/07 | | | 9 |
| NOISE FILTER | 96-1221/ | 75/106308 | | 2049153 | Registered | United States of America | 05/20/96 | 01/07/97 | 04/01/97 | 04/01/17 | 10 |
| NOISE NAVIGATOR | CAO-1147-T/ | 78/827442 | | 3310154 | Registered | United States of America | 03/02/06 | | 10/09/07 | 10/09/17 | 9 |
| NO-TOUCH | CAO-0484-T/ | 78/351750 | | 3074417 | Registered | United States of America | 01/14/04 | 10/19/04 | 03/28/06 | 03/28/16 | 9 |
| NUVO | CAO-0343-T/ | 78/133596 | | 2799264 | Registered | United States of America | 06/06/02 | 11/26/02 | 12/23/03 | 12/23/13 | 9 |
| ONE TOUCH | CAO-1139-T/ | 78/796805 | | | Published | United States of America | 01/23/06 | 08/28/07 | | | 9 |
| OPTIME | CAO-0891-T/ | 78/796789 | | | Published | United States of America | 01/23/06 | 09/04/07 | | | 9 |

- 7 -

Confidential - Subject to Protective Order

3M_MDL000294460

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ORDNANCE | CAO-1171-T/ | 78/903809 | | | Abandoned | United States of America | 06/08/06 | 01/02/07 | | | | 9 |
| ORDNANCE | CAO-1412-T/ | 77/048813 | | | Pending | United States of America | 11/21/06 | | | | | 9 |
| PATROL | CAO-1012-T/ | 78/693699 | | | Allowed – SOU filed | United States of America | 08/16/05 | 01/10/06 | | | | 9 |
| PELTOR | 96-1503/ | 471234 | | 1342201 | Registered | United States of America | 03/20/84 | | 06/18/85 | 06/18/15 | | 9 |
| PELTOR ACOUSTICS | CAO-1055-T/ | 78/796819 | | 3219770 | Registered | United States of America | 01/23/06 | 01/02/07 | 03/20/07 | 03/20/17 | | 9 |
| PELTOR CIRRUS | CAO-0076-T/ | 75/933240 | | 2640316 | Registered | United States of America | 03/02/00 | 11/13/01 | 10/22/02 | 10/22/12 | | 9 |
| PIRANHA | CAO-1202-T/ | 78/903858 | | | Allowed | United States of America | 06/08/06 | 01/02/07 | | | | 9 |
| PLEATS PLUS | CAO-0074-T/ | 75/914245 | | 2584353 | Registered | United States of America | 02/09/00 | 10/09/01 | 06/25/02 | 06/25/12 | | 9 |
| POCKET DOCTOR | 94-1257/ | 559992 | | 1986203 | Renewed | United States of America | 08/11/94 | 05/23/95 | 07/09/96 | 07/09/16 | | 5 |
| POD PLUGS | CAO-1418-T/ | 77/053114 | | 3285239 | Registered | United States of America | 11/29/06 | 06/12/07 | 08/28/07 | 08/28/17 | | 9 |
| POD PLUGS (Supplemental) | 95-1013/ | 633093 | | 2020017 | Registered | United States of America | 02/13/95 | | 11/26/96 | 11/26/16 | | 9 |
| POWERCOM PLUS | CAO-0179-T/ | 76/304576 | | 2845506 | Registered | United States of America | 08/24/01 | 06/03/03 | 05/25/04 | 05/25/14 | | 9 |
| PowerLink | CAO-0567-T/ | 78/529701 | | | Allowed | United States of America | 12/09/04 | 12/19/06 | | | | 9 |
| PRIVO | CAO-1088-T/ | 78/769202 | | | Allowed – SOU accepted | United States of America | 12/08/05 | 01/30/07 | | | | 9 |
| PROTECTING AND ENHANCING YOUR LIFESTYLE | CAO-0854-T/ | 78/624790 | | | Allowed | United States of America | 05/06/05 | 04/03/07 | | | | 5,9,11,17,20,21 |
| PTL | CAO-0576-T/ | 78/437831 | | 3094085 | Registered | United States of America | 06/18/04 | 05/03/05 | 05/16/06 | 05/16/16 | | 9 |

Confidential - Subject to Protective Order

3M_MDL000294461

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| QUANTUM | 97-1740/ | 75/344822 | | 2330134 | Registered | United States of America | 08/21/97 | 01/19/99 | 03/14/00 | 03/14/10 | 9 |
| QUICKFIT | CAO-0364-T/ | 78/215808 | | 3006393 | Registered | United States of America | 02/18/03 | 10/21/03 | 10/11/05 | 10/11/15 | 9 |
| QUICKLATCH | CAO-0108-T/ | 76/113427 | | 2568625 | Registered | United States of America | 08/21/00 | | 05/07/02 | 05/07/12 | 9 |
| QUICKLATCH (stylized) | CAO-0163-T/ | 76/270937 | | 2629523 | Registered | United States of America | 06/13/01 | | 10/01/02 | 10/01/12 | 9 |
| QUICK-SNAP | CAO-0164-T/ | 76/279607 | | 2610959 | Registered | United States of America | 07/03/01 | | 08/20/02 | 08/20/12 | 9 |
| RACETUNES | CAO-0326-T/ | 78/144563 | | 2863625 | Registered | United States of America | 07/17/02 | 01/21/03 | 07/13/04 | 07/13/14 | 9 |
| RADICA | CAO-0702-T/ | 78/663844 | | 3248429 | Registered | United States of America | 07/05/05 | 03/21/06 | 05/29/07 | 05/29/17 | 9 |
| REFLEX | 97-1589/ | 75/326271 | | 2560769 | Registered | United States of America | 07/17/97 | 01/22/02 | 04/16/02 | 04/16/12 | 9 |
| RIVET | CAO-0607-T/ | 78/446734 | | 3099133 | Registered | United States of America | 07/07/04 | 06/14/05 | 05/30/06 | 05/30/16 | 9 |
| SAFEAIR | CAO-0512-T/ | 78/321735 | | | Suspended | United States of America | 10/31/03 | | | | 9 |
| SAFECLAW | CAO-0500-T/ | 78/300770 | | 3012065 | Registered | United States of America | 09/16/03 | 06/08/04 | 11/01/05 | 11/01/15 | 9 |
| SAFEDESCENT | CAO-1156-T/ | 78/903890 | | | Published | United States of America | 06/08/06 | 09/11/07 | | | 9 |
| SAFETY DESIGNED FOR WOMEN | CAO-0871-T/ | 78/629722 | | | Pending | United States of America | 05/13/05 | | | | 9 |
| SAFEWAZE | CAO-0442-T/ | 78/263187 | | 2844950 | Registered | United States of America | 06/17/03 | 03/02/04 | 05/25/04 | 05/25/14 | 9 |
| SALVO | CAO-1106-T/ | 78/830759 | | | Allowed | United States of America | 03/07/06 | 06/27/06 | | | 9 |
| SEAHAWK | CAO-1289-T/ | 78/903884 | | | Pending | United States of America | 06/08/06 | | | | 9 |

Confidential - Subject to Protective Order

3M_MDL000294462

| SECURE GRIP | CAO-0260-T/ | 76/393438 | | 2943129 | Registered | United States of America | 04/08/02 | 10/29/02 | 04/19/05 | 04/19/15 | 9 |
| SEEPRO | 95-1614/ | 33197 | | 2072780 | Registered | United States of America | 12/15/95 | 10/08/96 | 06/17/97 | 06/17/17 | 9 |
| SELECT | CAO-0862-T/ | 78/629748 | | | Allowed – SOU accepted | United States of America | 05/13/05 | 10/10/06 | | | 9 |
| SHIFT | CAO-1045-T/ | 78/730095 | | | Allowed | United States of America | 10/10/05 | 12/12/06 | | | 9 |
| SHOPLYNE | CAO-0584-T/ | 78/482959 | | | Allowed | United States of America | 09/14/04 | 11/01/05 | | | 9 |
| SHOTGUNNER | CAO-0499-T/ | 78/377983 | | 2962538 | Registered | United States of America | 03/03/04 | 03/22/05 | 06/14/05 | 06/14/15 | 9 |
| SIMPLICITY | CAO-0749-T/ | 78/527575 | | | Abandoned | United States of America | 12/06/04 | 10/18/05 | | | 9 |
| SIM-U-SIL | CAO-0808-T/ | 78/620280 | | 3206848 | Registered | United States of America | 04/29/05 | 01/24/06 | 02/06/07 | 02/06/17 | 17 |
| SINGULAR | CAO-1008-T/ | 78/667462 | | | Allowed | United States of America | 07/11/05 | 04/04/06 | | | 9 |
| SKULL SCREWS | CAO-1168-T/ | 78/834012 | | | Allowed – SOU accepted | United States of America | 03/10/06 | 10/17/06 | | | 9 |
| Smart-Lens | CAO-0686-T/ | 78/474779 | | | Allowed | United States of America | 08/27/04 | 07/12/05 | | | 9 |
| SPLASHMASTER | 95-1386/ | 163359 | | 1103807 | Renewed | United States of America | 03/23/78 | | 10/10/78 | 10/10/08 | 9 |
| SPORT GRIP | CAO-0261-T/ | 76/393439 | | 2851462 | Registered | United States of America | 04/08/02 | 11/12/02 | 06/08/04 | 06/08/14 | 9 |
| SPORTTUNES | CAO-0526-T/ | 78/529719 | | | Allowed | United States of America | 12/09/04 | 03/14/06 | | | 9 |
| STOW-A-WAY | CAO-0498-T/ | 78/377971 | | 2933198 | Registered | United States of America | 03/03/04 | 12/21/04 | 03/15/05 | 03/15/15 | 9 |
| STRATOSPHERE | 98-1387/ | 75/475587 | | 2379930 | Registered | United States of America | 04/28/98 | 03/09/99 | 08/22/00 | 08/22/10 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294463

| SUPERCOTE | CAO-0419-T/ | 78/233687 | | 2937132 | Registered | United States of America | 04/03/03 | | 03/29/05 | 03/29/15 | 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SUPERFIT | CAO-0077-T/ | 75/931467 | | 2592428 | Registered | United States of America | 02/28/00 | 11/28/00 | 07/09/02 | 07/09/12 | 9 |
| SUPERSHEET | CAO-1162-T/ | 78/826320 | | 3193658 | Registered | United States of America | 03/01/06 | 10/17/06 | 1/02/07 | 1/02/17 | 17 |
| SUPERSHEET (SUPPLEMENTAL REGISTER) | 97-2050/ | 75/403252 | | 2291661 | Registered | United States of America | 12/10/97 | | 11/09/99 | 11/09/09 | 17 |
| SWERVE | CAO-0601-T/ | 78/446730 | | | Allowed | United States of America | 07/07/04 | 06/07/05 | | | 9 |
| TACTICAL SPORT | CAO-0503-T/ | 78/309863 | | 3107572 | Registered | United States of America | 10/06/03 | 02/01/05 | 06/20/06 | 06/20/16 | 9 |
| TACTILE-FIT | CAO-1257-T/ | 78/868668 | | | Allowed – SOU accepted | United States of America | 04/25/06 | 10/31/06 | | | 9 |
| TAPERFIT | 95-1388/ | 248443 | | 1727353 | Registered | United States of America | 02/21/92 | | 10/27/92 | 10/27/12 | 10 |
| TATTOO | CAO-0654-T/ | 78/462648 | | 3136761 | Registered | United States of America | 08/05/04 | 06/28/05 | 08/29/06 | 08/29/16 | 9 |
| TEAMTRACKER | CAO-0763-T/ | 78/504228 | | | Allowed | United States of America | 10/22/04 | 07/25/06 | | | 9 |
| TEAR-N-WEAR | CAO-0479-T/ | 78/327436 | | 2990470 | Registered | United States of America | 11/13/03 | 09/21/04 | 08/30/05 | 08/30/15 | 9 |
| THE YELLOW PLUG | CAO-0581-T/ | 78/416103 | | 3151702 | Registered | United States of America | 05/10/04 | 10/11/05 | 10/03/06 | 10/03/16 | 9 |
| THE YELLOW PLUG AND DESIGN | CAO-0582-T/ | 78/421247 | | | Registered | United States of America | 05/19/04 | 10/11/05 | 04/24/07 | 04/24/17 | 9 |
| THOR 3D | CAO-1132-T/ | 78/832019 | | | Allowed | United States of America | 03/08/06 | 06/26/07 | | | 9 |
| THRUST | CAO-0964-T/ | 78/730525 | | | Allowed | United States of America | 10/11/05 | 06/27/06 | | | 9 |
| TIDE BREAKER | 95-1380/ | 799443 | | 1576251 | Renewed | United States of America | 05/08/89 | | 01/09/90 | 01/09/10 | 10 |

- 11 -

Confidential - Subject to Protective Order

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| TORSION-LOCK | CAO-0531-T/ | 78/351752 | | 3083537 | Registered | United States of America | 01/14/04 | 10/26/04 | 04/18/06 | 04/18/16 | 9 |
| TOUR-GUARD | 90-1238/ | 338026 | | 894112 | Renewed | United States of America | 09/16/69 | | 07/07/70 | 07/07/10 | 9 |
| TRIBAND | CAO-0796-T/ | 78/622981 | | 3082702 | Registered | United States of America | 05/04/05 | 01/24/06 | 04/18/06 | 04/18/16 | 9 |
| TRI-FLANGE (SUPPLEMENTAL REGISTER) | CAO-0485-T/ | 78/510792 | | 3024876 | Registered | United States of America | 11/03/04 | | 12/06/05 | 12/06/15 | 9 |
| TUFCOTE | CAO-1021-T/ | 72/220414 | | 819682 | Registered | United States of America | 06/04/65 | | 12/06/66 | 12/06/16 | 1 |
| TUFCOTE-FOAM | CAO-0313-T/ | 72/124383 | | 732612 | Renewed | United States of America | 07/20/61 | | 06/12/62 | 06/12/12 | 17 |
| TUFshield | CAO-1155-T/ | 78/838919 | | | Allowed – SOU accepted | United States of America | 03/16/06 | 10/17/06 | | | 17 |
| TWIN CUP | 98-1246/ | 392170 | | 1876390 | Registered | United States of America | 05/19/93 | | 01/31/95 | 01/31/15 | 9, 10 |
| ULTRA 9000 | 95-1164/ | 729546 | | 1557796 | Registered | United States of America | 05/18/88 | | 09/26/89 | 09/26/09 | 10 |
| ULTRAFIT | 95-1233/ | 594261 | | 1418268 | Registered | United States of America | 04/18/86 | | 11/25/86 | 11/25/16 | 10 |
| ULTRAFIT PLUS | CAO-0109-T/ | 76/130827 | | 2672836 | Registered | United States of America | 09/19/00 | 08/07/01 | 01/07/03 | 01/07/13 | 9 |
| UNISTAR | CAO-0158-T/ | 76/245266 | | 2512751 | Registered | United States of America | 04/23/01 | 09/04/01 | 11/27/01 | 11/27/11 | 9 |
| VALOR | CAO-1099-T/ | 78/830770 | | | Allowed | United States of America | 03/07/06 | 06/27/06 | | | 9 |
| VERSADAMP | 99-1029/ | 75/628814 | | 2420561 | Registered | United States of America | 01/27/99 | 06/20/00 | 01/16/01 | 01/16/11 | 17 |
| VIRTUA | CAO-0332-T/ | 78/133444 | | 2849294 | Registered | United States of America | 06/06/02 | 05/27/03 | 06/01/04 | 06/01/14 | 9 |
| VISCOLAS | 95-1006/ | 793538 | | 1602287 | Renewed | United States of America | 04/17/89 | | 06/19/90 | 06/19/10 | 17 |

- 12 -

Confidential - Subject to Protective Order

3M_MDL000294465

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| VISCOLAS (stylized) | 95-1377/ | 551370 | | 1381207 | Registered | United States of America | 08/02/85 | | 02/04/86 | 02/04/16 | 10 |
| VISIUM | CAO-1125-T/ | 78/769187 | | | Allowed | United States of America | 12/08/05 | 06/27/06 | | | 9 |
| VORTEX | CAO-0556-T/ | 78/380686 | | | Allowed | United States of America | 03/09/04 | 05/03/05 | | | 9 |
| V-RAD | CAO-0534-T/ | 78/504518 | | | Allowed | United States of America | 10/22/04 | 09/27/05 | | | 9 |
| WARTHOG | CAO-1248-T/ | 78/878927 | | | Allowed – SOU accepted | United States of America | 05/08/06 | 10/31/06 | | | 9 |
| WELD-COOL | 95-1384/ | 207019 | | 1152996 | Renewed | United States of America | 03/12/79 | | 05/05/81 | 05/05/11 | 9 |
| WHEN THE TRACK GOES GREEN, YOU GO YELLOW WITH AOSA | CAO-0086-T/ | 76/024059 | | 2970946 | Registered | United States of America | 04/12/00 | 05/13/03 | 07/19/05 | 07/19/15 | 9 |
| WORKTUNES | CAO-0116-T/ | 76/153835 | | 2632861 | Registered | United States of America | 10/25/00 | 08/21/01 | 10/08/02 | 10/08/12 | 9, 10 |
| X.SPORT (stylized) | CAO-0193-T/ | 76/328681 | | 2744110 | Registered | United States of America | 10/19/01 | 05/21/02 | 07/29/03 | 07/29/13 | 9 |
| X-FACTOR | CAO-0173-T/ | 76/296303 | | 2772253 | Registered | United States of America | 08/07/01 | 03/26/02 | 10/07/03 | 10/07/13 | 9 |
| X-IT | 94-1350/ | 617160 | | 1938773 | Registered | United States of America | 01/03/95 | 09/05/95 | 11/28/95 | 11/28/15 | 9 |
| XLR8 | CAO-0134-T/ | 76/174378 | | 2716259 | Registered | United States of America | 12/01/00 | 08/14/01 | 05/13/03 | 05/13/13 | 9 |
| YELLOW NEON BLASTS | CAO-0038-T/ | 75/701873 | | 2625514 | Registered | United States of America | 05/10/99 | 09/04/01 | 09/24/02 | 09/24/12 | 9 |
| YELLOW NEONS | CAO-0021-T/ | 75/667004 | | 2449846 | Registered | United States of America | 03/24/99 | 02/29/00 | 05/08/01 | 05/08/11 | 9 |
| ZORA | CAO-0284-T/ | 78/121074 | | 2952943 | Registered | United States of America | 04/11/02 | 04/27/04 | 05/17/05 | 05/17/15 | 9 |
| WS (Owned by Peltor AB) | | 78/338306 | | 3053103 | Registered | United States of America | 12/09/03 | 11/08/05 | 01/31/06 | 01/31/16 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294466

| RELOAD | CAO-1578-T | 77/266201 | | | Pending | United States of America | 08/28/2007 | | | | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Confidential - Subject to Protective Order

3M_MDL000294467

P-GEN-01196.260

AEARO TECHNOLOGIES INC.

Schedule 3.12(g)
Foreign Trademarks

A list of foreign issued trademark registrations and pending trademark applications,
consisting of thirty-four (34) pages, is attached hereto.

| Trademark Name | Matter # | Appl. # | Publ. # | Reg. # | TM Status | Country Name | File Date | Publ. Date | Reg. Date | Next Renewal Date | Class |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AEARO | 96-1310/ | 800370 | | 800370 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| AEARO | 96-1310/ | 3998827 | | | Pending | China (Peoples Republic) | 04/06/04 | | | | 9 |
| AEARO | CAO-1452-T/ | 3934625 | | 3934625 | Registered | China (Peoples Republic) | 03/01/04 | | 08/07/05 | 08/06/15 | 10 |
| AEARO | CAO-1453-T/ | 3934624 | | | Pending | China (Peoples Republic) | 03/01/04 | | | | 9 |
| AEARO | 96-1310/ | 360313 | | 360313 | Registered | European Community | 09/02/96 | | 10/23/98 | 09/02/16 | 9 |
| AEARO | 96-1310/ | 1336176 | | | Published | India | 02/03/05 | 07/01/06 | | | 9 |
| AEROSITE | 95-1353/ | 824461134 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| ALERT | CAO-0441-T/ | 1186242 | | 617044 | Registered | Canada | 07/30/03 | | 08/19/04 | 08/19/19 | |
| AOSAFETY | 91-1163/ | 3998828 | | | Pending | China (Peoples Republic) | 04/06/04 | | | | 9 |
| AOSAFETY | CAO-1474-T/ | 3934622 | | | Pending | China (Peoples Republic) | 03/01/04 | | | | 9 |
| AQUAFIT | 96-1217/ | | | 474659 | Renewed | Benelux | | | 04/17/90 | 04/17/10 | 9, 10 |
| AQUAFIT | 96-1217/ | | | 116399 | Renewed | Finland | | | 01/20/92 | 01/20/12 | 10 |
| AQUAFIT | 96-1217/ | | | 1589322 | Registered | France | | | 04/30/90 | 04/30/10 | 10 |

Confidential - Subject to Protective Order

3M_MDL000294469

P-GEN-01196.262

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AQUAFIT | 96-1217/ | | | 1180975 | Renewed | Germany | | | 04/24/90 | 04/24/10 | 9 |
| AQUAFIT | 96-1217/ | 98849 | | 98849 | Renewed | Greece | | | 05/03/90 | 05/03/10 | 10 |
| AQUAFIT | 96-1217/ | | | 585349 | Renewed | Italy | | | 06/28/90 | 06/28/10 | 10 |
| AQUAFIT | 96-1217/ | | | 1421904 | Renewed | United Kingdom | | | 04/11/87 | 04/11/17 | 9 |
| AQUAFIT JUNIOR | 96-1218/ | | | 474658 | Renewed | Benelux | | | 04/17/90 | 04/17/10 | 9, 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 03538-1991 | Renewed | Denmark | | | 06/07/91 | 06/07/11 | 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 117718 | Renewed | Finland | | | 03/20/92 | 03/20/12 | 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 1589318 | Registered | France | | | 04/30/90 | 04/30/10 | 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 1181231 | Renewed | Germany | | | 04/24/90 | 04/24/10 | 9 |
| AQUAFIT JUNIOR | 96-1218/ | 98847 | | 98847 | Renewed | Greece | | | 05/03/90 | 05/03/10 | 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 585348 | Renewed | Italy | | | 06/28/90 | 06/28/10 | 10 |
| AQUAFIT JUNIOR | 96-1218/ | | | 1421822 | Renewed | United Kingdom | | | 04/11/87 | 04/11/17 | 9 |
| ASPECT | 95-1032/ | | | 485870 | Renewed | Benelux | | | 12/12/90 | 12/12/10 | 9 |
| ASPECT | 95-1032/ | | | 2062310 | Renewed | Germany | | | 01/11/91 | 01/11/11 | 9 |
| ASPECT | 95-1032/ | 558 | | 620888 | Renewed | Italy | 01/28/91 | | 06/08/94 | 01/28/11 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294470

| AUSSIE BLASTS | CAO-0070-T/ | 816482 | | 816482 | Registered | Australia | 12/07/99 | | 12/07/99 | 12/07/09 | |
| BLASTS (earplugs) | CAO-0039-T/ | 800620 | | 800620 | Registered | Australia | 07/16/99 | | 07/16/99 | 07/16/09 | |
| CABOFLEX | 93-1355/ | | | A450611 | Registered | Australia | | | 08/20/93 | 08/20/07 | 10 |
| CABOFLEX | 93-1355/ | | | 114782 | Registered | Austria | | | 12/15/86 | 12/15/16 | 10 |
| CABOFLEX | 93-1355/ | | | 812824733 | Renewed | Brazil | | | 07/26/88 | 07/26/08 | 9 |
| CABOFLEX | 93-1355/ | | | 336162 | Renewed | Canada | | | 01/08/88 | 01/08/18 | N/A |
| CABOFLEX | 93-1355/ | | | 00577/1988 | Renewed | Denmark | | | 01/29/88 | 01/29/08 | 10 |
| CABOFLEX | 93-1355/ | | | 101638 | Renewed | Finland | | | 05/20/88 | 05/20/08 | 10 |
| CABOFLEX | 93-1355A2/ | | | 1036353 | Renewed | Germany | | | 10/16/91 | 10/16/11 | 9, 17 |
| CABOFLEX | 93-1355/ | 8515 | | 764251 | Registered | Italy | | | 10/16/96 | 10/16/16 | 10 |
| CABOFLEX | 93-1355/ | | | 2101582 | Renewed | Japan | | | 12/19/87 | 12/19/08 | 1 |
| CABOFLEX | 93-1355/ | | | 132536 | Renewed | Norway | | | 06/23/88 | 06/23/08 | 10 |
| CABOFLEX | 93-1355/ | | | 350328 | Registered | Switzerland | | | 02/12/96 | 02/12/16 | 10 |
| CABOFLEX | 93-1355/ | | | 1274316 | Registered | United Kingdom | | | 08/13/86 | 08/13/17 | 10 |
| CENTURION | 90-1292/ | 8244461061 | | | Pending | Brazil | 03/25/02 | | | | IC 009 US 026. |

3

Confidential - Subject to Protective Order

3M_MDL000294471

| CITADEL | CAO-1205-T/ | 4990487 | | 4990487 | Registered | European Community | 03/16/06 | 09/18/06 | 02/12/07 | 03/16/16 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CLASSIC | 95-1009/ | 712780 | | 712780 | Registered | Australia | 07/15/96 | | 07/15/96 | 07/15/16 | 9 |
| CLASSIC | 95-1009/ | 824472411 | | | Pending | Brazil | 04/04/02 | | | | N/A |
| CONFOR | 95-1423/ | 792555 | | 468599 | Registered | Canada | 09/12/95 | | 01/14/97 | 01/14/12 | 1 |
| CONFOR | 95-1423/ | 3746566 | | 3746566 | Registered | China (Peoples Republic) | 10/09/03 | 04/14/05 | 07/14/05 | 07/13/15 | |
| CONFOR | 95-1423/ | 06798/1995 | | 01239/1996 | Registered | Denmark | 09/11/95 | | 03/01/96 | 03/01/16 | 17 |
| CONFOR | 95-1423/ | 95587841 | | 95587841 | Registered | France | | | 09/13/95 | 09/13/15 | 10, 17, 28 |
| CONFOR | 95-1423/ | 39537733.1 | | 39537733 | Registered | Germany | 09/14/95 | | 04/30/96 | 09/14/15 | 17 |
| CONFOR | 95-1423/ | 1220510 | | 1220510 | Registered | India | 08/05/03 | | 08/05/03 | 08/05/13 | |
| CONFOR | 95-1423/ | 8-120108 | | 4226467 | Registered | Japan | 05/22/97 | | 01/08/99 | 01/08/09 | 17 |
| CONFOR | 95-1423/ | 200334453 | | 40-653191 | Registered | Korea, Republic of | 07/31/03 | | 03/02/06 | 03/02/16 | 17 |
| CONFOR | 95-1423/ | 200309963 | | 3009963 | Registered | Malaysia | 08/07/03 | | 06/16/06 | 08/07/13 | 17 |
| CONFOR | 95-1423/ | 244443 | | 534326 | Registered | Mexico | 09/29/95 | | 10/28/96 | 09/29/15 | 17 |
| CONFOR | 95-1423/ | 12011 | | 12011 | Registered | Singapore | 08/06/03 | | 08/06/03 | 08/06/13 | 17 |
| CONFOR | 95-1423/ | 95-10340 | | 311508 | Registered | Sweden | 09/18/95 | | 04/12/96 | 04/12/16 | 17 |

4

| CONFOR | 95-1423/ | 92048410 | | 1106567 | Registered | Taiwan | 08/08/03 | | 06/16/04 | 06/15/14 | |
| CONFOR | 95-1423/ | 531890 | | 197505 | Registered | Thailand | 09/30/03 | | 09/30/03 | 09/29/13 | |
| CONFOR | 95-1423/ | 2033244 | | 2033244 | Registered | United Kingdom | 09/12/95 | | 09/12/95 | 09/12/15 | 17 |
| CONFOR | 95-1423/ | 4-2003-08801 | | 59671 | Registered | Viet Nam | 09/25/03 | | 01/11/05 | 09/25/13 | 17 |
| CREWCOM | CAO-0386-T/ | 1161768 | | | Pending | Canada | 12/10/02 | | | | |
| CUSTOM E-A-R | CAO-1518-T/ | 1183924 | | | Pending | Australia | 06/27/07 | | | | 9 |
| CUSTOM E-A-R | CAO-1520-T/ | 771176 | | | Pending | New Zealand | 06/27/07 | | | | 9 |
| CUSTOM E-A-R | CAO-1519-T/ | 200713803 | | | Pending | South Africa | 07/02/2007 | | | | 9 |
| DURALITE | 90-1378/ | 1111956 | | 579817 | Registered | Canada | 08/08/01 | | 04/25/03 | 04/25/18 | 76 |
| E Z FIT | CAO-1161-T/ | 1319156 | | | Pending | Canada | 10/06/06 | | | | N/A |
| EAR | 92-1089A1/ | | | 71711 | Renewed | Finland | | | 01/21/90 | 01/21/10 | 17 |
| E-A-R | 92-1089/ | | | B264910 | Renewed | Australia | 01/10/73 | | 09/10/75 | 01/10/08 | 17 |
| E-A-R | 92-1089/ | | | 79326 | Registered | Austria | | | 03/31/95 | 03/31/15 | 10, 17 |
| E-A-R | 92-1089A1/ | | | 375074 | Renewed | Benelux | | | 06/11/91 | 06/11/11 | 9, 10 |
| E-A-R | 92-1089A2/ | | | 315458 | Registered | Benelux | | | 01/05/93 | 01/05/13 | 17 |

Confidential - Subject to Protective Order

3M_MDL000294473

| E-A-R | 92-1089/ | | | 810837854 | Renewed | Brazil | | | 09/27/93 | 09/27/13 | 9 |
|-------|----------|---|---|-----------|---------|--------|---|---|----------|----------|---|
| E-A-R | 92-1089/ | 358321 | | 477537 | Registered | Chile | | | 01/21/97 | 01/21/17 | 10 |
| E-A-R | 92-1089/ | 4356381 | | | Pending | China (Peoples Republic) | 11/10/04 | | | | |
| E-A-R | 92-1089A1/ | | | 01196-1982 | Renewed | Denmark | | | 03/19/92 | 03/19/12 | 9, 10 |
| E-A-R | 92-1089A2/ | | | 758 | Registered | Denmark | | | 03/22/94 | 03/22/14 | 17 |
| E-A-R | 92-1089A2/ | | | 87872 | Renewed | Finland | | | 01/20/94 | 01/20/14 | 10 |
| E-A-R | 92-1089/ | | | 1192449 | Renewed | France | | | 01/14/92 | 01/14/12 | 10 |
| E-A-R | 92-1089/ | | | 921619 | Renewed | Germany | | | 07/02/93 | 07/02/13 | 17 |
| E-A-R | 92-1089/ | 107814 | | 107814 | Renewed | Greece | 02/18/92 | | 02/18/92 | 02/18/12 | 10 |
| E-A-R | 92-1089A1/ | | | 62499 | Registered | Israel | | | 01/02/93 | 01/02/21 | 10 |
| E-A-R | 92-1089A2/ | 40552 | | 40552 | Renewed | Israel | 03/31/89 | | 03/31/89 | 03/31/10 | 17 |
| E-A-R | 92-1089A1/ | 11801 | | 391984 | Renewed | Italy | 11/22/01 | | 11/03/91 | 11/03/11 | 9, 10 |
| E-A-R | 92-1089A2/ | | | 655342 | Renewed | Italy | | | 12/29/72 | 12/29/12 | 17 |
| E-A-R | 92-1089A1/ | | | 2217908 | Renewed | Japan | | | 06/27/90 | 03/27/10 | 1 |
| E-A-R | 92-1089/ | | | 275404 | Renewed | Mexico | 10/30/91 | | 10/30/91 | 10/30/11 | 9, 10, 21 |

6

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| E-A-R | 92-1089A1/ | | | 119178 | Registered | Norway | | | 11/22/94 | 11/22/14 | 10 |
| E-A-R | 92-1089A2/ | | | 91809 | Registered | Norway | | | 10/03/94 | 10/03/14 | 17 |
| E-A-R | 92-1089/ | 104722 | | 81338 | Renewed | Russian Federation | | | 08/26/86 | 08/26/16 | 10 |
| E-A-R | 92-1089/ | | | 745721 | Renewed | Spain | 03/14/74 | | 03/03/76 | 03/14/14 | 17 |
| E-A-R | 92-1089/ | | | 189136 | Renewed | Sweden | | | 12/02/93 | 12/02/13 | 9 |
| E-A-R | 92-1089A1/ | | | 350456 | Registered | Switzerland | | | 08/12/96 | 08/12/16 | 10 |
| E-A-R | 92-1089A2/ | | | 264441 | Renewed | Switzerland | | | 05/14/93 | 05/14/13 | 17 |
| E-A-R | 92-1089/ | | | 136691 | Registered | Venezuela | | | 11/07/93 | 11/07/13 | 10 |
| E-A-R (stylized) | 95-1365/ | | | 193893 | Renewed | Canada | | | 09/07/88 | 09/07/18 | N/A |
| E-A-R and design | 92-1087/ | | | 98577 | Renewed | Austria | | | 01/31/92 | 01/31/12 | 9, 10 |
| E-A-R AND DESIGN | 92-1087/ | | | 375075 | Renewed | Benelux | | | 06/11/91 | 06/11/11 | 9, 10 |
| E-A-R AND DESIGN | 92-1087/ | | | 810837846 | Renewed | Brazil | | | 09/27/93 | 09/27/13 | 9 |
| E-A-R AND DESIGN | 92-1087/ | | | 337550 | Renewed | Canada | | | 02/26/88 | 02/26/18 | N/A |
| E-A-R AND DESIGN | 92-1087/ | | | 01514/1982 | Renewed | Denmark | | | 04/16/82 | 04/16/12 | 9, 10 |
| E-A-R AND DESIGN | 92-1087/ | | | 1192447 | Renewed | France | | | 01/14/92 | 01/14/12 | 10 |

Confidential - Subject to Protective Order

3M_MDL000294475

P-GEN-01196.268

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| E-A-R AND DESIGN | 92-1087A/ | | | 1227897 | Renewed | France | | | 12/07/82 | 12/07/12 | 10 |
| E-A-R AND DESIGN | 92-1087A1/ | | | 643890 | Renewed | Germany | | | 08/25/81 | 08/25/11 | 9, 10 |
| E-A-R and design | 92-1087A1/ | | | 447007B | Renewed | India | | | 12/18/92 | 12/18/16 | 10 |
| E-A-R and design | 92-1087A2/ | | | 447008 | Renewed | India | | | 12/18/92 | 12/18/16 | 17 |
| E-A-R and design | 92-1087A1/ | | | 2172557 | Renewed | Japan | | | 09/29/90 | 09/29/09 | 1 |
| E-A-R AND DESIGN | 92-1087/ | | | 280727 | Renewed | Mexico | 10/30/91 | | 10/30/91 | 10/30/11 | 9, 10, 21 |
| E-A-R AND DESIGN | 92-1087/ | B167729 | | B167729 | Renewed | New Zealand | 09/15/86 | | 09/15/86 | 09/15/07 | 10 |
| E-A-R AND DESIGN | 92-1087/ | | | 118195 | Registered | Norway | | | 08/24/94 | 08/23/14 | 9, 10 |
| E-A-R and design | 92-1087A1/ | | | 145974 | Renewed | Sweden | | | 02/08/94 | 02/08/14 | 17 |
| E-A-R and design | 92-1087A2/ | | | 189231 | Renewed | Sweden | | | 12/09/93 | 12/09/13 | 9 |
| E-A-R AND DESIGN | 92-1087/ | | | 351911 | Registered | Switzerland | | | 12/11/96 | 12/11/16 | 5 |
| E-A-R CAPS | 95-1367/ | | | 474526 | Renewed | Benelux | | | 04/17/90 | 04/17/10 | 10 |
| E-A-R CAPS | 95-1367/ | | | 123168 | Registered | Finland | | | 11/20/92 | 11/20/12 | 10 |
| E-A-R CAPS | 95-1367/ | | | 1589320 | Registered | France | | | 04/30/90 | 04/30/10 | 10 |
| E-A-R CAPS | 95-1367/ | | | 1189007 | Renewed | Germany | | | 04/24/90 | 04/24/10 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294476

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-A-R CAPS | 95-1367/ | 98850 | | 98850 | Renewed | Greece | | | 05/03/90 | 05/03/10 | 10 |
| E-A-R CAPS | 95-1367/ | | | 585347 | Renewed | Italy | | | 06/28/90 | 06/28/10 | 10 |
| E-A-R CAPS | 95-1367/ | 901959 | | 163405 | Renewed | Norway | 04/10/90 | | 06/30/94 | 06/30/14 | 10 |
| E-A-R CAPS | 95-1367/ | | | 263945 | Renewed | Portugal | | | 09/14/92 | 09/14/12 | 10 |
| E-A-R CAPS | 95-1367/ | | | 244712 | Renewed | Sweden | | | 12/30/92 | 12/30/12 | 10 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Australia | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Austria | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Benelux | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 900133147 | | | Published | Brazil | 12/21/06 | 04/10/07 | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 1328091 | | | Pending | Canada | 12/13/06 | | | | N/A |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | China (Peoples Republic) | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Denmark | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Finland | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | France | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Germany | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294477

| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 300867376 | | | Published | Hong Kong | 05/09/07 | 06/29/07 | | | 40 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 1513413 | | | Pending | India | 12/14/06 | | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | A0006801 | 926251 | | Registered | Int'l Registration - Madrid Protocol Only | 12/22/06 | | 12/22/06 | 12/22/16 | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Ireland | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 195990 | | | Pending | Israel | 12/12/06 | | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Italy | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Japan | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Korea, Republic of | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 7000251 | | | Pending | Malaysia | 01/08/07 | | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 825323 | 975675 | | Registered | Mexico | 12/14/06 | | 03/08/07 | 12/14/16 | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 760580 | | | Pending | New Zealand | 12/12/06 | | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Singapore | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Spain | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Sweden | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Switzerland | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294478

| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 96021544 | | | Pending | Taiwan | 05/10/07 | | | | 40 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | 649755 | | | Pending | Thailand | 01/04/07 | | | | 40 |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | United Kingdom | | | | | |
| E-A-R SPECIALTY COMPOSITES | CAO-1347-T/ | | | | Madrid | Viet Nam | | | | | |
| E-A-R SPECIALTY COMPOSITES (Class 42) | CAO-1347-T/A1 | 7000252 | | | Pending | Malaysia | 01/08/07 | | | | 42 |
| E-A-R SPECIALTY COMPOSITES (Class 42) | CAO-1549-T/ | | | | Madrid | New Zealand | | | | | 42 |
| E-A-R SPECIALTY COMPOSITES (Class 42) | CAO-1347-T/A1 | 649756 | | | Pending | Thailand | 01/04/07 | | | | 42 |
| E-A-R TONE | 95-1370/ | | | 464876 | Renewed | Benelux | | | 06/21/89 | 06/21/09 | 10 |
| E-A-R TONE | 95-1370/ | | | 1620406 | Renewed | France | | | 06/22/89 | 06/22/09 | 10 |
| E-A-R TONE | 95-1370/ | | | 1176894 | Renewed | Germany | | | 09/30/89 | 09/30/09 | 9, 10 |
| E-A-R TONE | 95-1370/ | | | 2385000 | Renewed | Japan | | | 02/28/92 | 02/28/12 | 10 |
| E-A-R TONE | 95-1370/ | | | 227570 | Renewed | Sweden | | | 11/08/91 | 11/08/11 | 10 |
| EARCOM | CAO-0549-T/ | 1206598 | TMA685258 | Registered | Canada | 02/17/04 | 07/05/06 | 03/30/07 | 03/30/22 | n/a |
| EARFIT | 95-1455/ | | | 474113 | Renewed | Benelux | | | 04/26/90 | 04/26/10 | 10 |
| EARFIT | 95-1455/ | | | 01428-1992 | Renewed | Denmark | | | 03/13/92 | 03/13/12 | 10 |

11

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| EARFIT | 95-1455/ | 98851 | 988851 | Renewed | Greece | | | 05/03/90 | 05/03/10 | 10 |
| EARFIT | 95-1455/ | | 147665 | Renewed | Norway | | | 11/21/91 | 11/21/11 | 10 |
| EARFIT | 95-1455/ | | 1422524 | Renewed | United Kingdom | | | 04/24/87 | 04/24/17 | 10 |
| E-A-RFIT | CAO-1522-T/ | | | Madrid | Australia | | | | | 9 |
| E-A-RFIT | CAO-1524-T/ | 829165487 | | Pending | Brazil | 07/03/2007 | | | | 9 |
| E-A-RFIT | CAO-1521-T/ | | | Madrid | China (Peoples Republic) | | | | | 9 |
| E-A-RFIT | CAO-1546-T/ | A0008661 | 932334 | Registered | Int'l Registration - Madrid Protocol Only | 06/26/07 | | 09/06/2007 | 06/26/2017 | 9 |
| E-A-RFIT | CAO-1523-T/ | 200713801 | | Pending | South Africa | 07/02/2007 | | | | 9 |
| E-A-RFLEX | CAO-0100-T/ | 843189 | 843189 | Registered | Australia | 07/20/00 | | 07/20/00 | 07/20/10 | 9 |
| E-A-RFLEX | CAO-0100-T/ | 824461177 | | Pending | Brazil | 03/25/02 | | | | 10 |
| E-A-RFLEX | CAO-0100-T/ | 4454864 | 4454864 | Registered | European Community | 05/25/05 | | 04/24/06 | 05/25/15 | 9 |
| E-A-RLINK | 95-1368/ | | 464877 | Renewed | Benelux | | | 06/21/89 | 06/21/09 | 10 |
| E-A-RLINK | 95-1368/ | | 1620407 | Renewed | France | | | 06/22/89 | 06/22/09 | 10 |
| E-A-RLINK | 95-1368/ | | 1167121 | Renewed | Germany | | | 09/30/89 | 09/30/09 | 10 |
| E-A-RLINK | 95-1368/ | | 2403276 | Renewed | Japan | | | 04/30/92 | 04/30/12 | 10 |

12

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-A-RLINK | 95-1368/ | | | 227569 | Renewed | Sweden | | | 11/08/91 | 11/08/11 | 10 |
| E-A-RSHROOMS | CAO-0043-T/ | 800621 | | 800621 | Registered | Australia | 07/16/99 | | 05/15/02 | 07/16/09 | |
| E-A-RSOFT | 99-1093/ | 800618 | | 800618 | Registered | Australia | 07/16/99 | | 05/15/02 | 07/16/09 | 9 |
| E-A-RSOFT | 99-1093/ | 824461185 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| E-A-RTECH | 96-1219/ | | | 480571 | Renewed | Benelux | | | 08/17/90 | 08/17/10 | 9 |
| E-A-RTECH | 96-1219/ | | | 07902/1992 | Renewed | Denmark | | | 08/21/92 | 08/21/12 | 10 |
| E-A-RTECH | 96-1219/ | | | 1187276 | Renewed | Germany | | | 08/31/90 | 08/31/10 | 9 |
| E-A-RTECH | 96-1219/ | | | 392842 | Registered | Switzerland | | | 08/13/90 | 08/13/10 | 9, 10 |
| E-A-RTRACERS | 94-1347/ | | | B504528 | Registered | Australia | | | 02/09/96 | 02/09/16 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 459790 | Renewed | Benelux | | | 01/31/89 | 01/31/09 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 03322-1991 | Renewed | Denmark | | | 05/31/91 | 05/31/11 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 113575 | Renewed | Finland | | | 09/05/91 | 09/05/11 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 1514098 | Renewed | France | 02/13/89 | | 07/28/89 | 02/13/09 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 1186723 | Renewed | Germany | | | 01/28/89 | 01/28/09 | 9 |
| E-A-RTRACERS | 94-1347/ | | | 160013 | Renewed | Ireland | | | 11/01/87 | 11/01/07 | 10 |

13

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E-A-RTRACERS | 94-1347/ | 652 | | 866939 | Renewed | Italy | 06/17/99 | | 03/24/89 | 03/24/09 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 141501 | Renewed | Norway | | | 05/31/90 | 05/31/10 | 9 |
| E-A-RTRACERS | 94-1347/ | | | 219537 | Renewed | Sweden | | | 11/23/90 | 11/23/10 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 369504 | Registered | Switzerland | 01/24/89 | | 01/24/89 | 01/24/09 | 10 |
| E-A-RTRACERS | 94-1347/ | | | 1369699 | Registered | United Kingdom | | | 01/11/96 | 01/11/16 | 10 |
| EARWHISPER (english) | 97-1756/ | | | 2013318 | Renewed | Japan | | | 01/26/80 | 01/26/08 | 1 |
| EARWHISPER (katakana) | 97-1756A/ | | | 2013319 | Renewed | Japan | | | 01/26/80 | 01/26/08 | 1 |
| ELAVATION | CAO-1324-T/ | 1332343 | | | Pending | Canada | 01/05/07 | | | | n/a |
| ESCAPE ARTIST | 95-1015/ | 824461142 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| EUROLITE | 92-1090/ | 824461126 | | | Pending | Brazil | 03/25/02 | | | | 9 IC 009. US 026. |
| EVP | CAO-1185-T/ | 1325839 | | | Pending | Canada | 11/27/06 | | | | 9 |
| EZ DROP | CAO-0152-T/ | 824461207 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| EZ-INS | CAO-1410-T/ | 5987003 | | | Pending | European Community | 06/11/07 | | | | 9 |
| FAHRENHEIT | CAO-0696-T/ | 1326193 | | | Pending | Canada | 11/29/06 | | | | N/A |
| FAHRENHEIT | CAO-0696-T/ | 4773586 | | 4773586 | Registered | European Community | 12/01/05 | | 11/17/06 | 12/01/15 | 9 |

14

3M_MDL000294482

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FAHRENHEIT | CAO-0696-T/ | A0006530 | | 907185 | Registered | Int'l Registration - Madrid Protocol Only | 11/28/06 | | 11/28/06 | 11/28/16 | 9 |
| FAHRENHEIT | CAO-0696-T/ | | | | Madrid | Norway | | | | | 9 |
| FAHRENHEIT | CAO-0696-T/ | | | | Madrid | Russian Federation | | | | | 9 |
| FAHRENHEIT | CAO-0696-T/ | | | | Madrid | Switzerland | | | | | 9 |
| GOGGLEGEAR | CAO-0025-T/ | 800617 | | 800617 | Registered | Australia | 07/16/99 | | 07/16/99 | 07/16/09 | 9 |
| GOGGLEGEAR | CAO-0025-T/ | 824470621 | | | Pending | Brazil | 04/01/02 | | | | 9 |
| GROUND HOG | CAO-1247-T/ | 1323331 | | | Pending | Canada | 11/07/06 | | | | 9 |
| HEAR WEAR | CAO-1285-T/ | | | | Madrid | European Community | | | | | 9 |
| HEAR WEAR | CAO-1285-T/ | A0006650 | | 912 090 | Registered | Int'l Registration - Madrid Protocol Only | 12/11/06 | | 12/11/06 | 12/11/16 | 9 |
| HEARFIT | 96-1220/ | 98848 | | 98848 | Renewed | Greece | 05/03/90 | | 05/03/90 | 05/03/10 | 10 |
| HYPNOSE | CAO-1204-T/ | 4990479 | | 4990479 | Registered | European Community | 03/16/06 | 09/11/06 | 02/12/07 | 03/16/16 | 9 |
| ISODAMP | 95-1023/ | | | 361675 | Renewed | Australia | | | 06/18/88 | 06/18/12 | 17 |
| ISODAMP | 95-1023/ | | | 374392 | Renewed | Benelux | | | 06/11/91 | 06/11/11 | 17 |
| ISODAMP | 95-1023/ | | | 810837838 | Renewed | Brazil | | | 09/27/93 | 09/27/13 | 17, 20 |
| ISODAMP | 95-1023/ | | | 274428 | Renewed | Canada | | | 12/03/82 | 12/03/12 | N/A |

15

| ISODAMP | 95-1023/ | 3746565 | 3746565 | Registered | China (Peoples Republic) | 10/09/03 | 04/14/05 | 07/14/05 | 07/13/15 | |
| ISODAMP | 95-1023/ | | 00686/1982 | Renewed | Denmark | | | 02/12/92 | 02/12/12 | 17 |
| ISODAMP | 95-1023/ | | 1192450 | Renewed | France | | | 01/14/92 | 01/14/12 | 17 |
| ISODAMP | 95-1023A1/ | | 1036945 | Renewed | Germany | | | 10/16/81 | 10/31/11 | 9, 17 |
| ISODAMP | 95-1023A2/ | | 1095621 | Renewed | Germany | 01/31/95 | | | 01/31/15 | 17 |
| ISODAMP | 95-1023/ | 107815 | 107815 | Renewed | Greece | 02/18/92 | | 02/18/92 | 02/18/12 | 17 |
| ISODAMP | 95-1023/ | 1220511 | 1220511 | Registered | India | 08/05/03 | | 03/16/06 | 08/05/13 | 17 |
| ISODAMP | 95-1023/ | | 52385 | Renewed | Israel | | | 06/18/95 | 06/18/16 | 17 |
| ISODAMP | 95-1023/ | 11172 | 391986 | Renewed | Italy | 11/02/01 | | 11/03/91 | 11/03/11 | 17 |
| ISODAMP | 95-1023/ | | 1671035 | Registered | Japan | | | 03/22/94 | 03/22/14 | 7 |
| ISODAMP | 95-1023/ | 200334452 | 40-666806 | Registered | Korea, Republic of | 07/31/03 | 04/10/06 | 06/16/06 | 06/16/16 | 17 |
| ISODAMP | 95-1023/ | 200309964 | 3009964 | Registered | Malaysia | 08/07/03 | 02/16/06 | 06/20/06 | 08/07/13 | 17 |
| ISODAMP | 95-1023/ | | 111887 | Registered | Norway | | | 08/26/92 | 08/26/12 | 17 |
| ISODAMP | 95-1023/ | 3120071 | 120071 | Registered | Singapore | 08/06/03 | | 08/06/03 | 08/06/13 | |
| ISODAMP | 95-1023/ | 978993 | 978993 | Renewed | Spain | 06/26/81 | | 02/20/82 | 06/26/11 | 17 |

16

P-GEN-01196.277

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ISODAMP | 95-1023/ | 92048409 | 1132974 | Registered | Taiwan | 08/08/03 | | 12/16/04 | 12/15/14 | |
| ISODAMP | 95-1023/ | 531889 | Kor216028 | Registered | Thailand | 09/30/03 | 11/26/04 | 09/30/03 | 09/30/13 | 17 |
| ISODAMP | 95-1023/ | 8802 | 58875 | Registered | Viet Nam | 09/25/03 | | 12/01/05 | 09/25/13 | |
| ISODAMP (Class 10) | 95-1023/A2 | | 1133797 | Renewed | United Kingdom | | | 05/15/80 | 05/15/11 | 10 |
| ISODAMP (Class 17) | 95-1023/A1 | | 1100989 | Renewed | United Kingdom | | | 09/02/78 | 09/02/09 | 17 |
| ISODAMP C-1002 | CAO-1020-T/ | 4931817 | | Pending | China (Peoples Republic) | 10/08/05 | | | | |
| ISOLOSS | 95-1375/ | 4931816 | | Pending | China (Peoples Republic) | 10/08/05 | | | | 17 |
| JELLY BEAN | 90-1290/ | 780456 | 456132 | Registered | Canada | 04/18/95 | | 03/22/96 | 03/22/11 | 1 |
| KINETIC | CAO-1283-T/ | 1330350 | | Pending | Canada | 01/05/07 | | | | n/a |
| LEXA | 97-2119/ | 800615 | 800615 | Registered | Australia | 07/16/99 | | 07/16/99 | 07/16/09 | 9 |
| LEXA | 97-2119/ | 824461088 | | Published | Brazil | 03/25/02 | 05/14/02 | | | 9 |
| LITE-COM (owned by Peltor AB) | CAO-0046-T/ | 800376 | 800376 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| METALIKS | CAO-0187-T/ | 824461053 | | Pending | Brazil | 03/25/02 | | | | 9 |
| MISCELLANEOUS DESIGN (headsets) (owned by Peltor AB) | CAO-0112-T/ | 1076194 | 576694 | Registered | Canada | 09/26/00 | | 02/28/03 | 02/28/18 | 9 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | 375076 | Renewed | Benelux | | | 06/11/91 | 06/11/11 | 9, 10 |

17

Confidential - Subject to Protective Order

3M_MDL000294485

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 810837820 | Renewed | Brazil | | | 09/27/93 | 09/27/13 | 9 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | 471467 | | 268952 | Renewed | Canada | | | 05/14/82 | 05/14/12 | N/A |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 01747/1982 | Renewed | Denmark | | | 05/14/92 | 05/14/12 | 9, 10 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 1192448 | Renewed | France | | | 01/14/92 | 01/14/12 | 10 |
| MISCELLANEOUS DESIGN (logo) | 94-1435A1/ | | | 643891 | Renewed | Germany | | | 08/25/81 | 08/25/11 | 9, 10 |
| MISCELLANEOUS DESIGN (logo) | 94-1435A3/ | | | 2708218 | Registered | Japan | | | 06/30/87 | 06/30/15 | 1 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 280726 | Renewed | Mexico | 10/30/91 | | 10/30/91 | 10/30/11 | 9, 10, 21 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 112163 | Renewed | Norway | | | 09/30/92 | 09/30/12 | 9, 10 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 978992 | Renewed | Spain | 06/26/81 | | 03/05/82 | 06/26/11 | 9 |
| MISCELLANEOUS DESIGN (logo) | 94-1435/ | | | 351629 | Registered | Switzerland | | | 12/11/91 | 12/11/16 | 5 |
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 4332457 | | | Pending | China (Peoples Republic) | 10/27/04 | | | | |
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | | | 99801168 | Registered | France | 07/05/99 | | 12/17/99 | 07/05/09 | 9, 10 |
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 33942937.9 | | 39942937 | Registered | Germany | 07/21/99 | | 09/13/00 | 07/29/09 | 10 |
| MISCELLANEOUS DESIGN (Pillow Pack) | CAO-1158-T/ | | | 30578214 | Pending | Germany | 07/21/99 | | | 07/29/09 | 10 |
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 7275 | | 885952 | Registered | Italy | 07/09/99 | | 03/26/03 | 07/09/09 | 9, 10 |

Confidential - Subject to Protective Order

3M_MDL000294486

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 40-2004-823 | | 619154 | Registered | Korea, Republic of | 01/08/04 | 02/21/05 | 05/25/05 | 05/25/15 | |
| MISCELLANEOUS DESIGN (Pillow Pack) | 95-1087/ | 9904670 | | 337950 | Registered | Sweden | 06/21/99 | | 05/26/00 | 05/26/10 | 9, 10 |
| MISCELLANEOUS DESIGN (yellow for earplugs) | 95-1166/ | | | 362196 | Registered | Benelux | | | 12/11/89 | 12/11/09 | 10 |
| MISCELLANEOUS DESIGN (yellow for earplugs) | 95-1166/ | | | 438295 | Registered | Canada | | | 01/27/95 | 01/27/10 | N/A |
| MISCELLANEOUS DESIGN (yellow for earplugs) | 95-1166/ | 200215016 | | | Published | South Africa | 09/27/02 | 05/30/07 | | | |
| MISCELLANEOUS DESIGN (yellow w/ red swirls) | CAO-0714-T/ | 200215017 | | | Pending | South Africa | 09/27/02 | | | | |
| MISCELLANEOUS DESIGN (yellow w/ swirls) | CAO-0020-T/ | 9904716 | | 9904716 | Registered | South Africa | 03/24/99 | | 03/24/99 | 03/24/09 | 10 |
| NASSAU RAVE | 98-1919/ | 800616 | | 800616 | Registered | Australia | 07/16/99 | | 07/16/99 | 07/16/09 | 9 |
| NASSAU RAVE | 98-1919/ | 824461118 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| OPTIME | CAO-0891-T/ | 1287104 | | TMA677407 | Registered | Canada | 01/23/06 | 07/19/06 | 11/21/06 | 11/21/21 | 9 |
| OPTIME | CAO-0891-T/ | 4822185 | | 4822185 | Registered | European Community | 12/21/05 | 06/19/06 | 11/17/06 | 12/21/15 | 9 |
| OPTIME | CAO-0891-T/ | 60519/2005 | | 542524 | Registered | Switzerland | 12/21/05 | | 02/07/06 | 12/21/15 | 9 |
| ORDNANCE | CAO-1412-T/ | 1325838 | | | Pending | Canada | 11/27/06 | | | | N/A |
| PELTOR (owned by Peltor AB) | 96-1503/ | 800375 | | 800375 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| PELTOR (owned by Peltor AB) | 96-1503/ | 824461215 | | | Pending | Brazil | 03/25/02 | | | | 9 |

Confidential - Subject to Protective Order

3M_MDL000294487

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PELTOR (being assigned to Peltor AB) | 96-1503/ | 3998829 | | | Pending | China (Peoples Republic) | 04/06/04 | | | |
| PELTOR (owned by CSIC) | 96-1503/ | 266171 | 266171 | Registered | New Zealand | 08/22/96 | | 08/22/96 | 08/22/17 | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | CAO-0117-T/ | 1076666 | 571364 | Registered | Canada | 09/28/00 | | 11/27/02 | 11/27/17 | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | CAO-0117-T/ | | | Madrid | China (Peoples Republic) | | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | CAO-0117-TA2/ | 452009 | 681245 | Registered | Mexico | 10/10/00 | | 12/15/00 | 10/10/10 | 10 |
| PERIMETER | CAO-1192-T/ | 1325840 | | | Pending | Canada | 11/27/06 | | | 9 |
| PIRANHA | CAO-1202-T/ | 1325841 | | | Pending | Canada | 11/27/06 | | | 9 |
| PLATINUM | CAO-0044-T/ | 1036139 | 1036139 | Registered | Australia | 12/23/04 | | 12/23/04 | 12/23/14 | 9 |
| PLEATS PLUS | CAO-0074-T/ | 824461150 | | | Pending | Brazil | 03/25/02 | | | 9 |
| POD PLUGS | CAO-1418-T/ | | | | Madrid | Australia | | | | |
| POD PLUGS | CAO-1418-T/ | 829058311 | | | Pending | Brazil | 04/19/07 | | | 9 |
| POD PLUGS | CAO-1418-T/ | | | | Madrid | China (Peoples Republic) | | | | |
| POD PLUGS | CAO-1418-T/ | | | | Pending | European Community | 04/15/07 | | | |
| POD PLUGS | CAO-1418-T/ | A0007837 | 922519 | Registered | Int'l Registration - Madrid Protocol Only | 04/15/07 | | 04/15/07 | 04/15/17 | 9 |
| POD PLUGS | CAO-1418-T/ | | | | Madrid | Japan | | | | |

Confidential - Subject to Protective Order

3M_MDL000294488

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| POD PLUGS | CAO-1418-T/ | | | Madrid | Korea, Republic of | | | | | |
| POD PLUGS | CAO-1418-T/ | | | Madrid | Norway | | | | | |
| POD PLUGS | CAO-1418-T/ | 2007/08029 | | Pending | South Africa | 04/17/07 | | | | 9 |
| POD PLUGS | CAO-1418-T/ | | | Madrid | Switzerland | | | | | |
| POD PLUGS | CAO-1418-T/ | 96017720 | | Pending | Taiwan | 04/18/07 | | | | 9 |
| POWERCOM PLUS | CAO-0179-T/ | 1115781 | 621948 | Registered | Canada | 09/14/01 | | 10/06/04 | 10/06/19 | 9 |
| PRO-SEALS | CAO-1537-T/ | 6043012 | | Pending | European Community | 06/27/2007 | | | | 9 |
| PRO-SEALS | CAO-1539-T/ | | | Madrid | Norway | | | | | 9 |
| PRO-SEALS | CAO-1538-T/ | 568712007 | | Pending | Switzerland | 06/27/2007 | | | | 9 |
| PULSAR | CAO-1406-T/ | 5568993 | | Published | European Community | 12/20/06 | 05/28/07 | | | 10 |
| QUICKLATCH | CAO-0108-T/ | 824461193 | | Pending | Brazil | 03/25/02 | | | | |
| RACETUNES | CAO-0326-T/ | 1147307 | TMA646405 | Registered | Canada | 07/18/02 | | 08/23/05 | 08/23/20 | |
| RNR | CAO-0893-T/ | 4499471 | 4499471 | Registered | European Community | 06/21/05 | | 05/30/06 | 06/21/15 | 9 |
| RNR | CAO-0893-T/ | | | Madrid | Norway | | | | | |
| RNR | CAO-0893-T/ | 55059/2005 | 536428 | Registered | Switzerland | 06/21/05 | | 08/10/05 | 06/21/15 | 9 |

21

Confidential - Subject to Protective Order

3M_MDL000294489

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SAFELINE | 90-1276/ | | | 258765 | Registered | Italy | | | 03/31/90 | 03/31/10 | 9, 25 |
| SAFELINE | 90-1276/ | | | 245021 | Registered | Switzerland | | | 03/10/90 | 03/10/10 | 9, 10, 21, 25 |
| SEAHAWK | CAO-1289-T/ | 1325846 | | | Pending | Canada | 11/27/06 | | | | 9 |
| SEEPRO | 95-1614/ | 800367 | | 800367 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| SEEPRO | 95-1614/ | 824461100 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| SEEPRO PLUS | CAO-0049-T/ | 800368 | | 800368 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| SEEPRO PLUS | CAO-0269-T/ | 824461096 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| SENTINEL | CAO-1203-T/ | 4990453 | | 4990453 | Registered | European Community | 03/16/06 | 09/18/06 | 02/12/07 | 03/16/16 | 9 |
| SKULL SCREWS | CAO-1168-T/ | 1141548 | | 896947 | Registered | Australia | 08/25/06 | 03/08/07 | 08/25/06 | | 9 |
| SKULL SCREWS | CAO-1168-T/ | A0005663 | | 896947 | Registered | Int'l Registration - Madrid Protocol Only | 08/25/06 | | 08/25/06 | 08/25/16 | 9 |
| SKULL SCREWS | CAO-1168-T/ | 2006/20462 | | | Pending | South Africa | 08/29/06 | | | | 9 |
| SOLUS | CAO-0675-T/ | 5545025 | | | Published | European Community | 12/12/06 | 05/28/07 | | | 9 |
| SPLASH GOGGLEGEAR | CAO-0271-T/ | 824461037 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| SUPERFIT | CAO-0077-T/ | 824461169 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| SUPERFIT | CAO-0077-T/ | 1528678 | | 1528678 | Registered | European Community | 02/18/00 | | 04/17/01 | 02/18/10 | |

Confidential - Subject to Protective Order

3M_MDL000294490

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| TACTICAL (owned by Peltor AB) | CAO-0047-T/ | 800377 | | 800377 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| TACTICAL SPORT | CAO-0503-T/ | 1193061 | | TMA675134 | Registered | Canada | 10/07/03 | | 10/17/06 | 10/17/21 | N/A |
| TORA | CAO-0542-T/ | 003 818 135 | | 003 818 135 | Registered | European Community | 04/23/04 | | 07/20/05 | 04/23/14 | 9 |
| TORQUE | CAO-1407-T/ | 5568985 | | | Published | European Community | 12/20/06 | 05/28/07 | | | 10 |
| TOUR-GUARD III | CAO-0048-T/ | 800369 | | 800369 | Registered | Australia | 07/15/99 | | 07/15/99 | 07/15/09 | 9 |
| TOUR-GUARD III | CAO-0268-T/ | 824461070 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| TUFCOTE | CAO-1021-T/ | 4931814 | | | Pending | China (Peoples Republic) | 10/08/05 | | | | 17 |
| TUFFMASTER | CAO-0270-T/ | 824461045 | | | Pending | Brazil | 03/25/02 | | | | 9 |
| ULTRAFIT | 95-1233/ | | | 1675065 | Renewed | Argentina | | | 07/16/98 | 07/16/08 | 10 |
| ULTRAFIT | 95-1233/ | | | A450612 | Registered | Australia | | | 08/20/97 | 08/20/07 | 10 |
| ULTRAFIT | 95-1233/ | | | 424606 | Renewed | Benelux | | | 08/19/86 | 08/19/16 | 9 |
| ULTRAFIT | 95-1233/ | 823127389 | | | Pending | Brazil | 09/01/00 | | | | 10 |
| ULTRAFIT | 95-1233/ | | | 340952 | Renewed | Canada | | | 05/27/88 | 05/27/18 | N/A |
| ULTRAFIT | 95-1233/ | 53271986 | | 00576/1988 | Renewed | Denmark | 08/15/86 | | 01/29/88 | 01/29/08 | 10 |
| ULTRAFIT | 95-1233/ | 004 499 497 | | 4499497 | Registered | European Community | 06/21/05 | | 07/07/06 | 06/21/15 | 9 |

23

3M_MDL000294491

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ULTRAFIT | 95-1233/ | | | 105403 | Renewed | Finland | | | 10/20/89 | 10/20/09 | 10 |
| ULTRAFIT | 95-1233/ | | | 1369906 | Renewed | France | | | 09/09/86 | 09/09/16 | 10 |
| ULTRAFIT | 95-1233/ | 8514 | | 764250 | Registered | Italy | | | 10/16/96 | 10/16/16 | 10 |
| ULTRAFIT | 95-1233/ | 167222 | | B167222 | Renewed | New Zealand | 08/18/86 | | 08/18/86 | 08/18/07 | 10 |
| ULTRAFIT | 95-1233/ | | | 132537 | Renewed | Norway | | | 06/23/88 | 06/23/08 | 10 |
| ULTRAFIT | 95-1233/ | | | 236490 | Renewed | Portugal | | | 08/20/90 | 08/20/10 | 10 |
| ULTRAFIT | 95-1233/ | | | B865244 | Renewed | South Africa | | | 08/12/86 | 08/12/16 | 10 |
| ULTRAFIT | 95-1233/ | | | 205962 | Renewed | Sweden | | | 05/29/87 | 05/29/17 | 10 |
| ULTRAFIT | 95-1233/ | | | 350327 | Registered | Switzerland | | | 08/12/96 | 08/12/16 | 10 |
| ULTRAFIT | 95-1233/ | | | 1274318 | Registered | United Kingdom | | | 08/13/93 | 08/13/17 | 10 |
| ULTRAFIT PLUS | CAO-0109-T/ | 823127370 | | | Pending | Brazil | 09/01/00 | | | | 9 |
| VERSADAMP | 99-1029/ | 4931815 | | | Pending | China (Peoples Republic) | 10/08/05 | | | | |
| VISCOLAS | CAO-1167-T/ | 1292337 | | TMA684331 | Registered | Canada | 03/03/06 | 09/20/06 | 03/22/07 | 03/22/22 | N/A |
| VISCOLAS | 95-1006/ | | | 65490 | Registered | Israel | | | 02/05/94 | 02/05/08 | 10 |
| VISCOLAS | 95-1006A1/ | | | 2063094 | Renewed | Japan | | | 07/22/88 | 07/22/08 | 22 |

24

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VISCOLAS | 95-1006A2/ | | | 2047244 | Renewed | Japan | | | 05/26/88 | 05/26/08 | 24 |
| VISCOLAS | 95-1006/ | | | 360463 | Registered | Switzerland | | | 01/06/93 | 01/06/08 | 10, 28 |
| WARTHOG | CAO-1248-T/ | | | 905111 | Registered | Australia | 11/08/06 | 05/10/07 | 11/08/06 | | 9 |
| WARTHOG | CAO-1248-T/ | | | | Madrid | European Community | | | | | 9 |
| WARTHOG | CAO-1248-T/ | A0006362 | | 905111 | Registered | Int'l Registration - Madrid Protocol Only | 11/08/06 | | 11/08/06 | 11/08/16 | 9 |
| WORKTUNES (owned by Peltor AB) | CAO-0116-T/ | 1076665 | | 576565 | Registered | Canada | 09/28/00 | | 02/27/03 | 02/27/18 | 9 |
| WORKTUNES (owned by Peltor AB) | CAO-0116-T/A2 | 452012 | 681247 | | Published | Mexico | 10/10/00 | 12/15/00 | | | 10 |
| WORKTUNES (owned by Peltor AB) | CAO-0116-T/A1 | 452011 | | 681246 | Registered | Mexico | 10/10/00 | | 12/15/00 | 10/10/10 | 9 |
| WORKTUNES (owned by Peltor AB) | CAO-0116-T/A1 | 2000/19072 | | 2000/18841 | Registered | South Africa | 09/22/00 | | 11/30/05 | 09/22/10 | 9 |
| WORKTUNES (owned by Peltor AB) | CAO-0116-T/A2 | 2000/19073 | | 2000/18842 | Registered | South Africa | 09/22/00 | | 01/04/06 | 09/22/10 | 10 |
| X-FACTOR | CAO-0173-T/ | A0000242 | | | Pending | China (Peoples Republic) | 11/30/04 | | | | 9 |
| X-FACTOR | CAO-0173-T/ | D00 2005 01615 01625 | | | Pending | Indonesia | 01/19/05 | | | | 9 |
| X-FACTOR | CAO-0173-T/ | A0000242 | | 842690 | Registered | Int'l Registration - Madrid Protocol Only | 11/30/04 | | 11/30/04 | 11/30/14 | 9 |
| X-FACTOR | CAO-0173-T/ | | | 842690 | Registered | Korea, Republic of | 11/30/04 | | 11/30/04 | | 9 |
| X-FACTOR | CAO-0173-T/ | 4019123 | | 4019123 | Registered | Malaysia | 12/07/04 | 10/12/06 | 03/10/07 | 12/07/14 | 9 |

Confidential - Subject to Protective Order

3M_MDL000294493

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| X-FACTOR | CAO-0173-T/ | 93056396 | | 1161053 | Registered | Taiwan | 12/02/04 | | 07/01/05 | 06/30/15 | |
| X-FACTOR | CAO-0173-T/ | 579058 | | Kor 237924 | Registered | Thailand | 01/18/05 | | 01/18/05 | 01/17/15 | 9 |
| YELLOW NEON BLASTS | CAO-0038-T/ | 816481 | | 816481 | Registered | Australia | 12/07/99 | | 12/07/99 | 12/07/09 | 10 |
| YELLOW NEONS | CAO-0021-T/ | 800619 | | 800619 | Registered | Australia | 07/16/99 | | 07/16/99 | 07/16/09 | 10 |
| PELTOR (owned by Peltor AB) | | | | 199645 | Registered | Sweden | | | | | |
| PELTOR (owned by Peltor AB) | | | | 369650 | Registered | Sweden | | | | | |
| PELTOR (owned by Peltor AB) | | | | 501439 | Registered | Australia | | | | | 9 |
| PELTOR (owned by Peltor AB) | | | | 501440 | Registered | Australia | | | | | 10 |
| PELTOR (owned by Peltor AB) | | | | 321052 | Registered | Canada | | | | | |
| PELTOR (owned by Peltor AB) | | | | 269645 | Registered | Switzerland | | | | | 9 |
| PELTOR (owned by Peltor AB) | | | | 331366 | Registered | Switzerland | | | | | 10 |
| PELTOR (owned by Peltor AB) | | | | 288464 | Registered | Europe | | | | | |
| PELTOR (owned by Peltor AB) | | | | 1257379 | Registered | France | | | | | 9 |
| PELTOR (owned by Peltor AB) | | | | 4332466 | Registered | Japan | | | | | 9 |
| PELTOR (owned by Peltor AB) | | | | 4340726 | Registered | Japan | | | | | 10 |

Confidential - Subject to Protective Order

3M_MDL000294494

P-GEN-01196.287

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PELTOR (owned by Peltor AB) | | | 123032 | Registered | Norway | | | | | | |
| PELTOR (owned by Peltor AB) | | | 96/09541 | Registered | South Africa | | | | | | 9 |
| PELTOR (owned by Peltor AB) | | | 96/09542 | Registered | South Africa | | | | | | 10 |
| PELTOR (owned by Peltor AB) | | | 822296 | Registered | Russian Federation | | | | | | |
| WORKSTYLE (owned by Peltor AB) | | | 248934 | Registered | Sweden | | | | | | |
| WORKSTYLE (owned by Peltor AB) | | | 515319 | Registered | Benelux | | | | | | |
| WORKSTYLE (owned by Peltor AB) | | | 6753/1992 | Registered | Denmark | | | | | | |
| WORKSTYLE (owned by Peltor AB) | | | 163678 | Registered | Norway | | | | | | |
| WORKSTYLE (owned by Peltor AB) | | | 128501 | Registered | Finland | | | | | | |
| TWIN CUP (owned by Peltor AB) | | | 256354 | Registered | Sweden | | | | | | |
| TWIN CUP (owned by Peltor AB) | | | 444926 | Registered | Canada | | | | | | |
| TWIN CUP (owned by Peltor AB) | | | 1535126 | Registered | Great Britain | | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 351666 | Registered | Sweden | | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 28186 | Registered | United Arab Emirates | | | | | | 9 |
| WORKTUNES (owned by Peltor AB) | | | 28173 | Registered | United Arab Emirates | | | | | | 10 |

27

Confidential - Subject to Protective Order

3M_MDL000294495

P-GEN-01196.288

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| WORKTUNES (owned by Peltor AB) | | | 850935 | Registered | Australia | | | | | |
| WORKTUNES (owned by Peltor AB) | 823168000 | | | Pending | Brazil | | | | | 9 |
| WORKTUNES (owned by Peltor AB) | 823168034 | | | Pending | Brazil | | | | | 10 |
| WORKTUNES (owned by Peltor AB) | | | 142289 | Registered | Israel | | | | | 9 |
| WORKTUNES (owned by Peltor AB) | | | 142290 | Registered | Israel | | | | | 10 |
| WORKTUNES (owned by Peltor AB) | | | 498967 | Registered | Korea | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 623649 | Registered | New Zealand | | | | | 9 |
| WORKTUNES (owned by Peltor AB) | | | 623650 | Registered | New Zealand | | | | | 10 |
| WORKTUNES (owned by Peltor AB) | | | T00/16777 E | Registered | Singapore | | | | | 9 |
| WORKTUNES (owned by Peltor AB) | | | T00/16778C | Registered | Singapore | | | | | 10 |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Australia | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Benelux | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Switzerland | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | China | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Germany | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294496

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Denmark | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Spain | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Finland | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | France | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Great Britain | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Italy | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Japan | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Norway | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Poland | | | | | |
| WORKTUNES (owned by Peltor AB) | | | 743222 | Registered | Portugal | | | | | |
| DESIGN MARK (owned by Peltor AB) | | | 346646 | Registered | Sweden | | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 1565662 | Registered | Europe | | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 28074 | Registered | United Arab Emirates | | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 28174 | Registered | United Arab Emirates | | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 850934 | Registered | Australia | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294497

P-GEN-01196.290

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | 823167984 | | | Pending | Brazil | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | 823167992 | | | Pending | Brazil | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 482584 | Registered | Switzerland | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 1717963 | Registered | China | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 1698122 | Registered | China | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 200108478 | Registered | Hong Kong | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 200108479 | Registered | Hong Kong | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 142291 | Registered | Israel | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 142292 | Registered | Israel | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 4568843 | Registered | Japan | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 4679712 | Registered | Japan | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 507508 | Registered | Korea | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 208114 | Registered | Norway | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 623651 | Registered | New Zealand | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | | 623652 | Registered | New Zealand | | | | 10 |

Confidential - Subject to Protective Order

3M_MDL000294498

| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 154538 | Registered | Poland | | | | | | |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | T00/716775 I | Registered | Singapore | | | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | T00/16776 G | Registered | Singapore | | | | | | 10 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 2000/18839 | Registered | South Africa | | | | | | 9 |
| PELTOR WIRELESS SOLUTIONS (owned by Peltor AB) | | | 2000/18840 | Registered | South Africa | | | | | | 10 |
| WS (owned by Peltor AB) | | | 1579572 | Registered | Europe | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 351603 | Registered | Sweden | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 654654 | Registered | New Zealand | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | 2002/04588 | | | Pending | South Africa | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Australia | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Switzerland | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Germany | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Denmark | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Spain | | | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Finland | | | | | | |

Confidential - Subject to Protective Order

3M_MDL000294499

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | France | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Great Britain | | | | |
| DEVICE MARK "OPTIME 1" (owned by Peltor AB) | | | 779012 | Registered | Norway | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 351602 | Registered | Sweden | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 654655 | Registered | New Zealand | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | 2002/04590 | | | Pending | South Africa | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Australia | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Switzerland | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Germany | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Denmark | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Spain | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Finland | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | France | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Great Britain | | | | |
| DEVICE MARK "OPTIME 2" (owned by Peltor AB) | | | 778383 | Registered | Norway | | | | |

Confidential - Subject to Protective Order

3M_MDL000294500

P-GEN-01196.293

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 351601 | Registered | Sweden | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 654656 | Registered | New Zealand | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 2002/04589 | Registered | South Africa | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Australia | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Switzerland | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Germany | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Denmark | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Spain | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Finland | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | France | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Great Britain | | | | | |
| DEVICE MARK "OPTIME 3" (owned by Peltor AB) | | | 778407 | Registered | Norway | | | | | |
| PELTOR ALERT (owned by Peltor AB) | | | 364741 | Registered | Sweden | | | | | |
| PELTOR ALERT (owned by Peltor AB) | | | 3352317 | Registered | Europe | | | | | |
| PELTOR ALERT (owned by Peltor AB) | | | 226516 | Registered | Norway | | | | | |

33

Confidential - Subject to Protective Order

3M_MDL000294501

P-GEN-01196.294

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALERT (Owned by Peltor AB) | | | | 367740 | Registered | Sweden | | | | | |
| ALERT (Owned by Peltor AB) | | | | 3352309 | Registered | Europe | | | | | |
| ALERT (Owned by Peltor AB) | | | | 237253 | Registered | Norway | | | | | |
| SPORTTAC (Owned by Peltor AB) | | | | 3367786 | Registered | Europe | | | | | |
| CUSTOME-A-R | CAO-1565-T/ | 6227656 | | | Pending | European Community | 08/24/2007 | | | | 9 |
| E-A-RFIT | CAO-1566-T/ | 6227714 | | | Pending | European Community | 08/24/2007 | | | | 9 |
| FAHRENHEIT | CAO-1563-T/ | 829290427 | | | Pending | Brazil | 08/29/2007 | | | | 9 |
| UVICATOR | PW-50022 | 006225981 | | | Pending | European Community | 08/24/2007 | | | | |

Confidential - Subject to Protective Order

3M_MDL000294502

AEARO HOLDING CORP.

Schedule 3.12(h)
<u>Domain Names</u>

Aearo Company URL List
08.03.07

Global Special Offer Sites:
www.aosafetyquicklatch.com
www.earclassicsoft.com
www.earflex28.com
www.aoxseries.com
www.maxim2x2.com
www.aosflywear.com
www.powercomplusoffer.com
www.earpushins.com
www.eardispenser.com
www.earsoftgripper.com
www.geraupforsafety.com
www.earsoftoffer.com
www.superfitoffer.com
www.tearnwear.com
www.aosnuvo.com
www.earsoftfx.com
www.swat-tacoffer.com
www.aosvirtua.com
www.aosmaxim.com
www.aosafetyquickfit.com
www.aoszora.com
www.peltornext.com
www.comtactwo.com
www.aosafina.com
www.combatarmsearplug.com
www.eararcplug.com
www.peltornextdispenser.com
www.theyellowplug.com
www.aosafina.com
www.aosradica.com
www.optimesystem.com
www.ultrafitmax.com
www.aosprivo.com
www.aearospecialoffers.com
www.peltoraviation.com
www.eardetectoffer.com
www.ultrafit27.com
www.peltorusa.com
www.80decibel.co.uk

www.80decibel.com
www.80decibel.com.es
www.80decibel.de
www.80decibel.eu
www.80decibel.fr
www.80decibel.it
www.80decibel.nl
www.80decibel.se


Corporate:
www.aearo.com
www.cabotsafety.com


Global Brand Sites:
www.safewaze.com
www.peltor.com ; www.peltoraviation.com
www.aosafety.com
www.e-a-r.com
www.aosafetysrx.com ; www.extranet.aosafetysrx.com
www.earsc.com
www.peltormilitary.com
www.peltor.com/mil
www.aearo.co.uk
www.aearo.eu
www.aearo.it
www.aearo.nu
www.aearo.net
www.aearo.org
www.e-a-r.at
www.e-a-r.co.uk
www.e-a-r.com.es
www.e-a-r.com.pt
www.e-a-r.com.ru
www.e-a-r.fi
www.e-a-r.fr
www.e-a-r.info
www.e-a-r.it
www.e-a-r.nl
www.e-a-r.pl
www.e-a-r.ru
www.e-a-r.se
www.pelltor.com
www.peltor.eu
www.peltor.se
www.peltor.as
www.peltor.be

www.peltor.biz
www.peltor.cn
www.peltor.co.at
www.peltor.com
www.peltor.com.es
www.peltor.com.pl
www.peltor.com.pt
www.peltor.com.ru
www.peltor.de
www.peltor.eu
www.peltor.fr
www.peltor.info
www.peltor.it
www.peltor.net
www.peltor.no
www.peltor.nu
www.peltor.org
www.peltor.pl
www.peltor.pt
www.peltor.us
www.eu.aearo.com
www.aearo.in
www.aearo.co.in
www.aosafety.ch
www.aosafety.co.nz
www.aosafety.co.za
www.aosafety.com.mx
www.aosafety.com.pr
www.e-a-r.ch
www.e-a-r.co.nz
www.e-a-r.com.pr
www.peltor.co.nz
www.peltor.com.mx
www.peltor.com.pr
www.peltor.dk
www.aosafety.co.uk
www.peltor.co.uk

Confidential - Subject to Protective Order

3M_MDL000294505