# EXHIBIT 15
# FILED UNDER SEAL

*1-12-10*
*c: MTK*

# SUPPORT SERVICES AGREEMENT

## AMONG

## 3M COMPANY,

## 3M INNOVATIVE PROPERTIES COMPANY AND

## AEARO COMPANY I d/b/a AEARO TECHNOLOGIES

## EFFECTIVE DATE: APRIL 1, 2008

CONFIDENTIAL

# SUPPORT SERVICES AGREEMENT

This Support Services Agreement ("Agreement") is by and among 3M Company ("3M-US"), 3M Innovative Properties Company ("3M IPC"), and Aearo Company I d/b/a Aearo Technologies ("Aearo").

## RECITALS

A.  3M-US is an innovative multinational company having its headquarters in the United States and affiliates in more than 60 countries around the world.  3M-US and its affiliates ("3M Affiliates") sell products in more than 180 countries.  3M-US and 3M IPC have a history of making available certain services to 3M Affiliates.  These services are continuously made available to the 3M Affiliates under prior agreements similar to this Agreement.

B.  3M IPC is a wholly-owned subsidiary of 3M-US.  3M IPC, among other things, owns or is exclusively licensed under an international portfolio of intellectual property rights that provide 3M and 3M Affiliates with a substantial competitive advantage in manufacturing and selling products, and providing services around the world.

C.  Aearo is a wholly-owned subsidiary of 3M-US and Aearo, either directly or indirectly, owns by stock ownership or otherwise a controlling (50% or greater) interest in a number of separately organized legal entities ("Aearo Affiliates").  As such, Aearo and Aearo Affiliates are also 3M Affiliates.

D.  Collectively, 3M-US and 3M IPC have considerable expertise in establishing, operating and managing successful international businesses engaged in developing, manufacturing, marketing and

1

AEARO_CH11_00002181

selling a diverse array of products in a dynamic, global commercial environment.

E.   3M-US and 3M IPC are willing to make services available to Aearo and Aearo Affiliates that will enable Aearo and Aearo Affiliates to conduct and expand their business. Accordingly, the services made available hereunder will enable Aearo and Aearo Affiliates to conduct business operations more efficiently and effectively on a global basis.

F.   Aearo and Aearo Affiliates are willing to make services available to 3M-US, 3M IPC, and 3M Affiliates. All or any of 3M-US, 3M IPC, and 3M Affiliates are willing to make services available to Aearo and Aearo Affiliates. The provision of such services by a Party to this Agreement is not a principal activity of such Party, but such Party will endeavor to provide such services to another Party to this Agreement in the manner that they ordinarily provide services to themselves or their respective affiliates to assist in their respective business operations. The compensation for services provided between the Parties is reflected exclusively in this Agreement. Such compensation does not, however, include any compensation for the transfer of technology or intellectual property rights ancillary to the provision of such services.

In consideration of these premises, and of the mutual promises made by the Parties herein, the Parties agree as follows:

2

AEARO_CH11_00002182

# ARTICLE I
## DEFINITIONS

1.1   **General.** The following capitalized terms shall have the meaning shown, and shall be applicable throughout this Agreement to both the singular and plural forms, as appropriate.

1.2   **"3M-US"** shall mean 3M Company, a Delaware corporation having a principal place of business at 3M Center, St. Paul, Minnesota 55144, U.S.A.

1.3   **"3M IPC"** shall mean 3M Innovative Properties Company, a Delaware corporation having its place of business at 3M Center, St. Paul, Minnesota 55144, U.S.A.

1.4   **"3M"** shall mean 3M-US and 3M IPC, individually and collectively.

1.5   **"3M Affiliate"** shall mean any separately organized legal entity directly or indirectly controlled by 3M-US (whether through stock ownership, stock power, voting proxy, or otherwise).

1.6   **"Aearo"** shall mean Aearo Company I d/b/a Aearo Technologies, a Delaware corporation having its place of business at 5457 W. 79th Street, Indianapolis, Indiana 46268, U.S.A.

1.7   **"Aearo Affiliate"** shall mean any separately organized legal entity in which a controlling (50% or greater) interest is owned by Aearo, either directly or indirectly, by stock ownership or otherwise.

3

1.8    **"Party"** shall mean 3M, 3M IPC, 3M Affiliate, Aearo, or Aearo Affiliate, as applicable.

1.9    **"Agreement"** shall mean this Support Services Agreement, any appendices hereto, any service attachments executed pursuant to Paragraph 2.3, and any other amendments made to this agreement.

1.10    **"Effective Date"** shall mean April 1, 2008, unless the approval of the government of the country in which Aearo's principal place of business is located, as indicated in Paragraph 1.6 of this Agreement, including the territories and possessions of that country, is required before this Agreement may become effective, in which event the Effective Date shall mean the date on which such approval is obtained.

## ARTICLE II
## SERVICES PROVIDED

2.1    **General.** During the term of this Agreement, the Parties may wish to have a Party provide services to another Party or for the Parties to provide services to each other.  The provision of services is not a principal activity of the Parties, but any service provided (a) for Aearo or Aearo Affiliate by 3M or 3M Affiliate, or by a third party at 3M's or 3M Affiliate's direction; or (b) for 3M or 3M Affiliate by Aearo or Aearo Affiliate or by a third party at Aearo's or Aearo Affiliate's direction, will be provided using the standard of care used by such Party in making available such service to its own internal organization and under no circumstances shall a Party, or any of its employees or agents, be held accountable for a greater standard of care or one that is appropriate for a party in the business of providing such service.

4

AEARO_CH11_00002184

2.2  **Listing of Services.**  Services that may be provided under this Agreement include, without limitation, the non-exclusive listing of services set forth in the attached Appendix 1, as may be amended from time to time by the Parties.

2.3  **Support Services Attachments.**  From time to time, in order to assist them in effectively and economically managing the provision of particular services under this Agreement, the affected Parties may, but are not required to, execute one or more Support Services Attachments having substantially the form set forth in attached Appendix 2 to specify, for example, the provider of the service, the service to be provided, the fee or charge for such service, etc.  The execution of a Support Services Attachment constitutes an amendment of this Agreement pursuant to Paragraph 5.1.

## ARTICLE III
## COMPENSATION

3.1  **Compensation.**  Any Party receiving the benefit of a service ("Service Receiver") shall compensate any Party providing such service ("Service Provider"), and subject to such other terms and conditions as may be agreed to by the Parties.  If the Service Receiver is 3M or 3M Affiliate, 3M or 3M Affiliate shall reimburse the Service Provider (Aearo or Aearo Affiliate) in an amount reflecting Aearo's or Aearo Affiliate's cost of providing such service, plus 10% or another mark-up as agreed to by the Parties.  If Aearo or Aearo Affiliate receives a service hereunder, then Aearo or Aearo Affiliate shall reimburse 3M or 3M Affiliate in an amount reflecting 3M's or 3M Affiliate's cost of providing such service.  The cost of services provided hereunder shall be established by the Parties in accordance with accepted procedures for the invoicing, recharging, or allocation of costs by 3M among 3M Affiliates.

5

3.2    **Notification of Provided Services.** The Service Provider will periodically notify the Service Receiver of the costs associated with services rendered hereunder. Such notices will be provided in a manner and at a time interval agreed to by the Parties. Notices hereunder shall be sent to a Service Receiver, as follows:

| | |
|---|---|
| If to Aearo: | President<br>Aearo Technologies<br>5457 W. 79th Street<br>Indianapolis, Indiana 46268<br>U.S.A. |
| If to Aearo Affiliate: | President<br>Appropriate Aearo Affiliate<br>Appropriate Address |
| If to 3M: | Vice President of Legal Affairs<br>3M Legal Affairs<br>3M Center<br>St. Paul, Minnesota  55144<br>U.S.A. |
| With a copy to: | President<br>3M Innovative Properties Company<br>3M Center<br>St. Paul, Minnesota 55144<br>U.S.A. |
| If to 3M Affiliate: | Managing Director<br>Appropriate 3M Affiliate<br>Appropriate Address |

3.3    **Payment.** Payments to the Service Provider shall be according to an agreed schedule with payments (a) made or credited to the account of the Service Provider; and (b) in U.S. Dollars or other mutually agreed currency. Any currency conversions necessary for making payments hereunder in U.S. Dollars shall be made in accordance with agreed procedures. Each Service Receiver shall obtain at its own expense

6

AEARO_CH11_00002186

all necessary government approvals to permit the timely payment of all amounts due hereunder.

3.4   **Taxes.**  With respect to all amounts payable hereunder, the Service Receiver shall pay all taxes and other deductions applicable to Service Receiver (other than applicable withholding taxes).

# ARTICLE IV
## TERM AND TERMINATION

4.1   **Effective Date; Term.** This Agreement shall be effective on the Effective Date, and shall remain in effect for a period of five (5) years. Upon expiration of the initial five (5) year term, this Agreement shall automatically renew for successive one (1) year terms unless a Party notifies the other Parties, prior to the end of the one (1) year term, of its intent to renegotiate this Agreement or to allow this Agreement to expire. This Agreement may also be terminated prior to the end of the initial five (5) year term or any subsequent one (1) year term, as set forth herein, and the Parties may agree to terminate this Agreement prior to the end of the initial five (5) year term or any subsequent one (1) year period. Nothing in this Agreement shall prevent the Parties from agreeing to terminate only a portion of this Agreement, including for example in relation to any particular type of service.

4.2   **Termination Upon Aearo or Aearo Affiliate Insolvency.** This Agreement shall terminate automatically if Aearo or Aearo Affiliate, as appropriate, makes any assignment for the benefit of creditors, or is adjudged bankrupt, or if a receiver or trustee of Aearo's or Aearo Affiliate's property is appointed, or if Aearo or Aearo Affiliate is dissolved and its assets liquidated, or if, in 3M's judgment, Aearo or Aearo Affiliate has become insolvent.

CONFIDENTIAL

4.3   **Termination by 3M or 3M Affiliate.**  In addition to other termination rights provided for herein, this Agreement may be terminated by 3M or, as appropriate, 3M Affiliate in whole or in part under the following conditions:

(a)   Termination is, in 3M's or 3M Affiliate's judgment, necessary to comply with any order or request of the government of the United States of America or another government where a Party is located or doing business, or of any department or agency thereof;

(b)   In 3M's or 3M Affiliate's judgment, normal conduct of Aearo or Aearo Affiliate as a private enterprise ceases or is substantially altered as a consequence of any action taken by any governmental, judicial or other authority; or

(c)   3M loses or is prevented from exercising any part of its direct or indirect shareholding interest in Aearo or Aearo Affiliate.

4.4   **Termination by Aearo or Aearo Affiliate.**  In addition to other termination rights provided for herein, this Agreement may be terminated by Aearo or, as appropriate, Aearo Affiliate in whole or in part under the following conditions:

(a) Termination is, in Aearo's or Aearo Affiliate's judgment, necessary to comply with any order or request of the government of the United States of America or another government where a Party is located or doing business, or of any department or agency thereof; or

(b) In Aearo's or Aearo Affiliate's judgment, normal conduct of the other Party as a private enterprise ceases or is substantially altered as a consequence of any action taken by any governmental, judicial, or other authority.

8

4.5   **Default/Cure.**   Upon default by any Party in the performance of any obligation hereunder to be performed by that Party, the Party aggrieved by such default may give notice in writing to the Party in default specifying the matter in default.  Unless such default be cured within two (2) months following the receipt of such notice (or, if such cure cannot be completed within such two-month period, if the cure thereof be not undertaken within a reasonable time following receipt of such notice, and diligently pursued thereafter) the Party giving such notice may give further written notice to the Party in default terminating this Agreement.  In that event, this Agreement shall terminate on the date specified in such further notice.

4.6   **Rights Upon Termination; No Waiver.**   The exercise of any termination right provided for herein shall be in addition to, and not in substitution for, any other remedies that may be available to the Party exercising its right to terminate against the other Party or Parties.  Any failure to exercise such other rights shall not relieve any Party from any obligation accrued as of the date of termination, or relieve the Party at fault from liability and damages to any other Party for breach of this Agreement. Waiver by a Party of a single default or a succession of defaults shall not deprive such Party of any right to terminate this Agreement, arising by reason of any subsequent default.

4.7   **Survival.**  The rights and obligations of the Parties under the provisions of section 4.8, 5.5, 5.6, and 5.9 and as otherwise provided for herein, shall survive termination, cancellation or expiration of this Agreement in favor of the entity to whom such rights and obligations extend.

4.8   **Execution of Documents.**  Upon expiration, termination or cancellation of this Agreement, Aearo and Aearo Affiliate shall, upon

9

EXHIBIT 0043
Page 11 of 22

request of 3M or 3M Affiliate, as appropriate, execute all documents necessary to cancel any registration of this Agreement with any governmental entity.

# ARTICLE V
# MISCELLANEOUS PROVISIONS

5.1   **Amendments.**  This Agreement may only be amended in a writing signed by authorized representatives of at least the affected Parties.

5.2   **Notices.**  Any notice that one Party delivers to another Party shall be delivered to the following addresses as appropriate:

> To 3M-US:   Vice President of Legal Affairs
> 3M Legal Affairs
> 3M Center
> St. Paul, Minnesota 55144
> U.S.A.

> To 3M IPC:   President
> 3M Innovative Properties Company
> 3M Center
> St. Paul, Minnesota 55144
> U.S.A.

> To Aearo:   President
> Aearo Technologies
> 5457 W. 79th Street
> Indianapolis, Indiana 46268
> U.S.A.

5.3   **Succession.**  This Agreement shall bind the Parties and any permitted successors in interest to the Parties, trustees or permitted assignees.  3M shall have the right to assign this Agreement without the permission of Aearo or Aearo Affiliates.  Aearo or Aearo Affiliates shall have no right to assign this Agreement without the permission of 3M.

10

AEARO_CH11_00002190

5.4   **Force Majeure.** If performance of this Agreement or any obligation under this Agreement is prevented or restricted by any event beyond the reasonable control of the Parties, the affected Party, upon giving prompt notice to the other Party or Parties, shall be excused from such performance to the extent of such prevention or restriction. The affected Party shall use its reasonable efforts to avoid or remove such cause of nonperformance or to limit the impact of the event on such Party's performance and shall continue performance with dispatch whenever such causes are removed.

5.5   **Limitation of Liability.** Except as specifically provided in this Agreement, NO PARTY SHALL UNDER ANY CIRCUMSTANCES BE LIABLE TO ANOTHER PARTY FOR ANY SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, REVENUE, OPPORTUNITY, GOODWILL, OR BUSINESS) RESULTING OR ARISING FROM THIS AGREEMENT, ANY PERFORMANCE OR NONPERFORMANCE UNDER THIS AGREEMENT, OR TERMINATION OF THIS AGREEMENT. THIS LIMITATION APPLIES REGARDLESS OF WHETHER THE DAMAGES OR OTHER RELIEF SOUGHT ARE BASED ON BREACH OF WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY IN TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY.

5.6   **Entire Agreement; Previous Agreements Superceded; Governing Law; Controlling Language.** This Agreement sets forth the entire agreement among the Parties relating to the subject matter hereof and there are no other understandings, representations or warranties of any kind. This Agreement is not intended to create rights or obligations that may conflict with rights or obligations under pre-existing agreements of the Parties. In the event of any conflict between this Agreement or any Service Attachment and any other documents used by

11

AEARO_CH11_00002191

the Parties in performing their obligations under this Agreement or any Service Attachment, the terms and conditions of this Agreement and the relevant Service Attachment will govern.  In the event of any conflict between this Agreement and any Service Attachment, the terms and conditions of the Service Attachment will govern to the extent they further the objectives of this Agreement.  The previous agreements between the Parties listed in Appendix 3 hereto shall be superceded by this Agreement as of the Effective Date hereof.  This Agreement shall be governed by the laws of Minnesota and of the United States, without regard to any conflicts of laws provisions thereof, and the exclusive venue for any litigation to resolve any dispute related to this Agreement shall be the State of Minnesota in which the Parties consent to personal jurisdiction.  In the event that this Agreement is translated into a language other than English, the English language version shall be controlling on all questions of interpretation and performance.

5.7   **Authority.**  Each Party has the full right, power and authority to execute this Agreement, and each Party represents and warrants that the person executing this Agreement on its behalf is duly authorized to do so.  Nothing in this Agreement shall be construed to constitute Aearo or Aearo Affiliates the agent of 3M or 3M Affiliates for the purpose of accepting service of legal process or to authorize Aearo or Aearo Affiliates to bind 3M or 3M Affiliates to any representations, commitments or agreements in connection with the subject matter of this Agreement or otherwise.  Nothing in this Agreement shall be construed to constitute 3M or 3M Affiliates the agent of Aearo or Aearo Affiliates for the purpose of accepting service of legal process or to authorize 3M or 3M Affiliates to bind Aearo or Aearo Affiliates to any representations, commitments, or agreements in connection with the subject matter of this Agreement.

12

                                          AEARO_CH11_00002192

EXHIBIT 0043
Page 14 of 22

5.8   **Separability.**  The provisions of this Agreement and any Attachment shall be deemed separable.  If any provision in this Agreement or any Attachment is invalid or unenforceable, the Parties shall negotiate a substitute provision that is valid and enforceable, and most nearly effectuates the intent of the Parties as to the original provision as of the Effective Date.

5.9   **Performance of Agreement.**  3M-US may authorize or delegate 3M IPC or 3M Affiliates to perform any of its obligations or duties under this Agreement without the permission of Aearo or Aearo Affiliates.  3M IPC may authorize or delegate 3M-US or 3M Affiliates to perform any of its obligations or duties under this Agreement without the permission of Aearo or Aearo Affiliates.  3M hereby guarantees the performance of its Affiliates as referred to in Paragraph 1.5 and has or will obtain the consent of 3M Affiliates to be bound by this Agreement.  Aearo hereby guarantees the performance of its affiliates as referred to in Paragraph 1.7 and has or will obtain the consent of Aearo Affiliates to be bound by this Agreement.  3M Affiliates and Aearo Affiliates are Parties to

13

and bound by the terms and conditions of this Agreement as if they had originally executed this Agreement.

5.10  **Headings.**  The article and paragraph headings in this Agreement are inserted for convenience only and shall not constitute a part hereof.

The Parties hereto have caused this Agreement to be executed in triplicate, each of which shall be considered an original, as of the Effective Date.

**3M COMPANY ("3M-US")**

By: _____
Name:        Jean Lobey
Title:       Executive Vice President

**3M INNOVATIVE PROPERTIES COMPANY ("3M IPC")**

By: _____
Name:        Kevin H. Rhodes
Title:       Assistant Secretary

**AEARO COMPANY I d/b/a AEARO TECHNOLOGIES ("Aearo")**

By: _____
Name:        Michael G. Vale
Title:       President and General Manager

14

CONFIDENTIAL

EXHIBIT 0043
Page 16 of 22

## APPENDIX 1

    With respect to the assistance, training and other services, as partially enumerated below, that may be made available or provided under this Agreement, the Parties contemplate that such services may be rendered personally at the facilities of the Service Receiver, at the facilities of the Service Provider, at scheduled meetings held in any of 3M's, 3M Affiliates', Aearo's, or Aearo Affiliates' facilities throughout the world, or at any such time and location as may be agreed to by the Parties as well as by electronic, broadcast, and other communication means.

The following is a partial listing of the types of services that may be rendered under this Agreement:

### 1.   Laboratory, Technical Assistance and Manufacturing Services

a)    Education, training and other assistance in the development of the Service Receiver's personnel in the functional areas of manufacturing, engineering, laboratory, technical service and/or field service.

b)    Assistance in the development and ongoing support of Service Receiver's product and manufacturing environmental, health, safety, and regulatory ("EHSR") and quality assurance procedures and programs.

c)    Assistance in the setup and installation of new manufacturing systems and processes, local implementation of capital projects (e.g., design, fabrication, contract and project management, modification and installation of manufacturing and process equipment).

d)    Provide contract manufacturing services, including, but not limited to, production, process engineering, manufacturing engineering, EHSR, quality assurance, project management, logistics, and maintenance.

e)    Provide supplemental laboratory, technical, and field services.

f)    Providing international laboratory, technical, and field services on a local level through operations of 3M or 3M Affiliates.

g)    Training of Service Receiver's personnel in and assistance with local development of laboratory, technical service and field service programs.

15

h)   Providing assistance to access 3M's technical information services and resources including 3M Library Services and databases.

## 2.   Selling, Marketing, General and Administrative Services

a)   Providing education, training and other assistance to Service Receiver's personnel in the functional areas of selling, marketing, general, and administrative functions.

b)   Providing information technologies ("IT") systems assistance and support including advice on and management of the development, installation, administration and operation of computer systems, and shared use of IT systems and other assets when appropriate. Providing training to Service Receiver's personnel on the proper operation of computer systems. Coordinating the supply of IT programs according to the Service Receiver's abilities and requirements. Assisting in the development and implementation of information and computer system security procedures and policy.

c)   Providing training, advice and other assistance in the coordination of cost controls, analyzing and developing comparative studies on productivity, use of resources and other aspects of the Service Receiver's general business activity.

d)   Providing international sales, marketing, general, and administrative services on a local level through operations of 3M or 3M Affiliates.

e)   Providing training, advice, and other assistance to Service Receiver's personnel on the set up and planning of international advertising campaigns, and assisting in the coordination of advertising activities worldwide with 3M's advertising agencies. Advising on the presentation of Service Receiver's products by providing advertising reports, brochure designs and artistic preparation.  Advising on the creation and distribution of advertising materials and texts.

f)   Providing general advice on marketing surveys, marketing promotion and competitive marketing trends.  Advice and training on the comparison and analysis of product and product line distribution surveys. Advice and training on methods to assist in coordinating sale and distribution activities on a regional level. Advise and assist in developing pricing strategies.  Advice and training on how to structure customer specific promotion programs.

16

AEARO_CH11_00002196

**3.   Services from the following functional areas may also be provided as required:**

a)   Purchasing/Sourcing
b)   Insurance
c)   Finance and treasury
d)   Taxes
e)   Customs and international trade (export and import)
f)   Human resources and personnel training and development
g)   Asset management
h)   Inventory management
i)   Legal
j)   Intellectual property asset management
k)   Business conduct and compliance
l)   Six Sigma
m)   Employee benefits
n)   Engineering
o)   Security
p)   Supply chain
q)   Medical, toxicology, industrial hygiene, and regulatory services
r)   Environmental services (including incinerator)

17

AEARO_CH11_00002197

## APPENDIX 2

### Support Services Attachment

This Attachment describes in additional detail certain services that a Party has agreed to provide to another Party under the terms of the Support Services Agreement among 3M Company, 3M Innovative Properties Company, and Aearo Company I d/b/a Aearo Technologies effective April 1, 2008, ("the Support Services Agreement"). The Attachment is entered into pursuant to the Support Services Agreement for the convenience of the Parties, and is intended to assist them in managing effectively and economically such services. The capitalized terms in this Attachment shall have the same meaning as shown for those terms in the Support Services Agreement.

**1. Service Provider**

**2. Service Receiver**

**3. Description of Services**

**4. Fee or Charge for Services**

Service Receiver will be recharged for the services *[on an allocation basis -- or -- the amount of $_____]* per calendar year. The recharge is based on *[a monthly allocation of the costs of the full-time equivalent personnel (FTE) of Service Provider required to perform the services]* for Service Receiver. The *[fee or charge or allocation method]* will be established at the beginning of each calendar year upon the mutual written agreement of Service Provider and Service Receiver.

From time to time Service Provider and Service Receiver may also agree to certain expenses related to specific projects to be performed by Service Provider that will be recharged to Service Receiver on an actual cost basis. How any such project-based expenses will be handled shall be agreed to by the affected Parties in writing before the project is initiated and the expenses are incurred.

18

Any change in the amount of the fee or charge or the method of allocation for services described in this Attachment must be mutually agreed to in advance and in writing by the affected Parties.

**5. Effective Date, Term and Termination of Services**

The effective date of this Attachment is the date last signed by a Party below, and will continue until terminated by either Party upon at least one (1) month written notice to the other Party, or as otherwise provided in the Support Services Agreement.

**6. Contact Persons**

For Service Provider:

For Service Receiver:

**7. Special Conditions (if any):**

This Attachment is subject to and becomes a part of the Support Services Agreement as of the effective date of this Attachment stated above, and shall be governed by all of its terms and conditions to the extent such terms and conditions are allowed by the local law that applies to the performance of the services reflected in this Attachment. Each Party has the full right, power, and authority to execute this Attachment, and each Party represents and warrants that the person executing this Attachment on its behalf is duly authorized to do so.

**Accepted and Agreed to:**

| **Service Provider** | **Service Receiver** |
|---|---|
| _____ | _____ |
| Signature | Signature |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

19

### APPENDIX 3

**Agreements Between the Parties
Superseded by this Agreement**

None.

CONFIDENTIAL

AEARO_CH11_00002200

EXHIBIT 0043
Page 22 of 22

CONFIDENTIAL

AEARO_CH11_00002201