**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-2885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | |
| | ) | Magistrate Judge Hope T. Cannon |
| This Document Relates to: | ) | |
| *All Wave 1 Cases Listed In* | ) | |
| *MDL Dkt. 3506-2* | ) | |

## 3M COMPANY'S MEMORANDUM IN OPPOSITION TO WAVE 1 REMAND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON 3M COMPANY'S FULL AND INDEPENDENT LIABILITY FOR CAEv2-RELATED INJURIES

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................3

ARGUMENT ..........................................................................................7

I.      3M Has Not Waived Its Ability To Contest Successor Liability ...................7

  A.  Successor Liability Is Not An Affirmative Defense That Must Be Pleaded, And Is Therefore Not Subject To Waiver .............................................................7

  B.  3M Has Timely Pleaded A Lack Of Successor Liability .............................12

  C.  Wave 1 Plaintiffs Have Notice Of 3M's Position .........................................12

II.     Collateral Estoppel Does Not Apply Here .....................................................13

III.    3M Is Not Judicially Estopped ........................................................................17

  A.  Judicial Estoppel Cannot Be Decided On An Omnibus Basis ......................17

  B.  3M Has Not Taken An Inconsistent Position That Was Adopted By The Court ............................................................................................................18

IV.     3M Did Not Impliedly Assume The Other Defendants' Liabilities ..............23

  A.  Implicit Assumption Cannot Be Decided In Plaintiffs' Favor On An Omnibus Basis ...........................................................................................................24

  B.  Plaintiffs' Arguments Under Indiana, Delaware, And Minnesota Law Are Without Merit ............................................................................................25

V.      Plaintiffs' Alternative Remedies Should Be Denied .....................................32

  A.  Plaintiffs' Alternative Motion To Strike Should Be Denied ........................32

  B.  Plaintiffs' Disguised Motion *In Limine* Is Meritless .....................................33

CONCLUSION .......................................................................................35

# INTRODUCTION[1]

Plaintiffs ask for unprecedented relief: a sweeping finding of successor liability in their favor across hundreds of cases regardless of differences in state law. As another MDL court remarked in rejecting an omnibus approach on successor liability in favor of a proper "jurisdiction-by-jurisdiction" analysis, "[w]ould that it were that easy." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3382071, at *7 (S.D.N.Y. Aug. 3, 2017). Without assessing each jurisdiction's law and explaining how they can prevail thereunder, Plaintiffs provide the Court with no grounds to enter summary judgment in their favor. Indeed, as described below, the applicable law in a number of jurisdictions is squarely against Plaintiffs. For example, Texas law—which governs sixty-three Wave 1 cases—forbids the successor liability theory that Plaintiffs now advocate for on the merits. Plaintiffs' arguments do not justify summary judgment in any case, let alone on an omnibus basis.

First, although Plaintiffs argue that 3M "through its litigation conduct" waived a lack of successor liability defense, Plaintiffs do not even identify the "conduct" in each Wave 1 case that they believe supports waiver. Plaintiffs also

---

[1] L.R. 56.1(C) requires a response "to the moving party's statement of facts as would be appropriate in an appellate brief." Plaintiffs did not include a proper L.R. 56.1(B) statement. Thus, 3M includes no responsive statement. *See* Fed. R. App. P. 28(a)(6).

ignore a crucial fact: lack of successor liability is not a defense that must be pleaded or else waived. Courts around the country—including U.S. Courts of Appeals and state supreme courts—have confirmed this. A finding of waiver would contradict this established authority from nearly every jurisdiction to have considered the issue. Regardless, Plaintiffs have been aware for some time that 3M disputes successor liability, and 3M timely pleaded a lack of successor liability in its answers to Plaintiffs' short-form complaints out of an abundance of caution.

Second, Plaintiffs' collateral estoppel arguments are contrary to Eleventh Circuit precedent. Although Plaintiffs apply federal law, the preclusive effect of a judgment from a district court sitting in diversity is governed by the law of "the State in which the rendering court sat"—here, Florida. *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 & n.3 (11th Cir. 2020). The Florida Supreme Court has held that collateral estoppel may not apply "unless both parties are bound by" the prior judgment, which is not the case here as no Wave 1 Plaintiff was a party to the bellwether trials. *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995). Moreover, even if federal law applies, in general "the Eleventh Circuit has explicitly barred the application of the doctrine of collateral estoppel in products liability cases, such as the case at bar." *Ramirez v. E.I. Dupont de Nemours & Co.*, 2010 WL 3467655, at *3 (M.D. Fla. Sept. 1, 2010). Nor would the doctrine apply anyway as "identical" successor liability issues were not "actually litigated" previously.

4

Third, it would be impossible to find judicial estoppel on an omnibus basis without introducing legal error.  Indeed, Plaintiffs cite no case in which a court granted such relief on an omnibus basis.  Some states, including Florida, Arizona, and Virginia, require identical parties in both proceedings.  Other states, such as Illinois and Pennsylvania, do not apply the doctrine to "legal inconsistencies" such as "contesting liability."  Minnesota has thus far declined to adopt the doctrine. Plaintiffs make no effort to account for these differences even though, in "a diversity case, the application of the doctrine of judicial estoppel is governed by state law." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 748462, at *2 (N.D. Fla. Mar. 12, 2022) (quoting *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995)).  Moreover, Plaintiffs' cited prior statements are not "inconsistent" with a lack of successor liability—nor were they "adopted by" the Court.  Thus, even if Plaintiffs could brief the issues further under applicable state law, their claims would fall short.

Fourth, with respect to the merits, it would again be impossible to grant Plaintiffs' Motion on an omnibus basis without legal error.  Plaintiffs argue that "Delaware, Minnesota, or Indiana" law is applicable, but do not explain why.  No Wave 1 case in Plaintiffs' Motion involves an Indiana, Minnesota, or Delaware choice-of-law stipulation.  Sixty-three Wave 1 cases have Texas choice-of-law stipulations, and Texas has rejected "implied" assumption of successor liability—

the sole merits basis Plaintiffs argue here.  Plaintiffs do not argue the law of many of the other jurisdictions in the parties' choice-of-law stipulations.  This alone is dispositive.  Moreover, while what Plaintiffs must prove varies across jurisdictions, one "bedrock" requirement that applies "[e]ven to the extent the law on successor liability differs from state to state" actually requires summary judgment in 3M's favor. *See In re Welding Fume Prods. Liab. Litig.*, 2010 WL 2403355, at \*7 & n.66 (N.D. Ohio June 11, 2010).  Specifically, because the Other Defendants[2] "still exist[], there is no successor—and no successor liability." *See id*.  Plaintiffs' arguments are without merit for several additional reasons under the law of the three jurisdictions Plaintiffs identify.  Among other things, Plaintiffs do not carry their burden to establish that:  (i) the Other Defendants transferred "substantially all" of their assets to 3M; or (ii) the terms of the Merger Agreement (or 3M's conduct) support successor liability.

Finally, Plaintiffs' alternatively requested remedies should be denied. Plaintiffs' argument that 3M's individual answers should be stricken is contrary to the Court's prior order that the master pleadings were "without prejudice" to later asserting "any affirmative defenses" in individual actions.  Plaintiffs' futility and

---

[2] As used herein, the term "Other Defendants" collectively refers to 3M Occupational Safety LLC, Aearo LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo Technologies LLC.

good cause arguments fail for the same reasons that their primary arguments fail, including because Plaintiffs cannot show that a lack of successor liability position "would necessarily fail" at trial. Striking 3M's answers would have no legal effect, in any event, because a lack of successor liability is not a defense that must be pleaded. Likewise, Plaintiffs' disguised motion *in limine* should be denied. The relevance of categories of evidence in hundreds of different cases should not be decided on a summary judgment motion and Plaintiffs give no cause to revisit the orders already in place.

## **ARGUMENT**

### I.   **3M Has Not Waived Its Ability To Contest Successor Liability**

#### A.   **Successor Liability Is Not An Affirmative Defense That Must Be Pleaded, And Is Therefore Not Subject To Waiver**

Plaintiffs argue that "3M, through its litigation conduct ... waived any defense that it is not liable for CAEv2 [sic] that was designed and sold by the Aearo Entities...." (Motion at 12.) But Plaintiffs do not identify the "litigation conduct" that they contend supports waiver, let alone conduct in Wave 1 cases. To the extent Plaintiffs rely on 3M "remain[ing] silent and not assert[ing] a successor liability defense" (*id.*), that is not enough for the *intentional* relinquishment of a known right as waiver requires. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

If Plaintiffs' argument is premised on whether a "party's litigation conduct can generally waive affirmative *defenses*" (Motion at 12), they ignore that a lack of

successor liability is not a defense or affirmative defense.  Courts around the country have so held.  For example:

| U.S. Courts of Appeals | |
|---|---|
| 1st Cir. | Proponent of successor liability bears the burden of "alleging facts which bring [the companies at issue] within one of the[] exceptions" to the general rule of successor non-liability.  *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 692 (1st Cir. 1984). |
| 2d Cir. | Demonstrating a lack of successor liability is "a refutation of [the plaintiff's] case, not an affirmative defense."  *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021). |
| | "Because the 'general rule' is that a purchaser of assets does not assume the predecessor's liability, it follows that the proponent of successor liability must offer proof that one of the [various] exceptions to the general rule applies."  *Call Ctr. Techs., Inc. v. Grand Adventures Tour*, 635 F.3d 48, 52 (2d Cir. 2011). |
| 7th Cir. | Party asserting successor liability bears "[t]he burden of proof on the issue of successor liability."  *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996). |
| 8th Cir. | Analyzed whether the proponent of successor liability satisfied her burden of proving it.  *Kirk v. Schaeffler Grp. USA, Inc.*, 887 F.3d 376, 387-89 (8th Cir. 2018). |

| U.S. District and Bankruptcy Courts | |
|---|---|
| E.D. Ark. | "The burden of alleging and proving successor liability is on the plaintiff …. There is no affirmative defense involved here…." *Boerner v. Brown and Williamson Tobacco Co.*, 2003 WL 22341283, at *4 (E.D. Ark. July 2, 2003). |
| Bankr. M.D. Fla. | "Plaintiff bears the burden of proof as to each required element of his ... successor liability claims." *In re ATIF, Inc.*, 2021 WL 6060011, at *9 (Bankr. M.D. Fla. Dec. 2, 2021). |
| W.D. Mo. | "In order to justify an exception to th[e] general rule" of successor non-liability, plaintiffs bear the burden of pleading that:  (i) "the predecessor company transferred all or substantially all of its assets to the successor company"; and (ii) one of the four exceptions to the general rule of successor non-liability is factually relevant. *Knapp v. Schaeffler Grp. USA Inc.*, 2021 WL 2482410, at *3 (W.D. Mo. June 17, 2021). |
| D.N.J. | The "party attempting to negate the existence of a separate entity" bears the burden of proof for establishing "successor in interest liability." *N.J. Bldg. Laborers' Statewide Pension Fund & Trs. Thereof v. Richard A. Pulaski Constr.*, 322 F. Supp. 3d 546, 550 (D.N.J. 2018). |
| N.D. Ohio | "It is the plaintiff's burden to prove the liability of a successor corporation for the conduct of its predecessor." *McDermott v. Advanstar Commc'ns, Inc.*, 2006 WL 8454319, at *5 (N.D. Ohio Mar. 31, 2006). |

| W.D. Okla. | "Oklahoma follows the traditional rule of non-liability of successor corporations, under which Plaintiffs bear the burden to prove liability of a successor."  *Taylor v. Woolley Tool & Mfg., Inc.*, 2006 WL 8436516, at *2 n.5 (W.D. Okla. Mar. 22, 2006). |
| E.D. La.  *And*  Bankr. N.D. Tex. | "[S]uccessor liability is a form of vicarious liability that the plaintiff, not the defendant, must plead." *Network Staffing Serv. v. Bay View Commercial Fin. Group, Inc.*, 2005 Bankr. LEXIS 88, at *12-13 (Bankr. N.D. Tex. Jan. 20, 2005); *accord Powell v. Pride Offshore, Inc.*, 2011 WL 2981352, at *3 (E.D. La. July 21, 2011). |
| **State Supreme Courts** | |
| Wis. | A plaintiff claiming successor liability bears the "burden of establishing one of the exceptions to the rule of nonliability."  *Springer v. Nohl Elec. Prods. Corp.*, 912 N.W.2d 1, 13 & n.12 (Wis. 2018). |
| Va. | "The burden of proof always rests with the party alleging successor liability…."  *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 805 S.E.2d 399, 407 (Va. 2017). |

A more-general analysis yields the same result. An argument is an affirmative defense if it "does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law," factoring in "the logical relationship between the defense and the cause of action" and "the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988) (internal quotation marks and citations omitted). Thus, an issue "directly related to [a party's] liability" is not

an affirmative defense. *Id.* Successorship is "directly related" to liability under a *prima facie* case. It is part of what may make 3M liable—rather than controverting an element once proven. Moreover, as the general rule is successor *non*-liability, *see* Section IV, Plaintiffs cannot reasonably claim "unfair[] surprise[]" from any claimed absence in the pleadings. Indeed, Plaintiffs' Long-Form Complaint attempted to allege successor liability, which Defendants did not admit. (MDL Dkts. 704 ¶ 21, 959 ¶ 21.)

Plaintiffs' citations are not to the contrary. In *Cottrell v. DeVillers*, the issue was whether a party raised "her 12(b) defenses concerning service or personal jurisdiction or otherwise generally waived personal jurisdiction." 2022 WL 2340884, at *8 (S.D. Ohio June 29, 2022). *Palteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A.* was about waiver of an affirmative defense on a Rule 59 new trial motion by not raising the defense "prior to the entry of judgment." 247 F. Supp. 3d 76, 96 (D.D.C. 2017). *Gaudreau v. My Pillow, Inc.* involved waiver of a contractual arbitration clause. 2022 WL 3098950, at *6 (M.D. Fla. July 1, 2022). These cases involved postures specifically entailing waiver risk—such as a jurisdictional defense not asserted at the proper time or a defense not asserted before judgment but argued post-trial—as well as conduct within the same action. That is not the case here.

### B.      3M Has Timely Pleaded A Lack Of Successor Liability

Even if a lack of successor liability was an affirmative defense, it was properly pleaded in 3M's answers to Wave 1 Plaintiffs' short-form complaints.  (*See, e.g.*, MDL Dkts. 3506-5, 3506-6.)   Such answers were timely filed within 14 days of September 19, 2022.  (*See* MDL Dkt. 3467.)

### C.      Wave 1 Plaintiffs Have Notice Of 3M's Position

Finally, even if the Court assumed that a lack of successor liability was an un-pleaded affirmative defense, "a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff." *Edwards v. Fulton Cnty.*, 509 F. App'x. 882, 887 (11th Cir. 2013) (collecting authority).  "[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'"  *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)); *accord Tri-Lady Marine, Ltd. v. Bishop Mech. Servs., LLC*, 763 F. App'x. 882, 885-86 (11th Cir. 2019).

Here, Plaintiffs had notice at least as early as two months ago when 3M opposed Plaintiff Cupit's motion.  (MDL Dkts. 3361, 3372.)  Plaintiffs concede that they "suspected [this] was coming since the Aearo Defendants filed bankruptcy in late July."  (Motion at 2.)  Given Plaintiffs' allegation that "3M is liable for Aearo

Defendants' conduct" (MDL Dkt. 704 ¶ 21), they were on notice of the potential for such issues years ago.   In 2019, Plaintiffs even requested testimony about "Defendant 3M's acquisition of Aearo Technologies LLC, including all terms of the acquisition."  (Ex. 1, 11/11/2019 30(b)(6).)  Plaintiffs have had ample notice and time to prepare their cases with this in mind.  Only one Wave 1 case has a trial date— in February 2023—and only that one Wave 1 Plaintiff has indicated a desire for additional discovery on successor issues.

These facts do not support waiver.  Plaintiffs rely on *Air Products and Chemicals, Inc. v. Louisiana Land and Exploration Co.*, but ignore its holding that "mere delay is insufficient to support a claim of waiver" and its finding of no waiver. 867 F.2d 1376, 1380 (11th Cir. 1989) (Florida law); *see also Irvine v. Cargill Investor Services, Inc.*, 799 F.2d 1461, 1463-64 (11th Cir. 1986) (similar).  Even when affirmative defenses are not pleaded, there is no waiver if they are in the pretrial order.  *Pulliam v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1185 (11th Cir. 1999); *Thomas v. Home Depot U.S.A., Inc.*, 792 F. App'x 722, 726 (11th Cir. 2019). At minimum, a waiver finding would be premature as no Wave 1 case has a Rule 16 pretrial order yet.

## II.   Collateral Estoppel Does Not Apply Here

Plaintiffs' collateral estoppel arguments are without merit.  First, Plaintiffs apply the incorrect law.  "[F]ederal common law borrows the state rule of collateral

estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction." *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017).   The only agreed-upon jurisdictional basis in the bellwethers was diversity.   Thus, the Court is "required to determine the preclusive effect of that earlier federal judgment based on the rules of issue preclusion from the State in which the rendering court sat"—here, Florida.   *Sellers*, 968 F.3d at 1273 & n.3.   Plaintiffs' cited rules, which stem from federal law, are inapposite.

Second, "the Florida Supreme Court has stated explicitly that 'unless both parties are bound by [a] prior judgment, neither may use it in a subsequent action.'" *Highfill v. USAA Cas. Ins. Co.*, 2012 WL 13024795, at *4 (N.D. Fla. July 31, 2012) (quoting *Stogniew*, 656 So. 2d at 919); *accord Goines v. Lee Mem'l Health Sys.*, 2020 WL 1512100, at *3-4 (M.D. Fla. Mar. 30, 2020).   Wave 1 Plaintiffs are not "bound by" bellwether judgments as they were not parties thereto.

Third, even if federal law applied, "the Eleventh Circuit has explicitly barred the application of the doctrine of collateral estoppel in products liability cases, such as the case at bar." *Ramirez*, 2010 WL 3467655, at *3 (citing *Deviner v. Electrolux Motor, AB*, 844 F.2d 769, 774 (11th Cir. 1988)), which held that "[t]he doctrine of collateral estoppel ... should not be extended indiscriminately to tort cases where the factual circumstances in each case differ and no hard and fast legal standard has

emerged from the developing case law"); *see also Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 346 n.13 (5th Cir. 1982).

Fourth, collateral estoppel requires "identical issues" be "actually litigated" in the prior action. *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015). "When an issue is merely assumed, it does not meet the actual litigation requirement for collateral estoppel." *See, e.g.*, *In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160, 1203 (11th Cir. 2011). To the extent "the parties' briefs … assumed" liability, the Court "made the same assumption in [any of] its opinion[s]," or the Defendants' trial presentation assumed the same, it cannot satisfy the "actually litigated" element of collateral estoppel. *Id.* Moreover, in Plaintiffs' proffered examples, the Court "ruled 'without thoroughly examining' the issue," which "further undermines the preclusive effect of the ruling." *Id.* Nor are the issues "identical." For example, finding several defendants *collectively* liable does not resolve whether one defendant assumed all of the other defendants' liabilities. There are also Wave 1 cases where causation might turn on the timing of whether the alleged conduct occurred after Aearo entities became 3M subsidiaries. An "identical" issue was never "actually litigated" in the bellwethers as bellwether juries determined collective liability. Finally, the fact-specific issues here are not suitable for collateral estoppel. *See Deviner*, 844 F.2d at 774; *In re McWhorter*, 887 F.2d 1564, 1567 (11th Cir. 1989).

Fifth, courts consider fairness. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also Nell v. Int'l Union, Local # 675*, 427 So. 2d 798, 800 n.4 (Fla. Dist. Ct. App. 1983). Here, six of the bellwethers resulted in defense verdicts and "[t]he existence of inconsistent prior judgments is perhaps the single most easily identified factor that suggests strongly that neither should be given preclusive effect." Wright & Miller, 18A Fed. Prac. & Proc. § 4465.2 (3d ed. Apr. 2022 Update); Restatement (Second) Judgments § 29(4). "Not only does issue preclusion in such cases appear arbitrary to a defendant who has had favorable judgments on the same issue, it also undermines the premise that different juries reach equally valid verdicts." *Hardy*, 681 F.2d at 346; *accord Amore v. G.D. Searle & Co.*, 748 F. Supp. 845, 847-48 (S.D. Fla. 1990); *Nell*, 427 So. 2d at 800 n.4. Additionally, offensive nonmutual collateral estoppel is disfavored if "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result," such as if "the defendant in the first action was forced to defend in an inconvenient forum" or "differences in available procedures" applied. *Parklane Hosiery*, 439 U.S. at 331 & n.15. The parties do not know what procedures will apply in Wave 1 trials as cases have not yet been remanded. The bellwether time limits, for example, may not apply. And 3M may be more inclined to explore issues beyond the crux of Plaintiffs' claims—namely, design defects,

warnings, and injuries—as the Wave 1 actions are not bellwethers.  *See* Section

III.B.; *see generally* Manual for Complex Litigation (Fourth) § 22.315 (2004).

## III.   3M Is Not Judicially Estopped

### A.   Judicial Estoppel Cannot Be Decided On An Omnibus Basis

In "a diversity case, the application of the doctrine of judicial estoppel is

governed by state law."  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022

WL 748462, at *2 (quoting *Original Appalachian Artworks*, 44 F.3d at 930).   Like

their waiver argument, Plaintiffs do not set forth the legal standard for each relevant

jurisdiction with citation to pertinent authorities.  There are important differences in

state law that Plaintiffs overlook.  This alone is dispositive.

For example, some states—such as Florida and Arizona—require that "the

parties must be the same and the same questions must be involved."  *Grau v.*

*Provident Life & Accident Ins. Co.*, 899 So. 2d 396, 399-401 (Fla. Ct. App. 2005)

(internal citation and quotation marks omitted); *Flood Control Dist. v. Paloma Inv.*

*Ltd. P'ship*, 279 P.3d 1191, 1203 (Ariz. Ct. App. 2012) (similar).  Likewise, other

states—such as Virginia—do not apply judicial estoppel in subsequent proceedings

where the parties are not the same.  *See, e.g.*, *Lofton Ridge, LLC v. Norfolk S. Ry.*,

601 S.E.2d 648, 651 (Va. 2004).   Minnesota has thus far declined to adopt the

doctrine.  *See Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W. 2d 236,

248-49 (Minn. 2016). Based on this alone, judicial estoppel could not apply in any Wave 1 action governed by Florida, Arizona, Virginia, or Minnesota law.

Additionally, some states do not apply judicial estoppel to inconsistent positions in the same proceeding. *See, e.g.*, *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). And still other states—such as Illinois and Pennsylvania—do not apply judicial estoppel to "legal inconsistencies" such as "contesting liability." *See Pepper Const. Co. v. Palmolive Tower Condos., LLC*, 59 N.E. 3d 41, 61 (Ill. App. Ct. 2016); *Marazas v. W.C.A.B. (Vitas Healthcare Corp.)*, 97 A.3d 854, 860 (Pa. Commw. Ct. 2014); MDL Dkt. 3372 at 11-12.

### B. 3M Has Not Taken An Inconsistent Position That Was Adopted By The Court

Though state law varies in the number and nature of required elements, most states at least require that the party to be estopped:  (i) previously took an inconsistent position; that (ii) was actually adopted by the Court. The mere assertion of inconsistent positions by a party is not enough. *See, e.g.*, *The Swahn Group, Inc. v. Segal*, 108 Cal. Rptr. 3d 651, 660 (Cal. Ct. App. 2010); *Great Lakes Eye Inst., PC v. Krebs*, 2018 WL 341288, at *4 (Mich. Ct. App. Jan. 9, 2018); *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643-44 (Tex. 2009); *cf.* MDL Dkt. 3361 at 9-10. These requirements are not met here.

Plaintiff Cupit argued that "3M represented to this Court again and again and again that it was fully liable for *all* CAEv2 liabilities, regardless of when they were

incurred." (MDL Dkt. 3361 at 10.) But Plaintiffs' cited facts do not rise to that level. For example, 3M never took the position that Aearo was "a party to this litigation in name only" nor did the Court adopt that position. (Motion at 6.) 3M engaging in discovery in response to requests to 3M does not equate to an assumption of liability, nor did it involve a position adopted by the Court. This includes 30(b)(6) depositions in which 3M produced a witness for notices directed to 3M specifically. (Ex. 1, 11/11/2019 30(b)(6) Notice for "Defendant 3M Company.") Similarly, 3M's purported silence on successor liability is the *absence* of a position, not the *assertion* of an inconsistent position. *See, e.g.*, *Wooten v. Bank of Am., N.A.*, 777 S.E.2d 848, 851 (Va. 2015) ("silence alone" is "generally not treated as an affirmative representation of anything"); *Brown v. Ralphs Grocery Co.*, 239 Cal. Rptr. 3d 519, 533 (Cal. Ct. App. 2018) (similar). Likewise, 3M's purported "singularity and control" over Aearo—or whether 3M was "at the helm" during meetings—does not speak to whether 3M took an inconsistent position adopted by the Court as to its "full" liability.

3M's "united front" with Aearo in prior trials does not suffice either. Even non-affiliate defendants routinely choose to present a united front at trial, including under common interest agreements. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 605-07 (S.D. Fla. 2013). Consider *Cooper v. Lakewood Engineering and Manufacturing Co.*, where the court found no implicit

assumption of liabilities where an acquirer "maintain[ed] a policy of insurance to cover claims arising from [acquiree's] products after [acquiree] could no longer be sued" and "defend[ed] three lawsuits based on such claims." 874 F. Supp. 947, 955 (D. Minn. 1994), *aff'd*, 45 F.3d 243 (8th Cir. 1995). There was nothing extraordinary about the acquirer's actions there and no party even raised judicial estoppel. How 3M allocates costs of bellwether verdicts is also not a "position" taken in this litigation, and Plaintiffs cite no case holding that extrajudicial conduct suffices for judicial estoppel in any jurisdiction.

Relatedly, a jury finding six Defendants *collectively* at fault is not equivalent to a jury finding that one defendant is fully and independently liable. A group of bellwether defendants may rightly focus on the crux of a plaintiff's allegations rather than which entity may bear the costs. A bellwether trial is a learning process that allows parties to litigate "major arguments … without facing the daunting prospect of resolving every issue in every action." *In re Methyl Tertiary Butyl Ether (MTBE) Prods.*, 2007 WL 1791258, at *1-2 (S.D.N.Y. June 15, 2007). Such a focus is not equivalent to saying that one defendant is liable for another's conduct.

Finally, Plaintiffs point to certain documents from the bellwether trials that they argue support judicial estoppel. They are addressed below.

### 1. *Vaughn* and *Wayman* Briefs

Plaintiffs rely on two statements from Defendants' *Vaughn* and *Wayman* post-trial briefs—neither supports estoppel.

The briefs first stated that, "regardless of their corporate form, the Defendants share the same potential liability in this case." (*Wayman* Dkt. 194 at 4; *Vaughn* Dkt. 179 at 9-10.) There is no inconsistency here. The *Vaughn* and *Wayman* juries both apportioned liability against one collective entity defined as "3M." (*Id.*) Plaintiffs argued post-trial that Colorado's cap on noneconomic damages should be multiplied pursuant to a Colorado Supreme Court decision—*Niemet*. In response, Defendants noted that *Niemet* required a jury to determine pro rata liability against more than one tortfeasor. (*Id.*) In arguing that "Defendants share the same potential liability in this case," Defendants explained that Plaintiffs only asked for liability to be apportioned against one collective entity—with all Defendants collectively defined as "3M"—rather than to six entities separately. (*Id.*; *Wayman* Dkts. 122 at 6, 185 at 3; *Vaughn* Dkts. 99 at 3, 155 at 7, 163 at 11.) In its rulings, the Court acknowledged that "Defendants," including Aearo, were defined "collectively" as "3M" and thus *Niemet* was inapplicable. (*Wayman* Dkt. 198 at 5-6; *Vaughn* Dkt. 181 at 4-5.) Nowhere did 3M *Company* take the position that it alone had "full" responsibility.

Second, the briefs stated that "3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate

parties for purposes of *this litigation* illusory." (*Wayman* Dkt. 194 at 4; *Vaughn* Dkt. 179 at 10.)   The Court's decisions do not reference—or rely on—this statement. Instead, the Court's decisions were based on conclusions that:  (i) "Defendants were treated *collectively* as '3M' by the Court and the parties throughout the trial"; (ii) "Defendants – *collectively* as '3M' – were found to be 100% at fault"; and therefore (iii) the Plaintiffs' reliance on *Niemet* was "misplaced."  (*See Wayman* Dkt. 198 at 5-6 (emphasis added); *Vaughn* Dkt. 181 at 4-5.)  Moreover, this statement was not made as to successor liability, nor does it evidence the requisite intent by 3M Company to assume successor liability.  *See, e.g.*, *Fulton Cnty. v. Ward-Poag*, 849 S.E.2d 465, 476-77 (Ga. 2020) (describing intent requirement); *Hill v. Durrett,* 875 S.E.2d 605 (N.C. Ct. App. 2022) (same); *Mellenbruch Family P'ship, LP v. Kennemer*, 2018 WL 4096390, at *7-8 (Tex. Ct. App. Aug. 29, 2018) (same). Finally, the "rendering any suggestion" clause is legal argument—not a factual position.

## 2.  Jury Instruction/Verdict Form Submissions

Plaintiffs cite bellwether jury instructions and verdict forms in support of judicial estoppel.   But Plaintiffs ignore that the Court routinely differentiated between 3M and the Other Defendants.   For example, in *Blum*, the Court differentiated between "3M and Aearo."  (*Blum* 10/18/2021 Trial Tr. 22:23-23:17.) In *Sloan-Wayman*, the Court instructed that Defendants are all different "entities"

and "companies" even if they are subsidiaries of 3M Company.  (*Sloan-Wayman* 1/10/2022 Trial Tr. 34:14-23.)  Even where verdict forms or the like listed "3M" for simplicity, the juries were instructed that the six Defendants would be "collectively" referred to as "3M," not that a verdict would be solely against 3M Company.

Moreover, Defendants' proposed verdict forms often referred to "Defendants" rather than "3M."  (*See, e.g.*, *Estes* Dkt. 76; *Blum* Dkt. 63; *Wilkerson* Dkt. 93.)  In *Wilkerson*, the jury was instructed in this manner.  (*See Wilkerson* Dkt. 199-2.)  The Court changing "Defendants" to "3M" for simplicity—and in accordance with Plaintiffs' proposals—does not mean 3M took the position that it was the only liable entity.  (*See Blum* Dkts. 64, 68, 117; *Palanki* Dkts. 72, 74, 133; *Wayman* Dkts. 122, 124, 185; *Wilkerson* Dkts. 112 and 92 at 2-21, 22-28.)

## IV.    3M Did Not Impliedly Assume The Other Defendants' Liabilities

Plaintiffs cannot "obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense."  *Margolis v. Public Health Tr.*, 89 F. Supp. 3d 1343, 1348 (S.D. Fla. 2015).  That is because the lack of successor liability is not an affirmative defense.  *See* Section I.  "If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment" and "'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at

trial.'"  *Margolis*, 89 F. Supp. 3d at 1348 (quoting *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F. 2d 1428, 1438 (11th Cir. 1991)).

### A. Implicit Assumption Cannot Be Decided In Plaintiffs' Favor On An Omnibus Basis

Without explanation, Plaintiffs apply "Delaware, Minnesota, or Indiana" law. (Motion, 17.)  But, as one MDL court remarked in undertaking a "jurisdiction-by-jurisdiction approach" to successor liability, "[w]ould that it were that easy."  *In re Ignition Switch Litig.*, 2017 WL 3382071, at *7.  Plaintiffs' failure to adopt any approach that would brief successor issues for each relevant jurisdiction is dispositive as summary judgment cannot be granted on an omnibus basis.

Plaintiffs ignore that ***no*** Wave 1 case listed in their Motion involves:  (i) stipulations that Indiana, Minnesota, or Delaware law apply; or (ii) Plaintiffs advocating for Indiana or Delaware law in their choice-of-law motions.  (*See* Ex. 2.) Notably, in ***sixty-three*** of the listed Wave 1 cases, the parties stipulated to Texas law, which rejects any form of implied assumption of successor liability—the sole merits basis for Plaintiffs' Motion.  *See, e.g.*, *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, at *6 (N.D. Tex. Nov. 18, 2016); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 233 (S.D. Tex. 2011).

These choice-of-law stipulations should be honored as it was reasonable for parties in diversity cases to enter them under the circumstances.  *See Fed. Ins. Co. v. NCNB Nat'l Bank*, 958 F.2d 1544, 1547 (11th Cir. 1992).  Plaintiffs, who are

alleging successor liability, voluntarily entered into choice-of-law stipulations pursuant to a Court process. This is not a situation where the parties stipulated to the applicability of a statute or regulation in a case under federal law. *Cf. Talbott v. Lakeview Ctr., Inc.*, 2010 WL 11557948, at *7 n.22 (N.D. Fla. Feb. 2, 2010). Indeed, choice-of-law stipulations have been routinely enforced in this MDL.

Even Indiana, Delaware, and Minnesota law are not uniform. As one example, Minnesota eliminated the "de facto merger" and "mere continuation" exceptions to the general rule against successor liability in 2006. *See, e.g.*, *ResCap Liquidating Tr. v. LendingTree, LLC*, 2020 WL 1317719, at *7 n.6 (D. Minn. Mar. 20, 2020); *Stoebner v. Opportunity Fin., LLC*, 562 B.R. 368, 381 (D. Minn. 2016); *Hankinson v. King*, 117 F. Supp. 3d 1068, 1073 (D. Minn. 2015). As another example, Delaware applies a much different "de facto merger" test than Indiana. *Compare Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 1765509, at *7 (C.D. Cal. Apr. 20, 2011) (applying Delaware law), *and Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 351 (S.D.N.Y. 2019) (same), *with U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co.*, 719 F. Supp. 2d 1020, 1029-30 (S.D. Ind. 2010).

### B. Plaintiffs' Arguments Under Indiana, Delaware, And Minnesota Law Are Without Merit

The "general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the

debts and liabilities of the transferor." 15 Fletcher Cyclopedia of the Law of Private Corporations § 7122. This rule applies in Indiana, Delaware, and Minnesota, and is articulated in the cases cited herein. Some—but not all—jurisdictions recognize an "implied assumption" exception to this rule. As this is the only exception that Plaintiffs argue, it is the only exception that 3M addresses further here. Plaintiffs have not met their burden of supporting the implied assumption exception "with credible evidence ... that would entitle [them] to a directed verdict if not controverted at trial." *Four Parcels*, 941 F.2d at 1438.

First, Plaintiffs ignore that no successor liability exists where the original entity still exists. *See, e.g.*, *Norfolk S. Ry. Co. v. Pittsburgh & W.V. R.R.*, 153 F. Supp. 3d 778, 807 (W.D. Pa. 2015), *aff'd*, 870 F.3d 244 (3d Cir. 2017) (collecting authority); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 2012 WL 1345175, at *4 (E.D. Ky. Apr. 18, 2012). Here, the Other Defendants still exist. In fact, they employ hundreds of people; had over $100 million in direct sales in 2021; and have significant assets, including a production facility, raw materials, and receivables through trade, intercompany receivables, and inventory. (Ex. 12, August 2022 Operating Report; Ex. 11, 9/19/2022 Schedules at 29, 62; Ex. 4, 8/15/2022 Injunction Tr. 67:12-69:7.) The Other Defendants' bankruptcy cases change nothing. The Other Defendants filed for reorganization under Chapter 11 (not liquidation) and are operating as debtors in possession. (*See* MDL Dkt. 3328.) They

are also working toward confirming a plan that establishes a settlement trust for the benefit of tort claimants. *See, e.g.*, *Conway v. White Trucks, Div. of White Motor Corp.*, 885 F.2d 90, 96-97 (3d Cir. 1989) (no successor liability under analogous circumstances). 3M is therefore not a successor-in-interest to the Other Defendants and is entitled to summary judgment in its favor.

Second, Plaintiffs fail to establish a prerequisite to successor liability: that the Other Defendants transferred "all or substantially all" of their assets to 3M. *See Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021); *see also Norfolk S. Ry.*, 153 F. Supp. 3d at 807-08 (collecting authority); *160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC*, 248 A.3d 404, 412-13 (N.J. App. Div. 2021) (same). The Aearo entities became 3M subsidiaries through an all-cash reverse triangular merger. (*See* Ex. 3, Merger Agreement at 1-7.) Thus, 3M did not acquire their assets. A reverse triangular merger is "'specifically designed to preclude the imposition of successor liability' because its result is a stock purchase, not a purchase of assets." *Ray v. Jud. Correction Servs., Inc.*, 2018 WL 2130408, at *1 & n.1 (N.D. Ala. May 9, 2018) (quoting *Norfolk S. Ry. Co.*, 153 F. Supp. 3d at 807). With respect to whether "all or substantially all" of the Other Defendants' assets were transferred during the purported "upstreaming" in 2010, Plaintiffs do not present evidence that would withstand a directed verdict if not controverted at trial. There is evidence that the "upstreaming" was done for "management reporting

27

purposes" and the Other Defendants still have assets that exceed their non-CAEv2 liabilities by over *$2 billion*.  (Ex. 4, 8/15/2022 Injunction Tr. 67:12-69:7, 74:21-80:21; Ex. 11, 9/19/2022 Schedules at 29, 62.)

Third, under Indiana law, a "[c]ourt may not find an implied agreement to assume the seller's liabilities where the contract provision negating liability is clear and unambiguous." *See, e.g.*, *U.S. Automatic Sprinkler Co.*, 719 F. Supp. 2d at 1028 (citing *Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir. 1977)); *see also HAS, Inc. v. Bridgton, Inc.*, 1999 WL 1893209, at *10 (S.D. Ind. Sept. 20, 1999).   In Minnesota, there is no implied assumption where the purchasing entity "carefully defined the liabilities it would assume, and the debts at issue were not among them." *See, e.g.*, *A.P.I., Inc. v. Home Ins. Co.*, 877 F. Supp. 2d 709, 735 (D. Minn. 2012) (alterations adopted); *Johnson v. USL Prods., Inc.*, 2012 WL 2078478, at *5-6 (Minn. Ct. App. June 11, 2012).  Delaware recognizes these principles.  *See, e.g.*, *WD Encore Software, LLC v. Software MacKiev Co.*, 2017 WL 3317294, at *4 (D. Mass. Aug. 3, 2017) (Delaware law); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 136-39 (Tex. Ct. App. 2000) (same); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *1, *6-8 (Del. Super. Ct. Apr. 13, 1988).  So do many other jurisdictions.  *See, e.g.*, *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 256 (6th Cir. 1994).  Here, Aearo Holding's liabilities "continue[d] in effect and [were] unimpaired by the Merger" "[e]xcept as specifically set forth" in the Merger

Agreement. (Ex. 3, Merger Agreement at 1-2.) Because the Merger Agreement defines the liabilities to be assumed, and any CAEv2 tort-related liabilities were not among them, those liabilities continued on "unimpaired by the Merger" and were not assumed. The assumption of *other* liabilities is irrelevant. *See, e.g.*, *Lopez v. Stanley Black & Decker, Inc.*, 764 F. App'x. 703, 712-13 (10th Cir. 2019) (analyzing whether assumed liabilities encompassed plaintiff's product liability claims); *Ford Bacon & Davis, LLC v. Travelers Ins. Co.*, 635 F.3d 734, 735 (5th Cir. 2011) (similar); *Schwartz v. Pillsbury, Inc.*, 969 F.2d 840, 845-46 (9th Cir. 1992) (similar); *WD Encore Software*, 2017 WL 3317294, at *4 (similar, under Delaware law); *Fowler v. Werner Co.*, 2014 WL 4680732, at *1-6 (N.D. Ind. Sept. 18, 2014).

Fourth, Plaintiffs' arguments that 3M made payments on Aearo's behalf, whether in the *qui tam* matter, other litigation, or otherwise, are without merit. The "mere fact that the new corporation has voluntarily paid some of the debts of the old corporation is no ground for inferring that it assumed the latter's debts." 15 Fletcher Cyclopedia of the Law of Private Corporations § 7124; *see, e.g.*, *Innovative Design & Bldg. Servs., LLC v. Arch Ins. Co.*, 2014 WL 4770098, at *7 (S.D.N.Y. Sept. 23, 2014); *Fountain*, 1988 WL 40019, at *1, *6-8. Moreover, if the Court concludes that Aearo did not "exist" after the 2008 merger or 2010 "upstreaming," there could not be the "meeting of the minds" required for implied assumption—as a meeting of

the minds is not created by unilateral conduct. *See, e.g.*, *Cooper v. Lakewood Eng'g and Mfg. Co.*, 45 F.3d 243, 246 (8th Cir. 1995) (applying Minnesota law).[3]

Finally, Plaintiffs' reliance on the 2010 "upstreaming" is misplaced. Plaintiffs argue that they "focus[] on 2010, because that is the year 3M Company 'upstreamed' the Aearo's hearing protection business into 3M Company itself, and when Plaintiffs believe the facts demonstrate ... that [3M] clearly took on all CAEv2-related injuries." (Motion at 5 n.4.) Yet Plaintiffs cite no evidence for their "belie[f]" as to what "the facts demonstrate." (*See id.*) No 3M witness has testified that 3M took on the Other Defendants' tort liabilities in the "upstreaming." Mr. Myers's or others' *lack* of knowledge, including about Aearo's status as of 2019 or other corporate formalities, is not sufficient.[4] Further, 30(b)(6) testimony does not "preclude[] the corporation from later correcting, explaining, or  supplementing" that testimony. (MDL Dkt. 1695 at 22 (quoting *R&B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 786-87 (8th Cir. 2001)).) To that end, 3M's Associate General Counsel

---

[3] This decision references the 'de facto' and 'mere continuation' exceptions, as they had not yet been eliminated in Minnesota.

[4] Indeed, Mr. Myers was discussing how he personally started reporting to 3M personnel after 2008 as Aearo management personnel left for other companies. (Ex. 5, 8/16/2022 Injunction Tr. 118:15-119:5.) Likewise, Mr. Berger did not testify that 3M acquired *all* of Aearo's liabilities in 2008, including its CAEv2 tort liabilities. His testimony should not be so broadly construed in light of the Merger Agreement itself.

and Corporate Secretary testified he is "not aware of any contracts, assignments or assumptions between 3M and any of the debtors in effect at any time since 2018 regarding Combat Arms earplug liabilities." (Ex. 5, 8/16/2022 Injunction Tr. 191:9-19.)

Based on a diligent review of the Other Defendants' records by their Chief Restructuring Officer, and of 3M's records by its Associate General Counsel and Corporate Secretary, there is no indication—let alone documentation—that 3M assumed Aearo's CAEv2-related tort liabilities in this "upstreaming." (*Id.* 188:16-191:19; Ex. 4, 8/15/2022 Injunction Tr. 74:21-80:21.) Plaintiffs also ignore the LLC agreements that the Other Defendants entered in 2013, with retroactive effect as of September 29, 2008. These agreements each contain a provision indemnifying the "Member" and any "Affiliate of the Member" to the "fullest extent permitted by applicable law." (Exs. 6-10.) Because 3M is the sole equity member ("Member") of 3M Occupational Safety LLC, which is the Member of Aearo Holding LLC, 3M was indemnified from any CAEv2-related tort liability "to the fullest extent permitted by applicable law" after the purported "upstreaming." This evidences the opposite of an implied assumption.

31

## V.    Plaintiffs' Alternative Remedies Should Be Denied

### A.    Plaintiffs' Alternative Motion To Strike Should Be Denied

The Court should not grant Plaintiffs' motion to strike.  3M's answers to Plaintiffs' short-form complaints are not "essentially amendments to the Master Answer."  (Motion at 17.)  The Master Answer was implemented as a tool to minimize "inefficiencies" and "streamline" the pleading process.  (MDL Dkt. 763 (PTO 17) at ¶¶ 2, 12.)  It does not preclude 3M from asserting affirmative defenses in individual actions.  (*Id.* (master pleading procedures were entered "without prejudice to Defendants later ... asserting any affirmative defenses [or] filing an Amended Answer to address specifically any individual Complaints").)  Answers to short form complaints have routinely included defenses not otherwise in the Master Answer.  (*See, e.g.*, *Beal* Dkt. 62 at 8-9; *Wilkerson* Dkt. 87 at 8.)

Even if a "good cause" requirement applied, 3M's answers were timely and entail no prejudice to Plaintiffs.  *See* Section I.C.; *cf. Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, 2014 WL 10915507, at *2-3 (M.D. Fla. June 16, 2014).  Plaintiffs' futility arguments miss the mark as "a finding of futility is, in effect, a legal conclusion that the proposed defense would necessarily fail," *Archie v. Covington Cnty.*, 2021 WL 4227027, at *3 (M.D. Ala. Sept. 16, 2021) (internal quotation marks and citations omitted), and disagreements of facts are "not properly resolved in a futility analysis," *Univalor Tr., SA v. Columbia Petroleum, LLC*, 315

F.R.D. 374, 383 (M.D. Fla. 2016).  "As a general rule ... courts place a heavy burden on opponents who wish to declare a proposed amendment futile," *Beech v. F/V Wishbone*, 2014 WL 6773966, at *2 (S.D. Ala. Dec. 2, 2014) (internal quotation marks and citations omitted) (collecting authority).  Plaintiffs cannot carry that burden here for the reasons described in Section IV.

### B.    Plaintiffs' Disguised Motion *In Limine* Is Meritless

Plaintiffs' final alternative request is for a ruling that certain "categories of evidence are relevant and may be introduced to all future juries in CAEv2-related cases." (Motion at 20.)  First, no motions *in limine* have been filed yet in Wave 1.[5] By asking the Court to revisit motions not yet filed or preserved in Wave 1, Plaintiffs "pos[e] a hypothetical question, the answer to which would be an advisory opinion." *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995); *see also Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018).

Moreover, in the past, this Court has applied a reconsideration standard in relation to new arguments about certain evidence previously ruled upon. (*See Blum* Dkt. 99 at 2-3.)  Reconsideration is an "extraordinary remedy." (*Id.*)  For reconsideration of a prior evidentiary ruling, the Court previously required:  (i) "an

---

[5] The sole exception is in *George*, No. 7:20-CV-71963, regarding prior bellwether verdicts.  In his opposition to 3M's motions *in limine*, George raised arguments relating to prior bellwether verdicts.  *George* Dkt. 60.  As 3M's motion is pending before the Court, this issue is not addressed herein.

intervening change in the controlling law"; (ii) the availability of new evidence; or (iii) "the need to correct clear error or prevent manifest injustice." (*Id.*) "A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgement.'" (*Id.* (quoting *Quality of Life, Corp. v. City of Margate*, 805 F. App'x 762, 773 (11th Cir. 2020)).)

In their Master Long Form Complaint, Plaintiffs asserted that "Defendant 3M is liable for Aearo Defendants' conduct." (MDL Dkt. 704 ¶ 21.) Plaintiffs made this allegation months before opposing Defendants' motions *in limine* to preclude evidence related to the *qui tam* litigation, government press release, or verdicts in prior bellwether trials. (*Compare* MDL Dkt. 704, *with Hacker* Dkt. 88, *and McCombs* Dkt. 85.) Plaintiffs never argued that such evidence was relevant to their allegation that "3M is liable for Aearo Defendants' conduct." To be sure, such issues were not actually litigated in prior trials either. But Plaintiffs give the Court no reason to revisit those rulings—made before the first bellwether trial—at the present juncture.

Regardless of the standard, the Court should not grant Plaintiffs' request. The Court articulated reasons beyond relevance in excluding this evidence. For example, "the allegations in the qui tam complaint"—and related press release—"are inadmissible hearsay and may not be used for non-impeachment purposes." (MDL

Dkt. 1693 at 3.)  The Court also excluded the settlement agreement under Federal Rules of Evidence 403 and 408.  (*Id.* at 4-5.)  Indeed, under Rule 408(b), the only purposes for which a settlement agreement could be used is for bias, prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation.  None of those circumstances exist here.  The only conceivable purpose would be to attempt to establish that 3M admitted liability on Aearo's behalf—something that is belied by the document itself and impermissible under Rule 408(a).  (*See* MDL Dkt. 1664-7 (the Settlement Agreement "is neither an admission of liability by 3M, nor a concession by the United States that its claims are not well founded").)

Finally, to the extent the Court credits Plaintiffs' contention that "these categories of evidence will be relevant ... because each shows the ways in which 3M Company confirmed that it impliedly or expressly assumed the Aearo Defendants' CAEv2-related liabilities" (Motion at 20), any marginal relevance is not sufficient to change the Rule 403 balance as previously weighed by the Court (MDL Dkts. 1664, 1693).  The prejudice attendant to introducing evidence of other CAEv2 plaintiff bellwether verdicts, or previously excluded documents relating to the *qui tam* settlement, far outweighs any claimed relevance.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: October 18, 2022                    Respectfully submitted,

                                           */s/ Kimberly Branscome*
                                           _____

                                           Kimberly Branscome
                                           Jay Bhimani
                                           Allison K. Ozurovich
                                           Dechert LLP
                                           US Bank Tower
                                           633 West 5th Street
                                           Suite 4900
                                           Los Angeles, CA, 90071
                                           Telephone: (213) 808-5700
                                           kimberly.branscome@dechert.com
                                           jay.bhimani@dechert.com
                                           allie.ozurovich@dechert.com

                                           Jonathan Tam
                                           Dechert LLP
                                           One Bush Street
                                           San Francisco, CA 94104
                                           Telephone: (415) 262-4518
                                           jonathan.tam@dechert.com

                                           Matthew P. Steinberg
                                           Dechert LLP
                                           1095 Ave. of the Americas
                                           New York, NY 10036
                                           Telephone: (212) 698-3500
                                           matthew.steinberg@dechert.com

                                           Craig J. Castiglia
                                           Dechert LLP
                                           2929 Arch St.
                                           Philadelphia, PA 19104
                                           Telephone: (215) 994-2000
                                           craig.castiglia@dechert.com

                                           *Admitted Pro Hac Vice*

                                           **Counsel for Defendant 3M Company**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendant certifies that this memorandum contains 7,994 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated: October 18, 2022                                    Respectfully submitted,

*/s/ Kimberly Branscome*
Kimberly Branscome

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 18th day of October 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated: October 18, 2022                    Respectfully submitted,

*/s/ Kimberly Branscome*
Kimberly Branscome