**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*All Wave 1 Cases* | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br><br>Magistrate Judge Hope T. Cannon |

**REMAND WAVE 1 PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON 3M COMPANY'S FULL AND INDEPENDENT LIABILITY FOR CAEv2-RELATED INJURIES**

## I. 3M CANNOT NOW DISCLAIM FEDERAL SUBJECT MATTER JURISDICTION AND THE FEDERAL ESTOPPEL PRINCIPLES THAT COME WITH IT

Knowing it is doomed under federal estoppel law, 3M argues for diversity jurisdiction in an effort to manufacture the supposed need for a state-by-state analysis. 3M insists that "[t]he only agreed-upon jurisdictional basis in the bellwethers was diversity," Dkt. 3541 ("Opp.") at 14, but that is irrelevant. The parties' positions on diversity do not affect the Court's actual basis for jurisdiction, which it must determine for itself. *See Bush v. United States*, 703 F.3d 491, 494 (11th Cir. 1983) (stipulating to jurisdiction "does not automatically vest authority in the district court … for subject matter jurisdiction cannot be assumed by the court"). Unlike *In re General Motors LLC Ignition Switch Litigation*, federal subject matter jurisdiction exists here, allowing an omnibus analysis. *Cf.* Opp. at 3, 5.

The great irony is that 3M's opposition to a motion based primarily on estoppel principles now attempts to abandon and disclaim a prior position argued repeatedly in this MDL—namely, that this Court has federal-question subject matter jurisdiction over all cases. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 365617 (N.D. Fla. 2020) (concluding, based on arguments from 3M, that the Court has federal-question subject matter jurisdiction); Dkt. 800 & 959 ¶¶ 22, 24, Aff. Def. ¶ 11 at 96-97.[1] To this day, 3M insists the Court has federal jurisdiction

---

[1] The federal officer removal statute "merely serves to overcome the 'well-pleaded

1

over ***all*** plaintiffs, and still asserts the government contractor defense in ***every*** case. *Id.*[2] These positions are consistent with every bellwether judgment. *See*, *e.g.*, *Adkins*, Dkt. 73 at 1 (3M asserting federal question jurisdiction in pretrial stipulation).

Whether the Court has diversity jurisdiction in each of the Wave 1 cases remains an open question because 3M insists in each short form answer that it cannot admit or deny such jurisdiction. *See*, *e.g.*, *Cupit*, Dkt. 15 ¶ 6. Thus, at this time, the only clear basis for jurisdiction over Wave 1 cases is, by 3M's own argument and the Court's orders to date, federal subject matter jurisdiction.

Why is 3M running from federal subject matter jurisdiction? Because a federal court with such jurisdiction must utilize federal estoppel principles, even where there

---

complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 136 (1989). "[I]t is the ***raising of a federal question*** in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Id.*; *see also Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; ***the federal-question element is met if the defense depends on federal law***.") (emphasis added); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 589 (5th Cir. 2022) (the federal officer removal statute "allows qualifying persons to remove cases to federal court that ***ordinary federal question removal*** would not reach ..., so long as the officer asserts a federal defense in the response to a complaint") (internal quotations omitted) (emphasis added). Here, 3M asserts the statute applies to all MDL plaintiffs, including in every pretrial stipulation to date.

[2] *See also*, *e.g.*, *Cupit*, Dkt. 15 at 7 (Aff. Def. ¶ 18); *see also McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1200 (M.D. Fla. 2006) (finding federal question jurisdiction in case by ex-military plaintiffs where the defendant invoked the government contractor defense).

2

may also be a basis to assert diversity jurisdiction.³ 3M's inconsistent, belated, and convenient attempt to invoke a "patchwork" of state law estoppel doctrines based on diversity jurisdiction and its argument that the Court cannot decide the issue on an omnibus basis under federal law therefore each fail. *See* Opp. at 13-14, 17-18.

## II.  3M IS JUDICIALLY ESTOPPED FROM DISCLAIMING ITS FULL AND INDEPENDENT LIABILITY FOR ALL CAEv2 INJURIES

Applying the correct law, 3M's opposition to judicial estoppel falls apart. 3M's assertion that it remained silent on its full and independent liability ignores reality. To the contrary, in multiple cases ending in final judgments, 3M made multiple representations in pleadings, discovery, dispositive motions, and 16 bellwether trials affirmatively indicating it, in fact, had full liability and would not argue otherwise. *See* Dkt. 3506-1 ("Mot.") at 5-8.

For example, 3M indicated to the Court that it could be held fully and independently liable for plaintiffs whose use of and injury from the CAEv2 (*e.g.*, *Adkins*) all pre-dated the 2008 Aearo acquisition. (3M does not even mention *Adkins*

---

³ *See*, *e.g.*, *Clark v. Ocwen Loan Servicing*, 2015 WL 11438602, at *4 (N.D. Ga. July 30, 2015) (applying federal judicial estoppel law where "federal jurisdiction is predicated upon both" diversity and federal question jurisdiction). The same holds true when it comes to collateral estoppel. *See Samco Glob. Arms, Inc. v. Republic of Honduras*, 2012 WL 1372197, at *5 (S.D. Fla. Mar. 29, 2012), *aff'd*, 511 F. App'x 828 (11th Cir. 2013) ("The Court notes that 'Federal law clearly governs the question whether a prior federal court judgment based on federal question jurisdiction is res judicata in a case also brought, as this one was, under federal question jurisdiction.'") (quoting *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 715 (5th Cir. 1975)).

3

once in its opposition.) 3M also affirmatively argued in *Wayman* and *Vaughn* that the Aearo entities' involvement as co-defendants was illusory and that 3M was the only real party. *Id.*; *see also* Dkt. 3386. And Plaintiffs noted that 3M made extensive judicial admissions that **all** Defendants manufactured and designed the CAEv2, indicating that 3M had taken on full and independent liability for the CAEv2. *See* Dkt. 3506-3 (Hoekstra Decl.) ¶ 9.[4] To the extent 3M argues to the contrary (Opp. at 21-23), it simply rehashes arguments this Court already rejected. *See* Dkt. 3386.

    3M's cited cases do not change this conclusion. Almost all of the cases are state decisions and say nothing about Eleventh Circuit law on judicial estoppel. Moreover, the only federal case 3M cites, *Cooper v. Harbor Ins. Co.*, 874 F. Supp. 947, 955 (D. Minn. 1994), *aff'd*, 45 F.3d 243 (8th Cir. 1995), helps Plaintiffs. That case—which is about successor liability under Minnesota law—held that actions like those 3M took throughout this MDL could not be evidence of an implied agreement to take on a transferor's liabilities ***when the transferor was no longer in existence*** and therefore could not agree to the terms of the assumption of liabilities. *Id.* at 953. Here, the Aearo entities are still in existence and therefore had the ability to transfer

---

[4] A litigant is bound by the admissions in his pleadings. *Dos Santos v. United States Attorney Gen.*, 982 F.3d 1315, 1319 (11th Cir. 2020). An admission in an answer is dispositive because it is deemed a judicial admission. *Bejerano v. Flex Florida Corp.*, 2020 WL 4059604, at *5 (S.D. Fla. July 20, 2020) (citing *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983)).

their liabilities in exactly the manner *Cooper* notes. In fact, Minnesota state courts analyzing *Cooper* have noted that where, like here, the transferor entities still exist at the time the transferee began to demonstrate they took on the transferor's liabilities, that is evidence of implied assumption of liabilities for successor liability purposes, notwithstanding an earlier contract stating the transferor kept all liabilities in an asset sale. *See Johnson v. USL Prod., Inc.*, 2012 WL 2078478 (Minn. App. Aug. 21, 2012); *see also* Section V, *infra*. Accordingly, 3M should be judicially estopped from disclaiming such full and independent liability now.

### III. 3M IS COLLATERALLY ESTOPPED FROM DISCLAIMING ITS FULL LIABILITY FOR CAEv2-RELATED INJURIES

3M's arguments against collateral estoppel under Florida state law fail for the same reason as they do for judicial estoppel: federal law applies. Under that law, there is no requirement of mutuality of the parties; privity suffices. *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004).[5] Privity "is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party."[6] Here, Plaintiffs' Leadership was

---

[5] Even under Florida state law, privity between parties allows for collateral estoppel. *See Pearce v. Sandler*, 219 So.3d 961, 965 (Fla. App. 2017).

[6] *Pemco Aeroplex*, 383 F.3d at 1286; *see also Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1274-1275 (11th Cir. 2020) (noting "privity" includes situations where a nonparty invoking collateral estoppel "was adequately

5

appointed to represent all plaintiffs in this MDL and has done so (Wave 1 or not) at every step, including the bellwether trials. *See*, *e.g.*, *Baker*, Dkt. 121 at 3-4 (finding Plaintiff Baker was represented in depositions run by Leadership in *Adkins*, *Taylor*, and *Estes*). Plaintiffs relied on Leadership for all core common benefit tasks, including litigating successor liability. They are clearly in privity, and 3M has made no colorable argument to the contrary.

To the extent 3M argues (Opp. at 14) that the Eleventh Circuit has "explicitly barred" collateral estoppel in product liability cases, that overstates *Deviner v. Electrolux Motor*. There, the Eleventh Circuit stated that collateral estoppel "should not be extended ***indiscriminately***" to tort cases with differing facts and "no hard and fast legal standard." 844 F.2d 769, 774 (11th Cir. 1988) (emphasis added). Here, the facts regarding 3M's full and independent liability are the same for every CAEv2-related personal-injury case—a far cry from the situation *Deviner* warned against (*i.e.*, applying collateral estoppel on plaintiff-specific facts and circumstances).

Moving to whether the parties "actually litigated" 3M's full and independent liability in the bellwethers, "[a]n issue is considered actually litigated when the issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1267-68 (11th Cir.

---

represented by someone who was a party to the [previous] suit, including, for example, a class action where rulings are binding on class members").

6

2011). If a party could defend the merits of the issue but chose not to do so, it was still "actually litigated." *See In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995).

Plaintiffs raised 3M's full and independent liability in the Master Complaint (¶ 21) and submitted that issue in each bellwether trial, including those involving injuries that entirely predated 2008 ***and*** those spanning the pre- and post-acquisition time periods. *See* Mot. at 10-11. In each, the winning bellwether plaintiff can collect the full amount of their verdict from 3M, indicating the issue was indeed actually litigated and fundamental to the verdict. Plaintiffs thus satisfy this element.[7]

Finally, 3M's reliance on *Parklane Hosiery* (Opp. at 16-17), ignores Plaintiffs' points about the nature and consistency of verdicts on 3M's full and independent liability. Every Plaintiff verdict indicated the juries found 3M fully and independently liable, and every defense verdict exculpated all defendants, indicating 3M's full and independent liability could not have possibly motivated the verdict. Unsurprisingly, 3M offers no response.

## IV.   THE COURT HAS THE INHERENT POWER TO FIND 3M WAIVED ITS NEW POSITIONS ON SUCCESSOR LIABILITY

3M's opposition to waiver (Opp. at 7-11) focuses almost entirely on whether successor liability is an affirmative defense, ignoring Plaintiffs' overarching point

---

[7] Indeed, as noted in the original *Cupit* motion, only 3M posted bonds in each appeal to date. If the bellwether plaintiffs win those appeals, they will be able to collect from 3M without any need to pursue payment from the Aearo entities.

that, for years, 3M indicated that it had full and independent liability for any proven CAEv2-related injuries through (1) explicit statements to Plaintiffs (*e.g.*, Eric Rucker's undisputed statements that 3M did not intend to pursue a successor liability defense, *see* Dkt. 3361-1 ¶ 5); (2) explicit statements to the Court (*e.g.*, the *Wayman* and *Vaughn* post-trial briefs); (3) the 16 bellwether trials; (4) judicial admissions (*see* Hoekstra Decl. (Dkt. 3506-3) ¶ 9); (5) appeal bonds; and (6) the numerous other instances set forth in Plaintiffs' opening brief. Under these circumstances, Plaintiffs do not ask for waiver as an operation of the pleading rules, but as a sanction under the Court's inherent authority because 3M's bad faith prejudices them and a lesser sanction would not serve the goals of punishment and deterrence.[8]

The reason for this request is largely self-evident. At 3M's urging, the Court closed general discovery. Dkt. 1203 at 2. Had 3M indicated at any point that—contrary to its undisputed statements to Plaintiffs at the beginning of the case (*e.g.*, Mr. Rucker's Rule 26(f) conference statements)—it intended to dispute successor liability, Plaintiffs would have explored that in general discovery. Plaintiffs may also have analyzed choice of law differently, seeing as 3M now invokes choice-of-law

---

[8] *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (courts may exercise their inherent authority to issue sanctions when a party acts in bad faith); *see also In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 383 (3d Cir. 1997) ("inherent powers include the power … to preclude claims or defenses"); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1300 (S.D. Fla. 2007) (utilizing inherent authority to enter default judgment against defendant).

stipulations to argue certain states' laws apply to the question of successor liability when that was not a defense 3M previously asserted. Finally, Plaintiffs may have provided general expert reports on the issue but are now precluded from doing so.

Courts addressing similar facts have precluded a party from asserting a successor liability defense or from defending against successor liability as a claim.[9] Thus, it is irrelevant whether successor liability is an affirmative defense, because 3M's attempt to dispute it at this late date warrants the sanction of exclusion.[10]

## V. 3M'S HODGEPODGE OF SUBSTANTIVE SUCCESSOR LIABILITY ARGUMENTS FAIL

***State-by-state analysis.*** 3M first argues (Opp. at 24) that the Court cannot

---

[9] *See*, *e.g.*, *Merryfield v. KLI, Inc.*, 2018 WL 4178178, at *5 (E.D. Wisc. Aug. 30, 2018) (striking "Defendants' defense denying successor liability" as a Rule 37 discovery sanction); *see also SunTrust Bank v. Nik*, 2012 WL 1344390, at *2-3 (E.D. Va. Mar. 22, 2012), *report and recommendation adopted*, 2012 WL 1344376 (E.D. Va. Apr. 17, 2012) (directing judgment on successor liability, and further awarding attorney fees pursuant to Rule 37 due to defendants' related discovery misconduct— a sanction greater than what Plaintiffs request); *Ocello v. City of New York*, 2008 WL 789857, at *8-9 (E.D.N.Y. Mar. 21, 2008), *vacated in part sub nom.*, 347 F. App'x 639 (2d Cir. 2009) (finding that "[p]recluding [parties'] successor liability defense is … not an effective form of sanctions," and that "striking their answer" was more appropriate); *cf. City of Jacksonville v. Shoppes of Lakeside, Inc.*, 2017 WL 11507425 (M.D. Fla. Sep. 22, 2017) (issuing sanctions against defendant's third-party complaint for contribution where record showed it repeatedly represented for years it was a successor-in-interest to relevant polluter).

[10] *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1310 (11th Cir. 2021) (reviewing the "district court's imposition of sanctions … pursuant to its inherent power for an abuse of discretion," and affirming multiple sanctions, including but not limited to dismissal of consumer's claims).

substantively decide successor liability on an omnibus basis and must instead conduct a state-by-state analysis. As discussed below, the state-specific arguments 3M raises are either completely irrelevant to Plaintiffs' own arguments or fail to identify a genuine dispute of material fact. Accordingly, the specter 3M raises of a 50-state survey fails to refute the bases to rule in Plaintiffs' favor now.

***De facto merger and mere continuation.*** 3M notes (Opp. at 25) that some states differ in how they analyze the "*de facto* merger" and "mere continuation" exceptions to the successor liability doctrine. Although Plaintiffs reserve their right to prove such exceptions at a later date, if necessary, they do not move on those exceptions in this motion, rendering 3M's arguments entirely irrelevant.

***Texas law.*** 3M argues (Opp. at 24) that Texas law does not recognize implied assumption of liabilities for successors. However, as noted in the very first *Cupit* motion, "no successor liability" is an affirmative defense under Texas law. *See* Dkt. 3361 at 6 (citing *Celotex Corp. v. Tate*, 797 S.W.2d 197 (Tex. App. 1990), *writ dismissed by agreement* (Aug. 16, 1996) (noting that the defense of "no successor liability" is an affirmative defense, requiring it to be specifically pled)). Thus, for that particular state, it is unquestioned that 3M had to affirmatively plead any objection to successor liability well before now, and it has waived the defense for all Texas law trials, which warrants summary judgment on the issue now.

***"The predecessor must cease to exist."*** 3M cites some federal opinions (Opp.

10

at 26) for the proposition that a predecessor entity must cease to exist for successor liability to apply under state law. The states identified in those opinions—Pennsylvania, Ohio, Kentucky, Vermont—hold the exact opposite, rendering the federal opinions 3M cites incorrect.[11] 3M's misdirection here appears to stem from the fact that a predecessor ceasing activities is often an element of states' *de facto* merger and/or mere continuation exceptions. But Plaintiffs move for summary judgment under the implied assumption of liabilities exception.

***"Aearo must have transferred substantially all of its assets to 3M."*** The next argument (Opp. at 27) is that Aearo must have transferred "all or substantially all" of its assets to 3M. In this Circuit, 80% of a corporation's assets constitute "substantially all" of its assets. *See Gross v. Comm'r*, 88 F.2d 567 (5th Cir. 1937) (holding that 34 BTA 395 (1936) was incorrect when it held that 80% of corporation's assets was not "substantially all" of that company's assets). 3M's own witnesses have confirmed that Aearo transferred approximately 80% of its business to 3M as part of the 2010 upstream. *See* Dkt. 3542-4 at 74:21-75:22.[12] Therefore,

---

[11] *See Cornell Ardmore, LP v. Isen*, 279 A.3d 1247 (Pa. 2022) (finding successor liability where predecessor entity still existed); *Logsdon v. Scientific Design Co., Inc.*, 2006 WL 2380824 (Ky. App. Aug. 18, 2006) (same); *Gladstone v. Stuart Cinemas, Inc.*, 878 A.2d 214 (Vt. 2005) (same); *Mohammadpour v. Thomas*, 2005 WL 1793515 (Ohio App. Ohio July 27, 2005) (same).

[12] 3M's citation (Opp. at 27-28) to testimony and financial schedules from the bankruptcy as "proof" that the Aearo entities have substantial assets is more than a little disingenuous. The "assets" they refer to are the amounts 3M committed to fund

11

even if 3M accurately recited state law on this issue—which Plaintiffs dispute—binding precedent makes clear that it did, in fact, receive substantially all of Aearo's assets, thereby satisfying even 3M's contrived "substantially all" requirement.[13]

***"The 2008 contract overrides the 2010 assumption of liabilities."*** 3M's next argument (Opp. at 28-29) is that, because the original Aearo stock purchase agreement supposedly kept CAEv2 liabilities with Aearo, 3M could not have subsequently assumed those liabilities. That argument is wrong under the exact state laws 3M cites, particularly given the undisputed facts regarding 3M's judicial admissions that it designed and manufactured the CAEv2, as well as that it labeled and sold the CAEv2 under its own brand before and after the 2010 upstreaming.[14]

***"3M's 2010 and post-2010 conduct is not evidence it assumed all CAEv2 liabilities."*** Next, 3M argues (Opp. at 29-30) that the multiple instances in which it took on full and independent liability for CAEv2-related claims since 2010 is not

---

to the Aearo entities as part of their contrived attempt to manufacture the Aearo entities' insolvency and supposed need for a preliminary injunction.

[13] Decisions handed down by the former United States Court of Appeals for the Fifth Circuit as of September 30, 1981 shall be binding as precedent in the Eleventh Circuit and district courts in this circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[14] *See, e.g.*, *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191 (Ind. App. 1993) (virtually identical actions as 3M's evinced that transferee impliedly assumed liabilities, notwithstanding asset purchase agreement stating otherwise); *Johnson*, 2012 WL 2078478, at *5-*6 (Minn. App. Aug. 21, 2012) (same).

evidence it impliedly assumed all such liabilities. Here, 3M's own citations (Opp. at 29-30) disprove its argument. "Whether a party has impliedly assumed the liabilities of another depends on the facts and circumstances of each case and the parties' conduct and representations." 15 Fletcher Cyclopedia of the Law of Private Corporations § 7124. "Admissions of liability on the part of officers or other officials of the successor corporation may also be considered in determining whether implied liability exists." *Id.* Here, 3M settled a *qui tam* lawsuit with allegations extending back before the Aearo acquisition; explicitly told Plaintiffs it did not intend to—and could not—raise a successor liability defense; put itself on 16 different verdict forms as an entity that could be held fully and independently liable for CAEv2-related injuries, even for purely pre-2008 injuries; and made numerous judicial admissions it manufactured, designed, and sold the CAEv2 long before the 2008 acquisition. All of these activities—which ***3M*** contends were beyond the liability limitations of the 2008 stock purchase agreement—demonstrate it impliedly assumed CAEv2 liabilities. *Cf. Innovative Design and Bldg. Servs., LLC v. Arch Ins. Co.*, 2014 WL 4770098, at *7 (S.D.N.Y. Sept. 23, 2014) (cited in Opp. at 29) (no implied assumption of liabilities because purchaser's payments to resolve contract liabilities arose from liabilities expressly assumed in the relevant asset purchase agreement).

***"Indemnification means 3M did not assume the CAEv2 liabilities."*** 3M next argues (Opp. at 31) that it could not have impliedly assumed the Aearo entities'

13

CAEv2 liabilities because the Aearo entities' 2013 LLC agreements include a provision supposedly indemnifying 3M to the "fullest extent permitted by applicable law." Whether or not the 2013 LLC agreements cover CAEv2 liabilities remains hotly contested. Even assuming it does, any applicable indemnification agreement *supports* an implied assumption of liabilities because an indemnity right indicates liabilities have not been extinguished and such liabilities lie with the indemnitee (*i.e.*, 3M). *See*, *e.g.*, *Logsdon*, 2006 WL 2380824, at *2 (indemnification agreement was evidence of implied assumption of liabilities for products liability claims); *Niven v. E.J. Martells Co.*, 983 P.2d 1193 (Wash. App. 1999) (same).

## VI. IF SUCCESSOR LIABILITY IS TRIED, 3M HAS PUT ITS OWN LITIGATION CONDUCT SQUARELY AT ISSUE

3M's final argument against Plaintiffs' supposed "motion *in limine*" (Opp. at 33-34) ignores that, if the Court finds a genuine issue of material fact, it must do so because there is conflicting evidence. Here, 3M argues that its assumption of liabilities in all CAEv2 litigation to date does not suffice to satisfy a showing of successor liability. But it is 3M's conduct in CAEv2 litigation that this Court found showed it is committing an about-face on successor liability. Dkt. 3386. Given that, *3M* put its own conduct at issue for the first time, satisfying the "new evidence" requirement of any supposed reconsideration standard here. Although reconsideration may be an extraordinary remedy, 3M's bad faith about-face is itself extraordinary, requiring a similar reaction.

14

Moving to the substance of 3M's evidentiary arguments, it misrepresents FRE 408. By the Rule's own terms, a settlement may be admitted for a purpose other than proving the validity or amount of the disputed claim that is the subject of the settlement, including to show notice, or a party's state of mind and intent.[15] Similarly, Rule 403 is a balancing inquiry and, if 3M asserts it has taken no actions indicating it assumed full and independent liability for CAEv2 injuries, **Plaintiffs** will suffer prejudice if they are unable to show the many and varied instances where 3M did exactly that.[16] Plaintiffs and the Court can redact any materials to safeguard against undue prejudice to 3M—but it is not prejudicial for a party to face evidence that directly undercuts its own supposed defenses.[17]

---

[15] FRE 408; *see Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 540 (7th Cir. 2017) (*citing Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 484 (7th Cir. 2000)).

[16] FRE 403; *see Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) ("[i]n applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'"); *see United States v. Finestone*, 816 F.2d 583, 585 (11th Cir. 1987) (similar); *see also United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (similar); *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989) (similar).

[17] *See United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010); *see also United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion" under Rule 403.).

DATED:  October 24, 2022      By  */s/ Bryan F. Aylstock*
　　　　　　　　　　　　　　　　　　Bryan F. Aylstock, Lead Counsel
　　　　　　　　　　　　　　　　　　Florida State Bar No. 078263
　　　　　　　　　　　　　　　　　　AYLSTOCK, WITKIN, KREIS &
　　　　　　　　　　　　　　　　　　OVERHOLTZ, PLLC
　　　　　　　　　　　　　　　　　　17 East Main Street, Suite 200
　　　　　　　　　　　　　　　　　　Pensacola, FL 32502
　　　　　　　　　　　　　　　　　　Tel.: (850) 202-1010
　　　　　　　　　　　　　　　　　　baylstock@awkolaw.com

　　　　　　　　　　　　　　　　　　Shelley V. Hutson, Co-Lead Counsel
　　　　　　　　　　　　　　　　　　(Admitted Pro Hac Vice)
　　　　　　　　　　　　　　　　　　Texas State Bar No. 00788878
　　　　　　　　　　　　　　　　　　CLARK, LOVE & HUTSON, GP
　　　　　　　　　　　　　　　　　　440 Louisiana Street, Suite 1600
　　　　　　　　　　　　　　　　　　Houston, TX 77002
　　　　　　　　　　　　　　　　　　Tel.: (713) 757-1400
　　　　　　　　　　　　　　　　　　shutson@triallawfirm.com

　　　　　　　　　　　　　　　　　　Christopher A. Seeger, Co-Lead Counsel
　　　　　　　　　　　　　　　　　　(Admitted Pro Hac Vice)
　　　　　　　　　　　　　　　　　　New Jersey State Bar No. 042631990
　　　　　　　　　　　　　　　　　　SEEGER WEISS LLP
　　　　　　　　　　　　　　　　　　77 Water Street, 8th Floor
　　　　　　　　　　　　　　　　　　New York, NY 10005
　　　　　　　　　　　　　　　　　　Tel.: (212) 587-0700
　　　　　　　　　　　　　　　　　　cseeger@seegerweiss.com

　　　　　　　　　　　　　　　　　　Adam B. Wolfson, Executive Committee
　　　　　　　　　　　　　　　　　　(Admitted Pro Hac Vice)
　　　　　　　　　　　　　　　　　　QUINN EMANUEL URQUHART &
　　　　　　　　　　　　　　　　　　SULLIVAN, LLP
　　　　　　　　　　　　　　　　　　865 S. Figueroa Street, 10th Floor
　　　　　　　　　　　　　　　　　　Los Angeles, CA 90017
　　　　　　　　　　　　　　　　　　Tel.: (213) 443-3000

　　　　　　　　　　　　　　　　　　***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2022, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record.

*/s/ Bryan F. Aylstock*
