**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | Case No. 3:19-md-2885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | |
| | ) | Magistrate Judge Hope T. Cannon |
| This Document Relates to All Cases | ) | |
| | ) | |

## DEFENDANT 3M COMPANY'S RESPONSE TO THE NOVEMBER 1, 2022 ORDER (DKT. 3571)

## RESPONSE TO ORDER

The core protections of the Due Process Clause are fair notice and an opportunity to be heard. *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018). A request for an inherent power sanction that identifies broad categories of conduct—with seven double-spaced pages to respond—provides neither. Nor would any sanction here respect the Supreme Court's caution that a court's "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Plaintiffs seek to obtain via an inherent power "sanction of waiver" what they cannot otherwise establish as a legal matter. Imposing such relief would be contrary to this MDL's purpose, which is to facilitate litigation—not pretermit it via a sanction. Plaintiffs have not come close to satisfying the standard for a waiver in any case, let alone across tens of thousands of actions.

The core of Plaintiffs' argument is "that, for years, 3M indicated that it had full and independent liability for any proven CAEv2-related injuries. . . ." (Reply at 7-8.) As a matter of due process, 3M cannot meaningfully address in seven double-spaced pages (in 14-point font) *all* of the conduct—spanning over three years—described in the materials cited in the November 1 Order. But in general, the conduct is hardly notable. It is common for a parent to, by way of example, sit "at the helm" in meetings or present a "united front" with its subsidiaries in individual bellwether trials in which they are all defendants. That is not the same as assuming "full and

independent" liability in thousands of future actions. Nor is it close to sanctionable, even if issues are litigated in later actions that were not the focus previously.

Under Eleventh Circuit precedent, to impose a sanction under its inherent power, a court must properly find "subjective bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223-25 (11th Cir. 2017). 3M here has engaged in no conduct, made no statement, and taken no legal position that could support a proper finding of subjective bad faith. Typically, bad faith involves: (a) repeated violations of an order; (b) a groundless claim or defense; or (c) perpetrating a "fraud on the court" through "egregious" conduct such as bribing a juror or fabricating evidence. Here, 3M has violated no order, let alone repeatedly. 3M's successorship position is far from groundless. And the conduct at issue is far afield of the extraordinary scenarios in which courts have properly imposed sanctions.

Finally, Plaintiffs have not requested any less drastic remedy to address their claimed prejudice from 3M's position on successorship. This is independently dispositive of Plaintiffs' arguments under Eleventh Circuit law. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

## I.    Imposing A Sanction Of Waiver Would Constitute Legal Error

The "key to unlocking a court's inherent power" is "subjective bad faith." *Purchasing Power*, 851 F.3d at 1223-25; *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995) (invoking inherent power "requires a finding of bad faith"). The authorized

sanctions have a common theme—to "rectify[] disobedience." *Purchasing Power*, 851 F.3d at 1225; *People for the Ethical Treatment of Animals, Inc., v. Dade City's Wild Things, Inc.*, 2020 WL 897988, at *7 (M.D. Fla. Feb. 25, 2020). There can be no proper finding of bad faith here and there is no disobedience to rectify.

Plaintiffs cite a number of broad categories "through" which they contend 3M "indicated that it had full and independent liability" in this MDL, including "explicit statements" to Plaintiffs and the Court (with examples prefaced by "*e.g.*") as well as "the 16 bellwether trials" as a category itself. (Reply at 7-8.) The Court's August 14, 2022 Order is also broad. To the extent *all* of this conduct is at issue, 3M cannot "meaningful[ly]" respond, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), in "seven pages (double-spaced, 14-pt. font)" (Dkt. 3571). If an unidentified subset of conduct is at issue, 3M does not have "fair notice" of what "conduct may warrant sanctions and the reasons why" as "[d]ue process requires." *In re Mroz*, 65 F.3d at 1576.

By way of example, the cited materials reference 3M sitting "at the helm" during meetings or presenting a "united front" with Aearo in trial. That is far from 3M assuming "full and independent liability" in all cases. Indeed, defendants routinely engage in similar conduct, including under joint defense or common interest agreements, even with no corporate relationship. Similarly, there is nothing unusual about a parent coordinating discovery, or producing a witness in response to a 30(b)(6) notice directed to the parent. (*See* Opp'n at 18-20.) The same is true of

a parent taking out an appeal bond, particularly when the parent and its subsidiaries consolidated their balance sheets. (*See* Ex. 1, July 2022 10-Q at 45-46.)

The other examples fare no better. Asking a jury to determine collective fault is not the same as one defendant assuming "full and independent liability." Parties may use a bellwether process, which is not intended to "resolv[e] every issue in every action," to evaluate the crux of a matter rather than an allocation of fault among entities. (*See* Opp'n at 15, 18-22.) Plaintiffs' arguments about "the *Wayman* and *Vaughn* post-trial briefs" miss the mark factually (*id.*), and would not support sanctions even under the extreme assumption that they were false and reckless. *See Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 813 F. App'x. 368, 375 (11th Cir. 2020) ("False statements [alone]—even those recklessly made—cannot justify sanctions grounded in the court's inherent authority"). The same is true of Plaintiffs' referenced "judicial admissions," even assuming they applied in the wave cases. (*Cf.* Dkt. 3506-5 (exemplar wave answer incorporating Master Answer "to the extent not inconsistent with this Answer," and stating that 3M did not sell, market, or manufacture the CAEv2 before 2008).) Whatever the ultimate evidentiary effect of such claimed admissions, they do not support sanctions. *See Com. Long Trading Corp. v. Scottsdale Ins. Co.*, 2013 WL 1100063, at *8 (S.D. Fla. Mar. 15, 2013).

Plaintiffs also reference a meet-and-confer "regarding Rule 26 exchanges," during which they claim "counsel for Plaintiffs were informed that the Aearo

acquisition by 3M Company was a stock purchase agreement, so no argument would be raised." (Dkt. 3361-1 ¶ 5.) One 3M counsel who was in attendance has previously addressed this issue and stated he has no recollection of the claimed statements. (Ex. 2, 8/11/2022 Tr. at 75:19-76:15.) Plaintiffs cite no writing reflecting the statement. It is not in the Rule 26(f) report, and the Master Answer filed three months later did not admit to successor liability. (Dkts. 434, 800 ¶ 21.) Plaintiffs also deposed a former Aearo executive about the 2008 purchase (*e.g.*, Ex. 3) and issued related document requests (*e.g.*, Ex. 4) to which 3M responded. Further, a statement in a meet-and-confer would not give rise to the requested sanctions in any event. *See Tran v. Geico Gen. Ins. Co.*, 2021 WL 4690700, at *2 (M.D. Fla. Oct. 7, 2021) (collecting authority holding that conduct between parties is not fraud on the court).

None of the foregoing shows "subjective bad faith." No one has claimed a "willful" and "repeated[]" violation of an order. *See, e.g.*, *Wimbush v. Georgia*, 673 F. App'x 965, 966-67 (11th Cir. 2016); *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). Nor is 3M's position "so lacking in arguable merit as to be groundless or without foundation." *See, e.g.*, *Terry v. Carnival Corp.*, 2014 WL 11798518, at *4 (S.D. Fla. Jan. 15, 2014) (collecting authority).[1] There has been no "fraud on the

---

[1] 3M's position is far from groundless, including—for example—under Texas law. (Opp'n at 8-10, 23-31.) Indeed, it is Plaintiffs who now attempt to support their successor liability claims under Texas law by citing a 1990 case under Texas (not federal) procedure and by ignoring more recent Texas cases holding that plaintiffs bear the burden of pleading—and proving—successor liability. *See* Opp'n at 8-10

court" and no one has "demonstrated, clearly and convincingly" that 3M "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of [another] party's claim or defense." *Bender v. Tropic Star Seafood, Inc.*, 2008 WL 4097602, at *2-3 (N.D. Fla. Sept. 3, 2008) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). Nor could they, as generally "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence . . . will constitute a fraud on the court." *Id.* (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (pre-*Bonner*)). At most, Plaintiffs contend that a legal concept is now being raised that was not the focus in prior actions—a far cry from a factual record of subjective bad faith. *See Grant v. Regal Auto. Grp., Inc.*, 2020 WL 8224608, at *3 (M.D. Fla. Aug. 3, 2020) (an "alter[ation in] defense strategy" is not itself bad faith).

Plaintiffs' cited cases are inapposite. Three involved Rule 37 discovery sanctions, which do not typically require bad faith. *See In re Skanska USA Civ. Southeast*, 2021 WL 4953239, at *2 (N.D. Fla. Aug. 5, 2021). Two (*Merryfield* and *SunTrust*) did not involve bad faith. The third (*Ocello*) did, but for a party that concealed witnesses' contact information and engaged in discovery misconduct.

---

(collecting authority); *see also Moore v. Panini Am. Inc.*, 2016 WL 7163899, at *6 (Tex. App. Nov. 7, 2016).

Plaintiffs' fourth cite (a "*cf.*" to *Jacksonville*) involved a party stating in writing it was a successor (with an insurance payout) but not engaging in related discovery.

## II.   Plaintiffs Have Not Even Sought Less Drastic Remedies

Plaintiffs liken their request to "preclud[ing] a party from asserting a successor liability defense or from defending against successor liability as a claim." (Reply at 9.) But "[t]he dismissal of a party's complaint or answer, or striking its defenses, as a sanction is a heavy punishment, appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Eagle Hosp.*, 561 F.3d at 1306 (alteration adopted, quotations omitted). Such a sanction requires clear and convincing evidence. *Bardfield v. Chisholm Props. Cir. Events*, 2010 WL 2278461, at *4 (N.D. Fla. May 4, 2010). Plaintiffs argue that but for 3M's conduct they "would have" pursued additional general discovery and "may have" approached choice of law or expert reports differently. (Reply at 8-9.) But only one Plaintiff—with a February 2023 trial date—has sought further discovery, which the Court initially granted. (*George* Dkts. 57, 59, 63.) If other Plaintiffs believe they require further discovery, they could request it, particularly with no other trial dates set. Likewise, no Wave 1 Plaintiff has sought to disclose an expert on successor issues. Finally, a different potential strategy for choice of law does not justify a sanction.

## CONCLUSION

For the foregoing reasons, sanctions are neither warranted nor appropriate.

Dated: November 8, 2022                    Respectfully submitted,

                                           _/s/ Jay Bhimani_
                                           _____

                                           Jay Bhimani
                                           Kimberly Branscome
                                           Allison K. Ozurovich
                                           Dechert LLP
                                           US Bank Tower
                                           633 West 5th Street
                                           Suite 4900
                                           Los Angeles, CA, 90071
                                           Telephone: (213) 808-5700
                                           jay.bhimani@dechert.com
                                           kimberly.branscome@dechert.com
                                           allie.ozurovich@dechert.com

                                           Jonathan Tam
                                           Dechert LLP
                                           One Bush Street
                                           San Francisco, CA 94104
                                           Telephone: (415) 262-4518
                                           jonathan.tam@dechert.com

                                           Matthew P. Steinberg
                                           Dechert LLP
                                           1095 Ave. of the Americas
                                           New York, NY 10036
                                           Telephone: (212) 698-3500
                                           matthew.steinberg@dechert.com

                                           Craig J. Castiglia
                                           Dechert LLP
                                           2929 Arch St.
                                           Philadelphia, PA 19104
                                           Telephone: (215) 994-2000
                                           craig.castiglia@dechert.com

                                           _Admitted Pro Hac Vice_
                                           **_Counsel for Defendant 3M Company_**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY this 8th day of November 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated: November 8, 2022                    Respectfully submitted,

_/s/ Jay Bhimani_
Jay Bhimani