# EXHIBIT E

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF FLORIDA
 3                 PENSACOLA DIVISION
 4
 5   CASE NO: 3:19-md-02885
 6
 7   Judge M. Casey Rodgers
 8   Magistrate Judge Gary R. Jones
 9
10   IN RE: 3M COMBAT ARMS EARPLUG
11   PRODUCTS LIABILITY LITIGATION
12
13   THIS DOCUMENT RELATES TO:
14   Robert Hellin, 3:19-CV-02395-MCR-GRJ
15
16
17          ORAL AND VIDEOTAPED PROCEEDINGS
18        OF THE DEPOSITION OF ROBERT HELLIN
19                 February 2, 2022
20
21   REPORTER BY:   Paul Morse
22                  Certified Court Reporter
23                  and Notary Public
```

```
 1              IT IS STIPULATED AND AGREED that the
 2     signature to and the reading of the deposition
 3     by the witness is waived, the deposition to
 4     have the same force and effect as if full
 5     compliance had been had with all laws and rules
 6     of Court relating to the taking of depositions.
 7              IT IS FURTHER STIPULATED AND AGREED
 8     that it shall not be necessary for any
 9     objections to be made by counsel to any
10     questions except as to form or leading
11     questions, and that counsel for the parties may
12     make objections and assign grounds at the time
13     of the trial, or at the time said deposition is
14     offered in evidence, or prior thereto.
15              IT IS FURTHER STIPULATED AND AGREED
16     that the notice of filing of the deposition by
17     the Commissioner is waived.
18
19
20
21              * * * * * * * * * * *
22
23
```

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF FLORIDA
 3                  PENSACOLA DIVISION
 4
 5
 6   BEFORE:
 7         Paul Morse, Commissioner.
 8
 9   APPEARANCES:
10         CONNER TURNER, ESQUIRE, of THOMPSON,
11   COE, COUSINS & IRONS, One Riverway, Suite 1400,
12   Houston, Texas 77056, appearing on behalf of
13   the Defendant.
14         NEAL GALLOWAY, ESQUIRE, of CLARK LOVE
15   HUTSON, 440 Louisiana Street, Suite 1600,
16   Houston, Texas 77002, appearing on behalf of
17   the Plaintiff.
18         ALSO PRESENT:  Steven Dixon, Video
19                * * * * * *
20         I, Paul Morse, CCR, a Court Reporter of
21   Mobile, Alabama, acting as Commissioner,
22   certify that on this date, as provided by the
23   Federal Rules of Civil Procedure and the
```

Page 5

1  foregoing stipulation of counsel, there came
2  before me via Remote Videoconference, beginning
3  at 9:00 a.m. CST, Robert Hellin, witness in the
4  above cause, for oral examination, whereupon
5  the following proceedings were had:
6
7              THE VIDEOGRAPHER:  All right.
8  Good morning.  We are going on the record at
9  8:58 a.m. on Wednesday, February 2, 2022.
10 Please note that the microphones are sensitive
11 and may pick up whispering, private
12 conversations, and cellular interference.
13 Please turn off all cell phones and/or place
14 them away from the microphones as they may
15 interfere with the deposition audio.  Audio and
16 video recording will continue to take place
17 unless all parties agree to go off the record.
18    This is media unit one of the video recorded
19 deposition of Robert Hellin taken by counsel
20 for the Defendant in the matter of Robert
21 Hellin versus 3M company filed in the United
22 States District Court, Northern District of
23 Florida, Pensacola Division, case number

Veritext Legal Solutions
877-373-3660                                                    800.808.4958

1    3:19-CV-02395-NCR-DRJ.

2        This deposition is being held remotely.  My

3    name is Steven Dixon from the firm Veritext.  I

4    am the Videographer.  The Court Reporter is

5    Paul Edward Morse from the firm Veritext.  I'm

6    not authorized to administer an oath.  I'm not

7    related to any party in this action, nor am I

8    financially interested in the outcome.

9        Counsel and all -- and all present in the

10   room and everyone attending remotely will now

11   state their appearances and affiliations for

12   the record.  If there are any objections to

13   proceeding, please state them at the time of

14   your appearance beginning with the noticing

15   attorney.

16                MR. TURNER:  My name is Conner

17   Turner.  I am counsel for Defendants in this

18   matter.

19                MR. GALLOWAY:  Neil Galloway of

20   Clark Love Hutson for Plaintiff Robert Hellin.

21                THE WITNESS:  I am the Plaintiff,

22   Robert Hellin.

23                THE VIDEOGRAPHER:  All right.

1  Will the Court Reporter please swear in the
2  witness.
3
4                    ROBERT HELLIN,
5  having first been duly sworn, testified as
6  follows:
7
8            THE VIDEOGRAPHER:  Thank you.  We
9  may proceed.
10           MR. TURNER:  Thank you.
11
12                    EXAMINATION
13 BY MR. TURNER:
14      Q.   Good morning, Mr. Hellin.  My name
15 is Conner Turner.  I represent the Defendants
16 in this matter.  Do you understand that?
17      A.   Yes.
18      Q.   Okay.  I'm going to ask you a
19 bunch of questions today.  It's going to be a
20 question-and-answer format.  So if you will do
21 your best to verbalize all of your responses
22 with yes's or no's or any elaborate answer you
23 need to give, will you do that for me?

1              MR. GALLOWAY:  Objection.  Asked
2    and answered a little bit earlier.
3         A.    And that is correct, yes.
4         Q.    Okay.  And the same thing, you
5    first became aware of your hearing loss in
6    2015?
7              MR. GALLOWAY:  Objection.  Asked
8    and answered again.
9         A.    Around that time, yes.
10        Q.    Okay.  And is this based on your
11   memory or your review of medical records?
12        A.    That would be both.
13        Q.    Okay.  Interrogatory number three,
14   same page, describe in detail how you acquired
15   each pair of CAEv2 that you were issued,
16   including who issued the CAEv2 and the date on
17   which you were issued the CAEv2.
18      Again, another objection and notwithstanding
19   it states Plaintiff recalls being issued CAEv2
20   for the first time at Schofield Barracks in
21   approximately '08/2009, August of 2009 prior to
22   deployment during Rapid Field Initiative.
23   Plaintiff does not specifically recall which

1   individual issued his earplugs.
2       Did I read that correctly?
3           A.   That is correct.  Yes.
4           Q.   Okay.  With regards to who issued
5   you the earplugs, I know you don't recall
6   specifically which individual.  But do you know
7   if it was someone from the military?
8           A.   I -- I believe so.
9           Q.   Okay.  Was it a military member
10  that trained you how to use the -- the CAEv2 or
11  how to input it into your ear?
12          A.   No.  So when we went to deploy,
13  RFI -- I need to elaborate.  RFI being Rapid
14  Fielding Initiative.  When we were preparing to
15  deploy, we would go through basically what
16  would called like a round-robin.  Multiple
17  tables were set up.  And you would go to each
18  table.  And then you would receive whatever
19  item it is.  And then they would check off on
20  whatever they're doing stating that yes, we've
21  given this person and this person and this
22  person.
23      There was another personnel who -- I don't

1  came with the unit.
2       Q.   Okay.  And did the CAEv2s come
3  with some form of packaging?
4            MR. GALLOWAY:  Objection.  Asked
5  and answered.  And also ambiguous as to what
6  packaging is.
7       Q.   You got the CAEv2s.  Correct?
8       A.   Yes.
9       Q.   How did they come?
10      A.   They came in a green case.  And we
11 had a piece of paper with it.  I don't remember
12 if it was inside, outside.  I just remember
13 that piece of paper, a green case to secure the
14 ear pro inside that case, and we could keep it
15 on our persons.
16      Q.   Okay.  Interrogatory number five
17 says -- and this is page seven -- describe each
18 instance in which you wore the CAEv2, including
19 the dates in which you wore the CAEv2, the
20 circumstances in which you wore the CAEv2, and
21 the types of noises that you were exposed to
22 while using the CAEv2.
23    Again, an objection.  And notwithstanding

1  it, it states to the best of his ability to
2  perceive and/or identify certain sounds while
3  using hearing protection devices in loud,
4  quickly changing, and dangerous environments,
5  Plaintiff was exposed in varying degrees of
6  magnitude and severity, including but not
7  limited to instances in which Plaintiff was
8  aware of exposure but in such distant proximity
9  as to feel no physical maleffect, to the
10 following noise-producing devices while in the
11 military.
12    Plaintiff does not recall every instance
13 where he wore CAEv2.  To the best of his
14 recollection, Plaintiff regularly used CAEv2
15 whenever he felt that he was being exposed to
16 noise that was dangerously loud and
17 specifically in the following circumstances,
18 small firearms -- I'm sorry, small arms fire,
19 50 caliber firearms, IEDs, and explosions
20 within a few hundred feet, controlled
21 detonations, helicopters, generators,
22 light/medium tactical vehicle, quote LMTV, and
23 armored vehicles, C-130s, during deployment,

1   when instructed by a commanding officer, and
2   fire fights with enemy combatants.
3       Plaintiff does not recall exact dates but
4   recalls the CAEv2 was his primary hearing
5   protection during his 2009 Iraq deployment.
6       Did I read all of that correctly?
7       A.   Yes.
8       Q.   Okay.  I just kind of want to
9   follow-up.  Were you ever involved in enemy
10  fire fights?
11      A.   Yes.
12      Q.   Okay.  And was that during your
13  Iraq deployment?
14      A.   Yes.
15      Q.   Okay.  Can you describe around the
16  timeframe that you were involved or engaged in
17  enemy fire fights?
18      A.   Not really.  A lot of it kind of
19  becomes a blur.
20      Q.   Okay.  Were you exposed or were
21  you ever engaged in an explosion or IED
22  explosion while in Iraq?
23           MR. GALLOWAY:  Objection.

REPORTER'S CERTIFICATE

STATE OF ALABAMA,

BALDWIN COUNTY,

    I, Paul Morse, Certified Court Reporter and Commissioner for the State of Alabama at Large, do hereby certify that the above and foregoing proceedings was taken down by me by stenographic means, and that the content herein was produced in transcript form by computer aid under my supervision, and that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings occurring on said date and at said time.

    I further certify that I am neither of kin nor of counsel to the parties to the action nor in any manner interested in the result of said case.

Paul Morse, CCR

ACCR #588 Expires 9/30/22