# EXHIBIT E

Page 1

1                  UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF FLORIDA

3                      PENSACOLA DIVISION

4

5     CASE NO: 3:19-md-02885

6

7     Judge M. Casey Rodgers

8     Magistrate Judge Gary R. Jones

9

10    IN RE: 3M COMBAT ARMS EARPLUG

11    PRODUCTS LIABILITY LITIGATION

12

13    THIS DOCUMENT RELATES TO:

14    Robert Hellin, 3:19-CV-02395-MCR-GRJ

15

16

17           ORAL AND VIDEOTAPED PROCEEDINGS

18         OF THE DEPOSITION OF ROBERT HELLIN

19                    February 2, 2022

20

21    REPORTER BY:  Paul Morse

22                  Certified Court Reporter

23                  and Notary Public

Page 2

```
 1              IT IS STIPULATED AND AGREED that the
 2    signature to and the reading of the deposition
 3    by the witness is waived, the deposition to
 4    have the same force and effect as if full
 5    compliance had been had with all laws and rules
 6    of Court relating to the taking of depositions.
 7              IT IS FURTHER STIPULATED AND AGREED
 8    that it shall not be necessary for any
 9    objections to be made by counsel to any
10    questions except as to form or leading
11    questions, and that counsel for the parties may
12    make objections and assign grounds at the time
13    of the trial, or at the time said deposition is
14    offered in evidence, or prior thereto.
15              IT IS FURTHER STIPULATED AND AGREED
16    that the notice of filing of the deposition by
17    the Commissioner is waived.
18
19
20
21              *  *  *  *  *  *  *  *  *  *  *  *
22
23
```

```
 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF FLORIDA

 3                 PENSACOLA DIVISION

 4

 5

 6   BEFORE:

 7         Paul Morse, Commissioner.

 8

 9   APPEARANCES:

10         CONNER TURNER, ESQUIRE, of THOMPSON,

11   COE, COUSINS & IRONS, One Riverway, Suite 1400,

12   Houston, Texas 77056, appearing on behalf of

13   the Defendant.

14         NEAL GALLOWAY, ESQUIRE, of CLARK LOVE

15   HUTSON, 440 Louisiana Street, Suite 1600,

16   Houston, Texas 77002, appearing on behalf of

17   the Plaintiff.

18         ALSO PRESENT:  Steven Dixon, Video

19               * * * * * *

20         I, Paul Morse, CCR, a Court Reporter of

21   Mobile, Alabama, acting as Commissioner,

22   certify that on this date, as provided by the

23   Federal Rules of Civil Procedure and the
```

```
 1   foregoing stipulation of counsel, there came
 2   before me via Remote Videoconference, beginning
 3   at 9:00 a.m. CST, Robert Hellin, witness in the
 4   above cause, for oral examination, whereupon
 5   the following proceedings were had:
 6
 7              THE VIDEOGRAPHER:  All right.
 8   Good morning.  We are going on the record at
 9   8:58 a.m. on Wednesday, February 2, 2022.
10   Please note that the microphones are sensitive
11   and may pick up whispering, private
12   conversations, and cellular interference.
13   Please turn off all cell phones and/or place
14   them away from the microphones as they may
15   interfere with the deposition audio.  Audio and
16   video recording will continue to take place
17   unless all parties agree to go off the record.
18      This is media unit one of the video recorded
19   deposition of Robert Hellin taken by counsel
20   for the Defendant in the matter of Robert
21   Hellin versus 3M company filed in the United
22   States District Court, Northern District of
23   Florida, Pensacola Division, case number
```

1  3:19-CV-02395-NCR-DRJ.

2      This deposition is being held remotely.  My

3  name is Steven Dixon from the firm Veritext.  I

4  am the Videographer.  The Court Reporter is

5  Paul Edward Morse from the firm Veritext.  I'm

6  not authorized to administer an oath.  I'm not

7  related to any party in this action, nor am I

8  financially interested in the outcome.

9      Counsel and all -- and all present in the

10  room and everyone attending remotely will now

11  state their appearances and affiliations for

12  the record.  If there are any objections to

13  proceeding, please state them at the time of

14  your appearance beginning with the noticing

15  attorney.

16              MR. TURNER:  My name is Conner

17  Turner.  I am counsel for Defendants in this

18  matter.

19              MR. GALLOWAY:  Neil Galloway of

20  Clark Love Hutson for Plaintiff Robert Hellin.

21              THE WITNESS:  I am the Plaintiff,

22  Robert Hellin.

23              THE VIDEOGRAPHER:  All right.

1   Will the Court Reporter please swear in the

2   witness.

3

4                  ROBERT HELLIN,

5   having first been duly sworn, testified as

6   follows:

7

8                  THE VIDEOGRAPHER:  Thank you.  We

9   may proceed.

10                  MR. TURNER:  Thank you.

11

12                  EXAMINATION

13   BY MR. TURNER:

14        Q.   Good morning, Mr. Hellin.  My name

15   is Conner Turner.  I represent the Defendants

16   in this matter.  Do you understand that?

17        A.   Yes.

18        Q.   Okay.  I'm going to ask you a

19   bunch of questions today.  It's going to be a

20   question-and-answer format.  So if you will do

21   your best to verbalize all of your responses

22   with yes's or no's or any elaborate answer you

23   need to give, will you do that for me?

1           MR. GALLOWAY:  Objection.  Asked

2    and answered a little bit earlier.

3           A.    And that is correct, yes.

4           Q.    Okay.  And the same thing, you

5    first became aware of your hearing loss in

6    2015?

7           MR. GALLOWAY:  Objection.  Asked

8    and answered again.

9           A.    Around that time, yes.

10           Q.    Okay.  And is this based on your

11    memory or your review of medical records?

12           A.    That would be both.

13           Q.    Okay.  Interrogatory number three,

14    same page, describe in detail how you acquired

15    each pair of CAEv2 that you were issued,

16    including who issued the CAEv2 and the date on

17    which you were issued the CAEv2.

18       Again, another objection and notwithstanding

19    it states Plaintiff recalls being issued CAEv2

20    for the first time at Schofield Barracks in

21    approximately '08/2009, August of 2009 prior to

22    deployment during Rapid Field Initiative.

23    Plaintiff does not specifically recall which

1   individual issued his earplugs.

2     Did I read that correctly?

3          A.    That is correct.  Yes.

4          Q.    Okay.  With regards to who issued

5   you the earplugs, I know you don't recall

6   specifically which individual.  But do you know

7   if it was someone from the military?

8          A.    I -- I believe so.

9          Q.    Okay.  Was it a military member

10  that trained you how to use the -- the CAEv2 or

11  how to input it into your ear?

12         A.    No.  So when we went to deploy,

13  RFI -- I need to elaborate.  RFI being Rapid

14  Fielding Initiative.  When we were preparing to

15  deploy, we would go through basically what

16  would called like a round-robin.  Multiple

17  tables were set up.  And you would go to each

18  table.  And then you would receive whatever

19  item it is.  And then they would check off on

20  whatever they're doing stating that yes, we've

21  given this person and this person and this

22  person.

23     There was another personnel who -- I don't

1    came with the unit.

2           Q.    Okay.  And did the CAEv2s come

3    with some form of packaging?

4               MR. GALLOWAY:  Objection.  Asked

5    and answered.  And also ambiguous as to what

6    packaging is.

7           Q.    You got the CAEv2s.  Correct?

8           A.    Yes.

9           Q.    How did they come?

10          A.    They came in a green case.  And we

11   had a piece of paper with it.  I don't remember

12   if it was inside, outside.  I just remember

13   that piece of paper, a green case to secure the

14   ear pro inside that case, and we could keep it

15   on our persons.

16          Q.    Okay.  Interrogatory number five

17   says -- and this is page seven -- describe each

18   instance in which you wore the CAEv2, including

19   the dates in which you wore the CAEv2, the

20   circumstances in which you wore the CAEv2, and

21   the types of noises that you were exposed to

22   while using the CAEv2.

23      Again, an objection.  And notwithstanding

1  it, it states to the best of his ability to

2  perceive and/or identify certain sounds while

3  using hearing protection devices in loud,

4  quickly changing, and dangerous environments,

5  Plaintiff was exposed in varying degrees of

6  magnitude and severity, including but not

7  limited to instances in which Plaintiff was

8  aware of exposure but in such distant proximity

9  as to feel no physical maleffect, to the

10  following noise-producing devices while in the

11  military.

12     Plaintiff does not recall every instance

13  where he wore CAEv2.  To the best of his

14  recollection, Plaintiff regularly used CAEv2

15  whenever he felt that he was being exposed to

16  noise that was dangerously loud and

17  specifically in the following circumstances,

18  small firearms -- I'm sorry, small arms fire,

19  50 caliber firearms, IEDs, and explosions

20  within a few hundred feet, controlled

21  detonations, helicopters, generators,

22  light/medium tactical vehicle, quote LMTV, and

23  armored vehicles, C-130s, during deployment,

1    when instructed by a commanding officer, and

2    fire fights with enemy combatants.

3       Plaintiff does not recall exact dates but

4    recalls the CAEv2 was his primary hearing

5    protection during his 2009 Iraq deployment.

6       Did I read all of that correctly?

7            A.    Yes.

8            Q.    Okay.  I just kind of want to

9    follow-up.  Were you ever involved in enemy

10   fire fights?

11           A.    Yes.

12           Q.    Okay.  And was that during your

13   Iraq deployment?

14           A.    Yes.

15           Q.    Okay.  Can you describe around the

16   timeframe that you were involved or engaged in

17   enemy fire fights?

18           A.    Not really.  A lot of it kind of

19   becomes a blur.

20           Q.    Okay.  Were you exposed or were

21   you ever engaged in an explosion or IED

22   explosion while in Iraq?

23                 MR. GALLOWAY:  Objection.

Page 167

1                    REPORTER'S CERTIFICATE

2    STATE OF ALABAMA,

3    BALDWIN COUNTY,

4              I, Paul Morse, Certified Court Reporter

5    and Commissioner for the State of Alabama at

6    Large, do hereby certify that the above and

7    foregoing proceedings was taken down by me by

8    stenographic means, and that the content herein

9    was produced in transcript form by computer aid

10   under my supervision, and that the foregoing

11   represents, to the best of my ability, a true

12   and correct transcript of the proceedings

13   occurring on said date and at said time.

14             I further certify that I am neither of

15   kin nor of counsel to the parties to the action

16   nor in any manner interested in the result of

17   said case.

18

19

20

21

22                  Paul Morse, CCR

23             ACCR #588 Expires 9/30/22