# EXHIBIT F

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF FLORIDA
 2                        PENSACOLA DIVISION

 3   IN RE: 3M COMBAT ARMS      ) Case
     EARPLUG PRODUCTS           ) No. 3:19-md-2885-MCR-GRJ
 4   LIABILITY LITIGATION       )
     LITIGATION                 )
 5                              ) Judge M. Casey Rodgers
     --------------------------)
 6                              ) Magistrate Judge Gary R. Jones
     This Document Relates to: )
 7   Brian Medley, Case         )
     No. 7:20cv20730-MCR-GRJ    )
 8

 9

10                   DEPOSITION OF BRIAN MEDLEY

11                       February 15, 2022

12                          9:59 a.m. EST

13

14             The remote video-recorded deposition

15   of BRIAN MEDLEY, conducted at the location of the

16   witness in Terre Haute, Indiana, on the above date

17   and time, before Pauline M. Vargo, Certified

18   Shorthand Reporter, C.S.R. No. 84-1573, Registered

19   Professional Reporter, Certified Realtime Reporter

20   and Notary Public.

21

22

23              GOLKOW LITIGATION SERVICES
                877.370.3377 ph/917.591.5672 fax
24                     deps@golkow.com
```

```
 1                A P P E A R A N C E S
 2       All Parties Appearing via Zoom Videoconference
 3   On behalf of the Plaintiff:
 4        CLARK, LOVE & HUTSON, PLLC
          440 Louisiana Street, Suite 1700
 5        Houston, Texas 77002
          (713) 757-1400
 6        BY:  RANDY A. CANCHE, ESQ.
               rcanche@triallawfirm.com
 7
 8   On behalf of Defendants:
 9        BUTLER SNOW, LLP
          Crescent Center
10        6075 Poplar Avenue, Suite 500
          Memphis, Tennessee 38119
11        BY:  CHARLES F. (CHIP) MORROW, ESQ.
               chip.morrow@butlersnow.com
12
13   Videographer:
14        RICHARD RENSTRA
          Golkow Litigation Services
15
16
17
18
19
20
21
22
23
24
```

```
 1              THE VIDEOGRAPHER:  We are now on the
 2     record.  My name is Richard Renstra.  I'm a
 3     videographer for Golkow Technologies.  Today's
 4     date is February 15th, 2022, and the time is
 5     approximately 9:59 a.m. Eastern Time.
 6              This remote video deposition is
 7     being held in the matter of In Re: 3M Combat
 8     Arms Earplug Product Liability Litigation
 9     regarding Brian Medley, Case
10     No. 7:20-cv-20730-MCR-GRJ.
11              The deponent this morning is Brian
12     Medley.  All parties to this deposition are
13     appearing remotely and have agreed to the
14     witness being sworn in remotely.  Due to the
15     nature of remote reporting, please pause
16     briefly before speaking to ensure that all
17     parties are heard completely.
18              Will counsel please identify
19     yourselves, and we can start with Mr. Morrow.
20              MR. MORROW:  Good morning.  I am Chip
21     Morrow of Butler Snow, and I am here on behalf
22     of the 3M Defendants and the Aearo Defendants.
23              MR. CANCHE:  Randy Canche with Park
24     Love & Hutson on behalf of the Plaintiff Brian
```

Brian Medley

 1        Medley.

 2                THE VIDEOGRAPHER:  The court reporter

 3        this morning is Pauline Vargo, and she will

 4        now swear in the witness.

 5                THE REPORTER:  Would you raise your

 6        right hand, please, to be sworn.

 7                    (The witness was duly sworn.)

 8                BRIAN MEDLEY,

 9    called as a witness herein, having been first duly

10    sworn, was examined and testified as follows:

11                    EXAMINATION

12    BY MR. MORROW:

13        Q.    Good morning, Mr. Medley.  We met just a

14    few moments ago, but would you please state your

15    name for the record.

16        A.    My name is Brian Medley.

17        Q.    Mr. Medley, have you ever given a

18    deposition before?

19        A.    No.

20        Q.    You understand today that your answers

21    that you give are under oath as though you are

22    sitting in a courtroom, right?

23        A.    I understand completely, sir.

24        Q.    And also, for the benefit of our court

```
 1        A.    Yes, sir.  I have been -- obviously with
 2   my military service I've had people fire weapons
 3   next to me, and it's not a pleasant sound.
 4        Q.    I understand.  I show you another
 5   document.  Well, I say I am.
 6              Have you seen this document before, sir?
 7        A.    Yes, sir.  It looks like the census
 8   questions.
 9        Q.    Right.  And is this another one of the
10   documents you reviewed in preparation for your
11   deposition?
12        A.    Yes, to get my times in service.
13        Q.    And it does list your time you were in
14   service, March 29, 2010, to March 15, 2015.  Is
15   that accurate?
16        A.    Yes, sir.
17        Q.    And then it identifies your duty
18   stations.  Are these duty stations correct?
19        A.    Yes, sir.
20        Q.    And then this says your military
21   occupational specialties, and on the first line it
22   says 14H from November 11, 2010, to March 15, 2015.
23   Did I read that correctly?
24        A.    Yes, sir.
```

```
 1                We started by doing functions and
 2   cleanings tests, and then once we passed three
 3   white glove tests they would take us out to the
 4   range with blanks to train soldiers who didn't have
 5   familiarity with shooting, how to actually get your
 6   right sight or your right sights on down the rifle
 7   for zeroing.  Then once they felt comfortable with
 8   the platoon having that, they stepped up to actual
 9   range qualification, which was actual live
10   ammunition.
11          Q.    And during your entire basic training,
12   how many rounds do you think you fired through your
13   M4?
14          A.    Of live rounds?  60.  We qualified
15   twice, and they allowed 30 shots.
16          Q.    How about the blanks?
17          A.    I don't have a exact number, sir, but an
18   estimate for blanks, I would say maybe probably
19   around 60 as well.
20          Q.    During these, during this training and
21   zeroing in, do you wear ear protection?
22          A.    Always, sir.
23          Q.    And what did you wear during basic
24   training?
```

Brian Medley

```
 1        A.    The green and yellow, what they would
 2   call triple flange.
 3        Q.    Is the M4 the only weapon you were
 4   trained on during basic?
 5        A.    During basic training, yes.  We did do a
 6   simulation, but it was not a real pistol and it was
 7   not outside.  It was actually a 3-D room for
 8   awareness training, but it was with a AI pistol.
 9        Q.    What about -- you mentioned grenades.
10   Were you trained on how to use grenades?
11        A.    Yes, sir.
12        Q.    And how many grenades do you think
13   exploded during basic training?
14        A.    Zero actual grenades.  The decoy
15   grenades, we were going up in lines of 10 and we
16   were throwing two apiece, so a maximum of 20.
17        Q.    Just one time?
18        A.    Yes.
19        Q.    Any other weapons training during basic?
20        A.    Not to my recollection, sir.
21        Q.    I believe in your interrogatory answers
22   you stated that you regularly used a 249 SAW
23   machine gun.  Is that right?
24        A.    Correct, sir.
```

```
 1    I said, "Hey, why don't I have those?"  And they

 2    said, "Oh, those are the new ones.  These are

 3    getting phased out."  That might be what you are

 4    referencing, but that would be the only comment I

 5    made.

 6         Q.    When would that have happened?

 7         A.    No exact time again, but I would say it

 8    was very early into my time at Fort Hood.

 9         Q.    When you said those are getting phased

10    out, you were talking about the other different

11    colored ones, not ones that you used?

12         A.    Correct.

13         Q.    Okay, all right.

14         A.    The ones previous to the green and

15    yellow.

16         Q.    Let's see if I can't show you another

17    document.  This is the -- this is the responses to

18    the first set of interrogatories, and specifically

19    it's No. 3.  It says, "Describe in detail how you

20    acquired each pair of CAEv2 that you were issued,

21    including who issued the CAEv2 and the date on

22    which you were issued the CAEv2."

23               What I'm interested in is, this

24    paragraph down here where it says, "He lastly
```

 1    remembers by the end of his service with the

 2    military they were retired out."

 3           Do you see that?

 4      A.   Yes, sir, I do see that.

 5      Q.   What do you mean by that statement?

 6      A.   I believe they were starting to move to

 7    a new version.

 8      Q.   Were you ever issued a new version?

 9      A.   No.  Once I came back from downrange and

10    they decided to medically retire me, it is a very,

11    very long process, so I was put on non-deployable

12    status and I was actually placed into a

13    documentation and headquarter platoon sergeant

14    position.

15      Q.   And then I guess right above that it

16    says, "He recalls going through several pairs, but

17    he does not recall the exact dates he was issued

18    the plugs, nor does he recall who issued the

19    plugs."  Did I read that correctly?

20      A.   Correct.

21      Q.   You recall going through several pairs.

22    How many pairs of the CAE hearing protection do you

23    think that you went through?

24      A.   I would say during my time, four or five

                              CERTIFICATE

         I, PAULINE M. VARGO, Certified Shorthand Reporter, Certified Realtime Reporter and Registered Professional Reporter, do hereby certify that prior to the commencement of the examination BRIAN MEDLEY was duly remotely sworn by me to testify to the truth, the whole truth and nothing but the truth.

         I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the remote testimony as taken stenographically by me at the time and on the date hereinbefore set forth, to the best of my ability.

         I DO FURTHER CERTIFY that a review of the transcript was requested.

         I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

         *[Signature: Pauline M. Vargo]*

         Illinois Certified Shorthand Reporter
         Certified Realtime Reporter
         Registered Professional Reporter
         Illinois Notary Public
         Dated:   February 23, 2022