# EXHIBIT M

Page 1

1        IN THE UNITED STATES DISTRICT COURT
2        FOR THE NORTHERN DISTRICT OF FLORIDA
3                 PENSACOLA DIVISION
4
5
6
7     CASE NO.:   3:19-md-02885
8
9     Judge M. Casey Rodgers
10    Magistrate Judge Gary R. Jones
11
12    IN RE: 3M COMBAT ARMS EARPLUG
13    PRODUCTS LIABILITY LITIGATION
14
15    This Document Relates To:
16    Misael Torres Mantilla
17    Case No.:   8:20-cv-31071-MCR-GRJ
18
19
20        VIDEOTAPED REMOTE VIDEOCONFERENCE
21            DEPOSITION TESTIMONY OF:
22               MISAEL MANTILLA
23              February 11, 2022

Veritext Legal Solutions
877-373-3660                                800.808.4958

Page 2

```
 1           A P P E A R A N C E S
 2   (Appearances via remote videoconference)
 3
 4   FOR THE PLAINTIFFS:
 5
 6   Jonathan A. McNamara, Esq.
 7   ABRAHAM WATKINS NICHOLS SORREL AGOSTO
 8   AZIZ STOGNER
 9   800 Commerce Street
10   Houston, Texas  77002
11
12
13   FOR THE DEFENDANTS:
14
15   Brenton Rogers, Esq.
16   Kelsey Shaw, Esq.
17   KIRKLAND & ELLIS
18   300 North LaSalle
19   Chicago, Illinois  60654
20   brenton.rogers@kirkland.com
21
22
23
```

Page 3

```
 1      A P P E A R A N C E S (continued)
 2
 3   ALSO PRESENT:
 4
 5   John Badgley, videographer
```

Page 4

```
 1                I N D E X
 2
 3   EXAMINATION BY:              PAGE NO.
 4   Mr. Rogers                      6
 5
 6
 7
 8
 9            E X H I B I T S
10
11   Exhibit 1  Census Form            13
12   Exhibit 2  Plaintiff Answers To First  34
13      Set of Interrogatories
14   Exhibit 3  Photograph, earplugs   73
```

Page 5

```
 1          I, Lane C. Butler, a Court
 2   Reporter and Notary Public, State of
 3   Alabama at Large, acting as Notary,
 4   certify that on this date, pursuant to
 5   the Federal Rules of Civil Procedure,
 6   there came before me via remote
 7   videoconference from Coppers Cove, Texas,
 8   commencing at approximately 9:16 a.m.
 9   Central, on the 11th day of February,
10   2022, MISAEL MANTILLA, witness in the
11   above cause, for oral examination,
12   whereupon the following proceedings were
13   had:
14
15          THE VIDEOGRAPHER:  Good morning.
16   We're on the record at 9:16 on Friday,
17   February 11th, 2022.  This begins Media
18   Unit 1 in the videorecorded deposition of
19   Misael Mantilla in the matter of 3M
20   Combat Arms Earplug Products Liability
21   Litigation.
22          Will counsel identify yourselves
23   and state whom you represent.
```

Page 6

1  MR. ROGERS: Hi. This is Brent
2  Rogers, and Kelsey Shaw is with me. We
3  represent the defendants.
4  MR. McNAMARA: Jonathan Addis
5  McNamara with the law office of Abraham
6  Walker, representing the plaintiff,
7  Misael Torres Mantilla.
8  THE VIDEOGRAPHER: Will the
9  court reporter please swear in the
10 witness.
11
12
13     MISAEL TORRES MANTILLA,,
14     having first been duly sworn,
15   was examined and testified as follows:
16
17 EXAMINATION BY MR. ROGERS:
18   Q. Good morning, sir. How are you?
19   A. I'm doing fine. How about
20 yourself?
21   Q. Good. Good. I introduced
22 myself off the record, but my name is
23 Brent Rogers, and I represent the

Page 7

1  defendants in this case.
2     Have you ever had your
3  deposition taken before?
4    A. No, I have not.
5    Q. So the number one rule for you
6  today is, if I ask a question that you
7  don't understand, will you let me know so
8  I can rephrase it for you?
9    A. Yes, sir.
10   Q. Okay. And if you do answer a
11 question that I ask, I'm going to assume
12 that you understood it. Is that fair?
13   A. Say again?
14   Q. If you answer a question I ask,
15 I'm going to assume that you understood
16 the question. Is that fair?
17   A. Yes, sir.
18   Q. Are you taking any medications
19 today that might impact your ability to
20 testify truthfully?
21   A. No, I'm not.
22   Q. Do you currently take any
23 prescription medications?

Page 8

1    A. No, currently.
2    Q. Are you wearing a hearing aid
3  today?
4    A. Yes, I am.
5    Q. Okay. In both ears or just one
6  ear?
7    A. Just the left ear.
8    Q. How often do you wear that
9  hearing aid?
10   A. Pretty much every day. I just
11 take it off to sleep.
12   Q. And we'll talk a little bit more
13 about the hearing aid later. But when
14 were you first issued that hearing aid?
15   A. Say again?
16   Q. When did you first receive a
17 hearing aid?
18   A. It was on -- if I remember
19 correctly, it was on 2013, maybe 2012. I
20 was still in service. And they issued it
21 to me at Fort Riley, Kansas.
22   Q. And are you using the same
23 hearing aid today that you were

Page 9

1  originally issued, or have you gotten a
2  new one?
3    A. I got a newer one from Temple VA
4  when I went to the -- to the hearing
5  clinic, and they issued me a newer one.
6    Q. When was that?
7    A. Oh, wow. To the best of my
8  knowledge, it's either 2017 or 2018. I'm
9  not quite certain.
10   Q. Okay. Well, we'll talk a little
11 bit more about the hearing aids later, as
12 I said. You understand that one of the
13 things we're here to talk about today is
14 an earplug called the Combat Arms
15 earplug? Have you heard of that before?
16   A. Say again?
17   Q. You understand we're here to
18 talk about the Combat Arms earplug?
19   A. Yes.
20   Q. And is that what you call it,
21 the Combat Arms earplug, or do you call
22 it the CAEv2?
23   A. At least, I mean, when we got it

3 (Pages 6 - 9)

Page 10

1   issued, we just pretty much just called
2   it, whatchamacallit, the not earplugs, we
3   don't call it earplugs. We call it --
4   uh, man. Pretty much it's just hearing
5   protection, just use your hearing
6   protection that you got issued.
7       Q. If I refer today to the Combat
8   Arms earplug or the CAEv2, will you
9   understand what I'm talking about?
10      A. Yes, sir.
11      Q. Okay. Do you still own a pair
12  of Combat Arms earplugs?
13      A. I do.
14      Q. Do you have them with you today?
15      A. I did -- it's in my other room.
16  I can step out and get it real quick if
17  you need me to grab them.
18      Q. Okay.
19          MR. ROGERS: Jonathan, we're
20  just going to ask that those earplugs be
21  preserved. If he can send them to you,
22  that will be great.
23          MR. McNAMARA: Okay.

Page 11

1       Q. Okay. Do you have any other
2   pairs of earplugs in your possession
3   besides the Combat Arms?
4       A. No, not currently, no.
5       Q. Okay. So on a break, sir, I
6   will ask you to go get those earplugs,
7   and we can show them on the video, and
8   then I'm going to ask you to send those
9   to your lawyer.
10      A. Okay.
11      Q. Did you bring anything else with
12  you today, any documents or anything like
13  that?
14      A. No. No, sir.
15      Q. Have you looked for any
16  documents that you might have that relate
17  to the Combat Arms earplug?
18      A. Which -- like what type of
19  documents?
20      Q. Yeah. Any kind of documents.
21  Do you have any materials, any marketing
22  materials, any instructions, anything
23  relating to the Combat Arms earplug?

Page 12

1       A. The only thing that I used to
2   have when I was in service, pretty much,
3   what it came with the -- with the -- in
4   the package of the earplugs. That's
5   pretty much it that I currently owned.
6       Q. Okay. Do you still have that?
7       A. I don't -- I'm not quite
8   certain. I don't think so.
9       Q. Okay.
10      A. I can -- I can look during the
11  break once I'm looking for the -- for the
12  earplugs. If I find something, I'll
13  bring it with me, but I don't think I do.
14      Q. Yeah, I would appreciate it if
15  you would do that on break. Please bring
16  the earplugs with you, and then, if you
17  -- if you have any materials relating to
18  the earplugs, bring those too.
19      A. Okay.
20      Q. Okay? All right.
21          MR. ROGERS: Kelsey, let's go
22  ahead and mark tab 1 as Exhibit 1. And
23  then, Kelsey, are you able to share the

Page 13

1   exhibit on the screen?
2           MS. SHAW: Will be, yes. I'm
3   just having a buffering issue at the
4   moment, but we're getting there.
5       Q. Okay. Sir, can you see the
6   exhibit up on your screen now?
7       (Exhibit 1 was marked for identification
8   and is attached.)
9       A. Yes. I'm seeing it right now.
10      Q. Okay. So this is entitled
11  "Exhibit B, Unfiled Case Census Form,
12  Initial Census Questions." Do you see
13  that?
14      A. Uh-huh.
15      Q. And there's your name under the
16  claimant name. Right?
17      A. Correct.
18      Q. Do you recognize this document?
19      (Witness reviews document.)
20      A. I really can't say yes or no. I
21  don't know.
22      Q. Okay.
23      A. I don't know if I've seen that

Page 14

1  before.
2  Q. Sure. Let's scroll down a
3  little. And then we'll go to the end of
4  the document. There's a declaration
5  there. And I'll just read it to you.
6      It says: "I declare under
7  penalty of perjury pursuant to 28 USC
8  Section 1746 that all the information
9  provided in response to these Initial
10 Census Questions is true and correct to
11 the best of my knowledge, information and
12 belief formed after a reasonable inquiry.
13 I understand that I am under an
14 obligation to supplement these
15 responses."
16      Did I read that correctly?
17 A. Yes, sir.
18 Q. And your signature below that,
19 dated December 1st, 2019. Right?
20 A. Uh-huh.
21 Q. So, did you -- I'm sorry. Was
22 that a yes?
23 A. Sorry. Yes.

Page 15

1  Q. Okay. Yeah. "Uh-huhs" and
2  "huh-uhs" don't really show up on the
3  transcript, so every once in a while I
4  may remind you to give a "yes" or a "no"
5  answer.
6  A. Yes, sir.
7  Q. So, did you review these
8  responses to the initial census questions
9  and confirm that they were correct before
10 you signed this declaration?
11 A. Yes, sir. I just didn't
12 remember. I mean, it was 2019, so I
13 didn't remember. But I'm pretty sure
14 this is when I first filed, I believe.
15 Right?
16 Q. That's correct. Yeah. And I
17 didn't mean to imply anything otherwise.
18 A. Yes, sir. Yeah, I understand.
19 Yes, I read and signed them all.
20 Q. Okay. So I have a few questions
21 about the answers in this -- these
22 responses. Let's take a look first at
23 the dates of service. On the first page

Page 16

1  of Exhibit 1, there was a question that
2  asked you to identify each branch that
3  you served in. Do you see that?
4  A. Yes, sir.
5  Q. And you said you served in the
6  Army from September 3rd, 2008 to October
7  22nd, 2014. Right?
8  A. That's correct, yes.
9  Q. Okay. Are those -- are those
10 dates still correct, to the best of your
11 knowledge?
12 A. Yes, sir.
13 Q. Okay. And then if we go to the
14 next page, there's a question that asks
15 you to identify your duty stations
16 between 2000 and the present. You see
17 that?
18 A. Yes, sir.
19 Q. And you identified Fort Riley,
20 Kansas, as your duty station?
21 A. That's correct.
22 Q. Yeah. Did you have other duty
23 stations besides Fort Riley, Kansas?

Page 17

1  A. I stopped on different bases,
2  but my duty station itself was Fort
3  Riley, and besides Fort Riley, I didn't
4  go anywhere else.
5  Q. Okay. Were you -- were you
6  stationed at one point in Puerto Rico or
7  no?
8  A. No. That is a MEPS station.
9  That's when you pretty much just do your
10 contract and join the Army.
11 Q. Okay. So you were living in
12 Puerto Rico, and you signed your contract
13 to join the Army in 2008, then?
14 A. That's correct yes.
15 Q. Okay. And then, were you
16 transferred for a brief period of time to
17 Fort Sill in Oklahoma?
18 A. That is correct.
19 Q. And that was also in 2008 right
20 after you joined the Army? Is that
21 right?
22 A. That's correct, yes. That was
23 my first stop after I left Puerto Rico.

Page 34

1  please.
2      Q.  Okay.  Do you see Exhibit No. 2
3  up on your screen, sir?
4      (Exhibit 2 was marked for identification
5      and is attached.)
6      A.  Yes, I do.
7      Q.  Okay.  These are some responses
8  and objections that you sent to us in
9  response to some interrogatories, just
10 some questions that we asked you.  Are
11 you familiar with this document?
12     A.  Yes, I am.
13     Q.  Okay.
14         MR. ROGERS:  So let's turn to
15 the last page, Kelsey.
16     Q.  And do you see here, sir, that
17 again you signed and verified these
18 interrogatory responses under penalty of
19 perjury?
20     A.  Yes, sir.
21     Q.  Okay.  Are the -- and this --
22 you signed these in January of this year.
23 Right?

Page 35

1      A.  I believe so, yes, sir.
2      Q.  Looks like you executed them on
3  New Year's Day.
4      A.  Yes, sir.
5      Q.  Are the responses in these
6  interrogatories true and correct to the
7  best of your knowledge?
8      A.  Yes, sir.
9          MR. ROGERS:  All right.  Let's
10 take a look at Interrogatory No. 3,
11 Kelsey.
12     Q.  And you see there in
13 Interrogatory No. 3, we asked you to
14 describe how you acquired each pair of
15 the CAEv2, that's the Combat Arms, that
16 you were issued?  Right?
17     A.  Yes, sir.
18     Q.  And if you go down to the second
19 paragraph of the answer, you see that it
20 says, among other things, "Plaintiff
21 recalls being issued CAEv2 for the first
22 time in approximately 2008 at Lackland
23 military base in Texas."  Right?

Page 36

1      A.  Correct.
2      Q.  Okay.  So, can you describe for
3  me how you received the Combat Arms
4  earplug in 2008?
5      A.  Well, when you -- when I got to
6  Fort Sill, that was my first stop, they
7  don't usually issue you -- issue the CAV
8  -- CAEv2s until you get to your basic
9  training.  Because when you're in
10 in-processing, what they give you is your
11 PT uniforms, your -- what uniforms are
12 used back then?  The -- oh, gosh.  The
13 ACUs and stuff like that, your boots and
14 among other things.  When they first
15 issue you your CAEv2s will be Fort
16 Jackson, that would have been in 2009,
17 when you start doing your basic training.
18 So you go through -- it's a building,
19 it's run by civilians.  You pretty much
20 just go in a line, and from there on they
21 got a list.  And pretty much, they just
22 give it to you, "Here, this is what you
23 need," and touch it on it, then move

Page 37

1  forward.  And then you get your boots,
2  and you get your other things, and then
3  move down.  It's a, like, big building
4  where they got everything in there.
5      Q.  Okay.  So, did you actually
6  receive the CAEv2, the earplugs, at Fort
7  Jackson, then?
8      A.  I'm pretty sure.  I cannot be
9  for certain.  But I'm I think it was Fort
10 Jackson instead of Fort Sill.
11     Q.  Okay.  And can you describe for
12 me how you received them?  Were you --
13 did somebody hand them to you, or did
14 they just appear on your bunk bed or
15 something?
16     A.  Oh, no.  A civilian in the -- in
17 the building, I'm trying -- I'm trying to
18 remember the name.  I know it's CIF, I
19 feel I call it.  It's when they issue
20 your uniforms and stuff.  It's a civilian
21 that they pretty much check on your list,
22 they look what you need, and they just
23 give you the stuff.

10 (Pages 34 - 37)

## Page 198

```
 1            C E R T I F I C A T E
 2   STATE OF ALABAMA   )
 3   COUNTY OF JEFFERSON )
 4        I hereby certify that the above
 5   and foregoing proceeding was taken down
 6   by me by stenographic means, and that the
 7   content herein was produced in transcript
 8   form by computer aid under my
 9   supervision, and that the foregoing
10   represents, to the best of my ability, a
11   true and correct transcript of the
12   proceedings occurring on said date at
13   said time.
14        I further certify that I am
15   neither of counsel nor of kin to the
16   parties to the action; nor am I in
17   anywise interested in the result of said
18   case.
19        [signature: Lane C. Butler]
20        LANE C. BUTLER, RPR, CRR, CCR
21        CCR# 418 -- Expires 9/30/22
22        Commissioner, State of Alabama
23        My Commission Expires: 2/11/25
```

## Page 199

```
 1  To: Jonathan A. McNamara, Esq.
 2  Re: Signature of Deponent Misael Torres Mantilla
 3  Date Errata due back at our offices: 3/27/2022
 4
 5  Greetings:
 6  This deposition has been requested for read and sign by
    the deponent. It is the deponent's responsibility to
 7  review the transcript, noting any changes or corrections
    on the attached PDF Errata. The deponent may fill
 8  out the Errata electronically or print and fill out
    manually.
 9
10  Once the Errata is signed by the deponent and notarized,
    please mail it to the offices of Veritext (below).
11
12  When the signed Errata is returned to us, we will seal
    and forward to the taking attorney to file with the
13  original transcript. We will also send copies of the
    Errata to all ordering parties.
14
15  If the signed Errata is not returned within the time
    above, the original transcript may be filed with the
16  court without the signature of the deponent.
17
18  Please Email the completed errata/witness cert page
    to readandsign@veritext.com
19  or mail to
20  Veritext Production Facility
21  2031 Shady Crest Drive
22  Hoover, AL 35216
23  205-397-2397
```

## Page 200

```
 1  ERRATA for ASSIGNMENT #5074399
 2  I, the undersigned, do hereby certify that I have read the
    transcript of my testimony, and that
 3
 4  ___ There are no changes noted.
 5  ___ The following changes are noted:
 6
    Pursuant to Civil Procedure, Rule 30. ALA. CODE § 5-30(e)
 7  (2017). Rule 30(e) states any changes in form or
    substance which you desire to make to your testimony shall
 8  be entered upon the deposition with a statement of the
    reasons given for making them. To assist you in making any
 9  such corrections, please use the form below. If additional
    pages are necessary, please furnish same and attach.
10
11  Page _____ Line _____ Change _____
12  _____
13  Reason for change _____
14  Page _____ Line _____ Change _____
15  _____
16  Reason for change _____
17  Page _____ Line _____ Change _____
18  _____
19  Reason for change _____
20  Page _____ Line _____ Change _____
21  _____
22  Reason for change _____
23  Page _____ Line _____ Change _____
```

## Page 201

```
 1  Page _____ Line _____ Change _____
 2  _____
 3  Reason for change _____
 4  Page _____ Line _____ Change _____
 5  _____
 6  Reason for change _____
 7  Page _____ Line _____ Change _____
 8  _____
 9  Reason for change _____
10  Page _____ Line _____ Change _____
11  _____
12  Reason for change _____
13  Page _____ Line _____ Change _____
14  _____
15  Reason for change _____
16
17
18  _____
           DEPONENT'S SIGNATURE
19
    Sworn to and subscribed before me this ___ day of
20
    _____, _____.
21
22  _____
23  NOTARY PUBLIC / My Commission Expires:_____
```

1  To: Jonathan A. McNamara, Esq.
2  Re: Signature of Deponent Misael Torres Mantilla
3  Date Errata due back at our offices: 3/27/2022
4
5  Greetings:
6  This deposition has been requested for read and sign by the deponent.  It is the deponent's responsibility to
7  review the transcript, noting any changes or corrections on the attached PDF Errata.  The deponent may fill
8  out the Errata electronically or print and fill out manually.
9
10 Once the Errata is signed by the deponent and notarized, please mail it to the offices of Veritext (below).
11
12 When the signed Errata is returned to us, we will seal and forward to the taking attorney to file with the
13 original transcript.  We will also send copies of the Errata to all ordering parties.
14
15 If the signed Errata is not returned within the time above, the original transcript may be filed with the
16 court without the signature of the deponent.
17
18 Please Email the completed errata/witness cert page to readandsign@veritext.com
19 or mail to
20 Veritext Production Facility
21 2031 Shady Crest Drive
22 Hoover, AL 35216
23 205-397-2397

Page 200

1  ERRATA for ASSIGNMENT #5074399
2  I, the undersigned, do hereby certify that I have read the transcript of my testimony, and that
3
4  ✓ There are no changes noted.
5  ___ The following changes are noted:
6
7  Pursuant to Civil Procedure, Rule 30. ALA. CODE § 5-30(e) (2017). Rule 30(e) states any changes in form or substance which you desire to make to your testimony shall
8  be entered upon the deposition with a statement of the reasons given for making them. To assist you in making any
9  such corrections, please use the form below. If additional pages are necessary, please furnish same and attach.
10
11  Page _____ Line _____ Change _____
12  _____
13  Reason for change _____
14  Page _____ Line _____ Change _____
15  _____
16  Reason for change _____
17  Page _____ Line _____ Change _____
18  _____
19  Reason for change _____
20  Page _____ Line _____ Change _____
21  _____
22  Reason for change _____
23  Page _____ Line _____ Change _____

Page 201

1   Page _____ Line _____ Change _____
2   _____
3   Reason for change _____
4   Page _____ Line _____ Change _____
5   _____
6   Reason for change _____
7   Page _____ Line _____ Change _____
8   _____
9   Reason for change _____
10  Page _____ Line _____ Change _____
11  _____
12  Reason for change _____
13  Page _____ Line _____ Change _____
14  _____
15  Reason for change _____
16
17
18  _____
                        DEPONENT'S SIGNATURE
19  State of Texas                County of Coryell
    Sworn to and subscribed before me this 14th day of
20
    March        , 2022.        ANNETTE L. DONKER
                                Notary Public
                                STATE OF TEXAS
                                Notary I.D. #1003191-2
21                              My Comm. Exp. Jan. 6, 2023
22  Annette L Donker
23  NOTARY PUBLIC / My Commission Expires: 1-6-2023