# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION

This Document Relates to:

*Alcorn*, Case No. 7:20-cv-57916;
*Aparicio*, Case No. 7:20-cv-19528;
*Cline*, Case No. 7:20-cv-48703;
*Frei*, Case No. 7:20-cv-11506;
*Hellin*, Case No. 3:19-cv-02395;
*Medley*, Case No. 7:20-cv-20730;
*Moss*, Case No. 7:20-cv-34822;
*Musselman,* Case No. 7:20-cv-22842;
*Northern*, Case No. 7:20-cv-64557;
*Panaitov*, Case No. 7:20-cv-12722;
*Shenian*, Case No. 7:20-cv-20925;
*Tamam*, Case No. 7:20-cv-48133;
*Torres Mantilla*, Case No. 8:20-cv-3107

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:19-md-2885

Judge M. Casey Rodgers

Magistrate Judge Hope T. Cannon

## 3M COMPANY'S MEMORANDUM IN OPPOSITION TO CERTAIN WAVE 1 PLAINTIFFS' NOVEMBER 23, 2022 MOTION TO LIFT STAY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................3

ARGUMENT ..........................................................................................................4

    I.  Plaintiffs Have Not Met Their Burden To Lift The Stay ...............................4

        A. Plaintiffs Assert Claims That Are Not Viable Absent Reliance On A Successor Liability Theory .........................................................................5

        B. The Knowledge Requirement And Other Requirements Attendant To Plaintiffs' Claims Show They Are Not Entirely Abandoning Successor Liability .......................................................................................................8

    II. To The Extent Plaintiffs Will Seek To Impute Aearo's Knowledge To 3M—Even Absent A Claim For Successor Liability—The Stay Should Remain In Place ..........................................................................................................12

CONCLUSION ....................................................................................................13

**INTRODUCTION**

The Court should not lift the stay in the thirteen cases identified in Plaintiffs'

Amended Motion to Lift Stay as to Certain Wave 1 Plaintiffs. (MDL Dkt. 3595 (the

"Motion").) Plaintiffs in the thirteen cases at issue argue that they "seek[] to pursue

claims exclusively against Defendant 3M Company based upon Defendant 3M

Company's own independent actions and omissions with respect to the CAEv2," and

that they "are not pursuing claims against Defendant 3M Company based upon

successor liability." (*Id.* at 5.) But the same Plaintiffs assert a number of claims that

are *only* viable against 3M[1] under a successor liability theory. Several Plaintiffs, for

example, assert design defect claims that require 3M to have been negligent in

designing the CAEv2—yet the CAEv2 was designed well before the Aearo entities

became 3M subsidiaries. More generally, a multitude of Plaintiffs' claims, including

failure to warn claims, require proof that 3M actually or constructively knew of the

CAEv2's alleged defects before liability may be imposed. In light of arguments

plaintiffs have made previously in this MDL, as well as the Court's prior orders, 3M

expects Plaintiffs to rely upon successor liability to support such claims—despite

Plaintiffs' contention that "successor liability is not at issue in any of the above-

referenced cases." (*Id.* at 5-6.) Finally, even absent a "claim[] ... based upon

---

[1] References to "3M" are to Defendant 3M Company.

successor liability" (*id.*), the Court's rationale for implementing a stay remains in full force where, as here, Plaintiffs are likely to argue that the Aearo entities' knowledge should be imputed to 3M—including for the purpose of assessing punitive damages.[2]

## ARGUMENT

### I.  Plaintiffs Have Not Met Their Burden To Lift The Stay

Plaintiffs broadly assert that "successor liability is not at issue" in any of the thirteen cases in which they seek to have the stay lifted. (*Id.* at 2-5.) But Plaintiffs' Motion does not describe the legal claims brought by the individual Plaintiffs in the thirteen cases at issue. Nor does Plaintiffs' Motion describe the state law applicable to such claims.[3] Plaintiffs have thus failed to carry their burden to demonstrate "that

---

[2] As the Court has recognized, the stay also enables the parties to fully engage in ongoing settlement negotiations. (*See* MDL Dkt. 3568 at 3.)

[3] Applying substantive state law to Plaintiffs' claims is not inconsistent with 3M's position that federal subject matter jurisdiction exists under 28 U.S.C. § 1442(a)(1). To the contrary, a "federal court's role under § 1442(a) is similar to that of a federal court sitting in diversity" and, accordingly, "the federal court applies the choice of law rules of the forum state to determine the applicable [substantive] law." *See, e.g.*, *Dickens v. A-1 Auto Parts & Repair Inc.*, 2020 WL 6265078, at *2 (S.D. Miss. Oct. 23, 2020) (alterations adopted, internal quotation marks omitted) (collecting authority); *Muka v. Ferguson*, 2003 U.S. Dist. LEXIS 17617, at *8-9 (S.D. Fla. Sept. 16, 2003), *aff'd*, 104 F. App'x. 152 (11th Cir. 2004) (table); *cf. Mathews v. City of Booneville, Mississippi*, 2020 WL 2615912, at *3 (N.D. Miss. May 22, 2020) ("While the *Erie* doctrine was established in diversity cases, '[t]he *Erie* case and the Supreme Court decisions following it apply in federal question cases as well' when the underlying cause of action is a state law claim." (quoting *Camacho v. Tex.*

the stay should be lifted and the[ir] case[s] permitted to proceed at this time." (MDL

Dkt. 3568 at 3.)

Indeed, a multitude of the claims in the thirteen cases that Plaintiffs identify

appear to implicate successor liability. 3M cannot provide an exhaustive list in this

Opposition, as Plaintiffs' Motion touches on a number of state law issues without

actually addressing them or setting forth Plaintiffs' positions. Below, 3M provides a

variety of examples that are illustrative of why the stay should remain in place.

### A.    Plaintiffs Assert Claims That Are Not Viable Absent Reliance On A Successor Liability Theory

Plaintiffs Cline, Northern, Aparicio, Hellin, and Panaitov bring claims for

negligent failure to warn and/or design. (*Cline* Dkt. 4; *Northern* Dkt. 16; *Aparicio*

Dkt. 27; *Hellin* Dkt. 25; *Panaitov* Dkt 38.) As outlined below, these claims must fail

as a matter of law absent a finding that 3M is a successor-in-interest to the Aearo

entities. Thus, Plaintiffs are either relying on successor liability to support these

claims or further summary judgment briefing is warranted as to such claims. In either

event, the interest of efficiency strongly favors maintaining the stay, including

because the nature and extent of further briefing may be affected by the Court's

rulings on successor liability. (*See* MDL Dkt. 3568 at 3.)

---

*Workforce Comm'n*, 445 F.3d 407, 409 n.1 (5th Cir. 2006) and citing *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018))).

Plaintiffs Cline and Northern's claims are governed by California law pursuant to applicable choice-of-law stipulations. (*Cline* Dkt. 13; *Northern* Dkt. 13.) Under California law, a negligent design claim requires the plaintiff to show that "the defect in the product was due to negligence of the defendant." *Merrill v. Navegar, Inc.*, 28 P.3d 116, 124-25 (Cal. 2001) (internal quotation marks and citations omitted); *accord Torres v. City of Madera (In re Torres)*, 2005 WL 1683736, at *22 (E.D. Cal. July 11, 2005). Such a claim does not lie where the plaintiff alleges "no facts as to how ... defendant's actions [we]re connected to any purported defect in the product." *Fussy v. RTI Surgical*, 2022 WL 1122615, at *5 (E.D. Cal. Apr. 13, 2022). Here, the CAEv2 was designed long before the Aearo entities became 3M subsidiaries, and the design process involved the Aearo entities (not 3M) as well as the United States military and scientists at the Institute de Saint Louis. (*See, e.g.*, MDL Dkt. 1280 at 8, 11, 26; Ex. 1, Myers Dep. Tr. at 105:23-109:8; Ex. 2, D-GEN-1806 at 6; Ex. 3, D-GEN-272 at 1.) If Plaintiffs will contend that 3M bears liability for the Aearo entities' alleged negligence in that regard, the stay should remain in place. If Plaintiffs will not make any such contention, and truly "are not pursuing claims against Defendant 3M Company based upon successor liability" (MDL Dkt. 3595 at 5), there will be further briefing and argument directed to that position. But because the nature and extent of that briefing and argument may be impacted by the Court's forthcoming rulings on successor liability, the "parties'

and judicial resources in the interim" (MDL Dkt. 3568 at 3) are best served by keeping the stay in place.[4]

The same is true for Plaintiffs Aparicio, Hellin, and Panaitov. Plaintiffs Aparicio and Hellin stipulated to Hawaii law. (*See Aparicio* Dkt. 13; *Hellin* Dkt. 13.) To prevail on their negligent design claims under Hawaii law, they must prove that: (i) "3M failed to take reasonable measures to design the CAEv2 to protect against a reasonably foreseeable risk of injury"; and (ii) such a failure was a "legal cause" of their alleged injuries. (*See Beal* Dkt. 184 at 21-22; *see also id.* at 12 (noting that all six Defendants would be referred to "collectively as '3M'")); *Tabieros v. Clark Equip. Co.*, 944 P.2d 1279, 1297 (Haw. 1997); Haw. Civ. J. Instr. 11.7 (Negligent Design – Elements). Plaintiff Panaitov stipulated to Colorado law. (*See Panaitov* Dkt. 21.) To prevail on her negligent design claim under Colorado law, Plaintiff Panaitov must prove that 3M was negligent in designing the CAEv2. (*See Vaughn* Dkt. 167 at 10); *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 149 (Colo. Ct. App. 1986) ("Absent causation attributable to [the] defendant[], any defect in design ... is irrelevant."). Here again, because 3M was not involved in designing the CAEv2, Plaintiffs' negligent design claims weigh in favor of keeping the stay in place.

---

[4] The court should permit a summary judgment motion because the issues described herein are fact-intensive and lend themselves to summary judgment, rather than a less developed record. *Cf. In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 307486, at *22 (D.N.J. Jan 29, 2021).

**B.** **The Knowledge Requirement And Other Requirements Attendant To Plaintiffs' Claims Show They Are Not Entirely Abandoning Successor Liability**

A number of Plaintiffs' claims require proof directed to 3M's actual or constructive knowledge of the CAEv2's alleged defects. In light of the Court's prior rulings and plaintiffs' arguments in CAEv2 bellwether trials, 3M expects Plaintiffs to rely on successor liability to support these claims despite their contention that "successor liability is not at issue in any of the above-referenced cases." (MDL Dkt. 3595 at 5-6.) To the extent that is not the case (as Plaintiffs now argue), further briefing and argument—which may be impacted by the Court's forthcoming rulings on successor liability—may be necessary. In either event, the stay should remain in place in the interest of efficiency. (*See* MDL Dkt. 3568 at 3.)

Consider Plaintiffs Cline and Northern's strict liability failure to warn claims under California law. (*See Cline* Dkt. 4; *Northern* Dkt. 16.) Liability under such claims "is only imposed when [among other things] the risk of harm is known or knowable" as assessed "at the time of sale." *See Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *2-3 (N.D. Cal. Apr. 7, 2014) (collecting authority); *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *17 (N.D. Cal. Sept. 12, 2016). In assessing whether a risk is "known or knowable," a jury is to consider the "generally recognized and prevailing best scientific and medical knowledge available." *See* Judicial Council of California Civil Jury Instructions No.

1205 (CACI) (2022 ed.) (collecting authority). Crediting plaintiffs' arguments in other cases, this Court has previously held that the CAEv2's alleged defects were neither open nor obvious.[5] Plaintiffs in prior cases have also emphasized the actions that 3M took after Jeffrey Hamer purportedly learned of the flange report in 2015. (*See, e.g.*, Ex. 4, *Kelley* 4/7/2022 Trial Tr. 2847:8-11 (Closing Arguments) (argument by Plaintiffs' counsel that Jeffrey Hamer was "stunned" when he learned of the flange report and had "3M stop" CAEv2 sales thereafter).) Against this backdrop, and despite the arguments in Plaintiffs' Motion, 3M expects that Plaintiffs will seek to rely on a theory of successor liability to further their claims—specifically in relation to the scope of 3M's knowledge, if any, of Plaintiffs' alleged defects. Even if that is not the case, as Plaintiffs contend, the Court's forthcoming rulings on successor liability may impact the parties' respective arguments as to such issues going forward.

The same is true for the negligent failure to warn claims brought by Plaintiffs Musselman, Shenian, Alcorn, Medley, and Tamam. Plaintiffs Musselman and

---

[5] For the avoidance of doubt, 3M maintains its prior positions as to: (i) the open and obvious defense, *see In re 3M Combat Arms Earplug Prods. Liab. Litig.,* 2022 WL 1636717, at *8-10 (N.D. Fla. May 2, 2022); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 684397, at *5-7 (N.D. Fla. Mar. 8, 2022); (ii) the disclosures made in the informational wallet card created by the U.S. military, *see In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 1636717, at *9; and (iii) the information otherwise known to the U.S. military, *see id.*; *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 684397, at *2.

Shenian stipulated to Georgia law. (*Musselman* Dkt. 15; *Shenian* Dkt. 15.) "Under

Georgia law, a seller has no duty to warn of dangers discovered postsale." *See Love*

*v. Weecoo (TM)*, 774 F. App'x. 519, 522 n.2 (11th Cir. 2019) (citing *DeLoach v.*

*Rovema Corp.*, 527 S.E.2d 882, 883 (Ga. Ct. App. 2000)). Instead, a seller has a duty

to warn "only of dangers actually or constructively known at the time of the sale."

*See DeLoach*, 527 S.E.2d at 883; *accord Smith v. Peddinghaus Corp.*, 2007 WL

2484315, at \*5 (N.D. Ga. Aug. 29, 2007). North Carolina law (which governs

Plaintiff Alcorn's claim) and Texas law (which governs Plaintiffs Medley and

Tamam's claims) also have actual and constructive knowledge requirements for such

claims. (*Alcorn* Dkts. 6, 12; *Medley* Dkts. 13, 28; *Tamam* Dkts. 17, 21); N.C. Gen.

Stat. § 99B-5(a); *Shoppers World v. Villarreal*, 518 S.W.2d 913, 917 (Tex. Ct. Civ.

App. 1975), *writ refused NRE* (May 7, 1975); *accord Walker v. Honest Indus., Inc.*,

2021 WL 394830, at \*3 (S.D. Tex. Feb. 3, 2021).[6] Thus, the same issues that arise

for Plaintiff Cline and Northern's failure to warn claims are present for these

Plaintiffs as well.

---

[6] "Texas courts have not recognized a continuing duty to warn claim, and the Fifth
Circuit has concluded that Texas law does not recognize such a claim unless the
manufacturer voluntarily assumed a duty to warn or regained control of the product
after sale." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
2015 WL 7863032, at \*4 (M.D. Ga. Dec. 3, 2015) (collecting authority).

The issue is not limited to the knowledge-related elements of Plaintiffs' failure to warn claims. For example, consider Plaintiffs Musselman and Shenian's strict liability claims, including for failure to warn. "Under Georgia law, a strict liability claim lies against 'the manufacturer' of personal property." *Williams v. Pac. Cycle, Inc.*, 2015 WL 11215854, at \*4 (N.D. Ga. Oct. 19, 2015), *aff'd*, 661 F. App'x 716 (11th Cir. 2016) (quoting O.G.C.A. § 51-1-11). "Categorically excluded from this definition of manufacturer is a 'product seller.'" *Id.* (quoting O.G.C.A. § 51-1-11.1(b)). A product seller is defined as:

> [A] person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce.

O.G.C.A. § 51-1-11.1(a). "In Georgia, an entity categorized as a product seller cannot be held liable for purposes of a product liability action based on the doctrine of strict liability." *Williams*, 2015 WL 11215854, at \*4 (citing O.C.G.A. § 51-1-11.1(b)). Either Plaintiffs will cite successor liability to argue in opposition to 3M's status as a "product seller," or there may be further briefing and argument directed to such issues before trial. In either case, the stay should remain in place for the reasons articulated above.

**II.     To The Extent Plaintiffs Will Seek To Impute Aearo's Knowledge To 3M—Even Absent A Claim For Successor Liability—The Stay Should Remain In Place**

Finally, Plaintiffs' Motion is unclear as to whether they intend to argue that the Aearo entities' knowledge should be imputed to 3M even in the absence of a successor liability claim. In general, imputing knowledge from a predecessor to a successor is not automatic and "turns on the specifics of the situation." *See, e.g.*, *In re Motors Liquidation Co.*, 541 B.R. 104, 115 (Bankr. S.D.N.Y. 2015), *aff'd in part*, 590 B.R. 39 (S.D.N.Y. 2018); *see also, e.g.*, *Flores v. JBM Janitorial Maint., Inc.*, 2019 WL 6886866, at *4 (S.D. Tex. Oct. 23, 2019); *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015); *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F. Supp. 1241, 1272 (N.D. Iowa 1993); *Bagley v. CSX Transp., Inc.*, 465 S.E.2d 706, 708 (Ga. Ct. App. 1995). The substantive issue of whether the Aearo entities' knowledge should be imputed to 3M—and to what extent, if any—is not before the Court. But to the extent Plaintiffs will seek to make such an argument in the future, as 3M anticipates Plaintiffs will, it weighs heavily in favor of keeping the stay in place.

Consider *CDS Family Trust v. Martin*, 2019 WL 858782 (D. Md. Feb. 22, 2019). There, the plaintiffs argued that "direct liability should be attributed" to a corporate successor "because the knowledge of [the predecessor] as to the allegedly wrongful [conduct] 'must be imputed.'" *Id.* at *4. As the court explained, where

12

"Plaintiffs have put forward no facts … about any direct actions by [the defendant] that support the torts or theories alleged," imputing knowledge to a successor is just another "version of the corporate successor argument," so it would fail for the same reasons. *Id.* To that end, in *Core Optical Technologies, LLC v. Nokia Corporation*, the court found that a "series of business transactions and stock acquisitions [was] insufficient to give rise to a plausible inference regarding any transfer of knowledge." 2020 WL 6126285, at \*8 (C.D. Cal. Oct. 8, 2020). The nature and extent of any imputed knowledge-related issues can be impacted by the Court's rulings on successor liability. Thus, to the extent Plaintiffs intend to raise such issues in their cases, it would "conserve the parties' and judicial resource" to keep the stay in place until there is resolution of the underlying successor liability issues. (*See* MDL Dkt. 3568 at 3)

## CONCLUSION

As illustrated by the foregoing examples, and in the interest of enabling the ongoing settlement negotiations, the stay should remain in place and Plaintiffs' Motion should be denied.[7]

---

[7] Plaintiffs claim that "[t]hese cases are not intended to serve as a comprehensive list of all Wave 1 cases where successor liability is not at issue." (MDL Dkt. 3595 at 2 n.1.) Plaintiffs' strategic decision to seek to un-stay some cases but not others is contrary to the aims of "conserv[ing] the parties' and judicial resources" and "enabl[ing] both sides to fully engage in ongoing settlement negotiations" described in the Court's October 27, 2022 Order. (MDL Dkt. 3568 at 3.)

Dated: December 5, 2022   Respectfully submitted,

*/s/ Kimberly Branscome*

Kimberly Branscome
Jay Bhimani
Allison K. Ozurovich
Dechert LLP
US Bank Tower
633 West 5th Street
Suite 4900
Los Angeles, CA, 90071
Telephone: (213) 808-5700
kimberly.branscome@dechert.com
jay.bhimani@dechert.com
allie.ozurovich@dechert.com

Jonathan Tam
Dechert LLP
One Bush Street
San Francisco, CA 94104
Telephone: (415) 262-4518
jonathan.tam@dechert.com

Matthew P. Steinberg
Dechert LLP
1095 Ave. of the Americas
New York, NY 10036
Telephone: (212) 698-3500
matthew.steinberg@dechert.com

Craig J. Castiglia
Dechert LLP
2929 Arch St.
Philadelphia, PA 19104
Telephone: (215) 994-2000
craig.castiglia@dechert.com

*Admitted Pro Hac Vice*

**Counsel for Defendant 3M Company**

14

15

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendant certifies that this memorandum contains 2,901 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Dated: December 5, 2022                     Respectfully submitted,

                                            */s/ Kimberly Branscome*
                                            Kimberly Branscome

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 5th day of December 2022, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail to all registered counsel of record.

Dated: December 5, 2022                          Respectfully submitted,

                                                 */s/ Kimberly Branscome*

                                                 Kimberly Branscome