# EXHIBIT 1

Confidential - Pursuant to Protective Order

```
 1                 UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF FLORIDA

 3                      PENSACOLA DIVISION

 4

 5   IN RE:  3M COMBAT ARMS      )  Case No. 3:19md2885

 6   EARPLUG PRODUCTS LIABILITY  )

 7   LITIGATION                  )  Judge M. Casey

 8   -------------------------   )  Rodgers

 9                               )  Magistrate Judge

10   THIS DOCUMENT RELATES TO    )  Gary R. Jones

11   ALL CASES                   )

12      CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

13        The videotaped deposition of BRIAN MYERS,

14   called by the Plaintiffs for examination, taken

15   pursuant to the Federal Rules of Civil Procedure of

16   the United States District Courts pertaining to the

17   taking of depositions, taken before JULIANA F.

18   ZAJICEK, a Registered Professional Reporter and

19   Certified Shorthand Reporter, at the offices of

20   Kirkland & Ellis, LLP, Suite 600, 300 North LaSalle

21   Street, Chicago, Illinois, on the 12th day of

22   December, 2019, commencing at 9:04 a.m.

23

24

25
```

Confidential - Pursuant to Protective Order

```
 1    PRESENT:
 2    ON BEHALF OF THE PLAINTIFFS:
 3          CLARK, LOVE & HUTSON, PLLC
             440 Louisiana Street, Suite 1600
 4          Houston, Texas 77002
             713-757-1400
 5          BY:  EMILY MARLOWE, ESQ.
                  emarlowe@triallawfirm.com
 6
                       -and-
 7
             SEEGER WEISS, LLP
 8          77 Water Street
             New York, New York 10005
 9          212-584-0700
             BY:  DAVID R. BUCHANAN, ESQ.
10                dbuchanan@seegerweiss.com
                  MAX KELLY, ESQ.
11                mkelly@seegerweiss.com
12                     -and-
13          TRACEY & FOX
             440 Louisiana Street, Suite 1901
14          Houston, Texas 77002
             713-495-2333
15          BY:  LAWRENCE TRACEY, ESQ.
                  ltracey@traceylawfirm.com
16                SEAN TRACEY, ESQ.
                  stracey@traceylawfirm.com
17                CARTER SNEAD, ESQ.
                  csnead@traceylawfirm.com
18
19    ON BEHALF OF THE DEFENDANTS:
20          KIRKLAND & ELLIS LLP
             300 North LaSalle
21          Chicago, Illinois 60654
             312-862-2000
22          BY:  MARK J. NOMELLINI, ESQ.
                  mark.nomellini@kirkland.com;
23                TABITHA DE PAULO, ESQ.
                  tabitha.depaulo@kirkland.com;
24                NOLAN LEUTHAUSER, ESQ.
                  nolan.leuthauser@kirkland.com
25
```

Confidential - Pursuant to Protective Order

```
 1   PRESENT: (Continued)

 2   ON BEHALF OF THE DEFENDANTS (Continued):

 3        3M OFFICE OF GENERAL COUNSEL

          3M Center, Building 0220-09-E-02

 4        St. Paul, Minnesota 55144-1000

          651-733-1891

 5        BY:  ERIC J. RUCKER, ESQ.

               ejrucker@mmm.com

 6

 7

 8

 9   ALSO PRESENT:

10        CHARLES BACHMANN, Legal Analyst,

11           Seeger Weiss, LLP

12        DANIEL OLIVIO, Paralegal,

13           Tracey & Fox

14        CHRIS GRIMM, Trial Technician,

15           Golkow Litigation Services

16

17   THE VIDEOGRAPHER:

18        DEVYN MULHOLLAND,

19           Golkow Litigation Services

20

21

22

23

24

25   REPORTED BY:  JULIANA F. ZAJICEK, CSR No. 84-2604.
```

Confidential - Pursuant to Protective Order

1    been a part of reflect that there were contributions

2    from the US military, as well, to what the final

3    product was.

4    BY MR. BUCHANAN:

5         Q.    That's not what you told the government?

6         MR. NOMELLINI:  Object to form.

7    BY MR. BUCHANAN:

8         Q.    Is it?

9         A.    I'm not sure what you are referring to.

10        Q.    I mean, you got asked about this:  How did

11   this product come about, and you told them, right?

12        MR. NOMELLINI:  Object to the form of the

13   question.

14   BY THE WITNESS:

15        A.    Again, I'm not sure what you are referring

16   to.

17        MR. BUCHANAN:  P660A.

18                (WHEREUPON, a certain document was

19                marked Brian Myers Deposition Exhibit

20                No. 5, for identification, as of

21                12/12/2019.)

22   BY MR. BUCHANAN:

23        Q.    I'm passing you Exhibit 5 to your

24   deposition, sir.

25                In 2006, sir, you had some interactions

Confidential - Pursuant to Protective Order

 1   with folks from the government concerning an item

 2   description for the Combat Arms.

 3            Do you recall that?

 4       A.    Yes, I recall, I recall some of this.

 5       Q.    And you went back and forth with a Thomas

 6   Sidor from the U.S. Government, right?

 7       A.    Yes.

 8       Q.    From DLA, right?

 9       A.    Thomas Sidor, it looks like he was with

10   DSCP, but I don't -- that's probably a part of DLA.  I

11   don't know.

12       Q.    Okay.  And he understood they were getting

13   into a place in 2006 reevaluating their -- their item

14   description for the Combat Arms, or for nonlinear

15   hearing protection devices, right?

16       A.    I recall that there was a -- a contract

17   that came out for bid around that time.

18       Q.    And so when Mr. Sidor asked you for

19   details about how it came to be, you told him you

20   developed it with ISL, it was developed by ISL and

21   your engineers.

22            That's what you told the Federal

23   Government when they asked, right?

24       MR. NOMELLINI:  Object to the form of the

25   question.

Confidential - Pursuant to Protective Order

 1       MR. BUCHANAN:  Can we go down, please, while the

 2   witness is looking, to that bottom paragraph.

 3   BY MR. BUCHANAN:

 4       Q.    It is on the screen if that helps you,

 5   sir.

 6       A.    So that's what the document says:

 7             "It was developed jointly by scientists at

 8   ISL (France) and our engineers and it was developed to

 9   address the problem with conventional hearing

10   protectors used in combat and training by soldiers."

11       Q.    And when you said that was the document

12   says, that's what you said?

13       A.    That was my reply to Tom.

14       Q.    Right.  And that's from May of 2006.  And,

15   you know, the government is taking a look at this

16   thing in May of 2006 to try and figure out how to

17   specify or how to describe a nonlinear hearing

18   protection device, fair?

19       A.    So on --

20       MR. NOMELLINI:  Object to form and foundation.

21   BY THE WITNESS:

22       A.     I'd -- I'd want to review the whole

23   document, but I'm not sure why they were ask -- why he

24   was asking these questions.

25   BY MR. BUCHANAN:

Confidential - Pursuant to Protective Order

 1        Q.     Well, do you -- do you recall folks from

 2   DLA getting with you at various points in time when

 3   you were the portfolio manager or, as you said in your

 4   resume, the vice president for hearing protection, to

 5   look at the -- a military product description?

 6               Do you recall that?

 7        A.     Do I re -- repeat that, please.

 8        Q.     Sure.

 9               Do you recall, sir, at various points in

10   time when, as you represented on your CV, you were the

11   vice president at Aearo where the military came to you

12   to discuss an item description that would encompass

13   nonlinear hearing protection devices?

14        A.     I don't recall what the timing was.  I

15   recall that -- that -- I recall giving some input to

16   Tom Sidor about a specification.

17        Q.     Okay.  We can agree certainly at this

18   point in time, sir, what you didn't say to Mr. Sidor

19   is:  Actually, it was developed by the Army.

20               We could agree those words aren't in

21   there, right?

22        A.     It -- it says that we developed it with

23   ISL and our engineers and was developed to try to

24   address the problem in the military.

25        Q.     I'm not asking what the underlying reason

Confidential - Pursuant to Protective Order

 1    was for the development.  I'm asking the whos.  So if

 2    I can stay with my question, sir.

 3              The whos involved in development as stated

 4    by you when the government is asking, was:  "It was

 5    developed jointly by scientists at ISL (France) and

 6    our engineers."

 7              That's what you wrote, true, sir?

 8       A.    That is what I wrote.

 9       Q.    Okay.  And you know -- well, I mean, you

10    all were waving patents around about this product,

11    weren't you, saying you invented it or saying that ISL

12    invented it, right?

13       MR. NOMELLINI:  Object to the form of the

14    question.

15    BY THE WITNESS:

16       A.    So when -- when Tom Sidor asked me for --

17    I mean, I -- I forget, I don't recall exactly what the

18    e-mail was, but he was looking for what intellectual

19    property was in the device, I shared some information

20    on this with him.

21    BY MR. BUCHANAN:

22       Q.    You said it's ours, we have the patents on

23    the device, right?

24       MR. NOMELLINI:  Object to the form of the

25    question.

Confidential - Pursuant to Protective Order

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, JULIANA F. ZAJICEK, a Registered

 4   Professional Reporter and Certified Shorthand

 5   Reporter, do hereby certify:

 6            That previous to the commencement of the

 7   examination of the witness herein, the witness was

 8   duly sworn to testify the whole truth concerning the

 9   matters herein;

10            That the foregoing deposition transcript

11   was reported stenographically by me, was thereafter

12   reduced to typewriting under my personal direction and

13   constitutes a true record of the testimony given and

14   the proceedings had;

15            That the said deposition was taken before

16   me at the time and place specified;

17            That I am not a relative or employee or

18   attorney or counsel, nor a relative or employee of

19   such attorney or counsel for any of the parties

20   hereto, nor interested directly or indirectly in the

21   outcome of this action.

22            IN WITNESS WHEREOF, I do hereunto set my

23   hand on this 16th day of December, 2019.

24

25            JULIANA F. ZAJICEK, Certified Reporter
```