# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## NOTICE

On February 23, 2023, a Data Day proceeding was held at which BrownGreer PLC presented its neutral analyses of the nature and scope of the hearing-related claims in this litigation as reflected in the available audiometric data for the plaintiff population in DOEHRS. At the Court's direction, BrownGreer analyzed the data using four methods—the two party approaches as understood by the Court (the single frequency/threshold shift approach used by Plaintiffs, and the pure tone average-based approach used by 3M), and a variation of each side's approach that better accounts for timing of CAEv2 use relative to the plaintiffs' reported hearing-related injuries. A copy of BrownGreer's Powerpoint presentation was previously posted on the Court's public website for the MDL.[1]

---

[1] *See* https://www.flnd.uscourts.gov/file/data-day-presentation-2-23-23pdf.

As the Court explained at Data Day, BrownGreer also was asked to perform the same set of analyses—again, the two party methods and the two Court methods—on a random sample of 500 plaintiffs from the inventory with available census and DOEHRS data, which it has now done.[2] Of particular note, the analyses revealed that applying the four methods to a random sampling of qualifying plaintiffs yields roughly identical percentages of hearing-related injuries as resulted from BrownGreer's original analyses of the entire plaintiff population. A copy of the results of BrownGreer's new analyses will be posted on the Court's public website for the MDL.

Of course, as the Court previously observed, there are strengths and weaknesses inherent in all four methods. 3M's pure tone average-based approach, for example—and we *know* it remains 3M's approach based on its recent public statements and the estimation motion filed in Aearo's bankruptcy proceedings[3]—

---

[2] More specifically, BrownGreer first separated the overall plaintiff population into two groups, one group comprised of plaintiffs asserting hearing loss only or a combination of hearing loss and tinnitus, and a second group comprised of plaintiffs asserting tinnitus only. For each group, BrownGreer then narrowed the pool to only plaintiffs with enough census and DOEHRS data to calculate a result under all four methods. Last, BrownGreer randomly selected 500 plaintiffs from the remaining population in each of the two groups (for a total of 1,000 plaintiffs), and used only those plaintiffs in its new analyses.

[3] *See In re Aearo Techs. LLC*, No. 1:22bk2890, Debtors' Motion for Entry of an Order (I) Authorizing Estimation of the Aggregate Value of Combat Arms-Related Claims for the Purposes of Establishing a Settlement Trust and Confirming a Plan Under Chapter 11; (II) Scheduling Claims Estimation Proceedings; and (III) Granting Related Relief, ECF No. 1221 at 2-3, 6-8, 16 (Feb. 28, 2023); Press Release, 3M Co., Department of Defense Data Reveals No Hearing Loss Among Vast Majority of Plaintiffs in Combat Arms Earplug Litigation (Mar. 1, 2023), *available at* https://investors.3m.com/news/news-details/2023/Department-of-

excludes the two frequencies (4000 and 6000 Hz) most commonly affected by noise and includes two frequencies (500 and 1000 Hz) rarely affected by noise, which is problematic in a litigation where the alleged injury is noise-induced hearing damage. Moreover, even the pioneers of pure tone average rating schemes, the World Health Organization and American Medical Association, caution against relying on the schemes for diagnostic purposes and/or as the sole determinant in assessing a person's hearing-related damage.[4] Plaintiffs' approach, which focuses only on the presence of hearing threshold shifts in the audiometric data, does not distinguish between temporary versus permanent shifts, and does not measure or value an individual's current hearing loss status (*i.e.*, normal, slight, mild, moderate, moderately severe, severe, profound). Neither side's approach accounts for specific causation. To the extent those

---

Defense-Data-Reveals-No-Hearing-Loss-Among-Vast-Majority-of-Plaintiffs-in-Combat-Arms-Earplug-Litigation/default.aspx; 3M Co., Setting the Record Straight: 3M, the Military and Combat Arms Earplugs Version 2, *available at* https://www.3mearplugsfacts.com/.

[4] *See, e.g.*, World Health Organization, *World Report on Hearing* at 38 (2021) ("The classification and grades [of hearing loss] are for epidemiological use[.]"); *id.* ("While audiometric descriptors (e.g. category, pure-tone average) provide a useful summary of an individual's hearing thresholds, they should not be used as the sole determinant in the assessment of disability[.]"); American Medical Association, *Guides to the Evaluation of Permanent Impairment* § 1.3d ("In disability evaluation, the impairment rating is one of several determinants of disablement."); *id.* at § 2.3b (explaining that "assessing [an] impairment's impact on [an] affected individual's ability to work . . . is beyond the scope of the *Guides*"); *id.* at § 11.2d ("The *Guides'* methods for calculating [hearing] impairment are not intended to examine an individual's work disability[.]"); *see also Lambdin v. Goodyear Tire & Rubber Co.*, 468 S.W. 3d 1, 14 (Tenn. 2015) ("The AMA Guides do not make any mention of hearing losses at levels exceeding 3000 hertz . . . In that regard, the AMA Guides do not "cover" [noise-induced hearing] injury.").

methods, or any others, are offered to a neutral as a basis for valuing and/or estimating claims, the Court trusts the parties will heed their duty of candor to the court and the public as to the relative merits of each one.

**SO ORDERED**, on this 10th day of March, 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**