# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | ) ) ) | Case No. 3:19-md-02885 |
| | ) | Judge M. Casey Rodgers |
| | ) ) | Magistrate Judge Hope T. Cannon |
| This Document Relates to: All Cases | ) ) ) ) | |

## CASE MANAGEMENT ORDER NO. 57
### (Case Management Order For Any Ongoing Litigation Against Defendants)

This Case Management Order ("CMO") applies to:

(i)     All individuals alleging claim(s) of any nature against 3M Company, 3M Occupational Safety LLC, Aearo LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo Technologies LLC ("Defendants") who were identified pursuant to the Courts' Identification Order (CMO 60), but have elected not to participate in the Settlement Program as outlined in the Master Settlement Agreement ("Settlement Agreement") entered between Plaintiffs' Leadership Counsel and the Defendants on August 29, 2023[1]; and

---

[1] The Combat Arms Master Settlement Agreement is available on the Court's public website for the 3M MDL, https://www.flnd.uscourts.gov/3m-products-liability-litigation-mdl-no-2885.

> (ii)     all individuals alleging claim(s) of any nature against Defendants that are not identified pursuant to the Court's Identification Order (CMO 60) and whose cases are filed in, refiled in, removed to, or transferred into this Court after the date of this Order.[2]

Collectively, the cases that fall within any of the categories above shall be referred to as "Litigating Plaintiffs."

Consistent with the Court's inherent authority to manage these judicial proceedings, and in light of the settlements entered after many years of difficult and costly litigation in this MDL, the Court finds it appropriate at this time to exercise its discretion to enter this Order to fairly, effectively, and efficiently manage any cases going forward against Defendants by Litigating Plaintiffs.  This Order requires all Litigating Plaintiffs to produce certain specified information regarding their claim(s) and provides deadlines to meet certain requirements relating to product use, alleged injury, causation, time-based defenses, and related dispositive motion practice, prior to any further supplemental discovery.  Litigating Plaintiffs, including Plaintiffs who represent themselves *pro se*, shall be bound by the requirements of

---

[2] To the extent a case is filed, removed to, or transferred into this Court between the date of this Order and the Reference Date as defined in CMO 60 (the Identification Order), and is later identified pursuant to the Identification Order, this Order shall no longer apply.  However, should such case not be so identified under the Identification Order, the obligations and deadlines set forth herein remain in full force and effect.  *But see* CMO 58 at ¶ 5 (additional requirements for cases previously dismissed without prejudice).

this Order and shall fully comply with all obligations required of Counsel by this Order, unless otherwise stated.  It should be noted that some of the requirements and deadlines in this Order are subject to a cure period, whereas others are not.  There will be <u>no</u> show cause orders issued in connection with any deficiencies.  Given the unprecedented size and complexity of this MDL, the Court will require strict adherence to all aspects of this Order.  Failure to strictly comply with this Order will result in a dismissal with prejudice.

This Order will remain in effect at least until April 15, 2031.

## I.   BACKGROUND AND STATUS OF PROCEEDINGS

1.   On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2885 to centralize cases against Defendants concerning the design, testing, sale, and marketing of the Combat Arms Version 2 earplug ("CAEv2"). Over 320,000 cases have been filed in or removed to this MDL.

2.   District courts have inherent powers to manage their cases, particularly with respect to "massive litigation." *In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d 236, 243 (3d Cir. 2013) (*quoting In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009)) ("[d]istrict judges 'must have authority to manage their dockets, especially during [a] massive litigation'"); *see also Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 776 (7th Cir. 2016) ("a court has the inherent authority

to manage judicial proceedings and to regulate the conduct of those appearing before it"); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citation omitted) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."). The district court's power extends to, for example, "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(F), (L) & (P).

3.       "[M]ultidistrict litigation 'presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation.' This wide latitude applies, in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (internal citation omitted); *see In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d at 246 ("[A]dministering cases in multidistrict litigation is different from administering cases on a routine docket.").  As discussed below, the magnitude and

complexity of *this* multidistrict litigation, in particular, presents unique and unprecedented case management needs.

4. Case Management Orders that "streamline litigation in complex cases" have been "routinely used by courts to manage mass tort cases." *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (internal citations omitted). Appellate courts have regularly upheld their use in MDL cases. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) (noting "[c]ase management orders are the engine that drives disposition on the merits" and finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product identification case management orders); *United States v. Graf*, 610 F.3d 1148, 1169 (9th Cir. 2010) (*citing United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008) (en banc)) ("A district court has broad authority to enter pretrial case management orders to ensure that the trial proceeds efficiently."); *see also In re Avandia*, 687 F. App'x at 214 (affirming MDL court's dismissal for failure to comply with an order requiring that future plaintiffs provide an expert report) (citation omitted); *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (affirming MDL court's dismissal for failure to comply with discovery order and noting, "[d]istrict courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency") (citation omitted); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335,

340 (5th Cir. 2000) (such "orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation. In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16").

5.     The broad discretion afforded to the district court enables it to enter rigorous case management orders after substantial discovery has taken place in a mature mass tort or multidistrict litigation when a defendant has taken steps to settle a significant portion of the claims pending against it. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011) (noting such orders are authorized by district judge's "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16"). Other MDL courts have exercised their discretion and inherent authority to enter orders establishing certain discovery and other requirements for future cases filed against settling defendants in tort litigation. *See, e.g., In re American Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325, Pretrial Order # 239, ECF No. 4272 (S.D.W. Va. June 7, 2017) (establishing requirements for future claims against a defendant due to "recent settlement developments" of thousands of claims after more than three years of litigation); *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, No. CV 18-MD-2848, 2022 WL 952179, at *2-3 (E.D. Pa. Mar. 30, 2022) (quoting 28 U.S.C. § 1407(a)) ("A Lone Pine management order is the only viable

way that 'will promote the just and efficient conduct of [these] actions'" after three years of discovery and plaintiffs' experts' causation opinions "fall[ing] short in all bellwether cases"); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, Case Management Order No. 126, ECF No. 2716 at 1-2 (N.D. Ill. June 11, 2018) (finding it appropriate to enter an order to manage remaining litigation in light of the parties' settlement agreements entered after over four years of litigation).

6.     This MDL is in its <u>fifth</u> year.  During this time, an extraordinary amount of energy, time, and cost has been expended by the parties and the Court.  The Court has exercised its discretion and inherent authority to establish discovery and related procedures for the various phases of the litigation. Fed. R. Civ. P. 1; Fed. R. Civ. P. 16(c).  There were early and ongoing efforts to determine the litigation's scope through a census process, DD214 Form production requirements, and procedures for transitioning individual cases from the Administrative Docket to the Active Docket.  The parties and the Court also collaboratively developed a robust framework for the effective and efficient management of the litigation, which involved two Science Days, vendor/technology proceedings, a presentation on the *Touhy* regulations by the Department of Defense and United States Attorney's Office, meetings at the Pentagon and at the Department of Justice with the parties and federal officials, and numerous case management conferences and conference

calls with Plaintiffs' and Defendants' counsel.  Extensive corporate, military, and expert discovery has occurred, followed by omnibus briefing, oral argument, and rulings on significant substantive motions, including 341 motions to remand to Minnesota state court filed on behalf of more than 5,700 plaintiffs, and cross-motions for summary judgment on the federal government contractor defense.  Case-specific discovery for 19 bellwether plaintiffs followed, as well as discovery and dispositive motions practice for 374 Wave 1 cases, culminating in rulings on more than 260 motions in limine, 109 *Daubert* challenges, 47 choice of law disputes, 42 case-specific summary judgment motions, and 21 post-trial motions, not to mention countless discovery, procedural, and/or logistical disputes.  Sixteen bellwether trials were conducted over 14 months, resulting in 19 jury verdicts.  The undersigned conducted six bellwether trials (one of which consolidated three plaintiffs and another consolidated two plaintiffs), and district judges from around the Eleventh Circuit conducted 10 others.  Multiple appeals from the bellwether cases are now pending in the Eleventh Circuit Court of Appeals.  In July 2022, five of the six defendants (the "Aearo defendants") in this litigation filed petitions for Chapter 11 bankruptcy in the Southern District of Indiana, triggering an automatic stay of litigation against them.  The bankruptcy court declined to extend the stay to Defendant 3M Company, so the CAE Claims against 3M in the MDL continued unabated by the bankruptcy proceeding but obviously in a complicated

fashion.  Thereafter, the Court entered an order precluding 3M from attempting to avoid any portion of its alleged CAE liability in the MDL by shifting blame to the Aearo defendants, *sua sponte* certified that order for interlocutory appeal, and stayed discovery, trials, and/or remands in individual cases pending resolution of the interlocutory appeal; 3M's petition for interlocutory appeal has been ripe before the Eleventh Circuit Court of Appeals since January 2023.  In the meantime, the Aearo defendants' bankruptcy petitions were dismissed on June 9, 2023; however, the dismissal order has been certified for direct appeal to the Seventh Circuit Court of Appeals.  And today, there remains an inventory of more than 240,000 plaintiffs whose claims need resolution.

7.     The Court is aware that, without admission of fault or liability, Defendants have entered into a Settlement Agreement to resolve the cases in this MDL.

8.     Although every MDL presents unique challenges, this one has been particularly challenging and frankly unprecedented, given its size.  Accordingly, consistent with its broad discretion and inherent authority to manage the "complex issues, multiple parties, difficult legal questions, [and] unusual proof problems" involved in a litigation of this unprecedented magnitude and cost, the Court finds it necessary and appropriate to enter this Case Management Order governing the discovery obligations of Litigating Plaintiffs. *See Adinolfe v. United Tech. Corp.*,

768 F.3d 1161, 1167 (11th Cir. 2014) (quoting Fed. R. Civ. P. 16(c)(2)(L)). As discussed above, sweeping corporate, military, expert, and case-specific discovery has identified all of the relevant evidence—and the myriad of nuanced evidentiary issues—needed to evaluate and adjudicate a CAE Claim. Voluminous substantive motions practice, and equally voluminous rulings, have defined the legal landscape. Beyond that, 16 bellwether trials and 19 verdicts have provided unparalleled insight into the strengths and weaknesses of the various claims and defenses and how juries respond to the evidence, all of which has clearly informed all parties of the risks and costs associated with the litigation. Based on the Court's experience with the bellwether and Wave cases, pursuit of each of the individual cases in this MDL will be extraordinarily difficult, lengthy, and expensive for both sides. Continued litigation also will require an enormous amount of time and resources from the entire federal judiciary. Indeed, for the last three years, the cases in this MDL have dominated the federal civil docket, and this MDL is by far the largest in the history of the federal judiciary.[3] Once individual cases are ready for remand, federal district court dockets around the country will be flooded with tens

---

[3] *See* Chief Justice John Roberts, 2022 Year-End Report on the Federal Judiciary at 6-7 (Dec. 31, 2022), *available at* https://www.supremecourt.gov/publicinfo/year-end/2022year-endreport.pdf; *see id.*, 2021 Year-End Report on the Federal Judiciary at 8 (Dec. 31, 2021), *available at* https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf; *see id.*, 2020 Year-End Report on the Federal Judiciary at 6, *available at* https://www.supremecourt.gov/publicinfo/year-end/2020year-endreport.pdf.

of thousands of cases needing to be set for trial.  Given the advanced stage of this unprecedently massive, complex, and unique litigation, and the unparalleled volume of data available to all stakeholders regarding both individual claims and the broader whole, the Court finds it reasonable and imperative to require Litigating Plaintiffs to come forward and fulfill the stringent discovery obligations set forth in this Case Management Order, and the accompanying exhibit, before both sides begin incurring the substantial costs involved with preparing a CAE Claim for trial.

9.     For the foregoing reasons, the Court orders as follows:

## II.     STAY OF PROCEEDINGS INVOLVING THE PARTIES

10.     The Court believes that the focus of all parties' efforts should be on implementation of the Settlement, which will take significant time and effort. Accordingly, the Court shall stay all proceedings involving Plaintiffs that are identified on an Identification Order Declaration and are considering or have registered for the Settlement.  Except for the requirements and procedures described in this Order, all proceedings involving Litigating Plaintiffs are hereby stayed as to the Defendants.  This stay shall remain in effect until it is lifted by order of the Court.

## III.     TRANSITION OF ADMINISTRATIVE DOCKET

11.     To the extent that a Litigating Plaintiff's case resides on the Administrative Docket, within fourteen (14) days of electing not to settle his/her claims, counsel for the Litigating Plaintiff is required to do all of the following:

a.  File a Notice to Transition in the Litigating Plaintiff's individual case on the administrative docket (*i.e.*, Notices to Transition will not be filed on the main administrative docket). In CM/ECF, counsel will select "Notice of Transition" as the event. Litigating Plaintiff's counsel who are already admitted to this Court must also add themselves as counsel of record at this time.

b.  File a Notice of Designated Forum in the Litigating Plaintiff's individual case, identifying the federal district in which the case could have been filed in the absence of direct filing on the administrative docket. When submitting a Notice of Designated Forum, counsel must select "Notice – Other" as the event and identify the designated forum in the text description prior to submitting the filing. For example, "Notice of Designated Forum – Florida Northern" or "Notice of Designated Forum – FLND."

c.  Download a copy of the filed Short Form Complaint from PACER, showing a PACER timestamp and electronically forward this to BrownGreer PLC for service on Defendants.

d.  Pay the filing fee.  To pay the fee, counsel must select "Filing Fee for Multidistrict Litigation (MDL) Case" as the event.

e.      If not already admitted to the bar of this district, Litigating

Plaintiff's counsel must also seek *pro hac vice* admission in

accordance with Pretrial Order No. 3, ECF No. 4, and Case

Management Order No. 1, ECF No. 86

12.    If a Litigating Plaintiff whose case resides on the Administrative

Docket fails to timely transition his/her case and fully comply with all of the

requirements of Paragraphs 11(a) to 11(e) above, the Litigating Plaintiff's case shall

be dismissed with prejudice.

13.    **NOTE:**  Cases that are not on an Identification Order Declaration and

that are filed after the Reference Date (September 12, 2023) must be filed on the

active docket.  The Administrative Docket is closed and unavailable for such cases.

**IV.    PRESERVATION NOTICE REQUIREMENTS**

14.    No later than thirty (30) days after the date a Litigating Plaintiff files

his/her case on the active docket, is transferred to this Court by the JPML, or in the

case of Section III above, transitions his/her case to the Active Docket, Counsel for

any Litigating Plaintiff or a *pro se* Litigating Plaintiff shall notify the following

individuals or entities, by registered mail, that they may have records relevant to the

Litigating Plaintiff's claim in this MDL Proceeding and that any records relating to

the Litigating Plaintiff must be preserved pursuant to this Court's June 17, 2019

Order for Preservation of Documents and Electronically Stored Information (ECF No. 440), pending collection by the Litigating Plaintiff:

      a.    All physicians and/or other healthcare providers, including mental health treatment providers, who, for any reason, treated the Litigating Plaintiff;

      b.    If a Litigating Plaintiff is seeking lost wages, all of his or her employers for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which Litigating Plaintiff is seeking lost wages;

      c.    If a Litigating Plaintiff is seeking lost wages, all of his or her tax preparers or advisors, if any, for the period from three (3) years prior to the date for which he or she is seeking lost wages through the last day for which Litigating Plaintiff is seeking lost wages.

15.    A copy of this Court's June 17, 2019 Order for Preservation of Documents and Electronically Stored Information (ECF No. 440) shall be attached to the Notice and all copies of the Notice shall be preserved by Counsel for the Litigating Plaintiff for so long as the claim remains pending in this Proceeding.

16.    Counsel for the Litigating Plaintiff shall also serve a statement listing the names and addresses of all individuals or entities to which Notices were sent, along with copies of the Notices and a signed certification that the Notices were sent

as required by this Order. Service by the Litigating Plaintiffs shall be made to Counsel for Defendants via MDL Centrality within the deadline to send the Notices as required by this Order (*i.e.*, 30 days).

17.    Litigating Plaintiffs who fail to fully comply with the requirements of this Order shall be given notice by MDL Centrality, email, or fax from Defendants' Counsel and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period").  The Court will be notified by the Settlement Data Administrator, BrownGreer PLC, of any Litigating Plaintiff who failed to cure following notice and those Plaintiffs' claims will be dismissed with prejudice.  **Counsel for Litigating Plaintiffs and Litigating Plaintiffs themselves are hereby on notice that the Court expects full compliance with the notice provided by the Settlement Data Administrator, as the Administrator has been delegated authority from the Court to process deficiencies in this manner.  Failure to strictly comply will be grounds for dismissal with prejudice without further notice.**

18.    Litigating Plaintiffs may not seek to introduce into evidence at trial any document or information from the Litigating Plaintiff's physician, other healthcare provider, employer, or tax preparer if a Notice was not sent to the Litigating Plaintiff's physician, other healthcare provider, employer, or tax preparer as required by this Order. A Litigating Plaintiff who fails to comply with this Order may also be subject to other sanctions or orders.

15

## V.   LITIGATING PLAINTIFFS' REQUIREMENTS TO PRODUCE CERTAIN SPECIFIED INFORMATION REGARDING THEIR CLAIMS

### A.   Litigating Plaintiffs' Production Requirements

19.   All Litigating Plaintiffs shall serve the following documents and/or information upon Counsel for Defendants through MDL Centrality within the timeframe provided in Section VII, unless otherwise stated – *see* paragraph 12. All Litigating Plaintiffs' productions shall comply with the search, production, and certification requirements of paragraphs 2, 3, 4, 5, 6, 7, and 9 of Pretrial Order 42. The production of each required category of documents and/or information must be made separately on a category-by-category basis via MDL Centrality using the correct document description for each category.

### (a)   Litigating Plaintiffs' Production Requirements

(1)   All disclosures required by Fed. R. Civ. P. 26(a).

(2)   Plaintiff Fact Sheet. Each Litigating Plaintiff must prepare a Fact Sheet in the form attached hereto as Exhibit 1, signed under penalty of perjury. Admissions regarding matters contained in verified Fact Sheets shall be treated as conclusively established unless the Court, on motion, permits the admission to be withdrawn or amended.

(3)     Medical Records. All medical records, including mental health records, relating to the Litigating Plaintiff from any time before, during, and after the Litigating Plaintiff's military service.  If the Litigating Plaintiff alleges that the CAEv2 has exacerbated or otherwise impacted a diagnosed mental health condition or the symptoms associated with a diagnosed mental health condition, the Litigating Plaintiff must produce all mental health records in full with no redactions.  If the Litigating Plaintiff believes certain portions of mental health treatment records are not relevant to his or her claims, he or she may narrowly redact only those portions of the records reflecting only the information that is claimed to be irrelevant.  However, a Litigating Plaintiff shall not: (i) withhold any mental health record in its entirety; (ii) redact any portion of a mental health record related solely to provider, date, or location of the treatment; (iii) redact any portion of a mental health record that discusses or describes in any way the existence or non-existence of, the cause of, or the effects of any alleged hearing loss and/or tinnitus they may have; (iv) redact any portion of a mental health record that discusses or describes in any way events involving noise exposures (*e.g.*, hearing blasts or

17

gunfire); or (v) redact any portion of a mental health record that discusses or describes in any way conditions or problems that the Litigating Plaintiff otherwise has attributed or reasonably could attribute to his or her alleged hearing loss and/or tinnitus (*e.g.* problems sleeping, inability or difficulty working, problems with significant others/family members).  Any Litigating Plaintiff who produces redacted mental health records at the time of the production must serve on Defendants a certification stating that the Litigating Plaintiff is not claiming that the CAEv2 has impacted a diagnosed mental health condition or symptom associated with a diagnosed mental health condition.  This certification shall be treated as a binding admission conclusively established pursuant to Federal Rule of Civil Procedure 36.  In addition, the Litigating Plaintiff must certify compliance with this entire paragraph including subparts (i) through (v) above.  At the time of production, the Litigating Plaintiff must serve Defendants with a redaction log, separately identifying by Bates number each page containing a mental health redaction and the basis for that redaction.  A failure to fully and timely comply with these requirements shall be subject to Section VII.

(4)     Hearing Test Summary.  Each Litigating Plaintiff must produce a summary of all audiograms or hearing tests documented or referenced in any medical record or military audiogram form. The Hearing Test Summary must be provided in the format shown in Exhibit 2 to this Order.  Citations to specific records reflecting each audiogram or hearing test must be provided in the summary chart.  In addition, excerpts from Litigating Plaintiff's records documenting audiogram or hearing test results and related records from the same medical visit must be attached as exhibits to the Hearing Test Summary.  Counsel must supervise the creation of the Hearing Test Summary and must attest that the summary is based on a comprehensive review of all Litigating Plaintiff's military and non-military hearing tests and medical records and is complete and accurate.

(5)     Summary of Hearing-Related Medical Records.  Each Litigating Plaintiff must produce a Summary of Hearing-Related Medical Records.  The Summary of Hearing-Related Medical Records must be provided in the format shown in Exhibit 3 to this Order. Citations to specific records must be provided in the summary. In addition, excerpts from Litigating Plaintiff's records

19

containing the relevant information and information from the same medical visits must be attached as exhibits to the Summary of Hearing-Related Medical Records.  Counsel must supervise the creation of the Summary of Hearing-Related Medical Records and must attest that the summary is based on a comprehensive review of all Litigating Plaintiff's military and non-military medical records and is complete and accurate.

(6)    Records Relating to Use of the CAEv2 and Other Hearing Protection Devices. All documents evidencing any use or non-use of the CAEv2 or other hearing protection devices, including but not limited to photos, videos, messages, emails, or other communications relating to the use of any hearing protective device or exposure to any loud noise without hearing protection.

(7)    Personnel Records. All military personnel records, including but not limited to the Litigating Plaintiff's DD214, Enlisted Record Brief or Officer Record Brief, enlistment records (including enlistment physical), and any records related to any change in service as a result of any injury or disability.

(8)    Photos and Videos From Plaintiff's Time in Service. All photos and/or videos from the Litigating Plaintiff's time in service,

including but not limited to photos and/or videos of the Litigating Plaintiff that have been posted on any social media account (*e.g.* MySpace, Facebook, Instagram, YouTube, etc.).

(9)    Documents Relating to Injuries. All documents relating to the Litigating Plaintiff's alleged hearing loss and/or tinnitus including but not limiting to messages, emails, or other communications discussing the cause, extent, or impact of any alleged hearing loss and/or tinnitus and any other ear-related complaint, problem, or condition.

(10)   Non-Privileged Communications Relating to Litigation. All non-privileged communications relating to this litigation, including but not limited to messages, emails, or other communications relating to the existence of the litigation, knowledge of other plaintiffs' involvement in the litigation, activity within the litigation, recommendations or consideration of joining the litigation, and/or obtaining or providing evidence or testimony in connection with any potential claim involving the CAEv2 whether asserted by the Litigating Plaintiff or any other plaintiff.

(11)   Record Collection Production. The Litigating Plaintiff and his/her Counsel shall affirmatively collect and produce such

records from all available sources in the Litigating Plaintiff's possession, custody, or control, which includes but is not limited to any relevant records that can be collected from the Litigating Plaintiff's medical facilities and health care providers that treated the Litigating Plaintiff at any time. Counsel for the Litigating Plaintiff shall be responsible for submitting necessary authorizations or other requests required to obtain the Litigating Plaintiff's medical records, personnel files, and other documents required by this Order. A Litigating Plaintiff and his/her Counsel shall not be in compliance with this CMO by only producing authorizations to allow the Defendants to collect such records.

(12)   Identification of Choice of Law. Counsel for the Litigating Plaintiff must affirmatively identify the choice of law the Litigating Plaintiff asserts should apply to his/her claim and an explanation for the choice based on the Litigating Plaintiff's alleged CAEv2 use.  Plaintiff's Choice of Law shall be filed on the docket.  Counsel should then download a copy of the Identification of Choice of Law from PACER showing a PACER timestamp, and then serve that Identification of Choice of Law via MDL Centrality.

(13)   Affidavit. An affidavit signed by the Litigating Plaintiff's Counsel attesting (i) that the Litigating Plaintiff has provided a Fact Sheet, executed under penalty of perjury; (ii) that all available records described in Sections IV - V have been collected; (iii) that the Litigating Plaintiff's production complies with all of the requirements of Pretrial Order 42 (as required by Pretrial Order 42 paragraph 7); (iv) that all records collected have been produced pursuant to this CMO; and (v) that counsel has met in person with the Litigating Plaintiff, personally investigated the merit of Litigating Plaintiff's claim and satisfied himself or herself that they are meritorious, and discussed, in person, with the Litigating Plaintiff their claims and likelihood of success. The affidavit shall also state when and how Counsel investigated the claims with the Litigating Plaintiff. If any of the documents or records described in Sections IV - V do not exist or exist but cannot be obtained, the signed affidavit by the Litigating Plaintiff's Counsel shall state that fact and the reasons why such materials do not exist or cannot be obtained, and shall provide a "No Records Statement" from each records custodian or proof of return to sender from the United States Postal Service

if the last known address of the medical provider is no longer valid.

**(b)    Litigating Plaintiffs' Proof of Use Requirements**

20.    All Litigating Plaintiffs shall provide, within the timeframe provided in Section VII: (i) all available documentation, created on or before July 26, 2018, establishing that such Litigating Plaintiff used the CAEv2; and (ii) a declaration setting forth the first date when the Litigating Plaintiff used the CAEv2, the last date when the Litigating Plaintiff used the CAEv2, and the intervening date ranges when the Litigating Plaintiff used the CAEv2.

21.    Service shall be made to Counsel for Defendants via MDL Centrality.

**(c)    Litigating Plaintiffs' Proof of Injury Requirements**

22.    All Litigating Plaintiffs claiming hearing loss shall serve upon the Defendants via MDL Centrality, within the timeframe provided in Section VII, one of the following:

    (i)    two audiograms establishing hearing loss when comparing (a) an audiogram dated no earlier than one year prior to the beginning of use of the CAEv2 and no later than two years after the beginning of use and (b) an audiogram dated no earlier than the end of use and no later than two years after the end of use; or

(ii)   only if no audiogram within two years after the end of use exists, two audiograms establishing hearing loss when comparing (a) an audiogram dated no earlier than one year prior to the beginning of use of the CAEv2 and no later than two years after the beginning of use and (b) an audiogram performed for purposes other than this litigation more than two years after the end of use, along with an explanation for why no earlier post-usage audiogram exists; or

(iii)  current audiological testing, as documented by a qualified examiner mutually agreed to by the Litigating Plaintiff and Defendants and paid at the Litigating Plaintiff's expense, and establishing hearing loss when comparing the current audiogram to an audiogram dated no earlier than one year prior to the beginning of use and no later than one year before the end of use, along with an explanation for why no earlier post-usage audiogram exists.

23.   All Litigating Plaintiffs claiming tinnitus shall meet, within the timeframe provided in Section VII, all of the requirements set forth in paragraphs 19 - 21 above, and shall also provide documentation dated on before July 26, 2018

constituting a report by the Litigating Plaintiff of tinnitus outside of the context of a request for disability compensation.

24.    Service of documentation meeting the requirements set forth in paragraphs 19 – 23 above shall be made to Counsel for Defendants via MDL Centrality.

### (d)    Litigating Plaintiffs' Expert Reports.

25.    All Litigating Plaintiffs shall serve upon counsel for Defendants via MDL Centrality, within the timeframe provided in Section VII, expert reports in compliance with Federal Rule of Civil Procedure 26 as follows:

    (1)    For all Litigating Plaintiffs alleging hearing loss, a Rule 26(a)(2) expert report including, but not limited to:

        i.    an opinion that such Litigating Plaintiff has noise-induced hearing loss caused by a defect in the CAEv2;

        ii.    an opinion identifying the defect in the CAEv2 that caused such Litigating Plaintiff's noise-induced hearing loss;

        iii.    an opinion that such Litigating Plaintiff's hearing is worse than expected for his/her age with reference to specific data reflecting age-controlled and sex-controlled audiometric data in either the general or military population;

iv.     Personal Attenuation Rating ("PAR") testing demonstrating that the CAEv2 provides materially less attenuation than intended and less than other hearing protecting devices the Litigating Plaintiff has used;

v.     an opinion ruling out alternative causes for the Litigating Plaintiff's hearing loss, including age, conductive hearing loss, other non-noise related causes of hearing loss, improvised explosive device (and similar blasts) or other head injuries, or documented noise exposure without hearing protection;

vi.     an as-precise-as-possible identification of all CAEv2 use by the Litigating Plaintiff, and the nature and timing of the Litigating Plaintiff's alleged injury, along with the details of any medical exams, testing, diagnosis or treatment relied upon to support any claimed injury;

vii.     a sworn statement that the expert believes that the Litigating Plaintiff's use of the CAEv2 caused the Litigating Plaintiff's alleged injury, along with a detailed description of all facts, medical and scientific literature or

other authorities relied upon by the expert to support such opinion; and

viii.    a complete set of medical records relied upon in forming the expert's opinion.

(2)    For all Litigating Plaintiffs alleging tinnitus, a Rule 26(a)(2) expert report including, but not limited to:

i.    an opinion that such Litigating Plaintiff has noise-induced tinnitus caused by a defect in the CAEv2;

ii.    an opinion identifying the defect in the CAEv2 that caused such Litigating Plaintiff's noise-induced tinnitus;

iii.    an opinion that the onset of the Litigating Plaintiff's tinnitus was during CAEv2 use;

iv.    Personal Attenuation Rating ("PAR") testing demonstrating that the CAEv2 provides materially less attenuation than intended and less than other hearing protecting devices the Litigating Plaintiff has used;

v.    an opinion ruling out alternative causes for tinnitus, including elevated hearing thresholds prior to CAEv2 usage, age, other non-noise related causes of tinnitus, improvised explosive device (and similar blasts) or other

head injuries, or documented noise exposure without hearing protection;

vi.    an as-precise-as-possible identification of all CAEv2 use by the Litigating Plaintiff, and the nature and timing of the Litigating Plaintiff's alleged injury, along with the details of any medical exams, testing, diagnosis or treatment relied upon to support any claimed injury;

vii.    a sworn statement that the expert believes that the Litigating Plaintiff's use of the CAEv2 caused the Litigating Plaintiff's alleged injury, along with a detailed description of all facts, medical and scientific literature or other authorities relied upon by the expert to support such opinion; and

viii.    a complete set of medical records relied upon in forming the expert's opinion.

(3)    A Rule 26(a)(2) expert report describing all of the Litigating Plaintiff's alleged damages, including a complete set of records relied upon in forming the expert's opinion.

26.    Form or template reports are not permitted and will be stricken by the Court.

27.     If a Litigating Plaintiff provides Rule 26 expert reports as contemplated by this section, the Court expects to set further deadlines for management of the case, including deadlines for additional case-specific discovery and dispositive motion practice regarding the Litigating Plaintiff's claims.

## VI.    MEDIATION

28.     All Litigating Plaintiffs who have fulfilled the requirements set forth in this Order must participate in mediation before a Settlement Mediator to be proposed by the Parties and approved and appointed by the Court. The costs for the mediation will be split equally between the respective Plaintiff and Defendants. Mediation must commence within ninety (90) days of the date that the Plaintiff's production and expert requirements have been fulfilled and must continue for at least 90 days following the date on which it commences. Mediation will proceed in accordance with Northern District of Florida Alternative Dispute Resolution procedures. All discovery not otherwise required by this Order is stayed until after the requirements outlined in this Section have been completed.

## VII.   COMPLIANCE

### A.    Deadline to Comply

29.     For each Litigating Plaintiff who elects not to participate in the Settlement, the items required by Sections IV – V shall be produced no later than thirty (30) days after the date such Litigating Plaintiff indicates on the Registration Form that the Litigating Plaintiff does not intend to settle his/her claims, except that

expert reports shall be produced no later than sixty (60) days after the date such Litigating Plaintiff elects not to settle his/her claims.

30.     For all other Litigating Plaintiffs, the items required by Sections IV – V shall be produced no later than thirty (30) days after the case is filed in, refiled in, or transferred to this MDL, except that expert reports shall be produced no later than sixty (60) days after the case is filed in or transferred to this MDL.

### B.     Failure to Comply

31.     The Court has established the foregoing deadlines for the purpose of ensuring that further pretrial litigation against the Defendants will progress as smoothly and efficiently as possible. Accordingly, the Court expects strict adherence to these deadlines. Should any Plaintiff fail to fully comply with the obligations of Sections IV, V, VIII,  such Plaintiff's case is subject to dismissal with prejudice. Any Plaintiffs who fails to fully comply with the requirements of Sections IV, V, and VIII shall be given notice by MDL Centrality, email, or fax from Defendants' Counsel and shall be provided thirty (30) additional days to cure such deficiency ("Cure Period").  **The Court will be notified by the Settlement Data Administrator of any Litigating Plaintiff who failed to cure following notice and those Plaintiffs' claims will be dismissed with prejudice.  Counsel for Plaintiffs and Plaintiffs themselves are hereby on notice that the Court expects full compliance with the notice provided by the Settlement Data Administrator, as**

**the Data Administrator has been delegated authority from the Court to process deficiencies in this manner.  Failure to strictly comply will be grounds for dismissal with prejudice without further notice.**

### C.    Status Conference

32.    All Litigating Plaintiffs and their Counsel shall be expected to meet with the Court in person at the courthouse for the United States District Court for the Northern District of Florida in Pensacola, Florida, so that the requirements herein are fully explained as well as the potential risks and benefits of proceeding as a Litigating Plaintiff.  The scheduling of such meetings will be addressed in a separate order, but will be within 60 days of either the date on which a Litigating Plaintiff decides not to participate in the Settlement or on which a Litigating Plaintiff filed a case on the Active Docket or is transferred to the Active Docket.

33.    Prior to meeting with the Court as set forth in the prior paragraph, Litigating Plaintiffs must serve on the Defendants through MDL Centrality an attestation of counsel (or of the individual Litigating Plaintiff, for those lacking counsel) that they have performed all obligations set forth in Sections IV – V of this Order.  The purpose of the status conference is to discuss the obligations for continued participation in the litigation and the benefits of participating in the Settlement Programs.  **A Plaintiff's unexcused failure to appear at a scheduled Status Conference will result in Plaintiff's case being dismissed with prejudice.**

## VIII. CERTIFICATION AND DISCOVERY OBLIGATIONS FOR CASES FILED AFTER SEPTEMBER 12, 2023 (THE REFERENCE DATE) AND WERE NOT PREVIOUSLY IDENTIFIED PURSUANT TO THE COURT'S IDENTIFICATION ORDER (CMO 60)

### A.   CERTIFICATION

34.   For all Litigating Plaintiff cases filed in or transferred in to this Court after September 12, 2023 (*i.e.* the Reference Date set forth in the Court's Identification Order (CMO 60)), Counsel for Plaintiff must, within seven (7) days of filing in or transfer to this Court, serve upon the Defendants through MDL Centrality a Certification that: (1) attests that the Litigating Plaintiff had not retained said Counsel as of the date of this Order; (2) identifies the date on which Counsel was retained by the Litigating Plaintiff; (3) identifies the date on which Counsel first communicated about potential claims against Defendants with the Litigating Plaintiff; and (4) certifies that Counsel did not intentionally delay being retained by the Litigating Plaintiff for any reason, including but not limited to attempting to avoid the deadlines for the Settlement Program.  To be clear, Eligible Claimants identified pursuant to the Court's Identification Order (CMO 60) do <u>not</u> need to comply with this provision.

### B.   DISCOVERY

#### (a)   Affidavit Regarding Statute of Limitations and Other Time-Based Defenses

35.     For each Litigating Plaintiff who files a claim after September 12, 2023 (*i.e.* the Reference Date set forth in the Court's Identification Order (CMO 60), the Court shall issue within thirty (30) days an "Order to Show Cause Why the Case Should Not Be Dismissed With Prejudice On Statute of Limitations Grounds." Counsel shall have fourteen (14) days to respond to said Order to Show Cause, providing in detail the basis for the Litigating Plaintiff's assertions that his/her claims are not barred by the statute of limitations.

36.     All Litigating Plaintiffs must also, within the timeframes established by Section VII, serve upon Counsel for the Defendant, an affidavit signed by the Plaintiff providing the following information: (1) the date the Plaintiff first learned his alleged hearing loss or tinnitus may be related to the use of the CAEv2; (2) how the Plaintiff first learned his or her alleged hearing loss or tinnitus may be related to the use of the CAEv2; (3) the date the Plaintiff first spoke to or corresponded with an attorney about potential litigation related to the use of the CAEv2; (4) the date the Plaintiff first retained Counsel for litigation related to use of the CAEv2; (5) the date the Plaintiff first used the CAEv2; and (6) if applicable, the date the Plaintiff first saw any documents, advertisements or packaging created by Defendants relating to the CAEv2, including a description of the documents, advertisements or packaging. Service by Plaintiffs shall be made upon Counsel for Defendants via MDL Centrality.

## IX.   CASE-SPECIFIC DISCOVERY AND RELATED DISPOSITIVE MOTION PRACTICE FOR ALL LITIGATING PLAINTIFFS

37.    If mediation as set forth in Section VI is unsuccessful, the Litigating Plaintiff has complied with the requirements outlined above in Sections IV – V and VIII, and the Litigating Plaintiff has not previously participated in case-specific discovery, then the parties may submit to the Court, as applicable, a proposed Scheduling Order that: (a) grants the Parties one hundred eighty (180) days from the entry of the Scheduling Order to conduct discovery on case-specific issues ("Additional Discovery"); and (b) sets a briefing schedule that gives the Parties forty-five (45) days from the close of Additional Discovery for the Parties to submit summary judgment motions and *Daubert* motions, twenty-eight (28) days for responses, and twenty-eight (28) days for replies.

38.    During such Additional Discovery, the parties are permitted to: (a) take the depositions of the Plaintiff, the Plaintiff's spouse, if applicable, and any other non-party lay fact witness specific to the Plaintiff for up to seven (7) hours each, with Counsel for the Defendants questioning first at each deposition; and (b) take the depositions of no more than three (3) of the Plaintiff's treating healthcare providers for up to seven (7) hours each, with Counsel for the Defendants questioning first at each deposition. No other depositions may be taken during the Additional Discovery period absent prior leave granted by the Court upon a showing of good cause.

39.     Based upon the outcome of any summary judgment motions, if appropriate, the Court will set a Case Management Conference to determine whether any non-duplicative discovery, including additional expert disclosures, are necessary and to discuss other case management issues. However, the witnesses specific to the Plaintiff's claims already deposed shall not be re-deposed. The filing and briefing of summary judgment motions and *Daubert* motions after the Additional Discovery ordered above shall not prejudice or otherwise foreclose the opportunity for any party to file later, non-duplicative summary judgment and *Daubert* motions after completing full fact and expert discovery. The Court's use of the term "non-duplicative" is intended to express the Court's intention not to permit later summary judgment motions concerning topics addressed in summary judgment motions filed at the conclusion of the Additional Discovery period or *Daubert* motions concerning witnesses addressed in *Daubert* motions filed at the conclusion of the Additional Discovery period.

40.     The foregoing provisions do not preclude any party from filing non-duplicative dispositive motions, including motions related to personal jurisdiction.

## X.     PENALTIES FOR FRAUD AND DECEPTION.

41.     Any party and/or Counsel for that party who submits false or misleading information, or otherwise attempts to satisfy the documentation requirements of this Order through deception, dishonesty, or fraud, may be subject

to appropriate sanctions, including but not limited to monetary sanctions and costs, and dismissal with prejudice pursuant to Federal Rule of Civil Procedure 37. Plaintiffs who fail to fully comply with the requirements of this Order may be subject to sanctions and dismissal of their claims pursuant to Federal Rule of Civil Procedure 37.

## XI.   CONSIDERATION OF FEES IN FUTURE CASES

42.     The Court finds that it is important to the administration of justice that contingency fees be reasonable "under the circumstances," *Bowling v. Pfizer, Inc.*, 102 F. 3d 777, 779 (6th Cir. 1996). Similar to other MDL courts, the Court intends to review closely such fee arrangements for Litigating Plaintiffs and also may impose a limitation or cap on all fee arrangements for Litigating Plaintiffs. *E.g.*, *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808, at *2 (E.D. Pa. Apr. 5, 2018) (citation and quotation omitted) ("In MDLs and class actions, district courts have routinely capped attorneys' fees sua sponte."); *In re: National Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Aug. 6, 2021), Order, ECF No. 3814 at 1, 5 (court "notif[ying] all eligible participants to the July 21, 2021 Settlement Agreements, and also . . . their private counsel, that a contingent fee in excess of 15% of the participant's award under the Settlement Agreements is presumptively unreasonable" and "cap[ping] all applicable contingent fee agreements at 15% (emphasis omitted)); *In re Vioxx Prod.*

*Liab. Litig.*, 650 F. Supp. 2d 549, 553 (E.D. La. 2009) (A "court presiding over a mass tort proceeding possesses equitable authority to examine fee arrangements."); *see, e.g.*, *Amorin v. Taishan Gypsum Co.*, 861 F. App'x 730, 733 (11th Cir. 2021), *cert. denied sub nom. Parker Waichman, LLP v. Levin*, 142 S. Ct. 769 (2022) (citation and quotation omitted) (noting the "district court has great latitude in formulating attorney's fees awards"); *In re Flint Water Cases*, 583 F. Supp. 3d 911, 940 (E.D. Mich. 2022), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022) (reducing contingent fee award depending on whether engagement commenced before or after settlement of MDL).

43.    The Court finds that the claims alleged about CAEv2 have been thoroughly developed and pursued by the PSC and other counsel, who have determined that a settlement is reasonable in this matter. Such efforts have, to date, required significant work and development of a public record that is accessible to all.  CAEv2-related claims have reached the status of a "mature" tort, which counsels against contingency fee arrangements that are similar to counsel who may be breaking new ground and taking on additional risk.

44.    In evaluating the "circumstances" of any fee arrangement, the Court may consider a number of factors, including the maturity of the tort, the timing of the contingency fee contract, the actual work done by counsel, and the knowledge of plaintiffs (who will meet with the Court) about the provisions to which they have

agreed. The Court puts all counsel on notice that it intends to view such arrangements closely, if they appear unreasonable given the circumstances, and that the Court shall, as other MDL Courts have, cap such contracts in future matters to a reasonable level.

## XII.   SCHEDULING OF FUTURE MATTERS

The Settlement reached by the Plaintiffs Leadership and Defendants in this matter will require significant long-term implementation efforts by counsel, Plaintiffs, Defendants, and the Court. It is the intent of the Court to support those settlement implementation efforts and, consistent with this Order and the stay implemented herein, to defer consideration of further proceedings while those long-term efforts to implement the settlement are ongoing and while aspects of the settlement are ongoing.

**SO ORDERED**, on this 29th day of August, 2023.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**