# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION )<br>)<br>)<br>)<br>This Document Relates to:<br>All Cases | Case No. 3:19-md-02885<br><br>Judge M. Casey Rodgers<br><br>Magistrate Judge Hope T. Cannon |

# ORDER OF APPOINTMENT
### (Settlement Administrator, Settlement Allocation Master, and EIF Special Master)

On February 25, 2020, on Plaintiffs' unopposed motion, and for good cause shown, this Court appointed ARCHER Systems, LLC ("ARCHER") to serve as the Lien Resolution Administrator for this MDL.[1]  Since the appointment, ARCHER has worked with constituents of the Plaintiffs' Executive Committee ("PEC") to obtain demographic information on more than 225,000 claimants and negotiated favorable lien resolution terms with the U.S. Department of Veteran Affairs and other governmental agencies.[2]

---

[1] Order of Appointment, ECF No. 1007.

[2] *See* Exhibit A (correspondence from the U.S. Department of Veteran Affairs affirming the VA's waiver of any subrogation interests and stating that no service member will lose health or disability benefits, or have their disability rating adversely adjusted, directly as a result of registering and participating in any 3M Combat Arms Earplug (CAE) settlement).

The Parties have reached an agreement that purports to settle the more than 240,000 Combat Arms Earplug Product Liability cases pending in this Court upon the satisfaction of conditions set forth in a Master Settlement Agreement ("MSA").[3] The Court maintains jurisdiction over all those pending cases until such time as all conditions to settlement have been satisfied and the cases have been dismissed from this Court. In the exercise of the Court's authority to manage its docket and to ensure the timely and efficient performance of the actions necessary to satisfy the conditions of settlement, it is **ORDERED:**

1. ARCHER is appointed as the Settlement Administrator for this MDL.

2. As Settlement Administrator, ARCHER shall serve as the Qualified Settlement Fund ("QSF") Administrator and shall act as the fiduciary of the settlement trust in accordance with the provisions of the Trust Agreement, the MSA and Orders of this Court with specific powers to include retention of the trust estate, investments and preservation of principal, disbursements, payments of administrative expenses and costs, retention of investment advisors and other agents, consultation with Counsel, execution of documents, litigation, and compliance with applicable law.

---

[3] The Combat Arms Master Settlement Agreement is available on the Court's public website for the 3M MDL, https://www.flnd.uscourts.gov/3m-products-liability-litigation-mdl-no-2885.

3. ARCHER, as QSF Administrator, shall prepare a proposed Motion, Order, and Trust Agreement to establish a C.F.R. § 1.468B-1 Qualified Settlement Fund. Upon entry of the Order to establish the QSF, ARCHER shall open a custodial bank account(s) and obtain a Taxpayer Identification Number from the Internal Revenue Service. Such bank account shall be determined by MDL Plaintiffs' Leadership in consultation with the Court-Appointed Certified Public Accountant.

4. For the purpose of Section 468B of the Internal Revenue Code, ARCHER, as QSF Administrator, shall timely and properly provide all informational and other tax returns necessary or advisable with respect to the QSF and the amounts held in the QSF, including the returns described in Treasury Regulation §1.468B-2(k)(l). Such returns (as well as the election described in Section 468B) shall be consistent with Section 468B and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties, or tax detriments) on the income earned by the QSF shall be paid exclusively out of the QSF, in accordance with Section 468B. The preparation and filing of all tax documents, including tax returns, shall be performed by the Court-Appointed Certified Public Accountant, who shall make periodic reports to the MDL Court.

5. ARCHER, as QSF Administrator, shall be solely responsible for payments directly to all Eligible Claimants, their healthcare lienholders, and CAE

Counsel for attorneys' fees and costs upon the satisfaction of all conditions precedent prior to distribution of settlement proceeds.

6. To facilitate the performance of ARCHER's payment duties, as set forth above, CAE Counsel shall, at ARCHER's request, provide ARCHER with all attorneys' fees, expense and lien information in their possession.

7. In connection with any authorized distribution made pursuant to the terms of the MSA, ARCHER shall determine the amount of any common benefit assessment in accordance with this Court's Common Benefit Orders #1-3 (ECF Nos. 488, 900 & 1659) and shall, at the Court's or the Parties request, provide an accounting of the same.

8. Each Eligible Claimant shall agree, and by executing the Release does agree, that he or she will indicate on his or her Registration Form whether a bankruptcy action is currently pending in which he or she is seeking bankruptcy protection. Eligible Claimants subject to any bankruptcy court proceeding or jurisdiction will be responsible for resolving any issues arising from the bankruptcy. As QSF Administrator, ARCHER shall communicate with the bankruptcy trustee and/or the Claimants' bankruptcy attorney to coordinate the disposition of the bankruptcy estate's claim before any Settlement Payment may be made to such Claimant, their lienholder(s), and CAE Counsel.

9. ARCHER shall be responsible for coordination and implementation of the Settlement Program pursuant to the MSA, including coordination with any Court-appointed third-party vendors (*i.e.*, BrownGreer PLC), implementation, application, and generation of Registered Claimant's settlement offer *vis-à-vis* Allocation Special Master methodology, building and transmitting a Settlement Disclosure Packet to Eligible Claimants; and cataloguing, reviewing, and coordinating with the Extraordinary Injury Special Master any "extraordinary injury fund" ("EIF") applications or other appeals.

10. As Settlement Administrator, ARCHER shall be responsible for all data administration related to the Settlement Program. Archer shall work with the Settlement Data Administrator, BrownGreer PLC, to facilitate the transfer of data in MDL-Centrality or any other BrownGreer database related to individual Claimants including, but not limited to, all DOEHRS data, to ARCHER.

11. ARCHER shall use the data obtained from BrownGreer along with all other information collected from the Claimants and CAE counsel to perform eligibility determinations and qualify Eligible Claimants for participation in the Settlement Program consistent with the MSA.

12. ARCHER shall review all Claimant submissions and supporting records. ARCHER shall provide Defendants with copies of all Claimant Releases and Stipulations of Dismissal, and hold such in trust pursuant to the MSA pending

final payments made to each claimant. ARCHER shall report to the Court and the Parties the number of Claimants who have submitted validly executed Releases and Stipulations of Dismissal.

13. ARCHER shall ensure all conditions precedent set forth in the MSA have been satisfied for Registered Claimants to receive settlement fund payment.

14. ARCHER shall identify any Claimant represented by more than one law firm / lawyer to Defendants and Eligible Claimant's firms. ARCHER shall have no responsibility nor obligation to resolve the representation of any Claimant who has retained more than one law firm / lawyer to represent Eligible Claimant in this litigation or Settlement Program, but shall report such dual representation issues to the Parties, the MDL Court and the MN Court for resolution.

15. ARCHER shall work with the Parties to design and implement fraud protection measures, including to identify and reject fraudulent CAE Claims.

16. To facilitate the Parties' settlement, the Court will appoint an independent, third-party neutral to create an allocation methodology to calculate a settlement award for each Eligible Claimant. Based upon his prior professional experience as a Special Master and Administrator of settlement funds and crisis response programs throughout the country in environmental disaster, product liability, civil rights, sexual abuse and other cases and his substantial firsthand experience with the design, oversight and/or administration of hundreds of class

action and mass tort resolution programs, the Court appoints Matt Garretson as Settlement Allocation Master. As Settlement Allocation Master, Mr. Garretson shall be responsible for designing an allocation methodology which well be applicable to all Eligible Claimants. ARCHER shall apply the Settlement Allocation Master's allocation methodology to all Eligible Claimants to calculate each Eligible Claimant's settlement award. The Settlement Allocation Master shall review and approve ARCHER's application of his allocation methodology and resulting Eligible Claimant settlement award.

17.   The Settlement Allocation Master shall work with the Extraordinary Injury (EIF) Special Master to establish the criteria and process for an Eligible Claimant to seek additional compensation from any extraordinary injury fund.

18.   The Court has determined that the appointment of an additional Special Master to assist with the design and implementation of rules regarding any EIF will assist ARCHER with the discharge of its duties as Settlement Administrator. Based on his prior experience serving as an Extraordinary Injury Special Master in other product liability litigation and his appointment by other courts to serve in the same role, the Court appoints J. Christopher Klotz as EIF Settlement Master.

19.   The Extraordinary Injury Special Master shall work with the Settlement Allocation Master to establish the criteria and process for an Eligible Claimant to seek additional compensation from any extraordinary injury fund. Thereafter, the

Extraordinary Injury Special Master shall develop equitable criteria for assessing qualified petitions to the EIF and shall apply those criteria to the facts of the petitioning Claimant's case to determine (a) whether to grant an additional award of compensation from the EIF and (b) the amount of any such additional award.

20. The EIF Settlement Master shall work directly with the Settlement Allocation Master and ARCHER to carry out any and all other duties necessary to equitably allocate the Settlement Amount among the Settling Claimants participating in the EIF, consistent with the terms of the parties' Master Settlement Agreement.

21. Throughout the Registration period as established in the MSA, ARCHER shall provide the Parties, Parties' counsel and the Court with reporting which reflects the number of Eligible Claimants who fully completed a Registration Form and Release, the number of Eligible Claimants who have partially completed a Registration Form and/or Release, and the number of Eligible Claimants who did not access their Registration Form or Release. Reporting to the Parties and the Court shall be not less than monthly through the Registration stage of the settlement program.

22. Fourteen (14) days prior to the expiration of the Initial Registration Date, ARCHER shall identify and issue a notice to all Eligible Claimants listed on the Identification Order Report who did not submit Registration Materials, meaning

they did not opt in or opt out of the Settlement ("Non-Responding Claimants"). Such Notice shall remind all Eligible Claimants and counsel of the deadline to submit Registration Materials and the consequences, including dismissal with prejudice, of the failure to do so. Both Parties, the MDL Court and the MN Court shall be provided with a list of the Non-Responding Claimants when the Notice is distributed.

23. Seven (7) days prior to the expiration of the Initial Registration Date, ARCHER shall send any remaining Non-Responding Claimants and counsel a notification containing substantially the same information as set forth in the preceding paragraph.

24. Seven (7) days after the Initial Registration Date, ARCHER shall provide a list of Non-Responding Claimants to the Parties and the MDL and MN Court. Such list shall be divided by Non-Responding Claimants who have filed CAE Claims and Non-Responding Claimants who have not filed CAE Claims.

25. ARCHER, Defendants, MDL Counsel or MN Counsel shall have no liability for any failure of ARCHER to give any notice to Eligible Claimants who fail to timely Register.

26. Eligible Claimants who complete a Registration Form but elect not to participate in the Settlement Program ("Non-Participating Claimants") by the Initial Registration Date, but who change their mind following notice from ARCHER, and

submit a Registration Form shall be treated as Registered Claimants. The date sixty (60) days after the Initial Registration Date shall be the Final Registration Date, unless extended by agreement of the Parties.

27. ARCHER shall transmit the Registration program materials directly to the Eligible Claimants, with copies to their counsel, and will make available personnel to facilitate Eligible Claimants completing the Registration Process. For the avoidance of doubt, while Archer shall communicate directly with Eligible Claimants regarding the Registration Process, it shall not provide Eligible Claimants with legal advice. Similarly, Archer shall communicate directly with Eligible Claimants, or their representatives, to obtain information necessary to satisfy the conditions in the MSA for Eligible Claimants subject to bankruptcy and/or probate conditions.

28. In the event that an allocation to a deceased Eligible Claimant is $75,000 or more, the Release shall not be effective until executed by a representative for the deceased Eligible Claimant appointed in accordance with applicable state law. For any deceased Eligible Claimant who will receive less than $75,000, the Release shall be effective if signed by all beneficiaries identified in a family settlement affidavit or the representative satisfies the small estate administration rules consistent with applicable state law. Moreover, in the event that a motion for substitution of parties under Rule 25, Federal Rules of Civil Procedure, is made and

granted by the MDL Court, such new party shall be entitled to register and participate in the settlement as if the deceased Eligible Claimant were still alive. As Claims Administrator, ARCHER shall coordinate the estates of deceased Eligible Claimants.

29. For Eligible Claimants who are deceased, the Release shall be signed by a beneficiary, recognized under state law. Such Release shall be deemed sufficient for satisfying such deceased Eligible Claimants' Release execution obligation to be considered a Registered Claimant by ARCHER, as Claims Administrator. ARCHER shall not, however, distribute any funds on behalf of a deceased Eligible Claimant until ARCHER, as Claims Administrator, confirms that the Release has been executed in accordance with the requirements for Survival and Wrongful Death Claims in accordance with the Parties' MSA.

30. No more than fifteen (15) days of the Final Registration Date, ARCHER shall provide the Court and the Parties with a report on the Participation Level as set forth in more detail in the MSA. ARCHER shall supplement its Participation Level report to the parties on a monthly basis unless requested more frequently by the Court or jointly by the parties.

31. In addition to the reports set forth above, ARCHER shall provide the Court and the parties with all other reports and certifications in accordance with the agreement of the Parties in the MSA.

32.     Counsel for Eligible Claimants and all Eligible Claimants themselves are hereby on notice that the Court expects full compliance with the notices provided by ARCHER, as ARCHER has been delegated authority from the Court to process registration materials and deficiencies.  Failure to strictly comply will be grounds for dismissal with prejudice WITHOUT FURTHER NOTICE.

33.      Other than the payment obligation set forth in Article 3 of the MSA, 3M shall have no responsibility for any fees, expenses, or costs in connection with ARCHER, the Settlement Allocation Master, the EIF Settlement Master, or any other professional or process in connection with the administration of the settlement.

34.     Within seven days of the date of this Order, ARCHER, the Settlement Allocation Master, and the EIF Settlement Master must file affidavits disclosing whether there is any ground for disqualification under 28 U.S.C. § 455.[4]

**SO ORDERED**, on this 29th day of August, 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[4] This requirement does not preclude ARCHER from immediately beginning its work with respect to the Settlement Program.