UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE:<br>3M COMBAT ARMS<br>EARPLUG PRODUCTS LIABILITY<br>LITIGATION, | Case No. 3:19-MD-02885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |
| This Document Relates to:<br>All Cases | |

## JOINT MOTION FOR APPROVAL OF STOCK ISSUANCES EXEMPT FROM REGISTRATION REQUIREMENT UNDER SECURITIES ACT SECTION 3(A)(10)

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certify that, based on the Word Count function in Microsoft Word, this Joint Motion contains 4,068 words, inclusive of headings, footnotes, and quotations.

# TABLE OF CONTENTS

Introduction .................................................................................................1

Relevant Factual Background .....................................................................2

Legal Standard ...........................................................................................3

Argument....................................................................................................5

I.    This Court Has Been Advised Prior to the Hearing That 3M Will Rely on the Section 3(a)(10) Exemption Based on This Court's Approval of the Stock Issuances. ............................................................................................5

II.   The Terms of The Proposed Exchange Are Fair. ...........................5

     A.    The Proposed Exchange Is Fair.............................................6

     B.    The Value of the CAE Claims................................................9

     C.    The Securities Are Being Exchanged for Claims ...............11

III.   All Persons to Whom Securities Would Be Issued Received Adequate Notice of the Fairness Hearing. ...................................................12

IV.   No Procedural Impediments Existed as to the Appearance of Any Person Wishing to Be Heard. ...................................................................14

V.    Distribution of Proceeds Traceable to the Stock Issuances Will Be Limited To Ensure Compliance With Section 3(a)(10). .............................14

VI.   Form of Fairness Determination and Approval............................15

Conclusion ...............................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*In re Trade Partners, Inc. Inv. Litig.*,
  No. 07-MD-1846, 2008 WL 4911797 (W.D. Mich. Nov. 13, 2008)........... passim

*In re Tripath Tech., Inc., Sec. Litig.*,
  No. 04-CV-4681, 2006 WL 1009228 (N.D. Cal. Apr. 18, 2006) .......................12

*Oceana Capitol Grp. Ltd. v. Red Giant Ent., Inc.*,
  150 F. Supp. 3d 1219 (D. Nev. 2015) .............................................................4, 5

*Sec. & Exch. Comm'n v. Blinder Robinson & Co.*,
  511 F. Supp. 799 (D. Colo. 1981) ......................................................................6

*Sec. & Exch. Comm'n v. Founding Partners Cap. Mgmt.*,
  No. 09-CV-229, 2014 WL 2993780 (M.D. Fla. July 3, 2014)..................... 6, 7, 9

*YA II PN, Ltd. v. Taronis Techs., Inc.*,
  435 F. Supp. 3d 622 (S.D.N.Y. 2020) .............................................................4, 6

**STATUTES**

15 U.S.C. § 77c(a)(10)............................................................................. passim

15 U.S.C. § 77e(c)............................................................................................3

**OTHER AUTHORITIES**

Staff Legal Bulletin No. 3A (CF) (June 18, 2008) .................................. 5, 6, 11, 15

**RULES**

Securities Act Rule 144(a)(3) ........................................................................16

# INTRODUCTION

The Parties to the August 29, 2023 Master Settlement Agreement ("MSA")[1], Negotiating Plaintiffs' Counsel ("NPC") and Defendants, including 3M Company ("3M"), agreed to "settle and fully resolve all litigation and claims against" Defendants "that exist, have existed, or may exist in the future, which are related to, arise from, are caused by, or are in any way connected to the use of Combat Arms Earplugs."[2]  MSA at 1.  Pursuant to the MSA, 3M will make payments in exchange for the release and dismissal of CAE Claims upon the satisfaction of Participation Levels, meaning a certain percentage of Eligible Claimants have settled their CAE Claims.  *See id.* at 1, 6.

Upon satisfaction of the 98% Participation Level, Defendants have an obligation to pay $3.5 billion pursuant to a payment schedule set forth in Section 11 and Exhibit 1 to the MSA.  Defendants may elect to satisfy up to $1 billion of that obligation with 3M common stock issued in four separate tranches on specific dates as set forth in the MSA and MSA Exhibit 1 (the "Stock Issuances").  *See* MSA § 11.4.  The Stock Issuances are structured to be made pursuant to the exemption from registration requirements of Section 3(a)(10) of the Securities Act

---

[1] As part of the global settlement defined in the MSA, the Parties also entered into MSA II and MSA III.  *See* Dkt. 3809-1 (MSA); Dkt. 3809-4 (MSA II); Dkt. 3809-6 (MSA III) (collectively, the "Agreements").

[2] All defined terms used herein are defined as in the MSA unless otherwise noted.

of 1933, 15 U.S.C. § 77c(a)(10) ("Section 3(a)(10)").

The Section 3(a)(10) exemption is available only if this Court approves the terms and conditions of the Stock Issuances in exchange for CAE Claims, after a qualifying hearing upon the fairness of such terms and conditions.  The Parties jointly move this Court for such a fairness determination and approval as set forth in Exhibit A to this Motion.

## RELEVANT FACTUAL BACKGROUND

The Parties anticipate that there will be more than 250,000 current Eligible Claimants (not including future CAE Claims to be added) in this multidistrict litigation ("MDL") who may elect to participate in the settlement ("MDL Eligible Claimants").  Pursuant to the MSA, Eligible Claimants have received or will receive Registration Forms and may choose to participate in the settlement (subject to certain exceptions in the MSA and the later addition of future Eligible Claimants to be included), thereby becoming Registered Claimants.  *See* Dkt. 3814.

To facilitate payment to Registered Claimants, the Court ordered the establishment of the Qualified Settlement Fund ("QSF"), which will receive and distribute settlement proceeds, including for payment of attorneys' fees, pursuant to the MSA.  Dkt. 3856.  The Court appointed ARCHER Systems, LLC ("Archer") and Randall L. Sansom, C.P.A., P.A. as the QSF Co-Administrators.  *Id.*; Dkt. 3856-1.  On November 22, 2023, the Court substituted BrownGreer PLC in for

Archer to serve alongside Mr. Sansom as a QSC Co-Administrator.  Dkt. 3941.

The Court also appointed an Investment Manager, Orion Settlement Solutions,

LLC, who is responsible for investing the principal and income of the assets held

in the QSF.  Dkt. 3856; Dkt. 3856-1; Dkt. 3888.  The Investment Manager is also

responsible for liquidating any shares of 3M common stock issued to the QSF as

part of the Stock Issuance to allow Eligible Claimants to receive cash

compensation.  Dkt. 3856; Dkt. 3856-1; Dkt. 3888.  The QSF Co-Administrators

and the Investment Manager are independent from each other and are also not

affiliated with either 3M or the NPC in any way.  *See* Dkt. 3856-1 at 4.

## LEGAL STANDARD

Issuers in the United States are generally prohibited from issuing stock

unless the issuance is validly registered pursuant to a registration statement with

the Securities and Exchange Commission ("SEC") or made pursuant to a valid

exemption from registration.  *See* 15 U.S.C. § 77e(c).  Section 3(a)(10) creates

such an exemption for securities issued in exchange for settlement of claims,

provided the terms and conditions of such issuance and exchange are approved by

a court (or certain other governmental entity).  Specifically, under Section 3(a)(10),

a security is exempt from registration if it:

> is issued in exchange for one or more bona fide outstanding securities,
> claims or property interests, or partly in such exchange and partly for
> cash, where the terms and conditions of such issuance and exchange
> are approved, after a hearing upon the fairness of such terms and

conditions at which all persons to whom it is proposed to issue
securities in such exchange shall have the right to appear, by any
court. . . .

15 U.S.C. § 77c(a)(10).

Courts have interpreted Section 3(a)(10) to require that: (1) the securities be
exchanged for outstanding claims; (2) a court conduct a hearing upon the fairness
of the terms and conditions of the exchange of securities and claims at which all
persons to whom it is proposed to issue securities shall have the right to appear;
and (3) the court issue a finding that the terms of the proposed exchange are
substantively and procedurally fair to those to whom the securities will be issued.[3]
*YA II PN, Ltd. v. Taronis Techs., Inc.*, 435 F. Supp. 3d 622, 626 n.5 (S.D.N.Y.
2020); *In re Trade Partners, Inc. Inv. Litig.*, No. 07-MD-1846, 2008 WL 4911797,
at *2 (W.D. Mich. Nov. 13, 2008).  Relevant SEC guidance further requires that
"adequate notice" of the fairness hearing be provided to the potential recipients of
the securities, including that "[t]here cannot be any improper impediments to the
appearance by those persons at the hearing," and that "[t]he reviewing court" be
"advised before the hearing that the issuer will rely on the Section 3(a)(10)

---

[3] Congress intended "the § 3(a)(10) exemption to fall entirely within the purview
of the long-established court system," and "did not require that the SEC be named
as a party in the proceeding or be given notice of the hearing."  *Oceana Capitol
Grp. Ltd. v. Red Giant Ent., Inc.*, 150 F. Supp. 3d 1219, 1223 (D. Nev. 2015)
(citation omitted).

exemption based on the court's . . . approval of the transaction."[4]

## ARGUMENT

## I.   This Court Has Been Advised Prior to the Hearing That 3M Will Rely on the Section 3(a)(10) Exemption Based on This Court's Approval of the Stock Issuances.

3M's intended reliance on the Section 3(a)(10) exemption in connection with the Stock Issuances is an express part of the MSA.  *See* MSA §§ 11.4, 7.2 (discussing exemption).  The Court recognized that reliance at the September 8, 2023 hearing: the "next hearing will likely be the fairness hearing on the stock transfer[.]"  Sept. 8, 2023 Hr'g Tr. 86:24–25.  Subsequently, on October 18, 2023, the Court ordered notice of the Fairness Hearing.  Dkt. 3911.  And the Parties further alerted the Court of the intended reliance on Section 3(a)(10) through submission of this joint memorandum and supporting materials.  *See Trade Partners*, 2008 WL 4911797, at *4.

## II.   The Terms of The Proposed Exchange Are Fair.

"Fundamentally, the court must find that the proposed issuance and exchange of securities is fair after considering the totality of the evidence."  *Oceana Capitol*, 150 F. Supp. 3d at 1224 (citing *Trade Partners*, 2008 WL

---

[4] *See* Staff Legal Bulletin No. 3A (CF) (June 18, 2008) ("SLB 3A"), *available at* https://www.sec.gov/corpfin/staff-legal-bulletin-3a (providing guidance from the SEC's Division of Corporation Finance concerning the Section 3(a)(10) exemption).  A copy of SLB 3A retrieved on November 27, 2023 is attached hereto as Exhibit B.

4911797, at *3).  Courts in this Circuit apply a five-factor test set forth in *Sec. & Exch. Comm'n v. Founding Partners Cap. Mgmt.* to evaluate whether the "settlement is the product of arms-length bargaining"  No. 09-CV-229, 2014 WL 2993780, at *12–*13 (M.D. Fla. July 3, 2014) (citing *Sec. & Exch. Comm'n v. Blinder Robinson & Co.*, 511 F. Supp. 799, 801 (D. Colo. 1981)).  The reviewing court must also "have sufficient information before it to determine the value of both the securities, claims or interests to be surrendered and the securities to be issued in the proposed transaction."  SLB 3A (citations omitted).  These analyses, of course, relate to each other and overlap.  *See YA II*, 435 F. Supp. 3d at 625.  As described below, the long history of this MDL and the Court's deep involvement in adjudication of the merits and the Parties' intensely negotiated mediated settlement strongly support a fairness finding.

### A.    The Proposed Exchange Is Fair.

Courts in the Eleventh Circuit consider five factors in determining whether an exempt issuance of securities under Section 3(a)(10) is "fair": "(1) the recommendations of counsel; (2) the scope of discovery; (3) apparent alternatives to the settlement; (4) the nature and volume of responses from those receiving notice of the hearing; and (5) opportunity for direct participation by those who would receive issued securities." *Founding Partners*, 2014 WL 2993780, at *12 (citing *Blinder Robinson*, 511 F. Supp. at 801).  As set forth below, all five factors

6

weigh in favor of a fairness finding here.

***Counsel Recommendation.***   The "recommendations of counsel" strongly weigh in favor of a finding of fairness.  *See Founding Partners*, 2014 WL 2993780, at *12.  The proposed Stock Issuances, and the settlement more generally, have been recommended by both Parties, and were extensively negotiated as part of a mediation spanning multiple months under the supervision of mediators appointed by this Court.  Sept. 8, 2023 Hr'g Tr. 84:16–86:1. Moreover, CAE Counsel for every MDL Eligible Claimant participating in the settlement will have separately recommended the settlement to that MDL Eligible Claimant.  MSA §§ 5.6.1, 5.6.2.

***Scope of Discovery.***   The broad scope of discovery weighs in favor of a fairness finding.  *See Founding Partners*, 2014 WL 2993780, at *12.  Here, the Court has overseen litigation over CAE claims since 2019 and the settlement is intended to resolve all CAE Claims.  Discovery in this MDL has been extensive and has been followed by more than 40 summary judgment motions and over a dozen bellwether trials, including six before this Court.  Dkt. 3811 ¶ 6.  Indeed, as the Court has explained, this has become a "'mature' tort."  *Id.* ¶ 43.

***Settlement Alternatives.***   Settlement here is by far the superior option.  *See Founding Partners*, 2014 WL 2993780, at *15 (discussing "concern[s] about the risks of not settling").  This is the largest MDL in the history of the federal

judiciary, comprising over one-third of the entire civil docket.  Sept. 8, 2023 Hr'g

Tr. 5:14–19; Dkt. 3811 at 10–11.  Absent this settlement, each of these CAE cases

would separately proceed through litigation and flood federal court dockets across

the country.  *See* Dkt. 3811 ¶ 8.  Moreover, the litigation costs for many MDL

Eligible Claimants could greatly exceed the amount they ultimately obtain through

litigation, were they to even obtain an award.  Sept. 8, 2023 Hr'g Tr. 7:9–8:16

(discussing "the relative strengths and weaknesses of individual claims" based on

"the nuanced evidentiary record that was developed by the parties over nearly five

years[,]" "extraordinary costs associated with continued litigation of any Combat

Arms Earplug claim[,]" and "the risk of litigating hundreds of thousands of

claims[.]").  Based on its intimate familiarity with all aspects of this litigation, this

Court has opined that settlement is the superior option:

> And I say this from the perspective of someone who is rather uniquely
> positioned.  I'm positioned as a neu[t]ral [sic].  And I don't think
> there's anyone who knows and understands this litigation, both its
> intricacies and broader whole of it, as well as its risks, more
> thoroughly as I do as a neutral.  I've been in the trenches of the
> litigation with the parties since day one, April 3rd, 2019.  I've dealt
> with discovery.  I've worked with the government.  I've reviewed and
> ruled on thousands of motions, thousands of objections.  I've presided
> over six trials with nine plaintiffs and listened to the record of ten
> other trials.  I followed closely the appeals of the bellwethers and the
> Aearo defendant's bankruptcy.  No one is in a better position or more
> credible position to evaluate this settlement than I am.  And again I
> say to all of you that the settlement is fair and the settlement is smart.

Sept. 8, 2023 Hr'g Tr. 6:18–7:8.

***Nature and Volume of Responses.***  The "nature and volume of responses from those receiving notice of the hearing" and the "opportunity for direct participation by those who would receive issued securities" also weigh in favor of a finding of fairness.  *See Founding Partners*, 2014 WL 2993780, at *12.  Direct notice was sent to over 250,000 MDL Eligible Claimants and was supplemented by an expert-designed and targeted publication notice program.  Deady Decl. ¶ 11–14; Wheatman Decl. ¶¶ 8–9.  In response, at the time of the filing of this Motion, only one MDL Eligible Claimant filed a notice of intent to appear and later withdrew that notice as filed in error.  Dkt. 3926; Dkt. 3934.  Thus no MDL Eligible Claimant has indicated a desire to be heard at the Fairness Hearing.

***Opportunity for Direct Participation.***  As explained in detail in Parts III and V *infra*, every MDL Eligible Claimant who may receive the proceeds of the Stock Issuances was sent direct notice of the Fairness Hearing by either electronic or paper mail.  Deady Decl. ¶ 14–15.  Courts have found such direct notice to be adequate.  *See Trade Partners*, 2008 WL 4911797, at *2, *4 (notice provided "to all plaintiffs in these consolidated cases" "both by regular mail and, where possible, by email" 19 days before hearing found "adequate").

## B.    *The Value of the CAE Claims.*

This Court is intimately familiar with the value of the CAE Claims through overseeing case-specific discovery and handling motion practice for nearly 400

CAE cases, culminating in rulings on more than 260 motions *in limine*, 109

*Daubert* challenges, 47 choice-of-law disputes, 42 case-specific summary

judgment motions, and 21 post-trial motions, and countless additional discovery,

procedural, and/or logistical disputes.  *See* Dkt. 3811 ¶ 6.  This Court also

conducted six CAE bellwether trials.  *Id.*  As this Court has stated: "No one is in a

better position or more credible position to evaluate this settlement than I am."

Sept. 8, 2023 Hr'g Tr. 7:5–8.  Moreover, the Court-appointed Settlement

Allocation Master and Extraordinary Injury Special Master have created extensive

documentation and processes for valuing CAE Claims under the Court's

supervision.  Dkt. 3816 at 6–7.  These processes are set out in the Registration

Forms and supporting documentation.  *See, e.g.*, Dkt. 3809-2 Ex. 4 at 1, 9.  The

value of the CAE Claims is documented and clear.

 ***C. Value of the Stock Issuances.*** As a public company, 3M is required to

regularly file with the SEC extensive information regarding its business and

financial condition, including quarterly and annual reporting of financial

statements, detailed narrative disclosures regarding 3Ms's financial condition and

results of operations for the quarter and year, and material risks relating to 3M's

business.  Jackson Decl. ¶ 31.  3M is also subject to the New York Security and

Exchange rules requiring it to promptly release to the public any news or

information that might be reasonably expected to materially affect the market for

its stock.  *Id.* ¶ 32.  Comprehensive and up-to-date material information about 3M is readily available to any member of the public who wishes to review it.  *Id.* at 12–14.

The Stock Issuances may be issued by 3M under the Agreements in four tranches totaling $1 billion, with each tranche valued at the time of issuance at $350 million, $250 million, $250 million, and $150 million, respectively.  MSA §§ 11.4.1–11.4.4.  The number of shares issued for each tranche under the Agreements will be based on the volume-weighted average price of 3M common stock over the 10-trading day period ending on, and including, the last trading day prior to the date of issuance, *id.*, as is frequently used in transactions to determine the value of the stock consideration and is relied upon to reflect the most current valuation of the stock.  Jackson Decl. at 14–16; *see also Trade Partners*, 2008 WL 4911797, at *3.

### C.     *The Securities Are Being Exchanged for Claims*

Section 3(a)(10) requires that the "securities [] be issued in exchange" for "claims[.]"  SLB 3A.  As set forth above, pursuant to the MSA and related documents, including the MDL Eligible Claimants' Registration Forms and Releases, any proceeds from the Stock Issuances will be exchanged with MDL Eligible Claimants exclusively for the release (and dismissal where appropriate) of their CAE Claims.  MSA at 6; Dkt. 3809-2 Ex. 4 at 1 (form release).

11

III.   **All Persons to Whom Securities Would Be Issued Received Adequate Notice of the Fairness Hearing.**

In the context of class actions, courts have found Section 3(a)(10)'s notice requirement satisfied where direct notice of the hearing "was mailed to all persons or entities reasonably identifiable" who were members of the class. *In re Tripath Tech., Inc., Sec. Litig.*, No. 04-CV-4681, 2006 WL 1009228, at *1–*2 (N.D. Cal. Apr. 18, 2006); *see also Trade Partners*, 2008 WL 4911797, at *2–*5 (approving stock issuances in MDL settlement under Section 3(a)(10) where notice of the hearing had been "provided by plaintiffs' counsel, both by regular mail and, where possible, by e-mail" 19 days before hearing).

***Direct Notice.***   Here, the parties have provided direct notice of the Fairness Hearing to over 250,000 MDL Eligible Claimants.  Distribution of direct notice of the Fairness Hearing to MDL Eligible Claimants began on October 20, 2023. Deady Decl. ¶¶ 11–14.  Specifically, direct notice was delivered to 260,646 MDL Eligible Claimants by either email or the United States Postal Service. *Id.*  The Settlement Administrator has maintained and will continue to maintain a list of MDL Eligible Claimants who were successfully delivered direct notice.  Deady Decl. ¶ 15.

***Supplemental Notice.***  In addition to the direct notice program, the Parties also jointly retained Dr. Shannon Wheatman, an expert with extensive experience in designing notice programs, to design and implement a supplemental publication

notice program.  Wheatman Decl. ¶¶ 3–5, 9.  Dr. Wheatman worked closely with the Parties and received input from this Court to provide additional notice regarding the Fairness Hearing.  *Id.*

    *Social Media and Banner Advertisement Notice.*  The supplemental notice program included advertising targeted to military service members on popular social media websites such as Facebook, Instagram, and Reddit, and other websites that use the Google Ads platform to display advertising.  Wheatman Decl. ¶ 13. The targeting was based on a variety of factors that, based on Dr. Wheatman's extensive experience, would be most likely to reach the intended audience of MDL Eligible Claimants.  Wheatman Decl. ¶¶ 15–16.  From November 6 to November 25, 2023, almost 12 million gross impressions—or times a form of media containing the Notice is seen—were delivered.  Wheatman Decl. ¶ 14.

    *News Publication Notice.*  Lastly, the notice program included advertisements of varying sizes to readers of the online military news website, *Stars and Stripes*, https://www.stripes.com, beginning on or about November 6, 2023 and includes a quarter-page advertisement (5.35" x 10.5") to readers of the print edition of the *Wall Street Journal* on November 16, 2023.  Wheatman Decl. ¶¶ 10–11.

    **Website Notice.**  This Court and the Settlement Administrator maintain publicly available websites that also include notice of the fairness hearing and

other relevant information about the litigation and settlement.  *See* 3M Products

Liability Litigation, MDL No. 2885, *available at* https://www.flnd.uscourts.gov/

3m-products-liability-litigation-mdl-no-2885; 3M Combat Arms Earplugs Official

Settlement Hub, *available at* https://3m-earplugsettlement.com/.

## IV.    No Procedural Impediments Existed as to the Appearance of Any Person Wishing to Be Heard.

There were no procedural impediments posed to the appearance by those

persons at the hearing to whom securities would be issued in the proposed Stock

Issuances (or who might receive proceeds traceable to the Stock Issuances), nor to

the appearance of any person wishing to be heard.  *See Trade Partners*, 2008 WL

4911797, at *5.  The comprehensive notice program began on October 20, 2023,

52 days before the hearing, and provided that any MDL Eligible Claimant wishing

to be heard would have the opportunity to do so in person by filing a Notice of

Intent to Appear, a template of which was attached to the notice.  *See* Dkt. 3911.

The Fairness Hearing will also be open to attendance by all individuals to whom

securities might be issued (or proceeds of the securities may be paid) pursuant to

the Agreements, as well as the general public, in person, by telephone, or by Zoom

video conference.  *Id.*

## V.    Distribution of Proceeds Traceable to the Stock Issuances Will Be Limited To Ensure Compliance With Section 3(a)(10).

The SEC guidance in SLB 3A requires that no more than one-third of the

proceeds from the Stock Issuances be used for attorneys' fees.  SLB 3A n.10.

Moreover, based on discussions with the SEC staff, the proceeds of the Stock

Issuances will be paid only to MDL Eligible Claimants who received direct notice

of the Fairness Hearing.  Jackson Decl. ¶¶ 5, 12, 23–25.

To comply with both of these parameters and to ensure that the Parties can

rely on Section 3(a)(10), the Parties further request that the Court order the QSF

Co-Administrators to limit the proceeds from the Stock Issuances as follows: (1)

only identified MDL Eligible Claimants to whom direct notice was delivered shall

receive proceeds traceable to the Stock Issuances, and (2) no more than one-third

of the proceeds traceable to the Stock Issuances shall be used to pay attorneys' fees

(and in that instance, only attorneys' fees owed by the foregoing subset of

identified Eligible Claimants).  *Id.* ¶¶ 23–25.

## VI.     Form of Fairness Determination and Approval.

Based on the foregoing and any other evidence this Court may deem

relevant, the Parties respectfully request an order as set forth in Exhibit A,

including that this Court find that: (1) the shares of 3M common stock to be issued

in the Stock Issuances will be issued solely in exchange for *bona fide* outstanding

claims; (2) all persons and entities to whom the shares of 3M common stock may

be issued in the Stock Issuances have had the right to appear at the Fairness

Hearing; (3) the Fairness Hearing was open to all persons and entities to whom the

shares of 3M common stock to be issued in the Stock Issuances will be issued; (4) adequate notice has been given to all persons and entities to whom the shares of 3M common stock to be issued in the Stock Issuances will be issued, and there have been no improper impediments to the appearance of such persons and entities at the Fairness Hearing; (5) the terms and conditions of the Agreements, including the Stock Issuances in exchange for the settlement and release of claims against 3M, are fair to all persons and entities on behalf of whom the shares of 3M common stock will be issued under the Agreements and this Order, and that the terms and conditions of the Stock Issuances are approved; (6) the Stock Issuances are exempt from registration pursuant to Section 3(a)(10); and (7) the shares of 3M common stock to be issued in the Stock Issuances will not be "restricted securities" within the meaning of Securities Act Rule 144(a)(3) and will be immediately (upon issuance) freely transferrable and freely tradeable without regard to Rule 144 as long as they are not held by an affiliate of 3M.

The Parties further request approval for 3M to issue the shares of 3M common stock as contemplated by the Stock Issuances without registration or compliance with the prospectus delivery requirements of U.S. securities laws (or, where applicable, any analogous state securities laws).

Lastly, the Parties request that, at any time after the issuance of any tranche of shares of 3M common stock pursuant to the Stock Issuances, the QSF Co-

Administrators be permitted, in accordance with the terms of the Agreements, to sell or cause to be sold all or any portion of such shares, in reliance on the exemption from registration requirements of the Securities Act of 1933 provided by Section 3(a)(10) and any analogous provisions of applicable state securities laws, which exemption shall also remain applicable to and not otherwise limit or invalidate the initial issuance and delivery of such shares by 3M to the QSF.

## CONCLUSION

For all the foregoing reasons, the Parties submit that the proposed exchange of 3M common stock for CAE Claims is fair and request the Court's determination of the fairness and approval of the Stock Issuances for purposes of Section 3(a)(10) of the Securities Act of 1933 consistent with the proposed order in Exhibit A.

17

Dated: November 27, 2023

*/s/ Charles F. Beall, Jr.*
Charles F. Beall, Jr.
Florida Bar No. 66494
cbeall@mhw-law.com
Larry Hill
Florida Bar No. 173908
lhill@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541

*Counsel for Defendants 3M*
*Company, 3M Occupational Safety*
*LLC, Aearo Technologies LLC,*
*Aearo Holding, LLC, Aearo*
*Intermediate, LLC and Aearo, LLC*

/s/ Bryan F. Aylstock
Bryan F. Aylstock
Florida Bar No. 78263
Jennifer M. Hoekstra*
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
baylstock@awkolaw.com
jhoekstra@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010

Christopher A. Seeger*
New Jersey State Bar No. 042631990
Caleb A. Seeley*
New Jersey State Bar No. 303522019
SEEGER WEISS
cseeger@seegerweiss.com
cseeley@seegerweiss.com
55 Challenger Road
Sixth Floor
Ridgefield Park, NJ 07660
Telephone: (973) 693-9100

*Admitted *pro hac vice*

*Negotiating Plaintiffs' Counsel*