UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS           Case No: 19-md-2885
EARPLUG PRODUCTS
LIABILITY LITIGATION

This Document Relates to:         Judge M. Casey Rodgers
All Cases                              Magistrate Judge Hope T. Cannon

## Report and Recommendation
## Held Costs

### I.   Introduction

This MDL began on April 3, 2019 with the consolidation and transfer of all the then-pending cases involving the 3M Combat Arms Earplugs version 2 to Judge Casey Rodgers in the Northern District of Florida. Extensive litigation ensued from that point with plaintiffs vigorously prosecuting their individual actions, as a collective under the auspices of this MDL, and defendants just as vigorously defended the allegations pursued against them. Over the next four years and four months, with cases transferred from the JPML on an ongoing basis, as well as cases being filed directly in the Northern District of Florida on the MDL's active docket and administrative docket, MDL 2885 quickly attained the distinction of being the largest MDL in the history of the federal judiciary and responsible for in excess of forty percent of the federal judiciary's entire civil caseload. On August 29, 2023, the Court announced on the website of the United States District Court

1

for the Northern District of Florida that the parties had reached an agreement to settle all of the cases pending in the MDL, as well as those cases filed on consolidated dockets in the State of Minnesota courts, in the amount of Six Billion Dollars ($6,000,000,000.00).

Over the entirety of the litigation, the Court has entered several Common Benefit Orders (CBO) starting with CBO No. 1, ECF 488, on July 12, 2019 and culminating with CBO No. 5, ECF 3968, on December 14, 2023. Other orders of the Court also touch on common benefit issues, e.g. Case Management Order (CMO) No. 67, ECF 3864, on September 11, 2023. In CBO No. 2, ECF 900 at page 1, on January 9, 2020, the Court appointed Randall Sansom, CPA, as the Common Benefit Fund Special Master, a position in which he continues to serve. In that same order, the Court noted that Mr. Sansom would not prepare a Report and Recommendation (R&R) regarding common benefit fees and held costs. However, in CBO No. 3, ECF 1659, the Court, at page 11, noted that the undersigned would be making recommendations regarding common benefit fee allocations. In CBO No. 5, ECF 3968, at page 2, the Court broadened the undersigned's scope of work to include preparing a R&R relative to held costs.

It is the latter task which this Report and Recommendation seeks to address herein.

## II. Process

The undersigned met many times with Special Master Sansom CPA and his partner and colleague, Sarah Hogan, in the massive undertaking of collecting, reviewing and auditing submissions from plaintiffs' counsel of time spent and held costs incurred, for the purpose of becoming familiar with the process and procedures associated with the marshalling of the time and costs. Furthermore, Ms. Hogan regularly sent the monthly reports prepared for the benefit of the Court which the undersigned just as regularly reviewed. Once the common benefit submissions by counsel came to a close following the settlement and the Court declaring the common benefit work had ended, except for preauthorized work by the Court. CMO No. 67, ECF 3864, page 3, on September 11, 2023, the undersigned again met for a multi-day review of the held costs.

The undersigned has been given unfettered access to the common benefit submissions of counsel, including Expense Locker and the Excel spreadsheets maintained by Ms. Hogan, and has been provided extensive explanations about how Special Master Sansom, together with Ms. Hogan, pursued the task of collecting and vetting such submissions. Moreover, every inquiry and scrutiny offered by the undersigned was met by a thorough and abundantly satisfactory response from Special Master Sansom and/or Sarah. It was abundantly clear to the undersigned that adherence to the CBOs of the Court was foremost on the minds of Special

Master Sansom and Ms. Hogan. Mr. Sansom often referred to CBO No. 1 as his "bible" and not something he chose to disregard in any fashion. As one would expect, CBO No. 1, which provided extraordinarily comprehensive mandates regarding what was or was not allowed as common benefit time and expenses, was the foundation for all subsequent such orders and for all participating counsel to follow with strict adherence. Special Master Sansom verified that the process he pursued complied with CBO No. 1 in this fashion, "for a held cost to be considered compensable, it had to be timely submitted with the appropriate description and receipt uploaded through Expense Locker. Each individual receipt was physically reviewed and verified for accuracy and compliance as defined in CBO1. . . . If the held costs submitted did not comply with CBO1, it was rejected."

If the submission of an expense that would become a held cost was rejected, the attorney or firm submitting it was notified and given an opportunity to appeal the rejection to the Court or the rejection would stand. CBO No. 2, ECF 900, page 2. There was ample notice to each firm with a rejected submission to cure the disqualifying factor, if possible. Ms. Hogan performed the task in each instance of notifying firms of any rejections and, when appropriate, to suggest corrections that would resolve the issue. For example, if a submission was simply attributed to the wrong category she would suggest the proper category. In addition, once Ms. Hogan had processed Litigation Locker she would send an email blast to all registered

4

users of that fact giving attorneys/firms knowledge of the time to access their information for their own review. Moreover, each Monday Litigation Locker would notify registered users of the number of items they had in rejected status which needed their review and attention.

Throughout this litigation and through the period common benefit submissions were received, until the settlement brought all of the common benefit work to a halt, the Special Master and his predecessor worked with the Common Benefit Committee appointed by the Court. The committee functioned as additional eyes and minds on the submissions of their fellow plaintiffs' counsel with of course the added responsibility of acting by appointment of the Court to review the submissions of those counsel for compliance with the Court's orders. The undersigned met with the committee on one occasion to become familiar with the members and gain a greater sense of their work.

A requirement of CBO #1, at page 14, was that the Common Benefit Special Master and CPA, which at that point were different persons, in consultation with the Common Benefit Committee, were to provide the Court with monthly reports. Typically, those reports were in person and written. Judge Rodgers was thoroughly engaged in the review of all time and expense submissions every month. The Court carefully scrutinized each report for compliance with CBO No. 1. Moreover, quarterly reports were provided to Lead Counsel, Co-Lead Counsel, and the

Executive Committee. Once the undersigned's role was defined, monthly reports were provided by Ms. Hogan to me as well. Although not required by the Court, but in an effort to avoid disagreements and to provide notice, the Special Master sent annual reports to those firms who were appointed leadership of the participating firms. Moreover, every firm had the ability to review all the information related to their submissions at any time.

The undersigned was appointed by the President, and confirmed by the United States Senate as a United States District Judge in 1998. Within the first year on the federal bench, the undersigned was appointed to preside over a multi-district litigation. Since that first appointment to preside over a MDL case, with more to follow, the undersigned attended thirteen Transferee Judges' Conferences sponsored by the Judicial Panel of Multi-District Litigation (JPML), five of which he either served as a speaker or moderator or both. Such conferences are the educational effort of the JPML to provide judges who have been assigned such litigation with the knowledge and wherewithal to effectively and efficiently preside over the litigation assigned to them. Both before and after retirement from the federal bench, this retired U.S. District Judge has spoken at legal education conferences, seminars, and workshops, participating with other lawyers and judges in discussions of the processes, procedures, and practices for managing complex and mass tort litigation, sixty-five times. This retired judge is confident that the vetting,

6

managing, and compiling of common benefit held costs (as well as common benefit time submissions) follow the absolute best practice for such endeavors within a MDL.

The undersigned in preparation for his work represented by this Report and Recommendation, began first with reviewing each Common Benefit Order and further reviewing monthly the time and expense reports provided by Ms. Hogan. Likewise, as referenced above, the undersigned had access to the itemized submissions of each counsel/firm through Litigation Locker, which is simply a mass aggregation of data, and Excel Spreadsheets prepared by Ms. Hogan. The primary objective of my review in each format was to become familiar, on a regular basis and at the conclusion, with the requirements of the Court and the submissions of counsel. Given the extensive review process described herein, it was not the intent of the undersigned, nor was it necessary in my opinion, to examine every individual submission for accuracy. Instead, the process which the undersigned followed was to look for submissions that on their face presented an anomaly either in context or the requirements of the Common Benefit Orders of the Court. When those instances arose, further inquiry was pursued by the undersigned until satisfied that the submission was properly accepted.

Once the aggregation of held costs was complete and pursuant to CBO No. 5, ECF 3968, Special Master Sansom sent to each counsel that had submitted

expenses to be held pending the settlement of the litigation a letter with the held costs reports spanning the entirety of the litigation for the purpose of allowing counsel to verify the costs submitted for reimbursement are legitimate, true, accurate, and authorized for common benefit work. Each attorney was given a fourteen day time span, at the direction of the Court in CBO No. 5 to return a certification attesting to the validity of expense, as referenced above, and to request reimbursement. Following receipt of all certifications the Special Master thereafter prepared a report for the undersigned to utilize in making his recommendations to the Court, including a chart with the final certified Held Costs the Special Master found to be reimbursable to the firms involved. The final certified amounts from Special Master Sansom were only established, even with the process described above, after Ms. Hogan checked with firms to see if any of the costs were already reimbursed to firms from other sources, primarily the bankruptcy court. The chart provides the Held Costs certified as appropriately reimbursable to the participating firms. See Exhibit A.

### III.   Recommendation

Considering the process described herein, including a review of submissions as described, the undersigned hereby recommends that the Court authorize the Special Master to reimburse the "Certified Amount" of the Held Costs as to each firm

as outlined in his certification chart to me and which is attached as Exhibit A hereto.

Respectfully submitted this 8th day of January, 2024.

/s/ *David R. Herndon*
Hon. David R. Herndon (ret)
Special Master

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the Special Master's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.

# EXHIBIT A

| Firm | Uncertified Amount | Certified Amount |
|---|---|---|
| Abraham, Watkins, Nichols, Sorrels, Agosto, Aziz & Stogner | $ - | $ 483,088.74 |
| AWKO | $ - | $ 2,265,575.22 |
| Bailey Cowan Heckman PLLC | $ - | $ 136,463.10 |
| Bailey Glasser LLP | $ - | $ 11,119.23 |
| Baron & Budd, P.C. | $ - | $ 8,058.63 |
| Beggs & Lane, RLLP | $ - | $ 2,761.42 |
| Burnett Law | $ - | $ 27,149.66 |
| Carlson Law Firm | $ - | $ 19,731.60 |
| Ciresi Conlin, LLP | $ - | $ 123,459.95 |
| Clark, Love & Hutson, PLLC | $ - | $ 656,880.14 |
| Colson Hicks Edison | $ - | $ 57,359.53 |
| Cornell Law | $ - | $ 1,301.08 |
| Cory Watson, P.C. | $ - | $ 11,672.45 |
| Douglas and London, P.C. | $ - | $ 7,087.93 |
| Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC | $ - | $ 3,395.53 |
| Gibbs Law Group LLP | $ - | $ 62,650.63 |
| Gori Law | $ - | $ 72,361.34 |
| Goza & Honnold, LLC | $ - | $ 24,830.49 |
| Heninger, Garrison, Davis, LLC | $ - | $ 162,129.99 |
| Hensley Legal Group | $ - | $ 42,651.60 |
| Johnson Johnson Lucas & Middleton | $ - | $ 1,439.09 |
| Johnson Law Group | $ - | $ 7,456.03 |
| Keller Postman | $ - | $ 563,399.20 |
| Kirtland & Packard, LLP | $ - | $ 4,572.19 |
| Laminack, Pirtle & Martines, LLP | $ - | $ 183,381.76 |
| Lanier Law Firm | $ - | $ 40,966.17 |
| Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A. | $ - | $ 290,216.03 |
| Lieff Cabraser Heimann & Bernstein, LLP | $ - | $ 6,893.64 |
| Meshbesher & Spence | $ (239.03) | $ - |
| Messa & Associates | $ - | $ 377,368.22 |
| Monsour Law Firm | $ - | $ 364,879.82 |
| Morgan & Morgan | $ - | $ 37,383.95 |
| Mostyn Law | $ - | $ 189,484.42 |
| Napoli Shkolnik, PLLC | $ (5,267.54) | $ - |
| Pittman Dutton | $ - | $ 16,142.42 |
| Pulaski Kherkher PLLC | $ - | $ 347,989.38 |
| Quinn Emanuel | $ - | $ 113,578.45 |
| Rasmussen Law | $ (188.00) | $ - |
| Rogers, Patrick, Westbrook & Brickman, LLC | $ - | $ 9,873.35 |
| Sara Schramm LLC | $ - | $ 28,238.59 |
| Seeger Weiss LLP | $ - | $ 1,755,811.11 |
| Simmons Hanly Conroy | $ - | $ 306,124.34 |
| Stueve Siegel Hanson LLP | $ - | $ 5,813.23 |
| Taylor Martino, P.C. | $ - | $ 1,430.19 |
| The Kuykendall Group | $ - | $ 728.40 |
| Tracey & Fox | $ - | $ 450,872.62 |
| Wagstaff & Cartmell, LLP | $ - | $ 306,099.97 |
| Walsh Law | $ - | $ 24,380.22 |
| Watts Guerra LLP | $ - | $ 21,525.67 |
| Weitz & Luxenberg, P.C. | $ - | $ 13,474.87 |
| Wilson Law, P.A. | $ - | $ 1,356.57 |