UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:19md2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

**DEFENDANTS' STATUS REPORT ON
INSURANCE COVERAGE PROCEEDINGS**

Pursuant to the Court's May 8, 2024 Order, Defendants submit this status report summarizing insurance-related developments to date.

**I.  Background**

For over a decade, insurers sold broad liability insurance policies to Aearo, and then 3M, promising coverage for any defense costs and liabilities Aearo and 3M may face from products liability suits alleging injuries arising out of Aearo and 3M's business.  But when Aearo and 3M were faced with hundreds of thousands of Combat Arms claims which, as the Court well knows, comprise by far the largest MDL in U.S. history—insurers broke their promise and refused to acknowledge their coverage obligations to Aearo and 3M, forcing Aearo and 3M, for years, to bear steadily mounting defense costs in the hundreds of millions of dollars, and now settlement costs in the billions.

The insurance coverage at issue totals more than $1.5 billion. This includes 27 commercial general liability policies purchased by Aearo between 1998 and 2008, before Aearo was acquired by 3M. Those policies offer at least $500 million of indemnity coverage plus unlimited coverage for Aearo's defense costs, which, to date, total over $370 million. Aearo and 3M together hold another 46 insurance policies for the 2018-2019 policy period, comprising 18 layers of coverage, with coverage limits totaling $1.05 billion.

The Combat Arms claims are classic products liability claims that fall squarely within Defendants' insurers' liability coverage. Unfortunately, the insurers' response to this high-dollar claim has been equally standard: mounting a years-long campaign of stonewalling their policyholders, including with repeated requests for information already available to them, and serial letters raising identical boilerplate defenses and inapplicable exclusions already addressed and rebutted by Aearo and 3M. The insurers' arguments rely on mischaracterizations of the underlying claims that are far removed from the reality of how these suits were litigated.

For instance, one key argument repeatedly raised by Aearo's primary insurers is that Aearo is not a "real" defendant in the Combat Arms litigation—despite being a named defendant in hundreds of thousands of Combat Arms suits. Another key argument touted by these insurers, which equally strains credulity, is that the

approximately $370 million in defense costs paid for Aearo and 3M's joint defense is insufficient to satisfy the policies' $250,000 self-insured retention.

These insurers have raised no meaningful defenses to coverage in nearly a year of litigation before the Delaware Superior Court (addressed in further detail below). They have instead fought Aearo and 3M at every turn in Aearo and 3M's efforts to secure an early ruling on the insurers' defense obligations, reflecting their singular focus on delaying a judgment that will affix their payment obligations.

In sum, despite lengthy and diligent efforts by Aearo and 3M to have their insurers honor their contractual obligations, the insurers have refused to do so. Aearo and 3M have thus been forced to pursue their insurers in both litigation and arbitration to secure the funds that Aearo and 3M (and the settling claimants in this MDL) are entitled to recover. Aearo and 3M are aggressively engaged in that effort, as addressed in further detail below. As the Court is aware, upon recovery of insurance proceeds under the Aearo and 3M policies, such recoveries are provided to the Qualified Settlement Fund pursuant to MSA § 11.3.2, for the benefit of MDL and Minnesota plaintiffs that have resolved their claims in accordance with the MSA.

## II. Delaware Coverage Litigation

On June 28, 2023, Aearo and 3M were compelled to file suit in the Superior Court for the State of Delaware against Aearo's insurers that sold liability insurance policies to Aearo for over a decade, including between 1998 and 2008. That suit

followed a years-long effort by 3M and Aearo to engage with these insurers on coverage to get them to commit their policy limits to a global settlement of the Combat Arms litigation, including providing them with numerous litigation and defense cost updates and extensive data and analysis demonstrating that each insurer's policy was triggered by allegations of bodily injuries occurring during their policy periods. Aearo and 3M continue to engage in dialogue with their insurers about contributing their limits to the settlement without the need for further litigation or arbitration, and Aearo and 3M expect that some of these insurers, and perhaps even a large number, eventually will pay their full indemnity limits. But thus far the insurers as a group have steadfastly refused to fully acknowledge their coverage and/or defense obligations and, to date, have paid none of the costs of Aearo's defense.

Aearo and 3M's suit seeks the following relief from Aearo's insurers: (1) a declaratory judgment that primary insurers Royal Surplus, Twin City, General Star, Liberty, and ACE have a duty to defend Aearo and/or a duty to pay Aearo's defense costs; (2) damages for breach of contract for these same insurers' failure to defend Aearo and/or pay its defense costs, in an amount to be proven at trial (currently exceeding $370 million); (3) a declaratory judgment that umbrella and excess insurers TIG, AIG, and Great American have a duty to defend Aearo; (4) damages for breach of contract for these same umbrella and excess insurers' failure to defend

Aearo, in an amount to be proven at trial (potentially up to the full amount of Aearo's defense costs if not recovered from the primary insurers); (5) a declaratory judgment that Royal Surplus, Liberty, TIG, AIG, Great American, and Zurich have a duty to indemnify Aearo for the Combat Arms litigation settlement; and (6) damages for breach of contract for these same insurers' failure to indemnify Aearo, in an amount to be proven at trial (equal to the policies' limits of approximately $500 million).

Judge Sheldon Rennie is presiding over the Delaware litigation, captioned *Aearo Technologies LLC, et al. v. ACE American Insurance Company, et al.*, Case No. N23C-06-255 SKR.

### A. Insurers and Policies in The Delaware Coverage Litigation

The insurers in the Delaware litigation issued primary, umbrella, and excess policies to Aearo that broadly cover "damages" that Aearo becomes legally obligated to pay because of "personal injury" or "bodily injury" (generally defined to include bodily injury, sickness, disability, or disease) that occurs during the policy period, caused by an "occurrence." Aearo's primary, umbrella, and certain excess policies additionally obligate the insurers to defend Aearo and/or pay Aearo's defense costs for any claims or lawsuits that seek damages that are at least potentially covered by the policies.

The Delaware litigation encompasses the following insurers and policies:

| *Primary Carriers* | | | |
|---|---|---|---|
| **Insurer** | **Policy Number** | **Policy Period** | **Policy Limits** |
| Royal Surplus Lines Insurance Company | KHA011654 | 09/30/1998–09/30/1999 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Royal Surplus Lines Insurance Company | KHA011654 | 09/30/1999–09/30/2000 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Twin City Fire Insurance Company | 10 ECS OA0384 | 09/30/2000–11/29/2001 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| General Star Indemnity Company | IYG-379510 | 11/12/2001–09/30/2002 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Liberty Surplus Insurance Corporation | EGL-BO-078981-012 | 09/30/2002–09/30/2003 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Liberty Surplus Insurance Corporation | EGL-BO-078981-022 | 09/30/2003–09/30/2004 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Liberty Surplus Insurance Corporation | EGL-BO-078981-032 | 09/30/2004–09/30/2005 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |

| Liberty Surplus Insurance Corporation | EGL-BO-078981-042 | 09/30/2005–09/30/2006 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| Liberty Surplus Insurance Corporation | EGL-BO-078981-052 | 09/30/2006–09/30/2007 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| ACE American Insurance Company | G23857054 | 09/30/2007–09/30/2008 | $1 million per occurrence / $2 million aggregate (defense in addition to limits) |
| *Umbrella Carriers* | | | |
| **Insurer** | **Policy Number** | **Policy Period** | **Policy Limits** |
| TIG Insurance Company | XLB 915 25 05 | 09/30/1998–09/30/1999 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| TIG Insurance Company | XLB 915 25 05 | 09/30/1999–09/30/2000 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 7401736 | 09/30/2000–09/30/2001 | $50 million per occurrence / $50 million aggregate (defense in addition to limits) |
| National Union Fire Insurance Company of Pittsburgh, PA | BE 1390129 | 10/30/2001–9/30/2002 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |

| | | | |
|---|---|---|---|
| American International Specialty Lines Insurance Company | 9744260 | 09/30/2002–09/30/2003 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| American International Specialty Lines Insurance Company | 9745320 | 09/30/2003–09/30/2004 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| American International Specialty Lines Insurance Company | 7410929 | 09/30/2004–09/30/2005 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| American International Specialty Lines Insurance Company | 9746404 | 09/30/2005–09/30/2006 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| Illinois National Insurance Company | BE 6799263 | 09/30/2006–09/30/2007 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| Illinois National Insurance Company | BE 4890264 | 09/30/2007–09/30/2008 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| *Excess Carriers* | | | |
| **Insurer** | **Policy Number** | **Policy Period** | **Policy Limits** |
| Royal Insurance Company of America | PHA011655 | 09/30/1998–09/30/1999 | $10 million per occurrence / $10 million aggregate (defense in addition to limits) |

| Royal Insurance Company of America[1] | PHA011655 | 09/30/1999–09/30/2000 | $10 million per occurrence / $10 million aggregate (defense in addition to limits) |
|---|---|---|---|
| American National Fire Insurance Company | TUE 253-36-18-00 | 09/30/1998–09/30/1999 | $15 million per occurrence / $15 million aggregate (defense in addition to limits) |
| American National Fire Insurance Company | TUE 253-36-18-00 | 09/30/1999–09/30/2000 | $15 million per occurrence / $15 million aggregate (defense in addition to limits) |
| Great American Insurance Company | TUE 3-57-9704-00 | 10/30/2001–09/30/2002 | $25 million per occurrence / $25 million aggregate (defense in addition to limits) |
| Liberty Insurance Underwriters, Inc. | LQ1-B71-078638-012 | 09/30/2002–09/30/2003 | $25 million per occurrence / $25 million aggregate |
| Liberty Insurance Underwriters, Inc. | LQ1-B71-078638-022 | 09/30/2003–09/30/2004 | $25 million per occurrence / $25 million aggregate |
| Liberty Insurance Underwriters, Inc. | LQ1-B71-078638-032 | 09/30/2004–09/30/2005 | $25 million per occurrence / $25 million aggregate |
| Steadfast Insurance Company | AEC 5916350 00 | 09/30/2005–09/30/2006 | $25 million per occurrence / $25 million aggregate |

---

[1] On November 8, 2023, one of Aearo's insurers, Arrowood Indemnity Company (formerly Royal Insurance Company of America) was placed into liquidation by order of the Chancery Court of Delaware. Therefore, Aearo and 3M are pursuing their insurance coverage claims against Arrowood in the Delaware liquidation proceeding.

| American Guarantee & Liability Insurance Company | AEC 5916350 01 | 09/30/2006–09/30/2007 | $25 million per occurrence / $25 million aggregate |
| American Guarantee & Liability Insurance Company | AEC 5916350 02 | 09/30/2007–09/30/2008 | $25 million per occurrence / $25 million aggregate |

### B. Proceedings in the Delaware Coverage Litigation

Aearo and 3M filed an Amended Complaint in the Delaware litigation on November 20, 2023, adding a breach of contract claim for the insurers' failure to indemnify Aearo for the Combat Arms litigation settlement. The insurers filed Answers and Counterclaims denying any coverage obligations and seeking declarations that no coverage is owed.

The Delaware court entered a Case Management Order on January 23, 2024 which set forth a schedule for summary judgment briefing on the insurers' defense obligations. On January 19, 2024, Aearo and 3M moved for partial summary judgment seeking a declaration that the Aearo insurers who issued primary policies to Aearo have a duty to defend Aearo and/or pay Aearo's defense costs in the Combat Arms litigation. General Star and Twin City, two of Aearo's primary insurers, concurrently filed their own motions seeking declarations that they owe no defense obligations to Aearo or 3M. The parties filed oppositions to the three motions on April 1, 2024, following a period of discovery and depositions on defense-related issues. Reply briefs are due June 7, 2024. Finally, after nearly a year of litigation

and repeated efforts by the insurers to seek further discovery as a means of delaying adjudication of their defense obligations, the motions have been set for a hearing on July 9, 2024.

Most recently, the primary insurers have sought to delay the Delaware court's forthcoming ruling by filing affidavits pursuant to Delaware Superior Court Rule of Civil Procedure 56(f), and/or otherwise arguing in their opposition briefs that they must access and review hundreds of thousands of medical records, audiogram data, and other evidence in order to assess their defense obligations to Aearo. Their position is contrary to applicable Delaware and Indiana law and will be strongly rebutted by Aearo and 3M. For one, Aearo and 3M have already made all efforts to comply with the insurers' requests for production, both formal and informal, have produced millions of pages of responsive documents, have granted reasonable requests for extensions of time for the insurers to review those materials, and have made all efforts to accommodate even untimely requests for the depositions of multiple witnesses on defense issues.

The additional evidence sought by the insurers is, moreover, irrelevant to the resolution of their defense obligations under applicable Delaware and Indiana law, which look instead to the underlying claimant's allegations and any facts known or available to the insurer at the time its defense obligations arose. *See, e.g., Barnard v. Menard, Inc.*, 25 N.E.3d 750, 760 (Ind. Ct. App. 2015). The insurers' bid to further

delay resolution of their defense obligations while they review the entire Combat Arms litigation record of adjudicated facts would turn on its head the requirement that their defense obligations be "based on the *possibility* of liability at the beginning of the case, not based on its outcome"—"[h]indsight does not color that call." *Liberty Ins. Underwriters, Inc. v. Cocrystal Pharma, Inc.*, 2023 WL 3067498, at *5 (3d Cir. Apr. 25, 2023) (applying Delaware law) (emphasis added).

A decision on the parties' motions for partial summary judgment is expected within 60 to 90 days of the hearing. The Delaware court's Case Management Order requires that mediation be scheduled no later than 60 days following the court's rulings on the parties' motions, and representatives of all affected insurers with authority are required to attend. The parties have not yet agreed on the process for selecting a mediator or group of mediators. Aearo and 3M are seeking to begin the mediation process as soon as possible following the Delaware court's ruling on their motions for partial summary judgment.

### III. London Arbitration

Unlike the pre-2008 policies insuring Aearo, the 2018-19 policies covering Aearo and 3M mandate binding arbitration of coverage disputes. The policies provide for a separate arbitration proceeding with each individual insurer.

After months of discussions with its insurers and demands that they satisfy their coverage obligations, on December 7, 2023, 3M commenced arbitration

proceedings against one of its insurers, AIG Europe, by serving an arbitration demand. AIG Europe issued more coverage than any other single insurer in the 2018-19 "tower" of insurance policies ($160 million), including coverage in the lowest layer of coverage. In the AIG arbitration, Aearo and 3M seek recovery of (1) AIG's policy limits of $160 million to indemnify 3M and Aearo for the Combat Arms litigation settlement; (2) prejudgment interest of 9% accruing from the date of AIG's breach of contract; and (3) 3M and Aearo's legal fees and costs in connection with the arbitration. The arbitration will take place in London, and is set for a ten-day hearing beginning on March 31, 2025.

3M and Aearo are concurrently preparing to initiate arbitration proceedings against other of 3M and Aearo's insurers to the extent ongoing discussions with these insurers prove unsuccessful and they refuse to acknowledge and honor their indemnity obligations to 3M and Aearo.

### IV. Settlement

As noted above, while Aearo and 3M's insurers as a whole have denied their insureds' claims to coverage and have refused to cover Aearo and 3M's massive defense costs, and have refused, and continue to refuse, to contribute their limits to the MSA, Aearo and 3M are engaged in ongoing settlement discussions with several of their insurers and will keep this Court updated on relevant developments consistent with the Court's May 8, 2024 Order.

Case No. 3:19md2885/MCR/GRJ

DATED: May 20, 2024                                  Respectfully submitted,

 /S/ Charles F. Beall, Jr.
Charles F. Beall, Jr.
Florida Bar No. 66494
cbeall@mhw-law.com
Moore, Hill & Westmoreland PA
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I do hereby certify that on this 20th day of May, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served using the CM/ECF system.

 /S/ Charles F. Beall, Jr.
Charles F. Beall, Jr.