UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ALL CASES | Case No. 3:19-md-2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE

Plaintiff Leadership moves the Court to order the Washington Division of Child Support ("DCS") to show cause as to why DCS should not be enjoined from further interfering with the orderly administration of the settlement agreement in this action[1] by this Court's appointed Settlement Administrator and Lien Resolution Administrator, including by seeking the private information of claimants with no nexus to DCS and creating administrative costs chargeable to claimants with no nexus to Washington State.

Plaintiff Leadership does not seek to prevent third parties (including DCS) from providing notice and substantiation to individual claimants' counsel, or to BrownGreer, to the extent any such liens exist and are enforceable under applicable

---

[1] Dkt. 3809-1 *et seq.* (the "Settlement").

1

law. Plaintiff Leadership and this Court are obligated, however, to protect the Settlement, and to avoid the unnecessary dissemination of claimants' sensitive personal information, especially that of claimants for whom there is no basis to believe any child support lien may apply to their recovery. DCS's efforts to conscript BrownGreer threaten the value of the Settlement, and DCS should be enjoined from such interference.

I. **BACKGROUND**

　　a. **The Litigation and Settlement**

Beginning in 1999, 3M and its subsidiaries manufactured and distributed the 3M Combat Arms Earplug Version 2 ("CAEv2") to servicemembers in the United States Military. Hundreds of thousands of those servicemembers alleged that the CAEv2 did not deliver the noise protection that 3M promised, and that they were exposed to unsafe levels of noise in combat and training despite following 3M's instructions for use. As a result of those exposures, those servicemembers alleged injuries including hearing loss and tinnitus, conditions uniquely harmful to a population already at high risk for isolation, depression, and post-traumatic stress disorder, as military veterans are. In April 2019, the Judicial Panel on Multidistrict Litigation consolidated those products liability claims into MDL No. 2885 before Judge M. Casey Rodgers in the Northern District of Florida. Dkt. 1.

In October 2019, the Parties jointly agreed to rely upon BrownGreer as the data processing agent for completing and serving initial discovery information for individual cases. Dkt. 775 at 1. BrownGreer's role in the litigation expanded over time, including, for example, being tasked by the Court with processing and analyzing voluminous hearing conservation data produced by the military. Dkt. 3468. Over the course of the litigation, BrownGreer managed the storage, analysis, and production of over half a million documents, totaling over 34,000,000 pages. Dkt. 3468 at 1.

The Parties engaged in more than four years of hard-fought litigation, involving hundreds of attorneys, 263 motions in limine, 42 motions for summary judgment, 24 *Daubert* motions, 16 bellwether trials, a bankruptcy, and over 3,000 docket entries. *See* Dkt. 3358-1 at 3. The Parties reached the Settlement in August 2023. In that agreement, this Court expressly retained jurisdiction over the Qualified Settlement Fund "until such Settlement Funds are distributed in their entirety and upon further order of the MDL Court in consultation with the [Minnesota] Court." Dkt. 3809-1 at 32.

BrownGreer was appointed as the Settlement's Lien Resolution Administrator, Dkt. 3956, Settlement Data Administrator, Dkt. 3818, and ultimately Settlement Administrator, Dkt. 3981, appointments that came with additional duties as to claimant data. BrownGreer serves as "a fiduciary of the settlement trust in

3

accordance with the provisions of the Trust Agreement, the MSA, and orders of this Court[.]" Dkt. 3816. The Settlement Administrator is tasked with, among other things, determining eligibility for participation in the settlement program, generating claimants' settlement offers, identifying dual-representations, and designing and implementing fraud protection measures, as well as responsibility for "all data administration related to the Settlement Program." Dkt. 3816. [2]

The Court has also provided specific guidance on the disclosure of Plaintiffs' confidential information in the context of the Settlement. Dkt. 4050. That order required that the "disclosure or use of Plaintiffs' Protected Material" in any other proceeding requires Defendants and Plaintiff Leadership to "file a Proposed Order Authorizing The Release of Plaintiffs' Protected Material in this matter, which shall identify the legal proceedings" in which the documents are to be used. Dkt. 4050 at 6-7.[3] In order to maintain the protections of the Protective Order in this litigation,

---

[2] As this Court summarized, BrownGreer serves as "the centralized litigation support apparatus for the gathering, organizing, accessing, and analysis of the voluminous data connected with the litigation." Dkt. 3468. BrownGreer's role as a neutral and a proxy for the Court greatly assisted "the parties to complete, store, exchange, access, and serve pleadings, census and plaintiff profile forms, DD-214s, and other discovery materials (including military and medical records) for more than 223,000 plaintiffs." Dkt. 3468.

[3] DCS's request is impossible to reconcile with this requirement, including because DCS has identified no legal proceeding that to which its information requests may apply. *See* Exhibit A.

Plaintiffs must require recipients of their confidential information "to sign Exhibit A to Pretrial Order No. 9 (as counsel for many of Defendants' insurers have done)." Dkt. 4050 at 7. [4] The Court expressly "retain[ed] jurisdiction to enforce its Orders governing confidentiality in this matter[.]" Dk. 4050 at 3. And the Court required, in the context of Defendants' sharing of Plaintiffs' confidential information, that such data sharing occur only in a context that provides for "a dispute resolution mechanism providing for litigation or arbitration in the event of a breach, and access and use limitations, commensurate with the limitations set forth in this Court's Pretrial Order No. 9 and/or the Delaware Protective Order." Dkt. 4050 at 8. These protections proved prescient in light of subsequent attempted identity theft attacks on the Settlement and claimants. [5]

---

[4] The Protective Order entered in this multi-district litigation requires holders of a Party's confidential information to provide notice to Parties whose confidential data is sought by third-party compulsory process. Dkt. 442 at 17. *In re Methyl Butyl Ether Tertiary (MTBE) Prod. Liab. Litig.*, 60 F. Supp. 3d 399, 403 (S.D.N.Y. 2014) (denying declassification of confidential information when the party "failed to show why the Court should disregard the terms of the stipulated protective orders and dissolve them before the conclusion of this MDL.").

[5] Less than two months after the announcement of the Settlement, claimants began receiving "phone calls from bad actors posing as the Settlement Administrator. . . and requesting that the claimants verify sensitive personal information, such as Social Security Numbers and Dates of Birth in order to confirm participation in the settlement." Dkt. 3910 at 1 (admonishing claimants "to be vigilant about protecting their sensitive personal information from potential scammers," and to avoid activity that "increases the risk that claimants will be targeted by fraudulent schemes."). Breaches of Social Security Number security are disruptive and harmful,

### b. Washington Division of Child Support's Subpoena

On May 21, 2024, the Washington State Division of Child Support ("DCS") mailed an administrative subpoena to the "COMBAT ARMS EARPLUGS SETTLEMENT" at BrownGreer's Richmond, Virginia address. Exhibit A (the "Subpoena") at 1.

The form heading for Section I of the Subpoena seeks identifying information for the case to which the subpoena relates. DCS stated that the case identifier for the Subpoena was "TO BE DETERMINED." *Id*. The form heading for Section II of the Subpoena states that the recipient is required to provide "information needed to establish, modify, or enforce a child support order." *Id*. The request from DCS identified no such child support order, and instead, contained the following demand:

> Provide a list of all claimants with a Washington State address associated with the Comabat [sic] Arms Earplugs settlement (3M Products Liability Litigation, MDL, No. 3885 [sic]) who have not received a payout on their claim as of 5/21/24. The list must include each name, social security number, and date of birth for purposes of matching against the Washington State Division of Child Support records to identify persons that have an existing

---

necessitating significant protections. *'Was my Social Security number stolen?' Answers to common questions on the National Public Data breach*, Lorie Konish, CNBC, Aug. 23, 2024, *available at* https://www.cnbc.com/2024/08/23/was-my-social-security-number-stolen-national-public-data-breach-questions.html; *Equifax Breach Caused by Lone Employee's Error, Former C.E.O. Says*, Bernard and Cowley, New York Times, Oct. 3, 2017, *available at* https://www.nytimes.com/2017/10/03/business/equifax-congress-data-breach.html.

child support obligation subject to collection. The list should be sent via secure electronic method file transfer.

*Id*.

BrownGreer replied to representatives of DCS that the request was too broad and that the Court requested a statement from DCS on the legal basis for their subpoena and for any lien or claim asserted against a claimant's Settlement Award. On August 2, 2024, DCS responded to the Court's inquiries. *See* Exhibit B (the "DCS Memo"). The DCS Memo provided confirmation regarding the scope of the Subpoena and the personal information sought, reiterating that DCS does indeed seek Social Security Numbers, dates of birth, and names, for all Settlement claimants with Washington State addresses. Ex. B at 1, 4. The Court also requested information on (1) "the legal basis of liens asserted against settlement claimants," (2) "analysis of who is responsible for costs required to identify claimants," and (3) "whether DCS subpoenas are enforceable against a Qualified Settlement Fund." Exhibit B at 1. The DCS Memo acknowledged these three inquiries, *id.*, and answered none of them. Indeed, the DCS Memo provided (1) no identification of any lien asserted against any settlement claimant, let alone a legal basis for such unidentified liens; (2) no information on the enforceability of the Subpoena against a Qualified Settlement

7

Fund;[6] and (3) no analysis regarding responsibility for the costs of identifying claimants (or indeed, any discussion of those costs at all). *See generally* Ex. B. The DCS Memo, like the Subpoena, did not identify any child support order, lien, or case that would form the basis for DCS's inquiry. The DCS Memo also threatened to "referral the child support case to Florida's local support agency asking them to intervene in the matter." Ex. B at 5.

# ARGUMENT

## I. The Court Has the Authority to Enjoin DCS from Interference With the Settlement.

### a. The All Writs Act authorizes the Court to take actions necessary or appropriate to protect the Settlement.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, this MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."[7]

---

[6] Plaintiffs have been unable to identify any authority supporting the enforceability of a DCS administrative subpoena against a Qualified Settlement Fund or its administrator. The Washington Statutes that provide for the kinds of data-sharing DCS proposes here apply to state and local agencies, financial institutions, licensing entities, utilities, employers for requests relating to their employees, and cable providers – not Qualified Settlement Funds. *See* RCW 74.20A.330; RCW 74.20A.360; RCW 74.20A.370.

[7] Although the exceptions to the Anti-Injunction Act, 28 U.S.C.A. § 2283, would permit the order Plaintiff Leadership seeks, that Act does not apply to these facts. Plaintiffs do not request that this Court enjoin any Washington State Child Support action – indeed, DCS has identified no particular proceedings in Washington State

By virtue of its control over the Settlement *res* in this complex multi-district action, this Court is empowered by the All Writs Act to enjoin conduct that would diminish the Settlement or hinder its administration.[8] Courts have recognized that even in advance of a settlement, a multidistrict court or a class action proceeding is "analogous to *in rem* actions given their magnitude and complexity." *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 38 (E.&S.D.N.Y. 1990); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d. Cir. 1985) ("the jurisdiction of a multidistrict court is 'analogous to that of a court in an in rem action...'"); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (federal court empowered by All Writs Act "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction"); *In re Diet Drugs*, 282 F.3d

---

court that the proposed order could enjoin. *See* 17A Fed. Prac. & Proc. Juris., Wright & Miller, § 4222 (3d ed.) (Anti-Injunction Act "has no application until the proceedings have begun.").

[8] *Mitchum v. Foster*, 407 U.S. 225, 235, 92 S. Ct. 2151, 2158, 32 L. Ed. 2d 705 (1972) (acknowledging Federal Court's power of "to enjoin a state court proceeding in order to protect its jurisdiction of a res over which it had first acquired jurisdiction"); 13F Wright & Miller § 3631 ("a federal court may enjoin interference by a state court with its exclusive possession of a res if 'necessary in aid of its jurisdiction.'").

220, 235 (3rd Cir. 2002) ( "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction..").[9]

Because non-party conduct, such as DCS's demands to BrownGreer, can interfere with the Court's management of the Settlement *res*, "[a]n important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d. Cir. 1985); *United States v. New York Telephone Co.,* 434 U.S. 159, 174, 98 S. Ct. 364, 373 (1977) ("The power conferred by the Act, extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice[.]").

As discussed below, DCS's proposal unreasonably imposes on this Court's appointed Settlement Administrator and interferes with the orderly administration of

---

[9] *See also Newby v. Enron Corp.*, 338 F.3d 467, 476 (5th Cir. 2003) (affirming "district court's actions, staying discovery in the related state court case," observing the "admirable restraint and patience" the district court displayed, and advising that "Counsel has no right to expect this level of restraint to continue.").

10

the Settlement, over which this Court has exclusive jurisdiction.[10] Responding to DCS's demands, including meeting the procedural requirements imposed by the Court's orders, would create undue additional administrative costs, in service of an unnecessary invasion of the privacy of all Washington State claimants. It is both appropriate and necessary for the Court to order DCS to show cause as to why it should not be enjoined from further efforts to leverage the Settlement's resources and interfere with its administration.

> **b. The Court's inherent power provides another source of authority under which the Court may enjoin DCS from further interference.**

This Court may also use its inherent power to issue Plaintiff Leadership's requested order to show cause. "A federal court certainly has the power to issue any order necessary to preserve its ability to manage and adjudicate a case or controversy properly before it. Without such power, the federal judiciary would be crippled." *In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991). The Eleventh Circuit describes "inherent power" as "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 1406, *quoting Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) *accord Wieckiewicz v. Educ. Credit Mgmt. Corp.*, 443 F. App'x 449, 450–51 (11th Cir. 2011). "Such

---

[10] *See* Dkt. 3809-1 at 32; *Mitchum v. Foster*, 407 U.S. at 235 (acknowledging Federal Court's power of "to protect its jurisdiction of a res over which it had first acquired jurisdiction").

11

powers are 'essential to the administration of justice.'" *Novak*, 932 F.2d at 1406, *quoting Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987). "The Supreme Court has long held that 'the inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *G. Heileman*, 871 F.2d at 651 n.3, *quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). "Inherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *G. Heileman*, 871 F.2d at 653; *Newbe v. Enron Corp.*, 338 F.3d 467, 474-75 (5th Cir. 2003). Here, an order preventing DCS from imposing costs and delays is necessary to preserve the Court's ability to manage the orderly distribution of the Settlement and protect claimant's personal information.[11]

## II. The Subpoena Imposes Undue Burdens on the Settlement Administrator and All Claimants.

DCS effectively seeks to draft the Court's appointee, BrownGreer, as DCS's data processing agent, imposing costs on the Settlement that should properly be born

---

[11] To the extent that the Court determines that there is no controlling law on the issue of enjoining a state agency from directing administrative subpoenas to the Court-appointed administrator of an MDL settlement, Rule 83 provides authority for the order sought here. Fed. R. Civ. P. 83(b) "Procedures When There is No Controlling Law: A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district[.]"

12

by DCS or the unidentified child support debtors whose liens are at issue (if any). The burden that DCS's request would impose on BrownGreer is undue in light of the availability of the subject information from more appropriate sources.[12] DCS's request is a textbook example of a fishing expedition, and should be rejected.[13]

*First*, as discussed above, the confidentiality orders entered in this multi-district litigation require BrownGreer to provide notice to Parties whose confidential data is sought by third-party compulsory process – here, given the scope of DCS's request, such notice would be required to all claimants associated with a Washington State address. Dkt. 442 at 17.[14] The burden of this state-wide notice program would be born not only the Washington State residents whose privacy interests DCS would invade,[15] but by all claimants, in the form of delays and increased settlement

---

[12] As discussed elsewhere herein, Plaintiffs are aware of no statutory authority supporting DCS's use of its administrative subpoena power in connection with a Qualified Settlement Fund. *See supra* n.6.

[13] *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) (INS administrative subpoena "may not be so broad so as to be in the nature of a 'fishing expedition'"); *NLRB v. Fresh & Easy Neighborhood Mkt., Inc.*, 2012 WL 12920616, at *2 (C.D. Cal. Apr. 4, 2012), *aff'd on other grounds* 805 F.3d 1155 (9th Cir. 2015) (same for NLRB administrative subpoena).

[14] *See supra* n.4. The Parties are also required to jointly file a proposed order, including identifying the legal proceeding at issue, prior to permitting any further distribution of claimants' data. Dkt. 4050 at 6-7.

[15] *See infra* Section III.

administration costs attributable to DCS's commandeering of this Court's appointed Settlement Data Administrator.

*Second*, the burden DCS would impose is undue because DCS is seeking to impose it on the wrong entity. This Court's orders already require claimants' attorneys to disclose to BrownGreer "[w]hether the Claimant's award is subject to any non-medical lien on which counsel have been placed on notice, such as a judgment creditor, tax, or child support lien." Dkt. 3975 at 2. The Settlement agreement entered by the Court makes clear that "satisfaction and discharge of any and <u>all liens</u>, whether past, present or future, whether known or unknown asserted or unasserted, with respect to any Settlement Payment (and/or the right to receive any Settlement Payment) <u>are the sole responsibility of the relevant Registered Claimant and their respective CAE Counsel</u>." Dkt. 3809-1 at 32 (emphasis added). To the extent that DCS believes a child support lien exists on any claimant's recovery, DCS may provide notice of such lien to that claimant's counsel, or directly to BrownGreer. *See supra* n.1.

DCS has provided no authority to support its assertion that the Court's agent should bear the burden of assisting DCS in its fishing expedition. DCS should show cause as to why DCS should not be enjoined from imposing such burdens.

14

## III. The Subpoena Unduly Invades the Privacy of Washington State Claimants.

In addition to the undue burden on all claimants described above, the Subpoena also unreasonably seeks confidential personal information of all claimants associated with a Washington State address, regardless of any connection to any child support lien, order, or case. Requiring such disclosures is unduly invasive of Washington veterans' and servicemembers' privacy, and creates unnecessary risks with regard to data protection. DCS should be enjoined from efforts to require such intrusions and risks.

The Supreme Court of Washington has held that the privacy interests of third-parties whose information is held by the target of an administrative subpoena can outweigh the agency's interest in that information. In *State v. Miles*, the Supreme Court of Washington held that an administrative subpoena seeking the private information of a third-party, without notice to that party, violated the privacy rights articulated in Article I, Section 7 of the Washington Constitution. *See generally State v. Miles*, 160 Wash. 2d 236, 156 P.3d 864 (2007). Including because an administrative subpoena lacks "the protections afforded by the warrant or subpoena process," it does not authorize discovery from "third parties who hold information protected as private affairs." *State v. Miles*, 160 Wash. 2d 236, 249, 156 P.3d 864, 870 (2007). In *Miles*, the Court observed that although seeking private information from a third party via an administrative subpoena is not authorized by law, the state

15

agency nevertheless had many alternative tools at its disposal to get the information it sought: The agency "could have requested Miles to submit to an audit of his business records, could have issued the subpoena to Miles to deliver his business records, or required Miles to submit to a deposition." *Id*. Here, under even more compelling facts,[16] DCS could do the same. To the extent DCS believes that any child support debtor will receive a payment under the Settlement, DCS can use its regulatory authority to compel that debtor to take the actions DCS deems necessary. *Id.* ("An agency's regulatory authority extends to the person and matter being regulated and not to third parties who hold information protected as private affairs.").

DCS proposes a wholesale intrusion into the privacy of all Washington veterans and servicemembers who have entered into the Settlement, on the off-chance that some of them may happen to owe child support. The privacy invasion proposed is undue and unreasonable, particularly given the alternative mechanisms available to DCS for identifying debtors' assets and imposing liens.

---

[16] The subpoena at issue in *Miles* sought the records of a specific, identified individual subject to investigation, not all individuals who happen to have a Washington address; and Miles was engaged in a statutorily regulated profession, not merely seeking to collect damages to resolve a personal injury claim attendant to military service. *State v. Miles*, 160 Wash. 2d 236, 249, 156 P.3d 864, 870 (2007).

## CONCLUSION

DCS's interference with this Court's control over the Settlement *res* is unreasonable. DCS's unreasonable invasion of the privacy of Washington Claimants would create additional costs and delays, which would be born by all injured veterans and servicemembers in the Settlement. For the foregoing reasons, Plaintiff Leadership respectfully requests that the Court order the Washington Division of Child Support to show cause why DCS should not be enjoined from interfering with the orderly administration of the Settlement, including by seeking irrelevant and private information on claimants with no relationship to DCS, and by increasing administrative burdens on all claimants.

Date:  September 4, 2024            Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Co-Lead Counsel
(Admitted Pro Hac Vice)
New Jersey State Bar No. 042631990
Seeger Weiss LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (212) 584-0700
cseeger@seegerweiss.com

Bryan F. Aylstock, Lead Counsel
Florida State Bar No. 078263
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I hereby certify that this motion complies with Local Rule 7.1(F) and contains 4,189 words.

*/s/ Christopher A. Seeger*

## CERTIFICATE OF COMPLIANCEWITH LOCAL RULE 7.1(C)

I hereby certify that before filing this motion, counsel for Plaintiff Leadership attempted in good faith to resolve the issue through a meaningful conference with an attorney for the Washington Division of Child Support, including in a September 3, 2024, telephone call.

<em>/s/ Christopher A. Seeger</em>

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which will serve all counsel of record. I also provided a copy of the motion to counsel for Washington Division of Child Support via electronic mail.

*/s/ Christopher A. Seeger*