## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

## <u>COMMON BENEFIT FUND ORDER NO. 6</u>

On April 3, 2019, the Judicial Panel on Multidistrict Litigation consolidated and transferred all federal cases involving claims of hearing loss and tinnitus related to Defendants' Combat Arms Earplug Version 2 ("CAEv2") to the Northern District of Florida for coordinated proceedings before the undersigned. Soon after, on May 22, 2019, the Court established a leadership structure that included a variety of committees and subcommittees, and made attorney appointments to the same, for the purpose of furthering the common interests of the consolidated cases. *See* ECF No. 376. On February 17, 2021, the Court entered Common Benefit Order No. 3 "to provide for the fair and equitable sharing among plaintiffs and their counsel[] of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs." ECF No. 1659 at 1. That Order attached a voluntary "Participation Agreement" between the Plaintiffs' counsel performing common benefit work and those counsel electing to sign the Participation Agreement

who would, on signing, be "entitled to receive all common benefit work product created by the Plaintiffs' Steering Committee." *Id.* at 3; ECF No. 1660. In turn, the Order, as amended by Common Benefit Order No. 4, established a common benefit fund holdback assessment of nine percent from individual plaintiff recoveries. ECF No. 1659 at 6; ECF No. 3875 at 1. On August 29, 2023, the Parties reached a global settlement of all CAEv2 claims in the MDL and Minnesota state court. In the time between consolidation and settlement, a great deal of work for the common benefit of all Plaintiffs ensued. Consistent with and to further the Court's prior common benefit orders, the undersigned enters this Order setting out the protocol for those law firms participating in this collective effort who wish to apply for an award of common benefit attorney's fees ("Fee Applicants").[1]

In accordance with this Order and Case Management Order No. 67, ECF No. 3864, Special Masters Judge David Herndon, Ret., and Randall Samson, CPA, will continue their work to determine common benefit fee allocations, culminating in a Report and Recommendation to the undersigned. Any objections to the Report and Recommendation must be filed within fourteen (14) days of entry on the MDL's main docket. The Court will conduct a *de novo* review of the Report and Recommendation and any timely filed objections to determine the appropriate

---

[1] Costs have already been awarded. *See* ECF No. 3988.

allocation of the common benefit fund to award Fee Applicants for their respective efforts on behalf of all Plaintiffs.

## I.    Common Benefit Application Process

The Master Settlement Agreements ("MSAs") provide for the payment of 6 billion dollars into a Qualified Settlement Fund over a period of years.  It is the Court's intent to ensure that all individual Plaintiffs are paid any settlement awards due, and that the nine percent holdback, ordered by the Court for the payment of all common benefit fees as ultimately determined by the Court, is deposited in the Combat Arms Earplugs Common Benefit Qualified Settlement Fund (CAE CB QSF)[2] before common benefit fees are paid to Fee Applicants who apply and are awarded fees.  Fee Applicants believing they are entitled to apply for common benefit fees must complete and email the narrative and affidavit forms (together, "Application") approved by the Court and attached hereto as **Exhibits A and B** no later than **January 27, 2025** to Special Master Sansom at MDL@SansomCPA.com. Untimely Applications will not be considered.  Requests for an extension of the deadline will not be favored, but may be made by email, to the same email address (MDL@SansomCPA.com), and must state with specificity the reason for the request.  The Special Masters will consult with the undersigned regarding the

---

[2] This fund was set up by, and is overseen by, Special Master Sansom.  *See* ECF No. 900 (appointing Mr. Sansom as Common Benefit Fund Special Master).

request.

Only Fee Applicants that have both complied with the Court's previously entered common benefit orders and timely signed the Participation Agreement appended to Common Benefit Order No. 3 are eligible to receive common benefit attorney's fees.  Common Benefit Order No. 1 (ECF No. 488) notified all Plaintiffs' counsel that in order to eventually receive common benefit attorney's fees and cost reimbursement, they would be required to establish that the time expended and activities engaged in: 1) were for the common benefit of all Plaintiffs; 2) authorized in writing by Lead or Co-Lead Counsel (prior to commencement of the work); 3) did not include developing or processing individual issues for counsel's individual client(s); and 4) were timely and properly submitted by the 20th day of each month for the prior month's activity, which was to be recorded contemporaneously and in specific detail as set out in the Order.  ECF No. 488 at 11–13.  Common Benefit Order No. 1 explains which activities were and were not considered appropriate for common benefit attorney's fee and cost consideration.  *Id.* at 19–23.  Also, counsel were notified that their time and costs entries were subject to close review by Special Master Sansom and his business partner, Sarah Hogan, CPA, and entries would be accepted or rejected by the same individuals.  Counsel had an opportunity to seek reconsideration by the undersigned of rejected entries. The process also required regular reporting to the undersigned.  The express intent of Common Benefit Order

No. 1 was to pursue and complete the submission, consideration, and acceptance/rejection process *as the litigation was ongoing* in order to ensure accuracy, transparency, and honesty in the submission process. Throughout four years of litigation and continuing through October 2023, sixty-three law firms diligently complied with the Order. In the interest of fairness to those law firms, only Fee Applicants who followed the Court's common benefit orders, including the review and vetting process described above, are eligible for a common benefit award. Indeed, Special Masters Herndon and Sansom will reject any Application or portion thereof not in compliance with the Court's orders.

To further the purpose of Common Benefit Order No. 1, all Fee Applicants will be required to reaffirm the accuracy of the time supporting their common benefit fee Application, although no time entries should be resubmitted. Special Master Herndon and Special Master Sansom will consider the common benefit time previously accepted in connection with their review of the Common Benefit Fee Applications. The previous review process, including time entries initially accepted, does not entitle any Fee Applicant to an award of fees, and the Special Masters are not precluded from determining that certain activities did not benefit the common interests of the litigation and, instead, constituted a common detriment to the litigation, even those for which the time entry was initially accepted for consideration. Each Fee Applicant is directed to refresh its knowledge of all

common benefit orders, particularly the provisions of Common Benefit Order No. 1.

Within each Application, the Fee Applicant must include the common benefit work of any individual for whom the Fee Applicant is seeking an award. The Court will award fees for common benefit work to Fee Applicant firms, not to the individual lawyers within the firm who performed such work; however, the work of individual lawyers is obviously at the heart of any Application request. In the event an employee of a Fee Applicant who performed common benefit work leaves his/her employment prior to an award distribution, the Special Masters will take no role in resolving any disputes between the lawyer no longer employed by the Fee Applicant and the Fee Applicant firm over the award.

For assessing and reviewing common benefit work, Special Masters Herndon and Sansom will carefully and thoroughly review each timely filed Common Benefit Application. In conducting their examination of the actions by law firms and lawyers, the Special Masters are granted the authority to ascertain facts by direct evidence and circumstantial evidence, including hearsay, regarding the benefit or detriment of the Fee Applicants' activities. The Special Masters may also order the production of any documents from persons subject to the jurisdiction of the MDL Court.

In conducting their work for preparation of the Report and Recommendation,

the Special Masters may speak with anyone who has knowledge of this MDL and the common benefit work undertaken. The Special Masters may speak to individuals within the Fee Applicant firm and request additional documentation if desired. They may also speak with counsel in leadership positions, including committee and sub-committee chairs, and defense counsel. To encourage honest and candid responses, the Special Masters will maintain confidentiality regarding those conversations, which necessarily will be *ex parte*.

During the course of their review, the Special Masters will be looking for the Fee Applicants that provided a benefit common to the entire litigation (as contrasted with work for individual clients or creating a detriment to the litigation). In doing so, the Special Masters will consider all work undertaken by counsel within Fee Applicant firms, to the extent it is relevant to the issue of common benefit, applying the factors below. Special Masters Herndon and Sansom will decide how much weight to assign to each factor and how significant a particular factor is in the context of an individual Application.

The Common Benefit Application will require a narrative setting forth the Fee Applicant's explanations for its entitlement to common benefit fees in accordance with these factors, including but not limited to some factor-specific requests enumerated in the below list.

1. Whether the Common Benefit Fee Applicant, including any member of the

Fee Applicant firm, contributed any known common benefit to the litigation and, if so, the quality, scope, breadth, depth, and duration of the benefit provided to the litigation.

2. Whether the Fee Applicant made isolated common benefit contributions to discovery efforts, and whether the Applicant simply monitored the material common benefit efforts of other counsel, including, but not limited to, joining Zoom meetings or depositions without materially participating.

3. Whether the Fee Applicant was committed to the success of the litigation through financial support such as capital assessments and/or held costs, neither of which were reimbursed until the Court's order authorizing such reimbursement in January 2024.

4. Whether the Fee Applicant's law practice was negatively affected by the amount of time devoted to this MDL, causing the Applicant to refuse other business it would have normally accepted.  If so, specifics should be provided.

5. Whether the Fee Applicant performed work reviewing documents and, if so, the nature and purpose of such review, whether the product of the review was utilized in a material way for the advancement of the litigation, and/or whether the documents had to be re-reviewed by other counsel.

6.  Whether the Fee Applicant reviewed documents for the specific purpose of deposition preparation or bellwether trial preparation.

7.  Whether the Fee Applicant participated in any depositions and, if so, the precise involvement of lawyers of the firm—including their role in the preparation before, the taking of the deposition(s), and any follow-up after. The Fee Applicant must advise of other participants (not in the Fee Applicant firm) in the deposition process and, briefly, their roles.

8.  Whether the Fee Applicant had a leadership role in the litigation. The Fee Applicant should include leadership roles outside of the Plaintiffs' Lead Counsel, such as an individual lawyer's specific work performed as the chair of, or as a member of, a particular committee or subcommittee. The Fee Applicant must identify each lawyer's committee assignment and the value of their role on the specific committee.

9.  Whether the Fee Applicant was a leader in undertaking strategic planning for the course of the litigation, including to advance the litigation toward ultimate resolution by settlement or to prepare cases for remand to transferor districts.

10. Whether the Fee Applicant performed material role(s) in the prosecution of cases selected by the Court for bellwether trials. These roles may include, but are not limited to: counsel retained by the individual plaintiffs;

counsel to whom the retained lawyer referred the individual case for such bellwether trials; and counsel acting to benefit the litigation as a whole by working to attain rulings and a verdict that would advance Plaintiffs' interests, to the detriment of the Defendants' interests, on one or more issues that might encourage Defendants' willingness to seek a resolution of the litigation as a whole. The Fee Applicant must identify lawyers involved in each bellwether trial and their role(s) in each trial.

11. Whether the Fee Applicant performed a material role in the retention and/or development of experts who contributed in a beneficial way—or failed to provide a benefit—to the litigation. The Fee Applicant must identify each expert and the precise role performed by the expert. For each expert, the Fee Applicant must also identify to the extent possible any person or counsel, not employed by Fee Applicant, who also rendered work for that expert and the nature of the work (e.g., research assistants to the expert).

12. Whether the Fee Applicant performed a material role in the research and/or in-court advocacy of issues involving Plaintiffs' theories of liability, or in opposition to Defendants' theories, in advance of the litigation, including appellate work.

13. Whether the Fee Applicant contributed to the common benefit of the

litigation, or the detriment of the litigation, in relation to the bankruptcy proceedings in the Southern District of Indiana.  Fee Applicants should focus their description on bankruptcy-related efforts in the MDL.[3]

14. Whether the Fee Applicant performed a material role in the successful negotiation of the Master Settlement Agreements and the various times leading up to settlement or, alternatively, whether the Fee Applicant was a detriment to the successful resolution.

15. Whether the Fee Applicant performed a material role in achieving acceptance of the settlement agreement by all or nearly all individual Plaintiffs and the establishment of the settlement program generally or played a role to the detriment of those efforts.

16. Whether the Fee Applicant performed a material role in the success of the post-settlement activity by all or nearly all individual Plaintiffs and the establishment of the post-settlement program generally or played a role to the detriment of those efforts.

The Special Masters will provide Fee Applicants an opportunity to be heard regarding their entitlement to common benefit fees.  At the time of the submission of the Application, each Fee Applicant may elect to make an oral presentation to the

---

[3] To the extent that Fee Applicants provide narratives focused on the Indiana bankruptcy proceedings for which they have already recouped fees, these efforts will not be considered for additional recovery here.

Special Masters in support of the Application. Meetings for such presentations will be held on the dates and times set by the Special Masters and may be in person, by Microsoft Teams, or by telephone. Up to two representatives of the Fee Applicant may appear for such meetings.[4] The Application will be the only document discussed in this meeting. PowerPoint presentations, exhibits created for the presentation,[5] and any other form of demonstrative/documentation are not permitted. On completion of the Special Masters' review and evaluation, Special Master Herndon will issue a Report and Recommendation to the undersigned setting forth his recommended apportionment of attorney's fees for common benefit work. On receipt of Special Master Herndon's Report and Recommendation, the Court will conduct a *de novo* review before awarding common benefit fees. Both the undersigned and Special Masters will be guided by settled law in the Eleventh Circuit regarding the common benefit attorney's fees in this litigation, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as instructed in in *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991): [6]

---

[4] Fee Applicants that feel it necessary to have more than two representatives must first seek permission from the Special Masters in writing, via email (MDL@SansomCPA.com), citing a reasonable basis for the extra person(s).

[5] Not including those exhibits contemplated by and appended to the Application.

[6] In the Eleventh Circuit, a lodestar calculation is not the beginning and end of the fee analysis—indeed, it is not even required in determining common benefit fee awards. *See, e.g.*, *In re Home Depot Inc.*, 931 F.3d 1065, 1091 & n.25 (11th Cir. 2019) (noting that while courts often

1. "*The time and labor required.*  Although hours claimed or spent on a case should not be the sole basis for determining a fee . . . they are a necessary ingredient to be considered." 488 F.2d at 717.

2. "*The novelty and difficulty of the questions*.  Cases of first impression generally require more time and effort on the attorney's part." *Id.* at 718.

3. "*The skill requisite to perform the legal service properly.*  The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Id.*

4. "*The preclusion of other employment by the attorney due to acceptance of the case.*  This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Id.*

5. "*The customary fee.*  The customary fee for similar work in the community should be considered." *Id.*

6. "*Whether the fee is fixed or contingent.*  The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Id.*

7. "*Time limitations imposed by the client or the circumstances.*  Priority work that delays the lawyer's other legal work is entitled to some premium." *Id.*

8. "*The amount involved and the results obtained*." *Id.*

9. "*The experience, reputation, and ability of the attorneys.*  Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation . . . . Longevity *per se,* however, should not dictate the higher fee.  If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the

---

use a cross-check, "[w]e do not mean to suggest that a cross-check is required" and a "lodestar cross-check is a time-consuming exercise"); *Camden I*, 946 F.2d at 775.  Attorneys must do more than merely submit argument based on their time and hourly rate.  *See* Common Benefit Order No. 1, ECF No. 488 at 3 ("[T]he Court will be assessing the value of the work performed and how it contributed to the common benefit, rather than performing a strict calculation of hours multiplied by some hourly rate.").

bar." *Id.* at 718–19.

10. "*The 'undesirability' of the case.*"  *Id.* at 719.

11. "*The nature and length of the professional relationship with the client.*" *Id.*

12. "*Awards in similar cases.*"  *Id.*

## II.    Common Benefit Application

The Common Benefit Application will consist of:  a) a narrative setting forth the Fee Applicant's qualitative contribution to the litigation ("Narrative"); and b) an affidavit executed by a senior partner in the Fee Applicant law firm holding a leadership position and admitted to practice[7] in the Northern District of Florida attesting to the truth and accuracy of the Application and certifying compliance with the Court's common benefit orders ("Affidavit").  The form of the Narrative and Affidavit are attached to this Order as Exhibits A and B, respectively.

### A.    Narrative of Qualitative Contribution

Fee Applicants must complete and submit a Narrative describing the Fee Applicant's qualitative contribution to this litigation and setting forth the reasons, grounds, and explanation for the Fee Applicant's Application for common benefit fees.  The form of the Narrative to be submitted is attached as **Exhibit A** to this Order.  The Narrative is limited to twenty-five (25) double-spaced pages[8] and must

---

[7] Including on a *pro hac vice* basis

[8] Fee Applicants with at least five attorneys with time submitted for their work may provide up to thirty-five (35) pages.

follow the formatting requirements of the Northern District of Florida's Local Rule 5.1(C). Exhibits to the Application outside of those contemplated in Exhibit A are discouraged, and resubmitting time entries is prohibited. Additionally, as a reminder, Fee Applicants continue to have access to Litigation Locker as a resource for drafting the Narrative.

### B.    Common Benefit Application Affidavit

Each Common Benefit Application must include an Affidavit, attached as **Exhibit B** to this Order. The Affidavit must be executed by a senior partner at each Fee Applicant holding an appointed leadership position and admitted to practice (including on a *pro hac vice* basis) in the Northern District of Florida. To the extent a Fee Applicant does not have a senior partner holding an appointed leadership position in this litigation, the Affidavit should be executed by a senior partner who is admitted to practice in the Northern District of Florida (including on a *pro hac vice* basis). The Affidavit must certify that individual attorneys within the Fee Applicant firm reviewed their time entries and that the Fee Applicant's audited hour entries are a) true and accurate; b) for the common benefit of all Plaintiffs; and c) in compliance with all of the Court's common benefit orders. In addition, the Affidavit must certify that all information in the Fee Applicant's Narrative is true and accurate.

## III.   Immunity

The undersigned delegated the Special Masters' common benefit work to them for the effective and efficient administration of the litigation, which means the Special Masters, and those in their employ, are conducting quasi-judicial work on behalf of the Court.  Accordingly, to perform their ongoing, quasi-judicial functions effectively, Special Masters Herndon and Sansom, and their employees, must be cloaked in absolute quasi-judicial immunity.

The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are "inextricably intertwined with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)); *see also Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) ("Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'"); *Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) ("Officials who perform judicial . . . functions traditionally have been afforded absolute immunity from suit.").  Quasi-judicial immunity applies to non-judicial officers when "their judgments are *functionally* comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function."  *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (internal quotation marks and alterations omitted) (emphasis added).  Special Masters are granted quasi-judicial immunity

when they exercise discretionary judgment in their quasi-judicial roles. *See Wilson v. Bush*, 196 Fed. App'x 796, 799 (11th Cir. 2006) (citing *Atkinson-Baker & Associates,* 7 F.3d 1452, 1454–1455 (9th Cir. 1993)) (special master was entitled to immunity for orders he issued in a state quiet-title action).

Here, Special Master Herndon has conducted quasi-judicial tasks in regularly reviewing the reports of Special Master Sansom and Ms. Hogan, reviewing common benefit held costs and issuing a Report and Recommendation on the same, and issuing a Report and Recommendation regarding the holdback assessment for the allocation of the common benefit attorney's fees. Likewise, Special Master Sansom and Ms. Hogan have already performed critically important administrative and non-administrative tasks pursuant to the Court's common benefit orders. This work has been quasi-judicial in that Special Master Sansom and Ms. Hogan have closely assisted the undersigned in the common benefit time and cost submission process through monthly auditing of the submissions, making decisions on whether to accept or reject those submissions, and regularly reporting to the undersigned on the submission process.

Accordingly, because the discretionary work of the Special Masters was and continues to be "inextricably intertwined with the judicial function"—pursuant to the absolute quasi-judicial immunity doctrine—*see, e.g.*, *Nystedt*, 700 F.3d at 30, the Court hereby orders that Special Masters Herndon and Sansom, together with their

employees, including but not limited to Sarah Hogan, will be indemnified and held harmless by the CAE CB QSF in this MDL.  Should either of the aforementioned Special Masters and those in their employ be named a party to, or threatened to be made a party to, or named as a witness in any threatened, pending, or completed action, suit, or proceeding of any kind, whether civil, administrative, or arbitrative by reason of the Special Masters and their employees having served in any capacity on behalf of the CAE CB QSF, said Special Masters and those in their employ will be indemnified and held harmless by the CAE CB QSF against reasonable expenses, costs and fees (including attorney's fees), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred in connection with or resulting from such actual or threatened action, suit or proceeding.

Furthermore, the Special Masters and those in their employ are protected from discovery through the mental process privilege.  The "mental process privilege" or "deliberative process privilege" may shield a quasi-judicial official from discovery. The mental process privilege protects "uncommunicated motivations for a policy or decision."  *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003); *see also Gary W. v. State of La., Dep't of Health & Hum. Res.*, 861 F.2d 1366, 1368–69 (5th Cir. 1988) ("[T]he mental processes rule has been applied to prevent the involuntary testimony of judicial and quasi-judicial officers" in addition to "agency officials."); *id.* at 1369 (court-appointed special master could

not be deposed regarding her report and recommendation); *Alford v. Aaron Rents, Inc.*, No. 08-CV-683 MJR DGW, 2010 WL 3522804, at *2 (S.D. Ill. Sept. 2, 2010) (The "Special Master . . . serves in a judicial capacity and it is inappropriate to subject him to an examination of his mental processes."). The courts have similarly recognized a "deliberative process" privilege protecting "advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated" from discovery.[9]    Not surprisingly, mental and deliberative process privileges have been considered "intertwined" and are often referred to interchangeably. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1024 & n.9 (E.D. Cal. 2010) (citation omitted). Thus, based on the nature of the duties being performed by Special Masters Herndon and Sansom and those in their employ, their work product, including any notes, calculations, emails, memoranda, conversations, deliberations, mental impressions and interim reports, is not subject to discovery or other civil process pursued in any court in an effort to learn of the mental or deliberative process of the Special Masters or the Court in connection with the common benefit allocation process.  To the extent any discovery process arising from or relating to the Special Masters' common benefit duties

---

[9] *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019 (E.D. Cal. 2010) (citing *FTC v. Warner Comm's, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)) (in the context of agency decision-making); *see also Alford*, 2010 WL 3522804, at *2 (while not using the term "deliberative process privilege," noting "[j]ust as the Plaintiff is not entitled to inspect the Court's records, she is not entitled to inspect the records of the Special Master").

ensues, the Special Masters and those in their employ will be indemnified and held

harmless by the CAE CB QSF.

      **SO ORDERED**, on this 12th day of December 2024.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**NARRATIVE OF [LAW FIRM]**
**IN SUPPORT OF COMMON BENEFIT APPLICATION**

     This Narrative is intended to provide each Fee Applicant seeking an award of common benefit attorney's fees an opportunity to describe the Fee Applicant's qualitative contribution to this multidistrict litigation. Each Fee Applicant's Narrative submission will be limited to twenty-five (25) pages[10] and must follow the formatting requirements of the Northern District of Florida's Local Rule 5.1(C) and:

     1.     Describe the Fee Applicant's commitment to the common benefit of the litigation. This description should include common benefit work of each member or employee of the Fee Applicant seeking compensation with a description of the quality, scope, breadth, depth, and duration of the work and how it benefitted the litigation as a whole. Describe the level of involvement of each member or

---

[10] Fee Applicants with at least five attorneys with time submitted for their work in this MDL may provide a Narrative of up to thirty-five (35) pages.

employee in, and commitment to, the MDL over the course of the litigation.

2.     Advise whether the Fee Applicant had a leadership role in the litigation. The Fee Applicant should include leadership roles outside of the Plaintiffs' Lead Counsel, such as an individual lawyer's specific work performed as the chair of, or as a member of, a particular committee or subcommittee.  The Fee Applicant must identify each lawyer's committee assignment and the value of their role on the specific committee.

3.     Describe the Fee Applicant's leadership in and contribution to discovery, electronic and otherwise, including taking/defending depositions, etc. This description should include whether the Fee Applicant made isolated common benefit contributions to discovery efforts, and whether the Fee Applicant's attorneys simply monitored the material common benefit efforts of other counsel, including, but not limited to, joining Zoom meetings or depositions without materially participating. Applicants should be precise in describing deposition involvement—including the deposition participant's role in each deposition, the preparation before, the taking of the deposition, and any follow-up.  The Fee Applicant must advise of other deposition participants (not in the Fee Applicant firm) in the deposition process and briefly describe their roles.  To the extent Fee Applicants had several attorneys attending multiple (i.e., more than five) depositions, a single-spaced Index may be appended to the Application as an Exhibit.  While this Exhibit will not count toward the page-limit

of the Application, Fee Applicants are strongly encouraged to keep the Index to three pages or fewer.

4.    Describe the Fee Applicant's leadership in and contribution to document review.  The description should include the nature and purpose of such review, including deposition or bellwether trial preparation, and whether the product of the review was utilized in a material way for the advancement of the litigation, and/or or whether the documents had to be re-reviewed by other counsel.   If the Fee Applicant engaged a vendor to provide contract attorney services to assist with document review, provide a copy of the vendor contract detailing billing rates.

5.    Describe the Fee Applicant's leadership in and contribution to legal issues, including legal research, motion practice, brief writing, and oral argument. Advise whether the Fee Applicant performed a material role in the research and/or in-court advocacy of issues involving Plaintiffs' theories of liability or in opposition to Defendant's theories, including appellate work.

6.    Describe whether the Fee Applicant performed a material role in the retention and/or development of experts who contributed in a beneficial way—or failed to provide a benefit—to the litigation.  The Fee Applicant must identify each expert and the precise role performed by the expert.  For each expert, the Fee Applicant must also identify to the extent possible any person or counsel, not employed by Fee Applicant, who also rendered work for that expert and the nature

of the work (e.g., research assistants to the expert).

7.    Describe whether the Fee Applicant performed material role(s) in the prosecution of cases selected by the Court for bellwether trials.  These roles may include, but are not limited to: counsel retained by the individual plaintiffs; counsel to whom the retained lawyer referred the individual case for such bellwether trials; and counsel acting to benefit the litigation as a whole by working to attain rulings and a verdict that would advance Plaintiffs' interests, to the detriment of the Defendants' interests, on one or more issues that might encourage Defendants' willingness to seek a resolution of the litigation as a whole.  Identify lawyers, in and outside of the Fee Applicant firm, involved in each bellwether trial and their role in each trial.  To the extent that Applicants had more than five lawyers with a role in these trials, a single-spaced Index may be appended to the Application as an Exhibit.  While this Exhibit will not count toward the page-limit of the Application, Applicants are strongly encouraged to keep the Index to three pages or fewer.

8.    Advise whether the Fee Applicant contributed to the common benefit of the litigation, or the detriment of the litigation, in relation to the bankruptcy proceedings in the Southern District of Indiana.  Fee Applicants should focus their

description on bankruptcy-related efforts in the MDL.[11]

9.    Describe whether the Fee Applicant performed a material role in the successful negotiation of the Master Settlement Agreements and the various times leading up to settlement, or whether the Fee Applicant was a detriment to the successful resolution. Describe whether the Fee Applicant performed a material role in achieving the acceptance of the settlement agreement by all or nearly all individual Plaintiffs and the establishment of the settlement program generally, or played a role to the detriment of those efforts. The Fee Applicant should also describe to the extent possible any person or counsel representing Plaintiffs, not employed by the Fee Applicant, who played a role to the detriment of the settlement.

10.    Describe the Fee Applicant's participation in ongoing settlement activities, if any, for the common benefit and explain how those activities contribute to the benefit of the litigation as a whole. Advise whether the Fee Applicant performed a material role in the success of the post-settlement activity by all or nearly all individual Plaintiffs and the establishment of the post-settlement program generally or, alternatively, played a role to the detriment of those efforts.

11.    Describe any financial contribution the Fee Applicant made to funding

---

[11] To the extent that Fee Applicants provide narratives focused on the Indiana bankruptcy proceedings for which they have already recouped fees, these efforts will not be considered for additional recovery here.

of the litigation. The Fee Applicant should describe whether it committed to the success of the litigation through financial support such as assessments and/or held costs, neither of which were reimbursed until the Court's order authorizing such reimbursement in January 2024. The Fee Applicant should also advise if its law practice was negatively affected by the amount of time devoted to this MDL, causing the Applicant to refuse other business it would have normally accepted. If so, specifics should be provided.

12.    Advise whether the Fee Applicant was a leader in undertaking strategic planning for the course of the litigation, including to advance the litigation toward ultimate resolution by settlement or to prepare cases for remand to transferor districts.

13.    Advise whether the Fee Applicant performed putative common benefit work that was not authorized by leadership counsel or committee chair, but for which the Fee Applicant is seeking common benefit fees, and the rationale for that request.

14.    Please describe any other relevant factors that the Fee Applicant believes should be considered by the Special Masters and the Court.

15.    Identify whether the Fee Applicant would like an opportunity to present orally to the Special Masters the reasons, grounds, and explanations for common

benefit fees.

_____

[Attorney Name]

# Exhibit B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**AFFIDAVIT OF [LAW FIRM]**
**IN SUPPORT OF COMMON BENEFIT APPLICATION**

I, [name], hereby depose and declare as follows, under penalty of perjury:

1.      I am a partner in the law firm of [firm name], located at [address], which is a Fee Applicant seeking an award of common benefit fees in the 3M Combat Arms Earplug MDL.

2.      I have reviewed the time submissions by the Fee Applicant, [firm name], in support of its Application for common benefit attorney's fees in connection with the 3M Combat Arms Earplug MDL and attest that the time was undertaken for the common benefit of all Plaintiffs and is accurate, true, and correct.   The time submissions by the Fee Applicant comply in all material aspects with this Court's common benefit orders, including Common Benefit Order No. 1 (ECF No. 488).

3.      I have reviewed the Narrative submission by the Fee Applicant and attest that the statements made therein are accurate, true, and correct.

4.      The Court may rely on the information submitted by the Fee Applicant to Special Masters Herndon and Sansom in support of the Fee Applicant's Application for common benefit attorney's fees.

I depose and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of _____, 20___ in [city, state].


_____

[Attorney Name]


Subscribed and Sworn to me, in my presence, this ___ day of _____, 20__.


_____

Notary Signature

State of _____

County/Parish of _____ (My commission expires: _____)