UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Cases | Case No. 3:19md2885<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

# **ORDER**

The Settlement Administrator, BrownGreer PLC, has notified the Court of a concern with the settlement claims of hundreds of Ugandan clients filed by one firm in this litigation.[1] The concern is based on a review of documents, which, on their face, appear to be fraudulent. This review has convinced the undersigned that for the benefit of the parties and the public, and to ensure the integrity of the Settlement Program, an independent investigation of this matter is required. The undersigned has further concluded that this type of investigation cannot be effectively and timely addressed by an available district judge or magistrate judge of this District. Accordingly, with the Parties' consent and pursuant to Rule 53 of the Federal Rules of Civil Procedure and the Court's inherent authority, the undersigned appoints the Honorable David Herndon (Ret.) as Special Master for purposes of this investigation

---

[1] *See* ECF No. 3809-1 at § 9.5 ("The Settlement Administrator shall work with the Parties to design and implement fraud protection measures, including to identify and reject fraudulent [Combat Arms Earplugs] Claims.").

and directs that he proceed with all reasonable diligence.[2]

The circumstances giving rise to the appointment, and the duties and terms of the Special Master's appointment are as follows: In August 2023, Plaintiffs' Leadership in this multidistrict litigation ("MDL"), Plaintiffs' Leadership in the Minnesota coordinated state court action, and 3M entered into Master Settlement Agreements ("MSAs") to resolve all claims against 3M related to the use of Combat Arms Earplugs. In order to participate in the Settlement Program and receive a Settlement Award, Claimants were required to submit certain documentation in support of their claims, and Payment Award amounts were determined according to a uniform Allocation Methodology. In the Deferred Payment Program ("DPP") specifically, a Reference Audiogram or an Injury Audiogram had to be provided for each Claimant, because the Allocation Methodology required the Claimant to "establish" that he or she has mild or greater hearing loss. This was required regardless of whether the Claimant was seeking only a $1,000 Registration Payment, an additional Point-based Award, or both. As there was confusion among Plaintiffs' Counsel about the need to upload an audiogram to "establish" hearing loss, the Court approved a 10-day grace period between December 3, 2024 and December 12, 2024 for Counsel to upload audiogram results so that Claimants would not be denied a

---

[2] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.").

Case No. 3:19md2885/MCR/HTC

DPP Registration Payment despite having applicable audiograms in their possession.

One of the firms representing Ugandan nationals uploaded 1,262 documents in support of over 800 Ugandan Claimants during this grace period, and BrownGreer began to issue the initial Registration Payments to many of them shortly after.  As BrownGreer began to assess these records further in the course of assigning additional Points Awards, though, it came across inconsistencies, alterations/photoshopping, and statements that were wildly improbable—or downright impossible—in the records.  Overall, it appears that there was a coordinated effort to fabricate evidence that would ensure Settlement Awards to these Claimants.  The Court has already closed the cases for these Claimants pursuant to the Parties' stipulated dismissals with prejudice.  *See* ECF No. 3809-1 at § 10.3.  Notwithstanding these closures, the Court is deeply concerned about the credibility of these claims, how counsel vetted the cases from their inception, whether fraud has been perpetrated on the Court and the Settlement Program it facilitates,[3] and whether the balance of the Claimants' DPP awards can be paid.

By this appointment, Judge Herndon is directed to perform the aforementioned investigation and provide a report and recommendation regarding his findings of fact, including as to any possible ethical violations or other

---

[3] *See* ECF No. 3809-1 at § 10.1.2 ("Submission of the Registration Materials with an election to participate in the Settlement and become a Registered Claimant . . . constitutes affirmative acceptance of the jurisdiction of . . . the MDL Court . . . for all matters and decisions related to this Settlement.").

misconduct; redressing any wrongdoing by Claimants and/or counsel; and ensuring the integrity of the Settlement Program. Judge Herndon has served well as a Special Master in this litigation, and the undersigned believes he will conduct a thorough and balanced fact-finding investigation as Special Master for these additional duties. In accordance with Rule 53(b)(3), attached to this Order as Exhibit A is the affidavit submitted to the Court by the Special Master.

Further, in accordance with Rule 53(b)(2)(B), the Court sets forth the circumstances in which the Special Master may communicate *ex parte* with the Court or a party as follows: The Special Master is instructed to perform his duties and reach his conclusions independently of 3M, Plaintiffs' Lead Counsel, and the Settlement Administrator, BrownGreer. However, the Special Master is authorized to communicate *ex parte* with the Court, BrownGreer, attorneys and staff of the subject firm and any counsel they may retain, and counsel for the Parties, without notice, as he deems necessary and appropriate for the performance of his duties. Additionally, the Special Master may call on BrownGreer and Plaintiffs' Lead Counsel to assist him in his investigation (e.g., providing relevant data and documents in their possession).

The Special Master must maintain normal billing records of time spent on this matter with reasonably detailed descriptions of his activities. The Special Master must submit his report and recommendation in writing for electronic filing on the

case docket.

The Special Master must incur only such fees and expenses as may be reasonably necessary to fulfill his duties under this Order or such other Orders as the Court may issue. Fees and expenses for the Special Master must be submitted monthly to Randy Sansom, CPA, and the Court for approval.

**SO ORDERED**, on this 24th day of June, 2025.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:19md2885/MCR/HTC