# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No: 3:19-md-2885-MCR-HTC<br><br>CIVIL ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF INSURERS' MOTION TO INTERVENE AND FOR PRODUCTION OF UPDATED ANONYMIZED SETTLEMENT DATA** |

Dated: November 18, 2025

*/s/ Diane G. DeWolf*
Diane G. DeWolf, BCS (59719)
diane.dewolf@akerman.com
Akerman LLP
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
(850) 224-9634

*/s/ Antonio Morin*
Antonio Morin, BCS (187860)
Akerman LLP
98 S.E. 7th St., Ste. 1100
Miami, FL 33131
(305) 374-5600

*Attorneys for Defendants Illinois National Insurance Company, American International Specialty Lines Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

*/s/ Sina Bahadoran*
Sina Bahadoran, BCS (523364)
CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
(305) 329-1792

*Attorneys for Defendant ACE American
Insurance Company*

*/s/ Bryan W. Petrilla*
Bryan W. Petrilla (*Pro Hac Vice Pending*)
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA 19428
(484) 534-8300

*Attorneys for Defendant TIG Insurance
Company*

*/s/ Michael E. Hrinewski*
Michael E. Hrinewski (*Pro Hac Vice
Pending*)
COUGHLIN MIDLIGE & GARLAND LLP
350 Mount Kemble Avenue
PO Box 1917
Morristown, NJ 07962
(973) 267-0058

*Attorneys for Defendant MS Transverse
Specialty Insurance Company f/k/a
Transverse Specialty Insurance Company,
f/k/a Royal Surplus Lines Insurance
Company*

*/s/ Cameron Michelsen*
Cameron Michelsen (*Pro Hac Vice Pending*)
Meagher + Geer, P.L.L.P.
33 South Sixth Street, Suite 4300
Minneapolis, MN  55402
(612) 338-0661

*Attorneys for American National Fire Insurance Company, and Great American Insurance Company*

## INTRODUCTION

On January 10, 2025, this Court authorized the Settlement Administrator to produce to 3M/Aearo[1] and AIG[2] limited anonymized information concerning settlement payments, for use only in connection with insurance coverage proceedings in London.  AIG and other insurance carriers[3] (collectively, "Insurers") now seek to intervene for the limited purpose of requesting the same information and some additional anonymized information (to the extent it is available), updated as of October 2025, for use in connection with separate insurance coverage proceedings in Delaware.  3M/Aearo does not oppose this motion.  Because Rule 24 permits limited-scope intervention in these circumstances and the disclosure Insurers seek is effectively an update to the already-authorized January disclosure, the motion should be granted, and the Court should authorize the disclosure described in the attached proposed order.

---

[1] Defendants 3M Company, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC (collectively, "3M/Aearo").

[2] For purposes of this motion, "AIG" refers to non-party insurers National Union Fire Insurance Company of Pittsburgh, PA; AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company); and Illinois National Insurance Company.  The Court's January 10, 2025 Order authorized production to another AIG entity, AIG Europe Limited.  (ECF No. 4139.)

[3] ACE American Insurance Company, TIG Insurance Company, American National Fire Insurance Company, Great American Insurance Company, and MS Transverse Specialty Insurance Company, f/k/a Transverse Specialty Insurance Company, f/k/a Royal Surplus Lines Insurance Company.

## BACKGROUND

### I.    Combat Arms Earplugs Coverage Litigation

3M/Aearo and various insurers are engaged in insurance coverage litigation with respect to this MDL in two forums: (i) a lawsuit pending in the Superior Court of Delaware between 3M/Aearo and Insurers, *Aearo Technologies LLC, et al. v. ACE American Insurance Company, et al.*, Case No. N23C-06-255 SKR (the "Delaware Litigation"), in which Plaintiffs seek hundreds of millions of dollars from Insurers, including $225 million from AIG under a series of umbrella policies issued to Aearo for policy years running from 2000–01 through 2007–08 (the "Aearo Policies"); and (ii) an arbitration pending in London between 3M/Aearo and AIG, *3M Company, et al. v. AIG Europe Limited* (the "London Arbitration"), in which Plaintiffs seek $160 million from AIG Europe under a Bermuda Form tower in which AIG Europe participated for the benefit of 3M (the "Tower Policies").

### II.    This Court's Previous Orders Authorizing Production of Confidential Information for Insurance Coverage Litigation Purposes

In three prior orders, this Court has authorized production to AIG of information protected under Pretrial Order No. 9 (ECF No. 442) and the Court's several Privacy Act orders.

**The May 16, 2024 Order.** On May 16, 2024, the Court permitted 3M/Aearo to produce to AIG in the Delaware Litigation "approximately six terabytes of data produced by or otherwise relied upon by Plaintiffs in this matter

and related litigation materials," including "discovery responses, responses to interrogatories, responses to requests for admission, expert reports, and deposition transcripts." (ECF No. 4088 at 3; *see* ECF No. 4050 at 1-2.) In authorizing that production, the Court noted that AIG and its counsel are "'qualified persons' under Section V.B.i of Pretrial Order No. 9 and are thus permitted access to Plaintiffs' Confidential information under Pretrial Order No. 9." (ECF No. 4050 at 2.) And the Court described four circumstances supporting disclosure, including that (i) the Delaware Litigation protective order (ECF No. 4050-1) affords protection commensurate with this Court's orders, (ii) the disclosed material would be used only in connection with 3M/Aearo's potential insurance recovery, (iii) access would be limited to counsel and experts, and (iv) the Court retained jurisdiction to enforce its confidentiality orders. (ECF No. 4050 at 3-5.) The Court further stated that use of the information in any other proceedings would require further authorization. (*Id.* at 6-7.)

**The August 15, 2024 Order.** 3M/Aearo subsequently sought the Court's approval to produce the same approximately six terabytes of information in connection with the London Arbitration. (ECF No. 4088.) On August 15, 2024, the Court granted that request, noting that the "Arbitration Protective Order" was "modeled off the Delaware Protective Order" and provided similar protections, and that the same four conditions supporting disclosure were met. (*Id.* at 3.)

6

**The January 10, 2025 Order.**  In November 2024, the tribunal in the London Arbitration ordered 3M/Aearo to request that this Court authorize disclosure by the Settlement Administrator to AIG of certain information, including anonymized settlement data reflecting gross awards to date to each claimant and the Administrator's methodology for apportioning settlement proceeds.  That information was (and is) relevant to the London Arbitration for purposes of allocating losses across years; for example, because the Tower Policies do not apply to pre-April 2008 injuries, it is 3M/Aearo's burden to demonstrate that the injuries for which they seek coverage in the London Arbitration post-date April 2008.

3M/Aearo followed the arbitration tribunal's directive and made the request to this Court, and Plaintiffs did not object.  (*See* ECF No. 4122; ECF No. 4145 at 3:15-22.)  After a hearing, the Court on January 10, 2025, authorized the Settlement Administrator to produce to AIG a spreadsheet of anonymized data "only for the purposes of resolving 3M/Aearo's coverage claims at issue in the arbitration."  (ECF No. 4139 at 3.)  It denied the request for production of the Settlement Administrator's allocation methodology.  (*Id.* at 4.)

## III.    Anonymized Award Information Is Relevant to the Delaware Litigation

In the Delaware Litigation, certain of the Insurers served discovery requests on 3M/Aearo, seeking claimant information to support an allocation analysis

relevant to the policies at issue in that case.  Allocating claimant settlement amounts is relevant to understanding which injuries correspond to which policy period (each of which has its own limits), and which injuries fall outside the 2000–2008 timeframe.  Allocation is further relevant to at least two types of AIG policy provisions at issue in the Delaware Litigation: (i) the war exclusions contained in most (not all) of the Aearo Policies, which exclude from coverage injury "arising directly or indirectly as a result of or in connection with war," which AIG will argue applies not only to service members using the earplugs during their deployed activities but also during their training for such deployment, *see, e.g.*, *Hooker v. N.Y. Life Ins. Co.*, 161 F.2d 852, 852, 856 (7th Cir. 1947) (death caused by accident during military training "resulted, directly or indirectly, from … war" notwithstanding that "it did not occur in actual combat"); and (ii) the anti-stacking provisions of the 2000–2004 Aearo Policies, which AIG will argue effectively limit overall coverage for that four-year period to the limits of a single policy, *see, e.g.*, *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 332 (3d Cir. 2005) (enforcing anti-stacking provisions to limit policyholder's coverage for thousands of underlying asbestos-exposure claims to the highest single limit under any of the policies); *E.I. du Pont de Nemours & Co. v. Stonewall Ins. Co.*, 2008 WL 7020668, at *5–*7 (Del. Super. Ct. Aug. 14, 2008) (stating "non-cumulation clause . . . prevents a policyholder from 'stacking,' or combining, multiple years' limits for

the same loss" and "reduces the limits of Stonewall's liability to zero for claims which are also covered under prior years' excess policies"), *aff'd*, 996 A.2d 1254 (Del. 2010). Under these two sets of provisions, coverage turns on how many claimants sustained injuries in connection with military activity (training or combat), in what years, and how much they received in settlement payments as a result.

While 3M/Aearo has produced some of this information, it does not possess data reflecting settlement payments, and while the Court's January 10, 2025 Order authorized production of certain settlement-payment data available as of that date, it limited use of that data to the London Arbitration. *See supra* at 7. During a meet and confer in June 2025, 3M/Aearo informed AIG that they would not return to the Court to request updated anonymized settlement data for use in the Delaware Litigation, but stated that they would not oppose AIG making that request. On November 13, 2025, counsel for 3M/Aearo confirmed that position with respect to all Insurers. On November 6, 2025, counsel for Plaintiffs stated that they would not consent to Insurers making the request but would "review any motion once filed to determine any points on which we may agree."

## ARGUMENT

The Court should (i) grant Insurers' motion to intervene and (ii) authorize the Settlement Administrator to produce updated anonymized claimant information to Insurers for use in the Delaware Litigation.

## I.    Insurers Have a Right to Intervene to Seek Production of Settlement Data

Courts routinely permit intervention for the limited purpose of requesting settlement-related information that implicates a non-party's legally protectable interests.  *See, e.g.*, *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (permitting intervention by news organization "limited to obtaining access to the settlement documents"); *Palmieri v. State of N.Y.*, 779 F.2d 861, 864 (2d Cir. 1985) (permitting intervention limited to modification of sealing orders, "thereby allowing disclosure of the settlement negotiations and terms"); *cf. Dahl v. Bain Cap. Partners, LLC*, 891 F. Supp. 2d 221, 224 n.1 (D. Mass. 2012) ("A third party seeking to challenge the sealing of a court document in a civil case may move to intervene for that limited purpose pursuant to Fed.R.Civ.P. 24(b).").  And this Court has permitted intervention for other limited purposes in this MDL.  *See* Order, *Season 4, LLC v. 3M Company*, No. 3:21-mc-00055 (N.D. Fla entered Nov. 3, 2021), ECF No. 24 (granting non-party's motion to intervene to quash subpoena).

Rule 24(a)(2) permits intervention as a matter of right when four conditions are met:

> (1) [the] application to intervene is timely; (2) [the non-party has] an interest relating to the property or transaction which is the subject of the action; (3) [the non-party is] so situated that disposition of the action, as a practical matter, may impede or impair [the applicant's] ability to protect that interest; and (4) [the non-party's] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (citation omitted).  Each condition is satisfied here.

*First*, Insurers' motion is timely.  "Timeliness is to be determined from all the circumstances.  And it is to be determined by the court in the exercise of its sound discretion."  *NAACP v. New York*, 413 U.S. 345, 366 (1973).  Factors relevant to assessing timeliness include:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

Every factor favors granting Insurers' motion.  Insurers are seeking to intervene within several months of learning from 3M/Aearo that they would not ask the Court for updated anonymized settlement information, and well before the

March 3, 2026 fact discovery cutoff in the Delaware Litigation. The timing of Insurers' request does not prejudice any MDL party as far as Insurers are aware—indeed, 3M/Aearo does not oppose the request. The prejudice to Insurers if intervention is denied would be meaningful: Insurers would lose access to evidence of how the money that is the subject of the Delaware Litigation is being spent—evidence that is central to assessing whether there is a covered loss. *See supra* at 7-9. And no unusual circumstances militate against concluding that Insurers' application is timely.

*Second*, Insurers' interests would be impaired absent disclosure. "Property interests such as existing contracts that are threatened by the potential results in a case qualify an applicant for intervention as a matter of right." *Danner Constr. Co. v. Hillsborough Cnty.*, 2009 WL 2525486 (M.D. Fla. Aug. 17, 2009) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (cleaned up)). And "[a]ll that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged" in its ability to protect those interests "by [its] exclusion from the proceedings." *Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014) (citation omitted). When, for example, a party's exclusion would "affect" its ability to litigate regarding "insurance proceeds," that satisfies Rule 24(a)(2). *Ariel Syndicate 1910 v. Paramount Disaster Recovery, LLC*, 2018 WL 3978132, at *6

(M.D. Fla. July 12, 2018), *R. & R. adopted in relevant part*, 2018 WL 4760669

(M.D. Fla. Aug. 29, 2018).

The anonymized claimant information Insurers seek directly implicates their

interest in protecting their rights under the policies at issue in the Delaware

Litigation, including the important limitations on coverage that Insurers and

3M/Aearo bargained for.  *See supra* at 7-9.  For example, without that information,

AIG and the Delaware court would be hampered in their ability to accurately and

fully quantify the degree of the claimed loss attributable to excluded military use or

subject to the Aearo Policies' anti-stacking provisions; and all Insurers would lose

access to information critical to allocating claimed loss across policy periods.

*Third*, the parties do not adequately represent Insurers' interests.  The

inadequate representation requirement "is satisfied if the [proposed intervenor]

shows that representation of his interest 'may be' inadequate."  *Chiles v.*

*Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (citing *Trbovich v. United Mine*

*Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).  "[T]he burden of making that

showing should be treated as minimal."  *Id.*  There is no question here that the

parties' representation of Insurers' interests "may be" inadequate.  Although

3M/Aearo previously sought the same anonymized claimant information for

purposes of the London Arbitration, it did so only when ordered by the arbitration

tribunal, and it has expressly refused to make the same request in the context of the

Delaware Litigation.

Accordingly, the Court should grant Insurers' motion to intervene.

## II. The Court's Previously Articulated Safeguards Support Production of Updated Anonymized Settlement Data

The Court should also authorize the Settlement Administrator to produce

updated anonymized settlement data to Insurers (and 3M/Aearo).  In its

January 10, 2025 Order, the Court directed the Settlement Administrator to produce

the following to 3M/Aearo and AIG:

> 1.  A summary chart in searchable, filterable Excel format reflecting the amount of gross compensation assigned to each Participating Claimant, including Verdict and Wave Case Claimants, to date, omitting names of Claimants and any other personal identifying information whatsoever, using only the CID Number to identify each individual Claimant.
>
> 2.  The number of Expedited Payment Program ("EPP") Claimants falling within each EPP Level.
>
> 3.  The number of Claimants participating in the Deferred Payment Program ("DPP").
>
> 4.  Information sufficient to demonstrate the Wave Case Point Dollar Value and the number of points assigned to each Wave Case Claimant, omitting names of Claimants and any other personal identifying information whatsoever, using only the CID Number to identify each individual Claimant.
>
> 5.  The following categories from Section 1 (Participating Claimants) in the Participating and Non-Participating Claimants Report as of October 25, 2024: "Claimant ID"; "Settlement Group"; "Election"; and "Court."

(ECF No. 4139 at 4-5.)  The Settlement Administrator then produced this

information in the form of an Excel spreadsheet that, using Claimant ID numbers,

anonymized all claimant-specific information.

As set forth in the proposed order, Insurers now request exactly the same

information in the same Excel spreadsheet format, updated to reflect changes since

January 2025, and reflecting the following additional information:

- Point assignments to each DPP claimant, as of October 1, 2025;

- Anonymized information collected on Registration Forms (EPP or DPP) and
EIF Application Forms concerning (i) whether and on what dates claimants
served in the United States military and (ii) first and last dates of CAEv2
use, including any information pertaining to these subjects contained in
Section V of the Registration Forms, the "Service Dates" and "Earplugs
Usage Dates" sections of the EIF Application Forms, and attached to EIF
Applications.

As explained above, *supra* at 7-9, this updated information is critical to assessing

questions concerning the coverage at issue in the Delaware Litigation.

The Court's prior orders authorizing disclosures for insurance-coverage-

litigation purposes support granting Insurers' request.  In its May 15, 2024,

August 15, 2024, and January 10, 2025 Orders, the Court approved disclosure of

protected material to 3M/Aearo's insurers—for use in both the Delaware Litigation and the London Arbitration—after concluding four conditions were met:

> (1) the production is subject to Protective Orders and/or Confidentiality Agreements in place that offer protections commensurate with the protections afforded such Protected Material under the Orders governing confidentiality in this matter;

> (2) the Protected Material is used solely in connection with resolving Defendants' rights to insurance recovery for the Combat Arms Earplug Litigation;

> (3) access to the Protected Material is appropriately limited to those parties in the resolution of Defendants' coverage claims to whom disclosure is reasonably necessary; and

> (4) the Court retains jurisdiction to enforce its Orders governing confidentiality in this matter, including with respect to any party or non-party's unauthorized disclosure of records originally produced by federal government agencies under order of the Court.

(ECF No. 4139 at 2-3; *see* ECF No. 4050 at 3-5; ECF No. 4088 at 3.)  Each safeguard is present here.  The same protective orders remain in this case and the Delaware Litigation (*see* ECF No. 4050 at 3-5 (concluding Delaware Litigation protective orders offered commensurate protection)); the updated anonymized claimant information will be used solely in connection with resolving 3M/Aearo's rights, if any, to insurance recovery related to the Combat Arms Earplugs settlement; access to the information will be limited to experts and attorneys whose review is necessary; and by granting Insurers' motion to intervene, this Court will have jurisdiction over Insurers to enforce its confidentiality orders.

Further, to the extent the Court believes additional safeguards are necessary, it can order Insurers and 3M/Aearo to comply with the same limitations it added to the January 10, 2025 Order (as contemplated in the proposed order).  (*See* ECF No. 4139 at 5-6.)  That is, the Court may order Insurers and 3M/Aearo to (i) limit disclosure of the updated anonymized data to counsel (including counsel of Insurers' reinsurers) and expert witnesses who have signed the Delaware Litigation protective order (*see* ECF No. 4050-1 §§ IV.7.a, IV.7.g), and (ii) ensure that any resulting expert reports, summaries, or analyses do not disclose the amount paid to any individual claimant.  But with or without a formal order, Insurers intend to adhere to these limits and use the data only for analyzing settlement payments for the ultimate purpose of defending against 3M/Aearo's coverage claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Insurers' motion to intervene and authorize the Settlement Administrator to produce to Insurers and 3M/Aearo updated anonymized claimant information, as set forth above and in the attached proposed order.  *See supra* at 14-15; [Proposed] Order at 5-6.

Dated:  November 14, 2025        Respectfully submitted,

*/s/ Diane G. DeWolf*
Diane G. DeWolf, BCS (59719)
diane.dewolf@akerman.com
Akerman LLP
201 East Park Avenue, Suite 300
Tallahassee, Florida  32301
(850) 224-9634

*/s/ Antonio Morin*
Antonio Morin, BCS (187860)
Akerman LLP
98 S.E. 7th St., Ste. 1100
Miami, FL 33131
(305) 374-5600

*Attorneys for Defendants Illinois National Insurance Company, American International Specialty Lines Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

*/s/ Sina Bahadoran*
Sina Bahadoran, BCS (523364)
CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
(305) 329-1792

*Attorneys for Defendant ACE American Insurance Company*

/s/ Bryan W. Petrilla
Bryan W. Petrilla (*Pro Hac Vice Pending*)
STEWART | SMITH
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA 19428
(484) 534-8300

*Attorneys for Defendant TIG Insurance Company*

/s/ Michael E. Hrinewski
Michael E. Hrinewski (*Pro Hac Vice Pending*)
COUGHLIN MIDLIGE & GARLAND LLP
350 Mount Kemble Avenue
PO Box 1917
Morristown, NJ 07962
(973) 267-0058

*Attorneys for Defendant MS Transverse Specialty Insurance Company f/k/a Transverse Specialty Insurance Company, f/k/a Royal Surplus Lines Insurance Company*

/s/ Cameron Michelsen
Cameron Michelsen (*Pro Hac Vice Pending*)
Meagher + Geer, P.L.L.P.
33 South Sixth Street, Suite 4300
Minneapolis, MN  55402
(612) 338-0661

*Attorneys for American National Fire Insurance Company, and Great American Insurance Company*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to N.D. Florida Local Rule 5.1(c), AIG's counsel certifies that this motion complies with the applicable font requirements and is written in 14-point Times New Roman font and contains 3,158 words.

## CERTIFICATE OF SERVICE

I hereby certify this 14th day of November, 2025, that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system.

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify this 14th day of November, 2025, that counsel for AIG conferred with (i) lead Plaintiffs' counsel by email on November 5 and 6, 2025, and (ii) counsel for 3M/Aearo by email on November 5, 6, 7, 12, and 13, concerning this motion. Lead Plaintiffs' counsel stated that they "do not consent but will review any motion once filed to determine any points on which we may agree." Counsel for 3M/Aearo does not oppose the motion.

*/s/ Diane G. DeWolf*