UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to:<br>*All Cases* | Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

# ORDER

Defendants 3M Company, Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC (collectively "3M" or "Aero") and a number of Aearo's insurers (the "Insurers") are engaged in litigation concerning insurance coverage for the Combat Arms Earplug Litigation, MDL No. 2885. Some of the insurance litigation is pending in the Superior Court for the State of Delaware, *Aearo Technologies LLC, et al. v. ACE American Ins. Co., et al.*, Case No. N23C-06-255 SKR (the "Delaware Litigation").[1] The Insurers in the Delaware Litigation have filed a Motion seeking to intervene in the MDL as of right under Federal Rule

---

[1] The "Insurers" refers to non-parties National Union Fire Insurance Company of Pittsburgh, Pa., AIG Specialty Insurance Company, Illinois National Insurance Company, ACE American Insurance Company, TIG Insurance Company, American National Fire Insurance Company, Great American Insurance Company, and MS Transverse Specialty Insurance Company (f/k/a Transverse Specialty Insurance Company, f/k/a Royal Surplus Lines Insurance Company), which are defendants in the Delaware Litigation. In line with the Insurers' Motion, "AIG" will collectively "refer[] to non-party insurers National Union Fire Insurance Company of Pittsburgh, PA; AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company); and Illinois National Insurance Company." ECF No. 4188 at 4.

of Civil Procedure 24(a) for the limited purpose of asking this Court to authorize the Settlement Administrator to disclose certain anonymized settlement data for use in the Delaware Litigation. ECF Nos. 4187, 4188, 4189. At the Court's request, 3M and the Negotiating Plaintiffs' Counsel ("NPC") have filed a Response. ECF No. 4203. For the reasons below, the Court concludes that the Insurers' Motion is due to be denied.

On August 29, 2023, 3M and the NPC entered into Master Settlement Agreements ("MSAs") to resolve Combat Arms Earplug Version 2 claims in MDL No. 2885 and Minnesota state court. Under the MSAs, 3M is obligated to pay $6 billion to compensate Claimants for their hearing impairment claims. The MSAs explicitly reference 3M's plans to use insurance recovery funds to help pay the settlement awards.[2] *See, e.g.*, ECF No. 3809-1 at § 11.3.2. As a part of those recovery efforts, 3M has been engaged in satellite proceedings against insurers across several jurisdictions. At issue for purposes of the instant motion is the Delaware Litigation, where 3M seeks "hundreds of millions of dollars from Insurers, including $225 million from AIG under a series of umbrella policies issued to Aearo for policy years running from 2000–01 through 2007–08." ECF No. 4188 at 5. At the insistence of 3M (and without opposition of the NPC), in May 2024, the Court

---

[2] However, 3M's obligation to fund the settlement program is in no way contingent on any insurer's coverage, and no insurers are party to any MSAs.

Case No. 3:19-md-2885

authorized the production of certain Plaintiffs' Protected Material from the MDL proceedings to the Delaware Litigation, subject to Protective Order guardrails. *See* ECF No. 4050. In January 2025, the Court also granted in part a November 2024 motion from 3M requesting that the Court authorize the Settlement Administrator to disclose certain anonymized settlement administration information, including Claimant payment amounts and settlement allocation methodologies, to 3M for use in an ongoing London arbitration proceeding against one of their insurers, AIG Europe Limited.[3] However, the Court denied 3M's request for disclosure of deferred payment program ("DPP") Claimants' points values, as none had been assigned at that time, and denied the request for "[i]nformation sufficient to demonstrate the methodology by which a participating plaintiff's eligibility and ultimate compensation is determined at each level of the Combat Arms Settlement," because "there ha[d] not been a sufficient showing that such information is relevant and necessary to any issue in the [London] Arbitration." ECF No. 4139 at 5–6.

The Insurers in the Delaware Litigation have now moved to intervene in the MDL under Federal Rule of Civil Procedure 24 as a pathway to seeking production

---

[3] 3M's November motion had a strange procedural posture: "the [London] arbitration Tribunal ordered 3M/Aearo to submit a request to the [MDL] Court 'to authorize the Settlement Administrator to disclose the Settlement Information to the Claimants and to authorize the Claimants to produce the Settlement Information to the Respondent in this Arbitration.'" ECF No. 4122 at 4–5. Before the Tribunal issued its order, AIG Europe Limited "informed the Tribunal that it did not wish to participate in . . . [a] motion" with 3M to make this request of the MDL Court "on the grounds that AIG is not a party to the MDL and cannot be required to appear before the Court." *Id.* at 4.

in the Delaware Litigation of the settlement-related information provided in the London proceedings—with updates to that production to bring it current to October 2025 (i.e., receive the now-existing DPP values). 3M has responded to Insurers' motion to state that it takes no position on intervention and does not oppose the request for disclosure of anonymized settlement data. ECF No. 4203 at 4. The NPC has responded to state that Plaintiffs oppose Insurers' request. *See id.* at 2. The NPC highlights that the Insurers are now also seeking discovery of individual MDL Plaintiffs for the Delaware Litigation, which has resulted in improper "harassment and practice of directly communicating with individual MDL plaintiffs." *Id.* at 4.[4]

Insurers seek intervention as a matter of right pursuant to Rule 24(a). Under that Rule, a "court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). In the Eleventh Circuit, those seeking to intervene under Rule 24(a)(2) must show:

(1) their application to intervene is timely;

---

[4] The NPC has not asked the Court for a protective order regarding the purported harassment of MDL plaintiffs; however, the NPC is free to file a protective order motion if it deems one necessary.

(2) they have an interest relating to the property or transaction which is the subject of the action;

(3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and

(4) their interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004)) (citation modified).  All four elements of Rule 24(a) must be satisfied before a court will permit intervention as of right.  *Chiles v. Thornburgh*, 865 F.2d 1197, 1213–14 (11th Cir. 1989).

First, Insurers contend that their Motion is timely because they are "seeking to intervene within several months of learning from 3M/Aearo that they would not ask the Court for updated anonymized settlement information, and well before the March 3, 2026 fact discovery cutoff in the Delaware Litigation."  ECF No. 4188 at 11–12.  In evaluating timeliness, the Court looks to:

[1.] [T]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;

2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;

3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and

4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 291 (11th Cir. 2020) (quoting *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017)) (citation modified).

While the Insurers may have only recently discovered that 3M would not seek relief on their behalf this time (as 3M had previously), the Insurers have been aware of this MDL from its inception; thus, they have long known of their "interest in the case." *Burke*, 833 F. App'x at 291 (quoting *Salvors*, 861 F.3d at 1294). Before the MDL settlement in August 2023, the undersigned witnessed representatives of AIG at several of the Bellwether trials.[5] But more importantly, as far back as 2022, the Court required the insurers' involvement in the mediation process. ECF No. 3188 at 3–4 (In its order scheduling mediation, the Court directed that "[a]ny other person whose authority is necessary to resolve all or part of this litigation must attend [mediation] in person, *including any insurance representatives*." (emphasis added)). And several insurers did appear for that mediation, while others objected to being required to appear and did not appear. Also, when the undersigned held a hearing in January 2025 on 3M's November 2024 motion seeking the production of settlement data in the London proceedings, counsel for an insurer in the Delaware

---

[5] No insurer is a Party, though, and they did not provide a defense to 3M during the Bellwether trials or appear before the Court.

Litigation was present in the courtroom observing. *See* ECF No. 4145 at 44:1–7. At that time, the undersigned expressed that if AIG had some issue with the scope of production ordered, "they have to come in here and explain to [the Court] exactly what that is that they're looking for before [the Court] can decide." *Id.* at 44:16–21. In sum, the Court can only conclude that the Insurers have known of their interest in the MDL for years and were aware of their specific concern about producing additional settlement information in the Delaware Litigation for almost a year before seeking to intervene. Thus, the Insurers' Motion is untimely under these circumstances, where the Insurers have sidelined their potential involvement in the case until the last possible moment. Their Motion can be denied on this ground alone.

The second prong supporting intervention requires that the Insurers have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). "Intervention of right is only available if the interest asserted is 'direct, substantial, and legally protectable.'" *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (quoting *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir.1982)) (citation modified). An "economic interest" is not enough; "the interest [must] be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (quoting *New Orleans Public Service, Inc.,*

*v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984)). However, the interest does not have to be the same as what is asserted in the main action, and the Court's inquiry is "flexible" and circumstance-dependent. *Chiles*, 865 F.2d at 1214.

Insurers' Motion identifies their policy contracts with 3M/Aearo as a property interest implicated by the MDL case. They argue that the production of "anonymized claimant information . . . directly implicates their interest in protecting their rights under the policies at issue in the Delaware Litigation, including the important limitations on coverage that Insurers and 3M/Aearo bargained for," and they would lose information relevant to "allocating claimed loss across policy periods." ECF No. 4188 at 13. In support, they cite to case law concluding that "interests such as existing contracts that are threatened by the potential results in a case qualify an applicant for intervention as a matter of right." *Id.* at 12 (quoting *Danner Constr. Co. v. Hillsborough Cnty.*, 2009 WL 2525486 (M.D. Fla. Aug. 17, 2009)).

The Court is unconvinced that the Insurers have stated an interest warranting intervention. The Rule 24 analysis requires an "interest relating to the property . . . that is the subject of the action." Insurers' policies with 3M are not the subject of the action—at most, Insurers' purported interest in helping allocate claimed losses

appears to be an economic one.[6] This disparity is particularly evident when viewing the facts here in comparison with those in cases cited by the Insurers, where the main actions in which intervention was sought involved issues of contract or policy assignment validity. *Cf. Danner Const. Co.*, 2009 WL 2525486, at *4 (main action would affect contractual property interest where plaintiff argued that potential intervenor's "exclusive franchise agreements are invalid and per se violations of the antitrust laws"); *Ariel Syndicate 1910 v. Paramount Disaster Recovery, LLC*, No. 617CV1279ORL37DCI, 2018 WL 3978132, at *1, *4 (M.D. Fla. July 12, 2018), *report and recommendation adopted in part*, 2018 WL 4760669 (M.D. Fla. Aug. 29, 2018) (main action would directly implicate scope of assignment of insurance claim by potential intervenor). Moreover, and significantly, the undersigned has entered no order in the MDL or in the course of facilitating the settlement that impairs Insurers' rights—and Insurers have cited none. *Cf. Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) ("confidentiality order which [potential intervenor] wants to challenge conflicts with [intervenor's statutory] right to access information"). Again, the Insurers' Motion cannot be granted where they have not stated a sufficient interest.

---

[6] In fact, if Insurers believed their policies may have been impacted by the results of the action (i.e., judgment or settlement), they are long overdue on filing their motion to intervene.

Case No. 3:19-md-2885

The third prong of the intervention analysis asks if the potential intervenor is "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect" their interest. *Tech. Training Assocs.*, 874 F.3d at 696 (quoting *Stone*, 371 F.3d at 1308). On this prong, too, Insurers fall short. Even if Insurers could state an interest, which they have not, the 3M MDL docket is, for all practical purposes, closed for adversarial business and, as of the date of this order, there are no actively litigating Plaintiffs.[7] In other words, the action the Insurers seek to intervene in no longer exists; there is no controversy between 3M and the NPC pending in this Court. Accordingly, there are no potential results from the case that would implicate Insurers' contracts at this point. *See United States v. Citx Corp.*, No. MISC. 11-7, 2011 WL 2039014, at *3 (E.D. Pa. May 24, 2011) ("Because no claims are being litigated in [this matter], Petitioner's legal rights and property interests are not at risk of being disposed of in Petitioner's absence."). Instead, Insurers are "attempt[ing] to use intervention as a discovery tool for matters pending in" state court. *See id.* Again, Insurers' Motion must—and does—fail.

Finally, Insurers contend that the inadequate representation requirement is met because they have shown the representation of their interests "may be" inadequate. ECF No. 4188 at 13 (quoting *Chiles*, 865 F.2d at 1214). Insurers'

---

[7] While a few *pro se* Plaintiffs have sought to file individual cases recently, the Court has not received filing fees or approved *in forma pauperis* applications.

argument that the Parties inadequately represent their interests necessarily fails where the Insurers' do not state any interest.

Accordingly, the Insurers have not demonstrated a sufficient reason to permit intervention in this MDL under Rule 24, and the Court **DENIES** their Motion, ECF No. 4187.

**SO ORDERED**, on this 9th day of February, 2026.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**