| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS | ) | CASE NO. 3:19-MD-2885 |
| EARPLUG PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | Judge M. Casey Rodgers |
| | ) | Magistrate Judge Hope T.Cannon |
| This Document Relates to: | ) | |
| All Cases | ) | |

**HENINGER GARRISON DAVIS'S OBJECTION TO SPECIAL
MASTER HERNDON'S REPORT AND RECOMMENDATION
<u>REGARDING COMMON BENEFIT FEES</u>**

Comes now Heninger Garrison Davis, LLC ("HGD") and files its objection

to the allocation it received from Judge Herndon in his order of June 11, 2026.

First, we thank Judge Herndon, as well as Randall Sansom and his office, for

the incredible and detailed work they have contributed to this litigation. No doubt

the Court chose wisely when it appointed these seasoned individuals to the lengthy

and complex tasks that this groundbreaking litigation presented. As Judge Herndon

and the Court know, divvying up common benefit fees among a group of Plaintiffs'

lawyers at the conclusion of MDL cases is a beguiling and thankless task. HGD

wants to be clear that it appreciates the consideration from Judge Herndon and Mr.

Sansom and the award they suggested to be bestowed on HGD for its common

benefit work, but we respectfully say that the award does not adequately portray the

value that HGD brought to this litigation. With that backdrop, we request that the

Court allow us to provide the grounds that we believe justify a higher common benefit fee award.

Whatever the ultimate amount of common benefit fees the Court decides to award, it will be a fixed sum, and for a firm to receive more than allocated by Judge Herndon, another firm must receive less. That is an unfortunate reality that the Court will need to grapple with. A firm may be happy with its award, and the final opinion by the Court may reduce the award. HGD takes no position on any other firm's allocation. HGD does not feel it is appropriate to say that one particular firm should receive less, and HGD should receive some of that firm's share. In a situation like this, all we can do is stay in our own lane and advocate for ourselves—not against anyone else. We believe our work in this case was more valuable than Judge Herndon suggested, and we believe we deserve more, but not at the expense of any particular firm. That will be the Court's unenviable task in the event that it chooses to reallocate any of the percentages.

But here is what we can say: We were intractably committed to this litigation. We committed significant sums of money, resources, and effort to the cause. Our commitment was evident from the beginning and never waned, and we represented over 8,000 clients in the settlement. Perhaps being overzealous about the litigation worked to our detriment by signing up large numbers of Ugandan clients, and the

well-chronicled issues that arose post-settlement, separate from any common benefit fee issue, for which we have paid dearly.

## I.     Reasons Which Justify an Increase in the HGD Allocation

In its common benefit fee application of January 27, 2024, HGD described its work and the **6375** attorney hours it committed to the case.  HGD also listed the financial commitment it made in the case, including the millions of dollars in filing fees it paid ($3,200,000), the $587,500 it paid for common benefit assessments, and the held costs of $162,129.  We are aware that Judge Herndon and Mr. Sansom "rejected" a lodestar calculation and lodestar check as a "path to make recommendations to Judge Rodgers," instead using the hours submitted to provide "good insight" into the amount of work performed. Doc. 4216 at 10. Again, we respect Judge Herndon's rationale, but we note that the amount to HGD—if the 9% holdback is not reduced—would be a blended rate of approximately $423/hour.

### a.  HGD was trial counsel in the second bellwether case, *McCombs.*

In his R&R, Judge Herndon penned that "…the analysis of common benefit focuses on the work that ultimately contributed to that success. An overview of the broad categories of litigation work demonstrates that the bellwether process was an **outsized factor in this litigation's success."** Doc. 4216 at 10-11.

Judge Herndon further stated: "As one usually observes in bellwether trials, the parties learned a significant number of factors or data, **regardless of whether**

**plaintiff won or lost, that went a long way to informing both sides of the litigation in the analysis of the liability issues and damage models."** *Id*. at 11.

HGD was co-lead trial counsel with Doug Monsour and the late Neil Overholtz in the *McCombs* case, which was the **second** bellwether case to go to trial. While the case resulted in a Defendant verdict, the Court will recall that the jury returned to the courtroom after the verdict and chastised the conduct of 3M, in the presence of 3M in-house counsel, about how 3M concealed the known defects of the earplugs from the military. Dustin McCombs was a privilege to represent, and was a .50 Cal gunner when his vehicle rolled over an IED in Afghanistan. He suffered tinnitus, but had no evidence of hearing loss. The jury, even though they were appalled by the conduct of 3M, could not overcome the specific causation hurdle the *McCombs* case presented.

What HGD did in *McCombs* is a matter of record, but it included: actively participating at trial and examining witnesses for Plaintiff and Defendant, handling all motion practice before trial, handling motions in limine, working with the Law and Briefing committee to prepare jury instructions, arguing motions before trial commenced in the morning, and arguing motions before Judge Herndon at night during the trial, handling all the pretrial discovery—depositions of 3M witnesses, depositions of providers, depositions of audiologists, taking some of the expert depositions, etc. HGD also was responsible for working with Admiral Leslie, and

prepared her expert report and prepared her for deposition and for trial. HGD worked with Admiral Leslie not only in *McCombs,* but helped prepare her for trial in the following bellwether cases: *EHK, Montero, Stelling, Palanki, Camarillo, Blum,* and *Adkins.* HGD was also responsible for preparing the expert report of General Edens, and for preparing him for deposition. A decision was made not to bring him to trial. HGD found and worked up Dan Brock, who was a distributor for the 3M earplugs at one time and testified live at several trials. Mr. Brock was a very likeable witness with a big personality, and his testimony was helpful in many trials. In sum, with respect to the second bellwether trial, *McCombs,* HGD was in it soup to nuts. And if the *McCombs* trial stood for anything, it stood for this: the jury let everyone know that the conduct of 3M was despicable, and while 3M may have won the battle with Dustin McCombs, it was destined to lose the war. That proved to be correct.

### b. HGD played a pivotal role on the Law and Briefing Committee.

Judge Herndon determined that two discrete areas played an "outsized role" in the success of the litigation. The first "outsized role" was the bellwether trials, and as stated above, HGD played a pivotal role as trial counsel in the *McCombs* case. The second "outsized role" in the success of the case was law and briefing. Doc. 4216 at 12.

In his report, Judge Herndon stated: "Law and briefing in this MDL also played an outsized role in the success of the litigation before, during, and after the bellwether process. The defense placed a great deal of reliance and credence on its primary defense, that of government contractor immunity…." Doc. 4216 at 12.

Again, HGD was a vital participant in the successful law and briefing of several crucial areas, including the government contractor defense ("GCD"). In its Plaintiff Leadership Appointment Order of May 22, 2019 (Doc. 376), HGD partner W. Lewis Garrison, Jr. was appointed to the "Law, Briefing & Legal Drafting Subcommittee." The case was in its infancy, and the GCD was front and center after the Court established the committee.

HGD was in the middle of the committee's work from the start. Michael Sacchet, who headed Law and Briefing, hosted regular committee calls and zoom meetings, and the work was evenly distributed among the committee firms. Under Mr. Sacchet's direction, HGD partner Chris Hood thoroughly researched the Abilify MDL previously in this Court and communicated his findings to the committee, assisted with a memo on statutes of limitation, and reviewed and commented on the Master Complaint. Mr. Hood then conducted research, prepared memos, and participated in calls and emails involving the GCD and topics under it, including *Boyle*, *Boyle* factors 2 & 3, *Dorse*, and tests for the defense in the 11th Circuit and other circuits.

It should be noted here that one year later, on May 17, 2020, the Court amended its Plaintiff Leadership structure, and W. Lewis Garrison, Jr. was named as a member of the Plaintiff Steering Committee (Doc. 1131), but Chris Hood had by that point immersed himself as a contributor to Law and Briefing, and he continued to work valuably with the committee through the *McCombs* bellwether trial. That work included a signal win on choice of law for Mr. McCombs' claims.

HGD checks all the boxes mentioned by Judge Herndon with respect to what contributed to the eventual settlement of the case: the bellwether trials, law and briefing, commitment to the litigation, financial commitment to the litigation, and successfully persuading 95% of its clients to accept the settlement.

HGD submitted 6375 attorney hours in its fee application, all of which had been submitted to Mr. Sansom as the case went along. With that many hours, we wonder what our suggested award would have been had we *not* tried a bellwether case, and had we *not* been so integral in the law and briefing aspects of the case. We do not believe it would have been less than a .5% award.

But we need not engage in that analysis because we **did contribute significantly to the litigation and ultimate resolution of this landmark litigation.** We respectfully state that Judge Herndon did not equate the value we provided with the award he suggested.

Therefore, for the value we provided to this litigation, we hereby request **1.25%** of the eventual amount of the common benefit fund.  We thank the Court for its consideration of our request.

Respectfully submitted,

Dated: June 23, 2026

*/s/ W. Lewis Garrison, Jr.*
W. Lewis Garrison, Jr.
**Heninger Garrison Davis, LLC**
2224 First Avenue North
Birmingham, AL 35213
Phone: 205.326-3336
Fax: 205-380-8085
lewis@hgdlawfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

In compliance with Rule 5.1(F) of the Local Rules of the United States District Court Northern District of Florida, I hereby certify that on the 23rd day of June, 2026, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via email to all registered counsel of record.

*/s/ W. Lewis Garrison, Jr.*