UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: ALL CASES | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**BAILEY COWAN HECKAMAN PLLC'S OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON COMMON BENEFIT FEES AND REQUEST FOR DE NOVO REVIEW**

## I.    INTRODUCTION

Pursuant to Common Benefit Order No. 6 (Dkt. 4129), Bailey Cowan Heckaman PLLC ("BCH") respectfully files this objection to the Special Master's Report and Recommendation on Common Benefit Fees (Dkt. 4216) (the "Report and Recommendation") and requests that the Court conduct a *de novo* review of BCH's allocation. In doing so, BCH acknowledges the enormous effort that Special Master Herndon, Mr. Sansom, and Ms. Hogan devoted to reviewing the applications submitted in this litigation. This objection is not intended to diminish their work or that of any firm. Rather, BCH respectfully submits that its documented contributions warrant a higher allocation than the 0.01% recommended in the Report and Recommendation.

1

## II.    ARGUMENT AND AUTHORITIES

**A.    BCH'S DOCUMENTED HOURS REFLECT A CONTRIBUTION FAR EXCEEDING THE RECOMMENDED 0.01% ALLOCATION**

BCH recognizes that hours alone do not dictate common benefit awards. (*See* Common Benefit Order No. 1 at 3 (Dkt. 1659).) Nevertheless, the 50x magnitude of the disparity between BCH's proportional share of the accepted hours and the recommended allocation warrants the Court's attention.

The collective total of approved common benefit hours submitted by all participating counsel was 364,189.5. (Mem. in Supp. of Pls.' Leadership's Mot. for Confirmation of Nine Percent Holdback at 1, 47 (Dkt. 4091-1).) BCH submitted approximately 1,855 accepted hours across multiple attorneys and a handful of staff who contributed to bellwether trial preparation, law and briefing, and other common benefit work. BCH's proportional share of the total labor pool is therefore approximately 0.51%— roughly **50** times the 0.01% allocation recommended by the Special Master. While BCH does not suggest that a purely mathematical approach governs, a disparity of such magnitude suggests that BCH's qualitative contributions may not have been fully credited.

**B.    BCH'S CONTRIBUTIONS TO THE *ADKINS* AND *KELLEY* BELLWETHER CASES HAD AN OUTSIZED IMPACT ON THE LITIGATION'S OUTCOME.**

The Report and Recommendation itself recognized that the bellwether process was an "outsized factor in this litigation's success." (Dkt. 4216 at 10–11.) BCH's most significant contribution was its work on the *Brandon*

2

*Adkins* bellwether case—which Defendants hand-selected for trial almost assuredly because they perceived Mr. Adkins's claims as vulnerable. *Adkins* involved a veteran suffering from tinnitus, with difficult facts and no proven hearing loss. Other MDL counsel believed the case should be dismissed to avoid harming the Plaintiffs' overall litigation posture, particularly at that early stage of bellwether trials.

Despite those headwinds, the *Adkins* trial resulted in an $8.2 million jury verdict, the largest single-plaintiff verdict in the litigation at that time. That verdict in a defense-selected, tinnitus-only case sent a powerful signal about the strength of Plaintiffs' position and contributed meaningfully and unquestionably to the momentum that produced the global settlement.

Brandon Adkins hired BCH long before 3M selected the case for bellwether trial, and BCH was solely responsible for the full pretrial workup of the case. BCH prepared and presented Mr. Adkins for deposition, deposed treating physicians, oversaw all discovery, developed trial strategy, and drafted pretrial motions and other submissions. BCH partners and associates performed extensive pretrial work, including review of thousands of medical, psychological, and military records, expert preparation, and coordination with Plaintiffs' Leadership. During trial, BCH provided support on client testimony preparation, jury selection, trial themes, and evidentiary strategy. After the verdict, BCH drafted successful responses to 3M's motions for new trial and judgment as a matter of law. In short, BCH's work touched every phase of the *Adkins* case from intake through post-trial motions, with favorable results at each stage.

3

BCH does not know how or why those *Adkins* contributions consisting of well over 1,500 hours appear to have been significantly discounted. To the extent that it was because BCH received a contingency fee from its client Brandon Adkins, BCH respectfully submits that its independent contractual relationship with Mr. Adkins is separate from the common benefit analysis. The value of BCH's work contributed to the broader litigation—the momentum swing toward Plaintiffs, the signal to 3M that even difficult cases could be won by Plaintiffs, the reinforcement of Plaintiffs' bellwether strategy at a critical point in the litigation—benefited all 270,000-plus claimants, not merely Mr. Adkins. If such a discount was in fact imposed here, then BCH argues it should not be disadvantaged for carrying the *Adkins* matter through to a landmark result; it earned its client's fee by performing excellent work, while producing a result that also delivered an extraordinary common benefit to the other litigation Plaintiffs.

In addition, the Report and Recommendation noted that law and briefing also "played an outsized role" in this litigation. (Dkt. 4216 at 12.) BCH served as lead law and briefing counsel for the *Kelley* bellwether trial—a case that, unlike *Adkins*, did not involve BCH's own client. Plaintiffs' Leadership requested that BCH lead the law and briefing effort in *Kelley* mere weeks before trial, at a point when BCH had no prior familiarity with the facts, the client, or the other lead counsel on the case. Despite that compressed timeline, BCH's attorneys eagerly and promptly joined the trial team in Pensacola for the two-week trial. While the *Kelley* trial resulted in a defense verdict, the case demonstrated BCH's willingness to push forward

4

on hard facts and to step up in service of the collective effort—further signaling to 3M the Plaintiffs' litigation resolve.   Discounting BCH's contribution in *Kelley* would disincentivize counsel from making such contributions to the common benefit of the litigation in the future— particularly where a firm is asked to assume a demanding trial role on short notice without the benefit of a personal attorney-client relationship.

### III.   CONCLUSION

BCH recognizes the extraordinary difficulty of the task facing the Special Master and, ultimately, this Court. Additionally, BCH does not attempt here to compare its contribution in terms of hours, personnel, or roles to that of firms such as Aylstock, Witkin, Kreis & Overholtz, PLLC, Laminack, Pirtle & Martines, LLP, Quinn Emanuel Urquhart & Sullivan, LLP, or Ciresi Conlin, LLP—firms whose sustained commitment to this litigation over many years BCH readily acknowledges.   But the disparity in the mathematics—a 50-fold reduction from BCH's proportional share of accepted hours to its recommended allocation—nevertheless warrants further review.   BCH respectfully submits that this degree of discount is difficult to reconcile with the record of BCH's documented contributions, and asks only that the Court, on *de novo* review, assess whether a more proportionate and appropriate allocation is warranted.

Dated:  June 25, 2026

Respectfully submitted,

BAILEY COWAN HECKAMAN PLLC

By:   /s/ Robert W. Cowan
        Robert W. Cowan
        Texas Bar No. 24031976
        K. Camp Bailey
        Texas Bar No. 24006782
        Aaron M. Heckaman
        Texas Bar No. 24059920
        Four Oaks Place
        1360 Post Oak Blvd., Suite 2300
        Houston, Texas 77056
        Telephone: (713) 425-7100
        Facsimile: (713) 425-7101
        rcowan@bchlaw.com
        cbailey@bchlaw.com
        aheckaman@bchlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served using the CM/ECF system.

/s/ Robert W. Cowan
Robert W. Cowan

6